## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPOINTING OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

The Boy Scouts of America (the "<u>BSA</u>") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"), submit this application (this "<u>Section 156(c) Application</u>"), pursuant to 28 U.S.C. § 156(c), section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rule 2002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for entry of an order (the "<u>Proposed Order</u>"), substantially in the form attached hereto as **Exhibit A**, appointing Omni Agent Solutions ("<u>Omni</u>") as the claims and noticing agent in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date (as defined below). The facts and circumstances supporting this Section 156(c) Application are set forth in the *Declaration of Paul H. Deutch in Support of the Debtors' Application for Entry of an Order Appointing Omni Agent Solutions as Claims and Noticing Agent,* Nunc Pro Tunc *to the Petition*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Date* (the "<u>Deutch Declaration</u>"), attached hereto as **Exhibit B**, and the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "<u>First Day Declaration</u>"), filed concurrently herewith and incorporated by reference.  In further support of this Section 156(c) Application, the Debtors respectfully state as follows:

<u>**STATUS OF THE CASES AND JURISDICTION**</u>

1.      On the date hereof (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  Concurrently with the filing of this Section 156(c) Application, the Debtors have requested joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Section 156(c) Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and other predicates for the relief requested herein are 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rules 2002-1(f) and 9013-1(m), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)* (the "Claims Agent Protocol"), instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012.

## BACKGROUND OF THE DEBTORS

5.      The BSA is a federally chartered non-profit corporation under title 36 of the United States Code.  The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers.  As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission.  The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law,[2] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations.  Delaware BSA, LLC ("Delaware BSA") is a non-profit limited liability company incorporated under the laws of Delaware and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  BSA is the sole member of Delaware BSA.

---

[2] **Scout Oath:** "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight."  **Scout Law:** "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

6.      To carry out its mission of developing youth leaders of character and integrity, the BSA grants charters to thousands of local organizations across the country, including faith-based institutions, clubs, civic associations, educational institutions, and businesses.  These chartered organizations, in turn, form Scouting units—referred to as "packs" for Cub Scouts, "troops" for Scouts BSA (formerly known as Boy Scouts), "crews" for Venturing, "ships" for Sea Scouts, "labs" for STEM Scouts, and "posts" for Exploring.  Scouting units are led by adult volunteers appointed by the chartered organization.  Each of the BSA's approximately 81,000 Scouting units in the United States is organized, registered, and supported by one of 261 local councils that are chartered by the BSA and oversee the Scouting program in an assigned geographic area.  Each local council is separately incorporated under the non-profit laws of its respective state, maintains an independent board of directors and senior management, and is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  The BSA does not hold any equity interest in any local council, chartered organization, or Scouting unit, and only the BSA and its wholly owned subsidiary, Delaware BSA, are debtors in these chapter 11 cases.  Additional information regarding the BSA, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the First Day Declaration and the *Debtors' Informational Brief*, filed concurrently herewith.

## **RELIEF REQUESTED**

7.      By this Section 156(c) Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, appointing Omni to act as the claims and noticing agent in the Debtors' chapter 11 cases (the "Claims and Noticing Agent") in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' cases, *nunc pro tunc* to the Petition Date. The terms of Omni's proposed retention are set forth in the Standard Services Agreement

between Omni and the Debtors, dated as of January 13, 2020 (the "Retention Agreement"),[3] a copy of which is attached hereto as **Exhibit C**.  Notwithstanding the terms of the Retention Agreement, the Debtors are seeking to retain Omni solely on the terms set forth in this Section 156(c) Application and the Proposed Order.

8.      By separate application, the Debtors will seek authorization to retain and employ Omni as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code, as the administration of these chapter 11 cases may require Omni to perform duties outside the scope of 28 U.S.C. § 156(c).

### OMNI'S QUALIFICATIONS AND THE NEED FOR OMNI'S SERVICES

9.      Omni is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent in numerous recent chapter 11 cases filed in this District and other districts nationwide.[4]

10.     The appointment of Omni as the Claims and Noticing Agent in these chapter 11 cases will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these chapter 11 cases, and relieve the Clerk, the Debtors, and their

---

[3] Omni has agreed to provide claims and noticing services to the Debtors at the rates stated on the rate structure attached to the Retention Agreement.  Upon request, Omni may provide such services at the same rates to any committee(s) appointed in these chapter 11 cases.

