**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 20-10343 (\_\_\_)<br><br>(Joint Administration Requested)<br><br>**Hearing Date: TBD**<br>**Objection Deadline: TBD** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPOINTING**
**A JUDICIAL MEDIATOR, (II) REFERRING CERTAIN MATTERS TO**
**MANDATORY MEDIATION, AND (III) GRANTING RELATED RELIEF**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rules 9019-3 and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) appointing a sitting bankruptcy judge (if the relevant parties are unable to agree on a mediator before the hearing on this Motion) to mediate any and all issues related to the comprehensive resolution of claims relating to historical acts of abuse in the BSA's Scouting programs through a chapter 11 plan of reorganization, (ii) referring such matters to mandatory mediation, and (iii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## PRELIMINARY STATEMENT

1.     The Debtors have commenced these chapter 11 cases to achieve the dual objectives of (a) equitably compensating victims of abuse in its Scouting programs and (b) ensuring that the BSA emerges from bankruptcy with the capability to continue carrying out its mission: "To prepare young people to make ethical and moral choices over their lifetimes by instilling in them the values of the Scout Oath and Law."

- **Scout Oath.** "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight."

- **Scout Law.** "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

If these efforts are to succeed, it is imperative that the Debtors and their relevant stakeholders begin working toward a consensual resolution immediately.

2.     As described in *Debtors' Informational Brief* filed concurrently herewith, the BSA is currently named as a defendant in approximately 275 lawsuits related to historical acts of sexual abuse in its Scouting programs.  In addition, attorneys for abuse victims have provided information asserting an additional approximately 1,400 claims that have not yet been filed, for a total of approximately 1,700 known asserted abuse claims.  Approximately 90% of these pending and asserted claims relate to abuse that occurred before 1988, when the BSA strengthened its existing youth protection programs.  Recent changes in state statutes of limitations, however, have led to a sharp increase in the number of claims asserted against the BSA and placed tremendous financial pressure on the organization.  In light of this increase in claims, the BSA cannot continue to address abuse litigation in the tort system on a case-by-case basis without jeopardizing its ability to carry out its mission.

3.      A prolonged bankruptcy case, moreover, would be just as harmful to the BSA as continuing to engage in piecemeal litigation across the United States.  It is imperative that the Debtors' reorganization proceedings not become mired in endless discovery, unyielding litigation, or other hallmarks of inefficiency.  As a non-profit corporation that relies largely on member fees and donations to sustain its operations, considerations of economy and speed are of the utmost importance to the BSA.  Unlike a for-profit corporation, the BSA cannot rely on revenues from the ordinary sales of products or services to sustain its operations during bankruptcy.  Instead, there is a close correlation between the financial condition of the BSA and the public's confidence in the organization's ability to carry out its mission to serve youth, families, and local communities through its Scouting programs.  A prolonged bankruptcy case would erode public confidence in the BSA, jeopardize its ability to operate, and ultimately deprive America's youth of the ability to participate in Scouting.  Importantly, it would also deplete the assets available to compensate abuse victims.

4.      This Motion does not represent the Debtors' first efforts to reach a consensual resolution of abuse claims through the mediation process.  The BSA explored strategic options throughout 2019, including efforts to reach a settlement with a substantial number of abuse victims that could be implemented through a prearranged chapter 11 proceeding.  Those efforts involved several meetings with attorneys representing many of the abuse victims, including a two-day mediation in early November 2019.   The mediation was also attended by a prepetition future claims representative and certain of the BSA's insurers.  The mediation, unfortunately, was unsuccessful.  It became apparent that attorneys for abuse victims believed that certain local councils having abuse liabilities had significant unrestricted assets and that such assets should also be used to compensate victims.  Further, it was clear that the attorneys for abuse victims

wanted, through a court-supervised process, detailed information about the nature and extent of the BSA's available assets. Accordingly, the BSA recognized in late 2019 that there were no meaningful prospects for a prearranged global resolution and that commencing a managed chapter 11 case was necessary to resolve its abuse liabilities.

5.      The appointment of a judicial mediator at the outset of these cases is appropriate under these circumstances and will complement the other immediate steps the Debtors have taken to promote the expeditious and efficient execution of their reorganization proceedings. These steps include the following:

- **Data Room**.  To avoid the delays and expense of protracted discovery, the BSA has established and is populating an electronic data room, which it will use to proactively make financial and non-financial information available to a committee representing abuse victims.  This data room includes, among other things, balance sheets and asset-level information for the BSA and numerous local councils, including details regarding donor restrictions on such assets, as well as information on the BSA's liabilities and organizational structure.[2]

- **Ad Hoc Committee of Local Councils**.  Prior to the commencement of these cases, the BSA assisted in the formation of an ad hoc committee of local councils comprised of eight local councils of various sizes from every region of the country.  The primary purpose of the committee is to allow local councils to participate in negotiations regarding a global resolution of abuse claims through these cases and other issues that are important to local councils, including the treatment of their shared insurance with the BSA. The committee has also been instrumental in coordinating the BSA's prepetition efforts to collect and organize local council asset information.

- **Future Claims Representative**. In early 2019, when the BSA made the decision to pursue a prearranged global resolution of abuse claims through a potential chapter 11 proceeding, the BSA determined that it was necessary and appropriate to engage an independent third-party representative for future abuse claimants.  After considering possible candidates for the role, the BSA selected James L. Patton, Jr. to serve as prepetition future claims representative.  As noted above, Mr. Patton and his advisors attended the November 2019 mediation.

---

[2] The data room will be made available to any official committee and other court-appointed representative pursuant to the terms of a protective order.  The BSA has prepared a form of protective order and intends to discuss such order with the advisors for the committee and Court-appointed representative upon such parties' appointment.

- **Scheduling Motion for Disputes Regarding Non-Estate Property**. The Debtors have filed a motion seeking to establish a schedule for this Court to hear and adjudicate any disputes regarding the characterization of the BSA's assets as not being property of the estate or subject to the claims of creditors because such assets are, among other things: (a) subject to legally enforceable restrictions or limitations under applicable law and/or (b) core to the BSA's charitable mission. In particular, this motion requests that the Court approve deadlines for (i) commencing an adversary proceeding to challenge the BSA's characterization of its assets; (ii) filing an answer to the adversary complaint; (iii) conducting related discovery; and (iv) filing dispositive motions. The relief requested in this motion strikes an appropriate balance between affording parties in interest a sufficient opportunity to review, examine and potentially challenge the BSA's characterizations of its assets, on the one hand, and the manifest need to avoid sprawling, disorganized litigation in these cases.

- **Bar Date Motion**. The Debtors have filed a motion to establish clear and comprehensive procedures for providing notice of the applicable bar dates to the Debtors' creditors and for creditors, including abuse victims, to file proofs of claim. This relief includes Court approval of (a) bar dates by which creditors shall be required to file proofs of claim, including a separate bar date for proofs of claim on account of abuse claims; (b) the forms of the Debtors' proposed proofs of claim, including a customized proof of claim for abuse victims; and (c) the forms of the Debtors' proposed bar date notices, including a separate bar date notice for abuse victims. The Debtors also intend to formulate a supplemental noticing program tailored to reach as many presently unknown abuse claimants as practicable in coordination with any official committee of abuse victims that may be appointed in these cases.

- **Plan of Reorganization**. The Debtors have filed a plan of reorganization that provides a framework for, among other things, the global resolution of abuse claims asserted against the BSA and a comprehensive restructuring of the organization.

- **Consolidation and Stay of Pending Abuse Lawsuits**. Concurrently with the commencement of these cases, the BSA has taken measures to consolidate and stay all pending abuse litigation against the BSA, local councils, and chartered organizations. In particular, the BSA is in the process of removing to federal district court all abuse claims pending in state courts throughout the United States against the BSA and/or its local councils and chartered organizations. The BSA will also be filing a motion with the United States District Court for the District of Delaware to transfer all of the removed abuse actions to that court under 28 U.S.C. § 157(b)(5). Finally, the Debtors have commenced an adversary proceeding in these chapter 11 cases seeking a preliminary injunction against the continued prosecution of abuse claims.

6.      As these actions make clear, the Debtors are committed to designing and executing a value-maximizing global resolution of abuse claims in these chapter 11 cases.  The Debtors recognize that these cases will present unique challenges and require the Court and parties to address complicated legal and financial issues.  The appointment of a mediator at the outset of these cases will assist the parties in addressing these issues and, the Debtors hope, foster productive settlement discussions among the relevant stakeholders.  For these reasons, the prompt appointment of a judicial mediator will promote the Debtors' restructuring objectives and should be approved.

## STATUS OF THE CASES AND JURISDICTION

7.      On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  Concurrently with the filing of this Motion, the Debtors have requested joint administration and procedural consolidation of these chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The statutory and other predicates for the relief requested herein are section 105(a), of the Bankruptcy Code and Local Rules 9019-3 and 9019-5.

## BACKGROUND OF THE DEBTORS

11.      The BSA is a federally chartered non-profit corporation under title 36 of the United States Code.  The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers.  As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission.  The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law, encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations.  Delaware BSA, LLC ("Delaware BSA") is a non-profit limited liability company incorporated under the laws of Delaware and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  BSA is the sole member of Delaware BSA.

12.      To carry out its mission of developing youth leaders of character and integrity, the BSA grants charters to thousands of local organizations across the country, including faith-based

institutions, clubs, civic associations, educational institutions, and businesses. These chartered organizations, in turn, form Scouting units—referred to as "packs" for Cub Scouts, "troops" for Scouts BSA (formerly known as Boy Scouts), "crews" for Venturing, "ships" for Sea Scouts, "labs" for STEM Scouts, and "posts" for Exploring. Scouting units are led by adult volunteers appointed by the chartered organization. Each of the BSA's approximately 81,000 Scouting units in the United States is organized, registered, and supported by one of 261 local councils that are chartered by the BSA and oversee the Scouting program in an assigned geographic area. Each local council is separately incorporated under the non-profit laws of its respective state, maintains an independent board of directors and senior management, and is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. The BSA does not hold any equity interest in any local council, chartered organization, or Scouting unit, and only the BSA and its wholly owned subsidiary, Delaware BSA, are debtors in these chapter 11 cases. Additional information regarding the BSA, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* and the *Debtors' Informational Brief*, filed concurrently herewith.

## RELIEF REQUESTED

13.     By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of the Bankruptcy Code and Local Rules 9019-3 and 9019-5, (i) appointing a sitting bankruptcy judge (the "Mediator") (if the relevant parties are unable to agree on a mediator before the hearing on this Motion) to mediate any and all issues related to the comprehensive resolution of claims relating to historical acts of abuse in the BSA's Scouting programs through a chapter 11 plan of reorganization (the

"Mediation Issues"), (ii) referring the Mediation Issues to mandatory mediation, and (iii) granting related relief.

14.     The Debtors request that the following parties be directed to participate in the mediation (collectively, the "Mediation Parties"): (a) the Debtors; (b) the Ad Hoc Committee of Local Councils; (c) the prepetition Future Claims Representative; (d) any official committee of creditors appointed by the Office of the United States Trustee; and (e) applicable insurers under one or more insurance policies that afford the Debtors rights, benefits, indemnity or insurance coverage with respect to abuse claims; and (f) any other parties the Court, the Mediator, and/or the Mediation Parties agree in the future should participate in the mediation process.

## BASIS FOR RELIEF

15.     Local Rule 9019-5 provides that this Court may refer "any dispute" to mediation. Del. Bankr. L.R. 9019-5(a) ("The Court may assign to mediation any dispute arising in an adversary proceeding, contested matter or otherwise in a bankruptcy case.").  Section 105 of the Bankruptcy Code, moreover, provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a); see also In re Atl. Pipe Corp., 304 F.3d 135, 140 (1st Cir. 2002) ("There are four potential sources of judicial authority for ordering mandatory non-binding mediation of pending cases, namely (a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedures, and (d) the court's inherent powers."); In re A.T. Reynolds & Sons, Inc., 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order a party to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), rev'd on other grounds, 452 B.R. 374 (S.D.N.Y. 2011).

16.     Here, the Debtors are requesting the appointment of a sitting bankruptcy judge as Mediator if the Mediation Parties are unable to agree on a Mediator in advance of the hearing on this Motion.  If the Mediation Parties agree on a Mediator and other related matters, including a scheduling order and confidentiality procedures, then the Debtors will submit an agreed form of order under certification of counsel.

17.     For the reasons stated above, the appointment of a Mediator at the outset of these cases is a cornerstone of the Debtors' restructuring strategy.  The complexity and sheer number of issues that must be resolved in connection with a global resolution of abuse claims under a plan of reorganization cannot be understated.  These myriad issues include—and any Mediator will be focused on—the following issues, among others:

- the relative treatment of abuse claimants under the plan and trust distribution procedures;

- the funding of a victims compensation trust;

- the treatment of abuse claims related to Scouting that are asserted against entities that are not debtors in these cases;

- the enforceability of donor and other restrictions on the BSA's and local councils' assets; and

- issues pertaining to shared insurance between the BSA and local councils; and coverage disputes between the BSA and its insurers.

 Each of these issues would unquestionably benefit from mediation.  Litigating all (or even some) of these issues would entail extensive discovery costs and professional fees and expenses and extend the timeline of the Debtors' chapter 11 cases, thereby compounding such costs. These costs would predominantly be borne by the Debtors' estates to the detriment of their creditors, including abuse claimants.  As described herein, resolving these issues both

expeditiously and efficiently is of paramount importance to achieving a resolution of these cases and providing the best recovery for creditors.

18.      As a non-profit corporation, the BSA must balance the need to fully engage with its key stakeholders throughout the chapter 11 restructuring process against the stark reality that every day it spends in bankruptcy could further erode the public's confidence in its mission.  The erosion of public confidence in the BSA would likely result in membership losses and cause the BSA's generous donors to divert their financial support to other worthy charitable organizations, thereby hindering the BSA's ability to successfully reorganize.  Mediation provides the least costly means to resolve the abuse claims against the BSA and will complement the proactive steps the BSA has already taken to ensure that these cases proceed in an efficient manner.

19.      If successful, mediation would result in a global resolution of the most challenging issues in these cases.  If unsuccessful, mediation would still inform parties as to the key issues (and potentially narrow such issues) before the parties proceed with litigation.  Mediation therefore has little downside and will likely prove beneficial even if unsuccessful. See, e.g., Garland v. Rockford Mfg. Co., Case No. 18-cv-00277, 2019 U.S. Dist. LEXIS 154292, at *5 (E.D. Tenn. Aug. 20, 2019) ("[E]ven if the parties' dispute is not settled during the mediation process, mediation often forces the parties to reevaluate their claims and positions and serves to narrow and classify issues.") (internal quotations omitted).  Mediation will not prejudice any of the Mediation Parties' rights if it fails to produce a global (or partial) resolution, and the Mediation Parties can (and will) continue to prepare for litigation in parallel with the mediation.  Moreover, mediation could be required at several different junctures during these cases.  Given the complexity of the issues at hand, the appointment of a Mediator now will allow

the Mediator to become familiar with the parties, the key issues, and the central aspects of the disputes.

20.    For the reasons described in this Motion, mediation will benefit the Debtors' estates.  Accordingly, the Debtors respectfully submit that the Court should enter the Proposed Order appointing a Mediator and affording the Mediation Parties a valuable opportunity to reach consensus on the most important issues in these cases.

## NOTICE

21.    Notice of this Motion will be provided to (i) the Mediation Parties identified in this Motion; (ii) the U.S. Trustee; (iii) the twenty-five (25) law firms representing the largest numbers of abuse victims asserting claims against the Debtors; (iv) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, other than abuse-related claims; (v) counsel to JPMorgan Chase Bank, N.A.; (vi) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; (vii) representatives of the prepetition Ad Hoc Committee of Local Councils; (viii) counsel to the prepetition Future Claimants' Representative; (ix) counsel to the prepetition ad hoc group of attorneys representing significant numbers of abuse victims; (x) the United States Attorney's Office for the District of Delaware; (xi) the Internal Revenue Service; (xii) the United States Department of Justice; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated: February 18, 2020
        Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
        aremming@mnat.com
        jbarsalona@mnat.com
        ptopper@mnat.com
        emoats@mnat.com

– and –

SIDLEY AUSTIN LLP
James F. Conlan (*pro hac vice* pending)
Thomas A. Labuda (*pro hac vice* pending)
Michael C. Andolina (*pro hac vice* pending)
Matthew E. Linder (*pro hac vice* pending)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Email: jconlan@sidley.com
        tlabuda@sidley.com
        mandolina@sidley.com
        mlinder@sidley.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Email: jboelter@sidley.com

PROPOSED COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION