**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 20-10343 (___)<br><br>(Joint Administration Requested)<br><br>**Hearing Date: TBD**<br>**Objection Deadline: TBD** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING CERTAIN
DEADLINES IN CONNECTION WITH POTENTIAL DISPUTES REGARDING THE
DEBTORS' IDENTIFIED PROPERTY AND (II) GRANTING RELATED RELIEF**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 7001, 7016, 7026, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) approving a schedule for the commencement of an adversary proceeding and certain related deadlines in connection with potential disputes regarding whether certain identified property set forth on **Exhibit B**, as such exhibit may be modified or supplemented from time to time (the "Identified Property") is subject to enforceable restrictions under applicable law and/or is otherwise

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

unavailable to satisfy creditor claims (the "Property Dispute") and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1. On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  Concurrently with the filing of this Motion, the Debtors have requested joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other predicates for the relief requested herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rules 7001, 7016, 7026, 9013, and 9014, and Local Rule 9013-1.

## BACKGROUND OF THE DEBTORS

5.      The BSA is a federally chartered non-profit corporation under title 36 of the United States Code.  The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers.  As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission.  The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law,[2] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations.  Delaware BSA, LLC ("Delaware BSA") is a non-profit limited liability company incorporated under the laws of Delaware and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  BSA is the sole member of Delaware BSA.

6.      To carry out its mission of developing youth leaders of character and integrity, the BSA grants charters to thousands of local organizations across the country, including faith-based institutions, clubs, civic associations, educational institutions, and businesses.  These chartered organizations, in turn, form Scouting units—referred to as "packs" for Cub Scouts, "troops" for Scouts BSA (formerly known as Boy Scouts), "crews" for Venturing, "ships" for Sea Scouts,

---

[2] **Scout Oath:** "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight."  **Scout Law:** "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

"labs" for STEM Scouts, and "posts" for Exploring. Scouting units are led by adult volunteers appointed by the chartered organization. Each of the BSA's approximately 81,000 Scouting units in the United States is organized, registered, and supported by one of 261 local councils that are chartered by the BSA and oversee the Scouting program in an assigned geographic area. Each local council is separately incorporated under the non-profit laws of its respective state, maintains an independent board of directors and senior management, and is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. The BSA does not hold any equity interest in any local council, chartered organization, or Scouting unit, and only the BSA and its wholly owned subsidiary, Delaware BSA, are debtors in these chapter 11 cases. Additional information regarding the BSA, its mission and operations, and the events and circumstances preceding the Petition Date is set forth in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* and the *Debtors' Informational Brief*, filed concurrently herewith.

## THE IDENTIFIED PROPERTY

7.   The Debtors have commenced these chapter 11 cases to achieve the dual objectives of (a) equitably compensating victims of abuse in its Scouting programs and (b) ensuring that the BSA emerges from bankruptcy with the capability to continue carrying out its mission. Congress, in chartering the BSA, recognized that the BSA mission was "intended to supplement and enlarge established modern educational facilities in activities in the great and healthful out-of-doors where may be the better developed physical strength and endurance, self-reliance, and the powers of initiative and resourcefulness, all for the purpose of establishing through the boys of today the very highest type of American citizenship." H.R. Rep. No. 64-130, at 1 (1916). If the BSA's mission is to continue, it is imperative that the Debtors and their

relevant stakeholders begin to immediately address the complicated legal and financial issues that the Debtors anticipate will be the subject of mediation (and potentially litigation) in these cases.[3]

8.    Prominent among these issues and central to the success of the non-profit Debtors' chapter 11 restructuring is the preservation of the Identified Property that is subject to enforceable use restrictions under applicable law and/or that the Debtors hold in a fiduciary capacity for the sole benefit of donors, their intended beneficiaries, and members of the public who have entrusted the Debtors with property to carry out the Debtors' mission, as authorized and approved by Congress. Much of the Identified Property, moreover, is essential to the BSA's ability to carry out its mission in a manner consistent with its charter and bylaws. Without, for example, the high adventure facilities owned by the BSA – including Northern Tier in Minnesota and parts of Canada, the Philmont Scout Ranch in New Mexico, and the Florida Sea Base in south Florida – the BSA could not provide essential experiences that form the heart of Scouting. Unlike a for-profit debtor, the non-profit BSA relies on property entrusted to the organization, and not simply capital, to carry out its mission.

9.    The Debtors assert that all of the Identified Property, both real and personal, is subject to enforceable restrictions under applicable law and/or is otherwise unavailable to satisfy creditor claims. As noted above, the Debtors have listed the Identified Property on the asset sheet attached hereto as **Exhibit B**, as such exhibit may be modified or supplemented from time to time.

---

[3] Concurrently herewith, the Debtors have filed the *Debtors' Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* (the "Mediation Motion"). The Mediation Motion requests the appointment of a sitting bankruptcy judge (if the relevant parties are unable to agree on a mediator) to mediate any and all issues related to the comprehensive resolution of claims relating to historical acts of abuse in the BSA's Scouting programs through a chapter 11 plan of reorganization.

10. The Debtors anticipate that the characterization of any property as Identified Property will be subject to litigation. See, e.g., In re Archdiocese of Milwaukee, Adv. Pro. No. 11-02459 (SVK) (Bankr. E.D. Wis. 2011) (adversary proceeding concerning whether certain assets were available for creditor recoveries); In re Catholic Diocese of Wilmington Inc., Adv. Pro. No. 09-52866 (CSS) (Bankr. D. Del. 2009) (same); In re Roman Catholic Archbishop of Portland, Adv. Pro. No. 04-03292 (ELP) (Bankr. D. Or. 2004) (same); In re Catholic Diocese of Spokane, Adv. Pro. No. 04-80038 (PCW) (Bankr. E.D. Wash. 2004) (same). Because the issue of Identified Property directly affects creditor recoveries, the Debtors anticipate that any official committee formed in these chapter 11 cases (a "Committee") or future claimants' representative appointed in these chapter 11 cases (the "Future Claimants' Representative" and together with any such Committee, a "Complainant") will likely commence an adversary proceeding seeking a determination of whether the Identified Property is available for creditor recoveries.

11. In light of the significant costs to both creditors and the estate that could be associated with protracted discovery and litigation of the Property Dispute, the Debtors have proactively taken steps to minimize such costs by establishing and populating an electronic data room (the "Data Room") that contains information relevant to the Property Dispute. The Data Room currently includes, among other things, financial information and asset-level information for the Debtors and the Identified Property, and the Debtors continue to populate the Data Room with relevant information. The Debtors are doing their utmost to ensure that the Data Room will include all information that would typically be requested through discovery, so that key constituents can, without obstruction or undue delay, review, examine, and consider all documents relevant to this issue. Further, subject to the entry of an acceptable confidentiality

and protective order, the Debtors intend to make the Data Room available to a Complainant.[4] The Debtors hope that by preemptively gathering and providing this information, all parties in interest will benefit from a reduction in the costly delays and expenses of protracted discovery.

## RELIEF REQUESTED

12. By this Motion, the Debtors respectfully request that the Court enter the Proposed Order substantially in the form attached hereto as **Exhibit A**, scheduling dates and deadlines (the "Proposed Schedule") in connection with the Property Dispute.

13. The Debtors request that the Court hear this Motion on the date established for the hearing of the Debtors' second day motions.

14. Before the hearing on this Motion, the Debtors will seek to meet and confer with counsel for any Committee and the Future Claimants' Representative in the hope of reaching agreement on the Proposed Order and Proposed Schedule.

## THE PROPOSED SCHEDULE

15. A summary of the key deadlines that the Debtors seek to establish pursuant to the Proposed Schedule are as follows:

- Access to the Data Room: to be given to the advisors of a Complainant upon their formation or appointment and subject to the entry of an acceptable confidentiality and protective order;

- Deadline for a Complainant to request initial information against the Debtors that are not duplicative of the documents and information available in the Data Room: fourteen (14) days after their formation or appointment;

- Deadline for a Complainant to file a Complaint commencing the Property Dispute: thirty (30) days from entry of the Proposed Order;

- Deadline for the filing of any Answer to the Complaint (the "Answer"): thirty (30) days from the filing of the Complaint;

---

[4] A form of the confidentiality and protective order was filed as **Exhibit C** to the *Debtors' Informational Brief* [Docket No. 4].

- Meet and confer regarding subsequent scheduling: no later than fourteen (14) days after the filing of the Answer;

- Deadline for Statement on Mediation: ninety (90) days after the Petition Date; and

- Status Conference for subsequent scheduling: To be requested with Chambers subject to availability no later than one hundred twenty (120) days from the Petition Date.

**BASIS FOR RELIEF**

16.     As a non-profit organization that relies on donations and volunteers, an efficient resolution of the property dispute is critical to the Debtors' ability to continue to exist and to reorganize.  Moreover, the Debtors face significant difficulty in accurately projecting creditor recoveries or their ability to continue as a going concern without a final determination as to whether the Identified Property is property available for creditor recoveries.

17.     Any delay in a resolution of the property dispute will result in additional costs to the Debtors, interfere with creditor recovery, including ensuring that victims are fairly compensated, and jeopardize the continued existence of this critical and storied non-profit organization.  Accordingly, the Debtors are seeking to strike balance between affording parties in interest a sufficient opportunity to review, examine and potentially challenge the Debtors' characterizations of their assets, on the one hand, with the manifest need to avoid protracted, disorganized and delayed litigation in these cases. Accordingly, subject to an acceptable confidentiality and protective order, the Debtors are providing a Complainant immediate access to the Data Room populated with a significant volume of relevant information in connection with the Property Dispute and requesting a fair and efficient time frame for adjudicating this dispute.

18.     An adversary proceeding commenced under Bankruptcy Rule 7001 is appropriate for determining the interests of a Debtor in property and adversary proceedings have been

commenced in other bankruptcy cases involving similar disputes regarding the characterization of property. See, e.g., In re Archdiocese of Milwaukee, Adv. Pro. No. 11-02459 (SVK) (Bankr. E.D. Wis. 2011), ECF No. 1, at 2 (complaint commencing adversary proceeding pursuant to Bankruptcy Rule 7001 to determine interests of Debtor in property); In re Roman Catholic Bishop of Great Falls, Mont., Adv. Pro. No. 09-52866 (CSS) (Bankr. D. Del. 2009), ECF No. 1 (same). Bankruptcy courts have also, in similar contexts, ordered that committees file an adversary proceeding to determine ownership of property. In re Catholic Diocese of Wilmington Inc., 432 B.R. 135, 146 (Bankr. D. Del. 2009) (stating that the court "instructed the Committee to commence an adversary proceeding to resolve" issues relating to the debtors' ownership of and interests in property); In re Roman Catholic Archbishop of Portland, Adv. Pro. No. 04-03292 (ELP) (Bankr. D. Or. 2004), ECF. No. 157 (ordering the tort claimant committee to "file an adversary proceeding seeking a declaratory judgment relating to Debtor's ownership of and interests in the property . . .").

19. Courts have the inherent power to adopt and implement deadlines, such as the Proposed Schedule, which will aid in the orderly and efficient administration of proceedings. McGehee v. U.S. Dep't of Justice, 362 F. Supp. 3d 14, 18 (D.D.C. 2019) (noting that courts "enjoy broad discretion when deciding case management and scheduling matters") (citing In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1210 (D.C. Cir. 2003)); In re Iron-Oak Supply Corp., 162 B.R. 301, 304 (Bankr. E.D. Cal. 1993) ("It is settled that there is a discretionary power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal quotation marks omitted)) (collecting cases).

20. In addition to this inherent power, section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The grant of authority under 105(a) extends to adopting and implementing deadlines. See, e.g., In re DSC, Ltd., 325 B.R. 741, 744 (Bankr. E.D. Mich. 2005) (finding that, where a bankruptcy court set a deadline for joining an involuntary petition for bankruptcy, "the [c]ourt simply exercised its normal case management authority" and "the [c]ourt also had authority to issue this scheduling order . . . under the provisions of 11 U.S.C. § 105(a) and (d)). Likewise, Federal Rule 16, as made applicable by Bankruptcy Rule 7016, authorizes courts to enter scheduling orders for the purpose of "provid[ing] for the judicial control over a case, streamlin[ing] proceedings, maximiz[ing] the efficiency of the court system, and actively manag[ing] the timetable of case preparation to expedite the speedy and efficient disposition of cases." Paoli v. Stetser, No. 12-66-GMS-CJB, 2013 WL 2154393, at *2 (D. Del. May 6, 2013) (internal quotation marks and citation omitted).

21. Bankruptcy courts have consistently affirmed that the purpose of a scheduling order is to promote the efficient and economical use of the estates' resources, allow the court to maintain judicial control over the proceedings, and conserve judicial resources. See e.g., In re Coyne Elec. Contractors, Inc., 231 B.R. 204, 207 (Bankr. S.D.N.Y. 1999) ("The policy underlying rigorous adherence to the Scheduling Order and the Joint Pretrial Order is based upon the necessity to administer all contested matters and adversary proceedings in a Chapter 11 case as promptly as possible for the benefit of the parties to the adversary proceeding and all parties in interest in the Chapter 11 case."); In re Scott, No. 07-40001, 2007 WL 1555814, at *1 (Bankr. N.D. Ind. May 11, 2007) ("If the prescribed path is followed, and counsel does what the court

has asked or expects, things operate like clockwork and cases can be processed smoothly and efficiently . . . that is the very purpose for procedural rules and scheduling orders."). Implementation of the Proposed Schedule would further these goals by minimizing the resources necessary to determine the Debtors' interest in the Identified Property.

22. The Debtors seek to establish administrative and procedural safeguards in order to administer the Property Dispute at the least possible expense and in the most efficient and timely manner. All interested parties in these chapter 11 cases will suffer greatly if the Property Dispute is not commenced as soon as possible and not efficiently organized. The Debtors submit that the Proposed Schedule will protect the due process rights of all parties in interest to these chapter 11 cases and are appropriate under the circumstances, and it is fair and equitable for this court to establish the Proposed Schedule pursuant to the Court's broad power under section 105(a) of the Bankruptcy Code, Federal Rule 7016(b), and the Court's inherent authority to manage its own docket.

## **NOTICE**

23. Notice of this Motion has been served on the following parties and/or their counsel, if known, via first-class mail, e-mail and/or hand delivery: (i) the U.S. Trustee; (ii) the twenty-five (25) law firms representing the largest numbers of abuse victims asserting claims against the Debtors; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, other than abuse-related claims; (iv) counsel to JPMorgan Chase Bank, N.A.; (v) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; (vi) representatives of the prepetition Ad Hoc Committee of Local Councils; (vii) counsel to the prepetition Future Claimants' Representative; (viii) counsel to the prepetition ad

hoc group of attorneys representing significant numbers of abuse victims; (ix) the United States Attorney's Office for the District of Delaware; (x) the Internal Revenue Service; (xi) the United States Department of Justice; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, approving the Proposed Schedule for litigating the Property Dispute and granting any further relief the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated:  February 18, 2020<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Derek C. Abbott*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Joseph C. Barsalona II (No. 6102)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@mnat.com<br>           aremming@mnat.com<br>           jbarsalona@mnat.com<br>           emoats@mnat.com<br>           ptopper@mnat.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>James F. Conlan (*pro hac vice* pending)<br>Thomas A. Labuda (*pro hac vice* pending)<br>Michael C. Andolina (*pro hac vice* pending)<br>Matthew E. Linder (*pro hac vice* pending)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Email:  jconlan@sidley.com<br>           tlabuda@sidley.com<br>           mandolina@sidley.com<br>           mlinder@sidley.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter (*pro hac vice* pending)<br>Alex R. Rovira<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone:  (212) 839-5300<br>Email: jboelter@sidley.com<br>           arovira@sidley.com<br><br>PROPOSED COUNSEL TO THE DEBTORS<br>AND DEBTORS IN POSSESSION |

13