## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343(___) |
| Debtors. | (Joint Administration Requested) |

## CHAPTER 11 PLAN OF REORGANIZATION FOR
## BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

SIDLEY AUSTIN LLP
James F. Conlan
Thomas A. Labuda
Michael C. Andolina
Matthew E. Linder
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Email: jconlan@sidley.com
        tlabuda@sidley.com
        mandolina@sidley.com
        mlinder@sidley.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter
Alex R. Rovira
Andrew P. Propps
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Email: jboelter@sidley.com
        arovira@sidley.com
        apropps@sidley.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Paige N. Topper (No. 6470)
Eric Moats (No. 6441)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
       aremming@ mnat.com
       jbarsalona@mnat.com
       ptopper@mnat.com
       emoats@mnat.com

*Proposed Counsel for the Debtors and Debtors in Possession*

Dated: February 18, 2020
       Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

**ARTICLE I** DEFINITIONS AND RULES OF INTERPRETATION ...........................................1

    A.    Definitions.  The following terms shall have the meanings set forth below: ...............1

    B.    Interpretation; Application of Definitions and Rules of Construction.........................18

    C.    Reference to Monetary Figures.....................................................................19

    D.    Controlling Document. ...............................................................................19

**ARTICLE II** ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ...............................19

    A.    Administrative Expense Claims.....................................................................19

    B.    Priority Tax Claims.....................................................................................20

**ARTICLE III** CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .....21

    A.    Classification of Claims and Interests..............................................................21

    B.    Treatment of Claims and Interests. ................................................................21

    C.    Elimination of Vacant Classes. .....................................................................26

**ARTICLE IV** VICTIMS COMPENSATION TRUST ....................................................26

    A.    Establishment and Purpose of the Victims Compensation Trust.............................26

    B.    Receipt of Trust Assets. ..............................................................................27

    C.    The Trust Distribution Procedures..................................................................27

    D.    Discharge of Liabilities to Holders of Abuse Claims. .........................................27

    E.    Imposition of Channeling Injunction. .............................................................28

    F.    Insurance Rights Transfer. ...........................................................................28

    G.    Indemnification Obligations. ........................................................................29

    H.    Investment Guidelines. ...............................................................................30

    I.    Excess Assets in Victims Compensation Trust..................................................30

    J.    Trust Expenses. ........................................................................................30

    K.    Victims Compensation Trustee......................................................................30

    L.    Compensation of Victims Compensation Trustee and Retention of Professionals. ....31

    M.    Future Claimants' Representative....................................................................31

    N.    Trust Advisory Committee. ..........................................................................31

    O.    Consent Rights of the Debtors and the Reorganized Debtors..................................32

    P.    Cooperation; Transfer of Books and Records......................................................32

    Q.    U.S. Federal Income Tax Treatment of the Victims Compensation Trust. ................33

    R.    Institution and Maintenance of Legal and Other Proceedings....................................33

    S.    Insurance Neutrality...................................................................................33

**ARTICLE V** MEANS FOR IMPLEMENTATION OF THE PLAN............................................34

    A.      No Substantive Consolidation...................................................................................34

    B.      General Settlement of Claims and Interests..............................................................34

    C.      Sources of Consideration for Distributions..............................................................35

    D.      Exit Facilities. ..........................................................................................................35

    E.      Organizational Documents.......................................................................................35

    F.      Reorganized Debtors' Directors and Senior Management. ......................................35

    G.      Due Authorization....................................................................................................35

    H.      Continued Legal Existence. .....................................................................................36

    I.      Vesting of Assets in the Reorganized Debtors. .......................................................36

    J.      Cancellation of Indebtedness. ..................................................................................36

    K.      Effectuating Documents and Further Transactions..................................................36

    L.      Cancellation of Liens. ..............................................................................................37

    M.      Closing of Chapter 11 Cases....................................................................................37

    N.      Preservation of Causes of Action.............................................................................37

    O.      Setoffs and Recoupment. .........................................................................................37

    P.      Exemption from Certain Transfer Taxes and Recording Fees..................................38

    Q.      Directors and Officers Insurance Policies...............................................................38

    R.      Other Insurance Policies. .........................................................................................38

**ARTICLE VI** EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................38

    A.      Assumption of Executory Contracts and Unexpired Leases....................................38

    B.      Rejection Damages Claims. .....................................................................................39

    C.      Cure of Defaults under Executory Contracts and Unexpired Leases. .....................39

    D.      Contracts and Leases Entered into After the Petition Date.....................................40

    E.      Compensation and Benefits Programs. ....................................................................41

    F.      Workers' Compensation Program.............................................................................41

    G.      Indemnification Obligations. ...................................................................................41

    H.      Local Council Charters. ...........................................................................................42

    I.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.....42

    J.      Reservation of Rights................................................................................................42

**ARTICLE VII** DISTRIBUTIONS ........................................................................................42

    A.      Distributions Generally.............................................................................................42

    B.      Distribution Record Date. ........................................................................................42

    C.      Date of Plan Distributions........................................................................................43

D.  No Postpetition Interest on Claims. ................................................43

E.  Undeliverable and Non-Negotiated Plan Distributions. ...........................43

F.  Manner of Payment under the Plan.................................................44

G.  Satisfaction of Claims. ........................................................44

H.  Minimum Cash Distributions......................................................44

I.  Setoffs and Recoupments.........................................................44

J.  Allocation of Plan Distributions Between Principal and Interest. ...............44

K.  No Plan Distribution in Excess of Amount of Allowed Claim.......................45

L.  Withholding and Reporting Requirements. ........................................45

M.  Allowed Claims Paid by Third Parties............................................45

N.  Claims for Indemnification Obligations. ........................................45

**ARTICLE VIII** DISPUTED CLAIMS ......................................................46

A.  Objections to Claims............................................................46

B.  Resolution of Disputed Administrative Expenses and Disputed Non-Abuse Claims. 46

C.  Resolution of Abuse Claims. ....................................................46

D.  Payments and Distributions with Respect to Disputed Claims......................46

E.  Distributions After Allowance. .................................................47

F.  Estimation of Claims............................................................47

G.  No Distributions Pending Allowance. ............................................47

H.  Claims Resolution Procedures Cumulative. .......................................47

I.  Interest........................................................................47

J.  Insured Non-Abuse Claims........................................................48

**ARTICLE IX** CONFIRMATION AND CONSUMMATION OF PLAN ..................................48

A.  Conditions Precedent to Confirmation............................................48

B.  Conditions Precedent to the Effective Date. ....................................48

C.  Waiver of Conditions Precedent to the Effective Date............................49

D.  *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date. .........49

**ARTICLE X** EFFECT OF PLAN CONFIRMATION.............................................49

A.  Binding Effect..................................................................49

B.  Pre-Confirmation Injunctions and Stays. ........................................49

C.  Discharge. .....................................................................50

D.  **Channeling Injunction**.......................................................50

E.  Provisions Relating to Channeling Injunctions...................................52

F.  **Injunction Against Interference with Plan**. .................................53

G. **Releases**. ................................................................................................53

H. **Exculpation**. .............................................................................................54

I. **Injunctions Related to Releases and Exculpation**. ................................54

J. Reservation of Rights. .................................................................................55

K. Disallowed Claims. .....................................................................................55

**ARTICLE XI** RETENTION OF JURISDICTION ........................................................56

A. General Retention. ......................................................................................56

B. Specific Purposes. .......................................................................................56

**ARTICLE XII** MISCELLANEOUS PROVISIONS ....................................................58

A. Substantial Consummation of the Plan. .....................................................58

B. Amendment or Modification of the Plan. ...................................................58

C. Effectuating Documents and Further Transactions. ....................................59

D. Successors and Assigns. ..............................................................................59

E. Revocation or Withdrawal of Plan. .............................................................59

F. The Official Committees and the Future Claimants' Representative. .........59

G. Request for Expedited Determination of Taxes. .........................................60

H. Non-Severability of Plan Provisions. ..........................................................60

I. Governing Law. ...........................................................................................60

J. Immediate Binding Effect. ..........................................................................61

K. Computation of Time. .................................................................................61

L. Deemed Acts. ..............................................................................................61

M. Entire Agreement. .......................................................................................61

N. Exhibits to Plan. ..........................................................................................61

O. Notices. ........................................................................................................61

# EXHIBITS

| Exhibit A | Trust Agreement |
|---|---|
| Exhibit B | Trust Distribution Procedures |
| Exhibit C | Victims Compensation Trustee |
| Exhibit D | Trust Advisory Committee |
| Exhibit E | Identified Property |
| Exhibit F | Local Councils |
| Exhibit G | Related Non-Debtor Entities |
| Exhibit H | Local Council Trust Contributions |
| Exhibit I | Chartered Organization Trust Contributions |
| Exhibit J | Rejected Contracts Schedule |
| Exhibit K | Restated 2010 Bond Documents |
| Exhibit L | Restated 2012 Bond Documents |
| Exhibit M | Restated 2010 Credit Facility Documents |
| Exhibit N | Restated 2019 RCF Documents |
| Exhibit O | Summary of Exit Facility Terms |
| Exhibit P | Reorganized Debtors' Officers and Directors |

## INTRODUCTION

Boy Scouts of America and Delaware BSA, LLC, the debtors and debtors in possession in the above-captioned chapter 11 cases, hereby propose this plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings ascribed to such terms in <u>Section I.A</u>.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, charitable mission, operations, projections for those operations, risk factors, a summary and analysis of the Plan, and certain related matters.

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

A.    Definitions.  The following terms shall have the meanings set forth below:

1.    "<u>2010 Bond</u>" means The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project) Series 2010B in an aggregate principal amount of $50,000,000, issued by the Issuer pursuant to the 2010 Bond Agreement, the proceeds of which were loaned to the BSA pursuant to the 2010 Note.

2.    "<u>2010 Bond Claim</u>" means any Claim against the Debtors arising under, derived from, or based upon the 2010 Bond Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2010 Bond  Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to repay the 2010 Note, interest on the 2010 Note, and all fees, costs, expenses and obligations of any kind or character due or recoverable under the 2010 Bond Documents.

3.    "<u>2010 Bond Documents</u>" means collectively, the 2010 Bond, the 2010 Bond Agreement, the 2010 Note, the Prepetition Security Agreement (2019), the Prepetition Security Agreement (2020), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

4.     "<u>2010 Bond Agreement</u>" means that certain Bond Purchase and Loan Agreement dated as of November 5, 2010 between the Issuer, JPMorgan, the BSA and Arrow WV, Inc., as amended, restated, supplemented or otherwise modified from time to time.

5.    "<u>2010 Credit Agreement</u>" means that certain Credit Agreement dated as of August 11, 2010, pursuant to which JPMorgan, as lender, made term loans to the BSA in an aggregate amount of $25,000,000 and agreed to make revolving loans to the BSA and issue letters of credit on behalf of the BSA in an aggregate amount of up to $75,000,000, as such agreement has been amended by that certain First Amendment to Credit Agreement dated as of November 5, 2010, that certain Second Amendment to Credit Agreement dated as of November 11, 2011, that certain Third Amendment to Credit Agreement dated as of March 9, 2012, that certain Fourth Amendment to Credit Agreement dated as of April 25, 2016, that certain Fifth Amendment to Credit Agreement dated as of March 2, 2017, that certain Sixth Amendment to

Credit Agreement dated as of February 15, 2018, and that certain Seventh Amendment to Credit Agreement dated as of March 21, 2019.

6.     "2010 Credit Facility Claim" means any Claim against the Debtors arising under, derived from, or based upon the 2010 Credit Facility Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2010 Credit Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the 2010 Credit Documents.

7.     "2010 Credit Facility Documents" means, collectively, the 2010 Credit Agreement, the Prepetition Security Agreement (2019), the Prepetition Security Agreement (2020) and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

8.     "2010 Note" means that certain Promissory Note – 2010B executed by the BSA, as borrower, and payable to the order of the Issuer in the original principal amount of $50,000,000, which note was pledged by the Issuer to secure the repayment of the 2010 Bond, as amended, restated, supplemented or otherwise modified from time to time.

9.     "2012 Bond" means The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2012 in an aggregate principal amount of $175,000,000, issued by the Issuer pursuant to the 2012 Bond Agreement, the proceeds of which were loaned to the BSA pursuant to the 2012 Note.

10.     "2012 Bond Claim" means any Claim against the Debtors arising under, derived from, or based upon the 2012 Bond Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2012 Bond Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to repay the 2012 Note, interest on the 2012 Note, and all fees, costs, expenses and obligations of any kind or character due or recoverable under the 2012 Bond Documents.

11.     "2012 Bond Documents" means collectively, the 2012 Bond, the 2012 Bond Agreement, the 2012 Note, the Prepetition Security Agreement (2019), the Prepetition Security Agreement (2020) and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

12.     "2012 Bond Agreement" means that certain Bond Purchase and Loan Agreement dated as of March 9, 2012 between the Issuer, JPMorgan, the BSA and Arrow WV, Inc., as amended, restated, supplemented or otherwise modified from time to time.

13.     "2012 Note" means that certain Promissory Note – 2012 executed by the BSA, as borrower, and payable to the order of the Issuer in the original principal amount of $175,000,000, which note was pledged by the Issuer to secure the repayment of the 2012 Bond, as amended, restated, supplemented or otherwise modified from time to time.

14.    "2019 RCF Agreement" means that certain Credit Agreement dated as of March 21, 2019, pursuant to which JPMorgan, as lender, agreed to make revolving loans to the BSA and issue letters of credit on behalf of the BSA in an aggregate amount of up to $71,500,000, the maturity date of which was extended pursuant to that certain Consent to Extension of Maturity Date dated as of January 16, 2020.

15.    "2019 RCF Claim" means any Claim against the Debtors arising under, derived from, or based upon the 2019 RCF Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2019 RCF Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the 2019 RCF Documents.

16.    "2019 RCF Documents" means, collectively, the 2019 RCF Agreement, the Prepetition Security Agreement (2019), the Prepetition Security Agreement (2020) and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

17.    "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault and/or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

18.    "Abuse Claim" means a liquidated or unliquidated Claim against any Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by any Protected Party or any other Person for whom any Protected Party is alleged to be responsible. Notwithstanding the foregoing, with respect to Contributing Chartered Organizations, the term "Abuse Claim" shall be limited to any Claim that is attributable to, arises from, is based upon, relates to, or results from, Abuse that occurred prior to the Petition Date and exists solely by virtue of the Contributing Chartered Organizations' affiliation with the Debtors. "Abuse Claim" includes any Future Abuse Claim and any Indirect Abuse Claim, and any Claim that is attributable to, arises from, is based upon, relates to, or results from Abuse that, as of the Petition

Date, is barred by any applicable statute of limitations.  Neither this definition nor the use of this definition in the Plan Documents or any filing in the Chapter 11 Cases shall constitute a waiver of any defense that would otherwise be available under applicable law to the Debtors, the Reorganized Debtors, any Protected Party, any Local Council, the Victims Compensation Trust, or any other Person.

19.    "<u>Abuse Claimants Committee</u>" means any official committee of holders of Abuse Claims appointed by the United States Trustee in the Chapter 11 Cases under section 1102(a) of the Bankruptcy Code.

20.    "<u>Abuse Claims Bar Date</u>" means, as to an Abuse Claim, the deadline for filing a Proof of Claim as to such Claim, as established by the Bar Date Order.

21.    "<u>Administrative Expense Claim</u>" means any right to payment from the Debtors that constitutes a cost or expense of administration incurred during the Chapter 11 Cases of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred during the period from the Petition Date to and including the Effective Date of preserving the Estates and continuing operations of the Debtors; (b) Professional Fee Claims; and (c) Quarterly Fees.

22.    "<u>Administrative Expense Claims Bar Date</u>" means the deadline for filing requests for payment of Administrative Expense Claims, which: (a) with respect to General Administrative Expense Claims shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

23.    "<u>Affiliate</u>" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.  "Affiliated" shall have a correlative meaning.

24.    "<u>Allowed</u>" means:

   a.    with respect to any Claim that is asserted to constitute an Administrative Expense Claim: (i) a Claim that represents an actual and necessary expense of preserving the Estates or operating the organization of the Debtors, to the extent such Claim is determined by the Debtors to constitute an Administrative Expense; (ii) other than with respect to a Professional Fee Claim, a Claim that is Disputed by the Debtors, which Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court to the extent that such allowed portion is determined by a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or (iii) a Professional Fee Claim, to the extent allowed by a Final Order of the Bankruptcy Court.

   b.    with respect to any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, or 2012 Bond Claim, any such Claim that is expressly allowed as provided under <u>Article III</u>.

4

c.      with respect to any Priority Tax Claim, Other Priority Claim, Other Secured Claim, or General Unsecured Claim, or any portion of any of the foregoing, a Claim that is: (i) not listed in the Schedules as disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim has been filed, and that has not been paid pursuant to an order of this Court prior to the Effective Date; (ii) evidenced by a Proof of Claim filed on or before the applicable Bar Date and is not listed in the Schedules as disputed, contingent or unliquidated, and as to which no objection has been filed on or before the Claims Objection Deadline; (iii) not the subject of an objection to allowance that (A) was filed on or before the Claims Objection Deadline and (B) has not been settled, waived, withdrawn or denied pursuant to a Final Order; or (iv) is expressly allowed (x) pursuant to a Final Order, (y) pursuant to an agreement between the holder of such Claim and the Debtors or the Reorganized Debtors, as applicable, or (z) pursuant to the terms of the Plan.  For the avoidance of doubt, a Claim evidenced by a Proof of Claim filed after the applicable Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order expressly allowing such late-filed Claim.

d.      with respect to any Abuse Claim or any Interest, the term "Allowed" shall not apply.

25.     "<u>Avoidance Actions</u>" means any and all actual or potential avoidance, recovery, subordination or other Claims or Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such claim(s) or cause(s) of action was commenced prior to the Effective Date.

26.     "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

27.     "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

28.     "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

29.     "Bar Date" means, as to a particular Claim, the deadline for filing a Proof of Claim as to such Claim, as established by the Bar Date Order.

30.     "Bar Date Order" means one or more Final Orders of the Bankruptcy Court establishing deadlines for the filing of Proofs of Claim and other claims filing procedures and requirements.

31.     "BSA" means the Boy Scouts of America, a congressionally chartered non-profit corporation under title 36 of the United States Code.

32.     "BSA Trust Contributions" means: (a) the Debtors' assets that do not constitute Identified Property (or the value of such assets) as of the Effective Date, including assets identified by the Debtors as Identified Property that are later determined by a Final Order to be available to satisfy creditor claims; plus (b) (i) the Insurance Rights and (ii) any other amounts, as determined by the Debtors in their sole and absolute discretion; less (c) (i) the aggregate amount of all Allowed Administrative Expenses, Allowed Priority Tax Claims, and Allowed Other Priority Claims, (ii) the GUC Plan Distribution, and (iii) the Working Capital, and (iv) the value of any valid, perfected and enforceable security interest and lien of any holder of an Allowed Secured Claim in any collateral that does not constitute Identified Property, including any collateral that is identified by the Debtors as Identified Property that is later determined by a Final Order to be available to satisfy creditor claims.

33.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

34.     "Cause of Action" means any action, class action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any claim under any local, state, federal or foreign law, including any fraudulent transfer or similar claim.

35.     "Channeling Injunction" means the permanent injunction provided for in Section X.D with respect to Abuse Claims to be issued pursuant to the Confirmation Order.

36.     "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code.

37. "<u>Chartered Organization Trust Contributions</u>" means, for each Contributing Chartered Organization, the Cash and other assets being contributed to the Victims Compensation Trust, as specified on <u>Exhibit J</u> hereto.

38. "<u>Chartered Organizations</u>" means those certain civic, faith-based, or educational organizations or groups of individual citizens authorized by the Debtors to operate scouting units.

39. "<u>Claim</u>" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

40. "<u>Claims Objection Deadline</u>" means the deadline for filing an objection to any Claim, including any Claim for damages arising from or relating to the Debtors' rejection of any Executory Contract or Unexpired Lease, which deadline shall be 180 days after the Effective Date, subject to any extensions approved by an order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that the Claims Objection Deadline shall not apply to any Claim filed after the applicable Bar Date; <u>provided further</u>, <u>however</u>, that the Claims Objection Deadline shall not apply to Abuse Claims, which shall be administered on a timeline determined by the Victims Compensation Trustee, in consultation with the Future Claimants' Representative and the Trust Advisory Committee, subject to Bankruptcy Court approval.

41. "<u>Class</u>" means each category of holders of Claims or Interests as set forth in <u>Article III</u> pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

42. "<u>Compensation and Benefits Programs</u>" means all employment agreements and policies, and all employment, compensation, and benefit plans, policies, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors, and the employees, retirees and non-employee directors of the Local Councils and the Related Non-Debtor Entities.

43. "<u>Confirmation</u>" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

44. "<u>Confirmation Date</u>" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

45. "<u>Confirmation Hearing</u>" means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

46. "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

47.    "<u>Contributing Chartered Organizations</u>" means the Chartered Organizations listed on <u>Exhibit J</u> hereto.

48.    "<u>Coverage Actions</u>" means any and all pending coverage litigation between the BSA and any Insurer as of the Petition Date, including: (a) *Boy Scouts of America, et al. v. Insurance Company of North America et al.*, Case No. DC-18-11896 pending in the 192nd Judicial District Court of Dallas County, Texas; (b) *Boy Scouts of America, et al. v. Hartford Accident and Indemnity Co.*, et al., Case No. 3:19-CV-1318 pending in the United States District Court for the Northern District of Texas, Dallas Division; and (c) *National Surety Corp. v. Boy Scouts of America, et al.*, Case No. 2017-CH-14975 pending in the Circuit Court of Cook County, Illinois, Chancery Division.

49.    "<u>Cure Amount</u>" means all amounts, including an amount of $0.00, required to cure any monetary default under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

50.    "<u>D&O Liability Insurance Policies</u>" means all insurance policies issued at any time to any of the Debtors for directors', managers', and officers' liability in effect as of the Effective Date (including any "tail policy" or run-off coverage and including any such policy that provides protection to any Local Council's directors, managers or officers) and all agreements, documents, or instruments relating thereto.

51.    "<u>Disallowed</u>" means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, or General Unsecured Claim, any such Claim (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction. "Disallowance" and "Disallowing" shall have correlative meanings.  With respect to any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, 2012 Bond Claim, Abuse Claim or Interest, the term "Disallowed" shall not apply.

52.    "<u>Disclosure Statement</u>" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

53.    "<u>Disclosure Statement Order</u>" means one or more orders entered by the Bankruptcy Court (a) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code; and (b) authorizing solicitation of the Plan.

54.    "<u>Disputed</u>" means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, or General Unsecured Claim, any such Claim (or portion thereof) (a) that is neither an Allowed Claim nor a Disallowed Claim, (b) that is listed on the Schedules as "disputed," or (c) for which a Proof of Claim has been timely filed or a written request for payment has been made to the extent that any party in interest has interposed

a timely objection to such Claim, which objection has not been withdrawn or determined pursuant to a Final Order.

55.     "<u>Distribution Date</u>" means, except as set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as reasonably practicable after the Effective Date, upon which the Reorganized Debtors shall make Plan Distributions to holders of Allowed Claims. The Distribution Date shall not pertain to Trust Distributions made to holders of Abuse Claims, which shall be governed by the Trust Documents in all respects.

56.     "<u>Distribution Record Date</u>" means the record date for purposes of making Plan Distributions on account of Allowed Claims, which date shall be the Effective Date.  The Distribution Record Date shall not pertain to Abuse Claims, which shall be governed by the Trust Documents in all respects.

57.     "<u>District Court</u>" means the United States District Court for the District of Delaware.

58.     "<u>Effective Date</u>" means, and shall occur on, the Business Day on which each of the conditions precedent to the effectiveness of the Plan set forth in <u>Section IX.B</u> has been satisfied or waived in accordance with the terms thereof.

59.     "<u>Encumbrance</u>" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

60.     "<u>Entity</u>" means an entity as defined in section 101(15) of the Bankruptcy Code.

61.     "<u>Estate</u>" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

62.     "<u>Exit Facility</u>" means that certain credit facility or facilities, the relevant terms of which shall be included in a summary filed with the Plan Supplement and thereafter attached to the Plan as <u>Exhibit Q</u>.

63.     "<u>Exculpated Parties</u>" means, collectively, the following Persons, in each case in its or their capacity as such: (a) the Debtors and the Reorganized Debtors; (b) such Released Parties that are fiduciaries of the Estates; and (c) with respect to the foregoing Persons in clauses (a) and (b), such Persons' and its and their current and former Affiliates, and such Persons' and its and their current and former Affiliates' current and former subsidiaries, officers, directors, managers, principals, trustees, members, partners, employees, agents, advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives and other professionals.

9

64.    "<u>Executory Contract</u>" means any executory contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

65.    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; <u>provided</u>, <u>however</u>, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

66.    "<u>Future Abuse Claim</u>" means any Abuse Claim against any Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date but which, as of the date immediately preceding the Petition Date, was held by a Person who, as of such date, (a) had not attained eighteen (18) years of age, (b) suffered from "repressed memory" such that the holder of the Abuse Claim was not aware that he or she held an Abuse Claim as of such date, or (c) had not discovered the injury or the connection between the injury and the Abuse and who could not in the exercise of reasonable care have discovered the injury or connection between the injury and the Abuse.  Notwithstanding the foregoing, with respect to Contributing Chartered Organizations, the term "Future Abuse Claim" shall be limited to any Abuse Claim that exists solely by virtue of the Contributing Chartered Organizations' affiliation with the Debtors.

67.    "<u>Future Claimants' Representative</u>" means James L. Patton, Jr., the legal representative to be appointed by the Bankruptcy Court for holders of Future Abuse Claims, any successor legal representative appointed by the Bankruptcy Court, or, on and after the Effective Date, any successor legal representative appointed in accordance with the Trust Agreement.

68.    "<u>General Administrative Expense Claim</u>" means an Administrative Expense Claim other than a Professional Fee Claim or a Claim for Quarterly Fees.

69.    "<u>General Unsecured Claim</u>" means any Claim against the Debtors that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a 2010 Credit Facility Claim, a 2019 RCF Claim, a 2010 Bond Claim, a 2012 Bond Claim, or an Abuse Claim.

70.    "<u>Governmental Unit</u>" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

71.  "GUC Plan Distribution" means [●].

72.  "Identified Property" means the assets of the Estates identified on Exhibit E, as such exhibit may be modified or supplemented from time to time, which assets are unavailable to satisfy creditor claims, including, among other reasons, because such assets are subject to legally enforceable restrictions requiring the use or disposition of such assets for a particular purpose and precluding the use of such assets for the Debtors' general corporate purposes; because the Debtors hold legal title to such assets in a fiduciary capacity for the sole benefit of donors, their intended beneficiaries, and/or members of the public who have entrusted the Debtors with property to carry out the Debtors' mission, as authorized and approved by Congress; because such assets are essential to the BSA's capability to carry out its mission in a manner consistent with its charter and bylaws; or otherwise.

73.  "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.  "Impair" and "impairment" shall have correlative meanings.

74.  "Indemnification Obligations" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, limited liability company agreements, or other organizational or formation documents, board resolutions, management or indemnification agreements, employment or other contracts, or otherwise, for the past and present directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents who provided services to the Debtors before, on, or after the Petition Date.

75.  "Indirect Abuse Claim" means any Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction) that is attributable to, arises from, is based upon, relates to, or results from, an Abuse Claim, and any other derivative or indirect Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever.

76.  "Insurance Action" means any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, against any Insurer, arising from or related to: (a) the refusal of any Insurer to compromise or settle any Abuse Claim under or pursuant to any Insurance Policy; (b) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Abuse Claim; (c) any conduct of any Insurer constituting "bad faith" or other wrongful conduct under applicable law; or (d) any Coverage Actions.

77.  "Insurance Policy" means any insurance policy or other agreement related to the provision of insurance in effect at any time before the Effective Date naming any of the Debtors as an insured or otherwise affording the Debtors rights, benefits, indemnity or insurance coverage upon which any claim has been or may be made with respect to any Abuse Claim. Notwithstanding the foregoing, "Insurance Policy" shall not include any D&O Liability Insurance Policies.

78.    "Insurance Proceeds" means any proceeds available or capable of being recovered under any Insurance Policy with respect to Abuse Claims by Protected Parties that have Insurance Rights to any Insurance Policy.

79.    "Insurance Rights" means any and all rights, titles, privileges, interests, claims, demands, or entitlements of Protected Parties that are the subject of the Insurance Rights Transfer to any Insurance Proceeds, payments, benefits, Causes of Action, choses in action, defenses or indemnities arising under or attributable to any and all Insurance Policies, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, with respect to Abuse Claims.  Insurance Rights shall include Insurance Actions.

80.    "Insurance Rights Transfer" means the transfer, assignment, and vesting of Insurance Rights described in Section IV.F.

81.    "Insured Non-Abuse Claim" means any Claim or portion of a Claim that is not an Abuse Claim and is or is asserted to be insured under any insurance policy (including any Insurance Policy) that benefits the Debtors.

82.    "Insurer" means any insurance company, other Entity, or any such company's or Entity's successor or assign, that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

83.    "Insurer Coverage Defense" means all rights and defenses at law or in equity that any Insurer may have under any Insurance Policy or applicable law to a claim seeking insurance coverage.

84.    "Interest" means any "equity security" as defined in section 101(16) of the Bankruptcy Code.

85.    "Issuer" means The County Commission of Fayette County (West Virginia) in its capacity as the issuer under the 2010 Bond Agreement and the 2012 Bond Agreement.

86.    "JPMorgan" means JPMorgan Chase Bank, National Association.

87.    "Lien" means any "lien" as defined in section 101(37) of the Bankruptcy Code.

88.    "Local Council Committee" means the Ad Hoc Committee of Local Councils of the Boy Scouts of America.

89.    "Local Councils" means, collectively, the local councils of the BSA listed on Exhibit G hereto.

90.    "Local Council Trust Contributions" means the contributions specified on Exhibit I hereto.

91. "Official Committees" means, collectively, the Abuse Claimants Committee and the UCC.

92. "Other Priority Claim" means any Claim against the Debtors that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

93. "Other Secured Claim" means any Secured Claim against the Debtors other than any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, or 2012 Bond Claim.

94. "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

95. "Petition Date" means February 18, 2020.

96. "Plan" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including the Plan Supplement and any other supplements and any schedules, exhibits or annexes hereto, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

97. "Plan Distribution" means a payment or distribution to holders of Allowed Claims, holders of Interests, or other eligible Persons under the Plan. Plan Distributions shall not include distributions to holders of Abuse Claims, which the Victims Compensation Trustee shall make in accordance with the Trust Documents.

98. "Plan Documents" means, collectively, (a) the Plan; (b) the Disclosure Statement; (c) the Disclosure Statement Order; (d) each of the documents comprising the Plan Supplement; (e) the Confirmation Order; (f) the Trust Agreement; (g) the Trust Distribution Procedures; and (h) any other document necessary to implement the Plan.

99. "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, which the Debtors shall file no later than seven (7) days before the deadline established by the Bankruptcy Court for filing objections to Confirmation or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following: (a) the Trust Agreement, (b) the identity of the initial Victims Compensation Trustee, (c) the initial members of the Trust Advisory Committee, (d) the Rejected Contracts Schedule, (e) the forms of the Restated 2010 Bond Documents, (f) the forms of the Restated 2012 Bond Documents, (g) the forms of the Restated 2010 Credit Facility Documents, (h) the forms of the Restated 2019 RCF Documents, (i) a summary of the relevant terms of the Exit Facility and (j) changes to the Reorganized Debtors' directors and officers, if any.

100. "Prepetition Security Agreement (2019)" means that certain Third Amended and Restated Security Agreement dated as of March 21, 2019, by and among the BSA and Arrow WV, Inc., as debtors, JPMorgan, in its capacity as collateral agent, JPMorgan, in its

capacity as the lender under the 2010 Credit Agreement and the 2019 RCF Agreement, and as holder under the 2010 Bond Agreement and the 2012 Bond Agreement.

101.    "<u>Prepetition Security Agreement (2020)</u>" means that certain Consent and Security Agreement dated as of February 3, 2020, by and among Delaware BSA, LLC, the BSA, JPMorgan, as collateral agent, and  JPMorgan, in its capacity as the lender under the 2010 Credit Agreement and the 2019 RCF Agreement, and as holder under the 2010 Bond Agreement and the 2012 Bond Agreement.

102.    "<u>Priority Tax Claim</u>" means any Claim of a Governmental Unit against the Debtors that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

103.    "<u>Privileged Information</u>" means any privileged information that relates, in whole or in part, to any Abuse Claim, including (a) the Debtors' books and records transferred to the Victims Compensation Trust in accordance with <u>Section IV.P</u>, (b) any privileged information containing a factual or legal analysis or review of any Abuse Claim, (c) any privileged information evaluating the reasonableness, effectiveness, or confirmability of the Plan or any other plan of reorganization or plan of liquidation filed or that could be filed in the Chapter 11 Cases, (d) any privileged information exchanged by the Debtors or their professionals, on the one hand, and the Non-Debtor Related Entities, Local Councils, the Local Council Committee, any Official Committee, or their respective professionals, on the other hand, related to the Plan, the Plan Documents, or the Abuse Claims, and (e) information shared pursuant to that certain Joint Defense, Common Interest, and Confidentiality Agreement among the BSA, the Local Council Committee, and each Local Council that executed a joinder to said agreement that was acknowledged in writing by the BSA and the Local Council Committee, and (f) any privileged information containing a factual or legal analysis of the Debtors' potential exposure in connection with any Abuse Claim or any litigation related thereto.

104.    "<u>Pro Rata</u>" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

105.    "<u>Professional</u>" means any Person retained by the Debtors or a statutory committee, if any, pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363 and/or 1103 of the Bankruptcy Code.

106.    "<u>Professional Fee Claim</u>" means any Claim of a Professional for allowance and award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Cases for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331 and/or 503(b) of the Bankruptcy Code.

107.    "<u>Protected Parties</u>" means, collectively, the following Persons, in each case in its and their capacity as such: (a) the Debtors and the Reorganized Debtors, as applicable; (b) the Local Councils; (c) the Non-Debtor Related Entities; (d) the Contributing Chartered Organizations; and (e) with respect to each of the foregoing Persons in clauses (a) through (d), such Persons' predecessors, successors, assigns, subsidiaries, Affiliates, current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials,

advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, as applicable; provided, however, that any perpetrator of Abuse that forms the basis for an Abuse Claim that is an individual is not and shall not be a Protected Party.  Notwithstanding the foregoing, the Contributing Chartered Organizations shall be "Protected Parties" only with respect to Abuse Claims that exist solely by virtue of the Contributing Chartered Organizations' affiliation with the Debtors.

108.    "Quarterly Fees" means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

109.    "Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim or Interest (other than the Debtors or an "insider" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holder thereof. "Reinstate" and "Reinstated" shall have correlative meanings.

110.    "Rejected Contracts Schedule" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors under the Plan, which schedule shall be included in the Plan Supplement and thereafter attached to the Plan as Exhibit K, as the same may be amended, modified, or supplemented from time to time.

111.    "Rejection Damages Claim" means a Claim for damages alleged to arise from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

112.    "Related Non-Debtor Entities" means the Entities listed on Exhibit H hereto, including non-Debtor Affiliates of the Debtors that are directly or indirectly wholly owned by, or subject to the control of, the BSA.  Related Non-Debtor Entities do not include Local Councils.

113.    "Released Parties" means, collectively, the following Persons, in each case in its or their capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Future Claimants' Representative; (c) the Local Councils; (d) the Local Council Committee; (e) the Related Non-Debtor Entities; (f) the Contributing Chartered Organizations; and (g) with respect to the Persons in clauses (a) through (f), such Persons' predecessors, successors, assigns, subsidiaries, Affiliates, current and former officers and directors, principals, equity holders,

trustees, members, partners, managers, officials, employees, agents, advisory board members, volunteers, attorneys, accountants, financial advisors, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, and nominees; provided, however, that any perpetrator of Abuse that forms the basis for an Abuse Claim that is an individual is not and shall not be a Released Party. Notwithstanding the foregoing, the Contributing Chartered Organizations shall be "Released Parties" only with respect to Abuse Claims that exist solely by virtue of the Contributing Chartered Organizations' affiliation with the Debtors.

114.    "Reorganized Debtors" means the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto by merger, consolidation, conversion or otherwise, on or after the Effective Date, after giving effect to the transactions implementing the Plan.

115.    "Restated 2010 Bond Documents" means those certain restated bond documents, including a restated revenue bond, bond purchase agreement, promissory note, security agreement, and all documentation executed and delivered in connection therewith, the then-current forms of which shall be filed with the Plan Supplement and thereafter attached to the Plan as Exhibit L.

116.    "Restated 2012 Bond Documents" means those certain restated bond documents, including a restated revenue bond, bond purchase agreement, promissory note, security agreement, and all documentation executed and delivered in connection therewith, the then-current forms of which shall be filed with the Plan Supplement and thereafter attached to the Plan as Exhibit M.

117.    "Restated 2010 Credit Facility Documents" means those certain restated credit facility documents, the then-current forms of which shall be filed with the Plan Supplement and thereafter attached to the Plan as Exhibit N.

118.    "Restated 2019 RCF Documents" means those certain restated revolving credit facility documents, the then-current forms of which shall be filed with the Plan Supplement and thereafter attached to the Plan as Exhibit O.

119.    "Schedules" means, with respect to each Debtor, the schedules of assets and liabilities and the statement of financial affairs filed by such Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date.

120.    "Secured" means, with respect to any Claim, a Claim to the extent (a) secured by a Lien on property of a Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

121.     "Trust Advisory Committee" means the Victims Compensation Trust advisory committee established pursuant to the terms of the Plan and the Trust Agreement and identified in the Trust Agreement.  The initial members of the Trust Advisory Committee shall be identified in the Plan Supplement and thereafter attached to the Plan as Exhibit D.

122.     "Trust Agreement" means the agreement between the Debtors and the Victims Compensation Trustee governing the Victims Compensation Trust, dated as of the Effective Date, to be filed with the Plan Supplement and thereafter attached to the Plan as Exhibit A, as the same may be amended or modified from time to time.

123.     "Trust Assets" means, collectively, the BSA Trust Contributions, the Local Council Trust Contributions, the Chartered Organization Trust Contributions, and any applicable Insurance Proceeds recovered or received by the Victims Compensation Trust.

124.     "Trust Distribution" means any initial or periodic payment or transfer of consideration to holders of Abuse Claims made in accordance with the Trust Documents.

125.     "Trust Distribution Procedures" means the Trust Distribution Procedures as defined and used in the Trust Agreement and attached to the Plan as Exhibit B, as the same may be amended or modified from time to time.

126.     "Trust Documents" means, collectively, (a) the Trust Agreement, (b) the Trust Distribution Procedures, and (c) any other agreements, instruments and documents governing the establishment and administration of the Victims Compensation Trust, which shall be materially consistent with the terms of the Plan, as the same may be amended or modified from time to time in accordance with the terms thereof.

127.     "Trust Expenses" means any and all costs, expenses, fees, taxes, disbursements, debts, or obligations incurred for the administration of the Victims Compensation Trust pursuant to the Trust Agreement, to be paid by the Victims Compensation Trust as provided in the Trust Agreement.

128.     "Trust Termination Date" means the date on which the Victims Compensation Trust is terminated as determined pursuant to the terms of the Trust Agreement.

129.     "UCC" means any official committee of holders of General Unsecured Claims appointed by the United States Trustee in the Chapter 11 Cases under section 1102(a) of the Bankruptcy Code.

130.     "Unexpired Lease" means a lease to which one or more of the Debtors is a party, including any and all pre- and post-petition amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

131.     "Unimpaired" means any Claim or Interest that is not Impaired, including any Claim or Interest that is Reinstated.

132.     "United States Trustee" means the Office of the United States Trustee for the District of Delaware.

133.    "Victims Compensation Trust" means the trust organized under the laws of the state of Delaware and established under Article IV and the Trust Agreement for the purposes set forth therein, including assuming liability for all Abuse Claims, holding and administering the Trust Assets, liquidating the Abuse Claims, and making Trust Distributions to holders of Abuse Claims from the Trust Assets.

134.    "Victims Compensation Trustee" means the individual to be identified in the Plan Supplement and thereafter attached to the Plan as Exhibit C, who shall act as the initial trustee of the Victims Compensation Trust pursuant to the terms of the Trust Documents, and any successor trustee appointed in accordance with the Trust Agreement.

135.    "Workers' Compensation Program" means the written contracts, agreements, agreements of indemnity, self-insured bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance issued to or entered into at any time by any of the Debtors.

136.    "Working Capital" means [●].

B.    Interpretation; Application of Definitions and Rules of Construction.

1.    For purposes of the Plan, unless otherwise provided herein:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise stated, all references in the Plan to Articles or Sections are references to Articles or Sections of the Plan, as the same may be amended, waived or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Article, Section, or clause contained in the Plan; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person; (11) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation

of the Plan; (12) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (13) any reference to a Person's "subsidiaries" means its direct and indirect subsidiaries.

C.      Reference to Monetary Figures.

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

D.      Controlling Document.

In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that in the event of a conflict between Confirmation Order, on the one hand, and any of the other Plan Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

## ARTICLE II

## ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

A.      Administrative Expense Claims.

1.      *Administrative Expense Claims Bar Date*.

Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of General Administrative Expense Claims must file and serve on the Debtors requests for the payment of such Claims not previously Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Expense Claims Bar Date, or such Claims shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Claims shall be deemed fully satisfied, released, and discharged.

2.      *Administrative Expense Claims Generally*.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that

is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtors or the Reorganized Debtors shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' operations during the Chapter 11 Cases may be paid by the Debtors or the Reorganized Debtors in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

3.    *Professional Fee Claims*.

All Professionals or other Persons requesting the final allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtors and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, and the Professional requesting allowance and payment of a Professional Fee Claim).

Allowed Professional Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court on or as soon as reasonably practicable after the later of: (a) the date upon which an order relating to any such Allowed Professional Fee Claim is entered; and (b) such other date(s) as the holders of the Allowed Professional Fee Claim and the Debtors or the Reorganized Debtors, as applicable, shall have agreed.

The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred by their Professionals after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

B.    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors or the Reorganized Debtors, as applicable: (1) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (2) regular installment payments in Cash of a total value, as of the Effective Date of

the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    <u>Classification of Claims and Interests</u>.

1.    *Classification in General*.

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor.  A Claim or Interest is placed into a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is Allowed in that Class (if applicable) and has not been satisfied, released, or otherwise settled prior to the Effective Date.

2.    *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3A | 2010 Credit Facility Claims | Impaired | Entitled to Vote |
| 3B | 2019 RCF Claims | Impaired | Entitled to Vote |
| 4A | 2010 Bond Claims | Impaired | Entitled to Vote |
| 4B | 2012 Bond Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Abuse Claims | Impaired | Entitled to Vote |
| 7 | Interests in Delaware BSA, LLC | Unimpaired | Presumed to Accept; Not Entitled to Vote |

B.    <u>Treatment of Claims and Interests</u>.

1.    *Class 1 – Other Priority Claims*.

a.    <u>Classification</u>:  Class 1 consists of all Other Priority Claims.

b.    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction of such Allowed Other Priority Claim, at the sole option of the Reorganized Debtors: (i)

each such holder shall receive payment in Cash in an amount equal to such Allowed Other Priority Claim, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, and (z) the date on which the holder of such Allowed Other Priority Claim and the Debtors or Reorganized Debtors, as applicable, shall otherwise agree in writing; or (ii) satisfaction of such Allowed Other Priority Claim in any other manner that renders the Allowed Other Priority Claim Unimpaired, including Reinstatement.

    c.    <u>Voting</u>:  Class 1 is Unimpaired, and each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

2.    *Class 2 – Other Secured Claims*.

    a.    <u>Classification</u>:  Class 2 consists of all Other Secured Claims.  To the extent that Other Secured Claims are Secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving Plan Distributions under the Plan.

    b.    <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction of such Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim will receive, at the sole option of the Reorganized Debtors: (i) Cash in an amount equal to the Allowed amount of such Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (z) the date on which the holder of such Allowed Other Secured Claim and the Debtors or Reorganized Debtor, as applicable, shall otherwise agree in writing; (ii) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (iii) return of the applicable collateral on the Effective Date or as soon as reasonably practicable thereafter in satisfaction of the Allowed amount of such Other Secured Claim.

c.  Voting:  Class 2 is Unimpaired, and each holder of an Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Secured Claims.

3.  *Class 3A – 2010 Credit Facility Claims.*

a.  Classification:  Class 3A consists of all 2010 Credit Facility Claims.

b.  Allowance:  On the Effective Date, all 2010 Credit Facility Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code in the principal amount of $[●] and not subject to any counterclaim, defense, offset, or reduction of any kind.  Because all 2010 Credit Facility Claims are deemed fully Secured, there are no unsecured 2010 Credit Facility Claims, and the holders of such Claims do not have or hold any Class 5 Claims against the Debtors on account of any 2010 Credit Facility Claims.

c.  Treatment:  Except to the extent that a holder of an Allowed 2010 Credit Facility Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2010 Credit Facility Claim, the Reorganized Debtors shall enter into, execute and deliver the Restated 2010 Credit Facility Documents.

d.  Voting:  Class 3A is Impaired, and each holder of a Allowed 2010 Credit Facility Claim is entitled to vote to accept or reject the Plan.

4.  *Class 3B – 2019 RCF Claims.*

a.  Classification:  Class 3B consists of all 2019 RCF Claims.

b.  Allowance:  On the Effective Date, all 2019 RCF Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code in the principal amount of $[●] and not subject to any counterclaim, defense, offset, or reduction of any kind.  Because all 2019 RCF Claims are deemed fully Secured, there are no unsecured 2019 RCF Claims, and the holders of such Claims do not have or hold any Class 5 Claims against the Debtors on account of any 2019 RCF Claims.

c.  Treatment:  Except to the extent that a holder of an Allowed 2019 RCF Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in

exchange for an Allowed 2019 RCF Claim, the Reorganized Debtors shall enter into, execute and deliver the Restated 2019 RCF Documents.

d.  <u>Voting</u>:  Class 3B is Impaired, and each holder of a 2019 RCF Claim is entitled to vote to accept or reject the Plan.

5.  *Class 4A – 2010 Bond Claims.*

a.  <u>Classification</u>:  Class 4A consists of all 2010 Bond Claims.

b.  <u>Allowance</u>:  On the Effective Date, all 2010 Bond Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code in the principal amount of $[●] and not subject to any counterclaim, defense, offset, or reduction of any kind.  Because all 2010 Bond Claims are deemed fully Secured, there are no unsecured 2010 Bond Claims, and the holders of such Claims do not have or hold any Class 5 Claims against the Debtors on account of any 2010 Bond Claims.

c.  <u>Treatment</u>:  Except to the extent that a holder of an Allowed 2010 Bond Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2010 Bond Claim, the Reorganized Debtors shall enter into, execute and deliver the Restated 2010 Bond Documents.

d.  <u>Voting</u>:  Class 4A is Impaired, and each holder of a 2010 Bond Claim is entitled to vote to accept or reject the Plan.

6.  *Class 4B – 2012 Bond Claims.*

a.  <u>Classification</u>:  Class 4B consists of all 2012 Bond Claims.

b.  <u>Allowance</u>:  On the Effective Date, all 2012 Bond Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code in the principal amount of $[●] and not subject to any counterclaim, defense, offset, or reduction of any kind.  Because all 2012 Bond Claims are deemed fully Secured, there are no unsecured 2012 Bond Claims, and the holders of such Claims do not have or hold any Class 5 Claims against the Debtors on account of any 2012 Bond Claims.

c.  <u>Treatment</u>:  Except to the extent that a holder of an Allowed 2012 Bond Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2012 Bond Claim, the Reorganized

Debtors shall enter into, execute and deliver the Restated 2012 Bond Documents.

    d.    <u>Voting</u>:  Class 4B is Impaired, and each holder of a 2012 Bond Claim is entitled to vote to accept or reject the Plan.

7.    *Class 5 – General Unsecured Claims.*

    a.    <u>Classification</u>:  Class 5 consists of all General Unsecured Claims.

    b.    <u>Treatment</u>:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, each holder thereof shall receive such holder's Pro Rata share of the GUC Plan Distribution.

    c.    <u>Voting</u>:  Class 5 is Impaired, and each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

8.    *Class 6 – Abuse Claims.*

    a.    <u>Classification</u>:  Class 6 consists of all Abuse Claims.

    b.    <u>Treatment</u>:  As of the Effective Date, liability for all Abuse Claims shall be assumed in full by the Victims Compensation Trust without further act, deed, or court order and shall be satisfied solely from the Victims Compensation Trust as set forth in the Trust Documents.  Pursuant to the Channeling Injunction set forth in <u>Article X</u>, each holder of an Abuse Claim shall have his or her Abuse Claim permanently channeled to the Victims Compensation Trust, and such Abuse Claim shall thereafter be asserted exclusively against the Victims Compensation Trust and resolved in accordance with the terms, provisions, and procedures of the Trust Documents.  Holders of Abuse Claims are enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Abuse Claims against any of the Protected Parties and may not proceed in any manner against any such Persons in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue their Abuse Claims solely against the Victims Compensation Trust as provided in the Trust Documents.

    **HOLDERS OF ABUSE CLAIMS (OTHER THAN FUTURE ABUSE CLAIMS) SHALL BE REQUIRED TO SUBMIT A PROOF OF CLAIM ON OR BEFORE THE ABUSE CLAIMS**

**BAR DATE IN ACCORDANCE WITH THE BAR DATE ORDER.**

**HOLDERS OF ABUSE CLAIMS MAY BE REQUIRED TO SUBMIT ADDITIONAL DOCUMENTATION REGARDING SUCH CLAIMS IN ACCORDANCE WITH THE TRUST DOCUMENTS.**

    c.    <u>Voting</u>:  Class 6 is Impaired, and each holder of an Abuse Claim is entitled to vote to accept or reject the Plan.

    9.    *Class 7 – Interests in Delaware BSA, LLC.*

    a.    <u>Classification</u>:  Class 7 consists of all Interests in Delaware BSA, LLC.

    b.    <u>Treatment</u>:   On the Effective Date, Interests in Delaware BSA, LLC shall be Reinstated, and the legal, equitable, and contractual rights to which holders of Interests in Delaware BSA, LLC are entitled shall remain unaltered to the extent necessary to implement the Plan.

    c.    <u>Voting</u>:  Class 7 is Unimpaired, and each holder of an Interest in Delaware BSA, LLC shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Interests in Delaware BSA, LLC are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Interests in Delaware BSA, LLC.

C.    <u>Elimination of Vacant Classes</u>.

Any Class of Claims against or Interests in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.  For the avoidance of doubt, this <u>Section III.C</u> shall not apply to Class 6 or Class 7.

## ARTICLE IV

## VICTIMS COMPENSATION TRUST

A.    <u>Establishment and Purpose of the Victims Compensation Trust</u>.

The Victims Compensation Trust shall be established on the Effective Date.  The Victims Compensation Trust shall be administered and implemented by the Victims Compensation

Trustee as provided in the Trust Documents.  Specifically, the Victims Compensation Trust shall, without limitation:  (1) assume liability for all Abuse Claims; and (2) hold and administer the Trust Assets, liquidate the Abuse Claims, and make Trust Distributions to holders of Abuse Claims from the Trust Assets.

The Victims Compensation Trust shall, as applicable, administer, process, settle, resolve, liquidate, satisfy, and make Trust Distributions from the Trust Assets on account of Abuse Claims in such a way that the holders of Abuse Claims are treated equitably and in a substantially similar manner, subject to the applicable terms of the Plan Documents and the Trust Documents.  From and after the Effective Date, the Abuse Claims shall be channeled to the Victims Compensation Trust pursuant to the Channeling Injunction set forth in <u>Article X</u> and may be asserted only and exclusively against the Victims Compensation Trust.

       B.     <u>Receipt of Trust Assets</u>.

On the Effective Date, all Trust Assets shall be automatically and without further act or deed, transferred to, vested in and assumed by the Victims Compensation Trust; <u>provided, however,</u> that to the extent that certain Trust Assets, because of their nature or because such assets will accrue or become transferable to the Victims Compensation Trust subsequent to the Effective Date, cannot be transferred to, vested in and assumed by the Victims Compensation Trust on the Effective Date, such Trust Assets shall be automatically, and without further act or deed, transferred to, vested in and assumed by the Victims Compensation Trust as soon as practicable after the Effective Date.  Notwithstanding anything in the Plan to the contrary, no monies, choses in action, and/or assets comprising the Trust Assets that have been transferred, granted, assigned, or otherwise delivered to the Victims Compensation Trust shall be used for any purpose other than in accordance with the Plan and the Trust Documents, including the payment or administration of Abuse Claims as set forth in the Trust Documents. Any applicable Insurance Proceeds recovered or received by the Victims Compensation Trust will be allocated as set forth in the Trust Documents.

       C.     <u>The Trust Distribution Procedures</u>.

On the Effective Date, the Victims Compensation Trust shall implement the Trust Distribution Procedures in accordance with the terms of the Trust Agreement.  From and after the Effective Date, the Victims Compensation Trustee shall have the authority to administer, amend, supplement, or modify the Trust Distribution Procedures in accordance with the terms thereof and the Trust Agreement.  From and after the Effective Date, the Victims Compensation Trust shall liquidate and make Trust Distributions to holders of Abuse Claims in accordance with the Trust Documents.

       D.     <u>Discharge of Liabilities to Holders of Abuse Claims</u>.

Except as provided in the Plan, the transfer to, vesting in and assumption by the Victims Compensation Trust of the Trust Assets as contemplated by the Plan shall, as of the Effective Date, discharge all obligations and liabilities of and bar any recovery or action against the Protected Parties for or in respect of all Abuse Claims (and the Confirmation Order shall provide for such discharge).  The Victims Compensation Trust shall, as of the Effective Date, assume

sole and exclusive responsibility and liability for all Abuse Claims against the Protected Parties, and such Claims shall be paid by the Victims Compensation Trust from the Trust Assets or as otherwise directed in the Trust Documents.

      E.     <u>Imposition of Channeling Injunction</u>.

From and after the Effective Date, all Abuse Claims shall be subject to the Channeling Injunction pursuant to section 105(a) of the Bankruptcy Code and the provisions of the Plan and the Confirmation Order. From and after the Effective Date, the Protected Parties shall not have any obligation with respect to any liability of any nature or description arising out of, relating to, or in connection with any Abuse Claims.

      F.     <u>Insurance Rights Transfer</u>.

In furtherance of the purpose of the Victims Compensation Trust:

      1.     as of the Effective Date, the Protected Parties shall irrevocably transfer, grant, and assign to the Victims Compensation Trust, and the Victims Compensation Trust shall receive and accept, any and all of the Insurance Rights. To the extent any Insurer consented to a prepetition settlement agreement with respect to an Abuse Claim or otherwise has consented to pay an Abuse Claim on behalf of one or more of the Protected Parties, then the applicable Protected Parties transfer and assign to the Victims Compensation Trust the right to enforce such Insurer's obligation. This Insurance Rights Transfer is made to the Victims Compensation Trust for the benefit of Persons that have a Claim for compensation for damages against the Protected Parties on account of Abuse Claims;

      2.     the Insurance Rights Transfer is made free and clear of all Claims, Liens, Encumbrances, or Causes of Action of any nature whatsoever, except available limits of liability for coverage of certain types of claims under one or more of the Insurance Policies that may have been reduced by certain prepetition payments made by an Insurer under any of the Insurance Policies;

      3.     the Victims Compensation Trust shall be solely responsible for satisfying, to the extent required under applicable law, any premiums, deductibles, self-insured retentions, and fronting obligations arising in any way out of any and all Abuse Claims;

      4.     the Victims Compensation Trust shall comply with any notice obligations required under the Insurance Policies and applicable law;

      5.     the Insurance Rights Transfer is made to the maximum extent possible under applicable law;

      6.     the Insurance Rights Transfer is absolute and does not require any further action by the Protected Parties, the Victims Compensation Trust, the Bankruptcy Court, or any other Person;

      7.     the Insurance Rights Transfer is not an assignment of any insurance policy itself and shall be valid and enforceable in accordance with the terms of any Insurance Policy, in

each case notwithstanding any anti-assignment provision in or incorporated into any Insurance Policy; and

        8.     the Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and the laws of the state of Delaware, without regard to its conflict of law principles.

For the avoidance of doubt, the Insurance Rights Transfer that is the subject of this Section IV.F shall not, and shall not be deemed to, transfer, grant, or assign to the Victims Compensation Trust any insurance rights of the Debtors or the Local Councils that pertain to any Insured Non-Abuse Claims.  Nor shall the Insurance Rights Transfer violate or be deemed to violate any cooperation clause of any Insurance Policy.  The insurance rights of the Debtors or the Local Councils that pertain to Insured Non-Abuse Claims are expressly reserved for the Debtors, the Reorganized Debtors, or the Local Councils, as applicable, and the Plan Documents shall not, and shall not be deemed to, transfer, grant, or assign such rights to the Victims Compensation Trust.  Moreover, for the avoidance of doubt, the insurance rights of any Person that is not a Protected Party are expressly reserved for such Person (including any rights of any director, manager, officer or employee of the Debtors or any Local Council under the D&O Liability Insurance Policies), and the Plan Documents shall not, and shall not be deemed to, transfer, grant, or assign such rights to the Victims Compensation Trust.

In that regard and notwithstanding the transfer of Insurance Rights pursuant to this Section IV.F, with respect to any Insurance Policy with an inception date of January 1, 2000 to the present, the Debtors and the Reorganized Debtors expressly reserve the right to (1) tender any Insured Non-Abuse Claims  to those Insurance Policies and (2) access the limits of liability of those Insurance Policies to settle or otherwise resolve Insured Non-Abuse Claims.  Further, the Victims Compensation Trust cannot settle, compromise, or otherwise resolve any rights, duties, or obligations under those Insurance Policies issued after January 1, 2000 without the express written consent and approval of the Debtors or the Reorganized Debtors, as applicable.  Nonetheless, the Victims Compensation Trust shall have the same rights as the Debtors and the Reorganized Debtors with respect to any Insurance Policy with an inception date of January 1, 2000 to the  present insofar as the Victims Compensation Trust may: (a) tender Abuse Claims to those Insurance Policies; and (b) access the limits of liability of those Insurance Policies to pay Abuse Claims pursuant to the Trust Distribution Procedures.

Moreover, for the avoidance of doubt, the insurance rights of any Person that is not a Protected Party are expressly reserved for such Person, and the Plan Documents shall not, and shall not be deemed to, transfer, grant, or assign such rights to the Victims Compensation Trust.

        G.     Indemnification Obligations.

        If for any reason an Abuse Claim is asserted against a Protected Party on or after the Effective Date in violation of the Channeling Injunction, the Victims Compensation Trust shall indemnify and hold each of the Protected Parties harmless from and against any and all Abuse Claims, as well as indemnify and reimburse such parties for all associated fees, costs and expenses, to the extent set forth in the Trust Documents.

In connection with the indemnification that must be provided by the Victims Compensation Trust, each Protected Party has the express right to:

        1.      appoint defense counsel of its choosing, subject to consent by the Victims Compensation Trust regarding the hourly rates to be charged, such consent not to be unreasonably withheld;

        2.      manage the defense of any such Claim subject to appropriate updates being provided to the Victims Compensation Trust, but the Victims Compensation Trust shall not control the defense of the Protected Party to any such Claim;

        3.      settle or otherwise resolve any Claim that is subject to indemnification by the Victims Compensation Trust, provided that notice of any such settlement or resolution is provided to the Victims Compensation Trust, but the Victims Compensation Trust is not required to consent to any such settlement or resolution; and

        4.      proceed to trial and verdict with respect to any Claim that is subject to indemnification by the Victims Compensation Trust, subject to the consent and approval by the Victims Compensation Trust to proceed to trial and verdict.

        H.      <u>Investment Guidelines</u>.

All monies held in the Victims Compensation Trust shall be invested, subject to the investment limitations and provisions enumerated in the Trust Agreement and shall not be limited to the types of investments described in section 345 of the Bankruptcy Code.

        I.      <u>Excess Assets in Victims Compensation Trust</u>.

On the Trust Termination Date, after the payment of all Abuse Claims that are entitled to a Trust Distribution from the Victims Compensation Trust and all Trust Expenses that have been provided for, and the liquidation of all assets then held by the Victims Compensation Trust, any remaining value in the Victims Compensation Trust shall be distributed to a charity to be selected jointly by the Victims Compensation Trustee and the Reorganized Debtors.

        J.      <u>Trust Expenses</u>.

The Victims Compensation Trust shall pay all Trust Expenses from the Victims Compensation Trust, as provided for in the Trust Agreement. The Protected Parties shall have no obligation to pay any Trust Expenses.

        K.      <u>Victims Compensation Trustee</u>.

There shall be one Victims Compensation Trustee. On the Confirmation Date, the Bankruptcy Court shall appoint the Victims Compensation Trustee to serve in accordance with, and who shall have the functions and rights provided in, the Trust Agreement. Any successor Victims Compensation Trustee shall be appointed in accordance with the terms of the Trust Agreement. For purposes of any Victims Compensation Trustee performing his or her duties and fulfilling his or her obligations under the Victims Compensation Trust and the Plan, the Victims

Compensation Trust and the Victims Compensation Trustee shall be deemed to be "parties in interest" within the meaning of section 1109(b) of the Bankruptcy Code.   The Victims Compensation Trustee shall be the "administrator" of the Victims Compensation Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

      L.      Compensation of Victims Compensation Trustee and Retention of Professionals.

The Victims Compensation Trustee shall be entitled to compensation as provided for in the Trust Agreement.   The Victims Compensation Trustee may retain and reasonably compensate, without Bankruptcy Court approval, counsel and other professionals as reasonably necessary to assist in his or her duties as Victims Compensation Trustee, subject to the terms of the Trust Agreement.   All fees and expenses incurred in connection with the foregoing shall be payable from the Victims Compensation Trust as provided for in the Trust Agreement.

      M.      Future Claimants' Representative.

The Trust Agreement shall provide for the continuation of the Future Claimants' Representative to serve as an advisor to the Victims Compensation Trust representing the interests of holders of Future Abuse Claims.   The Future Claimants' Representative shall have the functions and rights set forth in the Trust Agreement.   The Victims Compensation Trustee shall consult with the Future Claimants' Representative on matters pertaining to the administration of the Victims Compensation Trust and must obtain the consent of the Future Claimants' Representative as set forth in the Trust Agreement and the Trust Distribution Procedures.   The Victims Compensation Trustee shall meet with the Future Claimants' Representative no less frequently than quarterly.   The Future Claimants' Representative shall receive reasonable compensation for his services from the Victims Compensation Trust and may utilize counsel and other professionals as reasonably necessary to assist in the performance of his or her duties, and the Future Claimants' Representative and his professionals shall be entitled to reasonable reimbursement of expenses by the Victims Compensation Trust, subject to compliance with an agreed-upon budget that shall be set forth in the Trust Agreement.

      N.      Trust Advisory Committee.

The Trust Agreement shall provide for the establishment of the Trust Advisory Committee to serve as an advisory committee to the Victims Compensation Trust representing the interests of holders of Abuse Claims.   The Trust Advisory Committee shall have the functions and rights provided for in the Trust Agreement.   The initial Trust Advisory Committee shall consist of three members.   The Trust Agreement shall provide that the Victims Compensation Trustee shall consult with the Trust Advisory Committee on matters pertaining to the administration of the Victims Compensation Trust and must obtain the consent of the Advisory Committee as set forth in the Trust Agreement and the Trust Distribution Procedures. The Victims Compensation Trustee shall meet with the Victims Compensation Trust Advisory Committee no less frequently than quarterly.   The Trust Advisory Committee shall receive reasonable compensation for their services from the Victims Compensation Trust and may utilize counsel and other professionals as reasonably necessary to assist in the performance of its duties, and the Trust Advisory Committee and their professionals shall be entitled to reasonable

reimbursement of expenses by the Victims Compensation Trust, subject to compliance with an agreed-upon budget that shall be set forth in the Trust Agreement.

   O.  Consent Rights of the Debtors and the Reorganized Debtors.

   The Trust Documents may not be amended or modified without the consent of the Debtors or the Reorganized Debtors, as applicable, which shall not be unreasonably withheld. The Debtors shall also have consent rights with respect to any successor Victims Compensation Trustee and Victims Compensation Advisory Committee members, which consent shall not be unreasonably withheld. Notwithstanding any of the foregoing, the Indemnification Obligations of the Victims Compensation Trust described in this Article IV may not be amended or modified without the consent of the Protected Party that is otherwise entitled to indemnification pursuant to those provisions.

   P.  Cooperation; Transfer of Books and Records.

   On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the other Protected Parties shall transfer and assign, or cause to be transferred and assigned, to the Victims Compensation Trustee (1) copies of all of their books and records that pertain to Abuse Claims, including all ineligible volunteer files to the extent authorized and directed by the Court pursuant to the Confirmation Order, (2) copies of all Insurance Policies, (3) information relating to Abuse Claims previously noticed, tendered, or submitted under the Insurance Policies or paid by any Insurer so long as such information is presently stored and readily accessible on the Protected Parties' then-current electronic record-management systems, and (4) any other information reasonably necessary to operate the Victims Compensation Trust and preserve, secure, or obtain the benefit of the Insurance Rights. If at any time after the Effective Date, any of the Reorganized Debtors or the other Protected Parties discover the existence of an Insurance Policy that provides or may provide coverage for Abuse Claims, the Person discovering such policy or evidence of the existence of such policy shall promptly inform the Victims Compensation Trustee. The Victims Compensation Trust shall reimburse the Debtors or the Reorganized Debtors, as applicable, for all reasonable costs and expenses incurred by Protected Parties in connection with the transfers and assignments that are the subject of this Section IV.P.

   The transfer or assignment of information, which may include Privileged Information, to the Victims Compensation Trustee in accordance with this Section IV.P shall not result in the destruction or waiver of any applicable privileges pertaining to Privileged Information. Further, with respect to any privileges: (a) they are transferred to or contributed for the sole purpose of enabling the Victims Compensation Trustee to perform his or her duties to administer the Victims Compensation Trust and for no other reason, (b) they are vested solely in the Victims Compensation Trustee and not in the Victims Compensation Trust, the Future Claimants' Representative, the Trust Advisory Committee or any other Person, committee or subcomponent of the Victims Compensation Trust, or any other Person (including counsel and other professionals) who has been engaged by, represents or has represented any holder of an Abuse Claim, (c) they shall be preserved and not waived, and (d) no privileged information shall be publicly disclosed by the Victims Compensation Trustee or the Victims Compensation Trust or communicated to any Person not entitled to receive such information or in a manner that would diminish the protected status of any such information. Notwithstanding the foregoing, nothing

herein shall preclude the Victims Compensation Trustee from providing information received pursuant to this section to any Insurer as necessary to preserve, secure, or obtain the benefit of the Insurance Rights.

Q.     No Liability.

Neither the Protected Parties nor the Local Council Committee shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Future Claimants' Representative, the Victims Compensation Trust, the Victims Compensation Trustee, or the Trust Documents, including the administration of Abuse Claims and the distribution of property by the Victims Compensation Trust, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to the foregoing.

R.     U.S. Federal Income Tax Treatment of the Victims Compensation Trust.

The Victims Compensation Trust shall be a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1.  The Victims Compensation Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Victims Compensation Trust that are required by any governmental unit.  The Victims Compensation Trustee shall be responsible for the payment of any taxes imposed on the Victims Compensation Trust or the Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Trust Agreement.  The Victims Compensation Trustee may request an expedited determination of taxes on the Victims Compensation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Victims Compensation Trust for all taxable periods through the dissolution of the Victims Compensation Trust.

S.     Institution and Maintenance of Legal and Other Proceedings.

As of the Effective Date, the Victims Compensation Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Victims Compensation Trust.  The Victims Compensation Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of the Debtors if deemed necessary or appropriate by the Victims Compensation Trustee.  The Victims Compensation Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the Effective Date arising from, relating to, or associated with any legal action or other proceeding brought pursuant to this Section IV.R and shall pay or reimburse all deductibles, retrospective premium adjustments, fronting obligations or other charges which may arise from the receipt of the Insurance Proceeds by the Victims Compensation Trust.  For the avoidance of doubt, the Victims Compensation Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable State corporate law, is appointed as the successor-in-interest to, and representative, of the Debtors and their Estates for the retention, enforcement, settlement, or adjustment of all Abuse Claims.

T.     Insurance Neutrality.

Unless otherwise expressly agreed to by an Insurer in writing, notwithstanding any provision in the Plan Documents including any provision that purports to be preemptory or supervening, nothing contained in any such documents or in this <u>Section IV.S</u> shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (1) the rights or obligations of any of any Insurer arising out of or under any Insurance Policy or (2) any rights or obligations of the Debtors arising out of or under any Insurance Policy.  For all issues relating to insurance coverage, including all rights and obligations under the Insurance Policies, the provisions, terms, conditions, and limitations of the Insurance Policies shall control; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, (a) none of the Debtors' or any Insurer's defenses, rights, and obligations with respect to the Insurance Actions shall be impaired or otherwise affected in any way, and (b) nothing herein shall constitute a determination, consent to, or waiver of jurisdiction as to the Insurance Actions.

For the avoidance of doubt, and without limiting the rights and obligations referenced in the first paragraph of this <u>Section IV.S</u>, nothing contained in the Plan Documents shall operate to require any Insurer to indemnify or pay the liability of any Protected Party that it would not have been required to pay in the absence of the Plan.

Unless otherwise expressly agreed to by an Insurer in writing, notwithstanding any provision in the Plan Documents, including any provision that purports to be preemptory or supervening, nothing contained in any such documents or in this <u>Section IV.S</u> shall constitute, or be deemed to constitute, a trial, adjudication, judgment, hearing on the merits, finding, conclusion, other determination, evidence, or suggestion of any determination establishing the liability of any Insurer (in the aggregate or otherwise) or establishing a coverage obligation in subsequent litigation relating to any Claim or under any of the Insurance Policies.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     <u>No Substantive Consolidation</u>.

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor.  The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan; <u>provided</u>, <u>however</u>, that the Reorganized Debtors may consolidate Claims on a per Class basis for voting purposes.

B.     <u>General Settlement of Claims and Interests</u>.

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that holders of Claims or Interests might have with respect to any Claim or

Interest under the Plan. Distributions made to holders of Claims in any Class are intended to be final.

      C.      <u>Sources of Consideration for Distributions</u>.

The Debtors or the Reorganized Debtors, as applicable, shall fund Plan Distributions using Cash on hand and the proceeds of the Exit Facilities.  For purposes of this <u>Section V.C</u>, Cash on hand refers to the Debtors' or the Reorganized Debtors' Cash that does not constitute Identified Property.

      D.      <u>Exit Facilities</u>.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facilities and provide any related guarantees, and the Exit Facilities shall be made available to the Reorganized Debtors pursuant and subject to the terms and conditions set forth in the Exit Facilities Documents.  The Confirmation Order shall constitute approval of the Exit Facilities (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Reorganized Debtors in connection therewith), and authorization for the Reorganized Debtors to enter into and perform under the Exit Facilities Documents and such other documents as may be required or appropriate.

      E.      <u>Organizational Documents</u>.

The Reorganized Debtors shall enter into such agreements and amend their formation, organizational and/or governance documents, including their bylaws and rules and regulations, as applicable, to the extent necessary to implement the terms and provisions of the Plan.  After the Effective Date, the Reorganized Debtors may amend and restate their respective organizational documents, and the Reorganized Debtors may file their respective charters, certificates of formation, bylaws, rules and regulations, limited liability company agreements, or such other applicable organizational and/or governance documents, as applicable, and other constituent documents as permitted by applicable laws.

      F.      <u>Reorganized Debtors' Directors and Senior Management</u>.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in the Reorganized Debtors' directors and officers, the Debtors will identify those changes in the Plan Supplement and thereafter such changes will be attached to the Plan as <u>Exhibit Q</u>.  After the Effective Date, the Reorganized Debtors' organizational documents, as each may be amended thereafter from time to time, shall govern the designation and election of directors of the Reorganized Debtors.

      G.      <u>Due Authorization</u>.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by members, creditors, directors, or managers of the Debtors, the Reorganized Debtors, or any other Person.

H.    Continued Legal Existence.

Except as otherwise provided in the Plan, each of the Debtors shall continue to exist on and after the Effective Date as a separate Person, with all of the powers of such Person under applicable law in the jurisdiction in which each Debtor is organized, incorporated, or otherwise formed and pursuant to such Debtor's formation, organizational and governance documents in effect immediately prior to the Effective Date, without prejudice to any right of the Reorganized Debtors to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

I.    Vesting of Assets in the Reorganized Debtors.

Except as otherwise explicitly provided in the Plan, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estates, other than the BSA Trust Contributions, shall vest in each respective Reorganized Debtor free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind unless expressly provided by the Plan or the Confirmation Order.  On and after the Effective Date, each Reorganized Debtor may continue its operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

J.    Cancellation of Indebtedness.

1.    Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all agreements, instruments, and other documents evidencing or issued pursuant to the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, the 2012 Bond Documents, or any indebtedness or other obligations thereunder, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged, and of no force or effect, and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

2.    Notwithstanding the foregoing, any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the cancellations, terminations, satisfaction, releases, or discharges provided for in the Plan shall be deemed null and void and shall be of no force or effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any executory contract or lease to the extent such executory contract or lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

K.    Effectuating Documents and Further Transactions.

The President and Chief Executive Officer, the Chief Financial Officer, and the General Counsel shall be authorized to execute, deliver, file or record such contracts, instruments,

releases and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

L.    Cancellation of Liens.

Except as otherwise specifically provided herein, upon the payment in full in Cash of a Secured Claim, any Lien securing a Secured Claim that is paid in full in Cash shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtors (including any Cash collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors, to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Reorganized Debtors.

M.    Closing of Chapter 11 Cases.

After an Estate has been fully administered, the Reorganized Debtors shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case(s) in accordance with the Bankruptcy Code and Bankruptcy Rules.

N.    Preservation of Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code, subject to Section X.G.1, all Causes of Action that a Debtor may hold against any Person shall vest in the applicable Reorganized Debtor on the Effective Date.  Thereafter, subject to Section X.G.1, the Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action.  The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

O.    Setoffs and Recoupment.

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Reorganized Debtors, as applicable, may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that the failure to do so shall not constitute a waiver or release by a Debtor or a Reorganized Debtor, as applicable, or the successor or assign of any of the foregoing of any claims, rights, or Causes of Action that a

Debtor or a Reorganized Debtor or its successor or assign of any of the foregoing may possess against the holder of such Claim.

      P.      <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan (including the execution and delivery of the Exit Facilities) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and, upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and are allowed to accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

      Q.      <u>Directors and Officers Insurance Policies</u>.

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code, effective as of the Effective Date. For the avoidance of doubt, all of the Debtors' D&O Liability Insurance Policies that provide protection to any Local Council's directors, managers, and officers shall be deemed assumed under this provision. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of the unexpired D&O Liability Insurance Policies.

      R.      <u>Other Insurance Policies</u>.

On the Effective Date, each of the Debtors' insurance policies in existence as of the Effective Date shall continue in accordance with their terms and, to the extent applicable, shall be deemed assumed by the applicable Reorganized Debtor pursuant to section 365 of the Bankruptcy Code and this <u>Article V</u>. Nothing in the Plan shall affect, impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtors under the insurance policies in any manner, and such insurance carriers, the insureds, and Reorganized Debtors shall retain all rights and defenses under such insurance policies, subject to <u>Section IV.F</u>.

**ARTICLE VI**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

      A.      <u>Assumption of Executory Contracts and Unexpired Leases</u>.

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed assumed by the applicable Reorganized Debtor as of the Effective Date without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 and 1123 of the Bankruptcy Code, except for Executory Contracts or Unexpired Leases (1) that are identified on the Rejected Contracts Schedule; (2) that previously expired or terminated pursuant to their terms; (3) that the Debtors have previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (4) that are the subject of a motion to reject that remains pending as of

the Confirmation Date; or (5) as to which the effective date of rejection will occur (or is requested by the Debtors to occur) after the Confirmation Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases as set forth in the Plan or the Rejected Contracts Schedule, pursuant to sections 365 and 1123 of the Bankruptcy Code.  Except as otherwise set forth herein, the assumption or rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any Final Order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, purports to restrict or prevent, or is breached or deemed breached by the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.    Rejection Damages Claims.

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, must be filed within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.  **Any Rejection Damages Claim that is not timely filed shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court, and any such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary**.  All Allowed Rejection Damages Claims shall be classified as Allowed General Unsecured Claims and treated in accordance with Section III.B.6.

C.    Cure of Defaults under Executory Contracts and Unexpired Leases.

Not later than the date of filing of the Plan Supplement, the Debtors shall provide notices of proposed Cure Amounts to the counterparties to the Executory Contracts and Unexpired Leases proposed to be assumed under the Plan, which shall include a description of the procedures for objecting to the Cure Amount, the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code)

under the Executory Contract or Unexpired Lease to be assumed, or any other matter pertaining to assumption.

Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, **any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Amount must be filed, served, and actually received by the counsel to the Debtors within ten (10) days of the service of assumption and proposed Cure Amount, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court**. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption and Cure Amount and shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors, in each case without the need for any objection by the Debtors or the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court. The Reorganized Debtors may settle any Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors or the Reorganized Debtors, as applicable, shall pay undisputed Cure Amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties may agree. If there is any dispute regarding the Cure Amount, the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or any other matter pertaining to assumption, then the Debtors or the Reorganized Debtors, as applicable, shall pay the applicable Cure Amount as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The payment of Cure Amounts required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

The Debtors' assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and payment of the applicable Cure Amount shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption or (3) the Effective Date, in each case without the need for any objection by the Debtors or the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.     Contracts and Leases Entered into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor counterparty thereto in the ordinary course of its operations. Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

      E.      <u>Compensation and Benefits Programs</u>.

Other than those Compensation and Benefits Programs assumed by the Debtors prior to entry of the Confirmation Order, all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan and deemed assumed under sections 365 and 1123 of the Bankruptcy Code, and the Debtors' and Reorganized Debtors' obligations under the Compensation and Benefits Programs survive and remain unaffected by entry of the Confirmation Order and be fulfilled in the ordinary course of the Debtors' and Reorganized Debtors' operations. Compensation and Benefits Programs assumed by the Debtors prior to entry of the Confirmation Order shall continue to be fulfilled in the ordinary course of the Debtors' non-profit operations from and after the date of any order of the Bankruptcy Court authorizing the assumption of such Compensation and Benefits Program.

      F.      <u>Workers' Compensation Program</u>.

As of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws in all applicable states; and (b) the Workers' Compensation Program. All Proofs of Claims on account of the Workers' Compensation Program shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Programs; <u>provided</u> <u>further</u>, <u>however</u>, that nothing herein shall be deemed to impose any obligations on the Debtors or their insurers in addition to what is provided for under the terms of the Workers' Compensation Programs and applicable state law.

      G.      <u>Indemnification Obligations</u>.

Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise. Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose. For the avoidance of doubt, this <u>Section VI.G</u> affects only the obligations of the Debtors and Reorganized Debtors with respect to any Indemnification Obligations owed to or for the benefit of past and present directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person owed to or for the benefit of such directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors.

H.      Local Council Charters.

All charters granted to Local Councils before the Petition Date and not since revoked shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan and deemed assumed under sections 365 and 1123 of the Bankruptcy Code.

I.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtors reject or repudiate any of the foregoing agreements.   Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

J.      Reservation of Rights.

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors that a contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, or, after the Effective Date, the Reorganized Debtors, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

## ARTICLE VII

## DISTRIBUTIONS

A.      Distributions Generally.

Except with respect to Trust Distributions on account of Abuse Claims and payment of Trust Expenses, which shall be made in accordance with the terms of the Trust Documents, the Reorganized Debtors shall make all distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan, including this Article VII.

B.      Distribution Record Date.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to a Plan Distribution, and there shall be no further changes in the record holders or the permitted designees of any such Claims or Interests.  The Debtors or the

Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer or designation of such Claims or Interests occurring after the close of business on the Distribution Record Date. With respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor the Reorganized Debtors shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

       C.       <u>Date of Plan Distributions</u>.

Except as otherwise provided in the Plan, any Plan Distributions shall be made on the Effective Date or as otherwise determined in accordance with the Plan, including the treatment provisions of <u>Article III</u>, or as soon as practicable thereafter; <u>provided</u>, <u>however</u>, that the Reorganized Debtors shall from time to time determine subsequent distribution dates to the extent they determine them to be appropriate; <u>provided further</u>, <u>however</u>, that the Reorganized Debtors reserve their right to seek Bankruptcy Court approval of procedures and mechanisms for Plan Distributions.

       D.       <u>No Postpetition Interest on Claims</u>.

Except as otherwise provided in the Plan, the Confirmation Order, the Cash Collateral Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Petition Date; <u>provided</u>, <u>however</u>, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the federal judgment rate pursuant to 28 U.S.C. § 1961 on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

       E.       <u>Undeliverable and Non-Negotiated Plan Distributions</u>.

       1.       *Undeliverable Plan Distributions.*

If any Plan Distribution to a holder of an Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further Plan Distributions shall be made to such holder unless and until the Reorganized Debtors are notified in writing of such holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Plan Distribution shall be made to such holder within ninety (90) days of receipt of such holder's then-current address or other necessary information; <u>provided</u>, <u>however</u>, that any such undeliverable Plan Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Plan Distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

       2.       *Non-Negotiated Plan Distributions.*

If any Plan Distribution to a holder of an Allowed Claim is not negotiated for a period of 180 days after the Plan Distribution, then such Plan Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in the applicable Reorganized Debtor.  After such date, all non-negotiated property or interests in property shall revert to the Reorganized Debtors automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

F.    Manner of Payment under the Plan.

Except as otherwise specifically provided in the Plan, at the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Reorganized Debtors.

G.    Satisfaction of Claims.

Except as otherwise specifically provided in the Plan, any Plan Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

H.    Minimum Cash Distributions.

The Reorganized Debtors shall not be required to make any Plan Distribution of Cash less than twenty dollars ($20) to any holder of an Allowed Claim; provided, however, that if any Plan Distribution is not made pursuant to this Section VII.H, such distribution shall be added to any subsequent Plan Distribution to be made on behalf of the holder's Allowed Claim.

I.    Setoffs and Recoupments.

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off or recoup against any Claim, and any Plan Distribution to be made on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or Reorganized Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or Reorganized Debtor or its successor or assign may possess against the holder of such Claim.

J.    Allocation of Plan Distributions Between Principal and Interest.

Except as otherwise required by law (as reasonably determined by the Reorganized Debtors), Plan Distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

K.    No Plan Distribution in Excess of Amount of Allowed Claim.

Except as provided in Section VII.D, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

L.    Withholding and Reporting Requirements.

1.    *Withholding Rights*.

The Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Plan Distribution and all related agreements shall be subject to any such withholding or reporting requirements.  In the case of a non-Cash Plan Distribution that is subject to withholding, the Reorganized Debtors may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a Plan Distribution shall have responsibility for any taxes imposed by any governmental unit, including income, withholding, and other taxes, on account of such Plan Distribution.  The Reorganized Debtors have the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Reorganized Debtors for payment of any such tax obligations.

2.    *Forms*.

Any Person entitled to receive any property as a Plan Distribution shall, upon request, deliver to the Reorganized Debtors an appropriate Form W-9 or (if the payee is a foreign Entity) Form W-8.  If such request is made by the Reorganized Debtors and the holder fails to comply before the earlier of (a) the date that is 180 days after the request is made and (b) the date that is 180 days after the date of distribution, the amount of such Plan Distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such Plan Distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

M.    Allowed Claims Paid by Third Parties.

To the extent a holder receives a Plan Distribution on account of an Allowed Claim and also receives payment from a party other than the Debtors or the Reorganized Debtors on account of such Allowed Claim, such holder shall, within thirty (30) days of receipt thereof, repay or return the Plan Distribution to the Reorganized Debtors, to the extent the holder's total recovery on account of such Allowed Claim from the third party and under the Plan exceeds the amount of the Allowed Claim as of the date of any such Plan Distribution.

N.    Claims for Indemnification Obligations.

All Proofs of Claim filed on account of an Indemnification Obligation to a current or former director, officer, or employee shall be deemed satisfied and expunged from the claims register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII

## DISPUTED CLAIMS

A.      Objections to Claims.

The Reorganized Debtors shall exclusively be entitled to object to all Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, and General Unsecured Claims.  The Victims Compensation Trustee shall exclusively be entitled to administer and resolve Abuse Claims in accordance with the Trust Agreement and the Trust Distribution Procedures.  After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim to which they may object, except with respect to any Claim that is Allowed.  The Reorganized Debtors shall serve and file any objection to a Proof of Claim on or before the Claims Objection Deadline; provided, however, that the Victims Compensation Trustee shall administer the Abuse Claims on a timeline determined by the Victims Compensation Trustee, in consultation with the Future Claimants' Representative and the Trust Advisory Committee, subject to approval by the Bankruptcy Court.  The expiration of the Claims Objection Deadline shall not limit or affect the Debtors' or Reorganized Debtors' rights to dispute Claims asserted in the ordinary course of business other than through a Proof of Claim.

B.      Resolution of Disputed Administrative Expenses and Disputed Non-Abuse Claims.

On and after the Effective Date, the Reorganized Debtors shall have the authority to prosecute and withdraw objections to, compromise, settle, or otherwise resolve Administrative Expense Claims (other than with respect to Professional Fee Claims), Priority Tax Claims, Other Priority Claims, and General Unsecured Claims without approval of the Bankruptcy Court.  For the avoidance of doubt, only the Victims Compensation Trustee shall have the authority to administer and resolve Abuse Claims in accordance with the Trust Agreement and the Trust Distribution Procedures.

C.      Resolution of Abuse Claims.

Abuse Claims shall be resolved in accordance with the Trust Documents, subject to the provisions of Article IV and subject to the right of any Insurer to raise any Insurer Coverage Defense in response to a demand by the Victims Compensation Trust that such Insurer handle, defend, or pay any such Abuse Claim.

D.      Payments and Distributions with Respect to Disputed Claims.

Notwithstanding anything herein to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

E.     <u>Distributions After Allowance</u>.

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to Plan Distributions, if any, to which such holder is then entitled as provided in the Plan, without interest, as provided in <u>Section VIII.I</u>. Such Plan Distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court Allowing such Disputed Claim (or portion thereof) becomes a Final Order.

F.     <u>Estimation of Claims</u>.

The Debtors or the Reorganized Debtors, with respect to contingent, unliquidated, and/or Disputed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, and General Unsecured Claims, may at any time request that the Bankruptcy Court estimate any such contingent, unliquidated, or Disputed Claim or Class of Claims pursuant to section 502(c) of the Bankruptcy Code or otherwise, including to establish a reserve for Plan Distribution purposes, regardless of whether the Debtors, the Reorganized Debtors, or any other Person had previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim or Class of Claims at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim or Class of Claims, the amount so estimated shall constitute either the Allowed amount of such Claim or Class of Claims, or a maximum limitation on such Claim or Class of Claims, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim or Class of Claims, the Debtors or the Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claims; <u>provided</u>, <u>however</u>, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

G.     <u>No Distributions Pending Allowance</u>.

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or Plan Distribution shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

H.     <u>Claims Resolution Procedures Cumulative</u>.

All of the objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently settled, compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

I.     <u>Interest</u>.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in <u>Section VII.D</u>.

  J.  <u>Insured Non-Abuse Claims</u>.

To the extent that an Insurer satisfies an Insured Non-Abuse Claim in whole or in part (based on either a settlement or judgment), then immediately upon such satisfaction, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## ARTICLE IX

## CONFIRMATION AND CONSUMMATION OF PLAN

  A.  <u>Conditions Precedent to Confirmation</u>.

Confirmation of the Plan shall not occur unless all of the following conditions precedent have been satisfied:

    1.  the Confirmation Order is in form and substance acceptable to the Debtors;

    2.  the Confirmation Order shall approve and implement the Channeling Injunction set forth in <u>Article X.D</u>; and

    3.  the Plan Documents shall be in form and substance acceptable to the Debtors.

  B.  <u>Conditions Precedent to the Effective Date</u>.

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied, unless waived in accordance with <u>Section IX.C</u>:

    1.  the Confirmation Order, in form and substance acceptable to the Debtors, shall have been entered by the Bankruptcy Court, shall have become a Final Order, and shall have been adopted, affirmed, issued or ratified by the District Court;

    2.  the Trust Agreement and the Trust Distribution Procedures shall have become effective in accordance with the terms of the Plan;

    3.  the Trust shall have been established and funded in accordance with the Plan;

    4.  the Debtors shall have obtained all authorizations, consents, certifications, approvals, rulings, opinions or other documents that are necessary to implement and effectuate the Plan;

5. all actions, documents, and agreements necessary to implement and effectuate the Plan shall have been effected or executed; and

6. the Debtors shall have filed a notice of occurrence of the Effective Date.

C. Waiver of Conditions Precedent to the Effective Date.

Except for the condition precedent set forth in Section IX.B.1, each of the conditions precedent to the occurrence of the Effective Date set forth in Section IX.B may be waived in whole or in part by the Debtors without notice to or leave or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan. The failure to satisfy any condition precedent to the Confirmation Date or satisfy or waive any condition precedent to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

D. *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date.

If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtors in their sole discretion), the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Person in any respect; or (4) be used by the Debtors or any other Person as evidence (or in any other way) in any litigation, including with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

**ARTICLE X**

**EFFECT OF PLAN CONFIRMATION**

A. Binding Effect.

As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan by the Debtors or the Reorganized Debtors, the Victims Compensation Trust, the Protected Parties, shall be binding upon the Debtors, the Estates, the Reorganized Debtors, all holders of Claims against and Interests in the Debtors, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, regardless of whether the Claim or Interest of such holder is Impaired under the Plan and whether such holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement.

B. Pre-Confirmation Injunctions and Stays.

All injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay, if any.

C.    <u>Discharge</u>.

1.    *Discharge of the Debtors*.

Except as expressly provided in the Plan or the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, each of the Debtors shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released each of the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan.

2.    *Discharge Injunction*.

As of the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date shall be precluded and permanently enjoined from prosecuting or asserting any such discharged Claim against the Debtors or the Reorganized Debtors or the property of the Debtors or the Reorganized Debtors.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim.

D.    **Channeling Injunction**.

1.    ***Terms***.

**To preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in this <u>Article X</u>, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court**

and the District Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim, including:

a. commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party;

b. enforcing, levying, attaching, collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interest in property of any Protected Party with respect to any such Abuse Claim;

c. creating, perfecting, or enforcing in any manner, whether directly or indirectly, any Lien or Encumbrance of any kind against any Protected Party or any property or interest in property of any Protected Party with respect to any such Abuse Claim;

d. asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Protected Party or any property or interest in property of any Protected Party with respect to any such Abuse Claim; and

e. taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents with respect to any such Abuse Claim.

2. *Reservations*.

Notwithstanding anything to the contrary in this <u>Section X.D</u>, the Channeling Injunction shall not enjoin:

a. the right of any Person to the treatment afforded to such Person under the Plan, including the rights of holders of Abuse Claims to assert such Abuse Claims in accordance with the Trust Documents solely against the Victims Compensation Trust;

b.      **the right of any Person to assert any Claim for payment of Trust Expenses solely against the Victims Compensation Trust;**

c.      **the Victims Compensation Trust from enforcing its rights under the Trust Documents; or**

d.      **the rights of the Victims Compensation Trust and the Reorganized Debtors (to the extent permitted or required under the Plan) to prosecute any action against the Insurers based on or arising from the Insurance Policies.**

E.      <u>Provisions Relating to Channeling Injunctions</u>.

1.     *Modifications*.

There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

2.     *Non-Limitation*.

Nothing in the Plan or the Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Victims Compensation Trust's assumption of all liability with respect to Abuse Claims.

3.     *Bankruptcy Rule 3016 Compliance*.

The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

4.     *No Duplicative Recovery*.

In no event shall any holder of an Abuse Claim be entitled to receive any duplicative payment, reimbursement, or restitution from any Protected Party under any theory of liability for the same loss, damage, or other Claim that is reimbursed by the Victims Compensation Trust or is otherwise based on the same events, facts, maters, or circumstances that gave rise to the applicable Abuse Claim.

5.     *District Court Approval*.

The Debtors shall seek an order of the District Court approving (a) the Channeling Injunction and the Victims Compensation Trust's assumption of all liability with respect to Abuse Claims and (b) the releases by holders of Abuse Claims for the benefit of the Protected Parties, each as set forth in this <u>Article X</u>.

F.    **Injunction Against Interference with Plan**.

Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined  from taking any actions to interfere with the implementation and consummation of the Plan.

G.    **Releases**.

1.    *Releases by the Debtors*.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors, as an integral component of the Plan, the Debtors, the Reorganized Debtors, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Causes of Action (including Avoidance Actions), any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Reorganized Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the Plan Documents, and any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this **Section X.G.1** shall not be construed as (a) releasing any Released Party from Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted fraud, gross negligence or willful misconduct or (b) releasing any post-Effective Date obligations of any Person under the Plan or any document, instrument, or agreement executed to implement the Plan or Reinstated under the Plan.

2.    *Releases by Holders of Abuse Claims*.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and

implement the reorganization of the Debtors, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims.

      H.     **Exculpation**.

From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Debtors, the Reorganized Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the Plan Documents, the pursuit of Confirmation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to the foregoing; <u>provided</u>, <u>however</u>, that this <u>Section X.H</u> shall not apply to release (a) obligations under the Plan or any contracts, instruments, releases, agreements, and documents delivered, Reinstated or assumed under the Plan, (b) any Claims or Causes of Action arising from or related to an act or omission that is judicially determined by a Final Order to have constituted fraud, gross negligence or willful misconduct, or (c) any Claims or Causes of Action against the Debtors or the Reorganized Debtors that are Reinstated under the Plan or otherwise survive the Effective Date.

      I.     **Injunctions Related to Releases and Exculpation**.

      1.     *Injunction Related to Releases*.

As of the Effective Date, all holders of Claims that are the subject of <u>Section X.G.2</u> are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or

**otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Section X.C</u> or released under <u>Section X.G.2</u>.**

2.    *Injunction Related to Exculpation*.

**As of the Effective Date, all holders of Claims that are the subject of <u>Section X.H</u> are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party and, solely to the extent provided by section 1125(e) of the Bankruptcy Code, any Section 1125(e) Party or its or their property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Section X.C</u> or released under <u>Section X.H</u>.**

J.    <u>Reservation of Rights</u>.

Notwithstanding any other provision of the Plan to the contrary, no provision of this <u>Article X</u> shall be deemed or construed to satisfy, discharge, release or enjoin claims by the Victims Compensation Trust, the Reorganized Debtors, or (subject to <u>Article IV</u>) any other Person, as the case may be, against (1) the Victims Compensation Trust for payment of Abuse Claims in accordance with the Trust Distribution Procedures, (2) the Victims Compensation Trust for the payment of Trust Expenses, or (3) any Insurer that has not performed under an Insurance Policy or an Insurance Settlement Agreement.

K.    <u>Disallowed Claims</u>.

On and after the Effective Date, the Debtors and the Reorganized Debtors shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any Order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such Order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) Disallowing all Claims (other than Abuse Claims) to the extent such Claims are not allowable under any provision of Section 502 of the Bankruptcy Code, including time-barred Claims, and Claims for unmatured interest and (b) in relation to each Debtor, Disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

## ARTICLE XI

## RETENTION OF JURISDICTION

A.    <u>General Retention</u>.

Until the Chapter 11 Cases are closed, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(c) and 1142 of the Bankruptcy Code to the fullest extent permitted by law, including the jurisdiction necessary to ensure that the purposes and the intent of the Plan are carried out.    Following Confirmation, the administration of the Chapter 11 Cases will continue until the Chapter 11 Cases are closed by a Final Order of the Bankruptcy Court.    The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Abuse Claims and Claims that have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims.    The failure by the Debtors to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, the Reorganized Debtors or the Victims Compensation Trust, as the case may be, to object to or re-examine such Claim in whole or part.

B.    <u>Specific Purposes</u>.

In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for each of the specific purposes enumerated in this <u>Section XI.B</u> after Confirmation of the Plan. Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(c) and 1142 of the Bankruptcy Code and to the fullest extent permitted by law, including the following purposes:

1.    to modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

2.    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance in the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

3.    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if distributions pursuant to the Plan or the Trust Documents are enjoined or stayed;

4.    to hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331 and/or 503(b) of the Bankruptcy Code;

5.      to hear and determine any Causes of Action arising during the period from the Petition Date to the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, the Reorganized Debtors, the Victims Compensation Trust, the Victims Compensation Trustee, or the Official Committees or the Future Claimants' Representative and their respective officers, directors, employees, members, attorneys, accountants, financial advisors, representatives and agents;

6.      to determine any and all motions, including motions pending as of Confirmation, for the rejection, assumption or assumption and assignment of Executory Contracts or Unexpired Leases and the Allowance of any Claims resulting therefrom;

7.      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

8.      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

9.      to determine any and all motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

10.     to determine the Allowance and/or Disallowance of any Claims against the Debtors or their Estates, including any objections to any such Claims and the compromise and settlement of any Claim against the Debtors or their Estates;

11.     to determine all questions and disputes regarding title to the assets of the Debtors or their Estates or the Trust Assets;

12.     to ensure that Plan Distributions to holders of Allowed Claims and that Trust Distributions to holders of Abuse Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes relating to distributions under the Plan or the Trust Documents;

13.     to construe, enforce and resolve all questions and disputes relating to employment agreements existing or approved by the Bankruptcy Court at or before Confirmation;

14.     to hear and determine the Insurance Actions and to determine all questions and issues arising thereunder.  Notwithstanding anything herein to the contrary, however, such retention of jurisdiction by the Bankruptcy Court in this <u>Section XI.B.14</u> shall not be deemed to be a retention of exclusive jurisdiction with respect to any matter described in this <u>Section XI.B.14</u>; rather, any court other than the Bankruptcy Court that has jurisdiction over any matter described in this <u>Section XI.B.14</u> shall have the right to exercise such jurisdiction;

15. to hear and determine any matters related to the Victims Compensation Trust's indemnification obligations under <u>Article IV</u> and the Trust Documents;

16. to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

17. to enter in aid of implementation of the Plan such orders as are necessary, including orders in aid of the implementation and enforcement of the releases, the Channeling Injunction, and the other injunctions described herein;

18. to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Victims Compensation Trust or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, to violate, or to be insufficient to satisfy any of the terms, conditions, or other duties associated with any Insurance Policies; <u>provided</u>, <u>however</u>, that (a) such orders shall not impair the Insurer Coverage Defenses or the rights, claims or defenses, if any, of any Insurer that are set forth or provided for in the Plan, the Plan Documents, the Confirmation Order, or any other orders entered in the Chapter 11 Cases and (b) the rights of all interested parties, including any Insurer, are reserved to oppose or object to any such motion or order seeking such relief; and

19. to enter a Final Order or decree concluding or closing the Chapter 11 Cases.

To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference the "Bankruptcy Court" in this Article XI shall be deemed to be replaced by the "District Court."

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

A.    <u>Substantial Consummation of the Plan.</u>

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

B.    <u>Amendment or Modification of the Plan.</u>

1.    *Plan Modifications*.

The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, upon order of the Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125

of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

2.    *Other Amendments.*

Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

C.    Effectuating Documents and Further Transactions.

Each of the officers, managers, or members of the Debtors or the Reorganized Debtors or the Victims Compensation Trustee is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

D.    Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, guardian, agent, representative, administrator, successor, or permitted assign, if any, of each such Person.

E.    Revocation or Withdrawal of Plan.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, including the Trust Documents, shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

F.    The Official Committees and the Future Claimants' Representative.

Except as set forth below, the Official Committees and the Future Claimants' Representative shall continue in existence until the Effective Date.  After the Effective Date, the rights, duties and responsibilities of the Future Claimants' Representative shall be as set forth in

the Trust Agreement. On the Effective Date, the Official Committees shall dissolve and, as of the Effective Date, each member (including each officer, director, employee, or agent thereof) of the Official Committees and each Professional retained by the Official Committees shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, its membership on the Official Committees, the Plan, or the Chapter 11 Cases, except with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by the Official Committees. For the avoidance of doubt, neither the Debtors nor the Reorganized Debtors shall have any obligation to pay any fees or expenses of any Professional retained by the Official Committees or the Future Claimants' Representative that are earned or incurred on or after the Effective Date. Nor shall the Debtors or the Reorganized Debtors have any obligation to pay fees or expenses of any Professional retained by the Official Committees or the Future Claimants' Representative that are earned or incurred before the Effective Date to the extent such fees or expenses (or any portion thereof) qualify as Trust Expenses, in which case such fees and expenses (or the applicable portion thereof) shall be paid by the Victims Compensation Trust in accordance with the Trust Agreement.

G.    <u>Request for Expedited Determination of Taxes</u>.

The Debtors and the Reorganized Debtors, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

H.    <u>Non-Severability of Plan Provisions</u>.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be), and (3) nonseverable and mutually dependent.

I.    <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement, an Exit Facility Document, or any other Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof; <u>provided,</u>

_however_, that governance matters relating to the Reorganized BSA shall be governed by the laws of the District of Columbia.

J.      Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including the Reorganized Debtors.

K.      Computation of Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.  In the event that any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

L.      Deemed Acts.

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan and/or the Confirmation Order without any further act by any Person.

M.      Entire Agreement.

The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents.  No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

N.      Exhibits to Plan.

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

O.      Notices.

All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

1.      If to the Debtors or the Reorganized Debtors, to:

        Boy Scouts of America
        1325 W. Walnut Hill Lane
        Irving, Texas 75015
        Attn:  Steven McGowan, Secretary and General Counsel
        Email: Steve.McGowan@scouting.org

        *with copies to:*

        Sidley Austin LLP
        One South Dearborn Street
        Chicago, Illinois 60603
        Attn: Matthew E. Linder
        Email:  mlinder@sidley.com

        *– and –*

        Sidley Austin LLP
        787 Seventh Avenue
        New York, New York 10019
        Attn:  Jessica C. K. Boelter
        Email:  jboelter@sidley.com

        *– and –*

        Morris, Nichols, Arsht & Tunnell LLP
        1201 North Market Street, 16th Floor
        P.O. Box 1347
        Wilmington, Delaware 19899-1347
        Attn:  Derek C. Abbott
        Email:  dabbott@mnat.com

After the Effective Date, the Reorganized Debtors are authorized to send a notice to any Person providing that, to continue to receive documents filed in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to such Persons who have filed such renewed requests.

*[Remainder of Page Intentionally Left Blank]*

Dated:  February 18, 2020

Boy Scouts of America
BSA Delaware, LLC

_____

Steven P. McGowan
Secretary and General Counsel

# **EXHIBIT A**

**TRUST AGREEMENT**

***(to be supplemented)***

# **EXHIBIT B**

## **TRUST DISTRIBUTION PROCEDURES**

### *(to be supplemented)*

# EXHIBIT C

**VICTIMS COMPENSATION TRUSTEE**

***(to be supplemented)***

## EXHIBIT D

## TRUST ADVISORY COMMITTEE

*(to be supplemented)*

# **EXHIBIT E**

## **IDENTIFIED PROPERTY**

**EXHIBIT E - LISTING OF IDENTIFIED PROPERTY**
**Boy Scouts of America (excluding subsidiaries & affiliates)**
**Breakdown of Assets as of 11/30/19**
**Unaudited**
*Subject to Amendment*

| | Balance as of 11/30/2019 | Identified Property | Other Property |
|---|---|---|---|
| **Cash** | | | |
| Cash | $   123,102,266 | $   39,987,574 | $   83,114,692 |
| Restricted Cash - LC Collateral (JPM) | 62,773,574 | 62,773,574 | - |
| **Total Cash** | 185,875,840 | 102,761,148 | 83,114,692 |
| | | | |
| **Investments** | | | |
| General Investments | 192,500,191 | 81,114,899 | 111,385,293 |
| Order of the Arrow | 7,399,346 | 7,399,346 | - |
| **Total Investments** | 199,899,538 | 88,514,245 | 111,385,293 |
| | | | |
| **Land & Buildings** | | | |
| Admin Buildings in TX | 4,160,897 | - | 4,160,897 |
| Supply & Distribution - Charlotte, NC | 3,026,876 | - | 3,026,876 |
| **Subtotal Land & Buildings** | 7,187,774 | - | 7,187,774 |
| High Adventure Facilities: [1] | | | |
| Philmont Scout Ranch | 40,058,766 | 40,058,766 | - |
| Florida Sea Base | 16,702,866 | 16,702,866 | - |
| Northern Tier | 6,561,178 | 6,561,178 | - |
| **Subtotal Adventure Bases** | 63,322,810 | 63,322,810 | - |
| **Total Land & Buildings** | 70,510,584 | 63,322,810 | 7,187,774 |
| | | | |
| **Furniture & Equipment** | 29,906,205 | - | 29,906,205 |
| | | | |
| **Accounts Receivable** | 23,651,417 | - | 23,651,417 |
| | | | |
| **Pledges Receivable (NPV, net of allowances)** | | | |
| Donor Restricted Pledges Receivable, net | 52,949,984 | 52,949,984 | - |
| Unrestricted Receivable, net | 12,800,000 | - | 12,800,000 |
| **Total Pledge Receivable** | 65,749,984 | 52,949,984 | 12,800,000 |
| | | | |
| **Inventory** | 67,948,152 | - | 67,948,152 |
| | | | |
| **Prepaids & Deferred Charges** | 21,686,203 | - | 21,686,203 |
| | | | |
| **Other Assets** | | | |
| Misc Summit Assets | 6,012,908 | 6,012,908 | - |
| Gift Annuity & Pooled Income Investments | 8,117,898 | 8,117,898 | - |
| **Total Other Assets** | 14,130,806 | 14,130,806 | - |
| | | | |
| **Other Receivables** | | | |
| Note Receivable from Arrow WV | 345,396,380 | 345,396,380 | - |
| Other Interfund Rec/(Pay) | (10,594,646) | - | (10,594,646) |
| **Total Interfund Receivable** | 334,801,734 | 345,396,380 | (10,594,646) |
| | | | |
| **TOTAL ASSETS PER BALANCE SHEET** | $ 1,014,160,463 | $  667,075,374 | $  347,085,089 |
| | | | |
| **OFF BALANCE SHEET ASSETS** | | | |
| Oil & Gas Royalties | - | | √ |
| Artwork - Original Rockwell paintings, etc. | - | | √ |

[1] The Summit high adventure facility is in a separate legal entity, Arrow WV.  BSA has a note receivable due from Arrow.

**EXHIBIT F**

**LOCAL COUNCILS**

Abraham Lincoln
Alabama-Florida
Alameda
Alamo Area
Allegheny Highlands
Aloha
Andrew Jackson
Anthony Wayne Area
Arbuckle Area
Atlanta Area
Baden-Powell
Baltimore Area
Bay Area
Bay-Lakes
Black Hills Area
Black Swamp Area
Black Warrior
Blackhawk Area
Blue Grass
Blue Mountain
Blue Ridge
Blue Ridge Mountains
Buckeye
Buckskin
Bucktail
Buffalo Trace
Buffalo Trail
Caddo Area
Calcasieu Area
California Inland Empire
Cape Cod and Islands
Cape Fear
Capitol Area
Cascade Pacific
Catalina
Central Florida
Central Georgia
Central Minnesota
Central North Carolina
Chattahoochee
Cherokee Area
Cherokee Area
Chester County
Chickasaw
Chief Cornplanter
Chief Seattle

Chippewa Valley
Choctaw Area
Cimarron
Circle Ten
Coastal Carolina
Coastal Georgia
Colonial Virginia
Columbia-Montour
Connecticut Rivers
Connecticut Yankee
Conquistador
Cornhusker
Coronado Area
Cradle of Liberty
Crater Lake
Crossroads of America
Dan Beard
Daniel Boone
Daniel Webster
De Soto Area
Del-Mar-Va
Denver Area
East Carolina
East Texas Area
Erie Shores
Evangeline Area
Far East
Five Rivers
Flint River
French Creek
Gamehaven
Garden State
Gateway Area
Georgia-Carolina
Glacier's Edge
Golden Empire
Golden Spread
Grand Canyon
Grand Columbia
Grand Teton
Great Alaska
Great Lakes
Great Rivers
Great Salt Lake
Great Smoky Mountain
Great Southwest

Great Trail
Greater Alabama
Greater Los Angeles Area
Greater New York
Greater Niagara Frontier
Greater St. Louis Area
Greater Tampa Bay Area
Greater Wyoming
Greater Yosemite
Green Mountain
Greenwich
Gulf Coast
Gulf Stream
Hawk Mountain
Hawkeye Area
Heart of America
Heart of New England
Heart of Virginia
Hoosier Trails
Housatonic
Hudson Valley
Illowa
Indian Nations
Indian Waters
Inland Northwest
Iroquois Trail
Istrouma Area
Jayhawk Area
Jersey Shore
Juniata Valley
Katahdin Area
Lake Erie
Las Vegas Area
LaSalle
Last Frontier
Laurel Highlands
Leatherstocking
Lincoln Heritage
Long Beach Area
Longhorn
Longhouse
Longs Peak
Los Padres
Louisiana Purchase
Marin
Mason-Dixon

Mayflower
Mecklenburg County
Miami Valley
Mid-America
Middle Tennessee
Mid-Iowa
Midnight Sun
Minsi Trails
Mississippi Valley
Mobile Area
Monmouth
Montana
Moraine Trails
Mount Baker
Mount Diablo Silverado
Mountaineer Area
Muskingum Valley
Narragansett
National Capital Area
Nevada Area
New Birth of Freedom
North Florida
Northeast Georgia
Northeast Illinois
Northeast Iowa
Northeastern Pennsylvania
Northern Lights
Northern New Jersey
Northern Star
Northwest Georgia
Northwest Texas
Norwela
Occoneechee
Ohio River Valley
Old Hickory
Old North State
Orange County
Oregon Trail
Ore-Ida
Overland Trails
Ozark Trails
Pacific Harbors
Pacific Skyline
Palmetto
Pathway to Adventure
Patriots' Path

Pee Dee Area
Pennsylvania Dutch
Piedmont
Piedmont
Pikes Peak
Pine Burr Area
Pine Tree
Pony Express
Potawatomi Area
Prairielands
President Gerald R. Ford
Puerto Rico
Pushmataha Area
Quapaw Area
Quivira
Rainbow
Redwood Empire
Rio Grande
Rip Van Winkle
Rocky Mountain
Sagamore
Sam Houston Area
Samoset
San Diego-Imperial
San Francisco Bay Area
Santa Fe Trail
Seneca Waterways
Sequoia
Sequoyah
Shenandoah Area
Silicon Valley Monterey Bay
Simon Kenton
Sioux
Snake River
South Florida
South Georgia
South Plains
South Texas
Southeast Louisiana
Southern Shores
Southern Sierra
Southwest Florida
Spirit of Adventure
Stonewall Jackson Area
Suffolk County
Susquehanna

Suwannee River Area
Tecumseh
Texas Southwest
Texas Trails
Theodore Roosevelt
Three Fires
Three Harbors
Three Rivers
Tidewater
Transatlantic
Trapper Trails
Tukabatchee Area
Tuscarora
Twin Rivers
Twin Valley
Utah National Parks
Ventura County
Verdugo Hills
Voyageurs Area
W.D. Boyce
Washington Crossing
Water and Woods
West Tennessee Area
Westark Area
Westchester-Putnam
Western Los Angeles County
Western Massachusetts
Westmoreland-Fayette
Winnebago
Yocona Area
Yucca

# **EXHIBIT G**

## **RELATED NON-DEBTOR ENTITIES**

Arrow WV, Inc.
Atikaki Youth Ventures Inc.
Atikokan Youth Ventures Inc.
BSA Asset Management, LLC
BSA Endowment Master Trust
Learning for Life
National Boy Scouts of America Foundation
NewWorld19, LLC
Texas BSA, LLC

**<u>EXHIBIT H</u>**

**LOCAL COUNCIL TRUST CONTRIBUTIONS**

***(to be supplemented)***

# **EXHIBIT I**

## **CHARTERED ORGANIZATION TRUST CONTRIBUTIONS**

***(to be supplemented)***

## **<u>EXHIBIT J</u>**

## **REJECTED CONTRACTS SCHEDULE**

***(to be supplemented)***

**<u>EXHIBIT K</u>**

**RESTATED 2010 BOND DOCUMENTS**

*(to be supplemented)*

# EXHIBIT L

## RESTATED 2012 BOND DOCUMENTS

*(to be supplemented)*

## **EXHIBIT M**

**RESTATED 2010 CREDIT FACILITY DOCUMENTS**

***(to be supplemented)***

# **EXHIBIT N**

## **RESTATED 2019 RCF DOCUMENTS**

### *(to be supplemented)*

# **EXHIBIT O**

## **SUMMARY OF EXIT FACILITY TERMS**

***(to be supplemented)***

## EXHIBIT P

**REORGANIZED DEBTORS' DIRECTORS AND OFFICERS**

*(to be supplemented)*