## **EXHIBIT A**

Further Revised Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 5** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTY PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 363, 503 AND 507; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b); AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), pursuant to sections 105(a), 361, 362, 363, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1:

(a)    authorizing the Debtors to continue to use Cash Collateral and all other Prepetition Collateral (each as defined below) in which any of the Prepetition Secured Parties (as defined below) have an interest in accordance with the terms and conditions of this Interim Order, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

(b)    authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties to the extent of any diminution in value of their interest in the Prepetition

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Collateral, including Cash Collateral (each as defined below), under or in connection with the Prepetition Secured Agreements (as defined below);

(c)     subject to certain challenge rights of certain parties in interest (subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to (i) the Prepetition Secured Agreements; (ii) the Loan Documents (as defined in the Credit Agreements); (iii) the Bond Documents (as defined in the Bond Agreements); and (iv) the liens and security interests arising therefrom ((i)-(iv) are collectively defined as the "<u>Prepetition Loan Documents</u>");

(d)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(e)     authorizing the Debtors to (i) maintain and extend existing letters of credit under the 2019 RCF Agreement and 2010 RCF Agreement (each as defined below), and (ii) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit; *provided*, *that*, for the avoidance of doubt, no such new letters of credit shall be issued under the 2019 RCF Agreement or the 2010 RCF Agreement;

(f)     scheduling, pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(c), a final hearing (the "<u>Final Hearing</u>"), to be held within thirty-five (35) days of the entry of this Interim Order to consider entry of the Final Order approving the relief granted herein on a final basis;

(g)     waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(h)     granting related relief;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Debtors consent to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Interim Hearing</u>"); and all objections, if any, to the Motion having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A.    <u>Disposition</u>.   The relief requested in the Motion is granted on an interim basis in accordance with the terms of, and to the extent set forth in, this Interim Order.   Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein.   This Interim Order shall become effective immediately upon its entry.

B.    <u>Debtors' Stipulations</u>.   In requesting use of their Cash Collateral and the other Prepetition Collateral, and in exchange for and as a material inducement to the Prepetition Secured Parties agreement to permit consensual use of use of their Cash Collateral and the other Prepetition Collateral, the Debtors acknowledge, represent, stipulate, and agree, subject to the challenge rights set forth in Paragraph 11 below (but subject to the limitations thereon contained herein), as follows (Paragraphs B(i) through B(xvi) are collectively defined as the "<u>Debtors' Stipulations</u>"):

(i)    on August 11, 2010, Boy Scouts of America ("<u>BSA</u>") entered into that certain *Credit Agreement* (as amended, supplemented or otherwise modified as of the Petition Date, and together with all security, pledge and guaranty agreements and all other documentation

executed in connection with any of the foregoing, the "2010 RCF Agreement"), pursuant to which JPMorgan Chase Bank, National Association ("JPM"), as lender, made term loans to BSA in an aggregate amount of $25,000,000 and agreed to make revolving loans to BSA and issue letters of credit on behalf of BSA in an aggregate amount of up to $75,000,000;

(ii)    on November 5, 2010, BSA and non-debtor Arrow WV, Inc. ("Arrow") entered into that certain *Bond Purchase and Loan Agreement* with The County Commission of Fayette County, West Virginia (the "Issuer") and JPM (as amended, supplemented or otherwise modified as of the Petition Date, the "2010 Bond Agreement") pursuant to which the Issuer issued The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2010A in an aggregate principal amount of $50,000,000 and Series 2010B in an aggregate principal amount of $50,000,000 (collectively, the "2010 Bonds"), the proceeds of which were loaned to BSA.  The loans from the Issuer to BSA were evidenced by that certain Promissory Note - 2010A executed by BSA and payable to the order of the Issuer in the original principal amount of $50,000,000 and that certain Promissory Note - 2010B executed by BSA and payable to the order of the Issuer in the original principal amount of $50,000,000, which notes were pledged by the Issuer to secure the repayment of the 2010 Bonds. The Series 2010A Bonds and 2010A Note were paid off on November 5, 2015;

(iii)    on March 9, 2012, BSA and Arrow entered into that certain *Bond Purchase and Loan Agreement* with the Issuer and JPM (as amended, supplemented or otherwise modified as of the Petition Date, the "2012 Bond Agreement", and together with the 2010 Bond Agreement, the "Bond Agreements") pursuant to which the Issuer issued The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond

4

(Arrow WV Project), Series 2012 in an aggregate principal amount not to exceed $175,000,000 (the "2012 Bonds", and together with the 2010 Bonds, the "Bonds"), the proceeds of which were loaned to BSA.  The loans from the Issuer to BSA are evidenced by that certain Promissory Note - 2012 executed by BSA and payable to the order of the Issuer in the original principal amount of $175,000,000, which note was pledged by the Issuer to secure the repayment of the Bonds;

(iv)    on March 21, 2019, BSA entered into that certain *Credit Agreement* (as amended, supplemented or otherwise modified as of the Petition Date, and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "2019 RCF Agreement", and collectively with the 2010 RCF Agreement, the "Credit Agreements"),[3] pursuant to which JPM, as lender, agreed to make revolving loans to BSA and issue letters of credit on behalf of BSA in an aggregate amount of up to $71,500,000;[4]

(v)     as of the Petition Date, the Debtors were liable to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents for (a) the aggregate principal amount not less than (1) $61,542,720 in respect of letters of credit issued on behalf of BSA under the 2019 RCF Agreement, if such letters of credit are ultimately drawn; (2)  $11,250,000 in respect of term loans made to BSA, $25,212,317 in respect of revolving loans made to BSA, and $44,299,743 in respect of letters of credit issued on behalf of BSA under the 2010 RCF Agreement, if such letters of credit are ultimately drawn; (3) $40,137,274 under the 2010 Bond Agreement; and (4) $145,662,101 under the 2012 Bond Agreement; and (b) accrued and unpaid interest, fees, expenses (including advisors fees and expenses, in each case, that are chargeable or

---

[3]  The Bond Agreements and the Credit Agreements are collectively referred to as the "Prepetition Secured Agreements".

[4]  JPM, in its capacity as lender under the Credit Agreements and holder of the Bonds issued under the Bond Documents, is collectively referred to as the "Prepetition Secured Lender".

reimbursable under the Prepetition Loan Documents), disbursements, charges, claims, indemnities and other costs and obligations of whatever nature incurred in connection therewith which are chargeable or otherwise reimbursable under the Prepetition Loan Documents or applicable law, whether arising before or after the Petition Date, including any "Obligations" (as defined in each respective Prepetition Loan Documents), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Loan Documents ((a) through (b) are collectively defined as the "Prepetition Obligations");

(vi)    all of the Prepetition Obligations constitute the legal, valid, binding and unconditional obligations of the Debtors to the Prepetition Secured Parties, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(vii)    no portion of the Prepetition Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, avoidance, reduction, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, reduction, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any kind or nature under the Bankruptcy Code or any other applicable law or regulation or otherwise and the Debtors do not possess, and shall not assert, any claim, counterclaim, setoff or defense of any kind, nature or

description that would in any way affect the validity, enforceability and non-avoidability of any Prepetition Obligations;

(viii)   pursuant to and in connection with the Prepetition Loan Documents, each Debtor granted to JPM, in its capacity as collateral agent (the "Prepetition Agent", and collectively with the Prepetition Secured Lender, the "Prepetition Secured Parties"), for the benefit of the Prepetition Secured Parties, continuing, legal, valid, binding, properly perfected, enforceable, non-avoidable first priority liens on and security interests in (the "Prepetition Liens") all of the "Collateral" (as defined in each respective Prepetition Loan Documents) (the "Prepetition Collateral"),[5] which Prepetition Liens (a) secure all of the Prepetition Obligations; (b) are not subject to any contest, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise) (except as expressly set forth in subclause (c) below), recovery, reduction, attachment, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, challenge, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any nature under the Bankruptcy Code or any other applicable law or regulation or otherwise; and (c) are and remain senior in priority over any and all other liens on and security interests in the Prepetition Collateral, subject only to valid, perfected and unavoidable liens on or security interests in the Prepetition Collateral that are senior to or *pari passu* with the Prepetition Liens (a "Permitted Encumbrance");

---

[5] For the avoidance of doubt, the definition of "Prepetition Collateral" shall specifically exclude all (i) amounts payable in connection with any agreement by a donor, grantor or other Person to donate or otherwise contribute funds to a Debtor if the use of such funds to be donated is restricted by such Person or applicable state law to a purpose other than the Project (the "Restricted Amounts"), and (ii) Excluded Property. As used in this footnote, Person, Debtor, Project and Excluded Property have the same meaning ascribed to them in that certain Third Amended and Restated Security Agreement dated as of March 21, 2019 (the "Security Agreement"), by and among BSA and Arrow, as debtors, JPM, in its capacity as collateral agent, JPM, in its capacity as the lender under the Credit Agreements, and as holder under the Bond Agreements.

(ix)     the Prepetition Secured Parties duly perfected the Prepetition Liens in the Prepetition Collateral by, among other things, filing financing statements, and, where necessary, possessing the relevant instruments, certificates, or other property;

(x)     as of the Petition Date, other than as expressly permitted under the Prepetition Loan Documents, there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens;

(xi)     the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral, and to assert any offsets, set-offs, recoupments, defenses, claims, objections, challenges of any kind, causes of action and/or choses of action against the Prepetition Secured Parties, with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral;

(xii)     any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, and/or (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors;

(xiii)     all of the Debtors' cash as of the Petition Date, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below) and is Prepetition Collateral of the Prepetition Secured Parties; *provided*, *however*, the definitions of "Cash Collateral" and "Prepetition Collateral" shall specifically exclude all Restricted Amounts and Excluded Property (as defined in the Security Agreement);

(xiv)     the Debtors admit, stipulate, acknowledge and agree that the Prepetition Secured Parties may credit bid the full amount of (or any portion of) the Prepetition Obligations;

(xv)    none of the Prepetition Secured Parties constitutes a control person or insider of the Debtors by virtue of any of the actions taken by any of them in respect of or in connection with (a) making the decision to consent to the use of Cash Collateral; (b) extending other financial accommodations to the Debtors under this Interim Order; (c) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (d) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (e) extending other financial accommodations to the Debtors under the Prepetition Loan Documents; and (f) making the decision to collect the indebtedness and obligations of the Debtors, the Prepetition Secured Parties shall not be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law; and

(xvi)    the Prepetition Secured Parties are entitled, pursuant to sections 361, 362(c)(2), 363(e), 364(d)(l) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date, in exchange for (a) the use of Cash Collateral, and (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

C.    <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Prepetition Secured Parties have a lien, security interest or other interest; *provided*, *however*, the definition of "Cash Collateral" shall specifically exclude all Restricted Amounts and Excluded Property (as defined in the Security Agreement).

D.     <u>Findings Regarding the Prepetition Secured Parties' Consent to Use of Cash Collateral</u>. The Prepetition Secured Parties have consented to the adequate protection provided for in this Interim Order; *provided*, *however*, that the respective consents of the Prepetition Secured Parties, the use of the Prepetition Collateral (including Cash Collateral), and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Interim Order; *provided*, *further*, that such consents shall be of no further force and effect in the event this Interim Order is not entered (or is entered and subsequently vacated).

E.     <u>Immediate and Irreparable Harm</u>.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.

Based on the foregoing, the Motion, the First Day Declaration, and the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     <u>Motion Granted</u>.  The Motion is GRANTED, and the Debtors' use of Cash Collateral and other Prepetition Collateral on an interim basis is authorized, subject to the terms and conditions of this Interim Order.

2.     <u>Authorization</u>.

(i)     Any unrestricted funds that are deposited into any Deposit Account or Securities Account (each as defined in Article 9 of the Uniform Commercial Code) of the Debtors on or after the Petition Date (such new funds, the "<u>Postpetition Funds</u>") shall be deemed segregated from any unrestricted funds existing in any of the Debtors' Deposit Accounts or Securities Accounts as of the Petition Date (such existing funds, the "<u>Prepetition Funds</u>").  The

Postpetition Funds shall not be deemed the "Collateral" (as defined in each respective Prepetition Loan Document) of the Prepetition Secured Parties solely by virtue of being in the possession or control of the Prepetition Secured Parties. The Prepetition Secured Parties, however, reserve all rights to assert that some or all of the Postpetition Funds are "Collateral" of the Prepetition Secured Parties under the Prepetition Loan Documents; and

        (ii)    Unrestricted funds used by the Debtors from the Petition Date through the entry of the Final Order shall first be deemed to be made out of the Postpetition Funds that are not the Collateral of the Prepetition Secured Parties (the "Unencumbered Postpetition Funds"). If the Debtors use any of the Prepetition Funds or the Postpetition Funds that are the Collateral of the Prepetition Secured Parties, or are subsequently determined to be the Collateral of the Prepetition Secured Parties (the "Encumbered Postpetition Funds"), then the Prepetition Secured Parties shall be entitled to adequate protection, as provided for in Paragraph 4 of this Interim Order, to the extent of any diminution in value of the Prepetition Funds or the Encumbered Postpetition Funds.

        (iii)    The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order and compliance with the Budget (as defined below), to use Cash Collateral to the extent unencumbered funds are unavailable; provided that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms, conditions and limitations of this Interim Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

        (iv)    The Debtors' authorization to use Cash Collateral hereunder shall terminate on March 27, 2020, or as otherwise ordered by the Court.

3.      Budget.  The Debtors and the Prepetition Secured Parties have agreed to an initial budget attached hereto as **Exhibit 1**, including a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis (the "Budget"). The Agent shall have no obligation to permit the use of Cash Collateral, and the Debtors shall have no authority to use Cash Collateral, hereunder other than in accordance with the Budget, and as set forth in this Interim Order.  The Prepetition Secured Parties (i) may assume the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget.

4.      Adequate Protection of Prepetition Secured Parties.  Pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate actual diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code (such diminution in value, the "Adequate Protection Amount"); *provided that* the avoidance of the Prepetition Secured Parties' interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Secured Parties' interests in Prepetition Collateral.  As adequate protection for the Adequate Protection Amount, and solely to the extent of same, the Prepetition Secured Parties are hereby granted the following:

(i)      *Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection against any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, effective as of the Petition Date and perfected

without the need for execution by the Debtors or the recordation or other filing by the Prepetition Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Adequate Protection Collateral (as defined below), the Prepetition Agent is hereby granted, for the ratable benefit of the Prepetition Secured Lender, solely to the extent of any actual diminution in value, if any, of the Prepetition Collateral, as security for the payment of the Adequate Protection Amount, valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests in (collectively, the "Adequate Protection Liens") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate Protection Collateral"), *provided*, *that* "Adequate Protection Collateral" shall specifically exclude all Restricted Amounts, Excluded Property (as defined in the Security Agreement) and proceeds of any claims or causes of action of the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law avoidance actions under chapter 5 of the Bankruptcy Code. The Adequate Protection Liens shall be junior only to any Permitted Encumbrance.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.  The Adequate Protection Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.  The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative

13

appointed in the Debtors' Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case").

(ii)    *Adequate Protection Superpriority Claims*.  The Adequate Protection Amount due to the Prepetition Agent shall constitute allowed superpriority administrative expense claims against the Debtors in the amount of any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors and any successor trustee or creditor in these Chapter 11 Cases or any Successor Case (the "Adequate Protection Superpriority Claims"); *provided*, *however*, that, for the term of this Interim Order, such Adequate Protection Superpriority Claims shall be subordinate only to fees payable under 28 U.S.C. § 1930.

(iii)    *Payment of Prepetition and Postpetition Interest*.  The Debtors shall pay to the Prepetition Agent for the benefit of the Prepetition Secured Lender all accrued and unpaid interest (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) at the non-default rates and consistent with the ordinary course interest payment dates set forth in each respective Prepetition Loan Document (the "Adequate Protection Interest Payments").

(iv)    *Prepetition Agent Fees and Expenses*.  As additional adequate protection, the Prepetition Agent shall receive from the Debtors, for the benefit of the Prepetition Secured Lender, current cash payments of all reasonable and documented prepetition and postpetition fees and expenses payable to the Prepetition Secured Parties under the Prepetition Loan Documents, including, but not limited to, the reasonable and documented prepetition and postpetition fees and disbursements of legal counsel, financial advisors and other consultants (the "Adequate Protection Fees and Expenses", and together with the Adequate Protection Interest Payments, the "Adequate Protection Payments").  Payment of all such Adequate Protection Fees and Expenses shall not be subject to allowance by the Court but shall be subject to the following process.  At the same time such invoices are delivered to the Debtors, the professionals for the Prepetition Secured Parties shall deliver a copy of their respective invoices to counsel for any official committee appointed in these cases pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee") and the office of the United States Trustee (the "U.S. Trustee"). The invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee, or the Creditors' Committee with respect to such invoices within ten (10) business days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors. Except as otherwise ordered by the Court in the event an objection is timely filed, such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

5.    <u>Reporting</u>.  Other than the requirement to provide an "Annual Audit" pursuant to section 5.01(a) of the Credit Agreements and section 6.1(a)(i) of the Bond Agreements, the Debtors shall comply with the reporting requirements set forth in the Prepetition Loan Documents, and the Debtors shall provide the following additional reporting to the Prepetition Secured Parties:

(i)    on each Friday following entry of this Interim Order, a report showing the actual cash receipts and disbursements for the week ending the preceding Friday;

(ii)    all financial reports, forecasts and all other financial documentation, pleadings and other filings that are reasonably requested by the Prepetition Secured Parties or their representatives and agents;

(iii)    all such information that is afforded to the Creditors' Committee and/or the Creditors' Committee's respective legal or financial advisors (other than information subject to the confidentiality procedures to protect abuse victims as described in the *Debtors' Motion for Entry of an Order (I) Authorizing the Filing of a List of (A) Counsel Representing the Largest Numbers of Abuse Victims and (B) the Unsecured Creditors of the Debtors, (II) Authorizing Special Noticing and Confidentiality Procedures to Protect Abuse Victims, (III) Authorizing and Approving Procedures for Providing Notice of Commencement, and (IV) Granting Related Relief*); and

(iv)    in addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall (a) permit representatives of the Prepetition Secured Parties to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors'

business premises and other properties, and (b) cause their representatives and agents to make themselves reasonably available to discuss the Debtors' affairs, financial condition, properties, business, operations and accounts with the representatives and agents of the Prepetition Secured Parties.

6.      <u>Cash Management</u>.  Subject to the Debtors' cash management order entered by the Court, the Debtors are authorized and directed to maintain their cash management system in a manner consistent with this Interim Order, and any order of this Court approving the maintenance of the Debtors' cash management system.

7.      <u>Requests for Further Adequate Protection</u>.  Nothing in this Interim Order shall be deemed to limit, abridge, waive or otherwise affect (a) any right of the Prepetition Secured Parties to request at any time that the Court provide different, additional or further adequate protection of their interests in the Prepetition Collateral (including Cash Collateral) or to seek different, additional, or further adequate protection in the event the Prepetition Secured Parties contend that the adequate protection provided herein is inadequate or (b) the ability of the Debtors or any other party in interest to oppose any such relief.

8.      <u>Perfection of Adequate Protection Liens</u>.

(i)      The Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments, or take possession of or

control over any cash, securities or any other property of the Debtors, or take any action that otherwise may be required under federal, state or local law in any jurisdiction to validate and perfect a security interest or lien, in any such case, the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order), at the time and on the date of entry of this Interim Order or thereafter.  Upon the reasonable request of any of the Prepetition Secured Parties, the Prepetition Secured Parties (at the Debtors' cost and expense) and the Debtors, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Prepetition Secured Parties to further validate, perfect, preserve and enforce the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(ii)    A certified copy of this Interim Order (or the notice of the filing hereof) may, in the discretion of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or *in lieu* of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order or notice for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Prepetition Secured Parties to take all actions, as applicable, referenced in this Paragraph 8(ii) and Paragraph 8(i).

9.    Limitation on Charging Expenses against Collateral.  Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Secured Parties to any charge, lien, assessment, or claim against the Prepetition Collateral, or the Adequate Protection Liens, or

otherwise.  No action, inaction or acquiescence by the Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Prepetition Secured Parties, the Prepetition Obligations, or the Prepetition Collateral.

10.    <u>Effect of Debtors' Stipulations</u>.  Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph B of this Interim Order, shall be binding upon each of the Debtors under all circumstances and for all purposes upon entry of this Interim Order.

11.    Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Interim Order, including, without limitation, in Paragraph B of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases (including a Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:  (a) such Creditors' Committee or any other party in interest has filed (subject to the limitations contained herein, including, *inter alia*, in this Paragraph) by no later than a date that is the later of (i) in the case of a party in interest other than any Committee, 75 days after entry of this Interim Order; (ii) in the case of a Creditors' Committee, 60 days after the filing of notice of appointment of the Creditors' Committee; (iii) with respect to any chapter 7 trustee appointed or elected for any of the Debtors, prior to the expiration of the periods set forth in subsections (i) and (ii) above, no later than the date that is the later of (a) fourteen (14) days after the appointment of such chapter 7 trustee or (b) the expiration of the time periods set forth in the foregoing subsections (i) and (ii) above; (iv) with respect to any Challenge Proceeding (as

defined below) against the Prepetition Secured Parties, any such later date agreed to in writing by the Prepetition Secured Parties in their sole discretion; or (v) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, provided that such order is entered before the expiration of any applicable period as set forth in clauses (i) through (iv) of this sentence (the "Challenge Period") a motion or other pleading requesting standing to file a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code), (A) contesting, objecting or otherwise challenging the admissions, stipulations, findings or releases included in the Debtors' Stipulations and this Interim Order, (B) contesting, objecting or otherwise challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), (C) contesting, objecting or otherwise challenging the right of the Prepetition Secured Parties to credit bid, up to the full amount of the Prepetition Obligations, in any sale of the Prepetition Collateral, in each case pursuant to section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise, or (D) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) or any other claims, counterclaims or causes of action, objections, contests, defenses, setoffs, offsets or recoupments, whether arising at law or equity against the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and

assigns thereof, in each case solely in their respective capacities as such (collectively, the "<u>Representatives</u>"), and solely in their capacities as Representatives of the Prepetition Secured Parties, in connection with (1) the prepetition business relationship between or conduct of the Prepetition Secured Parties with the Debtors, (2) the actions or inactions of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the Prepetition Secured Parties in the nature of an "equitable subordination," "lender liability," "deepening insolvency" or "control person" liability, or (3) matters related to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens and the Prepetition Collateral ((A), (B), (C) and (D) collectively, a "<u>Challenge Proceeding</u>"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding.

12.    If no such Challenge Proceeding is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' Stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in Paragraph B of this Interim Order, shall be binding on all parties in interest, including, without limitation, any Creditors' Committee or any trustee appointed in these Chapter 11 Cases or any Successor Case; (b) the obligations of the Debtors under the Prepetition Loan Documents, including the Prepetition Obligations, shall constitute fully allowed secured claims within the meaning of Section 506 of the Bankruptcy Code not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases and any Successor Case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition

Obligations and the Prepetition Liens (including all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, the Prepetition Loan Documents or this Interim Order or otherwise, whether made prior to, on, or after the Petition Date) shall not be subject to any other or further claim or challenge by any Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by any Creditors' Committee, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released, and barred.

13.    If any such Challenge Proceeding is timely filed during the Challenge Period, (i) any claim or action that is not brought shall forever be barred, and (ii) each of the Debtors' Stipulations and each of the Debtors' other admissions and agreements contained in this Interim Order, including, without limitation, those contained in Paragraph B of this Interim Order, shall nonetheless remain binding and preclusive on any Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, and agreements were successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Creditors' Committee or any non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation,

Challenge Proceedings with respect to the Prepetition Loan Documents, the Prepetition Obligations, or the Prepetition Liens.

14.     <u>Restriction on Use of Cash Collateral</u>.  Notwithstanding anything herein or in any other order by this Court to the contrary, no Cash Collateral, Prepetition Collateral, proceeds, products, or offspring of any of the foregoing may be used to (except to the extent otherwise expressly agreed in writing by the Prepetition Agent in response to a written request from the Debtors specifying the proposed use) pay any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee (including any Creditors' Committee), any trustee appointed under these Chapter 11 Cases or any Successor Case, or any other person, party, or entity (or to pay any professional fees and disbursements in connection therewith) to take any position adverse to the Prepetition Secured Parties as determined by this Court consistent with the purpose and provision of the Bankruptcy Code.

15.     <u>Maintenance of Letters of Credit</u>.  Following entry of this Interim Order, the Debtors shall be authorized, but not directed, to (a) maintain and extend letters of credit issued under the Credit Agreements on an uninterrupted basis, in accordance with the practices and procedures in effect before the Petition Date and subject to the terms and conditions of the Credit Agreements, and to take all actions reasonably appropriate with respect thereto; *provided that*, in respect of any letter of credit in respect of which the Debtors are seeking to extend such letter of credit's term, the Debtors shall obtain the written consent of Prepetition Secured Parties in respect of such extension; and (b) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit, and to take all actions reasonably appropriate with respect thereto; *provided*, *that*, for the avoidance of doubt, no such new letters of credit shall be issued under the Credit Agreements.  If any existing letter of credit

under the Credit Agreements is drawn, any resulting obligation that is not paid by the Debtors shall constitute joint and several allowed administrative expense priority claims against the Debtors as provided for in sections 503(b) and 507(a)(2) of the Bankruptcy Code.

16.    <u>Limitation of Liability</u>.  Subject to entry of the Final Order, and solely in the Prepetition Secured Parties' capacity as a lender under the Prepetition Loan Documents, in determining to permit the use of Cash Collateral, making and administering the loans and financial accommodations extended under the Prepetition Loan Documents, extending other financial accommodations to the Debtors under this Interim Order and the Prepetition Loan Documents, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the Prepetition Loan Documents, as applicable, the Prepetition Secured Parties (in their capacity as such) or any successor of any of the foregoing shall not (a) be deemed to be in "control" of the operations of the Debtors or any of their affiliates; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors or any of their affiliates (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq*., as amended, or any similar federal or state statute).  Furthermore, nothing in this Interim Order or the Prepetition Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any of their subsidiaries affiliates in the operation of their businesses or in connection with their restructuring efforts.

17.     <u>Insurance</u>. The Debtors shall maintain insurance on the Prepetition Collateral in amounts, for the risks, and by the entities as required under the Prepetition Loan Documents.

18.     <u>Proofs of Claim</u>.   Neither the Prepetition Agent nor the Prepetition Secured Lender shall be required to file proofs of claim in any of these Chapter 11 Cases or a Successor Case for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Agent and the Prepetition Secured Lender upon approval of this Interim Order, and the Prepetition Agent and the Prepetition Secured Lender shall be treated under section 502(a) of the Bankruptcy Code as if they filed a proof of claim. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or a Successor Case to the contrary, the Prepetition Agent and the Prepetition Secured Lender are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or a Successor Case for any claim allowed herein.

19.     <u>Final Hearing</u>. The Final Hearing on the Motion shall be held on March 24, 2020 at 10:30 a.m., prevailing Eastern Time.  Any objections or responses to entry of a final order (the "<u>Final Order</u>") on the Motion shall be filed no later than 4:00 p.m., prevailing Eastern Time, on March 17, 2020 (the "<u>Objection Deadline</u>") and served on the following parties: (i) the Debtors, Boy Scouts of America, 1325 West Walnut Hill Lane, Irving, Texas 75038, Attn: Steven P. McGowan; (ii) proposed counsel to the Debtors, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Jessica C.K. Boelter and Charles M. Persons, and One South Dearborn, Chicago, Illinois 60603, Attn: Matthew E. Linder; (iii) proposed co-counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box

1347, Wilmington, Delaware 19899-1347, Attn: Derek C. Abbott; (iv) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: David Buchbinder and Hannah M. McCollum; (v) counsel to the prepetition Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Robert S. Brady and  Edwin J. Harron; (vi) counsel to JPMorgan Chase Bank, N.A., Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932, Attn: Louis R. Strubeck and Kristian W. Gluck; (vii) representatives of the prepetition Ad Hoc Committee of Local Councils, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Richard G. Mason and Joseph C. Celentino; (viii) counsel to the prepetition ad hoc group of attorneys representing significant numbers of abuse victims, Pachulski, Stang, Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067, Attn: James I. Stang; (ix) counsel to the County Commission of Fayette County (West Virginia), Steptoe & Johnson PLLC, Chase Tower – 8th Floor, 707 Virginia Street East, Charleston, West Virginia 25301, Attn: John Stump; (x) counsel to any statutory committee appointed in these chapter 11 cases; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

20.    <u>Service of the Interim Order</u>.  The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated: _____, 2020
Wilmington, Delaware

       _____
       JUDGE LAURIE SELBER SILVERSTEIN
       UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Budget**

**Boy Scouts of America**

**13 - Week Cash Flow Forecast**

Through  5/8/2020

($ in thousands)

| Week Ending | Actual Wk Ending 2/7/20 | Week 1 Forecast Wk Ending 2/14/20 | Week 2 Forecast Wk Ending 2/21/20 | Week 3 Forecast Wk Ending 2/28/20 | Week 4 Forecast Wk Ending 3/6/20 | Week 5 Forecast Wk Ending 3/13/20 | Week 6 Forecast Wk Ending 3/20/20 | Week 7 Forecast Wk Ending 3/27/20 | Week 8 Forecast Wk Ending 4/3/20 | Week 9 Forecast Wk Ending 4/10/20 | Week 10 Forecast Wk Ending 4/17/20 | Week 11 Forecast Wk Ending 4/24/20 | Week 12 Forecast Wk Ending 5/1/20 | Week 13 Forecast Wk Ending 5/8/20 | 13-Week Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Beginning Unrestricted Cash Balance - BSA** | 100,753 | 114,868 | 73,843 | 84,833 | 91,594 | 100,632 | 103,097 | 110,432 | 114,705 | 114,302 | 112,877 | 108,032 | 106,854 | 103,924 | 114,868 |
| **RECEIPTS** | | | | | | | | | | | | | | | |
| Total Operating Receipts | 22,089 | 10,577 | 12,679 | 15,610 | 12,946 | 11,356 | 12,619 | 11,095 | 6,975 | 6,360 | 7,373 | 7,078 | 7,678 | 5,259 | 127,605 |
| Transfers from Investments & Rest. Accounts, Net | 76 | 1,285 | - | 2,842 | - | - | - | 1,700 | 400 | - | - | - | 2,100 | - | 8,327 |
| Other Collections / Distributions | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | 22,165 | 11,862 | 12,679 | 18,452 | 12,946 | 11,356 | 12,619 | 12,795 | 7,375 | 6,360 | 7,373 | 7,078 | 9,778 | 5,259 | 135,932 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | |
| Total Trade AP | (3,079) | (5,442) | (394) | (2,258) | (1,117) | (3,262) | (3,823) | (3,572) | (4,558) | (5,372) | (5,929) | (5,538) | (5,335) | (4,835) | (51,435) |
| Total Payroll and Benefits | (735) | (7,208) | (295) | (3,789) | (749) | (4,824) | (757) | (3,769) | (1,530) | (1,609) | (5,734) | (1,838) | (4,729) | (2,205) | (39,039) |
| Other Expenses | (1,000) | (935) | - | - | - | - | - | - | - | - | - | - | - | - | (935) |
| **Total Operating Disbursements** | (4,814) | (13,586) | (689) | (6,048) | (1,867) | (8,086) | (4,580) | (7,341) | (6,088) | (6,981) | (11,663) | (7,376) | (10,063) | (7,040) | (91,408) |
| **Net Operating Cash Flow** | 17,351 | (1,723) | 11,990 | 12,405 | 11,079 | 3,270 | 8,039 | 5,453 | 1,287 | (621) | (4,290) | (298) | (285) | (1,781) | 44,523 |
| **NON-OPERATING CASH FLOWS** | | | | | | | | | | | | | | | |
| GLIP [1] | (608) | (31,050) | - | (4,100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (36,150) |
| Capex (BSA) | (596) | (69) | - | - | - | - | - | - | (165) | (205) | (205) | (205) | (269) | (528) | (1,644) |
| Capex (Summit) [2] | (100) | (19) | - | - | - | - | - | (425) | - | - | - | - | (1,275) | (425) | (2,144) |
| Interest and Principal | (1,003) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Professionals (Pre-Filing) | (931) | (8,164) | - | - | - | - | - | - | - | - | - | - | - | - | (8,164) |
| Total Non-Operating Expenses | (3,237) | (39,301) | - | (4,100) | (100) | (100) | (100) | (100) | (690) | (305) | (305) | (305) | (1,644) | (1,053) | (48,102) |
| **BANKRUPTCY-RELATED DISBURSEMENTS** | | | | | | | | | | | | | | | |
| Restructuring Professionals (Post-Filing) | - | - | - | - | - | - | - | - | - | - | - | (325) | (250) | - | (575) |
| Adequate Protection Payments | - | - | - | - | (830) | - | - | - | (500) | - | - | - | (500) | - | (1,830) |
| Pre-Petition Vendor Payments | - | - | (1,000) | (1,544) | (1,112) | (704) | (605) | (1,080) | (500) | (500) | (250) | (250) | (250) | (250) | (8,043) |
| Total Bankruptcy Related Expenses | - | - | (1,000) | (1,544) | (1,942) | (704) | (605) | (1,080) | (1,000) | (500) | (250) | (575) | (1,000) | (250) | (10,448) |
| **Net Cash Flow Before Endowment Contributions** | 14,114 | (41,025) | 10,990 | 6,761 | 9,037 | 2,466 | 7,334 | 4,274 | (403) | (1,426) | (4,845) | (1,178) | (2,930) | (3,083) | (14,027) |
| Funding Sources (Endowment Contributions) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Ending Unrestricted Cash Balance - BSA** [3] | 114,868 | 73,843 | 84,833 | 91,594 | 100,632 | 103,097 | 110,432 | 114,705 | 114,302 | 112,877 | 108,032 | 106,854 | 103,924 | 100,841 | 100,841 |
| Estimated Unrestricted Endowment Balance [4] | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 | 53,804 |
| Estimated Unrestricted RBT Balance [4] | 65,283 | 65,283 | 65,283 | 65,196 | 65,196 | 65,196 | 65,196 | 65,196 | 65,250 | 65,250 | 65,250 | 65,250 | 65,305 | 65,305 | 65,305 |
| **Total Estimated Ending Unrestricted Liquidity - BSA** | 233,955 | 192,931 | 203,921 | 210,594 | 219,632 | 222,097 | 229,431 | 233,705 | 233,357 | 231,931 | 227,086 | 225,908 | 223,033 | 219,949 | 219,949 |

Footnotes:

(1) GLIP disbursements include insurance renewal premium payments and related administrative expenses

(2) Summit capital disbursements funded through restricted donations

(3) Excludes approximately $63 million of cash, which is restricted for accounting purposes, in the L/C Cash Collateral Account that collateralizes a standby letter of credit.  Includes both cash and money market funds

(4) Investment balances are updated monthly for investment income