1          UNITED STATES BANKRUPTCY COURT
                 DISTRICT OF DELAWARE
2

3                               .    Chapter 11
    IN RE:                      .
4                               .    Case No. 20-10343 (LSS)
    BOY SCOUTS OF AMERICA and   .
5   DELAWARE BSA, LLC,          .
                                .    Courtroom No. 2
6                               .    824 North Market Street
                                .    Wilmington, Delaware 19801
7                               .
                  Debtors.      .    February 20, 2020
8   . . . . . . . . . . . . . . . .  10:00 A.M.

9                      TRANSCRIPT OF HEARING
           BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12
    For the Debtor:         Derek C. Abbott, Esquire
13                          Andrew R. Remming, Esquire
                            Joseph C. Barsalona, II, Esquire
14                          Eric W. Moats, Esquire
                            Paige N. Topper, Esquire
15                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                            1201 North Market Street, 16th Floor
16                          P.O. Box 1347
                            Wilmington, Delaware 19899
17

18
    Audio Operator:         Ginger Mace
19

20  Transcription Company:  Reliable
                            1007 N. Orange Street
21                          Wilmington, Delaware 19801
                            (302)654-8080
22                          Email:  gmatthews@reliable-co.com

23  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
24

25

1  APPEARANCES (Continued):

2  For the Debtors:            James F. Conlan, Esquire
                               Thomas A. Labuda, Esquire
3                              Michael C. Andolina, Esquire
                               Matthew E. Linder, Esquire
4                              SIDLEY AUSTIN LLP
                               One South Dearborn Street
5                              Chicago, Illinois 60603

6                              - and -

7                              Jessica C. Boelter, Esquire
8                              SIDLEY AUSTIN LLP
                               787 Seventh Avenue
9                              New York, New York 10019

10 For the U.S. Trustee:       David Buchbinder, Esquire
                               Hannah McCollum, Esquire
11                             UNITED STATES DEPARTMENT OF JUSTICE
                               OFFICE OF THE UNITED STATES TRUSTEE
12                             844 King Street, Suite 2207
                               Lockbox 35
13                             Wilmington, Delaware 19801

14
   For The Church of Jesus     Adam J. Goldberg, Esquire
15 Christ of Latter-Day-       LATHAM & WATKINS LLP
   Saints:                     885 Third Avenue
16                             New York, New York 10022

17                             - and -

18                             Michael J. Merchant, Esquire
19                             RICHARDS, LAYTON & FINGER LLP
                               One Rodney Square
20                             920 North King Street
                               Wilmington, Delaware 19801

21
   For Girl Scouts of the      Eric Lopez Schnabel, Esquire
22 United States of            DORSEY & WHITNEY LLP
   America:                    1000 N West Street, Suite 1410
23                             Wilmington, Delaware 19801

24

25

1  APPEARANCES (Continued):

2  For Abuse Survivors:       Mike Finnegan, Esquire
                              JEFF ANDERSON & ASSOCIATES
3                             366 Jackson Street, Suite 100
                              St. Paul, Minnesota 55101
4
                              - and -
5
6                             Stephen Neuberger, Esquire
                              THE NEUBERGER FIRM, P.A.
7                             P.O. Box 4481
                              Wilmington, Delaware 19807
8
                              - and -
9
                              Paul Mones, Esquire
10                            PAUL MONES PC
                              13101 Washington Boulevard
11                            Los Angeles, California 90066

12                            - and -

13
                              Stephen F. Crew, Esquire
14                            CREW JANCI LLP
                              1200 NW Naito Parkway, Suite 500
15                            Portland, Oregon 97209

16                            - and -

17
                              Gilion Dumas, Esquire
18                            DUMAS & VAUGHN
                              3835 NE Hancock Street, Suite GL-B
19                            Portland, Oregon 97212

20                            - and -

21                            Michael T. Pfau, Esquire
                              PFAU COCHRAN VERTETIS AMALA
22                            403 Columbia Street, Suite 500
                              Seattle, Washington 98104
23

24

25

```
1   APPEARANCES (Continued):

2   For Interested Parties:   James Stang, Esquire
                              PACHULSKI STANG ZIEHL & JONES LLP
3                             10100 Santa Monica Boulevard
                              13th Floor
4                             Los Angeles, California 90067

5                             - and -

6                             James E. O'Neill, Esquire
7                             PACHULSKI STANG ZIEHL & JONES LLP
                              919 North Market Street, 17th Floor
8                             Wilmington, Delaware 19801

9                             - and -

10                            Ilan D. Scharf, Esquire
                              PACHULSKI STANG ZIEHL & JONES LLP
11                            780 Third Avenue, 34th Floor
                              New York, New York 10017
12
13  For Abused in             Richard N. Goldfarb, Esquire
    Scouting:                 ZUCKERMAN SPAEDER LLP
14                            1800 M Street NW, Suite 1000
                              Washington, DC 20036
15
                              - and -
16
                              Richard S. Cobb, Esquire
17                            LANDIS RATH & COBB LLP
                              919 N Market Street, Suite 1800
18                            Wilmington, Delaware 19801
19
20  For Ad Hoc Committee:     Richard G. Mason, Esquire
                              WACHTELL, LIPTON, ROSEN & KATZ LLP
21                            51 W 52nd Street, Suite 29
                              New York, New York 10019
22

23

24

25
```

APPEARANCES (Continued):

JPMorgan Chase:          Matthew Ward, Esquire
                         WOMBLE BOND DICKINSON
                         1313 North Market Street
                         Wilmington, Delaware 19801

                         - and -

                         Louis R. Strubeck, Esquire
                         Kristian Gluck, Esquire
                         NORTON ROSE FULBRIGHT US LLP
                         2200 Ross Avenue
                         Dallas, Texas 75201

1    <u>MATTERS GOING FORWARD</u>:

2    #5)  Debtors' Motion for Interim and Final Orders (I) Authorizing
     the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363;
3    (II) Granting Adequate Protection to the Prepetition Secured Party
     Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363 and 507; (III)
4    Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b); and
     (IV) Granting Related Relief (D.I. 5, Filed 2/18/20).

5    **Ruling: 29**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           (Proceedings commence at 10:06 a.m.)

2                 THE CLERK:  Please rise.

3                 THE COURT:  Please be seated.  Mr. Abbott.

4                 MR. ABBOTT:  Good morning, Your Honor.  Derek

5    Abbott of Morris Nichols Arsht & Tunnell, here for the

6    debtors.

7                 Your Honor, thank you for making yourself

8    available this morning. We're back really to talk about the

9    cash collateral order.  We made, what I would characterize,

10   as substantial progress last night.  I think there's still a

11   couple of points that we may need Your Honor to call a ball

12   or strike on with respect to United States Trustee.

13                But before we get to that, Your Honor, I thought I

14   would also -- and I left on Your Honor's bench a copy of the

15   cash management order.  Your Honor indicated yesterday a

16   willingness to sign that with the concept of that deemed

17   segregation that we have built in.  And I left a clean and

18   blackline up there.

19                I don't think there's any controversy as to that

20   order, so I thought I would start with the easy one first, if

21   possible.

22                THE COURT:  Yes.  This is the same language that

23   was put into the cash collateral?

24                MR. ABBOTT:  It is, Your Honor.

25                THE COURT:  Okay.

1    MR. ABBOTT:  As well as -- it's accumulative so it

2  has the changes from yesterday we talked about with respect

3  to the U.S. Trustee's comments as well.

4    THE COURT:  Okay.  Let me see if anyone wishes to

5  be heard with respect to the revised cash management order.

6    (No verbal response)

7    THE COURT:  Okay.  I indicated yesterday, I would

8  sign a cash management order that deal with the issue we

9  discussed yesterday regarding what the bank had liens on or

10  not.  So, I will approve this as revised.

11    MR. ABBOTT:  Thank you, Your Honor.

12    THE COURT:  That order is signed.

13    MR. ABBOTT:  Your Honor, that leads us to the

14  revised interim cash collateral order. We worked well into

15  the evening and, again, this morning to try to resolve that.

16  We got, at least, the most current draft at the time over to

17  the court this morning. Since then, we got a couple of

18  comments from the U.S. Trustee.  But I'm going to cede the

19  podium to Mr. Labuda, if I may, to present the balance of

20  that, Your Honor.

21    THE COURT:  Yes.

22    MR. LABUDA:  Good morning, Your Honor.  Thomas

23  Labuda of Sidley Austin on behalf of the debtors and I thank

24  you as well for accommodating us so quickly.

25    Two things on this order.  One, we did include the

1  deemed segregation concept that we discussed yesterday, as

2  well as the LIFO concept that provides, to the extent funds

3  are used they will be deemed first from the post-petition

4  funds and only after those funds would prepetition funds

5  used.  There's also a statement that solely by the fact that

6  they're in the possession of JPMorgan, they do not become

7  their collateral.  But they reserve rights, to the extent

8  they do believe those things are their collateral.

9          And then, secondarily, we did as Mr. Abbott

10  mentions, spend significant time with JPM negotiating some

11  fairly significant deletions including pretty much all of the

12  termination provisions that Your Honor focused on as it

13  currently stands.  It just terminates on March 27th flat and,

14  at that point, we'll be back before Your Honor on a final

15  order.

16          We deleted the remedies section.  We deleted the

17  modification of the automatic stay and numerous other

18  provisions that we hope address many of Your Honor's concerns

19  and we're eager to go through the rest of it with you.

20          As mentioned, we did get one comment from the

21  Pachulski firm which is fine with us and some of the

22  deletions.  There was one ambiguity.  There was originally a

23  statement that said upon entry of final order, the adequate

24  protection, obligations or liens would attach to proceeds of

25  avoidance actions.

1    We deleted that entire provision so they were

2 concerned that by the deletion that there was some

3 implication that on an interim basis, there would be liens

4 put on those Chapter 5 actions.  That's not the case.  And we

5 said that we would clarify along with any other changes Your

6 Honor may request from this.

7    The office of the United States Trustee had a few,

8 three of which are outstanding.  One comment we had

9 incorporated before we submitted the order to Your Honor and

10 it was with respect to some of the findings.  The other three

11 points, one is certainly not controversial since the carve-

12 out is deleted in this interim order.  They want to make

13 clear that the adequate protection liens, you know, are

14 subordinate to the U.S. Trustee fees which we're fine and we

15 will certainly make that change.

16    The second outstanding issue with them is they

17 noted we deleted the stipulation on the debtors stating that

18 the prepetition lenders are oversecured.  As I said

19 yesterday, we do believe that.  We do not have a valuation,

20 any of the indenture bases or anything like that, so we

21 certainly can't come up with today an evidentiary basis for

22 it.

23    So given Your Honor's concerns, we did raise with

24 JPM deleting that.  They really didn't want it, but they did

25 accommodate us on it and we deleted it.  The United States

1  Trustee has suggested it go back in because if they were

2  oversecured yesterday, they should be oversecured today.  So,

3  we essentially put that issue to Your Honor.

4       We're happy with it out.  We did convince JPM to

5  take it out, so we're fine leaving it out, but I do want to

6  raise that the office of the United States Trustee asked that

7  be in.

8       And then the final open issue is as you will

9  recall, there was a two-page provision on the restrictions of

10 the use of their cash collateral.  We had significant debate

11 over that.  We reduced it basically to one sentence that

12 basically said that, you know, we can't use their cash

13 collateral to take adverse actions against them.

14      The office of the United States Trustee focusing

15 on Your Honor's comments yesterday said that could have a

16 chilling affect but JPM did insist upon it.  And from our

17 perspective if we had no order, we couldn't use their cash

18 collateral period, adverse or not.

19      We certainly don't envision any problems coming up

20 in the next four weeks.  So a plain simple statement that

21 their cash collateral cannot be used to take adverse interest

22 is something that the debtor is comfortable with if Your

23 Honor is comfortable with it.

24      So with that said, those are the issues yet to be

25 determined in this, subject to other issues that Your Honor

1  may have with the order.

2          THE COURT:  Okay.  Mr. Strubeck.

3          MR. STRUBECK:  Your Honor, Lou Strubeck of Norton

4  Rose Fulbright on behalf of JPMorgan Chase.  I changed sides

5  of the courtroom today.

6          THE COURT:  I noticed.

7          MR. STRUBECK:  Probably noticed a lot of that had

8  to do with the availability of seating yesterday, but just a

9  couple of comments and I want to first thank the Court as

10 others before me have for making the time.  It's not lost on

11 us what a huge burden it is for Your Honor to have to digest

12 everything that was filed within such a short period of time

13 and I especially respect, even though I don't necessarily

14 agree with everything that Your Honor had to say yesterday

15 with respect to the cash collateral order, the amount of time

16 you obviously spent going through it.  And especially Your

17 Honor, your charge pursuant to Rule 4001 in terms of having

18 to make a finding that this cash collateral order on an

19 interim basis is necessary in order to prevent immediate and

20 irreparable harm.

21          And we believe it is and we believe there's ample

22 evidence in the record to support that primarily the

23 declaration from Mr. Whittman.  Just a couple of things to

24 layer on top of what Mr. Labuda had to say. And, again, I

25 agree with what he had to say.

1      As I told you we would do yesterday made a

2  substantial effort to try to carve out a lot from this cash

3  collateral order.  And so, I think that what you see today if

4  you just look at the redline, you can see from the redline it

5  was substantial.

6      What we tried to achieve was to kind of find a

7  balance between what was absolutely necessary for us to be

8  provided with protection on an interim basis for the use of

9  our cash collateral which Mr. Whittman said, he couldn't tell

10 you that they weren't going to need to use this during this

11 interim period of time.

12     So to preserve the status quo to give us what we

13 needed in terms of protection and to make sure that we paid

14 attention to the specific things Your Honor had raised, I

15 mean we didn't want to do anything in this order because you

16 were so sensitive to it that would hamstring in any way the

17 committees that are going to be appointed here.

18     And maybe the best evidence that I think we

19 succeeded in that is that Mr. O'Neill and Mr. Stang are about

20 as careful as I know when it comes to looking at these kinds

21 of things in terms of thinking ahead.  And there was only one

22 comment that I think Mr. O'Neill had at the end of the day

23 which was the one that Mr. Labuda mentioned to you about the

24 liens against avoidance actions or proceeds.  And we've

25 eliminated that.

1          We also taken out what you usually see in these

2     orders in terms of termination events.  To the extent -- one

3     thing I wanted to add to what Mr. Labuda said.  To the extent

4     there is something that gives rise to a termination, we have

5     to come back to Your Honor, as opposed to getting something

6     automatically.

7          And as I understand it, the debtors are all right

8     and have agreed that if there is such an event, we can come

9     back on an emergency basis, God forbid, and argue to Your

10    Honor that we're going to need some relief.

11         So, I think, Judge, this is a very fair order in

12    terms of striking the proper balance between the concerns

13    that you mentioned and really what I will call essential

14    minimal protections for JPMorgan during this interim period.

15    And, you know, again, they only kick in to the extent that

16    our cash collateral is actually used.  So maybe it won't be

17    used.  To the extent it is, the protections we got are just

18    in the nature of diminution and value.

19         With respect to paragraph fourteen that was the

20    one kind of open issue that, I don't know that you were

21    specifically referred to it, but if you look at paragraph

22    fourteen which is on page 41 of the redline, that is the

23    paragraph that Mr. Labuda referred to in terms of

24    restrictions on the use of cash collateral.

25         And there was a comment from Mr. Buchbinder about

1  how he thought that prohibiting the use of our cash

2  collateral to take adverse positions to JPMorgan Chase during

3  this interim period was going to have a chilling effect on

4  parties doing that.  I don't agree that that's the case, with

5  all due respect to Mr. Buchbinder who, by the way, did a

6  herculean effort turning around these comments so quickly.

7            But this is something that's fair and is

8  included in just about every cash collateral order that I

9  see.  And there's even more of a reason for it to be in here

10 because you heard yesterday and you had a specific concern

11 about it that there was potentially a lot of cash here that

12 was not subject to JPMorgan Chase's lien.

13           And so this restriction, there's even more of a

14 reason for it here in terms of providing us with protection

15 and it doesn't provide any chilling effect here because it

16 looks like there would be a lot of other assets even if

17 something were to come up and it probably isn't during the

18 interim period of time.

19           So with all of that, Judge, and I'm happy to

20 address any specific concerns you have.  Again, I think this

21 is a very fair order.  I think it does everything that needs

22 to be done on an interim basis, preserves the status quo,

23 doesn't hamstring anybody in terms of potential challenges,

24 and I think it's appropriate for it to be entered.

25           THE COURT:  Thank you.

1          MR. STRUBECK:  Thanks.

2          THE COURT:  Mr. Buchbinder or Ms. McCollum.

3          MR. BUCHBINDER:   Good morning, Your Honor. Dave

4    Buchbinder on behalf of the U.S. Trustee.

5          Mr. Labuda pretty much got everything correct on

6    the finding or actually it's a stipulation that the debtor is

7    oversecured.  I'll defer to the court on whether the court

8    wants that in or out.

9          Finding (l) on page 13, I think they need to

10   reinsert that irreparable harm paragraph because even though

11   this is a much paired down, a limited order without a finding

12   of irreparable harm, there can't be an order.  So that needs

13   to go back in.

14          And then they're correct.  Somewhere on page 19 in

15   paragraph four, the latter provision, it's not just U.S.

16   Trustee's fees because 28 U.S.C. 1930 includes court fees, as

17   well as U.S. Trustee fees.

18          THE COURT:  Okay.

19          MR. BUCHBINDER:  And so, the reference should be

20   the entire statute, not just the U.S. Trustee fees.  And that

21   just leaves us, Your Honor, with paragraph fourteen.

22          On the facts and circumstances of this particular

23   case, this seems to be an unnecessary paragraph; (a) it would

24   appear from the facts that the debtor is oversecured and that

25   a debtor or the committee will not need -- that the lender is

1  oversecured and that the debtor and the committee will not

2  need to use cash collateral in the interim period and;

3  second, I don't know and the court probably doesn't know

4  either what a position adverse to the prepetition secured

5  party is.

6     THE COURT:  I don't know.

7     MR. BUCHBINDER:  And on the facts and

8  circumstances of this case that's just too chilling and this

9  provision should come out.  If the lender wants to take

10  umbrage with activities that a committee or the debtor takes,

11  they always have the ability to object to their fees.

12     THE COURT:  Thank you.  Mr. O'Neill.

13     MR. O'NEILL:  Good morning, Your Honor.

14     THE COURT:  And I'll you by your right name this

15  morning.  Yesterday, I looked right at you and called you Mr.

16  Keane.

17     MR. O'NEILL:  Did you?

18     THE COURT:  I apologize for that.  Well I'm glad

19  you didn't notice, but I --

20     MR. O'NEILL:  Your Honor, I do not object.  Mr.

21  Keane is substantially younger than I am so I'll take it.

22    (Laughter)

23     THE COURT:  Okay.

24     MR. O'NEILL:  But for the record, I am James

25  O'Neill from Pachulski Stang Ziehl & Jones.

1          THE COURT:  That I know that.

2          MR. O'NEILL:  And we appreciate everything that

3 the debtors and the bank have done to make the changes.  And

4 also including the one comment that we added today.  I

5 haven't seen it in a further revised order, but I can take a

6 look before the order is submitted, but I certainly -- we

7 certainly appreciate the clarification on the record.

8          We understand that the U.S. Trustee has a few open

9 issues and we are also very grateful for their participation

10 in this process because they're making sure that those who

11 are here or who aren't formed yet are adequately protected

12 and so, we certainly appreciate.  And we will also look

13 forward to any other comments Your Honor may have with

14 respect to the order.  But we are appreciative of the

15 accommodation so far.

16          THE COURT:  Thank you.

17          MR. LABUDA:  Just in quick response, Your Honor,

18 the recital or the finding that Mr. Buchbinder referenced as

19 (l) is now (e), albeit slightly shortened but we do have the

20 immediate and irreparable harm finding back in here.  It just

21 -- it got accidental caught and it got put back in after we

22 gave Mr. Buchbinder a copy last night, but we totally agree.

23          And then the reference to U.S. Trustee's fees was

24 just my shorthand.  Obviously, we agree with his position on

25 that.  We will put in language and, of course, run it by them

1  along with any other language Your Honor has.

2         So, I think among the parties the main issue is

3  that limitation on use for adverse actions.  And then, of

4  course, anything else Your Honor has and would like to

5  discuss with us.

6         THE COURT:  Okay.  Well, first of all, I

7  appreciate what I know was a significant effort overnight to

8  turn this around.  The effort is not lost on me, so I

9  appreciate that.  And I appreciate I'm sure the rigorous back

10 and forth that took place in order to come to a much leaner

11 cash collateral order, so I appreciate that.

12        I do have a couple of questions and maybe it's

13 just clarifications and I just want to make sure I understand

14 what the parties are putting in front of me.

15        And then I am also checking it against the

16 comments I have from yesterday to see if any of that is

17 relevant to anything, which it may not be anymore.

18        I do note, and this is just a comment, on page --

19        MR. LABUDA:  I have both here, Your Honor, so

20 whichever is easier for you.

21        THE COURT:  Okay.  Well I'm looking at the clean

22 that was filed this morning.  And, I guess, there are a few

23 things that are different since then or no?

24        MR. LABUDA:  No, you have the final version.  It

25 just does not include the few changes we spoke on the record.

1          THE COURT:  Oh, okay.  Okay. Great.

2          Paragraph eight at romanette (xiiii) at the bottom

3  where the debtors are stipulating that the prepetition

4  secured parties may credit bid.

5          MR. LABUDA:  Yes.

6          THE COURT:  It's okay with me that the debtors

7  stipulate to that, but I'm not finding that's appropriate

8  yet.

9          MR. LABUDA:  That is understood, Your Honor.

10          THE COURT:  Okay.  In paragraph (c) on page 9, I

11  want to make sure I understand the definition of cash

12  collateral and how that then flows through the rest of the

13  document.  So, as I'm reading it, the term cash collateral

14  means not only what the lenders had a lien on prepetition,

15  the cash they had a lien on prepetition, but also any

16  adequate protection lien I provide them on the cash.

17          So does that mean that as provided in here when

18  they get a lien on cash, when the debtors get a lien on cash

19  for the diminution that all the cash then becomes cash

20  collateral?

21          MR. LABUDA:  That is not my understanding and I

22  will ask JPM to confirm that.  The fact that on adequate

23  protection lien may be on post-petition cash, it does not

24  restrict the use of it.

25          THE COURT:  Okay.  I think this is the same as it

1  was before although I was trying to find it and my comments

2  from before and I think I had the same question in the

3  initial draft of the order that I don't know how to read that

4  -- and I'm not sure I've seen it drafted this way before, but

5  that's not to say it hasn't happened.  But I'm not sure how

6  to read that.

7          MR. LABUDA:  Yeah, I have been pointed to a

8  provision that says cash collateral does not -- that

9  specifically exclude restricted amounts and excluded property

10  which is true.  I'm not sure that addresses Your Honor's

11  point.

12          THE COURT:  That's a different issue.  Yes.

13          MR. LABUDA:  I think we may need a provision in

14  here that clarifies that that the restrictions on use of

15  collateral does not apply to any cash that simply has an

16  adequate protection lien on it because unless there's a

17  diminution of value it's not cash collateral.

18          THE COURT:  It's the parenthetical.  It's the

19  parenthetical in what's now Paragraph (c) that if not unique

20  is -- I'm just not sure what it means.

21          MR. ABBOTT:  Your Honor, Derek Abbott.

22          A potential fix, I think if we insert in that

23  first portion immediately after where it says or on which the

24  secured parties have as of the petition date a lien security

25  interest or other interest that would perhaps fix that

1  problem because they're not getting an adequate protection

2  lien as of the petition date.  They would be getting it

3  pursuant to this order.

4          THE COURT:  Say that again.

5          MR. ABBOTT:  My thought was just to define cash

6  collateral as per Section 363 on which the prepetition

7  secured parties have a lien security interest or other

8  interest on the petition date because they wouldn't have an

9  adequate protection lien without this order which did not

10 exist on the petition date is my thought.

11         THE COURT:  But where would you put that and where

12 would it be in relation to the parenthetical?

13         MR. ABBOTT:  I think before the parenthetical.

14         THE COURT:  So, what does the parenthetical mean?

15         MR. LABUDA:  Yeah, I -- one -- I think where Your

16 Honor is going is we delete the parenthetical.

17         THE COURT:  Well, that's my suggestion because I

18 do not know what it means, but I was open to hearing what it

19 means.  I just don't understand it and my concern is it

20 swallows the whole; then everything is cash collateral.

21         MR. LABUDA:  Subject to JPM's counsel I think we

22 would just delete the parenthetical.

23         MR. STRUBECK:  We believe that works.

24         THE COURT:  Thank you.

25         I'm just looking at the defined term now cash

1 collateral relative to Paragraph on Page 11(iii) and I think

2 it works now.

3         MR. LABUDA:  I agree, Your Honor.  And as I said,

4 that was the intent of the parties.

5         THE COURT:  Okay.  And for purposes of this

6 interim period I will grant a lien on the debtor's assets.

7 It's broad and maybe more than necessary, but it is only for

8 the diminution and it's during this interim period.  We will

9 have the clarification that avoidance actions --

10         MR. LABUDA:  Correct, Your Honor.

11         THE COURT:  -- and proceeds are carved out till

12 final.

13         MR. ABBOTT:  Your Honor, as long as we are on that

14 point --

15         THE COURT:  Yes.

16         MR. ABBOTT:  -- it seems to me -- let me find the

17 right place just so we can talk through it.  We talk about

18 the adequate protection liens in Paragraph, what's now, 4(i).

19 And just after the definition of adequate protection

20 collateral in that paragraph there's a proviso that says that

21 adequate protection collateral shall specifically exclude the

22 restricted amounts and excluded property as defined in the

23 security agreement we already talked about.  I think we just

24 insert there and proceeds of avoidance actions under Chapter

25 5 of the Bankruptcy Code.

1          THE COURT:  It looks like a good place to put it.

2  I see the payment of interest to the lenders was kept in and

3  I'm fine with that.  And I see that inclusion of prepetition

4  agent fees and expenses is included and I'm okay with that.

5          Can I -- is there a sense of what was not paid

6  prepetition that's going to get rolled in?

7          MR. GLUCK:  Your Honor, I think it's just Mr.

8  Ward's fees.

9          THE COURT:  He's very reasonable.

10          MR. WARD:  I think its $3,000 dollars.

11          THE COURT:  Okay.

12          MR. LABUDA:  And I think there's just a single

13  interest payment that will come due.

14          THE COURT:  That's my recollection from yesterday.

15          MR. LABUDA:  Yes.

16          THE COURT:  Okay.  Thank you.

17          Paragraph 6 on Page 17, I'm not sure why this

18  paragraph needs to be in here, but if it does I -- the

19  proviso I don't think is appropriate. I've entered a cash

20  collateral order, it says what it says.  If it gets changed

21  people can object and we'll deal with it, but, again, I'm not

22  sure why the paragraph is necessary, but I'm okay with it up

23  to the proviso.

24          MR. LABUDA:  Okay.  Thank you, Your Honor.

25          MR. STRUBECK:  That's fine, Your Honor.

1          THE COURT:  Okay.  This is a question I had from

2    yesterday and it looks like it's continued over.  It's now

3    Paragraphs 10 and 11.  So, Paragraph 10, effective

4    stipulations on third-parties, would seem to be contrary to

5    Paragraph 11 because -- and even specifically with respect to

6    the binding nature on a Chapter 7 or 11 Trustee because in

7    the very next paragraph it accepts them out as all other

8    parties in interest.

9          So, I am not understanding what Paragraph 10 does.

10          MR. LABUDA:  Your Honor, some drafting history may

11    explain some of this.  Paragraphs 10 through 13 used to be

12    one long paragraph.

13          THE COURT:  I'm sure.

14          MR. LABUDA:  It was broken up.  So, I think the

15    title, the heading of 10 is somewhat misleading.  10, I

16    believe, is merely intended to say that the debtors'

17    stipulations are binding on the debtor and any successor.

18    Then 11 is intending to go into third-parties.

19          I know there's a reference to a Chapter 7 Trustee.

20    The debtors' initial comment was we're not sure it's

21    necessary because you can't convert a non-profit case without

22    the debtors' consent.  And we're certainly not going to be

23    doing that in the next month, but I think 10 is really

24    intended only to deal with the debtor and 11 is intended to

25    deal with third-parties.

1          THE COURT:  Well, I think that to the extent that

2  Chapter 7, 11 Trustee examiner is included in 10 it just

3  directly conflicts with Paragraph 11 which I think is --

4  Paragraph 11 is the, I hate to say this, standard.

5          MR. LABUDA:  Well one solution may be to leave 10

6  just the debtors and deal with the successors in Paragraph

7  11.

8          THE COURT:  Yes.

9          MR. LABUDA:  Yeah.  I'm getting the okay from

10  Norton Rose.

11          THE COURT:  Okay.

12          MR. ABBOTT:  So, period after the word debtors

13  there?

14          MR. LABUDA:  I believe so, yes.

15          MR. ABBOTT:  In Paragraph 10, correct?

16          THE COURT:  I'm going to leave the rest of this in

17  here for now.  If there are any issues with it we'll deal

18  with it on final.

19          Okay.  Paragraph 14 we have the one sentence that

20  the U.S. Trustee pointed out and I will say that I circled it

21  as well.  My concern here is, and I've expressed this at

22  previous hearings with these two page paragraphs, but now

23  this is condensed, I don't know what really taking a position

24  adverse to the DIP lenders means.  So, for example, if a

25  committee comes in and says I don't like this interim order

1   and I'm going to negotiate with the lenders over the final

2   order, is that taking a position adverse to the prepetition

3   lenders.  I suspect it is, yet I think all parties would

4   agree that a committee duty is to do that.

5          That is the problem.  These provisions -- I think

6   the genesis of this paragraph is that you can't sue me with

7   my money.  That is what it started out as and now it's grown

8   to you can't do a thousand things with my money.  The

9   problems is trying to interpret something this broad.  I

10  don't know what it means.  Maybe if I'm the ultimate arbiter

11  of what it means then it doesn't really matter because I

12  wouldn't interpret it to mean that the committee can't do its

13  duty.

14         That is the concern I have with this broad

15  language as opposed to the language that says you can't sue

16  me with my money which I think is fair.

17         MR. LABUDA:  A couple responses.  I do think Your

18  Honor is the arbiter of that.  And maybe we can clarify that

19  if that solves the problem.  I said earlier if we had no

20  order people couldn't do that and then as Your Honor pointed

21  out they don't have a blanket lien here.  There is other

22  funds, unencumbered funds for which to pay for those actions

23         THE COURT:  Which I also think is fair.  But I

24  don't know -- I have to think about -- well, it's an

25  interesting issue because we don't always have unencumbered

1  funds.  So, I have to really think about how that works in

2  totality.  And for purposes of an interim hearing, you know,

3  that's the point of putting out things on notice so that all

4  parties can have an opportunity to think about it.  Quite

5  frankly, it's somewhat easy to point out issues.  It's

6  difficult to think what the impact of those issues may or may

7  not be and then to solve constructively for them.

8          So, pointing it out is easy.  I will confess that

9  I have the easy part there.  But I get the point that the

10  bank doesn't want its money used in certain circumstances.  I

11  think this is broad language.  If you guys have a fix for it

12  while you fix the other things, great.  If you don't, for

13  purposes of this interim order you can add in here that I'm

14  the arbiter of what's adverse relative to -- consistent with

15  the spirit of the bankruptcy code or something like that.

16          MR. LABUDA:  Sure.

17          THE COURT:  I mean, you know, its -- figure

18  something out.

19          MR. LABUDA:  Okay.

20          THE COURT:  I think it's something that can be

21  addressed also at final.

22          MR. LABUDA:  Okay.  Understood.  We will talk

23  about that and do one of those two things.

24          THE COURT:  Okay.

25          MR. STRUBECK:  I agree, Your Honor, but if I don't

1  get to say with clarity what it is that's adverse then you're

2  the next best person.

3          THE COURT:  Wow.  Okay.

4      (Laughter)

5          THE COURT:  I see that Paragraph 16 is subject to

6  entry of the final order.

7          MR. LABUDA:  Correct.

8          THE COURT:  That is fine.  I will point out that

9  as you're going forward that where I have concerns in orders

10  is where somebody is asking me to prospectively bless

11  something.  This isn't -- what I'm going to do in the future

12  will not make me subject to X.  Okay.  But I am okay with

13  this paragraph for now.

14          I think that's all I had.  I assume the budget is

15  the same.  I didn't look at it.

16          MR. LABUDA:  That is correct, Your Honor.

17          THE COURT:  Okay.  So, those are all the questions

18  that I had.  I don't think we have to put back in this DIP it

19  says that the lenders are over-secured.  In fact, I think

20  it's prudent of the debtors not to do that if, in fact, they

21  can't commit to that today even thought that may be their

22  belief.

23          MR. LABUDA:  Understood.

24          THE COURT:  And I'm not sure that it impacts what

25  we're doing here because, again, to the extent that there

1  are, and there are in two instances, adequate protection

2  payments being made; the interest payment and fees of a de

3  minimis amount during this period.  To the extent that

4  there's never any diminution in value or to the extent that

5  the lenders are not over-secured those amounts can be re-

6  characterized, re-allocated, put to pay down principal,

7  whatever. I don't think there is anything in this order that

8  prohibits that.  So, I am fine with those payments being

9  made.  I don't think we have to have that stipulation back

10 in.

11          Okay.  So, with that and the changes that are

12 going to be made to accommodate the other party's comments I

13 will approve, on an interim basis, the use of cash

14 collateral, if any, that happens during this interim period

15 based on the declaration of Mr. Whittman and his

16 representations in court that he's not certain whether during

17 this interim period or not it will be necessary to use the

18 lender's cash collateral.

19          I think it's clear that if, in fact, the cash

20 collateral is used and if there is a diminution ultimately in

21 the lender's position they're entitled to adequate

22 protection.

23          MR. LABUDA:  Thank you, Your Honor.  I'm

24 optimistic we can turn this very quickly, get it to the

25 parties and have it to you this afternoon.

1          THE COURT:  Thank you.

2          For the final hearing I think it would be helpful,

3  and I'm sure that the committees, when formed, committee or

4  committees when formed will be asking for information, but I

5  think it would be helpful to have the backup for the receipts

6  that come in, the backup for the disbursements.  I'm sure

7  that is there.  And then the actuals that come in during this

8  interim period.  Then an analysis, if any, of 552 and its

9  impact on all of this.  I realize we may not be able to

10  determine the legal issues, the one that has been raised

11  about --

12          MR. LABUDA:  Membership fees.

13          THE COURT:  -- membership fees.  And I don't know

14  if there are any others, but I know of that one.  And that

15  may not be able to be determined in this period of time

16  before the final.  But if parties are talking about it and

17  information is available I think it would be helpful for the

18  parties and I think it will be helpful for the court to be

19  able to -- for you all to craft and for me to review a form

20  of final order.

21          MR. LABUDA:  Understood, Your Honor.  We had those

22  same thoughts and have already talked about what papers to

23  put together in advance of that hearing.

24          THE COURT:  Thank you.

25          MR. LABUDA:  Thank you so much, Your Honor, for

1   today and yesterday.

2           THE COURT:  Okay.  So, I will look for a form of

3   order under certification of counsel later.

4           Mr. Abbott?

5           MR. ABBOTT:  Your Honor, just to the extent that

6   the parties in interest are listening we talked yesterday

7   about moving the formation meeting to March 4th.

8           THE COURT:  Yes.

9           MR. ABBOTT:  Pursuant to the U.S. Trustees desire

10  it will be at the DoubleTree.  We've just confirmed its

11  availability.

12          THE COURT:  At 10?

13          MR. ABBOTT:  At 10 a.m.  Yes, Your Honor.

14          THE COURT:  Okay.  Thank you.

15          MR. ABBOTT:  Your Honor, I think that concludes

16  matters.  We will mark this up consistent with what you heard

17  today, get everybody's agreement and either upload it or

18  submit it by certificate, Your Honor.

19          THE COURT:  Thank you very much.

20          COUNSEL:  Thank you, Your Honor.

21          THE COURT:  We're adjourned.

22      (Proceedings concluded at 10:48 a.m.)

23

24

25

1                          CERTIFICATE

2

3        I certify that the foregoing is a correct transcript

4   from the electronic sound recording of the proceedings in the

5   above-entitled matter.

6
    /s/Mary Zajaczkowski              February 14, 2020
7   Mary Zajaczkowski, CET**D-531

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25