## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | **Hearing Date: March 24, 2020 at 10:00 a.m. (ET)** **Objection Deadline: March 17, 2020 at 4:00 p.m. (ET)** |

## NATIONAL SURETY CORPORATION'S MOTION (I) FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, (II) TO EXTEND THE STAY

National Surety Corporation ("National Surety"), by and through undersigned counsel, hereby moves the Court (this "Motion") for entry of an order (I) granting to National Surety relief from the automatic stay provisions of 11 U.S.C. § 362(a) to pursue certain pending insurance coverage litigation or, in the alternative, (II) extending the automatic stay to such litigation pursuant to 11 U.S.C. §§ 105(a) and 362(a), each as set forth more completely below. In support hereof, National Surety respectfully represents the following:

## INTRODUCTION

The above-captioned chapter 11 cases (the "Chapter 11 Cases") are yet another stop on Boy Scouts of America's ("BSA") cross-country tour to evade the multi-party insurance coverage dispute that has been pending against BSA in the Circuit Court of Cook County, Illinois since 2017. Having twice failed to achieve dismissal of the Illinois Coverage Action (as defined below), BSA originally attempted to avoid the Illinois Coverage Action by initiating a duplicative lawsuit against National Surety in Texas – nine months after the first-filed Illinois Coverage Action. Now, post-petition, BSA apparently seeks to wield the automatic stay to

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

prevent the Illinois Coverage Action from advancing while simultaneously pressing forward with the Texas Proceedings (as defined below).  This abuse of the automatic stay should not be tolerated.  Instead, the relief requested herein should be granted for at least the following two reasons.

*First*, there is sufficient "cause" to lift the automatic stay.  As courts here and elsewhere have routinely recognized, the automatic stay is not a sword to be swung at opposing litigants. Yet that is exactly how BSA has used the stay.  According to BSA, the first-filed Illinois Coverage Action is stayed while the Texas Proceedings are not.  This selective application of the automatic stay is not only inequitable, but it is also irreparably harmful.  Under this application of the stay, National Surety will be deprived of its choice of forum.  Moreover, the progress that National Surety and the other litigants have achieved during the Illinois Coverage Action – which has been pending for over ***two years*** – will be wasted.

*Second*, and in the alternative to lifting the automatic stay, the circumstances warrant the extension of the automatic stay to the Texas Proceedings (assuming they are not automatically stayed).  If the Court declines to lift the stay in the first instance, then ensuring that both the Illinois Coverage Action and the Texas Proceedings are stayed – and, therefore, on equal footing – is the most equitable result for all parties.  Applying the stay equally levels the playing field for all litigants and prevents BSA from gaining an unfair litigation advantage.

For these reasons, and as set forth more completely below, the Motion should be granted.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

41512638

## BACKGROUND

**National Surety & The NS Policies**

3.      National Surety is a corporation organized under the laws of the State of Delaware with its principal place of business and statutory home office in the State of Illinois.  National Surety is licensed and authorized to issue insurance policies in Illinois.  *See Complaint for Declaratory Relief* (the "Complaint"), attached hereto as **Exhibit A**[2], at ¶ 8.

4.      In the early 1980s, National Surety issued to BSA two excess liability policies: Blanket Excess Liability Policy No. XLX1484309, in effect for the policy period January 1, 1983 to January 1, 1984; and Blanket Excess Liability Policy No. XLX1484392, in effect for the policy period January 1, 1984 to January 1, 1985 (collectively, the "NS Policies").  *Id.* at ¶ 39.

5.      The NS Policies, which are "follow form"[3] excess policies, provide indemnity coverage for "occurrence[s]" that took place during the relevant policy period.  *Id.* at ¶ 41.  An "occurrence" is an "accident . . . which results in Personal Injury . . . neither expected nor intended from the standpoint of the insured."  *Id.* at ¶ 42.

**Hacker Litigation**

6.      In 2012, multiple individuals filed suit against BSA and the Chicago Area Council (the "CAC") in the Circuit Court of Cook County, Illinois (the "Cook County Court").  *See John Doe* et al. *v. Thomas Hacker* et al. (Case No. 2012-L-013569) (the "Hacker Litigation").[4]

7.      The plaintiffs in the Hacker Litigation allege, among other things, that BSA intentionally permitted, failed to prevent, and fraudulently concealed sexual abuse by a former

---

[2] Unless otherwise indicated, the exhibits attached hereto do <u>not</u> include the attachments or exhibits originally appended thereto.

[3] As "follow form" excess policies, the NS Policies incorporate (with limited exceptions) the terms, conditions, and exclusions of certain underlying policies issued by other insurers.

[4] Although not relevant here, eighteen plaintiffs originally brought suit under Case No. 2012-L-013569; however, the Cook County Circuit Court severed the suit into individual cases (with separate case numbers) for each plaintiff.

41512638

scout leader, Thomas Hacker, from approximately 1980 until Mr. Hacker's arrest in 1988.  *See id.* at ¶ 51.  The alleged abuse took place in Illinois.  *Id.* at ¶ 38.

8.     The Hacker Litigation plaintiffs allege significant compensatory damages and seek punitive damages against BSA on account of its alleged intentional conduct and fraudulent concealment.  *See id.* at ¶ 48.  *See also Petition for Writ of Mandamus* (the "Writ Petition"), attached hereto as **Exhibit B**, at 9-10.  As of the filing of this Motion, BSA has reportedly settled each of these lawsuits.

9.     As a result of the Hacker Litigation and certain settlements reached therein, BSA made demand on National Surety for coverage under the NS Policies.  *See id.* at 10.  Because the NS Policies, *inter alia*, exclude from coverage injuries that are "expected []or intended," and due to the nature of the allegations against BSA, National Surety disputes that BSA is entitled to coverage under the NS Policies for the Hacker Litigation and/or any resulting settlements.  *See id.*

**Coverage Litigation**

10.     This coverage dispute eventually led to two, duplicative lawsuits, both of which are pending.  National Surety filed the first suit, *National Surety Corporation v. BSA,* et al. (Case No. 2017-CH-14975) (the "Illinois Coverage Action"), in the Cook County Court on November 9, 2017.  *See* Complaint.  Nine months later, BSA filed the second suit, *Boy Scouts of America*, et al. *v. Insurance Company of North America*, et al. (Cause No. DC-18-11896) (the "Texas Coverage Action"), in District Court of Dallas County, Texas (the "Dallas County Court").  *See Plaintiffs' Original Petition*, attached hereto as **Exhibit C**.[5]

---

[5] BSA filed an amended petition on April 5, 2019.

41512638

Illinois Coverage Action

11.    The Illinois Coverage Action is comprehensive.  The named parties include: BSA; CAC and another related entity; 19 of BSA's other insurers, whose coverage obligations potentially could be affected; and the 18 plaintiffs in the underlying Hacker Litigation (the "Doe Defendants").[6]  *See generally* Complaint.

12.    Through the Illinois Coverage Action, National Surety seeks a declaration that:

(a)    No coverage exists under the NS Policies with respect to the Hacker Litigation;

(b)    National Surety owes no duty to defend or pay any defense costs associated with the Hacker Litigation;

(c)    National Surety has no duty to indemnify CAC and/or BSA for general damages arising out of the Hacker Litigation due to the nature of the allegations against BSA, or, alternatively, that National Surety has no duty to indemnify CAC and/or BSA for damages arising out of the Hacker Litigation until primary insurance is exhausted; and

(d)    National Surety has no duty to indemnify CAC and/or BSA for punitive damages arising out of the Hacker Litigation.

*See id.* ¶¶ 49 – 78.

13.    National Surety does not seek damages against BSA or CAC in the Illinois Coverage Action.  *See generally id.*

14.    The Illinois Coverage Action has progressed significantly.  For example:

(a)    BSA filed both an answer to National Surety's complaint and counterclaims against National Surety, principally alleging that National Surety breached the NS Policies by refusing to indemnify BSA for settlements BSA reached with certain of the Doe Defendants. BSA also asserted claims against National Surety under the Texas Insurance Code.

---

[6] Notably, Illinois law requires the joinder of the Doe Defendants in the Illinois Coverage Action.

41512638

(b)      17 of the insurer-defendants filed answers and affirmative defenses to National Surety's complaint – with several asserting their own counterclaims against National Surety, crossclaims against BSA, and/or crossclaims against the other named defendants.

(c)      The Doe Defendants filed a motion to strike and demand for a bill of particulars.

(d)      National Surety has filed responsive pleadings to the claims asserted against it.

*See* Writ Petition at 15-16.

15.      Further, written discovery in the Illinois Coverage Action is well underway. Discovery requests have been served and responded to by BSA and multiple other parties (including requests from the Doe Defendants). *Id.* at 16. Before the automatic stay went into effect, the Cook County Court set a hearing to discuss entry of a protective order, which would have facilitated additional discovery. *See Order*, attached hereto as **Exhibit D**.

16.      Even so, BSA has engaged repeatedly in dilatory behavior with respect to the Illinois Coverage Action. First, BSA sought to dismiss or stay the Illinois Coverage Action on December 13, 2017, significantly delaying the proceeding. *See* Writ Petition at 11. The Cook County Court denied BSA's motion to dismiss but granted the temporary stay. *Id*. at 12. Then, on August 24, 2018 – *eight months* after its initial motion to dismiss and over *nine months* since the initiation of the Illinois Coverage Action – BSA filed a second motion to dismiss, arguing (for the first time) *forum non conveniens* and asserting that Texas was the proper forum state. *Id.*

17.      The Cook County Court later denied BSA's second motion to dismiss, calling it "manifestly inappropriate." *Id*. at 13-4. *See also id.* ("[I]n terms of documentary evidence, this case is an even less persuasive . . . argument than the usual case.").

Texas Coverage Action

18.      Contemporaneously with its (later denied) second motion to dismiss, BSA initiated the Texas Coverage Action. *Id.* at 12. The Texas Coverage Action is entirely duplicative of BSA's counterclaims against National Surety in the first-filed Illinois Coverage Action – it contains the same claims against National Surety under the Texas Insurance Code and the same allegations that National Surety breached the NS Policies.[7] *See id.* at 12.

19.      The only apparent difference between the two coverage suits as to National Surety is that the Texas Coverage Action (a) was filed later and (b) is far less comprehensive than the Illinois Coverage Action. Out of the 19 insurers named in the Illinois Coverage Action, the Texas Coverage Action names only three (excluding National Surety): Insurance Company of North America, Century Indemnity Company, and Allianz Global Risks US Insurance Company. BSA further failed to name even ***one*** of the Doe Defendants in the Texas Coverage Action. *See id.* at 13.

20.      Accordingly, on October 1, 2018, National Surety filed a plea in abatement in the Texas Coverage Action and later sought to stay it, in each case due to the first-filed (and more extensive) Illinois Coverage Action. *See id.* at 7. The Dallas County Court denied National Surety's requested relief and later denied National Surety's motion for reconsideration. *See id.* at 18.

21.      As a result of BSA's venue manipulation in violation of the first-filed rule, along with an inadequate appellate remedy with respect to the Dallas County Court's denial of relief, National Surety filed the Writ Petition in the Court of Appeals for the Fifth Judicial District (the "Texas Appellate Court") on September 13, 2019. *See In re National Surety Corporation* (Cause

---

[7] In the Texas Coverage Action, BSA alleges a single count each against Allianz Global Risks US Insurance Company and Century Indemnity Company, both of which pertain to coverage disputes completely unrelated to National Surety.

41512638

No. 05-19-01119-CV) (the "Writ Proceeding"; and, together with the Texas Coverage Action, the "Texas Proceedings").    The Texas Proceedings and the Illinois Coverage Action are collectively referred to hereinafter as the "State Court Actions."

22.    In the Writ Proceeding, National Surety seeks issuance of a writ of mandamus directing the Dallas County Court to (a) vacate its previous orders denying National Surety's requests for abatement and/or stay of the Texas Coverage Action and (b) enter an order staying or abating any further proceeding in the Texas Coverage Action pending resolution of the Illinois Coverage Action. *See generally id.*

23.    In addition to the Writ Petition, National Surety filed an *Emergency Motion to Stay Underlying Litigation* (the "Emergency Motion") with the Texas Appellate Court seeking a temporary stay of the Texas Coverage Action.  In the Emergency Motion, National Surety noted the grave and irreparable harm that would result absent a stay of the Texas Coverage Action – "namely, both the loss of National Surety's right to a trial in the proper forum, as well as the 'time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" Emergency Motion, attached hereto as **Exhibit E**, at 6-7.

24.    On October 4, 2019, the Texas Appellate Court entered an order (the "Emergency Order") granting the relief requested in the Emergency Motion over BSA's objection.  *See* Emergency Order, attached hereto as **Exhibit F**.  In the Emergency Order, the Texas Appellate Court stayed the Texas Coverage Action until further notice and directed BSA to file a response to the Writ Petition. *Id.*

25.    The parties have since fully briefed the Writ Petition and are awaiting a decision from the Texas Appellate Court.

**Chapter 11 Cases**

26.     On February 18, 2020 (the "Petition Date"), BSA and a related entity, Delaware BSA, LLC (collectively with BSA, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the Bankruptcy Court for the District of Delaware commencing the Chapter 11 Cases.

27.     The very next day, BSA alerted the Cook County Court of the Chapter 11 Cases and the resulting stay pursuant to Section 362. *See Suggestion of Bankruptcy*, dated February 19, 2020 (the "Notice"), attached hereto as **Exhibit G**.

28.     BSA did not, however, notify the Texas Appellate Court of the Chapter 11 Cases. Accordingly, local counsel for National Surety alerted the Texas Appellate Court of the pending Chapter 11 Cases. *See Notice of Bankruptcy of the Real Party in Interest*, attached hereto as **Exhibit H**.

29.     BSA then filed a response in which it vehemently contested the applicability of the automatic stay to the Writ Proceeding, likening it to an appeal of the Texas Coverage Action (in which it is the plaintiff). *See Real Parties in Interest's Response to National Surety Corporation's Notice of Bankruptcy of the Real Party in Interest, or in the Alternative, Motion to Reinstate Pursuant to TRAP 8.3(a)* (the "Response"), attached hereto as **Exhibit I**.   The Response further contains a request to reinstate the Writ Proceeding even if it is stayed. *Id.*

30.     On March 2, 2020, National Surety filed a reply, contending that the Writ Proceeding is subject to the automatic stay as the Writ Proceeding is a separate proceeding and not akin to an appeal of Texas Coverage Action. *See National Surety's Reply* (the "Reply"), attached hereto as **Exhibit J**.

41512638

31.     Evidently, BSA seeks to take advantage of the automatic stay solely with respect to the Illinois Coverage Action, while permitting the Writ Proceeding (and, ostensibly, the Texas Coverage Action) to advance.  *Compare* Notice *with* Response.

## RELIEF REQUESTED

32.     By this Motion, National Surety seeks entry of an order:

(a)     Granting relief from the automatic stay "for cause" pursuant to Bankruptcy Code Section 362(d)(1), so that all of the State Court Actions can proceed to a final judgment; and

(b)     Waiving the 14-day stay under FED. R. BANKR. P. 4001(a)(3) ("Rule 4001(a)(3)"), such that any relief granted under subsection (a), above, is effective immediately upon entry of the order granting relief; and

(c)     In the alternative, extending the automatic stay to the Texas Coverage Action and Writ Proceeding (to the extent not already stayed) pursuant to Bankruptcy Code Sections 362(a) and 105(a).

## BASIS FOR RELIEF

## I.     NATIONAL SURETY IS ENTITLED TO "FOR CAUSE" RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(1).

33.     The Bankruptcy Code provides that filing a petition for relief "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title."  11 U.S.C. § 362(a)(1).  *See also id.* § 362(a)(3) (staying "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate").  This broad stay affords the debtor a "breathing spell" upon the commencement of a bankruptcy case.  *Ass'n of St. Croix*

*Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) (internal citations and quotations omitted).

34.     But the automatic stay is not limitless.  The Bankruptcy Code counterbalances the immediate effect of the automatic stay with the rights and interests of affected parties by permitting, among other things, the modification or dissolution of the automatic stay.  *See* 11 U.S.C. § 362(d).  Section 362(d) provides, "[o]n request of a party in interest . . . the court shall grant relief from the [automatic] stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause."  11 U.S.C. § 362(d)(1).  Because Section 362(d) uses the mandatory "shall," relief from the automatic stay is required upon an adequate showing under either prong of Section 362(d) – including, as relevant here, "cause" under Section 362(d)(1).  *Cf. Nantucket Inv'rs II v. Cal. Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 208 (3d Cir. 1995) ("Furthermore, we note that the language of section 362(d)(2) is mandatory, when both factors necessary for relief under section 362(d)(2) are met 'the court shall grant relief.'").

35.     The Bankruptcy Code does not, however, define "cause."  Consequently, assessing "cause" requires a "fact intensive, case-by-case balancing test" involving an examination of "the totality of the circumstances." *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 126 (Bankr. D. Del. 2009).  This Court has determined that, when analyzing whether "cause" exists to lift the stay to enable a party to continue prebankruptcy litigation against the debtor, the following test should be applied:

> (i) Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;
> (ii) Whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and
> (iii) Whether the creditor has a probability of prevailing on the merits.

*In re Scarborough St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015).  In addition to these three enumerated factors, "the general policies underlying the automatic stay" should be assessed when determining stay relief.  *Id.*  As set forth below, each of these factors – including the "general policies underlying the automatic stay," *id.* – weigh in favor of lifting the automatic stay.

### A.  The Debtors Will Not Suffer Prejudice from the Continuation of the State Court Actions.[8]

36.    *First*, the continuation of the State Court Actions will not result in "any great prejudice to either the bankruptcy estate or the [D]ebtor[s]."  *Id.*  Because National Surety seeks declaratory relief in the Illinois Coverage Action and to stay or abate the Texas Coverage Action (via the Writ Proceeding), not one of the State Court Actions directly jeopardizes the Debtors' finances.  Therefore, the only conceivable prejudice to the Debtors is the cost or purported inconvenience of participating in the State Court Actions.

37.    That is not enough.  "The cost of defending litigation, by itself, has not been regarded as constituting great prejudice, precluding relief from the automatic stay."  *Davis v. Day (In re Day)*, 2004 Bankr. LEXIS 1521, at *5 (Bankr. S.D. Ga. Jan. 28, 2004) (internal quotations omitted) (citing several cases in support).  *See also, e.g.*, *In re Harris*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (finding no great prejudice notwithstanding the debtor's argument that he lacked the funds to continue litigating); *In re Quay Corp.*, No. 05 C 7235, 2006 U.S. Dist. LEXIS 2709, at *8 (N.D. Ill. Jan. 24, 2006) ("[T]he prospect of incurring continuing legal fees generally does not constitute irreparable injury sufficient to deny the lifting of a stay.").  Thus, to the extent the

---

[8] As set forth in ¶ 29, *supra*, BSA contends that the automatic stay does not apply to the Writ Proceeding, characterizing it as an "appeal" of the Texas Coverage Action (in which BSA is the plaintiff).  National Surety disputes this characterization of the Writ Proceeding, which, under Texas law, is a separate proceeding and not an appeal.  Therefore, and out of an abundance of caution, National Surety requests stay relief to continue litigating all State Court Actions.

41512638

Debtors contend they will be prejudiced by the cost or inconvenience of participating in the State Court Actions, that argument is unavailing.

38.    Moreover, courts in this district have repeatedly recognized that a debtor who initiates a suit identical to pending litigation cannot later claim that it is cost-prohibitive to participate in the first-filed action.  *See Power Ltd. v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 718-19 (Bankr. D. Del. 1996) ("As to the first factor, [debtor] has filed an adversary proceeding here with allegations that are substantially identical to those in the Texas action. [. . .] These factors are sufficient to conclude that no prejudice will result from the continuation of the Texas action.").  *See also Tribune*, 418 B.R. at 127 (permitting prepetition litigation to proceed in California would not prejudice the debtor because the debtor initiated an adversary based on the same issues).

39.    Here, the Debtors clearly are not concerned with the cost or inconvenience of litigating in different fora.  After all, BSA – not National Surety – filed the Texas Coverage Action, which is identical in all relevant respects to the Illinois Coverage Action.  More to the point, BSA plainly wants to litigate (and apparently is not inconvenienced by) the Writ Proceeding.  *See* Response.  As in *Pursuit Athletic*, "[t]hese factors are sufficient to conclude that no prejudice will result from the continuation of the [State Court Actions]."  193 B.R. at 718-19.  Accordingly, the first factor weighs in favor of stay relief.

### B.    Maintaining the Stay Inflicts Significant Harm on National Surety.

40.    *Second*, "the hardship to [National Surety] by maintenance of the stay considerably outweighs the hardship to the [D]ebtor[s]."  *Scarborough St. James*, 535 B.R. at 68.  As set forth above, the Debtors believe the automatic stay applies only to the Illinois Coverage Action.  Enforcing this lopsided application of the stay results in a number of grave injuries to National Surety.

41512638

41.    As an initial matter, selectively maintaining the stay robs National Surety of its choice of forum.  This alone has been held to constitute sufficient hardship to satisfy the second factor. *See, e.g.*, *In re Dallas*, No. 10-12141, 2011 Bankr. LEXIS 4777, at *8 (Bankr. S.D. Ga. Nov. 29, 2011) (finding hardship to the movant outweighed the debtor, noting "[Movant] is being denied its day in court to have its declaratory action resolved in the forum of its choosing.").

42.    Even worse, maintenance of the stay solely with respect to the Illinois Coverage Action essentially overrules the Cook County Court's denial of BSA's "manifestly inappropriate" motion to dismiss for *forum non conveniens*.  *Cf. In re Betzold*, 316 B.R. 906, 916 (Bankr. N.D. Ill. 2004) ("If this Court were to stop the Arbitration and revisit the issues directed to be arbitrated it would essentially be setting aside the state courts' decision to compel the Arbitration.").  Indeed, under the Debtors' view of the stay, National Surety would be prevented from litigating in Illinois and forced into Texas – the exact relief BSA sought and the Cook County Court denied.  Permitting the Debtors to obtain this *de facto* reversal of the Cook County Court's decision is a perversion of the automatic stay.  *Cf. id.* ("Such an action would be a clear violation of the *Rooker-Feldman* doctrine.").

43.    Finally, continued application of the automatic stay to the Illinois Coverage Action will erode the (more than) two years of pre-trial litigation – including multiple claims, counterclaims, and crossclaims – and corresponding discovery that have taken place therein. Such an outcome is contrary to well-established principles of judicial economy and fairness to litigants.  *Cf. In re Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992) ("Judicial economy dictates a prompt resolution in a single forum and with the same judge who was originally assigned to the case.").  That is particularly true where, as here, the litigation involves a state law dispute between numerous parties, is pending in a state court, and has progressed

- 14 -

significantly prebankruptcy. *See, e.g.*, *In re Laurel Highlands Found., Inc.*, 473 B.R. 641, 662 (Bankr. W.D. Pa. 2012) ("In a case where non-bankruptcy litigation was commenced in another forum, relief from stay may be appropriate to permit that litigation to conclude, especially when multiple parties are involved or when trial is ready to proceed."); *In re Chan*, 355 B.R. 494, 501 (Bankr. E.D. Pa. 2006) ("[W]hen there are multiple parties involved in the non-bankruptcy litigation, considerations of judicial economy may support [modifying the stay to] return the litigation to the non-bankruptcy forum.").

44.    In sum, it is clear that National Surety will suffer irreparable harm from a continued application of the Debtors' selective use of the stay. By contrast, lifting the automatic stay (so that *all* State Court Actions can proceed) will result in minimal, if any, hardship to the Debtors. *See* § I. A., *supra*. And any slight hardship to the Debtors is outweighed by the simple fact that the parties' dispute must be resolved in any event to determine the Debtors' right to coverage (and any corresponding recovery) under the NS Policies. *See* 11 U.S.C. § 541. The second factor, therefore, weighs in favor of stay relief.

### C.    National Surety Is Sufficiently Likely to Prevail on the Merits.

45.    *Third*, National Surety "has a probability of prevailing on the merits." *Scarborough St. James*, 535 B.R. at 68. This threshold is extremely low. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Cont'l Airlines, Inc.*, 152 B.R. 420, 426 (D. Del. 1993). *See also Rexene Prods.*, 141 B.R. at 578 ("The required showing is very slight.").

46.    Here, National Surety meets the "very slight" showing required for the State Court Actions. With respect to the Illinois Coverage Action, the Cook County Court has denied BSA's repeated attempts to dismiss. In the Texas Proceedings, the Texas Appellate Court granted National Surety's Emergency Motion and stayed the Texas Coverage Action – over BSA's

- 15 -

strenuous objection.  This more than satisfies the modest threshold required to lift the automatic stay.  *Cf. id*. at 578 ("This slight showing is easily met by the fact that there has already been a denial of defendants' motion for summary judgment in the lawsuit."); *Pursuit Athletic*, 193 B.R. at 719 (finding a sufficient likelihood of success on the merits when the presiding judge in the prepetition lawsuit denied cross-motions for preliminary injunctions).  The third factor, therefore, weighs in favor of lifting the stay.

### D.      The "General Policies" behind the Automatic Stay Support Its Dissolution.

47.      *Finally*, lifting the stay with respect to the State Court Actions is consistent with "the general policies underlying the automatic stay." *Scarborough St. James*, 535 B.R. at 68.  The automatic stay serves "to prevent certain creditors from gaining a preference for their claims against the debtor" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners*, 682 F.2d at 448)).  The automatic stay, in other words, is defensive in nature – it prevents "a prejudicial dissipation of a debtor's assets." *In re Bock Laundry Mach. Co.*, 37 B.R. 564, 567 (Bankr. N.D. Ohio 1984)

48.      The automatic stay expressly is ***not*** a weapon, available for use by a debtor to gain the upper hand in litigation, manipulate venue, or harass opponents. *See McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168-69 (B.A.P. 9th Cir. 1995) ("The automatic stay afforded by section 362 is intended to be a shield protecting debtors and their estates, and should not be used as a sword for their enrichment."). *Cf., e.g.*, *In re Asanda Air II LLC*, 600 B.R. 714, 722 (Bankr. N.D. Ga. 2019) (finding "cause" to dismiss a chapter 11 case due to, among other reasons, the debtor's improper use of the automatic stay to hinder and delay a creditor's prepetition declaratory judgment action against the debtor).  Indeed, as this Court acknowledged in *Scarborough St. James*, the relevant policies support stay relief when a debtor "seeks to litigate

- 16 -

only issues of its choosing and in its preferred forum" by using bankruptcy "as a 'sword' and not a 'shield'." 535 B.R. at 70.

49.     That is precisely how the Debtors have acted here.  BSA notified the Cook County Court of the Chapter 11 Cases (and the resulting stay of the Illinois Coverage Action) the day after the Petition Date.  In the Texas Proceedings, by contrast, BSA not only failed to notify the Texas Appellate Court of the Chapter 11 Cases, but BSA also vigorously objected to the applicability of the automatic stay.  Together, and particularly in light of BSA's repeated efforts to evade the Illinois Coverage Action, these acts compel the conclusion that the Debtors "seek[] to litigation only issues of [their] own choosing and in [their] preferred forum," wielding the automatic stay "as a 'sword' and not a 'shield'." *Id.*  This is an unequivocally inappropriate use of the automatic stay. *See id.*  Therefore, the general principles underlying the automatic stay also weigh in favor of relief.

### E.     The Totality of the Circumstances Support Stay Relief.

50.     In sum, all of the relevant factors weigh in favor of stay relief.  Lifting the stay to permit continued litigation of all the State Court Actions will not prejudice the Debtors; however, maintaining the stay solely with respect to the Illinois Coverage Action results in clear and irreparable harm to National Surety.  Further, National Surety has at least a "slight probability" of success on the merits.  Finally, the Debtors' attempt to weaponize the automatic stay and gain an unfair litigation advantage is inequitable and should not be rewarded.  For these reasons, and as set forth more completely above, the totality of the circumstances establish that stay relief is both warranted and appropriate.

## II.     THE 14-DAY STAY SHOULD BE WAIVED.

51.     National Surety further requests a waiver of the 14-day stay under Rule 4001(a)(3).  Pursuant to Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay . . .

- 17 -

41512638

is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 4001(a)(3). Rule 4001(a)(3) does not provide the grounds for a waiver of stay; thus, granting a waiver is within the Court's discretion. *See, e.g.*, *In re Taub*, 438 B.R. 39, 51 (Bankr. E.D.N.Y. 2010) (waiving the 14-day stay and noting, "[d]elay and expense, and the prospect of irreparable damage, are far more likely to result if the effective date of this Court's Order is stayed than if it is immediately effective."). Here, delaying the effective date of any stay relief is more likely to harm National Surety than to help the Debtors. National Surety, therefore, respectfully submits that a waiver of the 14-day stay is warranted under the circumstances.

## III.   IN THE ALTERNATIVE, THE COURT SHOULD EXTEND THE AUTOMATIC STAY TO THE TEXAS PROCEEDINGS.

52.     National Surety maintains that relief from stay is the most appropriate course of action. If the Court is not inclined to grant National Surety relief from the automatic stay and assuming the automatic stay does not apply to the Writ Proceeding (as BSA claims), the Court should preserve the status quo by extending the automatic stay to the Writ Proceeding and the Texas Coverage Action pursuant to Sections 362(a) and 105(a).

53.     Section 105(a) provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As noted by the Debtors, "Section 105(a) reflects the well-settled understanding that 'bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.'" *The BSA's Opening Brief in Support of Motion for a Preliminary Injunction Pursuant to Section 105(a) and 362 of the Bankruptcy Code* [Adv. Pro. No. 20-50527(LSS); D.I. 7] (quoting *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994)). To that end, Section 105(a) permits

the Court to "issue an appropriate injunction, even if the automatic stay is not operative." *Penn Terra, Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 273 (3d Cir. 1984)

54.     Here, extending the automatic stay to the Texas Proceedings (so that all State Court Actions are stayed) would be "an appropriate injunction." *Id.*   In support, National Surety incorporates by reference § I of this Motion and respectfully submits that the reasons set forth therein justify an extension of the automatic stay to the Texas Proceedings.   As a matter of fundamental fairness, and at bottom, the automatic stay should apply to the State Court Actions consistently – that is, either all or none.  *Accord Debtors' Motion for Entry of an Order (I) Appointing a Judicial Mediation, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* [D.I. 17] (noting that "continuing to engage in piecemeal litigation across the United States" would be "harmful to the BSA").   Accordingly, and in the alternative to stay relief, the automatic stay should be extended to the Texas Proceedings.

## NOTICE

55.     Copies of this Motion are being served on the following: (a) proposed counsel to the Debtors; (b) the Office of the United States Trustee; (c) the Debtor's 20 largest unsecured creditors and those members of the Official Committees with available addresses; (d) the United States Attorney for the District of Delaware; (e) the Internal Revenue Service; (f) all parties entitled to notice in the State Court Actions; and (g) all parties who have requested notice pursuant to FED. R. BANKR. P. 2002.  In light of the nature of the relief requested herein, National Surety submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, National Surety respectfully requests entry of an order:

A.     Granting to National Surety (i) relief from the automatic stay "for cause," pursuant to Bankruptcy Code Section 362(d)(1), such that National Surety can litigate to a

41512638

judgment the Illinois Coverage Action, Writ Proceeding, and, to the extent applicable, the Texas

Coverage Action; and (ii) a waiver of the 14-day stay pursuant to Rule 4001(a)(3); or, in the

alternative,

B.      Extending the automatic stay to the Writ Proceeding and Texas Coverage Action,

such that the Writ Proceeding, Texas Coverage Action, and Illinois Coverage Action are stayed

in their entirety until further order of this Court; and

C.      Granting to National Surety such other and further relief as is just and proper.

Dated:      March 6, 2020            PEPPER HAMILTON LLP
            Wilmington, Delaware
                                     By: /s/ David M. Fournier
                                         David M. Fournier (DE No. 2812)
                                         Marcy J. McLaughlin Smith (DE No. 6184)
                                         Hercules Plaza
                                         1313 Market Street
                                         Suite 5100
                                         P.O. Box 1709
                                         Wilmington, DE 19899-1709
                                         Telephone:  404.885.3000
                                         Facsimile:   404.885.3900

                                     -and-

                                         TROUTMAN SANDERS LLP
                                         Harris B. Winsberg (admitted *pro hac vice*)
                                         Matthew G. Roberts (admitted *pro hac vice*)
                                         Bank of America Plaza
                                         600 Peachtree Street NE
                                         Suite 3000
                                         Atlanta, GA  30308-2216
                                         Telephone:  404.885.3000
                                         Facsimile:   404.885.3900

                                     -and-

BRADLEY RILEY JACOBS PC
Todd C. Jacobs (admitted *pro hac vice*)
320 W. Ohio Street
Suite 3W
Chicago, IL 60654
Telephone:   312.281.0295

*Attorneys for National Surety Corporation*

41512638