## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

## GIRL SCOUTS OF THE UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF ITS MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO RESUME TRADEMARK ACTION

DORSEY & WHITNEY (DELAWARE) LLP

Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone:  (302) 425-7171
Facsimile:  (302) 425-7177
E-mail:  schnabel.eric@dorsey.com
            glorioso.alessandra@dorsey.com

-and-

DORSEY & WHITNEY LLP

Bruce R. Ewing (*pro hac vice*)
Eric Lopez Schnabel (DE Bar No. 3672)
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201
E-mail:  ewing.bruce@dorsey.com
            schnabel.eric@dorsey.com

*Counsel to Girl Scouts of the United States of America*

Dated:  March 10, 2020

## TABLE OF CONTENTS

I.      Summary of the Argument.................................................................................1

II.     Jurisdiction and Venue..................................................................................2

III.    Relief Requested .........................................................................................3

IV.     Factual and Procedural Background ...........................................................3

        A.      Girl Scouts ......................................................................................3

                1.      Organization, History and Impact..................................3

                2.      Marketing and Use of GIRL SCOUTS Trademarks....................4

        B.      Boy Scouts' Violations of Girl Scouts' Trademark Rights ....................5

                1.      Girl Scouts and Boy Scouts are Separate Organizations, with Separate Trademarks....................................5

                2.      Boy Scouts' Marketing to Girls Violates Girl Scouts' Trademark Rights ................................................6

                3.      Boy Scouts' Refusal to Cease Infringing Use of the GS Marks................11

        C.      Trademark Action in the District Court .................................13

                1.      Commencement of Trademark Action..........................13

                2.      Status of Trademark Action .........................................14

V.      Procedural History .....................................................................................15

VI.     Argument ...................................................................................................16

        A.      Purpose of and Standard for Relief from the Automatic Stay ..............17

        B.      Cause Exists to Grant Relief from the Automatic Stay to Resume the Trademark Action .........................................19

                1.      Continuation of the Trademark Action Will Prejudice Neither Boy Scouts, nor its Estate .................................19

                        (a)     Continuation of the Trademark Action Will Not Prejudice the Interests of Other Creditors.................................... 19

(b)    Girl Scouts' Claims Need to be Liquidated, and the Trademark Action is the Most Appropriate Forum ..................... 22

(c)    Litigation of Girl Scouts' Claims Has Substantially Progressed in the Trademark Action............................................. 24

(d)    Resuming the Trademark Action Would Not Impede or Delay the Progress of the Bankruptcy Case................................. 25

2.    The Hardship Posed to Girl Scouts, as Well as the Public, Should the Court Deny Relief, Outweighs Hardship to Boy Scouts.....................25

3.    Girl Scouts Has a Probability of Succeeding on the Merits in the Trademark Action ..............................................................................27

VII.    Request for Waiver of Stay Pursuant to Rule 4001(a)(3) .................................................28

VIII.    No Prior Request................................................................................................................28

IX.    Notice................................................................................................................................28

X.    Conclusion ........................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Albeinsa Holding, Inc.*,
   2016 Bankr. LEXIS 3641 (Bankr. Del. 2016) ........................................................19

*AstraZeneca AB v. Camber Pharm., Inc.*,
   No. 15-927-SLR, 2015 U.S. Dist. LEXIS 156272 (D. Del. Nov. 19, 2015) ..........................26

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
   683 F. Supp. 899 (E.D.N.Y. 1987) ........................................................17

*Borman v. Raymark Ind., Inc.*,
   946 F.2d 1031 (3d Cir. 1991)........................................................18

*In re Cont'l Airlines, Inc.*,
   152 B.R. 420 (D. Del. 1993)........................................................21, 27

*Dominic's Rest. of Dayton, Inc. v. Mantia*,
   683 F.3d 757 (6th Cir. 2012) ........................................................17

*Girl Scouts of the U.S.A. v. Boy Scouts of Am.*,
   No. 18-10287 (S.D.N.Y. Nov. 6, 2018)........................................................7

*Innovative Office Prods. v. SpaceCo Bus. Sols., Inc. (In re SpaceCo Bus. Sols., Inc.)*,
   2007 Bankr. LEXIS 4620 (Bankr. D. Colo. Oct. 18, 2007)....................................19, 20, 22, 26

*James Burroughs Ltd. v. Sign of the Beefeater, Inc.*,
   540 F.2d 266 (7th Cir. 1976) ........................................................26

*Larami Ltd. v. Yes! Entm't Corp.*,
   244 B.R. 56 (D.N.J. 2000) ........................................................17

*In re Levitz Furniture Corp.*,
   267 B.R. 516 (Bankr. D. Del. 2000) ........................................................27

*Marblelife, Inc. v. Stone Ress., Inc.*,
   759 F. Supp. 2d 552 (E.D. Pa. 2010) ........................................................26

*Mother African Union Methodist Church v. Conf. of AUFCMP Church (In re Conf. of African Union First Colored Methodist Protestant Church)*,
   184 B.R. 207 (Bankr. D. Del. 1995) ........................................................24

*In re Peterson*,
   116 B.R. 247 (D. Colo. 1990)........................................................23, 27

*In re Rexene Prods. Co.*,
   141 B.R. 574 (Bankr. D. Del. 1992) ................................................................ *passim*

*Ryan v. Volpone Stamp Co.*,
   107 F. Supp. 2d 369 (S.D.N.Y. 2000) ...................................................................26

*In re Scarborough St. James Corp.*,
   535 B.R. 60 (Bankr. Del. 2015) ...........................................................19, 22, 27

*In re SCO Grp., Inc.*,
   395 B.R. 852 (Bankr. D. Del. 2007) ............................................................ *passim*

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
   589 F.2d 1225 (3d Cir. 1978)....................................................................2, 25

*Steak & Brew, Inc. v. Makris*,
   No. 15332, 1973 U.S. Dist. LEXIS 14907 (D. Conn. Feb. 14, 1973) .......................17, 20, 27

*Stern's Miracle-Gro Prods. v. Shark Prods.*,
   823 F. Supp. 1077 (S.D.N.Y. 1993)......................................................................26

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   576 F. Supp. 2d 463 (S.D.N.Y. 2008)....................................................................26

*Tribune Media Servs. V. Beatty (In re Tribune Co.)*,
   418 B.R. 116 (Bankr. Del. 2009) ........................................................................27

*In re VidAngel, Inc.*,
   593 B.R. 340 (Bankr. D. Utah 2018) ..............................................................21, 23, 24

*Voice Sys. & Servs. v. VMX, Inc.*,
   No. 91-C-88-B, 1992 U.S. Dist. LEXIS 21744 (N.D. Okla. Nov. 5, 1992) ...........................17

*In re Walker*,
   927 F.2d 1138 (10th Cir. 1991) .........................................................................21

*In re Wheeler Grp., Inc.*,
   75 B.R. 200 (Bankr. S.D. Ohio 1987).....................................................................23

**Statutes**

11 U.S.C. § 362(a)(1).......................................................................................17

11 U.S.C. § 362(a)(3).......................................................................................17

15 U.S.C. § 1051............................................................................................14

15 U.S.C. § 1125(c) .........................................................................................5

28 U.S.C. § 959(a) ......................................................................................17

36 U.S.C. § 30901......................................................................................5

36 U.S.C. § 80301......................................................................................3

36 U.S.C. § 80305......................................................................................4

United States Code Title 11 chapter 11 .......................................... *passim*

Lanham Act.......................................................................... *passim*

**Other Authorities**

*A list of Boy Scout outing deaths*, L.A. TIMES (Dec. 5, 2010) ......................13

Aguon, Mindy*, 4 former Boy Scouts file sex abuse lawsuits*, THE GUAM DAILY
     POST (Jan. 8, 2018) ..............................................................13

THE AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE,
     https://ahdictionary.com/word/search.html?q=scouting ..........................6

Baker, Mike, *At Stake in Boy Scouts' Bankruptcy: $1 Billion in Assets, or Much
     More*, N.Y. TIMES (Feb. 19, 2020)............................................13

Boone, Christian, *Three things to know about the Boy Scouts sex abuse cases*,
     THE ATLANTA JOURNAL-CONSTITUTION (Aug. 20, 2018) ......................13

Brickley, Peg, *Boy Scouts' Accusers Want Abuse Details Revealed in Bankruptcy*,
     THE WALL ST. J. (Feb. 19, 2020) ............................................13

Crary, David, *Boy Scouts' future uncertain after bankruptcy filing*, PBS (Feb. 18,
     2020) ..........................................................................13

Eustachewich, Lia, *4 men sue Boy Scouts of America over alleged sexual abuse*,
     NEW YORK POST (July 24, 2018) ............................................13

Felch, Jason & Christensen, Kim, *Boy Scouts' 'perversion files' released: 'The
     secrets are out'*, L.A. TIMES (Oct. 18, 2012) ..............................13

GIRL SCOUTS website (https://www.girlscouts.org/) ...............................5

Joint Letter, *Girl Scouts of the U.S.A.*, No. 18-10287 (S.D.N.Y. Feb. 10, 2020),
     ECF No. 66 ..................................................................14

Kwiatkowski, Marisa & Kelly, John, *The Catholic Church and Boy Scouts are
     lobbying against child abuse statutes. This is their playbook*, USA TODAY,
     (Oct. 2, 2019) ..............................................................13

Ly, Laura, *Boy Scouts of America files for bankruptcy. Hundreds of sexual abuse lawsuits are now on hold*, CNN (Feb. 18, 2020) ...................................................................13

MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/scout; ...................................5

Messer, Olivia, *'Pedophile Magnet' Boy Scouts of America Let 'Serial' Sex Abuser Prey on Four Boys: Lawsuit*, DAILY BEAST (July 24, 2018).......................................13

Viebeck, Elise, *Boy Scouts lobby in states to stem the flow of child abuse lawsuits*, WASH. POST (May 9, 2018) .............................................................................................13

Wolfson, Andrew, *Sexual abuse of Explorer Scouts has gone on for decades across the nation*, COURIER JOURNAL (May 18, 2017, updated June 27, 2018) .....................13

Girl Scouts of the United States of America ("Girl Scouts") hereby submits this opening brief in support of its Motion for Relief from the Automatic Stay to Resume Trademark Action (the "Motion") filed concurrently herewith in the above-captioned, jointly administered bankruptcy cases (collectively, the "Bankruptcy Case") of the debtor Boy Scouts of America ("Boy Scouts") and debtor Delaware BSA, LLC.  In support of the Motion, Girl Scouts states as follows:

## I.    Summary of the Argument

For over 100 years, the unrelated organizations of the Girl Scouts and Boy Scouts fulfilled their respective missions by providing their core leadership development services to America's girls and boys separately.  In 2017, that all changed – the Boy Scouts announced that it would extend, and then began to market, the Boy Scouts' leadership development services to girls throughout all of its core programs and did so in a manner that violated the Girl Scouts' trademarks and other intellectual property rights.  The Boy Scouts' ongoing and continuous infringing conduct, including after the filing of the Bankruptcy Case, has caused and is causing rampant confusion in the marketplace.  Here are just a few examples:

- Boy Scouts' representatives advertising for their programs by using "Girl Scouts" in their marketing and promotional materials;

- Boy Scouts' representatives telling schools and parents that Boy Scouts are the Official Scouts now, that Girl Scouts merged with Boy Scouts, or that Girl Scouts no longer exists;

- Boy Scouts' representatives misleadingly encouraging girls to sign up for "Scouts" and to participate in "Scouting," without telling them or their parents that the organization sponsoring their programs is Boy Scouts, not Girl Scouts; and

- Girls and parents being confused by Boy Scouts' advertising into signing up for Boy Scouts when they thought they were signing up for Girl Scouts and asking for refunds.

In November of 2018, after numerous letters and other unsuccessful attempts to persuade Boy Scouts to cease its conduct and stop confusing the public, Girl Scouts filed suit in the Southern District of New York.  The Trademark Action (as defined below) seeks an injunction to enjoin Boy Scouts' conduct that infringes on the Girl Scouts' trademarks and other intellectual property and seeks damages related thereto.  Boy Scouts' filing of its bankruptcy petition invoked the automatic stay and has temporarily stayed the Trademark Action.  Girl Scouts now moves to lift the automatic stay so as to allow the litigation to continue both to resolve the injunctive relief that Girl Scouts urgently needs, and to allow the claims for damages to be adjudicated.

As discussed in more detail below, there is ample cause to lift the automatic stay and allow the Trademark Action to go forward.  Most importantly, fundamental fairness requires prompt resolution of these disputes, and the age-old "breathing spell" afforded the Boy Scouts upon filing of a bankruptcy petition, in this case, actually runs counter to the public interest.  As the Third Circuit recognizes, "trademark laws exist not to 'protect' trademarks, but . . . to protect the consuming public from confusion, concomitantly protecting the trademark owner's right to a non-confused public."  *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1228 (3d Cir. 1978) (internal quotations omitted).  Because recruiting for both organizations occurs continually, the stay should be lifted and the litigation allowed to continue to judgment now so that girls and their parents will no longer be confused as to whether they are joining the Girl Scouts or the Boy Scouts.

## II.    Jurisdiction and Venue

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a) and (b), and the "Standing Order of Reference Re: Title 11" of the United States District Court of the District of Delaware dated February 29, 2012.  The relief requested herein is predicated on Section

362(d)(1) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 4001, and Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

### III.    Relief Requested

Girl Scouts asks that the Court enter an order, substantially in the form attached to the Motion, lifting and modifying the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to permit the Trademark Action to resume for purposes of (1) adjudicating Girl Scouts' request for Post-Petition Injunctive Relief (as defined below), (2) liquidating and allowing the Post-Petition Damages Claim (as defined below), and (3) liquidating and allowing the Pre-Petition Damages Claim (as defined below).  Girl Scouts also asks that the Court waive the 14-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3).

### IV.    Factual and Procedural Background

#### A.    Girl Scouts

##### 1.    Organization, History and Impact

For more than a century, Girl Scouts has established itself as the preeminent, best-known provider of leadership development services for American girls.  Girl Scouts is a national, nonprofit organization that was incorporated in 1915 and congressionally chartered under 36 U.S.C. § 80301 on March 16, 1950.  It is currently the largest girl-led leadership development organization for girls in the world, with about 2 million current active members, and its iconic GIRL SCOUTS program is both well-known and highly regarded.  Founded in 1912 by Juliette Gordon Low in Savannah, Georgia, Girl Scouts promotes, encourages and inspires girls to develop courage, confidence and character through a variety of activities and practical skills programs.

The Girl Scout movement in the United States, its territories and possessions is directed and coordinated by Girl Scouts at the national level.  Girl Scouts charters 111 local Girl Scout

councils across the nation that deliver Girl Scout programming within their respective jurisdictions.  Girl Scouts, among other things, licenses the GIRL SCOUTS and related trademarks, and other intellectual property, to each of the local councils.  Individual girls may become Girl Scout members, and multiple Girl Scout members band together to form troops, which typically consist of 12-20 girls, led by a volunteer registered with a chartered local Girl Scout council.

### 2.      Marketing and Use of GIRL SCOUTS Trademarks

The core elements of Girl Scouts' brand identity among the American public are its famous, registered GIRL SCOUTS trademarks.  These marks are powerful symbols of a unique, extraordinarily valuable goodwill that has grown over decades and been carefully protected by Girl Scouts.  Girl Scouts' brand and programs have received many prestigious awards, including being designated as a Top 10 brand for the last two years in the World Value Index compiled by the enso branding agency, as well as numerous other accolades.

Congress has given Girl Scouts the exclusive use of the GIRL SCOUTS and related trademarks adopted by Girl Scouts pursuant to 36 U.S.C. § 80305.  To further protect its famous brand, and to place the public on notice of its trademark rights, Girl Scouts has secured and owns multiple trademark registrations for its GIRL SCOUTS and GIRL SCOUTS & Profile Design marks.  In addition to the rights conferred on these trademarks through federal registration, Girl Scouts owns common law rights in each of its federally registered trademarks, as well as in all variations of GIRL SCOUTS that Girl Scouts has used in connection with girls leadership development services and related products or services, as well as any related trade dress and other designations of source (collectively, hereinafter, the "GS Marks").  With respect to the terms SCOUTS and SCOUTING in particular, by virtue of the long history of use of the GIRL SCOUTS trademark by Girl Scouts, the consuming public has come to recognize SCOUTS and

SCOUTING as trademarks that, like the other GS Marks, belong exclusively to Girl Scouts when used in connection with leadership programs and related services for girls.

The GS Marks have been extensively advertised and promoted in various media in the United States, including online through the GIRL SCOUTS website (https://www.girlscouts.org/) and social media sites such as Facebook.  The GIRL SCOUTS mark is distinctive, famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and uniquely associated by consumers with Girl Scouts and its programs, services and products throughout the United States.  The GIRL SCOUTS mark serves as a strong source identifier by virtue of its long use, extensive promotion and long history with American consumers, and it is entitled to the widest scope of protection under federal and state anti-dilution laws.  By virtue of its use, federal trademark registrations, and congressional charter, Girl Scouts has the exclusive right to use the GS Marks in commerce, and to prevent the use of any marks or trade dress confusingly similar thereto, in connection with youth development services and programs for girls.

**B.     Boy Scouts' Violations of Girl Scouts' Trademark Rights**

**1.     Girl Scouts and Boy Scouts are Separate Organizations, with Separate Trademarks**

Boy Scouts is a congressionally chartered corporation under 36 U.S.C. § 30901 that was established to provide youth development services and programs for boys.  While both Girl Scouts and Boy Scouts are congressionally chartered corporations that offer services to American youth, the two organizations are not associated with one another, and never have been.  The two organizations have coexisted in the marketplace for many decades, with each offering youth development services and programs using trademarks that have included the words "Scout," "Scouts" and "Scouting."  Multiple American dictionaries define those words by

reference to both organizations.  *See, e.g.*, scout, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/scout; scouting, THE AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://ahdictionary.com/word/search.html?q=scouting.

Crucially, and until recently, these terms when used have either been preceded by words like BOY or GIRL that have highlighted the gender-specific nature of each organization's programs, or appeared in a context making clear that the programs at issue were developed by one organization or the other.  Boy Scouts has previously acknowledged this important division in trademark rights before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office.[1] Although Boy Scouts has previously offered highly specialized programs such as "Exploring" in which girls could participate, it had not, until recently, offered its core CUB SCOUTS and BOY SCOUTS programming for girls under the marks SCOUTS or SCOUTING alone (without other source-identifying distinguishing leading words).

### 2.     Boy Scouts' Marketing to Girls Violates Girl Scouts' Trademark Rights

On October 11, 2017, Boy Scouts announced that it would expand its core offerings under the SCOUTS and SCOUTING trademarks to encompass programs for girls, beginning with the enrollment of girls into its CUB SCOUTS programs.  It then announced that it would open its BOY SCOUTS program to girls beginning in February 2019.  In May 2018, Boy Scouts unveiled the advertising campaign "Scout Me In" that would promote these new programs and announced that its program for older youths, previously known as BOY SCOUTS, would now be

---

[1] In 2004, Boy Scouts admitted in a filing made in a trademark opposition proceeding, Case No. 91157313, that Girl Scouts owned exclusive, congressionally granted rights to SCOUTS and SCOUTING with respect to youth development programs for girls.

called SCOUTS BSA.  Boy Scouts now uses the SCOUT, SCOUTING, SCOUT ME IN and SCOUTS BSA trademarks to recruit girls into all of its programs.

This change in the Boy Scouts paradigm has dramatically altered the circumstances that previously allowed its use of trademarks like SCOUTS and SCOUTING to coexist with the GS Marks without causing confusion.  As a result of this fundamental change in the nature of Boy Scouts' services and how its marks are used, numerous examples of the misuse of Girl Scouts' trademarks have come to Girl Scouts' attention, and actual confusion among members of the public between the two organizations, their services and their trademarks has become rampant. Moreover, the association between the Girl Scouts' brand, long a symbol of girl empowerment, and that of the Boy Scouts' brand, one mired in ever-mounting scandals regarding sexual abuse, has caused further harm to the Girl Scouts by tarnishing its unique and historic legacy.

Not long after Boy Scouts made its announcement in October 2017 that it would begin accepting girls into its CUB SCOUTS program, Boy Scout local councils, acting at the direction of, or for the purpose of assisting, Boy Scouts within the scope of their relationship with the Boy Scouts, began creating and disseminating materials violative of Girl Scouts' valuable trademark rights.  Less than a month after the October 2017 announcement, the Boy Scouts' Orange County Council distributed fundraising material in connection with an event held on November 30, 2017, stating that the proceeds from the event would help, among other things, "implementation of our New BSA Girl Scouting Program."  *See Girl Scouts of the U.S.A. v. Boy Scouts of Am.*, No. 18-10287 (S.D.N.Y. Nov. 6, 2018), ECF No.1 at ¶ 57 (attached hereto as Exhibit A) (hereinafter, "Complaint").  Despite Girl Scouts immediately notifying Boy Scouts of this infringing material, more and more examples of infringing advertisements, signs, and other marketing collateral have been discovered, including:

- A local council distributing recruitment materials using the Girl Scout profiles

  logo and uses languages about girls joining the "scouts" or "scouting programs,



**Join 616 Scout Recruitment Now!**

The Scouting programs sponsored by the
Honolulu Elks Lodge are thriving.

Now boys and girls can be in the
scouts, from Cub Scouts on up!

The Girl Troop and Boy Troop are accepting new members now!

Explore the outdoors, try new things, provide service
to others, build self-confidence, develop leadership,
and make new friends.

Contact Scoutmaster Keola Greene at email
sm616girltroop@gmail.com,

Assistant Scoutmaster Jody Ramos, email
asm616girltroop@gmail.com or phone 808-256-1815,
or Honolulu Elks Lodge Scouting Committee representative,
Calvin Hara at email cmhara@comcast.net,

phone 808-426-7852.

- a Boy Scout council advertising with signs for "Boy & Girl Scouts,"



- and a Facebook post imploring the public to reach out for information about "Girl Scouts BSA Troops."



*See id.* at ¶¶ 60-63.

Boy Scout regional councils have even misappropriated Girl Scouts' slogan and mission statement and gone so far as to use a quote by Girl Scouts' founder in marketing materials in an effort to confuse the public and trade on Girl Scouts' goodwill.  *See id.* at ¶ 67.

### 3.    Boy Scouts' Refusal to Cease Infringing Use of the GS Marks

When such infringing material came to the attention of the Girl Scouts, it sent letters and warnings to Boy Scouts and its local councils regarding this serial infringing activity.  However, despite the fact that the Boy Scouts have long been on notice of this activity, as documented in the numerous letters (currently numbering over 20) sent by the Girl Scouts complaining about the rampant infringement, as well as through the filing of the Complaint against the Boy Scouts on November 6, 2018, such activity has not ceased.  In fact, the infringing conduct is ongoing and continuous and includes documented incidents occurring this current calendar year – both pre- and post- petition.

Further compounding the issue, Boy Scouts and its regional/local representatives have engaged in unfair business practices that add to the public confusion and misinformation.[2] For instance, Boy Scout council representatives have told schools and churches that the two organizations have merged or that Girl Scouts no longer exists in order to secure exclusive access to these facilities for Boy Scout recruitment and meetings.  Boy Scout council representatives have also spread this same misinformation to prospective members and their parents and tried to deliberately make it appear that Boy Scout recruiting events are actually Girl Scout recruiting events.

These tactics, along with the Boy Scouts' wrongful use of SCOUT, SCOUTS, SCOUTING and SCOUTS BSA in its marketing for girls, have created widespread confusion among consumers.  Before filing its Trademark Action, Girl Scouts was already aware that Boy

---

[2] Through discovery, Girl Scouts has discovered numerous instances of infringement, unfair business practices, and actual confusion.  Due to the protective order in the Trademark Action and the limited nature of the relief requested in the Motion, which requires only a general understanding of the underlying substance of the infringement claims, this brief provides a high level overview of such conduct for context.  A full evidentiary record on the merits of Girl Scouts' claims in the Trademark Action is not necessary for the Court's consideration of the Motion.

Scouts' decision to open up its core programs to girls under the trademarks SCOUTS and SCOUTING, and the launch of its "Scout Me In" campaign, were causing confusion based on social media posts brought to its attention and the steady stream of reports from Girl Scout local councils regarding the confusion that they were encountering in their communities.

Discovery in the Trademark Action has further corroborated the existence of public confusion, uncovered evidence of even more confusion that was previously unknown, and confirmed that it is still ongoing. Through discovery in the Trademark Action, repeated instances came to light where this confusion has not been corrected by the Boy Scout local council and was instead used to its advantage. Fact discovery also included multiple Girl Scout local council witnesses testifying to instances of confusion they have encountered, in the form of, among many other examples:

- school administrators, church secretaries and others who see no need for Girl Scouts to host recruiting events at their facilities any longer because "you were already here," when, in fact, it was Boy Scouts that had hosted an event;

- parents seeking Girl Scout programming but who have attended Boy Scout meetings by mistake; and

- parents who have even gone so far as to sign up their daughters with Boy Scouts, thinking they were enrolling with Girl Scouts.

The continued use of the SCOUT mark and variations thereof in connection with all of Boy Scouts' core programs offered to girls of all ages on a nationwide basis has diluted and will continue to dilute Girl Scouts' famous GIRL SCOUTS trademark by blurring its distinctiveness and creating an improper and inaccurate association with Boy Scouts. Such improper associations are of particular concern to Girl Scouts because Boy Scouts has received significant negative publicity regarding its activities conducted under the BOY SCOUTS and SCOUTS

12

marks, such that the goodwill associated with those terms when used in connection with boys' leadership development services has been damaged.

In particular, there have been lawsuits and media articles alleging: a poor child safety record with respect to certain aspects of Boy Scouts' programs; acts of misconduct perpetrated by some of its leaders over the years; and Boy Scouts' decision to lobby against child protection statutes in certain states.[3] The threat to the Girl Scouts' brand has become more pronounced with the commencement of this Bankruptcy Case and the negative publicity that comes with it. This Bankruptcy Case in particular will be accompanied by more negative publicity than would be expected in the normal course of a bankruptcy proceeding, as the aforementioned sexual abuse scandals and lawsuits at the heart of the bankruptcy will receive increased press scrutiny.[4]

### C.    Trademark Action in the District Court

#### 1.    Commencement of Trademark Action

On November 6, 2018, the Girl Scouts took the drastic step of initiating legal action against the Boy Scouts. The Girl Scouts were forced to take this action because the Boy Scouts responded to the Girl Scouts' repeated complaints about the ongoing violations of Girl Scouts' trademark rights by addressing only individual instances, without making any systemic effort to

---

[3] Viebeck, Elise, _Boy Scouts lobby in states to stem the flow of child abuse lawsuits_, WASH. POST (May 9, 2018)_;_ Felch, Jason & Christensen, Kim, _Boy Scouts' 'perversion files' released: 'The secrets are out'_, L.A. TIMES (Oct. 18, 2012); Boone, Christian, _Three things to know about the Boy Scouts sex abuse cases_, THE ATLANTA JOURNAL-CONSTITUTION (Aug. 20, 2018)_;_ Eustachewich, Lia, _4 men sue Boy Scouts of America over alleged sexual abuse_, NEW YORK POST (July 24, 2018); Messer, Olivia, _'Pedophile Magnet' Boy Scouts of America Let 'Serial' Sex Abuser Prey on Four Boys: Lawsuit_, DAILY BEAST (July 24, 2018); Aguon, Mindy_, 4 former Boy Scouts file sex abuse lawsuits_, THE GUAM DAILY POST (Jan. 8, 2018); _A list of Boy Scout outing deaths_, L.A. TIMES (Dec. 5, 2010); Wolfson, Andrew, _Sexual abuse of Explorer Scouts has gone on for decades across the nation_, COURIER JOURNAL (May 18, 2017, updated June 27, 2018); Kwiatkowski, Marisa & Kelly, John, _The Catholic Church and Boy Scouts are lobbying against child abuse statutes. This is their playbook_, USA TODAY, (Oct. 2, 2019).

[4] _See, e.g._, Baker, Mike, _At Stake in Boy Scouts' Bankruptcy: $1 Billion in Assets, or Much More_, N.Y. TIMES (Feb. 19, 2020); Crary, David, _Boy Scouts' future uncertain after bankruptcy filing_, PBS (Feb. 18, 2020); Brickley, Peg, _Boy Scouts' Accusers Want Abuse Details Revealed in Bankruptcy_, THE WALL ST. J. (Feb. 19, 2020); Ly, Laura, _Boy Scouts of America files for bankruptcy. Hundreds of sexual abuse lawsuits are now on hold_, CNN (Feb. 18, 2020).

address the ongoing harm to Girl Scouts, or to prevent any such wrongdoing from continuing. The lawsuit (the "Trademark Action") was filed against the Boy Scouts in the United States District Court for the Southern District of New York (the "District Court"), alleging claims of federal and common law trademark infringement, federal and state trademark dilution, federal unfair competition, and tortious interference.  Girl Scouts seeks injunctive and declaratory relief, over $6.8 million in damages,[5] and other relief authorized under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.  See* Complaint.

### 2.    Status of Trademark Action

On March 6, 2020, Boy Scouts filed a Suggestion of Bankruptcy in the Trademark Action.  *See* Suggestion of Bankruptcy, *Girl Scouts of the U.S.A.*, No. 18-10287 (S.D.N.Y. Mar. 6, 2020), ECF No. 68.  The District Court endorsed the filing on March 9, requiring Girl Scouts to petition this Court for leave to pursue its claims in District Court and report the outcome to the District Court by March 30; failing such, the District Court would dismiss the Trademark Action. *See* Memo Endorsement, *Girl Scouts of the U.S.A.*, No. 18-10287 (S.D.N.Y. Mar. 9, 2020), ECF No. 69.

The Trademark Action is in its advanced stages, with discovery weeks from completion and the issues prime for resolution by the District Court.  Less than two weeks prior to the Boy Scouts' bankruptcy filing, the parties attended a status conference before the District Court, where the parties reported that fact discovery was nearly complete.  *See* Joint Letter, *Girl Scouts of the U.S.A.*, No. 18-10287 (S.D.N.Y. Feb. 10, 2020), ECF No. 66.

---

[5] Damages include $6.8 million plus additional damages that require expert assistance to calculate, along with attorneys' fees and costs.

In the Trademark Action, the parties have:

- produced more than 350,000 pages of documents,

- completed 37 fact depositions,[6]

- collected documents from the majority of the 15 subpoenaed third parties,

- nearly completed document collections from 14 Girl Scout councils and 18 Boy Scout councils, and

- exchanged opening round expert reports concerned with consumer surveys.

The current deadline – now stayed – to exchange a second set of expert reports is March 18, 2020, with all expert discovery to be completed by May 15, 2020. The next case management conference is scheduled for June 19, 2020. The Trademark Action is on pace to proceed to trial within 2020, subject to the District Court's calendar.

## V.    Procedural History

On February 18, 2020, Boy Scouts and Debtor Delaware BSA, LLC commenced the Bankruptcy Case by filing voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On the same date, Boy Scouts filed the Debtors' Informational Brief [Docket No. 4] (the "Informational Brief"), the Declaration of Brian Whittman in Support of Debtors' Chapter 11 Petitions and First Day Pleadings [Docket No. 16] (the "First Day Declaration"), a Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Docket No. 20] (the "Plan"), and a Disclosure Statement for the Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [Docket No. 21] (the "Disclosure Statement").

---

[6] There is only one possible remaining deposition, which would be of a Girl Scout council employee who has not yet been able to sit for a deposition due to an unexpected medical condition. All Boy Scout employees have already been deposed.

Each the Informational Brief and First Day Declaration explain that the existence of outstanding claims – both asserted and unasserted, and allegedly totaling around 1,700 known claims – for sexual abuse against Boy Scouts led to commencement of the Bankruptcy Case. First Day Declaration ¶¶ 7-9; Informational Brief p. 3.  Boy Scouts describes continued litigation of abuse claims on a case-by-case basis as "unsustainable" and a process that risks inconsistent outcomes for and treatment of victims.  Informational Brief pp. 5-6.  Boy Scouts identifies its "dual objectives" for the Bankruptcy Case as "(a) timely and equitably compensating victims of abuse in Scouting and (b) ensuring that the . . . [Boy Scouts] emerges from bankruptcy with the ability to continue its vital charitable mission."  *Id.*, pp. 6-7; First Day Declaration ¶ 10.  The Boy Scouts' proposed Plan focuses on global resolution of abuse claims asserted against it by establishing a trust to compensate abuse victims and channeling abuse claims to the trust, in addition to administering other claims.  *See* Disclosure Statement, Art. I.B.

None of the Informational Brief, First Day Declaration, Plan, or Disclosure Statement so much as mentions, let alone identifies, the Trademark Action as a contributing factor to the Boy Scouts' bankruptcy filing or as a significant issue for resolution through this Bankruptcy Case.

## VI.    Argument

Girl Scouts' claims against Boy Scouts are comprised of three main components:

1. a post-petition claim for injunctive relief to halt the continuing and ongoing post-petition violations by the Boy Scouts of the GS Marks and Girl Scouts' intellectual property rights (the "Post-Petition Injunctive Relief");

2. a post-petition claim for the damages caused by the Boy Scouts' continuous and ongoing post-petition infringing conduct (the "Post-Petition Damages Claim"); and

3. a pre-petition claim for the damages caused by the Boy Scouts' pre-petition infringing conduct, which under federal and state law totals $6.8m, plus further damages that are subject to expert testimony and attorneys' fees and costs (the "Pre-Petition Damages Claim").

While the automatic stay does not necessarily bar Girl Scouts from pursuing the Post-Petition Injunctive Relief against Boy Scouts,[7] out of an abundance of caution, Girl Scouts seeks leave from the automatic stay to allow the Trademark Action to move forward so that the Post-Petition Injunctive Relief may be adjudicated.  In addition, Girl Scouts requests, *inter alia*, for the sake of judicial economy, that the automatic stay be modified to allow both the Post-Petition Damages Claim and Pre-Petition Damages Claim to be liquidated and allowed in the Trademark Action.  For the reasons discussed below, the Court should grant Girl Scouts the requested relief from the automatic stay to resume the Trademark Action.

## A.        Purpose of and Standard for Relief from the Automatic Stay

The automatic stay imposed by Section 362 of the Bankruptcy Code stays, among other things, the commencement or continuation of proceedings that could have been commenced prior to the petition date or any act to obtain possession of or exercise control over property of the estate.  11 U.S.C. § 362(a)(1) & (3).  The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to

---

[7] A request for injunctive relief to prevent a debtor from violating intellectual property rights does not amount to an attempt to exercise control over estate property and does not interfere with the orderly disposition of estate property. *Larami Ltd. v. Yes! Entm't Corp.*, 244 B.R. 56, 59-60 (D.N.J. 2000).  Actions for injunctive relief halting ongoing trademark infringement and unfair competition should not be prohibited by the automatic stay.  *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 761 (6th Cir. 2012) (finding the automatic stay inapplicable to a matter involving the debtor's commission of trademark and service mark infringement through operation of a restaurant); *Steak & Brew, Inc. v. Makris*, No. 15332, 1973 U.S. Dist. LEXIS 14907, at *8 (D. Conn. Feb. 14, 1973) (referring to the Bankruptcy Act, that it "should not be used as a shield behind which a debtor may sustain the misappropriation of a trade name to which he is not rightfully entitled," plus the court should not "permit it to be used as an instrument by which the damages to an innocent party may be increased unnecessarily"); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 917 (E.D.N.Y. 1987).  Moreover, Section 959(a) of Title 28 of the United States Code provides that a debtor in possession may be sued without leave of the court with respect to acts or transactions in carrying on business connected with property under its control.  28 U.S.C. § 959(a).  Courts construe this provision as an exception to the automatic stay. *Voice Sys. & Servs. v. VMX, Inc.*, No. 91-C-88-B, 1992 U.S. Dist. LEXIS 21744, at *28 (N.D. Okla. Nov. 5, 1992).

avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quoting *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)).

The Bankruptcy Code directs the Court to grant relief from the automatic stay for cause. Section 362(d) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating annulling, modifying or conditioning such stay–
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d).

Although the Bankruptcy Code does not define "cause," the legislative history of section 362 explains that "cause may be established by a single factor such as 'a desire to permit an action to proceed . . . in another tribunal,' or 'lack of any connection with or interference with the pending bankruptcy case.'" *Rexene*, 141 B.R. at 576 (internal citations omitted). The legislative history further states that "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum." *Id.* (internal citations omitted); *In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) ("the legislative history of section 362(d)(1) emphasizes the importance of allowing a case to continue in the original tribunal so long as there is no prejudice to the estate").

"Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *SCO Grp.*, 395 B.R. at 856. In determining whether cause exists to grant relief from the automatic stay for a civil suit to proceed in another venue, the Court may

consider, among other things, whether "a) [a]ny great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, b) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and c) the creditor has a probability of prevailing on the merits." *Rexene*, 141 B.R. at 576-77; *In re Scarborough St. James Corp.*, 525 B.R. 60, 68 (Bankr. Del. 2015); *In re Albeinsa Holding, Inc.*, 2016 Bankr. LEXIS 3641 at *7 (Bankr. Del. 2016).

**B.      Cause Exists to Grant Relief from the Automatic Stay to Resume the Trademark Action**

Girl Scouts seeks relief from the automatic stay to resume the Trademark Action to adjudicate its claim for Post-Petition Injunctive Relief and to liquidate both its Post-Petition Damages Claim and Pre-Petition Damages Claim against Boy Scouts.  As discussed below, ample cause exists for this Court to grant the requested relief.

**1.      Continuation of the Trademark Action Will Prejudice Neither Boy Scouts, nor its Estate**

**(a)      Continuation of the Trademark Action Will Not Prejudice the Interests of Other Creditors**

Allowing Girl Scouts to proceed with the Trademark Action will not prejudice other creditors or interested parties in the Bankruptcy Cases, because "the issues to be determined in the [Trademark Action] will need to be determined at some time and in some forum," and the other creditors and parties in interest are prejudiced no more by allowing those determinations to be made in the [District] Court than they would be if those issues were determined by [this Court]." *Innovative Office Prods. v. SpaceCo Bus. Sols., Inc. (In re SpaceCo Bus. Sols., Inc.)*, 2007 Bankr. LEXIS 4620, at *18 (Bankr. D. Colo. Oct. 18, 2007); *see also Scarborough St. James Corp.*, 535 B.R. 60, 68 (finding no prejudice to the debtor or the administration of the estate in allowing litigation to continue in prior forum).

Girl Scouts seeks relief from the automatic stay so that the District Court can determine Boy Scouts' liability to Girl Scouts on the claims for Post-Petition Injunctive Relief, the Post-Petition Damages Claim, and the Pre-Petition Damages Claim. All three categories of claims must, at some point, be adjudicated. *See Innovative Office Prods.*, 2007 Bankr. LEXIS 4620, at *18. Since the Boy Scouts' infringing conduct is ongoing and continuous, the demand for Post-Petition Injunctive Relief must be heard at some point in time. Indeed, Girl Scouts has both federal statutory rights under the Lanham Act and state common law rights to protect their GS Marks, and this Bankruptcy Case cannot be used by the Boy Scouts as a means to avoid post-petition compliance with applicable non-Bankruptcy law. *See Steak & Brew*, 1973 U.S. Dist. LEXIS 14907, at *8. The most logical path forward is to allow the Trademark Action to be determined in the District Court, in full. As discussed in more detail below, the public interest – as well as the balancing of the harms – requires that this determination move forward now.

Likewise, the Post-Petition Damages Claim and Pre-Petition Damages Claim require liquidation and allowance at some point. However, Girl Scouts is not seeking to obtain assets of Boy Scouts' estate in connection with the District Court's adjudication of these pre- and post-petition claims. Rather, Girl Scouts merely seeks modification of the stay to liquidate and allow such claims, with respect to the damages incurred by Girl Scouts. The monetary or other satisfaction of such claims is an issue that can and will be resolved by this Court, within the Bankruptcy Case. *See SCO Grp.*, 395 B.R. at 858, 860 (permitting the automatic stay to be lifted for licensing issues to be determined by the district court and leaving determination of the existence of a constructive trust for the bankruptcy court). Again, modifying the stay to allow the Post-Petition Damages Claim and Pre-Petition Damages Claim does not harm creditors because these issues must be resolved one way or the other.

Moreover, permitting the District Court to complete adjudication of the Trademark Action would benefit the estate.  It would avoid the need for potential contested or adversary proceedings before this Court or the United States District Court for the District of Delaware with respect to Girl Scouts' claims, which would cause the estate to incur fees and expenses, including for the duplication of efforts already completed in the District Court.  *See In re VidAngel, Inc.*, 593 B.R. 340, 348 (Bankr. D. Utah 2018) (noting the excessive amount of resources required for a new forum to achieve the level of knowledge and expertise as the original forum).  Moreover, it would permit key stakeholders, Boy Scouts' restructuring professionals, and the Court to focus on the fulcrum issue driving these chapter 11 proceedings – achieving a global resolution for the claims of the survivors.  First Day Declaration ¶ 10.  The Trademark Action is a two-party dispute, and such issues are of minimal interest to Boy Scouts' creditors.

Resuming the Trademark Action should also pose no financial or other hardship to Boy Scouts.  Boy Scouts does not claim to have commenced the Bankruptcy Case due in any part to financial pressure threatened by or resulting from the Trademark Action.  Additionally, Boy Scouts will inevitably expend resources to liquidate or resolve objections to Girl Scouts' claims.  *See In re Cont'l Airlines, Inc.*, 152 B.R. 420, 425 (D. Del. 1993) (". . . the increase in litigation expenses. . . does not, by itself, justify denying American's requested relief from the automatic stay"); *VidAngel*, 593 B.R. at 348 ("the costs of continuing with pending litigation is not a dispositive factor in granting relief from stay."); *In re Walker*, 927 F.2d 1138 (10th Cir. 1991) ("While the cost of defending in a civil action has been given serious consideration by bankruptcy courts, no case has found the cost of defending, by itself, to be 'great prejudice' as to bar modification of the [section 362] stay.").  Furthermore, with fact discovery virtually

complete, the remaining efforts on expert discovery and other pre-trial preparations involve professionals, not management, and the necessary lawyers and experts are from different firms than the ones involved in the Bankruptcy Case. *See SCO Grp.*, 395 B.R. at 858 (finding trial preparation would not be burdensome to debtors or harm the estate because, among other things, separate litigation counsel completed trial preparations prior to the petition date and the parties had already expended necessary time and resources to prepare for trial).

Accordingly, it would be most efficient for the District Court to liquidate Girl Scouts' claims in the Trademark Action, without disruption to the Bankruptcy Case or the need for Boy Scouts to allocate any extra estate resources to litigate Girl Scouts' claims against it in the future. *See Rexene*, 141 B.R. at 577 ("One of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources.").

### (b)    Girl Scouts' Claims Need to be Liquidated, and the Trademark Action is the Most Appropriate Forum

Girl Scouts' claims must be determined "at some time and in some forum." *Innovative Office Prods.*, 2007 Bankr. LEXIS 4620, at *18; *see generally, Scarborough St. James Corp.*, 535 B.R. 60, 68-69 (Bankr. Del. 2015) (noting that the debtor's interest in the lease that was the subject of the pre-petition litigation must be determined at some point). The District Court is the most appropriate forum for the task. The District Court has presided over the Trademark Action for nearly 16 months and is familiar with the parties, the claims and their disputes. *See Scarborough St. James Corp*, 535 B.R. at 68 (finding that the state court was in the best position to make the determination on the issues and had "familiarity with the parties and the facts of the case"). Indeed, the District Court has denied a motion to dismiss filed by the Boy Scouts, resolved multiple disputes among the parties regarding discovery, and held several scheduling conferences. *See Innovative Office Prods.*, 2007 Bankr. LEXIS 4620 at *15-16, 20-21 (finding

that federal jurisdiction over patent infringement cases and a district court judge's familiarity with litigation weighed in favor of granting relief from the automatic stay).

Additionally, the District Court has original jurisdiction over claims under the Lanham Act and routinely adjudicates trademark infringement matters. The District Court's specialization with respect to trademark litigation and ongoing knowledge and experience with the Trademark Action will permit the most efficient liquidation of Girl Scouts' claims. *See id.*, at \*15-16, 20-21; *see also VidAngel, Inc.*, 593 B.R. at 346-47 (noting that resolution of copyright litigation in a district court permitted appeals directly to the Ninth Circuit, facilitating faster final resolution of issues).

As noted above, Boy Scouts must contend with Girl Scouts' Post-Petition Injunctive Relief and the Post- and Pre-Petition Damages Claims at some point, and doing so will require expenditure of resources. The Trademark Action has substantially progressed, and the bulk of the resources necessary to liquidate Girl Scouts' claims have already been expended. To leave the automatic stay in place, preventing progress in the Trademark Action and postponing liquidation of Girl Scouts' claims for a later time, perhaps before this Court, would render much, if not most, of the parties' and the District Court's time and efforts to date in the Trademark Action wasted. *See SCO Grp.*, 395 B.R. at 857 (finding, "The longer the trial is delayed, the more burdensome it is to both parties to ready themselves again."); *In re Peterson*, 116 B.R. 247, 250 (D. Colo. 1990) ("Numerous courts have permitted the stay to be lifted when the movant is simply seeking to establish the fact and amount of the debtor's liability . . ."); *In re Wheeler Grp., Inc.*, 75 B.R. 200, 200 (Bankr. S.D. Ohio 1987) (finding that where a "matter has proceeded through very substantial adjudicatory steps in the District Court . . . the most

expeditious way to liquidate the claim is to allow it to proceed to its conclusion in the District Court.").

### (c)    Litigation of Girl Scouts' Claims Has Substantially Progressed in the Trademark Action

With fact discovery essentially complete and expert discovery underway, the Trademark Action is nearly trial ready.  The parties have completed nearly 40 fact depositions and have exchanged and reviewed hundreds of thousands of pages of documents.  The bulk of the discovery remaining at this point is expert discovery.  Trial could occur before year-end, depending on the District Court's schedule.

It would be a significant undertaking for a presiding judge in another forum to digest the factual and procedural record underlying Girl Scouts' claims.  *See SCO Grp.*, 395 B.R. at 857 (noting in finding that cause existed to lift the automatic stay, "Another court has extensive knowledge of the facts and issues and has already made detailed findings").  Consistent with the legislative history regarding Section 362, it is most appropriate in this instance for the Court to permit the Trademark Action to resume in its "place of origin."  *Rexene*, 141 B.R. at 576; *see also VidAngel*, 593 B.R. at 346 ("The presence of pending litigation at the time of a bankruptcy filing is not uncommon.  When the causes of action are based on non-bankruptcy law, and the litigation was beyond its initial stages, bankruptcy courts generally grant relief from stay to allow the court with original jurisdiction to liquidate the claim for purposes of administration in the bankruptcy case."); *Mother African Union Methodist Church v. Conf. of AUFCMP Church (In re Conf. of African Union First Colored Methodist Protestant Church)*, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("[T]he existence of a more appropriate forum than the bankruptcy court is 'cause' for relief under Code § 362(d)(1).").

### (d)    Resuming the Trademark Action Would Not Impede or Delay the Progress of the Bankruptcy Case

As the Bankruptcy Case was commenced within the past several weeks, Boy Scouts has yet to make significant progress toward its restructuring goals.  Boy Scouts has taken only one of many steps required to reach resolution of the Bankruptcy Case.  While Boy Scouts did file the proposed Plan and Disclosure Statement, these documents are essentially templates for a negotiation that has yet to begin.  In fact, with the recent appointment of two committees, necessary investigations and due diligence by the committees is in its infancy and such investigations are required before a meaningful negotiation can commence.

Granting relief from the automatic stay as requested herein will permit the Trademark Action to proceed in parallel with the Bankruptcy Case, with each having minimal to zero conceivable impact on the other.  Thus, rather than distract and deter from the Bankruptcy Case, resumption of the Trademark Action will help facilitate Boy Scouts' orderly reorganization by alleviating the need to address Girl Scouts' injunctive and damages claims in the Bankruptcy Case.  *See SCO Grp.*, 395 B.R. at 859 (finding that leaving the value of the movant's claim undetermined would "remain a troubling issue for the Court," the movant, and the debtors, and that "resolution of the issues remaining in the District Court litigation [would] assist the Debtors, not burden them.").

### 2.    The Hardship Posed to Girl Scouts, as Well as the Public, Should the Court Deny Relief, Outweighs Hardship to Boy Scouts

The Lanham Act protects owners of trademarks that have acquired secondary meaning from the use of marks that are likely to cause confusion.  *Scott Paper Co.*, 589 F.2d at 1228.  "Secondary meaning exists when the trademark is interpreted by the consuming public to be not only an identification of the product, but also a representation of the product's origin."  *Id.*  Thus, "trademark laws exist not to 'protect' trademarks, but . . . **to protect the consuming public** from

confusion, concomitantly protecting the trademark owner's right to a non-confused public." *Id.* *(*quoting *James Burroughs Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976)) (emphasis added).

Unauthorized use of a trademark dilutes the mark, meaning it weakens the ability of the trademark to indicate the source of goods. *See Marblelife, Inc. v. Stone Ress., Inc.*, 759 F. Supp. 2d 552, 561 (E.D. Pa. 2010); *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 524 (S.D.N.Y. 2008). The owner of a trademark suffers irreparable harm in the form of erosion of the trademark's value and the loss of reputation and goodwill as a result of dilution. *See AstraZeneca AB v. Camber Pharm., Inc.*, No. 15-927-SLR, 2015 U.S. Dist. LEXIS 156272, at *16 (D. Del. Nov. 19, 2015); *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 404 (S.D.N.Y. 2000); *Stern's Miracle-Gro Prods. v. Shark Prods.*, 823 F. Supp. 1077, 1094-95 (S.D.N.Y. 1993).

Boy Scouts' use of the infringing designations at the heart of the Trademark Action began in late 2017. Public confusion and the dilution of Girl Scouts' trademarks has been ongoing since that time, including post-petition. *See Innovative Office Prods.*, 2007 Bankr. LEXIS 4620, at *22-23 (finding a debtor's continued infringement of patents and resulting damages throughout litigation to weigh in favor of granting relief from the automatic stay). The interest of the public in being able to clearly distinguish between the Girl Scouts and Boy Scouts organizations and programming supports the immediate and efficient resolution of Girl Scouts' claims.

It would benefit not only Girl Scouts and Boy Scouts to resolve the issues in the Trademark Action as promptly as possible, but also the public at large. One of Boy Scouts' central reorganization goals is to "ensure[e] that the BSA emerges from bankruptcy with the

ability to continue its vital charitable mission." Informational Brief, pp. 6-7. The sooner the parties resolve the issues in the Trademark Action, the sooner Boy Scouts can confidently create and distribute materials and information relating to its programming.

In contrast, allowing the stay to remain in place would cause great harm to both the public and the Girl Scouts. Since the Boy Scouts' offending conduct continues to this day, resolution of the trademark claims is necessary to bring the Boy Scouts in compliance with applicable non-bankruptcy law. The Boy Scouts should not be allowed to utilize their "breathing spell" and the automatic stay as a shield from the requirements of the Lanham Act, to the detriment of the public and the Girl Scouts. *See Steak & Brew*, 1973 U.S. Dist. LEXIS 14907, at *8.

### 3.    Girl Scouts Has a Probability of Succeeding on the Merits in the Trademark Action

When a party seeks to lift an automatic stay, only a "very slight" showing of a probability of success on the merits is required. *Rexene*, 141 B.R. at 578; *see also Cont'l Airlines*, 152 B.R. at 426 ("Even a slight probability on the merits may be sufficient to support lifting an automatic stay in an appropriate case."); *Scarborough St. James Corp.*, 535 B.R. at 69; *Tribune Media Servs. V. Beatty (In re Tribune Co.)*, 418 B.R. 116, 129 (Bankr. Del. 2009). Girl Scouts need only show that its claims against Boy Scouts are not frivolous. *See In re Levitz Furniture Corp.*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) (citing *Rexene.*, 141 B.R. at 578). The analysis does not call for an evaluation of the merits of the claims. *See Peterson*, 116 B.R. at 250 ("To require a merits analysis in every case would in large part defeat this objective and frustrate the effort to resolve § 362(d) motions expeditiously.").

Girl Scouts easily satisfies the "very slight" showing standard. As discussed above, the Trademark Action has progressed significantly and is nearly through all fact and expert

discovery.  In January 2019, only a few months after the filing of the Complaint, Boy Scouts moved to dismiss two of Girl Scouts' claims, for certain violations of the Lanham Act and tortious interference with prospective economic advantage.  Shortly after the motion was filed, the District Court indicated to the parties its impression that the case would not be ripe for adjudication until after the close of discovery and summarily denied the motion.

If Girl Scouts' claims in the Trademark Action even approached being frivolous – which they do not – Boy Scouts would have pursued dismissal of all seven counts of the Complaint, and the District Court would have entertained such a motion at the outset, as opposed to summarily denying the limited motion that was filed.

The fact that the Trademark Action has moved past the motion to dismiss stage altogether, and resulted in the exchange of hundreds of thousands of pages of documents and the taking of almost 40 depositions, demonstrates that Girl Scouts has easily met the standard of showing a probability of success on the merits for purposes of this motion.  Moreover, one need only take a cursory review of the Complaint to conclude from the detailed and well pleaded allegations therein that the Girl Scouts' claims are meritorious.

## VII.    Request for Waiver of Stay Pursuant to Rule 4001(a)(3)

To prevent further delay of the Trademark Action, Girl Scouts respectfully requests that the Court waive the 14-day stay provided for in Federal Rule of Bankruptcy Procedure 4001(a)(3).

## VIII.   No Prior Request

No prior request for the relief sought herein has been made to this or any other Court.

## IX.     Notice

Notice of the Motion has been provided to (a) the Office of the United States Trustee; (b) counsel for Boy Scouts, (c) counsel for the Official Committee of Unsecured Creditors, (d)

counsel for the Committee of Tort Claimants, (e) all parties who have requested notice in this Bankruptcy Case pursuant to Rule 2002.

## X.    Conclusion

For all the reasons stated herein, Girl Scouts respectfully requests that the Court enter an order substantially in the form attached to the Motion granting Girl Scouts relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code to permit the Trademark Action to resume for the purposes of (1) adjudicating Girl Scouts' request for Post-Petition Injunctive Relief, (2) liquidating and allowing the Post-Petition Damages Claim, and (3) liquidating and allowing the Pre-Petition Damages Claim.  Girl Scouts also requests that the Court waive the 14-day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3).

Dated:  March 10, 2020

**DORSEY & WHITNEY (DELAWARE) LLP**

*/s/ Eric Lopez Schnabel*
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone:  (302) 425-7171
Facsimile:  (302) 425-7177
E-mail:  schnabel.eric@dorsey.com
              glorioso.alessandra@dorsey.com

-and-

DORSEY & WHITNEY LLP

Bruce R. Ewing (*pro hac vice*)
Eric Lopez Schnabel (DE Bar No. 3672)
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 415-9200
Facsimile:  (212) 953-7201
E-mail:  ewing.bruce@dorsey.com
              schnabel.eric@dorsey.com

***Counsel to Girl Scouts of the United States of America***