IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>        Debtors, | Chapter 11<br><br>Case No. 20-1343-(___)<br><br>Jointly Administered |
| BOY SCOUTS OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>A.A., *et. al.*,<br><br>        Defendants. | **ATTORNEY AFFIDAVIT**<br><br>Adv. Pro. No. 20-50527-(___) |

STATE OF NEW YORK   )
COUNTY OF ERIE       ) SS.

FILED 2020 MAR 12 AM 10:56 US BANKRUPTCY COURT CLERK DISTRICT OF DELAWARE

**LARAINE KELLEY, ESQ.**, being duly sworn, deposes and says:

1. I am an attorney at law duly licensed to practice in the State of New York and a senior partner with the law firm of Lipsitz Green Scime Cambria, LLP, attorneys for LG 37 Doe, Plaintiff in <u>LG 37 Doe v. Douglas Nail, Greater Niagara Frontier Council, Inc., Boy Scouts of America and Boy Scouts of America</u>, Case No. 1:20-cv-00217 (W.D.N.Y.), and a Defendant in the Adversary Proceeding captioned above.

2. I am admitted in the United States Bankruptcy Court for the Western District of New York, but am not admitted to the United States Bankruptcy Court for the District of Delaware.

3. Due to the short time constraints imposed by BSA's motions, our firm has not yet been able to procure local counsel admitted in the United States Bankruptcy Court for the District

1

of Delaware or file a motion to appear *pro hac vice*. However, we will move posthaste to accomplish the same, and I respectfully request that this Court take into consideration the opposition submitted on behalf of LG 37 Doe as set forth herein.

4.      I submit this Affidavit in opposition to Boy Scouts of America's (hereinafter "BSA") motion for a preliminary injunction pursuant to Sections 105(a) and 362 of the Bankruptcy Code, and in opposition to the BSA's motion for an order appointing a judicial mediator and referring <u>LG 37 Doe v. Douglas Nail, Greater Niagara Frontier Council, Inc., Boy Scouts of America and Boy Scouts of America</u>, Case No. 1:20-cv-00217 (W.D.N.Y.) (hereinafter referred to as "LG 37 Doe's Action"), to mandatory mediation.

5.      LG 37 Doe was a child member of Boy Scouts of America Troop 565, when he was sexually abused by the Troop's Scoutmaster, Douglas Nail (hereinafter "The Child Molester"), from approximately 1983 and continuing through 1987.

6.      The Boy Scouts of America Troop 565, was formed through Defendant Greater Niagara Frontier Council Inc., Boy Scouts of America (hereinafter "GNF Council").

7.      A Summons and Complaint was filed in the Supreme Court of the State of New York, County of Erie, on behalf of LG 37 Doe against The Child Molester, GNF Council and BSA. A copy of the Summons and Complaint is annexed hereto, made part hereof, and designated **Exhibit A.**

8.      The Child Molester filed an Answer on January 15, 2020. A copy of which is annexed hereto, made part hereof, and designated **Exhibit B.**

9.      BSA and GNF Council filed a Verified Answer on February 3, 2020. A copy of which is annexed hereto, made part hereof, and designated **Exhibit C.**

10. BSA and GNF Council specifically deny that they are the same entity in the Verified Answer. *See* Exhibit C, para. 6.

11. On February 19, 2020, Defendant BSA filed a Notice of Removal pursuant to 28 U.S.C. Section 1452, a copy of which is annexed hereto, made part hereof, and designated **Exhibit D**.

12. In accordance with the Notice of Removal, LG 37 Doe's pending case was removed to the United States District Court for the Western District of New York and assigned Case No. 1:20-cv-00217.

13. Pursuant to 28 U.S.C. Section 1447(c), LG 37 Doe has thirty (30) days from the filing of the Notice of Removal to make a motion to remand the case back to the Supreme Court of the State of New York, County of Erie.

14. LG 37 Doe opposes, in its entirety, the relief requested by BSA in the Notice of Removal.

15. LG 37 Doe will be filing a motion in the United States District Court for the Western District of New York, on or before March 20, 2020, requesting that the case be severed as to the non-debtor defendants, The Child Molester and GNF Council, and the case remanded back to the Supreme Court of the State of New York, County of Erie.

## I. THE RELIEF REQUESTED BY BSA IS IN DIRECT CONTRAVENTION TO THE PURPOSE OF THE NEW YORK STATE CHILD VICTIMS ACT

16. The direct effect of BSA's requested preliminary injunction would be to benefit non-bankrupt co-defendants, The Child Molester and GNF Council, with the protection of a bankruptcy stay, while LG 37 Doe, the victim of child sexual assault is estopped from pursuing litigation against any responsible party.

17.  This is in direct contravention to the Child Victims Act, which was enacted in New York State on February 14, 2019, and in relevant part, extended the statute of limitations to bring a civil action for the sexual abuse of a child until the victim reaches fifty-five (55) years old, and opened a one year window from August 14, 2019, for previously time-barred actions for child sexual abuse victims. New York Civil Practice Law and Rules §§ 208, 214-g.

18.  The New York Senate Sponsors' Memorandum for the Child Victims Act set forth the justification for the Child Victims Act, and the injustice it was designed to remedy as follows:

> New York is one of the worst states in the nation for survivors of child sexual abuse. New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average. Because of these restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety.
>
> [Omitted]
>
> Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties.
>
> 2019 New York Senate Bill No. 2440, New York Two Hundred Forty-Second Legislative Session.

19.  The relief requested by the BSA protects the BSA, GNF Council and The Child Molester. It unjustly deprives the victims of child sexual abuse, specifically, LG 37 Doe, from their statutory right to now seek justice against abusers and the entities which protected child molesters at the expense of innocent children.

20.  BSA's explicit goal in this bankruptcy proceeding is to force the victims of sexual abuse to agree to a "global resolution" of all sexual abuse claims. *See* BSA Brief, p. 3.

21.     BSA seeks to accomplish that goal by robbing plaintiffs across the country from their choice of forum and having all pending abuse action cases transferred to the Delaware District Court and subjected to mandatory mediation. *See* Exhibit D, para. 4.

22.     Instead of The Child Molester and GNF Council bearing the costs of the years long sexual abuse and trauma LG 37 Doe endured at the hand of The Child Molester, it is LG 37 Doe who will be forced to expend considerable sums to travel to and litigate his action in the Delaware District Court. It will also severely impair his ability to procure witnesses, as all parties, with the exception of BSA, are residents of the State of New York, County of Erie. *See* Exhibit A, para. 1, 4, and 9.

23.     Moreover, the preliminary injunction effectively deprives LG 37 Doe of his right under 28 U.S.C. Section 1447(c) to file a motion seeking to remand his action against The Child Molester and GNF Council back to the Supreme Court of the State of New York, County of Erie. *See* BSA proposed Order (Doc 6-1) prohibiting and enjoining LG 37 Doe from continuing to prosecute any action or claims against the BSA or the BSA Related Parties arising out of his involvement or connection with the BSA until at least August 17, 2020.

24.     The undisputable hardship that LG 37 Doe will face if his case is transferred to Delaware District Court, without even being given a chance to make a motion to remand and sever in the Western District of New York is insurmountable and irreparable, and in direct odds with the New York State Legislature's objective in passing the Child Victims Act.

**II.    BSA HAS FAILED TO MEET ITS BURDEN OF ESTABLISHING "UNUSUAL CIRCUMSTANCES" SUCH THAT A STAY SHOULD BE EXTENDED TO NON-BANKRUPT CO-DEFENDANTS IN PENDING ABUSE ACTIONS**

25.     It is well-established that stays pursuant to § 362(a) of the Bankruptcy Code are limited only to debtors and does not extend to "co-tortfeasors," "joint obligors," "guarantors,"

5

"sureties," or other non-debtor "co-defendants." Accord Maritime Electric Company v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir.1991) ("[t]he clear language of Section 362(a) indicates that it stays only proceedings against a 'debtor'—the term used by the statute itself").

26. Courts have held, that in "unusual circumstances" the automatic stay may be extended to non-debtors. A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir.1986); In re Uni-Marts, LLC, 399 B.R. 400, 416 (Bankr. D. Del. 2009); NHI REIT of TX-IL, LLC v. LaSalle Grp., Inc., 387 F. Supp. 3d 850, 852 (M.D. Tenn. 2019); Luppino v. York, 562 B.R. 894, 898 (W.D. Tex. 2016); In re Union Tr. Philadelphia, LLC, 460 B.R. 644, 657–58 (E.D. Pa. 2011).

27. The burden of showing "unusual circumstances" to extend the automatic stay to non-bankrupt debtors falls on the party seeking the extension. NHI REIT of TX-IL, LLC v. LaSalle Grp., Inc., 387 F. Supp. 3d 850, 852 (M.D. Tenn. 2019); Luppino v. York, 562 B.R. 894, 898 (W.D. Tex. 2016); In re Union Tr. Philadelphia, LLC, 460 B.R. 644, 657–58 (E.D. Pa. 2011).

28. According to the Fourth Circuit's seminal case on this issue, A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir.1986):

> [t]his "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. In re Uni-Marts, LLC, 399 B.R. 400, 416 (Bankr. D. Del. 2009)

29. Here, it is respectfully submitted that BSA has failed to meet its burden of showing "unusual circumstances" such that the automatic stay should be extended to "BSA Related Parties", specifically GNF Council.

30. BSA admits that it is a separate legal entity apart from GNF Council, and that GNF Council is independently incorporated from BSA. *See* Exhibit C, para. 6; Brief, p. 6.

31. BSA's claim that "'[u]nusual circumstances' are present in this case such that an extension of the protections of the automatic stay over the BSA Related Parties is both necessary and appropriate, as BSA personnel and records will be required in any ongoing litigation against the BSA Related Parties", is not supported by case law. BSA Brief, p. 21-22.

32. However, it has already been held that "[t]he need for discovery" is not an "unusual circumstance." Stanford v. Foamex L.P., No. CIV. A. 07-4225, 2009 WL 1033607, at *4 (E.D. Pa. Apr. 15, 2009). The Court in Stanford v. Foamex L.P., No. CIV. A. 07-4225, 2009 WL 1033607, at *4 (E.D. Pa. Apr. 15, 2009) specifically found that:

> if the alleged need for discovery was sufficient to justify extending the stay to non-bankrupt parties, courts would need to extend the stay in most multiparty actions, which is contrary to the limited nature of the "unusual circumstances" exception. Moreover, the "unusual circumstances" exception is geared toward protecting *the debtor* during the pendency of the debtor's bankruptcy proceeding, either by preventing lawsuits against third parties where the debtor is the real party in interest or by allowing certain individuals to focus their attention and time on the debtor's reorganization. Staying an action because of routine discovery needs aids the non-bankrupt co-defendants, not the debtor, and therefore falls outside the scope of the unusual circumstances exception.

33. Here, it is abundantly clear that the preliminary injunction requested is for the aid of non-bankrupt co-defendants in pending abuse actions, not BSA, and therefore, outside the scope of the unusual circumstances exception. *See e.g.,* BSA Brief, p. 25, requesting bankruptcy stay be extended to pending abuse actions where BSA is not even a named defendant.

34. The automatic stay does not extend to non-bankrupt parties merely because the non-bankrupt parties "are in a similar legal or factual nexus with the debtor." Stanford v. Foamex L.P., No. CIV. A. 07-4225, 2009 WL 1033607, at *3 (E.D. Pa. Apr. 15, 2009) (internal citations

7

omitted). "To extend the stay to non-debtors merely because of factual and legal relatedness would be contrary to both the plain text of § 362 and the Third Circuit's reasoning." Id.

35. Although BSA asserts that it is the "real party defendant", and that a judgment against the BSA Related Parties in any of the Pending Abuse Actions would in effect be a judgment or finding against the debtors, there is simply no legal or factual basis for the same. *See* Brief, p. 22.

36. BSA is a legal entity separate and distinct from Local Councils. BSA admits that Local Councils are independently incorporated under the laws of their respective states. *See* BSA Brief, p. 1.

37. Notably absent from BSA's filings is any indication that Local Councils' assets will be considered part of BSA's bankruptcy estate or that Local Councils will be required to submit their assets to this Court's jurisdiction in part of BSA's request for a "global resolution" of the approximately 275 pending abuse action cases.

38. In fact, BSA admits that the Local Councils' have assets separate and apart from BSA. *See* BSA Brief, p. 16.

39. With respect to LG 37 Doe's Action, the non-bankrupt defendant GNF Council has already assured its members that GNF Council has not filed for bankruptcy and that

> The Greater Niagara Frontier Council – which provides programming, financial, facility and administrative support to local units and individual Scouts in our area – is separate and distinct from the national organization. Our camps, properties and all local contributions are controlled by our council. *See* Mark Scott and Marian Hetherly, Local Boy Scouts Program not Tied to National Bankruptcy (February 18, 2020) A copy of said Article is annexed hereto, made part hereof, and designated **Exhibit E.**

40. It is clear, by GNF Council's own statement, that it is not considering itself as one and the same entity as BSA, and it is respectfully submitted that this Court should not arrive at a different result.

41. Local Councils, including GNF Council, should not receive the benefits of a bankruptcy stay, unless they each file their own bankruptcy petition. *See* Kreisler v. Goldberg, 478 F.3d 209, 213-214 (4th Cir. 2009) (Court noted that "[i]t is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity." Court denied debtor's argument that debtor was the real party defendant in a suit against non-bankrupt subsidiary corporation, finding that if that entity wanted the protections afforded under Section 362(a)(1) it must file for bankruptcy).

42. LG 37 Doe, and other victims of child sexual abuse with cases pending against Local Councils should be able to pursue those actions separately and if successful, recover against the Local Councils and their assets.

43. To the extent that BSA argues because of possible "shared" insurance policies, they will be harmed absent a stay of the pending abuse actions, it should be considered on a case by case basis and after litigants have had an opportunity to seek discovery regarding all potential insurance coverage available to the victims of sexual abuse victims, specifically including whether BSA Related Entities have their own separate insurance coverage during the periods of time alleged in the pending abuse actions.

44. BSA's motion for a preliminary injunction and the papers submitted in connection therewith, fail to establish that GNF Council shared insurance coverage with BSA during the period of time alleged in LG 37 Doe's Complaint, namely 1983 to 1987.

9

45. BSA's filings also fail to establish that GNF Council did not maintain its own insurance coverage as it would relate to LG 37 Doe's Action.

46. The mere presence of an insurance policy, which BSA admits has already been substantially depleted, exhausted or settled, should not be a basis for non-bankrupt debtors to benefit from a bankruptcy stay. *See* BSA Brief, p. 29.

47. Therefore, it is respectfully submitted, that BSA has failed to meet its burden of establishing "unusual circumstances" such that this Court may issue an order extending a stay to non-bankrupt co-defendants in pending abuse actions.

### III. BSA FAILED TO MEET ITS BURDEN OF ESTABLISHING ITS ENTITLEMENT TO A PRELIMINARY INJUNCTION UNDER THE TRADITIONAL TEST

48. With respect to the traditional four prong test used to determine whether the court should grant a preliminary injunction, BSA again failed to meet its burden.

49. The Court in In re Am. Film Techs., Inc., 175 B.R. 847, 849 (Bankr. D. Del. 1994), sets forth the four factors the court must consider in deciding whether to grant a preliminary injunction: "(1) the likelihood that the plaintiff will prevail on the merits at a final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is granted; and (4) the public interest." (internal citations omitted).

#### A. BSA HAS FAILED TO ESTABLISH IT WILL SUCCESSFULLY REORGANIZE

50. Here, there has been no showing by BSA that it will ultimately be successful in reorganization.

51. BSA admits that it only filed for Chapter 11 Bankruptcy relief after its former attempts to force a global resolution of pending abuse claims were unsuccessful. BSA Brief, p. 3.

52. It is apparent, through BSA's motion for a preliminary injunction, motion for certain cases to be referred to mandatory mediation, and most recently, motion to fix venue for these pending abuse actions to be the Delaware District Court, that BSA's ultimate goal is to subvert the child sexual abuse victims' ability to pursue their claims in the forum of their choosing and eliminate their ability to pursue their claims against Local Councils.

53. BSA completely ignores the concerns it admits were raised by some counsel for sexual abuse victims in November 2019, namely, that Local Councils have significant abuse liabilities and unrestricted assets and that such assets should also be used to compensate victims. *See* BSA Brief, p. 14.

54. BSA never addresses, much less rectifies, these valid concerns, in its voluminous filings with the Delaware District Court.

55. As such, there is a valid concern, as to whether BSA filed for Chapter 11 bankruptcy relief in good faith.

56. The plaintiffs in the underlying pending abuse actions have additional time to file motions to remand and/or sever in their respective district courts, and it is anticipated the majority, if not all, will oppose BSA's requested relief at this juncture.

57. Thus, it is certainly not known at this juncture whether BSA will be successful in completely undermining the rationale and purpose of the child sexual abuse victim legislation across the country that has allowed these claims to now be filed. *See* Matter of Johns-Manville Corp., 26 B.R. 405, 409 (Bankr. S.D.N.Y. 1983), aff'd sub nom. In re Johns-Manville Corp., 40 B.R. 219 (S.D.N.Y. 1984) (Court denied request for preliminary injunction to non-bankrupt co-defendants, finding that it was not within the Court's power to grant a pervasive extension of the

stay so as to suspend the litigation nationwide and create the co-defendants purported goal of an expedient, efficient and fair compensatory delivery system to asbestos victims).

58.  Therefore, it is respectfully submitted that BSA has failed to meet its burden of establishing a substantial likelihood it will be successful in reorganizing.

### B. BSA HAS MADE NO SHOWING IT WILL BE IRREPARABLY HARMED IF THE PRELIMINARY INJUNCTION IS NOT GRANTED

59.  BSA's conclusory and self-serving claims that it will be irreparably harmed if the requested preliminary injunction is not granted are wholly insufficient for this Court to find irreparable harm.

60.  BSA first claims it will be irreparably harmed based upon *a threat* that continuation of the actions will deplete certain assets due to the existence of some shared insurance policy. *See* BSA Brief, p. 35.

61.  However, as BSA previously admitted, Local Councils have their own assets (*see* BSA Brief, p. 16), and LG 37 Doe submits, as GNF Council is its own independent entity, it may have its own insurance policy to which he can collect against if successful in his Action.

62.  Thus, there is no evidence that continuation of the pending abuse actions as the child sexual molesters and Local Councils that the BSA's insurance policy will be impacted.

63.  BSA next contends that it will be irreparably harmed due to substantial risks of collateral estoppel, record taint and evidentiary prejudice as it could *potentially* face binding judgments that would substantially increase the number and size of claims against its estate without an opportunity to defend itself. *See* BSA Brief, p. 36.

64.  BSA provides no evidence or basis for its bold assertion that it will face binding judgments if the pending abuse actions proceed as to non-bankrupt defendants only.

65.     BSA stresses repeatedly throughout its filings that it is a separate legal entity from Local Councils and makes no reference to an agreement to indemnify Local Councils or under what legal or factual basis it would be responsible for a judgment against a non-bankrupt co-defendant in the pending abuse actions.

66.     Finally, BSA contends that continuation of the pending abuse actions will take away from its reorganization efforts as it will *be forced* to monitor and participate in such litigation. BSA Brief, p. 37.

67.     It is respectfully submitted, that BSA's self-imposed decision to provide counsel and support for separate, independent entities, should not be rewarded by the granting of their requested relief, and certainly does not rise to the level of showing irreparable harm.

### C. LG 37 DOE WILL BE IRREPARABLY HARMED IF THE PRELIMINARY INJUNCTION IS GRANTED

68.     LG 37 Doe, and other victims of child sexual abuse stemming from their involvement with BSA, will be effectively estopped from pursuing their claims in a forum of their choosing, even as to non-bankrupt defendants.

69.     It is clear that BSA's intent in filing this motion for a preliminary injunction is not to grant BSA a "breathing spell", but rather, to stop the filing and prosecution of all pending abuse actions across the nation, even as to non-bankrupt parties, until the cases are transferred to the Delaware District Court. *See* BSA's Notice of (I) Commencement of Adversary Proceeding and Filing of Motion for a Preliminary Injunction by the BSA, (II) Meeting to Consider the Formation of an Official Committee of Creditors and (III) Filing of Motion by the BSA Debtors to Fix Venue for Claims Related to the Bankruptcy Under 28 U.S.C. §§ 157(b)(5) and 1334(b), filed in the United States District Court for the Western District of New York, Case No. 1:20-cv-00217, on March 4, 2020, annexed hereto, made part hereof, and designated **Exhibit F**.

70. If BSA's requested relief is granted, local District Courts, may no longer consider timely motions to remand and/or sever on the impacted cases, as it could be considered prosecution of the action.

71. The underlying plaintiffs of the pending abuse actions will most certainly be irreparably harmed if the ability for them to sue the individuals and institutions liable for the horrendous sexual abuse they sustained is ripped away forever.

72. In New York Court, the Child Victims Act, created a one year window that will ***expire completely prior to the BSA's requested injunction date***.

73. Thus, the harm to the victims of child sexual abuse is real, irreparable and far outweighs the purported harm to BSA.

74. Moreover, the findings that BSA is requesting in this motion for preliminary injunctive relief, will most certainly be used against the victims of child sexual abuse in response to motions to remand and/or sever the pending abuse actions as to the debtor and non-bankrupt co-defendants, as it requires the court to find that BSA and local council are related and will have an impact on BSA's bankruptcy estate, without the victims being given a fair opportunity to litigate that issue in their respective local District Courts.

75. Therefore, the real party that will be collaterally estopped by the granting of this relief without an opportunity to be heard, is the victims of child sexual abuse. The very persons that states across the nation have passed legislation to redress and provide an avenue for closure.

76. BSA, through the numerous avenues to enjoin, consolidate, and mediate the pending abuse actions, is effectively slamming shut the door, which was finally opened to many victims, to hold the child molesters and responsible institutions liable in a court of law.

### D. PUBLIC INTEREST WEIGHS IN FAVOR OF DENYING BSA'S MOTION FOR A PRELIMINARY INJUNCTION

77. BSA claims that the purpose of it filing for Chapter 11 relief and the instant motions is to provide equitable relief to victims of child sexual abuse and to do it expeditiously.

78. However, as set forth herein, the relief requested accomplishes precisely the opposite.

79. For LG 37 Doe, it closes the door that the Child Victims Act opened for him to pursue legal action against The Child Molester, GNF Council and BSA.

80. It seeks to protect independent, solvent corporations who are liable for sexual abuse of innocent children, which is in contravention to the New York State Legislature's justification for passing the Child Victims Act.

81. Thus, it is respectfully submitted that the public interest in seeing institutions liable for sexual abuse of children be held accountable, is far more important, than BSA's self-serving attempt to minimize its negative exposure in the media, force a global resolution on victims of child sexual abuse, even as to non-bankrupt parties, and to rob the victims of their last chance at closure.

### IV. MOTION FOR MANDATORY MEDIATION AND APPOINTMENT OF A JUDUCIAL MEDIATOR IS PREMATURE

82. BSA's motion to have the pending abuse actions referred to mandatory mediation overseen by a judicial mediator in the bankruptcy process, is premature, as the local District Courts have not yet had an opportunity to hear plaintiffs' motions to remand and/or sever.

83. Furthermore, there is no indication or assurance by BSA that all assets for BSA *and* the non-bankrupt BSA Related Parties will be included as funds available to the victims of sexual abuse.

84. Therefore, until plaintiffs have an opportunity to have their motions to remand and/or sever heard in their respective District Courts and BSA provides sufficient proof that all assets for BSA and each of the non-bankrupt co-defendants it seeks to have included in the stay and mediation, the relief requested herein is premature and should be denied.

**WHEREFORE**, it is respectfully requested that the Court deny in its entirety the relief requested by BSA, along with all further relief that this Court deems just and proper.

Laraine Kelley, Esq.

Sworn to before me this 11th day of March, 2020.

Notary Public

ERIN M. NARDOZZI
NOTARY PUBLIC-STATE OF NEW YORK
No. 01NA6241165
Qualified in Erie County
My Commission Expires 05-16-2023