# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: April 15, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: March 31, 2020 at 4:00 p.m. (ET)** |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SIDLEY AUSTIN LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this application (this "Application"), pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to retain and employ Sidley Austin LLP ("Sidley") as attorneys for the Debtors, *nunc pro tunc* to February 18, 2020 (the "Petition Date"). In support of this Application, the Debtors submit the declaration of Jessica C. K. Boelter, a partner of Sidley, attached hereto as **Exhibit B** (the "Boelter Declaration"), and the declaration of Steven P. McGowan, Secretary and General

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Counsel of the BSA, attached hereto as **Exhibit C** (the "McGowan Declaration" and, together with the Boelter Declaration, the "Declarations"), each of which is incorporated herein by reference. In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 19, 2020, the Court entered an order [Docket No. 61] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2. On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") and an official committee of tort claimants (the "Tort Claimants' Committee" and, together with the UCC, the "Committees") pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 141 and 142]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.§ 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and other bases for the relief requested in this Application are section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-2.

## BACKGROUND OF THE DEBTORS

6. The BSA is a federally chartered non-profit corporation under title 36 of the United States Code. The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers. As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission. The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law,[2] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations. Delaware BSA, LLC is a non-profit limited liability company incorporated under the laws of Delaware and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. BSA is the sole member of Delaware BSA, LLC.

---

[2] **Scout Oath**: "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight." **Scout Law**: "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

7. Additional information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## RELIEF REQUESTED

8. By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Sidley as attorneys for the Debtors, *nunc pro tunc* to the Petition Date, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## SIDLEY'S QUALIFICATIONS

9. Sidley is a full-service law firm with a national and international presence. Sidley has more than 2,000 lawyers in twenty offices in the United States, Europe, Asia and Australia. Sidley has expertise in nearly every major substantive area of legal practice, and its clients include leading public companies and privately held businesses in a variety of industries and major nonprofit organizations. Sidley's restructuring practice is comprised of approximately sixty full-time attorneys, plus attorneys in numerous other principal areas of practice who have sub-specialties in restructuring-related issues.

10. Sidley is frequently retained to act as general restructuring counsel in complex chapter 11 cases, including in the following cases (among others): In re Legacy Reserves Inc., Case No. 19-33395 (MI) (Bankr. S.D. Tex. 2019); In re Total Finance Inv. Inc., Case No. 19-03734 (CAD) (Bankr. N.D. Ill. 2019); In re Maremont Corp., Case No. 19-10118 (KJC) (Bankr. D. Del. 2019); In re Mattress Firm, Inc., Case No. 18-12241 (CSS) (Bankr. D. Del. 2018); In re RM Holdco LLC, Case No. 18-11795 (MFW) (Bankr. D. Del. 2018); In re HCR ManorCare,

Inc., Case No. 18-10467 (KG) (Bankr. D. Del. 2018); In re Key Energy Servs., Inc., Case No. 16-12306 (BLS) (Bankr. D. Del. 2016); In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. 2016); In re LDK Solar Sys., Inc., Case No. 14-12384 (PJW) (Bankr. D. Del. 2014); In re Yarway Corp., Case No. 13-11025 (BLS) (Bankr. D. Del. 2013); In re Rodeo Creek Gold Inc., Case No. 13-50301 (MKN) (Bankr. D. Nev. 2013); In re Lee Enters., Inc., Case No. 11-13918 (KG) (Bankr. D. Del. 2011); In re Dynegy Holdings, LLC, Case No. 11-38111 (CGM) (Bankr. S.D.N.Y. 2011); In re Neenah Enters., Inc., Case No. 10-10360 (MFW) (Bankr. D. Del. 2010); In re R.H. Donnelley Corp., Case No. 09-11833 (KG) (Bankr. D. Del. 2009); In re Pliant Corp., Case No. 09-10443 (MFW) (Bankr. D. Del. 2009); In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. 2009); In re Merisant Worldwide, Inc., Case No. 09-10059 (PJW) (Bankr. D. Del. 2009); and In re Tribune Co., Case No. 08-13141 (KJC) (Bankr. D. Del. 2008).

11.     In addition to its extensive restructuring expertise, Sidley is uniquely qualified to represent the Debtors in these chapter 11 cases. Since October 2018, Sidley has been advising the BSA regarding various strategic options for reaching an equitable global resolution of abuse claims against the BSA, including restructuring alternatives. During this time, Sidley has become familiar with the Debtors' non-profit operations, financial affairs, abuse claims history, organizational structure and the potential legal issues that may arise in the context of these chapter 11 cases. In addition, Sidley had a leading role on behalf of the BSA in prepetition discussions with an ad hoc group of attorneys representing a significant number of abuse claimants, the prepetition future claimants' representative, certain of the BSA's insurers, the ad hoc committee of local councils, and other relevant stakeholders regarding a potential global resolution of abuse claims. The Debtors anticipate that each of these constituents will be actively

involved in these cases.  Accordingly, the Debtors believe that Sidley is both well qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and expert manner.  The Debtors could not replace Sidley without incurring significant costs in terms of the time and money that would be required to select and educate replacement counsel.

## SCOPE OF SIDLEY'S PROPOSED SERVICES

12. It is proposed that Sidley be employed by the Debtors to render the following services, among others:

> (a) provide legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of the Debtors' non-profit organization in a manner consistent with their charitable mission;
>
> (b) take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the preparation of objections, as necessary, to relief sought and claims filed against the Debtors' estates;
>
> (c) prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports and other papers in connection with the administration of the Debtors' estates;
>
> (d) advise the Debtors concerning, and prepare responses to, applications, motions, objections, other pleadings, notices and other papers that may be filed by creditors and other parties in interest in these chapter 11 cases;
>
> (e) attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings, and advise the Debtors on the conduct of their chapter 11 cases;
>
> (f) take all necessary actions in connection with a chapter 11 plan and disclosure statement for the Debtors, including the *Chapter 11 Plan of Reorganization for Boy Scouts of American and Delaware BSA, LLC* [Docket No. 20] and related *Disclosure Statement for the Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 21], as each may be amended, supplemented or modified from time to time, and all related agreements and documents, and such further actions as may be required in connection with obtaining confirmation of a plan, the implementation of a chapter 11 plan, and the administration of the Debtors' estates;

6

     (g)     provide legal advice and perform legal services with respect to matters relating to corporate governance, the interpretation, application or amendment of the Debtors' organizational documents, material contracts, and matters involving the fiduciary duties of the Debtors and their officers, directors and managers; and

     (h)     perform all other necessary legal services in connection with the prosecution of these chapter 11 cases.

13. It is necessary for the Debtors to employ attorneys to render the foregoing professional services. Sidley has stated its desire and willingness to act in these cases and render the necessary professional services as attorneys for the Debtors, and the Debtors believe that the retention and employment of Sidley to provide the services described above is warranted.

## **NO DUPLICATION OF SERVICES**

14. Concurrently herewith, the Debtors are filing an application to retain Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") as bankruptcy co-counsel for the Debtors. Sidley and Morris Nichols have advised the Debtors that they will use reasonable efforts to avoid any duplication of services.

15. The Debtors also have filed or intend to file shortly, applications to employ (i) Alvarez & Marsal North America, LLC, as financial advisor, (ii) Omni Agent Solutions, as administrative agent, (iii) Ogletree, Deakins, Nash, Smoak & Stewart, P.C., as special litigation counsel, (iv) Haynes and Boone, LLP, as special insurance counsel, (v) KCIC, LLC, as insurance consultant, and (vi) Bates White LLC, as abuse claims consultant. The Debtors may also file further applications to employ additional professionals in these chapter 11 cases. Rather than resulting in any extra expense to the Debtors' estates, it is anticipated that the efficient coordination of efforts of the Debtors' attorneys and other professionals will promote the efficient prosecution and effective administration of these chapter 11 cases.

**PROFESSIONAL COMPENSATION**

16. Sidley intends to apply to the Court for allowance of compensation earned for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court. Sidley will also make a reasonable effort to comply with the requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"), both in connection with this Application and any applications for compensation and reimbursement of expenses to be filed by Sidley in these chapter 11 cases.

17. Sidley will charge the Debtors for its legal services on an hourly basis at its ordinary and customary rates in effect on the date that such services are rendered and for reimbursement of all costs and expenses incurred by Sidley in connection with its representation of the Debtors. Sidley's billing rates for attorneys who may work on this matter currently range from $550 to $1,525 per hour for attorneys and from $250 to $470 for paraprofessionals. The following attorneys are presently expected to have primary responsibility for providing services to the Debtors (hourly billing rates noted in parentheses): Jessica C. K. Boelter ($1,275); Thomas A. Labuda ($1,275); Michael C. Andolina ($1,100); William A. Evanoff ($1,000); Matthew E. Linder ($955); Karim Basaria ($955); and Blair M. Warner ($885). The Debtors anticipate that additional Sidley attorneys and paraprofessionals will provide services to the Debtors as necessary.[3]

---

[3] Sidley does not anticipate using contract attorneys during these chapter 11 cases. Nevertheless, in the unlikely event that it becomes necessary to use contract attorneys, Sidley will not charge a markup to the Debtors with

18.     Sidley's hourly rates are set at a level designed to fairly compensate Sidley for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. These hourly rates vary with the experience and seniority of each professional and are subject to periodic adjustments to reflect economic and other conditions, with the hourly rate charged being the hourly rate in effect on the date that the services are performed.[4]

19.     Sidley represented the Debtors before the Petition Date using the hourly rates listed above. Such rates are consistent with the rates that Sidley charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case. Moreover, as described in the Boelter Declaration, Sidley's rate structure is appropriate and not significantly different from the rates that Sidley charges for other non-bankruptcy representations or the rates that other comparable counsel would charge to perform substantially similar services.

20.     In addition to the hourly rates set forth above, Sidley customarily charges its clients for the variable costs and expenses incurred in connection with its services, including mail and express mail charges, special- and hand-delivery charges, photocopying charges, travel expenses, transcription costs, expenses for "working meals," computerized research costs, and charges and fees of outside vendors, consultants and service providers.

21.     Sidley charged the Debtors $0.10 per page for standard duplication services prior to these chapter 11 cases and, consistent with Local Rule 2016-2(e), Sidley will charge no more

---

respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Sidley will be subject to connections searches and disclosures in accordance with the applicable requirements of the Bankruptcy Code and Bankruptcy Rules.

[4] For example, like many of its peer law firms, Sidley increases the hourly billing rate of attorneys and paraprofessionals annually in the form of (a) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as that term is used in the U.S. Trustee Guidelines).

than $0.10 per page for standard duplication services in these chapter 11 cases. Sidley does not charge its clients for incoming or outgoing facsimile transmissions.

22. The Debtors require knowledgeable counsel to render these critical professional services, and, as described in the McGowan Declaration, Sidley has substantial expertise and extensive historical knowledge of the factual and legal issues that the Debtors will need to address in these chapter 11 cases. Subject to the Court's approval of this Application, Sidley is willing to serve as attorneys for the Debtors and to perform the services described above.

## COMPENSATION RECEIVED BY SIDLEY FROM THE DEBTORS

23. As set forth in the Boelter Declaration, during the twelve months immediately preceding the Petition Date, Sidley received payments and advances in the aggregate amount of approximately $8,294,711.68 for all services rendered on behalf of the Debtors and expenses incurred in connection with such services.

24. Prior to the Petition Date, Sidley held a retainer of $1.0 million, which retainer amount was ultimately increased to $2.0 million. During the course of Sidley's prepetition representation of the Debtors, Sidley submitted invoices to the Debtors, applied the retainer to the invoiced fees and expenses, and sought and received replenishment of the retainer by the Debtors. During the ninety days immediately preceding the Petition Date, Sidley received payments and advances in the aggregate amount of $4,486,710. After applying against the retainer certain fees and expenses earned and incurred but not reconciled or paid prior to the Petition Date, the balance of the retainer is approximately $125,237.79 as of the date hereof. Although certain additional fees and expenses may have been earned and incurred but not yet reconciled with the retainer held by Sidley, such amounts, if any, would in any event be less than the current balance of the retainer. The remainder of the retainer held by Sidley will be allocated to Sidley's postpetition fees and expenses after such postpetition fees and expenses are allowed

against the Debtors' estates, including pursuant to any interim compensation procedures approved by the Court.

25. In accordance with section 504 of the Bankruptcy Code, Sidley has neither shared nor agreed to share (a) any compensation or reimbursement it has received or may receive with another person, other than with the partners, associates and contract attorneys (if applicable) associated with Sidley, or (b) any compensation or reimbursement another person has received or may receive.

## SIDLEY'S DISINTERESTEDNESS

26. As described in the Boelter Declaration, in connection with its proposed retention by the Debtors in these chapter 11 cases, Sidley searched its electronic database with respect to the Debtors and a list of potential parties in interest in these chapter 11 cases (collectively, the "Potential Parties in Interest"). The Potential Parties in Interest and the results of the search are set forth on **Schedule 1** and **Schedule 2** to the Boelter Declaration, respectively. To the best of the Debtors' knowledge, as disclosed in the Boelter Declaration, (a) Sidley is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Boelter Declaration.

27. Given the large number of parties in interest in these chapter 11 cases and because the information on **Schedule 1** may have changed without Sidley's knowledge and may change during the pendency of the Debtors' chapter 11 cases, Sidley is not able conclusively to identify all relationships or potential relationships with all creditors or other parties in interest in these chapter 11 cases. If any new relevant facts or relationships are discovered or arise, Sidley will

use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## BASIS FOR RELIEF

28.     The Debtors are requesting authority to retain and employ Sidley as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval, may employ one or more attorneys "that do not hold or represent an interest adverse to the estate," and that are "disinterested persons."  11 U.S.C. § 327(a).  A "disinterested person" is a person that (a) is not a creditor, an equity security holder, or an insider of the debtor; (b) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (c) does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.  11 U.S.C. § 101(14).

29.     Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.  Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file "a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1.

30. In general, subject to the requirements of sections 327(a) of the Bankruptcy Code, a debtor in possession is entitled to the counsel of its choosing. See, e.g., In re Congoleum Corp., 426 F.3d 675, 686 (3d Cir. 2005) ("[C]ourts must be cautious about infringing on the right of the debtor to retain counsel of its choice"); see also In re Vouzinas, 259 F.3d 103, 112 (2d Cir. 2001) ("Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel . . . ."). Courts give "great deference" to the debtor in possession's choice of counsel. See In re Enron Corp., Case No. 01-16034, 2002 WL 32034346, at *5 (Bankr. S.D.N.Y. May 23, 2002); see also In re Huntco, Inc., 288 B.R. 229, 232 (Bankr. E.D. Mo. 2002) ("A bankruptcy court . . . should give the debtor in possession significant deference in its selection of counsel to represent it under § 327(a).").

31. The Debtors submit that for all of the reasons stated above and in the Declarations, the retention and employment of Sidley as attorneys for the Debtors is warranted. Sidley is a "disinterested person" as required by section 327(a) of the Bankruptcy Code, does not hold or represent an interest adverse to the Debtors' estates, and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Boelter Declaration.

**NOTICE**

32. Notice of this Application will be provided to (i) the U.S. Trustee; (ii) proposed counsel to the UCC; (iii) proposed counsel to the Tort Claimants' Committee; (iv) counsel to the proposed Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii)

any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief the Court may deem just and proper.

Dated:  March 17, 2020
       Wilmington, Delaware

Respectfully submitted,

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*