**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: April 15, 2020 at 10:00 a.m. (ET)<br>Objection Deadline: March 31, 2020 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF ALVAREZ & MARSAL NORTH
AMERICA, LLC AS FINANCIAL ADVISOR FOR THE DEBTORS AND
DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this application (this "Application"), pursuant to section 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to retain and employ Alvarez & Marsal North America, LLC, together with employees of its affiliates (all of which are wholly-owned by its parent company and employees), its wholly owned subsidiaries, and independent contractors (collectively, "A&M"), as their financial advisor *nunc pro tunc* to February 18, 2020 (the "Petition Date") pursuant to the terms of the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

engagement letter by and between the Debtors, Sidley Austin LLP ("Sidley"), and Alvarez & Marsal Public Sector Services, LLC, an affiliate of A&M, dated and signed as of October 12, 2018 (the "Engagement Letter"),[2] a copy of which is attached hereto as **Exhibit B**, as modified by this Application and the Proposed Order, (ii) approving the terms of A&M's retention and employment, including fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Letter, as modified by this Application and the Proposed Order, and (iii) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Brian Whittman in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Alvarez & Marsal North America, LLC as Financial Advisor for the Debtors and Debtors in Possession, Nunc Pro Tunc to the Petition Date*, (the "Whittman Declaration"), attached hereto as **Exhibit C**, which is incorporated herein by reference.  In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1.     On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 19, 2020, the Court entered an order [Docket No. 61] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

---

[2] The Debtors seek the retention of Alvarez & Marsal North America, LLC ("A&M NA") pursuant to this Application notwithstanding that the Engagement Letter is between A&M NA's affiliate, Alvarez & Marsal Public Sector Services, LLC ("A&M PS"), Sidley, and the Debtors.  A&M NA and the Debtors have agreed that with respect to the retention of A&M NA in these chapter 11 cases, the Engagement Letter shall be deemed to be between A&M NA and the Debtors as if A&M NA were the signatory thereto rather than A&M PS.

2.       On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") and an official committee of tort claimants (the "Tort Claimants Committee" and, together with the UCC, the "Committees") pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 141 and 142]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

3.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.       The statutory and other bases for the relief requested in this Application are section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

## BACKGROUND OF THE DEBTORS

6.       The BSA is a federally chartered non-profit corporation under title 36 of the United States Code. The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers. As a non-profit corporation, the BSA is required to

adopt and carry out a charitable, religious, educational, or other philanthropic mission. The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law,[3] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations. Delaware BSA, LLC ("Delaware BSA") is a non-profit limited liability company incorporated under the laws of Delaware and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. BSA is the sole member of Delaware BSA.

7. Additional information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## RELIEF REQUESTED

8. By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to retain and employ A&M as their financial advisor, *nunc pro tunc* to the Petition Date, pursuant to section 327(a) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, in accordance with the terms of the Engagement Letter, (ii) approving the terms of A&M's retention and employment, including fee and expense structure and the indemnification, contribution, reimbursement, and

---

[3] **Scout Oath**: "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight." **Scout Law**: "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

4

related provisions set forth in the Engagement Letter, as modified by this Application and the Proposed Order, and (iii) granting related relief.

## A&M'S QUALIFICATIONS

9.  In consideration of the size and complexity of their organization, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors will substantially enhance their attempts to maximize the value of their estates. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 proceedings.

10. A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. A&M also has a large public sector practice that specializes in advising non-profit and public sector organizations on performance improvement and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

11. As set forth in the Whittman Declaration, A&M and its senior professionals have extensive experience and expertise in providing interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. Engagements for which A&M has provided services include, but are not limited to: In re Forever 21, Inc., Case No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019); In re PES Holdings, LLC, Case No. 19-11626 (KG) (Bankr. D. Del. Sept. 24, 2019); In re Bristow Grp. Inc., Case No. 19-32713 (DRJ) (Bankr. S.D. Tex. May 11, 2019); In re Southcross Energy

5

Partners, L.P., Case No. 19-10702 (MFW) (Bankr. D. Del. Apr. 1, 2019); In re Imerys Talc Am., Inc., Case No. 19-10289 (LSS) (Bankr. D. Del. Feb. 13, 2019); In re Fairway Energy, LP, Case No. 18-12684 (LSS) (Bankr. D. Del. Nov. 26, 2018); In re Enduro Res. Partners LLC, Case No. 18-11174 (KG) (Bankr. D. Del. May 15, 2018); In re Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D. Va. Oct. 25, 2017); In re Gulfmark Offshore, Inc., Case No. 17-11125 (KG) (Bankr. D. Del. May 26, 2017); In re Bonanza Creek Energy, Inc., Case No. 17-10015 (KJC) (Bankr. D. Del. Jan. 26, 2017); In re La Paloma Generating Co., Case No. 16-12700 (CSS) (Bankr. D. Del. Dec. 28, 2016); In re Erickson Inc., Case No. 16-34393 (HDH) (N.D. Tex. Dec. 15, 2016); In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. June 2, 2016).

12. A&M performed prepetition advisory work for the Debtors, and as a result has acquired a significant amount of knowledge of the Debtors and their organization, including the Debtors' operations, financial affairs, and capital structure. Since A&M's initial engagement on October 12, 2018, the A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' management and other professionals first in an effort to explore the BSA's restructuring options and then in assisting with the significant requirements of these chapter 11 cases. Consequently, A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of these cases. For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases. Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## SCOPE OF SERVICES

13. The A&M Professionals have substantial expertise in the areas discussed above, and, if this Application is approved, will provide services to the Debtors under an order approving this Application. The A&M Professionals will work closely with the Debtors' management and professionals throughout the reorganization process. Among other things, A&M will assist the Debtors with respect to management of the overall restructuring process, the development of ongoing business and financial plans, and supporting restructuring negotiations among the Debtors, their advisors, and their creditors with respect to an overall exit strategy for these chapter 11 cases.

14. A&M may provide the services described in the Engagement Letter as modified by this Application and the Proposed Order, and may provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including, without limitation:

(a) assistance to the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

(b) assistance with the identification and implementation of short-term cash management procedures;

(c) advisory assistance in connection with the development and implementation of key employee compensation and other critical employee benefit programs;

(d) assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

(e) assistance to Debtors' management team and counsel focused on the coordination of resources related to ongoing reorganization efforts;

(f) assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections

      and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(g) attendance at meetings and assistance in discussions with banks and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the U.S. Trustee, other parties in interest and professionals hired by same, and in the planned mediation of abuse-related claims, as requested;

(h) analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

(i) assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these chapter 11 cases, including information contained in the disclosure statement;

(j) assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(k) assistance in the analysis and preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in these chapter 11 cases, including the development of the related tax consequences contained in the disclosure statement;

(l) litigation advisory services with respect to accounting and tax matters, along with expert witness testimony on case related issues as required by the Debtors; and

(m) rendering such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in this proceeding.

Such services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' organization while subject to chapter 11 of the Bankruptcy Code.

## NO DUPLICATION OF SERVICES

15. By separate applications, the Debtors are also seeking to employ various other restructuring professionals. The Debtors do not believe that the services to be rendered by A&M will be duplicative of the services performed by any other professional, and A&M will work with

the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

## PROFESSIONAL COMPENSATION

16. The Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor on the terms and conditions set forth in the Engagement Letter as modified herein in accordance with A&M's customary billing practices.

17. A&M's current standard hourly rates for 2020, subject to annual adjustment at such time as A&M adjusts its rates annually, are as follows:

| Restructuring Advisory Position | Hourly Rate |
| --- | --- |
| Managing Director | $900 – $1,150 |
| Director | $700 – $875 |
| Analyst/Associate | $400 – $675 |
| **Case Management Position** | **Hourly Rate** |
| Managing Director | $850 – $1,000 |
| Director | $675 – $825 |
| Analyst/Consultant | $400 – $625 |

18. In addition, A&M will seek reimbursement for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with these chapter 11 cases, including travel costs, lodging, meals, and messenger and telephone charges. All fees and expenses due to A&M will be billed in accordance with any orders entered by this Court with respect to interim compensation and the relevant sections of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

19. A&M's fee and expense structure is consistent with and typical of compensation arrangements entered into by A&M and other comparable firms that render similar services under similar circumstances. The Debtors believe that A&M's fee and expense structure is

9

reasonable, market-based, and designed to compensate A&M fairly for its work and to cover fixed and routine overhead expenses.

20. A&M received $900,000 as a retainer in connection with preparing for and conducting the filing of these chapter 11 cases (the "Retainer"), as described in the Engagement Letter. As described in the Whittman Declaration, according to A&M's books and records, during the 90 days prior to the Petition Date, A&M received retainers and payments totaling $2,075,001.57, as follows: (i) $224,026.26 on December 10, 2019; (ii) $170,332.04 on December 31, 2019; (iii) $573,187.69 on February 5, 2020; and (iv) $1,107,455.58 on February 11, 2020.

21. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses for services provided to the Debtors prior to the Petition Date, A&M was unable to apply all amounts related to prepetition services to the Retainer prior to the Petition Date. A precise disclosure of the amounts or credits held after the application of all prepetition fees and expenses will be provided in A&M's first report filed regarding compensation earned and expenses incurred.

22. The Debtors and A&M have agreed that any unapplied portion of the Retainer not used to compensate A&M for its prepetition services and reasonable and documented out-of-pocket expenses, which is estimated to be approximately $787,150, will not be segregated by A&M in a separate account and will be held until the end of these chapter 11 cases and applied to A&M's final post-petition billing.

23. A&M shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses in accordance with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any guidelines established by the U.S. Trustee regarding submission and approval of fee applications.

24. Given the numerous issues that the A&M may be required to address in the performance of its services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth herein are reasonable under the standards set forth in section 327 of the Bankruptcy Code.

## **INDEMNIFICATION**

25. As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions contained in the Engagement Letter. Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions during the pendency of these chapter 11 cases as follows:

(a) A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b) the Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of

      the Agreement as modified by this Application and the Proposed Order; and

 (c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Application and the Proposed Order), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M.  All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

26. The terms and conditions of the Engagement Letter, including, but not limited to, the indemnification provisions were negotiated by the Debtors and A&M at arm's length and in good faith.  The indemnification provisions, contained in the Engagement Letter and as modified herein, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

## BASIS FOR RELIEF

27. The Debtors request authority to retain and employ A&M as their financial advisor pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

28. Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR. P. 2014. Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file "a supporting affidavit or verified statement of the professional person and a proposed order for approval." DEL. BANKR. L.R. 2014-1.

29. The Debtors respectfully submit that section 327(a) of the Bankruptcy Code permits them to hire a professional firm like A&M to undertake an advisory role in these chapter 11 cases. Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application. The Debtors submit that the terms and conditions of A&M's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character. Since the Debtors will require substantial assistance with the reorganization process, it is reasonable for Debtors to seek to employ and retain A&M to serve as its financial advisor on the terms and conditions set forth herein. The retention of A&M as financial advisor in these chapter 11 cases is in the best interests of the Debtors' estates, creditors, and parties in interest.

## NOTICE

30. Notice of this Application will be provided to (i) the U.S. Trustee; (ii) proposed counsel to the UCC; (iii) proposed counsel to the Survivors Committee; (iv) counsel to the proposed Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local

Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated: March 17, 2020
       Wilmington, Delaware

Respectfully submitted,

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*