## Exhibit B

### Engagement Letter



**Alvarez & Marsal**
**Public Sector Services, LLC**
Washington Center
1001 G Street NW – Suite 1100 West
Washington, DC 20001
Phone: +1 202 729 2100
Fax: +1 202 729 2101

PRIVILEGED & CONFIDENTIAL
Subject to the Attorney-Client Privilege /
Attorney Work Product Doctrine

October 12, 2018

Jim Conlan
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Dear Mr. Conlan:

This letter confirms and sets forth the terms and conditions of the engagement of Alvarez &
Marsal Public Sector Services, LLC ("A&M") by Sidley Austin LLP ("Sidley"), to provide
certain advisory services, as described below, in connection with Sidley's representation of Boy
Scouts of America (the "Company"), including the scope of the services to be performed and the
basis of compensation for those services. Upon execution of this letter by each of the parties
below and receipt of the retainer described below, this letter will constitute an agreement
between Sidley and A&M which has been accepted and agreed to by the Company (the
"Agreement").

1.    **Description of Services**

(a) A&M shall provide consulting services to Sidley with respect to the Company's
operations, financial affairs and cash management in connection with their efforts in
seeking to review and evaluate possible strategic options relating to certain operations
of the Company. It is anticipated that A&M's activities shall include the following:

(i)     *assist in assessing the present value of certain of BSA's tort system
liabilities;*

(ii)    *assist in establishing cash flows by legal entity;*

(iii)   *assist in reviewing legal entity balance sheets;*

(iv)    *assist in assessing strategic alternatives; and*

(v)     *assist in other activities as are approved by Sidley, the Company's senior
executives (the "Responsible Officer(s)"), and agreed to by A&M.*

In rendering its services to Sidley, A&M will report directly to Sidley and will make
recommendations to and consult with Sidley, and/or the Responsible Officers.

**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 2

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates, and subsidiaries. Such affiliates are wholly owned by A&M's parent company and employees. A&M shall be responsible for the performance of any and all services by its affiliates and subsidiaries. A&M shall not enlist subcontractors without the prior written consent of Sidley and the Company being first obtained in each instance.

A&M personnel providing services to Sidley may also work with other A&M clients in conjunction with unrelated matters.

## 2. <u>Information Provided by or on behalf of the Company and Forward Looking Statements</u>

The Company and Sidley shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably request in connection with the services to be provided to Sidley on behalf of the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company, its affiliates or Sidley and otherwise reviewed by A&M in connection with the services performed for Sidley on behalf of the Company. The Company and Sidley acknowledge and agree that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by Sidley or Responsible Officers to do so.

Sidley and the Company understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, A&M will be relying on information provided by or on behalf of Sidley, the Company and/or its affiliates in the preparation of those projections and other forward-looking statements.

## 3. <u>Limitation of Duties</u>

A&M makes no representation or guarantee that, inter alia, (i) a successful strategic alternative can be formulated for the Company (ii) any strategic alternative presented to Sidley or any Responsible Officers will be more successful than all other possible strategic alternatives, or (iii) if formulated, that any proposed strategic alternative or any



**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 3

valuation will be accepted by any of the Company's creditors, shareholders or other constituents.  Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction.  The Company and Sidley accept and acknowledge that A&M has not made (and will in no event be deemed to make) any warranties or guarantees of any nature with respect to the results, outcome or final developments in this matter or with respect to the economic, financial or other results which the Company may experience as a result of the services A&M is providing.

Any valuation report or work product provided by A&M (each, a "Report") shall be in such customary form and with such usual and customary qualifications as pertain to similar assessments for similar matters, including, among other things, that the Report speaks as of the date delivered; that A&M has relied upon the information furnished to it by representatives of the Company and other appropriate parties, as well as information that is publicly available; and that A&M has provided such Report based on certain assumptions provided by the Company and A&M accepts no responsibility for the adequacy of such assumptions.

The Company and Sidley understand that A&M is not undertaking to provide any legal, regulatory, accounting, insurance, tax or similar professional advice and that A&M's services will not be used for guidance in such matters.

4.    <u>**Compensation**</u>

(a) A&M will be compensated for the time spent by its personnel based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $650-1,050 |
| Senior Directors | $550-800 |
| Directors | $500-725 |
| Analysts/Associates | $325-625 |

Such rates shall not be adjusted during the first twelve (12) month period of the Agreement,but will be subject to reasonable adjustment annually thereafter at such time(s) as A&M adjusts its rates generally.

A&M shall provide a project budget containing estimates of time and expense before commencing each project under this Agreement.  A&M will keep Company and Sidley apprised to the extent a particular work stream extends over the projected time and cost to complete.



**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 4

      (b) In addition, A&M will be reimbursed by the Company for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, and meals with a cap of $2,000 per person per week and duplicating, messenger and telephone charges. Expenses in excess of $2,000 per person per week must be approved by BSA personnel. All fees and expenses will be billed to the Company monthly or, at A&M's discretion, more frequently. Invoices are payable by the Company upon receipt. All charges for expenses must be accompanied by appropriate documentation supporting such expenses.

      (c) The Company shall promptly remit to A&M a retainer in the amount of $100,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.

      (d) In no event shall Sidley be liable in any capacity for any amounts owed to A&M pursuant to this Agreement.

**5.**     **Term**

      (a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either Sidley, the Company and/or A&M for any reason without cause by written notice to the other parties.

      (b) A&M normally does not withdraw from an engagement unless its client misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

      (c) On termination of the Agreement, any fees and expenses due to A&M for services rendered through the termination date shall be remitted promptly by the Company (including fees and expenses that accrued prior to but are invoiced subsequent to such termination).

      (d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.



**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 5

6.    **Relationship of the Parties**

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of Sidley or the Company and the personnel and agents of A&M are not entitled to any of the benefits that Sidley or the Company provides for their respective employees. Sidley and the Company acknowledge and agree that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.    **No Third Party Beneficiary**

Sidley and the Company acknowledge that all advice (written or oral) provided by A&M to Sidley and/or the Company in connection with this engagement is intended solely for the benefit and use of Sidley and the Company (limited to the Company's managers, Boards and executives) in considering the matters to which this engagement relates. Sidley and the Company agree that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

8.    **Conflicts**

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware, although we note that Sidley currently represents A&M and/or its affiliates in matters unrelated to the Company and Kelly Conlan, who is involved in this engagement and is an Managing Director with an A&M affiliate is also the spouse of Jim Conlan who is the Chairman of Sidley's restructuring practice. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained.

**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 6

The Company acknowledges and agrees that the services being provided hereunder are being provided to Sidley on its behalf and hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any affiliate of the Company.

9.    **Confidentiality / Non-Solicitation**

A&M shall keep as confidential all non-public information received from Sidley and the Company in conjunction with this engagement, except: (i) as requested by the Company or Sidley; (ii) as required by legal proceedings; or (iii) as otherwise approved in writing in advance by Sidley or the Company. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision. The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10.    **Indemnification and Limitations on Liability**

The attached indemnification and limitation on liability agreement ("Indemnity Agreement") is incorporated herein by reference and shall be executed upon the acceptance of this Agreement. Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

As to the services that A&M provides to Sidley and/or the Company under or arising from this Agreement, the total aggregate liability of A&M to Sidley and/or the Company and their respective successors and assigns, shall be limited to the actual damages incurred by such entity and their successors or assigns, respectively. In no event will A&M be liable to Sidley or the Company their successors or assigns for consequential, special or punitive damages, including loss of profit, data, business or goodwill. Further, in no event shall the total aggregate liability of A&M under this Agreement to Sidley and

**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 7

the Company and their successors and assigns, exceed the total amount of fees received and retained by A&M hereunder, except to the extent resulting primarily from A&M's gross negligence or willful misconduct.

11.    **Miscellaneous**

This Agreement (together with the attached Indemnity Agreement), including, without limitation, the construction and interpretation of thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of Texas, without regard to principles of conflict of law that would defer to the laws of another jurisdiction.  Sidley and the Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. Sidley and the Company and A&M agree, to the extent permitted by applicable law, that any Federal Court sitting within the Northern District of Texas shall have exclusive jurisdiction over any litigation arising out of this Agreement; to submit to the personal jurisdiction of the Courts of the United States District Court for the Northern District of Texas; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of Texas for any litigation arising in connection with this Agreement.

This Agreement shall be binding upon A&M, Sidley and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee.  This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by Sidley, the Company and A&M.

**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 8


If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.



ALVAREZ & MARSAL PUBLIC SECTOR SERVICES, LLC

By: _____
Name: Erin E. Covington
Title: Managing Director



AGREED TO AND ACCEPTED:

Sidley Austin LLP


By: _____
        Name: Jim Conlan
        Title: Partner


AGREED TO AND ACCEPTED:

Boy Scouts of America


By: _____
        Name: Steve McGowan
        Title: General Counsel



**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 9

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated as of October 12, 2018 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal Public Sector Services, LLC ("A&M") and Sidley Austin LLP, on behalf of Boy Scouts of America (the "Company").

A.      The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the reasonable costs for counsel or others in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, to the extent caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's, criminal action, gross negligence or willful misconduct. The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination,



**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 10

deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control, in each of the foregoing instances pursuant to a subpoena or other compulsory legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness so that the Company may assume and control the defense of same; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  Upon the Company's receipt of demand for indemnification from an Indemnified Party, it shall promptly notify the Indemnified Party of the Company's intention to assume the defense of such matter(s) at its own cost and expense with counsel reasonably acceptable to the Indemnified Party. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If in any action, proceeding or investigation in which an Indemnified Party is a party (a) and counsel provided by the Company or other counsel to the Indemnified Party determines that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, or (b) the Company does not assume the defense of such claims, then in the case of either (a) or (b) the Indemnified Party shall be entitled to assume defense of such claims with separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant

**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 11

equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by or on behalf of the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.



**PRIVILEGED & CONFIDENTIAL**
Sidley Austin LLP
October 12, 2018
Page 12

SIDLEY AUSTIN LLP

By: _____
      Name: Jim Conlan
      Title: Partner

BOY SCOUTS OF AMERICA

By: _____
      Name: Steve McGowan
      Title: General Counsel

ALVAREZ & MARSAL Public Sector
Services, LLC

By: _____
      Name: Erin Covington
      Title:  Managing Director

