## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: April 15, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: March 31, 2020 at 4:00 p.m. (ET)** |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
### AUTHORIZING THE RETENTION AND EMPLOYMENT OF KCIC, LLC
### AS INSURANCE AND VALUATION CONSULTANT FOR THE DEBTORS AND
### DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this application (this "Application"), pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to retain and employ KCIC, LLC ("KCIC") to serve as insurance and valuation consultant for the Debtors, *nunc pro tunc* to February 18, 2020 (the "Petition Date") pursuant to the terms and conditions of the retention agreement by and between the Debtors, Haynes and Boone, LLP ("Haynes and Boone"), and KCIC, dated as of April 10, 2018, as supplemented by

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

that certain rate adjustment schedule, dated as of December 19, 2019 (together, the "Retention Agreement"),[2] a copy of which attached hereto as **Exhibit B**, (ii) approving the terms of KCIC's retention and employment, including the fee and expense structure, reimbursements, and related provisions set forth in the Retention Agreement, and (iii) granting certain related relief.   In support of this Application, the Debtors submit the *Declaration of Elizabeth Hanke in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of KCIC, LLC as Insurance and Valuation Consultant for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date* (the "Hanke Declaration"), attached hereto as **Exhibit C** and incorporated herein by reference.   In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").    The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 19, 2020, the Court entered an order [Docket No. 61] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2.      On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") and an official committee of tort claimants (the "Tort Claimants' Committee" and, together with the

---

[2] Any references to, or summaries of, the Retention Agreement in this Application are qualified by the express terms of the Retention Agreement, which shall govern if there is any conflict between the Retention Agreement and such summaries referenced herein.

UCC, the "<u>Committees</u>") pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 141 and 142]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and other bases for the relief requested in this Application are section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2.

## **<u>BACKGROUND OF THE DEBTORS</u>**

6.      The BSA is a federally chartered non-profit corporation under title 36 of the United States Code. The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers. As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission. The BSA's mission is to prepare young people for life by instilling in them the values of the Scout

Oath and Law,[3] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations. Delaware BSA, LLC ("Delaware BSA") is a non-profit limited liability company incorporated under the laws of Delaware and exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. BSA is the sole member of Delaware BSA.

7. Additional information regarding the Debtors' non-profit operations, capital structure, and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

<u>**RELIEF REQUESTED**</u>

8. By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (i) authorizing the Debtors to retain and employ KCIC to serve as insurance and valuation consultant *nunc pro tunc* to the Petition Date, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, and in accordance with the terms and conditions set forth in the Retention Agreement, (ii) approving the terms of KCIC's retention and employment, including the fee and expense structure, the reimbursements, and related provisions set forth in the Retention Agreement, and (iii) granting certain related relief.

---

[3] **Scout Oath**: "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight." **Scout Law**: "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

## KCIC'S QUALIFICATIONS AND SCOPE OF SERVICES

9.     KCIC is a nationally recognized management consulting and technology firm that, among other things, assists companies in a variety of industries manage potential mass tort liability.  KCIC has broad experience in and a deep understanding of the mass tort system and the insurance industry and has particular expertise allocating liabilities to insurance policies.  KCIC has also pioneered the use of database technology to evaluate insurance policies and allocate estimated potential tort liability to insurance coverage.  KCIC's services include, among other things, insurance billing and policy analysis, coverage valuation, economic modeling, data migration and analysis, claims administration, and the maintenance of Ligado, an online claims system.  KCIC regularly provides estimates of tort liability for financial reporting, reserving, and insurance purposes, and its principals often testify in disputes concerning, among other things, insurance industry reorganizations, bad faith, allocation, and proof of exhaustion.  Additionally, KCIC's professionals have assisted, advised, or been retained as insurance and valuation consultants in a variety of bankruptcy cases involving issues relating to mass tort claims, including most recently in In re Imerys Talc Am., Inc., Case No. 19-10289 (LSS) (Bankr. D. Del. Mar. 19, 2019).

10.     KCIC has provided insurance consulting services to the BSA under the direction of Haynes and Boone since April 2018.  For example, KCIC has reviewed hundreds of the BSA's general liability insurance policies and captured key terms, conditions, and exclusions in a database.  This review has included an analysis of insurance policies to capture whether local councils and chartered organizations are covered under the BSA's policies.  Finally, KCIC has reviewed and analyzed claims information from Riskonnect, a risk management database, compared to loss runs from insurance companies, and worked to determine the current level of exhaustion across the BSA's policies.  These analyses are stored within KCIC's proprietary

databases.  KCIC has also produced graphical coverage charts to assist the Debtors and their

counsel with understanding the scope and availability of insurance.  Accordingly, KCIC is well-

qualified, well-versed in the Debtors' insurance programs, and uniquely able to provide

insurance consulting services for the Debtors in an expert and efficient manner.

11.    Under the supervision of Haynes and Boone, the Debtors anticipate that the

professional services that KCIC will provide during these chapter 11 cases (the "Insurance

Services") include the following:

> (a)    analyze exhaustion/erosion information, including assembly and analysis of insurance and claims information;
>
> (b)    analyze historical coverage, including but not limited to collecting and capturing key provisions of the Debtors' insurance policies using KCIC's proprietary database;
>
> (c)    collect and capture key provisions of local councils' insurance policies using KCIC's proprietary database;
>
> (d)    perform allocations of liability to insurance policies under various modeling assumptions;
>
> (e)    coordinate with other professionals regarding allocation modeling for liability projections;
>
> (f)    create reports and other visual representations of compiled data and analysis thereof; and
>
> (g)    assist in the development of trust distribution procedures that reflect the Debtors' insurance assets.

The Debtors require a knowledgeable consultant to provide these critical Insurance Services in

these chapter 11 cases.  The Debtors will rely on KCIC's historical knowledge and analyses to

assist them in efficiently resolving insurance and coverage exhaustion issues in these chapter 11

cases.  The resolution of these issues will directly impact the negotiation, formation and funding

of a compensation trust and the confirmation of a chapter 11 plan of reorganization.  KCIC's

professionals have decades of experience assisting policyholders, including those in bankruptcy,

with these and related issues and, by virtue of their prepetition understanding of the Debtors' insurance policies, are uniquely qualified to continue providing the Insurance Services to the Debtors.  Subject to the Court's approval of this Application, KCIC is willing to serve as the Debtors' insurance and valuation consultant and to perform the services described above.

## NO DUPLICATION OF SERVICES

12.    By separate applications, the Debtors are also seeking to employ various other restructuring professionals.  The Debtors do not believe that the services to be rendered by KCIC will not duplicate the services performed by any other professional, and KCIC will work with the Debtors' special insurance counsel, Haynes and Boone, and the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

## PROFESSIONAL COMPENSATION

13.    The Debtors propose to employ and retain KCIC to serve as the Debtors' insurance and valuation consultant on the terms and conditions set forth in the Retention Agreement as modified herein in accordance with KCIC's customary billing practices.

14.    KCIC's current standard hourly rates for 2020 are as follows:

| Title | Hourly Rate |
|---|---|
| President – Expert Testimony | $750 |
| President | $605 |
| Vice President | $530 |
| Senior Manager | $475 – $515 |
| Manager | $400 – $440 |
| Senior Consultant | $300 – $385 |
| Consultant | $180 – $270 |
| Analyst | $120 – $170 |

15. KCIC also intends to seek reimbursement for the reasonable out-of-pocket expenses of its professionals, including, without limitation, travel, electronic invoicing charges from third party vendors, and other case-specific charges. All fees and expenses due to KCIC will be billed in accordance with any orders entered by this Court with respect to interim compensation and the relevant sections of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

16. KCIC's fee and expense structure is consistent with and typical of compensation arrangements entered into by KCIC and other comparable firms that render similar services under similar circumstances. The Debtors believe that KCIC's fee and expense structure is reasonable, market-based, and designed to compensate KCIC fairly for its work.

17. As described in the Hanke Declaration, KCIC received $20,000 as a retainer in connection with preparing for these chapter 11 cases. According to KCIC's books and records, during the ninety days immediately preceding the Petition Date, KCIC received payments totaling $113,658.09, as follows: (i) $13,022.00 on November 29, 2019; (ii) $4,347.50 on December 23, 2019; (iii) $40,783.59 on February 4, 2020; (iv) $32,239.00 on February 4, 2020; (v) $18,810.50 on February 13, 2020; and (vi) $4,455.50 on February 13, 2020.

18. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses, KCIC incurred, but did not bill, certain fees and reimbursable expenses in connection with services provided to the Debtors prior to the Petition Date in amounts equal to $1,549.00. Approval is sought from this Court for KCIC to apply these amounts to the retainer. Upon entry of an order approving the relief requested herein, the Debtors will not owe KCIC any sums for prepetition services.

19. The Debtors and KCIC have agreed that any unapplied portion of the retainer not used to compensate KCIC for its prepetition services and reasonable and documented out-of-

pocket expenses, which is estimated to be approximately $18,451.00, will be segregated by KCIC in a separate account and will be held until the end of these chapter 11 cases and applied to KCIC's final post-petition billing.

20.     The Debtors believe that the compensation structure described above and set forth in the Retention Agreement is comparable to compensation generally charged by insurance and valuation consultants of similar structure to KCIC for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtors believe that the compensation structure is consistent with KCIC's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in these cases.

21.     KCIC will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any guidelines established by the U.S. Trustee regarding submission and approval of fee applications, and any other applicable procedures and order of this Court.

22.     Except as described herein, no commitments have been made or received by KCIC, nor any member thereof, as to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and orders of this Court. KCIC has not shared or agreed to share any of its compensation from the Debtors with any other person, other than principals and employees of KCIC, as permitted by section 504 of the Bankruptcy Code.

### KCIC'S DISINTERESTEDNESS

23.     KCIC has informed the Debtors that as of the date hereof, except as set forth in the Hanke Declaration attached hereto as **Exhibit C**, KCIC: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the

foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee (the "U.S. Trustee"); (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code. Accordingly, the Debtors believe that KCIC is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

24.     KCIC will review its files periodically during the pendency of these chapter 11 cases to ensure that no connections or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise in such review, KCIC will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

## BASIS FOR RELIEF

25.     The Debtors request authority to retain and employ KCIC as their insurance and valuation consultant pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

26.     Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.  Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file "a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R.  2014-1.

27.    The Debtors submit for all of the reasons stated above and in the Hanke Declaration, that section 327(a) of the Bankruptcy Code permits them to hire a professional firm like KCIC to undertake an insurance consulting role in these chapter 11 cases.  Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.

28.    The Debtors submit that the terms and conditions of KCIC's retention as described herein, including the proposed compensation terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  Since the Debtors will require substantial assistance with respect to insurance issues arising in the reorganization process, it is reasonable for the Debtors to seek to employ and retain KCIC to serve as their insurance and valuation consultant on the terms and conditions set forth herein.  The retention of KCIC as insurance and valuation consultant in these chapter 11 cases is in the best interests of the Debtors' estates, creditors, and parties in interest.

## NOTICE

29.    Notice of this Application will be provided to (i) the U.S. Trustee; (ii) proposed counsel to the UCC; (iii) proposed counsel to the Tort Claimants' Committee; (iv) counsel to the proposed Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii)

any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated:  March 17, 2020
       Wilmington, Delaware

Respectfully submitted,

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*