**<u>Exhibit C</u>**

**Retention Agreement**

# STANDARD SERVICES AGREEMENT

This Agreement is entered into as of January 13, 2020, between Omni Agent Solutions ("Omni") and Boy Scouts of America and any applicable subsidiaries or affiliates (collectively, "BSA") in preparation of, and in connection with, BSA's potential chapter 11 case(s). The parties hereto agree as follows:

## Terms and Conditions

I. SERVICES

    (a) Omni will make itself available to BSA, as requested, for the purposes of assisting BSA with pre- and post-petition case administration matters including data entry, preparation and management of the creditor matrix, preparation of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website, and any other services as may be requested by BSA or otherwise required by applicable law, governmental regulations or court rules or orders (collectively, the "Services").

    (b) BSA acknowledges and agrees that Omni will often take direction from BSA's representatives, employees, agents and/or professionals (individually, a "BSA Party" and, collectively, the "BSA Parties") with respect to providing Services hereunder. The parties agree that Omni may rely upon, and BSA agrees to be bound by, any requests, advice or information provided by BSA Parties to the same extent as if such requests, advice or information were provided by BSA.

    (c) In no event shall Omni's Services constitute or contain legal advice or opinion, and neither Omni nor its personnel shall be deemed to practice law hereunder

II. RATES

    (a) The services to be rendered by Omni will be billed at rates ranging from $25.00 to $185.00 per hour as per the rate structure attached hereto and incorporated herein by reference (the "Rate Structure"), subject to previously agreed upon discounts, if any. BSA agrees to pay all of Omni's fees, charges and out-of-pocket costs relating to the Services it provides on behalf of BSA pursuant to this Agreement.

    (b) Rates may be adjusted annually on January 2nd of each year and are subject to increases not to exceed ten (10%) percent per annum. Omni shall provide sixty (60) days prior written notice of any such proposed increases.

    (c) Omni shall be compensated on a monthly basis for services it performs on behalf of BSA during the preceding calendar month. Invoices are due and payable upon receipt. If any amount is unpaid as of thirty (30) days after delivery of an invoice,

BSA agrees to pay a late charge equal to one and a half (1.5%) percent of the total amount unpaid every 30 days. Notwithstanding anything herein to the contrary, in the event of a chapter 11 filing, all payments to Omni will be in accordance with applicable bankruptcy law and any orders of the bankruptcy court.

(d) Omni may require an advance or direct payment from BSA of an individual expense, or a group of related expenses, that are expected to exceed $7,500.

(e) Upon execution of this Agreement, BSA shall pay Omni a retainer of $50,000 (the "Retainer"). Omni may use the Retainer against all prepetition fees and expenses, which Retainer shall then be replenished as promptly as practicable by BSA to its original amount. At Omni's discretion, the Retainer may then be applied to the payment of the final invoice from Omni under and pursuant to this Agreement (the "Final Invoice"), or to any other invoice. Except with respect to the Final Invoice, upon notice from Omni to BSA of the application of some or all of the Retainer, BSA shall replenish the Retainer as promptly as practicable to its original amount. Omni shall return to BSA any amount of the Retainer that remains following application of the Retainer to the payments of unpaid fees and expenses hereunder.

(f) BSA shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of BSA, notwithstanding how such taxes may be designated, levied, or based. This provision is intended to include sales, use, and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Omni.

(g) BSA shall pay to Omni any actual charges (including fees, costs and expenses as set forth in the Rate Structure) related to, arising out of, or resulting from, any BSA error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Rate Structure.

(h) Payments to Omni for services rendered under the terms of this Agreement may be remitted by BSA using either or both of the following methods:

    (i) **Wire Transmission**
    Bank Name: East West Bank
    ABA. 322070381
    Account Number: 5400008002
    Account Name: Omni Management Group, Inc.

    (ii) **Check**
    Omni Agent Solutions
    c/o Accounts Receivable
    5955 De Soto Avenue
    Suite 100
    Woodland Hills, CA 91367

III. RETENTION IN BANKRUPTCY CASE

(a) If BSA commences a case pursuant to the U. S. Bankruptcy Code (the "Code"), BSA shall timely file applications with the bankruptcy court to retain Omni as claims and noticing agent pursuant to 28 U.S.C. § 156(c), and, where applicable, as administrative agent pursuant to section 327(a) of the Code for all Services that fall outside the scope of 28 U.S.C. § 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to Omni.

(b) If any BSA chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Omni will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

IV. CONFIDENTIALITY

(a) Each of Omni and BSA, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided under this Agreement; provided, however, that if any such information was (i) publicly available without a breach by the receiving party, (ii) already in the receiving party's possession or known to it and was received from a third party that, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party, (iii) independently developed, (iv) lawfully obtained from a third party who, to the knowledge of the receiving party, does not have a duty of confidentiality to the disclosing party or (v) required to be disclosed by law, then, subject to clause (b) below, a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to produce any confidential information pursuant to an order of any court, governmental agency or other regulatory body, it may, upon not less than five (5) business days written notice to the other party, release the required information.

V. PROPERTY RIGHTS

(a) The parties understand that the software programs and other materials furnished by Omni pursuant to this Agreement and/or developed during the course of this Agreement by Omni are the sole property of Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines and documentation. BSA agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement. BSA further agrees that any ideas, concepts, know-how or techniques relating to data processing or Omni's performance of its services developed during the course of its Agreement by Omni shall be the exclusive property of Omni.

Fees and expenses paid by BSA do not vest in BSA any rights in Omni's property. Such property is only being made available for BSA's use during and in connection with the Services provided by Omni hereunder.

(b) Upon BSA's request at any time while this Agreement is in effect, Omni shall immediately deliver to BSA and/or BSA's retained professionals, at BSA's expense, any or all of the non-proprietary data and records held by Omni pursuant to this Agreement, in the form requested by BSA.

VI.  BANK ACCOUNTS

At the request of BSA and its officers or authorized representatives, Omni is authorized to establish accounts with financial institutions in the name of and as agent for BSA to facilitate distributions pursuant to a chapter 11 plan or other transaction.

VII.  COMPANY DATA

(a) BSA is responsible for, and Omni does not verify, the accuracy of the programs, data and other information it or any BSA Party submits for processing to Omni and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, the "SOFAs and Schedules"). Omni bears no responsibility for the accuracy and content of the SOFAs and Schedules, and BSA is deemed hereunder to have approved and reviewed all of the SOFAs and Schedules filed on its behalf.

(b) BSA agrees, represents and warrants to Omni that before delivery of any information to Omni: (i) BSA has full authority to deliver such information to Omni; and (ii) Omni is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Omni by BSA may be retained by Omni until the Services provided hereunder are paid in full. BSA shall remain liable for all fees and expenses incurred by Omni under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Omni. Any such disposal shall be in a manner requested by or acceptable to BSA; provided that if BSA has not utilized Omni's Services for a period of ninety (90) days or more, Omni may dispose of any such materials, and be reimbursed by BSA for the expense of such disposition, after giving BSA thirty (30) days written notice. BSA agrees to use commercially reasonable efforts to initiate and maintain backup files that would allow BSA to regenerate or duplicate all programs, data or information provided by BSA to Omni.

(d) If Omni is retained pursuant to bankruptcy court order, disposal of any BSA data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

VIII. TERM AND TERMINATION

(a) This Agreement shall remain in effect until terminated by either party: (i) on thirty (30) days prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein). "Cause" means (i) bad faith, gross negligence, or willful misconduct of Omni that causes material harm to BSA's restructuring under chapter 11 of the Code, (ii) the failure of BSA to pay Omni's invoices for more than sixty (60) days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Omni where Omni reasonably believes in its sole discretion, following consultation with BSA and/or BSA's professionals, it will not be paid, where delay in payment is due to pending approval and allowance of such amounts by the bankruptcy court during BSA's chapter 11 case or following conversion to a chapter 7 case.

(b) If this Agreement is terminated after Omni is retained pursuant to bankruptcy court order, BSA shall promptly seek entry of a bankruptcy court order discharging Omni of its duties under such retention, which order shall be in form and substance reasonably acceptable to Omni.

(c) If this Agreement is terminated, BSA shall remain liable for all amounts then accrued and/or due and owing to Omni hereunder and, following payment of such amounts, Omni shall promptly provide BSA with to all materials and deliverables that are in its then-current state of completion.

(d) If this Agreement is terminated, Omni shall coordinate with BSA and, to the extent applicable, the clerk of the bankruptcy court, to maintain an orderly transfer of record keeping functions, and Omni shall provide the necessary staff, services and assistance required for such an orderly transfer. BSA agrees to pay for such Services pursuant to the Rate Structure.

IX. NO REPRESENTATIONS OR WARRANTIES

Omni makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

X. INDEMNIFICATION

(a) To the fullest extent permitted by applicable law, BSA shall indemnify and hold harmless Omni and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (each, an "Indemnified Party," and collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including,

without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Omni's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Omni and BSA shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the services provided under and pursuant to the Agreement.

(c) BSA's indemnification of Omni hereunder shall exclude Losses resulting from Omni's gross negligence or willful misconduct.

(d) BSA's indemnification obligations hereunder shall survive the termination of this Agreement.

XI. LIMITATIONS OF LIABILITY

Except as expressly provided herein, Omni's liability to BSA for any Losses, unless due to Omni's gross negligence or willful misconduct, shall be limited to the total amount paid by BSA for the portion of the particular work that gave rise to the alleged Loss. In no event shall Omni's liability to BSA for any Losses arising out of this Agreement exceed the total amount actually paid to Omni for services provided under and pursuant to this Agreement. Moreover, in no event shall Omni be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the services provided under and pursuant to this Agreement.

XII. SYSTEM IMPROVEMENTS

Omni reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminals and other equipment, and the Omni database serving BSA, so long as any such changes do not materially interfere with ongoing Services provided to BSA in connection with BSA's pending bankruptcy case.

XIII. CHOICE OF LAW

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

XIV ARBITRATION

Any dispute arising out of or relating to this Agreement or the breach thereof shall

be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. There shall be one arbitrator named in accordance with such rules. The arbitration shall be conducted in the English language in New York in accordance with the United States Arbitration Act. Notwithstanding the foregoing, during the pendency of any applicable chapter 11 case(s) of BSA, any disputes related to this Agreement shall be decided by the bankruptcy court with jurisdiction over the chapter 11 case(s).

XV. GENERAL

(a) Complete agreement. Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) Severability If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) Modification. This Agreement may be modified only by a writing duly executed by an authorized representative of BSA and an officer of Omni.

(d) Assignment. This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that either party may assign this Agreement to a wholly-owned subsidiary or affiliate or to an entity which has succeeded to all or substantially all of the business or assets of a party without the other party's consent, provided that the assigning party provides adequate assurance of performance by the proposed assignee.

(e) Counterparts. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

(f) Force Majeure. Whenever performance by Omni of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Omni's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

(g) Location services. BSA will use its best efforts to cooperate with Omni at BSA's facilities if any portion of the Services require Omni's physical presence.

(h) Non-solicitation. Each party agrees that neither it nor any of its subsidiaries shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of the other party during the term of this Agreement and for a period of six (6) months after termination thereof unless the other party provides prior written consent to such solicitation or retention; provided, however, that the foregoing provisions will not prevent either party from hiring or seeking to hire any such person who responds to general advertising or a general solicitation not targeted to the employees of the other party.

(i) Independent contractors. BSA and Omni are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

(j) Attorney's fees. In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

XVI. NOTICING

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Omni:  Omni Agent Solutions
5955 De Soto Avenue
Suite 100
Woodland Hills, CA 91367
Tel: (818) 906-8300
Attn: Brian K. Osborne, Pres. & CEO
Email: Bosborne@omniagnt.com

If to BSA:  Boy Scouts of America
1325 West Walnut Hill Lane
P.O. Box 152079
Irving, Texas 75015-2079
Attn: Steven P. McGowan, General Counsel
Steve.mcgowan@scouting.org

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

OMNI AGENT SOLUTIONS

By: _____
Name: Paul Deutch
Title:  Senior Vice President

Agreed and Accepted this 15th day of January 2019.

BOY SCOUTS OF AMERICA

By: _____
Name: Steven P. McGowan
Title: General Counsel

# 2019 Rate Sheet



| Hourly Rates for Standard and Custom Services | RATE / COST |
|---|---|
| Analyst | $35.00 - $50.00 per hour |
| Consultants | $65.00 - $140.00 per hour |
| Senior Consultants | $145.00 - $165.00 per hour |
| Solicitation and Equity Services | $185.00 per hour |
| Technology/Programming | $85.00 - $135.00 per hour |

| Printing and Noticing Services | RATE / COST |
|---|---|
| Copy | $.10 per image |
| Document folding and insertion | No Charge |
| Labels/Envelope printing | $.035 each |
| E-mail noticing | No Charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.10 per image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | Varies by size |

| Newspaper and Legal Notice Publishing | RATE / COST |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

| Claims Management | RATE / COST |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.10 per image |
| Remote Internet access for claims management | |
| Setup | No Charge |
| Access | No Charge |

| Creditor Database | RATE / COST |
|---|---|
| Data storage | Waived for 3 months, Under 10,000 records - No charge, Over 10,000 records - .06 per record, Over 100,000 records - .05 per record |
| Per image storage | No Charge |

| Call Centers / Dedicated Line | RATE / COST |
|---|---|
| Creation, configuration and initial setup | No Charge |
| Hosting fee | $20.00 per month |
| Usage | $.0825 per minute |
| Service rates (actual talk and log-entry time) | $60.00 per hour |

# 2019 Rate Sheet



| Informational Website | RATE/COST |
|---|---|
| Creation, Configuration and Initial Setup | No Charge |
| Data Entry / Information Updates | $60.00 per hour |
| Programming and Customization | $85 - $135 per hour |
| Debtor Website Hosting | No Charge |
| Committee Website Hosting | No Charge |
| Shareholder Website Hosting | No Charge |
| Scanning | $0.10 per image |

| Case Docket / Claims Register | |
|---|---|
| | No Charge |

| Virtual Data Rooms | |
|---|---|
| | Quote upon request |

| Solicitation and Tabulation | RATE/COST |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

| Public Debt and Equities Securities and/Rights Offerings Services | RATE/COST |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

| Schedules / SoFA | RATE/COST |
|---|---|
| Preparation and updating of schedules and SoFAs | $65.00 - $165.00 per hour |

| UST Reporting Compliance | RATE/COST |
|---|---|
| Assist debtors to satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports | Standard hourly rates apply |

| Liquidating / Disbursing Agent | RATE/COST |
|---|---|
| Comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations | Standard hourly rates apply |

| Real-Time Reports | RATE/COST |
|---|---|
| Claims dashboard | No Charge |
| Claim reports | No Charge |
| Solicitation dashboard | No Charge |
| Tabulation dashboard | No Charge |
| Solicitation reports | No Charge |

| Miscellaneous | RATE/COST |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |