# EXHIBIT 1

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| NATIONAL SURETY CORPORATION, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2017 CH 14975 |
| BOY SCOUTS OF AMERICA; CHICAGO AREA COUNCIL, INC. BOY SCOUTS OF AMERICA; *et al.* | ) ) ) ) ) | Hon. Alison C. Conlon |
| Defendants. | ) | |

## ALLIANZ' FIRST AMENDED COUNTERCLAIM REGARDING THE MONROE SETTLEMENT

Allianz Global Risks US Insurance Company ("Allianz") brings this First Amended Counterclaim for Declaratory Judgment, Equitable Contribution, and Equitable Subrogation against Century Indemnity Company, Twin City Fire Insurance Company, and First State Insurance Company, and, in support thereof, states as follows:

### NATURE OF THE ACTION

1. Allianz seeks equitable contribution and subrogation from Century Indemnity Company ("Century"), Twin City Fire Insurance Company ("Twin City"), and First State Insurance Company ("First State") for sums that Allianz paid in connection with the settlement of an underlying lawsuit arising out of sexual abuse committed by assistant scoutmaster Gary Monroe.

### JURISDICTION AND VENUE

2. Allianz is an Illinois corporation with its principal place of business in Chicago, Illinois.

3. Century is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

4. Twin City is an Indiana corporation with its principal place of business in Hartford, Connecticut.

5. First State is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

6. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 735 ILCS 5/2-701, as an actual controversy exists among Allianz, Century, Twin City, and First State (collectively, "the Insurers") regarding their respective indemnity obligations for the settlement of the Monroe Lawsuit described below.

7. This Court has personal jurisdiction over Century, Twin City, and First State pursuant to 735 ILCS 5/2-209, as each is licensed to do business or doing business in Illinois or issued insurance policies insuring risks located in Illinois.

8. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 as Century, Twin City, and First State are non-residents of Illinois.

## BACKGROUND

### The Allianz Policy

9. Allianz issued Umbrella Liability Policy number UMB599346 to Boy Scouts of America National, Regional and All Local Councils for the policy period January 1, 1980 to January 1, 1981 ("the Allianz Policy"). The Allianz Policy is attached as Exhibit A.

10. The Allianz Policy's insuring agreement states, in relevant part, as follows:

INSURING AGREEMENTS

    I.    COVERAGE. The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by the reason of the liability

        A.    imposed upon the Insured by law, or

>   B.   assumed under contract or agreement by the Named Insured,

for damages on account of

>   A.   Personal Injuries
>
>   B.   Property Damage
>
>   C.   Advertising Liability,

caused by or arising out of each occurrence anywhere.

Ex. A at ALZ0009.

11. The Allianz Policy defines "personal injury," in relevant part, as "bodily injury…." *Id.* at ALZ0013.

12. The Allianz Policy defines "bodily injury" as "bodily injury, sickness or disease, including death and care and loss of services resulting therefrom sustained by any person." *Id.*

13. The Allianz Policy contains the following provision concerning its policy period:

>   IV.   POLICY PERIOD, TERRITORY.  This Policy applies to personal injury, property damage or advertising liability which occurs anywhere during the policy period.

*Id.* at ALZ0010.

14. The Allianz Policy's limits of liability provision states, in relevant part, as follows:

>   II.   LIMITS OF LIABILITY-RETAINED LIMIT.  The Company shall only be liable for the Ultimate Net Loss resulting from any one occurrence in excess of
>
>   A.   the limits of the underlying insurance as stated in the attached Schedule of Underlying Insurance (whether collectible or not) and the applicable limits of any other underlying insurance collectible by the Insured, less the amount, if any, by which any aggregate limit of such

> insurance has been reduced by payment of loss during the period of this policy, or
>
> B. If the insurance afforded by such underlying insurance is inapplicable to the occurrence, the amount specified in Item 5 of the Declarations as the Retained Limit,
>
> hereinafter called the Underlying Limits.
>
> …
>
> In the event of reduction or exhaustion of the aggregate limits of liability applicable to the underlying insurance (listed in the Schedule of Underlying Insurance hereof) by reason of losses paid thereunder, this policy shall, subject to the terms and conditions of the underlying insurance,
>
> (a) in the event of reduction pay the excess of the reduced underlying limit;
>
> (b) in the event of exhaustion continue in force as underlying insurance.

*Id.*

15. "Underlying insurance" is defined as follows:

> UNDERLYING INSURANCE. Means the insurance policies listed in the Schedule of Underlying Insurance including any renewal or replacement of such contracts, and also includes the insurance policies not listed in the Schedule of Underlying Insurance for which notice has been given to the company pursuant to the policy condition entitled "Underlying Insurance-Changes or Additional Coverages during this Policy Period".

*Id.* at ALZ0014.

16. The Allianz Policy contains the following Maintenance of Underlying Insurance condition:

> MAINTENANCE OF UNDERLYING INSURANCE. It is warranted by the Insured that the Schedule of Underlying Insurance or renewals or replacements thereof not more restricted, shall be maintained in force as collectible insurance during the currency of this policy, except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. In the event of failure by the insured so to

4

maintain such policies or to meet all conditions and warranties subsequent to loss under such policies, the insurance afforded by this policy shall apply in the same manner it would have applied had such policies been so maintained in force.

*Id.* at ALZ0016.

17. The Allianz Policy contains the following Other Insurance condition:

OTHER INSURANCE. If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

*Id.* at ALZ0015.

## The Century, Twin City, and First State Policies

18. Century's predecessor in interest, Insurance Company of North America ("INA"), issued primary liability insurance policies providing coverage to Boy Scouts of America ("BSA"), Three Fires Council, Inc. ("TFC"), and Boy Scout Troop No. 65 ("Troop 65") for policy periods from January 1, 1980 to January 1, 1985, including INA general liability policy numbers GLP 706452, effective January 1, 1978 to March 1, 1981; ISL 1353, effective January 1, 1981 to January 1, 1982; ISL 1364, effective January 1, 1982 to January 1, 1983; ISL GO2834571, effective January 1, 1983 to January 1, 1984; and ISL GO 2931722, effective January 1, 1984 to January 1, 1985 ("the Century Primary Policies"). The Century Primary Policies are attached hereto as Exhibits B through F.

19. Each Century Primary Policy, subject to its complete terms and limits, covers sums that the insured becomes legally obligated to pay as damages because of bodily injury caused by an occurrence and taking place during the Century Primary Policies' respective policy periods.

5

20. Century or its predecessors in interest also issued umbrella or excess liability insurance policies providing coverage to BSA, TFC, and Troop 65 for policy periods from January 1, 1983 to January 1, 1985, including INA excess liability policy numbers XCP 144965, effective January 1, 1983 to January 1, 1984; XCP 144966, effective January 1, 1983 to January 1, 1984; and XCP 145365, effective January 1, 1984 to January 1, 1985 ("the Century Excess Policies"). The Century Excess Policies are attached as Exhibits G through I.

21. Each Century Excess Policy follows form to an underlying primary policy. Subject to their complete terms and limits, the Century Excess Policies cover sums in excess of applicable underlying limits that the insured becomes legally obligated to pay as damages because of bodily injury caused by an occurrence and taking place during the Century Excess Policies' respective policy periods.

22. BSA, TFC, and Troop 65 are insureds under the Century Primary and Excess Policies.

23. On information and belief, Twin City issued a liability policy providing excess or umbrella liability coverage to BSA, TFC, and Troop 65 under policy number TXU 100325, effective January 1, 1982 to January 1, 1983 ("the Twin City Policy").

24. On information and belief, First State issued liability insurance policies providing excess liability coverage to BSA, TFC, and Troop 65 from January 1, 1981 to January 1, 1983, including policy numbers FS 931255, effective January 1, 1982 to December 31, 1982; and FS 931257, effective January 1, 1982 to December 31, 1982 ("the First State Policies").

25. On information and belief, the Twin City Policy and the First State Policies, subject their complete terms and limits, cover sums in excess of applicable underlying limits that

6

the insured becomes legally obligated to pay as damages because of bodily injury caused by an occurrence and taking place during the Twin City Policy and the First State Policies' respective policy periods.

26. On information and belief, BSA, TFC, and Troop 65 are insureds under the Twin City Policy and the First State Policies.

27. In 1996, Century and BSA entered into a Settlement Agreement Regarding Sexual Molestation Claims ("the First Encounter Agreement") in which they agreed that, with respect to the Century Policies, "the date of occurrence for all present and future Sexual Molestation Claims shall be determined in accordance with the first encounter rule."

28. The first encounter rule provided that, for purposes of coverage under the Century Policies:

> …the date of "occurrence" pertaining to any Sexual Molestation claim shall be the date when the first act of Sexual Molestation took place, even if additional acts of Sexual Molestation or additional Personal Injuries arising therefrom also occurred in subsequent policy periods; and all damages arising out of such additional acts of Sexual Molestation or additional Personal Injuries shall be deemed to have been incurred during the policy year when the first act of Sexual Molestation took place.

29. On information and belief, Twin City, First State, and BSA entered into a November 29, 2010 Confidential Settlement Agreement and Release in which they deemed the Twin City Policy's limits to be exhausted for all claims.

**The Monroe Lawsuit and Settlement**

30. In 2011, a former boy scout identified as John Doe filed a lawsuit in the Circuit Court of DuPage County, Illinois styled *John Doe et al. v. Boy Scouts of America et al.,* Case No. 2011 L 000790 ("the Monroe Lawsuit"). The Seventh Amended Complaint at Law in the Monroe Lawsuit, filed December 20, 2017, is attached as Exhibit J.

7

31. In the Monroe Lawsuit, Doe asserted claims against Gary Monroe, BSA, TFC, Troop 65, and other individual troop leaders and volunteers for alleged injuries caused by Monroe's sexual abuse of Doe during a three- to four-year period beginning in 1980 while Doe was a member of Troop 65 in Woodridge, DuPage County, Illinois.

32. On or about May 1, 2018, BSA settled the Monroe Lawsuit with Doe for $███████ ("the Monroe Settlement"). The April 26, 2018 settlement agreement between BSA and Doe is attached hereto as Exhibit K.[1]

33. On information and belief, Century and BSA deemed Doe's injuries to have been incurred during the January 1, 1980 to January 1, 1981 policy period pursuant to the First Encounter Agreement.

34. On information and belief, Century indemnified BSA, TFC, and Troop 65 for $████ of the Monroe Settlement under Century Primary Policy no. GLP 706452, effective January 1, 1978 to January 1, 1981, representing ███████████████████████████████. On information and belief, Century paid no indemnity for the Monroe Settlement under any other Century Policy.

35. Allianz indemnified BSA, TFC, and Troop 65 for $██████ of the Monroe Settlement under the Allianz Policy, representing ███████████████████████████████████████████████████████████████████.

36. On information and belief, Twin City and First State did not indemnify BSA, TFC, or Troop 65 for any portion of the Monroe Settlement.

## COUNT I
## DECLARATORY JUDGMENT

37. Allianz incorporates all preceding paragraphs as though fully restated herein.

---

[1] BSA's confidential settlement agreement with John Doe will be filed under seal and is not attached to the publicly filed copy of this pleading.

8

38. Coverage under the Allianz Policy applies, subject to the policy's complete terms, only to bodily injury taking place during the January 1, 1980 to January 1, 1981 policy period.

39. The Monroe Settlement resolved BSA, TFC, and Troop 65's potential liability for damages because of bodily injury that took place at various times from the summer of 1980 through 1984.

40. The injuries alleged in the Monroe Lawsuit and the corresponding Monroe Settlement are covered under each of the Century Primary Policies.

41. The injuries alleged in the Monroe Lawsuit and the corresponding Monroe Settlement are also covered under the Century Excess Policies, the Twin City Policy, and the First State Policy, to the extent the Monroe Settlement exceeds the limits of applicable underlying insurance in those policies' respective policy periods or the aggregate limits of underlying insurance in those policy periods have been exhausted or are otherwise unavailable.

42. Under Illinois' horizontal exhaustion rule, the Monroe Settlement must be allocated across each of the five policy periods during which Doe's injuries took place, and all primary insurance applicable to the Monroe Settlement must be exhausted before excess coverage under the Allianz Policy is potentially implicated.

43. Therefore, the Century Primary Policies, each of which has a $500,000 per-occurrence limit of insurance and, together, provide $2,500,000 in applicable limits, must be exhausted before coverage under the Allianz Policy potentially applies.

44. Similarly, the Century Excess Policies, the Twin City Policy, and the First State Policy must be exhausted before coverage under the Allianz Policy applies, to the

extent the aggregate limits of underlying insurance in those policies' respective policy periods have been exhausted or are otherwise unavailable.

45. Further, coverage for the Monroe Settlement under the Allianz Policy applies excess of and does not contribute with any other valid and collectible insurance applicable to the Monroe Settlement.

46. Therefore, the Century Excess Policies, the Twin City Policy, and the First State Policy must be exhausted before coverage under the Allianz Policy applies.

47. The full limits of the Century Policies, the Twin City Policy, and the First State Policy applicable to the Monroe Settlement have not been exhausted by the payment of indemnity.

48. Allianz is not a party to and is not bound by the First Encounter Agreement or Twin City and First State's 2010 Settlement Agreement with BSA, and the full limits of the Century Policies, the Twin City Policy, and the First State Policy applicable to the Monroe Settlement have not been exhausted by operation of those agreements.

49. There is an actual, immediate, and justiciable controversy among the parties regarding coverage for the Monroe Settlement and Allianz' entitlement to reimbursement from Century, Twin City, and First State for the portion of the Monroe Settlement paid by Allianz.

WHEREFORE Allianz prays that the Court:

a. Find and declare that the Monroe Lawsuit triggered coverage in each policy period during which John Doe's alleged abuse and resulting injuries took place;

b. Find and declare that Century, Twin City, and First State have a duty to indemnify BSA, TFC, and Troop 65 for the Monroe Settlement under the Century, Twin City, and First State Policies;

c. Find and declare that the limits of the Century, Twin City, and First State Policies must be fully exhausted before coverage for the Monroe Settlement under the Allianz Policy is implicated;

d. Find and declare that the applicable limits of the Century, Twin City, and First State Policies are not exhausted by operation of the First Encounter Agreement or by Twin City and First State's 2010 Settlement Agreement with BSA; and

e. Award Allianz such other and further relief that the Court deems just and proper.

## COUNT II
## EQUITABLE CONTRIBUTION AND SUBROGATION

50. Allianz incorporates all preceding paragraphs as though fully restated herein.

51. Allianz indemnified BSA, TFC, and Troop 65 for a portion of the Monroe Settlement and is subrogated to BSA, TFC, and Troop 65's rights to the extent of that payment.

52. Century was primarily liable for the Monroe Settlement under the Century Primary Policies, whereas Allianz was secondarily liable under the Allianz Policy.

53. By indemnifying BSA, TFC, and Troop 65 for the Monroe Settlement, Allianz discharged its own potential liability under the Allianz Policy and also extinguished Century's liability under the Century Primary Policies.

54. On information and belief, all conditions precedent to coverage under the Century Primary Policies were satisfied with respect to the Monroe Settlement.

55. Allianz is entitled to recover from Century in equitable subrogation the portions of the Monroe Settlement allocable to the Century Primary Policies.

56. Under the Allianz Policy, the Century Excess Policies, the Twin City Policy, and the First State Policies, Allianz, Century, Twin City, and Frist State are liable for the same loss, namely, the portion of the Monroe Settlement in excess of the applicable limits of underlying insurance. By indemnifying BSA, TFC, and Troop 65 for the Monroe Settlement, Allianz paid the entirety of that loss.

57. On information and belief, all conditions precedent to coverage under the Century Excess Policies, the Twin City Policy, and the First State Policies were satisfied with respect to the Monroe Settlement.

58. Allianz is entitled to recover from Century, Twin City, and First State in equitable contribution the portions of the Monroe Settlement covered by those insurers' excess policies.

WHEREFORE Allianz prays that the Court:

a. Find and declare that Allianz is entitled to equitable contribution from or subrogation against Century, Twin City, and First State;

b. Enter judgment in Allianz' favor and against Century, Twin City, and First State for the portions of the Monroe Settlement covered under the Century, Twin City, and First State Policies, with interest; and

c. Award Allianz such other and further relief that the Court deems just and proper.

Dated: February 10, 2020

Respectfully Submitted,

**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY**

Matthew S. Sorem
Rhani A. Elrahman
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 South Wacker Drive, Suite 2100
Chicago, IL 60606
Tel: (312) 585-1400
msorem@nicolaidesllp.com
relrahman@nicolaidesllp.com
Firm No. 57569

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

NATIONAL SURETY CORPORATION, )
)
    Plaintiff, )
)
    v. ) No. 2017 CH 14975
)
BOY SCOUTS OF AMERICA; CHICAGO ) Hon. Alison C. Conlon
AREA COUNCIL, INC. BOY SCOUTS OF )
AMERICA; *et al*. )
)
    Defendants. )

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222

The undersigned attorney for counterclaim plaintiff Allianz Global Risks US Insurance Company ("Allianz") certifies under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure that Allianz seeks money damages on its counterclaim in excess of $50,000.

_____