**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 15, 2020 at 10:00 a.m. (ET)** **Objection Deadline: March 31, 2020 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this application (this "Application"), pursuant to section 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016-1, and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to retain and employ Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree Deakins") as special litigation counsel for the Debtors, *nunc pro tunc* to February 18, 2020 (the "Petition Date"). In support of this Application, the Debtors submit the declaration of Bruce A. Griggs, a shareholder of Ogletree, attached hereto as **Exhibit B** (the "Griggs

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Declaration"), and the declaration of Steven P. McGowan, Secretary and General Counsel of the BSA, attached hereto as **Exhibit C** (the "McGowan Declaration" and, together with the Griggs Declaration, the "Declarations"), each of which is incorporated herein by reference.  In further support of this Application, the Debtors respectfully state as follows:

### STATUS OF THE CASES AND JURISDICTION

1.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").   The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 19, 2020, the Court entered an order [Docket No. 61] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2.      On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") and an official committee of tort claimants (the "Tort Claimants' Committee" and, together with the UCC, the "Committees") pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 141, 142].  No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Application if it is

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and other bases for the relief requested in this Application are section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1, 2016-1, and 2016-2.

## BACKGROUND OF THE DEBTORS

6.      The BSA is a federally chartered non-profit corporation under title 36 of the United States Code.  The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.  Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers.  As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission.  The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law,[2] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations.  Delaware BSA, LLC is a non-profit limited liability company incorporated under the laws of Delaware and exempt from

---

[2] **Scout Oath**: "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight."  **Scout Law**:  "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

federal income tax under section 501(c)(3) of the Internal Revenue Code. BSA is the sole member of Delaware BSA, LLC.

7.    Additional information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] (the "First Day Declaration") and the *Debtors' Informational Brief* [Docket No. 4] (the "Informational Brief").

## RELIEF REQUESTED

8.    By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Ogletree Deakins as special litigation counsel for the Debtors, *nunc pro tunc* to the Petition Date.

## OGLETREE DEAKINS' QUALIFICATIONS AND SCOPE OF SERVICES

9.    Ogletree Deakins is a full-service labor and employment law firm with experience and expertise in every major substantive area of legal practice involving workplace issues, and its regular clients include leading public companies in a variety of industries, smaller and privately-held businesses, major non-profit organizations, and individuals.

10.    As discussed in the First Day Declaration and the Informational Brief, the BSA is a defendant in numerous lawsuits related to historical acts of sexual abuse in its programs. As of the Petition Date, there were approximately 275 pending civil actions asserting personal injury claims against the BSA (as well as certain local councils and chartered organizations) related to abuse suffered by a Scout at the hands of a Scouting leader, volunteer, or another member of the BSA (collectively, the "Pending Abuse Actions").

11.     Ogletree Deakins has served since August 2016 as national coordinating or counsel of record for the Debtors in connection with all abuse actions against the BSA, including the Pending Abuse Actions.  Ogletree Deakins also serves in a similar capacity with respect to certain non-abuse actions against the BSA and other matters (together with the Pending Abuse Actions, the "Litigation Matters").  In providing these professional services to the BSA, Ogletree Deakins' professionals have worked closely with the Debtors' management and have gained significant institutional knowledge about the Debtors' organization and non-profit operations, financial affairs, insurance coverage, and related matters.  Ogletree Deakins has also become familiar with all aspects of the Litigation Matters, including all factual and legal issues relating to the claims asserted therein and the Debtors' legal needs in connection therewith.  Accordingly, Ogletree Deakins is both well qualified and uniquely able to represent the Debtors with respect to the Litigation Matters in an efficient and expert manner.

12.     The Debtors anticipate that the professional services that Ogletree Deakins will provide will include advising the Debtors and assisting the Debtors' restructuring counsel and other professionals with respect to any matter requiring analysis of abuse claims, including in connection with any estimation, mediation, and formulation of any trust distribution procedures related to a chapter 11 plan of reorganization.  Moreover, despite the imposition of the automatic stay as to the Debtors in the Litigation Matters, Ogletree Deakins will take such measures or supervise defense counsel in the Litigation Matters in taking such measures as may be necessary or advisable from time to time in the Litigation Matters during the pendency of these cases, including the preparation and filing of any notices or other documents in the Litigation Matters.  In addition, Ogletree Deakins will coordinate advising the courts in the Litigation Matters as to the status of the Debtors' bankruptcy cases and coordinate with the

Debtors' insurance counsel as needed from time to time on insurance issues relating to the Litigation Matters.   Finally, Ogletree Deakins will perform all other necessary or appropriate legal services in connection with the Litigation Matters.  The Debtors may also request that Ogletree Deakins undertake specific matters beyond the scope of the responsibilities set forth above.  Should Ogletree Deakins agree to undertake any such specific matters, the Debtors further request authority in this Application to employ Ogletree Deakins for such matters without further order of this Court.

13.    The Debtors require knowledgeable counsel to render these critical professional services, and, as described in the McGowan Declaration, Ogletree Deakins has substantial expertise in these areas as well as extensive historical knowledge of the factual and legal issues underlying the Litigation Matters.  Subject to the Court's approval of this Application, Ogletree Deakins is willing to serve as the Debtors' special litigation counsel and to perform the services described above.

## NO DUPLICATION OF SERVICES

14.    Concurrently herewith, the Debtors are also seeking to employ various other restructuring professionals.  The Debtors may also file further applications to employ additional counsel in these chapter 11 cases for particular purposes.  The Debtors, Ogletree Deakins, and the other restructuring professionals have fully discussed Ogletree Deakins' role in these chapter 11 cases so as to avoid duplication of work.  Rather than resulting in any extra expense to the Debtors' estates, it is anticipated that the efficient coordination of efforts of the Debtors' attorneys and other professionals will promote the efficient prosecution and effective administration of these chapter 11 cases.  Ogletree Deakins has agreed to make reasonable efforts to avoid duplication of services by any other professionals employed by the Debtors.

## PROFESSIONAL COMPENSATION

15.     Ogletree Deakins intends to apply to the Court for allowance of compensation earned for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any other applicable procedures and orders of the Court. Ogletree Deakins will also make a reasonable effort to comply with the requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "U.S. Trustee Guidelines"), both in connection with this Application and any applications for compensation and reimbursement of expenses to be filed by Ogletree Deakins in these chapter 11 cases.

16.     Ogletree Deakins will charge the Debtors for its legal services on an hourly basis at its ordinary and customary rates in effect on the date that such services are rendered and for reimbursement of all costs and expenses incurred by Ogletree Deakins in connection with its representation of the Debtors.  The Debtors are seeking to employ and retain Ogletree Deakins at Ogletree Deakins' regular standard hourly rates.  Ogletree Deakins' billing rates for attorneys who may work on this matter currently range from $305 to $760 per hour for attorneys and from $50 to $295for paraprofessionals.  The following attorneys are expected to have primary responsibility for providing services to the Debtors (hourly billing rates noted in parentheses): Bruce A. Griggs ($640) and Sean E. Manning ($425).  The Debtors anticipate that additional Ogletree Deakins attorneys and paraprofessionals may provide services to the Debtors as necessary.[3]

---

[3] Although Ogletree Deakins does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Ogletree Deakins will not charge a markup to the

17.     Ogletree Deakins' hourly rates are set at a level designed to fairly compensate Ogletree Deakins for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  These hourly rates vary with the experience and seniority of each professional and are subject to periodic adjustments to reflect economic and other conditions, with the hourly rate charged being the hourly rate in effect on the date that the services are performed.

18.     Ogletree Deakins represented the Debtors before the Petition Date using the hourly rates listed above.  Moreover, as described in the Griggs Declaration, Ogletree Deakins' rate structure is appropriate and not significantly different from the rates that Ogletree Deakins charges for other representations or the rates that other comparable counsel would charge to perform substantially similar services.

19.     In addition to the hourly rates set forth above, Ogletree Deakins customarily charges its clients for the variable costs and expenses incurred in connection with its services, including mail and express mail charges, special- and hand-delivery charges, photocopying charges, travel expenses, transcription costs, expenses for "working meals," computerized research costs, and charges and fees of outside vendors, consultants and service providers.

20.     Consistent with Local Rule 2016-2(e), Ogletree Deakins will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Ogletree Deakins does not charge its clients for incoming or outgoing facsimile transmissions.

21.     The Debtors recognize that they have the responsibility to closely monitor the billing practices of their counsel to ensure the fees and expenses paid by the estates remain consistent with the Debtors' expectations and the exigencies of these chapter 11 cases.  As they

---

Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Ogletree Deakins will be subject to connections searches and disclosures in accordance with the applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process.  To that end, the Debtors will review and monitor the invoices that Ogletree Deakins submits

### COMPENSATION RECEIVED BY OGLETREE DEAKINS FROM THE DEBTORS

22.     As set forth in the Griggs Declaration, during the twelve months immediately preceding the Petition Date, Ogletree Deakins received payments and advances in the aggregate amount of approximately $7,177,577.34 for all services rendered on behalf of the Debtors and expenses incurred in connection with such services.

23.     During the ninety days immediately preceding the Petition Date, Ogletree Deakins received payments and retainers totaling $2,349,774.94.   As of the Petition Date, Ogletree Deakins held a retainer in the amount of $331,248.75, which Ogletree Deakins maintains in its operating account.  After applying certain fees and expenses earned and incurred but not paid prior to the Petition Date to the retainer, the balance of the retainer is currently approximately $23,804.04.  The remainder of the retainer held by Ogletree Deakins will be allocated to Ogletree Deakins' postpetition fees and expenses after such postpetition fees and expenses are allowed against the Debtors' estates, including pursuant to any interim compensation procedures approved by the Court.

24.     In accordance with section 504 of the Bankruptcy Code, Ogletree Deakins has neither shared nor agreed to share (a) any compensation or reimbursement it has received or may receive with another person, other than with the partners, associates and contract attorneys (if applicable) associated with Ogletree Deakins, or (b) any compensation or reimbursement another person has received or may receive.

## NO ADVERSE INTEREST

25.    Except as set forth in the Griggs Declaration, Ogletree Deakins, to the best of the Debtors' knowledge, information, and belief, does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters on which Ogletree Deakins is to be employed.  Ogletree Deakins has agreed with the Debtors not to represent any such creditors or parties in interest in these chapter 11 cases in any matters adverse to the Debtors.  Additionally, Ogletree Deakins has informed the Debtors that it will conduct an ongoing review of its files to ensure that it continues to neither represent nor hold any interests adverse to the Debtors or their estates with respect to the matters on which Ogletree Deakins is to be employed pursuant to this Application.  To the best of the Debtors' knowledge, as disclosed in the Griggs Declaration, (a) Ogletree Deakins is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Griggs Declaration.[4]

## BASIS FOR RELIEF

26.    Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C § 327(e).

---

[4] This Application is filed under section 327(e) of the Bankruptcy Code, but out of an abundance of caution, the Debtors submit that Ogletree Deakins is a "disinterested person" as required by section 327(a) of the Bankruptcy Code.

27.    Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case.  11 U.S.C. § 1107(b).

28.    Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a).  See Meespierson Inc. v. Strategic Telecom Inc., 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

29.    Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtor's case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel . . . ."  In re Woodworkers Warehouse, Inc., 323 B.R. 403, 406 (D. Del. 2005).  In general, however, subject to the requirements of sections 327 and 1107, a debtor-in-possession is entitled to the counsel of their choosing.  In re Vouzianas, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

30.    Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.   Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file "a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1.

31.    The Debtors submit that for all of the reasons stated above and in the Declarations, Ogletree Deakins' services are necessary to the successful prosecution of these chapter 11 cases. Based upon both its extensive experience and expertise, and its representation of the Debtors prior to the Petition Date, Ogletree Deakins is both well qualified and uniquely able to represent the Debtors with respect to the Litigation Matters in an efficient and expert manner.  Accordingly, the Debtors submit that the retention of Ogletree Deakins is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

## NOTICE

32.    Notice of this Application will be provided to (i) the U.S. Trustee; (ii) proposed counsel to the UCC; (iii) proposed counsel to the Tort Claimants' Committee; (iv) counsel to the proposed Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief the Court may deem just and proper.

Dated:  March 17, 2020
        Wilmington, Delaware

Respectfully submitted

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*