1

2

                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

3                                        .    Chapter 11
     IN RE:                              .
                                         .    Case No. 20-10343 (LSS)
4    BOY SCOUTS OF AMERICA and           .
     DELAWARE BSA, LLC,                   .
5                                        .
                                         .    Courtroom No. 2
6                                        .    824 North Market Street
                                         .    Wilmington, Delaware 19801
7                                        .
                          Debtors.       .    March 19, 2020
8    . . . . . . . . . . . . . . . . .    2:00 P.M.

9            TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
           BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                 UNITED STATES BANKRUPTCY JUDGE

11
     TELEPHONIC APPEARANCES:
12
     For the Debtor:          Derek C. Abbott, Esquire
13                            Andrew R. Remming, Esquire
                              Joseph C. Barsalona, II, Esquire
14                            Eric W. Moats, Esquire
                              Paige N. Topper, Esquire
15                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                              1201 North Market Street, 16th Floor
16                            P.O. Box 1347
                              Wilmington, Delaware 19899
17

18
     Audio Operator:          Nicki Barksdale
19

20   Transcription Company:   Reliable
                              1007 N. Orange Street
21                            Wilmington, Delaware 19801
                              (302)654-8080
22                            Email:  gmatthews@reliable-co.com

23
     Proceedings recorded by electronic sound recording, transcript
24   produced by transcription service.

25

```
1   TELEPHONIC APPEARANCES (Continued):

2   For the Debtors:            Thomas A. Labuda, Esquire
                                Michael C. Andolina, Esquire
3                               Matthew E. Linder, Esquire
                                SIDLEY AUSTIN LLP
4                               One South Dearborn Street
                                Chicago, Illinois 60603
5
6                               - and -

7                               Jessica C. Boelter, Esquire
                                SIDLEY AUSTIN LLP
8                               787 Seventh Avenue
                                New York, New York 10019
9
    For Girl Scouts of the      Eric Lopez Schnabel, Esquire
10  United States of            DORSEY & WHITNEY LLP
    America:                    1000 N West Street, Suite 1410
11                              Wilmington, Delaware 19801

12
    For Ronald Hernandez        Debbie Greenberger, Esquire
13  Hunter:                     EMERY CELLI BRINCKERHOFF
                                  & ABADY LLP
14                              600 5th Avenue, 10th Floor
                                New York, New York 10020
15
    For Kentucky Defendants: Louis Schneider, Esquire
16                              THE THOMAS LAW OFFICES
                                250 East Fifth Street, Suite 440
17                              Cincinnati, Ohio 45202

18
    For Jane Doe:               Mark Desgrosseilliers, Esquire
19                              CHIPMAN BROWN CICERO & COLE LLP
                                Hercules Plaza
20                              1313 North Market Street, Suite 5400
                                Wilmington, Delaware 19801
21
    For Jane Doe:               Amy C. Keller, Esquire
22                              LIPSITZ GREEN SCIME CAMBRIA LLP
                                42 Delaware Avenue
23                              Buffalo, New York 14202

24

25
```

1  TELEPHONIC APPEARANCES (Continued):

2  For Tort Claimants:        James Stang, Esquire
                              PACHULSKI STANG ZIEHL & JONES LLP
3                             10100 Santa Monica Boulevard
                              13th Floor
4                             Los Angeles, California 90067

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commence at 2:06 p.m.)

2        THE COURT:  Okay.  Counsel, this is Judge

3 Silverstein.  I appreciate the parties participating in the

4 status conference.  I asked for this conference so that we

5 could discuss the hearing that's set for March 24th and to

6 also do a run through for those who wanted to with respect to

7 the video and audio.  We're, obviously, still getting

8 familiar with new procedures.

9        What I would like to understand is what's going to

10 be going forward or what the request is for what's going to

11 be going forward on the 24th and, initially, the progress

12 that's been made, if any, between parties to resolve the

13 matters.

14        So, let me turn it over to debtor's counsel to

15 walk through what is going to -- what is currently on the

16 agenda for next week.

17        MR. ABBOTT:  Thank you, Your Honor.  Your Honor,

18 this is Derek Abbott of Morris Nichols for the debtors.

19        We spent a little bit of time with Ms. Johnson

20 over the last couple of days updating her on the draft agenda

21 that we had submitted on Friday.  And I understand that she

22 has shared her notes of that discussion with you.  The

23 debtors have been hard at work trying to resolve as much as

24 we can and get agreement to defer things.

25        If it's all right with the court I will cede this,

1  at least, electronic podium to Jessica Boelter from the

2  Sidley Firm to run through that agenda, if I may, Your Honor.

3        THE COURT:  Yes.

4        MS. BOELTER:  Thank you, Your Honor.  This is

5  Jessica Boelter, Sidley Austin, for the debtors.

6        Before turning to the draft agenda, Your Honor,

7  just a brief update.  As I'm sure you can imagine, since we

8  last saw you at the first day hearing, the United States

9  Trustee has appointed two official committees; an official

10  committee of survivors and official committee of, what I'll

11  call, commercial creditors or other creditors that don't fall

12  into that category.

13        In addition, the debtors have filed a motion to

14  appoint a proposed future claimant's representative.  So,

15  when we refer to, sort of, the official constituents that we

16  have been speaking to in the cases I'm referring to both

17  official committees, the proposed future claimant's

18  representative and JPMorgan who, Your Honor will recall, is

19  the lender with respect to BSA's prepetition indebtedness.

20        The parties saw, Your Honor, the order that came

21  out of the Delaware Bankruptcy Court. I think that was on

22  Monday or Tuesday night.  I'm sure for you as well the days

23  are starting to run together for the restructuring world.

24  And immediately the debtors began to look at the proposed

25  relief for the 24th into three categories:

1          Motions that could be, we believe, resolved if the

2   official committee as well as the debtors rolled up their

3   sleeves and worked hard at it;

4          Matters that we didn't think could be resolved,

5   but taking into account the bankruptcy court's ruling

6   regarding time sensitive issues, matters that we thought we

7   could actually push to the April 15th hearing without

8   tremendous or significant damage to the debtors' bankruptcy

9   estates;

10          And then finally we were looking at items we felt

11   we really did need to go forward with on March 24th.

12          I'd like to just pause and thank the committees

13   and the other official constituents.  We really have been

14   working around the clock and I think all parties are in

15   agreement in terms of at least what is going to be before the

16   court on the 24th, what will be before the court on the 15th

17   and what we're very optimistic we can resolve so that there

18   is no need for a hearing with respect to those matters.

19          So, with that, Your Honor, I would propose to walk

20   through the draft agenda that I understand Morris Nichols had

21   previously submitted to the court.  I know there are many

22   parties on the phone who may not all have a copy of that.

23   So, I will also utilize docket numbers so folks know where we

24   are at and what we believe the status of each of those items

25   is at this point.

1        THE COURT:  Yes.  Please do that and recognize

2   that nobody else has this draft agenda, at least, unless it's

3   been circulated.  So, that is one of the reasons for the call

4   because I wanted all participants in the case to understand

5   the debtors current thinking as to what is going forward or

6   not and to be able to comment as appropriate.

7        So, Ms. Boelter, you can begin.

8        MS. BOELTER:  Very good, Your Honor.  The first

9   item on the draft agenda was National Surety's motion for

10  relief from stay.  That was at Docket Number 147.  An agreed

11  order was submitted and I believe I saw, Your Honor, that the

12  court signed that order about an hour ago.  So, that matter

13  has been resolved and would come off of the agenda.

14        The next item is the cash collateral motion.  That

15  is at Docket Number 5.  JPMorgan has now agreed to extend the

16  interim order through our next hearing which is April 15th.

17  We, the debtors, have agreed to extend the objection deadline

18  for the official constituents, that I mentioned, to April

19  1st.  So, that matter would be coming off of the agenda for

20  March 24th.

21        I should note, Your Honor, that with respect to

22  those matters, and I will note it as I go through the agenda,

23  where we have agreed with the official constituents to move

24  the hearing date to April 15th and the objection deadline.

25  The debtors are working on a proposed form of order to

1  reflect exactly that because as you will recall some of these

2  orders which had interim and final relief, the interim order

3  actually ordered that the matter be heard at the 24th.  So,

4  we will prepare and circulate to the parties a form of order

5  that actually extends those dates out as I just described.

6  So, that is the cash collateral motion.

7         The third item on the draft agenda is the tax

8  motion which is at Docket Number 6.  This motion, we believe

9  all comments to the motion have been resolved and the debtors

10  intend to submit a form of order under certification of

11  counsel.

12         Agenda Item 4, which is our vendor's motion, which

13  appears at Docket Number 7.  We believe we are resolved with

14  the survivor committee.  We're still working through some

15  comments with the unsecured creditor's committee, but at this

16  point, Your Honor, we expect that we will be able to resolve

17  those comments.  And assuming that occurs we would submit the

18  revised form of order under certification of counsel.

19         I should note, Your Honor, our objective is to

20  file all of these revised forms of order prior to the close

21  of business tomorrow, Friday, so that the court, of course,

22  has ample time to review them in advance of the 24th.  And on

23  the 24th, of course, we would be prepared to answer any

24  questions that the court may have about the relief or

25  modifications to the form of order.

1          The next item, Your Honor, Number 5 on your

2    agenda, which is Docket Number 8, is the customer donor

3    goodwill programs motion.  That motion is in the same state

4    as the vendor motion in the sense that we believe we are

5    resolved with the survivor committee.  We're still working

6    through some issues with the unsecured creditors committee,

7    but we don't see any show stoppers there and are optimistic

8    that we will get to a resolution and can file that proposed

9    form of order under certification of counsel by close of

10   business tomorrow.

11         Item Number 6 on the draft agenda is the, I'll

12   call it, sort of colloquially, the noticing motion which is

13   at Docket Number 9.  We are resolved with parties on their

14   comments to the form of order and we will submit that form of

15   order under a certification of counsel.

16         The next item, Item Number 7 on the draft agenda,

17   is the utility motion which is at Docket Number 12.  We

18   believe we have resolved all comments that have been received

19   to that form of order and we will be submitting that form of

20   order under certification of counsel.

21         Item Number 8 is the cash management motion, that

22   is also at Docket Number 13.  This is another motion that we

23   have agreed with the committee's to schedule this motion to

24   be heard on April 15th and have modified the objection

25   deadline for the official constituents to April 1st because

1  that motion had the interim order, had scheduling in it the

2  draft order that the debtors are working on to modify the

3  dates and deadlines.  We will include the cash management

4  motion including the fact that it will be heard on April 15th

5  with an objection deadline for the official constituents of

6  April 1st.

7        Item 9 on the draft agenda is the wage motion.

8  That also occurs at Docket Number 14.  We are still working

9  through, at least, one issue with the official committees.

10  We believe we are very close and, again, this is one that we

11  believe we will be in a position to submit an agreed form of

12  order under certification of counsel by close of business

13  tomorrow.

14        Item Number 10 is the shared services motion.

15  This is Docket Number 15.  We have agreed with the official

16  constituents to move this motion to April 15th with an April

17  1st objection deadline for the official constituency.

18        Item Number 11 is the mediator motion.  This was a

19  motion that the debtors filed to appoint a judicial mediator.

20  This was not, of course, one of the motions that was heard at

21  the first day hearing. So, it did not have an interim or

22  final relief aspect to it.  It occurs, by the way, at Docket

23  Number 17.  We have agreed with the official constituents to

24  move this motion to the April 15th hearing and establish an

25  April 1st objection deadline for those official constituents.

1          Item Number 12 on the draft agenda is what I will

2    call the identified property dispute scheduling motion.  This

3    was a motion by which the debtors were seeking to establish a

4    schedule to resolve certain disputes pertaining to various

5    estate and non-estate property.  That occurred at Docket

6    Number 19.  We have agreed with the official constituents to

7    move the hearing with respect to this motion to April 15th,

8    also with an April 1st objection deadline.

9          Then, Your Honor, Item Number 13 on the agenda was

10   the Girl Scouts' motion for relief from the stay.  That

11   occurs at Docket Number 155.  I believe, Your Honor, the

12   court had scheduled a status conference with respect to that

13   motion on March 24th.  And the hearing, the actual hearing

14   with respect to that that motion was already scheduled for

15   April 15th. So, if the court would wish -- certainly, this is

16   the Girl Scouts' motion, not the debtors' motion, but I think

17   we're prepared to address the status issues, if the court

18   would like, on the 24th and go forward with the hearing on

19   April 15th.

20          And then, Your Honor --

21          MR. SCHNABEL:  Your Honor, this is --

22          MS. BOELTER:  Oh, sorry, go ahead.

23          MR. SCHNABEL:  Eric Lopez Schnabel, Dorsey &

24   Whitney.  Your Honor, should I speak now about the Girl

25   Scouts' motion?

1          THE COURT:  You can.  Are you on speaker phone?

2          MR. SCHNABEL:  Is that better, Your Honor?  I'm

3   sorry, I'm having some technical difficulties right now.

4          THE COURT:  It is better.  Thank you.

5          MR. SCHNABEL:  Okay.  Great.  Thank you.

6          Your Honor, just real quick, that's fine with us

7   to have a status, kind of, preliminary hearing on the 24th.

8   I was intending to meet with the debtors before so that we

9   could give you some idea of what the April 15th hearing would

10  be like from an evidentiary or just legal argument

11  perspective.

12          The other thing, just to alter the court, that we

13  have agreed to give the debtor till March 31st to respond to

14  the motion and that the official committee, both of them, and

15  the future claim rep would have till April 6th to enter

16  joinders, responses or nothing; whatever they want.  Then

17  April 10th would be our reply for the local rule.  I just

18  wanted to let the court know that status.

19          THE COURT:  Thank you.

20          MS. BOELTER:  Your Honor, that brings us to Item

21  Number 14 on the draft agenda which pertains to Adversary

22  Proceeding Number 20-50527.  This is the debtors' motion for

23  preliminary injunction which occurs or appears in the

24  adversary docket at Item Number 6.  With respect to this

25  particular motion my partner, Michael Andolina, will address

1  the court as to the status.

2          MR. ANDOLINA:   Thank you, Your Honor.  Michael

3  Andolina, Sidley Austin, on behalf of the debtors.

4          Your Honor, I want to reiterate Ms. Boelter's

5  thanks to not only the official committee and, of course, the

6  court for making herself available for this call, but also

7  the other lawyers that I know are appearing here who we have

8  been in communication with, with respect to the debtors'

9  motion for preliminary injunction.

10          I'm pleased to report that thanks to the efforts

11  of the survivors' committee, Mr. Stang, Mr. Orgel, Mr. Lucas,

12  their colleagues, and also the UCC, Ms. Springer and her

13  team, we have an agreed to consent order as to those official

14  parties with respect to the preliminary injunction motion

15  filed by the debtors.  That consent order would result in the

16  stay of the cases at issue until May 18th with provisions for

17  extending that stay.

18          There have been a total of five objections filed

19  in opposition to the preliminary injunction with respect to

20  certain specific cases between the survivors committee and

21  the debtors' legal team we have been in contact with the

22  parties filing those objections.  I believe that the current

23  state of affairs is some of these cases have unique factual

24  circumstances and based on the progress to date the debtors

25  are optimistic that we can work through these objections in

1   the next several days in advance of the March 24th hearing.

2          We would ask the court -- and, of course, we will

3   update the court on our progress with respect to those

4   objections.  We would ask the court that in the event we are

5   unable to reach agreement with respect to the outstanding

6   objections we would have until Monday at noon to file a short

7   reply addressing those objections and that we would have some

8   time to go forward with argument on the 24th.

9          Again, based on some of the progress we have made

10  and will continue to try to work as hard as we can to resolve

11  those objections, but we wanted to see if the court was

12  amendable to allowing us to file a brief reply in the event

13  we're unable to reach agreement with the outstanding

14  objectors.

15          THE COURT:  Yes.  That is acceptable.  And I'm

16  pleased to see that there was progress made between the

17  debtors and the survivors' committee.  And I am also

18  encouraging you, obviously, and the remaining five objectors

19  to continue your conversations to see if there can be a

20  resolution for this period between now and May 18th which is

21  when I understand the agreement with the committees is

22  through.

23          Let me ask this and I will let the debtors

24  respond, but then I will let the objectors or any other party

25  respond in the event that there is not a resolution with the

1  five objectors.  What I think I understood was that the

2  debtors do not anticipate a witness, but rather argument.  Is

3  that correct?

4          MR. ANDOLINA:  Yes, Your Honor.  I believe that is

5  accurate.

6          THE COURT:  Okay.  I'm trying to get a handle on

7  what the potential hearing would look like given the

8  logistical issues that we have.

9          Let me hear from any of the objectors, who wish to

10  speak, about what they would anticipate a hearing would look

11  like if there is no resolution.

12          MS. GREENBERGER:  Good afternoon, Your Honor.

13  This is Debbie Greenberger from Emery Celli.  I represent

14  Defendant Ron Hunter, who is one of the survivors in the

15  underlying tort action.

16          We are one of the objectors.  And I did receive

17  the proposed form consent order just in the last few hours.

18  So, we are reviewing that and seeing whether there is a basis

19  for us to withdraw our objection or resolve our objection in

20  advance of the 24th.  But if we cannot we agree with the

21  debtors' counsel that it would be argument by attorneys.

22  That could happen remotely and doesn't need any evidence or

23  witnesses.

24          THE COURT:  Thank you.

25          MR. SCHNEIDER:  Your Honor?

1          THE COURT:  Yes.

2          MR. SCHNEIDER:  This is Louis Schneider.  I'm

3   counsel for, it's been identified as, the Kentucky

4   Defendants.  Its seven individual victims that were

5   identified as defendants in the adversary proceeding.  We

6   prepared and filed a brief in opposition.  In addition, we

7   also prepared and filed a motion for expedited discovery with

8   regard to interrogatories, request for production document

9   and then depositions with regard to the adversary proceeding

10  that we wanted to do in advance of any hearing taking place.

11         The reason being is the evidence that was

12  presented in the motion for a preliminary injunction was,

13  essentially, you know, two, maybe three affidavits that were

14  filed in the record that, you know, we obviously needed to

15  explore and cross-examine the materials that were set forth

16  in those affidavits as well as statements that were made in

17  those affidavits.

18         So, from our position, prior to the court making a

19  decision on a preliminary injunction we would request that

20  discovery.  We had reached out to counsel for the debtors

21  early in March to request it and then prior to us filing our

22  motion for expedited discovery.  And we are working with

23  debtors' counsel to try and reach a resolution, you know, on

24  this issue and hopefully a hearing will not be needed on the

25  motion for preliminary injunction.

1          You know, with regard to that, without us having

2  the ability to present, you know, counter affidavits and/or

3  deposition testimony of the witnesses that provided

4  affidavits we feel that we're, arguably, at an unfair

5  disadvantage on that point.  So, you know, we would request

6  that if the court does allow for argument that we do have

7  argument on the 24th, but before the court makes a decision

8  that we allow for some limited discovery and, potentially,

9  additional briefing on the issues that were raised in the

10 debtors' motion for preliminary injunction before a

11 preliminary injunction is issued.

12          MR. ANDOLINA:  Your Honor, if I could respond.

13 This is Mike Andolina for the debtors.

14          THE COURT:  Okay.

15          MR. DESGROSSEILLIERS:  Your Honor, sorry there was

16 one more.  It's Mark Desgrosseilliers.  There was one more

17 defendant that wanted to speak.  I can wait.  I just wanted

18 to make sure you knew I was out there.

19          THE COURT:  Okay.  Thank you.

20          MR. ANDOLINA:  I just wanted to address Mr.

21 Schneider's comments.  We have had the opportunity over the

22 last several days to get to know each other very well.  I

23 think as Mr. Schneider indicated we made significant progress

24 in terms of resolving our disputes.  I'm hopeful that we can

25 get there before March 24th.  We have provided a response to

1  the discovery request, several documents, and we also made

2  our BSA's coverage counsel available for discussions with Mr.

3  Schneider.

4         We will continue to work as hard as possible to

5  come to a resolution on this issue.  To the extent that

6  additional information is required we will talk to Mr.

7  Schneider and work through that, but I remain optimistic that

8  we will not need an evidentiary hearing on the 24th.  If it

9  looks like that is not the case we will certainly inform the

10  court as soon as possible and talk about a proposal with

11  respect to, potentially, presenting evidence on that issue.

12         THE COURT:  Okay.  Thank you.

13         And let me make a comment, a general comment,

14  recognizing that this case is in its infancy and so I know

15  things are moving quickly for all parties and there are also

16  counsel who are not familiar with my practices.  If you have

17  a discovery dispute that needs immediate attention before a

18  hearing please contact Chambers so that we know that there is

19  a dispute.  You do not need to file a motion, a letter to

20  Chambers in an emergency situation is preferable so that we

21  can rule on it promptly, get a conference call together to

22  discuss the matter if necessary, etc.  So, that is for future

23  reference.

24         I am cautiously optimistic that this matter will

25  be resolved between now and the 24th, but, yes, if, in fact,

1  we need to have an evidentiary hearing I need to understand

2  what the parameters of that are going to be and we need to

3  talk logistics.

4          Okay, Mr. Desgrosseilliers?

5          MR. DESGROSSEILLIERS:  Thank you, Your Honor.

6  Very briefly.  Mark Desgrosseilliers on behalf of Jane Doe.

7  She is a victim in an action pending in Connecticut.

8          We joined in Mr. Schneider's brief and objection.

9  I just want to raise a couple of issues.

10         One, first of all, the debtors had said we are

11  working and believe that we will get to a resolution of our

12  issues with respect to, sort of, a temporary restraining

13  order with respect to certain of the BSA entities.  So, we

14  are confident we will get there.  But if we don't, Your

15  Honor, I just wanted to make clear that my client certainly

16  believes that this would be an evidentiary hearing as well

17  for us.  We don't have any motions pending for discovery

18  disputes, but we would certainly expect the preliminary

19  injunction to be an evidentiary hearing.  We have put certain

20  facts into -- we've contested certain facts, rather, Your

21  Honor.

22         So, that was it for me unless Your Honor has any

23  questions.

24         THE COURT:  Okay.  No.  I don't have any

25  questions.

1          Is there anyone else, any other objector who would
2   like to address the court?

3          MS. KELLER:   Thank you, Your Honor, this is Amy
4   Keller.   I'm an attorney with Lipsitz Green.   Our office
5   submitted an attorney affidavit by Laraine Kelley who is a
6   partner in the firm on behalf of LG-37 Doe in opposition to
7   both the debtors' motion for preliminary injunction,
8   extending the stay as well as their request for mediator in
9   referring these cases to mandatory mediation.

10          As far as I'm aware no one has been in contact.
11  We did receive one email earlier today, I believe, from a
12  representative of the newly comprised committee requesting
13  contact, but we haven't been contacted by a representative of
14  the debtor.   As far as I'm concerned the hearing would be
15  evidentiary in the sense that the facts that are asserted in
16  the motion, a lot of them are disputed or they're not case
17  specific.   So, specific to our case.   We have an -- we not
18  only sued what they're referring to as a BSA related party,
19  local counsel, but we also have sued the individual, who we
20  have identified as, the child molester.

21          So, it's unclear to what extent the stay would --
22  what they're requesting, how that would impact our case as to
23  him.   There is no specific insurance policy that was provided
24  in the documentation that refers to specifically to our case
25  and how it would apply and if it would apply. I think all of

1  that is pretty set forth in our affidavit.  So, I'm not sure

2  how that is going to be resolved and I have not been provided

3  a copy of the proposed consent order that counsel for the

4  debtor indicated was circulating.

5          MR. STANG:  Your Honor, this is Mr. Stang.  May I

6  make a comment about the tort committee's efforts to

7  communicate with the larger plaintiff body?

8          THE COURT:  Okay.

9          MR. STANG:  Your Honor, we have established, in

10  effect, a list for anyone who we have been in touch with or

11  has been in touch with us so that we can give updates

12  regarding the case in general, but specifically, the

13  preliminary injunction drafts that Mr. Andolina referenced.

14          We sent out a draft preliminary injunction consent

15  order yesterday.  And if any counsel on the call today wish

16  to be on that list serve I would ask them to please check my

17  notice of appearance, I can give out my email address, Judge,

18  if you would like on this call.  But we did file notices of

19  appearance.  We will add them within minutes to the lift

20  serve and we will continue to provide updates on the

21  preliminary injunction negotiations and, of course, matters

22  regarding the case in general.

23          Thank you, Your Honor.

24          THE COURT:  Thank you.  Why don't you give out

25  your email address?

1      MR. STANG:  I feel like a political candidate.  It

2  is J-S-T-A-N-G, first initial, last name, no punctuation in

3  between, at P as in Paul, S as in Sam, Z as in zebra, J as in

4  Jones, L-A-W.com.

5      THE COURT:  Thank you.

6      MR. ANDOLINA:  This is Mike Andolina again for the

7  debtors and we will certainly follow up with the objector in

8  addition to them following up with the survivors' committee.

9  We will be in touch.

10      THE COURT:  Okay.  Anyone else?

11      (No verbal response)

12      THE COURT:  Okay.  If my notes are correct then

13  the only thing that the debtors expect to go forward with in

14  possibly any kind of a contested matter is the preliminary

15  injunction motion.  And for that to the extent that it is not

16  resolved and, of course, I encourage everyone to keep

17  working, we will need to establish how that is going to go

18  forward on an evidentiary basis.  I would then encourage the

19  debtors and the objectors to come up with a process that they

20  think is appropriate or can work.

21      We have the ability, through video conferencing,

22  to have witnesses available to be cross-examined.  I have a

23  letter I've written in another case that I can massage for

24  this case to explain how that will work and what will be

25  necessary.  And we, of course, have to think about exhibits

1 as well.  If the parties would be in agreement on certain

2 declarations coming in I do recall reading the declaration

3 that Ms. Keller spoke of.  If there is agreement that that

4 declaration can come in that's fine.  If there is need for

5 witnesses we will have to deal with that.

6          To the extent that we need evidence we've got to

7 plan for that in advance.  So, I would like a progress report

8 at the end of the day tomorrow and then I think, again, at

9 noon on Monday with respect to this particular matter.  We

10 will look for COC's on the matters that the debtor

11 anticipates will be resolved.  And unless I have any

12 questions I will sign orders submitted under COC.

13          I'm getting some feedback.  I'm going to have to

14 figure that out.

15          Let me ask generally as well how the reception is

16 working and how people -- whether people are able to hear,

17 whether there's a lot of background noise or any other

18 comments people have with respect to the reception because we

19 will be in this mode next week.  So, we're trying to work out

20 any kinks we can work out recognizing that we're all going to

21 have to adjust.

22          MR. STANG:  Your Honor, this is Mr. Stang.  I

23 think your comment or your clerk's comment about not using a

24 speaker phone is well taken.  It gets very muffled.  And

25 while I appreciate people may be in gathering, although

1  they're not supposed to be, it does make it hard to hear.

2          THE COURT:  Okay.  Anyone else?

3          MR. ANDOLINA:  Your Honor, this is Mike Andolina

4  again.  I agree with Mr. Stang.  You are coming through loud

5  and clear.  And with respect to the court's request for a

6  status report at the end of the day tomorrow and also with

7  needed Monday morning the debtors will certainly coordinate

8  that and be in touch with the court.

9          THE COURT:  Okay.

10          MR. SCHNEIDER:  Your Honor?

11          THE COURT:  Yes.

12          MR. SCHNEIDER:  This is Mr. Schneider on behalf of

13  the Kentucky Defendants who are in the adversary proceeding,

14  and I spoke earlier.  We are preparing to proceed with an

15  injunction hearing and, you know, like I said if we are

16  unable to work something out either today, or tomorrow, or

17  Monday next week prior to the hearing, you know, our ability

18  and request to conduct discovery prior to that hearing looks

19  like we filed a motion back on the 11th of March with regard

20  to that.  I did not follow up with the court in terms of

21  requesting, sort of, an expedited phone conference or

22  anything with regard to that because it was my understanding

23  from speaking with my local counsel that we would hear back

24  on that issue.

25          Is that something that I am able to address with

1  the court via phone conference or something else?

2          THE COURT:  We can address it right now.

3          MR. SCHNEIDER:  Okay.  Your Honor, with that

4  motion I did file and serve discovery requests, a set of

5  interrogatories that were directed towards the affidavits

6  that were filed in support of the motion for preliminary

7  injunction as well as the specific set of requests for

8  production of documents that were directed toward the

9  representations, you know, made in the motion as well as the

10  affidavits in support thereof.

11          In addition, I asked for -- you know, normally you

12  get 30 days to respond to discovery requests because of the

13  expedited nature of this and we'd ask that responses to those

14  interrogatories and request for production I believe be

15  provided today and then for us to be able to take depositions

16  of those identified individuals as well as, I believe, a

17  corporate representative of the CFO of the Boy Scouts discuss

18  the representations that were made in there over the next

19  several days.

20          Those requests were made.  They were shared with

21  counsel for the debtors, counsel for the Boy Scouts.  And

22  although we've had positive discussions about reaching

23  resolutions of a preliminary injunction, and I did receive

24  today a few documents related to the specific insurance

25  coverage issues that kind of are in play in my case I've

1  never gotten any type of commitment or response on the issues

2  with regard to providing that discovery prior to the hearing

3  and/or allowing for those depositions to proceed prior to the

4  hearing.

5       Its not just, obviously, for us, Your Honor, but

6  also for the other parties that have objected that filed

7  objections.  There's five of us that have objected, but there

8  may be more prior to the hearing date.

9       THE COURT:  Well, I think the objection deadline

10  has passed.  What I'm going to let you do -- well, let me

11  hear a response from the debtor.

12       MR. ANDOLINA:  Yes.  Thank you, Your Honor. It's

13  Michael Andolina.

14       I would just note that over the hours, and hours,

15  and hours of conversations I've had with Mr. Schneider and

16  his colleagues in the last few days he's not raised the issue

17  of specific necessary discovery.  Today when he asked about

18  specific insurance information we immediately sent him a

19  number of letters. We also put him directly in touch with our

20  insurance coverage counsel to address those issues.

21       Again, to the extent we have specific issues and

22  specific documents I'm happy to talk to them all afternoon

23  and provide that information.  To the extent that he needs

24  testimony related to his specific objection were also willing

25  to work with him on that, but to spend the court's time and

1 the time of literally hundreds of parties when he's been on

2 conversations for the last few days is, frankly, a bit

3 frustrating.

4          So, we're willing to work through this.  We're

5 willing to provide discovery that relates to his claim, but,

6 again, we have a resolution with the TCC that we've worked

7 very hard on.  And to the extent that he's looking for

8 something that goes beyond his specific issue I don't think

9 that's appropriate.

10          THE COURT:  Okay.  Here's what we're going to do,

11 I would like the two of you to speak this afternoon to see if

12 you can resolve the outstanding discovery.  As far as I'm

13 concerned documents can still be produced and depositions can

14 still be taken before, is it, next Wednesday or Tuesday, I

15 forget, and if there are any issues that the parties cannot

16 resolve in terms of discovery please reach out to Ms. Johnson

17 and I'll get the parties on the phone and we'll hash through

18 it.

19          MR. ANDOLINA:  Thank you, Judge.

20          THE COURT:  Okay.  Anything else that anyone wants

21 to raise?

22      (No verbal response)

23          THE COURT:  Okay.  So, two things I note.  One, if

24 you're going to be participating by video next week, and I

25 would expect that to happen if we have an evidentiary hearing

1   and if -- and it would be for those parties who will be

2   questioning witnesses.  So, witnesses and those parties

3   questioning witnesses who will get priority on video

4   conferencing because I'm told optimally the maximum is 10,

5   although that might be a little flexible.  You might want to

6   try a test run and make sure also that you have the right

7   apps to support the Skype call.

8              Nick, am I right Skype for Business?

9              UNIDENTIFIED SPEAKER:  Skype for Business.

10             THE COURT:  Skype for Business.  That didn't work

11  for everybody yesterday on something I had.  They had to re-

12  route something through home and open an app.  So, you might

13  want to test that out.

14             Also, we hear that CourtCall is swamped.  So, you

15  should call early to get registered for CourtCall and

16  remember the Skype for Business is only video.  All the audio

17  has to run through CourtCall because they are actually now

18  recording everything so that we have an official recording

19  that we can make a transcript from.  So, that is new as well.

20             So, all audio, even if you're on the video, runs

21  through CourtCall.  So, call early to sign-up for the hearing

22  and then I would recommend you call early on the day of the

23  hearing to make sure that you get in before the hearing

24  starts; although, obviously, we're making accommodations for

25  people.  But all of the logistics take time we are finding.

1  So, please give yourself some time.  If you have any

2  questions on the logistics you can contact us.

3          I will also get some form of letter out to people

4  in the event that we have an evidentiary hearing so that you

5  can start thinking about the logistics of an evidentiary

6  hearing versus simply an oral argument which those are very

7  different types of hearings.

8          Okay.  I'll say it for the last time keep working

9  on the resolutions, even the temporary resolutions are

10  helpful.  And when I get a COC I will most likely sign your

11  order.

12          Anything further?

13          MS. BOELTER:  Not from the debtor, Your Honor.

14          THE COURT:  Thank you.  This was helpful.  We are

15  adjourned.

16          MS. BOELTER:  Thank you.

17      (Proceedings concluded at 2:47 p.m.)

18

19                    CERTIFICATE

20

21      I certify that the foregoing is a correct transcript

22  from the electronic sound recording of the proceedings in the

23  above-entitled matter.

24

/s/Mary Zajaczkowski              February 14, 2020

25  Mary Zajaczkowski, CET**D-531