**EXHIBIT A**
(Declaration of James I. Stang)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered |

## DECLARATION OF JAMES I. STANG IN SUPPORT OF APPLICATION OF THE TORT CLAIMANTS' COMMITTEE FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 328 AND 1103, AND FED. R. BANKR. P. 2014, AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL TO THE TORT CLAIMANTS COMMITTEE EFFECTIVE AS OF MARCH 4, 2020

I, James I. Stang declare under penalty of perjury as follows:

1.　　I am a partner of Pachulski Stang Ziehl & Jones LLP ("PSZ&J" or the "Firm"), and maintain an office at 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067. I am duly admitted to practice law in the State of California and the United States District Courts for the Southern, Eastern, Central and Northern Districts of California. I am authorized to submit this declaration (the "Declaration") in support of *Application of the Tort Claimants' Committee for Entry of an Order, Pursuant to 11 U.S.C. §§ 328 and 1103, and Fed. R. Bankr. P. 2014, Authorizing and Approving the Employment and Retention of Pachulski Stang Ziehl & Jones LLP as Counsel to the Tort Claimants' Committee Effective as of March 4, 2020* (the "Application").[2]

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms not otherwise defined herein shall have the meanings and definitions ascribed to such terms in the Application.

DOCS_DE:227698.6 85353/001

2.      Neither I, the Firm, nor any partner, of counsel, or associate thereof, insofar as I have been able to ascertain, has any connection with the Tort Claimants' Committee, the Debtors, their creditors or any other parties in interest herein, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, except as set forth herein.

3.      The Firm has made the following investigation of disinterestedness prior to submitting this Declaration. The Firm has undertaken a full and thorough review of its computer database, which contains the names of clients and other parties interested in particular matters. The Firm requires all of its professionals, before accepting the representation of a new client, or the representation of an existing client in a new matter, to perform a conflicts check through the Firm's database and to enter conflict information regarding new clients or new matters into that database. Thus, a review of said computerized database should reveal any and all actual or potential conflicts of interest with respect to any given representation. In particular, an employee of the Firm, under my supervision, entered the names of the Debtors, the creditors of the Debtors as disclosed by it in filings with the Court, counsel to the creditors of the Debtors as disclosed by the Debtors in Court filings, and the U.S. Trustee through the Firm's database.

4.      Based on the results of the Firm's search of its database, it appears that PSZ&J does not hold or represent any interest adverse to and has no connection, subject to the disclosures set forth below, with the Debtors herein, its creditors, the Tort Claimants' Committee, the U.S. Trustee or any party in interest herein in the matters upon which PSZ&J is to be retained, and is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

5. PSZ&J and certain of its partners, of counsel, and associates represented, represent and, in the future, may represent creditors of the Debtors in connection with matters unrelated to the Debtors and these Cases. At this time, the Firm is not aware of any such representations except as noted herein. If the Firm identifies any further such representations, the Firm shall make further disclosures as may be appropriate at that time.

6. The Firm has represented, may represent, and in the future will likely represent debtors and creditors' committees in cases unrelated to the Debtors and these Cases wherein one or more of the law firms representing the members of the Tort Claimants' Committee or other parties in interest serve as or will serve as professionals to members of those committees.

7. The Firm has worked and is currently working in a number of cases were Berkeley Research Group, LLC, the proposed financial advisor to the Tort Claimant's Committee in these Cases, and/or its principals, have been retained. The Firm also works in other cases where professionals involved in these Cases may be employed in various roles. None of these professional engagements present any conflict.

8. The Firm further discloses that in February of 2020 it was retained to represent the Pension Benefit Guaranty Corporation (the "PBGC") in connection with litigation pending in the United States District Court for the Central District of California which is unrelated to these Cases (the "Unrelated Litigation"). The PBGC is a member of the Official Committee of Unsecured Creditors appointed in these Cases. Currently, the Unrelated Litigation is stayed due to the bankruptcy of the defendant therein and the Firm's role in that matter has been limited. The Firm has not billed the PBGC for any services in connection with the Unrelated Litigation.

9. Since 2004, the Firm has represented sexual abuse survivor committees in sixteen (16) chapter 11 cases of Catholic diocesan and religious order debtors and in the chapter 11 case of USA Gymnastics and the official creditors committee of The Weinstein Company (which included two members with abuse claims) (the "Prior Committee Counsel Cases"). Some abuse claimants in these Prior Counsel Committee Cases have claims against the Debtors. The Firm currently represents abuse survivors committees in the chapter 11 cases of the Diocese of Rochester, the Diocese of Buffalo and the Archdiocese of Santa Fe and is informed that certain survivors in those cases have claims against the Debtors. Counsel for some of the individual claimants in the Prior Committee Counsel Cases also represent claimants against the Debtors in these Cases.

10. Prepetition the Firm consulted with multiple law firms representing individuals holding sexual abuse claims against the Boy Scouts of America, the Local Councils and/or Chartered Organizations (as there terms are defined in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket 16] ("Plaintiffs' Counsel").

11. In the Fall of 2018, the Firm was retained by certain of the Plaintiff's Counsel law firms to attend a mediation in Chicago. The Firm received a fee of $10,000 for services in connection with that representation. This representation concluded in April of 2019 and the Firm is not owed any fees in connection with the representation.

12. In March of 2019, the Firm was contacted by the Boy Scouts of America regarding the formation of an ad hoc committee of Plaintiffs' Counsel and it was discussed that the Firm may represent such an ad hoc committee. As part of those discussions, the Firm met with James Patton, the proposed future claims representative (the "FCR"), his counsel and his

special insurance counsel. In response to these to discussions, the Firm prepared and circulated (a) an engagement agreement, (b) certain ad hoc committee organizational documents, (c) a common interest agreement with the FCR and (d) a letter to the Boy Scouts of America (the "BSA") outlining the role of an ad hoc committee and the terms and conditions of such a committee's relationship with the BSA. While certain of these documents were executed by Plaintiffs' Counsel and the FCR, copies executed by the BSA or the Firm were not exchanged because, in May of 2019, the BSA decided not to provide certain information and not to pay any fees and expenses that may be incurred by professionals for an ad hoc committee. During the discussions about possibly forming an ad hoc committee, no confidential information was exchanged with the BSA or the FCR and no ad hoc committee was ever formed. Shortly thereafter, the Plaintiffs' Counsel involved in this effort concluded that an ad hoc committee would serve no purpose and the Firm's discussion with Plaintiffs' Counsel about the formation of an ad hoc committee ended without any such committee being formed.

13.     Between May and September of 2019, the Firm continued to communicate with certain Plaintiffs' Counsel and with counsel for the BSA including a financial presentation meeting with the BSA in September of 2019.

14.     In the Fall of 2019, the BSA contacted the Firm to arrange for a group of Plaintiffs' Counsel to participate in a mediation in New York. Certain parties who were in the original proposed ad hoc group were invited and certain other groups were invited. The BSA paid the Firm $175,000 for services provided and to be provided to the law firms in connection with the mediation. The Firm attended a mediation with the BSA on November 21 and 22, 2019. The mediation was not successful and, several days after the mediation sessions took place, the BSA informed the Firm that it was terminating any funding of the Firm's fees and expenses. The

Firm's fees for those services exceeded the $175,000 paid by the BSA and no amounts are owed back to the BSA. The Firm has written off any sums which remained due in excess of the $175,000 and the Firm has no claim against the Debtors. Since the conclusion of the mediation, which did not result in an agreement on any issue, the Firm continued to consult with various Plaintiffs' Counsel without any compensation or promise of compensation. Certain of the Plaintiff's Counsel are counsel to members of the Tort Claimants' Committee.

15. The Firm periodically donates funds to organizations that advocate on behalf of sexual abuse victims and crime victims.

16. Based on the foregoing, PSZ&J believes that it can represent the Tort Claimants' Committee in all of the matters for which the Tort Claimants' Committee seeks to retain the Firm.

17. PSZ&J is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm, its partners, of counsel and associates:

    a) are not creditors, equity security holders or insiders of the Debtors;

    b) are not and were not, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors;

    c) are not and were not, within three (3) years before the Petition Date, an investment banker for a security of the Debtors, or an attorney for such investment banker in connection with the offer, sale or issuance of any security of the Debtors; and

    d) do not have an interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason, except as disclosed herein.

18. The Firm has not received any retainer from the Debtors, the Tort Claimants' Committee, or any member of the Tort Claimants' Committee, nor has the Firm received any payment or promise of payment, during the one-year period prior to the Petition

Date other than as disclosed herein. No compensation has been paid or promised to be paid from a source other than the Debtors' estates in these Cases. No promises have been received by the Firm or by any partners, of counsel or associate thereof as to compensation in connection with these Cases other than in accordance with the provisions of the Bankruptcy Code. The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with these Cases, except among the partners, of counsel, and associates of the Firm. Neither the Tort Claimants' Committee nor any of its representatives are or will be liable for fees or costs incurred by the Firm in its representation of the Tort Claimants' Committee.

19. Subject to Court approval in accordance with section 330(a) of the Bankruptcy Code and any applicable Orders of this Court, compensation will be payable to PSZ&J on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by PSZ&J.

20. It is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's Cases. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document retrieval, photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by the Firm to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses but not secretarial and other overtime. The Firm will charge the Tort Claimants' Committee for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients and all amendments and supplemental standing orders of the Court. The

Firm believes that it is more appropriate to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

21.    The Firm's current standard hourly rates for professionals and paralegals presently are:

| | | |
|---|---|---|
| (a) | Partners/Counsel | $675.00 to $1,495.00 per hour |
| (b) | Associates | $625.00 to $725.00 per hour |
| (c) | Paralegals | $395.00 to $425.00 per hour |

22.    The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

23.    PSZJ has agreed to contribute ten percent (10%) of the total amount of fees it bills in these Cases to the fund established in these Cases to compensate survivors of sexual abuse.

24.    During these Cases, individual Tort Claimants' Committee members will incur out of pocket expenses related to their service as Tort Claimants' Committee members (any such expenses "Committee Members' Expenses"). To alleviate any problems that may arise for Tort Claimants' Committee members on account of any delay in seeking and obtaining reimbursement for such expenses, PSZ&J proposes to pay such expenses directly or reimburse Tort Claimants' Committee members for any such expenses and then add such expenses to the Firm's invoices in these Cases and it shall seek allowance of such expenses on the same basis as other expenses incurred by the Firm in these Cases.

**STATEMENT REGARDING U.S. TRUSTEE GUIDELINES**

25.    As this Court is aware, the Executive Office for United States Trustees ("EOUST") recently adopted the new *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11*

*Cases* (the "Appendix B Guidelines"). By their terms, the Appendix B Guidelines "apply to the USTP's review of applications for compensation filed by attorneys in larger chapter 11 cases," and are intended as an update to the original Guidelines (the "Appendix A Guidelines") adopted by the EOUST in 1996. The Appendix A Guidelines have been a part of this Court's local procedures for years. In other chapter 11 cases where it has been retained, PSZ&J has filed its fee applications in compliance with the Appendix A Guidelines.

26. Among other things, the Appendix B Guidelines ask attorneys in larger chapter 11 cases to provide additional documentation and make significant new disclosures in connection with their retention under section 327 and compensation under section 330 of the Bankruptcy Code. As the Appendix B Guidelines themselves acknowledge, "the Guidelines do not supersede local rules, court orders, or other controlling authority," and it remains to be seen how the Appendix B Guidelines will be incorporated into larger chapter 11 cases.

27. PSZ&J intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the Appendix B Guidelines both in connection with this Application and the interim and final fee applications to be filed by PSZ&J in the course of its engagement. It is PSZ&J's intention to work cooperatively with the U.S. Trustee to address the concerns that prompted the EOUST to adopt the Appendix B Guidelines; however, in doing so, PSZ&J reserves all rights as to the relevance and substantive legal effect of the Appendix B Guidelines in respect of any application for employment or compensation in these cases that falls within the ambit of the Appendix B Guidelines.

## ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES

28. PSZ&J provides the responses listed below as a courtesy to comply with the *Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* (the "2013

UST Guidelines").[3] Pursuant to Part D1 of the 2013 UST Guidelines, PSZ&J is seeking employment as counsel for the Tort Claimants' Committee under sections 328 and 1103 of the Bankruptcy Code and it hereby provides the following responses set forth below:

| Questions required by Part D1 of 2013 UST Guidelines: | Answer: | Further explanation: |
|---|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? | No. | |
| Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? | No. | |
| If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and reasons for the difference. | Not applicable. | |
| Has your client approved your respective budget and staffing plan, and, if so, for what budget period? | Yes. | PSZJ anticipates filing a budget at the time it files its interim fee applications, and any such budget it may file will be prior approved by its client. In accordance with the 2013 UST Guidelines, the budget may be amended as necessary to reflect changed circumstances or unanticipated developments. |

---

[3] *See* 78 Fed. Reg. 36248 (June 17, 2013).

29. Subject to Court approval, the Tort Claimants' Committee may seek to retain various professionals during the pendency of these Cases. PSZ&J intends to work closely with any such professionals retained by the Tort Claimants' Committee, to ensure that there is no unnecessary duplication of services performed on behalf of the Tort Claimants' Committee or charged to the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: Los Angeles, California
March 25, 2020

/s/ James I. Stang
James I. Stang