1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:

BOY SCOUTS OF AMERICA and
DELAWARE BSA, LLC,

                  Debtors.
. . . . . . . . . . . . . . . . .
BOY SCOUTS OF AMERICA,

                  Plaintiff,

     v.

A.A., *et al.*,

                  Defendants.
. . . . . . . . . . . . . . . . .

.   Chapter 11
.
.   Case No. 20-10343 (LSS)
.
.
.
.
.
.   Adv. Pro. No. 20-50527
.
.
.   Courtroom No. 2
.   824 North Market Street
.   Wilmington, Delaware 19801
.
.   March 30, 2020
.   11:00 A.M.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:        Derek C. Abbott, Esquire
                       Andrew R. Remming, Esquire
                       Joseph C. Barsalona, II, Esquire
                       Eric W. Moats, Esquire
                       Paige N. Topper, Esquire
                       MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                       1201 North Market Street, 16th Floor
                       P.O. Box 1347
                       Wilmington, Delaware 19899

Audio Operator:        Ginger Mace

Transcription Company: Reliable
                       1007 N. Orange Street
                       Wilmington, Delaware 19801
                       (302)654-8080
                       Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

APPEARANCES (Continued):

For the Debtors:          James F. Conlan, Esquire
                          Thomas A. Labuda, Esquire
                          Michael C. Andolina, Esquire
                          Matthew E. Linder, Esquire
                          SIDLEY AUSTIN LLP
                          One South Dearborn Street
                          Chicago, Illinois 60603

                          - and -

                          Jessica C. Boelter, Esquire
                          SIDLEY AUSTIN LLP
                          787 Seventh Avenue
                          New York, New York 10019

For the U.S. Trustee:     David Buchbinder, Esquire
                          Hannah McCollum, Esquire
                          UNITED STATES DEPARTMENT OF JUSTICE
                          OFFICE OF THE UNITED STATES TRUSTEE
                          844 King Street, Suite 2207
                          Lockbox 35
                          Wilmington, Delaware 19801

For The Church of Jesus   Adam J. Goldberg, Esquire
Christ of Latter-Day-     LATHAM & WATKINS LLP
Saints:                   885 Third Avenue
                          New York, New York 10022

                          - and -

                          Michael J. Merchant, Esquire
                          RICHARDS, LAYTON & FINGER LLP
                          One Rodney Square
                          920 North King Street
                          Wilmington, Delaware 19801

For Girl Scouts of the    Eric Lopez Schnabel, Esquire
United States of          DORSEY & WHITNEY LLP
America:                  1000 N West Street, Suite 1410
                          Wilmington, Delaware 19801

1   APPEARANCES (Continued):

2   For Abuse Survivors:        Mike Finnegan, Esquire
                                JEFF ANDERSON & ASSOCIATES
3                               366 Jackson Street, Suite 100
                                St. Paul, Minnesota 55101
4
                                - and -
5
6                               Stephen Neuberger, Esquire
                                THE NEUBERGER FIRM, P.A.
7                               P.O. Box 4481
                                Wilmington, Delaware 19807
8
                                - and -
9
10                              Paul Mones, Esquire
                                PAUL MONES PC
11                              13101 Washington Boulevard
                                Los Angeles, California 90066
12
                                - and -
13
14                              Stephen F. Crew, Esquire
                                CREW JANCI LLP
                                1200 NW Naito Parkway, Suite 500
15                              Portland, Oregon 97209

16                              - and -

17                              Gilion Dumas, Esquire
                                DUMAS & VAUGHN
18                              3835 NE Hancock Street, Suite GL-B
                                Portland, Oregon 97212
19
                                - and -
20
21                              Michael T. Pfau, Esquire
                                PFAU COCHRAN VERTETIS AMALA
22                              403 Columbia Street, Suite 500
                                Seattle, Washington 98104
23

24

25

```
1    APPEARANCES (Continued):

2    For Interested Parties:    James Stang, Esquire
                                PACHULSKI STANG ZIEHL & JONES LLP
3                               10100 Santa Monica Boulevard
                                13th Floor
4                               Los Angeles, California 90067

5                               - and -

6                               James E. O'Neill, Esquire
                                PACHULSKI STANG ZIEHL & JONES LLP
7                               919 North Market Street, 17th Floor
                                Wilmington, Delaware 19801
8

9                               - and -

10                              Ilan D. Scharf, Esquire
                                PACHULSKI STANG ZIEHL & JONES LLP
11                              780 Third Avenue, 34th Floor
                                New York, New York 10017
12

13   For Abused in               Richard N. Goldfarb, Esquire
     Scouting:                   ZUCKERMAN SPAEDER LLP
14                               1800 M Street NW, Suite 1000
                                 Washington, DC 20036
15
                                 - and -
16
                                 Richard S. Cobb, Esquire
17                               LANDIS RATH & COBB LLP
                                 919 N Market Street, Suite 1800
18                               Wilmington, Delaware 19801

19

20   For Ad Hoc Committee:       Richard G. Mason, Esquire
                                 WACHTELL, LIPTON, ROSEN & KATZ LLP
21                               51 W 52nd Street, Suite 29
                                 New York, New York 10019
22

23

24

25
```

```
 1  APPEARANCES (Continued):

 2  JPMorgan Chase:          Matthew Ward, Esquire
                             WOMBLE BOND DICKINSON
 3                           1313 North Market Street
                             Wilmington, Delaware 19801
 4
                             - and -
 5
                             Louis R. Strubeck, Esquire
 6                           Kristian Gluck, Esquire
                             NORTON ROSE FULBRIGHT US LLP
 7                           2200 Ross Avenue
                             Dallas, Texas 75201
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

## INDEX

2

3    NOTICE OF TELEPHONIC HEARING REGARDING RULING ON THE BSA'S
     MOTION FOR A PRELIMINARY INJUNCTION PURSUANT TO SECTIONS

4              105(A) AND 362 OF THE BANKRUPTCY CODE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Telephonic hearing commences at 9:45 a.m.)

2              THE COURT:  Thank you, Michael.

3              Good morning, counsel.  This is Judge Silverstein

4    and we're here today in the case of <u>Boy Scouts of America</u>,

5    case number 20-10343.

6              Let me just make sure we are live.  Counsel, can

7    hear me, please respond yes, if you can.

8        (A Chorus of "Yes, Your Honor")

9              THE COURT:  Okay.  Thank you very much.

10              This is the time that I set for my ruling on Boy

11    Scouts of America's request for a preliminary injunction.

12    I'm going to be reading my decision into the record, and I

13    will give you the outcome first.

14              First, I will enter the consent order.  It has

15    been agreed to be debtor and the two committees and as to

16    those defendants who did not object to the preliminary

17    injunction motion, it provides lesser relief than what was

18    requested.

19              Second, as to LG 37 Doe, the remaining objector, I

20    will overrule the objection.  For the reasons I will state, I

21    will extend the consent order as it relates to LG 37 Doe's

22    lawsuit to claims made against the Greater Niagara Frontier

23    Council.  (indiscernible 9:46:57) is directed at LG Doe's

24    claims against Douglas Nail.

25              Now, I will get into the text of my ruling.

1          Boy Scouts of America or BSA filed its bankruptcy

2    case on February 18, 2020.  In its filing, it acknowledges

3    the damage and pain suffered by victims because of sexual

4    abuse at the hands of individuals involved in scouting.

5          Debtors state that the bankruptcy filing had a

6    dual purpose: to equitably compensate victims of abuse and to

7    ensure that BSA emerges from bankruptcy with the ability to

8    continue its mission of preparing young people for life

9    consistent with Boy Scout values.

10          At the time of the bankruptcy filing, there were

11    approximately 275 lawsuits pending against Boy Scouts in

12    state and federal courts around the country brought by abuse

13    victims.

14          Further, attorneys for abuse victims have

15    identified another 1400 claims that had not been filed by the

16    petition date.

17          After the filing, the office of the United States

18    Trustee formed two committees: one consisting of abuse

19    victims, the tort claimant's committee and; one, consisting

20    of other holders of general unsecured claims, the unsecured

21    creditors committee.

22          None of the 261 local councils are part of these

23    bankruptcy cases, but they too have organized by forming an

24    ad hoc committee.

25          The filing of the adversary proceeding and the

1 request for a preliminary injunction are part of what BSA

2 would characterize as an organized approach to address the

3 abuse cases.  Other parts of BSA's organized approach include

4 the filing of a placeholder plan and disclosure statement on

5 the first day, filing a motion to require mandatory mediation

6 before a judicial mediator regarding a global consensual

7 resolution, seeking court appointment of a future claim's

8 representative, and filing a motion to set a schedule to

9 determine anticipated disputes over debtor's available

10 assets.  BSA also removed state court actions to district

11 court and filed a motion in the Delaware District Court

12 seeking to transfer all the moot cases to that court.

13        Others, particularly the abuse victims, might

14 characterize the approach differently.  Indeed, those filing

15 objections characterized the bankruptcy case as an attempt to

16 avoid liability and rest control of the underlying cases away

17 from plaintiff.  I make no characterization of the approach,

18 nor am I going to comment now on any matters other than the

19 request before me.

20        The request in the preliminary injunction motion

21 is to stay the underlying abuse litigation for a period of

22 180 days from the issuance of the injunction.  Since the

23 request was made, BSA has negotiated with the tort claimant's

24 committee and the unsecured creditor's committee and has

25 filed with the court a proposed form of consent order.

1           The proposed consent order would stay the

2  underlying litigation through May 18, 2020 or a period of

3  fifty-five days from the hearing as against what is defined

4  as the BSA related parties.  These nondebtor parties are

5  listed on Schedule 2 to the proposed consent order and

6  consist of Learning for Life, local council, and chartered

7  groups that organize scouting units.

8           In its reply to the objections, BSA makes clear

9  that the consent order does not enjoin the underlying

10 litigation as against alleged abusers.

11          The proposed consent contains many detailed

12 provisions, which I will not try to discuss in full here, but

13 of particular importance, it does not enjoin the filing or

14 service of a complaint against the BSA related parties.  This

15 ensures no statute of limitations as to those parties expire

16 while the stay is in place.  And the proposed consent order

17 provides for an extension of deadlines in the underlying

18 litigation.

19          In exchange for the agreed to injunction, BSA has

20 committed to using its reasonable best efforts to produce and

21 provide access to relevant information that could support a

22 global resolution of the bankruptcy cases through a

23 consensual plan of reorganization.  Debtor represents that it

24 has provided both committee's advisers with access to a

25 secured data room containing certain materials.

1        The consent order can be extended by mutual

2   agreement of BSA and the two committees, via a stipulation.

3   Plaintiffs in the underlying action can object to any

4   extension.  And if any objection is not resolved, the court

5   will decide whether the stay will be extended in any given

6   underlying action.

7        Five objections were filed to the preliminary

8   injunction motion.  Since the proposed consent order was

9   filed on the docket, four of those objections have been

10  resolved.  The remaining objection is that filed by LG 37 Doe

11  against Boy Scouts of America, Greater Niagara Frontier

12  Council, Inc., and Douglas Nail.

13       LG Doe's objection took the form of the affidavit

14  of Lorraine Kelly, a senior partner in the firm representing

15  LG 37 Doe.  In it, LG 37 Doe objects to the motion for a

16  preliminary injunction, as well as the mandatory mediation

17  motion.  The mandatory motion is not currently before me.

18       The status of LG 37 Doe's case is not disputed.

19  The complaint was filed in the Supreme Court of the State of

20  New York County of Erie on December 3, 2019.  Douglas Nail

21  filed his answer on January 15, 2020.  And Boy Scouts of

22  America and the Greater Niagara Frontier Council filed a

23  joint answer on February 3, 2020.

24       On February 19, 2020, BSA filed a notice of

25  removal in the United States District Court for the Western

1  District of New York.  On March 19, 2020, plaintiff filed a

2  motion to sever, remand, and/or abstain.  Judge Frank P.

3  Geraci, Jr. has ordered that defendant's response is due on

4  April 3, 2020 and plaintiff's reply is due April 10, 2020.

5          LG 37 Doe makes three arguments in the objection:

6          First, he argues that the preliminary injunction

7  is in direct contravention of the New York State Child

8  Victim's Act;

9          Second, he argues that Boy Scouts has failed to

10  show unusual circumstances to extend the automatic stay to

11  nondebtors;

12          Third, LG 37 Doe argues that Boy Scouts cannot

13  meet the traditional test for a preliminary injunction.

14          In its reply to LG 37 Doe's objection, debtor

15  contends it meets all applicable standards and confirms that

16  it seeks to have the consent order extended to the underlying

17  case and not the original six-month preliminary injunction

18  request.

19          The preliminary injunction hearing was held on

20  March 24.  I took evidence and entertained argument.  The

21  declaration of Brian Whitmore was admitted into evidence as

22  were two declarations made by Adrian Azer.  Both witnesses

23  appeared by Skye Videoconference.

24          LG 37 Doe did not proffer any affirmative

25  evidence, but I am considering the documents attached to Ms.

1 Kelly's declaration.  Also, LG 37 Doe's counsel cross-
2 examined both witnesses.

3       Based on the record established at the hearing, I
4 conclude that debtor has met its burden to show that it is
5 entitled to the issuance of a preliminary injunction at this
6 time, particularly given the short duration in the consent
7 order.

8       And, again, on the record made, I conclude that I
9 have related to jurisdiction over the LG 37 Doe lawsuit as it
10 relates to claims against the Greater Niagara Frontier
11 Council.

12       As for jurisdiction, I first observe the LG 37 Doe
13 did not argue in its objection that subject matter
14 jurisdiction did not exist.  Debtor, however, addressed it,
15 and I will as well.

16       As this adversary proceeding was commenced
17 preconfirmation, the relevant test for related to
18 jurisdiction is that set out in the Third Circuit's Pacor
19 Decision as refined in circumstances such as this by its
20 later decision, two decisions in W.R. Grace and Federal
21 Mogul.

22     Pacor sets forth an expansive test finding related to
23 jurisdiction exists if the outcome of the proceeding could
24 conceivably have any effect on the estate being administered
25 in bankruptcy.  An action is related to bankruptcy if the

1  outcome could alter the debtor's rights, liabilities, options

2  or freedom from action, either positively or negatively and

3  which in any way impacts upon the handling and administration

4  of the bankruptcy estate.

5         I am satisfied that the record developed, at this

6  early stage of the proceeding, is sufficient to establish

7  related to jurisdiction over the claims against the Greater

8  Niagara Frontier Council.

9         First, I think that LG Doe's claims against BSA

10  are inextricably intertwined with the claims against the

11  Greater Niagara Frontier Council. This is evident from a

12  reading of the complaint.  The complaint makes no distinction

13  between the actions of the Boy Scouts and the actions of the

14  Greater Niagara Frontier Council accepted to their respective

15  corporate forums.

16         The complaint lumps the Boy Scouts and the Greater

17  Niagara Frontier Council together and all of its allegations

18  by labeling them collectively as Boy Scouts of America.  LG

19  37 Doe alleges that the Boy Scouts and the Greater Niagara

20  Frontier Council have a single mission and an organization

21  style that creates an environment conducive to child abuse.

22         In Counts two through eight, LG 37 Doe alleges

23  that both Boy Scouts and the Greater Niagara Frontier Council

24  are liable for the same actions.  Boy Scouts agrees and, in

25  fact, broadly argues in support of the preliminary injunction

1  that it and its Local Council jointly administered the Boy

2  Scout's mission.

3          BSA and the Greater Niagara Frontier Council filed

4  a joint answer to LG 37 Doe's complaint.  They too do not

5  parse out the allegations between them or attempt in any way

6  to distinguish the Boy Scout's conduct from that of the

7  Greater Niagara Frontier Council.

8          In this lawsuit, the evidence shows that the legal

9  claims against BSA are identical to those claims against the

10 Greater Niagara Frontier Council and are based on identical

11 facts.  Further, and, more generally, I find based on the

12 evidence submitted that BSA has retained national

13 coordinating counsel to oversee litigation against BSA and

14 the Local Councils, that it retain joints defense counsel for

15 itself and local counsel in given cases, such as here, that

16 it retains the majority of records responsive to discovery

17 requests in the underlying litigation, and that BSA's

18 involvement includes formulating defense strategies,

19 assisting in discovery, protecting against the disclosure of

20 privileged or, otherwise protected documents, attending

21 depositions, and preparing witnesses.

22         Second, I find that there is shared insurance that

23 covers LG 37 Doe's claims.  LG 37 Doe alleges abuse during

24 the years 1983 through 1987.  Mr. Azer testified that one

25 insurance policy would be available to cover claims brought

1  by LG 37 Doe, an excess insurance policy issued by INA in

2  1983.

3        The excess policy was attached to Mr. Azer's

4  second declaration and follows form to the primary insurance

5  policies.  The excess policy has limits of $25 million

6  dollars.  Prepetition, the limits of the policy were

7  partially eroded such that there is now approximately $18

8  million dollars in coverage remaining.

9        The name of insured on the face of the policy

10  includes Boy Scouts of America and National Regional and all

11  Local Council as more specifically identified in the named

12  insured endorsement attached to the policy.  Thus, both BSA

13  and the Greater Niagara Local Council are insureds under the

14  INA excess policy.  Further, I find that there are other

15  abuse victims with claims that began in the year 1983 so that

16  BSA would look to this specific INA excess policy for

17  coverage.

18        Based on the uncontroverted evidence, I conclude

19  that the INA excess policy is property of the estate and that

20  any draw on the policy by Greater Niagara Frontier Local

21  Council would deplete the policy.  This further supports the

22  conclusion of related to jurisdiction over the claims

23  asserted by LG 37 Doe against the Greater Niagara Frontier

24  Local Council in the underlying litigation.

25        Having found related to jurisdiction, I turn to

1  the request for a preliminary injunction.

2         The request for a preliminary injunction are

3  governed by Rule 65 of the Federal Rules of Civil Procedure.

4  The standard developed is a four-part test: likelihood of

5  success; risk of irreparable harm; the balance of harm

6  between the debtors and the non-moving parties and; whether

7  public policy supports entry of the injunction.

8         Before addressing the standard, I note that LG 37

9  Doe objects to the requested relief because the BSA and

10  Greater Niagara Frontier Council are separate entities.  LG

11  37 Doe correctly points out that BSA represents to the court

12  that each Local Council is separately incorporated under the

13  non-profit laws of its respective state and has an

14  independent board of directors.  This fact, however, does not

15  preclude the requested relief.  To the contrary, there would

16  be no need for a preliminary injunction if BSA and the

17  Greater Niagara Frontier Council were not separate entities.

18  Rather, the automatic stay would already protect the Council.

19         I will now turn to the four factors.

20         Likelihood of Success.  The likelihood of success

21  in this context means the debtor's prospects for a successful

22  reorganization.  And in the beginning of a case, such as this

23  one, some courts have stated that the debtor must only

24  establish that its reorganization is proceeding on track and

25  there is no reason to believe or suspect that the

1 reorganization will fail.  This prong of the test is easily

2 met.

3          BSA's bankruptcy case was filed six weeks ago.

4 BSA has started discussion with its committees, as evidenced

5 by the consent order.  It has focused on a path toward an

6 exit that I previously characterized as BSA's organized

7 approach to the case and a possible consensual resolution of

8 all victim's claims.

9          Whether BSA's chosen path will ultimately be

10 successful is not before me. Clearly, there is no reason to

11 believe or suspect that reorganization will fail.  This brief

12 spell to permit BSA to further explore its path is

13 appropriate at this stage of the case.

14          <u>Risk of Irreparable Harm</u>.  BSA has also met its

15 burden of proof to show that it will be irreparably harmed

16 without the stay.  I have already recognized the central role

17 which BSA has taken in defending all of the abuse lawsuits,

18 including LG 37 Doe's lawsuit.

19          LG 37 Doe's complaint against BSA is identical as

20 to both the factual and legal basis as its claims against the

21 Greater Niagara Frontier Council.  Thus, record taint and

22 collateral estoppel are material risks if the case goes

23 forward.

24          LG Doe 37 argues that BSA is simply choosing to be

25 involved in the underlying case, but is not required to be.

1  LG Doe 37 is correct.  There is no order of any court that

2  requires BSA to participate.  And, perhaps, BSA would not be

3  required to produce documents in the underlying case.

4         But while these arguments may be technically

5  correct, as a practical matter, the claims against BSA and

6  the Greater Niagara Frontier Council are inextricably

7  intertwined.  Because the claims are inextricably

8  intertwined, the possibility or risk of estoppel, records

9  taint, and evidentiary prejudice exists.

10        LG 37 Doe argues that his complaint is just a

11  pleading and not evidence.  He also argues that he is willing

12  to merely accept discovery from the Greater Niagara Frontier

13  Council so that BSA is not prejudiced.

14        I do not find these arguments persuasive.  LG 37

15  Doe framed the complaint and that is the only operative

16  document that LG 37 Doe placed before me.

17        And given my finding that the claims are

18  inextricably intertwined, going forward against the Greater

19  Niagara Frontier Council in any fashion ignores the reality

20  of the way the case is being defended, as well as the factual

21  findings that could be made.

22        Balancing of the Harms.  I recognize the harm and

23  am sympathetic to the harm, to LG 37 Doe, that the delay in

24  the progress of his case, even a short delay, causes.  LG 37

25  Doe alleges abuse that took place in the 1980's, over thirty

1  years ago, and has waited a long time to have his day in

2  court.  But in the scheme of litigation, a stay of fifty-five

3  days is not a long time or, for that matter, even unusual.

4         There is no suggestion in the underlying lawsuit

5  which is in its infancy, that this delay in the beginning of

6  the case will ultimately delay a resolution through a trial

7  or otherwise.

8         On the other hand, I see harm to debtor and other

9  players in the bankruptcy case in a piecemeal approach to

10 litigation at this stage of the bankruptcy case.  Debtor

11 should be given an opportunity to see if it can forge an exit

12 from bankruptcy.

13        LG Doe 37 argues that it is harmed for multiple

14 reasons.  He argues that the injunction conflicts with the

15 New York State Child Victim's Act.  I disagree.  LG Doe 37

16 appears to have timely filed his lawsuit under the Act, and

17 the preliminary injunction does not change that.  Further, no

18 order entered today will preclude LG Doe 37 from taking any

19 position in his underlying case.  It will not preclude LG Doe

20 37 from seeking to remand his case or opposing any relief

21 debtor seeks in this bankruptcy case.

22        At this point, the injunction simply stays the

23 matter as against the Greater Niagara Frontier Council for

24 fifty-five days.  On balance then, I find that permitting the

25 underlying case to proceed at this time as against the

1  Greater Niagara Frontier Council causes more harm to BSA and

2  its estate than the harm caused to LG 37 Doe by staying the

3  case for this short period of time.

4          <u>Public Policy</u>.  Each side can lie claim to a

5  significant public policy interest.  LG Doe 37 correctly

6  argued that there is a strong public interest in permitting

7  victims of abuse to pursue their rights and remedies and to

8  persecute their claims in the time, fashion and place they

9  choose.  On the other hand, there is a significant public

10  policy interest in promoting reorganization.

11          All in all, I find that public policy weighs in

12  favor of the requested relief.  While one lawsuit proceeding

13  may not pose a particular threat to reorganization, and while

14  I am not prejudging anything, there is a strong public policy

15  interest in giving BSA space to see if a consensual

16  resolution can be achieved with all victims of abuse.

17          Thus, I conclude BSA has met its burden to show

18  the preliminary injunction is appropriate as to the claim in

19  LG Doe 37's lawsuit against the Greater Niagara Frontier

20  Council.

21          I will enter the preliminary injunction effective

22  as of 11:33 a.m. prevailing Eastern Time today which is March

23  30, 2020.  It will expire at 11:59 p.m. prevailing Eastern

24  Time on May 18, 2020.

25          I ask counsel for BSA and LG Doe 37 to discuss

1   whether a separate order is necessary or how they would like

2   to document this.

3          That concludes my ruling but let me note a couple

4   of things.

5          First, I am not making any ruling that the only

6   coverage available to LG 37 Doe is from the 1983 INA excess

7   policy.  Mr. Azer's testimony was clear that that matter was

8   not strictly before me.

9          Second, in my ruling today, I dealt only with the

10  remaining objection.  The same analysis may apply to other

11  underlying lawsuits or there may be a broader ruling that I

12  can make applicable to all lawsuits.  But given the

13  negotiated consent order and given that all other plaintiffs

14  in the underlying litigation did not object or ultimately

15  resolved their objections, I thought it was appropriate to

16  keep this ruling focused on the sole remaining objection.

17         Third, let me emphasize that I am not ruling on

18  any other matters in this case, including any of the motions

19  I listed as included in BSA's organized approach to these

20  cases.

21         Finally, this morning I received a copy of a

22  filing termed, "Joint Notice of Correspondence to Tort

23  Claimant's Committee Regarding the BSA's Motion for a

24  Preliminary Injunction."  The filing was made jointly by BSA

25  and the tort claimant's committee, and attaches

1  communications from a plaintiff in underlying litigation
2  which the tort claimant's committee has called Defendant 72.

3          This plaintiff has used his name in his
4  communications, but I will use the pseudonym Defendant 72
5  until such time as he consents to his name being made public.

6          The letter of communications from Defendant 72 are
7  dated March 27 and March 29.  There is also attached a notice
8  of filing verified response of Defendant 72 to the BSA's
9  reply brief dated March 26th.  And a verified answer of
10  Defendant 72 to verified complaint for injunctive relief
11  dated March 10.  The verified answer is captioned in the
12  adversary proceeding but does not appear to be on the docket.

13          Defendant 72 is currently incarcerated in Georgia
14  which could be a possible reason that his filing has not
15  reached the clerk's office.  Defendant 72 also asks that he
16  be permitted to participate at this hearing.   Through my
17  courtroom deputy, I ask that counsel for BSA and/or the tort
18  claimant's committee to attempt to arrange for Defendant 72
19  to be on the call.  I understand that attempts were made.

20          All that being said, the hearing today is solely
21  for my ruling on the preliminary injunction hearing that took
22  place on March 24.  It is not an evidentiary hearing, nor am
23  I in a position today to take evidence.

24          Defendant 72's underlying lawsuit will be included
25  in the consent order so that it is stayed through 11:59 p.m.

1 prevailing Eastern Time on May 18, 2020.

2         I will treat the papers I have received today as

3 an objection to any extension of the preliminary injunction

4 should such a request be made and these five papers should be

5 included in any agenda that reflects a motion seeking to

6 extend the preliminary injunction.

7         If Defendant 72 wants any relief prior to that

8 time, he should make a filing with the clerk of the court and

9 a hearing will be set consistent with Chief Judge Sontchi's

10 general order dated March 16, 2019 [sic] on the conduct of

11 hearings during the outbreak of COVID-19 and any further

12 order he may enter.

13         That is the ending of my reading of the decision

14 on the Boy Scout's motion for a preliminary injunction.

15         Let me ask if there are any questions?

16     (No verbal response)

17         THE COURT:  I hear none.  This hearing is now

18 adjourned.

19         (A Chorus of Thank you, Your Honor)

20     (Teleconference ends at 10:17 a.m.)

21

22

23

24

25

1                              CERTIFICATE

2

3        I certify that the foregoing is a correct transcript

4   from the electronic sound recording of the proceedings in the

5   above-entitled matter.

6
    /s/Mary Zajaczkowski            March 31, 2020
7   Mary Zajaczkowski, CET**D-531

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25