**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: May 18, 2020 at 10:00 a.m. (ET)<br>Objection Deadline: April 14, 2020 at 4:00 p.m. (ET) |

**DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) REJECT
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
OF NONRESIDENTIAL REAL PROPERTY, EFFECTIVE AS OF
MARCH 31, 2020 AND (B) ABANDON CERTAIN PERSONAL PROPERTY
IN CONNECTION THEREWITH AND (II) GRANTING RELATED RELIEF**

**PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES
AND CONTRACTS OR LEASES ON THE SCHEDULE OF CONTRACTS AND
LEASES ATTACHED HERETO AS SCHEDULE 1 TO EXHIBIT A**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to sections 362(d), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to (a) reject the executory contract (the "Rejected Contract") and the unexpired leases of nonresidential real property (including any guarantees thereof and any amendments or modifications thereto or assignments or subleases

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

thereof, collectively, the "Rejected Leases," and, together with the Rejected Contract, the "Rejected Agreements") listed on Exhibit 1 to the Proposed Order, effective as of March 31, 2020 (the "Rejection Date"), and (b) abandon any furniture, fixtures, equipment, and other assets, if any, in connection with the Rejected Leases, effective as of the Rejection Date, and (ii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

**STATUS OF THE CASES AND JURISDICTION**

1. On February 18, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate and maintain their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 19, 2020, the Court entered an order [Docket No. 61] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2. On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "UCC") pursuant to section 1102 of the Bankruptcy Code [Docket Nos. 141, 142]. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order or judgment by the Court in connection with

this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and other bases for the relief requested herein are sections 362(d), 365(a), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

## BACKGROUND OF THE DEBTORS

6. The BSA is a federally chartered non-profit corporation under title 36 of the United States Code. The BSA is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. Founded in 1910 and chartered by an act of Congress in 1916, the BSA is one of the largest youth organizations in the United States and one of the largest Scouting organizations in the world, with approximately 2.2 million registered youth participants and approximately 800,000 adult volunteers. As a non-profit corporation, the BSA is required to adopt and carry out a charitable, religious, educational, or other philanthropic mission. The BSA's mission is to prepare young people for life by instilling in them the values of the Scout Oath and Law,[2] encouraging them to be trustworthy, kind, friendly and helpful, while also training youth in responsible citizenship, skills development and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations. Delaware BSA, LLC is a non-profit limited liability company incorporated under the laws of Delaware and exempt from

---

[2] **Scout Oath**: "On my honor I will do my best to do my duty to God and my country and to obey the Scout Law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight." **Scout Law**: "A Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent."

federal income tax under section 501(c)(3) of the Internal Revenue Code. BSA is the sole member of Delaware BSA, LLC.

7.    Additional information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## THE REJECTED AGREEMENTS

8.    ***Prime Lease and Sublease***.  On May 5, 2014, the BSA and 1040 Avenue of the Americas, LLC (the "Landlord") entered into a ten-year lease (the "Prime Lease") for a non-residential office property consisting of a 4,520 square-foot portion of the sixteenth floor of the premises located at 1040 Avenue of the Americas, New York, New York 10018 (the "Premises").  The BSA occupied the Premises until 2017, when the BSA ceased operations at and vacated the Premises.[3]  On August 18, 2017, the BSA and Town Sports International Holdings, Inc. (the "Subtenant") entered into a seven-year sublease agreement (the "Sublease") for the entirety of the Premises at a rental rate lower than the BSA pays to the Landlord under the Prime Lease.  The Debtors have determined that their continued performance under the Prime Lease and the Sublease would be unduly burdensome and that such leases provide no value to the Debtors' estates.

9.    ***Omni Agreement***.  On November 12, 2018, the BSA and Omni Hotels Management Corporation, as agent for Omni Atlanta Hotel at CNN Center, entered into a Letter of Agreement (the "Omni Agreement") related to accommodations for a regional conference

---

[3] Certain miscellaneous property of the Debtors may remain on the Premises (the "Remaining Property").  The Debtors have determined that they will not realize any economic benefit by retaining the Remaining Property. Therefore, the Debtors are requesting authority to abandon any Remaining Property currently located at the Premises.

organized by the BSA. The Debtors have cancelled the regional conference and no longer need the hotel accommodations under the Omni Agreement.

10. In connection with the commencement of their reorganization proceedings, the Debtors are undertaking a strategic review of their contractual obligations. Through this analysis, the Debtors have determined that the terms of the Rejected Agreements do not align with the Debtors' organizational strategy and will provide no value to the Debtors' estates going forward.

## RELIEF REQUESTED

11. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to reject the Rejected Agreements set forth on **Schedule 1** to the Proposed Order effective as of the Rejection Date and (b) abandon the Remaining Property, if any, effective as of the Rejection Date, and (ii) granting related relief.

## BASIS FOR RELIEF

**I.  The Court Should Authorize the Rejection of the Rejected Agreements under Section 365(a) of the Bankruptcy Code as a Reasonable Exercise of the Debtors' Business Judgment.**

12. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). By rejecting an executory contract or unexpired lease, a debtor may be relieved of burdensome future obligations while it is trying to recover financially. See, e.g., In re Onecast Media, Inc., 439 F.3d 558, 563 (9th Cir. 2006); In re Gen. Dev. Corp., 84 F.3d 1364, 1375 (11th Cir. 1996); see also Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection

can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); In re Exide Techs., 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization.").

13.     The standard applied by courts to determine whether the assumption or rejection of an unexpired nonresidential lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate.  See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R., 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); accord In re HQ Glob. Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003).

14.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases.  See Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.), 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion"); In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

15.     Here, the Debtors' determination to reject the Rejected Agreements is supported by a valid business purpose and is in the best interests of the Debtors' estates and creditors.  The Debtors have determined that the Rejected Agreements do not provide value to the Debtors and

are inconsistent with the Debtors' reorganization strategy. In particular, the Debtors are not currently in possession of the Premises and do not anticipate having any future use for the Premises. Accordingly, the Debtors are rejecting the Prime Lease and the Sublease to eliminate the ongoing costs associated with the Premises. Similarly, the Debtors have determined that the Omni Agreement does not provide value to the Debtors as a result of the cancellation of the regional conference. For these reasons, the Debtors have determined, in the exercise of their reasonable business judgment, that it is in the best interest of the Debtors, their estates, and creditors to reject the Rejected Agreements.

**II.     The Court Should Authorize the Rejection of the Rejected Agreements Effective as of the Rejection Date.**

16.     The Debtors are requesting that the Rejected Agreements be rejected as of the Rejection Date in order to avoid paying any unnecessary expenses related to the Rejected Agreements. A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. See, e.g., Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028–29 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); TW, Inc. v. Angelastro (In re TW, Inc.), No. 03-10785, 2004 WL 115521, at *2 (D. Del. Jan. 14, 2004) (holding that bankruptcy courts may approve rejection of a nonresidential lease retroactively "when principles of equity so dictate" (citation omitted)); BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), No. 02-6419, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) (concluding that a bankruptcy court may assign a retroactive rejection date when "the principles of equity so dictate" (quoting another source)); In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (finding that "the court's power to grant retroactive

relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)").

17.     When principles of equity so dictate, courts may permit rejection as of the date on which the counterparties to the executory contracts or unexpired leases were given definitive notice of a debtor's intent to reject such agreements.  See In re KDA Grp., Inc., No. 16-21821-GLT, 2017 WL 4216563, at *4 (Bankr. W.D. Pa. Sept. 20, 2017) ("[M]any courts within the Third Circuit have adopted the notion that a lease may be retroactively rejected when principles of equity so dictate." (internal quotations omitted)); In re Fleming Cos., 304 B.R. 85, 96 (Bankr. D. Del. 2003) ("[T]o grant [retroactive] rejection, the Debtors must have stated an unequivocal intent to reject the leases.").

18.     Here, the Court should authorize the rejection of the Rejected Agreements effective as of the Rejection Date.  The non-debtor counterparties to the Rejected Agreements will not be unduly prejudiced by retroactive rejection because, as of the date hereof, the Debtors have vacated and surrendered possession of the Premises, returned security cards to the Landlord, and delivered notice of their intent to reject the Prime Lease and the Sublease to the Landlord and the Subtenant, respectively.  The Debtors have also served this Motion on the counterparty to each of the Rejected Agreements and/or their agents or representatives, thereby advising the counterparties that the Debtors intend to reject the Rejected Agreements as of the Rejection Date.  Accordingly, rejection of the Rejected Agreements effective as of the Rejection Date is appropriate under applicable law.

**III.    The Court Should Authorize the Debtors to Abandon the Remaining Property, If Any, Under Section 554 of the Bankruptcy Code.**

19.     Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  In abandoning property under section 554, "the debtor 'need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon." In re Contract Research Sols., Inc., Case No. 12-11004 (KJC), 2013 Bankr. LEXIS 1784, at *11 (Bankr. D. Del. May 1, 2013).  The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare.  See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant under the instant facts.

20. Any Remaining Property left at the Premises is of inconsequential value to the Debtors' estates, and the cost to the Debtors of retrieving and disposing of any Remaining Property will exceed any realistic economic benefit that might be realized by retaining such property.  Accordingly, the Debtors have determined, in the exercise of their reasonable business judgment, that their decision to abandon any Remaining Property will be in the best interests of the Debtors and their estates.  To facilitate the Debtors' abandonment of the Remaining Property, the Debtors also request authorization under section 362(d) of the Bankruptcy Code, which permits a modification of the automatic stay for "cause," to the extent necessary to permit the relevant landlord to dispose of any Remaining Property without further notice or any liability to the Debtors or any third parties and without waiving any claims against the Debtors.

## **RESERVATION OF RIGHTS**

21. Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or the Proposed Order, (e) a request or authorization to

assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## NOTICE

22.    Notice of this Motion will be provided to: (i) the non-Debtor counterparties to the Rejected Agreements; (ii) the U.S. Trustee; (iii) proposed counsel to the UCC; (iv) proposed counsel to the Tort Claimants' Committee; (v) counsel to the proposed Future Claimants' Representative; (vi) counsel to the Ad Hoc Committee of Local Councils; (vii) counsel to JPMorgan Chase Bank National Association; (viii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and any further relief the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: March 31, 2020<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Joseph C. Barsalona II (No. 6102)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@mnat.com<br>           aremming@mnat.com<br>           jbarsalona@mnat.com<br>           emoats@mnat.com<br>           ptopper@mnat.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Email: jboelter@sidley.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Thomas A. Labuda (admitted *pro hac vice*)<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Email: tlabuda@sidley.com<br>           mandolina@sidley.com<br>           mlinder@sidley.com<br><br>PROPOSED COUNSEL TO THE DEBTORS<br>AND DEBTORS IN POSSESSION |