IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 320** |

**DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF
DEBTORS' OBJECTION TO GIRL SCOUTS OF THE
UNITED STATES OF AMERICA'S MOTION FOR RELIEF FROM THE
<u>AUTOMATIC STAY TO RESUME TRADEMARK ACTION</u>**

Brian Whittman, being duly sworn, states the following under penalty of perjury:

1. I am over 21 years of age and I am fully competent to make this declaration (the "<u>Declaration</u>") in support of the *Debtors' Objection to Girl Scouts of the United States of America's Motion for Relief form the Automatic Stay to Resume Trademark Action* (the "<u>Objection</u>").[2] I am a Managing Director at Alvarez & Marsal North America, LLC ("<u>A&M</u>"), a limited liability corporation, which has served as a restructuring advisor to the Boy Scouts of America (the "<u>BSA</u>") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned Chapter 11 Cases (together, the "<u>Debtors</u>"), since October 2018. I have 25 years of financial restructuring and bankruptcy experience. I have served as a Managing Director in A&M's Restructuring & Turnaround group since 2008 and the group's co-head of the Midwest region since 2019. During my tenure at A&M, I also served as interim chief financial officer of Horizon Global in 2018–19, chief restructuring officer of UCI

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

International in 2016, and interim chief financial officer of PSAV, Inc. in 2014.  Prior to joining A&M in 2002, I spent seven years working as a director in restructuring at a former "Big Five" accounting firm.  I respectfully submit this Declaration in support of the Debtors' Objection to Girl Scouts of the United States of America's ("GSUSA") Motion for Relief from the Automatic Stay to Resume Trademark Action (the "Motion") and Brief in Support of its Motion for Relief from the Automatic Stay to Resume Trademark Action (the "Brief").

2. The matters set forth below are based upon materials, books, and records made available and reviewed by me, including, but not limited to, the Motion and the Brief.  Except as otherwise stated in this Declaration, all facts set forth herein are based on my personal knowledge, materials provided by, or my discussions with, members of the Debtors' management team, information provided by the Debtors' advisors, or information obtained from my personal review of relevant documents.  Additionally, the views asserted in this Declaration are based upon my experience and knowledge of the Debtors' operations, financial condition, and liquidity.  If called upon to testify, I would competently testify to the facts set forth herein.

3. On February 18, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  As the lead Managing Director at A&M responsible for this engagement since August 2019, I had a lead role in preparing the Debtors' chapter 11 filings, developing the Debtors' business plans, and providing diligence to and negotiating with certain of the Debtors' key constituencies.  In doing so, I have familiarized myself with the Debtors' day-to-day operations, financial affairs, and books and records through review of certain financial documents and discussions with management.

4. Since the Petition Date, I have maintained a lead role in supporting the BSA's senior leadership team through the restructuring, including by:  (i) coordinating the preparation

of various statements and schedules; (ii) assisting in the assembly of historical financial data and cash flow projections; (iii) presenting to various constituency groups, including the U.S. Trustee, the official committee of tort claimants (the "Tort Claimants' Committee" or the "TCC"), and the official committee of unsecured creditors (the "UCC"); (iv) coordinating with the BSA on the collection of materials and its responses to document requests from the TCC's and UCC's legal and other advisors; (v) overseeing the population of the secure data room the BSA is using to make financial and non-financial information available to the TCC's and UCC's advisors; and (vi) advising the Debtors' management on other matters relating to their restructuring efforts.

5.  The Debtors are in the early stages of the Chapter 11 Cases but have taken several steps to lay the foundation for negotiating a plan of reorganization that achieves the organization's dual objectives: (1) timely and equitably compensating victims of abuse in Scouting; and (2) ensuring that the BSA emerges from the bankruptcy with the ability to continue its vital charitable mission. These steps include, among other things: (i) the creation and population of an electronic data room containing relevant discovery materials; (ii) the entry of permanent relief in connection with various motions filed with the Court and a consent order enjoining all pending abuse claims against the BSA and BSA-related entities; (iii) the coordination with those same constituencies regarding the production of discovery material, the appointment of a judicial mediator, and the entry of a stipulated protective order; and (iv) the filing of a motion seeking the appointment of a future claimants representative.

6.  The BSA is currently devoting significant managerial, financial, legal, and other resources toward its restructuring efforts. Specifically, the BSA's leadership is presently undertaking the following tasks related to the bankruptcy: (i) the preparation of statements and schedules for the U.S. Trustee and other constituencies; (ii) the identification and assembly of

materials responsive to numerous document requests propounded by the TCC's and UCC's counsels and advisors; (iii) engaging with and fielding requests from various media organizations regarding the BSA's restructuring and its ability to continue Scouting activities while these Chapter 11 Cases are pending; (iv) engaging in preparations for the upcoming meeting of creditors to be held pursuant to Section 341 of the Bankruptcy Code, which is currently scheduled for April 15; (v) assisting in the preparation of periodic presentations to various constituencies regarding the BSA's financial position, forecasts, and restructuring plan; and (vi) implementing expense reductions and other organizational improvements necessary to meet the Debtors' 2020 budget. The "breathing spell" afforded by the automatic stay has been essential to the BSA's ability to continue to proceed as expeditiously as it has in these early stages of the bankruptcy.

7. In addition, the ongoing COVID-19 pandemic has amplified the strain on the BSA's senior management and other organizational resources. In light of the social distancing measures adopted throughout the country and the drain those measures have had on the organization's revenues, the BSA was forced to furlough a large portion of its workforce effective April 1, 2020. The BSA's senior leadership is also preparing a revised 2020 business plan and cash flow forecast that will better account for the increased financial and operational uncertainty arising from the pandemic. Those efforts include modeling new revenue projections and exploring various cost-reduction levers. The BSA's senior management is also engaged in efforts to continue alternative programming to its members when most traditional BSA programming is suspended. The substantial reduction in staff, together with the additional work associated with adapting to the new realities of this pandemic, will impose significant additional burdens on the employees who remain.

8. The tasks the BSA's leadership and management are involved with in connection with the Chapter 11 Cases are resource-intensive, and they cannot be accomplished solely by the BSA's counsel and other advisors. I anticipate that, in the coming months, the BSA's senior leadership will need to continue to devote substantial resources and organizational bandwidth in order to achieve the objectives in the Chapter 11 Cases, particularly as we look to commence a mediation process and maintain the momentum that is critical to a successful reorganization. The organizational burden of seeing a significant commercial litigation matter, such as the Trademark Action, to its resolution would be substantial and would divert important human resources away from the Debtors' efforts to restructure.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Dated: March 31, 2020
       Highland Park, Illinois

/s/ Brian Whittman
Brian Whittman
Managing Director
ALVAREZ & MARSAL NORTH AMERICA, LLC