**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 320** |

**DECLARATION OF RACHEL KASSABIAN IN SUPPORT OF**
**DEBTORS' OBJECTION TO GIRL SCOUTS OF THE**
**UNITED STATES OF AMERICA'S MOTION FOR RELIEF FROM THE**
**AUTOMATIC STAY TO RESUME TRADEMARK ACTION**

Rachel Kassabian, being duly sworn, states the following under penalty of perjury:

1.  I am over 21 years of age and I am fully competent to make this declaration. I am a partner at the law firm Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), 555 Twin Dolphin Dr., 5th Floor, Redwood Shores, California 94065. I am lead counsel for the Boy Scouts of America (the "BSA") in the matter captioned Girl Scouts of the U.S.A. v. Boy Scouts of America, No. 18-cv-10287 (AKH) (S.D.N.Y. Nov. 6, 2018) (the "Trademark Action") in the U.S. District Court for the Southern District of New York (the "District Court"). I am a licensed attorney in California and have practiced there for more than 20 years. I respectfully submit this declaration in support of the Debtors' Objection to Girl Scouts of the United States of America's ("GSUSA") Motion for Relief from the Automatic Stay to Resume Trademark Action (the "Motion") and Brief in Support of its Motion for Relief from the Automatic Stay to Resume Trademark Action (the "Brief").

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

2. The matters set forth below are based upon my personal knowledge, and in some instances, the materials, books, and records made available and reviewed by me. If called upon to testify, I could and would competently testify to these facts.

### I. GSUSA's Filing of the Trademark Action

3. GSUSA filed suit against the BSA in the U.S. District Court for the Southern District of New York on November 6, 2018. GSUSA brought claims for federal and state law trademark infringement, federal and state law trademark dilution, and tortious interference with prospective economic advantage. See generally Ex. A, Dkt. 1 (the "Complaint" or "Compl.").

4. The Trademark Action has now been pending for approximately 17 months, and as of this writing, the District Court has not yet set deadlines for summary judgment or trial.

5. At no point since the Trademark Action was filed in 2018 has GSUSA sought a temporary restraining order, a preliminary injunction, or other form of expedited relief.

### II. Procedural History and Current Status of the Trademark Action

6. On January 23, 2019, the BSA filed a partial motion to dismiss limited to: (a) GSUSA's claim of tortious interference with prospective business relations; and (b) GSUSA's claim of common law rights in the marks "SCOUT" or "SCOUTING" alone (*i.e.*, not preceded by the word "girl"). Two days later, at the first Case Management Conference on January 25, 2019, the District Court indicated that, while it had not yet read the motion, it felt the motion was premature. The BSA thereafter voluntarily withdrew the motion to dismiss without prejudice to its right to raise these defects in GSUSA's case at a later time. GSUSA did not file an opposition brief and the District Court did not reach or make a substantive ruling on the merits of the motion. See Ex. B, Dkt. 24.

7. At the same January 25, 2019 Case Management Conference, the District Court set a case schedule as follows: (a) September 25, 2019 as the deadline to complete non-expert discovery; (b) September 25, 2019 as the deadline to exchange expert reports showing the results of any consumer surveys; (c) October 4, 2019 as the date for counsel for the parties to meet for at least two hours at the office of GSUSA's counsel to discuss settlement; and (d) October 25, 2019 as the date for the second Case Management Conference. See Ex. C, Dkt. 28 (endorsing schedule). Those dates were pushed out, by agreement of the parties, on two separate occasions. See Ex. D, Dkt. 46; Ex. E, Dkt. 61.

8. Fact discovery commenced in January 2019. Per the District Court's November 18, 2019 amendment to the Case Management Plan, and as agreed to by the parties, fact discovery closed on December 20, 2019. See Ex. E, Dkt. 61.

9. The District Court has not had the opportunity to rule on the merits of the parties' claims or defenses, such as via summary judgment.

10. Throughout the Trademark Action, GSUSA has pressed aggressively for extensive amounts of discovery, leading to increased costs for the BSA in defending the case. As one example, in May 2019, GSUSA moved to compel the production of all documents mentioning Girl Scouts in any way over a three-year period. See Ex. F, Dkt. 36 at 11 (relevant excerpts attached). The BSA objected on grounds of undue burden, overbreadth, and irrelevance, among others, explaining in its opposition that "[t]he BSA and GSUSA have coexisted, corresponded and interacted for decades, and any search for GSUSA or Girl Scouts in response to this RFP will return numerous irrelevant documents that happen to reference the Girl Scouts but have no bearing on this case." Id. at 22. In support of its opposition, the BSA submitted a declaration confirming that it would take an attorney more than five-and-a-half months of full-time work to review all

3

such BSA documents for production. See Ex. G, Dkt. 36-3 at ¶ 5. The District Court denied GSUSA's motion to compel. See Ex. H, Dkt. 37.

11.   As another example, in December 2019, shortly before the close of fact discovery, and continuing into January 2020, after the close of fact discovery, GSUSA represented that it intended to seek an order compelling the production of significant quantities of additional documents, which would have required collecting and searching the documents of (at least) 160 additional custodians—despite the fact that GSUSA had already received productions from the custodial files of approximately 100 custodians.

12.   Pursuant to the District Court's amended case schedule, the parties simultaneously exchanged expert reports showing the results of any consumer surveys on December 19, 2019. See Ex. E, Dkt. 61. Responsive reports have not yet been served.

13.   On January 13, 2020, counsel for GSUSA in the Trademark Action proposed that responsive expert reports on surveys, and opening expert reports on unspecified other issues, be exchanged on March 20, 2020, and that responsive expert reports on non-survey issues be exchanged on May 8, 2020. On January 14, 2020, GSUSA's counsel elaborated that he was "not convinced we need" a schedule or deadlines for completing expert depositions or briefing summary judgment at that time.

14.   Between January 30, 2020 and February 7, 2020, I met and conferred with GSUSA's counsel in an effort to agree upon a case schedule in advance of the parties' February 7, 2020 Case Management Conference. During those discussions, the BSA took the position that: (a) no further expert work should be necessary at that time other than responsive survey reports and depositions of those survey experts; in the BSA's view, any additional expert work such as damages expert reports should be deferred until after summary judgment, as such reports

ultimately might not be necessary if the BSA prevailed on its planned summary judgment motion; and (b) the parties should agree to a summary judgment briefing schedule in the near future—ideally with such briefing to be completed in the summer of 2020.

15. GSUSA's counsel disagreed, stating that GSUSA wished to proceed with completing all expert work, including at least two additional expert reports on non-survey subjects, before entertaining a schedule for summary judgment. On February 6, 2020, GSUSA's counsel further stated that it was "at best premature to set a summary judgment briefing schedule" until the District Court shared its views on summary judgment at the upcoming February 7, 2020 Case Management Conference.

16. At the February 7, 2020 Case Management Conference, and in light of the District Court's guidance, the parties presented the District Court with an agreed further case schedule, which the District Court subsequently adopted and entered as follows: (a) March 18, 2020 as the deadline for service of opening expert reports on any non-survey subjects, for the party bearing the burden of proof; (b) April 16, 2020 as the deadline for service of opposition expert survey reports; (c) April 21, 2020 as the deadline for service of opposition expert reports on any non-survey subjects; (d) May 15, 2020 as the deadline to complete expert depositions; and (e) June 19, 2020 at 10:00 a.m. as the next Case Management Conference. See Ex. I, Dkt. 67 (endorsing schedule). The District Court did not set any dates for summary judgment or trial.

17. Also at the February 7, 2020 Case Management Conference, the District Court permitted each side to argue whatever discovery disputes it wished. On its part, among other issues, GSUSA asked the District Court to compel the BSA to produce discovery and documents relating to abuse lawsuits. The District Court denied the request, ruling that such discovery is

irrelevant to the Trademark Action, and that if GSUSA attempted to introduce such evidence, the District Court would exclude it pursuant to Fed. R. Evid. 403.

**III.     Remaining Activity to be Completed in the Trademark Action**

18.     As of the date of the BSA's bankruptcy filing, the following tasks remain to be completed in the Trademark Action:  (a) clean-up fact discovery, including one deposition and supplemental document productions; (b) the preparation and service of responsive expert survey reports; (c) the preparation and service of opening and responsive expert reports on all other non-survey subjects (such as damages); (d) expert depositions; (e) discovery motion practice on experts; and (f) summary judgment.  And, if the case is not resolved at summary judgment, then: (g) pre-trial filings such as <u>Daubert</u> motions, witness lists, exhibit lists, motions *in limine*, deposition designations, pre-trial briefs, and the like; and (h) a jury trial in New York City.

**IV.     Scope of Trial in the Trademark Action**

19.     In their initial disclosures, the parties have identified 37 fact witnesses that they may call to support their respective claims or defenses at trial.  In addition, the parties have thus far identified two survey experts, and intend to later disclose additional experts on damages and other non-survey subjects.

20.     The vast majority of the BSA's witnesses are located in Texas.  At present, none of the BSA's witnesses are located in New York City, where GSUSA filed the Trademark Action. GSUSA, on the other hand, is headquartered in New York City.

21.     In light of the number and location of witnesses, the size of the discovery record, and the number of claims and defenses asserted, the trial in the Trademark Action would impose substantial costs and burdens on the BSA.

22. In addition to the financial costs associated with continuing to litigate the Trademark Action, numerous members of the BSA's senior leadership would be called as witnesses or otherwise be needed for trial preparation. Such preparation would necessarily begin several weeks or months prior to the start of the trial, and would require voluminous document review, strategy meetings, witness preparation sessions, and the like, with various members of the BSA's senior leadership and legal team. Based on the parties' initial disclosures, the depositions taken by GSUSA, and the requests for custodial emails propounded by GSUSA, it is reasonably likely that the following individuals will play a significant role in assisting the BSA as it prepares for trial, and thus would be impeded from performing their usual day-to-day responsibilities and/or supporting the restructuring efforts: (a) Steve McGowan, General Counsel; (b) Patrick Sterrett, Assistant Chief Scout Executive; (c) Effie Delimarkos, Director of Communications; (d) Michael Ramsey, Director of Marketing & Brand; (e) Pat Wellen, Director of Research & Strategy; (f) April McMillan, Director of Program Development; (g) Trent Nichols, Director of Research & Program Development; and (h) Ray Macaluso, Practice & Compliance Manager.

**V.     Attorney Compensation in the Trademark Action.**

23. The BSA and Quinn Emanuel have not entered into any contingency fee arrangements related to the defense of the Trademark Action.

24. To date, the BSA and its insurance carriers have been paying all defense costs in connection with defending the Trademark Action, including Quinn Emanuel's fees and costs, and the BSA's expert fees and costs. Thus, if the automatic stay in the Trademark Action is lifted, the BSA and its insurance policies will be burdened with the cost and expense of defending against the litigation.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

Executed on this 31st day of March 2020 in San Francisco, California.

_____
Rachel Kassabian