# Exhibit A

DORSEY & WHITNEY LLP
Bruce R. Ewing
Fara S. Sunderji
Amanda M. Prentice
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff*
*Girl Scouts of the United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------X
GIRL SCOUTS OF THE UNITED STATES        :
OF AMERICA,                             :
                                        :        18-CV-
                      Plaintiff,        :
                                        :
               - against -              :
                                        :        COMPLAINT WITH JURY
BOY SCOUTS OF AMERICA,                  :        DEMAND_____
                                        :
                      Defendant.        :
-----------------------------------------------------------------X
```

Plaintiff Girl Scouts of the United States of America, a congressionally chartered

corporation ("GSUSA" or "Plaintiff"), complains and alleges against the Boy Scouts of America,

a congressionally chartered corporation ("BSA" or "Defendant"), as follows:

## INTRODUCTION

1.      For over more than a century, GSUSA has established itself as the preeminent,

best-known provider of leadership development services for American girls.  Dedicated to the

proposition that girls should be prepared for a lifetime of success, leadership and adventure,

GSUSA has developed award-winning programs that empower girls to attain their full potential,

develop a strong sense of self, and learn positive values that will aid them throughout their lives.

Many millions of girls have participated in and benefited from GSUSA's services, which are

Case 1:18-cv-10287    Document 1    Filed 11/06/18    Page 2 of 90

founded on research showing that girls learn best in environments led by girls, through programs tailored specifically for girls. GSUSA's long track record of success is best symbolized by the extraordinary number of GIRL SCOUTS alumnae who are leaders across all segments of American society, in fields that include government, science, sports, industry, culture and many others.

2. The core elements of GSUSA's brand identity among the American public are its famous, registered GIRL SCOUTS trademarks, which are powerful symbols of a unique, extraordinarily valuable goodwill that has grown over decades and been carefully protected by GSUSA. To the vast majority of Americans, the GIRL SCOUTS trademarks embody the values of an organization whose unique and specific mission is to advance the cause of girls' leadership and empowerment through programs exclusively for girls, so that they will mature into the extraordinary women that every girl can and should become.

3. Throughout GSUSA's history, it has coexisted with defendant BSA, which has long offered programs aimed at boys under the BOY SCOUTS trademark. Like the GIRL SCOUTS trademark, the BOY SCOUTS trademark is a symbol of youth development programs that, for more than a century, have been aimed at, led by and developed primarily for boys. Thus, even though both GSUSA and BSA use the term SCOUTS as part of their core trademarks, the organizations are distinct, with one offering leadership programming developed for and aimed at girls, and the other offering programming developed for and aimed at boys.

4. However, that core gender distinction between the two organizations and their use of the term SCOUTS and variations thereof has been altered by BSA's recent decision to offer *all* of its services to *both* boys *and girls* of all ages for the first time in its long history. Indeed, even though GSUSA and BSA have Congressional charters and separate grants of intellectual

property rights that are specific to girls and boys, respectively, BSA is now using its trademarks in a manner that is both new and uniquely damaging to GSUSA, its trademarks and their underlying goodwill. In particular, given its significant programming shift, BSA is now trying to alter its core brand identity from BOY SCOUTS to SCOUTS, through the use of communicative elements like the slogan "Scout Me In" and the new name by which it will refer to its best known Boy Scout program – "Scouts BSA" with members being called "Scouts."

5.      BSA does not have the right under either federal or New York law to use terms like SCOUTS or SCOUTING by themselves in connection with services offered to girls, or to rebrand itself as "the Scouts" and thereby falsely communicate to the American public that it is now the organization exclusively associated with leadership development services offered under that mark to girls. Such misconduct will not only cause confusion among the public, damage the goodwill of GSUSA's GIRL SCOUTS trademarks, and erode its core brand identity, but it will also marginalize the GIRL SCOUTS Movement by causing the public to believe that GSUSA's extraordinarily successful services are not true or official "Scouting" programs, but niche services with limited utility and appeal.

6.      Since BSA's announcement that it would admit girls to its core programs, GSUSA's fears about the damage that would be caused to its trademarks and the mission those trademarks symbolize have been realized. Throughout the country, families, schools and communities have been told that GSUSA and BSA have merged, or even that GSUSA no longer exists. Parents interested in signing up for GIRL SCOUTS programs have instead mistakenly signed up for the new girls' programs offered by BSA. BSA regional councils and troops have used the GIRL SCOUTS trademarks in their advertising and marketing materials since BSA's announcement occurred. BSA is even using quotations from GSUSA's founder, Juliette Gordon

Low, about the value of GIRL SCOUTS programs to promote **BSA's** newly launched services. And even though GSUSA has repeatedly called to BSA's attention these ongoing instances of actual confusion, and the unauthorized uses of GSUSA's intellectual property, they keep recurring.

7.      Only GSUSA has the right to use the GIRL SCOUTS and SCOUTS trademarks with leadership development services for girls.  To the extent BSA wishes to open its programs to girls, it cannot do so using GSUSA's intellectual property without authorization, in a manner that causes confusion among the public and harms the goodwill of the GIRL SCOUTS trademarks.  It is therefore imperative that this Court take action to prevent the ongoing acts of trademark infringement, unfair competition and dilution perpetrated by BSA, both directly and vicariously through its regional and local councils, in order to prevent further damage to GSUSA's trademarks and preserve their goodwill.

## THE PARTIES

8.      GSUSA is a congressionally chartered corporation organized under 36 U.S.C. § 80301.  GSUSA's headquarters is located at 420 Fifth Avenue, New York, New York.

9.      Defendant is a congressionally chartered corporation organized under 36 U.S.C. § 30901.  Upon information and belief, Defendant's headquarters is located at 1325 West Walnut Hill Lane, Irving, Texas.

## JURISDICTION AND VENUE

10.      This is an action for direct and vicarious trademark infringement, trademark dilution and unfair competition in violation of the U.S. Trademark Act of 1946, 15 U.S.C. §1051, *et seq.* (the "Lanham Act"), and for trademark infringement, dilution, unfair competition, tortious

interference with prospective economic advantage, and deceptive business practices under New York law.

11.     This Court has original jurisdiction over GSUSA's federal trademark infringement, trademark dilution and unfair competition claims pursuant to 15 U.S.C. §§ 1114, 1121, 1125 and 28 U.S.C. §§ 1331 and 1338.

12.     This Court has supplemental jurisdiction over GSUSA's New York claims under 28 U.S.C. § 1367(a) because these claims are so related to the federal Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

13.     This Court has personal jurisdiction over Defendant under multiple prongs of the New York long-arm statute, CPLR 302, as well as under the Due Process Clause of the U.S. Constitution.  Specifically, Defendant regularly transacts business within the State of New York, including by, upon information and belief, offering its services and programs within New York to its regional councils and local troops, and by raising funds for its services and programs within New York.  Defendant has been registered since at least 1996 with the New York State Department of Law, Charities Bureau, as a charitable organization that operates and raises funds in the State of New York.  Upon information and belief, Defendant hires lobbyists and conducts lobbying in New York.  In addition, Defendant contracts to supply its leadership development programs within New York to regional councils and troops located here, making unauthorized use of GSUSA's trademarks in the process.

14.     In addition, Defendant has engaged in tortious conduct within the State of New York by disseminating or causing to be disseminated within the State of New York advertising, promotional, marketing and programming materials that are violative of GSUSA's trademark

and other rights as set forth herein, and that are likely to cause and have caused confusion to occur within the State of New York, and caused damage to GSUSA within the State of New York.

15.     Finally, Defendant has engaged in tortious conduct outside the State of New York that has caused injury to GSUSA within New York by disseminating or causing to be disseminated advertising, promotional, marketing and programming materials that are violative of GSUSA's trademark and other rights as set forth herein, and that are likely to cause and have caused confusion in New York and throughout the United States.  Upon information and belief, and as set forth above, Defendant both regularly solicits business, engages in a persistent course of conduct, and derives substantial revenue from services rendered within the State of New York. Likewise, Defendant also should reasonably expect its misconduct as described herein to have consequences within the State of New York, given its awareness of GSUSA's location here. Upon information and belief, Defendant also derives substantial revenue from interstate commerce.

16.     Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b) because: (i) GSUSA maintains its headquarters in this judicial district; (ii) Defendant's tortious conduct has caused and will continue to cause injury in this judicial district; (iii) Defendant conducts regular and systematic business in this district; and/or (iv) a substantial part of the events or omissions giving rise to GSUSA's claims occurred in this judicial district.

Case 1:18-cv-30287    Document 1    Filed 11/06/18    Page 8 of 90

**FACTUAL BACKGROUND**

**GSUSA AND THE GIRL SCOUTS TRADEMARKS**

17.    GSUSA is a national, nonprofit organization that was incorporated in 1915 and thereafter congressionally chartered on March 16, 1950.  It is currently the largest girl-led leadership development organization for girls in the world, and its iconic GIRL SCOUTS program is both well-known and highly regarded.  Founded in 1912 by Juliette Gordon Low in Savannah, Georgia, GSUSA promotes, encourages and inspires girls to develop courage, confidence and character through a variety of activities and practical skills programs.

18.    Over the past 106 years, many millions of American women have participated in the GIRL SCOUTS program coordinated by GSUSA, and GSUSA currently has about 2 million active members.

19.    Over the years, Girl Scouts have been able to earn over 400 types of badges covering a broad range of skills and topics that include, among other things, camping, mechanical engineering, environmental stewardship, robotics, cyber security, financial literacy and athletics.  Girl Scouts are able to participate in a variety of skill-based programs that include programs about the outdoors, STEM and life skills.  The Girl Scout Cookie Program is also one of the most famous entrepreneurship and financial literacy programs in the United States, helping girls to develop essential life and business skills.

20.    GSUSA recruits and offers programs for girls in grades K-12.  The specific programs available to girls are determined by grade level:  (i) grades K-1 are considered "Daisies;" (ii) grades 2-3 are considered "Brownies;" (iii) grades 4-5 are considered "Juniors;" (iv) grades 6-8 are considered "Cadettes;" (v) grades 9-10 are considered "Seniors;" and (vi) grades 11-12 are considered "Ambassadors."  All are considered Girl Scouts.

21.     The Girl Scout Movement in the United States, its territories and possessions is directed and coordinated by GSUSA at the national level.  GSUSA charters 112 local Girl Scout councils across the nation that deliver Girl Scout programming within their respective jurisdictions.  GSUSA, among other things, licenses the GIRL SCOUTS and related trademarks, and other intellectual property, to each of the local councils.  Individual girls may become Girl Scouts, and multiple Girl Scouts band together to form troops, which typically consist of 12-20 girls, led by a volunteer registered with a chartered Girl Scout council.

22.     Girls in grades K-12 may sign up to join Girl Scouts by filling out a form online or signing up through local recruiting efforts.  It is common for local Girl Scout troops to host tables at back-to-school events, churches and other community locations at the beginning of the school year for the purpose of renewing or enrolling new members.

23.     GSUSA's brand and programs have received many prestigious awards, including being designated as a Top 10 brand for the last two years in the World Value Index compiled by the Enso branding agency, as well as numerous other accolades.  GSUSA has been recognized and honored by Presidents throughout history, including by President George H.W. Bush on March 10, 1992.  In 2012, President Barack Obama awarded the Presidential Medal of Freedom to Juliette Gordon Low posthumously for her work in founding the Girl Scouts.

24.     GSUSA has long enjoyed an excellent reputation among the consuming public with respect to the positive and safe environment it creates for all girls who participate in its leadership programs.  Among other things, the public perceives GSUSA programs as welcoming to all girls, regardless of race, ethnicity, background, disability, family structure, religious beliefs and socioeconomic status.

25.    GSUSA is entitled to the exclusive use of the GIRL SCOUTS and related trademarks adopted by GSUSA pursuant to 36 U.S.C. § 80305, which in relevant part states that GSUSA "has the exclusive right to use all emblems and badges, descriptive or designating marks, and words or phrases the corporation adopts, including the badge of the Girl Scouts."

26.    The United States Patent and Trademark Office (the "PTO") has recognized the congressional protections afforded to GSUSA that grant it the exclusive right to use and register the GIRL SCOUTS mark in every class of goods and services recognized by the PTO, under Serial No. 89/000,078.

27.    To further protect its famous brand, and to place the public on notice of its trademark rights, GSUSA has secured and owns multiple trademark registrations for its GIRL SCOUTS and GIRL SCOUTS & Profile Design marks, including:



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,318,643, issued February 5, 1985, in connection with "educational services-namely, conducting programs and activities for girls and young women to promote social, physical and intellectual growth and development" in International Class 41;



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,142,655, issued December 9, 1980, in connection with "t-shirts" in International Class 25;



- **Girl Scouts**, incontestable U.S. Trademark Registration No. 1,142,666, issued December 9, 1980, in connection with "embroidered patch" in International Class 26;

- **CAMPUS GIRL SCOUTS**, incontestable U.S. Trademark Registration No. 0,905,264, issued March 25, 1968, in connection with "organizing and maintaining student groups in colleges and universities to develop leadership and fellowship through continued participation in such groups and through service within the college community" in Class 42;

- **DAISY GIRL SCOUT**, incontestable U.S. Trademark Registration No. 1,480,077, issued March 8, 1988, in connection with "educational services, namely, conducting programs and activities for girls and young women to promote social, physical and intellectual growth and development" in Class 41;

- **GIRL SCOUT COOKIE SALE**, incontestable U.S. Trademark Registration No. 1,816,138, issued January 11, 1994 in connection with "charitable fundraising services featuring the sale of cookies" in Class 36;

- **GIRL SCOUTS**, incontestable U.S. Trademark Registration No. 1,816,847, issued January 18, 1994, in connection with "stationery, note pads, book marks, stickers, pens, pencils and posters" in Class 16 and "sweaters, shirts, blouses, tee-shirts, ties, shorts, tights, socks, sweatshirts, sweatpants, scarves, hats, headbands, sweatbands and visors in Class 25;

- **GIRL SCOUT GOLD AWARD**, incontestable U.S. Trademark Registration No. 2,094,328, issued September 9, 1997, in connection with "jewelry" in Class 14, "paper goods in the nature of printed invitations, folders and certificate of merit and distinction" in Class 16, "picture frames and an award composed of a glass disc mounted on a wood base with an engraved brass plaque" in Class 20, "mugs" in Class 21, and "educational and entertainment services, namely, providing recognition to individuals for the purpose of outstanding service, achievement and quality in the field of scouting" in Class 41;

- , incontestable U.S. Trademark Registration No. 4,085,279, issued January 10, 2012, in connection with "tote bags" in Class 18, "clothing, namely, shirts, tee-shirts, and sweatshirts" in Class 25, and "educational services, namely, conducting programs and activities for girls to promote social, physical and intellectual growth and development" in Class 41;

- , U.S. Trademark Registration No. 4,276,193, issued January 15, 2013, in connection with "nut products, namely, candied nuts, flavored nuts and trail mixes consisting primarily of processed nuts" in Class 29 and "cookies, chocolate candies and chocolate covered nuts" in Class 30;

- , U.S. Trademark Registration No. 4,481,906, issued February 11, 2014, in connection with "providing recognition and incentives by way of awards to demonstrate outstanding service, achievement and quality in the field of scouting" in Class 41;

- **GIRL SCOUT COOKIE PROGRAM**, U.S. Trademark Registration No. 4,558,536, issued July 1, 2014, in connection with "educational services, namely, conducting cookie-related programs and activities for girls to promote entrepreneurial skills, business management, and intellectual growth and development" in Class 41;

- **girl scouts**, U.S. Trademark Registration No. 4,200,117, issued August 28, 2012, in connection with "stationery, namely, pens and pencils" in Class 16;

- **GIRL SCOUTS**, U.S. Trademark Registration No. 4,727,381, issued April 28, 2015, in connection with "lip balm; lip gloss" in Class 3; and

- **GIRL SCOUT S'MORES**, U.S. Trademark Registration No. 5,336,893, issued November 14, 2017, in connection with "cookies" in Class 30.

True and accurate copies of the aforementioned trademark registrations are attached collectively as Exhibit A.

28.     In addition to these federally registered marks, GSUSA owns common law rights in each of the trademarks identified above, as well as in all variations of GIRL SCOUTS that GSUSA has used in connection with girls' leadership development services and related products or services, as well as any related trade dress and other designations of source (collectively, hereinafter, the "GS Marks").  With respect to the term SCOUTS and SCOUTING in particular, by virtue of the long history of use of the GIRL SCOUTS trademark by GSUSA, the consuming public has come to recognize SCOUTS and SCOUTING as trademarks that, like the other GS Marks, belong exclusively to GSUSA when used in connection with leadership programs and related services for girls.

29.     The GS Marks have been extensively advertised and promoted in various media in the United States, including online through the GIRL SCOUTS website (https://www.girlscouts.org/) and social media sites such as Facebook.

30.     The GIRL SCOUTS mark is distinctive, famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and uniquely associated by consumers with GSUSA and its programs, services and products, both in the State of New York and the United States as a whole.  The GIRL SCOUTS mark serves as a strong source identifier by virtue of its long use, extensive promotion and long history with American consumers, and it is entitled to the widest scope of protection under federal and state anti-dilution laws.

31.     GSUSA has marketed and offered its youth development services and programs for girls featuring the GIRL SCOUTS mark in interstate commerce since at least as early as 1913.

32.     By virtue of its use, federal trademark registrations, and congressional charter, GSUSA has the exclusive right to use the GS Marks, and to prevent the use of any marks or trade dress confusingly similar thereto, in commerce in connection with youth development services and programs for girls.

### BSA AND ITS USE OF THE BOY SCOUTS TRADEMARK

33.      BSA is a congressionally chartered corporation that provides youth development services and programs for boys.  BSA is the national organization that directs and coordinates leadership services and programs under the BOY SCOUTS trademark.  Upon information and belief, those services and programs are offered through regional councils and local troops that operate under various trademarks used under license or authorized for use by BSA.

34.     According to BSA's congressional charter as set forth in 36 U.S.C. § 30902, its purpose is "to promote, through organization, and cooperation with other agencies, the ability of boys to do things for themselves and others, to train them in scoutcraft, and to teach them

patriotism, courage, self-reliance, and kindred virtues, using the methods that were in common use by boy scouts on June 15, 1916."

35.     While GSUSA and Defendant are both congressionally chartered corporations that offer services to American youth, the two organizations are not associated with one another, and never have been.  Defendant is also not endorsed or sponsored by or affiliated with GSUSA.

36.     Defendant and GSUSA have coexisted in the marketplace for many decades, with each offering youth development services and programs, under the "SCOUT," "SCOUTS" and "SCOUTING" trademarks.  Crucially, and until recently, these terms when used have either been preceded by words like BOY or GIRL that have highlighted the gender-specific nature of each organization's programs, or appeared in a context making clear that the programs at issue were developed by one organization or the other.

37.     GSUSA has always offered and rendered its services to girls.  Defendant historically targeted its core programming to boys, has represented that its congressional charter restricted its BOY SCOUTS and CUB SCOUTS programs to boys,[1] and has used its marks in connection with such boy programming.

---

[1] See, *e.g.*, Long Island Girl Crusades for Right to Join Boy Scouts, *Southampton Patch* (Aug. 10, 2016, 1:41 PM, updated Aug. 11, 2016, 8:03 AM), https://patch.com/new-york/southampton/bridgehampton-girl-crusades-right-join-boy-scouts (quoting BSA spokesperson providing reason for denying a girl admission to Boy Scouts:  "[T]he Boy Scouts of America was chartered by Congress in 1916 to serve boys and young men across the nation through the Cub Scouts and Boy Scouts programs, which are year-round programs for boys in the first grade through age 18. We have since developed alternative programs that are co-ed, such as Venturing, but to change the Cub or Boy Scouting programs would go outside the bounds of our charter"; 15-Year-Old Girl Denied Permission To Join Boy Scouts Because Of Gender, CBS New York (Aug. 10, 2016, 5:46 PM), http://newyork.cbslocal.com/2016/08/10/girl-wants-to-join-boy-scouts/ (same); Petition for Writ of Certiorari, Boy Scouts of America v. Dale, 530 U.S. 640 (2000) (No. 99-699), 1999 WL 35238158, at *18 ("Boy Scouting is an expressive organization with the purpose of instilling in boys and young men certain ideals of what it means to be a man. Youth membership is therefore confined to males….").

38.     BSA expressly acknowledged this important division in trademark rights before the Trademark Trial and Appeal Board ("TTAB") of the PTO.  Specifically, in 2004, BSA admitted in a filing made in a trademark opposition proceeding, No. 91157313, that GSUSA owned exclusive, congressionally granted rights to SCOUTS and SCOUTING with respect to youth development programs for girls.  It further stated that, "the Boy Scouts controls use of the marks [SCOUT and SCOUTING] in connection with development programs for boys, while Girl Scouts controls use of the marks in connection with development programs for girls. Their joint use of the marks has been expressly recognized by Congress."  True and accurate copies of excerpts from this filing BSA made with the TTAB are attached as Exhibit B.  *See* pp. 20-21.

39.     When examining Defendant's SCOUTING trademark, the PTO requested that BSA limit the scope of goods covered by that mark to magazines offering instructional advice specific to boys, "since a similar Federally distributed magazine sponsored for girls and young women also uses the term 'Scout' and 'Scouting' in referring to organizational activities and members of its organization."  *See* PTO Office Action issued on June 15, 1982, in connection with Application Serial No. 282546, a true and accurate copy of which is attached as Exhibit C.  Plainly, the other "organization" in question is GSUSA.

40.     Although Defendant has previously offered some limited programs in which girls could participate, it has not, until recently, offered any girls' programming under the marks SCOUT or SCOUTING alone (without other source-identifying distinguishing leading words) in connection with those programs targeted to girls.  For example, Defendant previously offered programs to young women under the EXPLORER and VENTURING marks.

41.     Defendant has long acknowledged that use of the SCOUT or SCOUTING marks, unaccompanied by distinguishing terms or devoid of context, even in connection with its programs for boys, could result in confusion.  For example, on January 23, 1979, Defendant conceded in a letter to GSUSA that its use of its SCOUTING/USA mark (which obviously combines SCOUTING with the merely descriptive and therefore non-distinctive term "USA") could mislead the public into believing that GSUSA is affiliated with BSA, or could be confusing to donors who intended to donate to BSA or GSUSA.  For this reason, BSA took care at that time to make sure that its councils and troops included BSA's full name in marketing materials in which that mark was used.  A true and accurate copy of this correspondence is attached as Exhibit D.  Upon information and belief, this trademark is no longer used by BSA.

42.     In another communication sent by BSA to GSUSA on April 26, 1978, Defendant stated that it had taken "several steps that should assist potential public confusion that the communicative term Scouting/USA also refers to [GSUSA].  For one thing, we have instructed our Scouters, including our Public Relations staff, to use the term sparingly, and when it is used to always also feature the words 'Boy Scouts of America.'" A true and accurate copy of this correspondence is attached as Exhibit E.  Significantly, these steps to prevent potential confusion caused by the use of the term SCOUTING/USA were taken, even though BSA only admitted boys to its central programs at that time.

43.     Defendant has therefore long recognized both: (i) GSUSA's trademark rights in the GS Marks, including SCOUTS and SCOUTING, when used in connection with leadership programs for girls and related services and products; and (ii) that Defendant's use of the terms SCOUT or SCOUTING preceded by other distinguishing terms, or outside of a context making clear that the services in question are directed to boys, would be likely to cause confusion.

15

44.     As the correspondence attached as Exhibits D and E demonstrates, all use of the terms BOY SCOUTS, SCOUTS, SCOUTING and related trademarks in connection with services and programs offered or promulgated by BSA is controlled and supervised by BSA through licensing agreements between BSA and its regional councils, local troops and individual leaders.  Upon information and belief, BSA both has the right to supervise and control, and actually does supervise and control, the quality of goods and services offered by Defendant's various regional councils and local troops under BSA's various trademarks, as well as the use of such trademarks by BSA's regional councils, local troops and individual leaders.

45.     Upon information and belief, Defendant has published a manual for its various local councils entitled, "THE COUNCIL: How the Council Functions to Carry Out the Purpose of the BSA," that articulates standards for BSA's programs and services to ensure their overall quality, with which each BSA council must comply.  A true and accurate copy of this publication is attached as Exhibit F.

46.     Upon information and belief, Defendant has also published an "Orientation Guide for Council Officers and Executive Board Members," a true and accurate copy of which is attached as Exhibit G, in order to ensure that its councils adhere to the quality standards set and promulgated by BSA.

47.     Upon information and belief, Defendant also issues charters to each of its local BOY SCOUT councils, and each local council identified in this complaint is currently chartered with Defendant.  Upon information and belief, as a condition of maintaining their charters, and the concomitant right to use the BOY SCOUTS trademarks and variations thereof, each regional BOY SCOUTS council is required to pay fees to BSA.  Upon information and belief, all BOY SCOUTS troop members and leaders are likewise required to be members of BSA and pay

16

membership dues to BSA in order to remain in operation and retain the right to use the BOY
SCOUTS trademarks.

48.    Defendant has stated that "[i]t is the council's responsibility to provide
leadership and supervision for all program activities within the territory covered by its charter in
such a manner as to ensure compliance with the provisions of the *Charter and Bylaws of the Boy
Scouts of America* and the *Rules and Regulations of the Boy Scouts of America*. The local council
is an administrative organization charged with fulfilling the purpose of the movement." *See* Exh.
G at pg. 7.

#### BSA's Acts of Trademark Infringement, Unfair Competition and Dilution

49.     Despite a century of coexistence with GSUSA in their respective, exclusive and
separate markets, and perhaps in an effort to address financial concerns or declining
membership, BSA recently announced that it would expand its offerings under the SCOUTS and
SCOUTING trademark to encompass programs for girls, beginning with the enrollment of girls
into its CUB SCOUTS programs.  A true and accurate copy of Defendant's announcement, dated
October 11, 2017, is attached as Exhibit H.  It then announced that it would open its BOY
SCOUTS program to girls beginning in February 2019.

50.     In May 2018, BSA went one step further by unveiling a new *Scout Me In*
advertising campaign.  In announcing this campaign, BSA stated that "[t]he *Scout Me In*
campaign celebrates [Defendant's] expansion to serve families and welcome girls and boys into
Scouting in communities across the country."  A true and accurate copy of Defendant's press
release dated May 2, 2018, is attached as Exhibit I.  Defendant now uses the SCOUT,
SCOUTING, FAMILY SCOUTING and SCOUT ME IN trademarks to recruit girls into its CUB
SCOUTS and BOY SCOUTS programs and, upon information and belief, it has also directed or

17

instructed its regional councils and local troops to use these trademarks or variations thereof in connection with programs and services newly offered to girls.

51.     As the May 2, 2018 press release also indicates, SCOUTS BSA has been introduced as the new name of Defendant's programs for youth who are ages 11 to 17, beginning in February 2019, and will replace the longstanding BOY SCOUTS trademark for programs offered to that age group.  *Id.*  Defendant intends to use the SCOUTS BSA mark in connection with youth development services and programs targeted to girls.  In a June 12, 2018 publication entitled "Family Scouting Questions and Answers," a true and accurate copy of which is attached as Exhibit J, Defendant further made clear that participants in the SCOUTS BSA program – boys and girls alike – will be referred to as "Scouts."  *Id.* at 10.

52.     Consistent with this message, Defendant is also currently distributing marketing materials, including videos, in which it frequently refers to girls as "Scouts."  For example, upon information and belief, Defendant published a video on June 13, 2018, entitled "SCOUT ME IN" that prominently featured girls and included statements by girls such as "the Scouting world starts with my very best, right now self, and will lead me to my very best future self.  Scouting will show me a kid who is brave, trustworthy, loyal and kind. . ."  Defendants have also published or disseminated numerous other advertisements that are directed to girls, show pictures of girls, and reference the advertised program as SCOUTING or SCOUTS.

53.     Recent U.S. trademark filings made by BSA demonstrate that Defendant is seeking to obtain federal trademark registration rights for its rebranding effort.  For example, Defendant filed a trademark application for the SCOUTS BSA mark (Serial No. 87/906,567) with the PTO based on its intent to use the mark in commerce in connection with "educational services, namely, providing programs and activities for youth" in International Class 41.

Defendant also filed a trademark application with the PTO for SCOUTS BSA as a collective

membership mark (Serial No. 87/906,407) based on its intent to use the mark in commerce in

connection with "indicating membership in an organization for youth."  Finally, Defendant has

also filed a trademark application with the PTO for the SCOUT LIFE mark (Serial No.

87/882,226) based on its intent to use this mark in commerce in connection with "magazines

directed to the interests of the members of a youth organization" in International Class 16, and

"providing online magazines directed to the interests of the members of a youth organization" in

International Class 41.

54.      By way of assignment from a university, Defendant also owns a trademark

registration for the SCOUT mark (Reg. No. 4,865,183), issued on December 8, 2015, in

connection with "education services, namely, providing on-line classes in the fields of math,

history, science, economics, social studies, psychology, computer science, and environmental

science; education services, namely, providing online courses of instruction at the secondary

level and distribution of course material in connection therewith" in International Class 41.

55.      Defendant's decision to expand its core leadership programs to encompass girls

of all ages has dramatically changed the circumstances that previously allowed its use of

trademarks like SCOUTS and SCOUTING to coexist with the GS Marks without causing

confusion.  As a result of this fundamental change in the nature of Defendant's services and how

its marks are used, numerous examples of the mis-use of GSUSA's trademarks have come to

GSUSA's attention, and actual confusion among members of the public between the two

organizations, their services and their trademarks has become rampant.

56.      Indeed, acting at the direction of or instructed by BSA in connection with the

implementation of its rebranding effort, Defendant's regional councils, local troops and

individual leaders have used the SCOUTING and SCOUTS marks, and variations thereof, to promote, market, fundraise, deliver services, and advertise their activities targeted to girls in a manner violative of GSUSA's valuable trademark rights, as demonstrated in the examples below. Upon information and belief, in each and every one of these examples, the councils, troops or leaders in question acted at either the direction of Defendant, on Defendant's behalf, or for the purpose of assisting Defendant within the scope of their relationship with Defendant. Likewise, Defendant has a direct financial interest in all of the wrongful activity delineated in these examples by virtue of the membership fees and other revenues it receives from its councils and troops that are generated in part through such wrongful use of GSUSA's trademarks.

57.     Upon information and belief, and as depicted in Example 1 below, Defendant's Orange County, California Council distributed fundraising materials in connection with an event held on November 30, 2017, stating that the proceeds from the event would help, among other things, "implementation of our New BSA Girl Scouting Program."

**Example 1: BSA Fundraising Flyer for "New BSA Girl Scouting" Programs**



*"THE EL CAPITAN DISTRICT SERVES OVER 1,400 YOUTH IN ANAHEIM, GARDEN GROVE, STANTON, AND SURROUNDING CITIES. SCOUTINGS POSITIVE IMPACT HELPS OUR LOCAL FAMILIES AND YOUR COMMUNITY. PLEASE JOIN US AS WE CELEBRATE SCOUTING AND HELP ENSURE BSA'S SPECIAL SCOUTING PROGRAMS FOR TODAY'S YOUTH"*

**Troop 111 Scoutmaster Emeritus** ▮▮▮▮▮▮

**The proceeds from the luncheon will provide funding for our Cub Scouts, Boy Scouts, Adventure Scouts, Explorer Scouts, and in the development and implementation of our New BSA Girl Scouting Programs!**

*Suggested Levels of Support for El Capitan Scouts*

| ★ Special Gift $_____ | |
| ★ Tiger/Lion Sponsor | $250.00 |
| ★ Cub Sponsor | $500.00 |
| ★ Tenderfoot Sponsor | $750.00 |
| ★ Star Sponsor | $1,000.00 |
| ★ Life Sponsor | $2,500.00 |
| ★ Eagle Sponsor | $5,000.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Your Sponsorship Amount : $_____**
**Donation Information and ON-LINE Payment LINK:**

▮▮▮▮▮▮▮▮▮▮

Please make checks payable to Orange County Council Boy Scouts of America-501(C)3 TAX ID 95-1727660 Donor Cards will be available and collected at the Luncheon or Please send checks or credit card authorization with attached form to:
Orange County Council, Boy Scouts of America 1211 E. Dyer Road, Santa Ana, CA. 92705

Credit Card Account #_____ Type VISA MC Etc._____

Expiration_____ Name on Card _____ Code_____

Address_____

City_____ZIP_____ Phone_____

Email_____Signature_____

**Please RSVP by Friday Nov. 24ᵗʰ to Mayor Pro-Tem** ▮▮▮▮▮▮▮
▮▮▮▮▮ or ▮ at ▮▮▮▮▮▮▮

Questions: Mayor Pro-Tem ▮▮▮▮▮ at above email address or phone number

58.     Upon information and belief, and as depicted in Example 2 below, a flyer for a

Boy Scout day camp program held between June 4, 2018 and June 7, 2018 in Texas featured the

GIRL SCOUT trademark.

**Example 2:  "GIRL SCOUT Volunteer Opportunity" at Twilight Camp**



59.     Upon information and belief, and as depicted in Example 3 below, a Boy Scout leader located in Texas used the phrase "Boys/Girls Scouts of America Volunteer Form" to recruit members online.

**Example 3:  "Boys/Girls Scouts of America" Online Form**



60.     Upon information and belief, and as depicted in Example 4 below, the Defendant's Great Southwest Council in New Mexico constructed a sign that featured the words

"Boy & Girl Scouts www.troop174NM.org."  Upon information and belief, the website

www.troop174NM.org is owned and/or operated by Defendant or one of Defendant's councils.

**Example 4: "Boy & Girl Scouts" Public Sign**



61.     Upon information and belief, and as shown in Example 5 below, an organization located in Wantagh, New York that sponsors BSA services announced in October 2018 the planned formation of a "Girl Scouts BSA Troop" or a "Girl Scout troop" in February 2019.

**Example 5: Announcements Concerning Formation of a "Girl Scouts BSA Troop"**





[redacted] Oct 2018

OUR COMMUNITY

PACK AND TROOP [redacted]

Hi everyone,

No new pictures yet, so I thought I would talk about Family Scouting, why it happened, and how it is being implemented.

The Boy Scouts of America's leadership has always operated on the premise that we are to ensure that the Scouting program and learning the values (as stated in the Scout Oath and Law) would be made available to as many youth as possible. BSA has had coed programs for decades and also recognized that because Cub Scouting was designed to be a family oriented program, girls had been attending meetings for years. They also did research and found that there were a significant number of families that wouldn't consider Scouting for their boys because they were looking for one organization that would accept the entire family.

**Scout Oath**
On my honor I will do my best To do my duty to God and my country and to obey the Scout Law; To help other people at all times; To keep myself physically strong, mentally awake, and morally straight.

So, they decided to make it available to girls as well. We implemented accepting girls into Cub Scouts (grades K-5) this past winter and will accept girls into the renamed Scouts BSA program (grades 6-12) starting February, 2019.

In Cub Scouts, packs can choose to be single gender or family packs. Family packs accept boys and girls, but they go into single gender dens. Most of the learning activities are done at the den level and most meetings are den meetings, so they spend most of the time in a single gender environment. Pack [redacted] is a family pack.

At the Scouts BSA program, boys and girls will be in separate troops. Each will have their own adult and youth leadership and, while they can do some activities together, the bulk of the meetings are separate. When all of the talk about accepting girls started, I thought we would be better off with coed troops (as is done in many other countries), but I have come around to thinking that single gender troops are better. From the boys' perspective, girls typically mature faster from ages 10-14, which would make them more likely to get selected for leadership roles, inhibiting the boys' leadership development. From the girls' perspective, while studies have had mixed results about whether single gender is better for boys' learning, the studies are pretty convincing that girls learn better in single gender environments. So both genders benefit in different ways from being separate at the troop-level ages. We will be forming a Girl Scout troop in February.

That is the short version. Anyone who has more questions is welcome to reach out to me or any of the Scout leadership here at [redacted], including [redacted] (Scoutmaster of the boy Troop) and [redacted] (Cubmaster of the Pack). Come on down on a Thursday night and see what Scouting can do for your family!

[redacted]

*(so many Scouting positions, so little space)*

[redacted]

18 [redacted] Visit [redacted] for the latest information.

62. Upon information and belief, and as depicted in Example 6 below, a Boy Scout leader in Kirkland, Washington used the phrase, "Come talk to me about the Girl Scouts BSA Troops forming in Kirkland" in a Facebook post online.

**Example 6: "Come talk to me about the Girl Scouts BSA Troops" Facebook Post**



63.    Upon information and belief, and as depicted in Example 7 below, a Boy Scout leader in St. Louis, Missouri misappropriated GSUSA's slogan and mission statement of "Building girls of courage, confidence and character who make the world a better place" by marketing the CUB SCOUTS program to girls under the slogan, "Building kids of courage, confidence, character and to love the outdoors, and who make the world a better place!"

GSUSA's mission statement above is explicitly set forth in the Preamble of GSUSA's

Constitution, which is published in GSUSA's Blue Book of Basic Documents, publicly

available, including on GSUSA's website, www.girlscouts.org, and widely used in GSUSA's

marketing materials.

**Example 7:  Use of Girl Scouts' Slogan/Mission Statement in Boy Scouts Marketing**



64.      Upon information and belief, a Boy Scout volunteer approached a former Gold

Award Girl Scout and solicited her to join him and others to develop the "Girl Scout program"

for Defendant's Northern Star Council (Twin Cities) located in Minneapolis, Minnesota.

28

65.    Upon information and belief, GSUSA's Profile Design mark depicted in paragraph 27 above was used in Boy Scout New England Base Camp marketing materials, and also in a Boy Scouts council invitation to an event in Michigan.

66.    Upon information and belief, Boy Scout councils have used pictures of Girl Scouts in Girl Scout uniforms to advertise BSA's programming in Massachusetts and Chicago.

67.    Defendant's efforts to leverage the GIRL SCOUTS brand and confuse consumers has even gone so far as to prominently display a quote from GSUSA's founder on BSA's advertising for SCOUTS programs that has been disseminated to Defendant's councils through the BSA Brand Center.  *See* Example 8, below.

**Example 8: Use of Quote from Girl Scouts' Founder in Boy Scouts Marketing**



68.    GSUSA has sent numerous letters and warnings to Defendant and its regional councils regarding Defendant's serial infringing activity.  In response, Defendant has acknowledged the "legally protected brand" that GSUSA owns in its GS Marks.  A true and

accurate copy of correspondence from Defendant to GSUSA dated November 2, 2017 is attached as Exhibit K.  This correspondence labeled the violation of GSUSA's trademark rights at issue therein as "inadvertent" and an "unfortunate error," but the ongoing violations of GSUSA's rights have mushroomed significantly since then, even though Defendant has been on notice of the infringing conduct of its councils, troops and volunteers throughout that time.

69.    Indeed, to make matters worse, upon information and belief, Defendant and its councils have also engaged in a number of unfair business practices.  For example, upon information and belief, in April and May 2018, one of Defendant's leaders approached a retailer in Red Bluff, California and attempted to dissuade the retailer from providing booth space to local Girl Scout members to sell their products, explaining that Defendant was now supposedly serving Girl Scouts and Boy Scouts.  Upon information and belief, this Boy Scout leader acted at either the direction of Defendant or its local council, on behalf of Defendant or its local council, or for the purpose of helping Defendant or its local council within the scope of his relationship with those entities.  True and accurate copies of correspondence dated April 17, 2018 and May 8, 2018 concerning this instance of unfair business practices are attached as Exhibit L.

70.    Upon information and belief, Boy Scout council representatives in Illinois directed parents at a school open house to join the "Scouts," representing that the parties' separate organizations were now combined.  In addition, upon information and belief, one of Defendant's leaders at a school recruitment event in Illinois stated that "there is no more Girl Scouts" or "there are no Girl Scouts" to a parent who was interested in signing their daughter up for GSUSA's programs.  Upon information and belief, these Boy Scout council representatives acted at either the direction of Defendant, on Defendant's behalf, or for the purpose of helping Defendant within the scope of the representatives' relationship with Defendant.

71.     Upon information and belief, Defendant's representatives in Texas have advised prospective parents interested in signing up for Girl Scouts that "it is all the same now" and that "Girl Scouts are in our pack."  Parents are also being told that the Boy Scouts are the "official" Scouts, which has prompted some parents to ask GSUSA representatives if their longstanding Girl Scouts services are properly authorized.  Upon information and belief, these Boy Scout council representatives acted at either the direction of Defendant, on Defendant's behalf, or for the purpose of helping Defendant within the scope of the representatives' relationship with Defendant.

72.     Upon information and belief, a North Carolina Girl Scout recruitment staff member called to schedule visits with school principals in Henderson, Haywood and Jackson Counties, only to be told by these principals that they thought these visits had already been scheduled, because Defendant's representatives had told the schools that the Girl Scouts had been merged into the Boy Scouts.

73.     In an effort to sow further confusion and interfere with GSUSA's leadership programming, upon information and belief, Defendant has used the GIRL SCOUTS trademark and variations thereof as Google Ad Words so that Defendant's advertisements would rank first in response to searches for "Girl Scouts" or "GSUSA Shop" on the Google search engine.  A true and accurate copy with redactions of a screenshot from this search engine showing the effect of such wrongful use of GSUSA's GS Marks is attached as Exhibit M.

74.     Upon information and belief, Defendant and its councils and volunteers have engaged in multiple other acts of misconduct that have violated GSUSA's trademark rights throughout the country that GSUSA can only fully discover through litigation.  Despite

Defendant being on notice of such infringing conduct and the interference alleged herein, this conduct is continuous and ongoing.

75.     As demonstrated by the examples above, there is a clear pattern of wrongful conduct by Defendant and its councils and leaders.  Defendant has failed to take reasonable actions to prevent or correct the wrongful conduct of its councils and leaders.

### ADDITIONAL EXAMPLES OF ACTUAL CONSUMER CONFUSION

76.     Separate and apart from the unauthorized, wrongful acts of misconduct described above that have caused confusion among consumers, other use of the GS Marks, including SCOUTS and SCOUTING, as well as SCOUTS BSA, in advertising and promotional materials, has created confusion among consumers, and these are likely to continue to cause confusion unless enjoined by this Court.

77.     Specifically, GSUSA has been made aware of several instances in which girls were mistakenly signed up for Boy Scouts programs when the intent was to sign them up for the GIRL SCOUTS.  For example, upon information and belief, in Central Indiana, a parent contacted a Girl Scout council and reported that she had mistakenly enrolled her daughter in the Boy Scouts when she believed she was signing up for Girl Scouts. The parent asked whether the enrollment fees paid to Defendant could be transferred to GSUSA (they cannot).  Upon information and belief, similar instances of parents mistakenly signing their girls up for BSA programs when they had intended to enroll them in GIRL SCOUTS programs have also occurred in Texas.

78.     Upon information and belief, at a school recruitment event in South Dakota, a mother filled out membership paperwork provided by a Boy Scouts recruiter, believing that she was signing her five-year-old daughter up for GIRL SCOUTS programs.

79.     Upon information and belief, at a school recruitment event in Goshen, Indiana, several parents reported to GSUSA volunteers that they had been confused by a presentation made by local BSA volunteers at a recruiting event as to whether they represented the Boy Scouts, the Girl Scouts, or both.  One parent actually enrolled her daughter in the Boy Scouts thinking that she was signing her up for Girl Scouts and received a refund as a result.

80.     Upon information and belief, a recruiter for Defendant repeatedly stated that "Boy Scouts is now accepting Girl Scouts" at an elementary school open house event in North Carolina, at which both Defendant and GSUSA councils had recruitment tables, prompting many attendees to express confusion to the recruiter at the GSUSA council table.

81.     The confusion about the relationship between GSUSA and Defendant is spreading through third-party organizations and media channels as well.  Upon information and belief, Neighborhood Centers of Johnson County, Iowa provided information on a recruitment flyer, depicted below, for Defendant that advertised "Scout Troop Starting! . . . all elementary school-aged children welcome" on September 18, 2018, which was billed as a "Girl Scouts" event and posted on the Grant Wood Elementary School's website as such.

**"Girl Scouts" Flyer Posted by Neighborhood Centers of Johnson County**



82.     In another example, a news article published in the *Brown County Press* located

in Ohio concerned *solely* with Defendant's events and recruiting was titled – "Boy and Girl

Scouts looking for members."  A true and accurate copy of this article published in August 2018

is attached as Exhibit N.  Another article published on September 10, 2018 in the *Barnesville*

*Record* of Barnesville, Minnesota, entitled, "Scout Me In," reported that "[a]fter a hundred years

the girl scouts and boy scouts are merging into one group and will be known as Scouts BSA."  A

local Boy Scout leader was quoted in the article as affirming the positive benefits that would

flow from this purported merger.  A true and accurate copy with redactions of this article

published on September 10, 2018 is attached as Exhibit O.

83.     Upon information and belief, Defendant's use of SCOUT, SCOUTING and

variations thereof like SCOUTS BSA in connection with all of its core programs offered to girls

of all ages nationwide has caused an extraordinary level of confusion among the public and violated GSUSA's valuable trademark rights.

84.     This confusion will only be exacerbated when Defendant implements its recently announced SCOUTS BSA program in February 2019 that will see older girls admitted into BSA as "Scouts."

85.     Defendant's use of the SCOUT mark and variations thereof in connection with all of BSA's core programs offered to girls of all ages on a nationwide basis has diluted and will continue to dilute GSUSA's famous GIRL SCOUTS trademark by blurring its distinctiveness and creating an improper and inaccurate association with BSA.

86.     Such improper associations are of particular concern to GSUSA because Defendant has received significant negative publicity regarding its activities conducted under the BOY SCOUTS and SCOUTS marks, such that the goodwill associated with those terms when used in connection with boys' leadership development services has been damaged.  In particular, there have been lawsuits and media articles alleging: a poor child safety record with respect to certain aspects of Defendant's programs; acts of misconduct perpetrated by some of its leaders over the years; and BSA's decision to lobby against child protection statutes in certain states.[2]

---

[2] Boy Scouts lobby in states to stem the flow of child abuse lawsuits, *The Washington Post*, (May 9, 2018), https://www.washingtonpost.com/powerpost/boy-scouts-lobby-in-states-to-stem-the-flow-of-child-abuse-lawsuits/2018/05/08/0eee0a44-47d8-11e8-827e-190efaf1f1ee_story.html?utm_term=.21c485b800f9; Boy Scouts' 'perversion files' released: 'The secrets are out', *Los Angeles Times*, (Oct. 18, 2012), https://latimesblogs.latimes.com/lanow/2012/10/boy-scouts-perversion-files-released-the-secrets-are-out.html; Three things to know about the Boy Scouts sex abuse cases, *The Atlanta Journal-Constitution*, (Aug. 20, 2018), https://www.ajc.com/news/crime--law/three-things-to-know-about-the-boy-scouts-sex-abuse-cases/EalhiPsV8ipUyIQVcb8CmK/; 4 men sue Boy Scouts of America over alleged sexual abuse, *New York Post*, (July 24, 2018), https://nypost.com/2018/07/24/4-men-sue-boy-scouts-of-america-over-alleged-sexual-abuse/; 'Pedophile Magnet' Boy Scouts of America Let 'Serial' Sex Abuser Prey on Four Boys: Lawsuit, *Daily Beast*, (July 24, 2018),

As a result, Defendant's misleading and confusing use of the SCOUTS mark and variations thereof in connection with youth development services and programs for girls has damaged and will continue to damage the goodwill associated with the GIRL SCOUTS mark.

87.     GSUSA's GIRL SCOUTS mark will be both blurred and tarnished as a result of consumers mistakenly associating the two organizations. The incorrect and improper association is likely to be and has been harmful to GSUSA's GIRL SCOUTS marks and the organization as a whole, resulting in the impairment in the distinctiveness of the GIRL SCOUTS mark.  Indeed, the consuming public formerly associated the GIRL SCOUTS mark, when used in connection with girls' leadership development programs offered to all girls of all ages, exclusively with GSUSA, but Defendant's actions have now begun to create an improper association between that mark and a second source – BSA.  This is a classic type of dilution prohibited under 15 U.S.C. § 1125(c).

88.     GSUSA has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)

89.     GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     GSUSA owns the distinctive, valid and registered GS Marks.

---

https://www.thedailybeast.com/pedophile-magnet-boy-scouts-of-america-let-serial-sex-abuser-prey-on-four-boys-lawsuit-claims, *The Guam Daily Post*, (Jan. 8, 2018), https://www.postguam.com/news/local/former-boy-scouts-file-sex-abuse-lawsuits/article_85e60006-f40f-11e7-8361-7369b1ee1218.html; A list of Boy Scout outing deaths, *Los Angeles Times*, (Dec. 5, 2010), http://articles.latimes.com/2010/dec/05/nation/la-na-scouts-list-online-20101205; Sexual abuse of Explorer Scouts has gone on for decades across the nation, *Courier Journal*, (Published May 18, 2017, Updated June 27, 2018), https://www.courier-journal.com/story/news/investigations/2017/05/18/sexual-abuse-explorer-scouts-has-gone-decades-across-nation/311510001/.

91.     Without GSUSA's consent, Defendant has used the SCOUTS and SCOUTING marks and marks similar thereto (and intends to use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services.

92.     In addition, Defendant's councils, troops and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops and leaders. Upon information and belief, Defendant reaps a direct financial benefit from the infringing activities of its councils, troops and leaders by virtue of membership dues that flow back to Defendant.

93.     Defendant's actions, as well as those of its councils, troops and leaders, as described herein, have caused and are likely to cause confusion, mistake, and deception among consumers as to the affiliation, connection, or association of Defendant with GSUSA, as to the true source of Defendant's services, and as to the sponsorship or approval of Defendant or Defendant's services by GSUSA.

94.     Neither Defendant nor its councils, troops, and leaders are affiliated or associated with GSUSA or its services, and GSUSA does not approve or sponsor Defendant, Defendant's services, or the marketing in U.S. commerce of Defendant's services by Defendant's councils, troops and leaders.

95.     Defendant is both directly and vicariously liable for the infringing use of the GS Marks, SCOUTS, SCOUTING and similar marks thereto, as well as that of Defendant's councils, troops and leaders, about which Defendant has received consistent notification from GSUSA.

96.     The actions of Defendant described above constitute direct and vicarious trademark infringement in violation of 15 U.S.C. § 1114(1).

97.     Defendant's actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with GSUSA and the GS Marks.

98.     GSUSA has been, and will continue to be, damaged and irreparably harmed by the actions of Defendant, which will continue unless Defendant is enjoined by this Court.  GSUSA is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

99.     GSUSA is also entitled to actual monetary damages in an amount to be determined at trial, and to any profits made by Defendant in connection with its infringing activities.

100.     Defendant's infringement of the registered GS Marks is deliberate, willful, and without extenuating circumstances, and constitutes a knowing use of GSUSA's trademarks.  Defendant's infringement is thus an "exceptional case" within the meaning of section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  GSUSA is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

## SECOND CAUSE OF ACTION

### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)

101.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

102.    GSUSA owns the famous, distinctive, valid, and registered GS Marks, as well as common law rights in the GS Marks, including the marks SCOUTS and SCOUTING as used in connection with girls programs.

103.    Without GSUSA's consent, Defendant has directly used the SCOUTS and SCOUTING marks and marks similar thereto (and intends to use SCOUTS BSA), which are confusingly similar to the GS Marks in commerce in connection with services targeted to girls and to advertise and promote such competing services.

104.    In addition, Defendant's councils, troops and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders. Upon information and belief, Defendant reaps a direct financial benefit from the wrongful activities of its councils, troops, and leaders by virtue of membership dues that flow back to Defendant.

105.    Defendant's actions, as well as those of its councils, troops, and leaders, as described herein have caused and are likely to cause confusion, mistake, and deception among

consumers as to the affiliation, connection, or association of Defendant with GSUSA, as to the true source of Defendant's services, and as to the sponsorship or approval of Defendant or Defendant's services by GSUSA.

106.     Neither Defendant nor its councils, troops, and leaders are affiliated or associated with GSUSA or its services, and GSUSA does not approve or sponsor Defendant, Defendant's services, or the marketing in U.S. commerce of Defendant's services by Defendant's councils, troops, and leaders.

107.     Defendant is both directly and vicariously liable for the use of the GS Marks, SCOUTS, SCOUTING and similar marks thereto, as well as that of Defendant's councils, troops, and leaders, about which Defendant has received consistent notification from GSUSA.

108.     The actions of Defendant described above constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a)(1).

109.     Defendant's actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with GSUSA and the GS Marks.

110.     GSUSA has been, and will continue to be, damaged and irreparably harmed by the actions of Defendant, which will continue unless Defendant is enjoined by this Court.  GSUSA is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

111.     GSUSA is also entitled to actual monetary damages in an amount to be determined at trial and to any profits made by Defendant in connection with its unfairly competitive activities.

112.     Defendant's unfair competition and false designation of origin are deliberate, willful, and without extenuating circumstances.  Defendant's conduct is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  GSUSA is

therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

### THIRD CAUSE OF ACTION
### FEDERAL TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(C)

113.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

114.    GSUSA's GIRL SCOUTS mark is famous and distinctive and has been for many years prior to the first offering of any services by Defendant to girls under the trademarks SCOUTS, SCOUTING and variations thereof.

115.    Without authorization or license from GSUSA, Defendant is using and intends to use the SCOUTS and SCOUTING trademarks and marks similar thereto (and intends to use SCOUTS BSA) in commerce in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark.

116.    In addition, Defendant's councils, troops, and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA) in commerce in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark.  Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops, and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders.  Upon information and belief, Defendant reaps a direct financial benefit from the infringing activities of its councils, troops, and leaders by virtue of membership dues that flow back to Defendant.

117.    The acts and conduct of Defendant alleged herein, as well as those of Defendant's councils, troops, and leaders occurring at Defendant's direction, occurred after

GSUSA's GIRL SCOUTS mark became famous and constitute dilution by blurring and dilution by tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), both directly and vicariously.

118.    Upon information and belief, Defendant's acts of dilution and tarnishment are willful, deliberate, and in bad faith.

119.    GSUSA has no adequate remedy at law.

120.    Defendant's acts and conduct will cause immediate and irreparable injury to GSUSA, to its goodwill and reputation, and to the public, and will continue to threaten such injury unless enjoined by this Court.

121.    GSUSA is entitled to injunctive relief and to recover GSUSA's actual damages and an award of GSUSA's profits, as well as costs and GSUSA's reasonable attorney's fees, under 15 U.S.C. §§ 1025(c), 1116, and 1117.

## FOURTH CAUSE OF ACTION
### MODIFICATION OR PARTIAL CANCELLATION OF REGISTRATION

122.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

123.    Defendant's U.S. trademark registration for the SCOUT mark (Reg. No. 4,865,183) obtained by assignment from a university does not limit the identified online secondary level educational services to programs for boys.

124.    Defendant's use of the SCOUT mark in connection with educational services for girls is likely to cause, and has already caused, consumer confusion.

125.    Pursuant to 15 U.S.C. § 1119, this Court has the authority to "determine the right to registration, order cancellation of registrations, in whole or in part . . . and otherwise

rectify the register with respect to the registrations of any party" in an action involving a registered mark.

126.    Consistent with the authority conferred by 15 U.S.C. § 1119, Defendant's registration for the SCOUT mark should be modified or partially cancelled through entry of a decree ordering the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office to make an entry on the records of the PTO limiting the identified services in such registration to programs for boys.

### FIFTH CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT,
### UNFAIR COMPETITION AND PASSING OFF

127.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

128.    GSUSA owns common law trademark rights in the GS Marks and all such rights owned by GSUSA are superior to any rights that the Defendant may claim to have in the SCOUTS or SCOUTING marks with respect to any goods or services targeted to girls.

129.    Defendant's unauthorized use of trademarks confusingly similar to the GS Marks in connection with youth development services or programs for girls is likely to cause confusion as to the source or sponsorship of these services, and is likely to lead the public to believe that GSUSA is affiliated with or sponsors or endorses Defendant and/or Defendant's services, and is likely to mislead persons in the ordinary course of purchasing Defendant's services, thereby injuring the reputation and goodwill and unjustly diverting from GSUSA to Defendant the benefits arising therefrom.

130.    In addition, Defendant's councils, troops, and leaders, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and

will soon use SCOUTS BSA), which are confusingly similar to the GS Marks, in commerce in connection with services targeted to girls and to advertise and promote such competing services. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops, and leaders, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders. Upon information and belief, Defendant reaps a direct financial benefit from the wrongful activities of its councils, troops, and leaders by virtue of membership dues that flow back to Defendant.

131.     Defendant's unlawful activities, as alleged above, constitute trademark infringement, unfair competition, and passing off as proscribed by common law.

132.     Defendant's acts of trademark infringement, unfair competition, and passing off were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

133.     Defendant's acts or intended acts of trademark infringement, unfair competition, and passing off, unless enjoined by this Court, will threaten to cause GSUSA irreparable damage, loss, and injury for which GSUSA has no adequate remedy at law.  GSUSA is therefore entitled to injunctive relief enjoining such wrongful conduct, and to an award of damages that provides GSUSA with adequate compensation for the harm it has suffered.

<div align="center">

**SIXTH CAUSE OF ACTION**
**TRADEMARK DILUTION UNDER NEW YORK GENERAL BUSINESS LAW § 360-l**

</div>

134.     GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

135.    GSUSA's GIRL SCOUTS mark is distinctive within the State of New York and has been for many years prior to the first offering of any services by Defendant to girls under the SCOUTS and SCOUTING trademarks and marks similar thereto.

136.    Without authorization or license from GSUSA, Defendant is using and intends to use the SCOUTS and SCOUTING trademarks and marks similar thereto (and intends to use SCOUTS BSA) in the State of New York in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark.

137.    In addition, Defendant's councils, troops, and leaders within the State of New York, at the direction of Defendant, have also used the SCOUTS and SCOUTING marks and marks similar thereto (and will soon use SCOUTS BSA) in New York in a manner that impairs the distinctive quality, and harms the reputation, of GSUSA's famous GIRL SCOUTS mark. Upon information and belief, Defendant has the authority to control the use of intellectual property related to Defendant's services by its councils, troops, and leaders within the State of New York, and Defendant exercises control over the use of such intellectual property by its councils, troops, and leaders.  Upon information and belief, Defendant reaps a direct financial benefit from the activities of its councils, troops, and leaders within the State of New York by virtue of membership dues that flow back to Defendant.

138.    The acts and conduct of Defendant alleged herein, as well as those of Defendant's councils, troops, and leaders occurring at Defendant's direction, occurred after GSUSA's GIRL SCOUTS mark became distinctive within the State of New York and constitute dilution by blurring and dilution by tarnishment in violation of New York General Business Law § 360-l.

139.    Defendant's acts and conduct will cause immediate and irreparable injury to GSUSA, to its goodwill and reputation, and to the public, and will continue to threaten such injury unless enjoined by this Court.  GSUSA is therefore entitled to injunctive relief in New York under General Business Law § 360-l.

### SEVENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

140.    GSUSA realleges and incorporates by reference herein each and every allegation of the foregoing paragraphs of this Complaint as if fully set forth herein.

141.    Defendant's councils and GSUSA's councils occasionally attend the same recruitment events.

142.    Defendant is aware that GSUSA has a prospective business relationship with the parents and girls who attend these recruitment events.

143.    Defendant, by the acts described herein that illustrate a widespread and systematic course of conduct, intentionally interfered with those relationships by dishonest, unfair, and improper means.  For example, Defendant's recruiters have recently told parents and girls that there "are no more Girl Scouts" or that the organizations have combined.  These statements are dishonest, unfair, and improper because GSUSA is still in existence and Defendant cannot register girls for the GIRL SCOUTS program.   Upon information and belief, these recruiters acted on behalf of Defendant or for the purpose of serving the Defendant's interest.  Upon information and belief, as a result of Defendant's interference and/or knowledge of and failure to halt such systematic tortious behavior, girls have signed up for Defendant's program instead of GSUSA's program, causing significant harm to GSUSA's prospective business relationships with these individuals.

144.     Likewise, GSUSA had a prospective business relationship with a retailer in Red Bluff, California to provide space to a Girl Scout council for the purpose of conducting Girl Scout activities.  Defendant, knowing of this relationship, intentionally interfered with that relationship when it attempted to dissuade the retailer from providing booth space to the council on the basis that Defendant now serves both Boy Scouts and Girl Scouts.  Upon information and belief, such dishonest, unfair, and improper statements interfered with the reservation of such booth space.

145.     Upon information and belief, Defendant and its councils or leaders have made numerous other dishonest, unfair and improper statements for the purpose of intentionally and knowingly inducing parents and girls across the country to register with Defendant's programs instead of GSUSA's programs.  Upon information and belief, GSUSA can only obtain information about these additional instances of dishonest, unfair, and improper actions through discovery.

## PRAYER FOR RELIEF

WHEREFORE, GSUSA respectfully requests the following relief:

**(a)**     That GSUSA be granted preliminary and permanent injunctive relief under 15 U.S.C. § 1051 *et seq.* and New York law specifically requiring that Defendant and all of its councils, troops, officers, leaders, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert or participation with them, or any of them, be preliminarily and permanently enjoined from: (i) using the GS Marks, or any confusingly similar variations thereof, in connection with the marketing, promotion, advertising, sale or rendering of any of Defendant's services, (ii) using the marks SCOUT, SCOUTS, SCOUTING, SCOUTS BSA, or any variation thereof, alone without an inherently distinctive or distinguishing term appearing immediately before it, in

connection with the marketing, promotion, advertising, sale or rendering of any of Defendant's services directed to girls; (iii) using any false designation of origin or any false description that can, or is likely to, mislead the public, or individual members thereof, to believe that any service distributed, sold, offered for sale, or advertised by Defendant is in any manner associated with or approved or sponsored by GSUSA; (iv) representing in any manner that Defendant or its councils or troops are endorsed or sponsored by GSUSA, or represent or work on behalf of GSUSA, or are affiliated or associated with GSUSA; and (v) any other infringing or misleading conduct discovered during the course of this action;

(b)      That Defendant be ordered to provide training to all of its councils, troops, officers, leaders, agents, servants, representatives, employees, and volunteers to prevent confusion between the parties and their respective trademarks, including with respect to: (i) Defendant's use of the marks SCOUT, SCOUTS, SCOUTING, SCOUTS BSA or variations thereof in a manner compliant with the injunction issued by this Court; (ii) Defendant's relationship with GSUSA; (iii) the GS Marks, and (iv) affirmative steps that must be taken to avoid or remediate instances of actual consumer confusion; and to provide GSUSA with a written report detailing such training;

(c)      That Defendant be ordered to file a withdrawal with prejudice of Trademark Application Serial Nos. 87/906,407, 87/906,567, 87/882,226 with the PTO;

(d)      That Defendant file with the Court, within ten (10) days from entry of the aforementioned injunction, a declaration signed under penalty of perjury certifying the manner in which Defendant has complied with the terms of the injunction;

(e)      That Defendant is adjudged to have violated 15 U.S.C. § 1114(1) by infringing the GS Marks;

**(f)**     That Defendant is adjudged to have violated 15 U.S.C. § 1125(a)(1) for unfairly competing against GSUSA and by using a false designation of origin for Defendant's services;

**(g)**     That Defendant is adjudged to have violated 15 U.S.C. § 1125(c) by diluting the GIRL SCOUTS trademark;

**(h)**     That judgment be entered in favor of GSUSA against Defendant to the effect that U.S. Reg. No. 4,865,183 is to be modified or partially cancelled, and ordering the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office to make an entry on the records of the PTO limiting the identified services in such registration to programs for boys;

**(i)**     That Defendant is adjudged to have engaged in illegal acts of common law trademark infringement, unfair competition, and passing off;

**(j)**     That Defendant is adjudged to have violated New York General Business Law § 360-1 by diluting the GIRL SCOUTS trademark;

**(k)**     That Defendant is adjudged liable for tortious interference with prospective economic advantage;

**(l)**     That GSUSA be awarded damages in an amount sufficient to compensate it for harm caused by Defendant's acts;

**(m)**     That this Court order an accounting of Defendant's profits earned as a result of Defendant's unlawful activities and disgorge all of said profits to GSUSA;

**(n)**     That GSUSA be awarded three times Defendant's profits and three times GSUSA's damages suffered as a result of Defendant's willful, intentional, and deliberate acts in violation of the Lanham Act and New York law;

**(o)**     That GSUSA be awarded its attorneys' fees and costs in this action under 15

U.S.C. § 1117 as a result of Defendant's Lanham Act violations;

**(p)**     That GSUSA be granted prejudgment and post judgment interest; and

**(q)**     That GSUSA be granted such further relief as the Court may deem just and

equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, GSUSA hereby respectfully demands a

trial by jury of all issues triable of right by a jury.

Dated:     New York, New York                          Respectfully Submitted,
           November 6, 2018
                                                        DORSEY & WHITNEY LLP


                                              By:  /s/ *Bruce R. Ewing*
                                                   Bruce R. Ewing
                                                   Fara S. Sunderji
                                                   Amanda M. Prentice
                                                   51 West 52nd Street
                                                   New York, New York 10019
                                                   (212) 415-9200

                                                   *Attorneys for Plaintiff*
                                                   *Girl Scouts of the United States of America*

# Exhibit B

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S EMAIL ADDRESS
**rachelkassabian@quinnemanuel.com**

February 1, 2019

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States Courthouse
500 Pearl Street—Room 1050
New York, NY 10007
Fax: (212) 805-7942

Re:      *Girl Scouts of the United States of America v. Boy Scouts of America*, Case No. 18-cv-10287 (AKH)

Dear Judge Hellerstein:

        We are counsel to Defendant the Boy Scouts of America, and write to address certain statements in Plaintiff's counsel's correspondence to the Court this morning.  At the parties' January 25, 2019 scheduling conference, after hearing a brief description of the issues raised in Defendant's Motion to Dismiss [Dkt. 18-20] ("Motion") filed January 23, 2019, the Court indicated that it considered those issues premature and was inclined to deny the Motion without prejudice to Defendant's raising and seeking resolution of those issues later in the case, such as at the time of the parties' pre-trial conference.  Given that the Court wished to defer those issues, and given that Plaintiff had not yet submitted its responsive briefing to the pending Motion, the undersigned responded that Defendant would simply withdraw the Motion without prejudice to its re-filing at a later time of the Court's preference.  The Court confirmed that a withdrawal and deferral was acceptable.

        Accordingly, with the Court's permission, Defendant hereby withdraws the Motion [Dkt. 18-20] without prejudice to its right to raise these defects in Plaintiff's case at a later time.

Very truly yours,

Rachel Kassabian

cc:      All Counsel of Record (by ECF)

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



GIRL SCOUTS OF THE UNITED STATES
OF AMERICA,

                     Plaintiff,

     – against –

BOY SCOUTS OF AMERICA,

                   Defendant.

1:18-cv-10287 (AKH)

**CIVIL CASE MANAGEMENT
PLAN**

       After consultation with counsel for the parties, the following Case Management Plan is adopted. This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

A.    The case *is* to be tried to a jury.

B.    Non-Expert Discovery:

       1.    The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. All non-expert discovery is to be completed by September 25, 2019, which date shall not be adjourned except upon a showing of good cause and further order of the Court. Interim deadlines for specific discovery activities may be extended by the parties on consent without application to the Court, provided the parties are certain that they can still meet the discovery completion date ordered by the Court.

           a.    The parties shall list the contemplated discovery activities and anticipated completion dates in Attachment A, annexed hereto.

       2.    Joinder of additional parties must be accomplished by March 1, 2019.

       3.    Amended pleadings may be filed without leave of the Court until April 1, 2019.

C.    For all causes of action seeking monetary damages, each party shall identify and quantify in Attachment B, annexed hereto, each component of damages alleged; or, if not known, specify and indicate by what date Attachment B shall be filed providing such information.

D.   Motions, Settlement, Second Pre-Trial Conference, and Expert Discovery:

1.   The parties shall exchange expert reports showing the results of any consumer surveys no later than September 25, 2019. The service of responsive expert survey reports shall be deferred until after the Second Case Management Conference scheduled below.

2.   Upon the conclusion of non-expert discovery, counsel for the parties shall meet for at least two hours at the office of plaintiff's counsel, to discuss settlement. The date for the meeting is October 4, 2019, at 10:00 a.m. (Counsel shall insert a date but, at the option of either, the date may be canceled upon the service or filing of a dispositive motion and notice to the court.)

3.   Approximately one week thereafter, the parties shall meet with the Court for a Second Case Management Conference to discuss the status of the case, the prospects of settlement, whether alternative dispute-resolution procedures should be utilized, the need for and a schedule regulating the service of responsive expert reports, other expert reports and expert discovery, appropriate motions and schedules therefor, and any other issue counsel or the Court wish to discuss. The Case Management Conference will be held on October 25, 2019, at 10:00 a.m.

4.   As to motions, there shall be no more than three rounds of serving and filing papers: supporting affidavits and briefs, opposing affidavits and briefs, and reply affidavits and briefs.

E.   Any request for relief from any date provided in this Case Management Plan shall conform to the Court's Individual Rules, and include an order, showing consents and disagreements of all counsel, setting out all dates that are likely to be affected by the granting of the relief requested, and proposed modified dates. Unless and until the Court approves the proposed order, the dates provided in this Plan shall be binding.

F.   A final pre-trial conference will be held on a date to be set, as close as possible to the date that trial is expected to begin. The parties, three days before said meeting, shall submit their pre-trial order, conforming to the Court's Individual Rules and, at the conference, deliver their exhibit books containing all exhibits the parties actually intend to offer at the trial.

G.   Pre-Trial Motions:

Applications for adjournments and for discovery or procedural rulings will reflect or contain the positions of all parties, and otherwise conform to my Individual Rules 1(D) and 2(E).

H.   Defendant's Answer shall be filed on or before February 8, 2019.

2

SO ORDERED.

Dated:   New York, New York
        February //, 2019

                                    ALVIN K. HELLERSTEIN
                                    United Stated District Judge

3

## ATTACHMENT A

The Parties are to list the discovery activities (i.e., production of documents, number of depositions, requests to admit, interrogatories) and anticipated completion dates:

| DISCOVERY ACTIVITIES | COMPLETION DATE |
|---|---|
| 1. Service of initial disclosures under Fed. R. Civ. P. 26 | February 6, 2019 |
| 2. Deadline to complete production of responsive documents. Documents to be produced on a rolling basis. | September 25, 2019 |
| 3. Deadline for completion of fact depositions, no more than ten per side absent agreement of the parties or order of the Court. | September 25, 2019 |

**ATTACHMENT B**

For all causes of action seeking monetary damages, each party shall identify and quantify each component of damages alleged:

1.    PLAINTIFF'S CLAIMS:

     Plaintiff seeks an accounting of profits stemming from and an award of damages caused by the conduct described in its November 6, 2018 complaint. Absent discovery from Defendant and consideration of such evidence by an expert witness, Plaintiff cannot supply a computation of damages. Plaintiff will serve and file an amended Attachment B promptly after service of an expert report quantifying its damage claims.

2.    COUNTERCLAIMS AND CROSS-CLAIMS:

     N/A

3.    THIRD-PARTY CLAIMS:

     Not applicable.

# Exhibit D

August 16, 2019

*So ordered.*

**BY ECF**
The Honorable Alvin K. Hellerstein
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

8/16/2019

Re:  *Girl Scouts of the United States of America v. Boy Scouts of America*, No. 18-cv-10287

Dear Judge Hellerstein:

The parties in the above-captioned proceeding jointly write pursuant to the August 6, 2019 Order Regulating Discovery [ECF No. 42] to inform the Court about the results of their in-person meet-and-confer conference held at the courthouse on August 13, 2019, and to jointly request an extension of the fact discovery deadline set forth in the Civil Case Management Plan [ECF No. 28] to allow the parties to fulfill the various agreements they reached. Present at that conference were: Bruce Ewing (lead counsel), Jonathan Montcalm and Kimberly Frumkin on behalf of plaintiff Girl Scouts of the United States of America ("GSUSA"); and Rachel Kassabian (lead counsel), Todd Anten and Dylan Scher on behalf of defendant Boy Scouts of America ("BSA"). The conference lasted from 2:00 p.m. until 5:00 p.m.

## I.  Previous Discovery Disputes

The parties are pleased to report to the Court that they have largely resolved the discovery disputes detailed in their August 2, 2019 Joint Letter [ECF No. 40], to their mutual satisfaction. Both sides have agreed to produce the documents, information and amended responses and disclosures sought in the Joint Letter, to the extent such documents have not already been produced or agreed to be produced, and with certain modifications to which the parties have agreed.

Only one issue remains—the sufficiency of GSUSA's removal of redactions to documents that had been redacted on claimed "non-responsiveness" grounds. The parties are working in good faith toward resolution of this remaining issue, have made substantial progress, and are optimistic that this final issue will be resolved as well. However, given the large number of redacted documents involved, and because GSUSA's document database is in the process of being migrated to a new platform, the parties have not yet been able to confirm their agreement as to approximately 70 of the 254 documents at issue. The parties respectfully request that they be permitted to continue their discussions on this one remaining issue next week, and to provide the Court with a further and final update on this issue by no later than Monday, August 26.

## II.  Joint Request for an Extension of the Fact Discovery Deadline

The parties have worked diligently to craft a deposition schedule, and expect that, despite the additional document productions they both are undertaking, multiple depositions will be completed by the current September 25 deadline. However, given the parties' various agreements reached on August 13, it is not feasible for all of the remaining documents and materials to be

produced in time for each side to collect, review and incorporate them into their deposition preparation efforts for every deponent under the current schedule. The parties wish to avoid issues attendant to receiving documents or disclosures relevant to a particular witness near or after that witness' deposition, including the potential re-calling of witnesses, which both parties seek to avoid for cost and efficiency reasons. Also, the depositions of the third-party and/or non-employee witnesses related primarily to issues of actual confusion cannot reasonably be taken under the current schedule.

Therefore, to streamline the deposition process and ensure that all parties have the documents and disclosures they need prior to the depositions being taken, and pursuant to Your Honor's Individual Practices Rule I.D. and the Civil Case Management Plan (Dkt. 28, ¶¶ B.1 & E), the parties jointly request an extension of the fact discovery deadline through and including November 20, 2019, which they respectfully request the Court to so-order. Good cause exists for this requested 8-week extension, including because: (1) such an extension would facilitate the parties' agreement to produce additional documents and materials in time for each side to review and incorporate them into their deposition preparation; (2) such an extension will allow the BSA sufficient time to collect, review and produce documents responsive to GSUSA's third requests for production of documents, the written responses to which are not due until August 21, 2019; and (3) there are multiple third-party and/or non-employee witnesses to be deposed, and GSUSA anticipates identifying additional such witnesses who likely also will need to be deposed. To this end, the parties have agreed to complete their respective document productions by September 27, 2019.

This is the first request by the parties for an adjournment or extension of the fact discovery schedule. The specific dates relevant to this extension, including the original date, new interim deadlines, and revised dates for the post-fact discovery settlement conference, are set forth below:

| EVENT | CURRENT DATE | REQUESTED EXTENSION |
|---|---|---|
| Non-expert discovery deadline: | September 25, 2019 | November 20, 2019 |
| Exchange of expert reports showing the results of any consumer surveys: | September 25, 2019 | November 22, 2019 |
| Meeting, for at least two hours at the office of plaintiff's counsel to discuss settlement: | October 4, 2019 | December 5, 2019 |
| Second Case Management Conference: | October 25, 2019 | December 6, 2019 |

We thank the Court in advance for its consideration of these issues.

Respectfully Submitted,

DORSEY & WHITNEY LLP

Respectfully Submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

By: */s/: Bruce R. Ewing*
   Bruce R. Ewing (BE-0724)
   Fara S. Sunderji (FS-1208)
   Jonathan Montcalm (JM-8866)
   51 West 52nd Street
   New York, New York 10019
   (212) 415-9200

   *Attorneys for Plaintiff*
   *Girl Scouts of the United States of*
   *America*

By: */s/: Rachel Kassabian*
   Rachel Kassabian (*pro hac vice*)
   555 Twin Dolphin Drive 5th Floor
   Redwood Shores, CA 94065
   (650) 801-5005

   Todd Anten
   51 Madison Avenue, 22nd Floor
   New York, NY 10010
   (212) 849-7000

   *Attorneys for Defendant*
   *Boy Scouts of America*

Exhibit E



November 17, 2019

So ordered, with the
hand written modifications
below.

*(signature)*
11-18-19

**BY ECF**

The Honorable Alvin K. Hellerstein
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

**Re:**   ***Girl Scouts of the United States of America v. Boy Scouts of America*, No. 18-cv-10287**

Dear Judge Hellerstein:

Plaintiff Girl Scouts of the United States of America ("GSUSA") and defendant Boy Scouts of America (the "BSA"), the parties in the above-captioned proceeding, jointly write to request a short extension of pending deadlines in order to allow the parties to complete certain open items.

The parties have worked diligently to meet the current fact discovery deadline of November 20, 2019, and the vast majority of fact discovery has been completed. However, due to circumstances beyond the parties' control involving witness availability, a few depositions scheduled to take place near the end of the current discovery period need to be postponed briefly into the latter part of November and/or December. The parties are also in the process of making their final supplemental document productions and written discovery responses, which work is estimated to be completed in December as well. There are also several third parties that have yet to produce documents. With the fact discovery deadline being extended, the parties agree that the corresponding expert survey exchange date, Court-ordered settlement conference, and second Case Management Conference, should be continued as well.

Therefore, pursuant to Your Honor's Individual Practices Rule I.D. and the Civil Case Management Plan (Dkt. 28, ¶¶ B.1 & E), the parties jointly request a brief extension of these deadlines, as set forth in the chart below. Good cause exists for this requested extension for the reasons set forth above. This is the second joint request by the parties for an extension of the fact discovery schedule. *See* Dkt. 46.

The specific dates relevant to this extension are set forth below:

| EVENT | CURRENT DATE | REQUESTED EXTENSION |
|---|---|---|
| Non-expert discovery deadline:[1] | November 20, 2019 | December 20, 2019 |
| Exchange of expert reports showing the results of any consumer surveys: | November 22, 2019 | December 19, 2019 |
| Meeting, for at least two hours at the office of plaintiff's counsel to discuss settlement: | December 5, 2019 | January 14, ~~2019~~ 2020 |
| Second Case Management Conference: | December 6, 2019 | January ~~15, 2019~~ 17, 2020 |

We thank the Court in advance for its consideration of these issues.

Respectfully Submitted,

DORSEY & WHITNEY LLP

By: /s/: *Bruce R. Ewing*
    Bruce R. Ewing (BE-0724)
    Fara S. Sunderji (FS-1208)
    Jonathan Montcalm (JM-8866)
    51 West 52nd Street
    New York, New York 10019
    (212) 415-9200

    *Attorneys for Plaintiff*
    *Girl Scouts of the United States of*
    *America*

Respectfully Submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/: *Rachel Kassabian*
    Rachel Kassabian (*pro hac vice*)
    555 Twin Dolphin Drive 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5005

    Todd Anten
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    (212) 849-7000

    *Attorneys for Defendant*
    *Boy Scouts of America*

---

[1] No additional document requests, interrogatories, requests to admit or third-party subpoenas can be served, no additional depositions other than the remaining scheduled depositions, and the six pending depositions that require rescheduling, shall be taken, absent agreement of the parties.

# Exhibit F

May 24, 2019

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Court
  for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007-1312

       Re:  *Girl Scouts of the United States of America v. Boy Scouts of America*
           *18-cv-10287 (AKH)*

Dear Judge Hellerstein:

    The parties in the above-captioned proceeding jointly write in compliance with the
Court's Order of May 8, 2019 to request that the Court resolve the discovery disputes detailed
below.  Pursuant to Your Honor's Individual Rule 2.E., except as otherwise noted below, the
parties agree they have met and conferred extensively regarding these issues prior to submitting
this letter.  In particular, unless otherwise noted, the parties telephonically met and conferred on
these issues on April 4, April 5, and April 10, for over an hour at each meeting.  Rachel Herrick
Kassabian and Donald Reinhard participated in all of these discussions on behalf of defendant
Boy Scouts of America (the "BSA"), and Fara Sunderji and Kimberly Frumkin participated in all
of these discussions on behalf of plaintiff Girl Scouts of the United States of America
("GSUSA").  Unless otherwise noted, the parties also met and conferred in writing on these
issues on March 19, March 31, April 18, April 24, May 3, May 10 and May 14.  Both parties also
served amended discovery responses on May 15, as required by the Court's order.

    This joint letter is organized as follows:

    Part I:     GSUSA's and the BSA's respective introductions;

    Parts II-III :  GSUSA's and the BSA's respective positions regarding the BSA's
          responses to certain of GSUSA's discovery demands; and

    Parts IV-V:  The BSA's and GSUSA's respective positions regarding GSUSA's
          responses to certain of the BSA's discovery demands.

**I.**  **Introductions**

    **A.**  **GSUSA'S Introduction**

    As the Court is aware, this is a case in which GSUSA asserts that the offering of BSA's
services using GSUSA's famous GIRL SCOUTS trademarks and other trademarks like SCOUT

The Honorable Alvin K. Hellerstein
May 24, 2019
Page 11

which the dilution and infringement of which GSUSA complains has occurred. Once again, this argument is fundamentally flawed. While the tarnishment of GSUSA's trademarks and the confusion BSA has caused in the marketplace began when it announced that it would begin offering services to girls in October 2017 (not May 2018), the negative associations many consumers have with respect to BSA's services and trademarks began years before, and GSUSA is entitled to know what BSA knows about the depth and breadth of those negative, highly damaging associations. This is not a case involving a marketplace newcomer whose use of infringing and diluting trademarks began only recently. In fact, BSA has touted that "under the new name of 'Scouts BSA,' that program, *which is the same iconic program it has always been*, will continue to offer Scouting in single-gender troops, through which Scouts – ages 11 through 17 – can work to earn the Eagle Scout rank." *See* https://scoutingwire.org/the-boy-scouts-of-america-organization-name-is-not-changing-and-other-facts-to-set-the-record-straight/ (emphasis added). The Court should therefore order BSA to produce documents and information responsive to these requests, as amended by GSUSA and set forth above.

C.      Other GSUSA Requests

**GSUSA Document Request No. 14**: This Request originally sought all documents concerning its trademarks in BSA's possession, custody or control. During the meet-and-confer process, GSUSA agreed to limit this Request to:

> *All documents concerning (i) GSUSA's use or rights, or lack thereof, of or in the terms SCOUTS and SCOUTING without "Girl" or some other distinguishing term; (ii) any overlap or conflict between any of the GS Marks and any of BSA's trademarks; (iii) all documents concerning the impact of BSA's offering of services to girls on GSUSA's trademark rights, whether in 1971 or at any time thereafter; and (iv) any documents mentioning the GS Marks dated after January 1, 2016.*

In its Response to Request No. 14, BSA largely agreed to produce documents in response to sub-parts (i), (ii) and (iii) of this narrowed Request,[7] but not sub-part (iv) above.

There is no basis for BSA's refusal to produce any documents mentioning GSUSA's trademarks dated after January 1, 2016. Such documents are at least relevant to the sixth *Polaroid* factor, namely the defendant's good or bad faith. *See Gap, Inc. v. G.A.P. Adventures, Inc.*, 2011 U.S. Dist. LEXIS 71675, at *38-39 (relying on evidence showing that defendant accepted the idea that his mark would likely capitalize on an association with plaintiff and that defendant acted to strengthen that association). Accordingly, BSA should be required to produce them.

---

[7] Once again, BSA has conditioned its willingness to produce certain documents in response to this Request on GSUSA's willingness to produce the same types of documents. *See* Exh. 1 at Amended Response to Request 14. GSUSA has no issue doing so as to this Request.

The Honorable Alvin K. Hellerstein
May 24, 2019
Page 21

received since January 1, 2012, including, but not limited to, media and public relations strategies.

Once again, in its section of its letter, GSUSA has not provided any specific argument in defense of the relevance of RFP No. 40. More specifically, GSUSA fails to explain how the BSA's internal deliberations, plans or efforts are probative of how the public perceives the BSA or its marks, which is (by definition) a matter of public assessment. Thus, whether the BSA has made any "effort" to "improve" public perceptions has nothing to do with whether the BSA tarnished GSUSA's marks. *See, e.g.*, *Smith v. Wal-Mart Stores, Inc.*, 475 F. Supp. 2d 1318, 1324 (N.D. Ga. 2007) (denying motion to compel: "internal assessment of its reputation and responses to criticism are irrelevant" to dilution claim because "[t]he relevant measure of a likelihood of tarnishment is how ***the public*** … perceives Smith's uses of the Wal-Mart trademarks. … The efforts of Wal-Mart to analyze or protect its reputation in the marketplace do not have any relevance as to whether Smith's uses are likely to injure Wal-Mart's reputation or dilute its marks in the minds of consumers.") (emphasis added).[20]

Moreover, as noted above, in response to RFP No. 37, the BSA already has agreed to produce any internal research or surveys concerning the public's perceptions of the BSA and the BSA Marks at issue since January 1, 2017 – this is sufficient to provide GSUSA with any conceivably relevant documents about public perceptions that the BSA may have.

     5.     <u>GSUSA Interrogatory No. 15: People knowledgeable about complaints.</u>

This issue appears to be moot: as GSUSA concedes, in its amended responses the BSA named eight individuals with knowledge concerning concerns voiced or complaints raised by consumers regarding the quality of the Cub Scouts and Scouts BSA programs that welcome girls. GSUSA provides no explanation for how the BSA's response is deficient, nor have the parties met and conferred on the substantive sufficiency of that response.

**C.**     **<u>Other GSUSA Requests</u>**

     1.     <u>GSUSA's RFP No. 14:  "Any" documents that mention the Girl Scouts' marks after January 1, 2016.</u>

The BSA should not be compelled to produce "any documents mentioning the GS Marks dated after January 1, 2016" because:  (1) this RFP is a classic example of a facially overbroad and unduly burdensome RFP; (2) the BSA has already agreed to produce documents in response to

---

[20]   *Saxon Glass Techs., Inc. v. Apple Inc.*, 2018 U.S. Dist. LEXIS 16810 (W.D.N.Y. Feb. 1, 2018), cited by GSUSA, is inapposite – there, the court ordered the defendant to produce "published media" and "promotional marketing" materials, *id.* at *8, not internal "efforts to improve public perceptions."

The Honorable Alvin K. Hellerstein
May 24, 2019
Page 22

multiple more properly targeted RFPs seeking subsets of that information; and (3) GSUSA has not explained how is overbroad RFP is relevant to the issues presented.

The RFP is overbroad.  This RFP, which seeks "all" documents over a three-year period that mention the Girl Scouts' name or mark, is impermissibly overbroad.  The BSA has already agreed to produce documents referencing both GSUSA and some relevant subject (such as the BSA's SCOUT ME IN campaign, or trademark enforcement efforts).  This RFP, however, goes much farther, seeking every document that mentions the Girl Scouts in any way, shape or form.

The BSA and GSUSA have coexisted, corresponded and interacted for decades, and any search for GSUSA or Girl Scouts in response to this RFP will return numerous irrelevant documents that happen to reference the Girl Scouts but have no bearing on this case – such as documents referencing (1) BSA members, volunteers and professionals who are also involved in Girl Scouting, (2) BSA employees' friends or family members who are involving in Girl Scouting, and (3) the myriad of historically collaborative events between GSUSA and the BSA.  For example:

- Scouting for Food (collecting food for local food banks).

- GSUSA's rental or use of BSA facilities or equipment, including office space, program space, equipment, or similar real or personal property, including trailers, camping equipment, and other program assets.

- Service projects including community cleanup projects.

- Parades.

- Program events, including camporees, regattas, Pinewood Derby races, and similar outings or events.

- Scout day or night at the ballpark, church (Scout Sunday), or other locations such as museums, skiing, etc.

- Red Cross blood drives.

- Recruitment events.

- Scout shows/Scout expos.

- The Vietnamese Scout program.

- Civic flag ceremonies or similar events.

- Joint use of shared resources provided by third parties (*e.g.*, Scout huts or houses provided by churches).

- Joint third-party recognitions or fundraising events, (*e.g.*, Gubernatorial Scout events, "Scout of the Year", "Good Scouts", "Scout Days", etc.).

- Joint Recognition Banquets (*e.g.*, recognizing Eagle Scouts and Gold Award at the same event).

- Activities where BSA representatives perform tasks for the benefit of GSUSA members.

- In-school programs.

Courts have rejected similar RFPs in trademark cases seeking "all" documents concerning or mentioning a trademark because such RFPs, without further narrowing, are overbroad. *See, e.g., Lights Out Holdings, LLC v. Nike, Inc.*, 2015 WL 11254687, at *2 (S.D. Cal. May 28, 2015) (rejecting RFP seeking "all documents and communications that refer to Nike, including but not limited to any letters, memoranda, emails, or other correspondence in which a third party refers to Nike" because it is "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence"); *Xenos, Inc. v. Tilly's, Inc.*, 2014 WL 2682345, at *1 (D. Neb. June 12, 2014) (rejecting RFP seeking "all communications, memos, reports or other documents concerning use of the name 'Tilly's', or any derivative, in the Omaha, Nebraska market" as "overbroad").

Complying with GSUSA's demand would impose an undue burden:  The overbreadth and undue burden of forcing the BSA to search for "all" documents that mention the Girl Scouts' marks or name in the past three years is confirmed by the BSA's own investigation to date.  For example, of the documents the BSA has already collected, a search for the Girl Scouts' marks, including "Girl Scouts," "GSUSA" and similar variations, hits on nearly 50,000 documents dated on or after January 1, 2016.  Based upon an "average" document length of eight pages (which is the average length of the documents the BSA has produced to date), this amounts to about 400,000 pages of documents that would have to be reviewed.  And of course, given the pending litigation and other matters, numerous of these documents would be privileged.  Assuming a document review rate of 55 documents per hour, eight hours a day (*i.e.*, about 3,520 pages a day), five days a week, until finished, it would take more than *five and a half months* to review the documents in response to this single RFP alone.  *See* Exh. 3 (Declaration of Sara Jenkins), ¶ 5.  In short, GSUSA's request for any documents mentioning the GS Marks dated after January 1, 2016 is a fishing expedition and would enormously burden the BSA with little, if any, benefit to GSUSA.  Any such documents that would be potentially relevant to this case will already be captured by the documents referencing the GS Marks that were, or will be, produced in connection with RFP Nos. 2, 14, 15, 16, 21, 22, 31, 32, 45, 46, 56, 58, and 59.

The BSA agreed to produce documents in response to more targeted RFPs:  The GSUSA argues that "there is no basis for BSA's refusal to produce any documents mentioning GSUSA's trademarks dated after January 1, 2016."  However, the BSA is *not* refusing to produce "any" such documents.  In fact, there are at least *12* other RFPs for which the BSA agreed to produce documents that mention GSUSA, Girl Scouts, or the Girl Scouts' asserted trademarks, plus some other relevant, more specific terms or issues, and are already thus subsumed in RFP No. 14:

- Documents where any person comments upon any association between **GSUSA or the Asserted GS Marks** and the BSA or its Marks (RFPs No. 2).

- Documents regarding the BSA's instructions and/or guidance not to use the **Asserted GS Marks** in connection with the BSA's services for girls, since 2016 (RFP Nos. 15 & 16).

- BSA press releases since January 1, 2016 **referring to GSUSA or the Asserted GS Marks** (RFP Nos. 16 & 22).

The Honorable Alvin K. Hellerstein
May 24, 2019
Page 24

- Documents comparing the services for girls offered by the BSA under its Marks and services for girls offered by **GSUSA under the Asserted GS Marks**, since 2016 (RFP No. 21).

- Published BSA brand guidelines referring to **GSUSA and/or the Asserted GS Marks** (RFP No. 22)

- Communications inquiring about or commenting upon any association between **GSUSA or its Asserted GS** and the BSA or its Marks, since 2016 (RFP No. 31).

- Communications concerning actual confusion between the BSA or its Marks when used in connection with services for girls, and **GSUSA or the Asserted GS Marks**, since 2016 (RFP No. 32).

- Documents reflecting **any use by GSUSA** as a trademark of the words "Scout," "Scouts," or "Scouting," unaccompanied by a distinguishing preceding distinguishing term, since 2009 (RFP No. 45).

- Documents demonstrating trademark enforcement efforts undertaken by the BSA relating to particular Marks, **in which GSUSA was involved** as a co-party or otherwise assisted since 1999 (RFP No. 46).

- Documents concerning **local GSUSA representatives** requesting, approving and/or condoning specific materials referenced the BSA's Answer (RFP No. 56).

- Communications between the BSA and the third-party agency referenced in the BSA's Answer regarding the keywords **GIRL SCOUT, GIRL SCOUTS or GIRL SCOUTING, made in response to letters from GSUSA** addressing the same subject (RFP No. 58).

- Documents sufficient to show that **GSUSA** has made various efforts to draw associations between itself and the BSA (RFP No. 59).

*See* Exhs. 5 and 6 (the BSA's operative responses to GSUSA's first and second sets of document requests, respectively). In response to these RFPs, the BSA has already produced over 7,000 pages of documents mentioning GSUSA's marks, including "Girl Scouts" and "GSUSA," with more to come as the BSA's rolling production continues. *See* Exh. 3 (Declaration of Sara Jenkins), ¶ 6. GSUSA provides no credible explanation as to why additional documents mentioning GS Marks (but having no relevance to this litigation) need be produced.[21]

---

[21]  GSUSA's only response is that such documents purportedly are relevant to the sixth *Polaroid* factor of a defendant's good or bad faith. But a bare reference to a party's mark has no such

The Honorable Alvin K. Hellerstein
May 24, 2019
Page 34

Respectfully Submitted,                        Respectfully Submitted,


DORSEY & WHITNEY LLP                   QUINN EMANUEL URQUHART &
                                                                SULLIVAN, LLP

By: S/: *Bruce R. Ewing*                         By:  S/:  *Rachel Kassabian*
       Bruce R. Ewing (BE-0724)                    Rachel Kassabian (*pro hac vice*)
       Fara S. Sunderji (FS-1208)                  555 Twin Dolphin Drive 5th Floor
       51 West 52nd Street                         Redwood Shores, CA 94065
       New York, New York 10019                    (650) 801-5005
       (212) 415-9200
                                                   Todd Anten
       *Attorneys for Plaintiff*                   Jessica A. Rose
       *Girl Scouts of the United States of*       51 Madison Avenue, 22nd Floor
       *America*                                   New York, NY 10010
                                                   (212) 849-7000


                                                   *Attorneys for Defendant*
                                                   *Boy Scouts of America*

---

first document requests were served – to "substantially complete" its production, is a
contradiction that cannot be reconciled.

# Exhibit G

# EXHIBIT 3

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

</div>

| | |
|---|---|
| GIRL SCOUTS OF THE UNITED STATES OF AMERICA, | Case No. 1:18-cv-10287 (AKH) |
| Plaintiff, | |
| v. | |
| BOY SCOUTS OF AMERICA, | |
| Defendant. | |

<div align="center">

**DECLARATION OF SARA E. JENKINS IN SUPPORT OF THE BOY SCOUTS OF AMERICA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

</div>

I, Sara E. Jenkins, declare as follows:

1.      I am a member of the bar of the state of California and Of Counsel at Quinn Emanuel Urquhart & Sullivan, LLP, attorneys of record for Defendant, the Boy Scouts of America ("BSA").  I submit this declaration in support of the BSA's Opposition to the Plaintiff's Motion to Compel.  I have personal knowledge of the facts set forth herein, and if called upon to do so by the Court, I could and would testify competently thereto.

2.      I am familiar with the BSA's document collection, review, and production of documents for this matter.

**The BSA's Productions to Date**

3.      The BSA began collecting documents in December 2018, and has been searching and reviewing documents for production since receiving Girl Scouts of the United States of America's ("GSUSA") first set of document requests.  The BSA's first production went out on March 15, 2019, and the BSA has made an additional three productions since then.  To date the

<div align="center">1</div>

BSA has produced more than 32,000 pages. By comparison, as of the time of the writing of this declaration, the GSUSA has produced 11,708 pages.

**RFP 14: Documents Mentioning the Girl Scouts Marks**

4. In its letter brief, GSUSA seeks an order compelling the BSA to produce "any documents mentioning the GS Marks dated after January 1, 2016" in response to its Request for Production No. 14. In its requests for production, GSUSA defines GS Marks to include "the registered marks identified in Paragraph 27 of the Complaint," as well as the common law rights in "all variations of GIRL SCOUTS that GSUSA has used in connection with girls leadership development services and related products or services, as well as any related logos, symbols and other designations of source."

5. A search of the database containing the BSA's document collection to date for plural or singular iterations of the GS Marks (including "Girl Scout" or "GSUSA"), with a date restriction of January 1, 2016 onward, retrieves 49,938 documents. We estimate that the documents that the BSA has produced to date have averaged eight pages per document. Based upon the pace of document review thus far, I estimate it would take approximately 908 hours of attorney review time, which equates to more than five and a half months' worth of full-time document review for a BSA attorney, based on an average review pace of approximately 55 documents per hour, for eight hours a day, five days a week.

6. In response to numerous other GSUSA document requests, including RFPs 2, 14, 15, 16, 21, 22, 31, 32, 45, 46, 56, 58, and 59, the BSA has already agreed to produce documents that include or reference to the GS Marks. To date, the BSA has produced over 7,000 pages from documents that contain reference to the GS Marks, including "GSUSA" or "Girl Scout," and that also have some other independent relevance.

**RFP No. 15:  Additional Communications**

7.      In addition to the approximately 7,000 pages referencing the GS Marks as referenced in paragraph 6, above, the BSA has also produced 1,498 pages representing the communications between the BSA and its marketing agencies, FleishmanHillard and/or Johnson & Sekin, that reference the "Scout Me In" advertising campaign at issue in this case.

**RFP Nos. 36 and 38:  Complaints Submitted to BSA**

8.      In its motion, with respect to Document Request No. 36, GSUSA now requests that the Court order the BSA to produce "[a]ll non-privileged documents dated since January 1, 2016 concerning complaints made by any person concerning the quality of services offered by BSA under the SCOUTS BSA Marks to girls that concerned: (i) the physical and emotional health of children participating in or that have participated in the programs offered or sponsored by BSA; and (ii) the inclusion or exclusion of certain consumers on the basis of religion, gender, sexual orientation, gender identity, or otherwise."

9.      As explained in the declaration of Teresa Condon, when the BSA receives phone calls or emails through the contact information it publicizes on its website, the BSA opens a ticket for each incoming communication and keeps track of those tickets in a database.  We have identified the relevant universe of tickets to be searched concerning the subjects identified by GSUSA, and there are approximately 12,400 of them for the period of January 1, 2016 to the present.  We would attempt to use automated search processes to reduce the number of tickets that need to be manually reviewed, but anticipate that we would still need to manually review approximately 8,100 of those tickets.  Based on an estimated review pace of 70 tickets per hour, reviewing eight hours a day, five days a week, we estimate that it would take 116 hours of attorney review time to complete the manual review of these tickets, which equates to almost

three weeks of full-time attorney review time.  Additionally, some of these tickets include personal identifying information or other private information that would need to be redacted before production, such as home addresses, dates of birth, and personal medical information.

10.     In its motion, with respect to Document Request No. 38, GSUSA now requests the Court to order the BSA to produce "[a]ll non-privileged documents dated since January 1, 2012 reflecting concerns voiced or complaints raised by consumers, whether directly to BSA, to media organizations, in legal proceedings or otherwise, concerning the quality of BSA programs offered by BSA or via its affiliated councils, troops and leaders with respect to (i) the physical and emotional health of children participating in or that have participated in the programs offered or sponsored by BSA; and (ii) the inclusion or exclusion of certain consumers on the basis of religion, gender, sexual orientation, gender identity, or otherwise."

11.     We have identified the relevant universe of tickets to be searched concerning the subjects identified by GSUSA, and there are approximately 90,000 of them for the period of January 1, 2012 to the present.  We would attempt to use automated search processes to reduce the number of tickets that need to be manually reviewed, but anticipate that we would still need to manually review roughly 45,800 of those tickets.  Based on an estimated review pace of 70 tickets per hour, reviewing eight hours a day, five days a week, we estimate that it would take approximately 654 hours of attorney review time to complete the manual review of these tickets, which equates to approximately four months of full-time attorney review time.  Again, for the reasons noted above, some of these would require redaction before production.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 23, 2019, in Redwood Shores, California.

_____
Sara E. Jenkins

# Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                    :

Girl Scouts of the United States of America,    :

                           Plaintiff,   :

                                   :

          -against-                      :

                                   :

Boy Scouts of America,                    :

                                   :

                      Defendant.    :

                                   :
-------------------------------------------------------- X

> **USDC SDNY**
> **DOCUMENT**
> **ELECTRONICALLY FILED**
> **DOC #:** _____
> **DATE FILED:** 6/6/2019

**ORDER ON DISOVERY**

18 Civ. 10287 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

         The Girl Scouts of the United States of America ("GSUSA") and Boy Scouts of America ("BSA"), by joint letter, submit for resolution various discovery issues. The Court's rulings on these issues follow:

     1.   <u>Time Period to Complete Document Production in Response to Parties' First Set of Discovery Requests</u>

         Parties shall complete all of their document production in response to their first sets of discovery requests by June 28, 2019.

     2.   <u>BSA's Declaration of Withheld Production and the Basis for Any Withholding</u>

         To the extent that GSUSA has not met and conferred with BSA on the scope and basis of any withheld production, its request is denied as premature.

3. <u>GSUSA Document Request No. 36: Quality of Services</u>

    BSA's offered production on this request is sufficient.

4. <u>GSUSA Document Request No. 37: Public Perception Documents</u>

    The scope BSA's offered production on this request is sufficient.

5. <u>GUSA Document Request No. 38: Consumer Complaints About Programs</u>

    BSA's offered production on this request, co-extensive with its production in response to RFP 36, is sufficient.

6. <u>GSUSA Document Request No. 40: Efforts to Improve Public Perceptions</u>

    BSA's offered production on this request is sufficient.

7. <u>GSUSA Interrogatory No. 15: People Knowledgeable About Complaints</u>

    To the extent that BSA's amended response is insufficient, the GSUSA's request is denied as premature, since the parties have not yet met and conferred on the issue.

8. <u>GUSA's Document Request No. 14: "Any" Documents Mentioning Girl Scout Marks After January 1, 2016</u>

    GSUSA's Document Request No. 14 subpart (iv) is denied as disproportionate and unduly burdensome. BSA's production relating to other requests is sufficiently responsive.

2

9. GSUSA Document Request No. 27: Product Packaging

     BSA's offered production on this request is sufficient.


10. BSA Request No. 40

     GSUSA shall produce responsive documents that can be located with reasonable diligence, existing as of January 1, 2011 to the present.


11. BSA Requests for Reciprocity

     With respect to various requests for reciprocity, the Court observes that, to the extent requests are relevant to one party, the same or similar request may be relevant to the other. Nevertheless, because the BSA has not formally made these requests, any assessment of them is premature.


     The Clerk is instructed to terminate the motion (ECF 36).


SO ORDERED.

Dated:     June 6, 2019
          New York, New York

                                  ALVIN K. HELLERSTEIN
                                  United States District Judge

# Exhibit I

February 10, 2020

**BY ECF**
The Honorable Alvin K. Hellerstein
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007-1312



**Re:**   ***Girl Scouts of the United States of America v. Boy Scouts of America*, No. 18-cv-10287**

Dear Judge Hellerstein:

Pursuant to Your Honor's request at last Friday's Case Management Conference, the parties hereby jointly submit the further case schedule as agreed upon and ordered by the Court.

| Date | Event |
|---|---|
| March 18, 2020 | Deadline for service of opening expert reports on any non-survey subjects, for party bearing the burden of proof. |
| April 16, 2020 | Deadline for service of opposition expert survey reports. |
| April 21, 2020 | Deadline for service of opposition expert reports on any non-survey subjects. |
| May 15, 2020 | Deadline to complete expert depositions. |
| June 19, 2020 (10:00 a.m.) | Case Management Conference. |

Respectfully Submitted,

DORSEY & WHITNEY LLP


By: */s/: Bruce R. Ewing*
    Bruce R. Ewing (BE-0724)
    Fara S. Sunderji (FS-1208)
    Jonathan Montcalm (JM-8866)
    51 West 52nd Street
    New York, New York 10019
    (212) 415-9200


*Attorneys for Plaintiff*
*Girl Scouts of the United States of*
*America*

Respectfully Submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: */s/: Rachel Kassabian*
    Rachel Kassabian (*pro hac vice*)
    Margret Caruso (*pro hac vice*)
    555 Twin Dolphin Drive 5th Floor
    Redwood Shores, CA 94065
    (650) 801-5005

    Todd Anten
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    (212) 849-7000


*Attorneys for Defendant*
*Boy Scouts of America*