# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) Jointly Administered |
| Debtors. | Objection Deadline: April 8, 2020 at 10:00 a.m. Hearing Date: April 15, 2020 at 10:00 a.m. |

**PEARSON EDUCATION, INC.'S (A) LIMITED OBJECTION TO DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO REJECT PROFESSIONAL SERVICES AGREEMENT WITH PEARSON EDUCATION, INC. AND (II) GRANTING RELATED RELIEF AND (B) CROSS-MOTION FOR AN ORDER GRANTING AN ADMINISTRATIVE CLAIM FOR POST-PETITION SERVICES PROVIDED**

Pearson Education, Inc. ("Pearson") hereby submits this (A) Limited Objection to Debtors' Motion for Entry of an Order (I) Authorizing the Debtors' to Reject Professional Services Agreement with Pearson and (II) Granting Related Relief [Docket No. 318]("Motion") and (B) Cross-Motion for an Order Granting an Administrative Claim for Post-Petition Services Provided ("Cross-Motion") along with the Declaration of John Tweeddale in Support of the Limited Objection and Cross-Motion dated April 6, 2020 ("Tweeddale Decl.") for the entry of an order granting Pearson an administrative claim for and immediate payment of post-petition services provided under the Agreement[1], and in support of the Limited Objection and Cross-Motion, Pearson states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Cross-Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms not expressly defined herein have the meaning ascribed to them in the Motion.

## BACKGROUND

3. On February 18, 2020 ("Petition Date"), the above-captioned debtors (collectively, the "Debtors" or "BSA") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") initiating the above-captioned jointly administered cases (collectively, the "Case").

4. BSA was incorporated in the District of Columbia in 1910 and chartered by Congress in 1916 as a non-profit corporation under Title 36 of the United States Code as a non-profit corporation.[2] "The BSA trains young men and women in responsible citizenship, character development, and self-reliance through participation in a wide range of outdoor activities, educational programs, and, at older ages, career-oriented programs in partnership with community organizations." Whitman Decl. ¶ 12.

5. "Another core function of the BSA is to provide services that are critical to the delivery of high-quality Scouting opportunities. These services include, among other things, providing core program content; maintaining information technology and digital resources; training adult professional and volunteer "Scouters" to serve in Local Councils; and coordinating Scouting communications and publishing magazines and other periodicals for Scouts, their families, adult leaders and alumni . . ." Whitman Decl., ¶ 14.

6. The national headquarters of the BSA is located in Irving, Texas. The BSA employs approximately 1,650 individuals, all located at its headquarters. Whitman Decl., ¶ 15.

### The Agreement

7. On or about September 1, 2016, Pearson and BSA entered into the Agreement pursuant to which Pearson undertakes, at BSA's direction, most of BSA's editorial and creative

---

[2] Declaration of Brian Whitman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings dated February 18, 2020 [Docket No. 16] ("Whitman Decl.")

services, maintains certain of its technology platforms, and performs additional projects requested by BSA (collectively, the "Services"). Tweeddale Decl., ¶ 4.

8.  Pearson provides the Services by maintaining a staff of fifteen Pearson employees on site at BSA headquarters, who are now working remotely due to the coronavirus pandemic. Tweeddale Decl., ¶ 5.

9.  Among the Services Pearson is providing to BSA since the Petition Date are the following projects undertaken at the direction of BSA: updating and maintaining BSA documentation, creating and maintaining health and safety posters for camp, updating the content of program handbooks, volunteer handbooks, and scout leader materials. A detailed list of post-petition projects and Services performed is attached to the Tweeddale Decl. as Exhibit B. Tweeddale Decl., ¶ 6.

10. In exchange for the Services, the Agreement requires BSA to pay Pearson equal monthly installments of $432,294 plus expenses and other amounts which may become due under the Agreement, in advance, at the start of each month. Tweeddale Decl., ¶ 7.

11. BSA owes Pearson pre-petition arrears of $685,707.72 ($432,294.00 for January 2020 Services, plus $253,413.72 for February 2020 Services through the Petition Date) ("Pre-Petition Debt"). BSA also owes Pearson post-petition arrears of $432,294.00 for April 2020 Services (the "Post-Petition Debt", and collectively with the Pre-Petition Debt, the "BSA Debt"). Copies of the invoices evidencing the BSA Debt are attached to the Tweeddale Decl. as Exhibit C ("Invoices"). Tweeddale Decl., ¶ 8.

12. On the Petition Date, BSA filed its motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims of Essential Vendors, Foreign Vendors,

Shippers and Warehousemen, Lien Claimants, and 503(b)(9) Vendors, and (II) Granting Related Relief [Docket No. 7] (the "Vendor Motion").

13. In the Vendor Motion, the Debtors sought critical vendor status for

> "essential printing suppliers [like Pearson,] that have the knowhow to produce the BSA's specialized printed materials - including handbooks and merit badge pamphlets - that are at the very core of Scouting. Each of these items is manufactured by one of BSA's over 10,000 vendors and is sold exclusively by the BSA to Local Councils and individuals through its Scout Shops, online Scout Shop, and Trading Posts. Local Councils and individual Scouts expect and need the BSA to provide these unique items, and even a brief interruption in the flow of the Debtors' merchandise and supplies from the Essential Vendors could cause a severe negative impact on the scouting experience for the BSA's members. . . . [I]dentifying and switching to alternative suppliers for each of the vendors the Debtors have deemed Essential Vendors - many of whom the organization has relied upon for years - would be time-consuming, cost prohibitive, and, in some cases, impossible."

14. In the Motion, BSA seeks to reject the Agreement as of April 17, 2020, but fails to address payment of the Post-Petition Debt. Pearson continues to provide the Services and complete all of the pending, open projects, as requested by BSA. A copy of an e-mail from Patrick Sterrett advising Pearson to continue performing under the Agreement is attached to the Tweeddale Decl. as Exhibit D. Moreover, Pearson never consented to rejection of the Agreement, it merely accepted BSA's decision to reject the Agreement, as is BSA's right as a debtor in bankruptcy, subject to Bankruptcy Court approval. Tweeddale Decl., ¶ 10.

15. Pearson files this Limited Objection and Cross-Motion to make it abundantly clear it did not consent to the rejection of the Agreement and to obtain an order requiring the Debtors to pay Pearson for the post-petition Services provided, which Services the Debtors admit are critical to the Debtors, BSA's mission, and thus the estates.

**RELIEF REQUESTED**

16.  Pearson respectfully requests that the Court exercise its authority under Bankruptcy Code Section 503(b) and enter an order granting Pearson's Cross-Motion, compelling the Debtors to immediately pay to Pearson the Post-Petition Debt due for Services provided prior to the rejection of the Agreement, and provide in any order approving the Motion, that the relief was granted over Pearson's objection and not on consent.

**LEGAL ARGUMENT**

**The Debtor Should Pay for the Post-Petition Services as Actual and Necessary Costs and Expenses of Preserving the Estate**

17.  Section 503(b) of the Bankruptcy Code provides that:

> "After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under § 502(f) of this title, including
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate."

11 U.S.C. § 503(b).

18.  Pursuant to § 503(b), Pearson's Post-Petition Debt should be an allowed administrative expense entitled to immediate payment in full.

19.  With respect to the Post-Petition Debt, in *Reading*, the Supreme Court stated that the "actual and necessary costs of preserving the estate should include costs ordinarily incident to the operation of a business." *Reading Co. v. Brown*, 391 U.S. 471 (1968). Pearson continues to provide Services to the Debtors post-petition, at Debtors request, to assist the Debtors' attempts to operate in the ordinary course of its business and reorganize.

20.  Unlike most pre-petition claims, post-petition claims are entitled to payment in the ordinary course of business, which here are the contractual terms, which between these parties, is

in advance, each month. As Pearson has not been paid for post-petition April 2020 Services, it files this Cross-Motion to compel payment of the past due Post-Petition Debt.

**Pearson Does Not Consent to the Rejection of the Agreement**

21. At footnote 3 of the Motion the Debtors incorrectly allege that "BSA and Pearson have agreed to wind-down the Services as of the Rejection Date." The Debtors confuse Pearson's acknowledgement of BSA's rights under the Bankruptcy Code with Pearson's agreement or consent. The early, unanticipated work stoppage under the Agreement will result in Pearson having to terminate fifteen employees in this incredibly challenging time, pay severance to those employees, and lose material profits.

22. Pearson clearly does not consent or agree to the rejection of the Agreement.

**No Prior Motion**

23. Pearson has not made any prior motion or application for the relief requested herein to this Court or to any other Court and expressly reserves its rights to seek such other relief as it deems appropriate.

**Notice**

24. Notice of this Limited Objection and Cross-Motion is being served upon (i) the United States Trustee, (ii) counsel to the Official Committee of Unsecured Creditors, (iii) the Debtors, (iv) Debtors' counsel, and (v) any other parties requesting service in this Case.

WHEREFORE, Pearson respectfully requests that this Court enter an order: (i) providing that any order entered granting the Motion provide that it was over Pearson's objection and not consented to, (ii) granting Pearson's Cross-Motion directing the Debtors to immediately pay

Pearson the Post-Petition Debt, and (iii) granting such other and further relief as this Court deems appropriate.

| | |
|---|---|
| Dated: April 6, 2020 | MORRIS JAMES LLP |
| | |
| | */s/ Jeffrey R. Waxman* |
| | Jeffrey R. Waxman (Bar No. 4159) |
| | 500 Delaware Avenue, Suite 1500 |
| | Wilmington, Delaware 19801-1494 |
| | Telephone: (302) 888-6800 |
| | Fax: (302) 571-1750 |
| | |
| | - and - |
| | |
| | PHILLIPS LYTLE LLP |
| | Angela Z. Miller |
| | One Canalside |
| | 125 Main Street |
| | Buffalo, New York 14203 |
| | Telephone: (716) 847-8400 |
| | Fax: (716) 852-6100 |
| | |
| | *Counsel for Pearson Education, Inc.* |