# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 5** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363;
(II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTY PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362,
363, 503 AND 507; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") for entry of a final order (this "Final Order"), pursuant to sections 105(a), 361, 362, 363, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1:

    (a)    authorizing the Debtors to continue to use Cash Collateral and all other Prepetition Collateral (each as defined below) in which any of the Prepetition Secured Parties (as defined below) have an interest in accordance with the terms and conditions of this Final Order, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

    (b)    authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties to the extent of any diminution in value of their interest in the Prepetition

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Collateral, including Cash Collateral (each as defined below), under or in connection with the Prepetition Secured Agreements (as defined below);

(c)     subject to certain challenge rights of certain parties in interest (subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to (i) the Prepetition Secured Agreements; (ii) the Loan Documents (as defined in the Credit Agreements); (iii) the Bond Documents (as defined in the Bond Agreements); and (iv) the liens and security interests arising therefrom ((i)-(iv) are collectively defined as the "Prepetition Loan Documents");

(d)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(e)     to the extent set forth herein, waiving the Debtors' right to assert with respect to the Prepetition Collateral or the Adequate Protection Collateral (as defined below) (i) any claims to surcharge pursuant to section 506(c) of the Bankruptcy Code, (ii) any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code, and (iii) the equitable doctrine of "marshalling" or any similar doctrine;

(f)     authorizing the Debtors to (i) maintain and extend existing letters of credit under the 2019 RCF Agreement and 2010 RCF Agreement (each as defined below), and (ii) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit; *provided*, *that*, for the avoidance of doubt, no such new letters of credit shall be issued under the 2019 RCF Agreement or the 2010 RCF Agreement;

(g)     waiving any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(h)     granting related relief;

and this Court having jurisdiction over the Debtors' Chapter 11 Cases (defined below), the

Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning

of 28 U.S.C. § 157(b)(2); and the Debtors consent to the entry of a final order by this Court

under Article III of the United States Constitution; and venue of this proceeding and the Motion

in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found

that, under the circumstances of these Chapter 11 Cases, proper, timely, adequate and sufficient

2

notice of the Motion, the Final Order, and the hearing to consider entry of the Final Order (the "<u>Final Hearing</u>") has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion, the Final Hearing, or this Final Order shall be required; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Final Hearing; and all objections, if any, to the Motion having been withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A.    <u>Disposition</u>.  The relief requested in the Motion is granted on a final basis in accordance with the terms of, and to the extent set forth in, this Final Order.  Any and all objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein.  This Final Order shall become effective immediately upon its entry.

B.    <u>Petition Date</u>.  On February 18, 2020, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court commencing these chapter 11 cases (the "<u>Chapter 11 Cases</u>").  On February 19, 2020, this Court entered an order approving the joint administration of these Chapter 11 Cases.  The Debtors are continuing to operate their business and manage their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On March 5, 2020, the United States Trustee appointed two

3

official committees in the Chapter 11 Cases: the Official Committee of Unsecured Creditors [D.I. 141] (the "Creditors' Committee"), and the Tort Claimants' Committee, consisting of survivors of childhood sexual abuse [D.I. 142] (the "Tort Committee"). On March 17, 2020, the Debtors filed a motion to approve the appointment of a Future Claimants' Representative ("FCR") [D.I. 213]. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.    Interim Order.    On February 20, 2020, the Court entered the *Interim Order (i) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (ii) Granting Adequate Protection to the Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503 And 507; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b); and (iv) Granting Related Relief* [D.I. 90] (the "Interim Order").

D.    Debtors' Stipulations.    In requesting use of their Cash Collateral and the other Prepetition Collateral, and in exchange for and as a material inducement to the Prepetition Secured Parties agreement to permit consensual use of use of their Cash Collateral and the other Prepetition Collateral, the Debtors acknowledge, represent, stipulate, reconfirm, and agree, subject only to the challenge rights set forth in Paragraph 19 below (but subject to the limitations thereon contained herein), as follows (Paragraphs D(i) through D(xvii) are collectively defined as the "Debtors' Stipulations"):

(i)    on August 11, 2010, Boy Scouts of America ("BSA") entered into that certain *Credit Agreement* (as amended, supplemented or otherwise modified as of the Petition Date, and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "2010 RCF Agreement"), pursuant to which JPMorgan Chase Bank, National Association ("JPM"), as lender, made term loans to BSA

in an aggregate amount of $25,000,000 and agreed to make revolving loans to BSA and issue letters of credit on behalf of BSA in an aggregate amount of up to $75,000,000;

(ii)    on November 5, 2010, BSA and non-debtor Arrow WV, Inc. ("Arrow") entered into that certain *Bond Purchase and Loan Agreement* with The County Commission of Fayette County, West Virginia (the "Issuer") and JPM (as amended, supplemented or otherwise modified as of the Petition Date, the "2010 Bond Agreement") pursuant to which the Issuer issued The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2010A in an aggregate principal amount of $50,000,000 and Series 2010B in an aggregate principal amount of $50,000,000 (collectively, the "2010 Bonds"), the proceeds of which were loaned to BSA.  The loans from the Issuer to BSA were evidenced by that certain Promissory Note - 2010A executed by BSA and payable to the order of the Issuer in the original principal amount of $50,000,000 and that certain Promissory Note - 2010B executed by BSA and payable to the order of the Issuer in the original principal amount of $50,000,000, which notes were pledged by the Issuer to secure the repayment of the 2010 Bonds. The Series 2010A Bonds and 2010A Note were paid off on November 5, 2015;

(iii)    on March 9, 2012, BSA and Arrow entered into that certain *Bond Purchase and Loan Agreement* with the Issuer and JPM (as amended, supplemented or otherwise modified as of the Petition Date, the "2012 Bond Agreement", and together with the 2010 Bond Agreement, the "Bond Agreements") pursuant to which the Issuer issued The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2012 in an aggregate principal amount not to exceed $175,000,000 (the "2012 Bonds", and together with the 2010 Bonds, the "Bonds"), the proceeds of which were

5

loaned to BSA. The loans from the Issuer to BSA are evidenced by that certain Promissory Note - 2012 executed by BSA and payable to the order of the Issuer in the original principal amount of $175,000,000, which note was pledged by the Issuer to secure the repayment of the Bonds;

(iv)     on March 21, 2019, BSA entered into that certain *Credit Agreement* (as amended, supplemented or otherwise modified as of the Petition Date, and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, the "2019 RCF Agreement", and collectively with the 2010 RCF Agreement, the "Credit Agreements"),[3] pursuant to which JPM, as lender, agreed to make revolving loans to BSA and issue letters of credit on behalf of BSA in an aggregate amount of up to $71,500,000;[4]

(v)     as of the Petition Date, the Debtors were liable to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents for (a) the aggregate principal amount not less than (1) $61,542,720 in respect of letters of credit issued on behalf of BSA under the 2019 RCF Agreement, if such letters of credit are ultimately drawn; (2) $11,250,000 in respect of term loans made to BSA, $25,212,317 in respect of revolving loans made to BSA, and $44,299,743 in respect of letters of credit issued on behalf of BSA under the 2010 RCF Agreement, if such letters of credit are ultimately drawn; (3) $40,137,274 under the 2010 Bond Agreement; and (4) $145,662,101 under the 2012 Bond Agreement; and (b) accrued and unpaid interest, fees, expenses (including advisors fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Loan Documents), disbursements, charges, claims,

---

[3] The Bond Agreements and the Credit Agreements are collectively referred to as the "Prepetition Secured Agreements".

[4] JPM, in its capacity as lender under the Credit Agreements and holder of the Bonds issued under the Bond Documents, is collectively referred to as the "Prepetition Secured Lender".

indemnities and other costs and obligations of whatever nature incurred in connection therewith which are chargeable or otherwise reimbursable under the Prepetition Loan Documents or applicable law, whether arising before or after the Petition Date, including any "Obligations" (as defined in each respective Prepetition Loan Documents), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition Loan Documents ((a) through (b) are collectively defined as the "Prepetition Obligations");

(vi)    all of the Prepetition Obligations constitute the legal, valid, properly authorized, binding and unconditional obligations of the Debtors to the Prepetition Secured Parties, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(vii)    no portion of the Prepetition Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, avoidance, reduction, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, reduction, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any kind or nature under the Bankruptcy Code or any other applicable law or regulation or otherwise and the Debtors do not possess, and shall not assert, any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect the validity, enforceability and non-avoidability of any Prepetition Obligations;

(viii)    pursuant to and in connection with the Prepetition Loan Documents, each Debtor granted to JPM, in its capacity as collateral agent (the "Prepetition Agent", and collectively with the Prepetition Secured Lender, the "Prepetition Secured Parties"), for the benefit of the Prepetition Secured Parties, continuing, legal, valid, binding, properly authorized and perfected, enforceable, non-avoidable first priority liens on and security interests in (the "Prepetition Liens") all of the "Collateral" (as defined in each respective Prepetition Loan Document) (the "Prepetition Collateral"),[5] which Prepetition Liens (a) secure all of the Prepetition Obligations; (b) are not subject to any contest, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise) (except as expressly set forth in subclause (c) below), recovery, reduction, attachment, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, cross-claim, set-off, offset, challenge, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any nature under the Bankruptcy Code or any other applicable law or regulation or otherwise; and (c) are and remain senior in priority over any and all other liens on and security interests in the Prepetition Collateral, subject only to valid, perfected and unavoidable liens on or security interests in the Prepetition Collateral that are senior to or *pari passu* with the Prepetition Liens (a "Permitted Encumbrance");

---

[5] For the avoidance of doubt, the definition of "Prepetition Collateral" shall specifically exclude all (a) amounts payable in connection with any agreement by a donor, grantor or other Person to donate or otherwise contribute funds to a Debtor if the use of such funds to be donated is restricted by such Person or applicable state law to a purpose other than the Project, except to the extent determined by a final order of the Court, or a court of competent jurisdiction, to not be subject to such restriction (the "Restricted Amounts"), and (b) Excluded Property. As used in this footnote, Person, Debtor, Project and Excluded Property have the same meaning ascribed to them in that certain Third Amended and Restated Security Agreement, dated as of March 21, 2019 (the "Security Agreement"), by and among BSA and Arrow, as debtors, JPM, in its capacity as collateral agent, JPM, in its capacity as the lender under the Credit Agreements, and as holder under the Bond Agreements.

(ix)    the Prepetition Secured Parties duly perfected the Prepetition Liens in the Prepetition Collateral by, among other things, filing financing statements, and, where necessary, possessing the relevant instruments, certificates, or other property;

(x)    [reserved];

(xi)    as of the Petition Date, other than as expressly permitted under the Prepetition Loan Documents, there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens;

(xii)    the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral, and to assert any offsets, set-offs, recoupments, defenses, claims, objections, challenges of any kind, causes of action and/or choses of action against the Prepetition Secured Parties, with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral;

(xiii)    any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, and/or (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors;

(xiv)    all of the Debtors' cash, as of the Petition Date, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below) and is Prepetition Collateral of the Prepetition Secured Parties; *provided*, *however*, the definitions of "Cash Collateral" and "Prepetition Collateral" shall specifically exclude all Restricted Amounts and Excluded Property (as defined in the Security Agreement);

9

(xv)    the Debtors admit, stipulate, acknowledge and agree that the Prepetition Secured Parties may credit bid the full amount of (or any portion of) the Prepetition Obligations;

(xvi)    none of the Prepetition Secured Parties constitutes a control person or insider of the Debtors by virtue of any of the actions taken by any of them in respect of or in connection with (a) making the decision to consent to the use of Cash Collateral; (b) extending other financial accommodations to the Debtors under this Final Order; (c) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (d) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (e) extending other financial accommodations to the Debtors under the Prepetition Loan Documents; and (f) making the decision to collect the indebtedness and obligations of the Debtors, the Prepetition Secured Parties shall not be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law;

(xvii)    none of the Prepetition Collateral is unavailable to satisfy the Prepetition Obligations; and

(xviii)    the Prepetition Secured Parties are entitled, pursuant to sections 361, 362(c)(2), 363(e), 364(d)(l) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date, in exchange for (a) the use of Cash Collateral, (b) the subordination of the Prepetition Obligations to the Carve-Out, and (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.       Cash Collateral.   For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Prepetition Secured Parties have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests granted pursuant to this Final Order), *provided*, *however*, the definition of "Cash Collateral" shall specifically exclude all Restricted Amounts and Excluded Property (as defined in the Security Agreement).   Nothing in this Final Order shall constitute a determination of the Court as to the status or treatment of the Restricted Amounts and all rights of the Prepetition Secured Parties, the Creditors' Committee , the Tort Committee and the FCR are expressly reserved to dispute or otherwise contest whether the Restricted Amounts should be treated as restricted or unrestricted and, if unrestricted, whether such alleged Restricted Amounts constitute collateral of the Prepetition Secured Parties.

F.       Findings Regarding the Prepetition Secured Parties' Consent to Use of the Prepetition Collateral (including Cash Collateral).   The Prepetition Secured Parties have consented to the adequate protection and the subordination of their liens and superpriority claims to the Carve-Out provided for in this Final Order; *provided*, *however*, that the respective consents of the Prepetition Secured Parties to subordinate their liens and superpriority claims to the Carve-Out, the use of the Prepetition Collateral (including Cash Collateral), and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Final Order; *provided*, *further*, that such consents shall be of no further force and effect in the event this Final Order is not entered (or is entered and subsequently vacated).

G.       Necessity of Relief Requested.   The Debtors may have a need to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the

11

orderly continuation of the operation of their organization, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs, in each such case in accordance with the terms of this Final Order, including in accordance with the Budget (as defined below).[6] The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral may be necessary to preserve and maintain the going concern value of the Debtors' estates and is vital to the Debtors' reorganization efforts. Without the use of Cash Collateral, the Debtors may not have sufficient liquidity to continue to operate their organization. Entry of this Final Order will preserve the assets of each Debtor's estate and their value and is in the best interests of the Debtors, their creditors, and their estates. The Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Payments (each as defined below) provided herein are consistent with and authorized by the Bankruptcy Code.

H.      <u>Marshalling and Sections 506(c) and 552(b) Waivers</u>.  To the extent set forth herein, in light of the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, the Prepetition Secured Parties' consent to use of their Cash Collateral, and the Budget covering anticipated administrative costs projected by the Debtors, the Prepetition Secured Parties are entitled to a waiver of (i) any "equities of the case" claims under section 552(b) of the Bankruptcy Code, (ii) the provisions of section 506(c) of the Bankruptcy Code, and (iii) the equitable doctrine of "marshalling" or any similar doctrine.

---

[6] For clarity, all references in the Final Order to the Budget shall refer to the Budget subject to any applicable Permitted Variance (as defined herein).

I.      <u>Exercise of Debtors' Business Judgment</u>.   Based on the Motion, the First Day Declaration, and the record presented to the Court at the Final Hearing, the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

J.      <u>Bankruptcy Rules 4001(b)(2) and 4001(c)(2)</u>.   Good cause has been shown for entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  Entry of this Final Order and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Final Order are in the best interests of the Debtors, their estates and their creditors.  The terms of this Final Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with fiduciary duties and are supported by reasonably equivalent value and fair consideration.

Based on the foregoing, the Motion, the First Day Declaration, and the record made before the Court at the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>Motion Granted</u>.   The Motion is GRANTED, and the Debtors' use of Cash Collateral and other Prepetition Collateral on a final basis is authorized, subject to the terms and conditions of this Final Order.

2.      Authorization.

(i)      Any unrestricted funds that are deposited into any Deposit Account or Securities Account (each as defined in Article 9 of the Uniform Commercial Code) of the Debtors on or after the Petition Date (such new funds, the "<u>Postpetition Funds</u>") shall be deemed segregated from any unrestricted funds existing in any of the Debtors' Deposit Accounts or

Securities Accounts as of the Petition Date (such existing funds, the "Prepetition Funds"). The Postpetition Funds shall not be deemed the "Collateral" (as defined in each respective Prepetition Loan Document) of the Prepetition Secured Parties solely by virtue of their being in the possession or control of the Prepetition Secured Parties. The Prepetition Secured Parties, however, reserve all rights to assert that some or all of the Postpetition Funds are "Collateral" of the Prepetition Secured Parties under the Prepetition Loan Documents. The Creditors' Committee, Tort Committee and the FCR reserve all rights to challenge such assertion; and

(ii)     Unrestricted funds used by the Debtors after the Petition Date shall first be deemed to be made out of the Postpetition Funds that are not the Collateral of the Prepetition Secured Parties (the "Unencumbered Postpetition Funds"). If the Debtors use any of the Prepetition Funds or the Postpetition Funds that are the Collateral of the Prepetition Secured Parties, or are subsequently determined to be the Collateral of the Prepetition Secured Parties (the "Encumbered Postpetition Funds"), then the Prepetition Secured Parties shall be entitled to adequate protection, as provided for in Paragraph 5 of this Final Order, to the extent of any diminution in value of the Prepetition Funds or the Encumbered Postpetition Funds. The Creditors' Committee, the Tort Committee and the FCR reserve all rights to challenge any assertion of any diminution in value of the Prepetition Funds or the Encumbered Postpetition Funds or any other claim for any alleged diminution in value.

(iii)     The Debtors are hereby authorized, subject to the terms and conditions of this Final Order and compliance with the Budget (as defined below), to use Cash Collateral to the extent unencumbered funds are unavailable; provided that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms,

14

conditions and limitations of this Final Order, the Debtors shall be prohibited from at any time using the Cash Collateral absent further order of the Court.

3.      Budget.  The Debtors and the Prepetition Secured Parties have agreed to an initial budget attached hereto as **Exhibit 1**, including a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements on a weekly basis (the "Budget"). The Budget includes and contains the Debtors' reasonable estimate of all operational receipts and all operational disbursements, fees, costs, and other expenses that will be payable, incurred, and/or accrued by any of the Debtors during the period covered by the Budget.  The Agent shall have no obligation to permit the use of Cash Collateral, and the Debtors shall have no authority to use Cash Collateral, hereunder other than in accordance with the Budget, subject to the Permitted Variance (as defined below), and as set forth in this Final Order.  The Prepetition Secured Parties (i) may assume the Debtors will comply with the Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Budget, except the Carve-Out as permitted in this Final Order.  For the avoidance of doubt, the Budget shall not serve as a limit or cap on the fees and expenses that may be incurred by any of the estate professionals or prevent the estate professionals from seeking or obtaining payment and reimbursement of its respective professional fees and expenses.

4.      Permitted Variance.  Notwithstanding the Budget, so long as no Event of Default (as defined below) has occurred, the Debtors shall be authorized to use Cash Collateral with respect to the Budget subject to all disbursements other than Allowed Professional Fees (as defined below), a permitted positive variance that would not cause the total operating disbursements of the Debtors (i) for the immediately preceding four (4) weeks (excluding

Allowed Professional Fees) to be greater than one-hundred fifteen percent (115%) of the then-current Budget over the corresponding time period (the "Period Variance") and (ii) for the cumulative period from the date this Final Order is entered through the proceeding Friday to be greater than the Cumulative Dollar Cap (defined below) as compared to the sum of the then-current Budget for each week during the same period, first measured on the first Friday five (5) weeks following the entry of this Final Order, and then every four (4) weeks thereafter (each such variance representing a "Permitted Variance").   For the purposes of this Order, the "Cumulative Dollar Cap" shall be equal to (y) $10.0 million *plus* (z) starting at the 16th week following the Petition Date, an additional $2.5 million added every four (4) weeks.

5.     Adequate Protection of Prepetition Secured Parties.   Pursuant to sections 361, 362, 363(c)(2), 363(e), and 507 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate actual diminution (if any) in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code (such diminution in value, the "Adequate Protection Amount"); *provided that* (a) the Adequate Protection Amount shall be $0 if the Prepetition Obligations are paid in full from the proceeds of the Prepetition Collateral and (b) the avoidance of the Prepetition Secured Parties' interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Secured Parties' interests in Prepetition Collateral.   As adequate protection for the Adequate Protection Amount, and solely to the extent of same, the Prepetition Secured Parties are hereby granted the following:

16

(i)      *Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection for the Adequate Protection Amount, effective as of the Petition Date and perfected without the need for execution by the Debtors or the recordation or other filing by the Prepetition Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition Agent of any Adequate Protection Collateral (as defined below), the Prepetition Agent is hereby granted, for the ratable benefit of the Prepetition Secured Lender, solely to the extent of any actual diminution in value, if any, of the Prepetition Collateral, as security for the payment of the Adequate Protection Amount, valid, binding, continuing, enforceable, fully perfected, first priority senior replacement liens on and security interests in (collectively, the "Adequate Protection Liens") any and all tangible and intangible pre- and post-petition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, goods, investment property, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate Protection Collateral"), *provided*, *that* "Adequate Protection Collateral" shall specifically exclude all Restricted Amounts and Excluded Property (as defined in the Security Agreement), any of the Debtors' prepetition commercial tort claims,

17

and any claims or causes of action of the Debtors arising under sections 502(d), 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (collectively, the "Avoidance Actions"), and any of the proceeds of the foregoing excluded assets.  The Adequate Protection Liens shall be junior only to (a) the Carve-Out (as defined herein), and (b) any Permitted Encumbrance.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.  Subject in all respects to the Carve-Out (as defined herein), the Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code.  The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Debtors' Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case").

(ii)    *Adequate Protection Superpriority Claims*.  The Adequate Protection Amount due to the Prepetition Agent shall constitute allowed superpriority administrative expense claims against the Debtors in the amount of any actual diminution (if any) in value of the Prepetition Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision

18

of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors and any successor trustee or creditor in these Chapter 11 Cases or any Successor Case (the "Adequate Protection Superpriority Claims"), subject and subordinate only to the Carve-Out (as defined herein). Notwithstanding the foregoing, the Adequate Protection Superpriority Claims shall not be payable from Restricted Amounts, Excluded Property, any of the Debtors' prepetition commercial tort claims and the Avoidance Actions and any of the proceeds thereof, and nothing in this Final Order shall alter or modify the requirements set forth in Bankruptcy Code section 1129.

(iii)    *Payment of Prepetition and Postpetition Interest*.  The Debtors shall pay to the Prepetition Agent for the benefit of the Prepetition Secured Lender all accrued and unpaid interest (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) at the non-default rates and consistent with the ordinary course interest payment dates set forth in each respective Prepetition Loan Document (the "Adequate Protection Interest Payments").

(iv)    *Prepetition Agent Fees and Expenses*.  As additional adequate protection, the Prepetition Agent shall receive from the Debtors, for the benefit of the Prepetition Secured Lender, current cash payments of all reasonable and documented prepetition and postpetition fees and expenses payable to the Prepetition Secured Parties under the Prepetition Loan Documents, including, but not limited to, the reasonable and documented prepetition and postpetition fees and disbursements of legal counsel, financial advisors and other consultants (the "Adequate Protection Fees and Expenses", and together with the Adequate Protection Interest Payments, the "Adequate Protection Payments").  Payment of all such Adequate Protection Fees and Expenses shall not be subject to allowance by the Court but shall be subject to the following

19

process.  At the same time such invoices are delivered to the Debtors, the professionals for the Prepetition Secured Parties shall deliver a copy of their respective invoices to counsel for any official committee appointed in these cases pursuant to section 1102 of the Bankruptcy Code, including the Creditors' Committee, the Tort Committee, the FCR and the office of the United States Trustee (the "U.S. Trustee"). The invoices for such fees and expenses shall not be required to comply with any U.S. Trustee guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court. Any objections raised by the Debtors, the U.S. Trustee, the Creditors' Committee, the Tort Committee or the FCR with respect to such invoices within ten (10) business days of receipt thereof will be resolved by the Court (absent prior consensual resolution thereof). Pending such resolution, the undisputed portion of any such invoice shall be promptly paid by the Debtors. Except as otherwise ordered by the Court in the event an objection is timely filed, such fees and expenses shall not be subject to any setoff, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

6.    Reporting.  Other than the requirement to provide an "Annual Audit" pursuant to section 5.01(a) of the Credit Agreements and section 6.1(a)(i) of the Bond Agreements, the Debtors shall comply with the reporting requirements set forth in the Prepetition Loan Documents, and the Debtors shall provide the following additional reporting to the Prepetition Secured Parties, the Creditors' Committee, the Tort Committee and the FCR:

(i)    On or before the last business day of every fourth calendar week starting on the first Friday five (5) weeks following the entry of this Final Order, an updated Budget (the "Proposed Budget") with respect to the Debtors for the current calendar week then ended and the immediately following consecutive 12 weeks (collectively, 13 weeks), set forth on a weekly

20

basis.  Each Proposed Budget provided to the Prepetition Secured Parties (with copies to the Creditors' Committee, the Tort Committee and the FCR) shall be of no force and effect unless and until it is approved by the Prepetition Secured Parties and, until such approval is given, the prior Budget shall remain in effect.  Each Proposed Budget shall become the Budget five (5) days after delivery by the Debtors to the Prepetition Secured Parties (with copies to the Creditors' Committee, the Tort Committee and the FCR) if approved in accordance with the foregoing (and the Prepetition Secured Parties shall be deemed to have approved the Proposed Budget upon the passage of five (5) days with no objection).  Any changes in a Proposed Budget to the fees and expenses of the professionals retained by the Creditors' Committee, the Tort Committee and the FCR pursuant to sections 327, 328 or 330 of the Bankruptcy Code shall require the approval of such Committee or FCR, as applicable.  Any such Proposed Budget, upon the approval of the Prepetition Secured Parties shall become, as of the date of such approval or such determination and for the period of time covered thereby, the Budget, and shall prospectively replace any prior Budget.  If the Debtors and the Prepetition Secured Parties are unable to agree on a Proposed Budget's terms, the Debtors reserve the right to seek an expedited hearing with the Court to resolve such disagreement.  In that event, the Prepetition Secured Parties shall not oppose the request for expedited consideration provided that any such hearing is held on not less than 48 hours' notice to the Prepetition Secured Parties.  In the event of any dispute regarding the terms of a Proposed Budget, the Debtors and the Prepetition Secured Parties reserve any and all rights under the Bankruptcy Code or applicable law;

(ii)    on or before the fifth (5th) business day following every fourth calendar week, starting the first Friday five (5) weeks following the entry of this Final Order, a report (each a "Variance Report"), in each case certified by a "Financial Officer" (as defined in the

21

2019 RCF Agreement) of BSA, showing (a) for the four-week period ended the preceding Friday (the "<u>Test Period</u>"), the cumulative actual "Total Cash Receipts," "Total Third Party Disbursements Excluding Professional Fees" and "Net Cash Flow Excluding Professional Fees"; and (b) the variance (as a percentage) of the amounts set forth in clause (a) from the amounts set forth in then-applicable Budget;

(iii)    on each Friday following entry of this Final Order, a report showing the actual cash receipts and disbursements for the week ending the preceding Friday;

(iv)    all financial reports, forecasts and all other financial documentation, pleadings and other filings that are reasonably requested by the Prepetition Secured Parties or their representatives and agents;

(v)    all such information that is afforded to the Creditors' Committee, the Tort Committee, the FCR and/or such Committee's or FCR's respective legal or financial advisors, but excluding such information that is subject to confidentiality procedures approved by the Court (*e.g.*, the confidentiality procedures to protect abuse victims as described in the *Debtors' Motion for Entry of an Order (I) Authorizing the Filing of a List of (A) Counsel Representing the Largest Numbers of Abuse Victims and (B) the Unsecured Creditors of the Debtors, (II) Authorizing Special Noticing and Confidentiality Procedures to Protect Abuse Victims, (III) Authorizing and Approving Procedures for Providing Notice of Commencement, and (IV) Granting Related Relief*); and

(vi)    in addition to, and without limiting, whatever rights to access the Prepetition Secured Parties have under the Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall (a) permit representatives of the Prepetition Secured Parties to visit and inspect any of their respective properties, to examine

22

and make abstracts or copies from any of their respective books and records, to tour the Debtors'

business premises and other properties, and (b) cause their representatives and agents to make

themselves reasonably available to discuss the Debtors' affairs, financial condition, properties,

business, operations and accounts with the representatives and agents of the Prepetition Secured

Parties.

7.      <u>Cash Management</u>.  Subject to the Debtors' cash management order entered by

the Court, the Debtors are authorized and directed to maintain their cash management system in a

manner consistent with this Final Order, and any order of this Court approving the maintenance

of the Debtors' cash management system.

8.      <u>Requests for Further Adequate Protection</u>.  Nothing in this Final Order shall be

deemed to limit, abridge, waive or otherwise affect (i) any right of the Prepetition Secured

Parties to request at any time that the Court provide different, additional or further adequate

protection of their interests in the Prepetition Collateral (including Cash Collateral) or to seek

different, additional, or further adequate protection in the event the Prepetition Secured Parties

contend that the adequate protection provided herein is inadequate or (ii) the ability of the

Debtors or any other party in interest to oppose any such relief.

9.      <u>Continuation of Prepetition Liens</u>. Subject to the challenge rights set forth in

Paragraph 19, until the Prepetition Secured Parties are Paid in Full, all liens and security interests

of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens)

shall remain valid and enforceable with the same continuing priority as described herein.  The

term "Paid in Full" or "Payment in Full" means (i) all of the Prepetition Obligations, any

Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection

Amount and/or Adequate Protection Superpriority Claims, have been indefeasibly paid in full in

23

cash and completely satisfied (including the cash collateralization of any letters of credit); and (ii) the Prepetition Agent and Prepetition Secured Lender shall receive a release from each Debtor of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities in form and substance acceptable to the Prepetition Secured Parties, and the Challenge Period has expired without the commencement of any Challenge Proceeding, or, if a Challenge Proceeding was timely commenced in accordance with Paragraph 19 of this Final Order, any such Challenge Proceeding has been resolved or dismissed on a final and non-appealable basis.

10.     <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to effectuate all of the terms and provisions of this Final Order.

11.     <u>Perfection of Adequate Protection Liens</u>.

(i)     The Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments, or take possession of or control over any cash, securities or any other property of the Debtors, or take any action that otherwise may be required under federal, state or local law in any jurisdiction to validate and perfect a security interest or lien, in any such case, the Adequate Protection Liens shall be

deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Final Order), at the time and on the date of entry of this Final Order or thereafter. Upon the reasonable request of any of the Prepetition Secured Parties, the Prepetition Secured Parties (at the Debtors' cost and expense) and the Debtors, without any further consent of any party, are authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the Prepetition Secured Parties to further validate, perfect, preserve and enforce the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(ii)    A certified copy of this Final Order (or the notice of the filing hereof) may, in the discretion of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or *in lieu* of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order or notice for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Prepetition Secured Parties to take all actions, as applicable, referenced in this Paragraph 11(ii) and Paragraph 11(i).

12.    <u>Termination of Cash Collateral Authorization</u>. Subject to any applicable cure or any notice period set forth below, if any, the Debtors' right to use Cash Collateral shall terminate (each, an "<u>Event of Default</u>," and the date of any such Event of Default, the "<u>Termination Date</u>"), without prior order of this Court or any further action by the Prepetition Secured Parties, unless such Event of Default is waived by the Prepetition Agent (at the direction of the Prepetition Secured Lender) in writing, on the earliest to occur of:

25

(i)      the date the Debtors (or any other party with standing to act on behalf of the Debtors' estates) file or otherwise support any motion, pleading, or other document that materially, adversely affects the Prepetition Secured Parties, including under a plan of reorganization, without the prior written consent of the Prepetition Secured Parties; *provided*, *that* if, pursuant to a plan of reorganization, the Prepetition Obligations, any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims, are Paid in Full on the effective date of such plan, such consent shall not be required; *provided*, *further*, *that* a Challenge Proceeding shall not trigger an Event of Default under this Paragraph;

(ii)      any Debtor's failure to comply with any of the material terms or conditions of this Final Order, including, but not limited to, (a) the use of Cash Collateral for any purpose other than as permitted in this Final Order, (b) the  failure to comply with the Budget (including any distributions in excess of the Permitted Variance that have not been resolved and approved, in writing, by the Prepetition Agent), or (c) the failure to make any payment under this Final Order to the Prepetition Agent within five (5) business days after such payment becomes due (other than payments required under Paragraph 5(vi) of this Final Order, which payments shall be made as required therein);

(iii)      the date the Debtors (or any other party with standing to act on behalf of the Debtors' estates) seek to exercise any rights or remedies with respect to the "Collateral" (as defined in that certain *Collateral Assignment of Promissory Note and Credit Line Deed of Trust*, dated as of March 21, 2019, by and among BSA and JPM), without the prior written consent of the Prepetition Secured Parties; *provided*, *further*, *that* a Challenge Proceeding shall not trigger an Event of Default under this Paragraph;

26

(iv)    the date the Debtors file an application, motion, or other pleading seeking to amend, modify, supplement, or extend this Final Order without the prior written consent of the Prepetition Secured Parties;

(v)    this Final Order ceases, for any reason (other than by reason of the express written agreement by the Prepetition Secured Parties), to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by this Final Order cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing;

(vi)    the Court shall have entered an order reversing, amending, supplementing, staying, vacating, or otherwise modifying this Final Order in a manner materially adverse to the Prepetition Secured Parties without the consent of the Prepetition Agent and the Prepetition Secured Parties;

(vii)    the date the Debtors file or otherwise support any application, motion, or other pleading for the approval of any superpriority claim or any lien in these Chapter 11 Cases that is *pari passu* with or senior to the Adequate Protection Superpriority Claims, or the Adequate Protection Liens without the prior written consent of the Prepetition Secured Parties;

(viii)    the date any of the Debtors files any pleading or commences any action against the Prepetition Secured Parties challenging the validity or enforceability of the Prepetition Obligations or the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to the Prepetition Obligations; *provided*, *however*, that the Termination Date shall not be deemed to occur if the Debtors seek approval of debtor in possession financing,

27

including, without limitation, debtor in possession financing which primes existing liens, that provides for Payment in Full of the Prepetition Obligations, any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims, unless the Prepetition Agent and Prepetition Secured Lender provide prior written consent for financing that does not provide for Payment in Full of the Prepetition Obligations, any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims; *provided*, *further*, *that* a Challenge Proceeding shall not trigger an Event of Default under this Paragraph;

(ix)    the date (a) any court enters an order dismissing the Chapter 11 Cases, converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or appointing a trustee, responsible officer, or examiner with expanded powers relating to the operation of the organization in the Chapter 11 Cases, unless consented to in writing by the Prepetition Agent and the Prepetition Secured Lender, or (b) the Debtors apply for, consent to, acquiesce in any such dismissal, conversion, or appointment;

(x)    the Court shall have entered an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed *in lieu* of foreclosure or the like) on any of the Prepetition Collateral or Adequate Protection Collateral which has an aggregate value in excess of $5,000,000; and

(xi)    any Debtor supporting (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party in interest) any other person's opposition to any motion filed in the Court by the Prepetition Agent or the Prepetition Secured Lender seeking confirmation of the amount of its Prepetition Obligations or the validity or enforceability of the Prepetition Liens or the Adequate Protection Liens, except with regard to

28

good faith disputes over the payment of expenses and fees; _provided_, _however_, that the Termination Date shall not be deemed to occur if the Debtors seek approval of debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens, that provides for Payment in Full of the Prepetition Obligations, any Adequate Protection Payments, and solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims unless the Prepetition Agent and Prepetition Secured Lender provide prior written consent for financing that does not provide for Payment in Full of the Prepetition Obligations, any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims.

(xii)    Notwithstanding anything to the contrary herein, a Challenge Proceeding shall not trigger an Event of Default.

13.    <u>Rights and Remedies upon the Event of Default</u>.    Immediately upon the occurrence and during the continuation of an Event of Default, the provisions of Bankruptcy Code section 362 notwithstanding, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, the Prepetition Agent (at the direction of the Prepetition Secured Lender) may provide written notice to the Debtors, the Creditors' Committee, the Tort Committee  and the FCR (such notice, a "<u>Termination Notice</u>") that (i) any Adequate Protection Amount, Adequate Protection Superpriority Claims and/or Adequate Protection Payments determined by the Court to be due and owing as of the delivery of the Termination Notice, if any, shall become due and payable, and/or (ii) the application of the Carve-Out has occurred through the delivery of a Carve-Out Trigger Notice. Unless otherwise ordered by this Court, the automatic stay in the Chapter 11 Cases otherwise applicable to the Prepetition Secured Parties is hereby modified so that five (5) business days after the date a

Termination Notice is delivered (the "<u>Remedies Notice Period</u>"), the Debtors' authority to use Cash Collateral shall cease, unless the Debtors, the Creditors' Committee, the Tort Committee or the FCR file a motion (on an emergency basis) prior to the expiration of the Remedies Notice Period seeking a determination that a Termination Event has not occurred, in which case, the Remedies Notice Period is extended until the Court rules on such emergency motion.  During the Remedies Notice Period or thereafter, the Prepetition Secured Parties shall be entitled to seek an emergency hearing with the Court to seek relief from stay to exercise their rights and remedies to the extent available in accordance with the applicable Prepetition Loan Documents, this Final Order, or applicable law, and the Debtors, the Creditors' Committee, the Tort Committee and the FCR shall not oppose the setting of such emergency hearing; provided that the Prepetition Secured Parties shall not, unless otherwise ordered by the Court, take any action on relief from the stay until the conclusion of the Remedies Notice Period.  All rights of the Debtors, the Creditors' Committee, the Tort Committee and the FCR to oppose the Prepetition Secured Parties' efforts to obtain relief from stay (aside from the setting of an emergency hearing on the matter) are preserved.  All rights of the Debtors to seek authority to use Cash Collateral over the objection of the Prepetition Secured Parties are preserved, and all rights of the Prepetition Secured Parties to contest such request are similarly preserved.  Upon an Event of Default, the Debtors shall use cash from the Prepetition Collateral and Adequate Protection Collateral in the amount of the incurred but unpaid operational expenses accounted for in the applicable Budget (including subject to Permitted Variances) through the Termination Date and use such cash to pay such incurred but unpaid operational expenses in the ordinary course, subject to the right of any party in interest to argue that the circumstances of the cases warrant the ratable distribution

of such cash to all holders of incurred but unpaid operational expense claims through the Termination Date.

14.    <u>Carve-Out</u>. Subject to the terms and conditions contained in this Paragraph and each subparagraph thereof, each of the Prepetition Obligations, Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out.

(i)    As used in this Final Order, the "<u>Carve-Out</u>" means the sum of (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (c) below); (b) all reasonable fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below) or 1104(a); (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees, disbursements, costs, and expenses accrued or incurred by persons or firms retained by the Debtors, the Creditors' Committee, the Tort Committee or the FCR (collectively, the "<u>Professional Persons</u>") whose retention is approved by this Court pursuant to section 327, 328, 363, or 1103 of the Bankruptcy Code and any unpaid actual, necessary expenses accrued or incurred by members of the Creditors' Committee or the Tort Committee as provided for in section 503(b)(3)(F) of the Bankruptcy Code (collectively, the "<u>Allowed Professional Fees</u>") at any time before delivery by the Prepetition Agent of a Carve-Out Trigger Notice (or thereafter if the application to retain such professional was pending as of the date of delivery of a Carve-Out Trigger Notice), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (d) Professional Fees in an aggregate amount not to exceed $3.5 million incurred the first day following delivery by the Prepetition Agent of

31

the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in clause (d) being the "Carve-Out Trigger Notice Cap"); *provided, that* nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, costs, disbursements, reimbursements, or compensation described in clauses (a) through (d); above, on any grounds.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email by the Prepetition Agent to the Debtors, the Debtors' counsel, the U.S. Trustee, and counsel to the Creditors' Committee, the Tort Committee, and the FCR which notice may be delivered only upon the occurrence and during the continuation of an Event of Default, stating expressly that the Carve-Out Trigger Notice Cap has been invoked.

(ii)    On the day on which the Carve-Out Trigger Notice is delivered to the Debtors (the "Carve-Out Trigger Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve (the "Pre-Carve-Out Trigger Notice Reserve") in an amount equal to the then-unpaid amounts of Professional Fees.  The Debtors shall deposit and hold in trust the Pre-Carve-Out Trigger Notice Reserve in a segregated account at the Debtors to pay such then-unpaid Professional Fees prior to any and all other claims (the "Professional Fees Account"), *provided, however,* that the Debtors shall not be authorized to use the funds in such account once deposited for any purpose other than as set forth in this Paragraph.  On the Carve-Out Trigger Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtors, after funding the Pre-Carve-Out Trigger Notice Reserve to fund a reserve (the "Carve-Out Trigger Notice Cap Reserve," and, together with the Pre-Carve-Out Trigger Notice Reserve, the

32

"Carve-Out Reserves") in an amount equal to the Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold in trust the Carve-Out Trigger Notice Cap Reserve in the Professional Fees Account to pay such Professional Fees benefiting from the Carve-Out Trigger Notice Cap prior to any and all other claims, *provided*, *however*, that the Debtors shall not be authorized to use the funds in such account once deposited for any purpose other than as set forth in this Paragraph.  All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used to pay the obligations set forth in clauses (a) through (c) of the definition of Carve-Out in Paragraph 14(i) above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Carve-Out Trigger Notice Cap Reserve, until paid in full.  All funds in the Carve-Out Trigger Notice Cap Reserve shall be first used to pay the obligations set forth in clause (d) of the definition of Carve-Out set forth in Paragraph 14(i) above (the "Post-Carve-Out Amounts").  Notwithstanding anything to the contrary in the Prepetition Loan Documents or the Final Order, following delivery of a Carve-Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves after payment of all Carve-Out amounts in full, which shall revert to the Debtors subject to such security interest.  Further, notwithstanding anything to the contrary in this Final Order, (a) the failure of the Carve-Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (b) the Carve-Out Reserves shall serve as a limitation only on the amount of Professional Fees that may be paid from such Carve-Out Reserves, and in no way shall the approved Budget, the Carve-Out, the Carve-Out Trigger Notice Cap, the Carve-Out Reserves or any of the foregoing be construed as a

cap or limitation on the amount of Professional Fees that a party in interest may seek to be paid by the Debtors in these Chapter 11 Cases.

(iii)    After the delivery to the Debtors of a Carve-Out Trigger Notice, any payment or reimbursement made on or in respect of any Post-Carve-Out Amounts (excluding any incurred and unpaid professional fees and expenses of the Prepetition Secured Lenders payable pursuant to this Final Order) in an aggregate amount not in excess of the amounts accrued or paid for each such professional as set forth in the Budget, shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(iv)    Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims granted under this Final Order, including the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any and all other liens or claims securing the Prepetition Obligations.

(v)    None of the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any retained professionals, any official committee of creditors, the FCR, the U.S. Trustee, or the Clerk of this Court (or of any other entity) incurred in connection with these Chapter 11 Cases or any Successor Case, and nothing in this Final Order or otherwise shall be construed to obligate such parties in any way to (a) pay such compensation to or to reimburse such expenses or (b) assure that the Debtors have sufficient funds on hand to pay any of the foregoing.

15.    <u>Limitation on Charging Expenses against Collateral</u>.  Nothing contained in this Final Order shall be deemed a consent by the Prepetition Secured Parties to any charge, lien, assessment, or claim against the Prepetition Collateral, or the Adequate Protection Liens, or otherwise.  Except to the extent of the Carve-Out, no costs or expenses of administration which

34

have been or may be incurred in these Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the Prepetition Secured Parties, or any of the Prepetition Obligations, the Carve-Out, or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Prepetition Secured Parties.  No action, inaction or acquiescence by the Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Prepetition Secured Parties, the Prepetition Obligations, or the Prepetition Collateral.

16.    <u>Equities of the Case Waiver</u>.  The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral, provided that, for the avoidance of doubt, what constitutes Prepetition Collateral is subject to the rights of parties-in-interest to bring a Challenge Proceeding.

17.    <u>Disgorgement</u>.  Notwithstanding anything to the contrary herein, in the event of a successful Challenge Proceeding or a determination by final order that the Prepetition Secured Parties are undersecured in the Prepetition Collateral, all rights of the Debtors, the Creditors' Committee, the Tort Committee and the FCR to seek recharacterization, disgorgement, or refund of any amounts paid to the Prepetition Agent to or for the benefit of the Prepetition Secured Parties (including the Adequate Protection Payments) are fully and expressly preserved.

18.    <u>No Marshaling</u>.  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, no

35

party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Prepetition Collateral after an Event of Default.

19.    Effect of Debtors' Stipulations.

(i)    Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Final Order, including, without limitation, in Paragraph D of this Final Order, shall be binding upon each of the Debtors under all circumstances and for all purposes upon entry of this Final Order.

(ii)    Each of the Debtors' Stipulations and each of the Debtors' other admissions, agreements and releases contained in this Final Order, including, without limitation, in Paragraph D of this Final Order, shall be binding upon all other parties in interest, including, without limitation, the Creditors' Committee, the Tort Committee, the FCR and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:  (a) the Creditors' Committee, the Tort Committee, the FCR or any other party in interest has filed (subject to the limitations contained herein, including, *inter alia*, in this Paragraph) by no later than a date that is the later of (1) in the case of a party in interest other than the Creditors' Committee, the Tort Committee or the FCR, June 3, 2020; (2) in the case of the Creditors' Committee, the Tort Committee or the FCR, July 3, 2020; (3) with respect to any chapter 7 trustee appointed or elected for any of the Debtors, prior to the expiration of the periods set forth in subsections (1) and (2) above, no later than the date that is the later of (A) fourteen (14) days after the appointment of such chapter 7 trustee or (B) the expiration of the time periods set forth in the foregoing subsections (1) and (2) above; (4) with respect to any

36

Challenge Proceeding (as defined below) against the Prepetition Secured Parties, any such later date agreed to in writing (which may be by email) by the Prepetition Secured Parties in their sole discretion; or (5) any such later date ordered by the Court for cause shown after notice and an opportunity to be heard, provided that such order is sought before the expiration of any applicable period as set forth in clauses (1) through (4) of this sentence (the "Challenge Period"), a motion or other pleading requesting, standing as to one or both of the Debtors, to file a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code), (A) contesting, objecting or otherwise challenging the admissions, stipulations, findings or releases included in the Debtors' Stipulations and this Final Order, (B) contesting, objecting or otherwise challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), (C) contesting, objecting or otherwise challenging the right of the Prepetition Secured Parties to credit bid, up to the full amount of the Prepetition Obligations, in any sale of the Prepetition Collateral, in each case pursuant to section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise, or (D) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) or any other claims, counterclaims or causes of action, objections, contests, defenses, setoffs, offsets or recoupments, whether arising at law or equity against the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment

37

bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their respective capacities as such (collectively, the "Representatives"), and solely in their capacities as Representatives of the Prepetition Secured Parties, in connection with (I) the prepetition business relationship between or conduct of the Prepetition Secured Parties with the Debtors, (II) the actions or inactions of the Prepetition Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the Prepetition Secured Parties in the nature of an "equitable subordination," "lender liability," "deepening insolvency" or "control person" liability, or (III) matters related to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens and the Prepetition Collateral ((A), (B), (C) and (D) collectively, a "Challenge Proceeding"); and (b) there is a final and non-appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding.

(iii) If no such Challenge Proceeding is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' Stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, those contained in Paragraph D of this Final Order, shall be binding on all parties in interest, including, without limitation, any official committee of creditors or any trustee appointed in these Chapter 11 Cases or any Successor Case; (b) the obligations of the Debtors under the Prepetition Loan Documents, including the Prepetition Obligations, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Chapter 11 Cases and any Successor Case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance

38

or other defense (other than as to the value of the Prepetition Collateral at the Petition Date and whether the Prepetition Obligations are fully secured within the meaning of Section 506 of the Bankruptcy Code (the "Collateral Value Issues")); and (d) the Prepetition Obligations and the Prepetition Liens (including all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, the Prepetition Loan Documents or this Final Order or otherwise, whether made prior to, on, or after the Petition Date) shall not be subject to any other or further claim or challenge by any official committee of creditors any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by any official committee of creditors, any non-statutory committees appointed or formed in these Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Loan Documents shall be deemed forever waived, released, and barred, other than as to the Collateral Value Issues.

(iv)    If any such Challenge Proceeding is timely filed during the Challenge Period, (a) any claim or action that is not brought shall forever be barred, and (b) each of the Debtors' Stipulations and each of the Debtors' other admissions and agreements contained in this Final Order, including, without limitation, those contained in Paragraph D of this Final Order, shall nonetheless remain binding and preclusive on any official committee of creditors and on any other person or entity, except to the extent that such stipulations, admissions, and agreements were successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Final Order vests or confers on any

39

Person (as defined in the Bankruptcy Code), including any official committee of creditors or any non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Loan Documents, the Prepetition Obligations, or the Prepetition Liens.  Notwithstanding anything to the contrary herein, the Challenge Period shall be tolled if the Creditors' Committee, the Tort Committee or the FCR brings a motion for standing (a "Standing Motion") to assert a Challenge Proceeding prior to the expiration of the Challenge Period, pending a resolution of such motion.  Nothing herein shall limit the Creditors' Committee's, the Tort Committee's or the FCR's ability to (x) file a motion in respect of any timely Challenge Proceeding for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge.  In the event the Creditors' Committee, the Tort Committee or the FCR files an LLC Challenge Motion (which may be sought as alternative relief in a Standing Motion) for which it cannot obtain standing, the expiration of the Challenge Deadline solely for the specific Challenge Proceeding set forth in the LLC Challenge Motion shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process for the prosecution of any such Challenge Proceeding.  If timely notified of a Challenge Proceeding for which the Creditors' Committee, the Tort Committee or the FCR cannot gain standing because the applicable Debtor is a limited liability company, the Debtors (or a designated representative) shall retain the authority to prosecute such Challenge Proceeding in the exercise of their business judgment and subject to any applicable further order of the Court.

20.      <u>Restriction on Use of Cash Collateral and Prepetition Collateral</u>.  Notwithstanding anything herein or in any other order by this Court to the contrary, no Cash Collateral, Prepetition Collateral, proceeds, products, or offspring of any of the foregoing or any portion of the Carve-Out may be used to (except to the extent otherwise expressly agreed in writing by the Prepetition Agent in response to a written request from the Debtors specifying the proposed use) pay any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee (including the Creditors' Committee and the Tort Committee), any trustee appointed under these Chapter 11 Cases or any Successor Case, or any other person, party, or entity (or to pay any professional fees and disbursements in connection therewith) to: (i) apply to the Bankruptcy Court for authority to approve superpriority claims or grant liens or security interests in the Prepetition Collateral and Cash Collateral, or any portion thereof that are senior to, or on parity with, the Prepetition Liens, unless the Prepetition Obligations, and claims granted to the Prepetition Secured Parties under this Final Order, as applicable, have been Paid in Full or otherwise agreed to in writing by the Prepetition Secured Parties; (ii) to prevent, hinder or otherwise delay the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral, including Cash Collateral, and liens, claims and rights granted to the Prepetition Secured Parties under this Final Order, in accordance with the Prepetition Loan Documents or this Final Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties under this Final Order or the Prepetition Loan Documents; (iv) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are provided for in the Budget and approved by an order of this Court that is in form and substance reasonably satisfactory to the Prepetition Agent; (v) investigate, assert, join, commence, support or prosecute any action or claim, counter-claim, action,

41

proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against the Prepetition Secured Parties or their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (a) any avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code, (b) any action relating to any act, omission or aspect of the relationship between the Prepetition Secured Parties, on the one hand, and the Debtors or any of their affiliates, on the other, (c) any action with respect to the validity and extent of the Prepetition Obligations, or the validity, extent, and priority of the Prepetition Liens or the Adequate Protection Liens, (d) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Liens or the Adequate Protection Liens granted under this Order, (e) except to contest the occurrence of any Event of Default as permitted in Paragraph 13, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Prepetition Secured Parties in respect of their liens and security interests in the Cash Collateral or the Prepetition Collateral, (f) pay any fees or similar amounts to any person to purchase the Prepetition Secured Parties' interests in any of the Debtors' assets without the prior written consent of the Prepetition Secured Parties, unless such person consummates or otherwise closes the purchase of the Prepetition Secured Parties' interests in any of the Debtors' assets, or (g) [reserved]; or (vi) for objecting to, contesting, delaying, preventing, hindering or otherwise interfering with in any way with the exercise of rights or remedies by the Prepetition Secured Parties with respect to any Prepetition Collateral, including Cash Collateral, after the occurrence of an Event of Default; *provided that*, notwithstanding anything to the contrary in this Paragraph, the Creditors' Committee, the Tort Committee and the FCR may use Prepetition Collateral, including Cash Collateral, and the

proceeds thereof to investigate (y) the claims and liens of the Prepetition Secured Parties, solely to the extent set forth in this Paragraph (but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge any of the foregoing) and (z) potential claims, counterclaims, causes of action, or defenses against the Prepetition Secured Parties, solely to the extent set forth in this Paragraph (but not to prepare, initiate, litigate, prosecute, object to, or otherwise challenge any of the foregoing); *provided* *further* that no more than an aggregate of $105,000 of the Prepetition Collateral, including Cash Collateral, and the proceeds thereof may be used by the Creditors' Committee in respect of the investigations set forth in the preceding proviso, no more than an aggregate of $105,000 of the Prepetition Collateral, including Cash Collateral, and the proceeds thereof may be used by the Tort Committee, in respect of the investigations set forth in the preceding proviso, and no more than an aggregate of $65,000 of the Prepetition Collateral, including Cash Collateral, and the proceeds thereof may be used by the FCR, in respect of the investigations set forth in the preceding proviso] (the "Investigation Budget").  For the avoidance of doubt, nothing in this Final Order shall serve as a limit or cap on the fees and expenses that may be incurred by any the Creditors' Committee, the Tort Committee, or the FCR or prevent either the Creditors' Committee, the Tort Committee or the FCR from seeking or obtaining payment and reimbursement of its respective professional fees and expenses.

21.    Release.    The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph shall be deemed effective upon entry of this Final Order and subject only to the challenge rights set forth in Paragraph 19 above.  The Debtors forever and irrevocably (i) release, discharge, and acquit the Prepetition Secured Parties, solely in their capacities as such, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors,

shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releases") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type arising prior to the Petition Date, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Prepetition Secured Parties and the Debtors and their affiliates including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the Prepetition Liens, the Prepetition Loan Documents, the Debtors' attempts to restructure the Prepetition Obligations, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations and the Prepetition Liens.

22.    Prohibition on Granting of Additional Liens and Interests, Use of Prepetition Collateral.  No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Encumbrances, having a lien or administrative priority superior to or *pari passu* with that of the Adequate Protection Superpriority Claim, the Prepetition Liens, or the Adequate Protection Liens shall be granted while any portion of the Prepetition Obligations remain outstanding, or any commitment under the Prepetition Loan Documents remains in effect, without the prior written consent of the Prepetition Secured Parties. Nothing in this Final Order shall authorize, other than in the ordinary course of the Debtors' business, the sale, transfer, lease, encumbrance, or other disposition of any assets of the Debtors or their estates without the prior written consent of the Prepetition Secured Parties (and no such consent or direction shall be

44

implied from any other action, inaction, or acquiescence by any Prepetition Secured Party or any order of this Court), except as permitted in the Prepetition Loan Documents and this Final Order, and approved by the Court to the extent required under applicable bankruptcy law; *provided*, *however*, that the Termination Date shall not be deemed to occur if the Debtors seek approval of debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens, that provides for Payment in Full of the Prepetition Obligations, any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims, unless the Prepetition Agent and Prepetition Secured Lender provide prior written consent for financing that does not provide for Payment in Full of the Prepetition Obligations, any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims.

23.    <u>Maintenance of Letters of Credit</u>.    Following entry of this Final Order, the Debtors shall be authorized, but not directed, to (i) maintain and extend letters of credit issued under the Credit Agreements on an uninterrupted basis, in accordance with the practices and procedures in effect before the Petition Date and subject to the terms and conditions of the Credit Agreements, and to take all actions reasonably appropriate with respect thereto; *provided that*, in respect of any letter of credit in respect of which the Debtors are seeking to extend such letter of credit's term, the Debtors shall obtain the written consent of the Prepetition Secured Parties in respect of such extension; and (ii) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit, and to take all actions reasonably appropriate with respect thereto; *provided*, *that*, for the avoidance of doubt, no such new letters of credit shall be issued under the Credit Agreements.  If any existing letter of credit

under the Credit Agreements is drawn, any resulting obligation that is not paid by the Debtors shall constitute joint and several allowed administrative expense priority claims against the Debtors as provided for in sections 503(b) and 507(a)(2) of the Bankruptcy Code.

24.    <u>Binding Effect of Final Order</u>.    Subject to the challenge rights set forth in Paragraph 19 above, immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Debtors, the Prepetition Secured Parties, all other creditors of the Debtors, any Creditors' Committee, and each of their respective successors and assigns (including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code) and shall inure to the benefit of the Debtors, the Prepetition Secured Parties, and their respective successors and assigns.

25.    <u>Survival</u>.    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order (i) confirming any plan of reorganization in any of these Chapter 11 Cases; (ii) converting any of these cases to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing any of these cases or any Successor Case; or (iv) pursuant to which this Court abstains from hearing any of these Chapter 11 Cases or any Successor Case. Notwithstanding the entry of any such order, the terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the Prepetition Secured Parties pursuant to this Final Order, shall continue in these Chapter 11 Cases, in any Successor Case, or following dismissal of these Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided by this Final Order and not be modified, altered or

46

impaired in any way, whether by act or omission, until all of the Prepetition Obligations and any Adequate Protection Payments and, solely to the extent applicable, any Adequate Protection Amount and/or Adequate Protection Superpriority Claims have been Paid in Full, notwithstanding the occurrence of an Event of Default or any earlier termination of the Debtors' authorization to use the Prepetition Collateral, including Cash Collateral.

26.    <u>Limitation of Liability</u>.    In determining to permit the use of Cash Collateral, making and administering the loans and financial accommodations extended under the Prepetition Loan Documents, extending other financial accommodations to the Debtors under this Final Order and the Prepetition Loan Documents, or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the Prepetition Loan Documents, as applicable, the Prepetition Secured Parties, solely in their capacity as a lender under the Prepetition Loan Documents, or any successor of any of the foregoing shall not (a) be deemed to be in "control" of the operations of the Debtors or any of their affiliates; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors or any of their affiliates (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).    Furthermore, nothing in this Final Order or the Prepetition Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any of their

47

subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

27.    <u>Insurance</u>. The Debtors shall maintain insurance on the Prepetition Collateral in amounts, for the risks, and by the entities as required under the Prepetition Loan Documents.

28.    <u>No Waiver</u>.  Other than as provided for in this Final Order, nothing in this Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the Debtors or the Prepetition Secured Parties may have to bring or be heard on any matter brought before this Court.

29.    <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding any Bankruptcy Rule, any Local Rule, any Federal Rule of Civil Procedure, or other applicable law, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

30.    <u>Proofs of Claim</u>.  Neither the Prepetition Agent nor the Prepetition Secured Lender shall be required to file proofs of claim in any of these Chapter 11 Cases or a Successor Case for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Agent and the Prepetition Secured Lender upon approval of this Final Order, and the Prepetition Agent and the Prepetition Secured Lender shall be treated under section 502(a) of the Bankruptcy Code as if they filed a proof of claim. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or a Successor Case to the contrary, the Prepetition Agent and the Prepetition Secured Lender are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate

48

proofs of claim in each of these Chapter 11 Cases or a Successor Case for any claim allowed herein.

31.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any party, creditor, equity holder, other entity or any direct, indirect or incidental beneficiary other than (i) the Prepetition Secured Parties and their respective Representatives, (ii) the Debtors, (iii) the Creditors' Committee, (iv) the Tort Committee, (v) the FCR and (vi) the respective successors and assigns of each of the foregoing.

32.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

33.     <u>Rights Reserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (i) the Prepetition Secured Parties' rights to pursue any and all rights and remedies under the Bankruptcy Code, the Prepetition Loan Documents or any other applicable agreement or law, or seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different or additional adequate protection, as applicable, or the Debtors' or any other party in interest's rights to oppose such relief, or (ii) any of the rights and remedies of the Debtors, the Prepetition Secured Parties, or any other party in interest under the Prepetition Loan Documents or other applicable agreement, the Bankruptcy Code or applicable nonbankruptcy law.

34.     [Reserved]

35.     <u>Texas Taxing Authorities</u>.  Notwithstanding any other provisions included in this Final Order, or any agreements approved hereby, any statutory liens (collectively, the "<u>Tax Liens</u>") on property of the Debtors' estates held by Fort Bend County, Grayson County, Gregg

49

County, Harris County, Montague County, Montgomery County, Rusk County, Tarrant County, Van Zandt Central Appraisal District, Wood County, Anderson County, Denton County, Harrison Central Appraisal District, Harrison County, Henderson County, Midland Central Appraisal District, Milam County, Terry County Appraisal District and Williamson County (collectively, the "Texas Taxing Authorities") shall not be primed by nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, perfected, unavoidable and senior to the Prepetition Secured Parties, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by The Texas Taxing Authorities are fully preserved.

36.    Electronic Writing.  Any written consents, waivers or extensions contemplated by this Final Order may be done by electronic mail or other electronic means.

37.    Bankruptcy Rules.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.    Necessary Action.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

39.    Retention of Jurisdiction.  The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Final Order, including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

40.    <u>Service of the Final Order</u>.  The Debtors shall promptly serve copies of this Final

Order to the parties having been given notice of the Final Hearing, to any party that has filed a

request for notices with this Court and to the Creditors' Committee, the Tort Committee and the

FCR.


Dated: _____, 2020
Wilmington, Delaware

_____
JUDGE LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

## Budget

**Boy Scouts of America**
**13 - Week Cash Flow Forecast**

| ($ in thousands)<br>Week Ending | Prior Week Actual<br>Wk Ending 4/3/20 | Week 1 Forecast<br>Wk Ending 4/10/20 | Week 2 Forecast<br>Wk Ending 4/17/20 | Week 3 Forecast<br>Wk Ending 4/24/20 | Week 4 Forecast<br>Wk Ending 5/1/20 | Week 5 Forecast<br>Wk Ending 5/8/20 | Week 6 Forecast<br>Wk Ending 5/15/20 | Week 7 Forecast<br>Wk Ending 5/22/20 | Week 8 Forecast<br>Wk Ending 5/29/20 | Week 9 Forecast<br>Wk Ending 6/5/20 | Week 10 Forecast<br>Wk Ending 6/12/20 | Week 11 Forecast<br>Wk Ending 6/19/20 | Week 12 Forecast<br>Wk Ending 6/26/20 | Week 13 Forecast<br>Wk Ending 7/3/20 | 13-Week<br>Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Beginning Unrestricted Cash Balance - BSA** | $ 115,506 | $ 116,140 | 113,634 | 110,591 | 106,568 | 101,615 | 92,460 | 85,793 | 73,881 | 68,478 | 60,282 | 55,499 | 33,805 | 28,907 | $ 116,140 |
| **RECEIPTS** | | | | | | | | | | | | | | | |
| *Operating Receipts* | | | | | | | | | | | | | | | |
| Registrations | 1,507 | 1,329 | 1,329 | 1,329 | 1,213 | 748 | 748 | 748 | 748 | 748 | 718 | 718 | 718 | 319 | 11,382 |
| Supply | 455 | 330 | 330 | 330 | 335 | 366 | 366 | 366 | 366 | 355 | 350 | 350 | 350 | 1,054 | 5,247 |
| High-Adventure Bases | 247 | 220 | 220 | 220 | 20 | 15 | 15 | 15 | 15 | 37 | 46 | (14,057) | 46 | 49 | (13,139) |
| A/R Receipts | 1,243 | 1,112 | 1,112 | 1,114 | 1,124 | 1,124 | 1,124 | 1,124 | 1,519 | 1,527 | 1,527 | 1,527 | 1,527 | 1,514 | 16,861 |
| Other Operating Receipts | 355 | 328 | 328 | 328 | 318 | 255 | 255 | 255 | 264 | 268 | 268 | 268 | 268 | 273 | 3,665 |
| National Jamboree Fees | 8 | 149 | 149 | 149 | 149 | 145 | 145 | 145 | 145 | 55 | 58 | 58 | 58 | 58 | 1,462 |
| Other | 388 | - | - | - | 387 | - | - | - | - | 342 | - | - | - | 344 | 1,127 |
| Total Operating Receipts | 4,203 | 3,469 | 3,469 | 3,469 | 3,535 | 2,652 | 2,652 | 2,652 | 2,652 | 3,290 | 2,968 | (11,135) | 3,022 | 3,611 | 26,605 |
| Transfers from Investments & Rest. Accounts, Net | 111 | - | 1,700 | - | 400 | - | 1,700 | - | 400 | - | - | 1,700 | - | 400 | 6,300 |
| Other Collections / Distributions | 22 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | 4,336 | 3,769 | 5,169 | 3,469 | 3,935 | 2,652 | 4,352 | 2,652 | 3,052 | 3,290 | 2,968 | (9,435) | 3,022 | 4,011 | 32,905 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | |
| Total Trade AP | (686) | (3,785) | (4,119) | (3,951) | (2,943) | (3,289) | (3,665) | (3,539) | (3,655) | (2,715) | (2,919) | (2,719) | (2,921) | (2,591) | (42,814) |
| Total Payroll and Benefits | (993) | (3,510) | (2,124) | (2,008) | (4,425) | (2,059) | (4,927) | (2,079) | (3,727) | (2,038) | (4,040) | (3,455) | (4,032) | (2,236) | (40,659) |
| Other Expenses | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | (1,679) | (7,295) | (6,244) | (5,959) | (7,368) | (5,348) | (8,592) | (5,618) | (7,382) | (4,754) | (6,959) | (6,174) | (6,953) | (4,827) | (83,473) |
| **Net Operating Cash Flow** | 2,657 | (3,526) | (1,075) | (2,490) | (3,432) | (2,696) | (4,241) | (2,966) | (4,331) | (1,464) | (3,991) | (15,609) | (3,931) | (816) | (50,569) |
| **NON-OPERATING CASH FLOWS** | | | | | | | | | | | | | | | |
| GLIP [1] | (2) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (100) | (1,300) |
| Capex (BSA) | (25) | (58) | (58) | (71) | (222) | (222) | (222) | (222) | (192) | (192) | (192) | (192) | (192) | (141) | (2,042) |
| Capex (Summit) [1] | (16) | - | - | - | (350) | - | - | (425) | - | - | - | (1,275) | (425) | - | (2,900) |
| Interest and Principal | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Restructuring Professionals (Pre-Filing) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Cash Flows** | (43) | (158) | (158) | (158) | (171) | (322) | (1,097) | (747) | (322) | (322) | (292) | (1,567) | (717) | (241) | (6,242) |
| **BANKRUPTCY-RELATED DISBURSEMENTS** | | | | | | | | | | | | | | | |
| Restructuring Professionals (Post-Filing) | (1,970) | - | (135) | (350) | (250) | (5,387) | (79) | (450) | (5,110) | (830) | - | (4,018) | - | (500) | (15,643) |
| Adequate Protection Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (487) |
| Other - Noticing Program / Utility Deposit | - | - | - | - | - | - | - | (7,000) | - | - | - | - | - | - | (7,000) |
| Pre-Petition Vendor Payments | (10) | (300) | (1,675) | (1,025) | (600) | (750) | (1,250) | (750) | (750) | (6,440) | (500) | (500) | (500) | (250) | (9,100) |
| **Total Bankruptcy Related Expenses** | (1,980) | (1,178) | (1,810) | (1,375) | (1,350) | (6,137) | (1,329) | (8,200) | (6,440) | - | (4,518) | (21,694) | (4,898) | (750) | (32,230) |
| **Net Cash Flow Before Endowment Contributions** | 634 | (2,506) | (3,043) | (4,023) | (4,953) | (9,155) | (6,666) | (11,913) | (5,402) | (8,196) | (4,783) | (21,694) | (4,898) | (1,807) | (89,040) |
| Funding Sources (Endowment Contributions) | - | - | - | - | - | - | - | - | - | - | - | - | - | 30,000 | 30,000 |
| **Total Ending Unrestricted Cash Balance - BSA** [3] | $ 116,140 | 113,634 | 110,591 | 106,568 | 101,615 | 92,460 | 85,793 | 73,881 | 68,478 | 60,282 | 55,499 | 33,805 | 28,907 | 57,100 | 57,100 |
| Estimated Unrestricted Endowment Balance [4] | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 55,494 | 25,494 | 25,494 |
| Estimated Unrestricted RBT Balance [4] | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 | 66,809 |
| **Total Estimated Ending Unrestricted Liquidity - BSA** | 238,443 | 235,937 | 232,894 | 228,871 | 223,918 | 214,763 | 208,096 | 196,184 | 190,781 | 182,585 | 177,802 | 156,108 | 151,210 | 149,403 | 149,403 |
| Petition Date Unrestricted Liquidity | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 | 192,299 |
| Weekly Estimated Ending Balance Above | 238,443 | 235,937 | 232,894 | 228,871 | 223,918 | 214,763 | 208,096 | 196,184 | 190,781 | 182,585 | 177,802 | 156,108 | 151,210 | 149,403 | 149,403 |
| Gross Increase (Decrease) in Unrestricted Liquidity | 46,144 | 43,638 | 40,595 | 36,572 | 31,619 | 22,464 | 15,798 | 3,885 | (1,517) | (9,714) | (14,497) | (36,190) | (41,089) | (42,896) | (42,896) |
| Less Cumulative Prepetition A/R Receipts | 10,662 | 12,074 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 | 12,272 |
| Net Increase / (Decrease) after A/R Receipts | 35,482 | 31,564 | 28,324 | 24,300 | 19,347 | 10,192 | 3,526 | (8,387) | (13,789) | (21,985) | (26,768) | (48,462) | (53,360) | (55,168) | (55,168) |
| Less Cumulative Prepetition Registration Receipts | 28,915 | 30,244 | 31,573 | 32,902 | 34,114 | 34,863 | 35,611 | 36,359 | 37,107 | 37,825 | 38,542 | 39,260 | 39,374 | 39,374 | 39,374 |
| Net Increase / (Decrease) after A/R & Registrations | $ 6,567 | 1,320 | (3,249) | (8,601) | (14,767) | (24,670) | (32,085) | (44,746) | (50,896) | (59,810) | (65,311) | (87,722) | (92,734) | (94,542) | (94,542) |

Footnotes:
(1) GLIP disbursements include insurance premium payments and related administrative expenses
(2) Summit capital disbursements funded through restricted donations
(3) Excludes approximately $63 million of cash, which is restricted for accounting purposes, in the L/C Cash Collateral Account that collateralizes a standby letter of credit. Includes both cash and money market funds
(4) Investment balances are updated monthly for investment income