### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**DECLARATION OF JANINE PANCHOK-BERRY IN SUPPORT OF
CENTURY'S OBJECTION TO DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF SIDLEY AUSTIN LLP AS ATTORNEYS
FOR THE DEBTORS AND DEBTORS IN POSSESSION,
_NUNC PRO TUNC_ TO THE PETITION DATE**

I, **JANINE PANCHOK-BERRY**, declare as follows:

1.      I am an associate at the firm O'Melveny & Myers LLP ("OMM").  I submit this declaration based on my personal knowledge of the proceedings in _In re Boy Scouts of America and Delaware BSA, LCC_, and review of the pleadings and documents listed below.

2.      I have reviewed the description of Sidley Austin LLP's Insurance and Financial Services Group from Sidley's website.  A true and correct copy of that description page is attached as Exhibit A.  The website shows that representing insurers is an important part of Sidley's law practice, and that many insurance companies are regular clients:

> Our Insurance and Financial Services group has nearly four decades of experience and a team of 85 lawyers devoted exclusively to providing a full range of transactional, regulatory and dispute resolution services to the industry. . . .  Regular clients of our group include many of the largest insurance and reinsurance companies, brokers, banks, investment banking firms and regulatory agencies for which we provide regulatory, corporate, securities, mergers and acquisitions, securitization, derivatives, tax, reinsurance dispute resolution, class action defense, and other legal services.

3.      I have reviewed a copy of the Complaint for Declaratory Relief in *Nat'l Surety Corp. v. Boy Scouts of Am.*, No. 2017-CH-14975 (Ill. Cir. Ct., Chancery Div. filed Nov. 9, 2017). A true and correct copy of that document is attached as Exhibit B.  The complaint lists several insurers who it is plead issued liability policies to the Boy Scouts.

4.      I have reviewed a copy of the Plaintiffs' Original Petition in *Boy Scouts of Am. v. The Hartford Accident and Indemnity Co.*, No. DC-18-07313 (Tex. Dist. Ct. filed June 5, 2018). A true and correct copy of that document is attached as Exhibit C.  The complaint lists several insurers who it is plead issued liability policies to the Boy Scouts.

5.      I have reviewed a copy of the Plaintiffs' First Amended Petition & Request for Disclosure in *Boy Scouts of Am. v. Ins. Co. of N. Am.*, No. DC-18-11896 (Tex. Dist. Ct. filed Aug. 24, 2018) filed on April 5, 2019.  A true and correct copy of that document is attached as Exhibit D. The complaint lists several insurers who it is pled issued liability policies to the Boy Scouts.

6.      Based on the information contained in the pleadings attached to this declaration as Exhibits B, C, and D, and the representations made in the Declaration of Jessica C. K. Boelter (Exhibit B to the Boy Scouts' Application), I compiled a chart demonstrating the overlap between the insurers listed in Boelter's declaration and those in the pleadings filed in insurance coverage actions involving the Boy Scouts.  That document is attached as Exhibit E.

7.      I have reviewed Plaintiffs' First Set of Requests for Production to Defendants Insurance Company of North America and Century Indemnity Company served in *Boy Scouts of Am. v. Ins. Co. of N. Am.*, No. DC-18-11896 (Tex. Dist. Ct. filed Aug. 24, 2018) served on December 27, 2018.  A true and correct copy of that document is attached as Exhibit F.  In that document, the Boy Scouts of America sought reinsurance communications from Century:

All Documents or Communications between Century and the Reinsurers of the Subject Insurance Policies involving the Sexual Abuse Claims, including but not limited to any submissions in connection with arbitration referenced in Civil Action No. 18-12041 in the United States District Court for the District of Massachusetts, and any submissions in the aforementioned civil action.

. . .

All Documents and Communications between [Insurance Company of North America, Century Indemnity Company, and/or any and related entity] and any Reinsurer(s) relating to: (a) Plaintiffs; (b) the Subject Insurance Policies; (c) the Sexual Abuse Claims; or (d) Plaintiffs' claims for insurance coverage under the Subject Insurance Policies (whether or not regarding the Sexual Abuse Claims).

8.      I have reviewed Plaintiffs' First Set of Interrogatories to Defendants Insurance Company of North America and Century Indemnity Company served in *Boy Scouts of Am. v. Ins. Co. of N. Am.*, No. DC-18-11896 (Tex. Dist. Ct. filed Aug. 24, 2018).  A true and correct copy of that document is attached as Exhibit G.  In those interrogatories, the Boy Scouts call for Century to:

Identify all litigation involving Century and the Reinsurers of the Subject Insurance Policies involving the Sexual Abuse Claims, including but not limited to (1) the arbitration between Century and the Reinsurers, and (2) Civil Action No. 18-12041 in the United States District Court for the District of Massachusetts.

Identify all communications with the Reinsurers regarding the Sexual Abuse Claims between 2008 - present.

I declare under pain and penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated:  April 14, 2020                          Respectfully Submitted,


                                                By:  */s/ Janine Panchok-Berry*

                                                JANINE PANCHOK-BERRY

# EXHIBIT A



SERVICES

# Insurance and Financial Services

Sidley has built a dedicated, international team of lawyers with intimate knowledge of and appreciation for the insurance and reinsurance industry, and its unique issues and challenges. Our Insurance and Financial Services group has nearly four decades of experience and a team of 85 lawyers devoted exclusively to providing a full range of transactional, regulatory and dispute resolution services to the industry. Recognized as a leading insurance law firm by *Trading Risk, Reactions, Chambers USA* and *U.S. News – Best Lawyers®*, among others, Sidley offers clients a comprehensive understanding of the principles, customs and practices unique to the industry.

While many of the transactions we handle on behalf of insurance clients involve sophisticated capital markets structures, our advice is grounded in our intimate knowledge of insurance industry regulation. Sidley litigators also serve the insurance industry, representing clients in reinsurance or retrocessional claims, consumer class actions, complex coverage cases, multi-jurisdictional direct claims, and white collar criminal defense and investigations.

### Named Insurance "Law Firm of the Year" for 2018 at the *Reactions* North America Awards for the Second Consecutive Year

Examples of experience that demonstrate Sidley's depth and breadth in the insurance industry include representation of:

- Apollo Global Management in its $2.6 billion acquisition of publicly traded Aspen Insurance Holdings.

- Cigna Corporation in the insurance and healthcare regulatory matters associated with its acquisition of publicly traded Express Scripts Holding Company for approximately $67 billion.

- Athene Holding in its $1.24 billion initial public offering.

- Japanese insurer Zenkyoren on the transfer of a combined $2.375 billion of earthquake risk through the Nakama Re series of catastrophe bonds (2014-2018).

- Validus Reinsurance in its successful challenge (the first ever) to the Internal Revenue Service's "cascading excise tax" theory, in which the D.C. District Court ruled that the U.S. federal excise tax does not apply to retrocession contracts between foreign reinsurers.

Regular clients of our group include many of the largest insurance and reinsurance companies, brokers, banks, investment banking firms and regulatory agencies for which we provide regulatory, corporate, securities, mergers and acquisitions, securitization, derivatives, tax, reinsurance dispute resolution, class action defense, and other legal services.

Sidley lawyers have extensive experience in a wide range of domestic and international insurance and reinsurance transactions. We handle traditional corporate and financing transactions such as mergers, acquisitions, divestitures, joint ventures, reorganizations and restructurings, debt and equity financings, and complex investments. Our lawyers also structure and execute highly innovative transactions such as redundant life reserve (XXX and AXXX) and embedded value securitizations; natural catastrophe and catastrophic mortality-linked bonds, derivatives and sidecars; and the securitization of funding agreements, life and annuity contracts, and other insurance products.

With regard to dispute resolution, Sidley offers one of the few practices in the country dedicated to defending the insurance industry against the expanding array of class action claims, including retained asset accounts, vanishing premium, annuity interest crediting, modal premium, industrial life, premium GAP, annuity elder care, 401(k) "revenue sharing", burial insurance, juvenile smoking, annuity elder care suitability, and credit insurance refunds. We also represent insurers, brokers and company executives in responding to investigations, insurance department inquiries and enforcement actions, congressional hearings, and other governmental inquiries.

Sidley lawyers have extensive knowledge and experience in nearly all aspects of insurance regulation, as well as the impact of statutory accounting and rating implications on the insurance industry. We provide advice on a broad range of insurance regulatory issues such as the production of insurance, market conduct compliance, regulation of insurance intermediaries (producers, third party administrators, managing general agents and reinsurance brokers), holding company regulation, credit for reinsurance requirements, invested asset regulation, overall solvency standards, risk-based and other capital requirements, and the regulation of captive insurers.

## CONTACTS

**Mark B. Blocker**
Partner
mblocker@sidley.com
+1 312 853 6097

**Ellen M. Dunn**
Partner
edunn@sidley.com
+1 212 839 8540

**Michael P. Goldman**
Partner
mgoldman@sidley.com
+1 312 853 4665

**Jonathan L. Freedman**
Partner
jfreedman@sidley.com
+1 212 839 6782

**Jonathan J. Kelly**
Partner
jjkelly@sidley.com
+1 212 839 5835

**Martin Membery**
Partner
mmembery@sidley.com
+44 20 7360 3614

**Michael J. Pinsel**
**Partner**
mpinsel@sidley.com
+1 312 853 7103

**Perry J. Shwachman**
**Partner**
pshwachman@sidley.com
+1 312 853 7061

**William M. Sneed**
**Partner**
wsneed@sidley.com
+1 312 853 7899

**Amanda M. Todd**
**Partner**
atodd@sidley.com
+1 312 853 7572

Attorney Advertising - Sidley Austin LLP, One South Dearborn, Chicago, IL 60603. + 1 312 853 7000. Sidley and Sidley Austin refer to Sidley Austin LLP and affiliated partnerships as explained at www.sidley.com/disclaimer. Prior results do not guarantee a similar outcome. ©2017 Sidley Austin LLP.

# EXHIBIT B

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
CALENDAR: 04
PAGE 1 of 16
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| NATIONAL SURETY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOY SCOUTS OF AMERICA; CHICAGO | ) | No. _____ |
| AREA COUNCIL, INC. BOY SCOUTS OF | ) | |
| AMERICA; CHICAGO AREA COUNCIL, | ) | |
| BOY SCOUTS OF AMERICA, INC.; | ) | |
| ALLIANZ INSURANCE COMPANY n/k/a | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| COMPANY; INSURANCE COMPANY OF | ) | |
| NORTH AMERICA; TRAVELERS | ) | |
| CASUALTY AND SURETY COMPANY, | ) | |
| INC. f/n/a AETNA CASUALTY & SURETY | ) | |
| COMPANY; FIRST STATE INSURANCE | ) | |
| COMPANY; TWIN CITY FIRE INSURANCE | ) | |
| CO.; DANIELSON NATIONAL INSURANCE | ) | |
| COMPANY f/n/a MISSION NATIONAL | ) | |
| INSURANCE COMPANY; LANDMARK | ) | |
| INSURANCE COMPANY; COLUMBIA | ) | |
| CASUALTY COMPANY; INTERNATIONAL | ) | |
| INSURANCE GROUP, INC.; ARROWOOD | ) | |
| INDEMNITY COMPANY f/n/a ROYAL | ) | |
| INDEMNITY COMPANY; FEDERAL | ) | |
| INSURANCE COMPANY; UNITED STATES | ) | |
| FIRE INSURANCE COMPANY, INC.; UTICA) | | |
| MUTUAL INSURANCE COMPANY; | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA; PACIFIC | ) | |
| EMPLOYERS INSURANCE COMPANY; | ) | |
| HARBOR INSURANCE COMPANY; ST. | ) | |
| PAUL FIRE AND MARINE INSURANCE | ) | |
| COMPANY; CHUBB CUSTOM INSURANCE) | | |
| COMPANY; ST. PAUL SURPLUS LINES | ) | |
| INSURANCE COMPANY; LEXINGTON | ) | |
| INSURANCE COMPANY; JOHN DOE | ) | |
| INSURERS 1-50; JOHN DOE; JOHN DOE 2; | ) | |
| JOHN DOE 3; JOHN DOE 4; JOHN DOE 5; | ) | |
| JOHN DOE 6; JOHN DOE 7; JOHN DOE 8; | ) | |
| JOHN DOE 9; JOHN DOE 10; JOHN DOE 11; ) | | |
| JOHN DOE 12; JOHN DOE 13; JOHN DOE | ) | |

14; JOHN DOE 15; JOHN DOE 16; JOHN     )
DOE 17; AND JOHN DOE 18,          )
                                       )

       Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff National Surety Corporation ("National Surety") alleges the following:

## INTRODUCTION AND SUMMARY

1.      National Surety issued excess liability policies to Defendant Boy Scouts of

America for the policy periods January 1, 1983 to January 1, 1984, and January 1, 1984 to

January 1, 1985. Defendants Chicago Area Council, Inc. Boy Scouts of America and Chicago

Area Council, Boy Scouts of America, Inc. (collectively, "Chicago Area Council") are additional

named insureds under the policies. Boy Scouts of America and Chicago Area Council assert

rights under National Surety's policies and are referred to, together, herein as the "Insured."

2.      The Insured has been sued by individuals alleging that the Insured intentionally

permitted, failed to prevent, and concealed alleged sexual abuse by scout leader Thomas Hacker

("Hacker"), in the lawsuit styled *John Doe et al. v. Thomas Hacker et al.*, pending in the Circuit

Court of Cook County, Illinois, Law Division, originally as Case No. 2012-L-013569, and since

assigned the new Case No. 2017-L-007900 (the "Underlying Lawsuits").

3.      The sexual abuse in the Underlying Lawsuits is alleged to have occurred between

1980 and 1988 with respect to a scout troop located in Burbank, Illinois.

4.      Boy Scouts of America is alleged to have intentionally concealed information

relating to the widespread problem of sexual abuse by scout leaders since as early as 1919.

5.      National Surety brings this action to obtain declaratory relief on coverage issues

related to its excess liability policies with respect to the Underlying Lawsuits. National Surety

seeks a declaration that no coverage exists under its policies with respect to the Underlying

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 2 of 16

2

Lawsuits, and that National Surety owes no duty to defend, pay defense costs, or indemnify the Insured, and for other relief outlined herein.

6.      The Insured has demanded payment from National Surety on the policies.  On information and belief, the Insured disagrees with National Surety regarding coverage interpretations on these issues.

7.      For this reason, National Surety requests coverage interpretations by this Court in a declaratory judgment action.

### PARTIES

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 3 of 16

8.      Plaintiff National Surety is a corporation organized under the laws of the State of Delaware with its principal place of business and statutory home office in Illinois.  It is now and was at all times relevant to this Complaint licensed or authorized to issue insurance policies in the State of Illinois.

9.      On information and belief, Defendant Boy Scouts of America is a congressionally chartered corporation authorized to do business in Illinois.  Boy Scouts of America asserts rights under policies issued by National Surety and other Insurer Defendants in this action.

10.     On information and belief, Defendant Chicago Area Council is a not-for-profit corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.  Chicago Area Council asserts rights under policies issued by National Surety and other Insurer Defendants in this action.

11.     On information and belief, a number of other liability insurers issued policies to the Insured during the 1980 to 1988 time period.  These insurers are listed below.

12.     On information and belief, Allianz Insurance Company, now known as Allianz Global Risks US Insurance Company ("Allianz"), is a corporation organized under the laws of

the State of Illinois with its principal place of business in Chicago, Illinois. On information and belief, Allianz issued a liability policy to the Insured covering the time period January 1, 1980 to January 1, 1981.

13.       On information and belief, Defendant Insurance Company of North America ("INA") is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. On information and belief, INA issued liability policies to the Insured covering the time period January 1, 1980 to March 1, 1988.

14.       On information and belief, Travelers Casualty and Surety Company, Inc. (f/n/a Aetna Casualty & Surety Company) ("Travelers") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. On information and belief, Travelers issued a liability policy to the Insured covering the time period January 1, 1980 to January 1, 1981.

15.       On information and belief, Transit Casualty Insurance Co. ("Transit") was a corporation organized under the laws of the State of Missouri with its principal place of business in Los Angeles, California. On information and belief, Transit was declared insolvent and the subsequent receivership has been closed. Accordingly, Transit is not named as a party herein.

16.       On information and belief, First State Insurance Company ("First State") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. On information and belief, First State issued a liability policy to the Insured covering the time period January 1, 1981 to January 1, 1983.

17.       On information and belief, Twin City Fire Insurance Co. ("TC Fire") is a corporation organized under the laws of the State of Indiana with its principal place of business

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 4 of 16

4

in Hartford, Connecticut. On information and belief, TC Fire issued a liability policy to the Insured covering the time period January 1, 1982 to January 1, 1983.

18.    On information and belief, Danielson National Insurance Company (f/n/a Mission National Insurance Company) ("Danielson") is a corporation organized under the laws of the State of California with its principal place of business in San Diego, California. On information and belief, Danielson issued a liability policy to the Insured covering the time period January 1, 1984 to January 1, 1985.

19.    On information and belief, Landmark Insurance Company ("Landmark") was a corporation organized under the laws of the State of California with its principal place of business in Boston, Massachusetts. On information and belief, Landmark has merged with National Union Fire Insurance Company of Pittsburgh, PA, the latter being the surviving entity. On information and belief, Landmark issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

20.    On information and belief, Columbia Casualty Company ("Columbia") is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. On information and belief, Columbia issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

21.    On information and belief, Highlands Insurance Company ("Highlands") was a corporation organized under the laws of the State of Texas with its principal place of business in Lawrenceville, New Jersey. On information and belief, Highlands is currently in receivership. Accordingly, it is not named as a party herein.

22.    On information and belief, International Insurance Group, Inc. ("IIG"), is a corporation organized under the laws of the State of Delaware. On information and belief, IIG

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 5 of 16

5

issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

23.    On information and belief, Arrowood Indemnity Company (f/n/a Royal Indemnity Company) ("Arrowood") is a corporation organized under the laws of the State of Delaware with its principal place of business in Charlotte, North Carolina. On information and belief, Arrowood issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

24.    On information and belief, Federal Insurance Company ("Federal") is a corporation organized under the laws of the State of Pennsylvania. On information and belief, Federal issued a liability policy to the Insured covering the time period January 1, 1985 to March 1, 1986.

25.    On information and belief, United States Fire Insurance Company, Inc. ("U.S. Fire") is a corporation organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey. On information and belief, U.S. Fire issued liability policies to the Insured covering the time period March 1, 1986 to March 1, 1987 and March 1, 1987 to March 1, 1988.

26.    On information and belief, Utica Mutual Insurance Company ("Utica") is a corporation organized under the laws of the State of New York with its principal place of business in New Hartford, New York. On information and belief, Utica issued a liability policy to the Insured covering the time period March 1, 1986 to March 1, 1987.

27.    On information and belief, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in New York, New York. On information and belief,

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 6 of 16

National Union issued liability policies to the Insured covering the time periods March 1, 1986 to March 1, 1987, June 3, 1986 to March 1, 1987, and March 1, 1987 to March 1, 1988.

28.    On information and belief, Pacific Employers Insurance Company ("Pacific Employers") is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.  On information and belief, Pacific Employers issued a liability policy to the Insured covering the time period March 1, 1986 to March 1, 1987.

29.    On information and belief, Harbor Insurance Company ("Harbor") is a corporation organized under the laws of the State of Oklahoma with its principal place of business in Tulsa, Oklahoma.  On information and belief, Harbor issued a liability policy to the Insured covering the time period May 20, 1986 to March 1, 1987.

30.    On information and belief, St. Paul Fire and Marine Insurance Company ("St. Paul Fire") is a corporation organized under the laws of the State of Minnesota with its principal place of business in St. Paul, Minnesota.  On information and belief, St. Paul Fire issued a liability policy to the Insured covering the time period May 28, 1986 to March 1, 1987.

31.    On information and belief, Chubb Custom Insurance Company ("Chubb") is a corporation organized under the laws of the State of Delaware with its principal place of business in Warren, New Jersey.  On information and belief, Chubb issued a liability policy to the Insured covering the time period June 3, 1986 to March 1, 1987.

32.    On information and belief, St. Paul Surplus Lines Insurance Company ("St. Paul Surplus") is a corporation organized under the laws of State of Delaware with its principal place of business in St. Paul, Minnesota.  On information and belief, St. Paul Surplus issued a liability policy to the Insured covering the time period March 1, 1987 to March 1, 1988.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 7 of 16

7

33.    On information and belief, Lexington Insurance Company ("Lexington") is a corporation organized under the laws of the State of Delaware with its principal place of business in Boston, Massachusetts. On information and belief, Lexington issued a liability policy to the Insured covering the time period March 1, 1987 to March 1, 1988.

34.    Defendants John Doe Insurers 1-50 are insurers, unknown by name to Plaintiff at this time, that issued liability insurance policies to the Insured. Plaintiff names these John Doe Insurers insofar as they may be alleged to be necessary parties, for the purpose of binding them to the relief sought herein. Plaintiff will dismiss this action as to any John Doe Insurer that is not necessary to the relief sought herein.

35.    The declarations National Surety seeks in this case may impact the coverage obligations of the Insured's liability insurers other than National Surety. For this reason, National Surety has joined to this action the Insured's other liability insurers for the years in which the sexual abuse is alleged to have occurred, 1980 to 1988.

36.    Defendants John Doe – John Doe 18 are plaintiffs in the Underlying Lawsuits. On information and belief, John Doe – John Doe 18 are domiciled in the State of Illinois. Defendants John Doe – John Doe 18 are joined to bind them to the judgment in this case.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 8 of 16

## JURISDICTION AND VENUE

37.    The Court has personal jurisdiction over defendants pursuant to 735 ILCS 5/2-209 because they are domiciled and/or licensed to do business and/or are doing business in the State of Illinois. In addition, the Court has personal jurisdiction over the out-of-state insurer defendants pursuant to 735 ILCS 5/2-209 because each such defendant is or was transacting business in the State of Illinois within the time periods relevant to the causes of action stated herein and contracted to insure persons, property, or risks located in the State of Illinois.

38.    Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 to 103 because it is a county in which multiple defendants are "doing business." Further, Plaintiff's causes of action arise out of events that occurred in Cook County with respect to a Boy Scout troop located in Cook County, and the Underlying Lawsuits are all filed in the Circuit Court of Cook County, Law Division.

## NATIONAL SURETY POLICIES

39.    National Surety issued to Boy Scouts of America a Blanket Excess Liability Policy, No. XLX1484309, in effect for the policy period January 1, 1983 to January 1, 1984 (hereinafter, the "1983-1984 Policy"). A copy of the 1983-1984 Policy is attached hereto as **Exhibit A**.

40.    National Surety issued to Boy Scouts of America a Blanket Excess Liability Policy, No. XLX1484392, in effect for the policy period January 1, 1984 to January 1, 1985 (hereinafter, the "1984-1985 Policy"). A copy of the 1984-1985 Policy is attached hereto as **Exhibit B**. Together, the 1983-1984 Policy and the 1984-1985 Policy are referred to herein as the "National Surety Policies."

41.    The National Surety Policies are "follow form" excess policies that incorporate, with certain listed exceptions, the terms, conditions, and exclusions of underlying policies issued by INA to Boy Scouts of America for the 1983-1984 and 1984-1985 years, respectively.

42.    Subject to the stated limits of liability, terms, conditions, and exclusions, the National Surety Policies provide indemnity coverage for "occurrence[s]" which take place during the policy period. An "occurrence" is defined in pertinent part as an "accident . . . which results in Personal Injury . . . neither expected nor intended from the standpoint of the insured."

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 9 of 16

9

43.    The National Surety Policies do not provide for a duty to defend, but defense costs may be reimbursable if incurred with the consent of National Surety, but only in the proportion that the Insured and National Surety are responsible for the loss.

## UNDERLYING LAWSUITS ALLEGATIONS

44.    John Doe – John Doe 18 assert claims against the Insured in the Underlying Lawsuits arising out of the alleged sexual abuse of John Doe – John Doe 18 by Thomas Hacker ("Hacker"). A copy of the Third Amended Complaint in the Underlying Lawsuits is attached hereto as **Exhibit C**.

45.    John Doe – John Doe 18 allege that the Insured knew of Hacker's predatory tendencies, and of the widespread problem of sexual abuse by scout masters, prior to Hacker's alleged abuse of John Doe – John Doe 18. (Third Amended Complaint pp. 12-35.)

46.    John Doe – John Doe 18 allege that, despite this knowledge, the Insured, through various acts and omissions, permitted, failed to take steps to prevent, and concealed Hacker's alleged sexual abuse of John Doe – John Doe 18. (Third Amended Complaint pp. 35-499.)

47.    By way of summary, John Doe – John Doe 18 allege as follows:

(a) "Since approximately 1919, BOY SCOUTS OF AMERICA has maintained a group of files known variously as the red files, perversion files, or ineligible volunteer files (IV Files)." (Third Amended Complaint p. 27, ¶ 6.)

(b) "The IV Files . . . document multiple instances of child molesters volunteering with scouting, molesting a child, being reported to BSA, but then re-gaining entry into scouting." (Third Amended Complaint p. 20, ¶ 72.)

(c) "BSA's 'Ineligible Volunteer Files' contained a file for Mr. Hacker opened in 1970, yet he was able and permitted by BSA to register with the Chicago Area Council in

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 10 of 16

the 1980s and was able to participate in Scouting." (Third Amended Complaint p. 36, ¶ 124.)

(d) "BSA knew or should have known that its 'ineligible volunteers' system of keeping track of pedophiles infiltrating its ranks and attempting to eliminate them did not function as it was intended, was flawed, and in many cases ineffective. . . . BSA did nothing to educate or inform Scouts and their parents of the enormity of the pedophile problem, nor did BSA take action to correct its screening and/or education system." (Third Amended Complaint p. 36, ¶ 125.)

(e) "Instead of addressing the problem by informing parents and scouts of the issue, or by implementing safety programs to prevent abuse, BSA instead concealed the problem by employing a public relations department to combat negative stories about sexual abuse in Scouting." (Third Amended Complaint pp. 23-24, ¶ 101.)

(f) "After the BOY SCOUTS OF AMERICA learned that Thomas Hacker molested Chicago Area Council scouts, the BOY SCOUTS OF AMERICA concealed the fact, in the 1970s, it had previously identified Hacker as a child molester and/or abuser but still allowed him to register with the Chicago Area Council." (Third Amended Complaint pp. 43-44, ¶ 151.)

48.    John Doe – John Doe 18 seek punitive damages against the Insured as a result of the Insured's alleged intentional conduct and fraudulent concealment.  (Third Amended Complaint pp. 23-26.)

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 11 of 16

11

## FIRST CAUSE OF ACTION

**Declaration That No Coverage Exists Under National Surety's Policies, And That National Surety Has No Duty To Indemnify The Insured, Because The Insured's Alleged Conduct Is Not An "Accident."**

49.    National Surety incorporates by reference in this First Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

50.    An "occurrence" covered under National Surety's Policies is defined to require an "accident."

51.    The Underlying Lawsuits allege that the Insured knew that Hacker was a predator, and of the widespread problem of sexual abuse by scout masters, and, despite this knowledge, permitted, failed to take steps to prevent, and concealed Hacker's sexual abuse of John Doe – John Doe 18.

52.    The alleged conduct of the Insured in the Underlying Lawsuits does not constitute an "accident."

53.    Accordingly, no coverage exists for the Underlying Lawsuits under National Surety's Policies, and National Surety owes no duty to indemnify the Insured.

WHEREFORE, Plaintiff prays for a declaration that no coverage exists under National Surety's Policies, and that National Surety owes no duty to indemnify the Insured, because the Insured's alleged conduct is not an accident.

## SECOND CAUSE OF ACTION

**Declaration That No Coverage Exists Under National Surety's Policies, And That National Surety Has No Duty To Indemnify The Insured, Because The Insured's Alleged Conduct Was Expected Or Intended.**

54.    National Surety incorporates by reference in this Second Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 12 of 16

55.     An "occurrence" covered under National Surety's Policies does not include acts that are expected or intended from the standpoint of the insured.

56.     The Underlying Lawsuits allege that the Insured knew that Hacker was a predator, and of the widespread problem of sexual abuse by scout masters, and, despite this knowledge, permitted, failed to take steps to prevent, and concealed Hacker's alleged sexual abuse of John Doe – John Doe 18.

57.     The alleged conduct of the Insured in the Underlying Lawsuits was expected or intended.

58.     Accordingly, no coverage exists for the Underlying Lawsuits under National Surety's Policies, and National Surety owes no duty to indemnify the Insured.

WHEREFORE, Plaintiff prays for a declaration that no coverage exists under National Surety's Policies, and that National Surety owes no duty indemnify the Insured, because the Insured's alleged conduct was expected or intended.

### THIRD CAUSE OF ACTION

**Declaration That No Coverage Exists Under National Surety's Policies For Punitive Damages, And That National Surety Has No Duty To Indemnify The Insured With Respect To Punitive Damages.**

59.     National Surety incorporates by reference in this Third Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

60.     The Underlying Lawsuits seek punitive damages for the Insured's conduct.

61.     Punitive damages are not insurable.

62.     Accordingly, no coverage exists for punitive damages sought in the Underlying Lawsuits, and National Surety owes no duty to indemnify the Insured with respect to punitive damages.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 13 of 16

13

WHEREFORE, Plaintiff prays for a declaration that no coverage exists under National Surety's Policies for punitive damages, and that National Surety owes no duty to indemnify the Insured with respect to punitive damages.

## FOURTH CAUSE OF ACTION

**Declaration That Coverage Is Not Available For Underlying Lawsuits In Which Personal Injury Does Not Take Place During The Policy Period.**

63.    National Surety incorporates by reference in this Fourth Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

64.    The National Surety Policies require – for there to be coverage – that Personal Injury occur during the applicable policy period.  There is, accordingly, no coverage under National Surety's Policies for Personal Injury which takes place outside of the applicable policy periods.

WHEREFORE, Plaintiff prays for a declaration that no coverage exists for the Underlying Lawsuits in which there is no personal injury during the policy period, and that National Surety has no duty to indemnify the Insured with respect to the Underlying Lawsuits in which there is no personal injury during the policy periods.

## FIFTH CAUSE OF ACTION

**Declaration That National Surety Has No Duty To Provide Coverage Or Indemnify The Insured Until Underlying Insurance Is Exhausted.**

65.    National Surety incorporates by reference in this Fifth Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

66.    The National Surety Policies are excess policies that respond only when underlying insurance is exhausted.

67.    On information and belief, underlying insurance is not exhausted.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 14 of 16

68. On information and belief, certain of the Insured's other insurers are insolvent, and National Surety's policies would not respond until payments are made exhausting such underlying policies.

WHEREFORE, Plaintiff prays for a declaration that it has no duty to provide coverage or indemnify the Insured unless and until underlying insurance is exhausted.

## SIXTH CAUSE OF ACTION

**Declaration That National Surety Has No Duty To Defend Or Reimburse Defense Costs.**

69. National Surety incorporates by reference in this Sixth Cause of Action all allegations in this Complaint, including Exhibits attached hereto.

70. The National Surety Policies do not provide for a duty to defend.

71. No coverage exists under National Surety's Policies because the Insured's conduct was not an "accident," as set forth in National Surety's First Cause of Action.

72. No coverage exists under National Surety's Policies because the Insured's conduct was expected or intended, as set forth in National Surety's Second Cause of Action.

73. No coverage exists under National Surety's Policies with respect to punitive damages, as set forth in National Surety's Third Cause of Action.

74. No coverage exists under National Surety's Policies with respect to occurrences taking place outside the policy period, as set forth in National Surety's Fourth Cause of Action.

75. National Surety has no duty to provide coverage unless and until underlying insurance is exhausted, as set forth in National Surety's Fifth Cause of Action.

76. Because no coverage exists under National Surety's Policies, National Surety has no obligation to reimburse defense costs.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 15 of 16

WHEREFORE, Plaintiff prays for a declaration that National Surety has no duty to defend the Insured or reimburse defense costs, consistent with the relief sought in the First through Fifth Causes of Action set forth above.

## SEVENTH CAUSE OF ACTION

**Declaration Of National Surety's Rights And Obligations Under The Policies.**

77.    National Surety incorporates by reference in this Seventh Cause of Action all allegations in this Complaint, including Exhibits attached thereto.

78.    To the extent not addressed in the preceding Causes of Action, National Surety seeks a declaration concerning its rights and obligations under policies it issued to Boy Scouts of America and/or Chicago Area Council.

WHEREFORE, Plaintiff prays for a declaration establishing its rights and obligations under policies it issued to Boy Scouts of America and/or Chicago Area Council.

ELECTRONICALLY FILED
11/9/2017 3:08 PM
2017-CH-14975
PAGE 16 of 16

Dated:  November 9, 2017

Respectfully submitted,

/s/ Todd C. Jacobs
Todd C. Jacobs (#6201358)
Melissa A. Carrington (#6305591)
Jeremiah D. Junker (*pro hac* pending)
BRADLEY RILEY JACOBS PC
Firm No. 61684
320 W. Ohio Street, Suite 3W
Chicago, IL 60654
Phone: (312) 281-0295
Fax:    (319) 363-9824
Email: tjacobs@bradleyriley.com
        mcarrington@bradleyriley.com
        jjunker@bradleyriley.com

ATTORNEYS FOR THE PLAINTIFF

# EXHIBIT C

FILED
DALLAS COUNTY
6/5/2018 3:51 PM
FELICIA PITRE
DISTRICT CLERK

Marissa Pittman

CAUSE NO. _DC-18-07313_

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, | § | IN THE DISTRICT COURT OF |
| CONNECTICUT YANKEE COUNCIL, | § | |
| SPIRIT OF ADVENTURE COUNCIL, | § | |
| ALOHA COUNCIL, CASCADE PACIFIC | § | |
| COUNCIL | § | |
| | § | |
| PLAINTIFFS | § | |
| | § | |
| VS. | § | DALLAS COUNTY, TEXAS |
| | § | |
| THE HARTFORD ACCIDENT | § | |
| AND INDEMNITY CO., FIRST | § | |
| STATE INSURANCE CO. | § | |
| | § | |
| DEFENDANTS | § | ____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Boy Scouts of America, Connecticut Yankee Council, Spirit of Adventure Council, Aloha Council, and Cascade Pacific Council (collectively, "BSA" or "Plaintiffs") hereby file this Original Petition against Defendants The Hartford Accident and Indemnity Company and First State Insurance Co. (collectively, "Hartford" or "Defendants") and would respectfully show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Discovery in this matter is intended to be conducted under Level 2, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

### II.    PARTIES

2.    Plaintiff BSA is a congressionally chartered organization authorized to do business in Texas, and has its headquarters at 1325 Walnut Hill Lane, Irving, Texas 75015.

3.       Plaintiff Connecticut Yankee Council is a non-profit corporation organized under the laws of the State of Connecticut, and has its headquarters at 60 Wellington Road, Milford, Connecticut 06460.

4.       Plaintiff Spirit of Adventure Council is a non-profit corporation organized under the laws of the State of Massachusetts, and has its headquarters at 600 W. Cummings Park, Suite 275, Woburn, Massachusetts 01801.

5.       Plaintiff Aloha Council is a non-profit corporation organized under the laws of the State of Hawaii, and has its headquarters at 42 Puiwa Road, Honolulu, Hawaii 96817.

6.       Plaintiff Cascade Pacific Council is a non-profit corporation organized under the laws of the State of Oregon, and has its headquarters at 2145 SW Natio Pkwy, Portland, Oregon 97201.

7.       Defendant The Hartford Accident and Indemnity Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut. Defendant Hartford Accident and Indemnity Company may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

8.       Defendant First State Insurance Company is a corporation organized under the laws of the State of Delaware with its principal place of business in Massachusetts. Defendant First State Insurance Company may be served with process by serving CT Corporation System, 1999 Bryan Street Suite 900, Dallas TX 75201-3136.

### III.       JURISDICTION & VENUE

9.       The foregoing allegations are incorporated herein by reference.

10.       This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

11. Plaintiff seeks monetary relief over $1,000,000.

12. Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County at the time the cause of actions accrued.

## IV.    BACKGROUND FACTS

### A.    BSA and its Insurance Coverage Program

13. The Boy Scouts of America is one of the nation's largest and most prominent values-based youth development organizations, with more than 2.4 million youth participants and nearly one million adult volunteers. BSA was founded in 1910, and since then, more than 110 million Americans have been participants in BSA programs at some time.

14. BSA operates traditional scouting by chartering local organizations, such as churches, clubs, civic associations, or educational organizations, to implement the scouting program for youth within their communities. Units are led entirely by volunteers appointed by the chartering organization, who are supported by local councils.

15. To insure its many activities and local councils throughout the country, BSA maintains a comprehensive, broad insurance program. From approximately 1970 to 1988, BSA purchased several general liability and umbrella and/or excess liability insurance policies from Hartford.

### B.    The Underlying Lawsuits

16. Over the past several years, BSA has been subject to numerous claims and lawsuits in which the plaintiffs allege they had been sexually abused while a participant in various BSA programs (the "Underlying Lawsuits").

17. The Underlying Lawsuits allege abuse during various and multiple periods of time and in various and multiple geographic locations.

18. The Underlying Lawsuits generally allege personal injury due to sexual abuse and allege, *inter alia*, that BSA and BSA local councils were negligent in failing to prevent the sexual abuse.

19. The Underlying Lawsuits contain allegations that plaintiffs suffered and continue to suffer from bodily injury, including but not limited to severe and debilitating physical, mental and emotional injury, pain and suffering, physical and emotional trauma, and present psychological damage.

**C.    BSA's Coverage Dispute with Hartford Regarding the Underlying Lawsuits**

20. Hartford issued several general liability and umbrella and/or excess liability insurance policies to BSA in the schedule attached hereto as <u>Exhibit A</u> (collectively, the "Hartford Policies").

21. The Hartford primary insurance policies provide that Hartford will pay "all sums that BSA is obligated to pay as damages because of personal injury [which includes bodily injury] to which the insurance applies, caused by an occurrence."

22. The Hartford primary insurance policies also provide that Hartford has a duty to defend BSA in any suit alleging personal injury, and any defense costs incurred do not reduce the limits of liability under the Hartford primary insurance policies.

23. The Harford excess policies similarly provide that Hartford will indemnify BSA for all sums which BSA shall become legally obligated to pay as damages and expenses by reason of liability because of personal injury (which includes bodily injury) caused by an occurrence which takes place during the policy period anywhere in the world.

24.   The Hartford excess policies also provide that Hartford has an obligation to reimburse BSA for any defense costs in connection with any suit alleging personal injury.

25.   Several of the Underlying Lawsuits implicate coverage for years that Hartford issued insurance coverage.

26.   BSA timely provided Hartford with notice of each of the Underlying Lawsuits that implicated a Hartford Policy.

27.   Hartford has nevertheless refused and continues to refuse to satisfy its coverage obligations, including by denying coverage for both defense costs and indemnity payments associated with certain of the Underlying Lawsuits. Hartford has asserted several coverage positions to BSA to deny that it owes an obligation to pay defense and indemnity payments for the Underlying Lawsuits.

28.   First, Hartford has taken the position that all the claims for sexual abuse alleged in the multitude of Underlying Lawsuits throughout the country involving various victims are the result of a single occurrence. Hartford asserts the injuries alleged in the Underlying Lawsuits were caused by BSA's failure to warn parents and guardians that Scouts might be abused. Based on this one "occurrence" theory, Hartford contends that once a policy's per-occurrence limits are exhausted by any claim, it has no further responsibility under those policies for claims relating to sexual abuse. Hartford has taken this position despite the fact that it is contrary to its policy language and well-settled law.

29.   Second, despite issuing certain policies of insurance to BSA and despite Hartford having produced to BSA copies of said policies, Hartford has also taken the position that certain policies have no force and effect, and do not exist. The policies, however, contain declarations

pages showing policy periods and limits of insurance, as well as policy jackets showing the policy terms, conditions, and exclusions.

30.     Third, several of the Hartford Policies either do not contain aggregate limits of liability or contain aggregate limits of liability that are applicable *only* to products completed operations liability or occupational diseases of employees of BSA.     Harford nevertheless contends these policies that include only aggregate limits for products completed operations or occupational disease claims also contain aggregate limits for sexual abuse claims.  Despite the plain language of the policies, Hartford has taken the position that several of the policies with no aggregate limits are exhausted.

31.     Fourth, BSA renewed several of the Hartford Policies[1]  so that the policies covered two, separate years.  Despite the payment of substantial premiums for those renewals, Hartford has taken the position that only a single per occurrence limit of liability is available to BSA for the two-year period.

32.     Due to Hartford's failure to pay amounts owed under the Hartford Policies, BSA has incurred and will continue to incur defense costs to defend itself in the Underlying Lawsuits, and BSA has made and will continue to make indemnity payments to settle the Underlying Lawsuits, all while Hartford is obligated to provide coverage under its policies.

## V.     CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment

33.     The foregoing allegations are incorporated herein by reference.

---

[1]  Hartford primary policy, No. 10-CA-43303, policy period January 1, 1972 – January 1, 1973 was renewed to extend through January 1, 1974; Hartford primary policy, No. 10-CA-43304, policy period January 1, 1972 – January 1, 1973 was renewed to extend through January 1, 1974; Hartford primary policy, No. 10-CA-43324, policy period January 1, 1974 – January 1, 1975 was renewed to extend through January 1, 1976; Hartford excess policy, No. 10-HUA-43302, policy period January 1, 1972 – January 1, 1973 was renewed to extend through January 1, 1974.

34.    BSA brings this action pursuant to TEX. CIV. PRAC. & REM. CODE §37.004.

35.    BSA seeks a declaration that each sexual abuse claim against BSA constitutes an "occurrence" under the Hartford Policies.

36.    BSA seeks a declaration that each of the Hartford Policies are in full force and effect.

37.    BSA seeks a declaration that BSA's renewal of certain Hartford Policies entitles it to separate per-occurrence limits of liability for each year covered by the relevant Hartford Policy.

38.    BSA seeks a declaration that the Hartford Policies that do not contain an aggregate limit or aggregate limits applicable only to products completed operations liability or occupational disease are not and cannot be exhausted due to the payment of loss arising from claims alleging personal injury.

39.    BSA seeks a declaration that, pursuant to the terms of the Hartford Policies, Hartford is obligated to pay and/or reimburse BSA for any ongoing defense costs incurred on those Underlying Lawsuits that are pending.

40.    An actual and justiciable controversy exists between BSA and Hartford regarding the rights and obligations of BSA and Hartford and Hartford's obligations under the Hartford Policies, and a judicial declaration is necessary to determine BSA's rights and Hartford's duties under the Hartford Policies.

## COUNT TWO
### Breach of Contract

41.    The foregoing allegations are incorporated herein by reference.

42.    The Hartford Policies are valid and enforceable contracts.

43.    BSA has standing to pursue claims under the Hartford Policies.

44.    BSA has satisfied all conditions precedent under the Hartford Policies.

45.    The Underlying Lawsuits allege bodily injury/personal injury occurring in whole or in part during the periods of the Hartford Policies.

46.    The terms of the Hartford Policies unambiguously require Hartford to defend and indemnify BSA in the Underlying Lawsuits.

47.    Alternatively, the terms of the Hartford Policies are ambiguous and must be construed in favor of coverage for BSA.

48.    Hartford has breached its contractual obligations under the Hartford Policies by, among other things, refusing and failing to: (a) defend BSA and/or reimburse BSA for defense costs it has incurred defending itself against the Underlying Lawsuits; and (b) indemnify BSA for those settlement payments it has incurred for the Underlying Lawsuits in accordance with the express terms of the Hartford Policies.

49.    As a result of Hartford's breach, BSA has sustained substantial damages.

### COUNT THREE
### Violations of Chapter 542 of the TEXAS INSURANCE CODE

50.    The foregoing allegations are incorporated herein by reference.

51.    BSA's claim for coverage includes a first-party claim.

52.    Hartford's delays and/or denials of coverage violate the Prompt Payment of Claims statute in Chapter 542 of the Texas Insurance Code.

53.    Chapter 542 provides that "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim,. . . the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058.

54.     Hartford has received all items, statements and forms reasonably requested and required under Section 542.055 or, alternatively, in light of Hartford's denial of coverage, BSA was not required to submit such items, statements and forms.

55.     Hartford has nonetheless refused to pay amounts that are clearly covered under the Hartford Policies.

56.     In refusing, failing and delaying payment of BSA's defense costs in connection with the Underlying Lawsuits, Hartford has violated Chapter 542 of the Texas Insurance Code.

57.     As a consequence of its statutory violation, Hartford is liable to pay BSA, in addition to the amount of its insurance claim, interest on the amount of its claim at the rate of 18 percent per annum, together with reasonable attorneys' fees.     *See* TEX. INS. CODE Sec. 542.060.

**COUNT FOUR**
**Attorneys' Fees**

58.     The foregoing allegations are incorporated herein by reference.

59.     Due to the actions of the Hartford, BSA has been required to retain the services of the law firm of Haynes and Boone, LLP of Dallas, Texas. BSA has agreed to pay Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action.

60.     Pursuant to §§ 37.009 and 38.001 of the Texas Civil Practices & Remedies Code and Chapters 541 and 542 of the Texas Insurance Code, BSA is entitled to an award of reasonable attorneys' fees against Hartford in an amount to be established at trial.

**NOTICE OF INTENT TO PURSUE CLAIM UNDER**
**CHAPTER 541 OF THE TEXAS INSURANCE CODE**

61.     The foregoing allegations are incorporated herein by reference.

62.    Pursuant to § 541.154 of the Texas Insurance Code, BSA hereby provides notice of its intent to pursue a claim against Hartford under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

63.    By, among other things, taking positions as outlined in ¶¶ 29-31, Hartford has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code. Hartford has violated Section 541.061 of the Texas Insurance Code by making misrepresentations of the insurance policy through one or more of the following acts: (1) making untrue statements of material fact, (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made, (3) making a statement in a manner that would mislead a reasonably prudent person to the false conclusion of material fact, and (4) making a material misstatement of law.

64.    By, among other things, taking positions as outlined in ¶¶ 29-31, Hartford has violated Section 541.060(1) of the Texas Insurance Code by misrepresenting a material fact or policy provision relating to coverage at issue.

65.    Hartford has violated Section 541.060(2) of the Texas Insurance Code by refusing coverage for the Underlying Lawsuits when its liability was reasonably clear.

66.    Hartford has violated Section 541.060(3) of the Texas Insurance Code by denying coverage for the Underlying Lawsuits without providing any factual or legal basis for such an assertion.

67.    Hartford has violated Section 541.060(7) of the Texas Insurance Code by refusing coverage for the Underlying Lawsuits without conducting a reasonable investigation with respect to the Underlying Lawsuits.

68.     As a result of Hartford's conduct, BSA has suffered substantial damages in an amount not less than $13.5 million, as well as attorneys' fees in an amount not less than $100,000.

69.     Hartford knowingly committed one or more of the violations referenced above and thus BSA seeks, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## VI.     JURY DEMAND

70.     BSA hereby requests a jury trial pursuant to Tex. R. Civ. P. 216(a).

## VII.     PRAYER

WHEREFORE, BSA respectfully prays that this Court grant it the following relief:

a.      Declaratory Judgment that each sexual abuse claim against BSA constitutes an "occurrence" under the Hartford Policies;

b.      Declaratory Judgment that each of the Hartford Policies are in full force and effect;

c.      Declaratory Judgment that each Hartford Policy has a separate per-occurrence limit of liability available for each policy period;

d.      Declaratory Judgment that the Hartford Policies that do not contain an aggregate limit or aggregate limits applicable only to products completed operations liability or occupational disease are not and cannot be exhausted due to the payment of loss arising from claims alleging personal injury;

e.      Declaratory Judgment that Hartford is obligated to pay and/or reimburse BSA for any defense costs incurred on those Underlying Lawsuits that are ongoing pursuant to the terms of the Hartford Policies;

f.      Judgment awarding BSA all damages sustained as a result of Hartford's breach of contract;

g.      Judgment awarding BSA actual and treble damages resulting from Hartford's violations of Chapters 541 and/or 542 of the Texas Insurance Code;

h.      Judgment awarding BSA all reasonable and necessary attorneys' fees and expenses incurred in this matter against Hartford under Chapter 37 of the Texas

Civil Practice & Remedies, Chapter 38 of the Texas Civil Practice & Remedies Code, Chapter 542, and/or Chapters 541 of the Texas Insurance Code;

i.    Judgment awarding BSA pre-judgment and post-judgment interest as allowed by law;

j.    Judgment awarding BSA all costs of court; and

k.    Any and all other relief to which BSA may be entitled.

Respectfully submitted,

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
ernestmartin@haynesboone.com
Carla Green
State Bar No. 24097762
carlagreen@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 651-5940

Adrian Azer*
*pro hac vice application pending*

ATTORNEYS FOR PLAINTIFFS BOY SCOUTS OF AMERICA, CONNECTICUT YANKEE COUNCIL, SPIRIT OF ADVENTURE COUNCIL, ALOHA COUNCIL, CASCADE PACIFIC COUNCIL

### Exhibit A
### The Hartford Policies

| Insurer | Policy No. | Effective Dates |
|---------|-----------|-----------------|
| **1971-72** | | |
| The Hartford Accident and Indemnity Co. | 10CA43315 (primary) | 09/01/1972 - 01/01/1972 |
| The Hartford Accident and Indemnity Co. | 10HUA43300 (excess) | 05/01/1971 - 05/01/1972 |
| **1972-73** | | |
| The Hartford Accident and Indemnity Co. | 10CA43303 (primary) | 01/01/1972 - 01/01/1973 (extended an additional year) |
| The Hartford Accident and Indemnity Co. | 10CA43304 (primary) | 01/01/1972 - 01/01/1973 (extended an additional year) |
| The Hartford Accident and Indemnity Co. | 10HUA43301 (excess) | 01/01/1972 - 01/01/1973 |
| The Hartford Accident and Indemnity Co. | 10HUA43302 (excess) | 01/01/1972 - 01/01/1973 (extended an additional year) |
| The Hartford Accident and Indemnity Co. | 10HUA43303 (excess) | 05/01/1972 - 05/01/1973 (extended an additional year) |
| **1973-74** | | |
| The Hartford Accident and Indemnity Co. | 10CA43303 (primary) | 01/01/1973 - 01/01/1974 |
| The Hartford Accident and Indemnity Co. | 10CA43304 (primary) | 01/01/1973 - 01/01/1974 |
| The Hartford Accident and Indemnity Co. | 10HUA43302 (excess) | 01/01/1973 - 01/01/1974 |
| The Hartford Accident and Indemnity Co. | 10HUA43303 (excess) | 05/01/1973 - 05/01/1974 |
| **1974-75** | | |
| The Hartford Accident and Indemnity Co. | 10CA43329 (primary) | 01/01/1974 - 01/01/1975 |
| The Hartford Accident and Indemnity Co. | 10CA43324 (primary) | 01/01/1974 - 01/01/1975 |
| The Hartford Accident and Indemnity Co. | 10HUA43331 (excess) | 01/01/1974 - 01/01/1975 |
| The Hartford Accident and Indemnity Co. | 10HUA43335 (excess) | 05/01/1974 - 05/01/1975 |
| **1975-76** | | |
| The Hartford Accident and Indemnity Co. | 10CA43342E (primary) | 01/01/1975 - 01/01/1976 |
| **1978-79** | | |
| First State Insurance Co. | 908954 (excess) | 01/01/1978 – 01/01/1979 |
| **1979-80** | | |
| First State Insurance Co. | 927616 (excess) | 01/01/1979 – 01/01/1980 |

EXHIBIT A

# EXHIBIT D

CAUSE NO. DC-18-11896

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, ALOHA COUNCIL, NEW BIRTH OF FREEDOM COUNCIL, CHICAGO AREA COUNCIL, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | |
| | § | DALLAS COUNTY, TEXAS |
| INSURANCE COMPANY OF NORTH AMERICA, CENTURY INDEMNITY COMPANY, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, NATIONAL SURETY CORPORATION, | § § § § § § | |
| | § | 192ND JUDICIAL DISTRICT |
| Defendants. | § | |

**PLAINTIFFS' FIRST AMENDED PETITION & REQUEST FOR DISCLOSURE**

Plaintiff Boy Scouts of America ("BSA"), Plaintiff Aloha Council ("AC"), Plaintiff New Birth of Freedom Council ("NBC") and Plaintiff Chicago Area Council ("CAC") (collectively, the "Plaintiffs") hereby file this First Amended Petition against Defendants Insurance Company of North America ("INA"), Century Indemnity Company ("Century Indemnity"), Allianz Global Risks US Insurance Company ("Allianz"), and National Surety Corporation ("National Surety") and would respectfully show the Court as follows:

## I.    DISCOVERY CONTROL PLAN

1.    Discovery in this matter is intended to be conducted under Level 2, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

## II.    PARTIES

2.    Plaintiff BSA is a congressionally chartered organization authorized to do business in Texas, and has its headquarters at 1325 Walnut Hill Lane, Irving, Texas 75015.

3.    Plaintiff Aloha Council is a non-profit corporation organized under the laws of the State of Hawaii, and has its headquarters at 42 Puiwa Road, Honolulu, Hawaii 96817.

4.    Plaintiff New Birth of Freedom Council is a non-profit corporation organized under the laws of the State of Pennsylvania, and has its headquarters at 1 Baden Powell Lane, Mechanicsburg, Pennsylvania 17050.

5.    Plaintiff Chicago Area Council is a non-profit corporation organized under the laws of the State of Illinois, and has its headquarters at 1218 West Adams Street, Chicago, Illinois 60607.

6.    Defendant Insurance Company of North America is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. Defendant INA has made an appearance in this matter.

7.    Defendant Century Indemnity Company is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania.  Defendant Century Indemnity has made an appearance in this matter.

8.    Defendant Allianz Global Risks US Insurance Company is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois. Defendant Allianz has made an appearance in this matter.

9.    Defendant National Surety Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business in Illinois.  Defendant National Surety has made an appearance in this matter.

### III.    <u>JURISDICTION & VENUE</u>

10.    The foregoing allegations are incorporated herein by reference.

11.     This Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, is within the jurisdictional limits of the Court.

12.     Plaintiff seeks monetary relief over $1,000,000.

13.     Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claims occurred in Dallas County at the time the cause of actions accrued.

## IV.    FACTUAL BACKGROUND

**A.     Plaintiffs and Their Insurance Coverage Program**

14.     The Boy Scouts of America is one of the nation's largest and most prominent values-based youth development organizations, with more than 2.4 million youth participants and nearly one million adult volunteers.  BSA was founded in 1910, and since then, more than 110 million Americans have been participants in BSA programs at some time.

15.     The BSA program is delivered through local chartering organizations, such as churches, clubs, civic associations, or educational organizations, to implement the scouting program for youth within their communities.  Units are led entirely by volunteers appointed by the chartering organization, who are supported by local councils like AC, NBC and CAC.

16.     To insure its many activities and local councils throughout the country, Plaintiffs maintain a comprehensive, broad insurance program.  From approximately 1962 to present, Plaintiffs purchased several general liability and umbrella and/or excess liability insurance policies.

**B.**    **The Lawsuits**

**(i)**    **The Underlying Lawsuits**

17.    Over the past several years, Plaintiffs have been subject to numerous claims and lawsuits in which the underlying plaintiffs allege they were sexually abused while a participant in various BSA programs (the "Underlying Lawsuits").

18.    The Underlying Lawsuits allege abuse during various and multiple periods of time, in various and multiple geographic locations, and based on the conduct of various alleged perpetrators.

19.    The Underlying Lawsuits generally allege personal injury due to sexual abuse and allege, *inter alia*, that BSA and BSA local councils, including AC, NBC, and CAC, were negligent in failing to prevent the sexual abuse.

20.    The Underlying Lawsuits contain allegations that underlying plaintiffs suffered and continue to suffer from bodily injury, including but not limited to severe and debilitating physical, mental and emotional injury, pain and suffering, physical and emotional trauma, and present psychological damage.

21.    As a result of the Underlying Lawsuits, BSA and BSA local councils have incurred and will continue to incur significant defense fees and costs.  Many of the defendants have breached and continue to breach their contractual obligations by failing to pay BSA's and BSA local council's defense fees and costs.  This includes BSA's retained national coordinating counsel.

22.    In addition, certain insurers have failed to fund settlements reached by BSA with underlying plaintiffs.  These insurers either contend improperly that coverage is not available or

challenge the reasonableness of the settlements entered by BSA and BSA local councils; two such circumstances are below.

**(ii)    The Hacker Lawsuits**

23.    In December of 2012, certain of the Plaintiffs, among others, were named defendants in a case styled *John Doe, et al. v. BSA*, *et al.*, No. 2012-L-013569 in the Circuit Court of Cook County in Chicago, Illinois (the "Hacker Lawsuit").  The Hacker Lawsuit was originally brought by eighteen plaintiffs, but the Circuit Court bifurcated the Hacker Lawsuit into individual cases for each of the plaintiffs, including as follows: John Doe 2 whose case is styled *John Doe 2 v. BSA*, *et al.*, No. 2017-L-9365 (the "John Doe 2 Lawsuit"); John Doe 3 whose case is styled *John Doe 3 v. BSA*, *et al.*, No. 2017-L-7900 (the "John Doe 3 Lawsuit"); John Doe 4 whose case is styled *John Doe 4 v. BSA*, *et al.*, No. 2018-L-000211 (the "John Doe 4 Lawsuit"); John Doe 6 whose case is styled *John Doe 6 v. BSA*, *et al.*, No. 2018-L-000213 (the "John Doe 6 Lawsuit"); John Doe 7 whose case is styled *John Doe 7 v. BSA*, *et al.*, No. 2018-L-000214 (the "John Doe 7 Lawsuit"); John Doe 9 whose case is styled *John Doe 9 v. BSA*, *et al.*, No. 2018-L-000228 (the "John Doe 9 Lawsuit")

24.    The John Doe 2 Lawsuit alleged that John Doe 2 was sexually abused by Thomas Hacker ("Hacker"), an alleged BSA scoutmaster, while he was a member of Troop 1600 in Oak Lawn, Illinois between 1983 and 1986.

25.    The John Doe 3 Lawsuit alleged that John Doe 3 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois between 1984 and 1986.

26.    The John Doe 4 Lawsuit alleged that John Doe 4 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois between 1984 and 1986.

27.     The John Doe 6 Lawsuit similarly alleged that John Doe 6 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois between 1984 and 1986.

28.     The John Doe 7 Lawsuit alleged that John Doe 7 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois in 1980 to 1982.

29.     The John Doe 9 Lawsuit alleged that John Doe 9 was sexually abused by Hacker while he was a member of Troop 1600 in Oak Lawn, Illinois between 1984 and 1987.

30.     The John Does 2, 3, 4, 6, 7, and 9 Lawsuits each contain allegations that certain of the Plaintiffs were negligent in not preventing the sexual abuse, even though Hacker admits to manipulating BSA's registration system to continue in scouting after he had supposedly been barred from volunteering by BSA.

31.     The John Does 2, 3, 4, 6, 7, and 9 Lawsuits allege that the respective John Does have suffered permanent bodily injury, will continue to be damaged psychologically, and will continue to experience mental anguish, humiliation and emotional and physical pain, suffering and distress.

32.     The John Doe 2 Lawsuit was set for trial on July 9, 2018.

33.     The John Doe 2 Lawsuit was settled prior to the trial date.

34.     The John Doe 3 Lawsuit was set for trial on September 7, 2018.

35.     The John Doe 3 Lawsuit was settled prior to the trial date.

36.     The John Doe 4 Lawsuit was set for trial on October 12, 2018.

37.     The John Doe 4 Lawsuit was settled prior to the trial date.

38.     The John Doe 6 Lawsuit was set for trial on November 9, 2018.

39.     The John Doe 6 Lawsuit was settled prior to the trial date.

40.     The John Doe 7 Lawsuit was set for trial on March 8, 2019.

41.     The John Doe 7 Lawsuit was settled prior to the trial date.

42.     The John Doe 9 Lawsuit was set for trial on February 8, 2019.

43.     The John Doe 9 Lawsuit was settled prior to the trial date.

**(iii)    The Roe 90 Lawsuit**

44.     On April 21, 2016, certain of the Plaintiffs, among others, were named defendants in a case styled *John Roe No. 90 v. Boy Scouts of America, Aloha Council et al.*, Case No. 16-1-0764-04 in the Circuit Court of the First Circuit, Hawaii (the "Roe 90 Lawsuit").

45.     The Roe 90 Lawsuit alleged John Roe No. 90 ("John Roe") was sexually abused by an individual who was allegedly associated with BSA, either as an alleged troop leader and/or scoutmaster for BSA and/or AC.

46.     The Roe 90 Lawsuit alleged the abuse from the individual began in 1980 in Honolulu, Hawaii.

47.     The Roe 90 Lawsuit asserted claims against certain of the Plaintiffs for gross negligence, grossly negligent infliction of emotional distress, grossly negligent misrepresentation, and punitive damages.

48.     The Roe 90 Lawsuit settled prior to trial.

**C.     Coverage Disputes with Plaintiffs' Insurers Regarding the Lawsuits**

49.     The significant increase in sexual abuse claims over the last several years has resulted in an increase in disputes with Plaintiffs' insurers.  This action addresses Plaintiffs' disputes with INA and/or Century, National Surety, and Allianz for the following claims:

| Underlying Lawsuits | INA/Century | National Surety | Allianz |
|---|---|---|---|
| **General** | ✓<br>First Encounter Agreement and unpaid defense costs | | |
| **John Doe 2 (1983)** | ✓<br>Settlement Valuation | ✓<br>Coverage | |
| **John Doe 3 (1984)** | ✓<br>Settlement Valuation | ✓<br>Coverage | |
| **John Doe 4 (1984)** | | ✓<br>Coverage | |
| **John Doe 6 (1984)** | ✓<br>Settlement Valuation | ✓<br>Coverage | |
| **John Does 9 (1984)** | ✓<br>Settlement Valuation | | |
| **John Doe 7 (1980)** | | | ✓<br>Coverage |
| **Roe 90** | | | ✓<br>Coverage |

(i)     **Plaintiffs' Coverage Dispute with INA/Century Indemnity Regarding Application of the First Encounter Agreement to the Underlying Lawsuits**

50.     Certain INA and Century Indemnity entities issued a significant amount of primary, general-liability policies to Plaintiffs from approximately 1962 through 1996. In certain years, certain INA and Century Indemnity entities also issued several excess/umbrella policies to Plaintiffs (collectively, the "INA Policies").

51.     In 1996, Plaintiffs approached INA and Century Indemnity in an effort to minimize disputes regarding coverage. As a result of those discussions, on or about May 24, 1996, Plaintiffs and certain INA/Century Indemnity entities executed the "Settlement Agreement Regarding Sexual Molestation Claims." This settlement agreement is often referred to as the "First Encounter Agreement" ("FEA").

52.     Pursuant to the FEA, Plaintiffs and certain INA/Century Indemnity entities agreed that "the date of 'occurrence' pertaining to any Sexual Molestation Claim shall be the date when

the first act of Sexual Molestation took place, even if additional acts of Sexual Molestation or additional Personal Injuries arising therefrom also occurred in subsequent policy periods; and all damages arising out of such additional acts of Sexual Molestation or additional Personal Injuries shall be deemed to have been incurred during the policy year when the first act of Sexual Molestation took place."

53.    Plaintiffs and certain INA and Century Indemnity entities were the *only* parties to the FEA,[1] and the terms and conditions of the FEA bind only the parties to the FEA (Plaintiffs, INA and Century Indemnity), and only with regard to the INA Policies.  Specifically, the FEA provides that the FEA is "not intended to be, nor shall it be construed as, an interpretation of any [non-INA] policy….[and]it shall not be used…against [Plaintiffs], whether directly or indirectly, to create, prove, or interpret the obligations, if any of INA or Century Indemnity under any [non-INA] policy other than an [INA Policy]."

54.    The FEA likewise contains a Merger Clause which provides that the FEA "memorializes and constitutes the entire agreement and understanding between [INA, Century Indemnity, and BSA] and supersedes and replaces all prior negotiations, proposed agreements, express or implied, and agreements whether written or unwritten."

55.    Notwithstanding the clear language in the FEA, INA presently is breaching the FEA through at least two contentions: (1) that it may allocate liability to all years of abuse; and (2) that other insurers are bound by the FEA, despite not being signatories.

---

[1] INA is defined in the FEA as Insurance Company of North America, including its predecessors, successors, affiliates, subsidiaries, its past, present and future assigns, parents, and the officers, directors, employees, and agents of any of them.   Century Indemnity is defined in the FEA as Century Indemnity Company, including its predecessors, successors, affiliates, subsidiaries, its past, present and future assigns, parents, and the officers, directors, employees, and agents of any of them.   Therefore, the FEA was only between the INA and Century Indemnity entities that existed as of May 24, 1996.

56.     First, the FEA specifically provides that the only policy triggered is the policy where "the first act of Sexual Molestation took place."  Despite this clear language, INA contends that it may allocate its liability for sexual abuse claims to all of the policy years where abuse occurred.  This constitutes a breach of the FEA.

57.     Second, notwithstanding the Merger Clause and the terms of the FEA, INA has taken the position that the FEA not only binds the INA Policies, but also applies to any policies underlying an INA Policy.  INA contends that any policy underlying an excess INA Policy must be exhausted in accordance with the first encounter rule.  As such, INA has refused to indemnify Plaintiffs for certain of the Underlying Lawsuits because INA asserts the underlying policies have not been exhausted in accordance with the protocols of the FEA.  This too constitutes a breach of the FEA.

**(ii)     Plaintiffs' Dispute with INA/Century Indemnity Regarding Defense Fees and Costs Related to the Underlying Lawsuits**

58.     Certain of the INA Policies require INA to either defend or reimburse Plaintiffs for any defense costs it incurs in connection with the Underlying Lawsuits.

59.     Despite this obligation, INA has either refused to fund, has delayed payment, or has only partially funded the defense costs Plaintiffs have incurred in connection with the Underlying Lawsuits.

60.     INA has also refused to pay defense costs relating to Plaintiffs' National Coordinating Counsel – Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree").  Ogletree is instrumental in coordinating the defense of all of the Underlying Lawsuits, which as noted above, are located all over the United States.  As such, INA is obligated to pay these defense costs.

### (iii)   Plaintiffs' Coverage Dispute with National Surety and INA/Century Indemnity Regarding the John Doe 2 Lawsuit

61.   National Surety issued Blanket Excess Liability Policy No. XLX1484309 to Plaintiffs for the policy period January 1, 1983 to January 1, 1984 (the "NS 1983 Policy").

62.   The NS 1983 Policy provides that National Surety "shall indemnify [Plaintiffs] for [Plaintiffs]'s 'ultimate net loss' in excess of [Plaintiffs]'s underlying insurance policies."

63.   The NS 1983 Policy defines "ultimate net loss" as "all sums actually paid, or which [Plaintiffs] are legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by the [NS 1983 Policy]." INA issued Excess Liability Policy No. XCP-144961 to Plaintiffs for the policy period November 17, 1982 to January 1, 1984 (the "INA Excess 1983 Policy").

64.   Because the alleged dates of abuse in the complaint trigger coverage under the NS 1983 Policy and the INA Excess 1983 Policy, Plaintiffs provided timely notice to National Surety and INA of the John Doe 2 Lawsuit.

65.   On January 18, 2018, Plaintiffs received a time-sensitive demand from John Doe 2 that would fully and finally resolve the John Doe 2 Lawsuit.  Plaintiffs tendered this demand to National Surety and demanded that it fund the settlement up to its remaining limits.  National Surety, however, refused to fund the settlement demand prior to the deadline to respond.

66.   On June 25, 2018, Plaintiffs received another demand from John Doe 2 that would fully and finally resolve the John Doe 2 Lawsuit.  The settlement demand received from John Doe 2 in June of 2018 had increased from John Doe 2's previous January 18, 2018 settlement demand.  Plaintiffs again tendered this demand to National Surety and demanded that it fund the settlement up to its remaining limits.  National Surety, however, refused to satisfy its

coverage obligations and denied that it had an obligation to fund the settlement with its remaining limits.

67.    Faced with this denial, Plaintiffs paid that portion of the settlement demand that would have exhausted the NS 1983 Policy.  The settlement demand is a sum that Plaintiffs are "legally obligated to pay" and National Surety is obligated to indemnify Plaintiffs for the sums used to settle the John Doe 2 Lawsuit.

68.    As the amount of the settlement demand was in excess of the NS 1983 Policy, Plaintiffs tendered the remainder of the demand to INA and demanded that it fund its appropriate portion.

69.    INA, however, refused to fund in full the remaining settlement demand, instead only funding a portion of the settlement it deemed appropriate.

70.    Plaintiffs, therefore, paid the remainder of the settlement amount that INA improperly refused to pay, thereby settling in full its dispute with John Doe 2, and such amount is due and owing from INA.

**(iv)    Plaintiffs' Coverage Dispute with National Surety and INA/Century Indemnity Regarding the John Doe 3 Lawsuit**

71.    National Surety issued Blanket Excess Liability Policy No. XLX1484392 to Plaintiffs for the policy period January 1, 1984 to January 1, 1985 (the "NS 1984 Policy").

72.    The NS 1984 Policy provides that National Surety "shall indemnify [Plaintiffs] for [Plaintiffs]'s 'ultimate net loss' in excess of [Plaintiffs]'s underlying insurance policies."

73.    The NS 1984 Policy defines "ultimate net loss" as "all sums actually paid, or which [Plaintiffs] are legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded by the [NS 1984 Policy]." The NS 1984 Policy was excess to INA Policy No. XCP 145365 (the "INA 1984 Policy").

74.     Because the alleged dates of abuse in the complaint trigger coverage under the NS 1984 Policy and the INA 1984 Policy, Plaintiffs provided timely notice to National Surety and INA of the John Doe 3 Lawsuit.

75.     On January 18, 2018, Plaintiffs received a time-sensitive demand from John Doe 3 that would fully and finally resolve the John Doe 3 Lawsuit.  Plaintiffs tendered this demand to National Surety and demanded that, after INA funded its remaining limits under the INA 1984 Policy, National Surety fund the remainder of the settlement.  National Surety, however, refused to fund the settlement demand prior to the deadline to respond.

76.     On July 23, 2018, Plaintiffs received another demand from John Doe 3 that would fully and finally resolve the John Doe 3 Lawsuits.  The settlement demands received in July of 2018 had increased from the previous January 18, 2018 settlement demand.  Plaintiffs again tendered these demands to INA and National Surety and demanded INA and National Surety fund the settlement.

77.     On August 2, 2018, INA agreed to tender its remaining limits under the INA 1984 Policy to contribute its portion of the John Doe 3 settlement.  National Surety, however, refused to satisfy its coverage obligations and denied it had an obligation to fund the remainder of the John Doe 3 settlement.

78.     Faced with this denial, Plaintiffs paid the remainder of the John Doe 3 settlement demand.  The settlement demand is a sum that Plaintiffs are "legally obligated to pay" and National Surety is obligated to indemnify Plaintiffs for the sums used to settle the John Doe 3 Lawsuit.

79.     Although INA agreed to tender its remaining limits under the INA 1984 Policy, INA disputed the reasonableness of the John Doe 3 settlement amount when INA became

obligated to pay for other claimants alleging abuse in 1984 under the INA Policy No. XCP 145366 (the "INA 1984 Excess Policy"), which is excess to the NS 1984 Policy.

     **(v)**     **Plaintiffs' Coverage Dispute with National Surety and INA/Century Regarding the John Doe 4 Lawsuit**

80.     Because the alleged dates of abuse in the complaint trigger coverage under the NS 1984 Policy, Plaintiffs provided timely notice to National Surety of the John Doe 4 Lawsuit.

81.     On January 18, 2018, Plaintiffs received a time-sensitive demand from John Doe 4 that would fully and finally resolve the John Doe 4 Lawsuit. Plaintiffs tendered this demand to National Surety and demanded that it fund the settlement. National Surety, however, refused to fund the settlement demand prior to the deadline to respond.

82.     On August 10, 2018, Plaintiffs received another demand from John Doe 4 that would fully and finally resolve the John Doe 4 Lawsuit. The settlement demand received in August of 2018 had increased from the previous January 18, 2018 settlement demand. Plaintiffs again tendered this demand to National Surety and demanded National Surety fund the settlement.

83.     National Surety, however, refused to satisfy its coverage obligations and denied it had an obligation to fund the John Doe 4 settlement.

84.     Faced with this denial, Plaintiffs paid the John Doe 4 settlement demand. The settlement demand is a sum that Plaintiffs are "legally obligated to pay" and National Surety is obligated to indemnify Plaintiffs for the sums used to settle the John Doe 4 Lawsuit.

85.     Although INA did not owe any amounts for the John Doe 4 Lawsuit under the INA 1984 Policy, INA disputed the reasonableness of the John Doe 4 settlement amount when INA became obligated to pay for other claimants alleging abuse in 1984 under the INA Policy No. XCP 145366 (the "INA 1984 Excess Policy"), which is excess to the NS 1984 Policy.

(vi)    **Plaintiffs' Coverage Dispute with National Surety and INA/Century Indemnity Regarding the John Doe 6 Lawsuit**

86.    Because the alleged dates of abuse in the complaint trigger coverage under the NS 1984 Policy, Plaintiffs provided timely notice to National Surety of the John Doe 6 Lawsuit.

87.    On January 18, 2018, Plaintiffs received a time-sensitive demand from John Doe 6 that would fully and finally resolve the John Doe 6 Lawsuit.  Plaintiffs tendered this demand to National Surety and demanded that it fund the settlement under the NS 1984 Policy.  National Surety, however, refused to fund the settlement demand prior to the deadline to respond.

88.    On August 10, 2018, Plaintiffs received another demand from John Doe 6 that would fully and finally resolve the John Doe 6 Lawsuit.  The settlement demand received in August of 2018 had increased from the previous January 18, 2018 settlement demand.  Plaintiffs again tendered this demand to National Surety and demanded National Surety fund the settlement.

89.    National Surety, however, refused to satisfy its coverage obligations and denied it had an obligation to fund the John Doe 6 settlement.

90.    Faced with this denial, Plaintiffs paid the John Doe 6 settlement demand, which exhausted the limits of the NS 1984 Policy.  The settlement demand is a sum that Plaintiffs are "legally obligated to pay" and National Surety is obligated to indemnify Plaintiffs for the sums used to settle the John Doe 6 Lawsuit.

91.    The INA 1984 Excess Policy is excess to the NS 1984 Policy.

92.    Once Plaintiffs paid the settlement amounts owing under the NS 1984 Policy (e.g., the settlement amounts for John Does 3, 4, and 6), the NS 1984 Policy was exhausted for these Hacker Claimants and the INA 1984 Excess Policy was implicated.

93.    Because the alleged dates of abuse in the complaint trigger coverage under the INA 1984 Excess Policy, Plaintiffs provided timely notice to INA of the John Doe 6 Lawsuit.

94.    INA agreed to tender a portion of the John Doe 6 settlement demand mentioned above, but not all of the amounts owed, and contends that the settlement amount for John Doe 6 was not reasonable. Thus, INA is in breach of its obligations as a result of its failure to fully fund the John Doe 6 settlement, and INA improperly disputes whether it must provide additional coverage under the INA 1984 Excess Policy for the remaining John Doe Claimants alleging abuse in 1984 despite the fact that the INA 1984 Excess Policy's limits are nowhere close to exhausted.

**(vii)    Plaintiffs' Coverage Dispute with INA/Century Regarding John Doe 9 Lawsuit**

95.    Because the alleged dates of abuse in the complaint trigger coverage under the INA 1984 Excess Policy, Plaintiffs provided timely notice to INA of the John Doe 9 Lawsuit.

96.    On January 18, 2018, Plaintiffs received a time-sensitive demand from John Doe 9 that would fully and finally resolve the John Doe 9 Lawsuit.  Plaintiffs tendered this demand to INA and demanded that it fund the settlement under the INA 1984 Excess Policy. INA, however, refused to fund the settlement demand prior to the deadline to respond.

97.    On August 10, 2018, Plaintiffs received another demand from John Doe 9 that would fully and finally resolve the John Doe 9 Lawsuit.  The settlement demand received in August of 2018 had increased from the previous January 18, 2018 settlement demand.

98.    Plaintiffs responded to the August 10, 2018 demand on September 7, 2018, by countering John Doe 9's demand.

99.    On January 10, 2019, John Doe 9 responded to Plaintiffs by making another demand to fully and finally settle the claim.  Plaintiffs demanded that Century fund the full settlement amount requested by John Doe 9 under the INA 1984 Excess Policy.

100.    INA, however, refused to satisfy its coverage obligations and denied that it had an obligation to fund the John Doe 9 settlement.

101.    Faced with this denial, Plaintiffs paid the John Doe 9 settlement demand.  The settlement demand is a sum that Plaintiffs are "legally obligated to pay" and INA is obligated to indemnify Plaintiffs for the sums used to settle the John Doe 9 Lawsuit.

**(viii)    Plaintiffs' Coverage Dispute with Allianz Regarding John Doe 7 Lawsuit**

102.    Allianz issued Umbrella Liability Policy No. UMB 599346 to Plaintiffs for the time period January 1, 1980 to January 1, 1981 (the "Allianz Policy").

103.    The Allianz Policy provides coverage for "damages on account of . . . personal injur[y] . . . caused by or arising out of each occurrence anywhere." The Allianz Policy defines an "occurrence" as "an accident, including injurious exposure to conditions, which results during the policy period, in personal injury . . . neither expected nor intended from the standpoint of the Insured."

104.    Because John Doe 7 alleged physical abuse during the Allianz Policy period, Plaintiffs provided timely notice of the John Doe 7 Lawsuit to Allianz.

105.    Allianz declined coverage for the John Doe 7 Lawsuit, asserting that John Doe 7's alleged abuse did not occur in 1980 but rather began in 1981.

106.    Plaintiffs provided Allianz with a substantial amount of evidence establishing that John Doe 7's abuse occurred in 1980.

107.    Indeed, after Plaintiffs provided Allianz with supplemental information, John Doe 7 amended his complaint to note that he first joined Troop 1600 in 1980 and was first abused in 1980.

108.    Despite the great weight of the evidence supporting the conclusion that John Doe 7 was first abused in 1980, Allianz maintained that John Doe 7's abuse occurred in 1981 and refused to contribute a meaningful amount to settle the John Doe 7 Lawsuit.

109.    On January 18, 2018, Plaintiffs received an offer to fully and finally settle the John Doe 7 Lawsuit.  On March 26, 2018, Plaintiffs' primary insurer, INA, tendered its limits under its general liability policy to effectuate a settlement.  Allianz, however, refused to fund in full the remainder of the proposed settlement amount, despite Plaintiffs' demand that Allianz tender its limits.

110.    On August 10, 2018, Plaintiffs received another settlement demand from John Doe 7.  Plaintiffs demanded that Allianz tender its limits to settle the John Doe 7 Lawsuit, but Allianz once again refused.

111.    On November 14, 2018, Plaintiffs received a settlement demand from John Doe 7 that would fully and finally settle the John Doe 7 Lawsuit.  Again, Plaintiffs tendered the settlement demand to Allianz, but Allianz refused to fund in full the settlement demand, maintaining that John Doe 7's abuse did not occur in 1980.

112.    On January 10, 2019, Plaintiffs received a final settlement demand from John Doe 7.  Plaintiffs tendered the settlement demand to Allianz, but Allianz refused to fund in full the settlement demand, maintaining that John Doe 7's abuse did not occur in 1980, notwithstanding that INA tendered its limits under its primary general liability policy.

113.     As of the date of the January 10, 2019 demand letter, the John Doe 7 Lawsuit was set for trial on March 8, 2019.   Faced with the prospect of trial and Allianz's refusal to pay amounts owed under its policy, Plaintiffs paid the John Doe 7 settlement demand of January 10, 2019.   The settlement demand is a sum that Plaintiffs are "legally obligated to pay" and Allianz is obligated to indemnify Plaintiffs for the sums used to settle the John Doe 7 Lawsuit.

**(ix)     Plaintiffs' Coverage Dispute with Allianz Regarding the Roe 90 Lawsuit**

114.     Roe 90 alleged physical abuse during the Allianz Policy period and Plaintiffs provided timely notice of the Roe 90 Lawsuit to Allianz.

115.     In September 2017, Plaintiffs received an offer to fully and finally settle the Roe 90 Lawsuit.   Plaintiffs' primary insurer, INA, tendered its limits under its general liability policy to effectuate a settlement.   And while the remainder of the settlement was well within the Allianz Policy's limits of liability, Allianz refused to fund in full the remainder of the proposed settlement amount.

116.     On January 18, 2018, Plaintiffs again received a settlement demand from Roe 90 that would fully and finally settle the Roe 90 Lawsuit.   Again, Plaintiffs tendered the settlement demand to Allianz, but Allianz refused to fund in full the settlement demand, instead only funding a portion of the settlement it deemed appropriate.

117.     Plaintiffs, therefore, paid the remainder of the settlement amount that Allianz improperly refused to pay, thereby settling in full its dispute with Roe 90 and such amount is due and owing from Allianz.

## V.     CAUSES OF ACTION

### COUNT ONE
### Declaratory Judgment Against INA Regarding the First Encounter Agreement

118.     The foregoing allegations are incorporated herein by reference.

119.    Plaintiffs bring this action pursuant to TEX. CIV. PRAC. & REM. CODE §37.004.

120.    Plaintiffs seek a declaration that the (1) the FEA bars INA and Century Indemnity from allocating liability for the Underlying Lawsuits to insurance policies for each year of abuse; and (2) the terms and conditions of the FEA do not apply to other policies which are not subject to the FEA.

121.    An actual and justiciable controversy exists between Plaintiffs, INA and Century Indemnity regarding the rights and obligations of Plaintiffs, INA and Century Indemnity and each parties' obligations under the FEA, and a judicial declaration is necessary to determine Plaintiffs', INA's and Century Indemnity's obligations under the FEA.

## COUNT TWO
### Breach of Contract Against INA Regarding the Failure to Pay Defense Costs

122.    The foregoing allegations are incorporated herein by reference.

123.    The INA Policies are each valid and enforceable contracts.

124.    Plaintiffs have standing to pursue claims under the INA Policies.

125.    Plaintiffs have satisfied all conditions precedent under the INA Policies.

126.    The Underlying Lawsuits allege bodily injury/personal injury occurring in whole or in part during the policy period of the INA Policies.

127.    The terms of the INA Policies unambiguously require INA to defend or reimburse Plaintiffs for any defense costs incurred in connection with the Underlying Lawsuits.

128.    Alternatively, the terms of the INA Policies are ambiguous and must be construed in favor of coverage for Plaintiffs.

129.    INA has breached its contractual obligations under the INA Policies by, among other things, refusing and failing to defend and/or delaying payment and/or refusing to pay

Plaintiffs' defense costs in connection with the Underlying Lawsuits in accordance with the express terms of the INA Policies.

130.    As a result of INA's breach, Plaintiffs have sustained substantial damages.

## <u>COUNT THREE</u>
**Breach of Contract Against National Surety and INA Regarding the John Doe 2 Settlement**

131.    The foregoing allegations are incorporated herein by reference.

132.    The NS 1983 Policy and the INA Excess 1983 Policy are each valid and enforceable contracts.

133.    Plaintiffs have standing to pursue claims under the NS 1983 Policy and the INA Excess 1983 Policy.

134.    Plaintiffs have satisfied all conditions precedent under the NS 1983 Policy and the INA Excess 1983 Policy.

135.    The John Doe 2 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1983 Policy and the INA Excess 1983 Policy.

136.    The terms of the NS 1983 Policy and INA Excess 1983 Policy unambiguously require National Surety and INA to indemnify Plaintiffs in the John Doe 2 Lawsuit.

137.    Alternatively, the terms of the NS 1983 Policy and INA Excess 1983 Policy are ambiguous and must be construed in favor of coverage for Plaintiffs.

138.    National Surety and INA have breached their contractual obligations under their respective policies by, among other things, refusing and failing to indemnify Plaintiffs in the John Doe 2 Lawsuit in accordance with the express terms of the NS 1983 Policy and INA Excess 1983 Policy.

139.    As a result of National Surety's and INA's breach, Plaintiffs have sustained substantial damages.

## COUNT FOUR
### Breach of Contract Against National Surety Regarding the John Doe 3, 4, and 6 Settlements

140.    The foregoing allegations are incorporated herein by reference.

141.    The NS 1984 Policy is a valid and enforceable contract.

142.    Plaintiffs have standing to pursue claims under the NS 1984 Policy.

143.    Plaintiffs have satisfied all conditions precedent under the NS 1984 Policy.

144.    The John Doe 3, 4, and 6 Lawsuits each allege bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1984 Policy. The terms of the NS 1984 Policy unambiguously require National Surety to indemnify Plaintiffs in the John Doe 3, 4, and 6 Lawsuits. Alternatively, the terms of the NS 1984 Policy are ambiguous and must be construed in favor of coverage for Plaintiffs.

145.    National Surety has breached its contractual obligations under the NS 1984 Policy by, among other things, refusing and failing to indemnify Plaintiffs in the John Doe 3, 4, and 6 Lawsuits in accordance with the express terms of the NS 1984 Policy.

146.    As a result of National Surety's breach, Plaintiffs have sustained substantial damages.

## COUNT FIVE
### Breach of Contract Against INA Regarding Exhaustion of the NS 1984 Policy Based on the Reasonable Settlement Values of John Doe 3 and John Doe 4

147.    The foregoing allegations are incorporated herein by reference.

148.    The INA 1984 Excess Policy is a valid and enforceable contract.

149.    Plaintiffs have standing to pursue claims under the INA 1984 Excess Policy.

150.    Plaintiffs have satisfied all conditions precedent under the INA 1984 Excess Policy.

151.     The John Doe 3 and John Doe 4 Lawsuits each alleged bodily injury/personal injury occurring in whole or in part during the policy periods of the NS 1984 Policy and the INA 1984 Excess Policy.

152.     The settlements reached with John Doe 3 and John Doe 4 were reasonable and INA is in breach of its contractual obligations by failing to recognize exhaustion of the NS 1984 Policy.

153.     As a result of National Surety's breach, Plaintiffs have sustained substantial damages.

## COUNT SIX
### Breach of Contract Against INA Regarding the John Doe 6 and John Doe 9 Settlements

154.     The foregoing allegations are incorporated herein by reference.

155.     The INA 1984 Excess Policy is a valid and enforceable contract.

156.     Plaintiffs have standing to pursue claims under the INA 1984 Excess Policy.

157.     Plaintiffs have satisfied all conditions precedent under the INA 1984 Excess Policy.

158.     The John Doe 6 and John Doe 9 Lawsuits alleged bodily injury/personal injury occurring in whole or in part during the INA 1984 Excess Policy.  The terms of the INA 1984 Excess Policy unambiguously requires INA to indemnify Plaintiffs for the John Doe 6 and John Doe 9 settlements, in full.  Alternatively, the terms of the INA 1984 Excess Policy are ambiguous and must be construed in favor of coverage for Plaintiffs.

159.     The settlement reached with John Doe 6 and John Doe 9 are reasonable and INA has breached its contractual obligations under the INA 1984 Excess Policy by, among other things, refusing and failing to indemnify Plaintiffs in full for the John Doe 6 and John Doe 9 settlements in accordance with the express terms of the INA 1984 Excess Policy.

160.     As a result of INA's breach, Plaintiffs have sustained substantial damages.

## COUNT SEVEN
### Breach of Contract Against Allianz Regarding the John Doe 7 Settlement

161.     The foregoing allegations are incorporated herein by reference.

162.     The Allianz Policy is a valid and enforceable contract.

163.     Plaintiffs have standing to pursue claims under the Allianz Policy.

164.     Plaintiffs have satisfied all conditions precedent under the Allianz Policy.

165.     The John Doe 7 Lawsuit alleges bodily injury/personal injury occurring during the policy period of the Allianz Policy.

166.     The terms of the Allianz Policy unambiguously require Allianz to indemnify Plaintiffs for the John Doe 7 settlement.

167.     Alternatively, the terms of the Allianz Policy are ambiguous and must be construed in favor of coverage for Plaintiffs.

168.     Allianz has breached its contractual obligations under the Allianz Policy by, among other things, refusing and failing to indemnify Plaintiffs in accordance with the express terms of the Allianz Policy.

169.     As a result of Allianz's breach, Plaintiffs have sustained substantial damages.

## COUNT EIGHT
### Breach of Contract Against Allianz Regarding the Roe 90 Settlement

170.     The foregoing allegations are incorporated herein by reference.

171.     The Allianz Policy is a valid and enforceable contract.

172.     Plaintiffs have standing to pursue claims under the Allianz Policy.

173.     Plaintiffs have satisfied all conditions precedent under the Allianz Policy.

174.    The Roe 90 Lawsuit alleges bodily injury/personal injury occurring in whole or in part during the policy period of the Allianz Policy.

175.    The terms of the Allianz Policy unambiguously require Allianz to indemnify Plaintiffs for the Roe 90 settlement.

176.    Alternatively, the terms of the Allianz Policy are ambiguous and must be construed in favor of coverage for Plaintiffs.

177.    Allianz has breached its contractual obligations under the Allianz Policy by, among other things, refusing and failing to indemnify Plaintiffs in accordance with the express terms of the Allianz Policy.

178.    As a result of Allianz's breach, Plaintiffs have sustained substantial damages.

## COUNT NINE
### Violations of Chapter 542 of the Texas Insurance Code Against INA

179.    The foregoing allegations are incorporated herein by reference.

180.    Plaintiffs' claim for coverage includes a first-party claim.

181.    INA's delays and/or denials of coverage violate the Prompt Payment of Claims statute in Chapter 542 of the Texas Insurance Code.

182.    Chapter 542 provides that "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim,. . . the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058.

183.    INA has received all items, statements and forms reasonably requested and required under Section 542.055 or, alternatively, in light of INA's denial of coverage, Plaintiffs were not required to submit such items, statements and forms.

184.    INA has nonetheless refused to pay and/or delayed payment of amounts that are clearly covered under the INA Policies.

185.    In refusing, failing and/or delaying payment of Plaintiffs' defense costs in connection with the Underlying Lawsuits, INA has violated Chapter 542 of the Texas Insurance Code.

186.    As a consequence of its statutory violation, INA is liable to pay Plaintiffs, in addition to the amount of its insurance claim, interest on the amount of its claim at the rate of 18 percent per annum, together with reasonable attorneys' fees. *See* TEX. INS. CODE Sec. 542.060.

## COUNT TEN
### Chapter 541 of the Texas Insurance Code Claim
### Against INA Related to John Doe 2

187.    The foregoing allegations are incorporated herein by reference.

188.    Plaintiffs have provided the requisite notice under Section 541 of the Texas Insurance Code.

189.    INA has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

190.    INA has violated Section 541.060(1) of the Texas Insurance Cody by misrepresenting to Plaintiffs a material fact or policy provision relating to coverage.

191.    INA has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John Doe 2 Lawsuit with respect to which Plaintiffs' liability had become reasonably clear.

192.    INA has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay the John Doe 2 Lawsuit without conducting a reasonable investigation with respect to those claims.

193.    As a result of INA's conduct, Plaintiffs have suffered substantial damages. The amounts of these damages are confidential, but Plaintiffs will provide the amount of damages and expenses, including attorney's fees reasonably incurred to INA, separately outside this petition.

194.    INA knowingly committed one or more of the violations referenced above, and thus Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

### COUNT ELEVEN
**Notice of Intent to Pursue Claim Under Chapter 541 of the
Texas Insurance Code Against INA Related to John Doe 6 and John Doe 9**

195.    The foregoing allegations are incorporated herein by reference.

196.    Pursuant to § 541.154 of the Texas Insurance Code, Plaintiffs hereby provide notice of their intent to pursue a claim against INA under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

197.    By, among other things, taking the actions outlined in ¶¶ 94-100, INA has engaged in unfair or deceptive acts or practices as defined by Section 541.060(1) of the Texas Insurance Code.

198.    INA has violated Section 541.060(2) of the Texas Insurance Code by failing to acknowledge the reasonable settlements values for John Doe 3 and John Doe 4, and by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John Doe 6 and John Doe 9 Lawsuits with respect to which Plaintiffs' liability had become reasonably clear.

199.    INA has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

200.    As a result of INA's conduct, Plaintiffs have suffered substantial damages. The amounts of these damages are confidential, but Plaintiffs will provide the amount of damages

and expenses, including attorney's fees reasonably incurred to INA, separately outside this petition.

201.    INA knowingly committed one or more of the violations referenced above, and thus Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

**COUNT TWELVE**
**Chapter 541 of the Texas Insurance Code Claim Against**
**National Surety Related to John Does 2 and 3**

202.    The foregoing allegations are incorporated herein by reference.

203.    Plaintiffs have provided the requisite notice under Section 541 of the Texas Insurance Code.

204.    National Surety has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

205.    National Surety has violated Section 541.060(1) of the Texas Insurance Cody by misrepresenting to Plaintiffs a material fact or policy provision relating to coverage.

206.    National Surety has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John Doe 2 and 3 Lawsuits with respect to which Plaintiffs' liability had become reasonably clear.

207.    National Surety has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay claims associated with the John Doe 2 and 3 Lawsuits without conducting a reasonable investigation with respect to those claims.

208.    As a result of National Surety's conduct, Plaintiffs have suffered substantial damages. The amounts of these damages are confidential, but Plaintiffs will provide the amount

of damages and expenses, including attorney's fees reasonably incurred to National Surety, separately outside this petition.

209.    National Surety knowingly committed one or more of the violations referenced above, and thus Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## COUNT THIRTEEN
### Notice of Intent to Pursue Claim Under Chapter 541 of the Texas Insurance Code Against National Surety Related to John Doe 4 and 6

210.    The foregoing allegations are incorporated herein by reference.

211.    Pursuant to § 541.154 of the Texas Insurance Code, Plaintiffs hereby provide notice of their intent to pursue a claim against National Surety under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

212.    By, among other things, taking the actions outlined in ¶¶ 80-93, National Surety has engaged in unfair or deceptive acts or practices as defined by Section 541.060(1) of the Texas Insurance Code.

213.    National Surety has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John Does 4 and 6 Lawsuits with respect to which Plaintiffs' liability had become reasonably clear.

214.    National Surety has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

215.    As a result of National Surety's conduct, Plaintiffs have suffered substantial damages. The amounts of these damages are confidential, but Plaintiffs will provide the amount of damages and expenses, including attorney's fees reasonably incurred to National Surety, separately outside this petition.

216.    National Surety knowingly committed one or more of the violations referenced above, and thus Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

**COUNT FOURTEEN**
**Chapter 541 of the Texas Insurance Code Claim Against**
**Allianz Related to the Roe Lawsuit**

217.    The foregoing allegations are incorporated herein by reference.

218.    Plaintiffs have provided the requisite notice under Section 541 of the Texas Insurance Code.

219.    Allianz has engaged in unfair or deceptive acts or practices as defined by Section 541.060(1) of the Texas Insurance Code.

220.    Allianz has violated Section 541.060(2) of the Texas Insurance Code by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Roe Lawsuit with respect to which Plaintiffs' liability had become reasonably clear.

221.    Allianz has violated Section 541.060(7) of the Texas Insurance Code by refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

222.    As a result of Allianz's conduct, Plaintiffs have suffered substantial damages. The amounts of these damages are confidential, but Plaintiffs will provide the amount of damages and expenses, including attorney's fees reasonably incurred to Allianz, separately outside this petition.

223.    Allianz knowingly committed one or more of the violations referenced above, and thus Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

### COUNT FIFTEEN
### Notice of Intent to Pursue Claim Under Chapter 541 of the
### Texas Insurance Code Against Allianz Related to John Doe 7

224.    The foregoing allegations are incorporated herein by reference.

225.    Pursuant to § 541.154 of the Texas Insurance Code, Plaintiffs hereby provide

notice of their intent to pursue a claim against Allianz under § 541.151 of the Texas Insurance

Code by amending this suit after 60 days.

226.    By, among other things, taking the actions outlined in ¶¶ 101-112, Allianz has

engaged in unfair or deceptive acts or practices as defined by Section 541.060(1) of the Texas

Insurance Code.

227.    Allianz has violated Section 541.060(2) of the Texas Insurance Code by failing to

attempt in good faith to effectuate a prompt, fair, and equitable settlement of the John Doe 7

Lawsuit with respect to which Plaintiffs' liability had become reasonably clear.

228.    Allianz has violated Section 541.060(7) of the Texas Insurance Code by refusing

to pay a claim without conducting a reasonable investigation with respect to the claim.

229.    As a result of Allianz's conduct, Plaintiffs have suffered substantial damages. The

amounts of these damages are confidential, but Plaintiffs will provide the amount of damages

and expenses, including attorney's fees reasonably incurred to Allianz, separately outside this

petition.

230.    Allianz knowingly committed one or more of the violations referenced above, and

thus Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not

to exceed three times the amount of actual damages.

### COUNT SIXTEEN
### Attorneys' Fees (All Defendants)

231.    The foregoing allegations are incorporated herein by reference.

232.    Due to the actions of the Defendants, Plaintiffs have been required to retain the services of the law firm of Haynes and Boone, LLP of Dallas, Texas. Plaintiffs have agreed to pay Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action.

233.    Pursuant to § 37.009 of the Texas Civil Practices & Remedies Code, Plaintiffs are entitled to an award of reasonable and necessary attorneys' fees against the Defendants in an amount to be established at trial.  Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code and Chapter 541 of the Texas Insurance Code, Plaintiffs are also entitled to an award of reasonable attorneys' fees against National Surety, Allianz and INA.  Plaintiffs are likewise entitled to an award of reasonable attorneys' fees under Chapter 542 of the Texas Insurance Code against INA.

## VI.    JURY DEMAND

234.    Plaintiffs hereby request a jury trial pursuant to TEX. R. CIV. P. 216(a).

## VII.    REQUEST FOR DISCLOSURE

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose, within thirty (30) days of service of this request, the information or material described in Rule 194.2

## VIII.    PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court grant them the following relief:

a.    Declaratory Judgment that (1) the FEA bars INA and Century Indemnity from allocating liability for the Underlying Lawsuits to insurance policies for each year of abuse; and (2) the terms and conditions of the FEA do not apply to other policies which are not subject to the FEA;

b.    Judgement awarding Plaintiffs all damages sustained as a result of INA's breach of contract through its failure to pay defense costs due and owing under INA's and Century's policies;

c.    Judgment awarding Plaintiffs all damages sustained as a result of National Surety's breach of contract with respect to the John Doe 2, 3, 4, and 6 settlements;

d.    Judgment awarding Plaintiffs all damages sustained as a result of INA's breach of contract with respect to (1) the reasonable settlement values of John Doe 3, 4, and 6; and (2) INA's failure to pay the John Doe 9 settlement;

e.    Judgment awarding Plaintiffs all damages sustained as a result of Allianz's breach of contract with respect to the John Doe 7 and Roe 90 settlements;

f.    Judgment awarding Plaintiffs actual and treble damages resulting from INA's violations of Chapters 541 and/or 542 of the Texas Insurance Code;

g.    Judgment awarding Plaintiffs actual and treble damages resulting from National Surety's violations of Chapter 541 of the Texas Insurance Code;

h.    Judgment awarding Plaintiffs actual and treble damages resulting from Allianz's violations of Chapter 541 of the Texas Insurance Code;

i.    Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter against all defendants under Chapter 37 of the Texas Civil Practice & Remedies, Chapter 38 of the Texas Civil Practice & Remedies Code, Chapter 542, and/or Chapters 541 of the Texas Insurance Code;

j.    Judgment awarding Plaintiffs pre-judgment and post-judgment interest as allowed by law;

k.    Judgment awarding Plaintiffs all costs of court; and

l.    Any and all other relief to which Plaintiffs may be entitled.

Respectfully submitted,

/s/ *Ernest Martin, Jr.* _____
Ernest Martin, Jr.
State Bar No. 13063300
ernest.martin@haynesboone.com
Adrian Azer
State Bar No. 24048332
adrian.azer@haynesboone.com
Carla Green
State Bar No. 24097762
carla.green@haynesboone.com
Emily Buchanan
State Bar No. 24101568
Emily.buchanan@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 651-5940

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served to the following by electronic service on April 5, 2019:

**Attorneys for Defendant Nat'l Surety Corporation**

Christopher W. Martin
William Edward McMichael
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis Street, 20th Floor
Houston, Texas 77002
martin@mdjwlaw.com
mcmichael@mdjwlaw.com

and

Todd C. Jacobs
David A. Caves
Bradley Riley Jacobs PC
320 W. Ohio Street, Suite 3W
Chicago, Illinois 60654
tjacobs@bradleyriley.com
dcaves@bradleyriley.com

**Attorneys For Defendant Allianz Global Risks Us Insurance Company**

Nicole Figueroa
Calli Turner
McDermott Will & Emery LLP
2501 N. Harwood, Suite 1900
Dallas, Texas 75201
nfigueroa@mwe.com
cturner@mwe.com

and

Margaret Warner
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
mwarner@mwe.com

**Attorneys For Defendant Century Indemnity Company**

Stephen O. Venable
Charles B. Walther
Walker Wilcox Matousek, LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
svenable@wwmlawyers.com
bwalther@wwmlawyers.com

and

Christopher A. Wadley
Walker Wilcox Matousek, LLP
One North Franklin Street
Suite 300
Chicago, IL 60606
cwadley@wwmlawyers.com

*/s/ Ernest Martin, Jr.*
Ernest Martin, Jr.

# EXHIBIT E

| Sidley Currently Represents a Subsidiary or Affiliate[1] | Party to the Illinois Coverage Action[2] | Party to the first Texas Coverage Action[3] | Party to the second Texas Coverage Action[4] |
|---|---|---|---|
| Allianz Global Risks US Insurance Company | Yes | | Yes |
| Columbia Casualty Company | Yes | | |
| First State Insurance Company | Yes | Yes | |
| Harbor Insurance Company | Yes | | |
| Hartford Accident and Indemnity Company | | Yes | |
| Insurance Company of North America | Yes | | Yes |
| Landmark Insurance Company | Yes | | |
| Lexington Insurance Company | Yes | | |
| National Union Fire Insurance Company Of Pittsburgh, PA | Yes | | |
| Twin City Fire Insurance Company | Yes | | |

---

[1]    Listed in the Declaration of Jessica C. K. Boelter as "Active Unrelated Representations." Application Ex. B Boelter Decl. at Schedule 2(i), ECF No. 204.

[2]    *Nat'l Surety Corp. v. Boy Scouts of Am.*, No. 2017-CH-14975 (Ill. Cir. Ct., Chancery Div. filed Nov. 9, 2017).

[3]    *Boy Scouts of Am. v. The Hartford Accident and Indemnity Co.*, No. DC-18-07313 (Tex. Dist. Ct. filed June 5, 2018).

[4]    *Boy Scouts of Am. v. Ins. Co. of N. Am.*, No. DC-18-11896 (Tex. Dist. Ct. filed Aug. 24, 2018).

1

# EXHIBIT F

CAUSE NO. DC-18-11896

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, ALOHA COUNCIL, NEW BIRTH OF FREEDOM COUNCIL, CHICAGO AREA COUNCIL | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| INSURANCE COMPANY OF NORTH AMERICA, CENTURY INDEMNITY COMPANY, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, NATIONAL SURETY CORPORATION | § § § § § § | |
| Defendants. | § | 192ND JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANTS INSURANCE COMPANY OF NORTH AMERICA AND CENTURY INDEMNITY COMPANY

TO:    Defendants Insurance Company of North America and Century Indemnity Company by and through their attorneys of record, Stephen O. Venable, Charles B. Walther, Walker Wilcox Matousek, LLP, 1001 McKinney Street, Suite 2000, Houston, Texas 77002

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Plaintiffs Boy Scouts of America ("BSA"), Aloha Council ("AC"), New Birth of Freedom Council ("NBC"), and Chicago Area Counsel ("CAC") (collectively, "Plaintiffs") hereby serve the following First Set of Requests for Production to Defendants Insurance Company of North America and Century Indemnity Company (collectively, "Defendants" or "Century").

## I.    DEFINITIONS

1.    "Communication" means every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether oral or written, including, but not limited to, conversations, meetings, discussions, telephone calls, telegrams, telecopies, emails, voicemails, telexes, seminars, conferences, writings, letters,

messages, notes, or memoranda, and other Documents that contain or reflect such transmission of information.

2.      "Concern," "concerning," "referring to," "regarding," "reflecting" and "relating" are interchangeable, and mean about, including, regarding, referencing, involving, concerning, connected with, pertaining to, constituting, summarizing, reflecting, supporting, containing, analyzing, considering, explaining, discussing, describing, demonstrating, prepared for, resulting from, mentioning, commenting on, embodying, evaluating, analyzing, and/or constituting, whether directly or indirectly, explicitly or implicitly, or in whole or in part, a stated subject matter.

3.      The terms "Document" and "Documents" are used in the broadest sense possible and include but are not limited to:

   a.      all material in written or printed format of any kind, such as letters, correspondence, facsimiles, memoranda, records, telegrams, teletypes cablegrams, reports, notes, books, papers, minutes, schedules, tabulations, computations, lists, ledgers, journals, purchase orders, contracts, invoices, agreements, vouchers, accounts, checks, affidavits, diaries, calendars, desk pads, drawings, sketches, charts, graphs, or any other written or printed matter or tangible thing on which any words, phrases or symbols are affixed;

   b.      all electronic or digital information of any kind (translated, if necessary, into reasonably usable form) contained in any kind of electronic or digital format, such as (1) electronic mail or "e-mail"; (2) anything maintained on any kind of USB drive, computer disk, diskette, floppy disk, "zip" file, or CD-ROM disk; (3) anything maintained in an office or home personal computer or laptop computer; (4) anything maintained on any kind of server or mainframe system, or in any database; (5) any word processing, Excel, spreadsheet, or similar Documents; (6) voice mail stored electronically; (7) calendar programs and similar devices; (8) digital pictures, video, and audio; (9) any information maintained on any internet or intranet sites; and (10) any other possible sources of active or inactive electronic or digital data or information;

   c.      all sound or picture recordings of any kind, such as tape recordings, photographs, videotapes, photo stats, motion pictures, or slides; and

      d.       copies or drafts of any such Documents referred to above, including, but not limited to, for electronic or digital information, any kind of data that has been archived, backed-up, residing on obsolete hardware, or is information that is "residual" or otherwise may have been "deleted" by command but is or may be present or residing in any way within the computer or retrievable in any way.

This includes, but is not limited to, e-mail and other data or information that exists in electronic or magnetic form as identified by Rule 196.4.

4.      "Employee" means any former or present employee, officer, agent, representative, consultant, office, committee, department, division, or group within or retained by You.

5.      "First Encounter Agreement" means the Settlement Agreement Regarding Sexual Molestation Claims executed between Plaintiffs and certain INA/Century entities on or about May 24, 1996.

6.      "Hacker Lawsuits" means the case styled *John Doe, et al. v. BSA*, *et al.*, No. 2012-L-013569 and subsequent separate actions in the Circuit Court of Cook County in Chicago, Illinois.

7.      "Insured" means an assured or insured under any Policy.

8.      "Person" means natural persons or individuals, corporations, limited liability companies, partnerships, professional corporations or associations, governments or agencies thereof, quasi-public entities, proprietorships, joint ventures, trusts, estates, and all other forms of legal entities.

9.      "Petition" means Plaintiffs' Original Petition filed in the 192nd Judicial District, District Court of Dallas County, Texas, Cause No. DC-18-11896.

10.      "Policy" means an insurance policy or portion of an insurance policy that affords coverage for an insured's liability for, among other things, personal injury, property damage, bodily injury, and commercial liability.  This definition includes, but is not limited to, any policy

designated as a liability policy, general liability policy, "primary" liability policy, "excess" liability policy, "umbrella" policy, "follow form" policy, "third-party" policy, "products liability" policy, and any part(s) of any such insurance policy, including any declarations pages, endorsements, riders, binders, policy jackets, standard forms, inserts, or any other item that is or could be construed to be a part of or related to the terms of such insurance policy. The term "Policy" also means anything You describe as an insurance policy.

11.    "Reinsurance Agreement" means any insurance Policy or other Document under which any Person may be liable, or may have been liable, to indemnify, reimburse, or otherwise insure or reinsure You for payments that You have made, may make, or could have been asked to make under the Subject Insurance Policies.

12.    "Reinsurer" means any Person that issued, or that otherwise may have an obligation under, a Reinsurance Agreement.

13.    "Subject Insurance Policies" means any Policy that the Petition alleges You issued, sold, or subscribed to and that was purchased by Plaintiffs anytime from 1962-2019.

14.    "Sexual Abuse Claims" includes any claim and/or lawsuit in which an individual alleges that they were sexually abused while participating in a program affiliated, sponsored, or organized by Plaintiffs.

15.    "You" or "Your" refers to Defendants Insurance Company of North America and Century Indemnity Company and/or any predecessors, successors, parent, sister or affiliated companies, partnerships, joint ventures, and all current and former officers, directors, employees, partners, shareholders, owners, members, sureties, assigns, agents, servants, or other representatives acting for or on its behalf.

## II.    INSTRUCTIONS

1.    Defendants are instructed to respond to Plaintiffs' First Set of Requests for Production in the manner provided for by the Texas Rules of Civil Procedure, as interpreted and applied by Texas courts.

2.    Defendants are instructed to produce, or make available for inspection, responsive documents at the offices of Haynes and Boone, LLP, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219, on the date required for Defendants to respond to Plaintiffs' First Set of Requests for Production under Rule 196.

3.    These Document Requests cover, without limitation, all responsive Documents and tangible things that are within Your possession, custody, or control.  This includes Documents in the possession, custody, or control of any other Persons that You consulted concerning any factual matters or opinions relating to any of the facts or issues involved in the Petition or in the Sexual Abuse Claims, including Your experts, consultants, and, unless privileged, Your current and former attorneys.

4.    All Documents should be produced as they are kept in the usual course of business or should be organized and labeled to correspond to the specific Document Request to which they relate.

5.    Each Document Request calls for the production of any versions or drafts of the Document that differ in any respect whatsoever from the final draft or from any other version or draft (e.g., by reason of handwritten notes or comments having been added to one copy of a Document but not to the original or other copies thereof).

6.    Where an objection is made to any Document Request, or any subpart thereof, the objection should state with specificity all grounds for the objection.

7.      If any Document is withheld based on a claim of privilege, protection, or other ground for non-disclosure, pursuant to Texas Rule of Civil Procedure 193.3, Plaintiffs request the production of a privilege log.  The log or index must establish the basis for the assertion of a privilege, such that the assertion can reasonably be tested.  The log or index must, at a minimum, identify the following:

   a.   the "Bates" number of the Document;
   b.   the date (or Your best approximation thereof) on which the Document was prepared;
   c.   the author(s) of the Document;
   d.   all recipient(s) or Persons to whom the Document was sent or shown, whether addressee(s) or Persons who were copied or blind-copied thereon;
   e.   the title and subject matter(s) of the Document;
   f.   a description of the type of Document withheld (e.g., letter, report, etc.);
   g.   whether the Document was redacted or withheld in its entirety; and
   h.   the particular ground(s) for redacting the information or withholding the Document sufficient to allow counsel for BSA and the Court to determine the appropriateness of such claim of privilege, protection, or other ground for non-disclosure.

8.      You are obligated to disclose any requested, non-privileged information contained in any responsive Document, even if any such Document also contains other information that may be subject to a claim of privilege.  To the extent a requested Document contains information that You claim is subject to privilege, protection, or other ground for non-disclosure, produce the Document to the fullest extent possible so as not to disclose the specific portion of the Document claimed to be protected (i.e., redact it), and then furnish the information requested in Instruction No. 7 above as to the portion of the Document withheld.  If the entirety of any Document is being withheld, furnish the information requested in Instruction No. 7 above.

9.      If any Documents are withheld on the assertion that production is precluded by a protective order or confidentiality agreement, describe the terms of the order or agreement such that the assertion can reasonably be tested.

10.     In the event that any Document called for by these Document Requests has been destroyed, lost, discarded, or otherwise disposed of, any such Document is to be identified and described as completely as possible, including the following information with respect to each such Document:

a.      the date (or Your best approximation thereof) of the disposal;
b.      the manner of the disposal;
c.      the reason for the disposal;
d.      the Person(s) authorizing the disposal;
e.      the Person(s) disposing of the Document;
f.      the title and subject matter(s) of the Document; and
g.      the efforts made to locate the Document.

11.     If any response, or any portion thereof, to a Document Request is incomplete due to an incomplete or ongoing investigation, the Document Request is to be answered as completely as possible based upon the investigation completed and information available to date and must include the following:

a.      the nature and extent of the investigation completed to date;
b.      the nature and extent of the investigation that must be completed in order to respond fully to the Document Request; and
c.      the date when the investigation can be expected to be completed so that the Document Request can be answered in full.

12.     The singular form of any word shall include the plural and the plural form shall include the singular.

13.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Document Request all responses that might other-wise be construed to be outside its scope.

14.     The word "any" shall be understood to include and encompass "all" and vice-versa as necessary to make the Document Requests inclusive rather than exclusive.

15.     The word "each" shall be understood to include and encompass "every" and vice-versa as necessary to make the Document Requests inclusive rather than exclusive.

16.     Pursuant to Rule 193.5, You are instructed to promptly amend or supplement any and all responses made hereto if You learn that any response to these interrogatories or requests for production was incomplete when made or is no longer complete or correct.

17.     You are instructed that a failure by You to make, amend or supplement a response in a timely manner or to otherwise comply with the Texas Rules of Civil Procedure may result in sanctions against You, including but not limited to those provided for under Rules 193.6 and 215.

18.     Pursuant to Rule 196.4, You are instructed to produce electronic or magnetic data responsive to Plaintiffs' First Set of Requests for Production in native format and in TIF format.

## III.     DOCUMENT REQUESTS

1.     All Documents and Communications related to the negotiation of the First Encounter Agreement.

2.     All Documents and Communications related to Century's allocation of liability for the Sexual Abuse Claims to insurance policies for each year of abuse, including any and all internal communications related to the allocation of any such liabilities.

3.     All Documents and Communications related to any claims for contribution against other insurers based upon Century's payment of Sexual Abuse Claims pursuant to the First Encounter Agreement.

4.     All Documents or Communications between Century and the Reinsurers of the Subject Insurance Policies involving the Sexual Abuse Claims, including but not limited to any submissions in connection with arbitration referenced in Civil Action No. 18-12041 in the United States District Court for the District of Massachusetts, and any submissions in the aforementioned

civil action.

5.     All Documents, including but not limited to underwriting and training manuals, guidelines, or instructional materials, that relate to Your policies and procedures in underwriting and placing any general liability Policies between 1962 – 1972 and 1978 – 1990.

6.     All Documents concerning, used by, referred to, or relied upon, during the drafting, placing, issuing, underwriting, or renewal of the Subject Insurance Policies, including but not limited to:

    a.     Documents You used or reviewed in the underwriting process;

    b.     Documents obtained from Plaintiffs;

    c.     underwriting files;

    d.     Documents relating to Plaintiffs' business activities, including Documents that You generated;

    e.     underwriting manuals, guidelines, policies and procedures, and reference instruction materials;

    f.     actuarial analyses;

    g.     Documents relating to premium calculations;

    h.     other Documents relating to the application for, or the negotiation, evaluation, drafting, issuance, or approval of, the Subject Insurance Policies, including, but not limited to, Communications between or among You and Plaintiffs; and

    i.     Communications with, and Documents obtained from or provided for, or the negotiation evaluation, drafting, issuance, or approval of, the Subject Insurance Policies.

7.      All minutes of or other written documentation relating to every meeting of Your board of directors, any committee or subcommittee thereof, any task force or working group thereof, or any of Your other executive task forces or working groups, during which there was discussion of Bodily Injury Claims arising from sexual encounters/abuse or insurance coverage for such claims, including without limitation, the Sexual Abuse Claims or insurance coverage for such claims, including but not limited to handouts, agendas, attachments, and notes made by participants.

8.      All Documents concerning the underwriting, drafting, history, formulation, developments, or revision of the Subject Insurance Policies or the Policies to which the Subject Insurance Policies follow form regarding coverage for punitive damages.

9.      All Documents, including without limitation claims-handling manuals, guidelines, policies, practices, directives, and procedures, that relate to Your handling, processing, adjusting, review, investigation, evaluation, acceptance, denial, reservation of rights, or other response to Plaintiffs' claims for coverage with respect to the Sexual Abuse Claims.

10.     All Documents concerning (a) any investigation that You conducted pertaining to the Sexual Abuse Claims, and (b) any database, computer system, or other system that contains or reflects information about the Sexual Abuse Claims, including but not limited to databases, indices, computer programs, computer software, and computer databases.

11.     Your complete claims files pertaining to the Sexual Abuse Claims, including but not limited to all inter-office memoranda and other forms of written communication of any employee, agent, or third-party adjuster of Century relating to the initial or continued processing or analysis of the Sexual Abuse Claims.

12.     All Documents that contain or relate to any Communications between You and any

other Persons regarding the Sexual Abuse Claims or Plaintiffs' claims for insurance coverage for the Sexual Abuse Claims, including but not limited to Communications with (a) any other insurer; (b) Plaintiffs or their counsel; (c) any Persons submitting or pursuing any Sexual Abuse Claims, including without limitation counsel for any claimants; or (d) any insurance broker or agent.

13.    All Documents relating to whether the Subject Insurance Policies include any deductibles or self-insured retentions, and whether such deductibles or self-insured retentions have been satisfied.

14.    All Documents related to whether the Subject Insurance Policies (a) do not obligate You to pay defense costs, (b) obligate You to pay defense costs subject to the applicable limits of liability, or (c) obligate You to pay defense costs in addition to the applicable limits of liability, including but not limited to drafting history of such provisions or underwriting manuals.

15.    All Documents concerning, summarizing, depicting, or relating to the impairment, erosion, or exhaustion of any deductibles, self-insured retentions, or limits of liability of the Subject Insurance Policies, including without limitation all Communications with any other insurer, all past and current loss runs, and any other Documents concerning any payments made by You or by any other insurer under any of the Subject Insurance Policies.

16.    All Documents concerning, summarizing, depicting, or relating to the impairment, erosion, or exhaustion of any deductibles, self-insured retentions, or limits of liability of any Policy that You contend must be exhausted before any Subject Insurance Policy attaches, including without limitation all Communications with any other insurer, all past and current loss runs, and any other Documents concerning any payments made under such Policies.

17.    All Documents, including without limitation Communications with any other insurer, concerning the potential that any Policy excess of any of the Subject Insurance Policies

may or will be attached based on the impairment, erosion, or exhaustion of any of the Subject Insurance Policies.

18.     All Documents and Communications prior to June 29, 2018 that relate to Century's evaluation of the settlement values for the claimants in the Hacker Lawsuits that trigger coverage under the 1983 INA Excess Policy No. XCP 144961 and 1984 INA Excess Policy No. XCP 145366, including but not limited to any Documents and Communications with outside counsel.

19.     All Documents and Communications relating to notices provided to You by Plaintiffs or any other Person regarding (a) the Sexual Abuse Claims, or (b) any other claims or circumstances that were tendered for potential coverage under the Subject Insurance Policies.

20.     All Documents and Communications concerning the reserves set by You in connection with Plaintiffs' claims for coverage for the Sexual Abuse Claims.

21.     All Documents and Communications between You and any Reinsurer(s) relating to: (a) Plaintiffs; (b) the Subject Insurance Policies; (c) the Sexual Abuse Claims; or (d) Plaintiffs' claims for insurance coverage under the Subject Insurance Policies (whether or not regarding the Sexual Abuse Claims).

22.     All Documents concerning any lawsuits or arbitrations since 2008 involving sexual abuse, sexual molestation, or sexual encounters, in which You have contested the reasonableness of any proposed settlement.  This Document Request is limited to pleadings, written discovery responses, including without limitation answers to interrogatories and responses to requests for admission and orders or decisions.

23.     All Documents concerning Century's internal valuation process for sexual abuse, sexual molestation, or sexual encounters, including determining the value of such claims based on the frequency or severity of abuse.  This includes but is not limited to internal databases, internal

memoranda, claims guidelines, indices, computer programs, computer software, and computer databases.

24.    All Documents concerning Century's evaluation of the reasonableness of defense costs and/or fees, including but not limited to internal databases, internal memoranda, claims guidelines, indices, computer programs, computer software, and computer databases.

25.    All Documents concerning any lawsuits or arbitrations since 2008 in which You have contested the reasonableness of any defense costs and/or fees.  This Document Request is limited to pleadings, written discovery responses, including without limitation answers to interrogatories and responses to requests for admission and orders or decisions.

26.    All Documents or other exhibits you intend to introduce at the trial of this lawsuit.

27.    All Documents relating to the Sexual Abuse Claims generated by, prepared by, prepared for, or reviewed by any expert retained by Century.

28.    The curriculum vitae of each expert who may testify at the trial of this lawsuit.

Respectfully submitted,


/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
ernest.martin@haynesboone.com
Adrian Azer
State Bar No. 24048332
adrian.azer@haynesboone.com
Carla Green
State Bar No. 24097762
carla.green@haynesboone.com
Emily Buchanan
State Bar No. 24101568
Emily.buchanan@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 651-5940

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served to the following by electronic service on December 27, 2018:

**Attorneys for Defendant Nat'l Surety Corporation**

Christopher W. Martin
William Edward McMichael
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis Street, 20th Floor
Houston, Texas 77002
martin@mdjwlaw.com
mcmichael@mdjwlaw.com

and

Todd C. Jacobs
David A. Caves
Bradley Riley Jacobs PC
320 W. Ohio Street, Suite 3W
Chicago, Illinois 60654
tjacobs@bradleyriley.com
dcaves@bradleyriley.com

**Attorneys For Defendant Allianz Global Risks Us Insurance Company**

Nicole Figueroa
Calli Turner
McDermott Will & Emery LLP
2501 N. Harwood, Suite 1900
Dallas, Texas 75201
nfigueroa@mwe.com
cturner@mwe.com

and

Margaret Warner
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
mwarner@mwe.com

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
TO DEFENDANTS INSURANCE COMPANY OF NORTH AMERICA
AND CENTURY INDEMNITY COMPANY**                                    **PAGE 15**

**Attorneys For Defendant Century Indemnity Company**

Stephen O. Venable
Charles B. Walther
Walker Wilcox Matousek, LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
svenable@wwmlawyers.com
bwalther@wwmlawyers.com

*/s/ Ernest Martin, Jr.*
Ernest Martin, Jr.

4830-8045-0178 v.2

# EXHIBIT G

CAUSE NO. DC-18-11896

| | | |
|---|---|---|
| BOY SCOUTS OF AMERICA, ALOHA COUNCIL, NEW BIRTH OF FREEDOM COUNCIL, CHICAGO AREA COUNCIL | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| v. | § § | |
| | § | DALLAS COUNTY, TEXAS |
| INSURANCE COMPANY OF NORTH AMERICA, CENTURY INDEMNITY COMPANY, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, NATIONAL SURETY CORPORATION | § § § § § § | |
| Defendants. | § § | 192ND JUDICIAL DISTRICT |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES
TO DEFENDANTS INSURANCE COMPANY OF
NORTH AMERICA AND CENTURY INDEMNITY COMPANY**

TO:    Defendants Insurance Company of North America and Century Indemnity Company by and through their attorneys of record, Stephen O. Venable, Charles B. Walther, Walker Wilcox Matousek, LLP, 1001 McKinney Street, Suite 2000, Houston, Texas 77002

Pursuant to Rule 197 of the Texas Rules of Civil Procedure, Plaintiffs Boy Scouts of America ("BSA"), Aloha Council ("AC"), New Birth of Freedom Council ("NBC"), and Chicago Area Counsel ("CAC") (collectively, "Plaintiffs") hereby serve the following First Set of Interrogatories to Defendants Insurance Company of North America and Century Indemnity Company (collectively, "Defendants" or "Century").

## I.    DEFINITIONS

1.    "Communication" means every manner or means of disclosure, transfer, or exchange of information (in the form of facts, ideas, inquiries, or otherwise), whether oral or written, including, but not limited to, conversations, meetings, discussions, telephone calls,

telegrams, telecopies, emails, voicemails, telexes, seminars, conferences, writings, letters, messages, notes, or memoranda, and other Documents that contain or reflect such transmission of information.

2.    "Concern," "concerning," "referring to," "regarding," "reflecting" and "relating" are interchangeable, and mean about, including, regarding, referencing, involving, concerning, connected with, pertaining to, constituting, summarizing, reflecting, supporting, containing, analyzing, considering, explaining, discussing, describing, demonstrating, prepared for, resulting from, mentioning, commenting on, embodying, evaluating, analyzing, and/or constituting, whether directly or indirectly, explicitly or implicitly, or in whole or in part, a stated subject matter.

3.    The terms "Document" and "Documents" are used in the broadest sense possible and include but are not limited to:

    a.    all material in written or printed format of any kind, such as letters, correspondence, facsimiles, memoranda, records, telegrams, teletypes cablegrams, reports, notes, books, papers, minutes, schedules, tabulations, computations, lists, ledgers, journals, purchase orders, contracts, invoices, agreements, vouchers, accounts, checks, affidavits, diaries, calendars, desk pads, drawings, sketches, charts, graphs, or any other written or printed matter or tangible thing on which any words, phrases or symbols are affixed;

    b.    all electronic or digital information of any kind (translated, if necessary, into reasonably usable form) contained in any kind of electronic or digital format, such as (1) electronic mail or "e-mail"; (2) anything maintained on any kind of USB drive, computer disk, diskette, floppy disk, "zip" file, or CD-ROM disk; (3) anything maintained in an office or home personal computer or laptop computer; (4) anything maintained on any kind of server or mainframe system, or in any database; (5) any word processing, Excel, spreadsheet, or similar Documents; (6) voice mail stored electronically; (7) calendar programs and similar devices; (8) digital pictures, video, and audio; (9) any information maintained on any internet or intranet sites; and (10) any other possible sources of active or inactive electronic or digital data or information;

    c.    all sound or picture recordings of any kind, such as tape recordings, photographs, videotapes, photo stats, motion pictures, or slides; and

     d.     copies or drafts of any such Documents referred to above, including, but not limited to, for electronic or digital information, any kind of data that has been archived, backed-up, residing on obsolete hardware, or is information that is "residual" or otherwise may have been "deleted" by command but is or may be present or residing in any way within the computer or retrievable in any way.

This includes, but is not limited to, e-mail and other data or information that exists in electronic or magnetic form as identified by Rule 196.4.

4.     "Employee" means any former or present employee, officer, agent, representative, consultant, office, committee, department, division, or group within or retained by You.

5.     "First Encounter Agreement" means the Settlement Agreement Regarding Sexual Molestation Claims executed between Plaintiffs and certain INA/Century entities on or about May 24, 1996.

6.     "Hacker Lawsuits" means the case styled *John Doe, et al. v. BSA*, *et al.*, No. 2012-L-013569 and subsequent separate actions in the Circuit Court of Cook County in Chicago, Illinois.

7.     "Insured" means an assured or insured under any Policy.

8.     "Identify" means:

     a.     With respect to an individual, to state:

          i.     the Person's full name, present or last known residence, and present or last known home telephone number;

          ii.     the Person's present or last known occupation, employer, title, business address, business telephone number, and business e-mail address;

          iii.     the Person's title and employer at the time of the event either inquired about in the Interrogatory or referenced in Your response;

          iv.     the Person's occupational responsibilities at the time of the event either inquired about in the Interrogatory or referenced in Your response; and

          v.     whether the Person is deceased, if known.

b.      With respect to a company or business entity, to state the name of the company or business entity at the time of the event either inquired about in the Interrogatory or referenced in Your response, its place of incorporation, and the address of its head office at the time of the event either inquired about in the Interrogatory or referenced in Your response;

c.      With respect to a Document, to state:

    i.      the name or title of the Document;
    ii.     the date of the Document;
    iii.    the substance of the Document;
    iv.     the author(s) of the Document;
    v.      the recipient(s) of the Document, including whether the addressee was copied or blind-copied on the Document;
    vi.     the custodian of the Document; and
    vii.    sufficient detail about the Document to Identify its location.

d.      With respect to a Communication, meeting, or act, to state the following:

    i.      the substance of the Communication, meeting, or act;
    ii.     the date, place, and time it occurred;
    iii.    the identity of each participant;
    iv.     the identity of each and every Person present when it took place;
    v.      whether any record of such Communication, meeting, or act was made and if such record now exists, the location of the record and the identity of the Person having possession, custody, or control of that record;
    vi.     the type of Communication (*e.g.*, e-mail or telephone call); and
    vii.    with respect to any other fact, thing, or procedure, to state sufficient detail and information to make the identity of the fact, thing, or procedure reasonably clear to the reader.

9.      "Person" means natural persons or individuals, corporations, limited liability companies, partnerships, professional corporations or associations, governments or agencies thereof, quasi-public entities, proprietorships, joint ventures, trusts, estates, and all other forms of legal entities.

10.    "Petition" means Plaintiffs' Original Petition filed in the 192nd Judicial District, District Court of Dallas County, Texas, Cause No. DC-18-11896.

11.    "Policy" means an insurance policy or portion of an insurance policy that affords coverage for an insured's liability for, among other things, personal injury, property damage, bodily injury, and commercial liability.  This definition includes, but is not limited to, any policy designated as a liability policy, general liability policy, "primary" liability policy, "excess" liability policy, "umbrella" policy, "follow form" policy, "third-party" policy, "products liability" policy, and any part(s) of any such insurance policy, including any declarations pages, endorsements, riders, binders, policy jackets, standard forms, inserts, or any other item that is or could be construed to be a part of or related to the terms of such insurance policy. The term "Policy" also means anything You describe as an insurance policy.

12.    "Reinsurance Agreement" means any insurance Policy or other Document under which any Person may be liable, or may have been liable, to indemnify, reimburse, or otherwise insure or reinsure You for payments that You have made, may make, or could have been asked to make under the Subject Insurance Policies.

13.    "Reinsurer" means any Person that issued, or that otherwise may have an obligation under, a Reinsurance Agreement.

14.    "Subject Insurance Policies" means any Policy that the Petition alleges You issued, sold, or subscribed to and that was purchased by Plaintiffs anytime from 1962-2019.

15.    "Sexual Abuse Claims" includes any claim and/or lawsuit in which an individual alleges that they were sexually abused while participating in a program affiliated, sponsored, or organized by Plaintiffs.

16.     "You" or "Your" refers to Defendants Insurance Company of North America and Century Indemnity Company and/or any predecessors, successors, parent, sister or affiliated companies, partnerships, joint ventures, and all current and former officers, directors, employees, partners, shareholders, owners, members, sureties, assigns, agents, servants, or other representatives acting for or on its behalf.

## II.     INSTRUCTIONS

1.     Answer these Interrogatories or subparts thereof separately and fully in writing under oath.  Answers should include all responsive information known or reasonably available to You and any other Persons consulted concerning any factual matters or matters of opinion relating to any of the facts or issues involved in this Petition or the Sexual Abuse Claims.

2.     Any requested identification, description, or explanation of Documents, Persons, Communications, or other information that is specific in nature should not be interpreted to diminish the breadth of any more general request that may otherwise encompass such information or materials.

3.     No part of any Interrogatory should be left unanswered because an objection is interposed to another part of the Interrogatory.

4.     If any part of the following Interrogatories cannot be answered in full, answer to the extent possible and specify the reasons for Your inability to answer the remainder.  If You assert that You cannot answer an Interrogatory in full or in part because of a protective order or confidentiality agreement, describe the terms of the order or agreement, such that the assertion can reasonably be tested.

5.     These Interrogatories are continuing and require supplemental responses if You discover additional information that is responsive to these Interrogatories.

6.      The singular form of any word shall include the plural and the plural form shall include the singular.

7.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside its scope.

8.      The word "any" shall be understood to include and encompass "all" and vice-versa as necessary to make the Interrogatories inclusive rather than exclusive.

9.      The word "each" shall be understood to include and encompass "every" and vice-versa as necessary to make the Interrogatories inclusive rather than exclusive.

10.     The words "include" or "including" shall be understood to encompass "includes without limitation" and "including without limitation" and vice-versa as necessary to make an Interrogatory inclusive rather than exclusive.

## III.    INTERROGATORIES

1.      Identify all Persons who assisted You in any way in responding to any one of these Interrogatories. In Your response, identify each Interrogatory number(s) with which he or she assisted in answering, regardless of whether the assistance he or she provided was incorporated into the final answer.

2.      Identify each Person who participated in, or is expected to participate in, the search for or collection of Documents responsive to Plaintiffs' First Set of Requests for Production of Documents.

3.      Identify all Persons who were involved in or who have knowledge regarding the underwriting, drafting, marketing, evaluating, approving, brokering, placing, or issuing of the Subject Insurance Policies, including, but not limited to, any applications for the Subject Insurance

Policies, and with respect to each Person, describe the nature of that Person's participation or knowledge.

4.      Identify all Persons who have knowledge regarding the First Encounter Agreement, including but not limited to those Persons involved in the drafting, negotiating, execution, or application of the First Encounter Agreement.

5.      State Century's position regarding its pro-rata payment of Sexual Abuse Claims pursuant to the First Encounter Agreement.

6.      State whether any of the Subject Insurance Policies are or are not exhausted and the basis for such contention. In Your Response, identify the remaining limits for the Subject Insurance Policies if the Subject Insurance Policies are not exhausted, and the basis for such contention.

7.      Identify all Persons who had any responsibility for, or who have knowledge regarding the handling, investigation, evaluation, processing, adjusting, review, or determination of the Sexual Abuse Claims or Plaintiffs' claims for coverage for the Sexual Abuse Claims under the Subject Insurance Policies, and for each person, describe the nature of that Person's responsibility or knowledge.

8.      For each of the Subject Insurance Policies, state whether they (a) do not obligate You to pay defense costs, (b) obligate You to pay defense costs subject to the applicable limits of liability, or (c) obligate You to pay defense costs in addition to the applicable limits of liability. In Your response, describe the basis for Your contentions and Identify each person with knowledge regarding the basis for Your contention.

9.      Identify all litigation involving Century and the Reinsurers of the Subject Insurance Policies involving the Sexual Abuse Claims, including but not limited to (1) the arbitration

between Century and the Reinsurers, and (2) Civil Action No. 18-12041 in the United States District Court for the District of Massachusetts.

10.    Identify all communications with the Reinsurers regarding the Sexual Abuse Claims between 2008 – present.

11.    Identify any internal databases, internal memoranda, claims guidelines, indices, computer programs, computer software, and computer databases in the custody or control of Century that contain information regarding settlement values for sexual abuse claims between 2008 – present.

12.    Identify any internal databases, internal memoranda, claims guidelines, indices, computer programs, computer software, and computer databases in the custody or control of Century that contain information regarding the evaluation of defense fees or costs between 2008 – present.

13.    Identify any individual (expert or non-expert) that prepared valuations for Century regarding reasonable settlements of the Hacker Lawsuits.

Respectfully submitted,

/s/ *Ernest Martin, Jr.*
Ernest Martin, Jr.
State Bar No. 13063300
ernest.martin@haynesboone.com
Adrian Azer
State Bar No. 24048332
adrian.azer@haynesboone.com
Carla Green
State Bar No. 24097762
carla.green@haynesboone.com
Emily Buchanan
State Bar No. 24101568
Emily.buchanan@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:     (214) 651-5000
Telecopier:     (214) 651-5940

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served to the following by electronic service on December 27, 2018:

**Attorneys for Defendant Nat'l Surety Corporation**

Christopher W. Martin
William Edward McMichael
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis Street, 20th Floor
Houston, Texas 77002
martin@mdjwlaw.com
mcmichael@mdjwlaw.com

and

Todd C. Jacobs
David A. Caves
Bradley Riley Jacobs PC
320 W. Ohio Street, Suite 3W
Chicago, Illinois 60654
tjacobs@bradleyriley.com
dcaves@bradleyriley.com

**Attorneys For Defendant Allianz Global Risks Us Insurance Company**

Nicole Figueroa
Calli Turner
McDermott Will & Emery LLP
2501 N. Harwood, Suite 1900
Dallas, Texas 75201
nfigueroa@mwe.com
cturner@mwe.com

and

Margaret Warner
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
mwarner@mwe.com

**Attorneys For Defendant Century Indemnity Company**

Stephen O. Venable
Charles B. Walther
Walker Wilcox Matousek, LLP
1001 McKinney Street, Suite 2000
Houston, Texas 77002
svenable@wwmlawyers.com
bwalther@wwmlawyers.com

*/s/ Ernest Martin, Jr.*
Ernest Martin, Jr.

4815-3072-0642 v.2