# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:  ) | Chapter 11 |
| ) | |
| BOY SCOUTS OF AMERICA ) | Case No. 20-10343 (LSS) |
| AND DELAWARE BSA, LLC,[1] ) | |
| ) | (Jointly Administered) |
| Debtors.  ) | |
| ) | |

## DECLARATION OF CHARLES SLANINA

I, Charles Slanina, pursuant to 28 U.S.C. § 1746(2), under penalty of perjury, hereby declare as follows

### I.    BACKGROUND AND QUALIFICATIONS

1. I am a practicing attorney in Wilmington, Delaware and a partner with the law firm of Finger & Slanina, LLC. My practice is focused on professional responsibility and ethics. I represent clients in Delaware disciplinary matters, and issue advisory and expert opinions on professional responsibility and ethics issues. I have been a member in good standing of the Bar of the State of Delaware since 1980. I am also admitted to the District Court of Delaware, Third Circuit and U.S. Supreme Court. I was Chief Disciplinary Counsel for the Delaware Supreme Court from 1989 to 1993. Since 1993, my practice has focused on professional responsibility matters and disciplinary defense. I am a member of the Association of Professional Responsibility Lawyers of the American Bar Association. I have been a frequent lecturer on professional responsibility and ethics issues for approximately 25 years, and I have been the author of a monthly ethics column in The Journal of the Delaware State Bar Association (formerly In Re:) since 1993. I have also served as an adjunct professor of law at the Delaware Law School of Widener University, teaching professional responsibility and law firm management. I am currently a

member of the Delaware Supreme Court Rules Revision Committee, and I am a past President of the Rodney Inn of the American Inns of Court.

2. I have provided expert opinions and expert testimony at trial and by deposition in at least nine previous cases in the State and Federal courts in Delaware and the Commonwealth of Pennsylvania. These cases include the following: I n the United States District Court for the District of New Jersey, *Kenneth Neary v. Robert R Williams, Esquire*, C.A. No. l-11-CV-2613; In the United States Court for the District of Delaware, *U.S. v. Thomas P. Gordon, Sherry L. Freebery, and Janet K Smith*, No. CR.A. 04-63-KAJ; In the Chancery Court of the State of Delaware, *New Castle Shopping, LLC v. Penn Mart Discount Liquors, Ltd., et al.*, C.A. No. 4257-VCL; In the United States District Court for the District of Delaware, *Dara M Gelof v. George V. Smith, Esquire and Smith O'Donnell Feinberg & Berl LLP*, C.A. No. 1: 11-cv-00483 LPS; The Superior Court of New Castle County, State of Delaware, *Thomas Bairdv. Frank R. Owczarek, MD. and Eye Care of Delaware, LLC*, C.A. No. NI I C-09-241 RRC; In the Supreme Court of the State of New York, *New Media Holding Company, LLC v. Konstantin Kagalovsky, IOTA LP, et al.*, Case No. 09603742/09; In the Superior Court of the State of Delaware, *Gatz Properties LLC, et al. v. Blank Rome LLP, et al.*, C.A. No. N13C-02-089 EMD; United States District Court of Delaware, *Ladendorfv. Weik, Nitsche, Dougherty*, C.A. No. 1: 17-CV-00289 (CFC); In the Court of Chancery, *Weik, Nitsche & Dougherty, LLC v. Pratcher and Krayer*, C.A. No. 2018-0803-MTZ.

3. In forming the below opinion, I interviewed Joshua R. Schwartz, Managing Counsel and Director of Reinsurance Litigation for Chubb Group, and reviewed the Declaration of Joshua R. Schwartz.

## II.  SUMMARY OF OPINION

4. The facts in this instance support disqualification. Sidley Austin has an attorney-client relationship with Century. That relationship is imputed to all other members of the firm for the purposes of imputation of conflicts. In the course of Sidley Austin's representation of Century in the reinsurance matters, information, and issues relating to BSA coverage by Century was an issue.

5. Without timely disclosure, screening or a written waiver, Sidley Austin violated its duty of loyalty to Century by undertaking a bankruptcy on behalf of one of Century's insureds while simultaneously working on reinsurance matters involving the same insurance policies at issue in the bankruptcy. That bankruptcy representation will be adverse to Century and will implicate information obtained by Sidley Austin in the reinsurance arbitration matters handled by Sidley Austin on behalf of Century.

## III.  ANALYSIS

6. Based on my review of the declaration of Mr. Schwartz and my discussion with him and others employed or working with Chubb in connection with this matter, I have concluded that Sidley Austin has a prohibited concurrent conflict of interest pursuant to Rule 1.7 of the ABA Model Rules, and the remedies for the conflict proposed by Sidley Austin do not shield the firm from disqualification in the BSA bankruptcy matter.

7. Rule 1.7 prohibits concurrent conflicts of interest, stating:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer.

8. Based on the facts I was provided, Sidley Austin was representing Century (and continued to do so) at the same time that Sidley Austin undertook the representation of BSA. This represents a concurrent conflict of interest as prohibited by Rule 1.7(a)(1), since the interests of Century and BSA in the bankruptcy are directly adverse.

9. RPC 1.7(a)(1) forbids a lawyer from representing a client if that representation will be adverse to another client. RPC 1.7(a)(1) is grounded in the notion that an attorney must provide complete and undivided loyalty to the client. Consequently, "a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even where the matters are wholly unrelated." ABA Model Rules 1.7, cmt. 6 (5th ed. 2003) (emphasis added). To establish an ethical violation under RPC 1.7(a)(1), "one does not have to prove prejudicial impact, negative result, or an exchange of confidential information ... It is the interests of the client with which the rule is concerned, not the result obtained." *In re Cendant Corp. Securities Lit.*, 124 F.Supp.2d at 243 (internal quotations omitted).

10. In the bankruptcy representation, the evidence indicates that at the time that Sidley Austin took on the representation of BSA it was already engaged as counsel by the Century companies. It is also apparent that the representation that Sidley Austin took on for BSA was adverse to the interests of its Century clients as Sidley Austin took on the role of designing a plan of reorganization for impacting the rights of insurers including setting trust distribution procedures and values for paying claims without insurer consent. These facts, together with the fact that

4

OMM_US:77529707.6

Century never granted consent to this engagement, set out a prima facie case for violation of RPC 1.7(a)(l) requiring withdrawal of counsel.

11. In addition, there is a significant risk that Sidley Austin's representation of Century will be or was materially limited by the firm's responsibilities to BSA. Sidley Austin's duties to BSA to maintain the confidentiality of the planned bankruptcy filing prevented it from disclosing the planned filing and a host of related issues to its other client, Century, creating a divided loyalty.

12. This divided loyalty was further exacerbated to the extent that Sidley Austin engaged in discussions with the tort claimants, Scott Gilbert, Jim Patton, and their other representatives concerning BSA's insurance and means for accessing that insurance as part of its bankruptcy work.

13. No exception exists to permit the concurrent representation despite the conflict. Rule 1.7(b) provides that a lawyer can represent a client, not assuming a concurrent conflict of interest, if:

> (1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

14. As already noted, Sidley Austin is unable to meet these exceptions to the concurrent conflict ban. Sidley's representation of BSA in the bankruptcy matter will involve an assertion of a claim by one client, BSA, against another client, Century, and the drafting and negotiation of a

plan of reorganization that impacts the rights of Century. Century declined to provide consent to this conflicting concurrent representation.

15. Sidley Austin has attempted to excuse this prohibited concurrent conflict of interest by claiming that Sidley Austin's representation of Century in the reinsurance arbitrations is somehow unrelated to its representation by Sidley Austin because some or all of the lawyers working on the bankruptcy litigation engagement are located in another city. This assertion ignores the application of Model Rule 1.10, which clearly imputes any conflict of interest to all members of the firm. Rule 1.10( a) states:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9.

16. Sidley Austin has impermissibly attempted to place itself within an exception to the Rule 1.10 imputation by claiming that its wrongful termination of Century in the reinsurance arbitrations creates a Rule 1.9 "former client" situation.

17. A wrongful termination of an attorney-client relationship is prohibited. Rule 1.16(d) requires that:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.

18. It has been represented to me that one or more of the reinsurance arbitrations are at critical stages and that Sidley Austin's untimely withdrawal would prejudice the interests of Century in those arbitrations.

19. In addition, the ABA Annotated Model Rules notes that the Hot-Potato gambit of terminating a client to cure a concurrent client conflict and to permit the representation of a more lucrative client has been roundly condemned. *See, e.g., Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp.*, No. 1:05 CV 1714-GET, 2006 WL 1877078 (N.D. Ga. July 5, 2006) "Lawyer may not evade ethical responsibilities by choosing to jettison a client whose continuing representation becomes awkward" (quoting *Harrison v. Fisons Corp.*, 819 F. Supp. 1039, 1041 (N.D. Fla. 1993)); *Pioneer-Standard Elecs., Inc. v. Cap Gemini Am., Inc.*, No. 1:01 CV 2185, 2002 WL 553460 (N.D. Ohio Mar. 11, 2002) (Refusing to recognize firm's attempt to convert existing client into former client by dropping it when asked to represent new client in suit filed by existing client, "for purposes of determining the status of an attorney-client relationship within the context of adverse representation, courts will not honor an attorney's unilateral termination of the relationship"); *Santacroce v. Neff*, 134 F. Supp. 2d 366 (D.N.J. 2001) (disqualifying firm from representing estate against palimony claims of testator's live-in lover, when firm represented in business disputes; lawyer may not drop one client like "hot potato" to avoid conflict with a more remunerative client; collecting cases); *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449 (S.D.N.Y. 2000) (Lawyer cannot avoid disqualification due to conflict of interest merely by firing disfavored client in order to transform continuing relationship into former-client relationship).

20. I also conclude that the firm's efforts to avoid a Rule 1.7 concurrent conflict of interest as imputed to all members of Sidley Austin by Rule 1.10 were ineffective. The Professional Conduct Rules recognize the use of screens to avoid imputed conflicts when attorneys change firms or under certain circumstances where there is a "thrust-upon" conflict, but there is no such provision in Rule 1.7 for the use of screens to cure concurrent conflict of interests.

7

21. By attempting to terminate Mr. Sneed's (and Sidley Austin's) attorney-client relationship with Century, the firm seeks to extricate itself from the prohibited Rule 1.7 concurrent conflict of interest. If the firm is permitted to violate its duty of loyalty to Century, Century would become a former client as that term is used in Rule 1.9, which states in pertinent part:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

22. By virtue of the wrongful discharge of Century in the reinsurance arbitrations, Sidley Austin is attempting to deem Century to be a "former client" and to argue that the BSA bankruptcy is not the same or substantially related matter as Sidley's representation of Chubb in the reinsurance arbitrations.

23. This stratagem does not change Sidley Austin's obligations to Century. The prohibitions imposed by the current-client provisions of RPC 1.7(a)(1) apply whenever an attorney represents two clients with adverse interests at the same time, even if the representation of one of the clients ceases prior to the time the challenge is raised. Sidley Austin cannot recast Century as a "former client" in order to benefit from their wrongful termination of Century as a client. Nothing in the Bankruptcy Code supersedes or replaces this notion under the applicable state ethics rules. *See* 1 Collier on Bankruptcy, §8.02 [2] (15th ed. 2002) ("These state [ethics] rules are not preempted by federal bankruptcy law under the Supremacy Clause of the Constitution."); *see also id.*, at ¶8.01 [1] ("Ethical rules are often considered more necessary and applicable in bankruptcy cases."); *id.* at ¶8.03[1] ("Conflict of interest rules are more strictly applied in the bankruptcy context than in other areas of the law, at least insofar as they relate to professionals retained by the estate."). In addition, any reliance by Sidley Austin on Rule 1.9 is inapt.

24. Based on the facts that I was provided, BSA's interests are materially adverse to the interests of Century, and Century has declined to provide informed consent, confirmed in writing. Rule 1.9 further provides:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

25. Based on the facts that I was provided, information obtained by Mr. Sneed in the course of handling Century's reinsurance arbitrations would be at risk of exposure in Sidley Austin's representation of BSA in the bankruptcy. Knowledge of that information is imputed to all members of Sidley Austin, and no situation permitting the use of screens to prevent dissemination of that information are present here.

26. I respectfully reserve the right to amend, modify or supplement this Declaration in response to, or as a result of, the filing of any submission in connection with this case or any discovery being conducted in connection therewith.

Dated: April 9, 2020

Respectfully submitted,

_____
Charles Slanina