# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>                Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## DECLARATION OF JOSHUA R. SCHWARTZ

I, Joshua R. Schwartz, pursuant to the provisions of 28 U.S.C. § 1746(2) declare under the penalty of perjury as follows:

1. I am Managing Counsel and Director of Reinsurance Litigation for Chubb Group. One of my responsibilities involves retaining and overseeing counsel in reinsurance billing disputes for insurance coverage claims involving Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), and other Chubb entities, including those involved in the Boy Scouts of America (BSA) bankruptcy (collectively, "Chubb").

2. Chubb is a longtime client of the Insurance and Financial Services practice group of Sidley Austin LLP ("Sidley"). Over the last decade, Sidley has represented Chubb in connection with over a dozen matters. Many of those matters were by agreement (or order) privately arbitrated to protect information that was the subject of the disputes. Attorney William Sneed of Sidley is a recognized expert in arbitrations involving reinsurance and the underlying insurance and insurance coverage claims.

3. In the course of its years of work for Chubb, Sidley has developed extensive knowledge of highly privileged information about Century's insurance and reinsurance programs that apply beyond any single policyholder or matter. I know from my attorney-client interactions

with Attorney Sneed, among others, that he has extensive privileged information concerning our reinsurance and insurance programs.

4. On October 5, 2018, Chubb retained Sidley to represent Century in connection with the BSA's insurance for molestation claims and Century's efforts to obtain reinsurance coverage for those claims. The initial matter we asked Sidley to handle involved a reinsurance dispute with Lloyd's of London over policies that Century issued to the Boy Scouts. As of August 2019, Sidley was also advising Century in an arbitration with another reinsurer involving policies Century issued to the BSA and reinsurance for claims under those BSA policies. Throughout this same period, Sidley was also working on other matters for Chubb, including an arbitration against a different reinsurer.

5. As Century's counsel in the BSA matters, Sidley was privy to highly confidential information about Chubb's insurance coverage for the BSA and agreements concerning it. This includes privileged information concerning the disputes between Century and the Boy Scouts over its insurance coverage, Century's privileged legal analysis of the BSA's claims, and Century's privileged legal strategies and defenses in these matters.

6. As a condition of its acceptance of engagements from Chubb, Sidley agreed to abide by the provisions of the companies' Service Level Agreement ("SLA") for law firms. A true and correct copy of the SLA is attached as Exhibit 1.

7. Pursuant to this agreement, Sidley agreed "to identify and bring to the attention of the Client, in writing, any circumstances that may create or involve a conflict of interest." On any newly retained matter, Sidley agreed to "confirm the absence of any conflicts of interest." And Sidley agreed that if it "identifies a potential conflict after it has begun work for [Chubb], it shall make all reasonable efforts to resolve that conflict in a manner that will allow [Sidley]'s

continued representation of [Chubb]." In addition, Sidley agreed to abide by the rules of professional conduct applicable to attorneys.

8. Unbeknownst to Chubb at the time, Sidley appears to have taken on the representation of the BSA sometime after it was engaged by Century on BSA matters and while it was engaged by Chubb on other matters. Sidley did not seek a written waiver from Chubb to do so. At the time of Sidley's concurrent representation of Chubb and BSA, there were pending declaratory judgment actions in Texas and Illinois seeking an adjudication of the parties' rights under the BSA insurance policies issued by Century and other Chubb entities.

9. Prompted by a Wall Street Journal article citing an anonymous source, in mid-December 2018, I asked Attorney Sneed whether Sidley was representing the BSA. Attorney Sneed said he could not comment on press stories and reassured me that Sidley was not conflicted and could work on the BSA matter and other matters. Based on these assurances, Chubb continued to work with Sidley on multiple matters, including the Lloyd's matter involving the BSA sexual molestation claims. Chubb also assigned new matters to Sidley, including a related litigation to compel arbitration against Lloyd's in the District of Massachusetts regarding disputed BSA reinsurance billings.

10. On January 8, 2019, Attorney Sneed told me that Sidley's new leadership was seeking prospective waivers for non-litigation matters and that he could not accept new assignments without the prospective waiver. He followed up with an email regarding this request on January 10, 2019, a true and correct copy of which is attached as Exhibit 2. On February 20, 2019, Attorney Sneed and Mike Goldman, head of Sidley's Insurance and Financial Services group and a member of its Executive Committee, spoke with me. They told me that Sidley had modified its request from a month earlier and was now only seeking a prospective waiver for bankruptcy and restructuring matters, but—crucially—they said nothing in the

3

proposed waiver request, or in the parties' conversations, about Sidley representing the BSA, even though Sidley had apparently undertaken that representation earlier.

11. On February 28, 2019, Attorney Sneed sent me proposed advanced waiver wording for restructuring matters without requesting a waiver for the Boy Scouts or otherwise mentioning the BSA. On March 4, 2019, Chubb rejected Sidley's proposed advance waiver wording and provided alternative wording. On March 21, 2019, Attorney Sneed advised me that Sidley had dropped the request and would be fine proceeding pursuant to the SLA with regard to conflicts, and Century never granted a prospective waiver or waived any conflict of interest. After this exchange (and as referenced above), in August 2019, Attorney Sneed told Century that he had cleared conflicts for Sidley to represent Century in an arbitration with another reinsurer, again stemming from Century's policies with the BSA and disputes over reinsurance for them.

12. I did not know at the time but have since learned that in late September 2019, the BSA invited the persons handling its insurance coverage at Chubb to a meeting on October 14, 2019, at which Sidley appeared. Since separate groups inside Chubb handle direct insurance and reinsurance, it was not until the end of October that anyone on the reinsurance side learned about the October 14 meeting and realized that Sidley was concurrently representing Century and the BSA.

13. On October 29, 2019, I conveyed Chubb's concerns to Attorney Sneed (orally and in writing) about a conflict of interest with Sidley and Attorney Sneed, and conveyed that Chubb did not consent to the dual representation and was analyzing the issues. I followed up on that email on November 20, 2019, and asked to review Sidley's General Counsel's opinion or other analysis of the conflict. A true and correct copy of these emails to Attorney Sneed, dated October 29, 2019 and November 20, 2019, are attached as Exhibit 3. Attorney Sneed advised me

4

that he had not thought about this issue since the spring and that his partners told him there is no conflict, but he did not explain to me why.

14. On November 3, 2019, the Chubb representatives handling the BSA coverage separately advised Sidley and the BSA that they had just learned about the concurrent representation, advised them that Chubb had not consented to a dual representation, and proposed adjourning a planned mediation.

15. On December 3, 2019, while denying that a conflict existed, Sidley's bankruptcy counsel for the BSA asked Century to consent to its continued representation of the BSA, while concurrently working on behalf of Century in the reinsurance matters. Sidley also stated on December 3, 2019, that it had instituted a "screen" to ensure that Sidley's BSA bankruptcy team and the Sidley reinsurance lawyers would not share information, but that only raised more concerns since Sidley confirmed that the screen had not been in place before November 4, 2019. A copy of Sidley partner Michael Andolina's email, dated December 3, 2019, is attached as part of Exhibit 4.

16. On December 12, 2019, I emailed Attorney Sneed and other Sidley attorneys to ask for further clarification on Sidley's analysis of the conflict and to clarify information regarding Sidley's screen. A true and correct copy of that email, dated December 12, 2019, is attached as part of Exhibit 4. Sidley's response dismissed our concerns about the conflict as a "distraction." A true and correct copy of Sidley partner Michael Andolina's email, dated December 16, 2020, is attached as part of Exhibit 4.

17. On December 18, 2019, I spoke with Attorney Sneed together with Christine Russell of Chubb about the conflict. In that call, Attorney Sneed told us that Sidley would continue to represent the BSA and that if Chubb could not "live with" the situation, Sidley would

unilaterally terminate the attorney-client relationship between Chubb and Sidley for all pending matters, including the BSA reinsurance matters.

18. In a letter dated January 3, 2020, I informed Sidley partner Michael Andolina that Chubb would not waive the conflict and rejected Sidley's attempt to withdraw. A true and correct copy of my letter of January 3, 2020, is attached as Exhibit 5.

19. On January 16, 2020, Sidley's General Counsel Linton Childs sent me a letter confirming that a formal "wall" had only been in place since November and advising that Sidley would be withdrawing from its representations of Chubb. Sidley's General Counsel expressed that view that there had been no contact between Sidley's lawyers working for Chubb on BSA reinsurance matters and for BSA before November but without a wall being in place before then we had no way to confirm that was the case. A true and correct copy of that letter is attached as Exhibit 6. Also on January 16, 2020, Attorney Sneed sent me a letter setting out Sidley's intention to withdraw and the schedule and manner in which it intended to do so. A true and correct copy of that letter is attached as Exhibit 7.

20. In a letter dated January 30, 2020, I explained to Attorney Sneed in detail why the firm's abrupt withdrawal would prejudice Century's interests in each pending matter. I also instructed Sidley not to discuss the conflict issue with arbitrators or opposing parties without Chubb's written permission. Despite these objections, and without allowing Century to better position itself for the withdrawal of its counsel, Sidley went forward with its unauthorized attempt to withdraw from the pending matters. A true and correct copy of my letter of January 30, 2020, is attached as Exhibit 8.

21. Shortly before the BSA bankruptcy filing, on January 27, 2020, Sidley filed a motion to withdraw from litigation related to the Lloyd's BSA reinsurance arbitration pending in the District of Massachusetts and requested that the court expedite Century's response time from

6

14 to 7 days. Chubb subsequently consented to the withdrawal after it secured replacement counsel and reached an agreement with Sidley that the withdrawal would be on a without prejudice basis to Chubb's rights pursuant to the SLA and to Chubb's rights regarding Sidley's desire to continue representing the BSA.

22. On February 18, 2020, the BSA filed for bankruptcy. The following day, Attorney Sneed advised me that he was going to tell the panel in one of the arbitrations that Sidley is withdrawing. Despite my request that he not do so, Attorney Sneed proceeded to notify the Panel in that arbitration the following day that Sidley would withdraw. Also on February 20, 2020, Attorney Sneed also contacted the Panel in another arbitration and advised that Panel that he was withdrawing, even though we did not have alternative counsel ready to take over the matter, our counterparty had expressed a desire to talk settlement and the parties had agreed to a stay of the arbitration to talk settlement. True and correct copies of my emails requesting that Sidley not notify the Panels that Sidley was withdrawing are attached as Exhibits 9 and 10. True and correct copies of Attorney Sneed's withdrawal emails are attached as Exhibits 11 and 12. On February 24, 2020, without notice to Chubb or its consent, Sidley called the arbitrators in the Lloyd's matter and advised that he was withdrawing.

23. On March 10, 2020, I wrote a letter reiterating Chubb's objection to Sidley's conduct, explaining some of the ways in which it was prejudiced by Sidley's attempt to unilaterally withdrawal, and gave notice that Sidley's behavior breached the parties' SLA. A true a correct copy of this letter is attached as Exhibit 13.

24. On March 16, 2020, Century invited Sidley to a pre-arbitration discussion per paragraph 7.2 of the SLA. The following day, March 17, 2020, Sidley filed its retention application.

25. It would be highly detrimental to Chubb for Debtors' counsel to be party to its privileged information concerning the BSA and its insurance coverage in the negotiation of the terms of a plan and a host of other issues core to the role of Debtors' counsel to BSA.

26. As Century's counsel, I know that Sidley received privileged information concerning the disputes between Century and the BSA over its insurance coverage, Century's privileged legal analysis of the Boy Scouts' claims, and Century's privileged legal strategies and defenses. As insurance coverage is a central asset around which a reorganization is planned, knowledge of Century's legal analysis, strategy, and positions with regard to this asset is of obvious relevance to formulating a plan and negotiating with tort claimants and insurers about the terms of a plan.

27. Information obtained by Sidley attorneys during the course of its representations of Chubb, generally and with respect to matters concerning the BSA specifically, would be at risk of exposure to Debtors if Sidley is allowed to advocate for the Debtors. The risk to Chubb is exacerbated by the sheer weight, complexity, and duration of Sidley's interactions with Chubb over the years—and the continuation of this relationship into 2020—not to mention the immediately relevant body of highly privileged and confidential information that Sidley possesses about Chubb's insurance for the BSA from its handling of reinsurance matters concerning the same policies that are at issue in the bankruptcy.

28. Chubb attempted to resolve these conflicts amicably, in a way that would facilitate a smooth transition of the BSA engagement, right up until Sidley unilaterally contacted arbitrators in the pending matters to withdraw. I made repeated requests for Sidley to provide its General Counsel's opinion or other analysis as to why it claimed there was no conflict of interest. Sidley did not do so. When these efforts failed, Chubb sought the advice of a leading

ethics expert in Delaware, Charles Slanina, to get his independent perspective. Mr. Slanina's advice is reflected in his declaration.

29. Century is filing this Objection as a last resort, only after all efforts to resolve this matter with Sidley have failed.

Dated: April 9, 2020

Respectfully submitted,

*/s/ Joshua R. Schwartz*

JOSHUA R. SCHWARTZ

# EXHIBITS 1-13 ARE REDACTED AND FILED UNDER SEAL