**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | Objection Deadline: May 7, 2020, at 4:00 p.m. (ET)<br>Hearing Date: May 18, 2020, 10:00 a.m. (ET) |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO EMPLOY REED SMITH LLP, *NUNC PRO TUNC* AS OF MARCH 9, 2020, AS DELAWARE COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103(a) AND <u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014</u>**

The Official Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") applies to this Court (the "<u>Application</u>") for entry of an order pursuant to 11 U.S.C. §§ 328(a) and 1103(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), authorizing the Creditors' Committee to retain and employ Reed Smith LLP ("<u>Reed Smith</u>"), *nunc pro tunc* as of March 9, 2020, as the Creditors' Committee's Delaware counsel. In support of this Application, the Creditors' Committee submits (i) the Declaration of Kurt F. Gwynne, Esquire, a partner at Reed Smith, attached as **Exhibit B** (the "<u>Gwynne Declaration</u>") and (ii) the Declaration of Jennifer Rochon, on behalf of the Chair of the Creditors' Committee, attached as **Exhibit C** (the "<u>Creditors' Committee Chair Declaration</u>"). In further support of this Application, the Creditors' Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**JURISDICTION**

1. This Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief sought herein are Sections 328(a) and 1103(a) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules.

**FACTUAL BACKGROUND**

3. On February 18, 2020 (the "Petition Date"), the Boy Scouts of America and Delaware BSA, LLC (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate as debtors in possession.

4. The Court has entered an order granting joint administration of these Cases.

5. No trustee or examiner has been appointed in the Cases.

6. On March 4, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") held an organizational meeting (the "Organizational Meeting") and appointed the Creditors' Committee and an Official Committee of Tort Claimants.

7. The current members of the Creditors' Committee are: (1) Pension Benefit Guaranty Corporation; (2) Girl Scouts of the United States of America (Creditors' Committee chair); (3) Roger A. Ohmstede; (4) Pearson Education, Inc.; and (5) Lion Brothers, Inc.

8. At the Organizational Meeting, the Creditors' Committee determined that it needed the assistance and advice of counsel to perform the Creditors' Committee's duties under

Case 20-10343-LSS    Doc 482    Filed 04/23/20    Page 3 of 13

Section 1103(c) of the Bankruptcy Code. The Creditors' Committee selected Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") as proposed lead counsel to the Creditors' Committee pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code.

9. The Creditors' Committee subsequently selected Reed Smith as its proposed Delaware counsel for the Creditors' Committee pursuant to Sections 328(a) and 1103(a) of the Bankruptcy Code. On March 9, 2020, Reed Smith agreed to serve as Delaware counsel and began work for the Creditors' Committee.

10. The Creditors' Committee selected Reed Smith because its attorneys have experience in cases and proceedings in or related to Title 11 of the United States Code, including cases and proceedings before this Court, and the Creditors' Committee has confidence in Reed Smith's ability to provide legal services during these Cases, including with respect to non-profit law.

**RELIEF REQUESTED**

11. The Creditors' Committee seeks to employ Reed Smith as its Delaware counsel for the Creditors' Committee, *nunc pro tunc* as of March 9, 2020, on an hourly-rate basis, plus properly reimbursable expenses and out-of-pocket costs as an expense of administration in accordance with this Application, the Bankruptcy Code and Bankruptcy Rules, and applicable orders of this Court.

**BASIS FOR RELIEF REQUESTED**

**The Creditors' Committee Requires Counsel and Has Selected Reed Smith**

12. To assist a statutory committee with its rights and duties under Section 1103(c) of the Bankruptcy Code, a statutory committee may retain counsel. *See* 11 U.S.C. §§ 328(a) and 1103(a). Specifically, Section 1103(a) provides, in relevant part, that "[a]t a scheduled meeting

- 3 -

of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys . . . to represent the committee." 11 U.S.C. § 1103(a).

13. Section 328(a) of the Bankruptcy Code provides, in relevant part, that "a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 of this title, . . . on any reasonable terms and conditions of employment, including on a retainer, [or] on an hourly basis." 11 U.S.C. § 328(a).

14. Since being selected as counsel for the Creditors' Committee, Reed Smith has undertaken a very comprehensive search for conflicts and "connections" related to the many parties in interest in the Cases. In light of the fact that the Debtors have a relatively large number of creditors and other parties in interest, the size of Reed Smith (which has approximately 1,600 attorneys in 30 offices on several continents) and the speed at which the Cases have been progressing (which necessitated counsel's attention to certain substantive case-related matters), as well as staffing issues relating to the coronavirus, the results of Reed Smith's comprehensive computer Rule 2014 "connections" report took a substantial period of time to review and incorporate into this Application.

15. In order to compensate Reed Smith for work performed prior to the submission of this Application, the Creditors' Committee requests that this Court approve this Application *nunc pro tunc* as of March 9, 2020, the date Reed Smith began work as Delaware counsel. This Court and courts in other districts routinely grant applications to employ professionals *nunc pro tunc*. *See, e.g., In re United Companies Financial Corp.*, 241 B.R. 521, 526 (Bankr. D. Del. 1999)

(MFW) (noting that "the UST recognizes that in large chapter 11 cases, given the press of urgent matters to be determined in the early days of the chapter 11 proceeding, the preparation and filing of retention applications for all professionals may be delayed."). Reed Smith submits that it has filed this Application within a reasonable period of time after its selection as counsel for the Creditors' Committee and *nunc pro tunc* approval of the Application is appropriate.

### Reed Smith's Eligibility for Employment as Counsel for the Creditors' Committee

16. Pursuant to Section 1103(b) of the Bankruptcy Code, "an attorney . . . employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." 11 U.S.C. § 1103(b).

17. As is ordinary for large chapter 11 cases, the Cases raise complex issues and the Creditors' Committee will require counsel with extensive experience in insolvency and bankruptcy cases, especially those in the District of Delaware, as well as business law, including non-profit law.

18. The Creditors' Committee seeks to retain Reed Smith as Delaware counsel because of its attorneys' extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code (particularly, in the District of Delaware) and because of its attorneys' substantial experience in non-profit law.

19. Kurt F. Gwynne, the Reed Smith partner who will be primarily responsible for Reed Smith's representation of the Creditors' Committee, is admitted to practice law, and is a member in good standing of the bar in the State of Delaware, the State of New York, the

Commonwealth of Pennsylvania, the State of New Jersey, the United States Supreme Court, the United States Court of Appeals for the Third Judicial Circuit, the United States District Court for the District of Delaware, the United States District Court for the Southern and Eastern Districts of New York, the United States District Court for the District of New Jersey, the United States District Courts for the Eastern and Western Districts of Pennsylvania, the United States District Court for the Northern District of Texas, the United States District Court for the Eastern District of Michigan, the United States District Court for the Central District of Illinois. He has represented creditors' committees in many cases in this and other bankruptcy courts. Mr. Gwynne has also represented publicly-traded debtors-in-possession, indenture trustees, and secured and unsecured creditors in large bankruptcy cases in many jurisdictions. He has served as a court-appointed expert, examiner, and chapter 11 trustee. He is a Fellow of the American College of Bankruptcy (23rd Class) and has been recognized in Chambers USA, America's Leading Lawyers for Business and as a Delaware SuperLawyer.

20. The Creditors' Committee believes that the retention of Reed Smith as its Delaware counsel is in the best interests of the Debtors' estates and its creditors.

21. Subject to further order of the Bankruptcy Court, the professional services that Reed Smith may render to the Creditors' Committee so that the Creditors' Committee can execute its duties under Section 1103(c) include the following:

> (a) advise the Creditors' Committee of its rights, powers and duties in the Cases;
>
> (b) assist and advise the Creditors' Committee in its consultations with the Debtors relative to the administration of the Cases;
>
> (c) advise the Creditors' Committee regarding applicable non-profit law;
>
> (d) review and analyze all applications, motions, orders, statements of operations and schedules filed with the Bankruptcy Court by the Debtors or third parties, advise the Creditors' Committee as to their propriety, and, after consultation with

the Creditors' Committee, take appropriate action in furtherance of the Creditors' Committee's interests and objectives;

(e) prepare on behalf of the Creditors' Committee any necessary motions, applications, objections, answers, orders, reports and papers in furtherance of the Creditors' Committee's interests and objectives;

(f) represent the Creditors' Committee at hearings held before the Bankruptcy Court and communicate with the Creditors' Committee regarding the issues raised, as well as the decisions of the Bankruptcy Court;

(g) assist the Creditors' Committee in analyzing the claims of the Debtors' creditors and in negotiating with such creditors;

(h) assist with the Creditors' Committee's investigation of the acts, conduct, assets, liabilities and financial condition of the Debtors and of the operation of the Debtors' businesses;

(i) assist the Creditors' Committee in its analysis of, and negotiations with, the Debtors or their creditors concerning matters related to, among other things, the terms of any plan or plans of reorganization or liquidation or any section 363 sale; and

(j) perform all other necessary legal services as may be required and are deemed to be in the interests of the Creditors' Committee in connection with the Cases, including advising the Creditors' Committee regarding local practice and procedure.

**Reed Smith Compensation**

22. The current regular hourly rates of Reed Smith's attorneys and paralegals are set forth in the Gwynne Declaration.

23. The Creditors' Committee is informed that the hourly rates set forth in the Gwynne Declaration are the rates that Reed Smith regularly charges its clients. As stated in the Gwynne Declaration, the rates are set at a level designed to fairly compensate Reed Smith for the work of its attorneys and paralegals and to cover fixed and routine overhead expense. As also stated in the Gwynne Declaration, it is Reed Smith's policy to charge its clients in all areas of practice for all other expenses incurred in connection with each client's case. The expenses

charged to clients include (without limitation) long-distance telephone charges, mass mailing postage, messenger and express mail charges, special or hand delivery charges, photocopying charges, filing fees, travel expenses, expenses for "working meals," the catering of business meetings, computerized research, transcription costs, and late night transportation, where necessary to meet deadlines or client expectations.  As stated in the Gwynne Declaration, Reed Smith will charge the Debtors' estates for the expenses incurred by Reed Smith on behalf of the Creditors' Committee in a manner and at rates consistent with charges made generally to Reed Smith's other clients and in a manner consistent with the Local Rules.

24. Reed Smith intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules, the Local Rules and any orders of the Court, including without limitation, this Court's order establishing interim compensation procedures.

**Reed Smith is Disinterested and Does Not Hold or Represent**
**An Interest Adverse to the Debtors' Estates**

25. Section 101(14) of the Bankruptcy Code currently defines a "disinterested person" as a person that —

> (A)   is not a creditor, an equity security holder, or an insider;
>
> (B)   is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtors; and
>
> (C)   does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtors or for any other reason.

11 U.S.C. § 101(14).[2]

---

[2] Some courts have stated that it unclear whether the requirement of "disinterestedness" applies to the retention of committee counsel.  *See, e.g., In re Enron Corp.*, 2003 WL 223455, at *7 (S.D.N.Y. Sept. 23, 2003).  Nevertheless, Reed Smith asserts that it satisfies the disinterestedness standard.

26. To the best of the Creditors' Committee's knowledge, Reed Smith has not represented the Debtors, their creditors, equity security holders, or any other parties-in-interest, or their respective attorneys, in any matters relating to the Debtors' Cases. Furthermore, to the best of the Creditors' Committee's knowledge, neither Katelin A. Morales, nor Kurt F. Gwynne have or have had any personal involvement with either of the Debtors or their programs. In addition, Reed Smith may continue to represent other entities listed on <u>Exhibit 2</u> to the Gwynne Declaration in matters unrelated to the Cases. No entity listed in <u>Exhibit 2</u> to the Gwynne Declaration accounted for 1% or more of Reed Smith's 2019 annual revenue. .

27. Pursuant to Bankruptcy Rule 2014, Reed Smith's "connections" from and after January 1, 2018, with the Debtors, their creditors, and other parties in interest are set forth in the Gwynne Declaration and <u>Exhibit 2</u> thereto. The names of the entities searched for purposes of disclosing Reed Smith's connections are set forth on <u>Exhibit 1</u> to the Gwynne Declaration. As stated in the Gwynne Declaration, in order to check and clear potential conflicts of interest in these Cases, Reed Smith researched its electronic database, to determine whether Reed Smith had any "connections" with the following entities:

    a. Debtors
    b. Current and Former Directors and Officers of the Debtors
    c. Non-Debtor Affiliates
    d. Selected Chartered Organizations
    e. Local Councils
    f. Secured Parties
    g. Banks
    h. Credit Card Processors
    i. Insurers
    j. Landlords
    k. Litigation Parties
    l. Professionals to be Retained by the Debtors
    m. Professionals Representing Certain Parties in Interest
    n. Ordinary Course Professionals
    o. Tort Claimants' Committee
    p. Unsecured Creditors' Committee

| | | |
|---|---|---|
| | q. | Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors |
| | r. | Top 30 General Unsecured Creditors of the Debtors (Non-Abuse Claims) |
| | s. | Deferred Compensation and Restoration Plan Participants |
| | t. | Significant Contract Counterparties |
| | u. | Significant Customers |
| | v. | Significant Donors |
| | w. | Significant Vendors |
| | x. | Significant Taxing Authorities |
| | y. | Significant Utility Providers |
| | z. | U.S. Trustee, Judges, and Court Contacts for the District of Delaware |

28. In accordance with paragraph 5(c) of *the Interim Order (I) Authorizing the Debtors' to file (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, (III) Authorizing and Approving Procedures for Providing Notice of Commencement, and (IV) Granting Related Relief* [Docket No. 66] and paragraph 4(c) of the *Final Order (I) Authorizing the Debtors' to file (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, (III) Authorizing and Approving Procedures for Providing Notice of Commencement, and (IV) Granting Related Relief* [Docket No. 274] (collectively, the "Confidentiality Procedures Orders") in order to protect the identities of certain individuals listed hereon, Reed Smith has redacted such information from Exhibit 1 and Exhibit 2 to the Gwynne Declaration. In light of the Confidentiality Procedures Orders already entered by the Court, the Creditors' Committee requests a waiver of Rule 9018-1(d) of the Local Rules requiring an independent motion seeking to file a document under seal.

29. To the best of Reed Smith's and the Creditors' Committee's knowledge, based upon a review of the parties, as detailed in the Gwynne Declaration, Reed Smith and all of the attorneys comprising or employed by it are believed to be "disinterested persons" as the Creditors' Committee understands this term to be defined, within the meaning of Section 101(14) of the Bankruptcy Code, as modified by Section 1103(b) of the Bankruptcy Code. In addition, based upon such review, insofar as the Creditors' Committee has been able to ascertain, Reed Smith and its attorneys do not hold or represent any entity in the Debtors' Cases having an adverse interest in connection with the matters upon which Reed Smith is to be engaged. In addition, based upon such review, insofar as the Creditors' Committee has been able to ascertain, Reed Smith and its attorneys do not have any material connection either with the Debtors, their creditors, the Creditors' Committee, or any other party in interest in the Cases or with their respective attorneys or accountants, other than as disclosed in Exhibit 2 to the Gwynne Declaration.

30. As disclosed in the Gwynne Declaration, Reed Smith represents JPMorgan Chase Bank, N.A. or its affiliates ("JPMC") in matters unrelated to these Cases. As JPMC is the Collateral Agent and lender under that certain (i) Third Amended and Restated Security Agreement dated as of March 21, 2019 (the "Prepetition Security Agreement (2019)"); and (ii) Consent and Security Agreement dated as of February 3, 2020 (the "Prepetition Security Agreement (2020)"), and may have other interests in the Cases, Reed Smith sought and received a waiver of conflicts from JPMC.

31. JPMC has waived potential and actual conflicts that might arise from Reed Smith's representation of the Creditors' Committee subject to certain limitations. Specifically, JPMC lawyers in Reed Smith who normally work on JPMC matters (except Kurt F. Gwynne and

Katelin A. Morales) will not participate in the Creditors' Committee representation. In addition, the waiver does not extend to any actual "Litigation" with JPMC (including its affiliates, agents, directors and employees) arising out of the Cases, meaning arbitration, adversary proceedings, alternative dispute resolution, or other litigation process where Reed Smith is directly adverse to JPMC and asserts any claim to (i) damages or a money judgment; (ii) the avoidance, disallowance, or subordination of a JPMC claim or lien, including without limitation any challenge as to the extent, validity, priority, enforceability or perfection of JPMC's collateral or JPMC's right to payment or other rights under any loan documents or other agreements; (iii) to foreclose or judicially enforce a lien where JPMC has a senior or junior lien on the property that is the subject of the foreclosure or judicial enforcement; and (iv) any subpoena, deposition, document production request, or other discovery against JPMC personnel or JPMC records; *provided, however*, that Reed Smith may investigate JPMC's liens and priority thereof, the amount of JPMC's claims and any claims against JPMC, and may defend any motion or relief sought by JPMC. If the matter ever involves Litigation with JPMC, Reed Smith will not represent the Creditors' Committee (or JPMC) in such Litigation.

### Notice

32. Notice of this Application shall be given to: (i) the Debtors; (ii) co-counsel and proposed counsel to the Debtors; (iii) Office of the United States Trustee; (iv) proposed counsel to the Official Committee of Tort Claimants; (v) proposed counsel to the proposed future claimants' representative; (vi) counsel to the ad hoc committee of local councils; (vii) counsel to JPMorgan Chase Bank National Association; (viii) counsel to the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (ix) those persons who have formally

appeared in these Cases and requested service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Creditors' Committee submits that no other or further notice is required.

### No Prior Request

33.  No previous request for the relief sought in this Application has been made to this Bankruptcy Court or any other court.

WHEREFORE, the Creditors' Committee respectfully requests that this Bankruptcy Court enter an order, in the form submitted by the Creditors' Committee, authorizing the Creditors' Committee to employ Reed Smith as its Delaware counsel in accordance with this Application on an hourly-rate basis, plus properly reimbursable expenses and out-of-pocket costs as an expense of administration, subject to approval by this Bankruptcy Court.

Date: April 23, 2020

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, *ET AL.***

By: */s/ Jennifer Rochon*
Jennifer Rochon on behalf of Girl Scouts of the United States of America in its capacity as Chair of the Official Committee of Unsecured Creditors of Boy Scouts of America and Delaware BSA, LLC