IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Boy Scouts of America and<br>Delaware BSA, LLC,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Objection Deadline: May 7, 2020, at 4:00 p.m. (ET)<br>Hearing Date: May 18, 2020, at 10:00 a.m. (ET) |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND
RETENTION OF ALIXPARTNERS, LLP AS ITS FINANCIAL ADVISOR
*NUNC PRO TUNC* TO MARCH 4, 2020**

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Boy Scouts of America, *et al*. (collectively, the "Debtors" or the "Organization"), appointed pursuant to sections 1102 of title 11 of the United States Code (the "Bankruptcy Code") hereby submits this application (the "Application") for the entry of an order pursuant to sections 328(a) and 1103 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), authorizing the Creditors' Committee to retain and employ AlixPartners, LLP ("AlixPartners") as its financial advisor, *nunc pro tunc* to March 4, 2020. In support of this Application, the Creditors' Committee has filed the declaration of David MacGreevey (the "MacGreevey Declaration") attached hereto as **Exhibit B** and (ii) the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, TX 75038.

Declaration of Jennifer Rochon, on behalf of the Creditors' Committee's Chair, attached hereto as **Exhibit C** (the "Rochon Declaration") and respectfully represents as follows:

## JURISDICTION

1.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and rule predicates for the relief sought by this Application are sections 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-2.

## FACTUAL BACKGROUND

2.  On February 18, 2020 (the "Petition Date"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested or appointed in the Debtors' chapter 11 cases.

3.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-

4.  On March 4, 2020, pursuant to Bankruptcy Code section 1102(a)(1), the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Creditors' Committee. The Notice of Appointment of the Creditors' Committee was entered on March 5, 2020 [Docket No.141]. The Creditors' Committee consists of the following five (5) members: (i) Pension Benefit Guaranty Corporation; (ii) Girl Scouts of the United States of America; (iii) Roger A. Ohmstede; (iv) Pearson Education Inc.;  and (vi) Lion Brothers Company, Inc.

5.  Also on March 4, 2020, the Creditors' Committee selected Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") to serve as its counsel, subject to Court approval.

6.  On March 4, 2020 (the "Retention Date"), the Creditors' Committee selected AlixPartners to serve as its financial advisor effective as of the Retention Date, subject to Court approval.

7.  On March 9, 2020, the Creditors' Committee selected Reed Smith LLP ("Reed Smith") to serve as its Delaware counsel, subject to Court approval.

8.  The engagement letter (the "Engagement Letter") providing the terms and conditions of the Creditors' Committee's proposed retention of AlixPartners, *nunc pro tunc* to the Retention Date, is attached hereto as **Exhibit D.**

### RELIEF REQUESTED

9.  By this Application, the Creditors' Committee seeks the entry of the proposed order (the "Proposed Order") attached hereto as **Exhibit A**, authorizing and approving the retention and employment of AlixPartners as its financial advisor, pursuant to sections 328 and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, and in accordance with the terms and conditions set forth in this Application, the Engagement Letter and the Proposed Order, effective as of the Retention Date.

10. Section 328(a) of the Bankruptcy Code empowers a committee appointed under section 1102 of the Bankruptcy Code, with the Court's approval, to employ professionals on any reasonable terms and conditions of employment to perform services for the Creditors' Committee in the discharge of such Creditors' Committee's duties.

11. In accordance with the *Interim Order (I) Authorizing the Debtors' to File (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a*

*Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, (III) Authorizing and Approving Procedures for Providing Notice of Commencement, and (IV) Granting Related Relief* [Docket No. 66] and the *Final Order (I) Authorizing the Debtors' to File (A) a Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) a Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, and (III) Granting Related Relief* [Docket No. 274] (collectively, the "Special Noticing and Confidentiality Procedures Orders"), in order to protect the identities of individual plaintiffs asserting abuse claims and individual plaintiffs who are minors, the Creditors' Committee has redacted such information from this Application. In light of the Special Noticing and Confidentiality Procedures Orders already entered by the Court, the Creditors' Committee requests a waiver of Rule 9018-1(d) of the Local Rules requiring an independent motion seeking to file a document under seal.

## ALIXPARTNERS' QUALIFICATIONS

12. AlixPartners is an internationally recognized restructuring and turnaround firm that has a wealth of experience in providing financial advisory services and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

13. AlixPartners is well qualified to serve as a financial advisor to the Creditors' Committee. AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. Its professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. See,

e.g., In re Murray Energy Holdings Co., Case No. 19-56885 (JEH) (Bankr. S.D. Ohio Jan. 8, 2020); In re EP Energy Corporation, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Jan. 8, 2020); In re Forever 21, Inc., Case No. 19-12122 (KG) (Bankr. D. Del. Nov. 22, 2019); In re Barneys New York, Inc., Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Oct. 31, 2019); In re Fusion Connect, Inc., Case No. 19-11811 (SMB) (Bankr. S.D.N.Y. Aug. 5, 2019); In re Windstream Holdings, Inc., Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. May 16, 2019); In re Trident Holding Corporation LLC, Case No. 19-10384 (SHL) (Bankr. S.D.N.Y. Mar. 29, 2019); In re Aegean Marine Petroleum Network Inc., Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); and In re Dynamic International Airways, LLC, Case No. 17-10814 (CRA) (Bankr. M.D.N.C. Oct. 16, 2017).

14. The Creditors' Committee requires the services of AlixPartners to provide financial advisory and bankruptcy consulting services, as further detailed below. The Creditors' Committee is familiar with the professional standing and reputation of AlixPartners. The Creditors' Committee understands and recognizes that AlixPartners has a wealth of experience in providing financial advisory services in restructurings and reorganizations across the United States and has exemplary qualifications to perform the services required by the Creditors' Committee in these cases. AlixPartners is able to represent the Creditors' Committee in a cost-effective, efficient and timely manner and has been performing such services since the Retention Date.

**ALIXPARTNERS' DISINTERESTEDNESS**

15. To the best of the Creditors' Committee's knowledge, information, and belief, except to the extent disclosed herein and in the MacGreevey Declaration, AlixPartners: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) has no connection with the Debtors, its creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Creditors' Committee.

16. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, the Creditors' Committee is advised that AlixPartners will use reasonable efforts to file promptly a supplemental declaration.

**SCOPE OF SERVICES**

17. AlixPartners has begun to provide assistance to the Creditors' Committee in accordance with the terms and conditions set forth in the MacGreevey Declaration and in the Engagement Letter.

18. AlixPartners will work closely with Kramer Levin and Reed Smith to ensure that there will be no duplication of efforts or unnecessary overlap in the services to be provided by AlixPartners and those that have been provided or which will be provided by the Creditors' Committee's other professionals. It is presently anticipated that AlixPartners will provide advice to and assist the Creditors' Committee in evaluating and implementing strategic and tactical options through the bankruptcy and restructuring process. A general list of tasks AlixPartners may perform is as follows:

- Review and evaluate the Organization's current financial condition, business plans and cash and financial forecasts, and periodically report to the Creditors' Committee regarding the same.

- Review the Organization's cash management, tax sharing and intercompany accounting systems, practices and procedures.

- Review and investigate: (i) related party transactions, including those between the Organization and non-debtor subsidiaries and affiliates (including, but not limited to, shared services expenses and tax allocations) and (ii) selected other pre-petition transactions.

- Identify and/or review potential preference payments, fraudulent conveyances and other causes of action that the various Organization estates may hold against third parties, including each other.

- Analyze the Organization's assets and claims, and assess potential recoveries to the various creditor constituencies under different scenarios.

- Assist in the development and/or review of the Organization's plan of reorganization and disclosure statement.

- Review and evaluate court motions filed or to be filed by the Organization or any other parties-in-interest, as appropriate.

- Render expert testimony and litigation support services, including e-discovery services, as requested from time to time by the Creditors' Committee and its counsel, regarding any of the matters to which AlixPartners is providing services.

- Attend Creditors' Committee meetings and court hearings as may be required in the role of advisors to the Creditors' Committee.

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

19.     AlixPartners' decision to accept this engagement to advise and assist the Creditors' Committee is contingent upon its ability to be retained in accordance with the terms and conditions of employment set forth in the Engagement Letter, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, including any indemnification provisions outlined in the Engagement Letter, as modified by the Proposed Order to comply with the practices and requirements of this Court.

**TERMS OF RETENTION AND COMPENSATION**

20.     AlixPartners is not owed any amounts with respect to prepetition fees and expenses in connection with these cases.

21.     The MacGreevey Declaration and the Engagement Letter set forth the terms and conditions of AlixPartners' employment, its staffing and approach, and its billing practices. AlixPartners has requested that the Creditors' Committee seek this Court's approval of such matters with the filing of this Application.

22.     AlixPartners charges fees based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of AlixPartners to bill clients for travel time consistent with guidelines of the jurisdiction.  For this jurisdiction, therefore, AlixPartners will apply a 50% discount rate to non-working travel time billed.  Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case. Billing rates are generally representative of prevailing market rates, as awarded by other courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements.  Subject to this Court's approval, and as described in the MacGreevey Declaration and Engagement Letter, the Creditors' Committee requests that AlixPartners be entitled to receive compensation at its normal hourly rates.

23.     AlixPartners will also maintain records in support of any fees (in 1/10th of an hour increments), costs, and expenses incurred in connection with services rendered in these chapter 11 cases.  Records will be arranged by category and nature of the services rendered and

will include reasonably detailed descriptions of those services provided on behalf of the Committe.

24.    AlixPartners does not seek a success fee in connection with this engagement.

25.    AlixPartners' current standard hourly rates for 2020, subject to periodic adjustments, are as follows:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,000 – $1,195 |
| Director | $800 – $950 |
| Senior Vice President | $645 – $735 |
| Vice President | $470 – $630 |
| Consultant | $175 – $465 |
| Paraprofessional | $295 – $315 |

26.    AlixPartners reviews and revises its billing rates on January 1 of each year. Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

27.    In addition to compensation for professional services rendered by AlixPartners' Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including transportation costs, lodging, and meals. Expenses will be billed at actual cost.

28.    To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

29. To the extent AlixPartners uses the services of independent contractors (the "Contractors") in these chapter 11 cases, AlixPartners shall: (a) pass through the cost of such Contractors to the Debtors at the same rate that AlixPartners pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for AlixPartners; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

30. AlixPartners intends to apply to the Court for allowance of compensation and reimbursement of expenses, including on a monthly, interim and final basis, pursuant to 11 U.S.C. § 330, Bankruptcy Rule 2016, Local Rule 2016-2, the *Order (1) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* [Docket No. 341] (the "Interim Compensation Procedures Order"), entered by the Court on April 6, 2020, and any other applicable orders of the Court or provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

31. Neither Kramer Levin, Reed Smith, the members of the Creditors' Committee, nor any of their agents are or shall be responsible for the payment of AlixPartners' fees and costs arising out of the engagement described and referenced herein, regardless of whether or not AlixPartners is paid in full from the Debtors' estate.

32. AlixPartners negotiated the terms and conditions of the Engagement Letter at arm's length and in good faith. Notwithstanding anything to the contrary in the Engagement Letter, AlixPartners has agreed to certain modifications to its standard indemnification and limitations on liability provisions as reflected in the Proposed Order attached hereto as **Exhibit A**. The Creditors' Committee and AlixPartners believe that the indemnification

language proposed therein complies with this Court's requirements for similar engagements of other professionals in these chapter 11 cases. AlixPartners has been retained with similar or more expanded indemnification language in other representations in this district and other jurisdictions.

## NOTICE

33. Notice of this Application shall be given to: (i) the Office of the United States Trustee; (ii) proposed Delaware counsel and counsel to the Debtors; (iii) proposed counsel to the official committee of tort claimants; (iv) counsel to the proposed future claimants' representative; (v) counsel to the ad hoc committee of local councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

34. No previous application for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Creditors' Committee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein as well as such other and further relief as the Court deems just and proper.

Date: April 23, 2020

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

By: */s/ Jennifer Rochon*
Jennifer Rochon on behalf of Girl Scouts of the United States of America in its capacity as Chair of the Official Committee of Unsecured Creditors of Boy Scouts of America and Delaware BSA, LLC