**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 204, 426**<br><br><u>**Hearing Date**</u>: May 4, 2020 at 10:00 a.m. (ET) |

**DEBTORS' REPLY IN FURTHER SUPPORT OF THE THEIR APPLICATION FOR
ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
SIDLEY AUSTIN LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN
POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE**

1.  The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, "<u>BSA</u>" or the "<u>Debtors</u>") hereby file this reply (the "<u>Reply</u>") to the *Objection to Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date* (Dkt. 426) (the "<u>Objection</u>") filed by Century Indemnity Company ("<u>Century</u>"), and in further support of their *Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date* (Dkt. 204) (the "<u>Application</u>"). In further support of the Application and this Reply, the Debtors submit the Declaration of Brian Whittman ("<u>Whittman Decl.</u>") filed contemporaneously herewith.

2.  For the reasons stated in the brief of Sidley Austin LLP ("<u>Sidley</u>") filed contemporaneously herewith, the Debtors request that the Court overrule Century's Objection

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

and approve their Application to retain Sidley. The displacement of Sidley at this stage would be catastrophic not only to BSA, but to the other stakeholders in this proceeding. Sidley has expended significant time and resources on behalf of BSA and the Debtors' estates. Since it was first retained 18 months ago, Sidley has become intimately familiar with BSA, its mission, its culture, its complex structure, and the unique challenges presented by the bankruptcy. It has formed ongoing relationships with representatives of abuse survivors, the future claimants' representative, insurers, Local Councils, and other constituents. It has spent time and resources representing BSA in pre- and post-petition negotiations, structuring, and planning regarding the restructuring. (Whittman Decl. ¶ 9.) And it has been closely involved in negotiations with advisors to the Official Committee of Tort Claimants and the Official Committee of Unsecured Creditors. (*Id.*) Sidley's institutional knowledge cannot be quickly replaced, and the consequences of dispossessing BSA of its chosen counsel at this stage cannot be understated.

3.  *First,* and as BSA explained at the first day hearing, to accomplish its two primary objectives in this proceeding—provide equitable compensation to abuse survivors and preserve BSA's mission—it is "critically important" that the bankruptcy proceed expeditiously. (First Day Hearing Tr. 25:13-19 (Feb. 19, 2020); *see also* Whittman Decl. ¶ 9.) If BSA were forced to obtain new counsel, BSA would need to spend significant time selecting replacement counsel, educating replacement counsel about the history of its organization, its current financial struggles, and bringing replacement counsel up to speed on the details of this restructuring, including pleadings and other documents and the myriad of other legal issues at play. (*See* Whittman Decl. ¶ 9.) Moreover, replacement counsel would need to familiarize itself not only with BSA's non-profit operations, financial affairs, abuse claims history, and organizational structure, but also the interests and legal positions of the other stakeholders in this restructuring.

(*Id.*) As a result, these proceedings will be substantially delayed, which benefits no one and, in fact, would result in a substantial costs to the estates.

4.  *Second*, and relatedly, hiring replacement counsel would be expensive. BSA would need to compensate replacement counsel for the time spent to develop the understanding that Sidley has obtained over the past 18 months—including learning about BSA's operations and restructuring, performing diligence and analyses, and completing other work product. (*Id.* ¶ 10.) In addition, new counsel would have to spend months building trust and relationships with the other parties in interest in the case at extreme cost and delay. Such financial harms would prejudice any debtor in the midst of a restructuring, but the impact on BSA, a non-profit, will be particularly destructive due to the COVID-19 pandemic. BSA's financial position and general operations have already been significantly impaired by COVID-19; BSA has cancelled events and programming, its fundraising activities have slowed considerably, and BSA furloughed about 60% of its workforce effective April 1, 2020. (*Id.* ¶ 7.) BSA also closed nearly all of its 175 Scout Shops, and expects some of those locations to remain closed well into the summer. (*Id.*) Moreover, BSA is also facing the potential cancellation of its summer programming at its high adventure facilities, which historically provided a material portion of BSA's annual revenue. (*Id.*). Overall, BSA estimates that COVID-19 will have an impact of over $60 million on its liquidity position. (*Id.*)

5.  Given the unique nature of this restructuring combined with the unprecedented economic impact of COVID-19, the burdens imposed on BSA if Sidley were removed as counsel would be particularly extreme. As noted above, BSA would suffer unique and extraordinary prejudice because it would need to seek, obtain, educate, and compensate new counsel. Put simply, the burden a change in counsel would impose will undo the substantial progress BSA

and its advisors have made towards resolving these chapter 11 cases as expeditiously and efficiently as possible. (*Id.* ¶ 6.). This waste of time and resources will seriously endanger BSA's capability to continue to operate and carry out its mission. (*Id.*; *see also* First Day Hearing Tr. 26:4-17 (noting that a prolonged bankruptcy would affect the trust and confidence of both parents and donors). And, critically, the inefficiencies will necessarily deplete the funds available to compensate abuse survivors. (Whittman Decl. ¶ 6.) The Court should avoid these destructive consequences by approving BSA's Application.

6. Accordingly, BSA respectfully requests the Court overrule the Objection and grant the Application.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: April 28, 2020<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Joseph C. Barsalona II (No. 6102)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@mnat.com<br>            aremming@mnat.com<br>            jbarsalona@mnat.com<br>            emoats@mnat.com<br>            ptopper@mnat.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Email: jboelter@sidley.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Thomas A. Labuda (admitted *pro hac vice*)<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Email: tlabuda@sidley.com<br>            mandolina@sidley.com<br>            mlinder@sidley.com<br><br>CO-COUNSEL AND PROPOSED COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION |