IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. 497 |

**DECLARATION OF BRIAN WHITTMAN IN SUPPORT OF REPLY IN FURTHER SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SIDLEY AUSTIN LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE**

Brian Whittman, being duly sworn, states the following under penalty of perjury:

1.　I am over 21 years of age and I am fully competent to make this declaration (the "Declaration") in support of the *Reply in Further Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date*, filed contemporaneously herewith. I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), a limited liability corporation, which has been retained as the financial advisor to the Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") [Docket No. 355]. I have twenty-five years of financial restructuring and bankruptcy experience.[2] I have served as a Managing Director in A&M's Restructuring &

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] For the past twenty-five years I have advised companies requiring performance improvement or financial restructuring across a wide range of industries, including automotive, communications, distribution, manufacturing, media, mining and retail. I have also led complex engagements for companies, secured lenders

Turnaround group since 2008 and the group's co-head of the Midwest region since 2019. Prior to joining A&M in 2002, I spent seven years working as a director in restructuring at a former "Big Five" accounting firm. I respectfully submit this Declaration in support of the Debtors' response to the objection of Century Indemnity Corporation to the Debtors' retention of Sidley Austin LLP ("Sidley") as counsel in these chapter 11 cases [Docket No. 426].

2.      Except as otherwise stated in this Declaration, all facts set forth herein are based on my personal knowledge, materials provided by, or my discussions with, members of the Debtors' management team or information obtained from my personal review of relevant documents. Additionally, the views asserted in this Declaration are based upon my experience and knowledge of the Debtors' operations, financial condition, and liquidity. If called upon to testify, I would competently testify to the facts set forth herein.

3.      A&M was retained by Sidley on behalf of the BSA in October 2018 to provide restructuring advisory services in connection with BSA's review and evaluation of possible strategic options. Since A&M's initial engagement, A&M personnel have worked closely with the BSA's management and other professionals, including Sidley, on BSA's restructuring including working toward a global resolution of abuse liabilities and have assisted them with the requirements of the chapter 11 cases. Since August 2019, I have been the lead Managing Director at A&M responsible for this engagement, and I have had a lead role in preparing the Debtors' chapter 11 filings, developing the Debtors' business plans, and providing diligence to and negotiating with certain of the Debtors' key constituencies. In doing so, I have familiarized myself with the Debtors' day-to-day operations, financial affairs, and books and records through review of certain financial documents and discussions with management.

---

and creditors, serving in both interim management and advisory roles. I am a Certified Insolvency and Restructuring Advisor and a Certified Public Accountant.

4.     On February 18, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, I have maintained a lead role in supporting the BSA's senior leadership team through the restructuring, including by coordinating the preparation of various financial statements and schedules, and assisting in the assembly of historical financial data, cash flow projections, and other financial analyses.

5.     It is my understanding that Sidley was retained by the BSA shortly before A&M's retention in the fall of 2018. I am aware of the extensive work that Sidley has performed on behalf the BSA and the Debtors' estates, both prior to the Petition Date and during the course of these chapter 11 cases. I have participated in numerous teleconferences and meetings with Sidley over the last several months and have worked closely with Sidley on providing restructuring advice to the BSA.

6.     As I previously described in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16], the BSA is a non-profit corporation that relies on member fees and donations to sustain its operations. The BSA recognized that prolonged bankruptcy cases would be costly, would deplete funds available to compensate abuse victims, and would endanger the BSA's capability to continue to carry its mission after emergence. The Debtors and their advisors have made significant efforts to ensure that these chapter 11 cases proceed as expeditiously and efficiently as possible.

7.     The Debtors' financial position and operations have been significantly impacted by the ongoing COVID-19 pandemic. The social distancing measures adopted throughout the country have had a considerable effect on the organization's operations. In particular, the BSA was forced to temporarily close virtually all of its 175 Scout Shops over the course of March

2020, and expects some locations will remain closed into the summer resulting in a significant decline in revenue. The BSA has also had to cancel various events, which has impacted fundraising, and its units throughout the country have had to cancel programming, which has impacted recruitment of new members. As a result, and in order to help conserve its financial resources, the BSA furloughed approximately 60% of its workforce effective April 1, 2020, and has reduced other discretionary expenses. The substantial reduction in staff and the additional work associated with adapting to the new realities of this pandemic have imposed significant additional burdens on the employees who remain with the BSA. BSA is also facing the potential cancellation or reduction of its programming at its high adventure facilities this summer as a result of the COVID-19 pandemic. Historically, BSA has derived a material portion of its revenue from these summer programs, and the cancellation or other limitations and restrictions placed on the camps in response to the COVID-19 pandemic will further increase the Debtors' financial challenges. In the aggregate, the Debtors project that COVID-19 will have an impact of over $60 million on their liquidity position, creating a heightened need to advance the chapter 11 cases as quickly as possible.

8. It is my view that denying the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date* [Docket No. 204] and displacing Sidley as restructuring counsel to the Debtors would be highly detrimental to the Debtors and their estates and prejudicial to the Debtors' restructuring efforts and negotiations with their constituencies.

9. Sidley has performed extensive work in preparing the Debtors for these chapter 11 cases and in representing the Debtors in pre- and post-petition negotiations, structuring and

4

planning regarding the restructuring. If the Debtors were forced to hire replacement counsel, it would delay the restructuring process and ongoing stakeholder discussions while the Debtors select and educate such replacement counsel. Replacement counsel would require time to become familiar with the Debtors, their non-profit operations, financial affairs, abuse claims history, organization structure, the pleadings and other documents filed in connection with these chapter 11 cases, and the myriad of legal issues and other aspects of the restructuring on which Sidley has been working for the past 18 months. Such a delay would be prejudicial to the Debtors as they seek to reorganize as efficiently as possible and continue working and negotiating with their stakeholders to facilitate that process. Further, Sidley has been closely involved in the ongoing negotiations with advisors to the Official Committee of Unsecured Creditors and the Official Committee of Tort Claimants, and the interests of the Debtors would be harmed by having new counsel inserted into those discussions at this stage of the proceedings.

10. Further, there would be material financial costs to the Debtors' estates to compensate replacement counsel to become educated on the Debtors' operations and restructuring, and to duplicate diligence, analyses, and other work that Sidley has performed. Given the financial position of the Debtors and the additional uncertainty and financial distress caused by the ongoing COVID-19 pandemic, the additional costs would be a significant burden on the Debtors' estates. Both the delay in the timing of these chapter 11 cases and the additional expense of replacement counsel would be detrimental to the Debtors' reorganization and harmful to the Debtors' estates.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  April 28, 2020
        Highland Park, Illinois      */s/ Brian Whittman*
                                            Brian Whittman
                                            Managing Director
                                            ALVAREZ & MARSAL NORTH AMERICA, LLC