1      UNITED STATES BANKRUPTCY COURT
        DISTRICT OF DELAWARE
2

3 IN RE:         .  Chapter 11
            .  Case No. 20-10343 (LSS)
4 BOY SCOUTS OF AMERICA AND  .
 DELAWARE BSA, LLC,    .
5            .  Courtroom 2
            .  824 Market Street
6       Debtors. .  Wilmington, Delaware 19801
            .
7            .  Wednesday, April 29, 2020
 . . . . . . . . . . . . . . . . . 10:19 a.m.
8

9     TRANSCRIPT OF TELEPHONIC HEARING
   BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10     UNITED STATES BANKRUPTCY JUDGE

11 <u>APPEARANCES:</u>

12 For the Debtors:   Derek C. Abbott, Esquire
          MORRIS, NICHOLS, ARSHT & TUNNELL,
13           LLP
          1201 North Market Street
14          16th Floor
          Wilmington, Delaware 19899
15
          -and-
16
          James W. Ducayet, Esquire
17          SIDLEY AUSTIN, LLP
          One South Dearborn Street
18          Chicago, Illinois 60603

19 (APPEARANCES CONTINUED)

20 Electronically
 Recorded By:    Nicki Barksdale, ECRO
21
 Transcription Service: Reliable
22          1007 N. Orange Street
          Wilmington, Delaware 19801
23          Telephone: (302) 654-8080
          E-Mail:  gmatthews@reliable-co.com
24
 Proceedings recorded by electronic sound recording:
25 transcript produced by transcription service.

APPEARANCES (CONTINUED):

For Century Indemnity
Company:                    Tancred Schiavoni, Esquire
                           O'MELVENY & MYERS, LLP
                           Times Square Tower
                           7 Times Square
                           New York, New York 10036


For the U.S. Trustee:      Hannah C. McCollum, Esquire
                           OFFICE OF THE UNITED STATES TRUSTEE
                           J. Caleb Boggs Federal Building
                           844 King Street
                           Suite 2207, Lockbox 35
                           Wilmington, Delaware 19801

1                                    INDEX

2    MOTIONS:                                                    PAGE

3    Agenda
     Item 1:    Telephonic Status Conference to review motion       4
4               of Century Insurance Company to submit
                additional materials *in camera* in connection
5               with its objection to the Debtors' application
                for the retention of Sidley Austin, LLP
6

7    Transcriptionist's Certificate                              31

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 10:19 a.m.)

2                    THE OPERATOR:  And, Your Honor, counsel is live.

3                    THE COURT:  Thank you.

4          Good morning, counsel.  This is Judge Silverstein.

5    We're here Boy Scouts of America, Case Number 20-10343.

6          And I asked for a hearing with respect to the

7    Sidley retention hearing, which is going to go forward next

8    Monday and, in particular, I've gotten submissions with

9    requests that portions of the submission be submitted *in

10   camera* and other portions have already been submitted under

11   seal.  So, that's what I would like to discuss.

12         Ginger [sic], could you remind everybody of the

13   rules before we start, please.

14                   THE COURT RECORDER:  Yes.  This is Nicki from

15   Judge Silverstein's courtroom.

16         It is extremely important that you put your phones

17   on mute when you're not speaking.  When speaking, please do

18   not have your phone on speaker, as it creates feedback.  This

19   will also help with the background noise, so that we can hear

20   the person that is speaking and that it's an accurate record.

21   Also, it is very important that you state your name each and

22   every time you speak for an accurate record.

23         Your cooperation in this matter is appreciated.

24   Thank you.

25                   THE COURT:  Go ahead.

1            MR. ABBOTT:  Good morning, Your Honor.  This is --

2   how would you like to proceed -- this is Derek Abbott, Your

3   Honor.

4            THE COURT:  Go ahead, Mr. Abbott.

5            MR. ABBOTT:  Well, Your Honor, I appear for the

6   debtors.  Obviously, as the Court may know, there were

7   submissions filed by both, the debtors and the Sidley firm,

8   Your Honor, responding to Century Indemnity's objection.

9            It is the debtors' application, Your Honor,

10  obviously, to retain their counsel of choice.  It's a

11  critically important matter for the debtors, but the issues

12  that I think have been raised that have caused the Court to

13  ask for this status conference are largely driven by

14  discussions between Sidley and Century Indemnity's counsel,

15  Your Honor.

16           So, if I may, I'd just ask to cede the podium to

17  Jim Ducayet from the Sidley firm, Your Honor, who I think can

18  articulate the issues more clearly than I would be able to,

19  Your Honor.

20           THE COURT:  That's fine.

21           Mr. Ducayet?

22           MR. DUCAYET:  Good morning, Your Honor.  Jim

23  Ducayet on behalf of Sidley Austin, LLP, and thank you for

24  hearing us this morning.

25           Your Honor, we did file a motion yesterday in

1  connection with our reply papers to provide to the Court

2  certain of the materials *in camera* and that was done for the

3  specific purpose of permitting us and counsel for Century

4  Indemnity to try to work towards, effectively, an agreed set

5  of materials that could be lodged with the Court in

6  anticipation of the hearing next week.

7          Obviously, on behalf of Sidley, we have no desire

8  or intention to reveal any more confidential information than

9  is absolutely necessary here for Your Honor to consider this

10 issue and we've been trying to work with, you know, Century

11 Indemnity to come up with a mechanism by which that can be

12 accomplished, you know, accommodating both, Sidley's right to

13 respond to the very serious allegations that have been lodged

14 against it, while also respecting the confidentiality

15 interests of Century Indemnity.

16          And so, we are in the process, Your Honor, of

17 working with counsel for Century.  We have exchanged a

18 proposed set of limited, redacted exhibits, you know, which

19 are attached to the various declarations.  I'm hopeful that

20 we will come to an agreement on what those would look like,

21 as well as a form of redacted declarations.  And, you know,

22 the idea here, Your Honor, would simply be to ensure that,

23 you know, you have what you need in order to fairly consider

24 this issue, but at the same time, minimizing any, you know,

25 confidential information that would be potentially revealed

1  to the public.

2          And so, I think where things stand, Your Honor, is

3  we're going to continue to discuss this.  If Your Honor wants

4  to set a time by which we would report back to the Court on

5  the status of those discussions, we can do that, obviously,

6  very quickly.

7          But, Your Honor, we filed the submission *in camera*

8  really as an effort to just try to navigate these issues,

9  which are tricky.  But as I said, we have, obviously, an

10  important interest here in defending ourselves, but we have

11  no interest in revealing anything confidential, you know,

12  beyond that which is absolutely necessary.

13          THE COURT:  Mr. Ducayet, is your thought that the

14  materials that would be submitted *in camera* would be

15  ultimately whittled down so that it would be some subset of

16  that or is the thought that what would be submitted *in camera*

17  is the totality of documents, but then there would be a

18  culling as to some more limited subset that would be, the

19  request would be that they be reviewed *in camera* or under

20  seal?

21          MR. DUCAYET:  It's the latter, Your Honor.  And I

22  think just to put a little bit more, you know, detail around

23  that, I think there are sort of two different issues here.

24  There are a set of underlying exhibits, you know, which are

25  the correspondence and other documents and the way in which

1 Century had proposed to deal with that would be to redact

2 things like the names of the parties or other identifying

3 information and I actually think we're pretty close to an

4 agreement on what those redacted versions would look like.

5         And then separately, the declaration, and, in

6 particular, the declaration of Mr. Sneed, who's my

7 reinsurance partner, contains information that, you know, I

8 believe Century, you know, believes to be confidential.  And

9 we would try to work with Century's counsel to see if we can

10 come up with a format that could be submitted to Your Honor

11 and filed under seal.

12         THE COURT:  Okay.  My concern, so I want to make

13 sure I understand, my concern is that while I'd like to get a

14 complete set of documents as soon as possible so I am

15 prepared for the hearing, I don't want to be reviewing

16 documents or portions of documents that ultimately will not

17 be submitted.

18         MR. DUCAYET:  I understand, Your Honor.

19         And I think in that regard, Your Honor, we are

20 attempting to work with counsel for Century to do exactly

21 that.  We can come up with a set of materials that may need

22 to be filed under seal, Your Honor, but that would not be

23 treated, you know, simply as an *in camera* submission.

24         THE COURT:  Uh-huh.  So, when we do anticipate

25 having that set of documents?

1      MR. DUCAYET:  Your Honor, with respect to the

2  actual exhibits to the various declarations, as I said, I

3  actually think we're quite close.  The parties have been

4  exchanging proposed redactions and I think we're pretty close

5  to agreement on most of the documents.  There may be, you

6  know, a couple that we're still discussing, so I think that

7  could happen very quickly.

8      With respect to the declarations, themselves, I

9  think we're going to need to understand from Century, now

10  that they have the declarations, what they believe should be,

11  you know, maintained confidentially and what should not.

12      I would say, Your Honor, with respect to both of

13  the declarations, there's obviously material in there that is

14  not confidential and you'll see that when you read the brief.

15  There's, you know, a number of, you know, citations to

16  Mr. Sneed's declaration, for example, that refer to

17  communications that would not be sort of within any sort of,

18  you know, privilege or confidential area.  But in the

19  interests of avoiding any sort of controversy here and to

20  accommodate Century, we decided to simply hold off on filing

21  any version of those until we got some guidance from Your

22  Honor.

23      THE COURT:  Okay.  Let me hear from Century.

24      MR. SCHIAVONI:  Hello, Your Honor.  This is

25  Tancred Schiavoni from O'Melveny & Myers, for Century

1  Indemnity.

2          Century's contention here is that as of the

3  petition date, when the petition was filed, Sidley

4  represented Century and the Chubb companies and it

5  represented them on matters concerning reinsurance for the

6  Boy Scouts' insurance.  There was then an attempt to

7  withdraw, after the petition was filed and the publicly was

8  made thereafter.

9          The parties have a very different view when you

10 get into the briefs, about the legal standard that applies

11 because of this.  Century contends that one seven applies and

12 if it does, then Your Honor need not reach any issue about

13 the substance of the work that was done internal -- like

14 attorney-client communications by the client and the

15 attorneys here, before the withdrawal.

16          The two types -- there's really two types of

17 documents that are at issue or information in the filings.

18 One set of the documents involve the request by Sidley for a

19 waiver, the refusal of that request by Chubb, and then when

20 it was learned that the -- that, basically, Sidley had gone

21 ahead, the exchange of correspondence objected to them going

22 ahead in Sidley's response.

23          That communication sort of deals with the

24 conflict, itself.  I think the part -- and it doesn't get

25 into the attorney-client communications about the work that

1  Sidley did for our client on Boy Scout-related matters, okay,

2  the attorney-client back-and-forth there.

3          I think we're very close with Sidley on those --

4  those are the documents oh we're very close to reaching an

5  agreement on minor redactions on those documents that would

6  take out information about the specific names of arbitrators

7  and confidential arbitrations and specific information about

8  those arbitrations.  We are very close on agreement on the

9  documents.

10          The other category of material is information

11  about the legal advice and the privileged information that

12  Century Chubb exchanged with Sidley in connection with its

13  work as a -- in the attorney-client relationship on the Boy

14  Scout matters.  That material is what they've submitted *in*

15  *camera* and it doesn't -- you know, I'm still so forth

16  struggling through these papers, but I believe it's extremely

17  narrow.  I believe it doesn't involve any documents and it

18  just involves several paragraphs of Mr. Sneed's declaration

19  and then a paragraph or two of the brief that's redacted.

20          So, the material that they're proposing to submit

21  under -- *in camera* is very narrow.  It doesn't involve, I

22  don't believe, any documents.  It's just Mr. Sneed testifying

23  about his attorney-client communications about the substance

24  of the work.

25          We would tell Your Honor we don't think you need

1 to reach that, the substance of that material.  We think you

2 could go forward with the hearing and you could address the

3 contentions about the legal standards that apply and if you

4 conclude that you do need to reach that material, you could

5 do -- you know, we could address that, in essence,

6 subsequently.

7 But we don't believe that in order for a client to

8 try to protect its attorney-client relationship and the

9 substance of its attorney-client communications and

10 confidential information, it has to publish that information.

11 It turns the ethics rules on its head completely.

12 So, you know, I think we can reach an agreement,

13 and important that the U.S. Trustee agree also on these

14 documents, but on this discrete category of information about

15 what was actually communicated by the parties about this, it

16 would damage both, us, and it would, frankly, damage the Boy

17 Scouts, for it to be revealed.

18 THE COURT:  Well, I appreciate that and without

19 having looked at the issue, it does strike me that a party

20 should not have to reveal its confidential information in

21 order to -- its privileged information in order to seek to

22 prevent its counsel from representing another party.  Not

23 that I know that's the situation, here, but that's the

24 contention, so I understand that.

25 On the other hand, I don't want to, and I don't

1 believe we can in this case, have a bifurcated hearing.  I

2 need to hear -- I need to be able to have the entire hearing

3 at this point, several months into the case, on an important

4 issue of who's going to represent this debtor going forward.

5 So, I need to be able to have a complete hearing and be

6 prepared for it.

7          And the parties are going to have to discuss, as

8 part of their preparations, how we're going to handle this

9 issue of privileged communications at the hearing, which is

10 another reason I wanted to have this call.  I would like to

11 understand who the witnesses are going to be and what

12 privileged information, not the content, but whether we're

13 going to have -- and it sounds like we are -- privileged

14 information at the hearing and how that's going to be

15 handled, not only for submission to me, but actually during

16 the -- during a public hearing.

17          MR. DUCAYET:  Your Honor, this is Jim Ducayet from

18 Sidley.  If I could speak to that issue and also to address

19 the points that Mr. Schiavoni made?

20          THE COURT:  Yes.

21          MR. DUCAYET:  Your Honor, first of all, I think

22 Mr. Schiavoni may have misspoken.  He said that we had

23 withdrawn from representing Century after the petition was

24 filed.  That's actually not accurate.  We withdrew on

25 January 16th of 2020, which is about a month before the

1 | petition was filed.

2 | In any event, the bigger issue he raised was with

3 | respect to the second category he described, whether it's

4 | necessary for Your Honor to consider that, we agree with Your

5 | Honor's comments that we do think it's necessary for, Your

6 | Honor, to consider that.  But let me just make very clear

7 | that the information we're talking about in that second

8 | category is limited and we've been very, very careful about

9 | this, Your Honor.

10 | It is limited to information about the scope of

11 | the representation and the categories of information that

12 | were provided to Sidley in connection with that

13 | representation.  And so, we agree, Your Honor, that the

14 | former client does not need to reveal the contents of

15 | privileged communications in order to seek to disqualify its

16 | counsel.

17 | But, Your Honor, it's fundamental and extremely

18 | important that Your Honor understand the scope of the work,

19 | the nature of the representation that we were asked to

20 | undertake for purposes of determining the question of whether

21 | or not that work is substantially related to the bankruptcy

22 | matters.  And Mr. Schiavoni is correct in the sense that

23 | there are a couple of paragraphs in the Sneed declaration,

24 | there are a couple of paragraphs in the brief that we're

25 | talking about here, but those describe the scope of what we

1 were asked to do and the categories of information.  We've

2 been very careful not to get into the content of any of the

3 privileged information.

4         And, you know, the analogy here, Your Honor, would

5 be to a privilege log in regulation litigation, which is Your

6 Honor needs to have sort of sufficient information to be able

7 to assess on its face, the claims that are being asserted

8 here and that's possible to do without revealing the

9 underlying substance.

10         And so, I remain hopeful, Your Honor, that we can

11 come to an agreement with Century's counsel on this, but I

12 just wanted to make clear, we're not proposing to put

13 privileged information into the record, but it is very

14 important that Your Honor understands precisely what it is

15 that we were asked to do and the categories of information

16 that we're providing in connection with that.

17         THE COURT:  Okay.  Well, I would agree that I need

18 to understand the scope of the Sidley representation of

19 Century and assume for that purpose, because it's true, that

20 I have no clue what the insurance litigation fully entails.

21         MR. DUCAYET:  Uh-huh.

22         THE COURT:  So, I need to understand, from that

23 standpoint, for example, whether in that context, the

24 underlying policies are implicated or is there any, well,

25 they're implicated or not, and, again, I have no clue, having

1  never done any of that type of work.  So, the broad

2  categories of types of work don't help me to understand what

3  that representation is.  So, I agree I need to understand the

4  scope of the representation.  I don't need to specifically

5  understand what individual advice was given, at least I don't

6  think so.  So, I agree with that.

7          MR. DUCAYET:  Your Honor, if I could, I agree with

8  all that, and Mr. Sneed will be prepared to discuss, you

9  know, some of the ways in which reinsurance litigation

10  generally works and the relationship between the direct

11  insurance and the like.  We think we can do that all without

12  revealing any privileged information.

13          Your Honor asked about sort of what the hearing

14  was going to look like --

15          THE COURT:  Uh-huh.

16          MR. DUCAYET:  -- and we can -- I can certainly

17  speak to that if Your Honor would like me to?

18          THE COURT:  Yes.

19          MR. DUCAYET:  So, Your Honor, I think at this

20  point, what we're contemplating is four witnesses:

21  Mr. Sneed, who's my reinsurance partner; Ms. Boelter, who's

22  my bankruptcy partner; Mr. Whittman, who I think you've heard

23  from already in this case, who is Boy Scouts' financial

24  advisor; and then Professor Rapoport, who is a legal ethics

25  expert.

1          And in terms of the way in which we would at least

2    currently think about putting those in, with respect to

3    Ms. Boelter, Mr. Whittman, and Professor Rapoport, I think we

4    would be inclined, if Your Honor would permit us, to simply

5    tender or proffer the declarations and to the extent there

6    is, you know, cross-examination that counsel would like to

7    conduct or questions that Your Honor has, you know, those

8    individuals would be available.  With respect to Mr. Sneed,

9    you know, we're still weighing, Your Honor, whether to simply

10   have him testify you know, indirect.  You know, given Your

11   Honor's comments, that actually might be helpful because he

12   can explain sort of the nature of the reinsurance process and

13   litigation over reinsurance.  But, in any event, those are

14   the four that we would anticipate, at this point, in putting

15   on.

16          In terms of the conduct of the proceeding, you

17   know, we will endeavor, consistent with my prior remarks, to

18   do absolutely at much of this in a format that's available to

19   the public and consistent with the public access to the

20   courts.  I really do think that's possible.  There may be a

21   few limited instances and I'm thinking, particularly, with

22   respect to Mr. Sneed's testimony where it might be necessary

23   to, you know, reveal information that's been submitted under

24   seal or that is confidential, Your Honor, we're all in a bit

25   of a brave new world here.  I don't know, exactly, as a

1  mechanical matter, how we would do that, you know, in a Zoom

2  hearing.  You know, typically, in an ordinary, you know, in-

3  person hearing, you know, there are ways that we could

4  accommodate that.

5         So, Your Honor, we're certainly happy to work with

6  counsel for Century on that and, Your Honor, in terms of the

7  mechanics of how that could happen.

8         MR. SCHIAVONI:  And, Your Honor, this is Tancred

9  Schiavoni.

10        THE COURT:  Uh-huh.

11        MR. SCHIAVONI:  In Paragraph 65 of Sidley's reply

12 brief, Sidley acknowledges that as of the petition date, it

13 had not withdrawn from these confidential arbitrations where

14 it represented Century, that it says; i.e., they did so just

15 days after the bankruptcy filing.  So, I did not misstate

16 that they represented Century on the day of the petition

17 filing.  We have some of the exhibits about the retention are

18 copies of the writings by Sidley to the arbitrators trying

19 to, basically, you know, quit from the engagement after the

20 petition was filed.

21        So, I think when you get into the papers here,

22 Your Honor, you're going to see that there's a very different

23 view between the parties about the legal standard that

24 applies.  Under 1.7, there is no relevance to any of the

25 substance of the reinsurance engagement.  The only issue is,

1  under 1.7, whether or not the current engagement, the

2  engagement as of the petition date and in the weeks and

3  months leading up to it, is adverse to Century.  That's about

4  the bankruptcy.  It doesn't require inquiry.  It doesn't

5  require the client to have to have his lawyer on the stand

6  testifying about his -- the substance of his attorney-client

7  advice, relationship, and the privileged information that he

8  provided.

9          So, I'd ask Your Honor, I think if you get into

10 the briefs here and you get into the argument, it may well be

11 that you conclude you don't need to reach these issues.

12 Sidley is, in essence, flipping the issue by trying to

13 withdraw after the petition date from its engagement with its

14 client.  It's trying to get the benefit of a lower standard,

15 the standard under 1.9, for a former client.

16         We've submitted extensive case law to you and an

17 expert opinion from one of the foremost authorities in

18 Delaware on ethics that you cannot get the benefit of the

19 lower standard of a former client by quitting, you know,

20 before you submit, you know, a matter is heard on whether or

21 not there's a conflict.

22         So, we think you ought to reach that legal issue

23 before we have an open hearing where our client, here the

24 lawyer for our client puts on -- takes the stand and starts

25 testifying about the substance of the attorney-client

1 relationship that he had with us, because it's simply not

2 relevant, we contend, under the legal standards that apply

3 here.

4 　　　　　THE COURT:  Well, I may or may not be able to draw

5 that conclusion before the hearing, so I think we have to be

6 prepared at the hearing to go forward in some fashion and I

7 would like the parties to discuss, and it sounds like, in

8 particular, Mr. Sneed's testimony, and how that might be

9 accommodated in the event that I can't get to -- I can't

10 decide that issue ahead of time.

11 　　　　　Mr. Schiavoni, who do you plan to have as

12 witnesses, anybody?

13 　　　　　MR. SCHIAVONI:  Well, Your Honor, it's sort of

14 influenced by two things.  First of all, I would suggest,

15 given the nature of the material here, and the time that

16 Sidley has had to prepare its response and the extensive

17 declarations it's put in, that the best way to sort of, for

18 us to reach an agreement on how to proceed is to have

19 certainty of what their direct case is going to be.  And I

20 don't think there's any reason for them to proceed other than

21 just tendering the declaration of their four witnesses.

22 　　　　　And if we've got the uncertainty -- Mr. Sneed

23 spent a lot of time preparing his declaration.  There's only

24 a discrete couple of paragraphs in there that are of issue.

25 If we could meet-and-confer on those in the next day or so,

1    it is possible that we could reach agreement on them.  But if

2    we're left open that in addition to his declaration, he may

3    offer other testimony on direct, it obviously makes this a

4    much more problematic issue.

5             So, I think the better way to proceed is to have

6    some prospect of us reaching agreement is for Sidley to just

7    agree to tender all four of its declarations, subject to

8    cross.  Then we know the scope of really what we're dealing

9    with.

10            On our side, we have put in a declaration from the

11   director of reinsurance litigation, Joshua Schwartz, and we

12   have an ethics expert.  I'm not sure whether we need to call

13   those fellows live or not.  We're reading their papers right

14   now and I've got a meeting with the client this afternoon to

15   determine what we need to respond to in those issues, but it

16   would be a matter of perhaps them and two or three others if

17   we had to go forward with a full hearing and we really had to

18   contest what Mr. Sneed was provided and the substance of his

19   communications because we take very serious issue that his --

20   the scope of his engagement was as narrow as he presents.

21            But, yes, we want to avoid having to put forward

22   three or four witnesses explaining what damage could be done

23   to us here, but that would be sort of the scope of things.

24   And it would be -- the prospect of reaching agreement here

25   would be very significantly enhanced if we knew the scope of

1  the direct, which we think it's fair, ought to just be the

2  declarations that have already been filed.

3          MR. DUCAYET:  Your Honor, this is Jim Ducayet from

4  Sidley, if I could just address that very briefly?

5          THE COURT:  Yes.

6          MR. DUCAYET:  Your Honor, I'm prepared to

7  represent now that if we put Mr. Sneed on for direct

8  testimony, that his testimony would not exceed the scope of

9  the information that's been provided in his declaration.  So,

10  I think that ought to assuage any concerns on Mr. Schiavoni's

11  part.

12          MR. SCHIAVONI:  But, Your Honor, if that's the

13  case, then what's the point of putting him on?  I mean, if he

14  said, if he's only going to say what's in his declaration,

15  isn't the prospect of sort of reaching an agreement here much

16  better and the hearing simplified by just simply presenting

17  him through just tendering his declaration?

18          I mean, obviously, the intent must be to present

19  something outside of the declaration if they want to present

20  him live, which leaves open who we need to call cross-

21  examine -- to rebut that case.

22          THE COURT:  Okay.  Well, I'm going to let the

23  parties talk.  I have not seen Mr. Sneed's declaration, just

24  so it's clear, because there may have been some confusion.

25  No documents have been submitted to me *in camera* yet; there's

1   just been a request to do so and I don't have them.  So, I

2   have not seen anything other than what is publicly filed and

3   I have only done a very quick once-through on those documents

4   of those filings.  So, I have not seen Mr. Sneed's

5   declaration.  I have not seen Professor Rapoport's

6   declaration and I don't know if I recall seeing

7   Mr. Whittman's declaration.  But in any event, I have not

8   seen anything that is not on the public docket.  And what I

9   have on the public docket on both sides has redactions.  Even

10  the sealed documents that were filed by Century have

11  redactions.  So, that's what I've seen.

12          Okay.  I'm going to let the parties talk.  As I've

13  indicated, I don't know whether or not I will be able to make

14  a legal determination on the issue that Mr. Schiavoni has

15  raised prior to the hearing and I don't know, because I

16  haven't extensively looked at the difference of 1.7 and 1.9

17  and what it permits and the effect of counsel saying we're

18  withdrawing versus when the withdrawal actually happened.  I

19  don't know about any of that.

20          So, I recognize, however, from reading the

21  submissions on this very cursory basis, that there are

22  clearly differences in perspective of what took place and

23  when and I would say some of it appears to be a shading of

24  the facts and some of it probably is an actual disagreement.

25  But there's clearly disagreement as to what took place here.

1          So, I would like the parties to talk.  I would

2    like to have a status report, which can be provided to

3    Ms. Johnson by a joint email as to where we are by tomorrow

4    at noon and if in the meantime there are -- there's an

5    agreement on a set of documents that can be submitted in

6    terms of the first set of documents that was discussed by

7    Mr. Schiavoni, then I would appreciate getting them.  And in

8    terms of the second category of documents, which actually

9    doesn't appear to be documents, but appears to be paragraphs

10   from Mr. Sneed's declaration, if there is an agreement that I

11   can see them, then I will -- would appreciate if they were --

12   and if that declaration is submitted.

13          I'll deal, I guess, with whether things remain

14   submitted *in camera*, which is not any preference, versus

15   sealed, which I think I noticed the U.S. Trustee has some

16   issue with sealing.  We'll deal with that.  But whatever the

17   parties can agree on in terms of submissions, subject to a

18   later determination of what may be *in camera* or what may be

19   under seal, I would appreciate those documents.

20          MS. MCCOLLUM:  Your Honor, this is Hannah McCollum

21   for the U.S. Trustee.  May I be heard?

22          THE COURT:  Yes.

23          MS. MCCOLLUM:  Again, Hannah McCollum for the U.S.

24   Trustee.  We are aware of the attorney-client privilege issue

25   here and as Your Honor referenced pleadings, we have filed a

1  brief on this issue in connection with Century's motion to

2  seal and as you may have seen, we sent an email to

3  Ms. Johnson yesterday indicating that we had concerns about

4  Sidley's motion to file *in camera*.  Our position in the brief

5  is that in a dispute between an attorney and a client, the

6  privilege is waived, but we're not arguing that now.  We know

7  this is a status conference.

8          But I speak up to say that if Sidley and

9  Century -- Century has already complied -- but if Sidley

10  wishes to file matters under seal, they have to comply with

11  Local Rule 9018 and Bankruptcy Code 107(c)(3), and that means

12  that the U.S. Trustee has to receive an unredacted copy of

13  what they propose to seal.  And Sidley has not done that yet

14  and so I speak to ask Sidley to comply with the Code and the

15  Rules so that we can see what is proposed to be redacted and

16  determine if that is something we need to object to or if we

17  need to raise a position on.

18          And, you know, if the parties run something by us

19  and we say, you know, we agree with your argument, but this

20  is something that should not be filed for the public to view,

21  then we don't have an issue for Monday.  But if we don't know

22  what there is and we don't know what purpose it's being used

23  for, then we're going to have a much more difficult time on

24  Monday.  And I say that because if parties are testifying, I

25  think, as counsel has said, it's easy to have them testify

1  without talking about things that shouldn't be in the public

2  record.  But right now, we don't know what they're trying to

3  seal.  We haven't seen it.  We don't know the purpose.  And

4  so, I just speak to encourage compliance with the Rules and

5  the Code.

6            THE COURT:  Thank you.  I wasn't aware of that

7  communication, but I'm not surprised.  So --

8            MR. DUCAYET:  Your Honor --

9            THE COURT:  And I don't even know that we have a

10 rule dealing with *in camera* review.  The only time I have

11 done it that I recall are in connection with discovery

12 issues, privileged communications, and actually, I think in

13 connection with an engagement letter on a retention, both in

14 Imerys.  So, I'm not sure that we even have a rule with

15 respect to *in camera* review.

16           MR. DUCAYET:  Your Honor, this is Jim Ducayet from

17 Sidley, if I could just be briefly heard?

18           THE COURT:  Yes.

19           MR. DUCAYET:  Just very quickly, just to -- I

20 believe Your Honor is correct.  I don't know that there is a

21 specific rule dealing with *in camera* submissions, and as I

22 said earlier, we're, frankly, just trying to navigate here

23 and be careful, you know, in light of the various

24 considerations here.

25           But to address Ms. McCollum's point, we have not

1  filed anything under seal at this point and, obviously, you

2  know, if we come to an agreement and we do end up filing

3  something pursuant to the sealing rules and the Local Rules,

4  we'll obviously comply with those fully, and I don't think

5  there should be no mistake about that.

6              THE COURT:  Okay.

7              MS. MCCOLLUM:  Your Honor, this is Hannah

8  McCollum.

9              They have filed redacted versions on the docket,

10 so our -- you know, I agree with counsel that I have not seen

11 a Local Rule about *in camera* review, because I've never seen

12 it before.  When matters are introduced into evidence, you

13 know, parties can ask the witness questions, they could hand

14 the witness a document and that document would still have to

15 be filed.  But right now, the situation, from our

16 perspective, seems to be that the parties have filed redacted

17 versions on the docket and one party has a motion to seal and

18 one doesn't.  And as, you know, I think the Code says you're

19 supposed to ask for permission to seal it and state the

20 reasons why you think it should be sealed.

21             MR. SCHIAVONI:  Your Honor, it's Tancred

22 Schiavoni.

23             On that, I think, let's just focus on some

24 practical issues here.  I think -- and Sidley can correct

25 me -- that the only material that they've asked to submit *in*

1  *camera* is just a couple -- is some redacted text from

2  Mr. Sneed's declaration where he's talking about his, you

3  know, attorney-client communications or work or what he was

4  provided in connection with the engagement for Chubb.  So,

5  it's a matter of several paragraphs or lines in that

6  declaration and then corresponding references to it in the

7  brief.  So, it's like, you know, several paragraphs are

8  redacted in there.

9          I don't think Sidley has proposed to submit any

10  documents *in camera* -- I may be wrong on that, but I don't

11  think they have.  So, for the U.S. Trustee and for the Court,

12  if I'm right on this, I think it's a very narrow issue.  It

13  just involves a few paragraphs in this declaration and the

14  corresponding text in the brief, which we'll meet-and-confer

15  on, otherwise the U.S. Trustee --

16          MS. MCCOLLUM:  Your Honor, this is Hannah

17  McCollum --

18          MR. SCHIAVONI:  If the U.S. Trustee has the

19  exhibits that we proposed to file under seal -- we provided

20  those to them -- and we're close to reaching an agreement on

21  what redactions are proper or not with Sidley, we hope the

22  U.S. Trustee would show flexibility and agree that we can

23  redact the names of the arbitrators and the specific parties

24  to these confidential arbitrations and specific lines about

25  legal advice.  But if they show that flexibility, we think we

1  could reach agreement on those documents.

2            MS. MCCOLLUM:  Your Honor, this is --

3            THE COURT:  Okay.  Well, as I indicated, I'm going

4  to let the parties (indiscernible) and that includes

5  discussions with the Office of the United States Trustee.

6  And if there can't be agreement, then I will deal with it.

7            MR. DUCAYET:  Your Honor, this is Jim Ducayet from

8  Sidley.  That's fine with us.  That makes sense and we will

9  work with counsel.

10           THE COURT:  Okay.  I think that's all I have for

11 today.  We will be doing this hearing by Zoom, using the Zoom

12 Gov platform and hopefully that will work better than the

13 Skype platform, which we had problems with last time.

14           But I will ask Mrs. Johnson to send out, I guess,

15 a test email so that counsel can ensure that they are able to

16 participate fully by video.  It will still -- the audio is

17 still CourtCall, but the video, we're going to try the Zoom

18 Gov site so there can be an opportunity to get your

19 witnesses, have them do a test run, as well, and make sure

20 everything is working.

21           I would like -- even though parties have told me

22 who the witnesses are, I would like filed on the docket

23 the -- I don't remember how exactly we did it in this case --

24 but the notice of intent to call witnesses, answering the

25 questions that were in the previous letter about your

1  witnesses and where they're going to be, whether anybody is

2  going to be in the room with them, what they have access to,

3  et cetera, and I think in the future, it would be nice in

4  these kinds of contested matters, where there are witnesses,

5  to actually have some kind of stipulated order, but I think

6  there's enough to do to figure out how this hearing is going

7  to work that that's where the focus should be, but I would

8  like that filed on the docket by both parties.

9       Okay.  Anything else that the parties want to

10  raise that I can address today?

11      MR. DUCAYET:  Your Honor, this is Jim Ducayet from

12  Sidley -- not from our perspective - this has been helpful.

13  Thank you.

14      THE COURT:  Thank you.

15      Okay.  Well, Counsel, thank you very much.  We'll

16  look for a status report tomorrow by noon and we're

17  adjourned.

18      COUNSEL:  Thank you, Your Honor.

19    (Proceedings concluded at 11:06 a.m.)

20

21

22

23

24

25

1                              CERTIFICATION

2              I certify that the foregoing is a correct

3     transcript from the electronic sound recording of the

4     proceedings in the above-entitled matter to the best of my

5     knowledge and ability.

6

7

8

9     /s/ William J. Garling                    April 30, 2020

10    William J. Garling, CET**D-543

11    Certified Court Transcriptionist

12    For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25