## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | (Jointly Administered) |
| Debtors. | |

## DECLARATION OF NANCY B. RAPOPORT

I, Nancy B. Rapoport, pursuant to 28 U.S.C. § 1746, under penalty of perjury, hereby declare as follows:

### I. BACKGROUND AND QUALIFICATIONS

1.      I am the Garman Turner Gordon Professor of Law at the William S. Boyd School of Law at the University of Nevada, Las Vegas (UNLV), and am an Affiliate Professor of Business Law and Ethics at UNLV's Lee Business School.  My work address is University of Nevada, Las Vegas, Mail Stop 1003, 4505 S. Maryland Parkway, Las Vegas, NV 89154-1003.

2.      I have been admitted and am in good standing in the following jurisdictions:  United States District Court, District of Nevada (2009); Nevada Supreme Court (2008); United States District Court, Northern District of Texas (2003); Texas Supreme Court (2001); United States Supreme Court (2000); Nebraska Supreme Court (1999; inactive status); Ohio Supreme Court (1993; inactive status); United States District Court for the District of Hawaii (1988); California Supreme Court (1987; inactive status); and United States Court of Appeals for the Ninth Circuit (1987).

3.      I submit this Declaration in support of the Response of Sidley Austin LLP in

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Support of the Debtors' Application for Entry of an Order Authorizing the Retention and

Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors In Possession, *Nunc*

*Pro Tunc* to the Petition Date.

4.    I have been employed at UNLV and the Boyd School of Law since 2007.  Prior to

my work there, I served as a Professor of Law at the University of Houston Law Center (2006-07),

as Dean and Professor of Law at the University of Houston Law Center (2000-06), as Dean and

Professor of Law at the University of Nebraska College of Law (1998-2000), as Associate

Professor[2] and Associate Dean for Student Affairs at The Ohio State University College of Law

(now the Moritz College of Law) (1996-98), as an Associate Professor of Law at Ohio State (1995-

98), and as an Assistant Professor of Law at Ohio State (1991-95).  Before I entered academia, I was

an associate attorney at Morrison & Foerster (1986-91) and, before that, I served as a law clerk to

the Hon. Joseph T. Sneed III, U.S. Court of Appeals for the Ninth Circuit (1985-86).  I received my

undergraduate degree from Rice University (B.A., *summa cum laude,* 1982) and my law degree from

Stanford Law School (J.D., 1985).  In 2012-2013, I served as the Interim Dean of the William S.

Boyd School of Law.  In 2014-2015, I served as the Senior Advisor to the President of UNLV.

From July 2015-May 2016, I served as the Acting Executive Vice President and Provost of UNLV,

and during July-August 2017, I served as the Acting Senior Vice President for Finance and Business

of UNLV.  From May 2016 through June 2018, I served as the Special Counsel to the President of

UNLV.  I am a Fellow of the American College of Bankruptcy (2005-present) and of the American

Bar Foundation (2002-present).  I am also a member of the American Law Institute (2001-present).

5.    As a professor, my research areas all involve the intersection of ethics with various

fields:  the behavior of bankruptcy lawyers, fees in chapter 11 cases, the behavior of lawyers

---

[2]  My promotion to Professor at The Ohio State University College of Law occurred as I was
transitioning to the University of Nebraska College of Law.

generally, the ways that lawyers and legal ethics are portrayed in popular culture, the changes in the

legal profession, the dynamics of law firms, the relationship of social science to the behavior of

lawyers and other professionals, possible changes to legal education, and the ethics of corporate

governance. I have served as one of two Reporters for the American Bankruptcy Institute's Task

Force on National Ethics Rules, which suggested changes to certain ethics rules relating to the

practice of bankruptcy lawyers and related professionals. I have also testified in several cases

involving ethics issues, as set forth more fully in my CV, attached hereto as <u>Attachment 1.</u>

      6.    My publications include a forthcoming textbook on professional responsibility

(BERNARD BURK, VERONICA FINKELSTEIN & NANCY B. RAPOPORT, ETHICAL LAWYERING: A

GUIDE FOR THE WELL-INTENTIONED (Wolters Kluwer, forthcoming 2020)); an earlier edition of a

bankruptcy treatise (BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME

UPDATES (contributing editor) (Bloomberg BNA 2014)), and several articles on bankruptcy ethics,

including some of the earliest work on conflicts of interest in bankruptcy cases:

    a.    Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,*
30 HOFSTRA L. REV. 977 (2002).

    b.    Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy
Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998).

    c.    Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy
Attorney,* 70 IND. L.J. 783 (1995).

    d.    Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential
Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994).

      7.    I base this opinion on the information and assumptions provided to me and on my

knowledge of the field of professional responsibility generally and bankruptcy ethics in particular.

## II.    ASSUMPTIONS AND QUESTIONS PRESENTED

8.    Sidley has asked me to make the following assumptions:

a.    Century is currently a former client of Sidley.  The circumstances under which they became so are contested, but those issues are factual and will be the subject of the arbitration that Century is seeking.

b.    Century did not enter into a typical engagement letter agreement with Sidley. Instead, Century has said that Sidley's representation of Century is governed by the Service Level Agreement ("SLA") that is attached as an exhibit to the declaration of Joshua Schwartz.

c.    The amount and existence of reinsurance is not at issue in the BSA bankruptcy. BSA does not have any claim against the reinsurers of the underlying policies that Century issued to BSA.

d.    The two reinsurance disputes that Mr. Sneed was engaged to work on involved historical paid claims, not existing claims.  Neither involved any issues about the validity of the underlying primary coverage provided by Century to BSA.  The terms of the reinsurance policies are not the same as the terms of the underlying insurance policies.

9.    Sidley has asked me to answer the following questions:

a.    Given my review of the materials I have received and the assumptions provided, is it reasonable for Sidley to have believed that the reinsurance work was not substantially related to its work for Boy Scouts of America ("BSA"), and that information received in connection with the reinsurance work would not present a "substantial risk" that the representation for Century would "materially advance" the position of BSA in the bankruptcy matter?

b.  Could any potential issues or concerns with respect to Sidley's prior representation

be addressed by means of the use of conflicts counsel, screens and other steps in the

bankruptcy? Does Century's description of the potential adversity have implications

with respect to the ability of large firms to represent debtors, and are there ways to

address those implications through some of these steps?

### III. SUMMARY OF OPINION

10.      It is my opinion that it was reasonable for Sidley to have believed that the

reinsurance work that it had performed for Century was different enough in scope that it could,

pursuant to Model Rule 1.9, perform bankruptcy work for BSA without presenting a substantial risk

that the information that it had received from Century would materially advance BSA to the

disadvantage of Century.

11.      It is my opinion that, to the extent that any such information referenced in paragraph

10 presented any risk to Century, there are sufficient safeguards that Sidley could use in BSA's

Chapter 11 case to prevent the use of such information.

12.      A list of the documents that I have reviewed is attached hereto as <u>Attachment 2.</u>

### IV. ANALYSIS

**Issue 1:**
**Given my review of the materials I have received and the assumptions provided, is it**
**reasonable for Sidley to have believed that the reinsurance work was not substantially**
**related to its work for Boy Scouts of America ("BSA"), and that information received in**
**connection with the reinsurance work would not present a "substantial risk" that the**
**representation for Century would "materially advance" the position of BSA in the**
**bankruptcy matter?**

13.      Rule 9010-1f. of the United States Bankruptcy Court for the District of Delaware

provides that "[s]ubject to such modifications as may be required or permitted by federal statute,

court rule or decision, all attorneys admitted or authorized to practice before this Court, including

attorneys admitted on motion or otherwise, shall also be governed by the Model Rules of

Professional Conduct of the American Bar Association, as may be amended from time to time."

Accordingly, I am applying Rule 1.9 of the Model Rules in my analysis.

14.    Model Rule 1.9 provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
> > (1) whose interests are materially adverse to that person; and
> > (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

15.    Rule 1.9's purpose is to protect a former client's confidential information from being used against that client after the lawyer-client relationship has been terminated.[3] By

---

3

> As the Third Circuit has explained, Rule 1.9 is a "prophylactic rule" meant to avoid "even the potential that a former client's confidences and secrets may be used against him[,]" in order to maintain "public confidence in the integrity of the bar[,]" and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." Therefore, disqualification is

protecting that information even after the representation has been terminated, clients are

encouraged to provide their counsel with all of the information necessary to represent them *during*

the course of the representation, without fear of negative repercussions later.[4]

---

> proper under the "substantial relationship" standard "when the
> similarity in the two representations is enough to raise a common-
> sense inference that what the lawyer learned from his former client
> will prove useful in his representation of another client whose
> interests are adverse to those of the former client."
>
> Nevertheless, disqualification is disfavored, and the Court
> approaches motions to disqualify counsel with "cautious scrutiny,"
> mindful of a litigant's right to the counsel of its choice. As such, a
> moving party has the burden to demonstrate that "continued
> representation would be impermissible." ... In evaluating whether
> disqualification is warranted, a court must "carefully sift all the facts
> and circumstances" before making a final determination in a
> particular case.

*Regalo International, LLC v. Munchkin, Inc.*, 211 F.Supp.3d 682, 687 (D. Del. 2016) (citations omitted).
[4] Comment 3 to Rule 1.9 provides in part:

> Matters are "substantially related" for purposes of this Rule if they involve
> the same transaction or legal dispute or if there otherwise is a substantial risk
> that confidential factual information as would normally have been obtained
> in the prior representation would materially advance the client's position in
> the subsequent matter.... Information that has been disclosed to the public
> or to other parties adverse to the former client ordinarily will not be
> disqualifying. Information acquired in a prior representation may have been
> rendered obsolete by the passage of time, a circumstance that may be
> relevant in determining whether two representations are substantially related.
> *In the case of an organizational client, general knowledge of the client's policies and
> practices ordinarily will not preclude a subsequent representation; on the other hand,
> knowledge of specific facts gained in a prior representation that are relevant to the matter in
> question ordinarily will preclude such a representation....* A conclusion about the
> possession of such information may be based on the nature of the services
> the lawyer provided the former client and information that would in ordinary
> practice be learned by a lawyer providing such services.

(Emphasis added).

16.    The crux of the issue, then, is whether Sidley, which formerly represented Century

(an affiliate of Chubb), is representing BSA in "the same or a substantially related matter" in which

BSA's "interests are materially adverse to the interest of Century."[5]

17.    Comment 2 to Rule 1.9 provides in part: "When a lawyer has been directly involved

in a specific transaction, subsequent representation of other clients with materially adverse interests

in that transaction clearly is prohibited.  On the other hand, a lawyer who recurrently handled a type

of problem for a former client *is not precluded from later representing another client in a factually distinct

problem of that type* even though the subsequent representation involves a position adverse to the prior

client."  (Emphasis added.)

18.    The test that I am applying, therefore, involves the following three parts:

a.    What did Sidley do for Century during the course of the representation?[6]

b.    What is Sidley doing for BSA in the Chapter 11 bankruptcy?

c.    Is there a substantial risk that Sidley learned information from Century that would

materially benefit BSA in its Chapter 11 bankruptcy?[7]

---

[5] It is my understanding that Century has not provided informed written consent to Sidley with respect to the BSA representation.

[6] It is important to define the scope of work as precisely as possible.  A law firm could seek to define the representation of a former client too narrowly (and thus put the former client's confidential information at risk), and, conversely, a former client could seek to define it so broadly that a law firm could never, under any circumstances, represent any new client against any former one.

[7] The three questions come from several cases discussing the concept of whether two matters are "substantially related."  As one such case explains,

In assessing whether two matters are "substantially related" for purposes of Rule 1.9 (and Rule 1.10), courts consider three questions:

(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? [and] (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any

19.     I have been provided with what I understand to be an unredacted version of the Service Level Agreement that is attached as an exhibit to the Joshua Schwartz declaration as Exhibit 1. In the unredacted version, the scope of the work is represented by the defined term "Non-Claims Services": "services performed by the Law Firm for a Client that are unrelated to the defense of an insurance claim or a related insurance coverage claim."[8]

20.     My understanding is that Sidley's only representations of Century involving any relationship to BSA were in connection with reinsurance collection disputes between Century and Century's reinsurers (Lloyd's and ████) with respect to claims that Century had paid out on underlying insurance policies that Century had issued to BSA—in other words, a contractual dispute between Century, as the insurer of certain claims against BSA, and its reinsurance counterparties.

21.     In a declaration provided to me by Sidley, Mr. William Sneed (the primary contact of Century at Sidley) has described his work as follows:

a.   Beginning on October 5, 2018, Sidley was retained by Century to perform consulting work relating to a dispute between Century and certain Lloyd's of London Syndicates.  Sneed Declaration at paragraph 3.

b.   At the time, Century brought Sidley on solely in a consulting capacity to review the record of a prior arbitration between Century and Lloyd's in which Century had been

---

such confidences be detrimental to the former client in the current litigation?[ ]

*Regalo International, LLC*, 211 F.Supp.3d at 688 (citations omitted). In particular, courts focus on the specifics of the current and former representation, rather than on a more generalized argument that a law firm is aware of a former client's "playbook." *See id.* at 698 ("[J]udges in this District have tended not to give great weight in this analysis to unfocused concerns that a party's former counsel knows that party's "playbook." Instead, in the main, they tend to require a party who is moving to disqualify counsel in a patent matter to demonstrate a fairly close legal and factual nexus between the present and prior representations.") (citing cmt. 3 to Rule 1.9).

[8] ACE Legal Department Service Level Agreement at 4. "Client" is defined in the same document as "any ACE Group Company that retains the Law Firm to provide Non-Client Services with respect to any matter." *Id.*

represented by a different law firm, ███████████ with that arbitration hearing taking place from April 30 to May 3, 2018 (the "First Arbitration"). Sneed Declaration at paragraph 4.

c.  The First Arbitration had involved a claim by Century to Lloyd's for reimbursement for payments made in settling certain abuse cases in which Century had defended and indemnified BSA. Lloyd's had reinsured Century for losses arising from Century's entire book of business in certain years—i.e., "treaty reinsurance"—which included coverage for eight annual policies of insurance that Century issued to BSA from 1963 to 1970. Sneed Declaration at paragraph 4.

d.  Beginning in or about February 2016, Century notified and billed Lloyd's for a portion of the payments that it had made in settling those cases under the reinsurance treaties. Lloyd's refused to pay Century, and in the First Arbitration, the arbitrators resolved that dispute adversely to Century. Sneed Declaration at paragraph 4.

e.  Following the arbitration ruling, Century submitted new reinsurance bills for the same abuse claims in August 2018 that Lloyd's likewise refused to pay. Sneed Declaration at paragraph 4.

f.  When Century retained Sidley, the only remaining substantive issue of significance in the Lloyd's Matter was whether Century could permissibly re-issue reinsurance billings to Lloyd's that accumulated abuse events as a single "occurrence" under the reinsurance treaties—an issue that the panel in the First Arbitration had declined to decide. Sneed Declaration at paragraph 5.

g.  In October and November of 2018, Sidley was asked to analyze this accumulation issue, along with certain questions regarding a motion to confirm the First

Arbitration award.  Sneed Declaration at paragraph 5.

h.  On November 30, 2018, Joshua Schwartz, the Managing Counsel and Director of

Reinsurance Litigation for Century[9] asked Mr. Sneed if Sidley would take on the role

of lead counsel with respect to a new arbitration demand against Lloyd's that had

been issued by Century's prior counsel, ████████████ on November 9, 2018.

Sneed Declaration at paragraph 6.

i.  This new arbitration demand sought recovery on the August 2018 billings that

Lloyd's had refused to pay.  The only materials that Sidley received in connection

with this work were as follows:

- Filings related to Lloyd's motion to confirm the First Arbitration award;

- The record of the First Arbitration; and

- Placement records respecting negotiations between Century and its reinsurers
  regarding the reinsurance treaties, dating from the 1950s and 1960s.

Sneed Declaration at paragraphs 6 and 7.

j.  In July 2019, Century also asked Mr. Sneed to represent it in a reinsurance

collections dispute with ████████████████████████████████

████████████████████████ and its affiliate (the "█████ Matter").  The █████

Matter was officially opened at Sidley on August 5, 2019.  Sneed Declaration at

paragraph 8.

k.  Like the Lloyd's Matter, the ██████ Matter involved efforts to collect reinsurance

arising from payments made under Century policies issued to BSA—this time with

different reinsurers.  Sneed Declaration at paragraph 8.

---

[9] Sneed Declaration at paragraph 3.

l.  In connection with the ███████ Matter, the only materials that Sidley received were

emails between Century and ███████ relating to claims settlements that Century had

reached in 2018 and 2019, along with a deposition transcript ████████████████

███████████████████████████ for purposes of addressing the reinsurer's

question on ████████████████. Sneed Declaration at paragraph 8.

m.  Sidley also represented and counseled Chubb and its affiliates in various other

matters with no connection to BSA:

- On or around May 23, 2019, Sidley opened a matter in which it represented Chubb
  in a reinsurance arbitration against ████████████████████.

- Starting around May 17, 2019, Sidley sporadically counseled Chubb respecting its
  affiliate ████████████████████ in connection with questions raised
  by a reinsurer with respect to certain treaties.

- Starting around May 2017, Sidley reopened a matter in which it sporadically
  counselled Century in connection with issues respecting the ████████████
  ████████████████. No time was billed to this matter after early 2018.

Sneed Declaration at paragraph 9.

n.  For the Lloyd's ████████████, Century had originally allocated the claim

payments to the underlying BSA policies pursuant to what was referred to as the

First Encounter Agreement ("FEA"), which is an agreement between BSA and

Century entered into in 1996.  Sneed Declaration at paragraph 13.

o.  ██████████████████████████████████████████

██████████████████████████████████████

██████  Although Sidley was provided with the record of the First Arbitration, the

only documents respecting the FEA in that record consisted almost entirely of letters

exchanged between BSA and Century (or Century's predecessor) in the 1990s.  None

of these documents reveal privileged or confidential information.  Sneed Declaration

at paragraph 16.

p.  With respect to the ███ Matter, Century's position ████████████████

███. Sneed Declaration at paragraph 17.

q.  At no point was the Reinsurance Team asked to advise Century with respect to

Century's rights under the FEA. Sneed Declaration at paragraph 14.

r.  Consistent with the scope of these representations and issues being litigated and

arbitrated in the reinsurance context, Sidley did not receive any confidential

information with respect to any coverage dispute involving the primary policies

issued by Century to BSA during the course of either the Lloyd's Matter or the

███ Matter. Sneed Declaration at paragraph 18.

s.  Sidley did not speak with, interview, or have any exchange with any Century

representative involved with the abuse claims or coverage litigation or relating to the

BSA restructuring. The Reinsurance Team's interactions with Chubb and Century

were with representatives responsible for collecting reinsurance. Sneed Declaration

at paragraph 18.

t.  Sidley was not asked to and did not provide any advice to Chubb or Century relating

to insurance coverage issued to BSA or insurance disputes with BSA. Sneed

Declaration at paragraph 19.

u.  At no point did any Sidley attorney on the Reinsurance Team perform legal services

on behalf of BSA in connection with its restructuring. Sneed Declaration at

paragraph 20.

v.  The only interaction of any sort that Mr. Sneed had with any insurance coverage

dispute came in connection with discovery requests issued in unrelated coverage

litigation. Because those requests sought documents pertaining to the Lloyd's

Matter, Mr. Sneed contacted Lloyd's counsel via email to advise Lloyd's of the

requests, pursuant to a confidentiality agreement governing the First Arbitration. He did not obtain, review, or produce any materials in that litigation. Sneed Declaration at paragraph 21.

w.  A reinsurance contract dispute arises when an insurer issues a bill to a reinsurer, and the reinsurer fails or refuses to pay. The insurer then tries to determine the reason why the reinsurer has failed or refused to pay and address that reason. For the BSA reinsurance matters for which Sidley was retained, Century billed the reinsurers for abuse claims against BSA that Century had defended and settled. Sneed Declaration at paragraph 11.

x.  The reinsurers had refused to pay the bills for two reasons: ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████  Sneed Declaration at paragraph 11.

y.  ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████  Sneed Declaration at paragraph 11.

z.  This is a typical scenario in reinsurance contract disputes. The law of reinsurance generally does not permit reinsurers to avoid liability under a reinsurance contract by second-guessing the insurer's claim decisions (i.e., whether to pay a claim and how much to pay). Consequently, reinsurers instead try to avoid liability by arguing that the claim payments should have been allocated to policies they do not reinsure or

that the claim payments do not comply with a particular definition in the reinsurance contract (i.e., whether payments made for multiple individual claims qualify as a single "occurrence" under the reinsurance contract).  Sneed Declaration at paragraph 12.

22.    Based on the information set forth above in Mr. Sneed's Declaration, it is my opinion that the answer to my first question—what did Sidley do for Century during the course of the representation?—is that Sidley worked with Century to resolve a contractual dispute between Century and Lloyd's and another contractual dispute between Century and ███.  The central question in both disputes was whether Century, which had paid out claims, was entitled to certain payments from the reinsurers pursuant to the reinsurance agreements.  From Mr. Sneed's description of his work, as set forth in his Declaration, it appears that the disputes were not about whether BSA was covered by its insurance in the first place but rather whether, once Century had paid those claims, the reinsurers were obligated to pay certain funds to Century.  Based on my understanding of what was at issue, and given Mr. Sneed's declaration, I conclude that Sidley did not learn any relevant confidential information involving insurance coverage disputes involving BSA.  Instead, the reinsurance disputes appear to have been regarding to which years various paid claims belonged.[10]

23.    My understanding is that Sidley is serving as the main counsel in the BSA Chapter 11 case, along with Morris Nichols Arsht & Tunnell LLP ("Morris Nichols") and, as such, is charged with all that main counsel must do.  The firm of Haynes & Boone LLP ("Haynes & Boone") has been approved by the Bankruptcy Court to continue to represent BSA in connection with any aspects of the pending coverage litigation between BSA and its insurers, as well as to advise BSA on any matters requiring analysis of the insurance policies issued to BSA, including the

---

[10] *See* Sneed Declaration at paragraphs 5, 13-17 (discussing the allocations of claims).

extent of available insurance assets and the treatment of insurance under any chapter 11 Plan. (Dk. 210.) Sidley and Morris Nichols would be engaged in such matters as determining which executory contracts or unexpired leases BSA should assume or reject, drafting and negotiating a disclosure statement that could be sent to holders of impaired claims, and eventually working to confirm a chapter 11 plan of reorganization. Because Haynes & Boone has been tasked with addressing the insurance coverage matters in BSA's Chapter 11 case, any potential issues involving Century's coverage of BSA would not be entrusted to Sidley to resolve. Thus, it is my opinion that the answer to my second question—what is Sidley doing for BSA in the Chapter 11 bankruptcy?—is that nothing in Sidley's current representation of BSA involves the reinsurance dispute resolution work that Sidley had performed for Century.

24.    Therefore, in terms of my third question—is there a substantial risk that Sidley learned information from Century that would materially benefit BSA in its Chapter 11 bankruptcy?—it is my opinion that nothing that Sidley is doing for BSA relates to what it learned in its work for Century and, thus, that Sidley was reasonable in its belief that the reinsurance work was not substantially related to its work for BSA and that information received in connection with the reinsurance work would not present a substantial risk that the representation for Century would materially advance the position of BSA in the bankruptcy matter.

*Issue 2:*

**Could any potential issues or concerns with respect to Sidley's prior representation be addressed by means of the use of conflicts counsel, screens, and other steps in the bankruptcy? Does Century's description of the potential adversity have implications with respect to the ability of large firms to represent debtors, and are there ways to address those implications through some of these steps?**

25.     I have long contended that the normal state ethics rules do not work well in bankruptcy cases. *See, e.g.,* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994) (raising for the first time, as far as I know, the concept of dormant, temporary, actual conflicts that arise in very few areas of law— primarily in bankruptcy law and family law); Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND. L.J. 783 (1995); Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998); Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002). State ethics rules presume a two-sided dispute in which the plaintiff and the defendant are never allies. In chapter 11 cases, though, parties can be adverse to each other for one issue but allies in another.[11]

26.     The employment of professional persons requires debtor's counsel to be disinterested, *see* 11 U.S.C. § 327(a).[12] In part because of the twin requirements of state ethics rules regarding conflicts of interest and the overlay of disinterestedness in the Bankruptcy Code, courts approving the employment of debtor's counsel in large chapter 11 cases have faced a dilemma. Virtually all of the large law firms that have significant experience in big bankruptcy cases represent

---

[11] *See, e.g.,* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913, 924 (1994).

[12] *See also* the definition of "disinterested person in 11 U.S.C. § 101(14)), which includes, among other things a circular definition ("does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."); Nancy B. Rapoport, *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521, 523 & n. 10 (2005) (referring to the redundancy of sections 327(a) and 101(14).

clients in other matters who might have an interest in or some relationship to a given case. A strict

reading of the Bankruptcy Code and state ethics rules would preclude all of these large law firms

from ever representing a debtor (or, for that matter, a creditors' committee). Smaller firms without

such potential conflicts would, however, likely not have the staffing to run a large case.

27.    The shifting, impermanent alliances in chapter 11 cases and the inapposite

application of state ethics rules have led to the use of conflicts counsel, especially in large cases.[13]

---

13

> Before a court can approve the employment of counsel for the trustee or the DIP in bankruptcy cases, counsel must satisfy Section 327(a)'s twin requirements of (1) disinterestedness and (2) not holding or representing an interest adverse to the bankruptcy estate. Section 327(c) states that counsel will not be disqualified solely because of representation of a creditor, but the court will disapprove employment if a creditor or the United States trustee objects and the court determines that there is a disabling conflict of interest. Counsel for a committee may not represent any other entity having an adverse interest in connection with the case, but representation of creditors of the committee's constituent class of creditors does not *per se* constitute representation of an adverse interest.

> For certain DIPs, the company may be so large and the issues involved in the bankruptcy case may be so complex that only a handful of law firms will have the staffing and expertise to represent the DIP. But with the case's heft may also come firm clients with interests potentially adverse to the estate. The preferred counsel—because of its enormous client base—may have some types of potentially disqualifying conflicts of interest. Smaller DIPs may also wish to employ counsel whose relationship with another party is potentially disabling—a choice to be honored if a means to address the conflict is available. In an attempt to respect the DIP's desire to employ its counsel of choice, courts can sometimes find a way to approve the proposed counsel without running afoul of either the Bankruptcy Code's restrictions or state ethics rules.

> Courts must balance the twin goals of giving the debtor an opportunity to reorganize with counsel of its choice and honoring applicable ethics rules. Sometimes, a proposed main counsel for a trustee, DIP, or committee may want to seek authorization to provide general bankruptcy representation but may have imputation issues that arise due to the firm's representation of a creditor or other party in interest on unrelated matters. To address the imputation problem,

28.    BSA is using Haynes & Boone as its special insurance counsel (see paragraph 23, *supra*). If Sidley were to cede all Century insurance coverage-related matters to Haynes & Boone (or another firm approved by the Court), it is my opinion that, even if there were some information that Sidley had learned in its representation of Century that had any bearing at all in the Chapter 11 bankruptcy, Sidley would not be in the position of using it to Century's material disadvantage.[14]

29.    Furthermore, it is my opinion that screening Mr. Sneed and anyone who worked with him on the Century matters from all of the work being performed by Sidley in the BSA bankruptcy case would further insulate Century from any risk of the use of information from the former matters.

30.    Therefore, it is my opinion that structures such as the use of conflicts counsel and screening would address any potential issues or concerns with respect to Sidley's prior representation.

31.    Without the use of such structures discussed above, it is my opinion that bankruptcy courts would find it extremely difficult to approve the employment of professional persons that could staff large chapter 11 cases.

32.    I respectfully reserve the right to amend, modify or supplement this Declaration in response to, or as a result of, the filing of any submission in connection with this case or any

---

bankruptcy courts in numerous cases have approved the appointment
of a second law firm ("conflicts counsel") to represent the client in
matters that main counsel cannot undertake.

LOIS R. LUPICA & NANCY B. RAPOPORT, CO-REPORTERS, FINAL REPORT OF THE ABI NATIONAL ETHICS TASK FORCE 37-38 (2013), available at https://abi-org-corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf.
(footnotes omitted).
[14] For a case discussing the use of conflicts counsel in a large chapter 11 bankruptcy context, see, e.g., *In re* Enron Corp. (unreported decision), 2002 WL 32034346, *10-11 (Bankr. S.D.N.Y. 2002).

discovery being conducted in connection therewith.

Dated: 1/27/2020

Las Vegas, Nevada

Respectfully submitted,

_____

Nancy B. Rapoport

# Nancy B. Rapoport, J.D.

William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, NV 89154-1003
nancy.rapoport@unlv.edu
Cell:  713-202-1881

SSRN author page:  http://ssrn.com/author=260022
Google Scholar page:  http://scholar.google.com/citations?user=s7ElcsEAAAAJ&hl=en
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  https://nancyrapoports.blog/

## EDUCATION

**Stanford Law School, J.D. (1985)**

*Selected activities and honors:*

- Note Editor, STANFORD LAW REVIEW (1984-85).
- Thesis:  *Computer Program for Secured Transactions* (1985).
- Technical assistant in various law school and all-university plays (1983-85)
- First Place, Stanford Women's Intramural Powerlifting Competition (1985).

**Rice University, B.A., *summa cum laude,* Legal Studies and Honors Psychology (1982)**

*Selected activities, honors, and scholarships:*

- Senior Thesis:  *The Effects of Time of Day on Cognitive Performance,* Psychology Department (1982).
- Phi Beta Kappa (1981).
- Houston Psychological Association Award for Excellence in Psychology (1982).
- Jones College Scholar (1981-82) and Academic Coordinator, Jones College (1980-82).
- President, Rice Hillel (1980-82).
- Student Advisor, Lovett College (1979-80).
- Member, Student Admissions Committee (1979-82).
- Founder, Rapoport Prize in Legal Studies (1982).
- Scholarships:  Max Roy Scholarship (1979-80, 1981-82); Jones College Scholarship (1981-82); Board of Governors Scholarship (1980-81).

Nancy B. Rapoport
Page 2

## EMPLOYMENT

**University of Nevada, Las Vegas**

- **Special Counsel to the President (2016-18).**
- **Acting Senior Vice President for Finance and Business (summer of 2017).**
- **Acting Executive Vice President & Provost (2015-16).**
- **Senior Advisor to the UNLV President (2014-15) (member of UNLV's Cabinet).**
- **Provost's Leadership Development Academy Coordinator (2013-14); Co-Coordinator (2014-15).**

- **William S. Boyd School of Law, University of Nevada, Las Vegas**
  - **Garman Turner Gordon Professor of Law (2007-present) (formerly the Gordon Silver Professor of Law).**
  - **Interim Dean (2012-13).**

  *Courses:* Basic Bankruptcy Law; Contracts; Professional Responsibility; Seminar on Corporate Scandals; Colloquium on Lawyers in Pop Culture; Business Law & Ethics; Bankruptcy Ethics.

- **Affiliate Professor of Business Law and Ethics, Lee Business School (renewable; 2014-present)**
  - **Co-Chair, Task Force on Scholarship, Lee Business School Strategic Planning Team (2014).**

*Responsibilities and Accomplishments as Special Counsel to the President:*

- The Executive Director of the Office of Compliance, the Ombuds Panel, the Special Projects Director, and the Interim Executive Director of the Office of Community Engagement reported to me.
- Coordinated, with Kyle Kaalberg (Special Projects Director), the continued implementation of UNLV's strategic plan (Top Tier). In late 2018, UNLV was added to the list of Carnegie R1 institutions.
- Served as a member of the President's Cabinet.
- Coordinated and monitored compliance activities across UNLV.
- Interacted frequently with members of the Board of Regents and the Nevada System of Higher Education.

*Responsibilities and Accomplishments as Acting Executive Vice President and Provost:*

- The deans of the School of Allied Health Sciences, the Lee Business School, the School of Community Health Sciences (now the School of Public Health), the School of Dental Medicine, the College of Education, the Howard R. Hughes College of Engineering, the College of Fine Arts, the Graduate College, the Honors College, the William F. Harrah College of Hotel Administration, the William S. Boyd School of Law, the College of Liberal

Arts, the School of Medicine (co-reporting to the President), the School of Nursing, the College of Sciences, and the Greenspun College of Urban Affairs reported to me, as did the Senior Vice Provost, the Vice Provost for Information Technology, the Assistant Vice President of Academic Resources, the Associate Vice Provost for the Office of Decision Support, and the Special Assistant to the Executive Vice President and Provost.

- Chaired the board of directors of UNLV Singapore Ltd.
- Worked with President Jessup, two co-chairs of the Top Tier Plan, and the chairs and co-chairs of five committees, to implement year one of the Top Tier strategic plan.
- Repaired relationships with the Faculty Senate.
- Hired three new deans (Liberal Arts, Fine Arts, and Allied Health) and one acting dean (Sciences).
- Reinstituted the three-year dean review process and provided more autonomy to the deans of schools and colleges.

*Responsibilities and Accomplishments as Acting Senior Vice President for Finance & Business:*

- The departments of Planning and Construction, Budgets, Campus Audit, Human Resources, Facilities Management, Administration (Delivery Service, Telecommunication Services, Parking Services, and Real Estate), Risk Management and Safety, Purchasing, and the Controller reported to me.
- Served as a member of the negotiating team for the Las Vegas Stadium (Las Vegas Raiders).
- Repaired a challenging set of internal management issues.

*Responsibilities and Accomplishments as Senior Advisor to the UNLV President:*

- Developed the strategic plan (Top Tier) by working in concert with former Presidents Donald Snyder and Len Jessup, Jim Thomson (the Special Advisor to the President for Regional Development and also the former CEO of the RAND Corp.), our consultants (Academic Leadership Associates), Kyle Kaalberg (then the Special Assistant to the President's Chief of Staff), over 200 stakeholders inside and outside UNLV.
- Continued to serve as the point person for the execution of UNLV's strategic plan during all other central administration roles.

*Responsibilities and Accomplishments as Interim Dean of Boyd School of Law:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Associate Dean for Administration and External Affairs, the Associate Dean for Faculty Development and Research, the Director of the Wiener-Rogers Law Library, the Director of Information Technology and the Budget Director all reported to me.
- Managed a budget of roughly $20 million.
- Facilitated the conversion process for legal writing professors to move from long-term contracts to tenure-track positions and facilitated the hiring of two new tenure-track professors.
- Significant fundraising success; systematized certain internal functions; and facilitated a review of our curriculum.

Nancy B. Rapoport
Page 4

- *Honors:*  Named "Dean of the Year" by Boyd law students in 2013.

**University of Houston Law Center**
**Professor of Law (2006-07).**
**Dean (2000-06).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Director of the O'Quinn Law Library, the Associate Dean for Information Technology, the Associate Dean for Finance and Administration and Chief Operating Officer of the Law Foundation, the Associate Dean for External Affairs and Executive Director of the Law Foundation, and the Director of CLE all reported to me.
- Presided over a record increase in the amount and size of gifts to the Law Center, even during a downturn in the economy; raised seven new Law Center professorships, in partnership with a special campaign of the University of Houston, in under two months.
- Facilitated the establishment of several new centers, programs, and institutes, including the Criminal Justice Institute, the Institute for Energy, Law & Enterprise (now the Program in Energy, Environment & Natural Resources), and the Center for Consumer Law.
- Reinvigorated the Blakely Advocacy Institute (BAI) and acquired the A.A. White Center for Dispute Resolution as part of the BAI.
- Encouraged the first major revamping of the Law Center's curriculum in twenty years.
- Hired fourteen new faculty members (three of which hold endowed chairs at the Law Center).
- Facilitated the Law Center's recovery from the devastation caused by Tropical Storm Allison on June 9, 2001, which poured over 12 feet of water into the Law Center's sub-basement and destroyed much of its library collection (over 175,000 volumes and 1,000,000 microfiche lost) and all of the Law Center's facilities.  As part of the lessons learned during our recovery, hosted Loyola University New Orleans College of Law after Hurricane Katrina, until it could recover and return to New Orleans.

**University of Nebraska College of Law**
**Dean and Professor of Law (1998-00).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean, the Assistant Dean for Administration and Student Services, the Assistant Dean for Career Services and Alumni Relations, the Director of the Law Library, the Director of Development, the Office Manager, and the Acting Head of the Nebraska Institute for Technology in the Practice of Law all reported to me.
- Instituted the creation of a new Access database to enable all Law College administrative units to organize and share information; improved our systems for the scheduling of Law College events, the timely review of employees, and the cultivation and stewardship of donors; initiated the design of the new "image" of the Law College; and revamped the furnishings of the student lounge (at zero cost to the Law College).

Nancy B. Rapoport
Page 5

- Raised significant funds for such needs as scholarships and professorships.
- Encouraged the establishment of new student organizations (including an organization for law students who preferred non-traditional career paths and a GLBT student organization).
- Encouraged the development of a link between an undergraduate "learning community" and the Law College.

**Moritz College of Law, The Ohio State University**
**Professor (1998).**
**Associate Dean for Student Affairs (1996-98).**
**Associate Professor (with tenure) (1995-98).**
**Assistant Professor (1991-95).**

*Responsibilities and Accomplishments as Associate Dean for Student Affairs:*

- Assistant Dean of Admissions and Financial Aid, the Financial Aid Counselor and Staff Assistant, and the Placement Director reported to me.
- Counseled potential applicants regarding admission to College of Law and counseled existing students on academic and non-academic issues.
- With our Development Director, facilitated the establishment and maintenance of scholarships and other relationships with donors.

**Morrison & Foerster LLP**
**Associate, Bankruptcy and Workouts Group, Business Department (1986-91).**

- Bankruptcy cases included *In re Toy Liquidating Co. (Worlds of Wonder), Plexus, Greyhound, Nucorp,* and *California Land & Cattle Co.*
- Significant experience in bankruptcies involving industries such as toy manufacturers, computers, livestock, and television stations.

**The Hon. Joseph T. Sneed, United States Court of Appeals for the Ninth Circuit**
**Judicial Clerk (1985-86).**

**PUBLICATIONS, GRANTS, SPECIAL TRAINING, AND PRESENTATIONS**

**Works in progress**

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Data Analytics and Malpractice: How Big Data Can Help You Become a "Precog"* (forthcoming 2020).
- Nancy B. Rapoport, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases,* ____ FORDHAM L. REV. ____ (forthcoming 2020) (solicited manuscript) (presented at the Stein Center for Law and Ethics Colloquium on Corporate Lawyers (October 2019)).
- Nancy B. Rapoport, *Training Law Students To Maintain Civility in Their Law Practices as a Way To Improve Public Discourse,* North Carolina Law Review 2019 Symposium, 98 N.C. L. REV. ____ (forthcoming 2020) (solicited manuscript).

Nancy B. Rapoport
Page 6

- BERNARD BURK, VERONICA FINKELSTEIN & NANCY B. RAPOPORT, ETHICAL LAWYERING: A GUIDE FOR THE WELL-INTENTIONED (Wolters Kluwer, forthcoming 2020).

**Books**

- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS (3d ed.) (West Academic 2018).
- BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME UPDATES (contributing editor) (Bloomberg BNA 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW FIRM JOB SURVIVAL MANUAL: FROM FIRST INTERVIEW TO PARTNERSHIP (Wolters Kluwer 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW SCHOOL SURVIVAL MANUAL: FROM LSAT TO BAR EXAM (Aspen Publishers / Wolters Kluwer 2010).
- NANCY B. RAPOPORT, JEFFREY D. VAN NIEL & BALA G. DHARAN, ENRON AND OTHER CORPORATE FIASCOS: THE CORPORATE SCANDAL READER (Foundation Press 2d ed. 2009).
- STEVEN L. EMANUEL, STRATEGIES & TACTICS FOR THE MBE (Aspen Publishers / Wolters Kluwer 2009) (one of several revision authors).
- NANCY B. RAPOPORT & BALA G. DHARAN, ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS (Foundation Press 2004).
- DAVID B. GOODWIN & NANCY B. RAPOPORT, AN ORAL HISTORY OF THE HONORABLE JOSEPH T. SNEED, Ninth Circuit Historical Society (1994) (solicited oral history).

**Report**

- LOIS R. LUPICA & NANCY B. RAPOPORT, CO-REPORTERS, FINAL REPORT OF THE ABI NATIONAL ETHICS TASK FORCE (2013), available at https://abi-org-corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf.

**Book chapters**

- Nancy B. Rapoport, *Compromising One's Principles: The Lesson of Mahlon Perkins and the Berkey-Kodak Case,* in NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS 545 (3d ed.) (West Academic 2018).
- Nancy B. Rapoport, *Social Media Ethics Missteps for Lawyers (and Others),* PROCEEDINGS OF THE SIXTIETH ANNUAL ROCKY MOUNTAIN MINERAL LAW INSTITUTE 3-1 (July 2014), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2557095.
- Nancy B. Rapoport, *Analysis and the Arts,* in ZENON BANKOWSKI, MAKSYMILIAN DEL MAR & PAUL MAHARG, THE ARTS AND THE LEGAL ACADEMY: BEYOND TEXT IN LEGAL EDUCATION 101 (Ashgate Press 2012) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2464202.
- COLLIER COMPENSATION, EMPLOYMENT AND APPOINTMENT OF TRUSTEES AND PROFESSIONALS IN BANKRUPTCY CASES (Lexis-Nexis 2009) (one of several revision authors).

Nancy B. Rapoport
Page 7

- Nancy B. Rapoport, *Swimming with Shark,* in LAWYERS IN YOUR LIVING ROOM! LAW ON TELEVISION 163 (Michael Asimow, ed., 2009) (solicited manuscript), chapter available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157053.
- Nancy B. Rapoport, *Reflections of a Former Dean, in* LAW SCHOOL LEADERSHIP STRATEGIES: TOP DEANS ON BENCHMARKING SUCCESS, INCORPORATING FEEDBACK FROM FACULTY AND STUDENTS, AND BUILDING THE ENDOWMENT 199 (Aspatore Books 2006) (solicited), abstract available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=979321.
- Nancy B. Rapoport, *Bankruptcy Ethics Issues for Solos and Small Firms, in* ATTORNEY LIABILITY IN BANKRUPTCY (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).
- Nancy B. Rapoport, *Lord of the Flies: The Development of Rules Within an Adolescent Culture, in* SCREENING JUSTICE—THE CINEMA OF LAW: FIFTY SIGNIFICANT FILMS OF LAW, ORDER AND SOCIAL JUSTICE 253 (Rennard Strickland, Teree Foster & Taunya Banks, eds. 2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=949168.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *Dr. Jekyll & Mr. Skilling: How Enron's Public Image Morphed from the Most Innovative Company in the* Fortune 500 *to the Most Notorious Company Ever, in* ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 77 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=505662.

**Articles, book reviews, and essays**

- Nancy B. Rapoport, *Client-Focused Management of Expectations for Legal Fees in Large Chapter 11 Cases,* 28 AM. BANKR. INST. L. REV. 39 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3541347.
- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* XIII J. BUS., ENTREPRENEURSHIP & L. 71 (2019) (presented at Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (May 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3525660.
- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Legal Analytics, Social Science, and Legal Fees: Reimagining "Legal Spend" Decisions in an Evolving Industry,* Georgia State Symposium on Legal Analytics, 35 GA. ST. U. L. REV. 1269 (2019), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3418465.
- Dwayne J. Hermes, Erica R. LaVarnway & Nancy B. Rapoport, *A Solutions-Oriented Approach: Changing How Insurance Litigation Is Handled by Defense Law Firms,* 2017 J. PROF'L L. 129 (peer-reviewed annual journal of the Center for Professional Responsibility of the American Bar Association), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3104055.
- Nancy B. Rapoport, *How Teams Can Help You (or Hurt You) When It Comes to Ethics,* December 2017 ABI J. 24, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3085229.
- Nancy B. Rapoport & Charlie Douglas, *High Performance Organizational Teams,* LISI Estate Planning Newsletter #2563 (July 3, 2017), available at http://www.leimbergservices.com and at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2998424.

Nancy B. Rapoport
Page 8

- Nancy B. Rapoport, *In Praise of Margaret Howard,* 74 WASH. & LEE L. REV. 641 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2981404.
- Nancy B. Rapoport, *Ethics: Why We Must Play Well with Others (and Why We Don't),* Rocky Mountain Mineral Law Foundation, MANUAL OF THE ADVANCED PUBLIC LANDS SPECIAL INSTITUTE 587 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2917346.
- Nancy B. Rapoport, *On Shared Governance, Missed Opportunities, and Student Protests*, 17 NEV. L.J. 1 (2016), available at http://ssrn.com/abstract=2885539.
- Randy D. Gordon & Nancy B. Rapoport, *Virtuous Billing,* 15 NEV. L.J. 698 (2015), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2670628.
- Nancy B. Rapoport, *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms,* 4 ST. MARY'S J. L. ETHICS & MALP. 42 (2014) (solicited manuscript for symposium on Legal Malpractice and Ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2460078.
- Nancy B. Rapoport, *The Client Who Did Too Much,* 47 AKRON L. REV. 121 (2014) (solicited as part of the Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412496.
- Nancy B. Rapoport, *Plus Ça Change, Plus C'est La Même Chose,* 17 GREEN BAG 55 (2013) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404069.
- Lois R. Lupica & Nancy B. Rapoport, *Best Practices for Working with Fee Examiners,* 32 AM. BANKR. INST. J. 20 (June 2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2279642.
- Nancy B. Rapoport, *Rethinking U.S. Legal Education: No More "Same Old, Same Old,"* 45 CONN. L. REV. 1409 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2275315.
- Nancy B. Rapoport, *Managing U.S. News & World Report—The Enron Way,* 42 GONZAGA L. REV. 423 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2255194.
- Nancy B. Rapoport, Book Review, Brian Z. Tamanaha, *Failing Law Schools* (2012), 47 L. & SOC. REV. 229 (2013) (solicited review), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2233617.
- Nancy B. Rapoport, *Black Swans, Ostriches, and Ponzi Schemes,* 42 GOLDEN GATE L. REV. 627 (2012) (solicited manuscript for symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2131393.
- Nancy B. Rapoport, *The Case for Value Billing in Chapter 11,* 7 J. BUS. L. & TECH. LAW 117 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2039506.
- Nancy B. Rapoport, *Changing the Modal Law School: Rethinking U.S. Legal Education in (Most) Schools,* 116 PENN ST. L. REV. 1119 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038409 (republished at 122 DICKINSON L. REV. 189 (2017)).
- Jennifer Gross & Nancy B. Rapoport, *Is the Attorney-Client Privilege Under Attack?,* GP | SOLO MAGAZINE 47 (October-November 2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1704026.

- Nancy B. Rapoport, *Rethinking Fees in Chapter 11 Bankruptcy Cases,* 5 J. Bus. & Tech. Law 263 (2010) (solicited manuscript for University of Maryland School of Law's symposium on *Examining Government Reform in the Financial Crisis*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1625102.

- Nancy B. Rapoport, *Through Gritted Teeth and Clenched Jaw:  Court-Initiated Sanctions Opinions in Bankruptcy Courts,* 41 St. Mary's L.J. 701 (2010) (solicited manuscript for St. Mary's 9th Annual Symposium on *Legal Malpractice and Professional Responsibility),* available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1628275.

- C.R. Bowles & Nancy B. Rapoport, *Debtor Counsel's Fiduciary Duty: Is There a Duty to Rat in Chapter 11?,* 29 Am. Bankr. Inst. Journal 16 (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544930.

- Nancy B. Rapoport, *Academic Freedom and Academic Responsibility* (reviewing Matthew W. Finkin & Robert C. Post, For the Common Good: Principles of American Academic Freedom (Yale University Press 2009)), in 13 Green Bag 2d 189 (Winter 2010) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544932.

- Eric Van Horn & Nancy B. Rapoport, *Restructuring the Misperception of Lawyers: Another Task for Bankruptcy Professionals,* 28 Am. Bankr. Inst. Journal 44 (2009), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1472211.

- Nancy B. Rapoport, *Where Have All the (Legal) Stories Gone?,* M/E Insights 7 (Fall 2009) (publication of the Association of Media and Entertainment Counsel), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1545443.

- Nancy B. Rapoport, *The real reason why businesses make bad decisions* (reviewing Jonathan R. Macey, Corporate Governance: Promises Kept, Promises Broken (Princeton University Press 2008)), in 18 Bus. Law Today 52 (July/Aug. 2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1425118.

- Nancy B. Rapoport, *Lessons From Enron—And Why We Don't Learn From Them,* May/June 2009 Commercial Lending Review 23, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1413937.

- Colin Marks & Nancy B. Rapoport, *Corporate Ethical Responsibility and the Lawyer's Role in a Contemporary Democracy,* 77 Fordham L. Rev. 1269 (2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1376475.

- Nancy B. Rapoport & Roland Bernier III, *(Almost) Everything We Learned About Pleasing Bankruptcy Judges, We Learned in Kindergarten,* 27 Am. Bankr. Inst. J. 16 (July/August 2008), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157103.

- Nancy B. Rapoport, *The Curious Incident of the Law Firm That Did Nothing in the Night-Time* (reviewing Milton C. Regan, Jr., Eat What You Kill:  The Fall of a Wall Street Lawyer (Univ. of Michigan Press 2004)), in 10 Legal Ethics 98 (2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1017627 and at http://www.tandfonline.com/doi/abs/10.1080/1460728X.2007.11423884.

- Nancy B. Rapoport & Roland Bernier, *Bankruptcy Pro Bono Representation of Consumers: The Seven Deadly Sins,* 44 Hous. Lawyer 18 (June 2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1051221.

- Nancy B. Rapoport, *Not Quite "Them," Not Quite "Us": Why It's Difficult for Former Deans to Go Home Again,* 38 U. TOLEDO L. REV. 581 (2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936251.
- Nancy B. Rapoport, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* 81 IND. L.J. 359 (2006) (solicited manuscript) (symposium at Indiana University-Bloomington School of Law—*The Next Generation of Law School Rankings*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=703843.
- Nancy B. Rapoport, *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936167.
- Nancy B. Rapoport, *Decanal Haiku,* 37 U. TOLEDO L. REV. 131 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936166.
- Nancy B. Rapoport, *Recent Developments in Bankruptcy Law,* 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938551.
- Nancy B. Rapoport, *"Venn" and the Art of Shared Governance,* 35 U. TOLEDO L. REV. 169 (2003) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936247.
- Nancy B. Rapoport, *Examining Enron's enablers: Watkins' perspective makes Swartz's account stand out,* HOUSTON CHRONICLE, March 23, 2003, at *Zest* 15 (solicited book review).
- Nancy B. Rapoport, *Enron, Titanic, and the Perfect Storm,* 71 FORDHAM L. REV. 1373 (2003) (solicited manuscript for a special issue on ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=498122; also included as an essay in ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 927 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004).
- Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002) (solicited manuscript for ethics symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936235.
- Nancy B. Rapoport, *In Memoriam: Yale Rosenberg,* 39 HOUS. L. REV. 869 (2002) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598446.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part II),* August 2002 NORTON BANKRUPTCY LAW ADVISER 2, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963913.
- Nancy B. Rapoport, *Multidisciplinary Practice After In Re Enron: Should the Debate on MDP Change At All?,* TEXAS BAR JOURNAL 446 (May 2002), available at http://www.texasbar.com/Template.cfm?Section=Home&Template=/ContentManagement/ContentDisplay.cfm&ContentID=5999.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part I),* February 2002 NORTON BANKRUPTCY LAW ADVISER 4, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963912.
- Nancy B. Rapoport, *Is "Thinking Like a Lawyer" Really What We Want to Teach?,* in *Erasing Lines: Integrating the Law School Curriculum,* 2001 ALWD CONF. PROCEEDINGS 91, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936248.

Nancy B. Rapoport
Page 11

- Nancy B. Rapoport, *When Local IS Global: Using a Consortium of Law Schools to Encourage Global Thinking,* 20 PENN STATE INT'L LAW REVIEW 19 (2001) (transcript of AALS Annual Meeting session).
- Nancy B. Rapoport, *Of Cat-Herders, Conductors, Fearless Leaders, and Tour Guides,* 33 U. TOLEDO L. REV. 161 (2001) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936245.
- Nancy B. Rapoport, *Presidential Ethics: Should a Law Degree Make a Difference?,* 14 GEO. J. L. ETHICS 725 (2001), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=260021.
- Nancy B. Rapoport, *Going from "Us" to "Them" in Sixty Seconds,* 31 U. TOLEDO L. REV. 703 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936171.
- Nancy B. Rapoport, *Dressed for Excess: How Hollywood Affects the Professional Behavior of Lawyers,* 14 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POLICY 49 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936188.
- Nancy B. Rapoport, *Ratings, Not Rankings: Why* U.S. News & World Report *Shouldn't Want To Be Compared To* Time *and* Newsweek—*or* The New Yorker, 60 OHIO ST. L.J. 1097 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936246.
- Nancy B. Rapoport, *Living "Top-Down" in a "Bottom-Up" World: Musings on the Relationship Between Jewish Ethics and Legal Ethics,* 78 NEB. L. REV. 18 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936241.
- Nancy B. Rapoport, *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases,* THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598447.
- Nancy B. Rapoport, *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?,* 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=939448.
- Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936343.
- C.R. Bowles & Nancy B. Rapoport, *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Proceedings?,* 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936240.
- Nancy B. Rapoport, *Ethics: Is Disinterestedness Still a Viable Concept? A Roundtable Discussion,* 5 AM. BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon. Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936340.
- Nancy B. Rapoport, *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential Conflicts of Interest in Columbus, Ohio,* 58 OHIO ST. L.J. 1421 (1997), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938611.
- Nancy B. Rapoport, *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners,* 5 J. BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=940769.

- Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND. L.J. 783 (1995), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938527.
- Nancy B. Rapoport, *Worth Reading: Review of Annual Survey of Bankruptcy Law,* TURNAROUNDS AND WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).
- Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936337.

**Op-eds**

- Nancy Rapoport & Mary Langsner, *Why does the bankruptcy code discriminate against disabled veterans?,* THE HILL (Jan. 24, 2019), available at https://thehill.com/opinion/finance/426854-why-does-the-bankruptcy-code-discriminate-against-disabled-veterans.
- Lois R. Lupica & Nancy Rapoport, *Consumer Debtors Should Not Have To Go It Alone,* DOW JONES DAILY BANKRUPTCY REVIEW (May 1, 2013), available at http://bankruptcynews.dowjones.com/article?an=DJFDBR0020130501e951qbfa8&from=alert&pid=10&ReturnUrl=http%3a%2f%2fbankruptcynews.dowjones.com%3a80%2farticle%3fan%3dDJFDBR0020130501e951qbfa8%26from%3dalert%26pid%3d10.
- Nancy Rapoport, *Board Smart Not to Raise the Superintendent Salary Stakes,* LAS VEGAS SUN, September 5, 2010, available at http://www.lasvegassun.com/news/2010/sep/05/board-smart-not-raise-superintendent-salary-stakes/.
- Nancy B. Rapoport, *Enron an Example: Grads Lost in Trees,* HOUSTON CHRONICLE, February 24, 2002, at 4H.
- Nancy B. Rapoport, *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy,* 26 BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7, 1995, at A3 (solicited editorial).

**Grants**

- 2002 participant, Harvard Institutes for Higher Education Management and Leadership in Education (MLE) Program (partial scholarship from Harvard, $1,000 in 2001—had to withdraw, due to the aftermath of Tropical Storm Allison, but returned to participate in 2002).
- 1999 participant, Harvard Institutes for Higher Education Management Development Program (MDP) (partial scholarship from Harvard, $1,000).
- 1995 Instructional Technology Small Grant (Ohio State funds; $850).
- 1995 West Publishing/NCAIR Fellow ($15,000 grant for developing a computer program that teaches law students about conflicts of interest in bankruptcy law).
- 1994 participant in Summer Institute of the Law & Society Association (Wellesley, Massachusetts).
- 1993 University Seed Grant for the study of creditor representation in bankruptcy (1993 grant from Ohio State University's Office of Research & the College of Law).

Nancy B. Rapoport
Page 13

**Selected academic presentations**

*Anthropology of higher education / higher education generally*

- Society for Applied Anthropology's 79th annual meeting, *Moving Seamlessly From Faculty Status to Administrator and Then Back Again* (March 2019).
- Society for Applied Anthropology's 78th annual meeting, *Concentric and Overlapping Circles of Leadership in Higher Education* (April 2018).
- Society for Applied Anthropology's 77th annual meeting, *Women and Diversity: Being a "First"* (March 2017).
- Presentation at 2010 Annual Meeting of Association of American Law Schools, Section on Women in Legal Education, *Succeeding in Legal Education* (January 2010).
- Presentation at 2009 Annual Meeting of Association of American Law Schools, Committee on Curriculum Issues, *Redesigning Legal Education* (January 2009).
- Presentations at the 2007 Annual Meeting of Association of American Law Schools:
  - *Workshop on the Ratings Game (or Not!):  The Search for Sensible Assessment,* moderator for plenary discussion, *We Didn't Even Bring the Box: A Roundtable Discussion on Creative Alternatives,* http://www.aals.org/am2007/wednesday/ratings.html.
  - Panelist, Section on Continuing Legal Education, Co-Sponsored by Section on Professional Responsibility, *Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?*
  - Panelist, Section for the Law School Dean, *What I Wish I Had Known Then: A Conversation Among Deans.*
- Symposium at Indiana University-Bloomington School of Law, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools* (March 2005).
- "Better Learning, Better Lawyers" Conference, *Legal Education in the 21st Century: Radical Design for a Changing Profession* (August 2002).
- Moderator of plenary session of the Annual Meeting of Association of American Law Schools, *Mini-Workshop on Major Issues of the 21st Century: The Impact on the Legal Academy and Law Students* (January 2000).

*Social science and ethics / social science and governance / social science and lawyer behavior / bankruptcy law*

- The Stein Center for Law and Ethics, Fordham University School of Law, Colloquium on Corporate Lawyers, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases* (October 2019).
- Pontificia Universidad Javeriana Cali (Colombia)'s International Congress of Corporate Law, *Corporate Social Responsibility and Social Science* (November 2017) (invited speaker).
- Colombia's Superintendency of Companies, *Corporate Governance, Compliance and Business Ethics* (May 2016) (invited speaker).
- Colombia's Superintendency of Companies, Responsibility of Administrators and Business Ethics Seminar, *Why Smart People Make Bad Decisions* (March 2015) (invited speaker).
- Boyd School of Law, Conference on Psychology and Lawyering: Coalescing the Field, *Using Psychology to Change Law Firms' Default Incentive Structures* (with Randy D. Gordon) (invited panelist) (February 2014).

Nancy B. Rapoport
Page 14

- The Ohio State University Moritz College of Law, faculty workshop presentation on *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms* (November 2013).
- The Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20, *What It Means To Be a Lawyer in These Uncertain Times (Part I)* (invited panelist) (April 2013).
- Roger Williams University School of Law, Women Who Lead Series, *Why the World Needs Nay-Sayers* (keynote speaker) (March 2010).
- Distinguished Lecturer, The Chapman Dialogue Series, Chapman University School of Law, *Why No Amount of Regulation Is Likely to Prevent Corporate Scandals* (February 2010).
- Presentation at Fordham Law School's Colloquium, *The Lawyers' Role in a Contemporary Democracy* (with Colin Marks) (September 2008).
- Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar), St. John's University School of Law Faculty, *Enron: Is It Still Relevant?* (March 2006 & March-April 2007).
- The 2001 Legal Ethics Conference, Hofstra University School of Law, *Legal Ethics—What Needs Fixing?* (September 2001).
- AALS Bankruptcy Workshop, *Teaching Bankruptcy as a Vehicle for Teaching Other Values* (May 2001).
- Annual Meeting of the Association of American Law Schools, Creditors' & Debtors' Rights Section, *Local Cultures + Judicial Discretion = National Confusion?: Equities, Equations, and the "Uniformity" of the Bankruptcy Code* (January 1998).
- Annual Meeting of National Conference of Bankruptcy Judges, *Disinterestedness and the Chapter 11 Professional* (October 1997).
- Eastern District of Pennsylvania Bankruptcy Conference, *Bankruptcy Issues* (January 1996, January 1997, January 1998, and January 1999).

**Selected continuing legal education programs and other professional presentations**

*Legal education and the legal profession generally*

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (May 2019).
- 2019 Mid-Year Meeting, National Organization of Bar Counsel, *A Look Inside the Incubator— The Challenges Facing Today's Law Students, Law Schools, and Newly-Minted Lawyers* (with Nelson Page and Ari Telisman) (January 2019).
- Law School Admission Council's Annual Meeting, *"Soothing the Savage Beast": The Art of Working Effectively With Difficult People (*with Floyd Weatherspoon) (June 2011).
- Association of American Law Schools, Annual Meeting, Section on Continuing Legal Education (co-sponsored by Section for the Law School Dean), *Exploring the Options for the Future of Legal Education* (with Kellye Y. Teste, Daniel McCarroll, Gary A. Munneke, and Ellen Y. Suni) (January 2010).

Nancy B. Rapoport
Page 15

- Houston Bar Minority Opportunities in the Legal Profession Committee & Minority Corporate Counsel Association: Business Development in a Belt-Tightening Economy, *Overcoming Barriers and Opening Doors to Your Personal Success* (February 2002).
- AALS Workshop—Do You Know Where Your Students Are?  Langdell Logs On to the 21st Century, AALS Annual Meeting, *The Changing Face of the Deanship* (January 2002).
- ALWD (Association of Legal Writing Directors) Biennial Conference, *Do "Best Practices" in Legal Education Include an Obligation to the Legal Profession to Integrate Theory, Skills, and Doctrine in the Law School Curriculum?* (July 2001).
- AALS Workshop for New Law Teachers, *Satisfying Your Multiple Constituencies (How Your Dean Can Help)* (July 2000 & July 1999).
- LSAC Academic Support Conference, *Why Support Academic Support Programs?* (June 2000).
- LSAC Annual Meeting, *Establishing a Partnership With a New Dean* (June 2000).
- American Bar Association's Workshop for New Law Deans, *Reflections of an Ex-Novice Dean* (June 1999).
- Annual Conference of the National Association for Law Placement, *Reliable Evaluation of Law Schools: Going Beyond Law School Rankings* (April 1999).

*Bankruptcy*

- AMERICAN BANKRUPTCY INSTITUTE LAW REVIEW panel discussion, *Professional Fees in Bankruptcy* (with co-panelists Judge Kevin Carey, attorney Douglas Deutsch, Professor Stephen Lubben, and Professor John Pottow) (April 2019).
- National Conference of Bankruptcy Judges, *NCBJ Plenary: Broken Bench Awards Show: The Best Little Show in Texas* (October 2018).
- ABI 38th Annual Midwestern Bankruptcy Institute, *Sanctions and Social Science* (October 2018) (with Adam Miller).
- Fifth Annual James T. King Bankruptcy Symposium, *Ethics and Getting Paid* (July 2018) (with the Hon. Erithe A. Smith and M. Jonathan Hayes).
- American Bankruptcy Institute, VALCON 2018, *Special Problems Presenting Financial Consultants as Expert Witnesses and Ethics Hot Topics* (May 2018) (with Michael Richman, George Angelich, and Ted Gavin).
- American Bankruptcy Institute's Annual Spring Meeting, *Ethics Jeopardy* (with Nan Roberts Eitel, Lois Lupica, and Bill Rochelle) (April 2017).
- American Bankruptcy Institute's Annual Spring Meeting, *A Primer on Dealing with Fee Examiner*s (with Van Durrer, II, William K. Harrington, Robert J. Keach, and John F. Theil) (April 2016).
- 29th Annual Central California Bankruptcy Institute, *How to Use Social Science to Improve Ethics in a Law Firm* (September 2015).
- 89th Annual National Conference of Bankruptcy Judges, *Ethics and Social Media* (panel discussion with the Hon. Hannah Blumenstiel and Peter Fessenden) (September 2015).
- National Association of Legal Fee Analysis (NALFA) webinar, *Bankruptcy Fee Examiners in Large Chapter 11 Cases* (panel discussion with Walter W. Theus, Jr., Senior Trial Attorney, USDOJ U.S. Trustee Program and Jeffrey L. Cohen, Partner, Cooley, LLP) (May 2015).

- Bankruptcy Section of the Federal Bar Association and the Los Angeles Chapter of the Federal Bar Association, 11th Annual Bankruptcy Ethics Symposium, *An Ethics Conversation* (with Gillian N. Brown) (November 2014).
- Texas Bankruptcy Law Section Bench/Bar Conference, *Recent Attorney Fee Issues* (June 2013).
- Rocky Mountain Bankruptcy Conference: IWIRC session on bankruptcy ethics; keynote speaker on *Bankruptcy Ethics in Pop Culture* (January 2013).
- Speaker at three sessions of the 86th Annual National Conference of Bankruptcy Judges: ABA session on *Ethical Issues Involving Pro Bono Representation: Spotting the Issues, Solving the Problems;* NCBJ session on *The Ethics of Organizers—Ethical Challenges in Forming Official and Unofficial Committees;* and CLLA session on *Pre-Bankruptcy Ethics—How to Avoid the Minefields Before Battle Begins* (October 2012).
- Sacramento Valley Bankruptcy Forum's 11th Annual Northern California Bankruptcy Conference, *Stupid Lawyer Tricks* (March 2012).
- National Association of Bankruptcy Trustees' Spring Meeting, panelist on *Friend Me? Ethics and Professionalism Issues Related to the Use of Social Media* (March 2012).
- ABA Business Law Section's Annual Spring Meeting, panelist for the sessions on *Ethical Issues in Commercial Transactions, Should In-House Counsel Be Navigating in the Choppy Waters of Corporate Compliance?,* and *Consumer Bankruptcy Clinics for Law Schools* (March 2012).
- Southeastern Bankruptcy Law Institute, SBLI Visiting Scholar Presentation, *The Case for Value Billing in Chapter 11* (October 2011).
- Bankruptcy Law Section of the State Bar of Texas Bench/Bar Conference, *"Money, Money, Money" -- Red Flags to Fee Examiners and Solutions to Those Red Flags* (with the Hon. H. Christopher Mott, Kemp Sawers, and Warren H. Smith) (June 2011).
- American Bankruptcy Institute's Annual Spring Meeting, *Fulfilling the Fiduciary Duty in a Complex Commercial World* (with Richard M. Meth & Judith Greenstone Miller (plenary session) (April 2011).
- Annual Meeting of National Conference of Bankruptcy Judges, *(Almost) Everything You Wanted to Know About…Getting Retained* and *Committee Solicitation Issues – The Problems, the Rules and the Enforcers* (October 2009).
- ABI Southwest Bankruptcy Conference, *Multimedia Ethics Presentation; Perspectives from the Bench and Ethical Issues;* and *Ethics—Walking in the Grey Areas: Advising Clients and Avoiding Pitfalls in Ethically Unsettled Areas* (September 2009).
- ALI-ABI Live Telephone Seminar and Audio Webcast: Ethics and Professionalism Series, *When Bankruptcy Comes Calling on Your Client: Five Common Ethical Mistakes* (April 2009).
- ABI Annual Spring Meeting, *Multimedia Ethics Presentation* (plenary session) (April 2009).
- Alaska Bar Association and Alaska Bankruptcy Bar, *Ethics and Popular Culture* and *Issues in Bankruptcy Ethics* (March 2009).
- National Conference of Bankruptcy Judges, 82d Annual Conference, *Ethical Fee Limits: Getting Paid and Getting What You Deserve* (Sept. 2008).
- American Bankruptcy Institute's 16th Annual Southwest Bankruptcy Conference, *Multimedia Ethics Extravaganza* (plenary speaker) (Sept. 2008).
- National Conference of Consumer Bankruptcy Attorneys, 16th Annual Conference, *Ethics Issues* (May 2008).

- American Bankruptcy Institute's 26th Anniversary Annual Spring Meeting, *Beyond Ethics: The Coexistence of Zealousness, Professionalism and Civility in the Insolvency Community* (April 2008).
- American Bankruptcy Institute's 19th Annual Winter Leadership Conference, *Presentation of Fee Study* (February 2008).
- National Conference of Bankruptcy Judges, 81st Annual Conference, Commercial Law League of America's 22nd Annual Educational Program's panel on *Preemption and Federalism Issues in Bankruptcy* (October 2007).
- American Bankruptcy Institute's 15th Annual Southwest Bankruptcy Conference, *Ethics: Negotiating the Sanctions Minefield* (September 2007).
- American Bankruptcy Institute's 25th Annual Spring Meeting, *The Application of State Ethics Rules in Bankruptcy: Are We Just Holding Our Noses and Looking the Other Way?* (April 2007).
- 25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling* (November 2006).
- Annual Meeting of National Conference of Bankruptcy Judges, ABA Luncheon Meeting, *Examining the Examiner* (October 2004).
- Annual Meeting of National Conference of Bankruptcy Judges, *Current Bankruptcy Ethics Issues: It's Not That You Ought To!  It's That You "Got To!"* (October 2004).
- Commercial Law League of America, Annual Meeting, *Bankruptcy Ethics* (April 2003).
- 4th Annual Barry L. Zaretsky Roundtable, Brooklyn Law School, *Ethics, Governance, and Bankruptcy After Enron* (April 2003).
- The University of Texas School of Law CLE: The 21st Annual Bankruptcy Conference & Personal Injury Conference, *Debtor Wrongdoing: Ethical Implications for Lawyers* (November 2002).
- National Association of Bankruptcy Trustees, Annual Conference, *What's Wrong With Us??!!—A Fascinating Look at Ourselves, Through the Eyes of Judges and Others* (August 2002).
- 10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute, A *Look Inside the Mega-Case* (September 2002).
- 20th Annual Bankruptcy Conference, University of Texas Law School, *Bankruptcy Ethics— How Do We Find Out What We're Doing Wrong (Or Right)?* (November 2001).
- Annual Meeting of National Conference of Bankruptcy Judges, *Tell Me What You Really Want—How Behavior (On Both Sides of the Bench) Can Impact Your Case* (October 2001).
- Winter Leadership Conference, American Bankruptcy Institute, *Bankruptcy Ethics* (December 2000).
- Twenty-Fourth Annual Bankruptcy Law & Practice Seminar, Stetson University College of Law, *Ethical Problems: Dual Representation in Chapter 11,* and *Ethics: Pre-Bankruptcy Planning and Ethical Limitations* (December 1999).

*Social science generally*

- Plenary session, *Ethics and Professionalism: Why Lawyers Do Dumb Things—The Social Science Reasons,* National Association of Chapter 13 Trustees, 54th Annual Meeting (with Mary K. Viegelahn (July 2019).

Nancy B. Rapoport
Page 18

- *What Social Science Can Teach Us About Good People and Bad Choices* and *Images of Lawyers in Film: Legal Ethics and the Movies,* 2018 American Bankruptcy Institute Midwest Regional Seminar (August 2018).
- 2017 Mutual Funds and Investment Management Conference, *Building Successful and Ethical Teams* (March 2017).
- National Association of Estate Planners' 52nd Annual Conference, *Nudging More Ethical Behavior Through Incentives and Checklists* (November 2015).
- The Eugene Kuntz Conference on Natural Resources Law and Policy, *Nudging Better Behavior: How Social Science Can Help Us Make Better Decisions* (November 2015).
- Institute for Energy Law, 66th Annual Oil & Gas Conference, *"Nudging" Better Behavior* (February 2015).
- National Association of Estate Planners and Councils, 50th Annual Conference, *Social Science, Human Error & Behavior* (November 2013).
- ABA Annual Meeting, Business Law Section, *Cognitive Biases, Blind Spots, and Other Impairments of Ethical Vision: How Good Lawyers Can Go Astray* (with Dr. Larry Richard, James Jones, and Charles McCallum) (August 2013).

*Judicial ethics*

- Federal Judicial Center, *Judicial Ethics* (with the Hon. Peter Bowie, the Hon. Arthur Federman, and Prof. Elizabeth Thornburg) (April 2013 and August 2013).
- College for New Judges, Texas Center for the Judiciary, *Images of Judges in Movies* (December 2002 & November 2003).

*Corporate ethics*

- Boyd School of Law Summit on Corporate Governance, in partnership with Greenberg Traurig, LLP: as a moderator, *Asleep at the Switch: Lessons Learned from the Failure of Board Oversight In Recent Corporate Scandals and Cybersecurity Gaffes* (with panelists Cuneyt Akay, Paul Ferrillo, and Jordan Kelly, and as a panelist, *Not Too Much, Not Too Little: What is Just Right?: Challenges Faced in Executive and Board Compensation* (with co-panelist Laura Wanlass and moderator Flora Perez (November 2019).
- Department of Energy & Contractor Attorneys' Association, Inc.'s Annual Meeting, *Ethics in the Corporate World* (May 2009).
- *Lessons To Be Learned From the Rise and Fall of High-Profile Corporate Entities—The Scandals—How to Identify Red Flags in Revenue Reporting and Financial Statements* (NACD Houston Chapter, Sept. 2004) (with Bala G. Dharan and Steven C. Currall).
- State Bar of Texas Annual Meeting, Business Law & Corporate Counsel Sections, *Moral Independence of Lawyers vs. Moral Interdependence* (June 2003).
- Southeastern Finance Association and Southern Academy of Legal Studies, *Corporate Scandals (Enron, Andersen, Tyco & World Com)—What Went Wrong?* (keynote speaker) (March 2003).
- The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute, *Conflicts, Ethical Duties and Independence: Lessons from Enron* (August 2002).
- NASA National Managers Association, *Lessons in Character from Enron* (April 2002).

- The University of Texas School of Law CLE: The 25th Annual Page Keeton Products Liability & Personal Injury Conference, *Dressed for Excess* (November 2001).

*Women*

- Gardere Women's Council Ethics CLE, keynote speaker, *Women on Boards* (June 2013).
- State Bar of Texas Annual Meeting, Women & the Law Section, *Images of Women Lawyers in the Media* (June 2003).

*Miscellaneous*

- Emanuel Bar Review Lecturer (2008-2010).
- BAR/BRI, lecturer on *Succeeding in Law School* (2002-2006).

**Selected media appearances**

- Appearances on a variety of local, national, and international news broadcasts, and in local, national, and international news articles, on various bankruptcy, corporate law, and other legal issues, including the Enron bankruptcy case, the Arthur Andersen trial, and the Anna Nicole death (December 2001-present).
- Appeared in Academy Award®-nominated documentary, *Enron: The Smartest Guys in the Room* (Magnolia Pictures 2005).

**Special training**

- Attended three Harvard Institutes of Higher Education leadership programs (IEM in 2016, MLE in 2002, and MDP in 1999).
- Attended STAR: A Systematic Approach to Mediation Strategies, Straus Institute for Dispute Resolution, Pepperdine University School of Law (June 2008) (attended on a grant from Pepperdine).

**Contributor to the following blogs**

- NANCY RAPOPORT'S BLOG, https://nancyrapoports.blog/.
- NANCY RAPOPORT'S BLOGSPOT (former blog), http://nancyrapoport.blogspot.com/.
- LAW SCHOOL SURVIVAL MANUAL, http://lawschoolsurvivalmanual.blogspot.com/.
- CORPORATE SCANDAL WATCH, http://corporatescandalwatch.blogspot.com/.
- UNLV LAW BLOG, Contributing Editor, http://unlvlawblog.blogspot.com.
- MONEYLAW, Contributing Editor, http://money-law.blogspot.com/.
- LEGAL PROFESSION, Contributing Editor: http://lawprofessors.typepad.com/legal_profession/.
- JURIST, Contributing Editor, http://jurist.law.pitt.edu/.
- CREDIT SLIPS, Guest Blogger, http://www.creditslips.org/.
- THE FACULTY LOUNGE, Guest Blogger, http://www.thefacultylounge.org/.

- THE CONGLOMERATE, Guest Blogger, http://www.theconglomerate.org/.
- FEMINIST LAW PROFESSORS, Guest Blogger, http://feministlawprofs.law.sc.edu/.
- RACE TO THE BOTTOM, Guest Blogger, http://www.theracetothebottom.org/home/.

## HONORS, BAR ADMISSIONS, MEMBERSHIPS, AND COMMUNITY SERVICE

### Selected honors

- Recipient of one of the NAACP Legacy Builder Awards (Las Vegas Branch #1111) (2018).
- Commercial Law League of America's Lawrence P. King Award for Excellence in Bankruptcy (2017).
- Inducted into Phi Kappa Phi, Chapter 100 (2017).
- Southeastern Bankruptcy Law Institute Distinguished Visiting Scholar (week-long visits at Georgia State College of Law) (2011).
- 2008 Public Service Counsel of the Year, 4th annual event, Association of Media and Entertainment Counsel (2009).
- Fellow, American College of Bankruptcy (2005-present) (Class 16).
- Named a "Woman of Vision" by the Houston Delta Gamma Foundation (2004).
- Admitted to American Leadership Forum, Class XXII (2004).  Withdrew due to family illness.
- Named "Best Local Girl Made Good," HOUSTON PRESS, September 25, 2003, at 24.
- Fellow, American Bar Foundation (2002-present; Life Fellow since 2015).
- Rice University Distinguished Alumna (2002).
- Named by the Greater Houston Area Chapter of the National Council of Jewish Women as a "Woman of Influence" (2001).
- Elected to membership in the American Law Institute (2001).
- Named a Legal Pioneer for Women in the Law (first woman to serve as the dean of a Nebraska law school), Nebraska State Bar Association (2000).
- Louis Nemzer Memorial Lecture (yearly lecture honoring a Jewish member of the Ohio State faculty) (1998).
- Outstanding Professor of the Year, The Ohio State University College of Law (third-year students voting) (co-winner, with Professor Barbara Rook Snyder) (1997).

### Bar admissions

- United States District Court, District of Nevada (2009).
- Nevada Supreme Court (2007).
- United States District Court, Northern District of Texas (2003).
- Texas Supreme Court (2001).
- United States Supreme Court (2000).
- Nebraska Supreme Court (1999).
- Ohio Supreme Court (1993).

Nancy B. Rapoport
Page 21

- United States District Court for the District of Hawaii (1988).
- California Supreme Court (1987).
- United States Court of Appeals for the Ninth Circuit (1987).
- United States District Courts for the Northern, Eastern, Central, and Southern Districts of California (1987).

**Editorial boards**

- THE BUSINESS LAWYER (2014-present).
- REYNOLDS COURTS & MEDIA LAW JOURNAL (2011-2013).
- Association of American Law Schools, JOURNAL OF LEGAL EDUCATION (2007-2010).
- State Bar of Texas, TEXAS BAR JOURNAL Board of Editors (2003-06); State Bar of Texas, TEXAS BAR JOURNAL, Editorial Board Committee (2001-2004).
- CALIFORNIA BANKRUPTCY JOURNAL (1995-2002).

**Selected board memberships**

- Rice University, External Advisory Board, Center for Teaching Excellence (2019-present).
- Nevada Board of Bar Examiners (2018-2020).
- Economic Club of Las Vegas (2017-present).
- National Museum of Organized Crime & Law Enforcement ("The Mob Museum") (2013-present); Secretary of the Board (2016-present).
- JURIST Board of Directors (http://jurist.law.pitt.edu/) (2008-2014).
- American Bankruptcy Institute Board of Directors (2008-2017); Executive Committee (2012-2016); Vice President of Research Grants (2013-2016).
- American Board of Certification (board certification for bankruptcy lawyers) (2007-2014) (Dean of Faculty, 2011-2013).
- Association of Rice Alumni (2006-2009).
- NALP Foundation for Law Career Research and Education (2005-2009).
- Texas Center for Legal Ethics (2004-2006).
- Texas Supreme Court Historical Society (2004); Advisory Board (2004-2006).
- Vinson & Elkins Women's Initiative Advisory Board (2003-2010).
- Houston Area Women's Center (2003-2006).
- Advisory Council Member, WWW United, Inc. (2002-2006).
- Texas Environmental Health Institute (a joint project of the Texas Department of Health & the Texas Natural Resource Conservation Commission, which is the Texas Commission on Environmental Quality (TCEQ)) (2002-2004).
- Houston World Affairs Council (2002-2005).
- Houston Hillel (2002-2007).
- Mayor's Advisory Board of World Energy Cities Partnership (2001-2004).
- Houston Disaster Relief Advisory Board (2001-2004).
- Houston Chapter of the Texas General Counsel Forum (2001-2005).

Nancy B. Rapoport
Page 22

- Anti-Defamation League Southwest Regional Board (2001-2006).
- Law School Admission Council Board of Trustees (2001-2004).

**Selected national service activities and memberships**

- Secretary and Reporter, American Bankruptcy Institute's Task Force for Veterans and Servicemembers Affairs (2018-present).
- Member, Federal Bar Association's Professional Ethics Committee (2018-present); Ethics Hotline subcommittee (2018-2019); Co-Chair, Speakers' Bureau, 2019-present).
- Member, Heterodox Academy (2017-present).
- Member, Society for Applied Anthropology (2017-present).
- Member, National Association of Legal Fee Analysis (2014-2018).
- Member, Association of Professional Responsibility Lawyers (2014-2016).
- Member, Law School Admission Council Diversity Retention Workshop 2015 Planning Work Group (2014-2015).
- Member, Federalist Society (2013-present).
- Member, Federal Bar Association (2012-present).
- Member, Advisory Committee to the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 (2012-2015) (Governance Subcommittee).
- Co-Reporter, American Bankruptcy Institute's National Ethics Standards Task Force (2011-2013).
- Co-Chair, American Bankruptcy Institute's Task Force on Young and New Members (2011-2012).
- Association of Media and Entertainment Counsel, Law School Section (Co-Chair, 2010-2011; member and temporary Co-Chair, 2012-2013); member, Law School Advisory Board (2014); Chair, Law School Advisory Board (January 2018-present).
- American Bar Association, Section on Legal Education, Committee on Law School Administration (2008-2010); Chair-Elect (2010); Chair (2011-2013).
- American Bar Association, Section on Business Law, Committee on Corporate Counsel, Subcommittee on Corporate Governance (co-chair, with Roberta Torian) (2007-2010).
- Advisory Committee, American Bankruptcy Institute's consumer bankruptcy fee study (advisor to Professor Lois Lupica) (2008-2011).
- Rice Alumni Volunteers for Admission (2007-present) and liaison for RAVA to Association of Rice Alumni Board (2007-2009); involved in Rice Annual Fund solicitations since 2007.
- Advisory Committee, American Bankruptcy Institute's Chapter 11 fee study (advisor to Professor Stephen Lubben) (2005-2007).
- American Bankruptcy Institute's Task Force on Pro Bono (2007).
- American Bar Association's Task Force on Attorney Discipline (2005).
- Planning committee for 2007 Annual Meeting of Association of American Law Schools, *Workshop on The Ratings Game* (2006-2007).
- City of Houston Mayor's Pension Governance Advisory Committee (2004-2006).
- American Bar Association, Advisory Group on Loan Repayment, Standing Committee on Legal Aid & Indigent Defendants (SCLAID) (2003-2006).

- Faculty member, ABA New Deans' School (May-June 2003, June 2004, and June 2005).
- Advisory Committee, Baylor College of Medicine-UH Law Center MD/JD Program (2004-2006).
- Academic advisor, National Governmental Affairs Committee, Commercial Law League of America (CLLA) (2002-2006).
- Co-chair (with Dean Stuart Deutsch), ABA Deans' Workshop (for mid-year ABA meeting in 2003).
- Advisory Committee, *The Birth of the Dot-Com Era,* project for the Library of Congress (Project Manager, Prof. David Kirsch, University of Maryland) (advising the Library of Congress on what to do with the records of now-defunct law firm of Brobeck, Phleger & Harrison) (2004-2007).
- National Association of Corporate Directors (2004-2006).
- Commercial Law League of America, Professional Responsibility Committee (2003-2005).
- Member, ABA Commission on Loan Repayment & Forgiveness (2001-2003).
- Member, AALS Professional Development Committee (2000-2003).
- Communication Skills Committee, ABA Section of Legal Education and Admissions to the Bar (1998-2002).
- Chair, AALS Planning Committee for the *Mini-Workshop on Major Issues of the 21st Century: the Impact on the Legal Academy and Law Students* (1999-2000).
- Member, Law School Admission Council (LSAC) Services & Programs Committee (1999-2000), Workgroup on Alternative Admissions Models (2000-2003), and Gay, Lesbian, Bisexual & Transgendered Issues Workgroup (2000-2001).
- Nebraska State Bar Association (1999-present).
- National Association of College & University Attorneys (1998-2006).
- Commercial Law League of America (1998-present).
- Ohio State Bar Association (1997-present).
- American Bankruptcy Institute (1994-present).
- AIDS Legal Referral Panel of the Bar Association of San Francisco (1989-91).
- Bar Association of San Francisco (1987-91).
- American Bar Association (1987-present).

## EXPERT AND EXPERT WITNESS ACTIVITY

- Expert for Porter Hedges LLP in *In re* McDermott Int'l, United States Bankruptcy Court for the Southern District of Texas, Case No. 20-30336 (DRJ) (2020-present).
- Expert for Diamond McCarthy LLP and Snow Covered Capital, LLC in Snow Covered Capital, LLC v. Weidner, United States District Court for the District of Nevada, Case No. 2:19-cv-00595-JAD-NJK (2019-present).
- Expert for The Richter Firm and Shumaker, Loop & Kendrick in Wise v. Smith et al., Court of Common Pleas, State of South Carolina, Case No. 2019-CP-3300017 (2019-present).
- Independent monitor for UpRight Law (2018-present).

Nancy B. Rapoport
Page 24

- Fee examiner in *In re* Toys "R" Us Property Company I, LLC, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).
- Fee examiner in *In re* Toys "R" Us, Inc., United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).
- Expert for the Trustee in two *In re* ICPW Liquidation Corp. cases, United States Bankruptcy Court for the Central District of California, Case Nos. 1:17-bk-12408-MB and 1:17-bk-12409-MB (2018).
- Expert for Hoover Slovacek LLP in Midstates Petroleum Company v. Production Specialists, Inc. dba Regal Oilfield Sup., United States Bankruptcy Court for the Southern District of Texas, Case No. 4:16-bk-32237 (2017-2019).
- Expert for Panish Shea & Boyle LLP in Moradi v. Nevada Property 1, LLC, District Court, Clark County, Nevada, Case No. A-14-698824-C (2017).
- Expert for Diamond State Insurance Company in Gieseke v. Diamond State Insurance Company, U.S. District Court for the District of Nevada, Case No. 3:16-cv-00103-MMD-WGC (2016).
- Expert for Mar-Bow Value Partners, LLC, and Lakeview Capital, Inc., on a confidential matter involving Federal Rule of Bankruptcy Procedure 2014 (2016-present).
- Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).
- Expert for Craig Marquiz in Home Gambling Network, Inc. v. Piche, United States District Court for the District of Nevada, Case No. 2:05-cv-00610-DAE-VCF (2015).
- Expert for the Debtor in *In re* The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, United States Bankruptcy Court, Eastern District of Washington, Case No. 04-08822-FPC11 (2014).
- Expert for the Trustee in *In re* Fundamental Long Term Care, Inc., United States Bankruptcy Court, Middle District of Florida, Case No. 8:11-bk-22258-MGW (2014-2015) (testified at deposition and at trial).
- Expert for the Liquidating Trustee in Mukamal v. Fulbright & Jaworski L.L.P (*In re* Palm Beach Finance Partners, L.P. and Palm Beach Finance Partners II, L.P.), United States Bankruptcy Court, Southern District of Florida, Case No. 09-36379-BKC-PGH (2014) (withdrew due to scheduling issues).
- Expert for the law firm of Lipson Neilson Cole Seltzer Garin, P.C. in a case involving conflicts of interest (2014).
- Consultant for the Liquidating Trust for *In re* Residential Capital, LLC, United States Bankruptcy Court, Southern District of New York, Case No. 12-12020 (MG), regarding the reasonableness of fees (2014).
- Expert for the law firm of Frank J. Cremen in Grievance File #SG 1-1156, State Bar of Nevada (2013-2014) (testified at hearing).
- Expert for Irell & Manella LLP, in State of Nevada v. Gary Trafford, et al., Clark County District Court, Case No. C-11-277573-1 (2013).
- Expert for a Nevada law firm (firm and client names kept confidential) in a matter involving attorney disciplinary procedures (2012).

Nancy B. Rapoport
Page 25

- Expert for the Fee Examiner in Matter of Lehman Brothers Holdings, Inc., U.S. Bankruptcy Court, Southern District of New York, Case No. 08-13555-jmp (2012).
- Expert for the Fee Examiner in *In re* Motors Liquidation Co. (f/k/a General Motors Corp.), U.S. Bankruptcy Court, Southern District of New York, Case No. 09-50026 (2011-2012).
- Expert for Alverson Taylor Mortensen & Sanders in Stanish et al. v. Catholic Healthcare West, Nevada District Court, Clark County, Case No. A-11-639674-C (2011).
- Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).
- Expert for the Office of the United States Trustee in three cases:  *In re* Mark Andrew Brown, U.S. Bankruptcy Court, Western District of Maryland, Case No. 09-44254-jwv7; *In re* Tracy L. Quarm, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 09-20498; and *In re* John W. Young, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 10-11404 (2010) (testified in discovery depositions and at trial; deposition and trial testimony done via videotape).
- Expert for the Trustee in The Pappg Grantor Trust v. Scott (*In re* Baltimore Emergency Services II, LLC, et al.), U.S. Bankruptcy Court, District of Maryland, Adversary No. 03-8294-esd (2010).
- Expert for Lionel, Sawyer & Collins in Michael Racusin v. Lionel Sawyer & Collins, American Arbitration Association, Case No. 79 194 Y 00108 08 (2009-2010) (testified in arbitration).
- Expert for the Reorganized Debtor in *In re* ASARCO, LLC, et al., U.S. Bankruptcy Court, Southern District of Texas, Case No. 05-21207 (2010) (testified at trial).
- Expert for BuckleySandler LLP in Pulte Homes, Inc. v. Terry Goddard, In His Official Capacity as Attorney General for the State of Arizona and Catherine Cortez Masto, In Her Official Capacity as Attorney General for the State of Nevada, D.C. Circuit, Civil Action No. 1:10-cv-00377 (2010).
- Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).
- Expert for plaintiff in Judy M. Jackson, M.D. v. Ira Levine et al., Nevada District Court, Clark County, Case No. A538983 (2009-2010) (testified in deposition and at trial).
- Expert for the Trustee in Asset Funding Group, L.L.C., Scobar Adventures, L.L.C., AFG Investment Fund 2, L.L.C., and HW Burbank, L.L.C. v. Adams and Reese, L.L.P., U.S. District Court, Eastern District of Louisiana, Case No. 07-2965 (2009) (testified in deposition; made available for trial, but case settled).
- Expert for Clausen Miller in *In re* Raymond Professional Group, Inc. (Raymond Professional Group, Inc. v. William A. Pope Company), Adv. No. 07-A-00639, U.S. Bankruptcy Court, Northern District of Illinois (2008-2009) (testified in deposition and at hearing).
- Expert for the plaintiff in Todd v. Guidance Software, Inc., U.S. District Court, Central District of California, Case No. SACV 08-1354 JVS (ANx) (2008-2009).
- Expert for the Debtor in Sports Shinko Co. v. Franklin K. Mukai, U.S. District Court, D. Hawaii, Case No. CV 04-00127 ACK/BMK (2007-2008).

Nancy B. Rapoport
Page 26

- Expert for the Trustee in *In re* Mego Financial Corp., et al., U.S. Bankruptcy Court, D. Nev., Case Nos. BK-N-03-52300-GWZ through BK-N-03-52304-GWZ and BK-N-03-52470-GWZ through BK-N-03-52474-GWZ (2007-2008) (testified at deposition).
- Expert for Pillsbury Winthrop in *In re* SONICBlue Incorporated, U.S. Bankruptcy Court, Northern District of California, Case Nos. 03-51775 through 03-51778 MM (2007) (made available to testify in court early in the case; did not testify).
- Expert for the Trustee in *In re* Southwest Florida Heart Group, P.A., U.S. Bankruptcy Court, Middle District of Florida, Case No. 9:05-bk-17167-ALP (2007) (testified in deposition).
- Expert for Beirne, Maynard & Parsons in Brazos Electric Power Cooperative, Inc. v. Tenaska IV Texas Partners and related cases (2003-2004; 2006-2007) (testified in depositions).
- Expert for Beirne, Maynard & Parsons in Hicks v. Charles Pfizer & Co., U.S. District Court, Eastern District of Texas, Civil Action No. 1:04CV201 (2006).
- Expert for Benjamin Hall, Esq., in Costilla Energy, Inc., by and through its litigation trustee, George Hicks v. Joint Energy Development Investments II, 49th Judicial District, Zapata County, Texas (2006-2008) (testified in deposition).
- Expert for Winstead, Secrest & Minick in an issue involving conflicts of interest (2005).
- Expert for Beckley, Singleton in Fremont Investment & Loan v. Beckley Singleton, Chtd. and Sidney Bailey, U.S. District Court, D. Nevada, Case No. CV-S-03-1406-JCM-RJJ (2003) (2005-2006) (testified in deposition).
- Expert for the debtor in *In re* ACandS, Inc., U.S. Bankruptcy Court, D. Delaware, Case No. 02-12687 (2004-2005) (testified at hearing).
- Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).
- Expert witness for Latham & Watkins regarding Section 414 of H.R. 333 (changes in "disinterestedness" standard of 11 U.S.C. § 101(14)) (March-April 2003).
- Expert witness for the Office of Disciplinary Counsel, *In re* Charles William Ewing, Case No. 97-5, before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio (1998).

**PUBLIC TESTIMONY**

- Testified at the June 2012 public meeting of the United States Trustee Program regarding the proposed new fee guidelines for larger chapter 11 cases (testimony available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment.pdf, http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_SupplementalComment.pdf, and http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment2.pdf; transcript available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Transcript_June4_Public_Meeting.pdf; Director Clifford J. White III's statement on the adopted guidelines, available at

Nancy B. Rapoport
Page 27

http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/Fee_Guidelines_Cliff_White_Statement.pdf).

## ADVICE COLUMN

- "Ms. Ps and Qs":  ethics advice column for the National Association of Chapter 13 Trustees (2011-present).

## SELECTED AMICUS BRIEFS

- *Brief of 83 Legal Ethics Professors as Amici Curiae in Support of Hearing En Banc,* United States v. Varner, United States Court of Appeals for the Fifth Circuit, Case No. 19-40016 (Mar. 20, 2020).
- *Amicus Brief of Neutral Fee Examiners Supporting Neither Party,* Baker Botts L.L.P. v. ASARCO LLC, Case No. 14-103, United States Supreme Court (Dec. 10, 2014).
- *Brief of Amici Curiae, In re* David Marshall Brown, Case No. 12-Cv-60016-KAM, United States District Court, Southern District of Florida (filed by co-counsel George Castrataro) (April 11, 2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038267.
- *Brief in Support of Respondent for Amici Curiae Professors Richard Aaron, Laura Beth Bartell, Jagdeep S. Bhandari, Susan Block-Lieb, Robert D'Agostino, Jessica Dawn Gabel, Kenneth N. Klee, George W. Kuney, C. Scott Pryor, Nancy B. Rapoport, Marie T. Reilly, Lynne F. Riley, Keith Sharfman, and Michael Sousa,* RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC v. Amalgamated Bank, Case No. 11-166, United States Supreme Court (March 5, 2012).
- *Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amici Curiae in Support of Petitioner,* Maples v. Thomas, Case No. 10-63, United States Supreme Court (May 25, 2011).
- *Brief of Amicus Curiae,* Warren v. Seidel, United States District Court for the District of Ohio, Case No. 2:10-cv-01049-MHW (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1843496.
- *Brief of 30 Leading Ethicists as Amici Curiae in Support of the Petitioner,* Charles Dean Hood v. State of Texas, Case No. 09-8610, United States Supreme Court (February 18, 2010), available at 2010 WL 638469.
- *Brief of Amicus Curiae,* Danny Joe McClure and Kimberly Deskins McClure, Plaintiffs, v. Bank of America, Creditors Financial Group, LLC, and Peter Rebelo, Defendants, Bankr. N.D. Tex. 2010, Adv. No. 08-04000-DML, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1550353.

## PERSONAL INFORMATION

- Native Texan (born in Bryan, Texas).
- Married to Jeffrey D. Van Niel; no children; two cats (Diana Prince and Shadow Grace).

<u>Attachment 2</u>

1. Boelter Declaration, Docket No. 204-3.
2. Century's Objection To Debtors' Application, Docket No. 426.
3. Declaration of Charles Slanina, Docket No. 429.
4. Declaration of Joshua R. Schwartz, filed under seal.
5. *Wall Street Journal article:* Boy Scouts of America Considers Bankruptcy Filing Amid Sex-Abuse Lawsuits, Dec. 12, 2018.
6. 12 7 2018 email chain.
7. 1 10 2019 email chain.
8. 3 4 2019 email chain.
9. ACE Legal Department Service Level Agreement.
10. Declaration of William Sneed.
11. Certain Underwriters at Lloyd's, London v. Century Indemnity Co., 2020 WL 1083360 (D. Mass. 2020).
12. Declaration of William Sneed.
13. Docket No. 210 (retention of Haynes & Boone).