## IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>                 Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

### DECLARATION OF ANN RAPPLEYE

I, Ann Rappleye, pursuant to the provisions of 28 U.S.C. § 1746 declare under the penalty of perjury as follows:

1.  I am Operations Counsel in the Global Legal and Compliance group at Chubb, a position I have held since November 2015.  In that capacity, I serve as Chief of Staff to the Executive Vice President and Global General Counsel of the Chubb Group of Companies, as well as manage various Global Legal Operations matters.   One of the legal operations matters I am responsible for is the oversight and management of the Legal and Compliance group's engagements with outside counsel.  This includes oversight of our e-billing tool – T360 or TyMetrix -- through which our outside counsel submit bills for payment.

2.  Reporting to me in this capacity are a T360 manager, who handles day-to-day administration of the T360 network, as well as an administrative assistant, who assists with such tasks as onboarding new law firms, setting up new matters, and answering basic questions from both internal stakeholders and outside law firms.  I also work with the Vice President, Claims Optimization, who is the product owner of the T360 system and supervises the administration of T360 in the Claims organization at Chubb.

3.  Given the number of firms that the Legal and Compliance group engage, we made a decision not to negotiate separate engagement letters with each firm.  Rather,

Chubb has a standard Service Level Agreement ("SLA") that the Company uses to memorialize the terms of engagement between Chubb and the law firms.

4.      We require new firms to electronically execute, acknowledge, and accept the SLA when they are on-boarded into the T360 network.  We also require different office locations of the same firm to acknowledge and accept the SLA when those offices are on-boarded into T360.  For example, if the New York office of Firm X has acknowledged and accepted the SLA and then the Chicago office of Firm X is assigned a new matter, the Chicago office of Firm X must also acknowledge and accept the SLA.

5.      Acceptance and execution of the SLA is performed electronically through the T360 tool.  The acknowledgement requires that the person accepting the SLA affirm that he or she is authorized to act on behalf of the firm.  The person accepting the SLA must also acknowledge that acceptance of the SLA is a condition precedent to the firm serving as counsel to Chubb.  The Acknowledgement Form as it appears to the law firm in T360 is attached as Exhibit A.

6.      Firms are prevented from submitting bills into T360 and, consequently, will not be paid, until they have accepted the SLA.

7.      Once the SLA is accepted, it applies to all legal and compliance matters a particular firm and office are assigned from that point forward.  Firms are not required to re-execute and accept the SLA with each new matter in the Legal and Compliance network of T360.  The SLA is therefore evergreen, i.e., it does not need to be renewed.

8.      The law firm Sidley Austin ("Sidley") acknowledged the Chubb SLA on September 4, 2015 in connection with the firm's engagement on a reinsurance matter.  A copy of the SLA Sidley acknowledged is attached as Exhibit B.  Nicole Talison electronically acknowledged the SLA on behalf of the firm, after representing that she had authority to do so.  I

understand that her title was Senior Client Arrangement Analyst at Sidley at the time.  The record of this acknowledgment in T360 is attached as Exhibit C.

9.    Sidley has been assigned eight (8) matters for the Legal and Compliance group since acknowledging the SLA in September 2015.  It billed over $2M and submitted more than 95 invoices through T360 on these matters.  It is my understanding that Sidley handled other matters prior to acknowledging the SLA in September 2015.

10.    Given my role in overseeing T360, I typically handle issues related to the SLA. For example, I would handle any questions or other issues related to the SLA with outside counsel.  I have not been made aware of any issues that Sidley has raised regarding the SLA, nor has anyone at the firm contacted me regarding the SLA.   In the December 7, 2018, email attached as Exhibit 1 to the declaration of Bill Sneed, Mr. Sneed confirms that he was aware of the SLA and that Sidley's representation has been pursuant to the SLA.

11.    The SLA addresses a host of issues ranging from case management and strategy to data security, reporting practices and billing procedures that are propriety to Chubb.  The public disclosure of the SLA would result in an unfair advantage to competitors and adversaries by providing them information as to the specifics of how Chubb manages its law firm relationships, the cases they handle and operations.  And, this information, if subject to public disclosure, would unfairly benefit Chubb's competitors and its adversaries in the legal system.

Dated:  May 1, 2020

Respectfully submitted,

*/s/ Ann Rappleye*_____

Ann Rappleye

**Acknowledgement Form**

| By clicking this button, I accept all of the terms and conditions of the Service Level Agreement ("SLA") and I represent |
|---|

to ACE INA Holdings Inc., (hereinafter referred to as "Chubb" as further defined in the SLA) that I have authority to act on behalf

of my firm. I also acknowledge that my firm's acceptance of the SLA is a condition precedent to serving as Chubb's legal counsel.

<table>
<tr><td>SLA Guidelines</td><td>Acknowledgement</td></tr>
<tr><td>Acknowledged?:  Yes</td><td>Date:  9/4/2015</td></tr>
</table>

Is your law firm currently providing, or planning to provide, legal services to Chubb on

matters subject to HIPAA privacy requirements?

| HIPAA:  No | HIPAA Date: |
|---|---|

Please refer to the Document Library to view each regions Service Level Agreement ("SLA"),

as well as view or print Chubb's HIPAA Business Associate Agreement ("BAA"), if applicable.

# EXHIBIT B

# SERVICE LEVEL AGREEMENT
# FOR THE PROVISION OF NON-CLAIMS LEGAL SERVICES

**Between**

**ACE INA Holdings Inc.**
**(Hereinafter referred to as "ACE")**

**and**

_____
**(Hereinafter referred to as the "Law Firm")**

**Dated:** _____

# Service Level Agreement
# for the Provision of Non-Claims Legal Services

## Contents

**1. Introduction**

1.1. Definitions, Statement of Purpose, Privilege and Confidentiality, Safeguarding Client Information, Media Contact/Public Disclosure and Conflicts of Interest



4.13 Conflicts of Interest



## 7.  Governing Law; Dispute Resolution



ACE Group Non-Claims - SLA

# Service Level Agreement
# for the Provision of Non-Claims Legal Services

## 1. Introduction

1.1. Definitions, Statement of Purpose, Privilege and Confidentiality, Safeguarding Client Information, Media Contact/Public Disclosure and Conflicts of Interest

1.1.1. Definitions:  This section defines some capitalized terms used in this Service Level Agreement ("SLA") and certain other terms and conditions.

| | |
|---|---|
| "ACE Group Company" | ACE or any of its parents, subsidiaries or other affiliates (at any time during the period of the Law Firm's representation of the Client) |
| "ACE Group of Companies" | all ACE Group Companies taken together (at any time during the period of the Law Firm's representation of the Client) |
| "ACE Liaison" | the Client's in-house lawyer or other principal liaison to the Law Firm |
| ████████████████ | ██████████████████████████ |
| "Client" | any ACE Group Company that retains the Law Firm to provide Non-Claims Services with respect to any matter |
| "Non-Claims Services" | services performed by the Law Firm for a Client that are unrelated to the defense of an insurance claim or a related insurance coverage claim |
| ████████████ | ██████████████████████████ |



5



1.1.6.  <u>Conflicts of Interest:</u>  In addition to the Law Firm's ethical responsibilities to avoid conflicts of interest, the ACE Group of Companies generally applies a Group-wide approach to conflict analysis.  The interests of all ACE Group Companies must be taken into account in analyzing whether a particular representation of a Client presents a conflict of interest.  Updated lists of all ACE Group Companies are filed with ACE Limited's SEC Forms 10-K and may be accessed via the www.acegroup.com and/or www.sec.gov websites.  The ACE Group of Companies does not generally consider conflicts to result solely from representation of its business competitors, but specific circumstances can cause conflicts to arise in such situations.  In all cases, it is the responsibility of the Law Firm to identify and bring to the attention of the Client, in writing, any circumstances that may create or involve a conflict of interest as herein described.  Any Law Firm that is newly retained by an ACE Group Company is requested to confirm the absence of any conflicts of interest to the ACE Liaison.  If the Law Firm identifies a potential conflict after it has begun work for the Client, it shall make all reasonable efforts to resolve that conflict in a manner that will allow the Law Firm's continued representation of the Client.  Any request by the Law Firm for the client to waive a real or potential conflict of interest must be in writing and directed to the ACE Liaison.  Regardless of the nature or timing of any conflict, the Client shall not be deemed to have waived any conflict unless the Client provides a waiver in writing.



6



7



8



9



10



11





13



14

4.13. <u>Conflicts of Interest</u>

    4.13.1. The Law Firm is required, without charge to the Client, to conduct or have conducted appropriate searches and inquiries with regard to any actual or potential conflict of interest, and to consult with the Client accordingly (as further directed in section 1.1.6 above).





16



## 7. Governing Law; Dispute Resolution

7.2.      If a dispute arises related to this SLA with respect to any matter handled by the Law Firm for a Client, senior representatives of both parties, vested with authority to settle the dispute, will meet or speak and attempt in good faith to resolve the dispute.  The meeting or conversation will be held reasonably promptly (which the parties believe should be achieved within 10 working days) at the request of either party.

7.3.      If the parties are unable to resolve a dispute by negotiation as set forth in section 7.2 above, and the dispute relates to a matter handled by the Law Firm within the United States of America ("US Dispute"), either party may submit the dispute to be finally settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, in Philadelphia, Pennsylvania, U.S.A., by a single arbitrator selected in accordance with R-11.  All US Disputes related to this SLA shall, if not resolved between the parties as provided under section 7.2, be resolved by arbitration as provided herein, and arbitration shall be the sole means for redressing any dispute.  Each party shall bear its own costs and expenses and an equal share of the arbitrators' fees. The parties waive their respective rights to damages for "bad faith," punitive damages, statutory damages or penalties or other exemplary damages. Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction.



ACE Group Non-Claims - SLA









# EXHIBIT C

Clicking on *SLA Guidelines Acknowledged?* and/or *Acknowledgement Date* will reveal in a pop up window the T360 user who signed off on the SLA.



