# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>　　　　　　　　　Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## DECLARATION OF CHRISTOPHER CELENTANO

I, Christopher Celentano, pursuant to the provisions of 28 U.S.C. § 1746 declare under the penalty of perjury as follows:

1.　　I am Senior Vice President, Coverage & Complex Claims, at Chubb. Together with Catherine "Shelly" Williams, Vice President, Coverage & Complex Claims, we are responsible for the oversight and handling of direct insurance claims made under policies issued by Chubb and its predecessor companies to the Boy Scouts of America.

2.　　In her April 28, 2020 declaration, Jessica Boelter refers to a meeting that took place at Sidley's Chicago office on October 14, 2019, and conference calls that followed on October 31 and November 1, 2019. I attended the October 14, 2019, meeting and the two calls although the audio was cut for the first call so we could not be heard and the call had to be rescheduled.

3.　　In paragraphs 12 and 15 of her declaration, Ms. Boelter states that at the October 14, 2019 meetings and the October 31 and November 1, 2019 calls, no one who attended raised concerns about Sidley's participation.

1

4.  As noted above, Ms. Williams and I work on the direct claims side of Chubb. We do not have responsibility for hiring counsel for reinsurance matters or overseeing litigation with respect to reinsurance, which is handled by a separate dedicated reinsurance department within Chubb. Thus, we had no idea that Sidley represented Chubb in reinsurance matters at the time we attended the October 14, 2019 meeting and two subsequent calls.

5.  Ms. Boelter and her Sidley colleague did not disclose to us that Sidley represented Chubb at the October 14, 2019, meeting and the subsequent conference calls described in Ms. Boelter's declaration. Ms. Boelter states in paragraph 19 of her declaration that she was unaware of Sidley's role in the reinsurance matters until shortly before the mediation in November, which corroborates that she did not disclose to us at the October 14, 2019, meeting or the subsequent calls that Sidley was concurrently engagement by Chubb on reinsurance for the Boy Scouts coverage.

6.  As Joshua Schwartz indicates in paragraph 12 and 13 of his declaration, it was two weeks after the October 14, 2019, meeting before it was put together internally that Sidley was seeking to negotiate a prepack for the Boy Scouts with Chubb while at the same time representing Chubb on reinsurance for the Boy Scouts coverage.

7.  As soon as we learned of this, I promptly made our concerns known to Sidley. On November 3, 2019, I wrote to Michael Andolina of Sidley about Chubb and Century's concern and objected to Sidley's participation in a meeting the following day.

8.  Sidley then wrote us to say that the Boy Scouts intended to go ahead with the meeting regardless of our objection and that we should attend the meeting on November 4, with Sidley's express agreement that it would not contend that our attendance in any way waived

Chubb's right to object its representation of Boy Scouts. I attach as Exhibit 1 correspondence reflecting Sidley's express acknowledgement and agreement that Chubb's rights were preserved.

9. Ms. Boelter omits from her declaration that Sidley expressly agreed to Chubb attending the meeting on November 4 without waiving its rights to object to the conflict. Specifically, in paragraph 18, she states only that "Century agreed to participate in the mediation without waiving its rights," but says nothing about Sidley also agreeing. In fact, this is what Ms. Boelter wrote on November 4:

> Following our discussion, BSA and Sidley acknowledge that Chubb's continued presence at the BSA mediation on November 4–5 will not constitute a waiver of Chubb's argument that Sidley has a conflict of interest. As stated several times previously, however, we maintain that Sidley does not have a conflict and we reserve all rights.

10. Based on this commitment, I attended the meeting on November 4, which carried over to November 5, 2019. On the morning of November 4, 2019, we met with Ms. Boelter and Mr. Andolina, conveyed our concern and told them that we did not consent to Sidley's concurrent representation of Chubb and Boy Scouts. We asked Ms. Boelter and Mr. Andolina whether Sidley has an opinion from its general counsel or any other written analysis concluding that Sidley's simultaneous representation of Chubb and Boy Scouts is proper. They told us that they had run the issue by their general counsel.

11. While I met at one point with a Boy Scouts representative on November 4, we were left by ourselves in a conference room segregated from the other attendees for essentially the entirety of both days.

12. Ms. Boelter also refers to a meeting that took place in Chicago the week after the October 14, 2019 meeting. My colleague, Ms. Williams, attended that meeting which was with the Boy Scout's defense counsel in the underlying tort cases. As Ms. Boelter acknowledges in paragraph 14 of her declaration, no one from Sidley attended this meeting.

13. At issue in the bankruptcy are policies that Century Indemnity Company's predecessor Insurance Company of North America ("INA") is alleged to have issued from 1963 to 1970 and certain other years.

14. There are three lawsuits presently pending in Illinois and Texas involving the Boy Scouts insurance coverage. These actions are *Nat'l Surety Corp. v. Boy Scouts of Am.*, No. 2017-CH-14975 (Ill. Cir. Ct., Chancery Div. filed Nov. 9, 2017); *Boy Scouts of Am. v. The Hartford Accident and Indemnity Co.*, No. DC-18-07313 (Tex. Dist. Ct. filed June 5, 2018); and *Boy Scouts of Am. v. Ins. Co. of N. Am.*, No. DC-18-11896 (Tex. Dist. Ct. filed Aug. 24, 2018).

15. In these actions, relief is sought with respect to a host of issues including allocation and number of occurrences. April 14, 2020 Panchok-Berry Decl. Ex. D at 20.

16. In prosecuting *Boy Scouts of Am. v. Ins. Co. of N. Am.*, No. DC-18-11896 (Tex. Dist. Ct. filed Aug. 24, 2018), the Boy Scouts served written discovery on Century asking for information about on the reinsurance arbitrations in which Sidley represents Chubb with respect to reinsurance for Boy Scout claims. The Boy Scouts sought the following:

1. Documents and communications between Century and its **Reinsurers** on the Boy Scouts' policies, including but not limited to submissions in connection with the Lloyd's arbitration and the related litigation in the District of Massachusetts, in which Sidley represented Century. April 14, 2020 Panchock-Berry Decl., Ex. F at 8–9, ECF No. 437.
2. Documents and communications between Century and its **reinsurers** regarding the Boy Scouts, their insurance policies, abuse claims against the Boy Scouts, and claims for coverage of those claims or any other insurance claims made by the Boy Scouts. *Id.* Ex. F at 12.
3. Identify all litigation involving Century and the **Reinsurers** of the Subject Insurance Policies involving the Sexual Abuse Claims, including but not limited to (1) the arbitration between Century and the Reinsurers and (2) litigation with Lloyd's in the District of Massachusetts, in which Sidley represented Century. *Id.* Ex. G at 8–9.
4. Identify all communications with the **Reinsurers,** dating back to 2008, regarding the relevant abused claims against the Boy Scouts. *Id.* Ex. G at 9.

17. In paragraphs 3 and 6 of her declaration, Ms. Boelter states that she is leading the Boy Scouts team regarding strategic options for reaching a global settlement of abuse claims against the Boy Scouts, including restructuring, and that her restructuring team crafted the Boy Scout's reorganization plan. The disclosure statement for that reorganization plan identifies insurance as a key asset in the reorganization and the plan impairs Chubb/Century's (and other insurers') right to defend and settle claims, and adversely affects the corresponding obligation of the Debtors to cooperate and assist in the defense of claims, by transferring the rights to the policies to a claimant-controlled trust.

18. The role that Ms. Boelter acknowledges that Sidley has taken in her declaration puts Sidley at the opposite side of the table in negotiating with Chubb over the term of a plan and prosecuting confirmation of a plan. I saw this at the meeting on October 14, 2019, where Ms. Boelter and Mr. Andolina of Sidley led the discussion, presented Chubb with plan terms implicating Chubb's rights, pressed that those terms be offered to the tort claimants and then did so over our objection. They have since conveyed their intent to go forward with a motion to mandate that Chubb participate in a mediation of its bankruptcy plan which Ms. Boelter confirms in paragraphs 6 and 20 of her declaration,

Dated: May 3, 2020                                     Respectfully Submitted,


                                                       By: */s/ Christopher Celentano*

                                                       CHRISTOPHER CELENTANO