# EXHIBIT A

⚜ **EFILED IN OFFICE**
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**19-A-68**

**JAN 08, 2019 09:58 AM**

*Angie T. Davis*
Angie T. Davis, Clerk of State Court
Cobb County, Georgia

IN THE STATE COURT OF COBB COUNTY

STATE OF GEORGIA

COURTNEY KNIGHT and
STEPHEN KNIGHT,
jointly as the surviving parents of
E███ J████ K████,
a minor child; and STEPHEN KNIGHT,
as the Personal Representative of the
ESTATE OF E███ J████ K████,

      Civil Action No.: _____

      Plaintiffs,

      v.

      **JURY TRIAL DEMANDED**

BOY SCOUTS OF AMERICA (CORP)
and ATLANTA AREA COUNCIL, INC.,
BOY SCOUTS OF AMERICA

      Defendants.
_____/

**<u>COMPLAINT FOR WRONGFUL DEATH</u>**

COMES NOW, Plaintiffs Courtney Knight and Stephen Knight, as the surviving parents and on behalf of the Estate of E███ J████ K████, a minor child, deceased, by and through the undersigned counsel, bring this Complaint for Wrongful Death, and in support thereof, state the following:

1.

At the time of his death on June 25, 2018, E███ J████ K████ ("E███") was fourteen years old and a resident of Harris County, Texas. E███ died intestate and is survived by his parents, Courtney and Stephen Knight.

2.

Plaintiffs jointly bring this action for wrongful death as the surviving parents of E███ pursuant to O.C.G.A. § 19-7-1.

1

3.

Plaintiff Stephen Knight also brings this action individually for personal injury and punitive damages as the personal representative of E████'s Estate. Plaintiff Stephen Knight is in the process of being appointed Administrator of E████'s Estate.

**PARTIES, JURISDICTION AND VENUE**

4.

Plaintiffs Courtney Knight and Stephen Knight (collectively, the "Knights") are citizens of the State of Texas and are the surviving parents of E████ J████ K████, a minor child, deceased. The Knights, jointly, and Stephen Knight, individually as the personal representative of E████'s Estate, bring this wrongful death action on behalf of their minor child who was fourteen years old at the time of his death while attending summer camp at Bert Adams Scout Camp located at 218 Scout Road, Covington, Newton County, Georgia.

5.

Plaintiffs are subject to the jurisdiction of this Court.

6.

Defendant Boy Scouts of America (Corp) (hereinafter "Boy Scouts of America") is a foreign nonprofit corporation that is authorized to transact business in the State of Georgia. Pursuant to the provisions of Georgia's long-arm statute O.C.G.A. §§ 9-10-91(1) - (3), Defendant Boy Scouts of America is subject to the *in personam* jurisdiction of this Court. Service may be perfected upon Defendant Boy Scouts of America by serving its Registered Agent Michele Eldredge at 1800 Circle 75 Parkway, S.E., Atlanta, Cobb County, Georgia 30339.

7.

Defendant Atlanta Area Council, Inc., Boy Scouts of America (hereinafter "Atlanta Area Council, Inc.") owns and operates Bert Adams Scout Camp and is a domestic nonprofit corporation. Service of process may be perfected upon Defendant Atlanta Area Council, Inc. by serving its Registered Agent Tracy Techau at 1800 Circle 75 Parkway, SE, Atlanta, Cobb County, Georgia 30339.

8.

Jurisdiction and venue are proper as to all parties pursuant to O.C.G.A. § 14-2-510(b)(1) as one or more Defendants maintains a registered office in Cobb County, and all Defendants are subject to the personal jurisdiction of this Court.

## GENERAL FACTS

9.

Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth in their entirety.

10.

Bert Adams Scout Camp is located on approximately 1,300 acres in Covington, Newton County, Georgia just outside of Atlanta, Georgia and is accredited annually by the Boy Scouts of America National Camp Accreditation Program.

11.

Bert Adams Scout Camp is owned and operated by Defendant Atlanta Area Council, Inc.

12.

Bert Adams Scout Camp is used almost exclusively — if not exclusively — for Boy Scouts of America camping trips and activities.

3

13.

Bert Adams Scout Camp has over 80 staff members who are trained in compliance with Boy Scouts of America safety requirements including but not limited to the Boy Scouts of America Guide to Safe Scouting, the Sweet Sixteen of Boy Scouts of America Safety, the Boy Scouts of America Scouter Code of Conduct and the Bert Adams Scout Camp General Policies for Camp Use.

**Boy Scouts of America Policies and Practices**

14.

The Boy Scouts of America's motto is "Be Prepared!"

15.

Safety is a critical component of being prepared.

16.

The Boy Scouts of America's commitment to safety states that "the safety of our youth, volunteers, staff, and employees is an important part of the Scouting experience." To that end, the Boy Scouts of America has a number of safety policies and practices, namely the Boy Scouts of America Guide to Safe Scouting, the Sweet Sixteen of Boy Scouts of America Safety, the Boy Scouts of America Scouter Code of Conduct and the Boy Scouts of America National Camp Accreditation Program.

17.

The Boy Scouts of America policies and practices are applicable to all Scouting activities.

18.

Additionally, Bert Adams Scout Camp has its own General Policies for Camp Use which was posted prominently on its website until it was removed shortly after E███'s death.

19.

Soon after E███'s death on June 25, 2018, any reference to Boy Scouts of America safety policies and practices applicable to all Scouting activities was removed from Bert Adams Scout Camp's website.

20.

At the time of the filing of this Complaint, the afore-mentioned safety policies and practices remain omitted from Bert Adams Scout Camp's website.

**Boy Scouts of America National Camp Accreditation Program**

21.

The Boy Scouts of America National Camp Accreditation Program consists of national camp standards to ensure the health, safety and well-being of every camper, leader, visitor and staff member while participating in a camp accredited by the Boy Scouts of America.

22.

The Boy Scouts of America's National Camp Accreditation Program contains facility standards — namely FA-714-1 — that specifically require camps to have adequate shelter for inclement weather as well as a plan to adjust activities as needed due to inclement weather.

**Boy Scouts of America Scouter Code of Conduct**

23.

The Boy Scouts of America Scouter Code of Conduct requires all adult leaders to make the protection of youth a personal priority. In that regard, adult leaders are required to be familiar

with and follow Boy Scouts of America youth protection policies and guidelines including but not limited to the Boy Scouts of America Guide to Safe Scouting and the Sweet Sixteen of Boy Scouts of America Safety.

**Boy Scouts of America Guide to Safe Scouting**

24.

The Boy Scouts of America Guide to Safe Scouting is an overview of Scouting policies and practices. By its terms, unit leaders are expected both to be familiar with its policies and practices and to review the additional reference materials cited therein.

25.

Under the terms of the Boy Scouts of America Guide to Safe Scouting, all participants in official Scouting activities should be familiar with its policies and practices as well as applicable program literature or materials and be aware of state or local government regulations that supersede Boy Scout of America practices, policies and guidelines.

**Boy Scouts of America Guide to Safe Scouting Lightning Risk Reduction**

26.

The Boy Scouts of America Guide to Safe Scouting Lightning Risk Reduction policy states in relevant part as follows:  "First, to be prepared for your outdoor adventure, it is important to know the weather patterns of the area . . . In addition to patterns, monitor current weather forecasts and conditions of the area you plan to visit to modify your plans if needed."

27.

The Boy Scouts of America Guide to Safe Scouting Lighting Risk Reduction policy states there is no risk-free location outside during a thunderstorm.

6

28.

Pursuant to Boy Scouts of America Guide to Safe Scouting Lighting Risk Reduction policy, the Boy Scouts of America has adopted the National Weather Service's recommendation which states as follows: "Thunder Roars, Go Indoors! The only completely safe action is to get inside a safe building or vehicle."

29.

The Boy Scouts of America Guide to Safe Scouting Lightning Risk Reduction policy defines a safe building as "one that is fully enclosed with a roof, walls, and a floor, and has plumbing or wiring."

30.

Once shelter is sought, the Boy Scouts of America Guide to Safe Scouting Lightning Risk Reduction policy requires a scout to "[s]tay inside for 30 minutes after you last hear the last rumble of thunder before resuming outdoor activities."

**Boy Scouts of America Revised Hazardous Weather Training**

31.

Effective April 30, 2018, the Boy Scouts of America revised its policies and procedures to require new direct contact leaders to complete Hazardous Weather Training.

32.

The revised Hazardous Weather Training requirement was in response to a hazardous weather encounter earlier in the year. At the Pacific Harbors Klondike Derby held at Camp Thunderbird, troop leaders followed the Boy Scout Guide to Safe Scouting and their hazardous weather training and evacuated camp in light of National Weather Service reports of sustained winds of 30 mph with gusts up to 48 mph recorded nearby.

7

33.

After the "all clear" was given, the scouts and leaders returned to Camp Thunderbird to retrieve their belongings and break down their campsites. Numerous trees had fallen on or near the campsite, including one tree that landed on a scout's tent right on top of his pillow.

34.

The Boy Scouts of America Hazardous Weather Training is available online in the BSA Learn Center.

**Sweet Sixteen of Boy Scouts of America Safety**

35.

The Sweet Sixteen of Boy Scouts of America Safety was instituted by the Boys Scouts of America National Health and Safety Committee and the Council Services Division of the Boy Scouts of America National Council as an aid in the continuing effort to protect participants in a Scout activity. By its own terms, the sixteen points of the Sweet Sixteen of BSA Safety are applicable to all Scouting activities.

36.

In relevant part, the Sweet Sixteen of Boy Scouts of America Safety contains provisions entitled "Weather Check," "Planning," and "Communications."

37.

.    The "Weather Check" provision (Number 9) of the Sweet Sixteen of Boy Scouts of America Safety states as follows, "The risk factors in many outdoor activities vary substantially with weather conditions. These variables and the appropriate response should be understood and anticipated."

38.

The "Planning" provision (Number 10) of the Sweet Sixteen of the Boy Scouts of America Safety states as follows, "Safe activity follows a plan that has been conscientiously developed by the experienced supervisor or other competent source. Good planning minimizes risks and also anticipates contingencies that may require emergency response or a change of plan."

39.

The "Communications" provision (Number 11) of the Sweet Sixteen of the Boy Scouts of America Safety states as follows, "The supervisor needs to be able to communicate effectively with participants as needed during the activity. Emergency communications also need to be considered in advance for any foreseeable contingencies."

**Bert Adams Scout Camp's General Policies for Camp Use**

40.

Bert Adams Scout Camp's General Policies for Camp Use states in the introductory paragraph as follows, "The Camp Rangers and Campmasters are charged with the responsibility of enforcing the health and safety regulations of the Boy Scouts of America and the State of Georgia. They are also responsible to see that the general use practices and procedures are followed."

41.

More specifically, Bert Adams Scout Camp's General Policies for Camp Use states in the first enumerated policy as follows, "Abide by the Guide to Safe Scouting. Unit leaders or event leaders are asked to review the hazardous weather program on the [Boy Scouts of America] website within the last year to be prepared for lightning, tornadoes, etc."

**National Weather Service Storm Advisories and Storm Warnings on June 25, 2018**

42.

When Boy Scout Troop 533 arrived at Bert Adams Scout Camp on June 25, 2018, the area had been experiencing thunderstorm activity for the past few days that included severe thunderstorm warnings issued by the National Weather Service.

43.

On June 25, 2018, the National Weather Service issued a number of storm advisories and storm warnings that Bert Adams Scout Camp failed to follow.

44.

On June 25, 2018, the National Weather Service in Peachtree City, Georgia issued a **5:30 a.m. EDT Hazardous Weather Outlook** for nearly 100 counties in portions of North and Central Georgia, including but not limited to Newton County, the county in which Bert Adams Scout Camp is located.

45.

The **5:30 a.m. EDT Hazardous Weather Outlook** advised that "[i]solated to scattered thunderstorms are expected across north and central Georgia this afternoon. Isolated storms will be strong to severe, with the main hazards damaging winds, frequent lightning and isolated flooding from heavy rainfall."

46.

The **5:30 a.m. EDT Hazardous Weather Outlook** advised that this storm pattern was forecasted for the next seven days.

47.

On June 25, 2018, the National Weather Service in Peachtree City, Georgia issued a **2:59 p.m. EDT Significant Weather Advisory** for Newton County advising of a strong thunderstorm and included Covington in the path of the storm. This advisory included a precautionary/preparedness action stating that "[p]eople outdoors should seek shelter immediately."

48.

On June 25, 2018, the National Weather Service in Peachtree City, Georgia issued a **3:24 p.m. EDT Severe Thunderstorm Warning** bulletin for immediate broadcast.

49.

The **3:24 p.m. EDT Severe Thunderstorm Warning** was radar-indicated and was in effect for Newton County until 4:00 p.m. EDT. It listed Covington as a location of impact.

50.

The **3:24 p.m. EDT Severe Thunderstorm Warning** included 60-mph winds and quarter-size hail, and it included the precautionary/preparedness action of moving to an interior room on the lowest floor of a building.

51.

On June 25, 2018, the National Weather Service in Peachtree City, Georgia issued a **3:40 p.m. EDT Significant Weather Advisory** that included Newton County and advised of thunderstorms accompanied by 40- to 50-mph wind, pea-sized hail and frequent cloud-to-ground lightning.

52.

The **3:40 p.m. EDT Significant Weather Advisory** included the

precautionary/preparedness action for people outdoors to seek shelter immediately.

53.

On a larger scale on June 25, 2018, the National Weather Service's Storm Prediction

Center in Norman, Oklahoma issued a **12:49 a.m. CDT Convective Outlook** advising of severe

thunderstorms from Nebraska to the Carolinas and Piedmont region where Bert Adams Scout

Camp is located. These outlooks continued to be issued throughout the day on June 25, 2018 at

**7:34 a.m. CDT** and **12:29 p.m. CDT.**

54.

Throughout the day on June 25, 2018, the Convective Outlooks gained severity and

intensity as the storm approached the vicinity of Bert Adams Scout Camp. The **12:29 p.m. CDT**

**Convective Outlook** advised of severe potential for isolated winds up to 60 mph as increasingly

likely with pockets of wind damage that included the area occupied by Bert Adams Scout Camp.

**E██'s Death**

55.

On or about the afternoon of June 24, 2018, E████ and his younger brother, J████,

arrived at Bert Adams Scout Camp from Houston, Texas to attend a six-night summer camp.

56.

E████'s and J████'s father, Plaintiff Stephen Knight, is an Eagle scout. Following in

their father's footsteps, E████ and J████ were both active members of Boy Scout Troop 533 of

the Big Cypress District of the Sam Houston Council.

57.

12

E█████ had attained the rank of Life Scout and was currently serving Troop 533 as an Instructor — a position for which he was hand-selected because of his ability to teach Scouting skills to younger scouts.

58.

When E█████ K█████ and J█████ K█████ — along with approximately 100 scouts, several scoutmasters and numerous chaperones from Boy Scout Troop 533 — arrived at Bert Adams Scout Camp, there was a light rain. The troop set up camp around a picnic table in a heavily wooded area known as Grant, Jones and Lee (hereinafter, the "Campsite").

59.

On June 24, 2018, when Troop 533 arrived at Bert Adams Scout Camp in Newton County, Georgia, the area was in the midst of a multi-day, severe thunderstorm weather pattern that is not unusual for the area during summer months.

60.

On June 25, 2018, the first full day of camp, the Scoutmaster conducted a brief orientation with the scouts which consisted primarily of camp rules and the importance of hydration.

61.

Around noon on June 25, 2018, Bert Adams Scout Camp personnel conducted a test of their alarm system and confirmed that the system was working properly. The scouts were instructed that if they were ever to hear the alarm siren, they should seek shelter in a safe building immediately.

62.

The scouts were also instructed that if they were in the vicinity of the Campsite and heard the alarm siren signaling inclement weather, they should utilize the bathroom building as safe shelter.

63.

At approximately 3:10 p.m. on June 25, 2018, E▮ was released from his afternoon merit-badge session, after which he had a period of free time. At this time, E▮ and his younger brother J▮ were both in the general area of Bert Adams Scout Camp where Fort Brumley and Love Dining Hall — two of the main camp buildings — are located.

64.

Following the National Weather Service's **2:59 p.m. EDT Significant Weather Advisory**, troop leaders and camp staff in the Love Dining Hall and Fort Brumley area of Bert Adams Scout Camp personally instructed the scouts in that area — including E▮'s younger brother J▮ — to remain indoors to seek shelter from the storm.

65.

The troop leaders and camp staff who instructed J▮ and the other scouts in the Love Dining Hall and Fort Brumley area of Bert Adams Scout Camp to remain indoors due to the impending storm had walkie talkies and were using the walkie talkies to communicate updates regarding the timing of and preparation for the storm's arrival.

66.

E▮ was not advised of the **2:59 p.m. EDT Significant Weather Advisory** with regard to the impending storm and the need to seek shelter; rather, E▮ and a friend were permitted to

leave the area of Fort Brumley and Love Dining Hall — where they would have been adequately protected from the impending thunderstorm — and walk to the Campsite.

67.

Despite having an operational safety alarm and hundreds of scouts scattered across approximately 1,300 acres of its property, Bert Adams Scout Camp staff did not sound the alarm system to communicate the National Weather Service's advisory so that everyone throughout the camp — especially scouts and other people who were outside at the time — would "Be Prepared!" and seek safe shelter immediately.

68.

Upon arriving at the heavily wooded Campsite, it was raining. After the rain increased, E▮ and a friend went inside a fellow scout's tent. The Scoutmaster was nearby in a different tent with other scouts.

69.

Despite the National Weather Service's **2:59 p.m. EDT Significant Weather Advisory** of a strong thunderstorm in the area and the attendant precautionary action to seek immediate shelter in a safe building, E▮ and the other scouts were allowed to remain outdoors in their canvas tent oblivious to the impending danger.

70.

Despite the National Weather Service's **2:59 p.m. EDT Significant Weather Advisory** of a strong thunderstorm in the area and the attendant precautionary action to seek safe shelter immediately, Bert Adams Scout Camp did not sound its alarm system to communicate the need to E▮ and others who were outdoors at the Campsite to seek immediate shelter in the nearby bathroom building as they had been instructed to do.

15

71.

As the wind and rain increased that afternoon, Bert Adams Scout Camp failed to sound

its safety alarm to alert scouts throughout the camp to "Be Prepared!" for the impending storm,

and E█████ and other scouts were allowed to remain outdoors in their canvas tents.

72.

Despite the National Weather Service's radar-indicated **3:24 p.m. EDT Severe

Thunderstorm Warning** bulletin for immediate broadcast that included the area occupied by

Bert Adams Scout Camp and advised of 60-mph winds and quarter-size hail along with the

precautionary/preparedness action of moving to an interior room on the lowest floor of a

building, E█████ and the other scouts were allowed to remain outdoors in their canvas tent.

73.

Despite the National Weather Service's **3:24 p.m. EDT Significant Weather Advisory**

of a strong thunderstorm in the area and the attendant precautionary action to seek safe shelter

immediately, Bert Adams Scout Camp did not sound their alarm system to communicate the

need to E█████ and others who were outdoors at the Campsite to "Be Prepared!" by seeking

immediate shelter in the nearby bathroom building as they had been instructed to do.

74.

As the storm reached its peak, large tree limbs began falling, and still Bert Adams Scout

Camp failed to follow Boy Scouts of America policies and procedures to prepare adequately for

the storm by sounding its safety alarm or otherwise communicating the need to seek immediate

shelter.

75.

Given the lack of any advanced notice of the storm's arrival to the scouts at the Campsite, E█████ and his friends unknowingly remained in their canvas tent as the storm barreled through Bert Adams Scout Camp.

76.

Although there was a bathroom building at the Campsite that satisfies the shelter requirement of both the Boy Scouts of America National Camp Accreditation Program and the Boy Scouts of America Guide to Safe Scouting, E█████ and other scouts unknowingly remained in their canvas tents at the Campsite throughout the storm.

77.

As a result of the storm, multiple trees fell at the Campsite, and many canvas tents were crushed.

78.

One tree completely destroyed the communal table made of aluminum and wood located in the center of the Campsite.

79.

Another tree fell onto the tent occupied by E█████ and his two friends, resulting in E█████'s death.

80.

The death certificate issued by the Newton County Coroner lists E█████'s time of injury as 3:41 p.m. and his time of death as 4:03 p.m.

81.

The summer camp was subsequently canceled, and Troop 533 returned to Houston, Texas the following day.

82.

J███ K███ returned safely home to his parents, Plaintiffs Courtney and Stephen Knight.

83.

E██ K██ was laid to rest on June 30, 2018.

## <u>COUNT 1</u>
## <u>VICARIOUS LIABILITY OF DEFENDANT BOY SCOUTS OF AMERICA</u>
## <u>FOR THE NEGLIGENCE OF DEFENDANT ATLANTA AREA COUNCIL, INC.</u>

84.

Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth in their entirety.

85.

Defendant Atlanta Area Council, Inc. is chartered with jurisdiction over a prescribed geographical area by Defendant Boy Scouts of America.

**Charter and Bylaws of the Boy Scouts of America**

86.

Pursuant to its revised Charter and Bylaws effective June 2018, Defendant Boy Scouts of America issues local council charters for a period not exceeding one year, which may be renewed annually.

18

87.

Pursuant to Article VI, Section 1, Clause 1 of its Charter and Bylaws, Defendant Boy Scouts of America renews local council charters upon "showing a satisfactory effort to meet the responsibilities of a local council as herein provided."

88.

More specifically, Article VI, Section 1, Clause 1 of the Charter and Bylaws of the Boy Scouts of America states as follows:  "Such charters shall be contingent on such local councils' fulfilling the basic purpose of the Scouting movement within their specified territory in a sustainable manner, in accordance with these Bylaws and the Rules and Regulations of the [Boy Scouts of America]."

89.

Additionally, under Article VI, Section 1, Clause 3 of its Charter and Bylaws, Defendant Boy Scouts of America has "the right to audit all records of local councils for compliance with national rules, regulations, and policies . . . [and] following any audit to take such action as it deems appropriate to correct any deficiencies or violations of any national rules, regulations, policies or charter agreement."

90.

Pursuant to its Charter and Bylaws, Defendant Boy Scouts of America issued a charter to Defendant Atlanta Area Council, Inc., which charter was in effect at all times relevant herein.

91.

Defendant Boy Scouts of America has a duty to ensure that Defendant Atlanta Area Council, Inc. was in compliance with its rules, regulations and policies.

19

92.

Defendant Boy Scouts of America was negligent by breaching its duty of ordinary care in at least the following ways, including but not limited to:

(a) failing to ensure that Defendant Atlanta Area Council, Inc. followed the **Boy Scouts of America Scouter Code of Conduct**;

(b) failing to ensure that Defendant Atlanta Area Council, Inc. followed the **Boy Scouts of America Guide to Safe Scouting**;

(c) failing to ensure that Defendant Atlanta Area Council, Inc. followed the **Boy Scouts of America Guide to Safe Scouting Lighting Risk Reduction** policy;

(d) failing to ensure that Defendant Atlanta Area Council, Inc. followed the **Boy Scouts of America Revised Hazardous Weather Training**;

(e) failing to ensure that Defendant Atlanta Area Council, Inc. followed the **Sweet Sixteen of Boy Scouts of America Safety**; and

(f) failing to ensure that Defendant Atlanta Area Council, Inc. followed the **Bert Adams Scout Camp's General Policies for Camp Use.**

93.

At all times relevant to the subject incident of this Complaint that resulted in E███'s death, Defendant Atlanta Area Council, Inc. was acting as an agent of Defendant Boy Scouts of America.

94.

20

At all times relevant to the subject incident of this Complaint that resulted in E███'s death, Defendant Atlanta Area Council, Inc. was acting in the prosecution and within the scope of the business of Defendant Boy Scouts of America.

95.

Under the principles of agency and *respondeat superior,* Defendant Boy Scouts of America is liable to Plaintiffs for all damages allowed under the law and as set forth more fully in the Damages section below.

96.

By virtue of imputed liability, Defendant Boy Scouts of America is liable to Plaintiffs for all damages allowed under the law and as set forth more fully in the Damages section below.

**COUNT 2**
**NEGLIGENCE, NEGLIGENCE *PER SE* AND WRONGFUL DEATH**
**AGAINST DEFENDANTS BOY SCOUT OF AMERICA**
**AND ATLANTA AREA COUNCIL, INC.**

97.

Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth in their entirety.

98.

Defendant Atlanta Area Council, Inc. had a duty of ordinary care to operate Bert Adams Scout Camp in a reasonably prudent manner.

99.

21

Defendant Atlanta Area Council, Inc. was negligent by breaching its duty of ordinary care at Bert Adams Scout Camp in at least the following ways, including but not limited to:

(a)  failing to follow Boy Scouts of America policies and practices as well as their own procedures;

(b)  failing to monitor local weather forecasts and conditions;

(c)  failing to effectively communicate significant weather advisories to all scouts;

(d)  failing to provide adequate communication devices for use at remote areas including but not limited to the Campsite;

(e)  failing to follow weather advisories for the area issued by the National Weather Service;

(f)  failing to modify plans due to inclement weather advisories;

(g)  failing to maintain the Campsite by thinning and/or removing trees as necessary; and

(h)  failing to instruct E███ and other scouts at the Campsite to "Be Prepared!" for an impending severe thunderstorm by taking immediate shelter in a nearby safe building.

100.

As a direct and proximate cause of Defendant Atlanta Area Council, Inc.'s negligent conduct, E███ suffered severe injuries that resulted in his pain, suffering and death as set out in further detail herein.

101.

By virtue of its negligent conduct, Defendant Atlanta Area Council, Inc. is liable to Plaintiffs for all damages allowed under law and as set forth more fully in the Damages section below.

**COUNT 3**

22

## PREMISES LIABILTY AGAINST DEFENDANTS
## BOY SCOUTS OF AMERICA AND ATLANTA AREA COUNCIL, INC.

### 102.

Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth in their entirety.

### 103.

At all times relevant herein, E███ was an invitee onto the premises of Bert Adams Scout Camp.

### 104.

As the owner and operator of Bert Adams Scout Camp, Defendant Atlanta Area Council, Inc. owed E███ an invitee, a duty of ordinary care in keeping the premises and approaches safe.

### 105.

Defendant Atlanta Area Council, Inc. breached its duty of ordinary care by failing to keep its premises and approaches safe at Bert Adams Scout Camp in at least the following ways, including but not limited to:

(a) failing to follow Boy Scouts of America policies and practices as well as their own procedures;

(b) failing to monitor local weather forecasts and conditions;

(c) failing to effectively communicate significant weather advisories to all scouts;

(d) failing to provide adequate communication devices for use at remote areas including but not limited to the Campsite;

(e)  failing to follow weather advisories for the area issued by the National Weather Service;

(f)  failing to modify plans due to inclement weather advisories;

(g)  failing to maintain the Campsite by thinning and/or removing trees as necessary; and

(h)  failing to instruct E███ and other scouts at the Campsite to "Be Prepared!" for an impending severe thunderstorm by taking immediate shelter in a nearby safe building.


106.

As a direct and proximate cause of Defendant Atlanta Area Council, Inc.'s negligent conduct, E███ suffered severe injuries that resulted in his pain, suffering and death as set out in further detail herein.

107.

By virtue of its negligent conduct, Defendant Atlanta Area Council, Inc. is liable to Plaintiffs for all damages allowed under law and as set forth more fully in the Damages section below.

108.

By virtue of imputed liability under the principles of agency and *respondeat superior*, Defendant Boy Scouts of America is liable to Plaintiffs for all damages allowed under law and as set forth more fully in the Damages section below.

**COUNT 4**
**PUNITIVE DAMAGES AGAINST**
**DEFENDANTS BOY SCOUTS OF AMERICA AND ATLANTA AREA COUNCIL, INC.**

109.

24

Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth in their entirety.

110.

The actions and inactions of Defendants Boy Scouts of America and Atlanta Area Council, Inc. as alleged herein — including but not limited to the failure to heed multiple weather advisories and to follow Boy Scouts of America policies and procedures pertaining to safe scouting, lightning risk reduction, hazardous weather, planning, communication and the Boy Scouts of America motto to "Be Prepared!" — demonstrate that entire want of care which would raise the presumption of conscious indifference to the consequences or are otherwise sufficient to warrant an award of punitive damages pursuant to O.C.G.A. § 51-21-5.1.

111.

An award of punitive damages is warranted to punish, penalize and deter Defendants Boy Scouts of America and Atlanta Area Council, Inc. from similar conduct in the future.

**DAMAGES**

112.

Plaintiffs incorporate herein by reference all preceding paragraphs of this Complaint as if fully set forth in their entirety.

113.

Defendants' negligent conduct proximately caused E███ to suffer severe physical injuries and attendant pain and mental anguish prior to his death.

25

114.

Plaintiffs Courtney and Stephen Knight, as E███'s surviving parents, claim general and special

damages for all elements of E███'s wrongful death, the measure of which is the full value of

E███'s life.

115.

As representatives of E███'s Estate, Plaintiffs further claim all compensatory, special,

economic, general, punitive and all other damages available to E███'s Estate as permissible

under Georgia law, including but not limited to:

a)  Funeral and burial expenses;

b)  Pre-death pain and suffering;

c)  Mental anguish, fright, shock, and terror;

d)  Other necessary expenses; and

e)  Punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for the following relief:

a)  That summons and process issue requiring Defendants to appear as provided

by law to answer this Complaint;

b)  That Plaintiffs have a **TRIAL BY JURY** of all issues so triable;

c)  That Plaintiffs have and recover all damages under Georgia law as set forth

herein;

d)  That Plaintiffs recover all attorneys' fees, interest and costs of this action; and

e) That Plaintiffs recover such other and further relief as this Court deems just

and proper.

Respectfully submitted, this the 8th day of January, 2019.

**HARRIS LOWRY MANTON LLP**


*/s/ Jeffrey R. Harris*_____
JEFFREY R. HARRIS
Georgia Bar No. 330315
jeff@hlmlawfirm.com
YVONNE S. GODFREY
Georgia Bar No. 318567
yvonne@hlmlawfirm.com
MARIA D. SAYERS
Georgia Bar No. 205713
msawyers@hlmlawfirm.com

410 E. Broughton Street
Savannah, GA 31401
Telephone: (912) 651-9967
Facsimile: (912) 651-1276

***Attorneys for Plaintiffs***