IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>                 Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**CENTURY'S BRIEF RESPONDING TO THE COURT'S QUESTIONS
POSED AT THE END OF THE MAY 4, 2020 HEARING**

 

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

—and—

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

**RESPONSE TO THE COURT'S FIRST QUESTION**

At the end of the evidentiary hearing on May 4, 2020, the Court posed the following question: What should the Court do if the lawyer and client disagree about whether there is a conflict. Critical to the response is that this is a retention application, ***not*** a disqualification motion. Therefore, under Third Circuit precedent, Sidley and Debtors have the burden of proof.[1] Sidley does not even contest that it had the burden to disclose affirmatively its relationship with the Boy Scouts and obtain Chubb's informed consent. Indeed, Sidley acknowledges that burden is a weak spot; otherwise it would not have argued in its Reply that Chubb's objection is really a *sub rosa* disqualification motion, which it obviously is not.[2] To the extent there is any doubt, the Court must conclude that Sidley and Debtors have not carried their burden. But this is not a tie, Sidley and Debtors have not adduced evidence even close to carrying their burden of proof.

Sidley admitted facts that defeat the retention application: It did not obtain informed written consent to a conflict waiver from Chubb, as Rules 1.7(b) and 1.9(a), as well as the SLA, require. Sidley also admitted that it did not share with Chubb relevant facts about its Boy Scouts representation until late October 2019, and even then it continued to withhold vital information. These are critical facts because the Third Circuit teaches that in addition to having an obligation to obtain a written waiver, a lawyer has to make sure that the waiver is based on "truly informed

---

[1] *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984); *see also In re Fisker Auto. Holdings, Inc. S'holder Litig.*, No. CV 13-2100-DBS-SRF, 2018 WL 3991470, at *3, n.5 (D. Del. Aug. 20, 2018) ("[T]he burden shifts to the attorney seeking permission to pursue an otherwise impermissible dual representation in the context of the informed consent analysis."); *accord United States v. Gordon*, 334 F. Supp. 2d 581, 587 (D. Del. 2004); *In re Duvall*, No. 19-112272, 2020 WL 1492769, at *2 (Bankr. W.D. Ky. Mar. 25, 2020) ("While the burden of proof in seeking disqualification of opposing counsel is on the party seeking disqualification, a professional seeking appointment under Section 327 bears the initial burden of proof that they meet all qualifications of the statute in order to obtain appointment.").

[2] Sidley's April 28, 2020 Reply in Support of Retention at ¶ 48.

consent."[3]  As counsel, Sidley was "in the best position to ensure that the [informed consent] requirement is met," and Sidley had and has "responsibility for safeguarding the client's interests."[4]  Given the facts here, even if the Court were to credit all of Sidley's evidence—though there were holes and inconsistencies in it—the retention application must fail.

**I.    SIDLEY'S EVIDENCE IS IRRELEVANT.**

Most of Sidley's evidence went primarily to two issues:  (i) Sidley tried to establish that it was justified in its view that there was no conflict, and, at worst, it made a good-faith, honest mistake about that (the alleged "reasonableness" about which Professor Rapoport opined); and (ii) Chubb knew or should have known that Sidley represented the Boy Scouts and the nature of that representation—despite Sidley's admission that it did not disclose any details—and Chubb was somehow at fault in not acting on its concerns earlier (alleged delay).  Both allegations—even if true—are legally irrelevant.  In fact, the evidence proves just the opposite.

*First*, that Sidley may have been reasonable in believing there was no conflict is beside the point—a conflict is a conflict.  There is no intent element under either Rule 1.7 or 1.9.  And certainly, there is no intent requirement under the SLA.  Sidley could not take on the Boy Scouts engagement—even if it was reasonable or honestly mistaken in its belief—without informing Chubb and obtaining its written consent.  Relatedly, Chubb had no ethical or legal duty—or even reason—to question its lawyer's assurance that there was no problem.  And Sidley admitted that it gave such assurance to Chubb in October 2018, as well as later in December 2018 and 2019, when it accepted a new matter involving a second Boy Scouts reinsurance dispute for Chubb.

---

[3]  *See In re Congoleum Corp.*, 426 F.3d 675, 691 (3d Cir. 2005).
[4]  *Celgene Corp. v. KV Popharm. Co.*, No. 07-4819SDW, 2008 WL 2937415, at *7 (D.N.J. July 29, 2008) (quoting *Baldasarre v. Butler*, 625 A.2d 458, 464 (1993)).

Attorneys must bear the consequences of their mistaken no-conflict calls. Where a lawyer fails to investigate adequately whether a conflict exists, that is all the more reason to disapprove the retention.[5] Here, Sidley has put no facts before the Court about its conflicts investigation, if any, or demonstrated the adequacy of that diligence, other than William Sneed's testimony that he has never believed that underlying coverage issues affect his reinsurance work. Similarly, Sidley adduced no evidence about the basis for the assurance in December 2018 that there is no problem, other than a conversation Mr. Sneed had with the originating partner for the Boy Scouts, James Conlon. Though he lists on his firm bio the Boy Scouts as his first "representative" engagement, Mr. Conlon was noticeably absent from this proceeding.[6] There is thus no evidence of a reasonable or adequate conflicts search here or that Chubb gave its written consent to a concurrent engagement. And while Sidley suggests that the Boy Scouts instructed it to keep Chubb in the dark, it has offered nothing from the Boy Scouts.

Of course, the evidence shows that that there was a conflict—and that Sidley even knew about it. In retrospect, it is apparent that Sidley admitted adversity when it requested a prospective waiver from Chubb in January 2019, stating that it wished to make clear that "we may be ***directly adverse to you in the bankruptcy proceeding***."[7] Sidley then specifically noted that the adversity may involve "***confirming or supporting a plan over*** creditor or ***insurer objections***."[8] Sidley's only explanation for this devastating admission is that it sent subsequent communications that did not include that language. But why should that make any difference?

---

[5] *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 340 B.R. 740, 750 (Bankr. D. Del. 2006).
[6] *See* https://www.sidley.com/en/people/c/conlan-james-f (Last visited on May 5, 2020).
[7] Janine Panchok-Berry's April 30, 2020 Declaration Ex. 1 (emphasis added).
[8] *Id*. (emphasis added).

Even Sidley's expert did not opine that there was no conflict. Professor Rapoport merely observed that Sidley was reasonable in its belief that the reinsurance work was not substantially related to its work for the Boy Scouts. Her extremely narrow statement about an admitted non-issue speaks loudly to the existence of a conflict here. Professor Rapoport also not refute the bedrock principal of ethics law that a conflict is supposed to be analyzed at the time the conflict exists, not after the law firm attempts to withdraw unilaterally because its client will not waive the conflict.[9]

*Second*, the details about the timing on which Sidley focused are irrelevant—in addition to inaccurate (as Chubb was a client for years before Sidley started representing the Boy Scouts). Nothing in either Rule 1.7 or Rule 1.9 permits Sidley to continue with a conflicted relationship after it discovers its existence. Even if the Court were to analyze this as a former-client relationship and apply Rule 1.9, in the event of a conflict, Sidley must withdraw from both representations. What matters is adversity, which Sidley admitted.

## II. SIDLEY IS PRESUMED TO HAVE RECEIVED CONFIDENTIAL INFORMATION BASED ON ITS ROLE AS CENTURY'S COUNSEL.

Sidley claims that it only received non-privileged materials when it started working on the Chubb arbitrations regarding Boy Scouts reinsurance. Even if that claim were assumed to be true, and it were also true that Chubb is a former client, the Court "should not look at what information the attorney or law firm actually acquired from the former client but whether the attorney '*might* have acquired information related to the subject matter of his subsequent representation.'"[10] "The United States Court of Appeals for the Third Circuit 'has adopted the

---

[9] *See* Point I-B in Chubb's opening objection brief and cases cited there.

[10] *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 498 (D. Del. 2006) (quoting *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir.1972)); *see also In re Ram Mfg., Inc.*, 49 B.R. 53, 55 (Bankr. E.D. Pa. 1985)).

position an attorney should be disqualified if he may have acquired material that is substantially related to his disputed representation in the course of a prior employment.'"[11]  Therefore, "once an attorney-client relationship is established"—as is the case here—"a ***presumption arises*** that confidential information was conveyed to the attorney in the prior matter."[12]

      Sidley cannot simply assert that it only received documents that others could access and wash its hands of its ethical duties.  The documents that a lawyer received need not themselves be confidential for the lawyer to possess confidential information worthy of protection under the ethical rules.[13]  Judge Walrath made this point in response to a law firm's argument that it did not possess confidential information because it has only received non-propriety documents that an adversary could access.[14]  She explained:

> This misses the point.  The duty of confidentiality "applies not only to matters communicated in confidence by the client but also to ***all information*** relating to the representation, ***whatever its source***."  Milbank's own legal conclusions about the Credit Documents and advice to Stanfield are particularly confidential.[15]

Chubb witness Christine Russell echoed this very point when she explained that the confidences she exchanged with Mr. Sneed was not just about the documents provided, but about the conversations you have where you "tell your lawyer . . . what's been keeping you up at night."[16]  Joshua Schwartz similarly testified that he discussed with Mr. Sneed privileged and strategic issues about the underlying coverage cases.[17]  Sidley did not even try to rebut this evidence.

---

[11]  *In re Ram Mfg., Inc.*, 49 B.R. 53, 55 (Bankr. E.D. Pa. 1985) (quoting *Akerly v. Red Barn System, Inc.,* 551 F.2d 539, 544 n. 12 (3d Cir.1977)).

[12]  *Id.* (emphasis added).

[13]  *In re Meridian Auto. Sys.-Composite Operations, Inc.*, 340 B.R. 740, 747 (Bankr. D. Del. 2006).

[14]  *Id.*

[15]  *Id.* (quoting Model R. Prof'l Conduct 1.6, cmt. [3]).

[16]  Testimony of Christine Russell, May 4, 2020 Hearing Transcript ("Hr'g Tr.") at 151:25–152:5.

[17]  Testimony of Joshua Schwartz, Hr'g Tr. at 207:1–4, 8–10.

The proof Chubb offered more than justifies the presumption that the law implies. If the Court were to accept Mr. Sneed's description in his declaration of his legal engagement and how the Boy Scouts have described the issues currently disputed between them and Chubb in its pleading, Sidley's work overlaps with matters in dispute between the Boy Scouts and Chubb:

| Matters Mr. Sneed's Admits in His Declaration Were At Issue in His legal Representation of Chubb | Boy Scouts Request for Relief Against Chubb in Pending Litigation |
|---|---|
| **Allocation**<br><br>"Century had originally allocated the claim payments to the underlying BSA policies pursuant to. . ." (Sneed Decl. ¶ 13, ECF No. 532)<br><br>Referring to work on Century bills "that spread its defense and indemnity payments for each individual abuse claim across all policy years during which abuse took place. (Sneed Decl. ¶ 15, ECF No. 532) | **Allocation**<br><br>Whether INA and Century are barred "from allocating liability for Underlying Lawsuits to insurance policies for each year of abuse." (April 14, 2020 Panchok-Berry Decl. Ex. D at 20, ECF No. 437) |
| **Occurrence**<br><br>Century "accumulated multiple individual claims as a single 'occurrence' under the reinsurance treaties." (Sneed Decl. ¶ 15, ECF No. 532) | **Occurrence**<br><br>Which insurance policies the FEA's definition of "occurrence," as the first instance of abuse even if abuse was ongoing, applies to. (April 14, 2020 Panchok-Berry Decl. Ex. D at 8–9, 20, ECF No. 437) |

As the Court heard from witnesses at the hearing, the Boy Scouts have expressly targeted discovery at the work Sidley has done representing Chubb. The evidence in the record shows that the Boy Scouts are seeking the following:

1. Documents and communications between Century and its ***Reinsurers*** on the Boy Scouts' policies, including but not limited to submissions in connection with the Lloyd's arbitration and the related litigation in the District of Massachusetts, in which Sidley represented Century.[18]

2. Documents and communications between Century and its ***Reinsurers*** regarding the Boy Scouts, their insurance policies, abuse claims against the Boy Scouts, and claims for coverage of those claims or any other insurance claims made by the Boy Scouts.[19]

---

[18] April 14, 2020 Panchok-Berry Decl. Ex. F at 8–9, ECF No. 437.

[19] *Id.* Ex. F at 12.

3. Identify all litigation involving Century and the *Reinsurers* of the Subject Insurance Policies involving the Sexual Abuse Claims, including but not limited to (1) the arbitration between Century and the Reinsurers and (2) litigation with Lloyd's in the District of Massachusetts, in which Sidley represented Century.[20]

4. Identify all communications with the *Reinsurers*, dating back to 2008, regarding the relevant abused claims against the Boy Scouts.[21]

Wearing its hat as the Boy Scouts' lawyer, Sidley is silent about why the Boy Scouts contend that Sidley's reinsurance work for Chubb is relevant to the Boy Scouts-Chubb disputes. While it is true that Century has objected on various grounds to this discovery, including relevance, that is entirely beside the point. The fact that the Boy Scouts have not dropped the requests leaves the issue in dispute, which makes it relevant to this proceeding and is an example of the adversity between Chubb and the Boy Scouts.

### III. THE RETENTION APPLICATION MUST FAIL BECAUSE IT WOULD GIVE RISE TO THE APPEARANCE OF IMPROPRIETY.

In the face of the facts here, even if the Court were to conclude that the evidence is disputed about whether there is a conflict, the glaring appearance of impropriety bars the retention application. That appearance of impropriety would cast a shadow over the entire bankruptcy and affect whatever reorganization plan the Court finally approves. Much of the work from now until that date and any subsequent appeals could go to waste.

*Apeldyn Corp.* is instructive, where after determining it had no conflict, a law firm and proceeded with the representation, ultimately leading to disqualification under Rule 1.9.[22] The court considered both whether the matters were substantially related and whether there was an appearance of impropriety because the "maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important, a court may

---

[20] *Id.* Ex. G at 8–9.

[21] *Id.* Ex. G at 9 (emphasis added).

[22] *Apeldyn Corp. v. Samsung Elecs. Co.*, 693 F. Supp. 2d 399 (D. Del. 2010).

-7-

disqualify an attorney for failing to avoid even the appearance of impropriety."[23]  The court went on to explain that "any doubt as to the propriety of the representation should be resolved in favor of disqualification."[24]

The same doubt—to the extent it exists in the Court's mind—must be resolved against approving the retention application.  "Indeed, the courts have gone so far as to suggest that doubts as to the existence of an asserted conflict of interest should be resolved in favor of disqualification."[25]  The court's duty to supervise ethical conduct, a duty that is "designed to protect the public interest and not merely the interest of the particular moving party," is heightened in the bankruptcy context.[26]

## RESPONSE TO THE COURT'S SECOND QUESTION

The Court also asked about the significance of Chubb's insurance.  While Chubb's view is that this question has no bearing on whether Sidley has an ethical conflict, and without compromising Chubb's position in the coverage dispute with the Boy Scouts, the response is as follows: Chubb is alleged to have issued primary policies covering periods from 1/1/1962–1/1/72 and 1/1/1978–3/1/96.  The primary policies in effect from 1/1/1983–3/1/86 have been exhausted.  Chubb is alleged to have issued excess policies at various times beginning in March 1969.  Chubb refers the Court to the Boy Scouts' information brief for a further statement of its allegations about its insurance program.

---

[23] *Id*. at 404 (internal citations and quotations omitted).
[24] *Id*. at 404 (internal citations and quotations omitted).
[25] *In re Meridian*, 340 B.R. at 749.
[26] *In re Meridian*, 340 B.R. at 749.

**CONCLUSION**

Century respectfully requests that the Court deny Debtors' application to retain Sidley and grant such other relief as is just and proper.

Dated: May 6, 2020
       Wilmington, Delaware

Respectfully Submitted,

By: */s/ Stamatios Stamoulis*
    Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone:  302 999 1540
Facsimile:  302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone:  212 326 2000
Facsimile:  212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*