## EXHIBIT 1

**Amended Quinn Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|                              |   |                          |
|------------------------------|---|--------------------------|
| *In re:*                     | : | Chapter 11               |
|                              | : |                          |
| BOY SCOUTS OF AMERICA        | : | Case No. 20-10343 (LSS)  |
| AND DELAWARE BSA, LLC[1]     | : |                          |
|                              | : | (Jointly Administered)   |
| Debtors.                     | : |                          |

**AMENDED DECLARATION OF KAMI E. QUINN IN SUPPORT OF
THE APPLICATION OF THE FUTURE CLAIMANTS'
REPRESENTATIVE FOR AN ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF GILBERT LLP AS SPECIAL
INSURANCE COUNSEL, *NUNC PRO TUNC* AS OF MARCH 19, 2020**

I, Kami E. Quinn, under penalty of perjury declare as follows:

1.      I am a partner at the law firm of Gilbert, LLP ("Gilbert" or the "Firm"), located at 1100 York Avenue, NW, Suite 700, Washington, DC 20005.  I am a member in good standing of the Bars of the District of Columbia, the Commonwealth of Virginia, and the Third Circuit Court of Appeals.  There are no disciplinary proceedings against me.

2.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other Gilbert professionals or paraprofessionals or learned from my review of relevant documents.  To the extent any information disclosed herein requires amendment or modification as additional party in interest information becomes available to Gilbert, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

3.      I submit this declaration in support of the *Application of the Future Claimants' Representative for an Order Authorizing the Retention and Employment of Gilbert LLP as*

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Special Insurance Counsel* Nunc Pro Tunc *to March 19, 2020* (the "Application"), pursuant to sections 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Background

4.      On February 18, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 (the "Chapter 11 Cases") of the Bankruptcy Code (the "Code"). The Debtors continue to operate and maintain their non-profit organization as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.      On March 4, 2020, the Office of the United States Trustee formed the Official Committee of Tort Claimants ("Committee").

6.      On March 18, 2020, the Debtors filed a motion for entry of an order appointing James L. Patton, Jr., as Legal Representative for Future Claimants, *nunc pro tunc* to the Petition Date. The order appointing James L. Patton, Jr., as the Future Claimants' Representative, ("FCR") was entered on April 24, 2020.

7.      The Debtors filed these Chapter 11 Cases after negotiations between the Debtors, the FCR, and other stakeholders were unsuccessful. The purpose of the negotiations was to develop a pre-packaged Chapter 11 plan that would provide the establishment of a trust and an injunction to channel abuse-related claims to such trust for resolution and payment ("Pre-packaged Plan"). A central component of the Pre-packaged Plan was the Debtors' insurance coverage.

8.    To facilitate negotiations over, and the preparation of the Prepackaged Plan, the

Debtors entered an agreement on December 12, 2018, with the FCR to serve as pre-petition FCR

on behalf of future claimants.  Due to Gilbert's extensive experience and expertise related to

mass-tort insurance coverage issues, the FCR employed Gilbert to analyze the Debtors'

insurance policies, provide advice on insurance-related issues, and potentially negotiate with

BSA and the other stakeholders.

9.    The Debtors agreed to pay the pre-petition professionals engaged by the FCR.

Gilbert received a total of $196,275.94 from the Debtors for pre-petition services and costs,

summarized as follows:

| Invoice | Date | Fees | Costs | Total Billed | Payment | Payment Date |
|---|---|---|---|---|---|---|
| 11316320 | 4/24/2019 | $1,556.50 | $0.00 | $1,556.50 | $1,556.50 | 5/8/2019 |
| 11316569 | 5/22/2019 | $48,855.00 | $852.64 | $49,707.64 | $49,707.64 | 5/29/2019 |
| 11316807 | 6/21/2019 | $19,077.00 | $0.00 | $19,077.00 | $19,077.00 | 6/26/2019 |
| 11317104 | 7/17/2019 | $34,021.00 | $613.86 | $34,634.86 | $34,634.86 | 7/26/2019 |
| 11317355 | 8/20/2019 | $23,448.50 | $1,603.04 | $25,051.54 | $25,051.54 | 8/28/2019 |
| 11317468 | 9/20/2019 | $33,466.50 | $826.19 | $34,292.69 | $34,292.69 | 10/9/2019 |
| 11317911 | 10/24/2019 | $6,528.50 | $58.72 | $6,587.22 | $6,587.22 | 11/6/2019 |
| 11318203 | 11/14/2019 | $3,217.50 | $41.11 | $3,258.61 | $3,258.61 | 12/5/2019 |
| 11318437 | 12/13/2019 | $19,926.50 | $2,183.38 | $22,109.88 | $22,109.88 | 12/20/2019 |
| Total | | $190,097.00 | $6,178.94 | $196,275.94 | $196,275.94 | |

Gilbert has been compensated in full for all services provided pre-petition; no unpaid fees or out-

of-pocket costs are owed to Gilbert at this time as a result of its pre-petition work for the FCR.

Gilbert still holds a $150,000.00 retainer that was paid pre-petition by the Debtors.

### Qualifications of Professionals

10.    The professionals at Gilbert have substantial experience in bankruptcy cases,

including bankruptcies involving mass-tort insurance issues, and have participated in numerous

proceedings before various bankruptcy courts. I believe that Gilbert attorneys have the

experience necessary to represent the FCR and negotiate the complex insurance matters

presented by these Chapter 11 Cases, and respectfully submit that Gilbert is qualified to serve the FCR as special insurance counsel.

11.    The FCR selected Gilbert as insurance counsel because of Gilbert's experience and expertise regarding liability insurance coverage issues, in particular experience and expertise regarding preservation, evaluation, and maximization of coverage in the context of a mass tort bankruptcy proceeding. The potential availability of insurance is an important issue in a mass-tort bankruptcy case and such insurance should provide a significant source of funding for claimants in these Chapter 11 Cases.

**Scope of Services**

12.    As part of Gilbert's engagement, subject to the Proposed Order attached to the Application as Exhibit B and any further order of the Court, I anticipate that Gilbert will, without limitation, perform the following services:

   a.  analyzing all insurance policies under which the Debtor may have rights and providing strategic advice to the FCR on steps to be taken to preserve and maximize insurance coverage;

   b.  attending meetings and negotiating with representatives of the Debtors, their insurance carriers, and other parties in interest, including local councils, in these Chapter 11 Cases related to the preservation of insurance coverage and resolution of disputed insurance coverage;

   c.  assisting the FCR with any insurance-related matters arising in connection with the formulation of a plan of reorganization and funding of a trust for the payment of abuse claims established under a plan;

   d.  performing such other insurance-related tasks as may be necessary during the course of these Chapter 11 Cases.

13.    The FCR requires knowledgeable counsel to render these professional services. As noted above, Gilbert has substantial expertise in all of these areas. Accordingly, Gilbert is

well qualified to perform these services and represent the interests of the FCR in these Chapter 11 Cases.

14.     Subject to this Court's approval of the Application, Gilbert is willing to serve as special insurance counsel to the FCR and perform the services described above.

## Gilbert LLP Representations

15.     Gilbert currently serves as special insurance counsel to (a) the asbestos claimants' committee in the Sepco Corporation bankruptcy, (b) both the committee of unsecured creditors and the future claimants' representative in the Rapid-American Corporation bankruptcy, (c) the asbestos claimants' committee in the Duro Dyne Corporation bankruptcy, (d) both the tort claimants' committee and the future claimants' representative in the Imerys Talc America bankruptcy, and (e) the asbestos personal injury claimants committee in the ON Marine Services Company LLC bankruptcy, which are all chapter 11 cases.[2]  Gilbert also serves as special insurance counsel to Fraser's Boiler Service, Inc., Debtor, in its bankruptcy and Charles M. Forman, chapter 7 Trustee in the National Services Industries, Inc. bankruptcy.

16.     Gilbert previously acted as counsel to debtors, creditors' committees, future claimants' representatives, or other parties in other mass tort cases, which have now concluded. Such prior representations include, but are not limited to:

    a.  Official Committee of Unsecured Creditors in the Church Street
        Health Management LLC, *et al.,* chapter 11 bankruptcy
        proceeding;

    b.   Official Committee of Unsecured Creditors in the City Homes
         III LLC., *et al*., chapter 11 bankruptcy proceeding;

---

[2] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, is counsel to the future claimants' representative in the Sepco, Duro Dyne, Rapid-American, and Imerys bankruptcy cases. Mr. Patton is the future claimants' representative in the Imerys case.

      c.    Official Committee of Asbestos Personal Injury Claimants and the Legal Representative of Holders of Future Asbestos Demands in the Geo. V. Hamilton, Inc., bankruptcy proceeding;

      d.    Official Committee of Unsecured Creditors in the Metex Mfg. Corp. (f/k/a Kentiles Floors, Inc.) chapter 11 bankruptcy proceeding;[3]

      e.    Official Committee of Tort Claimants in the Saint Vincents Catholic Medical Centers of New York d/b/a St. Vincents Catholic Medical Centers, *et al.*, chapter 11 bankruptcy proceeding; and

      f.    Official Committee of Unsecured Creditors Tort Claimants in the TK Holdings, Inc., *et al*., chapter 11 bankruptcy proceeding.

    17.    Gilbert has been retained as insurance counsel by various personal injury trusts.[4]

Some of the representations have concluded. The list of the personal injury trusts for which

Gilbert LLP currently represents is as follows:

      a.    Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust;

      b.    Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust;

      c.    Combustion Engineering 524(g) Asbestos Personal Injury Trust;

      d.    Federal-Mogul Asbestos Personal Injury Trust;

      e.    Hercules Chemical Company, Inc. Asbestos Trust;

      f.    PSAN PI/WD Trust d/b/a Takata Airbag Trust; and

      g.    Victims Restitution Trust for Insys Therapeutics, Inc. and its Affiliated Debtors.

Gilbert may be retained by other mass tort, asbestos, or other personal injury trusts as other

---

[3] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, was counsel to the future claimants' representative in the Metex case.

[4] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, is counsel to the future claimants' representative in the Babcock & Wilcox and Federal-Mogul trusts.

debtors emerge from bankruptcy.

18.     Aside from insurance-related bankruptcy and trust matters, Gilbert has represented, and continues to represent, numerous entities on insurance issues arising from asbestos, other tort and non-tort matters, including in litigation, and will continue to do so. Gilbert also provides general strategic advice to tort defendants concerning, among other things, their mass-tort liabilities.

19.     Gilbert also has been, and will continue to be, co-counsel with several law firms in a variety of other mass tort matters, including consumer-rights class action litigation and opioid litigation. Some of these firms may represent, among others, survivors of sexual abuse, and some of these firms may represent claimants against the Debtors. The Firm does not represent any claimant in their claim against the Debtors.

### Disinterestedness

20.     In connection with its proposed retention by the FCR in these Chapter 11 Cases, Gilbert's conflicts department, under the supervision of Gilbert attorneys involved in representing the FCR, has undertaken the procedures described below to determine whether there exists any conflict or other relationship that might cause Gilbert not to be a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and whether Gilbert represents any person or entity having an adverse interest in connection with these Chapter 11 Cases.

21.     Gilbert maintains and systematically updates its conflict check system in the regular course of its business and it is the regular practice of Gilbert to make and maintain these records. The conflict system maintained by Gilbert is designed to include (a) every active matter on which Gilbert is retained, (b) every closed matter on which Gilbert has been engaged since 2001, (c) the entity by which it is now or has been engaged, (d) the identity of related parties,

(e) the identify of adverse parties, and (f) the attorney at Gilbert that is knowledgeable about the matter. It is the policy of Gilbert that no new matter may be accepted or opened within the Firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each matter for conflicts, including the identity of the prospective client, the matter, and the related and adverse parties. Accordingly, the database is updated for every new matter undertaken by Gilbert. The scope of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

22.     Gilbert's conflict department has searched, under the direction of Gilbert attorneys involved in representing the FCR, its electronic basis for its connections to the entities listed on potential parties in interest attached hereto as the "Schedules".  To the best of my knowledge, the same Potential Parties in Interest list has been used by the Debtors and other professionals in these Chapter 11 Cases for conflicts purposes.

23.     Gilbert has reviewed all current and former clients for the last five (5) years and, except for those identified on Appendix 1 attached hereto, there are no other representations or connection with parties on the Schedules.

24.     To ascertain Gilbert's "connections," as that term is used in Federal Rule of Bankruptcy Procedure 2014, with the Debtors and other parties-in-interest, certain of my colleagues and I reviewed the list of parties in interest and counsel that is attached hereto as the Schedules.  The list includes (a) the Debtors and affiliates, including previous names of Debtors, (b) the Debtors' current and former officers and directors, (c) the Debtors' bankruptcy counsel, professionals and other professionals, (d) pre-petition Future Claimants' Representative and professionals, (e) members of the Committee, representatives, and proposed counsel for the Committee, (f) the top plaintiffs' law firms representing sexual abuse claimants, (g) insurers and

issuers of surety bonds, (h) unsecured creditors and vendors, (i) significant customers, (j) taxing and other significant governmental authorities, (k) the United States Trustee and persons employed in that office, and (l) Judges for the United States Bankruptcy Court for the District of Delaware, staff and clerk of the Court. Gilbert also conducted an electronic search of its conflicts database of the parties identified on the Schedules.

25.     Attached hereto as <u>Appendix 1</u> is a summary of the results of the database search of the parties on the Schedules.  In verifying the connections disclosed in <u>Appendix 1</u>, I have relied upon the professionals of Gilbert and the investigation they have undertaken to compile the information upon which such disclosures are based.  Because of the number of official committees representing claimants and trusts that Gilbert has represented or is currently representing, it is possible that there are other law firms on the Schedules who also represent sexual abuse claimants against the Debtors, that also represent or have represented one or more members of such other committees for which Gilbert does or did serve as counsel.

26.     No Gilbert attorneys or paralegals currently working on this matter have any current or prior involvement with the Debtors' organizations, including as a scout or scoutmaster.  One Gilbert attorney who worked on this matter pre-petition was formerly a Cub Scout.  No Gilbert attorneys or paralegals with current or prior involvement with the Debtors' organizations, including as a scout or scoutmaster, will work on this matter going forward without additional disclosure to the Court as required by Bankruptcy Rule 2014(a).

27.     Other than as set forth above and described in <u>Appendix 1</u> or disclosed herein or in the Application, to the best of my knowledge and information after due inquiry, neither Gilbert nor any of its attorneys has any other interest or connection with the Debtors, their creditors, the United States Trustee or any person employed in that Office, the Judges for the

United States Bankruptcy Court for the District of Delaware, or any other known party-in-interest.  It is possible that Gilbert will represent in the future, in matters unrelated to these Chapter 11 Cases, entities that are or will become parties in interest herein.

28.    The information listed on the Schedules may have changed without my knowledge and may change during the pendency of these Chapter 11 Cases.  Should such information change, Gilbert will promptly review its files against any updated parties list received from the Debtors.  Gilbert will update this Declaration, as described below, should Gilbert become aware of new material information during the pendency of these Chapter 11 Cases pursuant to the procedures described herein.  To the extent any new relevant facts or relationships are discovered or arise in the course of such review, Gilbert will promptly make additional disclosure to the Court as required by Bankruptcy Rule 2014(a).

29.    Gilbert does not currently employ or intend to employ contract attorneys in these Chapter 11 Cases. To the extent Gilbert employs contract attorneys, Gilbert will undertake a conflict search pertaining to each contract attorney and will make additional disclosure to the Court as required by Bankruptcy Rule 2014(a).  Gilbert will not charge a markup to the Debtors with respect to fees billed by any such contract attorney.

30.    Approval of the proposed engagement of Gilbert is not prohibited by Bankruptcy Rule 5002. I am not related, and to the best of my knowledge, no attorney at Gilbert is related, to the United States Bankruptcy Judge assigned to these Chapter 11 Cases, the UST for the District of Delaware, or any of their employees.

<u>**Specific Disclosures**</u>

31.    Generally, it is Gilbert's policy to disclose clients in the capacity that they first appear in a conflict search. For example, if a client has already been disclosed in this Declaration

in one capacity (*e.g.*, as a bank), and the client appears in a subsequent conflict search in a

different capacity (*e.g.*, as a bondholder), Gilbert will not disclose the same client again in

supplemental declarations, unless the circumstances are such in the latter capacity that additional

disclosure is required.

 (a) <u>Relationships with the Debtors and the Debtors' Affiliates and Professionals</u>
   None, except what is disclosed on Appendix 1.

 (b) <u>Relationships with Creditors, Equity Security Holders, and Other Parties in Interest</u>
   None, except as disclosed on Appendix 1.

 (c) <u>Relationships with Other Professionals</u>
   None, except what is disclosed on Appendix 1.

 (d) <u>Other Potential Connections to the Debtors</u>
   None, except what is disclosed on Appendix 1.

32. In addition, while we believe our inquiries as described above are reasonably

designed to discover significant connections between Gilbert and the Debtors, its creditors, and

other parties in interest for the purposes of Bankruptcy Rule 2014, it is likely that additional

direct or indirect connections exist given the nature of the Debtors' businesses, Gilbert's practice,

and the large number of parties in interest in these Chapter 11 Cases. Possible other connections

include, without limitation:

 (a) Gilbert may represent or may have represented creditors, equity security holders, or interested parties that are deemed Potential Parties in Interest, such as persons and entities operating under different names not included on the Schedules, or persons or entities who develop connections to these Chapter 11 Cases in the future;

 (b) Gilbert may represent persons or entities that own debt or equity securities in interested parties, are competitors of the Debtors or interested parties;

 (c) As part of its practice, Gilbert is involved in litigation and transactions involving many different attorneys, accountants, and consultants some of which may represent the Debtors or interested

parties. The conflict system maintained by Gilbert and other sources we consulted that are described above will not typically identify attorneys, accountants, or consultants involved in every transaction or matter in which we represent a party;

(d)      Gilbert partners and employees may now or in the future own securities - directly or through mutual funds, trusts and portfolios - issued by interested parties;

(e)      Gilbert and certain of its partners and employees may maintain credit facilities and pension, insurance, investment, and depository accounts with interested parties. Gilbert partners and employees may be former employees of interested parties; and

(f)      Family members of Gilbert's partners or employees may be current or former employees of the Debtors or interested parties or may have other connections with the Debtors or interested parties.

### Affirmative Statement of Disinterestedness

33.      Based solely on the conflicts procedures conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Gilbert is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) Gilbert is independent of the Debtors and other parties in interest, (c) Gilbert does not have any interest that would adversely affect Gilbert's ability to advise the FCR in connection with these Chapter 11 Cases or that is materially adverse to the FCR or the future claimants, and (d) Gilbert has no connection to the Debtors, their creditors or any other party in interest except as disclosed herein.

### Compensation

34.      Gilbert will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with Gilbert's representation of the FCR in the Debtors' Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, any case- specific fee protocols approved by the Court after notice and a hearing and any other applicable procedures and orders of the Court. Gilbert intends to comply with the *Order Under 11 U.S.C. §§ 105(a) and*

*331, Fed. R. Bankr. P. 2016(a), and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Professionals* which establishes procedures and policies for interim compensation and reimbursement of professionals. [D.I. 301]. Gilbert also intends to make a reasonable effort to comply with the UST's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Large chapter 11 Cases Effective as of November 1, 2013 (the "Revised U.S. Trustee Guidelines"), in connection with this Application and the interim and final fee applications to be filed by Gilbert in these Chapter 11 Cases.

35.    Gilbert has agreed that it will charge for its legal services to the FCR on an hourly basis at the rates generally used by Gilbert under its normal billing practices. It is anticipated that the primary attorneys who will represent the FCR are Kami E. Quinn (whose current hourly rate is $775), Emily Grim (whose current hourly rate is $590), and Meredith Neely (whose current hourly rate is $475).

36.    It is anticipated that other Gilbert attorneys or paraprofessionals will provide legal services on behalf of the FCR in connection with the matters described herein. Gilbert and the FCR have agreed to hourly rates ranging from $635 to $1,300 per hour for partners, $620 per hour for of counsel, $290 to $590 per hour for associates and $185 to $285 per hour for paralegals.

37.    The hourly rates set forth above are Gilbert's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate Gilbert for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Gilbert has informed the FCR that its hourly rates are subject to periodic adjustment in accordance with Gilbert's

13

established billing practices and procedures.

38.    In addition to the hourly rates set forth above, it is Gilbert's policy to charge its clients in all areas of practice for expenses incurred in connection with the client's case. The expenses charged to clients include, but are limited to, conference call charges, major photocopying charges, courier and overnight delivery charges, travel-related charges (including mileage, parking, air or train fare, lodging, meals, and ground transportation), computerized research charges, filing fees, and any third-party costs incurred related to a representation. Gilbert will charge for these expenses in a manner and at rates consistent with charges made generally to Gilbert's other clients and the Local Rules.

39.    Gilbert will maintain detailed records of fees and expenses incurred in connection with the rendering of the legal services described herein, in accordance with applicable rules and guidelines.

<u>Statement Pursuant to Revised U.S. Trustee Guidelines</u>

40.    Pursuant to paragraph D, section 1 of the Revised U.S. Trustee Guidelines, Gilbert responds to the questions set forth therein as follows:

Question:    Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?

Response:    No.

Question:    Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

Response:    No.

Question:    If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material

financial terms have changed post-petition,
explain the difference and the reasons for the
difference.

Response:    Gilbert represented the FCR prepetition.
In the summer of 2019, Gilbert increased its
billing rates as follows:
K. Quinn's rate changed from $700 to $775
E. Grim's rate changed from $575 to $590
M. Neely's rate changed from $400 to $475

Question:    Has your client approved your prospective
budget and staffing plan, and, if so, for what
budget period?

Response:    No, a budget has not been proposed.

41.    I am authorized to submit this Declaration on behalf of Gilbert, and if called upon

to testify, I would testify competently to the facts set forth herein.

42.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated: May 6, 2020
Washington, DC

  _/s/ Kami E. Quinn_ _____
Kami E. Quinn

**EXHIBIT 2**

**Blackline Comparing Quinn Declaration to Amended Quinn Declaration**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| *In re:* | : | Chapter 11 |
|  | : |  |
| BOY SCOUTS OF AMERICA | : | Case No. 20-10343 (LSS) |
| AND DELAWARE BSA, LLC[1] | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

**AMENDED DECLARATION OF KAMI E. QUINN IN SUPPORT OF**
**THE APPLICATION OF THE FUTURE CLAIMANTS'**
**REPRESENTATIVE FOR AN ORDER AUTHORIZING THE**
**RETENTION AND EMPLOYMENT OF GILBERT LLP AS SPECIAL**
**INSURANCE COUNSEL, *NUNC PRO TUNC* AS OF MARCH 19, 2020**

I, Kami E. Quinn, under penalty of perjury declare as follows:

1.      I am a partner at the law firm of Gilbert, LLP ("Gilbert" or the "Firm"), located at 1100 York Avenue, NW, Suite 700, Washington, DC 20005.  I am a member in good standing of the Bars of the District of Columbia, the Commonwealth of Virginia, and the Third Circuit Court of Appeals.  There are no disciplinary proceedings against me.

2.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other Gilbert professionals or paraprofessionals or learned from my review of relevant documents.  To the extent any information disclosed herein requires amendment or modification as additional party in interest information becomes available to Gilbert, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

3.      I submit this declaration in support of the *Application of the Future Claimants' Representative for an Order Authorizing the Retention and Employment of Gilbert LLP as*

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Special Insurance Counsel* Nunc Pro Tunc *to March 19, 2020* (the "<u>Application</u>"), pursuant to sections 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

**<u>Background</u>**

4.      On February 18, 2020 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under chapter 11 (the "<u>Chapter 11 Cases</u>") of the Bankruptcy Code (the "<u>Code</u>").  The Debtors continue to operate and maintain their non-profit organization as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.      On March 4, 2020, the Office of the United States Trustee formed the Official Committee of Tort Claimants ("<u>Committee</u>").

6.      On March 18, 2020, the Debtors filed a motion for entry of an order appointing James L. Patton, Jr., as Legal Representative for Future Claimants, *nunc pro tunc* to the Petition Date.  The order appointing James L. Patton, Jr., as the Future Claimants' Representative, ("<u>FCR</u>") was entered on April 24, 2020.

7.      The Debtors filed these Chapter 11 Cases after negotiations between the Debtors, the FCR, and other stakeholders were unsuccessful.  The purpose of the negotiations was to develop a pre-packaged Chapter 11 plan that would provide the establishment of a trust and an injunction to channel abuse-related claims to such trust for resolution and payment ("<u>Pre-packaged Plan</u>").  A central component of the Pre-packaged Plan was the Debtors' insurance coverage.

2

8.      To facilitate negotiations over, and the preparation of the Prepackaged Plan, the
Debtors entered an agreement on December 12, 2018, with the FCR to serve as pre-petition FCR
on behalf of future claimants.  Due to Gilbert's extensive experience and expertise related to
mass-tort insurance coverage issues, the FCR employed Gilbert to analyze the Debtors'
insurance policies, provide advice on insurance-related issues, and potentially negotiate with
BSA and the other stakeholders.

9.      The Debtors agreed to pay the pre-petition professionals engaged by the FCR.
Gilbert received a total of $196,275.94 from the Debtors for pre-petition services and costs~~.
Furthermore, Gilbert currently holds a $150,000.00 retainer that was paid by the Debtors.~~ ,
summarized as follows:

| Invoice | Date | Fees | Costs | Total Billed | Payment | Payment Date |
|---|---|---|---|---|---|---|
| 11316320 | 4/24/2019 | $1,556.50 | $0.00 | $1,556.50 | $1,556.50 | 5/8/2019 |
| 11316569 | 5/22/2019 | $48,855.00 | $852.64 | $49,707.64 | $49,707.64 | 5/29/2019 |
| 11316807 | 6/21/2019 | $19,077.00 | $0.00 | $19,077.00 | $19,077.00 | 6/26/2019 |
| 11317104 | 7/17/2019 | $34,021.00 | $613.86 | $34,634.86 | $34,634.86 | 7/26/2019 |
| 11317355 | 8/20/2019 | $23,448.50 | $1,603.04 | $25,051.54 | $25,051.54 | 8/28/2019 |
| 11317468 | 9/20/2019 | $33,466.50 | $826.19 | $34,292.69 | $34,292.69 | 10/9/2019 |
| 11317911 | 10/24/2019 | $6,528.50 | $58.72 | $6,587.22 | $6,587.22 | 11/6/2019 |
| 11318203 | 11/14/2019 | $3,217.50 | $41.11 | $3,258.61 | $3,258.61 | 12/5/2019 |
| 11318437 | 12/13/2019 | $19,926.50 | $2,183.38 | $22,109.88 | $22,109.88 | 12/20/2019 |
| | Total | $190,097.00 | $6,178.94 | $196,275.94 | $196,275.94 | |

~~9.~~      Gilbert has been compensated in full for all services provided pre-petition; no unpaid fees
or out-of-pocket costs are owed to Gilbert at this time as a result of its pre-petition work for the
FCR.  Gilbert still holds a $150,000.00 retainer that was paid pre-petition by the Debtors.

**Qualifications of Professionals**

10.      The professionals at Gilbert have substantial experience in bankruptcy cases,
including bankruptcies involving mass-tort insurance issues, and have participated in numerous
proceedings before various bankruptcy courts. I believe that Gilbert attorneys have the

3

experience necessary to represent the FCR and negotiate the complex insurance matters presented by these Chapter 11 Cases, and respectfully submit that Gilbert is qualified to serve the FCR as special insurance counsel.

11.     The FCR selected Gilbert as insurance counsel because of Gilbert's experience and expertise regarding liability insurance coverage issues, in particular experience and expertise regarding preservation, evaluation, and maximization of coverage in the context of a mass tort bankruptcy proceeding. The potential availability of insurance is an important issue in a mass-tort bankruptcy case and such insurance should provide a significant source of funding for claimants in these Chapter 11 Cases.

<u>**Scope of Services**</u>

12.     As part of Gilbert's engagement, subject to the Proposed Order attached to the Application as <u>Exhibit B</u> and any further order of the Court, I anticipate that Gilbert will, without limitation, perform the following services:

    a.  analyzing all insurance policies under which the Debtor may have rights and providing strategic advice to the FCR on steps to be taken to preserve and maximize insurance coverage;

    b.  attending meetings and negotiating with representatives of the Debtors, their insurance carriers, and other parties in interest, including local councils, in these Chapter 11 Cases related to the preservation of insurance coverage and resolution of disputed insurance coverage;

    c.  assisting the FCR with any insurance-related matters arising in connection with the formulation of a plan of reorganization and funding of a trust for the payment of abuse claims established under a plan;

    d.  performing such other insurance-related tasks as may be necessary during the course of these Chapter 11 Cases.

13.     The FCR requires knowledgeable counsel to render these professional services. As noted above, Gilbert has substantial expertise in all of these areas. Accordingly, Gilbert is

Formatted: Widow/Orphan control

4

well qualified to perform these services and represent the interests of the FCR in these Chapter 11 Cases.

14.    Subject to this Court's approval of the Application, Gilbert is willing to serve as special insurance counsel to the FCR and perform the services described above.

### Gilbert LLP Representations

15.    Gilbert currently serves as special insurance counsel to (a) the asbestos claimants' committee in the Sepco Corporation bankruptcy, (b) both the committee of unsecured creditors and the future claimants' representative in the Rapid-American Corporation bankruptcy, (c) the asbestos claimants' committee in the Duro Dyne Corporation bankruptcy, (d) both the tort claimants' committee and the future claimants' representative in the Imerys Talc America bankruptcy, and (e) the asbestos personal injury claimants committee in the ON Marine Services Company LLC bankruptcy, which are all chapter 11 cases.[2]  Gilbert also serves as special insurance counsel to Fraser's Boiler Service, Inc., Debtor, in its bankruptcy and Charles M. Forman, chapter 7 Trustee in the National Services Industries, Inc. bankruptcy.

16.    Gilbert previously acted as counsel to debtors, creditors' committees, future claimants' representatives, or other parties in other mass tort cases, which have now concluded. Such prior representations include, but are not limited to:

a.    Official Committee of Unsecured Creditors in the Church Street Health Management LLC, *et al.,* chapter 11 bankruptcy proceeding;

b.    Official Committee of Unsecured Creditors in the City Homes III LLC., *et al*., chapter 11 bankruptcy proceeding;

---

[2] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, is counsel to the future claimants' representative in the Sepco, Duro Dyne, Rapid-American, and Imerys bankruptcy cases. Mr. Patton is the future claimants' representative in the Imerys case.

      c.    Official Committee of Asbestos Personal Injury Claimants and the Legal Representative of Holders of Future Asbestos Demands in the Geo. V. Hamilton, Inc., bankruptcy proceeding;

      d.    Official Committee of Unsecured Creditors in the Metex Mfg. Corp. (f/k/a Kentiles Floors, Inc.) chapter 11 bankruptcy proceeding;[3]

      e.    Official Committee of Tort Claimants in the Saint Vincents Catholic Medical Centers of New York d/b/a St. Vincents Catholic Medical Centers, *et al.*, chapter 11 bankruptcy proceeding; and

      f.    Official Committee of Unsecured Creditors Tort Claimants in the TK Holdings, Inc., *et al.*, chapter 11 bankruptcy proceeding.

17.    Gilbert has been retained as insurance counsel by various personal injury trusts.[4]

Some of the representations have concluded. The list of the personal injury trusts for which

Gilbert LLP currently represents is as follows:

      a.    Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust;

      b.    Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust;

      c.    Combustion Engineering 524(g) Asbestos Personal Injury Trust;

      d.    Federal-Mogul Asbestos Personal Injury Trust;

      e.    Hercules Chemical Company, Inc. Asbestos Trust;

      f.    PSAN PI/WD Trust d/b/a Takata Airbag Trust; and

      g.    Victims Restitution Trust for Insys Therapeutics, Inc. and its Affiliated Debtors.[5]

---

[3] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, was counsel to the future claimants' representative in the Metex case.

[4] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, is counsel to the future claimants' representative in the Babcock & Wilcox and Federal-Mogul trusts.

[5] Mr. Patton's firm, Young Conaway Stargatt & Taylor, LLP, is counsel to the future claimants' representative in the Babcock & Wilcox and Federal-Mogul trusts.

Gilbert may be retained by other mass tort, asbestos, or other personal injury trusts as other debtors emerge from bankruptcy.

18.     Aside from insurance-related bankruptcy and trust matters, Gilbert has represented, and continues to represent, numerous entities on insurance issues arising from asbestos, other tort and non-tort matters, including in litigation, and will continue to do so. Gilbert also provides general strategic advice to tort defendants concerning, among other things, their mass-tort liabilities.

19.     Gilbert also has been, and will continue to be, co-counsel with several law firms in a variety of other mass tort matters, including consumer-rights class action litigation and opioid litigation. Some of these firms may represent, among others, survivors of sexual abuse, and some of these firms may represent claimants against the Debtors. The Firm does not represent any claimant in their claim against the Debtors.

### Disinterestedness

20.     In connection with its proposed retention by the FCR in these Chapter 11 Cases, Gilbert's conflicts department, under the supervision of Gilbert attorneys involved in representing the FCR, has undertaken the procedures described below to determine whether there exists any conflict or other relationship that might cause Gilbert not to be a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and whether Gilbert represents any person or entity having an adverse interest in connection with these Chapter 11 Cases.

21.     Gilbert maintains and systematically updates its conflict check system in the regular course of its business and it is the regular practice of Gilbert to make and maintain these records. The conflict system maintained by Gilbert is designed to include (a) every active matter on which Gilbert is retained, (b) every closed matter on which Gilbert has been engaged since

7

2001, (c) the entity by which it is now or has been engaged, (d) the identity of related parties,

(e) the identify of adverse parties, and (f) the attorney at Gilbert that is knowledgeable about the

matter. It is the policy of Gilbert that no new matter may be accepted or opened within the Firm

without completing and submitting to those charged with maintaining the conflict check system

the information necessary to check each matter for conflicts, including the identity of the

prospective client, the matter, and the related and adverse parties. Accordingly, the database is

updated for every new matter undertaken by Gilbert. The scope of the system is a function of the

completeness and accuracy of the information submitted by the attorney opening a new matter.

22.    Gilbert's conflict department has searched, under the direction of Gilbert

attorneys involved in representing the FCR, its electronic basis for its connections to the entities

listed on potential parties in interest attached hereto as the "<u>Schedules</u>".  To the best of my

knowledge, the same Potential Parties in Interest list has been used by the Debtors and other

professionals in these Chapter 11 Cases for conflicts purposes.

23.    Gilbert has reviewed all current and former clients for the last ~~three (3~~five (5)

years and, except for those identified on <u>Appendix 1</u> attached hereto, there are no other

representations or connection with parties on the Schedules.

24.    To ascertain Gilbert's "connections," as that term is used in Federal Rule of

Bankruptcy Procedure 2014, with the Debtors and other parties-in-interest, certain of my

colleagues and I reviewed the list of parties in interest and counsel that is attached hereto as the

Schedules.  The list includes (a) the Debtors and affiliates, including previous names of Debtors,

(b) the Debtors' current and former officers and directors, (c) the Debtors' bankruptcy counsel,

professionals and other professionals, (d) pre-petition Future Claimants' Representative and

professionals, (e) members of the Committee, representatives, and proposed counsel for the

Committee, (f) the top plaintiffs' law firms representing sexual abuse claimants, (g) insurers and issuers of surety bonds, (h) unsecured creditors and vendors, (i) significant customers, (j) taxing and other significant governmental authorities, (k) the United States Trustee and persons employed in that office, and (l) Judges for the United States Bankruptcy Court for the District of Delaware, staff and clerk of the Court. Gilbert also conducted an electronic search of its conflicts database of the parties identified on the Schedules.

25.     Attached hereto as Appendix 1 is a summary of the results of the database search of the parties on the Schedules.  In verifying the connections disclosed in Appendix 1, I have relied upon the professionals of Gilbert and the investigation they have undertaken to compile the information upon which such disclosures are based.  Because of the number of official committees representing claimants and trusts that Gilbert has represented or is currently representing, it is possible that there are other law firms on the Schedules who also represent sexual abuse claimants against the Debtors, that also represent or have represented one or more members of such other committees for which Gilbert does or did serve as counsel.

26.     No Gilbert attorneys or paralegals currently working on this matter have any current or prior involvement with the Debtors' organizations, including as a scout or scoutmaster.  One Gilbert attorney who worked on this matter pre-petition was formerly a Cub Scout.  No Gilbert attorneys or paralegals with current or prior involvement with the Debtors' organizations, including as a scout or scoutmaster, will work on this matter going forward without additional disclosure to the Court as required by Bankruptcy Rule 2014(a).

26.27.  Other than as set forth above and described in Appendix 1 or disclosed herein or in the Application, to the best of my knowledge and information after due inquiry, neither Gilbert nor any of its attorneys has any other interest or connection with the Debtors, their

9

creditors, the United States Trustee or any person employed in that Office, the Judges for the United States Bankruptcy Court for the District of Delaware, or any other known party-in-interest. It is possible that Gilbert will represent in the future, in matters unrelated to these Chapter 11 Cases, entities that are or will become parties in interest herein.

27.28.  The information listed on the Schedules may have changed without my knowledge and may change during the pendency of these Chapter 11 Cases. Should such information change, Gilbert will promptly review its files against any updated parties list received from the Debtors. Gilbert will update this Declaration, as described below, should Gilbert become aware of new material information during the pendency of these Chapter 11 Cases pursuant to the procedures described herein. To the extent any new relevant facts or relationships are discovered or arise in the course of such review, Gilbert will promptly make additional disclosure to the Court as required by Bankruptcy Rule 2014(a).

28.29.  Gilbert does not currently employ or intend to employ contract attorneys in these Chapter 11 Cases. To the extent Gilbert employs contract attorneys, Gilbert will undertake a conflict search pertaining to each contract attorney and will make additional disclosure to the Court as required by Bankruptcy Rule 2014(a). Gilbert will not charge a markup to the Debtors with respect to fees billed by any such contract attorney.

29.30.  Approval of the proposed engagement of Gilbert is not prohibited by Bankruptcy Rule 5002. I am not related, and to the best of my knowledge, no attorney at Gilbert is related, to the United States Bankruptcy Judge assigned to these Chapter 11 Cases, the UST for the District of Delaware, or any of their employees.

**Formatted:** Widow/Orphan control

<u>**Specific Disclosures**</u>

30.31.  Generally, it is Gilbert's policy to disclose clients in the capacity that they first

10

appear in a conflict search. For example, if a client has already been disclosed in this Declaration in one capacity (*e.g.*, as a bank), and the client appears in a subsequent conflict search in a different capacity (*e.g.*, as a bondholder), Gilbert will not disclose the same client again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

    (a)    <u>Relationships with the Debtors and the Debtors' Affiliates and Professionals</u>
None, except what is disclosed on Appendix 1.

    (b)    <u>Relationships with Creditors, Equity Security Holders, and Other Parties in Interest</u>
None, except as disclosed on Appendix 1.

    (c)    <u>Relationships with Other Professionals</u>
None, except what is disclosed on Appendix 1.

    (d)    <u>Other Potential Connections to the Debtors</u>
None, except what is disclosed on Appendix 1.

~~31.~~32.  In addition, while we believe our inquiries as described above are reasonably designed to discover significant connections between Gilbert and the Debtors, its creditors, and other parties in interest for the purposes of Bankruptcy Rule 2014, it is likely that additional direct or indirect connections exist given the nature of the Debtors' businesses, Gilbert's practice, and the large number of parties in interest in these Chapter 11 Cases. Possible other connections include, without limitation:

    (a)    Gilbert may represent or may have represented creditors, equity security holders, or interested parties that are deemed Potential Parties in Interest, such as persons and entities ~~with connections deemed less material than those of persons or entities deemed Potential Parties in Interest, persons or entities with affiliations but~~ operating under different names not included on the Schedules, or persons or entities who develop connections to these Chapter 11 Cases in the future~~.~~;

    (b)    Gilbert may represent persons or entities that own debt or equity securities in interested parties, are competitors of the Debtors

or interested parties.:

(c)     As part of its practice, Gilbert is involved in litigation and transactions involving many different attorneys, accountants, and consultants some of which may represent the Debtors or interested parties. The conflict system maintained by Gilbert and other sources we consulted that are described above will not typically identify attorneys, accountants, or consultants involved in every transaction or matter in which we represent a party.:

(d)     Gilbert partners and employees may now or in the future own securities - directly or through mutual funds, trusts and portfolios - issued by the Debtors or interested parties.:

(e)     Gilbert and certain of its partners and employees may maintain credit facilities and pension, insurance, investment, and depository accounts with interested parties. Gilbert partners and employees may be former employees of interested parties.; and

(f)     Family members of Gilbert's partners or employees may be current or former employees of the Debtors or interested parties or may have other connections with the Debtors or interested parties.

### **Affirmative Statement of Disinterestedness**

32.33.   Based solely on the conflicts procedures conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Gilbert is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) Gilbert is independent of the Debtors and other parties in interest, (c) Gilbert does not have any interest that would adversely affect Gilbert's ability to advise the FCR in connection with these Chapter 11 Cases or that is materially adverse to the FCR or the future claimants, and (d) Gilbert has no connection to the Debtors, their creditors or any other party in interest except as disclosed herein.

### **Compensation**

33.34.   Gilbert will apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with Gilbert's representation of the FCR in the Debtors' Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code

and applicable provisions of the Bankruptcy Rules, the Local Rules, any case- specific fee protocols approved by the Court after notice and a hearing and any other applicable procedures and orders of the Court. Gilbert intends to comply with the *Order Under 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016(a), and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Professionals* which establishes procedures and policies for interim compensation and reimbursement of professionals. [D.I. 301]. Gilbert also intends to make a reasonable effort to comply with the UST's requests for information and additional disclosures as set forth in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Large chapter 11 Cases Effective as of November 1, 2013 (the "Revised U.S. Trustee Guidelines"), in connection with this Application and the interim and final fee applications to be filed by Gilbert in these Chapter 11 Cases.

34.35. Gilbert has agreed that it will charge for its legal services to the FCR on an hourly basis at the rates generally used by Gilbert under its normal billing practices. It is anticipated that the primary attorneys who will represent the FCR are Kami E. Quinn (whose current hourly rate is $775), Emily Grim (whose current hourly rate is $590), and Meredith Neely (whose current hourly rate is $475).

35.36. It is anticipated that other Gilbert attorneys or paraprofessionals will provide legal services on behalf of the FCR in connection with the matters described herein. Gilbert and the FCR have agreed to hourly rates ranging from $635 to $1,300 per hour for partners, $620 per hour for of counsel, $290 to $590 per hour for associates and $185 to $285 per hour for paralegals.

36.37. The hourly rates set forth above are Gilbert's standard hourly rates for work of

13

this nature. These rates are set at a level designed to ~~fairly~~ compensate ~~fairly~~ Gilbert for the work

of its attorneys and paralegals and to cover fixed and routine overhead expenses. Gilbert has

informed the FCR that its hourly rates are subject to periodic adjustment in accordance with

Gilbert's established billing practices and procedures.

~~37.~~38.  In addition to the hourly rates set forth above, it is Gilbert's policy to charge its

clients in all areas of practice for expenses incurred in connection with the client's case. The

expenses charged to clients include, but are limited to, conference call charges, major

photocopying charges, courier and overnight delivery charges, travel-related charges (including

mileage, parking, air or train fare, lodging, meals, and ground transportation), computerized

research charges, filing fees, and any third-party costs incurred related to a representation.

Gilbert will charge for these expenses in a manner and at rates consistent with charges made

generally to Gilbert's other clients and the Local Rules.

~~38.~~39.  Gilbert will maintain detailed records of fees and expenses incurred in connection

with the rendering of the legal services described herein, in accordance with applicable rules and

guidelines.

<u>Statement Pursuant to Revised U.S. Trustee Guidelines</u>

~~39.~~40.  Pursuant to paragraph D, section 1 of the Revised U.S. Trustee Guidelines, Gilbert

responds to the questions set forth therein as follows:

| | |
|---|---|
| Question: | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
| Response: | No. |
| Question: | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| Response: | No. |

14

Question:    If you represented the client in the 12 months
             prepetition, disclose your billing rates and material
             financial terms for the prepetition engagement,
             including any adjustments during the 12 months
             prepetition. If your billing rates and material
             financial terms have changed post-petition,
             explain the difference and the reasons for the
             difference.

Response:    Gilbert represented the FCR prepetition.
             In the summer of 2019, Gilbert increased its
             billing rates as follows:
             K. Quinn's rate changed from $700 to $775
             E. Grim's rate changed from $575 to $590
             M. Neely's rate changed from $400 to $475

Question:    Has your client approved your prospective
             budget and staffing plan, and, if so, for what
             budget period?

Response:    No, a budget has not been proposed.

    40.41.  I am authorized to submit this Declaration on behalf of Gilbert, and if called upon

to testify, I would testify competently to the facts set forth herein.

    41.42.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated: April 27May 6,
2020 Washington, DC

                                        /s/ Kami E. Quinn
                                       Kami E. Quinn

15

**<u>EXHIBIT 3</u>**

**Corrected Appendix**

**CORRECTED APPENDIX 1**
**TO KAMI E. QUINN DECLARATION**

| Person Identified | Connection |
|---|---|
| Andreozzi & Associates, P.C. | Andreozzi & Associates, P.C. is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Crew Janci LLP | Crew Janci LLP is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Duke Energy Corporation | Duke Energy Corporation ("Duke") is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Utility Providers". Gilbert provides strategic advice to Duke relating to the potential resolution of a lawsuit pending in North Carolina captioned *Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 17 CVS 5594 (N.C. Sup. Ct.). This representation is unrelated to the Debtors. |
| Dumas Law Group, LLC | Dumas Law Group, LLC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Hurley McKenna & Mertz, PC | Hurley McKenna & Mertz, PC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Jeff Anderson & Associates PA | Jeff Anderson & Associates PA is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| KCIC LLC | KCIC is identified on the Schedules attached to the Quinn Declaration as one of the "Professionals Representing Certain Parties in Interest". Gilbert had an ownership interest in Kenesis Management Company ("Kenesis"), a company in the same corporate family as KCIC LLC, which ended as of January 1, 2004. Kenesis, also within the KCIC corporate family, paid Gilbert for the administrative services of two employees to handle administrative duties related to 401(K), health insurance and other employee benefits. That relationship ended as of March 1, 2020. Gilbert holds Washington National's season tickets. Kenesis purchases tickets from Gilbert to the Washington Nationals games. |
| Kramer Levin Naftalis & Frankel LLP | Kramer Levin Naftalis & Frankel LLP ("KLNF") is identified on the Schedules attached to the Quinn Declaration as one of the "Professionals Representing Certain Parties in Interest". Gilbert is co-counsel with KLNF on various opioid matters that are unrelated to this representation. |

| Person Identified | Connection |
|---|---|
| Lindsay Hart LLP | Lindsay Hart LLP is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Merson Law PLLC | Merson Law PLLC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Pfau Cochran Vertetis Amala PLLC | Pfau Cochran Vertetis Amala PLLC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| State of Delaware | State of Delaware is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Taxing Authorities". Gilbert provides strategic advice to and represents the State of Delaware in lawsuits filed against opioid manufacturers and distributors. This representation is unrelated to the Debtors. |
| State of Ohio | State of Ohio is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Taxing Authorities". Gilbert provides strategic advice to and represents the State of Ohio in lawsuits filed against opioid manufacturers and distributors. Furthermore, Gilbert represents the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants in the *Purdue Pharma LP, et al*., bankruptcy proceeding, of which the State of Ohio is a member. This representation is unrelated to the Debtors. |
| State of Tennessee | State of Tennessee is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Taxing Authorities". Gilbert represents the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants in the *Purdue Pharma LP, et al*., bankruptcy proceeding, of which the State of Tennessee is a member. This representation is unrelated to the Debtors. |
| TD Bank | TD Bank is identified on the Schedules attached to the Quinn Declaration on the list of "Banks". Gilbert represents and provides strategic advice to TD Bank concerning the defense and resolution of a lawsuit captioned *Vero Beach Police Officers' Retirement Fund v. Larry Bettino*, C.A. No. 2017-0264-JRS (Del. Ch.) and the application of insurance policies with respect thereto. This representation is unrelated to the Debtors. |
| James L. Patton, Jr. | James L. Patton, Jr. ("Patton"), is the Future Claimants' Representative ("FCR") in this case. Gilbert represented Patton in connection with the Pre-Packaged Plan negotiations related to the Debtors. Currently, Patton serves as the future claimants' representative in the *Imerys Talc America* bankruptcy proceeding, in which Gilbert is insurance counsel to Patton and the tort claimants' committee. |

| Person Identified | Connection |
|---|---|
| Young Conaway Stargatt & Taylor | Young Conaway Stargatt & Taylor ("YCST") is counsel to James L. Patton, Jr., the Future Claimants' Representative in this case. YCST is counsel to Patton in the *Imerys Talc America* bankruptcy proceeding, in which Gilbert serves as insurance counsel to Patton. YCST is counsel to Lawrence Fitzpatrick, FCR in the *Rapid-American* bankruptcy, in which Gilbert LLP is insurance counsel to both the FCR and the Committee. Gilbert LLP has served as insurance counsel to committees in various asbestos-related bankruptcy cases in which YCST has been counsel to the future claimants' representative. These representations are unrelated to the Debtors. |

**EXHIBIT 4**

**Blackline Comparing Original Appendix to Corrected Appendix**

**CORRECTED APPENDIX 1**
**TO KAMI E. QUINN DECLARATION**

| Person Identified | Connection |
|---|---|
| Andreozzi & Associates, P.C. | Andreozzi & Associates, P.C. is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Crew Janci LLP | Crew Janci LLP is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Duke Energy Corporation | Duke Energy Corporation ("Duke") is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Utility Providers".  Gilbert provides strategic advice to Duke relating to the potential resolution of a lawsuit pending in North Carolina captioned *Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 17 CVS 5594 (N.C. Sup. Ct.). This representation is unrelated to the Debtors. |
| Dumas Law Group, LLC | Dumas Law Group, LLC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Hurley McKenna & Mertz, PC | Hurley McKenna & Mertz, PC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Jeff Anderson & Associates PA | Jeff Anderson & Associates PA is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| KCIC LLC | KCIC is identified on the Schedules attached to the Quinn Declaration as one of the "Professionals Representing Certain Parties in Interest".  Gilbert had an ownership interest in Kenesis Management Company ("Kenesis"), a company in the same corporate family as KCIC LLC, which ended as of January 1, 2004.  Kenesis, also within the KCIC corporate family, paid Gilbert for the administrative services of two employees to handle administrative duties related to 401(K), health insurance and other employee benefits.  That relationship ended as of March 1, 2020.  Gilbert holds Washington National's season tickets.  Kenesis purchases tickets from Gilbert to the Washington Nationals games. |
| Kramer Levin Naftalis & Frankel LLP | Kramer Levin Naftalis & Frankel LLP ("KLNF") is identified on the Schedules attached to the Quinn Declaration as one of the "Professionals Representing Certain Parties in Interest".  Gilbert is co-counsel with KLNF on various opioid matters that are unrelated to this representation. |

**Formatted:** Underline

1

| Person Identified | Connection |
|---|---|
| Lindsay Hart LLP | Lindsay Hart LLP is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Merson Law PLLC | Merson Law PLLC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| Pfau Cochran Vertetis Amala PLLC | Pfau Cochran Vertetis Amala PLLC is identified on the Schedules attached to the Quinn Declaration as one of the "Top 25 Plaintiffs' Law Firms Representing the Largest Number of Abuse Victims Asserting Claims Against the Debtors" and was one of the law firms that negotiated with the Debtors and Patton pre-petition. |
| State of Delaware | State of Delaware is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Taxing Authorities". Gilbert provides strategic advice to and represents the State of Delaware in lawsuits filed against opioid manufacturers and distributors. This representation is unrelated to the Debtors. |
| ~~TD Bank~~ State of Ohio | ~~TD Bank~~ State of Ohio is identified on the Schedules attached to the Quinn Declaration as one of the ~~Debtors' "Banks".~~ "Significant Taxing Authorities". Gilbert provides strategic advice to and represents ~~TD Bank related to insurance coverage issues.~~ the State of Ohio in lawsuits filed against opioid manufacturers and distributors. Furthermore, Gilbert represents the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants in the *Purdue Pharma LP, et al.*, bankruptcy proceeding, of which the State of Ohio is a member. This representation is unrelated to the Debtors. |
| State of Tennessee | State of Tennessee is identified on the Schedules attached to the Quinn Declaration as one of the "Significant Taxing Authorities". Gilbert represents the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants in the *Purdue Pharma LP, et al.*, bankruptcy proceeding, of which the State of Tennessee is a member. This representation is unrelated to the Debtors. |
| TD Bank | TD Bank is identified on the Schedules attached to the Quinn Declaration on the list of "Banks". Gilbert represents and provides strategic advice to TD Bank concerning the defense and resolution of a lawsuit captioned *Vero Beach Police Officers' Retirement Fund v. Larry Bettino*, C.A. No. 2017-0264-JRS (Del. Ch.) and the application of insurance policies with respect thereto. This representation is unrelated to the Debtors. |
| James L. Patton, Jr. | James L. Patton, Jr. ("Patton"), is the ~~proposed~~ Future Claimants' Representative ("FCR") in this case. Gilbert represented Patton in connection with the Pre-Packaged Plan negotiations related to the Debtors. Currently, Patton serves as the future claimants' representative in the *Imerys Talc America* bankruptcy proceeding, in which Gilbert is insurance counsel to Patton and the tort claimants' committee. |

Formatted Table

Formatted: Font: Not Italic

2

| Person Identified | Connection |
|---|---|
| Young Conaway Stargatt & Taylor | Young Conaway Stargatt & Taylor ("YCST") is counsel to James L. Patton, Jr., the Future Claimants' Representative in this case. YCST is counsel to Patton in the *Imerys Talc America* bankruptcy proceeding, in which Gilbert serves as insurance counsel to Patton.  YCST is counsel to Lawrence Fitzpatrick, FCR in the *Rapid-American* bankruptcy, in which Gilbert LLP is insurance counsel to both the FCR and the Committee.  Gilbert LLP has served as insurance counsel to committees in various asbestos-related bankruptcy cases in which YCST has been counsel to the future claimants' representative. These representations are unrelated to the Debtors. |

**Formatted:** Font: Not Italic

3