**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING
STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), under section 107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9018-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the *Confidentiality and Protective Order* attached thereto as **Exhibit 1** (the "Stipulated Protective Order").[2] In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Upon the commencement of these cases on February 18, 2020 (the "Petition Date"), the Debtors filed a form of protective order to govern the production, receipt and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Stipulated Protective Order.

permitted use of confidential information.[3]  After extensive good-faith negotiations, the Debtors, the Official Committee of Tort Claimants (the "Tort Claimants' Committee"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Future Claimants' Representative (the "FCR"), and the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Local Council Committee") have reached agreement on the form of Stipulated Protective Order.  The parties referenced in the foregoing sentence are collectively referred to herein as the "Parties."  Each of the Parties has consented to the relief requested in this Motion.

2. The Parties have prioritized the documentation of the Stipulated Protective Order early in these cases for good reason.  Until the Parties are able to exchange confidential discovery material, the Debtors cannot effectively prosecute these restructuring cases, and the Parties will be unable to mediate a comprehensive resolution of issues and claims in these cases through a chapter 11 plan.  As the Court is aware, the Debtors have made certain financial and other information available to the other Parties through a secure electronic data room.  The data room currently contains nearly 130,000 pages of documentation.  Absent an enforceable protective order, however, the non-debtor Parties have only been able to review the data room materials on an advisors'-eyes-only basis, and certain of the materials, including more than 12,000 pages of disaggregated financial information pertaining to the Local Councils, are not authorized to be produced to any Party or their advisors until entry of the Stipulated Protective Order.

3. Despite the Parties' substantial efforts, certain of the Debtors' primary general liability insurers (collectively, the "Insurers") have not agreed to the form of Stipulated Protective Order.  The Debtors first circulated a draft of the Stipulated Protective Order to the

---

[3] On the Petition Date, the Debtors filed the initial form of protective order as Exhibit 3 to the *Debtors' Informational Brief* [Docket No. 4].

Insurers' respective counsel on April 14, 2020. The Debtors received no feedback. Meanwhile, the Debtors continued to negotiate with the other Parties regarding the terms of the Stipulated Protective Order and ultimately circulated a near-final version of that document to the Insurers on April 30, 2020. On May 5 and May 8, 2020, the Debtors received correspondence from counsel to the Hartford Companies, including but not limited to Hartford Accident and Indemnity Company and First State Insurance Company (collectively, "<u>Hartford</u>") and the Chubb Group of Insurance Companies, including but not limited to Insurance Company of North America, Century Indemnity Company, and U.S. Fire Insurance Company (collectively, "<u>Chubb</u>"), respectively, containing proposed revisions to the Stipulated Protective Order. The Debtors have accepted most—but not all—of the Insurers' proposed revisions. For the reasons set forth below, the Debtors believe they have satisfactorily addressed, or need not address, the balance of the Insurers' comments.

4. The Debtors have filed this Motion because, notwithstanding the significant time and effort the Parties have spent attempting to address all issues, they have been unable to obtain the consent of every party that has expressed an interest in the protective order. As of the filing of this Motion, none of the Insurers have approved the Stipulated Protective Order or confirmed that they do not object to the Court's approval thereof.

5. Time is of the essence in these restructuring proceedings. As the Debtors emphasized in their first-day filings, due in large part to the nature of the Debtors' organization as a charitable non-profit, a prolonged bankruptcy case will steadily deplete the assets available to fund distributions to creditors. This exigency has only increased in light of the COVID-19 pandemic, which has already had a considerable negative effect on the BSA's operations and finances. The Court's entry of the Stipulated Protective Order is in the best interests of the

Debtors' estates.  Permitting the Insurers to subject the Parties to further unnecessary delays will serve only to further jeopardize the Debtors' ability to equitably compensate abuse survivors and continue the mission of Scouting.

## STATUS OF THE CASES AND JURISDICTION

6. The Debtors commenced these cases on February 18, 2020, and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

7. On March 5, 2020, the United States Trustee for the District of Delaware appointed the Tort Claimants' Committee and the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

8. On April 24, 2020, the Court appointed James L. Patton, Jr. as the FCR pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.

9. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.  The statutory and other bases for the relief requested in this Motion are section 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9018-1(f).

## BACKGROUND OF THE DEBTORS

11.  Information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## THE STIPULATED PROTECTIVE ORDER

12.  As noted above, given the critical importance of launching the discovery and mediation processes early in these cases, the Debtors filed an initial form of proposed protective order on the Petition Date. *See Debtors' Informational Brief* [D.I. 4], Ex. 3. Beginning shortly thereafter, the Debtors engaged the other Parties regarding the terms of the protective order. In doing so, the Debtors have balanced the need for the Parties to receive full access to the materials in the data room as soon as possible, on the one hand, against the need to ensure that the disclosure of such materials is subject to customary confidentiality protections and use restrictions, on the other hand. After more than two months of negotiations, the Parties have reached agreement on the Stipulated Protective Order attached to the Proposed Order as Exhibit 1. As reflected in the comparison attached hereto as **Exhibit B**, the Debtors have made extensive revisions to the original form of protective order filed on the Petition Date in an effort to address the comments they have received.

13.  The Stipulated Protective Order includes the following salient terms:[4]

- The Stipulated Protective Order shall govern the production, review, disclosure, and handling of Discovery Material by the "Parties," and any parties in interest under 11

---

[4] This summary of certain terms of the Stipulated Protective Order is qualified in its entirety by the actual terms thereof, which control in all respects.

U.S.C. §§ 1109(b) who execute a copy of the "Acknowledgment and Agreement to be Bound" attached as Exhibit A to the Stipulated Protective Order.  (*See* Stipulated Protective Order at 1.)  Discovery Material may only be used by a Receiving Party in connection with these chapter 11 cases, including in any contested matter or adversary proceeding, but may not be used in connection with any other litigation unless otherwise agreed to.  (*See* Stipulated Protective Order, Section III and ¶ 7.1.)

- A Producing Party that determines in good faith that Discovery Material should be protected from disclosure may designate such material as Protected Material by affixing a label identifying it as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY."  (*See* Stipulated Protective Order ¶¶ 5.1, 5.5.)

- Protected Material designated as "CONFIDENTIAL" shall be made available only to the parties identified in paragraph 7.2 of the Stipulated Protective Order.  Protected Material designated as "HIGHLY CONFIDENTIAL" or "COMMITTEE ADVISOR ONLY" shall only be made available to the select groups of individuals identified in paragraphs 7.3 and 7.4.  (*See* Stipulated Protective Order ¶¶ 7.2–7.4.)

- A Party's failure to designate information as Confidential, Highly Confidential, or Committee Advisor Only shall not be deemed a waiver of that Party's later claim that such information should be designated or entitled to a different designation.  (*See* Stipulated Protective Order ¶ 5.7.)

- A Party may challenge a Producing Party's designation of Protected Material either at the time of production or at a later time.  The Challenging Party shall initiate the dispute resolution process, and the Producing Party and Challenging Party shall first meet and confer over any disagreement before seeking the Court's intervention.  (*See* Stipulated Protective Order ¶ 6.2.)

- If Discovery Material that is subject to a claim of privilege or protection is inadvertently produced, such production shall not be deemed a waiver of any privilege or immunity to which the Producing Party would otherwise be entitled.  (*See* Stipulated Protective Order, Section X.)

14.    As also noted above, two of the Insurers—Hartford and Chubb—have provided comments on the form of protective order.  The Debtors have incorporated the majority of these comments into the Stipulated Protective Order.  In particular, the Debtors made the following changes to the Stipulated Protective Order in response to comments received from Hartford and Chubb:

6

- added the Insurers as "Parties" to the Stipulated Protective Order;[5]

- revised the Stipulated Protective Order to allow the sharing of Protected Material designated "Confidential" with the Insurers and their Counsel and Other Retained Professionals;

- revised the Stipulated Protective Order to allow the sharing of Protected Material designated "Highly Confidential" or "Committee Advisor Only" with the Insurers' Outside Counsel and Other Retained Professionals;

- revised the Stipulated Protective Order to require the Insurers' agreement before Discovery Material produced by the Insurers is used in any proceeding not currently contemplated under the Stipulated Protective Order;

- added the Insurers' Outside Counsel and Other Retained Professionals to the "Prepetition Distribution Group," a small group of parties that will be given access to certain documents produced by the BSA in Prepetition Lawsuits;

- clarified that the term "Existing Confidentiality Agreements" refers to protective orders or other confidentiality agreements governing the sharing of confidential material produced by the BSA in a Prepetition Lawsuit.

- clarified that a Producing Party may request the return of any document inadvertently produced and that the Receiving Party shall return or destroy such documents;

- clarified that a party that publicly disseminates its own Discovery Material or files such material unsealed may not subsequently restrict other parties' public use of the same Discovery Material on grounds that such material constitutes Protected Material; and

- revised the Stipulated Protective Order to require the Insurers' approval before any amendment to the Protective Order can be made.

Attached hereto as **Exhibit C** is a comparison that reflects the comments received from Hartford and Chubb, and attached hereto as **Exhibit D** is a comparison that reflects the Debtors' acceptance, with modifications, of most of those comments.

15.    The Debtors did not revise the Stipulated Protective Order in response to certain other comments from Hartford and Chubb. The following is a summary of these comments, together with the Debtors' explanation of why no change is necessary or appropriate:

---

[5] The insurers identified on Exhibit B to the Stipulated Protective Order will be parties thereto. Additional parties in interest may execute a copy of the "Acknowledgment and Agreement to be Bound" set forth on Exhibit A to the Stipulated Protective Order and thereby also become parties to the Stipulated Protective Order.

- **Production of Existing Confidentiality Agreements under Limited Circumstances**. The Debtors did not accept Hartford's proposed deletion of a provision in Section III of the Stipulated Protective Order that requires the production of Existing Confidentiality Agreements under certain circumstances. Parties relying on an Existing Confidentiality Agreement should be required to produce such agreement where there is a dispute over the degree of protection afforded thereunder. It is also appropriate to require that any disputes over the terms and scope of an Existing Confidentiality Agreement, as applied to Discovery Material, be resolved under the procedures set forth in Section VI of the Proposed Protective Order.

- **Involvement in Determinations Regarding Treatment of Ineligible Volunteer Files**. The Debtors did not accept Hartford's proposal to involve the Insurers in discussions regarding the treatment of the Ineligible Volunteer Files (the "IV Files"). Issues related to the IV Files are best resolved through discussions between the Tort Claimants' Committee and the Debtors, with the assistance of the proposed plan mediators. The Insurers, the Creditors' Committee, the FCR, and the Local Council Committee should not be involved in determining how the IV Files will be treated.

- **Insurers' Access to Prepetition Confidential Documents**. The Debtors did not accept certain of Hartford's proposed revisions to paragraph 5.9 of the Stipulated Protective Order, which governs access to confidential documents produced by the BSA in Prepetition Lawsuits. The Debtors agree with—and have accepted—Hartford's proposal that the Insurers be included in the "Prepetition Distribution Group" of parties who will receive access to Prepetition Confidential Documents provided to the Tort Claimants' Committee by plaintiffs in Prepetition Lawsuits. The Debtors do not, however, agree with Hartford's proposed language that would require the Insurers' consent to the production of such documents to the Tort Claimants' Committee by plaintiffs in Prepetition Lawsuits. As the Stipulated Protective Order makes clear, the Prepetition Confidential Documents are documents the BSA has already produced to plaintiffs in underlying abuse litigation. There is therefore no basis to require that these documents be subject to a veto right held by the Insurers in connection with the plaintiffs' production of such documents to the Tort Claimants' Committee.

- **Insurers' Access to "Highly Confidential" and "Committee Advisor Only" Material**. As noted above, the Debtors have accepted Hartford's proposed revisions to paragraphs 7.2–7.4 of the Stipulated Protective Order, which provide the Insurers access to Protected Material designated "Confidential," "Highly Confidential," and "Committee Advisor Only" material. The Debtors have amended Hartford's proposed language, however, by limiting access to "Highly Confidential" and "Committee Advisor Only" material to the Insurers' Outside Counsel and Other Retained Professionals. This is consistent with other constituencies' access to these materials. (*See Stipulated Protective Order* ¶¶ 7.3(b)–(c), 7.4(b).)

8

As of the filing of this Motion, the Insurers have not provided additional comments to the form of Stipulated Protective Order other than the comments discussed above and set forth on Exhibit C to this Motion.

## RELIEF REQUESTED

16. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, approving the Stipulated Protective Order under section 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9018-1(f).

## BASIS FOR RELIEF

17. Under section 107(b) of the Bankruptcy Code, the Court "may (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . ." 11 U.S.C. §107(b). Bankruptcy Rule 9018 provides the procedure for the Court to invoke its power under section 107(b) of the Bankruptcy Code, stating that the Court "may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P. 9018(1). Further, Local Rule 9018-1(f) provides that parties may stipulate to the protection of confidential information, and that the exchanged information is subject to the significant use limitations under Local Rule 9018-1 until the Court approves the parties' stipulation. Del. Bankr. L.R. 9018-1(f).

18. The Stipulated Protective Order is consistent with customary confidentiality protections routinely entered in bankruptcy matters, addresses all concerns raised by the Parties, and should be approved by the Court. As discussed above, the Stipulated Protective Order includes standard terms for the identification and protection of confidential information. *See* Stipulated Protective Order ¶¶ 5.1–5.4, 7.1–7.5. Moreover, the Stipulated Protective Order

expressly protects third-party privilege and other rights, and provides that inadvertent disclosures have the maximum protection from waiver as available under and pursuant to the Federal Rules. *See* Fed. R. Evid. 502; Stipulated Protective Order, Section X.  Lastly, the Stipulated Protective Order contains provisions governing challenges to parties' confidentiality designations and the filing and use of protected materials in matters before the Court.  *See* Stipulated Protective Order ¶¶ 6.1–6.3, 7.6–7.9.

19. The Stipulated Protective Order also contains provisions that address the unique nature of certain documents at issue in these cases.  For example, the Stipulated Protective Order provides that the Debtors and Tort Claimants' Committee shall meet and confer to jointly determine the treatment of the IV Files and related documents, which may contain, among other things, highly sensitive information concerning sexual abuse, including the identity of victims. *See* Stipulated Protective Order ¶ 5.8.

20. As discussed above, the Parties have engaged in extensive discussions and engaged the Insurers in an attempt to reach agreement as to an appropriate form of protective order.  The Stipulated Protective Order is the product of extensive negotiations and revisions from numerous parties.  Moreover, upon their receipt of the Insurers' belated comments within the last week, the Parties quickly worked to accommodate most of the Insurers' comments and to respond to their other inquiries.  As of the filing of this Motion, the Insurers have not consented to entry of the Stipulated Protective Order in its present form.

21. Without the Court's approval of a satisfactory protective order, the Parties would remain in an untenable holding pattern and be unable to move forward with mediation of the complex issues that must be addressed in these cases.  The Court's approval of the Stipulated Protective Order is appropriate under the circumstances and in the best interests of the estates.

For all of the reasons described in this Motion, the Court should approve the Stipulated Protective Order.

## NOTICE

22.  Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Tort Claimants' Committee; (iii) counsel to the Creditors' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; (viii) counsel to the Insurers; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and such other and any further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated:  May 12, 2020<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Joseph C. Barsalona II (No. 6102)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@mnat.com<br>            aremming@mnat.com<br>            jbarsalona@mnat.com<br>            emoats@mnat.com<br>            ptopper@mnat.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter (*pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone:  (212) 839-5300<br>Email:  jboelter@sidley.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Thomas A. Labuda (*pro hac vice*)<br>Michael C. Andolina (*pro hac vice*)<br>Matthew E. Linder (*pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Email:  tlabuda@sidley.com<br>            mandolina@sidley.com<br>            mlinder@sidley.com<br><br>CO-COUNSEL AND PROPOSED COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION |