## Exhibit A

**Reply**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

**Ref. Docket Nos. 18, 556, 557, 601, 603, & 610**

## DEBTORS' OMNIBUS REPLY IN SUPPORT OF BAR DATE MOTION

The Boy Scouts of America (the "<u>BSA</u>") and Delaware BSA, LLC, the non-profit

corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases

(together, the "<u>Debtors</u>"), submit this omnibus reply (this "<u>Reply</u>") to the objections to the

*Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and*

*Local Rules 2002-1(e), 3001-1, And 3003-1, for Authority to (I) Establish Deadlines for Filing*

*Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve*

*Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Victims,*

*and (IV) Approve Confidentiality Procedures for Abuse Victims* [Docket No. 18] (the "<u>Bar Date</u>

<u>Motion</u>")[2] and the *Supplement to Debtors' Bar Date Motion* [Docket No. 557] (the "<u>Bar Date</u>

<u>Supplement</u>")[3] filed by the Official Committee of Tort Claimants [Docket Nos. 601, 603] (the

"<u>Tort Claimants' Committee</u>") and the United States Trustee for Regions Three and Nine

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bar Date Motion or the Revised Proposed Order (as defined below), as applicable.

[3] On May 4, 2020, the Debtors supplemented the Bar Date Motion by filing the *Declaration of Shannon R. Wheatman, Ph.D in Support of Procedures for Providing Direct Notice and Supplemental Notice Plan to Provide Notice of Bar Date to Abuse Survivors* [Docket No. 556] (the "<u>Wheatman Declaration</u>") and the Bar Date Supplement.

[Docket No. 610] (the "U.S. Trustee").  In support of this Reply, the Debtors submit the supplemental declaration of Shannon R. Wheatman, Ph.D, filed concurrently herewith and incorporated herein by reference (the "Supplemental Wheatman Declaration," and, together with the Wheatman Declaration, the "Wheatman Declarations").  In further support of the Bar Date Motion, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1.      The Debtors filed the Bar Date Motion concurrently with the commencement of these cases on February 18, 2020 (the "Petition Date") as one of several immediate steps taken to promote the expeditious execution of their reorganization proceedings.  As the Debtors have consistently emphasized, they operate a charitable non-profit organization that depends on the public's confidence in its ability to carry out its mission through its Scouting programs.  A prolonged BSA chapter 11 case would erode this confidence, jeopardize the BSA's ability to operate and steadily deplete the assets available for creditors, including abuse survivors.  The COVID-19 pandemic has exacerbated these concerns through its pronounced negative effect on the Debtors' operations and liquidity.  For these reasons, it is imperative that the Debtors promptly obtain entry of the Revised Bar Date Order (as defined below) so that the parties may focus their attention on the mediation and formulation of a plan of reorganization.

2.      As stated in the Supplemental Wheatman Declaration, the noticing program that has been proposed by the Debtors far exceeds the scope and quality of the noticing programs implemented in any past chapter 11 case involving abuse claims.  Among other things, the Debtors' noticing is estimated to reach approximately 95.9% of the primary target audience— *i.e.*, men 50 years of age and older—with a frequency of 6.5 times in the United States.  (Supp. Wheatman Decl. ¶ 6(i); Wheatman Decl. ¶ 93.)  Dr. Wheatman estimates that men within this

age range comprise more than 54% of former Scouts and at least 71.8% of abuse survivors with pending claims against the BSA. (Wheatman Decl. ¶ 13.). The Debtors' noticing program is broad, multi-faceted and designed to reach their target audiences in various ways, including through television, radio, magazines, newspapers, targeted online advertisements, connected television, community outreach, and a press release. In sum, the noticing plan will effectively and efficiently reach the target audiences and exceed the requirements of due process.

3.     The Debtors are also proposing to provide creditors with approximately 141 days—**more than 20 weeks**—of notice of their proposed October 6, 2020 bar date. This time frame exceeds the length of time between entry of the bar date order and the claims bar date in many diocesan chapter 11 cases and other abuse or mass tort cases, including *Catholic Diocese of Wilmington* (73 days), *Archdiocese of Santa Fe* (101 days), *Roman Catholic Bishop of Great Falls* (54 days), *Diocese of Gallup* (122 days), *USA Gymnastics* (63 days), and *TK Holdings* (84 days), among others. This length of time strikes an appropriate balance between the expeditious prosecution of these cases, on the one hand, and the need to provide ample time for implementation of the Debtors' noticing program and for abuse claimants to consider, complete and submit the Sexual Abuse Proof of Claim Form, on the other hand. For example, if a claimant learns about the Abuse Claims Bar Date on the very last day of the media program, they will still have approximately thirty days to file an Abuse Survivor Proof of Claim. (Wheatman Decl. ¶ 94.)

4.     In coordination with their noticing expert, the Debtors are also proposing plain-language notices related to the Sexual Abuse Claims Bar Date that are accessible to persons unfamiliar with bankruptcy and related terminology. These notices have been designed with the assistance of Dr. Wheatman, who is a leading expert in effectively communicating legal

information to laypersons.  As set forth herein, it is Dr. Wheatman's opinion, based on her research and experience, that the notices will be understood by the overwhelming majority of potential claimants and will deliver information in a clear, plain, and attention-getting manner. Accordingly, the Debtors disagree with the Tort Claimants' Committee's and U.S. Trustee's characterizations of certain aspects of these notices as confusing or unnecessary.  The notices have been designed to achieve—and, in Dr. Wheatman's expert opinion, do achieve—precisely the opposite effect:  they deliver accurate information in a manner that will promote an accurate interpretation by the reader.

5.      The Debtors have engaged in productive discussions with the Tort Claimants' Committee with respect to the Sexual Abuse Survivor Proof of Claim Form, which the Debtors have substantially revised since the filing of the Tort Claimants' Committee's objection. Significantly, among certain other modifications made at the request of the Tort Claimants' Committee, the Debtors have revised the Sexual Abuse Survivor Proof of Claim Form to incorporate many elements of the Tort Claimants' Committee's proposed definition of "sexual abuse."  The Debtors have also limited that form so it applies only to abuse that is sexual in nature, as requested by the Tort Claimants' Committee.

6.      In addition to working closely with the Tort Claimants' Committee and the U.S. Trustee to address their concerns, the Debtors have also had active discussions with representatives of the Debtors' insurers, the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Local Council Committee"), and the Official Committee of Unsecured Creditors (the "Creditors' Committee") regarding the proofs of claim and related notices and have made every effort to accommodate their concerns.  The Debtors believe that most of the issues raised in the objections have now been adequately addressed by (a) revisions to the

Proposed Order, a further revised form of which is attached as **Exhibit A** (the "Revised Bar Date Order") to the *Notice of Filing of Revised Bar Date Order* filed concurrently herewith (the "Notice of Filing"), and (b) revisions to the various exhibits to the Revised Bar Date Order, which are attached as **Exhibits 1–8** to the Revised Bar Date Order.

7.      A chart summarizing the objections and the Debtors' responses thereto is attached hereto as **Exhibit 1** (the "Summary Chart").    Notwithstanding the Debtors' numerous modifications to the Revised Bar Date Order and the exhibits thereto as addressed herein and in the Summary Chart, certain aspects of the Tort Claimants' Committee's and the U.S. Trustee's objections remain unresolved as of this filing and should be overruled for the reasons discussed below.

## ARGUMENT

**A.      The Abuse Claims Bar Date Provides Adequate Time for Abuse Survivors to File Sexual Abuse Survivor Proofs of Claim and Should Be Approved.**

8.      In its objection, the Tort Claimants' Committee asserts that the Abuse Claims Bar Date of October 6, 2020 is "unreasonably short" and proposes an alternative deadline of no earlier than December 31, 2020.  The Debtors appreciate the difficulty of what they are asking Abuse Survivors to do in completing the Sexual Abuse Survivor Proof of Claim by the Abuse Claims Bar Date, and the understandable reasons that Sexual Abuse Survivors may find it difficult to promptly submit claims.  Nevertheless, the Debtors believe that an Abuse Claims Bar Date of October 6, 2020—which provides creditors with 141 days, or ***more than twenty weeks***, from the hearing date on the Bar Date Motion to submit their claims—strikes an appropriate balance between the unique challenges faced by Abuse Survivors in coming forward to complete and submit claims, on the one hand, with the Debtors' need to expeditiously prosecute these restructuring cases, on the other hand.

9.      In support of the Tort Claimants' Committee's objection, the committee's expert, Dr. Conte, states that the challenges presented by the COVID-19 pandemic and the notice period falling within the summer months necessitate the extension of the Abuse Survivor Claims Bar Date through December 31, 2020.  (Conte Decl. ¶ 10.)  This suggestion ignores that many Sexual Abuse Survivors may already be aware of the BSA's bankruptcy case and the possibility that they may need to file a Sexual Abuse Claim.  Additionally, Dr. Wheatman, who has reviewed seasonality in relation to responses to noticing programs, has found no drop-off in response rates during summer months.  (Supp. Wheatman Decl. ¶ 6(g).)  Dr. Wheatman also observes that the extraordinary present circumstances could actually promote an *increase* in response rates, with more people opting to stay home and cancelling summer travel plans.  (*Id.*)

10.     Moreover, the Debtors' proposed notice period of 141 days is consistent with, or exceeds, the notice periods provided to abuse survivors in other bankruptcy cases.  See, e.g., In re Diocese of Rochester, Case No. 19-20905 (PRW) (Bankr. W.D.N.Y. Feb. 25, 2020) (approving 170 day notice period for abuse survivors); In re Archdiocese of Santa Fe, Case No. 18-13027-t11 (Bankr. D.N.M. Mar. 8, 2019) (approving 101 day notice period); In re USA Gymnastics, Case No. 18-09108-RLM-11 (Bankr. S.D. Ind. Feb. 25, 2019) (approving 63 day notice period); In re Roman Catholic Church of Diocese of Gallup, Case No. 13-13676-t11 (Bankr. D.N.M. Apr. 11, 2014) (approving 122 day notice period); In re Catholic Diocese of Wilmington, Case No. 09-13560 (CSS) (Bankr. D. Del. Feb. 1, 2010) (approving 73 day notice period).  For these reasons, the Debtors' proposed Abuse Claims Bar Date of October 6, 2020 provides ample time for the submission of claims under the circumstances.

**B.      The Debtors' Abuse Survivor Proof of Claim Form, as Revised, Should Be Approved.**

11.      Since the filing of the Bar Date Supplement and the Tort Claimants' Committee's objection, the Debtors and the Tort Claimants' Committee have continued to engage in productive discussions with respect to the Abuse Survivor Proof of Claim Form.  As the redlines attached to the Notice of Filing as **Exhibit B** make clear, the Debtors have substantially revised the Sexual Abuse Survivor Proof of Claim Form in an effort to resolve many of the Tort Claimants' Committee's objections, while also taking into account the informal comments of certain other constituencies, including the Debtors' insurers and the Local Council Committee.

12.      Certain of the principal modifications to the Abuse Survivor Proof of Claim Form are summarized below:

- **Definition of "Sexual Abuse"**: The Debtors have revised the Sexual Abuse Survivor Proof of Claim Form to incorporate many elements of the Tort Claimants' Committee's proposed definition of "sexual abuse" and have limited the form to abuse that is sexual in nature.  An instruction has been added to the form that directs persons who have experienced non-sexual abuse, such as bullying or hazing, to the General Bar Date Notice and to submit a General Proof of Claim on account of such non-sexual abuse.  The Debtors have also deleted from the definition of abuse that they initially proposed certain of the terms that Dr. Conte contends are potentially confusing.

- **Information Regarding Categories of Harm and Legal Background**:  The Debtors have revised the Sexual Abuse Survivor Proof of Claim Form to incorporate the categories of harm proposed by the Tort Claimants' Committee to avoid overlapping terms and to remove the legal background section of the form.

- **Length and Accessibility of the Sexual Abuse Survivor Proof of Claim Form**:  The Debtors have consolidated or eliminated certain other questions on the Sexual Abuse Survivor Proof of Claim Form to shorten and improve the accessibility of the Sexual Abuse Survivor Proof of Claim Form.

The foregoing modifications may not resolve each of the Tort Claimants' Committee's specific objections, but, in revising the Sexual Abuse Survivor Proof of Claim Form, the Debtors

remained mindful of the need to gather from Sexual Abuse Survivors the information necessary to facilitate a global settlement of issues relating to Abuse Claims in these cases.  It is vastly preferable for the Debtors to gather as much relevant information as possible from Sexual Abuse Survivors now, in connection with the claims submission process, rather than potentially subjecting Sexual Abuse Survivors to additional rounds of intrusive questioning in connection with the administration of a compensation trust.  Forcing Abuse Survivors to supplement their claims later would potentially delay the administration of their claims and require them to unnecessarily recount their abuse more than once.  The Sexual Abuse Survivor Proof of Claim Form contains a comprehensive set of questions designed to mitigate this risk.

13.     As to the U.S. Trustee's objection, to the extent the U.S. Trustee maintains that the information requests in the Sexual Abuse Survivor Proof of Claim Form are improper on the basis that they do not substantially conform to Official Form 410, this objection should be overruled in light of the nature of the claims at issue.  Notably, neither the Debtors' revised Sexual Abuse Survivor Proof of Claim Form nor the form proposed by the Tort Claimants' Committee conform to Official Form 410.  As set forth in the Bar Date Motion, although Bankruptcy Rule 3001(a) provides that "[a] proof of claim shall conform substantially to the appropriate Official Form," Bankruptcy Rule 9009 authorizes appropriate and necessary alterations to the Official Forms:

> The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. Forms may be combined and their contents rearranged to permit economies in their use. The Director of the Administrative Office of the United States Courts may issue additional forms under the Code. The forms shall be construed to be consistent with these rules and the Code.

Fed. R. Bankr. P. 9009.

14.     Here, the nature of the sexual abuse claims requires deviation from Official Form 410.   Both the Debtors' and the Tort Claimants' Committee's forms are designed as questionnaires to gather information from Abuse Survivors about the sexual abuse they have endured and related damages.  The Debtors' form includes certain additional questions, which, as noted above, will minimize the likelihood that Sexual Abuse Survivors must recount their past trauma multiple times in this bankruptcy case.  The revised Sexual Abuse Survivor Proof of Claim Form is appropriately tailored to gather necessary information from Sexual Abuse Survivors, including, among other things, whether the sexual abuse occurred in connection with Scouting activities, the nature of the Scouting activities, the identity of the abuser, if known, the length of time of the abuse, and the damages suffered by survivors.

15.     Similar forms have been approved in other chapter 11 cases involving sexual abuse claims.   See, e.g., In re Roman Catholic Diocese of Harrisburg, Case No. 20-00599 (HWV) (Bankr. M.D. Pa. May 6, 2020) (approving proof of claim form that deviated from the official form); In re Diocese of Rochester, Case No. 19-20905 (Bankr. W.D.N.Y. Feb. 25, 2020) (same); In re USA Gymnastics, Case No. 18-09108-RLM-11 (Bankr. S.D. Ind. Feb. 25, 2019) (same); In re Roman Catholic Bishop of Stockton, Case No. 14-20371-C-11 (Bankr. E.D. Cal. May 8, 2014) (same); In re Archdiocese of Milwaukee, Case No. 11-20059 (SVK) (Bankr. E.D. Wis. July 14, 2011) (same); In re Catholic Diocese of Wilmington, Inc., Case No. 09-13560 (CSS) (Bankr. D. Del. Feb. 1, 2010) (same).  For these reasons, the revised Sexual Abuse Survivor Proof of Claim Form should be approved.

**C.      The Plain Language Abuse Claims Bar Date Notices Are Appropriate Under the Circumstances.**

**1.      The Abuse Claims Bar Date Notice Is Drafted in Plain Language to Help Sexual Abuse Survivors Understand Why They Are Receiving the Notice.**

16.    The Abuse Claims Bar Date Notice is presented in a plain-language question-and-answer format that the Debtors have prepared, with the assistance of their noticing expert, Dr. Wheatman, to be accessible to laypersons unfamiliar with the bankruptcy process or terminology.   The notice presents the following background questions about the chapter 11 process and this bankruptcy proceeding:

- **What is this bankruptcy about?**

    As widely reported, BSA is currently a defendant in numerous lawsuits related to historical acts of abuse in its Scouting programs.  BSA cannot continue to address abuse litigation on a case-by-case basis.   In addition to the unsustainable financial cost of continuing to engage in piecemeal litigation across the country, continuing this process will result in the risk of inconsistent judicial outcomes and unequal treatment of Abuse Survivors.  For these reasons, BSA decided to file for chapter 11 bankruptcy.

    BSA intends to set up a trust to compensate survivors of historical acts of abuse related to its programs as part of this bankruptcy proceeding.

- **What is Chapter 11?**

    Chapter 11 is a form of bankruptcy that involves the reorganization of a debtor's business affairs, debts, and assets. Organizations generally file for chapter 11 bankruptcy if they require time to restructure their debts and obligations. In most cases, the debtor (the bankruptcy filer), called a debtor in possession, runs the business, until a plan of reorganization is confirmed and the debtor emerges from bankruptcy, which is the main objective of the case.

    **Steps in Bankruptcy (we are currently at the fourth step):**



17.     The Tort Claimants' Committee objects to the form of the Debtors' Abuse Claims Bar Date Notices as containing extraneous background information regarding the Debtors' restructuring and a potential chapter 11 plan that may be confusing to "unsophisticated" parties. Similarly, the U.S. Trustee objects to the inclusion of these items as "irrelevant" information and more properly included in a disclosure statement.   The Debtors disagree with these characterizations for the reasons that follow.

18.     As noted above, the Debtors have carefully designed the Abuse Claims Bar Date Notices with the assistance of Dr. Wheatman, who is one of the foremost experts in the area of plain-language legal noticing.  In particular, Dr. Wheatman has been studying ways to effectively communicate information to laypersons for the past twenty years.  (Supp. Wheatman Decl. ¶ 8.) Plain language, or "plain English," is not just simplified language that eliminates legalese, jargon, and complex syntax.  Plain language relies on principles of clarity, organization, layout, and design and joins content and format, focusing not just on what is written but how that text appears on a page and how laypersons will interpret the information.  (*Id.*)

19.     Dr. Wheatman has been involved in developing noticing plans in bankruptcy and class action cases involving abuse survivors and other tort claimants and has extensive relevant experience with respect to unique legal noticing challenges.  See, e.g., In re PG&E Corp., Case No. 19-30088 (Bankr. N.D. Cal.) (supplemental notice program for fire victims); In re Think Fin., LLC, Case No. 17-33964 (Bankr. N.D. Tex.) (payday loan borrowers); Clarke v. Province of Ontario, Case No. CV-10-411911 (Ont. S.C.J.) (involving former residents of Rideau Regional Centre, open from 1969-2009, for people with disabilities); In re Garlock Sealing Tech. LLC, Case No. 10-31607 (Bankr. W.D.N.C.) (asbestos claimants); Dolmage v. Province of Ontario, Case No. CV-09-376927CP00 (Ont. S.C.J.) (involving former residents of Huronia

Regional Centre, open from 1945-2009, for people with disabilities); In re SCBA Liquidation, Inc. (f/k/a Second Chance Body Armor, Inc.), Case No. 04-12515 (Bankr. W.D. Mich.) (class action within bankruptcy case/defective product); In re Residential Schools Class Action Litig., Case No. 00-CV-192059CP (Ont. S.C.J.) (involving individuals who attended a Canadian Indian residential schools system since 1879 and their heirs).

20.    As discussed in the Supplemental Wheatman Declaration, Dr. Wheatman's research indicates that when people are unfamiliar with the intricacies of legal terms, they will fall back on their preconceived notions of a term, which are often incorrect.  Recently, for example, in the *PG&E* bankruptcy case, Dr. Wheatman learned that many claimants had incorrectly thought a bankruptcy meant that the debtor was going out of business and had no money to pay the claims of fire victims.  Moreover, the specific type of bankruptcy (*e.g.*, chapter 11 vs. chapter 7) is meaningless to laypersons.  Based on Dr. Wheatman's research and experience in similar noticing efforts, the Abuse Claims Bar Date Notices should describe what a chapter 11 case is and outline the steps in a bankruptcy case.  These descriptions gives laypersons who are not represented by attorneys an opportunity to better frame and understand the information that is being presented to them.  (Supp. Wheatman Decl. ¶ 9.)

21.    For these reasons, the Debtors have included background information about the Debtors' chapter 11 cases in the Abuse Claims Bar Date Notices.  This information includes straightforward, uncontroverted facts, presented in plain language, to arm laypersons with additional context for why they are receiving the Abuse Claims Bar Date Notice.  This information will help Abuse Survivors understand their legal rights and the importance of submitting a Sexual Abuse Survivor Proof of Claim.  Abuse Survivors are more likely to read the Abuse Claims Bar Date Notice, which presents a valuable opportunity to communicate in plain

language they will understand and, in turn, maximize the number of claims submissions by holders of Abuse Claims. Indeed, Dr. Wheatman measured the readability of the Abuse Claims Bar Date Notice and concluded, based on the Flesch-Kincaid readability test,[4] that the notice will be understood by potential claimants who have at least an eleventh grade education. (Supp. Wheatman Decl. ¶ 10.) In contrast, relying solely on the dense legal language in a lengthy disclosure statement (as suggested by the U.S. Trustee) would run counter to the Debtors' objective of providing clear and accurate information to Abuse Survivors about this chapter 11 proceeding.

22.    Plain language notices such as the Abuse Claims Bar Date Notice have been approved in other bankruptcy and class action cases. See, e.g., In re Think Fin., LLC, Case No. 17-33964 (HDH) (Bankr. N.D. Tex.); Anderson v. Trans Union, LLC, Case No. 16-CV-00558 (E.D. Va. July 5, 2016); In re Domestic Airline Travel Antitrust Litig., Case No. 15-1404-CKK (D.D.C. Oct. 13, 2015); In re Automotive Parts Antitrust Litig., Case No. 12-md-02311-MOB-MKM (E.D. Mich. Feb. 7, 2012); In re SCBA Liquidation, Inc. (f/k/a Second Chance Body Armor, Inc.), Case No. 04-12515 (Bankr. W.D. Mich.). Moreover, the Federal Judicial Center also supports the use of plain language noticing to large groups of layperson claimants, such as claimants in class actions. Here, the Debtors' proposed form of Abuse Claims Bar Date Notice conforms to the Federal Judicial Center's illustrative model forms of plain language noticing.[5] (Wheatman Decl. ¶¶ 15, 26.) For these reasons, the objections to the form and content of the Abuse Claims Bar Date Notice as they pertain to background information about the Debtors' cases and the status of the restructuring should be overruled.

---

[4] The most widely used readability scale is the Flesch-Kincaid Grade Level Readability Test. The formula for calculating Flesch-Kincaid analyzes the average sentence length and the average number of syllables per word.
[5] Such model forms may be found at https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide.

   **2.**   **The Debtors' Inclusion of Certain Information in the Abuse Claims Bar Date Notice Regarding Potential Plan Provisions Is Appropriate.**

   23.   The Tort Claimants' Committee and the U.S. Trustee also object to a plain-language question and response in the Abuse Claims Bar Date Notice related to a potential plan of reorganization for the Debtors, which the Debtors have modified as follows:

- **What could be released under the plan of reorganization?**

> The chapter 11 plan of reorganization may contain broad releases of BSA and certain third parties and related injunction provisions. If approved, these provisions could release claims you hold against BSA and certain third parties, including against Local Councils and organizations that sponsored your troop or pack. Also if approved, these provisions would prohibit you from filing lawsuits against BSA and certain third parties related to any Sexual Abuse Claim. Instead, a proposed chapter 11 plan for BSA could channel these claims to a trust for Sexual Abuse Survivors.

> Please note that a chapter 11 plan has not yet been proposed for solicitation or agreed to by any parties in interest in BSA's chapter 11 proceeding. Once it becomes available for solicitation, you should carefully review the full text of the plan of reorganization release, injunction, and related provisions and any applicable release provision at www.OfficialBSAClaims.com.

> Please further note that only BSA is a debtor in BSA's chapter 11 proceeding and other third parties, such as the Local Councils and organizations that sponsored your troop or pack, are not. If you believe you may have a claim against a Local Council or other organization you must take additional legal action to preserve and pursue such claim.

The U.S. Trustee argues that the foregoing question and response presents extraneous confirmation hearing language that is inappropriate in a bar date notice and irrelevant to completing a proof of claim. The Tort Claimants' Committee argues that this information is unnecessary and confusing as originally drafted, although the Debtors note that they have added certain language requested by the Tort Claimants' Committee to this section of the notice.

   24.   Similar to the information presented in the background questions and responses regarding the chapter 11 process and the Debtors' bankruptcy case generally, it is vital that the Debtors be permitted to provide notice of potential plan provisions in connection with the

Supplemental Notice Plan.  The Supplemental Notice Plan, which is estimated to reach ***more than 107 million men***, will direct individuals to the Abuse Claims Bar Date Notice and the information contained therein.  Put simply, the Debtors' proposed noticing is expensive, and the Debtors cannot afford to reach this number of potential claimants again in connection with plan confirmation.  Moreover, the importance of alerting claimants to the possibility of important plan provisions such as channeling injunctions and releases cannot be understated.  Providing this information about potential plan provisions now helps to explain the possible consequences of failing to file a Sexual Abuse Survivor Proof of Claim.  The information is presented factually and in a format that does not prejudice claimants.  For these reasons, the objections to the form and content of the Abuse Claims Bar Date Notice as they pertain to notice of potential plan provisions should be overruled.

**D.      The Supplemental Notice Plan Exceeds the Requirements of Due Process and Should Be Approved.**

25.      The Tort Claimants' Committee asserts that the Supplemental Notice Plan fails to take into account the unique audience of child sexual abuse survivors.  This position is based on the Conte Declaration, which, in turn, alleges that the Wheatman Declaration contains "several issues which tend to mislead the Court on important matters."  (*See* Conte Decl. ¶ 15(h).)   Dr. Conte also alleges that the manner of reaching potential claimants "is not sufficient."  (*Id.* ¶ 14.)  The Debtors disagree with Dr. Conte's characterizations of the Supplemental Notice Plan and submit that this plan exceeds the requirements of due process to unknown claimants for the following reasons.

- **Dr. Conte is mistaken that the Supplemental Notice Plan will only reach 10 million potential claimants**.  The Supplemental Notice Plan includes an *email campaign* that the Debtors estimate will reach at least 10 million potential claimants.   In total, the media program contained within the Supplemental Notice Plan is estimated to reach over 107 million men age 18 and older.  (Supp. Wheatman Decl. ¶  6(a).)

- **Dr. Conte erroneously asserts that the Debtors' Supplemental Notice Plan assumes that all men 50 years of age and older ("Men 50+") are potential claimants.**  Dr. Conte asserts that the Supplemental Notice Plan should only focus on Men 50+ who are potential claimants, rather than all men who are over the age of 50.  The Supplemental Notice Plan will reach approximately 95.9% of *all* Men 50+.  Accordingly, the Supplemental Notice Plan effectively reaches the smaller subset of Men 50+ who are potential claimants, and does so at a lower cost than trying to only target the subset of Men 50+ who are potential claimants.  (*Id.* ¶ 6(b).)

- **Dr. Conte's proposed "stratified" approach for the Supplemental Notice Plan is not cost efficient and ignores the reality that potential claimants are dispersed throughout the country.**  Dr. Conte asserts that the Supplemental Notice Plan should adopt a "stratified" approach, where more funds are allocated to geographic areas where there may be more creditors.  Dr. Wheatman considered a number of factors in formulating the Supplemental Notice Plan, including the cost of state-specific media buys in states with a high number of Scouts or potential claimants and the fact that an average of 40.5% of people do not live in the state where they were born.  Dr. Wheatman concluded that a nationwide notice program like that provided by the Supplemental Notice Plan was more appropriate because former Scouts could live anywhere at this time.  It provides greater cost-efficiency and ensures that a high number of potential claimants are reached regardless of their current location.  (*Id.* ¶ 6(f).)

- **Dr. Conte incorrectly asserts that summer months are not a good time for research surveys.**  Dr. Conte asserts that summer months are not a good time to conduct research surveys.  As discussed above, Dr. Wheatman has studied seasonality in relation to noticing programs implemented by her firm, and has found no reduction in response rates during summer months.  With more people staying at home due to COVID-19, reach of the Supplemental Notice Plan and response rates could be even higher.  (*Id.* ¶ 6(g).)

- **Dr. Conte's conclusion that the manner of reaching potential claimants is insufficient ignores the estimated reach and frequency of the Supplemental Notice Program.**  Dr. Conte concludes that the manner of reaching potential claimants is insufficient.  Dr. Wheatman has reviewed the reach and frequency of the proposed notice program against the target audiences of potential claimants.  (*Id.* ¶ 6(h).)  The proposed Supplemental Notice Plan is estimated to reach the following, which in on par with the reach and frequency data of other high-profile bankruptcy and class action cases with comprehensive media programs for unknown claimants:

| Audience | Estimated Reach | Estimated Frequency |
|---|---|---|
| Men 50+ | 95.8% | 6.5 times |
| Men 18+ | 89.8% | 4.6 times |

| Women 18+ | 80.0% | 3.9 times |
|---|---|---|

26.     For the foregoing reasons, the Debtors submit that the Supplemental Notice Plan achieves the requirements of due process with respect to unknown Abuse Survivors.

**E.     The Debtors Have Granted Consultation Rights to the Tort Claimants' Committee and the Future Claimants' Representative in Connection with Advertising Copy That Implements the Supplemental Notice Plan.**

27.     The Debtors have also included in the Revised Bar Date Order a provision ensuring the Debtors' cooperation with the Tort Claimants' Committee, as well as the Future Claimants' Representative, as to the advertising copy to be implemented in the Supplemental Notice Plan:

> The Debtors shall provide drafts of the internet, television, print, radio, and other copy created by the Debtors to implement the Supplemental Notice Plan to counsel for the Tort Claimants' Committee and the Future Claimants' Representative in advance of publication thereof, and the Tort Claimants' Committee's and Future Claimants' Representative's rights related thereto are reserved.

The consultation rights set forth in this provision include, among other things, the proposed television spot copy that the Debtors informally shared with the Tort Claimants' Committee, a revised version of which was attached to the Tort Claimants' Committee's objection.  The Debtors have proposed a further revised version of this copy as **Exhibit 5** to the Revised Bar Date Order, which incorporates the Tort Claimants' Committee's preferences, where possible, but also recognizes the word-count limitations of a thirty-second television spot.  Consistent with the Revised Bar Date Order, the Debtors intend to consult with the Tort Claimants' Committee, the Future Claimants' Representative and other constituents before finalizing any internet, television, print, radio and other advertising copy.

**F.     The Court Should Enter the Revised Bar Date Order.**

28.     The Debtors have made significant efforts to accommodate the Tort Claimants' Committee's concerns about the Revised Bar Date Order, or have otherwise explained why such revisions are unnecessary, as set forth in the Summary Chart attached hereto as **<u>Exhibit A</u>**.

## <u>CONCLUSION</u>

For each of the reasons set forth in the Bar Date Motion, the Wheatman Declarations, and this Reply, the Debtors respectfully request that the Court enter the Revised Bar Date Order, substantially in the form attached to the Notice of Filing as **<u>Exhibit A</u>**, and such other and any further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  May 14, 2020
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
      aremming@mnat.com
      emoats@mnat.com
      ptopper@mnat.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Email:  jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Email:  tlabuda@sidley.com
      mandolina@sidley.com
      mlinder@sidley.com
      blair.warner@sidley.com

CO-COUNSEL AND PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION

## Exhibit 1

**Summary Chart**

**Boy Scouts of America**
**Summary Chart of Objections to Bar Date Motion**

| # | *Objecting Party* | *ECF No.* | *Summary of Objection* | *Debtors' Response* |
|---|---|---|---|---|
| 1 | Tort Claimants' Committee (the "TCC") | 601, 603 | 1. The TCC objects to the proposed October 6, 2020 bar date as unreasonably short, particularly in the context of COVID-19, and asserts that the bar date should be set no earlier than December 31, 2020. *See* pp. 2, 5–6.<br><br>2. The TCC objects to the Debtors' proposed Abuse Survivor Proof of Claim form and requests that the Court adopt the TCC's alternative proposed Proof of Claim form. The TCC asserts that the Debtors' Proof of Claim form as proposed inadequately defines sexual abuse and will unduly discourage responses from potential claimants. *See* pp. 3, 6–8. | 1. This Objection remains outstanding and is addressed in the Debtors' Reply. *See* Reply, ¶¶ 8–10.<br><br>2. The Debtors believe this Objection is resolved. The proof of claim form has been revised to specify that it is a form for Sexual Abuse Survivors and the definition of "Sexual Abuse" proposed by the TCC has largely been adopted. *See* Exhibit 7 to the Revised Bar Date Order:<br><br>For the purposes of this Sexual Abuse Survivor Proof of Claim, **sexual abuse** is defined as sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, sexual touching, sexualized interaction, sexual comments about a person's body, or other verbal or non-verbal behaviors that facilitated, contributed to, or led up to abuse, regardless of whether or not such behavior was itself sexual or against the law, and regardless of whether you thought the behavior was sexual abuse at the time. Sexual abuse includes behavior between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult. It involves behaviors including penetration or fondling of the child's or non-consenting adult's body, other body-on-body contact, or non-contact, behaviors such as observing or making images of a child's or non-consenting adult's naked body, showing or making |

| # | Objecting Party | ECF No. | Summary of Objection | Debtors' Response |
|---|---|---|---|---|
| | | | | pornography, or having children behave in sexual behavior as a group.[1] |
| | | | a. The TCC objects to the proposed Proof of Claim form to the extent that it improperly groups child sexual abuse with other non-sexual, unspecified types of adult abuse claims ("physical abuse," "bullying," "hazing," etc.) and victims of negligent torts. | a. The Debtors believe this Objection is resolved. The revised Sexual Abuse Survivor Proof of Claim Form excludes non-sexual, unspecified types of abuse claims, and negligent tort victims are not included as parties should submit a Sexual Abuse Survivor Proof of Claim. For example, Exhibit 7 to the Revised Bar Date Order contains the following instruction:<br><br>If you have a claim arising from other types of non-sexual abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying or hazing, you should consult the *Notice of Deadlines Requiring Filing of Proof of Claim* and file a General Proof of Claim (Official Bankruptcy Form 410). |
| | | | b. The TCC further objects to the proposed Proof of Claim form to the extent that it requests additional, extraneous questions concerning "legal background," which may discourage the filing of claims. | b. The Debtors believe this Objection is resolved. The Sexual Abuse Survivor Proof of Claim Form has been revised to remove the "Legal Background" section. *See* Exhibit 7 to the Revised Bar Date Order. |
| | | | c. Dr. Conte asserts that the Debtors' proposed definition and description of "abuse" is insufficient and is unlikely to effectively elicit responses from survivors. Dr. Conte further asserts that global terminology ("sexual abuse or molestation," "rape," etc.) is not suitable for use in the Proof of Claim form because laypersons have differing conceptions of what kind of behavior qualifies as each. Dr. Conte also notes that statistically, global descriptions of abuse in broad, nonspecific terms generate much lower rates of disclosure than descriptions of specific actions. *See* Conte Decl. ¶¶ 9.b, 12–13.a. | c. The Debtors believe this Objection is resolved. The Debtors have addressed this concern through the revised definition of "sexual abuse" described above and through the use of the majority of the TCC's proposed definition for this term. *See* Exhibit 7 to the Revised Bar Date Order. |

---

[1] The Debtors have adopted this definition of "sexual abuse" solely for purposes of the Sexual Abuse Survivor Proof of Claim form and in an effort to provide a survivor-sensitive, plain English description of sexual abuse. Other operative documents in these chapter 11 cases (e.g., the plan of reorganization) may utilize a more technically accurate or specific definition of sexual abuse or abuse.

| # | Objecting Party | ECF No. | Summary of Objection | Debtors' Response |
|---|---|---|---|---|
| | | | d. Dr. Conte asserts that the Debtors' proposed definitions of abuse confuse the effects of abuse ("emotional harm," "disability," etc.) and/or reasons for abuse ("pedophilia," "ephebophilia," etc.) with abusive behavior itself. *See* Conte Decl. ¶¶ 12–13. | d. The Debtors believe this Objection is resolved. The Debtors have addressed this concern through the revised definition of "sexual abuse" described above and through the use of the majority of the TCC's proposed definition for this term. *See* Exhibit 7 to the Revised Bar Date Order. |
| | | | e. Dr. Conte asserts that the Debtors' proposed Proof of Claim form is likely to unduly discourage child sexual abuse survivor potential claimants from submitting claims, insofar as it seeks recall and narrative description of past abuse, which will likely trigger severe negative emotional reactions and therefore discourage the most significantly harmed or damaged survivors from submitting claims. | e. The Debtors have included a check-the-box format for the question about past abuse, followed by a narrative description. The Debtors are sensitive to the enormous difficulty that sexual abuse survivors face in answering this question, but note that the this question is central to the Sexual Abuse Survivor Proof of Claim Form and that the TCC's proposed form also seeks a narrative description of past sexual abuse. *See* Exhibit 7 to the Revised Bar Date Order. |
| | | | f. Dr. Conte asserts that as most victims in this case were abused numerous times over an extended period of time, and many are victims of grooming, requesting a detailed narrative of abuse experiences is unreasonable because for many survivors it may be virtually impossible to list every single instance of abuse. | f. The Sexual Abuse Proof of Claim Form recognizes that survivors may not be able to list every instance of abuse. The form contains multiple instructions that sexual abuse survivors should complete the form only to the best of their recollection. For example, the beginning of Part IV of the form contains the following: "**For each of the questions listed below, please complete your answers <u>to the best of your recollection</u>**." *See* Exhibit 7 to the Revised Bar Date Order. |
| | | | 3. The TCC objects to the Debtors' proposed Bar Date Notices to the extent that they include extraneous information and language likely to confuse layperson potential claimants. The TCC requests that the Court adopt the TCC's alternative Bar Date Notices. *See* pp. 3-4, 8-9. | 3. To the extent this Objection remains outstanding, it is addressed in the Debtors' Reply. *See* Reply ¶¶ 16–24, Supp. Wheatman Decl. ¶¶ 7–10. |
| | | | a. Dr. Conte asserts that the Debtors' proposed Bar Date Notices are unnecessarily confusing to layperson potential claimants as they are "anything but plain English," include numerous unexplained or undefined concepts, use multiple terms to describe the same things, combines multiple types of abuse ("sexual," "psychological," "harassment"), confuse effects of abuse with abusive acts, and may appear to be threatening to survivors. *See* Conte Decl. ¶¶ 9.c, 13.b- | a. To the extent this Objection remains outstanding, it is addressed in the Debtors' Reply. *See* Reply, ¶¶ 16–22. As noted above, the Debtors have largely adopted the TCC's description of sexual abuse in the revised Sexual Abuse Proof of Claim Form and the Bar Dar Notices. *See* Exhibits 2–4 and 7 to the Revised Bar Date Order. |

| # | Objecting Party | ECF No. | Summary of Objection | Debtors' Response |
|---|---|---|---|---|
| | | | 13.d. | |
| | | | 4. The TCC requests that the Court modify the Debtors' proposed Notice Plan to incorporate the specific suggestions proposed by Dr. Conte for targeting bar date noticing to sexual abuse survivors. *See* pp. 4, 9. | 4. This Objection remains outstanding and is addressed in the Debtors' Reply and the Supplemental Wheatman Declaration. *See* Reply ¶¶ 25–26, Supp. Wheatman Decl. ¶ 6. |
| | | | a. Dr. Conte asserts that the Debtors' proposed manner of reaching claimants is ineffective, cost-inefficient, and makes incorrect assumptions about where potential claimants may be found. Dr. Conte further asserts that noticing efforts should be targeted to demographic groups more likely to be potential claimants. *See* Conte Decl. ¶¶ 9.d, 14–16. | a. The Debtors assert that the proposed manner of reaching claimants is effective and cost-efficient given the reach and frequency of the media program contained in the Supplemental Notice Plan. This Objection remains outstanding and is addressed in the Debtors' Reply and the Supplemental Wheatman Declaration. *See* Reply ¶¶ 2, 25, and Supp. Wheatman Decl. ¶ 6. |
| | | | b. Dr. Conte further asserts that noticing of child sexual abuse survivors should be considered differently from general bankruptcy noticing, and television or other media campaigns should be pre-tested or focus-grouped with survivors to ensure their effectiveness. *See* Conte Decl. ¶¶ 15.f–g. | b. The Debtors are willing to continue to work with the TCC to ensure that the noticing to sexual abuse survivors is effective, and have included the following in the Proposed Order to address their cooperation with the TCC:<br><br>The Debtors shall provide drafts of the internet, television, print, radio, and other copy created by the Debtors to implement the Supplemental Notice Plan to counsel for the Tort Claimants' Committee and the Future Claimants' Representative in advance of publication thereof, and the Tort Claimants' Committee's and Future Claimants' Representative's rights related thereto are reserved.<br><br>*See* Revised Bar Date Order ¶ 20, Reply ¶ 27. |
| | | | 5. The TCC requests that the Court further modify the proposed form of Bar Date Order to include additional provisions protecting claimants' rights to assert late claims based on neglect, right to a jury trial, and right to assert claims against Local Councils. *See* pp. 9–10. | 5. The Debtors have added the following paragraphs to the Proposed Order. *See* Revised Bar Date Order ¶¶ 9–10.<br><br>For the avoidance of doubt, nothing contained in this Order shall preclude a claimant from asserting a late-filed claim in accordance with Bankruptcy Rule 9006. |

| # | Objecting Party | ECF No. | Summary of Objection | Debtors' Response |
|---|---|---|---|---|
| | | | | Nothing in this Order shall impair or affect, nor be deemed to impair or affect, any claims including, without limitation, sexual abuse claims that may be asserted against Local Councils or any entity or organization other than the Debtors herein.<br><br>The Debtors submit that it is unnecessary to include a provision in the bar date order specifying that the filing of a proof of claim does not constitute the waiver of a claimant's right to a jury trial. |
| 2 | UST | 610 | 1. The UST objects to the Debtors' proposed Bar Date Notices to the extent that they include extraneous information not relevant to a bar date notice and more properly included in the solicitation of votes upon a plan. *See* ¶¶ 9–11, 14.<br><br>    a. The UST specifically objects to sections 2, 3, 11, and 12 of the Debtors' proposed long-form abuse Bar Date Notice as providing inappropriate background information and confirmation hearing language. The objected-to sections are titled "What is this bankruptcy about," "What is Chapter 11," "Steps in Bankruptcy," "What is being released under the plan of reorganization," and "What rights are the Debtors reserving." *See* ¶¶ 9–11, 13–15.<br><br>2. The UST objects to the Debtors' proposed Abuse Survivor Proof of Claim form to the extent that it requests information not required by Official Form 410, and that is more properly the subject of discovery requests. *See* ¶ 12.<br><br>3. The UST notes that the alternative Abuse Claims Notice proposed in the TCC's objection addresses the concerns raised by the UST. *See* ¶ 15. | 1. This Objection remains outstanding and is addressed in the Debtors' Reply. *See* Reply ¶¶ 16–24.<br><br>    a. This Objection remains largely outstanding and is addressed in the Debtors' Reply. The Debtors have deleted the section titled, "What rights are the Debtors reserving" and this portion of the Objection is resolved. *See* Reply ¶¶ 16–24, Revised Bar Date Order, Ex. 2.<br><br>2. To the extent this Objection is not addressed by the revisions to the proposed Sexual Abuse Survivor Proof of Claim Form that utilizes the language proposed by the TCC, this Objection remains outstanding and is addressed in the Debtors' Reply. *See* Reply ¶¶ 16–24.<br><br>3. This Objection remains outstanding and is addressed in the Debtors' Reply. See Reply ¶¶ 16–24. |