# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> Jointly Administered <br><br> **Ref. Docket No. 17** |

### SUPPLEMENTAL BRIEF IN SUPPORT OF CENTURY'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF REVISED MEDIATION ORDER FILED ON MAY 15, 2020 [DKT. 640] SEEKING (I) APPOINTING A JUDICIAL MEDIATOR, (II) REFERRING CERTAIN MATTERS TO MANDATORY MEDIATION, AND <u>(III) GRANTING RELATED RELIEF</u>

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company ("Century")*

## TABLE OF CONTENTS

                                                                          **Page**

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT .................................................................................................................... 2

    A.    The Candidates for Mediator Should Be Required to Disclose Potential Conflicts. ........................................................................................................ 2

    B.    The Court Should Consider Alternative Candidates. .............................. 5

    C.    Any Mediation Order Should Include Three Basic Safeguards of Fundamental Fairness. .................................................................................... 6

        1.    Common Interest Material Generated in the Defense Should Be Barred From Being Given to the Tort Claimants Under the Guise of a "Mediation Communication." ............................................................... 6

        2.    Any Proposed Order Should Include a Provision Requiring the Insurers Be Given the Same Information As the Tort Claimants. .............. 7

        3.    Any Proposed Order Should Include a Provision Ensuring that Mediation Confidentiality Is Not Misused. .............................................. 8

    D.    The Debtors Should Disclose Whether Boy Scouts Lenders Will Be Mediation Participants And, If Not, Why. ................................................ 8

    E.    The Debtors Will Not Suffer Prejudice By a Short Adjournment. .......... 9

CONCLUSION .................................................................................................................. 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Babcock & Wilcox Co.*,
   274 B.R. 230 (Bankr. E.D. La. 2002) ....................................................................................... 3

*In re Federal-Mogul Glob. Inc.*,
   330 B.R. 133 (2005) .................................................................................................................. 3

*In re Fuller-Austin Insulation Co.*,
   No. 98-02038-JJF (Bankr. D. Del.) (Sept. 11, 1998) ................................................................. 3

*In re Kensington Int'l, Ltd.*,
   368 F.3d 289 (3d Cir. 2004) ...................................................................................................... 4

*In re Met-Coil Sys.*,
   No. 03-12676-MFW (Bankr. D. Del.) (Oct. 20, 2003) .............................................................. 3

*In re Mid-Valley*,
   305 B.R. 425 (Bankr. W.D. Pa. 2004) ....................................................................................... 3

*In re Smith*,
   524 B.R. 689 (Bankr. S.D. Tex. 2015) ...................................................................................... 2

*In re Specialty Products Holding Corp.*,
   No. 10-11780-LSS (Bankr. D. Del.) (Oct. 28, 2010) ................................................................. 3

**Other Authorities**

Amended Standing Order 09-04 (Bankr. D. Mass. 2010) ............................................................. 2

Voluntary Mediation Program and Procedural Requirements (Bankr. W.D. La. 2005) ................ 2

Voluntary Mediation Program Procedural Requirements (Bankr. E.D. Wash. 2000) ................... 2

**Rules**

Fed. R. Bankr. P. 2014(a) .............................................................................................................. 2

Century Indemnity Company (collectively, "Century") respectfully submits this supplemental brief in support of Century's objection to Debtors' Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief [ECF No. 17] ("Motion").

## STATEMENT OF FACTS

The insurers requested that Debtors afford them the opportunity to participate in the selection of an appropriate mediator.[1] Debtors declined to do so. On April 13, 2020, just two days prior to the last omnibus hearing, Debtors provided Hartford and Century with a proposed order. That order identified Eric Green and Paul Finn as mediators for this case. That was the first time that Debtors mentioned to the insurers that Mr. Green and Mr. Finn were even under consideration, or that they had been selected without any input from the insurers. The insurers asked who else had been proposed. The Debtors declined to respond. The insurers asked the Debtors to consider other candidates. They declined.

Hartford filed a timely objection on March 11, 2020 [ECF No. 161] expressing concern that Debtors failed to allow the insurers to participate in the selection of a mediator, which Century joined in a separate submission. [ECF No. 388].

On May 11, 2020, after repeated requests by Century, Debtors provided "disclosures" concerning Mr. Green and Mr. Finn.[2] Those disclosures—each no more than a page long—raise more concerns than they answer and are inadequate for the reasons explained below and in Hartford's supplemental objection.

---

[1]  *See* May 15, 2020 Declaration of Janine Panchok-Berry Ex. 1.
[2]  *See* P. Finn Disclosure and E. Green Disclosure (Weinberg Decl., Exs. 5–6).

**ARGUMENT**

Debtors' counsel's attempt to cloak essentially the entirety of the plan formulation process in confidentiality and bind all parties in interest to a mandatory mediation before persons selected as mediator by Debtors and Tort Claimants without Century or any other insurer's consent, or even consultation, is inappropriate. Century joins Hartford in requesting that the Court not enter Debtors' order at this time, but rather should (1) require all prospective mediator candidates to make conflicts disclosures along the lines of that required under Rule 2014; and (2) open the process to consider alternative candidates. If an order is entered, it should contain the basic safeguards of fundamental fairness set out in Section C below.

    **A.**    **The Candidates for Mediator Should Be Required to Disclose Potential Conflicts.**

The Court should require Debtors to submit disclosures for Mr. Green and Mr. Finn consistent with Rule 2014(a), which requires disclosure of "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a).[3] The Court's analysis in *In re Smith*, 524 B.R. 689, 694 (Bankr. S.D. Tex. 2015), holding that Rule 2014(a) disclosures should be made by a mediator, is directly on point

---

[3] While § 327 of the Code and Rule 2014(a) do not expressly state whether a mediator is a "professional" that is subject to disclosure requirements, numerous courts, including this Court, have required disclosures of professionals even when not "employed" by a party, such as the appointment of the future claims representative. Moreover, at least one bankruptcy court has concluded that a mediator is a professional required to make Rule 2014 disclosures, and a number of bankruptcy courts have local rules to the same effect. *See In re Smith*, 524 B.R. 689, 694 (Bankr. S.D. Tex. 2015) ("the Court finds that the substantial discretion a mediator has in helping to resolve a bankruptcy dispute is sufficiently significant to the overall administration of the estate to require court approval under § 327(a) and Rule 2014(a)."); *see also* Amended Standing Order 09-04 (Bankr. D. Mass. 2010); Voluntary Mediation Program and Procedural Requirements (Bankr. W.D. La. 2005); Voluntary Mediation Program Procedural Requirements (Bankr. E.D. Wash. 2000).

2

here; the mediator(s) that the Court selects ultimately will have substantial opportunity to affect the manner in which abuse claims are resolved as the reorganization goes forward.

Irrespective of whether § 327 and Rule 2014(a) strictly apply to mediators in all cases, such disclosures are appropriate here. Debtors are attempting to cloak essentially the entire plan formation process in mediation secrecy by moving to appoint persons who were selected by a process from which Century and the other insurers were completely excluded. Despite multiple requests, Debtors provided Century belatedly with the most minimal of information concerning what—if anything—was done to consider potential conflicts that Mr. Green and Mr. Finn may have or whether they could serve as disinterested, neutral mediators.

As Hartford explains in more detail in its supplemental objection, the information that is available about Mr. Green raises concern about his ties to other parties in this case and impartiality. Mr. Green has served as the FCR representing future tort claimants in six mass tort trusts involving claims for injury arising from asbestos and/or silica.[4] Mr. Patton's law firm, Young Conaway, represented Mr. Green in four of the bankruptcy cases that led to the establishment of those trusts.[5]

---

[4] *See In re Specialty Products Holding Corp.*, No. 10-11780-LSS (Bankr. D. Del.) at Order Appointing Eric. D. Green as Legal Representative for Future Claimants (Oct. 28, 2010) [ECF No. 449]; *In re Federal-Mogul Glob. Inc.*, 330 B.R. 133 (2005); *In re Mid-Valley*, 305 B.R. 425 (Bankr. W.D. Pa. 2004); *In re Babcock & Wilcox Co.*, 274 B.R. 230 (Bankr. E.D. La. 2002); *In re Met-Coil Sys.*, No. 03-12676-MFW (Bankr. D. Del.) at Order Authorizing the Appointment of Eric D. Green as Legal Representative for Future Claimants (Oct. 20, 2003) [ECF No. 205]; *In re Fuller-Austin Insulation Co.*, No. 98-02038-JJF (Bankr. D. Del.) at Order Signed Re:  Motion for Order Approving and Authorizing Appointment of Legal Representative [Professor Eric D. Green, Esq.] (Sept. 11, 1998) [ECF No. 8].

[5] *See In re Specialty Products Holding Corp.*, No. 10-11780-LSS (Bankr. D. Del.) at Order Authorizing Retention and Employment of Young Conaway Stargatt & Taylor LLP as Attorneys for the Proposed Future Claimants' Representative *Nunc Pro Tunc* to September 8, 2010 (Oct. 28, 2010) [ECF No. 450]; *In re Federal-Mogul Glob. Inc.*, 330 B.R. 133 (2005); *In re Babcock & Wilcox Co.*, 274 B.R. 230 (Bankr. E.D. La. 2002); *In re Met-Coil Sys. Corp.*, No. 03-12676-MFW (Bankr. D. Del.) at Order Authorizing Retention and Employment of Young Conaway Stargatt & Taylor, LLP as Attorneys for Legal Representative for Future Claimants (Oct. 20, 2003) [ECF No. 206].

While those trusts do not involve sexual abuse claims, mass tort litigation involves similar issues, ranging from issues in the bankruptcy case (*e.g.*, bar dates and proofs of claim) to liability issues (*e.g.*, statutes of limitation and determining an appropriate quantum of proof) to treatment of insurance. And Mr. Patton has served as Mr. Green's lawyer before the Third Circuit in a writ proceeding regarding impartiality and recusals in mass tort cases. *See In re Kensington Int'l, Ltd.*, 368 F.3d 289 (3d Cir. 2004). Without full disclosure, Century has no way of knowing whether and the extent to which Mr. Green has ongoing relationships with the parties whose disputes he has been nominated to mediate.[6]

Nor does Century, the U.S. Trustee, or the Court have adequate information concerning potential conflicts in Mr. Green's current professional experience. The conduct of Mr. Green (and Mr. Patton) was not at issue in the *Kensington* appeal. But there, the Third Circuit held that two FCRs to asbestos trusts had a conflict of interest that prevented them from serving as "neutral" advisors in an unrelated asbestos case. *See id.* at 304 ("By their very position as representatives of the future asbestos claimants in *G-I Holdings*, . . . they could not be non-partisan, benign, or neutral.").

Even less information is available regarding Mr. Finn, and Debtors have provided the most minimal of information concerning his connections to the Debtors, their creditors, the committees, and their respective attorneys. Without the disclosures that Rule 2014(a) contemplates, this Court has no assurance that the persons Debtors have nominated are neutral, particularly when parties in interest, including Century and the other insurers, have been excluded from the selection process.

---

[6] Mr. Green also has connections to Debtors' counsel. He is the Trustee of the Takata Airbag Tort Compensation Trust Fund, a fund created in the Takata bankruptcy, where Sidley Austin served as debtors' counsel. The full extent of connections between Mr. Green and Debtors' counsel, however, requires disclosures from Mr. Green himself.

4

### B. The Court Should Consider Alternative Candidates.

The Court should consider alternative candidates to serve as mediators given the mandatory nature of the mediation, the extraordinary breadth of the confidentiality over the plan formation process sought, and the fact that Debtors and tort claimants did not follow the process set out in the Debtors' motion for selecting a mediator. In the Motion, Debtors indicate that the mediator(s) will be selected in one of two ways: (1) agreement on a mediator by the "Mediation Parties" prior to the hearing (Motion ¶ 16); or (2) appointment of a sitting bankruptcy judge if the Mediation Parties cannot agree on a mediator (Motion ¶ 13). Mr. Green and Mr. Finn were not selected by the process that Debtors' counsel outlined in their motion. In choosing to exclude the insurers from the selection process, there is no agreement among all of the "Mediation Parties" regarding the selection of the mediator(s).[7]

Century (like other insurers that are parties in interest here) has a direct and material interest in ensuring that a plan of reorganization is formulated by a process that is free of collusion. The all-encompassing nature of the order that is sought would cloak essentially all the dealings between Debtors and tort claimants in mediation secrecy. This could be prejudicial to Century. If the Court is inclined to grant Debtors' motion, Century is concerned that any person selected to oversee the formation of a plan as a "mediator" is both well-qualified and free from any conflicts that would prevent them from being truly neutral.

In the absence of agreement among all parties, the Court should consider candidates from all the parties, particularly when mediation will be ordered by the Court. There are retired Circuit Court judges who merit consideration such as Hon. Timothy Lewis (Retired 3rd Cir.) and

---

[7] Century is one of the "Mediation Parties" referenced in the Motion. *See* Motion ¶ 14 ("The Debtors request that the following parties be directed to participate in the mediation (collectively, the "Mediation Parties"): . . . (e) applicable insurers under one or more insurance policies that afford the Debtors rights, benefits, indemnity or insurance coverage with respect to abuse claims . . . .").

5

individuals with a national reputation such as Ken Feinberg (appointed by Congress as 9/11 mediator).[8]  There may be additional candidates for the Court to consider, and all of the parties in interest, as well as the United States Trustee, should have the opportunity to consider the nominees with full disclosure of their connections to the parties and to this case.

The Court should decline to enter any order appointing a mediator until the nominee has made full disclosure of his or her interests in accordance with Rule 2014(a) and all parties have had a full and fair opportunity to provide candidates to the Court.

### C. Any Mediation Order Should Include Three Basic Safeguards of Fundamental Fairness.

The proposed order that the Debtors sent to the insurers rejects three provisions critical to ensuring a fair process.

#### 1. Common Interest Material Generated in the Defense Should Be Barred From Being Given to the Tort Claimants Under the Guise of a "Mediation Communication."

Century and the other insurers share a common legal interest with the Debtors in the defense of the underlying claims.  Century seeks the addition of the following clause in any proposed order to ensure that the terms of a mediation order are not misconstrued or misused to allow for privileged material to be conveyed to the tort claimants compromising the defense.

> The Debtors shall not as part of the Mediation or otherwise provide the TCC and/or FCR or their counsel with any materials created or used in the defense and resolution of abuse claims that may be subject to an attorney-client privilege, attorney work product privilege, common interest privilege or other rule of privilege or confidentiality, unless Debtors first

---

[8]  Ken Feinberg served as Special Master of the U.S. government's September 11th Victim Compensation Fund (chronicled in his book *What is Life Worth?* (2005), a role in which he served pro bono for almost three years.  He was later appointed Special Master for the TARP Executive Compensation initiative and, in June 2010, was named to run the BP Deepwater Horizon Disaster Victim Compensation Fund, a $20 billion fund to pay claims resulting from the BP Gulf oil spill.  He has also managed compensations systems relating to the Aurora and Virginia Tech shootings and the Boston Marathon bombing.

6

>   share those materials with the Insurers and the Insurers consent to the
>   disclosure of those materials.

*See* Appendix A, Blackline of Proposed Order ¶ 7.

The cloak of confidentiality that the Debtors seek should not be used as an end run around the common interest privilege.

### 2. Any Proposed Order Should Include a Provision Requiring the Insurers Be Given the Same Information As the Tort Claimants.

For any mediation to have a prospect of success, there should be a level playing field of information. It should also be clear that privileged information was not turned over by Sidley to the tort claimants prior to any mediation, but, if it was, that disclosure should be made before mediation. Century seeks the addition of the following clause in any proposed order to ensure it is given the same documents as are provided to the tort claimants:

>   Prior to the commencement of the mediation, Debtors shall make available to
>   the Insurers all documents and other materials that Debtors have provided to the
>   TCC or the FCR (or their pre-petition predecessors) whether pre- or post-
>   petition.

*See id.*[9]

This request should be non-controversial as there is no sound reason for the Debtors to give documents to the tort claimants and not insurers. The Debtors shared documents with the tort claimants pre-petition and post-petition in connection with efforts to reach a global settlement. While Century was recently given access to the "data room," it does not contain everything that the Debtors gave the tort claimants.

---

[9] The Debtors refused to accept a provision requiring Debtors to share the same documents with the insurers that have been and are provided to the TCC and/or the FCR (excepting privileged coverage analysis) so that the playing field is level.

7

### 3. Any Proposed Order Should Include a Provision Ensuring That Mediation Confidentiality Is Not Misused.

The insurers also requested that the order preserve the right to take discovery regarding the mediation *solely in the limited circumstance where the good faith conduct of the mediation is at issue*. *See id.* ¶ 8. Century seeks the addition of the following clause in any proposed order:

> The provisions of Local Rule 9019-5(d) pertaining to "Confidentiality of Mediation Proceedings" shall govern the Mediation provided, however, that if a Mediation Party puts at issue any good faith finding concerning the Mediation in any subsequent action concerning insurance coverage, the parties' right to seek discovery, if any, is preserved.

*See id.* ¶ 8. This protection is necessary to ensure that the parties do not use the mediation as a vehicle to cloak collusive settlements in confidentiality.

### D. The Debtors Should Disclose Whether Boy Scouts Lenders Will Be Mediation Participants and, If Not, Why.

If a mandatory mediation order is entered, it should identify to whom it applies. Debtors' counsel concurrently represents the Boy Scouts' lender.[10] The Boy Scouts have a significant amount of debt issued after claims arose. The Debtors' motion is silent as to what procedures will apply to it and what disclosures will be made about the prepetition debt. As the lender appears to be a current client of Sidley, whether it is included in the mediation or has been excused is all the more important to be disclosed.

---

[10] *See* Declaration of Jessica C. K. Boelter in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession, *Nunc Pro Tunc* to the Petition Date ¶ 21, ECF No. 204-3 ("The following parties that are Potential Parties in Interest or known affiliates of Potential Parties in Interest represented one percent or more of Sidley's annual revenue in 2019: JPMorgan Chase & Co. . . . .").

**E.     The Debtors Will Not Suffer Prejudice By a Short Adjournment.**

The Debtors will not suffer prejudice from this Court entering a short adjournment to give potential mediator candidates, including Mr. Green and Mr. Finn, time to submit Rule 2014 disclosures.

This chapter 11 case is in its preliminary stages.  The Debtors have not yet given all the insurers access to the documents they provided to the tort claimants.  Most importantly, the Debtors' motion to set a bar date has not yet been decided, and even if it had, the parties are at least seven to ten months away from knowing how many individuals will file proofs of claim in this case, or what types of injuries and damages they will claim.  Debtors cannot engage in meaningful settlement discussions without information on the claims being settled.

Debtors cannot complain that delaying the selection of a mediator by several weeks, or even a month or two, will hamper its reorganization efforts.  Mediation is normally not ordered until after the parties have negotiated and narrowed their differences.  None of that has happened here.

## CONCLUSION

Century respectfully requests that the Court sustain Century's objections as stated herein and decline to enter Debtors' proposed order and, if it does enter the order, that it do so with the provisions set out in Section C above.

9

Dated: May 15, 2020							Respectfully Submitted,

							By: */s/ Stamatios Stamoulis*
								Stamatios Stamoulis (#4606)

							STAMOULIS & WEINBLATT LLC
							800 N. West Street
							Third Floor
							Wilmington, Delaware  19801
							Telephone:	302 999 1540
							Facsimile:	302 762 1688

							O'MELVENY & MYERS LLP
							Tancred Schiavoni (*pro hac vice*)
							Janine Panchok-Berry (*pro hac vice*)
							Times Square Tower
							7 Times Square
							New York, New York  10036-6537
							Telephone:	212 326 2000
							Facsimile:	212 326 2061

							*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company ("Century")*