**Exhibit A**

**(Memorandum)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                   Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Ref. Docket No. 17 and 617** |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE LIMITED OBJECTION OF CREDITORS FIRST STATE INSURANCE COMPANY AND TWIN CITY FIRE INSURANCE COMPANY AND PARTY IN INTEREST HARTFORD ACCIDENT AND INDEMNITY COMPANY TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPOINTING A JUDICIAL MEDIATOR, (II) REFERRING CERTAIN MATTERS TO MANDATORY MEDIATION, AND (III) GRANTING RELATED RELIEF**

Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford") respectfully submit this supplemental memorandum in support of Hartford's limited objection to *Debtors' Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* [ECF No. 17] ("Motion").[2] The Court should not enter Debtors' order at this time, but rather should (1) require all prospective mediator candidates to make conflicts disclosures along the lines of that required under Rule 2014; and (2) open the process to consider alternative candidates.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Law, Irving, Texas 75038.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

1

## BACKGROUND

A.  **Hartford's Substantial Interest in This Mediation.**

1. Hartford submits this supplemental brief in support of its objection because Debtors have employed a flawed process in a rush to select two of the three mediators without any input or agreement from Hartford, and even without complying with the conditions set forth in Debtors' own Motion.

2. Hartford and the other insurers are parties in interest here. They have a significant interest in the mediation, including that it be conducted by neutral mediators free of the appearance of bias. Debtors identified five sets of issues for mediation, at least four of which directly concern Hartford and the other insurers, because Debtors expect the insurers to be a significant source of funding for the abuse claims:

- The relative treatment of abuse claimants under the plan and trust distribution procedures;

- The funding of a victim compensation trust;

- The treatment of abuse claims related to Scouting that are asserted against entities that are not debtors in these cases; and

- Issues pertaining to shared insurance between the BSA and local councils; and coverage disputes between the BSA and its insurers.

Motion ¶ 17.

3. Hartford believes that anyone selected as mediator should be well-qualified and free from any conflicts that would prevent them from being truly neutral.

B.  **Debtors Repeatedly Exclude Hartford From the Selection Process.**

4. Since the first days of this process, Hartford consistently has requested that Debtors afford Hartford the opportunity to participate in discussions regarding the selection of an appropriate mediator. While Debtors now try to make the case that several insurers were

"involved" in the process of negotiating the mediation order, there is no genuine dispute that, with respect to selection of a mediator, Debtors cut Hartford and the other insurers out of the process.

5. Hartford filed a timely objection on March 11, 2020 expressing concern that Debtors failed to allow Hartford to participate in selection of a mediator. *See Limited Objection of Creditors First State Insurance Company and Twin City Fire Insurance Company and Party In Interest Hartford Accident and Indemnity Company to Debtors' Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* at 3-4 (Mar. 11, 2020) [ECF No. 161] ("Hartford's Objection"). Following the objection date, Hartford continued to request that Debtors include Hartford in discussions concerning the mediator. *See* March 25, 2020 E-mail from J. Weinberg to A. Azer, attached as **Exhibit 1** to the Declaration of Abigail W. Williams ("Williams Decl."). Debtors continued to refuse to do so without explanation. In addition to Hartford, a number of other insurers reached out to Debtors to participate in these discussions, only to be turned away.

6. On April 13, 2020, just two days prior to the omnibus hearing, Debtors provided Hartford and a number of other insurers with a proposed order. April 13, 2020 E-mail from A. Azer (Williams Decl., **Ex. 2**). Prior to that date, Debtors never discussed the content of any proposed order, nor did Debtors disclose that BSA, the FCR and the TCC had already settled on two mediators without permitting Hartford to take part in those discussions -- or even that they were taking place.

7. The order that BSA shared with Hartford identified Eric Green and Paul Finn as mediators for this case. That was the first time that Debtors mentioned to the insurers that Mr. Green and Mr. Finn were even under consideration, much less that they had been selected without

3

any input from the insurers. Williams Decl. ¶ 4.

8. The insurers responded promptly to Debtors' proposed order. Hartford and the other insurers provided comments to Debtors on April 14, 2020. April 14, 2020 E-mail from J. Weinberg (Williams Decl., **Ex. 3**). The insurers also asked Debtors to consider other candidates to serve as mediators. Williams Decl. ¶ 6. Debtors responded that they would agree to accept a third mediator with particular expertise in insurance issues, but that they would not reconsider Mr. Green and Mr. Finn, nor would the Debtors consider any other candidates. *Id.* Debtors and a number of insurers, including Hartford, did agree that Timothy V.P. Gallagher should serve as a third mediator. Mr. Gallagher has extensive experience in mediating both tort and insurance cases, and was one of the individuals that BSA's counsel suggested to Hartford (and others) to serve in this case. Debtors further agreed that the insurers should be able to participate in all phases of the mediation and that Mr. Gallagher would be fully involved in the mediation process.

9. On April 14, 2020, the insurers also asked Debtors for conflicts disclosures from Mr. Green and Mr. Finn. April 14, 2020 E-mail from T. Schiavoni (Williams Decl., **Ex. 4**). For nearly a month, Debtors refused to provide the insurers with any disclosures at all, asserting that it was the insurers' burden to prove that a conflict exists even before receiving disclosures.

10. The Debtors sent revised drafts of its proposed order to the insurers on April 16, 2020 and April 24, 2020 accepting some, but not all, of the insurers' proposed revisions. Then, on May 11, 2020, Debtors provided Hartford with a proposed "final" mediation order that took away many of the provisions to which Debtors and the insurers previously agreed. Chief among these was that the proposed "final" order relegated Mr. Gallagher to a limited role as "insurance mediator," while the mediators chosen by Debtors and the TCC were given the expansive charge of all Mediation Issues. Debtors provided no explanation for limiting Mr. Gallagher's role.

11.  Moreover, the proposed "final" order reflects a continued failure by Debtors to agree to a number of other provisions that are critical to ensuring a fair process:

- Debtors refused to accept a provision requiring Debtors to share the same information and documents with the insurers that are provided to the TCC and/or the FCR (excepting privileged coverage analysis), so that the playing field is level. *See* Exhibit A ¶ 5 to Hartford's Objection [ECF No. 161-1].

- The insurers also requested that the order preserve the right to take discovery regarding the mediation *solely in the limited circumstance where the good faith conduct of the mediation is at issue*. *See id.* ¶ 7. That Debtors deleted that suggestion without comment illustrates why this protection is necessary, namely, to ensure that the parties do not use the confidentiality of the mediation as a vehicle to enter bad faith or collusive settlement in breach of Debtors' obligations to the insurers.

12.  Finally, on May 11, 2020, Debtors provided Hartford with "disclosures" concerning Mr. Green and Mr. Finn that were made to the other Mediation Parties weeks ago. *See* P. Finn Disclosure and E. Green Disclosure (Williams Decl., **Exs. 5-6**). Those disclosures -- each no more than a page long -- are inadequate. Mr. Green's statement merely acknowledges that he has served as a FCR, trustee or monitor in a number of cases where Young Conaway Stargatt & Taylor, LLP ("Young Conway") -- the FCR's law firm -- has represented him. He also stated that he has not mediated for any of the parties in this bankruptcy case. *See* E. Green Disclosure (Williams Decl., **Ex. 6**). However, Mr. Green's disclosures say nothing about the law review articles he authored with Mr. Patton, the FCR, and Mr. Harron, Mr. Patton's attorney. Nor do Mr. Green's disclosures say that Mr. Patton has served as Mr. Green's lawyer before the Third Circuit in a writ proceeding regarding impartiality and recusals in mass tort cases. *See In re Kensington Int'l, Ltd.*, 368 F.3d 289 (3d Cir. 2004). To be sure, without full disclosures, Hartford has no way of knowing whether Mr. Green has ongoing relationships with the parties whose disputes he has been nominated to mediate.

13.  Mr. Finn's disclosures do not even state whether he was involved in the pre-

petition mediation last fall. The only disclosure Mr. Finn's company, Commonwealth Mediation, offers is to state that Mr. Finn has mediated with a number of the underlying plaintiffs and defense attorneys. *See* P. Finn Disclosure (Williams Decl., **Ex. 5**). The disclosures say nothing about whether Mr. Finn has any present relationship with any of the parties to this case. If, as documents in this case suggest, Mr. Finn was the mediator last fall, then Hartford would be substantially prejudiced by a mandatory mediation where he was selected as mediator. We know from filings in this case that at that mediation BSA shared a claim matrix and protocol that established minimum claim values for negotiation (Hartford has asked Debtors for the matrix and protocol but so far Debtors have declined to provide them). *See* Oct. 17, 2019 Letter from C. Wadley to E. Martin, attached as Exhibit 2 to the *Declaration of Jessica C.K. Boelter in Support of Response by Sidley Austin LLP in Further Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors In Possession, Nunc Pro Tunc To the Petition Date* (April 28, 2020) [ECF. No. 500-2] (Williams Decl., **Ex. 7**). Hartford (and many of the other insurers) was not invited to that mediation; Hartford therefore had no opportunity to discuss the matrix with the mediator or to weigh in on values that Hartford may have felt were inappropriate. If Mr. Finn participated in the private mediation last fall, he obviously would come to the table now with opinions on claims criteria and claims values before Hartford and the other insurers who were excluded from last fall's sessions were heard on those issues. That would be unfair to Hartford and the other insurers.

14. Despite (or perhaps because of) these murky disclosures, Debtors have continued to refuse the insurers any opportunity to weigh in on whether they are the right mediators for this case. Also on May 11, a number of insurers conferred with Debtors regarding the proposed mediation order. Debtors once again confirmed that they were unwilling to discuss the mediator

6

selection process, or to consider any alternative mediators that may be acceptable to all of the Mediation Parties, including the insurers.

## ARGUMENT

15. The mediator(s) that the Court selects in this case must be disinterested; although the mediator cannot force parties to do anything, he or she often has a significant effect on the ultimate resolution of the chapter 11 case. Unless the mediator is impartial, the Court cannot have confidence in the process.

16. Debtors' proposal to appoint two hand-selected mediators without the consent or input of Hartford, and without any meaningful disclosures concerning conflicts, threatens that impartiality. Indeed, the Debtors' own process here is inconsistent with their Motion, which states that if there is not agreement among *all* of the Mediation Parties, then Debtors would seek guidance from the Court regarding appointing a judicial mediator.

17. The Court should not permit Debtors and their handpicked mediator nominees to avoid appropriate scrutiny that is intended to ensure that the mediation is fair. Rather, the Court should require all potential mediators to make Rule 2014(a) disclosures, and the Court should consider candidates nominated by all of the parties in interest, including Hartford.

### A. Potential Mediators Should Be Required to Disclose Potential Conflicts.

18. First, the Court should require Debtors to submit disclosures for any potential mediator consistent with Rule 2014(a), which requires disclosure of "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a).

19. While § 327 of the Code and Rule 2014 do not expressly state whether a mediator

is a "professional" that is subject to disclosure requirements, numerous courts, including this Court, have required disclosures of professionals even when not "employed" by a party, such as the appointment of the future claims' representative. Moreover, at least one bankruptcy court has concluded that a mediator is a professional required to make Rule 2014 disclosures, and a number of bankruptcy courts have local rules to the same effect. *See In re Smith*, 524 B.R. 689, 694 (Bankr. S.D. Tex. 2015) ("[The] Court finds that the substantial discretion a mediator has in helping to resolve a bankruptcy dispute is sufficiently significant to the overall administration of the estate to require court approval under § 327(a) and Rule 2014(a)."); *see also* Mass. R. USBCT Appendix 7 (Williams Decl., **Ex. 8**); La R. USBCTWD Voluntary Mediation (Williams Decl., **Ex. 9**); Wash. R. USBCTED LBR 9019-2 (Williams Decl., **Ex. 10**). The Court's analysis in *Smith* is directly on point here; the mediator(s) that the Court selects ultimately will have substantial opportunity to affect the manner in which abuse claims are resolved and the reorganization goes forward.

20.     Irrespective of whether § 327 and Rule 2014(a) strictly apply to mediators in all cases, such disclosures are appropriate here. Debtors are attempting to compel mediation of significant issues with mediators selected by a process from which Hartford (and the other insurers) was completely excluded. In addition, Debtors have provided Hartford with only the sparsest information concerning what -- if anything -- was done to consider potential conflicts that these candidates may have or whether the candidates could serve as disinterested, neutral mediators.

21.     Even the limited information that Hartford does have regarding Mr. Green suggests that his selection may have been guided by the fact that Mr. Green has significant connections to the other parties in this case. Mr. Green's disclosure acknowledges that he has

deep ties to Mr. Patton, who has been appointed as FCR in this case, as well as to Young Conway, Mr. Patton's counsel and their law firm. Mr. Green has served as the FCR for not one, but six, mass tort trusts involving claims for injury arising from asbestos and/or silica. *See* Takata Airbag Injury Trust, *About the Trustee & FCR*, http://www.takataairbaginjurytrust.com (last visited May 4, 2020) (Williams Decl., **Ex. 11**). Mr. Patton's law firm, Young Conaway, represented Mr. Green in four of the bankruptcy cases that lead to the establishment of those trusts. *See* ECF Nos. 851 and 911 in *In re Federal-Mogul Global, Inc.*, Case No. 01-10578 (Bankr. D. Del.) (Williams Decl., **Ex. 12**); ECF No. 1016 in *In re Babcock & Wilcox Co.*, Case No. 00-10992 (Bankr. E.D. La.) (Williams Decl., **Ex. 13**); ECF No. 110 in *In re Met-Coil Sys. Corp.*, Case No. 03-12676 (Bankr. D. Del.) (Williams Decl., **Ex. 14**); Application for Order Authorizing Interim Legal Representative for Future Claimants to Retain and Employ Young Conaway Stargatt & Taylor, LLP as Counsel, Effective As of December 16, 2003 [ECF No. 275] filed in *In re Mid-Valley, Inc.*, Case No. 03-35592 (Bankr. W.D. Pa.) (Williams Decl., **Ex. 15**); Application for Order Authorizing Proposed Future Claimants' Representative to Retain and Employ Young Conaway Stargatt & Taylor, LLP as His Attorneys *Nunc Pro Tunc* to September 8, 2010 [ECF No. 380] filed in *In re Specialty Products Holding Corp.*, Case No. 10-11780 (Bankr. D. Del.) (Williams Decl., **Ex. 16**). None of those trusts handles abuse claims, but mass tort litigation involves some similar issues, ranging from issues in the bankruptcy case (*e.g.,* bar dates and proofs of claim) to liability issues (*e.g.,* statutes of limitation and determining an appropriate quantum of proof).

22.     Moreover, it appears that the ties between Mr. Green and the Young Conaway firm go well beyond the single-page disclosure sheet. Mr. Green has authored at least two law review articles with Mr. Patton, who has been appointed as FCR, and Mr. Harron, Mr. Patton's

9

attorney.[3] And Mr. Patton has served as Mr. Green's lawyer before the Third Circuit in a writ proceeding regarding impartiality and recusals in mass tort cases. *See In re Kensington Int'l, Ltd.*, 368 F.3d 289 (3d Cir. 2004). The conduct of Mr. Green (and Mr. Patton) was not at issue in the *Kensington* appeal. But there, the Third Circuit held that two FCRs to asbestos trusts had a conflict of interest that prevented them from serving as "neutral" advisors in an unrelated asbestos case. *See id.* at 304 ("By their very position as representatives of the future asbestos claimants in *G-I Holdings*, . . . they could not be non-partisan, benign, or neutral.").

23. Without full disclosure, Hartford has no way of knowing whether Mr. Green has ongoing relationships with the parties whose disputes he has been nominated to mediate.[4] The Trusts for which Mr. Green continues to serve as FCR continue to operate, and it is unclear whether Young Conaway or Mr. Patton continue to have any role in advising Mr. Green. Nor does Hartford have adequate information concerning any other potential conflicts in Mr. Green's current professional experience.

24. Hartford has even less information regarding Mr. Finn. Mr. Finn disclosed that he has mediated disputes among various plaintiffs' lawyers asserting claims against BSA and BSA's defense attorneys. But that says nothing about current connections between Mr. Finn, the parties in interest and their counsel. To the extent that he was involved in last fall's mediation, he should not be involved here. By preparing a matrix and sharing it with other parties to that mediation, Debtors were, at a minimum, setting a floor with the mediator as to what values they

---

[3] *See* Eric D. Green, *Future Claimant Trusts and "Channeling Injunctions" to Resolve Mass Tort Environmental Liability in Bankruptcy: The Met-Coil Model*, 22 Emory Bankr. Dev. J. 157 (2005) (with Patton and Harron); Eric D. Green, *Prepackaged Asbestos Bankruptcies: Down But Not Out*, 63 NYU Annual Surv. of Am. L. 4 (2008) (with Fitzpatrick, Patton, Harron, and Turner).

[4] Mr. Green also has connections to Debtors's counsel. He is the Trustee of the Takata Airbag Tort Compensation Trust Fund, a fund created in the Takata bankruptcy, where Sidley & Austin served as debtors' counsel. The full extent of connections between Mr. Green and Debtors' counsel, however, requires detailed disclosures from Mr. Green himself.

would accept to liquidate the claims. Hartford (like many of the other insurers) was not invited to that mediation, did not have the opportunity to present its own views and would be prejudiced if required to mediate before a mediator whose view as to what the parties might pay will undoubtedly be formed through the previous mediation.

25. Without the full disclosures that Rule 2014(a) contemplates, this Court has no assurance that the mediators Debtors have nominated are neutral and come to the process free of pre-formed opinions, particularly when parties in interest, including Hartford, have been excluded from the selection process.

26. There is no undue burden in requiring potential mediators to make disclosures under Rule 2014(a). Numerous professionals in this case have already done so.

27. Nor will Debtors suffer any prejudice from this Court entering a short adjournment to give potential mediator candidates, including Mr. Green and Mr. Finn, time to submit Rule 2014 disclosures.

28. This chapter 11 case is in its preliminary stages. The parties will need additional time to exchange and review relevant documents. Even according to Debtors' most optimistic schedule, the bar date for filing proofs of claim will not fall prior to October 6, 2020, which is still nearly five months away. The parties are months away from knowing how many individuals will file proofs of claim in this case, or what types of injuries and damages they will claim. Debtors cannot complain that delaying the selection of a mediator by several weeks, or even a month or two, will hamper its reorganization efforts.[5]

29. The Court should require any nominated mediators to provide Rule 2014(a)

---

[5] Of course, to the extent that Debtors are prejudiced by any continuance of the Motion, any such delay could have been avoided or minimized by consulting with Hartford and others, and by providing information that the insurers have been requesting for weeks. Debtors cannot argue prejudice, in any event, to avoid appropriate disclosures.

11

disclosures so that the Court and all parties in interest have confidence that the mediators whom the Court ultimately selects are disinterested.

        B.       **The Court Should Consider Alternative Candidates.**

30.     Second, the Court should consider alternative candidates to serve as Mediator, because the manner in which BSA selected its proposed mediators is inconsistent with the selection process that BSA itself suggested was appropriate, and because fundamental fairness dictates that parties that are being compelled to mediate should have a meaningful opportunity to weigh in on the identity of the mediator.

31.     In the Motion, Debtors indicate that the Mediator(s) will be selected in one of two ways: (1) agreement on a mediator by the Mediation Parties prior to the hearing (Motion ¶ 16); or (2) appointment of a sitting bankruptcy judge if the Mediation Parties cannot agree on a mediator (Motion ¶ 13). In going around the insurers to seek the appointment of Mr. Green and Mr. Finn, Debtors' own proposed order fails to live up to these terms.

32.     There is no agreement among all of the Mediation Parties regarding the selection of the Mediator(s). Hartford is one of the Mediation Parties referenced in the Motion. *See* Motion ¶ 14 ("The Debtors request that the following parties be directed to participate in the mediation (collectively, the "Mediation Parties"): . . . (e) applicable insurers under one or more insurance policies that afford the Debtors rights, benefits, indemnity or insurance coverage with respect to abuse claims[.]"). Hartford falls squarely within that definition, and with good reason -- Debtors have repeatedly recognized that the insurers are an important part of this reorganization process.

33.     Moreover, it is undisputed that Hartford (along with a number of other insurers) has not consented to the selection of Mr. Green or Mr. Finn as a mediator. The Debtors never asked or even consulted with Hartford despite repeated requests that Hartford be permitted to

participate in the process.

34. In the absence of agreement among *all* of the stakeholders, therefore, including Hartford and other insurers, the Court should consider candidates from all the parties, particularly when mediation will be ordered by the Court.

35. While Hartford does not believe that the Court needs to appoint a sitting bankruptcy judge, there are retired judges who merit consideration, including Judge Tim Lewis (ret.), Judge Joseph Farnan (ret.) and Judge Kevin Carey (ret.) as mediators in lieu of Mr. Green and Mr. Finn. All three are highly respected as jurists in this Circuit and have successfully mediated complex cases.

36. There may be additional candidates for the Court to consider, and all of the parties in interest, as well as the United States Trustee, should have the opportunity to consider the nominees with full disclosure of their connections to the parties and to this case.

37. Accordingly, the Court should decline to enter any order appointing a mediator until the nominee has made full disclosure of his or her interests in accordance with Rule 2014(a) and all parties have had a full and fair opportunity to provide candidates to the Court.

## **CONCLUSION**

Hartford respectfully requests that the Court sustain Hartford's supplemental objections as stated herein and decline to enter Debtors' proposed order.

| | |
|---|---|
| Date:  May 15, 2020<br>Wilmington, Delaware | BAYARD, P.A.<br><br>*/s/ Gregory J. Flasser*<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone:  (302) 655-5000<br>Facsimile:  (302) 658-6395<br>Email:  efay@bayardlaw.com<br>          gflasser@bayardlaw.com<br><br>- and -<br><br>James P. Ruggeri (*pro hac vice* pending)<br>Joshua D. Weinberg (admitted *pro hac vice*)<br>Abigail W. Williams (*pro hac vice* pending)<br>Shipman & Goodwin LLP<br>1875 K Street, NW, Suite 600<br>Washington, DC 20003<br>Tel:  (202) 469-7750<br>Fax:  (202) 469-7751<br><br>- and -<br><br>Eric S. Goldstein (admitted *pro hac vice*)<br>Shipman & Goodwin LLP<br>One Constitution Plaza<br>Hartford, CT 06103<br>Tel:  (860) 251-5000<br>Fax:  (860) 251-5099<br><br>*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company* |