# EXHIBIT 15

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | Jointly Administered at |
| | ) | Case No. 03-35592 JKF |
| MID-VALLEY, INC., *et al.*, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Docket No. _____ |
| | ) | |
| | ) | (Related to Docket Nos. 127 and 193) |
| | ) | |
| | ) | |
| ERIC D. GREEN, | ) | |
| | ) | Hearing Date and Time: |
| Movant, | ) | February 11, 2004 at 9:00 a.m. (ET) |
| | ) | |
| v. | ) | |
| | ) | Objection Deadline: |
| (NO RESPONDENT), | ) | January 23, 2004 |
| | ) | |
| Respondent(s). | ) | |

**APPLICATION FOR ORDER AUTHORIZING INTERIM LEGAL REPRESENTATIVE**
**FOR FUTURE CLAIMANTS TO RETAIN AND EMPLOY**
**YOUNG CONAWAY STARGATT & TAYLOR, LLP AS COUNSEL,**
**EFFECTIVE AS OF DECEMBER 16, 2003**

Eric D. Green (the "Legal Representative"),[1] as the interim legal representative for Future

Claimants (defined herein below) in the above-captioned cases, for his application (the "Application") for

an order pursuant to sections 105(a), 327, and 1103 of title 11 of the United States Code, 11 U.S.C. §§

101 *et seq.* (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing the Legal Representative to retain and employ Young Conaway Stargatt

& Taylor, LLP ("YCS&T" or the "Firm") as his attorneys effective as of December 16, 2003, respectfully

represents:

---

[1]     Capitalized terms utilized herein without definition shall have the meanings ascribed to them in the Uniform Glossary
of Defined terms for the Plan Documents attached as Exhibit A to the Disclosure Statement filed on December 16, 2003.

## INTRODUCTION

1.      On December 16, 2003 (the "Petition Date"), each of the Debtors filed voluntary petitions seeking relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors are continuing to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105(a), 327, and 1103 of the Bankruptcy Code.

## BACKGROUND

3.      The Debtors are affiliated companies that are indirect subsidiaries of Halliburton. Halliburton currently owns one-hundred percent of the stock of HESI which, in turn, owns DII Industries. DII Industries owns one-hundred percent of the interests of KBR Group Holdings, LLC ("KBR Group"), which is a non-debtor, and one-hundred percent of the stock of KBR and one-hundred percent of the interests of BPM. KBR Group and KBR directly or indirectly own all of the stock of all of the other Debtors.

4.      KBR, KBR Technical, KBR Engineering, KBR International (Delaware), KBR International (Panama), and Mid-Valley are engaged in the engineering and construction business. The engineering and construction business provides a wide range of services to energy and industrial customers and government entities in over one-hundred countries throughout the world. These companies offer integrated services and solutions relating to all phases of design, procurement, construction, project management and maintenance of facilities primarily for energy and government customers. The engineering and construction business includes the following five product segments: (a) onshore operations; (b) offshore operations; (c)

government operations; (d) operations and maintenance; and (e) infrastructure. DII Industries currently has no business operations.

      5.     The Debtors and, in particular, DII Industries and KBR are defendants in a large number of asbestos and silica-related personal-injury lawsuits pending in various parts of the United States. Predecessors of BPM are also defendants in a number of silica-related personal-injury lawsuits pending in various parts of the United States. The plaintiffs in these suits seek damages for injuries allegedly caused by exposure to asbestos or silica in products manufactured, used or sold by subsidiaries and/or former divisions of DII Industries and/or predecessors to one or more Debtors, or contained in materials used in construction or maintenance projects of KBR or its subsidiaries.

      6.     On the Petition Date, the Debtors filed their Application for an Order Appointing a Legal Representative for Purposes of Sections 105 and 524(g) of the Bankruptcy Code, (the "Appointment Application"). In the Appointment Application, the Debtors requested that the Legal Representative be granted permission to employ attorneys or other professionals consistent with sections 105, 327 and 1103 of the Bankruptcy Code.

      7.     On December 17, 2003, this Court approved the appointment of Professor Eric D. Green as Legal Representative on an interim basis subject to a further hearing scheduled for January 13, 2004.

      8.     Coincident with this Application, the Legal Representative filed his Application for Order Authorizing Legal Representative For Future Claimants to Retain and Employ Meyer, Unkovic & Scott LLP as Counsel, Effective as of December 16, 2003; Application for Order Authorizing Legal Representative for Future Claimants to Retain and Employ Resolutions, LLC as Consultants, Effective as of December 16, 2003; and Application

for Order Authorizing Legal Representative for Future Claimants to Retain and Employ

Analysis, Research & Planning Corporation as Consultants. Effective as of December 16, 2003.

The Legal Representative may seek to retain additional professionals as appropriate in

connection with these cases.

## RELIEF REQUESTED

9.     The Legal Representative requests entry of an order authorizing him to

employ as his attorneys and to retain the law firm of YCS&T, effective as of December 16,

2003.[2]

## BASIS FOR RELIEF REQUESTED

10.     Beginning in the summer of 2002, the Debtors and Asbestos Committee

began interviewing candidates to serve as the Legal Representative for future asbestos-related

and silica-related personal-injury Claimants. The Debtors sought a disinterested candidate with

recognized excellence in the field of mass torts and with complete independence and prior

experience serving as legal representative in asbestos cases. In September 2002, after reviewing

numerous suggestions, the Debtors, with the concurrence of the members of the Asbestos

Committee, asked Professor Eric D. Green to serve as Legal Representative.

11.     Following his appointment in 2002, Professor Green engaged YCS&T

pursuant to an engagement agreement, dated October 22, 2002, to serve as his counsel in

connection with his participation as representative of the class of Future Claimants. Prior to the

Petition Date, YCS&T was actively involved in, among other things, conducting due diligence

with respect to the prepetition settlement agreements and the proposed Plan. In connection with

its pre-filing services and under the terms of the pre-filing engagement agreement, YCS&T

---

[2]     YCS&T acknowledges that its retention in connection with these cases shall only be effective during the
period in which Eric Green remains the Court-approved Legal Representative.

received an retainer from the Debtors in the amount of $250,000.

        12.    Section 327(a) of the Bankruptcy Code provides, in relevant part, as

follows:

> Except as otherwise provided in this section, the trustee, with the
> court's approval, may employ one or more attorneys, accountants,
> appraisers, auctioneers, or other professional persons, that do not
> hold or represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

11 U.S.C. § 327(a).

        13.    Section 1103(a) of the Bankruptcy Code provides, in relevant part, as

follows:

> At a scheduled meeting of a committee appointed under section
> 1102 of this title, at which a majority of the members of such
> committee are present, and with the court's approval, such
> committee may select and authorize the employment by such
> committee of one or more attorneys, accountants, or other agents,
> to represent or perform services for such committee.

11 U.S.C. § 1103(a).

        14.    Bankruptcy Rule 2014(a) provides, in relevant part, as follows:

> An order approving the employment of attorneys . . . pursuant to
> § 327, § 1103, or § 1114 of the Code shall be made only on
> application of the trustee or committee. The application shall be
> filed and . . . a copy of the application shall be transmitted by the
> applicant to the United States trustee. The application shall state
> the specific facts showing the necessity for the employment, the
> name of the person to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the office of the
> United States trustee. The application shall be accompanied by a
> verified statement of the person to be employed setting forth the
> person's connections with the debtor, creditors, or any other party
> in interest, their respective attorneys and accountants, the United

States trustee, or any person employed in the office of the United
States trustee.

15.     In other chapter 11 cases, legal representatives for future claimants have

been authorized to retain counsel to assist them in performing their duties in the bankruptcy

proceedings. See, e.g., In re Pittsburgh Corning Corp., Ch. 11 Case No. 00-22876 (JKF) (Bankr.

W.D. Pa. 2000); In re North Amer. Refractories Co., Ch 11 Case No. 02-20198 (JKF) (Bankr.

W.D. Pa. 2002); In re Johns-Manville Corp., Ch. 11 Case No. 82-B-11656 (BRL) (Bankr.

S.D.N.Y. August 14, 1984); In re Keene Corp., Ch. 11 Case No. 93-B-46090 (SMB) (Bankr.

S.D.N.Y. 1994); In re The Babcock & Wilcox Co., Ch. 11 Case No. 00-1092 (Bankr. E.D. La.

2000); In re Federal-Mogul Global Inc., Ch. 11 Case No. 01-10578 (Bankr. D. Del. 2001); In re

USG Corp. (Ch. 11 Case No. 01-2094 (RJN) (Bankr. D. Del 2001); In re AC and S. Inc., Ch. 11

Case No. 02-12687 (RJN) (Bankr. D. Del. 2002); In re Kaiser Aluminum Corp., Ch. 11 Case No.

02-10429 (JKF) (Bankr. D. Del. 2002); In re Met-Coil Systems Corp. Ch. 11 Case No. 03-12676

(MFW) (Bankr. D. Del. 2003).[3]

16.     The Legal Representative seeks to retain YCS&T to represent him in these

chapter 11 cases because YCS&T's attorneys have extensive experience and knowledge in the

field of corporate reorganization, debtors' and creditors' rights and, in particular, the resolution

of asbestos-related liabilities. Accordingly, the Legal Representative believes that YCS&T is

well qualified to represent him in these chapter 11 cases.

17.     YCS&T is a general practice, litigation-oriented firm which maintains a

national, regional and local practice in the areas of corporate, bankruptcy, commercial, real

---

[3]     Eric Green, Legal Representative in the instant cases, is the legal representative for the future asbestos
bodily injury claimants in the Babcock & Wilcox and Federal-Mogul cases, and is the legal representative for the
future TCE-related personal injury claimants in the Met-Coil case. YCS&T represents Professor Green in his role as
the Legal Representative in each of these cases.

estate, personal injury, employment and environmental law. YCS&T was selected by the Legal

Representative because of YCS&T's extensive experience and knowledge in the field of debtors'

and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code.

Moreover, YCS&T has substantial experience in bankruptcy cases affecting the rights of mass-

tort claimants. YCS&T represented the legal representative for the unknown asbestos bodily

injury claimants in the Celotex bankruptcy cases (Ch. 11 Case Nos. 90-100016-8B1 and 90-

100017-8B1 (Bankr. M.D. Fla.)) and currently represents the legal representative for the

unknown asbestos bodily injury claimants in The Babcock & Wilcox Co. case (Ch. 11 Case No.

00-1092 (Bankr. E.D. La. 2000)), the Pittsburgh Corning Corp. case (Ch. 11 Case No. 00-22876

(JKF) (Bankr. W.D. Pa. 2000)), the Owens Corning case (Ch. 11 Case No. 00-3837 (Bankr. D.

Del. 2000)), the Armstrong World Indus. case (Ch. 11 Case No. 00-4471 (Bankr. D. Del. 2000)),

the Federal-Mogul Global case (Ch. 11 Case No. 01-10578 (Bankr. D. Del. 2001)), the USG

Corp. case (Ch. 11 Case No. 01-2094 (RJN) (Bankr. D. Del 2001)), the North Am. Refractories

Co. case (Ch. 11 Case No. 02-20198 (JKF) (Bankr. W.D. Pa. 2002)), the Global Indus. Tech.

case (Ch. 11 Case No. 02-21626 (JKF) (Bankr. W.D. Pa. 2002)), the AC and S case (Ch. 11 Case

No. 02-12687 (RJN) (Bankr. D. Del. 2002)) and the Kaiser Aluminum Corp. case (Ch. 11 Case

No. 02-10429 (JKF) (Bankr. D. Del. 2002)). YCS&T represents the legal representative for the

future TCE-related personal injury claimants in In re Met-Coil Systems Corp. (Ch. 11 Case No.

03-12676 (MFW) (Bankr. D. Del. 2003)). YCS&T also represents the debtor in the asbestos-

related chapter 11 case of In re Fuller-Austin Insulation Co., (No. 98-2028 (JJF) (Bankr. D. Del.

1998).

### SERVICES TO BE PROVIDED

18.     The services that YCS&T will perform will enable the Legal

Representative to execute his duties and responsibilities in connection with these chapter 11

cases. Subject to further orders of this Court, YCS&T will render the following services, among

others, to the Legal Representative:

<ol type="a">
<li>Providing legal advice with respect to the Legal Representative's powers and duties as Legal Representative for the Future Claimants;</li>

<li>Taking any and all actions necessary to protect and maximize the value of the Debtors' estates for the purpose of making distributions to Future Claimants and to represent the Legal Representative in connection with negotiating, confirming and implementing a plan of reorganization, and performing such other functions as are set forth in section 1103(c) of the Bankruptcy Code or as are reasonably necessary to effectively represent the interests of the Future Claimants;</li>

<li>Preparing, on behalf of the Legal Representative, necessary applications, motions, objections, answers, orders, reports and other legal papers in connection with the administration of the estates in these cases; and</li>

<li>Performing any other legal services and other support requested by the Legal Representative in connection with these chapter 11 cases.</li>
</ol>

19.    YCS&T has agreed to act on the Legal Representative's behalf in all of

these respects.

20.    By separate application filed contemporaneously herewith, the Legal

Representative is also seeking authorization to retain the law firm of Meyer, Unkovic & Scott

LLP ("Meyer Unkovic") as co-counsel to YCS&T. YCS&T and Meyer Unkovic have discussed

a division of responsibility and will make every effort to avoid duplication.

21.    YCS&T intends to apply for compensation from the Debtors for

professional services rendered in connection with this case and for reimbursement of actual and

necessary expenses incurred, in accordance with the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, and the local rules and orders of this Court, including the Motion

for an Administrative Order in Chapter 11 Cases Establishing Procedures for Interim

Compensation and Reimbursement of Expenses. The attorneys and paralegal presently

designated to represent the Legal Representative and their current standard hourly rates are:

| | |
|---|---|
| James L. Patton, Jr. (Partner) | $510 per hour |
| Edwin J. Harron (Partner) | $375 per hour |
| Scott Salerni (Associate) | $285 per hour |
| Sean T. Greecher (Associate) | $190 per hour |
| Stephanie Lenkiewicz (Paralegal) | $110 per hour |

In addition, the Firm may hire contract professionals to perform certain projects or tasks. The

Firm will bill any such contract professionals at a rate consistent with their experience, and the

Firm's use of any such contract professionals will be clearly denoted in its fee applications.

      22.     The hourly rates set forth above are the Firm's standard hourly rates for

work of this nature. These rates are set at a level designed to fairly compensate the Firm for the

work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is the

Firm's policy to charge its clients in all areas of practice for all other expenses incurred in

connection with the client's case. The expenses charged to clients include, among other things,

telephone and telecopier toll and other charges, mail and express mail charges, special or hand

delivery charges, document processing, photocopying charges, charges for mailing supplies

(including, without limitation, envelopes and labels) provided by the Firm to outside copying

services for use in mass mailings, travel expenses, expenses for "working meals," computerized

research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and

other overtime. The Firm will charge for these expenses in a manner and at rates consistent with

charges made generally to the Firm's other clients. The Firm believes that it is fairer to charge

these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

23.    YCS&T understands that its fees and expenses in these chapter 11 proceedings will be subject to the requirements of sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and any order entered by this Court establishing procedures for interim compensation and reimbursement of expenses of professionals.

24.    YCS&T has informed the Legal Representative that, except as otherwise disclosed herein and in the Affidavit of Edwin J. Harron (the "Harron Affidavit"), annexed hereto as Exhibit A, YCS&T represents no other entity in connection with this case, and is disinterested as that term is defined in section 101(13) of the Bankruptcy Code.

## BEST INTERESTS OF THE ESTATES

25.    YCS&T's bankruptcy and restructuring attorneys are, in the Legal Representative's view, highly skilled, and have already developed a familiarity with the Debtors' affairs and the issues involved in these cases. The Legal Representative therefore believes that the retention of YCS&T is in the best interest of the Debtors, their estates and creditors as well as in the best interest of the Future Claimants.

## NOTICE

26.    The Legal Representative has provided notice of this Application and the requested relief to (i) the Office of the United States Trustee, (ii) the Debtors, (iii) counsel to Halliburton, (iv) counsel for the unofficial claimants' committee, (v) the creditors holding the thirty (30) largest claims against the Debtors on a consolidated basis or their counsel, if known, and (vi) other interested parties.

## NO PREVIOUS REQUEST

24.    No previous request for the relief sought in this Application has been made to this or any other Court.

WHEREFORE, the Legal Representative requests entry of an order authorizing him to employ and retain the firm of YCS&T, effective as of December 16, 2003, to represent the Legal Representative in these chapter 11 cases, and granting such other and further relief as is just and proper.

Dated: December 1⁹, 2003

Eric D. Green, as Legal Representative

Dated: 1/6/04

MEYER UNKOVIC & SCOTT LLP

By: Joel M. Helmrich
    Joel M. Helmrich, Esquire
    Pa. I.D. #30733
    Kevin C. Hansen, Esquire
    Pa. I.D. #21899

    1300 Oliver Building
    Pittsburgh, PA  15222
    Telephone:    (412) 456-2800
    Fax:          (412) 456-2864

    and

    James L. Patton, Esquire
    Edwin J. Harron, Esquire
    Young Conway Stargatt & Taylor
    The Brandywine Building, 17th Floor
    1000 West Street
    Wilmington, DE  19801

    Telephone: (302) 571-6600
    Facsimile: (302) 571-1253

    Proposed Counsel for Interim Futures Representative

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Jointly Administered at |
| | ) | Case No. 03-35592 JKF |
| MID-VALLEY, INC., *et al.*, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Docket No. _____ |
| | ) | |
| | ) | (Related to Docket Nos. 127 and 193) |
| | ) | |
| ERIC D. GREEN, | ) | |
| | ) | Hearing Date and Time: |
| Movant, | ) | February 11, 2004 at 9:00 a.m. (ET) |
| | ) | |
| v. | ) | |
| | ) | Objection Deadline: |
| (NO RESPONDENT), | ) | January 23, 2004 |
| | ) | |
| Respondent(s). | ) | |

### AFFIDAVIT OF EDWIN J. HARRON IN SUPPORT OF
### APPLICATION FOR ORDER AUTHORIZING PROPOSED LEGAL
### REPRESENTATIVE FOR FUTURE CLAIMANTS TO RETAIN AND EMPLOY
### YOUNG CONAWAY STARGATT & TAYLOR, LLP AS COUNSEL
### PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a)

| | |
|---|---|
| State of Delaware | ) |
| | ) ss.: |
| County of New Castle | ) |

EDWIN J. HARRON, ESQUIRE, pursuant to 28 U.S.C. § 1746, deposes and says:

1.     I am a partner in the firm of Young Conaway Stargatt & Taylor, LLP

("YCS&T" or the "Firm"), The Brandywine Building, 1000 West Street, 17th Floor, Wilmington,

Delaware 19801. I am duly admitted to practice before the Supreme Court of Delaware, the

United States District Court for the District of Delaware, and the United States Court of Appeals

for the Third Circuit. I am authorized to make this affidavit (the "Affidavit") on behalf of

YCS&T. This Affidavit is submitted pursuant to Rule 2014(a) of the Federal Rules of

Bankruptcy Procedure in support of the Application of Eric D. Green (the "Legal

Representative"), in his capacity as the legal representative[1] for future claimants (the "Future

Claimants") in the above-captioned chapter 11 cases for an order authorizing the employment of

YCS&T as counsel to the Legal Representative (the "Application")

## DISINTERESTEDNESS OF PROFESSIONALS

    2.    Based on the conflicts search conducted to date[2] and described herein, to

the best of my knowledge, neither I, the firm, nor any partner, counsel or associate thereof,

insofar as I have been able to ascertain, has any connection with the above-captioned Debtors,

their creditors, the Legal Representative, or any other parties in interest, or their respective

attorneys and accountants, and the United States Trustee or any person employed in the office of

the United States Trustee, except as disclosed or as otherwise described herein.

    3.    YCS&T is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that

the Firm, its partners, counsel and associates:

    a.    are not creditors, equity security holders or insiders of the Debtors;

    b.    are not and were not investment bankers for any outstanding security of the Debtors;

    c.    have not been, within three years before the date of the filing of the Debtors' chapter 11 petitions, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

    d.    are not and were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee

---

[1] On December 17, 2003, this Court appointed Eric Green as the Legal Representative on an interim basis subject to a further hearing on January 13, 2004

[2] In the event that YCS&T subsequently discovers any information that requires disclosure, YCS&T will supplement this Affidavit as necessary

of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

4.    I am not related, and to the best of my knowledge, no attorney at the Firm is related, to any United States Bankruptcy Judge in this District or to the United States Trustee for such district or any employee thereof.

5.    YCS&T has a large personal injury and workers' compensation practice and frequently represents clients adverse to many of the insurance companies who provide coverage to the Debtors and whose policies may be implicated during the course of these proceedings. Members of YCS&T also have acted as arbitrators in numerous matters where certain of the insurance companies involved with the Debtors were parties, either directly or indirectly, to the underlying dispute.

6.    Three partners of the firm currently act as local counsel for various insurance companies in certain declaratory judgment actions pending in Delaware involving non-asbestos-related product liability, environmental and toxic tort coverage claims. Some of these insurers may provide insurance to the Debtors. The insurer-defendants in these matters include American International Group ("AIG")-related companies, including AIG Europe (UK) Limited; AIU Insurance Company, American Home Assurance Company, Birmingham Fire Insurance Company of Pennsylvania, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company; Allianz Insurance Company and Allianz Underwriters Insurance Company; American Re-Insurance Company; Commonwealth Insurance Company; Continental Casualty Company; Employers Mutual Casualty Company; General Casualty Insurance Company of Wisconsin; Highlands Insurance Company; The Home Insurance Co., Insco Limited; International Insurance

Company (including as successor to International Surplus Lines Insurance Company); Seaboard Surety Insurance Company; St. Paul Fire & Marine Insurance Company; Westport Insurance Company (as successor to Puritan Insurance Company); and Winterthur International America Insurance Company. These partners also serve as local counsel for certain AIG-related companies, American Re-Insurance Company (as successor to American Excess Insurance Company), and Employers Mutual Casualty Company in one declaratory judgment action pending in Delaware which involves the enforcement of settlement agreements relating to certain unrelated asbestos claims. YCS&T also represents Continental Casualty Company, Commonwealth Insurance Company, and Winterthur International America Insurance Company in a "Y2K" coverage case brought by Owens-Corning.

        7.     YCS&T is a general practice, litigation-oriented firm which maintains a national, regional and local practice in the areas of corporate, bankruptcy, commercial, real estate, personal injury, employment and environmental law. YCS&T was selected by the Legal Representative because of YCS&T's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. Moreover, YCS&T has substantial experience in bankruptcy cases affecting the rights of mass-tort claimants. YCS&T represented the legal representative for the unknown asbestos bodily injury claimants in the Celotex bankruptcy cases (Ch. 11 Case Nos. 90-100016-8B1 and 90-100017-8B1 (Bankr. M.D. Fla.)) and currently represents the legal representative for the unknown asbestos bodily injury claimants in The Babcock & Wilcox Co. case (Ch. 11 Case No. 00-1092 (Bankr. E.D. La. 2000)), the Pittsburgh Corning Corp. case (Ch. 11 Case No. 00-22876 (JKF) (Bankr. W.D. Pa. 2000)), the Federal-Mogul Global Inc. case (Ch. 11 Case No. 01-10578 (Bankr. D. Del. 2001)), the Owens Corning case (Ch. 11 Case No. 00-3837 (Bankr. D. Del.

2000)), the <u>Armstrong World Industries</u> case (Ch. 11 Case No 00-4471 (Bankr. D. Del. 2000)),

the <u>USG Corp.</u> case (Ch. 11 Case No. 01-2094 (RJN) (Bankr. D. Del 2001)), the <u>North Am.</u>

<u>Refractories Co.</u> case (Ch. 11 Case No. 02-20198 (JKF) (Bankr. W.D. Pa. 2002)), the <u>Global</u>

<u>Industrial Technologies</u> case (Ch. 11 Case No 02-21626 (JKF) (Bankr. W.D. Pa. 2002)), the <u>AC</u>

<u>and S</u> case (Ch. 11 Case No 02-12687 (RJN) (Bankr. D. Del. 2002)) and the <u>Kaiser Aluminum</u>

<u>Corp.</u> case (Ch. 11 Case No. 02-10429 (JKF) (Bankr. D. Del. 2002)).[3] YCS&T represents the

legal representative for the future TCE-related personal injury claimants in <u>In re Met-Coil</u>

<u>Systems Corp.</u> (Ch. 11 Case No. 03-12676 (MFW) (Bankr. D. Del 2003)). YCS&T also

represents the debtor in the asbestos-related chapter 11 case of <u>In re Fuller-Austin Insulation</u>

<u>Company,</u> (No. 98-2028 (JJF) (Bankr. D. Del 1998)).

      8.    In addition, the Firm and certain of its partners. counsel and associates

may have in the past represented, may currently represent, and likely in the future will represent

parties in interest of the Debtor in connection with matters unrelated to the Debtors and these

cases.

      9.    None of the representations described above are materially adverse to the

interests of the estate, any class of creditors or equity security holders, or the Legal

Representative. Thus, YCS&T is disinterested and may act as counsel to the Legal

Representative notwithstanding that it represents creditors in unrelated matters.

      10.    Neither I, the Firm, nor any partner, counsel, or associate thereof, insofar

as I have been able to ascertain, represents any interest adverse either to the Legal Representative

or the Debtors herein or their estates in the matter upon which the Firm is to be engaged.

---

[3] Eric Green is the legal representative for the future asbestos bodily injury claimants in the <u>Babcock &</u>
<u>Wilcox</u> and <u>Federal-Mogul</u> cases. YCS&T represents Professor Green in his role as the Legal
Representative in each of these cases

11.     YCS&T will periodically review its files during the pendency of this chapter 11 case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, YCS&T will use reasonable efforts to identify such further developments and will promptly file a Supplemental Affidavit as Bankruptcy Rule 2014(a) requires

## PROFESSIONAL COMPENSATION

12.     The Firm intends to apply for compensation for professional services rendered in connection with these chapter 11 cases subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, this Court's Local Rules and Orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that the Firm incurs. YCS&T will charge hourly rates for its services in this case that are consistent with the rates charged by YCS&T in bankruptcy and non-bankruptcy matters of this type. These hourly rates are subject to periodic adjustments, without further notice to the Court or any other entity, to reflect economic and other conditions. The principal attorneys and paralegals designated to represent the Legal Representative and their current standard hourly rates are:

| | |
|---|---|
| James L. Patton, Jr. (Partner) | $510 per hour |
| Edwin J. Harron (Partner) | $375 per hour |
| Scott Salerni (Associate) | $285 per hour |
| Sean T. Greecher (Associate) | $190 per hour |
| Stephanie Warren (Paralegal) | $95 per hour |

In addition, the Firm may hire certain contract professionals to perform certain projects or tasks. The Firm will bill any such contract professionals at a rate consummate with their experience

and any such contract professionals will be clearly denoted in the fee applications filed by
YCS&T.

     13.    It is the Firm's policy to charge its clients in all areas of practice for all
other expenses incurred in connection with the client's case.  The expenses charged to clients
include among other things, photocopying, witness fees, travel expenses, including airline
upgrade certificates, certain secretarial and other overtime expenses, filing and recordation fees,
long distance telephone calls, postage, express mail and messenger charges, computerized legal
research charges and other computer services, expenses for "working meals" and telecopier
charges.  The Firm will charge for these expenses in a manner and at rates consistent with
charges made generally to the Firm's other clients  The Firm believes that it is fairer to charge
these expenses to the particular client rather than increasing the hourly rates and spreading the
expenses among all clients

     14.    Prior to the Petition Date, YCS&T was actively involved in, among other
things, conducting due diligence with respect to the prepetition settlement agreements and the
proposed Plan.  In connection with its pre-filing services and under the terms of the pre-filing
engagement agreement, prior to the Petition Date, YCS&T received payment from the Debtors
for fees and expenses incurred in the total amount of $1,591,636.01  YCS&T currently holds a
retainer in connection with these chapter 11 cases in the amount of $221,008.31 which will serve
as YCS&T's retainer for these cases and will be held by YCS&T as security to pay any Court-
approved fees, charges and disbursements that remain unpaid at the conclusion of these cases.

     15.    By separate application filed contemporaneously herewith, the Legal
Representative is also seeking authorization to retain the law firm of  Meyer, Unkovic & Scott
LLP ("Meyer Unkovic") as Co-Counsel to YCS&T.  YCS&T and Meyer Unkovic have

discussed a division of responsibility and will make every effort to avoid duplication.

16.   No promises have been received by the Firm nor by any partner, counsel or associate thereof as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.   The Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with these chapter 11 cases.

17.   YCS&T further states pursuant to Federal Rule of Bankruptcy Procedure 2016(b) that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel and associates of YCS&T, or (b) any compensation another person or party has received or may receive.

18.   YCS&T acknowledges that its retention shall only be effective during the period in which Eric Green remains the Court-appointed Legal Representative in these cases.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing

is true and correct.

_____
EDWIN J. HARRON, ESQUIRE
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street – 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Telephone: (302) 571-6600
Facsimile:  (302) 571-1253

Dated: December 19th, 2003

Sworn to and subscribed before
me this 19th day of Dec., 2003

_____
Notary Public

My Commission Expires: _____

**JUNE L. WELCH
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Aug. 23, 2007**

WP3:952341 4                                           61315 1017