## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARTFORD ACCIDENT AND INDEMNITY COMPANY AND FIRST STATE INSURANCE COMPANY,<br><br>            Plaintiffs,<br>   v.<br><br>BOY SCOUTS OF AMERICA; ALOHA COUNCIL; CASCADE PACIFIC COUNCIL; CENTRAL FLORIDA COUNCIL; CHIEF SEATTLE COUNCIL; CIRCLE TEN COUNCIL; CONNECTICUT YANKEE COUNCIL; CONNECTICUT YANKEE AND FAIRFIELD COUNTY COUNCIL; CRATER LAKE COUNCIL; GAMEHAVEN COUNCIL; GLACIER'S EDGE COUNCIL; GREAT ALASKA COUNCIL; GREATER LOS ANGELES AREA COUNCIL; INLAND NORTHWEST COUNCIL; KATAHDIN AREA COUNCIL; LINCOLN HERITAGE COUNCIL; LONGHORN COUNCIL; LONGS PEAK COUNCIL; MAYFLOWER COUNCIL; MOHEGAN COUNCIL; MONTANA COUNCIL; MOUNT BAKER COUNCIL; MOUNT DIABLO SILVERADO; NEW JERSEY COUNCIL; NORTH FLORIDA COUNCIL; NORTHEAST GEORGIA COUNCIL; NORTHERN NEW JERSEY COUNCIL; NORTHERN STAR COUNCIL; OREGON COUNCIL; OREGON TRAIL COUNCIL; ORE-IDA COUNCIL; PACIFIC HARBORS COUNCIL; PATRIOTS' PATH COUNCIL; PEE DEE AREA COUNCIL; SAGAMORE COUNCIL; SAM HOUSTON AREA COUNCIL; SHAWNEE TRAILS COUNCIL; SOUTH FLORIDA COUNCIL; SPIRIT OF ADVENTURE COUNCIL; TIDEWATER COUNCIL; INSURANCE COMPANY OF NORTH AMERICA; ARGONAUT INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA; CERTAIN UNDERWRITERS AT LLOYD'S LONDON; | Case No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT** |

TRAVELERS CASUALTY AND SURETY
COMPANY, INC. (f/k/a Aetna Casualty and
Surety Company); ALLIANZ GLOBAL RISKS
US INSURANCE COMPANY (f/k/a Allianz
Insurance Company); NATIONAL SURETY
CORPORATION; LANDMARK INSURANCE
COMPANY; COLUMBIA CASUALTY
COMPANY; ARROWOOD INDEMNITY
COMPANY (f/k/a Royal Indemnity Company);
FEDERAL INSURANCE COMPANY; UNITED
STATES FIRE INSURANCE COMPANY;
UTICA MUTUAL INSURANCE COMPANY;
PACIFIC EMPLOYERS INSURANCE
COMPANY; HARBOR INSURANCE
COMPANY; PAUL FIRE SURPLUS LINES
INSURANCE COMPANY; CHUBB CUSTOM
INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; AMERICAN
ZURICH INSURANCE COMPANY; THE
INSURANCE COMPANY OF THE STATE OF
PENNSYLVANIA; TIG INSURANCE
COMPANY, AS SUCCESSORY TO MERGER
TO INTERNATIONAL INSURANCE
COMPANY; GENERAL STAR INDEMNITY
COMPANY; WESTCHESTER SURPLUS
LINES INSURANCE COMPANY (f/k/a
INDUSTRIAL INSURANCE COMPANY OF
HAWAII); INDUSTRIAL INDEMNITY
COMPANY; GULF INSURANCE COMPANY;
NIAGARA FIRE INSURANCE COMPANY;
CALIFORNIA UNION INSURANCE
COMPANY; AGRICULTURAL INSURANCE
COMPANY; TEXAS PACIFIC INDEMNITY
COMPANY; LIBERTY MUTUAL
INSURANCE COMPANY; CONTINENTAL
INSURANCE COMPANY

                          Defendants.

Hartford Accident and Indemnity Company ("Hartford A&I") and First State Insurance Company ("First State") (together, "Hartford"), by and through their attorneys, for their Complaint, state and allege as follows:

## NATURE OF THE ACTION

1.     This is a comprehensive adversary proceeding seeking declaratory judgment and contribution relating to claims for insurance coverage for all underlying abuse claims against Boy Scouts of America ("BSA") and certain of its local councils.

2.     BSA has been named as a defendant in numerous lawsuits in which the underlying plaintiffs allege that they were sexually abused while participating in BSA programs (the "Underlying Lawsuits").  In addition to BSA, the underlying plaintiffs generally also name the relevant local council as a defendant in each Underlying Lawsuit.

3.     BSA and certain of its local councils have sought defense and indemnity from Hartford for the Underlying Lawsuits, and disputes have arisen as to whether and the extent to which Hartford has coverage obligations for those lawsuits.

4.     Hartford accordingly seeks declarations regarding the parties' respective rights and obligations under the policies that Hartford issued to BSA and/or its local councils.

5.     On information and belief, BSA for itself and the local councils has procured primary, umbrella and excess liability insurance from the defendant insurers that provides coverage for the Underlying Lawsuits on terms and conditions similar to those found in the Hartford policies.

6.     To the extent that Hartford is found to have defense and/or indemnity obligations to BSA and/or its local councils for the Underlying Lawsuits, therefore, Hartford seeks an

appropriate allocation of responsibility for the defense and indemnity costs of those Underlying

Lawsuits, as well as contribution from the other insurers of BSA and/or its local councils.

## JURISDICTION AND VENUE

7.        This Court has jurisdiction pursuant to 28 U.S.C. § 1334 (b) because this

adversary proceeding is related to the Chapter 11 case, *In re: Boy Scouts of America et al.*,

pending in the United States Bankruptcy Court for the District of Delaware, case no. 20-10343

(LSS).

8.        This Court has personal jurisdiction over Defendants pursuant to Federal Rule of

Bankruptcy Procedure 7004(f).

9.        Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

10.       This proceeding is a non-core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PARTIES

### *Hartford Insurers*

11.       Hartford A&I is a Connecticut corporation with its principal place of business in

Connecticut.

12.       First State is a Connecticut corporation with its principal place of business in

Connecticut.

### *BSA and Local Councils*

13.       On information and belief, BSA is a congressionally chartered organization with

its headquarters in Irving, Texas.  Prior to 1979, BSA was domiciled in New Jersey.  On

information and belief, BSA asserts rights under policies issued by Hartford and the defendant

insurers in this action.

14.     On information and belief, Aloha Council is a not-for-profit corporation organized under the laws of Hawaii with its principal place of business in Hawaii.  On information and belief, Aloha Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

15.     On information and belief, Cascade Pacific Council is a not-for-profit corporation organized under the laws of Oregon with its principal place of business in Oregon.  On information and belief, Cascade Pacific Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

16.     On information and belief, Central Florida Council is a not-for-profit corporation organized under the laws of Florida with its principal place of business in Florida.  On information and belief, Central Florida Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

17.     On information and belief, Chief Seattle Council is a not-for-profit corporation organized under the laws of Washington with its principal place of business in Washington.  On information and belief, Chief Seattle Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

18.     On information and belief, Circle Ten Council is a not-for-profit corporation organized under the laws of Texas with its principal place of business in Texas.  On information and belief, Circle Ten Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

19.     On information and belief, Connecticut Yankee Council is a not-for-profit corporation organized under the laws of Connecticut with its principal place of business in

Connecticut.  On information and belief, Connecticut Yankee Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

20.    On information and belief, Connecticut Yankee and Fairfield County Council is a not-for-profit corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  On information and belief, Connecticut Yankee and Fairfield County Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

21.    On information and belief, Crater Lake Council is a not-for-profit corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  On information and belief, Crater Lake Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

22.    On information and belief, Gamehaven Council is a not-for-profit corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  On information and belief, Gamehaven Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

23.    On information and belief, Glacier's Edge Council is a not-for-profit corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin.  On information and belief, Glacier's Edge Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

24.    On information and belief, Great Alaska Council is a not-for-profit corporation organized under the laws of Alaska with its principal place of business in Alaska.  On information and belief, Great Alaska Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

25.     On information and belief, Greater Los Angeles Area Council is a not-for-profit corporation organized under the laws of California with its principal place of business in California.  On information and belief, Greater Los Angeles Area Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

26.     On information and belief, Inland Northwest Council is a not-for-profit corporation organized under the laws of Washington with its principal place of business in Washington.  On information and belief, Inland Northwest Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

27.     On information and belief, Katahdin Area Council is a not-for-profit corporation organized under the laws of Maine with its principal place of business in Maine.  On information and belief, Katahdin Area Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

28.     On information and belief, Lincoln Heritage Council is a not-for-profit corporation organized under the laws of Kentucky with its principal place of business in Kentucky.  On information and belief, Lincoln Heritage Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

29.     On information and belief, Longhorn Council is a not-for-profit corporation organized under the laws of Texas with its principal place of business in Texas.  On information and belief, Longhorn Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

30.     On information and belief, Longs Peak Council is a not-for-profit corporation organized under the laws of Colorado with its principal place of business in Colorado.  On

information and belief, Longs Peak Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

31.    On information and belief, Mayflower Council is a not-for-profit corporation organized under the laws of Massachusetts with its principal place of business in Massachusetts. On information and belief, Mayflower Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

32.    On information and belief, Mohegan Council is a not-for-profit corporation organized under the laws of Massachusetts with its principal place of business in Massachusetts. On information and belief, Mohegan Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

33.    On information and belief, Montana Council is a not-for-profit corporation organized under the laws of Montana with its principal place of business in Montana.  Montana Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

34.    On information and belief, Mount Baker Council is a not-for-profit corporation organized under the laws of Washington with its principal place of business in Washington. Mount Baker Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

35.    On information and belief, Mount Diablo Silverado Council is a not-for-profit corporation organized under the laws of California with its principal place of business in California.  On information and belief, Mount Diablo Silverado Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

36.    On information and belief, New Jersey Council is a not-for-profit corporation organized under the laws of New Jersey with its principal place of business in New Jersey.  On

information and belief, New Jersey Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

37.     On information and belief, North Florida Council is a not-for-profit corporation organized under the laws of Florida with its principal place of business in Florida.  On information and belief, North Florida Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

38.     On information and belief, Northeast Georgia Council is a not-for-profit corporation organized under the laws of Georgia with its principal place of business in Georgia. On information and belief, Northeast Georgia Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

39.     On information and belief, Northern New Jersey Council is a not-for-profit corporation organized under the laws of New Jersey with its principal place of business in New Jersey.  On information and belief, Northern New Jersey Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

40.     On information and belief, Northern Star Council is a not-for-profit corporation organized under the laws of Minnesota with its principal place of business in Minnesota.  On information and belief, Northern Star Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

41.     On information and belief, Oregon Council is a not-for-profit corporation organized under the laws of Oregon with its principal place of business in Oregon.  On information and belief, Oregon Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

42.     On information and belief, Oregon Trail Council is a not-for-profit corporation organized under the laws of Oregon with its principal place of business in Oregon.  On information and belief, Oregon Trail Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

43.     On information and belief, Ore-Ida Council is a not-for-profit corporation organized under the laws of Idaho with its principal place of business in Idaho.  On information and belief, Ore-Ida Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

44.     On information and belief, Pacific Harbors Council is a not-for-profit corporation organized under the laws of Washington with its principal place of business in Washington.  On information and belief, Pacific Harbors Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

45.     On information and belief, Patriots' Path Council is a not-for-profit corporation organized under the laws of New Jersey with its principal place of business in New Jersey.  On information and belief, Patriots' Path Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

46.     On information and belief, Pee Dee Area Council is a not-for-profit corporation organized under the laws of South Carolina with its principal place of business in South Carolina.  On information and belief, Pee Dee Area Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

47.     On information and belief, Sagamore Council is a not-for-profit corporation organized under the laws of New Mexico with its principal place of business in New Mexico.

On information and belief, Sagamore Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

48.    On information and belief, Sam Houston Area Council is a not-for-profit corporation organized under the laws of Texas with its principal place of business in Texas.  On information and belief, Sam Houston Area Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

49.    On information and belief, Shawnee Trails Council is a not-for-profit corporation organized under the laws of Kentucky with its principal place of business in Kentucky.  On information and belief, Shawnee Trails Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

50.    On information and belief, South Florida Council is a not-for-profit corporation organized under the laws of Florida with its principal place of business in Florida.  On information and belief, South Florida Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

51.    On information and belief, Spirit of Adventure Council is a not-for-profit corporation organized under the laws of Massachusetts with its principal place of business in Massachusetts.  On information and belief, Spirit of Adventure Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

52.    On information and belief, Tidewater Council is a not-for-profit corporation organized under the laws of Virginia with its principal place of business in Virginia.  On information and belief, Tidewater Council asserts rights under policies issued by Hartford and the defendant insurers in this action.

### *BSA's Other Insurers*

53.    On information and belief, Insurance Company of North America ("INA") is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  On information and belief, INA issued liability policies to BSA covering the time periods January 1, 1962 to January 1, 1972 and January 1, 1978 to March 1, 1996.

54.    On information and belief, Argonaut Insurance Company ("Argonaut") is a corporation organized under the laws of Illinois with its principal place of business in Texas.  On information and belief, Argonaut issued a liability policy to BSA covering the time period May 1, 1973 to January 1, 1975.

55.    On information and belief, National Union Fire Insurance Company of Pittsburgh PA ("National Union") is a corporation organized under the laws of Pennsylvania with its principal place of business in New York.  On information and belief, National Union issued liability policies to BSA covering the time periods January 1, 1975 to January 1, 1979, March 1, 1986 to March 1, 1988 and March 1, 1989 to March 1, 1990.

56.    On information and belief, Certain Underwriters at Lloyd's London ("Lloyd's") consists of members of underwriting syndicates, which conduct or have conducted business at the insurance marketplace known as Lloyd's, London, which is chartered under the laws of the United Kingdom.  On information and belief, Lloyd's issued liability policies to BSA covering the time periods September 17, 1976 to September 17, 1979 and January 1, 1981 to January 1, 1983.

57.    On information and belief, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company) ("Travelers") is a corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  On information and belief,

Travelers issued liability policies to BSA covering the time period January 1, 1979 to January 1, 1981.

58.      On information and belief, Allianz Global Risks US Insurance Company (f/k/a Allianz Insurance Company) ("Allianz"), is a corporation organized under the laws of Illinois with its principal place of business in Illinois.  On information and belief, Allianz issued a liability policy to BSA covering the time period January 1, 1980 to January 1, 1981.

59.      On information and belief, Transit Casualty Insurance Company ("Transit") is a corporation organized under the laws of Missouri with its principal place of business in California.  On information and belief, Transit was declared insolvent and the subsequent receivership has been closed.  Accordingly, Transit is not named as a party herein.

60.      On information and belief, National Surety Corporation ("National Surety") is a corporation organized under the laws of Delaware with its principal place of business in Illinois. On information and belief, National Surety issued liability policies to BSA covering the time periods January 1, 1983 to January 1, 1985 and October 19, 1990 to March 1, 1997.

61.      On information and belief, Mission National Insurance Company ("Mission") is a corporation organized under the laws of California with its principal place of business in Massachusetts.  On information and belief, Mission was declared insolvent and the subsequent receivership has been closed.  Accordingly, Mission is not named as a party herein.

62.      On information and belief, Landmark Insurance Company ("Landmark") was a corporation organized under the laws of the California with its principal place of business in Massachusetts.  On information and belief, Landmark has merged with National Union Fire Insurance Company of Pittsburgh, PA, the latter being the surviving entity.  On information and

belief, Landmark issued a liability policy to BSA covering the time period December 31, 1984 to March 1, 1986.

63.     On information and belief, Columbia Casualty Company ("Columbia") is a corporation organized under the laws of Illinois with its principal place of business in Illinois. On information and belief, Columbia issued a liability policy to BSA covering the time period January 1, 1985 to March 1, 1986.

64.     On information and belief, Highlands Insurance Company ("Highlands") was a corporation organized under the laws of Texas with its principal place of business in New Jersey. On information and belief, Highlands is currently in receivership.  Accordingly, it is not named as a party herein.

65.     On information and belief, Arrowood Indemnity Company (f/k/a Royal Indemnity Company) ("Arrowood") is a corporation organized under the laws of Delaware with its principal place of business in North Carolina.  On information and belief, Arrowood issued liability policies to BSA covering the time periods December 31, 1984 to March 1, 1986 and March 1, 1989 to March 1, 1991.

66.     On information and belief, Federal Insurance Company ("Federal") is a corporation organized under the laws of Indiana with its principal place of business in New Jersey.  On information and belief, Federal issued liability policies to BSA covering the time periods December 31, 1984 to March 1, 1986 and March 1, 1988 to March 1, 1994.

67.     On information and belief, United States Fire Insurance Company ("U.S. Fire") is a corporation organized under the laws of Delaware with its principal place of business in New Jersey.  On information and belief, U.S. Fire issued liability policies to BSA covering the time period March 1, 1986 to March 1, 1990.

68.     On information and belief, Utica Mutual Insurance Company ("Utica") is a corporation organized under the laws of New York with its principal place of business in New York.  On information and belief, Utica issued a liability policy to BSA covering the time period March 1, 1986 to March 1, 1987.

69.     On information and belief, Pacific Employers Insurance Company ("Pacific Employers") is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  On information and belief, Pacific Employers issued a liability policy to BSA covering the time period April 1, 1986 to March 1, 1987.

70.     On information and belief, Harbor Insurance Company ("Harbor") is a corporation organized under the laws of Oklahoma with its principal place of business in Oklahoma.  On information and belief, Harbor issued a liability policy to BSA covering the time period May 20, 1986 to March 1, 1987.

71.     On information and belief, St. Paul Surplus Lines Insurance Company ("St. Paul Surplus") is a corporation organized under the laws of Delaware with its principal place of business in Minnesota.  On information and belief, St. Paul Surplus issued a liability policy to BSA covering the time periods May 28, 1986 to March 1, 1990 and March 1, 1993 to March 1, 1997.

72.     On information and belief, Chubb Custom Insurance Company ("Chubb") is a corporation organized under the laws of Delaware with its principal place of business in New Jersey.  On information and belief, Chubb issued a liability policy to BSA covering the time period June 3, 1986 to March 1, 1987.

73.     On information and belief, Lexington Insurance Company ("Lexington") is a corporation organized under the laws of the Delaware with its principal place of business in

Massachusetts.  On information and belief, Lexington issued liability policies to BSA covering the time period March 1, 1988 to March 1, 1994.

74.      On information and belief, Reliance Insurance Company (f/k/a Planet Insurance Company) ("Reliance") is a corporation organized under the laws of Pennsylvania with its principal place of business in Pennsylvania.  On information and belief, Reliance was declared insolvent and put into receivership.  Accordingly, Reliance is not named as a party herein.

75.      On information and belief, American Zurich Insurance Company ("Zurich") is a corporation organized under the laws of New York with its principal place of business in Illinois.  On information and belief, Zurich issued liability policies to BSA covering the time periods March 1, 1989 to March 1, 1990 and March 1, 1996 to March 1, 1997.

76.      On information and belief, The Insurance Company of the State of Pennsylvania ("ICSOP") is a corporation organized under the laws of Illinois with its principal place of business in New York.  On information and belief, ICSOP issued a liability policy to BSA covering the time period March 1, 1990 to March 1, 1991.

77.      On information and belief, TIG Insurance Company as successor to merger to International Insurance Company ("International") is a corporation organized under the laws of California with its principal place of business in New Hampshire.  On information and belief, International issued liability policies to BSA covering the time periods December 31, 1984 to March 1, 1986, and March 1, 1990 to March 1, 1993.

78.      On information and belief, General Star Indemnity Company ("General Star") is a corporation organized under the laws of Delaware with its principal place of business in Connecticut.  On information and belief, General Star issued liability policies to BSA covering the time periods March 1, 1990 to March 1, 1991 and March 1, 1992 to March 1, 1996.

14

79.      On information and belief, Westchester Surplus Lines Insurance Company (f/k/a Industrial Insurance Company of Hawaii) ("Westchester Surplus") is a corporation organized under the laws of Georgia with its principal place of business in Pennsylvania.  On information and belief, Westchester Surplus issued a liability policy to BSA covering the time period March 1, 1990 to March 1, 1991.

80.      On information and belief, Industrial Indemnity Company ("Industrial") is a corporation organized under the laws of Delaware with its principal place of business in Connecticut.  On information and belief, Industrial issued a liability policy to BSA covering the time period March 1, 1991 to March 1, 1992.

81.      On information and belief, Gulf Insurance Company ("Gulf") is a corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  On information and belief, Gulf issued liability policies to BSA covering the time period October 19, 1990 to March 1, 1993.

82.      On information and belief, Niagara Fire Insurance Company ("Niagara") is a corporation organized under the laws of Illinois with its principal place of business in Illinois. On information and belief, Niagara issued liability policies to BSA covering the time period October 19, 1990 to March 1, 1996.

83.      On information and belief, California Union Insurance Company ("Cal Union") is a corporation organized under the laws of California with its principal place of business in Pennsylvania.  On information and belief, Cal Union issued a liability policy to BSA covering the time period March 1, 1992 to March 1, 1993.

84.      On information and belief, Agricultural Insurance Company ("Agricultural") is a corporation organized under the laws of Ohio with its principal place of business in Ohio.  On

information and belief, Agricultural issued liability policies to BSA covering the time period

March 1, 1993 to March 1, 1997.

85.     On information and belief, Texas Pacific Indemnity Company ("Texas Pacific") is

a corporation organized under the laws of Texas with its principal place of business in New

Jersey.  On information and belief, Texas Pacific issued liability policies to BSA for the time

period March 1, 1994 to March 1, 1997.

86.     On information and belief, Liberty Mutual Insurance Company ("Liberty") is a

corporation organized under the laws of Massachusetts with its principal place of business in

Massachusetts.  On information and belief, Liberty issued a liability policy to BSA for the time

period March 1, 1996 to March 1, 1997.

87.     On information and belief, Continental Insurance Company ("Continental") is a

corporation organized under the laws of Pennsylvania with its principal place of business in New

York.  On information and belief, Continental issued a liability policy to BSA for the time period

March 1, 1996 to March 1, 1997.

88.     The insurer defendants in Paragraphs 53-58, 60, 62-63, 65-73 and 75-88 are

hereinafter collectively referred to as the "Insurer Defendants."

## BACKGROUND

### *The Hartford Policies*

89.     Hartford A&I issued the following primary general liability policies to BSA (the

"Hartford A&I Primary Policies"):

| Policy Number | Policy Period |
|---|---|
| 10CA43315 | 09/21/1971-01/01/1972 |
| 10CA43303 | 01/01/1972-01/01/1974 |
| 10CA43329 | 01/01/1974-01/01/1975 |
| 10CA43342E | 01/01/1975-01/01/1976 |
| 10CA43349E | 01/01/1976-01/01/1977 |

| 10CA43359E | 01/01/1977-01/01/1978 |

90.    Hartford A&I primary policies no. 10CA43349E, for policy period January 1,

1976 to January 1, 1977, and no. 10CA43359E, for policy period January 1, 1977 to January 1,

1978, were released by BSA pursuant to a confidential settlement agreement.

91.    The Hartford A&I Primary Policies each contain the following or substantially

similar provisions:

> The company will pay on behalf of the *insured* all sums which the insured shall become legally obligated to pay as *damages* because of . . . *bodily injury* . . . to which this insurance applies, caused by an *occurrence* . . . .
>
> * * *
>
> "Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the *insured*.
>
> * * *
>
> "Bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period.
>
> * * *
>
> Insured's Duties in the Event of Occurrence, Claim or Suit.  In the event of an *occurrence*, written notice containing particulars sufficient to identify the *insured* and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the *insured* to the company or any of its authorized agents as soon as practicable.
>
> If claim is made or suit brought against the *insured*, the *insured*, shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
>
> The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of

suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of *bodily injury* or *property damage* with respect to which insurance is afforded under this policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The *insured* shall no, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other that for first aid to others at the time of accident.

92.    Hartford A&I issued the following umbrella liability policies to BSA (the

"Hartford A&I Umbrella Policies"):

| Policy Number | Policy Period |
|---|---|
| 10HUA43300 | 05/01/1971-05/01/1972 |
| 10HUA43302 | 01/01/1972-01/01/1974 |
| 10HUA43331 | 01/01/1974-01/01/1975 |

93.    The Hartford A&I Umbrella Policies each contain the following or substantially

similar provisions:

The company will indemnify the *insured* for all sums which the *insured* shall become legally obligated to pay as damages and expenses, all as hereinafter defined as included within the term *ultimate net loss*, but reason of liability . . .because of . . . *personal injury* caused by . . . an *occurrence* which takes place during the policy period . . . .

* * *

"Occurrence" means an accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes *personal injury* . . . neither expected nor intended by the *insured*.

* * *

"Personal injury" means (1) bodily injury, sickness, disease, disability or shock, including death arising therefrom, or if arising out of the foregoing, mental anguish and mental injury . . . .

* * *

18

Notice of *Occurrence*:  Whenever it appears that an *occurrence* is likely to involve indemnity under this policy, written notice thereof shall be given to the company of any of its authorized agents as soon as practicable.  Such notice shall contain particulars sufficient to identify the *insured* and also reasonably obtainable information respecting the time, place and circumstances of the *occurrence,* names and addresses of the insured and of available witnesses.

* * *

Assistance and Cooperation for the *Insured*:  The *insured* shall be responsible for the investigation, settlement or defense of any claim made or suit brought or proceeding instituted against the *insured* which no underlying insurer is obligated to defend.  The *insured* shall use due diligence and prudence to settle all such claims and suits which in the exercise of sound judgment should be settled, provided, however, that the *insured* shall make no settlement for any sum in excess of the *retained limit* without the approval of the company.

The company shall have the right and shall be given the opportunity to associate with the *insured* or its underlying insurers, or both, in the defense and control of any claim, suit or proceeding which involves or appears reasonably likely to involve the company and in which event the *insured*, such insurers and the company shall cooperate in all things in defense of such claim, suit or proceeding.

The *insured* shall cooperate with the underlying insurers as required by the terms of the underlying insurance and comply with all the terms and conditions thereof, and shall enforce any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of *personal injury, property damage* or *advertising liability* with respect to which insurance is afforded under this policy or the underlying policies.

94.    First State issued or allegedly issued the following excess liability policies to BSA

(the "First State Excess Policies"):

| Policy Number | Policy Period |
|---|---|
| 908954 | 01/01/1978-01/01/1979 |
| 927616 | 01/01/1979-01/01/1980 |
| 931255 | 01/01/1981-01/01/1983 |
| 931257 | 01/01/1981-01/01/1983 |
| EU006291 | 03/01/1988-03/01/1989 |

19

95.     Coverage under First State policies no. 931255, for policy period January 1, 1981 to January 1, 1983, and no. 931257, for policy period January 1, 1981 to January 1, 1983, if any, is limited and subject to a confidential settlement agreement.

96.     The First State policy no. 908954, for policy period January 1, 1978 to January 1, 1979 and First State policy no. 927616, for policy period January 1, 1979 to January 1, 1980, each contain the following or substantially similar provisions:

> To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein states, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses because of . . . PERSONAL INJURY . . . to which this policy applies caused by an OCCURRENCE . . . .
>
> * * *
>
> "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results during the policy period in PERSONAL INJURY . . . neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury . . . arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one "OCCURRENCE."
>
> * * *
>
> PERSONAL INJURY . . . means . . . bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish, and mental injury . . . .
>
> * * *
>
> Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.
>
> The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED when requested by the

COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED's representatives, together with copies of reports made by the INSURED with respect to such claim proceedings.

97.    First State policy no. EU006291 for policy period March 1, 1988 to March 1,

1989 contains the following provisions:

The Company hereby agrees, subject to the limitations, terms and conditions herein-after mentioned, to indemnify the Insured for all sums which the Insured shall be obliged to pay by reason of the liability imposed upon the insured by law, or assumed under contract or agreement by the Named Insured for damages, direct or consequential and expenses on account of:

(a) Personal injuries, including death at any time resulting therefrom,

(b) Property Damage,

(c) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella insurer".

* * *

Amendatory Endorsement
(Exception of "Dropdown")

It is agreed that, notwithstanding any of the terms of this policy that might be construed otherwise, this insurance shall not take the place of any underlying insurance shown in the schedule of underlying insurance policies which is or becomes invalid, uncollectible or otherwise unavailable due to the insolvency of the underlying insurer.  The risk of such insolvency is retained by the insured, and not by the company.

The above provisions apply to both (1) the company's obligation to indemnify or to pay on behalf of the insured, and (2) the company's obligation to defend.

21

98.    The Hartford A&I Primary Policies, the Hartford A&I Umbrella Policies, and the First State Excess Policies are hereinafter collectively referred to as the "Hartford Policies."

### *The Sexual Abuse Lawsuits*

99.    Over the past several years, BSA and its local councils have been named as defendants in numerous Underlying Lawsuits in which the plaintiffs allege that they were sexually molested while participating in BSA programs.

100.    The Underlying Lawsuits generally allege that BSA knew or should have known that such injury would occur.

101.    The Underlying Lawsuits further generally allege that BSA knew of the widespread problem of sexual abuse by scout masters and other adult volunteers and that BSA even maintained internal files regarding potential or alleged abusers that had served as volunteers or employees in BSA programs, known as the IV Files or Perversion Files.

102.    Because of the significant number of Underlying Lawsuits and the increasing threat of numerous future sexual abuse claims, BSA filed a Chapter 11 proceeding on February 18, 2020, titled *In re: Boy Scouts of America et al.*, case no. 20-10343 (LSS) (Bankr. D. Del.).

### *BSA's Failure to Provide Notice or Obtain Consent*

103.    For many years, BSA tendered Underlying Lawsuits to Hartford and Hartford defended and indemnified those claims.  Hartford participated in the defense and settlement of a number of Underlying Claims, resulting in exhaustion of the applicable limits of liability of certain of the Hartford Primary Policies.

104.    On information and belief, BSA has failed timely to provide notice of certain Underlying Lawsuits to Hartford.

105.    On information and belief, BSA also has not cooperated in the defense of certain Underlying Lawsuits and has not sought Hartford's consent to settle certain Underlying Lawsuits as required under the Hartford Policies.

106.    On information and belief, as a result of BSA and its local councils' failure to provide notice, or failure to provide notice in a timely manner, Hartford has been unable to defend, or participate in the defense or settlement, of at least certain Underlying Lawsuits. Further, on information and belief, because of BSA and its local council's failure to seek Hartford's consent to settle at least certain Underlying Lawsuits, Hartford has not been able to participate in the settlement of at least certain Underlying Lawsuits.

## FIRST CLAIM FOR RELIEF
### *Breach of Contract -- Duty to Cooperate*
### *As to Defendant BSA*

107.    Hartford repeats and realleges Paragraphs 1 through 106 as if fully set forth here.

108.    On numerous occasions, BSA has failed to cooperate with Hartford as the policies, including the Hartford A&I Primary Policies, the Hartford Umbrella Policies and the First State Excess Policies require.

109.    On information and belief, during the fall of 2019, BSA held settlement discussions and/or mediation sessions with representatives for some or all of the Underlying Lawsuits aimed at a partial or global resolution of the abuse claims against BSA, including claims for which BSA has sought or will seek coverage from Hartford.

110.    BSA neither informed Hartford of those meetings, nor did BSA invite Hartford to participate in those meetings.

111.    On information and belief, those meetings and/or mediation sessions were also attended by James Patton as a pre-petition Future Claimants' representative ("FCR") hired and paid by BSA.

112.    BSA did not seek Hartford's consent or inform Hartford that it had retained Mr. Patton to serve as a pre-petition FCR for the abuse claims.

113.    On information and belief, during the course of those meetings, BSA shared a proposed claim valuation matrix and/or a set of claim liquidation protocols with other parties, including the pre-petition FCR and counsel for some of the plaintiffs in the Underlying Lawsuits. The matrix and protocols, on further information and belief, provided information regarding what proof would be necessary for BSA to accept a claim for payment, as well as values at which claims would be paid under BSA's proposal.

114.    BSA did not seek Hartford's consent or advice in developing any claim matrix or liquidation protocols, and did not inform Hartford that it was sharing such documents with other entities, including the pre-petition FCR or plaintiffs in the Underlying Lawsuits.

115.    On information and belief, either in preparation for these meetings and/or mediation sessions, BSA disclosed to the pre-petition FCR and/or the plaintiffs in the Underlying Lawsuits sensitive and privileged information and/or documents concerning the defense of the Underlying Lawsuits.

116.    On information and belief, BSA has continued to disclose sensitive and/or privileged information concerning the Underlying Claims to plaintiffs and their representatives, including the Tort Claimants' Committee ("TCC") and the post-petition FCR.

117.    For at least some of the time since the Petition Date, BSA has maintained a data room through which it has provided certain parties-in-interest with access to documents relating to this chapter 11 case.

118.    Hartford was first provided with access to the data room on or about April 27, 2020.

119.    When BSA provided Hartford with access to the data room, Hartford discovered that it contained a number of communications containing privileged communications between BSA and its insurers regarding Underlying Lawsuits.

120.    Just days after Hartford first accessed those documents, BSA removed them from the data room.

121.    On information and belief, those documents were accessible to, and were in fact accessed by, various constituencies representing abuse claimants in this chapter 11 case including the TCC and/or the FCR.

122.    On information and belief, BSA has provided the TCC and/or the FCR with additional privileged materials, either through the data room or otherwise.

123.    On information and belief, BSA has made additional promises or assurances to the FCR, the TCC or to plaintiffs' counsel concerning the manner in which negotiations will be conducted in this case, including the values that will be set for the abuse claims.

124.    On information and belief, BSA has failed to cooperate with Hartford in other ways that have yet to be discovered by Hartford.

125.    Hartford has been prejudiced by BSA's failure to cooperate with Hartford, including conducting settlement discussions without Hartford's consent and by disclosing

information that has compromised the defense of the abuse claims, including the Underlying

Lawsuits.

126.    Hartford is entitled to a judgment that it does not have any coverage obligations

for the abuse claims, including the Underlying Lawsuits, as a result of BSA's breach of the

cooperation provisions of the Hartford Policies.

**SECOND CLAIM FOR RELIEF**
***Declaratory Judgment -- Number of Occurrences***
***As to All Defendants***

127.    Hartford repeats and realleges Paragraphs 1 through 126 as if fully set forth here.

128.    The Hartford A&I Primary Policies provide coverage for "bodily injury" caused

by an "occurrence," which is further defined as "an accident, including continuous or repeated

exposure to conditions, which results in bodily injury . . . neither expected nor intended from the

standpoint of the insured."

129.    The Hartford A&I Umbrella Policies provide coverage for "personal injury"

caused by an "occurrence," which is further defined as "an accident which takes place during the

policy period, or that portion within the policy period of a continuous or repeated exposure to

conditions, which causes personal injury . . . neither expected nor intended by the insured."

130.    The First State Excess Policies provide coverage for "personal injury" caused by

an "occurrence," which is further defined as "an accident or event including continuous or

repeated exposure to conditions, which results during the policy period in personal injury . . .

neither expected nor intended from the standpoint of the insured."

131.    The Hartford A&I Primary Policies all contain substantially similar language

limiting the company's liability for amounts arising from any one occurrence:

LIMITS OF LIABILITY

26

> Regardless of the number of (1) Insureds under this Policy, (2) Persons or organizations who sustained bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles or units of mobile equipment to which this Policy applies, the Company's liability is limited as follows:

BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY:

A)    The limit of liability stated in the schedule as applicable to "each occurrence" is the total limit of the Company's liability for all damages because of bodily injury or property damage as a result of any one occurrence.

* * *

C)    For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

132.    The Hartford Umbrella Policies and First State Excess Policies contain materially similar language.

133.    The Underlying Lawsuits all allege, and thereby arise from, bodily injury that resulted from BSA's failure to implement adequate safeguards to protect minors placed with the care of BSA.

134.    Hartford believes that payments made to settle certain Underlying Lawsuits have been sufficient to exhaust the limits of liability for certain Hartford A&I Primary Policies with respect to the Underlying Lawsuits.  BSA disagrees.

135.    An actual and justiciable controversy exists regarding whether the Underlying Lawsuits involve one or more than one occurrence and, if more than one, then how many occurrences under each of the Hartford Policies.

136.    To the extent coverage is provided for under the Hartford Policies, Hartford seeks a declaration as to the number of occurrence(s) under the policies.

### THIRD CLAIM FOR RELIEF
***Declaratory Judgment -- No Coverage For Underlying Lawsuits Because Alleged Conduct Is Not An "Accident" and or Injury is "Expected" or "Intended" As to All Defendants***

137.    Hartford repeats and realleges Paragraphs 1 through 136 as if fully set forth here.

138.    The Hartford A&I Primary Policies provide coverage for "bodily injury" caused by an "occurrence," which is further defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the insured."

139.    The Hartford A&I Umbrella Policies provide coverage for "personal injury" caused by an "occurrence," which is further defined as "an accident which takes place during the policy period, or that portion within the policy period of a continuous or repeated exposure to conditions, which causes personal injury. . . neither expected nor intended by the insured."

140.    The First State Excess Policies provide coverage for "personal injury" caused by an "occurrence," which is further defined as "an accident or event including continuous or repeated exposure to conditions, which results during the policy period in personal injury . . . neither expected nor intended from the standpoint of the insured."

141.    The Underlying Lawsuits allege that BSA knew that the alleged abusers were predators and of the widespread problem of sexual abuse by scout masters and adult volunteers. The Underlying Lawsuits allege that BSA created and maintained a file system known as the IV Files or Perversion Files, which documented allegations of abuse by scout masters and volunteers.

142.    The Underlying Lawsuits allege that despite this knowledge, BSA and the local councils failed to take steps to prevent the alleged sexual abuse, did not inform the scouts or their parents of the reports of abuse and otherwise concealed the abuse.

143.     BSA's alleged conduct with respect to the Underlying Lawsuits does not constitute an accident and the injury alleged in the Underlying Lawsuits was expected and/or intended from the standpoint of BSA.

144.     Likewise, the conduct of the local councils with respect to the Underlying Lawsuits does not constitute an accident because the injury alleged in the Underlying Lawsuits was expected and/or intended from the standpoint of the relevant local council(s).

145.     An actual and justiciable controversy exists regarding whether there is coverage for the Underlying Lawsuits under the Hartford Policies because the alleged injury was not caused by an occurrence under the Hartford Policies, *i.e.*, there was no "accident" and the alleged injury was expected and/or intended.

146.     Hartford seeks a declaration that some or all of the Underlying Lawsuits do not involve injury caused by an "occurrence" under the Hartford Policies.

### FOURTH CLAIM FOR RELEIF
#### *Declaratory Judgment -- Trigger of Coverage*
#### *As to All Defendants*

147.     Hartford repeats and realleges Paragraphs 1 through 146 as if fully set forth here.

148.     The Hartford A&I Primary Policies provide coverage for "bodily injury," which is defined as "bodily injury, sickness or disease sustained by any person which occurs during the policy period" caused by an "occurrence," which is further defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the insured."

149.     On information and belief, the Policies issued to BSA and the local councils by the Insurer Defendants contain substantially similar definitions of "bodily injury."

150.     An actual and justiciable controversy exists regarding what the trigger of coverage is for the Underlying Lawsuits, including whether "bodily injury" occurs (i) only on the first date of abuse of a claimant; (ii) only on each date of abuse of a claimant; or (iii) not only on (i) or (ii) but also for some period of time after the abuse ends.

151.     To the extent coverage is provided for under the Hartford Policies, Hartford seeks a declaration as to the appropriate trigger of coverage for the Underlying Lawsuits.

## FIFTH CLAIM FOR RELIEF
### *Declaratory Judgment -- Allocation*
### *As to All Defendants*

152.     Hartford repeats and realleges Paragraphs 1 through 151 as if fully set forth here.

153.     The Hartford A&I Primary Policies, the Hartford Umbrella Policies and the First State Excess Policies each provide coverage only for "bodily injury" that occurs within each Policy's respective policy period, and does not provide coverage for injury that occurs outside that policy period.

154.     On information and belief, a ripe and justiciable controversy exists among Hartford, BSA and the local councils regarding the allocation of damages for Underlying Lawsuits where (a) a plaintiff alleges abuse during multiple policy periods, and/or (b) a plaintiff alleges abuse during multiple policy periods, but suffers injury that continues past the dates of abuse into later policy periods.

155.     To the extent coverage is provided for under the Hartford Policies for the Underlying Lawsuits, Hartford seeks a declaration regarding the applicable rule for allocating losses arising from the Underlying Lawsuits and declarations regarding Hartford A&I's, First State's and the Defendant Insurers' respective allocable shares, if any, of the defense and indemnity costs incurred in the Underlying Lawsuits.

## SIXTH CLAIM FOR RELIEF
### *Declaratory Judgment -- No Coverage Under First State Policy EU006291*
### *As to All Defendants*

156.    Hartford repeats and realleges Paragraph 1 through 155 as if fully set forth here.

157.    First State policy no. EU006291, for policy period March 1, 1988 to March 1, 1989, provides that First State will "indemnify the Insured for all sums which the insured shally be obliged to pay…on account of Personal injuries…caused by an occurrence happening anywhere in the world, and arising out of the hazards covered by and as defined in the Underlying Umbrella Policies stated below and issued by the "Underlying Umbrella Insurer."

158.    On information and belief, the Underlying Umbrella Policies contain Sexual Molestation Exclusion endorsements that exclude any claim against the insured for sexual or physical abuse or molestations of any person.

159.    The plaintiffs in the Underlying Lawsuits allege that they were sexually abused while participating in BSA programs.

160.    Because the Underlying Lawsuits allege sexual abuse or molestation, there is no coverage available for such claims under First State policy no. EU006291.

161.    An actual and justiciable controversy exists regarding coverage for Underlying Lawsuits under First State policy no. EU006291.

162.    Hartford seeks a declaration that coverage for the Underlying Claims under First State policy no. EU006291 are excluded by the Sexual Molestation exclusion.

## SEVENTH CLAIM FOR RELIEF
### *Declaratory Judgment -- No Dropdown for First State Policy EU006291*
### *As to All Defendants*

163.    Hartford repeats and realleges Paragraphs 1 through 162 as if fully set forth here.

164.     First State policy no. EU006291, for policy period March 1, 1988 to March 1, 1989, provides that "this insurance shall not take the place of any underlying insurance shown in the schedule of underlying insurance policies which is or becomes invalid, uncollectible or otherwise unavailable due to the insolvency of the underlying insurer.  The risk of such insolvency is retained by the insured, and not by the company."

165.     On information and belief, Reliance issued a policy of insurance underlying First State policy no. EU00629.  Reliance is now insolvent.

166.     To the extent, the limits of liability under the Reliance policy, or any other underlying insurance, are invalid, uncollectible or otherwise unavailable due to the insolvency of Reliance, or any other underlying insurer, First State policy no. EU006291 will not dropdown.

167.     An actual and justiciable controversy exists regarding whether First State policy no. EU006291 must dropdown in the case of an underlying insurer's insolvency.

168.     To the extent First State policy no. EU006291 is found to provide coverage for the Underlying Lawsuits, Hartford seeks a declaration that First State policy no. EU006291 does not dropdown as a result of an underlying insurer's insolvency.

### EIGHTH CLAIM FOR RELIEF
***Declaratory Judgment -- No Coverage For Underlying Lawsuits For Which BSA Failed To Provide Notice***
***As to BSA and the local councils***

169.     Hartford repeats and realleges Paragraphs 1 through 168 as if fully set forth here.

170.     The Hartford A&I Primary Policies require that BSA provide "written notice" of an occurrence "as soon as practicable" and that BSA "shall give like notice of any claim made or legal proceeding commenced on account" of an occurrence.

171.    The Hartford A&I Umbrella Policies require that "[w]henever it appears that an *occurrence* is likely to involve indemnity under this policy, written notice thereof shall be given to the company of any of its authorized agents as soon as practicable."

172.    The First State Excess Policies require that "[u]pon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents."

173.    For certain Underlying Lawsuits, BSA and the local council defendants did not provide notice as required by the Hartford Policies.

174.    Hartford has suffered prejudice as a result of the failure timely to deliver notice, including prejudicing Hartford's right to defend or participate in the defense or settlement of such Underlying Lawsuits, as well as to participate in the resolution of those Underlying Lawsuits.

175.    An actual and justiciable controversy exists regarding coverage exists for Underlying Lawsuits where BSA and its local councils did not provide notice or did not provide timely notice.

176.    Hartford seeks a declaration that the Hartford Policies do not provide coverage for any Underlying Lawsuits for which BSA did not provide notice.

### NINTH CLAIM FOR RELIEF
***Declaratory Judgment -- No Coverage For Underlying Lawsuits For Which BSA Failed
To Obtain Consent to Settle
As to BSA and the local councils***

177.    Hartford repeats and realleges Paragraphs 1 through 176 as if fully set forth here.

178.    The Hartford A&I Primary Policies provide that the "*insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization

who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under this policy."

179.    The Hartford A&I Umbrella Policies provide that "the *insured* shall make no settlement for any sum in excess of the *retained limit* without the approval of the company."

180.    The Hartford Policies require BSA to obtain Hartford's consent to settle the Underlying Lawsuits.

181.    For certain Underlying Claims, BSA failed to seek Hartford's consent.

182.    On information and belief, many, if not all, of the settlements for which BSA failed to seek Hartford's consent were unreasonable.

183.    An actual and justiciable controversy exists regarding coverage exists for at least certain Underlying Lawsuits for which BSA failed to seek consent.

184.    Hartford seeks a judicial determination that the Hartford Policies do not provide coverage for any Underlying Lawsuits for which BSA failed to seek Hartford's consent.

185.    In the alternative, Hartford seeks a declaration that there is no coverage for the Underlying Lawsuits that BSA settled without seeking Hartford's consent because they were unreasonable.

### TENTH CLAIM FOR RELIEF
*Equitable Contribution (or other similar relief)*
*As to Insurer Defendants*

186.    Hartford repeats and realleges Paragraphs 1 through 185 as if fully set forth here.

187.    If Hartford A&I or First State are found to have obligations to defend and/or indemnify BSA and/or its local councils in connection with the Underlying Lawsuits and they have paid, or are required to pay in the future, more than their appropriate share of defense and

indemnity costs incurred on account of Underlying Lawsuits, Hartford A&I and First State seek equitable contribution from the Insurer Defendants.

188.    Subject to their terms, conditions, limits, and exclusions, the Defendant Insurers' policies potentially provide coverage to BSA and/or its local councils for their respective shares of defense costs, settlements, and/or judgements entered in some or all of the Underlying Lawsuits.

189.    To the extent that Hartford A&I and First State pay more than their fair share of defense or indemnity costs, Hartford A&I and First State are entitled to reimbursement from the Insurer Defendants for their appropriate share pursuant to the applicable principles of contribution.

## **PRAYER FOR RELIEF**

WHEREFORE, Hartford prays the Court for the following relief:

a.    Judgment in Hartford's favor that it has no coverage obligations for abuse claims, including the Underlying Lawsuits, because BSA has breached the cooperation provisions of the Hartford Policies;

b.    To the extent that coverage is provided for under the Hartford Policies, a declaration as to the number of occurrence(s) under the Hartford Policies;

c.    A declaration that the Underlying Lawsuits do not involve accidents and, therefore, do not involve alleged injury caused by an occurrence under the Hartford Policies;

d.    A declaration that the Underlying Lawsuits involve alleged injury expected or intended from the standpoint of BSA and the local councils, and, therefore, do not involve alleged injury caused by an occurrence under the Hartford Policies;

e.      To the extent coverage is provided for under the Hartford Policies, a declaration as to the trigger of coverage for the Underlying Lawsuits;

f.      To the extent coverage is provided for under the Hartford Policies for the Underlying Lawsuits, a declaration of Hartford A&I's, First State's and the Defendant Insurers' respective allocable shares, if any, of the defense and indemnity costs incurred in the Underlying Lawsuits;

g.      A declaration that that coverage for the Underlying Claims under First State policy no. EU006291 is excluded by the Sexual Molestation exclusion;

h.      To the extent First State policy no. EU006291 provides coverage for the Underlying Lawsuits, a declaration that First State policy no. EU006291 does not dropdown as a result of an underlying insurer's insolvency;

i.      A declaration that the Hartford Policies do not provide coverage for any Underlying Lawsuits for which BSA did not provide notice;

j.      A declaration that the Hartford Policies do not provide coverage for any Underlying Lawsuits for which BSA did not seek consent;

k.      A declaration that the Underlying Lawsuits that BSA settled without seeking Hartford's consent were unreasonable;

l.      To the extent that Hartford A&I and First State, have paid, or in the future pay more than their fair share of defense or indemnity costs, a declaration that Hartford A&I and First State are entitled to equitable contribution from the Insurer Defendants in an amount equal to those costs allocable to those respective parties; and

m.      Such other and further relief as the court deems just and proper.

36

Date:  May 15, 2020                    BAYARD, P.A.
  Wilmington, Delaware

*/s/ Gregory J. Flasser*
Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395
Email:  efay@bayardlaw.com
       gflasser@bayardlaw.com

- and -

James P. Ruggeri (admitted *pro hac vice*)
Joshua D. Weinberg (admitted *pro hac vice*)
Abigail W. Williams (admitted *pro hac vice*)
Shipman & Goodwin LLP
1875 K Street, NW, Suite 600
Washington, DC 20003
Tel:  (202) 469-7750
Fax:  (202) 469-7751

- and -

Eric S. Goldstein (admitted *pro hac vice*)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103
Tel:  (860) 251-5000
Fax:  (860) 251-5099

*Attorneys for First State Insurance Company and
Hartford Accident and Indemnity Company*