# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOYS SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date: June 8, 2020 at 10:00 a.m.** |
| Debtors. | ) | **Objection Deadline: June 1, 2020** |

## OLD REPUBLIC INSURANCE COMPANY'S MOTION PURSUANT TO SECTIONS 105(a) AND 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT PAYMENTS OF CLAIMS AGAINST NON-DEBTOR INSUREDS AND RELATED DEFENSE COSTS UNDER INSURANCE POLICIES

Old Republic Insurance Company and its affiliates (collectively "**Old Republic**") respectfully moves this Court, pursuant to Sections 105(a) and 362(d) of chapter 11 of title 11 of the United States Code the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), Rule 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, for entry of an order, substantially in the form attached hereto as Exhibit A, modifying the automatic stay, to the extent it applies, to allow Old Republic and ESIS, Inc. ("**ESIS**") to pay losses and expenses which are incurred in conjunction with the investigation, defense, adjustment or settlement of certain non-stayed claims or suits[2] on behalf Non-Debtor Insureds under certain Old Republic Excess Insurance Policies (each as defined below), as further described herein.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2] As set forth below, these non-stayed claims are generally comprised of non-abuse claims that are not stayed against Non-Debtor Insureds under the Bankruptcy Court Preliminary Injunction (each as defined herein); however, these

## JURISDICTION AND VENUE

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 105(a) and 362 of the Bankruptcy Code  and Rules 4001 and 9014 of the Bankruptcy Rules.

## BACKGROUND

3.      On February 18, 2020 (the "**Petition Date**"), Boy Scouts of America ("**BSA**") and a related entity, Delaware BSA, LLC (collectively with BSA, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing these chapter 11 cases.

4.      To insure the BSA's Scouting activities, the BSA maintains a broad insurance program.  Specifically, the BSA has purchased and continues to purchase and administer commercial, general-liability primary, umbrella, and excess liability insurance policies to protect itself and to protect and financially support the various other entities that help BSA carry out the Scouting activities as part of BSA's mission.  These entities include Learning for Life, a non-stock organization affiliated with the BSA ("**LFL**"), other non-debtor related entities that have been chartered by the BSA, including local councils that are independently incorporated under the non-profit laws of their respective states (collectively, the "**Local Councils**") and community and religious organizations, businesses, other participating organizations, and groups of citizens that organize Scouting units under the BSA charter (collectively, the "**Chartered Organizations**," and together with the Local Councils and LFL, the "**BSA Related Parties**").

---

non-stayed claims also include a limited number of abuse claims against Non-Debtor Insureds that are not stayed under the Bankruptcy Court Preliminary Injunction.

5.      The Debtors' obligations to provide liability insurance and financial and other claims support for the BSA Related Parties arise out of certain shared services arrangements between the Debtors and the BSA Related Parties (the "**Shared Services Arrangements**").  On April 8, 2020, the Bankruptcy Court entered an order [Docket No. 369] (the "**Shared Services Order**") authorizing the Debtors to continue performing any and all of their obligations under the Shared Services Arrangements in the ordinary course of operations, subject to limitations set forth in the Shared Services Order.

6.      Old Republic is one of the insurance companies that has provided general liability coverage and excess liability coverage under policies issued to BSA.   Old Republic issued certain primary policies for policy periods from March 1, 2008 to March 1, 2019 (individually an "**Old Republic Primary Policy**" and collectively the "**Old Republic Primary Policies**") and excess liability insurance policies for policy periods from March 1, 2007 to March 1, 2019 (individually an "**Old Republic Excess Policy**" and collectively the "**Old Republic Excess Policies**," together with the Old Republic Primary Policies, the "**Old Republic Policies**").   The named insureds under the Old Republic Policies are defined in each policy and in general, the named insureds include the BSA and the BSA Related Parties.

7.      Pursuant to the terms of each of the specific Old Republic Policies, subject to certain exceptions, the Debtors and certain other parties, including the BSA Related Parties and their respective volunteers, employees and executives (collectively referred to herein as the "**Non-Debtor Insureds**") are provided coverage with respect to personal injury, property damage or malpractice up to a limit of $1 million per occurrence with no aggregate limits under the Old Republic Primary Policies and up to $9 million per occurrence and $9 million in the aggregate per year under the Old Republic Excess Policies.   These amounts are generally applicable for the

period from March 1, 2008 through March 1, 2019. The aggregate limit for the Old Republic Excess Policy for the March 1, 2007 to March 1, 2008 policy year, however, was only $4 million. The aggregate limit under the Old Republic Excess Policies has been exhausted for the 2007–2008, 2010–2011 and 2012–2013 policy years. On information and belief, there is substantial excess insurance coverage over and above the Old Republic Policies available to the BSA and the BSA Related Parties for each applicable year, which excess commercial general liability policies provide coverage for general liability claims, including sexual abuse actions.

8.    Certain expenses incurred in conjunction with the investigation, defense, adjustment and settlement of claims (the "**Loss Adjustment Expenses**") reduce the Old Republic Policies' limits and are included within the applicable retentions. These Loss Adjustment Expenses include, but are not limited to, attorneys' fees, expert witness fees, field investigations, appeal bonds, interest on judgements and other trial expenses.

9.    Pursuant to the terms of each of the Old Republic Policies, and the related Program Agreement dated as of March 1, 2007 between Old Republic and the BSA (as amended, the "**Program Agreement**"), the BSA's retention matches applicable policy limits. As such, the Old Republic Policies are what is generally referred to as "fronting policies" because the retention amount for each occurrence is equal to the policy limits. And pursuant to the Program Agreement, BSA has agreed to indemnify Old Republic with respect to claims and Loss Adjustment Expenses, subject to certain caveats set forth in the Program Agreement. As security for BSA's retention obligations and other obligations under the Old Republic Policies and the Program Agreement, BSA provided two irrevocable letters of credit (the "**JPMorgan L/Cs**") issued by JPMorgan Chase Bank, N.A. in a total amount of $94,830,403. On March 17, 2020,

Old Republic drew down $10 million of the JPMorgan L/Cs to cover the BSA's obligations to Old Republic under the Old Republic Policies.

10.    On March 30, 2020, the Bankruptcy Court entered an order granting BSA's Motion for a Preliminary Injunction which enjoins certain "**Pending Abuse Actions**," as defined therein, against the Non-Debtor Insureds and prohibits and enjoins any and all further proceedings in the Pending Abuse Actions from the Petition Date through and including May 18, 2020 [Adv. Proc. No. 20-50527, Docket No. 54] (the "**Bankruptcy Court Preliminary Injunction**").  The Bankruptcy Court Preliminary Injunction, however, does not enjoin general liability claims against Non-Debtor Insureds that are not part of the Pending Abuse Actions (the "**Non-Stayed Claims**").[3]  The Non-Stayed Claims include, among other things, claims for personal injury or wrongful death that are not related to abuse.  The Non-Stayed Claims are proceeding against Non-Debtor Insureds notwithstanding the Bankruptcy Court Preliminary Injunction, and Old Republic and ESIS are being asked to continue to provide for the defense of, settle and pay out on such claims that are covered under both the Old Republic Primary Policies and the Old Republic Excess Policies.

11.    Old Republic has engaged ESIS as a third-party claims administrator to service the claims under the Old Republic Policies pursuant to the terms of certain Claims Service Contracts between Old Republic and ESIS (as renewed, supplemented, extended and/or amended from time to time the "**ESIS Arrangement**"). Prior to the Petition Date, BSA exercised its option to self-administer the claims arising under the Old Republic Policies and paid the Loss Adjustment Expenses and related claims directly.  However, following the filing of these chapter

---

[3] As noted in footnote 2, *supra*, the Non-Stayed Claims include non-abuse claims against Non-Debtor Insureds, as well as a limited number of abuse claims against Non-Debtor Insureds that are not stayed under the Bankruptcy Court Preliminary Injunction.

11 cases, BSA ceased its prior self-administration of the claims and ESIS and Old Republic are now coordinating the handling of all Non-Stayed Claims within the limits of the Old Republic Primary Policies, which policies have no aggregate limit.

12.     Currently, there are pending Non-Stayed Claims against the Non-Debtor Insureds which as noted above have not been stayed by the Debtors' bankruptcy filing or by the Bankruptcy Court Preliminary Injunction.  Consequently, Old Republic, under the Old Republic Primary Policies,[4] continues to incur Loss Adjustment Expenses and expenses associated with providing a defense of, settling and paying claims within the Old Republic Primary Policies.  Old Republic will continue to draw on the JPMorgan L/Cs as needed to cover these costs and expenses.  Since the Petition Date, Old Republic has not paid any claims under the Old Republic Excess Policies; however, Old Republic and ESIS are aware of claims pending against Non-Debtor Insureds that may be covered by the Old Republic Excess Policies.

## RELIEF REQUESTED

13.     By this Motion, Old Republic seeks entry of an order, substantially in the form attached hereto as Exhibit A: (a) granting relief from the automatic stay, to the extent applicable, "for cause" pursuant to Bankruptcy Code Sections 105(a) and 362(d)(1), so that Old Republic and ESIS can continue to handle, administer, provide for the defense of, settle and pay Non-Stayed Claims against Non-Debtor Insureds pursuant to the Old Republic Excess Policies; and (b) waiving the 14-day stay under Bankruptcy Rule 4001(a)(3) such that any relief granted under subparagraph (a), above, is effective immediately upon entry of the order granting relief.  In the alternative, Old Republic requests the extension of the automatic stay to all Non-Stayed Claims against Non-Debtor Insureds.

---

[4]     As noted above, the Old Republic Primary Policies do not have an aggregate limit, and therefore, as explained more fully below, the proceeds thereof are not estate property.

**BASIS FOR RELIEF**

14.     Old Republic seeks the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent it applies, to allow Old Republic and ESIS to continue to provide insurance coverage and handle and administer claims against the Non-Debtor Insureds for Non-Stayed Claims pursuant to the terms of the Old Republic Excess Policies. The automatic stay should be modified, to the extent it applies, because the proceeds of the Old Republic Excess Policies may not be property of the Debtors' estates and, even if such proceeds are property of the Debtors' estates, good cause exists to modify the stay.

<u>Proceeds of the Old Republic Excess Policies May Not Be Property of the Estate</u>

15.     It is not clear whether the proceeds of the Old Republic Excess Policies are property of the Debtors' estates.  To the extent they are deemed not to be property of the estates, the automatic stay would not apply. Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate.  The question of whether proceeds of an insurance policy are property of the bankruptcy estate is complex and the law is unclear as to the answer.  *In re MF Glob. Holdings, Ltd*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).  Although it is "well-settled that a debtor's liability insurance is considered property of the estate . . . 'the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate.'" *Id.* (quoting *In re Downey Fin. Corp*., 428 B.R. 595, 603 (Bankr. D. Del. 2010)).

16.     In determining whether proceeds are property of the estate, courts examine "the language and scope of the policy at issue." *In re Allied Digital Tech. Corp*., 306 B.R. 505, 509 (Bankr. D. Del. 2004).  In cases where a policy provides direct coverage to non-debtor insureds and also coverage to the debtor, the court in *Allied* explained that the proceeds are property of the

estate "if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Id.*

17.     Allowing Old Republic to continue to handle the Non-Stayed Claims against Non-Debtor Insureds will not adversely affect the Debtors' estates. The proceeds of the Old Republic Primary Policies are not property of the bankruptcy estates because they have no aggregate limits.   Accordingly, Old Republic and ESIS have been handling claims that fall within the Old Republic Primary Policies as there is no negative impact on property of the Debtors' estates.   Nevertheless, in an abundance of caution, Old Republic requests that the Court lift the stay, to the extent it is applicable, to allow Old Republic and ESIS to continue to handle, provide for the defense of, pay and settle claims that fall within the Old Republic Primary Policies.

18.     Payment by Old Republic and ESIS of claims under the Old Republic Excess Policies, on the other hand, would result in the depletion of insurance coverage under the Old Republic Excess Policies in the applicable coverage year.   However, since there is significant excess insurance coverage over and above the Old Republic $9 million aggregate limit for each year, the Debtors' other assets remain protected, and there is little risk that the total insurance proceeds responding to claims against the Debtors will be depleted.   Therefore, there should be no resulting negative impact on the Debtors' estates if some of the proceeds of the Old Republic Excess Policies are paid out, and, consequently, the proceeds of the Old Republic Excess Policies should not be viewed as property of the Debtors' estates.

<u>Cause Exists for this Court to Grant Relief from the Automatic Stay, to the Extent Applicable</u>

19.    Section 362(d) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1).[5] "Because neither the Code nor the legislative history provides a specific definition of what constitutes 'cause' under § 362(d), courts must determine whether relief is appropriate on a case by case basis, taking into consideration the interests of the debtor, the claimants and the estate." *In re MacInnis*, 235 B.R. 255, 259 (S.D.N.Y. 1998). In making the determination of whether to grant relief from the stay for cause, courts look to balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if relief is not granted. *See, e.g.*, *Wiley v. Hartzler* (*In Re Wiley*), 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003). Courts consider several factors in weighing the harm to these parties, including: (1) judicial economy; and (2) the potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

20.    Good cause exists for this Court to grant relief from the automatic stay, to the extent it applies, for the purpose of permitting Old Republic and ESIS to continue to handle, administer, provide for the defense of, settle and pay Non-Stayed Claims pending against the Non-Debtor Insureds. In deciding whether "cause" existed to modify the automatic stay, the court in *MF Global* declined to rule as to whether the proceeds of the insurance policy at issue in that case were property of the estate, but lifted the stay in any event for good cause shown. *MF Glob.*, 469 B.R. at 191; *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463–64 (S.D.N.Y. 2004).

21.    As detailed above, the Old Republic Policies provide general liability coverage to Non-Debtor Insureds. The Non-Debtor Insureds have a present need for insurance coverage

---

[5]    Section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

under the Old Republic Policies as they are currently facing Non-Stayed Claims that are continuing and not stayed by the Bankruptcy Court Preliminary Injunction. This type of need is routinely held to justify modifying the automatic stay to prevent insureds from suffering irreparable harm. *See Adelphia Commc'ns Corp. v. Assoc. Ins. Serv., Ltd. (In re Adelphia Commc'ns Corp.),* 285 B.R. 580, 598 (Bankr. S.D.N.Y. 2002) (granting relief from stay in order to permit primary insurer to advance defense costs), *vacated and remanded on other grounds*, 298 B.R. 49 (S.D.N.Y. 2003); *see also In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010) (same); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay because directors and officers would suffer irreparable harm if prevented from accessing defense payments under D&O policy).

22.    The Non-Debtor Insureds need to access the insurance coverage for the Non-Stayed Claims, because such claims are pending against the Non-Debtor Insureds and have not been stayed by this Court. In addition, these Non-Stayed Claims are generally not part of any global mediation effort by the Debtors because such claims differ from the Pending Abuse Actions as to the nature of the claims and the liability. The Non-Debtor Insureds, moreover, depend on the Old Republic Policies provided by the Debtors to cover their general liability claims pursuant to the Shared Services Arrangements. If Old Republic stopped providing for the defense of the Non-Debtor Insureds and the claims went to judgment and were not resolved in an orderly fashion, the harm and the costs to the Non-Debtor Insureds would be great and would far outweigh the potential harm that could be suffered by the Debtors in allowing Old Republic and ESIS to administer the Non-Stayed Claims to an efficient resolution. Specifically, if the Non-Debtor Insureds do not receive the promised insurance coverage, including the claims handling and associated defense of claims, they would be deprived of their insurance rights and forced to

10

bear these costs, if able, and, if unable, potentially be subject to default judgments. Moreover, the judgments and expenses associated with the underlying claims against Non-Debtor Insureds would likely be in a greater amount than if these claims against Non-Debtor Insureds were handled in an orderly fashion by Old Republic and ESIS. *See MF Glob.*, 429 B.R. at 193 ("Lifting the automatic stay to permit [an insurance company] to advance defense costs on behalf of Individual Insureds would not severely prejudice Debtors' estates. But failure to do so would significantly injure the Individual Insureds, whose defense costs are covered by the [Policies].").

23.    In addition, Old Republic would face coverage lawsuits by Non-Debtor Insureds if Old Republic does not provide the contracted-for coverage under the Old Republic Polices. Old Republic would have to defend these coverage lawsuits in multiple jurisdictions with potentially conflicting results. This would put Old Republic in an untenable position. If the Non-Stayed Claims against the Non-Debtor Insureds are not handled in an orderly fashion by Old Republic and ESIS, the results would likely increase the costs to the Debtors' estates and would greatly harm the Non-Debtor Insureds, Old Republic and the injured parties who brought those claims.

24.    Finally, if the stay is modified, to the extent it applies, to allow Old Republic to provide for the defense of and pay any of the Non-Stayed Claims against the Non-Debtor Insureds that are covered by the Old Republic Excess Policies in the ordinary course there should be no resulting harm to the Debtors' estates and other creditors. As noted above, the Old Republic Primary Policy limits are $1 million per occurrence without aggregate limits. Therefore, the available insurance proceeds for other potential claimants within the Old Republic Primary Policy limits would not be impacted. Although the Old Republic Excess Policies' aggregate limits for certain policy years may be reduced by the payment of Non-Stayed Claims,

there is additional excess insurance above the Old Republic Excess Policies, and it is therefore unlikely the handling of these claims would exhaust such additional excess insurance coverage. After weighing all of these factors, cause clearly exists to modify the stay, to the extent it applies. *See Downey*, 428 B.R. at 609 (finding that cause exists to modify the automatic stay where "there is no chance that lifting the stay would allow the insureds to run up unlimited defense costs and ultimately exhaust the Policy coverage.").

<u>Waiver of Bankruptcy Rule 4001(a)(3)</u>

25.    To implement the foregoing successfully, Old Republic seeks a waiver of the 14-day stay of an order authorizing relief from the automatic stay under Bankruptcy Rule 4002(a)(3).

**NOTICE**

26.    This Motion is being served on the following: (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) the Debtor's 20 largest unsecured creditors and those members of the Official Committees with available addresses; (d) the United States Attorney for the District of Delaware; (e) the Internal Revenue Service; (f) the Creditors' Committee; the (g) Tort Claimants' Committee; (h) the proposed Future Claimants' Representative and (i) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

**CONCLUSION**

Old Republic respectfully requests entry of an order: granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent it applies, pursuant to sections 105(a) and 362(d) of the Bankruptcy Code to allow Old Republic and ESIS to continue to handle, administer, provide for the defense of, settle and pay claims against Non-Debtor

Insureds for Non-Stayed Claims pursuant to the terms of the Old Republic Policies and granting

to Old Republic and ESIS such other and further relief as is just and proper.

Dated:  May 21, 2020

**MORRIS JAMES LLP**

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800

- and –

*/s/ Margaret M. Anderson*
Margaret M. Anderson, Esq.
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
Telephone: (312) 224-1224

*Counsel for Old Republic Insurance Company
and its affiliates*

11690998/1