**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 8, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: June 1, 2020 at 4:00 p.m. (ET)** |

**EVANSTON INSURANCE COMPANY'S MOTION FOR ENTRY OF AN ORDER,
PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 4001, MODIFYING THE AUTOMATIC STAY
TO PERMIT PAYMENTS OF CLAIMS AGAINST NON-DEBTOR INSURED
PARTIES AND RELATED DEFENSE COSTS UNDER INSURANCE POLICIES**

　　Evanston Insurance Company ("**Evanston**") respectfully moves this Court, pursuant to sections 105 and 362(d) of chapter 11 of title 11 of the United States Code the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, for entry of an order, substantially in the form attached hereto, modifying the automatic stay, to the extent it applies, to allow Evanston to pay losses and expenses which are incurred in conjunction with the investigation, defense, adjustment, or settlement of certain non-stayed claims or suits[2] on behalf Non-Debtor Insureds under certain Evanston Insurance Policies (each as defined below), as further described herein.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] As set forth below, these non-stayed claims are generally comprised of non-abuse claims that are not stayed against Non-Debtor Insureds under the Bankruptcy Court Preliminary Injunction (each as defined herein); however, these non-stayed claims also include a limited number of abuse claims against Non-Debtor Insureds that are not stayed under the Bankruptcy Court Preliminary Injunction.

20966192.4

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.[3]

**BACKGROUND**

2. On February 18, 2020 (the "**Petition Date**"), the Boy Scouts of America ("**BSA**") and a related entity, Delaware BSA, LLC (collectively with the BSA, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing these chapter 11 cases.

3. To insure the BSA's Official Scouting Activities, the BSA maintains a comprehensive insurance program. Specifically, the BSA has purchased and continues to purchase and administer commercial general-liability primary, umbrella, and excess liability insurance policies to protect it and to protect and financially support the litigation of claims against various other entities carrying out Official Scouting Activities as part of the BSA's mission. Subject to exceptions and limitations, these entities include Learning for Life, a non-stock organization affiliated with the BSA ("**LFL**"), other non-debtor related entities that have been chartered by the BSA, including local councils that are independently incorporated under the non-profit laws of their respective states (collectively, the "**Local Councils**"), and community and religious organizations, businesses, other participating organizations, and groups of citizens to the extent that they organize Units under the BSA charter (collectively, the

---

[3] Evanston consents to the entry of a final order by the Court on the relief sought in the Motion.

"**Chartered Organizations**," and together with the Local Councils and LFL, the "**BSA Related Parties**").

4. The Debtors' obligations to provide liability insurance and financial and other claims support for the BSA Related Parties arise out of certain shared services arrangements between the Debtors and the BSA Related Parties (the "**Shared Services Arrangements**"). On April 8, 2020, the Court entered an order [Docket No. 369] (the "**Shared Services Order**") authorizing the Debtors to continue performing any and all of their obligations under the Shared Services Arrangements in the ordinary course of operations, subject to limitations set forth in the Shared Services Order.

5. Prior to the Petition Date, Evanston issued to the BSA a Commercial General Liability Policy (the "**Evanston Primary Policy**") and a Commercial Excess Liability Policy (the "**Evanston Excess Policy**," and with the Evanston Primary Policy, the "**Evanston Insurance Policies**"). The Evanston Insurance Policies are occurrence policies covering the policy period from March 1, 2019 through March 1, 2020. The Evanston Insurance Policies provide coverage for defense costs and covered losses related to claims for Personal Injury, Property Damage, and Malpractice arising out of an Official Scouting Activity (each, as defined in the Evanston Primary Policy). Subject to policy exceptions or limitations, the Evanston Primary Policy provides primary coverage with a combined general aggregate limit of $10,000,000 and a combined each-occurrence limit of $1,000,000. The Evanston Excess Policy is an excess policy with a combined general aggregate limit of $13,000,000 and a combined each-occurrence limit of $6,500,000.

6. In addition to the BSA, the Evanston Insurance Policies include several insureds, such as the BSA Related Parties, registered and unregistered volunteers of the BSA and LFL,

and donors and owners of vehicles and equipment used in Official Scouting Activities (collectively, the "**Non-Debtor Insureds**").

7. On March 30, 2020, the Court entered an order granting the BSA's motion for a preliminary injunction, which enjoins certain "**Pending Abuse Actions,**" as defined therein, against the BSA Related Parties and prohibits and enjoins any and all further proceedings in the Pending Abuse Actions from the Petition Date through and including May 18, 2020 [Adv. Proc. No. 20-50527, Docket No. 54] (the "**Bankruptcy Court Preliminary Injunction**"). The Bankruptcy Court Preliminary Injunction, however, does not enjoin general liability claims arising from Official Scouting Activities not part of the Pending Abuse Actions or that are brought against Non-Debtor Insureds other than BSA Related Parties (the "**Non-Stayed Claims**").[4] The Non-Stayed Claims include, among other things, claims for personal injury or wrongful death not related to abuse. The Non-Stayed Claims are proceeding against Non-Debtor Insureds notwithstanding the Bankruptcy Court Preliminary Injunction, and Evanston is being asked to continue to defend, settle, and pay out on such claims that are covered under the Evanston Insurance Policies.

8. Because Evanston continues to handle and defend the Non-Stayed Claims against the Non-Debtor Insureds', Evanston continues to incur administrative expenses and expenses associated with defending claims within the Evanston Insurance Policies. Since the Petition Date, Evanston has not paid any claims under the Evanston Insurance Policies other than minor payments for legal expense and property damage; however, Evanston is aware of claims proceeding against Non-Debtor Insureds that may be covered by the Evanston Insurance

---

[4] As noted in footnote 2, *supra*, the Non-Stayed Claims include non-abuse claims against Non-Debtor Insureds, as well as a limited number of abuse claims against Non-Debtor Insureds that are not stayed under the Bankruptcy Court Preliminary Injunction.

Policies. Among these is a recently settled claim involving a fatality. Pursuant to the settlement, Evanston is to pay $350,000.

## RELIEF REQUESTED

9. By this Motion, Evanston seeks entry of an order, substantially in the form attached hereto: (a) granting relief from the automatic stay "for cause" pursuant to Bankruptcy Code section 362(d)(1), so that Evanston can continue to handle, defend, settle, and pay out Non-Stayed Claims against Non-Debtor Insureds (including those actions to which the Debtor is an additional party) pursuant to the Evanston Insurance Policies; and (b) waiving the 14-day stay under Bankruptcy Rule 4001(a)(3) such that any relief granted under subparagraph (a), above, is effective immediately upon entry of the order granting relief.

## BASIS FOR RELIEF

10. Evanston seeks the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent it applies, to allow Evanston to continue to provide insurance coverage and handle claims against the Non-Debtor Insureds for Non-Stayed Claims pursuant to the terms of the Evanston Insurance Policies. The automatic stay should be modified, to the extent it applies, because the proceeds of the Evanston Insurance Policies may not be property of the Debtors' estates and, even if such proceeds are property of the Debtors' estates, good cause exists to modify the stay.

**I.    Proceeds of the Evanston Insurance Policies May Not Be Property of the Estates.**

11. It is not clear whether the proceeds of the Evanston Insurance Policies are property of the Debtors' estates. To the extent such proceeds are deemed not to be property of the estates, the automatic stay would not apply. In particular, section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate. The question of whether proceeds of an

5

insurance policy are property of the bankruptcy estate is complex and the law is unclear as to the answer. *In re MF Glob. Holdings, Ltd*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012). Although it is "well-settled that a debtor's liability insurance is considered property of the estate . . . 'the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate.'" *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)).

12. In determining whether proceeds are property of the estate, courts examine "the language and scope of the policy at issue." *In re Allied Digital Tech. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). In cases where a policy provides direct coverage to non-debtor insureds and also coverage to the debtor, the court in *Allied* explained that the proceeds are property of the estate "if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Id*.

13. Payment by Evanston of claims under the Evanston Primary Policy would result in the depletion of insurance coverage under such policy. But, as noted above, the Evanston Excess Policy provides $13,000,000 of excess insurance coverage over and above the $10,000,000 aggregate limits under the Evanston Primary Policy for the applicable coverage years and significant other excess coverage is in place. Accordingly, if the relief requested herein were granted, the Debtors' other assets would remain protected, and creditors will have access to significant additional insurance proceeds. There should therefore be no resulting negative impact on the Debtors' estates if proceeds of the Evanston Primary Policy are paid out, and, consequently, the proceeds of the Evanston Primary Policy should not be viewed as property of the Debtors' estates.

## II. Cause Exists for this Court to Grant Relief from the Automatic Stay

14. Section 362(d) of the Bankruptcy Code provides that "the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not provide a

6

20966192.4

specific definition of what constitutes "cause" under section 362(d)(1), and so "[c]ourts conduct a 'fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.'" *In re Downey Fin. Corp.*, 428 B.R. at 609 (quoting *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007)). Specifically, in making the determination of whether to grant relief from the stay for cause, this court considers: (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay;" (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor;" and (3) "[t]he probability of the creditor prevailing on the merits." *In re Downey Fin. Corp.*, 428 B.R. at 609.

15. There will be no great prejudice to the Debtors' estates and other creditors if the stay is modified to allow Evanston to defend and pay any of the Non-Stayed Claims against the Non-Debtor Insureds that are covered by the Evanston Insurance Policies in the ordinary course. As noted above, the Evanston Primary Policy limits are $1,000,000 each occurrence, with combined aggregate limits of $10,000,000, for the one-year policy period. Although the Evanston Primary Policy's aggregate limits may be reduced by the payment of Non-Stayed Claims, there is $13,000,000 in excess insurance above the Evanston Primary Policy, and it is therefore unlikely the handling of these claims would exhaust such additional excess insurance coverage. *See MF Glob.*, 469 B.R. at 185, 191 (finding that cause exists to modify the automatic stay to allow the insurer to fund defense costs for directors and officers in pending actions, "as well as additional matters that may arise in the future.").

16. Further, the hardship to the Non-Debtor Insureds if the stay is maintained considerably outweighs the hardship to the Debtors. The Non-Debtor Insureds need to access the insurance coverage for the Non-Stayed Claims, as such claims are going forward against the

Non-Debtor Insureds and have not been stayed by this Court. In addition, these Non-Stayed Claims are generally not part of any global mediation effort by the Debtors because such claims differ from the Pending Abuse Actions as to the nature of the claims and the liability. The Non-Debtor Insureds, moreover, depend on the Evanston Insurance Policies provided by the Debtors to cover their general liability claims pursuant to the Shared Services Arrangements. If Evanston stopped defending the Non-Debtor Insureds and the claims went to judgment and were not resolved in an orderly fashion, the hardship and the costs to the Non-Debtor Insureds would be great and would far outweigh the potential hardship that could be suffered by the Debtors. Specifically, the Non-Debtor Insureds do not receive the promised insurance coverage, including the claims handling and associated defense of claims, they would be deprived of their insurance rights and forced to bear these costs, if able; and, if unable, potentially be subject to default judgments. *See Downey*, 428 B.R. at 609 (finding that cause exists to modify the automatic stay where "the Insureds would have to pay the . . . defense costs, as well as any defense costs incurred subsequent to the filing of this motion, out of their own pockets."); *MF Glob*., 429 B.R. at 193 ("Lifting the automatic stay to permit [an insurance company] to advance defense costs on behalf of Individual Insureds would not severely prejudice Debtors' estates. But failure to do so would significantly injure the Individual Insureds, whose defense costs are covered by the [Policies]."). Moreover, without access to a proper defense the judgments and expenses associated with the underlying claims against Non-Debtor Insureds would likely be in a greater amount than if these claims against Non-Debtor Insureds were handled in an orderly fashion by Evanston.

17. In addition, Evanston could face coverage lawsuits by Non-Debtor Insureds if Evanston did not provide the coverage under the Evanston Insurance Policies. Evanston would

have to defend these coverage lawsuits in multiple jurisdictions with potentially conflicting results. This would put Evanston in an untenable position.

18. By this Motion, Evanston does not seek to avoid performance of its obligations under the Evanston Insurance Policies. Instead, it seeks to establish certainty as to its obligations and an orderly process that respects the interests of the BSA's estate and the Non-Debtor Insureds. If the Non-Stayed Claims against the Non-Debtor Insureds are not handled in an orderly fashion by Evanston, the results would likely increase the costs to the Debtors' estates and would greatly harm the Non-Debtor Insureds, Evanston, and the injured parties who brought those claims.

19. Good cause exists for this Court to grant relief from the automatic stay to permit Evanston to continue to provide insurance coverage to the Non-Debtor Insureds facing Non-Stayed Claims. As detailed above, the Evanston Insurance Policies provide general liability coverage to Non-Debtor Insureds. The Non-Debtor Insureds have a present need for insurance coverage under the Evanston Insurance Policies as they are currently facing Non-Stayed Claims that are continuing and not stayed by the Bankruptcy Court Preliminary Injunction. This type of need is routinely held to justify modifying the automatic stay to prevent insureds from suffering irreparable harm. *See MF Glob.*, 469 B.R. at 191 (granting relief from stay in order to permit insurers to advance or reimburse defense costs); *see also In re Downey Fin. Corp.*, 428 B.R. at 611 (same); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay because directors and officers would suffer irreparable harm if prevented from accessing defense payments under D&O policy).

### III. The 14-Day Stay Should Be Waived

20. In order to mitigate the continued harm to Evanston and the Non-Debtor Insureds described above, Evanston requests a waiver of the 14-day stay under Rule 4001(a)(3).

9

20966192.4

## NOTICE

21. This Motion is being served on the following: (a) counsel to the Debtors; (b) the Office of the United States Trustee; (c) counsel for the Official Committee of Unsecured Creditors; (d) counsel for the Tort Claimants' Committee; (e) counsel for the Future Claimants' Representative; (f) counsel to the Ad Hoc Committee of Local Councils; and (g) all parties who have requested notice pursuant to Bankruptcy Rule 2002. Evanston submits that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

Evanston respectfully requests entry of an order: granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent it applies, to allow Evanston to continue to handle and settle and pay claims against Non-Debtor Insureds for Non-Stayed Claims (including those actions to which the Debtor is an additional party) pursuant to the terms of the Evanston Insurance Policies and granting to Evanston such other and further relief as is just and proper.

Dated: May 22, 2020

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

*/s/ Andrew J. Roth-Moore*
Michael J. Pankow, (CO No. 21212)
Joshua M. Hantman, (CO No. 42010)
Andrew J. Roth-Moore (DE No. 5988)
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
mpankow@bhfs.com
jhantman@bhfs.com
aroth-moore@bhfs.com

*Attorneys for Evanston Insurance Company*