## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>             Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## CENTURY'S OBJECTION TO DEBTORS' MOTION
## FOR ENTRY OF AN ORDER APPROVING CONFIDENTIALITY
## AND PROTECTIVE ORDER [DKT. 613]

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America, Ace Insurance Group Westchester
Fire Insurance Company and Westchester Surplus
Lines Insurance Company ("Century")*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................ 3

*BSA is in possession of privileged information generated in the course of the defense of BSA*............................................................................................. 3

*BSA's lawyers are in possession of Chubb's privileged communications about BSA and information Chubb shared with Sidley about BSA*................................ 3

*Chubb participated in BSA's defense in the tort system.* .................................... 4

*Chubb presently administers claims for BSA under contract pursuant to the Shared Services Order.* ..................................................................................... 5

*The Proposed Protective Order does not contain necessary protections.*........... 6

*Century met and conferred with Debtors to incorporate protections into the Proposed Protective Order* ............................................................................... 6

ARGUMENT ..................................................................................................... 6

I.    THE ADDITION OF THREE NARROWLY TAILORED PROTECTIONS ARE WARRANTED TO ENSURE THAT CENTURY'S PRIVILEGED INFORMATION AND PRIVILEGED MATERIAL ABOUT THE DEFENSE IS NOT DISCLOSED. ........................ 6

    A.    Privileged information concerning the defense of the underlying abuse claims should be protected and not shared with the tort claimants. .................................................................................. 7

    B.    Debtors should not share with the tort claimants documents protected by orders entered by other courts. ................................. 8

    C.    The clawback provision should be amended to track the protections afforded by Fed. R. Civ. P. 26(b)(5)(B). .............................. 10

II.    CENTURY HAS A MATERIAL INTEREST IN THE PROTECTIONS SOUGHT FOR PRIVILEGED INFORMATION. .................................................................... 10

CONCLUSION................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of America, N.A. v. Superior Court,*
  2013 WL 151153 (4th Dist. Jan. 15, 2013) .............................................................................. 9

*Director, Office of Thrift Supervision v. Vinson & Elkins,* LLP,
  124 F.3d 1304 (D.C.Cir.1997) .............................................................................. 12

*Excelsior College v. Frye,*
  233 F.R.D. 583 (S.D.Cal.2006) .............................................................................. 11, 12

*Holmgren v. State Farm Mut. Auto. Ins.,*
  976 F.2d 573 (9th Cir.1992) .............................................................................. 12

*In re Cherokee Simeon Venture I, LLC,*
  No. 12-12913 (KG), 2012 WL 12940975 (Bankr. D. Del. May 31, 2012) ............................ 10

*In re Grand Jury Investigation,*
  599 F.2d 1224 (3d Cir. 1979) .............................................................................. 12

*In re Madrid,*
  242 S.W.3d 563 (Tex. App. 2007) .............................................................................. 10, 11

*In re Martin Marietta Corp.,*
  856 F.2d 619 (4th Cir.1988) .............................................................................. 12

*Intel Corp.,*
  258 F.R.D. .............................................................................. 12

*John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO,*
  913 F.2d 544 (8th Cir. 1990) .............................................................................. 3, 7

*May Dep't Stores Co. v. Ryan,*
  699 S.W.2d 134 (Mo. Ct. App. 1985) .............................................................................. 11

*Midwest Feeders, Inc. v. Bank of Franklin,*
  No. 5:14CV78-DCB-MTP, 2016 WL 7422561 (S.D. Miss. June 28, 2016) ...................... 10, 11

*Native Am. Arts, Inc. v. Bundy–Howard, Inc.,*
  No. 01 C 1618, 2003 WL 1524649, 2003 U.S. Dist. LEXIS 4393 (N.D.Ill. Mar. 20, 2003) (unpublished) .............................................................................. 11, 12

*Raytheon Co. v. Superior Court,*
  256 Cal. Rptr. 425 (Cal. Ct. App. 1989) .............................................................................. 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Schipp v. Gen. Motors Corp.*,
    457 F. Supp. 2d 917 (E.D. Ark. 2006) ...................................................................... 10

*Sierrapine v. Refiner Prod. Mfg., Inc.*,
    275 F.R.D. 604 (E.D. Cal. 2011) ............................................................................... 11

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
    250 F.R.D. 575 (D. Colo. 2007) ................................................................................... 9

*Steinrock Roofing & Sheet Metal, Inc. v. McCulloch*,
    965 N.E.2d 744 (Ind. Ct. App. 2012) ....................................................................... 10

*Strack & Van Til, Inc. v. Carter*,
    803 N.E.2d 666 (Ind. Ct. App. 2004) ....................................................................... 10

*Taylor v. Temple & Cutler*,
    192 F.R.D. 552 (E.D. Mich. 1999) .............................................................................. 9

*Tele globe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*,
    493 F.3d 345 (3d Cir. 2007) ....................................................................................... 10

*United States v. McPartlin*,
    595 F.2d 1321 (7th Cir. 1979) ...................................................................................... 9

*United States v. Pizzonia*,
    415 F. Supp. 2d 168 (E.D.N.Y. 2006) ......................................................................... 9

*Upjohn Co. v. United States*,
    449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) .............................................. 12

*Visual Scene, Inc. v. Pilkington Bros.*,
    508 So. 2d 437 (Fla. Dist. Ct. App. 1987) .................................................................. 9

*Weitzman v. Blazing Pedals*,
    151 F.R.D. 125 (D.Colo.1993) ..................................................................................... 9

**Other Authorities**

§ 250:19.View That Communications Are Privileged When They Concern Potential Suit,
    17A Couch on Ins. ...................................................................................................... 12

*In re Imerys*,
    Adv. No. 19-50115-LSS, Dkt. 159, Order on Privileged Documents ............................ 3, 7, 12

Century objects to the Proposed Form of Protective Order (Dkt. 613) ("Debtors' Proposed Order")[1] and proposes instead that the proposed order attached in Appendices A (redline) and B (clean copy) be applied to these Chapter 11 proceedings.  The changes sought are essential to protect Chubb's privileged information and privileged information generated in the defense and assessment of underlying abuse claims asserted against Debtors.

## PRELIMINARY STATEMENT

Throughout the course of the proceedings concerning the motion by the Debtors to retain Sidley Austin, the Debtors proposed counsel represented in their briefs and at the hearing (with the Debtors' concurrence) that they would abide by any reasonable limitations to assure the maintenance of privilege.  That is not what happened with the Protective Order.

The Debtors aligned themselves with the Tort Claimants in refusing to accept any revisions the proposed Protective Order that would prohibit Sidley or the Debtors from sharing Chubb's privileged information or privileged information concerning the underlying defense with the Tort Claimants.  Further, Sidley and the Boy Scouts aligned themselves with the Tort Claimants in insisting on terms that purport to override orders entered by other courts that Sidley was bound to support.

Debtors' proposed Protective Order lacks basic protections designed to prevent disclosure of privileged information.  Various provisions of Debtors' proposed Order state that the Debtors may share any document or information with the Tort Claimants just on their agreement to do so.  For example, section 7.2(o) of Debtors' Proposed Order permits broad disclosure of all Discovery Materials to any party on consent of the Producing Party.  Most importantly, the

---

[1] Debtors extended the deadline for objections to the Proposed Protective Order to May 27, 2020 at 11:00 AM.  *See* May 27, 2020 Declaration of Janine Panchok-Berry ("Panchok-Berry Decl.") Ex. 1 (May 26, 2020, 3:05 PM email from K. Basaria).

1

Protective Order does not include a clause precluding the Debtors / Sidley from sharing Chubb's privileged information or privileged information generated in the underlying defense.

Chubb participated in the defense of the Boy Scouts in the tort system through Century prior to the filing of this bankruptcy and, through another Chubb affiliate, ESIS, Inc., is presently administering claims for BSA under contract pursuant to the Shared Services Order. The tripartite privilege maintains as privileged information generated in the course of a common defense and shared among insurers, the companies defending claims, and underlying defense counsel in the course of that defense. This privilege may not be waived by any party without the other's consent.

Any protective order should prohibit the disclosure of Chubb's privileged information and privileged information concerning the defense of the underlying abuse claims absent leave of Court for the Debtors to do otherwise. This is particularly appropriate here given the extraordinary fact that the Debtors' counsel has represented or represents virtually all of the Debtors insurers.

Any protective order should also not include a provision -- such at Section 5.2 of the proposed order -- that asks this Court to eviscerate the orders of other courts especially given that those orders have not even been identified or disclosed to this Court or Century. 28 U.S.C. § 1334(c)(2) requires that this Court abstain from granting this relief.

As Debtors' Proposed Order does not include these protections, we request that the Court enter the Protective Order attached as Appendix B. The Order attached as Appendix B contains certain additional protections that should be incorporated into the Proposed Protective Order.

## BACKGROUND

### *BSA is in possession of privileged information generated in the course of the defense of BSA.*

The Debtors possess the work product of underlying defense counsel, information generated in connection with the defense, and documents databases that contain the statements, opinions, and work product of defense counsel.  The Debtors have not sought, and Chubb and Century have not granted, their consent to share this information or the information that Sidley learned in its representation of Chubb and Century with others.  The protection of this privileged information is vital to the defense of claims.

### *BSA's lawyers are in possession of Chubb's privileged communications about BSA and information Chubb shared with Sidley about BSA.*

As Century's counsel, Sidley Austin was privy to highly confidential information about Chubb's insurance coverage for the Boy Scouts and agreements concerning it.[2]  This includes privileged information concerning the disputes between Century and the Boy Scouts over its insurance coverage, Century's legal analysis of the Boy Scouts' claims, and Century's legal strategies and defenses in these matters.[3]  While some issues were disputed at the May 4, 2020 Hearing on Sidley' retention, the testimony from Chubb's witnesses that they conveyed privileged information to Sidley about BSA was unrefuted.[4]

---

[2]    *See* April 9, 2020 Declaration of Joshua R. Schwartz ("Schwartz Decl.") ¶¶ 5, 26–27 [Dkt. 539].

[3]    *Id.*

[4]    *E.g.*, Tr. of May 4, 2020 Hr'ng on Sidley Retention, at 134:24–135:7 [Dkt. 572] (Testimony of Ms. Christine Russell:  "And we really have to -- we struggle, you know, with sharing our information that is privileged.  And we certainly share it with our own counsel and then we have to decide how much of that we can share with the reinsurers.  So, it's a very delicate balance, but certainly it's always shared with our counsel.  I mean there is no doubt about that.  They can't help us evaluate the claim without understanding our privileged analysis."); *see also id.* at 207:2–4 (Testimony of Mr. Joshua R. Schwartz:  "I had a number of conversations with [Mr. Sneed] about a whole host of issues. So, he was privy to privileged information.").

### *Chubb participated in BSA's defense*
### *in the tort system.*

Debtors, Century, and underlying defense counsel coordinated on the defense of abuse claims asserted against Debtors in the tort system pre-petition. Aligned in a common interest these parties shared privileged legal analysis of the underlying tort claims. Debtors thus possess communications that contain attorney work product, including the mental impressions and opinions of underlying defense counsel relating to the underlying tort litigation and settlement negotiations. Debtors also possess attorney-client communications that include Century and other insurers where underlying defense counsel were included. These communications are protected by the common interest privilege, which cannot be waived by any one party.[5] The protection of this privileged information is vital to the defense.

Debtors acknowledge that Century has been involved in defense and settlement of underlying claims.[6] They state that BSA explored settlement with a substantial number of abuse victims involving several meetings with attorneys of those abuse victims, including at a two-day mediation in early November 2019, which "was attended by a prepetition future claims representative and some of BSA's insurers."[7]

---

[5]  *See In re Imerys*, Adv. No. 19-50115-LSS, Dkt. 159, Order on Privileged Documents at 10[QUERY: Is this cite complete?]; *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO,* 913 F.2d 544, 556 (8th Cir. 1990) (holding that one party cannot waive common interest privilege of a document shared by another party, noting that "[i]t is fundamental that the joint defense privilege cannot be waived without the consent of all parties to the defense") (internal quotation marks and citation omitted).

[6]  *See* Declaration of Brian Whittman in Support of the BSA's Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code dated February 18, 2020 (the "Whittman Decl.") ¶ 18 ("…BSA facilitated the retention of joint defense counsel, coordinated with insurance carriers..).

[7]  Debtors' Informational Brief at 5 [Dkt. 4].

*Chubb presently administers*
*claims for BSA under contract pursuant*
*to the Shared Services Order.*

BSA contends that its obligation to provide liability insurance and financial and other claims support for the BSA Related Parties arise out of certain shared services arrangements between the Debtors and the BSA Related Parties (the "Shared Services Arrangements").  On April 8, 2020, the Bankruptcy Court entered an order [Dkt. 369] (the "Shared Services Order") authorizing BSA to continue performing its obligations under the Shared Services Arrangements in the ordinary course of operations, subject to limitations set forth in the Shared Services Order.[8]

ESIS, a subsidiary of Chubb, services the claims that are not stayed by the preliminary injunction[9] and those claims for which the automatic stay is lifted as a third-party claims administrator pursuant to the terms of certain Claims Service Contracts that require the maintenance of confidentiality/privilege.[10]  The non-stayed claims are proceeding against Non-Debtor Insureds notwithstanding the Bankruptcy Court Preliminary Injunction, and Old Republic and ESIS are being asked to continue to provide for the defense of, settlement, and pay out on such claims that are covered under BSA's insurance program.[11]

---

[8] Declaration of Jessica C. K. Boelter in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession, *Nunc Pro Tunc* to the Petition Date ¶ 22 [Dkt. 204-3] ("In addition, ESIS Inc., a Chubb affiliate, is a third party claims administrator utilized by the BSA and certain of its insurers.").

[9] *See* Old Republic Motion for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insured and Related Defense Costs Under Insurance Policies, at fn. 3. [Dkt. 678] (explaining that the non-stayed claims include non-abuse claims against Non-Debtor Insureds, as well as certain abuse claims against Non-Debtor Insureds under the  Bankruptcy Court Preliminary Injunction).

[10] *Id*. at ¶¶ 10–11.

[11] *Id.*

***The Proposed Protective***
***Order does not contain necessary***
***protections.***

Debtors' Proposed Protective Order lacks basic protections designed to prevent

disclosure of privileged information.  Various provisions of Debtors' Proposed Order state that

the Debtors may share any document or information with the Tort Claimants just on their

agreement to do so.  For example, section 7.2(o) of Debtors' Proposed Order permits broad

disclosure of all Discovery Materials to any party on consent of the Producing Party.  Most

importantly, the Protective Order does not include a clause precluding the Debtors / Sidley from

sharing Chubb's privileged information or privileged information generated in the underlying

defense.

***Century met and conferred***
***with Debtors to incorporate protections into the***
***Proposed Protective Order***

Century sought assurance that the Debtors / Sidley would not share privileged

information generated in the defense with the Tort Claimants.  The Debtors / Sidley refused to

entertain any provision that might preclude its sharing of privileged information with the Tort

Claimants.[12]

## ARGUMENT

I.    **THE ADDITION OF THREE NARROWLY TAILORED PROTECTIONS ARE**
      **WARRANTED TO ENSURE THAT CENTURY'S PRIVILEGED INFORMATION AND**
      **PRIVILEGED MATERIAL ABOUT THE DEFENSE IS NOT DISCLOSED.**

Century seeks to protect the defense of underlying claims by (i) prohibiting the disclosure

of privileged information about the underlying abuse claims, (ii) striking a provision that would

have this Court override unidentified orders by other courts, and (iii) revising the inadvertent

---

[12]    *See* Panchok-Berry Decl. Ex. 1 (May 27, 2020 email from M. Andolina).

claw back provision to bring it into accord with Fed. R. Civ. P. 26(b)(5)(B).  The below sections explain the limited changes Century proposes.

### A.  Privileged information concerning the defense of the underlying abuse claims should be protected and not shared with the tort claimants.

Section 8.3 should be revised to preclude the Debtors' and/or Sidley's disclosure of privileged information about the defense of abuse and other tort claims to claimants by the addition of the following clause:

> "The Debtors shall not produce documents or information subject to the attorney-client privilege, the work-product doctrine, or any other applicable privilege generated in connection with the defense of the underlying Abuse Claims against the Debtors or privileged as to Chubb without notice to all parties and an opportunity for the Debtors' insurers to be heard by the Court with notice beforehand."

*See* Appendix A, §8.3.

And the remainder of Section 8.3 should be modified to track the text adopted by the Court in *In re Imerys* that makes clear that nothing contained in the Protective Order authorizes a Producing Party to disclose any privileged information.

> "Nothing contained in this Protective Order authorizes a Producing Party to disclose to any Official Committee, the FCR or any other party or entity, or their Retained Professionals, another party's or entity's privileged information generated in connection with the defense of Abuse Claims that is subject to a shared Privilege or Protection as between the Producing Party and such party or entity."

*See* Appendix A, §8.3.

In reconciling a protective order in *In re Imerys*, this Court made clear that the Protective Order did not absolve anyone from the obligation not to produce privileged information.[13] Century similarly seeks the Court's assistance in protecting these documents from disclosure to

---

[13]   *Id.* at 18:24–25 and 19:1–7 ("I'm not absolving, you know, anybody of by this protective order of their obligation not to share information that they're under an obligation not to share.").

prevent harming the defense of the underlying tort claims.

The communications among insurers and Debtors about the underlying claims and their defense are privileged as to the Tort Claimants, as this Court held in *In re Imerys*.[14]  As the Court held there, because "any documents produced . . . in this litigation will come into the hands of an adversary in the underlying tort litigation," certain privileged documents may not be produced, including insurer-insured communications containing legal analysis and attorney work product regarding underlying tort litigation.[15]  The ruling applied to attorney-client communications involving underlying defense counsel and communications between insurers and Debtors that contained privileged attorney work product that could not be disclosed to the Debtors' adversaries in the tort system.[16]  A protective order should ensure that these privileges are not compromised by being shared with the Tort Claimants.

These discrete changes are essential given that Sidley is in possession of privileged information from Chubb.  Nor should Sidley be heard to complain as it represented it was open to any protective measures the Court might implement to ensure that privilege is maintained.

### B. Debtors should not share with the tort claimants documents protected by orders entered by other courts.

Section 5.2 of the proposed Protective Order would have this Court override unidentified confidentiality orders, entered by unidentified state and federal courts, involving unidentified

---

[14]  *See In re Imerys*, Adv. No. 19-50115-LSS, Dkt. 159, Order on Privileged Documents at 10; *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO,* 913 F.2d 544, 556 (8th Cir. 1990) (holding that one party cannot waive common interest privilege of a document shared by another party, noting that "[i]t is fundamental that the joint defense privilege cannot be waived without the consent of all parties to the defense") (internal quotation marks and citation omitted).

[15]  *Id*. at 13.

[16]  *See In re Imerys*, Adv. No. 19-50115-LSS, Dkt. 159, Order on Privileged Documents at 14-15 (concluding that the coverage/reservation of rights letters are work product and may not be disclosed to the Tort Claimants).

parties and third parties without disclosure as to what documents these orders address or whether they apply to clawed back privileged documents or documents produced by third parties not before this Court.[17]

Pursuant to 28 U.S.C. § 1334(c)(2), this Court "*shall* abstain" if the criteria for mandatory abstention are met as they are here with respect to those orders entered by state court that the Debtors and Tort Claimant seek to override.  This sort of comprehensive affirmative relief is not properly sought without identifying the orders at issue, the parties to the orders, and the courts that entered them.  Indeed, the compulsory turn-over of documents is not even properly part of a protective order.

Section 5.9 should be amended as follows to require that the Debtors give notice of the orders it seeks to override issued to prevent inadvertent disclosure of privileged information:

> ". . . the BSA and the Insurers consent to the delivery of Prepetition Confidential Documents to the TCC Representatives (as defined below) after notice and an opportunity to review any documents that are proposed to be provided, in which case BSA agrees that the delivery of the Prepetition Confidential Documents to the TCC Representatives shall not constitute a breach of any Existing Confidentiality Agreement."

*Id.* at §5.9.

Alternatively, Section 5.9 should be struck as it eviscerates orders of other unidentified courts and confidentiality rights without disclosure even of the orders that are at issue and the parties to those orders.

---

[17]    Section 5.2 would allow all documents subject to "prepetition Confidentiality Orders to [be] shared among the TCC's Counsel and Other Retained Professionals, the Members of the TCC, the UCC's Counsel and Other Retained Professionals, the FCR and the FCR's Counsel, the Local Council Committee's Counsel and Other Retained Professionals, and the Insurers' Outside Counsel and Other Retained Professionals."

### C. The clawback provision should be amended to track the protections afforded by Fed. R. Civ. P. 26(b)(5)(B).

Sections 10.1 should be revised to track the corresponding text of the Protective Order in

*Imerys* and bring the section into accord with Fed. R. Civ. P. 26(b)(5)(B).

Under Fed. R. Civ. P. 26(b)(5)(B), after a party is notified there has been an inadvertent

disclosure, that "party must promptly return, sequester, or destroy the specified information and

any copies it has; must not use or disclose the information until the claim is resolved."

The Tort Claimants modified the text of Section 10.1 to introduce a loophole that allows

them "to retain any document subject to challenge" without limit. The alternative the Rule offers

to return or destruction is to "promptly present the information to the court under seal for a

determination of the claim."

### II. CENTURY HAS A MATERIAL INTEREST IN THE PROTECTIONS SOUGHT FOR PRIVILEGED INFORMATION.

The tripartite privilege protects from disclosure privileged information generated by

underlying defense counsel or communicated among the insurer, its insured, and underlying

defense counsel.[18] The privilege protects attorney-client communications even where interests

of the clients may conflict in part.[19]

---

[18] *Taylor v. Temple & Cutler*, 192 F.R.D. 552, 558 (E.D. Mich. 1999) (protections of the attorney-client privilege and the work product doctrine extended to private communications between legal malpractice insurer and insureds and their counsel, and to documents created in anticipation of malpractice litigation, including those created during an adversarial period between insurer and insured when insurer sought declaration of noncoverage); *Weitzman v. Blazing Pedals*, 151 F.R.D. 125, 126 (D.Colo.1993) ("files generated during the [insurer's] investigation of third party claims are made in anticipation of litigation and are not discoverable" to third parties); *Bank of America, N.A. v. Superior Court*, 2013 WL 151153 (4th Dist. Jan. 15, 2013).

[19] *See United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 250 F.R.D. 575, 578-79 (D. Colo. 2007); *United States v. Pizzonia*, 415 F. Supp. 2d 168, 178 (E.D.N.Y. 2006); *Raytheon Co. v. Superior Court*, 256 Cal. Rptr. 425, 428-29 (Cal. Ct. App. 1989); *Visual Scene, Inc. v. Pilkington Bros.*, 508 So. 2d 437, 440 (Fla. Dist. Ct. App. 1987).

The tripartite privilege prevents tort claimants from gaining access to documents among the insurer, insured, and defense counsel because disclosure could prejudice the defense against those same tort claimants.  Thus, courts around the country hold that these insurer-insured communications are privileged in tort litigation, as they are privileged here.[20]  *See Schipp v. Gen. Motors Corp.*, 457 F. Supp. 2d 917, 924 (E.D. Ark. 2006) ("In short, documents prepared by Kennedy's insurer, on the facts of this case, are protected by the work-product doctrine because they were prepared in anticipation of litigation and because GM has failed to demonstrate a substantial need for them."); *Strack & Van Til, Inc. v. Carter*, 803 N.E.2d 666 (Ind. Ct. App. 2004) (Grocery store's accident investigation report to its liability insurer was privileged in customer's slip and fall negligence action, even though the report included conclusions by a store supervisor that were based on statements by a store employee.); *Steinrock Roofing & Sheet Metal, Inc. v. McCulloch*, 965 N.E.2d 744 (Ind. Ct. App. 2012) (Claims file information from homeowner's insurance carrier, which determined that homeowner's roof required replacement as result of windstorm and made payments for work performed by contractor, was privileged in contractor's suit to recover unpaid balance on contract for roof replacement, as claims file would have included statements between homeowner and insurer.).

Communications between the Debtors and Century about the underlying claims are not discoverable to Tort Claimants.[21]  Federal Rule of Civil Procedure 26(b)(3) stipulates that a party

---

[20]   *See In re Cherokee Simeon Venture I, LLC*, No. 12-12913 (KG), 2012 WL 12940975, at *3 (Bankr. D. Del. May 31, 2012) (communications exchanged between Debtor and Debtor's manager about litigation strategies were covered by common interest privilege); *Tele globe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)*, 493 F.3d 345, 363-65 (3d Cir. 2007) (waiving privilege requires the consent of all parties to the communication).

[21]   For instance, even a reservation of rights letter, prepared by an insurer and sent to the insured and their attorney, may constitute work product.  *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14CV78-DCB-MTP, 2016 WL 7422561, at *5 (S.D. Miss. June 28, 2016) citing *In re Madrid*, 242 S.W.3d 563, 568-69 (Tex. App. 2007).

may not discover documents and tangible things that are prepared *in anticipation* of litigation or

for trial by or for another party or its representative, including the other party's attorney,

consultant, *surety, indemnitor, insurer, or agent*.  It is for this precise reason that the court in

*Midwest Feeders, Inc. v. Bank of Franklin* denied a motion to compel, explaining that,

> The document at issue here was prepared by the Bank's insurer, addressed
> and sent to the Bank's attorney, and was prepared by the insurer due to the
> commencement of the action.  This appears to fall squarely within the
> confines of Rule 26(b)(3).[22]

Any such communication between an insured and insurer that relates to the duty to report

incidents and the latter's defense or indemnity falls within the attorney-client privilege.[23]  In

reaching its holding, the court in *Midwest Feeders, Inc*. relied upon and adopted the reasoning in

*In re Madrid*, which determined that such things as reservation of rights letters do not only

constitute privileged work product but that they are not discoverable because they are, in any

event, wholly irrelevant.[24]

It is for reasons like these that district courts have concluded that the plain language of

then-numbered Rule 26(a)(1)(D) "merely requires the disclosure of an insurance policy or other

agreement that gives rise to an insurer's obligation to indemnify or hold its insured harmless for

judgment, and does not require the production of all agreements relating to insurance."[25]  It is

thus clear why the Court in *Native American Arts v. Bundy-Howard*, for example, found that

Rule 26(a)(1)(D)'s reference to "any insurance agreement" did not embrace an insurer's

---

[22]    *Id.*

[23]    *See May Dep't Stores Co. v. Ryan*, 699 S.W.2d 134, 136 (Mo. Ct. App. 1985).

[24]    *In re Madrid*, 242 S.W.3d 563, 568 (Tex. App. 2007).

[25]    *Sierrapine v. Refiner Prod. Mfg., Inc.*, 275 F.R.D. 604, 612 (E.D. Cal. 2011) citing *Excelsior College v. Frye*, 233 F.R.D. 583, 585–86 (S.D.Cal.2006); *accord Native Am. Arts, Inc. v. Bundy–Howard, Inc.,* No. 01 C 1618, 2003 WL 1524649, at *1–2, 2003 U.S. Dist. LEXIS 4393, at *5–6 (N.D.Ill. Mar. 20, 2003) (unpublished) (concluding that then-numbered Rule 26(a)(1)(D) does not require disclosure of a 'reservation of rights' letter)…"

communications about claims and held that plaintiff was entitled to nothing more than the

insurance policies themselves.[26]

This Court has held that communications in furtherance of the defense of underlying

claims may contain opinion work product.[27]  The Third Circuit recognizes that documents that

contain "pure legal opinion" are "opinion work product" that "is the most sacrosanct of all forms

of work product."[28]  It encompasses an attorney's mental impressions, conclusions, opinions, or

legal theories.  A document may contain both fact work product and opinion work product, and if

such statements are intertwined it may be impossible to sort between the two.[29]

Communications protected by attorney-client privilege are also generally "absolutely

immune from discovery."[30]  The attorney-client privilege applies to communications between an

insured and its liability insurer based on the recognition that communications about an event

giving rise to liability are predominantly intended to be transmitted to the insurer's attorney, or

one assigned by it, to defend the ultimate claim against the insured.[31]  This is because the "the

insured is contractually bound to cooperate in that defense."[32]

---

[26]  *Excelsior Coll. v. Frye*, 233 F.R.D. 583, 585–86 (S.D. Cal. 2006) citing *Native American Arts v. Bundy–Howard,* 2003 WL 1524649, 2003 U.S. Dist. LEXIS 4393 (N.D.Ill.2003).

[27]  *See In re Imerys*, Adv. No. 19-50115-LSS, Dkt. 159, Order on Privileged Documents at 14-15.

[28]  *In re Grand Jury Investigation,* 599 F.2d 1224, 1231 (3d Cir. 1979).

[29]  *Intel Corp.,* 258 F.R.D. at 294[QUERY:  Could not locate the long cite for this case.].  Debtors and the Tort Claimants must show a "substantial need and undue hardship" before any factual work product may be discovered and, further, mental process work product is afforded ***nearly absolute protection***.  *See In re Martin Marietta Corp.*, 856 F.2d 619, 624 (4th Cir.1988); *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Holmgren v. State Farm Mut. Auto. Ins.*, 976 F.2d 573, 577 (9th Cir.1992) (holding that work product "may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling"); *see also Director, Office of Thrift Supervision v. Vinson & Elkins*, LLP, 124 F.3d 1304, 1307 (D.C.Cir.1997) ("virtually undiscoverable").

[30]  *Id*.

[31]  § 250:19.View That Communications Are Privileged When They Concern Potential Suit, 17A Couch on Ins.

[32]  *Id.*

Debtors' communications with Century regarding the underlying claims, whether or not the communications include underlying defense counsel, contain the mental impressions of underlying defense counsel about the abuse claims asserted against Debtors.  These communications incorporate the opinion work product and factual work product of defense counsel and are thus protected from disclosure to the Tort Claimants under Third Circuit precedent.  Communications with underlying defense counsel are also protected as attorney-client communications.

## CONCLUSION

WHEREFORE, Century objects to the Debtors' / Tort Claimant Proposed Protective Order and requests that it only be entered with the modifications indicated in the blacklined version attached as Appendix A and that the proposed clean form of order attached as Appendix B be entered instead.

Dated:  May 27, 2020

Respectfully Submitted,

By:  /s/ Stamatios Stamoulis
     Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone:    302 999 1540
Facsimile:     302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:    212 326 2000
Facsimile:     212 326 2061

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America, Ace Insurance Group,
Westchester Fire Insurance Company, and
Westchester Surplus Lines Insurance Company*

OMM_US:77977228.9