**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' OMNIBUS OBJECTION TO:**

**(1) MOTION FOR RELIEF FROM THE AUTOMATIC STAY OF COURTNEY KNIGHT AND STEPHEN KNIGHT, JOINTLY AS THE SURVIVING PARENTS OF E.J.K., A MINOR CHILD, AND STEPHEN KNIGHT, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF E.J.K [DOCKET NO. 545];**

**(2) MOTION OF TIMOTHY AND KAREN SPAHR, INDIVIDUALLY AND AS NEXT FRIENDS OF ZRS, A MINOR, FOR AN ORDER FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(D) OF THE BANKRUPTCY CODE AND THE PLAN INJUNCTION TO LIQUIDATE THE CLAIM AND COLLECT FROM THE APPLIABLE INSURANCE PROCEEDS [DOCKET NO. 575 AND 583];**

**(3) OLD REPUBLIC INSURANCE COMPANY'S MOTION PURSUANT TO SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO PERMIT PAYMENTS OF CLAIMS AGAINST NON-DEBTORS INSUREDS AND RELATED DEFENSE COSTS UNDER INSURANCE POLICIES [DOCKET NO. 678];**

**(4) MOTION OF NICHOLE ERICKSON AND MASON GORDON FOR AN ORDER GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY OF 11 U.S.C. SECTION 362; AND**

**(5) EVANSTON INSURANCE COMPANY'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, MODIFYING THE AUTOMATIC STAY TO PERMIT PAYMENTS OF CLAIMS AGAINST NON-DEBTOR INSURED PARTIES AND RELATED DEFENSE COSTS UNDER INSURANCE POLICIES [DOCKET NO. 686]**

---

[1] The Debtors in the chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

The Official Committee of Tort Claimants (consisting of survivors of childhood sexual abuse) (the "Tort Claimants' Committee" or the "TCC"), appointed in the above-captioned cases, hereby files this omnibus objection (the "Omnibus Objection") to: *(1) Motion for Relief from the Automatic Stay of Courtney Knight and Stephen Knight, Jointly as the Surviving Parents of E.J.K., a Minor Child, and And Stephen Knight, as Personal Representative of the Estate of E.J.K* [Docket No. 545] (the "Knight Stay Relief Motion"); (2) *Motion Of Timothy and Karen Spahr, Individually and As Next Friends Of Zrs, A Minor, For An Order For Relief From The Automatic Stay Pursuant To Section 362(D) Of The Bankruptcy Code and The Plan Injunction To Liquidate The Claim and Collect From The Applicable Insurance Proceeds* [Docket No. 575 and 583] (the "Spahr Stay Relief Motion")*; (3) Old Republic Insurance Company's Motion Pursuant To Sections 105(A) and 362 Of The Bankruptcy Code and Bankruptcy Rule 4001 For An Order Modifying The Automatic Stay To Permit Payments Of Claims Against Non-Debtors Insureds and Related Defense Costs Under Insurance Policies* [Docket No. 678] (the "Old Republic Stay Relief Motion"); *(4) Motion Of Nichole Erickson and Mason Gordon For An Order Granting Limited Relief From The Automatic Stay Of 11 U.S.C. Section 362; and (5) Evanston Insurance Company's Motion For Entry Of An Order Pursuant To Section 362 Of The Bankruptcy Code and Bankruptcy Rule 4001, Modifying The Automatic Stay To Permit Payments Of Claims Against Non-Debtor Insured Parties and Related Defense Costs Under Insurance Policies* [Docket No. 686] (the "Evanston Stay Relief Motion") (collectively, the "Stay Relief Motions") , and respectfully states as follows:

# I.

## Introduction

1.      As of the petition date, there were approximately 275 sexual abuse actions (the "Abuse Actions") filed against the Boy Scouts of America (the "Debtor" or "BSA"), Local Councils, and certain Chartered Organizations. The BSA filed a complaint in the adversary proceeding, Case No. 20-50527 (the "PI Action"), and obtained entry of a preliminary injunction that stays Abuse Actions against the non-debtor Local Councils and certain Chartered Organizations.

2.      The BSA states that it commenced its chapter 11 case primarily for the purpose of addressing the Abuse Actions in a consolidated manner so that the BSA can "timely and equitably compensate[e] victims of abuse in Scouting." Brief in Support of Preliminary Injunction, Adv. Docket No. 7, p. 3. Since the commencement of the case, the BSA has (a) created an electronic data room with information regarding the BSA's assets, (b) assisted in the formation of an ad hoc committee of Local Councils (the "AHLC"), (c) engaged a representative for certain categories of abuse claimants (the "FCR"); (d) established bar dates to the Debtors' creditors and for creditors, including abuse victims, to file proofs of claim; (e) sought the appointment of mediators to mediate all issues related to a global settlement of claims against the BSA (including abuse claims) through a consensual plan of reorganization.

3.      The TCC believes that the resolution of abuse claims will not and cannot be resolved in any substantive and comprehensive manner until after the claims bar date of November 16, 2020 (the "Claims Bar Date") passes. After  passage of the Claims Bar Date the TCC, BSA, UCC, FCR, AHLC, and the numerous insurers can begin to evaluate the estate's true

exposure and whether and to what extent the BSA has sufficient  insurance coverage for over 7,000 sexual abuse claims that the TCC expects to be filed by the Claims Bar Date.

4.      However, the movants of the Stay Relief Motions are not subject to the preliminary injunction in the PI Action. As a result, the non-debtor defendants continue to be subject to their claims and will seek coverage under the BSA's policies, which also cover the claims arising from the Abuse Actions. Three of the movants are personal injury claimants who are not survivors of sexual abuse, but nevertheless impact the insurance proceeds available to sexual abuse and non-sexual abuse claims alike.  The other two movants are insurance carriers who provided BSA and the Local Councils with insurance coverage from 2007 – 2020.  All of their motions implicate assets of the BSA estate and insurance coverage that would be reduced by the granting of any of the Stay Relief Motions.

5.      Resolution of the Stay Relief Motions is premature for the following reasons:  (a) the Court just set the Claims Bar Date, there is no information or analysis to suggest that BSA's insurance is sufficient to cover both sexual abuse and non-sexual abuse claims, (b) there is nothing in the record supporting the  speculation that there is sufficient excess insurance beyond the insurance that is the subject of these motions; (c) no realistic mediation process can begin until parties have analyzed the claims which are not even due to be filed until November 16, 2020 and (d) the relief sought by one insurer (Old Republic) would create limitless liability for BSA and reduce BSA's cash by virtue of JP Morgan's draw on secured letters of credit posted for Old Republic's benefit.  For these reasons, discussed in more detail below, each of the Stay Relief Motions should be denied, without prejudice, given the status of the case.

## II.

## Background Regarding Stay Relief Motion

**A.    The Knight Stay Relief Motion**

6.      The Knight Stay Relief Motion seeks to leave to continue a lawsuit against the BSA and the Atlanta Local Council based upon the tragic death of a scout on June 25, 2018. According to the Knight Stay Relief Motion, the trial court mostly oversaw discovery battles in the year prior to BSA's filing for bankruptcy. Knight Stay Relief Motion at Paragraph 25.  No depositions have been taken and no trial date has been set. *Id.* The Knight Stay Relief Motion seeks to have the lawsuit proceed to liquidate the claim and collect against available insurance proceeds.  Knight Stay Relief Motion at Paragraph 12.  The Knight Stay Relief Motion does not provide any insurance information and asserts without any foundation that "the estate would not be significantly depleted by the Debtors' defense of the Knight's claims…."  Knight Stay Relief Motion at Paragraph 29.  Based upon the occurrence date, the relevant primary and first excess policies were issued by Old Republic Insurance Company ("Old Republic").

**B.    The Spahr Stay Relief Motion**

7.      The Spahr Stay Relief Motion seeks leave to continue litigation against BSA, its local councils and various individuals arising out traumatic brain and spinal injuries suffered by Spahr. The Spahr Stay Relief Motion does not describe any significant progress made in the pending litigation and no trial date is disclosed.  Based upon the declaration page attached to the Spahr Stay Relief Motion as Exhibit B, the Spahr claim apparently would be covered by March 1, 2017 – March 1, 2018 primary and excess policies issued by Old Republic(same insurer as

Knight).  The Spahr claim seeks to liquidate its claim but only recover against insurance proceeds.

**C.    The Erickson and Gordon Stay Relief Motion**

8.    The Erickson and Gordon Stay Relief Motion involves the tragic death of a scout on May 25, 2019.  No lawsuit has been commenced.  The relief sought by the motion is to proceed with a settlement conference or mediation.  The motion discloses that the claimant had made a $6.5 million demand upon Evanston Insurance Company ("Evanston") BSA's insurer. Erickson and Gordon Stay Relief Motion at Paragraph 19.

**D.    The Evanston Stay Relief Motion**

9.    The Evanston Stay Relief Motion is made by the insurer for BSA that appears to be responding to the Erickson and Gordon Stay Relief Motion (and claim) discussed above. Evanston seeks relief to pay $350,000 for a fatality claim and to pay defense and indemnity obligations to its insureds covered during its policy period (March 1, 2019 – March 1, 2020). Evanston provides no information about that settlement.  The Evanston Stay Relief Motion acknowledges that it issued a primary policy for $1 million per occurrence, with an aggregate limit of $10 million.  In other words, each occurrence is covered by the primary policy for up to $1 million and the policy is exhausted after Evanston pays a total of $10 million.  Evanston issued an excess policy above the primary policy, and that excess policy provides for $6.5 million per occurrence, with a $13 million aggregate limit.  Thus Evanston's total per occurrence liability is $7.5 million and both policies are exhausted if it pays a total of $23 million.

E.      **Old Republic Stay Relief Motion**

10.      The Old Republic Stay Relief Motion implicates the other two individuals' relief from stay motions (Knight and Spahr) as it issued policies apparently applicable to those claims. Old Republic issued to BSA all the primary and first excess layer policies from March 1, 2008 through March 1, 2019.  It also issued to BSA the first excess layer policy for March 1. 2007 – March 1, 2008.  All of the primary policies have $1 million per occurrence limits with no aggregate limit.  The insurance actually does not shift the financial risk from BSA to the insurer because, BSA has the ultimate financial responsibility for all amounts paid under the implicated primary policies.  *See*, e.g., Old Republic Stay Relief Motion, Exhibit A.  Moreover, BSA's obligation to pay that $1 million per occurrence is secured by cash collateralized letters of credit issued by JP Morgan Chase in an amount, on information and belief, of $61 million.  Old Republic acknowledges BSA's financial exposure: "Old Republic will continue to draw on JP Morgan L/Cs [Letter of Credit] as need to cover costs and expenses."  Old Republic Stay Relief Motion at Paragraph 12.

11.      Old Republic's excess layer exposure is equally problematic.  First, Old Republic states that its excess policies issues for the 2007, 2010 and 2012 years are completely exhausted. For years that are not identified as exhausted, no more than $9 million per year is available for BSA claimants.  Claimants will have to seek whatever excess insurance is available after BSA's $1 million obligation is paid and the $9 million is exhausted by paying other claims.

**III.**

**SECTION 362(D) AND THE RELEVANT CASE DOES NOT SUPPORT STAY RELIEF**

12.     The Stay Relief Motions should be denied because the relief sought will undermine the very purpose of the automatic stay. In the Third Circuit, "[i]t has long been the rule . . . that insurance policies are considered part of the property of a bankruptcy estate." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (citing *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987)). The automatic stay was enacted to protect debtors *and* creditors by preventing an unfair distribution of estate assets among creditors. *Superior Paint Mfg. v. Lopez-Soto* (*In re Lopez-Soto*), 764 F.2d 23, 27 (1st Cir. 1985), citing House Rep. No. 595, 95th Cong., 2d Sess. 340, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6297 ("[W]ithout it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors.").

13.     Consistent with this policy, courts have denied relief from stay. *See, Tringali v. Hathaway Machinery Co.*, 796 F.2d 553 (1st Cir. 1986); *Forty-Eight Insulations, Inc.*, 54 B.R. 905 (Bankr. N.D. Ill. 1985) ("If this Court were to allow the defendants to proceed against Forty-Eight's insurers, it would literally be firing the starting gun for the race to the courthouse. Eventually, and more probably sooner than later, the judgments would exceed the policy limits and a few claimants would have very substantial payments while the majority of claimants would end up with nothing."); *MacArthur Company v. Johns-Manville Corporation*, 837 F.2d 89, 92-93 (2d Cir. 1988) (under section 362(a) of the Bankruptcy Code, a bankruptcy court has authority to

enjoin suits against bankrupt's insurers where tort claimants sought to collect insurance proceeds that are property of the estate).

14.      The leading treatise on bankruptcy law recognizes this policy -

> Application of the automatic stay to the recovery of policy proceeds enables the bankruptcy court to assure that available assets are being distributed in an equitable fashion among creditors. When there are multiple claimants to the policy proceeds, the court should be able to oversee the allocation of the proceeds among claimants. Although policy proceeds are not available to all creditors, and in that sense are different from other property of the estate, they may be available to a class of creditors whose claims are covered by insurance, and may be insufficient to satisfy that class fully. In such a case, oversight by the court is necessary to assure an equitable distribution of the available assets. The automatic stay assures that the court will be able to determine the sufficiency of the policy proceeds before any particular claimant seeks to recover those funds.

3 Collier on Bankruptcy ¶ 362.03 (16th Ed.)

15.      The Stay Relief Motions seek to upend the automatic stay's primary purpose by giving the movants the opportunity to deplete the insurance proceeds and thereby leaving no insurance coverage for similarly situated tort claimants.

## IV.

## FACTORS AGAINST GRANTING RELIEF

16.      The Knight Stay Relief Motion and Spahr Stay Relief Motion each seek relief that affects the BSA estate because both claims are insured by Old Republic policies that have $1 million deductibles secured by cash collateralized letters of credit issued by JP Morgan. If these Stay Relief Motions are denied, the estate and its cash remain unaffected until claims are evaluated and addressed on an organized basis.

17.      The insurance implications go far beyond the sex abuse claims and the movants' personal injury claims.  For a decade Old Republic issued policies to BSA that provided

coverage for sex abuse survivors' claims, non-sex abuse claims, and employment liability claims.  With no evidence in the record about additional excess insurance, and no evidence about the claims that may exist that are covered by the same $9 million Old Republic policies, allowing these movants to proceed would prejudice all claimants who are covered by these Old Republic policies.  Until the claims bar date, no one will know with any certainty the totality of covered claims.

18.     Based on information provided to the Tort Claimants Committee, it believes that no less than approximately 7000 sex abuse claims will be filed.  There is no evidence before the Court as to the total number of non-sexual abuse personal injury claims, but the Tort Claimants Committee has been informed of at least 40 claims.  The Old Republic policies also respond to employment liability claims.  The Tort Claimants Committee has no information on the number or scope of such claims.

19.     Granting the Stay Relief Motions will benefit the movants to the detriment of other claimants, be they sex abuse survivors, non-sex abuse claimants, or employees, because the amount of Old Republic's insurance diminishes BSA's available cash dollar for dollar by the payment of movants' claims.  Any assertion as to the adequacy of remaining insurance or the unlikelihood of claims during the coverage years is pure speculation.  The Court should not allow the start of a race to the courthouse for a fixed amount of insurance.

20.     Another significant complicating factor is the interplay between the reach of the preliminary injunction in in the PI Action and the reach of the insurance policies issued by Old Republic and Evanston.  While the automatic stay prohibits litigation against the BSA, the preliminary injunction prohibits litigation against all 261 Local Councils and certain Chartered

Organizations with respect to the Abuse Actions only.  However, the underlying actions under the Stay Relief Motions are not stayed against the Local Councils and the Chartered Organizations. As a result, those non-debtor insureds will seek coverage under the applicable policies to the detriment of all sexual abuse claimants in the Abuse Actions because they are stayed against the Local Councils and Chartered Organizations, and their claims will not be liquidated or allowed concurrently with the non-abuse claims.

21.     Old Republic and Evanston separately argue in their Stay Relief Motions that they will be prejudiced if the stay is not lifted because they must defend those defendants seeking insurance proceeds under their policies not subject to the automatic stay or the preliminary injunction.  The shoe is really on the other foot.  It is BSA directly, and indirectly all other tort claimants who are prejudiced.  If the individual Motions for relief from stay are granted, the insurance potentially available to every other tort claimant is diminished.

22.     Moreover, if Old Republic and Evanston are allowed to pay other insureds under their policies, they may be creating additional claims against BSA.  There is nothing in the record about each of the insurer's coverage position toward BSA.  To the extent they are reserving their right to deny or discount coverage, the insurers may make contributions or restitution claims against BSA.  To justify the relief these insurers are seeking, they must indicate what claims, if any, they intend to pursue against their insured, BSA, or insureds to which BSA has indemnity obligations outside of insurance.  No such assurances have been provided.

23.     Old Republic and Evanston express concern that if they fail to pay the defense costs and indemnify them, they will subject themselves to exposure for wrongful denial of

coverage.  That position is irreconcilable with an automatic stay in place, a legal and binding

statutory mandate precluding the payment of insurance proceeds.  The very fact the carriers

sought relief from the automatic stay demonstrates they have a basis to suspend payments until

the stay is lifted.[2]

24.      The Court should also be mindful of the differences between the sex abuse claims

to these non-sex abuse claims as they relate to the triggering of insurance coverage.  Claims like

the Knight claim, the Spahr claim, and the Gordon claim each are a single occurrence.  That

means there is only one year's worth of coverage that is triggered by their claims, albeit different

years in their cases. However, claims by sex abuse survivors, depending on the application of

different theories of triggers and different interpretations by state courts of their state's insurance

law, can cover multiple years.  This volatility and unpredictability means that certain years of

coverage can be heavily overloaded with claims, while others remain relatively untouched.

There is nothing currently before the Court that would assist it in concluding that the policies and

years invoked by the movants' claims are going to be either well supplied with available

insurance or sapped by the exhaustion of policies hit by multiple claims. Parties in interest will

be unable to draw any firm conclusions before the passage of the Claims Bar Date and sometime

after when the TCC and other stakeholders have evaluated the claims filed and the insurance

available to pay such claims..

---

[2] In the context that the BSA is being responsive to the TCC and other stakeholder regarding discovery, mediation, and moving this case forward in a meaningful fashion, the Stay Relief Motions, and the dozens of other non-abuse tort claims against the BSA, demonstrate then the BSA should not only have included the plaintiffs in the Abuse Actions in the PI Action but also the movants of the Stay Relief Motions and any other tort claimant that might have a right to insurance proceeds from any of the BSA's policies. Under those conditions, the TCC believes that the BSA should amend the complaint in the PI Action to include the holders of non-sexual abuse claims.

25.     The Tort Claimant Committee is necessarily mindful and sensitive to the need of the individual movants for resolution of their claims but the TCC is equally mindful and sensitive to the need of resolving the sexual abuse claims.  The TCC simply does not want to foster a premature race to insurance proceeds, which is one of the primary purposes of the automatic stay and the preliminary injunction.  The TCC believes that the better course at this early stage in the case is to hold off litigation and its concomitant expenses until there is a better understanding of how much insurance is available relative to the claims covered in any given year.  It seems from all three individual Stay Relief Motions that none have progressed beyond document discovery, and there is no immediate trial date set.  Also, one cannot ignore the trial setting ramifications of Covid-19 and the need for protected courtrooms.  As such, it appears that all trials will be delayed for some period of time, which reduces the prejudice to  these individual Movants.

26.     The Evanston Stay Relief Motion seeks permission to pay insurance proceeds on "Non-Stayed Claims" to "Non-Debtor Insureds."  Proposed Order at Paragraph 2.  Evanston has not identified who the Non-Debtor Insureds are, and what are the Non-Stayed Claims.  Evanston also states in a cryptic footnote: "[H]owever, these non-stayed claims also include a limited number of abuse claims against Non-Debtor Insureds that are not stayed by the Bankruptcy Court's Preliminary Injunction."  Nowhere in its motion does Evanston explain what it means or the scope of relief requested it relates solely to abuse claims.  There is no evidence which claims are receiving the benefit of the relief sought by Evanston or the scope of the relief.

27.     There is no basis to test Evanston's speculation that there is adequate insurance to cover the rest of the universe of claims falling in the Evanston policy period.  Evanston admits

the relief will deplete its insurance.  Evanston Stay Relief Motion at Paragraph 13.  However, Evanston assures the Court, "significant other excess insurance is in place." *Id.*  Hence Evanston reasons: "There should therefore be no resulting negative impact on the Debtors' estates if the Evanston policy proceeds are paid out…."  No evidence supports this speculation. The Gordon Stay Relief Motion attaches a demand of Evanston for $6.5 Million.  The Evanston primary policy has $10 million in aggregate limits, and $1 million per occurrence.  The excess layer has $13.5 million in aggregate.  If the Gordon demand were met, Evanston would have $9 million left at the primary level, and just $7.5 million at the excess level, making it increasingly likely future claims will breach the Evanston policies and hit any excess layers there are. The Gordon Stay Relief Motion provides the only evidence regarding the sufficiency of the Evanston policy proceeds and it contradicts Evanston's speculation.

28.    Evanston also is mistaken in claiming that the insured defendants subject to non-stayed claims will not be part of a global mediation effort.  Evanston Stay Relief Motion at Paragraph 16.  If experience is any guide, insurers will want channeling injunctions to protect them from any further claims on the policies at issue, as has been the case in other mass tort sexual abuse bankruptcies. Thus, defendants of non-stayed claims will be inevitably part of a global resolution, and not the subject of piecemeal litigation as Evanston threatens.  Indeed it is this failure to understand the nature of the BSA case that leads Evanston to rely upon non-mass tort cases for its support.  The cases relied upon by the insurers (Evanston Stay Relief Motion at Paragraphs 14-19) and by Old Republic (Old Republic Stay Relief Motion at Paragraphs 15-16 and 20-21) involve Director & Officer Insurance Liability Policies, which policies frequently have their own priority of payments provisions. *See e.g.*, *In re MF Global Holdings, Ltd.*, 469

B.R. 177, 193 (Bankr. S.D.N.Y. 2012). These cases uniformly hold that individual directors and officers are entitled to receive defense and indemnity coverage ahead of <u>and to the detriment</u> of the insured entity, and grant relief from stay. General liability policies do not contain such priority provisions. Mass tort cases present a multitude of competing but interests of arguably equal priority that are not to be found in claims by individual directors and officers for defense costs in in litigation with the bankruptcy estate's appointed trustee over mismanagement or breach of fiduciary duty. .

29.     The Old Republic Stay Relief Motion has even less specifics than that of Evanston. Old Republic admits its excess layer has been exhausted in some years. Old Republic Stay Relief Motion at Paragraph 18. In anticipation of objections based on this exhaustion and the potential exhaustion of other excess, Old Republic speculates: "On information and belief, there is substantial excess coverage over and above the Old Republic Policies available to BSA and to the BSA Related Parties for each applicable year…." Old Republic Stay Relief Motion at Paragraph 7. "Since there is significant excess insurance coverage over and above the Old Republic $9 million aggregate limit for each year, the Debtors' other assets remain protected and there is little risk that the total insurance proceeds responding to claims against the Debtors will be depleted." Old Republic Stay Relief Motion at Paragraph 18.

30.     There is no basis for this "information and belief" as to "significant excess insurance coverage". Even if the unfounded belief is true, , there is no analysis or information that would lead anyone to state with confidence that any given year is not subject to exhaustion by the already expected 7000+ sex abuse survivor claims, or the unquantified non sex abuse claims, nor the employment claims.

## V.

## THE RELIEF SOUGHT SHOULD BE DENIED

31.     The Knight Stay Relief Motion should be denied without prejudice.  It seeks to litigate that claim to final judgment for the purposes of liquidating the claim, collecting insurance and having an unsecured claim against the BSA estate.  By its very nature, it seeks to elevate the Knight claim above others equally entitled to both insurance proceeds and assets in the BSA estate, which prejudices all other claimants to both.

32.     The Spahr Stay Relief Motion should also be denied without prejudice.  While it restricts the relief sought to insurance proceeds only, it too seeks to beat other claimants to the benefits of available insurance.

33.     The Gordon Stay Relief Motion seeks neither to collect on insurance proceeds nor to liquidate its claim the movants will "ultimately [be] seeking to recovery insurance proceeds...." in the event of a resolution through mediation or settlement discussion.  Gordon Stay Relief Motion at Paragraph 19.  The Gordon Stay Relief Motion is merely a prelude to another motion that this Court should not grant at this time.  The Gordon Motion should be denied without prejudice.

34.     The Evanston Stay Relief Motion should be denied without prejudice.  There is no evidence to support its argument that there is no impact on the BSA's estates.

35.     The Old Republic Stay Relief Motion should be denied without prejudice.  The relief it seeks requires significant information and analysis.  That will come with the analysis of claims after the bar date.

36.    The Tort Claimants' Committee submits the better course is to afford all parties in interest to evaluate all covered claims after the Claims Bar Date.

Dated:  May 27, 2020          PACHULSKI STANG ZIEHL & JONES LLP

- */s/ James E. O'Neill*

James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain Nasatir (CA Bar No. 148977) (*pro hac vice* submitted)
John A. Morris (NY Bar No. 2405397) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No.271038) (admitted *pro hac vice*)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
Email: jstang@pszjlaw.com
       inasatir@pszjlaw.com
       jmorris@pszjlaw.com
       joneill@pszjlaw.com
       jlucas@pszjlaw.com

*Counsel for the Tort Claimants' Committee*