**<u>Exhibit A</u>**

**Reply**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 613, 696, 697, 700 & 707** |

### DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this reply (the "Reply") to the objections [D.I. 696 & 697] (collectively, the "Objections") filed by Century Indemnity Company ("Century") and the Hartford Companies[2] ("Hartford," together with Century, the "Objecting Insurers") to the *Debtors' Motion for Entry of an Order Approving Stipulated Confidentiality and Protective Order* [D.I. 613] (the "Motion"). In further support of the Motion, the Debtors respectfully state as follows.

### PRELIMINARY STATEMENT

1.      The Debtors, and all of the other parties in these chapter 11 cases who may exchange information, need a protective order to govern the production, receipt, and use of confidential information. To that end, the Debtors filed a form protective order concurrently with

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Hartford filed its objection on behalf of Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company. Allianz Global Risks US Insurance Company and National Surety Corporation (collectively, the "Allianz Insurers") have filed a joinder to Hartford's objection. [D.I. 707]

their petitions on February 18, 2020 (the "Petition Date"), and subsequently engaged in extensive, good-faith negotiations with the relevant parties regarding a revised protective order.

2.      Those negotiations culminated approximately three weeks ago with an agreement among the Debtors, the Official Committee of Tort Claimants (the "Tort Claimants' Committee"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Future Claimants' Representative (the "FCR"), and the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Local Council Committee") (collectively, the "Non-Objecting Parties") on the form of a stipulated protective order (the "Protective Order").

3.      The Debtors have also made significant efforts to engage and reach a consensus on the terms of the Protective Order with certain of the Debtors' primary general liability insurers (collectively, the "Insurers"). The Debtors provided the Insurers a draft of the Protective Order on April 14. The Debtors received no feedback from the Insurers but continued to make meaningful progress with the Non-Objecting Parties. The Debtors sent the Insurers a revised draft on April 30. But the Insurers did not respond with comments until May 5, by which point the Non-Objecting Parties had worked to reach a consensus regarding the terms of the Protective Order.

4.      Despite the Insurers' belated engagement, the Debtors and the other Non-Objecting Parties agreed to most of the Insurers' proposed revisions and incorporated them into the Protective Order filed with the Motion. These revisions include: (i) the addition of the Insurers as parties to the Protective Order with access to all three levels of protected material; (ii) the inclusion of a provision requiring the Insurers' agreement before discovery material produced by the Insurers is used in any proceeding not currently contemplated under the Protective Order; (iii) the inclusion of the Insurers in the "Prepetition Distribution Group," a small group of parties that will be given

access to certain documents previously produced by the BSA in prepetition abuse litigation; and (iv) requiring the Insurers' approval in order to amend the Protective Order. [D.I. 613, Ex. 1.]

5.      Apart from the revisions the Debtors made at the Insurers' request, the Protective Order contains provisions that impose obligations on any party receiving confidential material, limit the use of such material to these chapter 11 cases, allow for the clawback of inadvertently disclosed documents, and offer protection with respect to incorrectly designated material and claims of waiver of any privilege or protection.

6.      Despite having secured most of their proposed revisions, the Insurers continued to press for additional changes relating primarily to the treatment of materials protected by the common-interest privilege. The Non-Objecting Parties and most of the Insurers continued to work in good faith, up to and through the Memorial Day weekend, to address the Insurers' concerns.

7.      Following these discussions, the Debtors circulated a final Proposed Stipulated Confidentiality and Protective Order (the "Revised Protective Order") on May 26,[3] a copy of which is attached hereto as **Exhibit A**. The Revised Protective Order and redline comparison to the Protective Order filed with the Motion reflect that, once again, the Non-Objecting Parties accommodated nearly every additional proposal the Insurers made with respect to the Protective Order filed with the Motion. A redline comparing the Protective Order filed with the Motion to the Revised Protective Order is attached hereto as **Exhibit B**.

8.      The Revised Protective Order is fair, appropriate, and provides comprehensive protections for documents exchanged in these chapter 11 cases, including exhaustive language regarding information protected by the attorney-client privilege, work-product doctrine, common interest privilege, and other privileges and protections. However, despite the Debtors' continuing

---

[3] All capitalized terms used but not defined herein shall have the meanings ascribed in the Revised Protective Order.

efforts and accommodations, the Insurers have not agreed to the form of the Revised Protective

Order. Two Insurers, Hartford and Century, have filed objections to the Revised Protective Order.

9.      Hartford's objection is narrowly focused on the definition of "Common Interest

Protected Material." The Debtors cannot accept the imprecise and amorphous definition that

Hartford proposes, particularly because of the significant discovery obligations imposed on the

Debtors with respect to such materials. Nor is such a vague definition necessary to prevent the

disclosure of common-interest material. The Revised Protective Order allows parties that produce

Discovery Material to assert any applicable privilege and protection, including the common-

interest privilege, regardless of whether they are identified as Common Interest Protected Material.

10.     Century's objection is another paranoia-laden submission full of inaccuracies and

baseless accusations against the Debtors and their counsel, Sidley Austin LLP ("Sidley").

Century's claims are unrelated to the Motion, but the Debtors must nevertheless correct the record:

    a.  The Debtors have not "aligned themselves with the Tort Claimants in refusing to accept any revisions" to prohibit the sharing of "Chubb's privileged information or privileged information concerning the underlying defense" with the Tort Claimants. (Century Obj. ¶ 3.) The Debtors do not intend to produce any privileged documents. Nor does Century have any basis for its repeated insinuations suggesting otherwise.

    b.  The Debtors have not "aligned themselves with the Tort Claimants in insisting on terms that purport to override orders entered by other courts." (*Id.*) Rather, the Debtors, all the Non-Objecting Parties, Hartford, and presumably all of the other insurers other than Chubb, have agreed to an appropriate process through which documents that have already been produced by the BSA in prepetition abuse litigation can be produced in these chapter 11 cases without imposing significant costs on the Debtors.

    c.  The Revised Protective Order does not "lack[] basic protections designed to prevent disclosure of privileged information." (*Id.*) To the contrary, it contains comprehensive protections, many of which were added at the Insurers' request.

    d.  Sidley does not possess privileged information concerning Century's coverage of the Boy Scouts from its prior representation of Chubb. As an initial matter, Century's attempt to turn a motion to enter a protective order into a sideshow related to Sidley's retention application is wholly improper. Furthermore, Sidley did not receive any documents reflecting "privileged information concerning the disputes between Century and the Boy Scouts over its insurance coverage, Century's privileged legal analysis of

the BSA's claims, or Century's privileged legal strategies and defenses in these matters." Decl. of W. Sneed ¶ 10 [D.I. 532]; *see also* Tr. of May 4, 2020 Hr'g. at 207:1–18 (Schwartz's testimony confirming he was not aware of Sidley receiving any privileged documents with respect to the underlying direct insurance claims), *id.* at 23:22–24:5, 27:13–21, 253:16–254:12, 256:25–257:15 (Sneed's testimony confirming the same and stating no information related to Sidley's representation of Century was shared with the bankruptcy team representing the Debtors due to a screen).[4]

11.     These accusations against the BSA and its counsel are disappointing, unproductive, and false. But they are not surprising. Less than a year ago in connection with the *Imerys* bankruptcy proceedings, Century's counsel here used the same playbook on behalf of a different group of insurers to oppose the debtors' effort to enter protective orders. *See In re Imerys*, No. 19-10289, Dkt. 896, Cyprus Historical Excess Insurers' Objection to Protective Orders, at 3 (accusing debtors of producing privileged material to tort claimants).

12.     With regard to Century's substantive objections to the Proposed Stipulated Protective Order, none of the additional language Century seeks are necessary, and some are wholly inappropriate and unprecedented.

## THE REVISED STIPULATED PROTECTIVE ORDER

**A.     The Revised Stipulated Protective Order is the Result of Extensive Negotiations, and Incorporates Substantially All of the Objecting Insurers' Proposed Revisions.**

13.     The parties have made significant efforts to reach a consensus regarding the terms of a protective order. The Revised Protective Order is the culmination of countless hours of discussions with the relevant parties. With respect to the Insurers specifically, the Debtors' efforts to engage on the terms of a protective order began long before the Debtors filed the Motion. The Debtors initially attempted to engage the Insurers regarding the Protective Order on April 14, and

---

[4] Chubb does not cite anything to the contrary. Instead, Chubb points to: (i) generalized statements that privileged materials are "always shared with our counsel"; and (ii) Mr. Schwartz's testimony that Sidley was involved in privileged conversations on a "whole host of issues," which immediately preceded his admission that Sidley did not receive any privileged documents related to the underlying direct insurance claims. *See* Century Obj. at n. 4.

again on April 30. A summary of the Debtors' efforts to engage the Insurers and accommodate their comments prior to the filing of the Motion is set forth in letter correspondence that has been filed with the Court. [D.I. 664, Decl. of A. Azer, Exhibit 1 (the "Azer Letter") at 2–6.]

14.    As set forth in the Azer Letter and the Motion, the Debtors made numerous revisions in response to comments received from Hartford and Chubb prior to filing the Revised Protective Order. [D.I. 613 ¶ 14.] These changes remain in the Revised Protective Order filed with the Motion.

15.    Furthermore, two of the four issues that remained open when the Debtors filed the Motion have been resolved to accommodate the Insurers' requests. (D.I. 613 ¶ 15.) First, the Non-Objecting Parties have agreed to expand the Insurers' access to allow in-house non-legal personnel of the Insurers to possess Protected Material designated "Highly Confidential" or "Committee Advisor Only." *See* **Exhibit A** at ¶¶ 7.3(d), 7.4(b). No other Party enjoys such internal access to this material. Second, the Debtors have agreed to the Insurers' proposed revision allowing the Insurers to be involved in discussions related to the treatment of the IV Files. *Id.* ¶ 5.8.

16.    The Revised Protective Order includes other accommodations for the Insurers, including many they did not raise prior to the filing of the Motion. For example, Insurers may disclose Protected Material to reinsurers, regulators, and other entities to whom the Insurers believe in good faith disclosure is required. *Id.* ¶¶ 7.2(g), 7.3(e), 7.4(c). Unlike every other Party, the Insurers are permitted to make such disclosures without notifying the Producing Party and giving the Producing Party the opportunity to seek a protective order against such disclosure. *Id.* ¶ 8.1. The Debtors have further agreed to a provision making clear that nothing in the Revised Protective Order shall be deemed to modify the rights or obligations under any of the Debtors'

insurance policies issued by the Insurers, including with respect to the Debtors' pre- or post-petition production of documents. *Id.* ¶ 12.11.

**B.      The Revised Stipulated Protective Order Provides Substantial Protections Related to the Disclosure of Privileged or Common Interest Material.**

17.      The Non-Objecting Parties also made significant revisions to address the Insurers' concerns regarding the treatment of materials that may be protected under a common-interest protection, including agreeing to an example-based definition of "Common Interest Protected Material." (Exhibit A at 3.) In addition, the Revised Protective Order contains numerous other provisions proposed by the Insurers specifically aimed to address concerns pertaining to the common interest privilege:

a.   A Producing Party must promptly notify any Common Interest Party of challenges to the confidentiality designation of Discovery Material it produced that contains Common Interest Protected Material. (Exhibit A, ¶ 6.2.)

b.   Any person or entity who gains access to Discovery Material by signing the "Acknowledgment and Agreement to be Bound" annexed as Exhibit A to the Revised Protective Order may not receive Common Interest Protected Material. (*Id.* ¶ 7.2(o).)

c.   Parties must involve any Common Interest Party in the meet-and-confer process with respect to the in-court use of Discovery Material that may contain Common Interest Protected Material, regardless of whether the Common Interest Party produced the Discovery Material. (*Id.* ¶ 7.9.)

d.   Parties must promptly notify the holder of a privilege, including any Common Interest Party, when any Common Interest Privilege Material is sought pursuant to a subpoena or court order so that the Common Interest Party may assess whether to seek a protective order (*Id.* ¶ 8.1).

e.   Nothing in the Revised Stipulated Protective Order allows for the production of any Common Interest Protected Material. (*Id.* ¶ 8.4.)

f.   A Producing Party must provide the appropriate Common Interest Party advance notice prior to the production of any material that may constitute or contain Common Interest Protected Material, which "may include information that was prepared by . . . counsel retained by the Producing Party in threatened tort or abuse litigation." The Producing Party must then deliver to the Common Interest Party copies of the documents it intends to produce to provide the Common Interest Party the opportunity to review the documents. Then, the Producing Party must confer with the Common Interest Party as

7

to whether the documents constitute or contain Common Interest Privileged Material. In the event of a disagreement between the Producing Party and Common Interest Party, the Producing Party must refrain from producing the documents to allow the Common Interest Party to raise the issue with the Bankruptcy Court and for the Bankruptcy Court to enter an order allowing the production of the material. (*Id.* ¶ 8.4.)

g.  Any party that has inadvertently produced Privileged Material must immediately notify any Common Interest Party with respect to such material of the inadvertent production, as well as any challenge to post-production privilege assertions with regard to such material, (*Id.* ¶¶ 10.2–10.3).

h.  No Party has the right to waive the attorney-client privilege, work product, or joint defense privilege with respect to  Common Interest Protected Material, or any other privilege, protection, or defense that might be applicable to any Discovery Material it has received pursuant to the Revised Protective Order. (*Id.* ¶ 10.4.)

i.  Discovery Material may not be used in litigation outside of these chapter 11 cases without the consent of any Common Interest Party with respect to such Discovery Material, regardless of whether the Common Interest Party is a party in the separate litigation. Nothing in this provision "shall be read to allow any Party to use Privileged Material, inadvertently disclosed or otherwise, in these Chapter 11 Cases or in any other litigation." (*Id.* at § 3 n.4.)

j.  Nothing in the Revised Stipulated Protective Order "shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to any Producing Party," or "require disclosure of information that is protected by the attorney-client privilege, work product immunity, or any other privilege or immunity." (*Id.* ¶ 12.9)

18.     These protections are exhaustive and provide Common Interest Parties, including the Insurers, multiple layers of protection.

**RESPONSES TO ISSUES RAISED WITH RESPECT TO THE
REVISED STIPULATED PROTECTIVE ORDER**

**A.    Hartford's Objection**

19.     Hartford agrees the Revised Stipulated Protective Order is "acceptable . . . in nearly all respects" but nevertheless objects on the basis that the definition of "Common Interest Protected Material" in the Revised Protective Order is "too narrow." Hartford Obj. ¶¶ 2, 4. The Debtors' disagree. The proposed definition set forth below is reasonable and strikes an appropriate balance

20.     The Revised Protective Order defines "Common Interest Protected Material" broadly to encompass any materials in which the Insurers have a legitimate common interest:

> **Common Interest Protected Material:** documents, information, or communications that are subject to the attorney-client privilege, attorney work-product doctrine, or other privilege or protection from disclosure, and are shared between an insurer and its policyholder (e.g., documents that reflect defense strategy, case evaluations, discussions of settlement/resolution, and communications between insurer and policyholder regarding underlying litigation.

(Exhibit A at 3 (the "Proposed Definition").)

21.     Hartford contends that the Proposed Definition "does not reflect that there are a range of potentially protected common interest communications that the Order should protect." Hartford Obj. ¶ 2. According to Hartford, the Proposed Definition "does not capture certain documents it believes would be protected by the common interest, such as documents exchanged among the insurers and documents exchanged among other parties in interest in the case." Hartford Obj. ¶ 5. Accordingly, Hartford advocates for a more "flexible" approach that Hartford maintains "recognizes the variety of relationships in this case that give rise to common interest protection":

> **Common Interest Protected Material**: otherwise protected documents or information in which two or more parties share a common interest (e.g., attorney-client communications, attorney work product, documents reflecting defense strategy, case evaluations and/or discussion of settlement/resolution and communications between insurer and policyholder regarding underlying litigation).

(Hartford Obj. ¶ 4 ("Hartford's Definition").)

22.     The Debtors cannot accept Hartford's Definition, which is really a non-exhaustive list of examples that provides no limit or guidance on the contours of what might constitute Common Interest Privileged Material. To be clear, the Debtors do not disagree with Hartford's assertion that there may be common interests in these chapter 11 cases other than any common interest arising from materials shared between an insurer and policyholder. However, Hartford is incorrect that the definition in the Revised Protective Order limits the parties' ability to assert

common interest protection over other materials that do not fall within the definition of "Common Interest Protected Material." The Revised Protective Order explicitly states that nothing in it, including the definition at issue, "waive[s] any applicable privilege or immunity" or requires a party to disclose information protected by "any other privilege or immunity." Exhibit A, ¶ 12.9. Therefore, to the extent any party identifies materials that are subject to a common interest but do not fall within the definition of "Common Interest Privileged Material," nothing in the protective order prevents a party from asserting that such material is protected from disclosure.

23.     However, given the significant discovery burdens and obligations that the Insurers have proposed in connection with information that is "Common Interest Protected Material," *see supra* ¶22), the Debtors cannot agree to a definition as imprecise as the one Hartford proposes. The determination that information constitutes or contains Common Interest Protective Material triggers numerous requirements to coordinate with the other holders of the common interest— including prior to production (¶ 8.4), in the event of a challenge to a confidentiality designation (¶ 6.2), when responding to subpoenas or orders seeking documents (¶ 8.1), in the event of an unauthorized disclosure (¶ 9.1), in connection with any clawback (¶ 10.2) and challenge thereto (¶ 10.3), and prior to the use of material in court (¶ 7.9).

24.     The Debtors were amenable to these additional terms under the condition that there be prescriptive contours around the types of materials would trigger these obligations. However, Debtors cannot agree to a definition that is circular and with no outer bounds by which the Parties can determine whether their various obligations under the order might be triggered. Without a true definition, the Debtors will find themselves in the untenable position of having to (a) comply with their discovery obligations to the other Parties in an efficient manner, while (b) not violating their

obligations under the protective order with regard to Common Interest Protected Material, all without (c) any defined parameters on how to navigate this space.

25.     The Revised Protective Order reflects an appropriate compromise. The Proposed Definition encompasses the specific types of documents in the Debtors' possession that the Insurers have a legitimate interest in pre-reviewing prior to production, while at the same time giving the Debtors sufficient parameters to be able to determine whether they are identifying Common Interest Protected Material consistent with their obligations under the Order. Furthermore, paragraph 12.9 makes clear that, notwithstanding that the specific obligations tied to Common Interest Protected Material are only triggered where material falls within the Proposed Definition, nothing in the Revised Protective Order limits or waives any parties' ability to assert any applicable privilege or immunity. The Debtors and all of the Non-Objecting Parties agree this approach strikes the correct balance, and accordingly, the Debtors respectfully request that the Court enter the Revised Protective Order containing this definition.

**B.      Century's Objection**

26.     Century took a decidedly different approach, and none of the other Insurers have joined it. Instead of focusing on the protective order, Century dedicates a significant portion of its objection to weaving conspiracy theories regarding the sharing of its privileged material and setting up strawmen related to the issues Chubb raised in connection with Sidley's retention application, which have nothing to do with the Revised Protective Order. The Debtors have responded to these points in the Preliminary Statement above and will not do so again here. Instead, the Debtors will respond to the limited arguments Century makes regarding the protective order.. For the reasons set forth below, the Court should reject each of Century's proposed revisions.

a. Paragraph 7.2(o) Does Not Permit the Disclosure of Privileged Material

27.     Century argues that paragraph 7.2(o) of the Revised Protective Order "permits broad disclosure of all Discovery Material to any party on consent of the Producing Party," including "Chubb's privileged information or privileged information generated in the underlying defense." (Century Obj. at 6.) But Paragraph 7.2(o) does no such thing. It simply makes clear that a person or entity who signs the Acknowledgment and Agreement to be Bound may access Confidential discovery material if the Producing Party of such material agrees.

28.     Contrary to Century's contention, nothing in paragraph 7.2(o) authorizes the production of privileged material. Numerous provisions throughout the Revised Protective Order make clear that it does not authorize the production of privileged material or waive any existing privileges or immunities, including the common interest privilege. *See* Exhibit A, Section III n.4, ¶¶ 8.4, 10.4, 12.9. In fact, with respect to Common Interest Privileged Material, the Insurers have specifically added language to this provision stating that "[i]nformation that constitutes or contains Common Interest Protected Material is not subject to disclosure under this Paragraph 7.2(o)."

b. Century's Demand for Additional Language Prohibiting the Disclosure of Privileged Information is Unnecessary and Baseless

29.     Century argues that the Revised Protective Order should contain a provision that explicitly prohibits the sharing of privileged information with the Tort Claimants' Committee. (Century Obj. at 6–8.) Century has not provided a single example of a protective order containing such a provision, and there is no need to include one here. The Revised Protective Order makes clear that no party is authorized to disclose privileged material, *see* Exhibit A at ¶¶ 8.4, 10.4, 12.9, and there is no need or basis to include the language Century demands.

30.     Century's reliance on the protective order and transcript in *In re Imerys* only undermine its arguments. Not only did the order entered in *Imerys* not contain the affirmative

prohibition Century seeks here, the Court unequivocally rejected the insurers' counsel's (Century's counsel here) assertion that such language was necessary. Like the Non-Objecting Parties here, the *Imerys* Court recognized that nothing in the proposed protective order allowed parties to "ignore their privilege obligations," and thus it denied the insurers' request for an express prohibition to that effect. Tr. Aug. 5, 2019 Hr'ng on Protective Orders [Dkt. 922] at 23:23–25, 27:3–5; *see also* **Exhibit C**. As it did in *Imerys*, the Court should reject Century's proposal here.

   c. <u>The Court Should Reject Century's Proposal to Eliminate Paragraph 5.9 and Alternative Proposal to Amend Paragraph 5.9 to Require that the Insurers Pre-Review and Consent to the Production of Prepetition Confidential Documents.</u>

31. Century seeks to strike paragraph 5.9 of the Revised Protective Order, which allows the Tort Claimants' Committee to receive documents the BSA has previously produced to third parties—namely, tort claimants—in prepetition abuse litigation. Century contends, without basis, "[t]his sort of comprehensive affirmative relief is not properly sought without identifying the orders at issue, the parties to the orders, and the courts that entered them," and that the "compulsory turn-over of documents is not even properly part of a protective order." Century Obj. at 9. As an alternative to striking this provision, Century proposes that the provision be amended to allow the Insurers to preview such documents and to require the Insurers' consent before such documents are provided to the Tort Claimants' Committee. The Court should reject both of these ideas.

32. As an initial matter, Paragraph 5.9 does not contemplate a "compulsory turn-over of documents." Rather, paragraph 5.9 permits a small group of parties (the "<u>Prepetition Distribution Group</u>"), which includes the Insurers, to access confidential materials produced by the BSA in prepetition lawsuits without violating any existing confidentiality agreements. Paragraph 5.9 does not compel the Debtors or any other party to produce documents.

33. The practical purpose of paragraph 5.9 is simple. The BSA has previously reviewed, culled for privilege, and produced documents in various underlying prepetition abuse

actions. However, due to existing confidentiality agreements under which the Prepetition Confidential Documents were produced, the tort claimants and their lawyers are unable to share these documents with the Tort Claimants' Committee.

34.     Rather than requiring the BSA to undergo the costly exercise of coordinating the re-production of these documents to the Tort Claimants' Committee through formal discovery, the Debtors believe the most efficient way to facilitate discovery in these chapter 11 cases is to permit the tort claimants to provide them to the Tort Claimants' Committee directly. The Prepetition Confidential Documents will otherwise remain subject to any applicable Existing Confidentiality Agreement to which they were subject. (Exhibit A ¶ 5.9(b).) In addition, paragraph 5.9 makes clear that its provisions cannot be used to create a clearing house within the chapter 11 cases for tort claimants to share confidential material for use their underlying abuse cases. *Id.* ¶ 5.9(e).

35.     The Non-Objecting Parties, and all of the Insurers other than Chubb, agree that paragraph 5.9 reflects a reasonable compromise and provides a practical, efficient mechanism whereby a limited group may receive documents that are discoverable in these chapter 11 cases. The alternative—requiring the BSA to produce the Prepetition Documents in response to formal discovery—would be a needlessly costly route to the same result. The documents at issue are not privileged, they have previously been identified for production in underlying abuse litigation, and they were produced solely by the BSA (as opposed to the Local Councils or other parties). Accordingly, the Court should reject Century's proposal to excise paragraph 5.9.

36.     The Court should also reject Century's alternative proposal to have the Insurers engage in a pointlessly cumbersome, costly, and time-wasting exercise of previewing the documents the BSA has produced in Prepetition Litigation to determine whether to consent to the provision of the documents to the Tort Claimants' Committee. As the Revised Protective Order

makes clear, the Prepetition Confidential Documents are documents the BSA has already produced in underlying abuse litigation. There can be no basis to assert a common interest or other privilege over such documents, and there is no practical purpose to performing a pre-review for relevance. Nor do the Insurers point to any authority or precedent supporting the notion that they have a right to preview and consent to the Debtors' production of documents the BSA has already produced.

    d. <u>The Clawback Provision is Not Inconsistent with Fed. R. Civ. P. 26(b)(5)(B).</u>

  37. Lastly, Century seeks to amend the Revised Protective Order to eliminate a provision allowing parties to retain inadvertently produced privileged material for the sole purpose of challenging the clawback. Exhibit A ¶ 10.1. Century submits that this is a "loophole that allows [the Tort Claimants Committee] to 'retain any document subject to challenge' without limit." Century Obj. at 10. Century asks that this provision be revised to track Fed. R. Civ. P. 26(b)(5)(B).

  38. While the Debtors do not consider this aspect of the clawback provision to be critical, the Debtors do not view paragraph 10.1 as conflicting with the Federal Rules and disagree with Century's characterization of it. The Federal Rules permit parties to retain documents that are subject to a clawback for the purpose of "promptly present[ing] the information to the court under seal for a determination of the claim." Fed. R. Civ. P. 26(5)(B). The terms of the Revised Protective Order are no different: Paragraphs 10.1 and 10.3 require a party to promptly bring any privilege disputes to the Court, and allow for the use of the clawed back document for that purpose only.

<strong><u>CONCLUSION</u></strong>

  The Debtors respectfully request that the Court enter the Revised Proposed Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested in the Motion and any further relief as the Court may deem just and proper.

Dated:  May 28, 2020
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
       aremming@mnat.com
       emoats@mnat.com
       ptopper@mnat.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Email:  jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (*pro hac vice*)
Michael C. Andolina (*pro hac vice*)
Matthew E. Linder (*pro hac vice*)
Karim Basaria (*pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Email:  tlabuda@sidley.com
       mandolina@sidley.com
       mlinder@sidley.com
       kbasaria@sidley.com

CO-COUNSEL AND PROPOSED COUNSEL TO THE
DEBTORS AND DEBTORS IN POSSESSION

## Exhibit A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 613** |

**ORDER APPROVING
STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER**

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Order"), under section 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018, and Local Rule 9018-1(f), approving the *Stipulated Confidentiality and Protective Order* (the "Stipulated Protective Order") attached hereto as **Exhibit 1**; and this Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to entry of a final order by this Court under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given and no other or further notice being necessary; and upon the record herein; and the Court having determined that the legal and factual

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED.

2.      The Stipulated Protective Order is approved and entered as an order of this Court.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2020
          Wilmington, Delaware          _____
                                        THE HON. LAURIE SELBER SILVERSTEIN
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Stipulated Protective Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## CONFIDENTIALITY AND PROTECTIVE ORDER

This Confidentiality and Protective Order (this "**Order**") shall govern the production, review, disclosure, and handling of any Discovery Material by Boy Scouts of America and Delaware BSA, LLC (together, the "**Debtors**"), the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "**Local Council Committee**"), the Tort Claimants Committee (the "**TCC**"), the Future Claimants' Representative (the "**FCR**"), the Official Committee of Unsecured Creditors (the "**UCC**"), any other Official Committee, the insurers identified in **Exhibit B** hereto (the "Insurers"), and other parties in interest having a right to be heard in the Chapter 11 Cases in accordance with 11 U.S.C. §§ 1109(b) who assent to be bound to this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as **Exhibit A** hereto (each individually, a "**Party**" and, collectively, the "**Parties**").[2]

## I.    PURPOSES AND LIMITATIONS

This Order applies to the production, disclosure, handling, dissemination, exchange, and use of documents and all discovery in the Chapter 11 Cases and related proceedings, including:

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2]    All capitalized terms used but not otherwise defined in this paragraph and in Section I (Purposes and Limitations) of this Order shall have the meanings ascribed to such terms elsewhere in this Order.

discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); materials produced, provided, or made available on a voluntary basis; and discovery in connection with judicial or other proceedings, such as contested matters, adversary proceedings and other disputes provided, however, to the extent Discovery Material has been or will be produced by a Producing Party to any individual Member of an Official Committee or Local Council Committee in its individual capacity and such production is subject to another order of a court then such other order shall control the handling of such Discovery Material, or other discovery.  The Parties have sought and will seek certain Discovery Material (as defined below) from one another and other parties in interest in and with respect to the Chapter 11 Cases (collectively, "**Discovery Requests**") on a voluntary basis and as provided by the Federal Rules of Civil Procedure (the "**Federal Rules"**), the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"). As a result, the Parties have produced, provided access to, and made available, and might continue to produce, provide access to, and make available, certain Discovery Material. The purpose of this Order is to facilitate and expedite the production, exchange and treatment of Discovery Material and to protect Discovery Material that a Party or Party in Interest seeks to maintain as confidential in accordance with the terms hereof.

For purposes of this Order, unless otherwise provided herein, the words "include" and "including" and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation."

## II.    DEFINITIONS

**Bankruptcy Court**:  the United States Bankruptcy Court for the District of Delaware.

**Business Day**:  any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**Challenging Party**:  a Party that challenges the designation of Discovery Material under this Order.

**Chapter 11 Cases**:  the above-captioned chapter 11 cases of the Debtors, including any contested matter or adversary proceeding filed in connection with the above-captioned cases.

**Common Interest Protected Material**: documents, information, or communications that are subject to the attorney-client privilege, attorney work-product doctrine, or other privilege or protection from disclosure, and are shared between an insurer and its policyholder (e.g., documents that reflect defense strategy, case evaluations, discussions of settlement/resolution, and communications between insurer and policyholder regarding underlying litigation).

**Common Interest Party**: any Party or party in interest asserting an interest in Discovery Material that constitutes Common Interest Protected Material.

**Counsel (without qualifier)**:  Outside Counsel or In-House Counsel (as well as their respective support staff).

**Derivative Information**: as defined in Paragraph 5.6.

**Discovery Material**: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are (1) produced or generated in disclosures or responses to Discovery Requests; (2) produced, provided, or made available on a voluntary basis; or (3) otherwise provided to Counsel and Other Retained Professionals. "Discovery Material" includes deposition

3

testimony, interrogatories, answers to interrogatories, requests for admission, responses to requests

for admission, documents, all materials contained in the secure data rooms maintained by the

Debtors, as well as any and all copies, abstracts, digests, notes, summaries, and excerpts thereof.

**Future Claimants' Representative**:  James L. Patton Jr. appointed pursuant to the *Order*

*Appointing James L. Patton Jr., as Legal Representative for Future Claimants, Nunc Pro Tunc to*

*the Petition Date* [D.I. 486].

**In-House Counsel**: attorneys (and their support staff) who are employees or contractors of

a Party.

**Member:**  any member of an Official Committee or the Local Council Committee, and

such member's Counsel, Other Retained Professionals, representatives, or agents for such member,

who are working on or consulted in connection with the Chapter 11 Cases and have been directed

by such member to, and have agreed to, treat the Discovery Material in accordance with the terms

of this Order.

**Official Committee**: the TCC, the UCC, and any other statutory committee appointed by

the U.S. Trustee under section 1102 of the Bankruptcy Code that assents to be bound by this Order

by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as

Exhibit A.

**Other Retained Professionals**: financial advisors, accounting advisors, industry advisors,

experts, consultants and other professionals (and their respective staff) that are retained in

connection these Chapter 11 Cases by the Debtors, the Local Council Committee, the Insurers, the

FCR, or any Official Committee, and that assent to be bound to this Order by executing a copy of

the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A. For the

avoidance of doubt, "Other Retained Professionals" does not include "Counsel."

**Outside Counsel**: attorneys (and their support staff) who are not In-House Counsel of a Party but are retained to represent or advise a Party regarding the Chapter 11 Cases. With respect to the Debtors and any Official Committee(s), Outside Counsel refers to counsel that has been retained by the Debtors or any Official Committee, the retention of which has been approved or is sought to be approved by the Bankruptcy Court. With respect to the Local Council Committee, Outside Counsel also includes attorneys who have assented to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A, so long as the attorney continues to represent or advise a Member or Members of the Local Council Committee.

**Party in Interest**: any person or entity (other than a Party) that provides Discovery Material to a Party that is designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" and produced by any Party.

**Privileged Material**: documents or information, regardless of the medium, that are protected by a privilege or are otherwise protected from disclosure, including the attorney-client privilege, attorney work-product doctrine, mediation or settlement privilege, or joint defense privilege, or that otherwise constitute Common Interest Protected Material.

**Privilege or Protection**: the attorney-client privilege, attorney work product doctrine, mediation or settlement privilege, joint defense privilege, and/or any protections that apply to material that constitutes Common Interest Protected Material.

**Producing Party**: any person or entity that produces, provides, or makes available Discovery Material to any Party.

**Professional Vendors**: persons or entities that provide litigation support services to a Party (*e.g.*, facilitating conference calls, photocopying, videotaping, translating, preparing exhibits or

5

demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

**Protected Material**: Discovery Material designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY."

**Receiving Party**: a Party that receives Discovery Material from a Producing Party.

### III.  <u>**SCOPE**</u>

This Order applies to all Discovery Material that is produced, formally or informally, voluntarily or in response to a formal Discovery Request, in connection with the Chapter 11 Cases. Discovery Material produced in connection with the Chapter 11 Cases, including pursuant to Bankruptcy Rule 2004, may (unless otherwise agreed by the Producing Party, the Debtors, the Local Council Committee, each Official Committee, the FCR, and any Common Interest Party with respect to the Discovery Material at issue)  only be used by a Receiving Party to whom such Discovery Material is produced, and may only be used in the Chapter 11 Cases, including in connection with any contested matter or adversary proceeding in the Chapter 11 Cases.[3] Discovery Material may not be used in connection with any other litigation unless agreed to by the Producing Party of such Discovery Material and by all Parties to such other litigation and, with respect to any Discovery Material that includes or constitutes Common Interest Protected Material, the consent of all Common Interest Parties.[4] This Order does not affect, amend or modify any existing confidentiality agreements, common-interest agreements joint-defense agreements, bylaws of any Official Committee or unofficial committee, non-disclosure agreements, intercreditor agreements, protective orders or similar agreements applicable to any Producing Party, Receiving Party, and/or Party in Interest, including protective orders entered in connection with any other litigation involving any Producing Party, Receiving Party, and/or Party in Interest (collectively, the "**Existing Confidentiality Agreements**"), and nothing in this Order shall constitute a waiver of any rights under such Existing Confidentiality Agreements. Where this Order is in conflict with

---

[3] The Parties reserve all rights with regard to the discoverability and admissibility of Discovery Material in any particular contested matter, adversary proceeding, or other litigation.

[4] This provision shall not be read to allow any person or entity to become a Receiving Party to Discovery Material, or to gain access to or use Discovery Material, that is not produced to such person or entity by the Producing Party. This provision shall not be read to allow any Party to use Privileged Material, inadvertently disclosed or otherwise, in these Chapter 11 Cases or in any other litigation.

any Existing Confidentiality Agreement applicable to any Producing Party, Receiving Party, or Party in Interest, the provision that provides the most confidentiality protection for Discovery Materials applies (but solely in connection with these Chapter 11 Cases). In the event of a dispute, a Party relying on an Existing Confidentiality Agreement shall produce copies of such Existing Confidentiality Agreement that it contends provides more confidential protection than this Protective Order and, notwithstanding anything to the contrary herein, all Parties reserve the right to contest or challenge (using the procedures in Section VI) the terms and scope of any such Existing Confidentiality Agreement as applicable to any Discovery Material.

The protections conferred by this Order apply not only to Protected Material and Privileged Material, but also (1) any information copied or extracted from Protected Material or Privileged Material; (2) all copies, excerpts, summaries, or compilations of Protected Material or Privileged Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material or Privileged Material. This Protective Order shall apply to information received in connection with these Chapter 11 Cases, including information obtained pursuant to Paragraph 5.9, but it shall not apply to information that is either: (a) obtained by the Receiving Party in compliance with this Order after the disclosure from a source who lawfully obtained the information and was under no obligation of confidentiality to the Producing Party, or to any Common Interest Party with respect to Common Interest Protected Material; or (b) that was in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication or disclosure not involving a violation of this Order, including becoming part of the public record through trial or otherwise.

IV.    **DURATION**

Even after the Debtors' emergence from the Chapter 11 Cases (or if the Chapter 11 Cases are dismissed), the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or an order entered by the Bankruptcy Court directs otherwise. The Debtors' emergence from the Chapter 11 Cases or the dismissal of the Chapter 11 Cases shall not relieve the Parties from their responsibility to maintain the confidentiality of Discovery Material and Privileged Material pursuant to this Order, and the Bankruptcy Court shall retain jurisdiction to enforce the terms of this Order.

V. **DESIGNATING PROTECTED MATERIAL**

5.1 <u>Manner and Timing of Designations</u>. Subject to Paragraphs 5.6 and 5.7 and, except as otherwise provided in this Order or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated before or at the time the material is disclosed or produced. Any Producing Party may designate Discovery Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" in accordance with the following provisions:

5.2 <u>"CONFIDENTIAL" Material</u>. A Producing Party may designate Discovery Material as **"CONFIDENTIAL"** if such Producing Party reasonably believes in good faith (or with respect to Discovery Material received from a Party in Interest, has been reasonably advised by such Party in Interest) that: (1) such Discovery Material (a) constitutes or contains nonpublic proprietary or confidential technical, business, financial, personal or other information of a nature that can be protected under the Bankruptcy Rules or the Federal Rules, or (b) is subject to an Existing Confidentiality Agreement or other legally protected right of privacy; or (2) the Producing Party (a) is under a preexisting obligation to a third-party to treat such Discovery Material as confidential or (b) has in good faith been requested by a Party in Interest to so designate such Discovery

9

Material on the grounds that such Party in Interest considers such Discovery Material to contain information that meets the standard for "CONFIDENTIAL" as set forth herein.

5.3 "HIGHLY CONFIDENTIAL" Material. A Producing Party may designate Discovery Material as "**HIGHLY CONFIDENTIAL**" if such Producing Party believes in good faith (or with respect to Discovery Material received from a Party in Interest, has been advised by such other person or entity in good faith) that such Discovery Material contains information that: (a) constitutes a trade secret under applicable law; or (b) contains such highly sensitive financial, personal, or business information that is of such a nature that disclosure to persons other than those identified in Paragraph 7.3 of this Order, as applicable, would present a risk of competitive injury. Such HIGHLY CONFIDENTIAL material includes, but is not limited to, Discovery Material reflecting trade secrets; sensitive financial, personal or business information, including insurance policy information; any financial information provided by an individual Local Council originally designated as "Committee Advisor Only" but converted to "Highly Confidential" pursuant to Paragraph 7.4; or those portions of any material prepared by such Producing Party's legal advisors, industry advisors, financial advisors, accounting advisors, experts or consultants (and their respective staff) that are retained by any Party that include or reveal Highly Confidential Discovery Material.[5]

5.4. "COMMITTEE ADVISOR ONLY" Material.  A Producing Party may designate the following material as "**COMMITTEE ADVISOR ONLY**": (a) unaggregated financial information provided by the Local Councils; and (b) any other Discovery Material that the Producing Party and Receiving Party agree to treat as **"COMMITTEE ADVISOR ONLY"** due

---

[5] Information pertaining to abuse victims, minors, BSA employees, and BSA volunteers remain subject to the confidentiality requirements imposed by the Court. D.I. 9, 66.

to its proprietary or otherwise highly sensitive nature.[6] For the avoidance of doubt, any financial information provided by an individual Local Council, which pertains solely to such Local Council, shall qualify as "unaggregated financial information pertaining to the Local Councils."[7]

5.5 <u>Manner Of Designating Discovery Material</u>.  Designation in conformity with this Order requires the following:

(a) For Discovery Material produced, provided, or made available in documentary form (*e.g.*, paper or electronic documents or records, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix a legend to each page identifying such material as (i) "Subject to Protective Order," and (ii) and "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY." With regard to native files to which a legend cannot practicably be affixed, the Producing Party shall include the designation "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in the file name. Notwithstanding any other provision of this Order, any Producing Party may redact personally identifying donor information from Discovery Materials that are produced, provided, or made available, regardless of whether such Discovery Materials are designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," "COMMITTEE ADVISOR ONLY," or none of the above, subject to the procedures for challenging redactions set forth in Section 6 of this Order.

(b) Except as provided in Paragraph 7.8, for testimony given in deposition or in other pretrial or trial proceedings, such testimony may be designated as Protected Material: (1) stating

---

[6] Notwithstanding the foregoing, and subject to paragraph 7.4 below, the Official Committees' Other Retained Professionals may provide Members of their respective Official Committee summaries of financial information pertaining to the Local Councils, provided such summaries aggregate the financial information and do not report the financial information of any particular Local Council.

[7] Nothing in paragraph 5.4 allows for the prospective sealing of any Discovery Material. Any Party or party in interest seeking to keep materials under seal once they are used in a filing or in open court must seek such relief in accordance with paragraphs 7.6–7.8 below, regardless of how such Discovery Material was designated at the time of production.

so orally on the record and requesting that the relevant portion(s) of testimony is so designated; or (2) providing written notice within seven (7) days of the Party's receipt of the final transcript from the court reporter that the relevant portion(s) of such transcript or recording of a deposition thereof is so designated, except in the event that a hearing on related issues is scheduled to occur within seven (7) days, such shorter period of time as practicable under the circumstances and to which all Parties consent (such consent not to be unreasonably withheld). Until expiration of the aforesaid designation period, as applicable, following receipt of the transcript by the Parties, all deposition transcripts and recordings shall be considered and treated as HIGHLY CONFIDENTIAL unless otherwise designated by counsel to any Party on the record at the deposition or in other pretrial or trial proceedings. Discovery Material previously designated as Protected Material that is marked as an exhibit during a deposition shall be treated as so designated at all times, regardless of whether the Discovery Material has been so marked by the court reporter.

(c) For Discovery Material produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY." If possible, the Producing Party shall identify in an accompanying cover letter the specific data included in such media that is subject to the designation.

(d) For Discovery Material produced, provided, or made available through the secure data rooms maintained by the Debtors, including Discovery Material provided or made available voluntarily, that the Producing Party identify Protected Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" when providing such Protected Material to the data room's administrator(s). Such material will be affixed within the

data rooms with a watermark identifying such material as (i) "Subject to Protective Order," and (ii) "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," consistent with the designation provided by the Producing Party.

5.6 <u>Derivative Information</u>. Extracts, summaries, compilations, and descriptions of Discovery Material and notes, electronic images or databases containing Discovery Material (**"Derivative Information"**) shall be treated as Protected Material in accordance with the provisions of this Order to the same extent as the Discovery Material or information from which such Derivative Information is made or derived.

5.7 <u>Inadvertent Failures to Designate</u>. The failure to designate particular Discovery Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" at the time of production shall not operate to waive a Producing Party's right to later designate such Discovery Material as Protected Material or later apply another designation pursuant to this Order (**"Misdesignated Material"**). At such time, the Receiving Party or Parties shall make arrangements for the sequestration of the Misdesignated Material, and the Producing Party shall substitute, where appropriate, properly labeled copies of such Discovery Material. Upon receipt of replacement copies of such Misdesignated Material with the proper designation, the Receiving Party or Parties shall promptly take all reasonable steps to return or destroy all previously produced copies of such Misdesignated Material. If requested by the Producing Party, a Receiving Party shall verify in writing that it has taken all reasonable steps to return or destroy such Misdesignated Material. No Party shall be deemed to have violated this Order if, prior to notification of any later designation, such Discovery Material was disclosed or used in any manner consistent with its original designation but inconsistent with its later designation. Once such later designation has been made, however, any Discovery Material shall be treated in accordance with

that later designation; provided, however, that if the material that was not designated has been, at the time of the later designation, previously publicly filed with the Bankruptcy Court, no Party shall be bound by such later designation except to the extent determined by the Bankruptcy Court upon motion of the Party that did not make the designation. Notwithstanding the foregoing, any Receiving Party reserves the right to challenge the new designation of any Misdesignated Material on any grounds pursuant to the terms of this Protective Order.

5.8    Treatment of "Ineligible Volunteer Files" and Related Documents. As soon as practicable after the entry of this Protective Order, representatives of the Debtors, TCC, UCC, FCR, Insurers, and Local Council Committee shall meet and confer in good faith to jointly determine the treatment of the documents known as the "Ineligible Volunteer Files" and related documents, including files that concern sexual abuse or similar sexually inappropriate behavior or conduct (collectively, the "**IV Files**").  If these parties are unable to agree to the treatment of the IV Files, then the parties shall consult with one or more of the mediators appointed by the Bankruptcy Court ("**Plan Mediator**") in order to reach a resolution.  In the event the Parties named in this paragraph cannot reach a resolution in consultation with the Plan Mediator, such Parties may seek the Court's intervention in accordance with Section 6.2 of this Order.

5.9    Documents Produced in Prior or Pending Lawsuits. The BSA is and has been a defendant in lawsuits in which plaintiffs have asserted claims arising from or otherwise related to sexual and other abusive conduct (the "**Prepetition Lawsuits**"). During the course of the Prepetition Lawsuits, the BSA provided certain documents to the plaintiffs, voluntarily or otherwise (the "**Prepetition Documents**"). Certain of the Prepetition Documents are subject to Existing Confidentiality Agreements in the Prepetition Lawsuits in which they were produced (the

"**Prepetition Confidential Documents**").[8] The plaintiffs in the Prepetition Lawsuits may share some or all of the Prepetition Confidential Documents in accordance with the following terms: (a) the BSA hereby consents to the delivery of Prepetition Confidential Documents to the Prepetition Distribution Group (as defined below) and agrees that the delivery of the Prepetition Confidential Documents to the Prepetition Distribution Group shall not constitute a breach of any Existing Confidentiality Agreement;[9] (b) except as set forth in this Paragraph, any Prepetition Confidential Documents delivered to the Prepetition Distribution Group shall remain subject to any applicable Existing Confidentiality Agreement in the Prepetition Lawsuit in which they were produce and shall be treated in accordance with the terms set forth therein; (c) Counsel to the TCC shall provide to Debtors' Outside Counsel copies of any Prepetition Confidential Documents as soon as practicable after receipt; (d) the Prepetition Confidential Documents shall be shared only with the TCC's Counsel and Other Retained Professionals, the Members of the TCC, the UCC's Counsel and Other Retained Professionals, the FCR and the FCR's Counsel, the Local Council Committee's Counsel and Other Retained Professionals, and the Insurers' Outside Counsel and Other Retained Professionals (collectively, the "**Prepetition Distribution Group**"), and not with any other Party; and (e) The Prepetition Confidential Documents shall be used only for the purposes of these Chapter 11 Cases, subject to the limitation set forth in Section III, and may not be used in any Prepetition Lawsuit or other lawsuit, except for the Prepetition Lawsuit in which they were originally produced.

---

[8] For purposes of this paragraph, the Prepetition Documents excludes any IV Files, the treatment of which will be addressed pursuant to paragraph 5.8.

[9] The Prepetition Distribution Group acknowledges that the BSA is only consenting on its behalf and cannot provide consent on behalf of any Local Council, to the extent such consent is needed under the applicable Existing Confidentiality Agreement.

## VI. CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 <u>Timing of Challenge to Confidentiality Designations</u>. A Receiving Party shall not be obligated to challenge the propriety of a confidentiality designation at the time of its receipt of Discovery Material, and a failure to do so shall not preclude or be deemed to preclude a subsequent challenge thereto. The failure of any Party to challenge the designation by a Producing Party of Discovery Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" during any discovery period shall not be a waiver of that Party's right to object to the designation at a later time, including at trial.

6.2 <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process by providing written notice of each particular designation it is challenging and describing the basis for each such challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this Paragraph. Where the challenge to the designation of Discovery Material produced by a Party or Party in Interest contains or may contain Common Interest Protected Material with another Party or Party in Interest, the Producing Party shall give prompt notice of the challenge to any Common Interest Party or Party in Interest with respect to the Common Interest Protected Material. Within five (5) Business Days of the tendering of the notice challenging the designation (or such shorter time as required under the circumstances and as consented to by the Parties with such consent not to be unreasonably withheld), the Parties (and/or Party in Interest, where applicable) shall attempt to resolve each challenge in good faith.[10] In conferring, the Challenging Party must explain the basis for its belief that the particular confidentiality designation was not proper (or, in the case of

---

[10] If the Challenging Party is seeking to challenge the designation made by a Local Council, the Challenging Party shall provide the written notice required by this Paragraph to the BSA and the Local Council Committee. The BSA shall facilitate the relevant Local Council's involvement in the Meet and Confer described in this Paragraph.

redactions as provided in Paragraph 5.4(a), is not reasonably necessary to protect the personally identifying information of the donor) and must give the Producing Party (and/or Party in Interest, where applicable) an opportunity to review the Protected Material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the designation. The Challenging Party and the Producing Party (and/or Party in Interest, where applicable) shall attempt in good faith to agree on a redacted version of the relevant Discovery Material that, as a result of such redactions, may receive a less restrictive designation pursuant to Paragraphs 5.2 or 5.3, as applicable. A Challenging Party may proceed to the next stage of the challenge process described in Paragraph 6.3 only if it has first engaged in this meet and confer process or establishes that the Producing Party (and/or Party in Interest, where applicable) is unwilling to participate in the meet-and-confer process in a timely manner. In the event the circumstances require that a meet and confer occur more expeditiously (including in the event that a hearing on related issues is scheduled to occur within five (5) days, or the challenge is raised at a hearing or trial), the Parties will attempt to resolve the challenge in good faith as soon as possible after receiving notice of the challenge, and may immediately seek judicial intervention thereafter.

6.3 <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without Bankruptcy Court intervention in accordance with Paragraph 6.2, and if either the Challenging Party, Producing Party, or Party in Interest wishes to then seek Court intervention, such Parties shall, to the extent practicable, submit a joint letter or motion to the Bankruptcy Court pursuant to Local Rule 7026-1 (either, a "**Challenging Motion**") (i) reflecting each party's position, (ii) describing adherence to the meet-and-confer requirement of Paragraph 6.2, and (iii) attaching any relevant information (including documents or declarations) and filing relevant documents under seal. All Parties shall continue to afford the material in question the level of protection to which it is entitled

under the Producing Party's designation until the Bankruptcy Court rules on the Challenging Motion.

## VII. <u>ACCESS TO AND USE OF DISCOVERY MATERIAL</u>

7.1 <u>Use of Discovery Material</u>. A Receiving Party may use Discovery Material that is disclosed or produced by another Party solely for the purposes of the Chapter 11 Cases and any judicial proceedings relating to these Chapter 11 Cases (including any contested matters and any adversary proceedings commenced in connection with the Chapter 11 Cases), subject to the limitations set forth in Section III of this Order, and not for any other purpose, including any other litigation or judicial proceedings, or any business, competitive, governmental, commercial, or administrative purpose or function. In the case of use by the Local Council Committee and Official Committees, their Members, Outside Counsel, and advisors that are retained by the Local Council Committee, Official Committee or their Outside Counsel, in each case in their capacity as such, Protected Material may be used only in a manner consistent with the applicable Committee's duties and responsibilities. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Debtors emerge from the Chapter 11 Cases or the Chapter 11 Cases are dismissed, a Receiving Party must comply with the provisions of Section XIII below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the Bankruptcy Court or permitted in writing by the Producing Party, a Receiving Party may disclose any information or items designated "CONFIDENTIAL" only to:

(a) to the officers, directors, employees, and Counsel of the Receiving Party;

(b) each Official Committee, each Member of each Official Committee, and the Official Committee's Outside Counsel;

(c) to the Debtors and their Counsel;

(d) to the Local Council Committee, the Members of the Local Council Committee, Counsel to each of the Local Council Committee's Members, and the Local Council Committee's Counsel, provided that disclosure is reasonably necessary for purposes of these Chapter 11 Cases;

(e) the FCR and the FCR's Counsel;

(f) the Insurers and their Counsel;

(g) the Insurers' respective reinsurers, regulators, and other entities to whom disclosure is required by law, and for whom the Insurers in good faith believe disclosure is required, provided that prior to such disclosure the disclosing Insurer shall provide the recipient with a copy of this Protective Order and inform the recipient that the Documents being disclosed are confidential pursuant to the terms of this Protective Order;

(h) Other Retained Professionals, provided that disclosure is reasonably necessary for purposes of these Chapter 11 Cases;

(i) court reporters and their staff, professional jury or trial consultants, and Professional Vendors, provided that disclosure is reasonably necessary for the purposes of the Chapter 11 Cases and complies with the limitations on the disclosure of such material set forth in Local Rule 9018-1(f);

(j) for purposes of witness preparation, any deponent or witness who was noticed for a deposition, or is on a witness list for hearing or trial, in preparation for his or her noticed deposition, hearing, or trial testimony where such Protected Material is determined by counsel for a Party in good faith to be necessary to the anticipated subject matter of testimony; provided, however, that

19

such person (1) is only provided such Protected Material in connection with preparation for the anticipated testimony, and (2) shall not be permitted to retain copies of such Protected Material;

(k) Deponents and witnesses where counsel has a good faith basis for believing that the witness would have had knowledge of the contents of the Protected Material in the course of fulfilling his or her responsibilities or has information that directly bears upon the Protected Material;

(l) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(m) any adverse witness during the course of a deposition where counsel questioning the witness reasonably and in good faith believes that questioning the witness regarding the document is necessary;

(n) a law enforcement agency for the purpose of making a criminal referral or complaint; and

(o) any other person or entity with respect to whom the Producing Party (and Party in Interest, if applicable) may consent in writing and that also has assented to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A.

A request by a Receiving Party under this Paragraph 7.2(o) must be in writing and reasonably specify the Discovery Materials that it seeks to disclose, the "person or entity" to which it seeks to disclose this Discovery Material, and the reason it seeks to disclose these Discovery Materials. The Producing Party shall use reasonable best efforts to provide a response in three (3) Business Days from receipt of a written request. The parties shall also make reasonable efforts to meet and confer regarding any disagreement pursuant to the process set forth in

Paragraph 6.2.  If a request pursuant to Paragraph 7.2(o) is denied and efforts to meet and confer do not yield a resolution that is satisfactory to the Requesting Party and Producing Party, the Requesting Party may seek the Court's intervention, as provided in Paragraph 6.3. All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Bankruptcy Court rules on the Challenge Motion. Information that constitutes or contains Common Interest Protected Material is not subject to disclosure under this Paragraph 7.2(o).

7.3 <u>Disclosure of "HIGHLY CONFIDENTIAL" Information or Items</u>. Discovery Material designated "HIGHLY CONFIDENTIAL" may only be disclosed to:

(a) the Debtors, and the Debtors' Counsel and Other Retained Professionals,

(b) Outside Counsel and Other Retained Professionals retained by any Official Committee or the Local Council Committee,

(c)  Counsel to Members of the Local Council Committee or an Official Committee,

(d) Outside Counsel and Other Retained Professionals retained by the Insurers, as well as in-house Counsel and non-legal professionals working on these Chapter 11 Cases,

 (e) the Insurers' respective reinsurers, regulators, and other entities to whom disclosure is required by law, and for whom the Insurers in good faith believe disclosure is required, provided that prior to such disclosure the disclosing Insurer shall provide the recipient with a copy of this Protective Order and inform the recipient that the Documents being disclosed are confidential pursuant to the terms of this Protective Order;

(f) the FCR and the FCR's Counsel, and

(g) the persons or entities identified in Paragraphs 7.2(i)-(o).

For the avoidance of doubt, Discovery Material designated "HIGHLY CONFIDENTIAL" may not be disclosed to the Members of the Local Council Committee or an Official Committee or to any other person or entity not listed in this Paragraph 7.3.

Unless otherwise ordered by the Bankruptcy Court, a Receiving Party shall not disclose any information or item designated "HIGHLY CONFIDENTIAL" to any other person or entity without the prior written consent of the Producing Party; provided, however, that (1) this non-disclosure provision shall not be applicable to any HIGHLY CONFIDENTIAL information that specifically has previously been publicly disclosed without restriction by the Producing Party (excluding disclosures by the Producing Party to their respective legal advisors, auditors, or other professional advisors, or disclosures required by law or judicial process), (2) the persons receiving HIGHLY CONFIDENTIAL information shall be permitted to discuss such information with only those parties listed in Paragraph 7.3, and with Members of the Local Council Committee or any Official Committee, but only to the extent necessary to fulfill their statutory and/or fiduciary duties.

7.4    Disclosure of "COMMITTEE ADVISOR ONLY" Information or Items. Discovery Material designated "COMMITTEE ADVISOR ONLY" may only be disclosed to:

(a) the Debtors, and the Debtors' Counsel and Other Retained Professionals ,

(b) Outside Counsel and Other Retained Professionals retained by an Official Committee, the Local Council Committee, or the Insurers, as well as Insurers' in-house Counsel and non-legal professionals working on this chapter 11 case,

(c) the Insurers' respective reinsurers, regulators, and other entities to whom disclosure is required by law, and for whom the Insurers in good faith believe disclosure is required, provided that prior to such disclosure the disclosing Insurer shall provide the recipient with a copy of this

Protective Order and inform the recipient that the Documents being disclosed are confidential pursuant to the terms of this Protective Order;

(d) the FCR's Counsel and Other Retained Professionals, and

(e) a law enforcement agency for the purpose of making a criminal referral or complaint.

For the avoidance of doubt, Discovery Material designated "COMMITTEE ADVISOR ONLY" may not be disclosed to (i) Members of the Local Council Committee, (ii) Members of an Official Committee, (iii) Counsel to Members of the Local Council Committee (other than the Local Council Committee's Outside Counsel), or (iv) Counsel to Members of an Official Committee (other than such Official Committee's Outside Counsel), or (v) any other person or entity not listed in this Paragraph.

Unless otherwise ordered by the Bankruptcy Court, a Receiving Party shall not disclose any information or item designated "COMMITTEE ADVISOR ONLY" to any other person or entity without the prior written consent of the Producing Party; provided, however, that (1) this non-disclosure provision shall not be applicable to any COMMITTEE ADVISOR ONLY information that specifically has previously been publicly disclosed without restriction by the Producing Party (excluding disclosures by the Producing Party to their respective legal advisors, auditors, or other professional advisors, or disclosures required by law or judicial process), (2) the persons receiving COMMITTEE ADVISOR ONLY information shall be permitted to discuss such information with only those parties listed in Paragraph 7.4, and with Members of the Local Council Committee or an Official Committee or the FCR, but only to the extent the Producing Party approves such discussions in advance.

Notwithstanding the foregoing, all Protected Material containing unaggregated financial information pertaining to Local Councils designated as "COMMITTEE ADVISOR ONLY" shall

be re-designated as "HIGHLY CONFIDENTIAL" sixty (60) days after the date of production to any Official Committee or the FCR, unless otherwise agreed to by the Producing Party and the Receiving Party or directed by a Plan Mediator. The Parties agree that such unaggregated financial information pertaining to Local Councils qualifies as "HIGHLY CONFIDENTIAL" under this Order. The relevant Producing Party shall provide to all relevant Receiving Parties new copies of Discovery Material that have been re-designated pursuant to this provision with revised watermarks or other appropriate confidentiality designations for "HIGHLY CONFIDENTIAL" Discovery Material as provided in Paragraph 5.5.

7.5 <u>Designations as to Specific Parties in Interest and Committee Members</u>. If a Producing Party determines in good faith that the disclosure of Discovery Material to a particular person or entity presents a reasonable risk of competitive injury, the Producing Party may limit its disclosure of such Discovery Material (the "**Sequestered Material**") to exclude such person or entity (the "**Sequestered Party**"). The Producing Party shall, either at the time the Sequestered Material is disclosed to a Receiving Party or as soon thereafter as practicable, inform such Receiving Party that the Sequestered Material is not to be disclosed to a Sequestered Party.  Any Party or a party in interest may challenge such sequestration pursuant to the process set forth in Paragraphs 6.2 and 6.3 of this Order.

7.6 <u>Filing or Submitting Protected Material To Court</u>. Notwithstanding any other provision of this Order to the contrary, any document containing Protected Material that is submitted to or filed with the Bankruptcy Court must be filed under seal as a restricted document in accordance with Local Rule 9018-1 and any applicable Chambers Procedures, or as otherwise ordered by the Bankruptcy Court. All Protected Material for which a Party or Party in Interest is requesting permission to file under seal ("Sealed Documents") pursuant to this Order shall be filed in

unredacted form in conformity with the sealing procedures set by the Clerk of the Bankruptcy Court. Such Sealed Documents shall be released by the Clerk of the Bankruptcy Court only upon further order of the Bankruptcy Court.

Any Party or Party in Interest that files a motion to file under seal with the Bankruptcy Court shall provide counsel to the U.S. Trustee with an unredacted copy of all documents sought to be sealed, pursuant to section 107(c)(3)(A) of the Bankruptcy Code. If a motion to seal has not been ruled upon and the moving party withdraws the motion to seal, the Sealed Documents subject to the motion shall be returned to the filer thereof unless otherwise expressly agreed by the filer in writing, provided that such Sealed Documents need not be returned to the filer thereof if the Sealed Documents are later filed as public documents.

The mere inclusion in a paper or pleading of factual information derived from documents or things designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," will not require that paper or pleading to be filed under seal if the Parties and (and any Party in Interest, as applicable) agree in writing prior to filing the paper or pleading that the factual information actually contained in that paper or pleading would not itself be properly subject to such designation. If the Parties cannot resolve a dispute regarding the inclusion in a paper or pleading of facts from documents or things marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," the procedures of this paragraph shall be followed prior to the filing of any such paper or pleading.

Nothing in this Paragraph shall preclude a Party from filing Discovery Material that the Party itself has designated as its own Protected Material in unredacted form and without requesting sealing.

7.7 In certain instances, materials submitted to the Bankruptcy Court may be designated Protected Material by a Producing Party or identified as Protected Material by a Party in Interest, and the filing Party may disagree or have no position with respect to whether sealing is appropriate. In such instances, the filing Party shall comply with the procedures in Paragraph 7.6, but shall indicate in its motion for permission to file under seal that the confidentiality designation was made by the Producing Party (and/or asserted by a Party in Interest, where applicable). Such Producing Party (and/or Party in Interest, where applicable) shall also be served with copies of the motion and the unredacted materials submitted to the Bankruptcy Court. The Producing Party (and any Parties in Interest, where applicable) will have ten (10) days thereafter to submit a motion specifying the portions of the Discovery Material to be sealed and setting forth the reasons why sealing is appropriate under the circumstances, as contemplated by the Local Rules and the individual practice rules of the Bankruptcy Court, or otherwise consenting that the Discovery Material need not be sealed. If the Producing Party or Party in Interest fails to submit a motion as described above, such party shall be deemed to have withdrawn its designation of the Protected Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," as applicable.

7.8 <u>Use of Protected Material in Open Court</u>. The limitations on disclosure in this Order shall not apply to any Discovery Material offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this Paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, counsel for any Party who desires to offer or use such Protected Material at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party (and/or Party in Interest, as applicable) together with any other Parties who have expressed interest in participating in such

meet and confer to discuss ways to redact the Protected Material so that the material may be offered or otherwise used by any party, in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules. In the case of Protected Material that is, that contains, or that may contain Common Interest Protected Material, such meet and confer shall include any Common Interest Party with respect to such Common Interest Protected Material. If the Parties are unable to resolve a dispute related to such Protected Material, then the Party who desires to offer or use such Protected Material at trial or any hearing to be held in open court shall comply with Paragraph 7.6 above and, in the absence of relief from the Bankruptcy Court, such Protected Material shall not be offered or otherwise used at trial or any hearing held in open court. Notwithstanding anything to the contrary herein, the Parties reserve their respective rights to argue that this Protective Order will be revisited by the Bankruptcy Court and any other court hearing an appeal from any order issued by the Bankruptcy Court prior to any trial given the standard for redacting or sealing information to be used in a trial generally differs from the standard for redacting or sealing information in pre-trial proceedings.

7.9 <u>Removal of Sealed Records</u>. Sealed records that have been filed may be removed by the Producing Party (i) within 90 days after a final decision disposing of the contested matter, adversary proceeding, or other litigation is rendered if no appeal is taken, or (ii) if an appeal is taken, within thirty (30) days after final disposition of the appeal.

## VIII. **PROTECTED MATERIAL DEMANDED, SUBPOENAED FOR DISCLOSURE, ACTUALLY DISCLOSED, OR ORDERED PRODUCED IN OTHER PROCEEDINGS**

8.1. If a Party is served with a subpoena or a court order issued in other proceedings outside of these Chapter 11 Cases that compels disclosure of any Protected Material, that Party must:

(a)     promptly notify in writing the Producing Party and any Party in Interest that has previously designated such information as Protected Material or that has asserted a Privilege or

Protection with respect to such Protected Material. Such notification shall include a copy of the subpoena, court order, or request;

(b)     promptly notify in writing the party who issued the subpoena or request that some or all of the material covered by the subpoena, order, or request is subject to this Order. Such notification shall include a copy of this Order; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party (and/or Party in Interest or Party asserting a Privilege or Protection, where applicable) whose Protected Material may be affected.

8.2. With the exception of the U.S. Trustee, if any person or entity who is not a Party to this Order requests or demands any Protected Material from any Party (including any Party's counsel or Representative), the Party or Representative receiving such request or demand shall, if so entitled and permitted given the nature of the legal process at issue, promptly notify the other Parties and provide copies of any writings or documents relating to such request or demand. If any Party wishes to protect the confidentiality of any Protected Material in response to the demand or request, then the recipient of the demand or request shall, to the extent reasonably practicable and legally permissible, cooperate with such Party to undertake the necessary steps to assert such applicable privileges, immunities, and rights to protect the confidentiality of the Protected Material.

8.3 If the Producing Party,  Party in Interest, or a Party asserting a Privilege or Protection over Protected Material timely seeks a protective order regarding the Protected Material that is requested or demanded as described in paragraphs 8.1 and 8.2 above, the Party served with the subpoena, court order, or request shall not produce any Protected Material before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Producing

Party's (and/or, where applicable, the Party in Interest's) permission, or otherwise reasonably believes it is legally compelled to do so. The Producing Party shall bear its own costs and expenses when seeking protection in that Court of its confidential material. Nothing in this Order should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another Court.

8.4 Nothing in this Order authorizes a Producing Party to disclose to any Official Committee, the FCR, or any other Party or entity, or their Other Retained Professionals, any Common Interest Protected Material. If a Producing Party intends to produce information that may constitute or contain Common Interest Protected Material (which may include information that was prepared by, or delivered by the Producing Party to, counsel retained to represent the Producing Party in filed or threatened tort or abuse litigation), the Producing Party will provide advance notice by email or other writing to any Common Interest Party with respect to the Common Interest Protected Material prior to production by the Producing Party of such information under this Protective Order. The notice shall attach the documents or information sought to be produced. Such Common Interest Party will have three (3) business days after receipt of the Producing Party's notice to object by email or other writing to the Producing Party's proposed production and, if such objection is delivered to the Producing Party within the three (3) day period, then the Producing Party and the objecting Common Interest Party will confer in good faith regarding the objection and proposed production. In the event that an agreement cannot be reached between the Producing Party and the objecting Common Interest Party, then the Producing Party will not produce the subject documents or information and the Bankruptcy Court will determine whether the documents constitute or contain Common Interest Protected Material, in

which case such documents will not be produced unless ordered otherwise by the Bankruptcy Court.

## IX. <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

9.1 If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or entity or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Producing Party, and any Party in Interest that has designated the information as Protected Material, of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, and (c) inform the person(s) or entity(ies) to whom unauthorized disclosures were made of all the terms of this Order. Such disclosure shall be subject to Local Rule 9018-1(f) and limited to members and employees of the law firm representing the receiving party and such other parties as to which the Parties agree. If a Producing Party receives notice pursuant to this Article IX that the disclosed Protected Material contains Common Interest Protected Material, the Producing Party shall promptly give notice to each Common Interest Party with respect to the Common Interest Protected Material. Disclosure of Protected Material other than in accordance with the terms of this Order may subject the disclosing person to such sanctions and remedies as the Bankruptcy Court may deem appropriate.

## X. <u>NON-WAIVER OF PRIVILEGE; INADVERTENT PRODUCTION OF PRIVILEGED MATERIAL</u>

10.1 The Parties agree that, pursuant to this Order and under Fed. R. Evid. 502(d), the inadvertent or unintentional disclosure of Privileged Material, or Discovery Material supplied under this Order, regardless of whether the information was designated as Protected Material or was asserted to contain Privileged Material at the time of disclosure, shall not be deemed a waiver in whole or in part of any privilege or immunity, either as to the specific information disclosed or

as to any other information relating thereto or to related subject matter if, upon learning of the inadvertent production, the Producing Party (or Party asserting a claim of Privilege or Protection) notifies the Receiving Party in writing of the information of the claims or privileges or protections and the basis for it. Upon discovery of the inadvertent error, the Producing Party may request the return of any document inadvertently produced, and the Receiving Party shall return or destroy the document and any copies within five business days of such request; provided, however, that the Receiving Party shall have the right to challenge such clawback as set forth in the subsequent paragraph (and may retain a copy of any documents or information subject to challenge to do so). The Parties shall cooperate to preserve any applicable Privilege or Protection or immunity for that disclosed material, including retrieval of all copies disseminated to any other recipient. For the avoidance of doubt, this Protective Order shall be interpreted to provide the maximum protection allowed to each Producing Party by Fed. R. Evid. 502(d).

10.2 In response to any disclosure of Privileged Material to a party outside of the privilege, the Producing Party immediately shall notify any Common Interest Party with respect to such Privileged Material. The Producing Party's notification shall include copies of the disclosed Privileged Material and all communications confirming that any Receiving Party has returned and destroyed all such Privileged Material.

10.3 Nothing in this Protective Order shall prevent any Party from challenging or objecting to a claim of privilege, immunity, work-product protection or common interest. Any party wishing to challenge or object to any such claim of protection shall notify the Producing Party in writing of such challenge, and the parties shall meet-and-confer in an effort to resolve such disagreement concerning the privilege or work-product claim with respect to such Discovery Material. In the event of a challenge to a Privilege or Protection as to any Privileged Material that is or contains

31

Common Interest Protected Material, the Producing Party shall promptly notify the Common Interest Party of such challenge. A Receiving Party shall not use any Discovery Material that is subject to a claim of privilege, immunity, or protection under this section for any purpose, other than to dispute the claim of privilege, immunity, or protection until the Court has ruled on such dispute (if any). If a Receiving Party files a motion disputing the claim of privilege, immunity, or protection following a meet and confer, the applicable Producing Party bears the burden of establishing the attorney-client privilege, attorney work product protection, common interest, or any other privilege, immunity, or protection from production or disclosure of any such Discovery Material and may oppose such motion, including on the grounds that inadvertent disclosure does not waive privilege.

10.4 No Party or its counsel shall have the right to waive the attorney-client, work product, joint defense privilege, protection for Common Interest Protected Material, or any other privilege, protection, or defense that might be applicable to any Discovery Material it has received pursuant to this Order. Each Party and its counsel, and each Producing Party and its counsel, shall retain the sole right to waive its own privileges as to any Discovery Material originated solely from it or its Counsel or other advisors, provided prior notice is given to any other Party and/or Parties that may have a shared or joint privilege in such Discovery Material that arose prior to the date and independent of this Order.

10.5 Nothing in this Order shall limit the Court's right or any Party's right to request an in camera review of any Discovery Material that may be subject to a claim of privilege or other immunity.

## XI. **DEPOSITIONS**

11.1 <u>Responsibilities And Obligations Of Court Reporters.</u> In the event that testimony is designated as Protected Material, the court reporter, who shall first have agreed to abide by the terms of this Paragraph, shall be instructed to include on the cover page of each such transcript the legend, "This transcript portion contains information subject to a Protective Order and shall be used only in accordance therewith," and each page of the transcript shall include the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," as appropriate. If the deposition is recorded, the recording shall also be subject to the same level of confidentiality as the transcript and include the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" if any portion of the transcript itself is so designated.

11.2 <u>Use of Deposition Testimony in Court</u>: Any Party or party in interest seeking to use deposition testimony designated as Protected Material in the Bankruptcy Court must proceed in accordance with Paragraph 7.6.

## XII. <u>MISCELLANEOUS</u>

12.1 <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Bankruptcy Court in the future, including the application of this Order to any particular contested matter or adversary proceeding or any determination made by a Plan Mediator with respect to Discovery Material.

12.2 <u>Right to Assert Other Objections</u>. Nothing in this Order waives any right by a Party that it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Nothing in this Order shall be deemed a waiver or relinquishment by any Party or non-Party of any objection, including but not limited to, any objection concerning the confidentiality or proprietary nature of any documents, information, or

data requested by a Party, any right to object to a discovery request, or any right to object to the admissibility of evidence on any ground, or to seek relief from the Court from any provision of this Order by application on notice on any grounds.

12.3 <u>Continuing Applicability of Order</u>. The provisions of this Order shall survive the Debtors' emergence from Bankruptcy or the dismissal of the Chapter 11 Cases for any retained Discovery Material. The Debtors' emergence from Bankruptcy or the dismissal of the Chapter 11 Cases shall not relieve the Parties from their responsibility to maintain the confidentiality of Discovery Material pursuant to this Order, and the Bankruptcy Court shall retain jurisdiction to enforce the terms of this Order.

12.4 <u>Amendment or Assignment of Order</u>. This Order may be amended only by an instrument in writing signed by the Debtors, the Local Council Committee, the TCC, the UCC, the FCR, the Insurers, and any other Official Committee that assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A, with approval by the Bankruptcy Court; <u>provided</u>, <u>however</u>, notice of any such amendment shall be given to all other Parties subject to this Order and such other Parties shall have ten (10) Business Days to affirmatively opt-out of such amendment by providing written notice to the Debtors, the Local Council Committee, the TCC, the UCC, the FCR, the Insurers, and any other Official Committee that assents to be bound by this Order and upon exercising such opt-out then such Party shall be excluded from further access to Discovery Material and shall only be bound by the obligations of such Order prior to the amendment. Nothing herein shall preclude a Party from applying at any time (including, without limitation, after the conclusion of the Chapter 11 Cases) to the Bankruptcy Court for relief from (including, without limitation termination of) any or all of the provisions of this Order. The Debtors and the Party seeking to modify or terminate

34

the Order shall meet and confer in good faith to reach an agreement on any issues in dispute concerning the meaning, application, or interpretation of this Order prior to any application to the Bankruptcy Court for resolution of such dispute. A Producing Party and a Receiving Party may agree to modify this Order as it applies to a particular production or a particular proceeding in the Chapter 11 Cases as between such Producing Party and such Receiving Party only with ten (10) Business Days prior notice to the Debtors, the Local Council Committee, the TCC, the UCC, the FCR, the Insurers, and any other Official Committee that assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A. For the avoidance of doubt, no such Producing Party or such Receiving Party can, through an agreement of the type described in the previous sentence, modify their obligations with respect to Discovery Materials designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," or as to Privileged Material, by a Party that has not consented to such modification.

12.5 <u>Use of Discovery Material by Producing Party</u>. Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties or their attorneys to use or disclose such Discovery Material in violation of this Order.  Notwithstanding the foregoing, any Party that publicly disseminates its own Discovery Material, including in a filing not sealed with the Court or in open court may not subsequently restrict other Parties' public use of the same Discovery Material on grounds that such material constitutes Protected Material. Nothing in this Order affects the right of any Producing Party or Party in Interest under applicable law to claw back Discovery Material.

12.6 <u>Obligations of Parties</u>. Nothing herein shall relieve a Party of its obligations under the Federal Rules, Bankruptcy Rules, Local Rules, any existing joint defense or common interest agreements, or under any future stipulations and orders, regarding the production of documents or the making of timely responses to Discovery Requests in connection with any dispute or the Chapter 11 Cases.

12.7 <u>Advice of Counsel</u>. Nothing herein shall prevent or otherwise restrict counsel from rendering advice to their clients in connection with the Chapter 11 Cases and, in the course thereof, relying on examination of Protected Material; <u>provided</u>, <u>however</u>, that in rendering such advice and otherwise communicating with such client, counsel shall not make specific disclosure of any information in any manner that is inconsistent with the restrictions or procedures set forth herein.

12.8 <u>Enforcement</u>. The provisions of this Order constitute an Order of this Court and violations of the provisions of this Order are subject to enforcement and the imposition of legal sanctions in the same manner as any other Order of the Bankruptcy Court. Any Producing Party (including, for the avoidance of doubt, any Local Council of the Boy Scouts of America that provides information that is stored in the secure data rooms maintained by the Debtors), regardless of whether such Producing Party has executed a copy of the Acknowledgement and Agreement to be Bound, is an intended third-party beneficiary of and may seek to enforce this Order.

12.9 <u>Attorney-Client Privileged and Attorney Work Product Immunity</u>. Nothing herein shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to any Producing Party. Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product immunity, or any other privilege or immunity.

12.10 <u>Reservation of Rights to Seek Documents</u>. Nothing in this Order shall prevent or limit any right of a Member of an Official Committee (or its Counsel) or the FCR (or his Counsel) to seek discovery or compel disclosure of any information from any Producing Party under applicable laws or rules in its individual capacity, including through subpoena, formal discovery or other process, even if such materials were previously disclosed or released to such Members or FCR as Confidential Information or Highly Confidential Information, or prevent or limit any right of the Producing Party to object to any such subpoena, formal discovery or other process, other than on the grounds that such materials were previously disclosed to such Member in their capacity as such, or the FCR in his capacity as such, pursuant to this Order.

12.11 <u>No Modification of Insurance Policies, Rights, or Obligations</u>. Nothing in this Order shall be deemed to modify the rights or obligations under any of Debtors' insurance policies that any Insurer issued to Debtors, including the Parties' rights and obligations concerning Debtors' pre- or post-petition production of Documents.

12.12 <u>Pension Benefit Guaranty Corporation (the "**PBGC**")</u>. Notwithstanding any other terms or provisions in this Order, PBGC may disclose Discovery Material to the executive branch of the United States, Congress or any committee, joint committee, or subcommittee thereof, the Comptroller General, PBGC and PBGC Board Of Directors, officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities ("**Officials**"). PBGC will inform all Officials having access to such Discovery Material that such information is subject to this Order. Notwithstanding any other terms or provisions in this Protective Order, PBGC may disclose information about the amount of underfunding in any pension plan covered by Title IV of ERISA, including but not limited to information about

guaranteed benefit liabilities, unfunded benefit liabilities, plan assets and funding ratios, whether or not this information is contained in or derived from Discovery Material.

## XIII. **FINAL DISPOSITION**

Each Receiving Party will use commercially reasonable efforts to return all Protected Material to the Producing Party or destroy such material (unless such Protected Material has been offered into evidence, filed without restriction, or otherwise been made publicly available without a violation of the terms of the Protective Order) within, as applicable, either (A) 90 days of the request of a Producing Party and/or Party in Interest made after the closing of the Chapter 11 Cases or (B) 30 days of the request of a Producing Party and/or Party in Interest made after the dismissal of the Chapter 11 Cases, or in either case as soon as reasonably practicable after such request, or such later time as the Producing Party and/or Party in Interest may agree in writing. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, Derivative Information, and any other format reproducing or capturing any of the Protected Material.  As soon as practicable following a request from the Producing Party, each applicable Receiving Party shall certify in writing (which may be by e-mail) that, to the best of such Receiving Party's knowledge after reasonable inquiry, all Discovery Material containing Protected Information has either been returned to the Producing Party or destroyed.  The Receiving Party shall not be required to locate, isolate, and return or destroy e-mails (including attachments to e-mails) that may include Protected Information contained in deposition transcripts or drafts or final expert reports.

Notwithstanding the above requirements to return or destroy Protected Information, any applicable Receiving Party, Counsel, and Other Retained Professionals may retain (i) such Discovery Material as it reasonably believes (and at all times continues to reasonably believe) are

required in order to satisfy applicable law, ethical, or professional obligations, (ii) any analyses, abstracts, studies, summaries, or reports prepared by the Receiving Party or its Counsel or Other Retained Professionals based on, containing, or reflecting Protected Information, (iii) any portions of the Protected Information that are publicly available through no wrongful act or violation of this Protective Order on the part of the entity or the individual who caused the information to become generally available to the public through publication or otherwise, and (iv) any portions of Protected Information that it reasonably believes cannot be practicably destroyed (such as oral communications, e-mail back-up records, bank-up server tapes, and any records of similar such automated record-keeping or other retention systems). Any retained Protected Information shall continue to be protected under this Protective Order.

**END OF ORDER**

*CONSENTED TO BY:*

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
William E. Curtin
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
William A. Evanoff
Matthew E. Linder (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

– and –

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
By: _____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 425-4664

*Proposed Attorneys for the BSA*

PACHULSKI STANG ZIEHL & JONES LLP
By:_____
James I. Stang (admitted *pro hac vice*)
Robert B. Orgel (admitted *pro hac vice*)
James E. O'Neill
John A. Morris (admitted *pro hac vice*)
John W. Lucas (admitted *pro hac vice*)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 1999-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
jstang@pszjlaw.com
rorgel@pszjlaw.com
joneill@pszjlaw.com
jmorris@pszjlaw.com
jlucas@pszjlaw.com

*Attorneys for the Official Tort Claimants'*
*Committee*

REED SMITH LLP
By: _____
Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

– and –

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Thomas Moers Mayer, Esquire
Rachael Ringer, Esquire
Jennifer Sharrett, Esquire
Megan Wasson, Esquire
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Attorneys for the Official Committee of*
*Unsecured Creditors*

– and –                                             – and –

YOUNG CONAWAY STARGATT &          DLA PIPER, LLP (US)
TAYLOR, LLP
By: _____          By: _____
                                                    R. Craig Martin (No. 5032)
Robert S. Brady (No. 2847)                  1201 North Market Street, Suite 2100
Edwin J. Harron (No. 3396)                 Wilmington, Delaware 19801-1147
Sharon M. Zieg (No. 4196)                   Telephone: (302) 468-5655
Sara Beth A.R. Kohut (No. 4137)          Facsimile: (302) 778-7834
Rodney Square                                    Email: craig.martin@dlapiper.com
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600                   WACHTELL, LIPTON, ROSEN & KATZ
Facsimile: (302) 571-1253                    Richard G. Mason (admitted pro hac vice)
Email: rbrady@ycst.com                      Douglas K. Mayer (admitted pro hac vice)
          eharron@ycst.com                   Joseph C. Celentino (admitted pro hac vice)
          szieg@ycst.com                       51 W. 52nd Street
          skohut@ycst.com                     New York, New York 10019
                                                    Telephone: (212) 403-1000
*Proposed Counsel to the Future Claimants'*   Facsimile: (212) 403-2000
*Representative*                                 Email: RGMason@wlrk.com
                                                            DKMayer@wlrk.com
                                                            JCCelentino@wlrk.com


                                                    *Attorneys for the Ad Hoc Committee of Local*
                                                    *Councils of the Boy Scouts of America*

## <u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____

_____ [print or type full address], declare under penalty of perjury that I have read

in its entirety and understand the *Confidentiality and Protective Order* that was issued by the

United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on

_____ in the chapter 11 cases of the Boy Scouts of America and

Delaware BSA, LLC [Case No. 20-10343 (LSS), Docket No. ____] (the "**Order**"). I agree to

comply with and to be bound by all the terms of the Order and I understand and acknowledge that

failure to so comply could expose me to sanctions and punishment in the nature of contempt. I

solemnly promise that I will not disclose in any manner any information or item that is subject to

the Order to any person or entity except in strict compliance with the provisions of the Order. I

further agree to submit to the jurisdiction of the Bankruptcy Court solely for the purpose of

enforcing the terms of this Confidentiality and Protective Order, even if such enforcement

proceedings occur after termination of the Chapter 11 Cases (as defined in the Order).


Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

## EXHIBIT B

1.  The Chubb Group of Insurance Companies, including but not limited to Insurance Company of North America

2.  The Hartford Companies, including but not limited to Hartford Accident and Indemnity Company and First State Insurance Company

3.  Allianz Global Risks US Insurance Company

4.  National Surety Corporation

5.  Liberty Mutual Insurance Company

6.  American International Group, Inc. entities, including National Union Fire Insurance Company of Pittsburgh, PA; Lexington Insurance Company; Landmark Insurance Company; The Insurance Company of the State of Pennsylvania

## **Exhibit B**

**Redline Comparison Against Stipulated
Protective Order Filed with the Motion**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## CONFIDENTIALITY AND PROTECTIVE ORDER

This Confidentiality and Protective Order (this "**Order**") shall govern the production, review, disclosure, and handling of any Discovery Material by Boy Scouts of America and Delaware BSA, LLC (together, the "**Debtors**"), the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "**Local Council Committee**"), the Tort Claimants Committee (the "**TCC**"), the Future Claimants' Representative (the "**FCR**"), the Official Committee of Unsecured Creditors (the "**UCC**"), any other Official Committee, the insurers identified in **Exhibit B** hereto (the "Insurers"), and other parties in interest having a right to be heard in the Chapter 11 Cases in accordance with 11 U.S.C. §§ 1109(b) who assent to be bound to this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as **Exhibit A** hereto (each individually, a "**Party**" and, collectively, the "**Parties**").[2]

## I. PURPOSES AND LIMITATIONS

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

[2]    All capitalized terms used but not otherwise defined in this paragraph and in Section I (Purposes and Limitations) of this Order shall have the meanings ascribed to such terms elsewhere in this Order.

This Order applies to the production, disclosure, handling, dissemination, exchange, and use of documents and all discovery in the Chapter 11 Cases and related proceedings, including: discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); materials produced, provided, or made available on a voluntary basis; and discovery in connection with judicial or other proceedings, such as contested matters, adversary proceedings and other disputes provided, however, to the extent Discovery Material has been or will be produced by a Producing Party to any individual Member of an Official Committee or Local Council Committee in its individual capacity and such production is subject to another order of a court then such other order shall control the handling of such Discovery Material, or other discovery.  The Parties have sought and will seek certain Discovery Material (as defined below) from one another and other parties in interest in and with respect to the Chapter 11 Cases (collectively, "**Discovery Requests**") on a voluntary basis and as provided by the Federal Rules of Civil Procedure (the "**Federal Rules"**), the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"). As a result, the Parties have produced, provided access to, and made available, and might continue to produce, provide access to, and make available, certain Discovery Material. The purpose of this Order is to facilitate and expedite the production, exchange and treatment of Discovery Material and to protect Discovery Material that a Party or Party in Interest seeks to maintain as confidential in accordance with the terms hereof.

For purposes of this Order, unless otherwise provided herein, the words "include" and "including" and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation."

## II. **DEFINITIONS**

**Bankruptcy Court**:  the United States Bankruptcy Court for the District of Delaware.

**Business Day**:  any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**Challenging Party**:  a Party that challenges the designation of Discovery Material under this Order.

**Chapter 11 Cases**:  the above-captioned chapter 11 cases of the Debtors, including any contested matter or adversary proceeding filed in connection with the above-captioned cases.

**Common Interest Protected Material**: documents, information, or communications that are subject to the attorney-client privilege, attorney work-product doctrine, or other privilege or protection from disclosure, and are shared between an insurer and its policyholder (e.g., documents that reflect defense strategy, case evaluations, discussions of settlement/resolution, and communications between insurer and policyholder regarding underlying litigation).

**Common Interest Party**: any Party or party in interest asserting an interest in Discovery Material that constitutes Common Interest Protected Material.

**Counsel (without qualifier)**:  Outside Counsel or In-House Counsel (as well as their respective support staff).

**Derivative Information**: as defined in Paragraph 5.6.

**Discovery Material**: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are (1) produced or generated in disclosures or responses to Discovery Requests; (2) produced, provided, or made available on a voluntary basis; or (3) otherwise provided to Counsel and Other Retained Professionals. "Discovery Material" includes deposition

testimony, interrogatories, answers to interrogatories, requests for admission, responses to requests for admission, documents, all materials contained in the secure data rooms maintained by the Debtors, as well as any and all copies, abstracts, digests, notes, summaries, and excerpts thereof.

**Future Claimants' Representative**:  James L. Patton Jr. appointed pursuant to the *Order Appointing James L. Patton Jr., as Legal Representative for Future Claimants, Nunc Pro Tunc to the Petition Date* [D.I. 486].

**In-House Counsel**: attorneys (and their support staff) who are employees or contractors of a Party.

**Member:**  any member of an Official Committee or the Local Council Committee, and such member's Counsel, Other Retained Professionals, representatives, or agents for such member, who are working on or consulted in connection with the Chapter 11 Cases and have been directed by such member to, and have agreed to, treat the Discovery Material in accordance with the terms of this Order.

**Official Committee**: the TCC, the UCC, and any other statutory committee appointed by the U.S. Trustee under section 1102 of the Bankruptcy Code that assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A.

**Other Retained Professionals**: financial advisors, accounting advisors, industry advisors, experts, consultants and other professionals (and their respective staff) that are retained in connection these Chapter 11 Cases by the Debtors, the Local Council Committee, the Insurers, the FCR, or any Official Committee, and that assent to be bound to this Order by executing a

4

copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A. For the avoidance of doubt, "Other Retained Professionals" does not include "Counsel."

**Outside Counsel**: attorneys (and their support staff) who are not In-House Counsel of a Party but are retained to represent or advise a Party regarding the Chapter 11 Cases. With respect to the Debtors and any Official Committee(s), Outside Counsel refers to counsel that has been retained by the Debtors or any Official Committee, the retention of which has been approved or is sought to be approved by the Bankruptcy Court. With respect to the Local Council Committee, Outside Counsel also includes attorneys who have assented to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A, so long as the attorney continues to represent or advise a Member or Members of the Local Council Committee.

**Party in Interest**: any person or entity (other than a Party) that provides Discovery Material to a Party that is designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" and produced by any Party.

**Privileged Material**: documents or information, regardless of the medium, that are protected by a privilege or are otherwise protected from disclosure, including the attorney-client privilege, attorney work-product doctrine, mediation or settlement privilege, or joint defense privilege, or that otherwise constitute Common Interest Protected Material.

**Privilege or Protection**: the attorney-client privilege, attorney work product doctrine, mediation or settlement privilege, joint defense privilege, and/or any protections that apply to material that constitutes Common Interest Protected Material.

**Producing Party**: any person or entity that produces, provides, or makes available Discovery Material to any Party.

5

**Professional Vendors**: persons or entities that provide litigation support services to a Party (*e.g.*, facilitating conference calls, photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

**Protected Material**: Discovery Material designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY."

**Receiving Party**: a Party that receives Discovery Material from a Producing Party.

### III. SCOPE

This Order applies to all Discovery Material that is produced, formally or informally, voluntarily or in response to a formal Discovery Request, in connection with the Chapter 11 Cases. Discovery Material produced in connection with the Chapter 11 Cases, including pursuant to Bankruptcy Rule 2004, may (unless otherwise agreed by the Producing Party, the Debtors, the Local Council Committee, and each Official Committee (and the Insurers to the extent the Insurers are the Producing Party of, the FCR, and any Common Interest Party with respect to the Discovery Material at issue)) only be used by a Receiving Party to whom such Discovery Material is produced, and may only be used in the Chapter 11 Cases, including in connection with any contested matter or adversary proceeding in the Chapter 11 Cases, but.[3] Discovery Material may not be used in connection with any other litigation unless agreed to by the Producing Party of such Discovery Material and by all Parties to such other litigation, and only to the extent relevant to such other litigation.[3], with respect to any Discovery Material that includes or constitutes Common Interest Protected Material, the consent of all Common Interest Parties.[4] This Order does not affect, amend or modify any existing confidentiality agreements, common-interest agreements joint-defense agreements, bylaws of any Official Committee or unofficial committee, non-disclosure agreements, intercreditor agreements, protective orders or similar agreements

---

[3] The Parties reserve all rights with regard to the discoverability and admissibility of Discovery Material in any particular contested matter, adversary proceeding, or other litigation.

[3] This provision shall not be read to allow any person or entity to become a Receiving Party to Discovery Material, or to gain access to or use Discovery Material, that is not produced to such person or entity by the Producing Party.
[4] This provision shall not be read to allow any person or entity to become a Receiving Party to Discovery Material, or to gain access to or use Discovery Material, that is not produced to such person or entity by the Producing Party. This provision shall not be read to allow any Party to use Privileged Material, inadvertently disclosed or otherwise, in these Chapter 11 Cases or in any other litigation.

applicable to any Producing Party, Receiving Party, and/or Party in Interest, including protective orders entered in connection with any other litigation involving any Producing Party, Receiving Party, and/or Party in Interest (collectively, the "**Existing Confidentiality Agreements**"), and nothing in this Order shall constitute a waiver of any rights under such Existing Confidentiality Agreements. Where this Order is in conflict with any Existing Confidentiality Agreement applicable to any Producing Party, Receiving Party, or Party in Interest, the provision that provides the most confidentiality protection for Discovery Materials applies (but solely in connection with these Chapter 11 Cases). In the event of a dispute, a Party relying on an Existing Confidentiality Agreement shall produce copies of such Existing Confidentiality Agreement that it contends provides more confidential protection than this Protective Order and, notwithstanding anything to the contrary herein, all Parties reserve the right to contest or challenge (using the procedures in Section VI) the terms and scope of any such Existing Confidentiality Agreement as applicable to any Discovery Material.

The protections conferred by this Order apply not only to Protected Material and Privileged Material, but also (1) any information copied or extracted from Protected Material or Privileged Material; (2) all copies, excerpts, summaries, or compilations of Protected Material or Privileged Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, this or Privileged Material. This Protective Order shall apply to information received in connection with these Chapter 11 Cases, including information obtained pursuant to Paragraph 5.9, but it shall not apply to information: (a) not received in connection with the Chapter 11 Cases (other than as provided in Paragraph 5.9); (bthat is either: (a) obtained by the Receiving Party in compliance with this Order after the disclosure from a source who lawfully obtained the information and was under no obligation of

8

confidentiality to the Producing Party, or to any Common Interest Party with respect to Common Interest Protected Material; or (eb) that was in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication or disclosure not involving a violation of this Order, including becoming part of the public record through trial or otherwise.

## IV. DURATION

Even after the Debtors' emergence from the Chapter 11 Cases (or if the Chapter 11 Cases are dismissed), the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or an order entered by the Bankruptcy Court directs otherwise. The Debtors' emergence from the Chapter 11 Cases or the dismissal of the Chapter 11 Cases shall not relieve the Parties from their responsibility to maintain the confidentiality of Discovery Material and Privileged Material pursuant to this Order, and the Bankruptcy Court shall retain jurisdiction to enforce the terms of this Order.

## V. DESIGNATING PROTECTED MATERIAL

5.1 Manner and Timing of Designations. Subject to Paragraphs 5.6 and 5.7 and, except as otherwise provided in this Order or as otherwise stipulated or ordered, Discovery Material that qualifies for protection under this Order must be clearly so designated before or at the time the material is disclosed or produced. Any Producing Party may designate Discovery Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" in accordance with the following provisions:

5.2 "CONFIDENTIAL" Material. A Producing Party may designate Discovery Material as **"CONFIDENTIAL"** if such Producing Party reasonably believes in good faith (or with respect to Discovery Material received from a Party in Interest, has been reasonably advised by such Party

in Interest) that: (1) such Discovery Material (a) constitutes or contains nonpublic proprietary or confidential technical, business, financial, personal or other information of a nature that can be protected under the Bankruptcy Rules or the Federal Rules, or (b) is subject to an Existing Confidentiality Agreement or other legally protected right of privacy; or (2) the Producing Party (a) is under a preexisting obligation to a third-party to treat such Discovery Material as confidential or (b) has in good faith been requested by a Party in Interest to so designate such Discovery Material on the grounds that such Party in Interest considers such Discovery Material to contain information that meets the standard for "CONFIDENTIAL" as set forth herein.

5.3 "HIGHLY CONFIDENTIAL" Material. A Producing Party may designate Discovery Material as "**HIGHLY CONFIDENTIAL**" if such Producing Party believes in good faith (or with respect to Discovery Material received from a Party in Interest, has been advised by such other person or entity in good faith) that such Discovery Material contains information that: (a) constitutes a trade secret under applicable law; or (b) contains such highly sensitive financial, personal, or business information that is of such a nature that disclosure to persons other than those identified in Paragraph 7.3 of this Order, as applicable, would ~~either (i)~~ present a risk of competitive injury, ~~or (ii) present a material risk to the Debtors' development of a plan of reorganization or emergence from the Chapter 11 Cases~~. Such HIGHLY CONFIDENTIAL material includes, but is not limited to, Discovery Material reflecting trade secrets; sensitive financial, personal or business information, including insurance policy information; any financial information provided by an individual Local Council originally designated as "Committee Advisor Only" but converted to "Highly Confidential" pursuant to Paragraph 7.4; or those portions of any material prepared by such Producing Party's legal advisors, industry advisors, financial advisors,

accounting advisors, experts or consultants (and their respective staff) that are retained by any Party that include or reveal Highly Confidential Discovery Material.[45]

5.4. "COMMITTEE ADVISOR ONLY" Material.  A Producing Party may designate the following material as "**COMMITTEE ADVISOR ONLY**": (a) unaggregated financial information ~~pertaining to~~provided by the Local Councils; and (b) any other Discovery Material that the Producing Party and Receiving Party agree to treat as "**COMMITTEE ADVISOR ONLY**" due to its proprietary or otherwise highly sensitive nature.[56] For the avoidance of doubt, any financial information provided by an individual Local Council, which pertains solely to such Local Council, shall qualify as "unaggregated financial information pertaining to the Local Councils."[7]

5.5 Manner Of Designating Discovery Material.  Designation in conformity with this Order requires the following:

(a) For Discovery Material produced, provided, or made available in documentary form (*e.g.*, paper or electronic documents or records, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix a legend to each page identifying such material as (i) "Subject to Protective Order," and (ii) and "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY." With regard to native files to which

---

[45] Information pertaining to abuse victims, minors, BSA employees, and BSA volunteers remain subject to the confidentiality requirements imposed by the Court. D.I. 9, 66.

[56] Notwithstanding the foregoing, and subject to paragraph 7.4 below, the Official Committees' Other Retained Professionals may provide Members of their respective Official Committee summaries of financial information pertaining to the Local Councils, provided such summaries aggregate the financial information and do not report the financial information of any particular Local Council.

[7] Nothing in paragraph 5.4 allows for the prospective sealing of any Discovery Material. Any Party or party in interest seeking to keep materials under seal once they are used in a filing or in open court must seek such relief in accordance with paragraphs 7.6–7.8 below, regardless of how such Discovery Material was designated at the time of production.

a legend cannot practicably be affixed, the Producing Party shall include the designation "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" in the file name. Notwithstanding any other provision of this Order, any Producing Party may redact personally identifying donor information from Discovery Materials that are produced, provided, or made available, regardless of whether such Discovery Materials are designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," "COMMITTEE ADVISOR ONLY," or none of the above, subject to the procedures for challenging redactions set forth in Section 6 of this Order.

(b) Except as provided in Paragraph 7.8, for testimony given in deposition or in other pretrial or trial proceedings, such testimony may be designated as ~~appropriate by~~Protected Material: (1) stating so orally on the record and requesting that the relevant portion(s) of testimony is so designated; or (2) providing written notice within seven (7) days of the Party's receipt of the final transcript from the court reporter that the relevant portion(s) of such transcript or recording of a deposition thereof is so designated, except in the event that a hearing on related issues is scheduled to occur within seven (7) days, such shorter period of time as practicable under the circumstances and to which all Parties consent (such consent not to be unreasonably withheld). Until expiration of the aforesaid designation period, as applicable, following receipt of the transcript by the Parties, all deposition transcripts and recordings shall be considered and treated as HIGHLY CONFIDENTIAL unless otherwise designated by counsel to any Party on the record at the deposition or in other pretrial or trial proceedings. Discovery Material previously designated as Protected Material that is marked as an exhibit during a deposition shall be treated as so designated at all times, regardless of whether the Discovery Material has been so marked by the court reporter.

12

(c) For Discovery Material produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY."    If possible, the Producing Party shall identify in an accompanying cover letter the specific data included in such media that is subject to the designation.

(d) For Discovery Material produced, provided, or made available through the secure data rooms maintained by the Debtors, including Discovery Material provided or made available voluntarily, that the Producing Party identify Protected Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" when providing such Protected Material to the data room's administrator(s). Such material will be affixed within the data rooms with a watermark identifying such material as (i) "Subject to Protective Order," and (ii) "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," consistent with the designation provided by the Producing Party.

5.6  Derivative Information. Extracts, summaries, compilations, and descriptions of Discovery Material and notes, electronic images or databases containing Discovery Material (**"Derivative Information"**) shall be treated as Protected Material in accordance with the provisions of this Order to the same extent as the Discovery Material or information from which such Derivative Information is made or derived.

5.7  Inadvertent Failures to Designate. The failure to designate particular Discovery Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" at the time of production shall not operate to waive a Producing Party's right to later designate such Discovery Material as Protected Material or later apply another designation

pursuant to this Order (**"Misdesignated Material"**). At such time, the Receiving Party or Parties shall make arrangements for the sequestration of the Misdesignated Material, and the Producing Party shall substitute, where appropriate, properly labeled copies of such Discovery Material. Upon receipt of replacement copies of such Misdesignated Material with the proper designation, the Receiving Party or Parties shall promptly take all reasonable steps to return or destroy all previously produced copies of such Misdesignated Material. If requested by the Producing Party, a Receiving Party shall verify in writing that it has taken all reasonable steps to return or destroy such Misdesignated Material. No Party shall be deemed to have violated this Order if, prior to notification of any later designation, such Discovery Material was disclosed or used in any manner consistent with its original designation but inconsistent with its later designation. Once such later designation has been made, however, any Discovery Material shall be treated in accordance with that later designation; provided, however, that if the material that was not designated has been, at the time of the later designation, previously publicly filed with the Bankruptcy Court, no Party shall be bound by such later designation except to the extent determined by the Bankruptcy Court upon motion of the Party that did not make the designation. Notwithstanding the foregoing, any Receiving Party reserves the right to challenge the new designation of any Misdesignated Material on any grounds pursuant to the terms of this Protective Order.

    5.8  Treatment of "Ineligible Volunteer Files" and Related Documents. As soon as practicable after the entry of this Protective Order, representatives of the Debtors ~~and the~~, TCC, UCC, FCR, Insurers, and Local Council Committee shall meet and confer in good faith to jointly determine the treatment of the documents known as the "Ineligible Volunteer Files" and related documents, including files that concern sexual abuse or similar sexually inappropriate behavior or conduct (collectively, the "**IV Files**").  If ~~the Debtors and the TCC~~these parties are unable to

14

agree to the treatment of the IV Files, then the parties shall consult with one or more of the mediators appointed by the Bankruptcy Court ("Plan Mediator") in order to reach a resolution. In the event the ~~parties~~Parties named in this paragraph cannot reach a resolution in consultation with the Plan Mediator, ~~the parties~~such Parties may seek the Court's intervention in accordance with Section 6.2 of this Order.

      5.9 Documents Produced in Prior or Pending Lawsuits. The BSA is and has been a defendant in lawsuits in which plaintiffs have asserted claims arising from or otherwise related to sexual and other abusive conduct (the "Prepetition Lawsuits"). During the course of the Prepetition Lawsuits, the BSA provided certain documents to the plaintiffs, voluntarily or otherwise (the "Prepetition Documents"). Certain of the Prepetition Documents are subject to Existing Confidentiality Agreements in the Prepetition Lawsuits in which they were produced (the "Prepetition Confidential Documents").[8] The plaintiffs in the Prepetition Lawsuits may share some or all of the Prepetition Confidential Documents in accordance with the following terms: (a) the BSA hereby consents to the delivery of Prepetition Confidential Documents to the Prepetition Distribution Group (as defined below) and agrees that the delivery of the Prepetition Confidential Documents to the Prepetition Distribution Group shall not constitute a breach of any Existing Confidentiality Agreement;[69] (b) except as set forth in this Paragraph, any Prepetition Confidential Documents delivered to the Prepetition Distribution Group shall remain subject to any applicable Existing Confidentiality Agreement in the Prepetition Lawsuit in which they were produce and

---

[8] For purposes of this paragraph, the Prepetition Documents excludes any IV Files, the treatment of which will be addressed pursuant to paragraph 5.8.

[69] The Prepetition Distribution Group acknowledges that the BSA is only consenting on its behalf and cannot provide consent on behalf of any Local Council, to the extent such consent is needed under the applicable Existing Confidentiality Agreement.

shall be treated in accordance with the terms set forth therein; (c) Counsel to the TCC shall provide to Debtors' Outside Counsel copies of any Prepetition Confidential Documents as soon as practicable after receipt; (d) the Prepetition Confidential Documents shall be shared only with the TCC's Counsel and Other Retained Professionals, the Members of the TCC, the UCC's Counsel and Other Retained Professionals, the FCR and the FCR's Counsel, the Local Council Committee's Counsel and Other Retained Professionals, and the Insurers' Outside Counsel and Other Retained Professionals (collectively, the "**Prepetition Distribution Group**"), and not with any other Party; and (e) The Prepetition Confidential Documents shall be used only for the purposes of these Chapter 11 Cases, subject to the limitation set forth in Section III, and may not be used in any Prepetition Lawsuit or other lawsuit, except for the Prepetition Lawsuit in which they were originally produced.

## VI. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1 <u>Timing of Challenge to Confidentiality Designations</u>. A Receiving Party shall not be obligated to challenge the propriety of a confidentiality designation at the time of its receipt of Discovery Material, and a failure to do so shall not preclude or be deemed to preclude a subsequent challenge thereto. The failure of any Party to challenge the designation by a Producing Party of Discovery Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" during any discovery period shall not be a waiver of that Party's right to object to the designation at a later time, including at trial.

6.2 <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process by providing written notice of each particular designation it is challenging and describing the basis for each such challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this

Paragraph. Where the challenge to the designation of Discovery Material produced by a Party or Party in Interest contains or may contain Common Interest Protected Material with another Party or Party in Interest, the Producing Party shall give prompt notice of the challenge to any Common Interest Party or Party in Interest with respect to the Common Interest Protected Material. Within five (5) Business Days of the tendering of the notice challenging the designation (or such shorter time as required under the circumstances and as consented to by the Parties with such consent not to be unreasonably withheld), the Parties (and/or Party in Interest, where applicable) shall attempt to resolve each challenge in good faith.[10] In conferring, the Challenging Party must explain the basis for its belief that the particular confidentiality designation was not proper (or, in the case of redactions as provided in Paragraph 5.4(a), is not reasonably necessary to protect the identity personally identifying information of the donor) and must give the Producing Party (and/or Party in Interest, where applicable) an opportunity to review the Protected Material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the designation. The Challenging Party and the Producing Party (and/or Party in Interest, where applicable) shall attempt in good faith to agree on a redacted version of the relevant Discovery Material that, as a result of such redactions, may receive a less restrictive designation pursuant to Paragraphs 5.2 or 5.3, as applicable. A Challenging Party may proceed to the next stage of the challenge process described in Paragraph 6.3 only if it has first engaged in this meet and confer process or establishes that the Producing Party (and/or Party in Interest, where applicable) is unwilling to participate in the meet-and-confer process in a timely manner. In the event the

---

[10] If the Challenging Party is seeking to challenge the designation made by a Local Council, the Challenging Party shall provide the written notice required by this Paragraph to the BSA and the Local Council Committee.  The BSA shall facilitate the relevant Local Council's involvement in the Meet and Confer described in this Paragraph.

circumstances require that a meet and confer occur more expeditiously (including in the event that a hearing on related issues is scheduled to occur within five (5) days, or the challenge is raised at a hearing or trial), the Parties will attempt to resolve the challenge in good faith as soon as possible after receiving notice of the challenge, and may immediately seek judicial intervention thereafter.

6.3 <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without Bankruptcy Court intervention in accordance with Paragraph 6.2, and if either the Challenging Party, Producing Party, or Party in Interest wishes to then seek Court intervention, such Parties shall, to the extent practicable, submit a joint letter or motion to the Bankruptcy Court pursuant to Local Rule 7026-1 (either, a "**Challenging Motion**") (i) reflecting each party's position, (ii) describing adherence to the meet-and-confer requirement of Paragraph 6.2, and (iii) attaching any relevant information (including documents or declarations) and filing relevant documents under seal. All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Bankruptcy Court rules on the Challenging Motion.

## VII. ACCESS TO AND USE OF DISCOVERY MATERIAL

7.1 <u>Use of Discovery Material</u>. A Receiving Party may use Discovery Material that is disclosed or produced by another Party solely for the purposes of the Chapter 11 Cases and any judicial proceedings relating to these Chapter 11 Cases (including any contested matters and any adversary proceedings commenced in connection with the Chapter 11 Cases), subject to the limitations set forth in Section III of this Order, and not for any other purpose, including any other litigation or judicial proceedings, or any business, competitive, governmental, commercial, or administrative purpose or function. In the case of use by the Local Council Committee and Official Committees, their Members, Outside Counsel, and advisors that are retained by the Local Council Committee, Official Committee or their Outside Counsel, in each case in their capacity as such, Protected Material may be used only in a manner consistent with the applicable Committee's duties and responsibilities. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Debtors emerge from the Chapter 11 Cases or the Chapter 11 Cases are dismissed, a Receiving Party must comply with the provisions of Section XIII below (FINAL DISPOSITION). Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the Bankruptcy Court or permitted in writing by the Producing Party, a Receiving Party may disclose any information or items designated "CONFIDENTIAL" only to:

(a) to the officers, directors, employees, and Counsel of the Receiving Party;

(b) each Official Committee, each Member of each Official Committee, and the Official Committee's Outside Counsel;

19

(c) to the Debtors and their Counsel;

(d) to the Local Council Committee, the Members of the Local Council Committee, Counsel to each of the Local Council Committee's Members, and the Local Council Committee's Counsel, provided that disclosure is reasonably necessary for purposes of these Chapter 11 Cases;

(e) the FCR and the FCR's Counsel;

(f) the Insurers and their Counsel;

(g) the Insurers' respective reinsurers, regulators, and other entities to whom disclosure is required by law, and for whom the Insurers in good faith believe disclosure is required, provided that prior to such disclosure the disclosing Insurer shall provide the recipient with a copy of this Protective Order and inform the recipient that the Documents being disclosed are confidential pursuant to the terms of this Protective Order;

(gh) Other Retained Professionals, provided that disclosure is reasonably necessary for purposes of these Chapter 11 Cases;

(h) the Office of the United States Trustee;

(i) the Bankruptcy Court or any court to which an appeal is taken, and their clerk and personnel;

(ji) court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors, provided that disclosure is reasonably necessary for the purposes of the Chapter 11 Cases and each such person assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A;complies with the limitations on the disclosure of such material set forth in Local Rule 9018-1(f);

(kj) for purposes of witness preparation, any deponent or witness who was noticed for a deposition, or is on a witness list for hearing or trial, in preparation for his or her noticed

deposition, hearing, or trial testimony where such Protected Material is determined by counsel for a Party in good faith to be necessary to the anticipated subject matter of testimony; provided, however, that such person (1) ~~assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A, (2) are~~is only provided such Protected Material in connection with preparation for the anticipated testimony, and (~~3~~2) shall not be permitted to retain copies of such Protected Material;

(~~l~~k) Deponents and witnesses where counsel has a good faith basis for believing that the witness would have had knowledge of the contents of the Protected Material in the course of fulfilling his or her responsibilities or has information that directly bears upon the Protected Material;

(~~m~~l) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(~~n~~m) any adverse witness during the course of a deposition where counsel questioning the witness reasonably and in good faith believes that questioning the witness regarding the document is necessary; ~~and~~

(n) a law enforcement agency for the purpose of making a criminal referral or complaint; and

(o) any other person or entity with respect to whom the Producing Party (and Party in Interest, if applicable) may consent in writing and that also has assented to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A.

A request by a Receiving Party under this Paragraph 7.2(o) must be in writing and reasonably specify the Discovery Materials that it seeks to disclose, the "person or entity" to

which it seeks to disclose this Discovery Material, and the reason it seeks to disclose these Discovery Materials. The Producing Party shall use reasonable best efforts to provide a response in three (3) Business Days from receipt of a written request. The parties shall also make reasonable efforts to meet and confer regarding any disagreement pursuant to the process set forth in Paragraph 6.2.  If a request pursuant to Paragraph 7.2(~~n~~o) is denied and efforts to meet and confer do not yield a resolution that is satisfactory to the Requesting Party and Producing Party, the Requesting Party may seek the Court's intervention, as provided in Paragraph 6.3. All Parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Bankruptcy Court rules on the Challenge Motion. Information that constitutes or contains Common Interest Protected Material is not subject to disclosure under this Paragraph 7.2(o).

7.3 Disclosure of "HIGHLY CONFIDENTIAL" Information or Items. Discovery Material designated "HIGHLY CONFIDENTIAL" may only be disclosed to:

(a) the Debtors, and the Debtors' Counsel and Other Retained Professionals,

(b) Outside Counsel and Other Retained Professionals retained by any Official Committee or the Local Council Committee,

(c)  Counsel to Members of the Local Council Committee or an Official Committee,

(d) Outside Counsel and Other Retained Professionals retained by the Insurers, as well as in-house Counsel and non-legal professionals working on these Chapter 11 Cases,

 (e) the Insurers' respective reinsurers, regulators, and other entities to whom disclosure is required by law, and for whom the Insurers in good faith believe disclosure is required, provided that prior to such disclosure the disclosing Insurer shall provide the recipient with a copy of this

Protective Order and inform the recipient that the Documents being disclosed are confidential pursuant to the terms of this Protective Order;

(ef) the FCR and the FCR's Counsel, and

(fg) the persons or entities identified in Paragraphs 7.2(hi)-(o).

For the avoidance of doubt, Discovery Material designated "HIGHLY CONFIDENTIAL" may not be disclosed to the Members of the Local Council Committee or an Official Committee or to any other person or entity not listed in this Paragraph 7.3.

Unless otherwise ordered by the Bankruptcy Court, a Receiving Party shall not disclose any information or item designated "HIGHLY CONFIDENTIAL" to any other person or entity without the prior written consent of the Producing Party; provided, however, that (1) this non-disclosure provision shall not be applicable to any HIGHLY CONFIDENTIAL information that specifically has previously been publicly disclosed without restriction by the Producing Party (excluding disclosures by the Producing Party to their respective legal advisors, auditors, or other professional advisors, or disclosures required by law or judicial process), (2) the persons receiving HIGHLY CONFIDENTIAL information shall be permitted to discuss such information with only those parties listed in Paragraph 7.3, and with Members of the Local Council Committee or any Official Committee, but only to the extent necessary to fulfill their statutory and/or fiduciary duties.

7.4    Disclosure of "COMMITTEE ADVISOR ONLY" Information or Items. Discovery Material designated "COMMITTEE ADVISOR ONLY" may only be disclosed to:

(a) the Debtors, and the Debtors' Counsel and advisorsOther Retained Professionals ,

(b) Outside Counsel and Other Retained Professionals retained by an Official Committee, the Local Council Committee, or the Insurers, as well as Insurers' in-house Counsel and non-legal professionals working on this chapter 11 case,

(c) the Insurers' respective reinsurers, regulators, and other entities to whom disclosure is required by law, and for whom the Insurers in good faith believe disclosure is required, provided that prior to such disclosure the disclosing Insurer shall provide the recipient with a copy of this Protective Order and inform the recipient that the Documents being disclosed are confidential pursuant to the terms of this Protective Order;

(ed) the FCR's Counsel and Other Retained Professionals, and

(e) a law enforcement agency for the purpose of making a criminal referral or complaint.

For the avoidance of doubt, Discovery Material designated "COMMITTEE ADVISOR ONLY" may not be disclosed to (i) Members of the Local Council Committee, (ii) Members of an Official Committee, (iii) Counsel to Members of the Local Council Committee (other than the Local Council Committee's Outside Counsel), or (iv) Counsel to Members of an Official Committee (other than such Official Committee's Outside Counsel), or (v) any other person or entity not listed in this Paragraph.

Unless otherwise ordered by the Bankruptcy Court, a Receiving Party shall not disclose any information or item designated "COMMITTEE ADVISOR ONLY" to any other person or entity without the prior written consent of the Producing Party; provided, however, that (1) this non-disclosure provision shall not be applicable to any COMMITTEE ADVISOR ONLY information that specifically has previously been publicly disclosed without restriction by the Producing Party (excluding disclosures by the Producing Party to their respective legal advisors, auditors, or other professional advisors, or disclosures required by law or judicial process), (2) the

persons receiving COMMITTEE ADVISOR ONLY information shall be permitted to discuss such information with only those parties listed in Paragraph 7.4, and with Members of the Local Council Committee or an Official Committee or the FCR, but only to the extent the Producing Party approves such discussions in advance.

Notwithstanding the foregoing, all Protected Material containing unaggregated financial information pertaining to Local Councils designated as "COMMITTEE ADVISOR ONLY" shall be re-designated as "HIGHLY CONFIDENTIAL" sixty (60) days after the date of production to any Official Committee or the FCR, unless otherwise agreed to by the Producing Party and the Receiving Party or directed by a Plan Mediator. The Parties agree that such unaggregated financial information pertaining to Local Councils qualifies as "HIGHLY CONFIDENTIAL" under this Order. The relevant Producing Party shall provide to all relevant Receiving Parties new copies of Discovery Material that have been re-designated pursuant to this provision with revised watermarks or other appropriate confidentiality designations for "HIGHLY CONFIDENTIAL" Discovery Material as provided in Paragraph 5.5.

7.5 <u>Designations as to Specific Parties in Interest and Committee Members</u>. If a Producing Party determines in good faith that the disclosure of Discovery Material to a particular person or entity presents a reasonable risk of competitive injury or a material risk to the Debtors' plan of reorganization or emergence from the Chapter 11 Cases, the Producing Party may limit its disclosure of such Discovery Material (the "**Sequestered Material**") to exclude such person or entity (the "**Sequestered Party**"). The Producing Party shall, either at the time the Sequestered Material is disclosed to a Receiving Party or as soon thereafter as practicable, inform such Receiving Party that the Sequestered Material is not to be disclosed to a Sequestered Party.  Any

25

Party or a party in interest may challenge such sequestration pursuant to the process set forth in Paragraphs 6.2 and 6.3 of this Order.

7.6 Filing or Submitting Protected Material To Court. ~~Without written permission from the Producing Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record any~~Notwithstanding any other provision of this Order to the contrary, any document containing Protected Material ~~A Party that seeks~~ ~~to file any Protected Material~~ that is submitted to or filed with the Bankruptcy Court must ~~file such Protected Material be filed~~ under seal as a restricted document in accordance with ~~the Federal Rules, the Bankruptcy Rules, the Local Rules, and the individual practice rules of the Bankruptcy Court~~Local Rule 9018-1 and any applicable Chambers Procedures, or as otherwise ordered by the Bankruptcy Court. All Protected Material for which a Party or Party in Interest is requesting permission to file under seal ("Sealed Documents") pursuant to this Order shall be filed in unredacted form in conformity with the sealing procedures set by the Clerk of the Bankruptcy Court. Such Sealed Documents shall be released by the Clerk of the Bankruptcy Court only upon further order of the Bankruptcy Court.

Any Party or Party in Interest that files a motion to file under seal with the Bankruptcy Court shall provide counsel to the U.S. Trustee with an unredacted copy of all documents sought to be sealed, pursuant to section 107(c)(3)(A) of the Bankruptcy Code. If a motion to seal has not been ruled upon and the moving party withdraws the motion to seal, the Sealed Documents subject to the motion shall be returned to the filer thereof unless otherwise expressly agreed by the filer in writing, provided that such Sealed Documents need not be returned to the filer thereof if the Sealed Documents are later filed as public documents.

The mere inclusion in a paper or pleading of factual information derived from documents or things designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE

26

ADVISOR ONLY," will not require that paper or pleading to be filed under seal if the Parties and (and any Party in Interest, as applicable) agree in writing prior to filing the paper or pleading that the factual information actually contained in that paper or pleading would not itself be properly subject to such designation. If the Parties cannot resolve a dispute regarding the inclusion in a paper or pleading of facts from documents or things marked "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," the procedures of this paragraph shall be followed prior to the filing of any such paper or pleading.

Nothing in this Paragraph, however, shall preclude a Party from filing Discovery Material that the Party itself has designated as its own Protected Material in unredacted form and without requesting sealing.

7.7 In certain instances, materials submitted to the Bankruptcy Court may be designated Protected Material by a Producing Party or identified as Protected Material by a Party in Interest, and the filing Party may disagree or have no position with respect to whether sealing is appropriate. In such instances, the filing Party shall comply with the procedures in Paragraph 7.6, but shall indicate in its motion for permission to file under seal that the confidentiality designation was made by the Producing Party (and/or asserted by a Party in Interest, where applicable). Such Producing Party (and/or Party in Interest, where applicable) shall also be served with copies of the motion and the unredacted materials submitted to the Bankruptcy Court. The Producing Party (and any Parties in Interest, where applicable) will have ten (10) days thereafter to submit a motion specifying the portions of the Discovery Material to be sealed and setting forth the reasons why sealing is appropriate under the circumstances, as contemplated by the Local Rules and the individual practice rules of the Bankruptcy Court, or otherwise consenting that the Discovery Material need not be sealed. If the Producing Party or Party in Interest fails to submit a motion as

described above, such party shall be deemed to have withdrawn its designation of the Protected Material as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," as applicable.

7.8 All Discovery Material for which a Party is requesting permission to file under seal (**"Sealed Documents"**) pursuant to this Order, shall be filed in unredacted form in conformity with the sealing procedures set by the Clerk of the Bankruptcy Court. Such Sealed Documents shall be released by the Clerk of the Bankruptcy Court only upon further order of the Bankruptcy Court.

7.97.8 Use of Protected Material in Open Court. The limitations on disclosure in this Order shall not apply to any Discovery Material offered or otherwise used by any Party at trial or any hearing held in open court except as provided in this Paragraph. As part of any pretrial conference or any meet and confer regarding the use of exhibits in any evidentiary hearing, counsel for any Party who desires to offer or use such Protected Material at trial or any hearing to be held in open court shall meet and confer in good faith with the Producing Party (and/or Party in Interest, as applicable) together with any other Parties who have expressed interest in participating in such meet and confer to discuss ways to redact the Protected Material so that the material may be offered or otherwise used by any party, in accordance with the provisions of the Bankruptcy Code and Bankruptcy Rules. In the case of Protected Material that is, that contains, or that may contain Common Interest Protected Material, such meet and confer shall include any Common Interest Party with respect to such Common Interest Protected Material. If the Parties are unable to resolve a dispute related to such Protected Material, then the Party who desires to offer or use such Protected Material at trial or any hearing to be held in open court bears the burden of requesting relief from the Bankruptcy Court shall comply with Paragraph 7.6 above

and, in the absence of ~~such~~ relief from the Bankruptcy Court, such Protected Material shall not be offered or otherwise used at trial or any hearing held in open court. Notwithstanding anything to the contrary herein, the Parties reserve their respective rights to argue that this Protective Order will be revisited by the Bankruptcy Court and any other court hearing an appeal from any order issued by the Bankruptcy Court prior to any trial given the standard for redacting or sealing information to be used in a trial generally differs from the standard for redacting or sealing information in pre-trial proceedings.

~~7.10~~7.9 <u>Removal of Sealed Records</u>. Sealed records that have been filed may be removed by the Producing Party (i) within 90 days after a final decision disposing of the contested matter, adversary proceeding, or other litigation is rendered if no appeal is taken, or (ii) if an appeal is taken, within thirty (30) days after final disposition of the appeal.

## VIII.  <u>PROTECTED MATERIAL DEMANDED, SUBPOENAED FOR DISCLOSURE, ACTUALLY DISCLOSED, OR ORDERED PRODUCED IN OTHER PROCEEDINGS</u>

8.1. If a Party is served with a subpoena or a court order issued in other proceedings <u>outside of these Chapter 11 Cases</u> that compels disclosure of any Protected Material, that Party must:

(a)     promptly notify in writing the Producing Party and any Party in Interest that has previously designated such information as Protected Material or that has asserted a Privilege or Protection with respect to such Protected Material. Such notification shall include a copy of the subpoena ~~or,~~ court order, or request;

(b)     promptly notify in writing the party who issued the subpoena ~~in the other litigation~~or request that some or all of the material covered by the subpoena ~~or,~~ order, or request is subject to this Order. Such notification shall include a copy of this Order; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the Producing Party (and/or Party in Interest or Party asserting a Privilege or Protection, where applicable) whose Protected Material may be affected.

8.2. If any With the exception of the U.S. Trustee, if any person or entity who is not a Party to this Order requests or demands any Protected Material from any Party (including any Party's counsel or Representative), the Party or Representative receiving such request or demand shall, if so entitled and permitted given the nature of the legal process at issue, promptly notify the other Parties and provide copies of any writings or documents relating to such request or demand. If any Party wishes to protect the confidentiality of any Protected Material in response to the demand or request, then the recipient of the demand or request shall, to the extent reasonably practicable and legally permissible, cooperate with such Party to undertake the necessary steps to assert such applicable privileges, immunities, and rights to protect the confidentiality of the Shared Information. The Party wishing to assert the applicable privileges, immunities, and rights shall bear all costs associated with doing so, including the costs incurred by the recipient in taking any necessary steps. Protected Material.

8.3 If the Producing Party or a, Party in Interest, or a Party asserting a Privilege or Protection over Protected Material timely seeks a protective order regarding the Protected Material that is requested or demanded as described in paragraphs 8.1 and 8.2 above, the Party served with the subpoena or, court order, or request shall not produce any Protected Material before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Producing Party's (and/or, where applicable, the Party in Interest's) permission, or otherwise reasonably believes it is legally compelled to do so. The Producing Party shall bear its own costs and expenses when seeking protection in that Court of its confidential material.

30

Nothing in this Order should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another Court.

8.4 Nothing in this Order authorizes a Producing Party to disclose to any Official Committee, the FCR, or any other Party or entity, or their Other Retained Professionals, any Common Interest Protected Material. If a Producing Party intends to produce information that may constitute or contain Common Interest Protected Material (which may include information that was prepared by, or delivered by the Producing Party to, counsel retained to represent the Producing Party in filed or threatened tort or abuse litigation), the Producing Party will provide advance notice by email or other writing to any Common Interest Party with respect to the Common Interest Protected Material prior to production by the Producing Party of such information under this Protective Order. The notice shall attach the documents or information sought to be produced. Such Common Interest Party will have three (3) business days after receipt of the Producing Party's notice to object by email or other writing to the Producing Party's proposed production and, if such objection is delivered to the Producing Party within the three (3) day period, then the Producing Party and the objecting Common Interest Party will confer in good faith regarding the objection and proposed production. In the event that an agreement cannot be reached between the Producing Party and the objecting Common Interest Party, then the Producing Party will not produce the subject documents or information and the Bankruptcy Court will determine whether the documents constitute or contain Common Interest Protected Material, in which case such documents will not be produced unless ordered otherwise by the Bankruptcy Court.

## IX. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

9.1 If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or entity or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Producing Party, and any Party in Interest that has designated the information as Protected Material, of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, and (c) inform the person(s) or entity(ies) to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person(s) or entity(ies) assent to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A. Such disclosure shall be subject to Local Rule 9018-1(f) and limited to members and employees of the law firm representing the receiving party and such other parties as to which the Parties agree. If a Producing Party receives notice pursuant to this Article IX that the disclosed Protected Material contains Common Interest Protected Material, the Producing Party shall promptly give notice to each Common Interest Party with respect to the Common Interest Protected Material. Disclosure of Protected Material other than in accordance with the terms of this Order may subject the disclosing person to such sanctions and remedies as the Bankruptcy Court may deem appropriate.

## X. NON-WAIVER OF PRIVILEGE; INADVERTENT PRODUCTION OF PRIVILEGED DISCOVERY MATERIAL

10.1 The Parties agree that, pursuant to this Order and under Fed. R. Evid. 502(d), the inadvertent or unintentional disclosure of Privileged Material, or Discovery Material supplied under this Order, regardless of whether the information was designated as Protected Material or was asserted to contain Privileged Material at the time of disclosure, shall not be deemed a waiver

in whole or in part of any privilege or immunity, either as to the specific information disclosed or as to any other information relating thereto or to related subject matter if, upon learning of the inadvertent production, the Producing Party (or Party asserting a claim of Privilege or Protection) notifies the Receiving Party in writing of the information of the claims or privileges or protections and the basis for it. Upon discovery of the inadvertent error, the Producing Party may request the return of any document inadvertently produced, and the Receiving Party shall return or destroy the document and any copies within five business days of such request; provided, however, that the Receiving Party shall have the right to challenge such clawback as set forth in the subsequent paragraph (and may retain a copy of any documents or information subject to challenge to do so). The Parties shall cooperate to preserve any applicable ~~privilege~~Privilege or Protection or immunity for that disclosed material, including retrieval of all copies disseminated to any other recipient. For the avoidance of doubt, this Protective Order shall be interpreted to provide the maximum protection allowed to each Producing Party by Fed. R. Evid. 502(d).

10.2 In response to any disclosure of Privileged Material to a party outside of the privilege, the Producing Party immediately shall notify any Common Interest Party with respect to such Privileged Material. The Producing Party's notification shall include copies of the disclosed Privileged Material and all communications confirming that any Receiving Party has returned and destroyed all such Privileged Material.

10.3 Nothing in this Protective Order shall prevent any Party from challenging or objecting to a claim of privilege, immunity, ~~or~~ work-product protection or common interest. Any party wishing to challenge or object to any such claim of ~~privilege, immunity, or work-product~~ protection shall notify the Producing Party in writing of such challenge, and the parties shall meet-and-confer in an effort to resolve such disagreement concerning the privilege or work-product

claim with respect to such Discovery Material. In the event of a challenge to a Privilege or Protection as to any Privileged Material that is or contains Common Interest Protected Material, the Producing Party shall promptly notify the Common Interest Party of such challenge. A Receiving Party shall not use any Discovery Material that is subject to a claim of privilege or, immunity, or protection under this section for any purpose, includingother than to dispute the claim of privilege or, immunity, or protection until the Court has ruled on such dispute (if any). If a Receiving Party files a motion disputing the claim of privilege or, immunity, or protection following a meet and confer, the applicable Producing Party bears the burden of establishing the attorney-client privilege, attorney work product protection, common interest privilegecommon interest, or any other privilege, immunity, or protection from production or disclosure of any such Discovery Material and may oppose such motion, including on the grounds that inadvertent disclosure does not waive privilege.

10.4 No Party or its counsel shall have the right to waive the attorney-client, work product, joint defense, common interest privilege, protection for Common Interest Protected Material, or any other privilege, protection, or defense that might be applicable to any Discovery Material it has received pursuant to this Order. Each Party and its counsel, and each Producing Party and its counsel, shall retain the sole right to waive its own privileges as to any Discovery Material originated solely from it or its Counsel or other advisors, provided prior notice is given to any other Party and/or Parties that may have a shared or joint privilege in such Discovery Material that arose prior to the date and independent of this Order.

10.5 Nothing in this Order shall limit the Court's right or any Party's right to request an in camera review of any Discovery Material that may be subject to a claim of privilege or other immunity.

## XI. DEPOSITIONS

11.1 Presence Of Persons During Deposition Testimony. Anyone who attends a deposition is subject to the provisions of this Order with respect to such deposition. When Protected Material is elicited during a deposition, persons not entitled to receive such information under the terms of this Order shall, upon request, be excluded from the portion of the deposition so designated.

11.211.1 Responsibilities And Obligations Of Court Reporters. In the event that testimony is designated as Protected Material, the court reporter, who shall first have agreed to abide by the terms of this Paragraph, shall be instructed to include on the cover page of each such transcript the legend, "This transcript portion contains information subject to a Protective Order and shall be used only in accordance therewith," and each page of the transcript shall include the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," as appropriate. If the deposition is recorded, the recording shall also be subject to the same level of confidentiality as the transcript and include the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY" if any portion of the transcript itself is so designated.

11.2 Use of Deposition Testimony in Court: Any Party or party in interest seeking to use deposition testimony designated as Protected Material in the Bankruptcy Court must proceed in accordance with Paragraph 7.6.

## XII. MISCELLANEOUS

12.1 <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Bankruptcy Court in the future, including the application of this Order to any particular contested matter or adversary proceeding or any determination made by a Plan Mediator with respect to Discovery Material.

12.2 <u>Right to Assert Other Objections</u>. Nothing in this Order waives any right by a Party that it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Order. Nothing in this Order shall be deemed a waiver or relinquishment by any Party or non-Party of any objection, including but not limited to, any objection concerning the confidentiality or proprietary nature of any documents, information, or data requested by a Party, any right to object to a discovery request, or any right to object to the admissibility of evidence on any ground, or to seek relief from the Court from any provision of this Order by application on notice on any grounds.

12.3 <u>Continuing Applicability of Order</u>. The provisions of this Order shall survive the Debtors' emergence from Bankruptcy or the dismissal of the Chapter 11 Cases for any retained Discovery Material. The Debtors' emergence from Bankruptcy or the dismissal of the Chapter 11 Cases shall not relieve the Parties from their responsibility to maintain the confidentiality of Discovery Material pursuant to this Order, and the Bankruptcy Court shall retain jurisdiction to enforce the terms of this Order.

12.4 <u>Amendment or Assignment of Order</u>. This Order may be amended only by an instrument in writing signed by the Debtors, the Local Council Committee, the TCC, the UCC, the FCR, the Insurers, and any other Official Committee that assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as

Exhibit A, with approval by the Bankruptcy Court; provided, however, notice of any such amendment shall be given to all other Parties subject to this Order and such other Parties shall have ten (10) Business Days to affirmatively opt-out of such amendment by providing written notice to the Debtors, the Local Council Committee, the TCC, the UCC, the FCR, the Insurers, and any other Official Committee that assents to be bound by this Order and upon exercising such opt-out then such Party shall be excluded from further access to Discovery Material and shall only be bound by the obligations of such Order prior to the amendment. Nothing herein shall preclude a Party from applying at any time (including, without limitation, after the conclusion of the Chapter 11 Cases) to the Bankruptcy Court for relief from (including, without limitation termination of) any or all of the provisions of this Order. The Debtors and the Party seeking to modify or terminate the Order shall meet and confer in good faith to reach an agreement on any issues in dispute concerning the meaning, application, or interpretation of this Order prior to any application to the Bankruptcy Court for resolution of such dispute. A Producing Party and a Receiving Party may agree to modify this Order as it applies to a particular production or a particular proceeding in the Chapter 11 Cases as between such Producing Party and such Receiving Party only with ten (10) Business Days prior notice to the Debtors, the Local Council Committee, the TCC, the UCC, the FCR, the Insurers, and any other Official Committee that assents to be bound by this Order by executing a copy of the "Acknowledgment and Agreement to Be Bound" annexed hereto as Exhibit A. For the avoidance of doubt, no such Producing Party or such Receiving Party can, through an agreement of the type described in the previous sentence, modify their obligations with respect to Discovery Materials designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "COMMITTEE ADVISOR ONLY," or as to Privileged Material, by a Party that has not consented to such modification.

12.5 <u>Use of Discovery Material by Producing Party</u>. Nothing in this Order affects the right of any Producing Party to use or disclose its own Discovery Material in any way. Such disclosure will not waive the protections of this Order and will not otherwise entitle other Parties or their attorneys to use or disclose such Discovery Material in violation of this Order. Notwithstanding the foregoing, any Party that publicly disseminates its own Discovery Material, including in a filing not sealed with the Court or in open court may not subsequently restrict other Parties' public use of the same Discovery Material on grounds that such material constitutes Protected Material. Nothing in this Order affects the right of any Producing Party or Party in Interest under applicable law to claw back Discovery Material.

12.6 <u>Obligations of Parties</u>. Nothing herein shall relieve a Party of its obligations under the Federal Rules, Bankruptcy Rules, Local Rules, any existing joint defense or common interest agreements, or under any future stipulations and orders, regarding the production of documents or the making of timely responses to Discovery Requests in connection with any dispute or the Chapter 11 Cases.

12.7 <u>Advice of Counsel</u>. Nothing herein shall prevent or otherwise restrict counsel from rendering advice to their clients in connection with the Chapter 11 Cases and, in the course thereof, relying on examination of Protected Material; <u>provided</u>, <u>however</u>, that in rendering such advice and otherwise communicating with such client, counsel shall not make specific disclosure of any information in any manner that is inconsistent with the restrictions or procedures set forth herein.

12.8 <u>Enforcement</u>. The provisions of this Order constitute an Order of this Court and violations of the provisions of this Order are subject to enforcement and the imposition of legal sanctions in the same manner as any other Order of the Bankruptcy Court. Any Producing Party

(including, for the avoidance of doubt, any Local Council of the Boy Scouts of America that provides information that is stored in the secure data rooms maintained by the Debtors), regardless of whether such Producing Party has executed a copy of the Acknowledgement and Agreement to be Bound, is an intended third-party beneficiary of and may seek to enforce this Order.

12.9    Attorney-Client Privileged and Attorney Work Product Immunity. Nothing herein shall be deemed to waive any applicable privilege or immunity, or to limit the relief available to any Producing Party. Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, work product immunity, or any other privilege or immunity.

12.10    Reservation of Rights to Seek Documents. Nothing in this Order shall prevent or limit any right of a Member of an Official Committee (or its Counsel) or the FCR (or his Counsel) to seek discovery or compel disclosure of any information from any Producing Party under applicable laws or rules in its individual capacity, including through subpoena, formal discovery or other process, even if such materials were previously disclosed or released to such Members or FCR as Confidential Information or Highly Confidential Information, or prevent or limit any right of the Producing Party to object to any such subpoena, formal discovery or other process, other than on the grounds that such materials were previously disclosed to such Member in their capacity as such, or the FCR in his capacity as such, pursuant to this Order.

12.11 No Modification of Insurance Policies, Rights, or Obligations. Nothing in this Order shall be deemed to modify the rights or obligations under any of Debtors' insurance policies that any Insurer issued to Debtors, including the Parties' rights and obligations concerning Debtors' pre- or post-petition production of Documents.

12.11 12.12 Pension Benefit Guaranty Corporation (the "**PBGC**"). Notwithstanding any other terms or provisions in this Order, PBGC may disclose Discovery Material to the executive branch of the United States, Congress or any committee, joint committee, or subcommittee thereof, the Comptroller General, PBGC and PBGC Board Of Directors, officials, advisors, consultants, and representatives who have a need to know the information as part of their job responsibilities ("**Officials**"). PBGC will inform all Officials having access to such Discovery Material that such information is subject to this Order. Notwithstanding any other terms or provisions in this Protective Order, PBGC may disclose information about the amount of underfunding in any pension plan covered by Title IV of ERISA, including but not limited to information about guaranteed benefit liabilities, unfunded benefit liabilities, plan assets and funding ratios, whether or not this information is contained in or derived from Discovery Material.

## XIII. FINAL DISPOSITION

Each Receiving Party will use commercially reasonable efforts to return all Protected Material to the Producing Party or destroy such material (unless such Protected Material has been offered into evidence, filed without restriction, or otherwise been made publicly available without a violation of the terms of the Protective Order) within, as applicable, either (A) 90 days of the request of a Producing Party and/or Party in Interest made after the closing of the Chapter 11 Cases or (B) 30 days of the request of a Producing Party and/or Party in Interest made after the dismissal of the Chapter 11 Cases, or in either case as soon as reasonably practicable after such request, or such later time as the Producing Party and/or Party in Interest may agree in writing. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, Derivative Information, and any other format reproducing or capturing any of the Protected Material.  As soon as practicable following a request from the Producing Party, each

applicable Receiving Party shall certify in writing (which may be by e-mail) that, to the best of such Receiving Party's knowledge after reasonable inquiry, all Discovery Material containing Protected Information has either been returned to the Producing Party or destroyed. The Receiving Party shall not be required to locate, isolate, and return or destroy e-mails (including attachments to e-mails) that may include Protected Information contained in deposition transcripts or drafts or final expert reports.

Notwithstanding the above requirements to return or destroy Protected Information, any applicable Receiving Party, Counsel, and Other Retained Professionals may retain (i) such Discovery Material as it reasonably believes (and at all times continues to reasonably believe) are required in order to satisfy applicable law, ethical, or professional obligations, (ii) any analyses, abstracts, studies, summaries, or reports prepared by the Receiving Party or its Counsel or Other Retained Professionals based on, containing, or reflecting Protected Information, (iii) any portions of the Protected Information that are publicly available through no wrongful act or violation of this Protective Order on the part of the entity or the individual who caused the information to become generally available to the public through publication or otherwise, and (iv) any portions of Protected Information that it reasonably believes cannot be practicably destroyed (such as oral communications, e-mail back-up records, bank-up server tapes, and any records of similar such automated record-keeping or other retention systems). Any retained Protected Information shall continue to be protected under this Protective Order.

**\*\*END OF ORDER\*\***

*CONSENTED TO BY:*

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
William E. Curtin
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:   (212) 839-5599

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
William A. Evanoff
Matthew E. Linder (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:   (312) 853-7036

– and –

MORRIS, NICHOLS, ARSHT & TUNNELL
LLP
By: _____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Facsimile:   (302) 425-4664

*Proposed Attorneys for the BSA*

– and –

PACHULSKI STANG ZIEHL & JONES LLP
By:_____
James I. Stang (admitted *pro hac vice*)
Robert B. Orgel (admitted *pro hac vice*)
James E. O'Neill
John A. Morris (admitted *pro hac vice*)
John W. Lucas (admitted *pro hac vice*)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 1999-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
jstang@pszjlaw.com
rorgel@pszjlaw.com
joneill@pszjlaw.com
jmorris@pszjlaw.com
jlucas@pszjlaw.com

*Attorneys for the Official Tort Claimants'*
*Committee*

REED SMITH LLP
By: _____
Kurt F. Gwynne (No. 3951)
Katelin A. Morales (No. 6683)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

– and –

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Thomas Moers Mayer, Esquire
Rachael Ringer, Esquire
Jennifer Sharrett, Esquire
Megan Wasson, Esquire
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Attorneys for the Official Committee of Unsecured*
*Creditors*
– and –

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
By: _____

Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
          eharron@ycst.com
          szieg@ycst.com
          skohut@ycst.com

*Proposed Counsel to the Future Claimants'
Representative*

DLA PIPER, LLP (US)

By: _____
R. Craig Martin (No. 5032)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801-1147
Telephone:  (302) 468-5655
Facsimile:  (302) 778-7834
Email:  craig.martin@dlapiper.com

WACHTELL, LIPTON, ROSEN & KATZ
Richard G. Mason (admitted pro hac vice)
Douglas K. Mayer (admitted pro hac vice)
Joseph C. Celentino (admitted pro hac vice)
51 W. 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  RGMason@wlrk.com
          DKMayer@wlrk.com
          JCCelentino@wlrk.com

*Attorneys for the Ad Hoc Committee of Local
Councils of the Boy Scouts of America*

## **EXHIBIT A**

### ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____

_____ [print or type full address], declare under penalty of perjury that I have read

in its entirety and understand the *Confidentiality and Protective Order* that was issued by the

United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on

_____ in the chapter 11 cases of the Boy Scouts of America and

Delaware BSA, LLC [Case No. 20-10343 (LSS), Docket No. ____] (the "**Order**"). I agree to

comply with and to be bound by all the terms of the Order and I understand and acknowledge that

failure to so comply could expose me to sanctions and punishment in the nature of contempt. I

solemnly promise that I will not disclose in any manner any information or item that is subject to

the Order to any person or entity except in strict compliance with the provisions of the Order. I

further agree to submit to the jurisdiction of the Bankruptcy Court solely for the purpose of

enforcing the terms of this Confidentiality and Protective Order, even if such enforcement

proceedings occur after termination of the Chapter 11 Cases (as defined in the Order).


Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

## EXHIBIT B

1.  The Chubb Group of Insurance Companies, including but not limited to Insurance Company of North America

2.  The Hartford Companies, including but not limited to Hartford Accident and Indemnity Company and First State Insurance Company

3.  Allianz Global Risks US Insurance Company

4.  National Surety Corporation

5.  Liberty Mutual Insurance Company

6.  American International Group, Inc. entities, including National Union Fire Insurance Company of Pittsburgh, PA; Lexington Insurance Company; Landmark Insurance Company; The Insurance Company of the State of Pennsylvania

## **Exhibit C**

*In re Imerys Talc America*, **Case No. 19-10289** (LSS)
**Order Approving Stipulated Protective Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------- x

In re:                                        :  Chapter 11
                                              :
IMERYS TALC AMERICA, Inc., et al.,[1]        :  Case No. 19-10289 (LSS)
                                              :
                     Debtors.                 :  (Jointly Administered)
                                              :
                                              :  **Re: Docket No. 1081**

--------------------------------------------------------------- x

## ORDER APPROVING
## STIPULATED PROTECTIVE ORDER

Upon consideration of the *Joint Motion for Entry of an Order Approving Stipulated Protective Order* and the *[Proposed] Stipulated Protective Order* (the "**Stipulated Protective Order**") attached hereto as <u>Exhibit 1</u>,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Stipulated Protective Order is approved and entered as an order of this Court.

3. Pursuant to Local Rule 9018-1(d) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, parties under the Stipulated Protective Order shall file a publicly viewable redacted form of a document subject to a motion to seal within five (5) days after the filing under seal of such document.

4. Pending a ruling on a motion to seal, any party (including the U.S. Trustee) that receives a filing or document subject to a motion to seal shall treat such material as non-public

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

information subject to the continuing protections accorded such material under the Stipulated Protective Order and the party's Acknowledgement and as further subject to the limitation on use and disclosure as set forth in Local Rule 9018-1(f).  If the motion to seal is denied, the material subject to the motion to seal shall be returned to the filer, unless otherwise expressly agreed by the filer in writing, provided further that such material need not be returned to the filer if the subject material later is filed as a public document.

5.   For the avoidance of doubt, if any:  (a) except as set forth in the Amended Scheduling Order [Adv. D.I 55] in Adversary Proceeding No. 19-50115 (the "**Cyprus Adversary Proceeding**"), the Stipulated Protective Order as embodied in this Order does not apply in the Cyprus Adversary Proceeding; and (b) the Stipulated Protective Order is not intended to, nor shall it, ratify, authorize, amend, or modify any actions or obligations of the Debtors, on one hand, and Cyprus Mines Corporation and Cyprus Amax Mineral Corporation, on the other hand, relating to any shared Privileges or Protections.

6.   This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Dated: September 27th, 2019**
**Wilmington, Delaware**

2

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit 1**

Stipulated Protective Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------- x

In re:                                                        :    Chapter 11
                                                              :
IMERYS TALC AMERICA, INC., *et al.*,[1]                       :    Case No. 19-10289 (LSS)
                                                              :
                    Debtors.                                  :    (Jointly Administered)
                                                              :
                                                              :
                                                              :
------------------------------------------------------------- x


**[PROPOSED] STIPULATED PROTECTIVE ORDER**

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

Based upon the agreement of debtors Imerys Talc America, Inc. ("ITA"), Imerys Talc

Vermont, Inc. ("ITV"), and Imerys Talc Canada Inc. ("ITC" and together with ITA and ITV, the

"Debtors") and those parties identified as signatories to this Stipulated Protective Order (each, a

"Party," and collectively, the "Parties"), and subject to the approval of the United States

Bankruptcy Court for the District of Delaware (the "Court"), this protective order pursuant to

Fed. R. Bankr. P. 7026 and 9018 and Fed. R. Civ. P. 26(c) shall govern the disclosure of

information and documents, including deposition testimony or transcripts ("Disclosure

Materials"), in connection with the above-captioned proceedings (the "Chapter 11 Cases"):

1.      A "Producing Party" is a person or entity that produces Disclosure Materials in

response to formal or informal discovery served in connection with these Chapter 11 Cases,

including any related contested matter, adversary action, or appeal (each, as applicable, a

"Proceeding," and collectively, the "Proceedings").

2.      A "Receiving Party" is a person or entity to whom a Producing Party produces

Disclosure Materials in response to formal or informal discovery served in connection with any

of the Proceedings.

3.      "Confidential Information" shall include any nonpublic information, documents,

or things produced or provided (formally or informally) by the Producing Party that such party

has a good faith reasonable belief contains confidential, proprietary, or personally or

commercially sensitive information of the Producing Party, including, without limitation, (a)

nonpublic information concerning the Producing Party's assets, liabilities, business operations,

business practices, business plans, intellectual property and trade secrets, financial projections,

financial and business analyses, and compilations and studies relating to the foregoing, and other

nonpublic documents prepared by the Producing Party or any of its affiliates or their respective

2

employees, agents, attorneys, professionals, consultants or other agents; (b) information implicating an individual's legitimate expectation of privacy, including medical information and social security numbers; and (c) any and all information required to be maintained confidentially by federal, state or local laws, rules, regulations or ordinances governing or relating to privacy rights, which are furnished, disclosed or made known to a Receiving Party, whether intentionally or unintentionally and in any manner, including in written form, orally or through any electronic, facsimile or computer-related means of communication.  Confidential Information shall also include, without limitation:  (i) any notes, summaries, compilations, presentations, memoranda or similar written materials disclosing, discussing or that is based on or reflects Confidential Information; (ii) any written Confidential Information that is discussed or presented orally; and (iii) any other Confidential Information conveyed to a Receiving Party orally that the Producing Party or their advisors or other agents advise the Receiving Party should be treated as confidential.

4.      "Highly Confidential Information" shall mean for "attorneys' and advisors' eyes only" and shall be limited to nonpublic information produced or provided (formally or informally) that is marked or designated as "Highly Confidential," whether written, oral, photographic, electronic or otherwise, whether in the form of slides, handouts, letters, memoranda, agreements, facsimile transmissions, meetings, conference and other telephone calls, diskettes, files, and/or any other mode, and that, if disclosed, could cause significant competitive, commercial, privacy, personal, or litigation harm to the Producing Party.

5.      Upon a good faith determination by the Producing Party that any Disclosure Materials being produced or disclosed to a Receiving Party, whether formally or informally, contain Confidential Information or Highly Confidential Information, the Producing Party shall

identify such Confidential Information or Highly Confidential Information by affixing to it, in a

manner that shall not interfere with its legibility, the words "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL" on each page so designated (if the information is produced in written form)

or otherwise conspicuously labeling it on a part thereof (if in the form of tape, disc, or other form

that makes it difficult to label each page).  Any summary, compilation or copy of any document

or thing so designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall also be

treated as so designated pursuant to this Stipulated Protective Order.  The "CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL" designation shall, wherever practicable, be made prior to, or

contemporaneously with, production or disclosure, except in the case of depositions, which shall

be designated as set forth in Paragraph 13.

6.      Disclosure Materials, or information derived therefrom, shall be used solely in

connection with the Proceedings, and shall not be used in any other proceeding or for any other

purpose.  Neither the Disclosure Materials designated as "CONFIDENTIAL" ("Confidential

Materials") nor the contents thereof shall be given, shown, made available, communicated, used

or otherwise disclosed to anyone other than (a) the Court, (b) outside counsel for the parties to

the Proceedings, and paralegal, stenographic and clerical personnel of such counsel, (c) experts

(including financial advisors, consultants, and other retained professionals) specifically retained

by the parties for purposes relating to the Proceedings, (d) litigation vendors and other third-

party litigation support personnel engaged for purposes of the Proceedings, and (e) the parties to

the Proceeding, provided that in the case of a Committee, the term party shall be limited to the

Committee and those members thereof (or such member's designee to the Committee) who have

accepted the terms of this Stipulated Protective Order, except:  (i) with prior written approval of

the Producing Party or its attorneys in the case of Disclosure Materials or the party requesting the

4

designation in the case of deposition transcripts; or (ii) upon further order of the Court and after notice to all parties to the Proceeding; or (iii) as set forth in paragraphs 11 and 15 below with respect to the United States Trustee for the District of Delaware ("U.S. Trustee"), and his counsel.

7.      Disclosure Materials designated as "HIGHLY CONFIDENTIAL" ("Highly Confidential Materials") or the contents thereof shall not be given, shown, made available, communicated, used or otherwise disclosed to anyone, including without limitation the Parties and their members, employees, officers, and agents, and in-house counsel, other than (a) the Court, (b) outside counsel for the parties to the Proceedings, and paralegal, stenographic and clerical personnel of such counsel, provided that in the case of the Committee, the term outside counsel shall not include any member or its representative on the Committee, but shall include professionals formally engaged to represent the Committee in the Proceedings even if the retention application of such professional has not yet been filed with, or approved by, the Bankruptcy Court,  and, for the avoidance of any doubt, such professionals shall include Robinson & Cole LLP and Willkie Farr & Gallagher LLP, and (c) experts (including financial advisors, consultants, and other retained professionals) specifically retained by the parties for purposes relating to the Proceedings, and (d) litigation vendors and other third-party litigation support personnel engaged for purposes of the Proceedings, except:  (i) with prior written approval of the party requesting the designation in the case of deposition transcripts or of the Producing Party or its attorneys in the case of other Highly Confidential Materials; or (ii) upon further order of the Court and after notice to all Parties to the Proceeding; or (iii) as set forth in paragraphs 11 and 15 below with respect to the U.S. Trustee and his counsel.

5

8.      Disclosure to the individuals authorized pursuant to Paragraphs 6 and 7 of this Stipulated Protective Order shall be made only as necessary for matters in the Proceedings and only after the person to whom the disclosure is to be made has been informed of the confidential or highly confidential nature of the Disclosure Materials and agrees to be bound by the terms of this Stipulated Protective Order.  No person to whom Confidential Materials or Highly Confidential Materials are disclosed shall disclose such materials or the contents of such materials to any person to whom disclosure is not authorized by the terms hereof.

9.      This Stipulated Protective Order does not restrict in any manner the use or disclosure by the Producing Party of any of its own Disclosure Materials.  If a disclosure of its own Disclosure Materials designated Confidential or Highly Confidential is made by the Producing Party in a document filed with the Court not under seal, in a court hearing, or a deposition and not designated Confidential or Highly Confidential at such deposition, such Disclosure Materials shall no longer be considered Confidential Information or Highly Confidential Information.  For the avoidance of doubt, in this paragraph the phrase "own Disclosure Materials" does not include privileged information generated in connection with the defense of talc related and/or asbestos related claims that another party or entity claims is subject to its shared Privilege or Protection.

10.     A Receiving Party shall have no obligation under this Stipulated Protective Order as to Confidential Information or Highly Confidential Information which: (a) is known to the Receiving Party at the time of disclosure, without obligation of confidentiality, unless the Receiving Party became aware of the Confidential Information or Highly Confidential Information as a result of a violation of this Stipulated Protective Order; (b) is independently developed by the Receiving Party without reference to or use of Confidential Information or

6

Highly Confidential Information; (c) becomes known to the Receiving Party from another

source, unless the Receiving Party knows or reasonably believes that such other source was

subject to a confidentiality restriction at the time of disclosure; (d) is or becomes part of the

public domain through no wrongful act of the Receiving Party; or (e) is disclosed publicly

pursuant to any judicial or government request or order; provided that with regard to 10(e) of this

paragraph, unless requested not to do so by the judicial or governmental entity, the Receiving

Party shall take reasonable steps to give sufficient prior written notice so that the Producing

Party may seek a protective order to contest or limit the scope of such request or order as much

as possible.

11. Any document containing Confidential Information or Highly Confidential

Information that is submitted to or filed with the Court shall be filed under seal as a restricted

document in accordance with Rule 9018-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware ("Local Rules")

and any applicable Chambers Procedures.  The filing party shall file a publicly viewable redacted

form of the document within five (5) days of the filing of the document under seal as a restricted

document.  Any party that files a motion to file under seal in the Bankruptcy Court for the

District of Delaware shall provide counsel to the U.S. Trustee with an unredacted copy of all

documents sought to be sealed, pursuant to Bankruptcy Code § 107(c)(3)(A), provided however,

that the filing party may move the Bankruptcy Court (under the motion to seal or otherwise) to

limit access to all or a part of the proposed sealed materials on grounds of the attorney-client

privilege, joint defense privilege, common interest privilege, work product doctrine or any other

applicable privilege, provided further that, for the avoidance of doubt, (1) the U.S. Trustee's,

Johnson & Johnson's and Johnson & Johnson Consumer Inc.'s (collectively "J&J"), and the

7

Cyprus Historical Excess Insurers' rights to object to the same are fully preserved and (2) the reference herein to "attorney-client privilege, joint defense privilege, common interest privilege, work product doctrine or any other applicable privilege" is not intended to, and does not, authorize the disclosure of any such information in contravention of applicable agreement or law or the terms of this Stipulated Protective Order or the Order approving the same.  Pending a ruling on a motion to seal, any party (including the U.S. Trustee) that receives a filing or document subject to a motion to seal shall treat such material as non-public information subject to the continuing protections accorded such material under this Stipulated Protective Order and as subject to the limitation on use and disclosure as set forth in Local Rule 9018-1(f).  Moreover, if the motion to seal is denied, the material subject to the motion to seal shall be returned to the filer, unless otherwise expressly agreed by the filer in writing, provided further that such material need not be returned to the filer if the subject material later is filed as a public document.  The mere inclusion in a paper or pleading of factual information derived from documents or things designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" will not require that paper or pleading to be filed under seal if the Parties agree in writing prior to filing the paper or pleading that the factual information actually contained in that paper or pleading would not itself be properly subject to such designation.  If the Parties cannot resolve a dispute regarding the inclusion in a paper or pleading of facts from documents or things marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the procedures of this paragraph shall be followed prior to the filing of any such paper or pleading.

      12.     Except as otherwise approved by the Producing Party or by an order of the Court, the Receiving Party may use the Confidential Information or Highly Confidential Information, including any information contained in documents so designated, in preparing and deposing

only: (a) an individual who has had or who is eligible to have access to the Confidential

Information or Highly Confidential Information by virtue of his or her employment with the

Producing Party, the Debtors, any Party, or an affiliate of the Debtors; (b) an individual

identified in the Confidential Information or Highly Confidential Information as an author,

addressee, or copy recipient of such information; (c) an individual who, although not identified

as an author, addressee, or copy recipient of such Confidential Information or Highly

Confidential Information, has seen such Confidential Information or Highly Confidential

Information in the ordinary course of business; (d) any of the professionals retained by the

Producing Party including the Producing Party's accountants; or (e) any other non-Party witness

who has executed the Agreement To Be Bound By The Protective Order attached hereto.

13.     The portions of any deposition transcript that the Producing Party has designated

on the record as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and any Confidential

Information or Highly Confidential Information that is marked as a deposition exhibit shall be

treated as Confidential Information or Highly Confidential Information.  Notwithstanding the

foregoing, the entirety of all deposition transcripts shall be deemed Confidential Information for

seven (7) days after the transcript is delivered to counsel for the Producing Party.  During the

seven (7) day period, the Producing Party may designate by page and line number any portion of

a deposition transcript, to the extent not previously designated, as Confidential Information or

Highly Confidential Information.  Transcript pages and exhibits containing Confidential

Information or Highly Confidential Information shall be distributed only in accordance with this

Stipulated Protective Order and to the deponent, and the deponent's counsel (who shall first have

executed the Agreement To Be Bound By The Protective Order attached hereto if such counsel is

not also counsel for one of the Parties).

9

14.     Nothing contained in this Stipulated Protective Order authorizes a Producing Party to disclose to the Committee, Future Claimants Representative or any other party or entity, or their respective professionals, another party's or entity's privileged information generated in connection with the defense of talc related and/or asbestos related claims that is subject to a shared Privilege or Protection as between the Producing Party and such party or entity.  In the event that the Producing Party intends to produce any such information that is subject to a claim by another party or entity of a shared Privilege or Protection (which may include information that was prepared by, or delivered by the Producing Party to, counsel retained to represent the Producing Party in filed or threatened talc-related litigation), the Producing Party will provide advance notice by email or other writing to the counterparty under the shared Privilege or Protection prior to production by the Producing Party of such information under this Protective Order.  The notice shall attach the documents or information sought to be produced.  Such counterparty will have three (3) business days after receipt of the Producing Party's notice to object by email or other writing to the Producing Party's proposed production and, if such objection is delivered to the Producing Party within the three (3) day period, then the Producing Party and the counterparty will confer in good faith regarding the objection and proposed production.  In the event that an agreement cannot be reached between the Producing Party and the objecting counterparty, then the Producing Party will not produce the subject documents or information and the issue will be determined by the Bankruptcy Court.

15.     Except as set forth in paragraph 16 below as to the U.S. Trustee, no one may attend or review the portion(s) of transcripts of any depositions designated as containing Confidential Information or Highly Confidential Information, other than the Court and its personnel, the court reporter, outside counsel for the Receiving Party, counsel for a non-Party

10

deponent (who shall first have executed the Agreement To Be Bound By The Protective Order

attached hereto if such counsel is not also counsel for one of the Parties), and those individuals

otherwise permitted to view Confidential Information or Highly Confidential Information

pursuant to the terms of this Agreement and whose attendance at or review of this data is

reasonably necessary to assist in connection with the Proceeding.

16.     The Parties shall discuss the manner of use of Confidential Information or Highly

Confidential Information at any hearing or trial in the Proceedings, including any procedures

related to the non-public disclosure of Confidential Information or Highly Confidential

Information, and shall consult with the United States Trustee with regards to any planned use of

Confidential Information or Highly Confidential Information at any hearing or trial in the

Chapter 11 Cases that involves the non-public disclosure thereof.  In the event that an agreement

cannot be reached on such procedures, the issue shall be determined by the Bankruptcy Court.

All trial exhibits or other materials to be offered into evidence at a hearing or proceeding in the

Bankruptcy Court as to which a party seeks to prevent or limit public disclosure shall be

provided to counsel to the U.S. Trustee in an unredacted form before the hearing, subject to the

continuing restrictions on use and disclosure provided hereunder, to the extent not already

provided.

17.     In the event that a dispute arises concerning the question of whether information

should be treated as Confidential Materials or Highly Confidential Materials, the party

challenging the need for such treatment shall advise the designating party by written notification,

specifying why such treatment is improper.  The parties shall attempt to resolve in good faith

within three (3) business days any such disputes as to the need to treat the information as

Confidential Materials or Highly Confidential Materials; provided, however, if any such dispute

11

cannot be resolved in three (3) business days, the party objecting to the confidential nature of the

information may, on an expedited basis, move for an Order relieving it from the obligations of

this Stipulated Protective Order, with respect to such Confidential Materials or Highly

Confidential Materials.  The Producing Party shall fully cooperate with efforts to bring the

dispute to the Court on an expedited basis.  The party challenging the designation shall

demonstrate to the Court that good faith attempts to resolve the dispute without the need for the

Court's intervention have been exhausted.  The Disclosure Materials at issue shall be treated as

Confidential Materials or Highly Confidential Materials, as designated by the Producing Party,

until the issue is determined by the Court; provided, however, that the burden shall remain with

the Producing Party to demonstrate that Disclosure Materials in dispute are properly designated

as Confidential Materials or Highly Confidential Materials.

      18.     A Party's failure to designate information as "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL" shall not be deemed a waiver of that Party's later claim that such information

should be entitled to another designation pursuant to this Stipulated Protective Order

("Misdesignated Material") at any time thereafter.  Documents or information inadvertently

disclosed by or on behalf a Producing Party without being designated "Confidential" or "Highly

Confidential" may thereafter be so designated by promptly notifying the Receiving Party in

writing that such materials are Confidential or Highly Confidential, as the case may be.  The

Receiving Party shall thereafter treat such materials as so designated.

      19.     If Disclosure Material (designated Confidential, Highly Confidential or neither)

that is subject to a claim of attorney-client privilege, joint defense privilege, common interest

privilege, work product doctrine, or any other applicable privilege or protection from disclosure

(a "Privilege or Protection"), is nevertheless inadvertently produced ("Inadvertently Produced

12

Material"), such production shall in no way prejudice or otherwise constitute a waiver of, or

estoppel as to, any claim of Privilege or Protection to which such inadvertently Producing Party

or any person or entity claiming a shared Privilege or Protection would otherwise be entitled, in

these Proceedings or any other federal or state proceeding.  This Stipulated Protective Order

shall be interpreted to provide the maximum protection allowed by rule 502(d) of the Federal

Rules of Evidence, and the Parties agree that their productions satisfy the provisions of rule

502(b).  If a claim of inadvertent production is made pursuant to this paragraph, the Receiving

Party shall, upon notification and request, return or destroy the Inadvertently Produced Material

(including all copies thereof) as to which the claim of inadvertent production has been made,

within three (3) business days, and the information shall not be used for any purpose.  Such

request shall describe the Inadvertently Produced Material with a reasonable degree of specificity

(such as a Bates number or range, or other manner by which the Receiving Party can identify the

material) and state the applicable Privilege or Protection upon which a claim of inadvertent

disclosure is predicated.  If a Producing Party discovers that it has produced Disclosure Materials

that appear to be subject to a Privilege or Protection, the Producing Party who provided the

Disclosure Materials shall immediately notify the Receiving Party in writing or electronic mail

regarding the production and shall provide the Receiving Party with the first bates number or

bates range of the Inadvertently Produced Materials.  If a Receiving Party discovers that it has

received Disclosure Materials that it knows or is reasonably certain are Inadvertently Produced

Materials, the Receiving Party shall immediately notify the Producing Party regarding the

production and provide the Producing Party with the first bates number or bates range of the

potentially Inadvertently Produced Materials.  Nothing in this Paragraph is intended to limit any

obligations or rights a Party, or other parties or entities, may otherwise have under this Order or

any other applicable law or regulation with regards to the treatment of inadvertently produced documents subject to any Privilege or Protection.  The Producing Party shall immediately provide notice of a request for the return of Inadvertently Produced Materials to any party or entity known, or reasonably certain, to such Producing Party to assert a claim of its own Privilege or Protection in such Inadvertently Produced Materials, and the Producing Party shall provide such party or entity a copy of the documents or information identified as Inadvertently Produced Material and as to which such person or entity is known, or reasonably certain, to assert a claim of its own Privilege or Protection.  For the avoidance of doubt, the procedures set forth in this paragraph shall apply to any formal or informal production made by a Producing Party during the pendency of the Chapter 11 Cases prior to or pending approval of this Stipulated Protective Order by the Court.  If the Debtors become aware that they provided material subject to a shared Privilege or Protection to James L. Patton , Jr. or to Young Conaway Stargatt & Taylor, LLP or Ankura Consulting Group, LLC before the Chapter 11 Cases, then the procedures set forth in this paragraph shall apply to any such material.[2]

20.    In the event that a dispute arises concerning the question of whether Disclosure Materials are subject to a claim of any Privilege or Protection (the "Disputed Protected Materials"), the party challenging the need for such treatment shall advise the party claiming the relevant Privilege or Protection by written notification, specifying why such treatment is improper.  The parties shall attempt to resolve in good faith within three (3) business days any

---

[2]    For the avoidance of doubt, the provisions of this Stipulated Protective Order, if any, that may require the disclosure of any documents produced in adversary proceeding no. 19-50115 (Bankr. D. Del.) that are subject to a shared Privilege or Protection to the parties that share in the Privilege or Protection shall not apply to the informal exchange process between the Debtors and Cyprus Amax Minerals Company and Cyprus Mines Corporation as described in the Amended Scheduling Order governing that adversary proceeding [Adv. D.I. 55], except to the extent that any documents shared in the informal exchange process are disclosed to a party that does not share in the Privilege or Protection.  *See* Am. Sched. Order at ¶ 6, n. 3.

14

such disputes as to the need to treat the Disputed Protected Materials as subject to a claim of Privilege or Protection; provided, however, if any such dispute cannot be resolved in three business days, the party objecting to the treatment of such information as privileged or protected may, on an expedited basis, move for an Order compelling production of the Disputed Protected Materials.  The Producing Party shall fully cooperate with efforts to bring the dispute to the Court on an expedited basis.  The party challenging a claim of Privilege or Protection shall demonstrate to the Court that good faith attempts to resolve the dispute without the need for the Court's intervention have been exhausted.  The Disputed Protected Materials will be treated as privileged or protected as claimed by the Producing Party until the issue is determined by the Court.  A party or entity may utilize the protections and procedures set out in paragraphs 19 and 20 with regard to that party's or entity's claim of its own Privilege or Protection in Disclosure Materials even though it was not the Producing Party.

21.     In the event of a disclosure by a Receiving Party of Confidential Information or Highly Confidential Information to persons or entities not authorized by this Stipulated Protective Order to receive such Confidential Information or Highly Confidential Information, the Receiving Party making the unauthorized disclosure shall, upon learning of the disclosure: (i) immediately notify the person or entity to whom the disclosure was made that the disclosure contains Confidential Information or Highly Confidential Information subject to this Stipulated Protective Order; (ii) immediately make reasonable efforts to recover the disclosed Confidential Information or Highly Confidential Information as well as preclude further dissemination or use by the person or entity to whom the disclosure was made; and (iii) immediately notify the Producing Party of the identity of the person or entity to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps taken to recover the disclosed

15

Confidential Information or Highly Confidential Information and ensure against further dissemination or use thereof, and the Producing Party thereafter shall notify any party that such attorney knows to have asserted a claim of its own Privilege or Protection in such Confidential Information of Highly Confidential Information.  Disclosure of Confidential Information or Highly Confidential Information other than in accordance with the terms of this Stipulated Protective Order may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate.

22.    When counsel for any Party or an attorney who has executed this Stipulated Protective Order or the Agreement To Be Bound By The Protective Order attached hereto becomes aware of any violation of this Stipulated Protective Order, or of facts constituting good cause to believe that a violation of this Stipulated Protective Order may have occurred, such attorney shall promptly report, with appropriate particulars to assist in aiding any investigation, to counsel for the Producing Party that there may have been a violation of this Stipulated Protective Order, and the Producing Party shall notify any party that such attorney knows to have asserted a claim of its own Privilege or Protection in Disclosure Materials if such Disclosure Materials are the subject of the violation or alleged violation of this Stipulated Protective Order.

23.    The Parties to this Stipulated Protective Order (including parties executing the Agreement To Be Bound By The Protective Order attached hereto) agree that prior to and after the completion of the Proceeding, the provisions of this Stipulated Protective Order shall continue to be binding and the Court shall retain jurisdiction over the Parties and any other person who has had access to Confidential Information or Highly Confidential Information pursuant to this Stipulated Protective Order, in order to enforce the provisions of this Stipulated Protective Order.

16

24.     Within sixty (60) days after the entry of a final decree closing these Chapter 11

Cases, or upon the written request of the Producing Party within sixty (60) days after the closing

of any Proceeding, as well as any associated appeals, all Confidential Information and Highly

Confidential Information produced to a Receiving Party, including any copies of documents or

reproductions of things, shall, at the option of the Receiving Party, either: (a) be returned to the

Producing Party without keeping a copy thereof, which includes erasing any electronically stored

information; or (b) destroyed by the Receiving Party without keeping a copy thereof, which

includes erasing any electronically stored information.  Counsel for any Party or non-Party

receiving Confidential Information or Highly Confidential Information shall provide written

certification of compliance with this provision to counsel for the Producing Party within sixty

(60) days of any request by the Producing Party in accordance with this paragraph.  Electronic

mail of a Party or non-Party or its counsel that evidences, refers to or contains Confidential

Information or Highly Confidential Information is not subject to the foregoing destruction or

return requirement, but otherwise remains subject to the provisions of this Stipulated Protective

Order.  Notwithstanding anything to the contrary, counsel for the Parties may retain Confidential

Information and Highly Confidential Information constituting, containing, or incorporated in

pleadings, motion papers, and exhibits contained in the official court record, work product,

discovery responses, deposition transcripts, and deposition and trial exhibits, but otherwise

subject to the provisions of this Stipulated Protective Order.  Moreover, counsel for the Parties

do not need to return or destroy Confidential Information and Highly Confidential Information

that are stored on archival or other backup systems and are not reasonably accessible to persons

other than personnel who maintain such systems.  All such archival copies shall be maintained in

accordance with the terms of this Stipulated Protective Order.

17

25.     Any interested party with respect to these Chapter 11 Cases, including but not limited to any person intending or planning to receive or produce documents, receive or disclose information, or provide testimony in connection therewith, may become a Party to this Stipulated Protective Order by executing, prior to any disclosure, the Agreement To Be Bound By The Protective Order attached hereto, in which case the provisions of this Stipulated Protective Order shall apply fully to any discovery material that he, she or it may provide or receive.

26.     The Parties to this Stipulated Protective Order acknowledge that because of the unique nature of the Confidential Information and Highly Confidential Information, any breach of any of the terms and conditions of this Stipulated Protective Order would cause irreparable damage to the Producing Party and that monetary damages and other damages available at law may be inadequate to compensate for such breach.  Accordingly, the Parties agree that, in addition to any other remedies available to them at law or in equity, the Parties will be entitled to injunctive relief and specific performance to enforce the provisions of this Stipulated Protective Order without proof of actual damages and without any requirement to post a bond or provide other security.

27.     If a Receiving Party or any of its advisors is legally compelled (whether by regulatory request, deposition, interrogatory, request for documents, subpoena, civil investigation, demand or similar process) to disclose any of the Confidential Information or Highly Confidential Information, the Receiving Party shall immediately notify the Producing Party, and the Producing Party shall notify any party or entity known to the Producing Party to have asserted a claim of its own Privilege or Protection in such Confidential Information or Highly Confidential Information (in this paragraph only, collectively with the Producing Party, the "Interested Parties"), in writing of such requirement to disclose Confidential or Highly

18

Confidential Information, so that the Interested Parties, collectively or alone, may seek a

protective order or other appropriate remedy.  The Receiving Party will use its best efforts, at the

expense of those Interested Parties that elect to seek a protective order or pursue other

appropriate remedy, to obtain or assist such Interested Parties in obtaining any such protective

order.  Failing the entry of a protective order or the receipt of a waiver hereunder, the Receiving

Party may disclose, without liability hereunder, that portion (and only that portion) of the

Confidential Information or Highly Confidential Information that the Receiving Party has been

advised by written opinion of counsel reasonably acceptable to the Interested Parties that it is

legally compelled to disclose; provided, however, that the Receiving Party agrees to use its best

efforts to obtain assurance that confidential treatment will be accorded to such Confidential

Information or Highly Confidential Information by the person or persons to whom it is disclosed.

28.     Nothing herein shall be deemed to prevent a Producing Party, or any party or

entity claiming a Privilege or Protection in connection thereto, from objecting to discovery or

asserting that information being sought in discovery is of such a nature that discovery should not

be afforded because of the confidential, personal, or proprietary nature of the information being

sought or to preclude a Party from seeking additional or further limitations on the use or

disclosure of such information being sought in discovery.

29.     No waiver of any breach or default shall be deemed or construed to constitute a

waiver of any other violation or other breach of any of the terms, provisions and covenants

contained in this Stipulated Protective Order, and forbearance to enforce one or more of the

remedies provided herein in the event of a default will not be deemed or construed to constitute a

waiver of that default or of any other remedy provided for in this Stipulated Protective Order.

Furthermore, nothing contained herein shall reduce any protections otherwise provided by other

confidentiality agreements to which the Debtors, the Parties, and other person who becomes a

Party hereto are a party.

30.     This Stipulated Protective Order may be executed in several counterparts, each of

which shall be deemed an original, but all of which together shall constitute one instrument.

Upon approval by the Court, this Stipulated Protective Order is a binding agreement upon the

signatories hereto (and to the Agreement To Be Bound By The Protective Order attached hereto)

and constitutes an order of the Court, the violation of which is subject to enforcement and

imposition of legal sanction in the same manner as any other order of the Court.

31.     This Stipulated Protective Order may be amended by agreement of the Parties and

further order of the Court.

20

Dated:  September 26, 2019
Wilmington, Delaware

Stipulated and agreed to by:

/s/ Marcos A. Ramos
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  collins@rlf.com
          merchant@rlf.com
          ramos@rlf.com
          steele@rlf.com


Jeffrey E. Bjork (admitted *pro hac vice*)
Kimberly A. Posin (admitting *pro hac vice*)
Helena G. Tseregounis (admitted *pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
          kim.posin@lw.com
          helena.tseregounis@lw.com


Richard A. Levy (admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767
E-mail:  richard.levy@lw.com


*Counsel for Debtors*

/s/ Mark A. Fink
Natalie D. Ramsey (No. 5378)
Mark A. Fink (No. 3946)
ROBINSON & COLE LLP
1000 North West Street
Suite 1200
Wilmington, DE 19801
Telephone:  (302) 495-4800
Facsimile:  (212) 451-2999
E-mail:  nramsey@rc.com
          mfink@rc.com


Rachel C. Strickland
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 728-8544
Facsimile:  (212) 728-9544
E-mail:  rstrickland@willkie.com

*Counsel for the Tort Claimants' Committee*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

/s/      Sharon M. Zeig
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
Email: eharron@ycst.com
Email: szieg@ycst.com


*Counsel to the Future Claimants'
Representative*

21

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
IMERYS TALC AMERICA, INC., et al.,¹                 :    Case No. 19-10289 (LSS)
                                                    :
                Debtors.                            :    (Jointly Administered)
                                                    :
                                                    :
                                                    :
------------------------------------------------------- x
```

## <u>AGREEMENT TO BE BOUND BY THE PROTECTIVE ORDER</u>

This is to certify that: (a) I am producing and/or being given access to Confidential

Information or Highly Confidential Information under the Protective Order entered in the above-

captioned proceeding; (b) I have read the Protective Order; and (c) I agree to be bound by the

terms and conditions thereof as a "Receiving Party" and "Producing Party," as the case may be,

including, without limitation, the obligations regarding the use, non-disclosure and return of such

Confidential Information or Highly Confidential Information.  I further agree that in addition to

being contractually bound by the Protective Order, I am subject to the powers of the Bankruptcy

Court for any violation of the Protective Order.

Date: _____

_____

Name (Printed)


Signature

---

¹      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748).  The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.