## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC[1]<br><br><div align="right">Debtors.</div> | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 8, 2020 at 10 a.m. (ET)**<br>**Objection Deadline: June 1, 2020** |

## THE FUTURE CLAIMANTS' REPRESENTATIVE'S OMNIBUS OBJECTION TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY BROUGHT BY OLD REPUBLIC INSURANCE COMPANY, ET AL.

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

James L. Patton, Jr., the Future Claimants' Representative  (the "FCR"), hereby submits

this Objection (the "Objection") to the Motion of Old Republic Insurance Company and its

affiliates (collectively "Old Republic") to Modify the Stay (the "Old Republic Motion"), ECF No.

678, Evanston Insurance Company's ("Evanston") Motion to Modify the Stay (the "Evanston

Motion"), ECF No. 686, Courtney and Stephen Knight's (the "Knights") Motion for Relief From

the Automatic Stay (the "Knight Motion"), ECF No. 545, Karen and Timothy Spahr's (the

"Spahrs") Motion for Relief From the Automatic Stay (the "Spahr Motion"), ECF No. 583, and

Nichole Erickson and Mason Gordon's Motion to Modify the Stay (the "Erickson Motion"), ECF

No. 682, (collectively, the "Motions"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

### The Old Republic Motion

1.      Old Republic seeks an order modifying the automatic stay under sections 105(a)

362(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the

"Bankruptcy Code" or the "Code"), to the extent the stay applies to  certain general liability claims

against Non-Debtor Insureds[2] (the "Old Republic Claims") to allow such Old Republic Claims to

proceed.  Should the Old Republic Claims be allowed to proceed, Old Republic intends to draw

upon two irrevocable letters of credit issued to Old Republic by the Debtors (the "JPMorgan L/Cs")

to defend and/or settle and pay such Old Republic Claims.  Old Republic argues that its use of the

JPMorgan L/Cs will not diminish the available insurance proceeds for other potential claimants

(and thereby impact the estate), because the Old Republic Policies have no aggregate limits.  Old

---

[2] Capitalized terms used herein are given the definition set forth in the Motions unless otherwise
defined herein.

Republic's Motion presupposes that the approximately $84 million remaining on the JPMorgan

L/Cs will be sufficient to fairly compensate all other claims, including future claims, that trigger

the Old Republic Policies.

2.      Old Republic offers no evidence that the JPMorgan L/Cs will be sufficient to cover

all claims under the Old Republic Policies.  Nor does Old Republic commit that if and when the

JPMorgan L/Cs are exhausted and it is not able to obtain reimbursement, it will nevertheless

continue to pay those claims without limit.  Thus, the Old Republic Policies are not, as a practical

matter, "unlimited."

3.      Were Old Republic to acknowledge its contractual obligation under the Old

Republic Policies to continue paying claims even without reimbursement, then the FCR would

agree that lifting the stay on the Old Republic Claims would not adversely affect the Debtors'

estate.[3]

4.      In the alternative, were there sufficient facts available to determine whether the

JPMorgan L/Cs are actually sufficient to cover all future claims, then it could be possible to

determine with greater certainty whether lifting the stay on the Old Republic Claims would impact

the assets of the Debtors' estate.

5.      Based on the current record, however, lifting the stay on the Old Republic Claims

has the potential to negatively affect the reorganization of the Debtors and to prevent the fair

treatment of all current and future claimants.

---

[3] Old Republic would still hold an indemnification claim against the estate if it paid claims without reimbursement, and the Non-Debtor Insureds would likely also hold claims against the estate if Old Republic refused to pay claims without reimbursement, but in either circumstance such claims would be paid *pari passu* with other creditors in bankruptcy, rather than being resolved and paid in full outside the bankruptcy case.

6.      The FCR therefore objects to the extent Old Republic would (wrongfully) deny a continuing obligation to indemnify current and future claimants in the event the JPMorgan L/Cs are exhausted and BSA fails to indemnify Old Republic for such claims.  In the alternative, the FCR objects because Old Republic has not provided a sufficient factual basis to find that the JPMorgan L/Cs are adequate to cover all current and future claims on the Old Republic Policies.

**The Evanston Motion**

7.      Evanston seeks an order modifying the automatic stay under sections 105 and 362(d) to the extent the stay applies to certain general liability claims against Non-Debtor Insureds (the "Evanston Claims") to allow such Evanston Claims to proceed.  Should the Evanston Claims be allowed to proceed, Evanston intends to pay to defend or settle such claims from its aggregate limits.

8.      The Evanston Policies and the proceeds thereto are undoubtedly an asset of the Debtors' estate because, unlike the first-level Old Republic policies, they have an aggregate limit. As is the case with respect to the Old Republic Claims, moreover, it is currently unclear whether the insurance assets under and in excess of the Evanston policies will be sufficient to cover all current and future claims that trigger those policy years.  Thus, lifting the stay to allow the Evanston Claims to proceed also has the potential to diminish the estate and otherwise negatively affect the reorganization of the Debtors and prevent the fair treatment of all current and future claimants.

9.      The FCR therefore objects to the Evanston Motion.  In the alternative, the FCR objects because Evanston has not provided a sufficient factual basis to find that the Debtor's insurance in the relevant policy years is sufficient to cover all current and future claims.

**The Knight and Spahr Motions**

10.     The Knight Motion seeks relief from the automatic stay under section 362(d)(1) to allow a non-abuse wrongful death suit brought against the Sam Houston Area Council Boy Scouts of America and Boys Scouts of America ("BSA"), a debtor (the "Knight Action") to proceed "for the purposes of recovering from available insurance proceeds and liquidating [the Knights'] claim."  Knight Mot. at ¶ 12, ECF No. 545.

11.     The Spahr Motion seeks relief from the automatic stay under section 362(d)(1) to allow a non-abuse, personal injury suit brought against the Atlanta Area Council, Inc. and BSA (the "Spahr Action") to proceed "so that [the Spahrs] may proceed with their claim against Debtor's applicable insurance policy proceeds."  Spahr Mot. at ¶ 14, ECF No. 583.

12.     The Knight and the Spahr Actions each potentially trigger the Old Republic Policies because the events forming the basis for those suits occurred during the Old Republic policy periods.  Thus, lifting the stay on either the Spahr Action or the Knight Action could potentially negatively affect the reorganization of the Debtors and prevent the fair treatment of all current and future claimants due to the present uncertainty as to whether the JPMorgan L/Cs impose a practical limit that is insufficient to satisfy all current and future claims.

13.     The FCR therefore objects to the Knight and Spahr Motions.  In the alternative, the FCR objects because neither the Knight plaintiffs nor the Spahr plaintiffs have provided sufficient factual bases to find that the Debtors' insurance in the relevant policy years is sufficient to cover all current and future claims.

**The Erickson Motion**

14.    The Erickson Motion seeks relief from the automatic stay to engage in pre-suit mediation and settlement negotiations in connection with a non-abuse, wrongful death claim BSA (the "Erickson Claim") (collectively, with the Old Republic Claims, the Spahr Action, the Knight Action, and the Evanston Claims, the "Claims").

15.    The Erickson Claim potentially triggers the Evanston Policies because the events forming the basis for the Erickson Claim occurred during the effective period of the Evanston Policies.  Thus, lifting the stay on the Erickson Claim could potentially negatively affect the reorganization of the Debtors and prevent the fair treatment of all current and future claimants due to the present uncertainty as to whether the aggregate limits of the Evanston and other excess policies are insufficient to satisfy all current and future claims.

16.    The FCR therefore objects to the Erickson Motion.  In the alternative, the FCR objects because the Erickson plaintiffs have not provided a sufficient factual basis to find that the Debtor's insurance in the relevant policy years is sufficient to cover all current and future claims.

## BACKGROUND AND PROCEDURAL HISTORY

17.    The Old Republic policies are subject to a "fronting" arrangement whereby Old Republic has an obligation to pay covered claims and the Debtorss have an obligation to reimburse Old Republic for all such claims (the "Fronting Arrangement").  The Old Republic policies expressly provide, however, that Old Republic would have a continuing obligation to pay in the event that BSA declared bankruptcy, stating: "Bankruptcy or insolvency of the insured shall not relieve the Company of any of its obligations hereunder." *See, e.g.*, Old Republic Policy No.

MWZY 301262 (Mar. 1, 2014–Mar. 1, 2015) at 24.  The Old Republic Policies have no aggregate

limit, and therefore promise to pay a potentially unlimited number of occurrences.[4]

18.     Old Republic states that its policies are also subject to a program agreement, (the

"Program Agreement").  The Program Agreement provides, among other things, that BSA will

indemnify Old Republic, separate and apart from the deductibles required under the policy, should

Old Republic be required to make payments under the policies.  *Id.* ¶ 7. The Program Agreement

further contains a provision that purports to allow Old Republic to cancel coverage in the event

that the Debtors fails to indemnify Old Republic under the Program Agreement.  *Id.* ¶ 11.

19.     The Evanston Policies, unlike the Old Republic Policies, have aggregate limits.

The insurance policies in excess of the Evanston Policies also have aggregate limits.

20.     The scope of total claims facing Old Republic and Evanston and all of their excess

insurers is at this point unclear.  The General Bar Date is still months away, and neither Old

Republic nor Evanston offers any evidence in their respective Motions as to whether the subject

insurance assets are sufficient to cover the cost of defending and indemnifying all current and

future claims.  Similarly, there is no information in the record regarding the potential cost to defend

and value of the Knight and Spahr Actions (under the Old Republic Policies) or the Erickson Claim

(under the Evanston Policies).

---

[4] Moreover, the first-level Old Republic policies have a per occurrence limit of $1,000,000; in addition to
not providing information sufficient to show that the sum of the claims exceed the JPMorgan L/Cs,
neither Old Republic, nor any of the claimants has established that all claims would remain within the
primary layer.

**ARGUMENT**

21.     The instant Motions should be denied because allowing the Claims to proceed carries unascertainable risk of adversely affecting the assets of the estate and the unfair treatment of claimants under the Old Republic and Evanston Policies.

22.     The automatic stay contemplated by section 362(a) is one of the most fundamental protections afforded by the Bankruptcy Code. See H.R. Rep. No. 95–595, at 340 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97.  The "breathing spell" of the automatic stay was "[designed] to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982).

23.     The Knight, Spahr, and Erickson Motions do not address the impact that their respective Claims will have on the estate at all.

24.     Old Republic and Evanston seek exceptions to the automatic stay rule on the basis that all current and future claims will be covered under their limits or by other insurers' limits in excess thereof.  Old Republic claims this to be the case because its first-level policy limits have no aggregate limit and are therefore unlimited.  Evanston claims this to be the case because its aggregate limits and the limits in excess of its policies are very high, so as to be practically unlimited.   Based on these conclusory statements, Old Republic and Evanston argue that the payment of Claims under their Policies will have no impact on the estate.

25.     However, the JPMorgan L/Cs that Old Republic seeks to draw upon to fund the costs of defending these cases and any settlements or judgments are *not* unlimited and the Old

Republic Program Agreement purportedly permits cancellation of the Debtors' coverage in the event of default under the Fronting Arrangement. To the extent Old Republic intends to argue that this provision permits it to cancel the Debtors' coverage if the JPMorgan L/Cs are exhausted and the Debtors are unable to indemnify Old Republic, future claims would not have access to the Old Republic coverage, belying the argument that the Old Republic coverage is "unlimited," and its use does not impact the estates.

26.     The FCR does not agree that Paragraph 11 of the Program Agreement permits Old Republic to cancel the Debtors' coverage in the event the Debtors are unable to indemnify it.  This provision is inconsistent with the Old Republic policies themselves, which provide "Bankrupt [sic] or insolvency of the insured shall not relieve the Company of any of its obligations hereunder."[5] A provision that is intended to ensure that injured plaintiffs receive compensation from available insurance if the defendant-policyholder becomes insolvent. *See, e.g.*, *In re Sudbury, Inc.*, 153 B.R. 776, 780 (Bankr. N.D. Ohio 1993) (noting that not requiring an insurer to pay would result in "an economic loss on claimants that the Bankruptcy Clause[ ] [was] designed to avoid").  In fact, many states have codified this general public policy principle by allowing for a direct action by an injured creditor against an insurer of an insolvent entity.[6]

27.     Without either evidence that the JPMorgan L/Cs are sufficient to pay all potential claims,  or, alternatively, assurances that Old Republic will continue to pay defense and indemnity

---

[5] The case *In re SelectBuild Illinois, LLC* illustrates that exhaustion of the JP Morgan L/Cs would not excuse Old Republic from its obligation to pay claims.  2015 WL 3452542 (Bankr. D. Del. May 28, 2015).

[6] *See, e.g.*,  Ark. Code Ann. § 23-89-102 (1997); Cal. Ins. Code § 11580 (West 1997); Ill. Rev. Stat. Ch. 215 5/388; Ind. Code Ann. § 27-1-13-7 (Burns 1997); La. Rev. Stat. Ann. § 22:655 (1997); Md. Code Ann. Ins. § 19-102 (1997); Mich. Stat. Ann. § 24.13006 (1997); Minn. Stat. § 60A.08 (1997); Mo. Rev. Stat. § 379.195 (1997); N.J. Rev. Stat. § 17:28-2 (1997); N.Y. Ins. Law § 3420 (McKinney 1997); Ohio Rev. Code Ann. § 3929.05 (Anderson 1998); Or. Rev. Stat. § 742.031 (1996); Pa. Stat. Ann. Tit. 40 § 117 (1997); Va. Code Ann. § 38.2-2200 (Michie 1997); Wis. Stat. § 632.22 (1995–1996).

in full after the JPMorgan L/Cs are exhausted, Old Republic cannot establish that payment of claims under its policies will not exhaust a finite asset of the estates.

28.    The available assets under the Evanston Policies are *expressly* limited by an aggregate cap.  Thus, at this point in these Chapter 11 proceedings, Evanston cannot establish that payment of claims under its policies will not exhaust a finite asset of the estates without establishing how much all current and future claims are likely to be worth.

29.    In fact, neither Old Republic nor Evanston has provided any evidence whatsoever that the amounts available under their policies, and all coverage paying in excess of such limits, are sufficient to pay all current and future claims.  Indeed, it is difficult to imagine how, prior to the occurrence of the Bar Date, either would be able to do so.

30.     Before the stay is lifted with respect to the Old Republic Claims, including the Knight and Spahr Actions, Old Republic must establish either:  (1) that Old Republic will have a continuing obligation to pay covered claims under its policies notwithstanding any default under the Fronting Arrangement, such that no limit, in fact, applies to its coverage; or (2) that the JPMorgan L/Cs (and all coverages in excess thereof) are and will be sufficient to cover all current or future claims that may trigger the Old Republic policies.

31.    Before the stay is lifted on the Evanston Claims, including the Erickson claim, for similar reasons, Evanston must establish that its total available limits (and all coverages in excess thereof) are and will be sufficient to cover all current or future claims that may trigger the Evanston policies.

I.      **The Stay Applies to the Claims**

    A.      **Proceeds of the Old Republic and Evanston Policies are property of the Debtors' estates.**

32.      Section 362(a)(3) of the Bankruptcy Code applies the automatic stay to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Old Republic and Evanston both argue that it is unclear whether the Old Republic Excess Policies are property of the Debtors' estates.  Old Republic Mot. ¶ 16, ECF No. 678; Evanston Mot. ¶ 10, ECF No. 686.  Although the FCR contends that Old Republic and Evanston are wrong, the FCR does agree that it is unclear whether lifting the stay as to the subject Old Republic and Evanston Claims actually will adversely impact the assets of the estates.  The FCR objects to lifting the stay on these grounds because such lack of clarity requires continued enforcement of the automatic stay.

33.      "Property of the estate" within the meaning of the Bankruptcy Code is broadly defined and includes all legal and equitable interests of the debtor in property as of the commencement of the bankruptcy case, including contingent rights.  11 U.S.C. § 541(a)(1); *Pension Transfer Corp. v. Beneficiaries Under the Third Amend. To Fruehauf Trailer Corp. Ret. Plan No. 003* (*In re Fruehauf Trailer Corp.*), 444 F.3d 203, 211 (3d Cir. 2006) ("[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. . . .  It is also well established that 'the mere opportunity to receive an economic benefit in the future' is property with value under the Bankruptcy Code." (quoting *Segal v. Rochelle*, 382 U.S. 375, 379 (1966))).  "In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,

is within the reach of [section] 541." *Stanziale v. CopperCom, Inc.* (*In re Conex Holdings, LLC*), 518 B.R. 792, 802 (Bankr. D. Del. 2014) (citation omitted).

34.     There is no question that rights under an insurance policy are "property of the estate" subject to the protection of section 362(a)(3).  *See ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006); *First Fid. Bank v. McAteer*, 985 F.2d 114, 116 (3d Cir. 1993); *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987); *see generally* 3 Collier on Bankruptcy ¶ 362.03 (15th ed. Rev. 2015) ("[T]he prevailing view is that an insurance policy is property of the estate, protected by the automatic stay of § 362(a)(3).").  Indeed, insurance policies constitute "valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be . . . the most important asset of the debtor's estate." *In re W.R. Grace & Co.*, 475 B.R. 34, 149 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), *and aff'd*, 532 F. App'x 264 (3d Cir. 2013), *and aff'd*, 729 F.3d 311 (3d Cir. 2013) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986)).

35.     Here, notwithstanding the fact that many of the Old Republic Policies have no aggregate limit,[7] it is possible that the total value of current and future claims will exceed the amounts secured under the JPMorgan L/Cs.  Under such circumstances, Old Republic would face claims that would ultimately be payable only from the Old Republic Policies.  As set forth above, absent Old Republic's commitment to pay such claims without an aggregate limit, the Old Republic policies *are* potentially limited by the amount of the JPMorgan L/Cs, and thus constitute property of the estate just as any other insurance policy.  Consequently, the Debtors have a legal

---

[7] Generally, the Old Republic first-level policies do not have aggregate limits.

interest in the Old Republic Policies should the JPMorgan L/Cs be insufficient to cover all current and future claims

36.     The Evanston Policies—unlike the Old Republic Policies—*do* have aggregate limits.  Thus, the Evanston Policies (and the coverage in excess thereof) may also be insufficient to cover all current and future claims, and under such circumstances, the Debtors also would have a legal interest in the Evanston Policies.

37.     Thus, the proceeds of the Old Republic and Evanston Policies are property of the estate.  *See e.g.*, *First Fid. Bank*, 985 F.2d at 116 (insurance policies are property of the estate "even though the policy has not matured, has no cash surrender value and is otherwise contingent."); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010), *aff'd,* Nos. 10 CV 5717(RJD), 08 BK 44210(ESS), 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) (the automatic stay applies even if there is a dispute as to debtor's interest in or claim to the property).

### B.     The Claims cannot be disaggregated from, and ultimately are, claims against the Debtors.

38.     Even if the Claims were not automatically stayed pursuant to section 362(a)(3), the stay would apply under section 362(a)(1).  Subsection 362(a)(1) stays "any action or proceeding against the debtor."  11 U.S.C. § 362(a)(1).

39.     The Third Circuit will refuse to disaggregate and will stay claims against non-debtors where necessary to "avoid interfering with the broad purposes served by the automatic stay."  *See ACandS, Inc.*, 435 F.3d 252 (finding that certain counterclaims could not be disaggregated and therefore the stay should be extended to such claims).  In particular, courts within the Third Circuit have applied the stay where the claims against the debtor and the claims against the non-debtor revolved around the same facts and circumstances.  *See OCA, Inc. v.*

*Johnstown Orthodontic Specialists, Inc.*, No. CIV A 04-296J, 2006 WL 2773493, at \*2 (W.D. Pa. Sept. 25, 2006). Specifically, as set out in *OCA*, the Court should not disaggregate claims that involve the interpretation of the same contract, and where the outcome of such claims would directly affect the bankruptcy estate. *Id.*

40.     Here, the Claims involve identical facts and circumstances as the claims against the Debtors and would have the same impact on the bankruptcy estate. Because the facts and legal issues underlying the Claims are virtually identical as to both the Debtors and the Non-Debtors, the Claims essentially constitute actions commenced *against* the Debtors and should be stayed.

41.     The Third Circuit also has found that the automatic stay applies to non-debtor parties: (1) where there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant such that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor, and (2) where stay protection is essential to the debtor's efforts of reorganization. *Id.* Indeed, the protection of the automatic stay extends to any action or proceeding against an interest of the debtor and the scope of that protection "is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation." *Kaiser Grp. Int'l, Inc. v. Kaiser Aluminum & Chem. Corp. (In re Kaiser Aluminum Corp., Inc.)*, 315 B.R. 655, 658 (D. Del. 2004).

42.     Here, the Debtors are the party with an interest in the insurance coverage rights under the Old Republic Policies sought to be used in the Claims because the Debtors have an obligation to reimburse claims, either from the JPMorgan L/Cs or otherwise in the event the JPMorgan L/Cs are exhausted. Likewise, the Debtors are the party with an interest in the insurance coverage rights under the Evanston Policies sought to be used in the Claims because the aggregate limits may be exhausted by virtue of the payments of such Claims.

43.     Thus, claims against the Debtors and the Non-Debtor Insureds are inextricably intertwined such that any use of the Old Republic or Evanston Policies to pay the Claims risks irreparable harm to the Debtors' interests.  *See Plessey Precision Metals, Inc. v. Metal Ctr., Inc. (In re Metal Center, Inc.)*, 31 B.R. 458 (Bankr. D. Conn. 1983) (to refuse application of the stay where the liability of a nondebtor is imputed to the debtor would defeat the very purpose and intent of section 362(a)(1)).

## II.     The Motions Fail To Show Cause To Lift The Automatic Stay of Claims.

44.     Section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the stay "for cause."  11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis.  *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.") (citing *Baldino*, 116 F.3d at 90.  Movants have the burden of establishing "cause" and, if they fail to do so, the Court should deny relief without requiring any showing whatsoever from the Debtors. *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999).  Only where the movant has sufficiently established cause does the burden shift to the Debtors to establish the absence of cause. *Id.*

45.     Because the Motions fail to show that the Old Republic and Evanston Policies are not property of the Debtors' estates and that the payment of the Claims will not adversely affect the rights of future claimants, each of the Motions fails to establish cause for lifting the stay as to the subject Claims.

46.     Indeed, if the stay is lifted on the Old Republic Claims, as requested by the Knight and Spahr Actions, Old Republic may be permitted to draw upon the JPMorgan L/Cs to defend or settle such claims. If the JPMorgan L/Cs prove insufficient to satisfy current and future claims, their use may diminish the Debtors' insurance policy rights, thereby depleting assets of the Debtors' estate.

47.     Likewise, the Debtors' estate may be diminished if the stay is lifted on the Evanston and Erickson Claims, and Evanston is permitted to draw upon the aggregate limits of the Evanston Policies to defend or settle such claims.  Because the payment of the aggregate limits directly erodes the amount of insurance available under the Evanston policies, such payment will deplete assets of the Debtors' estate.

## II.     In the Alternative, the FCR Opposes Lifting the Stay Until Such Time as it Can be Determined Whether the Subject Insurance Assets Are Sufficient To Cover All Claims.

48.     A determination regarding the scope of Old Republic's future coverage obligations would not be necessary if the JPMorgan L/Cs are, in fact, sufficient to cover all current and future claims under the Old Republic Policies, including the Knight Action and the Spahr Action.  However, Old Republic has offered no evidence regarding the potential value of all potential claims under its policies.  Thus, if Old Republic will not affirmatively assume the risk that the JPMorgan L/Cs are insufficient to cover all claims by agreeing to cover such claims itself, then the FCR objects to lifting the stay unless and until sufficient information becomes available to show that the JPMorgan L/Cs will cover all current and future claims.

49.     Similarly, if the aggregate limits under the Evanston policies and all policies in excess thereof are later determined to be sufficient to cover all current and future claims, then the FCR will have no objection to allowing the Evanston and Erickson Claims to proceed.

## CONCLUSION

WHEREFORE, James L. Patton, Jr., the Future Claimants' Representative, respectfully

requests that the Court deny the Motions for an order modifying or relief from the automatic stay

and award such other and further relief as it deems just and proper.

Dated: June 1, 2020
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Sharon M. Zieg
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
       eharron@ycst.com
       szieg@ycst.com
       skohut@ycst.com

*Counsel to the Future Claimants' Representative*

-and-

**GILBERT LLP**
Kami E. Quinn (DC Bar No. 500295)
Emily P. Grim (DC Bar No. 1006597)
Meredith C. Neely (DC Bar No. 280937)
700 Pennsylvania Ave, SE
Suite 400
Washington, DC 20003
Telephone: (202) 772-2200
Facsimile: (202) 772-3333
Email: quinnk@gilbertlegal.com
       grime@gilbertlegal.com
       neelym@gilbertlegal.com

*Counsel to the Future Claimants' Representative*