# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Boy Scouts of America and<br>Delaware BSA, LLC,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br>(Jointly Administered)<br><br>**Re: Docket Nos. 545, 575, 583, 678, 682 686 and 702** |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (I) LIMITED OBJECTION TO THE STAY RELIEF MOTIONS AND (II) LIMITED JOINDER TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' OMNIBUS OBJECTION TO THE STAY RELIEF MOTIONS

The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") of Boy Scouts of America and Delaware BSA, LLC (collectively, the "**Debtors**") by and through its undersigned counsel, hereby submits: (i) the following limited omnibus objection to (1) *Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtors Insureds and Related Defense Costs Under Insurance Policies* [Dkt. No. 678] (the "**Old Republic Stay Relief Motion**"), (2) *Evanston Insurance Company's Motion for Entry of an Order Pursuant to Section 362 of the Bankruptcy Code and Bankruptcy Rule 4001, Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insured Parties and Related Defense Costs Under Insurance Policies* [Dkt. No. 686] (the "**Evanston Stay Relief Motion**") (collectively, the "**Insurers' Stay Relief Motions**"), and (3)

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, TX 75038.

other motions to modify the automatic stay filed by individual claimants[2] (together with the Insurers' Stay Relief Motions, the "**Stay Relief Motions**"); and (ii) a limited joinder to the Official Committee of Tort Claimants' (the "**TCC**") *Omnibus Objection to the Stay Relief Motions* [Dkt. No. 702] (the "**TCC's Omnibus Objection**"), and respectfully states as follows:

1. The Creditors' Committee submits that there should be a comprehensive approach to addressing litigation claims that implicate the Debtors' insurance policies, whether they cover the Debtors or Non-Debtor Insureds,[3] because of the basic principle that any payout under such insurance could potentially erode coverage available to the estate and thus diminish recoveries by *all* creditors, including potentially impacting distributions on account of non-abuse claims covered by the policies. In that regard, the Creditors' Committee shares the TCC's concern that granting the Stay Relief Motions could potentially have the effect of favoring certain creditors over others in these Chapter 11 cases. No movant has presented sufficient evidence that lifting the automatic stay would not diminish the amount of insurance coverage available to otherwise satisfy claims against the estates, and with policies that cover both abuse and non-abuse claims (including *other* personal injury/wrongful death claims and employment-related claims) there is a potential that – absent evidence to the contrary – allowing certain creditors early access to

---

[2] Motions filed by individual claimants include the: (1) *Motion for Relief from the Automatic Stay of Courtney Knight and Stephen Knight, Jointly as the Surviving Parents of E.J.K., a Minor Child, and Stephen Knight, as Personal Representative of the Estate of E.J.K* [Dkt. No. 545] (the "**Knight Stay Relief Motion**"); (2) *Motion of Timothy and Karen Spahr, Individually and as Next Friends of ZRS, a Minor, for an Order for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code and the Plan Injunction to Liquidate the Claim and Collect from the Applicable Insurance Proceeds* [Dkt. Nos. 575 and 583] (the "**Spahr Stay Relief Motion**"); and (3) *Motion of Nichole Erickson and Mason Gordon for an Order Granting Limited Relief from the Automatic Stay of 11 U.S.C. Section 362* [Dkt. No. 682]. The Creditors' Committee previously filed a Reservation of Rights related to the Knight Stay Relief Motion and the Spahr Stay Relief Motion [Dkt. No. 708].

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the Motion for a Preliminary Injunction* [Adv. Proc. No. 20-50527, Adv. Dkt. No. 54].

insurance proceeds at this point could negatively impact recoveries of similarly situated creditors.

2. In the case of the Old Republic Policies,[4] a payment by Old Republic of loss or expense with respect to a Non-Stayed Claim would be subject to reimbursement or indemnification by BSA pursuant to the Program Agreement and not adequately secured by amounts available under the JPMorgan L/Cs, or otherwise would erode any aggregate limit under an Old Republic Policy. The movants have not presented evidence that lifting the automatic stay would not diminish amounts available under Old Republic Policies. Likewise, in the case of the Evanston Insurance Policies,[5] which do have aggregate limits, a payment by Evanston of loss or expense with respect to a Non-Stayed Claim would erode any aggregate limit under an Evanston Insurance Policy. Accordingly, absent an evidentiary showing that lifting the automatic stay will not negatively impact the total amount available to satisfy creditor claims that are covered by the policies, lifting the stay now could prejudice other creditors. If it could be established that lifting the stay in the manner suggested would *not* prejudice similarly situated creditors, there may be a basis to lift the stay in the manner requested.

3. The Creditors' Committee recognizes, however, that steps must be taken to avoid any inadvertent harm to the estates that would result from making insurance unavailable at this particular time. The Insurers' Stay Relief Motions assert that if they are unable to defend the claims brought against the Non-Debtor Insureds, they may be subject to default judgments. If default judgments occur, resulting claims could erode the available insurance proceeds, or could,

---

[4] Terms capitalized but not defined in this sentence have the definitions ascribed to them in the Old Republic Stay Relief Motion.

[5] Terms capitalized but not defined in this sentence have the definitions ascribed to them in the Evanston Stay Relief Motion.

in the case of the Old Republic Insurance Policies, result in increased payment obligations incurred by Boy Scouts of America pursuant to the Program Agreement that may not be adequately secured by the JPMorgan L/Cs.

4. The Creditors' Committee proposes that default judgments could be prevented either through (i) an adjournment of the motions to procedurally allow a potential extension of the automatic stay to cover general liability claims against the Non-Debtor Insureds, including the Non-Stayed Claims, or (ii) a limited modification of the automatic stay that allows the holders of Non-Stayed Claims to proceed against Non-Debtor Insureds (and allows the Insurers to defend the claims) without allowing entry of a judgement or settlement without further consent and Court approval. Proceeding under this second alternative, however, would require the implementation of numerous safeguards to avoid the issues described above. For example, under this scenario, if the Insurer believes it is prudent to settle a claim, the Debtors should be required to obtain the consent of the Creditors' Committee, the TCC, and the Future Claimants Representative (the "**FCR**"), seek Court approval before any insurance proceeds are disbursed, and be required to obtain a full release. In addition, the Creditors' Committee (and the TCC and FCR) should obtain periodic reporting of amounts disbursed by the Insurers in defense costs and require the consent of the two Committees and the FCR prior to incurring costs exceeding certain specified dollar thresholds. Such approval, in each instance, would take into account whether such payments would be likely to erode amounts of insurance proceeds available to fund creditors of the Debtors.

5. Finally, notwithstanding any statements made in the TCC's Omnibus Objection, the Creditors' Committee does believe that beginning the mediation process promptly is the first step to formulation of a confirmable chapter 11 plan, and that a variety of important substantive

discussions regarding various issues – including gating issues to a chapter 11 plan and substantive issues regarding such a plan – that implicate both the Creditors' Committee's and TCC's constituencies, as well as the FCR's constituency, can (and should) proceed well in advance of the bar date. The sooner mediation begins, the sooner all constituents can agree on a framework for resolution of all claims, including the non-abuse litigation claims.

Dated: June 1, 2020  
Wilmington, Delaware

Respectfully submitted,

**REED SMITH LLP**

By: */s/ Katelin A. Morales*  
Kurt F. Gwynne (No. 3951)  
Katelin A Morales (No. 6683)  
1201 Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: (302) 778-7500  
Facsimile: (302) 778-7575  
E-mail: kgwynne@reedsmith.com  
E-mail: kmorales@reedsmith.com  

-and-

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**  
Thomas Moers Mayer, Esquire  
Rachael Ringer, Esquire  
David E. Blabey, Jr., Esquire  
Jennifer R. Sharret, Esquire  
Megan M. Wasson, Esquire  
1177 Avenue of the Americas  
New York, NY 10036  
Telephone: (212) 715-9100  
Facsimile: (212) 715-8000  
E-mail: tmayer@kramerlevin.com  
E-mail: rringer@kramerlevin.com  
E-mail: dblabey@kramerlevin.com  
E-mail: jsharret@kramerlevin.com  
E-mail: mwasson@kramerlevin.com  

*Counsel to the Official Committee of Unsecured Creditors*