# EXHIBIT 5

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | ) | Jointly Administered at |
|  | ) | Case No. 03-35592-JKF |
| MID-VALLEY, INC., *et al.*, | ) |  |
|  | ) | Chapter 11 |
| Debtors. | ) |  |
|  | ) | Docket No. _____ |
|  | ) | Related to Docket No. 1153 and 1154 |
| _____ | ) |  |
|  | ) |  |
| MID-VALLEY, INC., *et al.*, | ) | Hearing Date and Time: |
|  | ) | May 10, 2004 at 9:00 a.m. |
| Proponents, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| VARIOUS RESPONDENTS, | ) |  |
|  | ) |  |
| Objectors. | ) |  |
| _____ | ) |  |

## RESPONSE OF ERIC D. GREEN, LEGAL REPRESENTATIVE FOR FUTURE CLAIMANTS, TO (I) LONDON MARKET INSURERS' OBJECTIONS TO CONFIRMATION OF THE DEBTORS' SECOND AMENDED AND RESTATED JOINT PREPACKAGED PLAN OF REORGANIZATION FOR THE DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE DATED APRIL 8, 2004; AND (II) CERTAIN INSURERS' BRIEF ON SELECTED PLAN CONFIRMATION ISSUES

Joel M. Helmrich (PA Bar No. 30733)
Kevin C. Hansen (PA Bar No. 21899)
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, Pennsylvania 15222-2304
Phone: (412) 456-2800
Facsimile: (412) 456-2864

-and-

James L. Patton Jr. (DE Bar No. 2202)
Edwin J. Harron (DE Bar No. 3396)
Rolin P. Bissell (PA Bar No. 53829;
        DE Bar No. 4478)
Sean T. Greecher (DE Bar No. 4484)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 571-6600
Facsimile: (302) 571-1253

Attorneys for the Legal Representative

Dated: May 5, 2004

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................3

    I.    The Plan Comports in With the Letter and Spirit of the Code and The
        Future Claimants Will Benefit Through Its Confirmation. ...........................3

        A.    The Plan Treats Current Claimants and Future Claimants in a
            Substantially Similar and Fair Manner. ...........................................3

        B.    The Plan is Adequately Funded To Protect the Interests of
            Future Demand Holders. ...................................................................7

            1.    The Plan Comports With Section 524(g)(2)(B)(i)(II). ...............8

            2.    The Plan Comports With Section 524(g)(2)(B)(i)(III). .........10

        C.    The Plan Is Proposed For a Proper Purpose and Is Not the
            Product of Collusion. .......................................................................11

            1.    The Necessity Requirements of Sections
                524(g)(2)(B)(i)(I) and (III) Do Not Require That the
                Debtor Be In Financial Distress. ...........................................12

            2.    The Plan Is The Product Of Vigorous Negotiations
                 Between Parties With Adverse Interests And Is Not The
                Product Of Collusion. ............................................................15

    II.    The Plan Does Not Improperly Favor The Interests Of Future
        Claimants. ...............................................................................................16

            1.    By Providing Recoveries To Future Claimants In Line
                With Historical Recoveries, The TDP Meets the
                Requirement of Section 524(g) That Future Claimants be
                Treated Similarly to Current Claimants. .................................17

            2.    The TDP Does Not Improperly Delegate Judicial
                Functions. ...............................................................................18

CONCLUSION .................................................................................................20

WP3:998158.3                                      061315.1001

## TABLE OF AUTHORITIES

**Page**

**Cases**

Ahearn v. Fibreboard Corp.,
   No. 6:93cv526, 1995 U.S. Dist. LEXIS 11532, 168-169 (E.D. Tex., July 27, 1995) .............. 19

Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),
   280 F.3d 648 (6th Cir. 2002) ........................................................................................ 6

In re AOV Indus.,
   792 F.2d 1140, 1152 (D.C. Cir. 1986) ......................................................................... 5

In re Dow Corning Corp.,
   244 B.R. 673, 676-677
   (Bankr. E.D. Mich. 1999) ............................................................................................ 14

In re Estate of Thompson,
   426 Pa. 270, 232 A.2d 625 (1967) .............................................................................. 16

In re Johns-Manville Corp.,
   68 B.R. 618, 628 (Bankr. S.D.N.Y. 1986) .............................................................. 7, 18

In re Joint Eastern & Southern Dists. Asbestos Litig. v. Falise,
   878 F. Supp. 473, 567-69 (E.D.N.Y. and S.D.N.Y. 1995) ........................................ 19

In re Monroe Well Serv., Inc.,
   80 B.R. 324, 335 (Bankr. E.D. Pa. 1987) .................................................................... 5

In re Muralo Co.,
   301 B.R. 690 (Bankr. D.N.J. 2003) ........................................................................... 14

In re PPI Enters., 228 B.R. 339, 345 (Bankr. D. Del. 1998),
   aff'd, 324 F.3d 197 (3d Cir. 2003) ............................................................................. 13

In re W. Asbestos,
   2003 Bankr. LEXIS 1897*8-9
   (Bankr. N.D. Cal. October 31, 2003) ........................................................................... 9

Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL Carbon Corp.),
   200 F.3d 154, 163 (3d Cir. 1999) .............................................................................. 14

Overfield v. Pennroad Corp.,
   42 F.Supp. 586 (E.D. Pa. 1942) ................................................................................. 16

**Statutes**

11 U.S.C. § 1122 ...................................................................................................................... 7

11 U.S.C. § 524(g)(2)(B)(i)(I) ............................................................................................... 13

11 U.S.C. §101(49)(A)(i) ....................................................................................................... 10

11 U.S.C. §1123(a)(4) .............................................................................................................. 7

**Other Authorities**

140 Cong. Rec. H 10,765 (October 4, 1994 ) ......................................................................... 4

Eric D. Green, the legal representative (the "Legal Representative") for future

unknown claimants in the above-captioned cases, through his undersigned counsel, submits this

Memorandum in Opposition to the objections filed by the London Market Insurers (Docket #

1153) and Certain Insurers (Docket # 1154)[1].

## INTRODUCTION

Several of the arguments the Insurers make to support their objections purport to

address the interests of future claimants, who are represented in this proceeding by the Legal

Representative, and not the Insurers. Further, these arguments suggest that aspects of the Plan

the Legal Representative negotiated do not comport with Section 524(g) of the Code. Because

the Legal Representative believes that confirmation of the Plan is in the interest of the future

claimants and that the Plan meets the requirements of Section 524(g), he submits this

Memorandum in Opposition to the Insurers' objections and requests that those objections be

overruled.[2]

Despite the Court's requirement and the Debtors' assurances that the Plan will be

"insurance neutral," and even though the Plan does not rely on any insurance assets to fund the

trusts that will pay the future claimants' demands, the Insurers persist in challenging

confirmation of the Plan. With no cognizable legal issue of their own to use as a basis for their

challenge, the Insurers have dressed their objections in an insincere concern for the future

claimants' welfare and their preference that those future claimants be confined to the tort system.

The Insurers' arguments on behalf of future claimants are unsupported, unhelpful and

unwelcome.

---

[1] In this memorandum, both are collectively referred to below as the "Insurers."

[2] In this opposition, the Legal Representative does not address every issue those objections raise. Only issues that
directly implicate the interests of future claimants are addressed herein.

As an initial matter, the Insurers do not represent future claimants' interests. The Court appointed the Legal Representative to represent the interests of future claimants in this proceeding (Docket # 610). The Legal Representative supports the Plan because it anticipates that the future claimants will receive 100 percent payment of the historical value of their claims. (Affidavit of Eric D. Green dated April 7, 2004 at ¶ 33, Confirmation Exhibit D-60). Moreover, the Insurers' objections do not seem to have the future claimants' interests at heart. The Insurers argue at times that the Plan should not be confirmed because it is not favorable enough to future claimants (for example, the Plan is improperly funded or does not treat future claimants as well as current claimants). But they also argue at times that the Plan is too favorable to future claimants because the Insurers believe the Trust Distribution Procedures ("TDP") the Plan puts in place may allow some future claimants to recover more than they could through the state law tort system. As shown below, each of the Insurers' objections is either legally flawed, factually flawed, illogical or all three.

The Insurers' objections have nothing to do with the merits of the TDP or the Plan; rather, those objections are driven by the Insurers' apparent fixation that some aspect of the Plan will have some collateral effect on their interests some time in the indefinite future. Given the Court's commitment to insurance neutrality, the Insurers' worries are not a legitimate reason to block confirmation of the Plan. The Plan well serves the interests of the current claimants, the future claimants, and the Debtors by removing these asbestos and silica claims from endless and expensive litigation, providing for the efficient resolution of those claims, and, most importantly, contributing the money to pay them. Accordingly, as more fully set forth below, the Insurers' attempts to block confirmation of the Plan are improper and their objections should be overruled.

WP3:998158.3                                                                                           061315.1001

## **ARGUMENT**

I.    **The Plan Comports in With the Letter and Spirit of the Code and The Future Claimants Will Benefit Through Its Confirmation.**

The Insurers offer three sets of arguments that the Plan should not be confirmed because it fails to comply with Section 524(g) in ways that are supposedly unfavorable to future claimants: (1) disparate treatment of claimants; (2) improper funding of the Asbestos PI Trust (the "Trust"); and (3) the Plan is not submitted in good faith.  Each of these arguments has no merit.

A.    **The Plan Treats Current Claimants and Future Claimants in a Substantially Similar and Fair Manner.**

The Insurers argue that the Plan treats various groups disparately and in a manner not allowed under the Code.  While the Plan does not treat claimants with unbending mathematical similarity, neither Section 524 nor Section 1123 of the Code require it to do so. The Plan treats the current claimants and future claimants in a substantially similar manner as the Code requires by paying them one hundred percent (100%) of historical settlement value of their claims or better.

Insurers argue four areas as show improper disparities in treatment:  (1) Harbison Walker demand holders receive more than  demand holder of the Debtors (LMI Memorandum at 33); (2) Future claimants are not treated in substantially the same manner as current claimants with prepetition settlements because current claimants receive full compensation for prepetition settlements even if those settlements exceed payment criteria under TDPs (LMI Memorandum at 33-34); (3) Claimants who previously settled with Harbison-Walker and claimants who have verdicts and judgments against Debtors receive "additions in lieu of interest," but claimants who settled as part of the Asbestos Claimants Settlement Agreement do not.(LMI Memorandum at

3

34); and (4) If the Payment Percentage under the TDP is less than 100%, certain claimants are limited to only 40% of the available funds, while others receive 60%. (LMI Memorandum at 34-35). According to the Insurers, the Plan must pay all these claimants exactly the same.

First and foremost, the Insurers have no standing to make these objections. If the Plan improperly favors current claimants over future claimants, or those who have judgments in hand over those who do not, or the more seriously ill over the less seriously ill, this is an objection those groups, or their representatives, can address as part of plan negotiations or object to as part of the confirmation process. Tellingly, none of these groups or their representatives have objected on these bases. Equally telling is that the Insurers make no attempt to describe how this disparate treatment affects any legitimate interest of theirs. Moreover, it is clear that the Insurers do not have any claimant's interests at heart. As discussed below, the Insurers shift position on this issue later in their objections when they argue that the TDP and the Plan is too favorable for the future claimants. Accordingly, the Insurers' arguments concerning the Plan's treatment of claimants should be taken with a grain of salt.

The Insurers' argument that some claimants are treated less well than other claimants is premised on Section 524(g)(2)(B)(ii)(V) which states in full:

> (V) subject to subsection (h), pursuant to court orders or otherwise, the trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms, that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner.

(Emphasis Added). The purpose of Section 524(g)(2)(B)(ii)(V) is to "give reasonable assurance that the trust will value, and be able to pay, similar present and future claims in substantially the same manner." 140 Cong. Rec. H 10,765 (October 4, 1994). Implicit in this is that dissimilar

4

claims can and should be treated differently.  The Plan complies fully with Section

524(g)(2)(B)(ii)(V).  While differing claims have differing values, the Trust and the TDP treat

like claims alike.

      For example, the Insurers argue that the interests of the claimants that settled as

part of the Asbestos Claimants Settlement Agreement are being sacrificed in favor of those

claimants who have judgments or binding settlement agreements in hand and that this violates

Section 1123(a)(4).  But this presupposes that those claimants are in similar positions.  The

Insurers' reading of Section 1123 (a)(4) is belied by the cases that have interpreted that statute.

While Section 1123(a)(4) requires the "same treatment" for all claims within a single class, this

requirement does not mandate that a plan proponent apply precisely the same process to each

claim within a class.  <u>See, e.g.</u>, <u>In re AOV Indus.</u>, 792 F.2d 1140, 1152 (D.C. Cir. 1986)

(declining to hold that 1123(a)(4) requires "that all class members must be treated precisely the

same in all respects"); <u>In re Monroe Well Serv., Inc.</u>, 80 B.R. 324, 335 (Bankr. E.D. Pa. 1987)

(explaining that "[e]quality of treatment thus becomes a matter of degree, not one of

mathematical exactitude").

      Within a single class, each claim has individual legal characteristics that may

warrant the application of individual steps to liquidate and allow the claim.  Claimants who have

reduced a claim to judgment are in a different position than those who have not.  The Plan

simply recognizes this reality.

      Moreover, this argument improperly conflates the claims allowance process and

the liquidation process (which is outside the scope of §1123) with the <u>treatment</u> of allowed,

liquidated claims.  Upon the allowance and liquidation of claims, the treatment of claims

WP3:998158.3                                                                                    061315.1001

(payment consistent with the Payment Percentage) is uniform. The Plan must, and does, impose a uniform overall process for paying claims once they are allowed.

The Trust, through the process described by the TDP, is the vehicle for both the allowance and payment of asbestos-related claims under the Plan. Each claimant holding an unliquidated claim that meets the standards for liquidation prescribed by the TDP will be paid in accordance with the Payment Percentage. Each claimant holding a settled or liquidated claim bypasses the liquidation process and, based on the liquidated amount set by this Court, also will be paid in accordance with the calculated Payment Percentage.

The Proposed TDP does not subject Settled Asbestos PI Trust Claims to the same elaborate evidentiary process as unliquidated asbestos personal injury claims because such claims already will have been liquidated when they are presented to the Trust. If the Trust required the Settled Asbestos PI Trust Claims to meet the same evidentiary requirements as unliquidated claims or to await payment in the same queue with unliquidated claims during the liquidation process, its goal "to treat all claimants equitably" would be frustrated. (See Asbestos TDP, §2.1.)

The liquidation process, at least initially, contemplates a Payment Percentage of 100% to all claimants, regardless of the claimant's disease class. However, if the Payment Percentage declines to an amount less than 100%, the claims are liquidated in amounts that comport with the relative severity of the level of claims held. Again, this bears upon the liquidation and allowance portion of the Trust's duties. This process mirrors the claim resolution process in the tort system. For that reason, Insurer's reliance on Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648 (6th Cir. 2002) is misplaced. In that case, the proposed Plan allowed foreign claimants certain procedural rights and protections

6

that were not accorded to domestic claimants in the same class. Here, all claimants have the

same right to access the funds available from the Trust, and to allege the various levels of injury.

It is the fact of the claimant's type of injury, not any perceived limitations of rights accorded to

various claimants, that would lead to allowance of a certain claimant's Level I claim at a

different level than other claimants' claims. This process of claim liquidation is distinct from the

payment of an ultimately allowed Asbestos PI Trust Claim[3].

For all these reasons, the Insurers arguments that the Plan does not treat claimants

fairly should be overruled.

## B.    The Plan is Adequately Funded To Protect the Interests of Future Demand Holders.

The Insurers challenge the adequacy of the funding of the Trust on two technical

grounds. (1) The Trust does not meet the "fund[ing] requirement of Section 524(g)(2)(B)(i)(II)

because the Insurers claim it does not "own" the stock interests of at least one of the Debtors.

(LMI Memorandum at 35-36; Certain Insurers Memorandum at 10-11). (2) The Plan implicitly

violates Section 524(g)(2)(B)(i)(III) because the conditions under which the Trust could take

control of one of Debtors subsidiaries is highly unlikely because the Plan is so well funded and

Halliburton and DII are financially strong. (Certain Insurers Memorandum at 7-10). Both of

these arguments are based on what purport to be strict readings of Section 524(g), but each is

---

[3]  Insurers also argue, albeit only in a footnote, that the Plan violates 11 U.S.C. §1122 because it classifies all
Asbestos PI Trust Claims in the same class, even though the claims of certain of the holders (Level I, II, or
III claimants) have a different legal character than the claims of Level IV, V, VI, VII, and VIII claimants.
The Insurers also argue that "[t]he inclusion of the holders of demands who have no current legal claims
against the Debtors into a class with claimants violates sections 1122(a) and 1123(a)(4) of the Bankruptcy
Code…." (LMI Memorandum, at 35 n. 29). However, the bankruptcy court dismissed this argument in In
re Johns-Manville Corp., 68 B.R. 618, 628 (Bankr. S.D.N.Y. 1986) ("Whether these parties in interest
[future claimants] have claims that are cognizable in a reorganization proceeding, however, is not an issue
which needs to be determined in order to confirm this Plan. Instead, the Plan treats the claims as 'other
asbestos obligations' ('OAO'), to be funneled into the same claims handling facility which administers the
claims of present asbestos victims.").

WP3:998158.3                                                                          061315.1001

belied by the plain language of that statute.  Moreover, the spirit of Section 524(g) is
unquestionably met here.

The purpose of these funding requirements is to insure there is adequate funding
to pay the future claimants' claims.  The funding the Plan puts in place does this, and Insurers'
do not seriously suggest otherwise.  In fact, once again, the Insurers argument that the funding is
inadequate is inconsistent with other arguments they make in favor of their objections.  As
discussed below, the Insurers also argue that the Plan should not be confirmed because these
companies are simply to well off to avail themselves to the protections and methods of resolution
that Section 524 provides.  From the future claimants' perspective however, the key test is
whether there will be money to pay their claims. The Plan answers this question with a
resounding "yes," because the Trust will receive 59.5 million shares of Halliburton stock along
with other consideration.  Once again, it is difficult to see in whose interest the Insurers
challenge the funding of the Trust or how they have standing to do so.

### 1.      The Plan Comports With Section 524(g)(2)(B)(i)(II).

Before discussing the technical requirements of Section 524(g), it is worth
reviewing how the Trust are funded here.

The Trust, as set forth in Plan and as described in the Affidavit of Albert O.
Cornelison in Support of Debtors' Chapter 11 Petitions and First Day Motions and Applications
(the "Cornelison Affidavit"), is to be funded, directly or indirectly, by the Debtors, Halliburton,
and HESI on their own behalf and on behalf of the Debtor-Affiliated Protected Parties.  Under ¶
9.2(a) of the Plan, the Trust is to be funded with: (i) cash contributions in an amount sufficient to
pay all Qualifying Settled Asbestos PI Trust Claims pursuant to the Plan (the "Asbestos PI Trust
Funding Agreement"); (ii) 59.5 million shares of common stock of Halliburton (the "Halliburton

8

Asbestos PI Trust Stock"); (iii) a one-year, non-interest bearing note from DII Industries in a

principal amount of over $30 million (the "Asbestos PI Trust Note"); (iv) a guaranty of the note

by Halliburton (the "Halliburton Asbestos PI Trust Guarantee"); (v) a pledge by HESI of 51% of

its Interests in DII Industries to secure payment of the note (the "DII Industries Pledge

Agreement"); and (vi) the right to receive certain payments resulting from insurance recoveries

on account of asbestos-related personal injury liabilities (the "Asbestos PI Trust Additional

Funding Agreement").

      The Legal Representative and his advisors negotiated for this funding and have

valued it. Of most significance to future claimants, this funding has an estimated present value

of $1.8 billion, which exceeds the net present value predicted to be necessary to pay future

demands in full. (Affidavit of Thomas Vasquez dated April 8, 2004 at ¶29, Confirmation

Exhibit D-59). In most bankruptcy proceedings, the future claimants cannot expect to get paid

one hundred percent (100%) of their claim value. Indeed, many trusts, including the

paradigmatic Manville trust, pay less than half of claim values. See e.g., In re W. Asbestos, 2003

Bankr. LEXIS 1897 *8-9 (Bankr. N.D. Cal. October 31, 2003) (estimates showing claimants

would receive 11.5 % initial payment percentage absent insurance recoveries).

      Because the funding of the Trust here is so clearly more than adequate and

favorable to future claimants, the Insurers' challenges to the funding are entirely technical and

based on their reading additional requirements into Section 524(g)(2)(B)(i) that simply are not

there. Section 524(g)(2)(B)(i)(II) states that a trust established under this provision:

> (II) is to be funded in whole or in part by the securities of 1 or
> more debtors involved in such plan and by the obligation of such
> debtor or debtors to make future payments, including dividends;

Insurers are simply incorrect in arguing that the Debtors have failed to fund the Trust with a

security. (Certain Insurers Memorandum at 10). Section 524(g)(2)(B)(i)(II) is satisfied by the

Asbestos PI Trust Note, as the Trust is receiving a non-interest bearing note from one of the

Debtors, DII Industries, and the future (quarterly) payments thereunder fulfill the Debtor DII

Industries' statutory obligation to make future payments to the Trust. The Asbestos PI Trust

Note is, by its terms, an obligation of DII Industries to make a future payment, due one year after

issuance. This constitutes a security, as the term security is defined by the Bankruptcy Code to

include a note. 11 U.S.C. §101(49)(A)(i).

### 2. The Plan Comports With Section 524(g)(2)(B)(i)(III).

Section 524(g)(2)(B)(i)(III) states that the Trust:

> (III) is to own, or by the exercise of rights granted under such plan
> would be entitled to own if specified contingencies occur, a
> majority of the voting shares of --
> > (aa) each such debtor;
> > (bb) the parent corporation of each such debtor; or
> > (cc) a subsidiary of each such debtor that is also a debtor;

(Emphasis Supplied). The Trust clearly meets this requirement. It is funded in part by a $30.7

million note secured by a pledge of the majority of the voting shares of DII Industries. (Plan,

Art. 9.2(a); Asbestos PI Trust Agreement, §1.3) If the note goes unpaid, the Trust can exercise

its rights under the pledge.

The Insurers' argument under Section 524(g)(2)(B)(i)(III), which they also call

the "control" requirement, is not that the technical terms of statute are not met. Instead, the

Insurers argue that this contingency is "illusory because, considering DII's cash on hand and

Halliburton's financial ability, it is highly unlikely that the Note will go unpaid, a default

declared and the pledge exercised. (Certain Insurers Memorandum at 8).

There are two flaws in this argument.

WP3:998158.3
061315.1001

First, the contingency is not illusory.  This is not a situation of impossibility such as "ten Sundays in a month" as the Insurers suggest.  (Certain Insurers Memorandum at 7).  The purpose of the contingency is to allow the Trust to take control of the Debtors' affairs if its obligations to the Trust cannot be met.  Although it is unlikely that the condition precedent will occur because of the Debtors' current financial position, should the Debtors' financial condition decline – the event that the Section 524(g)(2)(B) is intended to protect against – the DII Industries Pledge Agreement is in place to protect the Trust's interests.

Second, Halliburton's and DII's current fiscal wherewithal, the reason that the contingency is unlikely, is a beneficial circumstance from the point of view of the Trust and the future claimants.  That the Debtors have ample financial resources to make sure their obligations to the Trust are secure is good news.  The Trust's primary purpose is to pay claims to those who are sick, not to manage the business affairs of the Debtors.  Although the power to assert control over one of the Debtors through control of a majority of its stock is a safeguard if the Debtors' financial position were to deteriorate, the Trust would prefer that the contingency never materialize. Reflecting this, the Legal Representative negotiated to take more Halliburton stock rather than a larger Note from DII.  Put simply, the stock that the Trust will receive is a better quality and more valuable asset than the larger note the Insurers suggest the Trust should have bargained for.

## C.    The Plan Is Proposed For a Proper Purpose and Is Not the Product of Collusion.

The Insurers argue that the Plan is not proposed in good faith because there is no absolute financial necessity that the Debtor and Halliburton obtain a channeling injunction pursuant to Section 524(g); instead, they assert, that the Plan is part of a collusive agreement between Halliburton, the Debtors, the  asbestos plaintiffs' bar and others.  (Certain Insurers

11

Memorandum at 11-13; LMI Memorandum at 36-39). Section 524(g) has no requirement that it be the only feasible alternative for the Debtors. That the Debtors are otherwise financially healthy does not preclude the good faith use of Section 524(g), which turns on the nature of the continuing claims a debtor is likely to experience in the future rather than a debtor's immediate financial condition. There can be no question that the claims present a long term threat to the Debtors' ability to pay claims in the future. Using the channeling injunction provisions of the Section 524 is an appropriate way to administer the mass of asbestos and silica claims that the Debtors and Halliburton face. Moreover, because the Plan provides the future claimants with an expected recovery of one hundred percent of historical values, it is superior to the tort system and its attendant risks or the risk that Halliburton and the Debtors might not be able to pay one hundred percent (100%) at some later date. In addition, that the Debtors, the current claimants, and future claimants all believe the Plan is in their interest shows rational self-interest and does not imply improper collusion. Accordingly, there is no basis to challenge the "good faith" of the Plan.

> 1.   **The Necessity Requirements of Sections 524(g)(2)(B)(i)(I) and (III) Do Not Require That the Debtor Be In Financial Distress.**

The Insurers' argument that the "necessity" requirements of Sections 524(g)(2)(B)(i)(I) and (III) require that the Debtors and Halliburton be in financial distress is unsupported by the plain text of the statute. Those Sections state:

> (ii) subject to subsection (h), the court determines that—
>   (I) the debtor is likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims that are addressed by the injunction;
>   (II) the actual amounts, numbers, and timing of such future demands cannot be determined;

(III) pursuit of such demands outside the procedures
prescribed by such plan is likely to threaten the plan's purpose to
deal equitably with claims and future demands;

These three requirements have been met.  There is no question that Debtors are

likely to be faced with substantial future demands, that the actual amounts of these claims are not

fully determinable at this time, and that to allow claimants to pursue claims outside the Plan

would defeat the purpose of the Plan.  (Memorandum in Support of Approval of Disclosure

Statement at 24-31, Docket # 1155).

Current solvency is not the measure of whether a filing is appropriate.  The

appropriateness of a chapter 11 filing or the good faith of the debtors is viewed from the

perspective of whether the filing furthers a purpose and yields a result for which the Bankruptcy

Code was intended.  See In re PPI Enters., 228 B.R. 339, 345 (Bankr. D. Del. 1998), aff'd, 324

F.3d 197 (3d Cir. 2003) (holding that a debtor who filed bankruptcy for the sole purpose of

capitalizing on a statutory cap for a claim pursuant to section 502(b)(6) of the Bankruptcy Code

filed bankruptcy in good faith, as the debtor used the Code provision "for exactly its intended

purpose").  Congress has expressly demonstrated, through the enactment of section 524(g) of the

Bankruptcy Code, that it intended to permit companies such as Halliburton to utilize the

bankruptcy process to resolve the significant problems that arise from asbestos liability.  See 11

U.S.C. § 524(g)(2)(B)(i)(I) (debtors may create trusts in bankruptcy that "assume the liabilities

of a debtor which at the time of entry of the order for relief has been named as a defendant in

personal injury, wrongful death, or property-damage actions seeking recovery for damages

allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products").

Certainly, if Congress created a provision in the Bankruptcy Code that applies expressly to the

WP3:998158.3
061315.1001

resolution of asbestos liability under the auspices of the Code, use of the bankruptcy process by
Halliburton to resolve such liability is congruent with the objectives and purposes of the Code.

The appropriateness of initiating a chapter 11 bankruptcy case to resolve the mass
tort liability of presently solvent companies has been recognized in several cases, including
asbestos-related cases. See e.g., In re Muralo Co., 301 B.R. 690 (Bankr. D.N.J. 2003) (holding
that a currently solvent small company could utilize the bankruptcy process for "repose needed
to gather themselves and deal with the maelstrom" of asbestos liability facing it); In re Dow
Corning Corp., 244 B.R. 673, 676-677 (Bankr. E.D. Mich. 1999) ("The Plan was proposed in a
legitimate effort to rehabilitate a solvent but financially-distressed corporation, besieged by
massive pending and potential future product liability litigation against it - an articulated policy
objective of chapter 11.")  Moreover, the Third Circuit Court of Appeals has noted that the
Bankruptcy Code "encourages early filing" as a means to rehabilitate a business before it is faced
with a hopeless situation. Official Comm. of Unsecured Creditors v. Nucor Corp. (In re SGL
Carbon Corp.), 200 F.3d 154, 163 (3d Cir. 1999).  In other words, it is not necessary for a debtor,
who appreciates an impending threat to its business, to wait until the threat becomes immediate
and overwhelming before working toward remedying the circumstances. See id. at 163; see also
Muralo, 301 B.R. at 701.

From a policy standpoint, the remedy that is proposed under the Plan is one that
accomplishes dual goals:  (i) it heads off future financial distress that would result from a flood
of asbestos personal injury actions and (ii) it provides value to future claimants by establishing a
trust that works to assure future claimants of recovery for their claims in line with settlements
paid by Halliburton prior to the initiation of the bankruptcy cases.  The end result is a benefit to
Halliburton in providing a manageable solution for the present and future claimants while

14

avoiding the risk to future claimants that Halliburton may not always be available to directly
compensate such future claims. Finally, the solution provides a more generalized societal benefit
by reducing the transactional costs and strain on the court system resulting from ongoing
litigation, risks of inconsistent judgments to various claimants, and other tensions arising out of
litigation of asbestos personal injury suits.

The Insurers are unable to explain who benefits by keeping these tens of
thousands of claims within the tort system or why a company must wait until it is near collapse
before attempting to fund such a Plan. Although they suggest that future claimants are having
rights "cut-off" (Certain Insurers Memorandum at 12), it is difficult to see how they are cut-off
from anything meaningful when they are to receive payments based on one hundred percent
(100%) of the historical average for such claims.

### 2.    The Plan Is The Product Of Vigorous Negotiations Between Parties With Adverse Interests And Is Not The Product Of Collusion.

The Insurers' argument that the Plan was procured through an improper and
collusive deal is based completely on counter-factual conjecture which is belied by the facts that
have been submitted in these proceedings and will be presented at the confirmation hearing that
the Plan is the result of vigorous negotiation (See e.g., Green Affidavit at ¶¶ 14, 18,
Confirmation Exhibit D-60). Moreover, the Insurers' collusion theory makes no logical sense
and should be rejected for that reason as well. Under the Insurers' theory, Halliburton has an
incentive to overpay plaintiffs beyond their likely exposure today so that after years of insurance
coverage litigation Halliburton can get it all back from the Insurers. (LMI Memorandum at 37-
39). A plausible incentive to overpay is simply not there.

Nor can it be plausibly argued the plaintiffs' lawyers dominated Halliburton's'
affairs prepetition as Insurers suggest was the case in the AC&S bankruptcy. ( LMI

Memorandum at 37-38). To the contrary, that financial crisis is not immediate strengthens Halliburton's bargaining position. The Insurers' commonplace observations that Halliburton is interested in maximizing the return for its stockholders and that the plaintiffs' lawyers stand to get paid under contingent fee agreements as claims are resolved do not come close to showing improper motive on Halliburton's or the plaintiffs' lawyers' part.[4]

The Insurers' "good faith" and "collusion" challenges are without basis and do not support an objections to the Plan.

## II.    The Plan Does Not Improperly Favor The Interests Of Future Claimants.

Having made several arguments that the Plan inadequately protects future claimants, the Insurers reverse field and argue that the Plan improperly favors future claimants. The Insurers advance  four sets of arguments, all grounded on the premise that the TDP the Plan seeks to put in place is not as rigorous as the state law tort system and that this may impair the Insurers' rights at some future date even though the Plan will be "insurance neutral." Insurers claim that: (1) The TDP is too lax and in particular allows payments to claimants who have less serious asbestos related disease, which Insurers claim, may undermine  their "coverage defenses." (LMI Memorandum at 39-43).  (2) The Plan would allow payments to future claimants whose claims may be barred by the statute of limitations, which Insurers claim is

---

[4]    The Insurers also argue in a footnote that the Trust will be dominated by the asbestos plaintiffs' bar and is so rife with conflict of interest that it violates Pennsylvania trust law.  The trusts have independent trustees and the Legal Representative will continue after confirmation. The Insurers' claim of improper domination simply has no factual basis. Moreover, the cases the Insurers cite do not support their theory.  The Insurers do not cite any provision of Pennsylvania trust law that enunciates a *per se* rule that a trustee may not represent individuals who are putative beneficiaries of a trust. The cases cited by LMI – In re Estate of Thompson, 426 Pa. 270, 232 A.2d 625, 628 (1967) and Overfield v. Pennroad Corp., 42 F.Supp. 586, 608 (E.D. Pa. 1942) – do not stand as authority for the drastic conclusion LMI proposes, that because of the alleged divergent interest of certain putative claimants to the trust who the Proposed Trustees represent, the trust is *per se* invalid. The Proposed Trustees will be held to extremely high standards of conduct under Pennsylvania trust law. Overfield v. Pennroad, 42 F. Supp. at 608. (holding that the rule under Pennsylvania law "holds a person occupying a dual position to the strictest accountability to his trust"). Nothing in the case law insurers cite support their argument that the Asbestos PI Trust Agreement violates Pennsylvania law.

16

beyond this Court's power under section 502(b).  (LMI Memorandum at 43-44).  (3)  The Plan

improperly purports to adjudicate future asbestos demands, which the Insurers claim is beyond

the scope of what Section 524(g) allows.  (LMI Memorandum at 44-47).  (4) The Plan

improperly purports to authorize the Trust to "allow" claims, which Insurers claim violates

Section 502(b) as an improper delegation of a judicial function.  (LMI Memorandum at 51-55).

None of this is correct.

Before refuting these arguments in their particulars, it is worth noting that all of

these arguments rest on a mischaracterization of the TDP that the Plan puts in place.  Indeed, it is

difficult to imagine any TDP that the Insurers would find acceptable.  Ultimately, the Insurers

argument amount to a not too thinly veiled attack on the entire idea of Section 524(g) and the

future claimants having any alternative to the tort system.

### 1.    By Providing Recoveries To Future Claimants In Line With Historical Recoveries, The TDP Meets the Requirement of Section 524(g) That Future Claimants be Treated Similarly to Current Claimants.

The Insurers complain that by allowing claimants with Disease Levels I, II and III

to recover, the TDP adopts a far too "lenient" medical standard than what state tort law allows

and that this may prejudice the Insurers in later insurance coverage litigation.  (LMI

Memorandum at 39-43)[5].  This argument is misplaced for three reasons.  First, it misstates what

the TDP provides.  If a claim would not be cognizable or valid under applicable tort law – stated

another way, if a claimant would not have had a valid cause of action against the Debtors had

this bankruptcy not been filed – then such claim will not be allowed or liquidated by the

Asbestos PI Trust.  (Asbestos TDP at §2.2 (indicating a claim will only be allowed or liquidated

---

[5]    The Insurers renaming these disease levels as "unimpaired" misses the mark. While claimants at these levels may have less severe conditions that those at the higher levels, the TDP does not contemplate paying claimants who are totally unimpaired.

061315.1001

"if the Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system"))[6]. Second, the Insurers' argument ignores how the settlement values for the TDP were developed. The settlement values are based on historical recoveries. The TDP follows this approach because it must meet the requirement of Section 524(g) that future claimants be treated in a way that is substantially similar to past claimants. By definition the TDP is right on line with historical experience in the tort system and is not overly generous or lenient. Third, the argument that approval of the TDP might undermine the Insurers' position is answered by the Court's decision that the Plan will be insurance neutral. That the Insurers suffer from anxiety over how future coverage litigation might turn out is not a reason to object to the Plan.

## 2.    The TDP Does Not Improperly Delegate Judicial Functions.

The Insurers' arguments that the TDP is invalid because it relaxes state tort law statute of limitations, improperly adjudicates claims and improperly determines allowances all rest on the theory. By confirming the Plan that enacts the TDP, the Insurers believe this Court is exceeding its jurisdiction because the Court will be "allowing" claims that cannot be enforced under state law, in contravention of Section 502(b)(1). These arguments depend on the faulty assumption that the valuation process Section 524(g)(2)(B)(ii)(V) establishes is a subset of and governed by the allowance procedures that Section 502 sets forth. By adopting the valuation procedures set forth in Section 524(g), the court is not "allowing" a claim under Section 502(b).

---

[6]    Further, in response to LMI's assertion that the Plan violates §1122 because certain putative claimants with Level I, II, or III claims do not have cognizable claims under the laws of many states, this question is also not one for confirmation. See In re Johns-Manville Corp., 68 B.R. 618, 628 (Bankr. S.D.N.Y. 1986) (holding that because the proposed plan was to funnel all future claims to a trust, the issue of whether future claimants had "claims that are cognizable in a reorganization proceeding…is not an issue which needs to be determined in order to confirm this Plan.")

18

If the Insurers' arguments had merit, no meaningful TDP could ever pass legal muster and section 524(g) would be rendered meaningless.

The Insurers tip their hand and show the obtuseness of their position when they suggest that the only procedures that Section 524(g) allows is a three step process that requires: (1) full litigation of the claim in state or federal court, (2) litigation to allow the claim in bankruptcy court, and then (3) payment by the Trust. (LMI Memorandum at 54). Requiring that all the claims pass through state or federal court, and then bankruptcy court, before they can go through the TDP would eviscerate one of the cardinal purposes of Section 524(g), which is its removal of this avalanche of claims from those courts. What the Insurers suggest is the proper role of the Trust would do nothing to limit the costs of defending asbestos personal injury suits, the costs of which will diminish the Trust's ability to pay meritorious claims. Claim disputes would not only clog the tort system, they would clog this Court's docket for the next thirty years, if not longer. Section 524(g) was drafted to avoid, not engender, this result.

Given these realities, it is no wonder that courts have embraced similar TDPs as being preferable to the tort system. "[T]he Court finds that...the operation of the Trust pursuant to the Trust Agreement and TDP will result in a far more efficient and equitable system of administering claims and compensating claimants. A claim against the Trust will, on average, be processed and resolved much more quickly than a similar claim would be processed and resolved in the tort system...." Ahearn v. Fibreboard Corp., No. 6:93cv526, 1995 U.S. Dist. LEXIS 11532, 168-169 (E.D. Tex., July 27, 1995); In re Joint Eastern & Southern Dists. Asbestos Litig. v. Falise, 878 F. Supp. 473, 567-69 (E.D.N.Y. and S.D.N.Y. 1995) (discussing generally the fairness of the settlement of Manville asbestos claims pursuant to the Manville TDP). Congress recognized the attendant costs involved with litigating hundreds of thousands of asbestos

19

exposure personal injury lawsuits, both to the debtors involved and to the court system in general
and enacted Section 524(g). This Court should resist the Insurers' baseless attempts to repeal it.

The Insurers oppose the TDP for the same reason the claimants and the Debtors
favor them. The TDP provides an efficient way to resolve these claims. While having these
claims resolved slowly through the tort system might be in the Insurers' narrow self interest, it is
not a valid basis for objecting to the TDP or the Plan. The Insurers' arguments that these claims
can only be resolved through the state law tort system is wrong and works against future
claimants' interests.

## CONCLUSION

For the foregoing reasons, the Insurers' objection should be overruled and the
Plan should be confirmed.

Dated: May 5, 2004                     Respectfully submitted,

                                       MEYER, UNKOVIC & SCOTT LLP

                                       /s/Joel M. Helmrich
                                       Joel M. Helmrich (PA Bar No. 30733)
                                       Kevin C. Hansen (PA Bar No. 21899)
                                       1300 Oliver Building
                                       Pittsburgh, Pennsylvania 15222-2304
                                       Phone: (412) 456-2800
                                       Facsimile: (412) 456-2864

                                       – and –
                                       YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                       James L. Patton Jr. (DE Bar No. 2202)
                                       Edwin J. Harron (DE Bar No. 3396)
                                       Rolin P. Bissell (PA Bar No. 53829; DE Bar No. 4478)
                                       Sean T. Greecher (DE Bar No. 4484)
                                       The Brandywine Building
                                       1000 West Street, 17th Floor
                                       Wilmington, Delaware 19801
                                       Phone: (302) 571-6600
                                       Facsimile: (302) 571-1253

                                       Attorneys for the Legal Representative

WP3:998158.3                                                           061315.1001

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | Jointly Administered at |
| MID-VALLEY, INC., et al., | ) | Case No. 03-35592 JKF |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

## OFFICIAL SERVICE LIST EFFECTIVE 03/25/04

### Debtors

Albert O. Cornelison
Executive Vice President &
General Counsel
Halliburton Company
1401 McKinney, Suite 2400
Houston, TX 77010
Ph: 713.759.2620
Fax: 713.759.2622
Email: bert.cornelison@halliburton.com

Bruce Stanski
Senior Vice President and CFO
Kellogg Brown & Root
4100 Clinton Drive
Houston, TX 77020
Ph: 713.753.4908
Fax: 713.753.2017
Email: bruce.stanski@halliburton.com

### Counsel to Mid-Valley, Inc., et al.

Jeffrey N. Rich, Esquire
Kirkpatrick & Lockhart LLP
599 Lexington Avenue
New York, NY 10022-6030
Ph: 212.536.4097
Fax: 212.536.3901
Email: jrich@kl.com

Michael G. Zanic, Esquire
Kirkpatrick & Lockhart LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222
Ph: 412.355.6219
Fax: 412.355.6501
Email: mzanic@kl.com

Frank H. Griffin, III, Esquire
Gollatz, Griffin & Ewing
Four Penn Center, Suite 200
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103-2803
Ph: 215.563.9400
Fax: 215.665.9988
Email: fgriffin@ggelaw.com

## Accountants & Financial Consultants to Mid-Valley, Inc., et al.

Thomas D. Bibby
KPMG
717 North Harwood Street
Suite 3100
Dallas, TX 75201
Ph: 214.840.2479
Fax: 214.840.2180
Email: tbibby@kpmg.com

Dr. Francine K. Rabinovitz
6033 W. Century Boulevard, Suite 890
Los Angeles, CA 90045
Ph: 310.645.9000
Fax: 310.645.8999
Email: frabinov@aol.com

## Counsel to Committee of Asbestos Creditors

Peter Van N. Lockwood, Esquire
Caplin & Drysdale, Chartered
One Thomas Circle N.W.
Washington, DC 20005
Ph: 202.862.5000
Fax: 202.429.3301
Email: pvnl@capdale.com

Elihu Inselbuch, Esquire
Caplin & Drysdale, Chartered
399 Park Avenue, 27th Floor
New York, NY 10022-4614
Ph: 212.319.7125
Fax: 212.644.6755
Email: ei@capdale.com

Philip E. Milch, Esquire
Campbell & Levine, LLC
1700 Grant Building
Pittsburgh, PA 15219
Ph: 412.261.0310
Fax: 412.261.5066
Email: pem@camlev.com

## Counsel to Halliburton and HESI

Jack L. Kinzie, Esquire
Michael C. Li, Esquire
Baker Botts LLP
2001 Ross Avenue
Dallas, TX 75201
Ph: 214.953.6500
Fax: 214.953.6503
Email: jack.kinzie@bakerbotts.com
Email: michael.li@bakerbotts.com
Email: bankruptcydallas@bakerbotts.com

Tony M. Davis, Esquire
Baker Botts LLP
One Shell Plaza
910 Louisiana
Houston, TX 77002-4995
Ph: 713.229.1234
Fax: 713.229.1522
Email: tony.davis@bakerbotts.com

**Office of the U.S. Trustee**

Joseph Sisca, Esquire
Office of the U.S. Trustee
970 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
Ph: 412.644.4756
Fax: 412.644.4785
Email: joseph.s.sisca@usdoj.gov

**Counsel to Legal Represen-
tative for Future Claimants**

James L. Patton Jr., Esquire
Edwin J. Harron, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Ph: 302.571.6600
Fax: 302.571.1253
Email: jpatton@ycst.com
Email: eharron@ycst.com

Joel M. Helmrich, Esquire
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA 15222
Ph: 412.456.2841
Fax: 412.456.2864
Email: jmh@muslaw.com

**Others**

L. John Argento, Esquire
Jason A. Archinaco, Esquire
John W. Burns, Esquire
Dickie, McCamey & Chilcote, P.C.
Two PPG Place - Suite 400
Pittsburgh, PA 15222
Ph: 412.392.5413
Fax: 412.392.5367
Email: argentl@dmclaw.com
Email: archinj@dmclaw.com
Email: burnsj@dmclaw.com

Mark D. Plevin, Esquire
Clifton S. Elgarten, Esquire
Robert T. Ebert, Esquire
Frederick W. Claybrook, Jr., Esquire
Leslie A. Epley, Esquire
James T. Hubler, Esquire
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Ph: 202.624.2500
Fax: 202.628.5116
Email: mplevin@crowell.com
Email: celgarten@crowell.com
Email: rebert@crowell.com
Email: rclaybrook@crowell.com
Email: lepley@crowell.com
Email: jhubler@crowell.com

Steven P. Rice, Esquire
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
Ph: 949.263.8400
Fax: 949.263.8414
Email: srice@crowell.com

Philip D. Anker, Esquire
Wilmer, Cutler & Pickering LLP
399 Park Avenue
New York, NY 10022
Ph: 212.230.8800
Fax: 212.230.8888
Email: philip.anker@wilmer.com

Katherine Worthman, Esquire
James A. Shepherd, Esquire
Knight Elsberry, Esquire
Jeremy Simon, Esquire
Lillian Potter, Esquire
Wilmer, Cutler & Pickering LLP
2445 M. Street, N.W.
Washington, DC 20037
Ph: 202.663.6000
Fax: 202.663.6363
Email: katherine.worthman@wilmer.com
Email: james.shepherd@wilmer.com
Email: knight.elsberry@wilmer.com
Email: jeremy.simon@wilmer.com
Email: lillian.potter@wilmer.com

Paul R. Koepff, Esquire
Andrew J. Frackman, Esquire
Tancred V. Schiavoni, Esquire
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
Ph: 212.326.2000
Fax: 212.326.2061
Email: pkoepff@omm.com
Email: afrackman@omm.com
Email: tschiavoni@omm.com

Duane Morse, Esquire
Nancy Manzer, Esquire
Linda Chanow, Esquire
Wilmer, Cutler & Pickering LLP
1600 Tysons Boulevard
10th Floor
Tysons Corner, VA 22102
Ph: 703.251.9700
Fax: 703.251.9797
Email: duane.morse@wilmer.com
Email: nancy.manzer@wilmer.com
Email: linda.chanow@wilmer.com

Samuel R. Grego, Esquire
Vinita K. Sinha, Esquire
DKW Law Group LLC
58th Floor, US Steel Tower
600 Grant Street
Pittsburgh, PA 15219
Ph: 412.355.2600
Fax: 412.355.2609
Email: sgrego@dkwlaw.com
Email: vsinha@dkwlaw.com

**2002 SERVICE LIST (3/24/04)**
**MID-VALLEY PARTIES REQUESTING NOTICE PURSUANT TO BANKRUPTCY RULE 2002**
**(service via electronic mail except where indicated)**

Paul H. Saint-Antoine, Esquire
Daniel L. McAuliffe, Esquire
Drinker Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103
Ph: 215.988.2570
Fax: 215.988.2757
Email: daniel.mcauliffe@dbr.com
Email: paul.saint-antoine@dbr.com
Counsel for Lumbermens Mutual Casualty
Company

Charles Eskridge, Esquire
Susman Godfrey, L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Ph: 713.653.7860
Fax: 713.654.3357
Email: ceskridge@susmangodfrey.com
Counsel for Certain Underwriters at
Lloyd's London and Certain London
Market Insurers

Katherine M. Windler, Esquire
Russell W. Roten, Esquire
Jeff D. Kahane, Esquire
Coudert Brothers LLP
333 South Hope Street
Los Angeles, CA 90071
Ph: 213.229.2900
Fax: 213.229.2999
Email: kwindler@coudert.com
Email: rroten@coudert.com
Email: jkahane@coudert.com
Counsel for Certain Underwriters at
Lloyd's London and Certain London
Market Insurers

Robert Rivera, Jr., Esquire
Neal S. Marine, Esquire
H. Lee Godfrey, Esquire
Susman Godfrey, L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Ph: 713.651.9366
Fax: 713.654.6666
Email: rrivera@susmangodfrev.com
Email: nmannc@susmangodfrey.com
Email: lgodfrey@susmangodfrev.com
Counsel for Certain Underwriters at
Lloyd's London and Certain London
Market Insurers

Edward H. Tillinghast, III, Esquire
Coudert Brothers LLP
1114 Avenue of the Americas
New York, NY 10036
Ph: 212.626.4744
Fax: 212.626.4120
Email: tillinghaste@coudert.com
Counsel for Certain Underwriters at
Lloyd's London and Certain London
Market Insurers

Duane D. Morse, Esquire
Nancy Manzer, Esquire
Linda Chanow, Esquire
Wilmer, Cutler & Pickering LLP
1600 Tysons Boulevard
10th Floor
Tysons Corner, VA 22102
Ph: 703.251.9700
Fax: 703.251.9797
Email: duane.morse@wilmer.com
Email: nancy.manzer@wilmer.com
Email: linda.chanow@wilmer.com
Counsel for Hartford Accident &
Indemnity Company; First State
Insurance Company; Hartford Casualty
Insurance Company; Twin City Fire
Insurance Company; and New England
Insurance Company

Philip D. Anker, Esquire
Wilmer, Cutler & Pickering LLP
399 Park Avenue
New York, NY 10022
Ph: 212.230.8800
Fax: 212.230.8888
Email: philip.anker@wilmer.com
Counsel for Hartford Accident &
Indemnity Company; First State
Insurance Company; Hartford Casualty
Insurance Company; Twin City Fire
Insurance Company; and New England
Insurance Company

Katherine Worthman, Esquire
James A. Shepherd, Esquire
Knight Elsberry, Esquire
Jeremy Simon, Esquire
Lillian Potter, Esquire
Wilmer, Cutler & Pickering LLP
2445 M Street, N.W.
Washington, D.C. 20037
Ph: 202.663.6000
Fax: 202.663.6363
Email: katherine.worthman@wilmer.com
Email: james.shepherd@wilmer.com
Email: knight.elsberry@wilmer.com
Email: jeremy.simon@wilmer.com
Email: lillian.potter@wilmer.com
Counsel for Hartford Accident &
Indemnity Company; First State
Insurance Company; Hartford Casualty
Insurance Company; Twin City Fire
Insurance Company; and New England
Insurance Company

William J. Bowman, Esquire
George W. Mayo, Jr., Esquire
James P. Ruggeri, Esquire
Edward B. Parks, II, Esquire
Hogan & Hartson, L.L.P.
Columbia Square
555 13th Street, N.W.
Washington, D.C. 20004
Ph: 202.637.5600
Fax: 202.637.5910
Email: wjbowman@hhlaw.com
Email: gwmayo@hhlaw.com
Email: jpruggeri@hhlaw.com
Email: ebparks@hhlaw.com
Counsel for Hartford Accident &
Indemnity Company; First State
Insurance Company; Hartford Casualty
Insurance Company; Twin City Fire
Insurance Company; and New England
Insurance Company

Jeffery A. Deller, Esquire
Klett Rooney Lieber & Schorling PC
One Oxford Centre, 40th Floor
Pittsburgh, PA 15219-6498
Ph: 412.392.2000
Fax: 412.392.2128
Email: jadeller@klettrooney.com
Counsel for Energy Gulf States, Inc.
and ShawCor Ltd., et al.

John J. Dwyer, Esquire
William P. Shelley, Esquire
Jacob C. Cohn, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Ph: 215.665.2006
Fax: 215.701.2347
Email: jdwyer@cozen.com
Email: wshelley@cozen.com
Email: jcohn@cozen.com
Counsel for Federal Insurance Company

David P. McClain, Esquire
Daniel F. Patchin, Esquire
McClain, Leppert & Maney, P.C.
Two Houston Center
909 Fannin, Suite 4050
Houston, TX 77010
Ph: 713.654.8001
Fax: 713.654.8818
Email: mcclain@mcclainleppert.com
Email: patchin@mcclainleppert.com
Counsel for Mt. McKinley Insurance
Company f/k/a Gibralter Insurance
Company

Elit R. Felix, II, Esquire
Margolis Edelstein
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PA 19106-3304
Ph: 215.931.5870
Fax: 215.922.1772
Email: efelix@margolisedelstein.com
Counsel for Allianz AG; Allianz
Insurance Company; and Allianz
Underwriters Insurance Company

James S. Yoder, Esquire
White and Williams LLP
824 North Market Street
Suite 902
Wilmington, DE 19899
Ph: 302.467.4524
Fax: 302.654.0424
Email: yoder@whiteandwilliams.com
Counsel for Allianz AG; Allianz
Insurance Company; Allianz
Underwriters Insurance Company, and
Allstate Insurance Company, solely as
successor-in-interest to Northbrook
Excess & Surplus Insurance Company,
formerly Northbrook Insurance Company

Steven M. Crane, Esquire
Berkes Crane Robinson & Seal LLP
515 South Figueroa Street, Suite 1500
Los Angeles, CA 90071
Ph: 213.955.1150
Fax: 213.955.1155
Email: scrane@bcrslaw. com
Counsel for Continental Insurance
Company; Continental Casualty Company;
Columbia Casualty Company; Fidelity &
Casualty Company of New York; and
Transcontinental Insurance Company

George T. Snyder, Esquire
Stonecipher, Cunningham, Beard &
Schmitt, P.C.
125 First Avenue
Pittsburgh, PA 15222
Ph: 412.391.8510
Fax: 412.391.8522
Email: gts@scbslaw.com
Counsel for Continental Insurance
Company; Continental Casualty Company;
Columbia Casualty Company; Fidelity &
Casualty Company of New York; and
Transcontinental Insurance Company

Samuel R. Grego, Esquire
Vinita K. Sinha, Esquire
DKW Law Group LLC
58th Floor, US Steel Tower
600 Grant Street
Pittsburgh, PA 15219
Ph: 412.355.2600
Fax: 412.355.2609
Email: sgrego@dkwl aw. com
Email: vsinha@dkwlaw.com
Counsel for Hartford Accident &
Indemnity Company; First State
Insurance Company; Hartford Casualty
Insurance Company; Twin City Fire
Insurance Company; and New England
Insurance Company

Deidre Woulfe Pacheco, Esquire
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ 07095-0958
Ph: 732.855.6189
Fax: 732.726.6627
Email: dpacheco@wilentz.com
Counsel for WGS Asbestos Claimants

Steven T. Baron, Esquire
Silber Pearlman, LLP
Fifth Floor, LB 32
2711 N. Haskell Avenue
Dallas, TX 75204-2913
Ph: 214.874.7000
Fax: 214.824.8100
Email: baron@splaw.com
Counsel for Certain Asbestos
Plaintiffs

Michael A. Shiner, Esquire
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
Ph: 412.594.5586
Fax: 412.594.5619
Email: mshiner@tuckerlaw.com
Counsel for Certain Underwriters at
Lloyd's London and Certain London
Market Insurers

Scott W. Wert, Esquire
Foster & Sear, L.L.P.
524 E. Lamar Boulevard, Suite 200
Arlington, TX 76011
Ph: 817.633.3355
Fax: 817.633.5507
Email: swert@fostersear. com
Counsel for James Eddie Beasley and
numerous other creditors

Jim R. Ross, Esquire
McCurdy & McCurdy, L.L.P.
524 E. Lamar Boulevard, Suite 250
Arlington, TX 76011
Ph: 817.649.8600
Fax: 817.649.5008
Email: jross@mccurdylawfirm.com
Counsel for Archie L. Witcher and
numerous other creditors

Lori Robertson, Esquire
Linebarger Goggan Blair & Sampson, LLP
1949 South IH 35 (78741)
P.O. Box 17428
Austin, TX 78760-7428
Ph: 512.447.6675
Fax: 512.443.5114
Email: austin.bankruptcy@publicans.com
Counsel for San Patricio County

Hugh Ray, Esquire
David A. Zdunkewicz, Esquire
Andrews Kurth, LLP
600 Travis, Suite 4200
Houston, TX 77002
Ph: 713.220.4128
Fax: 713.238.7106
Email: hray@andrewskurth.com
Email: dzdunkewicz@andrewskurth.com
Counsel for ShawCor Ltd. et al.

John H. Maddock, III, Esquire
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Ph: 804.775.1000
Fax: 804.698.2186
Email: jmaddock@mcguirewoods.com
Counsel for Eastman Chemical Company

Martin J. Weis, Esquire
Dilworth Paxson LLP
1735 Market Street
Suite 3200
Philadelphia, PA 19103
Ph: 215.575.7000
Fax: 215.575.7200
Email: mweis@dilworthlaw.com
Counsel for GE Capital Modular Space

Robert B. Millner, Esquire
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
Chicago, IL 60606
Ph: 312.876.7994
Fax: 312.876.7934
Email: rmillner@sonnenschein.com
Counsel for Appalachian Insurance
Company

Teresa M. Dorr, Esquire
Fox Rothschild LLP
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Ph: 609.895.3302
Fax: 609.896.1469
Email: tdorr@foxrothschild.com
Counsel for Fireman's Fund Insurance
Company and National Surety
Corporation

Joseph A. Dworetzky, Esquire
Margaret P. Steere, Esquire
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103
Ph: 215.568.6200
Fax: 215.568.0300
Email: jdworetzky@hangley.com
Email: msteere@hangley.com
Counsel for Liberty Mutual Insurance
Company

Alan S. Miller, Esquire
Picadio Sneath Miller & Norton, P.C.
4710 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
Ph: 412.288.4000
Fax: 412.288.2405
Email: amiller@psmn.com
Counsel for Appalachian Insurance
Company, Zurich International
(Bermuda), Ltd., Maryland Casualty
Insurance Company, Zurich American
Insurance Company, and Zurich
Insurance Company (Switzerland)

Scott M. Seaman, Esquire
Meckler, Bulger & Tilson
123 North Wacker Drive
Suite 1800
Chicago, IL 60606
Ph: 312.474.7139
Fax: 312.474.7898
Email: scott.seaman@mbtlaw.com
Counsel for Appalachian Insurance
Company

W. Martin Tellegen, Esquire
Gerald F. Ellersdorfer, Esquire
Paul A. Peters, Esquire
Kaufman & Logan LLP
100 Spear Street, 12th Floor
San Francisco, CA 94105
Ph: 415.247.8300
Fax: 415.247.8310
Email: mtellegen@kllaw.com
Email: gellersdorfer@kllaw.com
Email: ppeters@kllaw.com
Counsel for Fireman's Fund Insurance
Company and National Surety
Corporation

Peter N. Pross, Esquire
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Ph: 412.566.5934
Fax: 412.566.6099
Email: pnp@escm.com
Counsel for Millennium Petrochemicals,
Inc.

Alan Kellman, Esquire
Maritime Asbestos Legal Clinic, a
division of The Jaques
Admiralty Law Firm, P.C.
645 Griswold, Suite 1570
Detroit, MI 48226
Ph: 313.961.1080
Fax: 313.961.5275
Email: ladmiralty@aol.com
Counsel for Merchant Mariners

Sander L. Esserman, Esquire
Stutzman, Bromberg, Esserman & Plifka
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Ph: 214.969.4900
Fax: 214.969.4999
Email: esserman@sbep-law.com
Counsel for Reaud, Morgan & Quinn,
Inc.; Environmental Litigation Group,
Inc., Barren & Budd, P.C. and Silber
Pearlman, LLP

**Service via regular U.S. Mail:**
Bill Angelowitz
President
Daily Insights, Inc.
JAFBox3127
New York, NY 10116

**Service via regular U.S. Mail:**
Stephen I. Weil, Esquire
Weil & Associates
711 Louisiana Street, Suite 1700
Houston, TX 77002
Ph: 713.659.3200
Fax: 713.224.2200
Counsel for Kawaski Heavy Industries,
Inc.

Loren S. Scott, Esquire
Arnold Gallagher Saydack Percell
Roberts & Potter, P.C.
P.O. Box 1758
Eugene, OR 97440-1758
Ph: 541.484.0188
Fax: 541.484.0536
Email: lscott@agsprp.com
Counsel for Casey Industrial Inc.

Robert S. Bernstein, Esquire
Bernstein Law Firm, P.C.
Suite 2200 Gulf Tower
Pittsburgh, PA 15219
Ph: 412.456.8101
Fax: 412.456.8251
Email: rbernstein@bernsteinlaw.com
Counsel for Reaud, Morgan & Quinn,
Inc.; Environmental Litigation Group,
Inc., Baron & Budd, P.C. and Silber
Pearlman, LLP

John A. Nadas, Esquire
Mark D. Cahill, Esquire
Douglas R. Gooding, Esquire
Gregg Shapiro, Esquire
Timothy W. Arant, Esquire
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109
Ph: 617.248.5000
Fax: 617.248.6000
Email: jnadas@choate.com
Email: mcahill@choate.com
Email: dgooding@choate.com
Email: gshapiro@choate.com
Email: tarant@choate.com
Counsel for St. Paul Mercury Insurance
Company

Alan B. Rich, Esquire
Baron & Budd, PC
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Ph: 214.521.3605
Fax: 214.520.1181
Email: arich@baronbudd. com
Counsel for Certain Asbestos
Plaintiffs

Robert G. Taylor II, Esquire
Robert G. Taylor II, P.C.
One Allen Center
3400 Penthouse
500 Dallas Street
Houston, TX 77002
Ph: 713.654.7799
Fax: 713.654.0847
Email: roberttaylor@rgtaylorlaw.com
Counsel for Numerous Individuals
Holdings Asbestos and Silica-Related
Claims

Kimberly LuffWakim, Esquire
Leonard F. Spagnolo, Esquire
Thorp Reed & Armstrong, LLP
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219-1425
Ph: 412.394.7728
Fax: 412.394.2555
Email: kwakim@thorpreed.com
Email: lspagnolo@thorpreed.com
Counsel for Colonial Penn Insurance
Company

Jessie S. Vogtle, Jr., Esquire
Christie Lyman Dowling, Esquire
Balch & Bingham, LLP
1901 Sixth Avenue North, Suite 2600
Birmingham, AL 35203-2628
Ph: 205.251.8100
Fax: 205.226.8799
Email: jvogtle@balch.com
Email: cdowling@balch.com
Counsel for Southern Company Services,
Inc.

Randall A. Rios, Esquire
Floyd Jones Rios Wahrlich P.C.
Bank of America Center
700 Louisiana, 46th Floor
Houston, TX 77002
Ph: 713.222.1470
Fax: 713.222.1475
Email: rrios@floydjones.com
Counsel for Numerous Individuals
Holding Asbestos and Silica-Related
Claims

Stephen H. DonCarlos, Esquire
Reid, Strickland & Gillette, L.L.P.
Post Office Box 809
Baytown, TX 77522-0809
Ph: 281.422.7382
Fax: 281.428.2962
Email: sdoncarl@stewart.com
Counsel for Goose Creek Consolidated
Independent School District and Lee
College District

Steven J. Abarbanel, Esquire
Catherine N. O'Connell, Esquire
Robinson & Cole LLP
One Boston Place
Boston, MA 02108
Ph: 617.557.5900
Fax: 617.557.5999
Email: sabarbanel@rc.com
Email: codonnell@rc.com
Counsel for Colonial Penn Insurance
Company

Stanley G. Makoroff, Esquire
Blumling & Gusky LLP
1200 Koppers Building
Pittsburgh, PA 15219
Ph: 412.227.2550
Fax: 412.227.2020
Email: smakoroff@blumlinggusky.com
Counsel for Southern Company Services,
Inc.

Julia L. Wahl, Esquire
Special Assistant to the U.S. Attorney
Liberty Center - Suite 601C
1001 Liberty Avenue
Pittsburgh, PA 15222
Ph: 412.644.3437
Fax: 412.644.2818
Email: julia.l.wahl@irscounsel.treas.gov
Counsel for Internal Revenue Service

Thomas H. Grace, Esquire
W. Steven Bryant, Esquire
Locke Liddell & Sapp LLP
600 Travis Street
3400 Chase Tower
Houston, TX 77002
Ph: 713.226.1200
Fax: 713.223.3717
Email: tgrace@lockeliddell.coin
Email: sbryant@lockeliddell.com
Counsel for Smith International and
M I Fluids

Thomas G. Wilkinson, Jr., Esquire
John D. Shea, Esquire
David J. Liebman, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Ph: 215.665.2000
Fax: 215.701.2013
Email: twilkinson@cozen.com
Email: jshea@cozen. com
Email: dliebman@cozen.com
Counsel for American Home Assurance
Company, American International
Underwriters Insurance Company,
Birmingham Fire Insurance Company of
Pennsylvania, Granite State Insurance
Company, Insurance Company of the
State of Pennsylvania, Landmark
Insurance Company, Lexington Insurance
Company, New Hampshire Insurance
Company, National Union Fire Insurance
Company of Pittsburgh, PA and Union
Atlantique de Assurances

Arthur J. Abramowitz, Esquire
Cozen O'Connor
Liberty View Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
Ph: 856.910.5000
Fax: 856.910.5075
Email: aabramowitz@cozen.com
Counsel for American Home Assurance
Company, American International
Underwriters Insurance Company,
Birmingham Fire Insurance Company of
Pennsylvania, Granite State Insurance
Company, Insurance Company of the
State of Pennsylvania, Landmark
Insurance Company, Lexington Insurance
Company, New Hampshire Insurance
Company, National Union Fire Insurance
Company of Pittsburgh, PA and Union
Atlantique de Assurances

Ms. Anne Marie Kennelly
Corporate Counsel
Hewlett-Packard Company
3000 Hanover Street, M/S 1050
Palo Alto, CA 94304
Ph: 650.857.6902
Fax: 650.852.8617
Email: anne.kennelly@hp.com
Counsel for Hewlett-Packard Company
and Compaq Computer Corporation

Berry D. Spears, Esquire
Winstead Sechrest & Minick P.C.
100 Congress Avenue, Suite 800
Austin, TX 78701
Ph: 512.474.4330
Fax: 512.370.2850
Email: bspears@winstead.com
Counsel for Chevron Phillips Chemical
Company, LP

Davor Rukavina, Esquire
Munsch Hardt Kopf & Harr, P.C.
4000 Fountain Place
1445 Ross Avenue
Dallas, TX 75202-2790
Ph: 214.855.7500
Fax: 214.855.7584
Email: drukavina@munsch.com
Counsel for Texas Instruments, Inc.

Vicente Matias Murrell, Esquire
Pension Benefit Guaranty Corporation
Office of the General Counsel
1200 K Street, NW
Washington, DC 20005-4026
Ph: 202.326.4020 (x3580) or
800.326.7242 (x3580)
Fax: 202.326.4112
Email: murrell.vicente@pbgc.gov and
Email: efile@pbgc.gov
Counsel for Pension Benefit Guaranty
Corporation

Dean P. Sperling, Esquire
Law Office of Dean P. Sperling
201 East Sandpointe, Suite 220
Santa Ana, CA 92707-5742
Ph: 714.438.8090
Fax: 714.438.8088
Email: dean@sperlinglaw.com
Counsel for AP-Ming LLC

Elizabeth Weller, Esquire
Linebarger Goggan Blair & Sampson, LLP
2323 Bryan Street, Suite 1600
Dallas, TX 75201
Ph: 214.880.0089
Fax: 214.253.2558
Email: dallas.bankruptcy@publicans.com
Counsel for City of Aransas Pass, San
Patricio Cad, San Patricio County and
Dallas County

Imperial County Treasurer-Tax
Collector
940 West Main Street, Suite 106
El Centre, CA 92243
Ph: 760.482.4301
Fax: 760.482.7883
Email: donnayarnell@imperialcounty.net

Michael K. McCrory, Esquire
Martin W. Zivitz, Esquire
Barnes & Thornburg
11 South Meridian Street
Indianapolis, IN 46204
Ph: 317.236.1313
Fax: 317.231.7433
Email: mmccrory@btlaw.com
Email: zivitz@btlaw.com
Counsel for Southern Indiana Gas and
Electric Company

John P. Dillman, Esquire
Linebarger Goggan Blair & Sampson, LLP
Post Office Box 3064
Houston, TX 77253-3064
Ph: 713.844.3478
Fax: 713.844.3503
Email: houston_bankruptcy@publicans.com
Counsel in Charge for Taxing
Authorities (Harris County, City of
Houston and Houston ISD, Texas)

Dianne S. Wainwright, Esquire
Brown & Levicoff, P.C.
600 Gulf Tower
Pittsburgh, PA 15219
Ph: 412.434.5200
Fax: 412.434.5203
Email: dwainwright@bandlpc.com
Counsel for Yosemite Insurance
Company, Evanston Insurance Company,
and Associated International Insurance
Company

Case 03-35592-TPA Doc 1382-1 Filed 05/05/04 Entered 05/05/04 13:32:19 Desc
PCDOCS#: 488592.1
Certificate of Service     Page 14 of 15

Case 20-10343-LSS Doc 757-5 Filed 06/02/20 Page 38 of 39

R. Kenneth Willman, Esquire
Michael A. Katz, Esquire
Willman & Arnold, LLP
705 McKnight Park Drive
Pittsburgh, PA 15237
Ph: 412.366.3333
Fax: 412.366.3462
Email: kwillman@willmanlaw.com
Email: mkatz@willmanlaw.com
Counsel for Employers Mutual Casualty
Company

Paul A. Bradley, Esquire
McCarter & English, LLP
919 North Market Street, Suite 1800
Post Office Box 111
Wilmington, DE 19899
Ph: 302.984.6300
Fax: 302.984.6399
Email: pbradley@mccarter.com
Counsel for Owens-Illinois, Inc.

Andrew K. Craig, Esquire
Stefano Calogero, Esquire
Cuyler Burk, LLP
4 Century Drive
Parsippany, NJ 07054
Ph: 973.734.3200
Fax: 973.734.3201
Email: acraig@cuyler.com
Email: scalogero@cuyler.com
Counsel for Allstate Insurance
Company, solely as successor-in-
interest to Northbrook Excess &
Surplus Insurance Company, formerly
Northbrook Insurance Company

Anthony R. Gambardella, Esquire
Michael E. Buckley, Esquire
Rivkin Radler LLP
EAB Plaza
Uniondale, NY 11556-9111
Ph: 516.357.3000
Fax: 516.357.3333
Email: anthony.gambardella@rivkin.com
Email: michael.buckley@rivkin.com
Counsel for Allstate Insurance
Company, solely as successorin-
interest to Northbrook Excess &
Surplus Insurance Company, formerly
Northbrook Insurance Company

Robert J. Rosenberg, Esquire
Robert F. Kennedy, Esquire
Mark A. Broude, Esquire
Latham & Watkins LLP
53rd at Third, Suite 1000
885 Third Avenue
New York, NY 10022-4068
Ph: 212.906.1200
Fax: 212.751.4864
Email: robert.rosenberg@lw.com
Email: robert.kennedy@lw.com
Email: mark.broude@lw.com
Counsel for Dresser, Inc.

**Service via regular U.S. Mail:**
Hennessey Hunt
Reg: #619672
9601 Spur 591
Amarillo, TX 79107

Michael Reed, Esquire
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 26990
Austin, TX 78755
Ph: 512.451.9000
Fax: 512.454.1888
Email: mreed@mvbalaw.com
Counsel for County of Harrison,
Marshall Independent School District
and Longview Independent School
District

Louis C. Long, Esquire
Meyer, Darragh, Buckler, Bebenek &
Eck, P.L.L.C.
U.S. Steel Tower, Suite 4850
600 Grant Street
Pittsburgh, PA 15219
Ph: 412.261.6600
Fax: 412.471.2754
Email: lcl@mdbbe.com
Counsel for Travelers Casualty and
Surety Company

Mark W. Zimmerman, Esquire
Clausen Miller P.C.
10 South LaSalle Street
Chicago, IL 60603
Ph: 312.606.7481
Fax: 312.606.7777
Email: mzimmerman@clausen.com
Counsel for Yosemite Insurance Company

Robert P. Siegel, Esquire
Traub Eglin Lieberman Strauss LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, NY 10532
Ph: 914.347.2600
Fax: 914.347.8898
Email: rsiegel@tels.com
Counsel for Evanston Insurance Company
and Associated International Insurance
Company

Mark Browning, Esquire
Assistant Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX 78711-2548
Ph: 512.475.4883
Fax: 512.482.8341
Counsel for the Texas Comptroller of
Public Account

John E. Rodewald, Esquire
Arthur F. Brandt, Esquire
Bates & Carey
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Ph: 312.762.3100
Fax: 312.762.3200
Email: jrodewald@batescarey.com
Email: abrandt@batescarey.com
Counsel for America Re-Insurance
Company and Executive Risk Indemnity,
Inc.

Mariya S. Treisman, Esquire
Andrew T. Frankel, Esquire
Patricia Taylor Fox, Esquire
Simpson, Thacher & Bartlett, LLP
425 Lexington Street
New York, NY 10017
Ph: 212.455.7661
Fax: 212.455.2502
Email: mtreisman@stblaw.com
Email: afrankel@stblaw.coin
Email: pfox@stblaw.com
Counsel for Travelers Casualty and
Surety Company, formerly known as The
Aetna Casualty and Surety Company