## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE Boy Scouts, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
|  | **Ref. Docket Nos. 17, 161, 166, 316, 648, 712, & 756** |
|  | **Hearing Date: June 8, 2020 at 10:00 a.m.**<br>**Objection Deadline: June 2, 2020** |

**JOINDER OF CENTURY INDEMNITY COMPANY, ACE INSURANCE GROUP, WESTCHESTER FIRE INSURANCE COMPANY AND WESTCHESTER SURPLUS LINES INSURANCE COMPANY TO HARTFORD'S MEMORANDUM IN SUPPORT OF HARTFORD'S OBJECTION TO CERTAIN MEDIATORS THAT DEBTORS NOMINATED AND IN FURTHER SUPPORT OF LIMITED OBJECTION TO DEBTORS' MOTION [DKT. 756] AND CENTURY'S OBJECTION**

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company (collectively, "Century") respectfully submits this supplemental brief in support of Century's objection to Debtors' Motion for Entry of an Order (I) Appointing a Judicial Mediator, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief [ECF No. 17] and joinder to Hartford's objection [Dkt. 756].

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Law, Irving, Texas 75038.

**A.** **Mr. Green's Connections to the FCR and Young Conaway Are Disqualifying Under 28 U.S.C. 455(a) and the Court Should Decline to Appoint Mr. Finn.**

For the reasons stated in Hartford's objection [Dkt. 756], Mr. Green's connections to the FCR and Young Conaway are disqualifying under 28 U.S.C. 455(a) and the Court should decline to appoint Mr. Finn.  Century joins the factual and legal arguments asserted in Hartford's objection [Dkt. 756] which it incorporates as if fully stated here.

Century (like other insurers that are parties in interest here) has a direct and material interest in ensuring that a plan of reorganization is formulated by a process that is free of collusion.  The all-encompassing nature of the order that is sought would cloak essentially all the dealings between Debtors and tort claimants in mediation secrecy.  It would be extremely prejudicial to Century and the other insurers if a social friend of Mr. Patton is appointed, particularly one who employees Mr. Patton and his firm concurrently in six other mass tort cases where the two of them advocate positions hostile to mass tort defendants such as BSA generally and Century and other insurers specifically.

If the Court is inclined to grant Debtors' motion, Century is concerned that any person selected to oversee the formation of a plan as a "mediator" is both well-qualified and free from any conflicts that would prevent them from being truly neutral.[2]

**B.** **The Court Should Consider Alternative Candidates.**

If a mediator is to be appointed at this early stage of the case, the Court should consider alternative candidates to serve as mediators given the mandatory nature of the mediation, the extraordinary breadth of confidentiality over the plan formation process sought, and the fact that

---

[2]    The Debtors have not shared with Century any of the communications with Messrs. Green and Finn.  Century has discovery outstanding seeking these documents.  *See* June 2, 2020 Declaration of Janine Panchok-Berry (Panchok-Berry Decl.) Ex. 1, Request for Production Nos. 2, 3.

Debtors and tort claimants did not follow the process set out in the Debtors' motion for selecting a mediator. There are retired judges who merit consideration and individuals with a national reputation such as Ken Feinberg (appointed by Congress as 9/11 mediator).[3]

The Court should also consider whether compelled mediation at this time is appropriate. On May 27, 2020, the Official Committee of Tort Claimants ("TCC") filed its omnibus objection to multiple lift stay motions arguing that stay relief is premature based on the procedural posture of the bankruptcy, stating its view that "*no realistic mediation process **can begin** until parties have analyzed the claims*" after the claims bar date:

> Resolution of the Stay Relief Motions is premature for the following reasons: (a) the Court just set the Claims Bar Date, there is no information or analysis to suggest that BSA's insurance is sufficient to cover both sexual abuse and non-sexual abuse claims, (b) there is nothing in the record supporting the speculation that there is sufficient excess insurance beyond the insurance that is the subject of these motions; (c) **no realistic mediation process can begin until parties have analyzed the claims which are not even due to be filed until November 16, 2020** and (d) the relief sought by one insurer (Old Republic) would create limitless liability for BSA and reduce BSA's cash by virtue of JP Morgan's draw on secured letters of credit posted for Old Republic's benefit.

*See* Official Committee of Tort Claimants' Omnibus Objection ¶ 3 [Dkt. 702].

Further, the TCC makes the following statement concerning settlement negotiations:

"***The TCC believes that the resolution of abuse claims will not and cannot be resolved in any substantive and comprehensive manner until after the claims bar date of November 16, 2020 (the "Claims Bar Date") passes***." *Id.*

---

[3]    Ken Feinberg served as Special Master of the U.S. government's September 11th Victim Compensation Fund (chronicled in his book *What is Life Worth?* (2005)), a role in which he served pro bono for almost three years. He was later appointed Special Master for the TARP Executive Compensation initiative and, in June 2010, was named to run the BP Deepwater Horizon Disaster Victim Compensation Fund, a $20 billion fund to pay claims resulting from the BP Gulf oil spill. He has also managed compensations systems relating to the Aurora and Virginia Tech shootings and the Boston Marathon bombing.

Century has repeatedly asked the Debtors what it is that they intend to mediate now given that Tort Claimants' position and the fact that the tort claims that they propose to settle will not be disclosed until November. No answer is provided in Debtors' motion. Nor has any reason been provided why the plan process cannot go forward without the cloak of mediation secrecy, at least until the issues have narrowed.[4]

### C. The Debtors Should Disclose Whether the Boy Scouts' Lenders Will Be Mediation Participants and Their Agenda Listed Comments

If a mandatory mediation order is entered, it should identify to whom it applies. Debtors' counsel concurrently represents the Boy Scouts' lender. The Boy Scouts have a significant amount of debt issued after claims arose. Although the Debtors have listed the comments that they received to their mediation motion from the lender as the first item in their agenda, they have declined to date to produce these comments. Century has a discovery request outstanding for these comments,[5] which should be answered before a hearing.

The Debtors' motion is silent as to what procedures will apply to it and what disclosures will be made about the prepetition debt. Whether the lender is included in the mediation or has been excused is important information to be disclosed.

### D. Any Mediation Order Should Include Basic Safeguards of Fundamental Fairness.

The proposed order that the Debtors sent to the insurers rejects provisions critical to ensuring a fair process.

---

[4]   *See* Declaration of Jessica C. K. Boelter in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession, *Nunc Pro Tunc* to the Petition Date ¶ 21, ECF No. 204-3 ("The following parties that are Potential Parties in Interest or known affiliates of Potential Parties in Interest represented one percent or more of Sidley's annual revenue in 2019: JPMorgan Chase & Co. . . . .").

[5]   *See* Panchok-Berry Decl. Ex. 1, Request for Production No. 1.

1. **Any Proposed Order Should Include a Provision Requiring the Insurers Be Given the Same Information As Has Been Given the Tort Claimants.**

For any mediation to have a prospect of success, there should be a level playing field of information. Century seeks the addition of the following clause in any proposed order to ensure it is given the same documents as are provided to the tort claimants:

> Prior to the commencement of the mediation, Debtors shall make available to the Insurers the documents that the Debtors have provided to the TCC or the FCR (or their pre-petition predecessors).

This request should be non-controversial as there is no sound reason for the Debtors to give documents to the tort claimants and not insurers. The Debtors shared documents with the tort claimants pre-petition and post-petition in connection with efforts to reach a global settlement. While Century was recently given access to the "data room," it does not contain everything that the Debtors gave the tort claimants. For example, the Debtors proposed a matrix with the tort claimants pre-petition but have not given Century and the other insurers copies of the communications exchanged with the Tort Claimants about it.

2. **Privileged Information Should Be Barred from Being Given to the Tort Claimants Under the Guise of a "Mediation Communication."**

Century and the other insurers share an interest with the Debtors in the defense of the underlying claims. Century seeks the addition of the following clause in any proposed order to ensure that the terms of a mediation order are not misconstrued or misused to allow for privileged material to be conveyed to the tort claimants compromising the defense:

> Nothing in this order authorizes the sharing of privileged information or affects the parties rights and obligations under any insurance policy.

The cloak of confidentiality that the Debtors seek should also not be used as an end-run around the Debtors' duty to cooperate with insurers.

### 3. Any Proposed Order Should Include a Provision Ensuring That Mediation Confidentiality Is Not Misused.

The cloak of confidentiality that the Debtors seek should also not be used as an end-run around the Debtors' duty to cooperate with insurers.  Century seeks the addition of the following clause in any proposed order:

> Nothing in this order affects the parties rights and obligations under any insurance policy.

This protection is necessary to ensure that the parties do not use the mediation as a vehicle to cloak collusive settlements in confidentiality.

## CONCLUSION

Century respectfully requests that the Court sustain Century's and Hartford's supplemental objections as stated herein and decline to enter Debtors' proposed order.

Dated:  June 2, 2020

Respectfully Submitted,

By:  */s/ Stamatios Stamoulis*
     Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone:   302 999 1540
Facsimile:    302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:   212 326 2000
Facsimile:    212 326 2061

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America, Ace Insurance Group Westchester
Fire Insurance Company and Westchester
Surplus Lines Insurance Company*