**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 17, 161, 164, 166, 316, 388, 617, 646,**<br>**647, 648, 650,  652, 658, 664, 710, 711, 712, 713, 756,**<br>**757, 759, 761, 762, 771, 772 & 773**<br><br>**Hearing Date**: June 8, 2020 at 10:00 a.m. (ET) |

**DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF**
**AN ORDER (I) APPOINTING MEDIATORS, (II) REFERRING CERTAIN**
**MATTERS TO MEDIATION, AND (III) GRANTING RELATED RELIEF**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit

corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases

(together, the "Debtors"), hereby file this reply (this "Reply") to the limited objections

(collectively, the "Limited Objections") to the Debtors' motion [D.I. 17] (the "Motion") for entry

of the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III)*

*Granting Related Relief*, in the revised form attached hereto as **Exhibit A** (the "Revised

Mediation Order")[2] filed by (a) Allianz Global Risks US Insurance Company and National

Surety Corporation (the "Allianz Insurers") [D.I. 658 & 759], (b) Century Indemnity Company,

Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines

Insurance Company (collectively, "Century") [D.I. 646 & 761], and (c) Hartford Accident and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC, (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined in this Reply shall have the meanings ascribed to such terms in the Motion or the Revised Mediation Order, as applicable.

Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford" ) [Docket Nos. 648 & 756]. The Allianz Insurers, Century, and Hartford are collectively referred to herein as the "Objecting Insurers." In further support of the Motion and entry of the Revised Mediation Order, the Debtors respectfully state as follows.

## PRELIMINARY STATEMENT

1.      As the Debtors have emphasized since the Petition Date, mediators should be appointed in these chapter 11 cases as soon as possible. Now that a bar date has been set and the parties have stipulated to a five-month extension of the preliminary injunction against sexual abuse litigation, the Debtors and other parties must promptly begin to address the myriad complex issues that will be the subject of any plan of reorganization. To accomplish this, the Debtors request the immediate entry of the Revised Mediation Order.

2.      The Objecting Insurers continue their transparent efforts to delay and obstruct the progress of these cases. As with other matters that have been before the Court, the Objecting Insurers are again alone in their opposition to the Debtors' requested relief. In their Limited Objections, Century and Hartford question why mediators should be appointed now, and Century suggests that the Debtors should pursue plan negotiations without a mediator. *See* D.I. 761, at 3–4; D.I. 756, at ¶ 34. The Debtors have determined it is in their best interests to explore a global resolution of claims through mediation, and all relevant constituents other than the Objecting Insurers agree and steadfastly support these efforts.

3.      The issues in these cases are complex. The appointment of the Mediators now will allow them to become familiar with the parties, the dynamics of these cases, and the central aspects of the disputes that they will be asked to help the parties resolve. Waiting to appoint the Mediators until the completion of unnecessary discovery propounded by the Objecting

Insurers—much less until the November 16 claims bar date—will only waste estate resources and prolong the duration of these case.

4. Moreover, several items are ready now for initial mediation, including the following:

- Identified Property Disputes. The Mediators should be actively involved in the parties' efforts to resolve any disputes as to whether certain of the Debtors' identified property is subject to enforceable restrictions under applicable law and/or is otherwise unavailable to satisfy creditor claims. These potential disputes are the subject of the *Debtors' Motion for Entry of an Order (I) Scheduling Certain Deadlines in Connection with Potential Disputes Regarding the Debtors' Identified Property and (II) Granting Additional Relief* [D.I. 19] (the "Identified Property Motion"), which is presently scheduled for the July 9 omnibus hearing.

- Local Council Assets and Preliminary Injunction Issues. The terms of the *Second Stipulation and Agreed Order* provide that the Mediators will play a role in determining the Local Councils' compliance with their reporting requirements, which is a condition to their continued protection under the preliminary injunction. *See* A.D.I. 76, Ex. 4.

- Discovery Issues. After months of hard-fought negotiations, the entry of a Confidentiality and Protective Order is imminent. The Debtors anticipate there will be numerous discovery issues that can be efficiently resolved with the assistance of the Mediators, rather than through motion practice before the Court.

- Protective Order Issues. Under the terms of the proposed Confidentiality and Protective Order, if the parties are unable to agree to the treatment of the so-called "Ineligible Volunteer" files, the parties are directed to consult with one or more of the Mediators to reach a resolution. *See Certification of Counsel Regarding Debtors' Motion for Entry of an Order Approving Confidentiality and Protective Order* [D.I. 749], Ex. 1 to Ex. A § 5.8.

5. As the Court is aware, the terms of the Revised Mediation Order, including the identities of the proposed Mediators, are the product of more than two months of good-faith negotiations among the Debtors, the Official Committee of Tort Claimants (the "Tort Claimants' Committee"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Future Claimants' Representative (the "FCR"), and the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Local Council Committee"). Each of these constituencies has

differing interests in these cases. Nevertheless, at the initial May 18 hearing on the Motion, they were all in lockstep with the Debtors in voicing their unqualified support for the immediate appointment of the proposed Mediators. *See* May 18 Hr'g Tr. 140:10–148:7.

6. The Court continued the hearing on the Motion to June 8 for three reasons: (1) to permit the parties to address the Court's concerns about mandating that the Mediation Parties participate in the mediation; (2) to more clearly delineate the division of duties among the Mediators; and (3) to permit the proposed Mediators to submit comprehensive disclosures of their connections with parties in interest in these cases within the meaning of Bankruptcy Rule 2014. Each of these matters has since been addressed, and a redline comparison of the former version of the proposed mediation order (filed at D.I. 640) against the Revised Mediation Order is attached hereto as **Exhibit B**. First, the Revised Mediation Order provides that the mediation will be voluntary, and no party shall be required to participate in the mediation of any issue. *See* Revised Mediation Order ¶ 4. Second, the Revised Mediation Order provides that the Mediators shall confer and determine, in their discretion, the allocation of responsibility amongst themselves with respect to each Mediation Issue. *See id.* Finally, each of Messrs. Paul Finn, Timothy Gallagher, and Eric Green have filed declarations containing comprehensive disclosures of their connections with parties in interest in these cases. *See* D.I. 710, 711, & 712.

7. The Objecting Insurers argue that the disclosures of Messrs. Finn and Green somehow establish that they are both biased or prejudiced and must be disqualified in favor of other candidates. These arguments fail factually and legally. The Objecting Insurers make no distinction between the proposed *mediation* candidates and the *judges* who are the subject of the cases cited in support of their arguments. Although Local Rule 9019-2(e) adopts a standard for disqualification that applies to federal judges, the Objecting Insurers fail to account for the fact

4

that the proposed Mediators will have no authority to bind the parties to any decision. That authority rests solely with the Court. Moreover, as noted, the proposed mediation is entirely voluntary.

8.      As to the Objecting Insurers' specific arguments, they urge that Mr. Green must be disqualified because the FCR, Mr. Patton, or his law firm, have represented Mr. Green in his capacity as future claimants' representative in certain mass-tort cases and because they are "social friends." The Objecting Insurers' arguments, however, overlook several important facts. First, Mr. Green has also mediated approximately 50 cases in which the Objecting Insurers have been involved as a party or an insurer. No party has questioned Mr. Green's impartiality on that basis, including the Objecting Insurers. Second, the FCR in this case has a narrowly circumscribed constituency, limited to persons who are currently under 18 years of age or who are not aware of their abuse claims as a result of "repressed memory," where the concept is recognized.[3] Finally, Mr. Green has attested, under penalty of perjury, that he has no interest that would adversely affect his ability to serve as a mediator in these cases. This should be dispositive. Mr. Green has a proven track record as one of the foremost—and most sought-after—mediators of mass-tort cases in the world. If Mr. Green believed he could not mediate these cases without bias or prejudice toward any party, including the FCR or the Objecting Insurers, he would not have accepted the proposed engagement.

9.      As to Mr. Finn, the Objecting Insurers' arguments similarly fail. The Allianz Insurers and Hartford contend that Mr. Finn was privy to a "one-sided preview" of the claims at issue in these cases when he was involved in an unsuccessful attempted mediation in November 2019 and that this "preview" is disqualifying. Yet the Objecting Insurers concede that the

---

[3] Indeed, Century has questioned the need for the FCR at all in these cases, undercutting the Objecting Insurers' argument that Mr. Green's connections with Mr. Patton undermine the fairness of the mediation. *See* May 18 Hr'g Tr. 60:8–16.

mediation involved four sides: the Debtors, the tort claimants, the FCR, and one of the Objecting Insurers (*i.e.*, Century). Each of these parties had an opportunity to interact with Mr. Finn and "preview" their arguments and positions. The Objecting Insurers have cited no rule or case law purporting to bar the same person from mediating the same claims in and outside of bankruptcy.

10.    Hartford and Century have also filed declarations from two new candidates for mediators in these cases, the Honorable Kevin J. Carey (Ret.) and Mr. Kenneth Feinberg. *See* D.I. 771 & 773. The Debtors agree that Judge Carey is eminently qualified and unquestionably has the extensive chapter 11 experience necessary to assist the parties in their efforts to reach a global resolution of abuse claims through a chapter 11 plan.[4] If the Court is disinclined to approve the Debtors' proposed slate of Mediators or if the Court decides that Judge Carey would enhance the chances for a successful mediation, then, as an alternative, the Debtors would welcome the appointment of Judge Carey as the sole mediator or as the lead mediator with the assistance of one or more of the other proposed Mediators.[5]

11.    In sum, the Debtors have made extensive efforts to reach agreement with their principal constituencies regarding the terms of the mediation and the identities of the Mediators. The proposal embodied in the Revised Mediation Order is supported by the Tort Claimants' Committee, the Creditors' Committee, the FCR and the Local Council Committee. The instant proposal for voluntary mediation is untainted by bias or prejudice on the part of any Mediator.

---

[4] Judge Carey has disclosed in his declaration that the Girl Scouts of the United States of America ("GSUSA") is a current client of his law firm, for which his firm serves as outside general counsel. As the Court is aware, the BSA and GSUSA are adverse parties in an ongoing trademark infringement lawsuit. Nevertheless, the BSA does not impute this connection to Judge Carey, who has not personally provided services to GSUSA and who will be the subject of appropriate ethical screens, and has no reservations about Judge Carey's ability to be a neutral mediator in these cases.

[5] The Debtors respectfully disagree with Century that Mr. Feinberg is well suited to mediate these chapter 11 cases. The Debtors do not dispute Mr. Feinberg's impressive track record as special master in numerous high-profile cases; however, the Debtors need at least one mediator with extensive mass-tort chapter 11 experience. Mr. Green and/or Judge Carey are better suited than Mr. Feinberg to assume this role.

The Debtors respectfully request that the Court overrule the Limited Objections and grant the Motion on the terms set forth in the Revised Mediation Order.

<u>**ARGUMENT**</u>

**A.     The Objecting Insurers' Process-Related Complaints Are Unfounded; the Revised Mediation Order Addresses the Court's Concerns at the May 18 Hearing.**

12.     The Objecting Insurers' continued complaints that they have been excluded from the Mediator-selection process are unfounded. As noted in their initial reply in support of the Motion [D.I. 617], the Debtors have made significant efforts since early April to engage with the Objecting Insurers regarding the mediation, including soliciting their input on the proposed Mediators. The Objecting Insurers largely remained silent for an entire month despite the Debtors' efforts to engage in a constructive dialogue. The details of these efforts—and the Objecting Insurers' failure to meaningfully participate—is summarized in letter correspondence that the Debtors previously filed with the Court at D.I. 664, Ex. 1.[6]

13.     The Objecting Insurers' process-related complaints are especially unpersuasive now, in light of the accommodations the parties have made in an effort to resolve the Objecting Insurers' stated concerns. The most material of these accommodations is the proposed appointment of a third mediator, Timothy Gallagher, who was the Objecting Insurers' preferred candidate. The Debtors have also revised the terms of the proposed order to, among other things, specify which parties will be entitled to participate in the mediation, and include procedures for additional parties to participate.

---

[6] The Objecting Insurers continue to misrepresent their dialogue with the Debtors regarding the mediation. Century previously represented to the Court that Century had been excluded. *See* May 6 Hr'g Tr. 94:2–4 (statement by Mr. Schiavoni that the Debtors had "excluded the insurers up to now, they only told us who they were proposing as a mediator very recently."). At the time Century made that representation to the Court, however, the Debtors had been soliciting and taking into account the Objecting Insurers' input—including Century's input—on the mediation issues for nearly six weeks. For many weeks, Century's only "input" was that the Motion should not go forward while the Debtors' application to retain their lead restructuring counsel remained pending.

14.    Additionally, in response to the Objecting Insurers' previous objections and the Court's feedback, the Debtors prepared a Revised Mediation Order that addresses each of the Court's concerns. The Revised Mediation Order makes clear that participation in the Mediation is entirely voluntary, and simply "refer[s]" the Mediation Issues to Mediation among any Mediation Parties wishing to participate. Moreover, the Revised Mediator Order explicitly states that "no Party shall be required to participate in the mediation of any Mediation Issue(s)." Ex. A, at ¶ 4. Accordingly, any party, including any Objecting Insurer, may elect not to participate in any aspect of the Mediation.

15.    In further response to concerns raised at the Hearing, the Revised Mediator Order more clearly delineates the division of labor between the Mediators. Specifically, the Revised Mediation Order provides that, "upon receipt of a Mediation Proposal, the Mediators shall confer and determine, in their discretion, the allocation of responsibility amongst themselves with respect to the Mediation Issue(s) that are the subject of the Mediation Proposal." Ex. A, at ¶ 4. This mechanism allows the Mediators themselves, as opposed to any particular party, to determine which Mediation Issues fall within each of their respective purviews.

16.    The Debtors, the Tort Claimants' Committee, the Creditors' Committee, the FCR, and the Local Council Committee all support entry of the Revised Mediation Order.

**B.    The Objecting Insurers' Arguments Are Meritless and Part of a Broader Strategy to Intentionally Delay and Obstruct the Resolution of These Chapter 11 Cases.**

17.    The Objecting Insurers' actions in these cases to date—most recently in connection with the bar date motion and the protective order and now on the appointment of Mediators—demonstrate that their primary objective is to delay and obstruct the Debtors and their principal constituents from coming to the bargaining table. The Objecting Insurers' latest

tactic is to impugn the professional integrity of widely respected mediators who have the unqualified endorsement of every other Mediation Party.

### 1.    Mr. Green Is Well Qualified to Serve as a Neutral Mediator in These Cases, and His Appointment Should Be Approved.

18.    The Objecting Insurers' challenges to the appointment of Mr. Green should be overruled. The Objecting Insurers do not challenge Mr. Green's qualifications. Nor do they challenge his experience.[7] They also fail to identify any specific conduct by Mr. Green that suggests he will be anything but impartial in mediating these cases. Instead, the Objecting Insurers express generalized concerns about Mr. Green's integrity based mainly on his professional and personal connections to one of the Mediation Parties: the FCR and his law firm.

19.    As an initial matter, it is well settled that, even in judicial proceedings where participation is not voluntary, a "social" or "friendly" relationship does not constitute grounds for recusal under 28 U.S.C. § 455(a), made applicable to mediators in these proceedings under Local Rule 9019-2(e). Indeed, the Committee on Codes of Conduct of the Judicial Conference of the United States has stated that "there may be special circumstances warranting disqualification, but a friendly relationship is not sufficient reason in itself." Advisory Opinion 11 by the Committee on Codes of Conduct of the Judicial Conference of the United States (2009).[8]

20.    This perspective on social relationships appears repeatedly in the case law. *In re Hawsawi*, 955 F.3d 152, 160–61 (D.C. Cir. 2020) ("A judge's past social relationship with a participant in a proceeding does not generally require recusal in either the civilian or the military

---

[7] The Debtors need not recite Mr. Green's long list of professional and academic accomplishments over the course of his 40-year career as a leading practitioner and scholar in the areas of negotiation, mediation, complex ADR processes, and the resolution of mass tort cases. *See generally* D.I. 712. Mr. Green has successfully mediated hundreds of complex, legally-intensive, high-stakes disputes not dissimilar to this restructuring.

[8] The type of "special circumstances" contemplated by the committee are described in a previous paragraph addressing a situation where a friend of the judge also serves as godfather to a judge's child. Advisory Opinion 11. Even in this situation, only if the relationship with the judge was "like that of a close relative, then the judge's impartiality *might* reasonably be questioned." *Id.*

justice systems"); *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) ("In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable . . . . Many courts therefore have held that a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer."); *Philip Morris USA v. United States FDA*, 156 F. Supp. 3d 36, 53 (D.D.C. 2016) (same); *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1295 (5th Cir. 1990) (finding "trial judge was well within his discretion in finding that the motion for recusal was not well founded, either in fact or in law" despite the fact that "the judge presiding over this case . . . has known the opposing counsel since he was a kid and that the judge presiding over this case was friends [sic] of opposing counsel and opposing counsel's father");[9] *In re Keenan*, 372 B.R. 496, 501 (Bankr. S.D. Cal. 2007) ("Alleged professional or social relationships between a party and the court are not a basis for disqualification.") (citing *Cheney v. The United States District Court for the District of Columbia,* 124 S. Ct. 1391, 1394–95 (2004)).

21.     Furthermore, although future claimants' representatives serve an important role in mass-tort bankruptcy proceedings, Mr. Patton's role in these chapter 11 cases is narrowly circumscribed. In these cases, a future claim is limited to an abuse claim held by a person who is currently under 18 years old or who is not aware of their abuse claims as a result of "repressed memory," where the concept is recognized.  In addition, the Objecting Insurers fail to identify any potential conflicts between Mr. Green and any of the other key constituencies in these cases other than the FCR. None of the Debtors, the Tort Claimants' Committee, the Creditors' Committee, or the Local Council Committee has any substantial past relations with Mr. Green.

[9] The movant who sought to disqualify the judge in *Henderson* also alleged that "the judge had already ruled adversely upon the credibility of one of the defendants in a prior matter." 901 F.2d at 1295. This allegation is similar to the Objecting Insurers' assertion that Mr. Green has "adopted positions hostile to insurers on issues that are similar or identical to issues he will be asked to mediate[.]." D.I. 756, at 5. Yet the combination of a prior adverse ruling and a life-long social relationship was not sufficient to warrant recusal in *Henderson*. 901 F.2d at 1295.

*See* D.I. 712, Appx. 1. And no Objecting Insurer purports to rely on the past relations they have

with Mr. Green in arguing that he should be disqualified. *See generally* D.I. 756, 757, 761.

22.     Hartford also argues that Mr. Green is biased against the Objecting Insurers

because, in prior engagements as a future claimants' representative, he has adopted positions

against the interests of the insurers in those cases. *See* D.I. 756, at ¶ 9. Not surprisingly, Hartford

fails to provide any authority for the proposition that an unblemished pro-insurer record is

necessary to serve as a mediator in a mass-tort case such as this. As would be the case with any

experienced mediator of Mr. Green's stature, and one that has previously served as a court-

appointed future claimants' representative, Mr. Green has taken positions on various topics that

may or may not ultimately be at issue in these proceedings. Cherry-picking certain instances

from other cases in which Mr. Green adopted positions that the insurers perceive as unfavorable

to them does not come close to the standard for establishing bias against the Objecting Insurers.

*See Vitranschart, Inc. v. Levy*, 2003 WL 22137134, at *2 (S.D.N.Y. Sept. 15, 2003) ("Judicial

rulings almost never constitute a valid basis for a bias or partiality motion.") (citing *Liteky v.*

*United States*, 510 U.S. 540, 555 (1994)); *Alston v. Admin. Offices of Del. Courts*, 663 F. App'x

105, 107-08 (3d Cir. 2016) (similar).

23.     The Objecting Insurers' focus on Mr. Green's experience in matters involving

insurers is particularly misplaced in light of the proposed appointment of two other Mediators,

including Mr. Gallagher, who the Insurers selected and is tasked with addressing insurance-

related issues as part of the Mediation. *See* Ex. A, at ¶ 2. As the Court noted at the May 18

hearing, the appointment of multiple Mediators with varied backgrounds and fields of expertise

will minimize the impact of any potential bias on the Mediation. *See* May 18, 2020 Hr'g Tr. at

160:14–17 ("[I]t does seem to me that to the extent some party is concerned that one or more of

the candidates may skew a little in one direction, having three might balance that out and be appropriate.").

> **2.    Mr. Finn Is Also Well Qualified to Serve as a Neutral Mediator in These Cases, and His Appointment Should Be Approved.**

24.    The Objecting Insurers' objections to Mr. Finn are similarly unpersuasive. Again, the Objecting Insurers do not argue that Mr. Finn is unqualified, inexperienced, or involved in any matters that present an actual conflict that would affect his impartiality. Instead, the Objecting Insurers argue that Mr. Finn cannot mediate these cases because he has previously worked with some of the lawyers involved and speculate "whether he has been promised any post-confirmation position or has had conversations with Debtors or others on that issue." D.I. 756, at 6.  The Debtors have not made any such promise to Mr. Finn.

25.    These arguments are striking in their lack of substance, and Hartford's baseless insinuation that Mr. Finn covets a post-confirmation position is wholly undeserved. Unsurprisingly, courts reject disqualification efforts based on such rank speculation and conjecture. *See, e.g., Estate of Ginor v. Landsberg*, 1997 WL 414114, at *2 (S.D.N.Y. July 24, 1997) ("Where the basis for recusal is not direct, but is remote, contingent, or speculative, recusal is not warranted."); *Vitranschart*, 2003 WL 22137134, at *2 (rejecting as "mere bald speculations" movant's suggestion that the judge had "already made up his mind" because of "personal, extrajudicial knowledge" based on "a secret agreement with or a personal interest in the well-being of Schwab and/or Levy Boonshoft & Spinelli."); *Keenan*, 372 B.R. at 501 ("Rumors, innuendo and unsupported allegations are not sufficient for recusal.").[10]  The Court should reject these arguments here.

---

[10] The only case Hartford cites in support of its argument to disqualify Mr. Finn, *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir. 1985), involved a judge who appeared to be seeking future employment from a party during the litigation. No such circumstances exist here. *Pepsico*, therefore, is inapposite. *Cf. Hawsawi*, 955 F.3d at 162

26.     There is nothing remarkable about the fact that a seasoned mediator has previous experience with some of the lawyers involved in this case. Indeed, the Objecting Insurers' chosen mediator, Mr. Gallagher, submitted disclosures indicating that he currently mediates matters involving all of the Objecting Insurers and their counsel. *See* D.I. 711, Sch. C. In contrast, Mr. Gallagher discloses no relation—either past or present—to the Debtors, the Tort Claimants' Committee, the Creditors' Committee, the Local Council Committee, or any of the lawyers representing them. *Id.* Notwithstanding his extensive current work with the Objecting Insurers and their counsel, the Debtors accepted Mr. Gallagher as one of the proposed Mediators.

27.     Mr. Finn's involvement in the November 2019 prepetition mediation also is not a basis upon which to deny his appointment. In the *School Asbestos* decision cited by the Allianz Insurers, the disqualifying connection was the presiding judge's attendance at a conference, while the case was pending, that was (i) hosted by the plaintiffs' bar, (ii) funded by *ex parte* relief the judge had granted to use settlement funds to pay for the conference, and (iii) involved the presentation of views "overwhelmingly consistent with the plaintiffs' position." *In re Sch. Asb. Litig.*, 977 F.2d 764, 780 (3d Cir. 1992). While "opposing views were not actively suppressed," representatives of defendants in asbestos cases did not speak. *Id.* Here, the circumstances surrounding the prepetition mediation are totally different, as representatives of the BSA, the tort claimants, the FCR, **and one of the Objecting Insurers** all attended the November 2019 mediation and had the opportunity to present their views to Mr. Finn.[11]

---

("[R]equiring a judge to recuse himself simply because he cannot rule out the *possibility* of future employment with a party appearing before him has no basis in precedent and could prove unworkable.").

[11] Hartford continues to contend that "Debtors shut Hartford out of . . . the fall 2019 two-day pre-petition mediation." D.I. 756, at 15. The Debtors have already corrected the record on this misrepresentation once before and will do so again here: the BSA's counsel notified Hartford two weeks before the fall 2019 mediation that the BSA intended to engage in a mediation of claims. Despite multiple follow-up inquiries, Hartford never responded to that email. *See* D.I. 664, Ex. 2.

28.    The Non-Objecting Parties appreciate the Court's reservation to appoint mediators without the unanimous support of the parties. The Revised Mediation Order, however, contemplates a voluntary process and has the endorsement of every relevant constituency other than the Objecting Insurers. Given the significance of the issues that are ready for initial mediation while this Motion has been pending, entry of the Revised Mediation Order is appropriate under the circumstances and in the best interests of the estates. Accordingly, the Debtors respectfully request that the Court overrule the Limited Objections and enter the Revised Mediation Order, substantially in the form attached hereto as **Exhibit A**.[12]

## C.    In the Alternative, the Court Should Appoint Judge Carey As a Mediator.

29.    Although the Debtors have asked that the Court appoint Messrs. Finn, Gallagher, and Green as Mediators, the Debtors are equally amenable to the appointment of Judge Carey, either as the sole mediator or as the lead mediator with the assistance of one or more of the other proposed Mediators. Judge Carey enjoys a universal reputation as a leading bankruptcy jurist, having presided over some of the highest-profile restructurings of the last two decades. Judge Carey has also mediated numerous highly complex and contested bankruptcy matters, both during his tenure as a bankruptcy judge and since his retirement. For these reasons, the Debtors fully support the appointment of Judge Carey as a Mediator, either if the Court is disinclined to approve the proposed slate of Mediators or if the Court decides that Judge Carey would enhance the chances for a successful mediation and, ultimately, the Debtors' successful exit from bankruptcy.

---

[12] With no legitimate basis for objecting to the appointment of Messrs. Finn and Green, the Objecting Insurers resort to asking the Court to further delay entry of a Mediator Order so that they can pursue discovery, including depositions, from each of them. *See* D.I. 756, at ¶¶ 31–34.   But Section 455 of title 28 does not provide for discovery, and courts have not hesitated to quash attempts to obtain it. *See, e.g., In re McCarthey*, 368 F.3d 1266, 1268-70 (10th Cir. 2004); *United Stated v. Sampson*, 148 F. Supp. 3d 75, 116 (D. Mass. 2015).

Dated: June 4, 2020
     Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*
_____
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
      aremming@mnat.com
      emoats@mnat.com
      ptopper@mnat.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Email: jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Email: tlabuda@sidley.com
      mandolina@sidley.com
      mlinder@sidley.com

CO-COUNSEL AND COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION