## Exhibit A

**Further Revised Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 17, 161, 164, 166, 316, 388, 617, 640, 646, 647, 648, 650, 652, 658, 662, 664, 710, 711, 712, 713, 756, 757, 759, 761, 762, 771, 772, 773, 782, 783, 785, 787, 790 & 797** |

## ORDER (I) APPOINTING MEDIATORS, (II) REFERRING CERTAIN MATTERS TO MEDIATION, AND (III) GRANTING RELATED RELIEF

Upon the motion [Docket No. 17] (the "Motion") of the Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), for entry of an order (this "Order") referring the Mediation Issues (as defined below) to mediation (the "Mediation") among the Parties (as defined below), as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and entry of this Order referring the Mediation Issues to mediation among the Parties (as defined below) being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Debtors having consented to entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the opportunity for a hearing on the Motion having been given, and it appearing that no other or further notice need be

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

provided; and certain objections to the Motion (and certain joinders in support of such objections) having been filed; and upon consideration of the Debtors' replies to such objections and the joinders in support thereof; and upon the record before this Court, including the Motion and the statements in support of the relief requested therein at hearings before this Court on May 18, 2020 and June 8, 2020; and the objections to the Motion having been sustained in part and otherwise withdrawn, resolved or overruled; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Honorable Kevin Carey (Ret.), Paul Finn and Timothy Gallagher are appointed as mediators (collectively, the "Mediators") for the purpose of mediating the comprehensive resolution of issues and claims in BSA's chapter 11 case through a chapter 11 plan (the "Mediation Issues"), which includes, without limitation, all matters that may be the subject of a motion seeking approval by the Court of solicitation procedures and/or forms of plan ballots, a disclosure statement, or confirmation of a chapter 11 plan (the "Direct Plan Actions").

3.      Except as otherwise provided herein, the following parties (collectively, the "Mediation Parties") are referred to the Mediation: (a) the Debtors; (b) the Ad Hoc Committee of Local Councils of the Boy Scouts of America; (c) the Future Claimants' Representative; (d) the Official Committee of Tort Claimants, including its members, professionals, and the individual members' professionals; (e) the Official Committee of Unsecured Creditors, including its members, professionals, and the individual members' professionals; and (f) each of the insurers set forth on **Exhibit 1** hereto (the "Insurers"). Any additional party or parties who wish to participate in the

Mediation, including, without limitation, any additional insurers, shall be included in the Mediation if (i) all of the Mediation Parties agree to include such additional party or parties in the Mediation and (ii) the Mediators agree that the participation of such additional party or parties is necessary or would be beneficial to the Mediation.   The Mediation Parties who elect to participate in the Mediation and the additional parties who participate in the Mediation in accordance with the immediately preceding sentence are collectively referred to herein as the "Parties."

4.      At any time following entry of this Order, one or more of the Parties may, individually or jointly, propose in writing that the Mediators address one or more particular Mediation Issues (each such proposal, a "Mediation Proposal") so long as such Party or Parties submits the Mediation Proposal by email to all of the Mediators and all of the Parties and describes, with specificity, the Mediation Issue(s) that are the subject of the Mediation Proposal.   Upon receipt of a Mediation Proposal, the Mediators shall confer and determine, in their discretion, the allocation of responsibility amongst themselves with respect to the Mediation Issue(s) that are the subject of the Mediation Proposal in accordance with Paragraph 2 herein. Notwithstanding anything to the contrary in this Order, and for the avoidance of doubt, no Party shall be required to participate in the mediation of any Mediation Issue(s).

5.      The Mediators shall consult with the Parties on the matters concerning the Mediation, including, without limitation: (a) the structure and timing of Mediation procedures, including, without limitation, the attendance of specific Parties at particular Mediation sessions; and (b) the timing, general content, and manner of any submissions to the Mediators.

6.      The Debtors are responsible for timely payment of the fees and costs of Judge Carey (Ret.) and Mr. Finn, which shall be payable on the terms and conditions of the attached agreements, without further application to or order of the Court.   The Insurers who are Parties are responsible for timely payment of one-half of the fees and costs of Mr. Gallagher.   The Debtors are responsible

for timely payment of the other half of the fees and costs of Mr. Gallagher. All such amounts shall be payable to Mr. Gallagher on the terms and conditions of the attached agreement, without further application to or order of the Court.

7.       The provisions of Local Rule 9019-5(d) pertaining to "Confidentiality of Mediation Proceedings" shall govern the Mediation provided, however, that if a Party puts at issue any good faith finding concerning the Mediation in any subsequent action concerning insurance coverage, the Parties' right to seek discovery, if any, is preserved. During the Mediation process, the Mediators also may make applicable or direct the use of such other provisions of Local Rule 9019-5 as they deem necessary or appropriate, provided that concerns arising from COVID-19 shall be taken into account as to the Parties' attendance in person in connection with the Mediation and no such attendance in person shall be required while the Court is not permitting in-person appearances.

8.       Notwithstanding the foregoing, this Order (a) does not require any Party to submit a dispute as to any matter or make a Mediation Proposal to a Mediator (other than a matter that would be the subject of a Direct Plan Action) before filing a pleading with the Court or any other court of competent jurisdiction, and (b) is without prejudice to any party in interest's objection to the continuance of the preliminary injunction in or other matters with respect to adversary proceeding number 20-50527 (LSS).

9.       All rights of the Parties are preserved and shall not be prejudiced by participation in the Mediation, including, without limitation, any rights to: (i) have final orders in non-core matters entered only after a *de novo* review by a District Court Judge; (ii) seek withdrawal of the reference of any matter subject to mandatory or discretionary withdrawal; (iii) seek remand of any removed matter; (iv) oppose venue transfer of any removed matter; (v) demand arbitration or a jury trial in any proceeding; and (vi) contest the jurisdiction of the bankruptcy court to enter any order concerning any alleged insurance coverage that is the subject of the Mediation.

10.    Notwithstanding any provision of this Order to the contrary, nothing contained in this Order shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying the Parties' rights or obligations under any alleged insurance coverage that is the subject of the Mediation or otherwise.

11.    The Confidentiality and Protective Order entered in these chapter 11 cases [Docket No. 799, Ex. 1] (the "Protective Order") shall govern the Parties' production, review, disclosure and handling of Discovery Material (as defined in the Protective Order) in connection with the Mediation.

12.    The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion, including executing agreements with Judge Carey (Ret.), Mr. Gallagher, and Commonwealth Mediation on the terms set forth in the forms of agreement attached hereto as **Exhibits 2**, **3** and **4**, respectively, on substantially similar terms, or on terms more favorable to the estates and/or, as applicable, to the Insurers.

13.    Unless the Court orders otherwise or the Parties otherwise agree, no Mediator shall be eligible for post-confirmation employment by any Trust or other similar organization formed pursuant to a plan of reorganization in these chapter 11 cases for the purpose of resolving and/or liquidating abuse claims.

14.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2020
      Wilmington, Delaware

                              _____
                                THE HON. LAURIE SELBER SILVERSTEIN
                                UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

1.  The Chubb Group of Insurance Companies, including but not limited to Insurance Company of North America.

2.  The Hartford Companies, including but not limited to Hartford Accident and Indemnity Company and First State Insurance Company.

3.  Allianz Global Risks US Insurance Company

4.  National Surety Corporation.

5.  Liberty Mutual Insurance Company.

6.  American International Group, Inc. entities, including National Union Fire Insurance Company of Pittsburgh, PA; Lexington Insurance Company; Landmark Insurance Company; The Insurance Company of the State of Pennsylvania.

## **Exhibit 2**

**Carey Agreement**

## MEDIATION AGREEMENT

Boy Scouts of America ("BSA") and the "Parties," as defined in the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediations, and (III) Granting Related Relief* [D.I. ___] (the "Order")[1] entered in BSA's chapter 11 case, Case No. 20-10343 (LSS) (Bankr. D. Del.), have agreed to mediate certain issues in connection with BSA's restructuring, as set forth in Paragraph 1 below.

1. **Mediation Scope and Process:** The scope of the mediation and the process for the mediation shall be determined in the manner set forth in the Order.

2. **Mediator:** The Parties agree that Kevin J. Carey of Hogan Lovells US LLP shall serve as a Mediator. The services provided by the Mediator pursuant to this Mediation Agreement and the Order do not create any attorney-client relationship between the Mediator and any of the Parties. The Mediator shall provide invoices to BSA on a monthly basis via email (steve.mcgowan@scouting.org), with a copy to BSA's restructuring counsel (jboelter@sidley.com, mandolina@sidley.com and mlinder@sidley.com), setting forth in reasonable detail the time expended and costs incurred for purposes of the mediation during that month. The Mediator shall be compensated and reimbursed for expenses as follows:

      a. Mr. Carey will charge for his legal services on an hourly basis in accordance with the ordinary and customary hourly rates in effect on the date services are rendered. His current hourly rate is $1,450.[2]

      b. To the extent any other Hogan Lovells counsel, associate, or paralegal/legal support is needed to assist in the successful resolution of the Mediation Issues, such professionals will be compensated at their standard hourly rates, which are based on such professionals' level of experience.[3] At present, the standard hourly rate ranges charged by Hogan Lovells are as follows:

| Billing Category | U.S. Range |
|---|---|
| Associates and Counsel | $450-960 |
| Paralegals/Legal Support | $265-490 |

      c. Mr. Carey will also seek reimbursement of actual and necessary out-of-pocket expenses. Theses incurred expenses customarily fall in the following categories: (a) copies; (b) outside printing; (c) telephone; (d) facsimile; (e) online research; (f) delivery serves/couriers; (g) postage; (h) local travel; (i) out-of-town travel (including subcategories for

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Order.

[2] Hogan Lovells' hourly billing rates are subject to periodic review and adjustments, typically in January of each year.

[3] The hour billing rates charged by Hogan Lovells' professionals differ based on, among other things, the professional's level of experience and the rates normally charged in the specific office in which the professional is resident. Hogan Lovells does not adjust billing rates of its professionals based on the geographic location of a bankruptcy case or other matter.

transportation, hotel, meals, ground transportation, an other); (j) meals (local); (k) court fees; and (l) other.

3.      **Payment of the Mediator**: BSA shall pay the Mediator's fees and expenses in accordance with Paragraph 2 of this Mediation Agreement.

4.      **Mediator Role:** The role of the Mediator shall be determined in the manner set forth in the Order.

5.      **Termination:** The services of the Mediator may be terminated by order of the Court.

FOR THE MEDIATOR

_____                                    _____, 2020
Kevin J. Carey
Partner, Hogan Lovells

FOR BOY SCOUTS OF AMERICA


By: _____                    _____, 2020
Steven P. McGowan
General Counsel

## Exhibit 3

**Gallagher Agreement**

# CONFIDENTIAL MEDIATION AGREEMENT

[INSURED] ("Party A") and [INSURER] ("Party B") (Party A and Party B are collectively "Parties" and individually "Party") agree to enter into a process of alternative dispute resolution by engaging in the mediation of those issues set forth in Paragraph 1 below, pursuant to this Confidential Mediation Agreement ("Agreement"). This Agreement sets forth the terms and conditions pertaining to the mediation, costs of the mediation, and the confidentiality of information shared among the Parties and Mediator as part of the mediation process.

1.  **Scope of Mediation**: Party A asserts that it is entitled to insurance coverage under policies issued or allegedly issued to Party B, including comprehensive general liability policies Party B issued or is alleged to have issued to Party B [IDENTIFY POLICIES] (collectively, the "Party B Policies") for certain underlying lawsuits seeking damages from Party A's predecessors and affiliates, and/or certain lawsuits tendered to Party A relating to bodily injury allegedly caused by exposure to asbestos (the "Claims"). Party B disputes that Party A is entitled to coverage under the Party B Policies for the Claims.

2.  **Mediation Process**: The mediation process includes all actions taken by any Party or the Mediator pursuant to this Agreement or in furtherance of settlement negotiations between the Parties, up to and including the termination date of this Agreement, and including, but is not limited to, the mediation scheduled for October 16, 2019.

3.  **Termination**: Any Party may terminate this Agreement by giving notice to the other Party and the Mediator, provided however, that prior to providing notice of termination, the terminating Party shall contact the Mediator at least five (5) business days prior to any written notice of termination to discuss the reasons for termination. Termination of this Agreement shall be effective on the date that all Parties and the Mediator have received written notice of termination. Section 5 – Payment of the Mediator and Section 7 – Confidentiality shall survive termination of this Agreement.

4.  **Mediator**: The Parties agree that Timothy Gallagher shall serve as the Mediator. The services provided by the Mediator pursuant to this Agreement do not create any attorney-client relationship between the Mediator and any Party. The Mediator shall provide invoices to the Parties monthly setting forth in reasonable detail the time and costs incurred for purposes of the mediation during that month. The Mediator shall be compensated by the Parties as follows:

    (a)    Mr. Gallagher's fees for mediation and facilitation services shall be $950 per hour.

    (b)    Mediation fees do not include the time required to travel to individual meetings or joint sessions unless actual mediation and facilitation services are being performed during such travel.

    (c)    Mr. Gallagher's necessary travel expenses, including airfare, lodging and subsistence, shall be reimbursed at actual cost as supported by a receipt.

5.  **Payment of the Mediator**:

GALLAGHER DRAFT

(a)　　Each Party shall pay 50% of the Mediator's fees, costs and expenses, which shall be invoiced by Mr. Gallagher to each Party separately.

(b)　　The Mediator, at his discretion, will invoice a Party separately for services performed that are specific to that Party.

(c)　　The Parties and the Mediator shall make best efforts to keep the cost of mediation process fair and reasonable.

(d)　　Each Party shall be independently responsible for its own expenses associated with the mediation process, including but not limited to, its respective share of the fees, costs and expenses for the Mediator, its own attorneys' fees, and any travel expenses.

6.　　**The Role of the Mediator**: In mediation, the Mediator shall act as a third-party neutral in a process in which the Parties, with the assistance of the Mediator, collaboratively and collectively seek to (l) identify issues; (2) develop potential alternatives and approaches to resolve those issues; (3) resolve those issues; and (4) achieve an appropriate resolution of matters in dispute. The Mediator shall assist the Parties to identify and communicate the interests underlying their dispute and help the Parties to develop their collaborative efforts into an overall settlement agreement. The Mediator shall have no liability for any act or omission in connection with the mediation process.

7.　　**Confidentiality**: To promote communication among the mediation participants and the Mediator, and to facilitate good faith negotiations, the Parties, including their representatives and agents, agree as follows:

(a)　　All statements made, information disclosed, and documents prepared in connection with the mediation process are confidential, are made without prejudice to any Party's legal or factual positions, are non-discoverable by any person from the Mediator, from the Party who prepared them, or from any Party or other person who obtained them in connection with or as a result of the mediation process, and shall be treated as compromise negotiations under Rule 408 of the Federal Rules of Evidence or any comparable provision of applicable state law, and shall be inadmissible for any purpose in any judicial, arbitral or other proceeding other than to the extent necessary to enforce the terms of this Agreement. The confidential character of any statement, information or document is not altered by disclosure to the Mediator. Without limiting the foregoing, all information provided by a Party to another Party or to the Mediator when marked or otherwise designated in writing as being subject to this Agreement or for purposes of the mediation process (e.g., "For Settlement Purposes" or "For Mediation Purposes") is for settlement purposes only and shall be governed by this Agreement. For the avoidance of doubt, information that is publicly available or non-confidential information that was known to a Party prior to the effective date of this Agreement shall not be rendered confidential, inadmissible or non-discoverable solely because of its disclosure or use in this mediation process.

(b)　　Except as otherwise provided for in this Agreement, the Parties shall not disclose to any person not the Mediator or a Party to this Agreement any information regarding the substance of the mediation process, including this Agreement, or the Parties' positions, negotiations, proposals, or settlement offers.

(c)    The Mediator will not be compelled to disclose or testify in any proceeding about (i) any records, reports or other documents received or prepared by the Mediator, or (ii) information disclosed or statements made before, during or after the mediation process, regardless of whether in the presence of all Parties or in any separate caucus or conference.

(d)    Since the participants are disclosing information generally in reliance upon an expectation and right of privacy and specifically in reliance on the confidentiality provisions of this Agreement, it is expressly acknowledged and agreed that any breach or attempted breach of these terms would cause irreparable injury for which monetary and other legal damages would be inadequate.    Accordingly, any Party to this Agreement may obtain an injunction to prevent disclosure of any information in violation of this Agreement.

(e)    Any Party breaching the confidentiality provisions of this Agreement shall be liable for and indemnify the non-breaching Party and the Mediator for all costs, expenses, liabilities, and fees, including attorney's fees, which may be incurred as a result of such breach.

(f)    Nothing in this Agreement is intended to limit the Parties' prior or future agreements as it relates to the confidentiality of information and documents exchanged or communications made between the Parties, including settlement negotiations that have occurred or may occur outside of the mediation process.

8.    **Agreement of the Parties**:

(a)    No Party or counsel for that Party shall be bound by anything said or done during the mediation process unless and until a written settlement is reached, executed, and approved by the Parties to this Agreement, including counsel.

(b)    The Parties make no admission of fact or law, responsibility, fault, or liability by entering into and participating in the mediation process, by entering into this Agreement, or by submitting any draft or final settlement agreement for approval.

(c)    In the event that the Parties fail to reach an agreement prior to termination of this Agreement, either Party may request that the Mediator provide the Parties with a brief oral report detailing the positions of each of the Parties, the Mediator's understanding of the remaining issues, and the Mediator's perceived impediments to achieving agreement.

9.    **Miscellaneous**:

(a)    This Agreement shall become final and effective once all Parties, including the Mediator, have executed the Agreement.

(b)    The descriptive headings of this Agreement are included for convenience only and shall not affect the interpretation of any provision herein.

(c)    The provisions of this Agreement shall apply to and be binding upon each Party hereto, its officers, agents, employees, successors and assigns, and any person acting on its behalf.

         (d)     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one instrument.

         (e)     The Mediator and each of the undersigned representatives of the Parties to the mediation process attests that each representative is authorized to execute and bind that Party to this Agreement.  By signature below, the Mediator and each representative acknowledges that they have read, understand and agree to this Agreement.

GALLAGHER DRAFT

FOR THE MEDIATOR:


_____          _____, 2019
Timothy V.P. Gallagher, Esq.Date
1875 Century Park East, Suite 1550
Los Angeles, CA 90067-2728
(310) 203-2600 telephone
(310) 203-2610 fax

[PARTY A]:

By: _____          _____, 2019
Name                                          Date

[PARTY B]:

By: _____          _____, 2019
Name                                                             Date

## Exhibit 4

**Commonwealth Mediation Agreement**



## COMMONWEALTH MEDIATION & CONCILIATION, INC.
### FEE SCHEDULE
### FOR
### PAUL A. FINN

The Mediation fee for complex claims shall be billed at the rate of $1,500.00 per hour plus all expenses such as travel expenses. The above quoted hourly rate is for all time mediating with a party or parties in person; all preparation time; and all follow up time. There is no charge for administrative costs, which costs are included in the above quoted fee.

The fee for complex claims is subject to a minimum monthly rate. Any additional hours above the agreed upon minimum hours during a particular month shall be billed at the rate of $1,500.00 per hour.



## AGREEMENT TO SUBMIT TO MEDIATION

**CMCI FILE NO.:**

**Plaintiff:**
**Defendant:**

**Insurer:**

**Date of Incident:**

1. The undersigned hereby agree to submit the above-captioned claim to non-binding mediation
2. The undersigned further agree that this claim shall be submitted to **Commonwealth Mediation and Conciliation, Inc. (CMCI)** for non-binding mediation in accordance with Massachusetts General Laws, Chapter 233, s. 23C* and CMCI's Mediation Rules, which rules are incorporated by reference herein.
3. All fees and expenses shall be in accordance with the fee schedule provided by CMCI.

**Plaintiff**                                          **Defendant**

**Plaintiff's Attorney**                              **Defendant's Attorney**

**DATE:**

*\*Please note that Massachusetts Law only applies to claims mediated in Massachusetts.  All other claims will reference the mediation statute in the State in which the mediation takes place.*

# Rules for Mediation

Commonwealth Mediation and Conciliation, Inc. (CMCI) has rules for both mediation and arbitration. It is the duty of the parties to be familiar with the rules prior to the commencement of any hearing before a CMCI neutral.

## 1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation of existing or future disputes under the auspices of Commonwealth Mediation and Conciliation, Inc. (CMCI) or under these rules, they shall be deemed to have made these rules, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

## 2. Initiation of Mediation

Any part of parties to a dispute may initiate mediation by filing with CMCI a written request for mediation pursuant to these rules, together with the appropriate administration fee contained in the Fee Schedule. Where there is no submission to mediation or contract providing for mediation, a party may request CMCI to join in a submission to mediation. Upon receipt of such a request CMCI will contact the other parties involved in the dispute and attempt to obtain a submission to mediation.

## 3. Request for Mediation

A request for mediation shall be in a Case Outline, provided by CMCI, which contains a brief statement of the nature of the dispute and the names, addresses and telephone numbers of all parties to the dispute and those that will represent them, if any, in the mediation.

## 4. Appointment of Mediator

Upon receipt of a request for mediation, CMCI will appoint a qualified mediator to serve. Normally, a single mediator will be appointed unless the parties agree otherwise or CMCI determines otherwise. If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation of method shall be followed.

## 5. Qualifications of Mediator

Case 20-10343-LSS ...

Any mediator appointed shall be a member of CMCI's Mediation Panel, with expertise in the area of the dispute and knowledgeable in the mediation process. No person shall serve as a mediator in any dispute in which that person has any financial or person interest in the result of the mediation, except by written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, CMCI shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the

mediator shall serve, CMCI will appoint another mediator. CMCI is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

## 6. Vacancies

If any mediator shall become unwilling or unable to serve, CMCI will appoint another mediator, unless the parties agree otherwise.

## 7. Representation

Any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to CMCI.

## 8. Date, Time and Place of Mediation

CMCI shall fix the date and time of each mediation session. The mediation session shall be held at CMCI, or at any other convenient location agreeable to the mediator and the parties, as CMCI shall determine.

## 9. Identification of Matters in Dispute

At least ten days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties. At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented. The mediator may require any party to supplement such information.

## 10. Authority of Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expense of obtaining such advice. Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine. The mediator is authorized to end the mediation whenever, in the judgment of the mediator further efforts at the mediation would not contribute to a resolution of the dispute between the parties.

## 11. Privacy Mediation sessions are private.

The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## 12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in such capacity shall be confidential. The mediator shall not be compelled to divulge such records or testify in regard to the mediation in any adversary proceeding or judicial forum. The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding: a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; b) admissions made by another party in the course of the mediation proceedings; c) proposals made or views expressed by the mediator; or d) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## 13. No Stenographic Record

There shall be no stenographic record of mediation process.

## 14. Termination of Mediation

The mediation shall be terminated: a) by the execution of a settlement agreement by the parties; b) by written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or c) by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

## 15. Exclusion of Liability

Neither CMCI nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither CMCI nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these rules.

## 16. Interpretation and Application of Rules

The mediator shall interpret and apply these rules insofar as they relate to the mediator's duties and responsibilities. All other rules shall be interpreted and applied by CMCI.

## 17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of CMCI, and the expense of any witness and the cost of any proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

© 2010 Commonwealth Mediation and Conciliation, Inc