## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC.[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## AFFIDAVIT OF SERVICE OF PUBLICATION

PLEASE TAKE NOTICE that the undersigned certifies that the following document

### Notice of Deadlines for Filing Proofs of Claim[2]

was published in the following publications on the date provided.

| Publication | Date | Exhibit |
|---|---|---|
| USA Today | June 15, 2020 | A |
| The Wall Street Journal | June 15, 2020 | B |
| The New York Times | June 15, 2020 | C |

/s/ Darleen Sahagun_____
Darleen Sahagun
Omni Agent Solutions
5955 DeSoto Avenue, Suite 100
Woodland Hills, California 91367
(818) 906-8300
*Claims, Noticing, and Administrative Agent for the Debtor*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] A copy of the Notice is attached as **Exhibit D**.

## EXHIBIT A



## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on <u>**Monday, June 15, 2020**</u>, the following legal advertisement – <u>**BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC.**</u>– was published in the national edition of **USA TODAY.**

Principal Clerk of USA TODAY
June 15, 2020

MONEY

# Don't buy a house that drops in value

## Put in work before purchasing property to ensure that your investment is sound

**Adam Shell**
Special to USA TODAY

When shopping for a home, some detective work can help ensure your investment is a good one.

Emotions play a big role in real estate decisions, and it's easy to fall in love with a home at first sight. But it's important to do some digging before you buy it. You want to make sure the property doesn't come with any hidden negatives that could cause its value and appeal to slip.

That means not getting too caught up with the fresh coat of paint or the newly renovated kitchen and bathrooms and, instead, identifying anything that might "detract from selling the property down the road," says Peter Murray, a real estate agent with RE/MAX Plus in Frederick, Maryland.

You don't want to be blindsided, for example, by your town's building inspector informing you the flipper you bought from didn't get the required permits for the renovation. Or learn that the crack in the kitchen wall is due to a sinkhole. Or that your kid won't be able to attend a top school under a redistricting plan you should've known about.

Donna Gola, a team leader at RE/MAX Elite in the Seattle area, says buyers new to her community can run into trouble if they don't stay abreast of local issues that could affect a home's value. One such homeowner headache is the noise from airplanes taking off and landing at the new Paine Field airport near Everett, Washington. Others include newcomers whose property values might be affected by "slide areas" in rainy Washington state or neighborhoods where traffic is heavier, as is the case near a new ferry terminal set to open this fall in Mukilteo.

When it comes to resale, Gola says, "If there is something that bothers you about the house, that is going to bother someone else later on."

To avoid buyer's remorse, "research the living daylights out of the property you are buying," Murray says.

That means scouring public data records for statistics on crime, home price trends and school budgets. Researching any coming zoning changes. And spending extra on a structural engineer if your home inspector suspects foundation issues.

"Even if you think it will be your 'forever home,' you have to think about reselling – life happens," says Angela Veselov, a real estate agent at Premier Properties of South Florida. "You want to make sure the value and appreciation potential is there and that there will be demand for what you invested in."

Here are tips on how to find out the things that could turn your dream home into a financial nightmare.

### Do research before a home purchase

Buying a home is often the biggest investment of one's life. It's not enough to do a home walk-through. Or take someone else's word about how great and safe the neighborhood is. You need to see it for yourself.

"Take a ride into the neighborhood at different times of day," Veselov says. "At rush hour. When the school buses come around. In the evening. And see if you like it."

### Compare to other homes' historical sales price data

Analyzing a home's and neighborhood's historical sales price data can give you an idea of whether values are appreciating or depreciating. A review of sales that shows a string of lower selling prices could signal that appreciation is far from

certain. "If it did take a dip, was there a good reason or a bad reason?" Murray says. "You'll want to have an explanation."

It's important to make sure the home you're considering has the general amenities, inhome functionality and architectural style that fits in with other homes in the neighborhood.

A home's resale value could be hurt, Murray says, if you buy something that's "super custom specific" or has "poor design." It will be less attractive to a broad pool of buyers.

The more functional the home is, the better. A home listing with five bedrooms might sound great, but if three are located in the attic and basement or you have to walk through one bedroom to get to another one, the home's value could lag those where all five bedrooms are on the main living floors. Similarly, a home that has undergone many additions that don't blend in seamlessly with the original house could also turn buyers off.

"You want to be very careful of buying a property with poor design or one in which you can't utilize the property in the way you want," Murray says.

If research shows the toppriced comps in your area are $500,000 and you pay close to that, make sure you don't throw $200,000 more into the house. "Overimprovements" should be avoided because you'll probably not get back the money you put in, Veselov says.

### Get help from professionals

A home inspection performed by a licensed pro can alert you to potential problems. Foundation problems or moldrelated issues are good examples. If your inspector says he "recommends further inspection" of something that's beyond his expertise, spend the extra money on a specialist.

"Buyers should look at the inspection process as an investment in their future," Murray says. "It's no different than health care: You wouldn't want your primary care doctor to give you specialized cancer treatment."

Real estate agents can help. Veselov recalls clients relocating to Florida last year who fell in love with a property near the water. After learning their children would be attending school there, Veselov pivoted and found them a similar property in another waterfront community with a higher-rated school system.

### Review documents at town hall

Public documents are rich with information. Before you close on a home, go to the town hall and make sure, for example, that all the work the seller did knocking down walls to create that open concept was done properly and there are permits to prove it, Veselov advises. If any permits are pending, she says, make sure they are all closed out.

Staying current on zoning rules or changes is critical, especially when it involves rezoning, rules pertaining to septic tanks or historical preservation rules. Murray says potential buyers should check in with their state, county and local governments to see if any zoning-related changes are coming. "Are they planning to put a highway in your backyard or take your home through eminent domain or allowing a cement factory to be built across the street?" Murray says.

Another red flag is if the home you're eyeing has been added to a federal flood zone map or soon could be. That could cause values to drop and higher costs for flood insurance.

Reviewing all relevant prop-



Realtor Peter Murray holds a "sold" sign. COURTESY OF PETER MURRAY

erty documents also applies to condos, Veselov says.

"Make sure you look at all the publicly available information on a condo that you can get your hands on – minutes of condo association meetings, the budget, all those types of things," Veselov says. Yellow flags include inadequate condo reserves, fast-rising HOA fees and plans to charge unit owners a costly one-time assessment.

---

## LEGAL MONDAY

For advertising information: 1.800.872.3433    www.marketplace.usatoday.com

[Legal notices — dense fine print not legible for faithful transcription]

---

**Visit USA TODAY's web site at www.usatoday.com**

For more information on how to place your ad in **Legal Monday, call**

# 1-800-872-3433

Toll-free in the U.S. only

# EXHIBIT B

# AFFIDAVIT

**STATE OF NEW JERSEY**                )
                                        ) ss:
**CITY OF MONMOUTH JUNCTION, in the COUNTY OF MIDDLESEX )**

I, Andrew Introne, being duly sworn, depose and say that I am the Advertising Clerk of the

Publisher of THE WALL STREET JOURNAL, a daily national newspaper of general circulation

throughout the United States, and that the notice attached to this Affidavit has been regularly

published in THE WALL STREET JOURNAL for National distribution for

1 insertion(s) on the following date(s): JUN-15-2020,

ADVERTISER: BOY SCOUTS OF AMERICA AND DELAWARE BSA;

and that the foregoing statements are true and correct to the best of

_____

          Sworn to
        before me this
        15 day of June
           2020

_____
Notary Public



# BUSINESS & FINANCE

Number of S&P 500 monthly percentage changes in each range

**1928 to June 2020** — Since 1928, U.S. stocks have mostly had small gains or losses, with the occasional blowout month in either direction.

**1946 to June 2020** — Tail risk narrowed after WWII.

| 1928 to June 2020 | Range | 1946 to June 2020 |
|---|---|---|
| 1 | 40% to 45% | 0 |
| 2 | 35% to 40% | 0 |
| 1 | 20% to 25% | 0 |
| 3 | 15% to 20% | 1 |
| 23 | 10% to 15% | 11 |
| 130 | 5% to 10% | 95 |
| 497 | 0% to 5% | 429 |
| –329 | 0% to –5% | 278 |
| 91 | –5% to –10% | 68 |
| 21 | –10% to –15% | 9 |
| 4 | –15% to –20% | 1 |
| 4 | –20% to –25% | 1 |
| 2 | –25% to –30% | 0 |

Source: Dow Jones Market Data

Note: Before 1957 the S&P 90 is used

# Fear of Missing Out Grows

*Continued from page B1*

market plunges—then it makes sense to sell a put, collecting the premium and profiting as long as the market doesn't fall more than a predefined amount. But selling puts is far too dangerous a strategy for most. It brings with it potentially huge losses if markets crash before central banks get their act together, because the seller of a put has to buy stocks at the predefined price, even if the shares are trading much lower. A better way to make a similar bet on the Fed is to buy a call, where the potential loss is limited to the premium paid.

Mr. Bhansali's fund just caught a record meltup in the S&P 500, which rose 39.6% in 50 days (the S&P's narrower predecessor index rose even more in the false start of 1932). The twin questions for investors wanting to use options are whether we will see more meltups, and whether the market is mispricing the meltup likelihood. If the answers are "yes" and "yes," a FOMO fund makes perfect sense. If we return to the norms of history, then the answers are "no" and "no," and it will bleed money for long periods when markets go sideways or rise slowly.

However, there is a deeper question about investor psychology.

Investors tend to take profits too early and hold losing positions too long, a well-known mistake documented by behavioral finance and dubbed the disposition effect. Traditional tail-risk funds help to counter that. They give an investor the confidence to hold on to their risky assets when markets are rising, since they have some protection if the worst happens and markets fall sharply.

Call options also help to overcome the disposition effect: The predetermined expiration date makes it easy to let your winners run until then. One could cash in any gains early by selling the option, but the psychology of having committed up front helps to counter this. On top of that, the losses are defined as the entire premium, which allows an investor to run the rest of her portfolio in the knowledge of exactly what potential losses this upside bet brings. Unfortunately the options market is complex and for most people too hard to trade directly.

I recommended taking profits on the short bull market at the end of April, which in retrospect looks like it was too early. Maybe stocks can keep going up, propelled by continued easy money and a fast-recovering economy, albeit not in a straight line. But the risk that something goes wrong seems to me to be bigger than the market is acknowledging.

I'm happy to miss out on fleeting gains. But a FOMO fund would let me access any return to upward momentum for a defined upfront cost. That is better than feeling pressured to put an entire portfolio at risk.

# J.M. Smucker Widens Range of Guidance

By Nina Trentmann

Food manufacturer **J.M. Smucker** Co. in recent weeks widened its guidance range, in contrast with other companies that have withdrawn their financial forecasts amid uncertainty caused by the coronavirus pandemic.

Based in Orrville, Ohio, Smucker, which makes Jif peanut butter, Smucker's Jam, Folgers coffee and Meow Mix cat food, on June 4 said it expects net sales to decline 1% to 2% in the financial year that runs through April 2021.

Adjusted earnings per share are expected to come in between $7.90 and $8.30 in fiscal 2021.

The projected sales drop reflects lower expected revenue in Smucker's food-service and office-coffee businesses as well as higher-than-usual sales in the recent quarter ended April 30, due in part to increased consumer demand, the company said.

Coming up with that guidance despite the uncertainty over the direction of the U.S. economy was tough, said Tucker Marshall, who became Smucker's chief financial officer on May 1, after about eight years with the company. May 1 also marked the beginning of Smucker's new financial year.

The dilemma of whether to provide financial guidance was "the No. 1 thing I wrestled with," Mr. Marshall said. The company decided to do so but with a broader range of estimates than usual.

Roughly 225 companies in the S&P 500—the index that Smucker is part of—have withdrawn guidance as of June 10, according to data provided by research firm Gartner Inc. More than 90 companies revised their guidance, while 49 left theirs unchanged, Gartner said.

"The majority of consumer companies that we cover have pulled guidance," said Bea Chiem, a director at S&P Global Ratings. "Even the companies that are doing pretty well are doing so because they just don't know."

Spice maker **McCormick** & Co. and chocolate company **Hershey** Co. are among the companies that have pulled their guidance.

**Kellogg** & Co. is among those that still provides forecasts.

For analysts, any guidance is helpful, Ms. Chiem said. "If there is no baseline, it is more challenging," she said.

ADVERTISEMENT

# The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

## BANKRUPTCIES

**NOTICE OF DEADLINE FOR FILING THIRD SUPPLEMENTAL ADMINISTRATIVE PROOFS OF CLAIM AGAINST LEHMAN BROTHERS INC.**

**THIS DEADLINE DOES NOT RELATE TO ANY CLAIM THAT AROSE ON OR PRIOR TO FEBRUARY 28, 2018 AND ANY SUCH CLAIM IS NOW TIME-BARRED. THIS DEADLINE HAS NO EFFECT ON PREVIOUSLY SUBMITTED CLAIMS AND CLAIMANTS THAT FILED CUSTOMER OR GENERAL CREDITOR CLAIMS NEED NOT RESUBMIT THEIR CLAIMS.**

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

In re LEHMAN BROTHERS INC., Debtor. — Case No. 08-01420 (SCC) SIPA

**NOTICE OF DEADLINE FOR FILING THIRD SUPPLEMENTAL ADMINISTRATIVE PROOFS OF CLAIM**

TO ALL PERSONS AND ENTITIES WITH A CLAIM FOR ADMINISTRATIVE EXPENSES AGAINST THE DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtor in the Past 8 Years |
|---|---|---|---|
| Lehman Brothers Inc. | 08-01420 | 13-2518466 | None |

PLEASE TAKE NOTICE THAT, on June 9, 2020, the Court entered an order (the "Third Supplemental Administrative Bar Date Order") establishing the deadline for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, governmental units (governmental units shall be ascribed the meaning as provided in section 101(27) of the Bankruptcy Code), and trusts) to file a proof of claim for certain administrative expenses (a "Third Supplemental Administrative Proof of Claim") against the Lehman Brothers Inc. ("LBI") estate on or before **July 20, 2020 at 5:00 p.m. (Prevailing Pacific Time)** with respect to administrative expenses arising from March 1, 2018 to and including May 31, 2020 (the "Third Supplemental Administrative Bar Date"). To obtain a Third Supplemental Administrative Proof of Claim Form and for more information as to who needs to file and the procedures to fill out a Third Supplemental Administrative Proof of Claim, please visit www.lehmantrustee.com. If you do not have internet access, a Third Supplemental Administrative Proof of Claim Form may be obtained by calling 1-866-841-7868 (domestic) or 1-503-597-7690 (international).

The Third Supplemental Administrative Bar Date Order, the Third Supplemental Administrative Bar Date, and the procedures set forth below for the filing of Third Supplemental Administrative Proofs of Claim apply to all claims for administrative expenses against the LBI estate other than those set forth below as being specifically excluded. The Third Supplemental Administrative Bar Date Order **does not relate to any claim that arose on or prior to February 28, 2018.** The deadline for asserting customer or general creditor claims that arose prior to September 19, 2008 was June 1, 2009 and any such claim is now time-barred. The Trustee has issued determinations allowing or denying all customer claims and general creditor claims. The deadline for asserting Administrative Proofs of Claim with respect to administrative expenses arising from September 19, 2008 to and including August 31, 2013 was October 31, 2013 and any such claim is now time-barred. The deadline for asserting Supplemental Administrative Proofs of Claim with respect to administrative expenses arising from September 1, 2013 to and including October 31, 2016 was November 30, 2016 and any such claim is now time-barred. The deadline for asserting Second Supplemental Administrative Proofs of Claim with respect to administrative expenses arising from November 1, 2016 to and including February 28, 2018 was April 2, 2018 and any such claim is now time-barred.

**If you have any questions relating to this Notice, please feel free to contact the Office of the Trustee at 1-866-841-7868 (domestic) or 1-503-597-7690 (international) or by e-mail at teamlehman@hugheshubbard.com.**

**THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM FOR ADMINISTRATIVE EXPENSES OR THAT THE TRUSTEE OR THE COURT BELIEVES THAT YOU HAVE A CLAIM FOR ADMINISTRATIVE EXPENSES.**

**YOU SHOULD NOT FILE A THIRD SUPPLEMENTAL ADMINISTRATIVE PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM FOR ADMINISTRATIVE EXPENSES AGAINST THE LBI ESTATE.**

**DEFINITIONS OF WHO MUST FILE A THIRD SUPPLEMENTAL ADMINISTRATIVE PROOF OF CLAIM ARE PROVIDED BELOW, TOGETHER WITH DEFINITIONS OF THOSE WHO NEED NOT FILE A THIRD SUPPLEMENTAL ADMINISTRATIVE PROOF OF CLAIM AT THIS TIME.**

**YOU SHOULD CONSIDER CONSULTING AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A THIRD SUPPLEMENTAL ADMINISTRATIVE PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM.** You **MUST** file a **Third Supplemental Administrative Proof of Claim** to obtain payment on account of **a claim for administrative expenses** arising from **March 1, 2018 to and including May 31, 2020** that is not one of the types of claims described in Section 2 below. Claims for administrative expenses are specifically described in sections 503 and 507 of the U.S. Bankruptcy Code.

**2. WHO NEED NOT FILE A THIRD SUPPLEMENTAL ADMINISTRATIVE PROOF OF CLAIM.** The following persons or entities are not required to file a Third Supplemental Administrative Proof of Claim on or before the Third Supplemental Administrative Bar Date with respect to administrative expenses that arose during the Third Supplemental Administrative Bar Date Period: **(a) any person or entity that holds a claim for Administrative Expenses that has been allowed by an order of this Court entered on or before the Third Supplemental Administrative Bar Date; (b) any person or entity whose claim for Administrative Expenses has been paid or otherwise satisfied in full; (c) any person or entity who is a professional advisor (i.e. counsel, financial advisors, accountants, claims agents) retained by the Trustee, including all counsel retained pursuant to orders of the Bankruptcy Court and the District Court, and all other professionals retained, with permission from the Securities Investor Protection Corporation ("SIPC"), pursuant to SIPA section 78fff-1(a)(1), and SIPC itself; and (d) any holder of a claim for Administrative Expenses who has already properly filed a Third Supplemental Administrative Proof of Claim with Epiq Bankruptcy Solutions, LLC.**

If your claim for administrative expenses falls within any of the above exceptions, you do NOT have to file a Third Supplemental Administrative Proof of Claim at this time. Any other person or entity with a claim for administrative expenses must file a Third Supplemental Administrative Proof of Claim as described herein.

**3. WHEN AND WHERE TO FILE.** All Third Supplemental Administrative Proofs of Claim must be filed so as to be actually received on or before the Third Supplemental Administrative Bar Date at the following address: If by overnight courier or hand delivery to: Epiq Corporate Restructuring, LLC, Attn: Lehman Brothers Inc. Claims Processing, 10300 SW Allen Blvd, Beaverton, OR 97005. If by first-class mail, to: Lehman Brothers Inc. Claims Processing, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4420, Beaverton, OR 97076-4420.

Third Supplemental Administrative Proofs of Claim will be deemed timely filed only if actually received by Epiq on or before the Third Supplemental Administrative Bar Date. Third Supplemental Administrative Proofs of Claim may not be delivered by facsimile, telecopy, or electronic mail transmission.

**4. WHAT TO FILE.** If you file a Third Supplemental Administrative Proof of Claim, your filed Third Supplemental Administrative Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to the form provided with this Notice or located at the following website: www.lehmantrustee.com (the "Third Supplemental Administrative Proof of Claim Form"); (iv) set forth with specificity the legal and factual basis for the alleged claim for administrative expenses; (v) include supporting documentation or an explanation as to why such documentation is not available; and (vi) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**5. CONSEQUENCES OF FAILURE TO FILE A THIRD SUPPLEMENTAL ADMINISTRATIVE PROOF OF CLAIM BY THE THIRD SUPPLEMENTAL ADMINISTRATIVE BAR DATE.** Except with respect to claims for administrative expenses of the type set forth in Section 2 above, any creditor who fails to file a Third Supplemental Administrative Proof of Claim on or before the Third Supplemental Administrative Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claims for administrative expenses such creditor holds or wishes to assert against the LBI estate will be forever barred, estopped, and enjoined from asserting the claim for administrative expenses against the LBI estate (or filing any proof of claim with respect thereto), and the LBI estate, its successors, and property will be forever discharged from any and all indebtedness or liability with respect to such claim for administrative expenses.

**You should consider consulting an attorney if you have any questions, including whether you should file a Third Supplemental Administrative Proof of Claim. Neither the Trustee nor his attorneys can advise you in this matter.**

DATED: New York, New York, June 9, 2020, BY ORDER OF THE COURT, HUGHES HUBBARD & REED LLP, One Battery Park Plaza, New York, New York 10004, (212) 837-6000, ATTORNEYS FOR JAMES W. GIDDENS, TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.

## BANKRUPTCIES

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

In re: ALTA MESA RESOURCES, INC., *et al.*, Debtors.[1] § Chapter 11, Case No. 19-35133 (MI) § (Jointly Administered) § Re: Docket No. 1778

**NOTICE OF (I) ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING AMENDED JOINT CHAPTER 11 PLAN OF KFM DEBTORS AND (II) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on May 27, 2020, the Honorable Marvin Isgur, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming Amended Joint Chapter 11 Plan of KFM Debtors* [Docket No. 1778] (the "**Confirmation Order**") confirming the *Amended Joint Chapter 11 Plan of KFM Debtors* [Docket No. 1594] (as supplemented and amended, the "**Plan**")[2] and approving, on a final basis, the *Disclosure Statement for Amended Joint Chapter 11 Plan of KFM Debtors* [Docket No. 1595] (the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on June 8, 2020.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by the Plan, the Confirmation Order, any other applicable order of the Bankruptcy Court, or agreed to by the holder of an Allowed Administrative Expense Claim and the KFM Debtors, all requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court as set forth in the Confirmation Order no later than July 8, 2020 (the "**Administrative Expense Claims Bar Date**"); *provided*, *however*, that holders of Administrative Expense Claims that are based on liabilities incurred in the ordinary course of the applicable KFM Debtor's business (other than Claims of Governmental Units for taxes and for interest and/or penalties related to such taxes) in an amount less than $20,000 shall not be required to file any request for payment of such Administrative Expense Claims. Holders of Administrative Expense Claims that are required to file a request for payment of such Administrative Expense Claims that do not file such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the KFM Debtors, the Post-Effective Date KFM Debtors, or their property.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court, any Person that asserts a Claim based on the rejection of an executory contract or unexpired lease of the KFM Debtors pursuant to the Plan or otherwise must file a Proof of Claim with respect to such Claim with the Bankruptcy Court as set forth in the Confirmation Order no later than June 17, 2020 (the "**Rejection Damages Claims Bar Date**"). Holders of such Claims that are required to file a Proof of Claim with respect to such Claims that do not file such a Proof of Claim by the Rejection Damages Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the KFM Debtors, the Post-Effective Date KFM Debtors, or their property.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court, any Person that asserts a Priority Tax Claim, Other Priority Claim, or Other Secured Claim must file a Proof of Claim with respect to such Claim with the Bankruptcy Court as set forth in the Confirmation Order no later than July 8, 2020 (the "**Other Claims Bar Date**"). Holders of such Claims that are required to file a Proof of Claim with respect to such Claims that do not file such a Proof of Claim by the Other Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Claims against the KFM Debtors, the Post-Effective Date KFM Debtors, or their property.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by Prime Clerk LLC at https://cases.primeclerk.com/altamesa/. Parties may also obtain any documents filed in the Chapter 11 Cases for a fee via PACER at https://www.pacer.gov/. Please note that a PACER password and login are required to access documents via PACER.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the provisions thereof are binding on the KFM Debtors, the Post-Effective Date KFM Debtors, any holder of a Claim against, or Interest in, the KFM Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder voted to accept the Plan.

BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP, Alfredo R. Pérez (15776275), 700 Louisiana Street, Suite 1700, Houston, Texas 77002, Telephone: (713) 546-5000, Facsimile: (713) 224-9511, Email: Alfredo.Perez@weil.com -and- WEIL, GOTSHAL & MANGES LLP, Ray C. Schrock, P.C. (admitted *pro hac vice*), Kelly DiBlasi (admitted *pro hac vice*), Lauren Tauro (admitted *pro hac vice*), 767 Fifth Avenue, New York, New York 10153, Telephone: (212) 310-8000, Facsimile: (212) 310-8007, Email: Ray.Schrock@weil.com, Kelly.DiBlasi@weil.com, Lauren.Tauro@weil.com, *Attorneys for Post-Effective Date KFM Debtors*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Alta Mesa Resources, Inc. (3840); Alta Mesa Holdings, LP (5150); Alta Mesa Holdings GP, LLC (0642); OEM GP, LLC (0958); Alta Mesa Finance Services Corp. (5673); Alta Mesa Services, LP (7295); Oklahoma Energy Acquisitions, LP (3762); SRII Opco GP, LLC (3729); SRII Opco, LP (5874); Kingfisher Midstream, LLC (1357); Kingfisher STACK Oil Pipeline, LLC (8858); Oklahoma Produced Water Solutions, LLC (0256); and Cimarron Express Pipeline, LLC (1545).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## BANKRUPTCIES

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. — Chapter 11, Case No. 20-10343 (LSS) (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**

**THE GENERAL BAR DATE IS NOVEMBER 16, 2020**

**THE GOVERNMENTAL BAR DATE IS AUGUST 17, 2020**

**NOTICE IS HEREBY GIVEN** as follows:

**Deadline for Filing Proofs of Claim.** On May 26, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 695] (the "Bar Date Order") establishing certain deadlines for filing proofs of claim, including requests for payment under section 503(b)(9) of the Bankruptcy Code, in the chapter 11 cases of the following debtors and debtors in possession (collectively, the "Debtors"): Boy Scouts of America, 20-10343; Delaware BSA, LLC, 20-10342.

**The Bar Dates**. Pursuant to the Bar Date Order, **all** persons and entities (except holders of (i) Sexual Abuse Claims and (ii) governmental units),with a potential claim against the Debtors that arose before February 18, 2020 (the "Petition Date"), no matter how remote or contingent, ***including*** requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before ***November 16, 2020 at 5:00 p.m.*** (Eastern Time) (the "***General Bar Date***"). Governmental units (as defined in Bankruptcy Code section 101(27)) asserting a potential claim against the Debtors that arose before the Petition Date MUST FILE A PROOF OF CLAIM on or before ***August 17, 2020 at 5:00 p.m.*** (Eastern Time) (the "Governmental Bar Date" and, together with the General Bar Date, the "Bar Dates").

**The procedures described in this notice DO NOT apply to Sexual Abuse Survivors asserting Sexual Abuse Claims (as defined in the Bar Date Order). Sexual Abuse Survivors should consult the guidelines for filing Sexual Abuse Claims available at www.OfficialBSAClaims.com.** If you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying, or hazing, you must file a proof of claim as set forth in the Bar Date Order and this notice.

**ANY PERSON OR ENTITY WHO FAILS TO TIMELY FILE A PROOF OF CLAIM ON OR BEFORE THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ANY CHAPTER 11 PLAN.**

**Contents of Proofs of Claim**. Proof of claim forms are available at **www.omniagentsolutions.com/bsaclaims**. Proofs of claim must: (i) be signed by the claimant or their authorized representative; (ii) be written in English; (iii) be denominated in U.S. dollars; (iv) set forth the legal and factual basis for the alleged claim; and (v) include supporting documents (or a summary if voluminous) or an explanation as to why such documents are not available. Holders of claims against more than one Debtor must file a separate proof of claim with respect to each Debtor.

**Filing Proofs of Claim**. Each proof of claim must be filed, including supporting documentation, so as to be ***actually received*** by the Debtors' claims and noticing agent, Omni Agent Solutions, on or before the applicable Bar Date either: (a) electronically at http://www.omniagentsolutions.com/bsaclaims; or (b) by first class mail, overnight courier or hand delivery at the following address: BSA Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367.

**Confidentiality Protocol for Proofs of Claim of Minors and Sexual Abuse Survivors**. Proofs of claim submitted on behalf of minors and by individuals with claims arising from sexual abuse who were at least 18 years old at the time the sexual abuse began will not be available to the general public. Minors and their parents and legal guardians and individuals with claims arising from sexual abuse who were at least 18 years old at the time the sexual abuse began are directed ***not*** to file a proof of claim with the Court. Instead, the proof of claim must be mailed to the claims and noticing agent at the address above or filed electronically at http://www.omniagentsolutions.com/bsaclaims.

**Executory Contract and Lease Rejection Claims**. If you hold a claim arising out of the rejection of an executory contract or unexpired lease and you have not yet filed a proof of claim prior to the entry of the Bar Date Order, you must file a proof of claim within 30 days after the later of (i) the entry of an order of the Court approving such rejection, (ii) the effective date of such rejection, or (iii) the effective date of a plan of reorganization. However, a claim on account of unpaid amounts under such contract or lease accrued and outstanding as of the Petition Date (other than a rejection damages claim) must file a proof of claim for such amounts on or before the applicable Bar Date.

**Additional Information.** If you have any questions about the claims process or need information about the Bar Dates, proofs of claim, the filing process or other information about the Debtors' chapter 11 cases, you can contact the claims and noticing agent by: (i) calling (toll-free) at 866-907-2721, (ii) emailing BSAInquiries@omniagnt.com, or (iii) visiting the Debtors' restructuring website at http://www.omniagentsolutions.com/bsaclaims. **The Claims and Noticing Agent CANNOT offer legal advice.**

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## BANKRUPTCIES

Information to identify the case: Debtor: LATAM Airlines Group S.A., et al. EIN: 5 9-2 6 0 5 8 8 5

United States Bankruptcy Court for the Southern District of New York

Case number: 20-11254 Date case filed for chapter 11: 05/26/2020

Official Form 309F1 (For Corporations or Partnerships)

**Notice of Chapter 11 Bankruptcy Case 02/20**

**For the debtor listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors and debtors, including information about the meeting of creditors and deadlines. Read all pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from the debtor by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Please also note that on June 4, 2020, the 2nd Civil Court of Santiago, Chile issued an order recognizing these Chapter 11 Cases under the Chilean Insolvency and Reorganization Law.

Confirmation of a chapter 11 plan may result in a discharge of debt. A creditor who wants to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadline specified in this notice. (See line 11 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice. Do not file this notice with any proof of claim or other filing in the case.**

**1. Debtor's full name:** LATAM Airlines Group S.A.

**2. All other names used in the last 8 years:** N/A

**Jointly Administered Cases:** Aerovías de Integración Regional S.A. (Aires S.A.), (Case No. 20-11256), EIN 98-0640393; Cargo Handling Airport Services, LLC, (Case No. 20-11269), EIN: 30-1133972; Connecta Corporation, (Case No. 20-11274), EIN: 20-5157324; Fast Air Almacenes de Carga S.A., (Case No. 20-11265), EIN: 96-6315202; Holdco Colombia I SpA, (Case No. 20-11277), EIN: 76-9336885; Holdco Colombia II SpA, (Case No. 20-11276), EIN: 76-9310053; Holdco Ecuador S.A., (Case No. 20-11278), EIN: 76-3884082; Inversiones Aéreas S.A., (Case No. 20-11275), EIN: N/A; Inversiones Lan S.A., (Case No. 20-11261), EIN: 96-5758100; Lan Cargo Inversiones S.A., (Case No. 20-11279), EIN: 96-9696908; Lan Cargo Overseas Ltd, (Case No. 20-11280), EIN: 85-7752959; Lan Cargo Repair Station LLC, (Case No. 20-11271), EIN: 83-0460010; Lan Cargo S.A., (Case No. 20-11259), EIN: 98-0058786; Lan Pax Group S.A., (Case No. 20-11264), EIN: 96-9696800; LATAM Airlines Ecuador S.A., (Case No. 20-11257), EIN: 98-0383677; Latam Airlines Perú S.A., (Case No. 20-11258), EIN: 52-2195500; LATAM Finance LTD, (Case No. 20-11266), EIN: N/A; LATAM Travel Chile II S.A., (Case No. 20-11263), EIN: 76-2628945; Línea Aérea Carguera de Colombia SA, (Case No. 20-11260), EIN: 26-4065780; Maintenance Service Experts, LLC, (Case No. 20-11270), EIN: 30-1130248; Mas Investment Ltd., (Case No. 20-11281), EIN: 85-7753009; Peuco Finance Ltd., (Case No. 20-11267), EIN: N/A; Prime Airport Services Inc., (Case No. 20-11272), EIN: 59-1934486; Professional Airline Cargo Services, LLC, (Case No. 20-11268), EIN: 35-2639894; Professional Airline Maintenance Services, LLC, (Case No. 20-11273), EIN: 37-1910216; Professional Airline Services Inc., (Case No. 20-11282), EIN: 65-0623014; Technical Training LATAM S.A, (Case No. 20-11262), EIN: 96-847880K; Transporte Aéreo S.A., (Case No. 20-11255), EIN: 96-9512807

**3. Address:** Estado 10, Piso 11, Santiago, Republic of Chile

**4. Debtor's attorney:** CLEARY GOTTLIEB STEEN & HAMILTON LLP, Richard J. Cooper, Lisa M. Schweitzer, Luke A. Barefoot, Thomas S. Kessler, One Liberty Plaza, New York, New York 10006. Contact phone: (212) 225-2000, Email: rcooper@cgsh.com, lschweitzer@cgsh.com, lbarefoot@cgsh.com, tkessler@cgsh.com

**5. Bankruptcy clerk's office:** One Bowling Green, New York, NY 10004-1408. Hours open: Monday - Friday, 8:30 a.m. - 5:00 p.m. (except federal holidays). Contact phone: (212) 668-2870. Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov.

**6. Meeting of creditors: July 16, 2020 at 2:00 p.m. Due to the impact of COVID-19, the Meeting of Creditors will only be conducted telephonically:** Dial-in No: (877) 727-9367, Participant Code: 1864657#. The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.

**7. Proof of claim deadline: Deadline for filing proof of claim:** Not yet set. If a deadline is set, the court will send you another notice.

A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office. Your claim will be allowed in the amount scheduled unless: • your claim is designated as *disputed*, *contingent*, or *unliquidated*; • you file a proof of claim in a different amount; or • you receive another notice. If your claim is not scheduled or if your claim is designated as *disputed*, *contingent*, or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. You may review the schedules at the bankruptcy clerk's office or online at www.pacer.gov. Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial.

**8. Exception to discharge deadline:** If § 523(c) applies to your claim and you seek to have it excepted from discharge, you must start a judicial proceeding by filing a complaint by the deadline stated below. The bankruptcy clerk's office must receive a complaint and any required filing fee by the following deadline. **Deadline for filing the complaint: September 14, 2020.**

**9. Creditors with a foreign address:** If you are a creditor receiving notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case.

**10. Filing a Chapter 11 bankruptcy case:** Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate its business.

**11. Discharge of debts:** Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See 11 U.S.C. § 1141(d). A discharge means that creditors may never try to collect the debt from the debtor except as provided in the plan. If you want to have a particular debt owed to you excepted from the discharge and § 523(c) applies to your claim, you must start a judicial proceeding by filing a complaint and paying the filing fee in the bankruptcy clerk's office by the deadline.

## NOTICE OF SALE

**NOTICE OF SALE OF COLLATERAL UNDER THE UNIFORM COMMERCIAL CODE**

Pursuant to the provisions of the Uniform Commercial Code, as enacted in Delaware (6 Del. Code §9-610), and pursuant to the terms and provisions set forth below and as are contained in that certain Pledge and Security Agreement (**the "Pledge Agreement"**) dated as of February 14, 2017 and executed by **Riverfront Crossing Hospitality Mezz, LLC ("Debtor")** and **Bradford Allen Funding Company LLC ("Bradford Allen" or "Secured Party")**, Bradford Allen will sell the following described property via auction at public sale (**the "Auction"**) on **June 19, 2020 at 10:00 a.m. (the "Auction Date")**, at the offices of Robbins, Salomon & Patt, Ltd., 180 N. LaSalle Street, Suite 3300, Chicago, Illinois: **100% of the legal and beneficial limited liability company interests in RIVERFRONT CROSSING HOSPITALITY OWNER, LLC, a Delaware limited liability company (the "Collateral").** This sale is being held to enforce Bradford Allen's rights in the Collateral to satisfy the indebtedness of the Debtor to Bradford Allen in an amount in excess of $5,500,000.00 (**the "Indebtedness"**). In addition to the Auction being conducted in person, the Auction will be held virtually on Zoom and recorded.

The terms of the sale will be as follows: All bids must be given orally or in writing at or before the time of sale. In conjunction with such bid, a bidder (except Bradford Allen) must tender to Secured Party a deposit equal to five percent (5%) of the proposed purchase price for the Collateral. Bradford Allen shall not be obligated to accept any bid if it deems the bid inadequate and reserves its right to credit bid for the Collateral under any circumstance. The successful bidder, if any, upon payment of the bid price, will receive from Bradford Allen an assignment of 100% of the legal and beneficial limited liability company interests in the Debtor, Riverfront Crossing Hospitality Owner, LLC. **Other than a warranty of Bradford Allen's security interest in the Collateral, no representations or warranties of any kind are or will be given by Bradford Allen at the time of such assignment.**

Persons interested in bidding should direct all written bids, all requests for information, all requests for Zoom invitation to the Auction, and all other questions or comments to: Emily C. Kaminski, Robbins, Salomon & Patt, Ltd., 180 N. LaSalle St., Suite 3300, Chicago, IL 60601, tel: 312-456-0284, fax, 312-782-6690, email: ekaminski@rsplaw.com. **Additional terms and conditions of the Auction, which are incorporated herein by reference, may be found at www.bradfordallen.com/UCC-Notice**

/s/ Steve Jakubowski, *Attorney for Secured Party, Bradford Allen Funding Company LLC*

THE WALL STREET JOURNAL.

THE MARKETPLACE

ADVERTISE TODAY

(800) 366-3975

For more information visit: wsj.com/classifieds

© 2020 Dow Jones & Company, Inc. All Rights Reserved.

## BUSINESS OPPORTUNITIES

22% YIELD

School security loans and working capital for expansion of U.S security business.

5 year term, 22% interest

30 Years Experience

CONTACT: 914-260-2949

FOR SALE

Frame.com

Domain Name only, Operating Website, or Both

CONTACT

s@frame.com

## COMMERCIAL REAL ESTATE

INVESTMENT OPPORTUNITY

7.5% to 10% Returns

Secured By First Trust Deed

Tenant Backed By State Contract

50% LTV

Please Call (310) 490-8004

THE WALL STREET JOURNAL.

NOTABLE COMMERCIAL PROPERTIES

(800) 366-3975

sales.realestate@wsj.com

For more information: wsj.com/classifieds

© 2020 Dow Jones & Company, Inc. All Rights Reserved.

## **EXHIBIT C**



**620 8TH AVENUE · NEW YORK, NY 10018**

# PROOF OF PUBLICATION

Jun-15,  **20** 20

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of *The New York Times* a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of *The New York Times* on the following date or dates, to wit on

June 15, 2020, NYT & Natl, pg B4

Sworn before me the

15 day of June , 2020.

*Jane W. Sapp*

Notary Public

JAMES W. SAPP
Notary Public, State of New York
No. 01SA6190150
Qualified in New York County
Term Expires July 14, 2020

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:                                                Chapter 11
BOY SCOUTS OF AMERICA             Case No. 20-10343 (LSS)
AND DELAWARE BSA, LLC,[1]          (Jointly Administered)
Debtors.

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**
**THE GENERAL BAR DATE IS NOVEMBER 16, 2020**
**THE GOVERNMENTAL BAR DATE IS AUGUST 17, 2020**
**NOTICE IS HEREBY GIVEN** as follows:

**Deadline for Filing Proofs of Claim.** On May 26, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (Docket No. 695) (the "Bar Date Order") establishing certain deadlines for filing proofs of claim, including requests for payment under section 503(b)(9) of the Bankruptcy Code, in the chapter 11 cases of the following debtors and debtors in possession (collectively, the "Debtors"): Boy Scouts of America, 20-10343; Delaware BSA, LLC, 20-10342.

**The Bar Dates.** Pursuant to the Bar Date Order, all persons and entities (except holders of (i) Sexual Abuse Claims and (ii) governmental units),with a potential claim against the Debtors that arose before February 18, 2020 (the "Petition Date"), no matter how remote or contingent, *including* requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before *November 16, 2020 at 5:00 p.m.* (Eastern Time) (the "*General Bar Date*"). Governmental units (as defined in Bankruptcy Code section 101(27)) asserting a potential claim against the Debtors that arose before the Petition Date MUST FILE A PROOF OF CLAIM on or before *August 17, 2020 at 5:00 p.m.* (Eastern Time) (the "*Governmental Bar Date*" and, together with the General Bar Date, the "Bar Dates").

The procedures described in this notice **DO NOT** apply to Sexual Abuse Survivors asserting Sexual Abuse Claims (as defined in the Bar Date Order). Sexual Abuse Survivors should consult the guidelines for filing Sexual Abuse Claims available at **www.OfficialBSAClaims.com**. If you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying, or hazing, you must file a proof of claim as set forth in the Bar Date Order and this notice.

ANY PERSON OR ENTITY WHO FAILS TO TIMELY FILE A PROOF OF CLAIM ON OR BEFORE THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ANY CHAPTER 11 PLAN.

**Contents of Proofs of Claim.** Proof of claim forms are available at **www.omniagentsolutions.com/bsaclaims**. Proofs of claim must: (i) be signed by the claimant or their authorized representative;

(ii) be written in English; (iii) be denominated in U.S. dollars; (iv) set forth the legal and factual basis for the alleged claim; and (v) include supporting documents (or a summary if voluminous) or an explanation as to why such documents are not available. Holders of claims against more than one Debtor must file a separate proof of claim with respect to each Debtor.

**Filing Proofs of Claim.** Each proof of claim must be filed, including supporting documentation, so as to be *actually received* by the Debtors' claims and noticing agent, Omni Agent Solutions, on or before the applicable Bar Date either: (a) electronically at http:// www.omniagentsolutions.com/bsaclaims; or (b) by first class mail, overnight courier or hand delivery at the following address: BSA Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367.

**Confidentiality Protocol for Proofs of Claim of Minors and Sexual Abuse Survivors.** Proofs of claim submitted on behalf of minors and by individuals with claims arising from sexual abuse who were at least 18 years old at the time the sexual abuse began will not be available to the general public. Minors and their parents and legal guardians and individuals with claims arising from sexual abuse who were at least 18 years old at the time the sexual abuse began are directed *not* to file a proof of claim with the Court. Instead, the proof of claim must be mailed to the claims and noticing agent at the address above or filed electronically at http://www.omniagentsolutions.com/ bsaclaims.

**Executory Contract and Lease Rejection Claims.** If you hold a claim arising out of the rejection of an executory contract or unexpired lease and you have not yet filed a proof of claim prior to the entry of the Bar Date Order, you must file a proof of claim within 30 days after the later of (i) the entry of an order of the Court approving such rejection, (ii) the effective date of such rejection, or (iii) the effective date of a plan of reorganization. However, a claim on account of unpaid amounts under such contract or lease accrued and outstanding as of the Petition Date (other than a rejection damages claim) must file a proof of claim for such amounts on or before the applicable Bar Date.

**Additional Information.** If you have any questions about the claims process or need information about the Bar Dates, proofs of claim, the filing process or other information about the Debtors' chapter 11 cases, you can contact the claims and noticing agent by: (i) calling (toll-free) at 866-907-2721, (ii) emailing BSAInquiries@ omniagent.com, or (iii) visiting the Debtors' restructuring website at http://www.omniagentsolutions.com/bsaclaims. **The Claims and Noticing Agent CANNOT offer legal advice.**

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## AUTOMOBILES




Kellyn Karr, top, made sure the Mitsubishi Delica was ready for the drive home to Oregon from Florida, and the new owners packed plenty of snacks and disinfecting supplies and rested at several Love's Travel Stops instead of motels.

PHOTOS BY MERCEDES LILIENTHAL

# Life on the Road in Pandemic America
### Trek Through 13 States After Buying Oddball Van Meant Lots of Truck Stops and Hand Sanitizer

**Wheels**
By MERCEDES LILIENTHAL

What happens when a dream car is for sale in Florida, you live in Oregon and a pandemic is gripping the country?

These obviously weren't ideal conditions for a road trip, but my husband, Andy, and I flew late last month to Fort Myers, drove back to Portland in our new-to-us right-hand-drive 1994 Mitsubishi Delica van, and saw a country coping in extensively different ways with an outbreak that has killed tens of thousands of Americans and put many millions more out of work.

We made our way west through 13 states in six days, and awareness and preparedness varied widely among the people we encountered.

Nerves accentuated our travels, which took longer to plan than it took us to cover 6,374 miles, half in the air and half on the road. Well stocked with hand sanitizer, masks, wipes and disposable gloves, we began our journey.

On our flights east, masks were required for boarding, but some people immediately took them off once seated; others had only their mouths covered. Still, we got to Florida with little incident, and turned our attention to the task at hand.

Kellyn Karr owns Karr Automotive, a repair shop in Fort Myers. Although he specializes in regular vehicles, he also imports and sells Japanese domestic market Delicas as a hobby.

"I'd travel to Canada often as a kid and teenager because my father was still a dual citizen," Mr. Karr said. "I'd see all kinds of J.D.M. vehicles there because of Canada's looser import restrictions." He got hooked.

He meticulously prepped the van for the cross-country haul. "The people who buy these vans come from some of the coolest walks of life, and the stories seem to be endless," he said. "This part I absolutely love."

The pandemic has changed Mr. Karr's business. "We have asked people that are waiting to wear masks," he said, adding, "You have to call when you want to come to the shop." Before

returning the cars to their owners, Mr. Karr wipes down door handles and steering wheels and lets the cars bake in the sun.

Florida's motor vehicle department remained closed the day the van's vehicle identification number was to be verified and its title completed; we left with nothing other than the import paperwork, a bill of sale and prayers.

No registration meant no license plates. A temporary trip permit we had arranged from Oregon hadn't arrived, either; it was still en route to Florida.

Before we had left for the airport in Oregon, we called the highway patrol headquarters of every state our fastidiously planned route would take us through, to ensure we could legally be on the road with our paperwork. Varying degrees of acceptance were noted, but most troopers were lenient on D.M.V. matters, considering the pandemic had shut many offices.

That was the easy part. With keys and import papers in (sanitized) hand, the more intense part of our journey began.

Joanna Holston, a long-haul truck driver, offered us advice via Instagram. "Just be careful, be mindful of distance and wear P.P.E.," she warned us. She also shared tips about sleeping at truck stops, and what to look out for when boondocking at such places.

Ms. Holston was carrying a load of personal protective equipment from Minneapolis to Atlanta for the Federal Emergency Management Agency. She, too, made sure to keep well stocked with masks, hand sanitizer and gloves.

### May 24, Florida to Georgia

Florida: 50,859 cases and 2,236 deaths to date. Georgia: 41,344 cases. 1,902 deaths.

The pandemic has hit states in different ways, crippling some and glancing others. As of May 24, roughly 24,000 people had died in New York State. Many of the states we passed through have, so far, been spared the worst.

Our takeout food venture — our first in over two months — was at a kind of food hall. We were met with jubilant moods,

high heels and party dresses. Masks and social distancing were scarce. We felt isolated and awkward wearing our masks and gloves.

In Georgia, as well as Kansas and Colorado, electronic interstate signs flashed warnings about the virus: Wash your hands, cover your cough, avoid groups of 10 or more, safer at home.

Love's Travel Stops were a home away from home, plentiful on these stretches and reliable. (The back of a Delica is perfect for car camping.) Most workers



The travelers stopped at Commissary BBQ in Germantown, Tenn., for their first dine-in service in 11 weeks. "We've been opened for dine-in for the last three weeks and it was really slow," said Kandyce Cheairs, a server, above. They also stayed at the Steamboat Lake campground in Colorado.

wore masks and stood behind newly hung plexiglass. At the Love's in Waco, Ga., employees declined to be interviewed, but when asked about the virus one said, "We're working through it." Customers chatted about the day's happenings, some wearing masks but most without.

Truckers dashed in and out, grabbing food and necessities before a night of truck stop solitude.

### May 25, Georgia to Oklahoma

Alabama: 14,986 cases, 566 deaths. Mississippi: 13,731 cases, 652



deaths. Tennessee: 20,960 cases, 339 deaths. Arkansas: 6,180 cases, 119 deaths. Oklahoma: 6,137 cases, 318 deaths.

The day began and ended at a Love's Travel Stop. In between, the lush trees lining Alabama's interstate invited us to forget about the pandemic. Still, we never let our guard down. At small-town fuel stations, where few people wore masks or gloves, ours drew some looks.

We were well stocked with protective gear: vials of sanitizer in the glove box and cup holder, with more in reserve, and a new neck buff or bandanna to cover our faces for each day. Mask on; get fuel, food, drink (forgoing normal impulse buys like chewing gum and Tic Tacs); return and sanitize everything. Repeat.

Mr. Karr received the Oregon trip permit. He scanned and emailed it. Thanks to the Love's Travel Stop in Tuscumbia, Ala., we printed and taped the permit to the lift gate. A sense of relief!

While most states were in various stages of reopening, Arkansas never had an official stay-at-home order. On May 4, Arkansas movie theaters, bowling alleys, arenas and other large outdoor venues reopened. Gov. Asa Hutchinson announced that restaurants would resume limited dine-in options on May 11. Coronavirus cases have been rising since then.

Hungry, we stopped at a restaurant for dine-in service, our first time in 11 weeks. In Germantown, Tenn., Commissary BBQ stayed open while many shut down. Kandyce Cheairs, a server, kept working, too.

"We never really closed for carryout," she said. "We've been opened for dine-in for the last three weeks, and it was really slow."

Although servers' tips were lacking, she assisted carryout orders to keep money coming in.

"I won't say it's been too much of a struggle," Ms. Cheairs added, but there had been days when she thought "I might have

to leave here and go find something like a warehouse job or such that I can make some money on."

### May 26-27, Oklahoma to Colorado

Kansas: 9,350 cases, 205 deaths. Colorado: 24,775 cases, 1,393 deaths.

Day 3 was yet another 12-plus-hour push, ending at a truck stop, this time a Sinclair station in Dumont, Colo. High-elevation crispness greeted us. But our van's electric sliding door latch mechanism stopped latching shut. With a quick Google search and a manual override, we slipped the door shut and locked it from within. Easy in-and-out camp access was gone until after we arrived home.

On Day 4 we slowed down to take a breather, ending at the Steamboat Lake campground in Colorado after just three hours on the road, with a stop in Frisco for some souvenirs.

The owner of the Sunny Side Up Studio in Frisco, Ashlie Weisel, said she had learned the power of positive thinking when her stores were shut down. One closed permanently and the other temporarily.

Ms. Weisel was sitting on 20 boxes of colorful sweatshirts she designed that say "mountain mamas." "It made me sad," she said. "We need to get these to those who need them the most right now." So she cut the price in half, sold them on Facebook in a local group for mothers and drove around the state to deliver them.

She has sold nearly 2,000 sweatshirts, finding a way to keep her business afloat. "We are united by cozy," Ms. Weisel said with a tearful smile. "I'm a purveyor of positive."

### May 28, Colorado to Utah

Wyoming: 876 cases, 15 deaths. Utah: 9,274 cases, 107 deaths.

In heavy drizzle at a rest stop, we were met with friendly faces in a Subaru Outback. After a quick query about our van, the driver handed us a book about viruses. She wasn't selling anything, but spreading the idea that global viral outbreaks were most likely man-made and created for pharmaceutical profit.

Temperatures were climbing into the 90s. Suddenly, there was no power to the van's 12-volt accessory plug. GPS and phone batteries dwindled. After a stop near Dinosaur, Colo., we discovered that a 15-amp fuse had blown in the in-fuse panel. We dashed to get fuses at a Napa auto parts store, and the van headed home, powering gadgets from a rear plug. A short in the front plug would have to wait.

### May 29, Idaho to Oregon

Idaho: 2,804 cases, 82 deaths. Oregon: 4,131 cases, 151 deaths.

Sixteen tanks of fuel and five nights later, we were in the homestretch.

Our journey across 13 states highlighted a nation on edge, some people more apprehensive than others. Some were dressed in hazmat-type suits with goggles to avoid the virus; others claimed the pandemic was a farce or a political stunt. Most appeared uneasy, with reserved expressions. Laughter seemed in short supply.

All, however, were finding their way through an unpredictable new world.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re:
Swissport Fueling Ltd.,[1]           Chapter 11
Debtor in a Foreign Proceeding.     Case No. 20-11524 (MFW)

NOTICE OF FILING AND HEARING ON PETITION UNDER CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE AND MOTION FOR RELATED RELIEF

PLEASE TAKE NOTICE that on June 11, 2020, Donald William Christopher Maltin (the "Petitioner" or the "Foreign Representative"), duly appointed by a May 21, 2020 resolution (the "Resolution of Appointment") of the board of directors of Swissport Fueling Ltd. (the "Debtor"), a private limited company incorporated under the laws of England and Wales with registered number 5202017 and declared as authorized to act by a June 5, 2020 order (the "Convening Order") of the Chancery Division Companies Court of the High Court of Justice of England and Wales (the "UK Court"), as the foreign representative of a voluntary proceeding (the "UK Proceeding") concerning the Debtor pursuant to Part 26 of the United Kingdom Companies Act 2006 (as amended, the "UK Act"), commenced the above-captioned case under chapter 15 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")...

[Additional legal notice text in multiple columns — Swissport Fueling Ltd. and related Chapter 15 / Chapter 11 proceedings notices.]

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

In re:
BOY SCOUTS OF AMERICA            Chapter 11
AND DELAWARE BSA, LLC,[1]        Case No. 20-10343 (LSS)
Debtors.                         (Jointly Administered)

NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM THE GENERAL BAR DATE IS NOVEMBER 16, 2020 THE GOVERNMENTAL BAR DATE IS AUGUST 17, 2020

NOTICE IS HEREBY GIVEN as follows:

Deadline for Filing Proofs of Claim. On May 26, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (Docket No. 695) (the "Bar Date Order") establishing certain deadlines for filing proofs of claim, including requests for payment under section 503(b)(9) of the Bankruptcy Code, in the chapter 11 cases of the above-captioned debtors in possession (collectively, the "Debtors") Boy Scouts of America, 20-10343, (Delaware BSA LLC, 20-10342).

The Bar Dates. Pursuant to the Bar Date Order, all persons and entities (except holders of U Sexual Abuse Claims and (ii) governmental units) with a potential claim against any of the Debtors that arose before February 18, 2020 (the "Petition Date"), no matter how remote or contingent, including requests for payment under section 503(b)(9) of the Bankruptcy Code, MUST FILE A PROOF OF CLAIM on or before November 16, 2020 at 5:00 p.m. (Eastern Time) (the "General Bar Date"). Governmental units (as defined in Bankruptcy Code section 101(27)) asserting a prepetition claim against the Debtors that arose before the Petition Date MUST FILE A PROOF OF CLAIM on or before August 17, 2020 at 5:00 p.m. (Eastern Time) (the "Governmental Bar Date" and, together with the General Bar Date, the "Bar Dates").

The procedures described in this notice DO NOT apply to Sexual Abuse Survivors asserting Sexual Abuse Claims (as defined in the Bar Date Order). Sexual Abuse Survivors should consult the guidelines for filing Sexual Abuse Claims available at www.OfficialBSAclaims.com. If you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying, or hazing, you must file a proof of claim as set forth in the Bar Date Order and this notice.

ANY PERSON OR ENTITY WHO FAILS TO TIMELY FILE A PROOF OF CLAIM ON OR BEFORE THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING AND DISTRIBUTION ON ACCOUNT OF SUCH CLAIM.

Contents of Proofs of Claim. Proof of claim forms are available at www.OmniAgentSolutions.com/bsaclaims. Proofs of claim must (i) be signed by the claimant or their authorized representative, (ii) be written in English; (iii) be denominated in U.S. dollars; (iv) set forth the legal and factual basis for the alleged claim; and (v) include supporting documents (or a summary if voluminous) or an explanation as to why such documents are not available. Holders of claims against more than one debtor should file a separate proof of claim with respect to each Debtor.

Filing Proofs of Claim. Each proof of claim must be filed, including supporting documentation, so as to be actually received by the Debtors' claims and noticing agent, Omni Agent Solutions, on or before the applicable Bar Date either (a) electronically at http://www.omniagentsolutions.com/bsaclaims, or (b) by first class mail, overnight courier or hand delivery at: Boy Scouts of America BSA Claims Processing c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367.

Confidentiality Protocol for Proofs of Claim Allowed and Sexual Abuse Survivors. Proofs of claim submitted on behalf of claims against the Debtors (other than Sexual Abuse Claims) that were at least 18 years old at the time the sexual abuse began will not be available to the general public. Minors and their parents and legal guardians and individuals with claims arising from sexual abuse who were at least 18 years old at the time the sexual abuse began are directed not to file a proof of claim; instead, the proof of claim must be mailed to the claims and noticing agent at the address above or filed electronically at http://www.omniagentsolutions.com/bsaclaims.

Consistory Contract and Lease Rejection Claims. If you hold a claim arising out of the rejection of an executory contract or unexpired lease and you have not yet filed a proof of claim prior to the entry of the Bar Date Order, you must file a proof of claim within the later of (i) the entry of an order of the Court approving such rejection; (ii) the effective date of such rejection; or (iii) the effective date of a plan of reorganization. However, a claim on account of unpaid amounts under such contract or lease accrued and outstanding as of the Petition Date must be included by the Petition Date. A separate proof of claim for such amounts or on behalf the applicable Bar Date.

Additional Information. If you have any questions about the claims process or need information about the Bar Dates, proofs of claim, the filing process or other information about the Debtors' chapter 11 cases, you can contact the claims and noticing agent by (i) calling (toll-free) at 866-907-2721; (ii) emailing BSAinquiries@OmniAgentSolutions.com or (iii) visiting http://www.omniagentsolutions.com/bsaclaims. The Claims and Noticing Agent CANNOT offer legal advice.

The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## <u>EXHIBIT D</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | |

**TO ALL PERSONS OR ENTITIES WITH CLAIMS AGAINST BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC:**

### NOTICE OF DEADLINES REQUIRING FILING OF PROOFS OF CLAIM

**NOTICE IS HEREBY GIVEN** as follows:

The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has entered an Order [Docket No. 695] (the "Bar Date Order") establishing **November 16, 2020 at 5:00 p.m. (Eastern Time)** the ("General Bar Date") as the last date and time for each person or entity (including individuals, partnerships, corporations, joint ventures, and trusts, but not including any (i) any holder of a Sexual Abuse Claim, as described below (each, a "Sexual Abuse Survivor") and (ii) governmental units (as defined in section 101(27) of the chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")) to file a General Proof of Claim against any of the above-listed debtors (collectively, the "Debtors").[2]

The Bar Dates (as defined below) and the procedures set forth below for filing General Proofs of Claim apply to all claims against the Debtors that arose prior to February 18, 2020 (the "Petition Date"), the date on which the Debtors commenced cases under chapter 11 of the Bankruptcy Code, including, for the avoidance of doubt, secured claims, priority claims, and claims arising under section 503(b)(9) of the Bankruptcy Code, but not holders of the claims listed in Section VI below that specifically are excluded from the General Bar Date and Governmental Bar Date (as defined below) filing requirement. Governmental units may have until **August 17,**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion, Pursuant to § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse Victims* [Docket No. 18] or the Bar Date Order, as applicable.

**2020 at 5:00 p.m. (Eastern Time)** (the "<u>Governmental Bar Date</u>," and, together with the General Bar Date, the "<u>Bar Dates</u>") to file General Proofs of Claim against the Debtors.

**The procedures described in this Notice shall not apply to Sexual Abuse Survivors asserting Sexual Abuse Claims. Sexual Abuse Survivors should consult the notice titled *Notice of Deadline for Filing Sexual Abuse Claims in the Boy Scouts of America Bankruptcy Case* and file a Sexual Abuse Survivor Proof of Claim, which may be found at [www.OfficialBSAClaims.com](www.OfficialBSAClaims.com). See Section IV below for more information.**

**If you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying or hazing, OR if you have a claim arising from sexual abuse and you were at least eighteen (18) years of age at the time the sexual abuse began, and you have not filed a proof of claim prior to the entry of the Bar Date Order, you must file a General Proof of Claim as set forth in the Bar Date Order and this Notice.**

**I.    WHO MUST FILE A PROOF OF CLAIM**

You MUST file a General Proof of Claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if (i) you have a claim that arose prior to the Petition Date and (ii) it is not one of the types of claims described in Section VI below. Claims based on acts or omissions of the Debtors that occurred before the Petition Date must be filed on or prior to the applicable Bar Date, even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**II.    WHAT TO FILE**

The Debtors are enclosing a proof of claim form (the "<u>General Proof of Claim Form</u>") for use in these cases; if your claim is listed on the schedules of assets and liabilities filed by the Debtors (collectively, the "<u>Schedules</u>"), the General Proof of Claim Form also sets forth the amount of your claim as listed on the Schedules, the specific Debtor against which the claim is scheduled, and whether the claim is scheduled as "disputed," "contingent," or "unliquidated." You will receive a different General Proof of Claim Form for each claim listed in your name on the Schedules. You may utilize the General Proof of Claim Form(s) provided by the Debtors to file your claim. Additional General Proof of Claim Forms may be obtained at (i) the website established by the Debtors' Court-approved claims and noticing agent, Omni Agent Solutions (the "<u>Claims and Noticing Agent</u>"), located at [http://www.omniagentsolutions.com/bsaclaims](http://www.omniagentsolutions.com/bsaclaims), or (ii) the Bankruptcy Court's website located at [www.uscourts.gov/forms/bankruptcy-forms](www.uscourts.gov/forms/bankruptcy-forms).

| **Proofs of Claim must**: | √ Be signed by the claimant |
|---|---|
| | √ Be written in English |
| | √ Be denominated in United States currency (using the exchange rate, if applicable, as of the Petition Date) |
| | √ Set forth with specificity the legal and factual basis for the alleged claim, including all of the information requested in the General Proof of Claim Form, and attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or explanation as to why the documents are not available.  If you fail to attach supporting documents, the absence of such supporting documents will not automatically result in disallowance of your claim, but you may be required to provide additional information or supporting documentation at a later date, and your claim may be subject to an objection on the grounds that you failed to include any supporting documentation as required by Bankruptcy Rule 3001(c). |

Any holder of a claim against more than one Debtor who has not filed a proof of claim prior to entry of the Bar Date Order must file a separate General Proof of Claim with respect to each Debtor.  Any holder of a claim must identify on its General Proof of Claim the specific Debtor against which its claim is asserted and the case number of that Debtor's bankruptcy case.  The Debtors are set forth on the first page of this Notice.  Any holder of a claim must sign the claim or, if the claimant is not an individual, an authorized agent or representative must sign the claim.

**ATTENTION PARTICIPANTS IN THE RESTORATION PLAN**: If you are a participant in the Restoration Plan, a non-qualified defined benefit retirement plan under section 457(f) of the Internal Revenue Code that provided supplemental retirement benefits to certain participants in the Debtors' retirement plans whose compensation exceeded the annual compensation limit, you will receive a General Proof of Claim that will include the amount that the Debtors' Schedules reflect you are owed on account of your employment as both an employee of BSA and a Local Council, if applicable.  This amount is based only on a preliminary actuarial determination.  The General Proof of Claim that you receive will not distinguish between your Restoration Plan claims in your capacity as a Local Council or National Council employee, if both exist.  The Debtors' Schedules list these claims as "contingent" and/or "unliquidated," meaning that you **must** file a proof of claim in order to preserve any claims you may have under the Restoration Plan.  **If you do not agree with the amount or entities listed in the General Proof of Claim that you receive, you must indicate on your General Proof of Claim what you believe to be the correct amount or responsible entity or entities.**

### III.    WHEN AND WHERE TO FILE

Except as provided for herein, all proofs of claim must be filed so as to be **received on or before November 16, 2020 at 5:00 p.m. (Eastern Time)** as follows:

**IF BY FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY:**

> BSA Claims Processing
> c/o Omni Agent Solutions
> 5955 De Soto Ave., Suite 100
> Woodland Hills, CA 91367

**IF ELECTRONICALLY:**

The website established by the Claims and Noticing Agent, using the interface available on the website located at http://www.omniagentsolutions.com/bsaclaims (the "Electronic Filing System").

General Proofs of Claim will be deemed filed only when received at the address listed above or via the Electronic Filing System on or before the applicable Bar Dates. **General Proofs of Claim may not be delivered by email, facsimile, or telecopy transmission (other than General Proofs of Claim filed electronically through the Electronic Filing System).**

### IV.    SEXUAL ABUSE CLAIMS

If you have a Sexual Abuse Claim and you were a child under the age of eighteen (18) at the time of the sexual abuse, please see the *Notice of Deadline for Filing Sexual Abuse Claims in the Boy Scouts of America Case* and file a Sexual Abuse Survivor Proof of Claim, which may be found at www.OfficialBSAClaims.com. **If you have a Sexual Abuse Claim and you were a child under the age of eighteen (18) at the time of the sexual abuse and you have not filed a proof of claim prior to the entry of the Bar Date Order, you must complete a Sexual Abuse Survivor Proof of Claim, but you do NOT need to complete a General Proof of Claim.**

You have a Sexual Abuse Claim if you experienced **sexual abuse** in Scouting **on or before February 18, 2020**. **Sexual abuse** means, with respect to a child under the age of eighteen (18) at the time of the sexual abuse:

- sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, sexual touching, sexualized interaction, sexual comments about a person's body, or other verbal or non-verbal behaviors that facilitated, contributed to, or led up to abuse, regardless of whether or not such behavior was itself sexual or against the law, and regardless of whether the child thought the behavior was sexual abuse at the time.

- Sexual abuse includes behavior between a child and an adult and between a child and another child, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether the child associated the abuse with any physical, psychological, or emotional harm.

- Sexual abuse involves behaviors including penetration or fondling of the child's body, other body-on-body contact, or non-contact, behaviors such as observing or making images of a child's naked body, showing or making pornography, or having children behave in sexual behavior as a group.

**If you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying or hazing, OR if you have a claim arising from sexual abuse and you were at least eighteen (18) years of age at the time the sexual abuse began, and you have not filed a proof of claim prior to the entry of the Bar Date Order, you must file a General Proof of Claim as set forth in the Bar Date Order and this Notice.**

**V.      CONFIDENTIALITY PROTOCOL GOVERNING SUBMISSION OF PROOFS OF CLAIMS OF MINORS AND SEXUAL ABUSE SURVIVORS:**

The Bar Date Order provides that a Confidentiality Protocol shall govern the submission of certain proofs of claim.

Minors and their parents and legal guardians and individuals with claims arising from sexual abuse who were at least eighteen (18) years of age at the time the sexual abuse began are directed **not** to file a General Proof of Claim with the Court.  Instead and as described above, the General Proof of Claim must be (a) mailed and delivered to the Claims and Noticing Agent at the following address:

<div align="center">

**BSA Claims Processing**
**c/o Omni Agent Solutions**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

or (b) filed through the Electronic Filing System via the website located at http://www.omniagentsolutions.com/bsaclaims.

General Proofs of Claim submitted on behalf of minors will not be available to the general public.  General Proofs of Claim submitted by individuals with claims arising from sexual abuse who were at least eighteen (18) years of age at the time the sexual abuse began will not be available to the general public unless such claimant requests, solely in his or her discretion, for such proof of claim to be made public by contacting the Claims and Noticing Agent.

**VI.      WHO NEED NOT FILE A PROOF OF CLAIM**

You do **not** need to file a General Proof of Claim on or prior to the applicable Bar Dates if you are:

(1)      any person or entity whose claim is listed on the Schedules; provided that (i) the claim is **not** listed on the Schedules as "disputed," "contingent," or "unliquidated," (ii) the person or entity does not dispute the amount, nature, and priority of the claim as set forth in the Schedules, and (iii) the person or entity does not dispute that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;

(2)      any person or entity whose claim has been paid in full;

(3)      any holder of a claim allowable under section 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative expense (**other than** a holder of a section 503(b)(9) claim);

(4)      any person or entity who holds a claim that heretofore has been allowed by order of the Bankruptcy Court entered on or before the applicable Bar Date;

(5)      any holder of a claim for which a separate deadline has been fixed by the Bankruptcy Court;

(6)      any person or entity who has, as of the date of entry of the Bar Date Order, already filed a proof of claim with the Claims and Noticing Agent or the Court, utilizing a claim form that substantially conforms to the General Proof of Claim Form or Official Bankruptcy Form No. 410; or

(7)      either Debtor in these chapter 11 cases having a claim against the other Debtor in these chapter 11 cases.

This Notice may be sent to persons and entities that have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors. **The fact that you have received this Notice does not mean that you have a claim or that the Debtors or the Bankruptcy Court believe that you have a claim against the Debtors**.

## VII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If you hold a claim arising out of the rejection of an executory contract or unexpired lease and you have not filed a proof of claim prior to the entry of the Bar Date Order, you must file a General Proof of Claim based on such rejection within thirty (30) days after the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the effective date of a plan of reorganization, or be forever barred from doing so; provided, however, that a party to an executory contract or unexpired lease that asserts a claim on account of unpaid amounts accrued and outstanding as of the Petition Date pursuant to such executory contract or unexpired lease (other than a rejection damages claim) must file a General Proof of Claim for such amounts on or before the General Bar Date or Governmental Bar Date, as applicable, unless an exception identified in Section VI above applies.

## VIII.   CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE

ANY HOLDER OF A CLAIM THAT IS NOT EXEMPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS SET FORTH IN SECTION VI ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM, SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR THE PURPOSES OF VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES

AND PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

**Please further note that only BSA is a debtor in BSA's chapter 11 proceeding and other third parties, such as the BSA Local Councils and chartered organizations, are not. If you believe you may have a claim against one of these organizations, you must take additional legal action to preserve and pursue such claim.**

## IX.  THE DEBTORS' SCHEDULES AND ACCESS THERETO

You may be listed as a holder of a claim against one or more of the Debtors in the Debtors' Schedules. To determine if and how you are listed on the Schedules, please refer to the descriptions set forth on the enclosed General Proof of Claim Form(s) regarding the nature, amount, and status of your claim(s). If you received postpetition payments from the Debtors (as authorized by the Bankruptcy Court) on account of your claim(s), the enclosed General Proof of Claim Form will reflect the net amount of your claim(s).

If you rely on the Debtors' Schedules and/or the enclosed General Proof of Claim Form(s), it is your responsibility to determine that the claim accurately is listed on the Schedules. However, you may rely on the enclosed form, which lists your claim as scheduled, identifies the Debtor against which it is scheduled, and specifies whether the claim is disputed, contingent, or unliquidated.

As set forth above, if you agree with the nature, amount, and status of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim only is against the Debtor specified by the Debtors, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a General Proof of Claim. Otherwise, or if you decide to file a General Proof of Claim, you must do so before the applicable Bar Dates, in accordance with the procedures set forth in this Notice.

**If your claims are listed as contingent, unliquidated, or disputed in the Debtors' Schedules, you must file a General Proof of Claim by the applicable Bar Date, or your rights and claims may be waived.**

In the event that the Debtors amend or supplement their Schedules subsequent to the entry of the Bar Date Order, the Debtors shall give notice of any amendment or supplement to the holders of claims affected thereby, and such holders shall have until the later of (i) the applicable Bar Date and (ii) thirty (30) days from the date of such notice to file a General Proof of Claim or be barred from doing so and shall be given notice of such deadline.

Copies of the Debtors' Schedules are available for inspection on the Bankruptcy Court's electronic docket for the Debtors' chapter 11 cases, which is posted on (i) the website established by Omni Agent Solutions, the claims and noticing agent for the Debtors' cases, at www.omniagentsolutions.com/bsa, at no charge and (ii) on the Court's website at http://www.deb.uscourts.gov/. A login and password to the Bankruptcy Court's Public Access to Electronic Records ("PACER") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.gov.

Copies of the Schedules also may be examined between the hours of 8:00 a.m. and 4:00 p.m., Prevailing Eastern Time, Monday through Friday at the Office of the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.  Copies of the Debtors' Schedules also may be obtained by request to the Claims and Noticing Agent.

> **A HOLDER OF A POTENTIAL CLAIM AGAINST THE DEBTORS SHOULD CONSULT AN ATTORNEY REGARDING ANY MATTERS NOT COVERED BY THIS NOTICE, SUCH AS WHETHER THE HOLDER SHOULD FILE A PROOF OF CLAIM.**

> If you need additional information about the Bar Dates, proofs of claim forms, filing proofs of claim or other information about the Debtors' chapter 11 cases, you can contact the Claims and Noticing Agent by:
>
> **Calling (toll-free):  866-907-BSA1**
> **Emailing:           BSAInquiries@omniagnt.com**
> **Visiting:           http://www.omniagentsolutions.com/bsaclaims**
>
> **You may obtain information, but not legal advice, from the Claims and Noticing Agent. You may wish to consult an attorney if you have any questions, including if you should file a General Proof of Claim.**

*[Remainder of Page Intentionally Left Blank]*

Dated:  May 26, 2020                                    **BY ORDER OF THE COURT**
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Paige N. Topper (No. 6470)
Eric Moats (No. 6441)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 351-9314
Email:  dabbott@mnat.com
        aremming@mnat.com
        jbarsalona@mnat.com
        ptopper@mnat.com
        emoats@mnat.com


– and –


SIDLEY AUSTIN LLP
Jessica C. K. Boelter
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Email:  jboelter@sidley.com

SIDLEY AUSTIN LLP
Thomas A. Labuda
Michael C. Andolina
Matthew E. Linder
Blair M. Warner
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Email:  tlabuda@sidley.com
        mandolina@sidley.com
        mlinder@sidley.com
        blair.warner@sidley.com


COUNSEL TO THE DEBTORS AND DEBTORS IN
POSSESSION