# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: July 9, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: June 30, 2020 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), extending the Debtors' exclusive periods to (a) file a chapter 11 plan (the "Exclusive Filing Period") by 120 days, to and including October 15, 2020 and (b) solicit votes thereon (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") by 120 days, to and including December 15, 2020, without prejudice to the Debtors' rights to seek further extensions of the Exclusive Periods.  In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF CASES AND JURISDICTION

1.    The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

2. On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.  On April 24, 2020, the Court appointed James L. Patton, Jr. as the legal representative of future abuse claimants (the "Future Claimants' Representative") pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

3. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested in this Motion are section 1121(d) of the Bankruptcy Code and Local Rule 9006-2.

## BACKGROUND OF THE DEBTORS

5. Information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## THE DEBTORS HAVE MADE SUBSTANTIAL PROGRESS IN THESE CHAPTER 11 CASES

6. The BSA has been named as a defendant in more than 385 civil actions asserting personal injury claims related to the abuse of a Scout by a Scouting leader, volunteer or another member of the BSA. As of the Petition Date, attorneys for abuse survivors had also provided information to the BSA regarding approximately 1,400 additional abuse claims that were not yet the subject of litigation. After exploring certain strategic alternatives, the Debtors commenced these chapter 11 cases to resolve abuse litigation rationally, to stem the increasing costs of addressing abuse litigation in the tort system on a case-by-case basis, to eliminate the risk of inconsistent judicial outcomes and inequitable treatment of abuse survivors, and to ultimately implement a global resolution of abuse claims through a plan of reorganization. Any such resolution must also ensure that the BSA can continue to effectively deliver the Scouting mission post-emergence, as it has done for more than 130 million young men and women during its 110-year history.

7. The Debtors recognized at the outset of these cases that, to achieve their objectives, they must proceed with efficiency, act in open coordination with their stakeholders, and effectively use the tools afforded to them under the Bankruptcy Code. Upon the commencement of these cases, the Debtors immediately undertook numerous initiatives to promote their restructuring efforts. At the forefront of these efforts was the preliminary

injunction barring litigation of abuse claims against local councils and chartered organizations nationwide.[2]

8. The preliminary injunction is essential to the success of the Debtors' restructuring efforts because nearly all of the abuse lawsuits against the BSA also name local councils or chartered organizations as defendants. None of these local councils or chartered organizations are debtors in these chapter 11 cases. Therefore, to supplement the protections of the automatic stay, the Debtors successfully obtained and extended the term of the preliminary injunction to November 16, 2020. This relief will allow the Debtors and their stakeholders to focus on the BSA's reorganization and work toward developing a chapter 11 plan that will provide for the equitable compensation of abuse survivors.

9. Additional steps that the Debtors have taken toward achieving their restructuring objectives include:

(a) seamlessly transitioning into chapter 11, including by obtaining vital first- and second-day relief on a largely consensual basis, and engaged in numerous discussions with key vendors, donors and other parties with which the BSA interacts in the ordinary course;

(b) after extensive negotiations with the Tort Claimants' Committee and other constituents, obtaining entry of an order establishing November 16, 2020 as the bar date for the submission of abuse and general proofs of claim and approving a comprehensive noticing plan estimated to reach more than 107 million men through various media, including television, radio, magazines, newspapers and targeted online advertisements;

(c) obtaining entry of an order appointing three mediators—Judge Kevin Carey (Ret.), Mr. Paul Finn, and Mr. Timothy Gallagher—to assist the Debtors and their stakeholders in their efforts to resolve the myriad complex issues that must be addressed under the Debtors' plan of reorganization;

---

[2] As described in detail in the BSA's first-day filings, the BSA depends on independently incorporated local councils and chartered organizations to deliver Scouting to U.S. citizens around the world. There are currently 253 local councils and tens of thousands of chartered organizations across the United States.

4

(d) to avoid the delays and expense of protracted discovery, continuing their prepetition efforts, in close coordination with the Ad Hoc Committee of Local Councils (the "Local Council Committee"), to populate an electronic data room with, among other things, more than 12,000 pages of asset-related information, including details of donor restrictions on such assets, that has been provided voluntarily by more than 200 local councils;

(e) obtaining entry of an order appointing the Future Claimants' Representative to represent the interests of abuse survivors who, as of the date immediately preceding the Petition Date, (i) had not attained eighteen (18) years of age or (ii) were not aware of their abuse claim as a result of "repressed memory," to the extent recognized under applicable law;

(f) negotiating the terms of a confidentiality and protective order with the Tort Claimants' Committee, the Creditors' Committee, the Future Claimants' Representative, the Local Council Committee, certain of the BSA's general liability insurers and the BSA's secured lender, JPMorgan Chase Bank, N.A., which governs the production, disclosure, handling, dissemination, exchange and use of discovery materials in the Debtors' chapter 11 cases;

(g) reaching an agreement and obtaining entry of a final order authorizing their long-term use of cash collateral;

(h) preparing and filing the Debtors' schedules of assets and liabilities, statements of financial affairs and initial reports under Bankruptcy Rule 2015.3;

(i) engaging in due diligence discussions and responding to numerous inquiries from the Tort Claimants' Committee, the Creditors' Committee, the Future Claimants' Representative and certain of the BSA's insurers; and

(j) obtaining other important relief, including the rejection of certain contracts and leases and the enlargement of the period within which the Debtors may remove civil actions under 28 U.S.C. § 1452.

10. Although there is more to accomplish in the months ahead, the Debtors have made significant progress during the first four months of these cases by laying the extensive and necessary groundwork for negotiations among the Debtors and their principal stakeholders.

## RELIEF REQUESTED

11. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) extending the Exclusive Filing Period by 120 days, to and including October 15, 2020 and (b) extending the Exclusive Solicitation Period by 120 days, to and including December 15, 2020, without prejudice to the Debtors' rights to seek further extensions of the Exclusive Periods.[3]

## BASIS FOR RELIEF

12. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan—*i.e.*, the Exclusive Filing Period. *See* 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptances of such plan—*i.e.*, the Exclusive Solicitation Period. *See* 11 U.S.C. § 1121(c)(3). Here, the Debtors' initial Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on June 17, 2020 and August 17, 2020, respectively.

13. Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for "cause." *See* 11 U.S.C. § 1121(d). The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Exclusive Periods. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interest of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in*

---

[3] Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." This Motion is filed before the expiration of the current Exclusive Periods. Accordingly, the Exclusive Periods are automatically extended until the Court acts on this Motion.

1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

14.  In exercising its broad discretion to determine whether cause exists to extend the Exclusive Periods, the Court may consider various factors to assess the totality of the circumstances. *See, e.g.*, *First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re Burns & Roe Enters., Inc.*, Case No. 00-41610 (RG), 2005 WL 6289213, *3 (D.N.J. Nov. 2, 2005) ("Whether or not to grant an extension of exclusivity is a matter of discretion based on all facts and circumstances, and a bankruptcy court has broad discretion to determine what is sufficient cause in each individual case.") (internal quotation marks and citations omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity"). These factors include, without limitation:

(a)  the size and complexity of the case;

(b)  the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(c)  the existence of good faith progress toward reorganization;

(d)  whether the debtor is paying its debts as they become due;

(e)  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f)  whether the debtor has made progress in its negotiations with creditors;

(g)  the amount of time that has elapsed in the case;

      (h)      whether the debtor is not seeking to extend exclusivity in order to pressure creditors to accede to the debtor's reorganization demands; and

      (i)      the existence of an unresolved contingency.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y.1987); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (identifying the foregoing factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended). Not all of these factors are relevant in every case, and the Court may consider the relevant subset of factors to determine whether cause exists to extend the Exclusivity Periods. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether cause existed to extend exclusivity); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in determining that cause existed to extend exclusivity).

      15.      Here, application of the foregoing factors demonstrates that ample cause exists to grant the requested extensions of the Exclusive Periods. These extensions are necessary and appropriate for the Debtors to have the opportunity contemplated by the Bankruptcy Code to propose a chapter 11 plan—including by amending the plan of reorganization filed by the Debtors on the Petition Date—and solicit acceptances thereof.

**I.    The Debtors' Cases are Complex, and the Debtors Require Sufficient Time to Negotiate a Chapter 11 Plan and Prepare Adequate Information.**

      16.      The complexity of these chapter 11 cases supports the extension of the Excusive Periods. Indeed, the size and complexity of a debtor's case alone can support a determination that cause exists to extend the Excusive Periods. *See In re Express One Int'l, Inc.*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco, Inc.*, 76 B.R. 322, 325–27 (Bankr. S.D.N.Y. 1987)

(holding that cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).

17. The Debtors' chapter 11 cases involve many complex issues. As noted above, the BSA is a defendant in more than 385 abuse actions and, as of the Petition Date, had been informed of approximately 1,400 additional abuse claims that were not yet the subject of litigation. Additionally, the Tort Claimants' Committee recently asserted that it expects more than 7,000 prepetition abuse claims to be filed in these cases by the November 16, 2020 bar date.[4] The Debtors' plan of reorganization must ultimately provide the means for administering and making distributions to holders of such claims, as well as other classes of claims.

18. To build consensus around a viable structure and terms for a plan of reorganization, the Debtors must not only review and analyze the claims filed by the bar date, but they must also address certain key predicate issues, including the treatment of abuse claims against non-debtors; the enforceability of donor and other restrictions on the BSA's and local councils' assets; shared insurance among the BSA and the local councils; and coverage disputes between the BSA and its insurers. Having laid the extensive groundwork necessary to bring all relevant parties to the bargaining table, the BSA intends to begin plan negotiations in earnest, with the assistance of the Court-appointed mediators.

19. Granting the requested extension of the Exclusive Periods at this early stage of their restructuring will provide the Debtors with a full and fair opportunity to negotiate and propose a plan of reorganization without the distraction, cost and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to

---

[4] *See* Docket No. 702 ¶ 3. The Debtors presently have no basis to verify the Tort Claimants' Committee's assertion that more than 7,000 abuse claims will be filed against the Debtors. The Debtors are requesting that the Tort Claimants' Committee provide details of these alleged claims.

9

obtain confirmation of a plan without the threat of a competing plan.  It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted).  Given the nature and complexity of the litigation at issue, it is inconceivable that the Debtors could have proposed a confirmable plan and trust distribution procedures within 120 days of the Petition Date.  Accordingly, each of the first two factors listed above weigh in favor of the Court granting the relief requested herein.

### II. The Debtors Have Made Significant Good-Faith Progress Toward Achieving Their Objectives in These Cases.

20.     The Debtors have made significant good-faith progress toward achieving their dual objectives of (a) timely and equitably compensating survivors of abuse in Scouting and (b) ensuring that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission.  As discussed above, the Debtors have obtained several forms of necessary relief from the Court, which will enable the Debtors and their stakeholders to fully engage in plan negotiations.  The Debtors have also worked diligently and proactively to make voluminous financial and asset-related documentation available to the Tort Claimants' Committee, the Creditors' Committee, the Future Claimants' Representative, their insurers, and other constituents, with the goal of minimizing the delays and expenses associated with protracted discovery.  Moreover, the recent appointment of three mediators to assist the parties with plan negotiations is a critical component of the Debtors' carefully calibrated strategy to explore a consensual global resolution of these cases.  For these reasons, this factor weighs in favor of granting an extension of the Exclusive Periods.

**III.     The Debtors are Paying Required Postpetition Debts as They Come Due.**

21.     The Debtors are continuing to make timely payments of their undisputed postpetition obligations. Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

**IV.     A Short Amount of Time Has Elapsed in the Chapter 11 Cases.**

22.     This is the Debtors' first request for an extension of the Exclusive Periods, which comes approximately four months into these chapter 11 cases. As noted above, the Debtors have made significant progress during this short time period, both in terms of preserving the value of their estates and ensuring that all of the necessary elements for productive plan negotiations are in place. Considering the challenges facing the Debtors at the outset of their chapter 11 cases, the Debtors have proceeded with speed and efficiency. Accordingly, an extension of the Exclusive Periods is appropriate.

**V.     The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands, and Creditors are Not Prejudiced by the Extension**

23.     Continued exclusivity will permit the Debtors to engage in negotiations with their creditor groups and other key constituents. The Debtors fundamentally believe that, to succeed in their restructuring efforts, they must obtain broad creditor support for a plan of reorganization. The Debtors are requesting an extension of the Exclusive Periods to build upon the progress made in these cases to date. Accordingly, this factor also weighs in favor of granting extensions of the Exclusive Periods.

**VI.     Additional Factors Support an Extension of the Exclusive Periods.**

24.     Termination of the Exclusive Periods would undermine the Debtors' efforts to limit their time in chapter 11 and reach a global agreement that will form the basis for a consensual plan. Allowing parties to file alternative plans and disclosure statements now would

frustrate the Debtors' ability to effectively engage with their stakeholders and damage prospects for successful mediated negotiations, without any clear benefit to the estates. Moreover, the proposal and solicitation of any competing plan would greatly complicate and increase the costs of administering the Debtors' chapter 11 cases.

25. At the same time, the Debtors' limited extension of the Exclusive Periods will not prejudice any party in interest. No party in interest's rights to oppose confirmation of any plan of reorganization proposed by the Debtors will be affected by the relief requested herein. Conversely, failure to obtain the requested extension of the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code: to afford the debtor a meaningful opportunity to negotiate with creditors and propose a confirmable chapter 11 plan of reorganization. For the reasons stated herein, cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

## **NOTICE**

26. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and any further relief the Court may deem just and proper.

| | |
|---|---|
| Dated:  June 16, 2020<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/  Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@mnat.com<br>            aremming@mnat.com<br>            emoats@mnat.com<br>            ptopper@mnat.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone:  (212) 839-5300<br>Email:  jboelter@sidley.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Thomas A. Labuda (admitted *pro hac vice*)<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>Blair M. Warner (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Email:  tlabuda@sidley.com<br>            mandolina@sidley.com<br>            mlinder@sidley.com<br>            blair.warner@sidley.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |