**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**Hearing Date: July 9, 2020 at 10:00 a.m. (ET)**
**Objection Deadline: July 2, 2020 at 4:00 p.m. (ET)**

**DEBTORS' OMNIBUS APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF APPRAISERS FOR THE DEBTORS AND
DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO JUNE 18, 2020**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this omnibus application (this "Omnibus Application"), pursuant to sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtors to retain and employ Appraisers of the Keys, Inc. ("Appraisers of the Keys"), JFW Ranch Consulting, LLC ("JFW Ranch Consulting"), Hotel & Leisure Advisors ("H&LA"), F.I. Salter, Inc. ("F.I. Salter"), Dawn M. Powell Appraisals Inc. ("Dawn M. Powell"), and BW Ferguson & Associates Ltd. ("BW Ferguson") (each, an "Appraiser" and collectively, the "Appraisers") to provide appraisal services for the Subject

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Properties (as defined below), effective as of June 18, 2020, pursuant to the terms and conditions of the engagement letters (the "Engagement Letters"), copies of which are attached hereto to the Proposed Order as **Exhibits 1–6**, (ii) approving the terms of the Appraisers' retention and employment, including the fee and expense structure and the indemnification provisions, as applicable, as modified by the Proposed Order, and (iii) granting certain related relief.  In support of this Omnibus Application, the Debtors submit supporting declarations from each of the Appraisers (collectively, the "Declarations"),[2] which are attached hereto as **Exhibits B–G** and are incorporated herein by reference.  In further support of this Omnibus Application, the Debtors respectfully state as follows:

### STATUS OF THE CASES AND JURISDICTION

1.    The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

2.    On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

3.    On April 24, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") appointed James L. Patton, Jr. (the "Future Claimants' Representative")

---

[2] The Debtors will supplement this Omnibus Application and the Declarations with a copy of the engagement letter with BW Ferguson and supporting declaration from BW Ferguson before the hearing on this Omnibus Application.

as the representative of future abuse claimants pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.

4.        The Court has jurisdiction to consider this Omnibus Application pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Omnibus Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.        The statutory and other bases for the relief requested in this Omnibus Application are sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6005, and Local Rule 2014-1.

## BACKGROUND OF THE DEBTORS

6.        Additional information regarding the Debtors' non-profit operations, capital structure, and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## RELIEF REQUESTED

7.        By this Omnibus Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to retain and employ the Appraisers to provide appraisal services for the Subject Properties, *nunc pro tunc* to June 18, 2020, pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6005, and Local Rule 2014-1, in accordance with the terms of each of the Engagement

Letters, (ii) approving the terms of the Appraisers' retention and employment, including the fee and expense structure and the indemnification provisions, as applicable, as modified by the Proposed Order, and (iii) granting related relief.

### THE SUBJECT PROPERTIES AND SELECTION OF THE APPRAISERS

8.     The BSA operates four high adventure facilities located in Florida, Minnesota and parts of Canada, New Mexico, and West Virginia.  These facilities are the apex of the BSA's Scouting programs, enabling Scouts to experience the truest embodiment of what Congress envisioned when it chartered the BSA more than 110 years ago—unparalleled facilities that are host to outdoor activities, educational programs, and leadership training.  Each high adventure facility is unique in its geographic location, property type, acreage, and land use.  To efficiently advance these chapter 11 cases and engage in substantive negotiations regarding the Debtors' assets and a plan of reorganization, the Debtors have determined, in their business judgment, that they require appraisals of the high adventure facilities, each as described in greater detail below.[3] The appraisals will provide the Debtors and parties in interest with important information regarding the value of their properties and assets.

9.     In consideration of the unique differences in geographic location, property type, acreage and land use of each high adventure facility, the Debtors have determined to retain one Appraiser to appraise each of the following (each, a "Subject Property" and, collectively, the "Subject Properties"): Florida Sea Base, Philmont Scout Ranch, Summit Bechtel Reserve, the portion of Northern Tier located in Minnesota, the portion of Northern Tier located in Ontario, Canada, and the remainder of Northern Tier located in Manitoba, Canada.  Each of these Subject Properties is described below.

---

[3] The Debtors do not waive the right to argue that the high adventure facilities are not available for creditor recoveries because, among other reasons, such facilities are subject to enforceable use restrictions under applicable law and/or that they hold such properties in a fiduciary capacity to carry out the Debtors' charitable mission.

- **Northern Tier.**[4] The BSA opened Northern Tier—located on the boundary waters between Minnesota and Canada—as its first high adventure facility in 1923. For nearly a century, the BSA has maintained several wilderness bases at Northern Tier from which generations of Scouts have explored millions of acres of lakes, rivers, forests, and wetlands in northern Minnesota, northwestern Ontario, and southeastern Manitoba.

- **Philmont Scout Ranch.**[5] The BSA's largest high adventure facility, Philmont, was opened in 1938 on nearly 150,000 acres of rugged mountain wilderness in the Sangre de Cristo range of the Rocky Mountains in northeastern New Mexico. At Philmont, Scouts have access to a labyrinth of backpacking trails, as well as 35 staffed camps and 55 trail camps, spread across mountainous terrain ranging in elevation from 6,500 to 12,500 feet.

- **Florida Sea Base.**[6] Sea Base was commissioned by the BSA as its third high adventure facility in 1980. At several facilities in south Florida and the U.S. Virgin Islands, Scouts swim, snorkel, scuba dive, and fish. Scouts also participate in boating and sailing adventures throughout the Caribbean, as well as primitive camping on several island-based settlements.

- **Summit Bechtel Reserve.**[7] Most recently, in 2013, the BSA opened the Summit in the wilds of West Virginia. It is the preeminent summer camp, high adventure facility, and leadership training center for the millions of Scouts and adults leaders involved in Scouting now and for generations to come. At the Summit, Scouts explore the New River Gorge region through white-water rafting, kayaking, canyoneering, and advanced orienteering.

10.    To identify and select the most qualified Appraisers, the Debtors and their professionals interviewed potential candidates to assess the following:

(i)    prior experience appraising properties similar to the Subject Properties with respect to size, property type, geographical location, and similar criteria;

(ii)    familiarity with and recognition of property-specific issues;

---

[4] See generally Northern Tier, *About Northern Tier*, available at https://www.ntier.org/about/.

[5] See generally Philmont Scout Ranch, *About Philmont*, available at https://www.philmontscoutranch.org/about/.

[6] See generally Sea Base, *About Sea Base*, available at https://www.bsaseabase.org/about/.

[7] See generally Summit Bechtel Reserve, *About Us*, available at https://www.summitbsa.org/about-us/summit-story/. Arrow WV, Inc., a West Virginia non-profit entity, owns the Summit. The BSA leases the Summit from Arrow WV and provides the services required for its operation.

(iii)    ability to meet all required competencies under the Uniform Standards of Professional Appraisal Practice, and the Canadian Uniform Standards of Professional Appraisal Practice;

(iv)    access to market data;

(v)    previous experience in providing appraisal reports and testimony in matters involving potential litigation;

(vi)    the estimated time frame and fee for completing the appraisal; and

(vii)    professional references and recommendations.

## THE APPRAISERS' QUALIFICATIONS

11.    Each of the Appraisers has extensive experience with both technical and geographic competency for the Subject Properties described below.  In particular, the Debtors have determined that each of the Appraisers has experience appraising the specific type of property at issue and in providing opinions on value in accordance with the criteria described above.  In particular, the Appraisers each possess the following qualifications:

(a)    **Appraisers of the Keys – Florida Sea Base**: Appraisers of the Keys has a wealth of experience in appraising various property types throughout the Florida Keys, including residential, hospitality, marina, mixed-use, vacant, and special purpose properties.

(b)    **JFW Ranch Consulting – Philmont Scout Ranch**: JFW Ranch Consulting's professional has over 33 years of experience appraising ranches throughout New Mexico, including properties of over 100,000 acres.  JFW Ranch Consulting has an extensive network and relationships with ranch appraisers, brokers, and ranch owners with access to a wealth of market data and intelligence.

(c)    **H&LA – Summit Bechtel Reserve**: H&LA specializes in appraisal and feasibility studies of leisure properties, including campground resort properties.  H&LA has experience with providing comprehensive market analyses, recognizing that particular segments of a property may have different highest and best uses.

(d)    **F.I. Salter – Northern Tier, Minnesota**: F.I. Salter has completed several appraisals of properties similar to the Minnesota portion of Northern Tier, including waterfront campground and residential properties.  F.I. Salter is also familiar with the local market, having completed multiple assignments in the same county as Northern Tier's Minnesota location.

(e)     **Dawn M. Powell – Northern Tier, Ontario**:    Dawn M. Powell specializes in the appraisal of resort campground and recreational properties, with a particular focus on northern Ontario.  Dawn M. Powell annually engages in at least a dozen appraisals of this type of property for various purposes, including acquisition financing, foreclosure, and similar circumstances.  Dawn M. Powell maintains an extensive database of resort campground sales and leases.

(f)     **BW Ferguson – Northern Tier, Manitoba**: BW Ferguson has experience in a variety of specialized types of property, including campgrounds, fishing lodges, and outfitters lodges in Manitoba and surrounding provinces.   BW Ferguson maintains a comprehensive database of comparable markets, public records, and data-sharing with an extensive network of appraisers and realtors in Winnipeg and Bissett, Manitoba.

The Appraisers' services are necessary to enable the Debtors to maximize the value of the estates and to reorganize.   Further, the Appraisers are each well-qualified and able to provide the services requested in these chapter 11 cases in a cost-effective, efficient and timely manner.

## SCOPE OF SERVICES

12.     The Appraisers have substantial expertise in the areas described above, and if, this Omnibus Application is approved, will provide services to the Debtors under an order approving this Omnibus Application.  The Appraisers will work closely with the Debtors' management and professionals throughout the appraisal process.   Pursuant to the Engagement Letters, the Appraisers have agreed to provide the Debtors with:

(a)     a highest and best use analysis, consideration and determination of which is a standard and requisite component of property valuation;

(b)     physical viewing, inspection, and measurement of structures on the Subject Properties, observation of the condition of improvements, characterization of land use, and consideration of other conditions of the properties that may impact market values;

(c)     consideration of the number, type, sizes, uses, and conditions of structures on the Subject Properties;

(d)     research and consideration of rights restrictions and zoning restrictions on the Subject Properties; and

7

(e)     consideration of other requirements and restrictions specific to certain of the Subject Properties, including growth ordinance requirements, marinas draft depth and access channels, property composition, comparable sales data, water rights, property damage, and mineral rights.

## NO DUPLICATION OF SERVICES

13.     By separate applications, the Debtors have retained other professionals in these cases, and pursuant to this Omnibus Application, the Debtors are seeking to retain a different Appraiser for each of the Subject Properties.  The Debtors do not believe that the services to be rendered by the Appraisers will be duplicative of the services performed by any other professional or Appraiser, and the Appraisers will work with the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

## PROFESSIONAL COMPENSATION

14.     The Debtors propose to retain and employ the Appraisers to serve as the Debtors' appraisers on the terms and conditions set forth in the Engagement Letters as modified herein in accordance with each Appraiser's customary billing practices.

(a)     **Appraisers of the Keys**:  In accordance with the engagement letter between the BSA and Appraisers of the Keys, dated as of June 18, 2020 (the "Appraisers of the Keys Engagement Letter"),[8] Appraisers of the Keys will be paid (a) a flat fee estimated to be $25,000 in connection with Florida Sea Base and (b) with respect to any testimony or other work outside the scope of the appraisal report, an hourly fee of $225.  Pursuant to the Appraisers of the Keys Engagement Letter, Appraisers of the Keys will receive half of the $25,000 as an advance retainer.  The Debtors will remit the remainder of the project fee upon the conclusion of Appraisers of the Keys' fieldwork.

(b)     **JFW Ranch Consulting**: In accordance with the engagement letter between the BSA and JFW Ranch Consulting, dated as of June 18, 2020 (the "JFW Ranch Consulting Engagement Letter"),[9] JFW Ranch will be paid (a) a flat fee estimated to be $36,000 plus taxes in connection with

[8] A true and correct copy of the Appraisers of the Keys Engagement Letter is attached to the Proposed Order as **Exhibit 1**.

[9] A true and correct copy of the JFW Ranch Consulting Engagement Letter is attached to the Proposed Order as **Exhibit 2**.

the appraisal of Philmont Scout Ranch, (b) normal and customary travel and other reimbursable expenses, and (c) with respect to any testimony, an hourly fee of $150.  Pursuant to the JFW Ranch Consulting Engagement Letter, JFW Ranch Consulting will receive half of the $18,000 fixed fee as an advance retainer.  The Debtors will remit the remainder of the fee upon completion of the appraisal report.

(c)     **H&LA**: In accordance with the engagement proposal to be entered into by the BSA and H&LA (the "H&LA Engagement Letter"),[10] H&LA will be paid (a) a flat fee estimated to be $25,000 in connection with the appraisal of Summit Bechtel Reserve, (b) normal and customary travel and other reimbursable expenses up to $2,500 for the appraisal, and (c) with respect to any testimony, an hourly fee of $450 and $350 per hour for any associated travel time.  Pursuant to the H&LA Engagement Letter, H&LA will receive half of the $25,000 as an advance retainer.  The Debtors will remit 25% of the project fee upon the conclusion of H&LA's fieldwork, and the remaining amount of fees and expenses will be remitted upon H&LA's completion of the Appraisals and the Debtors' receipt of the final reports.

(d)     **F.I. Salter**: In accordance with the engagement letter between the BSA and F.I. Salter, dated as of June 18, 2020 (the "F.I. Salter Engagement Letter"),[11] F.I. Salter will be paid (a) a flat fee estimated to be $5,000 to $8,000 in connection with the appraisal of the Minnesota portion of Northern Tier, and (b) with respect to any testimony or consulting, an hourly fee of $200.

(e)     **Dawn M. Powell**: In accordance with the engagement letter between the BSA and Dawn M. Powell, dated as of June 17, 2020 (the "Dawn M. Powell Engagement Letter"),[12] Dawn M. Powell will be paid (a) a flat fee estimated to be $7,500 CAD in connection with the appraisal of the Ontario portion of Northern Tier, (b) normal and customary travel and other reimbursable expenses, and (c) with respect to any testimony or consulting, an hourly fee of $200 CAD.

(f)     **BW Ferguson**: The Debtors intend to supplement this Omnibus Application with a copy of the engagement letter (the "BW Ferguson & Associates Engagement Letter").[13]     As described in the Edgecombe Declaration, BW Ferguson will be paid (a) a flat fee estimated to be

---

[10] A true and correct copy of the H&LA Engagement Letter is attached to the Proposed Order as **Exhibit 3**.

[11] A true and correct copy of the F.I. Salter Engagement Letter is attached to the Proposed Order as **Exhibit 4**.

[12] A true and correct copy of the Dawn M. Powell Engagement Letter is attached to the Proposed Order as **Exhibit 5**.

[13] A true and correct copy of the BW Ferguson & Associates Engagement Letter is attached to the Proposed Order as **Exhibit 6**.

between $4,500 and $5,000 in connection with the appraisal of the Manitoba portion of Northern Tier, (b) normal and customary travel and other reimbursable expenses, and (c) with respect to any testimony, an hourly fee of $275.

15.     Appraisers and valuation consultants do not typically charge for their services on an hourly basis except for testimony and similar litigation services, and it is not the Appraisers' general practice to keep detailed time records similar to those customarily kept by attorneys.  The Debtors request that the Appraisers not be required to maintain time records for producing the appraisals.  However, the Appraisers will keep time records describing their daily activities and the identities of the persons who performed tasks in connection with any work, including consulting or testimony, beyond the appraisal, and will submit records of any consulting or testimony fees in the final fee application.  The Debtors believe that this fee configuration is reasonable because the structure of the compensation contemplated under the Engagement Letters is only partially based on the time expended by the Appraisers.

16.     In addition, the Appraisers will seek reimbursement for the reasonable out-of-pocket expenses of the Appraisers incurred in connection with these chapter 11 cases, which may include travel costs, lodging, meals, and messenger and telephone charges.  All fees and expenses due to the Appraisers will be billed in accordance with any orders entered by this Court with respect to interim compensation and the relevant sections of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

17.     The Appraisers' fee and expense structures are consistent with and typical of compensation arrangements entered into by the Appraisers and other comparable firms that render similar services under similar circumstances.  The Debtors believe that the Appraisers' fee and expense structures are reasonable, market-based, and designed to compensate the Appraisers fairly for their work and to cover fixed and routine overhead expenses.

18.    The Appraisers have not received any payments from the Debtors to date.

19.    In light of the fee structures and general industry practice for the Appraisers, the Debtors, along with the Appraisers, request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court, or any guidelines regarding the submission and approval of fee applications, the Appraisers and their professionals are not be required to file monthly or interim fee applications or to keep time records, except as noted above, in connection with any work, including consulting or testimony, beyond the appraisal.  Rather, the Debtors request that, upon completion of all of the services identified in each Engagement Letter, to the extent each Appraiser is entitled to and wishes to seek compensation on account of the services performed as set forth in this Omnibus Application, each Appraiser be permitted to file one or more applications for full compensation for its appraisal services rendered in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and order of the Court.

20.    As a material part of the consideration for which the Appraisers have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions contained in certain of the Engagement Letters.  Notwithstanding the foregoing, the Debtors will agree with the applicable Appraisers before signing the Engagement Letters to modify such provisions during the pendency of these chapter 11 cases as follows:

(a)    the Appraisers shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letters for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

(b)    the Debtors shall have no obligation to indemnify the Appraisers, or provide contribution or reimbursement to the Appraisers, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from the Appraisers' gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the

breach of the Appraisers' contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the Appraisers' gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which the Appraisers should not receive indemnity, contribution or reimbursement under the terms of the Agreement as modified by this Omnibus Application and the Proposed Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, an Appraiser believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under an Engagement Letter (as modified by this Omnibus Application and the Proposed Order), including without limitation the advancement of defense costs, the Appraiser must file an application therefore in this Court, and the Debtors may not pay any such amounts to the Appraiser before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Appraiser for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Appraiser. All parties in interest shall retain the right to object to any demand by an Appraiser for indemnification, contribution or reimbursement.

21.     The terms and conditions of the Engagement Letters, including, but not limited to, the indemnification provisions were negotiated by the Debtors and the Appraisers at arm's length and in good faith. The indemnification provisions, contained in the Engagement Letters and as modified herein, viewed in conjunction with the other terms of the Appraisers' proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

## DISINTERESTEDNESS

22.     The Debtors have been advised that, to the best of each Appraiser's knowledge, based on the results of each Appraiser's search performed to date, that neither the Appraisers nor any of the Appraisers' employees expected to assist the Debtors in these chapter 11 cases is, or

was within two years before the commencement of these chapter 11 cases, a director, an officer, or an employee of the Debtors. Also, the Debtors have been advised, to the best of each Appraisers' knowledge, information, and belief, that neither the Appraisers nor any of the Appraisers' employees expected to assist the Debtors are connected to the United States Bankruptcy Judge presiding over these chapter 11 cases or any person employed by the Office of the United States Trustee for the District of Delaware.

23.    To the best of the Debtors' knowledge, each Appraiser is (a) disinterested as defined in the Bankruptcy Code and (b) does not hold or represent any interest adverse to the Debtors' estates.

## BASIS FOR RELIEF

24.    The Debtors request authority to retain and employ the Appraisers to provide appraisal services of the Subject Properties pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).

25.    Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.  Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file "a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1.

26.      Bankruptcy Rule 6005 requires that the amount or rate of compensation of appraisers or auctioneers be fixed by order of the court.

27.      The Debtors respectfully submit that section 327(a) of the Bankruptcy Code permits them to hire the Appraisers in these chapter 11 cases.  Furthermore, the requirements set forth by Bankruptcy Rule 2014 are satisfied by this Omnibus Application.

28.      Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer."  11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of the Appraisers' retention as described herein, including the proposed compensation terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  The retention of the Appraisers in these chapter 11 cases is in the best interests of the Debtors' estates, creditors, and parties in interest.

29.      The Appraisers have each agreed to serve as appraiser on and after the effective date of its respective engagement with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to June 18, 2020, so that each Appraiser may be compensated for its own services performed prior to the entry of the Proposed Order.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment as provided in this Omnibus Application, because the Appraisers will be providing valuable appraisal services to the Debtors' estates in the interim period.

30.     Courts in this District have routinely approved *nunc pro tunc* employment and compensation structures similar to that requested herein in cases comparable to this matter.  See, e.g., In re Sports Authority Holdings, Inc., Case No. 16-10527 (MFW) (D.I. 2229) (Bankr. D. Del. June 20, 2016); In re Verso Corp., Case No. 16-10163 (KG) (D.I. 727) (Bankr. D. Del. Apr. 19, 2016); In re Cal Dive Int'l, Inc., Case No. 15-10458 (CSS) (D.I. 312) (Bankr. D. Del. Apr. 27, 2015). Accordingly, the Debtors respectfully request entry of an order authorizing the Debtors to retain and employ the Appraisers to provide appraisal services for the Subject Properties, *nunc pro tunc* to June 18, 2020.

## **NOTICE**

31.     Notice of this Omnibus Application will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated:  June 18, 2020
Wilmington, Delaware

Respectfully submitted,

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*