## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 9, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: July 2, 2020 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING THE DEBTORS TO REJECT EXECUTORY
## CONTRACTS WITH ORACLE AMERICA, INC., EFFECTIVE
## AS OF JUNE 30, 2020, AND (II) GRANTING RELATED RELIEF

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to section 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to reject the executory contracts with Oracle America, Inc. listed on **Exhibit 1** to the Proposed Order (the "Rejected Contracts"), effective as of June 30, 2020 (the "Rejection Date") and (ii) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1.      The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

2.    On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

3.    On April 24, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") appointed James L. Patton, Jr. (the "Future Claimants' Representative") as the representative of future abuse claimants pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.

4.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.    The statutory and other bases for the relief requested herein are section 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006.

## BACKGROUND OF THE DEBTORS

6.      Information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## REJECTED AGREEMENTS

7.      On May 31, 2014, the BSA and Oracle America, Inc. ("Oracle") entered into the Oracle Cloud Services Agreement (the "Cloud Services Agreement"), which is a master services agreement governing certain cloud services provided to the BSA pursuant to individual ordering documents (each, an "Ordering Document" and, collectively, the "Ordering Documents").

8.      On March 4, 2018, the BSA and Oracle entered into an Ordering Document for cloud services for Oracle's human capital management, fusion workforce, and employee learning cloud services (the "HCM Services").

9.      On February 6, 2020, the BSA and Oracle entered into an Ordering Document related to cloud services for Oracle's Taleo platform, which provides technology related to training the BSA's volunteers (the "Volunteer Learning Management Services").

10.     In exchange for the HCM Services and the Volunteer Learning Management Services, the BSA pays Oracle certain monthly fees in accordance with the terms of the applicable Ordering Documents.  The Ordering Documents—and the consideration that the BSA provided for each applicable Oracle service—are distinct and individual contracts governed by the Cloud Services Agreement, which are severable and may be rejected by the Debtors.[2]

---

[2] For the avoidance of doubt, the Debtors are not rejecting the Ordering Document, CPQ-910041-1, dated July 27, 2018, which governs the Oracle Planning and Budgeting Cloud Service.  The BSA intends to continue using and paying Oracle for this service in the ordinary course in accordance with the terms of the relevant Ordering Document.

11.     In connection with their reorganization proceedings, the Debtors are continuing a strategic review of their contractual obligations.  The Debtors have been unable to successfully implement the HCM Services, and they have determined that (a) an alternate provider is available to provide substantially similar services at a lower cost and (b) for certain of the HCM Services, their existing technology is sufficient for their current organizational needs.

12.     With respect to the Volunteer Learning Management Services, the Debtors have concluded that substantially similar services are available at a lower cost from an alternate provider.

13.     As such, the Volunteer Learning Management Services do not align with the Debtors' ongoing strategic plans and will provide no significant value to the Debtors' estates going forward.  Accordingly, the Debtors have determined, in the exercise of their reasonable business judgment, that it is in the best interests of the Debtors, their estates, and creditors to reject the Rejected Contracts.

## RELIEF REQUESTED

14.     By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to reject the Rejected Contracts set forth on **Exhibit 1** to the Proposed Order effective as of the Rejection Date and (ii) granting related relief.

## BASIS FOR RELIEF

**I.      The Court Should Authorize the Rejection of the Rejected Contracts Under Section 365(a) of the Bankruptcy Code as a Reasonable Exercise of the Debtors' Business Judgment.**

15.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.  § 365(a).  By rejecting an executory contract or

unexpired lease, a debtor may be relieved of burdensome future obligations while it is trying to recover financially.  See, e.g., In re Onecast Media, Inc., 439 F.3d 558, 563 (9th Cir. 2006); In re Gen. Dev. Corp., 84 F.3d 1364, 1375 (11th Cir. 1996); see also Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco), 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); In re Exide Techs., 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization.").

16.     The standard applied by courts to determine whether the assumption or rejection of an executory contract should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate.  See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R., 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); In re Bildisco, 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); accord In re HQ Glob. Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003).

17.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject executory contracts and unexpired leases.  See Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.), 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion"); In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A]

debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

18.     Here, the Debtors' determination to reject the Rejected Contracts is supported by a valid business purpose and is in the best interests of the Debtors' estates and creditors.  The Debtors have determined that the Rejected Contracts do not provide value to the Debtors and are inconsistent with the Debtors' reorganization strategy.  The Debtors have not been able to implement certain of the services for which they continue to incur substantial costs, and as such the Rejected Contracts do not provide value to the Debtors.  The Debtors have also found alternate providers of the technology and services that they require.  For these reasons, the Debtors have determined, in the exercise of their reasonable business judgment, that it is in the best interest of the Debtors, their estates, and creditors to reject the Rejected Contracts.[3]

## II.    The Court Should Authorize the Rejection of the Rejected Contracts Effective as of the Rejection Date.

19.     The Debtors are requesting that the Rejected Contracts be rejected as of the Rejection Date in order to avoid paying any unnecessary expenses related to the Rejected Contracts.  A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses.  See, e.g., Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.), 67 F.3d 1021, 1028–29 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); TW, Inc. v. Angelastro (In re TW, Inc.), No. 03-10785, 2004 WL 115521, at *2

---

[3] As mentioned above, the Debtors also note that the Ordering Documents that comprise the Rejected Contracts are distinct and severable agreements under applicable law.  See In re Adelphia Bus. Sol'ns, Inc., 322 B.R. 51, 55 (Bankr. S.D.N.Y. 2005) ("Where a lease or contract 'contains several different agreements, and the lease or contract can be severed under applicable non-bankruptcy law, section 365 allows assumption or rejection of the severable portions of the lease or contract.'" (citing In re Wolflin Oil, L.L.C., 318 B.R. 392, 397 (Bankr. N.D. Tex. 2004)).

(D. Del. Jan. 14, 2004) (holding that bankruptcy courts may approve rejection of a nonresidential lease retroactively "when principles of equity so dictate" (citation omitted)); BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), No. 02-6419, 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) (concluding that a bankruptcy court may assign a retroactive rejection date when "the principles of equity so dictate" (quoting another source)); In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (finding that "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)").

20.    When principles of equity so dictate, courts may permit rejection as of the date on which the counterparties to the executory contracts or unexpired leases were given definitive notice of a debtor's intent to reject such agreements.  See In re KDA Grp., Inc., No. 16-21821-GLT, 2017 WL 4216563, at *4 (Bankr. W.D. Pa. Sept. 20, 2017) ("[M]any courts within the Third Circuit have adopted the notion that a lease may be retroactively rejected when principles of equity so dictate." (internal quotations omitted)); In re Fleming Cos., 304 B.R. 85, 96 (Bankr. D. Del. 2003) ("[T]o grant [retroactive] rejection, the Debtors must have stated an unequivocal intent to reject the leases.").

21.    Here, the Court should authorize the rejection of the Rejected Contracts effective as of the Rejection Date.  Oracle, as the non-debtor counterparty to the Rejected Contracts, will not be unduly prejudiced by retroactive rejection because, as of the date hereof, the Debtors have served this Motion on Oracle and/or their agents or representatives, thereby advising Oracle that the Debtors intend to reject the Rejected Contracts as of the Rejection Date.[4]  Accordingly,

---

[4] Prior to the date hereof, the Debtors also informed Oracle's counsel of their intent to reject the Ordering Documents governing the HCM Services and Volunteer Learning Management Services.

rejection of the Rejected Contracts effective as of the Rejection Date is appropriate under applicable law.

## **RESERVATION OF RIGHTS**

22.     Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or the Proposed Order, (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## **NOTICE**

23.     Notice of this Motion will be provided to: (i) Oracle; (ii) the U.S. Trustee; (iii) counsel to the Creditors' Committee; (iv) counsel to the Tort Claimants' Committee; (v) counsel to the Future Claimants' Representative; (vi) counsel to the Ad Hoc Committee of Local Councils; (vii) counsel to JPMorgan Chase Bank National Association; (viii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and any further relief the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  June 25, 2020
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
       aremming@mnat.com
       emoats@mnat.com
       ptopper@mnat.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Email:  jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Email:  tlabuda@sidley.com
       mandolina@sidley.com
       mlinder@sidley.com
       blair.warner@sidley.com

COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION