# EXHIBIT B
# (LEASE)

8/99

## STANDARD FORM OF OFFICE LEASE
### The Real Estate Board of New York, Inc.

**Agreement of Lease,** made as of this _5th_ . day of _May_ in the year 201_4_ , between

1040 Avenue of the Americas, LLC having an office at 13-15 West 54th Street, New York, NY 10019 party of the first part, hereinafter referred to as OWNER, and

**Boy Scouts of America** party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner Suite , as further set forth on Schedule A attached hereto and made a part hereof

in the building known as
in the Borough of , City of New York, for a term and at a rental

~~(or until such term shall sooner cease and expire as hereinafter provided) to commence on the~~
~~day of~~ ~~in the year~~ ~~, and to end on the~~
~~day of~~ ~~in the year~~ ~~, and~~
~~both dates inclusive, at an annual rental rate of~~

### [See Articles 38 and 39 of Rider Attached]

which Tenant agrees to pay in lawful money of the United States, which shall be legal tender in payment of all debts and dues, public and private, at the office of Owner or such other place as Owner may designate, without any setoff or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy the demised premises for general and executive offices and for no other purpose.

shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner with respect to the demised premises or the building of which the demised premises form a part, or which shall or might subject Owner to any liability or responsibility to any person, or for property damage. Tenant shall not keep anything in the demised premises except as now or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization or other authority having jurisdiction, and then only in such manner and such quantity so as not to increase the rate for fire insurance applicable to the building, nor use the demised premises in a manner which will increase the insurance rate for the building or any property located therein over that in effect prior to the commencement of Tenant's occupancy. Tenant shall pay all costs, expenses, fines, penalties, or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article, and if by reason of such failure the fire insurance rate shall, at the beginning of this lease, or at any time thereafter, be higher than it otherwise would be, then, Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or the demised premises issued by the New York Fire Insurance Exchange, or other body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rates then applicable to said premises. Tenant shall not place a load upon any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant, at Tenant's expense, in settings sufficient, in Owner's judgement, to absorb and prevent vibration, noise and annoyance.

**Subordination:**    7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which the demised premises are a part, and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Property Loss, Damage Reimbursement Indemnity:**    8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees, Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building, or caused by operations in construction of any private, public or quasi public work. If at any time any windows of the demised premises are temporarily closed, darkened or bricked up for any reason whatsoever, darkened or bricked up, if required by law, for any reason whatsoever including, but not limited to, Owner's own acts, Owner shall not be liable for any damage Tenant may sustain thereby, and Tenant shall not be entitled to any compensation therefor, nor abatement or diminution of rent, nor shall the same release Tenant from its obligations hereunder, nor constitute an eviction. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant or condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire and Other Casualty:**    9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner, and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by, and at the expense of, Owner, and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty, according to the part of the demised premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent, as hereinafter expressly provided, shall be proportionately paid up to the time of the casualty, and thenceforth shall cease until the date when the demised premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant, given within ninety (90) days after such fire or casualty, or thirty (30) days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall be not more than sixty (60) days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease, and Tenant shall forthwith quit, surrender and vacate the demised premises without prejudice however, to Landlord's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date, and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall

**Rider to be added if necessary.**

make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition, subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the demised premises as promptly as reasonably possible, all of Tenant's salvageable inventory and moveable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the demised premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible, and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d), and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. If, and to the extent, that such waiver can be obtained only by the payment of additional premiums, then the party benefiting from the waiver shall pay such premium within ten days after written demand or shall be deemed to have agreed that the party obtaining insurance coverage shall be free of any further obligation under the provisions hereof with respect to waiver of subrogation. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant, and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**    10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then, and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding, and Tenant shall have no claim for the value of any unexpired term of said lease and assigns to Owner, Tenant's entire interest in any such award. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixture and equipment at the end of the term, and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:**    11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, except as hereinafter provided for Owner in each instance. Transfer of the majority of the stock of a corporate Tenant or the majority partnership interest of a partnership Tenant shall be deemed an assignment. If this lease is assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, undertenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:**    12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation, and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:**    13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to the demised premises or to any other portion of the building or which Owner may elect to perform. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floor, or ceiling. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction, nor shall the Tenant be entitled to any abatement of rent while such work is in progress, nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof, Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term, for the purpose of showing the same to prospective tenants. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly, and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation, and such act shall have no effect on this lease or Tenant's obligations hereunder.

**Vault, Vault Space, Area:** **14.** No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability, nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** **15.** Tenant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:** **16.** (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Owner by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the demised premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) it is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination, and the fair and reasonable rental value of the demised premises for the period for which such installment was payable, shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such demised premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than, the amount of the difference referred to above.

**Default:** **17.** (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under §365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof, and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end. If Tenant shall make default hereunder prior to the date fixed as the commencement of any renewal or extension of this lease, Owner may cancel and terminate such renewal or extension agreement by written notice.

**Remedies of Owner and Waiver of Redemption:** **18.** In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or other wise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also

pay to Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises, or any part or parts thereof, shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease, and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency for any subsequent month by a similar proceeding. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rents collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Owner obtaining possession of the demised premises, by reason of the violation by Tenant of any of the covenants and conditions of this lease, or otherwise.

**Fees and Expenses:** **19.** If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice, if required, and upon expiration of any applicable grace period, if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter and without notice, perform the obligation of Tenant thereunder. If Owner, in connection with the foregoing, or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorneys' fees, in instituting, prosecuting or defending any action or proceeding, and prevails in any such action or proceeding, then Tenant will reimburse Owner for such sums so paid, or obligations incurred, with interest and costs. The foregoing expenses incurred by reason of Tenant's default shall be deemed to be additional rent hereunder, and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor. If Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner, as damages.

**Building Alterations and Management:** **20.** Owner shall have the right at any time without the same constituting an eviction and without incurring liability to Tenant therefor, to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets or other public parts of the building, and to change the name, number or designation by which the building may be known. There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or other Tenants making any repairs in the building or any such alterations, additions and improvements. Furthermore, Tenant shall not have any claim against Owner by reason of Owner's imposition of such controls of the manner of access to the building by Tenant's social or business visitors as the Owner may deem necessary for the security of the building and its occupants.

**No Representation by Owner:** **21.** Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** **22.** Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided elsewhere in this lease excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** **23.** Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, never-

theless, to the terms and conditions of this lease including, but not limited to, Article 31 hereof, and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**

24. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the demised premises ready for occupancy, or because of the fact that a certificate of occupancy has not been procured, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for Owner's inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in condition required by this lease. If premission is given to Tenant to enter into possession of the demised premises, or to occupy premises other than the demised premises, prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in the preamble to this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**

25. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of, any covenant or condition of this lease or of any of the Rules or Regulations, set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No acct thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of the demised premises, and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease, and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the demised premises.

**Waiver of Trial by Jury:**

26. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall, and they hereby do, waive trial by jury in any action proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of, or in any way connected with, this lease, the relationship of Owner and Tenant, Tenant's use of, or occupancy of, the demised premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession, including a summary proceeding for possession of the demised premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4, (except for statutory mandatory counterclaims.

**Inability to Perform:**

27. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease, or to supply, or is delayed in supplying, any service expressly or impliedly to be supplied, or is unable to make, or is delayed in making, any repair, additions, alterations, or decorations, or is unable to supply, or is delayed in supplying, any equipment, fixtures, or other materials, if Owner is prevented or delayed from so doing by reason of strike or labor troubles or any cause whatsoever including, but not limited to, government preemption or restrictions, or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency, or by reason of the conditions which have been or are affected, either directly or indirectly, by war or other emergency.

**Bills and Notices:**

28. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part, or at the last known residence address or business address of Tenant, or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Services Provided by Owners:**

29. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall provide: (a) necessary elevator facilities on business days from 8 a.m. to 6 p.m. and have one elevator subject to call at all other times; (b) heat to the demised premises when and as required by law, on business days from 8 a.m. to 6 p.m.; (c) water for ordinary lavatory purposes, but if Tenant uses or consumes water for any other purposes or in unusual quantities (of which fact Tenant shall be the sole judge), Owner may install a water meter at Tenant's expense, which Tenant shall thereafter maintain at Tenant's expense in good working order and repair, to register such water consumption, and Tenant shall pay for water consumed as shown on said meter

Rider to be added if necessary.

as additional rent as and when bills are rendered; (d) cleaning service for the demised premises on business days at Owner's expense provided that the same are kept in order by Tenant. If, however, said premises are to be kept clean by Tenant, it shall be done at Tenant's sole expense, in a manner reasonably satisfactory to Owner, and no one other than persons approved by Owner shall be permitted to enter said premises or the building of which they are a part for such purpose. Tenant shall pay Owner the cost of removal of any of Tenant's refuse and rubbish from the building; (e) If the demised premises are serviced by Owner's air conditioning/cooling and ventilating system, air conditioning/cooling will be furnished to Tenant from May 15th through September 30th on business days (Mondays through Fridays, holidays excepted) from 8:00 a.m. to 6:00 p.m.; and ventilation on business days during the aforesaid hours except Saturdays, Sundays and holidays as aforesaid. If Tenant requires air conditioning/cooling or ventilation for more extended hours or on Saturdays, Sundays or on holidays, as defined under Owner's contract with the International Union of Operating Engineers Local 94,94A, 94B, Owner will furnish the same at Tenant's expense. RIDER to be added in respect to rates and conditions for such additional service. (f) Owner reserves the right to stop service of the heating, elevators, plumbing, air-conditioning, electric, power systems or cleaning or other services, if any, when necessary by reason of accident, or for repairs, alterations, replacements or improvements necessary or desirable in the judgment of Owner, for as long as may be reasonably required by reason thereof. If the building of which the demised premises are a part supplies manually operated elevator service, Owner at any time may substitute automatic control elevator service and proceed diligently with alterations necessary therefor without in any wise affecting this lease or the obligations of Tenant hereunder.

**Captions:**

30. The Captions are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of this lease nor the intent of any provisions thereof.

**Definitions:**

31. The term "office", or "offices", wherever used in this lease, shall not be construed to mean premises used as a store or stores, for the sale or display, at any time, of goods, wares or merchandise, of any kind, or as a restaurant, shop, booth, bootblack or other stand, barber shop, or for other similar purposes, or for manufacturing. The term "Owner" means a landlord or lessee, and as used in this lease means only the owner, or the mortgagee in possession for the time being, of the land and building (or the owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building, or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be, and hereby is, entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner, hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days as observed by the State or Federal Government as legal holidays and those designated as holidays by the applicable building service union employees service contract, or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:**

32. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, a license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building, of which demised premises form a part, from injury or damage, and to support the same by proper foundations, without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**

33. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional Rules or Regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rules or Regulations hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rules or Regulations for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rules or Regulations upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing, upon Owner, within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant, and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Security:**

34. Tenant has deposited with Owner the sum of $ ........ as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent, or any other sum as to which Tenant is in default, or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the demised premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building, or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee, and Owner shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Owner

solely for the return of said security, and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber, or attempt to assign or encumber, the monies deposited herein as security, and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Estoppel Certificate:** 35. Tenant, at any time, and from time to time, upon at least ten (10) days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the rent and additional rent have been paid, and stating whether or not there exists any default by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:** 36. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under, or with respect to, this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

## In Witness Whereof, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

_____

1040 Avenue of the Americas, LLC

By: _____
Name: Lenard A. Wilf
Title: Manager

Witness for Tenant:

Loretta K. Sheets

Boy Scouts of America

By: _____
Name: Wayne Brock
Title: Chief Scout Executive

## ACKNOWLEDGEMENT

STATE OF NEW YORK,
                            SS.:
COUNTY OF _____

On the _____ day of _____ in the year _____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

**NOTARY PUBLIC**

## GUARANTY

FOR VALUE RECEIVED, and in consideration for, and as an inducement to Owner making the within lease with Tenant, the undersigned guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the covenants, conditions and agreements, therein provided to be performed and observed by Tenant, including the "Rules and Regulations" as therein provided, without requiring any notice of non-payment, non-performance, or non-observance, or proof, or notice, or demand, whereby to charge the undersigned therefor, all of which the undersigned hereby expressly waives and expressly agrees that the validity of this agreement and the obligations of the guarantor hereunder shall in no wise be terminated, affected or impaired by reason of the assertion by Owner against Tenant of any of the rights or remedies reserved to Owner pursuant to the provisions of the within lease. The undersigned further covenants and agrees that this guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of this lease and during any period when Tenant is occupying the demised premises as a "statutory tenant." As a further inducement to Owner to make this lease, and in consideration thereof, Owner and the undersigned covenant and agree that in any action or proceeding brought by either Owner or the undersigned against the other on any matters whatsoever arising out of, under, or by virtue of, the terms of this lease or of this guarantee, that Owner and the undersigned shall and do hereby waive trial by jury.

Dated ............................................. in the year ...........

Guarantor ....................................................................

Witness ....................................................................

Guarantor's Residence ....................................................

Business Address _____

Firm Name _____

STATE OF NEW YORK                    )  ss.:
COUNTY OF                              )

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

**Notary Public**

## IMPORTANT - PLEASE READ

**RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 33.**

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by Tenant or used for any purpose other than for ingress or egress from the demised premises, and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by Tenant or by jobbers or others in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards. If said premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalk and curb in front of said premises clean and free from ice, snow, dirt and rubbish.

2. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other substances shall be deposited therein, and the expense of any breakage, stoppage, or damage resulting from the violation of this rule shall be borne by the Tenant, whether or not caused by the Tenant, or its clerks, agents, employees or visitors.

3. No carpet, rug or other article shall be hung or shaken out of any window of the building and Tenant shall not sweep or throw, or permit to be swept or thrown, from the demised premises any dirt or other substances into any of the corridors or halls, elevators, or out of the doors or windows or stairways of the building, and Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors, and/or vibrations, or interfere in any way with other tenants or those having business therein, nor shall any bicycles, vehicles, animals, fish, or birds be kept in or about the building. Smoking or carrying lighted cigars or cigarettes in the elevators of the building is prohibited.

4. No awnings or other projections shall be attached to the outside walls of the building without the prior written consent of Owner.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by Tenant on any part of the outside of the demised premises or the building, or on the inside of the demised premises if the same is visible from the outside of the demised premises, without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the demised premises. In the event of the violation of the foregoing by Tenant, Owner may remove same without any liability, and may charge the expense incurred by such removal to Tenant. Interior signs on doors and directory tablet shall be inscribed, painted or affixed for Tenant by Owner at the expense of Tenant, and shall be of a size, color and style acceptable to Owner.

6. Tenant shall not mark, paint, drill into, or in any way deface, any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. Tenant shall not lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used, an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. No additional locks or bolts of any kind shall be placed upon any of the doors or windows by Tenant, nor shall any changes be made in existing locks or mechanism thereof. Tenant must, upon the termination of his tenancy, restore to Owner all keys of stores, offices and toilet rooms, either furnished to, or otherwise procured by, Tenant, and in the event of the loss of any keys, so furnished, Tenant shall pay to Owner the cost thereof.

8. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the demised premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations of the lease, or which these Rules and Regulations are a part.

9. Canvassing, soliciting and peddling in the building is prohibited and Tenant shall cooperate to prevent the same.

10. Owner reserves the right to exclude from the building all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom Tenant requests same in writing. Tenant shall be responsible for all persons for whom he requests such pass, and shall be liable to Owner for all acts of such persons. Tenant shall not have a claim against Owner by reason of Owner excluding from the building any person who does not present such pass.

11. Owner shall have the right to prohibit any advertising by Tenant which in Owner's opinion, tends to impair the reputation of the building or its desirability as a building for offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

12. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odor of cooking or other processes, or any unusual or other objectionable odors, to permeate in, or emanate from, the demised premises.

13. If the building contains central air conditioning and ventilation, Tenant agrees to keep all windows closed at all times and to abide by all rules and regulations issued by Owner with respect to such services. If Tenant requires air conditioning or ventilation after the usual hours, Tenant shall give notice in writing to the building superintendent prior to 3:00 p.m. in the case of services required on weekdays, and prior to 3:00 p.m. on the day prior in case of after hours service required on weekends or on holidays. Tenant shall cooperate with Owner in obtaining maximum effectiveness of the cooling system by lowering and closing venetian blinds and/or drapes and curtains when the sun's rays fall directly on the windows of the demised premises.

14. Tenant shall not move any safe, heavy machinery, heavy equipment, bulky matter, or fixtures into or out of the building without Owner's prior written consent. If such safe, machinery, equipment, bulky matter or fixtures requires special handling, all work in connection therewith shall comply with the Administrative Code of the City of New York and all other laws and regulations applicable thereto, and shall be done during such hours as Owner may designate.

15. Refuse and Trash. (1) Compliance by Tenant. Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders, and regulations, of all state, federal, municipal, and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall sort and separate such waste products, garbage, refuse and trash into such categories as provided by law. Each separately sorted category of waste products, garbage, refuse and trash shall be placed in separate receptacles reasonably approved by Owner. Such separate receptacles may, at Owner's option, be removed from the demised premises in accordance with a collection schedule prescribed by law. Tenant shall remove, or cause to be removed by a contractor acceptable to Owner, at Owner's sole discretion, such items as Owner may expressly designate. (2) Owner's Rights in Event of Noncompliance. Owner has the option to refuse to collect or accept from Tenant waste products, garbage, refuse or trash (a) that is not separated and sorted as required by law or (b) which consists of such items as Owner may expressly designate for Owner's removal, and to require Tenant to arrange for such collection at Tenant's sole cost and expense, utilizing a contractor satisfactory to Owner. Tenant shall pay all costs, expenses, fines, penalties, or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 15, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such noncompliance, utilizing counsel reasonably satisfactory to Owner.

**INSERTIONS TO AND MADE A PART OF LEASE
BETWEEN 1040 AVENUE OF THE AMERICAS LLC AS LANDLORD, AND
Boy Scouts of America, AS TENANT,
covering a portion of the sixteenth (16th) floor more particularly described as 4,520 square
feet of a portion the sixteenth (16th) floor of the building located at 1040 Avenue of the
Americas.**

The insertions set forth in the following pages correspond to the handwritten numerals in the margins of the Standard Form of Office Lease (ver 8/99) (the "Printed Form"). To the extent of any conflict between the Printed Form and the inserts set forth herein, the inserts set forth herein shall control.

### INSERTS, PAGE 1 OF THE STANDARD FORM OF OFFICE LEASE

1.      which shall not be unreasonably withheld

2.      reasonably

3.      reasonably

4.      after sixty (60) days written notice to Tenant

5.      or otherwise

6.      particular (as opposed to mere office)

7.      reasonable

8.      reasonably

The remainder of this page left intentionally blank.

## INSERTS, PAGE 2 OF THE STANDARD FORM OF OFFICE LEASE

1.    reasonable

2.    or willful act

3.    contractors

4.    or willful act

5.    reasonably

6.    or delayed

7.    60

8.    30

9.    ; provided, however, if as a result of fire or other casualty the demised premises shall be damaged in whole or in part and Owner fails to substantially complete the repair and restoration thereof by twelve (12) months following the date of such destruction, Tenant may terminate this Lease by giving Owner written notice which shall state the termination date of this Lease, which date shall be not less than five (5) or more than thirty (30) days after the giving of such notice, whereupon the term hereto shall end on the date specified in such notice as if such date were the original date set forth herein for the expiration of the term.

10.    but Tenant shall have the right to make its own claim for the taking of its personal property paid for by Tenant and moving expenses from the condemning authority, provided such claim does not reduce Owner's claim.

11.    on notice to Tenant (which may be oral) and at reasonable hours (except in cases of emergency)

12.    Owner shall use its reasonable efforts to cause the least practicable interference and disturbance with Tenant's business provided Owner shall not be required to perform work on an overtime or premium basis.

13.    on notice to Tenant

14.    after notice, except in the event of an emergency

The remainder of this page left intentionally blank.

**INSERTS, PAGE 3 OF THE STANDARD FORM OF OFFICE LEASE**

1.  which shall not be revoked unless this lease is terminated by Landlord

2.  Notwithstanding the preceding sentence, Owner will be responsible for any latent defects or violations which the Owner knew of at the time the parties entered into this lease. Further, Owner agrees that Tenant shall have access to and the right to use and occupy the demised premises 24 hours per day, 7 days per week during the term hereof subject to the terms of the Lease.

3.  Intentionally deleted.

4.  after notice and the expiration of any applicable grace or cure periods (or prior thereto in case of emergency)

5.  proceeding, provided Owner shall prevail therein

The remainder of this page left intentionally blank. Signature page follows.

**INSERTS, PAGE 4 OF THE STANDARD FORM OF OFFICE LEASE**

1.    or Tenant

2.    unless the failure to interpose such counterclaim will result in its waiver.

3.    return receipt requested or by recognized overnight courier

AGREED AND ACCEPTED:

1040  AVENUE  OF  THE  AMERICAS  LLC,
Landlord

By:_____

    Name:    Leonard A. Wilf
    Title:     Manager

Boy Scouts of America, Tenant

By:_____

    Name:    Wayne Brock
    Title:     Chief Scout Executive

**RIDER ANNEXED TO AND MADE A PART OF LEASE
BETWEEN 1040 AVENUE OF THE AMERICAS LLC AS LANDLORD, AND
Boy Scouts of America, AS TENANT,**
covering a portion of the sixteenth (16th) floor more particularly described as 4,520 square
feet of a portion the sixteenth (16th) floor of the building located at 1040 Avenue of the
Americas.

If and to the extent that any of the provisions of this Rider conflict or are otherwise inconsistent
with any of the provisions set forth in the pre-printed form of lease to which this Rider is
annexed or any of the Rules and Regulations attached to this Lease, whether or not such
inconsistency is expressly noted in this Rider, the provisions of this Rider shall prevail, and in
case of any inconsistency with such lease and/or Rules and Regulations, such inconsistency shall
be deemed a modification to such lease and Rules and Regulations.

     37.   Definitions.

     The following definitions shall have the meanings hereinafter set forth wherever
used in this lease or any Exhibits or Schedules annexed hereto (if any):

     (a) "Tax Base" shall mean the product obtained by multiplying (i) the
amount for which the Land (as defined in Section 42(a)(i) below) and Building are assessed for
the purpose of establishing real estate taxes to be paid by Landlord for the Tax Year (as defined
in Section 42(a)(ii) below) commencing July 1, 2014 and ending June 30, 2015, by (ii) the real
estate tax rate for such Tax Year.

     (b) "Tenant's Proportionate Share" shall mean 1.86%.

     (c) "Broker" shall mean Newmark Knight Frank and AC Lawrence
Commercial only.

     (d) "Interest Rate" shall mean a rate per annum equal to the lesser of (a)
2% above the lending rate announced from time to time by Chase (New York) as such bank's
prime rate for 90-day unsecured loans, in effect from time to time or (b) the maximum
applicable legal rate, if any.

     (e) "Legal Requirements" shall mean laws, statutes and ordinances
(including building codes and zoning regulations and ordinances) and the orders, rules,
regulations, directives and requirements of all federal, state, county, city and borough
departments, bureaus, boards, agencies, offices, commissions and other subdivisions thereof, or
of any official thereof, or of any other governmental public or quasi-public authority, whether
now or hereafter in force, which may be applicable to the land or building or the demised
premises or any part thereof, or the sidewalks, curbs or areas adjacent thereto and all
requirements, obligations and conditions of all instruments of record on the date of this lease.

     (f) "Security Amount" shall mean $57,630.00.

     (g) "Permitted Use" shall mean general, executive and administrative
offices and all legal ancillary uses related thereto only.

     (h) "Term" shall mean ten (10) years from Rent Commencement.

     (i) "Owner" shall mean 1040 AVENUE OF THE AMERICAS LLC.

     (j) "Landlord" shall mean 1040 AVENUE OF THE AMERICAS LLC.

     (k) "Building" shall mean the building situated on Lot 1, in Block 841
a/k/a 1040 Avenue of the Americas (or 1040 Sixth Avenue), New York, NY.

     (l) "Demised Premises" or "Premises" shall mean 4,520 square feet of
a portion of the sixteenth (16th) floor of the building located at 1040 Avenue of the Americas,
New York, NY.

     (m)"Year" means the 12-month period beginning on the first day of the
month in which the Rent Commencement Date occurs and each successive 12-month period
thereafter.

(n)    Storage Space" shall mean approximately ninety (90) square feet of securable space for storage only in the basement Building in an area designated by Landlord.

### 38.    Commencement of Term.

(a) The Term of this Lease shall commence on May 15, 2014 (herein referred to as the "Lease Commencement Date"), and shall end on the last day of the month in which occurs the tenth (10th) year anniversary of the Rent Commencement Date (such date on which the term of the Lease expires is herein referred to as the "Expiration Date") or until such term shall sooner cease and terminate as herein provided. Rent Commencement Date shall mean five (5) months after the Lease Commencement Date.

(b) The Demised Premises shall be deemed ready for occupancy on the Lease Commencement Date.

(c)    If and when Tenant shall take actual possession of the Demised Premises, it shall be conclusively presumed that the same were in satisfactory condition as of the date of such taking of possession.

### 39.    Fixed Annual Rent.

(a) Beginning on the Rent Commencement Date (as defined in Section 38(a)) Tenant shall pay to Landlord fixed annual rent (herein referred to as "fixed annual rent" or "fixed rent"), for the period beginning on the Rent Commencement Date and ending on the Expiration Date, payable in advance in equal monthly installments as follows:

| Year | Annual Rent | Monthly Installments |
|------|-------------|----------------------|
| 1    | $216,960.00 | $18,080.00           |
| 2    | $223,468.80 | $18,622.40           |
| 3    | $230,172.86 | $19,181.07           |
| 4    | $237,078.05 | $19,756.50           |
| 5    | $242,412.31 | $20,201.03           |
| 6    | $263,244.68 | $21,937.06           |
| 7    | $271,142.02 | $22,595.17           |
| 8    | $279,276.28 | $23,273.02           |
| 9    | $287,654.56 | $23,971.21           |
| 10   | $296,284.20 | $24,690.35           |

(b) If the Commencement Date or the Expiration Date shall not be the first day of a month or last day of the month, respectively, the monthly installment of fixed annual rent for the month in question shall be prorated on a per diem basis, and any excess amount paid on the execution of this lease shall be credited to the monthly installment of fixed annual rent payable for the next calendar month or returned to Tenant, as the case may be.

(c) In lieu of Tenant paying its proportionate share of operating expenses, Tenant shall pay a 3.00% increase in the annual rent each year ("Operating Expense Increase"), commencing one (1) year from the Rent Commencement Date. The Operating Expense Increase has been included in the annual rent calculation listed in Section 39 (a) above.

2

40.     Late Payment Charge.

If Tenant shall make any payment of fixed rent, additional rent or other charges more than ten (10) days after the same is due and payable, then, to cover Landlord's additional administrative charges resulting from Tenant's failure, Tenant shall pay a late payment charge (the "Late Payment Charge") on the amount due equal to the greater of (i) seven hundred fifty dollars ($750.00) or (ii) ten percent (10%) of such unpaid amount. Such amounts shall be payable as additional rent hereunder.

41.     Rental Payments.

(a) All payments other than fixed rent to be made by Tenant pursuant to this lease shall be deemed additional rent and, in the event of any non-payment thereof, Landlord shall have all rights and remedies provided for herein or by law for non-payment of rent.

(b) All payments of fixed rent and additional rent to be made by Tenant pursuant to this lease shall be made by checks drawn upon a New York City bank which is a member of the New York Clearing House Association or any successor thereto. If during any twelve (12) month period during the term of this lease, two or more checks tendered by Tenant for any payment due shall be dishonored by the payor bank, Landlord may at any time thereafter require that all future payments of rent for the next 12 months thereafter by Tenant shall be made by certified or official bank checks.

(c) If Landlord receives from Tenant any payment less than the sum of the fixed rent and additional rent then due and owing pursuant to this lease, Tenant hereby waives its right, if any, to designate the items to which such payment shall be applied and agrees that Landlord in its sole discretion may apply such payment in whole or in part to any fixed rent, any additional rent or to any combination thereof then due and payable hereunder.

(d) Unless Landlord shall otherwise expressly agree in writing, acceptance of fixed rent or additional rent from anyone other than Tenant shall not relieve Tenant of any of its obligations under this lease, including the obligation to pay fixed rent and additional rent, and Landlord shall have the right at any time, upon notice to Tenant, to require Tenant to pay the fixed rent and additional rent payable hereunder directly to Landlord. Furthermore, such acceptance of fixed rent or additional rent shall not be deemed to constitute Landlord's consent to an assignment of this lease or a subletting or other occupancy of the demised premises by anyone other than Tenant, nor a waiver of any of Landlord's rights or Tenant's obligations under this lease.

(i)      Landlord's failure to timely bill all or any portion of any amount payable pursuant to this lease for any period during the Term shall neither constitute a waiver of Landlord's right to ultimately collect such amount or to bill Tenant at any subsequent time retroactively for the entire amount so unbilled, which previously unbilled amount shall be payable within thirty (30) days after being so billed. Supplementing Article 56 hereof, any bills or statements for fixed rent or additional rent shall be deemed sufficiently given or rendered if sent by regular mail, postage prepaid, or delivered by hand to Tenant at the demised premises.

(ii)     In addition to the Late Payment Charge, if Tenant fails to make payment of any installment of fixed rent or additional rent or any other charge payable by Tenant to Landlord within thirty (30) days of the date due, then, in addition to all other rights and remedies of Landlord, the unpaid amount of such installment shall bear interest at the Interest Rate from the date due. The amount of such interest shall constitute additional rent for all purposes of this lease.

42.     Adjustments of Rent.

(a) For the purposes of this Article 42, the following definitions shall apply:

(i)      The term "Taxes" shall mean (A) all real estate taxes, assessments, sewer rents and water charges, governmental levies, municipal taxes, county taxes, district or subdistrict taxes or charges or any other governmental charge, general or special, ordinary or extraordinary, unforeseen as well as foreseen, of any kind or nature whatsoever, which are or may be assessed, levied or imposed upon all or any part of the Building, the land

3

upon which the Building is located (the "Land") and the sidewalks, plazas or streets in front of or adjacent thereto, including any tax, excise or fee measured by or payable with respect to any rent, and levied against Landlord and/or the Land and/or Building, under the laws of the United States, the State of New York, or any political subdivision thereof, or by the City of New York, or any political subdivision thereof, and (B) any expenses incurred by Landlord in contesting any of the foregoing set forth in clause (A) of this sentence or the assessed valuations of all or any part of the Land and Building, etc. or collecting any refund. If, due to a future change in the method of taxation or in the taxing authority, a new or additional real estate tax, or a franchise, income, transit, profit or other tax or governmental imposition, however designated, shall be levied against Landlord, and/or the Land and/or Building, in addition to, or in substitution in whole or in part for any tax which would constitute "Taxes", or in lieu of additional Taxes, such tax or imposition shall be deemed for the purposes hereof to be included within the term "Taxes".

(ii)     The term "Tax Year" shall mean each period of twelve months, commencing on the first day of July of each such period, in which occurs any part of the term of this lease or such other period of twelve months occurring during the term of this lease as hereafter may be duly adopted as the fiscal year for real estate tax purposes of the City of New York.

(iii)     The term "Escalation Statement" shall mean a statement setting forth the amount payable by Tenant for a specified Tax Year pursuant to this Article.

(b) Tenant shall pay as additional rent for each Tax Year a sum (hereinafter referred to as "Tenant's Tax Payment") equal to Tenant's Proportionate Share of the amount by which the Taxes for such Tax Year exceed the Tax Base. Said payments shall be made twice each year. Any such adjustment payable by reason of the provisions of this Section shall be payable within fifteen (15) days after Landlord shall furnish to Tenant an Escalation Statement with respect to Taxes for any Tax Year.

(i)     If the real estate tax fiscal year of The City of New York shall be changed during the term of this lease, any Taxes for such fiscal year, a part of which is included within a particular Tax Year and a part of which is not so included, shall be apportioned on the basis of the number of days in such fiscal year included in the particular Tax Year for the purpose of making the computations under this Section (b).

(ii)     If Landlord shall receive a refund of Taxes for any Tax Year, Landlord shall permit Tenant to credit against subsequent payments under this Section (b) Tenant's Proportionate Share of the refund but not to exceed Tenant's Tax Payment paid for such Tax Year.

(iii)     If the Tax Base is reduced as a result of a certiorari proceeding or otherwise, Landlord shall adjust the amount of each Tenant's Tax Payment previously made, and Tenant shall pay the amount of said adjustment within thirty (30) days after demand setting forth the amount of said adjustment.

(c) Tenant shall pay to Landlord upon demand, as additional rent, any occupancy tax or rent tax now in effect or hereafter enacted, if payable by Landlord in the first instance or hereafter required to be paid by Landlord.

(d) In the event that the Commencement Date shall be other than the first day of a Tax Year or the Expiration Date or other termination of this lease shall be a day other than the last day of a Tax Year, then, in such event, in applying the provisions of this Article with respect to any Tax Year in which such event shall have occurred, appropriate adjustments shall be made to reflect the occurrence of such event on a basis consistent with the principles underlying the provisions of this Article taking into consideration the portion of such Tax Year which shall have elapsed after the term hereof commences in the case of the Commencement Date, and prior to the date of such expiration or termination in the case of the Expiration Date or other termination.

(e) Payments shall be made pursuant to this Article notwithstanding the fact that an Escalation Statement is furnished to Tenant after the expiration of the term of this lease.

(f) In no event shall the fixed annual rent ever be reduced by operation of this Article and the rights and obligations of Landlord and Tenant under the provisions of this Article with respect to any additional rent shall survive the termination of this lease.

(g) Landlord's failure to render an Escalation Statement with respect to any Tax Year shall not prejudice Landlord's right to thereafter render an Escalation Statement with respect thereto or with respect to any subsequent Tax Year. Tenant's obligation to pay escalation for any Tax during the term of this lease shall survive the expiration or earlier termination of this lease.

(h) Each Escalation Statement shall be conclusive and binding upon Tenant unless within forty-five (45) days after receipt of such statement Tenant shall notify Landlord that it disputes the correctness of such statement, specifying the particular respect in which such statement is claimed to be incorrect. Pending the determination of such dispute, Tenant shall pay additional rent in accordance with the statement that Tenant is disputing, without prejudice to Tenant's position. If the dispute shall be determined in Tenant's favor, Landlord shall forthwith pay to Tenant the amount of Tenant's overpayment resulting from compliance with Landlord's statement.

43.     Electricity.

(a) Landlord shall supply electric current to the demised premises, Tenant agrees that electric current will be supplied by Landlord and Tenant will pay Landlord or Landlord's designated agent, as additional rent for the supplying of electric current, the sum of (i) an amount computed by applying Tenant's consumption and demand for the billing period in question (as measured by the submeter(s) installed in the demised premises for that purpose) to the rates in Service Classification No. 4 of Consolidated Edison Company of New York, Inc. then in effect (or any successor rate classification), plus, (ii) eight (8%) percent of such amount. Where more than one (1) meter measures the service of Tenant, the service rendered through each meter may be computed and billed separately in accordance with the rates herein. Bills therefor shall be rendered at such times as Landlord may elect and the amount, as computed from a submeter, shall be deemed to be, and be paid as, additional rent within twenty (20) days of rendition thereof. If any tax is imposed on Landlord's receipt from the sale or resale of electric energy to Tenant by any federal, state or municipal authority, Tenant covenants and agrees that where permitted by law, Tenant's pro rata share of such taxes shall be passed on to, and included in the bill of, and paid by, Tenant to Landlord. In no event shall the cost to Tenant for the supply of electric energy be less than 108% of the aggregate cost to Landlord for the supply of electric energy to Tenant at the demised premises (including any meter company charges, taxes, fuel adjustment charges and other charges and expenses to which Landlord is subject). Landlord will deliver at least six (6) watts per usable square foot demand load to the premises (exclusive of base building HVAC). The electricity shall be supplied through the presently installed electrical facilities for Tenant's reasonable use in the demised premises for lighting, light office equipment and the usual small business machines, including Xerox or other copying machines, and small pantry-type appliances. Subject to the following provisions of this Article. Landlord shall not in any way be liable or responsible to Tenant for any loss or damage or expense which Tenant may sustain or incur if either the quantity or character of electric service is changed or is no longer available or suitable for Tenant's requirements.

(b) At Landlord's option, Tenant shall purchase from Landlord or Landlord's agent all lighting tubes, lamps, bulbs and ballasts used in the demised premises and Tenant shall pay Landlord's reasonable charges for providing and installing same, on demand, as additional rent so long as same are competitively priced.

(c) Landlord shall not be liable in any way to Tenant for any failure or defect in the supply or character of electric energy, steam or other utilities furnished to the demised premises by reason of any requirement, act or omission of the public utility serving the Building with electricity or steam or other utilities or for any other reason beyond Landlord's control. Tenant's use of electric energy in the demised premises shall not at any time exceed the capacity of any of the electrical conductors, machinery and equipment in or otherwise serving the demised premises. In order to ensure that such capacity is not exceeded and to avert possible adverse effect upon the electric service in the Building, Tenant agrees not to connect any additional electrical equipment, fixtures, machinery or appliances of any type to the Building electric distribution system, other than lamps, typewriters, small pantry-type appliances and other small office machines which consume comparable amounts of electricity,

5

without Landlord's prior written consent, which consent shall not be unreasonably withheld. Any additional risers, feeders, or other equipment proper or necessary to supply Tenant's electrical requirements, upon written request of Tenant, will be installed by Landlord, at the sole cost and expense of Tenant, if, in Landlord's sole judgment, the same are necessary and will not cause permanent damage or injury to the Building or the demised premises, or cause or create a dangerous or hazardous condition or entail excessive or unreasonable alterations, repair or expense or interfere with or disturb other tenants or occupants. Landlord shall furnish to Tenant the electric energy which Tenant requires in the demised premises on a "rent inclusion" basis, through the presently installed electrical facilities for Tenant's reasonable use in the demised premises for lighting, light office equipment and the usual small business machines, including Xerox or other copying machines. Subject to the following provisions of this Article, there shall be no charge to Tenant therefor by way of measuring the same on any meter or otherwise, electric current being included as an additional service in the fixed rent payable hereunder. Landlord shall not in any wise be liable or responsible to Tenant for any loss or damage or expense which Tenant may sustain or incur if either the quantity or character of electric service is changed or is no longer available or suitable for Tenant's requirements.

(d) Landlord reserves the right to discontinue furnishing electric energy to Tenant at any time upon sixty (60) days' written notice to Tenant, and from and after the effective date of such termination, Landlord shall no longer be obligated to furnish Tenant with electric energy, *provided, however*, that such termination date may be extended for a time reasonably necessary for: (i) Tenant to make arrangements to obtain electric service directly from the public utility company servicing the Building; and (ii) for Tenant to convert its Demised Premises to obtain electric service directly from said public utility company and Tenant shall be hooked into the public utility. The cost of said conversion shall be borne by Landlord. If Landlord exercises such right of termination, this lease shall remain unaffected thereby and shall continue in full force and effect, and thereafter Tenant shall diligently arrange to obtain electric service directly from the public utility company servicing the Building, and may utilize the then existing electric feeders, risers and wiring serving the demised premises to the extent available and safely capable of being used for such purpose and only to the extent of Tenant's then authorized connected load. Landlord shall be obligated to pay no part of any cost required for Tenant's direct electric service. Commencing with the date when Tenant receives such direct service, and as long as Tenant shall continue to receive such service, the fixed annual rent payable under this lease shall be reduced to what the fixed annual rent would then have been but for the adjustments under this Article.

(e) In no event shall the fixed annual rent under this lease be reduced below the fixed annual rent specified herein by virtue of this Article except as provided in Section (d).

44.   Heat and Air-Conditioning.

(a) Any use of the demised premises, aside from standard office use or any part thereof, or rearrangement of partitioning in a manner that interferes with normal operation of the heat and air-conditioning systems (hereinafter called the systems) servicing the same, may require changes in such systems. Such changes, so occasioned, shall be made by Tenant, at its expense, subject to Landlord's prior written approval of such changes, which approval may be withheld for any reason. Tenant shall not make any change, alteration, addition or substitution to the air-conditioning system without Landlord's prior written approval, which may be withheld for any reason.

(b) Landlord shall maintain and operate the heating system and shall, subject to the design specifications of the heating system and to energy conservation requirements of, and voluntary energy conservation programs sponsored by, governmental authorities, furnish heat (hereinafter called "Heat Service") to the demised premises. Heat Service shall be provided during regular hours (that is, between the hours of 8:00 A.M. and 6:00 P.M.) of business days (which term is used herein to mean all days except Saturday, Sunday and those days that are observed by the State or Federal government as legal holidays and those days designated as holidays by the applicable building service union employees' contract) during the heating season (Heating season is approximately October 15 through April 15). If Tenant shall require Heat Service during hours other than those hours or on days other than business days (hereinafter called "After Hours Heat Service"), Landlord shall furnish such After

6

Hours Heat Service upon reasonable advance notice from Tenant, and Tenant shall pay, on demand, Landlord's established charges therefor.

(c)  Air-conditioning (hereinafter referred to as "A/C Service") shall be supplied to the demised premises, subject to the design specifications of the systems and to energy conservation requirements of, and voluntary energy conservation programs sponsored by, governmental authorities, during regular hours (that is, between the hours of 8:00 A.M. and 6:00 P.M.) of business days (which term is used herein to mean all days except Saturdays, Sundays, those days that are observed by the State or Federal government as legal holidays and those days designated as holidays by the applicable building service union employees' contract) during the cooling season. (Cooling season is approximately April 16 through October 14). If Tenant shall require A/C Service during hours other than those hours or on days other than business days (hereinafter called "After Hours A/C Service"), Landlord shall furnish such After Hours A/C Service upon reasonable advance notice from Tenant, and Tenant shall pay, on demand, Landlord's established charge therefore.

(d)  A/C Service shall be provided by one or more water-cooled package air-conditioning units (collectively, the "Unit") located in the demised premises. Tenant shall, at its expense, operate, repair, replace and maintain the Unit. Tenant at its sole cost and expense shall maintain a service contract for the HVAC system. Tenant's obligation to maintain the Unit shall include, but not be limited to, the periodic cleaning and/or replacement of filters, replacement of fuses and belts, the calibration of thermostats and all startup and shut down maintenance of the Unit. Such maintenance obligations shall be performed throughout the term of this lease, on Tenant's behalf, by a reputable air conditioning maintenance company engaged by Tenant at its expense, and first approved by Landlord. In the event Tenant shall fail to engage an air conditioning maintenance company as aforesaid, Landlord may (but shall not be obligated to) perform such maintenance and/or engage an air conditioning service company at Tenant's expense to perform the aforesaid maintenance to the Unit, and Tenant shall pay on demand as additional rent hereunder all expenses incurred by Landlord in connection therewith. All electricity used in connection with the operation of the Unit shall be supplied by Landlord upon, and subject to, all of the terms, covenants and conditions contained in Article 43 hereof. Tenant shall, at its sole cost and expense, perform any and all necessary repairs to the Unit. Landlord agrees to deliver the HVAC system in good working order. The existing Unit, and any replacements thereof or additional air conditioning units installed by Landlord or Tenant during the term of this lease shall be and remain at all times the property of Landlord, and Tenant shall surrender the Unit and all such repairs and replacements to Landlord in good working order and condition on the Expiration Date.

(e)  If any permit or license shall be required for the operation of any air-conditioning unit in or serving the demised premises, Landlord shall have the option of obtaining the same on Tenant's behalf and at Tenant's expense, or by written notice to Tenant requiring Tenant, at Tenant's expense, to obtain and maintain any such permit or license.

45.  Change of Location.

(a) Tenant covenants and agrees that Landlord shall at any time during the term of this lease have the absolute and unqualified right, upon notice to Tenant, to designate as the demised premises any part of any other floor in the Building (hereinafter called "Substituted Space"). Such notice shall specify and designate the space so substituted for the demised premises. Notwithstanding such substitution of space, this lease and all the terms, provisions, covenants and conditions contained in this lease shall remain and continue in full force and effect, except that the demised premises shall be and be deemed to be such Substituted Space, with the same force and effect as if the Substituted Space were originally specified in this lease as the premises demised hereunder.

(b)  In the event of the substitution of space as provided in Section (a) above,

(i)    Landlord shall, at Landlord's expense, prepare the Substituted Space in substantially the same manner as Tenant has prepared the demised premises and shall have the right to remove any floor covering, wall covering, cabinet work, and any other decoration to the Substituted Space, as well as telephone lines and any other communication line to the Substituted Space,

7

(ii)    as soon as Landlord has completed preparing the Substituted Space as set forth in this Section (b), Tenant upon ten (10) business days' prior written notice shall move to the Substituted Space, and upon failure of Tenant to so move to the Substituted Space, Landlord may, as Tenant's agent, remove Tenant from the demised premises to the Substituted Space. Failure of Tenant to move to the Substituted Space pursuant to this Article shall be deemed a substantial breach of this lease.

(c) Following such substitution of space (pursuant to this Article), if any, Landlord and Tenant shall, promptly at the request of either party, execute and deliver an agreement in recordable form setting forth such substitution of space and the change (if any) in the fixed annual rent, and rentable area in the appropriate places in this lease.

### 46. Preparation of Demised Premises.

A copy of the floor plan for the Demised Premises is attached hereto as "Schedule A". The Demised Premises is being delivered to Tenant in its current "as-is" condition except Landlord will deliver the Demised Premises in broom clean condition with the furniture listed on Schedule E. Landlord agrees to repaint the demised premises and hallway with Landlord's building standard color at Landlord's sole cost and expense prior to Tenant's move-in date of May 15, 2014.

### 47. Insurance.

(a) Tenant covenants and agrees to provide on or before the commencement of the term of this lease and to keep in force during the term hereof a comprehensive general liability insurance policy, under which Tenant is named as the insured and Landlord, and Landlord's managing agent, as well as any other parties whose names shall have been furnished to Tenant by Landlord from time to time, are named as additional insureds (collectively, the "Additional Insureds"), against any liability resulting from Tenant's use of the demised premises or any appurtenances thereto. The parties hereto agree that (A) no act or omission of Tenant shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained, (B) the policy shall be noncancellable and/or no material change in coverage shall be made thereto unless all Additional Insureds shall have received at least 30 days' prior notice of the same by certified mail, return receipt requested, (C) Tenant shall be solely responsible for the payment of all premiums under such policies and the Additional Insureds shall have no obligation for the payment thereof, and (D) is to be written by good and solvent insurance companies satisfactory to Landlord, and shall be in such limits as Landlord may reasonably require. As of the date of this lease Landlord reasonably requires limits of liability thereunder of not less than the amount of Five Million ($5,000,000) Dollars per occurrence for bodily or personal injury (including death) and in the amount of One Million ($1,000,000) Dollars in respect of property damage. Such insurance may be carried under a blanket policy covering the demised premises and other locations of Tenant, if any. Prior to the time such insurance is first required to be carried by Tenant and thereafter, at least fifteen (15) days prior to the effective date of such policy, Tenant agrees to deliver to Landlord a duplicate original of the aforesaid policy. In lieu of the policy of insurance required to be delivered to Landlord pursuant to this Article (the "Policy"), Tenant may deliver to Landlord a certification from Tenant's insurance company (in the form of an "Acord 27" or the equivalent and not an "Acord 25-S") which shall be binding on Tenant's insurance company, and which shall expressly provide that such certification (i) conveys to Landlord and any other named insured and/or Additional Insureds thereunder (the "Insured Parties") all the rights and privileges afforded under the Policy as primary insurance and (ii) contains an obligation of the insurance company to endeavor to advise all Insured Parties in writing by regular mail at least thirty (30) days in advance of any termination of or change to the Policy that would affect the interest of any of the Insured Parties. Tenant's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder entitling Landlord to exercise any or all of the remedies as provided in this lease in the event of Tenant's default.

(b) (i) Landlord agrees that, if obtainable at no additional cost, it will include in its fire insurance policies appropriate clauses pursuant to which the insurance companies (y) waive all right of subrogation against Tenant with respect to losses payable under such policies and/or (z) agree that such policies shall not be invalidated should the insured waive in writing prior to a loss any or all right of recovery against any party for losses covered by such policies. But should any additional premiums be exacted for any such clause or

8

clauses, Landlord shall be released from the obligation hereby imposed unless Tenant shall agree to pay such additional premium.

(ii)    Tenant agrees to include, if obtainable at no additional cost, in its fire insurance policy or policies on its furniture, furnishings, fixtures and other property removable by Tenant under the provisions of this lease appropriate clauses pursuant to which the insurance company or companies (y) waive the right of subrogation against Landlord and/or any tenant of space in the Building with respect to losses payable under such policy or policies and/or (z) agree that such policy or policies shall not be invalidated should the insured waive in writing prior to a loss any or all right of recovery against any party for losses covered by such policy or policies. But should any additional premium be exacted for any such clause or clauses, Tenant shall be released from the obligation hereby imposed unless Landlord or the other tenants shall agree to pay such additional premium.

(iii)    Provided that Landlord's right of full recovery under its policy or policies aforesaid is not adversely affected or prejudiced thereby, Landlord hereby waives any and all right of recovery which it might otherwise have against Tenant, its servants, agents and employees, for loss or damage occurring to the Building and the fixtures, appurtenances and equipment therein, to the extent the same is covered by Landlord's insurance, notwithstanding that such loss or damage may result from the negligence or fault of Tenant, its servants, agents or employees. Provided that Tenant's right of full recovery under its aforesaid policy or policies is not adversely affected or prejudiced thereby, Tenant hereby waives any and all right of recovery which it might otherwise have against Landlord, its servants, agents and employees, and against every other tenant in the Building who shall have executed a similar waiver as set forth in this Section (b)(iii) for loss or damage to, Tenant's furniture, furnishings, fixtures and other property removable by Tenant under the provisions hereof to the extent that same is covered by Tenant's insurance, notwithstanding that such loss or damage may result from the negligence or fault of Landlord, its servants, agents or employees, or such other tenant and the servants, agents or employees thereof.

(iv)    Landlord and Tenant hereby agree to advise the other promptly if the clauses to be included in their respective insurance policies pursuant to subdivisions (i) and (ii) hereof cannot be obtained. Landlord and Tenant hereby also agree to notify the other promptly of any cancellation or change of the terms of any such policy which would affect such clauses.

48.    Change of Condition.

Landlord shall not be liable for any change of condition in the demised premises caused by the compliance with any present or future laws, rules, orders, ordinances, requirements, or regulations of any Federal, State, County or Municipal authority or government, including any change required by law for off-street parking or similar legislation, or by revocation by any such authority or authorities of any permit or license heretofore granted, or by construction or operation of any public or quasi-public work, or by the erection of any building or buildings upon any adjacent property, or by change of environment. Landlord shall not be liable for interference with or loss of light or other incorporeal hereditaments caused by anybody other than Landlord, or caused by or for the City or any governmental or quasi-governmental agency or authority in connection with the construction of any public or quasi-public work.

49.    Brokerage.

Tenant covenants, represents and warrants that Tenant has had no dealings or communications with any broker or agent in connection with the consummation of this lease other than the Broker (as defined in Article 37 hereof), and Tenant covenants and agrees to pay, hold harmless and indemnify Landlord from and against any and all cost, expense (including reasonable attorneys' fees) or liability for any compensation, commissions or charges claimed by any broker or agent other than the Broker with respect to this lease or the negotiation thereof. The provisions of this Article shall survive the expiration or sooner termination of this lease.

50.    Estoppel Certificate.

Tenant agrees, at any time and from time to time, as requested by Landlord, upon not less than five (5) days' prior notice, to execute and deliver to Landlord a statement certifying that this lease is unmodified and in full force and effect (or if there have been modifications that the same is in full force as modified and stating the modifications), certifying the dates to which

9

the fixed rent and additional rent have been paid, and stating whether or not, to the best knowledge of Tenant, Landlord is in default in performance of any of its obligations under this lease, and, if so, specifying each such default of which Tenant may have knowledge, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom Landlord may be dealing.

     51.    <u>Arbitration.</u>

     (a) Either party may request arbitration of any matter in dispute wherein arbitration is expressly provided in this lease as the appropriate remedy. The arbitration shall be conducted, to the extent consistent with this Article 51, in accordance with the then prevailing rules of the American Arbitration Association (or any organization successor thereto) in the City and County of New York. The arbitrator(s) shall (i) be disinterested person(s) having at least ten (10) years of experience in the County of New York in a calling connected with the dispute, and (ii) have the right to retain and consult experts and competent authorities skilled in the matters under arbitration. In rendering any decision or award hereunder, the arbitrator(s) shall not add to, subtract from or otherwise modify the provisions of this lease.

     (b) The fees and expenses of the arbitrator(s) and all other expenses (not including the attorneys fees, witness fees and similar expenses of the parties) of the arbitration shall be borne by the parties equally.

     52.    <u>Limitation on Liability.</u>

     Tenant shall look only to Landlord's estate and interest in the Building and, where expressly so provided in this lease, to offset against the rents payable under this lease, for the satisfaction of Tenant's remedies or for the collection of a judgment (or other judicial process) requiring the payment of money by Landlord in the event of any default or liability by Landlord hereunder, and no other property or assets of Landlord and no property of any agent, officer, employee, director, shareholder, partner or principal of Landlord shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Landlord and Tenant hereunder or Tenant's use or occupancy of the demised premises.

     53.    <u>Local Law 5.</u>

Supplementing Article 6,

     (a) All work performed or installations made by Tenant (or by Landlord at Tenant's request and expense) in and to the demised premises shall be done in a fashion such that the demised premises and the Building shall be in compliance with the requirements of Local Law 5 of 1973 of The City of New York, as heretofore and hereafter amended ("<u>Local Law 5</u>"). The foregoing shall include, without limitation, (i) compliance with the compartmentalization requirements of Local Law 5, (ii) relocation of existing fire detection devices, alarm signals and/or communication devices necessitated by the alteration of the demised premises, and (iii) installation of such additional fire control or detection devices as may be required by applicable governmental or quasi-governmental rules, regulations or requirements (including, without limitation, any requirements of the New York Board of Fire Underwriters) as a result of Tenant's manner of use of the demised premises.

     (b) Landlord shall not be responsible for any damage to Tenant's fire control or detection devices nor shall Landlord have any responsibility for the maintenance or replacement thereof. Tenant shall indemnify Landlord from and against all loss, damage, liability or expense (including, without limitation, reasonable attorneys' fees and disbursements) suffered or incurred by Landlord by reason of the installation and/or operation of any such devices, except to the extent any loss, damage, or liability solely caused by Landlord, its agents, servants, employees, contractors, or subcontractors.

     (c) All work and installations required to be undertaken by Tenant pursuant to this Article shall be performed at Tenant's sole cost and expense and in accordance with plans and specifications and by contractors previously approved by Landlord.

     (d) The fact that Landlord shall have heretofore consented to any installations or alterations made by Tenant in the demised premises shall not relieve Tenant of its obligations pursuant to this Article with respect to such installations or alterations.

54.   Holdover.

(a) Tenant hereby indemnifies and agrees to hold Landlord harmless from and against any loss, cost, liability, claim, damage and expense (including reasonable attorneys' fees and disbursements) resulting from delay by Tenant in surrendering the demised premises upon the termination of this lease as provided in Article 22, including any claims made by any succeeding tenant or prospective tenant founded upon such delay.

(b) In the event Tenant remains in possession of the demised premises after the termination of this lease without the execution of a new lease, Landlord shall be entitled to immediately reenter the demised premises and dispossess Tenant. In the event of any holding over by Tenant, Tenant shall pay as holdover rental for each month of the holdover tenancy an amount equal to three (3) times the fixed rent and additional rent payable during the last month of the term, subject to all of the other terms of this lease insofar as the same are applicable to such holdover tenancy. The acceptance of any rent paid by Tenant pursuant to this Section shall in no event preclude Landlord from commencing and prosecuting a holdover or summary eviction proceeding and the provisions of this Section shall be deemed to be an "agreement expressly providing otherwise" within the meaning of Section 232-c of the Real Property Law of the State of New York and any successor or similar law of like import. Nothing contained in this Section shall (x) imply any right of Tenant to remain in the demised premises after the termination of this lease without the execution of a new lease, (y) imply any obligation of Landlord to grant a new lease or (z) be construed to limit any right or remedy that Landlord has against Tenant as a holdover tenant or trespasser.

(c) In the event this lease is terminated pursuant to the provisions of Article 17 herein, then in addition to the remedies Landlord may have pursuant to Article 18 herein, Landlord may elect, at its option, to recover from Tenant, all damages it may incur by reason of such breach, including the cost of recovering the premises and reasonable attorneys' fees and expenses and shall be entitled to recover as and for liquidated damages, and not as a penalty, an amount equal to the difference between (1) the fixed rent, additional rent and charges equivalent to rent payable hereunder for the remainder of the stated term and (2) the reasonable rental value of the demised premises for the remainder of the stated term, all of which shall be immediately due and payable by Tenant. In determining the rental value of the demised premises for such period, the rental realized by any reletting, if such reletting be accomplished by Landlord within a reasonable period of time after the termination of this lease, shall be deemed prima facie to be the rental value. Landlord shall not be liable in any way whatsoever for its failure or refusal to relet the demised premises or any part thereof, or if the demised premises are so relet, for its failure to collect the rent under such reletting, and no refusal or failure to relet or failure to collect rent shall affect Tenant's liability for damages or otherwise hereunder. Nothing herein contained shall limit or prejudice the right of Landlord to prove and obtain as liquidated damages by reason of such termination an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amounts referred to herein.

55.   Subordination.

(a) In the event of any act or omission of Landlord that would give Tenant the right, immediately or after lapse of a period of time, to cancel or terminate this lease, or to claim a partial or total eviction, Tenant shall not exercise such right (i) until it has given written notice of such act or omission to the holder of each superior mortgage and the lessor of each superior lease whose name and address shall previously have been furnished to Tenant in writing and (ii) unless such act or omission shall be one that is not capable of being remedied by Landlord or such holder or lessor within a  reasonable period of time, until a reasonable period for remedying such act or omission shall have elapsed following the giving of such notice and following the time when such holder or lessor shall have become entitled under such superior mortgage or superior lease, as the case may be, to remedy the same (which reasonable period shall in no event be less than the period to which Landlord would be entitled under this lease or otherwise, after similar notice, to effect such remedy), provided that such holder or lessor shall give Tenant written notice of its intention to remedy such act or omission and shall, with due diligence, commence and continue to do so.

(b) If the lessor of a superior lease or the holder of a superior mortgage shall succeed to the rights of Landlord under this lease, whether through possession or foreclosure action or delivery of a new lease or deed, then, at the request of the party so

11

succeeding to Landlord's rights (herein sometimes called the successor landlord) and upon such successor landlord's written agreement to accept Tenant's attornment, Tenant shall attorn to and recognize such successor landlord as Tenant's landlord under this lease, and shall promptly execute and deliver any instrument that such successor landlord may reasonably request to evidence such attornment. Upon such attornment, this lease shall continue in full force and effect as, or as if it were, a direct lease between the successor landlord and Tenant, upon all of the terms, conditions and covenants as are set forth in this lease and shall be applicable after such attornment, except that the successor landlord shall not:

(i)     be liable for any previous act or omission of Landlord under this lease;

(ii)    be subject to any offset, not expressly provided for in this lease, that shall have theretofore accrued to Tenant against Landlord; or

(iii)   be bound by any previous modification of this lease, not expressly provided for in this lease, or by any previous prepayment of more than one month's fixed rent or any additional rent then due, unless such modification or prepayment shall have been expressly approved in writing by the lessor of the superior lease or the holder of the superior mortgage through, or by reason of which, the successor landlord shall have succeeded to the rights of Landlord under this lease.

56.     Notices.

Every notice, demand, consent, approval, request or other communication (collectively, "notices") which may be or is required to be given under this lease or by law shall be in writing and shall be sent either (a) by United States certified or registered mail, postage prepaid, return receipt requested, or (b) by overnight courier or, (c) hand delivery (against confirmation of delivery), and shall be addressed:

(a) if to Tenant, to:

> Boy Scouts of America
> Sales and Marketing
> 1325 West Walnut Hill Lane
> Irving, TX 75015
> Attn: John F. Stewart, Dir. of Corporate Engagement

With a copy to:

> Boy Scouts of America Legal Department
> 1325 West Walnut Hill Lane
> Irving, TX 75015
> Attn: General Counsel

(b) if to Landlord, to:

> 1040 Avenue of the Americas LLC
> 13-15 West 54th Street, 1st Floor
> New York, New York 10019
> Attention: Mr. Leonard Wilf

and the same shall be deemed delivered (A) the third business day after deposited in the United States mail, (B) the business day following delivery to an overnight courier or (C) when delivered by hand. A copy of any notice to Landlord shall be sent in like manner to Landlord's counsel, Wilf Law Firm, LLP, 13-15 West 54th Street, 1st Floor, New York, New York 10019, Attention: Mark D. Dahn, Esq. with a copy to Wilf Law Firm, LLP, 820 Morris Turnpike, Suite 201, Short Hills, NJ 07078. A notice given by counsel for Landlord or Tenant shall be deemed a valid notice if addressed and sent in accordance with the provisions of this Article. Either party may designate, by similar written notice to the other party, any other address for such purposes. Each of the parties hereto waives personal or any other service other than as provided for in this Article. Notwithstanding the foregoing, either party hereto may give the other party telegraphic notice of the need of emergency repairs. Notices requesting after hours services may be given by

delivery to the Building Manager or any other person in the Building designated by Landlord to receive such notices.

### 57.   Addendum to Article 3.

Supplementing the provisions of Article 3 of the printed portion of this lease, Tenant agrees that with respect to the performance by Tenant of any alterations, additions, improvements or installations to the demised premises costing in excess of $25,000.00, Tenant shall pay to Landlord, as additional rent hereunder, promptly upon being billed therefor, a sum equal to fifteen (15%) percent of the cost of such alterations, additions, improvements or installations for Landlord's indirect costs, field supervision and coordination in connection therewith. All alterations, installations, additions or improvements made by or on behalf of Tenant to, in or about the demised premises shall be performed in accordance with Landlord's rules and regulations with respect to alterations.

### 58. Addendum to Article 6.

Notwithstanding anything contained in the lease to the contrary, if at any time during the term of this lease, Landlord expends any sums for alterations or improvements to the Building which are required to be made pursuant to any Legal Requirement, Tenant shall pay to Landlord, as additional rent, Tenant's Proportionate Share of such cost within ten (10) days after demand therefor. For the purposes of this Article, the cost of any alteration or improvement made shall be deemed to include the cost of preparing any necessary plans and the fees for filing such plans.

### 59.   Addendum to Article 17.

This lease and the term and estate hereby granted are subject to the following further limitation. Whenever Tenant shall default in the payment of any installment of fixed rent, or in the payment of any additional rent or any other charge payable by Tenant to Landlord, on any day upon which the same ought to be paid, and such default shall continue for five (5) days after Landlord shall have given Tenant a notice specifying such default, then in any such case Landlord may give to Tenant a notice of intention to end the term of this lease at the expiration of three (3) days from the date of the service of such notice of intention, and upon the expiration of said three (3) days' notice period this lease and the term and estate hereby granted, whether or not the term shall theretofore have commenced, shall terminate with the same effect as if that day were set forth herein for the expiration of the term hereof, but Tenant shall remain liable for damages as provided in Article 18. Furthermore, if Tenant shall default in the timely payment of any installment of fixed rent, or in the payment of any additional rent or any other charge payable by Tenant to Landlord for more than ten (10) days more than two times in any period of twelve (12) months, then, notwithstanding that such defaults shall have each been cured within the applicable period provided above, upon any further default within the aforesaid period of twelve (12) months in the timely payment of fixed rent or additional rent or any other charge payable by Tenant to Landlord, Landlord may serve a three (3) days' notice of termination upon Tenant without affording Tenant an opportunity to cure such further default.

### 60. Addendum to Article 29.

Landlord shall furnish cleaning service to the demised premises pursuant to the provisions of paragraph (d) of Article 29 of the printed portion of this lease, Tenant covenants and agrees that Tenant shall pay to Landlord on demand the costs incurred by Landlord for (a) extra cleaning work in the demised premises required because of (i) misuse or neglect on the part of Tenant or its employees or visitors, (ii) use of portions of the demised premises for preparation, serving or consumption of food or beverages, data processing or reproducing operations, private lavatories or toilets or other special purposes requiring greater or more difficult cleaning work than office areas, (iii) unusual quantity of interior glass surfaces, (iv) non-building standard materials or finishes installed by Tenant or at its request, and (b) removal from the demised premises and the Building of refuse and rubbish produced by Tenant as shall exceed that ordinarily accumulated daily refuse and rubbish produced in the ordinary course of business by an office tenant. A copy of the cleaning specifications are attached hereto as Schedule D.

13

61. Addendum to Articles 34 and 37.

Upon execution of this lease, Tenant shall deposit and during the term of the lease always maintain with Landlord the Security Amount. It is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of fixed rent and additional rent, Landlord may apply or retain the whole or any part of the cash security so deposited and use, apply, or retain the whole or any part of such proceeds, as the case may be, to the extent required for the payment of any fixed rent and additional rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including, but not limited to, reasonable attorneys' fees, court costs and disbursements or any damages or deficiency in the reletting of the demised premises, whether such damages or deficiency accrue or accrues before or after summary proceedings or other reentry by Landlord. If Landlord uses, applies or retains any part or all of the cash security, Tenant, within two (2) business days after demand (time being of the essence), shall deposit with Landlord the amount so used, applied or retained so that Landlord shall have the full Security Amount on hand at all times during the term of this lease; and the failure by Tenant to timely and fully deposit said amount within the foregoing two-day period shall be deemed a material, non-curable default pursuant to the terms of this lease. If Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the cash security, shall be returned to Tenant the later of (i) ninety (90) days after the Expiration Date and (ii) after delivery of the entire possession of the demised premises to Landlord in accordance with the terms and provisions of this lease. In the event of a sale of the real property or the Building or leasing of the Building, Landlord shall have the right to transfer the cash security to the vendee or lessee and Landlord shall thereupon be released by Tenant from all liability for the return of such security. Tenant agrees to look solely to the new landlord for the return of such cash security and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new landlord. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

62. Miscellaneous.

(a) This lease shall be governed in all respects by the laws of the State of New York.

(b) Tenant shall not (a) use any part of the Premises (i) in violation of this lease or the certificate of occupancy, if any, for the Premises or the Building (Landlord represents, however, that the Premises may be used for the Permitted Use) or (ii) for any of the following (or offices therefor): employment agency; travel agency; Authority; foreign government or any business owned in whole or in part by a foreign government; foreign airline; a place of public assembly; the rendering of any health or health-related services; a school or classroom; gambling; any business that, in Landlord's reasonable judgment, may jeopardize the safety of the Building or its occupants; or the sale or preparation of any food or beverage (except for vending machines and warming food, in both cases solely for Tenant's employees and invitees), (b) use any area outside the Premises within or adjacent to the Building for the sale or display of any merchandise, for solicitations or demonstrations or for any other activity, (c) store trash other than inside the Premises, (d) cause waste, or do anything which, in Landlord's reasonable judgment, disturbs other occupants of the Building (including permitting music or other sounds in the Premises to be heard outside the Premises, equipment in the Premises to cause vibration or noise which is transmitted beyond the Premises, odors or fumes beyond the Premises or its employees, invitees or deliverymen to loiter immediately outside the Premises or the Building or within the public areas of the Building) or is obscene, pornographic or lewd, (e) place any sign or other item outside the Premises or the Building, or on any window or door of the Premises, or in the Premises if it can be seen from outside the Premises, except a Building standard identification sign on Tenant's entrance door, Building standard window coverings or other sign or item expressly permitted by this lease, (f) park trucks or other vehicles which interfere with any part of the Building or the Land, (g) cause the release in or from the Premises of any hazardous material, or any other item which is deemed hazardous under any Law, (h) advertise in a manner which, if the Building is identified, in Landlord's reasonable judgment, impairs the reputation or desirability of the Building or (i) move any

14

heavy or bulky items into or out of the Building without Landlord's consent, which shall not be unreasonably withheld or delayed (and (x) if any such item requires special handling, Tenant shall employ a person approved by Landlord for such purpose, which approval shall not be unreasonably withheld or delayed and (y) Landlord may inspect any items brought into or taken from the Building).

(c) If, in connection with obtaining financing for the Building, a bank, insurance company or other lending institution shall request reasonable modifications in this lease as a condition to such financing, Tenant will not unreasonably withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder or materially adversely affect the leasehold interest hereby created.

(d) Without incurring any liability to Tenant, Landlord may permit access to the demised premises and open the same, whether or not Tenant shall be present, upon demand of any receiver, trustee, assignee for the benefit of creditors, sheriff, marshal or court officer entitled to, or reasonably purporting to be entitled to, such access for the purpose of taking possession of, or removing, Tenant's property or for any other lawful purpose (but this provision and any action by Landlord hereunder shall not be deemed a recognition by Landlord that the person or official making such demand has any right or interest in or to this lease, or in or to the demised premises), or upon demand of any representative of the fire, police, building, sanitation or other department of the city, state or federal governments.

(e) Tenant shall not be entitled to exercise any right of termination or other option granted to it by this lease (if any) at any time when Tenant is in default in the performance or observance of any of the covenants, terms, provisions or conditions on its part to be performed or observed under this lease.

(f) Tenant shall not place or permit to be placed any vending machines in the demised premises, except with the prior written consent of Landlord in each instance.

(g) Neither Tenant nor any corporation or other entity controlling, controlled by or under common control with Tenant shall occupy any space in the Building (by assignment, sublease or otherwise) other than the demised premises, except with the prior written consent of Landlord in each instance.

(h) Intentionally omitted.

(i) The Article headings of this lease are for convenience only and are not to be given any effect whatsoever in construing this lease.

(j) This lease shall not be binding upon Landlord unless and until it is signed by Landlord.

(k) The Schedules annexed to this lease shall be deemed part of this lease with the same force and effect as if such Schedules were numbered Articles of this lease.

(l) If the rent hereunder shall commence on any day other than the first day of a calendar month, the rent for such calendar month shall be prorated.

(m) Tenant agrees that Tenant will not at any time during the term of this lease, either directly or indirectly, use any contractors and/or labor and/or materials if the use of such contractors and/or labor and/or materials would or will create any labor difficulty with other contractors and/or labor engaged by Tenant or Landlord or others in the maintenance and/or operation of the Building or any part thereof.

(n) Tenant shall not place any signage on the entrance to the demised premises other than the Building Standard signage to be furnished by Landlord to Tenant at Tenant's cost and expense. The listing of any name other than that of Tenant, whether on the doors of the demised premises, on the Building directory, if any, or otherwise, shall not operate to vest any right or interest in this lease or in the demised premises, nor shall it be deemed to be the consent of Landlord to any assignment or transfer of this lease, to any sublease of the demised premises, or to the use or occupancy thereof by others.

(o) The terms "Owner" and "Landlord", whenever used in this lease (including, without limitation, in Article 31), shall have the same meaning.

(p) If Landlord or Landlord's managing or rental agent accepts from Tenant one or more keys to the demised premises in order to assist Tenant in showing the demised premises for subletting or other disposition or for the performance of work therein for Tenant or for any other purpose, the acceptance of such key or keys shall not constitute an acceptance of a surrender of the demised premises nor a waiver of any of Landlord's rights or Tenant's obligations under this lease, including, without limitation, the provisions relating to assignment and subletting and the condition of the demised premises.

(q) This lease and any agreements contemporaneous herewith contains the entire agreement between the parties and all prior negotiations and agreements are merged into this lease. This lease may not be changed, modified or terminated, in whole or in part, nor any of its provisions waived except by a written instrument which (i) expressly refers to this lease, (ii) is executed by the party against whom enforcement of the change, modification, termination or waiver is sought and (iii) is permissible under the superior mortgage, if any, and the superior lease, if any.

(r) (i) If Tenant is a corporation, each person executing this lease on behalf of Tenant hereby covenants, represents and warrants that Tenant is a duly incorporated or duly qualified (if foreign) corporation and is authorized to do business in the State of New York (a copy of evidence thereof to be supplied to Landlord upon request); and that each person executing this lease on behalf of Tenant is an officer of Tenant and that he is duly authorized to execute, acknowledge and deliver this lease to Landlord (a copy of a resolution to that effect to be supplied to Landlord upon request).

(ii) If Tenant is a partnership (which for purposes of this lease shall be deemed to include a general partnership, limited partnership, limited liability company and limited liability partnership), each person executing this lease on behalf of Tenant hereby covenants, represents and warrants that Tenant is duly organized and validly existing and is authorized to do business in the State of New York (a copy of evidence thereof to be supplied to Landlord upon request); and that each person executing this lease on behalf of Tenant is a partner of Tenant and that he is duly authorized to execute, acknowledge and deliver this lease to Landlord (a copy of evidence thereof to be supplied to Landlord upon request).

(s) If Tenant is a partnership (which for purposes of this lease shall be deemed to include a general partnership, limited partnership, limited liability company and limited liability partnership) (or is comprised of 2 or more persons, individually, or as joint venturers or as co-partners of a partnership) or if Tenant's interest in this lease shall be assigned to a partnership (or to 2 or more persons, individually, or as joint venturers or as co-partners of a partnership) pursuant to this lease (any such partnership and such persons are referred to in this Article as "Partnership Tenant"), the following provisions of this Section shall apply to such Partnership Tenant: (i) the liability of each of the parties comprising Partnership Tenant (other than limited partners of a limited partnership, but otherwise including without limitation the partners or members, as the case may be, of any limited liability partnership or limited liability company to which any Partnership Tenant hereunder converts after entering into this lease) shall be joint and several, and (ii) each of the parties comprising Partnership Tenant hereby consents in advance to, and agrees to be bound by, any modifications, termination, discharge or surrender of this lease which may hereafter be made and by any notices, demands, requests or other communications which may hereafter be given, by Partnership Tenant or by any of the parties comprising Partnership Tenant, and (iii) any bills, statements, notices, demands, requests or other communications given or rendered to Partnership Tenant or to any of the parties comprising Partnership Tenant shall be deemed given or rendered to Partnership Tenant and to all such parties and shall be binding upon Partnership Tenant and all parties, and (iv) if Partnership Tenant shall admit new partners all such new partners or members shall, by their admission to Partnership Tenant, be deemed to have assumed performance of all of the terms, covenants and conditions of this lease on Tenant's part to be observed and performed, and (e) Partnership Tenant shall give prompt notice to Landlord of the admission of any such new partners or members, and upon demand of Landlord, shall cause each such new partner or member to execute and deliver to Landlord an agreement in form satisfactory to Landlord, wherein each such new partner or member shall assume performance of all of the terms, covenants and conditions of this lease on Tenant's part to be observed and performed (but neither Landlord's failure to request any such agreement nor the failure of any such new partner or member to execute or deliver any such agreement nor the failure of any such new partner or member to execute or deliver any such agreement to Landlord shall vitiate the provisions of Subdivision (iv) of this Section (s)).

16

(t) Tenant warrants and represents that the party signing this Lease on behalf of Tenant has authority to enter into this Lease and to bind Tenant to the terms, covenants and conditions contained herein. Tenant shall deliver to Landlord, upon request, all documents reasonably requested by the other evidencing such authority, including a copy of all corporate resolutions, consents or minutes reflecting the authority of persons or parties to enter into agreements on behalf of such party.

(u) Tenant hereby represents, covenants and warrants that it is not a foreign government, or an agency, affiliate or related in any way to a foreign government, and that Tenant does not have diplomatic immunity for any claims brought pursuant to this lease.

(v) If Tenant (or any affiliate of Tenant) and Landlord (or any affiliate or subsidiary thereof) have entered into any lease or other possessory agreement (including, but not limited to, any sublease or license agreement) and Tenant (or any affiliate of Tenant) is in default under the said lease or other possessory agreement, then any default under such other lease or other possessory agreement may, at Landlord's option, be considered for all purposes of this lease to be a material default under this lease.

(w) Tenant shall abide and use commercially reasonable efforts to cause its employees, independent contractors, agents, directors, officers, guests and invitees to abide by all rules, regulations and procedures required by Landlord with respect to the Building and the demised premises, including but not limited to, evacuation, fire safety, and security rules and procedures. Tenant hereby agrees to indemnify and hold the Landlord and its agents harmless from and against any and all losses arising from a breach of the foregoing provision, unless any such loss is solely due to Landlord's sole negligence or willful misconduct. Should Tenant desire to implement its own fire safety or evacuation procedures above and beyond those required by Landlord, Tenant must first obtain Landlord's prior written consent in each instance and shall indemnify and hold the Landlord harmless from and against any losses arising from such procedures, unless any such loss is due to Landlord's sole negligence or willful misconduct.

(x) In the event that Tenant has signage anywhere in the Building, including, but not limited to, the entry door to the demised premises and/or the lobby, all such signage shall be of Building Standard material and design. Tenant shall be entitled to its proportionate share of listings in the Building's computer directory and on the 16th floor.

(y) Tenant shall have access to the building twenty-four (24) hours, seven (7) days per week, three hundred and sixty-five (365) days per year.

(z) During Tenant's initial move-in only, Tenant shall have use of the freight elevator at no additional charge during regular business hours and subject to any federal and union holidays.

(aa)    Landlord and Tenant each acknowledge that: (i) they have been represented by independent counsel in connection with this Lease; (ii) they have executed this Lease with the advice of such counsel; and (iii) this Lease is the result of negotiations between the parties hereto and the advice and assistance of their respective counsel. The fact that this Lease was prepared by Landlord's counsel as a matter of convenience shall have no import or significance. Any uncertainty or ambiguity in this Lease shall not be construed against Landlord because Landlord's counsel prepared this Lease in its final form.

(bb)    THE PARTIES HERETO HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER WITH RESPECT TO ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT, OR FOR THE ENFORCEMENT OF ANY REMEDY UNDER ANY STATUTE, EMERGENCY OR OTHERWISE.

(cc)    If any of the provisions of this lease, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this lease shall be valid and enforceable to the fullest extent permitted by law.

62.    Addendum to Article 8.

Tenant shall not be liable for any damage to the building, the demised premises, or any property of Owner or others, nor for the loss of or damage to property of Owner due to theft or otherwise unless caused by, or due to, the negligence or willful act of Tenant, its contractors, agents, servants or employees, nor for any injury or damages to persons or property resulting from any cause whatsoever nature unless caused by, or due to, the negligence or willful act of Tenant, its contractors, agents, servants or employees. Owner shall indemnify and save harmless Tenant against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Tenant shall not be reimbursed by insurance, including reasonable attorneys' fees, paid, suffered or incurred as a result of any breach by Owner, Owner's agents, contractors employees, invitees, or licensees, of any covenant or condition of this lease, or the carelessness, negligence or improper conduct of the Owner, Owner's' agents, contractors, employees, invitees or licensees.

63.    The demised premises is partially furnished with furniture and said furniture are accepted in their current "as-is" condition. Landlord makes no representations regarding the furniture. The list of furniture is attached hereto as Schedule E. The furniture will become property of the Tenant, provided Tenant completes the Term of this Lease.

64.    Storage Space. Tenant shall rent at six hundred ($600.00) and 00/100 dollars per month, approximately 90 square feet of securable Storage Space in the basement of the Building. The term for the Storage Space will begin on May 15, 2014 and ending on the Expiration Date of this Lease. All payments herein will be treated as additional rent.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY IS LEFT BLANK.]

IN WITNESS WHEREOF, the parties hereto have executed this lease as of the day and year first above written.

1040 AVENUE OF THE AMERICAS LLC, Landlord

By:_____
    Name:    Leonard A. Wilf
    Title:    Manager

Boy Scouts of America, Tenant

By:_____
    Name:    Wayne Brock
    Title:    Chief Scout Executive

(TENANT)

STATE OF ~~NEW YORK~~ Texas )
                             :ss.:
COUNTY OF ~~NEW YORK~~ Dallas )

On the 5th day of ~~April~~ May in the year 2014 before me, the undersigned, personally appeared Wayne Brock , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

(LANDLORD)

STATE OF NEW YORK )
                             :ss.:
COUNTY OF NEW YORK )

On the 8th day of ~~April~~ May in the year 2014 before me, the undersigned, personally appeared Leonard A. Wilf, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

MARK D DAHN
Notary Public of New York
No. 02DA6047945
Qualified in New York County
Commission Expires 12/17/14

## SCHEDULE A

## FLOOR PLAN

Note, this floor plan is annexed to and made a part of this lease solely to indicate the demised premises by outlining and diagonal marking. This diagram is an approximate lease plan of the Building. All measures, dimensions and distances are not to scale. The depiction herein does not constitute a warranty or representation of any kind, and nothing herein should be construed as a representation as to any specific tenancy, construction, access, or the quality or quantity of Landlord's title to the Building.



## SCHEDULE B

INTENTIONALLY DELETED

# SCHEDULE C

## ADDENDUM TO ARTICLE 11

(a) Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage, or encumber this lease or any of its rights or estates hereunder, sublet the demised premises or any part thereof, or suffer, or permit, the demised premises, or any part thereof, to be used or occupied by others, without: (i) the prior written consent of Landlord; and (ii) Landlord's right to recapture the demised premises, in each instance. If this lease be assigned, or if the demised premises or any part thereof be sublet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, subtenant, or occupant, and apply the net amount collected to the rent herein reserved, but no assignment, subletting, occupancy, or collection shall be deemed a waiver of the provisions hereof, the acceptance of the assignee, subtenant, or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. Landlord's consent to an assignment or subletting shall not, in any wise, be construed to relieve Tenant from obtaining Landlord's express written consent to any further assignment or subletting. In no event shall any permitted sublessee assign or encumber its sublease, further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space, or any part thereof, to be used or occupied by others, without Landlord's written consent in each instance.

(b) If Tenant shall, at any time or times during the term of this lease, desire to assign this lease or sublet the demised premises, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by: (i) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall be not less than sixty (60) nor more than ninety (90) days after the giving of such notice; (ii) a statement setting forth, in reasonable detail, the identity of the proposed assignee or subtenant, the nature of its business and its proposed use of the demised premises; and (iii) current financial information with respect to the proposed assignee or subtenant, including its most recent financial report. Such notice shall be deemed an offer from Tenant to Landlord whereby Landlord (or, at Landlord's election, its designees if Landlord shall exercise its rights under succeeding clauses (ii) or (iii) hereof) may, at Landlord's option (i) with respect to a prospective assignment, accept an assignment of this lease from Tenant without any payment of moneys or other consideration therefor, or (ii) with respect to a prospective subletting, accept a sublease from Tenant for the remainder of the term of this lease at a rental rate equal to the lower of (a) Tenant's proposed subrental or (b) at the same rate of fixed annual rent and additional rent then payable under the lease; and otherwise on the same terms, covenants and conditions (including provisions relating to escalation rents), as are contained herein. Any of the aforesaid options may be exercised by Landlord by notice to Tenant at any time within sixty (60) days after such notice has been given by Tenant to Landlord, and during such sixty (60) day period, Tenant shall not assign this lease or sublet such space to any person.

(c) If Landlord exercises its option to accept an assignment of this lease or a subletting of the demised premises Tenant shall then execute and deliver to Landlord, or to anyone designated or named by Landlord, an assignment or sublease, as the case may be, in either case in a form reasonably satisfactory to Landlord's counsel. If the proposed transaction is a sublease and Landlord accepts such offer, Tenant, on demand, shall pay to Landlord or its managing agent (as Landlord shall elect) an amount equal to the brokerage commissions which would have been incurred by Tenant but for Landlord's accepting such offer.

If a sublease is so made it shall expressly:

(i)   permit Landlord to make further subleases of all or any part of the demised premises and (at no cost or expense to Tenant) to make and authorize any and all changes, alterations, installations and improvements in such space as Landlord may deem necessary for such subletting, at Landlord's expense;

(ii)   negate any intention that the estate created under such sublease be merged with any other estate held by either of the parties;

(iii)   provide that Landlord shall accept the demised premises "as is", it being intended that Tenant shall have no other cost or expense in connection with the subletting of the demised premises;

22

(iv)    provide that at the expiration of the term of such sublease Tenant will accept the demised premises in its then existing condition, subject to the obligations of Landlord to make such repairs thereto as may be necessary to preserve the demised premises in good order and condition, ordinary wear and tear excepted.

(d) In the event that Tenant complies with the provisions of paragraph (b) of this Schedule C and Landlord does not exercise an option provided to it thereunder within the time provided therefor, and provided that Tenant is not in default of any of Tenant's obligations under this lease, Landlord's consent (which must be in writing and in form reasonably satisfactory to Landlord) to the proposed assignment of this lease or subletting of the entire demised premises shall not be unreasonably withheld or delayed, provided the following conditions have been satisfied (together with any other conditions that Landlord may deem necessary to consider in its sole discretion):

(i)    in Landlord's reasonable judgment, the proposed assignee or subtenant is engaged in such a business, and the demised premises will be used in such a manner, that: (x) is limited to the use expressly permitted under this lease; and (y) will not violate any negative covenant as to use contained in any other lease of space in the Building about which Tenant has been informed following its request to Landlord for such information;

(ii)    the proposed assignee or subtenant is a reputable person of good character and with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof;

(iii)    neither (i) the proposed assignee or sublessee nor (ii) any person that, directly or indirectly, controls, is controlled by, or is under common control with, the proposed assignee or sublessee, is then an occupant or tenant of any part of the Building;

(iv)    the proposed assignee or sublessee is not a person with whom Landlord is then, or shall have been during the previous six (6) month period, negotiating to lease space in the Building;

(v)    the proposed sublease shall be in form reasonably satisfactory to Landlord and shall comply with the applicable provisions of this Schedule C;

(vi)    the amount of the aggregate rent to be paid by the proposed subtenant is not less than the then current market rent per rentable square foot for the demised premises, and the rental and other terms and conditions of the sublease are the same as those contained in the proposed sublease furnished to Landlord pursuant to paragraph (b);

(vii)    Tenant shall reimburse Landlord on demand for any reasonable costs that may be incurred by Landlord in connection with any assignment or sublease, including, without limitation, the costs of making investigations as to the acceptability of the proposed assignee or subtenant and legal costs incurred in connection with the granting of any requested consent;

(viii)    Tenant shall not have (a) advertised or publicized in any way the availability of the demised premises without prior notice to, and approval by, Landlord, which approval Landlord agrees not to unreasonably withhold, nor shall any advertisement state the name (as distinguished from the address) of the Building, or (b) listed the demised premises for subletting or assignment, with a broker, agent or representative (other than the then managing agent of the Building or other agent designated by Landlord) or otherwise, at a proposed rental less than the fixed rent and additional rent at which Landlord is then offering to lease other space in the Building;

(ix)    the sublease shall not allow use of the demised premises (1) as a restaurant, luncheonette, or otherwise for the preparation and/or sale of food for on or off premises consumption; (2) as a discount store (3) as a multiple tenancy store; (4) by a foreign or domestic governmental agency; (5) as a betting parlor or gambling casino; or (6) by a utility company;

(x)    the sublease shall not provide for an option on behalf of the subtenant thereunder to extend or renew the term of such sublease; and

23

(xi)    Tenant shall have appointed the then leasing agent of the Building as its exclusive rental agent in connection with such assignment or subletting and shall have given such agent the exclusive right to assign and sublet on Tenant's behalf.

(e) In the event that (i) Landlord fails to exercise any of its options under paragraph (b) of this Schedule C and consents to a proposed assignment of this lease or sublease of the entire demised premises and (ii) Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within sixty (60) days after the giving of such consent, then Tenant shall again comply with all of the provisions and conditions of paragraph (b), before assigning this lease or subletting the demised premises.

(f) Each subletting pursuant to this Schedule C shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this lease. Notwithstanding any such subletting and/or acceptance of rent or additional rent by Landlord from any subtenant, Tenant shall and will remain fully liable for the payment of the fixed rent and additional rent due, and to become due, hereunder, for the performance of all of the covenants, agreements, terms, provisions and conditions contained in this lease on the part of Tenant to be performed and for all acts and omissions of any licensee, subtenant, or any other person claiming under or through any subtenant that shall be in violation of any of the obligations of this lease, and any such violation shall be deemed to be a violation by Tenant. Tenant further agrees that, notwithstanding any such subletting, no other and further subletting of the demised premises by Tenant, or any person claiming through or under Tenant, shall, or will be, made, except upon compliance with, and subject to, the provisions of this Schedule. If Landlord shall decline to give its consent to any proposed assignment or sublease, or if Landlord shall exercise its option under paragraph (b), Tenant shall indemnify, defend and hold Landlord harmless from and against any and all losses, liabilities, damages, costs and expenses (including reasonable counsel fees) resulting from any claims that may be made against Landlord by the proposed assignee or subtenant or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease.

(g) With respect to each and every sublease or subletting, it is further agreed that:

(i)    no subletting shall be for a term ending later than one day prior to the expiration date of this lease;

(ii)    no sublease shall be valid, and no subtenant shall take possession of the demised premises or any part thereof, until an executed counterpart of such sublease has been delivered to Landlord; and

(iii)    each sublease shall provide that it is subject and subordinate to this lease and to the matters to which this lease is or shall be subordinate, and that, in the event of termination, re-entry, or dispossess by Landlord under this lease, Landlord may, at its option, take over all of the right, title and interest of Tenant as sublandlord under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not (x) be liable for any previous act or omission of Tenant under such sublease, (y) be subject to any offset, not expressly provided in such sublease, that theretofore accrued to such subtenant against Tenant or (z) be bound by any previous modification of such sublease or by any previous prepayment of more than one month's fixed rent or any additional rent then due.

(h) Any assignment or transfer shall be made only if, and shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement, in form and substance satisfactory to Landlord, whereby the assignee shall assume all of the obligations of this lease on the part of Tenant to be performed or observed and whereby the assignee shall agree that the provisions contained in paragraph (a) shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect of all future assignments and transfers. The original named Tenant covenants that, notwithstanding any assignment or transfer, whether or not in violation of the provisions of this lease, and notwithstanding the acceptance of fixed rent and/or additional rent by Landlord from an assignee, transferee, or any other party, the original named Tenant shall remain fully liable for the payment of the fixed rent and additional rent and for the other obligations of this lease on the part of Tenant to be performed or observed.

24

(i) If Landlord shall give its consent to any assignment of this lease or to any sublease, Tenant shall, in consideration therefor, pay to Landlord, as additional rent:

(i)    in the case of an assignment, an amount equal to fifty (50%) percent of all sums and other consideration paid to Tenant by the assignee for, or by reason of, such assignment, including all sums paid for the sale of Tenant's fixtures, leasehold improvements, equipment, furniture, furnishings, or other personal property less costs limited to transfer taxes, reasonable attorneys fees, and brokerage fees; and

(ii)    in the case of a sublease, any rents, additional charges, or other consideration payable under the sublease by the subtenant to Tenant that are in excess of the fixed rent and additional rent accruing during the term of the sublease in respect of the subleased space (at the rate per square foot payable by Tenant hereunder) pursuant to the terms hereof, including all sums paid for the sale or rental of Tenant's fixtures, leasehold improvements, equipment, furniture or other personal property.

The sums payable under this paragraph (i) shall be paid to Landlord as and when payable by the subtenant or assignee, as the case may be, to Tenant.

(j) If Tenant is a corporation, the provisions of paragraph (a) shall apply to a transfer (by one or more transferees) of a majority of the stock of Tenant, as if such transfer of a majority of the stock of Tenant were an assignment of this lease.

(k) The joint and several liability of Tenant and any immediate or remote successor in interest to Tenant, and the due performance of the obligations of this lease on Tenant's part to be performed or observed, shall not be discharged, released, or impaired in any respect by any agreement or stipulation made by Landlord extending the time of, or modifying any of the obligations of, this lease, or by any waiver or failure of Landlord to enforce any of the obligations of this lease.

**Schedule D**

**Cleaning Specifications**

# NIGHTLY

**General Offices:**
1. All hard-surfaced flooring to be swept using approved dust-down preparation.
2. Carpet sweep all carpets.
3. Hand dust and wipe clean all furniture, fixtures and window sills.
4. Empty and clean all waste receptacles and remove wastepaper.
5. Wash clean all water fountains and coolers.
6. Sweep all private stairways.

**Public Lavatories:**
1. Sweep and wash all floors, using proper disinfectants.
2. Wash and polish all mirrors, shelves, bright work and enameled surfaces.
3. Wash and disinfect all basins, bowls and urinals.
4. Wash all toilet seats.
5. Hand dust and clean all partitions, tile walls, dispensers and receptacles in lavatories and restrooms.
6. Empty paper receptacles and remove wastepaper.
7. Fill toilet tissue holders.
8. Empty and clean sanitary disposal receptacles.

# WEEKLY
1. Vacuum clean all carpeting and rugs.
2. Dust all door louvers and other ventilating louvers within a person's reach.
3. Wipe clean all brass and other bright work.

# QUARTERLY
High dust premises complete, including the following:
1. Dust all pictures, frames, charts, graphs and similar wall hangings not reached in nightly cleaning.
2. Dust clean all vertical surfaces, such as walls, partitions, doors, bucks and other surfaces not reached in nightly cleaning.
3. Dust all pipes, ventilating and air-conditioning louvers, ducts, high moldings and other high areas not reached in nightly cleaning.
4. Dust all Venetian blinds.

Wash exterior and interior of windows periodically, subject to weather conditions and requirements of law.

Schedule E

Furniture

- Reception: cube desk & leather chair

- Waiting area: 2 Wood & leather chairs & small magazine table

- Conference room: 1 large table, 7 leather chairs

- Fire extinguisher:

- IT room: Rack door electronics

- Pantry: SS microwave & refrigerator (no dishwasher)

- Open area: 6 tall cube stations, each w/ desk, cloth chair & illuminated cabinet shelves 1 large cabinet + 2 small cabinets

- 3 interior offices: (1)- desk, cloth chair & small cabinet (2)- desk, large cabinet & leather chair (3)- desk, large cabinet, leather chair & 2 small wood / leather chairs.

- 4 perimeter offices: (1)-3 desks, 1 leather chair 2 small coffee tables & 1 leather couch (2)- 1 desk, 1 large cabinet, 1 leather chair & 2 small cloth chairs (3)- 1 small round conference table & 4 cloth chairs (4)- 1 very large desk w/ cabinet, 1 leather chair, 2 cloth chairs & 1 small pedestal table.

- Each window has a standard shade (no black outs)