# EXHIBIT B

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**

**FOR THE COUNTY OF LANE**

| | |
|---|---|
| MARGARET HENDERSON, as Personal Representative of the Estate of N▮▮▮ G▮▮▮ H▮▮▮▮▮▮▮, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>BOY SCOUTS OF AMERICA; OREGON TRAIL COUNCIL, INC.; and CORVALLIS ELKS LODGE #1413, as chartering organization for BOY SCOUT TROOP 163,<br><br>Defendants. | Case No. 19-CV-39445<br><br>**AMENDED COMPLAINT**<br>(*Wrongful Death/Negligence*)<br><br>**Claim Not Subject to Mandatory Arbitration**<br><br>**Prayer Amount: 10,000,000.00**<br>**Filing Fee: $1,111**<br>**Fee Authority: ORS 21.160(1)(e)**<br><br>**Demand for Jury Trial** |

For Plaintiff's Complaint against Defendants Boy Scouts of America, Oregon Trail Council, Inc., and Corvallis Elks Lodge #1413, as chartering organization for Boy Scout Troop 163, Plaintiff alleges as follows:

**PARTIES**

1.

Plaintiff Margaret Henderson is the mother of N▮▮▮ G▮▮ H▮▮▮▮▮▮▮, Deceased, and is the duly appointed Personal Representative of the Estate of N▮▮▮ G▮▮ H▮▮▮▮▮▮▮, Deceased. She is a citizen and resident of Corvallis, Oregon, as was her son N▮▮▮.

////



1 - AMENDED COMPLAINT

2.

Defendant Boy Scouts of America ("BSA") is a domestic organization authorized to do business in Oregon.

3.

Defendant Oregon Trail Council, Inc. ("Oregon Trail Council") is an Oregon Corporation with its principal place of business in Eugene, Oregon.

4.

Defendant Corvallis Elks Lodge #1413, as chartering organization for Boy Scout Troop 163 ("Troop 163"), is sued in its assumed or common name.

## NATURE OF SUIT

5.

This is an action for wrongful death instituted by Plaintiff, the mother, legal guardian and duly appointed personal representative of the Estate of N▮▮ G▮▮ H▮▮▮▮. Plaintiff is a beneficiary and heir entitled to bring this action. Plaintiff has instituted this suit for damages for the wrongful death of N▮▮ G▮▮ H▮▮▮▮ that occurred on October 13, 2018 while he was hiking at Rosary Lake with his troop, Troop 163. Troop 163 was part of the Oregon Trail Council. All conditions precedent associated with this lawsuit have been performed or have occurred.

## FACTS FOR ALL CAUSES OF ACTION

6.

As described more specifically below, the tragedy giving rise to this litigation was primarily caused by the acts and omissions of the Defendants.

*BSA had the right to control the activities of the Oregon Trail Council*

7.

BSA grants charters to local councils to operate and conduct Boy Scout activities within geographic areas. Defendant Oregon Trail Council is one of the BSA's local councils. Oregon



2 - AMENDED COMPLAINT

Trail Council, like other local councils, serves as the "operational" arm of the BSA for a specific geographic region.

8.

The BSA has divided their bevy of councils into distinct regions. Each region is supervised by an employee of the BSA. According to public statements, these region-chiefs are constantly visiting councils to oversee the performance of each council.

9.

BSA has the right to control the planning for, execution of, and supervision associated with all Boy Scout "program" activities, including hiking, carried out by Oregon Trail Council. BSA operates, supervises, promotes, oversees, guides, sets standards for and establishes policies, protocols, procedures and guidelines for all scouting activities, including camping and hiking, carried out by Oregon Trail Council. BSA controls all training of and training requirements for all Scoutmasters, Assistant Scoutmasters, and adult leaders involved in hiking carried out by Oregon Trail Council.

10.

The BSA has strict eligibility requirements for all adult leadership and council and troop employees. The BSA approves all adult registration applications and has the power to revoke them. Under the BSA's Charter and Bylaws, the BSA has the right to control all registered adults, and BSA exercises this control. Moreover, the Boy Scouts of America Scouter Code of Conduct requires all adult leaders and council and camp employees to pledge to "respect and abide by the Rules and Regulations of the Boy Scouts of America, BSA policies and BSA-provided training."

11.

BSA publishes a Guide to Leader Training that governs the training of all Council Training Committees, District Training Committees and Council Staff. BSA also conducts a Train the Trainer program that teaches youth and adult trainers various training techniques and



3 - AMENDED COMPLAINT

1  skills. Thus, the adult leaders involved in the acts and omissions which led to the death of N▇
2  were trained or supposed to be trained by BSA.

3  12.

4  The training and quality of adult leaders and staff of the various councils is monitored
5  by the BSA in various ways. First, training metrics are reported online. These metrics are
6  reviewed by the national organization. The BSA has also instituted a "Journey to Excellence
7  Program," or JTE program, which assesses the performance of individual councils. The JTE
8  program encourages and rewards success and performance. Part of the success and performance
9  that the JTE program addresses is the number of and training of leadership. As part of the JTE
10 program, councils submit scorecards to the BSA.

11 13.

12 To be considered "trained" to serve as an adult volunteer for an individual council in any
13 capacity, the BSA has articulated various training requirements. For an adult to be considered
14 "trained" for various leadership positions within a council, additional requirements have been
15 articulated by the BSA. Leaders that take scouts on High Adventure activities are required by
16 BSA to be certified to lead the activity and the training to obtain the certification is controlled
17 by the BSA.

18 14.

19 The BSA's Program Hazard Analysis rules provide detailed procedures "used to
20 systematically identify, assess, and resolve hazards associated with program activities that
21 support the vision, mission and goals of the Boy Scouts of America."

22 15.

23 The BSA Guide to Safe Scouting contains detailed safety rules and procedures that must
24 be followed by all councils. The BSA requires that all scouting activities comply with the
25 "Sweet 16 of BSA Safety" and the BSA Youth Protection policy. The BSA "Trek Safely"
26 / / / /



LUVAAS COBB
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206
ATTORNEYS AT LAW

1 program contains detailed rules and regulations governing treks that are required to be followed
2 by all councils and troops.

3 16.

4 Numerous BSA safety rules require that every activity such as a hike or trek have at least
5 two adults (one at least 21 years of age) that lead the hike. Moreover, all such trips have
6 requirements in terms of the minimum number of participants, including two adult leaders.

7 17.

8 In short, at all relevant times, BSA had the right to control all aspects of Oregon Trial
9 Council and Troop 163. BSA specifically had the right to control all aspects of hiking activities,
10 including without limitation regulating the qualifications necessary to participate in a given hike,
11 the length and difficulty of a given hike, how to respond to any emergencies on a given hike, the
12 number of leaders on a given hike, the age of the leaders on a given hike, the training of the
13 leaders on a given hike, and the number of total participants in a given hike. BSA exercised this
14 right to control, and BSA exercised the right to control referenced throughout this Complaint.

15 *BSA had the right to control the activities of N\_\_\_'s local Boy Scout Troop 163*

16 18.

17 The Boy Scouts of America Scouter Code of Conduct requires all adult leaders to pledge
18 to "respect and abide by the Rules and Regulations of the Boy Scouts of America, BSA policies
19 and BSA-provided training."

20 19.

21 The BSA's Program Hazard Analysis rules provide detailed procedures "used to
22 systematically identify, assess, and resolve hazards associated with program activities that
23 support the vision, mission and goals of the Boy Scouts of America."

24 / / / /

25 / / / /

26

5 - AMENDED COMPLAINT



LUVAAS COBB
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206
ATTORNEYS AT LAW

20.

BSA grants charters to local troops to operate and conduct Boy Scout activities within geographic areas. BSA also has the right to control the training, planning, activities and functioning of the individual Boy Scout troops.

21.

BSA has the right to control every aspect of the individual Boy Scout troops and all scouting activities. In addition to activities referenced elsewhere in this Complaint, the BSA has the right to control whether, when, where and under what conditions individual Boy Scouts go hiking and camping. Similarly, they have the right to control the planning for, execution of, and supervision associated with Boy Scout "program" activities, including hiking, carried out by individual Boy Scout Troops and engaged in by individual scouts. BSA controls all training of and training requirements for all Scoutmasters, Assistant Scoutmasters, and adult leaders involved in hiking engaged by Boy Scout troops or members of troops.

22.

BSA operates, supervises, promotes, oversees, guides, sets standards for and establishes policies, protocols, procedures and guidelines for all scouting activities, including hiking, carried out by individual Boy Scout Troops or engaged in individual members of troops.

23.

Representatives of local councils, on behalf of the BSA, will routinely visit, supervise, counsel, and oversee the planned activities of and overall functioning of troops in its geographic region.

24.

The BSA has strict eligibility requirements for all adult membership and unit leadership. The BSA approves all adult registration and adult leadership applications and has the power to revoke them. Under the BSA's Charter and Bylaws, the BSA has the right to control all registered adults and unit leaders.



6 - AMENDED COMPLAINT

25.

The training and quality of adult leaders of individual troops is monitored by the BSA in various ways. First, training metrics for individual troops are reported online. These metrics are reviewed by the national organization. The BSA has also instituted a "Journey to Excellence Program," or JTE program, which assesses the performance of individuals troops. The JTE program encourages and rewards success and performance. Part of the success and performance that the JTE program addresses is the number of and training of leadership. As part of the JTE program, troops submit scorecards to the BSA.

26.

To be considered "trained" to serve as an adult volunteer for an individual troop in any capacity, the Boy Scout Defendants have articulated various training requirements. For an adult to be considered "trained" for various leadership positions within a troop, additional requirements have been articulated by the BSA. Leaders that take scouts on High Adventure activities are required to be certified to lead the activity.

27.

The BSA's Program Hazard Analysis rules provide detailed procedures "used to systematically identify, assess, and resolve hazards associated with program activities that support the vision, mission and goals of the Boy Scouts of America."

28.

The BSA Guide to Safe Scouting contains detailed safety rules and procedures that must be followed by all Boy Scout Troops. In addition, the BSA "Trek Safely" program contains detailed rules and regulations governing treks. Moreover, the "Sweet 16 of BSA Safety" guidelines apply to all scouting activities. BSA safety rules require that every hike have at least two adults that lead the hike and that all hikes have at least four scouts hiking, along with two leaders.

////



7 - AMENDED COMPLAINT

29.

In short, at all relevant times, BSA had the right to control all aspects of N▮▮'s local Boy Scout Troop 163. BSA specifically had the right to control all aspects of hiking activities undertaken by Troop 163, including without limitation regulating the qualifications necessary to participate in a given hike, the length and difficulty of a given hike, how to respond to emergencies on a given hike, the number of leaders on a given hike, the age of the leaders on a given hike, the training of the leaders on a given hike, the number of total participants in a given hike and the proper response to heat and humidity conditions that might affect a given hike. BSA not only had the right to control these things but they exercised the right.

### *N▮▮'s Hike*

30.

In the fall of 2018, N▮▮ accompanied other members of Troop 163 on a trip to Rosary Lakes in Klamath Falls, Oregon. On information and belief, there were eleven male youths and six adult male volunteers. On information and belief, none of the adults had proper medical, first aid or wilderness first aid training. The troop arrived in the Rosary Lakes area on Saturday, October 13, 2018, had plans to camp overnight, and return to the Corvallis area the next morning. While setting up the campsite, a group of boys including N▮▮, decided to go hiking.

31.

A single adult, Scout Master Lucas Turpin ("Turpin"), accompanied approximately eight juvenile scouts on their hike. On information and belief, the scouts intended to summit Pulpit Rock, a steep rock face above Rosary Lake.

32.

Turpin made it almost to the rock face of Pulpit Rock when he decided to return to camp, leaving the juvenile scouts with no adult supervision. As Turpin headed downhill to camp, the juvenile scouts continued their hike unsupervised. N▮▮ and Scout E▮▮▮▮ T▮▮ ("T▮▮") hiked toward the summit of Pulpit Rock. As they were nearing the summit, Turpin looked up

8 - AMENDED COMPLAINT

LUVAAS COBB
ATTORNEYS AT LAW
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206

from his position back towards camp and saw the boys. Rather than hike to the rock face to assist them, he simply yelled at them to come down.

33.

T▮ heard Turpin yell for them to come down. As a result he began trying to climb down from Pulpit Rock, but it was too steep. N▮ saw T▮ and arrived to try to help him find a path back down the rock face. As they descended the steep rock face, N▮ reached out and grabbed a rock to steady himself. The rock became dislodged and N▮ fell backwards off of the cliff face.

34.

After N▮ fell, several strangers came to his aid. They performed CPR on N▮ for more than an hour. Eventually a rescue helicopter arrived and lowered rescue personnel to the ground. They examined N▮ and determined that he was deceased. They were unable to retrieve his body until the next day due to weather conditions. N▮ was 17 years-old when he died.

**Plaintiff's Cause of Action: Wrongful Death/Negligence**

35.

Defendants, acting by and through their adult leaders, employees, borrowed employees, staff, representatives and/or agents were negligent in one or more of the following respects:

    a.    Allowing N▮ to go on a hike that was unreasonably dangerous;

    b.    Failing to warn N▮ of the dangers inherent in the hike;

    c.    Failing to adequately protect N▮ from the dangers inherent in the hike;

    d.    Failing to have adequate adult supervision on the hike;

    e.    Failing to have adult personnel properly trained in first aid or wilderness first aid on the hike;

    f.    Failing to properly supervise the hike;

    g.    Failing to assist N▮ and T▮ in coming down from the peak;

LUVAAS COBB
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206
ATTORNEYS AT LAW

h. Yelling at N▮▮ and T▮▮ to come down from the peak, causing them to begin a dangerous, unsupervised descent from the steep rock face;

i. Failing to provide proper assistance to N▮▮ after he fell.

j. Failing to adhere to and follow policies, procedures, protocols and guidelines established by local, state and national organizations, including those of the Boy Scouts;

k. Failing to provide adequate and proper supervision, instruction and training to local councils, troops and Scoutmasters;

l. Failing to have in place a proper or sufficient emergency action plan;

m. Failing to conduct a sufficient or proper Program Hazard Analysis;

n. Failing to follow or enforcing BSA policies, procedures, protocols and guidelines;

o. Having improper, nonexistent, or insufficient training;

p. Having improper, nonexistent, or insufficient supervision;

q. Failing to follow Trek Safely;

r. Failing to follow Youth Protection policy;

s. Failing to follow the Sweet 16 of BSA Safety; and

t. Failing to follow the two-deep leadership rule.

36.

The above acts and omissions of Defendants were committed by and through their employees, staff, agents and/or representatives acting within the scope of their employment or agency.

37.

As a result of the foregoing negligent acts and omissions of Defendants, N▮▮ H▮▮ sustained serious injuries that led to his death.

38.

As a result of the foregoing negligent acts and omissions of Defendants, N▮▮ H▮▮ suffered conscious pain and suffering prior to his death and Plaintiff, on behalf of his

10 - AMENDED COMPLAINT

LUVAAS COBB
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206
ATTORNEYS AT LAW

1  Estate and parents, is entitled to recover non-economic damages for N███'s disability, pain and
2  suffering during the period of time between injury to him and his death, in an amount not to
3  exceed $1,500,000.00.

4  39.

5  As a result of the foregoing acts and omissions of Defendants, Plaintiff, on behalf of his
6  Estate and parents, is also entitled to recover economic damages arising from N███'s death,
7  including reasonable charges necessarily incurred for doctor's services, burial services and
8  memorial services rendered for N███ and pecuniary loss to N███'s Estate, in an amount not
9  to exceed $500,000.00.

10  40.

11  As a further result of the foregoing negligent acts and omissions of Defendants, N███'s
12  parents have been deprived of his love, affection, society, and companionship for which they are
13  entitled to non-economic damages in an amount not to exceed $8,000,000.00.

14  41.

15  Plaintiff further reserves the right to move for punitive damages.

16  42.

17  This lawsuit is brought pursuant to the wrongful death provisions of ORS 30.020 *et, seq.*

18  43.

19  Plaintiff demands a jury trial in this matter.

20  **PRAYER**

21  WHEREFORE, Plaintiff prays for the following:

22  1.    Judgment against Defendants for non-economic damages relating to pain and
23  suffering sustained by N███ before his death in an amount not to exceed $1,500,000.00;

24  2.    Judgment against Defendants for economic damages arising from N███'s
25  death in an amount not to exceed $500,000.00;

26  / / / /

11 - AMENDED COMPLAINT

LUVAAS COBB
ATTORNEYS AT LAW
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206

1      3.      Judgment against Defendants for non-economic damages for his parents' loss of love, affection, society, and companionship from N█ in an amount not to exceed $8,000,000.00;

4. Plaintiff's costs and disbursements incurred herein;

5. Pre and post-judgment interest; and

6. All other relief to which he is entitled.

DATED this 29th day of October, 2019.

                                   LUVAAS COBB

Trial Attorney           By:    s/ George A. Burgott
                                         George A. Burgott, OSB No. 760346
                                         gburgott@luvaascobb.com

Trial Attorney           Eric D. Pearson, Texas State Bar No. 15690472
To Be Admitted Pro Hac Vice    eric@hop-law.com
                                 HEYGOOD, ORR & PEARSON
                                 6363 N. State Highway 161, Ste. 450
                                 Irving, Texas 75038
                                 (214) 237-9001 Telephone
                                 (214) 237-9002 Facsimile

                                 Of Attorneys for Plaintiff

12 - AMENDED COMPLAINT

LUVAAS COBB
ATTORNEYS AT LAW
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206

CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October, 2019, I served a true and correct copy of the attached AMENDED COMPLAINT, certified by me as such, by depositing the same in the U.S. Mail in a sealed envelope, postage prepaid, addressed to the following:

Chad M. Colton
Markowitz Herbold PC
1455 SW Broadway, Suite 1900
Portland, OR 97201

LUVAAS COBB

By:   s/ George A. Burgott
George A. Burgott, OSB No. 760346
gburgott@luvaascobb.com
Attorneys for Plaintiff

1 - CERTIFICATE OF SERVICE

LUVAAS COBB
777 High Street, Suite 300
Post Office Box 10747
Eugene, OR 97440-2747
Phone: 541-484-9292
Fax: 541-343-1206
ATTORNEYS AT LAW