# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: September 9, 2020, at 10:00 a.m. (ET)<br>Objection Deadline: September 2, 2020, at 4:00 p.m. (ET) |

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF QUINN EMANUEL URQUHART & SULLIVAN, LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS AND THE DEBTORS-IN-POSSESSION, *NUNC PRO TUNC* TO AUGUST 1, 2020

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are the debtors and debtors-in-possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this application (this "Application"), pursuant to section 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1, 2016-1, and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to retain and employ Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") as special litigation counsel for the Debtors, effective as of August 1, 2020. In support of this Application, the Debtors submit the declaration of Patricia B. Tomasco, a shareholder of Quinn Emanuel, attached hereto as **Exhibit B** (the "Tomasco Declaration"), and the declaration of Steven

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

P. McGowan, Secretary and General Counsel of the BSA, attached hereto as **Exhibit C** (the "McGowan Declaration"). In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1.  The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

2.  On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code. On April 24, 2020, the Court appointed James L. Patton, Jr. as the legal representative of future abuse claimants (the "Future Claimants' Representative") pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

3.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meeting of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of an final order or judgement by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herein

consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested in this Application are section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1, 2016-1, and 2016-2.

## BACKGROUND OF THE DEBTORS

5. Additional information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (ECF No. 16) and the Debtors' Informational Brief (ECF No. 4).

## RELIEF REQUESTED

6. By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Quinn Emanuel as special litigation counsel for the Debtors, *nunc pro tunc* to August 1, 2020.

## QUINN EMANUEL'S QUALIFICATIONS AND SCOPE OF SERVICES

7. Quinn Emanuel has extensive experience in, among other areas, litigation, financial restructuring, corporate governance, and corporate finance and transactions.

8. Quinn Emanuel lawyers have significant experience representing and advising the spectrum of constituents in chapter 11 cases and related proceedings, including debtors, committees, secured and unsecured creditors, independent or disinterested directors, special committees, shareholders, and other parties in interest.

9. The Debtors seek to retain Quinn Emanuel as special litigation counsel because of Quinn Emanuel's extensive experience in representing the BSA in litigation with the Girl Scouts of the United States of America ("GSUSA"). On November 6, 2018, GSUSA filed a complaint in the United States District Court for the Southern District of New York, Case No. 18-cv-10287, against the BSA, alleging trademark infringement, dilution and tortious interference (the "Trademark Action"). The BSA retained Quinn Emanuel in December 2018 as legal counsel in the Trademark Action.

10. On February 18, 2020, the Debtors filed these chapter 11 cases under chapter 11 of the Bankruptcy Code, staying the Trademark Action.

11. On March 10, 2020, GSUSA filed a motion for relief from stay to resume prosecution of the District Court Case (ECF No. 155) (the "Lift Stay Motion"), and on April 24, 2020, the Bankruptcy Court entered an order granting limited relief from the stay (ECF. No. 485) (the "Lift Stay Order"). Pursuant to the Lift Stay Order, the Initial Stay Lift Period (as defined in the Lift Stay Motion) ended on July 22, 2020. The BSA and GSUSA were unable to reach a resolution of the Trademark Action, and on July 23, 2020, the automatic stay was lifted to permit the Trademark Action to proceed. A scheduling conference is set for October 23, 2020, in the Trademark Action.

12. Prior to the expiration of the Initial Lift Stay Period, Quinn Emanuel was originally retained as a Tier 2 ordinary course professional in these chapter 11 cases pursuant to the *Order (I) Authorizing the Debtors to Retain and Compensate Certain Professionals Used in the Ordinary Course of Their Non-Profit Operations, Nunc Pro Tunc to the Petition Date* (ECF No. 354), but was later moved to a Tier 1 ordinary course professional pursuant to the *Notice of Revised List of Ordinary Course Professionals* (ECF No. 559) ( together, the "OCP Orders").

13. Given the expiration of the Initial Stay Lift Period and the resumption of the Trademark Action, the Debtors anticipate that Quinn Emanuel's fees may exceed the Tier 1 OCP Cap of $150,000 per month on average over a rolling three-month period on a go-forward basis.

14. In providing representation of the BSA in the Trademark Action since December 2018, Quinn Emanuel's professionals have worked closely with the BSA's management and have gained significant institutional knowledge about the BSA's organization and non-profit operations and related matters.  Quinn Emanuel is familiar with all aspects of the Trademark Action, including all of the factual and legal issues related to the claims asserted therein, the defenses thereto, and the Debtors' legal needs in connection with this action.  Accordingly, Quinn Emanuel is both well qualified and uniquely able to represent the Debtors with respect to the Trademark Action in a cost-effective, efficient and timely manner.

15. The Debtors may also request that Quinn Emanuel undertake specific matters beyond the scope of the responsibilities set forth above.  Should Quinn Emanuel agree to undertake any such specific matters, the Debtors further request authority in this Application to employ Quinn Emanuel for such matters without further order of this Court.

16. The Debtors require knowledgeable counsel to render these critical professional services, and, as described in the Tomasco Declaration, Quinn Emanuel has substantial expertise in these areas as well as extensive historical knowledge of the factual and legal issues underlying the Trademark Action.  Subject to the Court's approval of this Application, Quinn Emanuel is willing to serve as the Debtors' special litigation counsel and to perform the services described above.

**NO DUPLICATION OF SERVICES**

17.     The Debtors have retained various other restructuring professionals and counsel in these chapter 11 cases for particular purposes.  The Debtors, Quinn Emanuel, and such other counsel have fully discussed Quinn Emanuel's role in these chapter 11 cases so as to avoid duplication of work.  Rather than resulting in any extra expense to the Debtors' estates, it is anticipated that the efficient coordination of efforts of the Debtors' attorneys and other professionals will promote the efficient prosecution and effective administration of these chapter 11 cases.  Quinn Emanuel has agreed to make reasonable efforts to avoid duplication of services by any other professionals employed by the Debtors.

**PROFESSIONAL COMPENSATION**

18.     Quinn Emanuel intends to apply to the Court for allowance of compensation earned for professional services and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  Quinn Emanuel will also make a reasonable effort to comply with the requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "US Trustee Guidelines"), both in connection with this Application and any applications for compensation and reimbursement of expenses to be filed by Quinn Emanuel in these chapter 11 cases.

19.     Quinn Emanuel will charge the Debtors for its legal services on an hourly basis at its ordinary and customary rates in effect on the date that such services are rendered and for reimbursement of all costs and expenses incurred by Quinn Emanuel in connection with its

representation of the Debtors. The Debtors are seeking to employ and retain Quinn Emanuel at the same hourly rates that they billed the Debtors pre-petition in the Trademark Action, which includes a 15% discount off of partner billing rates and a 10% discount on all associate and of-counsel billing rates for the life of the engagement. Quinn Emanuel's billing rates for attorneys who may work on this matter currently range from $535.50 to $1,317.50 per hour for attorneys and from $330.00 to $390.00 for paraprofessionals. The Debtors believe that these rates are consistent with market rates for comparable services, and have been informed that Quinn Emanuel sets its hourly rates on an annual basis. These hourly rates are subject to periodic adjustment to reflect economic and other conditions. The following attorneys are expected to have primary responsibility for providing services to the Debtors (discounted hourly billing rates noted in parentheses): Rachel Kassabian ($1,062.50); Margret Caruso ($1,062.50); and Todd Anten ($892.50).

20. Quinn Emanuel's hourly rates are set at a level designed to fairly compensate Quinn Emanuel for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. These hourly rates vary with the experience and seniority of each professional and are subject to periodic adjustments to reflect economic and other conditions, with the hourly rate charged being the hourly rate in effect on the date the services are performed.

21. Quinn Emanuel represented the Debtors before the Petition Date using the hourly rates listed above. Moreover, as noted in the Tomasco Declaration, Quinn Emanuel's rate structure is appropriate and not significantly different from the rates that Quinn Emanuel charges for other representations or the rates that other comparable counsel would charge to perform substantially similar services.

22. In addition to the hourly rates set forth above, Quinn Emanuel customarily charges its clients for the variable costs and expenses incurred in connection with its services, including mail and express mail charges, courier charges, Federal Express charges, photocopying charges, travel expenses, computerized research cost, and charges and fees of outside vendors, consultants, and service providers.

23. Consistent with Local Rule 2016-2(e), Quinn Emanuel will charge no more than $0.10 per page for standard black and white duplication services in these chapter 11 cases. Quinn Emanuel does not charge its clients to receive and send facsimiles.

24. The Debtors recognize that they have the responsibility to closely monitor the billing practices of their counsel to ensure that the fees and expenses paid by the estates remain consistent with the Debtors' expectations and the exigencies of these chapter 11 cases. The Debtors will review and monitor the invoices that Quinn Emanuel submits.

**COMPENSATION RECEIVED BY QUINN EMANUEL FROM THE DEBTORS**

25. As set forth in the Tomasco Declaration, Quinn Emanuel's fees and expenses are currently paid for by the BSA and two different insurance companies: RSUI Indemnity Company and Beazley USA Services Inc. (together, the "Insurance Companies"). During the ninety days immediately preceding the Petition Date, Quinn Emanuel received payments and retainers totaling $2,115,600.55, as follows: (i) $750,000.00; (ii) $750,000.00; and (iii) $615,600.55. Quinn Emanuel held a $750,000.00 retainer on February 18, 2020, and applied the retainer against invoices. The remainder of the retainer held by Quinn Emanuel will be allocated to Quinn Emanuel's postpetition fees and expenses as such postpetition fees and expenses are allowed against the Debtors' estates, including pursuant to the interim compensation procedures approved by this Court.

26.  In accordance with section 504 of the Bankruptcy Code, Quinn Emanuel has neither shared nor agreed to share (a) any compensation or reimbursement it has received or may receive with another person, other than the partners and associates associated with Quinn Emanuel or (b) any compensation or reimbursement another person has received or may receive.

## NO ADVERSE INTEREST

27.  Except as set forth in the Tomasco Declaration, Quinn Emanuel, to the best of the Debtors' knowledge, information, and belief, does not represent or hold any interest adverse to the Debtors or their estates with respect to the matters on which Quinn Emanuel is to be employed. Quinn Emanuel has agreed with the Debtors not to represent any such creditors or parties-in-interest in these chapter 11 cases in any matters adverse to the Debtors. Additionally, Quinn Emanuel has informed the Debtors that it will conduct an ongoing review of its files to ensure that it continues to neither represent nor hold any interests adverse to the Debtors or their estates with respect to the matters on which Quinn Emanuel is to be employed pursuant to this Application. To the best of the Debtors' knowledge, as disclosed in the Tomasco Declaration, (a) Quinn Emanuel is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Tomasco Declaration.[2]

## BASIS FOR RELIEF

28.  Section 327(e) of the Bankruptcy Code provides that a debtor subject to court approval:

---

[2] This Application is filed under section 327(e) of the Bankruptcy Code, but out of an abundance of caution, the Debtors submit that Quinn Emanuel is a "disinterested person" as required by section 327(a) of the Bankruptcy Code.

> [M]ay employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

29. Moreover, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case. 11 U.S.C. § 1107(b).

30. Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a). *See Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

31. Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel . . . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005). In general, however, subject to the requirements of sections 327 and 1107, a debtor-in-possession is entitled to the counsel of its choosing. *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

32. Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the

> professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employee in the office of the United States trustee.

Fed. R. Bankr. P. 2014. Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file a "supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L.R. 2014-1.

33. For all of the reasons stated above and in the Declarations, the Debtors submit that the retention and employment of Quinn Emanuel as special litigation counsel is in the best interests of their estates and is necessary to the successful prosecution of these chapter 11 cases. Based on both its extensive experience and expertise and its representation of the Debtors prior to the Petition Date, Quinn Emanuel is both well-qualified and uniquely able to represent the Debtors with respect to the Trademark Action in an efficient and expert manner. Accordingly, the Debtors submit that the retention of Quinn Emanuel is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

## **NOTICE**

34. Notice of this Application will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B, and 2012; and (viii) any party that has requested notice

pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief the Court may deem just and proper.

Dated: August 19, 2020
Wilmington, Delaware

Respectfully submitted,

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*