**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11 Case No. 20-10343 (LSS) (Jointly Administered) |
|---|---|

**DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND ¶ 27 OF THE BAR DATE ORDER FOR ENTRY OF AN ORDER (I) SUPPLEMENTING THE BAR DATE ORDER AND (II) GRANTING RELATED RELIEF**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to section 105(a) of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and paragraph 27 of the Bar Date Order,[2] for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Supplemental Order"), (i) supplementing the Bar Date Order to prevent potential Sexual Abuse Survivors from being misled or confused regarding the Bar Date and claims process and (ii) granting related relief. In support of this Motion, the Debtors submit the *Declaration of Evan Roberts in Support of the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All references herein to the "Bar Date Order" are to the *Order, Pursuant To 11 U.S.C. § 502(B)(9), Bankruptcy Rules 2002 And 3003(C)(3), and Local Rules 2002-1(E), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [D.I. 695], entered by the United States Bankruptcy Court for the District of Delaware (the "Court") on May 26, 2020. Capitalized terms used but not defined herein shall have the meanings set forth in the Bar Date Order or the related motion [D.I. 18].

*¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* (the "Roberts Declaration"), attached hereto as **Exhibit B**, and the *Declaration of Shannon R. Wheatman, Ph.D. in Support of the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* (the "Wheatman Declaration"), attached hereto as **Exhibit C**. In further support of this Motion, the Debtors respectfully state as follows:

**INTRODUCTION**

1. This Court entered the Bar Date Order on May 26, 2020. In that Order, the Court approved the content of communications that would be directed to potential Sexual Abuse Survivors, among other things. *See* D.I. 695. The Bar Date Order followed extensive negotiations among the Debtors, the official committee of tort claimants (the "Tort Claimants' Committee"), the official committee of unsecured creditors (the "Creditors' Committee"), the legal representative of future sexual abuse survivors (the "Future Claimants' Representative"), the United States Trustee for the District of Delaware (the "U.S. Trustee"), and certain of the Debtors' insurers, and a lengthy, contested hearing before the Court to ensure that the communications to potential Sexual Abuse Survivors were clear, accurate, impartial, informative, and sensitive to the impact such communications could have on Sexual Abuse Survivors. Indeed, before entering the Bar Date Order, the Court heard argument for nearly three hours from various constituencies and testimony from experts on the claims noticing processes in the context of Sexual Abuse Claims, including regarding particular words to be used (or not used) in the notices. *See generally* May 18, 2002 Hr'g Tr., D.I. 675. The Court specifically credited the testimony of the Tort Claimants' Committee's expert, Jon R. Conte, Ph.D, on how best to balance the competing interests of

gathering information, encouraging abuse survivors to come forward, and providing helpful but not overwhelming or unnecessary information to potential claimants. *Id.* at 121:12–122:9.

2. In the wake of the entry of the Bar Date Order, the Debtors have proceeded with the multimillion-dollar notification process for Sexual Abuse Survivors mandated by the Bar Date Order, carefully following the language approved by the Court. At the same time, however, certain law firms following the Debtors' chapter 11 proceedings, including at least one that represents members of the Tort Claimants' Committee and the Coalition of Abused Scouts for Justice (the "Coalition"), have engaged in their own advertising campaigns to try to solicit Sexual Abuse Survivors. To date, more than 10,999 television spots related to Sexual Abuse Claims against the BSA in these chapter 11 cases have aired. As described further below, many of these advertisements contain false and misleading statements and are inconsistent with the content approved by the Court in the Bar Date Order.

3. For example, several of these ads state unequivocally that survivors can file claims *anonymously*. *See e.g.*, Roberts Decl. at Exs. A-1, C-2, D, E, I, L, R; *see also* Wheatman Decl. at ¶ 7. This is false: while the Court has put in place mechanisms for keeping the identity of Sexual Abuse Survivors *confidential*, claimants are required to provide their names and other identifying information in their Sexual Abuse Survivor Proofs of Claim. Several of the ads falsely assert that financial compensation for Sexual Abuse Survivors is "ensured" or that there is "significant" or "substantial" compensation available—*see e.g.*, Roberts Decl. at Exs. A-1, C-1, C-2, E, F-1, F-2, I, L, N, P, R; *see also* Wheatman Decl. at ¶ 7—ignoring the defenses the Debtors may have to these claims and the inherent uncertainties of this bankruptcy proceeding. Others falsely state that "a Victims Compensation Fund is being set up that may be worth over $1.5 billion," when no fund or trust has been approved and the value of any trust is as yet entirely undetermined. *See e.g.*,

Roberts Decl. at Exs. B-1–B-3, C-1–C-5, I, K, L, M, N, O, R; *see also* Wheatman Decl. at ¶ 7. Some ads misleadingly suggest that the perpetrator must have been a Scout leader, which is inconsistent with the definition of a Sexual Abuse Claim in the Court-approved notices. *See e.g.*, Roberts Decl. at Exs. B-1, D, E, F-2, H, I, J-3–J-5, L, P, R; *see also* Wheatman Decl. at ¶ 7. Many ads misleadingly suggest that Sexual Abuse Survivors need to contact a lawyer or call a hotline in order to submit claims, *see e.g.*, Roberts Decl. at Exs. A-1, B-1, B-2, C-2–C-5, E, F-2, F-3, H, J-1–J-5, K, L, M, O, P, Q, R, which not only is untrue, but undermines the parties' and the Court's efforts to craft a Sexual Abuse Proof of Claim Form that is clear to laypersons, free of unnecessary legalese, and does not require the extra hurdle of Sexual Abuse Survivors having to retain or consult with counsel. *See* Wheatman Decl. at ¶ 8. And several ads are misleading or confusing as to the deadline for filing Sexual Abuse Proofs of Claim. *See e.g.*, Roberts Decl. at Exs. A-1, A-2, C-1–C-5, E, F-2, G, H, I, J-1–J-5, L, M, N, P, Q, R; *see also* Wheatman Decl. at ¶ 7.

4. These advertising campaigns create a substantial risk of misleading and confusing Sexual Abuse Survivors and the general public, and interfering with the carefully crafted notification process approved by the Court and carried out by the Debtors at great expense. Further, the ads' false promises of recovery and references to $1.5 billion of funds are likely to encourage fraudulent claims, imposing additional burdens on the Debtors and complicating the mediation process by creating increased uncertainty around the universe of valid Sexual Abuse Claims—the opposite of the goal of the bar date process.[3]

[3] In addition, the inflammatory ads—many of which also contain false and misleading statements regarding the BSA, including, for example, that BSA has engaged in a "coverup" and asserting that the BSA has "repeatedly tried to conceal evidence" and "lie" to the public, along with references to the BSA's "secret files," *see e.g.*, Roberts Decl. at Exs. B-1, D—threaten to damage the reputation, brand and goodwill of the BSA organization in violation of the automatic stay. The automatic stay not only prohibits harassing communications, but it also protects a debtor and other credits against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §§ 362(a)(3), (a)(6); *see also In re Inslaw*, 76 B.R. 224, 228 (Bankr. D.D.C. 1987). Property of the estate includes intangible assets such as a debtor's reputation, goodwill, trademarks, brand and customer lists. H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 175-76, *reprinted in* 1978 U.S.C.C.A.N. 5963,

5. A widespread advertising campaign by plaintiffs' firms directed at potential Sexual Abuse Survivors, running alongside the Court-approved notices being issued by the Debtors in accordance with the noticing plan approved in the Bar Date Order, was not contemplated by the Bar Date Order. It is essential that Sexual Abuse Survivors' decisions as to whether, when, and how to file claims in this bankruptcy proceeding and protect their rights be based on complete and accurate information. Indeed, it is for this reason that this Court is empowered to oversee the notice process and safeguard potential Sexual Abuse Survivors from unauthorized and misleading communications. *E.g.*, Fed. R. Bankr. P. 2002(a)(7), 2002(m), 9007. It is also essential that the millions of dollars in estate assets being spent by the Debtors to comply with the Bar Date Order's notice provisions not be spent in vain: the false and misleading statements in the competing ads could derail the entire bar date notice process by causing justifiable confusion on the part of Sexual Abuse Survivors.[4]

6. The Court accordingly should supplement the Bar Date Order to provide the following, as set forth in the Proposed Supplemental Order attached hereto as **Exhibit A**:

> For the avoidance of doubt, the General Bar Date Notice, the Abuse Claims Bar Date Notice, the Abuse Claims Publication Notice, the Abuse Claims Email Notice, and the Abuse Claims TV Spot, attached to this Order as **Exhibits 1, 2, 3, 4,** and **5** respectively, and the statements contained therein, are the only notices and statements approved and authorized by the Court to be published, disseminated, or otherwise directed to potential Claimants, including potential Sexual Abuse Survivors, to provide notice of the Bar Dates and the other matters described therein. No other notice or solicitation to submit a Sexual Abuse Survivor Proof of Claim Form shall be provided without prior authorization of the Debtors or the Court.

6136. The Debtors reserve all rights to bring actions based on violations of the automatic stay and/or any other provisions of the Bankruptcy Code or applicable law.

[4] In the event the Court determines that corrective notices are necessary, those costs should be borne by the law firms directing the ad campaigns and not by the Debtors.

**STATUS OF CASES AND JURISDICTION**

7. The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

8. On March 5, 2020, the U.S. Trustee appointed the Tort Claimants' Committee and the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code. On April 24, 2020, the Court appointed James L. Patton, Jr. as the Future Claimants' Representative pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code. On July 24, 2020, the Coalition filed a notice of appearance in these chapter 11 cases pursuant to section 1109(b) of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

9. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The statutory bases for the relief requested in this Motion are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 2002.

## BACKGROUND OF THE DEBTORS

11. Information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 16] and the *Debtors' Informational Brief* [D.I. 4].

## THE BAR DATE ORDER

12. Prior to the Petition Date, the BSA had been named "in numerous lawsuits related to historical acts of sexual abuse in its programs." D.I. 4 at 3. Although the Debtors had attempted to resolve sexual abuse claims, piecemeal tort litigation across the country was financially unsustainable for the organization, and continuing the process risked "inconsistent judicial outcomes and inequitable treatment of victims." *Id.* at 6. The Debtors accordingly commenced these chapter 11 cases "to achieve dual objectives: (a) timely and equitably compensating victims of abuse in Scouting and (b) ensuring that the Debtors emerge from bankruptcy with the ability to continue its vital charitable mission." *Id.* at 6–7.

13. On the Petition Date, the Debtors filed a motion requesting that this Court (a) set a deadline for the filing of claims against the Debtors (the "Bar Date"), (b) establish the form and manner of notice to be given to potential claimants, and (c) approve procedures for providing notice to abuse victims. D.I. 18 (the "Bar Date Motion"). The Tort Claimants' Committee agreed that a bar date was necessary to allow the parties "to understand the body of claims that are out there" in order to "proceed with respect to the mediation" and ultimate resolution of claims and distributions to claimants under a confirmed plan of reorganization. D.I. 675 at 64:14-24.

14. The Debtors thus requested that a bar date be set, and proposed procedures for confidential submission of sexual abuse claims. D.I. 18 at ¶ 17, Exs. A, B-1, C-1, D. The Debtors indicated, however, that they intended to consult with the Tort Claimants' Committee and other

constituents before submitting a proposed plan for giving notice to Sexual Abuse Survivors, or a proposed proof of claim form that Sexual Abuse Survivors would be required to submit. *Id.* at ¶ 19. The Debtors took these additional steps in light of the fact that the claims involved sexual abuse—most of which had occurred decades earlier, before the BSA had implemented more stringent practices to prevent abuse—as well as the nature of the evidence that would be relevant to these claims, and the sensitivity around reaching out to potential sexual abuse survivors. As counsel for the Debtors explained at the hearing, the unique circumstances of this case required "an extraordinary effort for an extraordinary notice program." D.I. 675, 31:25-32:1. Accordingly, the Debtors indicated that they would, well in advance of any bar date hearing, supplement the Bar Date Motion with a proposed Supplemental Notice Plan and Sexual Abuse Survivor Proof of Claim Form. D.I. 18 at ¶ 19; *see also id.* at ¶ 7g n.5.

15. Over the next several weeks, the Debtors worked closely with Shannon Wheatman, Ph.D., one of the foremost experts in the area of plain-language legal noticing, to develop a notice program to reach both known and unknown sexual abuse survivors. During April 2020, the Debtors presented their proposed noticing program to the official committees in these chapter 11 cases. D.I. 675 at 28:22-24.

16. The Debtors filed the promised supplement to the Bar Date Motion on May 4, 2020. D.I. 557. The Debtors proposed in the Bar Date Motion and Supplemental Notice Plan to send notice by first class mail to more than one thousand known claimants, plus email notifications "anticipated to reach over 10 million potential claimants," including current and former Scouts, parents, and volunteers. D.I. 557-1 at ¶ 3. To further reach unknown claimants, the Debtors proposed to engage in an extensive media program, "estimated to reach approximately 95.9% of Men 50+ . . . , the primary target audience of potential claimants, with an average frequency of 6.5

times in the United States." *Id.* at ¶ 4. The total estimated cost of this "extraordinary" notice plan was $6.8 million. D.I. 556 ¶ 5. The supplement to the Debtors' Bar Date Motion also included a proposed Sexual Abuse Survivor Proof of Claim Form, D.I. 557-9, as well as proposed notices directed to Sexual Abuse Survivors, D.I. 557-6, 557-7, 557-8, and a script for a TV ad.

17. The proposed notices directed to Sexual Abuse Survivors were drafted to provide accurate and easy to understand information to Sexual Abuse Survivors. Thus, the proposed notices provided information regarding who should file a Sexual Abuse Claim and a definition of "Sexual Abuse." D.I. 556-7, 556-8. The proposed notices also included information regarding when and how a Sexual Abuse Claim should be filed and the potential consequences of not filing a timely claim. *Id.* In addition, the notices stated that if a Sexual Abuse Survivor's claim was approved, he "*may* receive money from the bankruptcy." *Id.* (emphasis added). And further, the notices provided that a Sexual Abuse Survivor's "information will be kept *confidential*"—*not* that the claimant would remain anonymous. *Id.* (emphasis added).

18. The Tort Claimants' Committee filed an Objection to the Debtors' Bar Date Motion on May 11, 2020. D.I. 601. In addition to objecting to the bar date itself and the Sexual Abuse Survivor Proof of Claim Form, the Tort Claimants' Committee submitted its own proposed Notice of Deadline for Filing Sexual Abuse Claims, D.I. 601-2, Official Approved Notice from Bankruptcy Court, D.I. 601-3, email notice D.I. 601-4, and 30 Second TV Script, D.I. 601-5. The Tort Claimants' Committee emphasized in its Objection that the notices to Sexual Abuse Survivors should be free of "unnecessary information," which "may be confusing," and should be "clear and unambiguous." D.I. 601 at 8-9. The Tort Claimants' Committee specifically objected to the Debtors' Sexual Abuse Claims Bar Date Notices as containing extraneous background information regarding the Debtors' restructuring and a potential chapter 11 plan.

19. Three days later, after discussions with the Tort Claimants' Committee and other constituents, the Debtors filed a revised Sexual Abuse Survivor Proof of Claim Form. D.I. 630-1 at ¶ 11 (noting that the Debtors had "substantially revised the Sexual Abuse Survivor Proof of Claim Form in an effort to resolve many of the Tort Claimants' Committee's objections, while also taking into account the informal comments of certain other constituencies"). The Debtors reiterated that they believed their "plain language" sexual abuse claims bar date notices were appropriate, and had been drafted with the assistance of Dr. Wheatman. *Id.* at ¶ 17.

20. The Bar Date Order—including the notices to Sexual Abuse Survivors—continued to be negotiated at length throughout the days leading up to the Bar Date Hearing, which was scheduled for May 18, 2020. D.I. 675 at 31:12-32:1. The Debtors submitted another revised proposed Bar Date Order early on the morning of the Bar Date Hearing. D.I. 667. This revised proposed Bar Date Order included substantial revisions to the notices to Sexual Abuse Survivors, including changes to resolve the Tort Claimants' Committee's objections. *See* 667-2 at 32–40.

21. At the hearing, no one, including the Tort Claimants' Committee, objected to or raised any concerns regarding the extensive abuse survivor notice program designed by Dr. Wheatman. *See* D.I. 675 at 32:16-18. The Court heard testimony from the Tort Claimants' Committee's expert, Dr. Conte, however, related to communications with abuse survivors generally. *Id.* at 16:12–25:12. And the parties debated specific language in the proposed notices, including, in particular, the long-form notice. The Tort Claimants' Committee raised concerns regarding whether the notices made clear that individuals who believe they have claims against local councils or other organizations needed to take additional legal action to preserve those claims, which concerns the Debtors agreed to work with the Committee to resolve. *Id.* at 88:9–89:2.

22. On May 26, 2020, the Court entered the Bar Date Order, which approved the form and content of the Sexual Abuse Claim Notices and the extensive notice program, and concluded that "*no other or further notice shall be required*." D.I. 695 at ¶ 19 (emphasis added).

23. The Bar Date Order also provided that the Debtors "shall provide drafts of the internet, television, print, radio, and other copy created by the Debtors to implement the Supplemental Notice Plan to counsel" to the Tort Claimants' Committee and Future Claimants' Representative in advance of publication. *Id.* at ¶ 20. The Bar Date Order did not contain a reciprocal obligation for anyone else to provide draft copy to the Debtors (or the Court) in advance of publication. The reason for that is simple: no one contemplated a parallel "noticing" scheme to Sexual Abuse Survivors by anyone other than the Debtors. In none of its filings before the Court related to the Bar Date Order, nor at the hours-long Bar Date Hearing, did anyone advise the Court that law firms—including law firms representing members of the Tort Claimants' Committee and Coalition—intended to engage in their own advertising to Sexual Abuse Survivors. Nor did the Tort Claimants' Committee or the Coalition ever subsequently bring to the Court's attention that law firms were going to advertise to Sexual Abuse Survivors with content different from that extensively negotiated by the parties and approved by the Court in the Bar Date Order. And none of the law firms provided advance copy of their ads to the Debtors, the Court, or any other constituent in these chapter 11 cases.

24. The Bar Date Order provides that, "This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this . . . Order." D.I. 695 at ¶ 27.

**THE FALSE, MISLEADING, AND CONFUSING ADVERTISING CAMPAIGNS DIRECTED TO POTENTIAL SEXUAL ABUSE SURVIVORS**

25. In July 2020—shortly before its own TV, radio, internet and print notice program was set to launch—the Debtors learned that certain law firms seeking to represent survivors of sexual abuse, who in certain cases may also represent members of the Tort Claimants' Committee and the Coalition, were engaged in extensive advertising campaigns to solicit sexual abuse claims against the BSA. These ad campaigns include video ads on the internet, ads on TV, radio spots, and "infomercials" ranging from five minutes to at least thirty minutes in length. *See* Roberts Decl. at ¶ 4. The ads have appeared in multiple TV spots, including during episodes of *Law & Order*, during movies on the Sundance TV channel, during *The Three Stooges* on AMC, and during an NBA game on NBA TV, among other programs and channels. *Id.*

26. The advertisements and "infomercials" contain numerous false and misleading statements, are inconsistent with the messaging mandated by the Bar Date Order, and are confusing to potential Sexual Abuse Survivors and the general public.

27. For example, an infomercial sponsored by Abused in Scouting contains a series of false and misleading statements, and information contrary to the information the Court approved to be provided to Sexual Abuse Survivors in the Bar Date Order:

a. The infomercial repeatedly suggests that Sexual Abuse Survivors need to partner with Abused in Scouting in order to submit a claim. *See* Roberts Decl. at Ex. A-1 ("You need to contact us."); *id.* ("I have seen nothing in my dealings with them to lead me to believe that anything else would happen if you were to try to go alone with these guys. I think it's a terrible idea. You need someone advocating for you."); *id.* ("You need to join Abused in Scouting."). This is false. Sexual Abuse Survivors do not need

to retain Abused in Scouting in order to file a Sexual Abuse Survivor Proof of Claim, and it is misleading to suggest that Sexual Abuse Survivors have no chance at recovery unless they are represented by Abused in Scouting. *See* Wheatman Decl. at ¶ 8.

b. The infomercial states: "You can remain anonymous." Roberts Decl. at Ex. A-1. This is false and misleading as to what is necessary in order to submit a Sexual Abuse Survivor Proof of Claim. While the Bar Date Order contains a "Confidentiality Protocol," *see* D.I. 695 at ¶ 7, it does not provide for "John Doe" or anonymous proofs of claim. For this reason, the Court approved Notice (correctly) provides that Sexual Abuse Survivor information "will be kept private." D.I. 695-3.

c. The infomercial contains misleading information regarding the Bar Date. The infomercial states: "If you're a man who was abused in the Boy Scouts and you wait until after November 16th and decide, I want to stand up for my rights now – well, guess what? The Boy Scouts of America have taken that from you, too." Roberts Decl. at Ex. A-1. In contrast, the notice approved by the Court provides the following accurate, factual, and impartial information:

> You should file a claim using the Sexual Abuse Survivor Proof of Claim by **November 16, 2020 at 5:00 p.m. (Eastern Time). If you do not file a timely Sexual Abuse Claim, you may lose rights against BSA, BSA Local Councils or organizations that sponsored your troop or pack, including any right to compensation.** Only BSA is in bankruptcy. If you have a claim against the BSA Local Councils or other organizations, you must take

> additional legal action to preserve and pursue your rights.

D.I. 695-3 (emphasis added). At the hearing, the Tort Claimants' Committee emphasized the importance of the final sentence in this notice. *See* D.I. 675 at 84:19-89:2. Yet the Abused in Scouting infomercial contains none of this information.

d. The infomercial states: "The BSA has declared bankruptcy, *which will ensure financial compensation for abuse survivors.*" Roberts Decl. at Ex. A-1 (emphasis added). This is false and misleading. Not everyone who files a Sexual Abuse Survivor Proof of Claim may be eligible for financial or other compensation, and compensation cannot be assured.

28. An infomercial sponsored by Sheldon Law Group states: "As a result of this bankruptcy, a Victims Compensation Fund is being set up that may be worth over $1.5 billion." Roberts Decl. at Ex. B-1. This is misleading. While the Debtors' proposed chapter 11 plan contemplates that Sexual Abuse Claims will be channeled to a trust, no trust or fund has been approved (much less "set up") and the value of any trust is not yet known. The Court did not approve any language regarding a victims' compensation fund—much less its possible size—in the notices to Sexual Abuse Survivors.

29. Other ads contain similarly false and misleading statements, and contravene the Court's Bar Date Order. For example, the 1-800-LAW-HELP Legal Network has television ads that state:

> WERE YOU SEXUALLY ABUSED WHILE IN THE BOY SCOUTS?
>
> IF SO, YOU'RE NOT ALONE!

> IN RESPONSE TO **THOUSANDS OF ABUSE CLAIMS** THE BOY SCOUTS HAVE FILED FOR BANKRUPTCY PROTECTION
>
> THE VICTIMS COMPENSATION FUND MAY BE WORTH **OVER 1.5 BILLION DOLLARS**
>
> IF YOU WERE SEXUALLY ABUSED WHILE IN THE BOY SCOUTS, YOU MAY BE ELIGIBLE TO FILE A CLAIM, **NO MATTER HOW LONG AGO IT HAPPENED**
>
> YOUR TIME TO FILE A CLAIM DURING BANKRUPTCY IS LIMITED
>
> CALL 1-800-LAW-HELP NOW

Roberts Decl. at Ex. C-1 (emphases in original). This ad is problematic in several respects. As noted, a victim's compensation fund has not been approved, and the size of any fund or trust is unknown. The statement, "If you were sexually abused while in the Boy Scouts, you *may* be eligible to file a claim, no matter how long ago it happened" (emphasis added), is inconsistent with the language in the Court-approved notice, which provides: "Anyone who has sexually abused during their time in Scouting, or on before February 18, 2020, *must* file a claim." D.I. 695-3 (emphasis added). Importantly, the ad does not state the Abuse Claims Bar Date, which could cause Sexual Abuse Survivors to miss the deadline.[5]

30. Other ads by the 1-800-LAW-HELP Legal Network contain similarly false and misleading information regarding filing claims with a supposed "victim's compensation fund;" either say nothing regarding the Bar Date, or say there is a deadline, but do not inform potential claimants what that deadline is, as the Bar Date Order mandates; and falsely state that Sexual Abuse Survivors can file anonymous claims. For example:

---

[5] The ad also instructs Sexual Abuse Survivors to call "1-800-LAW-HELP," while the Court-approved notices direct Sexual Abuse Survivors to 1-866-907-2721. This is confusing.

a. "THE BOY SCOUTS HAVE SET UP A COMPENSATION FUND FOR VICTIMS OF SEXUAL ABUSE." Roberts Decl. at Ex. C-2.

b. "YOUR CLAIM MAY REMAIN ANONYMOUS." *Id.*

c. "A DEADLINE HAS BEEN SET TO FILE CLAIMS WITH THE BOY SCOUT'S VICTIMS COMPENSATION TRUST." *Id.* at Ex. C-3.

d. "THERE MAY BE A FUND WORTH OVER $1.5 BILLION FOR VICTIMS OF SEXUAL ABUSE." *Id.* at Ex. C-4.

e. "THE BOY SCOUTS HAVE SET UP A COMPENSATION FUND FOR VICTIMS OF SEXUAL ABUSE, HOWEVER THERE IS A DEADLINE TO FILE YOUR CLAIMS" *Id.* at Ex. C-5.

31. Similarly, an infomercial by Herman Law also contains numerous false, misleading, or confusing statements:

a. The infomercial does not mention the Debtors' bankruptcy or the Bar Date. *See* Roberts Decl. at Ex. D. This is misleading and could create confusion as to what steps Sexual Abuse Survivors must take to preserve their rights. It also suggests a Sexual Abuse Survivor needs to retain a law firm in order to pursue a claim, which is not true and poses an unnecessary obstacle to submitting a Sexual Abuse Survivor Proof of Claim. *See* Wheatman Decl. at ¶ 8.

b. The infomercial goes on to state: "So, the first thing is that if a victim chooses, they can file under what's called a pseudonym – which is a John Doe. So, their names never have to be used . . . ." *See* Roberts Decl. at Ex.

D. As noted, this is false and misleading as to what is necessary in order to submit a Sexual Abuse Survivor Proof of Claim.

32. An ad by the Law Office of Cohen & Jaffe states, "If you were a victim of sexual abuse *by an adult scout leader*, you may be entitled to significant financial compensation …" Roberts Decl. at Ex. E (emphasis added). This is inconsistent with the Court-approved notices, which make clear that claims for Sexual Abuse include acts between (1) a child and an adult (who does not need to have been a Scout leader) and (2) a child and another child. D.I. 695-3. The ad also falsely states that claimants may be able to remain anonymous. Roberts Decl. at Ex. E. The inconsistencies between this ad and the information in the Court-approved notices is confusing. *See* Wheatman Decl. at ¶ 7.

33. Many of the misleading aspects of these ads exemplify the problems that are pervasive in the advertisements directed at Sexual Abuse Survivors. Numerous other ads also misleadingly refer to a "victims compensation fund," suggest claimants can remain anonymous, and refer to a "limited window" or "claims deadline" without indicating what the Bar Date is, how and where to file a claim, and the consequences of not filing a timely claim. *See e.g.*, Roberts Decl. at Exs. A-1, B-1, C-1–C-4; *see also* Wheatman Decl. at ¶ 7.

34. Further, the advertisements and "infomercials" contain false, misleading, and one-sided statements regarding the BSA, which are not only misleading Sexual Abuse Survivors and the general public about the Debtors' bankruptcy cases, but also have the obvious potential to damage the reputation, brand, and goodwill of the BSA organization, which are essential assets of Debtors' and their estates. Further, several advertisers have used the BSA's logo and trademarks without authorization.

35. For example, the Abused in Scouting infomercial states that the BSA has not taken actions to curb abuse. *See* Roberts Decl. at Ex. A-1 ("If they are held accountable in a large enough way, I am encouraged that they will make changes to their organization in order to survive."). This ignores entirely the robust, expert-informed youth protection program the BSA has put in place, making the BSA one of the safest youth-serving organizations in the world. *See* D.I. 4, at 4, 26-32. The infomercial also states repeatedly that the BSA "knew" about abuse, including rape, and "failed to warn or protect" children. *See* Roberts Decl. at Ex. A-1; *see also id.* ("You were not victimized just by a perpetrator; you were victimized by an organization that knew what was happening and failed to warn or protect you"); *id.* ("There's this legacy of abuse in this organization. Children were raped at the hands of adults, and an organization knew it was happening and did nothing to stop it."). Because the BSA is complying with the Bar Date Order and using the Court-approved language in the Notices it is disseminating to potential Sexual Abuse Survivors, it has no opportunity to rebut these one-sided allegations.

36. Notably, these TV advertisements and infomercials stand in sharp contrast to the Tort Claimants' Committee's proposed TV script for the BSA to use, and what was ultimately approved by the Court:

> This is an important message for all current and former Boy Scouts.
>
> The Boy Scouts of American have declared bankruptcy. If you were sexually abused in Scouting, you could receive compensation, but you must file a Proof of Claim in the bankruptcy case by ________________.
>
> You may file a sexual abuse claim regardless of your current age or the year the abuse occurred. If you do not file a claim, you may lose your rights against the Boy Scouts.
>
> For more information, visit OfficialBSAclaims.com or call 1-866-907-2721.

> This notice has been approved by order of the United States Bankruptcy Court.

D.I. 601-5.

37. Between the date of entry of the Bar Date Order, May 26, 2020, and August 24, 2020, at least 10,999 television spots directed at potential abuse claimants had been aired. *See* Roberts Decl. at ¶ 4. In Dr. Wheatman's expert opinion, it would be preferable if, instead of following the directives of these advertisements, potential Sexual Abuse Survivors would call the toll-free number or visit the website of the BSA claims agent to obtain neutral information and then decide if they need the assistance of an attorney to file their claim. *See* Wheatman Decl. at ¶ 8. Dr. Wheatman further believes that, unfortunately, the Court-approved media program may need to overcome confusion that has already been sown by the law firms' advertising. She observes that this confusion may be further compounded if these television/radio and other ads are allowed to run during the media portion of the Bar Date Notice Program. In her expert opinion, if this advertising continues to run, as is, it may be detrimental to the effectiveness of the Bar Date Notice Program because of its potential to confuse potential claimants with misleading information. Additionally, it may lead potential Sexual Abuse Survivors to believe that they need to hire an attorney to file a claim. *See id.* at ¶¶ 8–11.

38. On August 10, 2020, counsel for the BSA sent a cease and desist letter to the Tort Claimants' Committee and the Coalition bringing the problematic ads to their attention, and asking that they distribute the letter to the law firms representing their members and any other firms that they knew were engaging in this advertising. *See* Aug. 10, 2020 Ltr. from J. Boelter to Tort Claimants' Committee and Coalition of Abused Scouts for Justice, attached hereto as **Exhibit D**. Although the Debtors have been informed that some of the firms involved appear to have made some modifications to their ads in response to this letter, ads containing false, misleading, and

confusing information that is inconsistent with the information in the Court-approved Notices continue. Indeed, TV ads containing many of the false, misleading, and confusing statements described above appeared on TV on August 23, 2020, the day before this Motion was filed. *See* Roberts Decl. at ¶¶ 8, 12. None of the law firms involved have committed to ceasing their advertising campaigns, committed to including only statements approved by the Court, or offered to provide advance copy of the ads to the Debtors, the Court, or other parties to these proceedings so that false, misleading, and confusing statements can be remedied before they appear on the internet, TV, radio, and other media outlets.

**RELIEF REQUESTED**

39. By this Motion, the Debtors request entry of the Proposed Supplemental Order, substantially in the form attached hereto as **Exhibit A** (i) supplementing the Bar Date Order to prevent potential Sexual Abuse Survivors from being misled or confused regarding the Bar Date and claims process and (ii) granting related relief.

**BASIS FOR RELIEF**

40. This Court has the inherent authority to control the form, content, and manner in which information regarding these bankruptcy proceedings—including critical information regarding the Bar Date and how to submit claims—is provided to creditors and other interested parties in order to protect their interests in the bankruptcy proceedings and their due process rights. *See, e.g.,* Fed. R. Bankr. P. 2002(a)(7), 2002(m), 9007. *Cf. Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (finding in analogous class action context that district court had the authority to regulate communications with class: "The damage from misstatements could well be irreparable. Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an 'afterthought.'" (internal citations omitted)); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 490 (E.D. Pa. 1995) (observing that the purpose of a notice is to be

impartial, inform potential claimants of their rights, and alert them "to take appropriate steps to make sure their individual interests are protected" and that it is the responsibility of the court to safeguard potential claimants "from unauthorized, misleading communications from the parties or their counsel"). Consistent with this, the Court expressly retained "exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order." D.I. 695 at ¶ 27.

41. In addition, section 105(a) of the Bankruptcy Code makes clear that the Court has the power to "tak[e] any action or mak[e] any determination necessary to or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). *See also In re Greenwich Sentry, L.P.*, 484 B.R. 567, 574 (S.D.N.Y. 2012), *aff'd*, 534 F. App'x 77 (2d Cir. 2013) (modification of bar date order was reasonable exercise of bankruptcy court's discretion under section 105(a) of the Bankruptcy Code).

42. This Court should exercise its authority to supplement the Bar Date Order to clarify that the only notices and statements approved and authorized by the Court to be published, disseminated, or otherwise directed to potential Claimants, including potential Sexual Abuse Survivors, to provide notice of the Bar Dates and the other matters described therein, are the General Bar Date Notice, the Sexual Abuse Claims Bar Date Notice, and the Sexual Abuse Claims TV Spot, attached to the Bar Date Order as Exhibits 1, 2, 3, 4, and 5. The Court also should supplement the Bar Date Order to provide that no other notice or solicitation to submit a Sexual Abuse Survivor Proof of Claim Form shall be provided without prior authorization of the Debtors or the Court.

43. Failure to curb the on-going advertising campaigns described above could have disastrous consequences for these chapter 11 proceedings. Sexual Abuse Survivors who fail to

timely submit proofs of claim may argue, among other things: (1) they were misled or confused by these advertisements regarding what acts constitute abuse, and therefore did not understand that they were entitled to or needed to submit a claim; (2) led to believe they did not need to submit a Sexual Abuse Proof of Claim, which requires identifying information, because they were told they could proceed anonymously; (3) confused about the Bar Date because it was not disclosed in the ads they saw, or the significance of it was not disclosed; or (4) chose not to participate because they were misled into believing they needed to retain counsel in order to do so. When it comes time to vote on a plan of reorganization, Sexual Abuse Survivors may argue they were misled into believing there was a $1.5 billion "victims compensation fund" already in place, when the plan may (and likely will) provide for something different.

44. Allowing these advertisements to continue and to interfere with the Court-approved notice process accordingly would lay to waste the $6.8 million in estate assets being spent by the Debtors to comply with the Bar Date Order. Sexual Abuse Survivors who are misled or confused by the attorney advertisements may be able to establish excusable neglect, entitling them to file late claims, which undermines the entire point of a Bar Date and its role in the mediation process. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 389–99 (1993) (holding that bankruptcy courts may accept late filings caused by "excusable neglect," and finding that excusable neglect where the "peculiar and inconspicuous placement of the bar date in a notice for a creditors' meeting without any indication of the date's significance, left a dramatic ambiguity in the notification") (internal quotation marks omitted); *In re Collier*, 307 B.R. 20, 26 (Bankr. D. Mass. 2004) (allowing for late filing of proof of claim where the court-approved bar date notice was sufficient, but other statements regarding the bar date were erroneous and confusing: "the

Court must look to the totality of the circumstances to determine if notice once given was later obfuscated").

45. Worse yet, the confusion resulting from the inconsistent information between the Debtors' Court-approved notices and these law firm advertisements may result in corrective notices needing to be sent and a new Bar Date being set. This would be devastating in terms of wasting estate assets and derailing and jeopardizing the parties' efforts to reach a mediated resolution of these proceedings. *See also Georgine*, 160 F.R.D. at 502–03 (misleading advertising campaigns by law firms interfered with court-approved notice plan, requiring invalidation of exclusion requests and the creation of a second notice and second period for class members to decide whether to participate in class action settlement); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 442–43 (S.D. Tex. 1999) (same); *see also Kleiner*, 751 F.2d at 1203 (noting that damage from misstatements in attorney solicitations that interfered with court-approved notice process "could well be irreparable").

46. The Debtors' proposed supplement to the Bar Date Order is appropriate and necessary to achieve legitimate goals. The Debtors seek through this Motion to preserve the carefully crafted noticing plan approved by the Court after extensive briefing and a contested hearing at which the Court heard lengthy argument and expert testimony on how best to inform potential Sexual Abuse Survivors of their rights in these proceedings, while being cognizant of the unique sensitivities attendant to communicating with Sexual Abuse Survivors. Indeed, the relief the BSA seeks not only is necessary to protect these restructuring proceedings from potential irreparable harm, but also to protect Sexual Abuse Survivors from false, misleading, confusing, and conflicting statements regarding the claims and Bar Date process. As this Court determined in entering the Bar Date Order originally, issuing clear and accurate notice to potential Sexual

Abuse Survivors regarding the Bar Date and the proof of claim process is essential to ensuring that Sexual Abuse Survivors can protect their rights. *See In re Andrus,* 189 B.R. 413, 417 (N.D. Ill. 1995) (significant governmental interests in "the power of the courts to enforce and protect their judicial process, and the ability of the Bankruptcy Code to protect debtors" justified bankruptcy court contempt order); *In re Inslaw, Inc.*, 76 B.R. at 224 (enjoining speech disparaging the debtor's property because it was "false and malicious" and also "present[ed] a clear and present danger of significant interference with the Debtor's reorganization and with the functions of the bankruptcy court").

47. In contrast, law firms do not have the right to solicit clients through false and misleading statements. *See, e.g.,* Del. R. of Prof. Conduct, Rule 7.1 ("A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."); *see also Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading").

48. Moreover, the proposed supplement to the Bar Date Order would impose no more obligations or restrictions on law firms actively soliciting abuse survivors during the notice period than it imposes on the Debtors. Given the clear record of false, misleading, and confusing advertisements, the proposed supplement to the Bar Date Order is appropriately tailored. *See Andrus,* 189 B.R. at 417; *Inslaw, Inc.*, 76 B.R. at 240; *see also S.E.C. v. Am. Bd. of Trade, Inc.,* 830 F.2d 431, 442 (2d Cir. 1987) (where defendant had sent misleading communications to a group of noteholders of an entity in receivership, district court did not err in entering order requiring

defendant to submit proposed communications for approval by the court: "There has been no showing that the court has in any way impaired the [defendants'] ability to communicate with the noteholders in ways that are not misleading or deceptive."); *Kleiner*, 751 F.2d at 1207 (affirming trial court order regulating attorney contacts with potential class members where attorney communications violated notice orders issued by court); *In re Potash Antitrust Litig.*, 896 F. Supp. 916, 920–21 (D. Minn. 1995) (finding that attorney letter to class members was not misleading, but ordering that defendant provide a copy of all prior and anticipated communications to class members to the Court and to plaintiffs because supervision of such communications was "critical to our role in preserving the integrity of the process").

## NOTICE

49. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to the Coalition; (vii) the law firms identified in the Roberts Declaration; (viii) counsel to JPMorgan Chase Bank National Association; (ix) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Supplemental Order attached hereto as **Exhibit A**, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated: August 24, 2020
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
aremming@mnat.com
emoats@mnat.com
ptopper@mnat.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Email: jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Email: tlabuda@sidley.com
mandolina@sidley.com
mlinder@sidley.com
blair.warner@sidley.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION