## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline: 9/2/2020 at 4:00 p.m. (ET)** **Hearing Date: 9/9/2020 at 10:00 a.m. (ET)** |

## MOTION OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO PARTICIPATE IN THE MEDIATION

The Coalition of Abused Scouts for Justice (the "Coalition"), by its undersigned counsel, hereby submits this motion requesting permission to appear and be included as a Mediation Party in the Court-ordered mediation.  Pursuant to Local Rule 9013-1(k), the Coalition respectfully requests that this Honorable Court enter an order, substantially in the form attached as **Exhibit A** hereto, amending its *Order Appointing Mediators, Referring Certain Matters to Mediation, and Granting Related Relief* (the "Mediation Order") [Docket No. 812], to include the Coalition as a Mediation Party.[2] The Coalition is a necessary and beneficial party to the Mediation Order and should be permitted to participate in and will add value to efforts toward a global resolution in the above-captioned cases (the "Chapter 11 Cases").  In further support of this motion (the "Motion"), the Coalition states as follows:

---

[1]   The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]   Capitalized terms not otherwise defined herein shall have the meanings provided in the Mediation Order.

## JURISDICTION

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Local Rules 9013-1(k), 9019-3 and 9019-5.

## FACTUAL BACKGROUND

2.      The Coalition presently comprises more than 12,000 Members, each of which is a sexual abuse victim holding claims against Debtor Boy Scouts of America, among other parties. In July, the Members of the Coalition, by and through authorized representatives (the "Representatives"), formed the Coalition and then retained Brown Rudnick LLP and Blank Rome LLP (together, "Coalition Counsel") to represent them in connection with the Coalition's claims and interests in respect of the above-captioned debtors (the "Debtors") in the Chapter 11 Cases. *See Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019*, D.I. 1106 (the "2019 Statement").[3]

3.      The Coalition's 12,000 Members – and growing – constitute a large majority of known tort claimants against the Debtors.[4]  The Coalition was formed to ensure that its Members'

---

[3]   As disclosed in the 2019 Statement, the current Representatives are: (i) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., (ii) Kosnoff Law PLLC, (iii) AVA Law Group, Inc., (iv) Andrews & Thornton, (v) ASK LLP, and (vi) Slater Slater Schulman, LLP.

[4]   There can be no certainty as to the total number of such creditors until the applicable bar date of November 16, 2020.  *See* D.I. 695 (bar date order).  However, the Coalition understands from its communications with various representatives of groups of tort claimants that its Members far outnumber similarly situated creditors expected to file claims in these Chapter 11 Cases. Moreover, the growth of the Coalition is evident from its addition of approximately 2,000 Members in the short time since the filing of its initial 2019 Statement [D.I. 1053], para. 1 ("The Coalition is comprised of more than 10,000 sexual abuse victims").  Certain Mediation Parties have received information substantiating the Coalition's membership, subject to their acceptance of confidentiality restrictions.

interests are adequately and vigorously represented in these Chapter 11 Cases.  No Member of the Coalition is a member of the Official Committee of Tort Claimants ("TCC").

4.    The Coalition has been made aware that the mediation is now progressing under the supervision of the Court-appointed Mediators, and the Mediation Parties (as defined in the Mediation Order) have submitted confidential mediation position statements and other documents to the Mediators.  The Coalition's foremost priority, after its formation, was to become a Mediation Party and play an active and constructive role toward a mediated resolution of their claims in these cases.

5.    Accordingly, shortly after the Coalition's formation, on July 24, 2020 Coalition Counsel wrote to the Honorable Kevin Carey (Ret.), Paul Finn and Timothy Gallagher (collectively, the "Mediators") requesting that the Coalition be permitted to participate as a Mediation Party.  Thereafter, we understand that the Debtors e-mailed the Mediation Parties requesting their consent to have the Coalition join as a Mediation Party pursuant to paragraph 3 of the Mediation Order.  The Coalition was advised by Debtors' counsel that each of the Mediation Parties, other than the TCC, thereafter either affirmatively consented or did not communicate any objection to the Coalition joining the Mediation as Mediation Parties.  Moreover, we understand that the Mediators would also welcome and are not opposed to the Coalition formally joining the Mediation as Mediation Parties.

6.    Last week, the Coalition contacted representatives of each Mediation Party seeking their consent to the Coalition joining the Mediation as a Mediation Party, and if necessary, consenting to shortened notice for the relief sought herein.  Each of the Mediation Parties, except the TCC, again either consented or did not communicate to us any objection to the Coalition's request.

7.     Thereafter, Coalition Counsel reached an agreement with counsel to the TCC that the law firm Representatives—specifically, (i) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., (ii) Kosnoff Law PLLC, (iii) AVA Law Group, Inc., (iv) Andrews & Thornton, (v) ASK LLP, and (vi) Slater Slater Schulman, LLP—would be deemed the Mediation Parties, and Brown Rudnick would participate as their counsel in the Mediation.

8.     The Debtors then emailed each of the Mediation Parties to confirm their consent to the Representatives' (rather than the Coalition's) participation in the Mediation as Mediation Parties.  Each of the Mediation Parties, other than counsel for Century Indemnity, either consented to or did not communicate any objection to the Representatives' participation in the Mediation as Mediation Parties.  At the time of the filing of this Motion, counsel for Century Indemnity continues to engage in discussions with the Mediators and Debtors' counsel regarding the participation of the Representatives in the Mediation.

9.     To avoid any further delay in the Coalition's, or the Representatives', as the case may be, participation in the Mediation, the Coalition determined to file this Motion.  For the avoidance of doubt, by this Motion, the *Coalition* seeks to participate in the Mediation as a Mediation Party because participation by the Coalition is a more efficient process.  However, the Coalition remains willing, with the Mediation Parties' full consent, or if the Court so determines, for the Representatives to participate in the Mediation as Mediation Parties rather than the Coalition itself.

## ARGUMENT

10.   Given the Coalition's substantial and growing membership, it is a crucial party to any effort to reach a global resolution in these bankruptcy cases.  Simply put, the Coalition Members likely have, and will continue to have, the voting power to cause any class of sexual

abuse claimants to accept or reject a chapter 11 plan, which may also contain non-debtor releases as a condition to a non-debtor's significant contribution to the estates.

11.    Mediation in general prevents the undue delay and excessive costs in connection with litigation and adversary proceedings related to claim validity.    The Coalition seeks to participate in the Mediation to work towards a satisfactory resolution in a constructive manner that recognizes the voice of a multitude of sexual abuse claimants as part of the mediation/negotiation process.

**(a) No Mediation could be fair and equitable without the full participation of the Coalition.**

12.    A settlement plan may only be confirmed when the Court holds that the plan is a fair and equitable distribution of the Debtors' assets.    *See e.g. Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968) (a bankruptcy court has the duty "to determine that a proposed compromise forming part of a reorganization plan is fair and equitable.")*; Will v. Northwestern Univ. (In re Nutraquest, In*c.), 434 F.3d 639, 644 (3d Cir.2006) ("Settlements are favored, but the unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them.").

13.    If a critical party, such as this Coalition comprised of over 12,000 individual tort creditors, is excluded from meaningful participation in the settlement process, the plan may be fatally crippled from the get-go and not be considered fair and equitable. *See e.g. In re Nutritional Sourcing Corp.*, 398 B.R. 816, 838 (Bankr.D.Del.2008) (holding a plan settlement not fair and equitable because certain trade creditors were not afforded "meaningful participation" in settlement negotiations).    The Coalition respectfully asserts that the Court can ameliorate the risk of the Coalition being closed off from meaningful participation in the bankruptcy plan negotiations

by affording the Coalition status as Mediation Party. *See e.g. In re Tribune Co.*, 464 B.R. 126, 157 (Bankr. D. Del.), on reconsideration in part, 464 B.R. 208 (Bankr. D. Del. 2011), *aff'd sub nom. In re Tribune Media Co.,* 587 B.R. 606 (D. Del. 2018), *and aff'd in part sub nom. In re Tribune Media Co.*, 587 B.R. 606 (D. Del. 2018) (court determined Senior Noteholders were allowed meaningful participation in settlement negotiations where the majority claimholder of the Senior Noteholders was named a mediation party in the court's mediation order).

14.    A mediation involving all of the key parties will also allow the parties to engage more freely in "creative thinking about the allocation of the Debtors' assets." *See In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 84 (Bankr. S.D.N.Y. 2010) ("Mediation permits, indeed often requires, consideration of underlying interests, causes or values that produce conflict and thus permits the management, handling or resolution of broader concerns than just those 'disputes' which crystallize at the tip of the iceberg."). While the TCC certainly has a fiduciary duty to all sexual abuse victims (whether with filed civil actions or not, and whether from states presently with statute of limitations open windows or not), the sexual abuse victims are entitled to seek their own representative counsel. They have done so here with the formation of the Coalition by and through their Representatives.

15.    Recent bankruptcy cases have acknowledged the critical role that *ad hoc* committees play in the mediation process and have determined such committees to be necessary, valuable and formal parties to the mediation even where the official statutory committee is also made a mediation party. *See e.g. Order Appointing Mediators*, D.I. 895, *In re Purdue Pharma, et. al,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. March 4, 2020) ("The Mediation Parties shall consist of. . . (iii) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants. . .(iv) the Ad Hoc Committee of NAS Babies; (v) the Ad Hoc Group of Hospitals; (vi)

the Ad Hoc Group of Non-Consenting States. . .(viii) the Ad Hoc Group of Individual Victims. . .."); *Order Appointing Mediator*, D.I. 398, *In re Insys Therapeutics,* Case No. 19-11292 (KG) (Bankr. D. Del. 2019) (naming mediation parties, including the UCC, the National Opioid "MDL Executive Committee," and other creditor constituencies).

16.   Further, the Coalition makes up a large percentage of known tort claimants in these Chapter 11 Cases.  In light of the percentage of claims held by the Coalition's Members, any settlement plan designed with the substantive input of the Coalition has a higher likelihood of acceptance by creditors than a plan formulated without the Coalition's participation. *See* 11 U.S.C § 1126, § 1129.  Therefore, barring or otherwise limiting the Coalition from participating in the Mediation will limit the effectiveness of the Mediation and its settlement process and waste valuable time and resources that the Chapter 11 bankruptcy process, and in particular bankruptcy mediations, are designed to conserve. *See* Mediation Order at 2 (granting Motion for Mediation because "the relief requested in the Motion [is] in the best interests of the Debtors' estates, their creditors and other parties in interest. . .").

**(b) The Coalition will be substantially harmed absent amendment of this Court's Mediation Order.**

17.   The Coalition will be harmed by its inability to participate in the Mediation as a full Mediation Party.  Only designation as a Mediation Party will allow the Coalition full participation in the Mediation.  Only Mediation Parties are privy to the oral and written communications disclosed in the Mediation process, including submissions by the Mediation Parties as to various crucial issues in these cases. *See* Del. Bankr. L.R. 9019-5(d)(i) ("The mediator and the participants in mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation."); *see also* Mediation Order at para. 7 ("The provisions of Local Rule 9019-5(d) pertaining to

7

"Confidentiality of Mediation Proceedings" shall govern the Mediation. . ."); *see generally In re Tribune Co.,* No. 08-13141 KJC, 2011 WL 386827, at *8 (Bankr. D. Del. Feb. 3, 2011) ("There is a strong policy in promoting full and frank discussions during a mediation.  Courts have recognized that confidentiality is essential to the mediation process. . .").  Further, the Coalition, if denied status as a Mediation Party, would be precluded from filing position papers or receiving the position papers of the parties to the Mediation, placing the Coalition at a significant informational deficit.  *See* Del. Bankr. L.R. 9019-5(j)(xii)(A) ("The parties' respective position statements shall not be filed in the underlying adversary proceeding.").[5]

> **(c) It is reasonable and necessary for this Court to amend its Mediation Order to grant the Coalition status as a Mediation Party.**

18.    There is no procedural impediment precluding this Honorable Court's amendment of its June 9, 2020 Mediation Order.  At the time of the issuance of this Court's Mediation Order, the Coalition had not yet been formed as an *ad hoc* committee.  Therefore, it could not have been properly considered at that time to be included as a Mediation Party.  Consequently, the Coalition respectfully requests that this Honorable Court amend its Mediation Order pursuant to Del. Bankr. L.R. 9013-1(k) and grant the Coalition status as a Mediation Party.

## NOTICE

19.    Notice of this Motion will be provided to (i) the Mediation Parties; (ii) the U.S. Trustee; (iii) counsel to JPMorgan Chase Bank, N.A.; (iv) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; (v) the United States Attorney's Office for the District of Delaware; (vi) the Internal Revenue Service; (vii) the United States Department of

---

[5]    The Debtors have already submitted their Mediation Statement (which the Coalition has not seen), and the time to respond has already passed.

Justice; and (viii) any party for whom service is required under the standing *Order Regarding Service Pursuant to Del. Bankr. L.R. 5004-4 and 9036-1*.  The Coalition submits that good and sufficient notice of this Motion has been provided and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Coalition respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested and such other and further relief as the Court deems just and proper.

Dated: August 26, 2020
Wilmington, Delaware

**BLANK ROME LLP**

*/s/Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6423
Facsimile:    (302) 252-0921
E-mail:       Tarr@BlankRome.com


-and-

**BROWN RUDNICK LLP**
David J. Molton, Esq. (*Pro Hac Vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
E-mail: DMolton@BrownRudnick.com

and

Sunni P. Beville, Esq. (*Pro Hac Vice*)
Tristan G. Axelrod, Esq. (*Pro Hac Vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail: SBeville@BrownRudnick.com
E-mail: TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*