## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE Boy Scouts, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: Docket No. 1145, 1190**<br>**Hearing Date: August 31, at 11:00 a.m. (ET)** |

### CENTURY'S JOINDER TO THE DEBTORS' MOTION [DKT. 1145] AND OBJECTION TO THE PLEADING FILED BY THE ENTITY CALLING ITSELF THE "COALITION OF ABUSED SCOUTS FOR JUSTICE" [DKT. 1190] AND APPEARANCE OF BROWN RUDNICK AND BLANK ROME FIRMS ON ITS BEHALF

Compliance with Rule 2019 is a mandatory requirement for an entity to appear and be heard. The entity calling itself the "Coalition" filed a facially non-compliant Rule 2019 Statement. Attached as Exhibit A is Century and Hartford's motion objecting to the Coalition's participation in this case and the appearance of Brown Rudnick LLP and Blank Rome LLP on its behalf [Dkt. 1164]. As explained in Century and Hartford's Motion, the Coalition's non-compliance with Rule 2019 masks a host of disabling concerns ranging from it being used as an end-run around the fiduciary duties imposed on Committee counsel to the conflict posed by Blank Rome concurrently representing multiple catholic dioceses, while at the same time purporting to represent tort claimants in this case where it is contended the church is a sponsoring organization with BSA.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

With respect to the Debtor's motion [Dkt. 1145], Century joins in the Debtors' request to bar deceptive advertising outside the noticing program approved by the Court while preserving in full its previously stated objections to the bar date order which are the subject of its pending appeal.

Dated:  August 30, 2020                              Respectfully Submitted,


By:  */s/ Stamatios Stamoulis*
      Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone:   302 999 1540
Facsimile:    302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:   212 326 2000
Facsimile:    212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA AND DELAWARE Boy Scouts, LLC,[1] | Jointly Administered |
| Debtors. | **Hearing Date: September 9, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: September 2, 2020 at 4:00 p.m. (ET)** |

## CENTURY AND HARTFORD'S MOTION TO COMPEL THE ATTORNEYS REPRESENTING THE ENTITY CALLING ITSELF THE "COALITION" TO SUBMIT THE DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

BAYARD, P.A.
600 North King Street
Suite 400
Wilmington, Delaware 19801

SHIPMAN & GOODWIN LLP
1875 K Street, NW
Suite 600
Washington, DC 20003

*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company*

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 3

      A.    The appearance by the Coalition.................................................... 3

      B.    The Coalition's 2019 statements................................................... 4

      C.    The Coalition's connections to AIS and mass-marketing
            companies. ................................................................................... 7

      D.    275 claims to 10,000 to 15,000 in a matter of weeks. ............... 9

ARGUMENT ........................................................................................................ 11

Point I  Rule 2019 Requires Any Attorney Who Represents More Than One Client
        to Supply, Among Other Things, the Identity of Every Client He or She
        Represents. ...................................................................................... 11

      A.    Rule 2019's requirements are both straightforward and mandatory......... 11

      B.    Rule 2019, which has an "extremely broad" scope, is a disclosure
            provision designed to ensure that all matters in a Chapter 11
            reorganization process are done openly and subject to scrutiny.............. 13

      C.    Rule 2019 requires detailed disclosures, particularly in mass tort
            cases. ......................................................................................... 14

      D.    It is particularly important here to disclose the facts and
            circumstances of claimants' counsels' respective representations. .......... 15

Point II  The Coalition's 2019 Disclosures Are Deficient ................................... 16

Point III This Court Should Order Claimants' Counsel to Comply With Rule 2019
        or, in the Alternative,  Bar Them from Participating in the Bankruptcy. ............. 21

CONCLUSION..................................................................................................... 25

APPENDIX A

APPENDIX B

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archdiocese of New York v. Ins. Co. of N. Am.,*
   No. 653772/2019 (N.Y. Sup. Ct. filed June 28, 2019) ............................................. 16

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants,*
   321 B.R. 147 (D.N.J. 2005) .................................................................. 14, 16, 19, 20

*Electronic Theatre Restaurants Corp.,*
   57 B.R. 147 (Bankr. N.D. Ohio 1986) ................................................................ 13, 21

*In re Archdiocese of Saint Paul and Minneapolis,*
   No. 15-30125 (Feb. 23, 2017).......................................................................... passim

*In re Baldwin United Corp.,*
   52 B.R. 146 (Bankr. S.D. Ohio 1985).............................................................. 23

*In re CF Holdings Corp.,*
   145 B.R. 124 (Bankr. D. Conn. 1992) ......................................................... 13, 21

*In re Congoleum Corp.,*
   No. 03-51524 (Bankr. D.N.J. Dec. 30, 2004) .............................................. 23

*In re Diocese of Duluth,*
   565 B.R. 914, 915 (2017) ............................................................................. 16

*In re Garden Ridge Corp.,*
   No. 04-10324 (DDS), 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005)................. 15

*In re Keene Corp.,*
   205 B.R. 690 (Bankr. S.D.N.Y. 1997)................................................................ 21

*In re Mid-Valley, Inc.,*
   Case No. 03-35592 (Bankr. W.D. Pa. April 13, 2004)............................................ 23

*In re Oklahoma P.A.C. First Ltd. P'ship,*
   122 B.R. 387 (Bankr. D. Ariz. 1990)........................................................... passim

*In re Semel,*
   411 F.2d 195 (3d Cir.1969) ...................................................................... 14

*In re The Muralo Company Inc.,*
   295 B.R. 512 (Bankr. D.N.J. 2003) ............................................................. 12

*In re Vestra Indus., Inc.,*
   82 B.R. 21 (Bankr. D. S.C. 1987)................................................................. 21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In the Matter of F&C Int'l, Inc.,*
    1994 Bankr. LEXIS 274 (Bankr. S.D. Ohio Feb. 18, 1994) ................................... 13

*Leiman v. Guttman,*
    336 U.S. 1 (1949) ................................................................................................. 14

*Nantucket Investors II v. California Federal Bank (In re Palms Associates),*
    61 F.3d 197 (3d Cir. 1995) .................................................................................. 12

*Reid v. White Motor Corp.,*
    886 F.2d 1462 (6th Cir. 1989) ............................................................................. 23

**Statutes**

11 U.S.C. § 1103 ......................................................................................................... 15

**Other Authorities**

Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential
    Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913 (1994) .......................... 13

**Rules**

Fed. R. Bankr. 2019(c)(4) ........................................................................................... 19

Fed. R. Bankr. P. 1109(b) ........................................................................................... 24

Fed. R. Bankr. P. 2019(a)(1) ....................................................................................... 11

Fed. R. Bankr. P. 2019(c)(1) ....................................................................................... 19

Fed. R. Bankr. P. 2019(c)(4) .......................................................................... 12, 18, 19

Fed. R. Bankr. P. 2019(e)(2) ................................................................................. 22, 23

**Treatises**

9 Collier on Bankruptcy ¶ 2019.01 (16th ed. 2020) ................................................... 16

9 Norton Bankruptcy Law & Practice 3d § 172:22 .................................................... 23

The Insurers identified on the signature blocks below submit this motion (the "Motion") for entry of an Order, compelling attorneys representing the Coalition of Abused Scouts for Justice (the "Coalition") to amend their 2019 disclosure [D.I. 1053, amended at 1106] to provide missing information required by Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") ; or in the alternative, barring the Coalition from participating in the bankruptcy for noncompliance with Rule 2019.

## PRELIMINARY STATEMENT

Official committees, such as the Tort Claimants' committee appointed by the U.S. Trustee in this case, exist to compel similarly situated claimants to negotiate as one and to impose on the committee and its counsel the fiduciary duty to treat all the constituents of the committee equally.  The entity calling itself the "Coalition" claims to represent a numerical majority of the tort claimants and, as such, presumably controlled the committee's selection of counsel.  Nonetheless, this same entity now asks to access highly confidential information and participate separately in plan negotiations under the cloak and protection of mediation confidentiality.

This is an end-run around the fiduciary duties that the code imposes on official committees to safeguard equal treatment of claimants.  This entity claiming a numerical majority has positioned itself to put in place the present counsel for the TCC and also sit at the table and negotiate without the fiduciary obligations imposed on their chosen representative for the committee.  One of the people behind this entity, Andrew Van Arsdale, states on his website that "over the years, [Mr. Van Arsdale] has helped thousands of people who have been injured," but he only received a law degree in 2018.  Mr. Van Arsdale is separately listed as an Owner and Operations Director at Reciprocity Industries, a company that specializes in marketing tort

1

claims.  How this entity generated the claims post-petition that it purports to control is explained

below and in the Debtors' Motion for a Supplemental Bar Date Order [D.I. 1145].

All of this raises serious issues in a mass tort case where "overclaiming" is an issue.

Groups and entities with a financial interest in inventories of claims that were aggregated with

little or no vetting of their merits do not have the same interest as others in adopting procedures

to screen out meritless claims from voting and being paid.

It is crucial for the integrity of the process that the Coalition, whatever it may be, provide

complete and fulsome disclosures under Rule 2019.  Disclosing what the Coalition is, its

membership and relevant financial arrangements is a mandatory requirement under Fed. R.

Bankr. P. 2019(c), as is the requirement to disclose each of the contingent creditors on whose

behalf it is authorized to act.  This requirement addresses the greater need for policing creditor

groups and those who act on their behalves in chapter 11 cases.  Rule 2019 is part of the

disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization

plans that deal fairly with creditors and that are arrived at openly.

The Coalition has provided little to none of the information Rule 2019 requires it to

disclose.  While the Coalition says it would provide a list of client names and addresses to

interested parties who request the information, it refused Century's request for that information.

And the Coalition's counsel has disclosed only minimal information about the entities behind its

formation, and no information about the identity of the claims held by those entities, their

retention agreements, or fee-sharing, co-counsel or referral arrangements—all information that

Rule 2019 mandates they provide.

Century requested the names and addresses of the claimants the Coalition purports to

represent on July 31, 2020, almost a month ago, and was denied access.  The Court should order

the Coalition's compliance with Rule 2019 and, pending compliance, bar the group's

participation in this bankruptcy.

No harm will befall any claimant by enforcement of Rule 2019. All claimants are

represented on equal terms by the Committee. And the Protective Order was represented to the

Court by the Committee as adequate to protect the confidentiality concerns of claimants.

## BACKGROUND

### A.    The appearance by the Coalition.

On July 24, 2020, the law firms of Brown Rudnick LLP and Blank Rome LLP entered an

appearance in these chapter 11 cases for an entity calling itself the "Coalition of Abused Scouts

for Justice," stating that it is an ad hoc committee serving the interests of tort claimants. The

notice of appearance does not explain what the Coalition is, how it is organized, identify its

members and their claimant clients, or verify that each of the claimants has engaged Brown

Rudnick LLP and Blank Rome LLP, authorized them to speak on their behalf, or consented to

paying them—nonetheless, the appearance asserts that the Coalition somehow represents the

interests of more than 10,000 tort claimants.[2] The law firms of Brown Rudnick LLP and Blank

Rome LLP state that they represent this entity but do not say that they have a retention

agreement with any of the tort claimants for whom they have appeared, or are in privity with

them in any way.[3] All of this leaves uncertain whether they actually represent any tort claimants

or instead merely represent entities with a secondary monetary interest in the tort claims.

The Coalition is ostensibly separate from the Official Committee of Tort Claimants in

this case appointed under 11 U.S.C. § 1102(a)(1), which is represented by attorneys from

---

[2]    D.I. 1040.

[3]    D.I. 1040; D.I. 1053.

Pachulski Stang Ziehl & Jones LLP, but it claims to represent a supermajority of the approximately 10,000 to 15,000 tort claimants that Mr. Stang told the Court at the last hearing that the members of the committee represent.[4]

### B. The Coalition's 2019 statements.

On July 29, 2020, the Coalition filed a statement after various parties asked that it comply with Rule 2019 of the Federal Rules of Bankruptcy.[5] The Coalition's initial 2019 disclosure did not disclose—nor offer to disclose—whether the Coalition is organized as a limited liability entity, a partnership or something else under Rule 2019, nor did it identify all the entities with a financial interest in the claims that are members of this group, provide a breakdown of who controls which clients, or supply information about the organization of the Coalition and fee-sharing or co-counsel agreements among the member entities.

The Coalition stated in its initial disclosure that it would provide "a list of the names and addresses of each current Coalition Member . . . upon request by a proper party in interest and subject to a confidentiality agreement."[6] On July 31, 2020, Century wrote to counsel for the Coalition requesting the list of 10,000 claimants they purport to represent.[7] The Brown Rudnick firm responded that it would not provide the identity and addresses of the claimants at this time—rather, the Coalition offered information non-responsive to the requirements of Rule 2019

---

[4]  D.I. 1006, July 9, 2020 Hr'g Tr. at 14:16–24 ("I can report to you that based on information from the attorneys who represent committee members, which excludes a whole universe of plaintiff lawyers, we are already over 10,000 claims. That is our constituency.").

[5]  D.I. 1053.

[6]  *Id.* ¶ 2.

[7]  Declaration of Janine Panchok-Berry ("Panchok-Berry Decl.") Ex. 1 (July 31, 2020 letter from T. Schiavoni to D. Molton).

(a list of details such as the date of the incident, the location of the incident, and the current location (city and state) of the claimant).[8]

On August 14, 2020, the Coalition filed an Amended Verified Statement under Rule 2019.[9]  In the amended filing, the entity calling itself the Coalition continues to claim to represent 10,000 claimants (now 12,000) who "by and through their state court counsel" retained Brown Rudnick/Blank Rome as a group.  Despite statements that indicate that the Coalition "members" are individual claimants, the disclosure states that the "State Court Counsel" were the ones who "decided to retain" the Brown Rudnick and Blank Rome lawyers for their clients instead of going forward with the official Tort Claimants' Committee.[10]  The Coalition implies that no current clients of the State Court Counsel are members of the official Tort Claimants' Committee, but this claim is contradicted by assertions on both Andrews & Thornton's website[11] as well as the website for Abused in Scouting, which is affiliated with three entities:  AVA Law Group, Inc., Kosnoff Law PLLC, and the Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.[12]

---

[8]    *Id.* Ex. 2 (Aug. 5, 2020 email exchange between S. Beville and T. Schiavoni).

[9]    D.I. 1106 (Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019).

[10]   *Id.* ¶ 1 & n.2.  The "State Court Counsel" who appear to have made the decision to form the Coalition are identified as Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Kosnoff Law PLLC, AVA Law Group, Inc., Andrews & Thornton, ASK LLP, and Slater Schulman, LLP.  *Id.*  The Coalition discloses that one or two former clients of some member of this group are members of the Tort Claimants committee.  *Id.*

[11]   Anne Andrews of Andrews & Thornton holds herself out as both "serving on the Tort Claimants' Creditors' Committee" in this bankruptcy and "a cofounder of the 'Coalition of Abused Scouts for Justice,' an Ad Hoc Committee in the Boy Scouts Chapter 11 Bankruptcy."  Panchok-Berry Decl. Ex. 3.  Ms. Andrews' page directs those interested in joining the Coalition to contact her.  *Id.*

[12]   *Id.* Ex. 4 at 000018 ("We have a representative on the Torts claimant committee (Abuse Survivors Committee) and will participate in that process throughout the duration of the bankruptcy proceeding.").

Only six individuals are identified as associated with the Coalition.  But these individuals are identified as serving in a mere advisory capacity on an "advisory board," contradicting any notion that individual claimants are the "members" of the Coalition rather than corporate and other limited liability entities that claim a monetary interest in the claims.  This amended disclosure still fails to verify what the Coalition is and how it is organized, and likewise fails to identify all entities with financial interests in the claims that are members of this group, provide a breakdown of who controls which claims, or supply information about the organization of the Committee and fee-sharing or co-counsel agreements among the member entities.

Nothing is provided in the original or amended 2019 disclosures to actually confirm that any tort claimant has an attorney-client relationship with the Brown Rudnick or Blank Rome firms, agreed to their retention, authorized them to take positions on their behalf or consented to their payment.  The tort claimants who Brown Rudnick/Blank Rome claim to represent, each of whom is alleged to be a party in interest holding claims against the Debtors, are unnamed in the 2019 disclosures but for the six claimants who make up the "advisory board."[13]  The Coalition states in the amended filing that due to confidentiality concerns the names and addresses of claimants will be disclosed only to counsel for the Tort Claimants committee.[14]  The amended disclosure states that "claims information" is being collected and organized, but the Coalition provides no specifics about what information will be disclosed, or when.[15]

---

[13]   D.I. 1106.

[14]   *Id.* ¶ 3.

[15]   *Id.* ¶ 4.

### C.    The Coalition's connections to AIS and mass-marketing companies.

The amended disclosures make clear that the Coalition was formed by entities that are linked to the mass-marketing campaign Abused in Scouting ("AIS").[16]  AIS is a consortium of entities advertising together, which was formed by AVA Law Group, Tim Kosnoff, and the Eisenberg Rothweiler firm.[17]  AIS's website states that the group "ha[s] a representative on the Torts claimant committee (Abuse Survivors Committee) and will participate in that process throughout the duration of the bankruptcy proceeding."[18]  At the bottom of the AIS homepage, a disclaimer explains that the website is an advertisement that was prepared by a corporation, AVA Law Group, Inc.[19]  A more fulsome disclosure is linked.[20]

AVA Law Group, Inc. has its own website, which lists a single lawyer, Andrew Van Arsdale.  Though this website states that "over the years, [Mr. Van Arsdale] has helped thousands of people who have been injured," he only received a law degree in 2018.[21]  The only other listed employee is a paralegal whose responsibilities include "head[ing] communication between AVA Law Group and co-counsel firms."[22]  The disclaimer goes on to disclose that "[s]ervices may be performed by affiliated law firms of AVA Law Group, Inc. who will be

---

[16]   *Id.* ¶ 1 & n.2.

[17]   *See* Panchok-Berry Decl. ¶ 26; *Id.* Ex. 5 (*Washington Post* article explaining that "Kosnoff, in collaboration with the Eisenberg Rothweiler law firm and San Diego attorney Andrew Van Arsdale, began running television ads and launched a website, abusedinscouting.com, where victims could contact the lawyers with their stories.").  AVA Law Group, Inc., Kosnoff Law PLLC, and Eisenberg Rothweiler are listed in the Debtors' Form 201 Petition as controlling one of the top-25 largest groups of known pending and asserted abuse claims at the time of filing.  D.I. 1.  Despite the listing in the Petition for Kosnoff Law PLLC with Tim Kosnoff as its lead attorney, it is not clear whether Mr. Kosnoff still practices as an attorney or whether there are other attorneys associated with Kosnoff Law.

[18]   Panchok-Berry Decl. Ex. 4 at 00018.

[19]   *Id.* at 00011.

[20]   *Id.* at 00014–15.

[21]   *Id.* Ex. 6.

[22]   *Id.*

jointly responsible for your case."[23]  The address listed on the AVA Law Group website appears to be little more than a mail drop, where solo practitioners and small partnerships share a storefront office space.[24]

Mr. Van Arsdale is separately listed as an Owner and Operations Director at Reciprocity Industries, a company that specializes in marketing tort claims.[25]  Mr. Van Arsdale's bio for that company explains that his background is in advertising and intake for plaintiffs' law firms, where he worked for the last decade.[26]  Reciprocity focuses on online and television advertising and arranges call-center services.[27]

AVA Law Group, Inc., and Kosnoff Law PLLC are listed in the Debtors' Form 201 Petition as controlling one of the top-25 largest groups of known pending and asserted abuse claims at the time of filing.[28]  A search for Kosnoff Law only turns up Kosnoff.com, which indicates that Mr. Kosnoff no longer practices law.[29]  Mr. Kosnoff is described as having "transitioned" to being a consultant providing such services as "media commentator" and consulting on mass tort advertising.[30]  Mr. Kosnoff's Washington State Bar directory entry and

---

[23]  *Id.*

[24]  *Id.* Ex. 7.

[25]  *Id.* Ex. 8.

[26]  *Id.*

[27]  *Id.*

[28]  D.I. 1.

[29]  Panchok-Berry Decl. Ex. 9 (Kosnoff.com homepage) ("Tim has transitioned to a new phase of his celebrated career.  He is now available to serve as a consultant, expert witness, mediator, lecturer and media commentator.").  Elsewhere on the same website, other attorneys at Kosnoff law and offices in Washington and Puerto Rico are referenced, but no address is listed for either of those offices and no other attorneys are listed on his website.  *Id.* Ex. 10 (Kosnoff.com Firm Overview) ("The attorneys at Kosnoff Law are dedicated to assisting the survivors of sexual abuse. . . .  From our offices in Seattle, Washington and now San Juan, Puerto Rico we have successfully represented clients throughout the United States, Canada and Latin America.").

[30]  Panchok-Berry Decl. Ex. 9 (Kosnoff.com homepage).

website list the same Houston, Texas address for "Kosnoff Law PLLC."[31]  However,

Mr. Kosnoff does not appear to be licensed to practice law in Texas,[32] and the address listed for

Kosnoff Law in Houston is the address of a mail drop box.[33]

    **D.**    **275 claims to 10,000 to 15,000 in a matter of weeks.**

After years of intense advertising for claims, there were 275 claims pending in the tort

system and 1,700 alleged claims that the Boy Scouts were aware of when they filed for

bankruptcy.[34]  In the matter of weeks since the noticing period started for the proof of claim

form, however, the number of claims has exploded, with the TCC's counsel representing to this

Court at the last hearing that somehow plaintiffs' lawyers represented on the committee have

since collected over 10,000 claims.[35]  That represents an increase of roughly 1,000 claims per

week every week since the bar date order issued with the numbers accelerating.

AIS and AVA Law Group, Inc., are behind a post-petition social media, online, TV, and

call-center campaign that appears to be generating the bulk of these alleged claims.[36]  In his

---

[31]  *Id.* Ex. 11 (Timothy Kosnoff Washington State Bar profile).

[32]  A search on the Texas Bar website (texasbar.com) returns no results for "Kosnoff", "Kosnoff Law" or "Kosnoff Law PLLC".

[33]  Google Maps shows mail drop box center, US Global Mail, at 1321 Upland Drive.  Panchok-Berry Decl. Ex. 14.  The website for US Global Mail confirms that the company provides "an actual street address, not a PO Box" that will be:

       Your Name or Company
       1321 Upland Dr.
       PMB [Personal Mail Box number]
       Houston, TX
       77043

Panchok-Berry Decl. Ex. 13.

[34]  D.I. 16, ¶ 7.

[35]  D.I. 1006 (July 9, 2020 Hr'g Tr.) at 14:16–24.

[36]  *See, e.g.*, Panchok-Berry Decl. Ex. 4 at 000002, 000022–24 (Abused in Scouting website, showing the various news outlets that have covered or quoted AIS-affiliated attorneys, including *Time Magazine*, the *Today Show*, *U.S. News and World Report*, and *National Public Radio*); *Id.* ¶ 27 (describing a video advertisement for Abused in Scouting); *Id.* Ex. 14 (Abused in Scouting Facebook page).  There has been an increase in mass tort advertising generally this year, with plaintiff firms and

video solicitation for AIS, Mr. Van Arsdale encourages prospective claimants to contact AIS by telling them: "you're never going to appear in court, you're never going to have to take a deposition."[37]  Mr. Van Arsdale represents "You can remain anonymous.  We handle everything."[38]

Advertisements state that BSA has created a compensation program, when that is not true, and that BSA has asked that claims for compensation be filed.[39]  The identity of who is behind solicitations is masked by the use of BSA trademarks in the advertisements and affirmative statements that respondents are being asked to contact "consumer advocates" at a "Consumer Justice Foundation,"[40] to join an undefined organization, "Abused in Scouting,"[41] or become a member of a "coalition."[42]

Much of the advertising sends respondents to AIS's website, which then steers them to neatly organized pages listing alleged perpetrators and scout groups by location from which information can be cribbed that is sought in the questions posed in the proof of claim form.[43]

---

referral services spending $67 million in the first five months of 2020.  *Id.* Ex. 15 (Nate Raymond, *Mass Tort Advertising Jumps Amid Coronavirus Pandemic*, Reuters Legal (July 6, 2020)).

[37]  Mr. Van Arsdale's video is a solicitation with him stating that:

> You need to contact us.  We work on the claim, we do everything for you.  You never have to travel anywhere, you're never going to appear in court, you're never going to have to take a deposition subject to these high-paid lawyers on their side.  We handle it for you.  You can remain anonymous.  We handle everything.

*See* Panchok-Berry Decl. ¶ 28.

[38]  *Id.*

[39]  *Id.* Ex. 16.

[40]  *Id.*

[41]  *Id.* Ex. 4.

[42]  *Id.* ¶ 28.

[43]  *Id.* ¶ 29 (describing a search feature on the Abused in Scouting website that allows users to search by year, name or ID, scouting unit city, scouting unit state, and/or scouting unit number to generate a list of matching units there were and the names of any "confirmed" abusers who were active in that unit at that time).

There is no indication that, post-petition, respondents are being screened, and it is impossible to meaningfully screen respondents aggregated in this manner and at this pace.[44]

The entities behind this mass-marketing campaign seek a percentage of each claim.  They have a financial interest in generating more and more claims with little incentive to screen the respondents.

## ARGUMENT

### POINT I

#### RULE 2019 REQUIRES ANY ATTORNEY WHO REPRESENTS MORE THAN ONE CLIENT TO SUPPLY, AMONG OTHER THINGS, THE IDENTITY OF EVERY CLIENT HE OR SHE REPRESENTS.

#### A.    Rule 2019's requirements are both straightforward and mandatory.

The straightforward wording of Rule 2019[45] requires that "a verified statement setting forth the information specified in subdivision (c) of this rule *shall* be filed by *every* group or committee that consists of or represents . . . multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another."

The information required by Rule 2019(c) includes:

> (c) Information required.  The verified statement *shall include*:

---

[44] Pre-petition, AIS claimed that out of 10,000 claims it screened out nearly 9,000 with insufficient evidence when they were subject to being tested in the tort system.  Yet the group claims now to represent more than the number of claims it had previously screened out.  *See* Panchok-Berry Decl. Ex. 21 (Juliana Sukut, *Montana Victims Alleging Sex Abuse in the Boy Scouts Join National Wave of Suits*, Billings Gazette (Nov. 3, 2019)).

[45] Rule 2019 was amended and reorganized in 2011.  The pre-2011 version of 2019(a) stated, in pertinent part:

> (a) Data Required.  In a . . . chapter 11 reorganization case . . . every entity . . . representing more than one creditor . . . *shall file* a verified statement setting forth (1) the name and address of the creditor or equity security holder; (2) the nature and amount of the claim or interest and the time of acquisition thereof . . . ; (3) a recital of the pertinent facts and circumstances in connection with the employment of the entity . . . ."  Fed. R. Bankr. P. 2019 (pre-2011 amendment).

(1) the pertinent facts and circumstances concerning:

    (A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code . . . the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act;

    (B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;

(2) if not disclosed under subdivision (c)(1), with respect to an entity, and *with respect to each member of a group or committee*:
    (A) *name and address*;

    (B) the *nature and amount of each disclosable economic interest*[46] held in relation to the debtor as of the date the entity was employed or the group or committee was formed;
    . . .
(3) if not disclosed under subdivision (c)(1) or (c)(2), *with respect to each creditor or equity security holder represented by an entity, group, or committee*, other than a committee appointed under § 1102 or § 1114 of the Code [11 USCS § 1102 or 1114]:

    (A) *name and address*; and

    (B) the *nature and amount of each disclosable economic interest* held in relation to the debtor as of the date of the statement.

Fed. R. Bankr. P. 2019(c) emphasis added).  The Rule further requires that the attorney's statement shall include "a copy of the instrument" empowering him or her to act on behalf of the client.  Fed. R. Bankr. P. 2019(c)(4).

    The requirements of Rule 2019 are mandatory, as it uses the word "shall," rather than "may," to command compliance.  *Nantucket Investors II v. California Federal Bank (In re Palms*

---

[46]  Rule 2019 defines "disclosable economic interest" as any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest."  Fed. R. Bankr. P. 2019(a)(1).

*Associates)*, 61 F.3d 197, 208 (3d Cir. 1995) (use of the term "shall" imposes a requirement of

mandatory, as opposed to discretionary, compliance); *In re The Muralo Company Inc.*, 295 B.R.

512, 524 & n.10 (Bankr. D.N.J. 2003) (Rule 2019 "requires entities, *including counsel*, who

would represent in a chapter 11 case more than one creditor, to file a verified statement listing

those creditors" and "explaining the circumstances of their agency") (quotations and citations

omitted).

> **B.**     **Rule 2019, which has an "extremely broad" scope, is a disclosure provision designed to ensure that all matters in a Chapter 11 reorganization process are done openly and subject to scrutiny.**

Courts have interpreted the scope of Rule 2019 to be "on its face . . . extremely broad."

*In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990).  In addition

to ensuring that lawyers have authority to speak for certain claimants, Rule 2019 seeks to

accomplish the following:

> ***Bankruptcy Rule 2019 is a disclosure provision***, which must necessarily be
> enforced as any other disclosure provision concerning attorneys or professionals,
> such as Bankruptcy Rules 2014 and 2016.  Moreover, the ***Court should also play
> a role in ensuring that lawyers adhere to certain ethical standards.  Bankruptcy
> Rule 2019 was designed for such a purpose.  It is part of the Chapter 11
> reorganization process that all matters should be done openly and subject to
> scrutiny***, whether it is the proposal of a plan of reorganization, representation of
> the debtor, or representation of numerous creditors—secured or unsecured.

*Oklahoma P.A.C.*, 122 B.R. at 392–93 (emphasis added); *see also In the Matter of F&C Int'l,

Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994) (absent compliance with

Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be

authorized to do so and may receive distributions to which they are not entitled"); *see also

Electronic Theatre Restaurants Corp.*, 57 B.R. 147, 148–49 (Bankr. N.D. Ohio 1986) (Rule 2019

requires that every person purporting to represent more than one creditor file a verified

statement).

As one court put it, Rule 2019 "is designed to foster the goal of reorganization plans which deal fairly with creditors and *which are arrived at openly*." *Muralo*, 295 B.R. at 524 (emphasis added). Another court has similarly held that the "purpose of Rule 2019 is to further the Bankruptcy Code's goal of *complete disclosure during the business reorganization process*" and to ensure that "entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent," are subject to the "control of the court." *In re CF Holdings Corp.*, 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (emphasis added). Rule 2019 is the Bankruptcy Code's mechanism for keeping tabs on multiple representations of creditors and equity security holders and is the only current, specific means of keeping a check on creditors' attorneys' conflicts. *See* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913, 939–40 (1994).

### C.  Rule 2019 requires detailed disclosures, particularly in mass tort cases.

Particularly in mass tort situations, courts applying Rule 2019 have emphasized the need to avoid conflicts of interest and to protect the integrity of the bankruptcy process. *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 168 (D.N.J. 2005) (internal citations and quotations omitted). Relying on Third Circuit authority, the court held that "in the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship." *Id.* at 168 (quoting *In re Semel*, 411 F.2d 195, 197 (3d Cir.1969)). Such information is "critical" to the administration of a bankruptcy. *Id.*

*In re Archdiocese of Saint Paul and Minneapolis*, a bankruptcy also involving claimants alleging abuse, is instructive. There, Judge Kressel held that firms representing multiple abuse claimants must comply with Rule 2019. Hr'g Tr. at 46:18–47:1, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017) [Dkt. 987] (Panchok-Berry Decl. Ex. 17). The

14

firm in question represented roughly 85 percent of the over 400 tort claimants in the case. *Id.* at

25:18–23. Noting that the firm should have voluntarily made the 2019 disclosures, *id.* at 46:18–

47:1, the court held that to comply with Rule 2019, the firm had to disclose:

> A complete copy of each form of retainer agreement, fee agreement,
> engagement agreement, referral agreement and all other applicable
> agreements authorizing the Anderson Firm to act on behalf of a creditor in
> this case or providing in any way for the payment of the Anderson Firm's
> fees and costs, including all amendments and modification to any such
> agreements.

*In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 27, 2017) [Dkt. 984]

(Panchok-Berry Decl. Ex. 18). Judge Kressel noted that if the firm perceived distrust or insult by

being compelled to comply with the Rule, "it's a distrust by the Supreme Court who promulgated

the rule, not by the parties here or me. ***The rule is the rule is the rule***." 47:6–10.

### D.     It is particularly important here to disclose the facts and circumstances of claimants' counsels' respective representations.

Official committees, such as the Tort Claimants' committee appointed by the U.S.

Trustee in this case, exist to compel similarly situated claimants to negotiate as one and to

impose on the committee and its counsel the fiduciary duty to treat all the constituents of the

committee equally. 11 U.S.C. § 1103; *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005

WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) ("[T]he members of an official committee owe

a fiduciary duty to the committee's constituents . . . . The chief purpose of an official committee

is to maximize distribution to this class.").

But the counsel for this "ad hoc" group of unidentified claimants will not be bound by the

obligation to treat all claimants equally. The Coalition represents a numerical majority of the tort

claimants in this case that presumably controlled the committee's selection of counsel.

Nonetheless, this same group is now asking to participate separately in plan negotiations under

the cloak and protection of mediation confidentiality under the title of an ad hoc committee.

15

This is an end-run around of the fiduciary duties that the code imposes on official committees to safeguard equal treatment of claimants.  This majority group has positioned itself to both elect counsel for the TCC and also sit at the table and negotiate without the fiduciary obligations imposed on their chosen representative for the committee.

It is crucial for the integrity of these proceedings that the Coalition, whatever it may be, provide complete and fulsome disclosures under Rule 2019.  Disclosing all relevant financial arrangements and all membership information is a mandatory requirement under Fed. R. Bankr. P. 2019(c).  *See In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 27, 2017) [Dkt. 984] (Panchok-Berry Decl. Ex. 18).  This requirement addresses the greater "need for policing creditor groups and those who act on their behalves" in chapter 11 cases.  9 Collier on Bankruptcy ¶ 2019.01 (16th ed. 2020).  Rule 2019 "is part of the disclosure scheme of the Bankruptcy Code and is designed to foster the goal of reorganization plans that deal fairly with creditors and that are arrived at openly," *id.*, and "subject to the scrutiny of the court." *Baron & Budd*, 321 B.R. at 165.

## POINT II

### THE COALITION'S 2019 DISCLOSURES
#### ARE DEFICIENT

The Coalition's filings fall well short of compliance with the requirements of Rule 2019. As a threshold matter, the Coalition has refused to identify its claimants to anyone other than the Tort Claimants' committee.[47]  The Protective Order entered in this case was held out by its proponents as adequate to protect claimants' identifying information, which belies the confidentiality concerns cited by the Coalition.

---

[47]    D.I. 1106 ¶ 3; Panchok-Berry Decl. Ex. 2 (Aug. 5, 2020 email exchange between S. Beville and T. Schiavoni).

Without basic identifying information for the 10,000 claimants, there is no way to verify anything about a claim.  Nor is there any way to flush out conflicts.  Blank Rome, for instance, currently represents, and in the recent past has represented, multiple Catholic dioceses in bankruptcy and coverage actions related to alleged abuse claims.[48]  Without the list of claimants Blank Rome claims to represent here, there is no way to assess whether and the extent to which Blank Rome is concurrently representing these Catholic dioceses in cases where its alleged claimant clients here are asserting claims against Catholic dioceses that are concurrently Blank Rome's clients.  Nor is there any way to assess potential conflicts among the claimants in this case and compliance with other applicable ethical rules.

In ordering a law firm acting on behalf of a large majority of tort claimants in the Saint Paul and Minneapolis Archdiocese bankruptcy to comply with Rule 2019, Judge Kressel stressed that the court and other parties in interest need to be provided information to assess potential conflicts of interest:  "[W]e can understand that there are different interests or different motivations or just different things going on, and so we need to know that.  That's something the entire body of people, the court and lawyers need to understand."  Hr'g Tr. at 48:22–49:3, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017) [Dkt. 987] (Panchok-Berry Decl. Ex. 17).  Rule 2019 disclosures are particularly important here, where claimants are

---

[48]    *See Archdiocese of New York v. Ins. Co. of N. Am.*, No. 653772/2019 (N.Y. Sup. Ct. filed June 28, 2019) (Panchok-Berry Decl. Ex. 19); *see also* Application to Employ Blank Rome LLP as Special Insurance Counsel for the Debtor and Debtor-in-Possession, *Roman Catholic Archdiocese of Agana*, No. 19-00010 (Bankr. D. Guam Jan. 17, 2019) (Dkt. No. 39) (Panchok-Berry Decl. Ex. 20); *In re Diocese of Duluth*, 565 B.R. 914, 915 (2017); Application to Employ Blank Rome as Special Insurance Counsel for the Debtor and Debtor-in-Possession, *In re Roman Catholic Church of the Archdiocese of Santa Fe,* No. 18-13027-11 (D.N.M. Dec. 31, 2018) (Dkt. 55) (Panchok-Berry Decl. Ex. 22); *Ex Parte* Application For Order Appointing Blank Rome, LLP as Special Insurance Counsel to the Debtor, *In re the Diocese of Buffalo, N.Y.*, No. 20-10322 (Bankr. W.D.N.Y. Apr. 22, 2020) (Dkt. 258) (Panchok-Berry Decl. Ex. 23).  Without the list of claimants, there is no way to assess whether Blank Rome here represents claimants who have also filed claims against their clients in those cases.

17

allegedly being represented as a collective.  The court and parties in interest have a right to

information that will allow them to assess these firms' compliance with ethical rules, including

- Model Rule 1.2, which requires that an attorney "abide by a client's decisions" and consult with each individual client.  While a client may give advance authorization to specific action by an attorney, the client must also be provided the opportunity to revoke such authority.[49]
- Model Rule 1.7, which bars an attorney from engaging in a concurrent conflict of interest absent informed consent from each client.[50]  As the comments to Rule 1.7 explain, such a conflict may arise where there is an "incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question."[51]
- Model Rule 1.8(g), which requires that an attorney obtain informed consent in a signed writing from each claimant before entering into an aggregate settlement in compliance with Rule 1.8(g).[52]

The Coalition's amended disclosure raises more questions than it answers—the Coalition

claims its "members" are parties in interest, but concedes that six entities, including a corporate

entity, each holding their own financial interest in a subset of claims, are somehow behind the

formation of the Coalition and its decision to retain separate bankruptcy counsel.[53]  Importantly,

the Coalition's statement does not disclose anything about the economic interests of the entities

---

[49]   Model R. Prof'l Conduct 1.2(a), 1.2 cmt. 3.

[50]   Model R. Prof'l Conduct 1.7.

[51]   Model R. Prof'l Conduct 1.7 cmt. 23.

[52]   Model R. Prof'l Conduct 1.8(g).  Comment 16 to Rule 1.8 explains:

> Differences in willingness to make or accept an offer of settlement are among the risks of common representation of multiple clients by a single lawyer. Under Rule 1.7, this is one of the risks that should be discussed before undertaking the representation, as part of the process of obtaining the clients' informed consent. In addition, Rule 1.2(a) protects each client's right to have the final say in deciding whether to accept or reject an offer of settlement and in deciding whether to enter a guilty or nolo contendere plea in a criminal case. The rule stated in this paragraph is a corollary of both these Rules and provides that, before any settlement offer or plea bargain is made or accepted on behalf of multiple clients, the lawyer must inform each of them about all the material terms of the settlement, including what the other clients will receive or pay if the settlement or plea offer is accepted.

[53]   D.I. 1106 ¶ 1 & n.2.

having an interest in the claims that purport to make up its constituency as it is required to under 2019(c)(2).

The Coalition likewise does not provide, nor even offer to make available, a copy of the instrument(s) that authorizes either Brown Rudnick or Blank Rome to act on behalf of the member entities or the instruments signed by individual claimants authorizing the retention of Brown Rudnick and Blank Rome and consenting to their payment.  Fed. R. Bankr. 2019(c)(4). The Court and parties in interest have not been shown any evidence that would establish the agreement of these 10,000 claimants to be represented by Brown Rudnick and Blank Rome, demonstrate privity between the creditors and these firms or consent to their payment.  Nor has the Coalition, Brown Rudnick, or Blank Rome provided anything to show that they even actually represent individual claimants as opposed to the limited liability companies that assert their own conflicting interest in their claims.  The lack of clarity is the very reason Rule 2019 mandates that the disclosure include a copy of the instrument that allows the Coalition to act on behalf of the creditors it claims to represent.  Fed. R. Bankr. 2019(c)(4).

Moreover, the Coalition provides no information regarding the "pertinent facts and circumstances" regarding "the formation of the group or committee, including the name of the entity at whose instance the group or committee was formed" or "the employment of the entity." Fed. R. Bankr. 2019(c)(1).  To the extent that other entities assert interests in the claims of the claimants who allegedly make up the Coalition, information about the fee-sharing, co-counsel, or other arrangements among those entities, and the firms who represent the Coalition as a group should be disclosed.  Fed. R. Bankr. 2019(c)(1), (4); *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 27, 2017) [Dkt. 984] (Panchok-Berry Decl. Ex. 18); *Baron & Budd*, 321 B.R. at 167.  The Rule 2019 compliance orders issued by the bankruptcy court in

*Congoleum*[54] (and affirmed by the District of New Jersey in Baron & Budd) and the bankruptcy court in *In re Archdiocese of Saint Paul and Minneapolis* are attached to this motion as Appendices 1 and 2, respectively. These orders are instructive regarding the scope of Rule 2019 and likewise provide models for the Order the Court should issue here.

In *In re Archdiocese of Saint Paul and Minneapolis*, Judge Kressel stressed that one of Rule 2019's purposes is to permit the court and parties to examine representative entities' economic interests in a case, as a means of assessing what each entity involved in a group has to gain from that involvement. Hr'g Tr. at 48:16–49:3, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017) [Dkt. 987] (Panchok-Berry Decl. Ex. 17). In that case, making this assessment was particularly important with regard to a plaintiffs' firm that represented a numerical majority of claimants, and who held, in the words of Judge Kressel, "a bigger economic interest" than anyone else in the case. *Id.* at 36:8–12.

Likewise, courts in this circuit have determined that the requirement to provide "pertinent facts and circumstances" regarding "the employment of the entity" compels disclosure of any or all fee-sharing, co-counsel, and referral arrangements for this sort of ad hoc committee. *Baron & Budd*, 321 B.R. at 167. "The precise nature of these relationships falls well within the literal language of the Rule as well as the Judge's discretion to apply the rule in these circumstances." *Id*. Disclosure of these arrangements is necessary "to ensure that reorganization plans deal fairly with all creditors and are arrived at openly." *Id*. Comprehensive 2019 disclosures allow the Court to analyze the totality of the circumstances in this chapter 11 case and "bring[] to bear the

---

[54] Panchok-Berry Decl. Ex. 24. (Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other Relief, *In re Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. Sept. 2, 2005), Dkt. 1153).

values of good faith and fairness in the reorganization process that pervade the bankruptcy code." *Id.*

Furthermore, Rule 2019 disclosures would allow the Court and parties to assess the means through which so many alleged claims were aggregated so fast. Those involved with the Coalition and others (whose connections are less clear) engaged in post-petition solicitation campaigns in critical ways misrepresents these proceedings and intentionally masked what service the advertising entity in fact provides.[55] Some of the Coalition's principals appear to act as attorneys, or advertise for the legal services of others, listing addresses that are not their actual offices.[56] All of this raises questions about how these 10,000 claimants were retained, who they actually signed on to have represent them, and whether those agreements have disclosed sufficient details to the clients about the representation and consented to conflicts flowing from multiple representations. The Coalition's compliance with Rule 2019 would shed light on these questions and ensure that a resolution of these cases is arrived at openly.

### POINT III

#### THIS COURT SHOULD ORDER CLAIMANTS' COUNSEL TO COMPLY WITH RULE 2019 OR, IN THE ALTERNATIVE, BAR THEM FROM PARTICIPATING IN THE BANKRUPTCY.

Because Rule 2019 is both mandatory and integral to the progress of a fair and open bankruptcy proceeding, courts routinely and rigorously enforce compliance by imposing the

---

[55] *Supra* notes 38–42 and accompanying text.

[56] *See supra* notes 29–33 and accompanying text, explaining that Mr. Kosnoff lists a Texas address on his website, which advertises legal services provided by others, but does not appear to actually practice or be licensed in Texas. Texas law prohibits persons who are not lawyers licensed in Texas from engaging in the unauthorized practice of law in Texas, section 81.101 *et seq.* of the Texas Government Code, are applicable to such non-Texas lawyers. Likewise, under Rule 5.05(b) of the Texas Disciplinary Rules of Professional Conduct, a Texas lawyer is prohibited from assisting "a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

penalties authorized under Rule 2019(e). *See, e.g.*, *Oklahoma P.A.C.*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990) ("If there is a failure to comply with the disclosure provisions of Bankruptcy Rule 2019, the Court may, *inter alia*, refuse to permit the entity acting on behalf of the parties from being heard further in a Chapter 11 case."); *CF Holdings*, 145 B.R. at 127 (requiring supplemental filing); *In re Vestra Indus., Inc.*, 82 B.R. 21, 22 (Bankr. D. S.C. 1987) (disallowing claims filed *en masse* by union for failure to comply with Rule 2019 unless defects were cured within sixty days); *In re Electronic Theatre Restaurants Corp.*, 57 B.R. at 149 (upholding a claim objection because the entity filing the claim had not shown that it was authorized to act on behalf of claimants); *In re Keene Corp.*, 205 B.R. 690, 704 (Bankr. S.D.N.Y. 1997) (sanctions appropriate in connection with a finding of failure to comply with Rule 2019).

Rule 2019(e) specifically provides that this Court may impose the following remedies for failure to supply the information required under the Rule:

> (1) On motion of any party in interest, or on its own motion, the court may determine whether there has been a failure to comply with any provision of this rule.

> (2) If the court finds such a failure to comply, it may:
> (A) refuse to permit the entity, group, or committee to be heard or to intervene in the case;
> (B) hold invalid any authority, acceptance, rejection, or objection given, procured, or received by the entity, group, or committee; or
> (C) grant other appropriate relief.

For the claimants' counsel to comply with the unambiguous requirements of Rule 2019, the Court should order them to supply the following information:

- Under subsection (c)(3)(A) ("name and address" of "each creditor or security holder represented by an entity, group, or committee"), counsel must provide a list of entities that are members of or behind the Coalition that have a financial interest in claims against the BSA estate and the identity of each of the contingent creditors on whose behalf Brown Rudnick is authorized to act.

- Under subsection (c)(3)(B) ("the nature and amount of each disclosable

economic interest"), counsel must supply reasonably detailed information
disclosing the financial interest that each of the entities that are members
of or behind the Coalition have in claims against the BSA estate and any
fee splitting or sharing arrangements between them.

- Under subsection (c)(1) ("a recital of the pertinent facts and circumstances
  concerning . . . the employment of the entity, including the name of each
  creditor or equity security holder at whose instance the employment was
  arranged"), counsel must provide information disclosing the entities or law
  firms that retained them, including any evidence of informed consent by
  any affected claimant and any co-counsel, fee-sharing, or referral
  agreements, and the basis for counsel to have privity with the underlying
  claimants.

- Under subsection (c)(4) ("a copy of the instrument, if any, authorizing the
  entity, group, or committee to act on behalf of creditors or equity security
  holders"), counsel must supply the retention agreements, fee-sharing
  agreements arrangements and/or co-counsel agreements authorizing the
  Coalition to "act on behalf of creditors . . . ."

The lack of transparency regarding the scope, facts, and circumstances of multiple

representations and how they affect this bankruptcy's plan formulation, claim classification,

allowance and distribution, and claimant voting require this Court's intervention to preserve the

integrity of a public and open bankruptcy process.

Alternatively, the Court should bar non-complying claimants' counsel from participating

in the bankruptcy. The Court has the authority to bar claimants' counsel from participating in

this bankruptcy (on behalf of any clients) unless they comply with their Rule 2019 obligations.

*See* Fed. R. Bankr. P. 2019(e)(2) (in response to a failure to comply with Rule 2019(b), Court

may "refuse to permit the entity, group, or committee to be heard or to intervene in the case" and

"grant other appropriate relief"). Other courts have also cautioned against counting the votes of

any claimants affected by non-compliance with Rule 2019. *In re Mid-Valley, Inc*., Case No. 03-

35592 (Bankr. W.D. Pa. April 13, 2004), Hr'g Tr., Dkt. No. 1186 at 87–88 ("[I]f there isn't a

2019 statement of record, the votes will not be counted. . . . And by the time we get to the plan

confirmation hearing, if they're not of record, their claims will not be counted."); *In re*

*Congoleum Corp.*, No. 03-51524 (Bankr. D.N.J. Dec. 30, 2004), Hr'g Tr., Dkt. No. 1861 at 37.

The "[f]ailure to comply [with Rule 2019] may result in inability to be heard in the case, and

invalidity of reorganization plan ballots or other documents filed on behalf of the creditors by the

attorney, or other appropriate relief."  Fed. R. Bankr. P. 2019(e)(2); 9 Norton Bankr. L. & Prac.

3d § 172:22; *Oklahoma P.A.C.*, 122 B.R. 387; *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th

Cir. 1989)).

      For example, in *Reid*, the Sixth Circuit affirmed a bankruptcy court's refusal to allow a

class proof of claim filed by an attorney who did not submit a Rule 2019 statement and thus

failed to "elucidate his authority as agent" for the creditors whom he purportedly represented.

*Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989); *see also In re Baldwin United

Corp.*, 52 B.R. 146, 148 (Bankr. S.D. Ohio 1985) (holding that failure to comply with Rule 2019

is cause for denial of class proof of claim).  The Sixth Circuit rejected the non-complying

attorney's argument that he was authorized as agent for the creditors to file a class proof of claim

because he represented them in underlying state court litigation, noting that consent to one piece

of litigation is "not tantamount to a blanket consent to any litigation the class counsel may wish

to pursue."  *Reid*, 886 F.2d at 1471–72.

      Similarly, in *Oklahoma P.A.C.*, the bankruptcy court did not allow a lawyer to represent

both junior and senior lien creditors secured by the same asset in a lift-stay adversary proceeding

because the lawyer could not vigorously represent the interests of both parties.  *Oklahoma

P.A.C.*, 122 B. R. at 392.  The bankruptcy court dismissed the attorney's contention that Rule

2019 abridged the creditor's rights to be heard in contravention of the Bankruptcy Code's

Section 1109(b).  *Id.* at 393.

**CONCLUSION**

This Court should enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, compelling attorneys representing the Coalition to amend their 2019 disclosure [D.I. 1053, amended at 1106] to include missing information required by Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") and, before the Coalition is permitted to participate in this case or gain its own access to other parties' confidential material, compelling attorneys representing the Coalition to produce to movants and those joining this motion, under the terms of the Protective Order [D.I. 799], the specific information enumerated in the attached Proposed Order (**<u>Exhibit A</u>**) pursuant to Rule 2019; or, in the alternative, the Court should bar the Coalition from participating in the bankruptcy for noncompliance with Rule 2019.

Dated:  August 26, 2020

Respectfully Submitted,


By:  _/s/ Stamatios Stamoulis_         
     Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone:   302 999 1540
Facsimile:    302 762 1688


O'MELVENY & MYERS LLP
Tancred Schiavoni (_pro hac vice_)
Janine Panchok-Berry (_pro hac vice_)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:    212 326 2000
Facsimile:     212 326 2061


_Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America, Westchester Fire Insurance
Company and Westchester Surplus Lines
Insurance Company_

By:  _/s/ Erin R. Fay_         
     Erin R. Fay (#5268)

BAYARD, P.A.
Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone:  302 655 5000
Facsimile:   302 658 6395
Email:  efay@bayardlaw.com
      gflasser@bayardlaw.com

SHIPMAN & GOODWIN LLP
James P. Ruggeri (_pro hac vice_ pending)
Joshua D. Weinberg (admitted _pro hac vice_)
Abigail W. Williams (_pro hac vice_ pending)
1875 K Street, NW, Suite 600
Washington, DC 20003
Telephone:   202 469 7750
Facsimile:  202 469 7751

_Attorneys for First State Insurance Company,
Hartford Accident and Indemnity Company and
Twin City Fire Insurance Company_

**APPENDIX 1**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

Caption in Compliance with D.N.J.LBR 9004-2©)

STUTZMAN, BROMBERG, ESSERMAN &
PLIFKA
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75214
Tel (214) 969-4900
Fax (214) 969-4999

LEVITT & SLAFKES, P.C.
76 South Orange Avenue, Suite 305
South Orange, New Jersey 07079
(973) 313-1200
Attorneys for Motley Rice, LLC
BY: Bruce H. Levitt, Esq. (BL9302)

| | |
|---|---|
| In Re: | Case No.: 03-51524 |
| **CONGOLEUM CORPORATION et. al.,** | (Jointly Administered) |
| **Debtors.** | Adv. No.: |
| | Hearing Date: **July 26, 2004** |
| | Judge: Kathryn C. Ferguson |

**Order Filed on 9/2/2004 by Clerk U.S. Bankruptcy Court District of New Jersey**

**ORDER REQUIRING COMPLIANCE WITH BANKRUPTCY
RULE 2019 AND GRANTING OTHER RELIEF**

The relief set forth on the following pages, numbered two (2) through five (5) is hereby
ORDERED.

**DATED: 9/2/2004**

Honorable Kathryn C. Ferguson
United States Bankruptcy Judge

**Page 2**
Debtor: Congoleum Corporation, et. al.
Case No.: 03-51524 KCF (Jointly Administered)
Caption:    Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other
Relief

---

This core matter involving the administration of this bankruptcy case having come before the Court on the Motion of Travelers Casualty and Surety Company and St. Paul Fire and Marine Insurance Co. [docket no. 919], and on the separate Motion of Century Indemnity Co., ACE American Insurance Co., and ACE Property and Casualty Insurance Co. [docket no. 922]; and the Court having considered all pleadings, letters and statements filed in connection therewith and the arguments of counsel at the July 26, 2004 hearing; and it appearing that some counsel to asbestos tort claimants, including several of the members of the pre-petition committee, represent multiple creditors in this Chapter 11 case and have not filed statements required by Federal Rule of Bankruptcy Procedure 2019 promulgated under 28 U.S.C. § 2075; and it appearing that certain of the Rule 2019 Statements filed to date may not meet the requirements of that Rule; and based on the Court's legal rulings at the conclusion of the July 26, 2004 hearing; and upon service of a proposed form of this Order, under the Five-Day Rule, Local Bankruptcy Rule 9072-1(d), upon (i) the Master Service List, (ii) all parties filing opposition to the Motions, (iii) all counsel appearing at the July 26, 2004 hearing on the Motions, (iv) all members of the pre-petition committee, and (v) a list of counsel for asbestos tort claimants who  filed master ballots herein, which list was furnished by the Debtors' counsel to Travelers' counsel on August 25 ("Asbestos Claimants Counsel List")[, and consideration of objections thereto filed pursuant to the Five-Day Rule], IT IS HEREBY:

**ORDERED** that, all counsel representing more than one creditor herein (including by having executed a ballot on the proposed plan of reorganization on behalf of more than one creditor) shall (whether or not such counsel has filed a notice of appearance herein) file a Rule 2019 Statement, within TEN (10) days after the entry of this Order on the electronic docket, fully complying with the

**Page 3**
Debtor: Congoleum Corporation, et. al.
Case No.: 03-51524 KCF (Jointly Administered)
Caption:       Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other
               Relief

requirements of Rule 2019 except as hereby limited by subparagraph (c)(i) of the next **ORDERED**

paragraph; and it is further

     **ORDERED** that, pursuant to Rule 2019 and this Order, such Rule 2019 Statement shall be sworn

under the penalty of perjury and shall include:

     (a) a list of the names and addresses of all creditors (including creditors for whom the filing

counsel is acting as co-counsel), and a general statement about the nature of their respective claims and

when those claims arose;

     (b) a certification that counsel has the authority to vote for each claimant on whose behalf

counsel executes a ballot on a proposed plan of reorganization, pursuant to (i) an executed separate

bankruptcy-specific power of attorney or (ii) a bankruptcy specific power of attorney clause that is part

of an executed retainer agreement or contract of representation, in either case authorizing the attorney to

vote on behalf of the client in this bankruptcy proceeding;

     (c) attachment of the lesser of: (i) 25 executed bankruptcy-specific powers of attorney or other

bankruptcy-specific authorizing instruments or (ii) all bankruptcy specific powers of attorney or other

bankruptcy-specific authorizing instruments, executed by creditors in connection with this bankruptcy

case on whose behalf the counsel votes, with, if necessary, the redaction of any attorney-client privileged

information or other confidential information;

     (d) a list and a detailed explanation of any type of co-counsel, consultant or fee-sharing

relationships and arrangements whatsoever, in connection with this bankruptcy case or claims against any

of the Debtors, and attachment of copies of any documents that were signed in conjunction with creating

that relationship or arrangement; and

*Approved by Judge Kathryn C. Ferguson  September  02, 2004*

**Page 4**
Debtor: Congoleum Corporation, et. al.
Case No.: 03-51524 KCF (Jointly Administered)
Caption:      Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other
              Relief

---

(e)  for any member of the pre-petition committee, in their respective Rule 2019 Statement, such

statement shall include the information required by Rule 2019 (including for the period prior to the filing

of the petition herein) with respect to the committee, including as required by clauses (3) and (4) of

Paragraph (a) of the Rule; and it is further

**ORDERED** that, if any counsel required to file a Rule 2019 Statement does not timely file its

Rule 2019 Statement in accordance with this Order or if a non-complying Statement is filed or if a

presently filed Rule 2019 Statement is not supplemented to comply with this Order, the Debtor is

directed to send the Disclosure Statement to the underlying claimants and allow the underlying claimants

to vote on the proposed plan of reorganization under procedures to be determined by this Court;

**ORDERED** that, Mr. Joseph F. Rice of Motley Rice LLC shall, within a reasonable time after

the 10-day period provided for above, and at a mutually convenient time and place, appear for the

continuance of his deposition herein, and Mr. Rice is instructed to answer all outstanding

deposition questions on any type of co-counsel, consultant or fee-sharing relationship whatsoever, and

such continued deposition shall not be covered by any discovery stay order the Court may issue in

connection with the deferral of the scheduled confirmation hearing from September 9, 2004; and it is

further

**ORDERED** that, nothing in this Order is a ruling on whether any Rule 2019 Statement filed to

date complies, or does not comply, with Rule 2019 or the legal effect of not filing a Rule 2019 Statement

or filing a non-complying Rule 2019 Statement, and the Court maintains jurisdiction with respect to such

matters and with respect to the interpretation and enforcement of this Order; and it is further

*Approved by Judge Kathryn C. Ferguson  September  02, 2004*

**Page 5**
Debtor: Congoleum Corporation, et. al.
Case No.: 03-51524 KCF (Jointly Administered)
Caption:      Order Requiring Compliance with Bankruptcy Rule 2019 and Granting Other
              Relief

---

**ORDERED** that, counsel for Travelers shall serve this Order on (i) the Master Service List

herein, (ii) all parties filing opposition to the Motions, (iii) all counsel appearing at the July 26, 2004

hearing on the Motions, (iv) all members of the pre-petition committee, and (v) counsel on the Asbestos

Claimants Counsel List, which service shall be effected by email, facsimile or  regular mail, and that

such service and posting of the Order on the electronic docket herein shall be good and sufficient service

and notice hereof.

*Approved by Judge Kathryn C. Ferguson  September  02, 2004*

**APPENDIX 2**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

          Debtor.

BKY 15-30125

Chapter 11

## ORDER

This case is before the court on the debtor's motion for an order requiring compliance

with Rule 2019 of the Federal Rules of Bankruptcy Procedure.

Based on the motion and file,

IT IS ORDERED:

On or before March 9, 2017, Jeff Anderson and Associates, P.A., shall comply with the

provisions of Federal Rule of Bankruptcy Procedure 2019 by filing  a

verified disclosure containing the following:

A.      A complete copy of each form of retainer agreement, fee agreement,

engagement agreement, referral agreement and all other applicable agreements authorizing the

Anderson Firm to act on behalf of a creditor in this case or providing in any way for the payment

of the Anderson Firm's fees and costs, including all amendments and modification to any such

agreements.  The Anderson Firm shall provide exemplar copies of each version of the actual

signed agreements entered into with creditors in this case.  The Anderson Firm may redact the

personally identifying information of those creditor clients from such agreements but may not

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/27/2017*
Lori Vosejpka, Clerk, by LH

1

redact any other information.  The disclosure shall further set forth by claimant number which

exemplar agreements apply to each client.

    B.     All other information and disclosures required by Fed. R. Bankr. P. 2019.


Dated: *February 27, 2017*              /e/ Robert J. Kressel
                                      Robert J. Kressel
                                      United States Bankruptcy Judge

**EXHIBIT A**

***Proposed Order***

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE Boy Scouts, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date: September 9, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline: September 2, 2020 at 4:00 p.m. (ET)** |

**[PROPOSED] ORDER GRANTING CENTURY AND HARTFORD'S MOTION TO COMPEL THE ATTORNEYS REPRESENTING THE ENTITY CALLING ITSELF THE "COALITION" TO SUBMIT THE DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

Upon the motion (the "Motion")[2] of Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company ("Century") and First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company ("Hartford") for entry of an Order granting certain relief requested in the Motion (D.I. _____), it is HEREBY ORDERED THAT:

Attorneys representing the Coalition of Abused Scouts for Justice (the "Coalition") are compelled to amend their 2019 disclosure [D.I. 1053, amended at 1106] to include the following missing information required by Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") and,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2] All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

before the Coalition is permitted to participate in this case or gain its own access to other parties'

confidential material, attorneys representing the Coalition are compelled to produce to movants

and those joining this motion, under the terms of the Protective Order [D.I. 799], the following

information pursuant to Rule 2019:

A.    A list of the names and addresses of all creditors (including creditors for whom the filing counsel is acting as co-counsel), and a general statement about the nature of their respective claims and when those claims arose.

B.    A complete copy of each form of retainer agreement, fee agreement, engagement agreement, referral agreement and other agreements authorizing the Coalition and/or State Court Counsel to act on behalf of a creditor in this case, consenting to the payment of the Coalition's and/or State Court Counsels' fees and costs and their representation of multiple parties, including all amendments and modification to any such agreements. The Coalition shall provide exemplar copies of each version of the actual signed agreements entered into by the Coalition and/or State Court Counsel with creditors in this case and certify that the exemplars of each unique form of signed agreement are included.

C.    A list and explanation of any co-counsel, consultant or fee-sharing relationships and arrangements in connection with this bankruptcy case or claims against any of the Debtors, and attachment of copies of any documents that were signed in conjunction with creating that relationship or arrangement.

D.    All other information and disclosures required by Fed. R. Bankr. P. 2019.

Dated _____

_____

United States Bankruptcy Judge