## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 1104, 1120 and 1123** |

### THE FUTURE CLAIMANTS' REPRESENTATIVE'S OBJECTIONS TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY BROUGHT BY MARCO ROMERO, JR. AND AUDREY ROMERO, MARGARET HENDERSON, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF N.G.H., DECEASED, AND <u>DEBTORS WITH RESPECT TO LIANFEN QIAN</u>

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

James L. Patton, Jr., the Future Claimants' Representative, (the "FCR") hereby submits

this Objection (the "Objection") to motions for relief from the automatic stay brought by Marco

Romero, Jr. and Audrey Romero (collectively, "Romero") (ECF No. 1120) and Margaret

Henderson, as Personal Representative of the Estate of N.G.H., Deceased ("Henderson") (ECF

No. 1104), and to the motion of the Debtors for entry of an order (i) approving settlement of claim

of Lianfen Qian ("Qian") and (ii) lifting the automatic stay, to the extent necessary, to permit

payment of settlement amount by applicable insurance (ECF No. 1123) (collectively, the

"Motions"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

1.     Both the Romero and Henderson Motions seek relief from the automatic stay to

prosecute non-abuse bodily injury claims against Debtors and certain local councils.  These claims

implicate insurance coverage that is property of this Bankruptcy Estate, including primary and

excess level policies issued by Old Republic Insurance Company and its affiliates' (collectively

"Old Republic") (and, to the extent reaching levels in excess, potentially other insurers) for years

2015–2016 and 2018–2019.

2.     Without waiver of any argument that the Old Republic primary policies are

property of the estate, it is without dispute that policies in excess of the primaries are property of

the estate that would be depleted by the payment of claims under these policies.  Thus, the Court

should deny both the Romero and Henderson Motions without prejudice because they have the

potential to erode insurance assets of the estate if they exceed the $1M per occurrence limits,

including defense costs, under the Old Republic primary level policies.

3.      The Qian Motion seeks approval of a settlement under an insurance policy issued by Evanston Insurance Company ("Evanston").  There is further no dispute that amounts paid under this policy are paid from and to the detriment of the estate.

4.      To the extent that, after the bar date it can be ascertained that there will be sufficient insurance to pay all claims triggering these policy periods, Romero, Henderson, and Debtors (with respect to Qian) may be permitted to renew their Motions.  The bar date is less than three months away.[2]  Only once the bar date passes, and only once the number and quality of claims implicating Debtor's insurance assets become clear, will the FCR be able to make a determination as to whether allowing the subject claims and settlement to proceed will or will not negatively affect the rights of future claimants.

## BACKGROUND AND PROCEDURAL HISTORY

5.      The Romero claim arose on February 6, 2016, as the result of an alleged eye injury. This claim falls within the policy period of Old Republic primary policy No. MWZY 303431 (March 1, 2015 – March 1, 2016), which has $1M per occurrence limits and no aggregate limit, with defense costs covered within the per occurrence limits.

6.      The Henderson claim arose on October 13, 2018, as the result of an alleged wrongful death.  This claim falls within the policy period of Old Republic primary policy No. MWZY 312833 (March 1, 2018 – March 1, 2019), which has $1M per occurrence limits and no aggregate limit, with defense costs covered within the per occurrence limits.

7.      In both the 2015 and 2019 policy years, Old Republic issued policies in excess of its primary policies with $9M aggregate limits.

---

[2] ECF No. 695 (establishing General Bar Date of November 16, 2020).

26982257.5

8.     The FCR previously objected to other motions to lift the stay on claims implicating Old Republic and coverage three months ago, on June 1, 2020.[3]  On July 2, 2020, the FCR objected to allowing the Qian claim to proceed under the Evanston coverage for the same reasons set forth in the June 1, 2020 objection with respect to other claims under the Evanston policy.[4]

9.     The FCR's prior objection as to the Old Republic coverage focused in particular on the potential unavailability of the JP Morgan L/Cs to reimburse Old Republic's payments under the terms of a Program Agreement with the Debtors.[5]

10.     The fundamental concern driving the FCR's objection in both instances was—and with respect to the instant Motions remains—the uncertainty that exists prior to the General Bar Date about the total number and value of claims that will ultimately be payable by the Debtors, and the sufficiency of the Debtors' assets to reimburse such claims.

11.     Resolving one of the FCR's concerns, Old Republic confirmed that it would honor its duty to pay an unlimited number of claims under its primary level policy even if it were unable to obtain reimbursement for such payments from the Debtor's JP Morgan L/Cs under the terms of a Fronting Agreement.[6]

12.     The FCR also noted, however, that there was additional risk that claims under the Old Republic policies would exceed the primary level policy and erode excess level aggregate limits.[7]  Indeed, the problems inherent in the erosion of aggregate limits drove the FCR's objection to the payment of claims under the Evanston policies.[8]The FCR ultimately withdrew its objection

---

[3] ECF No. 745.
[4] ECF No. 940.
[5] ECF No. 745 ¶¶ 1-6.  Capitalized terms used herein are given the definition set forth in the FCR's prior objection (*id.*) unless otherwise defined herein.
[6] ECF No. 770.
[7] ECF No. 745 n. 4.
[8] ECF No. 745 ¶¶ 8, 27.

to the prior stay-related motions upon conditions that the parties negotiated and agreed to in the form of proposed orders, which the Court entered on July 8, 2020.[9]  The terms of those orders included that "Nothing in this order prejudices the right of any party to move to reinstate the stay or to seek additional relief from the stay."[10]

13.    Approximately two months have passed since the Court entered the prior agreed orders.  Since that time, the number of known abuse claims has increased significantly.  Until recently, the best information available suggested that the Debtors faced approximately 1,700 current abuse claims.[11]  The FCR now understands, however, that there may be more than 10,000 current abuse claims against the Debtors.[12]  The FCR further anticipates that an even greater number of abuse claims may become apparent after the bar date.  Thus, there is even less reason to assume now than there was previously that there will be sufficient coverage within and in excess of the Old Republic and Evanston policies to cover all other known and unknown claims.[13]

14.    The scope of total claims facing the Old Republic policies and all insurance in excess thereof remains unclear at this point.  The FCR therefore lacks a meaningful basis to assess and consent or object to the settlement of individual claims as they arise.

15.    Meanwhile, the defense and settlement of individual claims is continuing to erode applicable insurance limits.  The bar date is quickly approaching, however, and the parties will likely have a greater degree of certainty as to whether sufficient insurance coverage will be

---

[9] ECF Nos. 985, 987, 989, 990.
[10] ECF Nos. 989, 990.
[11] ECF No. 4 at 3 ("In addition to the approximately 275 lawsuits pending in state and federal courts across the United States, attorneys for abuse victims have provided information regarding approximately 1,400 additional claims not yet filed, for a total of approximately 1,700 known asserted abuse claims.").
[12] ECF No. 1106.
[13] ECF No. 678, 686.

26982257.5

available to fully compensate all current and future claims notwithstanding current erosion rates and levels.

16.    The FCR therefore objects to lifting the stay as to the Romero and Henderson claims and as to the Qian settlement at least until such information becomes available after the bar date passes on November 16, 2020.

## ARGUMENT

17.    The Motions should be denied because allowing the subject claims to proceed risks adversely affecting the assets of the Debtors' estate and allowing unfair access by certain claimants to those assets.

18.    The automatic stay contemplated by section 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or the "Code"), is one of the most fundamental protections afforded by the Bankruptcy Code.  See H.R. Rep. No. 95–595, at 340 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97.  The "breathing spell" of the automatic stay was "[designed] to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."  *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982).

19.    There is no question that insurance policy rights are estate property subject to the protection of section 362(a)(3).  *See ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006); *First Fid. Bank v. McAteer*, 985 F.2d 114, 116 (3d Cir. 1993); *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987); *see generally* 3 Collier on Bankruptcy ¶ 362.03 (15th ed. Rev. 2015) ("[T]he prevailing view is that an insurance policy is property of

26982257.5

the estate, protected by the automatic stay of § 362(a)(3).").  Indeed, insurance policies constitute "valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be . . . the most important asset of the debtor's estate." *In re W.R. Grace & Co.*, 475 B.R. 34, 149 (Bankr. D. Del. 2012), *aff'd sub nom*. *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), *and aff'd*, 532 F. App'x 264 (3d Cir. 2013), *and aff'd*, 729 F.3d 311 (3d Cir. 2013) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986)).  Moreover, insurance policies are assets of the estate even before there is evidence that Debtors have a legal interest in their proceeds.  *See, e.g., First Fid. Bank*, 985 F.2d at 116 (insurance policies are property of the estate "even though the policy has not matured, has no cash surrender value and is otherwise contingent."); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010), *aff'd,* Nos. 10 CV 5717(RJD), 08 BK 44210(ESS), 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) (the automatic stay applies even if there is a dispute as to debtor's interest in or claim to the property).

20.    Courts will enforce the automatic stay in order to avoid irreparable harm to the Debtor's insurance assets and other claimants' rights thereupon.  *See, e.g., In re Sunland, Inc.*, 508 B.R. 739, 744 (Bankr. D.N.M. 2014) ("[I]f an insurance policy 'is too small to satisfy several potential plaintiffs[,]' then lifting the stay . . . could mean unfair results as between potential plaintiffs . . . [and] prevent a bankruptcy court from marshalling the insurance proceeds . . . to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate."); *In re Advanced Med. Spa Inc.*, No. 15-27456-B-7, 2016 WL 3003203, at *3 (B.A.P. 9th Cir. Mar. 30, 2016) ("[T]he court gives great weight to the detrimental effects and prejudice that all other unsecured creditors, particularly those similarly-situated to [movant], would suffer if the

court grants [movant's] motion and allows her to proceed before, and to the exclusion of, all other unsecured creditors.").

21.     The Motions seek exceptions to the automatic stay rule under sections 105(a) and/or 362(d)(1) of the Bankruptcy Code on the basis that there will be no significant impact on the estate because the claims will be covered by insurance.

22.     Without evidence that the total costs to defend and indemnify the subject Romero, Henderson, and Qian claims will not deplete insurance assets that are essential to the reorganization of Debtors' estate, however, and without evidence that the total limits within and in excess of the Old Republic and Evanston policies will be adequate to pay all potential claims, there is no basis to establish that allowing the subject claims to proceed through litigation and settlement will not prejudice the rights of future claimants.

23.     Section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the stay "for cause."  11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis.  *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.") (citing *Baldino*, 116 F.3d at 90).  Movants have the burden of establishing "cause" and, if they fail to do so, the Court should deny relief without requiring any showing whatsoever from the Debtors. *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999).  Only where the movant has sufficiently established cause does the burden shift to the Debtors to establish the absence of cause. *Id.*

26982257.5

24.     By failing to show that the payment of defense costs and any resulting judgments or settlements will not adversely affect the rights of future claimants, the Romero and Henderson Motions have failed to establish cause for lifting the stay.

25.     Indeed, the Debtors' estate indisputably will be diminished if the costs to defend, settle, or indemnify the Romero and Henderson claims exceed the $1,000,000 limits of the Old Republic policies.  This is because the policies in excess of the primary level Old Republic policies are all subject to aggregate limits, and therefore have finite value that may prove insufficient to satisfy abuse claims.

26.     Moreover, the proposed Qian settlement will unquestionably erode aggregate limits of the Evanston policy, which the Debtors may similarly require to satisfy competing claims.[14]

27.     Granting the Motions in the light of this uncertainty about whether the Debtors' insurance will be sufficient to cover all claims would therefore threaten the orderly reorganization of the estate.

28.     The sufficiency of the insurance asset to pay the Romero, Henderson, and all other claims under and in excess of the 2015 and 2018 Old Republic primary policies may become evident after the General Bar date.  The Court should therefore deny the Motions without prejudice until sufficient information is available to determine whether the interests of future claimants will be prejudiced by allowing the Romero and Henderson actions to proceed.

---

[14] ECF No. 745 ¶¶ 27, 30.

26982257.5

## **CONCLUSION**

WHEREFORE, James L. Patton, Jr., the Future Claimants' Representative, respectfully requests that the Court deny the Motions for relief from the automatic stay related to the Romero, Henderson, and Qian claims and award such other and further relief as it deems just and proper.

Dated: September 2, 2020

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Sharon M. Zieg*

Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
        eharron@ycst.com
        szieg@ycst.com
        skohut@ycst.com

-and-

**GILBERT LLP**

Kami E. Quinn (DC Bar No. 500295)
Emily P. Grim (DC Bar No. 1006597)
Meredith C. Neely (DC Bar No. 280937)
700 Pennsylvania Ave, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
Facsimile:  (202) 772-3333
Email:  quinnk@gilbertlegal.com
        grime@gilbertlegal.com
        neelym@gilbertlegal.com

*Counsel to the Future Claimants' Representative*

26982257.5