## IN THE UNITED STATES BANKRUPCTY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| | Jointly Administered |
| Debtors. | **Re: D.I. 1161** |

### OBJECTION OF HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY AND TWIN CITY FIRE INSURANCE COMPANY TO MOTION OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO PARTICIPATE IN THE MEDIATION

Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford") respectfully object to the *Motion of the Coalition of Abused Scouts for Justice to Participate in the Mediation* (Aug. 26, 2020) [D.I. 1161] (the "Motion"). Hartford agrees that the interests of the sexual abuse claimants must be represented at the mediation in the Chapter 11 proceeding. However, those interests are already represented by the Tort Claimants Committee (the "TCC"), which was appointed by the Office of the United States Trustee ("USTO") under 11 U.S.C. § 1102(a)(1) shortly after BSA filed this Chapter 11 proceeding to represent sexual abuse claimants, including those who are part of the so-called Coalition of Abused Scouts for Justice (the "Coalition"). Because these claimants are already represented, there is no reason to add another party. In addition, if the Coalition is added to the mediation, then those claimants have access to information that is not provided to all claimants. For the reasons that follow, Hartford respectfully requests that the Court not enter the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

1

Coalition's Proposed Mediation Order to include the Coalition as a Mediation Party.

**BACKGROUND**

1.  On March 5, 2020, pursuant to Section 1102(a)(1), the USTO formed the TCC to represent the interests of all sexual abuse claimants. *See Notice of Appointment of Committee - Tort Committee* (Mar. 5, 2020) [D.I. 142]. On March 13, 2020, the TCC filed a Notice of Appearance and Request for Service Pursuant to Fed. R. Bankr. P. 2002 seeking the appointment of Pachulski Stang Ziehl & Jones LLP ("PSZ&J"), its proposed counsel. *See Notice of Appearance and Request for Service Pursuant to Fed R. Bankr. P. 2002* at 2 (Mar. 13, 2020) [D.I. 175].

2.  On April 1, 2020, the TCC filed a motion seeking an order clarifying the requirement of the TCC to provide access to confidential or privileged information to its constituents. *See Motion of the Official Tort Claimants' Committee for an Order Clarifying the Requirements to Provide Access to Confidential or Privileged Information* (Apr. 1, 2020) [D.I. 332]. On April 17, 2020, the Court entered an order implementing a protocol for the TCC to share information with its creditors. *See Order Clarifying the Requirements to Provide Access to Confidential or Privileged Information* (Apr. 17, 2020) [D.I. 448].

3.  On June 9, 2020, the Court entered an order appointing mediators and referring certain parties to mediation, including "the Official Committee of Tort Claimants, including its members, professionals, and the individual members' professionals." *See Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* (June 9, 2020) [D.I. 812].

4.  Nearly six months after the TCC was appointed, on August 26, 2020, the Coalition, an organization that says it represents more than 12,000 individuals with abuse claims

against Debtors, filed a motion seeking to participate as a party in the mediation. Despite seeking to appear in the mediation, the Coalition's proposed disclosures do not comply with Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019"). As a result, it is not clear who the Coalition's members are, what its economic interests in this case are, or even whom the Coalition represents. Hartford objects to its participation in the mediation.

## ARGUMENT

5.      As an initial matter, the Coalition's request to participate in the Court-sanctioned mediation is premature. The Coalition, to date, has not made the disclosures required by Rule 2019 concerning its members, its authority to act for its members, and its financial interest in these chapter 11 cases. *See Century and Hartford's Motion to Compel the Attorneys Representing the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019* (Aug. 26, 2020) [D.I. 1164]. Until the Coalition complies, it should not be permitted to participate in these proceedings. *See* Fed. R. Bankr. P. 2019(e)(2).

6.      Moreover, the Coalition's attempt to interject itself into a mediation where all parties are already ably represented -- including all creditors -- fails on the merits. The purpose of the TCC is to represent the different interests and concerns of the abuse claim holders to maximize their recovery under a plan of reorganization. *See, e.g., In re National Liquidators, Inc.*, 182 B.R. 186, 191 (Bankr. S.D. Ohio 1995); *In re Diag Corp.*, 17 B.R. 41, 43 (Bankr. D. Minn. 1981); 11 U.S.C. § 1102(a). The TCC protects and promotes the interests of the group, rather than those of individual members. It provides centralized representation and allows creditors to obtain information, coordinate action, speak with a unified voice through common counsel and streamlines the negotiation process with the debtor. *See id.*

7.      The Coalition's Motion seeks to undermine the efficiency of this process and,

ostensibly, the TCC. Instead of speaking with one voice for all sexual abuse tort claimants, the Coalition seeks to displace the TCC, which was appointed at the outset of this chapter 11 proceeding.

8. The Coalition claims that if it is not allowed to participate as a party in the mediation that its 12,000 individual tort creditors will be excluded from the settlement process and that the mediation will not be considered fair and equitable. Motion at 5. That claim is unsupported and incorrect. The Coalition concedes that its members' interests are fully represented by the TCC, which the United States Trustee appointed to represent the interests of all sexual abuse claimants.[2]

9. Under the Bankruptcy Code, the TCC has a fiduciary duty to all the tort claimants, including those that are a part of the Coalition. *See, e.g., In re Refco, Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006) ("[T]he members of an official committee owe a fiduciary duty to their constituents"); *In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005). And the Coalition has not made any showing that either the TCC or its counsel has not, or will not in the future, be able to adequately represent the interests of all sexual abuse tort claimants at the mediation, including those represented by the Coalition.

10. The Coalition's only argument appears to be that because it allegedly represents the majority of sexual abuse claimants against the Debtors, its members must be permitted to participate in the Mediation because no plan can be confirmed without their consent. But this is not how a chapter 11 proceeding works -- and with good reason. The TCC has an obligation to represent the interests of all legitimate abuse claim holders. To give a preferred negotiating

---

[2] Section 1102(a)(1) of the Bankruptcy Code provides that "as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United State trustee deems appropriate." 11 U.S.C. § 1102(a)(1).

position to counsel representing some, but not all, of the claimants, and without fiduciary duties to all claimants, could prejudice the rights of other claimants who are not members of the Coalition. The purpose of the Committee is to ensure that all legitimate abuse claim holders are treated fairly with respect to one another.

11. Permitting the Coalition to participate could also make the mediation unwieldy. If there are two different law firms purporting to represent most (or all) of the claimants, it will be difficult -- if not impossible -- for the remaining parties in interest to conduct a consistent course of negotiations based on shifting positions from different counsel to different sets of claimants. The appointment of the TCC serves to allow the abuse claimants to negotiate with a single voice, in the interests of fair and equal treatment. If the members of the TCC, or TCC counsel are unable to perform their obligations, the Bankruptcy Code provides a process to change committee membership. *See* 11 U.S.C. § 1102(a)(4). The Coalition does not even attempt to meet Bankruptcy Code's requirement to show that inadequate representation has occurred to necessitate such a change.

12. In addition, permitting the Coalition to participate in the mediation will give certain sexual abuse tort claimants (members of the Coalition) access to information that is not available to other sexual abuse tort claimants (non-members of the Coalition). As the Coalition recognizes, only Mediation Parties "are privy to the oral and written communications disclosed in the Mediation process, including submissions by the Mediation Parties as to various crucial issues in these cases." Motion at 7. If some tort claimants have additional information, it will unfairly disadvantage those who do not.

13. The TCC dealt with this issue of access to information for the tort claimants it represents. In April, the TCC asked the Court to enter an order, which the Court did, restricting

the privileged and confidential information that the TCC must share with the tort claimants. The Coalition's participation in the mediation would create an end run around that order, which will only sow confusion and make mediation even more unmanageable.

14. Because the Coalition has failed to make any showing that its interests are not represented by the TCC, and because its request to participate would turn the already complex mediation involving many parties into an unwieldly and unmanageable situation, the Court should deny the Coalition's request to participate in the mediation.

## CONCLUSION

Hartford respectfully requests that the Court sustain Hartford's objection, deny the Motion and decline to enter the Coalition's proposed order.

| | |
|---|---|
| Date: September 2, 2020<br>Wilmington, Delaware | BAYARD, P.A.<br><br> */s/ Erin R. Fay*<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 655-5000<br>Facsimile: (302) 658-6395<br>Email: efay@bayardlaw.com<br>             gflasser@bayardlaw.com<br><br>- and -<br><br>James P. Ruggeri (admitted *pro hac vice*)<br>Joshua D. Weinberg (admitted *pro hac vice*)<br>Abigail W. Williams (admitted *pro hac vice*)<br>Shipman & Goodwin LLP<br>1875 K Street, NW, Suite 600<br>Washington, DC 20003<br>Tel: (202) 469-7750<br>Fax: (202) 469-7751<br><br>*Attorneys for First State Insurance Company,*<br>*Hartford Accident and Indemnity Company and*<br>*Twin City Fire Insurance Company* |