## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>                       Debtors. [1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>**Ref. Doc. Nos.: 1144**<br><br>**Hearing Date:**<br>September 9, 2020 at 10:00 a.m. (EDT)<br>**Objection Deadline:**<br>September 2, 2020 at 4:00 p.m. (EDT) |

## UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE FOR AN ORDER (I) AUTHORIZING THE COALITION TO FILE UNDER SEAL EXHIBIT A TO THE AMENDED 2019 STATEMENT AND (II) APPROVING THE SUFFICIENCY OF THE AMENDED 2019 STATEMENT (D.E. 1144)

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), by and through his counsel, files this Objection to Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement (D.E. 1144 "2019 Motion")[2], and in support thereof states as follows:

### I.      Introduction

Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") requires the filing of a verified statement by every group that represents multiple creditors acting in concert to advance their common interests. Rule 2019(b)(2) contains some exceptions, none of which are applicable here.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the underlying Motion (D.E. 613).

Rules 2019(c) and (d) specify the information to be disclosed in the verified statement required by the rule. The disclosures include the identity of each member of the group, the identity of and any entity employed by the group, the disclosable economic interest held by each member of the group, and a copy of the instrument authorizing the group or entity to act on behalf of creditors or equity security holders. Any party may move to determine if there has been a failure to comply with any provision of the rule. If it is found the party has not complied, the court may grant appropriate relief, including refusing to permit the group to be heard.

In the present case, the Coalition for Abused Scouts for Justice has not complied with Rule 2019. Additionally, the Coalition seeks to seal the entirety of the exhibits it has filed in support of its verified statement. Not all the material sought to be sealed satisfies the statutory predicates for relief. Although information relating to identifying information of abuse victims should be protected under confidentiality procedures entered by this Court, the relief sought by the Coalition goes beyond protections afforded by this Court and 11 U.S.C. § 107.

## II.    Jurisdiction and Standing

1.      This Court has jurisdiction to hear this Objection.

2.      Under 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. §307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.      The U. S. Trustee has standing to be heard regarding this Objection pursuant to 11 U.S.C. § 307.

**III.      Factual Background**

        *A.      _Preliminary Facts_*

4.      On February 18, 2020, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.      On February 19, 2020, the Court ordered the cases to be jointly administered (D.E. 61).  On March 5, 2020, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (D.E. 141, "UCC") and an Official Committee of Tort Claimants (D.E. 142, "TCC").

6.      On April 11, 2020, the Court approved the TCC's retention of Pachulski, Stang, Ziehl, and Jones as counsel (D.E. 398) and Berkeley Research Group, LLC as financial advisor (D.E. 399).

7.      On February 19, 2020, the Court entered an Interim Order containing special noticing and confidentiality procedures with respect to the identities of abuse victims (D.E. 66). On March 23, 2020, the Court entered a Final Order authorizing and approving special noticing and confidentiality procedures with respect to the identities of abuse victims and others at D.E. 274 ("Confidentiality Procedures").

8.      On July 29, 2020 the Coalition of Abused Scouts for Justice (the "Coalition") filed a Verified Statement pursuant to Rule 2019 (D.E. 1053, "July 29 Statement").  The July 29 Statement disclosed the existence of the Coalition and its retention of the law firms of Brown Rudnick LLP and Blank Rome LLP.  The July 29 Statement further disclosed:  "The Coalition is comprised of more than 10,000 sexual abuse victims."[3]  The July 29 Statement provides that the

---

[3] In the 2019 Motion, the Coalition represents that it now has 12,000 members.

identities of the Coalition members will be disclosed: "…upon a request by a proper party in interest and subject to confidentiality agreement, or may otherwise be filed with the Court or provided to the Office of the United States Trustee."  No further disclosures were made in the July 29 Statement.[4]

9.      On August 14, 2020, the Coalition filed an Amended Verified Statement (D.E. 1106, "Amended Verified Statement").  The Amended Verified Statement disclosed the names of 6 individuals comprising an Advisory Board of the Coalition. The Amended Verified Statement does not disclose how these six individuals were selected from among the alleged 10,000 confidential Coalition members to form the Advisory Board.  The Amended Verified Statement repeats the same confidentiality language found in the July 29 Statement. The Amended Verified Statement further discloses that the Coalition has retained BrownGreer "to collect and organize the Coalition Members' claims information."

10.      On August 24, 2020, the Coalition filed an unverified Exhibit A to the Amended Verified Statement (D.I. 1143, "Unverified Exhibit A").  The 2019 Motion seeks to seal Unverified Exhibit A in its entirety as well as seeking a finding: "declaring the form of Amended 2019 Statement filed at D.I. 1106 satisfies the requirements of and is sufficient under the Bankruptcy Rules."  As of early afternoon on September 2, 2020, the document remains entirely sealed.

11.      Paragraph 12 of the 2019 Motion avers that the instrument authorizing the Coalition to act on behalf of its members includes confidential agreements and communications subject to attorney-client privilege, contains commercially sensitive information, and should not be subject to public review.

---

[4]  For purposes of the Coalition Motion and this response, the U.S. Trustee is not objecting to the sealing of the list contained in DE 1143 to the extent it is subject to the Confidentiality Procedures.  Any objections herein are to whether the information provided complies with Rule 2019.

12.     Unverified Exhibit A consists of two parts; the confidential list of abuse survivors and professional engagement letters and instruments purporting to evidence the Coalition's authority to act on behalf of its members.  Not one single page of Unverified Exhibit A evidences the written consent of an abuse survivor to be represented by the Coalition.

IV.     **Legal Argument**

A.     *The Coalition has not met its burden of proof under either 11 U.S.C. §107(b) or Federal Rule of Bankruptcy Procedure 9018.*

13.     Under Bankruptcy Code Section 107(a) "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." If, however, the paper concerns "a trade secret or confidential research, development, or commercial information" or contains "scandalous or defamatory matter" a bankruptcy court may "protect" that information. A bankruptcy court may also protect information that creates "undue risk of identity theft" or that is "any means of identification (as defined in section 1028(d) of title 18)." 11 U.S.C. § 107(b) and (c). Federal Rule of Bankruptcy Procedure 9018 ("Rule 9018") adds, in addition to the exceptions contained in Section 107, that a bankruptcy court may also protect "governmental matters that are made confidential by statute or regulation."  Because neither Section 107 nor Rule 9018 apply to the information in the 2019 Motion and Unverified Exhibit A that is not already protected by the Confidentiality Procedures, the Court should deny the 2019 Motion.

14.     The Supreme Court stated in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 591 (1978): "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  Unanimity in the case law demonstrates that there is a common law right of access to judicial proceedings and to inspect judicial records in civil matters.  In *Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21

F.3d 24 (Cir. 2 1994), the Court stated the general rule as:   "...a strong presumption of public access to court records...This preference for public access is rooted in the public's first amendment right to know about the administration of justice.  It helps safeguard the integrity, quality, and respect in our judicial system."  21 F. 3d 24, 26 (citations omitted).  *See also In re Continental Airlines,* 150 B.R. 334 (D. De. 1993) (noting that "the strong presumption in favor of public access to judicial records and papers[.]"); *accord In re Foundation for New Era Philanthropy,* 1995 WL 478841 (E.D. Pa. 1995); *In re Barney's Inc.,* 201 B.R. 703 (Bankr. S.D.N.Y. 1996).  This common law has been codified in Section 107(a).

15.     As exceptions to the common law rule, the burden is on the moving party to show that a request to place documents under seal falls within the parameters of Bankruptcy Code Section 107(b) and Rule 9018 by demonstrating that: "...that the interest in secrecy outweighs the presumption in favor of access."  *See In re Continental Airlines*, 150 B.R. 334 (D. Del. 1993).  The inquiry then is whether the matter sought to be placed under seal fits within any of the categories included within either of Section 107(b) or Rule 9018.

16.     In *Orion*, supra, Court defined commercial information as: "...information which would cause an 'unfair advantage to competitors by providing them information as to the commercial operations of the debtor'." (21 F. 3d 24, 27 (citations omitted).     *In re Alterra Healthcare Corp.*, 353 B.R. 66 (Bankr. D. Del. 2006), adopted the *Orion* definition of protectable confidential or commercial information.

17.     An attempt to place the report of a fee examiner under seal pursuant to Section 107(b) or Rule 9018 was rejected by the Court in *In re Continental Airlines*, 150 B.R. 334 (D. De. 1993).  In *Continental*, the District Court found that the Bankruptcy Court had abused its discretion

in ordering the report placed under seal and reversed the lower court. The *Continental* Court

rejected any claim of potential scandalous or defamatory possibilities, stating:

> If such legal recommendations and assertions, required to be rendered by statutory and case law authority, were sealed, based on nothing more than the mere possibility that they contain 'defamatory' assertions, the judicial system would be thwarted in its mandated responsibility to supervise litigation expenses...clearly the public's interest in seeing that the judicial mandate to control litigation expenses far outweighs any private interest in secrecy..." 150 B.R. 334, 341.

18.    The Court then quoted directly from the United States' brief:

> "[It] is disingenuous...for [appellees] and [their] lawyers to argue that they...should be the sole guardians of the only prejudicial, independent analysis of their attorneys'...conduct. Indeed, it follows without any thought whatsoever that the Court's truth-finding process (not to mention the efficient administration of the Bankruptcy Code) can only be enhanced by the wide dissemination of the [fee reviewer's] reports..."

150 B.R. 334, 341.

19.    Although the Third Circuit has not addressed Section 107(b) or Rule 9018, it has

examined the common law right of public access in the context of confidential settlement

agreements. In *Pansy v. Borough of Stroudsburg*, 23 F. 3d 772 (3 Cir. 1994), the news media

sought an order challenging the sealing of a settlement agreement in a civil rights case between

Stroudsburg and its former police chief. The court reaffirmed the common law rule: "We have

previously recognized a right of access to judicial proceedings and judicial records, and this right

of access is 'beyond dispute'." (23 F. 3d 772, 780-781). In the absence of provisions or rules like

Section 107(b) or Rule 9018, the Third Circuit adopted a balancing test between the need for

confidentiality or privacy and the right to know, concluding: "If a settlement agreement involves

issues or parties of a public nature, and involves matters of legitimate public concern, that should

be a factor weighing against entering or maintaining an order of confidentiality." (23 F.3d 772,

788).

20.    Any relief granted should be narrowly tailored.  *See In re Lomas Financial Corporation*, 1991 WL 21231, at *2 (S.D.N.Y. 1991).  Only those portions of the pleadings that comport with the requirements of either Section 107 or Rule 9018 should be redacted and sealed. The balance should become part of the public record.

21.    In *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, (2012), the Supreme Court held that a specific prohibition or permission in the Bankruptcy Code trumps a more general provision.  This same principle was restated again by the Supreme Court in the case of *Law v. Siegel*, 571 U.S. 415, (2014).  In discussing the principle that Section 105(a) of the Bankruptcy Code may not be used to override explicit mandates of the Bankruptcy Code, the Court noted:  "That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere."  572 U.S. at 421. To the extent that Section 107 and Rule 9018 regulate the sealing of documents, Section 105(a) may not be used as a basis to override Section 107 or Rule 9018.

22.    The Coalition has the burden of proof that those pages of Unverified Exhibit A not subject to the Confidentiality Procedures should be "protected." It has not met that burden. The retention agreements and other documents purporting to represent the Coalition's authority to act on behalf of its 12,000 confidential members do not contain any information subject to sealing under either Section 107(b) or Fed. R. Bankr. P. 9018. Unverified Exhibit A does not appear to be a trade secret, confidential research, development, or commercial information, a scandalous or defamatory matter, or a governmental matter made confidential by statute or regulation. This Court should thus deny the 2019 Motion to the extent it requests sealing of any pages not subject to the Confidentiality Procedures.

B.    *The Coalition's Amended 2019 Statement does not comply with the Bankruptcy Code, the Bankruptcy Rules, the Rules of Professional Conduct, or any privilege.*

23.     Rule 2019 is a broad disclosure rule that furthers transparency and accountability in the bankruptcy system. Under its requirements, any "group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders" that are working together to advance their common interests (subject to a few exceptions) must file a verified statement.[5] Rule 2019 mandates:

(c) INFORMATION REQUIRED. The verified statement shall include:

(1) the pertinent facts and circumstances concerning:

(A) with respect to a group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the formation of the group or committee, including the name of each entity at whose instance the group or committee was formed or for whom the group or committee has agreed to act; or

(B) with respect to an entity, the employment of the entity, including the name of each creditor or equity security holder at whose instance the employment was arranged;

(2) if not disclosed under subdivision (c)(1), with respect to an entity, and with respect to each member of a group or committee:

---

[5] (a) Definitions. In this rule the following terms have the meanings indicated:

(1) "Disclosable economic interest" means any claim, interest, pledge, lien, option, participation, derivative instrument, or any other right or derivative right granting the holder an economic interest that is affected by the value, acquisition, or disposition of a claim or interest.

(2) "Represent" or "represents" means to take a position before the court or to solicit votes regarding the confirmation of a plan on behalf of another.

(b) DISCLOSURE BY GROUPS, COMMITTEES, AND ENTITIES.

(1) In a chapter 9 or 11 case, a verified statement setting forth the information specified in subdivision (c) of this rule shall be filed by every group or committee that consists of or represents, and every entity that represents, multiple creditors or equity security holders that are (A) acting in concert to advance their common interests, and (B) not composed entirely of affiliates or insiders of one another.

(2) Unless the court orders otherwise, an entity is not required to file the verified statement described in paragraph (1) of this subdivision solely because of its status as:

(A) an indenture trustee;

(B) an agent for one or more other entities under an agreement for the extension of credit;

(C) a class action representative; or

(D) a governmental unit that is not a person.

(A) name and address;

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date the entity was employed or the group or committee was formed; and

(C) with respect to each member of a group or committee that claims to represent any entity in addition to the members of the group or committee, other than a committee appointed under § 1102 or § 1114 of the Code, the date of acquisition by quarter and year of each disclosable economic interest, unless acquired more than one year before the petition was filed;

(3) if not disclosed under subdivision (c)(1) or (c)(2), with respect to each creditor or equity security holder represented by an entity, group, or committee, other than a committee appointed under § 1102 or § 1114 of the Code:

(A) name and address; and

(B) the nature and amount of each disclosable economic interest held in relation to the debtor as of the date of the statement; and

(4) a copy of the instrument, if any, authorizing the entity, group, or committee to act on behalf of creditors or equity security holders.

Fed. R. Bankr. P. 2019.

24.     Rule 2019 is a broad and mandatory disclosure rule. *In re Oklahoma P.A.C. First Ltd. P'ship*, 122 B.R. 387, 390, 329-93 (Bankr. D. Ariz. 1990).  It is designed to ensure that lawyers "adhere to certain ethical standards" and that "all matters should be done openly and subject to scrutiny" in chapter 11 cases. *Id.* Because transparency and disclosure are two fundamental tenets of the bankruptcy system, Rule 2019 provides oversight and accountability for lawyers representing groups of creditors in a way similar to that provided by Sections 327 and 329 and Rules 2014 and 2016 over attorneys retained by debtors or official committees.

25.     Thus, a group such as the Coalition must file a verified statement, which is to say a statement sworn under the penalty of perjury that verifies the accuracy of its contents, that gives the names and addresses of each member, discloses that member's economic interest in the debtor, discloses when that interest was acquired if the acquisition was within a year of the bankruptcy

filing, and provides a copy of the "instrument" that gives the group authority to act on behalf of its constituents. Neither the Coalition's July 29 Statement nor its Amended Verified Statement with the supporting unverified exhibit satisfies the requirements of Rule 2019.

26.    In *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee* (321 B.R. 147 (D.N.J. 2005)), Baron & Budd and several other law firms which together represented "multiple tort-victim creditors," appealed the Bankruptcy Court's order requiring them to disclose and provide "a list and detailed explanation of any type of co-counsel, consultant, or fee sharing relationships and arrangements whatsoever, in connection with this bankruptcy case" as well as "attachment of copies of any documents that were signed in conjunction with creating that relationship or arrangement." 321 B.R. at 166. In upholding what it called the "Rule 2019 Compliance Order," the United States District Court for the District of New Jersey held that "fee sharing, co-counsel, and referral relationships (and the potential conflicts of interest that may arise therefrom) are indeed 'pertinent facts and circumstances in connection with the employment of the entity.'" *Id* at 167. The *Baron & Budd* court rejected the firms' argument that it lacked jurisdiction to require disclosure because any fee sharing and co-counsel relationships were between nondebtors. "Under circumstances where fee sharing and referral relationships have potentially affected the priority of creditors in the bankruptcy, these relationships can have a serious impact upon the handling of the estate." *Id* at 163. The *Baron & Budd* court also stated, citing other cases and *Collier on Bankruptcy*, that "[w]hen appearing before the bankruptcy courts attorneys are bound by the state codes and rules imposed by the state bar associations and the highest courts of the states where they practice. . . . Not only are state ethical laws imposed upon professionals in the bankruptcy context, but the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure contain specific references and directives imposing additional ethical obligations upon attorneys

and other professionals." *Id* at 164 (citations omitted). The *Baron & Budd* court also discussed the specific need for disclosure in mass tort cases because "the entire solicitation and voting process was conducted through a small group of law firms who collectively represent hundreds of thousands of individual claimants." *Id* at 168 (citing *In re Combustion Engineering, Inc.*, 391 F.3d 190, 245 n. 66) (3d Cir. 2004)).

27.     Further, "[i]n the absence of unusual circumstances, the fact of a retainer, the identity of the client, the conditions of employment and the amount of the fee do not come within the privilege of the attorney-client relationship." *In re Semel*, 411 F.2d 195, 197 (3d Cir. 1969). "Not only are there strong policy and statutory reasons why the fee arrangements between attorneys practicing before the bankruptcy courts cannot be privileged . . . there is ample evidence in this particular case, that suggests these facts are relevant, and indeed, critical." *Baron & Budd*, 321 B.R. at 170.

28.     The Coalition's 2019 Motion and Unverified Exhibit A do not satisfy the broad disclosure requirements of Rule 2019. The Coalition has provided no information or evidence supporting its position that it has the affirmative consent of each one of more than 12,000 confidential individuals to act on their behalf.  The Coalition presents no basis for its decision to seal the entirety of Unverified Exhibit A. These agreements, and this information, are "relevant, and indeed critical" to determining whether the Coalition and its attorneys have complied with all of the "state codes and rules imposed by the state bar associations and the highest courts of the states where they practice." Without this information and proper disclosure, the Coalition has not complied with Rule 2019 and the 2019 Motion should be denied.

### V.    Conclusion

29.    The U.S. Trustee opposes the relief sought in the 2019 Motion for two reasons. First, other than the information subject to the Confidentiality Procedures, the Coalition has not met its burden to prove that the information it seeks to seal is worthy of that protection under Section 107, Rule 9018, the Rules of Professional Conduct, or under any privilege. The Coalition also has not shown why the Confidentiality Procedures are insufficient to protect the privacy of the abuse survivors it claims to represent.  Second, the Coalition's three 2019 filings do not comply with the requirements of Rule 2019. The 2019 Motion is unsupported by either fact or law.

30.    The U.S. Trustee leaves the moving parties to their burden of proof and reserves all rights to participate in discovery and further litigation.

WHEREFORE, the U.S. Trustee respectfully prays this Honorable Court to deny the 2019 Motion and for such other relief at law and in equity as this Honorable Court may deem proper. Respectfully submitted,

**ANDREW R. VARA,**
**UNITED STATES TRUSTEE FOR REGIONS 3 AND 9**

DATED: September 2, 2020          BY: /s/ David L. Buchbinder
                                  David L. Buchbinder, Esq.
                                  Hannah M. McCollum, Esq.
                                  Trial Attorneys
                                  Office of the United States Trustee
                                  J. Caleb Boggs Federal Building
                                  844 King Street, Suite 2207
                                  Wilmington, DE 19801
                                  (302) 573-6491
                                  (302) 573-6497 (Fax)