**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket No. 1164 |

**OBJECTION OF THE COALITION OF ABUSED SCOUTS**
**FOR JUSTICE TO CENTURY AND HARTFORD'S MOTION**
**TO COMPEL THE ATTORNEYS REPRESENTING THE ENTITY**
**CALLING ITSELF THE "COALITION" TO SUBMIT THE DISCLOSURES**
**REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

The Coalition of Abused Scouts for Justice (the "Coalition"), by its undersigned counsel, hereby submits this Objection (the "Objection") to *Century and Hartford's Motion to Compel the Attorneys Representing the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019* (the "Insurers' Motion") [Docket No. 1164],[2] and respectfully requests the Court (A) deny the relief requested in the Insurers' Motion and (B) grant the relief sought in the *Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* (the "Coalition's

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The Motion was filed by Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company; First State Insurance Company, Hartford Accident and Indemnity Company, and Twin City Fire Insurance Company (collectively, the "Insurers"). Additionally, it seems that the Insurers have not prepared and filed a Rule 9013-1(f) compliant Notice for this Motion.

Motion") [Docket No. 1144].[3]  In further support of this Objection, the Coalition respectfully states as follows:

## PRELIMINARY STATEMENT

1.    Participation is critical to driving value to tort victims in a mass tort bankruptcy. The amount of damages suffered by victims and the number of victims who file valid claims are important metrics in an estimation proceeding and impact settlement negotiations.  It is undeniable that the Insurers have an interest in fewer valid tort claims being filed and a lower percentage of Sexual Abuse Survivors[4] participating in these cases.

2.    The Insurers' Motion asks the Court to adopt a construction of Rule 2019 that has been rejected by the Third Circuit and the Delaware District Court.  *See In re Pittsburgh Corning Corp.*, No. 05-4781, 260 Fed. Appx. 463 (3d Cir. Jan. 10, 2008); *Certain Underwriters at Lloyds v. Future Asbestos Claim Representatives (In re Kaiser Aluminum Corp.)*, 327 B.R. 554 (D. Del. 2005).  Based on their flawed construction of Rule 2019, the Insurers seek an order compelling the disclosure of confidential information about Sexual Abuse Survivors or, in the alternative, barring the Coalition from participating in these cases.  Neither outcome is required let alone appropriate under Rule 2019 and case law in this Circuit interpreting Rule 2019.

3.    The Insurers mantra and false narrative, which they deliberately previewed during the Court's recent August 31st hearing on the Debtors' attorney advertising motion (the "August 31st Hearing"), notwithstanding the irrelevance thereof to the important First Amendment issues

---

[3]  As of the filing of this Objection, objections have been filed to the Coalition's Motion. *See e.g.* Docket No. 1219. The Coalition's Objection narrowly responds to the Insurers' Motion, and the Coalition respectfully reserves its rights to each objection filed with respect to the Coalition's Motion as and when appropriate.

[4]  Capitalized terms used by not defined herein shall have the meaning ascribed such terms in *Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* (the "Bar Date Order") [Docket No. 695].

2

which were before the Court at that hearing, is that since thousands of survivors have come forward to seek justice for the horrific, irreparable harms they suffered in the care of or under the supervision of the Boy Scouts of America ("BSA"), there must be a nefarious or fraudulent scheme afoot. The Debtors and the Court have carefully crafted procedures to protect the identities of the Sexual Abuse Survivors precisely to encourage widespread participation by Sexual Abuse Survivors in these chapter 11 cases.

4.    The Coalition recognizes that Rule 2019 requires disclosure. The Coalition has complied with its obligations. The Coalition has already filed two Rule 2019 Statements and a subsequent "Exhibit A" containing required information [Docket Nos. 1052, 1106, & 1143], as well as the Coalition's Motion [Docket No. 1144] which seeks to seal Exhibit A so that Sexual Abuse Survivors can participate in the Debtors' cases without fear of retribution. As the *Pittsburgh Corning* and *Kaiser* decisions show, Rule 2019 is not a tool for insurance companies to obtain the identities of victims of sexual abuse and scrutinize the merits of their claims.

5.    The Coalition's participation in these cases is certainly not an "end-run" around the Official Committee to Tort Claimants (the "TCC"), with which the Coalition looks forward to working cooperatively and collaboratively in these cases (as *ad hoc* committees do in many bankruptcy cases, including mass tort bankruptcy cases). For the Debtors to confirm a consensual plan, they must solicit and obtain the acceptance of tort victims in the threshold amounts set forth in 11 U.S.C. § 1126(c)—*i.e.*, "at least two-thirds in amount and more than one-half in number." The Debtors have indicated that they are interested in confirming a plan that includes a channeling injunction and third-party releases for contributing non-debtors. Under *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 272 (Bankr. D. Del. 2017), this will require a supermajority of survivor votes to confirm such a plan. It follows that it is essential for the Debtors to negotiate

with the Coalition as representatives of a significant portion of the survivors whose acceptance is necessary to confirm a consensual plan. This cooperative process is nothing new, but is the practice followed in many mass tort bankruptcies.

6.    The Coalition's goal is to be a constructive and value-added influence in these cases. Permitting the Coalition to have a seat at the table will facilitate the Debtors' timely reorganization and the equitable distribution of their estates. The Insurers' Motion, which seeks to bar the Coalition's participation in these cases, is not constructive let alone mandated by the law. The Insurers' Motion should be denied, and the Coalition's Motion should be granted.

## FACTUAL BACKGROUND

### A.    The Coalition

7.    The Coalition presently comprises more than 12,000 Members, each of which is a sexual abuse victim holding claims against BSA, among other parties. The Members of the Coalition, by and through authorized representatives (the "Representatives"), formed the Coalition and then retained Brown Rudnick LLP and Blank Rome LLP (together, "Coalition Counsel") to represent them in connection with the Coalition's claims and interests in respect of the Debtors and their cases. *See Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (the "2019 Statement") [Docket No. 1106].[5]

8.    The Coalition is not a "marketing label," an intended invective disappointedly used against the Coalition at the August 31st Hearing, no doubt in anticipation of arguments to be offered at the upcoming September 9th hearing on the Coalition's Rule 2019 and mediation participation motions. *See* Aug. 31, 2020 Hrg. Tr. at 45:12.[6] The Coalition is an *ad hoc* committee

---

[5]  As disclosed in the 2019 Statement, the current Representatives are: (i) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., (ii) Kosnoff Law PLLC, (iii) AVA Law Group, Inc., (iv) Andrews & Thornton, (v) ASK LLP, and (vi) Slater Slater Schulman, LLP.

[6]  During the August 31st hearing, counsel for one of the Insurers attacked Mr. Timothy Kosnoff of Kosnoff Law

that seeks actively to participate in these cases on behalf of its Members.  The Coalition's goal is to serve as a constructive and valuable voice in the Debtors' cases and advocate for a resolution that treats Coalition Members fairly and affords them compensation for the trauma they each suffered under the BSA's care.  *See Motion of the Coalition of Abused Scouts for Justice to Participate in the Mediation* [Docket No. 1161] (describing the Coalition's efforts to join mediation, including outreach to the Debtors and other parties).

9.      As an *ad hoc* committee, the Coalition itself will not vote on any plan of confirmation or file proofs of claim—*but its Members will do so*.

### B.    The Coalition's Rule 2019 Disclosures

10.     The Coalition has gone through great lengths to comply with Rule 2019 while taking into consideration the complexities of mass tort litigation and the particular sensitivities in these cases (*i.e.*, the sexual abuse claims made against the Debtors).  Since the beginning of these cases, the Court has recognized the need to protect confidential or identifying information of Sexual Abuse Survivors.[7]  The Court affirmed its commitment to protecting the identifying information of Sexual Abuse Survivors when it established the November 16th bar date and approved special procedures for Sexual Abuse Survivors to file confidential Sexual Abuse Survivor Proofs of Claim.

11.     The nature of the claims asserted by the Coalition Members have the potential to cause anguish and embarrassment, and the fear of public disclosure of identifying information may

---

PLLC and suggested that he is not "a real practicing lawyer" and is "a media commentator."  *Id.* at 40:23-41:2. Mr. Kosnoff graduated from law school in 1980 and has spent 24 years of his life prosecuting sexual abuse cases against various institutions, including the Mormon Church, the Catholic Church and the Boy Scouts of America. He is a bona fide advocate for victims of sexual abuse and, obviously, is a real lawyer.

[7]  *See Interim Order (I) Authorizing the Debtors to File (A) A Consolidated List of Counsel Representing the Largest Numbers of Abuse Victims and (B) A Consolidated List of Other Unsecured Creditors of the Debtors, (II) Authorizing and Approving Special Noticing and Confidentiality Procedures, (III) Authoring and Approving Procedures of Providing Notice of Commencement, and (IV) Granting Related Relief*, [Docket No. 9] (the "Interim Confidentiality Order").

dissuade victims from coming forward and participating in the bankruptcy process. The Coalition's Rule 2019 disclosures must balance the requirements of Rule 2019 with the need to protect confidentiality and permit victims to advance their claims and be represented in these cases without fear of retribution or reprisal.

12.    The Coalition was formed on July 18, 2020. Six days later, on July 24, 2020, the Coalition filed a standard *Notice of Appearance* [Docket No. 1040] in the Debtors' cases. This notice provided that the Coalition is comprised of over 10,000 Sexual Abuse Survivors and requested that copies of all notices and papers filed in the Debtors' cases be served on the Coalition's Counsel. In contrast, the notices of appearance filed by the Insurers contain *no* explanation whatsoever as to how they are parties in interest in these cases. *See* Docket Nos. 80 & 373.

13.    Five days later, on July 29, 2020, the Coalition filed its *Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (the "Verified Statement") [Docket No. 1053]. This initial statement provided that each Coalition Member is a Sexual Abuse Survivor. *See* Verified Statement at ¶ 2. In this statement, the Coalition committed to provide a list of the names and addresses of each Coalition Member upon request by a proper party in interest and subject to a confidentiality agreement. *Id.* The Verified Statement also contemplated that the list would be filed with the Court or provided to the United States Trustee under seal. *Id.* To date, the Coalition has been requested to provide and has so provided its full and unredacted member list to the United States Trustee and has offered to make the information available to counsel for the TCC.[8]

---

[8]  As of the filing of this Objection, the TCC has not accepted the names and addresses of Coalition Members subject to the confidentiality designation. As a result, Coalition Counsel has not yet provided this information to TCC counsel. The Coalition has produced the list to the United States Trustee subject to confidentiality restrictions.

14.    On August 14, 2020, roughly two weeks after filing its Verified Statement, the Coalition filed its amended 2019 Statement. *See* Docket No. 1106. The 2019 Statement explained that an Advisory Board consisting of six (6) members was created to participate in meetings and assist in deliberations concerning actions taken by the Coalition. *Id.* at ¶ 2.[9] The 2019 Statement further provided that since the identity of each Coalition Member is confidential, a list of names and addresses of each Coalition Member will be provided only to counsel to the TCC, as contemplated by the confidentiality provisions in the Bar Date Order, and will be subject to the *Order Approving Confidentiality and Protective Order* (the "Revised Protective Order") [Docket No. 799] and designated thereunder as "Committee Advisor Only." *See* Fed. R. Bankr. P. 2019(c)(2)-(3).

15.    In addition, the 2019 Statement provided that the following information designated as "Committee Advisor Only" will be provided to the Debtors, the mediators, certain other mediation parties, and filed under seal with the Court:  (a) Coalition Member identification number, (b) current city and state of Coalition Member, (c) date of incident, and (d) location of incident. *See* 2019 Statement at ¶ 3. The Coalition further stated that it has retained Brown Greer to collect and organize the Coalition Members' claims information and that Coalition Counsel will work with the Debtors, the mediators and other mediation parties to provide additional information that may be sorted and/or aggregated to facilitate ongoing mediation discussions. *Id.* at ¶ 4.

16.    On August 24, 2020, the Coalition filed Exhibit A to the 2019 Statement under seal ("Exhibit A") [Docket No. 1143].   Contemporaneously, the Coalition filed its *Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under*

---

[9]  The six members are:  (i) Allen Johnson, age 55 (lives in North Carolina, abused in Connecticut), (ii) Andrew Tessier, age 40 (lives in New York, abused in Alabama), (iii) Matt Stevens, age 67 (lives in Texas, abused in California, (iv) Gill Gayle, age 58 (lives in California, abused in Alabama), (v) Michael Lipari, age 49 (lives in D.C., abused in Florida), and (vi) Robert Pierce, age 39 (lives in California, abused in California). *Id.*

*Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* [Docket No. 1144]. Consistent with the Court's Bar Date Order, which approved special procedures for Sexual Abuse Survivors to file confidential Sexual Abuse Survivor Proofs of Claim, the Coalition, whose members are Sexual Abuse Survivors, seeks entry of an order directing the confidential information provided in Exhibit A to remain under seal.[10] The Coalition's Motion is scheduled for hearing on September 9, 2020. *See Amended Notice of Motion to Seal* [Docket No. 1150]. The Insurers' Motion is scheduled for hearing on that same date.

17.     Exhibit A, which is approximately 571 pages in length, includes, without limitation, the following information: (a) exemplars of retainer agreements between Coalition Members and their State Court Counsel; (b) representative communications between State Court Counsel and their respective Coalition Members notifying them of the Coalition and confirming their authorization to representation by the Coalition; (c) a redacted copy of the Coalition Counsel's engagement letter with the Coalition by and through, State Court Counsel; (d) limited identifying incident data for Coalition Members, as contemplated by the 2019 Statement, including Coalition Member identification number, current city and state of Coalition Member, date of incident, location of incident, and description of incident; and (e) information relating to the specific allegations of abuse asserted by certain Sexual Abuse Survivors. The Coalition avers that the instrument authorizing the Coalition to act on behalf of the Coalition Members includes confidential agreements and communications that are subject to attorney-client privilege, contain commercially sensitive information, and should not be subject to public review. *See* Coalition's Motion at ¶ 12.

---

[10] Certain parties have raised concerns regarding whether the proposed Order relating to the Motion to File Under Seal is intended to modify the terms of the Bar Date Order. To avoid any confusion, the Coalition will add language to the proposed Order clarifying that nothing in the Order is intended to, or shall be deemed to, modify the terms of the Bar Date Order.

8

C.    **The Insurers and the Insurers' Motion**

18.    The Insurers state that they are the "Insurers identified in the signature blocks" to the Insurers' Motion.  Insurers' Motion at 1.  *No additional information about the Insurers is offered*.  The Insurers' Motion is devoid of any information that would enable the Court to determine if the Insurers are creditors, equity holders, or otherwise qualify as parties in interest in these cases.  Upon information and belief, the Insurers are not creditors or equity holders in these cases. *See e.g.* Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs; Docket Nos. 375-78.

19.    Nonetheless, the Insurers have the temerity to attack the Coalition's disclosures and seek to bar the Coalition from participating in these  cases.  Insurers' Motion at 20-28.  First, the Insurers argue that Rule 2019 must be strictly applied to compel the Coalition to disclose to the Insurers the identity of the Coalition's Members (names and addresses), the nature and amount of each Members' disclosable economic interest, and copies of all applicable agreements authorizing the Coalition's Counsel to act on behalf of the Coalition (including engagement letters and fee agreements).

20.    Second, the Insurers argue that the Coalition's disclosures are deficient under the Insurers' purported "strict construction" of Rule 2019, depriving the Insurers of their alleged right to flush out conflicts of interest (presumably between Members of the Coalition and their chosen State Court Counsel and Coalition Counsel) and scrutinize how the Members retained counsel.

21.    Third, the Insurers ask the Court to order the Coalition's Counsel to disclose the requested information to the Insurers or, alternatively, bar the Coalition from participating in the Debtors' cases.

## RESPONSE

### A.    The Coalition Satisfies the Governing Standards for Rule 2019 Disclosures in Mass Tort Cases

22.    The Insurer's purported "strict construction" argument has been rejected by the Third Circuit and the Delaware District Court in cases that the Insurers fail to cite to or disclose in their Motion.  The Insurers rely on orders in *In re Archdiocese of Saint Paul & Minneapolis*, No. 15-30125 (Bankr. D. Minn. Feb. 23, 2017) and *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147 (D.N.J. 2005).  But the Third Circuit and the District Court for the District of Delaware have spoken conclusively on this issue.  *See Pittsburgh Corning*, 260 Fed. Appx. at 465 (rejecting "strict compliance challenge" under Rule 2019 in mass tort bankruptcy); *Kaiser*, 327 B.R. 554 (holding that "Rule 2019 need not always be strictly applied").

### 1.    The Third Circuit's Decision in *Pittsburgh Corning*

23.    In *Pittsburgh Corning*, certain underwriters and insurance companies sought to use Rule 2019 to obtain disclosures made by law firms representing personal injury tort claimants. 260 Fed. Appx. 463.  The Bankruptcy Court fashioned an order that allowed the law firms to make their Rule 2019 disclosures through (a) the use of "exemplars" of empowering documents rather than actual copies, and (b) the filing of exhibits to the 2019 Statement (*i.e.*, empowering documents and client lists) under seal.  *See In re Pittsburgh Corning Corp.*, No. 04-1814, 2005 WL 6128987, at *1 (W.D. Pa. Sept. 27, 2005), *aff'd*, 260 Fed. Appx. 463.  The *Pittsburgh Corning* process is the very process that the Coalition has proposed here.  *See* Coalition's Motion at ¶¶ 20-27.

24.    The *Pittsburgh Corning* District Court held this process was proper because of the Court's interest in "not mak[ing] the exhibits accessible because of concerns about having information relating to an individual's illness being disclosed on the public record."  2005 WL 6128987 at *2.  Here, the privacy interest of the Coalition Members—victims of Sexual Abuse as

opposed to asbestos claimants—is equally, if not more, paramount and has been staunchly protected by both the Debtors and the Court since the beginning of these cases.[11]

25.     The insurers in *Pittsburgh Corning* argued, as the Insurers do here in their Motion, that by "permitting the exhibits to be confidential[,] the bankruptcy court failed to comply with Rule 2019 because those documents are a matter of public record that should be open to examination." 2005 WL 6128987 at *3; *cf.* Insurers' Motion at 12, 21.  The District Court rejected that argument, and held that if any party wanted access to the data filed under seal as part of the Rule 2019 disclosures, such party would have to "file a motion" and have "a hearing with respect to that access."  *Pittsburgh Corning*, 2005 WL 6128987 at *3.  The District Court also noted that the sufficiency of Rule 2019 disclosures was raised in two additional cases in the United States Bankruptcy Court for the District of Delaware, and that the courts issued orders "identical to the 2019 Order entered in [*Pittsburgh Corning*]."  *Id.* at *2 n. 2.

26.     The Third Circuit affirmed the District Court's ruling and specifically rejected the insurers' "strict compliance challenge."  260 Fed. Appx. at 465.  The Insurers' argument here for strict compliance and disclosure of confidential client information is contrary to Third Circuit precedent and has no merit.  And, even more on point, on appeal, the insurers in *Pittsburgh Corning* argued that access to the Rule 2019 disclosures may give them the ability to "uncover fraud and/or a conflict of interest," which they would then use to "invalidate ballots" voted on the plan or "sanction offending counsel."  *Id.* at 466.  The Third Circuit found that this argument was based on "mere[] speculat[ion]" that conflicts of interest may exist and that such conflicts "directly

---

[11] *See* Interim Confidentiality Order [Docket No. 9] (allowing the Debtors to provide a list of and contact information for the twenty-five law firms representing the largest numbers of abuse victims, in lieu of personal contact information for the victims, allowing redaction of any personally identifying information of victims, and approving the initial confidentiality procedures to protect from any public disclosure of victim information); Bar Date Order [Docket No. 695] (approving special procedures for Sexual Abuse Survivors to file confidential Sexual Abuse Survivor Proofs of Claim).

aggrieve[d]" them.  *Id.*  The insurers in *Pittsburgh Corning* argued that the order stripped them of

their right to investigate and withhold payment of "improper or even fraudulent asbestos claims."

*Id.*  The Third Circuit rejected this argument as "simply too far removed from the 2019 Order and

too speculative."  *Id.*  All of this is to say that the Insurers' arguments here have been tried before,

and failed, in the Third Circuit.

### 2.     District Court of Delaware's Decision in *Kaiser*

27.     To further illustrate this point, in *Kaiser*, certain underwriters and insurance

companies sought to use Rule 2019 to obtain disclosures made by law firms representing personal

injury tort claimants.  327 B.R. 554.  The Bankruptcy Court allowed the law firms to make their

Rule 2019 disclosures through (a) "exemplar" empowering documents, and (b) the filing the

information submitted under Rule 2019 to be filed under seal.  *Id.* at 557.  The District Court

affirmed this decision.  *Id.* at 560.  The process followed by the Coalition in these cases matches

the procedure that the Bankruptcy Court and the District Court in *Kaiser* found to be sufficient.

28.     The District Court in *Kaiser* reasoned that "the operative portion of the agreements

deposited under Rule 2019(a) are the representation provisions" and that Rule 2019(b) vests in the

Bankruptcy Court the "discretion to determine" whether there has been a failure to comply.  *Id.*

The District Court quoted the language of Rule 2019 which, as the Insurers here emphasize using

bold and italic font, uses the term "***shall***."  *Id.* at 559 (emphasis added).  The District Court found

that the "purpose of Rule 2019 is to ensure that plans of reorganization are negotiated and voted

upon by people who are authorized to act on behalf of the real parties in interest."  *Id.* (citing

9 Lawrence P. King, *et al.*, COLLIER ON BANKRUPTCY § 2019.05 [2] (15th ed. 2004)).  The District

Court found that "[i]t has been recognized that Rule 2019 need not always be strictly applied."  *Id.*

12

29.     In the District Court's view, the Bankruptcy Court's orders in *Kaiser* comported

with the requirements of Rule 2019 while "taking into consideration the complexities of mass tort

litigation" and struck "the appropriate balance between maintaining the public's right to access the

Rule 2019 information and ensuring that the information is not misused." *Id.* at 559-60.  Indeed,

the District Court in *Kaiser* recognized that "Courts have supervisory power over their records and

files and may deny access to those records and files to prevent them from being used for an

improper purpose." *Id.* at 560.  Likewise, the complexities of a mass tort case involving Sexual

Abuse Survivors, the Coalition's Rule 2019 disclosures strike the appropriate balance between

providing parties in interest with access to the required information and ensuring that such

information is not used for an improper purpose.

30.     Courts in the Third Circuit that have permitted parties to obtain access to Rule 2019

exhibits in mass tort bankruptcies containing information about tort victims have done so after the

parties have "stated a proper purpose" and have restricted the parties' use of the information so

that personal information is not publicly disclosed.  *In re Owens Corning Armstrong World Indus.,

Inc.*, 560 B.R. 229, 237 (Bankr. D. Del. 2016); *see In re Motions for Access of Garlock Sealing

Techs., LLC*, 488 B.R. 281, 302 (D. Del. 2013) (permitting debtor to access 2019 exhibits "solely

for the purpose of using them in connection with the estimation proceedings in its own bankruptcy

case," prohibiting debtor from making information public "except in an aggregate format" that did

"not identify any individual," and prohibiting debtor from having access to any "retention

agreements between lawyers and potential claimants").

31.     Here, the Insurers have not articulated a legitimate purpose for reviewing

confidential information about Sexual Abuse Survivors.  They are not "parties in interest" under

section 1109(b) of the Bankruptcy Code and do not purport to be creditors in these cases.  Their

stated bases for reviewing this information—ensuring a lack of conflicts of interest "among the claimants in this case" and in screening for potential fraudulent claims (*see* Insurers' Motion at 7-10 & 21)—are no different than the arguments that were made by the insurers in *Pittsburgh Corning* and rejected by the Third Circuit.  260 Fed. Appx. at 466.  Fraudulent claims will be screened in these cases through the claims allowance process.  The bar date has not occurred and will not occur until November 16, 2020.[12]

32.     In addition, it is important to recognize that the Sexual Abuse Survivors are not voluntary creditors.  They are not institutional creditors or bondholders.  Tort claimants generally do not hold claims at different levels of a chapter 11 debtors' capital structure, giving rise to the need for disclosure under Rule 2019 so that class members know if other members have a total economic interest adverse to the class as a whole.  *See, e.g.*, *In re Washington Mutual, Inc.*, 419 B.R. 271, 279-80 (Bankr. D. Del. 2009) (policies behind Rule 2019 disclosure requirements address "implications of creditors holding claims at different levels of the debtors' capital structure" so that "although a creditor is nominally a member of a certain class of creditors through ownership of securities in that class, the creditor may actually have a total economic interest adverse to the class as a whole").  The Sexual Abuse Survivors are here because they were harmed.

33.     *Pittsburgh Corning* and *Kaiser* affirm a key point in mass tort cases recognized by COLLIER ON BANKRUPTCY:  Rule 2019 should not "overcome the Bankruptcy Code's policy of giving parties a hearing before their rights are affected" especially "where strict compliance with

---

[12] Moreover, the Coalition has retained BrownGreer to help collect, aggregate and report the Coalition claims' information—an effort *beyond* that which is required under Rule 2019 or under the Bar Date Order—to assist the Debtors and mediators in understanding the scope and nature of the incidents suffered by the Coalition Members in an effort to facilitate mediation efforts and to ensure the information provided by the Coalition comports with, and can be matched with, the proofs of claim to be filed by the Coalition Members.

159696.01000/123787432v.1

the rule is impractical and its enforcement would effectively silence parties otherwise entitled to be heard." 9 COLLIER ON BANKRUPTCY ¶ 2019.05 (16th ed. 2018) (citing 11 U.S.C. § 102).

### 3. <u>The Orders in *Archdiocese of Saint Paul* and *Baron & Budd*</u>

34.    The Insurers failed to disclose the *Pittsburgh Corning* and *Kaiser* decisions in their Motion aimed at silencing the Coalition.  Instead, the Insurers rely on orders entered by the Courts in *Archdiocese of Saint Paul* and *Baron & Budd*.  But neither of those cases require this Court to compel the disclosure of confidential information about Sexual Abuse Survivors as a condition to the Coalition's participation in these cases.

35.    The Bankruptcy Court in *Archdiocese of Saint Paul* entered an order requiring a single law firm to provide copies of its "***form*** of retainer agreement, fee agreement, engagement agreement, referral agreement and all other applicable agreements authoring the [Firm] to act on behalf of a creditor." *See* Insurers' Motion at Appendix 2 (emphasis added).  The Court's order further required the law firm to provide "***exemplar copies*** of each version of the actual signed agreements." *Id.* (emphasis added).  And, the Court's order permitted the law firm to "***redact*** the personally identifying information" of the law firm's clients. *Id.* (emphasis added).  The Court's order does not support the Insurers' Motion, which demands the disclosure of personally identifying information about Sexual Abuse Survivors.  Nor does that order support a strict construction of Rule 2019 in a mass tort case involving an *ad hoc* committee of Sexual Abuse Survivors.

36.    *Baron & Budd* also involved Rule 2019 disclosures made by a law firm and not an *ad hoc* group.  The law firms in *Baron & Budd* argued that they complied with Rule 2019 by filing a list of the creditors they represented.  321 B.R. at 155.  After a hearing, the Bankruptcy Court required the law firms to supplement their disclosures with a "detailed explanation of any type of

co-counsel, consultant or fee-sharing relationships." *Id.* at 154. On appeal, the District Court held

that the insurance companies that sought this information had standing to do so because the case

had advanced to plan confirmation and the proposed plan was not "insurance neutral." *Id.* at

158-59 ("In this case, Insurers' standing is appropriate with respect to plan confirmation …

because the plan is not insurance neutral."); *compare Kaiser*, 327 B.R. at 558 (finding insurers

lacked standing to challenge Rule 2019 order and distinguishing *Baron & Budd* on the basis that

no plan in *Kaiser* had been "conceived").[13]

37.    In *Baron & Budd*, the bankruptcy case had progressed to a point where the "facts

and circumstances in connection with the employment of counsel" had a bearing on the fairness

of the plan's classification system. *Baron & Budd*, 321 B.R. at 165. Here, by contrast, the facts

and circumstances are very different. The Debtors have not filed a plan. The Insurers offer no

explanation as to why they currently need to review the Coalition's retention agreements. And,

nothing in the "facts and circumstances" analysis applied in *Baron & Budd* would tend to support

the Insurers' demand here for personally identifying information about Sexual Abuse Survivors.

### 4.    The Coalition's Rule 2019 Disclosures Are Sufficient

38.    The Coalition's Rule 2019 disclosures are informed by and intended to fully

comply with Rule 2019 and Third Circuit precedent. The Coalition has filed two Verified

Statements pursuant to Rule 2019 and Exhibit A, filing the requisite documentation under seal.

*See* Verified Statement [Docket No. 1053]; 2019 Statement [Docket No. 1106]. The Coalition

contemporaneously filed a Motion to Seal, explaining in detail why it is essential for the documents

---

[13]    *See also In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211-12 (3d Cir. 2011) (party in interest must show some "injury in fact, i.e., some specific, identifiable trifle of injury" and finding insurers had standing to object to the confirmation of plan that substantially increased—"by more than 27 times"—their prepetition liability exposure); *In re Combustion Eng'g*, 391 F.3d 190, 218 (3d Cir. 2004) (insurer does not have standing to challenge insurance neutral provisions in a chapter 11 plan).

to remain under seal and requesting Court confirmation of the Coalition's compliance with Rule 2019.

39.      As set forth more fully above, the information contained in these filings addresses, and satisfies, each of the requirements set forth in Rule 2019:

- The name of each entity at whose instance the Coalition (an *ad hoc* committee) was formed or agreed to act is set out in the 2019 Statement at Paragraph 1 and FN 2.  Rule 2019(c)(1)(A).

- The name and address of each member of the Coalition has been provided to the UST, has been made available to TCC counsel subject to confidentiality designations; and is subject to the Motion to Seal. Rule 2019(c)(2)(A).

- The nature and amount of each disclosable economic interest held in relation to the debtor as of the date the Coalition was formed is an unliquidated tort claim as described in the Verified Statement and the 2019 Statement.  Rule 2019(c)(2)(B).

- With respect to the date the "disclosable economic interest" was "acquired," the nature and date of the incident(s) suffered by the Coalition Members are set forth in Exhibit A and is subject to the Motion to Seal. Rule 2019(c)(2)(C).

- (i) Redacted copies of the engagement letters between the Coalition and Brown Rudnick and Blank Rome, respectively; (ii) redacted exemplars of the engagement letters between State Court Counsel and their clients (i.e., the Coalition Members); and (iii) exemplars of the notice to the Coalition Members regarding the formation of the Coalition and its retention of Brown Rudnick as counsel, collectively, are copies of the instruments authorizing the Coalition to act on behalf of the Coalition Members.  Rule 2019(c)(4).

40.      In sum, the Coalition has provided two Verified Statements, a 571 page document to the Court under seal with the exemplars of empowering documents for all of the legal relationships in the Coalition, a comprehensive client list to the United States Trustee (and made available to counsel to the TCC), and a full client list with limited personally identifiable information to the Court, mediators, and mediation parties.  The Coalition is hardly the alleged non-compliant *ad hoc* group underlying the Insurers' false narrative in the Insurers' Motion.  The

Coalition has taken substantial steps to comply with the Rule 2019 disclosures, as required by the case law of this Circuit, and respectfully avers that it is in full compliance. The Coalition awaits review of its Motion; and if this Court, in its sound discretion, identifies any deficiencies in the disclosures, the Coalition will work with the Court to cure them promptly.

### B.    The Coalition Is Not an "End-Run" Around the TCC's Fiduciary Duties

41.    The Insurers' Motion—particularly the "Primary Statement"—contains incorrect and purposely incendiary statements regarding the Coalition and its relationship to the TCC. The Coalition disputes them and notes that they are blatant, desperate efforts to taint the Coalition when, as set forth above, the law and the facts here should mandate denial of the Insurers' Motion. However, lest silence be construed as assent, certain assertions regarding the TCC and the Coalition are addressed below.

42.    First, the Insurers alleged that the TCC exists "to compel similarly situated claimants to negotiate as one." Insurers' Motion at 1, 15. The TCC exists to represent the interests of all tort victims in these cases. The United States Trustee's appointment of the TCC does not compel all tort victims to "negotiate as one." The cases cited by the Insurers in support of this argument—*In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005)—found that "the members of an official committee owe a fiduciary duty to the committee's constituents, *i.e.*, the entire class of general unsecured creditors" and not that all tort victims in a mass tort bankruptcy are required to "negotiate as one" through the TCC. The TCC, as an entity, does not get to vote on the confirmation of a plan, but the tort claimants do.

43.    Second, the Insurers speculate that the Coalition "presumably controlled the committee's selection of counsel." Insurers' Motion at 1, 15. In fact, the individual victims appointed by the United States Trustee controlled the selection of counsel. No law firms had a

vote.  The Coalition did not even exist at the time the TCC selected counsel and played no role in the TCC's selection of its chosen counsel.

44.    <u>Third</u>, the Insurers alleged that Coalition Counsel will not be bound by the obligation to "treat all claimants equally."  Insurers' Motion at 1, 15.  The Insurers' argument proceeds from a false premise.  The Coalition is not bound to treat all claimants in these cases equally.  The Coalition represents the collective interests of its Members, each of whom is a Sexual Abuse Victim holding claims against the BSA, among other parties.  Contrary to the Insurers' implication, there is nothing improper about such representation.  It is antithetical to the concept of zealous advocacy for it to be improper for the Coalition Counsel to represent the interest of its Members.  Counsel to nearly every *ad hoc* group in a bankruptcy proceeding represents the interests of the members of its group.

45.    <u>Finally</u>, the Insurers alleged that the Coalition's participation in mediation is an "end-run around the fiduciary duties that the code imposes on official committees to safeguard equal treatment of claimants."  Insurers' Motion at 1, 16.  The Coalition's formation did not dissolve the TCC, nor did it alter any of the duties or obligations retained by the TCC.  The TCC will be at the negotiating table, imbued with the fiduciary duties to protect the interests of all tort claimants equally.  This does not mean that there is no place for the Coalition at that same table.

46.    For the Debtors to confirm a consensual plan, they must solicit and obtain the acceptance of tort victims in the threshold amounts set forth in 11 U.S.C. § 1126(c)—*i.e.*, "at least two-thirds in amount and more than one-half in number."  The Debtors have indicated that they are interested in confirming a plan that includes a channeling injunction and third-party releases for contributing non-debtors.  Under *Millennium Lab*, this will require a supermajority of survivor

19

votes to confirm such a plan.  575 B.R. at 272.  The Debtors should attempt to negotiate with the representatives of all sexual abuse victims whose acceptance is necessary to confirm a plan.

47.    It is common in mass tort bankruptcies for this to occur.  For example, in *In re Purdue Pharma L.P.*, Case No. 19-23649 (Bankr. S.D.N.Y. 2019), the bankruptcy court for the Southern District of New York recognized the value of active, broad and significant participation of *ad hoc* committees in fundamental case and Plan negotiations.

48.    The court approved the *Purdue* debtors' assumption of a prepetition fee reimbursement agreement in favor of an *ad hoc* committee of governmental litigants holding tort claims against the debtors, permitting them to be reimbursed during the cases for their work. *See id.*, *Order Authorizing the Debtors to Assume the Reimbursement Agreement and Pay the Fees and Expenses of the Ad Hoc Committee's Professionals* [Docket No. 553] (approving reimbursement of *ad hoc* committees' fees upon monthly and interim fee applications).

49.    The *Purdue* court also entered a mediation order directing broad negotiations among no fewer than six (6) *ad hoc* committees of tort victims.  *See id., Order Appointing Mediators* [Docket No. 895] (directing mediation among: "(i) the Debtors; (ii) the Official Committee of Unsecured Creditors; (iii) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants; (iv) the Ad Hoc Committee of NAS Babies; (v) the Ad Hoc Group of Hospitals; (vi) the Ad Hoc Group of Non-Consenting States; (vii) the Multi-State Governmental Entities Group; (viii) the Ad Hoc Group of Individual Victims; (ix) counsel for Blue Cross Blue Shield Association, various third party payors and health insurance carrier plaintiffs; and (x) the group of individual health insurance purchasers, represented by Stevens & Lee P.C.").

50.    The *ad hoc* committees in *Purdue* are negotiating alongside the debtors and the official committee, including an *ad hoc* group of individual tort victims (where the official

20

committee was partially comprised of, among various other types of non-governmental creditors reflected in the *ad hoc* committees, individual tort victims). *Id.*

51.     Likewise, in the chapter 11 cases of the PG&E Corporation and its regulated utility subsidiary Pacific Gas and Electric Company, the debtors negotiated with the TCC and a group of law firms representing approximately 70% of the tort victims. *See Motion to Authorizing Debtors to Enter into Restructuring Support Agreement with the TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents* [Docket No. 5038], *In re PG&E Corp.*, No. 19-30088 (DM) (Bankr. N.D. Cal. Dec. 17, 2019).   The result of such negotiations was a Restructuring Support Agreement that was signed by both the TCC *and* law firms representing individual tort victims holding approximately 70% in number of prepetition tort claims, which led to the confirmation of a consensual chapter 11 plan. *Id.*

52.     The Coalition's goal is to be a similarly constructive influence and value-added participant in the Debtors' bankruptcy proceedings.   Permitting the Coalition to have a seat at the table will facilitate the timely reorganization of the Debtor and equitable distribution of the estate. The Insurers' Motion, which seeks to bar the Coalition's participation, seeks to impede the Debtors' bankruptcy proceedings and the ability of Sexual Abuse Survivors to receive just compensation.

### C.     The Insurers' Provide No Basis to Bar the Coalition from these Cases

53.     As explained herein, the Coalition has satisfied its Rule 2019 disclosure requirements. *See supra* at § B.  Rule 2019 does not require the Coalition to disclose the identities of over 12,000 victims of Sexual Abuse to insurance companies to participate in these cases. Sanctions are only appropriate in circumstances of non-compliance.  No such facts exist here.  If

the Court identifies any deficiencies in the Coalition's disclosures, the Coalition will work with the Court to cure them promptly.

## **CONCLUSION**

WHEREFORE, the Coalition respectfully requests that the Court enter orders denying the Insurers' Motion, granting the Coalition's Motion, and granting the Coalition such other and further relief as the Court deems just and proper.

Dated: September 2, 2020
Wilmington, Delaware

BLANK ROME LLP

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:    (302) 425-6423
Facsimile:    (302) 252-0921
E-mail:       Tarr@BlankRome.com


-and-

BROWN RUDNICK LLP
David J. Molton, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
E-mail: DMolton@BrownRudnick.com

and

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail: SBeville@BrownRudnick.com
E-mail: TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*

63850320 v1-WorkSiteUS-036293/0001

159696.01000/123787432v.1