## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

**Objection Deadline: September 2, 2020 at 4:00 p.m. (ET)**
**Hearing Date: September 9, 2020 at 10:00 a.m. (ET)**

### OBJECTION OF THE TORT CLAIMANTS' COMMITTEE TO MOTION OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE FOR AN ORDER (I) AUTHORIZING THE COALITION TO FILE UNDER SEAL EXHIBIT A TO THE AMENDED 2019 STATEMENT AND (II) APPROVING THE SUFFICIENCY OF THE AMENDED 2019 STATEMENT

The official committee of survivors of childhood sexual abuse (the "**Tort Claimants' Committee**") hereby objects (the "**Objection**") to the *Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* [Docket No. 1144] (the "**Motion**"). In support of the Objection, the Tort Claimants' Committee respectfully represents as follows:

## I

## INTRODUCTION

The Tort Claimants' Committee is a fiduciary to all childhood abuse survivors. The Office of the United States Trustee appointed the nine man committee after interviewing approximately 50 candidates. These men were appointed without regard to who represented

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

them in their personal claims against the Boy Scouts of America or how many other survivors those attorneys represented at the time or might represent in the future.  In fact, no member of the Tort Claimants' Committee is represented by more than one law firm or groups of law firms. In that sense, the selection process was "merit-based".  While that 1:1 ratio may have frustrated certain attorneys who expected their client census to affect the committee formation process, the resulting committee is comprised of men who are working cohesively to fulfill their fiduciary responsibilities to all survivors.

The Tort Claimants' Committee members care for their brother survivors and believe their responsibility is not limited to directing counsel but to representing the interests of all survivors in the bankruptcy case, which includes ensuring that each survivor is aware of his legal rights and that those rights are not unfairly prejudiced by an effort to settle claims en masse without the compensation that is required under the Bankruptcy Code.  The Tort Claimants' Committee members support each survivor retaining counsel of his choice to pursue that survivor's claim.  But when that choice has the possibility of undermining the bankruptcy process as a whole thereby adversely impacting the men to whom the Tort Claimants' Committee owes a fiduciary duty, the members are compelled to bring their concerns to the Court.

This Objection is intended to ensure that the survivors who make up the so called "Coalition" are represented by counsel who will play by the rules and place their clients' interests before their own, and are expressly authorized to speak on their clients' behalf and enter binding agreements.  Cognizant that no survivor should be disenfranchised from having his own counsel, the Tort Claimants' Committee tried to resolve the issues raised herein by

DOCS_SF:104087.13 85353/002

focusing on the survivors but Brown Rudnick's verified statements[2] to the Court failed to address those issues, particularly when viewed in the light of earlier statements by one of the Law Firms. Indeed, Brown Rudnick was forced to recant its assertion that it represented the men individually in favor of representing an amorphous "Coalition" and then again reversed course at the hearing on the Debtor's motion to modify the bar date claiming that it represented survivors. These shifting positions and explanations lack credibility and erode confidence in the bankruptcy process.

The "Coalition" is nothing more than a marketing term that was concocted by six law firms who were unhappy they could not control the Tort Claimants' Committee to implement their agenda in the case. As discussed below, all of this – including their contempt for the bankruptcy process and explicit strategy of obstruction -- was laid out in an e-mail sent by one of the Law Firms.

In contrast to so the so-called "Coalition," pursuant to section 1103 of the Bankruptcy Code, the Tort Claimants' Committee is charged with a fiduciary duty to advance and protect the claims of <u>all</u> childhood sex abuse survivors (the "**Survivors**"), and not exclusively those that have been labeled by their counsel as the "Coalition." All Survivors have a statutory right to be heard in this bankruptcy case (including the Survivors buried under the "Coalition" moniker), but only one group has a fiduciary duty to them: the Tort Claimants' Committee.

A marketing moniker does not become an entity because its lawyer-authors use it as a self-defined term in a pleading. It does not become an entity because the lawyer-authors tell 10,000 men that they are automatically enrolled into a figment of the authors' imagination. It is not an entity when its members have no governance or decision making role. Brown Rudnick

---

[2] While the Tort Claimants' Committee has not seen the engagement letter with Blank Rome (Brown Rudnick's local counsel), all the references to Brown Rudnick herein apply equally to Blank Rome.

may not appear in this case to represent a marketing concept that benefits the Law Firms at the expense of Survivors. Absent a client relationship, fully disclosed in accordance with Rule 2019, and clarity on the motives and strategies of their lawyer-clients, Brown Rudnick should not be allowed to appear in the Debtors' bankruptcy cases or the mediation.

This Court and many others have held that a collection of creditors that does not act on behalf of a larger group has no identity apart from the creditors. Here, Brown Rudnick's engagement letter, signed only by the Law Firms, expressly states that it represents the "Coalition" and not any of its members (a statement contradicted by both verified Rule 2019 statements and the representations made at the August 31, 2020, hearing). As such, the "Coalition" is not a group, committee, or entity as contemplated by Bankruptcy Rule 2019, and in that context the "Coalition" and Brown Rudnick as its counsel should not have any role in this bankruptcy case.

The Tort Claimants' Committee conferred with Brown Rudnick in an attempt to resolve its concerns with the "Coalition," but its questions were never adequately addressed and the "Coalition's" verified statements under Bankruptcy Rule 2019, and the other information filed under seal, only heightened the Tort Claimants' Committee's concerns, particularly in light of previous statements that call into question the motives and intent of the Law Firms.

Notably, other than the Bankruptcy Rule 2019 statements, all of the documents that have been filed with the Court or supplied to the Tort Claimants' Committee have been heavily redacted or are "exemplars" of the actual controlling and governing agreements among the relevant parties.[3] Without complete disclosure of the documents, it is impossible to determine the relationship among the Survivors, their immediate counsel, and Brown Rudnick, or whether

---

[3] For example, the exemplar of the blast email to the lawyers' clients is not dated and does not indicate which law firm sent it out.

4

the documents fully comply with applicable state law requirements regarding client

authorizations relating to representations of multiple parties in the same matter who may have

conflicting interests regarding adjudication or settlement of their claim and compensation (*e.g.*,

informed written consent to fee splitting or a third party paying the client's legal fees).

The issues presented in this objection matter because "[t]he conduct of bankruptcy

proceedings not only should be right but must seem right." *In re Ira Haupt & Co.*, 361 F.2d 164,

168 (2d Cir. 1966) (Friendly, J.).  All parties in interest in the Debtors' chapter 11 cases must

know who they are negotiating with, who the other parties represent, that counsel is authorized

to bind its clients, and acting in accordance with rules of professional conduct ("A lawyer's

conduct should conform to the requirements of the law…….." Delaware Lawyers Rules of

Professional Conduct, Preamble: A Lawyer's Responsibilities, ¶ 5).  By its inconsistent

positions on who it represents and the omissions regarding its compensation arrangements,

Brown Rudnick has not demonstrated the foregoing and the "Coalition" and Brown Rudnick as

its counsel should be excluded from participating in chapter 11 cases until it does so.

The Tort Claimants' Committee files this Objection to get a straight answer as to whom

Brown Rudnick represents and not have the question obfuscated by the term "Coalition."

For the reasons set forth above and below, the Motion should be denied.

## II.

## BACKGROUND

### A.    Formation of the Tort Claimants' Committee

On March 5, 2020, the Office of the United States Trustee ("**UST**") appointed the Tort

Claimants' Committee, which consists of nine Survivors of childhood sexual abuse (the "**TCC**

**Members**"). The UST interviewed approximately 50 Survivors and selected the nine men to

serve on the Tort Claimants' Committee as fiduciaries for all abuse Survivors. The TCC

Members each have personal counsel and the Tort Claimants' Committee meet regularly with the TCC Members and their counsel regarding strategic issues in BSA's chapter 11 case.

The six law firms (the "**Law Firms**") identified in the Motion previously represented two of the TCC Members. Abused in Scouting (a marketing name for certain law firms acting in concert) represented one member.  The other member was represented by Slater Slater and Schulman, Andrews and Thornton and ASK LLP.[4]  According to the 2019 Statement (as defined below), and without informing the Tort Claimants' Committee or its counsel, the Law Firms engaged Brown Rudnick on July 18, 2020, in connection with the purported formation of the "Coalition".[5]

As discussed in more detail below, for weeks after covertly forming the "Coalition," the Law Firms continued to meet with the Tort Claimants' Committee, its bankruptcy counsel and other professionals, and the other TCC Members' counsel where confidential strategy issues were discussed without disclosing the existence of the "Coalition" or the conflicting interests and strategies surreptitiously being formulated.

Immediately after the "Coalition" filed its notice of appearance on July 24, 2020, the Tort Claimants' Committee took action under its by-laws to prevent the disclosure of any confidential information to the Law Firms that might be working against the Tort Claimants' Committee.  On or about July 31, 2020, two of the TCC Members terminated the Law Firms. Around that time, the Tort Claimants' Committee took formal steps to discontinue communications with the Law Firms. It should be noted that not only do the two TCC Members

[4] The Tort Claimants' Committee is informed that this TCC Member may dispute whether he knew that Andrews & Thornton and ASK Law represented him.

[5] At least one of the attorneys in the group of the Law Firms referred to himself and other attorneys as a "coalition" as early as June 28, 2020.

6

DOCS_SF:104087.13 85353/002

continue to serve on the Tort Claimants' Committee, the other TCC Members value their dedicated service.

**B.      The Notice of Appearance and Verified 2019 Statements**

On July 24, 2020, Brown Rudnick filed a *Notice of Appearance and Request for Service of Notices and Documents* [Docket No. 1040] (the "**NOA**").  A true and correct copy of the NOA is annexed hereto as **Exhibit A**.  The NOA states that Brown Rudnick represents "the Coalition of Abused Scouts for Justice (the "Coalition"), which is comprised of over 10,000 Sexual Abuse Survivors participating in these cases . . ." NOA at 1.

Shortly after filing the NOA, Brown Rudnick sought to participate in the mediation on behalf of the "Coalition".  .  Pursuant to the mediation order, Debtors' counsel asked the mediation parties whether they would consent to the "Coalition's" participation in the mediation and set a deadline of July 28, 2020, to respond.  *See* [Docket No. 812] ¶ 3.  The Tort Claimants' Committee promptly informed the Debtors that it was considering the request but was not bound by the July 28, 2020 deadline.  The Official Committee of Unsecured Creditors (the "**UCC**") suggested that the "Coalition" first file a verified statement pursuant to Bankruptcy Rule 2019 before the mediation parties consider the request to join the mediation.

On July 29, 2020, Brown Rudnick filed the *Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* [Docket No. 1053] (the "**2019 Statement**"). A true and correct copy of the 2019 Statement is annexed hereto as **Exhibit B**.

The 2019 Statement avers that the "Coalition" is "comprised of more than 10,000 sexual abuse victims" and that each member of the "Coalition" "holds claims against the Debtors that may include, but are not necessarily limited to, unsecured claims and administrative claims." 2019 Statement ¶ 1.

7

Shortly thereafter, counsel to the Tort Claimants' Committee conferred with Brown Rudnick regarding the 2019 Statement and Brown Rudnick's relationship to the "Coalition," its purported 10,000 members, and the Law Firms.  The discussion raised more questions than it answered about the formation of the "Coalition," its role and operational structure vis-à-vis its 10,000 members, and how Brown Rudnick takes direction from the "Coalition," its members, and the Law Firms.

Presumably in response to the discussions with the Tort Claimants' Committee, on August 14, 2020, Brown Rudnick filed the *Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* [Docket No. 1106] (the "**Amended 2019 Statement**" and together with the 2019 Statement, the "**2019 Statements**").  A true and correct copy of the Amended 2019 Statement is annexed hereto as **Exhibit C**. Again, the Amended 2019 Statement raised more questions than it answered.

The Amended 2019 Statement provides that:

> [T]he members of the Coalition, by and through their state court counsel (the "State Court Counsel"), formed the Coalition and retained Brown Rudnick LLP and Blank Rome LLP (together, the "Coalition Counsel") to represent them in connection with the Coalition's claims and interests in respect of the Debtors and the Bankruptcy Cases. *See Rule 2019(c)(1) of the Federal Rules of Bankruptcy Procedure* ("Bankruptcy Rules"). The Coalition is comprised of more than 10,000 sexual abuse victims (collectively, the "Coalition Members"). *Id.* Each Coalition Member, a party-in-interest, holds claims against the Debtors that may include, but are not necessarily limited to, unsecured claims and administrative claims.

Amended 2019 Statement ¶ 1 (emphasis added).

The Amended 2019 Statement also reflects that it has a non-governing board:

> An Advisory Board consisting of the following six (6) members of the Coalition was created to participate in meetings of the

8

>Coalition and <u>assist in deliberation concerning actions taken by
>the Coalition</u>.

Amended 2019 Statement ¶ 2 (emphasis added).   The Amended 2019 Statement did not attach

any documents evidencing the powers, duties, and responsibilities of members of the

"Coalition" or the Advisory Board.

**C.      Tort Claimants' Committee's Mediation Participation Offer**

On August 21, 2020, the Tort Claimants' Committee agreed to permit the present and

future clients of the Law Firms (as opposed to the "Coalition"), and Brown Rudnick, to

participate in the Mediation.   The proposal was accepted by the Law Firms and Debtors' counsel

subsequently circulated an email to the Mediation Parties seeking their consent.   Again, not all

of the mediation parties consented.   Instead of filing a motion to allow the now 12,000 men to

be "mediation parties" consistent with the agreement with the Tort Claimants' Committee,

Brown Rudnick filed a motion to allow the "Coalition" to be a mediation party.

**D.      Engagement Letters of Brown Rudnick, Law Firms, and Other Info**

Immediately prior to the filing of the Motion, counsel to the Tort Claimants' Committee

received redacted copies of the "Coalition's" engagement letter with Brown Rudnick, a redacted

sample of an engagement letter of three of the Law Firms that hold themselves out as "Abused

in Scouting," redacted engagement letters of two of the other Law Firms, and a document

claimed to be an exemplar of a communication with the "Coalition's" members (together, the

"**Disclosure Documents**"). Indeed, the substance of the NOA and the 2019 Statements differs

markedly from the substance of the Disclosure Documents, the salient provisions of which are

quoted and summarized below and are being filed under seal.

1.    The Brown Rudnick Engagement Letter

The Brown Rudnick engagement letter (the "**BR Engagement Letter**") is inconsistent

with the Amended 2019 Statement and further clouds or confuses Brown Rudnick's role with

respect to the "Coalition," its members, their general standing, and whether or not Brown

Rudnick even represents a client who is a creditor of the Debtors' estates.  A true and correct

copy of the BR Engagement Letter is annexed as Exhibit A to the Motion, which was filed

under seal.

The BR Engagement Letter provides:



BR Engagement Letter at 1-2 (emphasis added).

The BR Engagement Letter further provides:



---

[6] Exhibit A to the BR Engagement Letter is redacted.  However, Brown Rudnick represented to the Tort Claimants' Committee that "Exhibit A" to the BR Engagement Letter identifies all 10,000 members of the "Coalition."



BR Engagement Letter at 2 (emphasis added).

The BR Engagement Letter also provides that:



BR Engagement Letter at 3 (emphasis added).

The BR Engagement Letter is addressed to each of the Law Firms and executed solely by them. There is no evidence that any client of a particular Law Firm (a) received a copy of the BR Engagement Letter, (b) knew of, let along consented to, the terms and conditions of the BR Engagement Letter, or (c) received advice concerning the terms and conditions of the BR Engagement Letter including, by way of example, that Brown Rudnick could and would be directed by unrelated law firms.

    2.    <u>The August 31, 2020 Hearing</u>

Again, Brown Rudnick purportedly on behalf of the "Coalition" represented to the Court at the August 31, 2020 that:

> We are here <u>representing abuse survivors</u> with a common story;
> physically, emotionally, and otherwise. <u>Our coalition members
> have an interest in seeing a fair and equitable process</u> that makes
> this bankruptcy and the compensation that may be available within

the bankruptcy, make it available to as many sexual abuse survivors as possible. <u>We do not represent the individual law firms. We do not represent the attorneys</u> here as to the specifics of the individual ads themselves.

August 31, 2020 Hearing Transcript (the "**Transcript**"), 50:1-10 (emphasis added). A true and correct copy of the Transcript is annexed hereto as **Exhibit D**.

Brown Rudnick emphasized that:

> We are here <u>on behalf of the coalition members themselves,</u> the sexual abuse survivors who have a principal position regarding the relief sought in this motion.

Transcript, 50-20-.23 (emphasis added).

Brown Rudnick further represented that:

> we are here defending <u>the coalition members</u> who desire to protect the constitutional right of the sexual abuse survivors to receive information from parties other than the debtors relating to, among other things, the Boy Scouts Chapter 11 case, the right to compensation for abuse they suffered, and the right to counsel to assist them through the bankruptcy process.

Transcript, 54:10-16 (emphasis added).

The above representations to the Court contradict the terms of the BR Engagement Letter.

3.    <u>The Abused in Scouting Engagement Letter</u>

The form of the "Abused in Scouting" engagement letter (the "**AIS Engagement Letter**") provides the following:



AIS Engagement Letter at 1. A true and correct copy of the AIS Engagement Letter was filed as Exhibit A to the Motion, which was filed under seal. The engagement letters of the other Law Firms are similar.

This unfettered right to "associate" with other law firms is clearly important, yet the AIS Engagement Letter does not explain (a) what it means to "associate with other law firms in the prosecution of the claim," (b) the potential circumstances, reasons, costs or benefits of any such potential "association," (c) whether and how such other law firms will be compensated, if at all, (d) how and whether the attorney-client relationship might be impacted by any "association" with another law firm and (e) that AIS would allow other unrelated law firms to control the advice/direction of counsel representing the interests of the client..

4.    The Purported "Coalition" Formation Communication

Finally, the Law Firms purportedly sent the following communication (the "**Communication**" to their clients about the "formation" of the "Coalition."



█████████████████████████████████████

Communication (emphasis added).  A true and correct copy of the Communication was filed as

Exhibit A to the Motion, which was filed under seal.

According to Brown Rudnick, the above is an exemplar of the "formation"

communication sent by the Law Firms to their clients.  The Communication (a) is undated and is

not the actual email(s)  the Law Firms sent to their clients; (b) shows that the "Coalition" was

"formed" by the Law Firms through an email blast to the Law Firms' clients informing the

clients that the Law Firms formed and are members of  the "Coalition," (c) establishes that the

Law Firms' clients played no role in the formation of the "Coalition," but that each client would

be included in the "Coalition" unless they affirmatively opt out, and (d) fails to disclose to the

clients the terms and condition of Brown Rudnick's employment, or any other aspect of the BR

Engagement Letter including, by way of example, that other "Coalition" member  law firms

(*i.e.*, any of the other six) could direct Brown Rudnick and not their actual counsel.

## II

## OBJECTION

**A.**    **Bankruptcy Rule 2019 Governs True "Entities"**

Bankruptcy Rule 2019 provides in part:

> In a chapter 9 or 11 case, a verified statement setting forth the
> information specified in subdivision (c) of this rule shall be filed
> by every group or committee that consists of or represents, and
> every entity that represents, multiple creditors or equity security
> holders that are (A) acting in concert to advance their common
> interests, and (B) not composed entirely of affiliates or insiders of
> one another.

Bankruptcy Rule 2019(b).

A "committee" or "group" that is subject to Bankruptcy Rule 2019 is a body of two or more people appointed for a specific purpose by a larger body of people. *In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 65 (Bankr. D. Del. 2010). The word "appointed" should be understood to mean action taken by a larger body. *Id.* "In order for a group to constitute a committee under Rule 2019 it would need to be formed by a larger group either by consent, contract or applicable law -- not by 'self-help.'" *Id.* The word "representation" means to act or speak for another by active appointment of an agent to assert rights. *Id.*

In *Premier*, the bankruptcy court held that:

> Thus, under the plain meaning of the phrase "a committee representing more than one creditor," a committee must consist of a group <u>representing the interests of a larger group with that larger group's consent or by operation of law</u>. As the SFO Noteholders Informal Committee <u>does not represent any persons other than its members</u> either by consent or operation of law, it is not a "committee" under Rule 2019 . . . .

*Premier*, 423 B.R. at 65; *see also*, *In re Phila. Newspapers, LLC*, 422 B.R. 553, 562-64 (Bankr. E.D. Pa. 2010) (agreeing with *Premier* and making substantially similar findings regarding the application of Bankruptcy Rule 2019).

Adopting the reasoning in *Premier* on a wholesale basis, the bankruptcy court in *Phila. Newspapers* held that in connection with the application of Bankruptcy Rule 2019(b),

> the Steering Group has no legal identity apart from its members. It does not represent any creditors other than its members and it has no instrument authorizing it to act on behalf of non-member creditors. Members are apparently free to join and withdraw as they see fit, and no member is bound by any decisions of the majority of the Group. <u>In short, this Court finds that the "Group" before it is not an "entity" because it is not an organization that has a legal identity apart from its individual members.</u>

*Phila. Newspapers*, 422 B.R. at 555-56 (emphasis added). The Court's description of the Steering Group in *Phila. Newspapers* applies equally to the "Coalition."

**B.    The "Coalition" is Fictitious and
Nothing More than a Marketing Term**

According to Brown Rudnick, each member of the "Coalition" "holds claims against the

Debtors that may include, but are not necessarily limited to, unsecured claims and administrative

claims." 2019 Statement ¶ 1. The Amended 2019 Statement similarly provides that "the

<u>members</u> of the "Coalition", by and through their respective Law Firms formed the "Coalition"

and retained Brown Rudnick LLP and Blank Rome LLP (together, the "'Coalition Counsel') <u>to</u>

<u>represent them</u> in connection with <u>the Coalition's claims and interests</u> in respect of the Debtors

and the Bankruptcy Cases." Amended 2019 Statement ¶ 1 (emphasis added).

The verified 2019 Statements, filed under penalty of perjury, affirmatively and

unambiguously state that the members of the "Coalition" hold the claims, not the "Coalition,"

and the members of the "Coalition" "retained Brown Rudnick . . . to represent **them** in

connection with the "Coalition's" claims . . . ."

Yet, those statements conflict with the terms of the BR Engagement Letter wherein

Brown Rudnick "



" . . . and that

" BR Engagement Letter at 2.

And then at the August 31, 2020 hearing, Brown Rudnick represented following:

- "[w]e are here presenting abuse survivors with a common story, physically, emotionally, and otherwise. Our coalition members have an interest in seeing a fair and equitable process."

- "[w]e are here on behalf of the coalition members themselves," and

- "we are here defending the coalition members,"

Again, each of the above representations is at odds with the express terms of the BR Engagement Letter.

The Disclosure Documents and the Transcript demonstrate the "Coalition" was formed by the Law Firms and that the "Coalition" has no identity apart from its law firm members and individual survivor members. Even with the information provided (most of which is heavily redacted), it is impossible to ascertain the identities of the true parties in interest and the relationship they have with counsel, whoever that might be. The Mediation Parties should not be required to engage in substantive discussions with counsel while substantial questions remain unresolved regarding their client and Brown Rudnick's authorization to act and bind. .

The numerous deficiencies in the Disclosure Documents and Transcript are highlighted by the holdings in *Premier* and *Phila. Newspapers*. First, the Law Firms hold out the "Coalition" to be comprised of its members, nothing more, nothing less. As the bankruptcy courts held in *Premier* and *Phila. Newspapers*, the "Coalition" is not an entity, as that term is used in Bankruptcy Rule 2019, because it is not an organization that has a legal identity apart from its individual members.

Second, as represented by Brown Rudnick, the members of the "Coalition" are the parties that hold claims. As such, the actual Survivors are the parties in interest that have standing to assert claims against the Debtors and a general right to be heard in the bankruptcy case and in the mediation to the extent they are permitted to join. But as Brown Rudnick plainly acknowledges, it does not represent any Survivors but instead a fictitious entity called the "Coalition." Brown Rudnick's role is further confused by the contradictory statements made to the Court at the August 31, 2020 hearing where Brown Rudnick stated that it represents the "Coalition" members.

Third, the Communication states "████████████████████" not the Survivor clients. The Communication shows that the Law Firms formed the "Coalition" and retained Brown Rudnick (as they first executed the BR Engagement Letter and then subsequently sent the Communication to the Law Firms' clients informing them (the purported members of the "Coalition") that they will be automatically included as part of this group unless they opt out.

Fourth, when read together, the Disclosure Documents and Transcript appear to create conflicts of interest among the Law Firms' clients. For example, the BR Engagement Letter provides that the firm is "████████████████████" As such, it would be expected that Brown Rudnick would take direction from its client, the "Coalition." That is impossible when "Coalition" is nothing more than its members, none of whom are represented by Brown Rudnick. Also, the Amended 2019 Statement reflects that an "Advisory Board" was "created" but it is unclear how such board was created, what authority it has, and whether it may act independently of 10,000 members without their input.[7] Plus, the BR Engagement Letter provides that it shall not act on behalf of the "Coalition" "██████████████████████ ████████████████████" giving the Law Firms power over Brown Rudnick enjoyed by no other member or group of members of the "Coalition." Plus, the unexecuted exemplars of engagement letters of certain of the Law Firms do not contain conflict waivers.

Fifth, the Tort Claimants' Committee suspects that part of the reason behind the Law Firms' attempt to create the "Coalition" was to position themselves and Brown Rudnick to seek the repayment of their fees by way of a "substantial contribution" claim under section 503(b)(3)(D) of the Bankruptcy Code. Whatever the reasons might be behind the effort to form the so called "Coalition," it was poorly executed and the Tort Claimants' Committee will object

---

[7] The Amended Rule 2019 Statement confirms the artifice when it says that the Advisory Board will participate in meetings of the "Coalition", *i.e.* meetings of 10,000 people.

to any attempt to seek a substantial contribution claim while it tries to hold itself out as something that it is not while trying to marginalize the Tort Claimants' Committee.

The above points lead to the following conclusions: (1) the client Survivors of the Law Firms have no input or direction over the enforcement of their claims through Brown Rudnick; (2) the six Law Firms direct Brown Rudnick's actions without regard to any potential conflicts of interest of respective clients of each Law Firm; and (3) it is unclear who Brown Rudnick represents because it acknowledged that the Law Firms' Survivor clients are not clients of Brown Rudnick.

For the foregoing reasons, the Motion should be denied. The "Coalition" should not be permitted to participate in the Debtors' bankruptcy cases or the mediation. Brown Rudnick should not be permitted to participate as counsel unless and until it has filed a satisfactory verified statement under Bankruptcy Rule 2019 and that the underlying documentation of its representation is disclosed to all parties in interest in an unredacted form that complies with the laws and rules governing its retention (*i.e.*, informed written consent from clients on its retention and compensation).

## C.   The Integrity of the Bankruptcy Process Matters

Certain of the mediation parties suggested that the Tort Claimants' Committee was being overly formalistic regarding the issues raised about the "Coalition." The Tort Claimants' Committee was encouraged to simply let "them" participate because "they" represent so many Survivors. But the Tort Claimants' Committee cannot simultaneously comply with its fiduciary duties while overlooking the substantive and material problems raised above and proceed as if nothing is wrong.

The Tort Claimants' Committee meets at least twice a week. The TCC Members and their individual counsel spend hours reviewing and discussing emails, pleadings, and

documents.  While the Tort Claimants' Committee was engaged in this important work, the Law Firms secretly formed the "Coalition" no later than July 18, 2020 (the date the BR Engagement was executed), and perhaps as early as June 28, 2020.   The Law Firms did not disclose to the Tort Claimants' Committee that the "Coalition" was formed or that it had conflicting interests nor did it cease participating in these meetings until after the initial 2019 Statement was filed.

The Law Firms' contemptuous attitude towards the bankruptcy process and the Mediation Parties, including the Debtors, the mediators, and the Tort Claimants' Committee and the blatant insensitivity to the injuries suffered by the TCC Members, was set forth in an email that Timothy Kosnoff, a member of AIS, mistakenly sent to the TCC Members, the Tort Claimants' Committee's professionals, and the TCC Members' counsel.  In his e-mail, Mr. Kosnoff stated that the Law Firms "need to control our power. Not just to the committee but to everyone - mediators, BSA, councils etc." And that some of the Law Firms "aren't handing over any of their data to anyone unless and until this gets sorted out. Andolina and the 3 Amigos[8] need to get that message.  They are wasting their time talking to the TCC."  Mr. Kosnoff went on in what appears to be an early reference to the "Coalition" stating that "[h]ere is the message: We control 80% of the claims i.e our coalition controls the case." and that they "are not going to do anything to help grease the gears for Stang and the dimwits including speeding up the insurance analysis. Ken, that's playing in to the Andolina Stang program."[9]  Instead, they will "relax, keep focused on our marketing and media efforts going full tilt in to Nov, chill and enjoy our summer and evaluate in the fall. We have the luxury of doing nothing." Mr. Kosnoff contemplated that the alternative was to "go sell 15-30M of our case to a motherfunder to let it

[8] This is presumably a reference to the Mediators appointed by the Court.
[9] "Ken" is a reference to Ken Rothweiler, an attorney affiliated with AIS.

DOCS_SF:104087.13 85353/002

and AG[10] digitally rape us for nine months." Instead, from there on out "[n]othing happens until AIS says so. We smile, nod our heads and do nothing, nothing at all."

Mr. Kosnoff's e-mail demonstrates many things:  (1) the lawyer-formed "Coalition" was devised at least three weeks earlier than the BR Engagement Letter; (2) the Law Firms were scheming to exert their control over the entire process, including over the mediators, BSA, Local Councils and the Tort Claimants Committee; and (3) the Law Firms intended to manipulate the process with no intention of moving the Debtors' cases forward.  The foregoing does not take into consideration the violent sexual references used about the Law Firms' investment versus the rea life trauma experienced by the TCC Members and all Survivors.

In the end, the Law Firms had formulated strategies that conflicted with the Tort Claimants' Committee yet they continued to participate in meetings where confidential and privileged information was disclosed for the exclusive benefit of the Tort Claimants' Committee. Their secrecy is essential to understanding the Tort Claimants' Committee's concerns.  This group of lawyers, who owed a fiduciary duty to their committee member clients and by extension to the entire Tort Claimants' Committee, hid their agenda while taking advantage of the trust of the Tort Claimants' Committee, its counsel and all of the other state court attorneys representing the other members.

The Tort Claimants' Committee is not under the illusion that the personal counsel of the TCC Members, the Law Firms, and the Tort Claimants' Committee's bankruptcy counsel should and will agree on everything or that the Law Firms should have fallen in line. The Law Firms were free to leave and disassociate themselves from the Tort Claimants' Committee at any time. However, the Law Firms' actions created distrust and confirmed that they did not have the

---

[10] This is presumably Addleshaw Goddard LLP, a litigation finance lender.

DOCS_SF:104087.13 85353/002

ability to act as fiduciaries for anyone other than their clients. It is in this context that the Law Firms' participation in the bankruptcy case or the mediation, with or without Brown Rudnick, matters to the Tort Claimants' Committee. While the Tort Claimants' Committee knows that it has disagreements with the Debtors or even the UCC, however when the Tort Claimants' Committee is dealing with them the Tort Claimants' Committee knows who speaks for each and that their representation of their clients is undertaken with the utmost professionalism.

The above cannot be more important to all parties in interest when Brown Rudnick claims that it speaks for more than 10,000 Survivors. Not only does the Tort Claimants' Committee expect to be treated with professionalism but it also wants assurance that Brown Rudnick truly acts as counsel for such a large group in conformity with all state rules of professional conduct and has the authority to bind the group when reaching an agreement in the bankruptcy cases or the mediation.

### III

### <u>RESERVATION OF RIGHTS</u>

The Tort Claimants' Committee reserves all rights with respect to the foregoing and reserves the right to raise any other and additional objections prior to or at the hearing on the Motion.

DOCS_SF:104087.13 85353/002

# IV

## CONCLUSION

For all of the foregoing reasons, the Tort Claimants' Committee respectfully requests

that the Court deny Motion in all respects.

Date: September 2, 2020

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**

*/s/ James E. O'Neill*

James I. Stang (CA Bar No. 94435)
John A. Morris (NY Bar No. 2405397)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 North Market Street, 17th Floor
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: jstang@pszjlaw.com
jmorris@pszjlaw.com
joneill@pszjlaw.com
jlucas@pszjlaw.com

*Counsel for the Tort Claimants' Committee*

DOCS_SF:104087.13 85353/002