# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br><br> Jointly Administered |

**Objection Deadline: September 2, 2020 at 4:00 p.m. (ET)**
**Hearing Date: September 9, 2020 at 10:00 a.m. (ET)**

## OBJECTION OF THE TORT CLAIMANTS' COMMITTEE TO MOTION OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO PARTICIPATE IN THE MEDIATION

The official committee of survivors of childhood sexual abuse (the "**Tort Claimants' Committee**") hereby objects (the "**Objection**") to *Motion of the Coalition of Abused Scouts to Participate in the Mediation* [Docket No. 1161] (the "**Motion**"). In support of the Objection, the Tort Claimants' Committee respectfully represents as follows:

## I

## INTRODUCTION

The Tort Claimants' Committee opposes the participation of the "Coalition" of Abused Scouts for Justice (the "**Coalition**") in the Mediation because it is nothing more than a marketing term that was concocted by six law firms who were unhappy they could not control the Tort Claimants' Committee to implement their agenda in the case.[2]

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Contemporaneously with the filing of this Objection, the Tort Claimants' Committee filed the Objection to the *Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* [Docket No. 1144] (the "**2019 Motion**"). The Tort Claimants' Committee's objection (the "**2019 Objection**") to the

DOCS_SF:104096.1 85353/002

On or about July 24, 2020, the Tort Claimants' Committee did not consent to the "Coalition" becoming a mediation party. In response to the Tort Claimants' Committee's position, the Tort Claimants' Committee agreed that the present and future clients of the six law firms may become mediation parties. However, in response, certain insurers objected to the Law Firms' participation. It is the Tort Claimants' Committee's understanding that certain insurers would have objected to the participation in the mediation by either the six law firms or the "Coalition." Nevertheless, the "Coalition" filed the Motion seeking authorization to participate in the Mediation as the "Coalition" and in breach of the agreement reached with the Law Firms prior to the filing of the Motion.

This Court and many others have held that a collection of creditors that does not act on behalf of a larger group has no identity apart from the creditors. Here, Brown Rudnick's engagement letter, signed only by the Law Firms, expressly states that it represents the "Coalition" and not any of its members (a statement contradicted by both verified Rule 2019 statements and the representations made at the August 31, 2020, hearing). As such, the "Coalition" is not a group, committee, or entity, and in that context the "Coalition" and Brown Rudnick as its counsel should not have any role in Mediation.

To be clear, the Tort Claimants' Committee previously agreed to permit the current and future clients of the Law Firms and Brown Rudnick to participate in the Mediation (as opposed to the "Coalition"). All true parties in interest should have a voice in the Debtors' chapter 11 cases and the existing Mediation Parties must know who they are negotiating with, who the other parties represent, and that their counsel has the authorization to bind their clients. As set forth herein, the "Coalition" and Brown Rudnick as its counsel cannot demonstrate the

---

2019 Motion should be read together with this Objection as the facts overlap and many of the issues and concerns are raised therein.

foregoing. Participation in the Mediation should not be permitted until it has been done in a manner that is satisfactory to all of the Mediation Parities and Mediators.

For the reasons set forth herein, the Motion should be denied to the extent the "Coalition" seeks to participate in the Mediation as opposed to the current and future clients of the Law Firms.

## II.

## BACKGROUND

A. **Formation of the Tort Claimants' Committee**

On March 5, 2020, the Office of the United States Trustee ("**UST**") appointed the Tort Claimants' Committee, which consists of nine Survivors of childhood sexual abuse (the "**TCC Members**"). The UST interviewed approximately 50 Survivors and selected the nine men to serve on the Tort Claimants' Committee as fiduciaries for all abuse Survivors. The TCC Members each have personal counsel and the Tort Claimants' Committee meet regularly with the TCC Members and their counsel regarding strategic issues in BSA's chapter 11 case.

The six law firms (the "**Law Firms**") identified in the Motion previously represented two of the TCC Members. Abused in Scouting (a marketing name for certain law firms acting in concert) represented one member. The other member was represented by Slater Slater and Schulman, Andrews and Thornton, and ASK LLP.[3] According to the 2019 Statement (as defined below), and without informing the Tort Claimants' Committee or its counsel, the Law Firms engaged Brown Rudnick on July 18, 2020, in connection with the purported formation of the "Coalition".[4]

---

[3] The Tort Claimants' Committee is informed that this TCC Member may dispute whether he knew that Andrews & Thornton and ASK LLP represented him.

[4] At least one of the attorneys in the group of the Law Firms referred to himself and other attorneys as a "coalition" as early as June 28, 2020.

As discussed in more detail below, for weeks after covertly forming the "Coalition," the Law Firms continued to meet with the Tort Claimants' Committee, its bankruptcy counsel and other professionals, and the other TCC Members' counsel where confidential strategy issues were discussed without disclosing the existence of the "Coalition" or the conflicting interests and strategies surreptitiously being formulated.

Immediately after the "Coalition" filed its notice of appearance on July 24, 2020, the Tort Claimants' Committee took action under its by-laws to prevent the disclosure of any confidential information to the Law Firms that might be working against the Tort Claimants' Committee. On or about July 31, 2020, two of the TCC Members terminated the Law Firms. Around that time, the Tort Claimants' Committee took formal steps to discontinue communications with the Law Firms. It should be noted that not only do the two TCC Members continue to serve on the Tort Claimants' Committee, the other TCC Members value their dedicated service.

**B.     The Mediation Order and the Mediation Parties**

On June 9, 2020, the Court entered the *Order Appointing Mediators, Referring Certain Matters to Mediation, and Granting Related Relief* (the "**Mediation Order**") [Docket No. 812]. The Mediation Order identified the following parties to the mediation: (a) the Debtors; (b) the Ad Hoc Committee of Local Councils of the Boy Scouts of America; (c) the Future Claimants' Representative; (d) the Tort Claimants' Committee, including its members, professionals, and the individual members' professionals; (e) the Official Committee of Unsecured Creditors, including its members, professionals, and the individual members' professionals; and (f) each of the insurers set forth on the exhibit to the Mediation Order (collectively, the "**Mediation Parties**"). Mediation Order, ¶ 3.

The Mediation Order includes a process to add other parties to the mediation. That provision provides that:

> Any additional party or parties who wish to participate in the Mediation, including, without limitation, any additional insurers, shall be included in the Mediation if (i) all of the Mediation Parties agree to include such additional party or parties in the Mediation and (ii) the Mediators agree that the participation of such additional party or parties is necessary or would be beneficial to the Mediation.

Mediation Order, ¶ 3. If all of the Mediation Parties and the Mediators agree to permit another party to participate in the mediation, the party becomes a Mediation Party. If the they do not consent, the party does not become a Mediation Party.

The underlying mediation motion [Docket No. 17] and prior iterations of the proposed Mediation Order contemplated mandatory mediation, the appointment of a judicial mediator, and a process that permitted parties in interest to seek the Court's authorization to participate in the mediation if the Mediation Parties and mediators did not consent to their inclusion. *See* [Docket No. 617], Paragraph 4 of Proposed Order. However, in response to the objections raised by certain insurers of the Debtors, the mediation protocol was revised so that it would not be Court ordered mediation but instead a voluntary process among those who agreed to mediate together, which resulted in the current form of the Mediation Order.

Since entry of the Mediation Order, Debtors' counsel has circulated emails setting a deadline for the Mediation Parties to consent (or dissent) to the inclusion of an additional party as a Mediation Party. Those requests would result in the inclusion of a new party by all of the Mediation Parties and Mediators consenting or any of their failure to object.

C.   **The "Coalition's" Request to Become a Mediation Party**

On July 24, 2020, Brown Rudnick filed a *Notice of Appearance and Request for Service of Notices and Documents* [Docket No. 1040] (the "**NOA**"). A true and correct copy of the

NOA is annexed hereto as **Exhibit A**. The NOA states that Brown Rudnick represents "the Coalition of Abused Scouts for Justice (the "Coalition"), which is comprised of over 10,000 Sexual Abuse Survivors participating in these cases . . ." NOA at 1.

Shortly after filing the NOA, Brown Rudnick sought to participate in the mediation on behalf of the "Coalition". . Pursuant to the mediation order, Debtors' counsel asked the mediation parties whether they would consent to the "Coalition's" participation in the mediation and set a deadline of July 28, 2020, to respond. *See* [Docket No. 812] ¶ 3. The Tort Claimants' Committee promptly informed the Debtors that it was considering the request but was not bound by the July 28, 2020 deadline. The Official Committee of Unsecured Creditors (the "**UCC**") suggested that the "Coalition" first file a verified statement pursuant to Bankruptcy Rule 2019 before the mediation parties consider the request to join the mediation.

On July 29, 2020, Brown Rudnick filed the *Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* [Docket No. 1053] (the "**2019 Statement**"). A true and correct copy of the 2019 Statement is annexed hereto as **Exhibit B**.

The 2019 Statement avers that the "Coalition" is "comprised of more than 10,000 sexual abuse victims" and that each member of the "Coalition" "holds claims against the Debtors that may include, but are not necessarily limited to, unsecured claims and administrative claims." 2019 Statement ¶ 1.

Shortly thereafter, counsel to the Tort Claimants' Committee conferred with Brown Rudnick regarding the 2019 Statement and Brown Rudnick's relationship to the "Coalition," its purported 10,000 members, and the Law Firms. The discussion raised more questions than it answered about the formation of the "Coalition," its role and operational structure vis-à-vis its

10,000 members, and how Brown Rudnick takes direction from the "Coalition," its members, and the Law Firms.

Presumably in response to the discussions with the Tort Claimants' Committee, on August 14, 2020, Brown Rudnick filed the *Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* [Docket No. 1106] (the "**Amended 2019 Statement**" and together with the 2019 Statement, the "**2019 Statements**"). A true and correct copy of the Amended 2019 Statement is annexed hereto as **Exhibit C**. Again, the Amended 2019 Statement raised more questions than it answered.

The Amended 2019 Statement provides that:

> [T]he members of the Coalition, by and through their state court counsel (the "State Court Counsel"), formed the Coalition and retained Brown Rudnick LLP and Blank Rome LLP (together, the "Coalition Counsel") to represent them in connection with the Coalition's claims and interests in respect of the Debtors and the Bankruptcy Cases. *See Rule 2019(c)(1) of the Federal Rules of Bankruptcy Procedure* ("Bankruptcy Rules"). The Coalition is comprised of more than 10,000 sexual abuse victims (collectively, the "Coalition Members"). *Id.* Each Coalition Member, a party-in-interest, holds claims against the Debtors that may include, but are not necessarily limited to, unsecured claims and administrative claims.

Amended 2019 Statement ¶ 1 (emphasis added).

The Amended 2019 Statement also reflects that it has a non-governing board:

> An Advisory Board consisting of the following six (6) members of the Coalition was created to participate in meetings of the Coalition and assist in deliberation concerning actions taken by the Coalition.

Amended 2019 Statement ¶ 2 (emphasis added). The Amended 2019 Statement did not attach any documents evidencing the powers, duties, and responsibilities of members of the "Coalition" or the Advisory Board.

**D.    Tort Claimants' Committee's Mediation Participation Offer**

On August 21, 2020, the Tort Claimants' Committee agreed to permit the present and future clients of the Law Firms (as opposed to the "Coalition"), and Brown Rudnick, to participate in the Mediation. The proposal was accepted by the Law Firms and Debtors' counsel subsequently circulated an email to the Mediation Parties seeking their consent. Again, not all of the mediation parties consented. Instead of filing a motion to allow the now 12,000 men be "mediation parties" consistent with the agreement with the Tort Claimants' Committee, Brown Rudnick filed a motion to allow the "Coalition" to be a mediation party.

**E.    Engagement Letters of Brown Rudnick, Law Firms, and Other Info**

Immediately prior to the filing of the Motion, counsel to the Tort Claimants' Committee received redacted copies of the "Coalition's" engagement letter with Brown Rudnick, a redacted sample of an engagement letter of three of the Law Firms that hold themselves out as "Abused in Scouting," redacted engagement letters of two of the other Law Firms, and a document claimed to be an exemplar of a communication with the "Coalition's" members (together, the "**Disclosure Documents**"). Indeed, the substance of the NOA and the 2019 Statements differs markedly from the substance of the Disclosure Documents, the salient provisions of which are quoted and summarized below and are being filed under seal.

    1.    The Brown Rudnick Engagement Letter

The Brown Rudnick engagement letter (the "**BR Engagement Letter**") is inconsistent with the Amended 2019 Statement and further clouds or confuses Brown Rudnick's role with respect to the "Coalition," its members, their general standing, and whether or not Brown Rudnick even represents a client who is a creditor of the Debtors' estates. A true and correct copy of the BR Engagement Letter is annexed as Exhibit A to the Motion, which was filed under seal.

The BR Engagement Letter provides:



BR Engagement Letter at 1-2 (emphasis added).

The BR Engagement Letter further provides:



BR Engagement Letter at 2 (emphasis added).

---

[5] Exhibit A to the BR Engagement Letter is redacted. However, Brown Rudnick represented to the Tort Claimants' Committee that "Exhibit A" to the BR Engagement Letter identifies all 10,000 members of the "Coalition."

The BR Engagement Letter also provides that:



BR Engagement Letter at 3 (emphasis added).

The BR Engagement Letter is addressed to each of the Law Firms and executed solely by them. There is no evidence that any client of a particular Law Firm (a) received a copy of the BR Engagement Letter, (b) knew of, let along consented to, the terms and conditions of the BR Engagement Letter, or (c) received advice concerning the terms and conditions of the BR Engagement Letter including, by way of example, that Brown Rudnick could and would be directed by unrelated law firms.

### 2. The August 31, 2020 Hearing

Again, Brown Rudnick purportedly on behalf of the "Coalition" represented to the Court at the August 31, 2020 that:

> We are here representing abuse survivors with a common story; physically, emotionally, and otherwise. Our coalition members have an interest in seeing a fair and equitable process that makes this bankruptcy and the compensation that may be available within the bankruptcy, make it available to as many sexual abuse survivors as possible. We do not represent the individual law firms. We do not represent the attorneys here as to the specifics of the individual ads themselves.

August 31, 2020 Hearing Transcript (the "**Transcript**"), 50:1-10 (emphasis added). A true and correct copy of the Transcript is annexed hereto as **Exhibit D**.

Brown Rudnick emphasized that:

> We are here on behalf of the coalition members themselves, the sexual abuse survivors who have a principal position regarding the relief sought in this motion.

Transcript, 50-20-.23 (emphasis added).
Brown Rudnick further represented that:

> we are here defending <u>the coalition members</u> who desire to protect the constitutional right of the sexual abuse survivors to receive information from parties other than the debtors relating to, among other things, the Boy Scouts Chapter 11 case, the right to compensation for abuse they suffered, and the right to counsel to assist them through the bankruptcy process.

Transcript, 54:10-16 (emphasis added).

The above representations to the Court contradict the terms of the BR Engagement Letter.

### 3. The Abused in Scouting Engagement Letter

The form of the "Abused in Scouting" engagement letter (the "**AIS Engagement Letter**") provides the following:



AIS Engagement Letter at 1. A true and correct copy of the AIS Engagement Letter was filed as Exhibit A to the Motion, which was filed under seal. The engagement letters of the other Law Firms are similar.

This unfettered right to "associate" with other law firms is clearly important, yet the AIS Engagement Letter does not explain (a) what it means to "associate with other law firms in the prosecution of the claim," (b) the potential circumstances, reasons, costs or benefits of any such potential "association," (c) whether and how such other law firms will be compensated, if at all, (d) how and whether the attorney-client relationship might be impacted by any "association"

with another law firm and (e) that AIS would allow other unrelated law firms to control the advice/direction of counsel representing the interests of the client..

4. The Purported "Coalition" Formation Communication

Finally, the Law Firms purportedly sent the following communication (the "**Communication**" to their clients about the "formation" of the "Coalition."



Communication (emphasis added).  A true and correct copy of the Communication was filed as Exhibit A to the Motion, which was filed under seal.

According to Brown Rudnick, the above is an exemplar of the "formation" communication sent by the Law Firms to their clients.  The Communication (a) is undated and is not the actual email(s) the Law Firms sent to their clients; (b) shows that the "Coalition" was "formed" by the Law Firms through an email blast to the Law Firms' clients informing the clients that the Law Firms formed and are members of the "Coalition," (c) establishes that the

Law Firms' clients played no role in the formation of the "Coalition," but that each client would be included in the "Coalition" unless they affirmatively opt out, and (d) fails to disclose to the clients the terms and condition of Brown Rudnick's employment, or any other aspect of the BR Engagement Letter including, by way of example, that other "Coalition" member law firms (*i.e.*, any of the other six) could direct Brown Rudnick and not their actual counsel.

## II

## OBJECTION

### A.  The "Coalition" Is Not An Entity

A "committee" or "group" that is subject to Bankruptcy Rule 2019 is a body of two or more people appointed for a specific purpose by a larger body of people. *In re Premier Int'l Holdings, Inc.*, 423 B.R. 58, 65 (Bankr. D. Del. 2010). The word "appointed" should be understood to mean action taken by a larger body. *Id.* "In order for a group to constitute a committee under Rule 2019 it would need to be formed by a larger group either by consent, contract or applicable law -- not by 'self-help.'" *Id.* The word "representation" means to act or speak for another by active appointment of an agent to assert rights. *Id.*

In *Premier*, the bankruptcy court held that

> Thus, under the plain meaning of the phrase "a committee representing more than one creditor," a committee must consist of a group <u>representing the interests of a larger group with that larger group's consent or by operation of law</u>. As the SFO Noteholders Informal Committee <u>does not represent any persons other than its members</u> either by consent or operation of law, it is not a "committee" under Rule 2019 . . ..

*Premier*, 423 B.R. at 65; *see also, In re Phila. Newspapers, LLC*, 422 B.R. 553, 562-64 (Bankr. E.D. Pa. 2010) (agreeing with Premier and making substantially similar findings regarding the application of Bankruptcy Rule 2019) (emphasis added).

Adopting the reasoning in *Premier* on a wholesale basis, the bankruptcy court in *Phila. Newspapers* held that in connection with the application of Bankruptcy Rule 2019(b),

> the Steering Group has no legal identity apart from its members. It does not represent any creditors other than its members and it has no instrument authorizing it to act on behalf of non-member creditors. Members are apparently free to join and withdraw as they see fit, and no member is bound by any decisions of the majority of the Group. <u>In short, this Court finds that the "Group" before it is not an "entity" because it is not an organization that has a legal identity apart from its individual members</u>.

*Phila. Newspapers*, 422 B.R. at 555-56 (emphasis added). The Court was describing the exact circumstances as the "Coalition."

**B.      The "Coalition" is Fictitious and Not Entitled to be a Mediation Party**

For the reasons set forth in the 2019 Objection (*see* Section III.B and C), the "Coalition" is not entitled to be a Mediation Party. The filings and other documents demonstrate the "Coalition" was formed by the Law Firms and that the "Coalition" has no identity apart from its law firm members and individual survivor members. Even with the information provided (most of which is heavily redacted), it is impossible to ascertain the identities of the true parties in interest and the relationship they have with counsel, whoever that might be. The Mediation Parties should not be required to engage in substantive discussions with counsel while substantial questions remain unresolved regarding their client and Brown Rudnick's authorization to act and bind.

Certain Mediation Parties suggested that the Tort Claimants' Committee was being overly formalistic regarding the issues raised about the "Coalition." The Tort Claimants' Committee was encouraged to simply let "them" participate because "they" represent so many Survivors. But the Tort Claimants' Committee cannot simultaneously comply with its fiduciary

duties while overlooking the substantive and material problems raised above and proceed as if nothing is wrong.

As set forth in greater detail in the Tort Claimants' Committee's 2019 Objection, the above cannot be more important to all parties in interest when Brown Rudnick claims that it speaks for more than 10,000 Survivors. Not only does the Tort Claimants' Committee expect to be treated with professionalism but it also wants assurance that Brown Rudnick truly acts as counsel for such a large group in conformity with all state rules of professional conduct and has the authority to bind the group when reaching an agreement in the Mediation.

### III

### RESERVATION OF RIGHTS

The Tort Claimants' Committee reserves all rights with respect to the foregoing and reserves the right to raise any other and additional objections prior to or at the hearing on the Motion.

### IV

### CONCLUSION

For all of the foregoing reasons, the Tort Claimants' Committee respectfully requests that the Court deny Motion in all respects.

Date: September 2, 2020

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435)
John A. Morris (NY Bar No. 2405397)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)

Case 20-10343-LSS    Doc 1231    Filed 09/02/20    Page 16 of 16

Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: jstang@pszjlaw.com
       jmorris@pszjlaw.com
       joneill@pszjlaw.com
       jlucas@pszjlaw.com

*Counsel for the Tort Claimants' Committee*