**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: September 9, 2020 at 10:00 a.m. (ET)**<br><br>**Ref. Docket Nos. 1145, 1192** |

**DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION PURSUANT
TO SECTION 105(a) OF THE BANKRUPTCY CODE AND ¶ 27 OF THE BAR DATE
ORDER FOR ENTRY OF AN ORDER (I) SUPPLEMENTING THE
BAR DATE ORDER AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………iii

INTRODUCTION………………………………………………………………………...2

ARGUMENT…………………………………………………………………………...5

I.      The Court Should Enter the Revised Proposed Supplemental Order Preventing Specific False and Misleading Statements..........................................................................................5

      A.      The Court Can Prevent False and Misleading Commercial Speech. ......................5

      B.      The Court Should Prevent the Attorney Advertisements Falsely Stating that Abuse Claimants May Remain "Anonymous." .................................................................7

      C.      The Court Should Prevent Misleading Statements Regarding the Size of the Potential Victim's Compensation Trust, Including that It "May Be Worth Over $1.5 billion." ...................................................................................................................9

      D.      The Court Should Prevent Misleading Statements That Claimants May Be Entitled to "Significant" or "Substantial" Compensation....................................................12

      E.      The Court Should Prevent False Statements That Claimants Do Not Need to Appear in Court, Submit to Depositions, or Otherwise Prove Their Claims. ....................13

II.     The Court Should Enter the Revised Proposed Supplemental Order Requiring Specific Information to be Disclosed in Order to Avoid Confusion................................................14

      A.      The Court Can Require Attorney Advertisements to Contain Information to Prevent Confusion Regarding the Bar Date and Claims Noticing Process.........................14

      B.      The Court Should Require Attorney Advertisements to Disclose the November 16 Bar Date. ...............................................................................................................18

      C.      The Court Should Require the Advertisements and/or the Law Firm Websites to Disclose the Official Claims Website and Phone Number. ...................................19

III.    The Court Should Enter the Revised Proposed Supplemental Order's Provisions For Streamlined Processes for Addressing False and Misleading Statements in Other Attorney Advertisements ...............................................................................................................21

CONCLUSION …………………………………………………………………………23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Andrus,*
189 B.R. 413 (N.D. Ill. 1995) ................................................15

*In re Apex Oil Co.,*
111 B.R. 245 (Bankr. E.D. Mo. 1990) ................................ 6-7

*Barr v. Am. Ass'n of Political Consultants, Inc,*
140 S. Ct. 2335 (2020) ................................................16, 17

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
447 U.S. 557 (1980) ................................................3, 14

*Chemetron Corp. v. Jones,*
72 F.3d 341 (3d Cir. 1995) ................................................15, 19, 20

*In re Clamp-All Corp.,*
233 B.R. 198 (Bankr. D. Mass. 1999) ................................7

*In re Combustion Eng'g, Inc.,*
391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ................................2, 6

*In re Courtesy Inns, Ltd.,*
40 F.3d 1084 (10th Cir. 1994) ................................6

*Day v. Avery,*
548 F.2d 1018 (D.C. Cir. 1976)………………………………….............................10

*In re Drexel Burnham Lambert Grp. Inc.,*
151 B.R. 674 (Bankr.S.D.N.Y.1993), *aff'd sub nom. Indian Motorcycle Assocs. v. Drexel Burnham Lambert Grp. Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 157 B.R. 532 (S.D.N.Y. 1993) ................................18, 20

*Dwyer v. Cappell,*
762 F.3d 275 (3d Cir. 2014) ................................3, 15

*In re Energy Future Holdings Corp.,*
522 B.R. 520 (Bankr. D. Del. 2015) ................................18

*In re Firestone,*
26 B.R. 706 (Bankr. S.D. Fla. 1982) ................................10

*In re Greenwich Sentry, L.P.,*
484 B.R. 567 (S.D.N.Y. 2012), *aff'd*, 534 F. App'x 77 (2d Cir. 2013) ................................5

*Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*,
512 U.S. 136 (1994)................................................................................14

*In re Iftiu*,
608 B.R. 677 (Bankr. N.D. Ohio 2019)...................................................10

*In re Kaiser Aluminum Corp.*,
456 F.3d 328 (3d Cir. 2006)................................................................. 5-6

*Katchen v. Landy*,
382 U.S. 323 (1966)……………………………………………….........................15

*Massachusetts Ass'n of Private Career Sch. v. Healey*,
159 F. Supp. 3d 173 (D. Mass. 2016) .....................................................17

*In re Mirant Corp*,
334 B.R. 787 (Bankr. N.D. Tex. 2005).................................6, 11, 13, 15

*Moldea v. New York Times Co.*,
22 F.3d 310 (D.C. Cir. 1994) ...................................................................10

*In re Nat'l Spa & Pool Inst.*,
257 B.R. 784 (Bankr. E.D. Va. 2001)......................................................20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund*,
575 U.S. 175 (2015)..................................................................................10

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019)......................................................................10

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)...................................................................................17

*In re R. M. J.*,
455 U.S. 191 (1982)……………………………………….............................3, 15

*In re Roberts*,
538 B.R. 1 (Bankr. C.D. Cal. 2015)........................................................10

*In re Rook Broadcasting of Idaho, Inc.*,
154 B.R. 970 (Bankr. D. Idaho 1993)................................................6, 13

*In re Sechuan City, Inc.*,
96 B.R. 37 (Bankr. E.D. Pa. 1989) ..........................................................17

*Shapero v. Kentucky Bar Ass'n*,
486 U.S. 466 (1988)..................................................................................14

iv

*In re Smidth & Co.*,
    413 B.R. 161 (Bankr. D. Del. 2009)……………………….................................................18

*In re Stonegate Security Servs., Ltd.*,
    56 B.R. 1014 (N.D. Ill. 1986) ...............................................................................................16

*United States Trustee v. Tank (In re Stacy)*,
    193 B.R. 31 (Bankr. D. Or. 1996)............................................................................................6

*In re Willis Furniture Co.*,
    148 B.R. 691 (Bankr. D. Mass. 1992) .....................................................................................6

*In re Willis Furniture Co.*,
    980 F.2d 721 (1st Cir. 1992)....................................................................................................6

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985)......................................................................................3, 5, 14, 15, 17

**Statutes**

11 U.S.C. § 105(a) ...............................................................................................................1, 2, 5

11 U.S.C. § 1125 ......................................................................................................................13

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977) ..................................................................13

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this supplemental brief (this "Supplemental Brief") in support of their motion (the "Motion"), pursuant to section 105(a) of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and paragraph 27 of the Bar Date Order,[2] for entry of an order (i) supplementing the Bar Date Order to prevent potential Sexual Abuse Survivors from being misled or confused regarding the Bar Date and claims process and (ii) granting related relief (D.I. 1145). With this Supplemental Brief, the Debtors are submitting a revised proposed order, filed concurrently herewith (the "Revised Proposed Supplemental Order"). In support of this Supplemental Brief, the Debtors submit the *Declaration of Shannon R. Wheatman, Ph.D in Support of Debtors' Supplemental Brief in Support of Their Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* (the "Supplemental Wheatman Declaration"), attached hereto as **Exhibit A**, and the *Declaration of John Doherty in Support of Debtors' Supplemental Brief in Support of Their Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* (the "Doherty Declaration"), attached hereto as **Exhibit B**, and each of which is incorporated herein by reference.

---

[2] All references herein to the "Bar Date Order" are to the *Order, Pursuant To 11 U.S.C. § 502(B)(9), Bankruptcy Rules 2002 And 3003(C)(3), and Local Rules 2002-1(E), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* (D. I. 695), entered by the United States Bankruptcy Court for the District of Delaware (the "Court") on May 26, 2020. Capitalized terms used but not defined herein shall have the meanings set forth in the Bar Date Order or the related motion (D.I. 18).

# INTRODUCTION

At the hearing on the Motion, the Court made clear that any order regulating attorney advertising directed to potential abuse claimants in this case needs to be narrowly targeted. *See* 8/31/20 Hr'g Tr. at 43:16-18; *see also id.* at 67:13–14. The Debtors have taken the Court's comments seriously, and are submitting a substantially narrowed Revised Proposed Supplemental Order. The revised order is directed at four specific false and misleading statements and the law firms or lawyers who have aired advertisements containing these statements: (1) statements that abuse claimants can remain "anonymous;" (2) statements that "a victim's compensation trust is being set up that may be worth over $1.5 billion," or otherwise speculating as to the size of a potential victim's compensation trust; (3) statements that claimants may be entitled to "significant" or "substantial" compensation; and (4) the statement, "You never have to appear in court. You're never going to have to take a deposition subject to these high-paid lawyers on their side." None of the objectors disputes that the attorney advertisements at issue are commercial speech, or that this Court has the authority under section 105(a) of the Bankruptcy Code to regulate false and misleading commercial speech that impacts the reorganization process. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235 (3d Cir. 2004), *as amended* (Feb. 23, 2005). And at the hearing, none of the objectors seriously argued that these statements are not false or misleading, much less brought forth evidence providing a factual basis for these assertions.

In addition, the Debtors' Revised Proposed Supplemental Order requires attorney advertisements directed to potential abuse claimants to reference the November 16, 2020 deadline for filing abuse claims, and for law firms and attorneys engaged in advertising to include in their advertisements and/or on their websites the official claims website. As set forth in the Motion and further below, this is essential to ensuring that abuse claimants have the information they need to timely submit proofs of claim and avoid confusion regarding whether, for example, having called

2

one of the law firms or submitted information on an attorney website is sufficient to have preserved

their rights in this bankruptcy case.  In support of these requirements, the Debtors are submitting

additional declarations further demonstrating why there is a substantial governmental interest in

these reasonable and limited requirements, including the Supplemental Wheatman Declaration and

the Doherty Declaration, submitted by John Doherty, a Senior Vice President of Omni Agent

Solutions ("Omni") who manages the dedicated call center and toll-free bankruptcy case phone

number, regarding calls he has received from potential claimants.

At the hearing, the Court requested additional legal authority for its power to require that

certain statements be included in attorney advertisements directed to abuse claimants.  The Court

unquestionably has that power.  Indeed, the Supreme Court has long held that courts can regulate

attorney advertising that is not false or deceptive if there is a "substantial governmental interest."

*Zauderer v. Office of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985) (citing

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)).  This

includes the power to require certain disclosures in order to "clarify truthful but potentially

misleading advertisements."  *See Dwyer v. Cappell*, 762 F.3d 275, 281 (3d Cir. 2014) (citing *In re

R. M. J.*, 455 U.S. 191, 203 (1982) ("[T]he Court in *Bates* suggested that the remedy in the first

instance [for potentially misleading information] is not necessarily a prohibition but preferably a

requirement of disclaimers or explanation.")).  And again, these principles apply with equal force

in the bankruptcy context.

The Coalition tried to muddy the waters at the hearing by arguing that this Court needed to

find a "clear and present danger to the debtor's reorganization" in order to regulate the attorney

advertisements at issue.  But that misstates the law.  The "clear and present danger" standard is a

strict scrutiny standard that applies to *non*-commercial speech.  Under controlling Supreme Court

precedent, the lesser intermediate scrutiny standard applies to the commercial speech at issue. That standard is easily met here, as there plainly is a governmental interest in protecting the Debtors' reorganization, including the essential claims administration process.

The Debtors are asking the Court only to enter an order regarding the specific advertisements identified below, which are currently before the Court. But the Debtors also request that the order entered by the Court include a streamlined process for the Debtors to bring additional problematic ads and marketing schemes to the Court's attention. As discussed at the hearing, ads airing on local cable networks, for example, are not easily accessible. In addition, the Debtors currently must rely on others to bring to their attention email blasts and telemarketing, which appears to be occurring at a disturbing level and with no oversight or limits on what potential claimants are being told or erroneously led to believe. As described below, the emails the Debtors recently have become aware of include statements such as "Funds immediately available." Attorneys are emailing and repeatedly calling Scouts who are still minors directly, asking if they or people they know have been sexually abused by a Scout leader, despite ethical rules prohibiting such conduct.[3] The Debtors will take all necessary and appropriate action to curtail unethical conduct by the plaintiffs' bar directed at potential abuse survivors. Unfortunately, additional court intervention likely will be required.

---

[3] *See, e.g.*, Ohio R. Prof. Cond. 7.3(b)(3) ("A lawyer shall not solicit professional employment by written, recorded, or electronic communication or by in-person, telephone, or real-time electronic contact [if] . . . the lawyer knows or reasonably should know that the person to whom the communication is addressed is a minor…"); N.Y. R. Prof. Cond. 7.3(a)(2) ("A lawyer shall not engage in solicitation by any form of communication if . . . the lawyer knows or reasonably should know that the age . . . of the recipient makes it unlikely that the recipient will be able to exercise reasonable judgment in retaining a lawyer."); *see also* Model R. Prof. Cond. 7.3(c)(2) ("A lawyer shall not solicit professional employment even when not otherwise prohibited by paragraph (b), if . . . the solicitation involves coercion, duress or harassment.").

## ARGUMENT

I.    **The Court Should Enter the Revised Proposed Supplemental Order Preventing Specific False and Misleading Statements.**

A.    **The Court Can Prevent False and Misleading Commercial Speech.**

As set forth in the Motion and discussed at the hearing, courts can "prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer*, 471 U.S. at 638.  None of the objectors contest that the attorney advertisements, the transcripts of which were attached to the Motion (*see* D.I. 1145-3), are commercial speech.  Nor do any of the objectors contest this Court's authority to prevent false and misleading statements in attorney advertisements directed to potential claimants in this bankruptcy case.  Indeed, the Coalition acknowledged that it would be appropriate for the Court to enjoin specific content upon a finding that it is false and misleading. 8/31/20 Hrg. Tr. at 50:10-15.  And correctly so: the sexual abuse survivors purportedly represented by the Coalition have no interest (Constitutional or otherwise) in receiving false or misleading advertising.  Because the evidence shows that the specific statements challenged by the Debtors are false and misleading, the Court should prevent these statements from being disseminated to potential abuse survivors through attorney advertisements.

This bankruptcy court has the authority to enter the Debtors' Revised Proposed Supplemental Order.  Pursuant to section 105(a) of the Bankruptcy Code, this Court has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and further permits the court to "tak[e] any action or mak[e] any determination necessary or appropriate . . . to prevent an abuse of process."  11 U.S.C. § 105(a); *see In re Greenwich Sentry, L.P.*, 484 B.R. 567, 574 (S.D.N.Y. 2012), *aff'd*, 534 F. App'x 77 (2d Cir. 2013).  This includes the "broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates."  *In re Kaiser Aluminum Corp.*, 456 F.3d

328, 340 (3d Cir. 2006); *see also In re Combustion Eng'g, Inc.*, 391 F.3d at 235 ("Bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process." (internal quotation omitted)).[4]

Bankruptcy courts have exercised their authority to prevent false and misleading statements from being disseminated to creditors and to the public.  For example, in *In re Mirant Corp*, 334 B.R. 787 (Bankr. N.D. Tex. 2005), the bankruptcy court determined that it had the authority to prevent dissemination by attorneys of false and misleading information in ads soliciting rejections of a Plan, and further held that it could require the attorneys to include certain additional court-approved language in their advertisements going forward.  *Id.* at 793–94.  Similarly, in *In re Willis Furniture Co.*, 148 B.R. 691 (Bankr. D. Mass. 1992), the court held that, as a court of equity, it had the authority to prohibit false and misleading advertising characterizing an asset sale as a "Chapter 11 Bankruptcy Sale."  *Id.* at 694; *In re Willis Furniture Co.*, 980 F.2d 721 (1st Cir. 1992) (affirming the bankruptcy court order prohibiting advertising that was misleading and not protected by the First Amendment, but stating the debtor could seek permission from the bankruptcy court to use advertisements with appropriate disclosures).  *See also In re Rook Broadcasting of Idaho, Inc.*, 154 B.R. 970, 972–76 (Bankr. D. Idaho 1993) (noting the court approval process and restrictions on dissemination of unapproved disclosure statements exists to protect creditors from misinformation so they can make an informed decision, and imposing sanctions on creditor who mailed copies of his unapproved disclosure statement and proposed plan to nearly all of the debtor's creditors because he created creditor confusion); *In re Apex Oil Co.*,

---

[4] In addition, under section 105(a) of the Bankruptcy Code, this Court has the authority to regulate the conduct of attorneys.  *See In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (Section 105 is "intended to imbue the bankruptcy courts with the inherent power . . . to maintain order and confine improper behavior in its own proceedings . . . ."); *U.S. Tr. v. Tank (In re Stacy)*, 193 B.R. 31, 38 (Bankr. D. Or. 1996) ("Federal courts, including bankruptcy courts, have inherent authority to regulate practice in cases pending before them.").

111 B.R. 245, 249 (Bankr. E.D. Mo. 1990) (noting that information in solicitation materials must be "truthful and absent of any false or misleading statements or legal or factual mischaracterizations"); *In re Clamp-All Corp.*, 233 B.R. 198, 208–09 (Bankr. D. Mass. 1999) (bankruptcy court has authority to prohibit circulation of solicitation materials before a disclosure statement has been approved by the court).

In order to protect creditors, and ultimately, the integrity of the Debtors' discharge and reorganization, this Court should exercise its authority to regulate third-party commercial speech that hinders the efficiency of the claims and noticing plan and causes potential creditor confusion.

**B.    The Court Should Prevent the Attorney Advertisements Falsely Stating that Abuse Claimants May Remain "Anonymous."**

As set forth in the Supplemental Roberts Declaration (D.I. 1192), 30% of the more than 11,000 TV ad spots identified by FTI and aired between May 26 and August 25, 2020 stated that abuse claimants may remain "anonymous."  D.I. 1192-1 at 5.  The six specific ads containing this language and the law firms or attorneys sponsoring these ads are as follows:

| D.I. 1145-3 Exhibit No. | Law Firm or Attorney | Statement (all emphases added) |
|---|---|---|
| A-1 | Andrew Van Arsdale, Abused in Scouting | "<u>You can remain anonymous</u>." |
| C-2 | 1-800-LAW-HELP | "New laws allow you to file the claim regardless of how long ago it happened, and <u>your claim may remain anonymous</u>." |
| E | Law Office of Cohen & Jaffe, LLP | "Our attorneys may be able to get you the financial compensation you deserve <u>while you remain anonymous</u>." |
| I | Scout Abuse Helpline/Greg Jones Law, P.A. | "Our attorneys may be able to get you substantial compensation <u>while you remain completely anonymous</u>. But time is quickly running out to file a claim, so call 800-951-8641 right now to learn if you are eligible to seek justice and compensation <u>while remaining completely anonymous</u>." |
| L | Slater Slater Schulman LLP | "Our attorneys may be able to get you substantial compensation <u>while you remain completely anonymous</u>." |

| R | Junell & Associates | "Even if the abuse happened decades ago, our attorneys can file a claim for you and get you the justice and closure you deserve <u>while you remain completely anonymous</u>." |
|---|---|---|

These statements are false, and the Court should prevent any further dissemination of them. The Sexual Abuse Survivor Proof of Claim Form requires claimants to provide identifying information—including their real names. *See* D.I. 695-7. There is no allowance for anonymous or "John Doe" claims. Further, paragraph 7(e) of the Bar Date Order[5] provides that certain Sexual Abuse Proofs of Claim can be provided to fourteen different *categories* of people, including, among others, officers, directors, and employees of the Debtors, individual Local Councils with respect to Sexual Abuse Claims asserted against them, and the Debtors' insurers. D.I. 695, ¶ 7(e). While the Bar Date Order contains several provisions to keep sexual abuse claimant information *confidential*, it is simply not true that abuse survivors can file claims while remaining anonymous.

In its Objection, the Coalition argued that "non-lawyers may not appreciate the legal distinction between" the term "confidential" and the term "anonymous." D.I. 1190, ¶ 26. But it provided no evidence to support its speculative assertion regarding how laypersons understand the term "anonymous," and its argument defies common sense. Ordinary people understand that "anonymous" means that a person's name is withheld entirely, while "confidential" means information is disclosed to only a limited group.[6] The Debtors' expert in plain language noticing, Dr. Wheatman, confirms this: She explains that when a layperson is told they will remain "anonymous," they reasonably understand that their real name will not be used at all. *See* Supp. Wheatman Decl., Ex. A, ¶ 9.

---

[5] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion.

[6] *See, e.g.*, *Dictionary.com* (anonymous: "(1) without any name acknowledged, as that of author, contributor, or the like; (2) of unknown name; whose name is withheld) (confidential: "(4) (of information, a document, etc.,) (a) bearing the classification *confidential*, usually being above *restricted* and below *secret;* (b) limited to persons authorized to use information, documents, etc., so classified.").

Because anonymity is not possible here, potential abuse survivors should not be misled by false statements in the attorney advertisements identified in the table above into thinking they can file anonymous claims.

C.   **The Court Should Prevent Misleading Statements Regarding the Size of the Potential Victim's Compensation Trust, Including that It "May Be Worth Over $1.5 billion."**

The Court likewise should prevent the following statements speculating as to the potential size of a victim's compensation fund or trust, which has yet to be established.  These statements appeared in 36% of the more than 11,000 TV ad spots identified by FTI and run between May 26 and August 25, 2020.  (Supp. Roberts Decl. at Ex. A, p. 4.)

| D.I. 1145-3 Exhibit No. | Law Firm or Attorney | Statement |
|---|---|---|
| B-1 | Sheldon Law Group | "As a result of this bankruptcy, a Victim's Compensation Fund is being set up that may be worth over $1.5 billion." (Repeated 3 times) |
| B-2 | Sheldon Law Group | "As a result of this bankruptcy, a Victim's Compensation Fund is being set up that may be worth over $1.5 billion." |
| B-3 | Sheldon Law Group | "As a result of this bankruptcy, the Victim's Compensation Fund is being set up that may be worth over $1.5 billion." |
| C-1 | 1-800-LAW-HELP Legal Network | "The Victim's Compensation Fund may be worth over $1.5 billion." |
| C-4 | 1-800-LAW-HELP Legal Network | "There may be a fund worth over $1.5 billion for victims of abuse." |
| K | Sheldon Law Group | "As a result of this bankruptcy, a Victim's Compensation Fund is being set up that may be worth over $1.5 billion." |
| M | Parker Waichman | "The Boy Scouts just filed for bankruptcy, which reportedly will create a $1-billion fund to compensate victims of abuse…" |
| O | Napoli Shkolnik PLLC | "As a result of this bankruptcy, a Victim's Compensation Fund is being set up that may be worth over $1.5 billion." |

At this time, no victim's compensation fund or trust has been formed, and any guesses as to its potential size are entirely speculative.  There has been no determination as to what BSA

assets—many of which are subject to donor and other restrictions—are available to creditors. There has been no determination as to whether any of the Local Councils or chartered organizations will contribute to the trust. There has been no determination of what the BSA's insurers will contribute. By assigning a potential dollar value to the victim's compensation trust, these statements imply these matters largely have been resolved and that the approximate size of the future trust is known. Not so.

Napoli Shkolnik PLLC ("Napoli") submitted an objection and appeared at the hearing to argue that "speculation" as to the value of the fund is "not misleading" and that "it's not detrimental to the lawsuit in any way." 8/31/20 Hrg. Tr. at 48:3–9; *see also* D.I. 1200. Tellingly, in neither its objection nor at the hearing did Napoli state the basis for its speculation that the fund may be worth $1.5 billion. And contrary to Napoli's unsupported assertion, courts routinely find that forecasts and opinions, without any factual basis, *are* misleading. *See, e.g., In re Iftiu*, 608 B.R. 677, 690 (Bankr. N.D. Ohio 2019) (finding sales projections not grounded in fact false and misleading); *In re Roberts*, 538 B.R. 1, 14–16 (Bankr. C.D. Cal. 2015) (financial projections and figures not based in reality false and misleading); *In re Firestone*, 26 B.R. 706, 715 (Bankr. S.D. Fla. 1982) ("Where an opinion is based 'on facts that are unavailable to the listener either because he does not have access to them or because he is obviously incapable of interpreting them' it may be actionable.") (quoting *Day v. Avery*, 548 F.2d 1018, 1026 (D.C. Cir. 1976)); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) (statements of opinion misleading when they omit to disclose lack of inquiry into or knowledge of relevant facts); *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994) (statements of opinion not protected by the First Amendment if they "imply a provable false fact, or rely upon stated facts that are provably false"); *Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019) (same).

This is particularly true when the statement comes from an attorney concerning a legal proceeding.  Potential abuse claimants rationally would expect that an attorney has access to more information than they do, and would not say that the fund may be worth over $1.5 billion unless he had some reasonable basis to believe that to be true.  *See In re Mirant*, 334 B.R. at 794 (finding attorney solicitations misleading: "It may be expected that any visitor to the [attorney] Website would conclude that observations concerning bankruptcy law found there are the considered legal opinions of the Firm.").  In fact, the evidence shows that potential claimants have been led to believe that the victim's compensation trust will be worth $1.5 billion.  As set forth in the Doherty Declaration, multiple callers to the Omni call center have asked how the trust will be funded, specifically referencing the $1.5 billion amount.  Doherty Decl., Ex. B, ¶ 7.  Because these statements are misleading, they should be prevented from being disseminated further.

Napoli's bald assertion that this statement—even if entirely baseless and misleading—is "not harmful" also defies common sense.  If Napoli and the other plaintiffs' firms did not believe potential abuse claimants would be influenced by the assertion that the fund may be worth over $1.5 billion, they would not have included that statement in nearly 4000 of the 11,000 ads that were aired between May 26 and August 25.  (Supp. Roberts Decl. at Ex. A, p. 4.)  This statement plainly is intended to lead potential claimants to believe submitting a claim could be a lottery ticket, which is far from the truth.

Notably, the Tort Claimants Committee, acting on behalf of abuse claimants, argued in connection with its objection to the Bar Date Order that *any* reference to a proposed victim's compensation trust in notices to abuse claimants could be confusing, and therefore harmful:  "It may be misinterpreted as announcing that the Debtors' chapter 11 plan has been approved without any opportunity for survivors to be heard."  D.I. 601 at 8–9.  Further, as Dr. Wheatman observes,

if the actual victim's compensation trust in BSA's proposed plan turns out to be materially different in size than what claimants were led to believe by these advertisements, that is likely to cause claimants to distrust the bankruptcy process and post-confirmation claims administration.  *See* Supp. Wheatman Decl., Ex. A, ¶ 11.  Simply put, claimants will not know who to believe or who misled them as to the assets available for the victim's compensation trust.  Being influenced by misleading information is inherently harmful.

### D.    The Court Should Prevent Misleading Statements That Claimants May Be Entitled to "Significant" or "Substantial" Compensation.

For similar reasons, the Court should prevent the attorney advertisements from asserting that claimants may be entitled to "significant" or "substantial" compensation, a statement that appeared in 30% of the ads aired after the Bar Date Order was entered.

| D.I. 1145-3 Exhibit | Law Firm or attorney | Statement |
|---|---|---|
| C-2 | 1-800-LAW-HELP Legal Network | "If you were a victim of sexual abuse while in the Boy Scouts, you may be entitled to significant monetary compensation." |
| E | Law Office of Cohen & Jaffe, LLP | "[I]f you were a victim of sexual abuse by an adult Scout leader, you may be entitled to significant financial compensation for your pain, suffering and other damages." |
| F-1 | AVA Law Group, Inc. | "New laws may allow you a path to significant financial compensation." |
| F-2 | AVA Law Group, Inc. | "Even if you've been told that you were too late for justice, new laws may allow you a path to significant financial compensation." |
| I | Scout Abuse Helpline/Greg Jones Law, P.A. | "[I]f you were sexually abused by an adult Scout leader, even if it happened decades ago, listen closely, as you may be entitled to substantial financial compensation." |
| L | Slater Slater Schulman LLP | "[I]f you were sexually abused by an adult Scout leader, you may be entitled to substantial financial compensation." |
| N | Pintas & Mullins Law Firm | "You may be entitled to substantial compensation." |
| R | Junell & Associates Law Firm, PLLC | "[I]f you were sexually abused by an adult Scout leader, even if the abuse happened decades ago, listen closely, as you may be entitled to substantial compensation." |

Again, at this time, there is no basis to know whether claimants will receive "substantial" or "significant" compensation.  As described, the size of the potential victim's compensation fund is unknown, for several reasons.  The number of claimants is unknown.  The number of claims that will be rejected is unknown.  What factors, such as statute of limitations issues, will impact claimant recoveries, is undetermined.  But again, potential claimants reasonably would assume that the attorneys making these representations have access to information they do not have, and have a reasonable basis for this statement.  *See In re Mirant Corp.*, 334 B.R. at 794; *see also* Supp. Wheatman Decl., Ex. A, ¶ 11 ("Coming from a source such as an attorney or law firm, and then hearing conflicting or less information from the Debtors or the claims and noticing agent, makes a claimant more distrustful of any information about the case—including Court-approved official messaging.").

As noted at the hearing, debtors cannot make any representations about potential creditor recoveries outside of an approved disclosure statement under Section 1125 of the Bankruptcy Code, even if those statements have a reasonable basis.  The reason for this is to protect creditors from confusion and misinformation and allow them to make informed, intelligent decisions.  *See In re Rook Broad. of Idaho, Inc.*, 154 B.R. at 976; H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), at 408.  It would be an odd result indeed if this Court could restrain the Debtors' *truthful* speech regarding potential creditor recoveries, but could not prevent baseless and misleading assertions in commercial advertisements by third party attorneys.  The law does not require this absurd result.

### E.    The Court Should Prevent False Statements That Claimants Do Not Need to Appear in Court, Submit to Depositions, or Otherwise Prove Their Claims.

Finally, the Court should prevent the following false and misleading statement, which appeared in an infomercial aired by Coalition-member Andrew Van Arsdale:

> You need to contact us.  We work on the claim.  We do everything
> for you.  You never have to travel anywhere.  You're never going to
> appear in court.  You're never going to have to take a deposition
> subject to these high-paid lawyers on their side.  We handle it for
> you.

D.I. 1145-3, Ex. A-1.

This statement too is baseless.  What will be required in order for claimants to establish a

right to recovery during the post-confirmation trust process has yet to be determined.  But what

the Debtors do know contradicts Mr. Van Arsdale's statement.  As counsel for Century noted at

the hearing, this statement suggests that claims will not be tested.  *See* 8/31/20 Hrg. Tr. at 39:19-

23 ("[T]hey're being told that there will be no deposition, no appearance in court, that they will be

anonymous.  These are all code words in the mass tort advertising world for your claims will not

be tested or that's at least what some people will interpret them to mean …").  In fact, it is highly

likely there will be objections to claims and challenges to the sufficiency, accuracy, or veracity of

information provided.  This may require certain claimants to produce additional information or

documents, answer questions, or even submit to a deposition—which an attorney cannot do for

them.  In order to prevent potential claimants from being misled regarding what the claims

administration process may entail, the Court should prevent this statement from continuing to be

aired.

II.     **The Court Should Enter the Revised Proposed Supplemental Order Requiring Specific Information to be Disclosed in Order to Avoid Confusion.**

     A.     **The Court Can Require Attorney Advertisements to Contain Information to Prevent Confusion Regarding the Bar Date and Claims Noticing Process.**

The Court can regulate attorney advertising that is not false or deceptive if there is a

"substantial governmental interest," and means that directly advance that interest.  *Zauderer*, 471

U.S. at 638 (citing *Cent. Hudson*, 447 U.S. at 566); *see also Ibanez v. Fla. Dep't of Bus. & Prof'l*

*Regulation, Bd. of Accountancy*, 512 U.S. 136, 142 (1994); *Shapero v. Kentucky Bar Ass'n*, 486

U.S. 466, 472 (1988).    Additionally, disclosure requirements that compel disclaimers or explanations to attorney advertisements to "clarify truthful but potentially misleading advertisements" are permitted under the First Amendment.  *See Dwyer*, 762 F.3d at 281 (citing *In re R. M. J.*, 455 U.S. at 200 ("[T]he Court in *Bates* suggested that the remedy in the first instance [for potentially misleading information] is not necessarily a prohibition but preferably a requirement of disclaimers or explanation.")).[7]

This Court can require disclaimers to be added to attorney advertisements targeting potential abuse claimants because the Court has a substantial government interest in administering bankruptcy laws and protecting the Debtors' reorganization.   *Zauderer*, 471 U.S. at 638 ("Commercial speech that is not false or deceptive . . .  may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest."); *In re Andrus*, 189 B.R. 413, 417 (N.D. Ill. 1995) (holding that the bankruptcy court had a "significant governmental interest in "the ability of the Bankruptcy Code to protect debtors"); *see also In re Mirant Corp.*, 334 B.R. at 793 (holding that the bankruptcy court had the power to restrict a law firm from soliciting the rejection of the debtors' plan using false and misleading statements because "commercial speech is involved and the integrity of the bankruptcy process is at stake").

As Debtors' counsel stated at the hearing on the Debtors' Motion, an organized claims process facilitates the Debtors' reorganization and is a key component of the bankruptcy system. *See* 8/31/20 Hrg. Tr. at 26:12–25; *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (citing *Katchen v. Landy*, 382 U.S. 323, 328 (1966)) (describing how the claims allowance

---

[7] The Third Circuit has interpreted *Zauderer* as imposing a standard for disclosure requirements that is less stringent than intermediate scrutiny.  *See Dwyer*, 762 F.3d at 281 ("[D]isclosure requirements are permissible so long as they are 'reasonably related to the State's interest in preventing deception of consumers.'") (quoting *Zauderer*, 471 U.S. at 651).  The Debtors submit that because they can satisfy the intermediate scrutiny, they also satisfy this lower standard for disclosure requirements.

process served "one of the principal purposes of bankruptcy law, to secure within a limited period the prompt and effectual administration and settlement of the debtor's estate"). Therefore, the Court has a substantial government interest in preventing commercial speech that could undermine the claims allowance process by confusing potential abuse claimants.

Contrary to the Coalition's assertions, there is no requirement that the attorney advertisements constitute a "clear and present danger to the debtor's reorganization" in order for the Court to regulate the speech. D.I. 1190, ¶ 29. A finding of clear and present danger to the debtor's reorganization is required to satisfy the *strict scrutiny* standard. But that standard applies to *non*-commercial speech. *See* 8/31/20 Hrg. Tr. at 55:4–14. Indeed, the Coalition derived the phrase "clear and present danger to the debtor's reorganization" (D.I. 1190, ¶ 29) from *In re Stonegate Sec. Servs., Ltd.*, which specifically analyzed *non*-commercial speech. 56 B.R. 1014, 1020 (N.D. Ill. 1986) (noting that the language at issue "did not involve solicitation of business, and, therefore, was not commercial speech deserving of only limited protection. In light of the protected nature of the speech . . . [it] could not be constitutionally prohibited under § 362").

Pointing to the Supreme Court's recent decision in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), the Coalition suggests that strict scrutiny may apply to commercial speech. But that assertion is admittedly based on the Coalition's speculation as to what the *Barr* decision portends for the Supreme Court's commercial speech doctrine in the future. *See* D.I. 1190, ¶ 16 n.6 (conceding that the "Court's decision in *Barr* has an even more *unclear effect on* the commercial speech doctrine. To date, no Court has yet interpreted the effect of the *Barr* decision on First Amendment jurisprudence"). In *Barr*, the Court analyzed an amendment to the Telephone Consumer Protection Act that distinguished between robocalls to collect a government debt and robocalls made for political and other speech. *See* 140 S. Ct. at 2346. *Barr*

16

expressly did *not* overrule the Supreme Court's commercial speech doctrine that applies to attorney advertisements. *See id.* at 2347 ("The issue before us concerns only robocalls to cell phones. Our decision today on that issue fits comfortably within existing First Amendment precedent. Our decision is not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity."); *see also Massachusetts Ass'n of Private Career Sch. v. Healey*, 159 F. Supp. 3d 173, 192 (D. Mass. 2016) (holding that *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)—which *Barr* relied on and the Coalition also cites to for support—"does not disturb the Court's longstanding framework for commercial speech under *Central Hudson*"). Whatever the Coalition hopes *Barr* forecasts for the future of the commercial speech doctrine, the current state of the law is that intermediate scrutiny applies for attorney advertisements that are not false or deceptive. *Zauderer*, 471 U.S. at 638.

Therefore, the Court need only find that it has a substantial government interest in order to regulate the attorney advertisements at issue here, and require them to contain certain statements designed to protect potential claimants. The case *In re Sechuan City, Inc.*, 96 B.R. 37, 39, 43–44 (Bankr. E.D. Pa. 1989), which the Coalition cited to in its Objection, proves the point. In *Sechuan City*, the bankruptcy court analyzed a form of less protected speech (similar to commercial speech) and did not require a "clear and present danger to the debtor's reorganization." Instead, the bankruptcy court found that the speech in question could be restricted because there was a "significant" government interest in section 362(a)(6) of the Bankruptcy Code—this is due to the automatic stay's status as "one of the cornerstones of bankruptcy law designed to provide the debtors with a breathing spell and to equalize treatment to all creditors." *Id.* at 43. Similarly here, the Court may require affirmative statements in attorney advertisements because it has a substantial government interest in protecting the claims allowance process and the Debtors' reorganization.

### B.    The Court Should Require Attorney Advertisements to Disclose the November 16 Bar Date.

Despite the fact that many of the law firms and attorneys involved in the challenged advertising purport to be providing "helpful" information to potential abuse claimants, *94%* of the more than 11,000 ads aired after the Bar Date Order was entered did not inform abuse claimants of the November 16 deadline to file their claims.  (Supp. Roberts Decl. at Ex. A, p. 4.)

A bar date is integral to the Debtor's reorganization because it "serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a necessary step in achieving the goal of successful reorganization."  *In re Energy Future Holdings Corp.*, 522 B.R. 520, 526–27 (Bankr. D. Del. 2015) (noting that a bar date "contributes to one of the main purposes of bankruptcy law, securing, within a limited time, the prompt and effectual administration and settlement of the debtor's estate") (quoting *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D. Del. 2009)); *see also In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 674, 679 (Bankr.S.D.N.Y.1993) *aff'd sub nom. Indian Motorcycle Assocs. v. Drexel Burnham Lambert Grp. Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 157 B.R. 532 (S.D.N.Y. 1993) ("The issuance of the claims bar date is an essential feature of the reorganization process because it provides a date certain after which a plan can be negotiated, formulated, and eventually confirmed.  The bar date is much more than a means to limit claims; it provides finality to a process that will ultimately lead to the rehabilitation of the debtor and the payment of claims under a plan of reorganization." (citations omitted)).

If potential abuse claimants see advertisements about the Debtors' bankruptcy case that do not include the November 16, 2020 bar date, they may be confused or misled into thinking a bar date has not yet been set, there is no official deadline to file their claims, or that the deadline is not

imminent.  This confusion could result in abuse claimants having inadequate notice of the bar date and preclude the Debtors from being able to discharge their claims against the estates.  *See Chemetron Corp.*, 72 F.3d at 346 ("Inadequate notice is a defect which precludes discharge of a claim in bankruptcy.  Due process requires notice that is reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response." (internal quotations omitted)).

In order to further the Court's substantial interest protecting the Debtors' reorganization, this Court should require that attorney advertisements disclose the November 16, 2020 bar date. This imposes no burden on the advertising attorneys.  In its objection, the Coalition pointed to attorney advertising in the *PG&E* and *Purdue* chapter 11 cases as exemplars of mass tort bankruptcy cases in which "large scale attorney advertising and material debtor bar date noticing programs existed and co-exist[ed] side-by-side."  D.I. 1190, ¶ 13.  In both of those cases, the Debtors have obtained examples of attorney advertisements and websites that clearly stated the deadline set by the Court to file claims.[8]

### C.    The Court Should Require the Advertisements and/or the Law Firm Websites to Disclose the Official Claims Website and Phone Number.

The Court also should require the attorney advertisements to include the official claims website, or to have the advertising attorneys and law firms provide the official claims website and phone number on the websites to which they direct potential abuse claimants.

---

[8] *See* December 31 Deadline to File PG&E Wildfires Claim Form, https://www.norcalfirelawyers.com/pge-claim-form/ (last visited Sept. 3, 2020) ("The judge for PG&E's restructuring bankruptcy set a December 31st, 2019 deadline to file any claims against PG&E related to harm from the Camp Fire or the 2017 Northern California wildfires. . . . To see a copy of the PG&E fire claim form, click here, or get more information on how to file the claim form."); Addicted to Purdue Pharma opioids?    June    30    deadline    for    claims    (Feb.    5,    2020), https://www.summersfirm.com/blog/2020/02/addicted-to-purdue-pharma-opioids-june-30-deadline-for-claims.shtml ("The federal judge handling the bankruptcy has set a date of June 30 for injured parties, including individuals, entities like hospitals, and governments to file claims.  You may have an attorney file your claim, but you can also submit your claim through a Prime Clerk website set up for the case.").

None of the attorney advertisements identified in the Motion and in the Roberts Declaration contain this information.[9]  It is becoming increasingly apparent, however, that this is essential to protecting claimants and their due process rights.  *See, e.g., In re Nat'l Spa & Pool Inst.,* 257 B.R. 784, 791–92 (Bankr. E.D. Va. 2001) (citing *Chemetron,* 72 F.3d at 346, and *Drexel,* 151 B.R. at 680) (noting that, among other things, publication notice should include contact information for a reader to obtain further information on how to file a claim).  Over the past several weeks, the Omni call center has received multiple calls from individuals asking whether they can file a claim without an attorney.  Other callers have asked Omni to confirm that claims they believe were submitted through an attorney are on file, but their claims do not appear in the official claims register.  Doherty Decl. ¶¶ 5–6.  While these individuals have found their way to the official bankruptcy case website, not everyone will.

Notably, in both *PG&E* and *Purdue Pharma*—which the Coalition holds out as exemplars—members of the plaintiffs' bar *included links to the official claims website on their websites* and provided truthful information about the claims submission process.[10]  Again, there is

---

[9] The Debtors are not requesting that this be added to the advertisement by Herman Law, the transcript of which appears as Exhibit D to the Roberts Declaration, given that the advertisement is not a solicitation to file an abuse claim in this bankruptcy case.

[10] *See* December 31 Deadline to File PG&E Wildfires Claim Form, https://www.norcalfirelawyers.com/pge-claim-form/ (last visited Sept. 3, 2020) ("The judge for PG&E's restructuring bankruptcy set a December 31st, 2019 deadline to file any claims against PG&E related to harm from the Camp Fire or the 2017 Northern California wildfires. . . . To see a copy of the PG&E fire claim form, click here, or get more information on how to file the claim form."); Addicted to Purdue Pharma opioids? June 30 deadline for claims (Feb. 5, 2020), https://www.summersfirm.com/blog/2020/02/addicted-to-purdue-pharma-opioids-june-30-deadline-for-claims.shtml ("You may have an attorney file your claim, but you can also submit your claim through a Prime Clerk website set up for the case."); Guide to Submitting an Opioid Claim Form, https://www.injurylawyersofnyc.com/blog/34/guide-to-submitting-an-opioid-claim-form (last visited Sept. 4, 2020) ("In order to receive this potential compensation, **you must submit a claim form**.  You can download a copy of the form here.  This guide answers FAQs and explains some of the sections of the claim form."); Purdue Pharma Opioid Settlement: What You Should Know, https://www.trantololaw.com/law-firm-blog/dangerous-drugs/purdue-opioid-settlement/ (last visited Sept. 4, 2020) ("Potential claimants can go to the **www.PurduePharmaClaims.com** to submit their claim and see a full list of the drugs in question," and providing official claims website and contact information); Northern California Wildfire Victims Secure PG&E Agreement to Provide $13.5 Billion in Compensation for Fire Victims (Dec. 7, 2019), https://www.lieffcabraser.com/2019/12/northern-california-wildfire-victims-secure-pge-agreement-to-provide-13-5-billion-in-compensation-for-fire-victims/ ("There is an easy-to-use claim form that can be found at the following URL: www.officialfireclaims.com.  The form asks for basic information such as the victim's name, address,

no legitimate reason why the law firms and attorneys engaged in advertising directed to potential claimants in this case cannot do the same in order to protect abuse survivors here.

### III.    The Court Should Enter the Revised Proposed Supplemental Order's Provisions for Streamlined Processes for Addressing False and Misleading Statements in Other Attorney Advertisements.

As described above, and consistent with the Court's directive at the August 31 hearing on the Debtors' Motion, the Debtors are submitting a Revised Proposed Supplemental Order that narrowly tailors the relief being approved by this Court to the specific advertisements and statements described above.

However, the Debtors continue to have substantial concerns regarding the impact of the widespread and unregulated attorney marketing campaigns on the Bar Date Notice process and these proceedings.  Beyond those at issue here, the Debtors are aware of other attorney advertisements related to these chapter 11 cases directly targeting sexual abuse survivors.  These ads are being aired or otherwise disseminated on many media platforms in addition to television, including, but not limited to, radio, newspaper, email, internet pop-up ads, and direct calling campaigns.  Indeed, over the past week, the Debtors have become aware of several disturbing solicitations, an email from a non-existent entity called "Right to Fight" stating that "[f]unds available for immediate payout."[11]  This email, attached hereto as **Exhibit C**, has been sent to the email addresses for minors.  What is more, the Debtors have received reports, attached hereto as

---

description of loss and harm, and a signature. The form can be submitted and completed online and takes about 10-15 minutes.").

[11] The email stating "Funds available for immediate payout" purports be sent from an entity called "Right to Fight." No such entity is registered to do business in any state.  The Privacy Policy buried on the Right to Fight website contains a section titled "Disclaimers" that reveals "Certain states may consider this an attorney advertisement for legal services paid for by a non-attorney spokesperson. We are a consumer marketing group generating marketing materials and mediums for the benefit of consumers and lawyers or is instructed by lawyers to market their services. We are not a law firm or lawyer referral service… By contacting Us, you expressly agree to receive a call back by different legal service providers and related services, even if you are on the "Do Not Call" registry."  *See* https://www.righttofight.com/policiesanddisclaimers.html.

**Exhibit D**, that youth members of the BSA are receiving multiple calls from lawyers asking if they were ever abused by a scout leader or if they know anyone who was abused by a scout leader.

If these tactics continue unabated, the potentially negative consequences cannot be overstated. As described in the Motion (D.I. 1145, ¶¶ 43–45), survivors who fail to timely submit proofs of claim may argue they were misled and their neglect should be excused. As the evidence of confusion continues to build, the parties may determine corrective notices need to be sent. And these sorts of misleading and unethical marketing schemes may undermine confidence in this court process. *See* Supp. Wheatman Decl., Ex. A, ¶ 11.

In an effort to preserve estate resources and be conscious of this Court's time, the Debtors have created a procedural tool to help quickly ameliorate any deficiencies in those ads that are not addressed in the Revised Proposed Supplemental Order but that do not comport with the tenets of the Revised Proposed Supplemental Order. It will be the Debtors' responsibility to identify any ads that they believe conflict with the Revised Proposed Supplemental Order and contact those attorneys responsible for the ads to try to resolve the issue before coming to the Court for help. Absent these procedures, the Debtors would be required to file multiple motions, which would result in substantial costs to, and impose administrative burdens on, the Debtors' estates, in addition to the burden such approach would place on the Court's docket and calendar. The proposed procedures are appropriate and necessary to limit the costs and administrative burdens to the Debtors' estates.

Along those lines, the Revised Proposed Supplemental Order provides for procedures that, in summary, allow the Debtors to contact parties that they believe are disseminating ads that conflict with the Revised Proposed Supplemental Order, and request that such parties remove the statements that violate the order or add the missing statements, as set forth in the order. To the

extent that the party decides to do this voluntarily, it will inform the Debtors.  Otherwise, the party at issue, the Debtors and the Tort Claimants' Committee will work together to come to a solution. To the extent an agreement is not reached within five (5) days of receiving the notice, the party disseminating the ads must file an objection to the notice.  To the extent that a party receiving a notice does not voluntarily agree to remove the violating statements or add the missing statements, as applicable, and does not file an objection as provided under the procedures, such party may be precluded from representing claimants in these chapter 11 cases and may be subject to any other orders or remedies that the Debtors may seek and the Court may deem necessary and proper, including the requirement to send curative notice.  If the objection cannot be resolved, the Debtors will notice a hearing on three (3) days'-notice to have the objection heard.

## CONCLUSION

For the reasons set forth in the Motion and above, the Debtors respectfully request that the Court enter the Revised Proposed Supplemental Order filed concurrently herewith, granting the relief requested therein and any further relief the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  September 4, 2020
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
       aremming@mnat.com
       emoats@mnat.com
       ptopper@mnat.com

– and –

SIDLEY AUSTIN LLP
Jessica C. K. Boelter (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Email:  jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda (admitted *pro hac vice*)
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Email:  tlabuda@sidley.com
       mandolina@sidley.com
       mlinder@sidley.com
       blair.warner@sidley.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION