# **EXHIBIT A**

**Wheatman Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**DECLARATION OF SHANNON R. WHEATMAN, PH.D
IN SUPPORT OF DEBTORS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR
MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND ¶ 27
OF THE BAR DATE ORDER FOR ENTRY OF AN ORDER (I) SUPPLEMENTING
THE BAR DATE ORDER AND (II) GRANTING RELATED RELIEF**

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.    I am the President of Kinsella Media, LLC ("KM"), an advertising and notification consulting firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs. My business address is 2101 L Street, NW, Suite 800, Washington, D.C. 20037.

2.    On May 4, 2020, I submitted a declaration [Docket No. 556] (the "Initial Declaration") in support of the *Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse Victims*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[Docket No. 18] (the "Bar Date Motion")[2] and the Supplemental Notice Plan described in the Bar Date Motion and filed as **Exhibit 1** to the *Supplement to Debtors' Bar Date Motion* [Docket No. 557-1] (the "Supplement"), which is incorporated by reference herein.

3. On May 14, 2020, I submitted a supplemental declaration in support of the Supplemental Notice Plan and the Bar Date Motion [Docket No. 631], which is incorporated by reference herein.

4. As described in my Initial Declaration, I am a legal noticing expert, including with respect to notification programs that have been implemented in bankruptcy, antitrust, consumer fraud, mass tort, and product liability litigation. Paragraphs 8–16 of my Initial Declaration and my curriculum vitae, which is attached to my Initial Declaration as Exhibit 1, are incorporated by reference herein.

5. I am a "plain language" noticing expert, and I began my career in 2000 at the Federal Judicial Center and worked to develop model notices to satisfy the plain language amendment to Rule 23 of the Federal Rules of Civil Procedure. My doctoral degree dissertation was on plain language drafting of class action notices, and my master's degree thesis was on comprehension of jury instructions. At its core, "plain language" noticing involves communication that an audience can understand the first time they read it.

6. On August 25, 2020, I submitted a declaration (the "Supplemental Declaration") in support of the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting*

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bar Date Motion, the *Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [Docket No. 695] (the "Bar Date Order"), or the Motion to Supplement (as defined below).

2

*Related Relief* [Docket No. 1145] (the "Motion to Supplement").

7. I submit this additional declaration in support of the *Debtors' Supplemental Brief in Support of their Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* (the "Supplemental Brief"). I have personal knowledge of the facts set forth herein.

8. I reviewed law firms' advertisements to solicit sexual abuse claims against the BSA, as provided to me by the Debtors and by FTI Consulting (SC), which submitted a declaration on August 25, 2020 (the "FTI Declaration"). Based upon that review and the information provided to me by FTI as set forth in the FTI Declaration, on information and belief and as described in my Supplemental Declaration, a substantial number of these ads:

    a. did not include the deadline to file a proof of claim;

    b. described a compensation trust or fund;

    c. did not mention there was a bankruptcy;

    d. mentioned "significant" or "substantial" compensation;

    e. told potential claimants they could remain anonymous;

    f. estimated the trust or compensation fund was worth $1.5 billion; and/or

    g. only mentioned abuse by a scout leader in connection with filing a claim in the chapter 11 cases.

9. In my opinion, when a layperson is told they will remain "anonymous," that person reasonably understands that his or her real name will not be used. In contrast, a plain language understanding of being told that your information will be "kept private" or will remain "confidential"—terms used by the Debtors in their bar date noticing materials—means that information will only be shared with a limited, authorized group of people. Given the construction of the confidentiality procedures in this bankruptcy case, I would not have drafted notice materials

3

related to the bar date that used the term "anonymous," as that would not comport with the requirements of plain language noticing.

10. Similarly, in my opinion, speculation regarding the potential size of a victims' compensation fund or trust, without explanation or context regarding the status of the bankruptcy case and clarification that the value of any trust or fund has not been proposed by the Debtors or approved by the Court, are problematic. If a trust is ultimately proposed and approved in this case and turns out to be materially different in size from any number being speculated on in attorney advertising, this is likely to cause claimants to distrust the bankruptcy and post-confirmation claims administration process. Hearing information from a source that is often considered to be trustworthy, such as a law firm, and then hearing less or conflicting information—such as the current Supplemental Notice Plan messaging occurring right now from the claims and noticing agent and the Debtors—is likely to cause claimants to distrust all sources of information about the bankruptcy case.

11. Similarly, assurances to claimants in the attorney advertisements that they will receive "substantial" or "significant compensation" are problematic for the same reasons that statements about the size of a trust are misleading and confusing. Potential claimants who hear or read this information are likely to reasonably assume that the attorneys making these representations are presenting factual, accurate information based on access to information about the bankruptcy case that such claimants do not have. Statements about the amount of compensation a claimant may receive are speculative, given that the size of any victims' compensation fund, the number of claimants, objections to claims, and how funds will be allocated among claimants, is currently unknown. Coming from a source such as an attorney or law firm, and then hearing conflicting or less information from the Debtors or the claims and noticing agent,

makes a claimant more distrustful of any information about the case—including Court-approved official messaging.

12.     I recognized in my prior declaration that the Court-approved bar date media program will need to overcome the confusion that has already been sown by the law firms' advertising.  In my opinion, two minimum ways that existing and future confusion can be remedied and potential claimants' right protected are (1) including the November 16, 2020 bar date as the claims-filing deadline in every attorney advertisement about the Debtors' bankruptcy case, and (2) disclosing the official bankruptcy case and claims submission website, www.OfficialBSAclaims.com, on the attorney advertisements and law firm websites.  Including this information in attorney advertising provides a direct channel to the official Court-approved case website, which instructs parties on *how* to file and the *significance* of filing a claim or failing to file a claim—the entire goal of the $6.8 million bar date noticing program.  After seeing the official claims website on an attorney advertisement or website, parties are more likely to subsequently recognize and trust the official claims website and the information contained therein if claimants come across this information independently or see it as part of media being run in the bar date noticing program.

13.     In my opinion, if the law firms' advertising continues to run in its current form, without the inclusion of this information, it may be detrimental to the effectiveness of the bar date notice program and Supplemental Notice Plan because of its potential to confuse potential abuse claimants with false or misleading information.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury that, after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 4, 2020
      Souderton, Pennsylvania       */s/ Shannon R. Wheatman*
                                              Shannon R. Wheatman, Ph.D.
                                              President
                                              KINSELLA MEDIA, LLC