## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 1145, 1190** |

**SUPPLEMENTAL BRIEF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO DEBTORS' MOTION TO SUPPLEMENT THE BAR ORDER**

The Coalition of Abused Scouts for Justice (the "Coalition"), by its undersigned counsel, hereby submits this Supplemental Briefing to its Objection to the Debtors' Motion to Supplement the Bar Order (the "Coalition's Objection") [Docket No. 1190], in response to the request of the Court at the Hearing on the Debtors' Motion on August 31, 2020 (the "Hearing"). The briefing responds to the narrow scope of the First Amendment issues implicated by the Debtors' Proposed Order, which the Coalition raised to this Court in its initial Objection to the Debtors' Motion.[2]  The Coalition respectfully submits this brief to further assist the Court with respect to the issues and objection before it.

### I.      The First Amendment protects the speech at issue.

1.      It is undisputed that the speech at issue is protected by the First Amendment.  The Supreme Court has explicitly held that legal advertisements, like the type targeted by Debtors'

---

[1]  The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  The Debtors hereby incorporate by reference its previously filed *Objection of the Coalition of Abused Scouts for Justice to Debtors' Motion to Supplement the Bar Date Order* [Docket No. 1190] (the "Coalition's Objection").  Any capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Coalition's Objection.

Case 20-10343-LSS    Doc 1264    Filed 09/04/20    Page 2 of 16

Proposed Order, constitute speech protected by the First Amendment. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 651, 105 S. Ct. 2265, 2282, 85 L. Ed. 2d 652 (1985) ("There is no longer any room to doubt that what has come to be known as "commercial speech" is entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded "noncommercial speech.")"; *see also Bates v. State Bar of Arizona, 433 U.S. 350, 384, 97 S. Ct. 2691, 2709, 53 L. Ed. 2d 810 (1977)* (overturning an unconstitutional ban on attorney advertising on free speech principles).

2.       The constitutional protection of this form of speech is generally grounded in the First Amendment rights of the listener; here, the Sexual Abuse Survivors. *Zauderer*, 471 U.S. at 651 (". . .the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides. . ."); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S 748, 757 (1976). However, the First Amendment similarly recognizes and protects the speech rights of professionals and business entities. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374, 201 L. Ed. 2d 835 (2018)("NIFLA") (recognizing the First Amendment rights of professionals even in the line of duty); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 353, 130 S. Ct. 876, 906, 175 L. Ed. 2d 753 (2010) (affirming the free speech First Amendment rights of corporate entities).

3.       The Debtors have argued that the speech at issue here is "commercial speech." *See* Hr'g Tr. 12:23-24.  Generally, attorney advertising is in fact "commercial speech."[3] *See id. Zauderer*, 471 U.S. at 638 (identifying attorney advertising as commercial speech). However,

---

[3] However, as the Court noted at the Hearing, the evidence contained in the Debtors' Motion included long form interview programs that are not strictly advertising, and therefore are inarguably entitled to a higher level of constitutional review.

{00218629-1}                                     -2-

commercial speech that is not false or misleading, which the Court preliminarily held the speech at issue here is not,[4] is still entitled to robust First Amendment protection. *See e.g. 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 504, 116 S. Ct. 1495, 1508, 134 L. Ed. 2d 711 (1996) (holding that an advertising ban "constitutes a blanket prohibition against truthful, non-misleading speech about a lawful product[;]" and therefore, cannot survive even the intermediate scrutiny afforded commercial speech); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562, 100 S. Ct. 2343, 2349, 65 L. Ed. 2d 341 (1980) (noting in its analysis on the unconstitutionality of a ban on utility advertising that "[i]n applying the First Amendment to this area, we have rejected the highly paternalistic view that government has complete power to suppress or regulate commercial speech. People will perceive their own best interests if only they are well enough informed, and the best means to that end is to open the channels of communication rather than to close them."). Even if the advertisements were potentially misleading commercial speech, the Court cautions against outright bans when disclosures would suffice. *See e.g. In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982).

4.      Further, it is not simple for courts to delineate commercial speech from "pure" speech. *See generally Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1204 n.22 (11th Cir. 1985) ("Commercial speech consists of expression related largely or solely to the economic interests of the speaker and the audience. Commercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests, ***exclusive of***

---

[4]  The Court noted at the Hearing: I have reviewed each of the advertisements and some I do not find troubling at all." Hr'g Tr. 8:15-16; "Don't all ads we see from lawyers have information on how to contact them? And you don't ever need a lawyer to file a lawsuit. So how is that false or misleading?" Hr'g.Tr. 23:18-20; "I have reviewed each and on many of these, I've written what's wrong with it, no issue." Hr'g Tr. 9:2-4.

*beliefs and ideas*.").  It cannot be fairly stated that all of these advertisements are exclusive of beliefs and ideas.

5.      Further, as the Court identified, this Proposed Order does not narrowly target just the law firms' advertising, it encompasses long form interview programs of Sexual Abuse Survivors. *See e.g.* Debtors' Motion at Exhibit B-1; Exhibit B-2; Exhibit D. The potential ban of these interviews with Sexual Abuse Survivors demonstrates both the content targeted nature of the Proposed Order and its overbreadth. Content-directed restrictions on speech, even within the professional or commercial context, are afforded strict scrutiny review. *See NIFLA,* 138 S. Ct. at 2374 ("The dangers associated with content-based regulations of speech are also present in the context of professional speech. As with other kinds of speech, regulating the content of professionals' speech poses the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information.").

6.      To the extent the advertisements include noncommercial speech, the Supreme Court has "applied strict scrutiny to content-based laws that regulate the noncommercial speech of lawyers." *NIFLA.*, 138 S. Ct. at 2374 (citing cases). Further, the Courts have been reticent to stringently apply the commercial speech doctrine to presumptively commercial speech that also includes expressive content. *See Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of California*, 475 U.S. 1, 16, 106 S. Ct. 903, 911, 89 L. Ed. 2d 1 (1986) (striking down under strict scrutiny a regulation which required a business to allow groups to publish content on its bills because the corporation was treating the section of their bills at issue as a newsletter, publishing "political editorials, feature stories on matters of public interest, tips on energy conservation, and straightforward information about utility services and bills.");  *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 782, 108 S. Ct. 2667, 2670, 101 L. Ed. 2d 669 (1988) ("[speech]

does not retain its commercial character when it is inextricably intertwined with the otherwise fully protected speech. . .").

## II.   **The Proposed Order should be reviewed under strict scrutiny.**

7.       The Debtors' Motion requests a plainly unlawful prior restraint on free speech. The First Amendment prohibits restriction of "expression because of its message, its ideas, its subject matter, or its content." *U.S. Const., Amdt. 1.* A content-based prior restraint targets the speech's "message, its ideas, its subject matter, or its content." *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015) (applying strict scrutiny). Strict scrutiny review gives rise to a presumption of unconstitutionality, because to survive strict scrutiny review, the restriction on speech must be narrowly tailored to serve a compelling government interest. *See id.*

8.       The Proposed Order clearly targets the law firms' speech for its message, ideas, subject matter, and content; therefore, is presumptively unconstitutional. The content-directed nature of the requested relief is underscored and undeniable: the Debtors state that the law firms' advertisement rights must be restricted because the advertisements offer "one-sided statements regarding the BSA" and have the "obvious potential to damage the reputation, brand, and goodwill of the BSA organization." *See* Debtors' Motion ¶¶34-35. These statements clearly show that the aim and effect of the relief sought is to limit dissemination of the acknowledged fact that thousands of boys have been sexually abused by Boy Scout leaders and while participating in Boy Scout programs. *See Reed,* 576 U.S. at 169 ("it is well established that the First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic.")(quoting *Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N. Y.*, 447 U.S. 530, 537, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)).

9.      In recent jurisprudence, the Supreme Court has reified its commitment to applying the strictest standard of review when evaluating the constitutionality of content-based restraints on speech, even in a presumptively commercial context. *See Barr v. AAPC*, 591 U. S. ____, 140 S.Ct. 2335 (June 25, 2020) (holding that an exception to a debt collection statute which distinguished between speech related to governmental debt and other debt was an unconstitutional content-based restraint to speech).

10.     Prior to the Supreme Court's decision in *Barr*, likely this case would have fallen cleanly within the Court's commercial speech intermediate scrutiny doctrine primarily espoused in *Hudson*. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). However, the *Barr* Court affirmed that strict scrutiny applies whenever the speech at issue is being regulated due to its content, even if the speech is regulated in a presumptively commercial context. *See Barr*, at 2347 n.5 (noting that J.Breyer's dissent which argues for a commercial speech intermediate scrutiny review does not comport with "the Court's longstanding precedents, which we carefully follow here, [which] have not adopted that approach."). The Court reasons that a speech restriction "is content-based if a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Barr*, at 2346 (quoting *Reed v. Town of Gilbert*, 576 U. S. 155, 163 (2015)).

11.     The Court specifically held that irrespective of the economic nature of the speech that where, as here, the restriction "focuses on whether the [speaker] is speaking about a particular topic" the law is a content-based restriction, and the fact that the restriction is targeted at a specific speaker does not render it content-neutral. *Barr*, at 2347 (distinguishing from general economic regulations that have an incidental effect on speech which would not be subjected to strict scrutiny).

12.     Courts have noted the Supreme Court's shifting precedent on the constitutional scrutiny afforded content-targeted restrictions for commercial speech. *See e.g. IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1119 (9th Cir. 2020)(analyzing and holding unconstitutional under strict scrutiny a statute banning a commercial website from publishing individuals ages); *L.D. Mgmt. Co. v. Thomas*, No. 3:18-CV-722-JRW, 2020 WL 1978387, at *3 (W.D. Ky. Apr. 24, 2020)(noting that the general standard for limitations on commercial speech has been intermediate scrutiny, but "[r]ecently, it has arguably inched closer to strict scrutiny."); *GJJM Enterprises, LLC v. City of Atl. City*, 352 F. Supp. 3d 402, 406 (D.N.J. 2018) (overturning a liquor advertising ban because "on its face [it] draws distinctions based on the message the speaker conveys. The ban is therefore presumptively unconstitutional and subject to strict scrutiny.") (quoting *Reed*, 135 S.Ct. at 2227)(internal citations omitted).

**III.     The Proposed Order necessarily fails constitutional muster under strict scrutiny.**

13.     Debtors request a broad, content-based prior restraint which necessarily fails strict scrutiny review. *Alexander v. United States*, 509 U.S. 544, 549, 113 S. Ct. 2766, 2771, 125 L. Ed. 2d 441 (1993) ("The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.").  It has long been established that content-based prior restraints "constitute the most serious and the least tolerable infringement on our freedoms of speech. . . ." *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)).

14.     The Debtors seek to completely bar law firms from providing any solicitation, notice, or communication to potential sexual abuse claimants regarding "the Bar Dates and the other matters described therein [the Debtors Notices]" without prior authorization of the Debtors or the Court. *See* Proposed Supplemental Order, at 3 [Dkt. No. 1145-2].  The Debtors' proposal

clearly targets the law firms' speech for its message, ideas, subject matter, and content; therefore, is presumptively unconstitutional.

15.     First Amendment case law is extremely clear that content-based prior restraints to free speech infrequently survive strict scrutiny review. *See Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 95 S. Ct. 1239, 1246, 43 L. Ed. 2d 448 (1975) ("Any system of prior restraint, however, comes to this Court bearing a heavy presumption against its constitutional validity."); *Twitter, Inc. v. Sessions,* 263 F. Supp. 3d 803, 817 (N.D. Cal. 2017) (overturning court order restricting company's ability to publish certain information as an unconstitutional content-based prior restraint on free speech)(compiling cases); *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1085 (C.D. Ill. 2001) (enjoining enforcement of a University restriction banning all communication with prospective student athletes as an unconstitutional prior restraint on free speech).

**IV.     The Proposed Order also fails to pass constitutional muster under the less stringent intermediate scrutiny review.**

16.     Even if the commercial speech intermediate scrutiny review applied to the Court's consideration of the Debtors' Motion, the Debtors' proposal would still fail constitutional muster because the proposal does not directly advance a substantial governmental intertest and the restriction on speech is more extensive than is necessary to serve that interest.  *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)); ("The court also agrees that a prior restraint on speech—even commercial speech—would ordinarily be offensive to the First Amendment of the Constitution.").

17.     Therefore, even if the speech at issue is simply commercial speech, the Debtors' proposal indisputably fails to meet the high burden of the intermediate scrutiny test established for commercial speech. *Central Hudson*, 447 U.S. at 566 (overturning as unconstitutional a regulation which completely banned promotional advertising by utilities).    In fact, the

cornerstone case of the commercial speech intermediate scrutiny doctrine analyzed an outright ban on utility advertising under intermediate scrutiny and held the ban unconstitutional. *See id.* The *Hudson* test requires a substantial state interest, directly advanced by the speech restriction, and the restriction must not be more extensive than necessary; and many bans similar to the one in the Proposed Order have failed that test. *See id.; see also Greater New Orleans Broad. Ass'n, Inc. v. United States,* 527 U.S. 173, 174, 119 S. Ct. 1923, 1925, 144 L. Ed. 2d 161 (1999) (striking down as unconstitutional under *Hudson* a statute banning gambling advertising); *44 Liquormart, Inc. v. Rhode Island, 5*17 U.S. 484, 504, 116 S. Ct. 1495, 1508, 134 L. Ed. 2d 711 (1996) (overturning an advertising ban under *Hudso*n); *Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 232 (5th Cir. 2012) (striking down as unconstitutional under *Hudson* a statute which limited an attorney's ability to choose certain domain names); *Nat'l Fire Adjustment Co., Inc. v. Cioppa*, 357 F. Supp. 3d 38, 49 (D. Me. 2019) (striking down under *Hudson* a regulation banning policy adjuster solicitation of individuals within 36 hours of the loss).

18.    In fact, the Bankruptcy Court for the Eastern District of Michigan, applied *Hudson* to analyze a motion for an injunction precluding the Debtor and the Official Committee of Tort Claimants from publicizing their joint reorganization plan, because it reasoned that it was "a classic prior restraint of speech, opposed by the incipient speakers." *In re Dow Corning Corp.*, 227 B.R. 111, 115 (Bankr. E.D. Mich. 1998).  The Court reasoned in denying the order that "[w]hen it comes to placing prior restraints on speech, we believe that courts should proceed with great hesitancy. And after considering all of the evidence, courts should hesitate again." *Id.* at 127.

19.     Under *Hudson*, a commercial speech restriction is generally more extensive than necessary where "there are numerous and obvious[ly] less-burdensome alternatives to the restriction on commercial speech." *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 417 n. 13, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (finding unconstitutional under *Hudson* a ban on distributing "commercial handbills" on news racks).  As discussed more fully below, there are extensive alternative options to the Debtors' proposed ban on law firm advertising. *See Zauderer*, 471 U.S. at 651 ("[I]n virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, warnings or disclaimers might be appropriately required in order to dissipate the possibility of consumer confusion or deception.").

## V.    The Bankruptcy Courts have adopted the "Clear and Present Danger" standard of review for limitations on "speech".

20.     As previously noted, courts have curtailed the speech of individual creditors only where such speech essentially constitutes conduct that "present[s] a clear and present danger of frustrating the reorganization." *See* Coalition Objection, at 12-15; *Stonegate*, 56 B.R. at 1020.  That is because speech that merely informs the public of facts and assists the public in "becom[ing] familiar with [the debtor's] bankruptcy" does not warrant the use of a prior restraint. *In re National Service Corp.*, 742 F.2d 859, 862 (5th Cir. 1984); *see also In re Stoneking*, 222 B.R. 650, 653-54 (Bankr. M.D. Fla. 1998) (dismissing allegation of discharge injunction violation by newspaper editor who chronicled debtor's financial malfeasance, and recognizing that the injunctive powers may not be invoked absent "definitive evidence . . . of a creditor's efforts to obtain payment for a discharge[d] debt or to thwart a debtor's fresh start").

21.     Courts have provided several examples of the type of speech and conduct that does present a clear and present danger.  For instance, where creditors attempt to damage a

debtor's business through acts of speech, such speech is, in actual fact, a type of conduct that violates the bankruptcy automatic stay and threatens both the debtor and the bankruptcy regime. *See In re Sechuan City, Inc.*, 96 B.R. 37, 43-44 (Bankr. E.D. Pa. 1989) (finding that First Amendment "affords defendants no defense" where "defendants [by their speech] intended to harm the debtor's business [and] did in fact harm that business"); *In re Andrus*, 189 B.R. 413, 416 (N.D. Ill. 1995) (finding violation of discharge order notwithstanding "communicative element" of conduct). Likewise, when a creditor posts a sign in public, demanding immediate repayment from a debtor, the creditor seeks "to compel [debtor] to pay the [money] . . . notwithstanding the Debtor's compliance with his duties under the Code and without reference to what other creditors similarly situated to [creditor] might be paid from [debtor's] bankruptcy estate." *In re Collier*, 410 B.R. 464, 475 (Bankr. E.D. Tex. 2009). Critically, in order to restrict any party's speech, a court must, in connection with the specific identified speech at issue, take evidence and find that the conduct alleged ***actually does*** present clear and present danger to the debtor and the bankruptcy system. *See In re Stonegate Sec. Servs.*, 56 B.R. 1014, 1020-21 (N.D. Ill. 1986) (vacating stay violation order where bankruptcy court failed to take evidence of damage intended or caused by speech act).

22.    The basis for this doctrine is clear: speech that is essentially *conduct* aimed at harming the debtor's business and coercing payment "threatens [both] the 'breathing spell' and the 'fresh start' to which an honest debtor under this system is entitled." *Collier*, 410 B.R. at 474; *cf. In re Crudup*, 287 B.R. 358, 363 (Bankr. E.D.N.C. 2002) (letter found by court to be "an attempt to collect the debt owed . . . violates both purposes behind the automatic stay: it harasses and threatens the debtor, and it seeks to put [creditor] ahead of other creditors in the distribution of assets"); *Andrus*, 189 B.R. at 416-17 (finding that "pattern of harassing and contemptuous

conduct," even viewed as "pure speech," could be regulated under the First Amendment intermediate scrutiny standard applicable to content-neutral prior restraints due to significant governmental interest in protecting both individual debtors and bankruptcy regime).

23.    Speech that informs the public of facts and viewpoints without threatening the debtor or the bankruptcy system cannot be subject to content-based restriction absent a separate governmental interest that satisfies the standards of scrutiny discussed above.    Where the bankruptcy courts have found that an order or regulation implicates speech, and not conduct, the courts have applied the traditional First Amendment free speech analysis. *See e.g. In re Barcelo*, 313 B.R. 135, 146 (Bankr. E.D.N.Y. 2004) (applying the *Hudson* test); *McDermott v. Langevin*, 587 B.R. 173, 187 (Bankr. N.D. Ga. 2018) (*accord*).

24.    The Debtors have not alleged any attempt or intention on the part of any person to damage their business, compel payment of pre-petition debts, undermine their fresh start, or obtain treatment preferable to what may be available to similarly situated creditors.    Here, *In re Stoneking* is instructive: in that case, a newspaper editor published a series of articles, beginning prior to the petition date, that described "the progression of a newsworthy event . . . namely, the unsuccessful investment by many locals in the [debtor's] business." 222 B.R. at 654.    Although the articles labeled the debtor a "deadbeat" and opined that the debtor "was not entitled to the 'fresh start' offered by the Bankruptcy Code," the Court found that the debtor "[did] not offer evidence of [the author's] effort to seek collection on the debt" and were thus subject to the constitutional protections afforded even to public statements containing unintentional factual errors.    *Id.*    The court noted that were the articles to contain factually incorrect information – it did not so find – then the debtor would have a damages remedy under state law, which would be

constitutionally preferable to the imposition of a content-based prior restraint on public speech. *Id.*

25.    As in *Stonegate*, here there is no reasonable dispute that the purpose of the speech of which the Debtors complain is to inform the public of the Debtors' bankruptcy and the utility and advisability of seeking assistance in obtaining equitable treatment through the bankruptcy process.  As in *Stonegate*, these speech acts were part of an effort that began long prior to the Petition Date – indeed, some of the plaintiff attorneys cited in the Debtors' motion have been litigating against the Debtors and seeking to expose their wrongful conduct for *decades*.  And as in *Stonegate*, to the extent that any such speech is factually incorrect or misleading, the Debtors possess legal remedies narrowly tailored to address any potential harm suffered at the hands of particular speakers.  To obviate that concern, certain attorneys have agreed to voluntarily modify their advertising to address the concerns identified by this Court at Hearing.  There is simply no basis for a finding of fact that any of the conduct alleged by the Debtors presents a clear and present danger to their reorganization, either by its intent or its actual effect, under any doctrine previously espoused under the Bankruptcy Code.

**VI.**    **At most, the Court should order limited and narrowly targeted disclosures.**

26.    To the extent that the Court finds it necessary to grant the Debtors' any relief restraining the free speech rights at issue here, the Supreme Court has frequently advised that a prior restraint need not be granted when disclosures can equally remediate the purported harm. *See Zauderer*, 471 U.S. at 651.  The Court correctly identified this option as its strong preference to issuing any type of prior restraint on speech. *See* Hr'g Tr. at 64:4-7; 66:9-12.

27.    In general, the government has authority to require certain disclosures to avoid consumer deception from potentially misleading speech. *See generally Massachusetts Ass'n of Private Career Sch. v. Healey*, 159 F. Supp. 3d 173, 200 (D. Mass. 2016).  Here, the advertising

identified by the Debtors is not misleading and is not evident of any consumer deception. Assuming *arguendo,* however, that the Court held that the advertisements were potentially misleading sufficient to require disclosures; the mandated disclosures must be "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (citing *NIFLA*, 138 S. Ct. at 2372) (holding that ordinance requiring health disclosures on advertisements for sugary drinks was unconstitutional); *see e.g. Masonry Bldg. Owners of Oregon v. Wheeler*, 394 F. Supp. 3d 1279, 1304 (D. Or. 2019) (where the disclosures effectively "[drown] out" the message of the speaker, the disclosures are unconstitutionally burdensome).

28.    The law firm member representatives of the Coalition[5] have amended (or are in the process of amending) their advertisements in the following ways: (1) changing the word "anonymous" to "confidential" in reference to this Court's approved protections of the personally identifiable information of Sexual Abuse Survivors; (2) removing any reference to the amount of any compensation fund for Sexual Abuse Survivors; and (3) including the bar date in advertisements regarding these Chapter 11 Cases. Coalition Counsel has informed the Debtors of these modifications.

29.    The Coalition believes that any additional compelled disclosures are unconstitutional and not in keeping with this Court's directive.  Specifically, the Coalition believes that the inclusion of specific reference to the Debtors' claims agent would do more harm than good. The Coalition avers that inclusion of that information would confuse and mislead customers, because the inclusion of this official number changes the character of the

---

[5] As disclosed in the 2019 Statement, the current Representatives are: (i) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., (ii) Kosnoff Law PLLC, (iii) AVA Law Group, Inc., (iv) Andrews & Thornton, (v) ASK LLP, and (vi) Slater Slater Schulman, LLP. The sufficiency of the 2019 Statement is subject to a pending motion scheduled for hearing at the September 9 omnibus hearing.

advertisements and implies an association with the official claims process. *See e.g. Dwyer v. Cappell*, 762 F.3d 275, 283 (3d Cir. 2014) (striking down a disclosure requirement in attorney advertising where the required disclosure "may add only greater confusion," and was unduly burdensome); *Pub. Citizen Inc. v. Louisiana Attorney Disciplinary Bd.*, 632 F.3d 212, 229 (5th Cir. 2011) (holding unconstitutional attorney advertising disclosure requirements, in part, because the advertisements were ineffective at dispelling consumer confusion). In view of the modifications made by the law firms as set forth above, there is no potentially misleading speech mandating further compelled disclosures by this Court. *See Wooley v. Maynard*, 430 U.S. 705, 714, 97 S. Ct. 1428, 1435, 51 L. Ed. 2d 752 (1977) (the Supreme Court has clearly held that the First Amendment equally protects the right not to speak).

Dated: September 4, 2020
Wilmington, Delaware

MONZACK MERSKY BROWDER & HOCHMAN, P.A.

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE No. 2049)
1201 North Orange Street, Suite 400
Wilmington, Delaware 19801
Telephone:    (302) 656-8162
Facsimile:    (302) 656-2769
E-mail:        RMersky@Monlaw.com


-and-

BROWN RUDNICK LLP
David J. Molton, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
E-mail: DMolton@BrownRudnick.com

and

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail: SBeville@BrownRudnick.com
E-mail: TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*