## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA AND DELAWARE Boy Scouts, LLC,[1] | Jointly Administered |
| | **Re: Docket No. 1145, 1190**<br>**Hearing Date: September 9, 2020, at 10:00 a.m. (ET)** |
| Debtors. | |

## CENTURY'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF ITS JOINDER TO THE DEBTORS' MOTION [DKT. 1145] CENTURY'S SEPARATE REQUEST FOR RELIEF, OBJECTION TO THE COALITION'S MOTION THAT ITS RULE 2019 STATEMENT BE ACCEPTED [DKT. 1190] OBJECTION TO THE COALITION'S MOTION TO BE DEEMED A MEDIATION PARTY

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTS DISCLOSED SINCE AFTER THE .............................................................. 3

AUGUST 28, 2020, HEARING ............................................................................... 3

    A.    Van Arsdale/Kosnoff Advertisements Under the Guise of an Assumed Name ....................................................................................................... 3

    B.    The Disclosures Made Since the Last Hearing About the Coalition / AIS 4

    C.    The Van Arsdale/Kosnoff Use of Letterhead Other Than That of the Firms They are Authorized to Operate Under by their Respective State Bars. ... 5

    D.    Who are Messrs. Van Arsdale and Kosnoff? ........................................... 6

    E.    Van Arsdale / Kosnoff's Refusal to be Questioned ................................. 7

    F.    Van Arsdale / Kosnoff Advertising has Nationwide Reach Triggering Ethics Requirements in all 50 States ........................................................ 7

ARGUMENT ......................................................................................................... 8

    I.    THE COALITION ADVERTISEMENTS MASK THE TRUE NATURE OF THE ENTITY THROUGH WHICH THEY ARE OPERATING ................... 9

    II.    LAWYERS MAY NOT FALSELY HOLD THEMSELVES OUT AS ASSOCIATED IN A SINGLE PRACTICE ........................................................ 13

    III.    LAWYERS MAY NOT ADVERTISE IN A MANNER THAT OBFUSCATES THE FACT THAT THE CONTENT IS AN ATTORNEY ADVERTISEMENT ............................................................................ 15

    IV.    VAN ARSDALE AND KOSNOFF ADVERTISING DOES NOT COMPLY WITH THE RULES IN THE JURISDICTIONS IN WHICH THEY ASSOCIATE ............................................................................ 16

        A.    Timothy Kosnoff .................................................................................. 16

        B.    Andrew Van Arsdale ............................................................................ 17

    V.    MANDATORY REPORTING REQUIREMENTS ........................................... 18

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bates v. State Bar of Ariz.*,
  433 U.S. 350 (1977)...................................................................................................... 5

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980)...................................................................................................... 5

*Farrin v. Thigpen*,
  173 F. Supp. 2d 427 (M.D.N.C. 2001) ......................................................................... 6

*Fla. Bar v. Went For It, Inc.*,
  515 U.S. 618 (1995)...................................................................................................... 5

*Ibanez v. Fla. Dept. of Bus. & Prof'l Regulation, Bd. of Accountancy*,
  512 U.S. 136 (1994)...................................................................................................... 6

*In re R.M.J.*,
  455 U.S. 191 (1982)...................................................................................................... 5

*Kraft, Inc. v. FTC*,
  970 F.2d 311 (7th Cir. 1992) ........................................................................................ 6

*Mason v. Fla. Bar*,
  208 F.3d 952 (11th Cir. 2000) ...................................................................................... 6

*Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*,
  496 U.S. 91 (1990)..................................................................................................... 6, 7

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
  471 U.S. 626 (1985)...................................................................................................... 6

**Statutes**

Tex. Gov. Code 81.101 *et seq.*.............................................................................................. 13

**Other Authorities**

1 Collier on Bankruptcy, ¶ 8.01[1] ....................................................................................... 10

CA Eth. Op. 2004-167, 2004 WL 3079032 .......................................................................... 8

Conn. Bar Assoc. Comm. on Prof'l Ethics, Informal Op. No. 01-03, 2001 WL 694581 .............. 8

Daniel Backer, Note, *Choice of Law in Online Legal Ethics: Changing a Vague Standard for Attorney Advertising on the Internet*, 70 Fordham L. Rev. 2409, 2415 (2002)......................... 5

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Daniel Callendar, *Attorney Advertising and the Use of Dramatization in Television Advertisements,* 9 UCLA Ent. L. Rev. 89, 92–95 (2001) ........................................................ 5

Elizabeth Tippett, *Medical Advice from Lawyers A Content Analysis of Advertising for Drug Injury Lawsuits,* 41 Am. J. L. & Med. 7, 31–32 (2015) ....................................................... 6, 7

SC Adv. Op. 13-05, 2013 WL 7196338 ................................................................................. 8, 11

William G. Hyland Jr., *Attorney Advertising and the Decline of the Legal Profession,* 35 J. Legal Prof. 339, 358 (2011) ....................................................................................................... 6

## Rules

Conn. Statewide Grievance Comm. R. Proc. § 2-28A, Rule 14 ............................................... 15

Fla. Rules Of Prof'l Conduct R. 4-7.2(c)(7) ........................................................................... 12

Fla. Rules Prof'l Conduct 4-7.19 ............................................................................................. 15

Ind. Rules of Prof'l Conduct R. 7.5(a)(4) ................................................................................. 7

La. Rules Prof'l Conduct 7.7 .................................................................................................... 15

Miss. Rules of Prof'l Conduct R. 7.7(b) .................................................................................... 7

Miss. Rules Prof'l Conduct 7.5(g) ........................................................................................... 15

Model R. Prof'l Conduct 7.1 cmt. [7] ................................................................................. 10, 11

Model Rules Prof'l Conduct 7.1 cmt. [3] .................................................................................. 9

N.C. Rules of Prof'l Conduct 7.5(a) .......................................................................................... 7

N.J. Rules of Prof'l Conduct R. 7.5(a) ....................................................................................... 7

Nev. R. Prof'l Conduct 7.2A. .................................................................................................... 14

Ohio Rules of Prof'l Conduct 7.5(a) .......................................................................................... 8

Pa. Rules Of Prof'l Conduct R. 7.2(j) ....................................................................................... 12

R.I. Rules of Prof'l Conduct R. 7.5(a) ....................................................................................... 7

Tex. Disciplinary R. Prof'l Conduct 5.05(b) ............................................................................ 13

Tex. Disciplinary R. Prof'l Conduct 7.01-7.02 [cmt. 2] .......................................................... 13

## PRELIMINARY STATEMENT

A law corporation may practice law only under the name registered with the Secretary of State and approved by the State Bar.  The reason for this is simple.  It is inherently deceptive to be incorporated and registered with the bar under one name and operate under a separate fictitious business name especially a name that implies it is something on then a law firm or lawyer.  Likewise, advertisements that imply that several lawyers practice together as a single firm (whatever its name) or as staff lawyers for some larger, charitable or public-interest abuse-prevention entity, when they do not, in fact, do so, are barred as misleading under the Model Rules and state analogues.  The comments to Model Rule 7.1 could not be clearer: "[l]awyers may not imply or hold themselves out as practicing together when they are not a firm, as defined in Rule 1.0(c), because to do so *would be false and misleading*."

The marketing monikers "Abused in Scouting," and the "Coalition of Abused Scouts for Justice," are intentionally being used to obscure the nature of these entities.  The Court need look no further than how Coalition held itself out to this Court in its 2019 Statement, as Brown Rudnick LLP and Blank Rome LLP representing 12,000 individual claimants as their clients, against what the Official Committee of Tort Claimants ("TCC") has since admitted in its filing last week, that the Coalition is nothing more than "a marketing term" and that Brown Rudnick has only signed an engagement letter with the law firms, not with their clients.  Brown Rudnick disclaims in its engagement letter having an attorney client relationship with any tort claimant.

The "Abused in Scouting" campaign conveys the implication that Tim Kosnoff and Andrew Van Arsdale, and others, function as a single firm, or as staff lawyers for some larger, charitable or public-interest abuse-prevention entity.  The retention letter printed with "Abused in Scouting" letterhead that is employed by Messrs. Van Arsdale and Kosnoff furthers this misimpression.  Messrs. Van Arsdale, Kosnoff and a third lawyer are misleadingly presented as

part of a single organization, with individual lawyers working out of separate offices.  This is demonstrably false, and the false impression it gives is both deceptive and violates ethical standards nationwide.

The deceptive nature of these ads also mask a more fundamental and troubling reality. Mr. Kosnoff holds himself out as no longer practicing law and Mr. Arsdale is an advertising company owner who only recently passed the bar.  They are in the business of creating and marketing "inventories" of claims.  In the seedy underbelly of mass torts, individuals front for "motherfunders" and a host of other non-lawyers who provide funding in exchange for a piece of each claim.  Mr. Kosnoff has contemptuously referred to the members as Official Committee who are abuse survivors as "nitwits".

While the First Amendment protects commercial speech, it does not protect false or misleading speech.  A statement need not be factually inaccurate to be misleading—the Supreme Court has considered the likely effect the content would have on a layperson and whether the ad omits information necessary to avoid a misunderstanding on the part of a layperson.  Under this standard, statements may be misleading based on the context in which they are made or by implication.  Where, as here, the particular content or method of the advertising is inherently misleading, appropriate restrictions may be imposed including an injunction against the continuance of such advertisement.

Multiple states mandate that attorney advertisements be submitted for review prior or concurrent with its first public appearance.  At a minimum, the Coalition and Abused in Scouting's advertisements ought to be enjoined until Messrs. Van Arsdale and Kosnoff certify that they have made the required submissions in each of the states that require such submissions

and have obtained approval in Texas where Mr. Kosnoff holds himself out as maintaining an
office.

**FACTS DISCLOSED SINCE AFTER THE
AUGUST 28, 2020, HEARING**

As Century and Hartford explained in their Motion to Compel 2019 Disclosures from the
Coalition ("2019 Motion") [D.I. 1164], the principal actors behind the Coalition (a self-described
non-practicing attorney, Tim Kosnoff, and an advertising company owner, Andrew Van Arsdale)
hold themselves out to the public through the artifice of "Abused in Scouting" aka the
"Coalition".

### A.     Van Arsdale/Kosnoff Advertisements Under the Guise of an Assumed Name

The face page of the "Abused in Scouting" website contains Boy Scout logos and badges
and the statement in bold 26 point type that:  "We are the Survivors; Join the Movement."[1]  On
the same page to the left, "We" is described as "a group of over 8,000 men."  The next, "About
Us" page, is captioned in large 26 point text as "Who We Are."  The answer provided is "Abused
in Scouting, A Movement of Survivors."[2]  Abused in Scouting is described in the next line as "an
organization."  The reader is then told to "join us."  Elsewhere, the group describes itself as an
"organization" or a "coalition of men" to achieve justice.[3]

At each step, the reader is encouraged to click a link that leads to a call center.  It is made
apparent that money will be available.  And a page tied to the face page links to pages that

---

[1]    Aug. 26 Panchok-Berry Decl. Ex. 4. at 000004.

[2]    Aug. 26 Panchok-Berry Decl. Ex. 4. at 000004, D.I. 1166.

[3]    August 25, 2020 Declaration of Evan Roberts ("Robert Decl.") Ex. A-1, D.I. 1145-3 ("I've met a
coalition of men who joined together to hold the Boy Scouts accountable for what's going on.  Join
us.  Stand with us. We stand for everybody."

provide troop numbers and perpetrator names by location that can be cribbed into a proof of claim.[4]

The videos that channels traffic to the AIS website vary in nature but all share the common device of referring to Abused in Scouting as an organization of scouts or former scouts. There is no disclosure that AIS is linked to the Coalition or that there is any connection between them. The Abused in Scouting website, along with its television and social media ad campaign, promote it as a "Movement" and an "organization" of abuse victims.[5]

Third-party marketing proxies are also used to foster the appearance that AIS is something different than what it is through an online video that passes itself off as a newscast but is simply marketing for Abused in Scouting.[6]

### B.    The Disclosures Made Since the Last Hearing About the Coalition / AIS

Neither the Coalition nor the marketing title Abused in Scouting is an organization, foundation, nonprofit, or other public service group. As the TCC has admitted in its submission, these are simply names being used by an "advertising consortium." D.I. 1228 at 6, 11.

The documents filed by the Coalition on Friday evening demonstrates this. On September 4, 2020, the Collation filed a heavily redacted partial copy of Brown Rudnick's retention agreement. D.I. 1257-1, p. 12-23.[7] The Brown Rudnick agreement is executed by Messrs. Arsdale and Kosnoff and four law firms. *Id*. at 17-22. The agreement states that it

---

[4]    Aug. 26 Panchok-Berry Decl. ¶ 29, D.I. 1165.

[5]    *See, e.g.*, Aug. 26 Panchok-Berry Decl. Ex. 4. at 000004; August 25, 2020 Declaration of Evan Roberts ("Robert Decl.") Ex. A-1, D.I. 1145-3 ("Abused in Scouting is an organization that represents over 4,000 men who were abused at the hands of the Boy Scouts.").

[6]    Declaration of Tancred Schiavoni ("Schiavoni Decl.") ¶ 2.

[7]    The Blank Rome LLP retention agreement was not produce. After the last hearing, Blank Rome advised the Office of the United States Trustee, BSA and Century that it intends to seek permission to withdraw. Blank Rome has since declined to confirm that it is still able to stand by the pleadings it filed for the Coalition.

"do[es] not create an attorney-client relationship between Brown Rudnick and any individual member [tort claimant]." *Id*. at 13.  On the following page, the agreement confirms that the Coalition's counsel is to act at the "direction we receive from the Law Firms" and not by any individual claimant. *Id.* at 14.  Further, the agreement states that to the extent the applicable rules of professional conduct may be waived, they are waived. *Id*. at 16.  Otherwise, the agreement states that the "Client Engagement Terms" are set forth in an attachment which provides information on "the Firm's relationship with its clients." *Id*. at 13.  Tellingly, this document is withheld.

The agreement is not signed by any tort claimant. *Id.* at 17-22.  Nothing shows that any tort claimant reviewed or consented to the retention agreement, let alone the payment of Coalition counsel. *Id.*  An eight sentence unsigned and unissued form letter to tort claimants is produced but all it does is to say that they have joined the Coalition.[8] *Id*. at 25.

**C.     The Van Arsdale/Kosnoff Use of Letterhead Other Than That of the Firms They are Authorized to Operate Under by their Respective State Bars.**

The form of retention letter that Messrs. Arsdale and Kosnoff claim to have used with individual claimants is on letterhead stating in large type "AIS" and below that in large type "Abused in Scouting". *Id*. at 2.  In small type in a row below the letterhead, appears "Kosnoff Law" and "AVA Law Group" and a third lawyer with a city and state below each but not an address. *Id.*  In the first sentence of the retention letter, the names of the three are presented with commas between them suggesting the three practice together in the same group.  Mr. Kosnoff lists himself as practicing law out of San Juan, Puerto Rico.  For all intents and purposes, the

---

[8]   Claimants are told in this letter that the Coalition has commenced discussions with insurance carriers.  However, the Coalition, Brown Rudnick and Blank Rome have not had any communication with Century, or to our knowledge any other insurer, except to refuse to provide a Rule 2019 disclosures.

letterhead gives the impression that the three lawyers are all employed by "AIS" or "Abused in Scouting" when no such entity actually exists.  *Id.*

The retention letter used by Messrs. Arsdale and Kosnoff does not identify any of the co-counsel as serving as co-counsel, provide any disclosure of how responsibility for a claimant's case will be shared with co-counsel or what services if any Messrs. Arsdale or Kosnoff will provide, if any.  *Id.*  The agreement does not seek the client's consent for fee sharing or provide any disclosure of how fees are shared.  *Id.*  Nor does it explain or seek the client's consent to waive conflicts arising in a multi-party engagement.  *Id.*

### D.    Who are Messrs. Van Arsdale and Kosnoff?

AVA Law Group, Inc.'s website lists a single attorney, Mr. Van Arsdale, who only graduated law school in 2018.[9]  The address provided for the AVA Law Group, Inc.'s is a storefront that appears to be a mail drop.  Mr. Van Arsdale is better known as the co-owner and founder of a legal marketing firm where he has worked for years which provides call center, SEO, and other marketing services.[10]

Mr. Kosnoff's website represents that he is retired from the practice of law and lists other services (such as media commentator and mass tort bankruptcy consulting) that he offers.  The website provides a link to the Abused in Scouting website at the top of the homepage.[11]  On his website, Mr. Kosnoff lists a Houston address as his business address.  It appears to be a mail

---

[9]    Aug. 26 Panchok-Berry Decl. Ex. 6, D.I. 1166.

[10]   *Id.* Ex. 8.

[11]   *Id.* Ex. 9.

drop box.[12]  Mr. Kosnoff is registered with the Washington (but not Texas) State Bar.[13]  His

Washington State Bar profile page lists the same Houston mail drop box as his only address.[14]

### E.    Van Arsdale / Kosnoff's Refusal to be Questioned

Century served deposition notices for the depositions of Messrs. Van Arsdale and

Kosnoff after the TCC turned over Mr. Kosnoff's email to the Office of the United States

Trustee in which he refers to the abuse claimants who serve as members of the Committee as

"nitwits" and threatens BSA and Committee.  Brown Rudnick, which under the terms of the

retention agreement signed by Messrs. Van Arsdale and Kosnoff may not act contrary to their

instructions, advised Century on September 6, 2020, that Messrs. Van Arsdale and Kosnoff will

not appear for deposition in response to notice.

### F.    Van Arsdale / Kosnoff Advertising has Nationwide Reach Triggering Ethics Requirements in all 50 States

The Abused in Scouting and Coalition advertising has nationwide reach, and is targeted

at all 50 states.  The website includes a "Map of Scouting Abuse Locations" which provides

"locations by state, troop number, city, and camp name where *our clients* reported they were

abused by BSA leaders."[15]  (*emphasis added*).  The website also includes what is referred to as a

"List of Confirmed BSA Abusers," which allows viewers of the website to search a list of

allegedly "confirmed" sex abusers, again in all 50 states.[16]  Those behind Abused in Scouting

have also been running ads and producing longer, infomercial-style promotional videos—many

of these ads can be found on the Abused in Scouting website, social media accounts, and on

---

[12]    *Id.* Exs. 9, 12, 13.

[13]    *Id.* Ex. 11.

[14]    *Id.*

[15]    *See* Aug. 26 Panchok-Berry Decl. Ex. 4 at 000003, D.I. 1166.

[16]    See Aug. 26 Panchok-Berry Decl. ¶ 29, D.I. 1165.

YouTube.[17]  The ads all direct viewers to contact Abused in Scouting and provide the website

and a phone number.[18]

## ARGUMENT

While the First Amendment protects commercial speech,[19] it does not protect false or

misleading speech.[20]  A statement need not be factually inaccurate to be misleading—the

Supreme Court has considered the likely effect the content would have on a layperson and

whether the ad omits information necessary to avoid a misunderstanding on the part of a

layperson.[21]  For example, in *Zauderer,* the Supreme Court deemed and advertisement that stated

"[i]f there is no recovery, no legal fees are owed by our clients" factually accurate but

misleading.[22]  The deceptive aspect was the suggestion that clients would not incur any out-of-

pocket costs—a lay viewer would have had necessary background knowledge to distinguish

---

[17]  *Id.*

[18]  Several of the ads were transcribed by Debtors and submitted with their Motion.  *See* August 25, 2020 Declaration of Evan Roberts ("Robert Decl."), Exs. A-1, A-2, F-1, F-2, F-3, D.I. 1145-3.  Century and Hartford likewise described certain videos and provided partial or full transcripts as exhibits to their Motion to Compel Supplemental 2019 Disclosures.  *See* Aug. 26 Panchok-Berry Decl. ¶¶ 26–28.  At least one advertisement, posted on August 26, 2020 and removed from YouTube and the Abused in Scouting website as of September 4, 2020, is also transcribed in a Declaration filed herewith.  *See* Declaration of Tancred Schiavoni ¶ 3, Ex. 1.

[19]  *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 363 (1977); *see also* Daniel Backer, Note, *Choice of Law in Online Legal Ethics: Changing a Vague Standard for Attorney Advertising on the Internet*, 70 Fordham L. Rev. 2409, 2415 (2002); Daniel Callendar, *Attorney Advertising and the Use of Dramatization in Television Advertisements,* 9 UCLA Ent. L. Rev. 89, 92–95 (2001).

[20]  *See Bates,* 433 U.S. at 383; *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623-24 (1995); *In re R.M.J.*, 455 U.S. 191, 201 (1982); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980); William G. Hyland Jr., *Attorney Advertising and the Decline of the Legal Profession,* 35 J. Legal Prof. 339, 358 (2011) ("[T]he Bates decision established two principles regarding lawyer advertising: first, the informational function of lawyer advertising is entitled to First Amendment protection.  Second, states have the power to protect the public from harmful commercial speech, such as false or misleading advertising.").

[21]  Elizabeth Tippett, *Medical Advice from Lawyers A Content Analysis of Advertising for Drug Injury Lawsuits*, 41 Am. J. L. & Med. 7, 31–32 (2015).

[22]  *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 652 (1985).

between "fees" and "costs," which was knowledge outside of the average layperson's understanding.[23]  Thus the ad was "self-evident[ly]" misleading.[24]

Under this standard, statements may be misleading based on the context in which they are made or by implication.[25]  "[W]hen the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions.  ***Misleading advertising may be prohibited entirely***."[26]

## I.    THE COALITION ADVERTISEMENTS MASK THE TRUE NATURE OF THE ENTITY THROUGH WHICH THEY ARE OPERATING

All state ethics rules prohibit false or misleading advertising, with the vast majority following or closely resembling Model Rule 7.1.[27]  The states that diverge from Model Rule 7.1 "tend to leave the definition of 'false or misleading' intact, but furnish specific examples of content the state considers misleading."[28]  A particular deceptive practice is the use of names that mask that viewers are dealing with a for profit law firm.

---

[23]    *Id.*

[24]    *Id.*.  Where the misleading quality of the advertisement is not apparent, the Supreme Court expects some evidence of actual harm to support arguments that the advertisement is potentially misleading. *See Peel*, 496 U.S. at 101-04 (noting the absence of any evidence of actual harm where Supreme Court was unpersuaded by state's argument as to the potentially misleading nature of a statement); *see also Ibanez v. Fla. Dept. of Bus. & Prof'1 Regulation, Bd. of Accountancy*, 512 U.S. 136, 145 (1994) (finding state must proffer some evidence of deception, or more than the "possibility of deception in hypothetical cases"); *Mason v. Fla. Bar*, 208 F.3d 952, 957 (11th Cir. 2000) (finding "common sense" arguments insufficient to justify disclaimer requirement absent empirical evidence that public was misled).

[25]    See *Peel*, 496 U.S. at 102; *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992) (interpreting *Zauderer* to mean that implied claims can also be the basis of false or misleading speech outside the protection of the First Amendment); *Farrin v. Thigpen*, 173 F. Supp. 2d 427, 437 (M.D.N.C. 2001).

[26]    *Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91, 100 (1990) (emphasis added).

[27]    Elizabeth Tippett, *Medical Advice from Lawyers A Content Analysis of Advertising for Drug Injury Lawsuits*, 41 Am. J. L. & Med. 7, 31–32 (2015); Schiavoni Decl. Ex. 2.

[28]    Elizabeth Tippett, *Medical Advice from Lawyers A Content Analysis of Advertising for Drug Injury Lawsuits*, 41 Am. J. L. & Med. 7, 31–32 (2015) Schiavoni Decl. Ex. 2.

Four states outright bar the use of "trade names" that do not include the name of at least one lawyer at the firm as inherently deceptive: Indiana,[29] Mississippi,[30] New Jersey,[31] and Rhode Island.[32]  A fifth state, North Carolina, requires any lawyer using a trade name in advertising to first submit it to the state ethics panel for review.[33]  Ohio specifically requires that a lawyer not practice under a name that is misleading as to the identity of the lawyer, providing that "A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1 [i.e., is materially misleading].  A lawyer in private practice shall not practice under a name that is misleading as to the identity of the lawyer or lawyers practicing under the name . . . ."[34]  Rules in in the bulk of the other states specially call out the practice of using trade names and other advertising phrases that imply connections with a non-profit or public service

---

[29]  Ind. Rules of Prof'l Conduct R. 7.5(a)(4) (firm name must include full or last name of at least one present or past principal attorney).

[30]  Miss. Rules of Prof'l Conduct R. 7.7(b) (barring the use of trade names, fictitious names, and names that are otherwise "misleading as to the identity of the lawyer or lawyers practicing under such name").

[31]  N.J. Rules of Prof'l Conduct R. 7.5(a) (firm name must include full or last name of at least one present or past principal attorney).

[32]  R.I. Rules of Prof'l Conduct R. 7.5(a).  (firm names must "include full or last name of one or more principal attorneys actively practicing law on behalf of the law firm" or the names deceased or retired attorneys or names of predecessor firms).

[33]  N.C. Rules of Prof'l Conduct 7.5(a) ("Every trade name used by a law firm shall be registered with the North Carolina State Bar for a determination of whether the name is misleading.").

[34]  Ohio Rules of Prof'l Conduct 7.5(a). The rules of professional conduct in California, where Van Arsdale is licensed prohibit "the name is deceptive with respect to the identity of the members of the firm who are performing legal services."[34]

entity as deceptive and barred for that reason.[35]  Ethics opinions specifically call out the practice

of using trade names to falsely give the impression of a nonprofit affiliation.[36]

In those states where a lawyer may operate under a non-deceptive trade, that name is the

one the lawyer or law firm is to incorporate under and operate.  The State Bars expects a

lawyer to do business solely under their name.  It is inherently deceptive to be incorporated and

registered with the bar under one name and operate under a separate fictitious business name.

It is prohibited by the State Bar of California, where Mr. Arsdale is licensed and resides,

for any law corporation to use a fictitious name or a "DBA".  Under Section 3.154(B) of the

California Business & Professions Code, "A law corporation may practice law only under the

name registered with the Secretary of State and approved by the State Bar." California Business

& Professions Code § 3.154 see also 3.174(b) (same for limited liability partnerships).

The marketing monikers "Abused in Scouting," and the "Coalition of Abused Scouts for

Justice," are intentionally being used to obscure the nature of these entities.  The Court need look

no further than how Coalition held itself out to this Court in its 2019 Statement, as Brown

Rudnick/Blank Rome representing 12,000 individual claimants as its clients, against what the

TCC has since admitted in its filings, that the Coalition is nothing more than "a marketing term"

---

35

54. *See, e.g.,* C. BAR ETHICS ADVISORY COMM., ETHICS ADVISORY OP. 13-05, 2013 WL
    7196338, at *1 (2013) (use of phrase "legal helpline" or "injury hotline" suggested non-profit or
    government affiliation); CONN. BAR ASSOC. COMM. ON PROF'L ETHICS, INFORMAL OP.
    NO. 01-03, 2001 WL 694581, at *3 (2001) (phrase "free public service" suggested advertiser was a
    non-profit); STATE BAR OF CAL., STANDING COMM. ON PROF'L RESP. & CONDUCT,
    FORMAL OP. 2004-167, 2004 WL 3079032, at *2 (2004) ("workers compensation relief center"
    suggested official government status); A.B.A. Comm. on Prof'l Ethics & Grievances, Formal
    Op. 178 (1938) (demand letter formatted as a Fla. Bar v. Doe, 634 So. 2d 160,161 (Fla. 1994)
    (advertisement labeled "public service announcement" and "not an advertisement" misleading);
    *Farrin v. Thigpen*, 173 F. Supp. 2d 427, 445 (M.D.N.C. 2001) (disclaimer following deceptive
    content insufficient to cure deception).

36  CA Eth. Op. 2004-167, 2004 WL 3079032; SC Adv. Op. 13-05, 2013 WL 7196338; Conn. Bar
    Assoc. Comm. on Prof'l Ethics, Informal Op. No. 01-03, 2001 WL 694581.

11

and that Brown Rudnick has only signed an engagement letter with the law firms, not with their clients.[37]

The AIS website and AIS advertisements channeling traffic to the site provide nothing, other than small-text disclaimer at the very end, to explain that what is being shown is actually an advertisement to hire a lawyer.[38]  This does not cure the misimpression.  Both the Model Rules and case law provide that these kind of disclaimers do not cure otherwise deceptive statements.[39]  In some cases these disclaimers are only visual (without any accompanying voiceover disclaimer) and only shown for approximately three seconds at the very end of a long advertisement that has only identified Abused in Scouting, not the underlying lawyers.[40]

Even then, the disclaimers do not explain what "Abused in Scouting" the "organization" actually is.  Other ads refer to "the attorneys at Abused in Scouting," suggesting that Abused in Scouting is some larger charitable or public advocacy entity also offering legal services.[41]  The explicit and implicit impression that is conveyed to viewers is that they are being asked to "join a movement" or a "coalition" by become part of "Abused in Scouting," when in reality this entity is simply a front for a lawyer seeking 33 to 40 percent of each client's claim—one of whom is a self-described non-practicing lawyer and the other is solo practitioner less than two years out of school.  This is the exact sort of deception that the Model Rules prohibit.

---

[37]  D.I. 1228 at 3, 11.

[38]  In small type at the very bottom of the page and after the links that viewers as asked to complete to "join" a statement appears that "ATTORNEY ADVERTISEMENT - This website and the information contained herein has been prepared by AVA Law Group solely for informational purposes and nothing contained in this website is intended for nor should it be construed as rendering legal advice to the person reading the website."

[39]  Model Rules Prof'l Conduct 7.1 cmt. [3] ("The inclusion of an appropriate disclaimer or qualifying language may preclude a finding that a statement is likely to create unjustified expectations or otherwise mislead the public.").

[40]  Schiavoni Decl. Ex. 3.

[41]  Schiavoni Decl. ¶ 3.

State ethical rules apply in bankruptcy and should be given particular weight in bankruptcy, as opposed to other contexts.[42]

## II.    LAWYERS MAY NOT FALSELY HOLD THEMSELVES OUT AS ASSOCIATED IN A SINGLE PRACTICE

The "Abused in Scouting" campaign conveys the implication that Messrs. Kosnoff, Van Arsdale, and others, function as a single firm, or as staff lawyers for some larger, charitable or public-interest abuse-prevention entity.  The retention letter printed with Abused in Scouting letter head that is employed by Messrs. Van Arsdale and Kosnoff furthers this misimpression. Messrs. Van Arsdale, Kosnoff and a third lawyer are misleadingly presented as part of a single organization, with individual lawyers working out of separate offices.[43]  This is demonstrably false, and the false impression it gives violates ethical standards nationwide.

Advertisements that imply that several lawyers practice together as a single firm, when they do not, in fact, do so, are barred as misleading under the Model Rules and state analogues.[44] The comments to Model Rule 7.1 could not be clearer: "[l]awyers may not imply or hold themselves out as practicing together when they are not a firm, as defined in Rule 1.0(c), because to do so would be false and misleading."[45]  State bar associations warn that this conduct is deceptive and violates ethical rules.  For example, a South Carolina ethics opinion warned that "advertisement[s] may not falsely imply a practice affiliation among the advertising lawyers."[46]

---

[42]    1 Collier on Bankruptcy, ¶ 8.01[1] ("Ethical rules are often considered more necessary and applicable in bankruptcy cases.").

[43]    D.I. 1257-1 at 3.

[44]    Model R. Prof'l Conduct 7.1 cmt. [7].

[45]    *Id*.

[46]    SC Adv. Op. 13-05, 2013 WL 7196338.

The Coalition and Abused in Scouting are comprised of at least three limited liability entities, two of whom are solo practices.[47]  The persistent references to "the lawyers at Abused in Scouting," and the presentation of the group as a united public-interest organization misrepresents these several separate firms and solo practitioner as one cohesive unit.

An ad for Abused in Scouting uploaded to YouTube on August 26, 2020, which was publicly available as of the evening of September 3, 2020, illustrates this tactic.[48]  A screenshot taken of the video reflects that it was viewed over 28,000 times before being removed.[49]  The clip does not mention or refer to AVA Law Group or any law firm or attorney at all.  Rather, it gives a viewer the impression that Abused in Scouting is some sort of public service entity providing legal services:  "At Abused in Scouting, our attorneys fight to ensure scouting abuse survivors are heard, protected and compensated for their abuse."[50]  The final frames of the video overlay a graphic that displays the name "AIS | Abused in Scouting" and provides a toll-free number, while audio tells viewers to "call the lawyers at Abused in Scouting now."[51]

The fact that videos like this can be posted and then quickly removed highlights the need for the Court to act:  fundamentally misleading ads can be run, viewed by tens of thousands of claimants who may be misled about whom they are contacting or for what purpose, and then quickly taken down.

---

[47]  The disclaimer that website viewers must click through to review acknowledges that services may performed by "affiliated law firms of AVA Law Group."  Aug. 26 Panchok-Berry Decl. Ex. 4 at 000014, D.I. 1166.

[48]  Schiavoni Decl. ¶ 2, Ex. 1.

[49]  *Id.* Ex. 1.

[50]  *Id.* ¶ 2.

[51]  *Id.* ¶ 2, Ex. 1.

### III.     LAWYERS MAY NOT ADVERTISE IN A MANNER THAT OBFUSCATES THE FACT THAT THE CONTENT IS AN ATTORNEY ADVERTISEMENT

A failure to disclose the attorney source of the advertising violates Model Rule 7.2(c), which requires that the actual sponsoring firm or attorney be disclosed.  In other states, rules require that advertising make clear the geographic location of the office that will provide the advertised services or the identification of any attorney not affiliated with the advertising firm who has paid for any portion of the advertising costs.[52]  Abused in Scouting's disclaimers only list the name office address of a single attorney, Andrew Van Arsdale,[53] and an office location that appears to be a storefront office used by several unaffiliated solo practitioners and small partnerships.[54]  No information is given about the geographic location of the lawyers actually handling the cases of the thousands of clients that the Coalition claims to represent, let alone the name or geographic information of Mr. Kosnoff, whose association with Abused in Scouting is less obscured, if still opaque based on the publicly available information.

---

[52]   *See, e.g.*, Pa. Rules Of Prof'l Conduct R. 7.2(j) ("A lawyer shall not, directly or indirectly (whether through an advertising cooperative or otherwise, pay all or any part of the costs of an advertisement by a lawyer not in the same firm or by any for-profit entity other than the lawyer's firm, unless the advertisement discloses the name and principal office address of each lawyer or law firm involved in paying for the advertisement and, if any lawyer or law firm will receive referrals from the advertisement, the circumstances under which referrals will be made and the basis and criteria on which the referral system operates."); Fla. Rules Of Prof'l Conduct R. 4-7.2(c)(7) ("No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm.").

[53]   Panchok-Berry Decl. Ex. 4 at 000011–14.

[54]   *Id.* Ex. 7.

## IV.    VAN ARSDALE AND KOSNOFF ADVERTISING DOES NOT COMPLY WITH THE RULES IN THE JURISDICTIONS IN WHICH THEY ASSOCIATE

### A.    Timothy Kosnoff

State-specific advertising rules in Texas, where Mr. Kosnoff's website, advertising legal services through "Kosnoff Law" lists his address, are relevant to the Abused in Scouting's campaign.

Mr. Kosnoff provides a Texas address on his website and Washington State Bar profile.[55] Texas law prohibits lawyers who are not licensed in Texas from engaging in the unauthorized practice of law in Texas.[56]  These rules are applicable to non-lawyers.[57]  Likewise, under Rule 5.05(b) of the Texas Disciplinary Rules of Professional Conduct, a Texas lawyer is prohibited from assisting "a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."[58]  A search on the Texas Bar website (texasbar.com) returns no results for "Kosnoff", "Kosnoff Law" or "Kosnoff Law PLLC". Century was not able to confirm Mr. Kosnoff's admission in Puerto Rico.

The Texas bar rules that apply to attorney advertising including Rules 7.01 through 7.07 of the Texas Disciplinary Rules of Professional Conduct ("TDRPC").  The Bar Rules for attorney advertising cover online communications on a website, blog, or social media platform because the rules "govern[] all communications about a lawyer's services."[59]  For this reason, every online communication that mentions the lawyer's services are considered to be advertising under the TDRPC.

---

[55]    Aug. 26 Panchok-Berry Decl. Exs. 9, 10, 11, 12, 13.

[56]    Tex. Gov. Code 81.101 *et seq.*

[57]    *Id.*

[58]    Tex. Disciplinary R. Prof'l Conduct 5.05(b).

[59]    *Id.* r. 7.02 & cmt. 2.[Q: inserted in TOA as "Tex. Disciplinary R. Prof'l Conduct 7.01-7.02 [cmt. 2]." Is this as intended?]

Mr. Kosnoff's Abused in Scouting advertisements violates the TDRPC's advertising sections:

- Rule 7.01(a) prohibits practicing under a trade name (such as AIS or the Coalition), a name that is misleading as to the identity of the lawyer or lawyers practicing under such name;

- Rule 7.01(e) prohibits use of advertising under a trade or fictitious name unless the trade name appears on the lawyer's letterhead, business cards, office sign, fee contracts, and with the lawyer's signature on pleading and other legal documents. Neither Abused in Scouting or the Coalition is such a trade name.

- Rule 7.04(j) requires advertising to disclose the geographic location of the lawyers' or firms' principal office. Another office address may be used if that office is staffed at least three days a week and the advertisement gives dates and times the lawyer will be present in that office and provides for meetings by appointment only. None of the web advertising for Abused in Scouting meets this criteria. Mr. Kosnoff's website lists a Texas address. But, by all accounts, he is retired elsewhere.

And, unless exempted under Rule 7.07(e) which is not the case here, lawyers must submit for review advertisements, including websites, with the Lawyer Advertisement and Solicitation Review Committee of the State Bar of Texas under Rule 7.07(b) and (c). There is no indication that Mr. Kosnoff has complied.

**B.    Andrew Van Arsdale**

Mr. Van Arsdale is a member of the California and Nevada state bars. Nevada, like Texas, has a mandatory requirement that lawyer advertisements be filed with the state bar, within 15 days of the first dissemination, for review by a committee.[60] Nev. R. Prof'l Conduct 7.2A. There is no indication that Mr. Arsdale has complied. California requires that lawyers such as Mr. Arsdale who choose to operate though a California professional corporation, not to use a fictitious name or a "DBA". Under Rule 3.154 of the State Bar of California, "A law corporation

---

[60]    Aug. 26 Panchok-Berry Decl. Ex. 6, D.I. 1166.

may practice law only under the name registered with the Secretary of State and approved by the State Bar."

## V.    MANDATORY REPORTING REQUIREMENTS

In addition to Nevada and Texas, other states mandate that attorney advertisements be submitted for review prior or concurrent with its first public appearance, including Connecticut,[61] Louisiana,[62] Florida,[63] and Mississippi.[64]  Given the nationwide reach of Coalition / Abused in Scouting's advertisements, Messrs. Van Arsdale—and Kosnoff are bound to comply with these rules.  However, there is no indication that they have complied with these rules.  Particularly given the ever-changing nature of advertisements being posted and changes being made to their website, the Court should order Abused in Scouting and the Coalition to certify their compliance with these rules.

## CONCLUSION

For the forgoing reasons, the Court should enter an order enjoining the continued deceptive use of "Abused in Scouting" and the "Coalition" in the advertisements run by Mr. Kosnoff and Van Arsdale, compel the Coalition to comply with Rule 2019 and deny the Coalition participating in the mediation as a mediation party.  In addition, the Court should order the lawyers associated with Abused in Scouting to submit proof that they have complied with the

---

[61]    Conn. Statewide Grievance Comm. R. Proc. § 2-28A, Rule 14 (legal advertisements must be filed with the Statewide Grievance Committee prior to or concurrently with first dissemination of advertisement).

[62]    La. Rules Prof'l Conduct 7.7 (lawyers are obligated to file ALL non-exempt advertisements and unsolicited written communications with the LSBA Rules of Professional Conduct Committee, through LSBA Ethics Counsel, prior to or concurrent with first use/dissemination of the advertisement/communication).

[63]    Fla. Rules Prof'l Conduct 4-7.19 (advertisements, with some exceptions, must be filed with the Florida Bar at least 20 days before they are disseminated).

[64]    Miss. Rules Prof'l Conduct 7.5(g) ("A copy or recording of any advertisement to be published shall be submitted to the Office of General Counsel of the Mississippi Bar (OGCMB) prior to its first dissemination.").

rules of those jurisdictions, including those in Texas and Nevada, that mandate that lawyer

advertisements be submitted to the state bar for or concurrent with an advertisement being run.

Dated:  September 8, 2020

Respectfully Submitted,

By:   */s/Stamatios Stamoulis*
　　　Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone:   302 999 1540
Facsimile:   302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone:   212 326 2000
Facsimile:   212 326 2061

*Counsel for Century Indemnity Company, as*
*successor to CCI Insurance Company, as*
*successor to Insurance Company of North*
*America and Indemnity Insurance Company of*
*North America, Westchester Fire Insurance*
*Company and Westchester Surplus Lines*
*Insurance Company*