**Exhibit A**

**Omnibus Response**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 1106, 1144, 1161, 1219, 1222, 1223, 1224, 1227, 1229, 1230, 1248, 1257, 1261 |

**DEBTORS' OMNIBUS RESPONSE TO THE MOTIONS OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE (A) FOR AN ORDER (I) AUTHORIZING THE COALITION TO FILE UNDER SEAL EXHIBIT A TO THE AMENDED 2019 STATEMENT AND (II) APPROVING THE SUFFICIENCY OF THE AMENDED 2019 STATEMENT AND (B) TO PARTICIPATE IN THE MEDIATION**

　　　　The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this omnibus response to (a) the *Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File under Seal; Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* [Docket No. 1144] (the "2019 Motion"); and (b) the *Motion of the Coalition of Abused Scouts for Justice to Participate in the Mediation* [Docket No. 1161] (the "Mediation Motion"). In support of this response, the Debtors respectfully state as follows:

　　　　1.　　The Debtors support the relief requested by the Coalition of Abused Scouts for Justice (the "Coalition") in the 2019 Motion and the Mediation Motion. The Coalition describes itself as an *ad hoc* committee of more than 12,000 sexual abuse survivors holding claims against the BSA and other parties. 2019 Motion at ¶ 8. The Coalition asserts that its members represent

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

a "supermajority" of known abuse claimants against the BSA.[2] Accordingly, as the Coalition has observed, its members alone could have the voting power to carry any class of abuse claimants under a plan of reorganization for the Debtors. *See* 11 U.S.C. § 1126(c). Despite the desire of certain parties to restrict the collective representation of abuse claimants to the official committee of tort claimants (the "Tort Claimants' Committee"), there is no basis for any such restriction.[3] The Coalition has established its right to fully participate in these cases on behalf of its members.

2. The Debtors' dual objectives in these cases are to confirm a plan of reorganization that equitably compensates abuse survivors and ensure the BSA emerges from chapter 11 with the ability to continue carrying out its charitable mission. To that end, the Court appointed the Mediators[4] for the purpose of

> mediating the comprehensive resolution of issues and claims in BSA's chapter 11 case through a chapter 11 plan, which includes, without limitation, all matters that may be the subject of a motion seeking approval by the Court of solicitation procedures and/or forms of plan ballots, a disclosure statement, or confirmation of a chapter 11 plan.

Mediation Order at ¶ 2 (internal definitions omitted). Like any complex chapter 11 case, the "issues and claims" that must be addressed under the Debtors' plan of reorganization are numerous. As a threshold matter, this bankruptcy is driven by claims of sexual abuse in Scouting. The BSA has been clear from the first day of these proceedings that it will continue to actively

---

[2] *Omnibus Reply of the Coalition of Abused Scouts for Justice to Objections to (A) Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File under Seal; Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement, and (B) Motion of the Coalition of Abused Scouts for Justice to Participate in the Mediation* [Docket No. 1257] (the "Coalition Reply") at ¶ 24.

[3] *See*, *e.g.*, *In re Nw Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) ("*Ad hoc* or unofficial committees play an important role in reorganization cases. By appearing as a 'committee' . . . , the members purport to speak for a group and implicitly ask the court and other parties to give their positions a degree of credibility appropriate to a unified group with large holdings.").

[4] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* [Docket No. 812] (the "Mediation Order").

2

encourage anyone who has suffered abuse while in Scouting to come forward. *See Debtors' Informational Brief* [Docket No. 4] at 5. Here, each member of the Coalition asserts that he or she holds an abuse claim against the BSA. The members of the Coalition have, through their respective counsel, retained restructuring counsel to represent their collective interests as an *ad hoc* committee. It would be irreconcilable for the Debtors to encourage abuse survivors to come forward individually while opposing their ability to participate in this restructuring as a group.

3. The Debtors believe the Coalition has satisfied the disclosure requirements of Bankruptcy Rule 2019. The Coalition has filed two verified statements disclosing the information required by Rule 2019 and has provided its unredacted client list with personally identifiable information to the Court, the Mediators and the Mediation Parties (including the Debtors).[5] The Coalition has publicly filed redacted engagement letter exemplars, which appear to establish its authorization to act on behalf of its members as required by Bankruptcy Rule 2019(c)(4). *See* Coalition Reply, Ex. 1. Specifically, the engagement letters of state court counsel authorize such counsel to associate with co-counsel, which they have done by retaining Brown Rudnick LLP ("Brown Rudnick") to represent the Coalition. Brown Rudnick's engagement letter, in turn, states that Brown Rudnick represents the Coalition, and that it shall not act on behalf of the Coalition in a manner contrary to any direction from state court counsel. Based on these filings, the Debtors support a determination by the Court that the Amended 2019 Statement satisfies and complies with the requirements of Bankruptcy Rule 2019. Moreover, the Debtors have no objection to the Coalition's request to file Exhibit A to the Amended 2019 Statement under seal given that the

---

[5] *See Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* [Docket No. 1053]; *Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* [Docket No. 1106] (the "Amended 2019 Statement"); *Objection of the Coalition of Abused Scouts for Justice to Century and Hartford's Motion to Compel the Attorneys Representing the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019* at ¶ 40.

3

Coalition has publicly filed redacted engagement letter exemplars that appear to establish its authority to act on behalf of its members.

4.  Although the Debtors have not and will not shy away from litigation when necessary, the Debtors remain committed to building consensus around a viable structure and terms for a plan reorganization through mediated negotiations. Indeed, the fundamental purpose of the Mediation is to exert a moderating influence on the Mediation Parties and manage the hostility that can impede (and has impeded) progress toward plan confirmation.[6] Through its actions to date, the Coalition and its legal advisors have indicated that they share the Debtors' commitment to moving these cases forward through mediation rather than value-destructive litigation.[7]

5.  Since the Coalition appeared in these cases in late July, the Debtors have engaged in a productive dialogue with the Coalition's legal advisors, including restructuring counsel and state court counsel.[8] The Coalition recently provided Debtors' counsel with voluminous data regarding its members and their abuse claims. This data includes biographical information for

---

[6] *See* Hon. James M. Peck, *Mediation Meditations: Understanding the Mediation Culture of Chapter 11*, INT'L INSOLVENCY & RESTRUCTURING REPORT 2018–19 at 8 ("My thesis is that plan mediation has grown in importance in chapter 11 cases because of the need to manage outbreaks of hostility that distract from the collective goals of reorganization that depend on compromise. I believe that mediation is especially valued in a culture that also recognizes the adverse consequences of unchecked litigation.").

[7] The Debtors were surprised and disappointed to read the excerpts of Mr. Kosnoff's June 28 email quoted in the Tort Claimants' Committee's objection to the 2019 Motion (Docket No. 1227). Mr. Kosnoff's statements regarding plaintiff firms' "marketing and media efforts" corroborate the concerns articulated in the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* [Docket No. 1145] (the "Advertising Motion") and their supplemental brief filed in support thereof [Docket No. 1260] (the "Supplemental Advertising Brief"). These statements also underscore the concerns about the methods by which certain firms are generating claims and the efforts to screen such claims. Moreover, the metaphor Mr. Kosnoff used to describe an apparent litigation finance lender was a poor exercise of judgment and was offensive, particularly in light of the subject matter of these cases and his own clients' claims of sexual abuse. Such conduct is wholly inconsistent with Scouting values. That said, the Coalition's counsel has reassured the Debtors that Mr. Kosnoff's statements do not represent the Coalition's current views and the Coalition intends to engage expeditiously and in good faith with the Debtors and other parties in interest in the Mediation.

[8] The Debtors' restructuring counsel have experience with Mr. Molton and Ms. Beville of Brown Rudnick, who are serving as restructuring counsel to the Coalition.

claimants and detailed information about the alleged abuse, including location, date, and, if available, a narrative description of the abuse, the name of the perpetrator, the name of the local council and/or chartered organization implicated by the claim, and the troop number.[9] This detailed claims information is necessary for the parties to advance to the next stage of mediated plan negotiations in advance of the November 16 bar date, and the Debtors intend to work with their advisors, the insurers and the Mediators to evaluate the claims information provided by the Coalition. The Debtors have continued to request that the Tort Claimants' Committee furnish comparable claims data compiled by state court counsel representing members of the Tort Claimants' Committee. The Debtors are hopeful that the Tort Claimants' Committee will produce this information in the immediate future.

6. As a further indication of the Coalition's willingness to engage with the Debtors in good faith, the Coalition has acceded to several of the Debtors' requests regarding the correction of false and misleading advertising. Specifically, the law firm member representatives of the Coalition have amended (or are in the process of amending) their advertisements by: (a) changing the word "anonymous" to "confidential"; (b) removing any reference to the dollar amount of any compensation fund for Sexual Abuse Survivors; and (c) including the bar date in advertisements.[10] While these concessions are a promising step toward correcting false and misleading advertising, the Debtors continue to urge the Court to grant the Debtors' requested relief to prevent certain additional false statements in attorney advertising and to affirmatively require that certain

---

[9] The Coalition has provided this information to Debtors' counsel on a professional-eyes-only basis, subject to the same confidentiality protections afforded to "Sexual Abuse Proofs of Claim" under the *Order, Pursuant to 11 U.S.C. §§ 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [Docket No. 695] and "Committee Advisor Only" materials under the *Order Approving Confidentiality and Protective Order* [Docket No. 799].

[10] *See Supplemental Brief of the Coalition of Abused Scouts for Justice to the Debtors' Motion to Supplement the Bar Date Order* [Docket No. 1264] at ¶ 28.

5

additional information be disclosed in attorney advertising to avoid confusion. *See generally* Supplemental Advertising Brief. The Debtors and the Coalition are continuing to discuss the Advertising Motion and a potential consensual resolution of the issues raised therein.

7. In light of the foregoing, the Debtors are confident the Coalition will be a productive Mediation Party and believe the Coalition's designation as a Mediation Party is overdue. The Coalition filed its notice of appearance in these cases on July 24, 2020 (Docket No. 1040), and it requested to participate in the Mediation on the same date. The Debtors and numerous other Mediation Parties have expressed their support for the Coalition's request to be designated as a Mediation Party. Moreover, "the Mediators support the inclusion of any qualified party committed to the mediation process, including the Coalition, if qualified."[11] Nevertheless, nearly six weeks after the Coalition's initial request, the Coalition remains excluded from the Mediation due to the objections of the Tort Claimants' Committee and certain of the Debtors' insurers.

8. As a result of this lengthy delay, the Coalition has been unable to participate in any aspect of the Mediation, including the submission of mediation statements. In early August, at the direction of the Mediators, the Debtors submitted a mediation statement that comprehensively addressed several complex legal issues that are central to the resolution of abuse claims under a plan of reorganization. All of the current Mediation Parties have had the opportunity to review the Debtors' mediation statement and prepare and distribute their own responses among the other Mediation Parties. Due to confidentiality and privilege considerations, the Debtors have been unable even to share a copy of their mediation statement with the Coalition.[12]

---

[11] The Mediators have authorized the Debtors to make this representation to the Court.

[12] *See* Local Rule 9019-5(d) (providing for the protection of information disclosed at mediation); Mediation Order ¶ 7 (providing that Local Rule 9019-5(d) governs the Mediation).

9. As the Debtors have previously stated, time is not the ally of any charitable non-profit in bankruptcy. This is especially true of the BSA, which continues to be buffeted by the effects of the COVID-19 pandemic. The Tort Claimants' Committee and objecting insurers should permit the Coalition's full participation in these cases and focus their efforts on mediated negotiations with an appropriate sense of urgency.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: September 8, 2020<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Eric W. Moats*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@mnat.com<br>           aremming@mnat.com<br>           emoats@mnat.com<br>           ptopper@mnat.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Jessica C. K. Boelter (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone:  (212) 839-5300<br>Email:  jboelter@sidley.com<br><br>– and –<br><br>SIDLEY AUSTIN LLP<br>Thomas A. Labuda (admitted *pro hac vice*)<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>Blair M. Warner (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Email:  tlabuda@sidley.com<br>           mandolina@sidley.com<br>           mlinder@sidley.com<br>           blair.warner@sidley.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |