## EXHIBIT C

**Discovery Requests**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

## TORT CLAIMANTS' COMMITTEE'S FIRST SET OF DISCOVERY REQUESTS TO THE BSA AND CERTAIN LOCAL COUNCILS

The official committee of survivors of childhood sexual abuse (the "Tort Claimants' Committee" or the "TCC"), hereby requests, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26, 33, and 34, as made applicable herein by Federal Rules of Bankruptcy Procedure ("Fed. R. Bank. P.") 7026, 7033, and 7034, that the debtor, Boy Scouts of America ("BSA") and each of the Local Councils (as that term is defined below) (a) produce all documents and things responsive to the requests (the "Document Requests"), and (b) respond to the interrogatories (the "Interrogatories" and together with the Document Requests, the "Discovery Requests"), as set forth herein.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## DEFINITIONS APPLICABLE TO THE DOCUMENT REQUESTS AND INTERROGATORIES

1.      "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, text messages (whether by SMS, applications such as "WhatsApp," or otherwise), messages, notes, e-mails and memoranda. The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "Communication(s)."

2.      "Concerning" or "concerning" shall mean relating to, referring to, in connection with, in respect of, describing, evidencing, or constituting.

3.      "Document(s)" shall include ESI (as defined below) and is used in its customary broad sense.  It shall not be limited in any way with respect to the process by which any Document was created, generated, or reproduced, or with respect to the medium in which the Document is embodied; and shall include, by way of example and without any limitation, all "documents," "electronically stored information," or "tangible things" as referenced in Rule 34 of the Federal Rules of Civil Procedure, as well as all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence, and any kind of tangible material in any medium of any type, upon which intelligence or information is recorded, or from which intelligence or information can be perceived, whether in writing, recorded, stored, microfilmed, microfiched, photographed, computerized, reduced to electronic or magnetic impulse, or otherwise preserved or rendered. Documents further include, without limitation, materials maintained in electronic, magnetic or other storage media, including those maintained

in computers, electronic or magnetic tapes or diskettes, and any on-site or off-site backup or so-called "erased" or "deleted" computer information that may be susceptible to retrieval.

4.      "ESI" has the meaning ascribed to that term in Fed. R. Civ. P. 16, 26, and 34(a).

5.      "Insurance Policies" means (a) with respect to the BSA, all general liability or other insurance policies, or evidence of such policies, pursuant to which the BSA has coverage, or may have coverage, for any liability arising from claims of sexual abuse, including but not limited to (1) all such policies for each year prior to 1963, and (2) all policies listed on Schedule A annexed hereto, and (a) with respect to each Local Council, all general liability or other policies, or evidence of such policies, that might provide coverage for sexual abuse claims independent from the coverage provided under the BSA policies or a representation that no such policies exist.

6.      "Local Council" means each Local Council served with the Rule 2004 Motion.

7.      "Restricted Asset" means (a) any real or personal property owned or controlled by You, or owned or controlled for Your benefit, (b) that You contend was obtained or received by You with a restriction as to use or purpose, whether by actual or constructive trust or otherwise, (c) that You contend would not constitute "property of the estate" under section 541(a) of the United States Bankruptcy Code if You were a debtor in a bankruptcy case, and (d) that You reasonably believe has a fair market value equal to or in excess of $250,000.

8.      "Restricted Asset Account" means any bank account, trust, investment or similar account that holds or contains assets that You contend are Restricted Assets.

9.      "Rosters" mean the lists maintained by You, including camp and troop

rosters,  that (a) identify (or may identify) the Local Council, sponsoring organization, troop or

unit number, adult supervisors and volunteers, and the scouts/participants, at particular moments

in time and that (b) You have previously refused to produce to the TCC.

10.      "Rule 2004 Motion" means that certain *Motion of the Official Tort*

*Claimants' Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order*

*Authorizing the Issuance of Subpoenas for Discovery from Debtors and Certain Local Councils*

to which these Discovery Requests are attached as Exhibit C.

11.      "You" or "Your" means, individually, the Boy Scouts of America and

each individual Local Council that is required to respond to the Discovery Requests.

For all purposes herein, spelling, grammar, syntax, abbreviations, idioms, and proper

nouns shall be construed and interpreted according to their context to give proper meaning and

consistency to the Interrogatories and Document Requests.

## INSTRUCTIONS FOR INTERROGATORIES

1.      You are required to answer each Interrogatory with all information in

Your possession, custody or control, including all information in the possession, custody or

control of Your attorneys, investigators, agents, employees and representatives.

2.      As used herein, to "identify" or "describe" or to state the "identity" means,

in the case of a:

a.      Document or thing, to state:  (a) the type of Document or thing

(*e.g.*, email, letter, memorandum, report, drawing, chart, pamphlet, telex); (b) a general

description of the Document or thing; (c) the identity of each creator, author, signatory, or

draftsman of the Document or thing (including the identity of each Person who has edited,

corrected, revised or amended the Document or who has entered any initial comment or notation

thereon); (d) the date of the Document or thing (including each date on which it was edited, corrected, revised or amended); (e) the identity of each addressee or recipient of the Document or thing or a copy thereof; and (f) the identity of each Person having possession, custody or control of the Document or thing; and

b.      Communication, to state:  (a) the type of Communication (*e.g.*, telephonic, telegraphic, face-to-face, letter, etc.); (b) the general subject matter of any conversation; (c) the identity of each Person making, receiving or witnessing the Communication; (d) the date and location of the Communication.

3.      Where You make a statement upon information and belief, rather than upon actual knowledge, so state in Your answer and specifically identify the basis of such information and belief.

4.      Where an Interrogatory calls for an answer which involves more than one part, each part of the answer should be clearly set out so that it is understandable.

5.      If Your answer to any Interrogatory is "not applicable" or any similar phrase or answer is used, explain in detail why that Interrogatory is not applicable.

6.      If Your answer to any Interrogatory is "do not know" or any similar phrase or answer is used, identify by name, address, telephone number, and e-mail address likely to have information relevant to that Interrogatory, and describe in detail where the answer to that Interrogatory might be found and all of your efforts to obtain the answer to that Interrogatory.

7.      If You withhold any information on the basis that it is properly entitled to some limitation of discovery, You are instructed to use the following procedure:

c.      during the period of production, supply a numerical list of the information for which the limitation of discovery is claimed; and

d.      Indicate for each withheld information the following: (i) the name of each author, writer, sender, or initiator of such information, if any; (ii) the name of each recipient, addressee, or party to whom such information was intended, if any; (iii) the general subject matter of such information, so as to sufficiently identify the information; (iv) the basis for your belief that the information is properly entitled to a limitation of discovery; and (v) identify all persons having knowledge of facts relating to the limitation of discovery.

8.      In the event the space provided after each Interrogatory is not sufficient for your answer to any of the following interrogatories, attach a separate sheet of paper setting forth the question, followed by the additional answering information

9.      These Interrogatories shall be deemed continuing pursuant to Fed. R. Civ. P. 26(e) and Fed. R. Bankr. P. 7026 so as to require supplemental answers if You or Your attorneys obtain further information between the time answers are served and the time of trial.

10.      The use of either the singular or plural shall not be deemed a limitation. The use of the singular should be considered to include the plural, and vice versa.

11.      The words "and" and "or" are interchangeable and shall be construed either disjunctively or conjunctively or both, as broadly as necessary to bring within the scope of each request or question those responses that might otherwise be construed to be outside the scope.

## **INTERROGATORIES**

1.      Identify each asset owned or controlled by You, or owned or controlled for Your benefit, that You contend is a Restricted Asset.

2.      For each asset identified in response to Interrogatory No. 1, identify (a) each fact that You rely upon to support Your contention that the asset is a Restricted Asset, and (b) each

document (by bates number or by file in the Debtors' electronic data room) Concerning such asset.

3.     For each Restricted Asset Account, describe the flow of the Restricted Assets, including whether the Restricted Assets were deposited directly into the Restricted Asset Account or whether the Restricted Assets were first placed into another account (or accounts) and subsequently transferred to the Restricted Asset Account. The description should include, but not be limited to, the following information:

     a.   identify the initial account where the Restricted Assets were deposited, all intermediary bank and brokerage accounts where the Restricted Assets were transferred through, and the Restricted Asset Account where the Restricted Assets were ultimately deposited,

     b.   identify if the Restricted Assets were ever commingled with non-Restricted Assets,

     c.   identify the balances of the accounts over time,

     d.   identify the PeopleSoft general ledger account(s) Concerning any Restricted Asset held or contained in a Restricted Asset Account, and

     e.   describe all changes in policy or practice related to the flow of proceeds for the aforementioned Restricted Assets.

## **INSTRUCTIONS FOR DOCUMENT REQUESTS**

Rules 26 through 37 of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Rules 7026 through 7037 of the Federal Rules of Bankruptcy Procedure, are hereby incorporated by reference and apply to each of the following instructions:

1.      The Document Requests seek only documents that have *not* been previously produced by You.  For the avoidance of doubt, You are not required to produce for a second time any documents responsive to the Document Requests that are already available to the TCC in the Debtors' electronic data room.

2.      All Documents shall be identified by the Request(s) to which they are primarily responsive or be produced as they are maintained in the usual course of business.

3.      Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of a current or former employee or agent, that were created during or that relate or refer to the Applicable Period, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, or web-based email systems such as Gmail, Yahoo, etc.

4.      You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or are in draft form. Without limitation, hardware where such data may be stored (and from which such data must be retrieved) includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, text messages (whether by SMS, applications such as "WhatsApp," or otherwise), intranet and internet system data, telephone and

cellular telephone calling records, data compilations, spreadsheets, word processing files, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

5.        Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

6.        Documents not otherwise responsive to these Requests should be produced: (i) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests; (ii) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests; or (iii) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

7.        Documents attached to each other should not be separated; separate Documents should not be attached to each other.

8.        Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

9.        If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request or part thereof, for each such Document, You must:

        a.    Identify the type, title and subject matter of the Document;

        b.    State the place, date, and manner of preparation of the Document;

       c.    Identify all authors, addressees, and recipients of the Document, including information about such Persons to assess the privilege asserted; and

       d.    Identify the legal privilege(s) and the factual basis for the claim with sufficient particularity to enable an assessment of the claim.

       10.    Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 8 above must be provided.

       11.    To the extent a Document sought herein was at one time, but is no longer, in your actual or constructive possession, custody, or control, state whether it: (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred to others; and/or (iv) has been otherwise disposed of.  In each instance, Identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, Identify each Person having knowledge of the circumstances of the disposition, and Identify each Person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests are to be identified and produced.

## **MANNER OF PRODUCTION**

       1.    All Documents produced shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files, and accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction

program in the case of electronic originals, or by an industry-standard Optical Character

Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of

Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      Database load files shall consist of: (i) a comma-delimited values (.dat)

file containing: production Document identifier information, data designed to preserve "parent

and child" relationships within Document "families," reasonably accessible and properly

preserved metadata (or bibliographic coding in the case of paper Documents), custodian or

Document source information; and (ii) an Opticon (.opt) file to facilitate the loading of tiff

images. Load files should be provided in a root-level folder named "Data," images shall be

provided within a root level "Images" folder containing reasonably structured subfolders, and

searchable text files shall be provided in a single root-level "Text" folder. If any of the

Documents produced in response to these Requests are designated as confidential pursuant to a

Protective Order or Confidentiality Agreement, in addition to marking the Documents with the

brand "CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL," also

include a confidential field within the load file, with a "yes" or "no" indicating whether the

Document has been designated as confidential, as well as native file loading/linking information

(where applicable).

3.      Documents and other responsive data or materials created, stored, or

displayed on electronic or electro-magnetic media shall be produced in the order in which the

Documents are or were stored in the ordinary course of business, including all reasonably

accessible metadata, custodian or Document source information, and searchable text as to allow,

through a reasonable and modest effort, the fair, accurate, and complete access, search, display,

comprehension, and assessment of the Documents' true and original content.

4.      All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible.

5.      With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the reasonable management and importation of those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

      a.    XML format file(s);

      b.    Microsoft SQL database(s);

      c.    Access database(s); and/or

      d.    fixed or variable length ASCII delimited files.

6.      All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject

to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.      All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.      Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests.

## DOCUMENT REQUESTS

1.      All Documents and Communications that You rely upon to support Your contention that an asset owned or controlled by You, or owned or controlled for Your benefit, is a Restricted Asset.

2.      All Documents and Communications Concerning whether any asset owned or controlled by You, or owned or controlled for Your benefit, is a Restricted Asset.

3.      All Documents and Communications that you rely upon to identify and trace any asset owned or controlled by You, or owned or controlled for Your benefit, that you contend is a Restricted Asset.

4.      Documents sufficient to identify each bank or investment accounts utilized (whether open or closed) by You or for Your benefit since January 1, 2010, including the identity

of the institution, name on account, account number, account type (*e.g.*, checking, savings, investment), account function (*e.g.*, operating, payroll, sweep), date opened, and date closed (if applicable).

5.    All Insurance Policies pursuant to which You have coverage, or may have coverage, for any liability arising from claims of sexual abuse.

6.    All Rosters.

Date: September 29, 2020

**THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435)
John A. Morris (NY Bar No. 2405397)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 North Market Street, 17th Floor
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
Email: jstang@pszjlaw.com
           jmorris@pszjlaw.com
           joneill@pszjlaw.com
           jlucas@pszjlaw.com

*Counsel for the Tort Claimants' Committee*

## SCHEDULE A

1. **1975-1976**
   a. National Union (BE1140592)
2. **1976-1977**
   a. Hartford (10CA43349E)
3. **1984-1986**
   a. INA (ISLGO2931722)—missing declarations page
4. **1996-1997**
   a. American Zurich (AUO 3657270-00)
   b. AEIA (HR000105096)
5. **1997-1998**
   a. Liberty Mutual (TB1-191-409751-127)
   b. XL Bermuda (XLUMB-02391)
6. **2001-2020**
   a. Federal (79078617)
   b. Interstate (XUO-1102139
7. **2003**
   a. Interstate (XSO 1014504)- does not contain any insuring agreement or limits of liability
8. **2008**
   a. Endurance (ELD10000334502)
   b. Everest National (71 G000050-08)
   c. Allied World (C009030/003)
   d. Lexington (1172859)
   e. Endurance (ELD1 00003346 02)
   f. Lexington (1172861)
9. **2009**
   a. Endurance (ELD1 00003345 03)
   b. Everest National (71G000059091)
   c. Allied World (C009030/004)
   d. Endurance (ELD10001240600)
   e. Axis (EAU737684/01/2009)
   f. Interstate (HFX00082075581)
   g. Arch Re (UXP0025030-01)
   h. Ohio Casualty (ECO9(10)53709*960)
10. **2010**
    a. Endurance (ELD10000334504)
    b. Everest National (71G6000050101)
    c. Axis (EAU720252/01/2010)
    d. Allied World (0305-3351)
    e. Endurance (ELD1000019337)
    f. Arch Re (UXP0025020-02)

g. Ohio Casualty (ECO2253709960)

h. Westchester (G2500467200)

**11. 2011**

a. Endurance (ELD10000334505)

b. Everest National (71G6000050101)

c. Allied World (0305-3351)

d. Axis (EAU758049012011)

e. Endurance (ELD10003026000)

f. Arch Re (UXP0042842)

g. Westchester (G24114673002)

h. Ohio Casualty (ECO1153709960)

i. Liberty (EXCDA1205871)

**12. 2012**

a. Old Republic (MWZY59555)

b. Endurance (ELD10000334506)

c. Catlin (XSC-94255-0313)

d. Axis (EAU720252/01/2012)

e. Allied World (0305-3351)

f. Axis (EAU758049/01/2012)

g. Alterra ES (MAX3EC30000062)

h. Endurance (ELD10003553700)

i. Arch Re (UXP0042842-01)

j. Ohio Casualty (ECO 13 54672120)

k. Westchester (G24114673003)

l. Navigators (CH13EXC747034IC)

**13. 2013**

a. Allied World (0305-3351)

b. Alterra ES (MAX3EC30000092)

**14. 2014**

a. Alterra ES (MAX3EC30000296) the PDF we were provided contained blank pages

**15. 2015**

a. Gemini (CEX09600052-02)

**16. 2017**

a. Colony (AR3461897)

**17. 2018**

a. Aspen (CX0043418)

b. Allied World (0305-3351)

c. Colony (AR4460619)

d. Unknown—this is what is stated in the policy chart

e. Evanston (MKLV4EUE10038)

f. XL Catlin (PNCW021015)

g. Gemini (CEX09600166-05)

h. Endurance (EXC1004584704)

       i.   Ohio Casualty (ECO (19) 55942839)

**18. 2019**

      a.   Arch Re (UXP102797700)

      b.   Westchester (G71497094001)

      c.   Ategrity (01BXLP000012300)

      d.   Colony (AR4460619)

      e.   Allied World (3053351)

      f.   Endurance (EXC10004584705)

      g.   Gemini (CEX09600166-06)

      h.   Liberty Mutual (100032394701)