# EXHIBIT D

# COMPLIANCE CERTIFICATE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered |

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1 IN CONNECTION WITH MOTION OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1 FOR AN ORDER AUTHORIZING THE ISSUANCE OF SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND DISCOVERY FROM DEBTORS, MEMBERS OF THE AD HOC COMMITTEE OF LOCAL COUNCILS, AND CERTAIN LOCAL COUNCILS**

I, James E. O'Neill, hereby certify as follows:

1. I submit this certification as counsel to the Tort Claimants' Committee in conformity with Rule 2004-1 of the Local Rules and in support of the Motion.[2]

2. Prior to the filing of the Motion, members of my firm made the numerous attempts to confer with counsel to the Examinees, the most significant of which are described below.[3]

3. On March 25, 2020, shortly after its formation, the TCC sent its initial set of informal document requests to the BSA which included, among other things, the following:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] I am informed that counsel for the TCC participated in dozens of telephone conferences and e-mail communications with the BSA, counsel for the Ad Hoc Committee of Local Councils, and each of the Local Council Committee members concerning the TCC's informal discovery requests; many of those communications concerned Restricted Assets, Rosters, and insurance policies.

(a) "[a]sset listings / schedules detailing unrestricted (including designated), temporarily restricted and permanently restricted assets owned or controlled by the BSA or any of the BSA Related Entities," (b) "[a]ll supporting documentation for assets referred to in the prior request, including but not limited to wills, bequests, letters, and correspondence," and (c) "[t]roop Rosters for the BSA and each of the BSA Related Parties." The Local Councils fell within the definition of "BSA Related Entities."

4. On March 30, 2020, at the BSA's request, the TCC sent a follow-up set of "priority" requests that included, among other things, the following: (a) "[d]etailed asset listings / schedules detailing each and every unrestricted (including board designated and donor advisory funds), temporarily restricted and permanently restricted assets owned or controlled by the BSA or any of the BSA Related Entities," and (b) "[t]o the extent not already in the data room, all documents that the Debtors contend support their position that the "Identified Property" "is subject to enforceable use restrictions," as alleged in the *Debtors' Motion for Entry of an Order (I) Scheduling Certain Deadlines in Connection with Potential Disputes Regarding the Debtors' Identified Property and (II) Granting Related Relief*, filed at Docket No. 19.

5. On May 10, 2020, the TCC wrote to counsel for the Local Council Committee Members concerning its request for Rosters and stated as follows: "The TCC needs the Troop Rosters from each Local Council going back as far as they are available. This was part of the TCC's original requests and, as we presume [Debtor's counsel] has conveyed to you, an issue we have frequently pressed. The Troop Rosters provide information concerning, among other things, potentially responsible parties (*e.g.*, sponsoring organizations) that is frequently unknown to survivors but that is critical with statutes of limitation expiring in various jurisdictions at various times. We don't believe this is a burdensome request, but note that Troop

Rosters were not among the categories of information included in the information spreadsheet provided to Local Councils."

6. On or about July 16, 2020, counsel for the TCC sent letters to each of the Local Council Committee Members requesting the informal production of documents, including, among other things, the Restricted Asset Information, the Rosters, and the Insurance Policies.[4] Counsel for the TCC and each Local Council Committee Member have had at least two "meet and confer" telephone conferences and have exchanged numerous written communications regarding the TCC's requests. While each Local Council Committee Member has provided (and in some cases, continues to provide) documents responsive to at least some of the requests, most have not provided the underlying support for asset restrictions (including, for examples, copies of the key source documents such as wills, bequests, and agreements). In addition, none of the Local Council Committee Members have demonstrated an ability to specifically identify and trace restricted funds from origination to current date (including, for example, the identification of the account where the asset was originally deposited, transferred to, or now resides and whether the asset has been commingled with non-Restricted Assets), nor have any of the Local Council Committee Members produced any information concerning the Insurance Policies or any Rosters.

7. On July 28, 2020, after learning from certain Local Council Committee Members that the BSA possessed certain of the documents requested, counsel for the TCC emailed the BSA's counsel regarding the production of documents related to the Local Council

---

[4] The TCC specifically requested, among other things, (a) copies of all "insurance policies in effect at any time from 1950 through the present issued to, sold to, acquired by, purchased by, or naming or including any Local Council as an insured, named insured or additional," (b) "[a]sset listings / schedules detailing unrestricted (including designated), temporarily restricted and permanently restricted assets owned or controlled by each Local Council," and "[a]ll supporting documentation" for such assets, and (c) "Troop / unit rosters (including names, troop / unit numbers, time periods covered, etc.)."

3

Committee Members, including the Rosters.  Counsel met and conferred on August 13, 2020.  The Debtors have produced certain documents, but have refused to produce the Rosters.

8. On September 4, 2020, the TCC wrote to each of the Additional Local Councils and included informal document requests that specifically sought, among other things, the Restricted Asset Information, the Rosters, and the Insurance Policies.  None of the Additional Local Councils responded.

9. These various efforts did not produce an agreement for the production of the requested documents and information, let alone a mutually agreeable date, time, place and scope for such production.  Given the number of Examinees, and the lack of substantive response from any of the Additional Local Councils to two separate letters, I believe it would be impractical and a waste of time and resources to continue to seek the voluntary production of the vital documents and information requested.  Accordingly, the TCC has filed the foregoing Motion.

Dated: September 29, 2020

By: */s/ James E. O'Neill*
James E. O'Neill