## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC[1]<br><br>        Debtors | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1144, 1161, 1164** |

## CENTURY'S MOTION TO COMPEL THE DEPOSITIONS
## OF TIMOTHY KOSNOFF AND ANDREW VAN ARSDALE OR IN THE
## ALTERNATIVE TO ADJOURN THE HEARING ON THE
## PENDING 2019 MOTIONS [D.I. 1144], [D.I. 1161], AND [D.I. 1164]

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

    The Coalition and Messrs. Kosnoff and Van Arsdale ...................................................... 3

    Operating Under the Guise of "Abused in Scouting" ....................................................... 4

    The Mass Aggregation of Inventories of Claims .............................................................. 6

    Brown Rudnick's Retention Agreement with Messrs. Kosnoff and Van Arsdale ............ 7

    The Van Arsdale/Kosnoff "Abused in Scouting" Retention Agreement.......................... 8

    The Coalition's Delay in Providing Its Amended 2019 statement ................................... 9

    Efforts to Avoid Service and Illusory Offers to Appear ................................................. 10

ARGUMENT .......................................................................................................................... 10

    I.      The Pending 2019 Motions Present Contested Factual Issues............................ 10

           A.      Mr. Kosnoff's Central Role in the Coalition .......................................... 10

           B.      Exemplars, Conflicts and Authority Issues............................................. 12

           C.      Depositions Are Necessary to Resolve Factual Issues Specific to Messrs. Van Arsdale and Kosnoff ......................................................... 15

    II.     A Subpoena Is Not Necessary to Obtain this Testimony.................................... 16

CONCLUSION......................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Archdiocese of New York v. Ins. Co. of N. Am.*,
   No. 653772/2019 (N.Y. Sup. Ct. filed June 28, 2019) ........................................... 12

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants*,
   321 B.R. 147 (D.N.J. 2005) ................................................................................. 14, 16

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ................................................................................................... 9

*In re Archdiocese of Saint Paul and Minneapolis*,
   No. 15-30125 (Feb. 23, 2017) .................................................................................. 14

*In re Bell Atl. Corp. Sec. Litig.*,
   Civ. A. No. 91-0514, 1993 WL 514408 (E.D. Pa. Dec. 13. 1993) ............................ 9

*In re Diocese of Duluth*,
   565 B.R. 914 (2017) ................................................................................................. 12

*In re Honda*,
   106 B.R. 209 (Bankr. D. Haw. 1989) ....................................................................... 16

*In re Roman Catholic Church of the Archdiocese of Santa Fe*,
   No. 18-13027-11 (D.N.M. Dec. 31, 2018) ............................................................... 13

*In re the Diocese of Buffalo, N.Y.*,
   No. 20-10322 (Bankr. W.D.N.Y. Apr. 22, 2020) ..................................................... 13

*In the Matter of F&C Int'l, Inc.*,
   1994 Bankr. LEXIS 274 (Bankr. S.D. Ohio Feb. 18, 1994) .................................... 13

*Langsam-Borenstein P'ship by Langsam v. NOC Enterprises, Inc.*,
   137 F.R.D. 217 (E.D. Pa. 1990) ............................................................................... 16

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
   242 F.R.D. 164 (D. Mass. 2007) .............................................................................. 16

*Oklahoma P.A.C.*,
   122 B.R. 387 (Bankr. D. Ariz. 1990) ....................................................................... 13

*Pacitti v. Macy's*,
   193 F.3d 766 (3rd Cir. 1999) ..................................................................................... 9

*Roesberg v. Johns Manville Corp.*,
   85 F.R.D. 292 (E.D. Pa. 1980) ................................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

Nancy B. Rapoport, *Turning and Turning in the Widening Gyre:  The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913 (1994) ........................... 10

**Rules**

Fed. R. Bankr. P. 7030 ....................................................................................... 8

Fed. R. Bankr. P. 9014 ....................................................................................... 8

Fed. R. Civ. P. 26(b) .......................................................................................... 8

Fed. R. Civ. P. 30(a)(1) ...................................................................................... 8

Model R. Prof'l Conduct 7.1 ............................................................................. 13

**Treatises**

10 Collier on Bankruptcy ¶ 7030.02 (16th 2020) ....................................... 14

8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2007 (2d ed. 1990) ........................................................... 8

8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2107 (3d ed. 2020) .......................................................... 14

Century moves for entry of an Order, substantially in the form attached hereto as **Exhibit A**, compelling Timothy Kosnoff and Andrew Van Arsdale to appear for deposition in connection with Century and Hartford's pending Motion to Compel the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019 [D.I. 1164] and the Coalition's related motions to deem its 2019 statement as compliant [1144] and participate in the mediation [D.I. 1161] (collectively, the "2019 Motions").   In the alternative, the Court should adjourn the hearing on the 2019 Motions scheduled for October 14, 2020 until such time as these witnesses have been produced.

## PRELIMINARY STATEMENT

In carrying over the last hearing, the Court directed the parties to complete their submissions and go forward with any necessary discovery.  Despite this directive, the entity calling itself the "Coalition" has stalled filing its promised amended 2019 statement, frustrating the attempt to depose the founders of the Coalition.  The filing of the Coalition's amended 2019 statement before objections are due and depositions are taken is an obvious prerequisite to addressing the motions.  Yet, as of October 6, the Coalition has not filed its amended 2019 statement or said when it will do so, and the two founders of the Coalition, Tim Kosnoff and Andrew Van Arsdale, have refused to confirm their appearance for deposition on a date after the amended 2019 statement is produced but before a hearing.   Depositions of attorneys, as the District Courts in Delaware have found, may be important in 2019 motions, where there is a need to assess whether inter-law firm arrangements will be subject to abuse and impact the fairness of a plan of reorganization.

In an email that the TCC turned over to the Office of United States Trustee, Mr. Kosnoff admits how he intends to use the Coalition to supplant the TCC, avoiding the fiduciary duties owed by Committee Counsel and frustrate the mediation process.  As explained in Point I below,

Mr. Kosnoff, in a reference to the "Coalition," states bluntly that "[h]ere is the message: We control 80% of the claims i.e. our coalition controls the case," and that they "are not going to do anything to help grease the gears for [Jim] Stang and the dimwits [*the abuse survivor members of the committee*] including speeding up the insurance analysis. Ken, that's playing in to the Andolina Stang program."[2] Instead, he goes on, the group will "relax, keep focused on our marketing and media efforts going full tilt in to Nov, chill and enjoy our summer and evaluate in the fall."[3] Mr. Kosnoff contemplates that the alternative is to "go sell 15-30M of our case to a motherfunder to let it and AG digitally rape us for nine months."[4] Instead, from there on out "[n]othing happens until AIS says so. We smile, nod our heads and do nothing, nothing at all."[5]

The Coalition's delay in filing its amended 2019 statement is tactical. Messrs. Kosnoff and Van Arsdale's excuses for not giving a date when they will appear for deposition after the Coalition's amended 2019 statement are equally meritless. Both are described in the notice of appearance by their counsel as "Parties in Interest" in this case. As self-declared parties and founders of the Coalition, a subpoena is unnecessary. Messrs. Kosnoff and Van Arsdale claim a 40% interest in the bulk of the inventory of alleged claims that the Coalition says it represents against BSA. The leading treatise on bankruptcy provide that "[t]here is no necessity for the service of a subpoena upon a party witness."

But if the Court deems a subpoena necessary it should direct them and/or the Coalition to provide an address where they maintain a presence and can be served. Extensive efforts were made to serve Messrs. Kosnoff and Van Arsdale.

---

[2]    *Id.*

[3]    *Id.*

[4]    *Id.*

[5]    *Id.*

# BACKGROUND

### *The Coalition and Messrs. Kosnoff and Van Arsdale*

On July 24, 2020, the law firms of Brown Rudnick LLP and Blank Rome LLP[6] entered an appearance in these chapter 11 cases for an entity calling itself the "Coalition of Abused Scouts for Justice," claiming to be an ad hoc committee serving the interests of tort claimants.[7]

On July 29, 2020, the Coalition filed a statement pursuant to Rule 2019 Federal Rules of Bankruptcy.[8]  The Coalition's initial 2019 statement did not disclose—nor offer to disclose— whether the Coalition is organized as a limited liability entity, a partnership or something else under Rule 2019, nor did it identify all the entities with a financial interest in the claims supposedly represented by the group, provide a breakdown of who controls which clients, or supply information about the organization of the Coalition and fee-sharing or co-counsel agreements among the member entities.

On August 14, 2020, the Coalition filed an amended Rule 2019 statement, which disclosed only a marginal amount of new information.[9]  In the amended filing, the entity calling itself the Coalition continued to claim to represent over 12,000 claimants who "by and through their state court counsel" retained Brown Rudnick as a group.  Despite statements that indicate that the Coalition "members" are individual claimants, the disclosure revealed that the "State Court Counsel" were the ones who "decided to retain" Brown Rudnick and Blank Rome for their clients instead of going forward with the official Tort Claimants' Committee.[10]

---

[6]    Blank Rome subsequently withdrew from its representation of the Coalition.  D.I. 1261 Ex. 1.

[7]    D.I. 1040.

[8]    D.I. 1053.

[9]    D.I. 1106 (Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019).

[10]    *Id.* ¶ 1 & n.2.

The amended 2019 statement revealed that the "State Court Counsel" who formed the Coalition includes Andrew Van Arsdale and Tim Kosnoff, who, along with another Coalition member firm, have been advertising and soliciting claims under the marketing slogan "Abused in Scouting."[11]  No other information was given in the two verified 2019 statements about the relationships among the "Coalition," Kosnoff, Van Arsdale, the other attorneys involved, and the actual tort claimants.

### *Operating Under the Guise of "Abused in Scouting"*

Messrs. Kosnoff and Van Arsdale have been advertising and soliciting claims for this case, along with the Eisenberg Rothweiler firm, under the marketing moniker "Abused in Scouting" or "AIS."  At the time that the Coalition was formed and filed its 2019 Statements, and until recently, AIS's website stated that the group "ha[s] a representative on the Torts claimant committee (Abuse Survivors Committee) and will participate in that process throughout the duration of the bankruptcy proceeding."[12]  At the bottom of the AIS homepage, a disclaimer explains that the entire Abused in Scouting website is an advertisement that was prepared by a corporation, AVA Law Group, Inc.[13]  A more fulsome disclosure is linked.[14]

AVA Law Group, Inc. has its own website, which lists a single lawyer, Andrew Van Arsdale.  Though this website states that "over the years, [Mr. Van Arsdale] has helped thousands of people who have been injured," he only received a law degree in 2018.[15]  The only

---

[11]  *Id.*  The other "State Court Counsel" comprising the Coalition are identified as Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Andrews & Thornton, ASK LLP, and Slater Schulman, LLP.  *Id.* The Coalition discloses that one or two former clients of some member of this group are members of the Tort Claimants committee.

[12]  August 26, 2020 Declaration of Janine Panchok-Berry Decl. ("Aug. 26 Panchok-Berry Decl.") Ex. 4 at 00018, D.I. 1166 (screenshot of AIS website from August 16, 2020).

[13]  *Id.* at 00011.

[14]  *Id.* at 00014–15.

[15]  *Id.* Ex. 6.

other listed employee is a paralegal whose responsibilities include "head[ing] communication

between AVA Law Group and co-counsel firms."[16]  The disclaimer goes on to disclose that

"[s]ervices may be performed by affiliated law firms of AVA Law Group, Inc. who will be

jointly responsible for your case."[17]  The address listed on the AVA Law Group website appears

to be little more than a mail drop, where solo practitioners and small partnerships share a

storefront office space.[18]

      Mr. Van Arsdale is separately listed as an Owner and Operations Director at Reciprocity

Industries, a company that specializes in marketing tort claims.[19]  Mr. Van Arsdale's bio for that

company explains that his background is in advertising and intake for plaintiffs' law firms,

where he worked for the last decade.[20]  Reciprocity focuses on online and television advertising

and arranges call-center services.[21]

      A search for Kosnoff Law only turns up Kosnoff.com, which indicates that Mr. Kosnoff

no longer practices law.[22]  Mr. Kosnoff is described as having "transitioned" to being a

consultant providing such services as "media commentator" and consulting on mass tort

advertising.[23]  Mr. Kosnoff's Washington State Bar directory entry and website list the same

---

[16]   *Id.*

[17]   *Id.*

[18]   *Id.* Ex. 7.

[19]   *Id.* Ex. 8.

[20]   *Id.*

[21]   *Id.*

[22]   Aug. 26 Panchok-Berry Decl. Ex. 9, D.I. 1166 (Kosnoff.com homepage) ("Tim has transitioned to a new phase of his celebrated career.  He is now available to serve as a consultant, expert witness, mediator, lecturer and media commentator.").  Elsewhere on the same website, other attorneys at Kosnoff law and offices in Washington and Puerto Rico are referenced, but no address is listed for either of those offices and no other attorneys are listed on his website.  *Id.* Ex. 10 (Kosnoff.com Firm Overview) ("The attorneys at Kosnoff Law are dedicated to assisting the survivors of sexual abuse. . . .  From our offices in Seattle, Washington and now San Juan, Puerto Rico we have successfully represented clients throughout the United States, Canada and Latin America.").

[23]   Aug. 26 Panchok-Berry Decl. Ex. 9, D.I. 1166 (Kosnoff.com homepage).

Houston, Texas address for "Kosnoff Law PLLC."[24]  However, Mr. Kosnoff does not appear to be licensed to practice law in Texas,[25] and the address listed for Kosnoff Law in Houston is the address of a mail drop box.[26]

### The Mass Aggregation of Inventories of Claims

The face page of the "Abused in Scouting" website contains Boy Scout logos and badges and the statement in bold 26 point type that:  "We are the Survivors; Join the Movement."[27]  On the same page to the left, "We" is described as "a group of over 8,000 men."  The next, "About Us" page, is captioned in large 26 point text as "Who We Are."  The answer provided is "Abused in Scouting, A Movement of Survivors."[28]  Abused in Scouting is described in the next line as "an organization."  The reader is then told to "join us."  Elsewhere, the group describes itself as an "organization" or a "coalition of men" to achieve justice.[29]

At each step, the reader is encouraged to click a link that leads to a call center.  It is made apparent that money will be available.  And a page tied to the face page links to pages that provide troop numbers and perpetrator names by location that can be cribbed into a proof of claim.[30]

The videos that channel traffic to the AIS website vary in nature but all share the common device of referring to Abused in Scouting as an organization of scouts or former scouts.

---

[24]  *Id.* Ex. 11 (Timothy Kosnoff Washington State Bar profile).

[25]  A search on the Texas Bar website (texasbar.com) returns no results for "Kosnoff", "Kosnoff Law" or "Kosnoff Law PLLC".

[26]  *See* Declaration of Andrew Kirschenbaum (Kirschenbaum Decl.) Ex. 1.

[27]  Aug. 26 Panchok-Berry Decl. Ex. 4. at 000004, D.I. 1166.

[28]  *Id*.

[29]  August 25, 2020 Declaration of Evan Roberts ("Robert Decl.") Ex. A-1, D.I. 1145-3 ("I've met a coalition of men who joined together to hold the Boy Scouts accountable for what's going on.  Join us.  Stand with us. We stand for everybody.")

[30]  Aug. 26 Panchok-Berry Decl. ¶ 29, D.I. 1165.

There is no disclosure that AIS is linked to the Coalition or that there is any connection between them. The Abused in Scouting website, along with its television and social media ad campaigns, promote it as a "Movement" and an "organization" of abuse victims.[31]

### *Brown Rudnick's Retention Agreement with Messrs. Kosnoff and Van Arsdale*

At the September 9, 2020 hearing the Court ordered counsel representing the Coalition to produce unredacted retainer agreements.[32] The Brown Rudnick agreement is executed by Messrs. Kosnoff and Arsdale and representatives from four other law firms.[33] The agreement states that it "do[es] not create an attorney-client relationship between Brown Rudnick and any individual member [tort claimant]."[34] On the following page, the agreement confirms that the Coalition's counsel is to act at the "direction we receive from the Law Firms" and not by any individual claimant.[35] Further, the agreement states that to the extent the applicable rules of professional conduct may be waived, they are waived.[36] The agreement is not signed by any tort claimant.[37] Nothing shows that any tort claimant reviewed or consented to the retention agreement, let alone the payment of Coalition counsel.[38] An eight sentence unsigned and

---

[31] *See, e.g.*, Aug. 26 Panchok-Berry Decl. Ex. 4. at 000004, D.I. 1166; August 25, 2020 Declaration of Evan Roberts ("Robert Decl.") Ex. A-1, D.I. 1145-3 ("Abused in Scouting is an organization that represents over 4,000 men who were abused at the hands of the Boy Scouts.").

[32] Sept. 9, 2020 Hr'g Tr. at 122:13-23.

[33] D.I. 1257-1 at 17-22. Century notes that, despite the Court's order at the September 9 hearing that the unredacted retainer agreements be filed on the docket, the Coalition is yet to place those documents on the docket. Sept. 9, 2020 Hr'g Tr. at 122:13–23. For that reason, Century cites here the redacted versions of these documents.

[34] *Id*. at 13.

[35] *Id*. at 14.

[36] *Id*. at 16.

[37] *Id*. at 17–22.

[38] *Id*.

unissued form letter to tort claimants was also produced, but the letter simply informed

claimants, after the fact, that they had joined the Coalition and states they can opt out.[39]

### The Van Arsdale/Kosnoff "Abused in Scouting" Retention Agreement

Even though "Abused in Scouting" appears to be nothing more than a marketing slogan,

the form of retention letter that Messrs. Kosnoff and Arsdale claim to have used with individual

claimants is on letterhead, stating in large type "AIS" and below that in large type "Abused in

Scouting."[40]  In smaller type in a row below the letterhead, appears "Kosnoff Law," "AVA Law

Group," and "Eisenberg Rothweiler," with a city and state below each but not an address.[41]  In

the first sentence of the retention letter, the names of the three are presented with commas

between them, suggesting the three practice together in the same group.  Mr. Kosnoff lists

himself as practicing law out of San Juan, Puerto Rico.  For all intents and purposes, the

letterhead gives the impression that the three lawyers are all employed by "AIS" or "Abused in

Scouting" when no such entity actually exists.[42]

The retention letter used by Messrs. Van Arsdale and Kosnoff does not identify any of

the co-counsel as serving as co-counsel, provide any disclosure of how responsibility for a

claimant's case will be shared with co-counsel or what services Messrs. Van Arsdale or Kosnoff

will provide, if any.[43]  The agreement does not seek the client's consent for fee sharing or

---

[39]   *Id*. at 25.  Claimants are told in this letter that the Coalition has commenced discussions with insurance carriers.  However, the Coalition, Brown Rudnick and Blank Rome have not had any communication with Century, or to our knowledge any other insurer, except to refuse to provide Rule 2019 disclosures.

[40]   D.I. 1257-1 at 2.

[41]   *Id.*

[42]   *Id.*

[43]   *Id.*

provide any disclosure of how fees are shared.[44]  Nor does it explain or seek the client's consent to waive conflicts arising in a multi-party engagement.[45]

### The Coalition's Delay in Providing Its Amended 2019 Statement

At the September 9, 2020 omnibus hearing, the Court adjourned consideration of the adequacy of the Coalition's 2019 disclosures because the Coalition had not provided the parties with unredacted copies of the documents they and the Court needed to assess the 2019 Motions.[46]  Weeks after that, on September 29, 2020, Century was informed by the Debtors that six new law firms had "joined" the Coalition as "Coalition Representatives," a new designation not mentioned in any previous 2019 disclosure, and that the Coalition planned to file another amended 2019 statement.

The Coalition must file an amended 2019 statement, but has not done or said when it will. The delay in producing the amended 2019 statement has, in turn, been used to frustrate all attempts to schedule the depositions of Messrs. Kosnoff and Van Arsdale after it the amended 2019 statement is produced so the deponents may be questioned about it.

Century first served deposition notices for the depositions of Messrs. Kosnoff and Van Arsdale immediately after the TCC turned over Mr. Kosnoff's email to the Office of the United States Trustee which identified him as a key figure in the Coalition.  The addresses that Brown Rudnick provided for Mr. Kosnoff turn out to be a mail drop and an address to a closed building for Mr. Van Arsdale.[47]

---

[44]  *Id*.

[45]  *Id.*

[46]  Sept. 9, 2020 Hr'g Tr. 122:13–123:8.

[47]  Kirschenbaum Decl. Exs. 1, 2.

### *Efforts to Avoid Service and Illusory Offers to Appear*

Since the September 9 omnibus hearing, Century has both sought to engage Messrs. Kosnoff and Van Arsdale's attorney, Mr. Wilks, and attempted to serve Messrs. Van Arsdale and Kosnoff.  Mr. Kosnoff's Houston address is a drop box, and a copy of the subpoena was left there.[48]  The Puerto Rico address for Mr. Kosnoff turned out to be a marina, despite Mr. Kosnoff's representation on his letterhead that he practices law in San Juan.  Mr. Van Arsdale likewise could not be located at the address provided by Brown Rudnick, which is also his publicly listed address but has been closed due to COVID-19.[49]  Mr. Wilks, for his part, refused to provide an address when the parties met and conferred.  And the only date that Mr. Wilks provided for a deposition was one ***before*** the Coalition files its amended 2019 statement.[50]

Through their counsel, Messrs. Kosnoff and Van Arsdale have refused thus far to provide dates for their depositions after the Coalition files its amended 2019 statement.  Century has noticed Mr. Kosnoff's deposition for Friday and asked for a date before the hearing for Mr. Arsdale.

## ARGUMENT

### I.    The Pending 2019 Motions Present Contested Factual Issues

### A.    Mr. Kosnoff's Central Role in the Coalition

The Federal Rules of Civil Procedure governing discovery are applicable to these bankruptcy proceedings.  *See* Fed. R. Bankr. P. 7030, 9014.  Discovery under the Federal Rules of Civil Procedure is very broad.[51]  Rule 30 of the Federal Rules of Civil Procedure, applicable

---

[48]    Kirschenbaum Decl. Ex. 1.

[49]    Kirschenbaum Decl. Ex. 2.

[50]    Kirschenbaum Decl. Ex. 3.

[51]    *See Pacitti v. Macy's*, 193 F.3d 766, 776–77 (3rd Cir. 1999) (holding that the district court erred by "limiting discovery" because "it well recognized that the federal rules allow broad and liberal discovery"); *In re Bell Atl. Corp. Sec. Litig.*, Civ. A. No. 91-0514, 1993 WL 514408, at *3 (E.D. Pa.

here, allows for the deposition of "any party" with relevant knowledge.  Fed. R. Civ. P. 30(a)(1);

*see also* Fed. R. Civ. P. 26(b).  Mr. Van Arsdale and Kosnoff are self-declared parties to the case

with a 40% interest in the inventory of thousands of claims that they have aggregated against

BSA and claim to represent.

The Coalition's 2019 submissions raise factual questions regarding the Coalition, what it

is and who it represents, that are highly relevant to the Rule 2019 Motions.  Mr. Kosnoff has

stated in writing that he controls the claims that the Coalition says in its disputed 2019 statements

that it "represents" in these cases.

In an email that the TCC turned over to the Office of the United States Trustee, Mr.

Kosnoff states that the Coalition attorneys "need to control our power.  Not just to the committee

but to everyone - mediators, BSA, councils etc."[52]  He also states that some of the entities for

whom he claims to speak "aren't handing over any of their data to anyone unless and until this

gets sorted out.  [Mike] Andolina and the 3 Amigos [the mediators appointed by this Court] need

to get that message.  They are wasting their time talking to the TCC."[53]

Mr. Kosnoff went on, in a reference to the "Coalition," stating that "[h]ere is the

message: We control 80% of the claims i.e. our coalition controls the case," and that they "are

not going to do anything to help grease the gears for [Jim] Stang and the dimwits [the abuse

---

Dec. 13. 1993) ("discovery rules are to be accorded a broad and liberal treatment") (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).  Under Rule 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Therefore, where a real and practical need for discovery is demonstrated, courts routinely grant motions to compel.  *See Pacitti*, 193 F.3d at 776–77; *Roesberg v. Johns Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) (holding that requests for discovery should be upheld where the information sought may be relevant to the subject matter of the action); *see also* 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2007 (2d ed. 1990) (Rule 26 "allow[s] broad discovery and this has been well recognized by the courts").

[52]    D.I. 1285-1.

[53]    *Id.*

survivor members of the committee] including speeding up the insurance analysis.  Ken, that's

playing in to the Andolina Stang program."[54]  Instead, he goes on, the group should "relax, keep

focused on our marketing and media efforts going full tilt in to Nov, chill and enjoy our summer

and evaluate in the fall.  We have the luxury of doing nothing."[55]

Mr. Kosnoff contemplated that the alternative was to "go sell 15-30M of our case to a

motherfunder to let it and AG digitally rape us for nine months."[56]  Instead, from there on out

"[n]othing happens until AIS says so.  We smile, nod our heads and do nothing, nothing at all."[57]

### B.    Exemplars, Conflicts and Authority Issues

The Coalition has supplied the parties with exactly three "exemplar" retention

agreements covering the six founding firms, including one "exemplar" retention letter used

collectively by the three lawyers/firms marketing themselves under the guise of "Abused in

Scouting."[58]  Messrs. Kosnoff and Van Arsdale purport to be parties to the exemplar retention

agreement with their claimant clients and the retention agreement with Brown Rudnick.[59]  But

neither the Coalition nor the lawyers associated with it have clarified whether these three

exemplar agreements are the *only* form of agreement used with each of over 12,000 claimants

they purport to represent.  This raises questions that go to the heart of the Coalition's Rule 2019

submissions:  If other agreements were used at some point in time and others are involved, how

do those differ?  Do all agreements have the same clause regarding association with co-counsel,

---

[54]  *Id.*

[55]  *Id.*

[56]  *Id.*

[57]  *Id.*

[58]  D.I. 1257-1.

[59]  *Id.*

which the Coalition is relying upon?  Has anything else been communicated to clients about what association with co-counsel means?

Then there is the letter the Coalition claims Messrs. Kosnoff and Van Arsdale sent out to each of their alleged clients, announcing the formation of the Coalition.[60]  Only a "sample" of that communication has been provided.[61]  There has been no verification of when, by whom, or to whom it was sent, or even a record that the communication was sent at all.  Moreover, the letter gives claimants a chance to "opt out" of the Coalition but remain clients of the firm— raising questions about (1) has that happened, and (2) what would be the result of opting out for that claimant?

Further, the submissions from Abused in Scouting and the law firms involved with the Coalition raise questions with regard to whether potential conflicts among their 12,000 clients have been adequately addressed with each individual client, such that any consent to conflicts allegedly given is "truly informed" consent, as it is required to be in this Circuit.[62]  Indeed, the fact that Brown Rudnick's original co-counsel, Blank Rome, withdrew from the representation after Century and others raised concerns about its concurrent representation of several Catholic dioceses and the tort claimants in this matter raises a question about how carefully conflicts were vetted prior to the 2019 filings.[63]  Messrs. Van Arsdale and Kosnoff, who claim to represent a

---

[60]  *Id.* at 24–25.

[61]  *Id.*

[62]  Rule 2019 is the Court's mechanism for keeping tabs on multiple representations of creditors and equity security holders and is the only current, specific means of keeping a check on creditors' attorneys' conflicts. *See* Nancy B. Rapoport, *Turning and Turning in the Widening Gyre:  The Problem of Potential Conflicts of Interest in Bankruptcy*, 26 Conn. L. Rev. 913, 939–40 (1994).

[63]  *See Archdiocese of New York v. Ins. Co. of N. Am.*, No. 653772/2019 (N.Y. Sup. Ct. filed June 28, 2019); *see also* Application to Employ Blank Rome LLP as Special Insurance Counsel for the Debtor and Debtor-in-Possession, *Roman Catholic Archdiocese of Agana*, No. 19-00010 (Bankr. D. Guam Jan. 17, 2019) (Dkt. No. 39); *In re Diocese of Duluth*, 565 B.R. 914, 915 (2017); Application to Employ Blank Rome as Special Insurance Counsel for the Debtor and Debtor-in-Possession, *In re Roman Catholic Church of the Archdiocese of Santa Fe,* No. 18-13027-11 (D.N.M. Dec. 31, 2018)

large chunk of these clients and have also introduced their own specific conflict-of-interest

questions by virtue of their confusing use of trade names and implied combined practice, are in a

unique position to address these and similar issues.

All of these are appropriate areas of factual inquiry in advance of the hearing on the

sufficiency of the Coalition's 2019 submissions.  Assessing and clarifying potential ethical

violations is an appropriate inquiry for Courts considering parties' 2019 submissions:

> ***Bankruptcy Rule 2019 is a disclosure provision***, which must necessarily be
> enforced as any other disclosure provision concerning attorneys or professionals,
> such as Bankruptcy Rules 2014 and 2016.  Moreover, the ***Court should also play
> a role in ensuring that lawyers adhere to certain ethical standards.  Bankruptcy
> Rule 2019 was designed for such a purpose.  It is part of the Chapter 11
> reorganization process that all matters should be done openly and subject to
> scrutiny***, whether it is the proposal of a plan of reorganization, representation of
> the debtor, or representation of numerous creditors—secured or unsecured.

*Oklahoma P.A.C.*, 122 B.R. 387, 392–93 (Bankr. D. Ariz. 1990) (emphasis added); *see also In*

*the Matter of F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994)

(absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's

behalf may not be authorized to do so and may receive distributions to which they are not

entitled").

Bankruptcy courts regularly use Rule 2019 as a vehicle to assess the ethical compliance

and economic interests of attorneys appearing in the case: part of Rule 2019's purpose is to "to

ensure that reorganization plans deal fairly with all creditors and are arrived at openly."  *Baron*

*& Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 167 (D.N.J. 2005).  And the

unique role of Rule 2019 in assessing what each entity involved in a group has to gain from that

involvement in that group and in the case is heightened in mass tort sex abuse cases where a

---

(Dkt. 55); *Ex Parte* Application For Order Appointing Blank Rome, LLP as Special Insurance
Counsel to the Debtor, *In re the Diocese of Buffalo, N.Y.*, No. 20-10322 (Bankr. W.D.N.Y. Apr. 22,
2020) (Dkt. 258).

group collectively holds the single largest economic interest in the outcome of the cases, as is the case with the Coalition. *See* Hr'g Tr. at 48:16–49:3, *In re Archdiocese of Saint Paul and Minneapolis*, No. 15-30125 (Feb. 23, 2017), Dkt. 987 (Aug. 26 Panchok-Berry Decl. Ex. 17, D.I. 1166).

**C.     Depositions Are Necessary to Resolve Factual Issues
Specific to Messrs. Van Arsdale and Kosnoff**

Messrs. Van Arsdale and Kosnoff have not made themselves available, nor have they (or any party communicating with Century on their behalf) been forthcoming about providing an address at which they can be served, assuming service of a subpoena were necessary.  Brown Rudnick gave Century Mr. Kosnoff's Houston address, which a process server found was nothing more than a private mail box.[64]  The address provided for Mr. Van Arsdale at least appears to be a real building, but the building was locked and shut down.[65]  And counsel representing Messrs. Van Arsdale and Kosnoff has refused to provide information about where these individuals can be found.  It is curious that two attorneys who claim to have an attorney-client relationship with *thousands* of potential claimants in this bankruptcy would be so cagey and difficult to locate in connection with motions involving their participation in the matter.

The Coalition's disclosure of the Abused in Scouting / Van Arsdale / Kosnoff retention letter raises additional questions.  Mr. Kosnoff's website (and the attorneys at Brown Rudnick) indicate that his business address is in Houston, Texas, yet the letter he uses gives his location at San Juan, Puerto Rico.  There are also questions about what exactly Abused in Scouting is: it appears from the letterhead that three separate attorneys / firms are representing themselves as practicing together in a firm where that is not actually the case, a practice barred by the Model

---

[64]    Kirschenbaum Decl. Ex. 1.
[65]    Kirschenbaum Decl. Ex. 2.

Rules of Professional Conduct.  Model R. Prof'l Conduct 7.1 cmt. [7] ("Lawyers may not imply or hold themselves out as practicing together in one firm when they are not a firm, as defined in Rule 1.0(c), because to do so would be false and misleading.")  On the other hand, the entire Abused in Scouting website is identified as nothing more than an advertising campaign for only one of the lawyers involved: Mr. Van Arsdale.  "Abused in Scouting" itself also is used as a trade name to advertise nationwide,[66]  including in jurisdictions with blanket prohibitions on trade names or prohibitions on misleading trade names.[67]  The factual issues surrounding Abused in Scouting and these two attorneys are highly relevant and more than appropriate areas of inquiry, particularly in light of the transparency that Rule 2019 is designed to bring to chapter 11 cases.  *See Baron & Budd*, 321 B.R. at 167.

Bankruptcy courts will hear evidence, including the depositions of counsel, where such evidence is relevant to a pending Rule 2019 motion.  *Id.* at 160 & n.3.  In *Baron & Budd*, the court cited testimony given at the depositions of an attorney from the Motley Rice firm (a firm that is now a member of the Coalition) in explaining the potential in that case that inter-law firm arrangements "suggest the opportunity for abuse of fee sharing relationships" which were "inextricable from the overall fairness of the reorganization plan."  *Id.* at 160.  Here, the presence of similar inter-law firm arrangements makes this evidence relevant and necessary to the resolution of the 2019 Motions.

## II.    A Subpoena Is Not Necessary to Obtain this Testimony

Messrs. Kosnoff and Van Arsdale have both formally appeared having filed a notice of appearance through their counsel describing themselves as "Parties in Interest" in this matter.  As

---

[66]    *See* Aug. 26 Panchok-Berry Decl. Ex. 4 at 000003, D.I. 1166; Aug. 26 Panchok-Berry Decl. ¶ 29, D.I. 1165; Century's Supp. Br. ISO Debtors' Advertising Motion at 7–8, D.I. 1266.

[67]    See Century's Supp. Br. ISO Debtors' Advertising Motion at 10–11, D.I. 1266.

self-declared parties to the case, Mr. Van Arsdale and Kosnoff claim a 40% interest in the

inventory of thousands of claims that they have aggregated against BSA and claim to represent.

The leading treatise on bankruptcy provides that "[t]here is no necessity for the service of a

subpoena upon a party witness."  10 Collier on Bankruptcy ¶ 7030.02 (16th 2020); *see also* 8A

Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure §

2107 (3d ed. 2020) ("Though Rule 30 does not say so expressly, a subpoena is not necessary if

the person to be examined is a party or an officer, director, or managing agent of a party.").

Courts' decisions on the issue are in accord. [68]

## CONCLUSION

Century respectfully requests that the court enter an order to compel Timothy Kosnoff to

appear for his deposition as noticed on Friday, October 9, 2020 at 10:00 a.m. and to compel

Andrew Van Arsdale to be produced on a mutually convenient date for deposition.  In the

alternative, the Court should adjourn the hearing on the 2019 Motions scheduled for October 14,

2020 until such time as these witnesses have been produced.

---

[68]   *See Langsam-Borenstein P'ship by Langsam v. NOC Enterprises, Inc.*, 137 F.R.D. 217, 218 (E.D. Pa.
1990) (subpoena not required to compel party's attendance at a deposition); *In re Honda*, 106 B.R.
209, 211 (Bankr. D. Haw. 1989) ("The notice for taking deposition is sufficient to compel the
attendance of a witness who is a party to the action.").  Thus, under the relevant Federal Rules, once a
deposition has been properly noticed, a party cannot simply refuse to appear because it finds the
deposition objectionable—rather, a party must move for a protective order in order to avoid giving
testimony. *See New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D.
164, 165–66 (D. Mass. 2007) ("[T]here is no provision in the [Federal Rules of Civil Procedure]
which provides for a party whose deposition is noticed to serve objections so as to be able to avoid
providing the requested discovery until an order compelling discovery is issued.").

Dated:  October 6, 2020                    Respectfully Submitted,


By:   */s/ Stamatios Stamoulis*
        Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone:    302 999 1540
Facsimile:    302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone:    212 326 2000
Facsimile:    212 326 2061

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America, Westchester Fire Insurance
Company and Westchester Surplus Lines
Insurance Company*

**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA AND DELAWARE Boy Scouts, LLC,[69] | |
| | Jointly Administered |
| Debtors. | **Re: D.I. 1144, 1161, 1164, __** |

## [PROPOSED] ORDER GRANTING CENTURY'S MOTION TO COMPEL THE DEPOSITIONS OF TIMOTHY KOSNOFF AND ANDREW VAN ARSDALE

Upon the motion (the "Motion")[70] of Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company ("Century") and First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company ("Hartford") for entry of an Order granting certain relief requested in the Motion (D.I. _____), it is HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    Mr. Kosnoff is ordered to make himself available for the deposition noticed for Friday, October 9, 2020 at 10:00 a.m. ET.

3.    Mr. Van Arsdale is ordered to make himself available at the earliest convenient time prior to the October 14, 2020 omnibus hearing.

---

[69]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[70]   All capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

Dated _____


_____

United States Bankruptcy Judge