**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Hearing Date:  Oct. 14, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline:  Oct. 7, 2020 at 4:00 p.m. (ET)** |
| | **Re: D.I. 1379** |

**OBJECTION OF CIRCLE TEN COUNCIL TO
MOTION OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE
PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1
FOR AN ORDER AUTHORIZING THE ISSUANCE OF SUBPOENAS
FOR DISCOVERY FROM DEBTORS AND CERTAIN LOCAL COUNCILS**

Circle Ten Council hereby submits this objection (this "Objection") to the *Motion of the Official Tort Claimants' Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery from Debtors and Certain Local Councils* (Docket No. 1379) (the "Motion"),[2] filed by the Official Tort Claimants' Committee (the "TCC").  In support of this Objection, Circle Ten Council respectfully represents as follows: [3]

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Motion.

[3]    Circle Ten Council understands that the TCC agreed to extend the objection deadline for the Motion, as to the BSA and the Ad Hoc Committee of Local Councils, to October 9, 2020.  The TCC denied Circle Ten Council's similar request for the same two-day extension.  In addition, and contrary to the TCC's assertion, the TCC did not meet and confer with Circle Ten prior to filing the Motion.

**Preliminary Statement**

1.      Circle Ten Council is a local council (a "Local Council") chartered by the BSA and is a nonprofit Texas corporation with headquarters in Dallas, Texas.  Circle Ten Council is not a Debtor in these chapter 11 cases, nor has it participated in these cases other than by providing certain asset-related information to the BSA in exchange for an extension of the protections of the Preliminary Injunction pursuant the Consent Order (as such terms are defined below) through November 16, 2020.  Circle Ten Council is not a party to the Mediation (as defined below) and has not engaged in formal negotiations with the Debtors, the TCC or other parties in these cases.  To date, it has neither agreed to support the Debtors' proposed plan nor agreed to make a contribution to the Debtors' estates.

2.      Although both the Motion and the Debtors' proposed plan of reorganization presume that Local Councils, after negotiations with the Debtors, the TCC and the official committee of unsecured creditors (the "Creditors' Committee"), will agree to enter into a settlement, Circle Ten Council has insufficient information to be able to determine whether participating in any such settlement is in its best interest.  To make this determination, Circle Ten Council requires information regarding, among other things, (a) the number, amount and nature of claims against the Debtors that may implicate Circle Ten Council, (b) the quantum of insurance resources available for any settlement and (c) the nature and extent of any contributions to be made to a settlement by BSA, other Local Councils or other Chartered Organizations.  With respect to the first set of data, until the Bar Date (as defined below) occurs on November 16, 2020 and the claims are catalogued by the Debtors, it is impossible for Circle Ten Council to make an informed decision as to whether to participate in plan or settlement negotiations.

3.       It is worth noting at the outset that the Motion violates the Consent Order entered in the Adversary Proceeding because the Preliminary Injunction prohibits parties, including the TCC, from engaging in actions against the BSA Related Parties "in furtherance of the prosecution or defense" of abuse claims.  For that reason alone, the Motion should be denied.  Further, granting the Motion would contravene the longstanding "pending proceeding" rule, because the subject matter of the TCC's discovery requests relates to matters within the scope of the pending Adversary Proceeding.   Indeed, the TCC and the Creditors' Committee consented to an extension of the Preliminary Injunction in exchange for certain asset-related information provided by BSA Related Parties, including Circle Ten Council.  Accordingly, even if it were proper for the TCC to seek discovery at this time (which it is not), the TCC would have to do so consistent with the Consent Order and the Federal Rules of Civil Procedure, not under Bankruptcy Rule 2004.  Finally, the Motion and the proposed order attempt to rewrite Federal Rule of Civil Procedure 45 and Bankruptcy Rule 9016 by, among other things, (a) compelling compliance with the contemplated subpoenas before their targets are afforded the opportunity to object to, or move to quash, such subpoenas and (b) requiring targets to comply with the subpoena in Delaware even though a subpoena can only require compliance "within 100 miles of where the person resides, is employed, or regularly transacts business in person" – which, for Circle Ten Council, is Dallas, Texas.

4.       Even the if TCC could overcome all of the foregoing infirmities, the Motion is premature as to Circle Ten Council.  Although Bankruptcy Rule 2004 is broad, the Court has considerable discretion to deny the discovery sought thereunder in light of the facts before the Court.  Here, the TCC seeks wide-ranging discovery of a *non-debtor and non-participant in these cases for the purposes of satisfying claims of other non-debtors* based on little more than a supposition that Circle Ten Council and the other Local Councils will participate in settlement

negotiations.  For the reasons discussed below, the arguments set forth in the Motion fall far short of establishing that documents and information the TCC has asked Circle Ten Council to produce relate to the Debtors' estates or the plan of reorganization, as Bankruptcy Rule 2004, were it applicable here, would require.

5.    For all of these reasons, as further discussed below, the Court should deny the Motion.

## Facts Relevant to This Objection

6.    Circle Ten Council administers Scouting programs in a territory encompassing all or a portion of 22 counties in north-central Texas and two counties in southern Oklahoma, consisting of 27 geographical districts.

7.    On February 18, 2020 (the "Petition Date"), Debtor BSA filed its *Verified Complaint for Injunctive Relief* (Adv. Pro. Docket No. 5), commencing the adversary proceeding captioned as Boy Scouts of America v. A.A., *et al.*, Adv. Pro. No. 20-50527 (LSS) (Bankr. D. Del.) (the "Adversary Proceeding").  On March 23, 2020, the Court entered an order (Adv. Pro. Docket No. 50) permitting the TCC and the official committee of unsecured creditors (the "Creditors' Committee") to intervene in the Adversary Proceeding.

8.    Following negotiations with the TCC and the Creditors' Committee, the BSA proposed – and on March 30, 2020, the Court entered – the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction* (Adv. Pro. Docket No. 54) (the "Consent Order").  The Consent Order provides that "[t]he Pending Abuse Actions set forth on Schedule 1 are hereby stayed as to the BSA Related Parties, and any and all further proceedings in the Pending Abuse Actions, or other actions by the parties thereto in furtherance of their prosecution or defense, are hereby stayed, prohibited and enjoined …." (the "Preliminary

Injunction").  Consent Order, at ¶ 3.  Circle Ten Council is a "BSA Related Party" as defined in the Consent Order and, thus, is protected by the Preliminary Injunction.  See id. at ¶ A & Schedule 2.

9.      The Consent Order initially provided that the Preliminary Injunction would remain in effect through May 20, 2020.  Consent Order, at ¶ 3.  The Court has since entered two stipulations and agreed orders extending the effective period of the Preliminary Injunction, the most recent of which (the "Second Agreed Order") provides that the Preliminary Injunction will terminate on November 16, 2020.  See *Stipulation and Agreed Order* (Adv. Pro. Docket No. 72), at ¶ 3 (extending Preliminary Injunction through June 8, 2020); *Second Stipulation and Agreed Order* (Adv. Pro. Docket No. 77), at ¶ 5 (further extending Preliminary Injunction through November 16, 2020).

10.     The scope of the Preliminary Injunction is not limited to the prosecution of Pending Abuse Actions in nonbankruptcy courts.  It also prohibits plaintiffs from taking "other actions by the parties thereto in furtherance of their prosecution or defense" of Pending Abuse Actions.  Consent Order, at ¶ 3.  Regarding discovery, the Consent Order contains a narrow exception removing only "preservation discovery from witnesses determined by mutual agreement of the BSA and the Tort Claimants' Committee and the UCC, or by the Court, to be aging or infirm witnesses" from the injunction's scope.  Id. at ¶ 6.

11.     The Second Agreed Order requires Local Councils that wish to maintain the protections of the Preliminary Injunction through November 16, 2020 to report certain asset-related information to the BSA, including information regarding asset dispositions during the past six years and prospective notice of certain types of asset transfers on a going-forward basis.  See Second Agreed Order, at Ex. 4.  On July 2, 2020, Circle Ten Council executed and delivered

to the BSA the acknowledgement and agreement attached as Exhibit 4 to the Second Agreed Order (the "<u>Acknowledgement and Agreement</u>"), along with a letter providing the asset-related information requested therein.

12.     On the Petition Date, the Debtors filed the *Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (Docket No. 20) (the "<u>Plan</u>") and a related disclosure statement (Docket No. 21).  The Plan, which was not developed with any input or agreement from Circle Ten Council, contemplates that Local Councils will participate in a settlement of abuse claims and that "Local Council Trust Contributions" will make up a portion of the recoveries paid to the Debtors' creditors under the Plan.  <u>See</u> Plan, at § I.A.123, Art. IV.

13.     On May 26, 2020, the Court entered an order (Docket No. 695) (the "<u>Bar Date Order</u>") establishing November 16, 2020 as the deadline by which claimants (other than governmental parties) – including holders of abuse claims against the Debtors – must file proofs of claim in the chapter 11 cases (the "<u>General Bar Date</u>").

14.     On June 9, 2020, the Court entered the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* (Docket No. 812), referring the Debtors, the TCC, and various other parties to mediation regarding, among other things, the confirmation of a chapter 11 plan (the "<u>Mediation</u>").  Circle Ten Council is not a party to the Mediation and has not engaged in any formal or informal negotiations regarding the Plan or a settlement of abuse claims in these cases.[4]

---

[4]     Although the Ad Hoc Committee of Local Councils (the "<u>Local Councils Committee</u>") is a Mediation party, Circle Ten Council is not a member of the Local Councils Committee and has not given the Local Councils Committee authority to negotiate on behalf of Circle Ten Council or bind Circle Ten Council to any agreement in these chapter 11 cases.

15.     On July 31, 2020, Circle Ten Council received a letter (the "July 31 Letter")[5] from the TCC stating that (a) "Before the Bankruptcy Court will approve or 'confirm' a plan that contains non-consensual releases of the Survivors' claims against the Local Councils," among other things, "the Local Councils will be required to make a 'substantial contribution' to the trust," and (b) "[i]f your Local Council wants to benefit from a channeling injunction under a BSA plan, your Local Council need[s] to immediately begin a dialogue about the funds necessary for your Local Council to obtain a channeling injunction." July 31 Letter, at 1-2. The July 31 Letter also asserted that "[t]he Tort Claimants' Committee is aware that your Local Council is implicated in approximately 54 claims that have been or will be filed in the bankruptcy case against BSA." Id. at 1. To date, the TCC has not provided Circle Ten Council with any additional information regarding these purported claims. Without such information, and certainly prior to the Bar Date, Circle Ten Council is unable to analyze the nature, amount and viability of any such claims.

16.     On September 4, 2020, the TCC sent a second letter to Circle Ten Council (the "September 4 Letter"),[6] (a) stating that the information regarding its assets provided by Circle Ten Council to the BSA to date "fails to satisfy the TCC's due diligence requirements to negotiate a channeling injunction" and (b) requesting that Circle Ten Council immediately produce a vast number of documents in eleven categories, including, for example, Circle Ten Council's troop rosters, virtually all documents related to Circle Ten Council's assets (with no date limiter), and corporate records (e.g., board minutes) dating back to 1950. See September 4 Letter, at 1, 4-7.

17.     On September 29, 2020, the TCC filed the Motion by which the TCC seeks an order authorizing the TCC to obtain a breathtaking range of discovery from Circle Ten Council and

---

[5]     A copy of the July 31 Letter is attached hereto as Exhibit A.

[6]     A copy of the September 4 Letter is attached hereto as Exhibit B.

numerous other Local Councils, including documents and information related to Local Councils' assets, troop and camp rosters, and insurance policies.  See Motion, at ¶ 1, Ex. B, Ex. C.  According to the Motion, "[t]he TCC needs to review and analyze this information so that it can participate in substantive discussions regarding a possible global resolution among the Debtors, TCC, the Local Councils, and the other mediation parties."  Id. at ¶ 1.

**Objection**

*The Motion Violates the Consent Order*

18.    The Motion is a direct assault on this Court's Consent Order.  The Consent Order provides that "[t]he Pending Abuse Actions set forth on Schedule 1 are hereby stayed as to the BSA Related Parties, and any and all further proceedings in the Pending Abuse Actions, *or other actions by the parties thereto in furtherance of their prosecution or defense, are hereby stayed, prohibited and enjoined* …."  Consent Order, at ¶ 3 (emphasis added).  As discussed above, Circle Ten Council is a "BSA Related Party" as defined in the Consent Order.  The phrase "other actions by the parties … in furtherance of the prosecution or defense" includes discovery outside the scope of what is contemplated in the Consent Order.  Otherwise, the narrow exception in paragraph 6 of the Consent Order – permitting "preservation discovery from witnesses determined by mutual agreement of the BSA and the Tort Claimants' Committee and the UCC, or by the Court, to be aging or infirm witnesses" – would be rendered meaningless.  Id. at ¶ 6.

19.    By the Motion, the TCC seeks to make a collateral attack on the discovery process contemplated in the Consent Order in an effort to gain an advantage in plan negotiations with the Debtors and in litigation of the underlying abuse claims.  The TCC's actions in filing the Motion constitute "other actions by the parties [to the Consent Order] in furtherance of their prosecution or defense" and violate the Preliminary Injunction.

***The Motion Should Be Denied Under the Pending Proceeding Rule***

20.    The Motion also should be denied because it seeks impermissible discovery under Bankruptcy Rule 2004 related to matters that are pending before the Court in the Adversary Proceeding.  As the Court explained in <u>Washington Mutual</u>, "[t]he 'pending proceeding' rule states that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 *et seq*., rather than by a [Rule] 2004 examination.'" <u>Washington Mutual</u>, 408 B.R. at 50 (citations and quotation marks omitted).  "In addition to restricting the use of Rule 2004 examinations when proceedings are pending against the examinee in the bankruptcy court, courts have also recognized that Rule 2004 examinations may be inappropriate where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee." <u>Id.</u> (citations and quotation marks omitted).  In this context, "[t]he primary concern of courts is the use of Rule 2004 examinations to circumvent the safeguards and protections of the Federal Rules of Civil Procedure." <u>Id.</u> at 51 (citation omitted).

21.    In <u>Washington Mutual</u>, Judge Walrath articulated the applicable standard as follows:

> In this Court's view, the proper approach is that of <u>Bennett Funding</u>. Where a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding.

<u>Washington Mutual</u>, 408 B.R. at 51 (citing <u>In re Bennett Funding Grp., Inc.</u>, 203 B.R. 24, 28-29 (Bankr. N.D.N.Y. 1996)).

22.    The discovery sought by the TCC in the Motion clearly relates to the pending Adversary Proceeding, as it seeks discovery of substantially similar categories of information and

documents listed in the recitals to the Consent Order.  The recitals set forth in the Consent Order provide that the TCC and the Creditors' Committee "have indicated their belief that achieving the purposes of the injunction sought by the Debtors' instant Complaint requires, *inter alia*, production of relevant information," including, among other things:  (a) "financial and other information regarding each of the BSA Related Parties …  such as balance sheets, income statements, lists of property and assets …;" (b) "an insurance coverage chart (e.g., 1950-2020), a list and status of insurance coverage actions, and other insurance information;" (c) "troop rosters;" and (d) "data regarding transfers of property between the Debtors and each of the BSA Related Parties and other Chartered Organizations."  Consent Order, at pp.3-4.[7]

23.    Under the pending proceeding rule, the TCC may not use Bankruptcy Rule 2004 to obtain discovery that is already one of the principal matters at issue in the Adversary Proceeding. The TCC, the BSA, and the Creditors' Committee negotiated the language of the Consent Order and agreed to a protocol whereby the BSA would use its "reasonable best efforts" to produce the documents and information sought by both committees in exchange for the committees' consent to the entry of an order granting the Preliminary Injunction.  To the extent that the TCC believes that the BSA's document production to date is inadequate, that dispute should be addressed within the Adversary Proceeding in accordance with the Consent Order and the other agreed orders entered therein.  Given that the discovery requests in the Motion directly relate to the matters before the Court in the Adversary Proceeding, under the pending proceeding rule, the TCC may

---

[7]    The recitals to the Consent Order further state:  "While the BSA is committed to using its reasonable best efforts to produce and provide access to relevant information to support a mediation aimed at achieving a global settlement of abuse claims through a consensual plan of reorganization, it is not, at this time, confirming the availability of or agreeing to produce specific documents or categories of documents." Id. at p.3, n.5.

seek discovery of the matters addressed in the Motion only through the Federal Rules of Civil Procedure, not Bankruptcy Rule 2004.

***The Motion and the Proposed Order Are Procedurally Defective***

24.     Bankruptcy Rule 2004 provides that a subpoena is the exclusive mechanism for enforcing an authorized examination of a non-debtor.   See Fed. R. Bankr. P. 2004(c) ("The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, ***may be compelled as provided in Rule 9016*** for the attendance of a witness at a hearing or trial.") (emphasis added);[8] Simon v. FIA Card Servs. NA, 639 F. App'x 885, 886 n.2 (3d Cir. Feb. 17, 2016) ("The procedure for compelling the attendance of an entity for examination and for compelling the production of documents is governed by Federal Rule of Bankruptcy Procedure 9016, which in turn incorporates the requirements of Federal Rule of Civil Procedure 45 for subpoenas.").   While Bankruptcy Rule 2004(d) authorizes the Court to compel a *debtor's* attendance at a Rule 2004 examination by Court order without issuing a subpoena, it does not authorize the Court to do so with respect to *non-debtors*.   See Fed. R. Bankr. P. 2004(d) (authorizing Court to order the debtor, but not other parties in interest, to appear for a Rule 2004 examination without issuing a subpoena); 9 Collier on Bankruptcy ¶ 2004.02[1]-[2] (16th ed. 2020) (noting same).

25.     Further, Federal Rule of Civil Procedure 45, which Rule 9016 incorporates without change, provides several procedural and substantive protections for targets of subpoenas.   See Fed.

---

[8]     Effective December 1, 2020, the quoted sentence of Bankruptcy Rule 2004(c) will be amended to read: "The attendance of an entity for examination and for the production of documents **or electronically stored information**, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial."

R. Civ. P. 45.  Although a subpoena "must issue from the court where the action is pending," a motion to compel or quash must be filed in "the court for the district where compliance is required." See Fed. R. Civ. P. 45(a)(2), (d)(3).  A subpoena may command a target to appear or produce documents "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  See Fed. R. Civ. P. 45(c).  Because Circle Ten Council is located in Dallas, Texas, a subpoena that required it to comply in Delaware, or anywhere but Texas, must be quashed. See Fed. R. Civ. 45(d)(3)(ii); see also Bankruptcy Rule 9016 Comm. Note (1993) ("Although Rule 7004(d) authorizes nationwide service of process, Rule 45 F.R.Civ.P. limits the subpoena power to the judicial district and places outside the district which are within 100 miles of the place of trial or hearing.").  In order for a subpoena against Circle Ten Council potentially to be enforceable, it would have to require compliance in the Northern District of Texas.  Accordingly, any motions to quash or compel a subpoena issued in accordance with any relief granted pursuant to the Motion would have to be filed in the Northern District of Texas.  And the Northern District of Texas could only transfer such a motion to this Court if Circle Ten Council "consents" or the Northern District of Texas "finds exceptional circumstances."  See Fed. R. Civ. P. 45(f).  Moreover, Rule 45 does not authorize a court to compel non-parties to answer interrogatories.  See, e.g., Taggart v. Wells Fargo Home Mortg., Inc., 2012 U.S. Dist. LEXIS 139469, at *12 (E.D. Pa. Sept. 27, 2012).

26.    The Motion impermissibly requests the Court to modify these Rujle 45 protections for the proposed non-debtor targets, including Circle Ten Council.  *First*, the proposed order includes a provision compelling compliance with the subpoenas before the targets are afforded the opportunity to object or to move to quash.  Compare Proposed Order ¶ 3, with Fed. R. Civ. P. 45(d)(2)(B).  *Second*, the proposed order would require targets to comply with the subpoena in Delaware even though a subpoena can only require compliance "within 100 miles of where the

person resides, is employed, or regularly transacts business in person." <u>Compare</u> Proposed Order ¶ 3, <u>with</u> Fed. R. Civ. P. 45(c)(1)(A) <u>and</u> 45(c)(2)(A). *Third*, the Motion seeks authorization to take discovery (<u>i.e.</u>, interrogatories) that Rule 45 does not authorize. <u>Compare</u> Proposed Discovery Requests at 6-7, <u>with</u> Fed. R. Civ. P. 45(a)(1)(B)-(D) (authorizing only deposition and document requests). *Finally*, the proposed order purports to authorize this Court to resolve "discovery disputes" regarding the subpoenas even though Rule 45 requires those disputes to be resolved by the Court "where compliance is required." <u>Compare</u> Proposed Order ¶ 5, <u>with</u> Fed. R. Civ. P. 45(d)(3) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena.") <u>and</u> Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena, ***it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances***.") (emphasis added). The Court should deny the Motion for these reasons alone, or modify that requested relief to ensure that all discovery targets, including Circle Ten Council, are afforded the protections to which they are entitled under Federal Rule of Civil Procedure 45.[9]

### *The Motion Is Premature as to Circle Ten Council, a Non-Debtor That Is Not Party to the Mediation and Has Not Determined Whether to Participate in Settlement Negotiations*

27.    Moreover, even if the Motion did not violate this Court's order or could otherwise survive its procedural infirmities, the Motion is premature as to Circle Ten Council and should be denied for that reason as well. The Motion makes clear that the TCC's document requests are premised on the assumption that Circle Ten Council and the other Local Councils will "participate in substantive discussions regarding a possible global resolution among the Debtors, TCC, the

---

[9]    Circle Ten Council reserves all rights under Rule 45 to object to or move to quash any subpoena on any and all grounds if or when one is issued.

Local Councils, and the other mediation parties."[10]  Motion, at ¶ 1.  Circle Ten Council, however,

is not a party to the Mediation and has not yet determined whether it will participate in any

negotiations regarding a potential settlement in these chapter 11 cases.  To make this determination,

at a minimum, Circle Ten Council needs information regarding the nature, amount, and viability

of abuse claims against the Debtors that purportedly implicate Circle Ten Council – information

that the TCC has not provided and that likely will not be available until after the Bar Date.  Until

Circle Ten Council makes that election, no reasonable basis exists to require Circle Ten Council –

*a non-Debtor and a non-participant in these cases* – to engage in wide-ranging and heavily

burdensome discovery regarding hypothetical settlement discussions.

28.     Although Bankruptcy Rule 2004 is broad,[11] and even if it were applicable here, the

Court has considerable discretion to determine whether and to what extent discovery is appropriate

under the particular facts before it.  See Fed. R. Bankr. P. 2004(a) ("On motion of any party in

interest, the court *may* order the examination of any entity.") (emphasis added).  As this Court has

explained, "parties do not have an absolute right to Rule 2004 examinations – the granting of a

Rule 2004 examination is dependent on the discretion of the court.  The rule requires a balancing

of the competing interests of the parties, weighing the relevance of and necessity of the information

---

[10]     See also Motion, at ¶ 21 ("Without the facts in hand, the parties' mediation may stall.  The Restricted Asset Information will help facilitate a possible global resolution because the TCC will be able to assess whether a Local Council is making a substantial contribution that supports a channeling injunction with respect to that Local Council.").

[11]     Bankruptcy Rule 2004 provides, in relevant part:  "The examination of an entity under this rule … may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.  In … a reorganization case under chapter 11 of the Code, … the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan."  Fed. R. Bankr. P. 2004(b).

sought by examination."  In re Millennium Lab Holdings II, LLC, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (internal citations and quotation marks omitted).

29.    The TCC has the burden to show good cause that the discovery it seeks is justified. Millennium, 562 B.R. at 627 ("The party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.") (citation omitted).  "The purpose of the [Rule 2004] examination is to enable the trustee to discover the nature and extent of the *bankruptcy estate*."  In re Washington Mutual, Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009) (citing In re Drexel Burnham Lambert Grp., Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) (emphasis added).  In Washington Mutual, Judge Walrath explained that "[t]here are, however, limits to the use of Rule 2004 examinations.  It may not be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry."  Id. (internal citations and quotation marks omitted).

30.    Here, the Court should exercise its discretion and deny the Motion as to Circle Ten Council, because the discovery the TCC seeks is "not relevant to the basic inquiry" of enabling the debtor to ascertain the nature and extent of the BSA's estate to enable it to formulate a plan.  Circle Ten Council is a separate corporation from the BSA, with its own articles of incorporation, bylaws, directors, members, donors and assets.  As a Texas nonprofit corporation, Circle Ten Council also has obligations to its creditors and donors under Texas law.

31.    Circle Ten Council's assets do not make up any portion of the Debtors' estates, and the TCC has not alleged that substantive consolidation or veil piercing is warranted here (which it is not).  Indeed, the TCC acknowledges that Local Council assets are not part of the Debtors' estates by arguing that the TCC seeks to discover the amount of the Local Councils' assets to assess what portion of those assets can be contributed to the Debtors' estates in a hypothetical settlement.

Without an argument that the Local Councils are in possession of estate assets, the TCC tries to meet its burden by layering on additional hypotheticals, asserting that the BSA has a "reversionary" interest in Local Council assets, based on a provision in the BSA's bylaws purporting to impose a "constructive trust" over the assets of a Local Council whose charter is revoked or not renewed. See Motion, at ¶ 21; Charter & Bylaws of the Boy Scouts of America (2019) (the "BSA Bylaws"), attached hereto as Exhibit C, at Art. VI, cl. 2.

32.    While there are numerous infirmities with respect to the TCC's assertions, it is not necessary to address those infirmities here.  The BSA renewed Circle Ten Council's charter in June 2020 and has never indicated that it intends to, or is even considering, revoking Circle Ten Council's charter.  Thus, the TCC's conclusory assertion that, upon charter revocation, a Local Council's assets would simply "revert" to the BSA (which is uncertain at best) is far too thin a reed to support wide-ranging discovery of a non-debtor Local Council that is not a party to the Mediation or settlement negotiations.

33.    The TCC also attempts to manufacture cause for imposing Rule 2004 discovery on the Local Councils by asserting that (a) "the BSA *may* have claims against the Local Councils" in connection with the BSA's insurance program or its pension plan or that a Local Council "*may* have received fraudulent transfers" and (b) Local Councils *may* have direct liability to "survivors or BSA's other creditors."  Motion, at ¶ 21 (emphasis added).  These wholly unsupported assertions do not warrant Rule 2004 discovery.  *First*, the BSA has not asserted that it has any claims against Circle Ten Council or intimated that any fraudulent transfer claims against Circle Ten Council exist.  Even if such claims had been asserted (which they have not), the TCC offers no explanation of why it – rather than the BSA – would be entitled to Rule 2004 discovery regarding such claims. *Second*, the TCC's mere speculation that Circle Ten Council might have direct liability of an

unspecified nature to equally unspecified creditors of the BSA is insufficient to justify Rule 2004 discovery.

34.     As this Court has explained in <u>Millennium</u>, these are not appropriate topics for Rule 2004 discovery:

> As for movants' desire to identify third parties [in addition to the debtor] who may also be liable to them, that, quite simply is neither this court's concern nor the purpose of Rule 2004.  No matter how artfully one tries to disguise the requested examinations, by dressing them up in the robes of bankruptcy administration, their real purpose is to identify another entity movants might be able to collect from, and whether those efforts would have any impact on the bankruptcy estate is of no real concern to them.  Movants understandably want to [*sic*] their money, but that does not justify turning a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors.  Movants have other tools and other fora which they can use to investigate their rights against third parties and to collect the amounts they are owed.  They should use them and not Rule 2004.

<u>Millennium</u>, 562 B.R. at 628 (quoting <u>In re J&R Trucking, Inc.</u>, 431 B.R. 818, 822-23 (Bankr. N.D. Ind. 2010)) (alterations in original).

## <u>Conclusion</u>

35.     For all of the reasons set forth herein, Circle Ten Council respectfully requests that the Court (a) deny the Motion as to Circle Ten Council and (b) grant such other and further relief to Circle Ten Council as the Court may deem proper.

Dated:   October 7, 2020
         Wilmington, Delaware

Respectfully submitted,

*/s/ William P. Bowden*
William P. Bowden (DE Bar No. 2553)
**ASHBY & GEDDES**
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: (302) 654-1888
Facsimile:  (302) 654-2067
E-mail:  wbowden@ashbygeddes.com

Heather Lennox (*pro hac vice* pending)
Carl E. Black (*pro hac vice* pending)
Oliver S. Zeltner (*pro hac vice* pending)
**JONES DAY**
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
E-mail:  hlennox@jonesday.com
          ceblack@jonesday.com
          ozeltner@jonesday.com

Matthew C. Corcoran (*pro hac vice* pending)
**JONES DAY**
325 John H. McConnell Boulevard
Columbus, Ohio 43215
Telephone:  (614) 469-3939
Facsimile:  (614) 461-4198
E-mail:  mccorcoran@jonesday.com

Mark W. Rasmussen (*pro hac vice* pending)
Amanda Rush (*pro hac vice* pending)
**JONES DAY**
2727 North Harwood Street
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100
E-mail:  mrasmussen@jonesday.com
          asrush@jonesday.com

***Counsel for Circle Ten Council***