**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 1388** |

**HARTFORD'S OBJECTION TO THE MOTION OF COALITION OF ABUSED
SCOUTS FOR JUSTICE FOR ORDER PERMITTING FILING OF
PROOF OF CLAIM FORMS SIGNED BY AUTHORIZED COUNSEL IN
ACCORDANCE WITH BANKRUPTCY CODE SECTION 501 AND 502,
BANKRUPTCY RULE 3001, AND OFFICIAL FORM 410**

Hartford Accident and Indemnity Company, First State Insurance Company and Twin City

Fire Insurance Company (collectively, "Hartford") respectfully submit this Objection to the

*Motion of Coalition of Abused Scouts for Justice For Order Permitting Filing of Proof of Claim*

*Forms Signed by Authorized Counsel in Accordance With Bankruptcy Code Section 501 and 502,*

*Bankruptcy Rule 3001, and Official Form 410* (Sept. 30, 2020 [D.I. 1388] ("Motion").

The Coalition of Abused Scouts for Justice's ("Coalition") Motion seeks to modify the bar

date order to permit the attorneys of abuse claimants, rather than the claimants themselves, to sign

the proof of claims forms.  This is really a motion for reconsideration.  The Bar Date order was

thoroughly disputed and negotiated among the parties in interest, including the Debtors, the

Official Tort Claimants' Committee ("Committee"), the Future Claims Representative, the *ad hoc*

committee of local councils and the insurers.  All interests – including those of each of the more

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

than 28,000 claimants the Coalition purports to represent – were adequately represented.  And the Coalition presents no change in fact or law that warrants reconsideration of the Bar Date Order. Rather, the Coalition's real motive, no doubt, is to generate as many claim filings as possible while trying to protect them from legitimate scrutiny.  There is a reason that requiring claimant signatures is warranted particularly where, as here, the Coalition has touted an unprecedented explosion of claims.  Hartford and other parties in interest are entitled to inquire into the *bona fides* of these claims.  Insulating the claims from that investigation is not a valid basis for revisiting the Bar Date Order.  The Court accordingly should deny the Motion.

## **BACKGROUND**

1.      On the petition date, Debtors filed the *Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, For Authority to (I) Establish the Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of the Bar Date and Other Important Information to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse Survivors* (Feb. 18, 2020) [D.I. 18] (the "Bar Date Motion").  Among other things, the Bar Date Motion sought entry of an Order setting a bar date for filing abuse claims, governing the form of notice that would be provided to abuse survivors, and approving use of a specialized claim form by abuse claimants.

2.      On May 4, 2020, Debtors filed a supplement to their Bar Date motion, including a proposed Proof of Claim form applicable to abuse claims.  *Supplement to Debtors' Bar Date Motion* (May 4, 2002) [D.I. 557] (the "Supplement").  That claim form required that the claimant submitting the claim sign the Proof of Claim form (except in cases of death, incapacity or on behalf of a minor claimant).  *See id.* Ex. 2 at 4.

3.      Debtors' motion was contested on all sides.  Both prior to and after filing the Supplement, Debtors engaged in substantial negotiation with parties in interest, including the Committee, over the form of notice and the claim form.

4.      The Committee objected that Debtors' proposed bar date was too soon, Debtors' proposed notice was insufficient, and that there were numerous shortcomings with respect to Debtors' proposed claim form.  *See Objection of the Tort Claimants' Committee to (A) Debtors' Motion For An Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-2, (I) Establishing the Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of the Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors and (B) Supplement to Bar Date Motion* (May 11, 2020) [D.I. 601] (the "TCC Objection").

5.      In its Objection, the Committee argued that the Court should adopt a revised Proof of Claim form that the Committee had prepared, noting that the Committee had "expended a great deal of time and effort developing alternative forms of the bar date notice and the abuse proof of claim geared specifically for survivors of child sexual abuse in Scouting," and that the Committee's form would "enhance rather than discourage potential sexual abuse claimants to participate in these cases by filing a proof of claim. . . ."  *See TCC Objection* at 3.  The Committee further noted that it had retained an expert, Dr. Jon Conte, that the Committee's proposed claim form was designed in consultation with Dr. Conte and that using the Committee's proposed claim form would facilitate the greatest level of participation possible.  *See id.*

6.      The Committee's proposal made substantial changes to the form of the language and to the manner in which questions were posed.  One thing that was not different, however,

was the requirement that the claimant – not their attorney – sign the proof of claim (with the same exceptions as the Debtors' proposed form).  All parties in interest had sufficient notice of the signature requirement in Debtors' proposed form and not only were there no objections to that requirement – the Committee *included* the same requirement in its own proposal designed to facilitate maximum participation.

7.      The Court held an evidentiary hearing and oral argument on the Bar Date Motion on May 18, 2020.  At the hearing, the Court credited the testimony of Dr. Conte and weighed how best to encourage abuse claimants to come forward while also permitting the collection of important claim information.  *See* May 18, 2020 Hearing Tr. at 120-122 (relevant portions attached as **Exhibit 1**).  Once again, there was no objection to the signature requirement.  Nor did any individual claimant (or any other party in interest) raise such an objection.

8.      On May 26, 2020, the Court entered the Bar Date order.  *See Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-2, (I) Establishing the Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of the Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* (May 26, 2020) [D.I. 695] ("Bar Date Order").  Consistent with all sides' submissions, the Bar Date order approves the use of a specialized claim form that requires the signature of the claimant, rather than the attorney.

9.      For the next four months, neither the Coalition nor any of its members sought reconsideration of the Bar Date Order or raised any concerns that the proof of claim form, created any hardship whatsoever.

## **ARGUMENT**

10.     The Coalition's Motion is a thinly-veiled request that the Court reconsider the terms of the Bar Date Order and permit the Coalition to raise objections that its members could have raised earlier, but failed to do so.[2]  That request is untimely, but in any event the Coalition presents no valid grounds for this Court to reconsider its ruling.  Rather, this Motion is simply another extension of the litigation tactics that the Coalition has employed over the past several months to fuel the explosion in claims that has been reported in this case.

11.     By running up the claim count, the Coalition intends to artificially drive up the price of resolution while taking control of the bankruptcy case.  Timothy Kosnoff of Kosnoff Law -- one of the Coalition's "representatives" -- explained to his colleagues (and, accidentally, to the Committee) that the Coalition strategy was about driving the marketing campaign to recruit new claims, not preparing legitimate proofs of claim for filing:

> It means we relax, *keep focused on our marketing and media efforts going full tilt in to Nov.*, chill and enjoy our summer and evaluate in the fall.  *We have the luxury of doing nothing*.

Exhibit 1 to *Notice of Filing of Exhibit In Support of the Objection of the Tort Claimants' Committee to Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* (Sep. 8, 2020) [D.I. 1285-1] (emphasis added).  The goal of those marketing efforts was to recruit as many claims as possible, so that the Coalition

---

[2]     As a preliminary matter, Hartford is concerned that the so-called Coalition should not even be recognized to bring this Motion before the Court.  Many of the parties in interest in these cases continue to be concerned as to whether the Coalition has properly complied with its disclosure obligations under Rule 2019.  There has been no identification of who are the Coalition's current members, nor who is authorized to make decisions on its behalf.  Moreover, on October 2, 2020, counsel provided Debtors with a revised list of Coalition "representatives," composed of a list of ten law firms, some of which were previously associated with the Coalition and some of which were not.  It is unclear what role or decision making authority these firms have as Coalition "representatives," and it is unclear on whose behalf the Coalition is speaking.  These issues should be addressed before the Coalition is permitted to argue the substance of its motion.

could exercise control over the case.  As Mr. Kosnoff put it: "They are wasting their time talking to the TCC.  Here is the message:  We control 80% of the claims, i.e., our coalition controls the case."  *See id.*

12.    For several months, firms that are or that have been part of the Coalition engaged in widespread and potentially misleading advertising, ranging from stating that there is already a $1.5 billion fund to pay claimants to incorrectly stating that claims can be filed anonymously. *See Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* (Aug. 25, 2020) [D.I. 1145].

13.    Following multiple hearings on Debtors' Motion to Supplement the Bar Date Order, some of the Coalition's member firms agreed to the terms of a supplemental order mandating that they withdraw certain inaccurate advertisements.  *See Supplemental Order to Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of the Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* ¶ 10 (Sept. 16, 2020) [D.I. 1331] ("Supplemental Bar Date Order").

14.    The Supplemental Bar Date Order addresses the issue of ongoing misleading advertisements, but it does not address the filings of illegitimate claims that the Coalition may have already recruited.  The motivating principle for this Motion is ensuring that all such claims can be filed.  Allowing attorneys to execute the claim forms permits them to craft responses that "plead around" potential defenses (such as statutes of limitation) and avoid providing meaningful

information that is necessary for the Debtors, the insurers and other parties in interest from evaluating the claims.

15.     Equally important, it permits a claimant to assert a tort claim without attesting to the facts of the claim under oath.  That is particularly important here.  An uptick in filings is normal in the context of mass tort bankruptcy cases, but the Coalition boasts that its representative firms alone assert more than 28,000 claims -- over sixteen times as many as the number of known pre-petition claims.[3]  There is no basis in any past case for an increase of such a magnitude and, at a minimum, it calls into doubt whether many of the claims are legitimate.

16.     Abuse claim holders in this case, will ask the parties in interest to assume that their claims should be treated as valid for purposes of determining the value of the trust that will be necessary to fund a consensual plan.  But statements made not under oath, but by lawyers with no direct knowledge, are not evidence and are not accorded deference as such.  Indeed, courts do not permit individuals to testify absent an oath or affirmation that conveys the need to testify accurately precisely because that affirmation impresses the obligation to be truthful.  In the absence of statements from the claimant, under oath, the proofs of claim cannot be credited and it will be impossible to assign values to the claims, even in the aggregate.

17.     That is precisely why it is critical that the Bar Date Order should not be modified here.  The Bar Date Order was the subject of intense negotiation and, where issues could not be

---

[3]     Other sexual-abuse related bankruptcy cases have not seen anything near the exponential increase in the number of claims witnessed here.  For example, in the Roman Catholic Archbishop of Portland Oregon bankruptcy case, the debtor had over 200 historical claims at the time of its bankruptcy filing; 137 claims were filed in the bankruptcy case.  *See Report of Hamilton, Rabinovitz & Alschuler, Inc. on Estimated Number and Amount of Future Claims* at 4 (May 23, 2006) [D.I. 3673], *In re Roman Catholic Archbishop of Portland in Oregon*, Case No. 04-37154 (D. Bankr. Or.).  The Catholic Bishop of Spokane had 58 historical claims at the time of its bankruptcy filing and resolved 150 claims as part of its bankruptcy proceeding.  *See Motion for Order Fixing New Time for Filing Proofs of Claim; Approving Claim Forms; and Approving Manner and Form of Notice* at 7 (May 16, 2005) [D.I. 446], In *re Catholic Bishop of Spokane*, Case No. 04-08822 (E.D. Bankr. Wash.) and *see* http://www.bishop-accountability.org/settlements/.

resolved consensually, by the Court following an evidentiary hearing. The issue of claimant signatures is critical to Hartford (and others), and undoubtedly would have been the subject of additional argument, and likely evidence as well, had a dispute been properly raised. All parties in interest were given the opportunity to appear and be heard. And the Committee represented the interests of the claimants in arguing for the Proof of Claim form that was in the claimants' best interests. Accordingly, the Coalition's suggestion that its members were not represented or that the Bar Date Order is somehow lacking in due process because it modifies the proof of claim form without an opportunity to be heard misses the mark. *See Motion* at 13-14.

18.    In any event, the Coalition has made no showing that it is entitled to reconsideration. Reconsideration of this Court's prior rulings is subject to Rule 59(e) of the Federal Rules of Civil Procedure, incorporated here pursuant to Bankruptcy Rule 9023. *See In re W.R. Grace & Co.,* 398 B.R. 368, 372 (D. Del. 2008) (citing *Max's Seafood Café by Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999)); *In Re Conex Holdings, LLC,* 524 B.R. 55, 58 (Bankr. D. Del. 2005). The claimants that form the Coalition (and their attorneys) have been on notice of the Bar Date Order – including the proof of claim form – for more than four months.[4] Under Rule 59(e), a motion for a new hearing must be made within twenty-eight days of entry of the final order. It is undisputed that the Coalition's eleventh-hour attempt to change the rules for filing claims does not meet that standard.

19.    Moreover, the Motion does not satisfy the requirements for reconsideration. Under Rule 59(e), reconsideration "may be granted where (i) there has been an intervening change in controlling law; (ii) new evidence has become available; or (iii) there is a need to prevent manifest injustice or to correct a clear error of law or fact." *See In re Conex Holdings,*

---

[4]    Indeed, the advertising blitz by many of the Coalition representative firms confirms that they were well aware of the bar date.

524 B.R. at 58 (*citing In re W.R. Grace*, 398 B.R. at 372).  Here, the Coalition does not contend that there has been any intervening change in the law.  Nor are either of the other conditions satisfied here.

20.    The Coalition's reference to the continuing Covid pandemic is unavailing here. *See Motion* at 2-3, 7-8.  The Covid pandemic is not "new" evidence; one rationale that the Committee asserted in its objection for rejecting Debtors' proposed date was that claimants may need extra time, in light of the pandemic, to come forward to assert their claims.  *See TCC Objection* at 2.  And the Committee was, in fact, successful in moving the bar date back, from Debtors' original proposal from October 6, 2020 to November 16, 2020.  *See Bar Date Order* at 6.

21.    More important, the Coalition's argument is based entirely on alleged, anecdotal hardships that are entirely unsupported by any evidence of hardship – no declaration, no witness, nothing of any sort – that results here from requiring the claimant's signature.  The Coalition alleges that claim forms cannot be signed by claimants and sent by mail because of complications arising from Covid.  *Motion* at 7.  But there is no reason a claimant cannot sign and mail a claim form just as he or she would a paper ballot.  Indeed, the Coalition concedes that "hard copy mail is in some cases feasible as an alternative to electronic signature."  *Id.* at 8.

22.    Moreover, in those cases (if any) where regular mail is inadequate, BSA's notice scheme has provided claimants with multiple alternative avenues for filing their claims.  In accordance with the Bar Date Order, BSA has set up a website that allows any claimant with a computer and internet access to sign and file their claim directly on-line.  *Bar Date Order* at 7.

23.    For claimants that prefer to have their attorneys file their claims, rather than using BSA's website themselves, documents can be signed electronically and then sent to counsel via

e-mail.  Hartford does not oppose the request, by the Committee, to clarify that such properly authenticated electronic signatures are consistent with the Bar Date Order and the approved proof of claim form.

24.    The Coalition's only objection to these alternatives is that some survivors' only access to the internet is "through local libraries that have been closed to prevent community spread" of Covid.  *Motion* at 8.  The Coalition's Motion offers no evidence of how many abuse claimants have such a limitation.  But even those claimants that truly have no computer access are not prevented from reviewing and signing claim forms.  Electronic signature applications, such as DocuSign, are available for mobile platforms, meaning that anyone with a tablet or even a smart phone can sign their proof of claim in a timely manner.

25.    In other words, anyone with access to (i) a computer and printer, (ii) the internet, or (iii) a smart phone has access to at least one mechanism (if not more) to ensure that their claim is filed timely.  The Coalition has not offered any evidence that claimants cannot avail themselves of any of these options.  No claimant is required to "risk infection" to file a proof of claim, as the Coalition baselessly suggests.

26.    The only plausible explanation for the Motion is that the Coalition is seeking permission to harvest and submit for payment many new additional claims where the claimant may be unwilling, under penalty of perjury, to swear to facts sufficient to state a claim against Debtors.  There is no more appropriate case for requiring claimant signatures than here, where there is an unexpected (and unexplainable) increase in the number of claims, coupled with evidence that certain plaintiffs' firms have spent considerable energy harvesting claims without regard to their legitimacy.  In the absence of a signature from the claimant, made under penalty of perjury, the proof of claim form here is nothing more than allegations by the lawyers,

unsupported by any indicia of reliability.  Hartford (and likely other insurers as well) will not accept attorney allegations as a substitute for sworn statements in evaluating the proofs of claim and their potential value.

## **CONCLUSION**

Hartford respectfully requests that the Court deny the Coalition's Motion and that the Bar Date Order remain in place in the form that this Court entered.

Date:  October 9, 2020
  Wilmington, Delaware

BAYARD, P.A.

*/s/ Gregory J. Flasser*
Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395
Email:  efay@bayardlaw.com
      gflasser@bayardlaw.com

- and -

James P. Ruggeri (admitted *pro hac vice*)
Joshua D. Weinberg (admitted *pro hac vice*)
Abigail W. Williams (admitted *pro hac vice*)
Shipman & Goodwin LLP
1875 K Street, NW, Suite 600
Washington, DC 20003
Tel:  (202) 469-7750
Fax:  (202) 469-7751

*Attorneys for First State Insurance Company,*
*Hartford Accident and Indemnity Company and*
*Twin City Fire Insurance Company*