## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC[1]<br><br>Debtors | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 695, 1388**<br>**Hearing Date: Oct. 14, 2020 at 10:00 a.m.** |

### CENTURY'S OBJECTION TO THE COALITION'S MOTION FOR ORDER PERMITTING FILING OF PROOF OF CLAIM FORMS SIGNED BY AUTHORIZED COUNSEL IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 501 AND 502, BANKRUPTCY RULE 3001, AND OFFICIAL FORM 410

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311). The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ...................................................................................................... 2

The TCC and FCR agreed that claimants must sign
the Proof of Claim Form. ............................................................................ 2

The Proof of Claim Form proposed by the TCC contained the exact same
signature requirement ................................................................................. 3

The tort claimants' expert, Dr. Conte, supported the Proof of Claim Form
with the signature requirement .................................................................. 4

The Court relied on the requirement that claimants "sign under oath" in
overruling the insurers objections. ............................................................ 4

The Bar Date Order, which included the signature  requirement, was
thoroughly considered ................................................................................ 5

The potential effect of COVID-19 on the claims process was factored into
the Bar Date Order. ..................................................................................... 6

The Coalition law firms were involved in negotiation of the Bar Date
Order and did not object to the claimant signature requirement ............. 6

The critical importance of the signature under oath requirement. .......... 7

ARGUMENT ........................................................................................................... 9

POINT I    THE MOTION SEEKS RECONSIDERATION OF THE BAR DATE
ORDER AND SHOULD BE ASSESSED UNDER THE
APPLICABLE STANDARD ................................................................ 9

POINT II   THE CLAIMANT SIGNATURE IS AN ESSENTIAL PROTECTION ...... 10

A.    Sworn Statements from Claimants Are Particularly Important
in Mass Tort Cases ................................................................... 10

B.    The Coalition's Proposed Order Would Unwind a Bargain That
Was Struck with Extensive Negotiation ................................... 11

POINT III  THE COALITION POINTS TO NO NEW FACTS OR CHANGED
CIRCUMSTANCES THAT REQUIRE ALTERING THE BAR
DATE ORDER ................................................................................. 12

POINT IV   THE COALITION POINTS TO NO CLEAR LEGAL ERROR IN
THE BAR DATE ORDER ................................................................. 14

A.    The Court Had Authority Under the Federal Rules of
Bankruptcy to Deviate from the Official Form and Issue This
Bar Date Order .......................................................................... 14

# TABLE OF CONTENTS
(continued)

Page

B.    The Coalition Has Not Provided Evidence of Its Firms' Express Authority to Sign Proofs of Claim on Their Clients' Behalf. ............................................................................................ 15

POINT V  ALL PROSPECTIVE CLAIMANTS WERE  REPRESENTED IN CONNECTION WITH THE BAR DATE MOTION  AND THERE WAS ADEQUATE NOTICE ...................................................... 16

A.    The TCC Represents the Interests of All Tort Claimants ................. 16

B.    Coalition Law Firms Were on Actual or Constructive Notice of the Bar Date Process ...................................................................... 16

C.    The Bar Date Order Treats All Claimants Equally and Does Not Prejudice Abuse Claimants ....................................................... 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.H. Robins Co.*,
  862 F.2d 1092 (4th Cir. 1988) ........................................................................14

*In re Archdiocese of New Orleans*,
  Case No. 20-10846 (E.D. La.) ........................................................................15

*In re Diocese of Harrisburg*,
  Case No. 1:20-bk-00599 (M.D. Pa.) ...............................................................14

*In re Eagle-Picher Indus., Inc.*,
  158 B.R. 713 (Bankr. S.D. Ohio 1993) ...........................................................14

*Harsco Corp. v. Zlotnicki*,
  779 F.2d 906 (3d Cir. 1985) ..............................................................................9

*In re Haskell-Dawes, Inc.*,
  188 B.R. 515 (Bankr. E.D. Pa. 1995) ..............................................................16

*Max's Seafood Café by Lou Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) ........................................................................9, 12

*Satterfield v. Consol Pennsylvania Coal Co.*,
  No. CIV.A. 03-1312, 2006 WL 931682 (W.D. Pa. Apr. 11, 2006) ...................9

*In re W.R. Grace & Co.*,
  366 B.R. 302 (Bankr. D. Del. 2007), *aff'd sub nom. Mission Towers v. Grace*,
  No. CIV.A. 07-287, 2007 WL 4333817 (D. Del. Dec. 6, 2007), *aff'd sub nom.*
  *In re W.R. Grace & Co.*, 316 F. App'x 134 (3d Cir. 2009) ...........................15

**Statutes**

18 U.S.C. § 152 ....................................................................................................4

18 U.S.C. § 157 ....................................................................................................4

18 U.S.C. § 3571 ..................................................................................................4

**Rules**

Fed. R. Bankr. P. 3001(a) ..................................................................................14

Fed. R. Bankr. P. 3001(b) ..................................................................................14

Fed. R. Bankr. P. 9009 .......................................................................................14

The Insurers listed in the signature block below (collectively, "Century") hereby object to the motion filed by the group calling itself the Coalition of Abused Scouts for Justice (the "Coalition") requesting that the Court reconsider its Bar Date Order, signed on May 26, 2020. [D.I. 695].

## PRELIMINARY STATEMENT

The Coalition seeks to have the Court reconsider a Bar Date Order issued four months ago and, in the process, remove the requirement that claimants sign the proofs of claim under oath, which the Court relied upon in approving the Proof of Claim Form. This change would not "amend" the Bar Date Order but would affirmatively change a critical term and essential protection that was part of the pitch to the Court on why it should accept the Proof of Claim Form and enter the Order.

The change the Coalition seeks would drastically alter the proofs of claim that will be filed in these cases. The Claim Form now asks claimants to swear, under penalty of perjury, that information they have personal knowledge of is true and correct. For an attorney without personal knowledge to swear to the same statements eviscerates any protection that was afforded by the signature requirement.

The Coalition, which by its Motion effectively seeks reconsideration of the Bar Date Order, points to no error of law or fact that would require the Court to make such a drastic change at such a late stage. The ongoing COVID-19 pandemic and any alleged difficulty for claimants of filling out the form are not new elements, and the Court heard arguments on and properly weighed each of these factors. The parties and the Court were well aware of COVID-19 at the time. And the impact of the Bar Date Order and the Proof of Claim Forms were issues that were heavily briefed and argued before the Court, with the Tort Claimants' Committee (TCC) (which itself proposed the Proof of Claim Form language the Coalition

1

objects to) working with an expert to ensure that the claim form was sensitive to survivors and would not discourage claimants from coming forward.

As a matter of law, the Court indisputably has authority to alter Official Forms, including Official Form 410, and nothing in the Bankruptcy Rules prohibits the language the Court adopted in either its Order or the Proof of Claim Form.

The Coalition's tortured Due Process argument is equally meritless.  This Court has already found that notice of the motion was adequate.  The interests of all claimants were and have been represented by the official Tort Claimants' Committee appointed by the U.S. Trustee. The TCC was heavily involved in forming the final Bar Date Order.  The Coalition, far from being ignorant of these negotiations, had several of its founding law firms directly involved in these negotiations through their (now terminated) representation of members of the TCC.

In short, the Coalition's Motion points to no clear error of fact or law, much less one that results in manifest injustice to any of the constituents the Coalition purports to represent, and they have not provided the Court with any other reason it must, or should, reconsider its prior Order.

## BACKGROUND

### *The TCC and FCR agreed that claimants must sign the Proof of Claim Form.*

The Bar Date Order and Proof of Claim Form were thoroughly negotiated by the TCC, FCR, and Debtors with the tort claimants having the advice of an expert hired by the TCC.  The Proof of Claim Form and Order that they agreed upon and which the Court entered unambiguously provides: "***For this claim to be valid, the Sexual Abuse Survivor must sign this form***." [2]  The only exception to the personal signature requirement is if the claimant is "deceased

---

[2]    D.I. 695-7 at 1 (emphasis added).

or incapacitated" or a "minor."[3]  The Proof of Claim Form and Bar Date Order are crystal clear in this regard.

The issues concerning the Proof of Claim Form were extensively briefed and argued.[4] Ultimately, after four different proposed forms of order, six proposed proof of claim forms, and briefs from the Debtors and the TCC, the Court spent more than three hours at the May 18, 2020 resolving various disputes related thereto.  At no point did the TCC or FCR object to the signature requirement.

### The Proof of Claim Form proposed by the TCC contained the exact same signature requirement.

The TCC was heavily involved in the formulation of the Proof of Claim Form: their negotiations with the Debtors regarding the claim form and Bar Date Order began prepetition and continued through the first three months of this case.[5]  It filed a brief objecting to the Debtors' proposed form of order and Proof of Claim Form in early May,[6] and proposed their own form.  The TCC's form ***proposed*** the exact wording of claimant signature requirement that the Court adopted and the Coalition now objects to.[7]  Neither the TCC's brief nor its proposed modifications challenged the language in the proposed Bar Date Order that requires proofs of claim to be signed by each individual claimant.

---

[3]   In the case of a deceased or incapacitated individual or a minor, "Any form signed by a representative or legal guardian <u>must</u> attach documentation establishing such person's authority to sign this form for the Sexual Abuse Survivor."  *Id.* at 12.

[4]   D.I. 1331 ¶ 4.

[5]   May 18, 2020 Hr'g Tr. at 27:4–11 ("The abuse survivors had communicated to the debtors prior to the commencement of the Chapter 11 cases that they felt like a bar date was essential and that it would be essential to advancing negotiations around a global resolution of the bankruptcy cases.  So in light of those discussions, we wanted to put a bar date on the table immediately.").

[6]   D.I. 601 (TCC Objection to Debtors' Bar Date Motion).

[7]   *Compare* D.I. 601-1 (TCC's Proposed Proof of Claim Form), *with* D.I. 695-7 (Bar Date Order).

***The tort claimants' expert, Dr. Conte,***
***supported the Proof of Claim Form with***
***the signature requirement.***

The TCC and the Debtors retained experts for the specific purpose of crafting the Bar

Date Order as well as the notices and claim forms that were to be directed at abuse survivors.[8]

The TCC's expert, Dr. Conte, was hired specifically to ensure that the Proof of Claim Form was

sensitive to the trauma of claimants[9] with the goal to create a form that was easy for claimants to

fill out.[10]  Dr. Conte's 22-page declaration identified issues with the Debtors' proposed Order

and Proof of Claim, but he nowhere voiced any concern about the signature requirement.[11]  To

the contrary, Dr. Conte helped the TCC craft their proposed Proof of Claim Form, which

included the signature requirement that the Court ultimately adopted.[12]

***The Court relied on the requirement***
***that claimants "sign under oath" in overruling***
***the insurers objections.***

The claim form requires the signor to affirm "under penalty of perjury" that they have

"examined the information in this Sexual Abuse Survivor Proof of Claim and have a reasonable

belief that the information is true and correct."[13]  This requirement is accompanied by a

statement that the "Penalty for presenting a fraudulent claim is a fine of up to $500,000 or

imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571."[14]  Thus, claimants

themselves affirm, with their signature, the veracity of information that is within their personal

---

[8]  D.I. 556 (Declaration of BSA Expert Shannon Wheatman), D.I. 631 (Supplemental Declaration of Shannon Wheatman), D.I. 601-6 (Declaration of TCC Expert Jon Conte) D.I. 611 (Supplemental Declaration of TCC Expert Jon Conte).

[9]  *Id.* at ¶ 9.

[10]  May 18, 2020 Hr'g Tr. at 16:12–17:23.

[11]  *See* D.I. 601-6.

[12]  D.I. 601 at 3

[13]  D.I. 695-7 at 12.

[14]  *Id.*

knowledge.  Were an attorney to fill out this form, the import of this affirmation would be completely different—an attorney's reasonable belief about what happened to another person, in the absence of personal knowledge, is a much different standard.

At the hearing, the Debtors pointed the Court to the fact that the form "is subject to the penalty of perjury" as an assurance of the veracity of claims submitted via the form.[15]  The Debtors went on explain, "for those that fill out [the form] electronically, there will be a pop-up box indicating that the form is truthful."[16]

In denying the insurers' objections to the Proof of Claim Form and Bar Date Order, the Court noted: "My basic view of a proof of claim form is if I can look at it and understand what it is the claimant has alleged . . . *and if its signed under oath* and, otherwise, meets the requirements I think that's a valid proof of claim."[17]  The Court then signed the Bar Date Order and Proof of Claim Form requiring claimant signatures.

### *The Bar Date Order, which included the signature requirement, was thoroughly considered.*

The Court itself noted, in a subsequent order, the extent to which the Bar Date order was thoroughly considered and all interests were represented:

> The Bar Date Order was the subject of significant negotiation among major constituencies in this case, including Debtors, the official committees, the Future Claims Representative and certain insurance companies. It was entered after an evidentiary hearing at which the Court took evidence (by way of declaration and live testimony) from: (i) Shannon R. Wheatman, Ph.D a consultant who specializes in design and implementation of class action and bankruptcy notification programs, including the form and content of notices and (ii) Jon R. Conte, Ph.D, Director of the Joshua Center on Child Sexual Abuse at the University of Washington in Seattle, Washington who opined, among other things,

---

[15]  May 18, 2020 Hr'g Tr. at 42:21–22.

[16]  *Id.* at 42:22–24.

[17]  *Id.* at 70: 9-14 (emphasis added).

regarding whether the proposed forms were sensitive to and likely to
generate responses from child Sexual Abuse Survivors.[18]

### *The potential effect of COVID-19 on the claims process was factored into the Bar Date Order.*

The parties and the Court, as reflected in the TCC's brief on the Bar Date, were all aware

of the COVID-19 pandemic and factored in how it could impact that the claim filing process.[19]

The ongoing effect of COVID-19 on the Debtors' business has discussed throughout this case, as

the pandemic has dragged on.[20]  And in May, when this Order was being debated, disruption

from the pandemic known and factored into the Bar Date Order.

### *The Coalition law firms were involved in negotiation of the Bar Date Order and did not object to the claimant signature requirement.*

The firms that are behind the entity now calling itself the "Coalition" have been involved

with this case since the outset.  Indeed, the firms that created the Coalition were *directly* involved

in the TCC, representing two of the claimants who were appointed by the U.S. Trustee on March

14, 2020.[21]  The Debtors' Affidavit of Service reflects that Andrews & Thornton, a Coalition

member firm was served with the Debtors' May 4, 2020 Supplemental Bar Date Motion, which

set the hearing date for May 18 and provided that only claimants could sign the proof of claim.[22]

In addition, press reports, going back to the date of the Boy Scouts' initial bankruptcy petition,

---

[18]  *Id.*

[19]  D.I. 601 at 6 (TCC Objection to the Bar Date Motion).

[20]  *See, e.g.*, May 18, 2020 Hr'g Tr. at 147:14–23.

[21]  D.I. 1106 ¶ & n.2 (disclosing that two former clients of Coalition law firms are TCC members); D.I. 1166 Ex. 3 (Andrews & Thornton website, holding out as of August 14, 2020 that an attorney for Andrews & Thornton was "serving on the Tort Claimants' Creditors' Committee"); *id.* Ex. 4 at 000018 (Abused in Scouting website, holding out as of August 14, 2020 "We have a representative on the Torts claimant committee (Abuse Survivors Committee) and will participate in that process throughout the duration of the bankruptcy proceeding.").

[22]  D.I. 581 (Affidavit of Service).

reported that Debtors were seeking a Bar Date Order,[23] which the Coalition member firms noted on their website.

### *The critical importance of the signature under oath requirement.*

After years of advertising by plaintiff firms for claims against BSA, there were 275 known claims pending in the tort system when BSA filed for bankruptcy, and BSA was aware of 1,700 total.[24]  The number of claims exploded with the entry of the Court's order granting presumptive validity to the completion of fifteen question Proof of Claim Form.

The two founders of the Coalition, Timothy Kosnoff and Andrew Van Arsdale, promised through their claim-aggregation campaign "Abused in Scouting" that anyone who filed a proof of claim would not deposed or appear in court.  Respondents were channeled to AIS's website, which steers them to neatly organized pages listing alleged perpetrators and scout groups by location from which information can be cribbed that is sought in the questions posed in the proof of claim form.[25]  There is no indication that, post-petition, respondents are being screened, and it is impossible to meaningfully screen respondents aggregated in this manner and at this pace.[26]

---

[23]  *E.g.*, Declaration of Andrew Kirschenbaum ("Kirschenbaum Decl.") Ex. 1 (Lewis Kamb, *Boy Scouts Bankruptcy Will Cause Ripple Effect Among Abuse Cases in Washington and Across the Nation, Lawyers Say*, Seattle Times (Feb. 18, 2020) https://www.seattletimes.com/seattle-news/boy-scouts-bankruptcy-will-cause-ripple-effect-among-abuse-cases-in-washington-and-across-the-nation-lawyers-say/; *id.* Ex. 2 (Jeff Montgomery, *Boy Scouts of America Driven to Ch. 11 by Sex Abuse Claims* Law360 (Feb. 18, 2020), https://www.law360.com/articles/1244711/boy-scouts-of-america-driven-to-ch-11-by-sex-abuse-claims).

[24]  D.I. 16 ¶ 7.

[25]  D.I. 1165 ¶ 29 (describing a search feature on the Abused in Scouting website that allows users to search by year, name or ID, scouting unit city, scouting unit state, and/or scouting unit number to generate a list of matching units there were and the names of any "confirmed" abusers who were active in that unit at that time).

[26]  Pre-petition, AIS claimed that out of 10,000 claims it screened out nearly 9,000 with insufficient evidence when they were subject to being tested in the tort system.  Yet the group claims now to represent more than the number of claims it had previously screened out.  *See* D.I. 1166 Ex. 21 (Juliana Sukut, *Montana Victims Alleging Sex Abuse in the Boy Scouts Join National Wave of Suits*, Billings Gazette (Nov. 3, 2019)).

The Coalition—a group Messrs. Kosnoff and Van Arsdale founded and retain ties to—now claims to have aggregated an inventory of 28,000 claimants by this method.[27]  They famously are the people behind many of the advertisements the Debtors objected to, including ads that told claimants they could remain anonymous and would never have to be deposed.[28] Reportedly, at least some of these claims are being solicited through direct solicitation, including email and phone campaigns.

The Coalition filed this motion on September 30, 2020.  On October 7, 2020 the United States Trustee filed a response that explicitly took no position on the substantive relief the Coalition seeks.  In the Coalition's October 8 joinder to the TCC's electronic signature motion, the Coalition misconstrues the U.S. Attorney's position:

| Coalition Representation to Court | What UST Filing Actually Says |
|---|---|
| "In addition, The Coalition notes that the U.S. Trustee supports both Motions. (Docket #1424)."[29] | "The claims process will be facilitated by the Court clarifying the signature requirements for the filing of a Sexual Abuse Survivor Proof of Claim as noted in the Coalition Motion. ***The U.S. Trustee takes no position on how the Court should rule.*** Clarification of this issue will aid in the administration of this estate."[30] |

---

[27]   D.I. 1429 ¶ 2.

[28]   D.I. 1331 ¶ 10 (Advertising Order); D.I. 1145-3 (Declaration of Evan Roberts in support of BSA's Advertising Motion, cataloging misleading advertisements); D.I. 1165 ¶ 28.

[29]   D.I. 1450 at 2.

[30]   D.I. 1424 at 6 (emphasis added).

## ARGUMENT

## POINT I

## THE MOTION SEEKS RECONSIDERATION OF THE BAR DATE ORDER AND SHOULD BE ASSESSED UNDER THE APPLICABLE STANDARD

Though their motion is not styled as such, the Coalition's motion is really a motion for reconsideration of the Court's prior order: it seeks to overturn an explicit requirement of the Order.[31]  The Coalition's brief speaks of "amend[ing]" the Bar Date order,[32] but asks for a separate order nullifying an essential protection that was built into Bar Date order.[33]  Courts faced with attempts to relitigate decided issues under the guise of a motions to "[a]lter or [a]mend" prior orders have construed those petitions as motions for reconsideration and applied the relevant Third Circuit standard.  *See Satterfield v. Consol Pennsylvania Coal Co.*, No. CIV.A. 03-1312, 2006 WL 931682, at *1 (W.D. Pa. Apr. 11, 2006).

Courts may only grant motions for reconsideration where necessary to "correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  In seeking the relief it does, the Coalition offers nothing to meet its burden of establishing any of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or prevent a manifest injustice." *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  The Coalition elides the reconsideration standard, likely because it places a burden of proof that they are unable to meet under the circumstances.

---

[31]  D.I. 1388 ¶ 7.

[32]  *Id*.

[33]  D.I. 1388-1.

Specifically, the Coalition does not purport to point to any intervening change in the applicable law or newly discovered evidence.  Nor, as discussed in detail below, can it point to any factual or legal error that results in manifest injustice.

## POINT II

## THE CLAIMANT SIGNATURE IS AN
## ESSENTIAL PROTECTION

### A.  Sworn Statements from Claimants Are Particularly Important
in Mass Tort Cases

It is particularly crucial in the context of a mass tort personal injury case that claims be verified, by the claimant, under penalty of perjury.  The sheer number of claims makes independent verification of the information provided by claimants a practical impossibility— here, it is hard to see how more than a fraction of the claims could be tested in near the same manner that they would be in the tort system.  It is an essential protection that the statements made in the proofs of claim be true, correct, and verified by the person making the claim as such. Anything less than that raises the specter that parties may not rely on the veracity of the claim forms.

The many questions that parties have raised regarding the attorneys who are behind the Coalition and how those attorneys are aggregating these claims should also give the Court pause in authorizing attorney signatures in place of having each claimant attest to the veracity of their claim under oath.  In this case in particular, claims are being aggregated in the context of the possible influence of outside litigation funding groups,[34] dubious and misleading advertising

---

[34]  D.I. 1285-1; Kirschenbaum Decl. Ex. C (Tribeca Capital Group LLC, *Tribeca Capital Group Offers Financial Help to Victims of Boy Scout Abuse*, PRNewswire (Oct. 6, 2020), http://www.prnewswire.com/news-releases/tribeca-capital-group-offers-financial-help-to-victims-of-boy-scout-abuse-301145079.html).

tactics,[35] and call centers that can supply nearly all of the information a claimant would need to fill out a claim form.[36]  Given these concerns about the validity of potentially tens of thousands of claims, there is no reason for the Court to insert further doubt in the claims verification process by deviating from its previous order and permitting someone other than the claimant to sign.

### B.    The Coalition's Proposed Order Would Unwind a Bargain That Was Struck with Extensive Negotiation

As the Court is aware, the Bar Date Order that it ultimately signed was the product of extensive negotiation, debate, and compromise.  Parties in interest—including the TCC and the Future Claims Representative, had a seat at the table.  The center of the debate was how the Order would deal with abuse claimants: what questions they would be required to answer, what effect submitted forms would have.[37]  As a general matter, the TCC pushed for fewer and less specific questions; this was reflected in their proposed Form of Order.[38]  But one assurance the Tort Claimants included was that the less detailed forms they proposed would include the actual claimant's sworn signature.[39]

The Order that the Coalition seeks here would unwind that bargain and remove a significant protection: a signature, under oath, by which *claimants* verify that the facts they allege are true.  The Court noted that claims being filed under oath is an essential prerequisite for

---

[35]  D.I. 1331.

[36]  *See* D.I. 1165 ¶ 29 (describing a search feature on the Abused in Scouting website that allows users to search by year, name or ID, scouting unit city, scouting unit state, and/or scouting unit number to generate a list of matching units there were and the names of any "confirmed" abusers who were active in that unit at that time).

[37]  *See generally* May 18, 2020 Hr'g Tr.

[38]  D.I. 601-1.

[39]  *Id.* (TCC introducing the language "For this claim to be valid, the Sexual Abuse Survivor must sign this form" in its proposed Proof of Claim Form).

a proof of claim.[40]  Claimants have personal knowledge of the events that they are describing in the proof of claim form; their attorneys do not.  Thus the effect of an attorney, who has no personal knowledge, affirming that he or she has "examined the information in this Sexual Abuse Survivor Proof of Claim and ha[s] a reasonable belief that the information is true and correct" is much less significant than a sworn statement from the claimant.[41]  In a case of this magnitude, with tens of thousands of claims have been generated already, removing this requirement would completely alter the parties' expectations by removing the effect of the words "under penalty of perjury" little more than one month out from the bar date.

It would also create confusion among the millions of individuals who have already received notice of the bar date and been advised of the procedures, including the claimant signature requirement, that they must follow to submit a claim.  The Debtors would potentially have to re-notice all of these individuals, otherwise any change to the Order would only benefit the Coalition's constituency.

## POINT III

### THE COALITION POINTS TO NO NEW FACTS OR CHANGED CIRCUMSTANCES THAT REQUIRE ALTERING THE BAR DATE ORDER

The Coalition's brief points to continued disruption from COVID-19 and survivor trauma as reasons for the Court to permit attorney signatures on proofs of claim.  But neither of these issues is new or changed: the current Order and Claim Form take both of these issues into account, and both points were at the forefront of the parties' and the Court's mind when this Order was issued.  Thus the Coalition can point to no "clear error of fact" or "manifest injustice"

---

[40]  May 18, 2020 Hr'g Tr. at 70: 9–14.
[41]  D.I. 695-7 at 12.

associated therewith.  *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

The Coalition also argues that by disallowing attorney signatures, the Court is making the experience of filling out the form unnecessarily traumatic for abuse claimants.  This issue is presented by the Coalition as a new one, but the difficulty associated with filling out the Proof of Claim Form was a major factor in the formation of the Bar Date Order.  The TCC's expert, Dr. Conte, testified that he worked to make the proof of claim form easier to fill out and sensitive to claimants.[42]  The Court carefully considered and weighed Dr. Conte's testimony in its rulings on the Bar Date Motion.[43]

Likewise, the possibility that disruption from the COVID-19 pandemic could "overshadow the claim filing process" was well understood by all parties and the Court.[44]  The TCC pressed for (and got) a later Bar Date because of the pandemic.[45]  It is simply inaccurate to suggest that the Bar Date Order was debated and signed with the assumption that the pandemic was necessarily going to "subside" at some point between May and November.  As the Court is well aware, there has been uncertainty around COVID-19 throughout this case.  The parties' arguments and proposals regarding the procedures provided in the Order were informed by this uncertainty.  The impact of COVID-19 on the claims process is thus not a new or unexpected development.

---

[42]  May 18, 2020 Hr'g Tr. at 16:12–17:23 (affirming that his goal was "to make [filling out the proof of claim] easier, but also sensitive to the experience of [child] victims who are now adult survivors of sexual abuse.").

[43]  May 18, 2020 Hr'g Tr. at 21:4–21, 105:1–7, 121:12–17.

[44]  D.I. 601 at 6 (TCC Objection to the Bar Date Motion).

[45]  *Id.* at 2, 6.

## POINT IV

## THE COALITION POINTS TO
## NO CLEAR LEGAL ERROR
## IN THE BAR DATE ORDER

**A.    The Court Had Authority Under the Federal Rules of Bankruptcy to Deviate from the Official Form and Issue This Bar Date Order**

It is well established that the Court has the authority to authorize modifications to Official Forms.  *See In re A.H. Robins Co.*, 862 F.2d 1092 (4th Cir. 1988); *In re Eagle-Picher Indus., Inc.*, 158 B.R. 713, 716 (Bankr. S.D. Ohio 1993).  Bankruptcy Rule 9009 authorizes Courts to use the forms "with alterations as may be appropriate." Fed. R. Bankr. P. 9009.  Bankruptcy Rule 3001(a) likewise contemplates that a proof of claim form may deviate from the Official Form.  Fed. R. Bankr. P. 3001(a).

The Coalition argues that permitting authorized agents to sign proofs of claim is required by the Bankruptcy Rules, but nothing in the language of Rule 3001(b) *mandates* that the Court accept an attorney's signature in place of the claimant's on a proof of claim.  That Rule provides that "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent . . . ." Fed. R. Bankr. P. 3001(b).  A plain reading of the Rule is that the Court *can* accept a creditor signature *or* an authorized agent's signature, not that it *must*, in all circumstances, accept both. Nor does Official Form 410 mandate the acceptance of an attorney's signature simply by including a check-box option indicating that an attorney may, under certain circumstances, sign the proof of claim form.  *See* Official Bankruptcy Form 410.

Other bankruptcy courts in similar cases have required that claimants themselves sign the proof of claim form, including courts within this circuit.  *In re Diocese of Harrisburg*, Case No. 1:20-bk-00599 (M.D. Pa.) (approving bar date and abuse proof of claim form stating, "To be valid, this proof of claim must: . . . be signed by the sexual abuse claimant, except if that if the

sexual abuse claimant is a minor, incapacitated, or deceased, this sexual abuse proof of claim

may be signed by the sexual abuse claimant's parent, legal guardian, or executor, as

applicable."); *In re Archdiocese of New Orleans*, Case No. 20-10846 (E.D. La.) (approving bar

date and abuse proof of claim form stating, "For this claim to be valid, the Sexual Abuse

Survivor must sign this form. If the Sexual Abuse Survivor is deceased or incapacitated, the form

must be signed by the Sexual Abuse Survivor's representative or the attorney for the Sexual

Abuse Survivor's estate.").  The language in these courts' orders and proofs of claim is

substantially identical to what the Court ordered here.

> **B.**     **The Coalition Has Not Provided Evidence of Its Firms' Express Authority to Sign Proofs of Claim on Their Clients' Behalf**

Further, the majority of the Coalition's firms have provided no evidence that they have

the authority to act as their client's authorized agents.  As used in Rule 3001, "Authorized agent"

means an agent *expressly* authorized by the claimant to fill out the form on their behalf.  *In re*

*W.R. Grace & Co.*, 366 B.R. 302, 307 (Bankr. D. Del. 2007), *aff'd sub nom. Mission Towers v.*

*Grace*, No. CIV.A. 07-287, 2007 WL 4333817 (D. Del. Dec. 6, 2007), *aff'd sub nom. In re W.R.*

*Grace & Co.*, 316 F. App'x 134 (3d Cir. 2009) (disallowing proofs of claim signed by attorney

where claimant had not granted express authority for attorney to sign before bar date).

The Coalition's motion would cover many firms whose retention agreements grant no

such express authority.  Only *two* of the Coalition firms have provided retention agreements

which evidence explicit authority to sign proofs of claim on behalf of their clients; the other

Coalition firms have provided nothing that would demonstrate this authority to sign on behalf of

their hundreds or thousands of clients.[46]  First, given the Coalition's representation that it

---

[46]   *See* D.I. 1429-1.

represents nearly 30,000 claims, individually sorting through and verifying that each attorney

signature was in fact an *authorized* attorney signature after the fact here would be completely

unwieldy.  Second, this begs the question: If many or most attorneys must go back to obtain the

authorization to sign they are required to have under the Rules, what would prevent them from

simply having each client properly execute their proof of claim, in compliance with the Bar Date

Order that has been circulating for more than four months?

**POINT V**

**ALL PROSPECTIVE CLAIMANTS WERE**
**REPRESENTED IN CONNECTION WITH THE BAR DATE MOTION**
**AND THERE WAS ADEQUATE NOTICE**

**A.      The TCC Represents the Interests of All Tort Claimants**

The Coalition suggests that some unidentified subset of the law firms and claimants it

purports to represent were denied notice and opportunity for a hearing before their rights were

impacted that the Bar Date Order.  But, despite these protests, all claimants *were* and have been

represented by the TCC, whose members were appointed by the United States Trustee pursuant

to 11 U.S.C. § 1102 and have a fiduciary obligation to act in the best interest of *all* abuse

claimants, including those purportedly represented by the Coalition.  *See In re Haskell-Dawes,*

*Inc.*, 188 B.R. 515, 522 (Bankr. E.D. Pa. 1995).  One of purposes of having a TCC is for

unknown claimants, who have not yet appeared, to have a representative who is bound to act in

their interest.

**B.      Coalition Law Firms Were on Actual or Constructive Notice of**
**the Bar Date Process**

In granting the Bar Date Order, the Court expressly found that "the Debtors' notice of the

Motion and opportunity for a hearing on the Motion were appropriate under the circumstances

and no other notice need be provided."[47]  The Coalition has offered no evidence that would give the Court grounds to reconsider that finding.

Further, Coalition member firms were, at the time the Bar Date was negotiated, themselves part of the TCC and were advertising that fact.  The Coalition has disclosed that two constituent firms formerly represented Committee members.[48]  The firms / attorneys practicing under the trade name "Abused in Scouting" advertised that they had a representative on the TCC, as did an attorney at Andrews & Thornton.[49]  This belies any notion that the Coalition as a group lacked notice or an opportunity to be heard on this issue.

Of course, a claimant need not have been on the TCC (and a lawyer need not have represented a TCC member) to have been aware of the Debtors' Bar Date Motion.  The Bar Date Motion was reported in the press as part of the Debtors first day filings—including a Seattle Times article, published on February 18, 2020, that quotes Mr. Kosnoff on this issue:

> A motion included in the Boy Scouts' federal bankruptcy case, filed in Delaware, proposes an 80-day "bar date," or deadline, for any further claims to be filed against the BSA.
>
> "What they're proposing is absurd," said Seattle lawyer Tim Kosnoff, whose Abused in Scouting group represents about 2,000 clients, including more than 100 in Washington state. "We'll never agree to it, and I doubt a court will, either."[50]

### C.    The Bar Date Order Treats All Claimants Equally and Does Not Prejudice Abuse Claimants

---

[47]  D.I. 695 at 2.

[48]  D.I. 1106 at 1 n.2.

[49]  *See* D.I. 1166 Ex. 3; *id.* Ex. 4 at 000018.

[50]  Kirschenbaum Decl. Ex. 1 (Lewis Kamb, *Boy Scouts Bankruptcy Will Cause Ripple Effect Among Abuse Cases in Washington and Across the Nation, Lawyers Say*, Seattle Times (Feb. 18, 2020) https://www.seattletimes.com/seattle-news/boy-scouts-bankruptcy-will-cause-ripple-effect-among-abuse-cases-in-washington-and-across-the-nation-lawyers-say/; *id.* Ex. 2 (Jeff Montgomery, *Boy Scouts of America Driven to Ch. 11 by Sex Abuse Claims* Law360 (Feb. 18, 2020), https://www.law360.com/articles/1244711/boy-scouts-of-america-driven-to-ch-11-by-sex-abuse-claims).

Finally, the Coalition argues that the Bar Date Order singles out abuse claimants and subjects them to a higher standard than other claimants.  This is simply false.  The Bar Date Order requires that all *individual* claimants, whether they fill out the Abuse Proof of Claim Form or the General Proof of Claim Form, must themselves sign the proof of claim form.[51]  Non-abuse claimants who are individuals, rather than entities, are not exempted from this requirement.[52] The Bar Date Order thus consistently requires that a claimant in this case, unless that claimant is an entity, deceased or otherwise incapacitated, or a minor, must sign his or her own proof of claim form.[53]

## CONCLUSION

For the foregoing reasons, the Court should deny the Coalition's Motion to alter the Bar Date Order to allow counsel to sign proofs of claim on behalf of their clients.

---

[51] *Id.* ¶¶ 2(c), 4(b).

[52] *Id.* 695 ¶¶ 2(c).

[53] *Id.* ¶¶ 2(c), 4(b).

Dated:  October 9, 2020

Respectfully Submitted,

By:   */s/ Stamatios Stamoulis*
     Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone:    302 999 1540
Facsimile:    302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Janine Panchok-Berry (*pro hac vice*)
Andrew Kirschenbaum (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone:    212 326 2000
Facsimile:    212 326 2061

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America, Westchester Fire Insurance
Company and Westchester Surplus Lines
Insurance Company*