## Exhibit A

## Omnibus Response

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Ref. Docket Nos. 1387, 1388, 1424, 1460, 1463, 1464 & 1465 |

## DEBTORS' OMNIBUS RESPONSE TO (I) MOTION OF COALITION OF ABUSE SCOUTS FOR JUSTICE FOR ORDER PERMITTING FILING OF PROOF OF CLAIM FORMS SIGNED BY AUTHORIZED COUNSEL AND (II) TORT CLAIMANTS' COMMITTEE'S MOTION TO SUPPLEMENT THE CLAIMS BAR DATE ORDER REGARDING THE ELECTRONIC EXECUTION OF ABUSE PROOFS OF CLAIM

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this omnibus response in opposition to the *Motion of Coalition of Abused Scouts for Justice for Order Permitting Filing of Proofs of Claim Forms Signed by Authorized Counsel in Accordance with Bankruptcy Code Sections 501 and 502, Bankruptcy Rule 3001, and Official Form 410* [Docket No. 1388] (the "Coalition Motion")[2] filed by the Coalition of Abused Scouts for Justice (the "Coalition") and in support of *The Tort Claimants' Committee's Motion to Supplement the Claims Bar Date Order Regarding the Electronic Execution of Abuse Proofs of Claim* [Docket No. 1387] (the "TCC Motion") filed by the Official Committee of Tort

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, And 3003-1, for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse Victims* [Docket No. 18] (the "Bar Date Motion") or the order granting the Bar Date Motion [Docket No. 695] (the "Bar Date Order"), as applicable.

Claimants (the "Tort Claimants' Committee"). In support of this response, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Coalition Motion should be denied. The Sexual Abuse Survivor Proof of Claim Form and the Bar Date Order were the subject of extensive arm's length negotiation over more than six weeks among the Debtors, the Tort Claimants' Committee, and other parties in interest. These negotiations occurred at the height of the COVID-19 pandemic. As the Tort Claimants' Committee has stated in filings, the committee's members and its consultant on sexual abuse and expert witness, Dr. Jon Conte, carefully reviewed each and every line of the form to ensure that it was easy to read and could be completed by Sexual Abuse Survivors, with or without the assistance of counsel. Accordingly, the only fiduciary for the interests of Sexual Abuse Survivors—the Tort Claimants' Committee—had input on every aspect of the Sexual Abuse Proof of Claim Form, including its signature requirement. There is therefore no basis to revisit the unambiguous requirement, decided more than four months ago, that the Sexual Abuse Proof of Claim Form be executed by a Sexual Abuse Survivor.

2. The Coalition's arguments that it did not receive sufficient notice of the Bar Date Motion or the contents of the Sexual Abuse Proof of Claim Form are unavailing. Multiple members of the Coalition received notice of the commencement of the bankruptcy case and the hearing on the Bar Date Motion, and several members of the Coalition were involved in the subcommittee of the Tort Claimants' Committee that carefully reviewed the claim form line by line. The structure and contents of the Sexual Abuse Proof of Claim Form are not novel. In particular, the requirement that the claimant—the only person with firsthand knowledge of the abuse underlying the claim—be the person who signs the form has been approved in multiple

chapter 11 cases involving allegations of abuse. To permit attorneys to sign proofs of claim on behalf of creditors is a practice disfavored by courts because of the risks it creates. Here, those risks could not be clearer. Attorneys for Sexual Abuse Survivors are in no position to attest under penalty of perjury to the information contained in the detailed Sexual Abuse Proof of Claim Form.

3. In contrast to the relief requested in the Coalition Motion, which seeks to modify an unambiguous term of the Sexual Abuse Survivor Proof of Claim Form, the TCC Motion seeks to resolve an ambiguity in the Bar Date Order. The Debtors support the narrow relief requested in the TCC Motion, which will clarify that survivors may sign claims through e-signature programs, subject to a certification requirement. The relief requested in the Coalition Motion should be denied and the TCC Motion should be granted.

## ARGUMENT

4. The Sexual Abuse Survivor Proof of Claim Form is a detailed questionnaire that requires the *signatory* to "declare under *penalty of perjury* that the foregoing statements are true and correct." *See* Bar Date Order, Ex. 7 (emphasis added). The signatory must also indicate that they "have examined the information in this Sexual Abuse Survivor Proof of Claim and have a reasonable belief that the information is true and correct." *Id.* Presenting a fraudulent claim is subject to a fine of up to $500,000, imprisonment, or both. 18 U.S.C. §§ 152, 157, 3571. The structure of this lengthy and highly specific questionnaire is in the form of first-person questions directed to Sexual Abuse Survivors—not their counsel. Unlike commercial claims based on a contract, for example, abuse claims are inherently personal and rooted only in the experience of the Sexual Abuse Survivor. For this reason, the Sexual Abuse Survivor Proof of Claim Form must be the sworn statement of the Sexual Abuse Survivor, subject only to narrow exceptions in the event the Sexual Abuse Survivor is deceased or is a minor.

5. The Debtors have also observed an avalanche of Sexual Abuse Claims purportedly held by members of the Coalition, and share their insurers' concerns regarding the ability of attorneys to adequately scrutinize this volume of Sexual Abuse Claims—much less attest under penalty of perjury (as they must) that they have conducted a reasonable investigation and formed a belief that the claim has a proper purpose and legal and evidentiary basis.[3] For these reasons and the reasons set forth below, the Coalition Motion should be denied.

A. **Members of the Coalition Received Notice of the Bankruptcy Case and/or Had the Opportunity to Be Heard and Directly Participate in the Extensive Negotiation of the Sexual Abuse Survivor Proof of Claim Form.**

6. In its motion, the Coalition recognizes the significant briefing and argument that occurred with respect to the Bar Date Motion, including the Sexual Abuse Survivor Proof of Claim Form. Indeed, the version of the Sexual Abuse Survivor Proof of Claim Form appended to the Tort Claimants' Committee's objection to the Bar Date Motion requires that the form be signed by the Sexual Abuse Survivor. *See* TCC Bar Date Objection, Docket No. 601, Ex. A. Individual members of the Tort Claimants' Committee "carefully reviewed each and every line of the Committee's proposed proof of claim form in an effort to render the form most useable [for Sexual Abuse Survivors]" over multiple days. *Id.* at 8. As noted above, the Tort Claimants' Committee is the only fiduciary for the interests of all Sexual Abuse Survivors in this restructuring. The Tort Claimants' Committee's childhood sexual abuse consultant and expert witness, Dr. Jon Conte, also reviewed the Sexual Abuse Survivor Proof of Claim Form and provided comments to make it easier to complete and sensitive to the experiences of Sexual Abuse Survivors. In addition to the

---

[3] On July 29, 2020, the Coalition asserted that it was comprised of "more than 10,000 sexual abuse victims." *See Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019*, Docket No. 1053. In its most recent filing on October 7, 2020, the Coalition asserts that it now represents "more than 28,000 Sexual Abuse Survivors." *See Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019*, Docket No. 1429. As of the date hereof, approximately 7,000 Sexual Abuse Claims have actually been filed.

4

Tort Claimants' Committee's extensive internal review, negotiations between the Debtors and the Tort Claimants' Committee began in late March 2020 and continued up to the hearing on the Bar Date Motion on May 26, 2020. These arm's-length negotiations involved multiple rounds of discussion regarding each line of edits to the Sexual Abuse Survivor Proof of Claim Form. The parties agreed that the Sexual Abuse Survivor Proof of Claim must be executed by the Sexual Abuse Survivor.

7.  The Coalition argues that its belated request to allow attorneys to sign Sexual Abuse Survivor Proofs of Claim is appropriate because it did not receive adequate notice of the Bar Date Motion. *See* Coalition Motion ¶ 38 (arguing that "neither Sexual Abuse Survivors nor their counsel received actual notice or an opportunity to be heard" on the Sexual Abuse Proof of Claim Form). Not so. Multiple law firms affiliated with the Coalition received notice of the commencement of the bankruptcy case or represented a member of the Tort Claimants' Committee while the form was being negotiated. For example, the affidavit of service of the *Notice of Chapter 11 Bankruptcy Case* [Docket No. 310] (the "Notice of Commencement") reveals that Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., AVA Law Group, Inc., and Kosnoff Law were each sent copies of the Notice of Commencement. Moreover, the Bar Date Motion was filed on the first day of this case. *See* Docket No. 18. Additionally, one of the Tort Claimants' Committee members, Jorge Vega, was represented by attorneys at Andrews & Thornton until his counsel was substituted on September 14, 2020. *See* Docket Nos. 299, 300, 1313. As the Tort Claimants' Committee discloses in its objection to the Coalition Motion, "[a]t least two of the [Coalition law firms] participated in the subcommittee formed by the Tort Claimants' Committee and provided changes and comments to the Sexual Abuse Survivor Proof of Claim Form." *See* Docket No. 1465, ¶ 21. Members of the Coalition therefore had ample opportunity to carefully review the

Sexual Abuse Survivor Proof of Claim Form, as negotiations on the form between the Debtors and the Tort Claimants' Committee occurred over a period of more than six weeks.[4]

8.  Having received adequate notice, the members of the Coalition cannot now collaterally attack the Bar Date Order. The Coalition argues that neither "Sexual Abuse Survivors nor their counsel received actual notice or an opportunity to be heard regarding whether the right to have an attorney file a proof of claim on a survivor's behalf should be taken away in these Chapter 11 Cases." Coalition Motion ¶ 38. In addition to being false, the Coalition appears to confuse this standard, which applies to the due process requirements of notice of the *bar date* itself, with the standard governing notice of the Bar Date Motion. Courts routinely hold that a party that receives adequate notice and an opportunity to be heard cannot later seek collaterally attack an order. *See, e.g., In re LandAmerica Fin. Grp.*, No. 08-35994-KRH, 2013 WL 1819984, at *6 (Bankr. E.D. Va. Apr. 30, 2013) ("Despite having received adequate notice of the Plan and having been afforded the opportunity to object to the Plan, [a creditor] now raises this collateral attack on the Plan for the first time more than three years after confirmation."); *In re Hudson*, 260 B.R. 421, 442 (Bankr. W.D. Mich. 2001) (holding that if adequate information was provided on a lien modification, a plan confirmation order "binds the creditor, and any subsequent collateral attack on grounds of allegedly defective notice will be futile"). Perhaps more importantly, the Debtors' multi-million dollar noticing campaign with respect to the Abuse Claims Bar Date and the Bar Date Order has provided notice to millions of individuals of the Abuse Claims Bar Date and the requirements for submitting a Sexual Abuse Survivor Proof of Claim. The requirements of due

---

[4] The Coalition Motion is also procedurally deficient. In substance, the motion is a motion to reconsider the Bar Date Order itself and should therefore be subject to the requirements of Federal Rule of Civil Procedure 60, as applicable here under Bankruptcy Rule 9024. As discussed by Century in its objection to the Coalition Motion, courts may only grant motions for reconsideration in order to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *see* Docket No. 1463 at 9-10.

6

process have plainly been satisfied. Accordingly, the Court should dismiss any argument that the Coalition, its members or its members' state court counsel failed to receive adequate notice of the Bar Date Motion or an opportunity to be heard.

9. With respect to the arguments raised about the impropriety of this signature requirement being implemented during the COVID-19 pandemic, the Debtors note that the hearing on the Bar Date Order and extensive negotiations on the Sexual Abuse Survivor Proof of Claim itself occurred at the height of the COVID-19 pandemic. Against this backdrop, the Court approved a *six month* period within which creditors may submit proofs of claim. Accordingly, concerns about the impact of COVID-19 have been more than adequately taken into account.

### B. Highly Specialized Proof of Claim Forms, Including a Signature Limitation, Are Regularly Approved in Bankruptcy Cases with Abuse and Mass Tort Liabilities.

10. Sexual Abuse Claims substantively differ from other types of claims that may be filed against the Debtors. For this reason, the Sexual Abuse Proof of Claim Form requests detailed information in the form of a questionnaire that will be used to evaluate such claims and assess the magnitude of the Debtors' potential liability. Courts have routinely recognized that special alterations may be warranted when addressing tort claims, which may be unknown and undisclosed to the Debtors. *See, e.g., In re A.H. Robins Co.*, 862 F.2d 1092, 1095 (4th Cir. 1988) (rejecting the argument that the form of personal injury claim questionnaire was not an appropriate step for filing claims because of their nature as "undisclosed, unscheduled, and unliquidated, liabilities of the Debtor").

11. Here, the nature of Sexual Abuse Claims requires detailed supplemental questions in addition to the basic information requested on Official Form 410. The Sexual Abuse Survivor Proof of Claim Form was designed—with the detailed input and approval of the Tort Claimants' Committee, its members, and its experts and advisors—as a questionnaire to gather information

about the abuse that survivors have endured and related damages. This information includes, among other things, whether the sexual abuse occurred in connection with Scouting activities, the nature of the Scouting activities, the identity of the abuser, if known, the length of time of the abuse, and the damages suffered by Sexual Abuse Survivors. As discussed below, while an attorney may be able to complete Official Form 410 on behalf of his or her clients as an authorized agent, it is entirely inappropriate for an attorney to sign this type of detailed claim questionnaire on behalf of Sexual Abuse Survivors.

12. Specialized proof of claim forms drafted as detailed questionnaires have been approved in many other chapter 11 cases with mass tort or abuse liabilities,[5] and in *Archdiocese of New Orleans*, *Diocese of Harrisburg*, *Diocese of Rochester*, and *TK Holdings*, the bar date orders specifically provided that proofs of claim were required to be signed by the claimant, if the claimant was an individual, with no option for an attorney to sign on behalf of the claimant. *See In re Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La. Oct. 1, 2020) [Docket No. 461, Ex. A] (bar order authorizing proof of claim form instructing that in order for "this claim to be valid, the Sexual Abuse Survivor must sign this form," subject to certain limited exceptions not including attorney signatures); *In re Roman Catholic Diocese of Harrisburg*, Case No. 20-00599 (HWV) (Bankr. M.D. Pa. May 6, 2020) [Docket No. 291, Ex. B] (bar date order authorizing proof of claim form instructing that form must "be signed by the sexual abuse claimant," subject to certain limited exceptions not including attorney signatures); *In re Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y. Feb. 24, 2020)

---

[5] *See, e.g.*, *In re USA Gymnastics*, Case No. 18-09108-RLM-11 (Bankr. S.D. Ind. Feb. 25, 2019) [Docket No. 301] (approving specialized proof of claim for abuse survivors); *In re Roman Catholic Bishop of Great Falls Montana*, Case No. 17-60271-JDP (Bankr. Mont. Apr. 27, 2017) [Docket No. 121] (same); *In re Roman Catholic Church of the Diocese of Gallup, New Mexico*, Case No. 13-13676-T11 (Bankr. D.N.M. Apr. 11, 2014) [Docket No. 218] (same); *In re Christian Bros.' Institute*, Case No. 11-22820 (RDD) (Bankr. S.D.N.Y. Feb. 10, 2012) [Docket No. 244] (same); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del. Feb. 1, 2010) [Docket No. 308] (same).

[Docket No. 424] (bar date order authorizing sexual abuse proof of claim with requirement that form "be signed by the Sexual Abuse Claimant," subject to certain limited exceptions not including attorney signatures); *In re TK Holdings, Inc.*, Case No. 17-11375 (Bankr. D. Del. Oct. 4, 2017) [Docket No. 959] (bar date order providing that proofs of claim must be "be signed by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant").[6] In these cases, the courts recognized the importance of tort claimants personally attesting to the accuracy and veracity of the information in the claims' forms, rather than having them attorney-driven.

C.  **Courts Disapprove of the Practice of Attorneys Signing Proofs of Claim Because It Risks Waiver of the Attorney-Client and Work Product Privileges.**

13. For an attorney to sign a proof of claim on behalf of his or her client, the attorney must engage in a personal review of the facts that form the basis for the claim and attest to his or her reasonable belief regarding the truth of such facts under penalty of perjury. It is inconceivable that attorneys representing members of the Coalition—which has allegedly grown to 28,000 individuals—can engage in such an exacting personal review of the underlying abuse claims. If the Coalition Motion is granted, it would also risk waiving Sexual Abuse Survivors' attorney-client privilege and undermine the integrity of the claims process.

14. The case law illustrates the inherent risks associated with attorneys' signing proofs of claim on behalf of their clients. In *Schmidt v. Rodriguez*, an attorney who signed a proof of claim on behalf of a creditor was deposed by a party in a subsequent adversary proceeding related to the claim. *Schmidt v. Rodriguez (In re Rodriguez)*, No. 10-70606, 2013 WL 2450925 (Bankr.

---

[6] The Coalition mischaracterizes the *Harrisburg* case, asserting that the court only accepted the limitation on signatures to abuse survivors because the debtors assured the court that they had identified all *known* creditors. Coalition Motion ¶¶ 37-38. For this reason, the Coalition argues, abuse survivors in *Harrisburg* were sufficiently noticed, whereas the survivors in this case were not. In fact, the *Harrisburg* debtors specifically recognized that certain survivors holding abuse claims may be "currently unknown to the Debtors"—and for this exact reason, the *Harrisburg* debtors received authorization for a publication notice program for unknown abuse survivors. The Debtors have implemented precisely the same kind of publication notice program here through their Supplemental Notice Plan. *Id.* ¶ 38.

S.D. Tex. June 5, 2013). The court granted a motion to compel discovery responses from the attorney regarding the proof of claim, holding that the attorney had waived both the attorney-client and work product privileges by signing the forms and becoming a fact witness. *Id.* at *3-6. In particular, the court noted that the attorney filed the proof of claim "under penalty of perjury," which was an assertion of personal knowledge of the facts alleged in the claim, and noted that the submission of a proof of claim is prima facie evidence of the facts asserted. *Id.* at *3.

15. Similarly, in *In re Duke Investments* the court was presented with a lawsuit to disqualify an attorney who prepared a proof of claim on a creditor's behalf. *In re Duke Invests.*, 454 B.R. 414, 426-27 (Bankr. S.D. Tex. 2011). The court warned against the easily avoidable practice of attorneys signing proofs of claim on behalf of creditors due to the risk that the attorney may become a necessary fact witness. *Id.* ("[A]ll . . . attorneys representing creditors in bankruptcy cases . . . ought to think twice before signing proofs of claim for their clients. . . . [T]he attorney puts himself at risk by becoming a fact witness."); *see also Swanson v. Trasino Park-Hudsons, LLC (In re Vission, Inc.)*, No. 07-21957, 2008 WL 2230741, at *4 n.3 (Bankr. E.D. Wis. 2008) ("By signing the affidavit, counsel runs the risk of becoming a fact witness, and any future hope of asserting privilege may disappear or counsel may be disqualified from representing a client.").

16. Additionally, when attorneys sign proofs of claim, they subject themselves to the requirements of Bankruptcy Rule 9011(b). Bankruptcy Rule 9011(b) requires that, through the act of signing a document such as a proof of claim, an attorney "is certifying, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the claim has a proper purpose and legal and evidentiary basis. *See* Fed. R. Bankr. P. 9011(b). With respect to an attorney's submission of a proof of claim on another's behalf, courts have held that Bankruptcy Rule 9011 imposes a *personal and non-delegable* responsibility to conduct a

"reasonable investigation" of the contents of the proof of claim. *See, e.g., In re Obasi*, No. 10-10494 (SHL), 2011 WL 6336153, at *4 (Bankr. S.D.N.Y. Dec. 19, 2011). This requires, at minimum, a personal review of the document by the signing party, and an attorney who does not comply may be subject to sanctions. *Id.*; *see also In re Taylor*, 407 B.R. 618, 646 (Bankr. E.D. Pa. 2009), *rev'd on other grounds* 2010 WL 624909 (E.D. Pa. Feb. 18, 2010) (holding that attorney/authorized agent violated Bankruptcy Rule 9011 by signing an erroneous proof of claim prepared by claims processor without reviewing the claim). The Debtors have serious concerns that this practice would raise potentially insurmountable procedural complexities in the claims administration process and that it would jeopardize the integrity of the claims process in these cases.

17. From a practical perspective, moreover, the requirement that counsel receive express authorization from each abuse survivor before signing a Sexual Abuse Survivor Proof of Claim on their behalf presents the same logistical burden as obtaining a signature from their client on the form itself. As noted below, the Debtors support the TCC Motion, which seeks to clarify that the meaning of "sign" in the Bar Date Order includes the verified e-signature programs set forth in the Motion, thereby streamlining the signature process.

### STATEMENT IN SUPPORT OF TCC MOTION

18. The Tort Claimants' Committee seeks entry of an order clarifying the meaning of the term "sign" in the Bar Date Order to include the use of an e-signature program to sign Sexual Abuse Survivor Proofs of Claim. TCC Motion at 3. In support of this request, the Tort Claimants' Committee asserts, and the Debtors agree, that this is a widely accepted practice in bankruptcy courts across the country and is particularly important to alleviate additional health risks created during the COVID-19 pandemic. The Debtors engaged in informal discussions with the Tort

Claimants' Committee prior to its filing of the TCC Motion, and do not object to the form of proposed order contained therein.

19. For abuse claims already on file, the Tort Claimants' Committee proposes a procedure for survivors to amend the Sexual Abuse Survivor Proof of Claim or send the e-signature verification document to the Claims and Noticing Agent by the later of (a) 60 days after November 16, 2020 (*i.e.*, the bar date) or (b) 60 days after the Claims and Noticing Agent provides notice to parties that have executed and filed their Sexual Abuse Survivor Proof of Claim without also filing the verification document. TCC Motion at 6–7. In its omnibus response to the TCC and Coalition Motions [Docket No. 1424] (the "UST Response"), the United States Trustee opposes the "portion of the request requiring claimants whose claims are already on file to amend their claims *by November 16, 2020*" because of the "administrative burden" it imposes on the claims-filing process. UST Response ¶ 16. The Debtors note that the proposed procedure would not require the certification document to be submitted until the later of *sixty days* after the Abuse Claims Bar Date or *sixty days* after an affected party receives notice from the Claims and Noticing Agent of the requirement to submit a certification document. Implementing this procedure now provides more than adequate notice to affected parties and will facilitate the timely submission of necessary documents for the claims review process.

## CONCLUSION

For each of the reasons set forth herein, the Debtors respectfully request that the Court deny the relief requested in the Coalition Motion, grant the relief requested in the TCC Motion, and grant such other and any further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 10, 2020
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
        aremming@mnat.com
        emoats@mnat.com
        ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. K. Boelter (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.boelter@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com

*Counsel and Proposed Co-Counsel for the Debtors and Debtors in Possession*