**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: Dkt. No. 1379**<br><br>Hearing Date:  October 14, 2020 at 10:00 a.m.<br>Objection Deadline:  October 11, 2020[2] |

**OBJECTION OF THE AD HOC COMMITTEE OF LOCAL COUNCILS**
**TO TORT CLAIMANTS' COMMITTEE'S RULE 2004 MOTION**

The Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Ad Hoc Committee")[3] respectfully submits this objection (the "Objection") to the *Motion of the Official Tort Claimants' Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery from Debtors and Certain Local Councils* [Dkt. No. 1379] (the "Rule 2004 Motion")[4] and states as follows:

---

[1]  The Debtors in the chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Lane, Irving, TX 75038.

[2]  The Tort Claimants' Committee (the "TCC") agreed to extend the Ad Hoc Committee's deadline to object to the Rule 2004 Motion through October 11, 2020.

[3]  The Ad Hoc Committee consists of eight Local Councils:  the Andrew Jackson Council, the Atlanta Area Council, the Crossroads of America Council, the Denver Area Council, the Grand Canyon Council, the Greater New York Councils, the Mid-America Council, and the Minsi Trails Council.  For the avoidance of doubt, this Objection is submitted on behalf of the Ad Hoc Committee and not on behalf of any individual member.  The undersigned represent only the Ad Hoc Committee and not any of its members individually.  *The Ad Hoc Committee does not represent (and this Objection should not be construed as a statement on behalf of) any of the individual Local Councils who are targets of the Rule 2004 Motion.*

[4]  Capitalized terms not defined have the meanings given in the Rule 2004 Motion.

**PRELIMINARY STATEMENT**

1. The TCC filed the Rule 2004 Motion seeking discovery related to Local Council insurance, restricted assets, and Rosters. The Ad Hoc Committee, National BSA, and the TCC were able to reach agreement on everything except for Rosters. Because the TCC's demand for Rosters is, by the TCC's own admission, aimed at bringing private litigation against non-debtors, it plainly falls outside the proper scope of Rule 2004 and must be rejected.

2. By its request for "All Rosters," the TCC seeks lists of every single child who has ever participated in Scouting going back many decades to the founding of each of the 47 Local Councils who are targets of the Rule 2004 Motion. The Rosters contain the names, addresses, contact information, and personal information of millions of people, collected when they were minors. Accordingly, significant privacy issues justify denying the request. Moreover, the Rule 2004 Motion itself shows — consistent with what the TCC has repeatedly told the Ad Hoc Committee — that the state court attorneys who represent its members want the Rosters so they can identify potential non-debtor defendants in state court litigation. It is well established that the bankruptcy tool of Rule 2004 cannot be used to foment private litigation between non-debtors. The request for the Rosters should be summarily rejected.

3. In addition, the Rule 2004 Motion is procedurally improper in important respects. Among other things, the TCC's proposed order would blithely disregard the protections of Federal Rule of Civil Procedure 45 and convert the Rule 2004 Motion into some sort of nationwide *ex parte* motion to compel. As this Court is aware, when a Rule 2004 motion is granted as to third parties, the movant obtains the right to procure subpoenas, which the recipients (once formally served) can object to and, if needed, litigate in their local federal court. But the TCC's proposed order would short-circuit that mandated process, purporting to require Local Councils from 31 states to produce documents, and produce them in Delaware within 14 days, no matter where the

Local Council is located and without regard to whether it has been served or has had the opportunity to object. The TCC cannot exempt itself from the clear rules governing litigated discovery through Rule 2004 and the Federal Rules.

4.     In sum, the TCC's request for Rosters is made for improper purposes — it seeks sensitive documents in order to bring private litigation against non-debtors in state court — and the relief sought is procedurally improper. The Rule 2004 Motion should be denied.

I. **The TCC's request for Rosters should be denied.**

5.     The TCC's request for "All Rosters" seeks lists containing the names, ages, addresses, and contact information of every child who has participated in Scouting. *See* R. 2004 Mot. ¶ 26. The request contains no date or relevancy limitation.

> a. *The TCC cannot use Rule 2004 to pursue litigation against non-debtor third parties.*

6.     It is settled law that discovery under Rule 2004 cannot be used to advance private litigation against non-debtors outside of the bankruptcy case. *In re Snyder*, 52 F.3d 1067, 1067 (5th Cir. 1995) ("Examination under Rule 2004 should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal."); *In re Enron*, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002) (collecting cases rejecting "Rule 2004 examinations where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee"). Yet the TCC's request for "All Rosters" seeks to do precisely that.

7.     To see this, the Court need look no further than the quote that the TCC included in the Rule 2004 Motion itself: On May 10, 2020, John A. Morris, an attorney for the TCC, wrote to Richard G. Mason, the Chair of the Ad Hoc Committee: "The Troop Rosters provide information concerning, among other things, *potentially responsible parties (e.g., sponsoring organizations)*

that is frequently unknown to survivors but that is critical *with statutes of limitation expiring in various jurisdictions at various times*." Rule 2004 Mot. ¶ 14 (emphases added); *see* **Exhibit A** (complete email). And the TCC argues that "[t]he Rosters are critical to the TCC's . . . determination of whether, and to what extent, *other parties may also be liable* for the thousands of survivor claims involving the Local Councils." R. 2004 Mot. ¶ 3 (emphasis added). "In addition, the Rosters will help the TCC determine which sponsoring or chartered organizations may be implicated in abuse claims and whether such organizations have insurance policies available to satisfy the abuse claims." *Id.* ¶ 22.

8. That purpose — identifying potential non-debtor, third-party defendants for state court litigation *outside of* the National BSA's bankruptcy — has been repeated by the TCC again and again. And the Ad Hoc Committee and each of its members have indeed refused to produce Rosters knowing that they will be used for such an improper purpose. *See* **Exhibit B** (May 13, 2020 email from Richard G. Mason to John A. Morris) ("When we spoke about the Troop Roster issue with you on April 22, your Committee member explained (and your email below reflects) that the purpose of this request is to help already-represented plaintiffs who are facing a closing statute of limitation window name the proper defendants."); **Exhibit C** (Sept. 29 letter from Richard G. Mason to James I. Stang) ("[B]y encouraging Local Councils to turn over troop rosters — *which you have candidly said will be used by the plaintiffs' lawyers who represent your Committee members in litigation outside of the National BSA's bankruptcy case* — you are risking creating coverage defenses by Local Councils' insurers." (emphasis added)).

*9.* The TCC cannot use Rule 2004 to stir up private litigation against non-debtor third parties — whether they be Local Councils, sponsoring organizations, or anyone else — for the benefit of the state court lawyers who happen to also represent the TCC's individual members. As

this Court has stated, Rule 2004 "was not intended to provide private litigants . . . with a strategic advantage in fishing for potential private litigation." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) (quoting *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981)). And even if the individual members of the TCC — as opposed to just their lawyers — could also benefit by identifying additional non-debtor third parties to sue, this Court has previously rejected use of Rule 2004 for such purposes:

> *As for movants' desire to identify third parties [in addition to the debtor] who may also be liable to them, that, quite simply is neither this court's concern nor the purpose of Rule 2004.* No matter how artfully one tries to disguise the requested examinations, by dressing them up in the robes of bankruptcy administration, their real purpose is to identify another entity movants might be able to collect from, and whether those efforts would have any impact on the bankruptcy estate is of no real concern to them. Movants understandably want to [*sic*] their money, but that does not justify turning a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors.

*Millennium Lab Holdings II*, 562 B.R. at 628 (quoting *In re J&R Trucking, Inc.*, 431 B.R. 818, 822-23 (Bankr. N.D. Ind. 2010)) (emphasis added).

10. The TCC's other justifications — which the Ad Hoc Committee heard for the first time in the Rule 2004 Motion — also ring hollow.

11. The TCC states that the organizations listed on Rosters "*may* want to participate in the Debtor's bankruptcy and obtain the benefits of a channeling injunction, which means *the TCC needs to know their identity* and must be able to evaluate their respective liabilities to determine whether they have made a substantial contribution to the cases." Rule 2004 Mot. ¶ 27 (emphases added). The TCC is putting the cart before the horse. As discussed, Rule 2004 cannot be used to identify additional non-debtor third parties from which creditors can collect, whether or not those creditors could try to effectuate their collection efforts through the debtor's chapter 11 plan. More importantly, if other non-debtors affirmatively seek relief from this Court to "obtain the benefits

of a channeling injunction," then the TCC will necessarily know who they are — it won't need the Rosters to find out.

12.     To the extent the TCC is arguing that it needs information to undertake a "best interests of creditors" analysis, its request again is clearly premature. It is impossible to say at this juncture which entities will be included in the channeling injunction and, therefore, will be relevant to the best interests analysis under the TCC's view.[5]  The TCC's request that Local Councils dig through files going back to their founding and produce "All Rosters" is therefore clearly overly burdensome and inappropriate at this time.

13.     The TCC says as well that "[e]ven if a council or charter organization does not choose to participate in the Debtor's bankruptcy, the TCC needs to know their identities so it can explore whether these entities have insurance . . . ." *Id.* ¶ 28. But, again, the TCC is not entitled to use Rule 2004 to go after a *non-debtor's* "own insurance separate and apart from the Debtor's insurance." *Id.* And the TCC offers no support for its hypothetical that this insurance "may have listed the Debtor as an additional insured." *Id.* Nor does it explain how it would determine this from information on the Rosters.[6] Finally, the TCC has already requested — and, subject to the terms of the Protective Order entered by this Court, will receive — insurance information from the National BSA and from Local Councils.

14.     The TCC says that "the charters and Rosters will help the TCC, the Debtor, and other interested parties corroborate certain claims." *Id.* ¶ 29.  The Rosters could also be useful

---

[5] The Ad Hoc Committee does not concede that the assets of Local Councils are relevant to the "best interests" analysis, no matter what type of plan the National BSA ultimately seeks to confirm, but that topic need not be addressed now.

[6] If the TCC plans to seek Rule 2004 discovery from every entity listed on a Roster to determine whether or not the BSA is a co-insured on its insurance, it should say as much, so the Court can consider whether such a foray is a reasonable use of limited estate resources.

because "the Debtor and other interested parties have suggested they may object to claims if the claimant is unable to provide some of the information that many claimants are already struggling to provide," *id.* ¶ 32,[7] or if "a claimant and/or their alleged abuser are not listed on the roster(s) for their Scouting unit," *id.* ¶ 33.  But, of course, no claim objections have been filed to date — indeed, we are over a month away from the Bar Date — and the TCC is not seeking Rosters for only those tort claimants who are having trouble remembering their troops (or even only Rosters containing known claimants) — but "All Rosters" for all Scouts potentially going back to the early 1900s.  The requests are both premature and plainly overbroad.

15.    In short, the TCC has stated to this Court that it wants the Rosters to determine "whether, and to what extent, *other parties* may also be liable" for abuse claims.  R. 2004 Mot. ¶ 3 (emphasis added).  And it has further stated that it needs the information now because "statutes of limitation [are] expiring" for this state court litigation.  *Id.* ¶ 14.  Rule 2004 cannot be used for this purpose.

   b.  *Production of the Rosters raises significant privacy issues.*

16.    In addition, the privacy implications of the TCC's request for the names and contact information for minors are enormous.  Millions of children have participated in Scouting over the years and for the National BSA or Local Councils to turn over their contact information would represent a major betrayal of trust for the individuals on this list.  This concern is heightened by

---

[7] The TCC notes that "claimants also generally lack any meaningful ability to obtain the information because of the automatic stay and the injunction — claimants who have filed state court actions cannot issue discovery to the Debtor or the Local Councils . . . ."  R. 2004 Mot. ¶ 30.  But courts regularly reject the argument that operation of the automatic stay entitles plaintiffs to discovery under Rule 2004.  *See* Tr. at 56:11-16, *In re Remington Outdoor Co.*, 20-81688 (Bankr. N.D. Ala. Aug. 27, 2020) (Jessup, B.J.) (denying Rule 2004 request and noting "[t]hat is the argument that's made by every plaintiff's counsel after a Chapter 11 is filed back since '79 when I started practicing under the [Code].  Every counsel who represents a plaintiff in a tort action is very concerned and worried about the fact that the discovery and the process in State Court is stayed during the bankruptcy.").

revelations that plaintiffs' firms have been contacting current Scouts — who are minors — directly via phone, text, and email in an attempt to solicit clients. *See* Dkt. Nos. 1260-3 (email), 1260-4 (phone).

17.     The TCC has not — and cannot — justify such a plainly overbroad request. Take for example, the TCC's claim that this information would be used to "corroborate certain claims" in the event of an objection. Rule 2004 Mot. ¶ 29. In the appropriate context — *i.e.*, where a particular claim has been objected to or where a claimant is seeking payment from a trust established in these cases — targeted discovery regarding a claim could be appropriate. But the TCC has not requested only those Rosters that relate to objected-to claims, or even Rosters relating only to filed claims; it has requested all Rosters for all time. Thus, thousands — perhaps millions — of peoples' personal information will be turned over unnecessarily if the TCC's request is granted.

18.     The highly sensitive nature of the information and the TCC's failure to tailor the request in any way to its purported needs justify denying this request outright.

## II.     The Rule 2004 Motion requests procedurally improper relief.

19.     A brief overview of the familiar Rule 2004 process establishes the defectiveness of the Rule 2004 Motion. A Rule 2004 motion as to a third party is a request for permission *to issue* a subpoena; it is not itself an order to produce documents. Because it can be sought *ex parte* (as the one-week objection deadline that the TCC sought here demonstrates), Bankruptcy Rule 2004(c) provides (by incorporating Bankruptcy Rule 9016) that Federal Rule 45's requirements for issuing and responding to subpoenas apply even once a Rule 2004 motion is granted. Specifically, if a Rule 2004 motion is granted, the movant must duly procure and serve the subpoena and can only command the production of documents "within 100 miles of where the [recipient] resides." Fed. R. Civ. P. 45(c)(2). The recipient then has 14 days from service to object.

Fed. R. Civ. P. 45(d)(2)(B). Once an objection is made, the party issuing the subpoena must move to compel in the federal court for the district in which the recipient of the subpoena resides. Fed. R. Civ. P. 45(d)(2)(B)(i).

20. The TCC's proposed order attempts to write these protections out of the Bankruptcy Rules. The Proposed Order provides:

> Each of the Examinees *are directed to produce all documents and information responsive to the TCC's Discovery Requests* and to deliver such documents and information to the attention of James E. O'Neill, at Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P O Box 8705, Wilmington, *DE* 19801 *within fourteen (14) days after entry of this order* or at such other place and time as may be agreed upon by the parties.

R. 2004 Mot. Ex. A. ¶ 3 (emphases added).

21. Under Rule 2004, the order can only authorize the TCC to procure subpoenas directed to the Local Councils; it cannot require the Local Councils to produce documents, much less order that they be produced in 14 days. Service, compliance, and enforcement is governed by Federal Rule 45. *See* Fed. R. Bankr. P. 2004(c).

22. Moreover, while the Court "may for cause shown and on terms as it may impose order the debtor to be examined under [Rule 2004] at any time or place it designates," the same is not true for non-debtor third parties, like the Local Councils. Fed. R. Bankr. P. 2004(d). The Rule 2004 Motion targets 47 Local Councils, which are located in 31 states. They plainly cannot all be required to produce documents in Delaware consistent with Federal Rule 45. The entire Paragraph 3 of the Proposed Order must be deleted.

23. The Proposed Order also purports to give this Court "jurisdiction to resolve any disputes arising under or related to this Order, *including any discovery disputes that may arise between or among the parties*." R. 2004 Mot. Ex. A ¶ 5 (emphasis added). But, again, Federal Rule 45 makes the federal court in the district in the place of compliance the forum for resolving

discovery disputes, not this Court. *See* Fed. R. Civ. P. 45(d)(2)(B)(i), (d)(3).

## CONCLUSION

24. For the reasons above, the request for Rosters clearly exceeds the permissible scope of examination under Rule 2004(b) by seeking to stir up private litigation against non-debtors, and the TCC's proposed order requests procedurally improper relief. The Rule 2004 Motion should be denied.

| | |
|---|---|
| Dated: October 11, 2020<br>Wilmington, Delaware | DLA PIPER, LLP (US)<br><br> */s/ R. Craig Martin*<br>R. Craig Martin (No. 5032)<br>1201 North Market Street, Suite 2100<br>Wilmington, Delaware  19801-1147<br>Telephone:  (302) 468-5655<br>Facsimile:  (302) 778-7834<br>Email:  craig.martin@dlapiper.com<br><br><br>WACHTELL, LIPTON, ROSEN & KATZ<br><br>Richard G. Mason (admitted *pro hac vice*)<br>Douglas K. Mayer (admitted *pro hac vice*)<br>Joseph C. Celentino (admitted *pro hac vice*)<br>51 W. 52nd Street<br>New York, New York  10019<br>Telephone:  (212) 403-1000<br>Facsimile:  (212) 403-2000<br>Email:  RGMason@wlrk.com<br>           DKMayer@wlrk.com<br>           JCCelentino@wlrk.com<br><br><br>*Attorneys for the Ad Hoc Committee of Local Councils of the Boy Scouts of America* |