IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Ref. Docket No. 1164** |

**REPLY BRIEF OF HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY AND CENTURY INDEMNITY COMPANY IN SUPPORT OF (I) CENTURY AND HARTFORD'S MOTION TO COMPEL THE ATTORNEYS REPRESENTING THE ENTITY CALLING ITSELF THE "COALITION" TO SUBMIT THE DISCLOSURES REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford") and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company ("Century") respectfully submit this reply in support of *Century and Hartford's Motion to Compel the Attorneys Representing the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019* (Aug. 26, 2020) [D.I. 1164] (the "Motion").

The entity calling itself the Coalition of Abused Scouts For Justice (the "Coalition") has tried to divert attention from the shortcomings in its filings by purporting to shuffle its membership and supplementing its Rule 2019 disclosures; however, these changes make the situation worse

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Law, Irving, Texas 75038.

1

and not better leaving the Coalition falling short of what Rule 2019 requires. As the district court in *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147 (D.N.J. 2005) made clear, adequate disclosure here is not a *pro forma* requirement particularly where, as here, there is legitimate cause for concern given the disclosure of an e-mail setting out how Coalition intends to supplant the Official Tort Claimants' Committee ("Committee") and the explosion in the number of claimants the Coalition purports to represent, which now exceeds 28,000. Hartford, Century and other parties in interest have a valid interest in understanding the extent to which the Coalition properly represents these claimants, many of whom never affirmatively approved formation of the Coalition or engagement of Coalition Counsel (as defined herein).

The Coalition must make a complete showing as to whom it is empowered to represent so that the other parties know what interests are at the table. So far, the Coalition has not done so. Accordingly, the Court should deny the Coalition's motions; before permitting the Coalition to participate fully in these cases, including in mediation, the Court should require the Coalition to produce additional information including (i) all of the by-laws and other foundational documents that empower Coalition Counsel to represent the Coalition; (ii) all other documents that reflect any financial relationship between any of the Coalition members and their counsel, or between and among various state court counsel that promote or are part of the Coalition (such as fee sharing arrangements); and (iii) documents that establish that there are legitimate attorney-client relationships between the individual claimants, their respective counsel, and authorizing the retention of Brown Rudnick LLP ("Brown Rudnick") and Monzack Mersky Browder and Hochman, P.A. ("Monzack Mersky") as counsel to the Coalition ("Coalition Counsel").

**BACKGROUND**

*Plaintiffs' Counsel Establishes the Coalition*

1. On July 29, 2020, the Coalition filed Rule 2019 disclosures with this Court. *Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (July 29, 2020) [D.I. 1040]. In that filing, the Coalition purported to represent more than 10,000 claimants with abuse claims against Debtors -- an unprecedented increase from the level of pre-petition claims. *Id.* ¶ 2. Those disclosures, however, did not provide any information to substantiate that claim -- they did not identify the facts and circumstances of the Coalition's organization, the persons or entities whose financial interests are represented by the Coalition, or supply any other information to show that the Coalition was empowered to represent those interests.

2. On August 14, 2020, the Coalition filed its First Amended Rule 2019 Disclosures. *Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Aug. 14, 2020) [D.I. 1106] ("First Amended Rule 2019 Disclosures"). That disclosure reaffirmed that the Coalition represents more than 10,000 claimants, but did not provide any further information to substantiate that claim, nor to establish the facts and circumstances of the Coalition's creation or engagement of Coalition Counsel.[2]

*Century and Hartford Object to the Insufficient Disclosures by the Coalition*

3. On August 24, 2020, the Coalition filed its *Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement*.

---

[2] In addition to Brown Rudnick, Blank Rome LLP ("Blank Rome") was originally selected as Delaware counsel for the Coalition. After potential conflicts of interest surfaced, Blank Rome withdrew in favor of Monzack Mersky.

[D.I. 1114] ("2019 Approval Motion"). In connection with that motion, the Coalition filed, under seal (i) a spreadsheet listing individual claimholders; (ii) a redacted retention letter for Brown Rudnick; and (iii) redacted form engagement letters for the six state court counsel law firms ("State Court Counsel") firms purporting to engage the Coalition.[3] The motion did not provide any further information concerning the formation of the Coalition.

4. On August 26, 2020, the Coalition filed a motion to participate in the mediation as a Mediation Party. *Motion of the Coalition of Abused Scouts for Justice to Participate in the Mediation* (Aug. 26, 2020) [D.I. 1161].

5. On August 26, 2020, Century and Hartford filed the Motion, requesting that the Court enter an order requiring counsel for the Coalition to comply in full with Federal Rule of Bankruptcy Procedure Rule 2019. Century and Hartford noted that the Amended Rule 2019 Disclosures that Brown Rudnick filed on behalf of the Coalition were insufficient because they failed to identify (i) who the members of the "Coalition" are; (ii) did not provide required information about the organization and decision making structure of the Coalition; and (iii) provided improperly redacted information regarding the basis on which counsel for the Coalition had been retained and/or empowered to act. *See* Motion at 2, 25 and Exhibit A. Century and Hartford accordingly requested that this Court compel full disclosure concerning the facts and circumstances of the Coalition's creation, its membership and the retention of counsel, including consent, if any, to retain Brown Rudnick. *Id.* at 19, 22-23 and Exhibit A.

6. On September 2, 2020, counsel for the Coalition filed its objection to the Motion. *Objection of the Coalition of Abused Scouts for Justice to Century and Hartford's Motion to*

---

[3] The original State Court Counsel originating the Coalition are identified as Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Kosnoff Law PLLC, AVA Law Group, Inc., Andrews & Thornton, ASK LLP, and Slater Schulman, LLP. *Id.* at 1, n. 2.

*Compel the Attorneys Representing the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019* (Sept. 2, 2020) [D.I. 1225].

7. Also on September 2, Hartford and a number of other creditors and other parties in interest filed objections to the 2019 Approval Motion.

8. On September 9, 2020, the Court held a hearing on the Coalition's request to file under seal some of the documents that it provided on August 26 as a supplement to its disclosures. In particular, the Coalition sought to seal the spreadsheet containing personal identifying information, as well as portions of the engagement agreements. During the course of that hearing, the Court directed the Coalition to provide Hartford and other parties in interest with unredacted copies of the engagement agreements (except for fee information) so that the parties could ascertain whether their production comports with the requirements of Rule 2019. At that hearing, Hartford and others (including the Committee) asked the Court to continue the hearing on the motions pertaining to the merits of the Rule 2019 disclosures to provide the parties the opportunity to review the unredacted documents, including to consider the ethical issues raised by the engagement agreements. The Court agreed and continued the hearing on the Motion, the Coalition's motion seeking a ruling that its disclosures are adequate, and the Coalition's motion to participate in the mediation. *See* Sept. 9, 2020 Hearing Tr. at 125 (relevant portions attached hereto as Exhibit 1).

### The Coalition's First Amended Rule 2019 Disclosures Were Insufficient

9. Following the September 9, 2020 hearing, Hartford and Century consulted with Professor Nancy Moore, a nationally-recognized expert in legal ethics and professor at Boston University School of Law and requested that she review the Coalition's Amended Rule 2019 Disclosures and supporting documents. *See* Declaration of Nancy J. Moore (Oct. 7, 2020)

("Moore Decl."; attached hereto as Exhibit 2).

10. Professor Moore concluded that material inconsistencies in the Coalition's initial disclosure documents leave a number of critical, unanswered questions about who the Coalition is, what interests it represents, and whether Coalition Counsel -- Brown Rudnick and Monzack Mersky -- have a proper attorney client relationship with the Coalition and/or the State Court Counsel firms that retained Coalition Counsel:

    a. The First Amended Rule 2019 Disclosures did not contain any information regarding who the members of the Coalition are, nor who engaged Brown Rudnick to serve as counsel for the Coalition. *See* Rule 2019(c)(2)(A). For example, Brown Rudnick's engagement letter states that Brown Rudnick is being retained only by the "Ad Hoc Committee," and that Brown Rudnick does not represent individual clients. Yet the State Court Counsel firms that executed the engagement expressly did so on behalf of their "respective Law Firm Clients." *See* Moore Decl. ¶¶ 8-9; Rule 2019 (c)(1)(A), Rule 2019 (c)(4).

    b. Nor is it apparent that the six originating law firms had the authority to engage Brown Rudnick in any event. The exemplar engagement agreements provided by State Court Counsel authorized the firms to associate co-counsel who would provide additional representation of the individual claimant in the prosecution of their claim -- they did not confer authority to form a wholly separate organization (the Coalition) that would then retain counsel to represent its interests. *See* Moore Decl. ¶ 10. That distinction is critical here, where Brown Rudnick's own retention letter clearly contemplates that conflicts may arise between the interests of various Coalition members. *See id.* ¶¶ 15-17.

    c. The First Amended 2019 Disclosures also made clear that the state law firms did not have their clients' respective informed written consent to form the Coalition and engage Brown Rudnick. The form of notice that the Coalition included with its disclosures indicates that the Coalition had already been formed at the time notice was provided. *See* Moore Decl. ¶ 10. And, even if consent could be provided after the fact, the Amended Disclosures provided no documentation suggesting that such consent was ever provided by any (let alone all) of the individual claimants. *See id.* ¶ 18.

    d. Some, if not all, of the originating law firms themselves lacked the ability to engage Brown Rudnick on behalf of their respective clients because those firms' own retention agreements failed to meet various ethical

requirements. *See* Moore Decl. ¶¶ 19-24. Critically, the State Court Counsel agreements did not disclose to their own clients that they were representing multiple clients with potentially conflicting interests in the bankruptcy case. *See id.*

11. Under these circumstances, there were significant questions concerning whether the Coalition had made sufficient disclosures under Rule 2019 to establish who its members actually were, how the Coalition came to have the capacity to act, and what authority Brown Rudnick, as its counsel, would have to act on its behalf.

### *The Second Amended Rule 2019 Disclosures*

12. On October 7, 2020 -- just six days ago -- the Coalition filed its Second Amended Rule 2019 Disclosures. *Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Oct. 7, 2020) [D.I. 1429] ("Second Amended Rule 2019 Disclosures").

13. The Second Amended 2019 Disclosures do not cure the infirmities of the Coalition's prior submissions. Rather, the Second Amended Rule 2019 Disclosures increase concerns about the likelihood that the Coalition is seeking to manufacture vast numbers of claims as part of an effort to take over control of these cases because the Second Amended Rule 2019 Disclosures now reports that the Coalition numbers exceed 28,000 claims -- a number that simply cannot be squared with the Debtors' experience in the tort system or prior abuse-focused bankruptcy cases. Second Amended Rule 2019 Disclosures ¶ 2.

14. Earlier this year, Tim Kosnoff of Kosnoff Law PLLC, one of the flagship firms behind the formation of the Coalition, sent colleagues (and, inadvertently, to the Committee) an e-mail which lays out the plan for the Coalition to form a voting bloc to take control away from the Committee, as Mr. Kosnoff put it: "They are wasting their time talking to the [Committee]. Here is the message: We control 80% of the claims, i.e., our coalition controls the case." *See*

Exhibit 1 to *Notice of Filing of Exhibit In Support of the Objection of the Tort Claimants' Committee to Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* (Sep. 8, 2020) [D.I. 1285-1] (emphasis added). In furtherance of that goal, Mr. Kosnoff and his colleague Mr. Van Arsdale (the sole attorney of record at AVA Law Group, Inc.) were instrumental in a comprehensive advertising campaign that this Court found contained misleading elements, including promises of a $1.5 billion trust fund and guarantees of complete anonymity. The Court subsequently entered an order prohibiting Kosnoff Law and AVA Law Group (among others) from engaging in similarly misleading advertising programs.

15. The Second Amended Rule 2019 Disclosures state that Kosnoff Law and AVA Law Group "and their principals have resigned from the Coalition." *See* Second Amended Rule 2019 Disclosures at 4, n. 3. But the Coalition is opaque as to what that means. The claimants that these entities represent "remain Coalition Members," and the law firm of Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., continues to participate in the Coalition as does Abused in Scouting (AIS), an organization affiliated with Kosnoff Law and AVA Law Group. *Id.* Kosnoff Law and AVA Law Group have fee sharing arrangements with the Eisenberg firm, and undoubtedly participate, at least informally, in determining the Coalition's strategy. By Mr. Kosnoff's own admission in his motion to quash his deposition, he still "currently [as of October 7] represent[s] several thousand claimant victims of abuse. . . . Mr. Kosnoff's list of clients is growing . . . ." *Motion of Tim Kosnoff, Esquire for Protective Order and to Quash Notice of Deposition* ¶ 3 (Oct. 7, 2020) [D.I. 1420]. The Coalition's most recent disclosures provide no information regarding Kosnoff Law and AVA Law Group's role in the Coalition's decision-

making process and Mr. Kosnoff refused to appear for his properly noticed deposition to answer any questions.

16. Moreover, the disclosures continue to leave unanswered many of the same questions about the nature of the Coalition and the capacity of its counsel to act. Once again, Century and Hartford consulted with Professor Moore, who reviewed the Second Amended Rule 2019 Disclosures, and concluded that they present many of the same informational deficits. *See* Supplemental Declaration of Nancy J. Moore (Oct. 13, 2020) ("Supp. Moore Decl."; attached as Exhibit 3):

   a. Indeed, from the disclosures it still is not even clear just who the "Coalition" actually is. At one point, the Disclosure states that the Coalition "is comprised of more than 28,000 Sexual Abuse Survivors." *See* Second Amended Rule 2019 Disclosures ¶ 2. Just a few paragraphs later, the disclosure states that the Coalition created an advisory board of five claimants "to participate in meetings of the Coalition and assist in deliberation concerning actions taken by the Coalition." *Id.* ¶ 5. Those statements cannot be reconciled with one another. This is a critical requirement of Rule 2019(c)(3), and it is similarly critical if the Coalition is to participate in these cases, for example, as a mediation party. The other parties in interest are entitled to know precisely whom the Coalition purports to represent. *See* Supp. Moore Decl. ¶ 13.

   b. Similarly, it is unclear who makes decisions on behalf of the Coalition and, who has "authoriz[ed] the entity, group, or committee" to act on behalf of the Coalition's members. The Second Amended Rule 2019 Disclosures contain numerous references to the Coalition's "by-laws" as the document that permits additional law firms -- including the six additional State Court counsel -- to join the Coalition as "New Voting Representatives."[4] *See* Amendment and Joinder to Engagement Letters at 1-2 [D.I. 1429-1]. Those by-laws are at the core of determining the Coalition's authorization to act on behalf of certain claimants, but have not been produced. *See* Supp. Moore Decl. ¶ 12.

   c. Moreover, to the extent that the Coalition members are individual claimants, there is no evidence that the members authorized the retention of bankruptcy counsel. The New Law Firms submitted, as part of the

---

[4] The New Law Firms are Motley Rice LLC ("Motley Rice"); Napoli Shkolnik PLLC ("Napoli"); Marc J. Bern & Partners LLP ("Bern"); Junell & Associates ("Junell"); Reich & Binstock LLP ("Reich") and Krause & Kinsman Law Firm ("Krause").

9

       amended disclosures, exemplar retention agreements that suffer many of the same defects as the originating firms. Some (but not all) of these retention agreements -- like those of the originating law firms -- state that the New Law Firms may associate in additional counsel. *See* Supp. Moore Decl. ¶ 11. But those agreements allow for association of counsel to represent the claimants' individual claims, not to associate with lawyers that may have other individuals with conflicting interests. *See id.* ¶ 14.

d.   The Coalition tried to fix this problem through notice and consent procedures. But those procedures were flawed. The notification of the engagement of Brown Rudnick, for example, was ineffective because it was sent after Brown Rudnick was already engaged and did not provide claimants with the opportunity to consult about the retention. *See* Supp. Moore Decl. ¶ 15.

e.   The Coalition also tried to seek, on a *post hoc* basis, approval of the claimants of the retention of Coalition Counsel. But the Second Amended Rule 2019 Disclosures do not provide sufficient information to capture whether that effort was sufficient and effective. There is no evidence that claimants were informed of potential conflicts. Nor is there evidence that claimants were informed of their right to decline. *See* Supp. Moore Decl. ¶ 16. Finally, the Disclosure indicates that only about 4,500 of more than 28,000 claimants affirmatively agreed to the bankruptcy counsel retention. *See* Second Amended Rule 2019 Disclosures ¶ 13. But there is no information regarding the other 23,500+ claimants, including whether any have *rejected* the retention proposal. In other words, assuming the claimants are the Coalition's members, there is not sufficient detail to identify which claimants have actually authorized coalition counsel to act on their behalf.

f.   Finally, the Second Amended Rule 2019 Disclosures do not provide enough information to determine whether the individual law firms, including the New Law Firms, had the capacity to retain Coalition Counsel. In particular, because Brown Rudnick (as it acknowledged) had potential conflicts of interest among claimants represented by different law firms, the individual firms had a duty to notify their respective clients of the potential conflicts before entering into an agreement with Brown Rudnick. *See* Supp. Moore Decl. ¶ 18. The Second Amended Rule 2019 Disclosures do not provide information as to whether this information was ever conveyed.

17.    The Second Amended Rule 2019 Disclosures, in other words, do not provide fulsome information concerning who are properly members of the Coalition, the facts and circumstances surrounding the formation of the Coalition and the persons or entities for whom

the Coalition purports to act. The Court should order complete disclosure on these issues.

## ARGUMENT

18.     The disclosure requirements of Rule 2019 are critical to ensuring an open bankruptcy process that is able to keep a check on conflicts that could endanger fair treatment of creditors. In contrast to official appointed committees that are appointed and that bear a fiduciary duty to the entire class of interests they represent, *ad hoc* committees, such as the Coalition, are not so bound. In such a case, Rule 2019 disclosures play a critical role in ensuring that the interests that are being represented are out in the open, and that an *ad hoc* group is not formed to covertly take control of a case at the expense of other creditors. Consequently, Rule 2019 requires disclosure of not simply the list of names of *ad hoc* committee members. It also requires disclosure of the facts and circumstances of the committee's formation and the facts (and documents) that empower the committee to act on behalf of its members.

19.     To date, the Coalition has provided (i) a listing of claimants, which it contends are the Coalition's members, (ii) the engagement letters for Coalition Counsel (along with the amendments thereto), (iii) exemplars of engagement letters from the State Court Counsel (including the New Law Firms), and (iv) a narrative description of the Coalition which appears to take inconsistent positions, stating that the claimants form the Coalition in some places, but suggesting that the State Court Counsel constitute the Coalition in other places. But the Coalition has not produced critical documents, such as by-laws, that "authorize" the Coalition to act on behalf of its members. Nor has the Coalition produced documents that resolve the inconsistencies concerning who makes up the Coalition and how does Coalition Counsel act on its behalf. And, critically, to the extent that the Coalition contends that the engagements agreements are the "empowering documents," the Coalition's Second Amended Rule 2019 Disclosures offer no facts

or documents to resolve the potential ethical issues that may negate their effectiveness.

20. The Coalition asserts that it disputes that there are any ethical issues, but it does not seriously refute them. Rather, the Coalition's central argument is that Rule 2019 is a disclosure provision, not an "ethics enforcement" provision; accordingly, it should be permitted to participate in these bankruptcy cases because it has disclosed client names, exemplar retention agreements and the Coalition Counsel (Brown Rudnick and Monzack Mersky) retention agreements. But that simplistic argument fails for a couple of reasons.

21. First, with respect to disclosure, the Coalition cannot credibly claim that it has met the requirements of the rule because its own disclosures make clear that documents are missing. The retention agreements between Brown Rudnick and the New Law Firms, for example, state that the law firms are "New Voting Representatives" and reference Coalition by-laws that clearly are intended to empower the Coalition to act on behalf of its members. *See* Amendment and Joinder to Engagement Letters [D.I. 1429-1]. The by-laws (and any other documents that create these "voting rights" of the law firms) are the type of written instrument "authorizing the entity, group, or committee to act on behalf of creditors" that must be disclosed. *See* Rule 2019(c)(4). In addition, it is unclear whether there are other writings that authorize the law firms that serve on the Coalition to act on behalf of individual claimants, including any claimants that are not represented by the ten law firms that appear to have retained Coalition Counsel.

22. Second, the disclosure requirements of Rule 2019 are inextricably linked to ensuring compliance with ethical obligations of counsel that are engaged to represent an *ad hoc* committee and/or its members. *See, e.g., In re Imperial "400" Nat'l, Inc.*, 481 F.2d 41, 55 (3d Cir. 1973) ("[I]t is apparent that the same concerns which are embodied in the Code of Professional Responsibility are also present in the statutory scheme governing corporate

reorganizations under the Bankruptcy laws."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 163 (D.N.J. 2005) ("Regulation of professional responsibility with respect to creditors' or debtors' counsel, moreover, is squarely within the purview of the bankruptcy court regardless of whether third party, nondebtors are involved."); *In re the Muralo Co. Inc.,* 295 B.R. 512, 524 (Bankr. D.N.J. 2003) (Rule 2019 "is designed to foster the goal of reorganization plans which deal fairly with creditors and which are arrived at openly.").

23. In this case, the Coalition contends that its "empowering documents" consist of (i) the Coalition Counsel (*i.e.*, Brown Rudnick) retention agreement, as amended; (ii) the individual State Court Counsel retention agreements with their respective clients; and (iii) the notice of engagement of Coalition Counsel provided to individual claimants. At the September 9 hearing, Coalition Counsel suggested that these three categories of documents made the base for a "three-legged stool" on which the Rule 2019 disclosures stand. *See* Sept. 9, 2020 Hearing Tr. at 89-91 (Exhibit 1). But that stool can only stand if the legs themselves are not rotted out, as the Committee's counsel informed the Court at the hearing: "If the law firms have ethical issues in connection with their underlying retentions, then I think it, in effect, infects Brown Rudnick's ability to represent people. . . . Everything in the Brown Rudnick engagement letter goes through the law firms." *Id.* at 112. In other words, this is not just an issue of ethical compliance because it goes to the very issue of whom Brown Rudnick is empowered to represent.

24. Here, in the absence of additional disclosure from the Coalition, there is substantial evidence that, in fact, *all three* legs of the stool may have holes. *See In the Matter of F&C Int'l, Inc.*, 1994 Bankr. LEXIS 274, *8 (Bankr. S.D. Ohio Feb. 18, 1994) (absent compliance with Rule 2019, there is a danger that "parties purporting to act on another's behalf may not be authorized to do so and may receive distributions to which they are not entitled"). As

Professor Moore explains in her declarations, it appears that the State Court Counsel, including the New Law Firms, lacked the authority from their clients to engage Coalition Counsel because (i) the engagement did not comport with the scope of associating in counsel that is provided for in any of the individual retainer agreements, and (ii) at any rate, it appears that all of the State Court Counsel law firms failed to appropriately disclose potential conflicts of interest and seek consent. *See, e.g.,* Moore Decl. ¶¶ 10, 19-24; Supp. Moore Decl. ¶¶ 11, 18.

25. The form notice that the Coalition disclosed informing claimants of the retention of Coalition Counsel was also ineffective because it came only after the fact of engaging Brown Rudnick and failed to provide meaningful notice and opportunity to discuss potential conflicts. *See* Supp. Moore Decl. ¶¶ 11, 16. And it is unclear, at best, whether the affirmative request for consent by the law firms fixes this problem, because only 4,500 of more than 28,000 claimants (16%) have given that consent. *See id.* ¶ 11.

26. Finally, the Coalition has not met its burden to show that the State Court Counsel retentions themselves permit State Court Counsel to engage Coalition Counsel. The State Court Counsel agreements do not disclose potential conflicts of interest and some of them contain numerous other provisions, such as provisions requiring counsel's consent to settle, that improperly burden the client's right to control their claim. *See* Moore Decl. ¶¶ 19-24; Supp. Moore Decl. ¶ 19. To establish that the three legs of its stool are solid, in other words, the Coalition must disclose all of the documents and other information to show that Coalition members were properly notified and gave informed consent to formation of the Coalition such that it is empowered to act on behalf of its putative membership.

27. It is particularly important in this case to understand from whom Coalition Counsel takes direction as well as whether, and the extent to which, the Coalition and Coalition

Counsel is empowered to represent individual claimants. Fulsome disclosure is important for any *ad hoc* committee such as the Coalition that does not purport to represent the interests of other creditors beyond its members. *See, e.g., In re the Muralo Co. Inc.*, 295 B.R. at 524 (Rule 2019 fosters goal of reorganization plans that are arrived at openly).

28. Here, those concerns are heightened even further. Mr. Kosnoff's e-mail, the false and misleading advertising claims made by several of the firms now forming the Coalition, and the unprecedented explosion of claims all suggest that the Coalition is seeking to represent narrower interests than the broader body of claimholders that the Committee already represents. And, while representing that distinct interest, the Coalition intends to create a substantive, blocking vote for or against any proposed plan, as Mr. Kosnoff's e-mail makes clear. To the extent that the Coalition intends to supplant the Committee -- in whole or even in part -- Rule 2019 is intended to make sure that those interests are out in the open, so that all parties understand what interests are being represented.

29. For the same reasons, the Coalition's request to participate in the mediation is premature when its Rule 2019 obligations remain extant. As things currently stand, it is unclear who empowers the Coalition to act and whether the claimants that may be members of the Coalition can be said to have authorized Coalition Counsel to act on their behalf. Other parties to the mediation cannot even be sure with whom they are negotiating. That is what Rule 2019 is intended to prevent; bankruptcy courts have prohibited unofficial committees from acting absent compliance with Rule 2019. *See, e.g.*, *Oklahoma P.A.C.*, 122 B.R. 387, 390 (Bankr. D. Ariz. 1990); *In re Vestra Indus., Inc.*, 82 B.R. 21, 22 (Bankr. D.S.C. 1987).

30. The Court accordingly should deny the Coalition's motion for a ruling that they have fully complied with Rule 2019, deny the Coalition's motion to participate in the mediation

as premature, and grant the Motion, and enter an order requiring the Coalition to produce, without further delay: (i) <u>all</u> of the Coalition's documents empowering it to act, including the Coalition by-laws and any other documents that inform the powers of a "Voting Representative" to act; (ii) all other documents that reflect any financial relationship between any of the Coalition members and their counsel, or between and among various State Court Counsel that promote or are part of the Coalition (such as fee sharing arrangements); and (iii) documents that establish that there are legitimate attorney-client relationships between the individual claimants, their respective counsel, and authorizing the retention of Brown Rudnick and Monzack Mersky as Coalition Counsel.

## **CONCLUSION**

Hartford and Century respectfully request that the Court grant Century and Hartford's Motion, direct the Coalition to make all disclosures required under Rule 2019 and preclude the Coalition from participating further in these cases until such disclosures are made.

| | |
|---|---|
| Date: October 13, 2020<br> Wilmington, Delaware | BAYARD, P.A.<br><br> */s/ Gregory J. Flasser*  <br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 655-5000<br>Facsimile: (302) 658-6395<br>Email: efay@bayardlaw.com<br>         gflasser@bayardlaw.com<br><br>- and -<br><br>James P. Ruggeri (admitted *pro hac vice*)<br>Joshua D. Weinberg (admitted *pro hac vice*)<br>SHIPMAN & GOODWIN LLP<br>1875 K Street, NW, Suite 600<br>Washington, DC 20003<br>Tel: (202) 469-7750<br>Fax: (202) 469-7751 |

*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company*

STAMOULIS & WEINBLATT LLC

<u>*/s/ Stamatios Stamoulis*</u>
Stamatios Stamoulis (#4606)
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Tel.:  (302) 999-1540
Fax:  (302) 762-1688

Tancred Schiavoni (pro hac vice)
Janine Panchok-Berry (pro hac vice)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Tel.:  (212) 326-2000
Fax:  (212) 326-2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*