# EXHIBIT 1

```
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2
                                         .    Chapter 11
 3    IN RE:                             .
                                         .    Case No. 20-10343 (LSS)
 4    BOY SCOUTS OF AMERICA and          .
      DELAWARE BSA, LLC,                 .    Courtroom No. 2
 5                                       .    824 North Market Street
                                         .    Wilmington, Delaware 19801
 6                                       .
                       Debtors.          .    September 9, 2020
 7    . . . . . . . . . . . . . . . .         11:00 A.M.

 8

 9                  TRANSCRIPT OF TELEPHONIC HEARING
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                 UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For the Debtor:          Derek C. Abbott, Esquire
                               MORRIS, NICHOLS, ARSHT & TUNNELL LLP
13                             1201 North Market Street, 16th Floor
                               P.O. Box 1347
14                             Wilmington, Delaware 19899

15                             - and -

16                             Jessica C. Boelter, Esquire
                               Michael Andolina, Esquire
17                             Matthew Linder, Esquire
                               SIDLEY AUSTIN LLP
18                             787 Seventh Avenue
                               New York, New York 10019
19

20    Audio Operator:          Nicki Barksdale

21    Transcription Company:   Reliable
                               1007 N. Orange Street
22                             Wilmington, Delaware 19801
                               (302)654-8080
23                             Email: gmatthews@reliable-co.com

24
      Proceedings recorded by electronic sound recording;
25    transcript produced by transcription service.
```

1 docket, we have the exhibits available, we're not requiring
2 every party to file a motion and jump through those hoops to
3 get access to that information, but we're simply asking that
4 the information be treated as confidential, in accordance
5 with the protective order that has already been entered into
6 this case, and that many of these parties have already signed
7 onto, and we'll provide that information, and in many cases,
8 Your Honor, have already provided that information to certain
9 mediation parties that requested the information and agreed
10 to keep it confidential.
11         THE COURT:  Okay.  You have another bucket?
12         MS. BEVILLE:  I have another bucket.  The other
13 bucket is what I will call the C4 documents or the empowering
14 documents.  And so, Your Honor, these are the requirements
15 stated in Rule 2019 that requires a filing of the copy of the
16 instrument, if any, that authorizes the group to act on
17 behalf of the creditors.
18         And here, Your Honor, I think we've referred to
19 them sometimes as the three-legged stool there.  Are three
20 pieces of information that, in essence, connect the dots here
21 to demonstrate the authority that Brown Rudnick has to act on
22 behalf of the coalition and its members.
23         First, Your Honor, we have redacted copies of the
24 engagement letters between the coalition and Brown Rudnick.
25 Originally, Your Honor, we have engagement letters with Blank

1 Rome, but as you have noted, as Rachel Mersky noted earlier,
2 Blank Rome has withdrawn as counsel and Rachel Mersky has
3 come in as a substitution of counsel, and that engagement
4 letter will be subject to the same level of disclosure
5 determined for the Brown Rudnick engagement letter, but that
6 engagement letter is being finalized and signed by the
7 clients, even as we speak.
8 　　　　　So, Your Honor, there's the engagement letter
9 between the coalition and the coalition counsel; it's Brown
10 Rudnick in here, Rachel Mersky.  There is the redacted
11 exemplars of the engagement letters between what I'll call
12 state court counsel and their clients.
13 　　　　　And so, you'll recall earlier, Your Honor, I
14 listed the names of six law firms, are identified in our 2019
15 statement.  Those six law firms, Your Honor, have individual
16 engagement letters with each of their clients and so rather
17 than produce 12,000 copies of signed engagement letters, Your
18 Honor, the case law supports that to satisfy Rule 2019,
19 parties can provide exemplars of the engagement letters that
20 have been signed.
21 　　　　　And so, here, Your Honor, we have made available
22 exemplars of the engagement letters between the individual
23 state court counsel and their clients; those are the
24 coalition members.
25 　　　　　And, Your Honor, the third piece of information

1  that I don't believe is necessary under Rule 2019 or the
2  documents that have previously been identified, we've also
3  included exemplars of the notice that the state court counsel
4  sent to their clients that informed their clients about the
5  formation of the coalition, their clients' participation in
6  the coalition and the coalition's retention of Brown Rudnick
7  as counsel.
8           And so, Your Honor -- but those three documents, I
9  will call the "empowering documents" and we can get to later
10 in argument the sufficiency of those documents, those
11 documents have been provided, were publicly filed on Friday.
12          Your Honor, let me provide you -- they were filed
13 on Friday at Docket Number 1257-1.  So, those engagement
14 letters and exemplar notifications are publicly available as
15 Exhibit 1 to our omnibus reply.
16          Portions of the engagement letters were redacted
17 as those portions were redacted, Your Honor, because they're
18 not relevant to 2019.  We included the provisions that
19 provide for the authorization and those are the elements that
20 were required, so that's what was disclosed, and we did
21 redact the remainder or the irrelevant portions of those
22 retainer agreements, and primarily, as to relevance, but
23 also, Your Honor, there is commercially sensitive information
24 as far as, you know, pricing or whatnot that we did not -- we
25 sought to protect under the motion to file under seal.

1   whether or not there was ethical compliance in a sense -- in
2   connection with the retentions, themselves, because the
3   concern was that the retentions, in essence, be valid in
4   retentions, that these folks really can bind their individual
5   clients.
6         There's a central issue, just with the Brown
7   Rudnick, which, you know, I'm a fast reader, but I couldn't
8   get through what had been withheld in terms of engagement;
9   whether or not they really represent any claimants.  And the
10  form of this that was previously filed that was redacted, it
11  showed exhibit -- the exhibit as being redacted as if it
12  listed the members.
13        What we just got is not redacted; it's just blank,
14  okay.  And so it terms in there that, say, things like you
15  consent to pay our fees, members, but by paying them we don't
16  have an attorney-client relationship with them.
17        That's not the kind of provision I run into very
18  often and we would like to consult with Charles Selena
19  (phonetic) on that and whether or not these are valid
20  retentions.  These are people that we can sit down and
21  negotiate with them and can actually bind the individual
22  members.
23        MR. STANG:  Your Honor, Mr. Stang on behalf of the
24  tort claimants committee.
25        Your Honor, your request is, as I understood it,

1  do I have to get into the issues of whether these agreements
2  comply with the ethical requirements of state law to deal
3  with the 2019 statement?
4           It is fundamental to -- an answer to that question
5  is, who makes up this so-called coalition?  Is it abuse
6  survivors?  Is it abuse survivors and law firms?  Is it law
7  firms only?
8           And to the extent -- and it's very clear, even
9  from the Brown Rudnick engagement letter that was redacted --
10 that it can only act upon the unanimous direction of the
11 (indiscernible) law firm.
12      (Audio feedback)
13          MR. STANG:  I'm getting an echo, but I'm not sure
14 why.
15          If the law firms have ethical issues in connection
16 with their underlying retentions, then I think it, in effect,
17 infects Brown Rudnick's ability to represent people, because
18 they can only take direction from -- if all of those law
19 firms unanimously consent.  Everything in the Brown Rudnick
20 engagement letter goes through the law firms.
21          There's -- in my quick read, there's not a single
22 provision that there that actually doesn't go through the law
23 firms, as communication consents, and as I read it, I
24 wondered if any of the 12,000 men have ever seen the Brown
25 Rudnick engagement letter, much less consented to it

1  that supplying Mr. Ruggeri and Mr. Schiavoni with the
2  unredacted Exhibit A, subject to the protective order, is not
3  an issue, correct?
4              MS. BEVILLE:  Your Honor, the unredacted Exhibit A
5  is the names and addresses of the sexual abuse victims.
6              THE COURT:  Uh-huh.  So, subject to the
7  confidentiality order, is that an issue?
8              MS. BEVILLE:  Your Honor, let me just -- I think
9  we can do that, Your Honor.  I'd also like to just make sure
10 that it's entitled to the same protections as that
11 information is provided under the bar date order, so that
12 there's not, I'll say, additional access, perhaps, given or
13 ability to share anything that's provided under the bar date
14 order.
15             THE COURT:  Okay.  I will let you look for that.
16             In terms of the TCC, I assumed those redactions
17 were related to the redactions in the exemplars and the
18 retainer letters, and, therefore, the TCC's filings can be
19 unredacted and filed on the public docket.
20             MS. BEVILLE:  Your Honor --
21             MR. STANG:  Your Honor, that is correct, with the
22 exception of our redacted exhibit of Mr. Kosnoff's email.
23 The redactions refer to conversations between committee
24 members and counsel -- not my firm -- but lawyers who operate
25 under a common interest agreement at the time with the

1           CERTIFICATE

2

3       I certify that the foregoing is a correct transcript

4  from the electronic sound recording of the proceedings in the

5  above-entitled matter.

6
   /s/Mary Zajaczkowski                September 11, 2020
7  Mary Zajaczkowski, CET**D-531

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25