**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered |

**Hearing Date: October 14, 2020 at 10:00 a.m. (ET)**

**OMNIBUS REPLY OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE TO
OBJECTIONS OF CERTAIN EXAMINEES TO MOTION OF OFFICIAL TORT
CLAIMANTS' COMMITTEE FOR AN ORDER AUTHORIZING
THE ISSUANCE OF SUBPOENAS FOR DISCOVERY FROM
<u>DEBTORS AND CERTAIN LOCAL COUNCILS</u>**

The official committee of tort claimants (consisting of survivors of childhood sexual

abuse) (the "<u>Tort Claimants' Committee</u>" or the "<u>TCC</u>") appointed in the above-captioned cases

(the "<u>Cases</u>") hereby submits this omnibus reply to the following objections (collectively, the

"<u>Objections</u>") to the *Motion of the Official Tort Claimants' Committee Pursuant to Bankruptcy*

*Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for*

*Discovery from Debtors and Certain Local Councils* [Docket No. 1379] (the "<u>Motion</u>"):[2]

- *Objection of Circle Ten Council to Motion of the Official Tort Claimants' Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery from Debtors and Certain Local Councils* [Docket No. 1421] (the "<u>Circle Ten Objection</u>")

- *Capitol Area Council's Joinder to Circle Ten Council's Objection to the Official Tort Claimants' Committee's Motion for an Order Authorizing the Issuance of Subpoenas*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*for Discovery from Debtors and Certain Local Councils Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1* [Docket No. 1422] (the "<u>Capitol Objection</u>")[3]

- *Baltimore Area Council's Objection to Tort Claimants' Committee's Rule 2004 Motion for an Order Authorizing the Issuance of a Subpoena* [Docket No. 1423] (the "<u>Baltimore Objection</u>")

- *Limited Objection and Reservation of Rights of Bay-Lakes Council* [Docket No. 1425] (the "<u>Bay-Lakes Limited Objection</u>")[4]

- *Objection of the Greater St. Louis Area Council to the Motion of the Official Tort Claimants Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery from Debtors and Certain Local Councils* [Docket No. 1434] (the "<u>St. Louis Objection</u>")

- *Objection of Daniel Webster Council to Motion of the Official Tort Claimants Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 for an Order Authorizing the Issuance of Subpoenas for Discovery from Debtors and Certain Local Councils* [Docket No. 1459] (the "<u>Daniel Webster Objection</u>")

- *Objection of Orange County Council of the Boy Scouts of America to Motion of the Official Tort Claimants' Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 For An Order Authorizing the Issuance of Subpoenas For Discovery From Debtors and Certain Local Councils* [Docket No. 1462] (the "<u>Orange County Objection</u>" and, together with the Circle Ten Objection, Capitol Objection, Baltimore Objection, Bay-Lakes Limited Objection, St. Louis Objection, and Daniel Webster Objection, the "<u>Additional Local Council Objections</u>")

- *Objection of the Ad Hoc Committee of Local Councils to Tort Claimants' Committee's Rule 2004 Motion* [Docket No. 1480] (the "<u>Ad Hoc Objection</u>")

- *Debtors' Limited Objection To The Motion Of The Official Tort Claimants' Committee Pursuant To Bankruptcy Rule 2004 And Local Rule 2004-1 For An Order Authorizing The Issuance Of Subpoenas For Discovery From Debtors And Certain Local Councils* (the "<u>BSA Objection</u>") attached to the *Debtors' Motion For Leave To File Debtors' Limited Objection To The Motion Of The Official Tort Claimants' Committee Pursuant To Bankruptcy Rule 2004 And Local Rule 2004-1 For An Order Authorizing The Issuance Of Subpoenas For Discovery From Debtors And Certain Local Councils* [Docket No. 1481]

---

[3] The Capitol Objection is a joinder in the Circle Ten Objection.  All references to the Circle Ten Objection shall include the Capitol Objection.

[4] The Bay-Lakes Limited Objection reserves its rights to object to a subpoena but does not raise any objections therein.

## PRELIMINARY STATEMENT

1.      The TCC's Rule 2004 Motion seeks entry of an order authorizing the issuance of narrowly tailored subpoenas against (1) the BSA, (2) eight Local Council Committee Members, and (3) thirty-nine Additional Local Councils.  The Rule 2004 Motion has been conditionally resolved, except with respect to the issue of Rosters.[5]

2.      Objections were filed by the Debtors, Ad Hoc Committee and seven (7) of the thirty-nine (39) Additional Local Councils, none of whom responded to the TCC's informal document requests.  In addition to certain objections concerning the production of Rosters, the Objections raise a variety of unfounded procedural strawmen and complain that the Document Requests are premature, constitute harassment or bullying, or that the burdens of production exceed their value because certain of the Additional Local Councils have yet to decide whether to participate in the mediation.  As set forth in the Rule 2004 Motion, the TCC's request for Rosters is a legitimate use of Rule 2004 discovery in order to, *inter alia*, support a global mediation, assist in claims administration, and identify potential claims on behalf of the estates, and for such reasons, the Motion should be granted.[6]

---

[5] The TCC, Ad Hoc Committee and Debtors conditionally agreed on the scope and terms of production for all of the Discovery Requests except for Rosters.  *See Certification of Counsel Regarding Stipulation Regarding Motion Of The Official Tort Claimants' Committee Pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1 For An Order Authorizing The Issuance Of Subpoenas For Discovery From Debtors And Certain Local Councils* [Docket No. 1479] (the "Agreement").  The TCC has also made a proposal to attempt to resolve the issues concerning Rosters. *See infra* at 6 n.7.

[6] Since the issue of Rosters was expressly carved out of the Agreement, the Rule 2004 Motion should be granted on the issue of Rosters as against the thirty two (32) Additional Local Councils who failed to object or otherwise oppose the relief sought therein.

DOCS_LA:333026.6 85353/002

**REPLY**

A.      **Propriety of Request for Rosters**

3.      The Debtors, the Ad Hoc Committee and Daniel Webster Local Council object to the TCC's request for Rosters on the grounds that the purpose for which they are sought is improper.  This is simply untrue.  As set forth in greater detail in the Motion, the Rosters are relevant for many reasons, including to (further) validate claims, to find and/or evaluate assets and insurance, and to (further) establish liability of the Debtors and third parties who seek to participate in the channeling injunction.  The suggestion that the TCC's request for these Rosters is premature or "harassing" is not well taken.  No objecting party disputes that abuse survivors may have claims against at least three different entities:  the Debtors, a "local council" that managed Boy Scout units (like a Boy Scout Troop or a Cub Scout Pack) in a defined geographic area, and a "sponsoring" or "chartering" organization that managed a particular Boy Scout unit.

4.      The sponsoring organization is responsible for staffing its scouting unit with adult volunteers, including any scoutmaster, assistant scoutmasters, and other scout leaders, and for recruiting children to become scouts of the particular scouting unit. The Debtors require the sponsoring organizations to renew their charters on an annual basis and each year to submit Rosters that include the names of each adult volunteer and each child member.  Most Rosters provide the following information for the scouting unit:  the address, the local council responsible for the scouting unit, the name and address of the sponsoring organization, the executive officers and volunteers, the location where meeting are held, and the children/scouts (including name, age, address, and contact information).  Thus, the Rosters identify the local council and sponsoring organization which may be liable for abuse.

5.      These sponsoring organizations may have insurance that provides coverage for claims made in the bankruptcy.  The Rosters will help the TCC, as well as the

4

Debtors and other interested parties, corroborate certain claims, particularly if a claimant does not recall certain information about their scouting unit, such as the scouting unit number, the name of the local council who was responsible for their scouting unit, or the name of the organization that sponsored their Scouting unit.  Other claimants, particularly those where the abuse happened when they were very young, may not recall the specific year(s) of the sexual abuse, some do not recall the name of the Scout leader who abused them, and some do not recall the names of adults who received complaints and ignored them or saw "red flag" behavior and ignored it.  These are just some of the reasons for the Debtors, the Ad Hoc Committee and the Additional Local Councils should be ordered to produce the Rosters.

6.    That the Examinees can identify a hypothetical improper purpose or additional purposes outside the "unfettered and broad" scope of Rule 2004 does not negate the TCC's right to seek such discovery under Rule 2004.  The primary purpose for which the Rosters are sought is to support a global mediation.  The TCC must have sufficient information to negotiate a consensual plan and the Rosters are a critical component of an overall understanding of the Debtors' assets and liabilities.  In addition to filling out the picture of the Debtors' abuse liabilities, the Rosters will enable all parties to identify sponsoring organizations which may be liable to the Debtors for contribution/indemnity in states with joint and several liability tort systems.  The possibility of a global resolution is enhanced further  if the Debtors' and Local Councils' insurance carriers can identify the sponsoring organizations to determine if they (the carriers) have claims against the sponsoring organizations and ascertain whether they may be the target of the sponsoring organizations' own insurance carriers.  None of the objecting parties explain how the mediation can succeed if this piece of the puzzle is kept secret by the Debtors and Local Councils.

5

7.      Further, the objecting Examinees have not demonstrated an undue burden in collecting Rosters relative to the benefits to be achieved from a global mediation for the benefit of sexual abuse survivors in these cases, nor have the objecting Examinees attempted to tailor the scope of the request for Rosters to those years for which they have ready access. Indeed, it is hard to understand how producing these Rosters could be any sort of administrative hardship, let alone an undue hardship, and the objecting Examinees offer no evidentiary support for their contentions.

8.      Finally, the TCC is committed to working with the parties to address their privacy concerns, having offered to designate any "below the line" information as "highly confidential."  Motion at 18, n.11.  Nonetheless, the Ad Hoc Objection misrepresents the TCC's proposal, stating the TCC's "failure to tailor the request in any way to its purported needs justif[ies] denying this request outright."  Ad Hoc Objection ¶18.[7]  While the BSA Objection raises issues regarding solicitations of Scouts, there is no evidence that any such efforts were taken by the TCC or its members, nor that the provision of the Rosters on the terms set forth in the Motion, including highly confidential designations, would result in harassment, inappropriate contact, or contact of any kind directed toward Scouts.

9.      The Debtors, Ad Hoc Committee and Daniel Webster Local Council extensively cite *In re Millennium Lab Holdings II*, LLC, 562 B.R. 614, 626 (Bankr. D. Del. 2016) for the proposition that post-confirmation Rule 2004 discovery for the purpose of

---

[7] In contrast to the TCC's attempt to address certain of the objecting Examinee's concerns, the objecting Examinees offer nothing in terms of time, access or use limitations designed to address their concerns choosing instead to push forward with a blanket refusal to provide the Rosters under any circumstances.  Nevertheless, in furtherance of the TCC's efforts to address the Objecting Parties' concerns, the TCC delivered a comprehensive proposal prior to the filing of this Reply that the BSA and Ad Hoc Committee are considering.  *See Declaration of John W. Lucas in Support of Omnibus Reply of the Official Tort Claimants' Committee to Objections of Certain Examinees to Motion of Official Tort Claimants' Committee for an Order Authorizing the Issuance of Subpoenas for Discovery From Debtors and Certain Local Councils*, filed contemporaneously herewith, Exhibit A.

identifying claims against third parties is inappropriate.  However, that only applies when the

potential third party claims are *held by a third party*.  In *Millennium*, the Court did not permit

discovery related to claims of the Debtors' lender against third parties.  562 B.R. at 628.  In this

case, the Rule 2004 exam pertains to information critical to the negotiation of a consensual

reorganization plan, the assessment of claims against the Debtors, claims held by the Debtors,

and issues relevant to the Debtors' insurance carriers.  This kind of discovery is well within the

permitted scope of Rule 2004.

**B.      Rule 2004 Is Appropriate Regardless of Whether a Local Council
         Intends to Participate in Mediation**

10.     The Motion sets forth the reasons that each Discovery Request concerns

the administration of the cases.  While the Objections attempt to cast the requests as unnecessary,

harassment or bullying, or disproportionate to the burdens of production, there are compelling

reasons the information is needed and the requests are well within the broad scope of Rule 2004.

11.     The Circle Ten Objection, Orange County Objection and Baltimore

Objection assert that the Motion is premature or inappropriate because they have not yet decided

to participate in any mediation (although they did elect to get the protections of the preliminary

injunction).  This objection reflects a misunderstanding of the Motion and is otherwise legally

irrelevant.  The TCC needs to review and analyze the information responsive to the Discovery

Requests to enable the *TCC* to participate in the mediation with the Debtors.  The presence or

absence of any individual Local Council or sponsoring organization does not obviate the need for

the Discovery Requests because information responsive to the Discovery Requests bear on, *inter*

*alia*, the extent of the *Debtors*' assets, the availability of insurance that may provide coverage for

the Debtor and/or other organizations that choose to participate, and to provide missing claim

7

data and/or to corroborate claims.[8]  While the Additional Local Councils are obviously loathe to acknowledge that the Debtors have a contingent interest in their assets, the Additional Local Councils cannot avoid this issue by objecting to legitimate discovery.

12.     The Circle Ten Objection, Orange County Objection, and Baltimore Objection also contend that there are no or may be no claims against them.  This argument is irrelevant because Rule 2004 is not limited to claimants, co-obligors or mediation counterparties; so long as the requested information relates to matters affecting the administration of the case, the requested information may be sought.  Further, this argument is factually incorrect. Substantial claims have been asserted against each objecting Additional Local Council.  Lucas Dec. Ex. B (note that Exhibit B does not reflect the likely additional claims filed to date which are missing information regarding the Local Council to which the claim is associated).

**C.    Procedural Objections**

**1.     Meet and Confer Requirements Were Met**

13.     The Greater St. Louis Objection and Orange County Objection assert that no relief can be granted because the parties did not "meet and confer."  The Orange County Objection cites to the text of the applicable local rule, Local Bankruptcy Rule 2004-1, which requires that counsel for the party seeking to examine any entity "shall attempt to confer."  Local Rule 2004-1(a).  These objections are baseless.  As set forth in the Motion and Declaration of James O'Neill in support thereof, counsel for the TCC did *attempt* to confer with each Additional Local Council by sending a letter to each Additional Local Council, for which no Additional Local Council responded in any manner whatsoever.[9]

---

[8] The Debtors' contingent interest in the Local Councils' assets is described in the Motion, the pleadings related to the Middle Tennessee Council (Docket No. 1084), and other pleadings filed in the Case.

[9] Moreover, this objection also ignores the facts that (a) the TCC has "met and conferred" with the Debtors and the Ad Hoc Committee countless times, over many months, concerning Rosters for *all* Local Councils; and (b) the

2.      **Rule 2004 Motion Does Not Violate the Consent Order or the Pending
        Proceeding Rule**

        14.      The Circle Ten Objection alone asserts that the Motion is an "assault" on

the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a*

*Preliminary Injunction* (Adv. Pro. Docket No. 54) (the "Consent Order").  This is based on

Circle Ten's egregious misunderstanding of the Consent Order.  The Circle Ten Objection states

that any actions by parties to the Consent Order are stayed:

> The TCC's actions in filing the Motion constitute "other actions by the parties **[to
> the Consent Order]** in furtherance of their prosecution or defense" and violate
> the Preliminary Injunction.

Circle Ten Objection, ¶ 19 (emphasis added).  However, the Consent Order makes clear that the

reference to "parties" is other parties *to the prepetition abuse actions*, not parties to the Consent

Order:

> [t]he Pending Abuse Actions set forth on Schedule 1 are hereby stayed as to the
> BSA Related Parties, and any and all further proceedings in the Pending Abuse
> Actions, or other actions **by the parties thereto** in furtherance of their
> prosecution or defense, are hereby stated, prohibited and enjoined . . .

Consent Order, ¶ 3 (emphasis added).  The stay of the Consent Order does not apply to the

TCC's 2004 Motion.  Similarly, the "narrow exception" of permitted discovery in the Consent

Order only relates to discovery *by a plaintiff in a prepetition abuse action*.  The Consent Order

simply does not limit the ability of the TCC to seek discovery under Rule 2004.

        15.      Finally, the TCC's support for continuing the Consent Order is dependent

on the TCC obtaining relevant information to support a global settlement of abuse claims.  If the

Consent Order actually prohibits Rule 2004 discovery, the TCC will simply not agree to further

---

objectors' blanket refusal even now to offer any terms of production proves that any "meet and confer" would have
been futile.  *See* Local Rule 2004-1(a).

extend the standstill, which will obviate that issue.  Notably, no other Local Council, each of whom is a beneficiary of the Consent Order, seeks that result.

16.     Alone among the Examinees, the Circle Ten and Orange County Objections also assert that the Motion impermissibly seeks discovery related to matters pending before the Court in the Adversary Proceeding.  This assertion elevates form over substance and ignores the purpose of the rule which is to prevent parties from unfairly using Rule 2004 to circumvent the stricter discovery limitations that apply to adversary proceedings.

17.     Here, (a) the BSA commenced the adversary proceeding for the benefit of the Local Councils; (b) the Tort Claimants' Committee joined the adversary proceeding solely to participate in negotiations concerning the extension of the injunction; (c) the BSA does not seek substantive relief against the Tort Claimants' Committee nor could it since the Tort Claimants' Committee was not party to any pre-petition litigation, the cessation of which is the object of the adversary proceeding; (d) the information sought is irrelevant to the merits of the injunctive relief sought by the Debtor or to any other pending proceeding; and (e) the information sought is relevant to the Cases for the reasons previously described.  Accordingly, the TCC is not using Rule 2004 to obtain an unfair advantage against parties to a pending litigation.[10]

### 3.     Additional Alleged Procedural Defects

18.     The Circle Ten and Orange County Objections suggest that a Rule 2004 examination does not apply to non-debtors by citing the portion of the Rule related to debtors (Rule 2004(d)).  This argument is based on an inaccurate reading of the Rule 2004, which

---

[10] Notably, nothing in the adversary proceeding, or the parties' agreement to consensually extend the injunction, reflects any understanding that the TCC has broadly surrendered its right to seek discovery under Rule 2004.

provides that "the court may order the examination **of any entity**."  Fed. R. Bank Pro. 2004(a)

(emphasis added).[11]

19.    The Circle Ten and Orange County Objections also suggest that the

Bankruptcy Court cannot issue a subpoena on the Local Councils because they are located out of

state.  Rule 2004(c), however, provides that the attendance of an entity for the production of

documents, *whether the examination is to be conducted within or without the district in which*

*the case is pending*, may be compelled as provided in Rule 9016 for the attendance of a witness

at a hearing or trial.  Bankruptcy Rule 9016, which applies Rule 45 of the Federal Rules of Civil

Procedure to bankruptcy cases, permits nationwide service of a subpoena.  Further, the subpoena

will not require any producing party to travel outside of a 100-mile radius.

20.    The Circle Ten and Orange County Objections also assert that Rule 45

does not authorize a court to compel non-parties to answer interrogatories.  However, the TCC

does not seek a subpoena under Rule 45.  The applicable rule is Bankruptcy Rule 2004, which

does authorize non-parties to answer interrogatories.  *In re Discovery Zone, Inc*., No. 99-941,

2001 Bankr. LEXIS 1253, *2, 2001 WL 1819994 (Bankr. D. Del. Sept. 14, 2001) ("it should

seek a Rule 2004 order which will allow it to propose interrogatories").

21.    The St. Louis and Daniel Webster Objections assert that an order under

Rule 2004 directing the production of documents does not provide them the same ability to

object as compared to the issuance of a subpoena.  Like the TCC's original September 4, 2020

requests, the Rule 2004 Motion specifically identify the documents and information

requested.  If the St. Louis and Daniel Webster Local Councils object to the scope of the

Discovery Requests, they should have raised such objections in response to the Rule 2004

---

[11] *See* also Fed. R. Bank. Pro. 2004(c) (the "attendance **of an entity** for examination and for the production of documents . . . ") (emphasis added).

Motion rather than suggesting that they will get another "bite at the apple" to the extent the

Motion is granted; their failure to raise any objection to the scope or content of the Discovery

Requests should bar them

CONCLUSION

For the reasons set forth in the TCC's Rule 2004 Motion and those set

forth herein, the Tort Claimants' Committee respectfully requests that the Court overrule the

objections in their entirety, enter the proposed Order, and grant the Tort Claimants' Committee

such other and further relief as it deems just and proper under the circumstances.

Date: October 13, 2020                     **PACHULSKI STANG ZIEHL & JONES LLP**

                                           */s/ James E. O'Neill*
                                           James I. Stang (CA Bar No. 94435)
                                           John A. Morris (NY Bar No. 2405397)
                                           James E. O'Neill (DE Bar No. 4042)
                                           John W. Lucas (CA Bar No. 271038)
                                           919 North Market Street, 17th Floor
                                           P.O. Box 8705
                                           Wilmington, DE  19899 (Courier 19801)
                                           Telephone: 302-652-4100
                                           Facsimile: 302-652-4400
                                           Email: jstang@pszjlaw.com
                                                  jmorris@pszjlaw.com
                                                  joneill@pszjlaw.com
                                                  jlucas@pszjlaw.com

                                           *Counsel for the Tort Claimants' Committee*