**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: November 18, 2020 at 10:00 a.m. (ET)** |
| | **Objection Deadline: October 28, 2020 at 4:00 p.m. (ET)** |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER**
**EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE**
**A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), extending the Debtors' exclusive periods to (a) file a chapter 11 plan (the "Exclusive Filing Period") by 180 days, to and including April 13, 2021, and (b) solicit votes thereon (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") by 180 days, to and including June 14, 2021, without prejudice to the Debtors' rights to seek further extensions of the Exclusive Periods. In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      The Debtors commenced these chapter 11 cases to achieve the dual objectives of (a) timely and equitably compensating survivors of abuse in Scouting and (b) ensuring that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission. These

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

objectives remain unchanged. As the Debtors have emphasized since the outset of their restructuring, the complexity and sheer number of issues that must be addressed in connection with a global resolution of Scouting-related abuse claims under a plan of reorganization cannot be understated. In anticipation of the November 16, 2020 claims bar date, the Debtors and the Court-appointed mediators have been taking numerous steps, with the involvement of the other mediation parties, to address these issues as they prepare for intensive negotiations regarding the structure and terms of a chapter 11 plan. The Debtors are committed to building consensus around a viable structure and terms for a plan of reorganization through mediated negotiations rather than value-destructive litigation. But these plan negotiations cannot begin in earnest until after the bar date, when all of the relevant parties will have access to comprehensive and definitive information regarding the abuse claims asserted against the BSA. The Debtors therefore need sufficient breathing room after the bar date to analyze abuse claims data with the assistance of their advisors, engage with their stakeholders in mediated plan negotiations, and prepare, file and solicit a confirmable chapter 11 plan.

2.      The Court appointed Judge Kevin Carey (Ret.), Mr. Paul Finn, and Mr. Timothy Gallagher as mediators on June 9, 2020. Shortly thereafter, certain of the Debtors' insurers moved the Court to reconsider the mediator-appointment order, which the Court denied on July 14, 2020. Thus, as a practical matter, the mediators have been fully up and running for only approximately three months. Given the complex organizational structure of the BSA and the myriad of challenging and fact-intensive issues that must be addressed under the Debtors' chapter 11 plan, the Debtors and the other mediation parties have spent significant time working with the mediators to ensure they are up to speed. These efforts have benefitted the Debtors' restructuring efforts and have promoted efficiency in these proceedings. Specifically, the mediators have assumed an

increasingly prominent and integral role in these cases by maintaining an ongoing dialogue among the Debtors and their constituents, brokering the resolution of contested matters, and framing discussions of key legal and factual issues.  The Debtors look forward to continuing to work with the mediators as they enter the next critical stage of these proceedings.

3.      When the Debtors commenced these cases more than seven months ago, they had already taken several decisive steps designed to ensure that these chapter 11 cases would proceed expeditiously.  These steps included engaging a future claimants' representative; assisting in the formation of the ad hoc committee of local councils; populating a data room with key diligence materials to minimize costly and time-consuming discovery; filing a plan of reorganization providing a framework for a global resolution of abuse claims; moving to establish the claims bar date; moving for entry of a preliminary injunction barring the filing and prosecution of abuse claims against the BSA and non-debtor local councils and chartered organizations; and seeking the appointment of skilled mediators to assist the Debtors and their stakeholders as they address the myriad of complex issues that must be resolved under a chapter 11 plan.  During the earliest stage of these cases, the Debtors seamlessly transitioned into bankruptcy and laid the extensive and necessary groundwork for negotiations with their principal stakeholders.  The cornerstone of these efforts was the Court's appointment of the mediators.

4.      Since the Debtors filed the first motion to extend the Exclusive Periods in mid-June, they have been committed to engaging in active, mediated discussions with their principal constituents, including representatives of abuse claimants, commercial creditors and insurers, as well as local councils.  At the mediators' request, in early August the Debtors submitted to the mediators and other mediation parties a 118-page mediation statement that addressed several complex legal issues relating to a potential global resolution of abuse claims.  Each of the other

mediation parties had the opportunity to review and prepare responses to the Debtors' mediation statement. The Debtors have also cooperated with their creditors to respond to numerous detailed requests for diligence and informal discovery to facilitate creditors' evaluation of a potential settlement framework. At the same time, the Debtors have been working to stabilize their operations amidst the COVID-19 pandemic.

5.      The Debtors have made extensive efforts to promote an expeditious resolution of these cases. As a non-profit corporation that relies largely on registration fees and donations, considerations of economy and speed are of the utmost importance to the BSA. Prolonged bankruptcy proceedings would result in additional professional fees at a time when the COVID-19 pandemic continues to have a pronounced negative effect on the BSA's operations by depressing youth registration and impeding the ability of Scouts to gather in groups. But, in light of the complexity of these cases and the numerous issues that remain to be addressed, it is inconceivable that the Debtors could file a confirmable plan of reorganization that resolves the abuse claims against the BSA and local councils in the near term. As noted above, the claims bar date is currently more than one month away, and the Debtors' highly specialized bar date noticing program—designed to reach more than 107 million men—has not concluded. Moreover, the Tort Claimants' Committee has refused all of the Debtors' requests to provide information regarding its constituents' abuse claims in advance of the bar date. As a result, the Debtors cannot evaluate abuse claims with precision until after the bar date.

6.      Termination of the Exclusive Periods at this time would derail the Debtors' progress toward a confirmable plan that provides for a global resolution of abuse claims against the BSA and local councils. If the Exclusive Periods are not extended, there is a material risk that the distraction and diversion of resources that would result from the filing of one or more potential

competing plans would render a global resolution impossible.  For these reasons, the Court should grant the requested extension of the Exclusive Periods.

## STATUS OF CASES AND JURISDICTION

7.      The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

8.      On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.  On April 24, 2020, the Court appointed James L. Patton, Jr. as the legal representative of future abuse claimants (the "Future Claimants' Representative") pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

9.      On June 16, 2020, the Debtors filed their first request to extend the Exclusive Periods [Docket No. 858] (the "First Extension Motion").  On July 9, 2020, the Court entered an order extending the Exclusive Filing Period to and including October 15, 2020, and the Exclusive Solicitation Period to and including December 15, 2020 [Docket No. 996] (the "First Extension Order").

10.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.    The statutory and other bases for the relief requested in this Motion are section 1121(d) of the Bankruptcy Code and Local Rule 9006-2.

## BACKGROUND OF THE DEBTORS

12.    Information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 16] and the *Debtors' Informational Brief* [Docket No. 4].

## THE DEBTORS HAVE MADE SUBSTANTIAL PROGRESS IN THESE CHAPTER 11 CASES

13.    The Debtors have made substantial progress in these chapter 11 cases since the filing of the First Extension Motion.  Among numerous other measures the Debtors have taken in furtherance of developing a confirmable plan of reorganization, the Debtors have:

(a)    implemented an extraordinary, carefully tailored and highly negotiated multi-million dollar bar date noticing program estimated to reach 107 million men, including nearly 90% of American men aged eighteen years or older;

(b)    with the assistance of the mediators and the Ad Hoc Committee of Local Councils, obtained the unanimous adoption, by each of the 253 non-debtor local councils, of the reporting protocol that was imposed by the Tort

Claimants' Committee and the Creditors' Committee as a condition to extending the term of the preliminary injunction;

(c)    obtained and uploaded to the Debtors' electronic data room more than 65,000 additional pages of property and restricted asset information voluntarily produced by local councils;

(d)    conducted a preliminary analysis of voluminous data furnished to the Debtors by the Coalition of Abused Scouts for Justice (the "Coalition"), which filed its notice of appearance as an *ad hoc* committee in late July 2020, regarding its members and their abuse claims, including biographical information for claimants and detailed information about the alleged abuse, where available;

(e)    actively engaged in discussions with the Coalition, which purports to be comprised of approximately 28,000 abuse survivors and which the Debtors expect to play a pivotal role in mediated plan negotiations;

(f)    defended the Court's entry of the June 9, 2020 order appointing the mediators from a motion for reconsideration filed by one of the Debtors' insurers, thereby enabling the mediators to move forward with the substantial task of mediating these large and complex chapter 11 cases;

(g)    researched and drafted a 118-page mediation statement at the request of the mediators addressing several complex legal issues relating to a potential global resolution of abuse claims;

(h)    engaged in extensive discussions and negotiations with the other mediation parties regarding complex legal and factual issues that must be addressed in connection with a global resolution of abuse claims;

(i)    continued to conduct extensive diligence regarding certain assets of the Debtors' estates and local councils, including "insurance archaeology" efforts to determine the existence and extent of historical insurance coverage;

(j)    cooperated with creditors and other stakeholders, including the Tort Claimants' Committee, the Creditors' Committee and the Future Claimants' Representative, on complex diligence and informal discovery issues, including participation in meet-and-confer calls, question-and-answer sessions, and the review and production of a significant volume of responsive documents and other information;

(k)    obtained entry of the Court's September 16, 2020 order (i) determining that certain statements in plaintiffs' law firm advertising regarding the Debtors' chapter 11 cases are false and misleading, (ii) directing that the false and misleading statements be removed, (iii) directing that certain clarifying information be added to such law firms' advertising to prevent confusion

and prejudice of sexual abuse survivors, and (iv) approving procedures for the Debtors to seek expedited relief with respect to additional false and misleading law firm advertising;

(l)     identified additional false and misleading plaintiffs' law firm advertising and prepared and sent cease and desist letters to such advertisers in accordance with the Court's September 16 order;

(m)    negotiated a stay of the entirety of the adversary proceeding commenced by Hartford Accident and Indemnity Company and First State Insurance Company against the BSA, certain local councils, and other insurers (Adv. Pro. No. 20-50601);

(n)     prepared and filed necessary papers in connection with Century Indemnity Company's appeal of the Court's May 26, 2020 bar date order, including extensive briefing in support of its motion to dismiss the appeal;

(o)     made substantial progress on specialized valuations of each high-adventure facility, located in Florida, Minnesota, New Mexico, West Virginia and the Canadian provinces of Manitoba and Ontario, which the Debtors expect to receive in the next several weeks; and

(p)     prepared for and successfully argued numerous other motions and applications at multiple hearings, including, without limitation, (i) an order further extending the period within which the Debtors may remove civil actions under 28 U.S.C. § 1452, (ii) an order extending the period within which the Debtors may assume or reject unexpired leases of nonresidential real property under section 365(d)(4) of the Bankruptcy Code, (iii) an order authorizing the Debtors to dissolve two inactive non-debtor subsidiaries, and (iv) several orders authorizing the Debtors to reject certain contracts and leases that provided no benefit to the Debtors' estates.

14.     As the Court is aware, these chapter 11 cases are the first of a congressionally chartered non-profit organization.  In addition to the unprecedented nature of these proceedings, the Debtors' restructuring is extraordinary in its complexity.  The BSA carries out its mission through 253 local councils, each with an independent board of directors and professional and volunteer leadership.  The local councils, which vary in size, financial wherewithal and exposure to abuse claims liabilities, will continue to have an important role in shaping the outcome of this proceeding.  Moreover, as demonstrated by the long-running dispute regarding the Coalition's ability to participate in these cases as an *ad hoc* group, representatives of abuse claimants have

divergent views on how to advance their interests in these cases. Certain of the BSA's insurers, faced with an avalanche of historic abuse claims that implicate policies with no aggregate limits, have sought to derail and substantially delay the Debtors' reorganization. Despite these challenging dynamics, the Debtors have made significant progress thus far. Although substantial work remains to be done, the Debtors are confident that the results of the claims bar date will catalyze mediated plan negotiations.

## RELIEF REQUESTED

15.     By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) extending the Exclusive Filing Period by 180 days, to and including April 13, 2021 and (b) extending the Exclusive Solicitation Period by 180 days, to and including June 14, 2021.[2] The requested extensions are sixty days longer than the initial 120-day extensions of the Exclusive Periods that the Court granted on July 9, 2020. While the Debtors' request is without prejudice to their rights to seek further extensions of the Exclusive Periods, the Debtors are working tirelessly to ensure that the requested extensions afford the parties sufficient time to reach consensus, through the mediation process, on the terms of a chapter 11 plan that achieves the Debtors' restructuring objectives.

## BASIS FOR RELIEF

16.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file

---

[2] Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." This Motion is filed before the expiration of the current Exclusive Periods. Accordingly, the Exclusive Periods are automatically extended until the Court acts on this Motion.

The proposed extension of the Exclusive Solicitation Period reflects an automatic extension from Sunday, June 13, 2021 to the next business day, which is Monday, June 14, 2021, in accordance with Bankruptcy Rule 9006(a).

a chapter 11 plan—*i.e.*, the Exclusive Filing Period.  *See* 11 U.S.C. § 1121(b).  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptances of such plan—*i.e.*, the Exclusive Solicitation Period.  *See* 11 U.S.C. § 1121(c)(3).  The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on October 15, 2020 and December 15, 2020, respectively.

17.    Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for "cause."  *See* 11 U.S.C. § 1121(d).  The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension of the Exclusive Periods.  The legislative history of section 1121 of the Bankruptcy Code indicates, however, that "cause" is intended to be a flexible standard to balance the competing interest of a debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

18.    In exercising its broad discretion to determine whether cause exists to extend the Exclusive Periods, the Court may consider various factors to assess the totality of the circumstances.  *See, e.g.*, *First Am. Bank of N.Y. v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re Burns & Roe Enters., Inc.*, Case No. 00-41610 (RG), 2005 WL 6289213, *3 (D.N.J. Nov. 2, 2005) ("Whether or not to grant an extension of exclusivity is a matter of discretion based on all facts and circumstances, and a bankruptcy court has broad discretion to determine what is sufficient cause in each individual

case.") (internal quotation marks and citations omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity").  These factors include, without limitation:

    (a)    the size and complexity of the case;

    (b)    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

    (c)    the existence of good faith progress toward reorganization;

    (d)    whether the debtor is paying its debts as they become due;

    (e)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (f)    whether the debtor has made progress in its negotiations with creditors;

    (g)    the amount of time that has elapsed in the case;

    (h)    whether the debtor is not seeking to extend exclusivity in order to pressure creditors to accede to the debtor's reorganization demands; and

    (i)    the existence of an unresolved contingency.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr.S.D.N.Y.1987); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (identifying the foregoing factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended).  Not all of these factors are relevant in every case, and the Court may consider the relevant subset of factors to determine whether cause exists to extend the Exclusivity Periods.  *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether cause existed to extend exclusivity); *In re Pine Run Trust, Inc*., 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in determining that cause existed to extend exclusivity).

19.     Here, application of the foregoing factors demonstrates that ample cause exists to grant the requested extensions of the Exclusive Periods.  These extensions are necessary and appropriate for the Debtors to have the opportunity contemplated by the Bankruptcy Code to propose a chapter 11 plan—including by amending the plan of reorganization filed by the Debtors on the Petition Date—and solicit acceptances thereof.

## I.    The Debtors' Cases are Complex, and the Debtors Require Sufficient Time to Negotiate a Chapter 11 Plan and Prepare Adequate Information.

20.     The extraordinary complexity of these chapter 11 cases supports the Debtors' requested extension of the Exclusive Periods.  Indeed, the size and complexity of a debtor's case alone can support a determination that cause exists to extend the Exclusive Periods.  *See In re Express One Int'l, Inc.*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco, Inc.*, 76 B.R. 322, 325–27 (Bankr. S.D.N.Y. 1987) (holding that cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).

21.     As described above, the Debtors' chapter 11 cases involve many complex issues and groups of stakeholders with divergent perspectives.  To build consensus around a viable structure and terms for a plan of reorganization that provides for a global resolution of Scouting-related abuse claims, the Debtors must analyze the abuse claims filed by the November 16, 2020 bar date, the allegations contained therein, and the non-debtor local councils and chartered organizations implicated by such claims.  The Coalition recently asserted that it is comprised of more than 28,000 prepetition abuse survivors,[3] which suggests that the number of claims filed by the bar date could exceed such total.  The Debtors and their constituents must also continue their

---

[3] *See Supplemental Brief of the Coalition of Abused Scouts for Justice in Support of (A) Motion for an Order Approving the Sufficiency of the Amended 2019 Statement, and (B) Motion of the Coalition to Participate in the Mediation*, Docket No. 1432, at ¶ 3.

intensive ongoing efforts to address key plan-related issues, including the enforceability of donor and other restrictions, the nature and amount of non-debtor contributions to a potential settlement trust, the availability of insurance coverage and coverage disputes among the BSA and their insurers, the treatment and protection of shared insurance rights, and the method by which any compensation regime for abuse survivors will distinguish survivors who hold claims that are time-barred.  Given the complexity and importance of these issues, additional time is necessary to formulate a confirmable plan through mediated negotiations.

22.     Granting the requested extension of the Exclusive Periods at this stage of their restructuring will continue to provide the Debtors with a full and fair opportunity to negotiate and propose a plan of reorganization without the distraction, cost and delay of a competing plan process.  *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan.  It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted).  Accordingly, each of the first two factors listed above weigh in favor of the Court granting the relief requested herein.

## II.    The Debtors Have Made Significant Good-Faith Progress Toward Achieving Their Objectives in These Cases.

23.     The Debtors have made significant good-faith progress toward achieving their dual objectives of (a) timely and equitably compensating survivors of abuse in Scouting and (b) ensuring that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission.  The Debtors have made this progress notwithstanding the extraordinary complexity of these unique chapter 11 cases, the unforeseeable and pronounced negative effects of the COVID-

13

19 pandemic on the BSA's liquidity, and the adversarial posture adopted by certain parties in interest.  As discussed at length above, the Debtors have worked diligently and proactively on many fronts to favorably position themselves for mediated negotiations regarding a confirmable plan of reorganization.  For these reasons, this factor weighs in favor of granting an extension of the Exclusive Periods.

### III.    The Debtors are Paying Required Postpetition Debts as They Come Due.

24.    The Debtors are continuing to make timely payments of their undisputed post-petition obligations.  Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

### IV.    A Relatively Short Amount of Time Has Elapsed in the Chapter 11 Cases.

25.    Less than eight months have elapsed in these cases, which is not long for cases of comparable complexity.  *See*, *e.g.*, *In re Imerys Talc Am., Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. June 26, 2020), Docket No. 1942 (extending the exclusive periods a fifth time more than 16 months after the petition date); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Mar. 14, 2018), Docket No. 2408 (extending the exclusive periods for a third time nearly nine months after the petition date); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. Jan. 28, 2020), Docket No. 782 (extending the exclusive periods a second time nearly 10 months after the petition date).  Indeed, the claims bar date of November 16, 2020 is still more than one month away.  Accordingly, an extension of the Exclusive Periods is appropriate.

### V.    The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands, and Creditors are Not Prejudiced by the Extension.

26.    The requested extension of the Exclusive Periods will permit the Debtors to continue to engage in negotiations with their creditor groups and other key constituents.  The Debtors continue to believe that, to succeed in their restructuring efforts, they must obtain broad

creditor support for a plan of reorganization.  The Debtors are requesting this extension of the Exclusive Periods to build upon the progress made in these cases to date and to promote consensus regarding the terms of a confirmable plan of reorganization.  Accordingly, this factor also weighs in favor of granting the requested extensions of the Exclusive Periods.

**VI.    The Bar Date Remains an "Unresolved Contingency."**

27.    As noted above, as of the date of this Motion the bar date is still more than one month away, and the Debtors' highly specialized bar date noticing program—designed to reach more than 107 million men—has not concluded.  Even after the bar date, the Debtors and their advisors will need sufficient time to review and analyze abuse claims and the non-debtor local councils and chartered organizations implicated by such claims.  Other courts have found sufficient cause to extend the Exclusive Period where the bar date had not yet passed.  *See In re Borders Grp., Inc.*, Case No. 11-10614 (MG), 2011 WL 9155779, at *6 (Bankr. S.D.N.Y. June 2, 2011) ("The . . . bar date is important so that the Debtors can understand the number, nature and amount of valid claims against the estate.  The Debtors need a reasonable amount of time to review and evaluate these claims.").  The bar date therefore remains an unresolved contingency that weighs in favor of granting the requested extensions of the Exclusive Periods.

**VII.    Additional Factors Support an Extension of the Exclusive Periods.**

28.    Termination of the Exclusive Periods would undermine the Debtors' efforts to limit their time in chapter 11 and reach a global agreement that will form the basis for a consensual plan. Allowing parties to file alternative plans and disclosure statements now would frustrate the Debtors' ability to effectively engage with their stakeholders and damage prospects for successful mediated negotiations, without any clear benefit to the estates.  Moreover, the proposal and

solicitation of any competing plan would greatly complicate and increase the costs of administering the Debtors' chapter 11 cases at a time when they can least afford it.

29.    At the same time, the Debtors' limited extension of the Exclusive Periods will not prejudice any party in interest.  No party in interest's rights to oppose confirmation of any plan of reorganization proposed by the Debtors will be affected by the relief requested herein.  Conversely, failure to obtain the requested extension of the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code:  to afford the debtor a meaningful opportunity to negotiate with creditors and propose a confirmable chapter 11 plan of reorganization.  For the reasons stated herein, cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

## NOTICE

30.    Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated:  October 14, 2020
        Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
        aremming@mnat.com
        emoats@mnat.com
        ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. K. Boelter (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.boelter@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (*pro hac vice* pending)
Matthew E. Linder (*pro hac vice* pending)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (212) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com

*Counsel and Proposed Co-Counsel for the Debtors
and Debtors in Possession*