# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date**:<br>November 18, 2020 at 10:00 a.m. (ET)<br>**Objection Deadline**:<br>November 12, 2020 at 4:00 p.m. (ET) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING WILSON SETTLEMENT AGREEMENT AND (II) LIFTING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A**, pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving that certain settlement agreement by and between the BSA, Michigan Crossroads Council, Inc., Boy Scouts of America d/b/a Southern Shores Field Service Council ("Crossroads") and the National Boy Scouts of America Foundation (the "Foundation" and, collectively with Crossroads and the BSA, the "Defendants"), on the one hand, and Kathryn Marie Hall, as Personal Representative of the Estate of Gage Michael Samuel Wilson (the "Plaintiff" and, together with the Defendants, the "Parties"), on the other hand, as memorialized in that certain Settlement

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

Agreement attached hereto as **Exhibit B** (the "Settlement Agreement"), and (ii) lifting the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance. In support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

### BACKGROUND

4. On January 28, 2019 the Plaintiff filed a lawsuit in the Kalamazoo County Circuit Court, Case No. 2019-0046-NO (the "Lawsuit") against the Defendants stemming from the death of Gage Michael Samuel Wilson due to a sand dune collapse. The Foundation is a non-stock, non-profit corporation related to the BSA. Crossroads is a local council of the BSA.

5. The Lawsuit was automatically stayed as to the BSA when the Debtors filed for relief under chapter 11 of the Bankruptcy Code on February 18, 2020. To date, the Lawsuit has not been stayed as to the Foundation or Crossroads.

### THE SETTLEMENT AGREEMENT

6. In order to avoid the expense of litigation with respect to defending the Lawsuit, the Parties entered into good-faith and arm's-length negotiations. As a result of those negotiations, the Parties have entered into the Settlement Agreement.

7. Pursuant to the Settlement Agreement, the Plaintiff agrees to dismiss the Lawsuit with prejudice and without costs and release the BSA, the Foundation, and Crossroads, and each of their respective affiliates, employees, volunteers, officers, directors, advisors and agents from any and all claims relating to the Lawsuit on behalf of itself and the Estate of Gage Michael Samuel Wilson (the "Estate") and the Estate's and Gage Michael Samuel Wilson's agents, heirs, relatives, assigns, parents (including Kimberly Gettys Wilson and Michael John Wilson), beneficiaries, third-party beneficiaries, attorneys, any and all potential claimants identified in Michigan's Wrongful Death Act, MCL 600.2922, and anyone claiming by or through the Estate or Gage Michael Samuel Wilson (collectively, the "Plaintiff Parties").

8. In exchange, the Defendants will pay the Plaintiff $750,000 (the "Settlement Amount"). The Settlement Amount will be paid solely from available insurance. Specifically, the settlement amount will be paid by Old Republic Insurance Company ("Old Republic") which issued primary and excess general liability insurance policies covering the time period in which the events that are the subject of the Lawsuit occurred.

9. Additionally, as set forth in the Settlement Agreement, within a reasonable time after the Effective Date (as defined in the Settlement Agreement), the Defendants shall also take certain other non-monetary actions such as (a) posting an Excavation Dangers safety moment on the BSA website; (b) updating their list of certain prohibited activities to include digging in sand dunes; (c) working with the Michigan Department of Natural Resources to post warning signs near the sand dunes at issue in this Lawsuit; and (d) providing sand dune safety training to volunteers and providing related information on applicable websites.[2]

---

[2] The Settlement Agreement also requires approval by the Kalamazoo County Circuit Court pursuant to MCL 600.2922(5). Accordingly, the Settlement Agreement will become effective only upon the latter of approval by this Court and approval by the Kalamazoo County Circuit Court.

**RELIEF REQUESTED**

10. By this Motion, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) lifting the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount.

**BASIS FOR RELIEF REQUESTED**

**I.    Legal Standard**

    **A    Approval of Settlements**

11. Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition, Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

12. Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012). In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and

the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d at 393.

### B. The Automatic Stay

13. Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

14. Section 362(d) authorizes the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). Although the Bankruptcy Code itself does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

## II. Argument

15. The Settlement Agreement should be approved because it fairly and efficiently resolves the Lawsuit with minimal burden to the estate. As noted above, the Settlement Amount will be paid solely by Old Republic. The settlement, moreover, will also avoid the uncertainty and expense of litigating the Lawsuit and eliminate the potential for additional expenses and a larger judgment in this wrongful death action. In addition, the BSA will be released under the Settlement

Agreement, eliminating any liability under a plan of reorganization. Accordingly, the BSA submits that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates and their creditors. *In re Louise's, Inc.*, 211 B.R. at 801.

16.     Additionally, the automatic stay should be lifted, to the extent necessary, to permit Old Republic to pay the Settlement Amount. The question of whether proceeds of an insurance policy are property of the bankruptcy estate is complex and the law is unclear as to the answer. *In re MF Glob. Holdings, Ltd*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012). Although it is "well-settled that a debtor's liability insurance is considered property of the estate . . . 'the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate.'" *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)). However, even if the automatic stay does apply, cause exists here to the permit the payment of the settlement amount by Old Republic.

17.     First, as noted in Old Republic's previously filed motion for relief from the automatic stay, the BSA and related entities are covered under both primary and excess policies issued by Old Republic.[3] These policies provide coverage up to a limit of $1.0 million per occurrence with no aggregate limits under the Old Republic primary policies and up to $9.0 million per occurrence and $9.0 million in the aggregate per year under the Old Republic excess policies. Accordingly, the Settlement Amount of $750,000 falls entirely within the primary policy limit (which has no aggregate limit). Additionally, the Debtors and Old Republic estimate that approximately $300,475.00 of defense costs have been incurred relating to the Lawsuit (which are also covered by the Old Republic primary and excess policies). Thus, when combined, the total

---

[3] See *Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies* [D.I. 678].

settlement amount and defense costs will only erode the Old Republic excess layer of insurance available to pay covered claims for this particular policy year in the approximate amount of $50,475.00.[4]

18.  Second, the Settlement Agreement will resolve the Lawsuit and avoid the uncertainty and expense of litigation which, as noted above, could exceed the settlement amount because the Parties have yet to complete fact discovery and will need to depose approximately seven expert witnesses.  Moreover, the continued cost of litigation through trial would further erode the Old Republic excess policy beyond the current approximate erosion of $50,475.00.  *In re Almonacy*, No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue.").  Additionally, Old Republic, not the Debtors, will pay the full Settlement Amount and the BSA will be fully released from any and all liability relating to the Lawsuit.

19.  Accordingly, there is little prejudice, and indeed material benefit, to the Debtors if the stay is lifted to permit the settlement amount to be paid by Old Republic and the Settlement Agreement to be consummated.

## NOTICE

20.  Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) counsel to the Plaintiff Parties; (viii) Old

---

[4] The Debtors also note that they have significant additional excess insurance above the Old Republic excess layers during this policy period.

Republic Insurance Company; (ix) the other Defendants in the Lawsuit; (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

21.     For the above reasons, the BSA respectfully requests this Court enter an order (i) approving the Settlement Agreement, (ii) lifting the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance and (iii) granting all other relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated:  October 28, 2020<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@mnat.com<br>           aremming@mnat.com<br>           emoats@mnat.com<br>           ptopper@mnat.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. K. Boelter (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.boelter@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (212) 881-5400<br>Email: mandolina@whitecase.com<br>           mlinder@whitecase.com<br><br>*Counsel and Proposed Co-Counsel to the Debtors and Debtors in Possession* |