**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** November 18, 2020 at 10:00 a.m. (ET) **Objection Deadline:** November 12, 2020 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING
WORLEY SETTLEMENT AGREEMENT AND (II) LIFTING THE AUTOMATIC
STAY, TO THE EXTENT NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT
AMOUNT BY APPLICABLE INSURANCE**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A**, pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code), and rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving that certain settlement agreement by and between the BSA, the Cape Fear Council of the Boy Scouts of America, Lumber River District ("Cape Fear Council") and Patricia Smith ("Smith" and, collectively with Cape Fear Council and the BSA, the "Defendants"), on the one hand, and Elaine Mair, Administratrix of the Estate of Claudius Douglas Mair Worley (the "Plaintiff" and, together with the Defendants, the "Parties"), on the other hand, as memorialized in that certain Settlement

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

Agreement attached hereto as **Exhibit B** (the "Settlement Agreement"), and (ii) lifting the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4.    On October 11, 2019 the Plaintiff filed a lawsuit in the North Carolina Robeson County Superior Court, Case No. 19CVS2855 (the "Lawsuit") against the Defendants stemming from the drowning death of Claudius Douglas Mair Worley in May of 2018.  Smith is a Scout leader with Cape Fear Council.  Cape Fear Council is a local council of the BSA.

5.    The Lawsuit was automatically stayed as to the BSA when the Debtors filed for relief under chapter 11 of the Bankruptcy Code on February 18, 2020.  To date, the Lawsuit has not been stayed as to Cape Fear Council or Smith.

## THE SETTLEMENT AGREEMENT

6.    In order to avoid the expense of litigation with respect to defending the Lawsuit, the Parties entered good-faith and arm's-length negotiations.  As a result of those negotiations, the Parties have entered into the Settlement Agreement.

7.      Pursuant to  the Settlement Agreement, the Plaintiff agrees to dismiss the Lawsuit with prejudice and without costs and release the BSA, Smith, and Cape Fear Council, and each of their respective subsidiaries, parents, affiliates, managing agents, employees, volunteers, servants, consultants, agents, directors, officers, independent contractors, representatives, insurance carriers and attorneys from any and all claims relating to the Lawsuit.

8.      In exchange, the Defendants will pay the Plaintiff $1,100,000.00 (the "Settlement Amount").  The Settlement Amount will be paid solely from available insurance.  Specifically, the settlement amount will be paid by Old Republic Insurance Company ("Old Republic") which issued primary and excess general liability insurance policies covering the time period in which the events that are the subject of the Lawsuit occurred.

## RELIEF REQUESTED

9.      By this Motion, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) lifting the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

**I.      Legal Standard**

**A.      Approval of Settlement**

10.      Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In addition, Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

11.     Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012). In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d at 393.

### B.      The Automatic Stay

12.     Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

13.     Section 362(d) authorizes the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). Although the Bankruptcy Code itself does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the

continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

## II.    Argument

14.    The Settlement Agreement should be approved because it fairly and efficiently resolves the Lawsuit with minimal burden to the estate.  As noted above, Settlement Amount will be paid solely by Old Republic.  The settlement, moreover, will also avoid the uncertainty and expense of litigating the Lawsuit and eliminate the potential for additional expenses and a larger judgment in this wrongful death action.  In addition, the BSA will be released under the Settlement Agreement, eliminating any liability under a plan of reorganization.  Accordingly, the BSA submits that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates and their creditors.  *In re Louise's, Inc.*, 211 B.R. at 801.

15.    Additionally, the automatic stay should be lifted, to the extent necessary, to permit Old Republic to pay the Settlement Amount.  The question of whether proceeds of an insurance policy are property of the bankruptcy estate is complex and the law is unclear as to the answer.  *In re MF Glob. Holdings, Ltd*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).  Although it is "well-settled that a debtor's liability insurance is considered property of the estate . . . 'the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate.'" *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)).  However, even if the automatic stay does apply, cause exists here to the permit the payment of the settlement amount by Old Republic.

16.    First, as noted in Old Republic's previously filed motion for relief from the automatic stay, the BSA and related entities are covered under both primary and excess policies

issued by Old Republic.[2]   These policies provide coverage up to a limit of $1.0 million per occurrence with no aggregate limits under the Old Republic primary policies and up to $9.0 million per occurrence and $9.0 million in the aggregate per year under the Old Republic excess policies. Accordingly, most of the Settlement Amount of $1,100,000.00 falls within the primary policy limit (which has no aggregate limit).   Additionally, the Debtors and Old Republic estimate that approximately $54,753.90 of defense costs have been incurred relating to the Lawsuit (which are also covered by the Old Republic primary and excess policies).   Thus, when combined, the total settlement amount and defense costs will only erode the Old Republic excess layer of insurance available to pay covered claims for this particular policy year in the approximate amount of $154,753.90.[3]

17.    Second, the Settlement Agreement will allow for the Lawsuit to be resolved and will avoid the uncertainty and expense of litigation which, as noted above, could exceed the settlement amount and certainly would exceed the impact on the approximate $154,753.90 impact on the Old Republic excess policy.  *In re Almonacy*, No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue.").   Additionally, Old Republic, not the Debtors, will pay the full Settlement Amount and the BSA will be fully released from any and all liability relating to the Lawsuit.

---

[2] See *Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies* [D.I. 678].

[3]  The Debtors also note that they have significant additional excess insurance above the Old Republic excess layers during this policy period.

18.     Accordingly, there is little prejudice, and indeed material benefit, to the Debtors if the stay is lifted to permit the settlement amount to be paid by Old Republic and the Settlement Agreement to be consummated.

## NOTICE

19.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) counsel to the Plaintiff Parties; (viii) Old Republic Insurance Company; (ix) the other Defendants in the Lawsuit; (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

20.     For the above reasons, the BSA respectfully requests this Court enter an order (i) approving the Settlement Agreement, (ii) lifting the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance and (iii) granting all other relief as is just and proper.

Dated:  October 28, 2020
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

/s/ *Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
      aremming@mnat.com
      emoats@mnat.com
      ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. K. Boelter (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.boelter@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com

*Counsel and Proposed Co-Counsel to the Debtors and Debtors in Possession*