## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 1571** |

**CENTURY'S OBJECTION TO DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
WHITE & CASE LLP AS ATTORNEYS TO THE DEBTORS AND
DEBTORS IN POSSESSION EFFECTIVE AS OF SEPTEMBER 23, 2020**

Century Indemnity Company ("Century") and the Century entities identified in the

signature block below object to the Debtors' proposed order to retain White & Case LLP as

attorneys for the Debtors and Debtors in Possession.

## PRELIMINARY STATEMENT

1.      White & Case discloses a concurrent representation of BSA's lender, JPMorgan,

but provides no further detail.  This not only makes their disclosures inadequate but also raises a

series of questions regarding the role that the attorneys who left Sidley for White & Case have

played in negotiations with BSA's lender in the run-up to the bankruptcy, the extension of the

Challenge Period under the Cash Collateral Order and the negotiations claims and resolution of

disputes over assets.

2.      Professionals are conflicted under section 327 when they are "in a position

permitting [them] to favor one interest over an impermissibly conflicting interest."  White &

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Law, Irving, Texas 75038.

1

Case's (and before it, Sidley's) concurrent representations of BSA and BSA's lender places it in just such a position: what is in the estate's interest with regard to BSA's lender not be in BSA's lender's best interest.  And, far from being resolved, stipulations that were negotiated and entered into by White & Case attorneys have preserved the rights of creditors' committees to bring a derivative action, on the estate's behalf, challenging the liens of BSA's lender.  This issue, and the inherent conflict, thus remain live.

3.    Separately, White & Case's perfunctory disclosures with regard to JPMorgan are inadequate under Rule 2014.  White & Case discloses nothing about its concurrent representation of JPMorgan, nor does it address whether it has a conflicts waiver from JPMorgan or what the terms of that waiver are. Worse, elaborate efforts have been taken to keep us in the dark about the nature of the claims and counsel's involvement in the facts and events associated with them. The failure to disclose these relevant facts is an independent reason to deny retention here.

4.    Finally, the Sidley/White & Case lawyers carry with them the taint of their involvement with Century.  These lawyers have consistently been involved in issues that implicate Century's polices, despite Sidley's representations at the retention hearing and the Court's order that conflicts counsel, and conflicts counsel alone, was to handle Century issues.

## BACKGROUND

### A.    BSA's relationship with JPMorgan

5.    BSA has land holdings and other assets described in its first day declaration. BSA assets were subject to possible distribution in a bankruptcy if they can be characterized as "unrestricted."  *See generally* Reid K. Weisbord, *Charitable Insolvency and Corporate Governance in Bankruptcy Reorganization*, 10 Berkley Bus. Law J 307 (2013).  In advance of

the bankruptcy, JPMorgan was given liens against various assets of BSA.[2]

6.      JPMorgan is a significant Sidley Austin client, representing over 1 percent of that firm's revenue in 2019.[3]  Over the period from January 2017 to April 2020, Sidley represented JPMorgan in dozens of transactions.[4]  In 2018, BSA retained Sidley's restructuring team.[5]  In the run-up to BSA's bankruptcy filing, the Debtors negotiated and executed amendments and waivers to their credit agreements with JPMorgan.[6]  It appears that JPMorgan was concurrently a Sidley client.[7]

## B.    BSA's Cash Collateral Motion

7.      On the petition date, the former Sidley, now White & Case lawyers, filed a Cash Collateral Motion seeking interim and final orders that would allow BSA to use cash collateral, securing a protected lien for JPMorgan.[8]  An Interim Order granting the relief BSA sought was issued on February 20, 2020, and a Final Order was granted on April 15, 2020.  By that Final Order, BSA agreed to, among other things, release claims it had against JPMorgan with regard to its prepetition arrangements and to waive all defenses to the validity, perfection, priority, enforceability, and non-avoidability of JPMorgan's liens.[9]

8.      The Final Order makes that agreement binding on the UCC, TCC, FCR, and other parties in interest unless those parties bring a "Challenge Proceeding," that is, a motion or pleading requesting standing on behalf of one or both of the Debtors to file a claim against

---

[2]   D.I. 5 ¶ 8.
[3]   D.I. 204-3 ¶ 21.
[4]   Declaration of Stamatios Stamoulis ("Stamoulis Decl.") Ex. 1.
[5]   April 28, 2020 Declaration of Jessica C. K. Boelter ("April 28 Boelter Decl.") Ex. 1, D.I. 500-1.
[6]   *E.g.*, Third Amended and Restated Security Agreements (confidential, in Data Room).
[7]   Stamoulis Decl. Ex. 1 at 5–15; D.I. 204-3 ¶ 21.
[8]   D.I. 5.
[9]   D.I. 433 ¶ 21.

JPMorgan.[10]  The Final Order provided that the deadline for the UCC, TCC, or the FCR to assert

such a "Challenge Proceeding" was July 3, 2020 or a later date to be stipulated by the parties or

ordered by the Court on a party's petition, notice, and opportunity to be heard.[11]

9.       The Debtors, UCC, TCC, FCR, and JPMorgan have extended this "Challenge

Period" three times by stipulation—the latest stipulation ("Third Stipulation") extended the

period to December 31, 2020.[12]

**C.       The Sidley/White & Case lawyers' involvement with BSA's lender**

10.       The former Sidley, now White & Case lawyers who seek retention, were involved

in both the initial Cash Collateral Motion filed on the petition date, as well as the later amended

proposed order.[13]  Timesheets from the White & Case attorneys' former law firm, Sidley, show

that the White & Case attorneys were involved with negotiations with JP Morgan and other

constituents around the Cash Collateral Motion and the resolution thereof.[14]  These tasks

included, for example, calls with the TCC related to the JPMorgan cash collateral order[15] and

drafting and finalizing Brian Whittman's declaration in support of the Cash Collateral order.[16]

11.       Since the April 15, 2020 entry of the Final Order, the former Sidley, now White &

Case, lawyers who seek retention were involved in three stipulations among JPMorgan, the

official creditors' committees (the TCC and UCC), the Future Claimants' representative

---

[10]   D.I. 433 ¶ 19(ii).

[11]   *Id.*

[12]   D.I. 1550.

[13]   D.I. 5, 90.

[14]   *See* D.I. 760-2 at 86–94 (various entries reflecting internal and external communications regarding JPMorgan and Cash Collateral motion between February 18, 2020 and March 31, 2020); D.I. 861-2 at 51–56 (various entries reflecting internal and external communications regarding JPMorgan and Cash Collateral motion between April 1, 2020 and April 30, 2020).

[15]   D.I. 760-2 at 92; D.I. 861-2 at 51.

[16]   D.I. 861-2 at 53–54.

("FCR"), and BSA to extend the "Challenge Period."[17]  These stipulations were signed for BSA

by the Sidley/White & Case attorneys.[18]  The timesheets again reveal the involvement of the

same White & Case attorneys that now seek to be retained in discussions with the constituencies,

including JPMorgan, regarding the stipulations concerning the Challenge Period and claims

involving JPMorgan.[19]

### D.  BSA's lead attorneys switch law firms

12.     On October 8, 2020, Jessica Boelter and Mike Andolina withdrew from this case

as Sidley lawyers and re-entered their appearance with their new firm, White & Case.[20]  White &

Case's October 22, 2020 retention application gives a cursory explanation that Sidley will stay

on and "work cooperatively with" White & Case and represents that, at some future date, Sidley

will withdraw.[21]

### E.  The former Sidley, now White & Case lawyers, enter into the Third Stipulation requiring the drafting of a complaint and negotiation of claims involving White & Case client JPMorgan

13.     The latest stipulation ("Third Stipulation") among BSA, JPMorgan and the

official committees extended the Challenge Period to December 31, 2020.[22]  It leaves a live

dispute over the claims against JPMorgan.  The Third Stipulation is signed by Ms. Boelter.  It

requires a fully drafted complaint against White & Case client JPMorgan to be delivered to BSA

---

[17]   D.I. 949, 1175, 1550.

[18]   D.I. 1175, 1550.

[19]   *See* D.I. 1044-2 at 41–42 (Sidley timesheets reflecting partners addressing issues related to JPMorgan); D.I. 1344-2 (Sidley timesheets reflecting Sidley/White & Case lawyer involvement in stipulation extending the period for TCC, UCC, and FCR to challenge JPMorgan's liens); D.I. 1174-2 at 26 (TCC timesheets reflecting conversations with Sidley regarding JPMorgan's collateral); D.I. 1526-2 at 43 (UCC timesheets reflecting exchanges with Sidley regarding the JPMorgan lien challenge period).

[20]   D.I. 1451, 1452.

[21]   D.I. 1571 ¶¶ 10, 12.

[22]   D.I. 1550.

and JPMorgan by the official committees by October 19, 2020.  With the UCC, TCC, and FCR

entitled to seek standing to derivatively enforce the estate's rights against JPMorgan, the former

Sidley, now White & Case attorneys are left negotiating over the claims and whether to oppose

or support a motion granting derivative standing.

14.     Simultaneously, the Sidley/White & Case attorneys are negotiating with UCC,

TCC, and FCR over whether the assets that are subject to liens constitute restricted assets.

**F.     BSA/White & Case refuse to share information regarding the claims involving
         White & Case client JPMorgan, a copy of the complaint or any of the White & Case
         lawyers' communications with JPMorgan**

15.     The Third Stipulation obligates the UCC, TCC, and FCR to "disclose in writing to

counsel to the Debtors and the Prepetition Secured Parties, a draft complaint . . . setting forth any

and all claims and causes of action which the Challenge Parties in good faith believe could be the

subject matter of a Challenge Proceeding" by October 19, 2020.[23]  Century asked BSA/White &

Case to share the details of that draft complaint with them, but the White & Case lawyers refused

to provide a copy or provide any details.  The Third Stipulation allows the UCC, TCC, FCR and

BSA access to information about the claims against JPMorgan but denies Century from

obtaining the same information.[24]

16.     BSA/White & Case negotiated the Third Stipulation to the exclusion of Century,

and refused after the fact to provide any information regarding the draft complaint.  Century

served discovery on BSA, White & Case, and Sidley requesting a copy of this complaint and the

White & Case attorneys' communications with BSA's lender about it.[25]  To date, the parties have

refused to provide this information.

---

[23]  D.I. 1550 ¶ 1.

[24]  *Id*.

[25]  Stamoulis Decl. Exs. 2, 3, 4.

## ARGUMENT

## POINT I.

## THE CONCURRENT REPRESENTATION OF DEBTORS AND
## THE DEBTORS' LENDER IS A DISABLING CONFLICT

17.      Section 327(a) of the Bankruptcy Code precludes a debtor-in-possession from

retaining or employing counsel to represent and assist it in fulfilling its duties if the

attorneys under consideration (1) "hold or represent an interest adverse to the estate" or

(2) fail the "disinterested persons" test.[26]

18.      The Code defines a "disinterested person" as one who "does not have an interest

materially adverse to the interest of the estate or any class of creditors or equity security holders,

by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or

for any other reason."  11 U.S.C. § 101(14)(c).  An "adverse interest," in turn, is usually defined

to mean "any economic interest that would tend to lessen the value of the bankruptcy or that

would create either an actual or potential dispute in which the estate is a rival claimant."  *In re

eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).  The tests of disinterestedness for estate

professionals are to be rigidly applied and "c[an] not be waived because of the integrity or ability

of the particular person involved."  *In re Philadelphia Athletic Club, Inc*., 20 B.R. 328, 333 (E.D.

Pa. 1982).

19.      The Third Circuit has held that § 327(a) requires the *per se* disqualification as

debtors counsel of any attorney who has an actual conflict of interest.  *Pillowtex*, 304 F.3d

---

[26]   The limitations of § 327(a) are intended to "hold professionals performing duties for the estate to
strict fiduciary standards.  This section is plainly concerned with a professional's divided loyalties
and ensuring that professionals employed by the estate have no conflicts of interest with the estate.  If
the professional sought to be employed does not satisfy one prong of this standard, the Code prohibits
the court from authorizing his or her employment.  Section 327 does not allow these limitations to be
excused by waiver."  *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993).

246, 251 (3d Cir. 2002) (emphasis in original); *In re Marvel Entertainment Group, Inc.*, 140

F.3d 463,476 (3d Cir. 1998); *In re Zenith Electronics Corp.*, 241 B.R. 92, 101 (Bankr. D.

Del. 1999). The Third Circuit has defined "actual" conflicts of interest as follows:

> [A] conflict is actual, and hence per se disqualifying, if it is likely that a
> professional will be placed in a position permitting it to favor one interest
> over an impermissibly conflicting interest . . . . "The term 'actual conflict of
> interest' is not defined in the Code and has been given meaning largely
> through a case-by-case evaluation of particular situations arising in the
> bankruptcy context."

*Pillowtex, Inc.,* 304 F.3d at 251 (quoting *In re BH&P, Inc.,* 949 F.2d 1300, 1315 (3d Cir.

1991)). Even an immaterial but actual conflict with the estate disqualifies a professional.

*See Pillowtex,* 304 F.3d at 252 n. 4 ("a professional [to be hired as debtor's counsel] may

not have *any* conflict with the estate") (emphasis in original).

20.     This Court has held that whether a representation that conflicts with the estate

violates (or potentially violates) section 327 depends in part on whether the conflicting

representation is still active. Bench Ruling at 5–6; *see also Marvel*, 140 F.3d at 477. In

*Marvel*, the Third Circuit only found that there was not a conflict in light of the fact that the

professional in question had severed all ties with a secured creditor, Chase, before taking on

the representation of the Debtor. *Marvel,* 140 F.3d at 477. This is not the case here.

21.     White & Case has disclosed that it *presently* represents the Debtors' secured

lender, JPMorgan.[27] And the Sidley lawyers who have now moved to White & Case and

seek retention were involved in matters concerning the estate's treatment of JPMorgan's

liens since the petition date. Prior to the petition date, the Sidley restructuring team appears

to have been involved in the negotiation of amendments and waivers to Debtors' credit

---

[27]   D.I. 1571 at 88.

agreements with JPMorgan.  This creates an actual conflict for these attorneys under section 327 by placing them "in a position permitting it to favor one interest over an impermissibly conflicting interest."  *Pillowtex, Inc.,* 304 F.3d at 251 (quoting *In re BH&P, Inc.,* 949 F.2d 1300, 1315 (3d Cir. 1991)).

22.     Even if the Court finds that the conflict here has not matured into an actual conflict, the potential for such a conflict goes beyond the mere "appearance of impropriety." By stipulation, the TCC, UCC, and FCR retained their right to seek standing with regard to claims against JPMorgan with the stipulation contemplating that a complaint setting out the claims against JPMorgan be delivered to BSA/White & Case in October 2020.  White & Case is a party to this stipulation, which was signed by Ms. Boelter, a member of a firm that concurrently represents JPMorgan.[28]  Moreover, the stipulation contemplated their further involvement in the negotiation of the claims and discusions as to whether BSA will oppose or consent a standing motion.  At the same time, BSA/White & Case is engaged in disputes over what assets constitute "restricted assets" not subject to distribution, which is intertwined with the lending associated with these assets.  The White & Case lawyers are in the position of negotiating these issues and drafting a plan of reorganization concerning them while at the same time being fact witnesses or possible fact witnesses to the facts underlying the claims that may be asserted.

23.     Nor is this a case where § 327(c) provides any limit to disqualification. Though, in certain cases, § 327(c) provides that the objecting party must be another creditor or the United States Trustee, those are only conditions precedent where the objection is brought "***solely*** because of [the professional's] employment by or representation of a creditor."

---

[28]    D.I. 1550 ¶ 1.

11 U.S.C. § 327 (emphasis added).  As explained here, however, the basis for this objection is not simply that JPMorgan is a creditor.  Rather, White & Case's conflict stems from the fact that JPMorgan is BSA's primary pre- and post-petition lender, and there is an ongoing potential that claims may be brought derivatively, on the estate's behalf, by the TCC or others, against White & Case's client.

## POINT II.

### THE SIDLEY LAWYERS CARRY WITH THEM THE TAINT OF THEIR CONFLICTS TO THEIR NEW FIRM.

24.     While the Court prohibited the Sidley bankruptcy team—namely, Jessica Boelter and Michael Andolina—from engaging in any aspect of the representation that touches on Century's insurance, they did not abide by that restriction by recusing themselves from these issues.  Specifically, the Court set the following parameters for Sidley's continued participation in the case:  "Haynes and Boone must handle all matters adverse to Century that address the substantive treatment of BSA's insurance policies with Century, claims thereunder, proceeds therefrom or that otherwise implicate insurance coverage."[29]

25.     But since that ruling, the Sidley/White & Case bankruptcy team—and in particular Mr. Andolina—has insisted on participating in discussions devoted directly to Century's insurance and claims against Century's insurance.  He even insisted on participating with BSA in mediation sessions devoted exclusively to Century/Chubb insurance. These are some of the instances where Sidley/White & Case attorneys were actively involved in insurance issues implicating Century in this bankruptcy:

- Discussions of Chubb issues with conflicts counsel;[30]

---

[29]   June 11, 2020 Bench Ruling at 14, D.I. 755.
[30]   D.I. 1029-2 at 17; Dkt 1142-2 at 5; Dkt 1349-2 at 14.

- Discussion of Chubb issues with Delaware co-counsel;[31]

- Attending and participating in or leading the weekly insurer call, where matters implicating Chubb's coverage were under discussion.[32]

26.    Tim Kosnoff, the founder of the entity calling itself the "Coalition," even refers to insurance being part of Mr. Andolina's "program" and alludes to discussing the issue.[33]

27.    All of that plainly is contrary the Court's ruling.  That Mr. Andolina and Ms. Boelter and other attorneys moved to another firm does not relieve them of the requirement that they stay clear of "all matters adverse to Century that address the substantive treatment of BSA's insurance policies with Century."[34]  Nor did they ask for any relief from that prohibition. Therefore, the restriction that the Court imposed on June 11, 2020 should be observed, regardless of the law firm with which Ms. Boelter and Mr. Andolina choose to associate.[35]

28.    The Court also held that "conflicts counsel can work here given Haynes & Boone's involvement with the restructuring since its inception.  Both Sidley and Haynes & Boone will need to continue to be tuned in to their respective scope of work."[36]  But the Sidley bankruptcy team has used Haynes & Boone as a talisman—bringing one of that firm's lawyers

---

[31]    D.I. 1083-2 at 15.

[32]    *E.g.*, D.I. 1167-2 at 36 (July 17, 2020 M. Andolina time entry:  "Attend and lead pre-call and weekly call with insurer group and follow-up emails and phone conferences regarding . . . same."); *id.* at 37 (entries reflecting J. Boelter and M. Andolina attending insurer call); D.I. 1044-2 at 48–49 (same); D.I. 1344-2 at 44–45 (same); D.I. 1582-2 at 39–40.

[33]    D.I. 1285-1 ("We are not going to do anything to help grease the gears for Stang and the dimwits including speeding up the insurance analysis. . . .  [T]hat's playing in to the Andolina Stang program.").

[34]    June 11, 2020 Bench Ruling at 14, D.I. 755.

[35]    D.I. 1083-2 at 15.

[36]    June 11, 2020 Bench Ruling at 14, D.I. 755.  While Century/Chubb respectfully reserves its position that the Court went far enough on June 11 (and is appealing that ruling), at the very least, the Court has decided this issue and should adhere to its prior ruling.  *See Sistrunk v. Dragovich*, 96 F. App'x 796, 799 (3d Cir. 2004) ("Under the law of the case doctrine, 'once an issue has been decided, parties may not relitigate that issue in the same case.'" (quoting *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n.7 (3d Cir. 2003))).

into the conversation to try and ward off any argument that Sidley has overstepped.  That is not

what was intended by the Court's instruction that each firm should be "tuned in" to its

"respective scope of work."[37]  Everyone understood that, as is clear from the representation that

Sidley's counsel made to the Court at the retention hearing when he stated that "I think that the

point is if there's a Century specific issue, that is going to be handled by Haynes and Boone."[38]

29.     That Ms. Boelter and Mr. Andolina are now at White & Case does not change

that.  Their "scope of work" does not—and should not—include "BSA's insurance policies with

Century, claims thereunder, proceeds therefrom or that otherwise implicate insurance

coverage."[39]  Using Haynes & Boone as some sort of magic shield was wrong when they were

Sidley, and it is wrong at White & Case.

## POINT III.

### WHITE & CASE'S DISCLOSURES
### ARE INADEQUATE.

30.     The duty to disclose conflicts of interest under Bankruptcy Rule 2014 "goes to the

heart of the integrity of the bankruptcy system."[40]  Timely and complete disclosure supports the

bankruptcy court's obligation "to root out impermissible conflicts of interest under Bankruptcy

Code §§ 327(a) and 328(c)."[41]  Even a *de minimis* failure to disclose all actual or potential

conflicts, and all relevant facts of those conflicts and the terms of any waivers obtained, is an

independent ground for denying the retention.[42]

---

[37]  *Id.*

[38]  May 6, 2020 Hr'g Tr. at 57:1–3.

[39]  June 11, 2020 Bench Ruling at 14, D.I. 755.

[40]  *In re Universal Bldg. Prod.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010).

[41]  *In re eToys, Inc.*, 331 B.R. 176, 189–90 (Bankr. D. Del. 2005).

[42]  *See In re BH & P, Inc.*, 949 F.2d 1300, 1317–18 (3d Cir.1991) (finding failure to disclose potential conflict which counsel had discussed with UST was inadvertent but violative of Rule 2014 nonetheless); *In re Jore Corp.*, 298 B.R. 703, 732 (Bankr.D.Mont.2003) (disqualifying counsel for

31.     Sidley and White & Case's role with regard to BSA's lender and separate representation of BSA's lender has been shrouded in secrecy.[43]  And White & Case's conflicts disclosures do little to alleviate that issue:  Other than an acknowledgment in Schedule 2 that JPMorgan is a "secured party" that White & Case has an "Open Unrelated" matter with, nothing further is said about either the nature of that representation.[44]  BSA and White & Case also fail to disclose the role that the Sidley/White & Case attorneys have played, and continue to play, in discussions with BSA's lender and whether White & Case obtained a waiver from JPMorgan (as well as what limitations such waiver might have).

32.     In attempting to alleviate its concerns about conflicts here, Century has sought, both informally and formally, information regarding communications with JPMorgan.  But the White & Case lawyers have not willingly provided the additional details Century has requested.  Century then served Requests for Production, directly asking about communications with JPMorgan and about any draft complaint or list of claims that creditors may hold derivatively against JPMorgan.[45]  To date, BSA, White & Case, and Sidley have provided no responsive documents or information.

---

debtor for failure to disclose that conflicts waiver obtained from DIP lender prohibited debtor's counsel from undertaking litigation adverse to it); *In re Diamond Mortg. Corp. of Ill.*, 135 B.R. 78, 97 (Bankr. N.D. Ill. 1990) (holding that "any fact which would be relevant to the court's determination of whether the professional has a conflict of interest, is not disinterested or represents an adverse interest, must be disclosed" and noting that a reviewing court has no duty to search a file to find conflicts of interest); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1021 (Bankr. N.D. Ill. 1993) ("Failure to abide by the disclosure requirements is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections were material or *de minimis*.") (citations omitted); *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992) ("Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were *de minimis* . . . compliance with these requirements is necessary to maintain the integrity of the bankruptcy system.").

[43]  *See supra* ¶¶ 15–16.
[44]  D.I. 1571 at 88.
[45]  Stamoulis Decl. Exs. 2, 3, 4.

## CONCLUSION

For the foregoing reasons, Century respectfully requests that the Court deny Debtors'

Application and grant such other relief as is just and proper.

Dated:  November 6, 2020

Respectfully Submitted,

By:   */s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone:    302 999 1540
Facsimile:    302 762 1688

*Counsel for Century Indemnity
Company, as successor to CCI
Insurance Company, as successor to
Insurance Company of North America
and Indemnity Insurance Company of
North America, Westchester Fire
Insurance Company and Westchester
Surplus Lines Insurance Company*