**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 1596 and 1598** |
|---|---|

**THE FUTURE CLAIMANTS' REPRESENTATIVE'S OBJECTIONS TO DEBTORS' MOTIONS FOR ENTRY OF ORDERS WITH RESPECT TO WILSON AND WORLEY (I) APPROVING SETTLEMENT AGREEMENTS AND (II) LIFTING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT AMOUNTS BY APPLICABLE INSURANCE**

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

James L. Patton, Jr., the Future Claimants' Representative, (the "FCR") hereby submits this Objection (the "Objection") to motions for relief from the automatic stay brought by Debtors with respect to agreed settlements reached with Kathryn Marie Hall, as Personal Representative of the Estate of Gage Michael Samuel Wilson ("Wilson") (ECF No. 1596) and Elaine Mair, Administratrix of the Estate of Claudius Douglas Mair Worley ("Worley") (ECF No. 1598) (collectively, the "Motions"), and in support thereof states as follows:

## PRELIMINARY STATEMENT

1. Both the Wilson and Worley Motions seek approval of settlements of claims covered by the primary and excess insurance policies issued by Old Republic Insurance Company and its affiliates' (collectively "Old Republic") for years 2018–2019.

2. These claims implicate insurance coverage that is property of the Debtors' estate. The Old Republic primary and excess policies are subject to a "fronting" arrangement whereby Old Republic has an obligation to pay covered claims and the Debtors have an obligation to reimburse Old Republic for all such claims. The Debtors' reimbursement obligation under the Old Republic policies is secured by two irrevocable letters of credit issued to Old Republic by the Debtors (the "JP Morgan L/Cs"), which Old Republic is authorized to draw upon to reimburse itself.

3. The Old Republic primary policy does not have an aggregate limit, and thus its $1M per occurrence limit (payable from the JP Morgan L/Cs) becomes available for each new claim.

4. Without waiver of any argument that the Old Republic primary policy is property of the estate, it is without dispute that the Old Republic excess policy is property of the estate that would be depleted by the payment of claims. This is because the Old Republic excess policy has a $9M aggregate limit, which becomes unavailable to other claimants with the payment of claims.

5. Both the Wilson and Worley settlements would deplete funds available under the JP Morgan L/Cs and erode the Old Republic excess policy's aggregate limit. Thus, the Court should deny both the Wilson and Worley Motions without prejudice until such time after the bar date when claims data is reasonably available to show whether there will be sufficient insurance to pay all current and future claims triggering the Old Republic policies and JP Morgan L/Cs.

6. To the extent that, after the bar date it can be ascertained that there will be sufficient insurance to pay all claims triggering the Old Republic policies and JP Morgan L/Cs, Debtors may be permitted to renew their Wilson and Worley Motions. The bar date is less than one week away.[2] Once the bar date passes the parties in interest will have a better understanding of the number and quality of claims implicating Debtors' insurance asset and will be able to determine whether payment under the Wilson and Worley settlements is in the best interest of the Debtors' estate and creditors, including future claimants.

## BACKGROUND AND PROCEDURAL HISTORY

7. The Wilson claim arose on September 29, 2019, as the result of an alleged wrongful death. This claim falls within the policy period of Old Republic primary policy No. MWZY 312833 (March 1, 2018–March 1, 2019), which has $1M per occurrence limits and no aggregate limit, with defense costs covered within the per occurrence limits. In policy year 2018, Old Republic also issued a second-layer excess policy with $9M aggregate limits. The Wilson claim, including the proposed settlement amount and existing defense costs, totals $1,050,475.00, and if paid in full would erode the Old Republic excess aggregate limit by $50,475.00.

8. The Worley claim arose on May 26, 2018, as the result of an alleged wrongful death. This claim also falls within the 2018–2019 Old Republic primary and excess policy period.

[2] ECF No. 695 (establishing General Bar Date of November 16, 2020).

The Worley claim, including the proposed settlement amount and existing defense costs, totals $1,154,753.90, and if paid in full would erode the Old Republic excess aggregate limit by an additional $154,753.90.

9. The Wilson and Worley Motions are unlike other stay relief motions that this Court has granted. Both the Wilson and Worley proposed settlements are in excess of $500,000.00, the threshold the Court set over which Old Republic is required to seek further order of the Court before payment.[3]

10. To date, the Court has not granted relief from the automatic stay to authorize the payment of any claims over $500,000.00 from BSA's insurance. The Court has only authorized such claims to be negotiated pre-litigation or liquidated in the tort system, without authorizing the payment of any settlements or judgments reached.[4]

11. The scope of total claims facing the Old Republic policies and all insurance in excess thereof remains unclear at this point. The bar date is quickly approaching, however, and the parties will likely have a greater degree of certainty as to whether sufficient insurance coverage will be available to fully compensate all current and future claims notwithstanding current erosion rates and levels. The FCR therefore objects to lifting the stay in order to pay the Wilson and

[3] ECF No. 985, ¶ 4.b.; *see also* ECF No. 987, ¶ 4.b. (imposing same threshold for payment of claims by Evanston Insurance Company).

[4] ECF No. 986 (authorizing pre-litigation settlement conference or non-binding mediation to resolve claims of Nichole Erickson and Mason Gordon); ECF No. 989 (authorizing liquidation of claims of Courtney Knight and Stephen Knight through the commencement or continuation of any pending litigation, and specifying that "Movants shall not be entitled to enforce or seek payment on account of the Movants' claim(s), including against any insurers of the Debtors, absent further order of this Court"); ECF No. 990 (same order as to claims of Timothy and Karen Spahr); ECF No. 993 (same order as to claims of Lianfen Qian); ECF No. 1341 (same order as to claims of Marco Romero, Jr. and Audrey Romero); ECF No. 1468 (same order as to claims of Margaret Henderson); ECF No. 1493 (same order as to claims of Salvador Contreras Rivera and Kasandra Lopez Ramirez); ECF No. 1601 (same order as to claims of Eric Pai).

Worley claims at least until such information becomes available after the bar date passes on November 16, 2020.

**ARGUMENT**

12. The Motions should be denied because allowing the subject settlements to proceed risks adversely affecting the assets of the Debtors' estate and allowing unfair access by certain claimants to those assets. The FCR does not object to entry into the settlement agreements. The FCR does object, for the reasons set forth herein, to lifting the stay in order to permit the payment of the settlement amounts.

13. The automatic stay contemplated by section 362(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or the "Code"), is one of the most fundamental protections afforded by the Bankruptcy Code. See H.R. Rep. No. 95–595, at 340 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97. The "breathing spell" of the automatic stay was "[designed] to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982).

14. There is no question that insurance policy rights are estate property subject to the protection of section 362(a)(3). *See ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006); *First Fid. Bank v. McAteer*, 985 F.2d 114, 116 (3d Cir. 1993); *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987); *see generally* 3 Collier on Bankruptcy ¶ 362.03 (15th ed. Rev. 2015) ("[T]he prevailing view is that an insurance policy is property of the estate, protected by the automatic stay of § 362(a)(3)."). Indeed, insurance policies constitute

"valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be . . . the most important asset of the debtor's estate." *In re W.R. Grace & Co*., 475 B.R. 34, 149 (Bankr. D. Del. 2012), *aff'd sub nom*. *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), *and aff'd*, 532 F. App'x 264 (3d Cir. 2013), *and aff'd*, 729 F.3d 311 (3d Cir. 2013) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986)). Moreover, insurance policies are assets of the estate even before there is evidence that Debtors have a legal interest in their proceeds. *See, e.g., First Fid. Bank*, 985 F.2d at 116 (insurance policies are property of the estate "even though the policy has not matured, has no cash surrender value and is otherwise contingent."); *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010), *aff'd,* Nos. 10 CV 5717(RJD), 08 BK 44210(ESS), 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) (the automatic stay applies even if there is a dispute as to debtor's interest in or claim to the property).

15. The JP Morgan L/Cs are also property of the estate. To the extent the remaining amounts of the JP Morgan L/Cs exceed Debtors' reimbursement obligations to Old Republic, the estate has a reversionary interest in such amounts that is also protected by section 362(a)(3). *See, e.g., Pension Transfer Corp. v. Beneficiaries Under the Third Amend. To Fruehauf Trailer Corp. Ret. Plan No. 003* (*In re Fruehauf Trailer Corp.*), 444 F.3d 203, 211 (3d Cir. 2006) ("[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. . . . It is also well established that 'the mere opportunity to receive an economic benefit in the future' is property with value under the Bankruptcy Code." (quoting *Segal v. Rochelle*, 382 U.S. 375, 379 (1966))).

16. Courts will enforce the automatic stay in order to avoid irreparable harm to the Debtor's insurance assets and other claimants' rights thereupon. *See, e.g., In re Sunland, Inc.*, 508

B.R. 739, 744 (Bankr. D.N.M. 2014) ("[I]f an insurance policy 'is too small to satisfy several potential plaintiffs[,]' then lifting the stay . . . could mean unfair results as between potential plaintiffs . . . [and] prevent a bankruptcy court from marshalling the insurance proceeds . . . to maximize their ability both to satisfy legitimate creditor claims and to preserve the debtor's estate."); *In re Advanced Med. Spa Inc.*, No. 15-27456-B-7, 2016 WL 3003203, at *3 (B.A.P. 9th Cir. Mar. 30, 2016) ("[T]he court gives great weight to the detrimental effects and prejudice that all other unsecured creditors, particularly those similarly-situated to [movant], would suffer if the court grants [movant's] motion and allows her to proceed before, and to the exclusion of, all other unsecured creditors.").

17. Section 362(d)(1) of the Bankruptcy Code permits the Court to grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1). The term "cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis. *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) ("Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay.") (citing *Baldino*, 116 F.3d at 90). Movants have the burden of establishing "cause" and, if they fail to do so, the Court should deny relief without requiring any showing whatsoever from the Debtors. *In re Telegroup, Inc.*, 237 B.R. 87, 91 (Bankr. D.N.J. 1999). Only where the movant has sufficiently established cause does the burden shift to the Debtors to establish the absence of cause. *Id.*

18. Bankruptcy courts have refused to approve settlements under Rule 9019 when the settlements would impermissibly prioritize payment of the settled claims over others. *See, e.g., In re C.P. del Caribe, Inc.* (Bankr. D.P.R. 1992) ("In the settlement context, 'fair and equitable' means that the settlement reasonably accords with the competing interests' relative priorities.").

19. The Motions seek exceptions to the automatic stay rule under sections 105(a), 362, and 363 of the Bankruptcy Code, and payment under Rule 9019 on the basis that there will be no significant impact on the estate because the claims will be covered by insurance. However, the Debtors have failed to provide any support for this conclusion.

20. As set forth above, the bar date has yet to pass and there is currently insufficient information to determine whether the Debtors' assets and insurance will be sufficient to pay all unsecured creditors in full. Because the Debtors bear ultimate financial responsibility for insured claims under the Old Republic fronting arrangement,[5] payment of the Wilson and Worley claims under the terms of the settlements, as applicable, will deplete assets of the estate available for distribution to other unsecured creditors.

21. Moreover, the Old Republic excess policies have aggregate limits that will be eroded—and therefore, unavailable to other claimants—by payment of these claims.

22. Without evidence that the total limits within and in excess of the Old Republic primary and excess policies will be adequate to pay all potential claims, there is no basis to establish that allowing the Wilson and Worley settlements to be paid will not prejudice the rights of future claimants.

[5] As set forth in paragraph 2 above, the Debtor's payment obligation is payable from the JP Morgan L/Cs.

23. By failing to show that the payment of the Wilson and Worley settlements will not adversely affect the rights of future claimants, the Debtors have failed to establish cause for lifting the stay, and have failed to show that payment of the settlements would be fair and equitable in the light of rights of other creditors.

24. Granting the Motions in the light of this uncertainty about whether the Debtors' insurance will be sufficient to cover all claims would threaten the orderly reorganization of the estate. In addition, unless and until the Debtors are able to establish that their assets are sufficient to pay all unsecured creditors in full, entry of the relief sought in the Motions would impermissibly prefer the Wilson and Worley claims over other unsecured creditors.

25. On the other hand, there is unlikely to be any prejudice by delaying payment of the Wilson or Worley claims until such time as it can be established that there will be sufficient insurance coverage and remaining reimbursement amounts in the JP Morgan L/Cs to pay all current and future claims in full. The rate of defense costs being spent on the Wilson and Worley claims appears to be minimal based on the last available data from August (provided by Old Republic), with $4,231.50 being spent on the Wilson claim and $0 being spent on the Worley claim. Given that the FCR is not objecting to the amounts of the proposed Wilson and Worley settlements, only to the payment thereof before an appropriate payment rate can be established to the extent Debtors' assets are insufficient to cover all other current and future claims, there is no reason to believe that delaying payment will cause Debtors to incur significant additional costs.

26. The sufficiency of the insurance asset to pay the Wilson and Worley claims under and in excess of 2018 Old Republic policies may become evident after the general bar date. The Court should therefore deny the Motions without prejudice until sufficient information is available

to determine whether the interests of future claimants will be prejudiced by allowing the Wilson and Worley settlements to proceed.

## CONCLUSION

WHEREFORE, James L. Patton, Jr., the Future Claimants' Representative, respectfully requests that the Court deny the Motions for relief from the automatic stay related to the Wilson and Worley claims and award such other and further relief as it deems just and proper.

Dated: November 12, 2020
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP
*/s/ Edwin J. Harron*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
eharron@ycst.com
szieg@ycst.com
skohut@ycst.com

*Counsel to the Future Claimants' Representative*

-and-

**GILBERT LLP**
Kami E. Quinn (DC Bar No. 500295)
Emily P. Grim (DC Bar No. 1006597)
Meredith C. Neely (DC Bar No. 280937)
700 Pennsylvania Ave, SE
Suite 400
Washington, DC 20003
Telephone: (202) 772-2200
Facsimile: (202) 772-3333
Email: quinnk@gilbertlegal.com
grime@gilbertlegal.com
neelym@gilbertlegal.com

*Counsel to the Future Claimants' Representative*