**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 1571, 1637** |
| | **Hearing Date: November 18, 2020 at 10:00 a.m. (ET)** |

**DEBTORS' RESPONSE TO CENTURY'S OBJECTION TO DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION
AND EMPLOYMENT OF WHITE & CASE LLP AS ATTORNEYS TO THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF SEPTEMBER 23, 2020**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this response to the objection [Docket No. 1637] (the "Objection") filed by Century Indemnity Company ("Century") to the Debtors' application [Docket No. 1571] (the "Application")[2] to retain White & Case LLP ("White & Case" or the "Firm") as attorneys for the Debtors.  In support of the Application and this response, the Debtors submit the supplemental declaration of Jessica C. K. Boelter, which has been filed concurrently herewith (the "Supplemental Boelter Declaration").  In further support of the Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] All terms that are capitalized but not otherwise defined in this response shall have the meanings ascribed to such terms in the Application.

## PRELIMINARY STATEMENT

1.      White & Case satisfies the requirements of section 327(a) because it is disinterested and does not hold or represent an interest adverse to the Debtors or their estates.  As disclosed in Ms. Boelter's initial declaration in support of the Application, White & Case represents certain creditors of the Debtors and other parties in interest in matters unrelated to these chapter 11 cases. Century identifies one of these unrelated clients—JPMorgan Chase Bank N.A. (together with its affiliates, "JPM")—and asserts that White & Case has undertaken "elaborate efforts" to keep Century "in the dark" and has "shrouded in secrecy" the nature of its representation of JPM in unrelated matters.  Objection ¶¶ 3, 31.  White & Case has done nothing of the sort, and there is no actual or potential conflict that prevents White & Case from serving as Debtors' counsel.

2.      The Objection is without merit and should be overruled.  Indeed, the Objection exemplifies Century's bad-faith conduct in these chapter 11 cases.  Like certain of its other filings, Century has lodged the Objection with the sole purpose of harassing the Debtors and their counsel, unnecessarily delaying these proceedings, and increasing the cost of these cases.  The Debtors have previously catalogued Century's extensive efforts to delay and derail the Debtors' reorganization and obstruct the timely resolution of abuse claims in a letter sent to Century on June 18, 2020.[3]  The centerpiece of Century's petty-warfare campaign is the filing of meritless objections that serve only to dissipate valuable estate resources, distract the Debtors and their professionals, and delay the Debtors' restructuring efforts.  Century has filed objections or joined in motions to reconsider no less than 13 separate matters in these cases, including the following, among others (Century's filings noted by docket number in parentheses):

---

[3] Century later filed this letter with the Court under seal.  *See Declaration of Janine Panchok-Berry in Support of Century's Joinder to Hartford's Motion for Reconsideration, in Part, of the Court's Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief*, Docket No. 888, Ex. 6.

- Tort Claimants' Committee's motion to clarify the requirements to provide access to confidential or privileged information (Docket No. 368);

- Debtors' motion to appoint mediators (Docket Nos. 388, 646, 761, 790, 888);

- Debtors' application to retain Sidley Austin LLP (Docket No. 426);

- Debtors' bar date motion (Docket No. 656);

- Debtors' motion for a confidentiality and protective order (Docket Nos. 697, 750);

- Coalition's motion to participate in the mediation (Docket Nos. 1230, 1266);

- Coalition's motion for approval of the sufficiency of its Rule 2019 statement (Docket No. 1266);

- Debtors' application to retain Quinn Emanuel Urquhart & Sullivan LLP (Docket No. 1243);

- Stipulation resolving the Tort Claimants' Committee's Rule 2004 motion (Docket No. 1495);

Century has also appealed the Court's bar date order and the order authorizing the Debtors to retain White & Case's predecessor as restructuring counsel (Docket Nos. 803, 837, 1010). Both appeals remain pending. The Debtors recognize that some degree of litigation is to be expected in a large and complex chapter 11 case, but Century's conduct in these cases continues to exceed the bounds of acceptable advocacy. The Objection is no exception. The Application demonstrated that White & Case satisfies the Bankruptcy Code's requirements for retention as Debtors' counsel, and Century's arguments to the contrary lack any basis whatsoever in either law or fact.

## **BACKGROUND**

3.     On October 22, 2020, the Debtors filed the Application. As explained in the Application, the Debtors are requesting to retain White & Case as their lead restructuring counsel, effective as of September 23, 2020, because the core members of the legal team representing the Debtors began transitioning their practices to White & Case from Sidley as of such date. These

attorneys, who include Jessica C. K. Boelter, Michael C. Andolina and Matthew E. Linder, have led the Debtors' restructuring efforts for the past two years, including during the entirety of the Debtors' chapter 11 cases.  Other critical members of the legal team serving the Debtors have also transitioned their practices to White & Case.  These attorneys have extensive pre- and post-petition experience providing legal services to the Debtors, including significant knowledge of the Debtors' non-profit operations, financial affairs, liabilities, organizational structure, and the legal issues being addressed in the Debtors' restructuring.  These attorneys are also familiar with the numerous stakeholders that are actively participating in these cases.

4.      In support of the Application, the Debtors filed the declaration of Ms. Boelter [Docket No. 1571-3] (the "Initial Boelter Declaration").  The Initial Boelter Declaration disclosed that White & Case currently represents, or has represented within the last five years, certain individuals, entities or their affiliates who are Potential Parties in Interest on matters unrelated to the Debtors, the chapter 11 cases, or such entities' claims against and interests in the Debtors.  *See* Initial Boelter Declaration, Schedule 2.  As set forth on Schedule 2 to the Initial Boelter Declaration, White & Case currently represents JPM in matters that are not related to the Debtors, the chapter 11 cases or any claims against the Debtors.

5.      Century's Objection makes three arguments.  First, Century contends that White & Case should be disqualified from representing the Debtors because its concurrent representation of the Debtors in these chapter 11 cases and JPM in unrelated matters is either an actual or a potential conflict of interest.  Second, Century contends that the core legal team who recently transitioned their practices to White & Case from Sidley have failed to observe the restrictions in the Court's bench ruling authorizing Sidley's retention with respect to certain coverage matters that may be adverse to Century.  Finally, Century contends that White & Case has failed to make

adequate disclosures under Bankruptcy Rule 2014 with respect to its representation of JPM in unrelated matters.

6. While the Initial Boelter Declaration satisfied White & Case's disclosure obligations under Bankruptcy Rule 2014 (*see infra* ¶¶ 32–35), the Debtors have filed the Supplemental Boelter Declaration concurrently with this response to address the issues raised by Century in further detail. The Supplemental Boelter Declaration discloses that White & Case's revenues for legal services provided to JPM represented approximately 0.48% of the Firm's total revenues for the period from October 2019 through September 2020. Supplemental Boelter Declaration ¶ 5. The Supplemental Boelter Declaration also describes the nature of the legal services that White & Case provides to JPM. *See id.* ¶ 6. Finally, the Supplemental Boelter Declaration clarifies that White & Case will not represent the Debtors in an adversary proceeding against any current client of White & Case unless the Firm has an applicable waiver on file or first receives a waiver from such client allowing the commencement of such an action. *See id.* ¶ 7.

## ARGUMENT

7. A debtor's choice of counsel is entitled to substantial deference. *See* 3 COLLIER ON BANKRUPTCY ¶ 327.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re Vouzinas*, 259 F.3d 103, 112 (2d Cir. 2001) ("[C]ourts are counseled to use restraint in wielding their power under § 327 to veto a trustee's selection of counsel."). Accordingly, disqualification of a debtor's chosen counsel is "a drastic measure that should be avoided unless absolutely necessary." *In re Best Craft Gen. Contr. & Design Cabinet, Inc.*, 239 B.R. 462, 470–71 (Bankr. E.D.N.Y. 1999); *cf. Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682, 687 (D. Del. 2016) ("disqualification is disfavored, and the Court approaches motions to disqualify counsel with cautious scrutiny, mindful of a litigant's right to the counsel of its choice" (quotation omitted)).

8.      Here, Century's threadbare allegations and conjecture do not withstand the cautious

scrutiny that should be applied to any motion to disqualify counsel.  Indeed, if successful,

Century's argument would effectively preclude any large law firm from ever representing a debtor

in a complex chapter 11 proceeding due to its representation of the debtor's creditors in unrelated

matters.  This untenable result is precisely why Congress amended section 327(c) in 1984 to

provide "greater flexibility" to debtors in hiring professionals who also represent a creditor of the

debtor.  *See In re Unitcast, Inc.*, 214 B.R. 979, 987 n.2 (Bankr. N.D. Ohio 1997); *see also In re B

H & P Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991) ("[P]rior to the 1984 amendments, the Code made

no provision for counsel's simultaneous representation of a debtor and a creditor.").  For these

reasons and the others set forth below, the Court should overrule the Objection.

I.      **The Debtors Have Satisfied the Standards for Retaining White & Case.**

9.      Century has failed to present any evidence of either an actual or a potential conflict

that would warrant denial of the Application under section 327 of the Bankruptcy Code.  As

explained below, White & Case satisfies the standards for retention as Debtors' counsel.

A.      **Section 327 of the Bankruptcy Code Expressly Contemplates a Professional's
        Concurrent Representation of a Debtor and a Creditor in Unrelated Matters.**

10.     Section 327 of the Bankruptcy Code protects the fairness and integrity of the

bankruptcy process by ensuring that debtor's counsel provides undivided loyalty to the estate.  *See

generally In re BH & P Inc.*, 949 F.2d at 1316; *In re AroChem Corp.*, 176 F.3d 610, 621 (2d Cir.

1999).  It accomplishes this goal by requiring that professionals retained by a debtor "do not hold

or represent an interest adverse to the estate" and are "disinterested persons."  11 U.S.C. § 327.  A

professional holds a prohibited "adverse interest" where that professional holds or represents

interests in competition with the debtor that would actually (as opposed to speculatively) impair

its service as an estate fiduciary.  *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999)

("A Court may consider an interest adverse to the estate when counsel has a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant." (quotation omitted)); *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 477 (3d Cir. 1998). A disinterested person is defined, in pertinent part, as someone without "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders." 11 U.S.C. § 101(14). When determining whether a professional holds a disqualifying materially adverse interest, courts generally apply a factual analysis to determine whether an actual conflict exists. *See* 3 COLLIER ON BANKRUPTCY ¶ 327.04[2].

11.     Section 327(c) is an exception to section 327(a) insofar as it permits a debtor to employ a professional that concurrently represents a creditor of the debtor without automatically deeming such professional either adversely interested or not disinterested. *Id.* ¶ 327.04[7]. Section 327(c) provides that a professional is not disqualified from employment solely because of such professional's employment by or representation of a creditor, unless there is an objection by another creditor or the U.S. Trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest. 11 U.S.C. § 327(c).

12.     Bankruptcy courts have considerable discretion in approving a debtor's retention of counsel under the standards of section 327 in light of the specific facts and circumstances of the case. *See Marvel Entm't*, 140 F.3d at 477; *BH & P*, 949 F.2d at 1313, 1316 ("historically, bankruptcy courts have been accorded wide discretion in connection with . . . the terms and conditions of the employment of professionals" (alteration in original) (quotation omitted)). Disqualification is mandated only where there is "an actual conflict of interest." *Marvel Entm't*, 140 F.3d at 476. And the Third Circuit has made clear that a "court may not disqualify an attorney on the appearance of conflict alone." *Id.* ("To allow disqualification merely on the 'appearance of

impropriety' would allow 'horrible imaginings alone' to carry the day"); *see also In re Jade Mgmt. Servs.*, 386 F. App'x 145, 148 (3d Cir. 2010).

13.     Moreover, in exercising its discretion, a court should be wary of allowing a party to improperly delay and disrupt a reorganization proceedings by using a disqualification motion to gain a tactical advantage.  *Cf. Stanziale v. MILK072011, LLC (In re Golden Guernsey Dairy, LLC)*, Case No. 13-10044, Adv. Pro. No. 14-50953 (KG), 2015 Bankr. LEXIS 1921, at *9 (Bankr. D. Del. June 12, 2015); *see also In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992) (observing that a court's discretion must be exercised with a view to the "protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding").

14.     While the initial burden of satisfying section 327 rests on the applicant, that burden has been met by the filing of the Application.  *See In re Caesars Entm't Operating Co., Inc.*, 561 B.R. 420, 431 (Bankr. N.D. Ill. 2015).  As a result, the "burden of going forward" has "shift[ed] to the objecting party"—that is, Century.  *Id.* (citing *In re Brennan*, 187 B.R. 135, 145 (Bankr. D.N.J. 1995), *rev'd on other grounds sub nom. In re First Jersey Secs., Inc.*, 180 F.3d 504 (3d Cir. 1999)).  Century has failed to meet that burden.

**B.     Century Has Failed to Establish the Existence of an Actual or Potential Conflict of Interest That Would Warrant Disqualification.**

15.     Century's position that White & Case has failed to satisfy the requirements of section 327, and that the Firm's representation of JPM in unrelated matters presents an actual or potential conflict, is meritless.  The Third Circuit has stated that "denomination of a conflict as 'potential' or 'actual' and the decision concerning whether to disqualify a professional based upon that determination . . . are matters committed to the bankruptcy court's sound exercise of discretion."  *BH & P*, 949 F.2d at 1317.  Moreover, "to ensure proper review in these cases," a

court's exercise of discretion "must be factually substantiated upon the evidentiary record." *Id.* (internal quotations omitted).  Here, Century's rationale for disqualifying White & Case is based not on evidence but on mere speculation and conjecture, the types of "horrible imaginings" that the Third Circuit referenced in its *Marvel Entertainment* decision as insufficient to carry the day. *See Marvel Entm't*, 140 F.3d at 477.

16.    Although not articulated with any degree of precision, Century's objection appears to be that White & Case's independence or loyalty would be altered in the performance of its duties to the Debtors as a result of its work for JPM in unrelated matters.  *See In re Relativity Media, LLC*, Case No. 18-11358, 2018 Bankr. LEXIS 2037, *8 (Bankr. S.D.N.Y. July 6, 2018) (holding that a law firm's representation of an "important" contract counterparty in unrelated patent litigation was not proper grounds for general disqualification of the firm).  Specifically, Century asserts that White & Case cannot represent the Debtors because the involvement of JPM in these cases places White & Case "in a position permitting it to favor one interest over an impermissibly conflicting interest."  Objection ¶ 21 (quoting *Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.)*, 304 F.3d 246, 251 (3d Cir. 2002)).  Notably, Century does not allege, nor could it, that White & Case has favored JPM's interests over the Debtors' interests at any point.

17.    Century's arguments make a number of erroneous assumptions.  First, it assumes that JPM's claims and liens are the crux of the Debtors' restructuring.  Not so.  While JPM is the Debtors' primary secured creditor, and the treatment of JPM's claims and liens under a chapter 11 plan will be important, this is a multifaceted restructuring that is primarily driven by sexual abuse claims and related stakeholders, including abuse survivors, local councils, and insurers.  *See In re Relativity Media*, 2018 Bankr. LEXIS, at *8.  Second, Century assumes that the interests of the Debtors and JPM are inherently adverse, including in connection with the Debtors' use of cash

collateral and all aspects of a potential challenge proceeding that may be brought in the future on behalf of the estates. This is also incorrect. The Debtors obtained the authority to use JPM's cash collateral on a fully consensual basis at the outset of these cases, and, as customary adequate protection, stipulated to the validity of JPM's liens, claims and interests.[4] Moreover, the Challenge Period (as defined in the Final Cash Collateral Order) has been extended for the Tort Claimants' Committee, the Creditors' Committee and the Future Claimants' Representative three times, in each instance without any substantive involvement on the part of the Debtors or their counsel, including White & Case. Supplemental Boelter Declaration ¶ 9. In the unlikely event that direct adversity between the Debtors and JPM arises, White & Case would not be able to represent the Debtors in an adversary proceeding against JPM without first obtaining an appropriate waiver. *Id.* ¶ 7.

18.    Century's suggestion that White & Case cannot continue to represent JPM in unrelated matters without subjecting itself to a disqualifying conflict (Objection ¶ 27) mischaracterizes Third Circuit law and this Court's bench ruling on the Debtors' application to retain Sidley. While true that the Court cited *Marvel Entertainment* for the proposition that severing all ties with a client may be sufficient to eliminate a potentially disqualifying conflict, such a drastic step is obviously not necessary. Quite the contrary: in virtually every large chapter 11 case, lead restructuring counsel concurrently represents multiple potential parties in interest, including secured lenders in many instances, on unrelated matters. *See infra* ¶ 33 (citing cases).

19.    A recent decision by Judge Sontchi, *In re Art Van Furniture, LLC*, 617 B.R. 509 (Bankr. D. Del. 2020), illustrates why the Objection should be overruled. In that case, the U.S.

---

[4] *See Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363 and 507; and (III) Granting Related Relief*, Docket No. 433 (the "Final Cash Collateral Order").

Trustee objected to the debtors' application to retain restructuring counsel on the basis of the firm's concurrent representation of the debtors' secured lender, Wells Fargo, in unrelated matters. When Wells Fargo terminated the debtors' consensual use of cash collateral, the firm represented the debtors in negotiations with advisors to Wells Fargo to develop "post-suspension restructuring alternatives." *Id.* at 511. The Court concluded that there was no evidence of either an actual conflict or a potential conflict that would require denial of the retention application. *Id.* at 519. The Court's conclusion was based on four factors. First, the firm did not represent Wells Fargo in the chapter 11 cases or any related transactions. Second, Wells Fargo represented a *de minimis* component of the firm's aggregate revenue. Third, there was no evidence that the firm lacked zealousness in its representation of the debtors. Finally, the Court had in the past approved retention applications of law firms that served as debtor's counsel and counsel to Wells Fargo in unrelated transactions while Wells Fargo was a party in interest in the bankruptcy case. *Id.*

20.    Under the court's analysis in *Art Van Furniture*, Century's objection should be overruled. White & Case has never represented JPM in these cases, nor has it represented JPM in any matter related to the Debtors. *See* Supplemental Boelter Declaration ¶ 5. Moreover, legal services provided to JPM represented only 0.48% of White & Case's aggregate revenue for the twelve months preceding the filing of the Application. *Id.* Furthermore, Century has presented no evidence that White & Case lacks zealousness in its representation of the Debtors, nor could it offer any such evidence. And this Court has in the past routinely approved retention applications of law firms that served as debtor's counsel and counsel to secured lenders in unrelated transactions while the secured lender was a party in interest in the case.[5] For all of the foregoing reasons, the Objection should be overruled and the Application should be approved.

---

[5] *In re Shiloh Industries, Inc.*, Case No. 20-12024 (LSS) (Bankr. D. Del. Oct. 5, 2020), Docket No. 240 (granting application to retain debtors' counsel where law firm currently represented secured lender on unrelated matters); *In re*

## II.    Century Lacks Standing to Seek Disqualification of White & Case Based on the Firm's Unrelated Representations of JPM.

21.    The Objection should also be overruled because Century lacks standing to oppose

the Application pursuant to Section 327(c).  Section 327(c) provides that, in a chapter 11 case,

> a person is not disqualified for employment under [section 327]
> solely because of such person's employment by or representation of
> a creditor, **unless there is objection by another creditor or the
> United States trustee**, in which case the court shall disapprove such
> employment if there is an actual conflict of interest.

11 U.S.C. § 327(c) (emphasis added).  Accordingly, a professional shall be disqualified if its

representation of a creditor constitutes an actual conflict of interest, but only upon an objection by

another creditor or the United States Trustee.  *See* 3 COLLIER ON BANKRUPTCY ¶ 327.04[7].

22.    Century is not a creditor of the Debtors and therefore lacks standing to seek White

& Case's disqualification on the sole basis that the Firm represents JPM in unrelated matters.  *See

In re Mid-Valley, Inc.*, 305 B.R. 425, 433 (Bankr. W.D. Pa. 2004) (observing that insurers lacked

standing to pursue disqualification because they "were neither creditors nor the U.S. Trustee"

within the meaning of section 327(c)).  Century attempts to obscure this fatal flaw in its argument

by arguing that the disqualification of White & Case is not warranted "solely" because JPM is a

creditor.  Instead, Century argues, White & Case's purported conflict stems from JPM's status as

the Debtors' secured lender and the "ongoing potential that claims may be brought derivatively,

on the estate's behalf, by the TCC or others, against White & Case's client."  Objection ¶ 23.  But

section 327(c) is not rendered inapplicable simply because JPM is a potential defendant in future

litigation with the estate in addition to being a creditor.  *Cf. In re Git-N-Go, Inc.*, 321 B.R. 54, 61

---

*Libbey Glass Inc.*, Case No. 20-11439 (LSS) (Bankr. D. Del. Jul. 1, 2020) Docket No. 203 (same); *In re Comcar Industries, Inc.*, Case No. 20-11120 (LSS) (Bankr. D. Del. Jun. 17, 2020), Docket No. 208 (same); *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (LSS) (Bankr. D. Del. Mar. 23, 2020), Docket No. 169 (same); *In re Old BBP, Inc.*, Case No. 19-12502 (LSS) (Bankr. D. Del. Dec. 18, 2019), Docket No. 155 (same).

(Bankr. N.D. Okla. 2004) (holding section 327(c) inapplicable where creditor was also a co-obligor on certain debt and the debtor's majority shareholder); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1015-16 (Bankr. N.D. Ill. 1993) (holding section 327(c) inapplicable where creditor group was also an equity holder and a party to a leveraged buyout concerning the debtor).

23.     The sole basis for Century's request to disqualify White & Case is the Firm's concurrent representation of a creditor.  Because Century is not a creditor, it lacks standing to invoke section 327(c) and its Objection should be overruled for this additional reason.

**III.    Century Waived Its Right to Argue This Alleged Conflict of Interest by Failing to Raise the JPM Connection in Relation to the Debtors' Application to Retain Sidley.**

24.     Century has also waived any right it might have had to assert that White & Case should be disqualified on account of its unrelated work for JPM because it failed to raise such concerns in its objection to the Debtors' application to retain Sidley.  A party's unjustified delay in seeking to disqualify an attorney provides an independent ground to deny such relief.  *See KLG Gates LLP v. Brown*, 506 B.R. 177, 192 (E.D.N.Y. 2014); *In re Worldcom, Inc.*, 311 B.R. 151, 166-67 (Bankr. S.D.N.Y. 2004).  To determine whether a party's delay amounts to waiver, courts examine several factors, including (a) when the party learned of the purported conflict, (b) why the delay occurred, and, in particular, whether the delay was for tactical reasons, and (c) whether disqualification would result in prejudice to the nonmoving party.  *KLG Gates LLP*, 506 B.R. at 192.  Each of the foregoing factors weighs in favor of overruling the Objection.  The Debtors address each factor below in turn.

25.     First, Century has been aware of lead restructuring counsel's connections to JPM for nearly seven months.  Sidley and White & Case have precisely the same relationship with JPM with respect to these cases—*i.e.*, JPM is a current client of both Sidley and White & Case on matters unrelated to the Debtors or these cases.  Century was aware of this connection no later than

April 14, 2020, when Century represented in its objection to Sidley's retention that it had reviewed Sidley's connections with Potential Parties in Interest.[6]  Century raised the JPM connection at the hearing on Sidley's retention on May 6, 2020[7] and again in its opposition to the Debtors' motion to appoint mediators filed on June 2, 2020, but not in its objection to the Debtors' application to retain Sidley.[8]  The significant length of time that Century has delayed seeking to disqualify Debtors' restructuring counsel on the basis of its connections to JPM weighs in favor of overruling the Objection.  *See Exco Res., Inc. v. Milbank, Tweed, Hadley & McCloy LLP* (*In re Enron Corp.*), Case No. 02-cv-5638, 2003 U.S. Dist. LEXIS 1442, at *11 n.2 (S.D.N.Y. Feb. 3, 2003) (finding unjustified delay where movant waited two months to file disqualification motion).

26.    Second, Century's delay in seeking to disqualify the Debtors' restructuring counsel on the basis of its connections to JPM is purely tactical.  In the context of Sidley's retention, Century no doubt believed it had better arguments in favor of disqualification—namely, Sidley's prepetition representation of Century with respect to certain reinsurance matters.  Century presumably elected to forgo raising the JPM connection in favor of its more appealing argument.  Now, nearly seven months later, Century is seeking a second bite at the apple in the context of White & Case's retention, despite there being no meaningful difference between Sidley's and White & Case's connections to JPM with respect to these cases.  Courts should view tactical

---

[6] *Century's Objection to Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date*, Docket No. 426, p. 29 (discussing Schedule 2 to Ms. Boelter's declaration, which listed JPM as a current client of Sidley).

[7] Specifically, Mr. Schiavoni stated as follows: "Buried in the 2014 disclosure of Ms. Boelter is a disclosure [of] parties [in] interest here who have — who represent more than one percent of Sidley's client base, one of them is JP Morgan Chase.  JP Morgan Chase, as I understand it . . . I believe they're a bondholder that holds hundreds of millions of dollars of Boy Scout bonds, turns out is at the same time of a major client, you know, one of the — you know, one of the top clients . . . and they're obviously a key player in the bankruptcy . . . ."  May 6, 2020 Hr'g Tr. 92:25-93:15.

[8] "Debtors' counsel concurrently represents the Boy Scouts' lender."  *Joinder of Century Indemnity Company, Ace Insurance Group, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company to Hartford's Memorandum in Support of Hartford's Objection to Certain Mediators That Debtors Nominated and in Further Support of Limited Objection to Debtors' Motion [Dkt. 756] and Century's Objection*, Docket No. 761 p. 3.

disqualification requests with disfavor, and this one is particularly egregious. *See Richardson-Merrell, Inc. v. Koller*, 474 U.S. 424, 436 (1985) (expressing concern about tactical use of disqualification motions to harass opposing counsel); *In re Golden Guernsey Dairy, LLC*, 2015 Bankr. LEXIS 1921, at *9 ("Based on their frequent use as a tactical device, motions to disqualify are generally disfavored and, therefore, require the movant to show clearly that continued representation would be impermissible") (internal quotations omitted); *In re Abengoa Bioenergy Biomass of Kan., LLC*, Case No. 16-10446, 2018 Bankr. LEXIS 699, at *14 (Bankr. D. Kan. Mar. 13, 2018) ("Most courts regard tactical disqualification motions with disdain.").

27.    Finally, disqualification would indisputably prejudice the Debtors. These cases have reached a critical inflection point: the November 16 claims bar date is mere days away, and the White & Case team is currently working with the Debtors' other advisors to analyze voluminous abuse claims information and preparing for intensive mediated negotiations with the Debtors' principal constituents regarding the structure and terms of a confirmable chapter 11 plan. Disqualifying White & Case as the Debtors' restructuring counsel would be highly detrimental to the Debtors and their estates, and would jeopardize the Debtors' restructuring efforts.

28.    Each of the foregoing factors supports a determination that Century waived any right it might have had to challenge the Debtors' retention of restructuring counsel based on its representation of JPM in unrelated matters. Accordingly, the Court should overrule the Objection.

## IV.    White & Case Will Observe the Court's Prior Ruling Regarding Coverage Matters Adverse to Century.

29.    In its bench ruling on the Debtors' application to retain Sidley, the Court held that "Haynes and Boone must handle all matters adverse to Century that address the substantive treatment of BSA's insurance policies with Century, claims thereunder, proceeds therefrom or that

otherwise implicate insurance coverage."[9]  Haynes and Boone has handled, and will continue to handle, such coverage matters involving Century.  *See* Objection ¶ 27.

30.    Century also contends that members of the White & Case team have failed to abide by the Bench Ruling by not "recusing themselves" from "any aspect of the representation that touches on Century's insurance."  Objection ¶ 24.  But the Bench Ruling is not as broad as Century claims.  The Court directed Haynes and Boone to handle "**matters adverse to Century** that address the substantive treatment of BSA's insurance policies with Century."  *See* Bench Ruling, p. 14 (emphasis added).  It is therefore entirely appropriate for White & Case, including former Sidley attorneys who are now at White & Case, to lead or participate in routine update calls with numerous insurers, including Century, and to discuss general issues relating to Century with Haynes and Boone and other estate professionals.  These discussions include, for example, Century's document requests and its many filings in the case that do not implicate insurance coverage.

31.    White & Case will continue to abide by the requirements of the Bench Ruling, and the Court should overrule the Objection to the extent it seeks to disqualify White & Case for any purported violation of the Bench Ruling.

**V.    White & Case's Disclosures Comply with the Requirements of Rule 2014 of the Federal Rules of Bankruptcy Procedure.**

32.    Century's assertion that White & Case has failed to comply with rule 2014 of the Federal Rules of Bankruptcy Procedure (Objection ¶¶ 30–32) is also without merit.  Bankruptcy Rule 2014(a) requires that a law firm seeking to be retained disclose all "connections" with "any . . . party in interest."  Fed. R. Bankr. P. 2014.  White & Case has satisfied this requirement by

---

[9] *Bench Ruling Delivered May 29, 2020 on Debtors' Application to Retain Sidley Austin LLP as Attorneys for the Debtors and Debtors in Possession* (the "<u>Bench Ruling</u>"), Docket No. 755, p. 14.

appending Schedule 2 to the Initial Boelter Declaration in support of the Application.  Schedule 2 discloses White & Case's connections to Potential Parties in Interest, including JPM.  *See* Bench Ruling, p. 15 (finding Sidley's disclosures sufficient where they "accurately reflect[ed] Sidley's view . . . and provide[d] parties and the court with enough information to ask questions.").  White & Case has now gone further than required under Bankruptcy Rule 2014 by describing in the Supplemental Boelter Declaration the nature of the legal services it provides to JPM.  *See* Supplemental Boelter Declaration ¶ 6.

33.     A cursory review of recent applications to retain restructuring counsel in other large chapter 11 cases in this District reveals that White & Case's disclosure of its connection to JPM is substantively identical to the disclosures of other lead restructuring counsel with respect to their respective representations of secured lenders.  *See*, *e.g.*, *In re TNT Crane & Rigging, Inc.*, Case No. 20-11982 (BLS) (Bankr. D. Del. Sept. 2, 2020) (disclosing debtor's counsel's then-current or former representations of certain secured lenders on unrelated matters); *In re The Hertz Corp.*, Case No. 20-11218 (MFW) (Bankr. D. Del. June 4, 2020) (same); *In re Nordam Grp., Inc.*, Case No. 18-11699 (MFW) (Bankr. D. Del. Aug. 8, 2020) (same); *In re Verso Corp.*, Case No. 16-10163 (KG) (Bankr. D. Del. Feb. 3, 2016) (same); *In re Swift Energy Co.*, Case No. 15-12670 (MFW) (Bankr. D. Del. Jan. 12, 2016) (same).  In the *Verso* chapter 11 cases, Century's lead counsel, O'Melveny & Myers LLP, concurrently represented the debtors and numerous secured lenders in "ongoing matters unrelated to the Debtors."  The Debtors assume this uncomfortable fact is why the Objection is not signed (and instead merely ghost-written) by Mr. Schiavoni.

34.     Further bolstering its comprehensive disclosures, White & Case has acceded to Century's request to produce "a copy of any and all communications between Jessica Boelter and/or Michael Andolina and JPMorgan Chase Bank, NA, or counsel representing JPMorgan

Chase Bank, NA, concerning the Boy Scouts of America and/or Delaware BSA, LLC." *See* Supplemental Boelter Declaration ¶ 9. White & Case has not, however, produced to Century any draft complaint asserting claims against JPM. As Century observes in the Objection, the third stipulation extending the Challenge Period required the Tort Claimants' Committee, the Creditors' Committee and the Future Claimants' Representative to deliver a draft complaint to the Debtors on or before October 19, 2020.[10] The third stipulation was the result of mediated negotiations among JPM, the Tort Claimants' Committee, the Creditors' Committee and the Future Claimants' Representative. Those parties have asserted, and the Debtors agree, that the draft complaint is protected by the mediation privilege. Representatives of the Tort Claimants' Committee, the Creditors' Committee and the Future Claimants' Representative have informed White & Case that the Debtors are not authorized to produce the draft complaint to Century or any other party, and the Debtors have agreed not to do so. *Id.*

35.    By claiming that White & Case's disclosures under Bankruptcy Rule 2014 are deficient, Century is arguing in favor of a standard that goes beyond the requirements of that rule and is effectively proposing that White & Case be compelled to disclose "every conceivable interpretation of its connections; as well as a prediction of the outcome of any litigation that may result from, or be related to, the referenced connection." *See In re Enron Corp.*, 2003 U.S. Dist. LEXIS 1442, at *17. This view of disclosure requirements "would make disclosure under Rule 2014 an impossible task subject to endless litigation over what would be enough." *Id.* White & Case's disclosure has been "meaningful, forthright, continuous, and sufficiently detailed to fulfill its obligations under Rule 2014." *See id.*

---

[10] *See Third Stipulation with Prepetition Secured Parties Reserving Certain Committee Rights Pursuant to Final Cash Collateral Order*, Docket No. 1550 ¶ 1.

## **<u>CONCLUSION</u>**

For all of the reasons set forth above, Century's objection should be overruled and the Application to retain White & Case should be granted.

*[Remainder of Page Intentionally Left Blank]*

Dated:  November 13, 2020
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
      aremming@mnat.com
      emoats@mnat.com
      ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. K. Boelter (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.boelter@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email:  mandolina@whitecase.com
      mlinder@whitecase.com

*Counsel and Proposed Co-Counsel for the Debtors
and Debtors in Possession*