**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:  December 16, 2020 at 10:00 a.m. (ET)**<br>**Objection Deadline:  December 9, 2020 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
JLL VALUATION & ADVISORY SERVICES, LLC AS APPRAISER FOR THE
DEBTORS AND DEBTORS IN POSSESSION WITH RESPECT TO CERTAIN
LOCAL COUNCIL PROPERTIES, *NUNC PRO TUNC* TO NOVEMBER 30, 2020**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit

corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases

(together, the "Debtors"), submit this application (this "Application"), pursuant to sections 327(a)

and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"),

rules 2014 and 6005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order,

substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the

Debtors to retain and employ JLL Valuation & Advisory Services, LLC ("JLL") to provide

appraisal and valuation services for certain Local Council Properties (as defined below), effective

as of November 30, 2020, pursuant to the terms and conditions of the engagement letter (the

"Engagement Letter"), a copy of which is attached hereto to the Proposed Order as **Exhibit 1**,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

(ii) approving the terms of JLL's retention and employment, including the fee and expense structure and the indemnification provisions, as modified by the Proposed Order, and (iii) granting certain related relief.  In support of this Application, the Debtors submit the declaration of Eric L. Enloe, MAI, CRE, FRICS, Managing Director at JLL (the "Enloe Declaration"), which is attached hereto as **Exhibit B** and is incorporated herein by reference.  In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1.      The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

2.      On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

3.      On April 24, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") appointed James L. Patton, Jr. (the "Future Claimants' Representative") as the representative of future abuse claimants pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.

4.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry

of a final order or judgment by the Court in connection with this Application if it is determined

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to

28 U.S.C. §§ 1408 and 1409.

5.     The statutory and other bases for the relief requested in this Application are sections

327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6005, and Local Rule 2014-1.

## BACKGROUND OF THE DEBTORS

6.     Additional information regarding the Debtors' non-profit operations, capital

structure, and the circumstances preceding the Petition Date may be found in the *Declaration of

Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I.

16] and the *Debtors' Informational Brief* [D.I. 4].

## RELIEF REQUESTED

7.     By this Application, the Debtors request entry of the Proposed Order, substantially

in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to retain and employ JLL to

provide appraisal and valuation services for the Local Council Properties (as defined below), *nunc

pro tunc* to November 30, 2020, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code,

Bankruptcy Rules 2014 and 6005, and Local Rule 2014-1, in accordance with the terms of the

Engagement Letter, (ii) approving the terms of JLL's retention and employment, including the fee

and expense structure and the indemnification provisions, as modified by the Proposed Order, and

(iii) granting related relief.

## LOCAL COUNCIL PROPERTIES AND SELECTION OF JLL

8.     To carry out its Scouting programs, the BSA has granted charters to 253 local

councils, each of which operates in a specific geographic area (collectively, "Local Councils").

Each of the Local Councils is separately incorporated under the non-profit laws of its respective

state, is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, and has an independent board of directors and senior management.  The Local Councils are neither subsidiaries nor affiliates of the BSA and none of the Local Councils are debtors in these chapter 11 cases.

9.      Although the BSA's high adventure facilities are the apex of the BSA's Scouting programs at the national level, collectively, Local Councils own and operate hundreds of unique camps and other properties that host outdoor activities, educational programs, and leadership training for youth involved in BSA's Scouting programs.  Certain Local Councils also own office buildings used for their program staff and approximately 160 Scout Shops, which the BSA leases from these Local Councils to sell retail merchandise and other products. Certain Local Councils also own various other properties including vacant land and/or properties that are not in use.

10.     As the Court is aware, the Debtors and their stakeholders are currently engaged in mediated negotiations regarding a chapter 11 plan of reorganization that provides for a global resolution of claims related to abuse in Scouting.  The Mediators, in consultation with the Debtors, have set a fast-paced schedule for negotiations to take place from mid-November through January 2021.  The Mediators and the Mediation Parties are hard at work under tremendous time pressure. The Debtors hope that these negotiations will ultimately address how a potential settlement fund could be funded by the Debtors, Local Councils, and any other contributing parties.  Because many Local Councils lack significant unrestricted liquid assets, any contribution from Local Councils in the aggregate may need to include real property and improvements as a component.  Local Councils that desire to participate in such a negotiated global resolution may wish to value any real property that they seek to contribute.  Accordingly, the Debtors have determined, in consultation with certain of their stakeholders, that appraisals of certain properties owned by non-

debtor Local Councils (the "<u>Local Council Properties</u>") are necessary to facilitate mediated plan negotiations.[2]  To that end, by this Application, the Debtors are seeking to retain JLL to prepare broker opinions of value of certain Local Council Properties based on analytic assessments that will generally not require physical inspection of such properties.  Among other things, these broker opinions of value will provide the Debtors, Local Councils, and other constituents with important information regarding the market value of the Local Council Properties.  These opinions will aid any Local Councils that decide to participate in a potential settlement in connection with the Debtors' chapter 11 plan that also require valuations of certain of their Local Council Properties.[3]  The valuation opinions will not take deed donor restrictions into account.

11.     To identify and select the most qualified appraiser, the Debtors and their professionals interviewed several potential candidates to assess the following:

(i)     national presence given the wide geographic footprint of the Local Council Properties;

(ii)    prior experience appraising properties similar to the Local Council Properties with respect to size, property type, geographical location, and similar criteria;

(iii)   familiarity with and recognition of property-specific issues;

(iv)    ability to meet all required competencies under the Uniform Standards of Professional Appraisal Practice;

(v)     access to market data;

(vi)    previous experience in providing appraisal reports and testimony in matters involving potential litigation;

---

[2] For the avoidance of doubt, any contribution of a Local Council's assets to a global resolution will need to be approved by that Local Council, acting through its board of directors.  Moreover, nothing in this Application, nor any appraisal of any Local Council Property, is meant to suggest that any Local Council Property is available to satisfy creditor claims or would necessarily be contributed by a Local Council to a potential settlement implemented in connection with a plan of reorganization of the Debtors.

[3] The relief requested in this Application is without prejudice to the right of any Local Council or any other party to dispute the accuracy of any appraisal conducted by JLL.

(vii)    the estimated time frame and fee for completing the appraisal; and

(viii)    professional references and recommendations.

12.    Following this vetting process, the Debtors selected JLL to conduct these appraisals.

## JLL'S QUALIFICATIONS

13.    JLL has extensive experience with both technical and geographic competency for the Local Council Properties described above.  JLL is part of a global network comprised of experienced, licensed, qualified appraisers who use local insights and their years of expertise to deliver accurate, reliable, and prompt valuations.  JLL's professionals provide valuation and appraisal services across a variety of real estate holdings, consistent with the Uniform Standards of Professional Practice of the Appraisal Institute.  In total, in 2019, JLL completed over 11,700 appraisals on properties totaling nearly $170 billion in market value.  JLL or its affiliates have provided real estate advisory and appraisal and broker services in many complex bankruptcy cases, including *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Dec. 21, 2018) [D.I. 1390].

14.    As described above, JLL's services are necessary to advance the Debtors' mediated plan negotiations and to enable the Debtors to successfully reorganize.  Further, the Debtors submit that JLL is well qualified and able to provide the services requested in these chapter 11 cases in a cost-effective, efficient and timely manner.

## SCOPE OF SERVICES

15.    The Debtors are currently in the process of determining which Local Council Properties should be appraised, including in consultation with Local Councils.  At present, the Debtors estimate that JLL will appraise approximately 300 Local Council Properties, representing fee simple interests in office buildings, campgrounds and certain other properties, including vacant

land. JLL has substantial expertise in the areas described above, and if, this Application is approved, will provide services to the Debtors under an order approving this Application. JLL will work closely with the Debtors' management and professionals throughout the appraisal process. The Debtors will attempt to coordinate with other stakeholders, including the Tort Claimants' Committee, the Ad Hoc Committee of Local Councils, and individual Local Councils, to identify particular Local Council Properties to appraise.[4]

## NO DUPLICATION OF SERVICES

16.    The Debtors are aware that other constituents, including the Tort Claimants' Committee, may also be seeking to retain an appraiser to conduct broker opinions of value of certain Local Council Properties.  The Debtors have had preliminary discussions with the Tort Claimants' Committee regarding the utility of appraising certain Local Council Properties in connection with the plan mediation, and the Debtors and JLL are committed to working collaboratively with any appraiser that might in the future be retained, including by the Tort Claimants' Committee, to avoid unnecessary duplication of services.  The Debtors will also work to ensure that the methodology employed by JLL is acceptable to the Debtors' constituents, including the Tort Claimants' Committee.  Further, the Debtors will share the results of JLL's appraisals with all relevant constituents, including Local Councils that own the Local Council Properties being appraised.  Although the Debtors have retained other professionals in these cases, including appraisers to evaluate the BSA's high adventure facilities, the Debtors do not believe that the services to be rendered by JLL will be duplicative of the services performed by any other

---

[4] For the avoidance of doubt, as of the date of this Application, the BSA has not sought the consent of any individual Local Council to conduct a valuation of its property.

professional or appraiser, and JLL will work with the other professionals retained by the Debtors to minimize any duplication of services on behalf of the Debtors.

## PROFESSIONAL COMPENSATION

17.     The Debtors propose to retain and employ JLL to serve as the Debtors' appraiser on the terms and conditions set forth in the Engagement Letter as modified herein in accordance with JLL's customary billing practices.  As the appraisals will cover a portfolio of Local Council Properties, the Engagement Letter sets forth a fee structure for each piece of real estate:

|  | BASE | COMPLEX |
|---|---|---|
| **OFFICE** | $2,500 | $3,000 to $6,000 |
| **CAMPGROUND** | $2,500 | $3,000 to $8,000 |

18.     Appraisers and valuation consultants do not typically charge for their services on an hourly basis except for testimony and similar litigation services, and it is not JLL's general practice to keep detailed time records similar to those customarily kept by attorneys.  The Debtors request that JLL not be required to maintain time records for producing the appraisals.  The Debtors believe that this fee configuration is reasonable because the structure of the compensation contemplated under the Engagement Letter is only partially based on the time expended by JLL.

19.     The fee structure above will include any of JLL's expenses related to the appraisal and valuation services, and JLL will not seek reimbursement for out-of-pocket expenses incurred in connection with these chapter 11 cases.

20.     JLL's fee and expense structures are consistent with and typical of compensation arrangements entered into by JLL and other comparable firms that render similar services under similar circumstances.  The Debtors believe that JLL's fee and expense structures are reasonable, market-based, and designed to compensate JLL fairly for its work and to cover fixed and routine overhead expenses.

21.     JLL has not received any payments from the Debtors to date.

22.     In light of the fee structures and general industry practice for JLL, the Debtors, along with JLL, request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court, or any guidelines regarding the submission and approval of fee applications, JLL and its professionals not be required to file monthly or interim fee applications or to keep time records, except as noted above, in connection with any work, including consulting or testimony, beyond the appraisal.  Rather, the Debtors request that, upon completion of all of the services identified in each Engagement Letter, to the extent JLL is entitled to and wishes to seek compensation on account of the services performed as set forth in this Application, JLL be permitted to file one or more applications for full compensation for its appraisal services rendered in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and order of the Court.

23.     As a material part of the consideration for which JLL has agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions contained in the Engagement Letter.  Notwithstanding the foregoing, the Debtors will agree with JLL before signing the Engagement Letter to modify such provisions during the pendency of these chapter 11 cases as follows:

      (a)     JLL shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

      (b)     the Debtors shall have no obligation to indemnify JLL, or provide contribution or reimbursement to JLL, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from JLL's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self- dealing; (ii) for a contractual dispute in which the Debtors allege the breach of JLL's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists

<u>Theatre Co.</u>, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to JLL's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which JLL should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Application and the Proposed Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, JLL believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under an Engagement Letter (as modified by this Application and the Proposed Order), including without limitation the advancement of defense costs, JLL must file an application therefore in this Court, and the Debtors may not pay any such amounts to JLL before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by JLL for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify JLL.  All parties in interest shall retain the right to object to any demand by JLL for indemnification, contribution or reimbursement.

24.     The terms and conditions of the Engagement Letter, including, but not limited to, the indemnification provisions were negotiated by the Debtors and JLL at arm's length and in good faith.  The indemnification provisions, contained in the Engagement Letter and as modified herein, viewed in conjunction with the other terms of JLL's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors.

## **DISINTERESTEDNESS**

25.     The Debtors have been advised that, to the best of JLL's knowledge, based on the results of JLL's search performed to date, that neither JLL nor any of JLL's employees expected to assist the Debtors in these chapter 11 cases is, or was within two years before the commencement of these chapter 11 cases, a director, an officer, or an employee of the Debtors.  Also, the Debtors have been advised, to the best of JLL's knowledge, information, and belief, that neither JLL nor

any of JLL's employees expected to assist the Debtors are connected to the United States Bankruptcy Judge presiding over these chapter 11 cases or any person employed by the Office of the United States Trustee for the District of Delaware.

26.     To the best of the Debtors' knowledge, JLL is (a) disinterested as defined in the Bankruptcy Code and (b) does not hold or represent any interest adverse to the Debtors' estates.

## **BASIS FOR RELIEF**

27.     The Debtors request authority to retain and employ JLL to provide appraisal and valuation services of the Subject Properties pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title. 1 U.S.C. § 327(a).

28.     Bankruptcy Rule 2014(a) requires that a retention application state the following:

> [T]he specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm]'s connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.  Additionally, Local Rule 2014-1 requires that an entity seeking to employ a professional under section 327 of the Bankruptcy Code file "a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1.Bankruptcy Rule 6005 requires that the amount or rate of compensation of appraisers or auctioneers be fixed by order of the court.  The Debtors respectfully submit that section 327(a) of the Bankruptcy Code permits them to hire JLL in these chapter 11 cases.  Furthermore, the

11

requirements set forth by Bankruptcy Rule 2014 are satisfied by this Application.

29.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer."   11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of JLL's retention as described herein, including the proposed compensation terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  The retention of JLL in these chapter 11 cases is in the best interests of the Debtors' estates, creditors, and parties in interest.

30.     JLL has agreed to serve as appraiser and valuation advisor on and after the effective date of its respective engagement with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to November 30, 2020, so that JLL may be compensated for its own services performed prior to the entry of the Proposed Order.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment as provided in this Application, because JLL will be providing valuable appraisal services to the Debtors' estates in the interim period.

31.     Courts in this District have routinely approved *nunc pro tunc* employment and compensation structures similar to that requested herein in cases comparable to this matter.[5] Accordingly, the Debtors respectfully request entry of an order authorizing the Debtors to retain and employ JLL to provide appraisal and valuation services for the Subject Properties, *nunc pro tunc* to November 30, 2020.

---

[5] See, e.g., In re Sports Authority Holdings, Inc., Case No. 16-10527 (MFW) (Bankr. D. Del. June 20, 2016) [D.I. 2229]; In re Verso Corp., Case No. 16-10163 (KG) (Bankr. D. Del. Apr. 19, 2016) [D.I. 727]; In re Cal Dive Int'l, Inc., Case No. 15-10458 (CSS) (Bankr. D. Del. Apr. 27, 2015) [D.I. 312].

## **NOTICE**

32.     Notice of this Application will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and any further relief the Court may deem just and proper.

Dated:  November 30, 2020
       Wilmington, Delaware

Respectfully submitted,

*/s/ Steven P. McGowan*
Steven P. McGowan
Secretary and General Counsel

*Boy Scouts of America and Delaware BSA, LLC*