<u>**Exhibit A**</u>

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

### ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF JLL VALUATION & ADVISORY SERVICES, LLC AS APPRAISER FOR THE DEBTORS AND DEBTORS IN POSSESSION WITH RESPECT TO CERTAIN LOCAL COUNCIL PROPERTIES, *NUNC PRO TUNC* TO NOVEMBER 30, 2020

Upon the application (the "Application")[2] of the Debtors for entry of an order (this "Order")

(i) authorizing the Debtors to retain and employ JLL Valuation & Advisory Services, LLC ("JLL")

to provide appraisal and valuation services for the Subject Properties, effective as of November

30, 2020, pursuant to sections 327(a) and 328 of the Bankruptcy Code as modified by section

1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 6005, and Local Rule 2014-1, in

accordance with the terms of each of the Engagement Letter by and between the Debtors and JLL,

(ii) approving the terms of JLL's retention and employment, including the fee and expense

structure and the indemnification provisions, as applicable, as modified by the Application and

this Order, and (iii) granting related relief; and upon consideration of the Declarations; and this

Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware, dated

February 29, 2012; and entry of this Order being a core proceeding within the meaning of 28

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

U.S.C. § 157(b)(2); and the Debtors having consented to the entry of a final order by this Court under Article III of the United States Constitution; and venue of this proceeding and the Application in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and all objections to the Application, if any, having been withdrawn, resolved or overruled; and the relief requested in the Application being in the best interests of the Debtors' estates, their creditors and other parties in interest; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is GRANTED as set forth herein.

2.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 6005, and Local Rule 2014-1, the Debtors are authorized to employ and retain JLL to provide appraisal and valuation services for the Local Council Properties, *nunc pro tunc* to November 30, 2020.

3.      The terms of the Engagement Letter, attached hereto as **Exhibit 1** and as modified by this Order, are reasonable terms and conditions of employment and are hereby approved.

4.      The requirement that JLL keep detailed time records of time spent for professional services rendered in these chapter 11 cases pursuant to Local Rule 2016-2(d) is hereby waived; provided, however, that JLL shall file a final application seeking the final allowance of compensation for appraisal services rendered to the Debtors, with a summary of fees earned and expenses incurred, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court.

5.      Notwithstanding anything to the contrary in the Application or this Order, the fees payable to JLL under the Engagement Letter shall be subject to review in accordance with the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to review under section 330 of the Bankruptcy Code; provided, however, that notwithstanding the foregoing, the U.S. Trustee may review the reasonableness of JLL's fees requested in the final fee application under section 330 of the Bankruptcy Code.

6.      To the extent the Debtors enter into any additional engagement letters for the provision of additional appraisal and valuation services by JLL outside the scope of the Local Council Properties described in the Application, the Debtors shall file such agreements with the Court and serve the applicable notice parties with copies of the same.  To the extent any parties object, within fourteen (14) days of such new agreements being served, to the additional services to be provided by JLL, the Debtors shall promptly schedule a hearing before the Court.  All additional services shall be subject to the provisions of this Order.

7.      Notwithstanding anything to the contrary in any of the Engagement Letter, the Application, or the Declarations, the indemnification provisions are hereby modified as follows:

    (a)      JLL shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

    (b)      the Debtors shall have no obligation to indemnify JLL, or provide contribution or reimbursement to JLL, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from JLL's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self- dealing; (ii) for a contractual dispute in which the Debtors allege the breach of JLL's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to JLL's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after  notice and a hearing to be a claim or expense for which JLL should

3

not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

(c)     if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, JLL believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under an Engagement Letter (as modified by this Order), including without limitation the advancement of defense costs, JLL must file an application therefore in this Court, and the Debtors may not pay any such amounts to the Appraiser before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by JLL for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify JLL. All parties in interest shall retain the right to object to any demand by JLL for indemnification, contribution or reimbursement.

8.     JLL shall use its reasonable best efforts to avoid duplication of services provided to any of the Debtors' other retained professionals in these chapter 11 cases.

9.     To the extent that there is any inconsistency between the terms of any engagement letter approved herein, the Application, or this Order, the provisions of this Order shall govern.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Engagement Letter**



Eric L. Enloe, MAI, CRE, FRICS
Managing Director
200 E Randolph, 47th Floor
Chicago, IL 60601
312-252-8913
Eric.Enloe@am.jll.com

November 30, 2020

Steven McGowan
General Counsel and Secretary
Boy Scouts of America
1325 West Walnut Lane
Irving, TX, 75038

RE:  Valuation & Advisory Services for the Property: Boy Scouts of America Portfolio – Property List TBD

Dear Mr. McGowan,

JLL Valuation & Advisory Services, LLC (JLL VA) is pleased to provide this proposal and engagement letter for valuation and advisory services regarding the Property.

| | |
|---|---|
| PROPERTY IDENTIFICATION: | Boy Scouts of America Portfolio – Property List TBD |
| PROPERTY TYPE: | Office Buildings and Campgrounds |
| INTEREST APPRAISED: | Fee Simple |
| INTENDED USERS: | Boy Scouts of America, and such other users as may be designated and shared by Boy Scouts of America in its sole discretion, who shall each be subject to the *Order Approving Confidentiality and Protective Order* [Docket No. 799], *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (Bankr. D. Del. June 8, 2020) (the "Confidentiality and Protective Order") |
| INTENDED USE: | Asset evaluation as part of a bankruptcy proceeding |
| VALUES PROVIDED: | As Is Market Value |
| VALUATION DATE: | Current |
| APPRAISAL STANDARDS: | Uniform Standards of Professional Appraisal Practice (USPAP) by the Appraisal Foundation, the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute |
| PROPERTY INSPECTION: | JLL VA will not conduct a physical inspection of the Property. |
| VALUATION APPROACHES: | All applicable approaches to value |

1



APPRAISAL REPORT:   Concise

FEE:

|  | **Base** | **Complex** |
| --- | --- | --- |
| **Office** | $2,500 | $3,000 to $6,000 |
| **Campground** | $2,500 | $3,000 to $8,000 |

EXPENSES:   The fee includes the expenses related to this engagement. There will be no added charges for travel, delivery fees or report production costs

DELIVERY DATE:   3 weeks from receipt of sufficient information on the subject properties. Delays in obtaining the data needed to complete this assignment or delays in accessing the property for inspection (if applicable) may result in delays in the date our analysis is completed and delivered.

DELIVERY METHOD:   A PDF of the report(s) will be delivered to the client contact identified on this engagement letter. Two hard copies are available at client's request. Additional copies can be requested at $250 per copy. We will also provide an excel summary of the values for the properties.

This engagement letter is subject to the General Terms and Conditions attached to this letter as Exhibit A, the Statement of Assumptions and Limiting Conditions attached to this letter as Exhibit B.

We appreciate the opportunity to be of service. Providing white-glove service and the least amount of disruption at the property is our top priority.

Sincerely,

**JLL VALUATION & ADVISORY SERVICES, LLC**

Eric L. Enloe, MAI, CRE, FRICS
Managing Director



**AGREED AND ACCEPTED BY:**
Boy Scouts of America

_____
Signature

_____
Printed Name

_____
Title

_____
Date

_____
Email Address

_____
Phone Number

3



## Exhibit A
## Terms and Conditions

### 1. INTRODUCTION

**1.1** These Terms and Conditions supplement the proposal, agreement, letter of engagement or email (the "engagement") between JLL Valuation and Advisory Services, LLC and the Client indicated in the engagement that sets out details of the Services to be provided to the Client. All capitalized terms in this exhibit have the meanings given to them in the engagement unless given a different meaning in this exhibit. These Terms and Conditions, together with the engagement and all other exhibits, schedules and riders to the engagement, are collectively called the "agreement".

### 2. SERVICES

**2.1** We will provide the Services using reasonable care and skill.

**2.2** We may make changes to the Services if necessary to comply with any law or safety requirement. We will notify you if that happens. Otherwise, JLL and the Client must agree in writing to any changes to the Services, the Fees, or any other provision of the agreement.

### 3. CLIENT OBLIGATIONS

**3.1** You agree to give us all documents and other information that we advise you are reasonably necessary for us to provide the Services.

**3.2** You will maintain adequate property and public liability insurance to reasonably insure property that you own or occupy and any activities on that property. You will obtain all necessary licenses, permissions and consents which may be required to enable us to perform the Services (other than professional licenses that we are required to maintain to perform the Services). You are responsible to keep your property in a safe condition so that we may perform the Services in reasonable safety.

**3.3** You will notify us promptly if you believe any information you have provided is incomplete or inaccurate.

### 4. DELAY

We are not responsible for any delay in our performance of the Services if caused by any event beyond our reasonable control, or for any delay caused by your failure to comply with the agreement.

### 5. FEES, EXPENSES AND PAYMENT

**5.1** Our fee in its entirety is earned upon delivery of the first report. We will invoice you at time of delivery for any outstanding balance, which balance shall be subject to approval by the Bankruptcy Court pursuant to a fee application.

**5.2** You agree that your obligation to pay the Fee is not contingent upon the results, conclusions or recommendations we provide.

**5.3** If we are asked to invoice any other party, you agree to settle our invoice immediately if the other party does not do so within 30 days of the date of the invoice.

**5.4** Delinquent payments under the agreement will earn interest at the rate of one and one-half percent (1-1/2%) per month from the date due until paid, or if lower, the maximum rate permitted by law. If the Fee or any part of it remains unpaid 30 days after it was due, you may not use any report or work product we have delivered to you for any reason.

**5.5** If you terminate this agreement before the Services are completed, you will pay us, no later than the termination date, a reasonable fee proportionate to the part of the Services performed to the date of termination.

**5.6** Our rights under Section 5.3 and 5.4 are in addition to, and will not limit, our right to pursue any other rights and remedies under the agreement or at law or in equity.

### 6. INDEMNITY

You agree to indemnify and defend us and hold us harmless from any loss, liability or expense (including attorneys' fees) arising from a third party action, claim or proceeding ("Loss") that we suffer arising out of the agreement or the Services, other than Loss that a court of competent jurisdiction has determined was the result of our negligence or willful misconduct. We agree to indemnify and defend you and hold you harmless from any Loss that you suffer arising out of our negligent performance of Services under the agreement, other than Loss that is found by a court of competent jurisdiction to result from your negligence or willful misconduct.



**7. EXCLUSIONS OF, AND LIMITATIONS ON, LIABILITY**

**7.1** EACH OF JLL AND THE CLIENT WAIVES ANY CLAIMS AGAINST EACH OTHER FOR LOSS OF PROFITS, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR SIMILAR DAMAGES IN CONNECTION WITH THE AGREEMENT. IN NO EVENT SHALL JLL'S LIABILITY IN CONNECTION WITH THE AGREEMENT EXCEED THE FEE PAID TO JLL HEREUNDER.

**8. TERMINATION**

**8.1** Either of us may terminate the agreement without reason by giving 30 days' advance written notice to the other.

**8.2** Either of us may terminate the agreement immediately if the other breaches the agreement and fails to remedy the breach within 10 days of notice by the non-breaching party.

**8.3** We may terminate the agreement immediately for any of the following reasons:

(a) We cannot provide any of the Services due to conditions beyond our reasonable control.

(b) In our reasonable opinion, there is insufficient information available to provide a report or other work product that meets our standards.

(c) A conflict of interest arises which prevents us from acting for you.

(d) You have asked us to provide reports or work product that we do not consider to be accurate.

**9. ASSUMPTIONS AND LIMITATIONS**

**9.1** Any report or other work product we deliver as part of the Services will be subject to our standard Statement of Assumptions and Limiting Conditions, provided as an exhibit and as part of the agreement, which will be incorporated into the report or work product.

**9.2** We understand that you may wish to use the report or other work product we deliver as part of the Services to support your Stark law and Anti-Kickback compliance process. Our reports and work product are appraisals prepared pursuant to Uniform Standards of Professional Appraisal Practice, and do not undertake to evaluate any such compliance. You acknowledge that many factors in addition to property value must be considered to determine Stark or anti-kickback law compliance, and agree that any reports and work product we deliver make no opinion or representation that any transaction involving property we appraise is compliant with Stark law or any anti-kickback law.

**10. CONFIDENTIALITY**

**10.1** We each agree to maintain the confidentiality of each other's confidential information and will not disclose any information received in confidence from each other, until two years after termination or expiration of the agreement, except where required to do so by law.

**10.2** Any report or other work product that we deliver to you in connection with the Services is confidential and may be used by only you and parties that you share a report with, who in each will be subject to the **Confidentiality and Protective Order** unless we agree otherwise in writing.

**11. INTELLECTUAL PROPERTY RIGHTS**

**11.1** We retain all copyright (and other intellectual property rights) in all materials, reports, systems and other deliverables which  we produce or develop for the purposes of the agreement, or which we use to provide the Services.

**11.2** You will not reproduce or copy any part of any report or other work product we produce as part of the Services without our prior written consent.

**12. GENERAL**

**12.1** The agreement may be modified only by a written agreement signed by both of us. Liability accruing before the agreement terminates or expires will survive termination or expiration.

**12.2** The agreement states the entire agreement, and supersedes all prior agreements, between you and JLL with respect to the matters described in the agreement.

**12.3** If a court determines that any part of the agreement is unenforceable, the remainder of the agreement will remain in effect.

**12.4** The agreement is governed by the laws of the State of Illinois. Each of us irrevocably submits to the exclusive jurisdiction of the courts of that State.

**12.5** The agreement may be executed in multiple counterparts.



**12.6** No director, officer, agent, employee or representative of either of us has any personal liability in connection with the agreement.

**12.7** Neither of us may assign or transfer any rights or obligations under the agreement without the prior written approval of the other. We each agree to be reasonable in evaluating such a request for approval.

**12.8** If there is any conflict between the terms of the letter and this exhibit, the terms of the letter will prevail.

**12.9** If either of us fails to enforce any provision or exercise any right under the Agreement at any time, that failure will not operate as a waiver to enforce that provision or to exercise that right at any other time.

**12.10** The agreement does not establish any partnership or joint venture between us, or make either of us the agent of the other.

**12.11** A person who is not a party to the agreement does not have any rights to enforce its terms unless specifically agreed in writing.

**12.12** Neither of us may publicize or issue any specific information to the media about the Services or the agreement without the written consent of the other.

**12.13** Each of us represents to the other that it is not a person or entity with whom U.S. entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order or other governmental action. Each of us agrees to comply with all applicable laws, statutes, and regulations relating to anti-bribery and anti-corruption.

**12.14** If either party does not comply with the obligations under the agreement and legal action is commenced to enforce the rights under the agreement, the faulty losses will reimburse the prevailing party reasonable costs (including attorneys' fees), associated with such action. **THE PARTIES HEREBY WAIVE TRIAL BY JURY**.

**12.15** Sections 5, 6, 7, 10, 11, 12.1, 13, 17 and 18 will survive termination of the agreement.

### 13. USE OF DATA AND DATA PROTECTION

**13.1** You agree as follows: (i) The data we collect in connection with the agreement will remain our property. (ii) We and our affiliates may utilize, sell and include data you have provided (either in the aggregate or individually) in the databases of JLL and its affiliates and for use in derivative products. (iii) We may utilize all data already in the public domain on an unrestricted basis.

**13.2** In order for us to provide the Services, we may need to record and maintain in hard copy and/or in electronic form, information regarding the Client, its officers and any other individuals connected with the Client (collectively "Data Subjects"). We may also verify the identity of Data Subjects, which could include carrying out checks with third parties such as credit reference, anti-money laundering or sanctions checking agencies.

**13.3** We may use all information that we hold regarding Data Subjects to provide the Services. We may also use and share it with third parties for other purposes as described in our Privacy Statement available at www.jll.com. We may use both commercially available and proprietary software programs to perform the Services (web based and others).

### 14. SPECIAL EXPERTS

**14.1** If you request our assistance in hiring a special expert to contribute to any assignment (such as a surveyor, environmental consultant, land planner, architect, engineer, business, personal property, machinery and equipment appraiser, among others), you will perform your own due diligence to qualify the special expert. You will be responsible to pay for the services of the special expert.

**14.2** We not responsible for the actions and findings of any special expert. You agree to indemnify and defend us and hold us harmless from all damages that may arise out of your reliance on any special expert.

### 15. CONFLICTS POLICY

JLL adheres to a strict conflict of interest policy. If we learn of a conflict of interest, we will notify you and recommend a course of action to resolve the conflict. If we learn of a conflict that we do not believe can be resolved, we may terminate the agreement without penalty.



### 16. FIRREA REQUIREMENTS

Federal banking regulations require banks and other lending institutions to engage appraisers where FIRREA compliant appraisals must be used in connection with mortgage loans or other transactions involving federally regulated lending institutions. Given that requirement, any report produced by JLL under the agreement, if ordered independent of a financial institution or agent, might not be FIRREA compliant or acceptable to a federally regulated financial institution.

### 17. USPAP REQUIREMENTS

The Ethics Rule of the Uniform Standards of Professional Appraisal Practice ("USPAP") requires us to disclose to you any prior services (appraisal or otherwise) performed within three years prior to the date of this letter by the individual JLL appraiser who will be performing Services for the Property. We represent that to our knowledge, that JLL has not provided prior services within the designated disclosure period, outside of what we have identified.

### 18. USE OF WORK PRODUCT AND RELIANCE

18.1    You agree that any report or other work product we produce in connection with the Services are for your use only, and only for the purpose indicated in the agreement. No person or entity other than the Client may use or rely on any such report or work product unless we consent otherwise in writing, even if such reliance is foreseeable. Any person who receives a copy of any report or other work product we produce as a consequence of disclosure requirements that apply to the Client, does not become an intended user of this report unless the Client specifically identified them at the time of the engagement.

18.2    You will not use any such report or work product in connection with any public documents. You will not refer to JLL in any public documents without our prior written consent. We may give or withhold our consent in our sole discretion for any purpose under this Section 18.

18.3    Notwithstanding the foregoing, JLL understands that applicable law in eminent domain proceedings may require you to disclose our reports and work product to landowners and to otherwise make our reports and work product available to the public.  To the extent required by applicable law, JLL consents to such disclosure.  However, you and only you, and no such landowner or other person or entity, may rely on our reports or our work product.

### 19. LITIGATION MATTERS

19.1    We are not required to testify or provide court-related consultation or to be in attendance in court unless we have agreed to do so in the agreement or otherwise in writing, or if required by law.

19.2    If we receive a subpoena or other judicial command to produce documents or to provide testimony in a lawsuit or proceeding regarding the agreement, we will notify you if allowed by law to do so. However, if we are not a party to these proceedings, you agree to compensate us for our professional time at the then prevailing hourly rates of the personnel responding to the subpoena or providing testimony, and to reimburse us for our actual expenses incurred in responding to any such subpoena or judicial command, including attorneys' fees, if any, as they are incurred.

v. 02_27_2020

7



Exhibit B

Statement of Assumptions and Limiting Conditions

1. All reports and work product we deliver to you (collectively called "report") represents an opinion of value, based on historical information and forecasts of market conditions. Actual results may vary from those forecast in the report. There is no guaranty or warranty that the opinion of value reflects the actual value of the property.

2. The conclusions stated in our report apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events. Assessed values may change significantly and unexpectedly over short periods. We are not liable for any conclusions in the report that may be different if there are subsequent changes in value. We are not liable for loss relating to reliance upon our report more than three months after its date.

3. There may be differences between projected and actual results because events and circumstances frequently do not occur as predicted, and those differences may be material.  We are not liable for any loss arising from these differences.

4. We are not obligated to predict future political, economic or social trends.  We assume no responsibility for economic factors that may affect or alter the opinions in the report if the economic factors were not present as of the date of the letter of transmittal accompanying the report.

5. The report reflects an appraisal of the property free of any liens or encumbrances unless otherwise stated.

6. We assume responsible ownership and competent property management.

7. The appraisal process requires information from a wide variety of sources. We have assumed that all information furnished by others is correct and complete, up to date and can be relied upon, but no warranty is given for its accuracy. We do not accept responsibility for erroneous information provided by others. We assume that no information that has a material effect on our appraisal has been withheld.

8. We assume the following, unless informed to the contrary in writing: Each property has a good and marketable title. All documentation is satisfactorily drawn and that there are no encumbrances, restrictions, easements or other adverse title conditions, which would have a material effect on the value of the interest under consideration.  There is no material litigation pending involving the property.  All information provided by the Client, or its agents, is correct, up to date and can be relied upon. We are not responsible for considerations requiring expertise in other fields, including but not limited to: legal descriptions, interpretation of legal documents and other legal matters, geologic considerations such as soils and seismic stability, engineering, or environmental and toxic contaminants.  We recommend that you engage suitable consultants to advise you on these matters.

9. We assume that all engineering studies correct. The plot plans and illustrative material in the report are included only to help the reader visualize the property.

10. We assume that there are no hidden or unapparent conditions of the property, subsoil or structures that render it more or less valuable. We are not responsible for such conditions or for obtaining the engineering studies that may be required to discover them.

11. We assume that the property is in full compliance with all applicable federal, state, and local environmental regulations and laws unless the lack of compliance is stated, described, and considered in the report. We have not made or requested any environmental impact studies in conjunction with the report. We reserve the right to



revise or rescind any opinion of value that is based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the report assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

12. Unless otherwise stated in the report, you should assume that we did not observe any hazardous materials on the property.  We have no knowledge of the existence of such materials on or in the property; however, we are not qualified to detect such substances, and we are not providing environmental services.  The presence of substances such as asbestos, urea-formaldehyde foam insulation and other potentially hazardous materials may affect the value of the property.  Our report assumes that there is no such material on or in the property that would cause a loss in value.  We do not assume responsibility for such conditions or for any expertise or engineering knowledge required to discover them.  We encourage you to retain an expert in this field, if desired.  We are not responsible for any such environmental conditions that exist or for any engineering or testing that might be required to discover whether such conditions exist. We are not experts in the field of environmental conditions, and the report is not an environmental assessment of the property.

13. We may have reviewed available flood maps and may have noted in the report whether the property is generally located within or out of an identified Special Flood Hazard Area. However, we are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property.  Any opinion of value we include in our report assumes that floodplain and/or wetlands interpretations are accurate.

14. We have not made a specific survey or analysis of the property to determine whether it is in compliance with the Americans with Disabilities Act ("ADA"), Stark law or any anti-kickback laws. We claim no expertise in such issues and render no opinion regarding compliance of you or the property with ADA, Stark law or anti-kickback law or regulations.

15. We assume that the property conforms to all applicable zoning and use regulations and restrictions unless we have identified, described and considered a non-conformity in the report.

16. We assume that all required licenses, certificates of occupancy, consents, and other legislative or administrative authority from any local, state, or national government or private entity or organization have been or can be obtained or renewed for any use on which the opinion of value contained in the report is based.

17. We assume that the use of the land and improvements is confined within the boundaries or property lines of the property described and that there is no encroachment or trespass unless noted in the report.

18. We have not made any investigation of the financial standing of actual or prospective tenants unless specifically noted in the report. Where properties are valued with the benefit of leasing, we assume, unless we are informed otherwise, that the tenants are capable of meeting their financial obligations under the leases, all rent and other amounts payable under the leases have been paid when due, and that there are no undisclosed breaches of the leases.

19. We did not conduct a formal survey of the property and assume no responsibility for any survey matters. The Client has supplied the spatial data, including sketches and/or surveys included in the report, and we assume that data is correct, up to date and can be relied upon.

20. Unless otherwise stated, the opinion of value included in our report excludes any additional value attributable to goodwill, or to fixtures and fittings which are only of value, in situ, to the present occupier. We have made no allowance for any plant, machinery or equipment unless they form an integral part of the building and would normally be included in a sale of the building. We do not normally carry out or commission investigations into

9



the capacity or condition of services being provided to the property. We assume that the services, and any associated controls or software, are in working order and free from defect. We also assume that the services are of sufficient capacity to meet current and future needs.

21. In the case of property where construction work is in progress, such as refurbishment or repairs, or where developments are in progress, we have relied upon cost information supplied to us by the Client or its appointed experts or upon industry accepted cost guides. In the case of property where construction work is in progress, or has recently been completed, we do not make allowance for any liability already incurred, but not yet discharged, in respect of completed work, or obligations in favor of contractors, subcontractors or any members of the professional or design team. We assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

22. Any allocation in the report of value between the land and the improvements applies only under the stated program of utilization.  The separate values allocated to the land and buildings must not be used in conjunction with any other appraisal and are invalid if so used.

23. The report is confidential to the party to whom it is addressed and those other intended users specified in the report for the specific purpose to which it refers.  Use of the report for any other purpose or use by any party not identified as an intended user of the report without our prior written consent is prohibited, and we accept no responsibility for any use of the report in violation of the terms of this Agreement.

24. We are not required to testify or provide court-related consultation or to be in attendance in court unless we have agreed to do so in writing.

25. Neither the whole report, nor any part, nor reference thereto, may be published in any manner without our prior written approval, subject to your right to share the report with designated parties, who will in each case be subject to the Confidentiality and Protective Order.

26. We may rely on, and will not verify, the accuracy and sufficiency of documents, information and assumptions provided to it by the Client or others. We will not verify documents, information and assumptions derived from industry sources or that JLL or its affiliates have prepared in the regular course of business. We are not liable for any deficiency in the report arising from the inaccuracy or insufficiency of such information, documents and assumptions. However, our report will be based on our professional evaluation of all such available sources of information.

27. JLL IS NOT LIABLE TO ANY PERSON OR ENTITY FOR LOSS OF PROFITS, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR SIMILAR DAMAGES IN CONNECTION WITH THIS AGREEMENT. IN NO EVENT SHALL THE LIABILITY OF JLL AND ITS AFFILIATES IN CONNECTION WITH THIS AGREEMENT EXCEED THE FEE PAID TO JLL HEREUNDER.

28. Unless expressly advised to the contrary, we assume that appropriate insurance coverage is and will continue to be available on commercially acceptable terms.

29. We assume that no material changes in any applicable federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

30. We may determine during the course of the assignment that additional Hypothetical Conditions and Extraordinary Assumptions may be required in order to complete the assignment. The report will be subject to those Hypothetical Conditions and Extraordinary Assumptions. Each person that is permitted to use the report agrees to be bound by all the Assumptions and Limiting Conditions and any Hypothetical Conditions and Extraordinary Assumptions stated in the report.



JLL Valuation & Advisory Services
Boy Scouts of America | Exhibit B

v. 02_27_2020



JLL Valuation Advisory is pleased to be completing valuation services relating to your property. The following represents a general request of items specific to your property type. Some items may not apply or be readily available. Please reach out anytime with questions.

Financial information

1. Budgeted capital expenditures.
2. Actual capital expenditures over the past 24 months.
3. Details of a pending sale agreement or sales within past 3 years. A copy of purchase & sale agreement or offering memorandum is preferred.

Property information

1. Site survey, site plan, legal description or plat map.
2. Year built and year of any additions, recent renovations or planned construction.
3. Gross building area (total square feet) and net rentable area.
4. Copy of floor plans showing location of tenants, if available.
5. Copy of marketing brochure that includes rental rates and other ancillary charges.
6. Ad Valorem tax bill (real property and personal property, if applicable).