# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br><u>Obj. Deadline</u>: December 9, 2020, at 4:00 p.m. (ET)<br><u>Hearing Date</u>: December 16, 2020 at 10:00 a.m. (ET) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING CERTAIN INSURERS TO PRODUCE DOCUMENTS PURSUANT TO RULE 2004

The Boy Scouts of America (the "<u>BSA</u>") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>") submit this *Motion for Entry of an Order Directing Certain Insurers[2] to Produce Documents Pursuant to Rule 2004* (the "<u>Motion</u>"), and respectfully represent to the Court as follows:

## PRELIMINARY STATEMENT

1.  The BSA seeks the entry of an order, substantially in the form annexed hereto as <u>Exhibit A</u>, compelling CNA to comply with the requests listed in <u>Exhibit B</u> and compelling all the Insurers (as defined in footnote 2) to provide a written certification that they will complete their respective document productions by January 1, 2021.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2] The insurers subject to this motion include: the Chubb Group of Insurance Companies, including but not limited to Insurance Company of North America ("<u>Century</u>"); the American International Group, Inc. entities, including National Union Fire Insurance Company of Pittsburgh, PA, Lexington Insurance Company, Landmark Insurance Company, and the Insurance Company of the State of Pennsylvania ("<u>AIG</u>"); and The Continental Insurance Company entities, including Columbia Casualty Company, The Continental Insurance Company, as successor in interest to certain policies issued by Harbor Insurance Company, and The Continental Insurance Company, as successor by merger to Niagara Fire Insurance Company ("<u>CNA</u>") (collectively, the "<u>Insurers</u>").

2. For more than a year, the BSA and the Local Councils have made several requests for categories of documents from their insurers, including documents relating to: (i) policies issued to the BSA prior to 1962; (ii) policies issued to the Local Councils prior to 1978; (iii) the availability of limits of liability under each of the Insurers' policies issued to the BSA; and (iv) the availability of limits of liability under Insurers' policies issued to the Local Councils.

3. To date, Century, AIG, and CNA have failed to substantially comply with these requests by either searching for the requested documents or agreeing to a deadline for its document production. Indeed, CNA has refused to even conduct a fulsome search for the requested documents—even though other insurers (including Century and AIG) have agreed to perform the requested searches. And all the Insurers have refused to agree to a production deadline.

4. The BSA and the Local Councils require immediate access to this information. The Insurers' policies are assets of the BSA's estate and a substantial source of recovery to the alleged claimants. The requested documents are therefore critical to the mediated negotiation of a confirmable plan of reorganization for the Debtors that provides for a global resolution of claims related to abuse in Scouting.

5. For the reasons set forth below, the Motion should be granted.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if its determined

that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"), Federal Rule of Bankruptcy Procedure 9016, and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware provide the legal predicate for the relief sought.

## BACKGROUND

### I. The Sexual Abuse Lawsuits and Proofs of Claim

9. Prior to the Debtors commencing these cases on February 18, 2020 (the "Petition Date"), the BSA and certain Local Councils were named defendants in more than 385 civil lawsuits related to historical acts of sexual abuse in its programs. The BSA could not continue to address abuse litigation in the tort system on a case-by-case basis and therefore commenced the above-captioned chapter 11 proceedings.

10. On May 26, 2020, the Court entered its Order setting November 16, 2020 as the deadline for filing proofs of claim (the "Bar Date").[3] More than 95,000 sexual abuse claims were filed against the BSA and the Local Councils as of the Bar Date. Given the number of claims and the evidence discovered to date about the BSA's insurance program and the separate insurance coverage purchased by most, if not all, of the Local Councils, both the BSA and the Local Councils have a fiduciary duty to discover all such insurance coverage for the benefit of the Debtors' estates.

---

[3] Doc. No. 695.

**II.     The BSA's and the Local Councils' Insurance Program**

11.     The BSA has historically procured commercial, general-liability insurance ("CGL") policies from multiple insurers to protect itself from a myriad of risks, including claims of sexual abuse or sexual misconduct. In addition, for decades, the BSA has procured general liability insurance coverage for Local Councils.

12.     More specifically, starting in 1971, the BSA began adding certain Local Councils as additional insureds under its CGL policies. In 1978, the BSA formalized this practice through the implementation of a General Liability Insurance Program, whereby the BSA agreed to procure general liability insurance for all Local Councils by including them in the definition of "Named Insured" in all of the BSA CGL policies.

13.     For decades prior to 1978, many, and potentially all, of the Local Councils separately purchased comprehensive general liability policies from various insurers on an annual basis. Throughout the past fifty years, many of the Local Councils have merged, moved to various locations, and/or have experienced natural disasters, such as fires and hurricanes, that have purportedly made it difficult to locate certain of the insurance policies purchased prior to 1978.

14.     However, many of the Local Councils have secondary evidence, such as policy renewal forms, board meeting minutes, or charter applications that reflect the various insurance policies purchased throughout this time period, oftentimes including the insurer(s) policy limits, terms and conditions, and policy periods. As discussed below, the BSA and others have been and continue searching for these and other policies based upon the limited information produced to date. However, the Insurers that issued them are in the best position to provide copies of those policies and/or confirm their existence, terms, conditions and limits.

### III. Policies Issued by the Insurers to BSA National and/or the Local Councils

15. The BSA has located and has copies of numerous primary, umbrella and/or excess policies issued by Century to the BSA since 1962. It came to the BSA's attention that Century issued policies to the BSA prior to 1962 and, in fact, had paid to defend and indemnify the BSA against sexual abuse claims occurring in the late 1950s. The BSA began an insurance archeology project to find evidence of pre-1962 polices issued by Century and located substantial secondary evidence that Century issued policies to the BSA dating back to 1950, but likely earlier.

16. Separate and apart from the policies issued to the BSA, the BSA has discovered that Century issued substantial coverage to the Local Councils prior to 1978. For example, Century began providing a broad form liability insurance coverage program to all Local Councils in 1965.[4] Century developed the "INA Scout Blanket General Liability and Automobile Liability Policy" whereby it issued hundreds of policies to Local Councils over many years. Outside of this program, Century also issued hundreds of policies directly to numerous Local Councils.

17. Likewise, the BSA has discovered secondary evidence that AIG provided the Local Councils with a broad form liability program in the 1970s through a broker, R.F. Lyons. Based on correspondence from R.F. Lyons, the BSA understands that AIG issued hundreds of policies to Local Councils from approximately 1945 to the late 1970s.

18. The BSA has also located secondary evidence that reflects that CNA issued numerous policies to numerous Local Councils.

### IV. The BSA and the Local Councils' Pre-Petition Document Requests and the Insurers' Failure to Respond

19. Prior to the Petition Date, after considering the secondary evidence related to each of the Insurers' coverage programs, the BSA and the Local Councils requested information from

---

[4] Century issued this program through Insurance Company of North America ("INA").

the Insurers on numerous occasions regarding the above-referenced categories of information. For example, starting in August 2019, the BSA and the Local Councils made numerous requests for loss runs to determine the amounts of remaining limits of liability available on each of the Insurers' Policies.[5] And in December 2019, the BSA and the Local Councils sent the Insurers a letter requesting information relating to any CGL policies issued to Local Councils prior to 1978.[6]

20.    The Insurers did not respond to these requests nor did they provide any, or all of, the information and documents requested.

## V.    The BSA and the Local Councils' Post-Petition Document Requests and the Insurers' Continuing Failure to Respond

### A.    The Insurers Agreed to Produce Documents by November 2, 2020 But Failed to Comply with that Deadline.

21.    Given the Insurers' failure to comply with the BSA's pre-petition requests, in early August 2020, the BSA and the Local Councils sought to meet and confer with the Insurers pursuant to Rule 2004.[7] The BSA and the Local Councils met and conferred with each of the Insurers on multiple occasions from late-August to mid-October 2020 regarding the BSA's discovery requests, during which each of the Insurers agreed to a November 2, 2020 production date.[8] Throughout those discussions, the BSA and the Local Councils provided the Insurers with search terms,

---

[5] *See* Email from E. Buchanan, Counsel for the BSA, to C. Wadley, Counsel for Century (Aug. 13, 2019), attached hereto as Exhibit C; *see* Email from E. Buchanan to D. Humphreys, Century Representative (Sept. 4, 2019), attached hereto as Exhibit D; *see* Emails from E. Buchanan to J. Hinkhouse, Counsel for AIG (Aug. 13, 2019; October 30, 2019), attached hereto as Exhibit E; *see* Email from E. Buchanan to S. Turner, Counsel for CNA (Aug. 13, 2019), attached hereto as Exhibit F.

[6] *See* Letter from E. Martin, Counsel for the BSA, to C. Wadley (Dec. 11, 2019), attached hereto as Exhibit G; *see* Letter from E. Martin to J. Hinkhouse (Dec. 11, 2019), attached hereto as Exhibit H; *see* Letter from E. Martin to S. Turner (Dec. 11, 2019), attached hereto as Exhibit I.

[7] *See* Email from C. Green, Counsel for the BSA, to C. Wadley (Aug. 7, 2020), attached hereto as Exhibit J; *see* Email from C. Green to S. Gummow, Counsel for AIG (Aug. 7, 2020), attached hereto as Exhibit K; *see* Email from C. Green to C. Goldblatt, Counsel for CNA (Aug. 18, 2020), attached hereto as Exhibit L.

[8] *See e.g.*, Email from C. Green to S. Gummow (Oct. 13, 2020), Ex. K; *see e.g.*, Email from C. Green to L. McNally, Counsel for CNA (Nov. 3, 2020), Ex. L; *see* Decl. of C. Green in Supp. of Motion ¶ 5-8, attached hereto as Exhibit M.

secondary evidence reflecting the requested policies, and other documents to assist in their searches.[9]

22. Additionally, since July 2020, the BSA and the Local Councils have held weekly conferences with all the insurers during which any outstanding issues are discussed. Beginning in late-September, the BSA and the Local Councils added to the weekly agenda the status of the Insurers' responses to the above requests.[10] Each week the BSA and the Local Councils discussed the need for the requested documents by the November 2, 2020, and, each week, no insurer objected to the requests or to the production date.[11]

23. However, on October 30, 2020, counsel for Century informed counsel for the BSA that it could not substantially comply with the November 2, 2020, document production date. AIG similarly did not produce the requested information by November 2, 2020, instead stating that it "has not located a policy issued directly to a local council" despite the existence of secondary evidence suggesting that AIG has issued hundreds of policies to the Local Councils.[12] Finally, CNA produced only policies issued to the BSA (not policies issued specifically to Local Councils) and only recently notified the BSA that it had not, and would not, conduct searches for Local Council policies.[13]

---

[9] *See* Emails from C. Green to C. Wadley (Sept. 15, 2020), attached hereto as Exhibit N; *see* Email from C. Green to C. Wadley (Oct. 13, 2020), attached hereto as Exhibit O; *see* Email from S. Gummow to C. Green (Nov. 4, 2020), Ex. K; *see* Email from C. Green to L. McNally (Nov. 9, 2020), Ex. L.

[10] *See* Emails from A. Azer, Counsel for the BSA, to Counsel for All Insurers (September 25, 2020–October 30, 2020), attached hereto as Exhibit P.

[11] *See* Decl. of C. Green in Supp. of Motion ¶ 9, Ex. M.

[12] *See* Email from S. Gummow to C. Green (Nov. 4, 2020), Ex. K.

[13] *See* Email from C. Green to L. McNally (Nov. 9, 2020), Ex. L; *see* Decl. of C. Green in Supp. of Motion ¶ 16, Ex. M.

### B. The Insurers Still Have Not Produced the Requested Documents and Have Not Agreed to a Production Deadline

#### i. Century and AIG Have Agreed to Comply with the BSA and the Local Councils' Document Requests, But Have Refused to Agree to a Date for the Completion of the Productions

24. While Century has provided the BSA and the Local Councils with some of the relevant information that it has discovered thus far, it has refused to commit to a completion date for its document production despite the BSA and the Local Councils' numerous requests to do so.[14] Specifically, on November 9, Century stated that it could not provide a firm completion date and that it anticipated that its production would be substantially complete by January 1, 2021, absent unforeseen delays.[15] After the BSA requested that Century commit to a January 1, 2021 production date,[16] Century simply confirmed its original position by email on November 11, 2020 and by telephone conference on November 16, 2020.[17]

25. AIG similarly has agreed to comply with the BSA and the Local Councils' document requests[18] and has informed the BSA and the Local Councils that it will start producing the requested information,[19] but has failed to produce a single document to date. Moreover, AIG has refused to provide any details regarding the timing of the completion of its production despite

---

[14] *See* Email from A. Azer to C. Wadley (Nov. 3, 2020), Ex. I; *See* Emails from Counsel for the BSA to C. Wadley (Nov. 5, 2020), Ex. J.

[15] *See* Decl. of C. Green in Supp. of Motion ¶ 10, Ex. M.

[16] *Id.* at ¶ 14

[17] *Id.*

[18] The BSA and the Local Councils presume that AIG is compliant with the documents requests based on AIG's prior written representations. But, to the extent that AIG contends otherwise, the BSA and the Local Council reserve the right to brief the issue on reply.

[19] *See* Email from S. Gummow to C. Green (Nov. 30, 2020), Ex. K.

the BSA and the Local Councils' many requests to do so, including communications on December 2, 2020.[20]

26. Given that the policies issued to the BSA and the Local Councils represent an astronomical asset in the BSA's bankruptcy estate and given the BSA's liquidity position, particularly when considering the effects of the COVID-19 pandemic, the BSA needs immediate access to all the requested information to engage in meaningful, mediated negotiations regarding a bankruptcy plan that provides for a global resolution of abuse claims. Therefore, the BSA and the Local Councils request that Century and AIG be directed to complete their respective productions by January 1, 2021.

> ii. **CNA Has Refused to Comply with the BSA and the Local Councils' Document Requests and Has Refused to Agree to a Production Deadline**

27. While CNA produced some documents to the BSA and the Local Councils on November 16, 2020, few of them were policies that the BSA and the Local Councils requested—the production largely consisted of CNA policies issued to the BSA[21] post-1962 and not policies issued specifically to the Local Councils (the existence of which were already widely known).[22] CNA represented that it made its best efforts to complete the search of its records and that its latest production encompassed all documents resulting from CNA's term-search including all the Local Council names provided by the BSA.[23]

28. However, in a telephone conference with counsel for the BSA on November 25, 2020, counsel for CNA clarified that CNA in fact only ran the term "Boy Scouts" and did not run

---

[20] *See* Ex. K; *see* Email from A. Azer to S. Gummow (Dec. 2, 2020), attached hereto as Exhibit Q.
[21] The CNA policies produced were issued to the BSA but also provide coverage to Local Councils as they are included as named insureds on such policies.
[22] *See*, Email from C. Green to L. McNally (Nov. 16, 2020), Ex. L.
[23] *See*, Email from L. McNally to C. Green (Nov. 16, 2020), Ex. L.

any searches using the Local Council names.[24] CNA also represented that it would not voluntarily search for each Local Council.[25] This is despite the fact that the BSA noted to CNA that six of the BSA's and Local Councils' other insurers had already agreed to do so and had in fact already begun to produce the requested documents to the BSA and Local Councils.[26]

29. Despite the BSA and the Local Councils' repeated requests to date, CNA has failed to conduct the searches required or produce all the required documents to the BSA and the Local Councils. And CNA has failed to provide the BSA and the Local Councils with any details regarding the timing of the completion of its production.

30. The BSA and the Local Councils are highly prejudiced by CNA's late-hour refusal to conduct searches using the Local Council names. The BSA agreed during its meet and confer in August 2020 that it would not file a Rule 2004 motion based on CNA's agreement to voluntarily conduct the searches and produce the requested documents.

31. Therefore, the BSA and the Local Councils request that CNA comply with the document requests and that all the Insurers complete their respective productions by January 1, 2021.

## RELIEF REQUESTED

32. By this Motion, the Debtors seek an order under Bankruptcy Rule 2004, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), ordering the production of the documents identified in **Exhibit B** (the "Document Requests") by January 1, 2021.

---

[24] See Decl. of C. Green in Supp. of Motion ¶ 16, Ex. M.
[25] Id.
[26] Id.

**BASIS FOR RELIEF**

33.     Pursuant to Rule 2004, "on the motion of any party in interest, the court may order the examination of any entity" relating to the acts, conduct, or property or liabilities or financial condition of the Debtor or to any matter which may affect the administration of the Debtor's estate. Fed R. Bankr. P. 2004(a)–(b). Pursuant to Rule 2004, the Court may also compel the production of documents. Fed R. Bankr. P. 2004(c).

34.     The scope of Rule 2004 is broad and is intended to allow parties-in-interest to fully investigate any matter affecting the administration of the estate. *First Fin. Sav. Assoc'n, Inc. v. Kipp (In re Kipp)*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) (citing *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr.D.Mass.1983)) ("[T]he scope of [a Rule 2004] examination is virtually unlimited."). "The scope of Bankruptcy Rule 2004 is considered 'unfettered and broad.'" *Wash. Mut.*, 408 B.R. at 49-50 (quoting *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)); *see also In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008) (citing *In re Lev*, 2008 WL 207523, at *3 (Bankr. D.N.J. Jan. 23, 2008)); *In re Silverman*, 36 B.R. 254 (Bankr. S.D.N.Y. 1984); *In re Vantage Petroleum Corp.*, 34 B.R. 650 (Bankr. E.D.N.Y. 1983). Rule 2004 affords parties-in-interest an extremely broad right of discovery and "is even broader than that of discovery permitted under [the Federal Rules of Civil Procedure], which themselves contemplate broad, easy access to discovery." *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Banks. E.D. Pa. 1990) (citations omitted).

35.     Pursuant to Rule 2004, the Debtors request the production of the documents set forth in **Exhibit B** by January 1, 2021. The Debtors request that the Insurers be ordered to deliver copies of the documents in accordance with the instructions contained on **Exhibit B** to the offices

of Haynes and Boone, LLP, Attn: Carla Green, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219, to be received on or before January 1, 2021 at 4:00 p.m. (CDT).

36. The Rule 2004 Document Request is necessary to ensure that the Debtors and Local Councils are able to meaningfully and substantially investigate, *inter alia*: (i) the Century-issued policies to the BSA National prior to 1962 (and/or any secondary evidence thereof) that potentially cover claims of sexual abuse and, thus, must contribute to the settlement of sexual abuse claims; (ii) the policies issued by the Insurers to the Local Councils prior to 1978 (and/or any secondary evidence thereof) that potentially cover claims of sexual abuse and, thus, must contribute to the settlement of sexual abuse claims; (iii) the availability of limits of liability under each of the Insurers' policies issued to the BSA; (iv) the availability of limits of liability under Insurers' policies issued to the Local Councils; and (v) any other matter that is appropriate under Bankruptcy Rule 2004.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1**

37. As set forth above and in accordance with Local Rule 2004-1, Debtors' counsel has made numerous efforts to meet and confer with counsel for Century, AIG and CNA, including, most recently on December 2, 2020, regarding a mutually agreeable date, place, time, and scope of examination for the production requested by this Motion. While the Debtors will make every effort to reach an agreement with the Insurers regarding the Document Requests, the parties have been unable to reach an agreement with respect to the completion date of the production prior to the filing of this Motion.

of Haynes and Boone, LLP, Attn: Carla Green, 2323 Victory Avenue, Suite 700, Dallas, Texas 75219, to be received on or before January 1, 2021 at 4:00 p.m. (CDT).

36. The Rule 2004 Document Request is necessary to ensure that the Debtors and Local Councils are able to meaningfully and substantially investigate, *inter alia*: (i) the Century-issued policies to the BSA National prior to 1962 (and/or any secondary evidence thereof) that potentially cover claims of sexual abuse and, thus, must contribute to the settlement of sexual abuse claims; (ii) the policies issued by the Insurers to the Local Councils prior to 1978 (and/or any secondary evidence thereof) that potentially cover claims of sexual abuse and, thus, must contribute to the settlement of sexual abuse claims; (iii) the availability of limits of liability under each of the Insurers' policies issued to the BSA; (iv) the availability of limits of liability under Insurers' policies issued to the Local Councils; and (v) any other matter that is appropriate under Bankruptcy Rule 2004.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2004-1**

37. As set forth above and in accordance with Local Rule 2004-1, Debtors' counsel has made numerous efforts to meet and confer with counsel for Century, AIG and CNA, including, most recently on December 2, 2020, regarding a mutually agreeable date, place, time, and scope of examination for the production requested by this Motion. While the Debtors will make every effort to reach an agreement with the Insurers regarding the Document Requests, the parties have been unable to reach an agreement with respect to the completion date of the production prior to the filing of this Motion.

## **RESERVATION OF RIGHTS**

38. The Debtors reserve their rights to seek further discovery of the Insurers and the Insurers' Policies pursuant to Bankruptcy Rule 2004, or otherwise, in the event that this discovery reveals the need for additional information.

## **NOTICE**

39. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; (viii) counsel to Century; (ix) counsel to AIG; (x) counsel to CNA; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and any further relief the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  December 2, 2020
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLC**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
       aremming@mnat.com
       emoats@mnat.com
       ptopper@mnat.com

– and –

HAYNES AND BOONE, L.L.P.
Ernest Martin, Jr.
Adrian Azer
Carla Green
2323 Victory Ave., Suite 700
Dallas, Texas 75219
Telephone:  (214) 651-5000
Email:  ernest.martin@haynesboone.com
       adrian.azer@haynesboone.com
       carla.green@haynesboone.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION