**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                       Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>Re:  Docket No. 1785 |

**SUPPLEMENTAL DECLARATION OF THOMAS BAROCH IN SUPPORT OF
APPLICATION OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE PURSUANT
TO SECTIONS 328(a), 330, AND 331, AND 1103 OF THE BANKRUPTCY CODE, RULE
2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL
RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN CBRE, INC. AS
REAL ESTATE APPRAISER, EFFECTIVE AS OF DECEMBER 1, 2020**

I, Thomas Baroch, declare under penalty of perjury as follows:

1.      I am a Managing Director of the Valuation and Advisory Services division at CBRE, Inc. ("CBRE" or the "Firm") with offices located at throughout the United States. CBRE and its affiliates offer a broad range of integrated services, including facilities, transaction and project management; property management; appraisal and valuation; property leasing; strategic consulting; and property sales.  My work focuses on the preparation of real estate appraisals, feasibility studies, rent analyses, and market studies of a wide variety of property types.

2.      This supplemental declaration (the "Supplemental Declaration") is submitted in support of the *Application of the Official Tort Claimants' Committee Pursuant to*

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Sections 328, 330, 331, and 1103 of the Bankruptcy Code, Rule 2014 of the Federal Rules of*

*Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain CBRE,*

*Inc. as Real Estate Appraiser Effective as of December 1, 2020*  (the "Application"),[2] filed

earlier with the Court and is intended to supplement my original declaration filed with the

Application (the "Original Declaration").

### The Retention Agreement

3.      CBRE has agreed to withdraw Section II.C., regarding the limitation of

liability, from the Retention Agreement.

### Disclosure of Connections

4.      In connection with CBRE's retention as real estate broker and advisor to

the TCC, I obtained from TCC's counsel a list of the Debtors, certain of the Debtors' creditors,

and other parties in interest in the above-captioned cases (such entities are listed on Schedule 1 to

the "Original Declaration") submitted with the Application (collectively, the "Interested Parties")

for purposes of determining the connection(s) which CBRE has with the Interested Parties and in

conducting our due diligence in preparation of this Declaration, CBRE reviewed its history with

the Interested Parties.

5.      In preparing this Declaration and to review potential conflicts of interest

with regard to entities identified on Schedule I attached to my Original Declaration, I caused a

set of procedures developed by CBRE to be used, which included researching CBRE's databases

regarding CBRE's present and past representations to determine whether CBRE had any

---

[2]  Capitalized terms, unless otherwise defined herein, shall have the meanings ascribed to them in the Application.

2

12323712.1

connection with any of them that requires disclosure, comprising the conflict check process

maintained by CBRE (collectively, the "Conflict Check Process"). The Conflict Check Process

involves the review of seven databases: Single Point of Contact lists (2), Vouchers Online, Asset

Services iTrack, CoStar, the Valuation and Advisory System, and the Transactional Accounting

System (as each is known within CBRE, with the exception of CoStar, which is a third-party

product known in the marketplace by that name). The facts stated in the Declaration are based

upon the results of the review of the Conflict Check Process.

6.      The databases that comprise the Conflict Check Process are regularly

maintained and updated in the ordinary course of CBRE's business. These procedures are

designed to include every matter on which the CBRE Advisory Entities are now or have been

engaged, by which entity the CBRE Advisory Entities are now or have been engaged, and to

include and record the identity of the key personnel knowledgeable about the matter.  The

databases comprising the Conflict Check Process reflect entries that are noted in the various

databases at the time the information becomes known by persons whose regular duties include

recording and maintaining this information.

**Additional Disclosures**

7.      After filing the Original Declaration, CBRE  conducted additional

inquiries for the period commencing on January 1, 2017 and ending on December 1, 2020 on the

persons and entities appearing on Schedule 1.

8.      As a Fortune 200 company, CBRE has provided, and continues to provide,

an array of services to the Interested Parties (collectively, the "CBRE Contact Parties") listed on

12323712.1

Schedule 2 attached hereto. Except as set forth below, the connections between CBRE and the

CBRE Contact Parties are unrelated to the Debtors. Over time, the services provided or being

provided have included brokerage services, appraisal services, transaction management, and

project management services (among others).  Other than as set forth below and in my Original

Declaration, none of the services provided or being provided were or are in any way related to

the Debtors. Additionally, except as set forth below, all services provided to the CBRE Contact

Parties were or are provided by personnel other than employees that have been and will be

providing appraisal services to the Committee.

9.      The personnel whom CBRE intends to perform the services made the

subject of this Application include persons who have provided the following services to The

Church of Jesus Christ of Latter-Day Saints with respect to properties leased, used, or otherwise

connected to Debtors in the past two years:

- in December 2019, coordinated the bidding and ordering of a land survey of a BSA

  camp located at 7417 S. Scott Rd., Connersville, Fayette County, Indiana

- in December 2019, performed a broker opinion of value on a building leased by

  BSA as administrative offices and Scout shop space located at 525 Foothill Blvd.,

  Salt Lake City, Utah

- in October 2020, provided an opinion of value and leasing market research on a

  property leased by debtors located in Pasadena California (a/k/a the San Gabriel

  Valley Scout shop).

12323712.1

All of the above services for the Church have been completed.  Other services provided for the Church by CBRE are unrelated to Debtors as disclosed above.

10.     Based upon the information available to me from the search procedure described herein, as well as my discussions with the CBRE personnel who have been and will continue to work on providing services to TCC, except as otherwise provided herein:

(i)     CBRE does not hold or represent any interest adverse to the TCC in the matters upon which CBRE is to be employed, and

(ii)     CBRE is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

Further, except as set forth in this Declaration:

(a)     Other than as described herein, and with respect to the CBRE Contact Parties, CBRE has no connection with Debtors, the Interested Parties (including the Local Councils), the U.S. Trustee, and any person employed in the office of the U.S. Trustee,

(b)     CBRE is not a creditor, equity security holder or insider of the Debtors,

(c)     CBRE is not and was not, since at least January 1, 2017, a director, officer or employee of the Debtors and

(d)     CBRE does not have an interest materially adverse to the TCC.

11.     CBRE has approximately 100,000 employees across the globe. It is possible that certain employees of CBRE may have business associations with any of the Interested Parties.

12.     CBRE has fully reviewed its connections with the Debtors and Local

Councils and, other than as described herein, does not have any connections with either the

Debtors or Local Councils, which are the parties whose properties will be evaluated by CBRE.

As of the date of this Declaration, CBRE has conducted searches on 17 of the 26 categories of

Interested Parties.[3] CBRE will continue to review the list of Interested Parties and make any

disclosures that are required by the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

### Continued Diligence and Statement of Disinterestedness

13.     If CBRE becomes aware of a connection to one of the persons or entities

listed in Schedule 1 that has not been previously disclosed, CBRE shall make disclosures as may

be appropriate at that time.

14.     Based on the conflicts searches conducted to date, to the best of my

knowledge and insofar as I have been able to ascertain, CBRE is a "disinterested person" within

the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the

Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates.

15.     To the extent CBRE becomes aware of any other connection that it has

with the Debtors or the Interested Parties that is contrary to or pertinent to the statements made

herein and in the Original Declaration, CBRE will promptly file a supplemental declaration

disclosing such information to the Court.

---

[3] CBRE is in the process of conducting additional inquiries for the period commencing on January 1, 2017 and ending on December 1, 2020 on the persons and entities appearing in 12 categories: Selected Chartered Organizations, Insurers, Litigation Parties, Ordinary Course Professionals, Deferred Compensation and Restoration Plan Participants, Non-Debtor Affiliates, Significant Contract Counterparties, Significant Customers, Significant Donors, Significant Vendors, Significant Taxing Authorities, and Significant Utility Providers. CBRE will supplement its disclosures with respect to any of those parties it may have represented or represents as soon as reasonably practicable.

12323712.1

16.     CBRE and certain of its employees may have represented, represent, or in the future may represent, creditors of the Debtors in connection with matters unrelated to the Debtors and these Cases. If CBRE identifies any such representations, CBRE shall make disclosures as may be appropriate at that time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 12, 2020

Thomas Baroch, as Agent for CBRE, Inc.

7

12323712.1

8

**Schedule 2**

AT&T
Banco Popular de Puerto Rico
Bank of America
BB&T Corporation
BlackRock, Inc.
Blackstone Group
Boy Scouts of America
Branch Banking and Trust Co
Charles Schwab Corporation
CIBC
CIT Bank, NA
EverBank Commercial Finance, Inc.
Fidelity Investments
Fifth Third Bank
First Bank
First State Bank
Goldman Sachs Group
Insight Investments, LLC
JP Morgan Chase
Keybank National Association
LMP-Tuscaloosa Property Owner II, LLC
MB Financial, Inc.
Merrill Lynch
Northern Trust Company
PNC Bank National Association
Regions Bank
Robins Kaplan LLP
Royal Bank of Canada
State Street Bank
Teachers Insurance & Annuity Association
TD Bank
The Church of Jesus Christ of Latter-Day Saints
TIAA Commercial Finance Inc.
Truist Bank
US Bank National Association
Wells Fargo

12323712.1