## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: January 19, 2021 at 10:00 a.m. (ET)** **Objection Deadline: January 12, 2021 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING GORDON SETTLEMENT AGREEMENT AND
## (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO
## PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code), and rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving that certain settlement agreement by and between the BSA and the Glacier's Edge Council, Inc., Boy Scouts of America ("Glacier's Edge Council" and, together with the BSA, "Potential Defendants"), on the one hand, and Nichole Erickson, individually and as mother and next friend of Grace Gordon, deceased minor, and as mother of Mason Gordon, Minor ("Claimant" and, collectively with Potential Defendants, the "Parties"), on the other hand, as memorialized in that certain Settlement Agreement attached hereto as **Exhibit B** (the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Lane, Irving, Texas 75038.

"Settlement Agreement"), and (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance. In support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4.      On May 25, 2019, Claimant's daughter, Grace Gordon, drowned in the presence of her twin brother, Mason Gordon, while on a canoe trip sponsored by Glacier's Edge Council (the "Incident").

5.      On July 8, 2020, the Court granted Claimant's motion seeking relief from the automatic stay to proceed with a pre-litigation mediation conference to attempt to resolve the claims without filing a lawsuit.[2]

## THE SETTLEMENT AGREEMENT

6.      As part of the pre-litigation mediation, the Parties entered into good-faith and arm's-length settlement negotiations. These negotiations included Evanston Insurance Company ("Evanston"), which issued primary and excess general liability insurance policies covering the

---

[2] *See Order Granting Motion of Nichole Erickson and Mason Gordon for an Order Granting Limited Relief from the Automatic Stay of 11 U.S.C. § 362* [D.I. 986].

time period during which the Incident occurred.  As a result of those negotiations, the Parties have entered into the Settlement Agreement, subject to Court approval.

7.      In addition to this Court's approval, prior to becoming effective, the Settlement Agreement requires: (i) the appointment of a personal representative of the Estate of Grace Gordon (the "Grace Gordon Estate"); (ii) the appointment of a guardian ad litem for minor Mason Gordon (the "Guardian" and, collectively with the Claimant, the Personal Representative and the Grace Gordon Estate, the "Claimant Related Parties") and (iii) the execution of the joinder annexed to the Settlement Agreement by the Personal Representative, on behalf of the Grace Gordon Estate, and the Guardian.

8.      Pursuant to the Settlement Agreement, the Claimant Related Parties agree to release Potential Defendants, and each of their respective subsidiaries, parents, affiliates, managing agents, employees, volunteers, servants, consultants, agents, directors, officers, independent contractors, representatives, insurance carriers and attorneys from any and all claims relating to the Incident.

9.      In exchange for the releases described above, Potential Defendants will pay the Claimant Related Parties $2.0 million (the "Settlement Amount").  The Settlement Amount will be paid solely by Evanston from available insurance.

## RELIEF REQUESTED

10.     By this Motion, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) modifying the automatic stay, to the extent necessary, to permit Evanston to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

**I.     Legal Standard**

**A.     Approval of Settlements**

11.     Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In addition, Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

12.     Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate."  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate."  *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable."  *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012).  In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d at 393.

**B.     The Automatic Stay**

13.     Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of

the case." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

14.     Section 362(d) authorizes the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). Although the Bankruptcy Code does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the "continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

## II.    Argument

15.     The Settlement Agreement should be approved because it fairly and efficiently resolves the claims against Potential Defendants related to the Incident. As noted above, the Settlement Amount will be paid solely from proceeds of the Evanston primary and excess policies for the 2019–20 policy year. The settlement, moreover, will permit the BSA to avoid the uncertainty and expense of litigation relating to the Incident and eliminate the potential for additional expenses and the risk of an unfavorable judgment in any wrongful death action brought by Claimant. In addition, the BSA will receive a full and complete release from all liability in connection with the Incident, thereby eliminating any liability under a plan of reorganization. Accordingly, the Debtors submit that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates, creditors and other parties in interest. *In re Louise's, Inc.*, 211 B.R. at 801.

16.     Additionally, the automatic stay should be modified, to the extent necessary, to permit Evanston to pay the Settlement Amount.  The question of whether proceeds of an insurance policy are property of the bankruptcy estate is complex and the law is unclear as to the answer.  *In re MF Glob. Holdings, Ltd*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).  Although it is "well-settled that a debtor's liability insurance is considered property of the estate . . . 'the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate.'" *Id.* (quoting *In re Downey Fin. Corp*., 428 B.R. 595, 603 (Bankr. D. Del. 2010)).  Even if the automatic stay does apply, cause exists under these circumstances to permit the payment of the settlement amount by Evanston.

17.     First, as noted in Evanston's previously filed motion for relief from the automatic stay, the BSA and certain other named insureds (including Glacier's Edge Council) are covered under primary and excess policies issued by Evanston.[3]  These policies provide coverage up to a limit of $1.0 million per occurrence and a combined general aggregate limit of $10.0 million under Evanston's primary policies, and up to $6.5 million per occurrence and a combined general aggregate limit of $13.0 million per year under the Evanston excess policies.  Accordingly, the Settlement Amount of $2.0 million falls within the limits of the relevant primary and excess policies.  Moreover, the Debtors and Evanston estimate that approximately $25,000 of defense costs, which are also covered by Evanston's primary and excess policies, have been incurred in connection with the Incident.  Therefore, when combined, the Settlement Amount and accrued defense costs will erode the aggregate limit of the Evanston primary policy for 2019–20 by $1.0 million and the aggregate limit of the Evanston excess policy by approximately $1.025 million.

---

[3] See *Evanston Insurance Company's Motion for Entry of an Order Pursuant to Section 362 of the Bankruptcy Code and Bankruptcy Rule 4001, Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insured Parties and Related Defense Costs Under Insurance Policies* [D.I. 686].

The Debtors also note that they have significant additional excess insurance, in the approximate amount of approximately $167.5 million, above the Evanston excess policies for the 2019–20 policy period.

18. Second, the Settlement Agreement will fully and finally resolve all claims against the BSA related to the Incident and avoid the uncertainty and expense of litigation and the risk of an unfavorable judgment that could exceed the Settlement Amount. *In re Almonacy*, Case No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue."). Additionally, Evanston, and not the Debtors, will pay the full Settlement Amount.

19. For the foregoing reasons, there is comparatively little prejudice, and indeed material benefit, to the Debtors if the Parties are permitted to enter into the Settlement Agreement and the stay is modified to permit Evanston to pay the Settlement Amount.

## **NOTICE**

20. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank, National Association; (vii) counsel to Claimant; (viii) Glacier's Edge Council; (ix) Evanston; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## **CONCLUSION**

21.     For the reasons set forth herein, the Debtors respectfully request this Court enter an order (i) approving the Settlement Agreement, (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance and (iii) granting all other relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  December 29, 2020
   Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
   aremming@mnat.com
   emoats@mnat.com
   ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. K. Boelter (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.boelter@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
   mlinder@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION