# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br><u>Hearing Date</u>: **January 19, 2021 at 10:00 a.m. (ET)**<br><u>Objection Deadline</u>: **January 12, 2021 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### (I) APPROVING HENDERSON SETTLEMENT AGREEMENT AND
### (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO
### PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving that certain settlement agreement, substantially in the form attached hereto as **Exhibit B** (the "Settlement Agreement"), by and between the BSA and Oregon Trail Council, Inc. ("OTC" and, together with the BSA, "Defendants"), on the one hand, and Margaret Henderson, as personal representative of the Estate of Nolan Henderson ("Plaintiff" and, together with Defendants, the "Parties"), on the other hand, and (ii) modifying the automatic stay, to the extent

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

necessary, to permit payment of the settlement amount from applicable insurance. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4. On September 6, 2019, Plaintiff filed a lawsuit in the Circuit Court of the State of Oregon for the County of Lane entitled *Henderson v. Boy Scouts of America, et. al.*, Case No. 19-CV-39445 (the "Lawsuit"). The Lawsuit seeks damages arising from the death of Nolan Henderson as a result of a fall during a camping trip in Klamath Falls, Oregon on October 13, 2018.

5. The Lawsuit was automatically stayed as to the BSA and OTC when the Debtors filed for relief under chapter 11 of the Bankruptcy Code on February 18, 2020.

6. On October 9, 2020, the Court granted Plaintiff's motion seeking relief from the automatic stay to proceed with the Lawsuit to liquidate Plaintiff's claims, provided that any payment on account of such claims, including payment from applicable insurance, would be subject to further order of the Court.[2]

---

[2] *See Order Granting Motion for Relief from the Automatic Stay of Margaret Henderson, Personal Representative of the Estate of N.G.H.* [D.I. 1468].

2

## **THE SETTLEMENT AGREEMENT**

7. To avoid incurring further litigation expenses in connection with the Lawsuit, the Parties entered into good-faith and arm's-length settlement negotiations. As a result of those negotiations, the Parties have entered into the Settlement Agreement, subject to Court approval.

8. Pursuant to the Settlement Agreement, Plaintiff, on behalf of herself and the Estate of Nolan Henderson (the "Estate") and the Estate's agents, heirs, relatives, assigns, parents, beneficiaries, third-party beneficiaries, attorneys, any and all potential claimants identified in Oregon wrongful-death statute, ORS 30.020, and anyone claiming by or through the Estate (collectively, "Plaintiff Parties"), agrees to dismiss the Lawsuit with prejudice and without costs, and irrevocably and unconditionally releases, acquits, and forever discharges Defendants and all of their respective subsidiaries, parents, affiliates, managing agents, employees, volunteers, servants, consultants, agents, officers, directors, independent contractors, representatives, insurance carriers, attorneys, and all persons acting by, through, under or in connection with any of them, and each of their respective heirs, successor, and assigns (the "Releasees"), from any and all claims asserted in the Lawsuit, as well as any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, cause of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to any claims Plaintiff Parties had, has, or may have, known or unknown, in connection with any facts, matters, property, transactions, or things between all Parties and between Plaintiff Parties and the Releasees, including but not limited to, anything arising from, relating to, or in connection with the matters set forth in the Lawsuit.

9.      In exchange for the releases described above, Defendants will pay Plaintiff $900,000 (the "Settlement Amount").  The Settlement Amount will be paid by Old Republic Insurance Company ("Old Republic"), which issued general liability insurance policies to the BSA covering the time period in which the events that are the subject of the Lawsuit occurred.   OTC is a named insured under the applicable Old Republic insurance policies.

10.     The Settlement Agreement will become effective after the Court's order approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 and approving payment of the Settlement Amount by Old Republic pursuant to section 362 of the Bankruptcy Code becomes final and no longer subject to appeal (the "Effective Date").  The Settlement Amount will be paid within seven (7) days of the Effective Date.  If the Effective Date fails to occur on or before March 31, 2021, the Settlement Agreement shall be null and void.

## RELIEF REQUESTED

11.     By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) modifying the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

**I.     Legal Standard**

    **A.     Approval of Settlements**

12.     Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims.  Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In addition, Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

13. Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012). In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393.

### B.    The Automatic Stay

14. Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

15. Section 362(d) authorizes the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). Although the Bankruptcy Code does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the

"continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

## II.    Argument

16.    The Settlement Agreement should be approved because it fairly and efficiently resolves the Lawsuit with minimal burden to the estate.  The Settlement Amount will be paid solely from proceeds of the Old Republic primary policy for the 2018–19 policy year.  The settlement, moreover, will permit the BSA to avoid the uncertainty and expense of litigating the Lawsuit and eliminate the potential for additional expenses and the risk of an unfavorable judgment in the Lawsuit.  In addition, under the Settlement Agreement the BSA will receive a full and complete release from all liability in connection with the subject matter of the Lawsuit, thereby eliminating any liability under a plan of reorganization.  Accordingly, the Debtors submit that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates, creditors and other parties in interest.  *In re Louise's, Inc.*, 211 B.R. at 801.

17.    Additionally, the automatic stay should be modified, to the extent necessary, to permit Old Republic to pay the Settlement Amount.  The question of whether proceeds of an insurance policy are property of the bankruptcy estate is complex and the law is unclear as to the answer.  *In re MF Glob. Holdings, Ltd*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).  Although it is "well-settled that a debtor's liability insurance is considered property of the estate . . . 'the courts are in disagreement over whether the proceeds of a liability insurance policy are property of the estate.'" *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)).  Even if the automatic stay does apply, cause exists under these circumstances to the permit Old Republic to pay the Settlement Amount.

18.     First, as noted in Old Republic's previously filed motion for relief from the automatic stay, the BSA and certain other named insureds (including OTC) are insured under certain general liability policies issued by Old Republic, including a primary insurance policy for the 2018–19 policy year.[3] This policy provides coverage up to a limit of $1.0 million per occurrence with no aggregate limits. Here, the Settlement Amount of $900,000 falls entirely within the primary policy. Moreover, the Debtors and Old Republic estimate that less than $100,000 of defense costs have been incurred relating to the Lawsuit and that these costs are also within the limits of the applicable Old Republic primary policy. Therefore, the total of the Settlement Amount and accrued defense costs will likely not exceed the $1.0 million per-occurrence limit under the Old Republic primary policy.

19.     Second, the Settlement Agreement will fully and finally resolve the Lawsuit and avoid the uncertainty and expense of litigation and the risk of an unfavorable judgment that could exceed the Settlement Amount. The Lawsuit is still in its initial stages, and the Parties have yet to conduct factual discovery. If the Lawsuit proceeds to discovery and trial, the defense costs would likely be substantial and, together with any settlement or judgment in the Lawsuit, likely begin to erode the applicable Old Republic excess policy, which, unlike the primary policy, is subject to an aggregate limit. *In re Almonacy*, Case No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue.").

---

[3] *See Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies* [D.I. 678].

20. Accordingly, there is little prejudice, and indeed material benefit, to the Debtors if the Parties are permitted to enter into the Settlement Agreement and the stay is modified to permit Old Republic to pay the Settlement Amount.

## NOTICE

21. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) counsel to Plaintiff; (viii) Old Republic Insurance Company; (ix) OTC; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

22. For the above reasons, the Debtors respectfully request that the Court enter an order (i) approving the Settlement Agreement, (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance and (iii) granting all other relief as is just and proper.

| | |
|---|---|
| Dated: December 29, 2020<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@mnat.com<br>   aremming@mnat.com<br>   emoats@mnat.com<br>   ptopper@mnat.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. K. Boelter (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.boelter@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (212) 881-5400<br>Email: mandolina@whitecase.com<br>   mlinder@whitecase.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |