IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |
| OFFICIAL TORT CLAIMANTS' COMMITTEE OF BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC,<br><br>      Plaintiffs,<br><br>  -against-<br><br>BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC,<br><br>      Defendants. | Adv. Pro. No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, the official committee of tort claimants (consisting of the survivors of childhood sexual abuse) (the "Tort Claimants' Committee" or the "Plaintiff") of the above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Defendants"), brings this adversary proceeding against the Defendants named in the complaint (the "Complaint") and alleges upon knowledge of its own acts and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. On February 18, 2020, the Debtors, the Defendants in this adversary proceeding, filed their *Motion for Entry Of an Order (I) Scheduling Certain Deadlines In*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America ("BSA") (6300) and Delaware BSA, LLC ("Delaware BSA") (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Connection With Potential Disputes Regarding the Debtors' Identified Property (II) Granting Related Relief*, dated February 18, 2020 (the "Motion") [Docket No. 19] (the hearing for which subsequently was taken off calendar at the request of, *inter alia*, the Tort Claimants' Committee). By the Motion, Defendants sought an order of the Court imposing deadlines for the Plaintiff, among others, to contest Defendants' allegation that certain assets detailed on Exhibit B to the Motion ("Exhibit B"), as such exhibit may be modified or supplemented from time to time (the "Identified Property")[2] are subject to enforceable restrictions under applicable law and/or are otherwise unavailable to satisfy creditor claims, including the claims of the survivors of sex abuse comprising the Tort Claimants' Committee's constituency (hereinafter, "restricted"). Exhibit B indicates that out of an alleged total of $1,014,160,463 in restricted and unrestricted assets as of November 30, 2019, the Defendants allege that $667,075,374 in value of such assets are restricted and thereby unavailable to satisfy creditor claims.

2. As detailed below, the Tort Claimants' Committee contends that the Identified Property is not restricted, and that, accordingly, it is available to satisfy creditor claims and seeks declaratory judgment to that effect.[3]

3. Resolution of the dispute between Plaintiff and the Defendants over whether and the extent to which assets are unavailable to pay creditors is critical with respect to consideration of a chapter 11 plan for the Debtors. Moreover, the Defendants themselves have asserted that the resolution of these matters is critical to the Debtors' chapter 11 estates:

> "As a non-profit organization that relies on donations and volunteers, an efficient resolution of the property dispute is critical to the Debtors' ability to continue to

---

[2] A copy of Exhibit B to the Motion is annexed hereto as **Exhibit 1**.

[3] The Tort Claimants' Committee's request for declaratory judgment that the Identified Property is not restricted does not address the issue of whether there may exist any valid liens or security interests on the Identified Property, and the Tort Claimants' Committee reserves all rights in that regard.

exist and to reorganize. Moreover, the Debtors face significant difficulty in accurately projecting creditor recoveries or their ability to continue as a going concern without a final determination as to whether the Identified Property is property available for creditor recoveries."

Motion (¶16, p. 8).

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action under 28 U.S.C. §§ 157(b)(1) and 1334; 11 U.S.C, § 105, and Federal Rules of Bankruptcy Procedure 7001 and 7013.

5. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (E), and (O).

## THE PARTIES

7. On March 5, 2020, the Office of the United States Trustee appointed the Tort Claimants' Committee pursuant to section 1102(a)(1) of the United States Bankruptcy Code (the "Bankruptcy Code").

8. Defendant the BSA is a federally chartered non-profit corporation under title 36 of the United States Code.

9. Defendant Delaware BSA is an alter ego or affiliated entity of the BSA that BSA alleges is a non-profit limited liability company, of which BSA is the sole member, incorporated under the laws of Delaware that is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code.

## THE DEBTORS' BANKRUPTCY CASES

10. On February 18, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue in possession of their property and are operating and managing their businesses as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

## THE DEBTORS' HISTORY OF COMMINGLING ASSETS

11. The Defendants have failed to assert that the allegedly restricted assets were never commingled with unrestricted assets or assets of other entities.

12. The Defendants also have failed to show by tracing that such assets, if commingled, have not been used, spent or otherwise transferred. Moreover, upon information and belief, throughout the decades of its existence, the BSA has commingled unrestricted and restricted assets and funds, and has commingled its assets and funds with assets and funds of its non-Debtor affiliates and local councils, including by placing allegedly restricted assets in unsegregated accounts within its cash management system and in connection with placing significant assets in the BSA Commingled Endowment Fund LP (the "Commingled Fund") or in sub-funds[4] thereof (each, a "Commingled Fund Sub-Fund").

---

[4] Upon information and belief, a "sub-fund" in not an actual separate account or investment fund; rather, it is an accounting tool used by BSA to identify prorated investment activity in the current Commingled Fund for individual participants.

## PROPERTY OF THE DEBTORS WHICH THE
## DEBTORS CLAIM IS NOT PROPERTY OF THE ESTATE

13. The Debtors, on **Exhibit B,** provide a breakdown of assets that they allege are restricted by type and associated dollar amount. As set forth below, the Tort Claimants' Committee disputes these contentions.

### A. Bank Account Cash

14. On **Exhibit B**, the Debtors contend that $39,987,574.00 (the "Bank Account Cash") held in at least eight individual bank accounts maintained by BSA in at least five different banks is restricted cash that is unavailable to satisfy the Debtors' obligations to their creditors.

15. The Defendants have failed to provide adequate or definitive documentation (a) sourcing these funds to specific donations, (b) supporting contentions that the Bank Account Cash is subject to donor imposed restrictions, (c) of other restrictions or limitations that make the Bank Account Cash unavailable to the Debtors' creditors, or (d) reflecting tracing showing that the restricted amounts thereof, if any, were not used, spent or transferred. Moreover, the Tort Claimants' Committee is informed and believes that no such adequate or definitive documentation exists.

### B. The LC Collateral

16. The Debtors also contend that $62,773,574.00 identified in **Exhibit B** as "Restricted Cash – LC Collateral (JPM) (the "LC Collateral") constitutes restricted cash.

17. The Tort Claimants' Committee is informed and believes that the funds constituting the LC Collateral are related to letters of credit with JPMorgan Chase ("JPM") for the benefit of certain insurance companies, which letters of credit benefitted non-Debtor affiliates and local councils as well as benefitting the Debtors.

18. The Tort Claimants' Committee is informed and believed that the sources of the funds constituting the LC Collateral were withdrawals from two Commingled Fund Sub-Funds.

19. The Defendants have failed to provide information as to the current status of the insurance obligations. The Defendants also have failed to provide information as to obligations of non-Debtor affiliates or local councils to satisfy such insurance obligations directly or to reimburse the Debtors therefor. The Defendants further have failed to provide adequate or definitive documentation (a) sourcing the funds constituting the LC Collateral to specific donations, (b) supporting contentions that the LC Collateral is subject to donor imposed restrictions, (c) of other restrictions or limitations (other than a security interest) that make the LC Collateral unavailable to the Debtors' creditors, or (d) reflecting tracing showing that the restricted amounts thereof, if any, were not used, spent or transferred; and the Tort Claimants' Committee is informed and believes that no such adequate or definitive documentation exists.

**C.    Investments**

    **1.    General Investment Funds**

20. On **Exhibit B**, the Debtors contend that funds in the amount of $81,114,899 in general investments (the "General Investments Funds") constitute restricted property that is unavailable to satisfy the Debtors' obligations to their creditors. Upon information and belief, the General Investments Funds relate to BSA's interest in the Commingled Fund.

21. For a multitude of reasons, including, without limitation the reasons described below in this Section C hereof, the General Investment Funds are unrestricted and available to satisfy the Debtors' obligations to their creditors.

22. With respect to at least fourteen Commingled Fund Sub-Funds totaling at least $17.5 million[5] that the Debtors contend constitute a portion of restricted General Investment Funds, no donor imposed restrictions have been identified and the only identified restrictions are ones self-imposed by the BSA.

23. At least eight Commingled Fund Sub-Funds totaling $11.2 million involve shortages in allegedly restricted funds that were subsequently replaced with unrestricted funds or that otherwise were rendered unrestricted as a result of other improper treatment of those funds.

24. At least twenty Commingled Sub-Funds totaling at least $39.7 million lack original donor documentation that would properly designate them as restricted funds.

25. At least ten Commingled Fund Sub-Funds allow accretions to value to be used for general operating or corporate purposes.

26. The aggregate balance of the Forty-Eight Comingled Fund Sub-Funds exceeds the historical value of the donations sourcing such funds by approximately $54 million.

27. Moreover, the Defendants have failed to provide adequate or definitive documentation reflecting tracing showing that restricted amounts of the General Investment Funds, if any, were not used, spent or transferred; and the Tort Claimants' Committee is informed and believes that no such adequate or definitive documentation exists.

### 2. Order of the Arrow

28. On **Exhibit B**, the Debtors contend that $7,399,346 million of investments (the "OA Investments") that they designate as Order of the Arrow ("OA") constitute restricted property that is unavailable to satisfy the Debtors' obligations to their creditors.

---

[5] Consistent with Exhibit B, the Tort Claimants' Committee has endeavored to use dollar amounts herein as of November 30, 2019.

29.     Upon information and belief, the OA Investments relate to a Commingled Fund Sub-Fund that the Debtors contend are restricted and unavailable to creditors because they are earmarked for OA.

30.     The Defendants have failed to provide adequate or definitive documentation (a) sourcing the OA Investments to specific donations, (b) supporting contentions that the OA Investments are subject to donor imposed restrictions, (c) of other restrictions or limitations that make the OA Investments unavailable to the Debtors' creditors,, or (d) reflecting tracing showing that the restricted amounts thereof, if any, were not used, spent or transferred. Moreover, the Tort Claimants' Committee is informed and believes that no such adequate or definitive documentation exists.

**D.     High Adventure Facilities**

31.     On **Exhibit B**, the Debtors contend that three High Adventures Facilities, with an asserted value of $63,322,810, including Philmont Scout Ranch ("Philmont"), Northern Tier ("Northern Tier"), and Florida Sea Base ("Sea Base" and collectively with Philmont and Northern Tier, the "High Adventures Facilities") constitute restricted property that is unavailable for use by the Debtors to pay their obligations to their creditors.

32.     Upon information and belief, there are neither specific deed restrictions nor donor restrictions that preclude the sale by the BSA of Philmont or the use by the BSA of the proceeds of such sale to pay its creditors. Moreover, BSA previously took the position that Philmont was unrestricted and purportedly used it as collateral for the benefit of JPM.

33.     Upon information and belief, there are neither specific deed restrictions nor donor restrictions that preclude the sale by BSA of Northern Tier and the use by BSA of the proceeds of such sale to pay its creditors. Moreover, BSA previously took the position that Northern Tier was unrestricted and purportedly used it as collateral for the benefit of JPM.

34. Upon information and belief, there are neither specific deed restrictions nor donor restrictions that preclude the sale by BSA of the Florida Sea Base and the use by BSA of the proceeds of such sale to pay its creditors. Moreover, BSA used previously took the position that Sea Base was unrestricted and purportedly used it as collateral for the benefit of JPM.

E. **Donor Restricted Pledges Receivable**

35. On **Exhibit B**, the Debtors contend that certain pledges receivable in the net amount of $52,984,984 and the gross amount of approximately $76.6 million (the "Donor Restricted Pledges Receivable") constitute restricted property that is unavailable for use by the Debtors to pay their obligations to their creditors.

36. Upon information and belief, the Donor Restricted Pledges Receivable relate to twenty-two outstanding individual donor pledges, the vast majority of which relate to the Summit Bechtel Reserve ("Summit"), which BSA asserts is owned by Arrow WV Inc. ("Arrow").

37. Upon information and belief, upon BSA's prior receipt of certain donor pledges relating to Summit as to completed projects, BSA deposited such receipts into its main concentration account, an account into which a substantial majority of BSA's unrestricted cash is directly or indirectly wired, swept, or otherwise transferred from its other bank accounts, treated such receipts as repayments to BSA for funding already advanced, and thereafter used such receipts as general operating funds.

38. The Defendants have failed to provide adequate or definitive documentation (a) supporting contentions that the Donor Restricted Pledges Receivable are subject to donor imposed restrictions or (b) of other restrictions or limitations that make the Donor Restricted Pledges Receivable unavailable to the Debtors' creditors; and the Tort

9

Claimants' Committee is informed and believes that no such adequate or definitive documentation exists. Moreover, upon information and belief, certain of the Donor Restricted Pledges Receivable also relate to Summit projects that have already been completed using other funds of BSA such that receipt of any of the outstanding Donor Restricted Pledges Receivable relating to Summit would be repayment to BSA for funding already advanced and therefore will be available to pay creditors.

### F.    Miscellaneous Summit Assets

39.    On **Exhibit B**, the Debtors identify $6,012,908 in miscellaneous Summit assets (the "Miscellaneous Summit Assets") that they contend constitute restricted property that is unavailable for use by the Debtors to pay their obligations to their creditors.

40.    The Defendants have failed to provide adequate or definitive documentation (a) sourcing the Miscellaneous Summit Assets to specific donations, (b) supporting contentions that the Miscellaneous Summit Assets are subject to donor imposed restrictions, or (c) reflecting tracing showing that the restricted amounts thereof, if any, were not used, spent or transferred.  Moreover, the Tort Claimants' Committee is informed and believes that no such adequate or definitive documentation exists.

### G.    Gift Annuity and Pooled Income Investments

41.    On **Exhibit B**, the Debtors identify $8,117,898 in gift annuity and pooled income investments (the "Gift Annuity and Pooled Income Investments") that they contend constitute restricted property that is unavailable for use by the Debtors to pay their obligations to their creditors.

42.    The Defendants have failed to provide adequate or definitive documentation (a) sourcing the Gift Annuity and Pooled Income Investments to specific donations, (b) supporting contentions that the Gift Annuity and Pooled Income Investments are

10

subject to donor imposed restrictions, (c) of other restrictions or limitations that make the Gift Annuity and Pooled Income Investments unavailable to the Debtors' creditors, or (d) reflecting tracing showing that the restricted amounts thereof, if any, were not used, spent or transferred. Moreover, the Tort Claimants' Committee is informed and believes that no such adequate or definitive documentation exists.

**H.     Note Receivable From Arrow WV**

43.     On **Exhibit B**, the Debtors identify a note receivable (the "Note Receivable") from Arrow WV in the amount of $345,396, 380 and contend that the Note Receivable constitutes restricted property that is unavailable for use by the Debtors to pay their obligations to their creditors.

44.     Upon information and belief, the Note Receivable is not a gift. Accordingly, no donative restriction is or could be applicable.

45.     The Defendants have failed to provide adequate or definitive documentation (a) reflecting tracing showing that the restricted amounts of the Note Receivable, if any, were not used, spent or transferred or (b) of other restrictions or limitations that make the Note Receivable unavailable to the Debtors' creditors. Moreover, the Tort Claimants' Committee is informed and believes that no such adequate documentation exists.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief: The Bank Account Cash is unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

46.     The Tort Claimants' Committee repeats and realleges each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

47. The Tort Claimants' Committee contends that the Bank Account Cash constitutes unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

48. The Debtors claim that the Bank Account Cash constitutes permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

49. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the Bank Account Cash and whether or not these funds are in fact restricted.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief: The LC Collateral is unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))

50. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

51. The Tort Claimants' Committee contends that the LC Collateral constitutes unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

52. The Debtors claim that the LC Collateral constitutes permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

53. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the LC Collateral and whether or not these funds are in fact restricted.

## THIRD CLAIM FOR RELIEF

**(Declaratory Relief: The General Investment Funds are
unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

54. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

55. The Tort Claimants' Committee contends that the General Investment Funds constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

56. The Debtors claim that the General Investments Funds constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

57. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the General Investment Funds and whether or not these funds are in fact restricted.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Relief: The OA Investments are
unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

58. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

59. The Tort Claimants' Committee contends that the OA Investments constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

60. The Debtors claim that the OA Investments constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

61. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the OA Investment Funds and whether or not these funds are in fact restricted.

## FIFTH CLAIM FOR RELIEF

**(Declaratory Relief: Any restrictions on the use of the High Adventure Facilities are voidable under 11 U.S.C. § 544(a)(3))**

62. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

63. The Tort Claimants' Committee contends that there are no recorded restrictions on the use of the High Adventure Properties.

64. The Tort Claimants' Committee contends that BSA can avoid any alleged unrecorded restrictions based on BSA's rights and powers as a *bona fide* purchaser of real property.

65. The Debtors contend that there are restrictions on the use of the High Adventure Properties that are not voidable.

66. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the ability of the BSA to avoid any alleged unrecorded restrictions on the High Adventure Properties as a *bona fide* purchaser.

## SIXTH CLAIM FOR RELIEF

**(Declaratory Relief:  The High Adventure Facilities are
unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

67. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

68. The Tort Claimants' Committee contends that the High Adventure Facilities constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

69. The Debtors claim that the High Adventure Facilities constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

70. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the High Adventure Facilities and whether or not those properties are in fact restricted.

## SEVENTH CLAIM FOR RELIEF

**(Declaratory Relief:  The Donor Restricted Pledges Receivable are
unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

71. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

72. The Tort Claimants' Committee contends that the Donor Restricted Pledges Receivable constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

73. The Debtors claim that the Donor Restricted Pledges Receivable constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

74. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the Pledges Receivable and whether or not those properties are in fact restricted.

## EIGHTH CLAIM FOR RELIEF

**(Declaratory Relief:  The Miscellaneous Summit Assets are unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

75. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

76. The Tort Claimants' Committee contends that the Miscellaneous Summit Assets constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

77. The Debtors claim that the Miscellaneous Summit Assets constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

78. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the Miscellaneous Summit Assets and whether or not those properties are in fact restricted.

## NINTH CLAIM FOR RELIEF

**(Declaratory Relief: The Gift Annuities and Pooled Income Investments are unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

79. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

80. The Tort Claimants' Committee contends that the Gift Annuities and Pooled Income Investments constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

81. The Debtors claim that the Gift Annuities and Pooled Income Investments constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

82. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the Gift Annuities and Pooled Income Investments and whether or not those properties are in fact restricted.

## TENTH CLAIM FOR RELIEF

**(Declaratory Relief: The Note Receivable is unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

83. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

84. The Tort Claimants' Committee contends that the Note Receivable constitutes an unrestricted asset of the Debtors' estates which may be used to pay the claims of their creditors.

85. The Debtors claim that the Note Receivable constitutes a permanently restricted asset of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors.

86. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in the Note Receivable and whether or not that property is in fact restricted.

## ELEVENTH CLAIM FOR RELIEF

**(Declaratory Relief:  Further Alleged, Restricted Assets are unrestricted property of the Debtors' estates under 11 U.S.C. § 541(a)(1))**

87. The Tort Claimants' Committee repeats and realleages each of the allegations contained in each preceding paragraph of the Complaint as though fully set forth herein.

88. The Debtors claim there may be additional assets that constitute permanently restricted assets of the Debtors' estates, free and clear of the interests of any other person and not subject to the claims of general creditors ("Further Alleged, Restricted Assets").

89. The Tort Claimants' Committee contends that any Further Alleged, Restricted Assets constitute unrestricted assets of the Debtors' estates which may be used to pay the claims of their creditors.

90. Accordingly, an actual, substantial, and justiciable controversy exists between the Tort Claimants' Committee and the Debtors with respect to the interests of the Debtors' estates in any Further Alleged, Restricted Assets, and whether or not those properties are in fact restricted.

WHEREFORE, by reason of the foregoing, Plaintiffs request that the Court enter an order and judgment:

(1) declaring that the Bank Account Cash is unrestricted property of the Debtors' estates, free and clear of the interests of others (exclusive of any security interests), and may be used to pay the claims of general creditors;

(2) declaring that the LC Collateral is unrestricted property of the Debtors' estates, free and clear of the interests of others (exclusive of any security interests), and may be used to pay the claims of general creditors;

(3) declaring that the General Investment Funds are unrestricted property of the Debtors' estates, free and clear of the interests of others, and may be used to pay the claims of general creditors;

(4) declaring that the OA Investments are unrestricted property of the Debtors' estates, free and clear of the interests of others, and may be used to pay the claims of general creditors;

(5) declaring that BSA has the ability to avoid any alleged unrecorded restrictions on the High Adventure Properties based on its rights and powers as a *bona fide* purchaser of real property;

(6) declaring that the High Adventure Facilities are unrestricted property of the Debtors' estates, free and clear of the interests of others (exclusive of any security interests), and may be used to pay the claims of general creditors;

(7) declaring that the Donor Restricted Pledges Receivable are unrestricted property of the Debtors' estates, free and clear of the interests of others, and may be used to pay the claims of general creditors;

(8) declaring that the Miscellaneous Summit Assets are unrestricted property of the Debtors' estates, free and clear of the interests of others, and may be used to pay the claims of general creditors;

(9) declaring that the Gift Annuity and Pooled Income Investments are unrestricted property of the Debtors' estates, free and clear of the interests of others, and may be used to pay the claims of general creditors;

(10) declaring that the Note Receivable is unrestricted property of the Debtors' estates, free and clear of the interests of others (exclusive of any security interests), and may be used to pay the claims of general creditors;

(11) declaring that the Further Alleged, Restricted Assets are unrestricted property of the Debtors' estates, free and clear of the interests of others, and may be used to pay the claims of general creditors; and

(12) granting Plaintiffs such other and further relief as the Court deems just, proper, and equitable, including the costs and expenses of this action.

Dated:  January 8, 2021                PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435)
Robert B. Orgel (CA Bar No. 10187)
James E. O'Neill (DE Bar No. 4042)
Ilan D. Scharf (NY Bar No. 4042107)
John W. Lucas (CA Bar No.271038)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail:  jstang@pszjlaw.com
         rorgel@pszjlaw.com
         joneill@pszjlaw.com
         ischarf@pszjlaw.com
         jlucas@pszjlaw.com

*Counsel for the Official Tort Claimants' Committee of Boy Scouts of America and Delaware BSA, LLC*