**Exhibit 1**

Stipulation

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 1084** |

**STIPULATION RESOLVING MOTION OF OFFICIAL COMMITTEE**
**OF TORT CLAIMANTS ENFORCING AUTOMATIC STAY UNDER**
**11 U.S.C. §§ 362(A)(3) AND 541(A) AGAINST MIDDLE TENNESSEE**
**COUNCIL ARISING FROM TRANSFERS OF PROPERTY OF THE ESTATE**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), the official committee of tort claimants (the "Tort Claimants' Committee"), the official committee of unsecured creditors (the "Creditors' Committee"), and the Middle Tennessee Council, Inc., Boy Scouts of America ("MTC," and, collectively with the Debtors, the Tort Claimants' Committee, and the Creditors' Committee, the "Parties"), to resolve the issues raised in the *Motion of Official Committee of Tort Claimants Enforcing Automatic Stay Under 11 U.S.C. §§ 362(A)(3) and 541(A) Against Middle Tennessee Council Arising From Transfers of Property of the Estate* [Docket No. 1084] (the "Stay Enforcement Motion"), hereby stipulate and agree as follows (this "Stipulation"):

WHEREAS, on June 12, 2020, MTC executed that certain irrevocable trust agreement (the "Agreement") so as to create a properties trust (the "Properties Trust"), which is a Tennessee

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Investment Services Trust as defined in Tenn. Code Annot. § 35-16-102(7) of the Tennessee Investment Services Act of 2007.

WHEREAS, after formation of the Properties Trust on June 12, 2020, MTC, as transferor, executed quitclaim deeds so as to transfer its interest in certain parcels of real property to the Properties Trust, consisting of four camps and MTC's office; and transferred certain associated restricted funds to the Properties Trust.

WHEREAS, in connection with MTC's execution of the Agreement, MTC executed a qualified affidavit, dated June 30, 2020, stating under oath that, among other things, MTC as transferor (i) "has full right, title, and authority to transfer the asset(s) described in Schedule A to the Trust," (ii) "does not intend to defraud a creditor by transferring the asset(s) to the Trust," (iii) "does not have any pending or threatened court actions against the Transferor other than those described on Schedule B" (which Schedule B listed "None" in the Disclosure of Pending or Threatened Court Actions), (iv) "[t]he transfer of the asset(s) to the Trust will not render the Transferor insolvent;" and (v) "[t]he Transferor does not contemplate filing for relief under the provisions of the federal Bankruptcy Code" (the "Qualified Affidavit").

WHEREAS, as of February 18, 2020 the following information was known publicly: (i) the pendency of BSA's chapter 11 case, (ii) BSA's stated intent to address historical abuse liability under a chapter 11 plan of reorganization, and as of March 30, 2020, it was known publicly that BSA had commenced an adversary proceeding to protect over 250 local councils, including MTC, from the commencement and continuation of abuse litigation by way of a preliminary injunction.

WHEREAS, prior to and at the time of the formation of the Properties Trust, MTC had no lawsuits filed against it based upon abuse allegations.

WHEREAS, as a condition to the extension of the Termination Date of the Standstill Period under the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction*, Adv. No. 20-50527 (LSS) [Adv. Docket No. 54] (the "<u>Consent Order</u>"), as modified by the *Second Stipulation and Agreed Order by and Among the Boy Scouts of America, the Official Committee of Survivors of Abuse, and the Official Committee of Unsecured Creditors Modifying the Consent Order Granting the BSA's Motion for a Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(a) and 362 and Further Extending the Termination Date of the Standstill Period*, Adv. Case No. 20-50527 (LSS) [Adv. Docket No. 77] (the "<u>Second Stipulation and Agreed Order</u>"), the BSA, the Tort Claimants' Committee, the Creditors' Committee and the Ad Hoc Committee of Local Councils of the Boy Scouts of America agreed on the terms of certain local council reporting with respect to the marketing, sale, transfer, encumbrance or lease of local council real property and the sale or transfer of certain local council personal property outside the ordinary course of business (the "<u>Preliminary Injunction Reporting Protocol</u>"), the terms of which are set forth on the form of Acknowledgment and Agreement appended to the Second Stipulation and Agreed Order as Exhibit 4 (the "<u>Acknowledgment and Agreement</u>").

WHEREAS, as of July 6, 2020, MTC agreed to be bound by the Preliminary Injunction Reporting Protocol by executing the Acknowledgment and Agreement.

WHEREAS, on July 7, 2020, the Tort Claimants' Committee sent a letter (the "<u>July 7 Demand Letter</u>") to the Debtors requesting that they take certain actions with respect to particular assets that certain local councils were contemplating selling or transferring in the ordinary course of business.  The July 7 Demand Letter did not address MTC or the Properties Trust.

WHEREAS, on July 10, 2020, the Tort Claimants' Committee sent a letter to MTC requesting that MTC cease and desist from any planned transfer to the Properties Trust in violation of the automatic stay.

WHEREAS, on July 13, 2020, the BSA sent a letter (the "Responsive Letter") to the Tort Claimants' Committee in response to the July 7 Demand Letter stating, among other things, that it was aware of the MTC Demand Letter and was in the initial stages of investigating the allegations therein.

WHEREAS, on July 30, 2020, the BSA sent an update to the Responsive Letter describing the initial results of its ongoing investigation of the Properties Trust based on its discussions with counsel for MTC regarding the Properties Trust.  Among other things, BSA advised the Tort Claimants' Committee that "MTC does not take the position that any contingent interest of BSA in MTC's property was extinguished by the transfer of property to the Properties Trust."

WHEREAS, on August 7, 2020, the Tort Claimants' Committee filed the Stay Enforcement Motion, which seeks entry of an order enforcing the automatic stay against MTC and voiding MTC's transfers to the Properties Trust.

WHEREAS, the Creditors' Committee identified additional concerns beyond those specifically addressed in the Stay Enforcement Motion with respect to the transfers to the Properties Trust, the manner in which it was formed, and the execution of the Qualified Affidavit.

WHEREAS, MTC asserts that the creation of the Properties Trust and transfer of assets thereto and the statements in the Qualified Affidavit were proper and in compliance with applicable law, and the Creditors' Committee and the Tort Claimants' Committee each disagree with this assertion.

WHEREAS, in connection with certain mediated discussions between the Tort Claimants' Committee and MTC regarding the Stay Enforcement Motion, MTC appointed the Honorable John Bryant as Trust Protector and, on November 2, 2020, the Trust Protector executed that certain Amendment to the Properties Trust (the "Amendment"), which includes, among other things, an amendment to include the following in the Properties Trust:

> To the extent that BSA National has an interest in the assets of the Properties Trust by way of the Articles of Incorporation and Bylaws referenced in paragraph F of Article II of the Trust Agreement or BSA National's articles, bylaws and regulations, MTC and the Trust Protector, on behalf of the Properties Trust, agree that any such interest was not extinguished or otherwise impacted by the transfer of assets by MTC to the Properties Trust."

> \*      \*      \*

> To the extent that BSA National has an interest in the assets of the Properties Trust, the Properties Trust shall not been amended in a way that alters and impairs such interest.

Amendment ¶¶ 1(a), (d).  A copy of the Agreement as amended subsequently has been recorded with the Register of Deeds in the five Tennessee counties in which the four camps and MTC's offices are located.  The Agreement, as amended by the Amendment, and as recorded, is attached hereto as **Exhibit A.**

WHEREAS, the Amendment further provides that "[a]s applicable, the Trustees of the Properties Trust shall comply with the notice requirements set forth in the Acknowledgment and Agreement executed by MTC on July 6, 2020."

WHEREAS, the Parties desire to resolve the Stay Enforcement Motion on the terms set forth in this Stipulation.

**NOW, THEREFORE**, it is hereby stipulated and agreed to by and between the Parties as follows:

1.      The Tort Claimants' Committee shall withdraw the Stay Enforcement Motion without prejudice promptly after the execution of this Stipulation by all of the Parties and the entry of an order of the Court approving this Stipulation.

2.      Notwithstanding anything to the contrary herein or in the Agreement or the Amendment, or any subsequent amendment to the Agreement, neither the Parties' entry into this Stipulation, the Court's entry of any order approving this Stipulation, nor any Party's involvement in the negotiation of the Amendment or any related document, shall prejudice or constitute or be deemed to constitute a waiver of, expressly or implicitly, any claim, cause of action, right, remedy or defense of any kind or character whatsoever, capable of being asserted by any of the Parties, directly or derivatively, against MTC and/or any of its officers, directors, advisors, or other representatives or the Properties Trust and/or any of its agents or representatives, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law, including, without limitation, any and all actual or potential avoidance, recovery, subordination or other claims, causes of action, or remedies that may be brought by or on behalf of the Debtors or their estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including without limitation claims, causes of action or remedies under sections 502, 510, 542, 544, 547 through 553 and 724(a) of the Bankruptcy Code or under similar local, state, federal or foreign statutes or common law, including preference, actual or constructive fraudulent transfer and conveyance laws, any claims or causes of action relating to the validity of the representations made in the Qualified Affidavit, and any claims or causes of action relating to the validity of the formation of the Properties Trust, and all such claims, causes of action, rights or remedies shall be expressly preserved in all respects, and nothing herein shall prevent or prohibit any Party from reporting concerns regarding the conduct of MTC and/or the

Properties Trust and/or their respective representatives or agents relating to the Agreement, the Amendment, the Qualified Affidavit, or the establishment or existence of or transfers to the Properties Trust, to relevant authorities.  MTC's and the Properties Trust's rights to oppose any such claim, cause of action, right, remedy or defense, or to assert any claim or defense in response, shall likewise be preserved in all respects.

       3.      Furthermore, notwithstanding anything to the contrary herein or in the Agreement or the Amendment, or any subsequent amendment to the Agreement, nothing contained in this Stipulation shall constitute or be deemed to constitute the BSA's consent to, or the Court's approval of, the standing of any party in interest to assert any claim or cause of action on behalf of the Debtors' estates.  All Parties' rights to seek standing to assert any such claim or causes of action on behalf of the Debtors' estates at any time are expressly preserved.  Nothing herein shall operate to prohibit or limit the assertion of direct claims by any Party against MTC and/or any of its officers, directors, advisors, or other representatives or the Properties Trust and/or any of its agents or representatives at any time or to subsequently seek to enforce the automatic stay. Nothing herein shall operate to prohibit or limit the assertion of any claim or defense, if any, by MTC or the Properties Trust against any of the Parties and/or any of their officers, directors, advisors, or other representatives.

       4.      MTC, the Properties Trust, and each of their respective counsel and professionals shall preserve, and shall not destroy, any and all documents and communications in its possession, custody or control related in any way to the Agreement, the Properties Trust, the Qualified Affidavit, or the transfers to the Properties Trust, including, without limitation:  (a) any and all documents and communications related to the negotiation of the Agreement, the Amendment, the Properties Trust, the Qualified Affidavit, or the transfers to the Properties Trust; (b) any and all

documents evidencing or relating to the value and/or condition of the assets transferred to the Properties Trust; (c) any and all documents and communications relating to the enforceability of the Agreement, the Amendment, the Properties Trust, the Qualified Affidavit, or the transfers to the Properties Trust; (d) any and all documents and communications (including any corporate minutes) memorializing, evidencing or relating to the Agreement, the Amendment, the Properties Trust, the Qualified Affidavit, or the transfers to the Properties Trust, including any communications or documents associated with any trustee or trust protector of the Properties Trust, in his or her capacity as such, or any other party, including, without limitation, the Office of the Attorney General and Reporter of the State of Tennessee; (e) any and all communications or documents relating to opinions or expert analysis supporting any consideration exchanged for transfers to the Properties Trust, transfers from the Properties Trust, any and all amendments, modifications, or supplements to the Agreement, including the Amendment, and the Qualified Affidavit; (f) any and all documents and communications related to the reporting and notice requirements under the Acknowledgment and Agreement, (g) any and all documents and communications related to any pending or threatened court actions against MTC relating to claims for sexual abuse or otherwise (including when MTC became aware of any such actions, whether before or after the commencement of the Debtors' chapter 11 cases), and (h) any and all documents and communications related to the purpose or intent of the transfers to the Properties Trust or the creation of the Properties Trust.  The Debtors, Tort Claimants' Committee and Creditors' Committee reserve any rights they may have to seek discovery from MTC and/or any of its officers, directors, advisors, or other representatives or the Properties Trust and/or any of its agents or representatives relating to the subjects addressed in subparagraphs (a)–(h), above, or otherwise.

For the avoidance of doubt, nothing in this Stipulation shall be deemed to be a waiver of any privileges and/or other statutory or common law protections by any Party.

5.     MTC asserts that neither this Stipulation nor the filing of this Stipulation on the docket shall constitute, or be deemed to constitute: (a) a waiver or release of MTC's rights against any person, entity or property; (b) consent by MTC to the jurisdiction of the Bankruptcy Court or any other court; (c) a waiver of MTC's rights to have final orders in non-core matters entered only after de novo review by the United States District Court for the District of Delaware with respect to the BSA's chapter 11 case; (d) a waiver of MTC's rights to withdraw the reference or otherwise challenge the jurisdiction of the Bankruptcy Court with respect to the subject matter of this Stipulation or any other proceeding commenced in the BSA's chapter 11 case against or otherwise involving MTC; or (e) a waiver of MTC's rights to a trial by jury in any proceeding so triable in the BSA's chapter 11 or any other case, controversy, or proceeding relating to such case.  The rights of all other Parties to contest any assertions set forth in this paragraph are expressly preserved.

6.     This Stipulation is subject to the approval of the Court and shall have no force or effect unless and until an order approving the same is entered by the Court.  If this Stipulation is not approved by the Court, it shall be null and void and shall not be binding on any Party.

7.     Each Party represents and warrants to the other Parties that it has the power and authority to enter into this Stipulation.  Each person who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party and that each such Party has full knowledge of, and has consented to, this Stipulation.

8.     Each Party represents that it has had the opportunity to obtain the advice of counsel in connection with this Stipulation.

9

9.      Each Party is authorized to take all actions necessary to effectuate the relief granted pursuant to and in accordance with this Stipulation.

10.      This Stipulation shall not be modified, altered, amended, or vacated without the written consent of all Parties or by further order of the Court.

11.      This Stipulation shall be deemed to have been jointly drafted by the Parties, and, in construing and interpreting this Stipulation, no provision shall be construed and interpreted for or against either of the Parties because such provision or any other provision of the Stipulation was purportedly prepared or requested by such Party.

12.      This Stipulation may be executed in one or more counterparts and by facsimile, email, or authorized electronic signatures, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation to present any copy, copies, electronic copies, or facsimiles signed by the Parties.

13.      Subject to the approval of this Stipulation by the Court, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its execution.

14.      This Court shall retain jurisdiction to resolve all matters arising from or related to the implementation, interpretation, and/or enforcement of this Stipulation.

15.      The undersigned, on behalf of their respective clients, hereby agree to the form, substance, and entry of this Stipulation.


*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties hereby have caused this Stipulation to be duly executed.

Dated: January 11, 2021
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@mnat.com
             aremming@mnat.com
             emoats@mnat.com
             ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. K. Boelter (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.boelter@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
             mlinder@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION

Dated:  January 11, 2021                WALLER LANSDEN DORTCH & DAVIS LLP

                                         */s/ Robb S. Harvey*
                                        Robb S. Harvey (Tenn. BPR No. 011519)
                                        511 Union Avenue  Suite 2700
                                        Nashville, Tennessee   37219
                                        Telephone: 615/244-6380
                                        E-mail:   Robb.harvey@wallerlaw.com

                                        *Special appearance as counsel for Middle Tennessee Council, Inc., Boy Scouts of America*

Dated:  January 11, 2021          PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435)
Robert B. Orgel (CA Bar No. 10187)
Ilan D. Scharf (NY Bar No. 4042107)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No.271038)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile:  302-652-4400
E-mail:  jstang@pszjlaw.com
         rorgel@pszjlaw.com
         ischarf@pszjlaw.com
         joneill@pszjlaw.com
         jlucas@pszjlaw.com

*Counsel for the Official Tort Claimants' Committee*

Dated: January 11, 2021

**REED SMITH LLP**

/s/     *Rachael Ringer*
Kurt F. Gwynne (No. 3951)
Katelin A Morales (No. 6683)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com
E-mail: kmorales@reedsmith.com

-and-

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Thomas Moers Mayer
Rachael Ringer
David E. Blabey, Jr.
Jennifer R. Sharret
Megan M. Wasson
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
E-mail: tmayer@kramerlevin.com
E-mail: rringer@kramerlevin.com
E-mail: dblabey@kramerlevin.com
E-mail: jsharret@kramerlevin.com
E-mail: mwasson@kramerlevin.com

*Counsel to the Official Committee of Unsecured*
*Creditors*

**<u>Exhibit A</u>**

Agreement and Amendment

BK/PG: RB107/776-811
20001174

| 36 PGS:AL-RESOLUTIONS AND AMENDMEN | |
|---|---|
| APRIL BATCH: 21450 | |
| **11/09/2020 - 09:08:59 AM** | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 180.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 182.00 |

STATE OF TENNESSEE, VAN BUREN COUNTY
**APRIL SHOCKLEY**
REGISTER OF DEEDS

This instrument prepared by
  and upon recording, return to:
Robb S. Harvey, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

## TRUST PROTECTOR RESOLUTIONS AND AMENDMENT TO PROPERTIES TRUST

These Trust Protector Resolutions and Amendment to Properties Trust (the "Resolutions and Amendment") are made on this the 3rd day of November, 2020, by John Bryant, Trust Protector for the Properties Trust (the "Trust Protector").

## W I T N E S S E T H:

**WHEREAS**, the Middle Tennessee Council, Inc., Boy Scouts of America, a Tennessee nonprofit corporation ("MTC"), approved the creation of a properties trust at the regularly scheduled meeting of its Executive Board (the "Executive Board") on June 11, 2020;

**WHEREAS**, the properties trust (the "Properties Trust") was created pursuant to the terms of the Properties Trust Agreement dated as of June 12, 2020 ("Trust Agreement");

**WHEREAS**, MTC made a request to the Office of the Attorney General and Reporter of the State of Tennessee (the "Attorney General") that the Attorney General issue a written waiver of the notification and review requirement set forth in Tennessee Code Annotated Section 48-62-102(g) in the event such notification and review provision was deemed or determined to be applicable to a transfer of the real property assets and certain associated capital restricted funds of MTC to the Properties Trust;

**WHEREAS**, after obtaining the Attorney General's clearance to proceed with the transfers, MTC executed quitclaim deeds transferring its interest in certain pieces of real property to the Properties Trust, consisting of four camps and MTC's office; transferred certain associated capital restricted funds to the Properties Trust; and entered into leases with the Properties Trust whereby MTC leased the four camps and MTC's office;

**WHEREAS**, the quitclaim deeds were recorded with the County Registers of Deeds in which the real properties are located, and MTC has submitted copies of the quitclaim deeds to Boy Scouts of America ("BSA National");

**WHEREAS**, as reflected in the Resolutions of the Executive Committee at its specially called September 2, 2020 meeting:

4837-7374-7916

"**WHEREAS,** the Executive Committee considers these real properties to be vital to providing opportunities for the youth and volunteers of the MTC to learn the values of the Scout Oath and Scout Law and to develop other positive values which are part of the MTC's Scouting program;

**WHEREAS,** the Executive Committee determined as reflected by its prior actions that the formation of the Properties Trust would better serve these interests, including by promoting the maintenance/repairs of and improvements to the real properties, while helping to avoid the diversion of time and energy away from the MTC's staff and volunteers so they may focus on these values and the Scouting programs offered by the MTC;

**WHEREAS,** the Tort Claimant's Committee ("TCC") in [BSA] National's chapter 11 bankruptcy cases raised questions about MTC's creation of the Properties Trust and transfer of assets thereto;

**WHEREAS,** MTC's counsel advised [BSA] National of the following: (i) that the transfers of the real property were made by quitclaim deed, so as a result the transferee received whatever interest the transferor had in the real properties at the time of transfers; (ii) that MTC does not take the position that any contingent interest that [BSA] National might have in assets transferred to the Properties Trust was extinguished by the creation of the Properties Trust and the transfer of assets thereto; (iii) that MTC's creation of the Properties Trust and the transfer of assets thereto in no way caused MTC to have diminished or impaired any interest of the BSA's chapter 11 estate (the "Estate"); and (iv) that MTC might ultimately be willing to contribute in a Plan resolving the BSA's chapter 11 case, despite having no abuse lawsuits;

**WHEREAS,** [BSA] National subsequently provided a response dated July 30, 2020, to the TCC with [BSA] National's summary of the MTC's positions, and further stated that "[b]ased on its initial investigation and our discussions with counsel for MTC, BSA believes that all corporate formalities were observed in connection with the formation of the Properties Trust and that MTC's decision to establish the Properties Trust appears to have been an exercise of MTC's own reasonable business judgment." Further, [BSA] National informed the TCC that "BSA does not believe that MTC's transfers to the Properties Trust have violated the automatic stay.";

**WHEREAS,** notwithstanding being provided [BSA] National's summary of the MTC's positions on these issues, the TCC on August 7, 2020, filed a motion in [BSA] National's bankruptcy challenging the creation of the Properties Trust and the transfer of assets thereto as a violation of the Bankruptcy Code's automatic stay ("TCC's Motion");

4837-7374-7916

WHEREAS, a hearing on the TCC's Motion was originally scheduled for September 9, 2020, but as a result of discussions between counsel for MTC and the TCC, facilitated by the mediators in [BSA] National's bankruptcy, the hearing on the TCC's Motion has been postponed until October 14, 2020;"

[Resolutions of MTC Executive Committee, September 2, 2020 (the "Executive Committee Resolutions"];

WHEREAS, the Trust Agreement in Article VII provides for its amendment by a Trust Protector;

WHEREAS, following the procedure in the Trust Agreement, and pursuant to that certain Appointment of Trust Protector dated as of September 3, 2020, John Bryant ("Bryant") was appointed to serve as Trust Protector for the Properties Trust, and Bryant accepted that appointment;

WHEREAS, subparagraph 1. of paragraph B. of Article VII. of the Trust Agreement, titled *Trust Protector*, grants the Trust Protector the power, exercisable without the approval or consent of any person at any time and by delivery of a notarized written instrument to the Trustees of the Properties Trust, to amend the terms of the Trust Agreement in any manner which the Trust Protector believes is in the best interests of MTC; and

WHEREAS, the Trust Protector has taken into consideration various written materials, and has also taken into consideration input from various persons associated with MTC including, but not limited to, MTC's Chairman, President and Scout Executive, and the Chair of board of Trustees of the Properties Trust, as to what constitutes the best interests of MTC in connection with a potential amendment to the Trust Agreement; and

WHEREAS, a draft of these Resolutions and Amendment has been submitted by MTC's counsel through Mediator Tim Gallagher to counsel for the TCC (Messrs. James Stang and John Lucas) for input, and the Trust Protector has taken into consideration any input provided by those sources to MTC's counsel in reaching these Resolutions and Amendment; and

WHEREAS, the Trust Protector believes amending the Trust Agreement, as provided for herein, is in the overall best interests of MTC and, therefore, such action is permissible under the terms of the Trust Agreement; and

WHEREAS, the Trust Protector understands that it is the intention of MTC and the Properties Trust to record a copy of the Properties Trust Agreement, as amended, with the five Registers of Deeds which previously recorded the quitclaim deeds.

NOW, THEREFORE, the Trust Protector hereby takes the following action:

4837-7374-7916

1.     In accordance with the power authorized in subparagraph 1. of paragraph B. of Article VII. of the Trust Agreement, the Trust Protector hereby amends the Trust Agreement by:

    a.     Inserting at the end of the only sentence in paragraph D of Article I of the Trust Agreement the following: "To the extent that BSA National has an interest in the assets of the Properties Trust by way of the Articles of Incorporation and Bylaws referenced in paragraph F of Article II of the Trust Agreement or BSA National's articles, bylaws and regulations, MTC and the Trust Protector, on behalf of the Properties Trust, agree that any such interest was not extinguished or otherwise impacted by the transfer of assets by MTC to the Properties Trust. MTC does not agree that BSA National has the interest in those assets that the TCC has asserted in the TCC's Motion."

    b.     Inserting a new paragraph F of Article II of the Trust Agreement, titled *Additional Provisions*, which shall read, in its entirety, as follows:

    F.     <u>Additional Provisions</u>.

    i. At the time the quitclaim deeds to the Properties Trust (referenced in the Executive Committee Resolutions above) were recorded, the MTC was aware that the Articles of Incorporation, which had been adopted as of 2002 and a portion of which are quoted below, had been adopted by MTC, and the Trust Protector, on behalf of the Properties Trust, hereby acknowledges such articles. To give public notice of those provisions to any potential future acquirer(s) of the assets of the Properties Trust, or to any other person or entity, the following is adopted as part of the Properties Trust Agreement to give notice to the public and/or interested parties of the following:

Article X. Dissolution.

The property and assets of the corporation [MTC] are irrevocably dedicated to the charitable and education purposes of carrying out the program of the of the [sic] Boy Scouts of America.

In the event of the dissolution or final liquidation of the corporation [MTC] or upon the revocation or termination of its charter from the Boy Scouts of America, none of such property or assets or the proceeds there from [sic] shall inure to the benefit of any individual but shall, after all liabilities and obligations of the corporation [MTC] have been paid or satisfied or provision otherwise made therefore, be distributed (a) to another local council of the Boy Scouts of America as specified by the Boy Scouts of America to be used for charitable and educational purposes, or (b) in the absence of such specification, to the Boy Scouts of America itself to be used for charitable and educational purposes, contemplated that in either instance

4837-7374-7916

such property and assets shall continue to be devoted to the furtherance of Scouting in Tennessee.

        ii.   At the time the quitclaim deeds to the Properties Trust (referenced in the Executive Committee Resolutions above) were recorded, the MTC was aware that the Bylaws of the MTC, which had been adopted as of 2017 and a portion of which are quoted below, had been adopted by MTC, and the Trust Protector, on behalf of the Properties Trust, hereby acknowledges such bylaws. In order to give public notice of those provisions to any potential future potential acquirer(s) of the assets of the Properties Trust, or to any other person or entity, the following is adopted as part of the Properties Trust Agreement to give notice to the public and/or interested parties of the following:

*Article X. Section 2. Clause 3.*

In accordance with the wishes of the donors, permanently restricted funds received by a unit or local council, shall in all cases be held (i) in trust by either a corporate trustee for a bank or trust company, the National Boy Scouts of America Foundation or the Boy Scouts of America Endowment Master Trust; or (ii) the Boy Scouts of America Commingled Endowment Fund, LP for the use of the unit or the local council, with the provision in the statement of the conditions governing the administering of the funds that in the event of the dissolution of the unit or council or revocation or lapse of its charter said funds will, after any claims against said funds are satisfied, be distributed for the benefit of Scouting in such locality and for the specific purposes for which the fund was granted. If there is no suitable opportunity for the use of said funds in such locality, it may be used elsewhere. Except as hereafter provided in this clause, the title to all real estate acquired for a unit or local council shall be vested in a bank or trust company, in trust for the use of the unit or local council in accordance with the wishes of the donors, with a provision in such locality or elsewhere if there is not suitable opportunity to use said property or funds in such locality.

The corporation may hold title to real property in its own name provided it is stated in the deed that in the event of the dissolution of the council or the revocation or lapse of its charter said trustee or trustees will, after satisfying any claims against such unit or council to which such real estate may be subject, convey said property or, if sold, pay the net proceeds of such sale in accordance with the Bylaws and Rules and Regulations of the Boy Scouts of America.

The corporation may hold title to real property and maintain accounts wherein securities or funds are deposited in the corporation's name provided, however, in accordance with the Bylaws and Rules and Regulations of the Boy Scouts of America, such assets are deemed to have been raised or obtained for the benefit of Scouting and are subject to a constructive trust for the benefit of Scouting. Either the Articles of Incorporation or the Bylaws shall be filed with the applicable state agency maintaining corporate records to provide public notice of such constructive trust and notice that the assets, real property or net proceeds from the conveyance

4837-7374-7916

of real property are subject to such a restriction in the event of the dissolution of the local council or the revocation or lapse of its charter.

Notwithstanding any other provision herein, the corporation may exercise its business judgment in the management and use of all of the assets of the corporation so as to maximize their use for the benefit of Scouting in accordance with the charter. The corporation shall have the right to hold such properties in any form or through such other entity or agreement that does not in effect or purpose defeat the restrictions and obligations set forth herein.

iii.  It is furthered acknowledged, and notice is hereby given to any potential future potential acquirer(s) of the assets of the Properties Trust, or to any other person or entity, that MTC and the Properties Trust, as a Tennessee non-profit corporation and charitable trust, respectively, are subject to the interest of the Attorney General in the assets of Tennessee nonprofit corporations and charitable trusts.  Further, the Trust Protector and thereby these Resolutions and Amendment acknowledge that MTC and Properties Trust are subject to the laws of the State of Tennessee, including certain statutes, and are entitled to the protections thereof to the fullest extent of their applicability, including, without limitation, the Tennessee Nonprofit Corporation Act, Tennessee Code Annotated Title 48, Chapters 51-68 and the Tennessee Nonprofit Fair Asset Protection Act, Tennessee Code Annotated Sections 48-53-201 *et seq.*

iv.  It is further acknowledged, and notice is hereby given to any potential future potential acquirer(s) of the assets of the Properties Trust, or to any other person or entity, that the Properties Trust acquired title to assets via quitclaim deed or otherwise from MTC.  MTC and the Trust Protector, on behalf of Properties Trust, agree that the Properties Trust received whatever interest MTC had in those properties prior to the transfer, subject to whatever interests and contingencies, if any, existed in those properties prior to the transfers via quitclaim deed or otherwise.

c.      Inserting a new paragraph G. of Article II of the Trust Agreement, titled *Other BSA Notice*, which shall read, in its entirety, as follows:

The MTC, on or about July 6, 2020, executed the form "Acknowledgement and Agreement" (the "Acknowledgment"), which form was approved by the Bankruptcy Court in the BSA National's bankruptcy case, Exhibit 4 to the *Second Stipulation and Agreed Order By and Among the Boy Scouts of America, the Official Committee of Survivors of Abuse, and the Official Committee of Unsecured Creditors Modifying the Consent Order Granting BSA's Motion for a Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A) and 362 and Further Extending the Termination Date of the Standstill Period* [Docket No. 77] (the "Order").

As applicable, the Trustees of the Properties Trust shall comply with the notice requirements set forth under the Acknowledgement.  Complying with the notice requirements set forth in the Acknowledgement shall not be deemed to be a violation of the fiduciary obligations of any Trustee under the Properties Trust Agreement.

4837-7374-7916

d.    Inserting new paragraph B.6 of Article VII, which shall read, in its entirety, as follows:

"To the extent that BSA National has an interest in the assets of the Properties Trust, the Properties Trust shall not be amended in a way that alters and impairs any such interest."

2.    The Trust Protector believes the Amendment to the Trust Agreement, as set forth in paragraph 1, above, is in the overall best interests of MTC.

3.    The language of all parts of these Resolutions and Amendment shall, in all cases, be construed as a whole, according to its fair meaning.

4.    The laws of the State of Tennessee shall govern the enforcement of these Resolutions and Amendment.

5.    These Resolutions and Amendment may be executed in two or more counterparts if necessary and appropriate, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

6.    Capitalized terms not otherwise defined herein shall have the meaning given such terms in the Trust Agreement.

**IN WITNESS WHEREOF**, this Resolutions and Amendment has been executed as of the date first written above.

_John Bryant_
John Bryant, Trust Protector

**STATE OF TENNESSEE** )
**COUNTY OF DAVIDSON** )

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, the within named John Bryant, Trust Protector, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who upon oath acknowledged that he executed the within instrument for the purposes therein contained.

Witness my hand and seal, on this the 2nd day of November, 2020.

_Jeanne M. Perri_
NOTARY PUBLIC

My Commission Expires: 5/2/22

4837-7374-7916

ACKNOWLEDGEMENT OF RECEIPT:

Clay Bright, Chair, Board of Trustees, Properties Trust

After Execution:  cc by email to Board of Trustees

4837-7374-7916

Exhibit A to Trust Protector Resolutions and Amendment to Properties Trust

See Attached

# PROPERTIES TRUST AGREEMENT

**Dated: June 12, 2020**

prepared
by

WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219-1760

4828-4429-3817

# PROPERTIES TRUST AGREEMENT

**WHEREAS,** Middle Tennessee Council, Inc., Boy Scouts of America ("MTC") is a Tennessee nonprofit corporation exempt from United States federal income taxation under Section 501(a) of the Internal Revenue Code of 1986, as amended (the "Code") as an organization described under Section 501(c)(3) of the Code and further classified as a public charity under Section 509(a)(1) of the Code;

**WHEREAS,** MTC owns Real Property that is used in fulfilling the charitable purposes of MTC and such Real Property represents a significant portion of MTC's total assets;

**WHEREAS,** MTC also maintains a Cash Reserve;

**WHEREAS,** MTC has researched property management practices of organizations similar to MTC, including non-profit entities chartered by Boy Scouts of America and Girl Scouts of the United States of America, and acknowledges that real estate holdings in some organizations have fallen into disrepair or have not been adequately maintained, resulting in financial difficulties in those organizations;

**WHEREAS,** MTC has accordingly determined that the long-term management, maintenance and improvement of the Real Property will be enhanced and ensured by establishing a separate foundation with sufficient resources for prudently managing such Real Property; and

**WHEREAS,** MTC desires to establish a separate foundation that is exempt from United States federal income taxation under Section 501(a) of the Code as an organization described under Section 501(c)(3) of the Code and classified as a supporting organization under Section 509(a)(3) of the Code (specifically, a Type I supporting organization described in Section 509(a)(3)(B)(i) of the Code) with a separate and independent board of trustees for the purposes of (i) managing the Real Property, (ii) maintaining and investing the Cash Reserve, and (iii) providing financial support to MTC which may, from time to time, be necessary or appropriate to enable MTC to fulfill its charitable purposes as stated in the corporate charter of MTC.

## Article I.
## Creation of Trust

A.    <u>Creation of Trust</u>. MTC does hereby enter into this irrevocable trust agreement (the "Agreement") on this the 12th day of June, 2020. The trust created under this Agreement shall be known as the "Properties Trust" (the "Trust"). Pursuant to the provisions of paragraph A. of the Article titled *Appointment, Resignation, Replacement, and Succession of Trustees*, MTC has appointed the following individuals to serve as initial Trustees: (i) Clay Bright, who shall serve as the initial Chair of the board of Trustees, (ii) Harris Haston, (iii) John Harney, (iv) Phil Pfeffer, (v) Rob McCabe, (vi) Steve Blackmon, (vii) Craig Becker, (viii) Hill McAlister, and (ix) Greg Cashion. All references to "Trustees" shall refer to the initial Trustees, or their successors in trust, except as otherwise provided herein. In consideration of the premises and mutual covenants herein

1

4828-4429-3817

contained, MTC will convey and transfer to the Trust all of its rights and interests in the Real Property and the Cash Reserve, and the Trustees agree to hold such property conveyed and transferred to the Trust for the uses and purposes and subject to the conditions, powers, and agreements hereinafter set forth.

B.    Statement of General Intent.

1.    Supporting Organization. Notwithstanding anything in this Agreement to the contrary, in making distributions of the net income and principal of the Trust pursuant to paragraph A. of the Article titled *Dispositive Provisions*, and in holding and/or acquiring, as part of its principal, real property and tangible personal property pursuant to paragraphs B. and/or C., respectively, of said Article, the Trustees shall support solely the activities, purposes, and mission of MTC, which include, but are not limited to, promoting the principles set forth in the Scout Oath, Law, Motto and Slogan. MTC intends that the Trust being administered under this Agreement be exempt from United States federal income taxation under Section 501(a) of the Code as an organization described under Section 501(c)(3) of the Code and be further classified as a supporting organization under Section 509(a)(3) of the Code. Further, it is intended that the Trust being administered hereunder constitutes a Type I supporting organization described in Section 509(a)(3)(B)(i) of the Code.

2.    Tennessee Investment Services Trust. It is intended the Trust being administered under this Agreement constitutes an Investment Services Trust, as defined in T.C.A. § 35-16-102(7) as part of the Tennessee Investment Services Act of 2007, including any future amendments thereto (collectively, the "Act"), so as to provide for MTC the creditor protection provided under such Act. Consistent therewith, each contribution by MTC to the Trust during MTC's existence shall constitute a "Qualified Disposition" (as defined in T.C.A. § 35-16-102(11)). The qualification of the Trust as an Investment Services Trust, as defined in the Act, is a material purpose for which MTC has executed this Agreement and under no circumstances shall a modification be made to this Agreement so as to disqualify the Trust from being an Investment Services Trust under the Act. If any provision of this Agreement is open for interpretation, it is directed that such provision shall be interpreted so as to be consistent with this intention.

C.    Trust Estate. All property subject to this Agreement from time to time is referred to herein as the "trust estate" and shall be held, administered, and distributed as provided herein. The Trustees shall hold, administer, and distribute the trust estate and the income and proceeds attributable to all such property in accordance with the provisions of this Agreement. The Trustees may receive and accept property, whether real, personal, or mixed, by way of gift, bequest, or devise, from any individual, firm, trust, partnership, corporation, or other person to be held, administered, and disposed of in accordance with and pursuant to the provisions of this Agreement; provided, however, that no gift, bequest or devise of any such property shall be received and accepted if it is conditioned or limited in such a manner as to require the disposition of such property, including any income, appreciation or proceeds attributable thereto, to any individual, person or organization for other than Charitable Purposes, as such term is defined in paragraph A. of the Article titled *Definitions and General Provisions*, or, as shall in the opinion of the Trustees, in their sole and absolute discretion, jeopardize the federal income tax exemption of the Trust

2

4828-4429-3817

pursuant to Section 501(c)(3) of the Code.

     D.    <u>Identification of Beneficiary</u>. The sole and exclusive beneficiary of this Trust is MTC.

# Article II.
## Dispositive Provisions

     A.    <u>Distribution of Income and Principal</u>. The Trustees may distribute to or for the benefit of MTC such amounts of the net income and principal of the Trust as the Qualified Trustees, in their sole and absolute discretion, deem advisable, even if there is a complete exhaustion of principal. Any net income of the Trust that is not distributed shall be accumulated and added to principal at least annually. Notwithstanding the foregoing, any income or principal derived from contributions to the Trust by corporations shall be distributed for use solely within the United States of America or its possessions. No part of the net earnings of the Trust shall inure or be payable to or for the benefit of any private person or individual, and no substantial part of the activities of the Trust shall be the carrying on of propaganda or otherwise attempting to influence legislation. No part of the activities of the Trust shall be the participation in, or intervention in (including the publishing or distributing of statements), any political campaign on behalf of or in opposition to any candidate for public office. The Qualified Trustees may adopt a distribution policy in order to carry out the purposes of the foregoing.

     B.    <u>Management of Real Property</u>. The Trust shall hold, manage and maintain the Real Property subject to the following authorities and limitations:

     1.    The Qualified Trustees may negotiate and enter into one or more agreements that grant a leasehold estate to MTC in the Real Property for such periods that are appropriate to provide support to the mission of MTC; provided, however, that the terms of any such agreements shall comport with any requirements set forth in T.C.A. § 67-5-212 in order for the Real Property to maintain any exemptions from property taxation.

     2.    The Trustees may not sell or otherwise dispose of the Real Property except with the prior consent of MTC.

     3.    Any proceeds that are received by the Trust upon any disposition of any parcel or portion of any parcel of the Real Property, including without limitation a disposition that is consented to by MTC, a condemnation, a casualty event, or any other taking of the Real Property, shall be retained by the Trust. If as a result of such disposition, a parcel of the Real Property is no longer available for use by MTC under an applicable lease agreement, the Trust shall, subject to the advice and consent of MTC, invest the proceeds therefrom to acquire a suitable and reasonable replacement property which will enable MTC to continue to enjoy a replacement leasehold that is suitable for the intended purposes of MTC. Any such replacement property shall thereafter constitute Real Property for purposes of this Agreement.

     4.    The Real Property shall not be leased or subleased to any entity other than MTC except with the prior consent of MTC, while subject to the leasehold of MTC.

3

4828-4429-3817

5.      Improvements and alterations to the Real Property may be funded through the use of the trust estate, by transfers from MTC to the Trust, or by funds that the Trust may receive from any individual, firm, trust, partnership, corporation, or other person from time to time as a supporting organization of MTC.

6.      The Trust may from time to time acquire a new parcel of real estate through use of the trust estate, transfers from MTC to the Trust or funds that the Trust may receive as a supporting organization of MTC. Any real estate so acquired shall thereafter constitute Real Property for purposes of this Agreement.

C.      <u>Real and Tangible Personal Property</u>. In addition to the Real Property, the Trust may hold and/or acquire, as part of its principal, real property and tangible personal property, which may be owned directly or indirectly by the Trust. The Qualified Trustees may permit MTC to use or otherwise benefit from the real property and tangible personal property. In addition, the Trustees shall pay, or in accordance with the terms of any lease(s) to which such real property or tangible personal property is subject cause to be paid by the lessee thereof, the insurance and property taxes assessed on the real property and the tangible personal property, as well as all other expenses incident to maintaining such property, and such expenditures shall be deemed administrative expenses of the Trust.

D.      <u>Other Authorities</u>. MTC authorizes and empowers the Trustees to form and organize such nonprofit corporations or single member limited liability companies as they deem necessary from time to time; provided, however, that any such corporation or limited liability company be limited to the uses and purposes provided for in this Agreement, be organized under the laws of any state or under the laws of the United States of America as may be determined by the Trustees, and have the power to administer and control the affairs and property and to carry out the uses, objects, and purposes of the Trust. Upon the creation and organization of any such corporation or limited liability company, the Trustees are authorized and empowered to convey, transfer, and deliver to such corporation or limited liability company all or any part the trust estate. The (a) charter, bylaws, and other provisions for the organization and management of such corporation and its affairs and property or (b) the articles of organization or certificate of formation and operating or limited liability company agreement for the organization and management of such limited liability company and its affairs and property shall, respectively, be such as the Trustees shall determine, consistent with the provisions of this Agreement.

E.      <u>Duration of Trust</u>. The Trust shall terminate in accordance with the provisions of the Rule Against Perpetuities, as set forth in paragraph D. of the Article titled *Definitions and General Provisions*, unless the Qualified Trustees decide, in their sole and absolute discretion, to terminate the Trust earlier. Following the termination of the Trust, and pursuant to T.C.A. § 48-64-101, *et seq*., the remaining trust estate of the Trust, after the payment of the obligations and liabilities of the Trust, shall be transferred to MTC or to one or more corporations or associations having a similar or analogous character or purpose as may be selected by the Trustees, in their sole and absolute discretion; provided, however, that any transferee shall be exempt under Section 501(a) of the Code as an organization described under Section 501(c)(3) of the Code, and such assets shall be used by such transferee for purposes substantially similar to those of MTC or may be distributed to the Federal, State, or local government for a public purpose. Any remaining trust estate of the Trust not so disposed of shall be disposed of as directed by the Chancery Court of the

4

4828-4429-3817

county where the principal place of administration of the Trust then occurs, exclusively for such purposes.

# Article III.
## Appointment, Resignation, Replacement, and Succession of Trustees

A.      <u>Appointment of Initial Trustees</u>. The Trust shall initially have a total of nine (9) Trustees, who have been appointed, as described in paragraph A. of the Article titled *Creation of Trust*, pursuant to the provisions set forth herein below. Successor trustees shall be appointed as provided in this Article. The number of Trustees may from time to time be modified by action of the Trustees and with MTC's prior consent to as few as three (3) but no more than nine (9) Trustees; provided, however, that at all times there shall be an odd number of Trustees (*i.e.*, 3, 5, 7 or 9).

B.      <u>Term of Trustees</u>. Each Trustee shall serve for a five (5) year period; provided, that any Trustee who has been appointed as a successor to a Trustee who has been removed or who has resigned (a "Removed/Resigned Trustee") shall serve out the remainder of the term for such Removed/Resigned Trustee. Upon expiration of a Trustee's term of service, such Trustee shall continue to serve until a successor Trustee has been appointed, as provided for herein, and agreed to serve. There is no limitation on the number of terms an individual may serve as a Trustee hereunder and an individual may serve an unlimited number of successive, consecutive terms. The length of the term of service of any Trustee may from time to time be modified by action of the Trustees and with MTC's prior consent.

C.      <u>Resignation of Trustees</u>. A Trustee shall have the right to resign as a Trustee upon thirty (30) days' prior written notice to the remaining Trustees, to MTC and, if required under applicable state law, to the Attorney General of the State of Tennessee. An individual serving as a Trustee shall cease to serve as such whenever such individual is disabled.

D.      <u>Removal of Trustees</u>. A Trustee may be removed, with or without cause, at any time, upon the unanimous recommendation of the Scout Executive (as defined in MTC's Bylaws), the Chairman of the Executive Board of MTC, and the President of MTC to the Executive Committee of MTC and upon the approval of such recommended removal by the Executive Committee of MTC.

E.      <u>Appointment of Successor Trustees</u>. In the event of a vacancy in the position of a Trustee hereunder, either due to death or the resignation or removal of an acting Trustee or upon the expiration of such acting Trustee's term, a successor Trustee shall be appointed upon the unanimous recommendation of the Scout Executive (as defined in MTC's Bylaws), the Chairman of the Executive Board of MTC, and the President of MTC to the Executive Committee of MTC and upon the approval of such recommended appointment by the Executive Committee of MTC. The process by which a successor Trustee is to be appointed may from time to time be modified by action of the Trustees and with MTC's prior consent; provided, that no such modification shall have any effect on the requirements set forth in paragraph F., below.

5

4828-4429-3817

F.     <u>Trustee Qualification and Disinterested Trustees</u>. Notwithstanding any provision of this Agreement to the contrary, (i) all Trustees must be at least the age of majority in the State of Tennessee, (ii) no Trustee may be an officer or employee of the Trust or of a related organization, including without limitation MTC or any affiliate thereof, and (iii) at least two-thirds of the individuals serving as Trustees shall be Disinterested Trustees, as defined in paragraph A. of Article *Definitions and General Provisions*. If a Trustee ceases to satisfy these qualifications or meet the definition of a Disinterested Trustee, a successor Trustee shall be appointed immediately as set forth above in paragraph D., above, if necessary in order to satisfy the requirements of this paragraph.

G.     <u>Qualified Trustee</u>. During MTC's existence, there shall be at least one Qualified Trustee, as defined in paragraph A. of Article *Definitions and General Provisions*, serving as Trustee at all times. If a Qualified Trustee ceases to meet the definition of a Qualified Trustee, a successor Qualified Trustee shall be appointed immediately as set forth above in paragraph D., above, if necessary in order to satisfy the requirements of this paragraph, unless at such time there is at least one other Qualified Trustee then serving.

H.     <u>Corporate Fiduciaries</u>. Any corporate fiduciary named pursuant to the provisions of this Agreement or appointed by a court of competent jurisdiction as a Trustee must be a bank or trust company situated in the United States having trust powers under applicable federal or state law. Such fiduciary shall be a Disinterested Trustee.

I.     <u>Powers and Liabilities of Successor Trustee</u>. Any successor Trustees shall have all of the rights, powers, and privileges, including the right to serve without bond, and shall be subject to all of the obligations and duties, both discretionary and ministerial, as given to the initial Trustees. Any successor Trustees shall be subject to any restrictions imposed on the initial Trustees. No successor Trustee shall have any obligation to review, investigate, or otherwise examine the actions of any predecessor Trustees, and each successor Trustee shall be indemnified and held harmless by the Trust against any liability the successor Trustee may incur by virtue of the actions or inactions of any predecessor Trustee or its failure to conduct such examination or review.

J.     <u>MTC May Not Serve as Trustee</u>. Notwithstanding any provision of this Agreement to the contrary, in no event shall MTC serve as a Trustee hereunder.

# Article IV.
## General Matters with Regard to the Trusteeship

A.     <u>Use of "Trustee" Nomenclature</u>. As used throughout this Agreement, the word "Trustee" shall refer to the initial Trustees, as well as any single, additional, or successor Trustees. It shall also refer to any individual, corporation, or other entity acting as a replacement, substitute, or added Trustee.

B.     <u>Requirements as to Bond</u>. The Trustees shall not be required to furnish any bond for the faithful performance of their duties. If any law or court of competent jurisdiction requires a bond, no surety shall be required on such bond.

6

4828-4429-3817

C.    Limitation on Trustee's Power to Discharge Trustee's Legal Obligations. In no event shall a Trustee have the authority to exercise any power over distributions of income or principal for the purpose of discharging any legal obligation of the Trustee.

D.    Material Participation by Qualified Trustee. During MTC's existence, all Qualified Trustees shall materially participate in the administration of the Trust at all times. Material participation shall have the meaning ascribed to it by the Tennessee Investment Services Act of 2007, including any amendments thereto, and may include, but shall not be limited to, maintaining or arranging for custody in the State of Tennessee of some or all of the trust property, maintaining records of the trust on an exclusive or nonexclusive basis, and/or preparing or arranging for the preparation of required income tax returns for the trust.

E.    Action of Trustees. The action of Trustees shall be by a vote of a majority of their numbers then in office at any given time; provided, that action of the Qualified Trustees shall be by a vote of a majority of the number of Qualified Trustees then in office at any given time; and, provided further, that a singular Trustee may sign a Qualified Affidavit executed by MTC for purposes of making a Qualified Disposition to the Trust.

# Article V.
## The Trustees' Administrative and Investment Powers

In the administration of the Trust and the distribution of the income and principal thereof, the Trustees, in addition to and not by limitation of the duties or powers provided elsewhere in this Agreement or by law, shall have the following administrative and investment powers:

A.    Tennessee Uniform Trust Code. In addition to all powers given under applicable law and those otherwise set forth in this Agreement, the Trustees shall have all the powers enumerated in the Tennessee Uniform Trust Code, T.C.A. § 35-15-101, *et. seq.*

B.    Investment Advisors. Notwithstanding any provision herein to the contrary, MTC shall serve as Investment Advisor itself, as permitted by T.C.A. § 35-16-109, or may appoint an Investment Advisor, which shall constitute a Trust Advisor as defined in T.C.A. § 35-15-1201, and in such event, MTC may remove and replace any Investment Advisor or MTC may resume serving as Investment Advisor. During any period an Investment Advisor is serving, the Investment Advisor shall have the power to direct the investment of the trust estate of the Trust and, as such, each of the Trustees shall be an Excluded Fiduciary, as defined in T.C.A § 35-15-103(12), with respect to the authority and power held by the Investment Advisor. Therefore, in accordance with T.C.A. § 35-15-1205, as an Excluded Fiduciary, the Trustees shall be held harmless from and against any claim and shall not be liable, either individually or as a fiduciary, for: (i) any loss resulting from compliance with a direction of the Investment Advisor, including, but not limited to, any loss from the Investment Advisor acting beyond its scope of authority; (ii) any loss resulting from any action or inaction of the Investment Advisor; or, (iii) any loss that results from the failure of the Investment Advisor to take any action proposed by the Trustees where such action requires the authorization of the Investment Advisor. Moreover, in accordance with T.C.A. § 35-15-1204, during any period an Investment Advisor is then serving, the Trustees shall have no duty to: (i) review, evaluate, inquire, investigate or in any other way monitor the conduct and/or actions of the Investment Advisor; (ii) make recommendations or evaluations or in

7

4828-4429-3817

any way provide advice to the Investment Advisor or consult therewith; or, (iii) communicate with or warn or apprise MTC or a third party concerning instances in which the Trustees would or might have exercised the Trustees' own discretion in a manner different from that of the Investment Advisor.  Lastly,  the actions of the Trustees pertaining to matters within the scope of the Investment Advisor's authority, including, but not limited to, confirming that the Investment Advisor's directions have been carried out and recording and reporting actions taken at the Investment Advisor's direction or other information pursuant to T.C.A. § 35-15-813,  shall be deemed to be administrative actions taken by the Trustees solely to allow the Trustees to perform those duties assigned to the Trustees under the terms of this Agreement; such administrative actions, as well as any communications made by the Trustees to the Investment Advisor or any of its agents or persons selected by the Investment Advisor to provide services to the Trust, shall not be deemed to constitute an undertaking by the Trustees to monitor the Investment Advisor or otherwise participate in actions within the scope of the Investment Advisor's authority. Notwithstanding the foregoing, MTC may resign as Investment Advisor such that no Investment Advisor is then serving and, during such period an Investment Advisor is not then serving, the Trustees shall have authority concerning the investment of the trust estate of the Trust as if this paragraph did not exist.

Excepting MTC, any Investment Advisor shall either be: (i) registered as an investment advisor under the Investment Advisors Act of 1940; (ii) a bank, as defined in the Investment Advisors Act of 1940; (iii) a Certified Financial Planner; (iv) an insurance company qualified to perform investment management services under the laws of more than one state; or, (v) a person who has significant experience in the acquisition, disposition, management and administration of real property of a type and character similar to the Real Property then held by the Trust.

C.    Segregation of Trust Assets. After the initial Qualified Disposition of assets to the Trust, each time a subsequent Qualified Disposition is made to the Trust the assets thus contributed shall be segregated from the existing assets of the Trust and held as a separate share. The term "Qualified Disposition" shall have the meaning ascribed to it by T.C.A. § 35-16-102(11) of the Act. Notwithstanding the direction to hold subsequent Qualified Dispositions as separate shares, the Trustees may treat all of the separate shares thus created as if they constitute the corpus of one trust for investment purposes. The Trustees shall at all times maintain accurate records of each separate share of the Trust. The income from the assets of the Trust, as well as the increases and decreases in the value of such assets, shall be allocated to the separate shares of the Trust in proportion to their relative interests in the whole of such property. On the date that is two (2) years after the date of a Qualified Disposition to the Trust, the Trustees may, in their sole and absolute discretion, combine it with any other share then under administration that was created prior to such Qualified Disposition.

D.    Distributions and Receipts. Whenever income and/or principal may be distributed to or for the benefit of MTC, such distributions, unless specifically stated otherwise, may be made directly to MTC for the use or benefit thereof, as the Trustees deem proper, in their sole and absolute discretion. The receipt of the distributee shall be a sufficient acquittance for the Trustees, but such receipt shall not be required.

E.    Transactions with Other Trusts. The Trustees may enter into any transaction authorized by this Article with fiduciaries or other trusts in which MTC has an interest, even

8

4828-4429-3817

though such fiduciary is also a Trustee under this Agreement.

F.      Income and Principal Powers. The Trustees may determine in a fair, equitable, and practical manner how all Trustees' fees, disbursements, receipts, and wasting assets shall be credited, charged, or apportioned between principal and income. The Trustees may set aside from trust income reasonable reserves for taxes, assessments, insurance premiums, repairs, depreciation, obsolescence, depletion, and for the equalization of payments to or for the beneficiaries. The Trustees may select any and all accounting periods with regard to the trust property.

G.      Power to Divide and Consolidate Similar Trusts. The Trustees may divide the Trust or the Trustees may merge and consolidate the Trust with any other trust created by MTC or any other person at any other time, upon such terms as the Trustees deem appropriate if the division or consolidation:

        1.      Is not inconsistent with the intent with regard to such trust or trusts;

        2.      Would facilitate administration of such trust or trusts; and

        3.      Would be in the best interests of all beneficiaries and would not materially impair their respective interests, in the sole and absolute discretion of the Trustees.

H.      Participation in Business. With respect to any interest in any business held by the Trust created hereunder, the Trustees may act as follows: comply with the provisions of any agreement restricting transfer of any business interest; participate in the conduct of the related business or rely upon others to do so; take or delegate to others discretionary power to take any action with respect to its management and affairs which an individual could take as outright owner of the business or business interest, including the voting of stock (by separate trust or otherwise, regardless of whether that separate trust will extend for a term within or beyond the date of final distribution of the trust) and the determination of all questions of policy; execute and amend entity agreements; participate in any incorporation, reorganization, merger, consolidation, sale of assets, recapitalization, liquidation, or dissolution of the business, or any change in its nature, or enter into any buy-sell, stock restriction, or stock redemption agreements; invest in additional stock or securities of, or make secured, unsecured, or subordinated loans to, the business, with trust funds; elect or employ with compensation, as directors, officers, employees, or agents of the business, any persons, without adversely affecting the compensation to which that Trustees would otherwise be entitled; and rely upon reports of accountants as to the operations and financial condition of the business, without independent investigation. If the business is thus continued, the Trustees shall incur no liability for any loss arising therefrom to the Trust.

L.      Fiduciary Duty. The Trustees' powers are exercisable solely in the fiduciary capacity and consistent and in furtherance of the charitable purposes of this Agreement.

M.      Trust Administration. In addition to the foregoing, the Trustees shall have the following powers and duties:

        1.      To direct the administration of the Trust in accordance with the provisions herein set forth and to interpret and construe the provisions of this Agreement;

9

4828-4429-3817

2.      To adopt rules of procedure and regulations necessary for the administration of the Trust that are not inconsistent with the terms of the Trust, the Code and other applicable law, and to interpret and enforce such rules and regulations;

3.      To engage the service of counsel (who may, if appropriate, be counsel for MTC) and agents whom the Trustees may deem advisable to assist with the performance of their duties; and

4.      To select a secretary, who need not be a Trustee.

# Article VI.
## Limitation Provisions

A.      <u>Administration of Funds</u>. Notwithstanding any provision of this Agreement to the contrary, in the event the Trust is a private foundation within the meaning of Section 509 of the Code, the Trustees shall (i) distribute trust income for each tax year in such a manner so that the Trust will not become subject to the tax on undistributed income imposed by Section 4942 of the Code; (ii) not engage in any act of self-dealing, as defined in Section 4941(d) of the Code; (iii) not retain any excess business holdings, as defined in Section 4943(c) of the Code; (iv) not make any investments in a manner that would incur a tax liability under Section 4944 of the Code; and, (v) make no distribution that is a taxable expenditure, as defined in Section 4945(d) of the Code, an individual grant, described in Section 4945(g) of the Code, or a distribution which requires the exercise of "expenditure responsibility," as defined in Section 4945(h) of the Code. In order to fully effectuate the provisions of this paragraph, the Trustees shall adopt such procedures and shall otherwise adhere to such legal and regulatory requirements as may from time to time be necessary, in order to fully comply with all applicable tax and other laws and regulations.

B.      <u>Savings Clause</u>. Notwithstanding any provision of this Agreement to the contrary, the Trustees are prohibited from conducting or carrying on any activities not permitted to be conducted or carried on by an organization exempt from federal income taxation under Section 501(a) of the Code as an organization described under Section 501(c)(3) of the Code or by an organization, contributions to which are deductible under Section 170(c) of the Code.

# Article VII.
## Trust Protector

A.      <u>Appointment and Removal of Trust Protector</u>.  A Trust Protector may be appointed, and thereafter an acting Trust Protector may be removed and a successor Trust Protector may be appointed, upon the unanimous recommendation of the Scout Executive (as defined in MTC's Bylaws), the Chairman of the Executive Board of MTC, and the President of MTC to the Executive Committee of MTC and upon the approval of such recommended appointment or removal, as applicable, by the Executive Committee of MTC; provided, however, that only Independent Persons may serve as Trust Protector. Notwithstanding the foregoing, there is no requirement for a Trust Protector to be serving.

B.      <u>Power of Trust Protector</u>.  The Trust Protector shall have the power, exercisable

10

4828-4429-3817

without the approval or consent of any person and at any time and by delivery of a notarized written instrument to the Trustees, to:

      1.    Amend the terms of this Agreement to: (i) achieve tax advantages; (ii) to react to changes in applicable law which adversely affects or impairs the Trust and/or the purposes for which the Trust was created; (iii) change the termination date of the Trust, either by extending or shortening the termination date (but not beyond the otherwise applicable Rule Against Perpetuities, as set forth in paragraph D. of the Article titled *Definitions and General Provisions*; or (iv) in any manner which the Trust Protector believes is in the best interests of MTC;

      2.    Change the *situs* and governing law of the Trust;

      3,    Amend the powers granted the Trustees;

      4.    Restrict, in any way determined by the Trust Protector, in its sole and absolute discretion, to be beneficial to the Trust or MTC, revocably or irrevocably, the future exercise of any power held by MTC or the Trustees hereunder; and

      5.    Remove a Trustee and/or appoint a successor Trustee; provided, that any such action may not violate the provisions of paragraph E. of the Article titled *Appointment, Resignation, Replacement, and Succession of Trustees*.

    C.    <u>Trustee Obligation to Adhere to Trust Protector's Exercise of Powers</u>. In the event the Trust Protector exercises any power granted to it pursuant to this Article, the Trustees shall be bound by, and obligated to act in conformance with, such exercise and no breach of fiduciary duty claim shall be made and/or asserted against the Trustees with respect to the Trust Protector's exercise and/or non-exercise of any such powers.

    D.    <u>Renouncement and Release of Powers</u>. The Trust Protector has the power to irrevocably renounce and release any powers granted to it pursuant to the provisions of this Article by delivering a notarized written instrument to the Trustees indicating the Trust Protector's decision to irrevocably renounce and release such power. In the event a Trust Protector renounces and releases a power granted to it pursuant to the provisions of this Article, such renouncement and release shall be binding on all successor Trust Protectors. In addition, the Trust Protector shall have the power to eliminate the office of Trust Protector, and the powers reserved to it, by delivering a notarized written instrument to the Trustees indicating the Trust Protector's exercise of this power.

    E.    <u>Fiduciary Capacity; Liability of Trust Protector</u>. The powers of the Trust Protector described in this Article are exercisable solely in a fiduciary capacity but shall not require the approval or consent of any person. The Trust Protector shall be under no duty or requirement to monitor any Trustee of any trust created hereunder, nor shall the Trust Protector be under any duty or requirement to exercise these powers. The Trust Protector's exercise and/or nonexercise of the authority granted to it under this Article shall be binding upon all interested parties. Furthermore, the Trust Protector shall be held harmless by the Trust for any liability, attorney's fees and expenses arising from its exercise and/or nonexercise of such authority. In addition, the Trust Protector shall be entitled to reimbursement for all ordinary and necessary out-of-pocket costs and

11

Book RB107 Page 796

expenses (including attorneys', accountants', consultants', and other expert fees and charges) incurred by the Trust Protector in the exercise of the authority granted hereunder.

F.    <u>Resignation</u>. The Trust Protector shall have the right to resign as Trust Protector upon five (5) days prior written notice to the Trustees, to MTC and, if required under applicable state law, to the Attorney General of the State of Tennessee. An individual serving as a Trust Protector shall cease to serve as such whenever such individual is disabled, as defined in paragraph A. of the Article titled *Definitions and General Provisions*.

G.    <u>Limitation on Trust Protector's Powers</u>. Notwithstanding the foregoing, the Trust Protector may not exercise a power, nor shall the Trust Protector ever be deemed to have had such power, to the extent that the exercise and/or mere existence of such power would reasonably be expected to revoke, jeopardize or otherwise impair: (i) the rights and protections granted under and pursuant to the Act; (ii) the qualification of the Trust for being exempt from United States federal income taxation under Section 501(a) of the Code as an organization described Section 501(c)(3) of the Code; (iii) the classification of the Trust as a supporting organization under Section 509(a)(3) of the Code; (iv) the classification the Trust as a Type I supporting organization described in Section 509(a)(3)(B)(i) of the Code; (v) the qualification of MTC for being exempt from United States federal income taxation under Section 501(a) of the Code as an organization described under Section 501(c)(3) of the Code; and/or (vi) the classification of MTC as a public charity under Section 509(a)(1) of the Code.

H.    <u>Multiple Trust Protectors</u>. In the event there is more than one individual serving as Trust Protector, the authority granted the Trust Protector hereunder shall require the approval of a majority of the individuals then serving as Trust Protectors; provided, that if there are only two individuals then serving, then such individuals must act unanimously.

# Article VIII.
## Definitions and General Provisions

A.    <u>Definitions</u>. Any capitalized terms used herein and not otherwise defined in this Article will have the meaning set forth elsewhere in this Agreement. The following terms used in this Agreement will have the following meanings:

1.    <u>Cash Reserve</u>. Refers to the accumulated cash and marketable securities that are maintained as a reserve in an account that is currently managed by a third-party investment manager for MTC.

2.    <u>Charitable Purposes</u>. As used in this Agreement, and in any amendments hereto, the term "Charitable Purposes" shall be limited to and shall include only religious, charitable, scientific, literary, or educational purposes within the meaning of those terms as used in Section 501(c)(3) of the Code.

3.    <u>Code and T.C.A.</u> Unless the context indicates otherwise, references to the "Code" shall mean the Internal Revenue Code of 1986, as amended (and any references to a section thereof shall include any successor, substituted, or amended section of the Internal

12

4828-4429-3817

Revenue Code), and shall also include the Treasury Regulations promulgated thereunder; provided, however, it shall not include any Treasury Regulation, or any portion thereof, which has been held invalid by a court having jurisdiction over federal tax matters. Unless otherwise indicated, any references to T.C.A. shall mean the Tennessee Code Annotated, as amended (and any references to a section thereof shall include any successor, substituted, or amended section of the Tennessee Code Annotated).

4.    <u>Disability of Individual Fiduciary</u>. Except as otherwise provided in this Agreement, any individual fiduciary shall be considered disabled or incapacitated when at least two of his or her attending physicians certify in writing to any other fiduciary then serving under this Agreement, to the Trust Protector and to MTC that his or her physical and/or mental state is so deteriorated that he or she is no longer able to attend to his or her own affairs without assistance. After a person is deemed to be disabled, he or she will continue to be so deemed until the Trustee then serving as successor to the disabled fiduciary receives a medical opinion letter written by at least one of his or her attending physicians stating that such person's physical and/or mental state is such that he or she is once again able and capable of attending to his or her own affairs without assistance.

By executing this Agreement or accepting appointment as a fiduciary hereunder, each individual fiduciary hereby authorizes each physician who examines such person to determine his or her incapacity and to disclose such physician's diagnosis or opinion in the manner provided under this paragraph. For purposes of the Health Insurance Portability and Accountability Act of 1996, pursuant to 45 CFR § 164.508, and solely for the purposes of making a determination of the individual fiduciary's disability and obtaining an affidavit of such disability by a physician, each individual fiduciary hereby authorizes any health care provider to disclose to MTC, a named successor trustee, a beneficiary, or the attorney-in-fact or personal representative of MTC or any beneficiary under this Agreement, by mail, fax, electronic transmission, or verbally, any pertinent individually identifiable health information, including any protected health information, sufficient to determine whether such individual fiduciary by reason of illness or mental or physical disability is unable to give prompt and intelligent consideration to financial matters. This consent shall be valid during any interval an individual is serving in any capacity as a fiduciary under this Agreement.

5.    <u>Disinterested Trustee</u>. "Disinterested Trustee" means a Trustee who (i) is not a person who is or in the future may be eligible to receive income or principal pursuant to the terms of the Trust, and (ii) is Independent Person with respect to MTC and the Trust, respectively.

6.    <u>Independent Person</u>. "Independent Person" means a person that meets all of the following requirements at all times during the Trust's existence: (i) the person is not an officer or other employee of the Trust or of a related organization, including but not limited to MTC or any affiliate thereof; (ii) the person does not receive total compensation or other payments exceeding $10,000 during the Trust's tax year from the Trust or from related organizations, including but not limited to MTC or any affiliate thereof, as an independent contractor or otherwise, other than reasonable compensation for services provided in any capacity hereunder; (iii) neither the person, nor a family member of the person, is or has

13

4828-4429-3817

been involved in a transaction with the Trust (whether directly or indirectly through affiliation with another organization) constituting a transaction with an Interested Person; and, (iv) neither the person nor any family member of the person, is or has been involved in a transaction with a taxable or tax-exempt related organization, including but not limited to MTC or any affiliate thereof, of a type and amount that would be reportable on IRS Schedule L (IRS Form 990 or 990-EZ), if required to be filed.

       7.     <u>Interested Person</u>. "Interested Person" means (a) any person currently being compensated by the Trust or MTC for services rendered to it within the previous twelve months, whether as a full- or part-time employee, independent contractor or otherwise, excluding any reasonable compensation paid to a Trustee as Trustee and (b) any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, daughter-in-law, mother-in-law or father-in-law of any such person.

       8.     <u>Real Property</u>. The term "Real Property" shall refer to any and all real property, including associated personal property, acquired by the Trust, either as a contribution by MTC or as a replacement thereto.

       9.     <u>Qualified Trustee</u>. For purposes of this Agreement, a Qualified Trustee shall be, in the case of a natural person, a resident of the State of Tennessee, or, in the case of a corporate fiduciary, a Trustee who is authorized by the State of Tennessee to act as a trustee and whose activities are subject to supervision by the Tennessee Department of Financial Institutions, the Federal Deposit Insurance Corporation (FDIC), the Comptroller of the Currency, or the Office of Thrift Supervision or any successor thereto.

     B.     <u>Spendthrift Clause</u>. This spendthrift clause shall apply to MTC. Except as otherwise provided herein, neither the principal of the Trust nor the income thereof while in the hands of the Trustees shall be subject to assignment, alienation, pledge, attachment, execution, or claims of creditors of MTC whomsoever through legal process, bankruptcy, operation of law, or otherwise. Any attempted sale, assignment, alienation, pledge, or attachment of the principal or income held in the Trust shall be null and void and shall not be recognized under any circumstances by the Trustees. In the event of any attempted sale, assignment, alienation, pledge, attachment, execution, or claim resulting from an act of MTC, whether voluntarily, involuntarily, by operation of law, by bankruptcy, or otherwise, with respect to the principal or income of the Trust, the Trustees are authorized to withhold from MTC all or part of any distribution otherwise payable thereunder to MTC until such attempted anticipation, voluntary or involuntary transfer, or lien is completely removed, during which time the Trustees may apply such distribution, or any part thereof, for the use and benefit of MTC in such amount or amounts and in such manner as the Qualified Trustees, in their sole and absolute discretion, may determine to be necessary for MTC, taking into consideration all financial resources of which the Trustees have actual knowledge. This spendthrift provision is material to the purpose for which MTC has created the Trust.

     C.     <u>*Situs* (Legal Location) of Trust</u>. The *situs* of the Trust may be changed by the Trustees; provided, however, that the new trust *situs* may only be a jurisdiction that provides similar creditor protection to that provided under the Tennessee Investment Services Act of 2007. A change in *situs* under this paragraph shall be final and binding and shall not be subject to judicial review. If the addition of a Trustee in the new *situs* requires the removal of one but not all current

14

4828-4429-3817

Trustees, the Trustee(s) to be removed shall be determined by MTC.

D.    Rule Against Perpetuities. The principal and undistributed income of the Trust shall vest in MTC three hundred sixty (360) years after the date of this Agreement (the "Termination Date"). At that time, the remaining trust estate of the Trust shall be discharged of any further trust and shall immediately vest in and be distributed to MTC.

E.    General Matters. The following general matters of construction shall apply to the provisions of this Agreement:

1.    State Law. The validity of this Agreement and questions with regard to the construction and administration of the Trust shall be determined by reference to the internal laws of the State of Tennessee without regard to its conflict of law provisions.

2.    Construction. Unless the context requires otherwise, words denoting the singular may be construed as denoting the plural, and words of the plural may be construed as denoting the singular. Words of one gender may be construed as denoting another gender as is appropriate within such context.

3.    Headings of Articles, Paragraphs, and Subparagraphs. The headings of articles, paragraphs, and subparagraphs used within this Agreement are included solely for the convenience and reference of the reader. They shall have no significance in the interpretation or construction of this Agreement.

4.    Notices. All written notices required to be given in this Agreement shall be delivered by either personally delivering such notice to the party requiring it, and securing a written receipt, or mailing such notice by registered or certified United States mail, return receipt requested, or via nationally recognized overnight carrier, to the last known address of the party requiring notice. The effective date of the written notice shall be the date of the written receipt or the date of the return receipt, if received, or if not, the date it would normally have been received via registered or certified mail, provided there is evidence of mailing; with respect to a nationally recognized overnight carrier, the effective date shall be the date notice was delivered.

5.    Severability. If any provision of this Agreement is declared by a court of competent jurisdiction to be invalid for any reason, such invalidity shall not affect the remaining provisions of this Agreement. The remaining provisions shall be fully severable, and this Agreement shall be construed and enforced as if the invalid provision had never been included in this Agreement.

6.    Reliance Upon Certified Copy of Agreement. Any person may rely on a copy, certified by a notary public, of the executed original of this Agreement, and of any of the notations on it and writings attached to it, as fully as they might rely on the original documents themselves. Any such person may rely fully on any statements of fact certified by anyone who appears from such original documents or from such certified copy to be a trustee under this Agreement. No one dealing with the Trustees need inquire concerning the validity of anything the Trustees purport to do. No one dealing with the Trustees need see to the application of anything paid or transferred to or upon the order of the Trustees

4828-4429-3817

15

of the Trust.

7.     Gender: Number. Words of any gender, including pronouns, shall be deemed to include the other gender, as appropriate, and the references to the singular shall include the plural, and vice versa, unless the context indicates such a reading would be inappropriate.

8.     Fiduciary Liability. T.C.A. § 35-3-117(b) shall not apply to any corporate fiduciary serving as Trustee for any trust(s) created hereunder.

9.     Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

## Article IX.
## Execution

The Grantor certifies that the Grantor has read the foregoing Agreement, and that it correctly states the terms and conditions under which the trust property is to be held, managed, and disposed of by the Trustees. The Grantor approves this irrevocable trust agreement in all particulars, and requests the Trustees to execute it.

IN WITNESS WHEREOF, the Grantor hereby executes this irrevocable trust agreement on the day and year first written above.

FOR THE MIDDLE TENNESSEE COUNCIL, INC., BOY SCOUTS OF AMERICA

By:    Larry Brown, Council Scout Executive

By:    John Bright Cage, Council President

16

4828-4429-3817

of the Trust.

      7.    <u>Gender; Number</u>. Words of any gender, including pronouns, shall be deemed to include the other gender, as appropriate, and the references to the singular shall include the plural, and vice versa, unless the context indicates such a reading would be inappropriate.

      8.    <u>Fiduciary Liability</u>. T.C.A. § 35-3-117(b) shall not apply to any corporate fiduciary serving as Trustee for any trust(s) created hereunder.

      9.    <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

## Article IX.
## Execution

The Grantor certifies that the Grantor has read the foregoing Agreement, and that it correctly states the terms and conditions under which the trust property is to be held, managed, and disposed of by the Trustees. The Grantor approves this irrevocable trust agreement in all particulars, and requests the Trustees to execute it.

IN WITNESS WHEREOF, the Grantor hereby executes this irrevocable trust agreement on the day and year first written above.

**FOR THE MIDDLE TENNESSEE COUNCIL, INC., BOY SCOUTS OF AMERICA**

By:   Larry Brown, Council Scout Executive

By:   John Bright Cage, Council President

16

4828-4429-3817

**<u>Trustee's Acceptance</u>**

Clay Bright hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____

Clay Bright

4828-4429-3817.15

17

### Trustee's Acceptance

Harris Haston hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
Harris Haston

18

4828-4429-3817

**Trustee's Acceptance**

John Harney hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
John Harney

19

4828-4429-3817

**<u>Trustee's Acceptance</u>**

Phil Pfeffer hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
Phil Pfeffer

20

4828-4429-3817

**Trustee's Acceptance**

Rob McCabe hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
Rob McCabe

21

4828-4429-3817

### **Trustee's Acceptance**

Steve Blackmon hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
Steve Blackmon

22

4828-4429-3817

**Trustee's Acceptance**

Craig Becker hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
Craig Becker

4828-4429-3817

Book RB107 Page 809

**Trustee's Acceptance**

Hill McAlister hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____

Hill McAlister

4828-4429-3817

Book RB107 Page 810

**Trustee's Acceptance**

Greg Cashion hereby signs this Agreement to evidence acceptance of the terms, conditions, and provisions thereof, effective as of the 12th day of June, 2020.

_____
Greg Cashion

25

4828-4429-3817