## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: Feb. 17, 2021 at 10:00 a.m. (ET)**<br>**Obj. Deadline: Feb. 5, 2021 at 4:00 p.m. (ET)** |

## HARTFORD AND CENTURY'S MOTION FOR AN ORDER
## (I) AUTHORIZING CERTAIN RULE 2004 DISCOVERY AND
## (II) GRANTING LEAVE FROM LOCAL RULE 3007-1(f)
## TO PERMIT THE FILING OF SUBSTANTIVE OMNIBUS OBJECTIONS

Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company (collectively, "**Hartford**"), and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America ("**Century**"),[2] hereby move this Court for an Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing Hartford and Century to serve subpoenas, written discovery, including interrogatories and document requests, and deposition notices pursuant to Rule 2004 on a sampling of persons who have filed sexual abuse claims ("**Abuse Claims**") in these cases and (ii) providing relief from the requirements of Local Rule 3007-1(f) to permit (but not require) parties in interest in these Chapter 11 cases to file omnibus claim objections raising common legal issues to multiple claims and that may, most efficiently, be subject to resolution if heard together. In support of this motion (the "Motion"),

---

[1]      The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]      Arrowood Indemnity Company, formerly known as Royal Indemnity Company also joins in this motion and is included in the signature block.

Hartford and Century respectfully state the following:

## Preliminary Statement

1.      The Boy Scouts of America and its affiliate Delaware BSA, LLC (together, "**BSA**") filed these bankruptcy cases in February 2020 to address the Abuse Claims facing the organization. At the time, BSA was aware of 275 sexual abuse lawsuits filed against it, as well as an additional 1,400 claims that had not been filed in court, but had been the subject of written correspondence, for a total of approximately 1,700 Abuse Claims.[3]  Now, less than a year later, following a highly aggressive media advertising campaign by a group of plaintiffs' lawyers that effectively promised claimants easy access to a billion-dollar bankruptcy trust without any meaningful scrutiny of their allegations, BSA is facing more than 95,000 claims.

2.      The extraordinary claim-mining operation by these plaintiffs' firms has led to the filing of proofs of claim that are deficient on their face, which warrants further investigation into those and the other claims filed in these cases.  Unless there is real scrutiny of the claims, plaintiffs' counsel will have created a potentially insurmountable obstacle to confirming a plan of reorganization because Hartford, Century and other parties in interest will not be willing to fund a plan based on the incredible assumption that there are in excess of 95,000 allowable claims.

3.      Hartford and Century are prepared to be constructive.  Both insurers have been participating in the ongoing mediation process with BSA and its stakeholders to explore possible paths to a viable plan that would allow BSA to emerge from bankruptcy and continue its mission, while at the same time addressing its legitimate legacy liabilities.  But it will be impossible to achieve that goal if the presumptive starting point for negotiations is that the incredible increase in claims—from 1,700 pending or alleged claims on the petition date to more than 95,000 proofs of

---

[3]      *Debtor's Informational Brief* at 3 (Feb. 18, 2020) [D.I. 4].

claim today—is taken at face value.  Before there can be any real headway in negotiating a plan, this more than 55-fold increase in new claims needs to be carefully investigated, and invalid claims need to be disallowed, as the Bankruptcy Code requires.  *See* 11 U.S.C. § 502(b)(1).

4.     As an initial step toward that end, Hartford and Century bring this motion for leave to serve discovery pursuant to Bankruptcy Rule 2004 on a sample of claimants and for an order establishing an efficient process for filing multiple omnibus objections to claims.  In a separate but related motion filed concurrently, Century and Hartford seek discovery from a discrete set of plaintiffs' lawyers who filed implausibly large numbers of proofs of claim and the claims aggregators that helped to generate these claims.  Through these motions, Hartford and Century seek to investigate the circumstances that resulted in the staggering explosion in claims and to determine the extent to which that process, led by plaintiffs' lawyers and for-profit claims aggregators with a monetary incentive to encourage as many claims as possible, has generated invalid proofs of claims that are unenforceable against BSA under applicable non-bankruptcy law.

**A.     From the Outset, Certain Plaintiffs' Lawyers Engaged in an Unprecedented Marketing Campaign Intended to Generate Massive Numbers of Claims, <u>Irrespective of Their Validity</u>.**

5.     The need for discovery of the Abuse Claims is compelling.  The events leading up to the filing of over 95,000 such claims against BSA are, to say the least, disturbing.  As this Court is aware, certain plaintiffs' lawyers, including a group referring to itself as the Coalition of Abused Scouts for Justice (the "**<u>Coalition</u>**"), pursued an aggressive media advertising campaign with the stated goal of generating a supermajority of claims.  As Tim Kosnoff, one of the architects of this effort, admitted in a candid e-mail, the objective was to "keep focused on our marketing and media efforts going full tilt in to Nov [2020]," so that "[w]e control 80% of the claims, i.e., our coalition

controls the case."[4]   With this relentless focus on maximizing claim counts—and with correspondingly little incentive to vet the underlying merits of the claims—these groups ran thousands of television, radio and internet advertisements that were riddled with falsehoods.[5]

6.     As BSA documented in a motion it was forced to bring in this Court, the advertisements included demonstrably untrue statements that claims could be filed "anonymously"; that financial compensation was "ensured" and "substantial"; that a fund was "being set up that may be worth over $1.5 billion"; and that potential claimants only needed to contact one of the plaintiffs' lawyers or call a hotline to submit claims.[6]  This Court ultimately ordered the lawyers to stop running ads containing such "false and misleading" information, including statements that claims could remain "anonymous," "reference[s] to a $1.5 billion compensation trust," and assertions that claimants "will never have to be deposed, appear in Court or otherwise prove their claims."[7]

## B.     That Campaign Worked as Intended, Resulting in Thousands of Suspect Claims That Appear Unsubstantiated, Fraudulent or Otherwise Invalid.

7.     By the time the Court entered its order, the damage was done.  As BSA warned at the time, "the ads' false promises of recovery and references to $1.5 billion of funds are likely to encourage fraudulent claims[.]"[8]  The results of the Coalition's efforts confirm that those warnings

---

[4]     *See* E-mail of Mr. Kosnoff dated June 28, 2020, attached as Ex. 1 to the *Notice of Filing of Exhibit in Support of the Objection of the Tort Claimants' Committee to Motion of the Coalition of Abused Scouts for Justice for an Order (I) Authorizing the Coalition to File Under Seal Exhibit A to the Amended 2019 Statement and (II) Approving the Sufficiency of the Amended 2019 Statement* (Sept. 8, 2020) [D.I. 1285-1].

[5]     *See Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and ¶ 27 of the Bar Date Order for Entry of an Order (I) Supplementing the Bar Date Order and (II) Granting Related Relief* ("**Debtors' Mot. Order Supplementing Bar Date Order**") at 3 (Aug. 25, 2020) [D.I. 1145].

[6]     *Debtors' Mot. Order Supplementing Bar Date Order* at 3-4 (Aug. 25, 2020) [D.I. 1145].

[7]     *Supplemental Order to Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1 For Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approve Confidentiality Procedures for Abuse Survivors* at 5-7 (Sept. 16, 2020) [D.I. 1331].

[8]     *Debtors' Mot. Order Supplementing Bar Date Order* at 4 (Aug. 25, 2020) [D.I. 1145].

were on target.  Because of the timing of the filing and uploading of the proofs of claim, Hartford

and Century have only been able to start their investigations.  Still, they have already uncovered

evidence of outright fraud.

8.      The following are just some examples.  In response to the filings of proofs of

claims, a claimant's mother e-mailed BSA that her son was not molested, but saw the

advertisements and wanted to make money;[9] a claimant's brother e-mailed BSA that the claimant

was never in Boy Scouts, was not molested and made a fraudulent claim (and he suspects others

have done the same);[10] a distressed former scoutmaster e-mailed that an accusation against a

deceased scoutmaster is false and was made by a claimant to "try and get some quick cash" only

after he learned that the accused perpetrator is dead and cannot defend himself;[11] an accused

perpetrator e-mailed that he was a college student in Georgia at the time he was accused of

committing acts of abuse in Kentucky and, in fact, did not move to Kentucky until more than a

decade later;[12] and an individual called one of the local councils stating that he had evidence a

claimant had made a false claim.[13]

9.      As part of Hartford's initial investigation, it retained a reputable investigative firm,

HUB Enterprises, Inc. ("**HUB**"), to investigate the public records and social media postings of 100

claimants who filed proofs of claim.  From that subset, HUB found evidence that calls into question

the credibility of a substantial number of the claims.  That evidence ranges from claimants

convicted of tax fraud;[14] to claimants convicted of forgery, identity theft and/or making false

---

[9]      *See* Exhibit 1 to *the Declaration of Joshua D. Weinberg* ("**Weinberg Decl.**") (Nov. 16, 2020 e-mail regarding Claimant No. 6796).

[10]     *See Weinberg Decl.*, Ex. 2 (Nov. 25, 2020 e-mail regarding Claimant No. 41376).

[11]     *See Weinberg Decl.*, Ex. 3 (Sept. 15, 2020 e-mail regarding Claimant No. 10773).

[12]     *See Weinberg Decl.*, Ex. 4 (Nov. 19, 2020 e-mail regarding Claimant No. 34586).

[13]     *See Weinberg Decl.*, Ex. 5 (Dec. 22, 2020 e-mail regarding Claimant No. 43138).

[14]     *See* Exhibits 1-3 to the *Declaration of Todd Mercier* ("**Mercier Decl.**") (Claimant No. 40223 - Grand Jury Charges (Ex. 1), Amended Judgment (Ex. 2) and News Article (Ex.3)).

insurance claims;[15] to claimants making false statements to the police;[16] to claimants convicted of theft, robbery and/or burglary;[17] and to claimants convicted of child molestation and other sex acts.[18] And, on top of this, HUB found social media evidence refuting claimants' statements in their proofs of claim regarding the impact the alleged abuse has had on their quality of life, such as their ability to sustain marital relationships, family relationships and employment.[19]

10.    Century's preliminary investigation also uncovered irregularities. Century retained handwriting and document forensics experts to review a sample of the claims submitted by attorneys who signed and filed hundreds of claims on a single day. Erich Speckin, the document forensics expert, describes the approach he took in his supporting declaration to determine who actually created the proofs of claim and how they were generated. Those findings are set forth in the accompanying brief seeking discovery from the mass-filing lawyers, particularly in sections E, F and G.

11.    Review of the claim forms themselves only heightens concern about the Abuse Claims. For example, many claimants represented by the same counsel describe their abuse in

---

[15]    *See*, *e.g.*, *Mercier Decl.*, Ex. 4 (Claimant No. 66755 - Court Docket); Exs. 5-6 (Claimant No. 30035 - Court Dockets); Ex. 7 (Claimant No. 49573 - Relevant Portions of Licensed Investigator Comprehensive Report); Ex. 8 (Claimant No. 48271 - Relevant Portions of Licensed Investigator Comprehensive Report); Ex. 9 (Claimant No. 82094 - Court Docket); Ex. 10 (Claimant No. 40053 - Court Docket).

[16]    *See*, *e.g.*, *Mercier Decl.*, Ex. 11 (Claimant 56732 - Relevant Portions of Licensed Investigator Comprehensive Report).

[17]    *See*, *e.g.*, *Mercier Decl.*, Ex. 12 (Claimant 78740 - Relevant Portions of Licensed Investigator Comprehensive Report); Ex. 13 (Claimant 11743 - Relevant Portions of Licensed Investigator Comprehensive Report); Exs. 14-19 (Claimant 63099 - Court Dockets); Ex. 20 (Claimant 80789 - Court Docket); Ex. 21 (Claimant 79863 - Court Docket); Ex. 22 (Claimant 25101 - Relevant Portions of Licensed Investigator Comprehensive Report); Ex. 23 (Claimant 76396 - Relevant Portions of Licensed Investigator Comprehensive Report). A number of these claims also involved theft by deception. *See*, *e.g.*, *Mercier Decl.*, Ex. 24 (Claimant 43017 - Court Docket); Ex. 25 (Claimant 70625 - Court Docket).

[18]    *See*, *e.g.*, *Mercier Decl.*, Ex. 26 (Claimant 21022 - North Carolina Offender Registry Printout); Ex. 27 (Claimant 96710 - Florida Department of Law Enforcement Sexual Offender Printout); Ex. 28 (Claimant 75001 - Illinois State Police Integrity Service Pride Printout).

[19]    *See*, *e.g.*, *Mercier Decl.*, Ex. 29 (Claimant 33752 - Social Media Postings reflecting successful marriage since 1978, positive friendship with work supervisor, and thanks for "2 of the greatest gifts The Lord has ever blessed me with, my grandchildren. . . .").

identical terms, raising serious questions about coaching, if not outright fabrication, by plaintiffs'

counsel and for-profit claims aggregators:



12.    Another set of lawyers signed

██████████████████████████████████████████████████████████

One lawyer, ████████████████████████████████████████████████

was not the only attorney with blank filings.[21]

13.     Many other proof of claims are simply not supported by any facts.  Indeed, when Hartford proposed to meet and confer with the claimants from whom discovery is sought, ████

██████████████████████████████████████████████████████████

█████████████████████████████████████  Hartford and Century suspect that this claimant's admission that he cannot support his claim is not unique.

14.     Hartford and Century's investigations continue.  But the preliminary investigations leave no doubt that many of the Abuse Claims are highly suspicious.  And, there are serious questions regarding how these claims were generated and vetted (if at all) by plaintiffs' counsel.

**C.     Thousands of Claims May be Legally Deficient, But Require Further Discovery.**

15.     These concerns do not substitute for, and are in addition to, the thousands of claims that appear on their face to be time-barred, or to lack essential information necessary to establish a valid claim against the Debtors.  Taken together, the facial deficiencies on the proofs of claim leave no doubt that real discovery into the claims is warranted.  For example:

- ████ Abuse Claims appear to be duplicates—two or more proofs of claim filed on behalf of the same claimant;[23]

- approximately ████ Abuse Claims do not appear to identify a perpetrator or

---

[20]     *See Declaration of Paul J. Hinton* ("**Hinton Decl.**") ¶ 13, filed Jan. 22, 2021 by Century; *Declaration of Erich J. Speckin* ("**Speckin Decl.**") ¶ 14, filed Jan. 22, 2012 by Century.

[21]     *Id.*

[22]     *See Weinberg Decl.*, Ex. 6 (Jan. 16, 2021 e-mail from Claimant No. 2432 to Michele Backus).

[23]     *See Declaration of Denise Neumann Martin, Ph.D.* ("**Martin Decl.**") ¶ 8.

provide information that would permit the identification of a perpetrator;[24]

- approximately ███ Abuse Claims do not identify an affiliation with Scouting;[25]

- approximately ███ Abuse Claims have already been the subject of litigation (approximately ███ of which have already received some form of payment);[26]

- at least ███ Abuse Claims appear to be time-barred under the applicable statute of limitations;[27] and

- thousands more claims were signed only by counsel, not by the claimant, with no evidence to show that counsel has knowledge of facts to support the claim, or even that counsel was authorized to sign on behalf of the claimant.[28]  In several instances, attorneys filed hundreds of proofs of claim in a single day, or appear to have applied a photocopied signature to proofs of claim.[29]  There is no indication that the claimants themselves had signed off on the content of the proofs of claim or even reviewed the claims before counsel filed them.

16.    No one doubts that there are real victims at issue here.  But the misleading solicitation of claimants and failure to vet proofs of claim described above have tainted the proof of claim process with a flood of tens of thousands of apparently invalid Abuse Claims.

17.    Hartford and Century accordingly seek leave, as described more fully below, to take written discovery from, and to depose, a sample of claimants to examine the circumstances surrounding the filing of their proofs of claim and to test the validity of those claims.  The written discovery is aimed to elicit (i) information about the claims, including further details about the

---

[24]    *Id.*
[25]    *Id.*
[26]    *Id.*
[27]    *Id.*
[28]    *See Hinton Decl.* ¶ 7; *Speckin Decl.* ¶¶ 7-14.
[29]    *Id.*

alleged abuse (details the claimants' attorneys themselves say is necessary to evaluate their demands), (ii) information about the timeliness of the claims under various state laws, and (iii) information about claims previously asserted and resolved involving the same alleged abuse. Hartford and Century expect that the written discovery responses will be followed by depositions for a subset of the 1,400 claimants on whom they seek to serve written discovery. Again, discovery is needed to vet the claims and the claim generation process. And, to promote an efficient claims-objection process, Hartford and Century also seek approval of procedures designed to permit the filing of multiple omnibus objections seeking to disallow certain categories of claims as a matter of law.

18.    The relief sought by this motion is only a first step, and Hartford and Century anticipate that further relief will likely be necessary. Indeed, depending on what the requested discovery reveals, Hartford and Century may need to request the appointment of an examiner to conduct a formal investigation of the solicitation and filing of proofs of claim in these cases.

19.    But it is important that an investigation of the abuse proofs of claim begins now. Time is of the essence. The mediators have established an ambitious schedule. And, the Debtors have charted an equally ambitious schedule for plan confirmation, advising that they must emerge from bankruptcy by August 2021. But the parties cannot even take the first step toward resolution of these cases until there is some common ground regarding the number of valid Abuse Claims.

20.    This is not just Hartford and Century's concern. All of the parties—as well as abuse claimants with valid claims—have a shared interest in ensuring that invalid proofs of claim are not allowed against BSA's estate. And even if agreement on a consensual plan of reorganization cannot be reached, the relief sought in this motion will be essential to determining voting procedures and to evaluating the lawfulness of any cram-down plan of reorganization and/or trust

distribution procedures to liquidate claims that may be filed in these cases. The Court should grant the motion.

## Jurisdiction and Venue

21.     The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.[30]

22.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

23.     The bases for the relief requested herein are Section 502 of the Bankruptcy Code, 11 U.S.C. § 502, Rules 2004 and 3007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 1001-1, 2004-1 and 3007-1.

## Relief Requested

24.     Hartford and Century seek to assess the proofs of claim asserting Abuse Claims by taking limited written and deposition discovery from a sample of individuals who have filed Abuse Claims pertaining to issues common to many of those claims. Hartford and Century expect that, following such discovery, they (and other parties in interest) may be able to assert common omnibus objections to certain categories of proofs of claim, streamlining the claim objection process. Hartford and Century accordingly request that the Court enter an Order, substantially in the form attached as **Exhibit A**, (i) authorizing Hartford and Century to issue subpoenas and seek discovery, including interrogatories, document discovery and deposition testimony, substantially in the form reflected in **Exhibit B** from the abuse claimants identified on **Exhibit C** (with such

---

[30]     Hartford and Century confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

minor modifications in the discovery and in the identity of the claimants as may be appropriate

following further investigation and discussions with their counsel), and (ii) granting relief from

certain of the requirements set forth in Local Rule 3007-1(f) to permit parties in interest to file

omnibus objections to proofs of claim in an orderly and efficient manner.

<u>**Basis for the Requested Relief**</u>

**A.     Hartford and Century Are Entitled to Take Rule 2004 Discovery of the Abuse
        Claims.**

25.     Rule 2004 provides that "[o]n the motion of any party in interest, the court may

order the examination of any entity[]" relating to (among other things) "the acts, conduct, or . . .

liabilities and financial condition of the debtor," or "any matter which may affect the

administration of the debtor's estate," and "any other matter relevant to the [Chapter 11] case or

to the formulation of a plan." *See* Fed. R. Bankr. P. 2004(a)-(b).

26.     Courts have consistently recognized that Rule 2004 gives parties-in-interest great

latitude in seeking discovery concerning the debtor, including its liabilities. *See, e.g., In re
Teleglobe Comm'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007); *In re Millennium Lab Holdings
II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) ("[T]he scope of Rule 2004 is broad").  In the
*USG* bankruptcy, the court collected basic information that allowed it to "reject unsubstantiated
claims, bogus medical evidence and fanciful theories of causation" and identify claimants who
were "truly harmed." *In re USG Corp.*, 290 B.R. 223, 225 (Bankr. D. Del. 2003).  Likewise, in
the *G-I Holdings* bankruptcy, the court ordered initial disclosures that allowed the debtor to object
to claims it believed were "illegitimate or dispensable as a matter of law." *In re G-I Holdings
Corp.*, 323 B.R. 583, 622–23 (Bankr. D.N.J. 2005).

27.     Rule 2004 authorizes discovery regarding the "validity of [creditors'] various

proofs of claim. . . ." *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011).

Section 502 of the Bankruptcy Code mandates that, upon objection by any party in interest, a proof of claim "shall" be disallowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ."  11 U.S.C. § 502(b)(1); *Travelers Cas. and Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-452 (2007). Discovery into the validity of proofs of claim under applicable law is accordingly well within the scope of Rule 2004 as it is "clearly related to the debtors' liabilities and the amounts to be paid under [the debtor's] plan[]."  *Subpoena Duces Tecum*, 461 B.R. at 829.  Such discovery is particularly appropriate where, as here, there are "concerns . . . suggesting the possible existence of abuse in the proof of claim process."  *Id.* (granting Rule 2004 motion seeking discovery of mortgage lender's proofs of claim); *In re Michalski*, 449 B.R. 273, 281-282 (Bankr. N.D. Ohio 2011) (same).

28.    Hartford and Century issued general liability insurance policies to BSA.  Hartford and Century expect that the BSA and/or claimants will seek recovery from them for Abuse Claims filed in these cases.  Hartford and Century accordingly have an interest in assessing the extent to which Abuse Claims are allowable and/or compensable.   Indeed, all parties with alleged responsibility to pay for such Claims, including BSA, the local councils, the sponsoring organizations, and BSA's other insurers—as well as claimants with valid claims whose recovery would be diluted if invalid proofs of claim were allowed—have a shared interest in ensuring that invalid Abuse Claims are not allowed in these cases.  A global resolution of these cases will be possible only if the parties are able to identify and exclude illegitimate or invalid claims and thus arrive at realistic terms for a settlement and a potential consensual plan.  Identifying invalid claims will also be critical to assessing the lawfulness of any non-consensual plan that seeks to address

the liquidation and allowance of the Abuse Claims and to pay those claims from the available resources.

      **B.**      **The Proofs of Claim Raise Significant Concerns Regarding Their Validity <u>and Timeliness</u>.**

      29.      The discovery that Hartford and Century seek from a sample of claimants is relevant and necessary because a substantial number of proofs of claim are deficient on their face, and may not be allowable. Discovery regarding these claims is critical to identify whether, and to what extent, these claims are invalid, rather than just the product of an incomplete claim form. That discovery should go forward now, both to aid the parties in trying to achieve a realistic settlement, and so that the parties can be prepared for a contested confirmation process if no settlement is achieved, particularly given the Debtors' aggressive schedule.

      30.      The proofs of claim themselves indicate widespread problems in the claim aggregation process, and many appear to be deficient on their face. For example, as discussed more fully above, ███ Abuse Claims appear to be duplicates—two or more proofs of claim filed on behalf of the same claimant, many by different plaintiffs' lawyers, asserting the very same claim. It is alarming, to say the least, that more than ███ of the Abuse Claims filed in these cases is a duplicate. This illustrates the plaintiffs' lawyers' drive to maximize the claim count at all costs, and this alone warrants further analysis.

      31.      In addition, thousands of Abuse Claims fail to allege even the most basic information required to state a claim against BSA. More than ███ claims fail to identify any allegations of physical abuse, and more than ███ claims do not provide any meaningful information to identify the individual who allegedly abused the claimant. And, more than ███

of the Abuse Claims fail to allege any affiliation with scouting.  The lack of even the most basic collaborating information calls into question the legitimacy of the claims.

32.    Thousands of other proofs of claim were signed only by counsel, not the claimant, with no evidence to suggest that counsel has knowledge of facts to support the claim, or even that counsel was authorized to sign the claim form on behalf of the claimant.[31]  In some cases, individual lawyers signed hundreds of claims a day, with no indication that the claimants themselves signed off on the content of the proofs of claim or even reviewed them before plaintiffs' counsel filed them.[32]

33.    Many of the proofs of claim also appear to have been filed by individuals who previously settled their claims with BSA.  Hartford's preliminary analysis, for example, shows that approximately ███ Abuse Claims have already been the subject of litigation, and approximately ███ claimants already received some form of payment.

34.    All of these categories appear problematic, and discovery into the validity of these claims is warranted.  Where claimants state they were not involved in scouting, for example, parties in interest should be permitted to seek information concerning (among other things) whether the claimant had some other connection to scouting (*e.g.*, a family member involvement) or whether the claim simply has no conceivable basis.

35.    Similarly, ████████ of Abuse Claims appear to be time-barred on their face because they allege abuse that occurred decades ago.  But some claimants or their lawyers assert that their claims are not time-barred under discovery rules in various states, under which the applicable statute of limitation runs from the date the claimant becomes aware of his injury and/or

---

[31]    *See Hinton Decl.* ¶ 7; *Speckin Decl.* ¶¶ 7-14.
[32]    *Id.*

becomes aware that the injury was the result of sexual abuse.  As a result, Hartford and Century need to investigate plaintiffs' contentions.

36.    Indeed, the proof of claim form for Abuse Claims does not provide sufficient information to determine whether claims alleging abuse in states employing these rules are time-barred.  For example, the claim forms do not require claimants to identify when they sought treatment for any injury resulting from the alleged abuse.  Nor do the forms require claimants to provide complete information about when and to whom they disclosed the alleged abuse.

37.    This information is necessary to evaluate the timeliness of claims alleging abuse in many states.  These include Florida, where the statute of limitations begins to run when the claimant reasonably "should know of the tortious act giving rise to the cause of action," *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000), and New Mexico, the location of BSA's Philmont adventure camp, where the limitations period starts when the claimant first seeks medical treatment.  *See* NM ST § 37-1-30.  Approximately ███ claimants allege abuse in Florida and approximately ██ allege abuse in New Mexico.  Other states where abuse involving thousands of other claimants allegedly occurred have similar rules that provide for a limited window to file suit once the claimant's injury becomes apparent.[33]  *See, e.g.,* CO ST § 13-80-108 (cause of action accrues under Colorado law on the date "both the injury and its cause are known or should have been known by the exercise of reasonable diligence."); *Keller v. Maccubbin*, No. K11C-03-015 (RBY), 2012 WL 1980417, at *3 (Del. Super. Ct. May 16, 2012) (providing for tolling for repressed memories—"under such circumstances, the injury is deemed 'sustained' when the

---

[33]    At least twenty-six states employ some type of discovery rule to the applicable statute of limitations:  Alaska, Arkansas, Colorado, Delaware, Florida, Idaho, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Oregon, Rhode Island, South Carolina, Tennessee, Utah, Washington and Wyoming.  This does not include states, such as New York and New Jersey, that currently have re-opened their limitation windows pursuant to current reviver statutes.

harmful effect first manifests itself and becomes physically ascertainable."); *Lemmerman v. Fealk*, 534 N.W.2d 695, 699 (Mich. 1995) (explaining the limited circumstances under which the discovery rule may apply in Michigan to toll the statute of limitations). The parties need additional discovery from the relevant claimants to apply these discovery rules.

38.    The majority of the Abuse Claims filed in these cases fall into one or more of the categories identified above. The sheer number of claims that appear to be deficient reflects the systemic problems with the manner in which claimants have been solicited and brought into these cases—through an advertising campaign that (as Mr. Kosnoff's e-mail confirms) plaintiffs' counsel plainly aimed at driving up the claim count irrespective of the merits of the claims.

### C.    Hartford and Century's Proposed Discovery Is Relevant and Not Overly Burdensome.

39.    Hartford and Century seek to serve interrogatories and document requests set forth in **Exhibit B** on the holders of approximately 1,400 filed proofs of claim identified in **Exhibit C**, which comprise slightly more than one percent of the total number of filed proofs of claim, to determine whether the underlying Abuse Claims are invalid. The claimants identified in **Exhibit C** were selected by Hartford's economic consultant, Denise Neumann Martin, Ph.D. of NERA, who designed a sample of claims from which statistically significant inferences can be drawn concerning the entire claim population.[34]

40.    The discovery requests that Hartford and Century propose to serve on the sample of claimants are narrowly tailored. The handful of document requests seek documents directly relating to the Abuse Claim at issue, including any prior written assertion of the claim, any documents reflecting medical or other treatment, and similar information. The interrogatories are

---

[34]    The methodology used to draw the sample is described in the accompanying declaration of Denise Neumann Martin, a principal at NERA at ¶¶ 3-7.

similarly few in number and targeted in scope.[35]  They are aimed at core issues that the claimants themselves—the Official Committee of Tort Claimant (the "TCC") and the Coalition—have raised in these cases, including information, such as the facts supporting allegations of repressed memories, that is frequently omitted from the proofs of claim that were filed in these cases.

41.    Once document discovery is complete, Hartford and Century would then depose a smaller subset of this relatively small sample.  Absent excessive objections, they expect that most such depositions will last only a few hours.

42.    Hartford and Century are aware of the aggressive schedule that has been proposed by the Debtors for these cases, and are prepared to act quickly to complete the discovery sought. To the extent that a proof of claim indicates that the claimant is represented by counsel, Hartford and Century will serve the written discovery on the claimant through such counsel.  The claimants would have thirty (30) days to provide written responses and produce documents responsive to Hartford and Century's requests.

43.    Once Hartford and Century receive responses, they will act promptly to address and attempt to resolve discovery objections.  Hartford and Century would then also move promptly— no later than fourteen (14) days from receiving final and complete responses or the time to do so has run—to identify up to one hundred (100) of the claimants to depose based on the document and interrogatory discovery.  In the separate motion that is being filed concurrently, Century and Hartford seek discovery from a discrete set of attorneys who signed large numbers of proofs of claim within a very short period of time.

---

[35]      Bankruptcy courts in this district have permitted the use of interrogatories under Rule 2004.  *See In re Discovery Zone, Inc.*, No. 99-941 (PJW), 2001 WL 1819994 (Bankr. D. Del. Sept. 14, 2001).  Here, the alternative to such interrogatories—that Hartford and Century depose each of the approximately 1,400 claimants in the sample—is not practical, particularly in the proposed time frame for the mediation and the plan process.

44.     The discovery that Hartford and Century propose here is not intended to elicit all information that would be required to resolve the *bona fides* of all of the filed proofs of claim.  But it does present a limited set of requests for information that should help resolve discrete and potentially dispositive issues relating to BSA's liability that are common to a significant number of claims.  This discovery falls well within the scope of Rule 2004.

**D.      The Court Should Grant Appropriate Relief From Certain Provisions of Local Rule 3007-1(f) to Permit Filing of Issue-Based Omnibus Objections That May <u>Advance These Cases</u>.**

45.     Hartford and Century's Rule 2004 requests are intended to discover information regarding certain categories of Abuse Claims that share the same apparent defect.  The efficient conduct of these cases warrants the adoption of procedures that allow for omnibus objections under Bankruptcy Code § 502 and Local Rule 3007, so that the parties can address, and the Court can resolve, issues common to a particular category of Abuse Claims through a single objection covering all such Abuse Claims.  Such relief is particularly appropriate in these cases given the ambitious schedule that the mediators have set for the pending mediation and the aggressive schedule for plan confirmation that the Debtors have announced they intend to pursue.

46.     Strict application of the local bankruptcy rules applicable to substantive claim objections would make the assertion and resolution of such categorical objections essentially impossible.  The local rules provide that substantive objections, including those based on statutes of limitation, must be filed separately for each claim, except for up to two omnibus objections of up to 150 claims per month.  In addition, the local rules require that a substantive claim objection include *all* substantive grounds for objection to the claim in a single objection.  *See* Local Rule 3007-1(f).

47.     The Court has the discretion to modify these rules.  *See* Local Rule 1001(c) ("The application of these Local Rules in any case or proceeding may be modified by the Court in the interest of justice.").  It should do so in light of the facts of these unique cases.  The alternative— individual objections to tens of thousands of proofs of claim—would be not just burdensome, but administratively unworkable.  Categorical objections, which assert a specific objection applicable to a group of Abuse Claims, are the best way to assert and resolve such common legal issues, without requiring objectors and claimants to engage in scorched-earth discovery on issues that may never come into play.

        1.     **Local Rule 3007-1(f)(i) and (ii).**

48.     As noted, pursuant to the Local Rules, omnibus claim objections raising substantive grounds, including statutes of limitations, may contain no more than 150 claims per objection, and only two such objections may be filed per month.  *See* Local Rule 3007-1(f)(i)-(ii).  So, even though more than 95,000 Abuse Claims were filed prior to the Bar Date, Hartford and Century (or any other objecting parties) would be limited to filing substantive objections to only 300 claims per month.  At that rate, it likely would take years to file and serve objections to all of the claims that Hartford and Century have identified as potentially subject to statutes of limitations or other legal objections.

49.     In the absence of relief from Local Rule 3007-1(f)(i) and (ii), Hartford, Century and other parties in interest would be forced to either (i) saddle the parties (and the Court) with a near-endless *seriatim* filing of potentially thousands of single claim objections; or (ii) seek a protracted period of potentially years in which to file two-per-month omnibus objections to satisfy the timing limitations of the rule.  Neither of those alternatives makes sense.  Courts in this district have granted relief from the filing limitations in other cases where the debtor faced far fewer claims.

*See, e.g.,* Order Modifying the Requirements of Local Rule 3007-1(f)(i) With Respect to Number of Permitted Substantive Omnibus Objections to Claims, *In Re PES Holdings, LLC*, (Del. Dec. 9, 2019) (No. 19-11626 (KG)); Order Modifying the Requirements of Local Rule 3007-1(f)(1) with Respect to Number of Permitted Substantive Omnibus Objections to Claims, *In re TK Holdings, Inc.*, (Bankr. D. Del. Aug. 27, 2018) (No. 17-11375 (BLS)); Order Waiving Local Bankruptcy Rule 3007-1(f)(ii), *In re Energy Future Holdings Corp.*, (Bankr. D. Del. July 9, 2015) (No. 14-10979 (CSS)).

50.     Relief from Local Rule 3007-1(f)(i) and (ii) is critical to a workable claims objection process in these cases.  A substantial proportion of the more than 95,000 Abuse Claims here can potentially be resolved through omnibus objections that raise a single legal defect applicable to a particular category of claims.  The Court accordingly should exercise its discretion to grant relief from Local Rule 3007-1(f)(i) and (ii) and permit the parties to file multiple omnibus claim objections on substantive grounds, so long as each objection raises a single legal issue (*e.g.,* that all claims subject to a particular objection are time-barred under the law of the state where abuse allegedly took place).

**2.      Local Rule 3007-1(f)(iii).**

51.     Relief from Local Rule 3007-1(f)(iii) is also essential to an efficient and workable claims objection process.

52.     Local Rule 3007-1(f)(iii) provides, in relevant part, that "[a]n Objection based on substantive grounds . . . shall include all substantive objections to such claim."  This rule requires an objecting party to raise all of its substantive objections to a single claim at the same time in a single objection.

53.     In the absence of relief from this requirement, Hartford, Century and any other parties in interest that intends to test the *bona fides* of the Abuse Claims would have to engage in expensive and protracted discovery to unearth all *possible* objections to each Abuse Claim prior to filing claim objections.  That process would be time-consuming and burdensome on all parties, and would inevitably delay the plan confirmation process.  Requiring that all possible objections be asserted at once would make it effectively impossible to file the categorical omnibus objections discussed above, which are the only practicable method of resolving any significant number of the 95,000 claims in these cases in a reasonable period of time.  Objections raising *all* possibly applicable grounds for disallowance would waste the resources of the parties and the Court by requiring the presentation and consideration of multiple, disparate legal issues when a single issue could potentially be dispositive of an entire category of claims.  Here, where there are more than 95,000 Abuse Claims, relief is particularly important to streamline the process and permit the Court to focus on common issues that are likely to be dispositive with respect to the greatest number of claims.  This Court should exercise its discretion to grant the requested relief, which in the best interest of all parties and will most expeditiously move these cases forward towards confirmation.

## **Certification of Counsel**

54.     Pursuant to Local Rule 2004-1, prior to filing this Motion, Hartford and Century met and conferred with the TCC, as well as counsel for the Coalition on January 4, 2021 and January 8, 2021 to try to reach agreement on the matters covered herein.  No agreement was

reached with the Coalition, and counsel for the TCC indicated that it could not speak for individual abuse claim holders.

55.     In addition, counsel for Hartford and Century contacted counsel for each of the non-Coalition claimants identified on **Exhibit 2 to the Declaration of Denise Neumann Martin** and offered to meet and confer on January 18, January 19 or such other date as counsel identified as convenient.  Meet and confer sessions were conducted on each date with at least 17 law firms[36] representing 90 claimants.  The parties did not reach agreements concerning discovery with the majority of the firms and the claimants represented by those firms, which are identified on **Exhibit C**.  Those firms that did agree to provide responses to Hartford and Century's discovery have been removed form **Exhibit C** and are not the subject of this motion.

56.     For any claimant identified on **Exhibit 2 to the Declaration of Denise Neumann Martin** that is not represented by counsel, Hartford and Century first informed the TCC that they intended to contact those claimants, and Hartford and Century then did contact the claimants for whom e-mail addresses were available and offered to meet and confer as well.  Counsel for Hartford conducted telephone meet and confer conferences with any such claimant who agreed to discuss the requested discovery between January 18 and January 21.  Certain claimants did agree to provide information in substantially the form requested on Exhibit B.  Those individuals have been removed from **Exhibit C** and are not the subject of this motion.  With respect to the unrepresented claimants on **Exhibit C**, no agreement regarding discovery was reached.

<u>**Notice**</u>

57.     Hartford and Century have provided notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the Debtors; (c) the Official Committee of

---

[36]     Not all of parties participating in the calls identified themselves so it is possible that other law firms participated in the meet and confers.

Unsecured Creditors; (d) the TCC; (e) the Future Claims Representative; (f) the Coalition; (g) the

Abuse Claimants identified on **Exhibit C** from whom discovery is sought in this motion (through

counsel where identified); and (h) any other party that has requested notice pursuant to Bankruptcy

Rule 2002.

<u>**Conclusion**</u>

WHEREFORE, Hartford and Century respectfully request that the Court enter an order

substantially in the form attached hereto as <u>**Exhibit A**</u>.

| STAMOULIS & WEINBLATT LLC | BAYARD, P.A. |
|---|---|
| */s/ Stamatios Stamoulis*<br>Stamatios Stamoulis (#4606)<br>800 N. West Street<br>Third Floor<br>Wilmington, Delaware 19801<br>Telephone: 302-999-1540<br>Facsimile: 302-762-1688<br><br>- and -<br><br>Tancred Schiavoni (admitted *pro hac vice*)<br>Gary Svirsky (apply for *pro hac vice*)<br>Andrew Kirschenbaum (admitted *pro hac vice*)<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036-6537<br>Telephone: 212-326-2000<br><br>*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company* | */s/ Gregory J. Flasser*<br>Erin R. Fay (No. 5268)<br>Gregory J. Flasser (No. 6154)<br>600 North King Street, Suite 400<br>Wilmington, Delaware 19801<br>Telephone: (302) 655-5000<br>Facsimile: (302) 658-6395<br>Email: efay@bayardlaw.com<br>　　　gflasser@bayardlaw.com<br><br>- and -<br><br>James P. Ruggeri (admitted *pro hac vice*)<br>Joshua D. Weinberg (admitted *pro hac vice*)<br>Michele Backus Konigsberg (admitted *pro hac vice*)<br>SHIPMAN & GOODWIN LLP<br>1875 K Street, NW, Suite 600<br>Washington, D.C. 20003<br>Tel: (202) 469-7750<br>Fax: (202) 469-7751<br><br>- and -<br><br>Philip D. Anker (admitted *pro hac vice*)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, N.Y. 10007 |

<table>
<tr><td></td><td>Tel: (212) 230-8890<br>Fax: (212) 230-8888<br><br>Danielle Spinelli (admitted *pro hac vice*)<br>Joel Millar (admitted *pro hac vice*)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Avenue N.W.<br>Washington, D.C. 20006<br>Tel: (202) 663-6000<br>Fax: (202) 663-6363<br><br>*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company*</td></tr>
<tr><td>THE LAW OFFICES OF JOYCE, LLC<br><br>*/s/ Michael J. Joyce*<br>Michael J. Joyce (No. 4563)<br>1225 King Street, Suite 800<br>Wilmington, DE 19801<br>(302)-388-1944<br>mjoyce@mjlawoffices.com<br><br>-and-<br><br>Kevin T. Coughlin (Admitted *Pro Hac Vice*)<br>Lorraine M. Armenti (Admitted *Pro Hac Vice*)<br>Michael E. Hrinewski (Admitted *Pro Hac Vice*)<br>COUGHLIN DUFFY, LLP<br>350 Mount Kemble Ave.<br>PO Box 1917<br>Morristown, NJ 07962<br>973-267-0058 (Telephone)<br>973-267-6442 (Facsimile)<br>ti@coughlinduffy.com<br><br>*Attorneys for Arrowood Indemnity Company, formerly known as Royal Indemnity Company*</td><td></td></tr>
<tr><td>Date: January 22, 2021<br>Wilmington, Delaware</td><td></td></tr>
</table>