# EXHIBIT A - 2

# brown rudnick

SUNNI P. BEVILLE

direct dial: 617.856.8475
fax: 617.289.0457
sbeville@brownrudnick.com

July 21, 2020

Eisenberg, Rothweiler, Winkler,
Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
Attn:    Stewart J. Eisenberg, Esq.
Email:  stewart@erlegal.com

Kosnoff Law PLLC
1321 Upland Drive
PMB 4685
Houston, TX 77043
Attn:    Timothy D. Kosnoff, Esq.
Email:  Tim@kosnoff.com

AVA Law Group, Inc.
3667 Voltaire Street
San Diego, CA 92106
Attn:    Andrew Van Arnsdale, Esq.
Email:  andrew.vanarsdale@gmail.com

Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Attn:    Anne Andrews, Esq.
Email:  aa@andrewsthornton.com

Slater Slater Schulman, LLP
488 Madison Avenue
20th Floor
New York, NY 10022
Attn:    Jonathan E. Schulman, Esq.
Email:  jschulman@sssfirm.com

ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
Attn:    Edward E. Neiger, Esq.
Email:  eneiger@askllp.com

**RE:  Confirmation of Engagement**

Dear Stewart, Timothy, Andrew, Anne, Jonathan and Edward:

We are very pleased that the Ad Hoc Committee of Boy Scouts of America Sexual Abuse Survivors (the "**Ad Hoc Committee**" or "**Client**"), comprised of certain clients (each a "**Law Firm Client**" and, collectively, the "**Law Firm Clients**") represented by Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Kosnoff Law PLLC, AVA Law Group, Inc., Andrews & Thornton, Slater Slater Schulman, LLP, and ASK LLP (collectively, the "**Law Firms**"), has engaged Brown Rudnick LLP ("**Brown Rudnick**," "**us**," "**we**," "**our**," or the "**Firm**").  The members of the Ad Hoc Committee are identified on Exhibit A attached hereto.



The Law Firms each represent and warrant that they have the authority to sign this Engagement Letter on behalf of their respective Law Firm Clients and bind the Law Firm Clients to the terms hereof.

Enclosed please find the Client Engagement Terms (the "**Terms**"), which supplement this letter and include additional information setting forth the terms on which the Firm will provide legal services, the scope of such services, billing and payment arrangements, the Firm's relationship with its clients, and other matters (this letter, together with the Terms, is the "**Engagement Agreement**").  Please carefully review the Engagement Agreement.  I am of course available to answer any questions you may have regarding our engagement by the Ad Hoc Committee.

<em>Scope of Engagement</em>

Subject to the acceptance of this Engagement Agreement by the Law Firms on behalf of their Law Firm Client members of the Ad Hoc Committee, as described herein, we have agreed to represent the Ad Hoc Committee as bankruptcy counsel as of July 18, 2020 in connection with *In re Boy Scouts of America and Delaware BSA, LLC* (the "**Debtors**" or the "**Company**"), Case No. 20-10343 (LSS) (Jointly Administered), pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Case**").

It is understood that our engagement is with the Ad Hoc Committee as a whole, and not any individual member thereof.  As such, this Engagement Agreement and our engagement by the Ad Hoc Committee do not create an attorney-client relationship between Brown Rudnick and any individual member of the Ad Hoc Committee.  Any such relationships in other matters are governed by separate retention letters.

<em>Staffing, Fees, and Expenses</em>

David Molton and I will have primary responsibility for the engagement.  To the extent necessary and appropriate, other lawyers and Firm personnel may work on this matter as well.

Fees for our services will be based on the time expended by each lawyer and other Firm personnel (including personnel we may temporarily engage) on the Ad Hoc Committee's matter, multiplied by that person's hourly rate (the "**Standard Hourly Fees**").  My standard hourly rate is currently $1,000 and David's standard hourly rate is $1,405.

In addition to the fees for services, you also shall pay, and reimburse the Firm for, all costs and expenses incurred by the Firm in connection with the engagement including, without limitation, those identified in the attached Schedule of Disbursement Charges.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 3

The Firm's statements of fees for professional services and related costs and expenses will generally be prepared and mailed to the Law Firms during the month following the month in which services are rendered or costs or expenses are incurred.  Except as otherwise set forth in this Engagement Agreement, payments are due from the Law Firms – and not from the individual members of the Ad Hoc Committee – within thirty (30) days of the date of the statement.

Although the Law Firms are jointly and severally responsible for payment of our fees hereunder, they may allocate our fees in a mutually acceptable manner among themselves. As noted above, the Firm's fees and related costs and expenses shall be payable monthly, without regard to whether there are any recoveries on account of the tort claims held by the members of the Ad Hoc Committee.

<em><u>Replenishing Retainer</u></em>

You shall deliver to the Firm a retainer of $100,000 (the "**Retainer**").  The Retainer, as well as any future deposits, will be held in the Firm's client trust account.  The Firm will use the Retainer to pay the fees and other charges you incur.  The Firm will typically apply funds in the Retainer upon or following delivery of monthly statements to you, but reserves the right to apply funds in the Retainer to pay any fees or other charges at any time and in such cases will deliver a statement to you following the application of such funds.  The Retainer will be a "**replenishing retainer**" such that your funds on deposit with the Firm will remain at no less than $30,000. Within fifteen (15) days after notice from the Firm to you that all or a portion of the Retainer has been used to pay professional fees and/or costs, you shall deposit funds with the Firm sufficient to replenish the Retainer to an amount equal to at least $100,000.  If the billing in any monthly cycle exceeds $100,000, you shall pay within fifteen (15) days after such billing the full amount of such charges so that the  Retainer is completely restored to an amount no less than $100,000 and no receivable balance remains owing from you to the Firm.

<em><u>Direction</u></em>

The Firm is being retained by the Ad Hoc Committee, and not by any individual member of the Ad Hoc Committee.  The Firm shall not act on behalf of the Ad Hoc Committee in a manner that is contrary to any direction we receive from the Law Firms.

<em><u>The Ad Hoc Committee</u></em>

We understand, and each member of the Ad Hoc Committee so acknowledges, that each such member has agreed to come together to form the Ad Hoc Committee because you are similarly situated tort claimants of the Debtors and you expect that you may have similar views as to



matters relating to the Debtors and the tort claims. Notwithstanding this arrangement and the execution of this Engagement Agreement: (i) each member of the Ad Hoc Committee acknowledges that no member has agreed to take on, and no member shall owe, a fiduciary duty to any of the other members; and (ii) no member has agreed to take on, nothing herein shall imply, and each member disclaims any fiduciary duty to any other holder of tort claims. Furthermore, each member acknowledges that it in no way intends or agrees to be deemed a member of a "**group**" within the meaning of Rule 13d-5 under the Securities Exchange Act of 1934, as amended, for any purpose other than the resolution of the matters specifically identified herein, or to be acting in concert in any other manner with any holder which would be in violation of, or trigger reporting or similar obligations under, applicable law. Furthermore, neither this arrangement nor any provision of this Engagement Agreement shall (a) prevent any member of the Ad Hoc Committee from exercising or seeking to enforce or protect its rights with respect to the Debtors as it may deem appropriate, or (b) otherwise affect any member's ability to act or forbear from taking any action as it may deem appropriate, including effectuating any settlement with the Debtors with respect to its tort claim.

As set forth in the Terms, each member's confidential information shall remain confidential and will not be shared with any other member, except with respect to the specific subject matter of the engagement of the Firm by the Ad Hoc Committee. Each member waives any obligation of the Firm to disclose to it any information of another member that is to remain confidential as provided in the foregoing sentence.

### *Conflicts of Interest*

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between any client of an attorney or law firm and their existing and former clients. Each member of the Ad Hoc Committee agrees that the Firm has been engaged in this matter as legal counsel to the Ad Hoc Committee as a whole, and not individually by you or any other individual member thereof. Each member of the Ad Hoc Committee also understands and agrees that the Firm therefore will not be prevented due to legal conflicts or Rules of Professional Conduct of any kind from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Ad Hoc Committee or your respective interests (other than in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Debtors). The Terms include an Existing and Future Conflicts Waiver section in which the Ad Hoc Committee agrees to certain waivers of conflicts of interest, including a limited, future waiver of any potential or actual conflicts of interest (other than in certain matters in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Debtors). This means that,



subject to the limits described in the Terms, the Firm may represent another client in certain matters in which its interests are, will be, or have been adverse to the Ad Hoc Committee's interests.

<em><u>Communication</u></em>

We will keep the Ad Hoc Committee apprised of significant developments in the course of the engagement and will obtain the Ad Hoc Committee's direction on critical issues.  While we will endeavor to consult with the Ad Hoc Committee about the Firm's work on an ongoing basis, if at any point any member of the Ad Hoc Committee wishes to discuss any issues or to clarify the legal advice we have provided the Ad Hoc Committee, please call upon us.

<em><u>Governing Law</u></em>

The Engagement Agreement shall be governed by and construed in accordance with the laws of the State of New York, (the "**Specified State**") without giving effect to its choice of law provisions that would result in the application of the laws of a different jurisdiction, provided that our obligations to the Ad Hoc Committee shall also be subject to any applicable professional rules or codes of conduct applicable to the provision of our services to the Ad Hoc Committee, except to the extent the applicability of such provisions is permitted to be waived thereby and is waived by the Ad Hoc Committee.

<em><u>Acknowledgement</u></em>

If you have any questions regarding the Engagement Agreement or any aspects of the Firm's representation of the Ad Hoc Committee, please do not hesitate to contact me.  We look forward to representing the Ad Hoc Committee and are pleased that the Ad Hoc Committee has chosen us to do so.

Sincerely,

BROWN RUDNICK LLP

Sunni P. Beville



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: 204258700

By: _____
Name: Stewart Eisenberg
Title: President
Date: 7/22/20

*The Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg*
*& Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____91-1525117_____

By: __*Timothy D. Kosnoff*_____
Name: ___*Timothy D. Kosnoff for Kosnoff Law, PLLC*
Title: ___*Owner*_____
Date: ___*July 22, 2020*_____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg*
*& Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: 37- 1923464

By: _____
Name: ANDREW VAN ARSDALE
Title: MEMBER
Date: 7/22/20

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg*
*& Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: *Anne Andrews*
Title: *managing partner*
Date: *7/22/2020*

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg
& Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: 45-3913357

By: Adam P. Slater
Name: _____
Title: Partner
Date: 7/23/20

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg*
*& Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____ Joseph L. Steinfeld, Jr. _____
Title: _____ Co-Managing Partner _____
Date: _____ July 27, 2020 _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



**BROWN RUDNICK LLP**

<u>Client Engagement Terms</u>

We are very pleased that the Ad Hoc Committee has engaged the Firm.  These Client Engagement Terms (the "**Terms**"), supplement the letter to which they are attached (the "**Engagement Letter**").  Terms defined in the Engagement Letter shall have the same meanings when used in these Terms.  The Engagement Letter, together with these Terms, is a contract for our engagement and comprises the ("**Engagement Agreement**").

We are of course available to answer any questions you may have regarding the engagement or the Engagement Agreement.

<u>Welcome to Brown Rudnick</u>

Brown Rudnick is a limited liability partnership organized under the laws of the Commonwealth of Massachusetts, which may, when necessary to provide services to the Ad Hoc Committee under this Engagement Agreement, collaborate and share resources and information with its subsidiaries or affiliates (the "**Brown Rudnick Affiliates**").  You understand and agree that such information may include your confidential or proprietary information and that the partners and employees of Brown Rudnick Affiliates may render services to the Ad Hoc Committee, whether or not they are identified as such on the Firm's invoices, all of which shall be governed by the Engagement Agreement.  For purposes of the conflicts of interests and professional ethics rules described herein, each of the Firm and the Brown Rudnick Affiliates, in their sole discretion, may elect to treat the other's clients as its own clients.

<u>The Engagement</u>

The Firm's engagement to represent the Ad Hoc Committee is limited to the matter(s) described in our Engagement Letter and to any additional matters for which the Firm expressly agrees to provide legal representation.  In the event we provide services beyond the original scope or for a separate matter(s), this Engagement Agreement and our then prevailing standard terms and conditions, hourly rates, and policies shall automatically govern unless otherwise agreed.

Each member of the Ad Hoc Committee acknowledges that the Firm has not provided any member of the Ad Hoc Committee with legal advice concerning the terms and conditions of our Engagement Agreement.

<u>Charges for Legal Services</u>

**A.      Legal Fees and Disbursements**

Fees for our services and charges for our costs and expenses will be incurred and be payable by you in accordance with these Terms and the "**Staffing, Fees, and Expenses**" provisions of the Engagement Letter**.**

Currently, our hourly rates for partners/counsel vary from $675 to $1,700, for associates from $510 to $940, and for paralegals from $375 to $465.  Other staff hourly rates range from $280 to $400.  My hourly rate is currently $1,000.  These hourly rates are subject to change on a periodic basis.

We may provide the Law Firms and Law Firm Clients with an estimate of our fees and disbursements that members of the Ad Hoc Committee may incur, based on our best judgment.  Such estimates, however, are by their nature inexact and are not intended to be binding upon the Firm.

**B.      Payment/Questions**

The Law Firms are jointly and severally responsible for the fees incurred by the Firm on behalf of the Ad Hoc Committee.  Accordingly, payment will be made by the Law Firms in the full amount of our statement.  If you have any questions about any statement that we submit, you should promptly contact the lawyer responsible for our engagement by the Ad Hoc Committee so that we may understand and address your concerns promptly.



## C.    Third Party Payment Responsibility

As noted above, the Law Firms are undertaking to pay the Firm's bills.    Each member of the Ad Hoc Committee hereby consents to (a) the application of those funds to the outstanding balance of such member's account with the Firm and waive any right such member might otherwise have to direct us to pay or apply those funds in any other fashion, and (b) to the extent any Law Firm makes payment to us on a member's behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, each member hereby consents to us adhering to those directions and waives any right such member might otherwise have to direct us to pay or apply those funds in any other fashion. Such payment shall not create an attorney-client relationship between the Firm and the payer.  All funds remaining on retainer with the Firm at the conclusion of our engagement will be returned to the Law Firms.

If any other third party (including, without limitation, an insurer or affiliate, Trustee, or the Debtors) undertakes to pay any portion of the Firm's bills, 1) each member of the Ad Hoc Committee will remain responsible for payment of any amounts billed by the Firm and not paid by that third party, 2) each member of the Ad Hoc Committee hereby consents to the application of those funds to the outstanding balance of such member's account with the Firm and waive any right such member might otherwise have to direct us to pay or apply those funds in any other fashion, and 3) to the extent any such third party makes payment to us on a member's behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, each member hereby consents to us adhering to those directions and waives any right such member might otherwise have to direct us to pay or apply those funds in any other fashion.  Such payment shall not create an attorney-client relationship between the Firm and the payer.  If any member of the Ad Hoc Committee is awarded legal fees or costs by a court or other party, such member will remain responsible for payment of its pro rata share of the Firm's billed fees and other charges, even if the award to such member is less than the amounts we have billed such member

or such member cannot collect all or part of the award for any reason.

<u>Insurance Coverage</u>

It is possible that members of the Ad Hoc Committee may have insurance policies relating to the matter that is the subject of our engagement by the Ad Hoc Committee.  Each member of the Ad Hoc Committee should carefully check the insurance policies it has purchased and, if coverage may be available, such member should provide notice to all insurers that may provide such coverage as soon as possible.  Our engagement by the Ad Hoc Committee will not include advising members of the Ad Hoc Committee with respect to the existence or availability of insurance coverage for matters within the scope of our engagement.

<u>Termination</u>

The Law Firms, on behalf of the Ad Hoc Committee may, of course, terminate our services at any time.  The Ad Hoc Committee's termination of our services will not affect the Law Firms' responsibility, on behalf of the members of the Ad Hoc Committee, to pay for billed and unbilled legal services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor lawyers chosen by the members of the Ad Hoc Committee.  In addition, any member of the Ad Hoc Committee may withdraw from the Ad Hoc Committee at any time, subject to the terms set forth in the Engagement Letter.

Subject to ethical rules by which we are bound, we also reserve the right to suspend our services or withdraw from the engagement described in this Engagement Agreement at any time, but barring unusual circumstances we will discuss such suspension or withdrawal with the Law Firms, on behalf of the members of the Ad Hoc Committee, before doing so and expect to do so only if there are good reasons for such withdrawal, including, without limitation, non-payment of our statements on a timely basis, significant differences between our professional judgment and the



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 9

judgment of the Ad Hoc Committee, the existence of any facts or circumstances that would render the Firm's continuing representation of the Ad Hoc Committee unlawful or unethical, or any other concerns that may arise under the ethical rules by which we are bound. The obligations of the Firm under this Engagement Agreement are and will be subject to court orders, statutes, laws, rules, and regulations governing the Ad Hoc Committee's legal rights and each member of the Ad Hoc Committee authorizes the Firm to take whatever action is necessary to comply with the requirements of such authorities.

Unless it is previously terminated, our representation of the Ad Hoc Committee, and our lawyer-client relationship with the Ad Hoc Committee, will be deemed to have been terminated upon the conclusion of our services.

We may ask that the Ad Hoc Committee, through the Law Firms, provide additional confirmation of such termination by signing a substitution or withdrawal of counsel and/or such other documents as may be reasonably necessary to evidence or effect the Firm's termination of our lawyer-client relationship with the Ad Hoc Committee, including the Firm's withdrawal of its prior appearance in any court or other litigated proceeding. You agree to sign such a substitution or withdrawal of counsel and/or such other documents.

After the conclusion or termination of our representation of the Ad Hoc Committee as described in the Engagement Agreement, changes in relevant laws, regulations, or decisional authorities may affect the Ad Hoc Committee's rights and obligations. Unless the Ad Hoc Committee engages the Firm to provide future services and to advise the Ad Hoc Committee with respect to any issues that may arise in the future as a result of such changes, we will have no continuing obligation to advise the Ad Hoc Committee or any of its members with respect to future legal developments.

## Communication

We expect that the Ad Hoc Committee, through the Law Firms, will cooperate with us and will fully and accurately disclose to us all facts and documents that may be relevant to our representation of the Ad Hoc Committee or that we may otherwise request. For instance, each member of the Ad Hoc Committee should be reasonably available to attend meetings, discovery proceedings, conferences, and other proceedings.

Each member of the Ad Hoc Committee authorizes and directs the Law Firms to authorize and direct us to take all actions which we deem advisable on behalf of the Ad Hoc Committee in our representation of the Ad Hoc Committee. Subject to any limitations set forth in the Engagement Letter, we will notify the Ad Hoc Committee, through the Law Firms, of significant developments and consult with the Law Firms, on behalf of the Ad Hoc Committee, in advance of any significant decisions.

We will use our professional judgment and efforts in representing the Ad Hoc Committee; however, we have given no assurance to the Ad Hoc Committee regarding the outcome. Any statements concerning our representation of the Ad Hoc Committee or the results that might be anticipated made by us are merely expressions of our opinion as attorneys, limited by the information known to us at the time and are not to be construed as promises or guaranties of any particular results.

The Firm can provide communications in various modes, depending upon the Ad Hoc Committee's requirements. These may be accessed from mail accounts on the Internet and other electronic networks. These communication services are used with the Ad Hoc Committee's understanding that while the Firm will use appropriate measures to protect client confidentiality, they may be subject to security risks. Absent special arrangements, we do not employ encryption technologies in our electronic communications. Should the Ad Hoc Committee not wish the Firm to use one or more of the communication methods described above, please advise us of such in writing. We will use reasonable efforts to use the communication services the Ad Hoc Committee specifies.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 10

## Confidentiality

**A.      Confidentiality and Disclosure**

We owe a duty of confidentiality to all our clients and we will protect the Ad Hoc Committee's confidential information accordingly.  Similarly, we are not required to disclose to the Ad Hoc Committee, or use on the Ad Hoc Committee's behalf, any confidential documents or information in our possession.

**B.      Disclosure to Certain Third Parties**

Each member of the Ad Hoc Committee agrees that we may, when required by our insurers, auditors, or other advisers, provide details to them of any matter or matters on which we have represented the Ad Hoc Committee.

**C.      Data Protection**

This paragraph, and Annex 1, are added pursuant to our obligations under EU data privacy law.  If you are a non-EU citizen or resident based outside of the EU, EU data privacy law will apply to the extent that Brown Rudnick processes any personal data provided by you or on your behalf in the context of its EU establishment.

In this paragraph, the terms "**data controller**", "**personal data**", "**data processor**", "**data subject**", and "**process(ing)**" will have the meanings ascribed to them in the EU General Data Protection Regulation ("**GDPR**") and/or with any applicable national laws implementing or replacing the GDPR (together, "**Data Protection Law**").

Brown Rudnick, whether acting as a data controller of personal data relating to your partners, directors, officers or employees, or as a data processor in processing personal data on your behalf and in accordance with your instructions, will comply with the GDPR and/or with any applicable national laws implementing or replacing the GDPR.  Please see the Privacy Notice set out in Annex 1, which provides further information in respect of when Brown Rudnick is acting as a data controller, including what personal data we collect, why and where we process it, the legal

bases for our processing, and the rights of the data subjects to which the personal data relates.

You hereby confirm that you, acting as our agent in respect of data subjects who are your directors, officers, employees, agents or other contacts, have no reason to believe that you have not complied with all of your obligations under Data Protection Law (to the extent applicable) in respect of your collection and use of such subjects' data and your provision of it to us, in each case as necessary for us to provide you with our services.

To the extent we are acting as a data processor in processing personal data on your behalf we agree, whenever the GDPR applies, to:

(a)   act only on documented instructions from you in respect of any personal data processed by us;

(b)   have appropriate technical and organizational measures in place against unauthorized or unlawful processing of personal data and against accidental or unlawful loss or destruction of, alteration or unauthorized disclosure of or access or damage to, personal data held or processed by it, appropriate to the harm that might result from such accidental, unauthorized or unlawful processing or loss, destruction or damage to personal data and the nature of the personal data;

(c)   ensure the on-going confidentiality, integrity, availability and resilience of processing systems and services as well as the ability to restore the availability and access to personal data in a prompt manner in the event of a physical or technical incident as required under Data Protection Law;

(d)   not engage another processor without your prior written consent, and where another processor is engaged (a "**Sub-Processor**") we shall:

      (i)   ensure that the Sub-Processor complies with the obligations set out in this paragraph and Data Protection Law;



(ii) in the case of a general consent from you for use of Sub-Processors, inform you of any changes concerning the addition or replacement of Sub-Processors to which you have the right to object; and

(iii) remain liable for any act or omission of any Sub-Processor in respect of its obligations arising from its processing of the personal data;

(e) assist you to comply with your obligations under Data Protection Law, including in relation to the security of personal data;

(f) assist you, at your cost, to respond to requests by data subjects to exercise their rights under Data Protection Law in respect of our engagement, including taking any action required by you to comply with such requests and immediately notifying you of any such requests received by us or any Sub-Processor without responding to such requests or enquiries unless expressly otherwise instructed by you;

(g) take all necessary steps to ensure the reliability of any of our staff who have access to personal data processed under this agreement and ensure that they are subject to appropriate obligations of confidentiality;

(h) allow you to audit as and when necessary, in accordance with the Data Protection Law, the technical and organizational measures in place to ensure compliance with the Data Protection Law and to make available to you all information necessary to demonstrate such compliance;

(i) inform you where in our opinion any of your instructions will result in a breach of Data Protection Law;

(j) if required by you, delete or return all personal data in our possession or control to the extent technically feasible save as required by any applicable law; and

(k) notify you without undue delay if we become aware of any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, personal data relating to you, and provide all information regarding such breach that you specifically request or which may reasonably be expected to be required or appropriate in order for you to comply with your legal obligations under the Data Protection Law.

### Document Retention

At the Ad Hoc Committee's request, we will return to the Law Firms, their original hard copy documents and property (the Ad Hoc Committee's "**client file**"), except as set forth herein. Subject to applicable rules of ethics by which we are bound, we may condition delivery of the Ad Hoc Committee's client file upon our receipt of payment for outstanding fees and other charges, and such client file will be subject to any lien permissible under applicable rules of professional responsibility. We may provide the Ad Hoc Committee's client file in original format or an electronic format on a CD, DVD, or other medium. Should the Ad Hoc Committee decide not to request or accept any portion of the Ad Hoc Committee's client file at the conclusion or termination of our representation of the Ad Hoc Committee, each member of the Ad Hoc Committee authorizes us to destroy such portion of the Ad Hoc Committee's client file at our discretion and without further notice to any member of the Ad Hoc Committee, subject to any applicable ethics rules by which we are bound.

Each member of the Ad Hoc Committee agrees that our drafts of documents, notes, internal working papers, internal e-mail and electronic databases and other attorney work product shall be and remain the property of the Firm and shall not, except in our sole and absolute discretion or as otherwise required by the ethical rules by which we are bound, be considered part of the Ad Hoc Committee's client file.

The Firm retains the right to make copies of the Ad Hoc Committee's client file, at our expense, for our own information and retention purposes.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 12

### Anti-Money Laundering Laws

Numerous countries have enacted Anti-Money Laundering ("**AML**") laws. If the Firm's lawyers are engaged to assist the Ad Hoc Committee in matters within the scope of our engagement that become subject to AML requirements, it will be necessary to comply with the applicable AML laws. In connection therewith, we or our lawyers may be required to obtain additional, specific evidence of identity from each member of the Ad Hoc Committee.

### Dispute Resolution

#### A.        Resolving Problems and Disputes

If the Ad Hoc Committee has any complaints or concerns about our work for the Ad Hoc Committee, please raise these in the first instance with the lawyer responsible for the Ad Hoc Committee's engagement or with the Firm's Chief Executive Officer (William R. Baldiga: 617-856-8568) or Chief Legal Officer (Joel S. Miliband: 949-440-0227). We will investigate the Ad Hoc Committee's complaint promptly and carefully and do what we reasonably can to resolve the difficulties to the Ad Hoc Committee's satisfaction.

#### B.        General

Except as provided herein, should any dispute arise in connection with our representation of the Ad Hoc Committee or in connection with any other matter arising under this Engagement Agreement, the Ad Hoc Committee and we both agree to seek to resolve the dispute amicably, including, if appropriate, utilization of mediation or other methods of alternative dispute resolution. If the dispute cannot be resolved amicably, the Ad Hoc Committee and we both agree that any action or proceeding relating to or arising out of the dispute will be exclusively brought in a state or federal court located in the Specified State and the Ad Hoc Committee and we each agree that any such court has, and may exercise, personal jurisdiction over each member of the Ad Hoc Committee and us in any such action. You agree that in any proceeding in which an order or judgment is entered in our favor, you are responsible for payment of our reasonable attorneys'

fees relating to such matter, including, without limitation, the reasonable fees of attorneys employed at the Firm as well as any outside counsel.

#### C.        New York Fee Dispute Process

If any of our New York licensed lawyers work on this matter and if a material portion of the legal services we provide to the Ad Hoc Committee takes place in New York, the Ad Hoc Committee may have an option to invoke arbitration should a fee dispute arise between the Ad Hoc Committee and us during or at the conclusion of this engagement. Specifically, in any civil matter where the fee dispute involves a sum of up to $50,000, the Ad Hoc Committee may have a right to compel resolution by binding arbitration. In addition, whether or not binding arbitration is available, both the Ad Hoc Committee and we are encouraged to seek resolution of lawyer-client disputes, including fee disputes, through mediation, and the New York Courts and Bar have established a program for mediation of such disputes by an impartial mediator. In the event that any fee dispute should arise in this engagement which is not promptly and satisfactorily resolved between the Ad Hoc Committee and us, we shall furnish the Ad Hoc Committee with further details concerning the procedures and effects of arbitration and mediation, so that the Ad Hoc Committee can make an informed decision as to how to proceed in the circumstances.

#### D.        California Dispute Process

If any of our California licensed lawyers work on this matter, or if any member of the Ad Hoc Committee is a California resident, such member of the Ad Hoc Committee may have a right to invoke arbitration should a fee dispute arise between such member of the Ad Hoc Committee and us during or at the conclusion of this engagement, under the California Mandatory Fee Arbitration Program (Business & Professions Code §§ 6200 et seq.).


Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 13

### Limitation of Representation; Client Responsibilities

The Firm has no obligation to provide legal services until the Firm is satisfied that each member of the Ad Hoc Committee has accepted the Engagement Agreement and paid any initial retainer called for in the Engagement Letter.

Except as expressly agreed to in the Engagement Letter, our representation of the Ad Hoc Committee in any litigation matter will be limited to the final disposition of the matter described therein, whether by trial, judgment, settlement, or other final disposition, by the court, agency, or other administrative body where it is initially pending and shall not include any appeals therefrom to any other court, agency, or administrative body. Should we agree to represent the Ad Hoc Committee in an appeal, the terms and conditions of that representation shall be set forth in a separate Engagement Agreement.

Our services will not include advice on tax related issues or the tax implications of any transaction or course of action unless (and then only to the extent that) this is expressly agreed at the commencement, or during the course, of a matter.

### Publicity

We are often asked to provide examples of our relevant experience in certain fields of work, for use, for example, in the Firm's publicity material. Unless the Ad Hoc Committee advises us to the contrary, we will assume that we can refer to the fact that we act for the Ad Hoc Committee, and may describe in general terms the nature of the work. In the event that we wish to publicize any further details, we would first seek the Ad Hoc Committee's express authority to do so.

### Severance of Terms

If all or any part of the Engagement Agreement is or becomes illegal, invalid, or unenforceable in any respect, the remainder will remain valid and enforceable.

### No Third Party Rights

No provision of the Engagement Agreement is intended to be enforceable by any third party. Accordingly, no third party shall have any right to enforce or rely on any provision of the Engagement Agreement.

### Integration Clause; Inconsistencies

This Engagement Agreement supersedes any earlier terms of business we may have agreed with the Ad Hoc Committee or any of its members regarding the services to be provided in this matter and, in the absence of express agreement to the contrary, will apply to the services referred to in any Engagement Letter accompanying these Terms and all subsequent legal services we provide to the Ad Hoc Committee. In the event of any inconsistency between these Terms and the Engagement Letter, the Engagement Letter shall prevail.

Each member of the Ad Hoc Committee acknowledges that the terms of this Engagement Agreement govern the relationship between the Firm and the Ad Hoc Committee, and the responsibilities of the members of the Ad Hoc Committee in respect thereof, notwithstanding any terms of any outside counsel guidelines or the like that any member of the Ad Hoc Committee may have sent or send to us from time to time, except to the extent that we may otherwise expressly agree in writing. To the extent that we agree to the applicability of any such guidelines, and the terms of such guidelines and the Engagement Agreement materially conflict, the Engagement Agreement shall control, except to the extent that we may otherwise expressly agree in writing.

### Existing and Future Conflicts Waiver

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of an attorney or law firm and their existing and former clients (collectively, "**the Conflicts Rules**").



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 14

Each member of the Ad Hoc Committee agrees that the Firm has been engaged in this matter as legal counsel to the Ad Hoc Committee as a whole, and not individually by you or any other individual member thereof. You also understand and agree that the Firm therefore will not be prevented due to any Conflicts Rules from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Ad Hoc Committee or your respective interests (other than in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Company).

The Ad Hoc Committee's acceptance of the Engagement Agreement indicates to us that the Ad Hoc Committee and its members find the consents, waivers, and conditions described below to be acceptable and agree that our representing the Ad Hoc Committee in these matters will not prevent or disqualify us from representing clients adverse to the Ad Hoc Committee in other matters and that the Ad Hoc Committee consents in advance to our undertaking such adverse representations.

With respect to the Ad Hoc Committee as a whole (as contrasted with any individual member of the Ad Hoc Committee, individually, as to which the paragraph immediately above shall govern), the Firm agrees that it will not represent another client in a matter that is entirely factually and legally related to the matters on which we represent the Ad Hoc Committee in connection with the Company (the "**Matters**") and that the Firm will not at any time, disclose or use adversely to the Ad Hoc Committee any confidential Client information we obtain in the course of representing the Ad Hoc Committee in the Matters.

Outside of these limitations, the Firm hereby seeks a waiver that will allow it to remain free to represent other clients adverse to the Ad Hoc Committee. In other words, we may represent other clients in negotiations, business transactions, trading claims, trading debt, trading equity interests, trading securities and trading other types of rights and obligations, litigation (unless the Ad Hoc Committee as a whole is named as a party in a litigation in which we represent another client that

is suing the Ad Hoc Committee as a whole in such litigation), alternative dispute resolution, administrative proceedings, interpleader proceedings, bankruptcy and other insolvency proceedings, and discovery and discovery disputes, including, without limitation, subpoenas, document requests, and depositions, class actions (unless the Ad Hoc Committee as a whole is named as a party in a class action in which we represent another client that is suing the Ad Hoc Committee as a whole ), or other legal matters even if those matters are adverse to the Ad Hoc Committee as a whole or if those clients are competitors, including, without limitation, with respect to advice relating to intellectual property strategy, due diligence, licensing and development agreements, joint ventures, and intellectual property protection matters, including, without limitation, trademarks, patents, and copyrights. Further, if the Ad Hoc Committee is or becomes adverse to another client of the Firm in any matter, whether or not we represent the Ad Hoc Committee in such matter, the Firm will also remain free to represent the Firm's other client in other matters, without regard to whether the matter in which the Ad Hoc Committee is adverse to the Firm's other client involves negotiations, business transactions, trading claims, trading debt, trading equity interests, trading securities and trading other types of rights and obligations, litigation, alternative dispute resolution, administrative proceedings, interpleader proceedings, bankruptcy and other insolvency proceedings, discovery and discovery disputes, subpoenas, document requests, depositions, class actions, or other legal matters.

The Firm represents other clients to whom the Firm does not provide legal services, such as its government relations clients, and the Conflicts Rules do not apply to such services. The Ad Hoc Committee understands and agree that the Firm may provide non-legal services to such other clients in matters that might be directly adverse to the Ad Hoc Committee's interests.

Although unlikely, it may be necessary in the course of our representation of the Ad Hoc Committee for our lawyers to analyze or address their professional duties or responsibilities or those of the Firm, and to consult with the Firm's general counsel or other lawyers in



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 15

doing so.  To the extent we are addressing our duties, obligations or responsibilities to the Ad Hoc Committee in those consultations, it is possible that a conflict of interest might be deemed to exist as between our lawyers or the Firm and the Ad Hoc Committee.  As a condition of this engagement, the Ad Hoc Committee consents to any conflict of interest that might be deemed to arise out of any such consultations.  The Ad Hoc Committee further agrees that these consultations are protected from disclosure by the Firm's attorney-client privilege and that the Ad Hoc Committee will not seek to discover or inquire into them.  Of course, nothing in the foregoing shall diminish or otherwise affect our obligation to keep the Ad Hoc Committee informed of material developments in our representation of the Ad Hoc Committee, including any conclusions arising out of such consultations to the extent that they affect the Ad Hoc Committee's interests.

We have conducted a search of our Firm's conflicts database.  We have disclosed to the Ad Hoc Committee any ethical conflicts of interest that existed at such time, as defined by the applicable rules of professional conduct, other than those to which the Ad Hoc Committee has consented herein.  The Ad Hoc Committee agrees that such disclosed conflicts, if any, have been resolved to its satisfaction.

Subject to any applicable Conflicts Rules, the terms of this waiver and consent shall last indefinitely.

As the members of the Ad Hoc Committee know, you have had the opportunity to discuss this conflicts waiver and its potential implications with us by phone or in person, and we strongly urge the members of the Ad Hoc Committee not to accept this Engagement Agreement if any of them have any unanswered or unaddressed reservations or concerns.  Any time a client makes a decision to waive future conflicts of interest, there are questions it should address, including:

- Is there a material risk of adverse disclosure or use of confidential client information?

- Is there a material risk that the law firm will be less zealous or eager when representing the client in the applicable matter because of other adverse representation?

- Is the client ready, willing, and able to live by its commitments in the future?

As to the first two questions, we believe that any risk to the Ad Hoc Committee is minimal to nonexistent in light of the protections and limitations contained in this Engagement Agreement.  As to the final question, that is necessarily the Ad Hoc Committee's choice and not ours.

Each member of the Ad Hoc Committee has advised us that this waiver will be treated as an express exception to any of such member's general policies against granting waivers of conflicts of interest, provided that it is limited to the terms described in this Engagement Agreement for our representation of the Ad Hoc Committee in connection with the Matters, and that such member has obtained any requisite internal approvals for this exception.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 16

| BROWN RUDNICK LLP | |
| --- | --- |
| *Schedule of Disbursement Charges* | |
| **TYPE** | **RATE** |
| Photocopying or Laser Printing or Scanned Copies<br>Oversized/Color Copies or Color Laser Printing | 30¢ per page<br>$1.80 per page |
| Telecopy | $2.00 per page |
| Binding | $3.00<br>11¢ per tab<br>20¢ per pocket |
| Courier Services | $30.00 minimum |
| Legal Analyst Services | $90.00 per hour |
| Electronic Discovery and Document Maintenance Database Charges | $30 per user per month for Viewpoint license and $7 per GB per month for storage of data. |
| Imaging Costs | Electronic Binder:<br>Document Indexing $1.75 per bookmark<br>Oversized Documents $1.80 per document<br>Master CD $60.00<br>Additional Copies $30.00 each<br><br>Summation:<br>Single TIF imaging 11¢ each<br>Single TIF OCR 3¢ each<br>TIF to PDF conversion 5¢ each |
| Mileage Allowances | 58¢ per mile |
| Outgoing Long Distance Telephone | 34¢ per minute |
| Lexis/Westlaw or other document retrieval | Usage Charge as assessed by Service Provider[1] |
| Messenger Services | $20 minimum |
| Postage | Actual Cost |
| Taxi Services | Actual Cost |
| Supplies | Actual Cost |
| Food Services | Actual Cost |
| Travel Expenses | Actual Cost |
| News Watch Services | News Watch email alerts:<br>Weekly @ $50 per week; Daily @ $45 per day |
| Accuroute Scan | 30¢ per page |
| Docketing System Charges | Actual Cost |
| Third-Party Electronic Document Maintenance Charges | $75 per user per month for Case Notebook license and $30 per GB per month for storage of data.<br>$75 per user per month for CaseLogistix license and $30 per GB per month for storage of data. |

---

[1] Brown Rudnick may benefit from a different, bulk pricing formula.



## ANNEX 1

## ENGAGEMENT LETTER PRIVACY NOTICE

In this privacy notice, the terms "**personal data**", "**data subject**", "**data controller**" and "**processing**" shall have the meanings ascribed to them in the General Data Protection Regulation (EU/2016/679) ("**GDPR**") and in any applicable national legislation implementing or replacing the GDPR (together "**Data Protection Law**").

This privacy notice applies to:

- Brown Rudnick LLP, a limited liability partnership organized in the Commonwealth of Massachusetts, USA and with its principal office at One Financial Center, Boston, MA 02111, and
- Brown Rudnick LLP, a limited liability partnership registered in England and Wales with company number OC300611 and its registered office at 8 Clifford Street, London W1S 2LQ,

together, referred to in this privacy notice as "**Brown Rudnick**", the "**Firm**", "**we**", "**us**" and "**our**". Our UK entity is registered with the UK Information Commissioner's Office ("**ICO**") with number ZA073920.

This privacy notice applies to the extent that Brown Rudnick collects and/or processes personal data in the capacity of a data controller. Any updates to this privacy notice will be notified to you. This engagement letter privacy notice is in addition to our website privacy notice at www.brownrudnick.com/privacy-policy, which applies to the extent that you interact with our website at www.brownrudnick.com.

## 1. What personal information we collect

In the course of entering into the arrangements documented in this letter and in supplying legal services to you, Brown Rudnick will collect and process personal data. The following personal data may be collected in respect of you, your partners, directors, officers and employees (as applicable if you are an incorporated entity), and also your agents and other data subjects connected with you:

- Identity information, such as name, title, place and date of birth, gender, nationality, organization name and position, and information from photographic identity documents such as driving license or passport information.
- Contact data, such as address and email and personal and business telephone details.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 18

- Financial and/or employment information including business activities and source of funds. If you ask us to provide you with specific legal services, we may also ask you for further information relating to your employment.
- Details in respect of political exposure or any actual or alleged criminal convictions.
- Expressions of opinion, including in relation to the performance and other attributes of a data subject.
- Marketing and communications data, including preferences in receiving marketing and other communications from us.

We will process this data in accordance with this privacy notice, and with Data Protection Law. Other than as listed above, we do not usually collect 'special categories' of personal data from our clients, although we may do so if necessary to provide legal services to you, or if otherwise required by law. ('Special categories' of data include details about race or ethnicity, religious or philosophical beliefs, sex life, sexual orientation, political opinions, trade union membership, and health information.)

## 2.    How we collect personal data

You may provide us with personal data including identity and contact information, marketing and communications preferences, and financial data when you:

- join us as a client and undergo our 'know your client' and anti-money laundering process;
- correspond with us;
- provide us with access to your (or your organization's) corporate and financial records; or
- subscribe to our newsletters and updates.
- We may also obtain or verify information from public sources (such as Companies House) and/or third party search agencies for anti-money laundering and audit purposes. Information obtained from third parties may include your name (and other family names), address, any directorships you hold, political exposure, and any alleged or actual criminal offences.

## 3.    How we use personal data

We process personal data:

- where it is necessary to provide our services to you in accordance with the terms of engagement to which this privacy notice is annexed;
- in order to comply with our legal obligations (for example, to comply with anti-money laundering legislation and regulatory investigations);
- where the data subject has given his or her consent to the processing; and/or



- for our legitimate interests or those of any third party recipient of the personal data (for example, to enable to administer and manage our operations).

We will only retain this data for as long as is necessary to fulfill the purposes for which it was collected or to comply with legal, regulatory or internal policy requirements.

## 4.      How we share your personal data

We will only disclose your personal data where we are required to do so to comply with our legal or regulatory obligations; where we need to do so for business management or administration purposes; or because you have asked us to.  This is likely to include:

- within the Firm;
- to third parties who process your personal data on our behalf (such as IT systems providers and other service providers);
- to third parties who process your personal data on their own behalf but in connection with a service provided to us or you on our behalf (such as accountants, consultants, barristers and other providers of professional services, and in the case of disputes, with the Court or alternative dispute resolution providers);
- to companies providing services for money laundering checks and other fraud and crime prevention services;
- in the case of a business reorganization or restructuring, or our assignment or novation of our obligations; and/or
- to any government, regulatory agency, enforcement or exchange body or court where we are required to do so by applicable law or regulation.

## 5.      International transfers of personal data

Brown Rudnick is an international law firm.  Our provision of legal services to you will entail our transferring personal data outside of the European Economic Area.

When we transfer your data outside of the EEA to a country which the European Commission does not deem to have adequate data privacy laws, we will ensure that such transfer(s) are in accordance with applicable data privacy laws.  In respect of transfers within the Firm, we have executed a data transfer agreement giving effect to the Model Clauses pursuant to Commission decision 2004/915/EC.

In respect of transfers outside of the firm, we either implement the Model Clauses pursuant to Commission decision 2004/915/EC or 2010/87/EU (as appropriate) with the recipient of your



personal data; and/or ensure that the recipient of your data is registered with the EU-US Privacy Shield.

You can obtain further information in this respect (including a copy of the Model Clauses) by contacting us.

## 6.    How we protect your personal data

We are committed to safeguarding and protecting personal data and maintain appropriate technical and organizational measures to protect any personal data provided to us from accidental or unlawful destruction, loss, alteration, or unauthorized disclosure.  We also have in place safeguards including data encryption in motion and at rest, data access and security monitoring, and 24/7 network security monitoring for breaches or anomalous behavior to ensure the security of your data.

## 7.    Data subject rights

Under Data Protection Law, data subjects have a number of rights with regard to their personal data.  They have the right to request from us access to and rectification or erasure of their personal data, the right to restrict or object to processing, as well as in certain circumstances the right to data portability.

If a data subject has provided consent for the processing of their data, he or she has the right (in certain circumstances) to withdraw that consent at any time.

Any data subject wishing to exercise any of the above rights should email us at: gdprcommunications@brownrudnick.com.

We endeavor to respond to such requests within a month or less, although we reserve the right to extend this period for complex requests.  We also reserve the right to charge you a reasonable administrative fee for any manifestly unfounded or excessive requests concerning access to personal data, and for any additional copies of the personal data requested from us.

## 8.    Lodging a complaint with the regulator

Any data subject may lodge a complaint with our data protection regulator if they consider that we have breached their data protection rights.  Our data protection regulator is the Information Commissioner's Office, which can be contacted at:



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 21

Wycliffe House, Water Lane, Wilmslow, Cheshire, SK9 5AF, United Kingdom.

Telephone: 0303 123 1113 (local rate) or (+44) 1625 545 745 (national rate)

Fax: 01625 524 510

Email: enquiries@ico.org.uk

We would, however, be grateful if you would contact us in the first instance so we can endeavor to deal with your concerns direct.

**9.     Contacting us**

If you have any queries about this privacy notice, or about how your personal data (or personal data provided by you) is processed, please contact us using the details set out below:

Data Protection Officer at gdprcommunications@brownrudnick.com or you can write to these individuals at the addresses set out below:

James Darsigny

Brown Rudnick LLP

One Financial Center

Boston, MA 02111

Tamara Quailey-Tulloch

Brown Rudnick LLP

8 Clifford Street

London W1S 2LQ



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 22

## EXHIBIT A

### Members of Ad Hoc Committee

| Name of Member of Ad Hoc Committee | Address of member of Ad Hoc Committee | Name of corresponding Law Firm |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

### ATTORNEYS AT LAW
### 1201 NORTH ORANGE STREET
### SUITE 400
### WILMINGTON, DE  19801-1155

_____

### (302) 656-8162
### FACSIMILE:  (302) 656-2769

### WWW.MONLAW.COM

MELVYN I. MONZACK
RACHEL B. MERSKY
MARY ELIZABETH M. BROWDER
MICHAEL C. HOCHMAN

September 13, 2020

Eisenberg, Rothweiler, Winkler,
Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
Attn:   Stewart J. Eisenberg, Esq.
Email: stewart@erlegal.com

Kosnoff Law PLLC
1321 Upland Drive
PMB 4685
Houston, TX 77043
Attn:   Timothy D. Kosnoff, Esq.
Email: Tim@kosnoff.com

AVA Law Group, Inc.
3667 Voltaire Street
San Diego, CA 92106
Attn:   Andrew Van Arnsdale, Esq.
Email: andrew.vanarsdale@gmail.com

Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Attn:   Anne Andrews, Esq.
Email: aa@andrewsthornton.com

Slater Slater Schulman, LLP
488 Madison Avenue
20th Floor
New York, NY 10022
Attn:   Jonathan E. Schulman, Esq.
Email: jschulman@sssfirm.com

ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
Attn:   Edward E. Neiger, Esq.
Email: eneiger@askllp.com

**RE: Engagement Agreement**

Dear Stewart, Timothy, Andrew, Anne, Jonathan and Edward:

We are very pleased that the Ad Hoc Committee of Boy Scouts of America Sexual

Abuse Survivors (the "**Ad Hoc Committee**, **"Coalition of Abused Scouts for Justice"** or

"**Client**"), comprised of certain clients (each a "**Law Firm Client**" and, collectively, the "**Law**

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 2

**Firm Clients**") represented by Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Kosnoff Law PLLC, AVA Law Group, Inc., Andrews & Thornton, Slater Slater Schulman, LLP, and ASK LLP (collectively, the "**Law Firms**"), has engaged Monzack Mersky Browder and Hochman, PA ("**Monzack Mersky**") "**us**," "**we**," "**our**," or the "**Firm**"). The members of the Ad Hoc Committee are identified on Exhibit A attached hereto.

The Law Firms each represent and warrant that they have the authority to sign this Engagement Letter on behalf of their respective Law Firm Clients and bind the Law Firm Clients to the terms hereof.

## I.    Scope of Engagement

Subject to the acceptance of this Engagement Agreement by the Law Firms on behalf of their Law Firm Client members of the Ad Hoc Committee, as described herein, we have agreed to represent the Ad Hoc Committee as bankruptcy counsel as of September 4, 2020 in connection with *In re Boy Scouts of America and Delaware BSA, LLC* (the "**Debtors**" or the "**Company**"), Case No. 20-10343 (LSS) (Jointly Administered), pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Case**").

It is understood that our engagement is with the Ad Hoc Committee as a whole, and not any individual member thereof. As such, this Engagement Agreement and our engagement by the Ad Hoc Committee do not create an attorney-client relationship between Monzack Mersky Browder and Hochman, PA and any individual member of the Ad Hoc Committee. Any such relationships in other matters are governed by separate retention letters.

{00218649-2}

**MONZACK MERSKY BROWDER** AND **HOCHMAN**
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 3

**2.       Staffing, Fees, and Expenses**

Our fee structure is generally on the normal hourly rates for the lawyers and paralegals who will be working on this matter.  It is understood and agreed that the services to be rendered in this matter will be compensated at the following hourly rates:

| | |
|---|---|
| Rachel B. Mersky | $495.00 |
| Paralegal Support | $200.00 |

Other professionals within the firm may perform legal services in this matter; their hourly rates are comparable to those listed above.  The hourly rates for this firm may be adjusted in the future.  Hourly office charges shall include all legal research, drafts of pleadings, conferences, telephone conversations with you or other persons, and any other tasks necessary to handle your matter.

We will send you detailed, itemized monthly bills reflecting our services. Although the Law Firms are jointly and severally responsible for payment of our fees hereunder, they may allocate our fees in a mutually acceptable manner among themselves. As noted above, the Firm's fees and related costs and expenses shall be payable monthly, without regard to whether there are any recoveries on account of the tort claims held by the members of the Ad Hoc Committee.

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 4

**3.      Replenishing Retainer**

You shall deliver to the Firm a retainer of $25,000 (the "**Retainer**").  The Retainer, as well as any future deposits, will be held in the Firm's client trust account.  The Firm will use the Retainer to pay the fees and other charges you incur.  The Firm will typically apply funds in the Retainer upon or following delivery of monthly statements to you, but reserves the right to apply funds in the Retainer to pay any fees or other charges at any time after they are incurred and in such cases will deliver a statement to you following the application of such funds.  The Retainer will be a "**replenishing retainer**" such that your funds on deposit with the Firm will remain at no less than $25,000.  Within fifteen (15) days after notice from the Firm to you that all or a portion of the Retainer has been used to pay professional fees and/or costs, you shall deposit funds with the Firm sufficient to replenish the Retainer to an amount equal to at least $25,000.  If the billing in any monthly cycle exceeds $25,000, you shall pay within fifteen (15) days after such billing the full amount of such charges so that the  Retainer is completely restored to an amount no less than $25,000 and no receivable balance remains owing from you to the Firm. In the event that the hours expended are less than the total retainer, the firm will refund any unearned portion of the retainer.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 5

## 4.      Direction

The Firm is being retained by the Ad Hoc Committee, and not by any individual member of the Ad Hoc Committee.  The Firm shall not act on behalf of the Ad Hoc Committee in a manner that is contrary to any direction we receive from the Law Firms.

## 5.      The Ad Hoc Committee

We understand, and each member of the Ad Hoc Committee so acknowledges, that each such member has agreed to come together to form the Ad Hoc Committee because you are similarly situated tort claimants of the Debtors and you expect that you may have similar views as to matters relating to the Debtors and the tort claims.  Notwithstanding this arrangement and the execution of this Engagement Agreement: (i) each member of the Ad Hoc Committee acknowledges that no member has agreed to take on, and no member shall owe, a fiduciary duty to any of the other members; and (ii) no member has agreed to take on, nothing herein shall imply, and each member disclaims any fiduciary duty to any other holder of tort claims. Furthermore, each member acknowledges that it in no way intends or agrees to be deemed a member of a "**group**" within the meaning of Rule 13d-5 under the Securities Exchange Act of 1934, as amended, for any purpose other than the resolution of the matters specifically identified herein, or to be acting in concert in any other manner with any holder which would be in violation of, or trigger reporting or similar obligations under, applicable law.  Furthermore, neither this arrangement nor any provision of this Engagement Agreement shall (a) prevent any member of the Ad Hoc Committee from exercising or seeking to enforce or protect its rights with respect to the Debtors as it may deem appropriate, or (b) otherwise affect any member's

**MONZACK MERSKY BROWDER** AND **HOCHMAN**
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 6

ability to act or forbear from taking any action as it may deem appropriate, including effectuating any settlement with the Debtors with respect to its tort claim.

A list of each member of the Ad Hoc Committee as of the date of this letter is attached hereto as Exhibit "A". It is expressly understood and agreed that additional members may join the Ad Hoc Committee. Each member's confidential information shall remain confidential and will not be shared with any other member, except with respect to the specific subject matter of the engagement of the Firm by the Ad Hoc Committee. Each member waives any obligation of the Firm to disclose to it any information of another member that is to remain confidential as provided in the foregoing sentence.

**6.      Conflicts of Interest**

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between any client of an attorney or law firm and their existing and former clients. Each member of the Ad Hoc Committee agrees that the Firm has been engaged in this matter as legal counsel to the Ad Hoc Committee as a whole, and not individually by you or any other individual member thereof. Each member of the Ad Hoc Committee also understands and agrees that the Firm therefore will not be prevented due to legal conflicts or Rules of Professional Conduct of any kind from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Ad Hoc Committee or your respective interests (other than in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Debtors). This means that, subject to the limits

{00218649-2}

**MONZACK MERSKY BROWDER** AND **HOCHMAN**
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 7

described in the Terms, the Firm may represent another client in certain matters in which its interests are, will be, or have been adverse to the Ad Hoc Committee's interests.

**7.    Communication**

We will work BrownRudnick to keep the Ad Hoc Committee apprised of significant developments in the course of the engagement and will obtain the Ad Hoc Committee's direction on critical issues.

**8.    Records**

We will maintain your file and any documents or ancillary materials during the pendency of the transaction or litigation for which we were retained.  Upon conclusion of the matter, we will give you the opportunity to remove any materials we received from you or on your behalf.  Any materials which are not removed by you will be retained for a period of five (5) years from the date of conclusion of your matter.  At the conclusion of five years, your file, and all documents and items within it, will be sent for destruction without further notice to you.

**9.    Withdrawal**

We reserve the right to withdraw from representing you at any time if you do not honor your financial commitments to us or, of course, in the event we perceive any conflict of interest or other ethical consideration.

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 8


**10.**     **Discharge**


You have the absolute right to discharge us for any reason at any time.  We will promptly turn your file over to you or your new attorney on request.  You will remain responsible for all fees and costs incurred through the date of discharge, but payment of our final statement is not a precondition to the release of your file.


In representing you in this matter, we cannot, and do not, warrant or predict results or final developments.  Be assured that it is our desire to afford you conscientious, faithful, and diligent service, seeking at all times to achieve solutions that are just and reasonable to you.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 9

If the foregoing meets with your approval, kindly signify your consent and approval by signing your name in the space provided below, insert the date, and return a copy of this letter to me.

Very truly yours,

/s/ *Rachel Mersky*

Rachel B. Mersky

For Monzack Mersky Browder and Hochman, P.A.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.:  45-3913357

By: *Jonathan Schulman*
Name: Jonathan E. Schulman
Title:  Partner
Date:  9/14/2020
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By:  John C Thornton
Name:  A.C.T.A.L
Title:  President
Date:  Sept 18, 2020

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: 20-4258700

By: _____
Name: Stewart Eisenberg
Title: President
Date: 9/15/2020

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: 91-1525117

By: Timothy D. Kosnoff
Name: Timothy D. Kosnoff for Kosnoff Law PLLC
Title: President/Owner
Date: September 13, 2020

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:                        Consented and Agreed to:

**EISENBERG, ROTHWEILER,**                      **KOSNOFF LAW PLLC**
**WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____                 Tax ID No.: _____

By: _____                    By: _____
Name: _____                     Name: _____
Title: _____                   Title: _____
Date: _____                    Date: _____

*The Eisenberg, Rothweiler, Winkler,*           *The Kosnoff Law PLLC on behalf of itself*
*Eisenberg*                                      *and its Law Firm Clients*
*& Jeck, P.C. on behalf of itself and its Law*
*Firm Clients*

Consented and Agreed to:                        Consented and Agreed to:

**AVA LAW GROUP, INC.**                         **ANDREWS & THORNTON**

Tax ID No.: __37-1923464_____                  Tax ID No.: _____

By: _____                       By: _____
Name: _Andrew Van Arsdale___                    Name: _____
Title: __Managing Partner_____                  Title: _____
Date: __9/17/2020_____                    Date: _____

*The AVA Law Group, Inc. on behalf of itself*   *The Andrews & Thornton on behalf of itself*
*and its Law Firm Clients*                       *and its Law Firm Clients*

Consented and Agreed to:                        Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**                 **ASK LLP**

Tax ID No.: __45-3913357_____                  Tax ID No.: _____

By: _Jonathan Schulman_____                   By: _____
Name: _Jonathan E. Schulman__                   Name: _____
Title: __Partner_____                    Title: _____
Date: __9/14/2020_____                      Date: _____
*The Slater Slater Schulman, LLP on behalf of*  *The ASK LLP on behalf of itself and its Law*
*itself and its Law Firm Clients*               *Firm Clients*

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: __45-3913357_____

By: *Jonathan Schulman*
Name: __Jonathan E. Schulman_____
Title: __Partner_____
Date: __9/14/2020_____
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: ____Joseph L. Steinfeld, Jr._____
Title: _____Managing Partner_____
Date: _____September 16, 2020_____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

{00218649-2}

**EXHIBIT A**

Members of Ad Hoc Committee

| Name of Member of Ad Hoc Committee | Address of member of Ad Hoc Committee | Name of corresponding Law Firm |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |


www.provincefirm.com

November 19, 2020

**PERSONAL & CONFIDENTIAL**

David J. Molton
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
dmolton@brownrudnick.com

**RE:** ***Financial Advisory Services to the Coalition of Abused Scouts for Justice in re: Boy Scouts of America and Delaware BSA, LLC (Case No. 20-10343-LSS, United States Bankruptcy Court, District of Delaware)***

Mr. Molton:

This letter (this "<u>Letter</u>" or "<u>Agreement</u>") confirms that Brown Rudnick LLP ("<u>Brown Rudnick</u>" or "<u>Law Firm</u>"), has retained Province Inc. ("<u>Province</u>", "<u>we</u>", "<u>us</u>" or "<u>our</u>") as of October 1, 2020 to assist Law Firm in the servicing of its client, an *ad hoc* group comprised of claimants called the "*Coalition of Abused Scouts for Justice*" (with each member of such *ad* hoc group collectively and individually referred to herein as the "<u>Coalition</u>") with litigation claims against Boy Scouts of America and Delaware BSA, LLC (collectively, the "<u>Debtors</u>"), as well as potentially other affiliates of the Debtors.  Province is being retained to act as financial advisor to the Coalition and provide bankruptcy advisory and litigation consulting services to the Coalition in connection with the Debtors' cases. For purposes of this Letter, the terms "<u>you</u>" or "<u>your</u>" shall refer to Brown Rudnick, the Coalition, and Province individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>".

This agreement ("<u>Agreement</u>") sets forth the entire understanding of Province and the Parties and supersedes and cancels any prior communications and agreements between the parties, relating to the subject matter hereof.  Province has agreed to this retention, effective as of November 19, 2020, on the following terms and conditions:

1.   SCOPE OF REPRESENTATION

Province will advise and assist the Coalition with respect to the Debtors' bankruptcy and perform any and all financial advisory services as may be reasonably requested by the Coalition and agreed to by Province (collectively, the "<u>Services</u>").  Our work will be performed under Law Firm's direction, and you acknowledge that Province's work is highly dependent on the availability of the Debtors, your personnel, other contractors of yours and other factors beyond the control of Province.  Province will use commercially reasonable efforts to assist you in meeting any stated deadlines.  Province will provide a budget prior to performing specific Services, which budget must be approved by the Coalition prior to commencing such work. Province shall not perform work without prior authorization from Law Firm.



## PROVINCE
www.provincefirm.com

### 2.   PAYMENT OF PROFESSIONAL AND ANCILLARY SERVICES RENDERED

Our standard practice is to bill on a monthly basis and to include reasonable billing activity detail, but we may render bills on a more frequent basis.  We require that payment of statements be made within fifteen (15) days of receipt.  We may suspend or terminate any work in progress if timely payment is not made.

For this engagement, Province will charge fees at the rates set forth below for actual time expended, plus out-of-pocket expenses. All travel time will be billed at 50% of Province's standard hourly rates. Periodically, Province may adjust its fees to reflect company-wide pricing changes, which typically occur on July 1 of each year, as well as rate modifications associated with customary promotions of engagement personnel.  The below rates are effective as of July 1, 2020.

| Professional Level | Per Hour (USD) |
| --- | --- |
| Principal | $880-975 |
| Managing Director | $670-790 |
| Senior Director | $600-670 |
| Director | $550-600 |
| Vice President | $510-550 |
| Senior Associate | $430-510 |
| Associate | $360-430 |
| Analyst | $240-360 |
| Para Professional | $185 |

In addition to the fees described above, the Coalition agrees to promptly reimburse Province for all out-of-pocket expenses reasonably incurred by Province in connection with the matters contemplated by this Agreement, including, without limitation, reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement.  All such expenses will be billed on a monthly basis and will be payable upon receipt by the Coalition.  A detailed schedule of expenses will be provided with each invoice.

We agree (1) to submit invoices to the Coalition with a copy to Brown Rudnick, and (2) that the Coalition, and not Brown Rudnick, is responsible for prompt payment of invoices, including full payment of any outstanding balance.  Payment in full on all invoiced amounts will be due from the Coalition within thirty (30) days from date of invoice.  Any amounts not paid by the Coalition within thirty (30) days shall accrue interest at a rate of ten percent (10%) per annum ("Interest").

All payments to Province shall be made without offset, counterclaim, reduction, or defense of any kind, and shall be free of, and without deduction for, any taxes or other charges.  For the avoidance of doubt, the Coalition shall be solely liable for the fees and expenses incurred by Province hereunder.

Province will provide the Parties with monthly (or more often) statements of fees and expenses billed at our normal hourly rates, which will set forth the time spent by each professional and his or her respective hourly rate, as well as a summary paragraph describing the work performed by Province in the relevant period (but will not include any additional detail).  When we have completed our services to the Coalition, our final statement will be given to the Parties and shall reflect the final amount that is payable under this Agreement.

# PROVINCE
www.provincefirm.com

Province, Law Firm, and the Coalition shall each have the right without cause to terminate this Letter upon two weeks' prior written notice, with a copy being provided to the other party. The provisions of this Letter, which by their nature, context and purpose, should survive the termination of this Letter, shall so survive. In the event of such termination, the Coalition will pay Province for all Services rendered and expenses incurred by Province through the date of termination within seven (7) days. After termination or expiration of this Letter, for so long as Law Firm and Province are actively negotiating a new agreement for Province's provision of services to Law Firm and the Coalition that is substantially similar to those provided under this Letter, the provisions of this Letter, including any payment terms, shall apply to such services provided by Province prior to the finalization of such new agreement. Upon notice of termination, if requested, Province shall turn over all work product, files, work in process, and confidential material information to Law Firm.

Province's duties hereunder run solely to the Coalition (not to the members, individually). We agree that our relationship with Law Firm and the Coalition under this Letter will be that of an independent contractor, and that nothing in this Letter will be construed to constitute us, or any of our employees or subcontractors, as employees, agents, joint venturers or partners of Law Firm or the Coalition. We agree that we have no authority to bind, commit or obligate Law Firm or the Coalition in any manner, and we agree not to represent to third parties as being capable of doing so.

3. CONFLICTS

At this time, we are not aware of any conflict of interest that would impede our retention based on the information Law Firm provided to Province. If a conflict should arise, we will notify Law Firm promptly, and we will work with Law Firm in attempting to resolve the conflict.

4. CONFIDENTIALITY/NON-SOLICITATION

Province shall keep as confidential all non-public information received from the Law Firm and the Coalition in conjunction with this engagement, except: (i) as requested by the Law Firm; (ii) as required by legal proceedings (provided that, to the extent permissible and reasonably practicable, Province shall give the Law Firm and the Coalition prior written notice of such required disclosure so that they may seek a protective order or other appropriate remedy, and Province will provide reasonable assistance to the Law Firm and/or the Coalition (all at the Coalition's sole expense) in obtaining such an order or other similar remedy); or (iii) as reasonably required in the performance of this engagement.

5. INDEMNIFICATION

The Coalition agrees to indemnify and hold harmless each of Province, its direct and indirect affiliates, and each of their direct and indirect shareholders, principals, managers, members, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations, disbursements and expenses, including the actual cost (fees and disbursements), for counsel or others (including employees or consultants of Province, based on their then current hourly billing rates) in investigating, preparing for or defending any action or claim (collectively "Losses"), whether or not such Losses are incurred in connection with any pending or threatened litigation in which any Indemnified Party is a party or in enforcing this Agreement (including these indemnity provisions), as and when incurred, which are caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement or the provision of any Services or Other Services; provided, however, such indemnity shall not apply to any Losses to the extent

# PROVINCE
www.provincefirm.com

it is found by final order of a court of competent jurisdiction to have resulted primarily and directly from: (i) Province's breach of this Agreement, or (ii) an Indemnified Party's negligence or willful misconduct. The Coalition shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation that are subject to indemnification by the Coalition hereunder, as incurred upon submission of invoices thereof, provided that the Coalition, at its discretion, may select and pay attorneys defending the action.

6.  MISCELLANEOUS

a)  Modification.  This Agreement shall not be varied, altered, modified, cancelled, changed or in any way amended except by mutual agreement of the Parties in a written instrument executed by the Parties or their legal representatives.

b)  Governing Law; Venue.  To the extent not preempted by Federal law, the provisions of this Agreement shall be construed and enforced in accordance with the internal laws of the State of Nevada without further application of its choice of law principles.  The Parties further submit to the exclusive jurisdiction of the courts of appropriate jurisdiction located within Clark County, Nevada in relation to any dispute involving the Parties related to this Agreement.

c)  Liability Limitation.   Province's liability for any action or inaction taken hereunder, whether sounding in tort or contract, shall be limited to the amount of the fees billed hereunder to the Coalition for the three (3) calendar months prior to incident that allegedly caused such liability. Additionally, no party hereunder shall be liable to the other for any special, consequential or punitive damages.

d)  Notice.  Any notices, requests, demands or other communications required by or provided for in this Agreement shall be sufficient if in writing and sent by registered or certified mail to Province at the attention of General Counsel, 2360 Corporate Circle, Suite 330, Henderson, Nevada 89074 or, in the case of the Coalition, to the Law Firm.

e)  Survival.   The provisions and subparts of the paragraphs hereof labeled "COMPENSATION", "INDEMNIFICATION", "CONFIDENTIALITY", "NON-SOLICITATION", and "MISCELLANEOUS" shall survive any termination of this Agreement and shall remain enforceable according to their terms.

f)  Counterparts.  The provisions of this letter agreement may be modified in a subsequent writing executed by the parties hereto.  This letter agreement may be executed in counterparts, which counterparts, when fully executed and considered together, shall constitute our agreement with respect to the subject matter hereof.

g)  Authority.  Each person executing below on behalf of any Party represents and warrants to each of the Parties hereto that such person has the requisite authority and approval to execute this Agreement on such Party's behalf.

If the foregoing accurately sets forth our agreement, kindly countersign and return a copy of this letter to me.  Upon such execution this letter will supersede all prior understandings regarding the subject matter hereof and will constitute the binding agreement of Province and the Parties.

# PROVINCE
www.provincefirm.com

Sincerely,

*Province, Inc.*

By: _____

Michael Atkinson
*Principal*

**AGREED BY BROWN RUDNICK LLP**

_____

David Molton

Date: November 19, 2020
_____

Title:    Partner

**AGREED BY THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/
_____
JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098
By: Harris Junell
Title: Partner

/s/
_____
KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112
By: Adam Krause
Title: Partner

/s/
_____
MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165
By: Joseph J. Cappelli
Title: Partner

/s/
_____
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
By: Joseph Rice
Title: Partner

# PROVINCE

www.provincefirm.com

Sincerely,

*Province, Inc.*

By: _____

     Michael Atkinson
     *Principal*

**AGREED BY BROWN RUDNICK LLP**

_____

David Molton

Date: _____

Title:   Partner

**AGREED BY THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/ _____

JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098
By: Harris Junell
Title: Partner

/s/ _____

KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112
By: Adam Krause
Title: Partner

/s/ _____

MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165
By: Joseph J. Cappelli
Title: Partner

/s/ _____

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
By: Joseph Rice
Title: Partner

63900841 v3-WorkSiteUS-036293/0001

# PROVINCE

www.provincefirm.com

Sincerely,

*Province, Inc.*

By:   _____

      Michael Atkinson
      *Principal*


**AGREED BY BROWN RUDNICK LLP**

_____

David Molton

Date: _____

Title:   Partner


**AGREED BY THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/ _____
JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098
By: Harris Junell
Title: Partner

/s/ _____
KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112
By: Adam Krause
Title: Partner


/s/ _____
MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165
By: Joseph J. Cappelli
Title: Partner

/s/ _____
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
By: Joseph Rice
Title: Partner

63900841 v3-WorkSiteUS-036293/0001

# PROVINCE

www.provincefirm.com

Sincerely,

*Province, Inc.*

By: _____

      Michael Atkinson
      *Principal*


**AGREED BY BROWN RUDNICK LLP**


_____

David Molton

Date: _____

Title:    Partner


**AGREED BY THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**


/s/ _____
JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098
By: Harris Junell
Title: Partner

/s/ _____
KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112
By: Adam Krause
Title: Partner


/s/ _____
MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165
By: ~~Joseph J. Cappelli~~ Marc J Bern
Title: Partner

/s/ _____
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
By: Joseph Rice
Title: Partner

63900841 v3-WorkSiteUS-036293/0001

# PROVINCE

www.provincefirm.com

/s/ _____

NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017
By: Hunter Shkolnik
Title: Partner

/s/ _____

SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022
By: Adam P. Slater
Title: Partner

/s/ _____

ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
By: Jennifer Christian
Title: Partner

/s/ _____

REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027
By: Dennis Reich
Title: Partner

/s/ _____

ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
By: Anne Andrews
Title: Partner

/s/ _____

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103
By: Stewart Eisenberg
Title: Partner

ON BEHALF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE

Date: _____

# PROVINCE
www.provincefirm.com

/s/
_____
NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11ᵗʰ Fl.
New York, NY 10017
By: Hunter Shkolnik
Title: Partner

/s/
_____
REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027
By: Dennis Reich
Title: Partner

/s/
_____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022
By: Adam P. Slater    Jonathan E. Schulman
Title: Partner

/s/
_____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
By: Anne Andrews
Title: Partner

/s/
_____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
By: Jennifer Christian
Title: Partner

/s/
_____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103
By: Stewart Eisenberg
Title: Partner

/s/
_____
WELLER GREEN
TOUPS & TERRELL LLP
2615 Calder Ave. Ste. 400
Beaumont, TX 77702
By: Mitchell Toups
Title: Partner

ON BEHALF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE

63900841 v3-WorkSiteUS-036293/0001

# PROVINCE

www.provincefirm.com

/s/_____
NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11ᵗʰ Fl.
New York, NY 10017
By: Hunter Shkolnik
Title: Partner

/s/_____
REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027
By: Dennis Reich
Title: Partner

/s/_____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022
By: Adam P. Slater
Title: Partner

/s/_____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
By: Anne Andrews
Title: Partner

/s/_____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
By: Jennifer Christian
Title: Partner

/s/_____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103
By: Stewart Eisenberg
Title: Partner

/s/_____
WELLER GREEN
TOUPS & TERRELL LLP
2615 Calder Ave. Ste. 400
Beaumont, TX 77702
By: Mitchell Toups
Title: Partner

ON BEHALF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE

Date: _____

T: (702) 685-5555   F: (702) 685-5556

LAS VEGAS | LOS ANGELES | MIAMI | BALTIMORE

# PROVINCE

www.provincefirm.com

/s/_____
NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017
By: Hunter Shkolnik
Title: Partner

/s/_____
REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027
By: Dennis Reich
Title: Partner

/s/_____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022
By: Adam P. Slater
Title: Partner

/s/_____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
By: Anne Andrews
Title: Partner

/s/_____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
By: Joseph L. Steinfeld, Jr.
Title: Managing Partner

/s/_____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103
By: Stewart Eisenberg
Title: Partner

/s/_____
WELLER GREEN
TOUPS & TERRELL LLP
2615 Calder Ave. Ste. 400
Beaumont, TX 77702
By: Mitchell Toups
Title: Partner

ON BEHALF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE

Date: _____

T: (702) 685-5555   F: (702) 685-5556

LAS VEGAS | LOS ANGELES | MIAMI | BALTIMORE

63900841 v3-WorkSiteUS-036293/0001

# PROVINCE

www.provincefirm.com

/s/ _____
NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017
By: Hunter Shkolnik
Title: Partner

/s/ _____
REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027
By: Dennis Reich
Title: Partner

/s/ _____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022
By: Adam P. Slater
Title: Partner

/s/ _____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
By: Anne Andrews
Title: Partner

/s/ _____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
By: Jennifer Christian
Title: Partner

/s/ _____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103
By: Stewart Eisenberg
Title: Partner

/s/ _____
WELLER GREEN
TOUPS & TERRELL LLP
2615 Calder Ave. Ste. 400
Beaumont, TX 77702
By: Mitchell Toups
Title: Partner

ON BEHALF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE

Date: _____

63900841 v3-WorkSiteUS-036293/0001

# PROVINCE

www.provincefirm.com

---

/s/_____

NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017
By: Hunter Shkolnik
Title: Partner

/s/_____

SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022
By: Adam P. Slater
Title: Partner

/s/_____

ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
By: Jennifer Christian
Title: Partner

/s/_____

REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027
By: Dennis Reich
Title: Partner

/s/_____

ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
By: Anne Andrews
Title: Partner

/s/_____

EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103
By: Stewart Eisenberg
Title: Partner

/s/_____

WELLER GREEN
TOUPS & TERRELL LLP
2615 Calder Ave. Ste. 400
Beaumont, TX 77702
By: Mitchell Toups
Title: Partner

ON BEHALF OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE

Date: _____

63900841 v3-WorkSiteUS-036293/0001



office 503-222-1812
1030 SW MORRISON ST
PORTLAND, OR 97205
www.pfglaw.com

IN REPLY PLEASE REFER TO FILE NO.: **0001.060**

January 4, 2021

***Via Email***

Junell & Associates PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098
Attn: Harris Junell
hjunell@junell-law.com

Marc J. Bern & Partners LLP
One Grand Central Pl.
60 East 42ⁿᵈ St., Ste. 950
New York, NY 10165
Attn: Joseph J. Cappelli
jcappelli@bernllp.com

Slater Slater Schulman, LLP
488 Madison Avenue
20th Floor
New York, NY 10022
Attn: Adam P. Slater
aslater@sssfirm.com

ASK LLP
151 West 46ᵗʰ Street
4ᵗʰ Floor
New York, NY 10036
Attn: Jennifer Christian
jchristian@askllp.com

Babin Law, LLC
1320 Dublin Road, #100
Columbus, OH 43215
Attn: Steven C. Babin
Steven.babin@babinlaws.com

Krause & Kinsman LLC
4717 Grand Ave., #300
Kansas City, MO 64112
Attn: Adam Krause
adam@krauseandkinsman.com

Levin Papantonio Thomas Mitchell Rafferty &
Procter P.A.
316 South Baylen St.
Pensacola, FL 32502
Attn: Brandon Bogle
bbogle@levinlaw.com

Reich & Binstock LLP
4265 San Felipe St., #1000
Houston, TX 77027
Attn: Dennis Reich
dreich@reichandbinstock.com

Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Attn: Anne Andrews, Managing Partner
aa@andrewsthornton.com

Eisenberg, Rothweiler,l Winkler, Eisenberg &
Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
Attn: Stewart J. Eisenberg
stewart@erlegal.com

**MICHAEL E. FARNELL** *Attorney at Law*
mfarnell@pfglaw.com | Admitted in OR & WA

O:\0001060\Boy Scouts of America\0001b mef engagement ltr.docx

Coalition of Abused Scouts for Justice
January 4, 2021
Page 2

Bailey Cowan Heckaman PLLC
5555 San Felipe St. Ste. 900
Houston, TX 77056
Attn: Robert W. Cowan
rcowan@bchlaw.com

Jason J. Joy & Associates, PLLC
909 Texas St, Ste 1801
Houston, TX 770022
Attn: Jason Joy
jason@jasonjoylaw.com

Re:    **Engagement Letter - Insurance Coverage Advice**
       **Coalition of Abused Scouts for Justice**
       *In re:  Boy Scouts of America and Delaware BSA, LLC*
       United States Bankruptcy Court for the District of Delaware
       Case No.:  20-1-343 (LSS)

Counsel:

Thank you for asking Parsons Farnell & Grein, LLP to provide insurance coverage advice to the *ad hoc* Coalition of Abused Scouts for Justice (the "Coalition"), which is comprised of certain clients (each a "Law Firm Client" and collectively, the "Law Firm Clients") represented by the firms identified above (the "Law Firms") as well as such other firms as may agree to be bound by the Coalition's bylaws and participate in the Coalition in connection with the above-referenced bankruptcy proceedings.  We are pleased that the Coalition has chosen us as its insurance coverage counsel, and we would like to take this opportunity to confirm the terms of our representation.

The Law Firms each represent and warrant that they have the authority to sign this engagement letter on behalf of their respective Law Firm Clients and bind the Law Firm Clients and the Coalition to the terms hereof.

**Scope of Engagement**.  Subject to the acceptance of this Engagement Agreement by the Law Firms on behalf of their Law Firm Client members of the Coalition, as described herein, we have agreed to represent the Coalition as insurance counsel as of December 14, 2020 in connection with *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (Jointly Administered), pending in the United States Bankruptcy Court for the District of Delaware.  It is understood that our engagement is with the Coalition as a whole, and not any individual member thereof. As such, this engagement letter and our engagement by the Coalition do not create an attorney-client relationship between this firm and any individual member of the Coalition. This firm shall not act on behalf of the Coalition in a manner that is contrary to any direction we receive from the Law Firms.

Coalition of Abused Scouts for Justice
January 4, 2021
Page 3

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between any client of an attorney or law firm and their existing and former clients. Each Law Firm and each member of the Coalition agrees that this firm has been engaged in this matter as legal counsel to the Coalition as a whole, and not individually by any Law Firm or member of the Coalition. Each Law Firm and each member of the Coalition also understands and agrees that this firm therefore will not be prevented due to legal conflicts or Rules of Professional Conduct of any kind from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Coalition or your respective interests (other than in connection with the interests of the Coalition as a whole as they relate to the debtors in the above-referenced bankruptcy proceeding). This means that, subject to the limits described herein, this firm may represent another client in certain matters in which its interests are, will be, or have been adverse to the Coalition's interests.

Effective legal representation requires absolute trust and candor between attorney and client. We ask that you keep us informed of all information pertinent to our representation and that you respond promptly and completely to our requests for documents and other information that we may require so that we, in turn, can provide you with the best legal services. Your attention to these matters will also help us render services in the most cost-effective and efficient manner. We will keep you informed of our work and will send you copies of all pertinent documents and correspondence, whether prepared by us or received from other sources.

We view all communications between us and pertaining to our representation, subject to certain specific exceptions as provided by law, as confidential. Again, subject to certain exceptions, we view your communications with us, and ours with you, as protected by the attorney-client privilege and, as such, they generally cannot be obtained by third parties who may later take or claim an interest in them. The privilege can be waived, however, if a privileged communication is disclosed to an unprivileged third party. It is critical that you do not relate any portion of a conversation with this office or disclose any portion of a written communication from this office to an unprivileged third party, as doing so creates the risk of losing the benefit of the attorney-client privilege with respect to all communications--past, present and future. You should not summarize legal advice we may give you to third parties (e.g., statements that start with, "My attorney told me . . ." signal that you are about to disclose privileged information) or forward our written communications to unprivileged third parties, including e-mails. If you have any questions about preserving the privilege or whether a contemplated disclosure will potentially violate the privilege, please let us know.

The Law Firms will be billed monthly for our services and disbursements made on its behalf (e.g., filing or recording fees, electronic research costs, certain reproduction expenses, court fees, travel costs, etc.) in conformity with the fee schedule which is attached to and made a

Coalition of Abused Scouts for Justice
January 4, 2021
Page 4

part of this agreement.  My current hourly rate is $475 and Gabriel Le Chevallier's current hourly rate is $375.  The Coalition is responsible for keeping the account current at all times. The Law Firms are jointly and severally responsible for payment of our fees and disbursements hereunder; however, they may allocate our fees in a mutually acceptable manner among themselves.  In the event that we encounter unanticipated large expenditures prior to the end of a billing cycle, we may refer the bill to the Coalition for immediate payment. Our monthly invoices are payable upon receipt.  Our billing policies, including our policy on charging interest on unpaid amounts, are explained in the Disclosure Statement attached to this letter.

We request a $25,000 deposit to retain our services.  The retainer will be deposited in our client trust account and will be applied to the final bill, or to the Coalition's account any time prior to the final bill should any balance on the account remain unpaid for 45 days or more.  In the latter case, all outstanding balances must be paid in full and the retainer must be replenished in the next billing cycle following its application.  We reserve the right to suspend further services, subject to the applicable Oregon Rules of Professional Conduct, until such time as the Coalition's account is current and the retainer is replenished.

We are sensitive to the cost of legal services and we make every effort to keep our fees and costs reasonable.  Nonetheless, it is not always possible to keep fees and costs as low as we initially estimate or would like.  We therefore reserve the right to increase our rates and fees annually.  If you have questions at any time regarding our bill, any services rendered or the estimated cost of additional services, please let us know so that we can address your concerns as soon as possible and before additional fees are incurred.

The Coalition may, of course, terminate our representation at any time.  We have a corresponding right to terminate our representation, subject to the applicable ethics rules, in the event that the Coalition fails to comply with the terms of our agreement, fails to timely pay our monthly statements, or if we determine that to continue our representation would be unethical or impractical.  In the event our representation terminates, the Coalition may obtain a copy of its client file upon request, subject to applicable law and ethics rules.

Please review this letter carefully.  Provided that the Coalition agrees with the terms of our representation, please have the appropriate party sign and date the letter in the space provided below, retain a copy for your records, and return the signed original to this office at your earliest convenience.

We certainly thank you for coming to us for your legal services and look forward to working with you.  Please do not hesitate to call if you have any questions.

Very truly yours,

Coalition of Abused Scouts for Justice
January 4, 2021
Page 5

                                Michael E. Farnell
                                Attorney at Law

MEF/GJL/kak
Enclosures

Coalition of Abused Scouts for Justice
January 4, 2021
Page 7

/s/ _____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022

Name: _____

Title: _____

Date: _____


/s/ _____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660

Name: _____

Title: _____

Date: _____


/s/ _____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036

Name: _____

Title: _____

Date: _____


/s/ _____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103

Name: _____

Title: _____

Date: _____


/s/ _____
BABIN LAW, LLC
1320 Dublin Road, #100
Columbus, OH 43215

Name: _____

Title: _____

Date: _____


s/ _____
JASON J. JOY & ASSOCIATES, PLLC
909 Texas St, Ste 1801
Houston, TX 770022

Name: _____

Title: _____

Date: _____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 6

/s/_____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022

Name: _____

Title: _____

Date: _____

/s/_____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036

Name: \_\_\_Joseph L. Steinfeld, Jr.\_\_\_

Title: \_\_\_Managing Partner_____

Date: \_\_\_January 5, 2021_____

/s/_____
BABIN LAW, LLC
1320 Dublin Road, #100
Columbus, OH 43215

Name: _____

Title: _____

Date: _____

/s/_____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660

Name: _____

Title: _____

Date: _____

/s/_____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103

Name: _____

Title: _____

Date: _____

s/_____
JASON J. JOY & ASSOCIATES, PLLC
909 Texas St, Ste 1801
Houston, TX 770022

Name: _____

Title: _____

Date: _____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 6

/s/ _____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022

Name: _____

Title: _____

Date: _____

/s/ _____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660

Name: _Anne Andrews_

Title: _Senior Partner_

Date: _1/11/2021_

/s/ _____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036

Name: _____

Title: _____

Date: _____

/s/ _____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103

Name: _____

Title: _____

Date: _____

/s/ _____
BABIN LAW, LLC
1320 Dublin Road, #100
Columbus, OH 43215

Name: _____

Title: _____

Date: _____

s/ _____
JASON J. JOY & ASSOCIATES, PLLC
909 Texas St, Ste 1801
Houston, TX 770022

Name: _____

Title: _____

Date: _____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 5

**AGREED BY THE VOTING REPRESENTATIVES OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/ _____

JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098

Name: _____

Title: _____

Date: _____


/s/ _____

MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165

Name: _____

Title: _____

Date: _____


/s/ _____

NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017

Name: _____

Title: _____

Date: _____


/s/ _____

KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112

Name: _____

Title: _____

Date: _____


/s/ _____

LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTER P.A.
316 South Baylen St.
Pensacola, FL 32502

Name: CAMERON STEPHENSON

Title: Shareholder

Date: 1-5-21


/s/ _____

REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027

Name: _____

Title: _____

Date: _____

Name:

Title:

Date:

/s/
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022

Name:

Title:

Date:

/s/
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036

Name:

Title:

Date:

/s/
BABIN LAW, LLC
1320 Dublin Road, #100
Columbus, OH 43215

Name:

Title:

Date:

Title:

Date:

/s/
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660

Name:

Title:

Date:

/s/
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103

Name: Stewart Eisenberg

Title: President

Date: 1/5/2021

s/
JASON J. JOY & ASSOCIATES, PLLC
909 Texas St, Ste 1801
Houston, TX 770022

Name:

Title:

Date:

s/
BAILEY COWAN HECKAMAN PLLC
5555 San Felipe St. Ste. 900
Houston, TX 77056

Name:

Title:

Date:

O:\0001060\Boy Scouts of America\0001b mef engagement ltr.docx

Coalition of Abused Scouts for Justice
January 4, 2021
Page 5

**AGREED BY THE VOTING REPRESENTATIVES OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/ _[signature]_

JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098

Name: _Deborah Levy_

Title: _Partner_

Date: _1/5/21_

/s/ _____

KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112

Name: _____

Title: _____

Date: _____

/s/ _____

MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165

Name: _____

Title: _____

Date: _____

/s/ _____

LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTER P.A.
316 South Baylen St.
Pensacola, FL 32502

Name: _____

Title: _____

Date: _____

/s/ _____

NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017

Name: _____

Title: _____

Date: _____

/s/ _____

REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027

Name: _____

Title: _____

Date: _____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 5

**AGREED BY THE VOTING REPRESENTATIVES OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/ _____
JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098

Name: _____

Title: _____

Date: _____

/s/ _____
KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112

Name: _____

Title: _____

Date: _____

/s/ _____
MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165

Name: _____

Title: _____

Date: _____

/s/ _____
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTER P.A.
316 South Baylen St.
Pensacola, FL 32502

Name: _____

Title: _____

Date: _____

/s/ _____
NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017

Name: _____

Title: _____

Date: _____

/s/ _____
REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027

Name: Dennis Reich

Title: Partner

Date: 1/5/2021

Coalition of Abused Scouts for Justice
January 4, 2021
Page 5

**AGREED BY THE VOTING REPRESENTATIVES OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/ _____
JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098

Name: _____

Title: _____

Date: _____


/s/ _____
KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112

Name: _____

Title: _____

Date: _____


/s/ *Jad J Cappell*
MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165

Name: *Joseph J. Cappelli*

Title: *Partner*

Date: *1/7/21*


/s/ _____
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTER P.A.
316 South Baylen St.
Pensacola, FL 32502

Name: _____

Title: _____

Date: _____


/s/ _____
NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017

Name: _____

Title: _____

Date: _____


/s/ _____
REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027

Name: _____

Title: _____

Date: _____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 5

**AGREED BY THE VOTING REPRESENTATIVES OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE:**

/s/

JUNELL & ASSOCIATES PLLC
3737 Buffalo Speedway Ste. 1850
Houston, TX 77098

Name: _____

Title: _____

Date: _____

/s/

KRAUSE & KINSMAN LLC
4717 Grand Ave. #300
Kansas City, MO 64112

Name: Adam Krause

Title: Lawyer

Date: 01/07/2021

/s/

MARC J. BERN & PARTNERS LLP
One Grand Central Pl.
60 East 42nd St. Ste. 950
New York, NY 10165

Name: _____

Title: _____

Date: _____

/s/

LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTER P.A.
316 South Baylen St.
Pensacola, FL 32502

Name: _____

Title: _____

Date: _____

/s/

NAPOLI SHKOLNIK PLLC
360 Lexington Ave. 11th Fl.
New York, NY 10017

Name: _____

Title: _____

Date: _____

/s/

REICH & BINSTOCK LLP
4265 San Felipe St. #1000
Houston, TX 77027

Name: _____

Title: _____

Date: _____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 6

/s/_____
SLATER SLATER SCHULMAN LLP
488 Madison Avenue
20th Floor
New York, NY 10022

Name: _____

Title: _____

Date: _____


/s/_____
ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036

Name: _____

Title: _____

Date: _____


/s/_____
BABIN LAW, LLC
1320 Dublin Road, #100
Columbus, OH 43215

Name: _____

Title: _____

Date: _____


/s/_____
ANDREWS & THORNTON
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660

Name: _____

Title: _____

Date: _____


/s/_____
EISENBERG, ROTHWEILER, WINKLER,
EISENBERG & JECK, P.C.
1634 Spruce Street
Philadelphia, PA 19103

Name: _____

Title: _____

Date: _____


s/_____
JASON J. JOY & ASSOCIATES, PLLC
909 Texas St, Ste 1801
Houston, TX 770022

Name: _Jason J. Joy_____

Title: _Managing Partner____

Date: _1/27/21_____

Coalition of Abused Scouts for Justice
January 4, 2021
Page 7

s/ _____

BAILEY COWAN HECKAMAN PLLC
5555 San Felipe St. Ste. 900
Houston, TX 77056

Name:  Robert W. Cowan

Title:  Partner

Date:  January 5, 2021

## STATEMENT OF RESIGNATION

The undersigned, individually and on behalf of their respective law firm, resigns from the Coalition of Abused Scouts for Justice (the "Coalition") effective September 29, 2020, and confirms that as of such date:

- They no longer hold any position within the Coalition as a Representative, Member or otherwise; and

- They are no longer party to those engagement letters between the Coalition and (a) Brown Rudnick LLP, dated July 21, 2020, and (b) Monzack Mersky Browder and Hochman, P.A., dated September 13, 2020.


AVA Law Group, Inc.


By: _____          Dated: _10/7/20_____
      Name:  Andrew Van Arsdale
      Title:   Member

## STATEMENT OF RESIGNATION

The undersigned, individually and on behalf of their respective law firm, resigns from the Coalition of Abused Scouts for Justice (the "Coalition") effective September 29, 2020, and confirms that as of such date:

- They no longer hold any position within the Coalition as a Representative, Member or otherwise; and

- They are no longer party to those engagement letters between the Coalition and (a) Brown Rudnick LLP, dated July 21, 2020, and (b) Monzack Mersky Browder and Hochman, P.A., dated September 13, 2020.


KOSNOFF  LAW PLLC


By: _____          Dated: October 5, 2020
      Name: TIMOTHY D. KOSNOFF
      Title: OWNER/PRESIDENT

**EXHIBIT E**

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of December 15, 2020 by and between (a) Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP, Monzack Mersky Browder and Hochman, P.A., and Province, Inc. (together, "<u>Professionals</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020, as may be supplemented and amended from time to time (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, Province Inc. and the Coalition have entered into that certain Engagement Letter dated as of November 19, 2020 (the "<u>Province Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter, MMBH Engagement Letter, and the Province Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Professionals and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.     Joinder.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Professionals agree to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.     Amendment.  Professionals and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the CASJ Engagement Letters titled "Staffing, Fees, and Expenses," the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.     Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.     Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of December 15, 2020.

By: *Brandon Bogle*
Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor


By:_____
    Name:
    Title:


BROWN RUDNICK LLP


By:_____
    Name:  Sunni P. Beville


MONZACK MERSKY BROWDER AND HOCHMAN, P.A.


By:_____

2.     Joinder. New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder. Professionals agree to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.     Amendment. Professionals and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the CASJ Engagement Letters titled "Staffing, Fees, and Expenses," the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.     Effect. Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.     Counterparts. This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of December 15, 2020.

By: Brandon Bosle
Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor

By:
Name:
Title:

BROWN RUDNICK LLP

By:
Name: Sunni P. Beville

MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: Rachel B. Mersky

Name:  Rachel B. Mersky

PROVINCE, INC.


By:

Name:  Michael Atkinson

**EXHIBIT E**

**Engagement Letter Joinder Form**

AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Definitions. Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    Joinder. New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder. Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.

        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 29th, 2020.

By:
Junell & Associates, PLLC

By:_____
    Name:  Harris Junell
    Title:  Managing Partner


BROWN RUDNICK LLP


By:_____
    Name:  Sunni P. Beville


MONZACK MERSKY BROWDER AND HOCHMAN, P.A.


By:_____
    Name:  Rachel B. Mersky

3.    <u>Amendment</u>. Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    <u>Effect</u>. Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    <u>Counterparts</u>. This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 29th, 2020.

                            By:
                            Junell & Associates, PLLC

                            By:_____
                                Name:  Harris Junell
                                Title:  Managing Partner


                            BROWN RUDNICK LLP



                            By:_____
                                Name:  Sunni P. Beville



                            MONZACK MERSKY BROWDER AND
                            HOCHMAN, P.A.

                            By: _Rachel B. Mersky_____
                                Name:  Rachel B. Mersky

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of September 25, 2020 by and between (a) Reich and Binstock, LLP (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    <u>Amendment</u>.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    <u>Effect</u>.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    <u>Counterparts</u>.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 25, 2020.

By: REICH AND BINSTOCK, LLP

By: _____
     Name: Dennis Reich


BROWN RUDNICK LLP

By: _____
     Name:  Sunni P. Beville


MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: _____
     Name:  Rachel B. Mersky

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 25, 2020.

                        By: REICH AND BINSTOCK, LLP

                        By: _____
                            Name: Dennis Reich


                        BROWN RUDNICK LLP

                        By: _____
                            Name:  Sunni P. Beville


                        MONZACK MERSKY BROWDER AND
                        HOCHMAN, P.A.

                        By: _Rachel B. Mersky_____
                            Name:  Rachel B. Mersky

**EXHIBIT E**

**Engagement Letter Joinder Form**

## AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of September 24, 2020  by and between (a) Marc J. Bern & Partners, LLP  (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 24, 2020.

By:  Marc J. Bern & Partners, LLP


By: _____
Name:  Joseph J. Cappelli
Title: Partner


BROWN RUDNICK LLP


By: _____
Name:  Sunni P. Beville


MONZACK MERSKY BROWDER AND HOCHMAN, P.A.


By: _____
Name:  Rachel B. Mersky

*Privileged and Confidential/Subject to Common Interest*

**EXHIBIT E**

**Engagement Letter Joinder Form**

AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS


This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Definitions.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.      Joinder.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

*Privileged and Confidential/Subject to Common Interest*

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of 9/23/2020.

                              By:  Adam Krause

                              By: _____
                                  Name: Adam Krause
                                  Title: Partner


                              BROWN RUDNICK LLP


                              By: _____
                                  Name:  Sunni P. Beville


                              MONZACK MERSKY BROWDER AND
                              HOCHMAN, P.A.


                              By: _____
                                  Name:  Rachel B. Mersky

*Privileged and Confidential/Subject to Common Interest*

3.     Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.     Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.     Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of 9/23/2020.

                          By:  Adam Krause


                          By: _____
                              Name: Adam Krause
                              Title: Partner


                          BROWN RUDNICK LLP


                          By:_____
                              Name:  Sunni P. Beville


                          MONZACK MERSKY BROWDER AND
                          HOCHMAN, P.A.


                          By:_____
                              Name:  Rachel B. Mersky

<u>EXHIBIT E</u>

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of December 15, 2020 by and between (a) Bailey Cowan Heckaman PLLC and Danziger & De Llano LLP Claimant Group (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP, Monzack Mersky Browder and Hochman, P.A., and Province, Inc. (together, "<u>Professionals</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020, as may be supplemented and amended from time to time (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, Province Inc. and the Coalition have entered into that certain Engagement Letter dated as of November 19, 2020 (the "<u>Province Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter, MMBH Engagement Letter, and the Province Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Professionals and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Professionals agree to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    <u>Amendment</u>.  Professionals and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the CASJ Engagement Letters titled "Staffing, Fees, and Expenses," the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    <u>Effect</u>.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    <u>Counterparts</u>.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of December 15, 2020.

                            BAILEY COWAN HECKAMAN PLLC &
                            DANZIGER & DE LLANO LLP CLAIMANT
                            GROUP


                            By: _____
                              Name:  K. Camp Bailey, on behalf of
                              Bailey Cowan Heckaman PLLC and
                              Danziger & De Llano LLP Claimants' Group


                            By: _____
                              Name:  Paul Danziger, on behalf of
                              Bailey Cowan Heckaman PLLC and
                              Danziger & De Llano LLP Claimants' Group



                            BROWN RUDNICK LLP


                            By: _____
                              Name:  Sunni P. Beville

MONZACK MERSKY BROWDER AND
HOCHMAN, P.A.

By:_____
   Name:  Rachel B. Mersky

PROVINCE, INC.

By:_____
   Name:  Michael Atkinson

MONZACK MERSKY BROWDER AND
HOCHMAN, P.A.

By: _____
Name: Rachel B. Mersky

PROVINCE, INC.

By: _____
Name: Michael Atkinson

**New Member Attorney Coalition Membership Form**

I, Steven C. Babin, Jr. of Babin Law, LLC, located at 140 E. Town St. Suite 1100, Columbus, Ohio 43215, declare under penalty of perjury that I have read in their entirety and understand:

- The *Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "<u>Bylaws</u>");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Blank Rome LLP dated July 24, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I intend that each of my clients that is a survivor of Boy Scout sexual abuse (each such client, a "<u>New Member Client</u>") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a New Member Attorney as defined in Article 1.6 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: ___November 23, 2020_____

City and State where sworn and signed: _____Columbus, Ohio_____

Printed name: __Steven C. Babin, Jr._____

Signature: _____

**EXHIBIT E**

**Engagement Letter Joinder Form**

AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of November 27, 2020, by and between (a) Jason J. Joy & Associates, PLLC (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, Province Inc. and the Coalition have entered into that certain Engagement Letter dated as of November 19, 2020 (the "Province Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter, MMBH Engagement Letter, and the Province Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Definitions.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    Joinder.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of November 27, 2020.

                                By:_____
                                    Name: Jason J. Joy
                                    [New Voting Representative]


                                By:_____
                                    Name:
                                    Title:


                                BROWN RUDNICK LLP


                                By:_____
                                    Name:  Sunni P. Beville


                                MONZACK MERSKY BROWDER AND
                                HOCHMAN, P.A.


                                By:_____

3. __Amendment__. Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4. __Effect__. Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5. __Counterparts__. This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of November 27, 2020.

By: _____
Name: Jason J. Joy
[New Voting Representative]

By: _____
Name:
Title:

BROWN RUDNICK LLP

By: _____
Name: Sunni P. Beville

MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: _Rachel B. Mersky_

63861404 v1

Name:  Rachel B. Mersky

Province, Inc.

By:_____

Name:  Michael Atkinson

<u>**EXHIBIT E**</u>

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of October 6, 2020 by and between (a) Motley Rice LLC (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of [DATE].

                        MOTLEY RICE LLC


                        By:_____
                            Name:  Daniel Lapinski
                            Title:  Member


                        BROWN RUDNICK LLP


                        By:_____
                            Name:  Sunni P. Beville



                        MONZACK MERSKY BROWDER AND
                        HOCHMAN, P.A.


                        By:_____
                            Name:  Rachel B. Mersky

3.    <u>Amendment</u>.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    <u>Effect</u>.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    <u>Counterparts</u>.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of [DATE].

MOTLEY RICE LLC

By:_____
     Name:  Daniel Lapinski
     Title:  Member

BROWN RUDNICK LLP

By:_____
     Name:  Sunni P. Beville

MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: *Rachel B. Mersky*
     Name:  Rachel B. Mersky

*Privileged and Confidential/Subject to Common Interest*

## CERTIFICATION

The undersigned Representative certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Coalition.  These certifications may be executed in any number of counterparts.

[REPRESENTATIVE NAME]

Motley Rice, LLC

By: _____          Dated: _1/6/21____

Name: Daniel Lapinski

Title:

Member

8

<u>**EXHIBIT E**</u>

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.      <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.  **Amendment.**  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.  **Effect.**  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.  **Counterparts.**  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of [DATE].

By:
[New Voting Representative]

By: _____
Name:  Mitchell A. Toups
Title:  Partner


BROWN RUDNICK LLP

By:_____
Name:  Sunni P. Beville


MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: _____
Name:  Rachel B. Mersky

*Privileged and Confidential/Subject to Common Interest*

ACKNOWLEDGED AND AGREED TO:

By: _____

 Name: Mitchell A. Toops

 Title:

Date: 12/11/20

*Privileged and Confidential/Subject to Common Interest*

## CERTIFICATION

     The undersigned Representative certifies that the foregoing is a true and correct copy of the Agreement and Procedural By-Laws duly adopted by the Coalition. These certifications may be executed in any number of counterparts.

[REPRESENTATIVE NAME]

By:

Name:   Mitchell A. Toups

Title:

Dated: 12/11/20

8

## EXHIBIT C

### New Representative Form

I, John G. Harnishfeger of Colter Legal PLLC, located at 1717 K Street, NW, Suite 900, Washington, D.C. 20006, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to

relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: December 14, 2020

City and State where sworn and signed: Washington, D.C.

Printed name: John G. Harnishfeger

Signature:

## EXHIBIT C

## New Representative Form

I, [ATTORNEY NAME] of [FIRM NAME], located at [FIRM ADDRESS], declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A.  dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ.  I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status.  I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: 12/21/2020

City and State where sworn and signed: Richmond, Virginia

Printed name: Staesha Rath

Signature: _____

## EXHIBIT C

## New Representative Form

I, Theodore Forman of Forman Law Offices, located at 238 NE 1st Ave, Delray Beach. FL, 33444, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: 12/21/20

City and State where sworn and signed: Delray Beach, FL
Printed name: Theodore Forman

Signature: *Theodore Forman*

<u>EXHIBIT C</u>

**New Representative Form**

I, PAUL DANZIGER of DANZIGER & DE LLANO LLP, located at 440 Louisiana Street Suite 1212, Houston, TX 77002, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "<u>Bylaws</u>");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "<u>New Member Client</u>") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to

relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: <u>December 15, 2020</u>

City and State where sworn and signed: <u>Houston, Texas</u>

Signature: _____

Paul Danziger, on behalf of
Bailey Cowan Heckaman PLLC and
Danziger & De Llano LLP Claimants' Group

## EXHIBIT C

### New Representative Form

I, Kevin D. Swenson of Swenson & Shelley PLLC, located at 107 South 1470 East, Suite 201, St. George, Utah 84790, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: 28 December 2020

City and State where sworn and signed: Washington, Utah

Printed name: Kevin D Swenson

Signature:

## EXHIBIT C

## New Representative Form

I, Brooke Cohen of Brooke F. Cohen Law, located at 4318 Glenwick Lane, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A.  dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ.  I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status.  I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: 12/22/2020

City and State where sworn and signed: Dallas, Texas

Printed name: Brooke Cohen

Signature: _Brooke Cohen_

**EXHIBIT C**

**New Representative Form**

I, Damon J. Baldone of Damon J. Baldone, A Professional Law Corporation located at 162 New Orleans Blvd., Houma, LA 70364, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: 12/17/2020

City and State where sworn and signed: Houma, LA

Printed name: Damon J. Baldone

Signature: Damon J. Baldone

## EXHIBIT C

### New Representative Form

I, C. BROOKS CUTTER of CUTTER LAW, P.C., located at 401 WATT AVENUE, SACRAMENTO, CA 95864, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A.  dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ.  I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status.  I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to

relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: 12/30/2020

City and State where sworn and signed: Sacramento, CA

Printed name: C. Brooks Cutter

Signature:

**EXHIBIT C**

**New Representative Form**

I, ROBERT G. PAHLKE of THE ROBERT PAHLKE LAW GROUP, located at 2425 CIRCLE DRIVE; SUITE 200; SCOTTSBLUFF, NEBRASKA 69361, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that is a survivor of Boy Scout sexual abuse (each, a "Prospective New Member Client") will be a member of the CASJ and will become so by returning the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client upon execution of the form, a "New Member Client"). I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my Prospective New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my Prospective New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such Prospective New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my Prospective New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: December 29, 2020

City and State where sworn and signed: Scottsbluff, Nebraska

Printed name: Robert G. Pahlke

Signature:

*Privileged and Confidential/Subject to Common Interest*

<u>**EXHIBIT E**</u>

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.      <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

*Privileged and Confidential/Subject to Common Interest*

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 29, 2020.

                                By:
                                NAPOLI SHKOLNIK PLLC

                                By: _____
                                    Name: Hunter J. Shkolnik
                                    Title: Senior Partner


                                BROWN RUDNICK LLP


                                By: _____
                                    Name:  Sunni P. Beville


                                MONZACK MERSKY BROWDER AND
                                HOCHMAN, P.A.

                                By: _____
                                    Name:  Rachel B. Mersky

## EXHIBIT C

## New Representative Form

I, ANDREA S HIRSCH of HIRSCH LAW FIRM, located at 1108 Santa Fe Station, Dunwoody GA 30338, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "Bylaws");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A.  dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "New Member Client") will be a member of the CASJ.  I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status.  I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: _____

City and State where sworn and signed: _____
Printed name: _____

Signature: _____

<u>EXHIBIT C</u>

**New Representative Form**

I, Timothy W. Porter of Porter & Malouf, P.A., located at 825 Ridgewood Road, Ridgeland, MS 39157, declare under penalty of perjury that I have read in their entirety and understand:

- The *Amended Agreement and Procedural Bylaws of the Coalition of Abused Scouts for Justice* (the "<u>Bylaws</u>");

- That certain Engagement Letter between the Coalition of Abused Scouts for Justice (CASJ) and Brown Rudnick LLP dated July 21, 2020; and

- That certain Engagement Letter between the CASJ and Monzack Mersky Browder and Hochman, P.A. dated September 13, 2020; and

- That certain Engagement Letter between the CASJ and Province, Inc. dated November 19, 2020; and

furthermore, that I agree to comply with and to be bound by all the terms of the Bylaws and aforementioned Engagement Letters.

I understand and intend that each of my clients that (a) is a survivor of Boy Scout sexual abuse and (b) has returned the executed form of New Member Template Advisement Communication attached to the Bylaws as Exhibit D (each such client, a "<u>New Member Client</u>") will be a member of the CASJ. I hereby affirm my authority to join, and my authority to have my clients join, the CASJ and engage and satisfy obligations to Counsel, Members, and Representatives thereof on behalf of my clients.

I affirm that upon execution of this document, I will send:

- To each of my New Member Clients, an email substantially in the form attached as Exhibit D to the Bylaws;

- To Counsel for the CASJ, copies of excel spreadsheets identifying my New Member Clients by name and address, together with all information in my possession regarding the incident(s) of abuse suffered by such New Member Clients.

- To Counsel for the CASJ, an executed copy of the Engagement Letter Joinder Form attached as Exhibit E to the Bylaws (subject to paragraph below).

I understand that submission of an Engagement Letter Joinder Form is optional, and constitutes notice of my intent to become a Voting Representative of the CASJ, that submission of such form is required to become a Voting Representative, and that unless submit such form I shall be deemed to request Non-Voting Representative status. I further understand that my admission as either a Voting or Non-Voting Representative is subject to an Affirmative Vote by the Representative Committee pursuant to Article 1.3 of the Bylaws.

I understand that my New Member Clients' above-mentioned information may be shared by Counsel with, among others, the CASJ's Representative Committee and Advisory Board, and parties to relevant mediation and settlement communications, subject to confidentiality restrictions applicable within the chapter 11 proceedings of the Boy Scouts of America and related litigation.

I understand that upon execution of this Form and confirmation of mailing and receipt of the above documents, and at no point prior to such confirmation, I will be deemed a Representative as defined in Article 1.1 of the Bylaws, and each of my New Member Clients shall be presumed and deemed to be Members of the Coalition unless and until Counsel to the Coalition is informed otherwise by me.

Date: _1|2r|u_

City and State where sworn and signed: _Rilylu, MN_
Printed name: _Tim Poth Porte_

Signature: _____