**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date: Feb. 17, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: Feb. 10, 2021 at 4:00 p.m. (ET)** |

**CENTURY'S MOTION TO COMPEL**
**ABUSED IN SCOUTING, KOSNOFF LAW PLLC,**
**AND THE COALITION TO SUBMIT THE DISCLOSURES**
**REQUIRED BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019**

Century Indemnity Company, as successor to CCI Insurance Company, as successor to

Insurance Company of North America and Indemnity Insurance Company of North America

("Century") respectfully submits this motion (the "Motion") for entry of an order substantially in

the form attached hereto as Exhibit A, compelling Abused in Scouting ("AIS") and Kosnoff Law

PLLC to make the disclosures that the Federal Rule of Bankruptcy Procedure 2019 requires, and

for the Coalition of Abused Scouts for Justice (the "Coalition") to further amend its Rule 2019

disclosures.

**PRELIMINARY STATEMENT**

A group calling itself the Coalition has claimed to control the Boy Scouts bankruptcy

because it claims to represent 65,000 (roughly 60 percent) of the over 95,000 abuse claims in this

case, which were generated as part of a mass advertising campaign post-petition.  The Coalition

was founded by an entity that called itself Abused in Scouting ("AIS").  AIS is a fictitious entity.

It was held out through advertising as an organization that one joins as a member.  In its

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax
identification number, are:  Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311).

August 14, 2020, Rule 2019 statement, the Coalition disclosed that three professional

corporations are behind AIS:  (i) Kosnoff Law PLLC; (ii) AVA Law Group, Inc.; and (iii)

Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.  The Coalition represented to the Court

that the three entities retain clients as a group through the auspices of AIS and are part of the

Coalition.

 AIS and Kosnoff Law, one of the entities that formed AIS, purport to represent the

largest group of claims that are purportedly part of the Coalition:  17,000 claimants who have

filed abuse proofs of claim against the debtors.  And while the *ad hoc* committee known as the

Coalition asserts that many of its members are represented by AIS, Mr. Kosnoff—one of the

Coalition's founders—now asserts that the Coalition does *not* represent the interests of his or

other AIS clients.[2]



 Further, Mr. Kosnoff has in another tweet apparently directed at the Coalition, written

that "BSA sex abuse survivors beware the bankruptcy 'professionals' and, yes, your own

'lawyers' are about to throw you under the bus." calling further into question the accuracy of the

Coalition's 2019 disclosure.[3]  Surfacing these potential conflicts of interest is at the heart of Rule

---

[2] Zaslavsky Decl. Ex. 2.
[3] Zaslavsky Decl. Ex. 5.

2019.  The Court should require AIS and Kosnoff Law to make Rule 2019 disclosures and for the Coalition to amend its Rule 2019 disclosures to address this issue.

Beyond the potential conflicts of interests and inconsistencies in these submissions to the Court, AIS and Mr. Kosnoff's public admissions and threats raise other serious concerns.  Mr. Kosnoff, just this week, acknowledged that the Coalition firms have been "buying inventories of clients" generated by "TV Ad machines" (for-profit claim aggregators), funded by "hedge funds."[4]  In Kosnoff's own words, the people fronting for these claims "are not real lawyers," have "never represented a victim" and will soon be "moving on to the next mass tort creation."[5] These admissions raise renewed concerns about whether all of the claimants that the Coalition and AIS entities alleged are their clients could (or should) be considered consenting Coalition members.

Beyond these admissions, Mr. Kosnoff has aggressively threatened BSA with the apparent intent of harming its current operations, publishing statements that the BSA is a "child rape factory" and advocating for its liquidation—all the while, the Coalition / AIS is making demands to the BSA behind closed doors on the terms of a plan of reorganization.  At the same time, AIS / Kosnoff have published personal attacks against individual lawyers in these cases who have raised questions about the proofs of claim.  Finally, Mr. Kosnoff's public statements improperly publicize and attempt to leverage inside information regarding the mediation in this case.

---

[4]    Declaration of Sergei Zaslavsky ("Zaslavsky Decl.") Ex. 1.

[5]    *Id.*

These threats present an enormous moral hazard tainting the plan process.  Under these circumstances, there is grave concern that BSA may acquiesce to just about anything the Coalition demands.

Mr. Kosnoff's conduct, which includes insults and attacks on counsel for other parties in this case, including Century, likewise violates rules of professional conduct.  The Model Rules of Professional Conduct prohibit conduct that is "intended to disrupt a tribunal."[6]  Similarly, the Delaware Rule of Professional Conduct provide that a lawyer shall not "engage in conduct intended to disrupt a tribunal or engage in undignified or discourteous conduct that is degrading to a tribunal."[7]  In *Ramunno*, a lawyer who directed a crude insult at opposing counsel in an office conference and was subsequently insolent before the judge was found to have violated rule and subject to public censure by the Delaware Supreme Court.[8]  The court found that it was "irrelevant whether Mr. Ramunno intended to cause a disruptive effect.  Instead, the sole question before this Court is whether Mr. Ramunno's rude and uncivil behavior was degrading to the court below."[9]  Likewise, lawyers who have been pointedly and deliberately uncivil have been invited to appear before the Delaware Supreme Court and show cause why they should not be prospectively barred from *pro hac vice* admission to practice in Delaware.[10]

---

[6]  ABA Model R. Prof'l Conduct 3.5(d).  "Tribunal" in this context is defined broadly.  *See* ABA Model R. Prof'l Conduct 3.5 cmt. [5].

[7]  Del. R. Prof'l Conduct 3.5(d).

[8]  *In re Ramunno*, 625 A.2d 248, 250 (Del. 1993).

[9]  *Id.*

[10]  *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 56 (Del. 1994).

## STATEMENT OF FACTS

### *AIS, the Coalition, Mr. Kosnoff and his co-counsel Mr. Rothweiler.*

On August 26, 2020, the Coalition moved to be made a mediation party.[11]  In its August 14, 2020, Rule 2019 statement,[12] the Coalition identified six state court law firms as its founding members, including three professional corporations that together formed AIS:  (i) Kosnoff Law PLLC; (ii) AVA Law Group, Inc.; and (iii) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.[13]

AIS is a fictitious entity.  It was held out through advertising as an organization that one joins as a member.[14]  The three professional corporations behind AIS represented to the Court that they retain clients as a group through the auspices of AIS.[15]  AIS's exemplar retention agreement—which Mr. Eisenberg has affirmed is substantively "identical" to the agreement Eisenberg Rothweiler has with all of its clients in this case[16]— presents AIS as a single entity at the top of the document, listing the names of the entities behind AIS and the cities in which they purport to practice in much smaller type lower in the letterhead.[17]  AIS's contingency fee is split among the three entities.[18]

---

[11]  *See Motion of the Coalition of Abused Scouts for Justice to Participate in the Mediation* (Aug. 26, 2020) [D.I. No. 1161].

[12]  *See Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Aug. 14, 2020) [D.I. No. 1106].

[13]  *See id.* at 1 n.2.

[14]  August 26, 2021 Declaration of Janine Panchok-Berry Ex. 4 at 000004 [D.I. No. 1166].

[15]  *See* Exhibit A to *Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Oct. 7, 2020) at 62 [D.I. No. 1429-1].

[16]  *See* Exhibit B to *Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Oct. 7, 2020) at 6–7 [D.I. No. 1429-2].

[17]  *See* Exhibit A to *Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Oct. 7, 2020) at 62 [D.I. No. 1429-1].

[18]  *Id.*

The Coalition members are bound together by bylaws with Mr. Kosnoff's co-counsel in AIS, Ken Rothweiler, having a role for the Coalition.  At the Debtors' request, the Court ordered the parties to mediate.[19]  Pursuant to the Court's mediation order, Mr. Kosnoff's co-counsel with AIS, Ken Rothweiler, has led the Coalition in those mediation efforts.[20]

### *Issues arise as to whether claimants that AIS alleged were their clients could (or should) be considered consenting Coalition members*

On September 9, 2020, this Court heard arguments on Hartford and Century's Motion for an Order requiring further disclosures and the Coalition's corresponding Motion for an Order ruling that the Amended Disclosures were sufficient under Rule 2019.[21]  Hartford and Century raised concerns about whether all of the claimants that the AIS entities alleged were their clients could (or should) be considered consenting Coalition members, in light of Mr. Kosnoff's well-publicized email disparaging abuse claimants and describing his interest in generating claims that the TCC turned over to the Office of the United States Trustee.[22]

At oral argument, the Court expressed concern about (i) identifying which claimants had affirmatively consented to be members of the Coalition, and (ii) the adequacy of the disclosures

---

[19]  *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* (June 9, 2020) [D.I. No. 812].

[20]  *Order Approving the Motion of the Coalition for Abused Scouts for Justice to Participate in Mediation* (Oct. 23, 2020) [D.I. No. 1573].

[21]  *See Century and Hartford's Motion to Compel the Attorneys Representing the Entity Calling Itself the "Coalition" to Submit the Disclosures Required by Federal Rule of Bankruptcy Procedure 2019* (Aug. 26, 2020) [D.I. No. 1164].

[22]  D.I. 1285-1 ("Here is the message: We control 80% of the claims I.e our coalition controls the case. We are not going to do anything to help grease the gears for Stang and the dimwits including speeding up the insurance analysis.").

of state court counsels' retention agreements.[23]  The Coalition agreed to provide additional

information, and the Court continued the hearing.

### The Coalition's representation to the Court that
### Mr. Kosnoff would have no role.

In its Second Amended Rule 2019 statement, the Coalition asserted that the "founding"

Coalition firms—Kosnoff Law and AVA Law Group—had "resigned from the Coalition" but

that their clients "remain Coalition members whose interests are represented by . . .

Rothweiler . . . in accordance with the clients' engagement letters."[24]  Both Kosnoff Law and

AVA Law Group are one-lawyer firms, respectively, belonging to Tim Kosnoff and Andrew Van

Arsdale.[25]

During the October 14, 2020 hearing on the sufficiency of the Coalition's statements, the

Court expressed skepticism that Kosnoff Law and AVA Law Group were truly out of the

Coalition.[26]  The Coalition represented that those firms had "resigned" from and had "no role" in

the Coalition, but—curiously—their clients remained Coalition members.[27]

Coalition Counsel affirmed that it would periodically update the Rule 2019 disclosures to

reflect accurately the Coalition's membership.[28]  The Court took Coalition Counsel at his word,

---

[23]  *See* September 9, 2020 Hr'g Tr. at 127:24–128:15, 133:23–134:22.

[24]  *Second Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Oct. 7, 2020) [D.I. 1429].

[25]  August 26, 2020 Declaration of Janine Panchok-Berry Exs. 6, 9 [D.I. 1166].

[26]  *See* October 14, 2020 Hr'g Tr. at 56:8–56:11 ("Well, I will state that the resignations -- I don't want to say they're a red flag, but I will say they're interesting.  And I'm not sure why they happened or needed to happen or what the impact of that is.").

[27]  *See id.* at 100:20–101:3.

[28]  *See id.* 48:23–25 ("[I]n any event, when the numbers change materially, we have updated either new law firms or a material number of new affirmative consents, we will file an updated 2019 statement.").

but required that Coalition Counsel file an amended Rule 2019 statement that would identify the claimants that affirmatively elected to be members of the Coalition within seven days.[29]

Coalition Counsel filed an amended disclosure on October 29, 2020[30] and January 29, 2021.[31]  This disclosure listed the claimants that the Coalition alleged that it represents, which was different in number from the claimants represented by the firms that make up the Coalition. While entities associated with the Coalition contend to have filed approximately 65,000 claims to achieve the supermajority that was Mr. Kosnoff's goal, fewer than 11,900 of those claimants have affirmatively opted in to being represented by the Coalition.[32]

### Mr. Kosnoff publicly announces that the Coalition _does_ _not_ represent AIS's 17,000 claimant clients.

At the November 18, 2020 Omnibus hearing, BSA presented to the Court a timeline that included a mediation in "January of 2021."[33]

On January 25, 2021, Mr. Kosnoff publicly stated—contrary to what the Coalition represented in its Rule 2019 disclosures—that the Coalition does not represent AIS's 17,000 claimant clients.[34]

In addition, Mr. Kosnoff has taken to Twitter to rail against the Coalition and Coalition Counsel, attacking Brown Rudnick and the "tv lawyers" it is working with, suggesting that they

---

[29]  *See Order Approving the Adequacy and Sufficiency of the Amended Verified Rule 2019 Statement filed by the Coalition for Abused Scouts for Justice* (Oct. 23, 2020) [D.I. No. 1572].

[30]  *See Notice of Filing of Revised Exhibit To Verified Statement of the Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (Oct. 29, 2020) [D.I. No. 1600].

[31]  *Third Amended Verified Statement of Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* (January 29, 2021) [D.I. No. 1997].

[32]  *Id.* ¶ 1.

[33]  Nov. 18, 2020 Hr'g Tr. at 11:1–11:10 ("[T]he mediators have established a full schedule that takes us into January of 2021.").

[34]  Zaslavsky Decl. Ex. 2.

engaged in misconduct.[35]  Mr. Kosnoff's public statements make clear that the Coalition does not speak for his claimants' interests and those of the other two AIS firms—AVA Law Group and Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck—despite the Coalition's current Rule 2019 statement.



On January 27, 2021, Mr. Kosnoff accused Brown Rudnick of cheating its Coalition constituency, using in a tweet the fictional law firm name from *Car Talk*[36]:



Further, Mr. Kosnoff has claimed that Brown Rudnick and the other state court law firms that are part of the Coalition will throw claimants under the bus[37]:

---

[35]   Zaslavsky Decl. Ex. 3.

[36]   Zaslavsky Decl. Ex. 4.

[37]   Zaslavsky Decl. Ex. 5.



***AIS's and Mr. Kosnoff's extortive threats***
***directed at BSA and its Local Councils***

As meet and confers took place outside the mediation about how the claims were

generated, Mr. Kosnoff published statements targeted at harming BSA and the Local Councils'

current operations.  For example, on January 26, Mr. Kosnoff published that BSA is a "child rape

factory," and stated that a vote by other plaintiff firms will "put the child rape factory back in

business," and threatened in his hashtag to "#savescouting**EndBSA**."[38]



---

[38]    Zaslavsky Decl. Ex. 6 (emphasis added).

Mr. Kosnoff referred in his above tweet to the "Zoom mediation going on" the week of January 11, from a prior tweet in which he threatened that BSA is "finished."[39]  Also on January 25, 2021, Mr. Kosnoff published statements threatening the Local Councils with the initiation of litigation in the tort system.[40]



Mr. Kosnoff's bare-knuckle threats to get BSA to do what he wants has in the past included advertisements in which he states that abuse in the Boy Scouts "is not an accident, it is intended."[41]  He continues, "what we're really dealing with here is the largest pedophile ring on earth."[42]  In a tactically timed AIS infomercial, Mr. Kosnoff told viewers that "you were victimized by an organization that knew what was happening."[43]  And in an interview with PBS this past November, as efforts to form a plan were underway, Mr. Kosnoff threatened that liquidation of the Boy Scouts was the best result for claimants.[44]

---

[39]  *Id.*; Zaslavsky Decl. Ex. 7.

[40]  Zaslavsky Decl. Ex. 8.

[41]  Zaslavsky Decl. ¶ 14 (https://www.youtube.com/watch?v=nhi_C8v5I_Y&feature=emb_title).

[42]  *Id.*

[43]  Zaslavsky Decl. ¶ 15 (https://www.youtube.com/watch?v=QRI4FvfuYO8&feature=emb_title).

[44]  Zaslavsky Decl. ¶ 16 (https://www.pbs.org/video/abuse-in-the-scouts-1605649565/).

### *AIS's and Mr. Kosnoff's coercive threats*
### *directed at Century and Hartford.*

On January 22, 2021, Hartford and Century moved for discovery under Rule 2004, requesting information from certain claimants and limited discovery from certain state court counsel, including Mr. Kosnoff.[45]  Hartford and Century met and conferred with Coalition counsel regarding the request for claimant discovery on January 4 and 8, 2021, and met and conferred with state court counsel for some of the claimants implicated by that motion on January 18 and 19, 2021.[46]  Hartford and Century met and conferred with counsel regarding the Rule 2004 requests directed at state court counsel, including counsel for Mr. Kosnoff, on January 20, 2021.

This has apparently rattled Mr. Kosnoff, who does not want his methods for generating claimants to see the light of day.  In response to the Rule 2004 motions, Mr. Kosnoff posted a series of defamatory and libelous attacks on Hartford and Century[47]:

---

[45]  D.I. Nos. 1971 and 1974.

[46]  D.I. No. 1971 ¶¶ 54–55.

[47]  Zaslavsky Decl. Exs. 9–10.



On the next two days, Mr. Kosnoff attacked Century's counsel personally and published

personal identifying information about him after sending inflammatory tweets to claimants.[48]



---



*Mr. Kosnoff's published statements derived from, and about the*
*substance of, the confidential mediation*

The Coalition represented that Mr. Kosnoff, and his firm, are not part of the Coalition, and is not a mediating party.

However, Mr. Kosnoff's January 12, 2021, tweet refers to confidential zoom calls scheduled that week in the mediation.  Other tweets refer to issues in the mediation such as the "vote" referred to in his January 26 published statement.[49]  The timing of his published statement overlay with his co-counsel's participation in mediation sessions.

## ARGUMENT

Rule 2019 is critical to avoid conflicts of interest and ensure an open and fair bankruptcy proceeding.  That rule, which requires any informal group or committee to provide sufficient information to permit the parties and the Court to understand the nature of the committee and the interests it represents, apply equally to an informal group of claimants such as AIS, or to

---

[49]    Zaslavsky Decl. Ex. 6.

claimants represented by a single law firm, as it does to an *ad hoc* committee such as the Coalition.[50]

### A.    AIS and Mr. Kosnoff Must Submit Rule 2019 Disclosures.

The Coalition and AIS are clearly trying to unduly influence this case.  Mr. Kosnoff asserts that AIS and/or his firm represent 17,000 claimants in this case, and his tweets suggest that he influences how those claimants may vote in this case.  Within the space of a few days of tweets, Mr. Kosnoff asserted that Brown Rudnick and the Coalition do not "speak for Abused in Scouting or the 17000" men it purports to represent, levelled attacks threatening to harm BSA's continued operations and defamed two insurers that are critical to any consensual settlement. And Mr. Kosnoff, acting under the guise of AIS, threatened that BSA is "finished" after meet and confers went forward into discovery on how the Coalition claims were generated.

Mr. Kosnoff's involvement in this case is more than sufficient to trigger the disclosure requirements of Rule 2019.  He and AIS purport to represent thousands of claimants.  But, other than the AIS retention agreement attached to the Coalition's disclosures, no information regarding the involvement of Kosnoff Law or AIS has been disclosed.  Rule 2019 requires disclosure of the facts and circumstances of (i) the formation of AIS, (ii) the instance at whose request AIS was formed, (iii) the manner by which AIS has authority to act on behalf of the claimants it purports to represent, (iv) the identity of the members AIS represents and their economic interests, and (v) to the extent not already disclosed, the document(s) authorizing AIS to act.  Similar information must be disclosed with regards to both AIS and Kosnoff Law given their involvement in these cases.[51]

---

[50]  *See* Fed. R. Bankr. P. 2019(c); *In re Archdiocese of St. Paul and Minneapolis*, No. 15-30125, Feb. 27, 2017 Order at 1–2 (Bankr. D. Minn.) (requiring Rule 2019 disclosures by claimants represented by single law firm).

[51]  *See* Fed. R. Bankr. P. 2019(c).

Those disclosures are particularly important here.  As noted above, Rule 2019 is intended to promote disclosure and avoid conflicts of interest.  Here, the Coalition has previously represented that it includes the members of AIS, all of whom remained with the Coalition even after Kosnoff Law and AVA Law Group purportedly resigned.  Yet Mr. Kosnoff, purporting to speak for AIS, now claims that the Coalition does not speak for AIS.  The parties to this case are entitled to understand AIS, how it was formed, who it represents, who Mr. Kosnoff represents, and their relationships to the Coalition, so that parties involved in this case, and in the mediation, understand precisely what interests AIS and Kosnoff Law represent in this case.

Rule 2019(c) requires a formal or informal group to identify who its members are, as well as the circumstances of the entity's formation and the basis for the agency relationship.[52]  Rule 2019 is intended to avoid conflicts and the appearance of conflicts.  Complete disclosure of the interests that an entity or informal committee represents is critical to understanding the extent to which there may be a conflict or competing interests.  That potential for conflict is manifest here, where members of the Coalition are represented by AIS firms but, according to Mr. Kosnoff, the Coalition does not represent their interests.

### B.     The Coalition Must Update Its Disclosures.

Mr. Kosnoff's published statements raise significant questions about the membership and interests of both the Coalition and AIS.

In addition to AIS and Mr. Kosnoff, the Coalition must also provide up-to-date disclosures and be barred from participating further in the case until it does.  This is not asking for much because when the Coalition asked the Court to find its current Rule 2019 disclosures to

---

[52] *See, e.g.*, *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*, 321 B.R. 147, 168 (D.N.J. 2005) (requiring disclosure of "identity of the client, the conditions of employment and the amount of the fee").

be sufficient, it represented that it would update those disclosures.[53]

Here, the Coalition filed a *Second Amended Verified Statement Under Rule 2019* on October 29, 2020, including a list of Coalition members.[54]  Because the Court expressed concern that individual clients not be deemed to have "joined" the Coalition without their express consent, counsel for the Coalition agreed that it would obtain the affirmative consent of potential Coalition members.[55]  Coalition counsel also represented to the Court that AIS members, including those represented by the Eisenberg, Rothweiler firm were among those claimants who joined the Coalition.[56]

But the Coalition has made no effort to update its disclosures to inform the Court or parties-in-interest whether the Rothweiler, Eisenberg clients, or any other AIS clients, have since joined (or left) the Coalition.  Their most recent amended disclosure, filed on January 29, 2021, continues to perpetuate the untenable inconsistency that AIS collectively represents clients, but only one of the three AIS firms (Eisenberg Rothweiler) is a Coalition member.  Particularly in light of Mr. Kosnoff's statements that the Coalition and its counsel do not speak for AIS or any of its 17,000 claimant clients, this raises a major question about who represents these claimants.

Mr. Eisenberg has affirmed to the court that the ***only*** retention agreements Eisenberg Rothweiler has are the AIS retention agreements—this leads to the obvious conclusion that the 17,000 claimants that Mr. Kosnoff flatly states are not affiliated with the Coalition are also

---

[53]  *See also* Fed. R. Bankr. P. 2019(d) (requiring supplemental disclosures to account for material changes to group composition).

[54]  D.I. No. 1600.

[55]  October 14, 2020 Hr'g Tr. at 34:7–22.

[56]  *See* October 14, 2020 Hr'g Tr. at 117:20–22 ("the folks associated with abuse in scouting, you know, the Rothweiler, Eisenberg Firm have been at this for 25 years.").

represented by Eisenberg Rothweiler, whose principal Ken Rothweiler is Mediation Party and one of the Coalition's lead negotiators.

Either the Coalition's representation that Eisenberg Rothweiler's clients are members of the Coalition is wrong, or Mr. Kosnoff's statements that no AIS claimant is represented by the Coalition is wrong. The Coalition has a duty under Rule 2019 to clarify the situation, and cannot continue to allow AIS to play both sides, purporting to be negotiating on the one hand through one AIS lawyer, Mr. Rothweiler, and railing against the negotiations and threatening BSA on the other through his co-counsel Mr. Kosnoff.

Rule 2019 is intended to avoid conflicts and the appearance of conflicts. Complete disclosure of the Coalition's membership, including their respective law firm affiliations, is critical to understand the extent to which members of the Coalition are represented by AIS firms that, according to Mr. Kosnoff, have the agenda of dismantling the Debtors.

### C. Mr. Kosnoff's Admissions Concerning How the Coalition Generated Proofs of Claim Warrant Further Relief.

Mr. Kosnoff acknowledged this week that Coalition firms have been "buying inventories of clients" generated by "TV Ad machines" (for-profit claim aggregators), funded by "hedge funds."[57] In Kosnoff's own words, the people fronting for these claims "are not real lawyers," have "never represented a victim" and will soon be "moving on to the next mass tort creation."[58]

---

[57] Zaslavsky Decl. Ex. 1.

[58] *Id.*



These admissions raise renewed concerns about whether all of the claimants that the Coalition and AIS entities alleged are their clients could (or should) be considered consenting Coalition members.

### D.    AIS and the Coalition's Effort to Wrongfully Coerce the BSA and Threaten the Parties Has Tainted the Plan Process

Coalition attorneys purport to represent a numerical majority of claimants in this case, with AIS representing the largest portion thereof.  The voting power of these groups make it challenging for BSA to confirm a plan of reorganization without acquiescing to their every demand.  Add to this the threats to BSA's present day reputation, and BSA is effectively at Mr. Kosnoff's mercy when he advocates for the liquidation of BSA, threatens to continue to refer to

the organization as a "pedophile ring" and a "child rape factory," and directs his alleged 17,000 clients to vote against any plan.[59]

Under these circumstances, there is grave concern that BSA may acquiesce to just about anything including a plan of reorganization that waives the estate's objections to the proofs of claim, exculpates the Coalition and the entities behind it for their conduct and leaves it to plaintiff lawyers to decide what claims to allow and how to value them.

This is both wrong and illegal.  The use of threats in order to pressure a party into settling an existing case rises to the level of extortion where the means are wrongful, even if the objective—pursuing a settlement—is not.[60]  In *Donziger*, the defendant's objective was to pressure the plaintiff into a large settlement by "brute force" and applying pressure to "get them to the breaking point."[61]  The defendant issued press releases and made public statements that misrepresented the plaintiff's exposure and the likelihood that it would result in massive liability for the plaintiff in order to pressure the plaintiff to settle.[62]  The defendant knew that his statements were misleading.[63]

The *Donziger* court held that this media pressure campaign to induce an inflated settlement was a wrongful means of threatening the plaintiff; even assuming the defendant brought the initial lawsuit in good faith and reasonably believed his clients were entitled to recover from the plaintiff.[64]  The same is true here.

---

[59]   Zaslavsky Decl. Ex. 6.

[60]   *See Chevron Corp. v. Donziger*, 974 F.Supp.2d 362, 577–78 (S.D.N.Y. 2014).

[61]   *Id.* at 578.

[62]   *Id.* at 579–80.

[63]   *Id.* at 580.

[64]   *Id.* at 579–80.

Mr. Kosnoff's public statements likewise implicate the ABA Rules of Professional Conduct, which bar lawyers from making "extrajudicial statement[s] that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."[65]  And the highly unprofessional public attacks, which call for boycotts of the insurers and are directed personally at counsel, likewise violate the prohibition on "use of means that have no substantial purpose other than to embarrass, delay, or burden a third person."[66]

Finally, Mr. Kosnoff's derogatory statements toward Century's counsel and other lawyers involved in these cases is inappropriate.  As Judge Karsnitz of the Delaware Superior Court recently noted in revoking an attorney's *pro hac vice* admission to practice before him, courts are charged with "ensuring the appropriate level of integrity and competence."[67]

### E.    Mr. Kosnoff's Public Statements Are in Violation of this Court's Orders and Confidentiality Protocols.

Mr. Kosnoff's tweets suggest inside information and broadcast information that is tied to a mediation that is, by statute, local rule, and court order, confidential.  On January 12, for example, Mr. Kosnoff referred to mediation meetings that were occurring that week.[68]  He has referred more than once to a February 6 vote on (presumably) the Coalition's demanded proposed plan of reorganization.[69]

The Mediation Order entered in these cases provided that any party not listed as a mediation party in the order could only become a mediation party, and thus have access to

---

[65]    Model R. Prof'l Conduct 3.6(a).

[66]    Model R. Prof'l Conduct 4.4(a).

[67]    *Page v. Oath Inc.*, No. S20C-07-030 CAK (Del. Sup. Ct. Jan. 11, 2021).

[68]    *Id.*; Zaslavsky Decl. Ex. 7.

[69]    *Id.*

confidential mediation information, if all other mediation parties consented.[70]  Per the

Mediation Order, the provisions of Delaware Bankruptcy Local Rule 9019-5 govern the

confidentiality of all mediation proceedings.[71]  Under Local Rule 9019-5, "[t]he mediator and

the participants in mediation are prohibited from divulging, outside of the mediation, any oral

or written information disclosed by the parties or by witnesses in the course of the mediation."

Violations of mediation confidentiality provisions are, of course, sanctionable.[72]  And

specifically with regard to a party posting confidential information online, courts have coupled

sanctions with an order to take down the offending information.[73]  And the Court, of course,

---

[70]  *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* (June 9, 2020) ¶ 3 [D.I. No. 812].

[71]  *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* (June 9, 2020) ¶ 7 [D.I. No. 812].  Local Rule 9019-5 was promulgated pursuant to the Alternative Dispute Resolution Act of 1998, which authorizes federal courts to adopt ADR programs, provides that 'each district court shall, by local rule . . . provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications,' 28 U.S.C. § 652(d), and the violation of the confidentiality provisions of a federal mediation order subjects the disobedient party to sanctions."  *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 417 B.R. 197, 206–07 (Bankr. S.D.N.Y. 2009).

[72]  *See Bernard v. Galen Group, Inc.*, 901 F. Supp. 778, 782–84 (S.D.N.Y. 1995) (imposing $2,500 sanction because Plaintiff's counsel "violated my order and the confidentiality provisions willfully and deliberately, that he did so in an effort to undermine the mediation process in this case, and that the violation was serious and egregious"); *Davis v. Kansas City Fire & Marine Ins. Co.*, 195 F.R.D. 33, 38 (N.D. Okla. 2000) (imposing a $1,500 sanction and public reprimand for an attorney's willful filing of a confidential settlement statement with the court in a related bankruptcy proceeding); *Frank v. L.L. Bean, Inc.*, 377 F. Supp. 2d 233, 239–40 (D. Me. 2005) (imposing $1,000 sanction for conducting an ex parte interview and disclosing confidential settlement information).

[73]  *See IRDC Inc. v. Eagar Mgmt. LLC*, Civ. No. 16-02486-PHX-SRB, 2017 U.S. Dist. LEXIS 158026, at *18 (D. Ariz. Apr. 5, 2017) (ordering the defendants to remove posts from social media, imposing a $500 sanction per day until defendant is in full compliance, and ordering defendants to file an affidavit detailing how they have fully complied); *Hale v. Emporia State Univ.*, No. 16-cv-4182-DDC-TJJ, 2018 U.S. Dist. LEXIS 70239, at *7–8 (D. Kan. Apr. 26, 2018) (as a sanction for posting a confidential exhibit to a summary judgment motion on the internet, the court ordered the court to strike from plaintiff's motion the two paragraphs that discuss the exhibit and ordered plaintiff to remove the relevant posts on the internet); *Enovative Techs., LLC v. Leor*, 110 F. Supp. 3d 633, 635 (D. Md. 2015) (first ordering defendant to remove all defamatory posts relating to plaintiff and to return all of plaintiff's confidential information, and after several months of non-compliance, eventually dismissing defendant's counterclaims as a sanction).

retains inherent power under 11 U.S.C. § 105 to impose more severe sanctions:  for instance, the District of Colorado upheld the Bankruptcy Court's  decision to "preclude[e] the participation of Appellant's counsel in the Confirmation Hearing pursuant to its inherent powers set forth in § 105 of the Bankruptcy Code" after the offending counsel "thumb[ed] its nose at the Court" by failing to comply with Court's orders."[74]

## **CONCLUSION**

WHEREFORE, Century respectfully moves for entry of an Order, substantially in the form attached hereto as Exhibit A, compelling (i) Abused in Scouting and (ii) Kosnoff Law PLLC file with this Court the disclosures required by Rule 2019 and (iii) the Coalition supplement its Rule 2019 disclosures.

---

[74] *In re Van Vleet*, No. 08-CV-01645-WYD, 2009 WL 3162212, at *11–12 (D. Colo. Sept. 30, 2009).

Dated:  February 3, 2021

Respectfully Submitted,

By:   _/s/ Stamatios Stamoulis_
     Stamatios Stamoulis (No. 4606)

**Stamoulis & Weinblatt LLC**
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

**O'Melveny & Myers LLP**
Tancred Schiavoni (admitted _pro hac vice_)
Gary Svirsky (_pro hac vice_ pending)
Andrew Kirschenbaum (admitted _pro hac vice_)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: 212-326-2000

_Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America_