## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,₁<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Hearing Date: Feb. 17, 2021 at 10:00 a.m. (ET)**<br>**Obj. Deadline: Feb. 5, 2021 at 4:00 p.m. (ET)** |

### NAPOLI SHKOLNIK PLLC'S OPPOSITION TO HARTFORD AND CENTURY'S MOTIONS FOR (1) AN ORDER(I) AUTHORIZING CERTAIN RULE 2004 DISCOVERY AND (II) GRANTING LEAVE FROM LOCAL RULE 3007-1(f) TO PERMIT THE FILING OF SUBSTANTIVE OMNIBUS OBJECTIONS AND (2) INSURERS' MOTION FOR AN ORDER AUTHORIZING RULE 2004 DISCOVERY CERTAIN PROOFS OF CLAIM

Napoli Shkolnik PLLC ("**Napoli**"), hereby opposes Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company's (collectively, "**Hartford**"), and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America's ("**Century**") (Hartford and Century collectively referred to as the "**Insurers**") motions (1) For An Order (i) Authorizing Certain Rule 2004 Discovery And (ii) Granting Leave From Local Rule 3007-1(F) To Permit the Filing of Substantive Omnibus Objections (*See* **ECF, Dkt. No. 1972**) and (2) Insurers' Motion for an Order Authorizing Rule 2004 Discovery Certain Proofs of Claim (*See* **ECF, Dkt. No. 1974**). Napoli joins in the response of the Coalition of Abused Scouts for Justice (the "**Coalition**"); yet, responds here regarding specific false statements, grossly misleading allegations, and outright fabrications by the Insurers specific to Napoli. In support of this opposition Napoli states the following:

## PRELIMINARY STATEMENT

1.      The Insurers' Motions falsely claim that there are instances of "outright fraud" regarding the filing of Proof of Claim forms filed by certain firms. *See* ECF, Dkt. No. 1972, at 5. While veiled under a request for 2004 discovery, the two Motions are littered with poorly researched personal attacks designed to harass abuse victims and their counsel and delay the implementation of a reorganization plan. Including the Napoli firm's filings in this broad-based *ad hominin* attack pushes the credibility of these movants beyond cavil bordering on the absurd.

2.      The overwhelming majority of the Insurers' two Motions is not related to and/or entirely false with regard to Napoli; therefore, Napoli requests that the 2004 discovery requests be denied with regard to the Napoli firm, or in the alternative, the discovery sought be significantly limited.

3.      First, the Insurers attempt to rehash their efforts to limit attorney advertising, a matter previously ruled upon against the movants by the Court. (*See* ECF, Dkt. No. 1972, at 4). The Court has already ruled on this issue. *See* ECF, Dkt. No. 1331. Further, to highlight the absurdity of including Napoli in these portions of the movants' papers, we must remind the Insurers that Napoli had voluntarily removed advertising statements concerning the potential size of a victim's compensation fund even prior to the Court's September 9, 2020 hearing on the issue. *See id.* at 7. Moreover, the Court's ruling also stated that Napoli would not be required to include the Claims and Noticing Agent's Website on the television advertisement or firm's website. *See id.* at 7, fn. 4. The fact that Napoli had a television advertisement is simply not evidence of any fraudulent behavior.

4.      Second, the Insurers invent that it was the Coalition's—and by implication Napoli's goal as well—to gain "numerical superiority" through the filing of fraudulent Proofs of

Claims. *See* ECF, Dkt. 1974, at 7-8. This statement is inapplicable to Napoli. The Napoli firm is merely a member of the Coalition *ad hoc* committee. Napoli is not a member of any advertising group, victims abuse advertising cooperative, and **did not** coordinate its advertising or filing of claims with other Coalition firms, nor is that the purpose of the Coalition. Further, there is no evidence presented that Napoli has ever had any business dealing with, consulted with, coordinated with, or even knows attorney Tim Kosnoff. *See* ECF, Dkt. 1974, at 7-8. Nor has Napoli coordinated efforts to retain clients with other Coalition members or jointly participated in advertising or the filing of claims. *See id.* As it relates to Napoli and its clients, its efforts related to advertising and retaining clients were done independently of other Coalition law firms.[1]

5.      Third, the Insurers assert that Napoli was a part of what they refer to as a "claim-mining operation." *See* ECF, Dkt. No. 1972 at 2. First, it is not even clear what "claim-mining" is in this context. If it means retaining sexually abused men who needed counsel to pursue claims against the Boy Scouts and any other predator, then that is true. If it means something nefarious, then the Insurers are flat wrong. Napoli did not engage in any activity it would classify as a "claim-mining operation." Napoli simply advertised that it is willing to represent victims in cases against the Boy Scouts of America and retained clients who indicated they suffered sexual abuse at the hands of predators kept in place by the Boy Scouts of America and its affiliates.

6.      Fourth, Insurers falsely claim that Napoli used "claim-aggregators" to file claims on Napoli's behalf. *See* ECF, Dkt. 1974, at 12-15. This is simply untrue with respect to Napoli. Napoli did not use any outside service in the act of filing claims, and despite the claims made by

---

[1] To the extent the Insurers hang their hat on the fact that this firm may have engaged the same advertising agency to produce a television commercial is not surprising since CAMG is the "The Largest, Fully-Integrated Marketing Agency Dedicated to Law Firms." *See* CONSUMER ATTORNEY MARKETING GROUP HOMEPAGE (available at https://www.camginc.com/) (last accessed Feb. 4, 2021). Advertising is not evidence of fraud.

Insurers, they present no evidence to the contrary. *See id*. The Napoli firm filed all Proofs of Claim through its internal efforts.

7.      Fifth, the Insurers' claim that certain firms used money loaned from hedge-funds to fund their advertising. *See* ECF, Dkt. 1974, at 8-9. Again, there is no evidence that Napoli engaged in this practice. *See id*. Even though it is unclear from Insurers' motion what if anything is improper in doing so, Napoli nevertheless denies any notion that it is in any way related to the hedge funds listed in the motion to fund the advertisement of claims or the filing of claims. *See id*. Again, this is another use of a broad-based attack with absolutely no basis to connect Napoli to it.

8.      Sixth, the Insurers' Motions included both significant errors and baseless *ad hominem* attacks on the attorneys personally. For example, the Insurers' motion states that Joseph Napoli signed claim forms allegedly for the Napoli firm. This statement is **false:**

> One lawyer, Joseph Napoli, did not even sign the forms, instead using the "/s/" symbol. [citation omitted]

*See* ECF, Dkt. No. 1972 at 8. It appears that the Insurers have simply fabricated this fact to harass Paul Napoli's father, Joseph Napoli, who happens to be a lawyer also employed with the Napoli firm. The insurers have not cited to a single claim form signed by Joseph Napoli. *See id*. In fact, the declarations the Insurers cited to in support of that sentence do not mention "Joseph Napoli" even once. *See* Declaration of Paul J. Hinton ("Hinton Decl.") ¶ 13, filed Jan. 22, 2021 by Century; Declaration of Erich J. Speckin ("Speckin Decl.") ¶ 14, filed Jan. 22, 2012 by Century. There is simply no evidence that Joseph Napoli signed a single claim form, nor could there be. This bizarre effort to harass family members of counsel must not be lost on the Court.

9.      The Insurers further try to distract from relevant issues in the bankruptcy stating "[Napoli] has previously been accused of misconduct by his former law partner." *See* ECF, Dkt.

1974, at fn. 38. This is an intentional misrepresentation because the Insurers cite to the very case that ultimately found that there was no misconduct on the part of Paul Napoli. *Compare id. with Napoli v. Bern*, 2019 NY Slip Op 04043, ¶ 1, 172 A.D.3d 592, 592-93, 98 N.Y.S.3d 832, 832 (1st Dep't, 2019). Either the Insurers selectively sorted through a case that exonerated Paul Napoli or they failed to accurately represent this information to the Court. This type of conduct should warrant sanctions.

10. Seventh, the Insurer's intentionally misrepresented the number of claims Napoli has filed and omit entirely the number of claims amended. The Insurers allege the Napoli firm has filed "1,750 POCs." *See* ECF, Dkt. 1974, at fn. 38. The Insurers further claim that in the days leading up to the bar date Napoli filed "over 400 [proof of] claim forms [that] were largely blank (i.e., they had one, two, or no words and one, two, or no checkboxes completed in Parts 3, 4, 5, and 6) except for the claimant's and lawyer's name and address." ECF, Dkt. 1974, at. 11.

11. Although the Insurers certainly have access to information showing how many of the claims by Napoli are amendments rather than originals, they intentionally omitted that. The Insurers' claim that Napoli filed "1,750 POCs" is deliberately misleading. In actuality, Napoli only represents approximately 1,312 claimants. *See id*. Thus, in citing to the larger numbers, the Insurers are seeking to conceal that of those 400 of the "largely blank" Proof of Claims filed by Napoli, most have since been amended and are now complete and bear the claimants' signatures. The reason for the Insurers' deception is obvious. Clearly, the claims filed by Napoli were not "outright fraud" because most have been since amended.

12. Perhaps the Motions' most pernicious falsehood is that "Hartford and Century are prepared to be constructive." *See* ECF, Dkt. No. 1972 at 2. This could not be further from the truth. Hartford and Century are purposefully skewing the confidential data to create the

appearance of impropriety to thwart the objective of reaching a global settlement with abuse victims. If the Insurers were being constructive, they would have properly engaged in a meet and confer with Napoli directly in preparation of this motion. Although the Insurers did contact the Coalition, Napoli is not represented by the Coalition. Even through the Coalition, it appears the only effort to meet and confer was to ask if we would accept 2004 discovery. *See* ECF, Dkt. No. 1974.

## JURISDICTION AND VENUE

13.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

14.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.    The bases for the relief requested herein are Section 502 of the Bankruptcy Code, 11 U.S.C. § 502, Rules 2004 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1001-1, 2004-1 and 3007-1.

## RELIEF REQUESTED

16.    Napoli respectfully requests deny the 2004 discovery request on the Napoli firm, its agents, and/or its clients.

17.    Further, Napoli respectively requests that if such discovery is allowed, it be limited to one interrogatory of no more than five (5) questions directed to the twenty-two claimants[2] represented by Napoli identified by the Insurers who have a Proof of Claim form signed by an attorney and have not yet amended their case. Should said Claimants (i) have already had the Proof of Claim form bear the claimant's signature, (ii) have since amended their

---

[2] *See generally* ECF, Dkt. No. 1972-3.

Proof of Claim, (iii) have granted express or implied permission for Napoli to sign a Proof of Claim on the claimant's behalf, or (iv) have otherwise abandoned their claim, the Insurers' request should be rendered moot.

## BASIS FOR RELIEF REQUESTED

18.     Bankruptcy Rule 2004 is broad, but its deployment is always a matter of the Court's discretion. *See Imerys Talc America*, Case No. 19-10289 (LSS) (Bankr. D. Del. July 24, 2019) ("Rule 2004 is discretionary.").

19.     "[Rule 2004] requires a balancing of the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (quotation omitted). Courts exercise discretion to deny or limit overbroad, unduly burdensome, or harassing Rule 2004 discovery requests.[3] "Rule 2004 is not available to creditors seeking to use this section to deal with their special problems." *Millennium Lab Holdings II*, 562 B.R. at 626-27.

### A. **The Insurers Lack Standing to Request 2004 Discovery from Claimants Represented by Napoli**

20.     Napoli joins in the response of the Coalition filed concurrently with Napoli's Opposition.

21.     Under Third Circuit case law, the Insurers are not a proper party in interest to file claim objections or seek discovery from tort victims. *See, e.g.*, *In re Combustion Engineering, Inc.*, 391 F.3d 190, 218 (3d Cir. 2004) (held the debtor's insurers lacked standing to challenge an order confirming a chapter 11 plan calling on them to fund an asbestos trust because the plan was

---

[3]     *See In re Mathews*, No. 18-MC-153-LPS, 2018 WL 5024167, at *3 (D. Del. Oct. 17, 2018) (quashing harassing subpoenas under Rule 2004); *In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("There are, however, limits to the use of Rule 2004 examinations. . .[i]t may not be used for 'purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry.) (citations omitted); *Mattera*, 2007 WL 1813763, at *2 ("Moreover, the expansive nature of Rule 2004 should not be permitted to exact prejudice or injustice on the subpoenaed party.")

insurance neutral); *but see In re Global Industries Technologies, Inc.*, 645 F.3d 201, 212 (3d Cir. 2011).

22.     First, if the parties do get to plan confirmation and the plan is not insurance neutral, then Hartford and Century may argue they have standing and the right to object under *Global Industries*.  They will likely seek discovery in connection with such a proceeding.  Under Bankruptcy Rule 3020(b), an objection to the confirmation of a chapter 11 plan is a contested matter. Until then, discovery under Bankruptcy Rule 2004 is inappropriate.  *See Imerys Talc America*, Case No. 19-10289 (LSS) (Bankr. D. Del. July 24, 2019).

23.     Second, the Insurers only have standing to object and be heard on matters that materially impact their rights. *Global Industries* did not purport to overrule *Combustion Engineering*.  The law remains that a debtor's insurers do not have general standing and a right to be heard on all matters.  What the Insurers are seeking to accomplish here—the free-ranging right to conduct discovery and engage in pre-confirmation claim litigation with tort victims—has never been done before and would be inconsistent with the limited role that a debtor's insurer should play in a Chapter 11 proceeding.

24.     Finally, if the Insurers contend that they are parties in interest with a general right to be heard as *creditors*, which would be atypical, their status as creditor should be substantiated as a threshold matter.   Hartford asserts "contingent/unliquidated" claims for "insurance coverage."   Century asserts "contingent/unliquidated" claims for "liability policy and related agreements."   The addendum Century attached to its claims further alleges that Century may have claims for "contribution."   The Insurers' alleged claims are maybe subject to disallowance under section 502(e) of the Bankruptcy Code.  If so, they demonstrate nothing more than insurers that lack standing.

**B. Napoli's Actions Surround the Filing of Proofs of Claim are Consistent with the Legal Requirement**

1. Napoli complied with all applicable rules regarding the manner in which Proof of Claims were filed.

25.     The Bankruptcy Rules permit attorneys to sign proofs of claim.  *See* FED. R. BANKR. P. 3001(b) & 9009(a). The pertinent rule states "[a] proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005." *See* FED. R. BANKR. P. 3001(b). The two exceptions are not pertinent to the instant motions. Rule 3004 concerns the filing of claims by a debtor or trustee. *See* FED. R. BANKR. P. 3004. Rule 3005 concerns the filing of a late claim and its acceptance and/or rejection by a guarantor, surety, indorser, or other co-debtor.  *See* FED. R. BANKR. P. 3005.

26.     The Local Rules also permit an attorney to sign a Proof of Claim with an electronic signature. *See* Local Rule 9011-4(b). Specifically, the Local Rules permit the use of an electronic "/s/" format for attorney signature. *See id.* The pertinent rule states the following:

> Any motion, pleading or other document requiring a signature that is electronically filed by a registered CM/ECF user must be filed as either (a) a document containing the signature of the person(s) signing said document or **(b) a document displaying the name of the person(s) signing said document, preceded by an "/s/" ("electronic signature") and typed in the space where the signature would otherwise appear (e.g., "/s/ Jane Doe").** The electronic signature of the person on the document electronically filed shall constitute the signature of that person for purposes of Fed. R. Bankr. P. 9011, and the use of a person's password to file a document electronically shall not constitute the signature of, or a representation to the court by, the person whose password is used for such electronic filing for purposes of Fed. R. Bankr. P. 9011. In the absence of a signature on a document electronically filed, the CM/ECF password used to file the document shall constitute a signature for purposes of Fed. R. Bankr. P. 9011.

*See id.* (emphasis added).

27.     Regarding the use and manner of attorney signatures, the Insurers inappropriately accuse Napoli of conduct that is expressly permitted under the Bankruptcy Rules and Local

Rules. The Insurers' main contention regarding Napoli is that the Napoli firm signed Proof of Claim forms that were "largely blank" with the exception of basic information identifying the victim (e.g. name, address, contact information, and social security number) and the law firm's information. *See* ECF, Dkt. 1974, at 11.

28.     As discussed, Napoli executed and filed Proof of Claim forms with the identifying information of the claimant to preserve the claim. Since the bar date, Napoli has filed Amended Proof of Claims for most of these cases. The majority of the Amended Proof of Claims filed by Napoli are now complete and bear the claimants' signatures. Nevertheless, the initial filing of the claims objected to by the Insurers was proper under FED. R. BANKR. P. 3001(b) & 9009(a) and Local Rule 9011-4(b).

2.  <u>Napoli sufficiently investigated the cases as required by the applicable rules and the Insurers failed to establish anything to the contrary.</u>

29.     In handling any manner before a court, attorneys have a general duty to not misrepresent information to the Court. The following rule concerns attorney representations:

> (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]—
>
> (1)     it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)     the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)     the allegations and other factual contentions have evidentiary support **or**, if specifically so identified, **are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery**; and

> (4)    the denials of factual contentions are warranted on the evidence or, if
> specifically so identified, are reasonably based on a lack of information or
> belief.

Fed. R. Bankr. P. 9011 (b) (emphasis added).

30.     Similarly, ABA Model Rules of Professional Conduct 3.3 imposes similar general

obligations for attorneys. The rule requires that a lawyer shall not knowingly:

> (1) make a false statement of fact or law to a tribunal or fail to correct a false
> statement of material fact or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction
> known to the lawyer to be directly adverse to the position of the client and not
> disclosed by opposing counsel; or
>
> (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's
> client, or a witness called by the lawyer, has offered material evidence and the
> lawyer comes to know of its falsity, the lawyer shall take reasonable remedial
> measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse
> to offer evidence, other than the testimony of a defendant in a criminal matter,
> that the lawyer reasonably believes is false.

Model Rules of Prof'l Conduct R. 3.3 (2020).

31.     Courts have held that Bankruptcy Rule 9011, which contemplates the execution of

documents by an attorney, applies to proofs of claim. *See*, *e.g.*, *Hannon v. Countrywide Home

Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009). Thus, it is acceptable for

an attorney to sign a client's proof of claim under Bankruptcy Rule 9011. This obviously does

not require that an attorney be a fact witness or disclose privilege communications. The 1983

Advisory Committee Note to Rule 11 provides: "The rule does ***not*** require a party or an attorney

to disclose ***privileged communications*** or work product in order to show that the signing of the

pleading, motion, or other paper is substantially justified." *Accord Vista Mfg., Inc. v. Trac-4, Inc.*,

131 F.R.D. 134, 137 (N.D. Ind. 1990) ("Rule 11 was not intended to be a discovery device . . . . A

plaintiff should not be required to lay bare its case, or reveal its work-product, simply because a Rule 11

motion is lodged against it.")

32.     Despite their instance that FED. R. BANKR. P. 9011 (b) was violated, the insurers present no evidence to support that claim with regard to Napoli. *See* ECF, Dkt. 1974, at 3. Going through each of the rules, it is clear Napoli did not violate its ethical or statutory obligations. Napoli performed "an inquiry reasonable under the circumstances" because each client represented to Napoli that they had a valid claim, and Napoli only filed claims where there was no evidence to the contrary. FED. R. BANKR. P. 9011 (b).  Filing Proofs of Claims on behalf of sexual abuse victims is not prima facie evidence of harassment or needlessly increasing the cost of litigation. *See id.* at (b)(1). Certainly, the filing of abuse claims is warranted by existing law and any potential defense that the insurers may assert (e.g. statute of limitations, inability to identify the abuser) do not preclude a victim from bringing a claim in the first instance. *See id.* at (b)(2). All of Napoli's claims are "likely to have evidentiary support after a reasonable opportunity for further investigation," and this is certainly born true for all the claims Napoli has already amended. *See id.* at (b)(3). There are no pertinent "denials of factual contentions" in a Proof of Claim that would need sufficient evidentiary support. *See id.* at (b)(4).

33.     Despite vague and generalized accusations, the Insurers' Motion does not offer any evidentiary support that Napoli violated ABA Rule 3.3. A Proof of Claim, specifically one that does not contain any factual assertions beyond the claimant's identifying information, does not show that any attorney has knowingly represented a false fact to this tribunal. *See* Model Rules of Prof'l Conduct R. 3.3 (1) (2020). There are no pertinent legal authorities in a Proof of Claim. *See id.* at 3.3 (2). There is no evidence offered in the Proof of Claim forms filed by Napoli that show that Napoli knew they were false, nor is there even evidence that any particular Proof of Claim form filed by Napoli contains false information. *See id.* at 3.3 (3); *see also See* ECF, Dkt. 1974, at 3.

34.    The cases cited by the Insurers generally concern instances where an attorney signed a form the attorney *knew* was false (i.e. actually committing fraud). *See e.g., In re Disciplinary Proceeding Against McGrath,* 178 Wash. 2d 280, 294 (2013) (disbarring attorney who filed false proofs of claim in his wife's bankruptcy to make her assets seem more encumbered than they really were so as "to mislead and discourage . . . creditors from making claims against the secured property."); *United States v. Connery*, 867 F.2d 929, 932 (6th Cir. 1989) (attorney who "prepared" a false proof of claim as part of a scheme by which the debtor had an accomplice file a false proof of claim was convicted of aiding and abetting a violation of 18 U.S.C. § 152(4), and was later disbarred); *In re Thomas*, 337 B.R. 879, 886 (Bankr. S.D. Tex. 2006) (concluding that "the proof of claim prepared, signed, and filed by Counsel on behalf of the IRS [was an] intentional false statement[]" because "both the Debtors and Counsel knew that the documents falsely represented the amount that the IRS asserted to be its claim," and referring conduct to the U.S. Attorney). Here, setting aside there is no evidence that anything filed by Napoli was inaccurate or fraudulent, there was also <u>*no evidence*</u> offered that Napoli <u>*knew*</u> the claims were fraudulent. *See* ECF, Dkt. 1974, at 22-25.

35.    Second, the Insurers misrepresent to the Court that attorneys have a non-delegable duty to personally perform an investigation for each claimant. *See* ECF, Dkt. 1974, at 24. In the *Obasi* case cited by Insurers, the court cites to Bankruptcy Rule 9011's mandate that "an inquiry reasonable **under the circumstances**." *In re Obasi*, No. 10-10494 (SHL), 2011 Bankr. LEXIS 5011, at *11 (Bankr. S.D.N.Y. Dec. 19, 2011) (emphasis added) (citing Fed. R. Bankr. P. 9011 (b)). Here, signing a Proof of Claim with only the identifying information of the claimant after they represented they were abused while within the BSA, only holds the attorney responsible for the truth or falsity of the identifying information. *See id*. Given the absence of information

provided there is no way that Napoli could have possibly "ignore[d] obvious indications that [his] information may be incorrect" since there is nothing to correct. *In re Taylor*, 655 F.3d 274, 288 (3d Cir. 2011).

36.     Insurers cite their own statistics to create the appearance that the vast majority of claims filed in the Debtors' cases were signed by attorneys without proper vetting.  *See* ECF, Dkt. 1974, at. 11.  But these same statistics show that the vast majority of claims filed by the targeted law firms were signed by abuse victims—over 49,000 per the Insurers' own Motion— and strongly suggest that attorney-signed forms were filed as a last resort.  *See id.*   The fact that some claim forms were signed by Napoli attorneys does not prove or even indicate a lack of diligence or fraud.

37.     Thus, Napoli did not violate any of the ethical mandates described therein.

**C.  The Insurers Have Failed to Establish Good Cause for 2004 Discovery and the Discovery Sought will not Uncover any Information Pertinent to the Basis for the Insurers' Motion**

38.     The burden always remains with the party seeking discovery under Bankruptcy Rule 2004 to demonstrate good cause. *See Transmar Commodity*, 2018 WL 4006324, at *4 ("The party seeking discovery under Rule 2004 bears the burden of showing good cause for the examination it seeks."); *Mattera*, 2007 WL 1813763, at *2 ("the party seeking to conduct a Rule 2004 examination bears the burden of showing cause.")

1.  The Insurers fail to advance any credible reason why such discovery is required from Napoli and/or its clients.

39.     The Insurers offer several additional justifications in support of the Motions, none of which establish good cause for discovery under Bankruptcy Rule 2004 with respect to Napoli.

40.     **Attorney Advertising**. The Court has already ruled on this issue. *See* ECF, Dkt. No. 1331. Napoli had voluntarily removed advertising statements concerning the potential size of

a victim's compensation fund and was compliant even before the Court's September 9, 2020 hearing on the issue. *See id.* at 7. The Court's ruling also stated that Napoli would not be required to include the Claims and Noticing Agent's Website on the television advertisement or firm's website. *See id.* at 7, fn. 4. This is simply not a viable justification for 2004 discovery.

41.     **Fraudulent Claims**. The Insurers only accuse Napoli of signing blank proofs of claims. *See* ECF, Dkt. 1974, at. 11. The Insurers claim discovery is necessary to ascertain (i) what vetting was done, (ii) uncover evidence of lawyers filing claims without seeing them; and (iii) reveal the conduct of additional third-parties in the filing of claims. *See* ECF, Dkt. No. 1972, 20-21.

42.     As stated, the majority of claim forms filed by Napoli that only contained the client's identifying information and an attorney signature have now been amended. This fact disproves the Insurers' main contention for which they base their request for depositions and written discovery of attorneys. There is no conceivable way Napoli was involved in a conspiracy to file fraudulent Proof of Claims if most of those claims are now amended and are signed by the claimant.

43.     **Certain Claimants have Criminal Records**. The Insurers assert that discovery from abuse victims is necessary because certain claimants have criminal records, but having troubles after experiencing abuse is common.  An equally valid supposition is that such troubles in adulthood occurred because these victims were sexually abused as children.

44.     **Abuse Impact Description**.  The Insurers assert that discovery from abuse victims is necessary because eleven proofs of claim use the following language to describe the abuse: "After the abuse, I was overwhelmed with feelings of confusion, shame, and guilt.  I was too young to fully understand what [REDACTED] did to me, but I knew it was wrong."  *See*

ECF, Dkt. No. 1972, at 7. Importantly, the Insurers do not allege this is pertinent to any of Napoli's cases and this again belies the broad-based attack being made that includes this law firm. *See id.*

45.      **Use of Electronic Signatures.**    The Insurers assert that attorney depositions are justified because attorneys filed claim forms with electronic signatures.  *See* ECF, Dkt. No. 1974, at 20.  However, as discussed, this is permitted under the Local Rules.  *See* Local Rule 9011-4(b).

46.      **Photocopies of Signatures.**    The Insurers assert that attorney depositions are justified because attorneys used photocopies of signatures.  *See* ECF, Dkt. No. 1974, at 20.  This is a fairly common practice due to Covid-19.  This does not prove or even indicate that the attorney whose signature was affixed to the claim form failed to conduct a proper inquiry under the circumstances. Nevertheless, Napoli is not mentioned in the cited materials regarding this practice. *See* ECF, Dkt. No. 1974, at Speckin Decl. ¶¶ 7–8, 10–11.

47.      **Claims Have Deficiencies / Duplicate Claims Were Filed**.  The Insurers assert that discovery from abuse victims is necessary because certain claims contain deficiencies and duplicate claims were filed.  *See* ECF, Dkt. No. 1972, at 20. However, this is true in nearly every chapter 11 case, and, as this Court knows, not just in those cases dealing with mass torts.  It is not uncommon for claims to contain deficiencies or for there to be duplicate filings.  It is obviously better to file a claim without complete information than miss the bar date.  Napoli has been and will continue to file amended claims that provide additional information and cure deficiencies.

48.      **Statute of Limitations.** The Insurers assert that discovery from abuse victims is necessary because certain claims appear to be time-barred on their face.  *See* ECF, Dkt. No.

1972, at 20. But this Court's bar date order specially provides: "For the avoidance of doubt, even if the Sexual Abuse Claim is time-barred under applicable statute of limitations, each Sexual Abuse Survivor is required to file a Sexual Abuse Survivor Proof of Claim in order to preserve the right to pursue a Sexual Abuse Claim." ECF, Dkt. No. 695, at ¶4(h) (emphasis removed). Further, Napoli and the Insurers likely disagree in their legal evaluation of how to interpret the statute of limitations on a state-by-state basis.

49.    **Claims Already Paid**.  The Insurers assert that discovery from abuse victims is necessary because approximately 130 claimants (out of over 95,000 filed claims) may have already received some form of payment.  Motion at ¶ 15.  It is unclear what if any this portion of this bald allegation pertains to Napoli or its clients specifically, but this does not mean that all of these claimants have been paid in full for their injuries or that any Napoli client ever was compensated.  If any discovery is warranted on this issue it should be addressed to BSA or the insurers themselves who entered into confidential settlements prior to the filing of the Bankruptcy. Certainly, this is not a basis to seek discovery on over one thousand sexual abuse victims, the vast majority of whom have not received any compensation for abuse that occurred decades ago.

50.    As the foregoing shows, the Insurers have not established good cause for discovery to be served on Napoli and/or its clients. The requests are meant to harass the sexual abuse victims, their counsel, and counsel's family and stop the implementation of a plan that would cause Insurers to honor their contractual obligations. The Insurers' requests should be denied.

2. <u>In the alternative, Napoli requests the requests be limited to a single interrogatory per claimant who has not amended their claim because the Insurers' request is overly broad and unduly burdensome.</u>

51.     Assuming, *arguendo*, that the Court, in its discretion, elects to open the door to discovery and claim litigation now, the Insurers' proposed discovery requests are overbroad, unduly burdensome, and disproportionate to the needs of these cases.  If discovery is permitted, each abuse victim should have the right to object under the Civil Rules.

52.     Currently, the insurers request of 11 interrogatories and 8 requests for production for each claimant. This would result in approximately 24,000 discovery requests. *See* ECF, Dkt. No. 1972-2; 1972-3. Not to mention many of the questions from the proposed interrogatories are within the claim form and/or request information that no other claimant is required to provide. *See id*. Moreover, the time required to prepare for and attend Insurers' deposition requests would delay this matter into the next decade. It would be simply impossible to retrieve documents for that many claimants in such a short amount of time, especially given the fact that the Insurers have already narrowed these requests to only a few law firms.

53.     If the Court is inclined to allow Insurers to take 2004 discovery, Napoli requests it be limited to one (1) Interrogatory per claimant and no Requests for Production.  The Insurers' Motions simply fail to establish why additional documents would be required over and above other claimants, where the claim form is tantamount to a comprehensive set of interrogatories exceeding the number allowed under the Federal Rules of Civil Procedure. Further, The Insurers' ability to extrapolate information they receive is not possible because, for example, whether a particular claimant received treatment does not mean that another claimant has.

54.     The Insurers' request for depositions must be denied. To justify such a request for additional depositions over the 10 deposition limit the party "is required to specify the individuals it wishes to depose and make a 'particularized showing' of the reasons the additional

depositions are needed." *Maxus Energy*, 617 B.R. at 813. The Insurers' motion makes no effort to make such a showing. *See* ECF, Dkt. No 1972.

55.     Further, the Insurers seek discovery from twenty-two (22) claimants represented by Napoli. *See* ECF, Dkt. No 1972, at Ex. C. Of those twenty-two (22), it appears six (6) bear claimants' signatures, three (3) were amended, and one (1) recently informed Napoli he would no longer like to pursue his claim. Thus, only twelve (12) cases from which the Insurers seek discovery from Napoli still have attorney signatures, and Napoli has already begun the process of attempting to amend those claims as well.

56.     The Insurers' request for 2004 discovery should be denied, and Napoli should be permitted to continue to amend the remaining cases that bear an attorney signature. To the extent the Court does permits discovery, it should be limited to one interrogatory of no more than five (5) questions directed toward the twenty-two claimants[4] represented by Napoli identified by the Insurers who have a Proof of Claim form signed by an attorney and have not yet amended their claims. Should said Claimants (i) have already had the Proof of Claim form bear the claimant's signature, (ii) have since amended their Proof of Claim, (iii) have granted express or implied permission for Napoli to sign a Proof of Claim on the claimant's behalf, or (iv) have otherwise abandoned their claim, the Insurers' request should be rendered moot.

## CONCLUSION

57.     For the foregoing reasons, Napoli respectfully requests the Court DENY the Insurers' Motions for 2004 discovery with respect to Napoli and/or their clients.

---

[4] *See generally* ECF, Dkt. No. 1972-3.

Dated: Wilmington, Delaware
        February 5, 2021

Respectfully submitted,

**Napoli Shkolnik LLC**

/s/ R. Joseph Hrubiec
R. Joseph Hrubiec (#5500)
919 N. Market St., Suite 1801
Wilmington, DE 19801
Telephone: (302) 330-8025
RHrubiec@NapoliLaw.com

*Counsel for Claimants*