IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re Docket No. 1974 & 2043** |

### JOINDER OF SLATER SLATER SCHULMAN LLP TO THE OBJECTION OF THE COALITION OF ABUSED SCOUTS FOR JUSTICE TO INSURERS' MOTION FOR AN ORDER AUTHORIZING RULE 2004 DISCOVERY OF CERTAIN PROOFS OF CLAIM

Slater Slater Schulman LLP, ("Slater"), by and through its undersigned counsel, hereby submits this Joinder to the objection (the "Objection") of the Coalition of Abused Scouts for Justice (the "Coalition") to the *Insurers' Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim* (the "Motion"). In support of this Joinder, Slater respectfully states as follows:

1. Slater is one of twelve law firms with respect to whom the Motion seeks authorization to serve Rule 2004 discovery.

2. Slater agrees with, joins in, and adopts each of the arguments made by the Coalition in the Objection.

3. Slater submits this Joinder in part to supplement Point IV of the Objection with a more particularized showing that, with respect to Slater, the Insurers fail to establish good cause for the proposed discovery.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

4. The Motion makes only three allegations with respect to Slater: (a) two Slater attorneys signed more than two hundred proofs of claim in a single day, a number of which bore identical signature pages. (Motion at 5 & 11); (b) certain claims filed by Slater are "incomplete" or have other "characteristics" (i.e., "late," "multiple," "inconsistent ages or states of abuse"). (Hinton Decl. Tables 1 & 2); and (c) Slater received litigation funding. (Motion at 8).

5. The Motion <u>does</u> <u>not</u> allege, for instance, that Slater (i) worked with a "claim aggregator," which the Insurers allege "played a key role in churning out dubious claims"; (ii) conducted any false advertising; or (iii) engaged in any practice designed to make it easier to file false claims.

6. The limited allegations made with respect to Slater, even if accepted as true, do not demonstrate good cause to serve the proposed discovery.

7. As discussed in the Objection, the more reasonable inference to be drawn from the filing of attorney-signed claims close to the bar date is that counsel had legitimate concern that failing to do so for lack of a client signature would put the client at risk of being denied compensation. (Objection ¶¶ 5-11 & 38-40 & 44). Use of a common signature page in no way reflects the amount of time or care taken in reviewing a claim, any more so than does the application of a digital signature to a legal brief. It is simply an efficient method of remotely signing multiple documents. (Objection ¶ 19). With respect to Slater, the attorney-signed claims with which the Insurers take issue represent just 4.6% of all claims filed by Slater. (Hilton Decl. Tables 1 & 2).

8. That certain claims filed by Slater contain "incomplete" information or other "characteristics" of the kind observed by the Insurers is not good cause to pursue discovery of

claimants' counsel.[2] The Insurers do not assert, or attempt to show, that the claims signed by Slater attorneys are more likely to be "incomplete" or to contain other observed "characteristics" than those claims that are signed by the claimants themselves or, for that matter, by attorneys for law firms representing members of the Official Committee of Tort Claimants, from whom the Insurers do not seek discovery.[3] Absent such a showing, it cannot reasonably be inferred that the claims signed by Slater attorneys are less reliable or that any supposed lack of reliability resulted from attorney misconduct.

9. As discussed in the Objection, it is common for lawyers to use litigation funding. (Objection ¶ 45). That Slater did so to fund its operations (e.g. to pay staff or other expenses) in no way supports the Insurers' vague allegation that some unnamed "firms used hedge fund money to buy claims." (Motion at 8). To support its assertion, the Motion cites only to a vague email written by a non-Slater attorney and to media reports relating to Legal Bay, LLC, neither of which have anything to do with the funding that Slater obtained, which the Insurers acknowledge was in the form of a loan from an entirely different source. (Id.).

10. In sum, none of the allegations made with respect to Slater show good cause for authorizing the extraordinarily burdensome and intrusive discovery proposed by the Insurers.

---

[2] The Insurers assert that approximately 59% of the claims filed by Slater are missing one or more pieces of information. (Hinton ¶ 11). That number is inflated by the inclusion of the abuser's last name as a "key" element of information. It is not surprising – or indicative of fraud – that an abuse victim does not know or recall the last name of his abuser when in many cases the abuse occurred many years ago, at a time when the victim was a child, and in the context of a relationship of trust, which was fostered by the Boy Scouts. Not counting those claims that the Insurers say are missing the abuser's last name, less than 3% of all claims filed by Slater are supposedly "incomplete."

[3] The Motion misleadingly asserts that the table presented on page 5 "indicates" that the attorney-signed claims "are missing critical information, are late, duplicates, or have issues with the alleged state or year of the abuser." The percentages presented in that table do not relate only to attorney-signed claims. Those percentages relate to all claims filed by the listed firms, the vast majority of which are signed by claimants, not attorneys. (Hinton Decl. Table 2). The Insurers do not submit separate percentages for just attorney-signed claims, as one would expect them to do if the data showed that those claims are more likely to be "incomplete" or to have other observed "characteristics" than those signed by claimants.

\*   \*   \*   \*

11.    Slater reserves all of its rights to object to any discovery served by the Insurers, including on the basis that such discovery is overly broad, unduly burdensome, and seeks information protected by attorney-client privilege and/or the work product doctrine.

Dated: February 5, 2021
       Wilmington, Delaware

*/s/ Scott D. Cousins*
Scott D. Cousins (DE Bar No. 3079)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Email:    scott.cousins@cousins-law.com

- and -

Joel M. Taylor (*Pro Hac Vice* pending)
**KAGEN, CASPERSEN & BOGART PLLC**
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone:    (212) 880-2045
*Attorneys for Slater Slater Schulman LLP*