## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC, | ) | |
| | ) | Jointly Administered |
| Debtors[1]. | ) | |
| | ) | Re: Docket Nos. 2028 and 2030 |

### KOSNOFF LAW'S OMNIBUS OBJECTION
### TO HARTFORD'S AND CENTURY'S MOTIONS TO COMPEL

Kosnoff Law hereby submits this objection (the "Objection"), to *Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company's Motion to Compel Abused In Scouting and Kosnoff Law PLLC to Submit Rule 2019 Disclosures* [Docket No. 2028] and *Century's Motion to Compel Abused In Scouting, Kosnoff Law PLLC, and the Coalition to Submit the Disclosures Required By Federal Rule of Bankruptcy Procedure 2019* [Docket No. 2030] (collectively, the "Motions"). In further support of the Objection, Mr. Kosnoff respectfully submits the following:

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## PRELIMINARY STATEMENT

1.     The Insurers' Motions to Compel Kosnoff Law to file Rule 2019 disclosures are the latest installment in the Insurers' relentless pursuit to marginalize Mr. Kosnoff and neutralize the multi-billion dollar liability that they face to their insureds' child sexual abuse victims.  Because the Insurers fear Mr. Kosnoff's experience, expertise and dogged determination, they resort to efforts to suspend his First Amendment rights, muzzle his passionate opinions of what happened to his clients and silence the opinions that pose existential threats to them.

2.     In this episode of the Insurers' campaign against Mr. Kosnoff and the 17,000 victims whom he represents, the Motions seek to manipulate Rule 2019 as a means to harass and overburden opposing counsel, to force the disclosure of highly confidential information and to drive a wedge between their opponents' various constituencies.  The Insurers misconstrue and misrepresent the context of Mr. Kosnoff's words and attempt to fashion them in such a way that imposes Rule 2019 obligations.  Of course, Rule 2019 cannot be misused in that manner.  The Motions put forth no authority whatsoever that permit the Insurers to seek Rule 2019 disclosures from Kosnoff Law.  Because Kosnoff Law is not a group, committee, or entity contemplated in Rule 2019(b), such disclosures are not

required.   Accordingly, Mr. Kosnoff respectfully requests that the Court deny the

Motions.

## BACKGROUND

3.      Similar to the Insurers' crusade to depose and seek discovery against Mr. Kosnoff based on an email that he authored, the Insurers now focus their attack on a series of Mr. Kosnoff's social media posts.  As Mr. Kosnoff sets forth in his Objection to Insurers' Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim [D.I. 2076], he has devoted his life's work to advocate and seek justice for victims of child sexual abuse.  The series of social media posts is an example of his passionate devotion to these victims.  None of the tweets that Mr. Kosnoff authored, and to which the Insurers cite in the Motions, change the landscape of this bankruptcy action and none of them remotely have the effect that the Insurers' suggest.

4.      As Mr. Kosnoff has represented in his Objection to the Insurers' Motion for Rule 2004 Discovery, Mr. Kosnoff has allied himself with other attorneys who share many of his views.  Originally, he participated in the Coalition, but withdrew from that association last year, as the Court knows.  He has called the small group of firms that share resources with him "Abused in Scouting."  That group is not a law firm and is not a legal entity.  It is simply a collection of lawyers who work cooperatively to make these proceedings known to abuse victims, to reassure those victims that they are not alone and that help is

available to them and to present and pursue their claims effectively and aggressively.

5.    Since his withdrawal from Coalition activities, Mr. Kosnoff has not attended a single Coalition meeting or conference call.  He has not participated in any mediation nor has he conducted any Coalition business whatsoever.  He has neither asked for, received nor disseminated confidential information from the Coalition since his withdrawal.

6.    Neither has Mr. Kosnoff made a single assertion in these proceedings that conflicts with any position that the Coalition has taken.  Never has he suggested in a filing or on the Court's record that the composition of the Coalition's membership has changed.

7.    The tweet upon which the Insurers base the Motions is one in which Mr. Kosnoff stated that a member of the Coalition's legal team did not speak for his clients.  Of course, Mr. Kosnoff has never made such a remark in this case. Why, then does the tweet seem to suggest that Mr. Kosnoff's clients have seceded from the Coalition?

8.    Had the Insurers identified the context of that tweet, it would already be clear to the Court that Mr. Kosnoff was responding not to any position the Coalition took in this case or at mediation.  In truth, Mr. Kosnoff was writing in response to remarks that a Coalition attorney made to a reporter for the *Wall Street*

*Journal*. Far from evidencing the dramatic schism that the Insurers have invented, the tweet simply disputes remarks attributed in a newspaper account. Never in the history of bankruptcy law has such an incident triggered obligations under Rule 2019.

9.     Though Mr. Kosnoff personally withdrew from Coalition activities, his clients stand by any membership in the Coalition that they previously indicated. Mr. Kosnoff will continue to represent those clients with zeal, to the best of his ability and without cowering under the Insurers' tactics of intimidation.

10.     Because he is no longer a member of the Coalition, Mr. Kosnoff has no control over the Coalition's Rule 2019 disclosures. Indeed, the Coalition filed Rule 2019 disclosures that the Court deemed appropriate after weeks of litigation. Mr. Kosnoff is aware of no reason for the Coalition to amend those disclosures, but it is certainly free to do so – and has done so – at any time. Mr. Kosnoff has sought no status in these proceedings other than as an attorney who represents claimants. Accordingly, he owes no obligations under Rule 2019.

## **ARGUMENT**

11.     The Motions request entry of an order compelling Kosnoff Law and Abused in Scouting to make disclosures pursuant to Federal Rule of Bankruptcy Procedure 2019. Rule 2019 requires certain disclosures from certain "groups, committees, and entities" as follows:

> In a chapter 9 or 11 case, a verified statement setting forth the
> information specified in subdivision (c) of this rule shall be filed by
> every group or committee that consists of or represents, and every
> entity that represents, multiple creditors or equity security holders that
> are (A) acting in concert to advance their common interests, and (B)
> not composed entirely of affiliates or insiders of one another.

Fed. R. Bankr. P. 2019(b)(1). Subsection (c) of Rule 2019 provides the information required in a verified statement. The prerequisite to the application of subsection (c), of course, is that a group, committee, or entity falls under the Rule 2019 categorizations of subsection (b)(1).

12.    Kosnoff Law is not subject to the Rule 2019 disclosure requirements, because Kosnoff Law does not seek any status other than as an attorney that represents claimants in the bankruptcy action. Based on the plain language of subsection (b), disclosures are not required by every party in a case. *See also* D.I. 2028, Ex. A, Tr. 70:6-10 ("He actually even suggested that disclosures be made by every party in a case. That did not get adopted.").

13.    The Insurers' Motions are both based on a general citation to Fed. R. Bankr P. 2019(c) and Order, *In re Archdiocese of St. Paul and Minneapolis*, No. 15-30125, Feb. 27, 2017 (Bankr. D. Minn). *See* D.I. 2028 ¶ 20; D.I. 2030 at 15 n.50. First, subsection (c) provides the information that is required in a disclosure statement *when one is required*. Needless to say, if a group, committee, or entity is not required to file a disclosure statement under subsection (b), subsection (c) is inapplicable. That is the case here.

14.    Second, as explained at oral argument last fall, the *Archdiocese* Order is distinguishable because that case involved a single law firm that represented over 70 percent of the claims that were being voted on in the plan. *See* D.I. 2028, Ex. A, Tr. 43:20-44:12.   Here, Kosnoff Law represents a much smaller subset of claimants.    As to the identity of members of the Coalition, that is for the Coalition's counsel to disclose and it already has.   Mr. Kosnoff has no control over the Coalition's Rule 2019 disclosures filed in this action and knows of no reason to believe that the Coalition should amend its disclosures now.

15.    Century's contention that Mr. Kosnoff's conduct violated the lawyers' rules of professional conduct is without merit.   Contrary to Century's arguments, none of Mr. Kosnoff's tweets disseminated any confidential information, intended to disrupt a tribunal, or had a substantial likelihood of materially prejudicing an adjudicative proceeding.   As an attorney, Mr. Kosnoff takes his obligations to adhere to the rules of professional conduct seriously.   However, Mr. Kosnoff also values his constitutionally guaranteed right to free speech and uses his social media platform as a vocal advocate for child sexual abuse victims to seek justice for those victims.   Mr. Kosnoff's status as a lawyer does not abridge his First Amendment rights, outside the scope of his professional conduct obligations.   *See Gentile v. State Bar*, 501 U.S. 1030 (1991).   Permitting the Insurers' to move forward with an

application for a Rule 2019 disclosure as to Mr. Kosnoff would be an
impermissible infringement on his exercise of his constitutional rights.

16.    The Insurers' desperation and willingness to skew the facts and law
are perhaps best exemplified by their tortured reliance upon *Chevron Corp. v.
Donziger*, 974 F. Supp. 2d 362, 576-83 (S.D.N.Y. 2014).  In an extremely lengthy
opinion, the court introduced the factual setting as follows:

> This case is extraordinary.  The facts are many and sometimes
> complex.  They include things that normally come only out of
> Hollywood – coded emails among Donziger and his colleagues
> describing their private interactions with and machinations directed at
> judges and a court appointed expert, their payments to a supposedly
> neutral expert out of a secret account, a lawyer who invited a film
> crew to innumerable private strategy meetings . . . .

The court found that Donziger engaged in coercion of a judge, bribery,
misrepresentation, ghostwriting and other misconduct.  The Insurers draw from
that set of facts a notation about a "media pressure campaign" to equate Mr.
Kosnoff's tweets with the conduct in *Donziger*.  That foray beyond the bounds of
fair advocacy reveals a great deal about the Insurers' tactics, motivations and
inclination to mislead.

17.    With respect to the Insurer's Motions against Abused in Scouting,
Rule 2019 is equally inapplicable because it is not an "entity."  The Insurers are
not permitted to conjure an entity when none exists.  As several parties have
explained several times, Abused in Scouting is not a legal entity; it is not a law

firm; and it is not a party to these proceedings.  It is simply a group of lawyers with a shared motivation to support victims of the heinous abuse they suffered while under the Boy Scouts' care.   Therefore, Abused in Scouting cannot owe obligations under Rule 2019.

## **CONCLUSION**

18.    Accordingly, since the Insurers have offered no justification that requires Kosnoff Law to file a Rule 2019 disclosure in these proceedings, Mr. Kosnoff respectfully requests that the Court enter an order denying the Motion and granting Kosnoff Law such other and further relief as the Court deems just and proper.


Date:  February 10, 2021              WILKS LAW, LLC

                                                    _/s/ David E. Wilks_
                                                    David E. Wilks (DE Bar No. 2793)
                                                    4250 Lancaster Pike, Suite 200
                                                    Wilmington, Delaware 19805
                                                    Telephone: 302-225-0850
                                                    Facsimile:  302-225-0851
                                                    Email:  dwilks@wilks.law

                                                    _Counsel to Kosnoff Law_