## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered |

### REPLY IN SUPPORT OF HARTFORD AND CENTURY'S MOTION FOR AN ORDER (I) AUTHORIZING CERTAIN RULE 2004 DISCOVERY AND (II) GRANTING LEAVE FROM LOCAL RULE 3007-1(f) TO PERMIT THE FILING OF SUBSTANTIVE OMNIBUS OBJECTIONS

STAMOULIS & WEINBLATT LLC

Stamatios Stamoulis (#4606)
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302-999-1540
Facsimile: 302-762-1688
  - and -
Tancred Schiavoni (admitted *pro hac vice*)
Gary Svirsky (admitted *pro hac vice*)
Colleen Powers (applying for *pro hac vice*)
Andrew Kirschenbaum (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212-326-2000
  - and -
Sergei Zaslavsky (applying for *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: 202-383-5300

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

BAYARD, P.A.

Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: efay@bayardlaw.com
      gflasser@bayardlaw.com
  - and -
James P. Ruggeri (admitted *pro hac vice*)
Joshua D. Weinberg (admitted *pro hac vice*)
Michele Backus Konigsberg (admitted *pro hac vice*)
SHIPMAN & GOODWIN LLP
1875 K Street, NW, Suite 600
Washington, D.C. 20003
Tel: (202) 469-7750
Fax: (202) 469-7751
  - and -
Philip D. Anker (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
Tel: (212) 230-8890
Fax: (212) 230-8888

*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company*

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company (collectively, "**Hartford**"), and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America ("**Century**"), file this reply in support of *Hartford and Century's Motion for an Order (I) Authorizing Certain Rule 2004 Discovery and (II) Granting Leave from Local Rule 3007-1(f) to Permit the Filing of Substantive Omnibus Objections*, filed under seal on January 22, 2021 [D.I. 1971 & 1972] (the "**Motion**"):

## Preliminary Statement

1.     The need for discovery of the Abuse Claims[2] is compelling.  The extraordinary explosion in claims against the Debtors—from only 275 lawsuits and 1,400 other asserted claims pending on the petition date to more than 95,000 claims today—and the highly aggressive advertising campaign by a group of plaintiffs' lawyers and for-profit claims aggregators that led up to that explosion in claims cry out for an investigation.  The requested discovery is necessary to examine the validity of those claims and the extraordinary process that generated them.  Such discovery—to examine the Debtors' principal liability that is at the heart of this bankruptcy—falls well within the broad scope of Rule 2004.

2.     Although the Coalition and other objecting parties (but tellingly not the Official Tort Claimants Committee ("**TCC**")) advance several makeweight objections to the proposed discovery, all of those objections are at bottom premised on a single argument:  The objectors contend that the possibility that a substantial number of the Abuse Claims may be invalid, time-barred, or even fraudulent is not a proper concern for this Court in this bankruptcy case, but rather something that should be addressed—if at all—only after confirmation by a not-yet-formed trust,

---

[2]     Capitalized terms not defined herein have the meanings ascribed to such terms in the Motion.

presumably administered by the very plaintiffs' lawyers who caused the explosion in claims. That could not be more wrong.

3.    This is not a private, out-of-court settlement. The Debtors sought bankruptcy protection in this Court and asked that the Court set a bar date for Abuse Claims. The claimants (or their counsel and aggregators) then filed more than 95,000 claims with this Court. The Debtors and the claimants have thus invoked the Court's jurisdiction over the Abuse Claims and the Bankruptcy Code's provisions governing the allowance of claims. Having done so, the objecting parties cannot now ask this Court to turn a blind eye to the very real possibility that many of those claims may be invalid (or worse). That is particularly so in light of the troubling circumstances of this case, which has seen an unprecedented explosion in claims resulting from an advertising campaign by for-profit claim aggregators and plaintiffs' lawyers promising the claimants' complete anonymity, and compensation without the need for proof that would be required in court, from a trust they baselessly asserted would be funded with $1.5 billion.

4.    This is not to suggest that all Abuse Claims are invalid or fraudulent. But there are serious questions as to the validity of a substantial portion of the claims. It is critical that interested parties be given the opportunity to investigate those questions so that the Court can ensure that these bankruptcy proceedings are conducted with rigor and integrity. When this Court set the bar date for claims, it instructed that if any claims were objectionable, parties in interest should file objections. The TCC likewise acknowledged that the Abuse Claims would be subject to the normal claims allowance process under Section 502 of the Bankruptcy Code. The discovery Hartford and Century seek is designed simply to make that process possible. It is clearly authorized by Rule 2004. And given the Debtors' ambitious schedule for plan confirmation, that discovery needs to begin now, so that (among other things) claimants with invalid claims are not allowed to control the vote on the plan.

<u>**Argument**</u>

I.    **Rule 2004 Discovery Is Warranted to Examine the Significant Concerns That Have Been Raised Regarding the Validity of the Proofs of Claim**

    A.    **The Investigation and Allowance of the Abuse Claims Is Central To This Bankruptcy Case**

5.    The principal argument advanced by the Coalition of Abused Scouts for Justice ("**Coalition**") and other objectors is that no discovery into the Abuse Claims is necessary or appropriate now—or at any time in the case—because any plan will leave it to a private trust, not this Court, to assess the Abuse Claims post-confirmation. *See, e.g.*, *Objection of the Coalition to the Motion* [D.I. 2048] ("**Coalition Obj.**") at 4-6. That argument ignores the history of this case and misapprehends the most basic aspects of bankruptcy law and jurisdiction.

6.    The Debtors and the claimants could have agreed to resolve the Abuse Claims in an out-of-court private settlement. They tried, but ultimately chose not to do so, and the Debtors instead filed for bankruptcy for the very purpose of resolving their liability for the Abuse Claims pursuant to the Bankruptcy Code. The Debtors invoked the jurisdiction of this Court, asking this Court to enter a bar date order for the Abuse Claims. The Court did so, stating that if the proofs of claim filed in response to the bar date were objectionable, objections should be filed to those claims, because otherwise the filing of the proofs of claim would have the effect the Bankruptcy Code provides. *See* Hr'g Tr. (May 18, 2020) [D.I. 675] at 70.

7.    The Court's ruling reflects both the presumptive allowance of properly filed proofs of claim, which are deemed allowed absent objection, and the corresponding right of parties in interest to object to those claims under the Bankruptcy Code. *See* 11 U.S.C. § 502(a). And upon the filing of such an objection, the Code directs that "the court … *shall* determine the amount of such claim … and *shall* allow such claim … *except to the extent that … such claim is unenforceable against the debtor … under … applicable law*." *Id.* § 502(b)(1) (emphasis added).

The discovery that Hartford and Century seek is intended to make it possible for the parties and the Court to do just that, *i.e.*, to identify objectionable claims.[3]

8.      For their part, the claimants—or their counsel and claims aggregators—have availed themselves fully of the Court's ruling, having responded by filing more than 95,000 proofs of claim in this Court.  Having done so, the objectors cannot now turn around and argue that the normal processes mandated by the Bankruptcy Code for determining whether those claims are legitimate debts for which the Debtors are liable, or are instead invalid or even fraudulent, are not applicable.

9.      The explosion in claims that this bankruptcy case has generated is unprecedented in scale.  While other mass-tort cases have sometimes led to an increase in claims, Hartford and Century are unaware of any other mass-tort case where there has been an increase in claims remotely close to the magnitude involved here.  On the petition date, the Debtors faced 275 filed lawsuits, and another 1,400 claims that had been "asserted" in correspondence.  They now face more than 95,000 claims, more than a 55-fold increase.

10.      That explosion in claims was the product of an aggressive media advertising campaign by a group of for-profit claim aggregators and plaintiffs' lawyers that promised compensation from a $1.5 billion-dollar trust, based simply on the filing of a claim which purportedly would let the claimant remain anonymous and be paid without further investigation or scrutiny.  *See* Motion at 3-4.  Not surprisingly, that nationally advertised promise of anonymous and easy recoveries has resulted in the filing of thousands of unvetted and unsubstantiated claims,

---

[3]      For the same reasons, discovery is warranted to assist the Court in evaluating any possible estimation of liabilities for Abuse Claims, as the Debtors (or others) may propose in conjunction with a disclosure statement hearing or other proceedings. *See* 11 U.S.C. § 502(c).  It may not be practical for the Court to fix liability or values for Abuse Claims in such a proceeding, but the targeted, statistically significant discovery that Hartford and Century are seeking in this Motion will assist the parties and the Court in determining whether significant groups of claims may be subject to legitimate challenge and should be estimated accordingly, for voting or distribution purposes.

including more than 10,000 duplicate claims, thousands of others that lack basic information about the purported abuse, and others still that raise serious questions about fraud.[4] *See id.* at 4-10, 14-17.

11.    The Coalition attempts to dismiss all of the troubling evidence Hartford and Century have already been able to uncover without any discovery as merely a few anecdotal examples, urging that it says little about the merits of the more than 95,000 proofs of claim that have been filed.  But that is precisely why the discovery is needed:  to undertake a more systematic review of a sample of the proofs of claim from which statistically significant conclusions can be drawn.  The Court should reject the Coalition's invitation to turn this bankruptcy case into a processing mill for invalid or even fraudulent claims and to put the Court's imprimatur on a process that could permit those claims to be allowed without any meaningful scrutiny.

12.    In other cases where similar concerns about potentially suspect claims have been raised, bankruptcy courts have permitted Rule 2004 discovery, or even granted more significant relief to identify claims that are potentially invalid and unenforceable against the debtor.  *See, e.g.*, *In re USG Corp.*, 290 B.R. 223, 225 (Bankr. D. Del. 2003); *In re G-I Holdings, Inc.*, 323 B.R. 583, 622-623 (Bankr. D.N.J. 2005); *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 84, 95 (Bankr. W.D.N.C. 2014); Motion at 12-13 (citing cases); *Insurers' Motion for Rule 2004 Discovery of Certain Proofs of Claim* [D.I. 1974 & 1975] at 17-20 (citing cases);[5] *see also* Mar.

---

[4]    In addition to these factual and procedural differences, the other mass tort bankruptcies that the objectors cite are not close to on point.  This case is different from cases such as *Imerys*, in which no bar date was established and no claims were filed in the bankruptcy court.  And, this case is nothing like *PG&E*, cited by the Coalition.  That case concerned claimants whose homes were destroyed by wildfires for which the debtors, which were solvent, were unquestionably responsible.  That a claimant's home had burned down was an objectively discernable fact.  And, in *PG&E*, there had been no massive advertising campaign by plaintiffs' lawyers designed to gin up claims, promising that those claims would be subject to little, if any, scrutiny.  Under those circumstances, there was no perceivable risk that sending the claims to a trust for resolution would lead to the allowance of invalid claims or dilute the recoveries of valid claimants.

[5]    The Coalition attempts to distinguish some of these cases on the ground that they authorized discovery in the context of a proceeding to estimate the debtors' tort liability under section 502(c) in connection with plan confirmation, and that no such proceeding has yet been commenced here.  That misses the point made by those decisions:  When

18, 2019 Tr. Hr'g at 30:13-31:14, *In re Maremont Corp.*, No. 19-10118 (Bankr. D. Del. Mar. 19, 2019) (Carey, J.) [D.I. 166] (rejecting argument that a bankruptcy court should be unconcerned that potentially invalid or even fraudulent claims have been filed, because a post-confirmation trust will administer them; "We're in court.  It's different than having just a setup of a private trust. You're acting under the [aegis] of the federal bankruptcy court … [You're] ask[ing] for court blessing … . [O]nce you're in the judicial process, you're in the judicial process.").[6]  This Court should do the same here.

13.      Indeed, scrutiny of the Abuse Claims is particularly appropriate in this case.  The Debtors' plan on file asks this Court to find that its provisions "constitute a good faith compromise and settlement of Claims," including its provisions specifying that the "Victims Compensation Trustee shall exclusively be entitled to administer and resolve Abuse Claims in accordance with the Trust Agreement and the Trust Distribution Procedures."  *Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 20] (the "**Plan**") §§ V.B, VIII.A, C.  The Court is thus being asked to bless plan and trust distribution procedures as a good-faith settlement of the Abuse Claims.  The Court could not make such a finding—or otherwise evaluate the lawfulness of any plan and any trust distribution procedures that may be proposed—without affording parties in interest any opportunity at all to examine the Abuse Claims.

**B.      The Discovery Is Also Needed Now For Plan Voting Purposes**

14.      Not only is discovery needed to investigate the validity of the Abuse Claims, but that discovery needs to happen now to determine who is eligible to vote on any plan.  The Debtors have indicated that they intend to seek confirmation of a plan that would allow them to emerge

---

serious questions about the validity of claims arise, in whatever context those questions may arise, Rule 2004 authorizes discovery to investigate those concerns.

[6]      A copy of the transcript of the hearing is attached hereto as Exhibit A.

from bankruptcy this summer, and hence they will likely seek authority to solicit votes on the plan in short order.  The proposed discovery is thus needed now to determine whether objections should be filed for purposes of both plan voting and any confirmation hearing.

15.    That question matters.  While it is not uncommon in mass-tort cases where large numbers of claims are expected for the court to allow all tort claims in the amount of $1 each for purposes of voting on the plan, such procedures do not make sense in a case like this one, where there are indications that many claims may be invalid, time-barred, and potentially even fraudulent. Allowing each claimant to have an equal vote in this case is likely to result in the holders of invalid claims controlling the vote.  That concern is made all the more real by the record of this case.  One of the principal architects of the advertising campaign admitted that he and other plaintiffs' counsel sought to maximize the claim count so that "[w]e control 80% of the claims, *i.e.*, our coalition controls the case."  *See* Motion at 3-4.  Accordingly, there must be meaningful review of the Abuse Claims for voting purposes, or the voting process itself will likely ensure that there will never be any serious scrutiny of the claims.  Allowing holders of invalid claims to control the vote will necessarily result in a plan with trust distribution procedures that will allow invalid claims.  And such a process will deprive the holders of valid claims of the voice they should have in these proceedings and redistribute compensation from those legitimate victims to claimants who have filed invalid claims.

**C.    The Discovery May Facilitate A Consensual Plan of Reorganization**

16.    The proposed discovery is also needed now if the parties are to make any progress toward reaching a consensual plan of reorganization.  At present, there is a fundamental disagreement between the insurers—who are key players in any consensual resolution, given the significance of insurance among the Debtors' overall assets—and plaintiffs' counsel over the extent to which the claims are legitimate.  Taking discovery to test the validity of a sample of

Abuse Claims can only increase the chances that the parties will be able to bridge that gap and determine whose view is closer to reality, paving the way for a consensual plan of reorganization.

## II.    **The Remaining Arguments of the Coalition and Other Objectors Are Without Merit**

17.    The various remaining arguments raised by the Coalition and other objecting parties are largely makeweight.  They are addressed in turn below.

### A.    **Rule 2004 Authorizes the Discovery Sought by Hartford and Century**

18.    The Coalition and various other objecting parties argue that Rule 2004 does not permit Hartford and Century to take the requested discovery.  Of course it does.  Rule 2004 authorizes "any party in interest" to examine "any entity" on any matter that "relate[s] … to the … property or … the liabilities and financial condition of the debtor," "any matter which may affect the administration of the debtor's estate," and "any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(a)-(b).  The Rule thus affords parties in interest wide latitude to take discovery regarding the debtor's assets and liabilities.  *See* Motion at 12-13 (citing cases); *Insurers' Motion for Rule 2004 Discovery of Certain Proofs of Claim* [D.I. 1974 & 1975] at 16-17 (citing cases).  As described below, the objections to the use of Rule 2004 here are meritless.

19.    *Timing*.  The objectors argue that the discovery is premature, urging that it must wait until the commencement of plan-confirmation proceedings.  That objection fails for two reasons.  First, as a legal matter, Rule 2004 permits discovery *before* the commencement of plan-confirmation proceedings.  The sort of pre-litigation investigation Hartford and Century seek is precisely what the Rule is intended to authorize; it expressly permits, for example, discovery to help in the "formulation" of a plan or other discovery before a contested matter or adversary proceeding is filed.  Fed. R. Bankr. P. 2004(b); *see also* Order, *In re Cyber Litig. Inc.*, No. 20-12702 (Bankr. D. Del. Jan. 20, 2021) [D.I. 226] (authorizing pre-confirmation discovery); *In re*

*Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988) ("a 2004 examination is generally a pre-confirmation discovery tool").

20.      Second, as a practical matter, it makes little sense to defer discovery until the formal commencement of plan-confirmation proceedings.  A plan is already on file, and the Debtors have indicated that they intend to file an amended plan and disclosure statement in the near future, with the goal of emerging from bankruptcy by the end of the summer.  Discovery needs to begin now if it is going to occur at all.  Indeed, while the Coalition argues, on the one hand, that this discovery is premature, it also suggests, on the other hand, that it is too late—that there is not sufficient time for such discovery to be completed, given the Debtors' schedule for emerging from bankruptcy by the end of the summer.  Coalition Obj. at 10-11.  The Coalition cannot have it both ways.[7]

21.      *Standing*.   The Coalition makes much of the fact that the Debtors have not themselves moved for discovery.  But Rule 2004 expressly provides that any "party in interest" may seek discovery, and courts have routinely authorized parties other than the debtor or trustee to take Rule 2004 discovery.[8]  Hartford and Century are critical parties in interest here, as insurers whom the claimants allege are responsible to pay a significant portion of the flood of new claims generated in these bankruptcy cases.  *See infra* note 10.  That the Debtors have not moved to take this discovery is thus legally irrelevant.  Indeed, if the Debtors' actions matter at all, what is telling is that the Debtors have not objected to this Motion.  Nor has the TCC—the official committee

---

[7]      The Coalition's suggestion that it is already too late for discovery to begin has no more merit than their assertion that it is too soon for it to start.  Hartford and Century propose to serve only a limited set of targeted document requests and interrogatories on a sample of claimants, and Hartford and Century are prepared to move quickly to complete an even more limited number of proposed depositions in a timely fashion.  While the Debtors' proposed schedule would require that discovery to be completed in an expedited manner, it is doable—but only if the discovery process begins to move forward now.

[8]      *See, e.g.*, *In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) (prospective bidder of debtor's assets); *Small v. Neighborhood Hous. Servs. of New Haven, Inc.*, 589 B.R. 31, 34 (D. Conn. 2018) (creditor); *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 294 (Bankr. D. Ariz. 2002) (insurance company); *Cinderella Clothing*, 93 B.R. at 378-379 (creditor); *In re Texaco Inc.*, 79 B.R. 551, 552 (Bankr. S.D.N.Y. 1987) (creditor).

appointed in these cases to represent the interests of those individuals holding legitimate Abuse

Claims against the Debtors.

22.     *Substance*.   Rule 2004 authorizes discovery relating to the Debtors' assets or

liabilities, the administration of the estate, and the formulation of a plan.   The discovery that

Hartford and Century seek here falls comfortably within these broad bounds, as it concerns the

Debtors' principal liabilities, the Abuse Claims, which are the key driver of these cases and the

principal focus of any plan.   Discovery into the legitimacy of the Debtors' liabilities is at the heart

of Rule 2004.

### B.     The Significant Concerns Regarding the Validity and Timeliness of the Proofs of Claims Provide Good Cause for the Rule 2004 Discovery

23.     The Coalition argues that Hartford and Century have failed to establish good cause

for the discovery they seek.   Coalition Objection at 14-19.   That contention also fails.

24.     As set forth in the Motion, Hartford's and Century's preliminary review of the

proofs of claim has revealed that most of the claims appear to be invalid on their face and/or time-

barred, although some of the proofs of claim fail to provide sufficient information to assess those

deficiencies fully.   *See* Motion at 8-9, 14-17.   The sheer number of Abuse Claims that appear to

be invalid—and the troubling questions about the veracity of certain of those claims and about the

advertising campaign that plaintiffs' counsel purposefully designed to maximize the claim count

at all costs, *see id.* at 3-8—establish more than sufficient cause to conduct an investigation into the

validity of the proofs of claims.

25.     The Coalition argues that the deficiencies in a proof of claim could simply be the

product of an incomplete claim form, rather than evidence that the claim is invalid.   That may be

true, but it is also precisely why discovery is needed.

26.     The Coalition further objects that no discovery should be permitted to examine whether claims are time-barred—an issue that may apply to a majority of the filed proofs of claim—because the bar date order indicated that time-barred claims would need to be filed to preserve any possible right to payment.  But the bar date order, of course, did not purport to allow time-barred claims.  *See Order Establishing Deadlines for Filing Proofs of Claim* [D.I. 695] ¶ 24. Under section 502, time-barred claims that are not enforceable against the Debtors must be disallowed.  *See* 11 U.S.C. § 502(b).  The discovery sought by Hartford and Century to ascertain whether claims are time-barred is therefore highly relevant to the resolution of the Abuse Claims in this case.

**C.     The Coalition's Desire For Its Own Discovery Provides No Basis To Deny The Rule 2004 Discovery**

27.     The Coalition argues that the discovery sought by Hartford and Century is not "proportional to the needs of the case" in light of "the parties' relative access to relevant information" (citing Federal Rule of Civil Procedure 26(b)(1)), urging that no discovery should be permitted unless the Debtors and insurers first provide discovery to the Coalition and other parties regarding the litigation and settlement of abuse claims in the past (including matters not involving the Debtors at all, such as Catholic dioceses' bankruptcies).  *See* Coalition Obj. at 7-9.  That contention, too, is without merit.  Whether the Coalition wants discovery on other issues has nothing to do with whether the discovery sought in this Motion should be granted.

**D.     The Proposed Discovery Is Not Overly Burdensome**

28.     Some of the objections filed on behalf of individual claimants argue that no discovery is warranted because those individuals believe that their filed proofs of claim provide all the information requested.  In fact, the interrogatories and document requests proposed by Hartford and Century seek information and documentation beyond the limited categories of

information requested on the proof of claim form.  But, to the extent the discovery requests and the claim form overlap, a claimant who has nothing to add to the information already provided in his proof of claim can simply say so in response to the interrogatories.  Indeed, Hartford and Century initially framed the discovery requests in precisely that fashion, with instructions that "[t]o the extent You have already provided information responsive to any Interrogatory and/or Request in Your Claim Form, You may respond to that Interrogatory and/or Request by referring to Your Claim Form." *See* Draft Interrogatories and Requests for Production, attached as <u>Exhibit B</u> hereto. Hartford and Century removed this language in response to a request by *counsel for the Coalition* when the parties met and conferred about the proposed discovery.  But, if the objectors now prefer that instruction to be included, Hartford and Century are willing to revise the interrogatories to revert to their original formulation.[9]

29.    The Coalition also objects that the proposed discovery would be unduly burdensome and should be limited to no more than 10 depositions.  In a case of this magnitude, in which nearly 100,000 proofs of claim alleging Abuse Claims have been filed, and in which Hartford and Century propose to take depositions of only a small subset of the 1,400 claimants in the proposed sample of claimants from which they seek discovery, authorizing Hartford and Century to take up to 100 depositions is not unreasonable or overly burdensome.  Hartford and Century anticipate that each such deposition (assuming counsel defending the deposition is not obstructionist) should last only a few hours.  The alternative—that parties in interest simply file

---

[9]    The suggestion by some objectors that Hartford and Century did not satisfy their meet-and-confer obligations is baseless.  Hartford and Century met with both the Coalition and the TCC (multiple times) and engaged in numerous meet-and-confer sessions with dozens of firms and individual claimants before the Motion.  *See* Motion ¶ 55.  Hartford and Century have continued those efforts and, as a result, have reached additional agreements with multiple firms removing them from the Motion, as reflected in the attached revised Exhibit C.  *See* <u>Exhibit C</u> attached hereto.

thousands of claims objections without first using the tools under the Bankruptcy Rules to conduct an investigation—would be far more burdensome to the parties and the Court.

### E. The Court Should Grant Relief From The Provisions Of Local Rule 3007-1(f) To Permit The Efficient Resolution of Issue-Based Omnibus Objections

30.    As set forth in the Motion, the Court should grant relief from Local Rule 3007-1(f) to authorize sensible procedures for filing omnibus objections that will allow an efficient resolution of issues common to particular categories of Abuse Claims, in a time frame that is consistent with the needs of this case. *See* Motion at 19-22.

31.    The Coalition objects that Hartford and Century would lack standing to file objections to claims. *See* Coalition Obj. at 20-23. The Coalition is wrong: Bankruptcy Code section 502(a) expressly grants standing to all "parties in interest" to object to proofs of claim, and nothing in Bankruptcy Rule 3007 limits claims objections to the debtor or even to creditors. It is telling that the Coalition does not cite a single case regarding standing to file claims objections in support of this argument.[10]  In any event, whether Hartford and Century would have standing to object to specific claims is not before the Court on this Motion, which simply seeks authorization to take discovery under Rule 2004 and to permit the filing of omnibus claim objections, by whichever parties may have standing to do so, in an efficient manner.

32.    The Coalition also objects that Local Rules 3007-1(f)'s restrictions on the filing of omnibus claim objections should not be relaxed. But the Coalition offers no alternative mechanism

---

[10]    The Coalition cites two Third Circuit cases regarding standing to object to confirmation. Those cases support Century and Hartford. In *Global Industrial Technologies, Inc.*, 645 F.3d 201 (3d Cir. 2011) (en banc), the Third Circuit held that the insurers there (Hartford and Century) had standing to object to a plan—even though it contained "insurance neutrality" language reserving coverage defenses—because the plan was not neutral as to the insurers where the bankruptcy process had resulted in an explosion of silica-related tort claims and the plan provided for the trust to seek coverage for those claims from the insurers. As courts have recognized, the reasoning of *Global Industrial Technologies* also establishes that an insurer has standing to object to the allowance of claims potentially covered by the insurer's policy under section 502. *See, e.g.*, *In re Black, Davis, & Shue Agency, Inc.*, 460 B.R. 407, 413-415 (Bankr. M.D. Pa. 2011); *see also, e.g.*, *In re Standard Insulations, Inc.*, 138 B.R. 947, 949940 (Bankr. W.D. Mo. 1992).

to resolve efficiently the thousands of contested claims filed in these cases, nor does the Coalition identify any procedural protections that would be compromised by authorizing omnibus claims objections in the manner proposed by Hartford and Century.  The Local Rules give the Court the discretion to relax some of the more cumbersome requirements of Local Rule 3007-1(f).  *See* Bankr. D. Del. Local Rule 1001-1(c).  This is precisely the sort of case in which such discretion is appropriately exercised.

33.    Section 502 of the Bankruptcy Code grants parties in interest a statutory right to object to claims.  But as a practical matter, there is no way parties can meaningfully exercise that right here—to address the Debtors' liability for nearly 100,000 Abuse Claims in the time frame that the Debtors have set for this case—without relief from Local Rule 3007-1(f)'s requirements.

34.    Under the Rules Enabling Act, Congress granted authority to promulgate bankruptcy rules, but it mandated that "[s]uch rules shall not abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2075.  The Supreme Court has accordingly held that allowing the bankruptcy rules to "preclude[] [a party] from exercising her statutory right" under a provision of the Bankruptcy Code "would give the Rules an impermissible effect."  *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 454 (2004) (citing 28 U.S.C. § 2075).

35.    It is thus both necessary and appropriate to grant relief from the requirements of Local Rule 3007-1(f) in this case to enable parties in interest to exercise their statutory right to object to claims in a meaningful, efficient, and timely manner.

### Conclusion

WHEREFORE, Hartford and Century respectfully request that the Court grant the Motion and enter such other relief as the Court deems proper.

STAMOULIS & WEINBLATT LLC

*/s/Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: 302-999-1540
Facsimile: 302-762-1688

- and -

Tancred Schiavoni (admitted *pro hac vice*)
Gary Svirsky (admitted *pro hac vice*)
Colleen Powers (applying for *pro hac vice*)
Andrew Kirschenbaum (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: 212-326-2000

- and -

Sergei Zaslavsky (applying for *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: 202-383-5300

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

BAYARD, P.A.

*/s/ Gregory J. Flasser*
Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone:  (302) 655-5000
Facsimile:  (302) 658-6395
Email:  efay@bayardlaw.com
          gflasser@bayardlaw.com

- and -

James P. Ruggeri (admitted *pro hac vice*)
Joshua D. Weinberg (admitted *pro hac vice*)
Michele Backus Konigsberg (admitted *pro hac vice*)
SHIPMAN & GOODWIN LLP
1875 K Street, NW, Suite 600
Washington, D.C. 20003
Tel:  (202) 469-7750
Fax:  (202) 469-7751

- and -

Philip D. Anker (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
Tel: (212) 230-8890
Fax: (212) 230-8888

Danielle Spinelli (admitted *pro hac vice*)
Joel Millar (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C.  20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363

*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company and Twin City Fire Insurance Company*