IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BOY SCOUTS OF AMERICA | ) Case No. 20-10343 (LSS) |
| AND DELAWARE BSA, LLC,[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |

**SUPPLEMENTAL DECLARATION OF PAUL J. HINTON**

I, Paul J. Hinton, pursuant to 28 U.S.C. § 1746(2), under penalty of perjury, hereby declare as follows:

**I.    BACKGROUND AND QUALIFICATIONS**

1. I previously filed a declaration in this matter on January 22, 2021 ("January 22 Declaration"). My background and qualifications are described in my January 22 Declaration and my curriculum vitae listing testimony given over the last four years and publications over the last ten years attached thereto.

2. I have been retained by O'Melveny & Myers LLP ("Counsel") on behalf of Century Indemnity Company to analyze the Sexual Abuse Survivor Proofs of Claim ("POCs") submitted to the United States Bankruptcy Court for the District of Delaware in the proceeding *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (the "BSA Bankruptcy"). In particular, I have been asked to (1) identify and analyze POCs submitted by attorneys as amendments to prior claims, (2) determine whether the amended POCs filed by these attorneys' law firms, as well as other groups of POCs, had certain characteristics described below, (3) identify POCs submitted before or after September 30, 2020 by certain law firms, and (4) analyze POCs that are attorney signed versus non-attorney signed by law firm and POC characteristics described below.

1

## II. MATERIALS RELIED UPON

3. I rely on data compiled by the Official Claims Agent, Omni Agent Solutions ("Omni"), for each of the POCs submitted in the BSA Bankruptcy. My analysis is based on the database of POCs downloaded from Omni's website as of January 4, 2021 that I also relied upon in my January 22 Declaration (the "January 4 Omni Database"). I also analyze a more recent, February 8, 2021 downloaded version of the database of POCs (the "February 8 Omni Database").[1]

4. The February 8 Omni Database contains the same fields of information as the previously downloaded version but for a larger number of claims. The February 8 Omni Database contains data on 100,964 POCs while the Omni Database contains 96,364 POCs. These datasets include, among other things, the following information:

   - the name of the claimant;
   - the claimant's social security number and date of birth;
   - the name of the law firm and attorney – if any – representing the claimant in the BSA Bankruptcy;
   - the date the POC was signed and the date it was received by Omni;
   - the email address associated with the POC submission; and
   - a description of the alleged sexual abuse, including details such as when and where the abuse occurred and the name of the alleged abuser.

5. Working at my direction, a team at the Brattle Group has standardized the names of the law firms and attorneys in the Omni Database. The standardization procedure included correcting typos and standardizing names to allow POCs from the same law firm or attorney to be listed identically, grouped together and counted.

## III. A SMALL FRACTION OF THE POCS SUBMITTED BY HIGH-VOLUME SIGNERS HAVE BEEN AMENDED

6. I identified attorneys who signed more than 500 POCs in total, or who signed more than 200 POCs on a single day (attorneys who are "high-volume signers") that were recorded in the

---

[1] The database of POCs was downloaded from https://bsa.omniagentsolutions.com/ using the search tool and export option.

Omni Database as of January 4.[2] I then identified for how many of these claims, the signers have since been amended, as recorded in the February 8 Omni Database.

7. I used two methods to identify amended POCs. In some cases an amended claim can be identified through the claim number directly, which is appended with a letter A by Omni. For instance, a claim "123-A" identifies amended information for a claim that what was originally identified as #123. However, not all amendments are identified in the POC database by Omni adding a suffix to the claim number. So I identified additional amendments by grouping all the claims associated with a particular claimant. I identify all claims for the same claimant by comparing the first and last name, last four digits of the social security number, zip code, birth date (month and year), cell phone and e-mail address. In a first step, this comparison is done programmatically to identify all claims that share four of the seven identifiers, or in certain limited circumstances, three of the seven when other identifiers are missing or invalid.[3] These putative classifications of claims for the same claimant were then manually reviewed to correct idiosyncratic misclassifications. For each POC that was filed by a high-volume signer, I identified as amendments any subsequent POCs that were filed for the same claimant in the February 8 Omni Database.

---

[2] Abused in Scouting includes the following constituent law firms: Eisenberg Rothweiler, Kosnoff Law, and AVA Law Group. Rule 2019 statement, Dkt. No. 1429-1 Ex. A-3. Abused in Scouting also includes Zuckerman Spaeder LLP when it is named along with one of the other constituent law firms listed above.

[3] Any two claims that share four of the seven identifiers (with valid values) are classified as pertaining to the same claimant. Claims that share a valid last name, email and cell phone are also the classified as having the same claimant. Claims with only three identifiers (i.e. claims for which four of the seven identifiers were either missing or invalid) may also be classified as having the same claimant if a.) they share a valid first name, last name, and either the last four digits of their social security number, birth date (year and month), or zip code; or, b.) they share a valid last name and zip code and either the last four digits of their social security number, or birth date (year and month).

Table 1
**POCs by Attorneys Who Signed More Than 500 POCs or More Than 200 POCs in a Single Day, with Amended POCs and POCs Amended to Include a Non-Attorney Signature**

| Signed Name | Total POCs | | |
|---|---|---|---|
| | Signed as Reported in the Jan 22 Declaration | Amended | Amended Attorney Signatures with Non-Attorney Signatures |
| Abused in Scouting | 3,185 | 1,169 | 728 |
| Krause & Kinsman | 2,507 | 503 | 217 |
| Ask LLP | 1,490 | 1,082 | 684 |
| Andrews & Thornton | 955 | 323 | 215 |
| Junell Associates | 811 | 147 | 111 |
| Babin Law, LLC | 728 | 33 | 17 |
| Slater, Slater & Schulman | 725 | 103 | 90 |
| D. Miller & Associates | 699 | 76 | 60 |
| Napoli Law | 672 | 265 | 205 |
| Marc J. Bern & Partners, LL | 635 | 190 | 128 |
| Paglialunga & Harris, PS | 564 | 20 | 15 |
| Bailey Cowan Heckaman | 399 | 36 | 30 |
| **Total** | **13,370** | **3,947** | **2,500** |

8. The results in Table 1 indicate that 30 percent of the previously signed POCs in the January 22 Declaration were amended.[4] Of the 3,947 amended claims, less than two thirds (63 percent)[5] were amended with non-attorney signatures.[6] Thus overall, only 19 percent of the claims originally filed by the attorneys who signed more than 500 POCs,[7] or signed more than 200 POCs in a single day, were amended with non-attorney signatures.

IV. **ONLY A MINORITY OF THE POCs ORIGINALLY FILED BY NAPOLI SHKOLNIK PLLC WITH CONTENTS LEFT BLANK HAVE SINCE BEEN AMENDED**

9. In my January 22 Declaration, I identified 410 POCs filed by Napoli Shkolnik PLLC that were almost entirely blank except for the name and identification of the claimant. These POCs corresponded to 345 unique claimants. I define a POC to be "nearly blank" if in Parts 3, 4, 5 and 6 of the form there are two or fewer words and two or fewer boxes that were checked.

---

[4] 30 percent is equal to 3,947 POCs amended divided by 13,370 POCs signed in my January 22 Declaration.
[5] 63 percent is equal to 2,500 POCs amended with non-attorney signatures divided by 3,947 amended POCs.
[6] Non-attorney signatures consist primarily of purported claimant and family member signatures.
[7] 19 percent is equal to 2,500 POCs amended with non-attorney signatures divided by 13,370 POCs signed in my January 22 Declaration.

There have been 156 non-blank POCs filed that amended one of the blank forms submitted by Napoli Shkolnik PLLC, which correspond to 125 unique claimants. Of the 156 amendments 104 were signed by the claimant, 48 were signed by an attorney, and 4 were unsigned.

### V.  CERTAIN LAW FIRMS SUBMITTED A LARGE VOLUME OF CLAIMS AFTER SEPTEMBER 30, 2020

10. I next use the Updated Omni Database to analyze POCs filed from three law firms – Ask LLP, Andrews & Thornton, and Slater – before and after September 30, 2020. The table below reports this analysis.

**Table 2**
**POCs Filed Before and After September 30, 2020 for Certain Law Firms**

| Law Firm | Claims Received Before 9/30/20 | Claims Received On and After 9/30/20 |
|---|---|---|
| Ask LLP | 34 | 4,221 |
| Andrews & Thornton | 99 | 3,823 |
| Slater, Slater & Schulman | 1,658 | 14,175 |

11. The analysis indicates that for all three law firms, the majority of POCs were filed after September 30, 2020. Indeed, all three law firms submitted 90 percent or more of their total claims following September 30, 2020.[8]

### VI.  ANALYSIS OF ATTORNEY SIGNED POCS VERSUS NON-ATTORNEY SIGNED POCS

12. I compare the POCs filed by selected law firms that are signed by attorneys versus those signed by non-attorneys to assess whether they differ in completeness, timeliness, or in other characteristics developed in my January 22 Declaration, specifically, whether claims:

- were incomplete ("incomplete");[9]
- were filed after the bar date ("late");[10]

---

[8] For example, Ask LLP submitted 99 percent of its total claims following September 30, 2020 (4,221 POCs after September 30 divided by 4,255 total POCs, i.e., 34 plus 4,221).
[9] For definition of "incomplete," see January 22 Declaration, paragraph 9.
[10] Late POCs are those submitted after November 16, 2020, the Abuse Claims Bar Date.

- were filed by a claimant who also filed other POCs ("multiples");[11]
- alleged a year of abuse when the claimant was not of scouting age ("inconsistent scouting age");[12] or
- alleged abuse in a state in which the claimant never resided ("or state").[13]

13. I report this analysis in Table 3 below for firms associated with attorneys who were identified as high-volume signers in the January 22 Declaration (i.e., attorneys who signed more than 500 POCs or more than 200 POCs in a single day), for Coalition law firms and for Slater, Slater & Schulman. The differences in the proportions of claims within each of these characteristics for POCs signed by attorney versus non-attorneys is tested for statistical significance using a $z$-test.[14] Those characteristics that are statistically significantly different for POCs signed by attorney versus non-attorneys are indicated with the symbol "*".

**Table 3**
**Characteristics of Attorney Signed versus Non-Attorney Signed POCs for Coalition, Firms with High-Volume Signers and Slater, Slater & Schulman**

| Law firm | Total Claims | Percent Attorney Signed | Incomplete | | Late Filing | | Multiple POCs | | Inconsistent Scouting Age | | Never Lived in State of Alleged Abuse | | Incomplete, Late, Multiple, Inconsistent Scouting Age or State | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Attn. Signed | Other Signed | Attn. Signed | Other Signed | Attn. Signed | Other Signed | Attn. Signed | Other Signed | Attn. Signed | Other Signed | Attn. Signed | Other Signed |
| All Coalition | 60,068 | 23.0% | 79.2% | 60.7% *** | 0.3% | 1.0% *** | 17.5% | 17.3% | 32.6% | 14.6% *** | 4.5% | 6.3% *** | 90.1% | 74.0% *** |
| All High Volume | 65,734 | 24.5% | 78.2% | 61.3% *** | 0.7% | 1.0% *** | 19.5% | 18.4% *** | 30.3% | 14.6% *** | 4.7% | 6.3% *** | 89.6% | 74.7% *** |
| Slater, Slater & Schulman | 15,497 | 8.6% | 70.2% | 58.1% *** | 0.1% | 1.4% *** | 14.6% | 21.2% *** | 13.8% | 12.4% | 5.5% | 6.3% | 80.1% | 73.9% *** |

Notes: Statistical comparison of attorney signed versus non-attorney signed proportion of POCs is conducted for each characteristic, e.g., "Incomplete," "Late Filing," etc. *** denotes statistically significant difference between proportions of attorney signed versus non-attorney signed POCs at the 99 percent level, while ** denotes statistical significance at the 95 percent level, and * denotes statistical significance at the 90 percent level.

14. Across the law firms – Coalition, firms with high–volume signers, and Slater, Slater & Schulman – the same pattern exists: attorney-signed POCs were more incomplete, had more age inconsistencies, and generally were more likely to have at least one of the characteristics (incomplete, late, have multiples, or have inconsistent scouting age or state) identified in the table above. An expanded version of Table 3 that compares attorney signed and non-attorney signed claim characteristics by law firm is provided in Appendix A.

---

[11] For definition of "multiples," see January 22 Declaration, footnote 12.
[12] For definition of "inconsistent scouting age," see January 22 Declaration, footnote 13.
[13] For definition of "inconsistent state," see January 22 Declaration, footnote 14.
[14] Results are the same when I use Fisher's exact test, which relaxes the distributional assumptions imposed in the $z$-test.

## VII.  CONCLUSION

15. My analysis is ongoing, and represents the best information I have as of the date of this declaration. I may revise the analysis described above as my work continues.

Dated: February 11, 2021
       New York, New York

*[signature]*

Paul J. Hinton

# Appendix A
## Characteristics of Attorney-Signed POCs versus Non-Attorney-Signed POCs for Each Coalition Firm and Each Firm with High-Volume Signers

Below is a version of Table 3 which compares attorney signed and non-attorney signed claim characteristics for each Coalition firm and each firm with high-volume signers.

| Law firm | Total Claims | Percent Attorney Signed | Incomplete Attn. Signed | Incomplete Other Signed | Late Filing Attn. Signed | Late Filing Other Signed | Multiple POCs Attn. Signed | Multiple POCs Other Signed | Inconsistent Scouting Age Attn. Signed | Inconsistent Scouting Age Other Signed | Never Lived in State of Alleged Abuse Attn. Signed | Never Lived in State of Alleged Abuse Other Signed | Incomplete, Late, Multiple, Inconsistent Scouting Age or State Attn. Signed | Incomplete, Late, Multiple, Inconsistent Scouting Age or State Other Signed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **All Law Firms** | 96,364 | 19.8% | 75.4% | 58.2% *** | 0.9% | 1.3% *** | 19.1% | 17.1% *** | 28.5% | 12.7% *** | 4.8% | 6.4% *** | 87.3% | 71.4% *** |
| Abused in Scouting | 18,865 | 27.5% | 72.4% | 55.4% *** | 0.1% | 0.8% *** | 19.2% | 17.7% ** | 47.6% | 17.9% *** | 6.1% | 7.2% *** | 89.2% | 71.0% *** |
| Slater, Slater & Schulman | 15,497 | 8.6% | 70.2% | 58.1% *** | 0.1% | 1.4% *** | 14.6% | 21.2% *** | 13.8% | 12.4% | 5.5% | 6.3% | 80.1% | 73.9% *** |
| Krause & Kinsman | 7,217 | 36.2% | 76.3% | 65.2% *** | 0.2% | 0.2% | 21.5% | 17.0% *** | 7.6% | 8.5% | 4.7% | 5.9% ** | 86.7% | 74.7% *** |
| Marc J. Bern & Partners, LLP | 6,120 | 10.4% | 91.2% | 70.0% *** | 0.0% | 0.1% | 4.1% | 9.5% *** | 30.6% | 18.8% *** | 3.0% | 5.2% ** | 94.5% | 78.2% *** |
| Ask LLP | 3,613 | 41.3% | 95.7% | 64.6% *** | 0.0% | 0.3% ** | 2.1% | 17.0% *** | 26.3% | 14.6% *** | 0.6% | 5.3% *** | 97.1% | 76.4% *** |
| D. Miller & Associates | 3,204 | 21.7% | 69.2% | 65.7% * | 5.9% | 2.2% *** | 31.3% | 31.0% | 13.8% | 13.1% | 4.8% | 6.3% | 83.0% | 80.8% |
| Junell Associates | 3,189 | 25.4% | 77.8% | 63.5% *** | 1.5% | 0.3% *** | 40.0% | 9.7% *** | 32.4% | 8.3% *** | 3.2% | 6.0% *** | 92.7% | 71.4% *** |
| Andrews & Thornton | 3,104 | 30.8% | 98.2% | 69.5% *** | 0.2% | 1.9% *** | 0.4% | 14.7% *** | 77.5% | 21.6% *** | 4.7% | 5.8% | 99.6% | 80.4% *** |
| Napoli Law | 1,727 | 38.9% | 89.9% | 71.9% *** | 2.8% | 7.4% *** | 37.0% | 32.4% * | 6.3% | 10.2% *** | 1.8% | 4.5% *** | 96.4% | 85.2% *** |
| Babin Law, LLC | 1,201 | 60.0% | 74.0% | 68.4% ** | 0.4% | 0.2% | 22.9% | 32.2% *** | 22.1% | 19.1% | 4.6% | 5.2% | 85.8% | 84.2% |
| Bailey, Cowan, & Heckaman | 1,190 | 33.9% | 76.5% | 67.0% *** | 0.5% | 0.3% | 38.9% | 23.0% *** | 15.3% | 9.9% *** | 9.4% | 6.4% * | 90.8% | 77.5% *** |
| Paglialunga & Harris, PS | 807 | 69.8% | 68.2% | 66.8% | 4.4% | 2.9% | 35.9% | 27.9% ** | 12.6% | 7.8% ** | 5.0% | 4.9% | 86.9% | 79.5% *** |
| Motley Rice, LLC | 325 | 0.6% | 50.0% | 41.2% | 0.0% | 0.0% na | 0.0% | 1.9% | 0.0% | 5.6% | 0.0% | 9.0% | 50.0% | 50.8% |
| Reich & Binstock | 411 | 27.7% | 65.8% | 59.3% | 0.0% | 0.0% na | 21.1% | 9.1% *** | 22.8% | 12.8% ** | 2.6% | 6.1% | 80.7% | 68.4% ** |

Notes: Statistical comparison of attorney signed versus non-attorney signed proportion of POCs is conducted for each characteristic, e.g., "Incomplete," "Late Filing," etc. *** denotes statistically significant difference between proportions of attorney signed versus non-attorney signed POCs at the 99 percent level, while ** denotes statistical significance at the 95 percent level, and * denotes statistical significance at the 90 percent level.