**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re Docket No. 1972<br><br>**Hearing Date:  Feb. 17, 2021 at 10:00 a.m.** |

**SUPPLEMENT TO OBJECTION OF THE COALITION OF
ABUSED SCOUTS FOR JUSTICE TO HARTFORD AND CENTURY'S
MOTION FOR AN ORDER (I) AUTHORIZING CERTAIN RULE 2004
DISCOVERY, AND (II) GRANTING LEAVE FROM LOCAL RULE 3007-1(f)
TO PERMIT THE FILING OF SUBSTANTIVE OMNIBUS OBJECTIONS [D.I. 1972]**

The Coalition of Abused Scouts for Justice (the "Coalition"), by its undersigned counsel, hereby submits this Supplement to its Objection (the "Objection")[2] to *Hartford and Century's Motion for an Order (I) Authorizing Certain Rule 2004 Discovery and (II) Granting Leave from Local Rule 3007-1(f) to Permit the Filing of Substantive Omnibus Objections* (the "Motion") [Docket No. 1972].  In support of this Supplement, the Coalition respectfully states as follows:

**SUPPLEMENT**

1. The Coalition served discovery on the Insurers based on the assertions made by them in their Motion.  Specifically, in their Motion, the Insurers emphatically and without qualification contend that "statistically significant inferences ***can be drawn***" from a sample of 1,400 abuse claims to the "entire claim population" of over 95,000 abuse claims.  *See* Motion at ¶ 39 n.34 (emphasis added).  In support of this contention, the Debtors rely solely on the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Objection.

{00222134-1}

*Declaration of Denise Neumann Martin, Ph. D. Id.* at Ex. 1 (the "Martin Decl."). The Coalition sought discovery regarding this Declaration. *See* Ex. 1 (Hartford RFPs #2-6); Ex. 2 (Century RFPs #2-6).

2. The Coalition also sought documents in the Insurers' possession, custody, or control regarding the claims for sexual abuse asserted against the Debtors. *See* Ex. 1 (Hartford RFPs #1, 7-9; Hartford ROGs #1-2; Hartford RFAs #1-2); Ex. 2 (Century RFPs #1, 7-9; Century ROGs #1-2; Century RFAs #1-2). The Coalition also asked the Insurers to admit that they have coverage obligations under insurance policies that require them to pay abuse claims against the Debtors. *See* Ex. 1 (Hartford RFAs #3); Ex. 2 (Century RFAs #3).

### A. The Insurers Refuse to Disclose the Claims Information They Already Possess

3. The Insurers **refused** to admit that they have coverage obligations—*i.e.*, the Insurers are unwilling to admit that they have any coverage obligations for sexual abuse claims against the Debtors in connection with their Motion seeking discovery on abuse victims. *See* Ex. 3 (Ruggeri Letter); Ex. 4 (Century Resp. to RFA #3).

4. The Insurers also **refused** to produce, or even disclose the extent of, their own claims-related information. *See* Ex. 4 (Century Resp. to RFPs #1, 7-9; Century Resp. to ROGs #1-2); Ex. 5 (Hartford Resp.) Other than re-packaging the Omni database (*i.e.*, the proof of claims submitted by survivors), the Insurers failed to produce a **single** document on this issue. *Id.*

5. The Insurers seek unprecedented and substantial discovery on abuse victims and their attorneys and are unwilling to produce **anything** to the Coalition that would make it

possible to evaluate whether such discovery is necessary or proportionate to the needs of the Debtors' cases.

**B.     The Insurers Do Not Have a Statistical Model that Would Permit Them to Draw Inferences on the Entire Pool of Abuse Claims**

6.     In addition, on February 11, 2021, counsel for the Coalition deposed Dr. Martin—the Insurers' proffered expert declarant—regarding the Insurers' alleged ability to draw inferences on the entire claim population from a sample of 1,400 abuse claims.  Dr. Martin admitted that she has ***not*** developed a statistical model to do this.[3]

7.     Dr. Martin testified that she has pulled samples from which statistical inferences may be possible. *See id.*  But the statistical model to do this does not exist and has not even been developed. *See id.*  Dr. Martin admitted that she may conclude that there are no statistically significant differences between the populations that can be drawn.  *See id.* at 126:11-128:6.  Further, Dr. Martin has ***no substantive expertise in sexual abuse***, which calls into question whether this entire exercise will produce anything that is meaningful.[4]

8.     With respect to drawing "statistically significant inferences" about "population parameters" from a sample, Dr. Martin cites to two authoritative texts in her Declaration:  (1) a statistics textbook (Freedman, David, Robert Pisani and Roger Purves, *Statistics*, 4th ed., 2007

---

[3]  *See* Ex. 10 (Martin Dep. Tr.) at 67:11-68:3 (". . . What you are talking about is the, you know, the subsequent step, which would be after we have done the sampling and then the analysis that comes from the discovery that ensues, taking those results and extrapolating up to the population.  Now, of course, we haven't done that yet because we haven't done that analysis yet."); *id.* at 50:9-51:2 (regarding paragraph 1 of the Martin Decl.); *id.* at 59:10-15 (regarding paragraph 2 of the Martin Decl.); *id.* at 60:6-12 (regarding paragraph 3 of the Martin Decl.); *id.* at 61:4-8 (regarding paragraph 4 of the Martin Decl.); *id.* at 63:20-68:3 (regarding paragraph 5 of the Martin Decl.); *id.* at 72:3-18; *id.* at 106:15-107:6 (regarding paragraph 6 of the Martin Decl.); *id.* at 113:17-114:7 (regarding paragraph 7 of the Martin Decl.); *id.* at 120:8-122:15 (regarding paragraph 8 of the Martin Decl., including Hartford's attorney, Mr. Ruggeri, testifying for Dr. Martin).

[4]  *See id.* at 79:20-80:22 (acknowledging as "outside my area of expertise" whether "a sexual abuse victim, particularly a victim who is a minor at the time of the abuse, is likely to be able to identify his abuser by name" and "whether a sexual abuse victim, particularly a victim who was a minor at the time of the abuse, is likely to have sought counseling" despite the fact that "No Abuser Identification" and "Sought Counselling" are sub-categories she has drawn a sample from); *id.* at 123:24-125:1 (when asked to identify "any academic … that you regard as being an expert in sexual abuse," Dr. Martin testified "[i]f you are talking about psychological expertise, something like that, I don't know that any particular name comes to mind.").

(Chapter 18)) and (2) a statistics reference guide (Federal Judicial Center and National Research Council, *Reference Manual on Scientific Evidence*, 3rd ed., 2011 (chapter titled "Reference Guide on Statistics")) ("Reference Guide").  *See* Martin Decl. ¶ 5 n.2.

9. The Reference Guide emphasizes that experts with "***subject matter expertise*** frequently ***are (or should be)***" involved in "cases involving statistical evidence."  *See* Reference Guide at 215 (emphasis added) ("Experts who specialize in using statistical methods, and whose professional careers demonstrate this orientation, are most likely to use appropriate procedures and correctly interpret the results. . . . At the same time, the choice of which data to examine, or how best to model a particular process, could require subject matter expertise that a statistician lacks.  As a result, cases involving statistical evidence frequently are (or should be) 'two expert' cases of interlocking testimony. . . . Naturally, the value of the statistical analysis depends on the substantive knowledge that informs it.")  Here, ***no*** subject matter expertise informs the Insurers' statistical approach.

10. Dr. Martin has identified a sample of 200 proofs of claim from each of six sub-categories—(1) "Allege Abuse in 1971-1975 Period"; (2) "No Scouting Affiliation"; (3) "No Abuser Identification"; (4) "No Physical Abuse Alleged"; (5) "Sought Counselling"; and (6) "No Impact Alleged"—as well as a seventh sub-category of 200 claims where the claims fell in none of the six sub-categories.  Martin Decl. ¶ 5.  At deposition, Dr. Martin admitted that ***it was counsel***, ***not Dr. Martin***, who determined to use those seven sub-categories.  Martin Dep. Tr. at 52:16-23.

11. Dr. Martin also admitted that while she did not know the size of the pool of claims from which the seventh category—the 200 claims where none of the six sub-categories' issues were missing from the proof of claim—she "believe[s] it would have been around there"

when asked if that pool consisted of "tens of thousands of proofs of claim that didn't fall into any of the six subcategories." Martin Dep. Tr. at 105:12-106:13.  Dr. Martin also acknowledged that—despite the fact that counsel selected for her, for example, "No Abuser Identification" and "Sought Counselling" as sub-categories which her sample should examine—whether a sexual abuse victim, particularly a victim who was a minor at the time of the abuse, is likely to be able to identify his or her abuser by name and whether that victim is likely or not to have sought counselling are both "outside my area of expertise."  Martin Dep. Tr. at 73:17-74:19.

### C.     Century's Discovery on Its Own Rule 2004 Motion

12.    Finally, notwithstanding its stonewalling in these cases, Century served discovery in connection with its own Rule 2004 Motion on the Coalition, Kosnoff Law, AVA Law Group, and Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. ("ERWEJ").  Century demanded responses within 8 days.  The Coalition maintains that this was improper.

13.    The filing of a Rule 2004 motion does not create a contested matter regarding every facet of the Rule 2004 motion, ***including the very discovery sought by the Rule 2004 motion itself***.  Were this true, a party could, by this bootstrapping, obtain the very relief sought in the Rule 2004 motion simply by filing it.  Century apparently believes that it has the authority to grant its own Rule 2004 motion.

14.    Notwithstanding these objections, the Coalition, Kosnoff Law, AVA Law Group and ERWEJ provided responses to 40 requests for admission, 30 interrogatories, and 28 requests for production—all on 8 days' notice.  *See* Ex. 6 (Coalition Resps.); Ex. 7 (Kosnoff Law Resps.); Ex. 8 (AVA Law Group Resps.); Ex. 9 (ERWEJ Resps.).

15.    Kosnoff Law, AVA Law Group, and ERWEJ took the opportunity to clarify several points.  In their responses, each firm ***denied***, among other things, the Insurers' allegations

(i) that their signatures were photocopied and affixed to claim forms, (ii) that their signatures were digitally reproduced and affixed to claim forms, (iii) that they failed to individually review each of the claim forms that bear counsel's signature, (iv) that they failed to individually investigate the factual contentions in each of the claim forms that bear counsel's signature, (v) that they used third-party organizations to submit claim forms bearing counsel's signature, (vi) that they obtained financing that was secured, in whole or in part, by prospective recoveries from the Chapter 11 Cases, and (vii) that they sold, purchased, or traded a financial interest in claim forms in the Chapter 11 Cases. *See* Exs. 7-9 (RFA Resps.). These allegations, none of which on their own would undermine the veracity of the victims' claims, and which have *always* lacked any evidentiary support, have been denied.

## CONCLUSION

WHEREFORE, the Coalition respectfully requests that the Court enter an order denying the Motion and granting the Coalition such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: February 11, 2021<br>Wilmington, Delaware | MONZACK MERSKY AND<br>BROWDER, P.A.<br><br>*/s/ Rachel B. Mersky*<br>Rachel B. Mersky (DE No. 2049)<br>1201 North Orange Street<br>Suite 400<br>Wilmington, Delaware 19801<br>Telephone:  (302) 656-8162<br>Facsimile:  (302) 656-2769<br>E-mail:     RMersky@Monlaw.com<br><br>         -and- |

BROWN RUDNICK LLP
David J. Molton, Esq.
Eric R. Goodman, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
E-mail: DMolton@BrownRudnick.com
E-mail: EGoodman@BrownRudnick.com

and

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail: SBeville@BrownRudnick.com
E-mail: TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*