# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re Docket Nos. 1974, 2180 |
| | **Hearing Date:  Feb. 17, 2021 at 10:00 a.m.** |

## SUR-REPLY IN SUPPORT OF OBJECTION OF
## THE COALITION OF ABUSED SCOUTS FOR JUSTICE
## TO INSURERS' MOTION FOR AN ORDER AUTHORIZING
## RULE 2004 DISCOVERY OF CERTAIN PROOFS OF CLAIM [D.I. 1974]

In their Reply Brief (the "Reply") [Docket No. 2180], the Insurers make several new arguments and multiple misstatements, including, without limitation, the misstatements discussed herein,[2] in support of the *Insurers' Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim* (the "Motion") [Docket No. 1974] seeking discovery on plaintiffs' counsel and certain third parties.  The Coalition of Abused Scouts for Justice (the "Coalition"), by its undersigned counsel, hereby submits this limited Sur-Reply in support of its Objection (the "Objection") [Docket No. 2043][3] to the Motion, and respectfully states as follows:

### A.    **Discovery in Aid of Sanctions Is Improper under Bankruptcy Rule 2004**

1.    In the penultimate sentence of their Reply, the Insurers acknowledge that the point

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  The Coalition does not purport to address every accusation lodged against specific law firms.  *See* Reply at 2-10.  Each firm will be available to respond on its own behalf at the February 17th hearing.  The Coalition also does not propose to counter the Insurers' inappropriate submission of new facts and factual declarations on reply.

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Objection.

of the Motion is to seek discovery in aid of sanctions.  Reply at 18.

2.     The Insurers state: "[t]he discovery is material ***not*** because the plaintiffs' lawyers ***may*** have knowledge of the underlying abuse, but to determine ***whether*** they conducted any ***pre-filing investigations***, as they were required [to do]." *Id.* (emphasis added).

3.     The Motion, therefore, as now conceded by the Insurers, has nothing to do with the merits of the survivors' claims.  The attorneys—when they signed claim forms—did not travel back in time and witness events that occurred years ago.  The attorneys have no material knowledge regarding any facts that form the basis for any Abuse Claims.  To quote the Insurers: "[t]he discovery is material ***not*** because the plaintiffs' lawyers may have knowledge of the underlying abuse …"  *Id.* (emphasis added).

4.     The purpose of the Motion, as now disclosed by the Insurers themselves, is to seek discovery in aid of proving violations of Bankruptcy Rule 9011.  The Insurers seek discovery to uncover evidence indicating that attorneys failed to conduct an "inquiry reasonable under the circumstances," as required by Bankruptcy Rule 9011.  FED. R. BANKR. P. 9011.

5.     Putting aside the fact that Rule 9011 violations (if proved) are ***not*** a basis to disallow a claim under section 502(b) of the Bankruptcy Code, and the fact that the Insurers have ***not*** sent a single demand letter under Bankruptcy Rule 9011(c)(1)(A), discovery in aid of a potential Rule 9011 motion is improper.  As the Advisory Committee Notes to Rule 11 state:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings ***to the record***.  Thus, discovery should be conducted only by leave of the court, and then only in ***extraordinary circumstances***.

FED. R. CIV. P. 11, Comments to 1983 Amendments (emphasis added).[4]

---

[4]  In addition, the Comments to 1993 Rule 11 Amendments state:  "Rule 11 motions . . . should ***not*** be employed as a

6.      Consistent with this guidance, courts consistently preclude discovery on sanction motions.[5]  The Coalition is unaware of *any* case where a Bankruptcy Court has permitted a party to utilize Bankruptcy Rule 2004 to seek discovery in aid of a sanctions motion.  The Insurers cite none.  The reason is obvious—such discovery does not relate to "the acts, conduct, or property or to the liabilities and financial condition *of the debtors*."  FED. R. BANKR. P. 2004 (emphasis added).  The Motion has nothing to do with the merits of any Abuse Claims—*i.e.*, the Debtors' liabilities—and can be denied on this basis alone.

**B.      Attorney Declarations Are Not Required to Oppose the Motion**

7.      The Insurers protest that the Coalition and the other Objectors were derelict in failing to proffer any "declarations," "affidavits," or "expert reports."  Reply at 1.  But the Motion is itself a not subtle attempt to conduct discovery *on attorneys*—*i.e.*, force them to testify at deposition, invade the attorney-client privilege and work product doctrines, and riffle through attorney files and records in hopes of uncovering something to prove the Insurers' unsubstantiated allegations of fraud and misconduct.

8.      The Insurers' argument is that the attorney must provide the *very* discovery sought by their own Rule 2004 Motion to oppose such Motion seeking that discovery.  No doubt, if every attorney that is the target of the Insurers' inquisition submitted declarations in response to the Motion, the Insurers would likely seek to adjourn the February 17th hearing on the Motion and

---

*discovery device* or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.  Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to *intimidate an adversary* into withdrawing contentions that are fairly debatable, to *increase the costs of litigation*, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the *attorney-client privilege* or the *work-product doctrine*."  FED. R. CIV. P. 11, Comments to 1993 Amendments (emphasis added).

[5]  *See, e.g., Paige v. Lerner Master Fund, LLC*, 584 B.R. 502, 512 (M.D. Pa. 2018), *aff'd sub nom. In re Paige*, 738 F. App'x 85 (3d Cir. Sept. 27, 2018) (affirming bankruptcy court's denial of discovery in support of motions for sanctions because the record was devoid of the requisite extraordinary circumstances); *Hall v. Forest River, Inc.*, No. 3:04-CV-259, 2007 WL 2349620, at *1 (N.D. Ind. Aug. 15, 2007); *In re Revco D.S., Inc.*, 126 B.R. 741, 748 (Bankr. N.D. Ohio 1991); *In re Concorde Nopal Agency, Inc.*, 92 B.R. 956, 957 (Bankr. S.D. Fla. 1988).

demand to depose the attorneys **based on their declarations**.  This would give the Insurers the relief they are seeking from this Court without a ruling on the Motion itself.  The Insurers' naked, unabashed, and deliberate gamesmanship should be rejected by the Court.

        **C.**        **The Insurers Cannot Seek Plan Discovery under Bankruptcy Rule 2004**

        9.        The Insurers attempt to distinguish *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004) on the grounds that "**there is no plan yet** that the Debtors have asked the Court to confirm and no neutrality language to consider."  Reply at 14 (emphasis added).  This is also a major concession.  Under Third Circuit precedent, the Insurers lack standing to challenge an insurance neutral plan that does not impact their rights.[6]

        10.       But here, as the Insurers now concede, there is no plan yet—*i.e.*, whether the Insurers will have standing will not be known until the Debtors ask the Court to confirm a plan that may or may not impact their rights.[7]  This makes the Insurers' request for discovery no different than the Rule 2004 motion filed by Johnson & Johnson in *Imerys*, which this Court denied as "premature" since it sought "classic plan discovery" before a plan was proposed.  *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. July 24, 2019) [Docket No. 883, Hr'g Tr. at 90:4-17].  As in *Imerys*, the Court can deal with whatever discovery is appropriate in the context of a specific plan.  The Insurers' assertion that these cases "threaten to increase [the Insurers'] liability" falls far short of the showing required to establish good cause under Bankruptcy Rule 2004.  Reply at 13.

---

[6]  *See Combustion Eng'g*, 391 F.3d at 219; *accord In re Global Indus. Techs., Inc.*, 645 F.3d 201, 212 (3d Cir. 2011) (distinguishing *Combustion Engineering* on the basis that the "GIT plan" was not "'insurance neutral' in the same sense as was the plan in *Combustion Engineering*"); *Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*, 518 B.R. 307, 329 (W.D. Pa. 2014) (holding insurers lacked standing to object to chapter 11 plan).

[7]  The Insurers may also have standing if a proceeding is commenced under section 502(c) of the Bankruptcy Code to estimate the Debtors' liabilities for Abuse Claims.

### D.    The Objectors Did Deny the Insurers' Requests for Admission

11.    The Insurers falsely assert that "the Coalition and Objectors never outright deny [the] Insurers' evidence." Reply at 1. In support of this audacious claim, the Insurers point (only) to the Coalition's responses to their Requests for Admission served in connection with their own Rule 2004 motion. *Id.* at n. 3. They neglect to mention that the Coalition explained that, as an ad hoc group, it "only represents the collective interests of ***individual Sexual Abuse Survivors*** that have signed an Affirmative Consent" and "***does not represent*** any State Court Counsel individually." Docket No. 2184 at Ex. 6 (RFA Resps., emphasis added). Accordingly, the Coalition stated that it simply could not respond on behalf of any law firms. *Id.* Instead, any responses would have to come from the individual firms themselves.

12.    And that is just what happened. The Insurers served the very same Requests for Admission on three law firms—Kosnoff Law, AVA Law Group, and Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.—and each of these law firms specifically ***denied***, among other things, the Insurers' allegations that (i) their signatures were photocopied and affixed to claim forms, (ii) their signatures were digitally reproduced and affixed to claim forms, (iii) they failed to individually review each of the claim forms that bear counsel's signature, (iv) they failed to individually investigate the factual contentions in each of the claim forms that bear counsel's signature, (v) they used third-party organizations to submit claim forms bearing counsel's signature, (vi) they obtained financing that was secured, in whole or in part, by prospective recoveries from the Chapter 11 Cases, and (vii) they sold, purchased, or traded a financial interest in claim forms in the Chapter 11 Cases. *See id.* at Exs. 7-9 (RFA Resps.) Tellingly, even though the law firm responses were served on the Insurers on the ***same day*** as the Coalition's responses, the Insurers wholly fail to mention the law firm responses in their Reply.

### E.    The Coalition Did Not Concede that Attorneys Failed to Conduct Inquires

13.    The Insurers falsely assert that the "Coalition actually concedes that the mass-signers conducted no pre-filing inquires." Reply at 1 (citing Objection at ¶ 5). But what the Coalition actually stated was that it "presumes that proofs of claim were prepared on a rolling basis as law firms were engaged by abuse victims, conducted interviews with abuse victims, and gathered information necessary to complete claim forms." Objection at ¶ 5. The Coalition's point is that the statistics offered by the Insurers are entirely consistent with the law firms having conducted an appropriate pre-filing inquiry. The Insurers have no contrary evidence.

### F.    The Insurers' Law of the Case Argument Is Wrong

14.    Finally, the Insurers argue that it is now "the law of the case" that when an attorney signs a proof of claim, the attorney "voluntarily [takes] on the risk of becoming a fact witness." Reply at 17-18. But the transcript from the October 14, 2020 hearing indicates that this Court did not rule on this issue, as it was not before the Court at that time:

> MR. LINDER: Again, Your Honor, it's really we do it as a mechanism to protect the integrity of the claims process. You've alluded to the case law that illustrates the nature of the problem which is that by signing a proof of claim form, ***an attorney is becoming a fact witness***. They're attesting—
>
> THE COURT: They ***might*** be. They ***might*** be and they ***may*** be subject to a deposition. So they ought to think long and hard before they sign that proof of claim form. ***I don't know, because I haven't ruled on it***, but I found those—whoever cited that case, it looks kind of interesting.
>
> * * * *
>
> THE COURT: … But nonetheless, I'm looking at the Rules. And they permit signature by an attorney, no matter how ill advised that practice might be and no matter what consequence that ***might*** have in terms of a future deposition of that attorney, or what it ***might*** mean with respect to that client's claim or attorney-client privilege. ***I am not making any rulings on those***, but the rule permits it. So I will.

Oct. 14, 2020 Hr'g Tr. 170:2-12, 190:12-18 (emphasis added). Again, there is only one case that

6

supports the Insurers' argument on this issue—*In re Rodriguez*, No. 10-70606, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013).  The *Rodriguez* Court was wrong in ruling that signing a claim form makes an attorney a fact witness as to the allegations contained in the proof of claim.

## **CONCLUSION**

WHEREFORE, the Coalition respectfully requests that the Court enter an order denying the Motion and granting the Coalition such other and further relief as the Court deems proper.

Dated: February 15, 2021
Wilmington, Delaware

MONZACK MERSKY AND BROWDER, P.A.

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE No. 2049)
1201 North Orange Street
Suite 400
Wilmington, Delaware 19801
Telephone:    (302) 656-8162
Facsimile:    (302) 656-2769
E-mail:        RMersky@Monlaw.com

-and-

BROWN RUDNICK LLP
David J. Molton, Esq.
Eric R. Goodman, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
E-mail:        DMolton@BrownRudnick.com
E-mail:        EGoodman@BrownRudnick.com

and

Sunni P. Beville, Esq. (admitted *pro hac vice*)
Tristan G. Axelrod, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
E-mail:        SBeville@BrownRudnick.com
E-mail:        TAxelrod@BrownRudnick.com

*Counsel to the Coalition of Abused Scouts for Justice*