# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | ) | Case No. 20-10343 (LSS) |
| | ) | |
| | ) | Jointly Administered |
| Debtors[1]. | ) | |
| | ) | Re: Docket Nos. 1974, 2180 and 2196 |
| | ) | |

**TIMOTHY D. KOSNOFF, ESQUIRE'S SUR-REPLY IN SUPPORT OF HIS OBJECTION TO INSURERS' MOTION FOR AN ORDER AUTHORIZING RULE 2004 DISCOVERY OF CERTAIN PROOFS OF CLAIM**

Timothy D. Kosnoff, Esquire hereby submits this sur-reply (the "Sur-Reply") in Further Support of his Objection to *Insurers' Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim* [Docket No. 1974] (the "Motion") and in response to *Insurers' Reply Brief in Support of Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim* [Docket No. 2180] (the "Reply"). Mr. Kosnoff has joined in the Sur-Reply to the Motion filed by the Coalition of Abused Scouts [Docket No. 2196-1] (the "Coalition" and the "Coalition's Sur-Reply") and incorporates its arguments herein by reference. In further support of his Objection, Mr. Kosnoff respectfully submits the following:

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1. The Reply is replete with supposition, conjecture and outlandish inference. Unable to construct a viable basis upon which to support their extraordinary demands for discovery from their opposing counsel, the Insurers have resorted to more gamesmanship. Having hired an individual whose testimony has been stricken elsewhere and who apparently holds himself out as expert-for-hire in a wide variety of disciplines, the Insurers attempt to present him to the Court without exposing him to their opponents' scrutiny.

2. Insurers base their Reply against Mr. Kosnoff largely on the strength of a 297-page declaration and exhibits purportedly compiled by an Erich Speckin. Mr. Speckin is not a stranger to court systems around the world and has been severely criticized on two continents for one reason: he provides opinion testimony that is inadmissibly unreliable. In at least *EEOC v. Ethan Allen, Inc.* 259 F.Supp. 2d 625 (N.D. Ohio 2003) and *In re Estate of Wang The Huei,* 2002 WL 1341762, [2002] HKEC 1424 (Hong Kong Special Administrative Region Ct. of First Instance) (Nov. 21, 2002), Mr. Speckin's testimony was excluded, because his methods were unsound.

3. In those cases, he attempted to present expert testimony in ink dating. He also holds himself out as an expert available to testify on the following range of scientific endeavors:

- DNA/Serology;

- Fingerprints and palm prints;
- Shoe prints and tire prints;
- Crime Scene Reconstruction;
- Arson and fire investigation;
- Computer and cell phone forensics;
- Handwriting and forgery examination;
- Trace evidence;
- Toxicology;
- Medical records review for alteration; and
- Computer- and machine-generated documents.

See https://4n6.com/about/erich-j-speckin-forensic-document-analyst-ink-dating-specialist/. In addition, Mr. Speckin has organized companies called Premier Dental, LLC and Semen and Sperm Detection, Inc. See Exhibit A.

4. Mr. Speckin's declaration bears none of the indicia of a *bona fide* expert report. His opinions are not supported with citations to independent authorities; his methods are not set forth with scientific rigor; and his views are not expressed to a reasonable degree of professional certainty. Instead, he describes his conclusions as mere inferences and strong suggestions. It is upon that thin reed, presented for the first time in a reply, that the Insurers ask the Court to permit them to conduct

discovery on their opposing counsel. Aside from the Insurers' methods which are far outside the bounds of fair advocacy, their accusations are not remotely credible.

5. It is not possible in the space of a brief sur-reply and in the short time allotted before the hearing on the Insurers' 2004 motion to rebut each and every new argument and factual assertion contained in the Reply. Presented here is only a short collection of some of the most glaring of the Insurers' misstatements.

6. The Reply begins with the Insurers' misleading suggestion that the attorneys in their crosshairs have not denied the improper requests for admissions that they served and that those attorneys have not supported their objections with affidavits. The former is demonstrably false, as Mr. Kosnoff served responses to the requests for admissions that deny each and every request. Mr. Kosnoff did so, by the way, on the absurdly truncated eight-day deadline that the Insurers unilaterally imposed in their untimely requests. The latter argument is equally unavailing to the Insurers, because Mr. Kosnoff and the other attorneys are under no obligation to submit affidavits to support their objections.

7. The burden is upon the Insurers to show good cause for discovery against Mr. Kosnoff. Their assertions fall far short of the mark and are based only upon supposition and guesswork. The Objection and this sur-reply identify many of the fallacies contained in the Insurers' filings and Mr. Kosnoff, who bears no burden here, is not required to present the very sworn testimony that the Insurers seek in

their motion in his effort to defeat that motion. Indeed, courts have held that neither party to a Rule 2004 motion is required to present testimony or statements under oath. *In re Serignese*, 2019 WL 2366424, at *3 (Bankr. S.D.N.Y. 2019); *In re Metiom, Inc.*, 318 B.R. 263, 269 (Bankr. S.D.N.Y. 2004). Of course, the Insurers cite no authority for their proposition that the absence of an affidavit from Mr. Kosnoff constitutes an admission. That is because there is no such authority.

8. The Insurers' factual allegations are similarly specious. In support of their over-the-top argument that the Objection admits that Mr. Kosnoff "filed POCs without any backup evidence," the Insurers rely on the Objection's remark that Mr. Kosnoff only signed proofs of claim for which there was evidentiary support or where he was assured that further investigation would likely provide that evidentiary support. That language comes, of course, directly from Fed. R. Bankr. P. 9011 and defines Mr. Kosnoff's obligations. The manner in which the Insurers urge the Court to conclude that Mr. Kosnoff's citation to a rule of this court constitutes an admission is entirely unclear.

9. As difficult to understand is the Insurers' contention that "it is hard to imagine that the mass-signing attorneys conducted any pre-filing investigations." The Objection clearly sets forth in summary fashion Mr. Kosnoff's methods for presenting his clients' proofs of claim, including those on which he caused his signature to appear. Nothing in the Reply contradicts the Objection.

10. Had the Insurers' initial filing presented the allegations contained in the Reply, Mr. Kosnoff could have explained in his Objection the fallacies underlying the Insurers' accusations. For instance, the Insurers' and Mr. Speckin's badly misconceived assumption that the initials "KL" that appear in some proofs of claim filed by Your Case Managers stand for Kosnoff Law is either simply sloppy or an effort calculated to mislead.

11. Mr. Kosnoff did not work with Your Case Managers, which is not a claim aggregator but rather a litigation support company that furnished forensic nurses and other professional staff to Mr. Kosnoff's co-counsel, Keller Lenkner. That litigation support company filed proofs of claim for some of the victims whom Mr. Kosnoff jointly represents with Keller Lenkner, using the email upon which Mr. Speckin relies. Mr. Speckin and the Insurers chose to overlook the far more plausible explanation that the initials "KL" stand for Keller Lenkner.

12. Other factual misstatements in the Reply are easily refuted. The Insurers now claim that Mr. Kosnoff used a third-party claims aggregator called Reciprocity. Reciprocity is neither a third party nor a claims aggregator. It is a software development and business solutions company co-owned, operated and closely supervised by Mr. Kosnoff's co-counsel, Andrew Van Arsdale of AVA Law. Through Reciprocity, certain allied law firms collect, synthesize and maintain claims information. Attorneys are able to communicate with their clients with the use of

Reciprocity's proprietary software, all while employing robust security measures that comply with HPPA and safeguard privileged communications. Through the continuing hard work of Mr. Van Arsdale, Mr. Kosnoff and the scores of people under their supervision, many of the proofs of claim that bore attorney signatures have now been amended with claims signed by the claimants themselves. That work is ongoing.

13. Other allegations are simply made up. The Reply supposes that IP addresses evidence that Mr. Kosnoff submitted proofs of claim from several distant locations simultaneously. No explanation of how IP addresses are captured or reported is provided. No account is provided for the inconsistencies routinely encountered in such data. Like Mr. Speckin's work in other cases, his methods cannot withstand scrutiny. Similarly, the Reply suggests that Mr. Kosnoff has conceded that he relies on hedge funds to provide resources to his practice. That statement is, of course, false. The Objection plainly establishes that Mr. Kosnoff self-funds his practice without third-party assistance.

14. In short, the Reply is replete with wild accusations supported only by the suppositions of a witness-for-hire. The Insurers have fallen far short of establishing good cause to submit their opposing counsel to discovery.

## CONCLUSION

15. Therefore, since the Insurers have established no justification for the drastic measure of taking discovery from attorneys who represent parties opposed to it in these proceedings, Mr. Kosnoff respectfully requests that the Court enter an order denying the Motion.

Date: February 16, 2021

WILKS LAW, LLC

*/s/ David E. Wilks*

David E. Wilks (DE Bar No. 2793)
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Telephone: 302-225-0850
Facsimile: 302-225-0851
Email: dwilks@wilks.law

*Counsel to Timothy D. Kosnoff, Esquire*

# EXHIBIT A






Next List

Speckin Erich J
Search

## Officer/Registered Agent Name List

| Officer/RA Name | Entity Name | Entity Number |
|---|---|---|
| SPECKIN, ERICH J | PREMIER DENTAL LLC | L10000000503 |
| SPECKIN, ERICH J | SPECKIN FORENSICS LLC | L10000000509 |
| SPECKIN, ERICH J | SPECKIN FORENSICS LLC | L10000000509 |
| SPECKIN, ERICH J | SANTA'S WISH LIST, INC. | N12000009023 |
| SPECKIN, ERICH J | SANTA'S WISH LIST, INC. | N12000009023 |
| SPECKIN, ERICH J | SEMEN AND SPERM DETECTION, INC | P20000056480 |
| SPECKIN, ERICH J | SEMEN AND SPERM DETECTION, INC | P20000056480 |
| SPECKINE, ROGER | DATA THIMBLE, LLC | L17000112625 |
| SPECKINE, ROGER | DATA THIMBLE, LLC | L17000112625 |
| SPECKINE, ROGER A | ROGER SPECKINE PHOTOGRAPHY LLC | L20000074437 |
| SPECKINE, ROGER A | ROGER SPECKINE PHOTOGRAPHY LLC | L20000074437 |
| SPECKIN, JARED | PD DELIVERY LLC | L16000165171 |
| SPECK, J. | THOUGHT ENGINES, INC. | F00000000644 |
| SPECK, J. | THOUGHT ENGINES, INC. | F00000000644 |
| SPECK, J. | THOUGHT ENGINES, INC. | F00000000644 |
| SPECK, JAMES | ALLGRADE INCORPORATED | P03000139814 |
| SPECK, JAMES | ALLGRADE INCORPORATED | P03000139814 |
| SPECK, REV. JAMES KEVIN | FAITH FELLOWSHIP OF TAMPA BAY, INC. | N03000010874 |
| SPECK, REV. JAMES KEVIN | FAITH FELLOWSHIP OF TAMPA BAY, INC. | N03000010874 |
| SPECK, JAMES K. R | COMMUNITY CHURCH OF THE NAZARENE, INC. | N32141 |

Next List

Speckin Erich J
Search