# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 15, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: April 2, 2021 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE
DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE,
(II) APPROVING PLAN SOLICITATION AND VOTING PROCEDURES,
(III) APPROVING FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND
SCOPE OF CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES
IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit

corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases

(together, the "Debtors"), submit this motion (this "Motion"), for entry of an order, substantially

in the form attached hereto as **Exhibit A** (the "Solicitation Procedures Order"), pursuant to

sections 105(a), 502, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C.

§§ 101–1532 (the "Bankruptcy Code"), rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and

9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002,

3017-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting the following

relief and such other relief as is just and proper:

- ***Disclosure Statement.*** Approving the disclosure statement (together with all
  schedules and exhibits thereto, and as may be modified, amended, or

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax
identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The
Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

supplemented from time to time, the "<u>Disclosure Statement</u>") for the *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>");[2]

- ***Disclosure Statement Hearing Notice.***  Approving the form and manner of notice of the hearing to consider approval of the Disclosure Statement (the "<u>Disclosure Statement Hearing</u>" and the "<u>Form of Disclosure Statement Hearing Notice</u>"), substantially in the form attached hereto as **<u>Exhibit B</u>**;

- ***Solicitation Procedures.***  Establishing procedures for the solicitation and tabulation of votes on the Plan (the "<u>Solicitation Procedures</u>"), substantially in the form attached to the Solicitation Procedures Order as **<u>Exhibit 1</u>**, including finding that the Solicitation Packages (as defined below) that will be sent to holders of Claims entitled to vote on the Plan comply with Bankruptcy Rules 3017(d) and 2002(b);

- ***Cover Letter.***  Approving the form of a cover letter (the "<u>Cover Letter</u>") describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and the Solicitation Procedures Order via https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims) and urging holders of Claims in the Voting Classes to vote to accept the Plan, substantially in the form attached to the Solicitation Procedures Order as **<u>Exhibit 7</u>**;

- ***Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive.***  Approving the form and manner of (a) the notice to attorneys representing holders of Direct Abuse Claims of the process for voting to accept or reject the Plan on behalf of such holders (the "<u>Abuse Claim Solicitation Notice</u>"), and (b) the certified plan solicitation directive to be used by such attorneys to indicate how such holders' votes should be solicited (the "<u>Abuse Survivor Plan Solicitation Directive</u>"), substantially in the forms attached hereto as **<u>Exhibit C</u>**;

- ***Ballots.***  Approving the form of ballot for Claims in Classes 3A, 3B, 4A, 4B, 5, 6, 7, 8, and 9 (the "<u>Ballots</u>"), substantially in the forms attached to the Solicitation Procedures Order as **<u>Exhibits 2-1</u>** to **<u>2-7</u>**;

- ***Confirmation Hearing Notices.***  Approving the form, manner, and scope of (a) notice of the hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing Notice</u>" and the "<u>Confirmation Hearing</u>," respectively), substantially in the form attached to the Solicitation Procedures Order as **<u>Exhibit 3</u>**, (b) newspaper publication notice of the Confirmation Hearing (the "<u>Publication Notice</u>"), substantially in the form attached to the Solicitation Procedures Order as

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Disclosure Statement or the Plan, as applicable.

**Exhibit 4**, (c) notice to applicable holders of Claims that are unclassified under the Plan or that are Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code (the "Non-Voting Status Notice"), substantially in the form attached to the Solicitation Procedures Order as **Exhibit 5**, (d) notice to holders of Claims that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim (the "Disputed Claim Notice"), substantially in the form attached to the Solicitation Procedures Order as **Exhibit 6**, (e) notice of the Debtors' plan supplement (the "Plan Supplement Notice"), substantially in the form attached to the Solicitation Procedures Order as **Exhibit 8**, (f) notice to the Debtors' affected counterparties listed on the Assumed Contracts and Unexpired Leases Schedule, substantially in the form attached to the Solicitation Procedures Order as **Exhibit 9** (the "Cure and Assumption Notice"), and (g) notice to the Debtors' affected counterparties listed on the Rejected Contracts and Unexpired Leases Schedule, substantially in the form attached to the Solicitation Procedures Order as **Exhibit 10** (the "Rejection Notice" and, together with the Confirmation Hearing Notice, the Publication Notice, the Non-Voting Status Notice, the Disputed Claim Notice, the Plan Supplement Notice, the Cure and Assumption Notice, and the Rejection Notice, the "Confirmation Notices"); and

- ***Disclosure Statement and Confirmation Timeline.*** Establishing the following dates and deadlines in connection with the foregoing, subject to modification as necessary:[3]

  a. ***Disclosure Statement and Solicitation Procedures Objection Deadline.*** **April 2, 2021 at 4:00 p.m. (Eastern Time)** as the date by which objections to the Disclosure Statement and Solicitation Procedures must be filed;

  b. ***Abuse Survivor Plan Solicitation Directive Deadline.*** **March 31, 2021** as the date by which each Firm (as defined below) must return a completed Abuse Survivor Plan Solicitation Directive (the "Abuse Survivor Plan Solicitation Directive Deadline") so that it is actually received by Omni Agent Solutions (the Solicitation Agent");

  c. ***Disclosure Statement Hearing.*** **April 15, 2021 at 10:00 a.m. (Eastern Time)** as the date and time for the hearing at which the Court will consider the adequacy of the Disclosure Statement and approval of the Solicitation Procedures;

  d. ***Voting Record Date.*** **April 15, 2021** as the record date for purposes of determining which holders of Claims are entitled to vote on the Plan (the "Voting Record Date");

---

[3] Unless otherwise stated, all times referenced in this Motion refer to Eastern Time. Certain of the proposed dates may be subject to the Court's availability.

e. ***Solicitation Date.*** **April 29, 2021** as the deadline for distributing Solicitation Packages (as defined below) or as soon as reasonably practicable thereafter, to the holders of Claims entitled to vote to accept or reject the Plan (the "Solicitation Date");

f. ***Publication Deadline.*** **May 28, 2021** as the last date by which the Debtors will submit the Publication Notice containing information from the Confirmation Hearing Notice in a format modified for publication (the "Publication Deadline");

g. ***Plan Supplement Deadline.*** **June 14, 2021** as the date by which the Debtors must file the Plan Supplement in accordance with the terms of the Plan (the "Plan Supplement Deadline");

h. ***Voting Resolution Event Deadline.*** **June 21, 2021** as the date by which the Court must enter an order temporarily allowing a Disputed Claim contested by such holder pursuant to a timely Rule 3018(a) Motion (as defined below), in order for such holder's Ballot to be counted (the "Voting Resolution Event Deadline");

i. ***Voting Deadline.*** **June 28, 2021 at 4:00 p.m. (Eastern Time)** as the deadline by which **all** Ballots must be properly executed, completed, and delivered so that they are actually received (the "Voting Deadline") by the Solicitation Agent;

j. ***Plan Objection Deadline.*** **June 28, 2021 at 4:00 p.m. (Eastern Time)** as the deadline by which objections to the Plan must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Plan Objection Deadline");

k. ***Voting Report Deadline.*** **July 12, 2021** as the date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court;

l. ***Deadline to File Confirmation Briefs and Replies.*** **July 12, 2021** as the date by which the Debtors and any other parties in interest shall file their briefs and/or responses to Plan Objections in support of confirmation of the Plan; and

m. ***Confirmation Hearing.*** **July 26, 2021 at 10:00 a.m. (Eastern Time)** as the date and time for the hearing at which the Court will consider confirmation of the Plan (the "Confirmation Hearing").

1. In connection with the relief requested in this Motion, the Debtors have attached the following Exhibits hereto:

| Exhibit A | Proposed Solicitation Procedures Order |
| --- | --- |
| **Exhibit B** | Form of Disclosure Statement Hearing Notice |
| **Exhibit C** | Form of Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive |

## JURISDICTION AND VENUE

2.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and other bases for the relief requested in this Motion are sections 105(a), 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002, 3017-1, and 9006-1.

## BACKGROUND

4.     The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  Information regarding the Debtors' non-profit operations, capital structure and the circumstances preceding the Petition Date may be found in the

*Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 16] and the *Debtors' Informational Brief* [D.I. 4].

5.      On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

6.      On April 8, 2020, the Debtors filed their schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs [D.I. 375, 376, 377 and 378] (collectively and as may be modified, amended, or supplemented from time to time, the "Schedules").

7.      On April 24, 2020, the Court appointed James L. Patton, Jr. (the "Future Claimants' Representative") as the representative of future abuse claimants pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.

8.      On May 26, 2020, the Court entered an order [D.I. 695] (the "Bar Date Order") establishing certain deadlines and procedures associated with the filing of Proofs of Claim in the Chapter 11 Cases, including, without limitation, special noticing procedures for providing actual and constructive notice of such deadlines and procedures to millions of potential holders of Abuse Claims.  Pursuant to the Bar Date Order, the Court established November 16, 2020 at 5:00 p.m. (Eastern Time) as the deadline by which General Proofs of Claim and Sexual Abuse Survivor Proofs of Claim (as defined in the Bar Date Order and below) must be filed against the Debtors, and established August 17, 2020, at 5:00 p.m. (Eastern Time) as the Governmental Bar Date.  Further, the Bar Date Order approved a customized proof of claim form (the "Sexual

Abuse Survivor Proof of Claim") for holders of Abuse Claims[4] to assert any prepetition claim against the Debtors and/or a Local Council or chartered organization that was attributable to, arose from, was based upon, related to, or resulted from, in whole or in part, directly, indirectly, or derivatively, "Sexual Abuse." The Bar Date Order authorized the Debtors to permit holders of Abuse Claims to submit Sexual Abuse Survivor Proofs of Claim confidentially and in an electronic format.

## PLAN AND DISCLOSURE STATEMENT

9.     Contemporaneously herewith, the Debtors have filed the Disclosure Statement and the Plan. The Debtors believe that confirmation of the Plan will maximize value for the benefit of all stakeholders while fairly and equitably addressing the Debtors' abuse-related liabilities.

10.     As described in more detail in the Disclosure Statement and the Plan, the primary purpose of the Plan is to (a) provide holders of Abuse Claims with an equitable, streamlined, and certain process by which they may obtain compensation, by channeling the Abuse Claims asserted against the Debtors and certain other Protected Parties, including the Local Councils and the Contributing Chartered Organizations, to a trust (as defined in the Plan, the "Settlement Trust") pursuant to section 105(a) of the Bankruptcy Code and (b) allow the Debtors, as

---

[4]    "Abuse Claim" means a liquidated or unliquidated Claim against a Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by a Protected Party or any other Person for whom any Protected Party is alleged to be responsible. Notwithstanding the foregoing, with respect to any Contributing Chartered Organization, the term "Abuse Claim" shall be limited to any Claim that is attributable to, arises from, is based upon, relates to, or results from, Abuse that occurred prior to the Petition Date and that arose in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, Abuse regardless of whether, as of the Petition Date, such Claim is barred by any applicable statute of limitations.

Reorganized BSA, to emerge from these Chapter 11 Cases to continue the BSA's mission.[5] Specifically, under the terms of the Plan, Abuse Claims against BSA, the Local Councils, and the Contributing Chartered Organizations will be permanently channeled by the injunctions provided for in Article X.F of the Plan (the "Channeling Injunction") into the Settlement Trust established under section 105(a) of the Bankruptcy Code. The Settlement Trust will have exclusive responsibility for processing, liquidating, and paying Abuse Claims. Pursuant to the Plan, in addition to direct claims of abuse against the Debtors, Abuse Claims include, among other Claims, Direct Abuse Claims,[6] Future Abuse Claims,[7] and Indirect Abuse Claims[8] (such as claims for contribution, indemnity, reimbursement, or subrogation arising from an Abuse Claim).

11. The Plan provides that the Local Councils will make a substantial contribution to the Settlement Trust, which the Debtors are committed to ensuring is not less than $300,000,000, to resolve the Abuse Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction. The Plan also provides a mechanism by which Chartered Organizations and Settling Insurance

---

[5] The description of the Plan set forth herein is intended only as a summary. Nothing contained in this summary description modifies the Plan, and references should only be made to the Plan itself for the precise terms thereof, the terms of which control in the event of any inconsistency between the summary included herein and the Plan.

[6] Pursuant to the Plan, "Direct Abuse Claim" means an Abuse Claim that is not an Indirect Abuse Claim.

[7] Pursuant to the Plan, "Future Abuse Claim" means any Direct Abuse Claim against any Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date but which, as of the date immediately preceding the Petition Date, was held by a Person who, as of such date, (a) had not attained eighteen (18) years of age, or (b) was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose." Notwithstanding the foregoing, with respect to any Contributing Chartered Organization, the term "Future Abuse Claim" is limited to any Direct Abuse Claim that arose in connection with the Contributing Chartered Organization's sponsorship of or more Scouting units.

[8] Pursuant to the Plan, "Indirect Abuse Claim" means a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract.

Companies can make substantial contributions to the Settlement Trust in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction.

12.     The Plan incorporates a settlement among the BSA, JPM (the BSA's senior Secured lender), and the Creditors' Committee, under which JPM has agreed that, in full and final satisfaction of its Allowed Claims and in exchange for the Creditors' Committee's agreement not to assert certain alleged estate causes of action, it shall enter into the Restated Debt Documents as of the Effective Date of the Plan.  The proposed settlement also provides for the BSA's assumption of its prepetition Pension Plan and substantial payments to holders of Allowed Convenience Claims, Allowed General Unsecured Claims and Allowed Non-Abuse Litigation Claims.  The settlement is the result of extensive arm's-length negotiations and discussions among the BSA, JPM, and the Creditors' Committee.

13.     The Debtors are affirmatively seeking to reach further mediated settlements of disputed issues related to the structure of the Plan, the nature, timing, and amount of contributions from the Debtors, Local Councils, Contributing Chartered Organizations and Settling Insurance Companies, and other matters, which may result in the amendment or modification of the Plan to propose additional settlements pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019.  The Debtors believe that resolution of these controversies in advance of the Confirmation Hearing will facilitate the favorable resolution of these Chapter 11 Cases and maximize Distributions to holders of Allowed Claims, including Abuse Claims that will be satisfied by the Settlement Trust in accordance with the Trust Distribution Procedures.

14.     On the Effective Date, the Settlement Trust will receive the Settlement Trust Assets.  The Settlement Trust Assets will be used to resolve Abuse Claims in accordance with

the Settlement Trust Documents, including, without limitation, the Trust Agreement and the Trust Distribution Procedures. It is contemplated that the Trust Distribution Procedures will establish a methodology for resolution of Abuse Claims, establish the process by which Abuse Claims will be reviewed by the Settlement Trust, and specify liquidated values for compensable claims based on the underlying abuse.

15. In accordance with section 1126 of the Bankruptcy Code, the Plan classifies all holders of Claims or Interests into the following Classes for all purposes, including with respect to voting to accept or reject the Plan. The following chart represents the Classes of Claims and Interests under the Plan:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3A | 2010 Credit Facility Claims | Impaired | Entitled to Vote |
| 3B | 2019 RCF Claims | Impaired | Entitled to Vote |
| 4A | 2010 Bond Claims | Impaired | Entitled to Vote |
| 4B | 2012 Bond Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Non-Abuse Litigation Claims | Impaired | Entitled to Vote |
| 8 | Direct Abuse Claims | Impaired | Entitled to Vote |
| 9 | Indirect Abuse Claims | Impaired | Entitled to Vote |
| 10 | Interests in Delaware BSA | Impaired | Deemed to Reject; Not Entitled to Vote |

16. Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Classes 3A, 3B, 4A, 4B, 5, 6, 7, 8, and 9 (collectively, the "Voting Classes"). The Debtors are not proposing to solicit votes from holders of Claims or Interests in Classes 1, 2 and 10 (collectively, the "Non-Voting Classes"). More specifically, the holders of Claims in Classes 1 and 2 are Unimpaired (the "Unimpaired Classes") and are therefore presumed to accept the Plan. The holders of

Interests in Delaware BSA in Class 10 are Impaired and not receiving any distribution under the Plan, and are therefore deemed to reject the Plan.

## BASIS FOR RELIEF

**I.** **Approval of Disclosure Statement and Form and Manner of Notice of Hearing Thereon**

**A.** **Approval of the Disclosure Statement**

17.     The Debtors will request approval of the Disclosure Statement at the Disclosure Statement Hearing.  Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims or equity interests with "adequate information" regarding the plan.  Section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, that:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11  U.S.C. § 1125(a)(1).

18.     Therefore, the disclosure statement will be approved by a court when it provides sufficient information to impaired creditors and other interest holders to make informed decisions about whether to vote to accept or reject a plan of reorganization.  *See, e.g.*, *GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir. 2003) ("[A] party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing adequate information to enable a creditor to make an informed judgment' about the Plan.") (internal citation omitted); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3rd Cir. 1988) (stating that section 1125 "seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *Cohen v. Tic Fin. Sys.* (*In re Ampace Corp.*), 279 B.R. 145, 157

n.26 (Bankr. D. Del. 2002) ("Section 1125 governs the contents of a disclosure statement and provides that acceptance or rejection of a plan may not be solicited until each holder of a claim or interest receives the plan or a summary thereof, 'and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.'"); *Krystal Cadillac-Oldsmobile* (*In re Zenith Elecs. Corp.*), 241 B.R. 92, 98 (Bankr. D. Del. 1999) (stating that a disclosure statement "need only contain adequate information for those entitled to vote"); *In re Civitella*, 14 B.R. 151, 152 (Bankr. E.D. Pa. 1981) ("The disclosure statement must contain adequate information in order for it to be approved by the Court.").

19.     Whether a disclosure statement required under section 1125(b) of the Bankruptcy Code contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d).   In evaluating whether a disclosure statement contains "adequate information," courts have broad discretion based on the specific facts and circumstances of each case.  *See, e.g.*, *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement."); *In re Worldcom, Inc.*, No. M-47 (HB), 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court."); *In re Ferguson*, 474 B.R. 466, 471 (Bankr. D.S.C. 2012) ("It is within the Court's discretion to determine whether a disclosure statement contains adequate information."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that 'the determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.'" (citing *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988))).

20.     The Disclosure Statement contains sufficient information necessary for holders of

Claims entitled to vote on the Plan to make an informed decision about whether to vote to accept

or reject the Plan, including, among other things:

a.     a summary of important proposed dates related to the solicitation and confirmation timeline (Art. I);

b.     an introduction to the Plan and voting and confirmation procedures (Art. II);

c.     information regarding the Debtors' nonprofit organization, revenue and assets, capital structure, local councils and chartered organizations, insurance coverage and prepetition coverage actions, and organizational history (Art. III);

d.     a summary of events leading to the Chapter 11 Cases, including a description of the prepetition sexual abuse claims against the Debtors and the impact of statutes-of-limitation changes on claims against the BSA and non-debtor stakeholders (Art. IV);

e.     a description of the significant events that have occurred during the Chapter 11 Cases (Art. V);

f.     an overview of the plan, including a summary of distributions under the Plan, the establishment of the Settlement Trust, and means of implementation (Art. VI);

g.     a description of the release, injunction, and exculpation provisions contained in the Plan (Art. VI);[9]

h.     an overview of the Settlement Trust (Art. VI);

i.     a summary of solicitation and voting procedures and certain factors to be considered prior to voting on the Plan (Art. VII);

j.     a description of confirmation procedures, requirements for confirmation of the Plan, and alternatives to confirmation and consummation of the Plan (Art. VIII);

k.     risk factors related to the Plan and the Debtors (Art. IX); and

l.     information regarding certain federal income tax consequences of the Plan (Art. X).

---

[9]     Pursuant to Bankruptcy Rule 3016(c), this description is set forth in specific and conspicuous language.

21.     Based on the foregoing, the Debtors submit that the Disclosure Statement contains sufficient information for holders of Claims entitled to vote on the Plan to make an informed judgment regarding whether to vote to accept or reject the Plan. Accordingly, the Debtors respectfully request that the Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

**B.     Notice of Release, Exculpation, and Injunction Provisions in the Plan**

22.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

23.     Detailed descriptions of the Channeling Injunction that, as of the Effective Date, will be made applicable to all Abuse Claims against the Protected Parties[10] and the releases, exculpation, and injunction provisions under the Plan are disclosed in Article VI of the Disclosure Statement. The releases provided under the Plan are described in detail, as are the entities providing such releases, the entities being released, and the Claims and Causes of Action so released. Section VI of the Disclosure Statement is set forth in bold, conspicuous print. Such information is also included in the proposed forms of Ballots for the Voting Classes and the notices for the Non-Voting Classes. Accordingly, the Debtors submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties to be enjoined, released, or exculpated by the Plan.

---

[10]     "Protected Parties" means (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party only with respect to Abuse Claims that arose in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units.

### C.    Disclosure Statement Hearing Notice

24.    Bankruptcy Rule 3017(a) provides as follows:

> [A]fter a disclosure statement is filed in accordance with
> [Bankruptcy] Rule 3016(b), the court shall hold a hearing on at
> least 28 days' notice to the debtor, creditors, equity security
> holders and other parties in interest as provided in [Bankruptcy]
> Rule 2002 to consider the disclosure statement and any objections
> or modifications thereto.  The plan and the disclosure statement
> shall be mailed with the notice of the hearing only to the debtor,
> any trustee or committee appointed under the [Bankruptcy] Code,
> the Securities and Exchange Commission and any party in interest
> who requests in writing a copy of the statement or plan.

Fed. R. Bankr. P. 3017(a).  Bankruptcy Rule 2002(b) requires 28 days' notice of the time set for

filing objections to and any hearing to consider approval of a disclosure statement.  Bankruptcy

Rule 2002(d) requires that equity security holders be given notice of the foregoing in the manner

and the form directed by the Court.  Additionally, Local Rule 3017-1(a) requires the plan

proponent to obtain hearing and objection dates from the Bankruptcy Court and to provide notice

of those dates in accordance with Bankruptcy Rule 3017.  Del. Bankr. L.R. 3017-1(a).

25.    Contemporaneously with the filing of this Motion, the Debtors are providing

copies of the Disclosure Statement Hearing Notice, attached hereto as **Exhibit B**, by electronic

and/or first class mail, to the following parties: (a) all persons or entities that have filed Proofs of

Claim in the Chapter 11 Cases that have not been previously withdrawn or disallowed by a Final

Order, subject to special procedures with respect to holders of Direct Abuse Claims; (b) all

Persons or Entities listed in the Schedules as holding liquidated, non-contingent, and undisputed

Claims; (c) with respect to holders of Direct Abuse Claims who have filed Sexual Abuse

Survivor Proofs of Claim, all counsel of record listed in such Proofs of Claim, and for holders of

Direct Abuse Claims who have not listed counsel of record, direct notice via email or first class

mail; and (d) any other known holders of Claims against, or Interests in, the Debtors.

26.     The Debtors are also serving a copy of the Disclosure Statement Hearing Notice, together with the Disclosure Statement and Plan, on (a) the U.S. Trustee, (b) the Securities and Exchange Commission (the "SEC"), (c) counsel to the Tort Claimants' Committee, (d) counsel to the Creditors' Committee, (e) counsel to the Future Claimants' Representative, and (f) those parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "2002 List").  The Debtors will provide copies of the Disclosure Statement and Plan to all other parties that request such documents in the manner specified in the Disclosure Statement Hearing Notice and Bankruptcy Rule 3017(a).  Copies of these documents are also on file with the Clerk of the Court for review during normal business hours (a fee may be charged) and are available free of charge at the website maintained by the Solicitation Agent (as defined below) at https://omniagentsolutions.com/BSA.

27.     To further ensure that creditors receive adequate and fair notice of the Disclosure Statement and as authorized under Bankruptcy Rule 2002(l), the Debtors will publish the Disclosure Statement Hearing Notice once in each of *The New York Times* and *USA Today*, in which the Debtors previously published notice of the Bar Dates, and on the Debtors' restructuring website.

28.     The Debtors submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and, accordingly, request that the Court approve such notice as appropriate and in compliance with the relevant requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

## II.    Approval of Solicitation Procedures[11]

29.    The Debtors respectfully request that the Court approve the Solicitation Procedures and authorize the solicitation and tabulation of votes on the Plan from holders of Claims entitled to vote on the Plan in accordance with such Solicitation Procedures.  While the Debtors are seeking approval of the Solicitation Procedures in their entirety pursuant to this Motion, an overview of certain salient features of the Solicitation Procedures is provided below, including: (a) the proposed contents of the Solicitation Packages (as defined below), (b) the Solicitation Procedures relating to Abuse Claims, including the distribution of Solicitation Packages to counsel for represented holders of Direct Abuse Claims and voting by such counsel on behalf of such claimants, (c) the proposed Voting Deadline, and (d) the Debtors' proposal to allow Direct and Indirect Abuse Claims solely for voting purposes in the amount of $1.00 in the aggregate per claimant.

### A.    Approval of Solicitation Packages

30.     Section 1126 of the Bankruptcy Code and Bankruptcy Rule 3017(d) require a plan proponent to mail copies of the plan, the disclosure statement, and a notice regarding the deadlines for voting on the plan to all creditors and equity security holders of the Debtors.  Consistent with such requirements, the Debtors, acting through the Solicitation Agent, propose to solicit acceptances of the Plan by disseminating the materials set forth below (collectively, the "Solicitation Package") on or before April 29, 2021, or as soon as reasonably practicable thereafter (the "Solicitation Date"), to the holders of Claims in the Voting Classes.  The following materials will constitute the Solicitation Package:

---

[11]    The description of the Solicitation Procedures set forth herein is intended only as a summary.  Nothing in this summary description modifies the Solicitation Procedures, and reference should only be made to the Solicitation Procedures themselves for the precise terms thereof, which terms control in the event of any inconsistency between the summary included herein and the Solicitation Procedures.

a.      the Cover Letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and the Solicitation Procedures Order via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots and urging holders of Claims in the Voting Classes to vote to accept the Plan;

b.      the Confirmation Hearing Notice;

c.      the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Court before the Solicitation Date) via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

d.      the Solicitation Procedures Order, including the Solicitation Procedures and all exhibits;

e.      an appropriate form of Ballot with return instructions and a return envelope, as applicable;

f.      if a party becomes a co-proponent of the Plan on or before the Solicitation Date, solely for holders of Direct Abuse Claims, a letter from such applicable proponents recommending that holders of Direct Abuse Claims vote to accept the Plan, in the Debtors' discretion; and

g.      any other materials ordered by the Court to be included as part of the Solicitation Package.[12]

31.     The Debtors will distribute Solicitation Packages to (a) the U.S. Trustee, (b) the SEC, (c) counsel to the Tort Claimants' Committee, (d) counsel to the Creditors' Committee, (e) counsel to the Future Claimants' Representative, (f) the 2002 List, (g) holders of Abuse Claims, subject to the procedures described below for holders of Direct Abuse Claims that are represented by counsel, and (h) all other holders of Claims in the Voting Classes (the "Solicitation Parties").[13]

---

[12]   As set forth below, the Debtors are proposing to provide certain of these materials in electronic format via the Debtors' restructuring website at https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots and/or serve Solicitation Packages to certain parties via email.

[13]   Notwithstanding anything herein to the contrary, the Debtors are requesting that neither they nor the Solicitation Agent be required to mail a Solicitation Package to any Person or Entity from which the notice of this Motion or other mailed notice in the Chapter 11 Cases is or has been returned as undeliverable by the postal service, unless the Solicitation Agent is provided with an accurate address for such Person or Entity before the Solicitation Date. Similarly, to avoid duplication and reduce expenses, the Debtors will make reasonable efforts to ensure

32.     The Debtors anticipate that the Solicitation Packages, including the Disclosure Statement and its exhibits, will be hundreds of pages in length.  As discussed in the Disclosure Statement, more than 100,000 Abuse and Non-Abuse Claims were timely filed against the Debtors in the Chapter 11 Cases.  Due to the significant number of Claims in the Voting Classes in the Chapter 11 Cases, the administrative costs associated with printing and mailing the Disclosure Statement to such a voluminous number of creditors are prohibitive.  Additionally, because the COVID-19 pandemic has resulted in the indefinite shutdown of offices across the country, the Debtors submit that providing an electronic link to certain of the Solicitation Package documents to holders of Claims in the Voting Classes and providing email service of the Solicitation Package to certain holders of Direct Abuse Claims as described below will provide the most effective and efficient means to provide notice to each holder of a Claim.  *See, e.g.*, *In re Superior Air Charter, LLC*, Case No. 20-11007 (CSS) (Bankr. D. Del. July 20, 2020) [D.I. 165] (approving procedures for the distribution of the solicitation packages via email, to the extent possible, due to the COVID-19 pandemic).

33.     Therefore, the Debtors propose to mail certain documents contained in the Solicitation Package, including the Cover Letter, the Ballots, and the Confirmation Hearing Notice, to holders of Claims in the Voting Classes, and such documents will include instructions for such holders to obtain, free of charge, the Plan, the Disclosure Statement, and the Solicitation Procedures Order in electronic format via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots.  Any party that prefers paper or another format of these documents may contact the Solicitation Agent to obtain these materials at no cost.  Other bankruptcy courts have authorized such relief in order to reduce the significant costs of soliciting

---

that any holder of a Claim that has filed duplicative Claims against a Debtor (whether against the same or both Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class.

votes to accept or reject a plan under certain circumstances, and have authorized the provision of electronic copies of the plan and disclosure statement on a website instead of mailing copies of those documents in the solicitation package.[14]  In addition to the special solicitation procedures for holders of Direct Abuse Claims described below, which includes a master balloting process to attorneys representing holders of Direct Abuse Claims, the Debtors are proposing to cause Solicitation Packages (including Ballots) to be emailed to unrepresented holders of Direct Abuse Claims who specifically indicated on their Sexual Abuse Survivor Proofs of Claim that the Debtors are authorized to communicate with these holders regarding their claims via email.[15] *See* Bar Date Order, Ex. 7.

34.    The Debtors submit that electronic transmission of solicitation packages to certain holders of claims who have expressly authorized this form of communication is an efficient and practical solution in chapter 11 cases with a large number of claimants, and is a particularly common practice in mass tort cases.  Courts have authorized this procedure under certain circumstances, such as here, in order to help alleviate the significant costs of soliciting votes to accept or reject a plan.[16]  Moreover, any holder of a Direct Abuse Claim that receives the

---

[14]    *In re Drone LC, Inc.* (f/k/a *Lily Robotics, Inc.*), Case No. 17-10426 (KJC) (Bankr. D. Del. Aug. 1, 2017) [D.I. 435] (authorizing the provision of electronic copies of the plan and disclosure statement on a website instead of including copies of such documents in the solicitation package); *In re Draw Another Circle, LLC*, Case No. 16-11452 (KJC) (Bankr. D. Del. Dec. 19, 2016) [D.I. 1067] (same); *In re Dune Energy, Inc.*, Case No. 15-10336 (Bankr. W.D. Tex. Aug. 18, 2015) [D.I. 453] (same); *In re Borders Grp., Inc.*, Case No. 11-10614 (Bankr. S.D.N.Y. Nov. 14, 2011) (MG) [D.I. 2122] (same).

[15]    For the avoidance of doubt, each holder of a Direct Abuse Claim who did not specifically authorize email communications on his or her Sexual Abuse Survivor Proof of Claim and who is not represented by counsel using the Master Ballot Solicitation Method (as described and defined below) shall only be served a Solicitation Package by mail as set forth above.

[16]    *See, e.g.*, *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [D.I. 6340] (permitting the dissemination of solicitation packages to fire victims in email format); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) [D.I. 1639] (approving solicitation materials to be distributed via email to holders of personal injury and wrongful death claims); *In re Drone LC, Inc.* (f/k/a *Lily Robotics, Inc.*), Case No. 17-10426 (KJC) (Bankr. D. Del. Aug. 1, 2017) [D.I. 435] (authorizing the transmission of solicitation packages by email to over 60,000 customers entitled to vote).

Solicitation Package materials via email but prefers to receive such materials by mail instead may contact the Solicitation Agent to receive a mailed copy instead at no cost to such holder.

**B.  Special Procedures for Direct Abuse Claims**

35.  As fully set forth in the Solicitation Procedures, the Debtors have directed the Solicitation Agent to serve an Abuse Claim Solicitation Notice, an Abuse Survivor Plan Solicitation Directive, and Client List (as defined below) on all known attorneys representing holders of Direct Abuse Claims, as listed on the Sexual Abuse Survivor Proofs of Claim (collectively, the "Firms"), on or around March 12, 2021.

36.  The Abuse Claim Solicitation Notice (a) notifies Firms of the options proposed for soliciting votes on the Plan in respect of their clients' Direct Abuse Claims and (b) requests that each Firm return a completed Abuse Survivor Plan Solicitation Directive so that it is actually received by the Solicitation Agent no later than the Abuse Survivor Plan Solicitation Directive Deadline (March 31, 2021).  An Excel spreadsheet is being distributed on a secure, encrypted and password-protected USB drive to each Firm that sets forth the name, claim number, month and year of birth, last four digits of Social Security Number, mailing addresses, and (if known) email address of each Firm's clients who have submitted a Sexual Abuse Survivor Proof of Claim (each, a "Client List").

37.  The Abuse Survivor Plan Solicitation Directive permits each Firm to direct the Solicitation Agent to solicit votes on the Plan from its clients that hold Direct Abuse Claims (collectively, the "Abuse Survivor Clients") according to one of the following procedures:

(a)  **Master Ballot Solicitation Method**.  A Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which to record the votes of all of its Abuse Survivor Clients to accept or reject the Plan (the "Master Ballot Solicitation Method") if the Firm certifies, on or before the Abuse Survivor Plan Solicitation Directive Deadline, that (a) the Firm shall collect and record the votes of its Abuse Survivor Clients through customary and accepted practices, or that it has obtained authority to cast each of its Abuse

Survivor Clients' votes to accept or reject the Plan (subject in each case to the requirements that the Firm comply with the voting procedures set forth herein and that each Abuse Survivor Client shall have indicated to the Firm his or her informed decision on such vote) or (b) the Firm has the authority under applicable law to vote to accept or reject the Plan on behalf of its Abuse Survivor Clients (a valid power of attorney may be requested by the Debtors, in their discretion). If it is the Firm's customary and accepted practice to collect and record authorizations or instructions from its Abuse Survivor Clients by email, telephone, or other standard communication methods, the Firm shall be authorized to follow such customary practices to collect and record the votes of its Abuse Survivor Clients. Each Firm that selects the Master Ballot Solicitation Method shall provide the Disclosure Statement, in hard copy, flash drive, or electronic format, to its Abuse Survivor Clients. Any Firm that elects the Master Ballot Solicitation Method must return the Master Ballot to the Solicitation Agent so that it is received by the Voting Deadline.

(b) **Direct Solicitation Method**. A Firm may direct the Solicitation Agent to solicit votes on the Plan directly from each of the Firm's Abuse Survivor Clients by distributing a Solicitation Package (including a Ballot) directly to each of the Firm's Abuse Survivor Clients via email addressed to the email address specified on the Firm's Client List (unless otherwise ordered by the Bankruptcy Court) or, where no email address is specified for an Abuse Survivor Client, via U.S. mail at the street address specified on the Firm's Client List (the "Direct Solicitation Method").[17] Under the Direct Solicitation Method, each Abuse Survivor Client must return his or her completed Ballot to the Solicitation Agent so that it is received by the Voting Deadline. **For the avoidance of doubt, the Debtors will solicit votes to accept or reject the Plan from each holder of a Direct Abuse Claim who cannot be matched to a Firm or who is not included in any Client List to be solicited via the Direct Solicitation Method**.

38. To facilitate the timely delivery of Solicitation Packages, the Debtors are requesting that each Firm submit the Abuse Survivor Plan Solicitation Directive to the Solicitation Agent on or before the Abuse Survivor Plan Solicitation Directive Deadline (March 31, 2021). If a Firm fails to timely return an Abuse Survivor Plan Solicitation Directive to the Solicitation Agent or otherwise fails to select a solicitation method, the Firm will be deemed to have directed the Solicitation Agent to solicit votes on the Plan from its Abuse Clients

---

[17] For the avoidance of doubt, the Debtors shall only cause a Solicitation Package (including a Ballot) to be emailed to holders of Direct Abuse Claims who specifically indicated on their filed Sexual Abuse Survivor Proofs of Claim that the Debtors are authorized to communicate with these holders regarding their claims via email. Each holder of a Direct Abuse Claim who did not specifically authorize email communications on his or her Sexual Abuse Survivor Proof of Claim shall only be served a Solicitation Package by U.S. mail.

according to the Master Ballot Solicitation Method described above. The Solicitation Agent will not provide Ballots to any Firm on account of, and votes included on any Master Ballot will not be counted for, any individuals for which a Direct Abuse Claim was not filed prior to the Abuse Claims Bar Date.

39.     The Solicitation Procedures provide that if the Debtors determine, based on their review of the Sexual Abuse Survivor Proofs of Claim filed on or before the Abuse Claims Bar Date, that duplicative Sexual Abuse Survivor Proofs of Claim were filed on account of a single Direct Abuse Claim, the Debtors will distribute a Solicitation Package (including a Ballot or Master Ballot) only on account of the latest-filed Sexual Abuse Survivor Proof of Claim filed before the Abuse Claims Bar Date. If duplicative Sexual Abuse Survivor Proofs of Claim were filed by more than one Firm, the Debtors will list the holder of the relevant Direct Abuse Claim on only one Client List, which shall be the Client List for the Firm identified on the latest-filed Sexual Abuse Survivor Proof of Claim filed before the Abuse Claims Bar Date. The same distribution procedures will apply if the Debtors determine, based on their review of the Sexual Abuse Survivor Proofs of Claim, that a Sexual Abuse Survivor Proof of Claim was amended and superseded by a later filed Sexual Abuse Survivor Proof of Claim.

40.     The Debtors submit that the foregoing procedures will provide for a fair and efficient process to solicit votes to accept or reject the Plan from the holders of Direct Abuse Claims. These procedures also reflect the reality of how a large majority of the Direct Abuse Claims filed against the Debtors have been asserted. **While the proposed methods discussed above are intended to expedite and streamline the transmission of information to holders of Direct Abuse Claims, increase voter participation, and better ensure such claimants are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan, each voting decision rests exclusively with the Abuse Survivor Client.**

41.     Allowing counsel to vote on the Plan on behalf of their clients—subject to certification that they otherwise have the right to do so—accurately reflects the way in which a large majority of applicable Direct Abuse Claims have been asserted against the Debtors (i.e., by counsel on behalf of individual claimants), and should be approved under the circumstances. Similar procedures allowing for the submission of votes by attorneys and the use of master ballots have been approved by Courts in connection with the solicitation of votes of tort claimants in other chapter 11 cases.[18]  Accordingly, the Debtors request that the Court approve the Solicitation Procedures described above with respect to holders of Direct Abuse Claims.

### C.     Approval of the Voting Deadline

42.     Bankruptcy Rule 3017(c) provides that, "[o]n or before the approval of the disclosure statement, the court shall fix a time within which holders of claims and interests may accept or reject the plan."  The Debtors will use their reasonable efforts to distribute, or cause to be distributed, the Solicitation Packages through the Solicitation Agent no later than **April 29, 2021**, or as soon as reasonably practicable thereafter.  Based on this schedule, the Debtors propose that the Court set **June 28, 2021** (the "Voting Deadline") as the deadline by which the Solicitation Agent must actually receive completed Ballots from holders of Claims in the Voting Classes or their counsel.  The Solicitation Procedures provide that, to be counted, completed Ballots must be returned to and actually received by the Solicitation Agent on or before the

---

[18]    *See, e.g.*, *In re Lloyd E. Mitchell, Inc.*, 373 B.R. 416, 426 (Bankr. D. Md. 2007) ("The use of master ballots in mass tort cases is a long-standing procedural mechanism that has been employed almost as a matter of course."); *In re Imerys Talc Am., Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [D.I. 2863] (approving use of master ballots for attorneys of record for voting the claims of asbestos personal injury claimants); *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [D.I. 6340] (approving procedures to allow authorized counsel to cast master ballots on behalf of fire victims); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) [D.I. 952] (Bankr. D. Del. Dec. 4, 2019) (authorizing master and class ballots for tort claimants); *In re Maremont Corp.*, Case No. 19-10118 (KJC) (Bankr. D. Del. Jan. 23, 2019) [D.I. 30] (approving use of master ballots for attorneys of record for voting the claims of asbestos personal injury claimants).

Voting Deadline by (1) the electronic Ballot submission platform on the Solicitation Agent's website (the "__E-Ballot Platform__"), (2) mail, (3) overnight delivery, or (4) personal delivery.

43.     The Debtors request authorization to accept Ballots from voters via the E-Ballot Platform, which is an online customized balloting portal to be maintained by the Solicitation Agent.  Instructions for casting an electronic Ballot may be found on the Solicitation Agent's website at https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims), and instructions for the transmission of Ballots via the E-Ballot Platform are set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by each electronic submission on the E-Ballot Platform will become part of the record of any electronic Ballot submitted in this manner and the electronic signature will be deemed to be an original signature that is legally valid and effective.  Any Ballot submitted by facsimile transmission or other electronic means __except__ through the E-Ballot Platform on the Solicitation Agent's website __will__ __not__ be counted.  As the Debtors will serve the Solicitation Packages on or before April 29, 2021, or as soon as reasonably practicable thereafter, the proposed Voting Deadline should be approved as it provides holders of Claims in the Voting Classes sufficient time (approximately 60 days or more) within which to review the Solicitation Packages, cast votes to accept or reject the Plan, and deliver those votes to the Solicitation Agent.[19]

---

[19]    *See, e.g.*, *In re Imerys Talc Am., Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Jan. 27, 2021) [D.I. 2863] (asbestos case approving 52 day solicitation period); *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [D.I. 6340] (mass tort case approving 45 day solicitation period); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) (Bankr. D. Del. Dec. 4, 2019) [D.I. 952] (mass tort case approving 28 day solicitation period); *In re Diocese of Duluth*, Case No. 15-50792 (Bankr. D. Minn. Aug. 27, 2019) [D.I. 400] (approving 33 day solicitation period for chapter 11 case addressing sexual abuse claims); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) [D.I. 1639] (mass tort case approving 28 day solicitation period); *In re Archdiocese of Milwaukee*, Case No. 11-20059 (Bankr. E.D. Wis. Oct. 5, 2015) [D.I. 3278] (approving 28 day solicitation period for chapter 11 case addressing sexual abuse claims).

**D. Temporary Claim Voting Procedures**

44.     The Debtors propose that, solely for the purpose of voting to accept or reject the Plan and not for purposes of the allowance of, or distribution on account of, a Claim, the following hierarchy be used to determine the amount of the Claim associated with each claimant's vote:

a.      the Claim amount (i) settled or agreed upon by the Debtors, as memorialized in a document filed with the Bankruptcy Court, (ii) set forth in an order of the Bankruptcy Court or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court;

b.      if subsection (a) does not apply, the Claim amount allowed (temporarily or otherwise) pursuant to a Resolution Event (as defined below and in Section III.C of the Solicitation Procedures);

c.      if none of subsections (a)–(b) apply, the Claim amount asserted in a Proof of Claim that has been timely filed (or deemed timely filed by the Bankruptcy Court under applicable law) and filed in good faith (in the reasonable discretion of the Debtors), except for any amounts that have been paid or asserted on account of any interest accrued after the Petition Date; *provided*, that any Ballot submitted by a holder of a Claim who timely filed a Proof of Claim in respect of (i) a contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount (based on a reasonable review by the Debtors) that is not the subject of an objection shall count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and shall count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the amount requirement of section 1126(c) of the Bankruptcy Code, and (ii) with respect to a non-contingent, partially liquidated and partially unliquidated Claim, such Claim shall be allowed for voting purposes only in the liquidated amount; *provided*, *further*, that if the Debtors determine in their reasonable discretion that the Proof of Claim contains any amount that was not asserted in good faith (a "Contested Claim"), the Claim amount listed in the Schedules, if any, shall be used for voting purposes only and to resolve such disagreement, such holder shall be deemed to consent to the amendment of its Proof of Claim to the Claim amount listed in the Schedules, if any, for voting purposes only and no further action shall be required by the Debtors or holder; *provided*, *further*, that if the Debtors determine that any Proof of Claim is a Contested Claim (in the Debtors' reasonable discretion), and the Claim is not listed in the Schedules, the Debtors shall contact the holder of the Contested Claim to consensually agree upon a Claim amount for voting

purposes only, which agreed amount shall not require notice or consent of the Court; *provided*, *further*, that if no agreement is reached regarding the amount of the Contested Claim for voting purposes only, the Debtors may file an objection to the Contested Claim and treat such Contested Claim as a Disputed Claim in accordance with <u>Section III.C</u> of the Solicitation Procedures;

    d.    if none of subsections (a)–(c) apply (or in the case of a Contested Claim as specified in subsection (c)), the Claim amount listed in the Schedules (to the extent such Claim has <u>not</u> been superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and has not been paid; *provided*, *further*, that a Claim that is listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim was <u>not</u> (i) filed by the applicable Bar Date or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline is not entitled to vote; and

    e.    if none of subsections (a)–(d) apply, such Claim shall be disallowed for voting purposes.

45.    With respect to Class 7 Claims, all Non-Abuse Litigation Claims asserted against the Debtors, including any Insured Non-Abuse Claims, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, will be classified as contingent and unliquidated Claims in accordance with <u>Section V.B</u> of the Solicitation Procedures and will have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant.  Substantially all of the approximately 95,000 timely filed Direct Abuse Claims and the Indirect Abuse Claims are contingent and/or unliquidated.  It is not possible to estimate such Claims for purposes of voting, and the nature and amount of such claims are unknown.  The Debtors propose to temporarily allow Direct and Indirect Abuse Claims for the limited purpose of voting on the Plan in the amount of $1.00 in the aggregate per claimant.  That value will not be binding on the Plan Proponents, the Settlement Trust, holders of Abuse Claims, or any other party for any purpose other than voting to accept or reject the Plan.

46.    Generally, only holders of claims allowed under section 502 of the Bankruptcy Code are entitled to vote to accept or reject a plan of reorganization.  *See* 11 U.S.C. § 1126(a)

("The holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."). Claims that are (a) listed on the Schedules as contingent, unliquidated, or disputed, (b) specified in Proofs of Claim in an unliquidated or zero dollar amount or as contingent or disputed, or (c) the subject of pending objections are not allowed claims under section 502(a) of the Bankruptcy Code. However, Bankruptcy Rule 3018(a) provides that the "court after notice and hearing may temporarily allow [any] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

47.     Both Direct and Indirect Abuse Claims are contingent and unliquidated. The proposed temporary allowance of Abuse Claims for voting purposes addresses this issue in a way that adequately considers the particular circumstances of the Chapter 11 Cases and is consistent with similar chapter 11 cases. Courts in numerous other mass tort and personal injury cases have allowed claims temporarily for limited purposes, including allowing such claims at $1.00 for voting purposes, in order to facilitate voting on plans of reorganization and ensure that the votes of tort victims are adequately represented. *See, e.g.*, *In re A.H. Robins Co., Inc.*, 88 B.R. 742, 747 (E.D. Va. 1988), *aff'd*, 880 F.2d 694 (4th Cir. 1989) (the placement of a nominal value on each claim for voting purposes was appropriate as "[a]ny attempt to evaluate each individual claim for purposes of voting on the Debtor's Plan of Reorganization would, as a practical matter, be an act of futility, and would be so time consuming as to impose on many, many deserving claimants further intolerable delay all not only to their detriment, but to the detriment of the financial well being of the estate as well"); *In re Johns-Manville Corp.*, 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986) (fixing asbestos claims at $1.00 for voting purposes and holding that "[i]t has been the stated goal of this court and of the parties in interest . . . to ensure the protection and participation of the interests of the asbestos health victims. The construct of the voting procedure is proper as it clearly meets the desideratum of expanded sufferage and participation in

the reorganization by all parties in interest.")[20]  The Debtors submit that these voting procedures are appropriate and reasonable under the circumstances of the Chapter 11 Cases and should be approved.

### E.    Approval of Disputed Claim Procedures

48.    The proposed Solicitation Procedures include procedures for the treatment of Claims in a Voting Class subject to pending objections or other dispute, as follows:

a.    Absent a further order of the Court, the holder of a Claim in a Voting Class that is the subject of a pending "reclassify" or "reduce and allow" objection only to reclassify or reduce the amount of such Claim will be entitled to vote such Claim in the proposed reclassification or in the reduced amount (as applicable) contained in such objection.

b.    If a Claim in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Court on or before the Solicitation Date, (i) the Debtors will cause the applicable holder to be served with a notice of Disputed Claim (the "Disputed Claim Notice"), substantially in the form attached as **Exhibit 6** to the Disclosure Statement Order, and (ii) the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event (as defined below) occurs as provided herein.

c.    If a Claim in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Court after the Solicitation Date, the applicable Claim shall be deemed temporarily allowed solely for voting purposes to the extent otherwise allowed for voting purposes in accordance with these Solicitation Procedures, without further action by the Debtors or the holder of such Claim and without further order of the Court, unless the Debtors and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise.

d.    If the holder of any Disputed Claim seeks to challenge the disallowance or estimation of its Claim for voting purposes, such holder must file with the

---

[20]  *See also, e.g.*, *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Mar. 17, 2020) [D.I. 6340] (approving procedures temporarily allowing fire victim claims at $1.00 for voting purposes); *In re Roman Catholic Bishop of Great Falls*, Case No. 17-60271 (Bankr. D. Mont. June 18, 2018) [D.I. 382] (approving solicitation procedures temporarily allowing abuse claims at $1.00 for voting purposes); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 5, 2018) [D.I. 1639] (approving procedures temporarily allowing tort claims relating to Debtors' defective airbag inflators, whether based on personal injury, wrongful death, or economic loss, at $1.00 for voting purposes); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (CSS) [D.I. 1317] (Bankr. D. Del. May 20, 2011) (approving procedures temporarily allowing abuse personal injury claims at $1.00 for voting purposes).

Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion with the Court and served on the Debtors on or before May 14, 2021. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event (as defined below) occurs with respect to such Disputed Claim prior to the Voting Resolution Event Deadline of **June 21, 2021**.

e.    A "Resolution Event" means, with respect to a Disputed Claim that is the subject of an objection other than a "reclassify" or "reduce and allow" objection, the occurrence of one or more of the following events on or before the Voting Resolution Event Deadline:

(i)    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(ii)   entry of an order of the Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim for voting purposes in accordance with the procedures set forth above;

(iii)  execution of a stipulation or other agreement between the holder of a Disputed Claim and the Debtors (a) resolving the objection and allowing such Claim for voting purposes in an agreed-upon amount or (b) otherwise fixing an amount of the Claim for voting purposes; or

(iv)   the pending objection is voluntarily withdrawn by the objecting party.

The Debtors respectfully request this Court authorize the procedures for the resolution of Disputed Claims, as such procedures are customary and will streamline the solicitation process in the Chapter 11 Cases.

### F.    Approval of Other Aspects of the Solicitation Procedures

49.    The Solicitation Agent will tabulate the votes to accept or reject the Plan based on the Ballots actually received by the Voting Deadline. The Solicitation Procedures specify certain circumstances in which a vote reflected on a Ballot will not be counted. Those circumstances include, without limitation: (i) a Ballot submitted by a person who does not hold, or represent a person that holds, a Claim in the applicable Voting Class as of the Voting Record Date; (ii) a

Ballot received after the Voting Deadline, unless the Debtors have granted an extension in writing (including email) with respect to such Ballot; (iii) a Ballot delivered by facsimile transmission, email, or any other means not specifically listed in the Solicitation Procedures unless the Debtors have granted an exception in writing (including email) with respect to such Ballot, *provided* that Ballots submitted through the E-Ballot Platform will be counted; (iv) a Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (v) a Ballot that is submitted in an inappropriate form; (vi) a Ballot sent to a person other than the Solicitation Agent; (vii) a Ballot that is unsigned;[21] and (viii) a Ballot without a vote on the Plan or in which the claimant has voted to both accept and reject the Plan, including, without limitation, (a) a Master Ballot on which the attorney fails to make the required certifications, (b) a Master Ballot that fails to include the required exhibit, or (c) a Master Ballot that does not provide the last four digits of the claimant's Social Security Number, if available, or date of birth.

50.     The Solicitation Procedures further provide general voting procedures and standard assumptions the Solicitation Agent will use in tabulating the Ballots.  *See* Solicitation Procedures § V.D.  Among other things, the Solicitation Agent has the discretion, but not the obligation, to contact voters to cure defects in the Ballots, and the Debtors reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.  If a holder of a Claim casts inconsistent Ballots that are received by the Solicitation Agent on the same day, such Ballots will not be counted.  If multiple Ballots are timely received from or on behalf of a holder of a single Claim, the Solicitation Procedures provide that the last properly executed Ballot timely received by the Solicitation Agent that satisfies the voting and tabulation

---

[21]     For the avoidance of doubt, a Ballot submitted on the E-Ballot Platform will be deemed to contain an original signature.

procedures set forth in the Solicitation Procedures will be the Ballot that is counted, and shall supersede and revoke any prior Ballot received. If multiple Ballots are received directly from the holder of a Claim <u>and</u> from a purported attorney or agent for such holder prior to the Voting Deadline, including a Master Ballot returned on account of Direct Abuse Claims in accordance with the procedures set forth in <u>Section IV</u> of the Solicitation Procedures, the Ballot received directly from the holder shall be the Ballot that is counted. A Ballot that partially rejects and partially accepts the Plan may not be counted.

51.     With respect to Direct Abuse Claims, if notwithstanding their reasonable efforts to ensure that only one Solicitation Package (including one Ballot) is distributed on account of each holder of a Direct Abuse Claim who has filed duplicative claims and/or on account of Direct Abuse Claims that have been amended and superseded by later filed Direct Abuse Claims, the Solicitation Agent receives more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim on or before the Voting Deadline, the effective vote shall be the last Ballot actually received by the Solicitation Agent before the Voting Deadline that satisfies the voting and tabulation procedures specified in <u>Section V</u> of the Solicitation Procedures, unless otherwise agreed to by the Debtors in their sole discretion; *provided, however,* that to the extent the Debtors receive a Ballot from a holder of a Direct Abuse Claim entitled to vote and a Ballot from an attorney purporting to represent such holder (including in accordance with the procedures related to Master Ballots), the Ballot received from the holder of the Direct Abuse Claim entitled to vote shall be counted; *provided further,* that if inconsistent votes are received by the Solicitation Agent on the same day for a single Direct Abuse Claim, such votes shall not be counted. For the avoidance of doubt, any Ballot received directly from the holder of a Direct Abuse Claim shall supersede any Ballot received from an attorney purporting to represent such holder, and such Ballot received directly from such holder shall be counted.

52.     The Debtors submit that the procedures described above and set forth more fully in the Solicitation Procedures are reasonable under the circumstances of these Chapter 11 Cases and should be approved.

## III.     Approval of Forms of Ballots

53.     Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Form 314, to "creditors and interest holders entitled to vote on the plan." The Debtors propose to distribute to holders of Claims in the Voting Classes that are otherwise eligible to vote, Ballots substantially in the forms attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-5**, **2-6**, and **2-7**. The forms of Ballots are based on Official Form B 314 but have been modified to address the particular aspects of these Chapter 11 Cases and to include certain information and instructions relevant to each Voting Class.

54.     For solicitation and tabulation purposes, one Ballot will be provided to each holder of a General Unsecured Claim and, for applicable holders of Class 6 Claims, such Ballot shall include the option to make an irrevocable election to join Class 5 (Convenience Claims) and be treated as a holder of a Class 5 Claim. If a holder of a Class 6 Claim with a Claim of $50,000 or less is deemed to join Class 5 (Convenience Claims) or an eligible holder of a Class 6 Claim that is greater than $50,000 makes the voluntary election to join Class 5 (Convenience Claims), then its Claim shall, upon its allowance for voting purposes only, be counted only in such Class and shall not be tabulated as a Claim in Class 6 (General Unsecured Claims).

55.     The Ballots will be distributed to holders of Claims in the Voting Classes or such holders' Firms in accordance with the Solicitation Procedures and as set forth herein. The forms of Ballots are similar in all material respects to those used in other mass tort chapter 11 cases. Moreover, the Ballots proposed for use in this case contain appropriate certifications to be made concerning the authority of counsel to vote on behalf of holders of Direct Abuse Claims.

Accordingly, the Debtors submit that the proposed forms of Ballots substantially comply with Bankruptcy Rule 3017(d), while taking into account the particular circumstances of the Chapter 11 Cases, and should be approved.

## IV. Approval of Form, Manner, and Scope of Confirmation Hearing Notice

56.     Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." In accordance with Bankruptcy Rule 3017(c), and in light of the Debtors' proposed solicitation schedule outlined below, the Debtors propose that July 26, 2021 at 10:00 a.m. (Eastern Time), or the nearest date thereafter that is convenient for the Court, be fixed by the Court as the date for the Confirmation Hearing. Such date will provide the Debtors sufficient time to solicit votes on the Plan in accordance with the Solicitation Procedures and to notify the required parties of the Confirmation Hearing and the opportunity to submit objections to the Plan, if any, before the Confirmation Hearing. The Debtors also request that the Court order that the Confirmation Hearing may be continued from time to time by the Debtors without further notice to creditors or any other parties in interest.

### A.     Confirmation Hearing Notice

57.     Bankruptcy Rule 3017(d) requires a plan proponent to send to all creditors and interest holders a notice regarding the deadlines for voting on the plan. Bankruptcy Rule 2002(b) requires 28 days' notice of any hearing to consider confirmation of a plan of reorganization. Bankruptcy Rule 3020(b)(1) further provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). In accordance with these Bankruptcy Rules, the Confirmation Hearing Notice will include: (a) instructions as to how to electronically view or obtain copies of the Disclosure Statement (including the Plan and

other exhibits thereto), the Solicitation Procedures Order, and all other materials in the Solicitation Package (excluding the Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) the date and time fixed for submitting votes on the Plan; (c) notice of the Voting Deadline; (d) notice of the Plan Objection Deadline; (e) notice of the Plan Supplement Deadline; and (f) the Confirmation Hearing. As noted above, the Solicitation Packages will include the Confirmation Hearing Notice and will be distributed on or before April 29, 2021. Thus, parties will have well in excess of the required 28 days' notice of the proposed Confirmation Hearing date and Plan Objection Deadline (as defined below) required by Bankruptcy Rule 2002(b). Accordingly, the Confirmation Hearing Notice should be considered adequate notice under Bankruptcy Rules 2002 and 3017(d).

### B. Publication Notice

58.     The Debtors further seek permission pursuant to Bankruptcy Rule 2002(l) to supplement the foregoing notice procedures by publishing notice of the Debtors' solicitation of votes on the Plan and the Confirmation Hearing. Bankruptcy Rule 2002(l) permits the Court to order "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Bankruptcy Rule 9008 further provides that the Court may "determine the form and manner" of publication notice. To supplement the Confirmation Hearing Notice, the Debtors plan to cause the Publication Notice to be published in *The New York Times*, *USA Today*, *The Chicago Tribune*, *the Plain Dealer*, *The Dallas Morning News*, *The Los Angeles Times*, *The San Jose Mercury News*, and *The Tampa Bay Times*. The Debtors submit that the content of the Publication Notice and breadth of its distribution provides adequate notice of the

Confirmation Hearing, the Plan Objection Deadline, and the Voting Deadline to all potential creditors.[22]

## C. Notices of Non-Voting Status

59.     Bankruptcy Rule 3017(d) permits a bankruptcy court to waive the requirement that a debtor's plan and disclosure statement be mailed to unimpaired classes. In lieu thereof, a bankruptcy court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request," as well as "notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to such classes. Fed. R. Bankr. P. 3017(d). As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages. In lieu of solicitation materials, the Debtors propose to provide the following to holders of Claims and Interests in the Non-Voting Classes:

a.     ***Unimpaired Classes—Conclusively Presumed to Accept.*** Holders of Claims in Classes 1 and 2 are Unimpaired under the Plan and, therefore, are presumed to have accepted the Plan. Accordingly, the Debtors propose to send the Non-Voting Status Notice, substantially in the form attached to the Solicitation Procedures Order as **<u>Exhibit 5</u>**, to each holder of a Claim in the Unimpaired Classes.

b.     ***Unclassified Claims.*** The Debtors also propose to send the Non-Voting Status Notice to each holder of an Administrative Expense Claim and Priority Tax Claim, which are unclassified under the Plan (collectively, the "<u>Unclassified Claims</u>").

c.     ***Disputed Claims.*** Holders of Claims that are subject to a pending objection by the Debtors as of the Solicitation Date are not entitled to vote

---

[22]  The Debtors also note the significant press coverage that these Chapter 11 Cases have garnered, which has educated potential creditors about the bankruptcy case. As of November 2020, the Chapter 11 Cases had generated at least 10,152 news articles, at least 38,922 broadcast mentions on television, and over 99,759 mentions on social media. Top tier media outlets that have run stories have included *The New York Times*, *The Wall Street Journal*, *USA Today*, *Axios*, *The Washington Post*, *NPR*, *Bloomberg*, *Reuters*, *NBC News*, *CNN*, and the Associated Press. *See Declaration of Shannon R. Wheatman, Ph.D Regarding Implementation of Supplemental Notice Plan to Provide Notice of Bar Date to Abuse Survivors* ¶ 9 [D.I. 1758] ("Wheatman Decl."). The Chapter 11 Cases have also spurred a significant amount of private attorney advertising, with at least 24,645 attorney advertising spots arising on broadcast television alone from June to October 2020 and excluding cable television advertising. *Id.* ¶ 10.

the disputed portion of their Claim. As such, the Debtors propose to send the Disputed Claim Notice, substantially in the form attached to the Solicitation Procedures Order as **Exhibit 6**, to each such holder.

60. With respect to Class 10 holders of Interests in Delaware BSA, the Debtors are requesting authority to waive any requirement to serve such holders with a Solicitation Package or any other type of notice in connection with solicitation of the Plan. Interests in Delaware BSA will be deemed canceled on the Effective Date and holders of such Interests are deemed to reject the Plan. In light of the fact that Interests in Delaware BSA are held only by Debtor BSA, the Debtors are requesting a waiver from any requirement to serve such Class 10 holder.

61. The Non-Voting Status Notice and Disputed Claim Notice will include, among other things: (a) instructions regarding how to obtain access, free of charge, to the Plan and the Disclosure Statement via https://omniagentsolutions.com/BSA or the Court's website via PACER, (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article X of the Plan, (c) notice of the Plan Objection Deadline, (d) notice of the Confirmation Hearing date, and (e) information related thereto. The Debtors believe that the mailing of the Non-Voting Status Notice and Disputed Claim Notice in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to holders of Claims and Interests in the Non-Voting Classes.

**D.    Plan Supplement Notice**

62. The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, which the Debtors shall file no later than fourteen (14) days before the earlier of the Voting Deadline and the Plan Objection Deadline, unless otherwise ordered by the Court, and additional documents filed with

the Court before the Effective Date as amendments, modifications or supplements to the Plan Supplement.

63.     The Plan Supplement will include the following materials, among others (each as defined in the Plan): (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the Cooperation Agreement; (c) the name of the Creditor Representative; (d) changes, if any, to Reorganized BSA's directors and officers; (e) the form of the Foundation Loan Agreement; (f) the form of agreement reflecting the terms of the Leaseback Requirement; (g); the Rejected Contracts and Unexpired Leases Schedule; (h) the forms of the Restated 2010 Bond Documents; (i) the forms of the Restated 2012 Bond Documents; (j) the forms of the Restated Credit Facility Documents; (k) the form of the Restated Security Agreement; (l) the names of the initial members of the Settlement Trust Advisory Committee; (m) the form of Settlement Trust Agreement; (n) the name of the initial Settlement Trustee; and (o) the Trust Distribution Procedures; provided that the Plan Documents listed in clauses (b) and (g) of the foregoing sentence will be revised, in the Debtors' discretion, subject to <u>Article VI</u> of the Plan, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing.

64.     To ensure that all parties on the 2002 List receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice, substantially in the form attached to the Solicitation Procedures Order as **Exhibit 8**, on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Because of the voluminous nature of the Plan Supplement, the Debtors will not physically serve the Plan Supplement and its exhibits. A copy will be available for review on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  Notwithstanding the foregoing, the Debtors are requesting

that they be permitted to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date solely in accordance with the Plan.

### E. Notices to Executory Contract and Unexpired Lease Counterparties

65. The Plan provides that, except as otherwise provided for in the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed assumed by Reorganized BSA, except for Executory Contracts or Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtors have previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtors to occur) after the Effective Date; or (f) as to which the Debtors or Reorganized BSA, as applicable, determine, in the exercise of their reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtors or Reorganized BSA. *See* Plan § VI.A. Additionally, pursuant to <u>Article VI.C</u> of the Plan, the Debtors will file the Assumed Contracts and Unexpired Leases Schedule with the Plan Supplement and will cause the Cure and Assumption Notice to be served by mail on affected counterparties listed on the Assumed Contracts and Unexpired Leases Schedule on or before such filing, substantially in the form attached to the Solicitation Procedures Order as **<u>Exhibit 9</u>**.

66. In addition, the Debtors propose to file the Rejected Contracts and Unexpired Leases Schedule as part of the Plan Supplement. To ensure that each counterparty to a rejected Executory Contract or Unexpired Lease receives notice of the Debtors' rejection, the Debtors propose to mail the Rejection Notice, substantially in the form attached to the Solicitation

Procedures Order as **Exhibit 10**, to the affected counterparties listed on the Rejected Contracts and Unexpired Leases Schedule.

67.     Accordingly, the Court should approve the form and scope of the Confirmation Notices discussed herein, as well as the manner of providing such notices, pursuant to Bankruptcy Rules 2002 and 9008.

68.     The Debtors also request authorization to make non-substantive changes to the Plan and Disclosure Statement, the Confirmation Hearing Notice, the Solicitation Packages, Ballots, Publication Notice, Cover Letter, Solicitation Procedures, Confirmation Notices, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Plan and Disclosure Statement, and any other materials in the Solicitation Packages before distribution.

## NOTICE

69.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Tort Claimants' Committee; (iii) counsel to the Creditors' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Solicitation Procedures Order, substantially in the form attached hereto as **Exhibit A**, granting the relief

requested in this Motion and such other and any further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: March 1, 2021
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
      aremming@mnat.com
      emoats@mnat.com
      ptopper@mnat.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION