IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**JOINT MOTION OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE AND FUTURE CLAIMANTS' REPRESENTATIVE FOR ENTRY OF AN ORDER GRANTING STANDING AND AUTHORIZING THE PROSECUTION OF CERTAIN CHALLENGE CLAIMS ON BEHALF OF THE BANKRUPTCY ESTATES**

The Official Tort Claimants' Committee (the "Tort Committee"), and James L. Patton Jr., as Legal Representative for Future Claimants (the "FCR" and together with the Tort Committee, the "Challenge Parties"), in the chapter 11 cases commenced by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court for entry of an order granting standing and authorizing the Challenge Parties to prosecute certain challenge claims on behalf of the bankruptcy estates, among other related relief (this "Motion"). In support of this Motion, the Challenge Parties respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Challenge Parties seek standing to pursue, prosecute, and resolve, on behalf of the Debtors' estates, the following claims set forth in the complaint attached hereto as **Exhibit 1** (as it may be amended) (the "Proposed Complaint"): (i) declaratory judgment that the Intercompany Note (as defined below) should be recharacterized as an equity or capital contribution made by Boy Scouts of America ("BSA") to Arrow WV, Inc. ("Arrow") or, in the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

1

alternative, avoiding certain fraudulent transfers made under the Intercompany Note by BSA to Arrow, (ii) declaratory judgment that certain property of the Debtors is not subject to the liens or security interests granted to JPMorgan Chase Bank, N.A., in its capacity as lender, collateral agent, and bondholder ("JPM" or the "Prepetition Lender"); (iii) avoidance of certain unperfected liens and security interests asserted by the Prepetition Lender against certain property of the Debtors; and (iv) an order reversing (or otherwise reserving for further investigation) certain of the other acknowledgements and agreements of the Debtors set forth in the Final Cash Collateral Order (as defined below).

2. This Motion is filed consistent with paragraph 19 of the Final Cash Collateral Order. The filing of this Motion tolls the Challenge Period pending a resolution hereof under paragraph 19(iv) of the Final Cash Collateral Order. The Proposed Complaint also constitutes an objection, pursuant to section 502 of title 11 of the U.S. Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure, to the liens and claims asserted by the Prepetition Lender against the Debtors to the extent set forth herein.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a), 1103(c), and 1109(b) of the Bankruptcy Code. This Motion is also filed pursuant to paragraph 19 of the Final Cash Collateral Order.

**BACKGROUND**

5. On February 18, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue in possession of their property and are operating and managing their businesses as debtors in possession pursuant to the provisions of sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

6. On March 5, 2020, the Office of the United States Trustee appointed the Tort Committee (and, on the same date, also appointed an official committee of unsecured creditors) pursuant to section 1102 of the Bankruptcy Code. *See* Docket Nos. 141 and 142.

7. On April 24, 2020, the Court entered an order (the "FCR Order") appointing the FCR to represent the interests of holders of Future Claimants (as defined in the FCR Order). *See Order Appointing James L. Patton Jr., as Legal Representative for Future Claimants, Nunc Pro Tunc to the Petition Date* [Docket No. 486].

**A.    The Debtor's Prepetition Relationship with the Prepetition Lender**

   i.   *2010 Revolving Credit Facility*

8. On August 11, 2010, BSA entered into that certain *Credit Agreement* (as amended or modified, together with any security, pledge, and guaranty agreements, the "2010 RCF Agreement"), pursuant to which the Prepetition Lender made term loans to BSA in an aggregate amount of $25,000,000 and agreed to make revolving loans to BSA and issue letters of credit on behalf of BSA in an aggregate amount of up to $75,000,000.

9. As of the Petition Date, BSA has stipulated that it is liable to the Prepetition Lender under the 2010 RCF Agreement in the amount of $11,250,000 in respect of term loans made to BSA, $25,212,317 in respect of revolving loans made to BSA, and

$44,299,743 in respect of letters of credit issued on behalf of BSA, if such letters of credit are ultimately drawn.

  ii. *2010 Bond Issuance (Arrow)*

  10. On November 5, 2010, BSA and its non-Debtor related party, Arrow, entered into that certain *Bond Purchase and Loan Agreement* with The County Commission of Fayette County, West Virginia (the "Issuer") and JPM, as a purchaser (as amended or modified, the "2010 Bond Agreement") pursuant to which the Issuer issued *The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2010A* in an aggregate principal amount of $50,000,000 and a similar *The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2010B* in an aggregate principal amount of $50,000,000 (collectively, the "2010 Bonds"), the proceeds of which were loaned to BSA. The loans from the Issuer to BSA were evidenced by that certain *Promissory Note - 2010A* executed by BSA and payable to the order of the Issuer in the original principal amount of $50,000,000 and that certain *Promissory Note - 2010B* executed by BSA and payable to the order of the Issuer in the original principal amount of $50,000,000. Each of those notes was pledged and assigned by the Issuer to the Prepetition Lender to secure the repayment of the 2010 Bonds.

  11. As addressed further below, Arrow owns certain real property in West Virginia spanning roughly 10,000 acres that is used as a high adventure scouting camp known as the Summit Bechtel Family National Scout Reserve (the "Summit Property"). The proceeds of the 2010 Bonds and other borrowings and donations available to BSA were used for purposes of acquiring and improving the Summit Property.

4

12.     The Series 2010A Bonds were paid off on November 5, 2015.  As of the Petition Date, BSA has stipulated that it remains liable to the Issuer in the amount of $40,137,274 under the Promissory Note - 2010B.  The Prepetition Lender is the pledgee and assignee of this promissory note and the Prepetition Lender has confirmed that it has physical possession of such note.

    iii.    *2012 Bond Issuance (Arrow)*

13.     On March 9, 2012, BSA and Arrow entered into that certain *Bond Purchase and Loan Agreement* with the Issuer and JPM, as a purchaser (as amended or modified, the "2012 Bond Agreement", and together with the 2010 Bond Agreement, the "Bond Agreements") pursuant to which the Issuer issued *The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2012* in an aggregate principal amount not to exceed $175,000,000 (the "2012 Bonds"), the proceeds of which were loaned to BSA. The loans from the Issuer to BSA are evidenced by that certain *Promissory Note - 2012* executed by BSA and payable to the order of the Issuer in the original principal amount of $175,000,000.  This note too was pledged and assigned by the Issuer to JPM to secure the repayment of the 2012 Bonds.

14.     As of the Petition Date, BSA has stipulated that it is liable to the Issuer in the amount of $145,662,101 under the Promissory Note - 2012.  The Prepetition Lender is the pledgee and assignee of this promissory note and the Prepetition Lender has confirmed that it has physical possession of such note.

    iv.    *2019 Revolving Credit Facility*

15.     On March 21, 2019, BSA entered into that certain *Credit Agreement* (as amended or modified, together with any security, pledge, and guaranty agreements, the "2019

5

RCF Agreement", and together with the 2010 RCF Agreement, the "Credit Agreements"), pursuant to which the Prepetition Lender agreed to make revolving loans to BSA and issue letters of credit on behalf of BSA in an aggregate amount of up to $71,500,000.

16. The proceeds of the 2012 Bonds were also used for purposes of improving the Summit Property

17. As of the Petition Date, BSA has stipulated that it is liable to the Prepetition Lender under the 2019 RCF Agreement in the amount of $61,542,720 in respect of a letter of credit issued on behalf of BSA for the benefit of Old Republic Insurance Company, if such letter of credit is ultimately drawn. BSA has also stipulated that it holds a segregated deposit account at the Prepetition Lender with funds at least equal to the face amount of this letter of credit.

18. BSA's obligations under the 2010 RCF Agreement, 2010 Bonds, 2012 Bonds, and the 2019 RCF Agreement are collectively referred to herein as the "Prepetition Obligations." Together, the 2010 RCF Agreement, 2010 Bonds, 2012 Bonds, and the 2019 RCF Agreement (as amended or modified, together with any security, pledge, and guaranty agreements) are referenced herein as the "Prepetition Loan Documents."

v. *Prepetition Security Documents*

19. The Prepetition Obligations are secured, in relevant part, pursuant to the terms of that certain *Third Amended and Restated Security Agreement* dated as of March 21, 2019, by and among BSA and Arrow,[2] as debtors, the Prepetition Lender, as the secured party,

---

[2] Although Arrow is a guarantor of the Prepetition Obligations, just prior to the Petition Date, on February 17, 2020, the Debtors and the Prepetition Lender entered into that certain *Limited Waiver*, waiving certain existing and prospective events of default with respect to Arrow under the Credit Agreements.

6

and the Issuer.[3] Further, the Prepetition Lender has the benefit of certain mortgages. The Prepetition Collateral (as defined in the Final Cash Collateral Order) is described further below.

B. **Unencumbered and Unperfected Assets**

20. Pursuant to the Prepetition Loan Documents, the Prepetition Collateral is limited to certain identified assets of the Debtors consisting solely of: (a) Accounts (and certain property relating to such Accounts), certain Deposit Accounts, certain Securities Accounts, Investment Property, certain pledged Promissory Notes, and the Proceeds of each of the foregoing, (b) mortgages against three high adventure sites owned by BSA, and (c) a deed of trust against BSA's headquarters property (but not the scouting museum facility that is adjacent to BSA's headquarters property).

21. Pursuant to the Final Cash Collateral Order, the Prepetition Collateral securing the Prepetition Obligations expressly excludes any assets of the Debtors comprised of (i) "Restricted Amounts" under the Final Cash Collateral Order, or (ii) "Excluded Property" under the Prepetition Loan Documents.

22. Pursuant to the Prepetition Loan Documents, the Prepetition Collateral securing the Prepetition Obligations does not include the following assets of the Debtors and any Proceeds thereof: (a) Goods (including Inventory, Equipment and artwork), (b) General Intangibles (including intellectual property and causes of action), (c) Commercial Tort Claims, (d) motor vehicles and watercraft, (e) membership dues payable to or received by BSA; (f) owned real estate (other than the three high adventure sites referenced in paragraph 19 above); (g) leased real estate; (h) Money; and (i) any insurance policies. The foregoing assets described in subparagraphs (a) through (i) are the "<u>Unencumbered Assets</u>."

---

[3] The Prepetition Lender executed the security agreement on behalf of the Issuer, as its attorney in fact.

23. Notwithstanding the Prepetition Loan Documents, the Prepetition Lender does not have a perfected or otherwise enforceable security interest in the following assets of the Debtors: (x) Deposit Accounts maintained at any bank other than JPM and (y) any Prepetition Collateral acquired by the Debtors after the Petition Date. The foregoing assets described in subparagraphs (x) and (y) are the "Unperfected Assets."

C. **BSA Intercompany Note with Arrow; Avoidable Deed of Trust on Summit Property**

24. The Prepetition Lender is the pledgee and assignee of an *Amended and Restated Promissory Note* dated March 21, 2019, in the principal amount of $350 million made by Arrow, as the obligor, and payable to BSA, as the obligee (the "Intercompany Note").

25. The Intercompany Note is secured by a *First Amendment to Credit Line Deed of Trust* dated March 21, 2019 (the "Intercompany Deed of Trust") recorded against the Summit Property.

26. The Intercompany Note and the Intercompany Deed of Trust were pledged as security to the Prepetition Lender pursuant to a *Collateral Assignment of Promissory Note and Credit Line Deed of Trust* dated March 21, 2019. The Prepetition Lender has confirmed that it is in possession of the Intercompany Note.

27. Arrow was formed in 2009 to acquire and develop the Summit Property for the exclusive support and benefit of BSA. The board of directors of Arrow is appointed solely by BSA. Upon its liquidation or dissolution, all property and assets of Arrow after the payment of its debts and obligations are distributable solely to BSA. Arrow, thus, is effectively owned and controlled by BSA.

28. Arrow owns the real property and improvements that comprise the Summit Property and leases the Summit Property to BSA for a nominal consideration pursuant to

8

that certain *Shared Services Agreement and Lease of Premises* dated February 13, 2017 (the "Arrow Agreement"). Under the Arrow Agreement, BSA provides the necessary services required to operate the Summit Property, including, among other things, payments to third parties on Arrow's behalf such as utility services, taxes, construction, and maintenance costs.

29. The original Intercompany Note was made in June 2010 in the amount of $50 million. The original Intercompany Note had no maturity date, but was due and payable within 30 days of written demand by BSA.

30. Over time, as BSA funded the acquisition, development, and operation of the Summit Property, the intercompany balance between Arrow and BSA grew significantly. In fiscal year 2011, the intercompany balance was roughly $77 million. By 2012, the balance exceeded $200 million. In each fiscal year between 2013 and 2018, the balance exceeded $300 million. Before March 2019, BSA never demanded that the original note be revised to match the then current amount of intercompany borrowings, nor did BSA ever demand payment on the note.

31. In March 2019, the Intercompany Note was amended to increase the outstanding principal balance to $350 million. The amended Intercompany Note has a maturity date of March 31, 2029, and an interest rate of 0% per annum. The amended Intercompany Note does not provide for any principal or interest payments prior to maturity. The basis for the principal amount outstanding under the Intercompany Note, or the reasons why it was amended from $50 million to $350 million, lacks detailed support.

32. Upon information and belief, Arrow has few, if any, assets aside from the Summit Property and no ability to repay the Intercompany Note absent a disposition or refinancing of the Summit Property.

33. BSA did not receive fair consideration, or reasonably equivalent value, in exchange for the transfers made to Arrow to acquire, develop, and operate the Summit Property although it incurred the material financial and other obligations on account of such transfers and was required to make principal and interest payments to the Prepetition Lender based on the debt incurred to make such transfers.

34. The transfers made by BSA to Arrow to acquire, develop, and operate the Summit Property occurred while BSA was, or caused BSA to be rendered, insolvent, undercapitalized, or unable to pay its debts as they came due.

35. To the extent Arrow is an affiliate of BSA, the ostensible debt due under the Intercompany Note should be recharacterized as a contribution of capital by BSA to Arrow and the Intercompany Deed of Trust would, accordingly, cease to secure an enforceable debt. Alternatively, to the extent Arrow is not an affiliate of BSA, the transfers made by BSA to Arrow pursuant to the Intercompany Note should be avoided as fraudulent transfers and BSA should recover the value of such transfers, or the Summit Property, for the benefit of its estate.

**D.** **The Final Cash Collateral Order, Challenge Period, and Reserved Matters**

36. On April 15, 2020, the Court entered the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363 and 507; and (III) Granting Related Relief* [Docket No. 433] (the "Final Cash Collateral Order"). The Final Cash Collateral Order, among other things, set a Challenge Period expiring on July 3, 2020, for the Challenge Parties to assert a Challenge Proceeding as to the Debtors' Stipulations and the other admissions, agreements and releases contained in the Final Cash Collateral Order

10

in favor of the Prepetition Lender. The Challenge Period has since been extended by agreement of the Prepetition Lender through March 12, 2021.

37. The Challenge Parties hereby assert a Challenge Proceeding as to those items identified as Unencumbered Assets and Unperfected Assets above and also seek the recharacterization of, or avoidance and recovery of the transfers made under, the Intercompany Note. The Challenge Parties submit that there is no evidentiary basis for a finding that the Prepetition Lender has a valid, perfected lien, claim, or interest in any of the Unencumbered Assets or Unperfected Assets and any inconsistent finding should be stricken from the Final Cash Collateral Order.

38. In addition, the Challenge Parties seek a declaration that their rights to contest the following matters are fully reserved (together, the "Reserved Matters"): (a) the allowance of any interest (or default rate interest) paid or accrued under the Prepetition Loan Documents; (b) the accuracy of the calculation of the amount of any principal, interest, fees, costs, or charges paid or accrued under the Prepetition Loan Documents; (c) the reasonableness pursuant to section 506(b) of the Bankruptcy Code of the amounts of any fees, costs or charges that may be asserted by the Prepetition Lender to the extent provided for under the Prepetition Loan Documents; and (d) any adequate protection or diminution claim that may be asserted by the Prepetition Lender against the Debtors' estates.

39. The Challenge Parties submit that none of the Debtors' various acknowledgments, waivers, and stipulations in the Final Cash Collateral Order should have any impact on any rights, claims, defenses, offsets, or causes of action that the Challenge Parties or any of the Debtors' estates may have against the Prepetition Lender with respect to the Reserved Matters.

40. The Challenge Parties object to the liens and claims asserted by the Prepetition Lender to the extent inconsistent with the foregoing. The Challenge Parties have proposed a stipulation to preserve and defer resolution of the items identified above to the Prepetition Lender. However, no agreement has been reached. The Challenge Parties therefore file this Motion, and seek standing to file the Proposed Complaint (as it may be amended), in order to preserve their rights under the Final Cash Collateral Order.

## RELIEF REQUESTED

41. By this Motion, pursuant to sections 105, 1103(c), and 1109 of the Bankruptcy Code, the Challenge Parties seek entry of an order granting standing and authorizing them, on behalf of the Debtors' estates, to pursue, prosecute, and/or resolve the causes of action set forth in the Proposed Complaint (as it may be amended) and granting related relief.

## BASIS FOR RELIEF

**A.    Legal Standard to Establish Standing**

42. The Bankruptcy Code provides that a committee may investigate the assets and liabilities of the debtor and "perform such . . . services as are in the interest of those represented." 11 U.S.C. § 1103(c)(2), (5). The Bankruptcy Code also allows a party in interest, including a creditors' committee, to be heard on any issue in a chapter 11 case. *See* 11 U.S.C. § 1109(b). Moreover, section 105(a) empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *See* 11 U.S.C. § 105(a).

43. The Third Circuit, in common with the majority of circuits reaching the issue,[4] has held that derivative standing is available to a creditors' committee to pursue estate

---

[4] Cases from the following circuits support the bankruptcy court's authority to grant derivative standing: *Smart World Techs., LLC v. Juno Online Servs. Inc. (In re Smart World Techs., LLC),* 423 F.3d 166, 176 (2d Cir. 2005);

12

claims when it shows that a debtor in possession "unreasonably refuses" to do so. *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (*en banc*) (derivative standing appropriate if the debtor unreasonably refuses to pursue a fraudulent transfer action); *accord Infinity Investors Ltd. v. Kingsborough (In re Yes! Entm't Corp.),* 316 B.R. 141, 144-45 (D. Del. 2004) ("The Third Circuit expressed its agreement with approaches taken by the Second and Seventh Circuits;" denial of derivative standing reversed); *Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.),* 326 B.R. 532 (W.D. Pa. 2005) (retroactive approval of derivative standing and adversary proceeding by committee).

44. To establish derivative standing, the Challenge Parties must show that the Debtors unreasonably refuse to bring an action that would benefit the estate. *Cybergenics,* 330 F. 3d at 568. Although the Third Circuit has not specified procedural requirements for allowing derivative standing, it expressed approval of the approaches taken by the Second and Seventh Circuits. *Cybergenics,* 330 F. 3d at 566-67. These courts and others have generally recognized derivative standing upon a showing that: (1) the claims are colorable; (2) the debtor has unjustifiably refused to pursue the claim, and (3) the bankruptcy court has granted permission to initiate the action on behalf of the estate. *In re Yes! Entm't Corp.,* 316 B.R. at 145 (citing recognized factors); *In re Nat'l Forge Co.,* 326 B.R. at 543 (same).

45. As set forth below, the Challenge Parties satisfy each of the foregoing elements.

---

*Louisiana World Exposition v. Federal Ins. Co.,* 858 F. 2d 233, 247-52 (5th Cir. 1988); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving Ltd. (In re Gibson Group, Inc.),* 66 F. 3d 1436, 1440-46 (6th Cir. 1995); *Fogel v. Zell,* 221 F. 3d 955, 965 (7th Cir. 2000); *PW Enterprises, Inc. v. North Dakota Racing Comm. (In re Racing Servs., Inc.),* 540 F. 3d 892, 898 (8th Cir. 2008); and *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.),* 199 F. 3d 1029, 1031 (9th Cir. 1999).

B.  **The Challenge Parties Have Colorable Claims for
Declaratory Relief and Avoidance That Will Benefit the Estates**

46. Whether a party has asserted a colorable claim for purposes of derivative standing is a legal question, requiring the same analysis that would be undertaken upon a motion to dismiss. The Court must accept all well-pleaded facts as true, draw all inferences from such facts in the light most favorable to the plaintiff, and determine as a matter of law whether a claim is sufficiently pled. *Walnut Creek Mining Co. v. Cascade Inv., LLC (In re Optim Energy, LLC)*, 527 B.R. 169, 173 (D. Del. 2015) (derivative standing review; quoting *Twombly* for the proposition that there is no probability requirement at the pleading stage but there must be sufficient facts to expect that discovery will reveal supporting evidence of claims).

47. Notwithstanding the Debtors' acknowledgments, waivers, and stipulations in the Final Cash Collateral Order, the Challenge Parties have investigated and concluded that the Prepetition Collateral under the Prepetition Loan Documents does not include, and/or the Prepetition Lender has failed to perfect its asserted interest liens, claims, and interests in the Unencumbered Assets and the Unperfected Assets. The Challenge Parties seek declaratory relief regarding, and avoidance of, the asserted liens.

48. The Challenge Parties further submit that the Intercompany Note is not a legitimate debt of Arrow to BSA. The Intercompany Note should be recharacterized as an equity or capital contribution because, among other things: (a) the interest rate under the Intercompany Note is 0% per annum; (b) there are no repayment requirements under the Intercompany Note pending maturity; (c) the maturity date of the note is so far into the future that it reflects an illusory repayment obligation; (d) for extended periods of time, the Arrow intercompany balance was not memorialized in any instrument; (e) Arrow has no viable source of repayment; (f) Arrow and BSA have an identity of interests; (g) Arrow has no independent ability to obtain financing

14

on its own from lending institutions; and (h) Arrow used BSA's funds to acquire capital assets or make capital improvements. As a result of the recharacterization of the Intercompany Note, the Prepetition Lender has no allowable claim against Arrow and the Summit Property is free and clear of any lien or security interest of the Prepetition Lender under the Intercompany Deed of Trust.

49. Alternatively, the Intercompany Note reflects transfers of BSA property and/or interests in property under section 548 of the Bankruptcy Code (and other applicable fraudulent transfer law) for the benefit of Arrow. BSA did not receive fair consideration, or reasonably equivalent value, in exchange for the transfers that funded Arrow's acquisition of the Summit Property. Accordingly, all such transfers should be avoided for the benefit of BSA's estate.

50. The Challenge Parties further submit that none of the Debtors' various acknowledgments, waivers, and stipulations in the Final Cash Collateral Order, including findings set forth at Recital D thereof, should have any impact on any rights, claims, defenses, offsets, or causes of action that the Challenge Parties or any of the Debtors' estates may have against the Prepetition Lender with respect to the Reserved Matters.

51. The Challenge Parties object to the liens and claims asserted by the Prepetition Lender against the Debtors or their estates to the extent inconsistent with the foregoing. These are colorable claims that are asserted after substantial time and resources have been devoted by the Challenge Parties and their professionals to due diligence.

C. **The Debtors Have Unjustifiably Refused to Bring the Claims**

52. As the Third Circuit emphasized, the critical inquiry is whether the Debtors have unreasonably or unjustifiably refused to bring the claims. *Cybergenics,* 330 F. 3d at 553 ("We believe that …bankruptcy courts' equitable powers enable them to authorize such

15

[derivative] suits as a remedy in cases where a debtor-in-possession unreasonably refuses to pursue an avoidance claim."); 330 F. 3d at 568 ("The problem at bar is that the intended system broke down. The Debtor refused to bring an action that the Bankruptcy Court found would benefit the estate, and thereby violated its fiduciary duty to maximize the estate's value.").

53. Here, pursuant to the Final Cash Collateral Order, the Debtors have irrevocably conceded that the Prepetition Lender has liens on, or security interests in, some or all of the Unencumbered Assets and the Unperfected Assets. The Challenge Parties dispute these stipulations and should be permitted to assert a proper challenge with respect thereto.

54. The Challenge Parties propose declaratory relief and avoidance claims that preserve substantial assets for the benefit of these estates. The Challenge Parties have already proposed a stipulation to the Prepetition Lender in an effort to resolve such claims, but no resolution has been reached. The Challenge Parties will continue to endeavor to resolve the claims asserted in the Complaint or to pursue such claims as efficiently as possible. Derivative standing is warranted because the Debtors have relinquished their ability to assert the claims proposed herein.

55. The Final Cash Collateral Order specifically contemplates that an objection to the liens and claims of the Prepetition Lender may be asserted during the Challenge Period. The Challenge Parties are fulfilling their statutory duties consistent with the Bankruptcy Code and the Final Cash Collateral Order. Further, the potential of preserving the Unencumbered Assets, the Unperfected Assets, and the Summit Property for the benefit of tort claimants outweighs any possible prejudice or delay to the Prepetition Lender.

**D.** **The Challenge Parties Seek Court Authority for Derivative Standing**

56. Under *Cybergenics,* a committee may be granted derivative to pursue claims on behalf of the bankruptcy estate where the debtor has unreasonably refused to bring

16

such claims. Derivative standing is conditioned upon the bankruptcy court's permission, based on its equitable powers and ability to implement flexible remedies. *Cybergenics,* 330 F. 3d at 568-69 (Congress anticipated court's use of equitable powers as a gatekeeper when the trustee [or debtor] is delinquent).

57. The Challenge Parties bring this Motion to invoke the Court's equitable authority and request derivative standing to bring claims for the benefit of the estates.

## **CONCLUSION**

58. Based upon the foregoing, the Challenge Parties should be granted standing, on behalf of the Debtors' estates, to pursue, prosecute, and/or resolve the claims set forth in the Proposed Complaint (as it may be amended).

## **NO PRIOR REQUEST**

59. No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the Challenge Parties respectfully request that this Court: (i) enter an order granting standing and authorizing the Challenge Parties to prosecute the causes of action set forth in the Proposed Complaint and (ii) grant such other and further relief to the Challenge Parties as the Court may deem proper.

| Dated: March 12, 2021 | PACHULSKI STANG ZIEHL & JONES LLP |
|---|---|
| | |
| | */s/ James E. O'Neill* |
| | James E. O'Neill (DE Bar No. 4042) |
| | James I. Stang (CA Bar No. 94435) |
| | Maxim B. Litvak (CA Bar No. 215852) |
| | John W. Lucas (CA Bar No.271038) |
| | 919 North Market Street, 17th Floor |
| | P.O. Box 8705 |
| | Wilmington, DE 19899 (Courier 19801) |
| | Telephone: 302-652-4100 |
| | Facsimile: 302-652-4400 |
| | E-mail: joneill@pszjlaw.com |
| | jstang@pszjlaw.com |
| | mlitvak@pszjlaw.com |
| | jlucas@pszjlaw.com |
| | |
| | *Counsel for the Official Tort Claimants' Committee* |
| Dated: March 12, 2021 | **YOUNG CONAWAY STARGATT & TAYLOR, LLP** |
| | |
| | */s/ Robert S. Brady* |
| | Robert S. Brady (No. 2847) |
| | Edwin J. Harron (No. 3396) |
| | Sharon M. Zieg (No. 4196) |
| | Sara Beth A.R. Kohut (No. 4137) |
| | Rodney Square |
| | 1000 North King Street |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 571-6600 |
| | Facsimile: (302) 571-1253 |
| | Email: rbrady@ycst.com |
| | eharron@ycst.com |
| | szieg@ycst.com |
| | skohut@ycst.com |
| | |
| | *Counsel to the Future Claimants' Representative* |