**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 2391** |

**MOTION OF THE FUTURE CLAIMANTS'
REPRESENTATIVE, THE OFFICIAL COMMITTEE OF
TORT CLAIMANTS, AND THE COALITION OF ABUSED SCOUTS FOR
JUSTICE FOR ENTRY OF AN ORDER, PURSUANT TO 28 U.S.C. § 157(d)
AND BANKRUPTCY RULE 5011(a), WITHDRAWING THE REFERENCE OF
PROCEEDINGS INVOLVING THE ESTIMATION OF PERSONAL INJURY CLAIMS**

James L. Patton, Jr., the Future Claimants' Representative (the "FCR"), the Official Committee of Tort Claimants (the "TCC"), and the Coalition of Abused Scouts for Justice (the "Coalition") (collectively, the "Movants"), by and through their undersigned counsel, hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by the United States District Court for the District of Delaware withdrawing the reference of the contested matter pending in the United States Bankruptcy Court for the District of Delaware involving the estimation of current and future personal injury tort claims arising from sexual abuse under sections 105(a) and 502(c) of the Bankruptcy Code. In support of this Motion, the Movants respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**INTRODUCTION**

The Boy Scouts of America ("BSA"), one of the nation's largest youth organizations, is meant to provide a safe environment where children can learn to be self-reliant, responsible citizens through outdoor activities and educational programs. But decade after decade, many scouts entrusted to the BSA were sexually abused. Survivors of that abuse have now sought to hold the BSA accountable, having filed approximately 84,000 claims of child sexual abuse ("Abuse Claims").

The BSA filed for bankruptcy protection in February 2020 with the stated goal of addressing its liabilities for sexual abuse. Over the past year, however, no material progress has been made toward compensating sexual abuse survivors. Mediation efforts have stalled. And the most recent plan of reorganization proposed by the BSA has no material prospect of confirmation.

The BSA's plan includes a channeling injunction protecting third parties who have not availed themselves of chapter 11's protections. Under applicable law, such a plan can be approved, if at all, only with the overwhelming support of the survivors holding Abuse Claims. Yet, the plan leaves survivors of childhood sexual abuse with nothing more than unquantified, inchoate rights to have a trust sue insurers for years and years following the plan's approval. The uncertainty (and delay) inherent in the proposed plan as to the treatment of survivors' claims is not acceptable. Moreover, the plan discriminates unfairly against survivors holding Abuse Claims by seeming to provide more definitive and favorable treatment to nearly every other creditor constituency. Survivors holding Abuse Claims are universally opposed to this plan.

Movants respectfully submit that something must be done to move the process forward and to make meaningful progress toward compensating the survivors. That something is an estimation proceeding under 11 U.S.C. § 502(c)(1). Section 502(c)(1) authorizes a court to hold a proceeding—an "estimation"—to fix an aggregate value to a set of bankruptcy claims. Indeed,

courts "*shall*" estimate unliquidated claims if liquidating them one by one "would unduly delay the administration of the case." *Id.* (emphasis added).  Estimation provides the only realistic path for recovery for survivors without undue delay.  Thus, Movants have filed a motion seeking estimation of the aggregate amount of current and future Abuse Claims,[2] with accompanying procedures and a proposed schedule.

The estimation proceeding should, in all respects, take place in the District Court, not in the Bankruptcy Court.  By this Motion, therefore, Movants request that the District Court withdraw the reference from the Bankruptcy Court as to the claims being estimated.  *See* 28 U.S.C. § 157(d).  The reference should be withdrawn for two independent reasons.

*First*, under Section 157(b)(2)(B), "[c]ore proceedings" (which bankruptcy courts *can* adjudicate to judgment) do *not* include "*estimation* of contingent or unliquidated *personal injury tort* or wrongful death claims against the estate *for purposes of distribution* in a case under title 11."  28 U.S.C. § 157(b)(2)(B) (emphasis added).  The estimation proposed here will be, at least in part, for purposes of distribution.  The BSA's plan structure creates a trust that is to assume all liability on the Abuse Claims, and to which the BSA, local councils, and certain chartered, sponsoring organizations are to make contributions of assets in exchange for receiving the benefit of permanent protective injunctions (a discharge injunction for the BSA and a channeling injunction for other parties).  Those contributions to the trust will necessarily cap the distributions to holders of Abuse Claims.

Estimation of the BSA's aggregate liability for Abuse Claims will enable creditors to measure the proposed plan trust contributions against the aggregate liability for Abuse Claims of

---

[2] To make the estimation most efficacious, Movants seek that the BSA's aggregate liability for Abuse Claims be determined on a year-by-year basis, broken out by type of abuse, and that the estimation further take account of those co-liable non-debtors seeking releases as part of a plan (local councils, sponsoring organizations, etc.)

3

each of the beneficiaries of permanent injunctive relief. Although a consequence of the estimation could be a demand by Movants for increased contributions to the trust, such estimation also will set a *de facto* cap on the aggregate liability of the BSA.³ Because creditors cannot be paid more than in full, the estimation will effectively cap the aggregate contributions to the trust and the aggregate distributions to holders of Abuse Claims. This means that estimation is not a core proceeding.

As such, the Bankruptcy Court could not render a final judgment in the matter; all it could do is submit proposed findings of fact to the District Court. It thus would be far more efficient for the District Court to conduct the estimation in the first instance, particularly because the Bankruptcy Court's rulings would be subject to *de novo* review in the District Court in any event.

*Second*, and reinforcing the point, Section 157(b)(5) provides that the "district court ***shall*** order that ***personal injury tort*** and wrongful death claims ***shall*** be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." 28 U.S.C. § 157(b)(5) (emphasis added). The survivors' claims are plainly for personal injury. By the plain language of the statute, then, the Bankruptcy Court lacks the authority to try them. The District Court should therefore withdraw the reference for the estimation.

## JURISDICTION AND VENUE

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter concerns the estimation of "personal injury" tort claims as such term is used in 28

---

³ Estimation of aggregate liability is not intended to, and should not, determine the liquidated amount of a particular individual claim. The plan contemplates that such individual amounts will be determined through a yet unfiled set of trust distribution procedures (the "TDP") or through release of actions into the tort system for adjudication as permitted by the TDP.

4

U.S.C. §§ 157(b)(2)(B) and 157(b)(5). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a).

## STATEMENT OF FACTS

**A.    The BSA Files For Bankruptcy, And The Movants Enter The Case**

The BSA and its affiliate Delaware BSA, LLC (the "Debtors") commenced these chapter 11 cases on February 18, 2020. The cases are being jointly administered for procedural purposes only under Bankruptcy Rule 1015(b).

On March 5, 2020, the Office of the United States Trustee for the District of Delaware appointed the TCC pursuant to 11 U.S.C. § 1102. Dkt. Nos. 141 & 142. The TCC serves as a fiduciary representative for all holders of Abuse Claims against the BSA. On April 24, 2020, the Bankruptcy Court appointed the FCR to represent the interests of survivors of pre-bankruptcy abuse who might assert claims against the BSA in the future. Dkt. No. 486.

On July 24, 2020, the Coalition filed a notice of appearance in these chapter 11 cases pursuant to section 1109(b) of the Bankruptcy Code. The Coalition comprises approximately 12,000 sexual abuse survivors who have submitted proofs of claim against the Debtors and signed affirmative consents to being part of the Coalition.

**B.    Approximately 84,000 Sexual Abuse Survivors Come Forward**

Before commencing this bankruptcy, the BSA was named as a defendant in approximately 275 lawsuits asserting Abuse Claims against the BSA and affiliated organizations. Dkt. No. 4 at 3.

On May 26, 2020, the Bankruptcy Court entered an order setting November 16, 2020 as the deadline by which sexual abuse survivors needed to file proofs of claim. Dkt. No. 695. The Debtors then implemented a robust and nationwide noticing campaign which included television,

5

radio, print, and internet advertising. *See* Dkt. No. 1145 ¶ 25. When the dust settled, approximately 84,000 sexual abuse survivors had submitted proofs of claim prior to the deadline.

**C.     Negotiations Stall, And The BSA Proposes An Unrealistic Bankruptcy Plan**

At the outset of the bankruptcy case, the Debtors filed a motion seeking the appointment of a mediator to help resolve the Abuse Claims through a chapter 11 plan of reorganization. Dkt. No. 17. The Court referred these cases to mediation on June 9, 2020. Dkt. No. 812. Mediation talks have been ongoing, but, despite the good-faith participation of the TCC, the FCR, and the Coalition, the negotiations have yet to produce anything close to a breakthrough as to the amount to be paid to abuse survivors.

On March 1, 2021, the Debtors filed their first amended plan of reorganization ("Proposed Plan"). Dkt. No. 2293. The Proposed Plan faces near-unified opposition from the parties that represent the holders of Abuse Claims. It both fails to address the Debtors' liabilities for Abuse Claims and fails to provide sufficient means for paying survivors. Under the Proposed Plan, current and future Abuse Claims will be permanently channeled to a trust and processed, liquidated, and paid pursuant to the yet unfiled TDP. This trust is to be "*the sole recourse*" for any abuse survivor seeking compensation from the Debtors. *Id.* at art. X.F.1 (emphasis added).

In other words, the Proposed Plan offers one—and only one—means by which abuse survivors can obtain redress. And the consideration used to fund the trust will be all that is available to pay survivors. Yet, Movants expect that such consideration will leave the trust underfunded by billions of dollars.

The Debtors are proposing to contribute some unliquidated artwork, oil and gas interests, and an unspecified amount of cash to the trust. Additional funds may be contributed by certain local councils and chartered organizations in amounts yet to be determined, with such parties being

6

provided the benefit of a channeling injunction and third-party plan releases.  The Debtors are also proposing that they and the local councils will assign to the trust insurance rights, including the ability to pursue coverage actions against their insurers, leaving the trust to litigate against the Debtors' insurers for the indefinite future.  All the while, the Debtors and local councils propose to retain for themselves billions of dollars in real property and other assets.

In contrast, the BSA is proposing to pay current and former executives millions of dollars, including executives who oversaw the BSA's operations during the periods when a significant amount of abuse occurred.  Under the BSA's Proposed Plan, general unsecured claims, which include the claims of BSA and local council employees, will receive a recovery of 75-95% of the allowed amount of their claims.  The BSA recently reached a deal with JPMorgan that ensures that JPMorgan will receive at least 100% of the value of its claims.

The BSA's clear priority—as demonstrated by its Proposed Plan—is to ensure that virtually every creditor constituency is paid in full (or as close as possible to being paid in full), with the exception of the survivors who are left fighting over very limited funds and fighting with insurers that will not even recognize that they have coverage obligations.  Put simply, the Proposed Plan is not acceptable and not confirmable.

**D.     The Movants Initiate Estimation Proceedings**

On March 16, 2021, the Movants filed in the Bankruptcy Court a motion for estimation.  That estimation is designed to resolve issues that are conditions precedent to any plan, the following two being primary among them:  *First*, a court must determine the Debtors' aggregate liability for survivors' claims.  *Second*, survivors (and, indeed, Debtors) must know and be able to quantify the sources of funds, including insurance proceeds, which are available to satisfy those claims.

7

By this Motion, the Movants respectfully ask that the reference be withdrawn so that estimation can proceed in the District Court, as we believe it must.

**ARGUMENT**

Bankruptcy courts are not Article III courts; they derive their jurisdiction from the district courts' referral of bankruptcy matters pursuant to 28 U.S.C. § 157(a). But, just as a district court may refer a case to bankruptcy court, it may withdraw that reference. 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.").

The District Court should withdraw the reference here. First, the estimation is a non-core proceeding under 28 U.S.C. § 157(b)(2)(B). Because the estimation is non-core, and because the "minimum standards" for withdrawing the reference are met, *see In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990), withdrawal is appropriate. Second, and in all events, it is mandatory that the District Court estimate these claims because they are personal injury tort claims under 28 U.S.C. § 157(b)(5).

**A.    This Estimation Is A Non-Core Proceeding, And The Minimum Standards To Withdraw The Reference Are Met**

*1.    The Estimation Is Not A Core Proceeding*

A bankruptcy court may "hear and determine" all core proceedings "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Critically, however, "[c]ore proceedings" do not include "the liquidation or *estimation* of contingent or unliquidated *personal injury tort* or wrongful death claims against the estate *for purposes of distribution* in a case under title 11." *Id.* § 157(b)(2)(B) (emphasis added).

This estimation is "for purposes of distribution" and thus non-core. The purpose of the estimation is to derive an aggregate value of the Abuse Claims that will, in turn, dictate the size at

8

plan confirmation of any post-confirmation trust for making distributions to abuse survivors. The result of that estimation will be binding on all parties and set a *de facto* cap on the Debtors' liability with respect to the estimated claims, in that the estimation will establish the maximum amount that the BSA and beneficiaries of any channeling injunction must make available for distribution to abuse claimants. This is quintessentially "for purposes of distribution." *See In re Dow Corning Corp.*, 211 B.R. 545, 569 (Bankr. E.D. Mich. 1997) (even estimation to "determin[e] feasibility of a plan of reorganization" can, when combined with the effects of the debtor's discharge, "create the result that the estimation was actually for purposes of distribution"). Although estimation also is needed for purposes of measuring the proposed plan's satisfaction of certain confirmation requirements, "it makes no sense to engage in a dual system of estimation, one in [the bankruptcy court] for voting and confirmation purposes and the other in the district court for distribution purposes." *See In re Roman Catholic Archbishop of Portland in Or.*, 339 B.R. 215, 224 (Bankr. D. Or. 2006).

        2.       *The Minimum Standards For Withdrawal Are Met*

In evaluating whether a reference should be withdrawn, courts in this Circuit ask whether "cause" has been shown, which in turn requires an assessment of whether the "minimum standards" for withdrawal have been met. *Pruitt*, 910 F.2d at 1168 (first excerpt quoting 28 U.S.C. § 157(d)). That entails the following considerations: "promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id.* (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)); *accord, e.g.*, *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989) (withdrawal for

9

"cause" includes consideration of judicial economy and the nature of the proceedings, that is, whether the proceedings are core or non-core).

The minimum standards are easily met here.

<u>Judicial Economy and Expedition</u>.  Estimation before the District Court is plainly the more economical and expeditious option.  The estimation process does not draw on the expertise or familiarity of the Bankruptcy Court.  The Estimation Motion was just filed.  No objections or responses to the Estimation Motion have been filed, and no discovery has been taken.  Thus, withdrawal of the reference now will not result in any duplication of effort.  Moreover, the Bankruptcy Court has not yet gained extensive factual knowledge associated with the estimation process that would render it better situated to preside over the issues.  Nor will the estimation process require any specialized bankruptcy knowledge to resolve.  *See In re G-I Holdings, Inc*., 295 B.R. 211, 217-18 (D.N.J. 2003) ("Because this proceeding entails exclusively state law claims against a nondebtor, it is in the Court's best interest to adjudicate the nonbankruptcy dispute once, while the Bankruptcy Court continues to administer the chapter 11 reorganization and conduct other common bankruptcy proceedings."); *see also In re Money Centers of Am., Inc*., 579 B.R. 710, 715 (S.D.N.Y. 2016) ("[I]t is a waste of judicial resources for a court of specialized bankruptcy knowledge to administer a case that does not require application of that knowledge.").

Further, because the estimation is non-core, the Bankruptcy Court would be constrained to submit proposed findings and conclusions for the District Court's consideration.  28 U.S.C. § 157(c)(1). And, as to any objected matter, the Bankruptcy Court's findings will be reviewed *de novo*.  *See id*.  This would effectively require the parties to try the same case twice, in two courts, resulting in "significant duplication of effort." *In re NDEP Corp.*, 203 B.R. 905, 913 (D. Del. 1996).  The estimation should instead proceed in the District Court in the first instance.  *See In re*

10

*Appleseed's Intermediate Holdings, LLC*, No. 11-807(JEI/KM), 2011 WL 6293251, at *3 (D. Del. Dec. 15, 2011) ("[P]roceeding directly in District Court will preserve the parties' resources" because, among other things, it will "eliminate a round of [de novo] appeals."); *accord Hatzel & Buehler*, 107 B.R. at 40.

Forum Shopping / Confusion.  "[R]educing forum shopping and confusion" likewise counsels for withdrawing the reference. *Pruitt*, 910 F.2d at 1168.  As explained below, the Movants believe that it is mandatory for the District Court to try the estimation case.  Accordingly, there is no forum shopping involved here.  This is simply a matter of allowing the court—within the same judicial district and applying the same law—that is most capable of fully and finally resolving the proceeding to do so.  Delaware has one Bankruptcy Court within its sole District.  Whether or not the reference is withdrawn, the District Court will have the opportunity for *de novo* consideration of the estimation of the Abuse Claims.  *See In re Petition of McMahon*, 222 B.R. 205, 208 (S.D.N.Y. 1998) ("Forum shopping would not be encouraged by granting the Defendant's motion as this case involves a non-core proceeding that could have and probably should have been brought in a district court originally.").  And even if others may argue that it is not mandatory for the District Court to try the estimation case, that uncertainty about the requisite forum, standing alone, militates in favor of withdrawing the reference.  That is just what happened in *Appleseed's*: There, although the District Court harbored "serious doubts" that the Bankruptcy Court lacked authority to issue a ruling, it nevertheless held that the "prudent action [was] to withdraw the reference," because if authority ultimately proved lacking then "the parties could potentially have to re-litigate the entire case." 2011 WL 6293251, at *3.

Uniformity in Administration.  For many of these same reasons, an estimation before the District Court would best promote "uniformity in bankruptcy administration." *Pruitt*, 910 F.2d at

11

1168. Nothing could be more uniform than a single court—the District Court—handling the estimation from day one. *See*, *e.g.*, *Appleseed's*, 2011 WL 6293251, at *3 (withdrawal of reference granted "[t]o avoid confusion and future collateral attacks" to judgment issued by the bankruptcy court). For that reason, we urge the Court to withdraw the reference as to all discovery, objections, and estimation of the claims at issue. *See, e.g.*, *In re Roman Catholic Archbishop of Portland in Or.*, No. 04-37154, Dkt. No. 4817 (Bankr. D. Or. Mar. 15, 2007) (withdrawing reference of sexual abuse claims); *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 533 (S.D.N.Y. 2012) ("Courts routinely have found no benefit [to bankruptcy court's adjudication of the claim] where claims are based on state law."). This will prevent, for example, parties from attempting to lodge objections in the Bankruptcy Court for the very same claims that this Court is in the process of estimating—which would be duplicative and insensible. The same is true for discovery matters, case management, and other pretrial matters relating to the estimation itself: Bifurcating the estimation between the Bankruptcy Court and District Court would be inefficient and create a risk of inconsistent rulings. *See, e.g.*, *Nw. Inst. of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 111–12 (E.D. Pa. 2001) ("By transferring the entire adversary matter to the District Court, as opposed to transferring just the trial portion, the District Judge will be better able to closely monitor this case and uniformly resolve all issues which will expedite the adversary action and, in turn, the bankruptcy process.").

Consistent with these standards, courts have withdrawn the reference pursuant to Section 157(d) to conduct estimation proceedings. For example, in the highly publicized case involving Pacific Gas & Electric (PG&E), the debtors filed for bankruptcy to address billions of dollars of liabilities resulting from wildfires causes by PG&E's equipment. Collectively, the

wildfires burned over 460,000 acres, destroyed tens of thousands of homes, businesses, and other structures, and caused over one hundred fatalities.

Several months into the bankruptcy, PG&E, like the Movants here, filed a motion pursuant to sections 105(a) and 502(c) of the Bankruptcy Code to establish claim estimation procedures. *See In re PG&E Corp. ("PG&E")*, No. 19-30088-DM, Dkt. No. 3091 (Bankr. N.D. Cal. July 18, 2019). The Bankruptcy Court took the matter under advisement and ultimately issued a *Recommendation for Withdrawal of the Reference of Proceeding in Part* on August 21, 2019. *Id.* at Dkt. No. 3648.

The Bankruptcy Court agreed that it would be impossible to liquidate thousands of individual claims in a matter of months, or possibly years, and that PG&E needed to implement procedures for estimation of its unliquidated tort claims. *Id.* at 3. Thus, the case was plainly ripe for estimation absent a consensual resolution.

The Bankruptcy Court found, consistent with Section 157(b)(2)(B), that "core proceedings" do not include "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under Title 11." *Id.* The Bankruptcy Court also found that PG&E, like the BSA, was proposing a plan that would channel tort claims to a capped trust for distribution to the tort victims and, thus, provide for a discharge of tort liabilities. *Id.* at 4.

This led the Bankruptcy Court to conclude that an Article III court had to oversee the estimation process, particularly when it came to the estimation of unliquidated personal injury and wrongful death claims against PG&E. *Id.* at 7-8. The District Court adopted the Bankruptcy Court's recommendation and withdrew the reference pursuant to 28 U.S.C. § 157(d) and Section 502(c) of the Bankruptcy Code. *See PG&E*, Dkt. No. 3671.

Withdrawal here is even more compelling than in PG&E because all the sexual abuse claims against the BSA are personal injury claims, whereas in PG&E only a percentage of the claims that were the subject of the estimation proceeding involved personal injury claims. And we respectfully submit that, as in PG&E, it is important for the estimation proceedings in their entirety to be overseen by the District Court. Because the estimation is a non-core proceeding and the minimum standards are met, the District Court should withdraw the reference—in its entirety— for those claims subject to estimation.

\*         \*         \*

Because the estimation is a non-core proceeding and the minimum standards are met, the District Court should withdraw the reference as to all discovery, objections, and estimation—at least until the estimation has concluded—for the claims at issue.

## B.    The District Court "Shall" Try These Claims

The reference should be withdrawn for the additional reason that the Bankruptcy Court lacks authority to try "personal injury tort claims," such as the sexual abuse claims here. *See* 28 U.S.C. § 157(b)(5) (specifying that the District Court "shall order that personal injury tort . . . claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose").

Here, the estimation will bear the hallmarks of a "trial": The parties will take fact discovery, offer experts, call witnesses, and try to judgment the aggregate value of the Abuse Claims. The District Court may well make case-dispositive legal rulings, and the estimation will culminate in a binding judgment setting a *de facto* cap on the value of Abuse Claims for distribution purposes. *See supra* at 8-9. Estimation of these personal injury claims therefore must proceed in the District Court. *See Moore v. Idealease of Wilmington*, 358 B.R. 248, 252 (E.D.N.C. 2006) ("Although some courts construe section 157(b)(5)'s use of the term 'tried' to mean that a

14

bankruptcy court may resolve pre-trial motions in such actions, this court believes that (absent consent) a district court should retain control over all aspects of personal tort injury claims under section 157."); *cf. PG&E.*, Dkt. No. 3671 (withdrawing reference for personal injury claims arising from wildfires).

Again, the alternative to withdrawal is a multi-level process, duplication of judicial resources, and further delay. As the court recognized in PG&E, when the stakes are this high and estimation of personal injury claims is mandated by section 502(c), the most efficient and appropriate path forward involves an Article III court. The Debtors' plan here is a classic cap and run strategy—Abuse Claims are channeled to a trust with insufficient funding with the BSA leaving behind a legacy of unremedied pain and suffering. Cause exists to withdraw the reference under 28 U.S.C. § 157(d).

## **NOTICE**

Notice of this Motion will be provided to the following parties: (a) the Debtors; (b) the U.S. Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Ad Hoc Committee of Local Councils; (e) counsel to JPMorgan Chase Bank National Association; (f) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (g) any other party that has requested notice pursuant to Bankruptcy Rule 2002. The Movants submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## **CONCLUSION**

For the foregoing reasons, the Movants respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 17, 2020
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert S. Brady*
Robert S. Brady (Bar No. 2847)
Edwin J. Harron (Bar No. 3396)
Sharon M. Zieg (Bar No. 4196)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
  eharron@ycst.com
  szieg@ycst.com

*Counsel to the Future Claimants' Representative*

– and –

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
James I. Stang (CA Bar No. 94435)
Iain A.W. Nasatir (CA Bar No. 148977)
John A. Morris (NY Bar No. 2405397)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No.271038)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: jstang@pszjlaw.com
  inasatir@pszjlaw.com
  jmorris@pszjlaw.com
  joneill@pszjlaw.com
  jlucas@pszjlaw.com

*Counsel for the Tort Claimants' Committee*

– and –

MONZACK MERSKY AND BROWDER, P.A.

*/s/ Rachel B. Mersky*
Rachel B. Mersky (DE No. 2049)
1201 North Orange Street, Suite 400
Wilmington, Delaware 19801
Telephone:  (302) 656-8162
Facsimile:  (302) 656-2769
E-mail:  rmersky@monlaw.com

– and –

BROWN RUDNICK LLP
David J. Molton, Esq.
Eric R. Goodman, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: dmolton@brownrudnick.com
Email: egoodman@brownrudnick.com

– and –

Sunni P. Beville, Esq.
Tristan G. Axelrod, Esq.
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Email: sbeville@brownrudnick.com
Email: taxelrod@brownrudnick.com

– and –

ROBBINS, RUSSELL, ENGLERT, ORSECK,
 UNTEREINER & SAUBER LLP
Lawrence S. Robbins*
Ariel N. Lavinbuk*
William J. Trunk*
Joshua S. Bolian*
2000 K Street NW, 4th Floor
Washington, DC 20006
Telephone:  202-775-4500
Email:  lrobbins@robbinsrussell.com
           alavinbuk@robbinsrussell.com
           wtrunk@robbinsrussell.com
           jbolian@robbinsrussell.com
* (motion to appear *pro hac vice* forthcoming)

*Counsel to the Coalition of Abused Scouts for Justice*

18