**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: April 15, 2021 at 10:00 a.m. (ET)<br>Objection Deadline: April 1, 2021 at 4:00 p.m. (ET) |

**DEBTORS' THIRD MOTION FOR ENTRY OF AN ORDER
EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO FILE
A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), extending the Debtors' exclusive periods to (a) file a chapter 11 plan (the "Exclusive Filing Period") by 152 days, to and including August 18, 2021, and (b) solicit votes thereon (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") by 153 days, to and including October 18, 2021. In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Debtors' restructuring has entered its most crucial phase. As the Court stated during the March 17, 2021 omnibus hearing, the Debtors' dual restructuring objectives must be achieved: "Victims need to be compensated appropriately and the Boy Scouts' mission needs to

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

continue." Hr'g Tr. 49:4–5 (Mar. 17, 2021). The Court ascribed "paramount" importance to these objectives and observed that "progress needs to be made" in advance of the April 29 disclosure statement hearing. *See id.* 49:4, 49:16–19. The Debtors could not agree more, and they are focused on making significant further progress in mediation over the coming weeks, including at the in-person and virtual mediation meetings to be held on March 30, 31 and April 1.

2.  During the four months since the Court last extended the Exclusive Periods, as discussed in detail below, the Debtors have made meaningful progress toward achieving their restructuring objectives. Nevertheless, much work remains to be done. For financial and other operational reasons, it remains vitally important that the Debtors maintain their timeline of emerging from bankruptcy by the end of summer 2021. Advancing these cases to the plan confirmation stage on the Debtors' timeline will be challenging even if they retain the exclusive right to file and solicit a plan. But it would be extremely difficult, if not impossible, for the Debtors to achieve the timely global resolution of Scouting-related abuse claims if creditors were permitted to file competing plans.

3.  The Debtors recently reached an important milestone in their restructuring: an agreement in principle with the official committee of unsecured creditors (the "Creditors' Committee") and the Debtors' prepetition secured lender, JPMorgan Chase Bank, N.A ("JPM"). *See First Mediators' Report* [D.I. 2292] (the "First Mediators' Report"). This settlement, which is detailed in the term sheet appended to the First Mediators' Report (the "JPM / Creditors' Committee Settlement"), addresses the treatment of prepetition non-abuse general unsecured claims and JPM's prepetition secured claims. The JPM / Creditors' Committee Settlement also resolves certain claims that the Creditors' Committee could have sought standing to assert on behalf of the estates.

4.  On March 1, 2021, the Debtors filed an amended plan of reorganization, a related disclosure statement, and a motion to approve solicitation procedures. In addition to incorporating the terms of the JPM / Creditors' Committee Settlement, the amended plan specifies certain of the assets that will be contributed to a settlement trust for the benefit of abuse survivors. Specifically, in addition to contributing their significant insurance rights under policies dating back to 1935, the Debtors have proposed to contribute to the settlement trust assets with an aggregate value of up to $178 million. The Debtors have also committed to ensuring that the non-debtor local councils contribute assets with an aggregate value of at least $300 million, in addition to local councils' own significant insurance rights.

5.  The filing of the amended plan was a necessary step toward emergence from chapter 11. But the Debtors are acutely aware, and the Court has observed, that certain key elements of a global resolution remain undetermined. *See* Hr'g Tr. 48:8–17 (Mar. 17, 2021). These elements include trust distribution procedures, potential settlements with the Debtors' insurers, the nature, timing, and definitive amount of local council trust contributions, and the identity of contributing chartered organizations and their respective trust contributions. Not all of these elements must be finalized to obtain approval of the disclosure statement or to solicit votes on the amended plan, but the Debtors are continuing to work tirelessly in mediation—on a near-daily basis—to negotiate the comprehensive terms of a settlement that can be implemented through a confirmable plan of reorganization.

6.  Permitting creditors to file competing plans now would derail, if not destroy, the Debtors' efforts to negotiate and implement a global resolution of abuse claims and emerge from bankruptcy with the ability to continue carrying out their vital charitable mission. These chapter 11 cases have been bitterly contested, and there is little doubt that termination of the Exclusive

Periods at this stage would run counter to the best interests of the estates and creditors. The premature termination of the Exclusive Periods would unleash boundless litigation and deplete tens of millions of dollars from the estates that would otherwise be used to fund a settlement trust for abuse survivors. As the Court made clear at the March 17, 2021 omnibus hearing, the nearly $100 million of professional fees that have been expended in this non-profit case "is a staggering number," and "every dollar to professional fees is a dollar that comes out of some creditor's pocket." Hr'g Tr. 49:2–3, 49:19–21 (Mar. 17, 2021). Termination of the Exclusive Periods could also easily eviscerate the Debtors' ability to successfully reorganize altogether, depriving future generations of young men and women of the opportunity to participate in Scouting.

7. Although they continue to face significant challenges and have not yet coalesced around an approach to a global resolution, the Debtors, their creditor constituents, insurers, and other parties have made significant progress in mediation to date. Since the November 16, 2020 bar date, they have analyzed the data from more than 95,000 timely filed abuse claims and spent countless hours exchanging their views on a myriad of issues relating to the resolution of such claims. It has been a mere two weeks since the First Mediators' Report announced the JPM / Creditors' Committee Settlement. The Debtors believe that the mediation will continue to produce additional meaningful results, and the mediators agree, having recently stated that they "are confident that the Mediation will foster additional constructive discussions between and among the Debtors and other Mediation Parties" and that they "do not consider the Mediation to be closed." First Mediators' Report at 2. The ongoing mediation should be permitted to continue without undue disruption while the Debtors pursue approval of the disclosure statement and confirmation of the amended plan. For these reasons, the Court should grant the requested extensions of the Exclusive Periods.

**STATUS OF CASES AND JURISDICTION**

8. The Debtors commenced these cases on February 18, 2020 (the "Petition Date"), and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

9. On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of tort claimants (the "Tort Claimants' Committee") and the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code. On April 24, 2020, the Court appointed James L. Patton, Jr. as the legal representative of future abuse claimants (the "Future Claimants' Representative") pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code. No trustee has been appointed in these chapter 11 cases.

10. The Court has extended the Exclusive Periods on two previous occasions at the Debtors' request. On July 9, 2020, the Court entered an order extending the Exclusive Filing Period to October 15, 2020 and the Exclusive Solicitation Period to December 15, 2020 [D.I. 996]. On October 30, 2020, the Court entered an order further extending the Exclusive Filing Period to March 19, 2021 and the Exclusive Solicitation Period to May 18, 2021 [D.I. 1606].

11. On March 1, 2021, the Debtors filed the *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2293] (the "Amended Plan") and the *Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2294] (the "Disclosure Statement"). The Debtors

concurrently filed a motion seeking approval of the Disclosure Statement and procedures for soliciting votes on the Amended Plan [D.I. 2295] (the "Solicitation Procedures Motion").

12. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory and other bases for the relief requested in this Motion are section 1121(d) of the Bankruptcy Code and Local Rule 9006-2.

## RELIEF REQUESTED

14. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (a) extending the Exclusive Filing Period by 152 days, to and including August 18, 2021, and (b) extending the Exclusive Solicitation Period by 153 days, to and including October 18, 2021.[2] These extensions would be coextensive with the maximum 18-month and 20-month extensions of the Exclusive Filing Period and Exclusive Solicitation Period, respectively, that the Court may grant under section 1121(d)(2)(B) of the Bankruptcy Code.

---

[2] Pursuant to Local Rule 9006-2, "if a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order." This Motion is filed before the expiration of the current Exclusive Periods. Accordingly, the Exclusive Periods are automatically extended until the Court acts on this Motion.

**BASIS FOR RELIEF**

15. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan—*i.e.*, the Exclusive Filing Period. Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has a 180-day period from its petition date to solicit acceptances of such plan—*i.e.*, the Exclusive Solicitation Period. As a result of the two previous extensions granted by the Court, the current Exclusive Filing Period and Exclusive Solicitation Period will expire on March 19, 2021 and May 18, 2021, respectively.

16. Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for "cause." *See* 11 U.S.C. § 1121(d). The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for whether cause exists to extend the Exclusive Periods. The legislative history of section 1121 of the Bankruptcy Code, however, indicates that Congress intended to afford debtors sufficient time to negotiate with creditors, win support for a plan, and ultimately survive as an enterprise. *See* H.R. Rep. No. 95-595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (indicating that "cause should be interpreted "to allow the debtor to reach an agreement"); *accord In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003) (noting that so long as the debtors give the court "no reason to believe that they are abusing their exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted").

17. In exercising its broad discretion to determine whether cause exists to extend the Exclusive Periods, it is well established that the Court may consider various factors based on the totality of the circumstances. *See, e.g.*, *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*,

64 B.R. 963, 965 (D. Del. 1986) ("Section 1121(d) provides the Bankruptcy Court with flexibility to either reduce or increase that period of exclusivity in its discretion."); *In re Burns & Roe Enters., Inc.*, Case No. 00-41610 (RG), 2005 WL 6289213, *3 (D.N.J. Nov. 2, 2005) ("Whether or not to grant an extension of exclusivity is a matter of discretion based on all facts and circumstances, and a bankruptcy court has broad discretion to determine what is sufficient cause in each individual case.") (internal quotation marks and citations omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity"). These factors include, without limitation:

(a) the size and complexity of the case;

(b) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) whether the debtor is paying its debts as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in its negotiations with creditors;

(g) the amount of time that has elapsed in the case;

(h) whether the debtor is not seeking to extend exclusivity in order to pressure creditors to accede to the debtor's reorganization demands; and

(i) the existence of an unresolved contingency.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y.1987); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664–65 (Bankr. E.D. Mich. 1997) (identifying the foregoing factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended). Not all of these factors are relevant in every case, and a court may consider a relevant subset of factors to

determine whether cause exists to extend the Exclusivity Periods. *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether cause existed to extend exclusivity); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in determining that cause existed to extend exclusivity).

18. Here, application of the foregoing factors demonstrates that ample cause exists for the Court to grant the requested extensions of the Exclusive Periods. These extensions are necessary and appropriate for the Debtors to have the full opportunity contemplated by the Bankruptcy Code to negotiate the definitive terms of their chapter 11 plan—including modifications to the Amended Plan filed by the Debtors on March 1, 2021—and solicit acceptances thereof.

**I.    The Debtors' Cases Are Complex, and the Debtors Require Sufficient Time to Continue to Negotiate Critical Components of the Amended Plan in Good Faith.**

19. The extraordinary complexity of these chapter 11 cases supports the Debtors' requested extensions of the Exclusive Periods. Indeed, the size and complexity of a debtor's case alone can support a determination that cause exists to extend the Exclusive Periods. *See In re Express One Int'l, Inc.*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco, Inc.*, 76 B.R. 322, 325–27 (Bankr. S.D.N.Y. 1987) (holding that cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).

20. The Debtors' chapter 11 cases present unique and complex challenges and involve groups of stakeholders with divergent perspectives. The Debtors' restructuring is also unprecedented: these chapter 11 cases are the first filed by a congressionally chartered non-profit organization. Moreover, the COVID-19 pandemic, which had not yet been declared as of the

9

Petition Date, has had an unforeseen and pronounced negative effect on the Debtors' operations, including an 81% membership recruitment decline in 2020 attributable to school closures and social distancing measures. Despite these and other significant challenges, the Debtors have accomplished a great deal since the Court's most recent extensions of the Exclusive Periods to advance these cases toward plan confirmation, including:

(a) filing the Amended Plan, the Disclosure Statement, and the Solicitation Procedures Motion;

(b) as a result of successful mediation, entering into the JPM / Creditors' Committee Settlement, the terms of which are incorporated into the Amended Plan;

(c) standardizing and analyzing the data from the more than 95,000 abuse claims filed by the November 16, 2020 bar date;

(d) engaging in daily discussions and negotiations with the other mediation parties regarding complex legal and factual issues that must be addressed in connection with a global resolution of abuse claims;

(e) designating nine (9) additional individual or groups of stakeholders as mediation parties, for a total of twenty-six (26) mediation parties as of the date hereof;

(f) obtaining two critical four-month extensions of the preliminary injunction that bars the continuation or commencement of abuse litigation against non-debtor local councils, chartered organizations, and certain other related entities, on terms negotiated among the Debtors, the Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Ad Hoc Committee"), the Creditors' Committee, and the Tort Claimants' Committee;

(g) working closely with the Ad Hoc Committee to ensure local council compliance with the information and reporting protocols imposed by the Creditors' Committee and the Tort Claimants' Committee as a condition to the extension of the preliminary injunction;

(h) submitting to mediation the claims that are the subject of the Tort Claimants' Committee's January 8, 2021 adversary complaint (Adv. Pro. No. 21-50032);

(i) continuing to conduct extensive diligence regarding certain assets of the Debtors' estates and local councils, including further "insurance archaeology" to determine the existence and extent of historical insurance coverage;

(j)  cooperating with creditors and other stakeholders, including the Coalition of Abused Scouts for Justice, the Creditors' Committee, the Future Claimants' Representative, the Tort Claimants' Committee, and the Debtors' numerous insurers on complex diligence and informal discovery issues, including participation in meet-and-confer calls, question-and-answer sessions, and the review and production of a significant volume of responsive documents and other information;

(k)  completing specialized valuations of each high-adventure facility owned or operated by the Debtors, which facilities are located in Florida, Minnesota, New Mexico, West Virginia and the Canadian provinces of Manitoba and Ontario;

(l)  completing appraisals of more than 240 real properties owned by local councils in connection with local councils' contemplated contributions to the settlement trust under the Amended Plan;

(m)  as a result of successful mediation, resolving via stipulation the Tort Claimants' Committee's motion to enforce the automatic stay against a local council that transferred property to an investment trust following the commencement of these cases;

(n)  making significant progress on reconciling non-abuse general unsecured claims, including the filing of four omnibus claims objections and two notices of satisfaction;

(o)  obtaining entry of several orders approving settlements of wrongful death or non-abuse personal injury claims; and

(p)  obtaining entry of an order further extending the period within which the Debtors may remove civil actions under 28 U.S.C. § 1452.

21.  Granting the requested extensions of the Exclusive Periods at this stage of the restructuring will continue to provide the Debtors with a full and fair opportunity to continue to negotiate the remaining elements of the Amended Plan without the distraction, cost, and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.")

(citation and internal quotation marks omitted). Accordingly, each of the first three factors listed above weigh in favor of the Court granting the relief requested herein.

**II.    The Debtors are Paying Required Post-Petition Debts as They Come Due.**

22.    The Debtors are continuing to make timely payments of their undisputed post-petition obligations and have sufficient liquidity to continue to do so through the culmination of the extended Exclusive Periods requested herein. Accordingly, this factor weighs in favor of granting the Debtors' requested extensions of the Exclusive Periods.

**III.    The Amount of Time that has Elapsed in these Chapter 11 Cases.**

23.    Although thirteen (13) months has elapsed in these cases, similar extensions are frequently granted in cases of this size and comparable complexity. *See*, *e.g.*, *In re Imerys Talc Am., Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del. June 26, 2020), Docket No. 1942 (extending the exclusive periods for a fifth time more than sixteen (16) months after the petition date); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. March 1, 2021), Docket No. 2433 (extending the exclusive periods a fourth time more than seventeen (17) months after the petition date). Moreover, plan negotiations were not able to begin in earnest until after the November 16, 2020 bar date—just four months ago—when all of the relevant parties were able to begin analyzing the 95,000 timely filed abuse claims. Finally, if the Court grants the relief requested herein, this will be the Debtors' final request for extensions of the Exclusive Periods. *See* 11 U.S.C. § 1121(d)(2)(B). Accordingly, the Debtors' requested extensions of the Exclusive Periods is appropriate.

**IV.    The Debtors Are Not Seeking to Extend Exclusivity to Pressure Creditors to Accede to the Debtors' Demands, and Creditors are Not Prejudiced by the Extensions.**

24.    To confirm the Amended Plan, the Debtors must obtain broad-based support from holders of abuse claims. Accordingly, the Debtors are requesting these extensions of the Exclusive

Periods because they are necessary to finalize the undetermined elements of the Amended Plan, resolve pending disputes, and ultimately garner overwhelming support for the Amended Plan. Without the requested extensions of the Exclusive Periods, the Debtors could not continue to effectively engage in ongoing mediated negotiations with their creditors, insurers, and other key stakeholders due to the distraction and potentially irreparable damage to the Debtors' restructuring efforts that would be caused by a competing plan process. Accordingly, this factor also weighs in favor of granting the requested extensions of the Exclusive Periods.

### V. Reaching Agreements with Creditors as to Certain Key Terms of a Confirmable Plan Remains an "Unresolved Contingency."

25. As noted above, certain key elements of the Amended Plan are presently unresolved. Accordingly, the requested extensions of the Exclusive Periods are warranted to permit the Debtors to reach agreement with their creditors regarding these remaining contingencies.

### VI. Additional Factors Support Extensions of the Exclusive Periods.

26. Termination of the Exclusive Periods would undermine the Debtors' efforts to obtain approval of a global settlement of Scouting-related abuse claims through the Amended Plan. Allowing parties to file alternative plans and disclosure statements now would frustrate the ongoing mediated negotiations regarding the Amended Plan, without any clear benefit to the estates. Moreover, in light of the Debtors' current liquidity constraints and continuing operational uncertainty as the pandemic hopefully subsides, termination of the Exclusive Period could also jeopardize the Debtors' ability to successfully restructure altogether.

27. At the same time, the Debtors' requested extensions of the Exclusive Periods will not prejudice any party in interest. These extensions will not affect any party in interest's rights to oppose approval of the Disclosure Statement or confirmation of the Amended Plan. Conversely,

failure to obtain the requested extensions of the Exclusive Periods would defeat the very purpose of section 1121 of the Bankruptcy Code: to afford the debtor a meaningful opportunity to negotiate with creditors and confirm a chapter 11 plan of reorganization. For the reasons stated herein, cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

## NOTICE

28. Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to the Coalition of Abused Scouts for Justice; (vii) counsel to JPM; (viii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and any further relief the Court may deem just and proper.

| | |
|---|---|
| Dated: March 18, 2021<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Eric W. Moats*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@morrisnichols.com<br>         aremming@morrisnichols.com<br>         emoats@morrisnichols.com<br>         ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone:  (212) 819-8200<br>Email:  jessica.lauria@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>Laura E. Baccash (admitted *pro hac vice*)<br>Blair M. Warner (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone:  (312) 881-5400<br>Email: mandolina@whitecase.com<br>        mlinder@whitecase.com<br>        laura.baccash@whitecase.com<br>        blair.warner@whitecase.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |