IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 2427 & 2428** |

**DEBTORS' RESPONSE TO (I) MOTION OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE FOR ORDER REQUIRING THAT MEDIATION BE CONDUCTED EXCLUSIVELY BY ZOOM AND (II) MOTION TO SHORTEN NOTICE PERIOD AND SCHEUDLE HEARING ON THE MOTION OF THE OFFICIAL TORT CLAIMANTS' COMMITTEE FOR ORDER REQUIRING THAT MEDIATION BE CONDUCTED EXCLUSIVELY BY ZOOM**

The Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), hereby file this response (this "Response") to (i) the *Motion of the Official Tort Claimants' Committee for Order Requiring that Mediation Be Conducted Exclusively by Zoom* [D.I. 2427] (the "Emergency Mediation Motion") and (ii) the *Motion to Shorten Notice Period and Schedule Hearing on the Motion of the Official Tort Claimants' Committee for Order Requiring that Mediation Be Conducted Exclusively by Zoom* [D.I. 2428] (the "Motion to Shorten"). In support of this Response, the Debtors respectfully state as follows.

1. The COVID-19 pandemic has created challenging circumstances for parties to negotiate a timely resolution of these chapter 11 cases. But all parties must adapt and make the best of imperfect conditions. As stated by the Court at the March 17, 2021 omnibus hearing, the Court

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

expects all Mediation Parties[2] to attend the mediation sessions being held from March 30 to April 1, 2021, "whether attending in person or attending via Zoom," because "progress needs to be made. Victims need to be compensated appropriately and the Boy Scouts' mission needs to continue." *See* Mar. 17, 2021 Hr'g Tr. 48:24–49:7 (an excerpt of the transcript is attached hereto as **Exhibit A**). Notwithstanding the Court's direction, and that the Mediators have made clear that the upcoming Mediation will be virtual, the Tort Claimants' Committee now seeks the extraordinary and perhaps unprecedented relief of precluding certain Mediation Parties from exercising their right to meet in a location and manner of their choosing. The Emergency Mediation Motion serves only to waste estate resources and should be denied.

2. Following the March 17 hearing, the Mediators provided instructions to the Mediation Parties regarding the mediation sessions taking place at the end of this month. *See* Exhibit B. The Mediators sent a follow-up communication on March 21, 2021 that addressed concerns raised by certain Mediation Parties—including the Tort Claimants' Committee—regarding in-person attendance at the mediation. This communication clarified that: "**This will be a virtual mediation and we will have full Zoom capabilities for all Mediation Parties. In person-attendance is not required by any Mediation Party**. Certain parties would like to meet in person and the Mediators intend to accommodate such requests." *See* Exhibit C (emphasis in original).

3. The Tort Claimants' Committee ignores the clear instruction that in-person attendance is *not required*, using the words "require" or "requiring" repeatedly in the Emergency Mediation Motion. But there is absolutely no requirement for in-person participation. In addition,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* [D.I. 812], entered on June 9, 2020.

the Tort Claimants' Committee's assertion that it will be disadvantaged by optional in-person attendance at the virtual mediation sessions is unsupported by any evidence.

4. The Debtors and Mediators selected the Miami office of the Debtors' counsel as a voluntary in-person meeting place given the size of the office and conference room availability as well as the convenience of Miami to certain Mediation Parties who will already be present in Florida at the time of the mediation. In addition to the follow-up notice, the Mediators circulated to the Mediation Parties the Debtors' COVID-19 protocol and guidelines for any parties considering in-person participation. Based on the responses to date, the Debtors anticipate about 15–20 in-person participants.

5. The assertion that White & Case's Miami office is an unsafe meeting place based on weekend headlines about young people on spring break at Miami Beach spreading COVID-19 is unfounded. Miami Beach and Miami, Florida are separate municipalities. Miami Beach is located on a separate island from Miami over five miles away, and requires crossing a bridge from Miami. Moreover, Miami Beach authorities have curbed these spring break activities, and in any event such activities will end prior to the occurrence of any meeting in White & Case's Miami office, which is outside the throes of spring break activities.

6. The Debtors and the Mediators fully understand certain parties' preference to participate virtually given the current environment, but the Mediators also intend to accommodate requests of those Mediation Parties that wish to participate in person. There is no guidance issued by the Centers for Disease Control or Florida Department of Health that prohibits parties from traveling to Miami due to COVID-19. White & Case's COVID-19 protocol complies with federal and state guidelines related to social distancing, the wearing of facemasks, and other appropriate hygienic measures.

7. This Court appropriately admonished the Mediation Parties at the March 17 hearing to "make good use of the mediators and the mediation session," and to "bring your toothbrushes and be prepared to come to a resolution." Mar. 17, 2021 Hr'g Tr. 63:23–64:3, Ex. A. The Mediators, in consultation with the Debtors, are seeking to employ the most effective means to facilitate a resolution. There are presently 26 Mediation Parties, certain of whom have expressed a preference to voluntarily meet in person. The Court should not prevent these parties from exercising their preference because the Tort Claimants' Committee believes it will be disadvantaged by electing to participate by Zoom.

8. Moreover, the relief requested by the Tort Claimants' Committee—that "[t]he March 30, 2021 – April 1, 2021 Mediation shall be conducted exclusively by Zoom"—is effectively an injunction prohibiting the Mediation Parties from meeting in person. Any request for injunctive relief must be the subject of an adversary complaint filed under Bankruptcy Rule 7065. Not only has the Tort Claimants' Committee failed to comply with these procedural requirements by commencing an adversary proceeding, but the Emergency Mediation Motion makes no attempt to demonstrate that the requirements for this type of extraordinary injunctive relief are met. *See, e.g.*, *Honeywell Int'l, Inc. v. N. Am. Refractories Asbestos Personal Injury Tr.* (*In re N. Am. Refractories Co.*), 542 B.R. 350, 356 (Bankr. W.D. Pa. 2015) ("Preliminary injunctive relief is an 'extraordinary remedy' that should be granted only in limited circumstances, and never as of right." (quoting *Groupe SEB USA, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192, 197 (3d Cir. 2014))).[3]

9. The Mediators support the Debtors' position in this Response, and—although a hearing on this Motion is not necessary and would be a further drain on the Debtors' dwindling

---

[3] In order to obtain such relief, a party must establish (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm absent the preliminary relief, (iii) that the balance of equities tip in its favor, and (iv) that a preliminary injunction is in the public interest. *Id.* The failure to establish any of these elements can render an injunction inappropriate. *Id.* at 356–57.

resources—wish to be heard should the Court elect to hear this matter. For these reasons, the Court should deny the Tort Claimants' Committee's requested relief without the need for a hearing so that the parties may roll up their sleeves—whether in person or by videoconference, according to their preference—and work toward a resolution with alacrity.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court deny the relief requested in the Emergency Mediation Order and the Motion to Shorten without need for a hearing.

*[Remainder of Page Intentionally Left Blank]*

| | |
|---|---|
| Dated: March 23, 2021<br>Wilmington, Delaware | **MORRIS, NICHOLS, ARSHT & TUNNELL LLP**<br><br>*/s/ Paige N. Topper*<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Eric W. Moats (No. 6441)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 658-9200<br>Email: dabbott@morrisnichols.com<br>      aremming@morrisnichols.com<br>      emoats@morrisnichols.com<br>      ptopper@morrisnichols.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Jessica C. Lauria (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: jessica.lauria@whitecase.com<br><br>– and –<br><br>**WHITE & CASE LLP**<br>Michael C. Andolina (admitted *pro hac vice*)<br>Matthew E. Linder (admitted *pro hac vice*)<br>Laura E. Baccash (admitted *pro hac vice*)<br>Blair M. Warner (admitted *pro hac vice*)<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 881-5400<br>Email: mandolina@whitecase.com<br>      mlinder@whitecase.com<br>      laura.baccash@whitecase.com<br>      blair.warner@whitecase.com<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |