**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | ) ) | Case No. 20-10343 (LSS) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |
| | ) | Re: D.I. 2293 and 2294 |

**OBJECTION OF CERTAIN CLAIMANT AS TO THE ADEQUACY OF
DEBTORS' DISCLOSURE STATEMENT
<u>IN SUPPORT OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION</u>**

CLAIMANT NO. 39334 ("Claimant"), by Claimant's counsel, Christopher A. Kreid of Christopher A. Kreid & Associates, LLC and Raeann Warner of Jacobs & Crumplar, P.A. and The Neuberger Firm, P.A., objects to the sufficiency and adequacy of the Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Disclosure Statement") (Dkt. No. 2294) for the following reasons:

**Failure to Disclose the Assets and Liabilities of Each Party Receiving a Release**

1. Claimant objects to the adequacy of the Disclosure Statement because it fails to provide sufficient information to make an informed decision on whether to (a) vote to accept or reject the Plan, which proposes a release of all local councils and may propose a release of charter organizations, or to (b) raise a "Best Interest of Creditors" objection.

2. The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that it seeks to retain. The same is true of Debtors' other assets, including investments. It is imperative that the Disclosure Statement provide the liquidation value or fair market value for each such property.

3. The Disclosure Statement does not include in its liquidation analysis the properties of the local councils. Under Debtors' governance documents, a local council's property reverts to Debtors if the local council's charter is not renewed. In a Chapter 7 liquidation of the Debtors, the Chapter 7 trustee presumably would not renew any local council charters. Since the properties revert to Debtors, the liquidation analysis must include the liquidation value of all real and personal property held by local councils.

4. The Disclosure Statement and the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Plan") (Dkt. 2293) fail to provide any property valuation information for a creditor to determine if any local council is making a substantial contribution that warrants a release and channeling injunction. Any such valuation must include the liquidation or fair market value of the assets of each local council that will be released, including any justification by a local council for asserting that an asset is unavailable to pay its creditors (e.g., donor restricted), how many childhood sexual abuse claims implicate each local council, and how much each local council is contributing in exchange for a release of such childhood sexual abuse claims.

5. Based on each local council's publicly available IRS Form 990 statements, the local councils have significant assets, including significant unrestricted assets. Even the IRS Form 990 statements undervalue the assets if the local council accounted for its real property using "book value" (e.g., the value it was worth at the time it was acquired) and not its current fair market value.

6. The Disclosure Statement and the Plan do not provide any property valuation information of any charter organization that will be released, including any justification by a charter organization for asserting that an asset is unavailable to pay creditors (e.g. donor

restricted), how many childhood sexual abuse claims implicate each charter organization, and how much each charter organization is contributing in exchange for a release of such childhood sexual abuse claims. Like the local councils, many of the charter organizations, such as the Methodist Church, Mormon Church, and Catholic Church have significant property and other financial assets that should be made available to address the injuries of the Claimants.

7. Claimants cannot make an informed decision to vote to accept or reject the Plan because the Disclosure Statement does not contain any information about the number of claims against each local council or charter organization, or any estimate of the value of such claims. To the extent that sexual abuse claims have not been filed against a local council or charter organization, Debtors should disclose whether they have any indemnification or contribution claims against each local council or charter organization.

8. Moreover, the Disclosure Statement fails to adequately explain how any contribution by non-Debtor entities, including local councils and charter organizations, will be utilized, including whether their contribution will be used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim against that entity.

9. The inadequacy of the Disclosure Statement is illustrated by the fact that Debtors state in the Plan that they are "committed" to ensuring the local councils collectively contribute at least $300 million, but they fail to disclose how much each council has available to contribute, how much each council is contributing, and how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council. This lack of basic information makes it impossible for the creditors to determine whether each council is making a substantial

contribution, to make an informed decision on whether to vote to accept or reject the Plan, which proposes to release each council, and to make an informed decision on whether to raise a "best interest of creditors" objection because the Plan fails to award them the liquidated value of their claim against all entities they are releasing.

**Failure to Disclose the Specific Entities to Be Released**

10. Claimant objects to the adequacy of the Disclosure Statement and the accompanying solicitation procedures because they fail to notify all Claimants which local council and/or charter organization is associated with their abuse, whether any such entity will receive a release, and if so, the terms of the release. If the Plan is designed to provide a release to non-Debtor third parties, such as the local councils and charter organizations, Debtors should identify each local council and charter organization and their relationship to each of the Claimants.

11. Certain Claimants have legal claims against the Debtor(s), a local council, and a charter organization. In certain proof of claim forms, Claimants made a good faith effort to identify the local council and/or charter organization that may be liable for the childhood sexual abuse they suffered that is the basis for their claim. However, Claimants were children when they were sexually abused. Due to the passage of time and/or the psychological effects of the abuse, many are unsure whether they have identified the correct entities and others were simply too young to recall the correct names today.

12. For those Claimants and other abuse survivors who do not know this information (between 40,000-60,000 proof of claim forms lacked this information), the information they need is largely within the purview of Debtor(s) and local councils, which possess the Scouting unit rosters (e.g., Boy Scout Troop rosters and Cub Scout Pack rosters), camp rosters, and adult

volunteer rosters. In prepetition litigation, this disclosure would generally occur through discovery that is currently barred by the preliminary injunction. Prior to the preliminary injunction, Claimant would normally issue discovery that demanded Debtor(s) and/or the local council to produce the roster(s) for Claimant's Scouting unit and/or camp so Claimant can find his name on the roster and confirm he has identified the correct local council and charter organization for his Scouting unit. If Claimant's name did not appear on a roster, which may have happened as a result of human error and/or if Claimant joined a Scouting unit during the annual registration process, Claimant could review the roster to see if Claimant recognized the names of other children or adults on the roster. If so, Claimant could contact some of the other members of the Scouting unit to see if any had a memory of Claimant being a part of that Scouting unit. If not, Claimant would work with Debtor(s) and/or the local council to determine whether Claimant identified the wrong Scouting unit and appeared on the roster of a different Scouting unit. In addition to rosters, Claimant would also ask Debtor(s) and/or local council in discovery to produce the charter for Claimant's Scouting unit so Claimant could confirm the correct charter organization(s) that chartered Claimant's Scouting unit, particularly if Debtor(s) and local council no longer had rosters for the Scouting unit.

13.    If Claimant was unable to obtain records that confirm Claimant has identified the correct local council and/or charter organization, Claimant would ask Debtor(s) and/or the local council for a "person most knowledgeable" deposition concerning the local council and/or charter organization who was responsible for Claimant's Scouting unit so that Claimant could confirm that Claimant has identified the correct local council and/or charter organization for that Scouting unit. If Claimant believes he may know the correct local council or charter organization, Claimant would ask for any and all documents that organization has about

Claimant's Scouting unit and Claimant would ask the organization for a "person most knowledgeable" deposition to confirm Claimant identified the correct local council and/or charter organization.

14. The Claimant has not been able to pursue the above discovery because the preliminary injunction prohibits Claimant from pursuing any litigation against Debtor(s), local councils, and charter organizations. Nothing under the Plan provides a mechanism by which Claimant can confirm he has identified the correct local council and/or charter organization before a release is given to those entities.

**Failure to Disclose Insurance Coverage Risks**

15. Claimant objects to the adequacy of the Disclosure Statement because it fails to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars. The Disclosure Statement barely makes a passing note that the insurers have asserted coverage defenses, and Debtor(s) make no effort to evaluate those risks. Beyond the coverage risks associated with the Debtor(s)' prepetition conduct, Debtors fail to discuss any risk associated with the proposed assignment of all of the insurance of Debtors, the local councils, and participating charter organizations to a trust, including any risk associated with the anti-assignment clauses in such policies. If the Plan's assignment violates the anti-assignment clauses, the insurance coverage could disappear.

**Failure to Disclose How Insurance Policies Will Be Utilized**

16. Claimant objects to the adequacy of the Disclosure Statement because it fails to explain how the proceeds of any insurance policies assigned to the trust will be utilized. Claimant is entitled to know how the proceeds of any policies will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative

expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy.

17. For example, if a Claimant has a $1 million childhood sexual abuse claim against the Mormon Church, the Mormon Church presumably has sufficient assets to pay the full value of that claim. In an insurance buy-back scenario, the insurers and the insured will insist that the insured receives a release of all current and future claims against the insured, otherwise the insured would be without insurance on those claims, would still be responsible for the defense costs on those claims, and would still be at risk for a judgment on those claims. Claimant is entitled to know whether they will be required to release all of their claims against all insureds in order to effectuate a buy back of a given policy, and if so, how the proceeds of any such buy back will be utilized. In the foregoing example, the hypothetical Claimant is entitled to know whether he will be required to release a claim worth $1,000,000 against the Mormon Church to effectuate a "buy back" of a policy that names the Mormon Church as an insured. Moreover, the hypothetical Claimant is entitled to know whether his share of the sale price of the policy could be a small fraction of the value of his claim against that defendant.

18. Claimant needs to know this information to determine whether each non-Debtor who is released is making a substantial contribution and whether the "best interests" test is met by that contribution.

**Failure to Disclose the Contribution of Insurers and Their Insureds**

19. Claimant objects to the adequacy of the Disclosure Statement because it fails to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release.

20. As noted above, nearly every Claimant has a legal claim against a local council and a charter organization. In addition to Debtors, a local council was responsible for all Scouting units in its geographic region, including handling and processing complaints against Scout leaders for allegedly sexually abusing children and ensuring that each Scouting unit abided by policies and procedures to protect children from foreseeable harm. These local councils, the "eyes and ears" of Debtor(s), were often amongst the parties who neglected to protect the children in their care from foreseeable harm.

21. In turn, a charter organization was responsible for staffing and supervising the adult volunteers of a Scouting unit, like a Boy Scout Troop or Cub Scout Pack, and were amongst the parties who neglected to protect the child members of a Scouting unit from foreseeable harm. The leaders of the charter organizations, including the Scout leaders who the charter organization appointed to oversee its Scouting unit(s), were often amongst those to receive complaints that another Scout leader was sexually abusing children in the Scouting unit, or saw the "red flags" or warning signs that another Scout leader was sexually abusing children in the Scouting unit, but neglected to take steps to protect the children from that danger.

22. Many of the local councils and charter organizations face significant liability, and many have substantial assets that are available to compensate abuse survivors, including Claimants who have valid claims against them.

23. Claimant objects to the adequacy of the Disclosure Statement because it fails to specify what contribution the local councils and/or charter organizations will have to make to receive a release, including a contribution above and beyond their rights under insurance policies. Claimant needs to know this information to determine whether each entity who is

receiving a release, including any local council or charter organization, is making a substantial contribution and whether the "best interests" test is met by that contribution.

**The Scope of this Bankruptcy Necessitates Transparency Regarding the Handling of Insurance Policies**

24.     As it stands, the Plan would provide Claimant an average settlement payment of $6,000, or less, from Debtor(s) and the local councils, which are partly justified by the assignment of insurance policies.  The average award could be significantly lower--if non-existent--after administrative expenses.  Claimant must have sufficient information to evaluate the risks of the Plan if Claimant is to release multiple non-Debtor entities.  As filed, the Disclosure Statement falls far short of the Bankruptcy Code's standard for its approval.

**Joinder to the Objection to the Disclosure Statement by the Tort Claimants' Committee**

25.     Additionally, Claimant joins the objection(s) to the Disclosure Statement filed by the Tort Claimants' Committee.

Dated: April 1, 2021                                    Respectfully submitted,

                                                        JACOBS & CRUMPLAR, P.A.

                                                By:   /s/ Raeann Warner
                                                        Raeann Warner (#4931)
                                                        JACOBS & CRUMPLAR, P.A.
                                                        Attorneys for Claimant
                                                        750 Shipyard Drive, Suite 200
                                                        Wilmington, DE 19801
                                                        302.656.5445

                                                        CHRISTOPHER A. KREID &
                                                            ASSOCIATES, LLC
                                                        Christopher A. Kreid
                                                        CHRISTOPHER A. KREID &
                                                        ASSOCIATES, LLC
                                                        Attorneys for Claimant
                                                        530 Kedzie St.

Evanston, IL 60202
847.869.0400
Bar No. 6194430

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing **Objection of Certain Claimant as to the Adequacy of Debtors' Disclosure Statement in Support of Amended Chapter 11 Plan of Reorganization** was electronically filed with the Clerk of Court for the United States Bankruptcy Court, District of Delaware via CM/ECF system on this 1st day of April 2021, and thereby served upon counsel of record.

/s/ *Raeann Warner*
Raeann Warner
