**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Proposed Hearing Date: Apr. 12, 2021 3:00 pm ET**<br><br>**Proposed Obj. Deadline: Apr. 12, 2021 3:00 pm ET** |

**CENTURY'S MOTION TO ADJOURN**
**THE DISCLOSURE STATEMENT HEARING**

Pursuant to Bankruptcy Rule 3017(a), Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**") together with the joining insurers[2] respectfully request that the Court adjourn the Disclosure Statement Hearing now scheduled for April 29, 2021 to allow for the statutorily required 28 days' notice from the time a complete Plan is made available for review (the "**Motion to Adjourn**"). In support of this Motion to Adjourn, Century and the joining insurers respectfully state the following:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Clarendon American Insurance Company and Travelers Casualty and Surety Company join the Motion to Shorten and Motion to Adjourn.

**PRELIMINARY STATEMENT**

1. Century and the joining insurers honored the letter and spirit of the Court's directive by making decision makers available to attend the Miami mediation. However, the moving insurers were excluded from *all the meetings* held among the BSA, Local Councils, and Coalition on the terms of a plan. As a consequence, multiple lawyers and business people sat in electronic waiting rooms for days over the course of March 30 to April 1 without being summoned to a single meeting between BSA and the Coalition beyond an opening 30-minute session.

2. The bottom line is that the insurers are in the dark as to terms being formulated behind closed doors between the Coalition and BSA making compliance with the statutory 28 days' notice period required by Bankruptcy Rule 3017(a) all the more important. The public threats made by Mr. Kosnoff—examples of which have been put before the Court in Century's supplemental Rule 2019 motion—further call for compliance with the rule. Under these circumstances, there is enormous concern that the Debtors will acquiesce to just about any terms sought to prejudice insurers in exchange for favorable treatment of BSA's assets.

3. The plan of reorganization now on file is the same one that Debtors filed on March 1 [Dkt. 2293] (the "Plan") that they openly refer to as a placeholder.[3] The Plan is missing all the sections that govern how tort claims are to be allowed and what they are to be paid. The Trust Distribution Procedures, Settlement Trust, and a host of other critical plan documents all dealing with the procedures for reviewing, allowing, and valuing claims are missing.

---

[3] In discussing the then-upcoming mediation and the Debtors' Plan, BSA's counsel, Jessica Lauria, conceded that the submitted plan was incomplete, stating: "Now we are, Your Honor, keenly aware that we are not there yet. We also saw the flurry of . . . plan response pleadings . . . [and] the sentiments that were expressed in those filings the debtors are also frustrated that we're not there yet." *See* 03/17/21 Omnibus Hr'g Tr. at 13:9-14; *see id.* at 13:14:13–18 ("Your Honor, we know we have a lot of wood to chop. I don't think it's the entire forest, as some people in this case would have you believe, but we know we have a lot of wood to chop. We have got a process to resolve that and we need -- from the debtors' perspective we need to let that process play out.").

4. Under Bankruptcy Rule 3017(a), the Court may only hold a hearing to approve a disclosure statement on "at least 28 days' notice" to parties-in-interest. Per Rule 3017(d), "Section 1125(c) of the Code requires that ***the entire approved disclosure statement*** be provided in connection with voting on a plan." *See* Comment to Rule 3017(d). As core sections of the Plan were excluded, the Disclosure Statement cannot lawfully be set for hearing until the Debtors file a Plan and Disclosure Statement that sets out how claims are to be allowed and valued, what assets are to be used to pay them, and how and under what procedures the claims will be paid.

5. While debtors may sometimes submit modified plans and disclosure statements shortly before hearings, responding to objections that were filed, this is not even a remotely similar situation.

6. ***First,*** the Debtors openly state in their schedule that they do not intend to provide the Plan documents that govern how claims are to be allowed and paid and a host of other critical information until June 14, 2021, nearly two months *after* the presently scheduled April 29 Disclosure Statement Hearing and just *two weeks* before the dates that the Debtors propose for a Voting Deadline and Plan Objection Deadline.

7. ***Second***, the placeholder Plan now on file represents a lack of consensus among the key stakeholders in these cases. On April 1, 2021, the day after the Miami mediation, the Tort Claimants' Committee filed an objection to the continuation of exclusivity, objecting to the terms proposed for a plan of reorganization.[4] *See* The Official Committee of Tort Claimants' Objection to Debtors' Third Motion for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof [Dkt. 2506]. Meanwhile, Century and the bulk

---

[4] *See also* Tort Claimants' Committee Response to First Mediators' Report [Dkt. 2297]. The Future Claimants' Representative and Coalition joined in that response, echoing the Tort Claimants' Committee's complaints. [Dkt. 2305, 2319]

of insurers are in the dark as to the terms having been excluded from BSA's meetings with the subgroup of entities calling themselves the "Coalition" on the formulation of a plan.

8. ***Third,*** if and when a Plan is filed that contains all the components of a mass tort plan of reorganization, it is likely to be the first time Century and the joining insurers will have seen it. The Debtors did not share a draft of the Plan or Disclosure Statement with Century and the joining insurers before filing it on March 1.

9. In a mass tort bankruptcy, the terms for allowing and paying claims are the core of any plan of reorganization without which there is not a plan of reorganization, as this Court recognized at the March 17 Omnibus Hearing.[5] The Plan is also missing the sections identifying the contributions to the Settlement Trust by the Local Councils and Contributing Chartered Organizations who are protected parties. These sections are essential to a mass tort plan. On top of this, the sections that address the treatment of JPMorgan and unsecured commercial creditors are either missing or not agreed upon.

## RELIEF REQUESTED

10. By this Motion to Adjourn, Century and the joining insurers respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), adjourning the Disclosure Statement Hearing currently scheduled for April 29, 2021, to a date 28 days after the Debtors have filed, at a minimum, the Settlement Trust Agreement and Trust Distribution Procedures.[6]

---

[5] *See* 03/17/21 Omnibus Hr'g Tr. at 48:8–20 (Judge Silverstein: "The concern I have with going forward with the disclosure statement at this point is because I don't see some very necessary information and documents, quite frankly, that I would want to see at a disclosure statement, including the TDPs. Those who are involved in Imerys with me know that I did not send out that disclosure statement until we had TDPs. They can be negotiated or they can not be negotiated. But there's -- but I think -- and think this plan has that gap in it, where parties don't know what, in fact, the treatment is going to be. So, for very practical reasons, I think it's difficult, perhaps, to go forward with that hearing in mid-April.").

[6] At the last conference, the Debtors stated that a disclosures statement hearing could be pushed back

**BASIS FOR RELIEF REQUESTED**

11. The Debtors filed their Plan on March 1 and originally noticed a Disclosure Statement Hearing for April 15, 2021. A mere two weeks later, the Debtors admitted on the record that noticing the hearing for April 15 was a mistake and unrealistic. *See* 03/17/21 Omnibus Hr'g Tr. at 16:6-18 (Debtors' counsel, Jessica Lauria stating that the April 15 date "will be very difficult for a disclosure statement hearing. We fully acknowledge that, but we want to stay within the overall timeline. So if the date needs to move for the disclosure statement we understand that, but we would ask that it not be moved by much because I think we've got momentum in the mediation right now."). Thus, the Disclosure Statement Hearing was moved to April 29, 2021.

12. Nothing has changed between the March 17 hearing and now that replaces the Debtors' placeholder Plan with an actual plan of reorganization or that cures the Debtors' failure to provide the statutory required 28 days' notice for a disclosure statement for such plan.

13. The Debtors' Plan on file lacks the basic and rudimentary information central to a mass tort plan of reorganization: how will the Abuse Claims be allowed and valued. At least two critical documents—the Settlement Trust Agreement and the Trust Distribution Procedures—are missing as well as other basic information about the Settlement Trust Assets. And, based on the proposed schedule, the Debtors do not intend to file the missing documents until June 14, 2021, with the Plan Supplement, a mere two weeks before the Voting Deadline and Plan Objection Deadline. *See* Solicitation Procedures Motion, at 3–4.

---

into May without prejudice to the Debtors. *See id.* at 46:22–25, 47:1–21 (discussing moving the disclosure statement hearing, Debtors' counsel Jessica Lauria stated: "So, again, if the Court is inclined to move that date, we would say only move it by a very little bit because we do believe we need to come in front of the Court, potentially in the near term . . . . You know, I would say two weeks, two to four weeks. I know we have an omnibus mid-May, I think it's May 15th, if I'm not mistaken, or thereabouts.").

14. Without the Settlement Trust Agreement and Trust Distribution Procedures, the Disclosure Statement is devoid of the very substance claimants needed to evaluate the Plan and, therefore, fails to provide creditors and other interest holders with sufficient information about the Plan. The Court should adjourn the Disclosure Statement Hearing to a date that is at least 28 days after the Debtors file the Settlement Trust Agreement and the Trust Distribution Procedures.

### A. Without the Settlement Trust Documents, the Disclosure Statement Is Incomplete and Does Not Contain Adequate Information.

15. A disclosure statement must contain adequate information to enable a hypothetical investor to make an informed judgment about the plan to which the disclosure statement relates. *See* 11 U.S.C. § 1125(b). The provision of adequate information in a disclosure statement is a key requirement of the Bankruptcy Code. *See, e.g., Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988)). As filed, the Disclosure Statement is missing critical information that creditors need to determine whether to vote in favor of or against the Plan.

16. The Debtors claim that a primary purpose of the Plan is to "provide holders of Abuse Claims with an equitable, streamlined, and certain process by which they may obtain compensation, by channeling the Abuse Claims asserted against the Debtors and certain other Protected Parties, including the Local Councils and the Contributing Chartered Organizations" to the Settlement Trust. Solicitation Procedures Motion, ¶ 10. Even a cursory review of the Disclosure Statement, however, reveals that it does not contain adequate information about the Settlement Trust and how the Abuse Claims will be reconciled.

17. The Debtors omitted the Trust Distribution Procedures—a key component of the Plan—when they filed the Disclosure Statement and Plan.[7] The Disclosure Statement notes that the Abuse Claims will be satisfied by the Settlement Trust in accordance with the Trust Distribution Procedures, which will, among other things, "establish a methodology for resolution of Abuse Claims, establish the process by which Abuse Claims will be reviewed by the Settlement Trust, and specify liquidated values for compensable claims based on the underlying abuse." *Id.* ¶ 14. But the Disclosure Statement does not even provide an overview of the Trust Distribution Procedures or any of the key components of the Trust Distribution Procedures, like reconciliation procedures or details about how Abuse Claims will be satisfied by the Settlement Trust. Because parties will rely on the Disclosure Statement when considering how to vote on the Debtors' Plan, the "importance of full and honest disclosure cannot be overstated." *See, e.g.*, *Santiam-Midwest Lumber Co.*, 81 F.3d at 362.

18. The Debtors commenced these chapter 11 cases to address the potential liability arising from Abuse Claims but then filed a Plan without the sections that explain how the Debtors will determine which Abuse Claims are allowed and how those claims will be valued. A Plan that is centered around claims resolution through a Settlement Trust cannot be considered filed until the Debtors file the documents governing the Settlement Trust and the claim resolution process. That information is essential for parties reviewing the Disclosure Statement to understand the proposed treatment of Abuse Claims under the Plan. Until they are filed, the Plan and Disclosure Statement are just a shell.

---

[7] While not an asbestos plan, the Settlement Trust as disclosed falls far short of the requirements under Bankruptcy Code § 524(g), 524(g)(2)(b)(ii)(V), which requires a trust to process claims "through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms."

19. As the Court stated at the March 17, 2021 Omnibus Hearing:

> The concern I have with going forward with the disclosure statement at this point is because I don't see some very necessary information and documents, quite frankly, that I would want to see at a disclosure statement, including the TDPs. Those who are involved in Imerys with me know that I did not send out that disclosure statement until we had TDPs. They can be negotiated or they can not be negotiated. But there's -- but I think -- and think this plan has that gap in it, where parties don't know what, in fact, the treatment is going to be. So, for very practical reasons, I think it's difficult, perhaps, to go forward with that hearing in mid-April.

03/17/17 Omnibus Hr'g Tr. at 48:8–20.

20. That same logic equally applies to the April 29 Disclosure Statement Hearing because nothing has changed since the March 17 hearing. The same defects exist.

21. The Plan is materially incomplete in other ways too. For example, the Debtors failed to adequately identify the non-debtor contributions to the Settlement Trust. The payment of Abuse Claims is exclusively from the Settlement Trust, which will be funded by the Debtors, Local Councils, Contributing Chartered Organizations, and any Settling Insurance Companies in exchange for being included as Protected Parties under the Plan. The filed Plan and Disclosure Statement, however, do not indicate what these Protected Parties, other than the Debtors, will contribute to the Settlement Trust. The only specific information about the Settlement Trust Assets in the Plan is that the Local Councils will contribute an amount "not less than $300,000,000." Plan, Exh. D. It does not specify the form of that contribution, how that contribution will be allocated among the Local Councils (who face varying degrees of liability from Abuse Claims), or the conditions attached to that contribution.

22. Moreover, while the Disclosure Statement outlines a proposed settlement with JPMorgan and the Unsecured Creditors Committee, that settlement is opposed by the Tort Claimants' Committee. *See* Tort Claimants' Committee Response to First Mediators' Report,

[Dkt. 2297]. Within a few days after the Mediation Report was filed, the Tort Claimants' Committee, the Future Claimants' Representative, and the Coalition objected to the proposed settlement. [Dkt. 2297, 2305, 2319]

B. **The Court Must Adjourn the Disclosure Statement Hearing until a Date that Is 28 Days After the Debtors File a Complete Disclosure Statement.**

23. The Disclosure Statement Hearing must be adjourned because, based on the proposed schedule, the Debtors will not provide a complete Disclosure Statement within the statutory minimum amount of time for the Court to consider the adequacy of a disclosure statement. In fact, the Debtors seek approval before they even start to provide any of that critical information. Under Bankruptcy Rule 3017(a), the Court may only hold a hearing to approve a disclosure statement on "at least 28 days' notice" to parties-in-interest. Per Rule 3017(d), "Section 1125(c) of the Code requires that ***the entire approved disclosure statement*** be provided in connection with voting on a plan." *See* Comment to Rule 3017(d) (emphasis added). As these core sections of the Plan were excluded, the Disclosure Statement cannot lawfully be set for hearing until the Debtors file a Plan and Disclosure Statement that sets out how claims are to be allowed and valued.

24. The Debtors cannot satisfy these requirements by April 29, thus necessitating an adjournment of the Disclosure Statement Hearing. Without the Settlement Trust Agreement and Trust Distribution Procedures, the Disclosure Statement does not have sufficient information about the process by which Claimants may obtain payment for their Claims—one of the "core objectives" identified by the Debtors. In fact, under their proposed schedule, the Debtors will not file those documents until June 14, 2021, approximately two months after the Disclosure Statement Hearing and merely two weeks before the Voting Deadline and Plan Objection Deadline. There is no Plan for parties to consider without the Settlement Trust Documents. Only after that

information is available would it be appropriate to consider approving the Disclosure Statement. Accordingly, and in accordance with Bankruptcy § 1125, the Court should adjourn the Disclosure Statement Hearing to a date after those documents are filed and parties are given an opportunity to review them.

25. Recently, this Court granted a similar request to adjourn the disclosure statement hearing in *Imerys*, where the debtors filed their disclosure statement on May 15, 2020 without the trust distribution procedures and the trust agreement. In October, the debtors continued making material changes to the Trust Distribution Procedures and settled with some insurers and other parties, dramatically amending the plan and disclosure statement on the eve of several hearings to approve the disclosure statement. This Court refused to consider the disclosure statement on such short notice, adjourning the hearing until parties had an opportunity to see the documents. *See* Transcript of Telephonic Conference at 45:16–48:4, *In re Imerys Talc America, Inc.*, *et al.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Oct. 7, 2020). This case presents an even more compelling case for adjourning the disclosure statement, as the Debtors do not intend to file the Settlement Trust Agreement and the Trust Distribution Procedures until two weeks before the Voting Deadline and Plan Objection Deadline, which is two months *after* the Disclosure Statement Hearing.

26. Finally, the Debtors cannot claim prejudice by this request. Century and the joining insurers could have waited until April 16 to object to the Disclosure Statement as lacking adequate information under Bankruptcy Code § 1125(b). Since the Debtors would not have filed the Plan Supplement by then, it is likely that objection would have succeeded. Rather than waste another week, Century and the joining insurers proactively filed this Motion to Adjourn to conserve estate

and judicial resources and to give the Debtors an opportunity to file a complete Plan and Disclosure Statement that parties can evaluate fairly.

### C. The Substantive and Statutory Rights of the Parties Cannot Be Trampled to Meet the Debtors' Preferred Schedule.

27. While adjourning the April 29 Disclosure Statement Hearing may cause some slight delay, any delay is entirely within the control of the Debtors. Likewise, the professional fees incurred by the estate are entirely within the control of the Debtors' counsel to manage. The Debtors have permitted upwards of 30 professionals to bill the estate at over $1,000 per hour, these accumulated professional fees are not some unforeseen act. Further, the Debtors have refused to implement basic steps to mitigate their fees and costs, such as imposing budget restrictions or shifting to an end-of-case holdback.

28. While the moving insurers are sensitive to concerns of efficiency, the Debtors should not trample the ***substantive rights*** of the parties to have 28 days' notice to review a complete plan of reorganization based on issues in their control.

## NOTICE

29. Notice of this motion has been provided to (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Tort Claimants' Committee; (e) counsel to the Future Claimants' Representative; (f) counsel to the Coalition; (g) counsel to the Ad Hoc Committee of Local Councils; and (g) all parties requesting notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002.[8] Century and the joining insurers submit that no other or further notice is necessary under the circumstances.

---

[8] This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The bases for the relief requested herein are section 105 of the Bankruptcy Code and Rule 3017(a) of the Federal Rules of Bankruptcy Procedure.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Century and the joining insurers respectfully request that the Court grant the relief requested herein and enter the Proposed Order adjourning the Disclosure Statement Hearing until a date after the Debtors file the Settlement Trust Agreement and the Trust Distribution Procedures.

*Remainder of Page Intentionally Left Blank*

Dated: April 9, 2021

Respectfully Submitted,

By: /s/ *Stamatios Stamoulis*
Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile: 302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile: 212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

# EXHIBIT A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] Debtors. | Chapter 11 Case No. 20-10343 (LSS) (Jointly Administered) |
|---|---|

**[PROPOSED] ORDER GRANTING CENTURY'S EMERGENCY MOTION TO ADJOURN THE DISCLOSURE STATEMENT HEARING**

Upon consideration of the emergency motion to adjourn (the "**Motion to Adjourn**")[2] filed by counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"), and the joining insurers for entry of an order adjourning the Disclosure Statement Hearing now scheduled for April 29 to allow the statutorily required 28 days' notice for the hearing, pursuant to Bankruptcy Rule 3017(a), all as fully set forth in the Motion to Adjourn; and due and sufficient notice of the Motion to Adjourn having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion to Adjourn and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion to Adjourn and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court's entry of a final order

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to those terms in the Motion to Adjourn.

being consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been scheduled and, to the extent necessary, held to consider the relief requested in the Motion to Adjourn (the "**Hearing**"); and upon the record of the Hearing (if any was held) and all of the proceedings before the Court; and the legal and factual bases set forth in the Motion to Adjourn and at the Hearing (if any was held) having established just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion to Adjourn is GRANTED as set forth herein.

2. The Disclosure Statement Hearing shall be adjourned from April 29, 2021 at 10:00 a.m. (ET) to a date that is at least 28 days after the Debtors file the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures and the sections of the Plan that describe the contributions by the Local Councils and Contributing Chartered Organizations.

3. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. The Court shall retain exclusive jurisdiction over matters pertaining to this Order.