**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>ebtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 2293 and 2294** |

### OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT IN SUPPORT OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION

On March 1, 2021, the Debtors filed an Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (Dkt. No. 2293) ("the Plan"), and a Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Disclosure Statement") (Dkt. No. 2294).

The Claimants represented by the LOCKS LAW FIRM (the LOCKS LAW FIRM Claimants")[1] are survivors of childhood sexual abuse who each filed a Sexual Abuse Survivor Proof of Claim. As reflected in their individual proof of claim, the story of each of these survivors is unique, including how they were sexually abused, how the abuse affected them, and the circumstances that led to the abuse. As a group, their proof of claims reflect abuse that occurred between approximately 1979 and 1982, and that their ages ranged from approximately 11 to 12 years old. The sexual abuse they suffered includes touching, groping, masturbation, oral copulation/sex and penetration.

Many of the LOCKS LAW FIRM Claimants have claims against non-Debtor entities, including a local council and a charter organization. For example, Jonathan Stone and Richard

---

[1] *See* attached Appendix A, which lists the Sexual Abuse Survivor Proof of Claim numbers for the LOCKS LAW FIRM Claimants.

Danner have identified claims against George Washington Council, Troop 148 and Scout Master George Ulmer, Sr.  As noted below, many of these non-Debtor entities may have significant assets and their own insurance separate and apart from any insurance maintained by the Debtors.

Even without the benefit of discovery, which has been stayed due to the preliminary injunction, some of these claims against non-Debtor entities are strong and compelling.  For example, Claimant JONATHAN STONE'S proof of claim (Claim Number: 33786) indicates that his Scouting unit was within the jurisdiction of GEORGE WASHINGTON COUNCIL and that the local council likely knew or should have known that they were in danger of being sexually abused because one of the sexual abusers was the Scoutmaster's son and the abuses took place at the Scoutmaster's house as well as the Yards Creek Scout Reservation in Blairstown, NJ.

As further example, Claimant RICHARD DANNER'S proof of claim (Claim Number: 36609) indicates that his Scouting unit was within the jurisdiction of GEORGE WASHINGTON COUNCIL and that the local council likely knew or should have known that they were in danger of being sexually abused because one of the sexual abusers was the Scoutmaster's son and the abuses took place at the Scoutmaster's house as well as the Yards Creek Scout Reservation in Blairstown, NJ.

The LOCKS LAW FIRM Claimants object to the sufficiency and adequacy of the Disclosure Statement for the following reasons:

**A.  Failure to Disclose the Assets and Liabilities of Each Party Receiving a Release**

1.     The LOCKS LAW FIRM Claimants object to the adequacy of the Disclosure Statement because it fails to provide them with sufficient information to make an informed decision on whether (a) to vote to accept or reject the Plan, which proposes a release of all local

councils and may propose a release of charter organizations, or (b) to raise a "Best Interest of Creditors" objection.

2.      The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that the Debtors seek to retain. The same is true of the Debtors' other assets, including investments.  It is imperative that the Disclosure Statement provide the liquidation value or fair market value for each such property.

3.      The Disclosure Statement does not include in its liquidation analysis the properties of the local councils.  Under the Debtors' governance documents, a local council's property reverts to the Debtors if the local council's charter is not renewed.  In a Chapter 7 liquidation of the Debtors, the Chapter 7 trustee presumably would not renew any local council charters.  Since the properties revert to the Debtors, the liquidation analysis must include the liquidation value of all local council real and personal property.

4.      The Disclosure Statement and the Plan fail to provide any property valuation information for a creditor, including the LOCKS LAW FIRM Claimants, to determine if each local council is making a substantial contribution that warrants a release and channeling injunction.  Any such valuation must include the liquidation or fair market value of the local council's assets, including any justification by a council for asserting that an asset is unavailable to pay its creditors (e.g., donor restricted), how many childhood sexual abuse claims implicate the local council, and how much the local council is contributing in exchange for a release of such childhood sexual abuse claims.

5.      Based on each local council's publicly available IRS Form 990 statements, each local council has significant assets, including significant unrestricted assets.  Moreover, if a local

council accounted for its real property using "book value" (e.g., the value it was worth at the time it was acquired) and not its current fair market value, its IRS Form 990 statements likely *undervalue* its total assets given the length of time most of these councils have existed and the property holdings they have acquired over that time.

6.    The Disclosure Statement and the Plan do not provide any property valuation information of any charter organization that will be released, including any justification by a charter organization for asserting that an asset is unavailable to pay creditors (e.g. donor restricted), how many childhood sexual abuse claims implicate each charter organization, and how much each charter organization is contributing in exchange for a release of such childhood sexual abuse claims.  Like the local councils, many of the charter organizations, such as the Methodist Church, Mormon Church, and Catholic Church, have significant real property and other assets.

7.    The LOCKS LAW FIRM Claimants cannot make an informed decision to vote to accept or reject the Plan because the Disclosure Statement does not contain any information about the number of claims against each local council or charter organization, or any estimate of the value of such claims.  To the extent that sexual abuse claims have not been filed against a local council or charter organization, the Debtors should disclose whether they have any indemnification or contribution claims against each local council or charter organization.

8.    The Disclosure Statement also fails to adequately explain how any contribution by non-Debtor entities, including local councils and charter organizations, will be utilized, including whether their contribution will be used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim against that entity.

9.      The inadequacy of the Disclosure Statement is illustrated by the fact that the Debtors state in the Plan that they are "committed" to ensuring the local councils collectively contribute at least $300 million, but they fail to disclose how much each council has available to contribute, how much each council is contributing, and how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council.  This lack of basic information makes it impossible for creditors, including the LOCKS LAW FIRM Claimants, to determine whether each council is making a substantial contribution, to make an informed decision on whether to vote to accept or reject the Plan, which proposes to release each council, and to make an informed decision on whether to raise a "Best Interest of Creditors" objection because the Plan fails to award them the liquidated value of their claim against all entities they are releasing.

**B.  Failure to Disclose the Specific Entities to Be Released**

10.      The LOCKS LAW FIRM Claimants object to the adequacy of the Disclosure Statement and the accompanying solicitation procedures because they fail to notify creditors, including the LOCKS LAW FIRM Claimants, which local council and/or charter organization is associated with their abuse, whether any such entity will receive a release, and if so, the terms of the release.  If the Plan is designed to provide a release to non-Debtor third parties, such as the local councils and charter organizations, the Debtors should identify each local council and charter organization and their relationship to each of the creditors, including the LOCKS LAW FIRM Claimants.

11.      Most of the creditors who filed a Sexual Abuse Survivor Proof of Claim form, including the LOCKS LAW FIRM Claimants, have legal claims against the Debtors, a local council, and a charter organization.  In their proof of claim forms, the LOCKS LAW FIRM

Claimants made a good faith effort to identify the local council(s) and/or charter organization(s) that may be liable for the childhood sexual abuse they suffered that is the basis for their claim. However, the LOCKS LAW FIRM Claimants were children when they were sexually abused. Due to the passage of time and/or the psychological effects of the abuse, many of them are unsure whether they have identified the correct entities and others were simply too young to recall the correct names today.

12.     For the LOCKS LAW FIRM Claimants and other abuse survivors who do not know this information (between 40,000-60,000 proof of claim forms lacked this information), the information they need is largely within the purview of the Debtors and local councils, which possess the Scouting unit rosters (e.g., Boy Scout Troop rosters and Cub Scout Pack rosters), camp rosters, and adult volunteer rosters.  In prepetition litigation, this disclosure would generally occur through discovery that is currently barred by the preliminary injunction.  Prior to the preliminary injunction, the LOCKS LAW FIRM Claimants would normally issue discovery that demanded the Debtors and/or local council(s) produce the roster(s) for the Claimant's Scouting unit and/or Scout Camp so the Claimant can find their name on the roster and confirm they have identified the correct local council(s) and charter organization(s) for their Scouting unit and/or Scout Camp.

13.     If a Claimant's name did not appear on a roster, which may have happened as a result of human error and/or if the Claimant joined a Scouting unit in-between the annual registration process, the Claimant could review the roster to see if the Claimant recognized the names of the other children or adults on the roster.  If so, the Claimant could contact some of the other members of the Scouting unit to see if they could corroborate that the Claimant was a member of the Scouting unit and/or attended the Scout Camp.  If not, the Claimant would work

with the Debtors and/or the local council(s) to determine whether the Claimant identified the wrong Scouting unit and appeared on the roster of a different Scouting unit.  In addition to rosters, the Claimant would also ask the Debtors and/or local council(s) in discovery to produce the charter for the Claimant's Scouting unit so the Claimant could confirm the correct charter organization(s) that chartered the Claimant's Scouting unit, particularly if the Debtors and local council(s) no longer had rosters for the Scouting unit.

14.     If the Claimant was unable to obtain records that confirm the Claimant has identified the correct local council(s) and/or charter organization(s), the Claimant would ask the Debtors and/or the local council(s) for a "person most knowledgeable" deposition about the local council(s) and/or charter organization(s) who were responsible for the Claimant's Scouting unit and/or the Scout Camp the Claimant attended so that the Claimant could confirm that the Claimant has identified the correct local council(s) and/or charter organization(s) for their Scouting unit and/or Scout Camp.  If the Claimant believes they may know the correct local council(s) and/or charter organization(s), the Claimant would ask for any documents those organizations have about the Claimant's Scouting unit and the Claimant would ask the organizations for a "person most knowledgeable" deposition to confirm the Claimant identified the correct local council(s) and/or charter organization(s).

15.     The LOCKS LAW FIRM Claimants have not been able to pursue the above discovery because the preliminary injunction prohibits the LOCKS LAW FIRM Claimants from pursuing any litigation against the Debtors, local councils, and charter organizations.  Nothing under the Plan provides a mechanism by which a Claimant can confirm the Claimant has identified the correct local council(s) and/or charter organization(s) before a release is given to those entities.

7

**C.  Failure to Disclose Insurance Coverage Risks**

16.      The LOCKS LAW FIRM Claimants object to the adequacy of the Disclosure Statement because it fails to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars.  The Disclosure Statement barely makes a passing note that the insurers have asserted coverage defenses, and the Debtors make no effort to evaluate those risks.  Beyond the coverage risks associated with the Debtors' prepetition conduct, the Debtors fail to discuss any risk associated with the proposed assignment of all of the insurance of the Debtors, the local councils, and participating charter organizations to a trust, including any risk associated with the anti-assignment clauses in such policies.  If the Plan's assignment violates the anti-assignment clauses, the insurance coverage could evaporate.

**D.  Failure to Disclose How Insurance Policies Will Be Utilized**

17.      The LOCKS LAW FIRM Claimants object to the adequacy of the Disclosure Statement because it fails to explain how the proceeds of any insurance policies assigned to the trust will be utilized.  The LOCKS LAW FIRM Claimants are entitled to know how the proceeds of any policies will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy.

18.      For example, if a Claimant has a $1 million childhood sexual abuse claim against the Mormon Church, the Mormon Church presumably has sufficient assets to pay the full value of that claim.  In an insurance buy-back scenario, the insurers and the insured will insist that the insured receives a release of all current and future claims against the insured, otherwise the insured would be without insurance on those claims, would still be responsible for the defense

costs on those claims, and would still be at risk for a judgment on those claims. The LOCKS LAW FIRM Claimants are entitled to know whether they will be required to release all of their claims against all insureds in order to effectuate a buy back of a given policy, and if so, how the proceeds of any such buy back will be utilized. In the foregoing example, the hypothetical Claimant is entitled to know whether he will be required to release a claim worth $1,000,000 against the Mormon Church to effectuate a "buy back" of a policy that names the Mormon Church as an insured. Moreover, the hypothetical Claimant is entitled to know whether his share of the sale price of the policy could be a small fraction of the value of his claim against that defendant.

19.    The LOCKS LAW FIRM Claimants need to know this information to determine whether each non-Debtor who is released is making a substantial contribution and whether the "best interests" test is met by that contribution.

**E.  Failure to Disclose the Contribution of Insurers and Their Insureds**

20.    The LOCKS LAW FIRM Claimants object to the adequacy of the Disclosure Statement because it fails to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release.

21.    As noted above, almost every Claimant has a legal claim against a local council and/or a charter organization. In addition to the Debtors, a local council was responsible for all Scouting units in its geographic region, including handling and processing complaints against Scout leaders for allegedly sexually abusing children and ensuring that each Scouting unit abided by policies and procedures to protect children from foreseeable harm. These local councils, the "eyes and ears" of the Debtors, were often amongst the parties who neglected to protect the children in their care from foreseeable harm.

22.     In turn, a charter organization was responsible for staffing and supervising the adult volunteers of a Scouting unit, like a Boy Scout Troop or Cub Scout Pack, and were also amongst the parties who neglected to protect the child members of a Scouting unit from foreseeable harm.  The leaders of the charter organization, including the Scout leaders who the charter organization appointed to oversee its Scouting unit(s), were often amongst those to receive complaints that another Scout leader was sexually abusing children in the Scouting unit, or saw the "red flags" or warning signs that another Scout leader was sexually abusing children in the Scouting unit, but neglected to take steps to protect the children from that danger.

23.     Many of the local councils and charter organizations face significant liability, and many have substantial assets that are available to compensate abuse survivors, including the LOCKS LAW FIRM Claimants who have a claim against them.

24.     The LOCKS LAW FIRM Claimants object to the adequacy of the Disclosure Statement because it fails to specify what contribution the local councils and/or charter organizations will have to make to receive a release, including a contribution above and beyond their rights under insurance policies.  The LOCKS LAW FIRM Claimants need to know this information to determine whether each entity who is receiving a release, including any local council or charter organization, is making a substantial contribution and whether the "Best Interests" test is met by that contribution.

## F. The Scope of this Bankruptcy Necessitates Transparency Regarding the Handling of Insurance Policies

25.     As it stands, the Plan would provide each Claimant an average of $6,000, or less, from the Debtors and the local councils, which they partly justify by the assignment of insurance policies.  The average award could be significantly lower, if non-existent, after administrative

expenses.  The LOCKS LAW FIRM Claimants must have sufficient information to evaluate the risks of the Plan if the LOCKS LAW FIRM Claimants are to release multiple non-Debtor entities.  As filed, the Disclosure Statement falls far short of the Bankruptcy Code's standard for its approval.

### G. Joinder to the Objection to the Disclosure Statement by the Tort Claimants' Committee

26.    The LOCKS LAW FIRM Claimants join the objection to the Disclosure Statement filed by the Tort Claimants' Committee.

Respectfully submitted,

Dated: April 13, 2021
Wilmington, Delaware

KASEN & KASEN, P.C.

*/s/ Jenny R. Kasen*
Jenny R. Kasen, Esq. (DE Bar No. 5849)
The Brandywine Building
1000 N. West Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 652-3300
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com

and


LOCKS LAW FIRM

*/s/ Jerry A. Lindheim*
Jerry A. Lindheim, Esq.
601 Walnut Street, Suite 720 East
Philadelphia, PA  19106
T:  215-893-3421
M: 215-285-9789
F:  215-893-3444
E-Mail:  jlindheim@lockslaw.com

*Counsel to the Locks Law Firm Claimants*

# APPENDIX A

The foregoing Objection to the Adequacy of Debtors' Disclosure Statement in Support of Amended Chapter 11 Plan of Reorganization was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by the Locks Law Firm.  The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim.

| 33786 | 36609 | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |