**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re:  Docket No. 2391 |

**OBJECTION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, A UTAH CORPORATION SOLE, TO MOTION OF THE FUTURE CLAIMANTS' REPRESENTATIVE, THE OFFICIAL COMMITTEE OF TORT CLAIMANTS, AND THE COALITION OF ABUSED SCOUTS FOR JUSTICE FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c), (I) AUTHORIZING AN ESTIMATION OF CURRENT AND FUTURE ABUSE CLAIMS AND (II) ESTABLISHING PROCEDURES AND SCHEDULE FOR ESTIMATION PROCEEDINGS**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ..............................................................................................1

OBJECTION.......................................................................................................................2

    I.      Estimation of Non-Debtor Claims Against a Non-Debtor Party Is an
           Unprecedented Use of Section 502(c) ................................................................2

    II.     The Proposed Discovery Process is Lengthy and Unworkable as It Would
           Relate to Non-Debtors ........................................................................................4

CONCLUSION....................................................................................................................8

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bitner v. Borne Chem. Co (In re Borne Chem. Co.)*,
16 B.R. 509 (Bankr. D.N.J. 1980) ...................................................................................2

*Kool, Mann, Coffee & Co. v. Coffey*,
300 F.3d 340 (3d Cir. 2002) ...........................................................................................2

*In re Specialty Prods. Holding Corp.*,
No. 10-11779, 2013 WL 2177694, (Bankr. D. Del. May 20, 2013) ................................3

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
139 S. Ct. 1652 (2019) ....................................................................................................3

*In re Federal-Mogul Glob., Inc.*,
330 B.R. 133 (D. Del. 2005) ...........................................................................................3

*In re Roman Catholic Archbishop of Portland in Or.*,
339 B.R. 215 (Bankr. D. Or. 2006) .................................................................................3

*In re PG&E Corp.*,
No. 19-30088 (Bankr. N.D. Cal. Aug. 21, 2019) ............................................................3

*In re Dow Corning Corp.*,
211 B.R. 545 (Bankr. E.D. Mich. 1997) ...................................................................... 4-5

*Garlock Sealing Techs. LLC*,
No. 10-31607 (Bankr. W.D.N.C. July 29, 2016) .............................................................4

*Owens Corning v. Credit Suisse First Bos.*,
322 B.R. 719 (D. Del. 2005) ...........................................................................................5

*In re Grand Traverse Dev. Co. Ltd. P'ship*,
147 B.R. 418 (Bankr. W.D. Mich. 1992) ..................................................................... 5-6

*In re Patriot Place, Ltd.*,
486 B.R. 773 (Bankr. W.D. Tex. 2013) ...........................................................................6

*Finova Grp., Inc. v. BNP Paribas (In re Finova Grp. Inc.)*,
304 B.R. 630 (D. Del. 2004) ...........................................................................................6

*Park v. Ahn*,
778 F. App'x 129 (3d Cir. 2019) .....................................................................................6

ii

*Bishop v. JP Morgan Chase & Co.*,
   No. 13-001-RGA, 2014 WL 1382393 (D. Del. Apr. 7, 2014)....................................................6

*ECEM Eur. Chem. Mktg. B.V. v. Purolite Co.*,
   451 F. App'x 73 (3d Cir. 2011) ...........................................................................................6

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
   470 F. Supp. 2d 435 (D. Del. 2007).......................................................................................7

## STATUTES

11 U.S.C.
   § 105(a) ...............................................................................................................................1
   § 157(b).................................................................................................................................5
   § 502(c) ........................................................................................................................... 1-2, 4

## RULES

Fed. R. Bankr. P. 9017 ...........................................................................................................6

Fed. R. Evid. 408 ............................................................................................................ 1, 6-8

US-DOCS\123156817RLF1 25117148v.1

The Church of Jesus Christ of Latter-day Saints, a Utah corporation sole (the "**Church**"), objects (the "**Objection**") to the *Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 11 U.S.C. §§ 105(a) and 502(c), (I) Authorizing an Estimation of Current and Future Abuse Claims and (II) Establishing Procedures and Schedule for Estimation Proceedings* [D.I. 2391] (the "**Estimation Motion**").[2]  In support of its Objection, the Church hereby asserts the following:

## PRELIMINARY STATEMENT

1.      The Estimation Motion is unprecedented in its scope and violates the plain language of Section 502(c) of the Bankruptcy Code.  There is no basis in law or equity for any court to estimate claims of non-debtors against non-debtors in a bankruptcy case as requested by the Estimation Motion.  Doing so here would not only prejudice non-Debtors in future litigation, but would also mark the first time any court (as far as the Church is aware) has attempted estimation of claims against non-debtors.

2.      The proposed estimation proceeding would result in discovery that targets inadmissible evidence under Federal Rule of Evidence 408.  Such evidence, although arguably discoverable, is inadmissible and would therefore cause extreme prejudice to non-Debtors, who are parties to ongoing mediation and settlement discussions, without the benefit of producing admissible evidence.  It would further result in the unnecessary expenditure of resources by non-Debtors and this Court in arguing, hearing, and deciding countless motions *in limine* and producing inadmissible evidence and materials.

3.      The Estimation Motion should be denied as it relates to non-Debtors.

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the Estimation Motion.

1

**OBJECTION**

**I.    Estimation of Non-Debtor Claims Against a Non-Debtor Party Is an Unprecedented Use of Section 502(c)**

4.      Section 502(c) of the Bankruptcy Code provides for the estimation of contingent and unliquidated claims against the debtor where liquidation would unduly delay the administration of the case. *See Bitner v. Borne Chem. Co (In re Borne Chem. Co.)*, 16 B.R. 509, 512 (Bankr. D.N.J. 1980) ("Where liquidation would unduly delay the closing of a case . . . § 502(c) 'requires that all claims ***against the debtor*** be converted into dollar amounts.'" (emphasis added) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 354, reprinted in 1978 U.S.C.C.A.N. 5787, 6310)).  Specifically, Section 502(c) states in relevant part:

> [t]here shall be estimated for purpose of allowance under this section –
> (1) any contingent or unliquidated claim, *the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.*

11 U.S.C. §502(c)(1) (emphasis added).  Indeed, the Third Circuit has stated that the "object" of estimation under Section 502(c) "is to establish the estimated value of a ***creditor's claim*** for purposes of formulating a reorganization plan." *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 347 (3d Cir. 2002) (emphasis added).

5.      Despite this limited and express purpose, Movants seek to have this Court or the District Court use Section 502(c) to estimate the claims of non-Debtor parties *against* other non-Debtor parties, which are neither claims against the Debtor nor claims of creditors in these chapter 11 cases.  Notably, Movants cite no authority where a court conducted an estimation trial over the

2

value of non-debtor claims against a non-debtor entity—nor is the Church aware of any case that stands for such a proposition.[3]

6.        Estimation of claims against non-Debtors would be highly prejudicial and provide no benefits to the administration of these chapter 11 cases.  Movants overlook the simple fact that the Church is neither a debtor nor a necessary participant in the Debtors' chapter 11 cases, and the Church cannot be compelled to participate or contribute to a trust under any plan proposal because the Church is not a debtor.  *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("The estate cannot possess anything more than the debtor itself did outside bankruptcy.").  While Debtors' current plan of reorganization ("**Plan**") may provide "Contributing Chartered Organizations" a path to obtain the protection of the "Channeling Injunction," the Church is not currently a Contributing Chartered Organization.  Nevertheless, Movants would have the Court or the District Court undertake an estimation of non-Debtor claims against a non-Debtor party on the basis that the Church *may* become a Contributing Chartered Organization.

7.        The real purpose of estimation here would be for claimants to obtain a judicial decision as to liability in a general fashion that would then be used against non-Debtor parties, such as the Church, in litigation of tort claims throughout the country.  This effect would result in exorbitant expense to the Debtors' estates, other interested parties, and ultimately the claimants. The Debtors' estates would receive no benefit from these expenditures because this Court's decision would be used to further claims against non-Debtors for the benefit of other non-Debtors

---

[3]    None of the cases cited by Movants involved an estimation of non-debtor claims against a non-debtor party.  *See In re Specialty Prods. Holding Corp.*, No. 10-11779, 2013 WL 2177694, at *1 (Bankr. D. Del. May 20, 2013) (estimating debtors' total aggregate liability for asbestos claims); *In re Federal-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) (estimating debtor Turner & Newall Limited and certain debtor subsidiaries' total aggregate liability for asbestos claims); *In re Roman Catholic Archbishop of Portland in Or.*, 339 B.R. 215, 224 (Bankr. D. Or. 2006) (debtor moved to estimate certain unresolved present sex abuse claims asserted against the estate); *In re PG&E Corp.*, No. 19-30088 (Bankr. N.D. Cal. Aug. 21, 2019) [D.I. No. 3091, 3648] (debtor moved to estimate the aggregate value of "Wildfire Claims" asserted against the estate).

US-DOCS\123156817RLF1 25117148v.1

and not these estates.   This dynamic is presumably why Movants suggest that the Estimation

Motion could foster a settlement, because the Church and other non-Debtor parties would face risk

of a highly prejudicial ruling that the economic stakeholders behind the Movants would seek to

use in countless tort actions.   Unsurprisingly, Movants do not explain why any delay, let alone

"undue" delay, would be caused to these cases from the liquidation of claims against a non-Debtor

party.   The Estimation Motion proposes an entirely wasteful and unprecedented expansion of

Section 502(c)—simply put, it is a grotesque attempt to stretch Section 502(c) far beyond its

purpose and use this Court and the estates' funds to acquire leverage against a non-Debtor party,

in a highly prejudicial manner that is neither supported by the case law nor in any way beneficial

to the Debtors' estates.

## II.     The Proposed Discovery Process is Unworkable as It Would Relate to Non-Debtors

8.     Estimation of claims against non-Debtors will require fact and expert discovery,

pre-trial motion practice and briefing, a trial, post-confirmation briefing, and entail appeal risk.

Estimation proceedings often require years of discovery leading up to multi-week trials.   *See*

*Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. July 29, 2016) [D.I. 5444] (issuing

a decision five months after a seventeen-day estimation trial that followed two years of discovery

and related litigation); *In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997)

("[R]egardless of the estimation method selected, for the process to have any semblance of fairness

it will necessarily involve hearings that would be quite lengthy and protracted.").

9.     These chapter 11 cases, and an estimation proceeding of non-Debtor claims related

thereto, is no different.   In fact, if allowed by this Court, these estimation proceedings will likely

require more resources and time commitment from this Court due to the complex nature of the

case, specific procedural hurdles, and the multitude of interested parties.   *First,* an estimation

proceeding related to a complex mass-tort case will necessarily involve analyses of various state

law claims.  *See Owens Corning v. Credit Suisse First Bos.*, 322 B.R. 719, 721 (D. Del. 2005) (noting that tort claims must be valued under state law).  *Second*, Movants have argued that the Estimation Motion must be heard by the federal District Court due to the jurisdictional limitations that Section 157(b) may impose on this Court.  As this Court has noted, the District Court has to "prioritize . . . the backlog of [the] criminal docket," which creates additional practical challenges for the proposed estimation process.  Tr. Telephonic Omnibus Hr'g Before Hon. Laurie Selber Silverstein, Mar. 17, 2021.  *Third*, there are a significant number of interested non-Debtor parties in these chapter 11 cases.  This Court "cannot countenance a valuation procedure that would place artificial time constraints on the parties' ability to properly present their cases."  *Dow Corning Corp.*, 211 B.R. at 563.  This is especially true—and unfair—as it relates to non-Debtors.  Given the amount of interested parties whose rights would necessarily be affected by these estimation proceedings, such a trial would require exorbitant resources and time from a range of interested parties, including the Debtors, the Coalition of Abused Scouts for Justice, the Future Claimants' Representative, the Official Committee of Tort Claimants, the Official Committee of Unsecured Creditors, the local councils, multiple chartered organizations, multiple insurers, and other parties.

10.    The Debtors have made clear, and this Court has recognized, that it must confirm a Plan by summer of 2021 or face a value-destructive liquidation process.  Even under the Movant's aggressive 111-day proposed discovery and briefing schedule, the estimation trial would not be held until September 2021 at the earliest, which does not account for any post-trial briefing and time for the court to issue an opinion.  This timeline would coincide with the expiration of the Debtors' maximum exclusivity period to file a plan in October 2021 and result in a potential competing plan process that will embroil the parties in litigation.  *See, e.g.*, *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 421 (Bankr. W.D. Mich. 1992) ("the filing of a competing

plan at this point in time would seriously erode the Debtors' chance of reaching confirmation");

*In re Patriot Place, Ltd.*, 486 B.R. 773, 810-11 (Bankr. W.D. Tex. 2013) (competing plan would

establish litigation trust that would advance "needless and wasteful litigation").

11.     Even if an estimation proceeding did move forward, the information likely to be

requested in connection with an estimation proceeding, such as analyses of past settlements and

projections of future settlements, will necessarily require the disclosure of information discussed

in connection with settlement negotiations and mediation.  Under the Federal Rules of Evidence,

such evidence is inadmissible for the purpose of proving the amount of disputed claims—which is

the basic purpose of the estimation process.  Fed. R. Evid. 408(a) ("**FRE 408**") (rendering

inadmissible evidence of a settlement offer or communications made during settlement

negotiations for the purposes of "prov[ing] or disprove[ing] the validity or amount of a disputed

claim or to impeach by a prior inconsistent statement or a contradiction.").[4]

12.     It is well settled that FRE 408 "prohibits the use of *all* statements made during

settlement negotiations" to prove the validity or amount of a disputed claim, not just offers to

settle.  *Park v. Ahn*, 778 F. App'x 129, 132-33 (3d Cir. 2019).  "Litigation need not be threatened

to trigger application of Rule 408," and negotiations related to any dispute are inadmissible.  *See*

*Bishop v. JP Morgan Chase & Co.*, No. 13-001-RGA, 2014 WL 1382393, at *3 (D. Del. Apr. 7,

2014); *see also ECEM Eur. Chem. Mktg. B.V. v. Purolite Co.*, 451 F. App'x 73, 77 (3d Cir. 2011)

(explaining that a dispute does not have to rise to the level of formal litigation, but can be "a mere

difference of opinion").  When there is doubt, "the district court should err on the side of excluding

compromise negotiations."  *ECEM Eur. Chem. Mktg. B.V.*, 451 F. App'x at 77.  Evidence of

---

[4]    Pursuant to Federal Rule of Bankruptcy Procedure 9017, the Federal Rules of Evidence apply to bankruptcy
       proceedings.  *Finova Grp., Inc. v. BNP Paribas (In re Finova Grp., Inc.)*, 304 B.R. 630, 636 (D. Del. 2004)
       (applying the Federal Rules of Evidence to a bankruptcy proceeding).

conduct or statements from mediation or past settlement negotiations are inadmissible "when it is

offered to prove the validity, invalidity or amount of a disputed claim." *Inline Connection Corp.*

*v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 444 (D. Del. 2007) (holding that evidence offered

by the defendant to show that defendant was willing to accept a one-time lump payment offer and

to provide a "reality check on the damages numbers" was inadmissible).

13.      Any evidence of statements or conduct made during the mediation is inadmissible

for the purpose of proving or disproving the validity or amount of the claims in the bankruptcy

proceedings.   Further, any statements made to individual claimants in connection with prior

settlements or negotiations will also be inadmissible.   The mediation is at the forefront of the

parties' mind and has subsumed these cases to date.   There is no doubt that the target of many of

the discovery requests directed towards non-Debtors will touch on settlement negotiations and

statements made during mediation.   For example, in connection with ongoing mediation, the

Church and various other interested parties have conducted analyses of claims valuations, provided

documentation related to past settlements, and responded to various inquiries from mediators.

However, this evidence, although potentially discoverable—and thus requiring the time and

attention of the interested non-Debtor parties—is inadmissible.   The result would be gross

prejudice to the non-Debtor parties that disclosed settlement materials, without the benefit of

producing admissible evidence.

14.      Moreover, this Court will be flooded with motions *in limine* challenging the

introduction of settlement evidence based on FRE 408 in connection with an estimation proceeding

that involves non-Debtors.   In order to exclude evidence based on FRE 408, a party typically files

a motion *in limine*.  *See, e.g.*, *Inline Connection Corp.*, 470 F. Supp. 2d 435.   These motions, of

course, expend significant judicial resources, especially in a mass tort case with so many interested

parties.    Thus, the estimation proceedings will waste resources on two fronts: (1) expending

unnecessary resources of the Court in hearing and deciding countless motions *in limine*; and (2)

expending unnecessary resources of interested non-Debtor parties on discovery of inadmissible

material.

### CONCLUSION

WHEREFORE, the Church (i) requests that the Court deny the Estimation Motion with

respect to non-Debtors and (ii) reserves all rights, claims, defenses, and remedies, including,

without limitation, to supplement and amend this Objection, to raise further and other objections,

to introduce evidence prior to or at any hearing regarding the Estimation Motion, to seek to

introduce documents or other relevant information in support of the positions set forth in this

Objection, and to raise any and all objections to the Estimation Motion.

US-DOCS\123156817RLF1 25117148v.1

Dated: April 15, 2021
     Wilmington, Delaware        /s/  Michael J. Merchant

**RICHARDS, LAYTON & FINGER, P.A.**
Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  merchant@rlf.com

- and -

**LATHAM & WATKINS LLP**

Jeffrey E. Bjork (admitted *pro hac vice*)
Deniz A. Irgi (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763
E-mail:  jeff.bjork@lw.com
       deniz.irgi@lw.com

- and -

Robert J. Malionek (admitted *pro hac vice*)
Adam J. Goldberg (admitted *pro hac vice*)
Madeleine C. Parish (admitted *pro hac vice*)
Benjamin A. Dozier (admitted *pro hac vice*)
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022-4834
Telephone: (212) 906-1200
E-mail: adam.goldberg@lw.com
       robert.malionek@lw.com
       madeleine.parish@lw.com
       benjamin.butzin-dozier@lw.com

9