**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. D.I. 2391** |

**DEBTORS' OBJECTION TO THE FUTURE CLAIMANTS' REPRESENTATIVE, THE OFFICIAL COMMITTEE OF TORT CLAIMANTS, AND THE COALITION OF ABUSED SCOUTS FOR JUSTICE'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. § 105(a) AND 502(c), (I) AUTHORIZING AN ESTIMATION OF CURRENT AND FUTURE ABUSE CLAIMS AND (II) ESTABLISHING PROCEDURES AND SCHEDULE FOR ESTIMATION PROCEEDINGS**

The Boy Scouts of America (the "BSA") and its affiliate Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this objection to the *Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 11 U.S.C. § 105(a) and 502(c), (I) Authorizing an Estimation of Current and Future Abuse Claims and (II) Establishing Procedures and Schedule for Estimation Proceedings* [D.I. 2391] (the "Estimation Motion" or the "Motion"), and respectfully represent as follows.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

## PRELIMINARY STATEMENT

1.        On April 13 and 14, 2021, the Debtors filed their amended Plan[2] and Disclosure Statement, setting out the refined framework for a Global Resolution Plan that, if confirmed, would resolve Direct Abuse Claims as against the Debtors, Local Councils, Contributing Chartered Organizations, Settling Insurance Companies, and certain related parties.  The Plan contemplates substantial contributions to the Settlement Trust of cash, investments, valuable insurance rights, and other property of the Debtors, Local Councils, Contributing Chartered Organizations, as well as the proceeds of potential settlements with Insurance Companies.  The Settlement Trust will, in turn, evaluate, liquidate and ultimately make equitable distributions to holders of compensable Direct Abuse Claims in accordance with the Trust Distribution Procedures.  Importantly, the Global Resolution Plan would safeguard the future of Scouting as a movement.  For these reasons, the Global Resolution Plan presents the Debtors' favored outcome.  If, however, holders of Direct Abuse Claims do not vote in sufficient number in support of the Global Resolution Plan or the provisions of the Plan applicable to the non-debtor releases contained in the Global Resolution Plan do not satisfy applicable legal requirements, then the Debtors will instead pursue the BSA Toggle Plan.  That would involve resolving the Direct Abuse Claims as to the Debtors and certain related parties only, and would not implement settlement agreements or involve the contributions from the nondebtor parties mentioned above, including Local Councils and Chartered Organizations.

2.        Although mediated negotiations have not yet resulted in an agreement among the Debtors and representatives of abuse survivors, the Debtors remain committed to these mediated

---

[2]    Capitalized terms used but not defined herein have the meanings set forth in the Plan or the Trust Distribution Procedures attached thereto as Exhibit A.  Capitalized terms used but not yet defined have the meanings later set forth herein.

negotiations, and they are confident additional progress will be made. In any event, under this Plan with its toggle component, the Debtors can achieve confirmation and timely emergence regardless of whether such settlements are reached. Additionally, the Plan and Disclosure Statement address key issues raised by the FCR, TCC, and Coalition in their Estimation Motion, and show why that Motion should not be granted:

3.    *First*, with the assistance of their claims expert, Bates White, the Debtors have already established and are refining an estimate of aggregate Abuse Claims. Indeed, Bates White estimates that the aggregate value of the 82,500 unique Abuse Claims is $2.4–$7.1 billion. As the Debtors obtain discovery and pursue other estimation-related procedures in connection with confirmation, Bates White anticipates a refined range providing further clarity.

4.    *Second*, if the Debtors are able to pursue their Global Resolution Plan, pursuant to Article V.T of the Plan, and as further set forth in the *Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* (the "Confirmation Scheduling Motion") also filed today, the Bankruptcy Court will conduct an estimation of the Debtors' aggregate liability on account of Direct Abuse Claims in accordance with the procedures set forth therein. The estimation will, among other things, provide a basis for the Bankruptcy Court and the parties to assess the value of the Direct Abuse Claims and whether the settlements proposed in the Plan should be approved under section 1123(b)(3)(A) of the Bankruptcy Code as fair, reasonable, and in the best interests of the estate.

5.    *Third*, the Debtors' Confirmation Scheduling Motion, which supplements other dates contemplated and set forth in the Plan and Disclosure Statement, presents the appropriate process and procedure for estimation in connection with confirmation. This includes both as it

pertains to the estimation methodology to be utilized and the schedule for discovery and other pre-hearing deadlines.

6.      The Plan, Disclosure Statement, and Confirmation Scheduling Motion make clear the Estimation Motion should be denied to allow the Debtors to focus on prosecuting their Plan and Disclosure Statement.  The Debtors' proposed schedule and procedures[3] are the best path forward to preserve estate assets to further their dual stated goals in these Chapter 11 Cases: to equitably compensate abuse survivors and emerge from bankruptcy to continue their important chartable mission.

7.      Not only is the Debtors' proposal favorable, the Movants' proposed estimation is also patently unreasonable and would unduly delay the administration of these Chapter 11 Cases. Under section 502(c) of the Bankruptcy Code, estimation is designed for the situation where liquidating a claim would cause undue delay; in other words, it is designed to combat delay, not promote it.  For that reason, the Movants' proposed estimation, which they ask be conducted as a prerequisite to consideration of the Disclosure Statement, and which they envision involving a number of variables that hopelessly complicate and threaten the reliability of the process, is not warranted.  Although the Motion alone would cause undue delay, to further complicate matters, the Movants have also sought to withdraw the reference, which indisputably would lead to further expense and delay, all frustrating rather than promoting prompt administration of these Chapter 11 Cases.  The Debtors oppose the withdrawal and will be filing an opposition with the District Court later today.

---

[3]    As explained in the Confirmation Scheduling Motion, the Debtors fully expect to consider comments from and meet and confer with other parties in interest regarding the proposed estimation protocol and confirmation schedule.

8.     The Movants' efforts to frustrate the Debtors' prosecution of their Plan through an unnecessary and unmanageable pre-disclosure statement estimation process is not proper. Accordingly, the Motion should be denied.

## **FACTUAL BACKGROUND**

### A.  THE CHAPTER 11 CASES

9.     On February 18, 2020 (the "Petition Date"), the Debtors filed with this Court voluntary petitions under chapter 11 of the Bankruptcy Code, commencing the above-captioned cases (the "Chapter 11 Cases").  On March 5, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "UCC") and an official committee of survivors of abuse (the "TCC") [D.I. 141, 142].

10.     On April 24, 2020, the Court appointed James L. Patton, Jr. as the legal representative of future abuse claimants (the "Future Claimants' Representative" or "FCR") pursuant to section 105(a) and 1109(b) of the Bankruptcy Code.  On July 24, 2020, pursuant to section 1109(b) of the Bankruptcy Code, the Coalition of Abused Scouts for Justice (the "Coalition") filed a notice of appearance in the Chapter 11 Cases.  The Coalition includes tens of thousands of sexual abuse survivors who have submitted proofs of claim against the Debtors and signed affirmative consent forms to be part of the Coalition.  No trustee has been appointed in these Chapter 11 Cases.

11.     On May 26, 2020, the Court entered an order [D.I. 695] (the "Bar Date Order") establishing certain deadlines and procedures associated with the filing of proofs of claim in the Chapter 11 Cases, including, without limitation, special noticing procedures for providing actual and constructive notice of such deadlines and procedures to millions of potential holders of Abuse Claims.  Pursuant to the Bar Date Order, the Court established November 16, 2020 as the deadline

by which general proofs of claim and sexual abuse survivor proofs of claim must be filed against the Debtors, and established August 17, 2020, as the governmental bar date.

12.     On June 9, 2020, the Bankruptcy Court entered an order appointing The Honorable Kevin Carey (Ret.), Paul Finn, and Timothy Gallagher as mediators for the purpose of mediating the comprehensive resolution of issues and claims in the Chapter 11 Cases [D.I. 812].  There are presently 26 mediation parties, and the Debtors are determined to negotiate a timely resolution of the Chapter 11 Cases because "progress needs to be made.  Victims need to be compensated appropriately and the Boy Scouts' mission needs to continue."  Mar. 17, 2021 Hr'g Tr. 48:24–49:7.  As the Court made clear at the March 17, 2021 omnibus hearing, the nearly $100 million of professional fees that have been expended in this non-profit case "is a staggering number," and "every dollar to professional fees is a dollar that comes out of some creditor's pocket."  Mar. 17, 2021 Hr'g Tr. 49:2–3, 49:19–21.  All of the fees spent on arguing the Motion and Motion to Withdraw the Reference are simply shrinking the pot of assets that, instead, could be better used to compensate abuse claimants through the contemplated Trust Distribution Procedures.

### B.  THE DEBTORS' PLAN AND TRUST DISTRIBUTION PROCEDURES

13.     On March 1, 2021, the Debtors filed their *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2293] and the *Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2294].  Concurrently therewith, the Debtors filed a motion seeking approval of the disclosure statement and procedures for soliciting votes on the plan [D.I. 2295].

14.     On April 13 and 14, 2021, the Debtors filed the *Second Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2592] (the "Plan") and the Amended Disclosure Statement for the Second Amended Plan [D.I. 2594] (the "Disclosure

Statement"). The Plan incorporates the terms of the settlement with its prepetition secured lender, JPM and the Creditors' Committee and specifies certain assets that will be contributed to a settlement trust for the benefit of Abuse survivors (as defined in the Plan, the "Settlement Trust"), and provides two paths to reorganize the Debtors. The first plan of reorganization is a "Global Resolution Plan," which provides for global resolution of Abuse Claims against the Debtors, Local Councils, Contributing Chartered Organizations, and Settling Insurance Companies, in exchange for contributions by such parties to the Settlement Trust for the benefit of Abuse survivors. If the holders of Abuse Claims do not provide a sufficient number of votes to accept the Global Resolution Plan (or the Bankruptcy Court otherwise finds the Global Resolution Plan is not confirmable), the Debtors will seek confirmation of the back-up to the Global Resolution Plan, a "BSA Toggle Plan." The BSA Toggle Plan provides for resolution of Abuse Claims against *only* the Debtors and would not implement the settlement agreements and substantial contributions contemplated in the Global Resolution Plan.

15.     As described in more detail in the Disclosure Statement and the Plan, the primary purposes of the Plan are to (1) provide an equitable, streamlined, and certain process by which holders of Abuse Claims may obtain compensation for Abuse, and (2) ensure that Reorganized BSA has the ability to emerge from bankruptcy to continue its significant charitable mission.

16.     To continue the mission of Scouting, the proposed Plan provides that on the effective date, liability for all Abuse Claims will be "channeled" to the Settlement Trust. The Settlement Trust will: (i) assume ***exclusive*** responsibility for all Abuse Claims; (ii) preserve, hold, manage, and maximize the assets of the Settlement Trust; and (iii) direct the processing, liquidating, and payment of all compensable Abuse Claims in accordance with the Settlement Trust documents. Under both of the alternative scenarios, the Global Resolution Plan and the BSA

Toggle Plan, the assets contributed to the Settlement Trust will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust documents, including the Settlement Trust Agreement[4] and the Trust Distribution Procedures.[5]

17.    The Debtors are not only contributing their significant insurance rights under policies dating back to 1935, but have also proposed to contribute to the Settlement Trust assets with an aggregate value of up to $115.6 million.  The Debtors have further committed to ensuring that the nondebtor Local Councils contribute assets with an aggregate value of at least $425 million, exclusive of insurance rights.

18.    The Trust Distribution Procedures will establish the methodology for resolution of Abuse Claims, establish the process by which Abuse Claims will be reviewed by the Settlement Trust, and will specify liquidated values for compensable claims based on the nature of the underlying Abuse.  The Debtors will demonstrate at the confirmation hearing that the Settlement Trust will resolve Abuse Claims in accordance with the Settlement Trust documents in such a way that holders of Abuse Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and otherwise comply in all respects with the requirements of the Bankruptcy Code.

19.    If the Global Resolution Plan is confirmed, pursuant to Article V.T of the Plan, the Bankruptcy Court will conduct an estimation of the Debtors' aggregate liability on account of direct Abuse Claims in accordance with the procedures set forth in the Bankruptcy Court's order granting the Confirmation Scheduling Motion.  The estimation will, among other things, provide

---

[4]    The Settlement Trust Agreement is summarized in Article VII of the Disclosure Statement and attached to the Plan as Exhibit B.

[5]    The Trust Distribution Procedures are summarized in Article VII of the Disclosure Statement and attached to the Plan as Exhibit A. "The Trust Distribution Procedures will be the <u>sole and exclusive method</u> by which the holder of an Abuse Claim may seek allowance and resolution of his or her Abuse Claim."  *See* Disclosure Statement, at 23.

a basis for the Bankruptcy Court and the parties to assess the value of the Direct Abuse Claims and whether the settlements proposed in the Plan should be approved under section 1123(b)(3)(A) of the Bankruptcy Code as fair, reasonable, and in the best interests of the estate. At the confirmation hearing, the Debtors will offer evidence in support of the estimation, and other parties will be permitted to submit evidence in support of, or to dispute, the evidence offered by the Debtors. The confirmation order will contain the Bankruptcy Court's findings of facts and conclusions of law with regard to the Debtors' estimated aggregate liability on account of direct Abuse Claims, which findings of fact and conclusions of law shall, by their terms, be subject to insurance neutrality provisions of the Plan and, for the avoidance of doubt, shall not constitute a trial or hearing on the merits or an adjudication or judgment, or accelerate the obligations, if any, of any insurance company under its insurance policies.

20.    As discussed at the March 17, 2021 omnibus hearing, the Debtors' proposed Plan confirmation timeline contemplates an emergence by the end of summer 2021 to ensure the BSA's successful reorganization. For financial and other operational reasons, it remains imperative that the Debtors maintain their timeline of emerging from bankruptcy by the end of summer 2021. The COVID-19 pandemic has had an unforeseen and prominent adverse effect on the Debtors' operations, including an 81% membership recruitment decline in 2020 attributable to school closures and social distancing guidelines. *See also* Mar. 17, 2021 Hr'g Tr. 15:1–7 (Ms. Lauria, on behalf of the Debtors, stating that: "We have talked in the past about liquidity concerns, financial concerns with the bankruptcy case. Suffice it to say, the case has cost the debtors tens of millions of dollars, upwards of $100 million. With the litigious environment that we are finding ourselves, the case is running around $10 million a month from an estate cost perspective"). If the Motion is

granted, the Debtors' goal of a timely global resolution of Scouting-related Abuse Claims and emergence by the end of summer is unlikely to occur.

21.    The ongoing mediation, designed to support a global resolution of the Chapter 11 Cases, should proceed without unwarranted distraction while the Debtors seek approval of the Disclosure Statement and confirmation of the Plan.  The Debtors have faith that the mediation will produce further productive results, and the mediators concur, having stated that they "are confident that the Mediation will foster additional constructive discussions between and among the Debtors and other Mediation Parties" and that they "do not consider the Mediation to be closed."  First Mediators' Report at 2.

### C.  THIS MOTION AND THE MOTION TO WITHDRAW THE REFERENCE

22.    On March 16, 2021, the FCR, the TCC, and the Coalition (collectively, the "Movants") filed this Motion, seeking authorization to conduct an estimation proceeding and to establish procedures and a schedule for the requested estimation.  Then, on March 17, 2021, the Movants filed the *Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), Withdrawing the Reference of Proceedings Involving the Estimation of Personal Injury Claims* [D.I. 2399] (the "Motion to Withdraw the Reference") requesting that the District Court withdraw the reference with respect to this Motion.

23.    The Debtors oppose the relief requested in both the Motion to Withdraw the Reference, to which they will respond in due course, and that requested in the Estimation Motion, for the reasons set forth below.

### JURISDICTION AND VENUE

24.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the

District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because the Movants are seeking an "estimation of claims . . . for the purposes of confirming a plan under chapter 11."  As further detailed in the Debtors' forthcoming opposition to the Motion to Withdraw the Reference, any estimation conducted here—whether as proposed by the Movants or by the Debtors—is a core proceeding.  The Movants' argument that the requested proceeding is "non-core" is misplaced because the Movants are ***not*** requesting that this Court (or the District Court) (a) ***liquidate*** or (b) ***estimate*** Abuse Claims "***for the purposes of distribution***."  11 U.S.C.  § 157(b)(2)(B).  Moreover, any estimation to create a cap on liabilities is unnecessary under the Debtors' Plan because the Plan does not guaranty a full recovery for holders of Abuse Claims, and is likewise not the sole source of funds that will be available to such claimants.  The Trust Distribution Procedures empower the Settlement Trustee to pursue litigation against non-settling insurance companies and will be "the sole and exclusive method by which the holder of Abuse Claim may seek allowance and resolution of his or her Abuse Claim."  *See* Disclosure Statement at 23.

25.    Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

### A. THE DEBTORS HAVE PROPOSED THE APPROPRIATE ESTIMATION PROCEEDINGS

26.     Section 502(c) provides that "[t]here shall be estimated for purpose of allowance under this section—[] any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c)(1); *see also In re Federal-Mogul Global Inc*., 330 B.R. 133, 154-55 (D. Del. 2005) (explaining the many purposes of estimation and the flexibility bankruptcy courts have in deciding the estimation procedures to be employed based on the facts and circumstances); *Bittner v. Borne Chem. Co.,* 691 F.2d 134, 135 (3d Cir. 1982) (same).  The Debtors agree an estimation could prove helpful, but adamantly oppose the Movants' particular proposal, including their methodology, schedule, and suggested venue.  Because the estimation proceeding and procedures requested in the Motion would themselves unduly delay the administration of these Chapter 11 Cases, the requested estimation is not appropriate and the Motion should be denied.

27.     Undue delay is not defined in the Bankruptcy Code; however, courts have defined undue delay as "excessive or unwarranted slowing of the administration of a debtor's case[.]"  *In re John Q. Hammons Fall 2006*, No. 16-21142, 2017 Bankr. LEXIS 3550, at *13 (Bankr. D. Kan. Oct. 13, 2017); *see also In re Stone & Webster, Inc.*, 279 B.R. 748, 810 (Bankr. D. Del. 2002) (explaining undue delay occurs when the adjudication and liquidation of a claim would take an "unreasonably long time" such that it delays the bankruptcy process).  Courts have held that the "very purpose" of section 502(c)(1) is "to avoid undue delay."  *In re FV Steel & Wire Co.*, 372 B.R. 446, 453 (Bankr. E.D. Wis. 2007) (citing *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994)).  "[T]o the greatest extent possible, a selected estimation procedure should not run counter to the efficient and expeditious administration of the bankruptcy estate."

*In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D.N.J. 2005) (citing *Bittner v. Borne Chem. Co.,* 691 F.2d 134, 135-36 (3d Cir. 1982) (explaining the principal consideration in selecting an estimation procedure "must be an accommodation to the underlying purposes of the Code")).

28.    As recognized by the Third Circuit, bankruptcy judges have significant discretion to determine the manner in which claims are estimated and may use "whatever method is best suited to the particular contingencies at issue." *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982); *see also In re Chi. Invs., LLC*, 470 B.R. 32, 102 (Bankr. D. Mass. 2012). "Bankruptcy courts have employed a wide variety of methods to estimate claims, including summary trial, a full-blown evidentiary hearing, and a review of pleadings and briefs followed by oral argument of counsel." *In re Chi. Invs., LLC*, 470 B.R. at 102 (scheduling an estimation motion to be heard in conjunction with the evidentiary hearing on confirmation of the plan to afford the parties an opportunity to submit evidence).

29.    As mentioned numerous times throughout these Chapter 11 Cases, confirmation of the Plan is essential to equitably compensating holders of Abuse Claims and preserving the BSA's charitable mission.  Time is of the essence when it comes to furthering these objectives.  As previewed to the Court at the status conference earlier this week, *see* Apr. 12, 2021 Hr'g Tr. 8:1–10, the Debtors are seeking estimation of the aggregate value of Abuse Claims in connection with confirmation of the Global Resolution Plan.  The Debtors have filed the Confirmation Scheduling Motion substantially concurrently herewith to establish discovery dates and procedures for an orderly and fair estimation in connection with confirmation.  The Debtors' proposed estimation would occur alongside confirmation of the Global Settlement Plan and assist the Court in deciding whether the settlement agreements are in the best interests of the Estate.  *See* Plan, Art. V.T.  Unlike the Movants' estimation procedures, the Debtors' proposal provides a framework that will both

provide parties with necessary information and facilitate an orderly confirmation process, ultimately allowing the Debtors to confirm the Plan by the end of this summer.

30.     Because an estimation of the aggregate liability of Abuse Claims will aid confirmation of the Plan, the Debtors, with the help of Bates White, are well on their way to analyzing and providing the Court and parties in interest with an appropriate estimate of the value of Abuse Claims.  At the confirmation hearing, the Debtors will present evidence to support the validity of such evaluation and to aid the Court in its estimation.  The Movants will have the opportunity to take discovery and present their own evidence and argument on estimation at the confirmation hearing.

### 1.     This Court Should Decide the Motion and Conduct Any Estimation

31.     The first deficiency with the process proposed by the Movants is that they are improperly asking the District Court to both decide the Estimation Motion and conduct all related proceedings.  Judicial economy and preservation of estate assets, among various other factors, strongly favor this Court—not the District Court—to decide matters, as will be discussed further in the Debtors' forthcoming opposition to the Motion to Withdraw the Reference.  *See generally Official Comm. of Asbestos Claimants v. G-I Holdings, Inc.* (*In re G-I Holdings, Inc.*), 295 B.R. 211, 219 (D.N.J. 2003) (explaining that "the Bankruptcy Court and [the District] Court are equally qualified to conduct the estimation proceeding, however, judicial economy considerations indicate that the bankruptcy court may be more appropriate").  Because this Court already has extensive knowledge of relevant facts and issues and will continue to decide numerous interrelated matters in connection with approving the Disclosure Statement and confirming the Plan, this Estimation Motion should remain before this Court.  Indeed, this Court is free to decide the Estimation Motion while the Motion to Withdraw the Reference is pending.  *See* Fed. R. Bankr. P. 5011(c).

**2.    The Estimation Should be Made in Connection With Confirmation**

32.    Given the substantial overlap with confirmation issues (not adequate disclosure issues), it would be most efficient for this Court to conduct the requested estimation proceedings (assuming the Estimation Motion were granted) in connection with the confirmation hearing. Estimating the aggregate value of Abuse Claims will also aid the Court in determining whether the Global Resolution Plan should be approved under section 1123(b)(3)(A) and whether the settlement agreements contemplated under the such plan are fair, reasonable, and in the best interest of the Estate, as explained in the Plan.

33.    At the same time, the Confirmation Scheduling Motion provides a more appropriate framework, including for fulsome discovery before the confirmation hearing to help ensure that parties may evaluate the Debtors' proposed Plan, develop an understanding regarding the aggregate value of Abuse Claims, and be in a position to test the same at confirmation.  The Debtors submit that this provides the best path forward for all parties in interest, but at a minimum it demonstrates that the proposals in the Estimation Motion are neither necessary nor appropriate.

**B. THE SUBSTANCE OF THE MOVANTS' PROPOSED ESTIMATION IS UNDULY BURDENSOME AND CONTRARY TO SECTION 502(C)**

34.    Ironically, the Movants seek an unrealistic, time consuming, expensive, and burdensome estimation that would significantly delay administration of these Chapter 11 Cases, by invoking section 502(c)—a provision enacted for the very purpose of avoiding unduly delaying the administration of a case.  *See* 11 U.S.C. § 502(c).  *See also In re FV Steel & Wire Co.*, 372 B.R. at 453.  Indeed, Movants' proposed procedures would do exactly that and prevent the Debtors from timely emerging from bankruptcy.

35.    Among other things, the Movants seek a year-by-year determination of which Insurance Policies held by the BSA from over the years would apply to the Abuse Claims.  The

Movants further seek a determination regarding the extent to which the BSA's liability for such Claims is shared with the Local Councils and Chartered Organizations. All in the name of knowing whether to support the Debtors' Plan, the Movants would like the Court to consider all of these factors to formulate an estimation of aggregate liability of the Abuse Claims. It is one thing for the Movants to describe their requested estimation in the abstract; however, the realities of this case and the number of factors that would be required to be evaluated make the Movants' requested estimation unrealistic, complex, and overly burdensome. This would result in proceedings taking far longer than what the Movants propose, and would be extremely costly, if it could be done with any degree of reliability at all.

36.    For example, there are seven different Abuse categories listed in the proofs of claim, submitted by 82,500 survivors, alleging Abuse to have occurred over more than 50 years. Just accounting for two of the Movants' categorical determination requests, breaking the aggregate estimation by allegation and year, would result in over 350 distinct sub components or separate estimation findings. Breaking that estimate down further by the 252 Local Councils (*see* Exhibit G of the Plan) would lead to a potential of 88,200 sub components, a number that exceeds the number of survivors. Not to mention a further analysis related to more than 40,000 Chartered Organizations. It is clear that what the Movants are seeking here as part of their "aggregate" estimation is tantamount to a claim-by-claim valuation. It is vastly more efficient for this Court to consider the value of each of the seven Abuse categories in the aggregate.

37.    Thus, the Movants' estimation proceeding, which would ***cause*** undue delay of the administration of these Chapter 11 Cases instead of avoiding it, is antithetical to section 502(c) and cannot be "mandatory." *See* Mtn. ¶ 27; *see also In re FV Steel & Wire Co.*, 372 B.R. 446, 453 (Bankr. E.D. Wis. 2007) (noting that it is "inappropriate to hold time-consuming proceedings,

which would defeat the very purpose of [section] 502(c)(1) to avoid undue delay" (internal citations omitted)).  Again, the Debtors' Global Settlement Plan and Confirmation Scheduling Motion contemplate a far more efficient estimation that leads the Debtors toward confirmation, without any detour to the District Court.

### C. ESTIMATION IS AN ISSUE FOR CONFIRMATION AND SHOULD BE CONSIDERED AFTER APPROVAL OF THE DISCLOSURE STATEMENT

38.    The Movants make no showing that estimation at this juncture, prior to approval of the Disclosure Statement, is necessary to avoid undue delay.  The Debtors need only prove that their Disclosure Statement provides adequate information to enable a creditor to make an informed judgment about the Plan, as further supported by the litany of cases the Movants' cite for this very proposition.  *See* Mtn. ¶ 31 (citing cases).  None of these cases, however, say or suggest that the Movants' proposed estimation is necessary to avoid undue delay in the administration of these Chapter 11 Cases.  The Disclosure Statement provides more than enough information for the Abuse Claimants to make an informed judgment about the Plan, and no estimation hearing is required to achieve that.  In fact, the Disclosure Statement already provides an estimated value of aggregate Abuse Claims, ranges of potential recovery under both the Global Resolution Plan and the BSA Toggle Plan, detailed information about the amount of contributions to be made to the Settlement Trust, summary of the Trust Distribution Procedures, and financial information for parties in interest to evaluate other potential confirmation issues (e.g., liquidation analysis, best interest of creditors).

39.    Similarly, confirmation objections are premature and not appropriate at this time. The Movants assert that estimation is necessary because there is some risk that the Plan will not comply with certain Code requirements (i.e., feasibility, best interest, fair and equitable, etc.).  *See* Mtn. ¶ 32.  In *Dow Corning*, the bankruptcy court opted to proceed to a confirmation hearing rather

than "embark[] upon a long and complex estimation." *In re Dow Corning Corp.*, 211 B.R. 545, 573 (Bankr. E.D. Mich. 1997); *see also In re Chi. Invs., LLC*, 470 B.R. at 101-02. There, estimation of mass tort claims was sought for a number of purposes, including for plan feasibility purposes under 1129(a)(11) and in the event the Debtor sought cramdown under 1129(b)(2)(B). First, since the Debtor's plan did not promise recovery of personal injury claims in full, the court found that "estimation is not necessary for plan confirmation purposes . . . [because the] Debtor's ability to pay tort claims in full would simply not be an issue under §1129(a)(11)." *Id.* at 568. Next, the court determined that while estimation might be needed for cramdown, it was more efficient to wait and see whether it was needed before engaging in a long and complex estimation proceeding. The *Dow Corning* court explained that while an estimation of the aggregate amount might be needed to determine compliance with cramdown requirements, "this whole exercise presupposes that the class (or subclass) of claimants will vote to reject the [d]ebtor's plan." *Id.* at 573. Thus, the court held it was better to "wait to see whether that occurs before embarking upon a long and complex estimation. For if the class of claimants nevertheless accepts the plan, there would be no need to hold a hearing under § 1129(b)(2)(B)." *Id.*

40.    *Dow Corning* is instructive here because now is not the time to spend valuable and limited estate resources embarking upon an overly complex estimation, designed to delay consideration of the Plan, and which even if it could be justified in theory may never be necessary in reality. For the benefit of the Debtors, Reorganized BSA, and the various parties in interest, including the constituencies the Movants represent, the parties' focus should be fixed on finding common ground in Mediation, moving forward with the Debtors' Plan, and making every effort to support prompt emergence from these Chapter 11 Case, consistent with the timeline the Debtors have offered.

### D.  THE DEBTORS OBJECT TO THE MOVANTS' PROPOSED PROCEDURES IN FULL

41.    The process outlined in the Debtors' Confirmation Scheduling Motion will provide the Mediation Parties with access to all appropriate discovery, the opportunity to participate in the estimation proceedings, and facilitate prompt emergence from bankruptcy.  The Debtors submit that confirmation of the Global Resolution Plan provides the Abuse Claimants with a streamlined and certain procedure by which Abuse Claimants will be equitably compensated while allowing the BSA to continue its vital congressionally chartered charitable mission.  The Debtors object to the Movants' proposed procedures and schedule in full and reference the dates, deadlines, and other relief requested in their Confirmation Scheduling Motion.  The Movants' procedures and schedule is unnecessary.  The Estimation Motion should be denied in its entirety.

<u>CONCLUSION</u>

42.    For the foregoing reasons, the Debtors request that the Court deny the Motion and grant any such other or further relief in favor of the Debtors as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated:  April 15, 2021
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*

Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
     aremming@morrisnichols.com
     emoats@morrisnichols.com
     ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**

Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
     mlinder@whitecase.com
     laura.baccash@whitecase.com
     blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION