## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 2391** |

### CENTURY'S OPPOSITION TO THE COALITION, TCC AND FCR'S MOTION TO ESTIMATE CURRENT AND FUTURE ABUSE CLAIMS

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"), file this Opposition to the *Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 11 U.S.C. §§ 105(a) and 502(c), (I) Authorizing an Estimation of Current and Future Abuse Claims and (II) Establishing Procedures and Schedule for Estimation Proceedings*, filed on March 16, 2021 [D.I. 2391] (the "**Motion**") (the "**Opposition**"):

### PRELIMINARY STATEMENT

1.      The Motion, filed by Coalition, TCC and FCR (collectively, the "**Movants**") asks this Court to "estimate" the aggregate liability for nearly 100,000 Abuse Claims of the Debtors and a host of non-debtors including the Local Councils and Sponsoring Organization. Movants' Motion is legally defective and fundamentally flawed, driven by illegitimate motives, and should be denied.

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

2.      If granted, the Movants' Motion would result in this Court would be the first ever to purport to determine the aggregate liability of sexual abuse cases—something that has not been done before in US jurisprudence. The only reported case that has even considered such an estimation squarely rejected it. *See In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. 215 (Bankr. D. Or. 2006). Compounding the extraordinary relief is Movants' request to estimate *non-debtor* liabilities.

3.      The relief sought through the Motion is wholly outside the authority of this Court to grant. Movants' Motion does not satisfy any of the requirements for estimation under Bankruptcy Code section 502(c). Movants do not seek the estimation of any individual "claim"; the estimation is not "for purpose of allowance" of any claim; and there is no evidence to suggest that any Abuse Claim must be estimated now to avoid "undu[e] delay [in] the administration of the case." 11 U.S.C. § 502(c). This alone is a basis to deny the Motion.

4.      In seeking to estimate the whole case value of the claims, the Movants ask this Court to estimate not just the liability of the Debtors but also the liability of the non-debtor Local Councils and Sponsoring Organizations for the Abuse Claims. Nothing in Section 502(c) authorizes a bankruptcy court to estimate the liabilities of non-debtors. Nor does this Court have a jurisdictional basis to issue such relief with regard to a non-debtor. For this reason too, the Motion should be denied.

5.      Movants openly admit that liquidation or estimation of individual claims is ***not*** the purpose of their Motion. Movants instead seek an estimation of what they contend is "aggregate liability", not an estimate of any specific Abuse Claim. Indeed, Movants stress that the estimation will ***not*** liquidate any individual Abuse Claim. That determination, Movants explain, will be reserved for separate proceedings—which Movants contemplate will occur after

a plan has been confirmed—by a plaintiff controlled trust outside the overview of any court.  *See*

Mot. at 1 n.3.  By Movants' own admission, then, the Motion will not fix the amount of any

individual Abuse Claim for purposes of determining any individual claimant's right to receive a

distribution from the Boy Scouts' bankruptcy estate.

6.      Rather, Movants want this Court to "estimate" the Debtors' and non-debtors'

aggregate liability, by year, precisely so that they never have to prove up the validity of any

Abuse Claim in any court.  In particular, Movants hope to obtain an "estimation" from this Court

that they can later parade before a non-bankruptcy court in subsequent coverage litigation as a

purported adjudication by this Court of the Debtors' and non-debtors' aggregate liability for

Abuse Claims.  Simply put, Movants seek estimation not for bankruptcy purposes at all, but

rather for insurance coverage purposes.  For this reason, too, the Motion should be denied.

7.      There is also more than a hint that the motion was filed for another ulterior

purpose.  The estimation motion proposes a 111-day discovery and litigation schedule that

"conveniently expires right at the debtor's statutory exclusivity period," when the Debtors would

lose their exclusive right to propose a Chapter 11 plan (11 U.S.C. § 1121).  *See* 03/17/21 Hr'g

Tr. at 46 (Ms. Lauria, counsel for BSA).

8.      Finally, even if the Motion had any merit (and it does not), the proposed

"estimation" procedures are so prejudicial and contrary to basic notions of due process that they

should be denied.  There is no semblance of fairness or due process to what is proposed.

## ARGUMENT

### A.   Movants Are Asking This Court to Do Something That Has Never Been Done By Another Court—Estimate the Aggregate Liability of the Debtor and Non-Debtors for Tens of Thousands of Highly Particularized Abuse Claims

9.      Movants' Motion is entirely devoid of any precedent for holding estimation

proceedings to determine the aggregate liability in a sexual abuse claims.  In fact, the one abuse

case that Movants did cite squarely contradicts their position.  In *In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. 215 (Bankr. D. Or. 2006), the court found fundamental flaws in an aggregate value estimation for purposes of distribution.  *See id.* at 224. ("A claimant's right to a remedy for tortious behavior could be substantially and irreversibly affected by the estimation, where estimation is being used to establish a cap on the fund that will be available to pay liquidated claims.").  Thus, the court did not endorse the Movants' request for an estimation of the aggregate value of sexual abuse claims.  *See id.* (noting that the "consequences of estimation for purposes of voting and confirmation issues only are **much less drastic** than of estimation for purposes of distribution." (emphasis added)).[2]

10.     Movants are proposing precisely what was rejected by the *Archbishop of Portland* court—an estimation that will be binding on all parties and "set a *de facto* cap on BSA's aggregate liability for the estimated claims by defining the maximum amount BSA and beneficiaries of any channeling injunction must make available for distribution under the plan" to abuse claimants.  Mot. at 4.  Compounding this problem is Movants' extraordinary request to estimate the Local Councils' and Chartered Organizations' sexual abuse liabilities.

11.     Furthermore, the Movants' proposed estimation procedures would strip the due process rights of the insurers and all other parties.  Their proposed violation of parties' constitutional rights further demonstrates why the Court must reject the Motion.  "[D]ue process likely requires an individualized estimation of claims, as opposed to the estimation process

---

[2]     Recognizing the sparse case law on estimations for distribution purposes, one bankruptcy court observed that estimating sexual abuse claims would likely create "significant disputes concerning how it should be accomplished."  *In re Roman Cath. Bishop of San Diego*, 374 B.R. 756, 760 (Bankr. S.D. Cal. 2007) ("The possibility of further appeals is also high since the Debtor's desired process will deprive plaintiffs of their Seventh Amendment right to a jury trial.").  These concerns underscore that the Movants' proposal contradicts the Bankruptcy Code, which intended estimation to solve, not exacerbate, delays in the administration of these cases.

debtor proposes for present child sex abuse claims, which divides the claims into a few groups and uses the estimated amount for each claim in the given group." *In re Roman Catholic Archbishop of Portland in Oregon*, 339 B.R. at 223.  Though the Oregon Bankruptcy Court did not believe that estimation automatically required "mini-trials for each claim," it urged that it would "explore with the parties methods for individualizing the estimation process." *Id.* (noting that selecting a methodology was "premature" but suggesting options such as appointing an expert and conducting advisory summary jury trials).

12.     *Archbishop of Portland*'s warning to engage in a more tailored assessment of claims is especially imperative here where there is an extraordinarily high number of claims and significant variation in the monetary worth of each claim.  Restricting BSA's total liability without taking an individualized look at the underlying claims would do nothing to get at the true value of the underlying sexual abuse claims for which they are responsible.  This would deprive the insurers, the underlying claimants, and all other parties of their due process rights.

**B.     There Is No Basis To Estimate The Abuse Claims Under Section 502(c) Of The Bankruptcy Code**

13.     The Movants' Motion is fundamentally flawed. None of section 502(c)'s three requirements for estimation is met here.  Section 502(c) provides:

> There shall be estimated *for purpose of allowance under this section* . . . any contingent or unliquidated *claim*, the fixing or liquidation of which, as the case may be, would *unduly delay the administration of the case*.

11 U.S.C. § 502(c) (emphasis added).

14.     First, section 502(c) provides for the estimation only of a "contingent or unliquidated *claim*."  The estimation thus must determine the amount of an individual claim or group of related claims, but there is no basis under 502(c) to estimate a debtor's aggregate liability for all mass-tort claims alleged against it.  *See, e.g.*, *Bittner v. Borne Chem. Co.*, 691

F.2d 134, 135-137 (3d Cir. 1982) (affirming order estimating the allowed amount of a single

unliquidated tort claim).

15.     Second, the estimation must be "for purpose of allowance under this section."  As

this Court has explained, because "section 502(c) … requires that the court estimate [an

unliquidated claim] 'for purpose of allowance under this section,'" "estimation under section

502(c) results in allowing a claim for purposes of the entire case, and is no different than a claim

allowed under section 502(a) or (b)."  *In re Pacific Sunwear of California, Inc.*, No. 16-10882,

2016 WL 4250681, at *3 (Bankr. D. Del. Aug. 8, 2016) (Silverstein, J.); *see also In re Stone

Hedge Props.*, 191 B.R. 59, 63-64 (Bankr. M.D. Pa. 1995) ("estimation … under 11 U.S.C. §

502(c) … appears to confine itself to 'contingent or unliquidated' claims for distribution

purposes").

16.     Third, section 502(c) permits the estimation of a contingent or unliquidated claim

only if "the fixing or liquidation" of the claim through the normal claims-allowance process

under section 502(a)-(b) of the Bankruptcy Code (or in the tort system) "would unduly delay the

administration of the case."  *See, e.g.*, *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 357

(3d Cir. 2002) (affirming denial of Section 502(c) estimation of creditor's claim because

adjudicating the claim's allowance under Section 502(b) would not delay the case).

17.     Movants quite remarkably admit that none of those three requirements is met

here.  As the Motion states:

> Estimation of aggregate liability will ***not*** determine the liquidated amount of any
> particular individual claim.  The plan contemplated by the Movants will likely
> provide that such individual amounts will be determined through trust distribution
> procedures (the "TDP") or through release of actions into the tort system as
> permitted by the TDP.

Mot. 1 n.3 (emphasis added).

6

18.     Thus, Movants are not asking the Court to estimate the amount of any individual "claim," as section 502(c) authorizes, but rather to estimate the Debtors' aggregate liability, by year, for nearly 100,000 Abuse Claims.  In fact, Movants assume that individual Abuse Claims will be liquidated, for distribution purposes, by a plaintiff controlled trust post-petition, not pursuant to the estimation proceeding.

19.     Nor are Movants asking the Court to estimate any individual Abuse Claim "for purpose of allowance under [section 502]."  Instead, they propose allowance and liquidation of individual Abuse Claims to occur entirely outside any judicial scrutiny, pursuant to a separate post-confirmation process run by a plaintiff controlled trust, which is itself is a concession that there is no need to liquidate the nearly 100,000 Abuse Claims now, through an estimation proceeding, to avoid unduly delaying the case.  *See, e.g.*, *In re Dow Corning Corp.*, 211 B.R. 545, 565-66, 574 (Bankr. E.D. Mich. 1997) (denying the estimation motions because the movants had failed to show any "undue" delay because "individual tort claims would . . . be liquidated" after "a plan of reorganization is confirmed" pursuant to a "post-confirmation liquidation [process for the] tort claims.").

### C.     There Is No Legitimate Bankruptcy Purpose or Need For An "Estimation" of the Abuse Claims

20.     Movants fail to identify any legitimate bankruptcy purpose or need for the requested estimation.  Movants are fully aware that their Motion, if granted, would obliterate any chance of plan confirmation within BSA's exclusivity period.  Indeed, that is their intended outcome.  It defies logic to envision a scenario in which this Court (or any court) could litigate the more than 100,000 Abuse Claims within 111 days.  Yet, that is the Movants' proposed timeline for estimation, which BSA's counsel and this Court recognized as "conveniently expir[ing] right at the debtor's statutory exclusivity period" for proposing a Chapter 11 plan.  *See*

03/17/21 Hr'g Tr. at 46.  Movants even admitted on the record that their proposed timeline is "very aggressive" and ultimately "will be subject to the court's availability."  *Id.* at 29, 34.

21.    Yet, Movants argue that the Court should estimate the aggregate amount of Abuse Claims so that Abuse Claimants will know how much money is available.  Mot. at 12-13.  But knowing that would require not just an estimate of the aggregate Abuse Claims against the trust, but also a determination of the amount of the trust's assets, including insurance recoveries, and a host of other things such as the amount of the claims that fall into the Debtors' and non-debtors' self-insured retentions and uninsured periods.  But what if any amount of the claims that are recoverable from insurance cannot be determined except in insurance-coverage litigation.  In any event, plans are often confirmed even though creditors do not know their likely recoveries.

22.    There is no need to "estimate" the Abuse Claims to provide "adequate information" about such a plan in a disclosure statement under 11 U.S.C. § 1125.  Nor is the Court required to determine the value of unliquidated tort claims.  "There is no requirement in case law or statute that a disclosure statement estimate the value of specific unliquidated tort claims." *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 697 (4th Cir. 1989) (district court did not abuse discretion in approving disclosure statement that did not estimate value of unliquidated tort claims).  Indeed, the debtors in almost all other mass tort bankruptcy cases—including the *Imerys* case—have had their disclosure statements approved without the debtors volunteering values for disputed contingent claims or conceding liability.  Likewise, Courts have approved disclosure statements, including in the mass-tort context, that did not include any estimate of the mass-tort claims or claimants' likely recoveries from the trust.  *See id.*[3]

---

[3]    *See, e.g.*, Order (I) Approving Proposed Disclosure Statement For Debtors' And Shareholder Proponents' Joint Chapter 11 Plan Of Reorganization; (II) Approving Form And Manner Of Notice Of Hearing On Proposed Disclosure Statement; (III) Establishing And Approving Plan Solicitation And Voting Procedures; (IV) Approving Forms Of Ballots, Solicitation Packages, And Related

23.     Movants also contend that the Court must estimate the Abuse Claims to resolve

potential objections to confirmation of a plan.  Mot. at 13-15.  Although Movants suggest that

the Abuse Claimants will vote to reject the Debtors' plan and object to its confirmation, it is

premature, at the very least, to commence an expensive and time-consuming estimation

proceeding now.

24.     The Debtors' current plan provides that the Debtors' liability for the Abuse

Claims will be channeled to the trust and liquidated under a TDP; that various assets will be

contributed to the trust, including cash, property, and potential causes of action against insurers

for coverage; and that the Abuse Claims, in whatever amounts those Claims may ultimately be

allowed, will be paid a pro rata share of whatever amounts are realized from the trust's assets.[4]

The plan includes no provision obligating the Debtors, after confirmation, to contribute any

additional funding to the trust.  In short, as long as the Debtors can afford to make their initial

(and only) contribution to the trust, it does not matter how large or small the aggregate Abuse

Claims prove to be except to determine amounts falling in self-insured retentions, deductibles

and uninsured periods and the Movants do not intend to do this.  *See Dow*, 211 B.R. at 568-69

(denying estimation of mass-tort claims because estimation was not necessary to determine

whether plan was feasible; no matter how large the debtor's liability was, plan was feasible

because debtor had financial ability to make its one-time, capped, contribution to trust).

---

Notices; And (V) Granting Related Relief, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D. Cal.
Mar. 17, 2020), Dkt. No. 6340; Disclosure Statement For Debtors' And Shareholder Proponents'
Joint Chapter 11 Plan Of Reorganization at 24, *In re PG&E Corp.*, No. 19-30088-DM (Bankr. N.D.
Cal. Mar. 17, 2020), Dkt. No. 6353 (disclosing that 83,000 fire-victim claims had been filed, mostly
in "unknown" amounts, and that "[a]s a result, it is not currently possible to predict what any specific
claimant will be paid or a percentage recovery on such Claim any specific claimant should expect out
of the approximately $13.5 billion in total consideration that will be transferred to the Fire Victim
Trust under the Plan").

[4]     *See Amended Chapter 11 Plan Of Reorganization For Boy Scouts Of America And Delaware BSA,
LLC* [D.I. 2293], at Art. III.A.10, Art. Art. IV, V. M.

25.     On the eve of filing this objection, the Debtors filed an amended plan that contemplates an estimation of the Debtors' sexual abuse claims under pressure by the Coalition to do so.  The Debtors have not filed a motion and may not do so but its estimation is no less flawed.

**D.     Movants Improperly Seek to Estimate Claims Against Non-Debtors**

26.     Movants' Motion is also legally defective insofar as Movants brazenly request the estimation of non-debtor liabilities.  The Movants seek a whole case valuation of the Abuse Claims against whoever they may be asserted.  Sometimes the liabilities may overlap but other times they may not.  For example, at least two of the members of the Official Committee of Tort Claimants settled and were paid for their Abuse Claims by non-debtors prepetition but nonetheless were seated as member of the Committee.

27.     Evaluating Abuse Claimants' potential state-law claims against ***non-debtors***, including the liability of the non-debtor Local Councils and Sponsoring Organizations does not under any circumstance fall within the meaning of estimation under Section 502(c).

28.     Nor does the Court have jurisdiction to estimation the liability of non-debtors in these circumstances.  The bankruptcy court has limited jurisdiction over claims between non-debtors, which are "presumptively non-core."  *See In re Exide Techs.*, 544 F.3d 196, 215, 217 (3d Cir. 2008) (noting that claims between non-debtors do not qualify as core proceedings and bankruptcy courts have limited jurisdiction over non-core proceedings).  Courts routinely find that, in the context of mass tort cases, "claims between non-debtors are non-core or even entirely unrelated to the bankruptcy case." *Id.* at 217.  As a non-core proceeding, the court would only be able to submit proposed findings of fact and conclusions of law to the district court, not issue

orders.  *Id.* at 205.  The bankruptcy court's jurisdiction is limited to claims against the Debtors

and cannot extend to non-debtors.

29.     Under section 502(c), the Court can evaluate and estimate claims against the

Debtors for purposes of allowance; it is not empowered to estimate claims of non-debtors.  *See*

*In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) ("Section 502(c) only speaks of

estimating claims for the purpose of allowance."); *In re Interco Inc.*, 137 B.R. at 998 ("A

bankruptcy court is to estimate any contingent or unliquidated claims for the purpose

of ***allowance*** in a bankruptcy case.") (emphasis added).  When contemplating the allowance of

claims under the Bankruptcy Code, it is only relevant in the context of claims against the debtor.

*See* 11 U.S.C. § 502(b) (the court will allow a claim except to the extent "such claim is

unenforceable against the debtor and property of the debtor").  An allowed claim is one "that

may share in the assets of the bankruptcy estate." *See In re Interco Inc.*, 137 B.R. at 999.  Section

502(c) does not confer authority to estimate the value of claims for non-debtors.

30.     Movants admit that the estimation is not for purposes of allowance despite the

limitation in the Code.  The proposed estimation "including the extent to which those liabilities

are shared [] by any local council or chartered sponsoring organization, will inform the

contribution that can and should be expected from any local council and chartered organization."

Mot. at 5.

31.     Moreover, it is important to consider the context in which courts estimate claims,

typically for feasibility, distribution, and voting on a plan.  *See, e.g.*, *In re Pacific Gas &*

*Electric Company*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003) (estimating claims for purposes of

voting on a plan and feasibility)*; In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985)

(estimation necessary for a determination of plan feasibility); *In re Trident Shipworks, Inc.*, 247

B.R. 513, 514 (Bankr. M.D. Fla. 2000) (estimating claims for voting and distribution

purposes).  For each of these purposes, courts only examine the claims against the debtors, and

any purported value of claims against non-debtors is not encompassed in those issues.

###    E.    The Motion Is An Improper Attempt To Prejudice Insurers In State-Court Coverage Litigation

32.    Movants do not seek an estimation for the purpose of allowance under section

502(c) or for any plan-confirmation purpose under Section 1129.  Rather, Movants' true

objective is to obtain an order from this Court that that they can then weaponize in state court in

subsequent insurance-coverage litigation as a purported adjudication by the Court of the Debtors'

aggregate liability and that of the 250 non-debtor Local Councils and 5,000 Sponsoring

Organization, by policy year, for the approximate 100,000 Abuse Claims—even though no court

will have vetted the validity of a single Abuse Claim.

33.    It is clear that Movants are seeking to follow the same script here, hoping that

they can misuse an "estimation" to avoid the need ever to prove the validity of any Abuse Claim

and to prejudice insurers in state-court coverage litigation, as in *Fuller-Austin Insulation Co. v.

Highlands Ins. Co.*, 135 Cal. App. 4th 958 (Ct. App. 2006).  Indeed, Movants assert that "a year-

by-year estimation—of the sort we propose—will permit the Abuse Claim liability to be matched

to the appropriate insurer(s) and policy(ies) of the BSA and/or the local councils," which will

purportedly "resolv[e] ancillary disputes with and among the insurers about who is liable for

what" and "solv[e] for such coverage disputes."  Mot. at 16.

34.    In short, Movants seek an estimation that not only fails to satisfy any of Section

502(c)'s requirements but is at war with its statutory purpose, that serves no other legitimate

bankruptcy objective, and that, instead, is designed to prejudice Century and other carriers in

future, state-law coverage litigation by preventing any court from scrutinizing any Abuse Claim. The Motion should be denied.

### F.    The "Estimation" Procedures Are Improper

35.    Finally, even if estimation were allowed, the Court cannot approve the Movant's proposed estimation procedures because they are so prejudicial and contrary to the basic notions of due process that they should be wholly denied.

36.    For example, the proposed procedures would require parties in interest either to agree to be bound as a "party" to the proceeding or be barred from presenting any evidence. Mot. Ex. A (Proposed Order) ¶ 3(a) & Ex. B.  That is a transparent attempt to set up an argument by Movants in subsequent coverage litigation that the insurers were parties to the "estimation" and therefore should be bound by this Court's purported adjudication of the Debtors' aggregate liability.

37.    The proposed procedures also would require the insurers to produce information showing all amounts paid to settle or satisfy sexual-abuse claims.  *Id.* Ex. A (Proposed Order) ¶ 3(c).  That information has little relevance—historical settlements of different claims in the past say nothing about the validity or amount of the claims that are currently alleged against the Boy Scouts—and would serve only to skew purported claim values upwards, since more meritorious claims are settled while less meritorious ones are typically dismissed without payment.

38.    It would also be entirely improperly for the Court to rely upon historical settlements as any sort of benchmark value of the Abuse Claims.  *See* Fed. R. of Evid. 408 (prohibiting the use of settlements to "prove or disprove the ***validity or amount*** of a disputed claim.")  (emphasis added).

39.     Worse, the "estimation" procedures would limit discovery solely to a purportedly "representative sample of claimants" cherry-picked by the Movants, while the insurers would be denied any right to object to Movants' sample or to propose their own sample. *Id.* ¶ 3(d). And all fact and expert discovery would be completed in a mere two months, with all trial motions, motions in limine and the like completed within a few weeks after that. *Id.* ¶ 3(d)-(j).

40.     Finally, this court does not have jurisdiction to estimate claims for purposes of distribution to the holder of that claim in bankruptcy. The Judicial Code makes clear that such a proceeding is non-core and may not be decided by the bankruptcy court. The bankruptcy court lacks the authority to try the Abuse Claims under 28 U.S.C. § 157(b)(5), which provides that the "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court." To the extent that the Movants' estimation or any estimation proposed by the Debtor will involve the trial of any individual Abuse Claim within the meaning of section 157(b)(5) or to estimate claims for purposes of distribution Century further objects that the Bankruptcy Court lacks jurisdiction to do so.

## CONCLUSION

For the foregoing reasons, Century respectfully request that the Court deny the Motion and enter such other relief as the Court deems proper.

Dated:  April 15, 2021                    Respectfully Submitted,


                                          By:  */s/ Stamatios Stamoulis*
                                               Stamatios Stamoulis (#4606)

                                          STAMOULIS & WEINBLATT LLC
                                          800 N. West Street
                                          Third Floor
                                          Wilmington, Delaware  19801
                                          Telephone:    302 999 1540
                                          Facsimile:    302 762 1688

                                          O'MELVENY & MYERS LLP
                                          Tancred Schiavoni (*pro hac vice*)
                                          Times Square Tower
                                          7 Times Square
                                          New York, New York  10036-6537
                                          Telephone:    212 326 2000
                                          Facsimile:    212 326 2061

                                          *Counsel for Century Indemnity Company, as*
                                          *successor to CCI Insurance Company, as*
                                          *successor to Insurance Company of North*
                                          *America*

OMM_US:79791952.9