IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> Jointly Administered <br><br> RE: D.I. 2592 and 2594 |

### OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND JOINDER OF THE OBJECTION OF THE TORT CLAIMANTS' COMMITTEE

Andreozzi + Foote ("A+F"), on behalf of more than nine hundred Claimants (*See* Exhibit A) (collectively the "A+F Claimants") objects to sufficiency and adequacy of the Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Statement" and/or "Plan")), which Debtors filed on April 13, 2021, as follows:

**A+F Claimants Cannot Determine the Assets and Liabilities of the Parties to be Released**

1. Debtors' Statement fails to adequately disclose the assets and liabilities of the Boy Scouts, its councils, or its chartering organizations. More specifically:

    a. The Statement does not provide property-by-property valuation of property the Debtors intend to transfer to a settlement trust, or property Debtors seek to retain. The same is true of its other assets, including investments. The Statement must provide the liquidation value or fair market value for each such property.

    b. The Statement does not include an analysis the properties of the local councils. Under the Debtors' governance documents, a local council's property reverts to Debtors if the local council's charter is not renewed. In a Chapter 7

liquidation of the Debtors, the trustee presumably would not renew any local council charters. Since the properties revert to the Debtors, the liquidation analysis must include the liquidation value of all local council property.

c. The Statement fails to explain if a local council is contributing sufficiently to warrant a release and channeling injunction. Such information must include the liquidation or fair market value of the assets of each local council to be released, including any justification by a council for asserting that an asset is unavailable to pay creditors (e.g. donor restricted), how many childhood sexual abuse claims implicate each council, and how much each council is contributing.

d. Based on each local council's publicly available IRS Form 990 statements, the councils have significant assets, including unrestricted assets. Even the IRS Form 990 statements undervalue the assets if the local council accounted for its real property using "book value" (e.g., the value it was worth at the time it was acquired) and not its current fair market value.

e. The Statement does not provide property valuation information for any charter organization that will be released, including a charter organization's justification for asserting that an asset is unavailable to pay creditors (e.g. donor restricted), how many childhood sexual abuse claims implicate each charter organization, and how much each charter organization is contributing in exchange for a release of such childhood sexual abuse claims. Like the local councils, many of the charter organizations, such as the Methodist Church, the Mormon Church, and the Catholic Church, have significant property and other financial assets.

f. The Statement does not contain information about the number of abuse claims against each local council or charter organization, or any estimate of the value

of such claims. The Debtors should also disclose whether they have any indemnification or contribution claims against each local council or charter organization.

g. The Statement fails to adequately explain how any contribution by non-Debtor entities, including local councils and charter organizations, will be utilized, including whether their contribution will be used to pay administrative expenses, trust administrative and legal expenses, or to compensate claimants who do not have a claim against that entity.

h. Debtors state they are "committed" to ensuring the local councils collectively contribute at least $425 million. This amount is deceptive because the local councils have not formally agreed to contribute anything. Debtors also fail to disclose how much each council has available to contribute, is contributing, and how the contributions will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council.

i. The Statement estimates the Global Resolution Plan between 2.4 billion and 7.1 billion will be available to compensate abuse survivors but does not explain where these funds will come from. The Debtors have only agreed to fund $115,000,000 and commit to "ensuring" local councils contribute $425,000,000. However, Debtors do not explain where the additional billions will come from.

j. This lack of basic information makes it impossible for A+F Claimants to determine whether each council is making a substantial contribution, or to make an informed decision on whether to vote to accept or reject the Plan, which proposes to release each council, and to make an informed decision on whether

3

to raise a "best interest of creditors" objection because the Plan fails to award them the liquidated value of their claim against all entities they are releasing.

**A+F Claimants Cannot Tell the Specific Entities to Be Released**

2. Debtors' Statement fails to notify A+F Claimants who is being released. More specifically:

   a. The Statements fails to notify A+F Claimants which local council and/or charter organization is associated with their abuse, whether any such entity will receive a release, and if so, the terms of the release. If the Plan is designed to provide a release to non-debtor third parties, the Debtors must identify each local council and charter organization and their relationship to each of the Claimants.

   b. A+F Claimants have legal claims against the Debtor(s), a local council, and a charter organization. In their proof of claim forms, Claimants made a good faith effort to identify the local council and/or charter organization that may be liable for their childhood sexual abuse. However, Claimants were children when they were sexually abused. Many of them are unsure whether they have identified the correct entities and others were simply too young to recall the correct names today.

   c. For A+F Claimants and other abuse survivors who do not know this information, the information is within the purview of the Debtor(s) and the local councils. Debtor(s) possess Scouting unit rosters, camp rosters, and adult volunteer rosters. In pre-petition litigation, this discovery would normally provide such information. If unable to identify themselves in a roster, a claimant in litigation could use other discovery, like depositions, to identify the correct Scouting unit, council, and chartering organization.

      d. The A+F Claimants have not been able to pursue such discovery because the preliminary injunction prohibits Claimants from pursuing litigation against the Debtor, local councils, and charter organizations. Nothing under the Plan provides a way for a Claimant can confirm the Claimant has identified the correct local council and/or charter organization before a release is given to those entities.

### Trust Distribution Procedures

3.     A+F Claimants object to the Statement because it fails to inform them how their claims will be valued in the trust procedures, including whether they will be able to contest the proposed valuation of their claim. For example:

      a. The Plan identified factors to be used to value claims, but the Plan and Statement explains the weight of each factor. As such, A+F Claimants cannot fairly estimate how their claim would be treated.

      b. The Plan suggests claim values will be reduced if a claimant lacks certain information about their claim, but the Statement and Plan do not indicate whether claims will be able to pursue discovery regarding such missing information. Much of the apparent missing information is in the hands of the Debtors, local councils, and chartering organizations.

### Insurance Coverage Risks

4.     The A+F Claimants object to the Statement because it fails to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars.

5.     The Disclosure Statement makes a passing reference to insurers having asserted coverage defenses. Debtors make no effort to evaluate those risks.

6.      Debtors also fail to discuss any risk associated with the proposed assignment of all the insurance of the Debtors, the local councils, and participating charter organizations to a trust, including any risk associated with the anti-assignment clauses in such policies. If the Plan's assignment violates the anti-assignment clauses, the insurance coverage could evaporate.

### A+F Claimants Cannot Tell How Insurance Policies Will Be Utilized

7.      The Statement fails to explain how the proceeds of any insurance policies assigned to the trust will be used. The A+F Claimants are entitled to know how the proceeds of any policies will be utilized, including whether the proceeds of a policy that covers an A+F Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy.

### A+F Claimants Cannot Tell the Contribution of Insurers and Their Insureds

8.      The A+F Claimants object to the Statement because it fails to explain what contribution the insurers and their non-Debtor insureds will make to receive a release.

9.      As noted above, almost every A+F Claimant has a legal claim against a local council and/or a charter organization. In addition to the Debtors, a local council was responsible for all Scouting units in its geographic region. These local councils were amongst the parties who neglected to protect the children in their care from foreseeable harm.

10.     In turn, a charter organization was responsible for staffing and supervising the adult volunteers of a Scouting unit, like a Boy Scout Troop or Cub Scout Pack, and were also amongst the parties who neglected to protect the child members of a Scouting unit from foreseeable harm.

11.     Many of the local councils and charter organizations face significant liability, and many have substantial assets that are available to compensate abuse survivors, including the A+F Claimants who have a claim against them.

12.     The A+F Claimants object to the adequacy of the Disclosure Statement because it fails to specify what contribution the local council and/or charter organizations will have to make

to receive a release, including a contribution above and beyond their rights under insurance policies.

13. The A+F Claimants need to know this information to determine whether each entity who is receiving a release, including any local council or charter organization, is making a substantial contribution and whether the "best interests" test is met by that contribution.

### The Proposed Hartford Settlement Agreement

14. The A+F Claimants object to the Plan and Statement because it fails to explain the details of the proposed settlement with the Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively "Hartford"). The Statement fails to explain how much each A+F Claimant would receive from this settlement, whether A+F Claimants would have to release claims to effectuate the settlement, and whether any non-Debtor or Hartford would get a channeling injunction.

15. The proposed Hartford settlement is for $650,000,000 for all current and future claims under Hartford's policies. This apparently covers some 25,000 abuse claimants. This equates to about $26,000 per those 25,000 claimants, or $7,600 per claimant across all 85,000 claimants.

16. The Hartford settlement fails to tell A+F Claimants how much coverage is available in total under the Hartford policies, which A+F Claimants have claims under these policies, the number of claims under each policy, the type of claims, or the value of claims. Reportedly, many of these policies have occurrence limits of $500,000 with no aggregate limit. No A+F Claimant whose claim triggers a $500,000 Hartford policy should settle for $26,000 or $7,600.

17. The A+F Claimants cannot tell who the insureds are under each of the Hartford policies, i.e. the Debtors and/or local council(s) and/or chartering organizations.

**The Scope of this Bankruptcy Necessitates
Transparency Regarding the Handling of Insurance Policies**

18. The Plan would provide each Claimant an average of $6,000, or less, from the Debtors and the local councils, which they partly justify by the assignment of insurance policies.

19. The average award could be significantly lower, even non-existent, after administrative expenses.

20. A+F Claimants must have sufficient information to evaluate the risks of the Plan regarding assignment of insurance policies if the A+F Claimants are to release multiple non-debtor entities. As filed, the Disclosure Statement falls far short of the Bankruptcy Code's standard for its approval.

**Voting and Solicitation for Claimants with Multiple Sexual Abuse Survivor Proof of Claims**

21. The Court is aware that some claimants filed multiple Sexual Abuse Survivors Proof of Claim forms, with multiple law firms, including some A+F Claimants.

22. A+F has been diligent about reconfirming with affected A+F Claimants their intent to remain with A+F but is aware that many claimant's representation remains unclear. The Plan does not clarify how proposed voting and solicitation procedures will not disenfranchise votes of survivors where more than one law firm submits a ballot on a particular claimant's behalf. Where such votes conflict, Debtors should be required to verify which ballot should be counted by determining which law firm continues to represent a particular claimant and was properly authorized to act on the claimant's behalf. As of now, it is unclear how this issue will be handled.

**The Debtors Do Not Address How Claims Will be Treated Given Pending Statute of
Limitations Reform in Multiple Jurisdictions**

23. As this Court knows, the Debtors' bankruptcy was wrought, in part, by state legislatures opening "windows" in statute of limitations ("SOLs") that revived child sexual abuse claims in multiple states, including California, New York, and New Jersey.

24. Amended child sexual abuse SOLs increased greatly the value of A+F Claimants' abuse claims against the Debtors, local councils, and chartering organizations, in "window" jurisdictions like those mentioned.

25. For example, over the last several years, multiple jurisdictions, including Pennsylvania, Colorado, Georgia, Maryland, and others have considered and debated passage of "windows" like those in New York, New Jersey, and California.

26. In Pennsylvania, where Undersigned Counsel is based, the state legislature has considered multiple pieces of legislation to retroactively amend the abuse-claims' SOL since at least 2011.

27. In 2019, both political parties agreed to retroactively abolish the SOL in Pennsylvania and create a two-year window for survivors to bring abuse claims regardless of their age.

28. A constitutional amendment opening the two-year window was drafted and was favorably voted upon in both the Pennsylvania House and Senate.

29. However, a clerical error was discovered in 2021 when it was determined the Secretary of State failed to properly advertise the amendment. Because of this, Pennsylvania's constitutional amendment was temporarily derailed.

30. Almost immediately after the error was discovered, both political parties released statements reaffirming their commitment to opening a two-year window in Pennsylvania's SOL for abuse claims in the future.

31. All indications in Pennsylvania point to a two-year window in the SOL for abuse claims in the current or next legislative session.

32. Undersigned Counsel currently evaluates time-barred abuse claims in Pennsylvania as likely viable under an amended SOL in the near term when advising clients regarding their options regarding litigation or settlement.

33. The Statement and Plan do not address how claims will be treated in "window" states, versus non-"window" states, or in jurisdictions where "windows" are possible, or indeed likely, like Pennsylvania.

34. Given the lack of information in the Plan regarding Pennsylvania's local councils' and chartering organizations' assets and/or insurance, Pennsylvania claimants cannot make an informed decision on whether to vote to accept or reject the Plan.

**A+F Claimant's Joinder to the Objection to the Statement by the Tort Claimants' Committee**

35. A+F Claimants join the objection to the Plan and Statement filed by the Tort Claimants' Committee.

**A+F Claimant's Objections to Future and/or Amended Disclosure Statements**

36. A+F Claimants object to any future disclosure statement and/or plan that fails to resolve the objections herein.

**BIELLI & KLAUDER, LLC**

Dated: May 5, 2021
Wilmington, Delaware

*/s/ David M. Klauder*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

- and -

**ANDREOZZI + FOOTE**

Benjamin D. Andreozzi, Esq.
Nathaniel L. Foote, Esq.
4503 N. Front Street
Harrisburg, PA 17110
Email: victimscivilattorneys.com

*Attorneys for Claimants*