IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 2592 and 2594** |

**OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT
IN SUPPORT OF SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION
AND JOINDER OF THE OBJECTION OF THE TORT CLAIMANTS' COMMITTEE**

On April 13, 2021, the Debtors filed a Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (Dkt. No. 2592) ("the Plan"), and on April 14, 2021, the Debtors filed a Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Disclosure Statement") (Dkt. No. 2594).

The Claimants represented by Colter Legal PLLC (the "Colter Legal Claimants")[1] are survivors of childhood sexual abuse who each filed a Sexual Abuse Survivor Proof of Claim. As reflected in their individual proof of claim, the story of each of these survivors is unique, including how they were sexually abused, how the abuse affected them, and the circumstances that led to the abuse. As a group, their proof of claims reflect abuse that the claimants' suffered between approximately 1953 and 2019, and that their ages ranged from approximately 7 to 18 years old. The sexual abuse that they suffered as children includes repeated episodes of groping, fondling, oral sex, rape, and sodomy by adult males involved with the Boy Scouts of America. Nearly all of the abusers

---

[1] *See* attached Appendix A, which lists the Sexual Abuse Survivor Proof of Claim numbers for the Colter Legal Claimants.

at issue held leadership positions with the Boy Scouts, either as paid employees and/or as volunteers with Boy Scouts.

Many of the Colter Legal Claimants also have claims against non-Debtor entities, including a local council and a charter organization. As noted below, many of these non-Debtor entities may have significant assets and their own insurance separate and apart from any insurance maintained by the Debtors. Even without the benefit of discovery, which has been stayed due to the preliminary injunction, these claims against non-Debtor entities are strong and compelling.

The Colter Legal Claimants object to the sufficiency and adequacy of the Disclosure Statement for the following reasons:

### A. Failure to Disclose the Assets and Liabilities of Each Party Receiving a Release

1. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to provide them with sufficient information to make an informed decision on whether (a) to vote to accept or reject the Plan, which proposes a release of all local councils and may propose a release of charter organizations, or (b) to raise a "Best Interest of Creditors" objection.

2. The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that the Debtors seek to retain. The same is true of the Debtors' other assets, including investments. It is imperative that the Disclosure Statement provide the liquidation value or fair market value for each such property.

3. The Disclosure Statement does not include in its liquidation analysis the properties of the local councils. Under the Debtors' governance documents, a local council's property reverts to the Debtors if the local council's charter is not renewed. In a Chapter 7 liquidation of the Debtors, the Chapter 7 trustee presumably would not renew any local council charters. Since the

properties revert to the Debtors, the liquidation analysis must include the liquidation value of all local council real and personal property.

4. The Disclosure Statement and the Plan fail to provide any property valuation information for a creditor, including the Colter Legal Claimants, to determine if each local council is making a substantial contribution that warrants a release and channeling injunction. Any such valuation must include the liquidation or fair market value of the local council's assets, including any justification by a council for asserting that an asset is unavailable to pay its creditors (e.g., donor restricted), how many childhood sexual abuse claims implicate the local council, and how much the local council is contributing in exchange for a release of such childhood sexual abuse claims.

5. Based on each local council's publicly available IRS Form 990 statements, each local council has significant assets, including significant unrestricted assets. Moreover, if a local council accounted for its real property using "book value" (e.g., the value it was worth at the time it was acquired) and not its current fair market value, its IRS Form 990 statements likely *undervalue* its total assets given the length of time most of these councils have existed and the property holdings they have acquired over that time.

6. The Disclosure Statement and the Plan do not provide any property valuation information of any charter organization that will be released, including any justification by a charter organization for asserting that an asset is unavailable to pay creditors (e.g. donor restricted), how many childhood sexual abuse claims implicate each charter organization, and how much each charter organization is contributing in exchange for a release of such childhood sexual abuse claims. Like the local councils, many of the charter organizations, such as the Methodist Church, Mormon Church, and Catholic Church, have significant real property and other assets.

7. The Colter Legal Claimants cannot make an informed decision to vote to accept or reject the Plan because the Disclosure Statement does not contain any information about the

number of claims against each local council or charter organization, or any estimate of the value of such claims. To the extent that sexual abuse claims have not been filed against a local council or charter organization, the Debtors should disclose whether they have any indemnification or contribution claims against each local council or charter organization.

8. The Disclosure Statement also fails to adequately explain how any contribution by non-Debtor entities, including local councils and charter organizations, will be utilized, including whether their contribution will be used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim against that entity.

9. The inadequacy of the Disclosure Statement is illustrated by the fact that the Debtors state in the Plan that they are "committed" to ensuring the local councils collectively contribute at least $425 million. This disclosure is illusory because there is no agreement with the local councils to contribute anything to the Plan. In this regard, the Plan is speculative at best and the Disclosure Statement does nothing to inform abuse survivors whether and when any contribution by the local councils might be realized. In addition, the Debtors fail to disclose how much each council has available to contribute, how much each council is contributing, and how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council.

10. Similarly, in the Disclosure Statement the Debtors do nothing more than assert that childhood sexual abuse claims will range in value from somewhere between $2.4 billion and $7.1 billion. There is no discussion on how that value is determined. The Debtors project that the recoveries on the childhood sexual abuse claims will range from 8% to 23%, and up to 100% with the inclusion of available insurance. Under the Plan, the Debtors are the only parties that have offered any consideration ($115 million) for the benefit of the childhood sexual abuse claims. Assuming the childhood sexual claims are valued at $2.4 billion, the $115 million provides a 4.8% recovery, far less than the lower amount asserted by the Debtors. With only $115 million available

4

for sexual abuse survivors, the Disclosure Statement does not describe how recoveries will reach 8%, let alone up to 23% or 100%, when no other consideration has been committed by any other party.

11. This lack of basic information makes it impossible for creditors, including the Colter Legal Claimants, to determine whether each council is making a substantial contribution, to make an informed decision on whether to vote to accept or reject the Plan, which proposes to release each council, and to make an informed decision on whether to raise a "Best Interest of Creditors" objection because the Plan fails to award them the liquidated value of their claim against all entities they are releasing.

### B. Failure to Disclose the Specific Entities to Be Released

12. The Colter Legal Claimants object to the adequacy of the Disclosure Statement and the accompanying solicitation procedures because they fail to notify creditors, including the Colter Legal Claimants, which local council and/or charter organization is associated with their abuse, whether any such entity will receive a release, and if so, the terms of the release. If the Plan is designed to provide a release to non-Debtor third parties, such as the local councils and charter organizations, the Debtors should identify each local council and charter organization and their relationship to each of the creditors, including the Colter Legal Claimants. For example, under the Global Resolution Plan in the Plan, the "Protected Parties" (e.g., those that benefit from a release and channeling injunction) should only include those non-Debtors that make a substantial contribution and receive sufficient support by claimants whose claims will be released and/or the subject of a channeling injunction.

13. Most of the creditors who filed a Sexual Abuse Survivor Proof of Claim form, including the Colter Legal Claimants, have legal claims against the Debtors, a local council, and a charter organization. In their proof of claim forms, the Colter Legal Claimants made a good faith effort to identify the local council(s) and/or charter organization(s) that may be liable for the

childhood sexual abuse they suffered that is the basis for their claim. However, the Colter Legal Claimants were children when they were sexually abused. Due to the passage of time and/or the psychological effects of the abuse, many of them are unsure whether they have identified the correct entities and others were simply too young to recall the correct names today.

14. For the Colter Legal Claimants and other abuse survivors who do not know this information, the information they need is largely within the purview of the Debtors and local councils, which possess the Scouting unit rosters (e.g., Boy Scout Troop rosters and Cub Scout Pack rosters), camp rosters, and adult volunteer rosters. In prepetition litigation, this disclosure would generally occur through discovery that is currently barred by the preliminary injunction. Prior to the preliminary injunction, the Colter Legal Claimants would normally issue discovery that demanded the Debtors and/or local council(s) produce the roster(s) for the Claimant's Scouting unit and/or Scout Camp so the Claimant can find their name on the roster and confirm they have identified the correct local council(s) and charter organization(s) for their Scouting unit and/or Scout Camp.

15. If a Claimant's name did not appear on a roster, which may have happened as a result of human error and/or if the Claimant joined a Scouting unit in-between the annual registration process, the Claimant could review the roster to see if the Claimant recognized the names of the other children or adults on the roster. If so, the Claimant could contact some of the other members of the Scouting unit to see if they could corroborate that the Claimant was a member of the Scouting unit and/or attended the Scout Camp. If not, the Claimant would work with the Debtors and/or the local council(s) to determine whether the Claimant identified the wrong Scouting unit and appeared on the roster of a different Scouting unit. In addition to rosters, the Claimant would also ask the Debtors and/or local council(s) in discovery to produce the charter for the Claimant's Scouting unit so the Claimant could confirm the correct charter organization(s)

that chartered the Claimant's Scouting unit, particularly if the Debtors and local council(s) no longer had rosters for the Scouting unit.

16. If the Claimant was unable to obtain records that confirm the Claimant has identified the correct local council(s) and/or charter organization(s), the Claimant would ask the Debtors and/or the local council(s) for a "person most knowledgeable" deposition about the local council(s) and/or charter organization(s) who were responsible for the Claimant's Scouting unit and/or the Scout Camp the Claimant attended so that the Claimant could confirm that the Claimant has identified the correct local council(s) and/or charter organization(s) for their Scouting unit and/or Scout Camp. If the Claimant believes they may know the correct local council(s) and/or charter organization(s), the Claimant would ask for any documents those organizations have about the Claimant's Scouting unit and the Claimant would ask the organizations for a "person most knowledgeable" deposition to confirm the Claimant identified the correct local council(s) and/or charter organization(s).

17. The Colter Legal Claimants have not been able to pursue the above discovery because the preliminary injunction prohibits the Colter Legal Claimants from pursuing any litigation against the Debtors, local councils, and charter organizations. Nothing under the Plan provides a mechanism by which a Claimant can confirm the Claimant has identified the correct local council(s) and/or charter organization(s) before a release is given to those entities.

**C.** **Trust Distribution Procedures**

18. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to explain how their claims will be valued in the trust procedures and what ability they will have to contest the proposed valuation of their claim.

19. For example, the Plan identifies a number of factors to be used in valuing each claim, but neither the Plan nor the Disclosure Statement discloses how much weight will be assigned to those factors. Given the current state of negotiations it may not be appropriate to

disclose the weight afforded to each factor. However, if such a valuation system is ultimately included in the Plan, the weight afforded to each factor must be disclosed prior to when votes are solicited for the Plan so that claimants understand how their claim would be valued, can fairly estimate how their claim would be valued, can see how their claim would be valued when compared to other claims, and can decide whether to vote in favor or against the Plan given that valuation system.

20. The Plan also suggests that the value of a claim might be reduced if the claimant lacks certain information, such as the full name of the Scout leader who abused them, but neither the Plan nor the Disclosure Statement indicates whether the claimant will have an opportunity to pursue discovery so that they can supplement their claim with that missing information. As noted above, many abuse survivors may not recall the full name of the person who abused them because they were too young to recall the name, but the Debtors, the local councils, and the charter organizations likely possess evidence, such as membership rosters and the "ineligible volunteer files," that could allow abuse survivors to supplement their claim with that information.

### D. Failure to Disclose Insurance Coverage Risks

21. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars. The Disclosure Statement barely makes a passing note that the insurers have asserted coverage defenses, and the Debtors make no effort to evaluate those risks. Beyond the coverage risks associated with the Debtors' prepetition conduct, the Debtors fail to discuss any risk associated with the proposed assignment of all of the insurance of the Debtors, the local councils, and participating charter organizations to a trust, including any risk associated with the anti-assignment clauses in such policies. If the Plan's assignment violates the anti-assignment clauses, the insurance coverage could evaporate.

### E. Failure to Disclose How Insurance Policies Will Be Utilized

22. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to explain how the proceeds of any insurance policies assigned to the trust will be utilized. The Colter Legal Claimants are entitled to know how the proceeds of any policies will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy.

23. For example, if a Claimant has a $1 million childhood sexual abuse claim against the Mormon Church, the Mormon Church presumably has sufficient assets to pay the full value of that claim. In an insurance buy-back scenario, the insurers and the insured will insist that the insured receives a release of all current and future claims against the insured, otherwise the insured would be without insurance on those claims, would still be responsible for the defense costs on those claims, and would still be at risk for a judgment on those claims. The Colter Legal Claimants are entitled to know whether they will be required to release all of their claims against all insureds in order to effectuate a buy back of a given policy, and if so, how the proceeds of any such buy back will be utilized. In the foregoing example, the hypothetical Claimant is entitled to know whether he will be required to release a claim worth $1,000,000 against the Mormon Church to effectuate a "buy back" of a policy that names the Mormon Church as an insured. Moreover, the hypothetical Claimant is entitled to know whether his share of the sale price of the policy could be a small fraction of the value of his claim against that defendant.

24. The Colter Legal Claimants need to know this information to determine whether each non-Debtor who is released is making a substantial contribution and whether the "best interests" test is met by that contribution.

### F. Failure to Disclose the Contribution of Insurers and Their Insureds

25. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release.

26. As noted above, almost every Claimant has a legal claim against a local council and/or a charter organization. In addition to the Debtors, a local council was responsible for all Scouting units in its geographic region, including handling and processing complaints against Scout leaders for allegedly sexually abusing children and ensuring that each Scouting unit abided by policies and procedures to protect children from foreseeable harm. These local councils, the "eyes and ears" of the Debtors, were often amongst the parties who neglected to protect the children in their care from foreseeable harm.

27. In turn, a charter organization was responsible for staffing and supervising the adult volunteers of a Scouting unit, like a Boy Scout Troop or Cub Scout Pack, and were also amongst the parties who neglected to protect the child members of a Scouting unit from foreseeable harm. The leaders of the charter organization, including the Scout leaders who the charter organization appointed to oversee its Scouting unit(s), were often amongst those to receive complaints that another Scout leader was sexually abusing children in the Scouting unit, or saw the "red flags" or warning signs that another Scout leader was sexually abusing children in the Scouting unit, but neglected to take steps to protect the children from that danger.

28. Many of the local councils and charter organizations face significant liability, and many have substantial assets that are available to compensate abuse survivors, including the Colter Legal Claimants who have a claim against them.

29. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to specify what contribution the local councils and/or charter organizations will have to make to receive a release, including a contribution above and beyond their rights under insurance policies. The Colter Legal Claimants need to know this information to determine

whether each entity who is receiving a release, including any local council or charter organization, is making a substantial contribution and whether the "Best Interests" test is met by that contribution.

### G. No Disclosure Regarding the Proposed Hartford Settlement Agreement

30. The Colter Legal Claimants object to the adequacy of the Disclosure Statement because it fails to explain how much each Claimant may receive as a result of the Debtors' proposed settlement with Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively "Hartford"), whether each Claimant would be forced to release any of their claims in order to effectuate the settlement, including claims they have against non-Debtor entities, and whether any party, including Hartford and non-Debtor entities, would receive a channeling injunction as a result of the settlement.

31. The Debtors' proposed settlement with Hartford, which was attached as Exhibit A to the Second Mediators' Report that was filed on April 16, 2021 (Dkt. 2624), is for $650,000,000 and appears to require a release of all current and future claims that may exist under Hartford's policies. Based on a review of Hartford's policies, it appears that Hartford's policies cover some or all of the claims of approximately 25,000 claimants in this bankruptcy. Pursuant to this analysis, the Debtors' proposed settlement with Hartford equates to an average of only about $26,000 per claimant if the settlement proceeds are shared by the claimants with a claim that is covered by a Hartford policy, and to an average of approximately $7,647 per claimant if the settlement proceeds are shared with 85,000 claimants.

32. Not only does the Disclosure Statement fail to disclose how the Debtors propose to allocate those settlement funds, but it fails to disclose how much coverage is available under each of the Hartford policies; which claimants have claims under each of the Hartford policies; the number of claims that implicate each policy; the type of claims; and, the value of the claims. Based

on the years of the Hartford policies, it appears many of the policies had per occurrence limits of $500,000 with no aggregate limit. The Disclosure Statement fails to explain why claimants whose claim trigger a $500,000 insurance policy should vote in favor of a Plan that may result in them receiving an average of $7,647 from a settlement with Hartford.

33. The Disclosure Statement also fails to disclose the insured(s) under each of the Hartford policies, including whether the Debtors are insureds under each policy or whether the only insured under some policies is a non-Debtor entity, such as a local council. In turn, the Disclosure Statement fails to explain whether all current and future claims against the insured(s), including non-Debtor entities, will have to be released in order to effectuate the settlement, and if so, the value of those claims and why a claimant should agree to such a release if the insured has substantial assets, including other insurance, that should be used to compensate the claimant.

### H. The Scope of this Bankruptcy Necessitates Transparency Regarding the Handling of Insurance Policies

34. As it stands, the Plan would provide each Claimant an average of $6,000, or less, from the Debtors and the local councils, which they partly justify by the assignment of insurance policies. The average award could be significantly lower, if non-existent, after administrative expenses. The Colter Legal Claimants must have sufficient information to evaluate the risks of the Plan if the Colter Legal Claimants are to release multiple non-Debtor entities. As filed, the Disclosure Statement falls far short of the Bankruptcy Code's standard for its approval.

### I. Voting and Solicitation Procedures for Claimants with Multiple Sexual Abuse Survivor Proof of Claims

35. As the Court is aware, multiple Sexual Abuse Survivor Proof of Claim forms were filed on behalf of some claimants. The Colter Legal Claimants object to the Disclosure Statement and to the proposed voting and solicitation procedures because they will disenfranchise the votes of survivors in the event that more than one law firm submits a ballot on behalf of the same claimant. Instead, the Debtors' voting and solicitation procedures should require them to verify

whether the law firm who submits a ballot on behalf of a claimant has the authorization to act on behalf of the claimant in those instances when it matters. For example, verification is not necessary if multiple ballots on behalf of the same claimant vote in the same manner. However, if the votes conflict and the outcome of the tabulation could be affected, the Debtors must verify which ballot should be counted by determining which law firm was authorized to submit the ballot. As it stands, the Debtors have failed to explain how they intend to solicit and count votes for such claimants, including how to ensure such claimants do not vote multiple times, how to determine who can vote on behalf of such claimants, and how to determine which vote to count if inconsistent votes are submitted on behalf of the same claimant.

**J.     Objection to Future and/or Amended Disclosure Statements**

36.     The Colter Legal Claimants object to any future and/or amended disclosure statement by the Debtors that fails to resolve the objections raised in this objection.

**K.     Joinder to the Objection to the Disclosure Statement by the Tort Claimants' Committee**

37.     The Colter Legal Claimants join the objection to the Disclosure Statement filed by the Tort Claimants' Committee.

|  |  |
|---|---|
| | **BIELLI & KLAUDER, LLC** |
| Dated: May 5, 2021<br>Wilmington, Delaware | */s/ David M. Klauder*<br>David M. Klauder, Esquire (No. 5769)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Phone: (302) 803-4600<br>Fax: (302) 397-2557<br>Email: dklauder@bk-legal.com<br><br>- and -<br><br>**COLTER LEGAL PLLC**<br><br>John G. Harnishfeger, Esquire<br>1717 K Street, NW Suite 900<br>Washington, D.C. 20006<br>Phone: (202) 886-3100<br>Email: John.Harnishfeger@ColterLegal.com<br><br>*Counsel to the Colter Legal Claimants* |

# APPENDIX A

The foregoing Objection to the Adequacy of the Debtors' Disclosure Statement in Support of Second Amended Chapter 11 Plan of Reorganization and Joinder of the Objection of the Tort Claimants' Committee was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by Colter Legal PLLC. The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim (as were recently amended).

| | | | | |
|---|---|---|---|---|
| SA Claim No. 105113 | SA Claim No. 105114 | SA Claim No. 105115 | SA Claim No. 105116 | SA Claim No. 105117 |
| SA Claim No. 105132 | SA Claim No. 105134 | SA Claim No. 105133 | SA Claim No. 105135 | SA Claim No. 105136 |
| SA Claim No. 105137 | SA Claim No. 105140 | SA Claim No. 105144 | SA Claim No. 105146 | SA Claim No. 105148 |
| SA Claim No. 105152 | SA Claim No. 107853 | SA Claim No. 105153 | SA Claim No. 105154 | SA Claim No. 105156 |
| SA Claim No. 105157 | SA Claim No. 105168 | SA Claim No. 105170 | SA Claim No. 105174 | SA Claim No. 105177 |
| SA Claim No. 105179 | SA Claim No. 105278 | SA Claim No. 105279 | SA Claim No. 105280 | SA Claim No. 105282 |
| SA Claim No. 105284 | SA Claim No. 105305 | SA Claim No. 105306 | SA Claim No. 105307 | SA Claim No. 105309 |
| SA Claim No. 105311 | SA Claim No. 105314 | SA Claim No. 105315 | SA Claim No. 105316 | SA Claim No. 107745 |
| SA Claim No. 105337 | SA Claim No. 105340 | SA Claim No. 105348 | SA Claim No. 105351 | SA Claim No. 105618 |
| SA Claim No. 105622 | SA Claim No. 105626 | SA Claim No. 105642 | SA Claim No. 105638 | SA Claim No. 105647 |
| SA Claim No. 105649 | SA Claim No. 107849 | SA Claim No. 105654 | SA Claim No. 105650 | SA Claim No. 105678 |
| SA Claim No. 105679 | SA Claim No. 105680 | SA Claim No. 105681 | SA Claim No. 107848 | SA Claim No. 105682 |
| SA Claim No. 105684 | SA Claim No. 105683 | SA Claim No. 105685 | SA Claim No. 105686 | SA Claim No. 105687 |
| SA Claim No. 107854 | SA Claim No. 105745 | SA Claim No. 107850 | SA Claim No. 105746 | SA Claim No. 105747 |
| SA Claim No. 105748 | SA Claim No. 105751 | SA Claim No. 105749 | SA Claim No. 105750 | SA Claim No. 106338 |
| SA Claim No. 106339 | SA Claim No. 106340 | SA Claim No. 106341 | SA Claim No. 106342 | SA Claim No. 106347 |
| SA Claim No. 106348 | SA Claim No. 106349 | SA Claim No. 106351 | SA Claim No. 106350 | SA Claim No. 106353 |
| SA Claim No. 106352 | SA Claim No. 106354 | SA Claim No. 107851 | SA Claim No. 106355 | SA Claim No. 106356 |
| SA Claim No. 106358 | SA Claim No. 106359 | SA Claim No. 106360 | SA Claim No. 106361 | SA Claim No. 106363 |
| SA Claim No. | SA Claim No. | SA Claim No. | SA Claim No. | SA Claim No. |

| 110315 | 106362 | 106366 | 106371 | 106393 |
|---|---|---|---|---|
| SA Claim No. 106395 | SA Claim No. 106404 | SA Claim No. 106408 | SA Claim No. 106410 | SA Claim No. 106409 |
| SA Claim No. 106413 | SA Claim No. 106480 | SA Claim No. 94427 | SA Claim No. 106483 | SA Claim No. 107477 |
| SA Claim No. 107472 | SA Claim No. 107478 | SA Claim No. 107475 | SA Claim No. 107482 | SA Claim No. 107484 |
| SA Claim No. 107487 | SA Claim No. 107488 | SA Claim No. 107489 | SA Claim No. 107491 | SA Claim No. 107492 |
| SA Claim No. 107496 | SA Claim No. 107498 | SA Claim No. 107587 | SA Claim No. 107588 | SA Claim No. 107601 |
| SA Claim No. 107593 | SA Claim No. 107605 | SA Claim No. 107608 | SA Claim No. 107613 | SA Claim No. 107620 |
| SA Claim No. 107698 | SA Claim No. 107716 | SA Claim No. 107714 | SA Claim No. 107798 | SA Claim No. 107799 |
| SA Claim No. 107732 | SA Claim No. 107737 | SA Claim No. 107746 | SA Claim No. 107747 | SA Claim No. 107749 |
| SA Claim No. 107753 | SA Claim No. 107751 | SA Claim No. 107754 | SA Claim No. 107800 | SA Claim No. 107803 |
| SA Claim No. 107805 | SA Claim No. 107807 | SA Claim No. 107806 | SA Claim No. 107809 | SA Claim No. 107811 |
| SA Claim No. 107810 | SA Claim No. 107812 | SA Claim No. 107813 | SA Claim No. 107828 | SA Claim No. 107829 |
| SA Claim No. 107831 | SA Claim No. 107830 | SA Claim No. 107833 | SA Claim No. 107832 | SA Claim No. 111134 |
| SA Claim No. 107834 | SA Claim No. 107835 | | | |