**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 2592 and 2594** |

**OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT**
**IN THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND**
**JOINDER OF THE OBJECTION OF THE TORT CLAIMANTS' COMMITTEE**

On April 12, 2021, the Debtors filed a Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America ("BSA) and Delaware BSA, LLC (Dkt. No. 2592) ("the Plan"), and on April 14, 2021, Debtors filed a Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (Dkt. No. 2594).

The Claimant, John Doe, represented by Sullivan Papain Block McGrath Coffinas & Cannavo, P.C. ("SPBMCC Claimant") is a survivor of childhood sexual abuse who filed a Sexual Abuse Survivor Proof of Claim (Claim No. 91872). As reflected in his individual proof of claim, the story of this survivor is unique, including how he was sexually abused, how the abuse affected him, and the circumstances that led to the abuse. His proof of claim reflects abuse that occurred between 1965 and 1968, when he was 14 to 17 years old. The sexual abuse he suffered included acts of masturbation and oral sex with two adult BSA members, part-time volunteer Charles Bennett, and an adult advisor of the Order of the Arrow, Robert Breglio.

In addition to the Boy Scouts of America, the SPBMCC Claimant has a claim against Greater New York Councils, Boy Scouts of America ("GNYC"), which is the non-Debtor local council of the BSA. This non-Debtor entity may have significant assets and its own insurance separate and apart from any insurance maintained by the Debtor.

1

The SPBMCC Claimant objects to the sufficiency and adequacy of the Disclosure Statement for the following reasons:

**A.     Failure to Disclose the Assets and Liabilities of Each Party Receiving a Release**

1.     The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to provide him with sufficient information to make an informed decision on whether (a) to vote to accept or reject the Plan, which proposes a release of all local councils including GNYC, or (b) to raise a "Best Interest of Creditors" objection.

2.     The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that the Debtors seek to retain. The same is true of the Debtors' other assets, including investments. It is imperative that the Disclosure Statement provide the liquidation value or fair market value for each such property.

3.     The Disclosure Statement does not include in its liquidation analysis the properties of the local councils. Under the Debtors' governance documents, a local council's property reverts to the Debtors if the local council's charter is not renewed. In a Chapter 7 liquidation of the Debtors, the Chapter 7 trustee presumably would not renew certain local council charters. Since the properties revert to the Debtors, the liquidation analysis must include the liquidation value of all local council real and personal property.

4.     The Disclosure Statement and the Plan fail to provide any property valuation information for the SPBMCC Claimant, to determine if each local council is making a substantial contribution that warrants a release and channeling injunction. Any such valuation must include the liquidation or fair market value of the local council's assets, including any justification by a council for asserting that an asset is unavailable to pay its creditors (e.g., donor restricted), how many childhood sexual abuse claims implicate the local council, and how much each local council, including GNYC, is contributing in exchange for a release of such childhood sexual abuse claims.

The SPBMCC Claimant cannot make an informed decision to vote to accept or reject the Plan because the Disclosure Statement does not contain any information about the number of claims against each local council, or any estimate of the value of such claims. To the extent that sexual abuse claims have not been filed against a local council, the Debtors should disclose whether they have any indemnification or contribution claims against each local council.

5. The Disclosure Statement also fails to adequately explain how any contribution by non-Debtor entities, including GNYC, will be utilized, including whether their contribution will be used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim against that entity.

6. The inadequacy of the Disclosure Statement is illustrated by the fact that the Debtors state in the Plan that they are "committed" to ensuring the local councils collectively contribute at least $425 million. This disclosure is illusory because there is no agreement with the local councils to contribute anything to the Plan. In this regard, the Plan is speculative at best and the Disclosure Statement does nothing to inform abuse survivors whether and when any sure contribution will be made by the local councils, including GNYC. In addition, the Debtors, fail to disclose how much GNYC has available to contribute, how much each local council is contributing, and how the contributions of each local council will be utilized, including whether the contributions of a local council will be used to compensate abuse survivors who do not have a claim against that local council. This lack of basic information makes it impossible for the SPBMCC Claimant to determine whether GNYC is making a substantial contribution, to make an informed decision on whether to vote to accept or reject the Plan, which proposes to release each local council, including GNYC, and to make an informed decision on whether to raise a "Best Interest of Creditors" objection because the Plan fails to award him the liquidated value of his claim against the entity he is releasing.

7. Similarly, the Disclosure Statement estimates that under the Global Resolution Plan the abuse claims will be valued between $2.4 billion and $7.1 billion. On the other hand, the Debtors have only agreed to fund $115 million and have "committed to ensuring" the local councils contribute at least $425 million. The Disclosure Statement fails to explain how the Debtors plan to generate an additional $1.86 billion to $6.56 billion to satisfy the estimated debt.

### B. Claim Valuation

8. The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to explain how his claim will be valued in the trust procedures and what ability he will have to contest the proposed valuation of his claim.

9. For example, the Plan identifies a number of factors to be used in valuing each claim, but neither the Plan nor the Disclosure Statement discloses how much weight will be assigned to those factors. Given the current state of negotiations it may not be appropriate to disclose the weight afforded to each factor. However, if such a valuation system is ultimately included in the Plan, the weight afforded to each factor must be disclosed prior to when votes are solicited for the Plan so that claimants understand how their claim would be valued, can fairly estimate how their claim would be valued, can see how their claim would be valued when compared to other claims, and can decide whether to vote in favor or against the Plan given that valuation system.

### C. Failure to Disclose Insurance Coverage Risks

10. The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars. The Disclosure Statement barely makes a passing note that the insurers have asserted coverage defenses, and the Debtors make no effort to evaluate those risks.

11. The SPBMCC Claimant needs to have an overview of the insurance coverage risk to make an informed decision on whether to approve or reject the plan.

### D. Failure to Disclose How Insurance Policies Will Be Utilized

12. The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to explain how the proceeds of any insurance policies assigned to the trust will be utilized. The SPBMCC Claimant is entitled to know how the proceeds of any policies will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy.

13. The SPBMCC Claimant needs to know this information to determine whether each non-Debtor who is released is making a substantial contribution and whether the "best interests" test is met by that contribution.

### E. Failure to Disclose the Contribution of Insurers and Their Insureds

14. The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release.

15. In addition to the Debtors, the local councils, including GNYC were responsible for all Scouting units in its geographic region, including handling and processing complaints against Scout leaders for allegedly sexually abusing children and ensuring that each Scouting unit abided by policies and procedures to protect children from foreseeable harm. These local councils, the "eyes and ears" of the Debtors, were often amongst the parties who neglected to protect the children in their care, including the SPBMCC Claimant, from foreseeable harm.

16. Many of the local councils, including GNYC, faces significant liability, and many have substantial assets that are available to compensate abuse survivors, including the SPBMCC Claimant.

17. The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to specify what contribution each local council will have to make to receive a

5

release, including a contribution above and beyond their rights under insurance policies. The SPBMCC Claimant needs to know this information to determine whether each entity who is receiving a release, including any local council, is making a substantial contribution and whether the "Best Interests" test is met by that contribution.

### F.     No Disclosure Regarding the Proposed Hartford Settlement Agreement

18. The SPBMCC Claimant objects to the adequacy of the Disclosure Statement because it fails to explain how much each Claimant may receive as a result of the Debtors' proposed settlement with The Hartford Financial Services Group, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company (collectively "Hartford").

19. On April 16, 2021, Hartford announced that it agreed to pay $650 million for sexual abuse claims associated with policies mostly issued in the 1970s. The agreement contemplates that, in exchange for Hartford's payment, the BSA and its local councils will fully release Hartford from any obligation under its policies it issued to the BSA and its local councils.

20. The current disclosure statement makes no mention of the proposed settlement agreement with Hartford claims and how it will be administered in the trust. As such, plaintiff is unable to agree to adequacy of the proposed disclosure statement and plan.

G. **Joinder to the Objection to the Disclosure Statement by the Tort Claimants Committee**

21. The SPBMCC Claimant joins the objection to the Disclosure Statement filed by the Tort Claimants Committee.

Dated: May 5, 2021

Respectfully submitted,

_____
Frank V. Floriani, Esq. (FF4489)
**Sullivan Papain Block McGrath Coffinas & Cannavo, P.C.**
120 Broadway
New York, NY 10271
Phone: (212) 266-4126
Facsimile: (212) 266-4156
Email: ffloriani@triallaw1.com

*Counsel to the SPBMCC Claimant*