[4] See, e.g., In re USA Gymnastics, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Dec. 5, 2018), ECF No. 18; In re Juno USA LP, No. 19-12484 (MFW) (Bankr. D. Del. Nov. 19, 2019), ECF No. 8; In re PES Holdings, LLC, No. 19-11626 (KG) (Bankr. D. Del. July 22, 2019), ECF No. 3; In re Ctr. City Healthcare, LLC, No. 19-11466 (KG) (Bankr. D. Del. July 1, 2019), ECF No. 8; In re FTD Companies, Inc., No. 19-11240 (LSS) (Bankr. D. Del. June 3, 2019), ECF No. 11; In re Southeastern Metal Products, LLC, No. 19-10989 (BLS) (Bankr. D. Del. May 6, 2019), ECF No. 10; In re Hexion TopCo, LLC, No. 19-10684 (KG) (Bankr. D. Del. Apr. 1, 2019), ECF No. 4; In re 1515-GEEnergy Holding Co. LLC, No. 19-10303 (LSS) (Bankr. D. Del. Feb. 14, 2019), ECF No. 4; In re Consol. Infrastructure Grp., Inc., No. 19-10165 (BLS) (Bankr. D. Del. Jan. 30, 2019), ECF No. 2; In re Brookstone Holdings Corp., No. 18-11780 (BLS) (Bankr. D. Del. Aug. 2, 2018), ECF No. 4.

retained professionals of these administrative burdens. Given the nature of these chapter 11 cases, the Debtors believe that the appointment of Omni as the Claims and Noticing Agent will serve to maximize the value of the Debtors' estates for all stakeholders.

### SCOPE OF SERVICES

11.    This Section 156(c) Application pertains only to the services to be performed by Omni under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any services to be performed by Omni that are set forth in the Retention Agreement but are outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application or by the Proposed Order. Specifically, Omni will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services")[5], to the extent requested by the Debtors:

(a)    serve and/or prepare required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)    maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

---

[5] The Claims and Noticing Services will be performed in accordance with the confidentiality procedures set forth in the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, (III) Authorizing and Approving Procedures for Providing Notice of Commencement, and (IV) Granting Related Relief* (the "Notice and Confidentiality Motion") filed concurrently with this 156(c) Application, and any order entered by the Court in connection therewith.

(c)     maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by the inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     for motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, subject to the procedures set forth in the Notice and Confidentiality Motion and any order entered by the Court in connection therewith, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtors, and (vii) any disposition of the claim;

(i)     provide, subject to the procedures set forth in the Notice and Confidentiality Motion and any order entered by the Court in connection therewith, public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(j)     implement necessary security to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(l)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Omni, not less often than weekly;

(m)    upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)     identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(p)     assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(q)     if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of the notice to Omni of entry of the order converting the cases;

(r)     thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(s)     within seven (7) days of notice to Omni of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of these chapter 11 cases; and

(t)     at the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the Federal Archives Record Administration, located at 14700 Townsend Road, Philadelphia, PA 19154-1096 or (ii) any other location requested by the Clerk.

12.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Omni.

## COMPENSATION

13.     The Debtors are proposing to compensate Omni for the Claims and Noticing Services set forth above in accordance with the Retention Agreement and the rate structure attached thereto.  The Debtors request that the undisputed fees and expenses incurred by Omni in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

14.     Omni agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel to JPMorgan Chase Bank National Association, counsel for any official committee(s), and any party in interest that specifically requests service of the monthly invoices.  If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

15.     Before the Petition Date, the Debtors made one payment to Omni in the amount of $142,885.  Omni maintained $50,000 of this amount as a retainer in accordance with the Retention Agreement, approximately $35,000 of which remains undrawn as of the Petition Date. Omni seeks to first apply the retainer to all prepetition invoices which retainer shall be replenished to the original amount of $50,000.  Omni further seeks to thereafter apply the

retainer, at its discretion, to the payment of the final invoice from Omni under and pursuant to the Retention Agreement (the "Final Invoice"), or to any other invoice from Omni pursuant to the Retention Agreement, and which retainer shall, except with respect to the Final Invoice, be replenished to the original retainer amount of $50,000 upon notice from Omni to the Debtor of its application.

16.    Additionally, under the terms of the Retention Agreement, the Debtors have agreed, subject to certain exceptions, to indemnify, defend and hold harmless Omni and its affiliates, parent, officers, members, directors, agents, representatives, managers, consultants and employees, under certain circumstances specified in the Retention Agreement, except in circumstances resulting from Omni's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement or the Proposed Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

## OMNI'S DISINTERESTEDNESS

17.    Although the Debtors do not propose to employ Omni under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (as noted above, the Debtors will seek such retention by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest identified by the Debtors.  Omni has represented to the Debtors that to the best of its knowledge, and except as set forth in the Deutch Declaration, neither Omni nor any of its professionals have any relationship with the Debtors that would impair Omni's ability to serve as Claims and Noticing Agent.  To the extent that Omni or its personnel have, or may have had, relationships

with certain of the Debtors' creditors as described in the Deutch Declaration, Omni has represented to the Debtors that those matters are unrelated to these chapter 11 cases.

18.    Moreover, in connection with its retention as Claims and Noticing Agent, Omni represents in the Deutch Declaration, among other things, that Omni is a "disinterested person" with respect to the matters upon which it is to be engaged as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Omni and its professional personnel:

(a)    are not creditors, equity security holders, or insiders of the Debtors;

(b)    are not, and were not, within two years before the date of the filing of these chapter 11 cases, directors, officers, or employees of the Debtors; and

(c)    do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

19.    Omni further represents, among other things, as follows:

(a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(b)    by accepting employment in these chapter 11 cases, Omni waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(c)    in its capacity as Claims and Noticing Agent, Omni will not be an agent of the United States and will not act on behalf of the United States; and

(d)    Omni will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent.

20.    Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**BASIS FOR RELIEF**

21.     The Court is permitted to appoint Omni as Claims and Noticing Agent in these

chapter 11 cases.  Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize agents and

facilities other than the Clerk for the administration of bankruptcy cases.  Specifically, 28 U.S.C.

§ 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the
> court's premises, which pertain to the provision of notices,
> dockets, calendars, and other administrative information to parties
> in cases filed under the provisions of title 11, United States Code,
> where the costs of such facilities or services are paid for out of the
> assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).  Further, section 105(a) of the Bankruptcy Code provides, in pertinent part,

as follows:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).  Moreover, Bankruptcy Rule 2002, which regulates the notices that must be

provided to creditors and other parties in interest in a bankruptcy case, provides that the Court

may direct that a person other than the Clerk give notice of the various matters described therein.

See Fed. R. Bankr. P. 2002.  In addition, Local Rule 2002-1(f) provides that "[u]pon motion of

the debtor or trustee," in conformity with Local Rule 134, "at any time without notice or hearing,

the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)."

Del. Bankr. L.R. 2002-1(f).

22.     In view of the substantial number of parties receiving notice in these cases, the

Debtors submit that the appointment of Omni as Claims and Noticing Agent is necessary and in

the best interests of the Debtors and their estates and will serve to maximize the value of the Debtors' estates for all stakeholders.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

23.    The Debtors' selection of Omni to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.    Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise.

## *NUNC PRO TUNC* RELIEF IS APPROPRIATE

24.    In accordance with the Debtors' request, Omni has agreed to serve as Claims and Noticing Agent on and after the Petition Date with the assurance that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that Omni can be compensated for services rendered on and after the Petition Date, including prior to the Court's approval of this Section 156(c) Application.    The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as proposed in this Section 156(c) Application, because Omni has provided and continues to provide valuable services to the Debtors' estates during the interim period.

25.    Accordingly, the Debtors respectfully request entry of the Proposed Order authorizing the Debtors to retain and employ Omni as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

26.    In addition, by this Section 156(c) Application, the Debtors request a waiver of any notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of the

order(s) approving this Section 156(c) Application.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtors require immediate relief to permit Omni to serve as Claims and Noticing Agent for the reasons described above.  Accordingly, the Debtors submit that cause exists to justify a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## **NOTICE**

27.    Notice of this Section 156(c) Application will be provided to (i) the U.S. Trustee; (ii) the twenty-five (25) law firms representing the largest numbers of abuse victims asserting claims against the Debtors; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, other than abuse-related claims; (iv) counsel to JPMorgan Chase Bank, National Association; (v) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; (vi) representatives of the prepetition Ad Hoc Committee of Local Councils; (vii) counsel to the prepetition Future Claimants' Representative; (viii) counsel to the prepetition ad hoc group of attorneys representing significant numbers of abuse victims; (ix) the United States Attorney's Office for the District of Delaware; (x) the Internal Revenue Service; (xi) the United States Department of Justice; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated:  February 18, 2020                    Boy Scouts of America
BSA Delaware, LLC

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

## ORDER APPOINTING OMNI AGENT SOLUTIONS AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Section 156(c) Application")[2] of the Boy Scouts of America

and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession

in the above-captioned chapter 11 cases (collectively, the "Debtors"), for entry of an order (this

"Order"), pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy

Rule 2002, and Local Rule 2002-1(f), appointing Omni Agent Solutions ("Omni") as the Claims

and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date,

to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain,

docket, and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases, and

(c) provide such other administrative services as required by the Debtors that would fall within

the purview of services to be provided by the Clerk's office; and upon consideration of the

Deutch Declaration and the First Day Declaration; and this Court being satisfied that Omni has

the capability and experience to provide such services and that Omni does not hold an interest

adverse to the Debtors or their estates respecting the matters upon which it is to be engaged; and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Section 156(c) Application.

this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Section 156(c) Application in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Section 156(c) Application and opportunity for a hearing on the Section 156(c) Application were appropriate under the circumstances and no other notice need be provided; and all objections, if any, to the Section 156(c) Application having been withdrawn, resolved or overruled; and the relief requested in the Section 156(c) Application being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The relief requested in the Section 156(c) Application is GRANTED as set forth herein.

2.      Notwithstanding the terms of the Retention Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order.

3.      Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), the Debtors are authorized to retain Omni as Claims and Noticing Agent in these chapter 11 cases, effective *nunc pro tunc* to the Petition Date, under the terms of the Retention Agreement, and Omni is authorized and directed to perform the Claims and Noticing Services and to receive, maintain, record, and otherwise

administer the proofs of claim filed in these chapter 11 cases, and perform all related tasks as set forth in the Section 156(c) Application.

4.       Omni shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases, and is authorized and directed to maintain the official Claims Register for the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5.       Omni is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.       Omni is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.       Omni shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.       Without further order of this Court, the Debtors are authorized to compensate Omni in accordance with the terms and conditions of the Retention Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Omni and the rates charged for each, and to reimburse Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.       Omni shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel to JPMorgan Chase Bank National Association,

counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.

10.    The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Retention Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

11.    Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Omni's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtors' chapter 11 estates.

12.    Omni may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original amount of $50,000.  Omni may thereafter further apply the retainer, at its discretion, to the payment of the final invoice from Omni under and pursuant to the Retention Agreement (the "Final Invoice"), or to any other invoice from Omni pursuant to the Retention Agreement, and which retainer shall, except with respect to the Final Invoice, be replenished to the original amount of $50,000 upon notice from Omni to the Debtor of its application.

13.    The Debtors are authorized to indemnify Omni under the terms of the Retention Agreement, subject to the following modifications:

> (a)    Omni shall not be entitled to indemnification, contribution or reimbursement pursuant to the Retention Agreement for services other than the Claims and Noticing Services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

> (b)    Notwithstanding anything to the contrary in the Retention Agreement, the Debtors shall have no obligation to indemnify Omni, or provide contribution or reimbursement to Omni, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Omni's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Omni's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003),

4

or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified; and

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing these chapter 11 cases, Omni believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, Omni must file an application therefor in this Court, and the Debtors may not pay any such amounts to Omni before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Omni for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Omni.  All parties in interest shall retain the right to object to any demand by Omni for indemnification, contribution, or reimbursement.

14.     In the event Omni is unable to provide the Claims and Noticing Services, Omni shall immediately notify the Clerk and the Debtors' counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

15.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by Omni but are not specifically authorized by this Order.

16.     Omni shall not cease providing Claims and Noticing Services during these chapter 11 cases for any reason, including nonpayment, without an order of the Court authorizing Omni to do so; _provided_ that Omni may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtors, the U.S. Trustee, and any official committee of creditors appointed, if any, in these cases by facsimile or overnight

delivery; provided, further, that except as expressly provided herein, the Debtors and Omni may otherwise terminate or suspend other services as provided under the Retention Agreement.

17.     Notice of the Section 156(c) Application shall be deemed good and sufficient notice of such Section 156(c) Application, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are waived by such notice.

18.     In the event of any inconsistency between the Retention Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors and Omni are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Section 156(c) Application.

21.     Notwithstanding anything to the contrary in the Retention Agreement, this Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.


Dated: _____, 2020
         Wilmington, Delaware

_____
      UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Deutch Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (___) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF
THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
APPOINTING OMNI AGENT SOLUTIONS AS CLAIMS AND
NOTICING AGENT, _NUNC PRO TUNC_ TO THE PETITION DATE**

I, Paul H. Deutch, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.     I am the Executive Vice President of Omni Agent Solutions ("Omni").[2]  The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.[3]

2.     This Declaration is made in support of the _Debtors' Application for Entry of an Order Appointing Omni Agent Solutions as Claims and Noticing Agent,_ Nunc Pro Tunc _to the Petition Date_ (the "Section 156(c) Application") filed contemporaneously herewith by the Debtors, for entry of an order pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f),

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

[3] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Omni and are based on information provided by them.

appointing Omni as Claims and Noticing Agent, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the Retention Agreement.

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Omni will perform, at the request of the Clerk, the noticing and claims related services specified in the Section 156(c) Application and the Retention Agreement.  In addition, at the Debtors' request, Omni will perform such other noticing, claims, administrative, technical, and support services specified in the Section 156(c) Application and the Retention Agreement.

4.      Omni is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.  Omni has substantial experience in matters of this size and complexity, and has acted as the official noticing and claims agent in numerous chapter 11 cases pending in this district and other districts nationwide.  See, e.g., In re USA Gymnastics, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Dec. 5, 2018), ECF No. 18; In re Juno USA LP, No. 19-12484 (MFW) (Bankr. D. Del. Nov. 19, 2019), ECF No. 8; In re PES Holdings, LLC, No. 19-11626 (KG) (Bankr. D. Del. July 22, 2019), ECF No. 3; In re Ctr. City Healthcare, LLC, No. 19-11466 (KG) (Bankr. D. Del. July 1, 2019), ECF No. 8; In re FTD Companies, Inc., No. 19-11240 (LSS) (Bankr. D. Del. June 3, 2019), ECF No. 11; In re Southeastern Metal Products, LLC, No. 19-10989 (BLS) (Bankr. D. Del. May 6, 2019), ECF No. 10; In re Hexion TopCo, LLC, No. 19-10684 (KG) (Bankr. D. Del. Apr. 1, 2019), ECF No. 4; In re 1515-GEEnergy Holding Co. LLC, No. 19-10303 (LSS) (Bankr. D. Del. Feb. 14, 2019), ECF No. 4; In re Consol. Infrastructure Grp., Inc.,No. 19-10165 (BLS) (Bankr. D. Del. Jan. 30, 2019), ECF No. 2; In re Brookstone Holdings Corp., No. 18-11780 (BLS) (Bankr. D. Del. Aug. 2, 2018), ECF No. 4.

5.     Before the Petition Date, the Debtors made one payment to Omni in the amount of $142,885. Omni maintained $50,000 of this amount as a retainer in accordance with the Retention Agreement, approximately $35,000 of which remains undrawn as of the Petition Date.

6.     In connection with its retention as Claims and Noticing Agent, Omni represents, among other things, the following:

(a)     Omni is not a creditor of the Debtors;

(b)     Omni will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent in these chapter 11 cases;

(c)     by accepting employment in these chapter 11 cases, Omni waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

(d)     in its capacity as Claims and Noticing Agent in these chapter 11 cases, Omni will not be an agent of the United States and will not act on behalf of the United States;

(e)     Omni shall not employ any past or present employee of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

(f)     Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g)     in its capacity as Claims and Noticing Agent, Omni will not intentionally misrepresent any fact to any person;

(h)     Omni shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)     Omni will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     none of the services provided by Omni as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk.

7.     In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the

"Parties-in-Interest") in these chapter 11 cases.    The list of potential Parties-in-Interest was provided by the Debtors and included, among other parties, the Debtors, the Debtors' current and former directors and officers, secured creditors, and the top thirty (30) unsecured creditors.    The results of the conflicts check were compiled and reviewed by employees of Omni, under my supervision.    At this time, Omni is not aware of any relationship that would present a disqualifying conflict of interest.

8.    Omni currently serves, or in the past may have served, in a neutral capacity as claims, noticing, balloting, and/or solicitation agent for certain of these parties or related parties. However, given Omni's neutral position as claims and noticing agent or administrative agent in the listed parties' cases, or any other cases, Omni does not view such relationships as real or potential conflicts.    Further, to the best of my knowledge any such relationship is completely unrelated to these chapter 11 cases.    Accordingly, to the best of my knowledge, Omni and each of its employees are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and neither Omni nor any of its employees hold or represent an interest adverse to the Debtors' estates related to any matter for which Omni will be employed.

9.    To the best of my knowledge, neither Omni nor any of its personnel have any relationship with the Debtors that would impair Omni's ability to serve as Claims and Noticing Agent.    Omni may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Omni serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.    To the best of my knowledge, such relationships are completely unrelated to these chapter 11 cases.    Omni's personnel may have relationships with some of the Debtors' creditors or other Parties-in-Interest.    To the best of my knowledge, however, such relationships, to the extent they exist, are of a personal financial nature and

4

completely unrelated to these chapter 11 cases.  Omni has represented, and will continue to represent, clients in matters unrelated to these chapter 11 cases.  In addition, Omni has had, and will continue to have, relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the chapter 11 cases in matters unrelated to such cases.

10.     Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental affidavit.

11.     Although the Debtors do not propose to retain Omni under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtors.  At this time, we are not aware of any relationship that would present a disqualifying conflict of interest.  Should Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Omni will use reasonable efforts to file promptly a supplemental declaration.

12.     In performing the services of Claims and Noticing Agent, Omni will charge the Debtors the rates set forth in the Retention Agreement.

13.     Based on the foregoing, I believe that Omni is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:  February 18, 2020                    OMNI AGENT SOLUTIONS

                                             /s/ Paul H. Deutch
                                             Paul H. Deutch
                                             Executive Vice President

## Exhibit C

**Retention Agreement**

## STANDARD SERVICES AGREEMENT

This Agreement is entered into as of January 13, 2020, between Omni Agent Solutions ("Omni") and Boy Scouts of America and any applicable subsidiaries or affiliates (collectively, "BSA") in preparation of, and in connection with, BSA's potential chapter 11 case(s). The parties hereto agree as follows:

### Terms and Conditions

I.    SERVICES

(a)    Omni will make itself available to BSA, as requested, for the purposes of assisting BSA with pre- and post-petition case administration matters including data entry, preparation and management of the creditor matrix, preparation of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website, and any other services as may be requested by BSA or otherwise required by applicable law, governmental regulations or court rules or orders (collectively, the "Services").

(b)    BSA acknowledges and agrees that Omni will often take direction from BSA's representatives, employees, agents and/or professionals (individually, a "BSA Party" and, collectively, the "BSA Parties") with respect to providing Services hereunder. The parties agree that Omni may rely upon, and BSA agrees to be bound by, any requests, advice or information provided by BSA Parties to the same extent as if such requests, advice or information were provided by BSA.

(c)    In no event shall Omni's Services constitute or contain legal advice or opinion, and neither Omni nor its personnel shall be deemed to practice law hereunder

II.    RATES

(a)    The services to be rendered by Omni will be billed at rates ranging from $25.00 to $185.00 per hour as per the rate structure attached hereto and incorporated herein by reference (the "Rate Structure"), subject to previously-agreed upon discounts, if any. BSA agrees to pay all of Omni's fees, charges and out-of-pocket costs relating to the Services it provides on behalf of BSA pursuant to this Agreement.

(b)    Rates may be adjusted annually on January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum. Omni shall provide sixty (60) days prior written notice of any such proposed increases.

(c)    Omni shall be compensated on a monthly basis for services it performs on behalf of BSA during the preceding calendar month. Invoices are due and payable upon receipt. If any amount is unpaid as of thirty (30) days after delivery of an invoice,

BSA agrees to pay a late charge equal to one and a half (1.5%) percent of the total amount unpaid every 30 days. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and any orders of the bankruptcy court.

(d)    Omni may require an advance or direct payment from BSA of an individual expense, or a group of related expenses, that are expected to exceed $7,500.

(e)    Upon execution of this Agreement, BSA shall pay Omni a retainer of $50,000 (the "Retainer"). Omni may use the Retainer against all prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by BSA to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "Final Invoice"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to BSA of the application of some or all of the Retainer, BSA shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to BSA any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f)    BSA shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of BSA, notwithstanding how such taxes may be designated, levied, or based.  This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g)    BSA shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any BSA error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h)    Payments to Omni for services rendered under the terms of this Agreement may be remitted by BSA using either or both of the following methods:

     (i)    **Wire Transmission**
        Bank Name:  East West Bank
        ABA.  322070381
        Account Number· 5400008002
        Account Name: Omni Management Group, Inc.

     (ii)   **Check**
        Omni Agent Solutions
        c/o Accounts Receivable
        5955 De Soto Avenue
        Suite 100
        Woodland Hills, CA 91367

III.    RETENTION IN BANKRUPTCY CASE

(a)    If BSA commences a case pursuant to the U. S. Bankruptcy Code (the "Code"), BSA shall timely file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b)    If any BSA chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

IV.    CONFIDENTIALITY

(a)    Each of Omni and BSA, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b)    If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

V.    PROPERTY RIGHTS

(a)    The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines and documentation. BSA agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement. BSA further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of Omni.

Fees and expenses paid by BSA do not vest in BSA any rights in Omni's property. Such property is only being made available for BSA's use during and in connection with the Services provided by Omni hereunder.

(b)     Upon BSA's request at any time while this Agreement is in effect, Omni shall immediately deliver to BSA and/or BSA's retained professionals, at BSA's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by BSA.

VI.    BANK ACCOUNTS

At the request of BSA and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for BSA to facilitate distributions pursuant to a chapter 11 plan or other transaction.

VII.    COMPANY DATA

(a)     BSA is responsible for, and Omni does not verify, the accuracy of the programs, data and other information it or any BSA Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "SOFAs and Schedules"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and BSA is deemed hereunder to have approved and reviewed all of the SOFAs and Schedules filed on its behalf.

(b)     BSA agrees, represents and warrants to Omni that before delivery of any information to Omni: (i) BSA has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c)     Any data, storage media, programs or other materials furnished to Omni by BSA may be retained by Omni until the Services provided hereunder are paid in full. BSA shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to BSA; provided that if BSA has not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by BSA for the expense of such disposition, after giving BSA thirty (30) days written notice. BSA agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow BSA to regenerate or duplicate all programs, data or information provided by BSA to Omni.

(d)     If Omni is retained pursuant to bankruptcy court order, disposal of any BSA data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

## VIII.   TERM AND TERMINATION

(a)    This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "Cause" means (i) bad faith, gross negligence, or willful misconduct of Omni that causes material harm to BSA's restructuring under chapter 11 of the Code, (ii) the failure of BSA to pay Omni's invoices for more than sixty (60) days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with BSA and/or BSA's professionals, it will not be paid, where delay in payment is due to pending approval and allowance of such amounts by the bankruptcy court during BSA's chapter 11 case or following conversion to a chapter 7 case.

(b)    If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, BSA shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c)    If this Agreement is terminated, BSA shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder and, following payment of such amounts, Omni shall promptly provide BSA with to all materials and deliverables that are in its then-current state of completion.

(d)    If this Agreement is terminated, Omni shall coordinate with BSA and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. BSA agrees to pay for such Services pursuant to the Rate Structure.

## IX.   NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## X.   INDEMNIFICATION

(a)    To the fullest extent permitted by applicable law, BSA shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "Indemnified Party," and collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including,

without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Omni's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)     Omni and BSA shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c)     BSA's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d)     BSA's indemnification obligations hereunder shall survive the termination of this Agreement.


XI.     LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to BSA for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by BSA for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Omni's liability to BSA for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII.    SYSTEM IMPROVEMENTS

Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminals and other equipment, and the Omni database serving BSA, so long as any such changes do not materially interfere with ongoing Services provided to BSA in connection with BSA's pending bankruptcy case.

XIII.   CHOICE OF LAW

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XIV     ARBITRATION

Any dispute arising out of or relating to this Agreement or the breach thereof shall

be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of BSA, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

XV.    GENERAL

(a)    Complete agreement. Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)    Severability If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)    Modification. This Agreement may be modified only by a writing duly executed by an authorized representative of BSA and an officer of Omni.

(d)    Assignment. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e)    Counterparts. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f)    Force Majeure. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) <u>Location services</u>. BSA will use its best efforts to cooperate with Omni at BSA's facilities if any portion of the Services require Omni's physical presence.

(h)     <u>Non-solicitation</u>. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i)     <u>Independent contractors</u>. BSA and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j)     <u>Attorney's fees</u>. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

XVI.   NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

    If to Omni:    Omni Agent Solutions
                   5955 De Soto Avenue
                   Suite 100
                   Woodland Hills, CA 91367
                   Tel: (818) 906-8300
                   Attn: Brian K. Osborne, Pres. & CEO
                   Email: Bosborne@omniagnt.com


    If to BSA:     Boy Scouts of America
                   1325 West Walnut Hill Lane
                   P.O. Box 152079
                   Irving, Texas 75015-2079
                   Attn: Steven P. McGowan, General Counsel
                   Steve.mcgowan@scouting.org

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

OMNI AGENT SOLUTIONS

By: _____
Name: Paul Deutch
Title:   Senior Vice President

Agreed and Accepted this 15ᵗʰ day of January 2019.

BOY SCOUTS OF AMERICA

By: _____
Name: Steven P. McGowan
Title:  General Counsel

# 2019 Rate Sheet


Omni
AGENT SOLUTIONS,

| Hourly Rates for Standard and Custom Services | RATE / COST |
|---|---|
| Analyst | $35.00 - $50.00 per hour |
| Consultants | $65.00 - $140.00 per hour |
| Senior Consultants | $145.00 - $165.00 per hour |
| Solicitation and Equity Services | $185.00 per hour |
| Technology/Programming | $85.00 - $135.00 per hour |

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No Charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No Charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE / COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote internet access for claims management | |
| Setup | No Charge |
| Access | No Charge |

| Creditor Database | RATE / COST |
|---|---|
| Data storage | Waived for 3 months. Under 10,000 records - No charge, Over 10,000 records - .06 per record, Over 100,000 records - .05 per record |
| Per image storage | No Charge |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No Charge |
| Hosting fee | $20.00 per month |
| Usage | $.0825 per minute |
| Service rates (actual talk and log-entry time) | $60.00 per hour |

# 2019 Rate Sheet



| Informational Website | RATE / COST |
|---|---|
| Creation, Configuration and Initial Setup | No Charge |
| Data Entry / Information Updates | $60.00 per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No Charge |
| Committee Website Hosting | No Charge |
| Shareholder Website Hosting | No Charge |
| Scanning | $0.10 per image |

| Case Docket / Claims Register | No Charge |
|---|---|

| Virtual Data Rooms | Quote upon request |
|---|---|

| Solicitation and Tabulation | RATE / COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE / COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE / COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $165.00 per hour |

| UST Reporting Compliance | RATE / COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE / COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Real-Time Reports | RATE / COST |
|---|---|
| Claims dashboard | No Charge |
| Claim reports | No Charge |
| Solicitation dashboard | No Charge |
| Tabulation dashboard | No Charge |
| Solicitation reports | No Charge |

| Miscellaneous | RATE / COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |