**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Re: D.I. 2592 and 2594** |

**OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT**
**IN SUPPORT OF SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**AND JOINDER OF THE OBJECTION OF THE TORT CLAIMANTS' COMMITTEE**

On April 13, 2021, the Debtors filed a Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (Dkt. No. 2592) ("the Plan"), and on April 14, 2021, the Debtors filed a Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Disclosure Statement") (Dkt. No. 2594).

Claimant AIDAN BOUSHELL represented by AFFELD GRIVAKES LLP is a survivor of childhood sexual abuse who filed a Sexual Abuse Survivor Proof of Claim.  As reflected in his individual proof of claim, his story is unique, including how he was sexually abused at Camp Cherry Valley in Los Angeles County, California, how the abuse affected him, and the circumstances that led to the abuse.

It is anticipated that AIDAN BOUSHELL has claims against non-Debtor entities, including GLAAC (Los Angeles Council) and likely the Crossroads of the West Council out of Utah and local councils there that were in charge of Camp Cherry Valley and charter organizations for the BSA Supervisors on site and the predator Taylor Martin's organizations, currently unknown. As noted below, many of these non-Debtor entities may have significant assets and their own insurance separate and apart from any insurance maintained by the Debtors.

1

Even without the benefit of discovery, which has been stayed due to the preliminary injunction, this claim of AIDAN BOUSHELL is strong and compelling. We know that when AIDAN BOUSHELL was first molested, he told this to BSA Supervisor Adam Fox – we do not know if these two men, along with the other adult in charge, BSA Supervisor David Hopkins, were all in the same Troop, what the history was of predator Taylor Martin was with the BSA, how Fox "knew" Martin "was autistic," as they told AIDAN BOUSHELL as an excuse for his conduct, why the authorities were not immediately contacted, or otherwise sought to excuse this molestation, none of this is known.

AFFELD GRIVAKES LLP and Claimant AIDAN BOUSHELL object to the sufficiency and adequacy of the Disclosure Statement for the following reasons:

**A.    Failure to Disclose the Assets and Liabilities of Each Party Receiving a Release**

1.    The Disclosure Statement fails to provide sufficient information to make an informed decision on whether (a) to vote to accept or reject the Plan, which proposes a release of all local councils and may propose a release of charter organizations, or (b) to raise a "Best Interest of Creditors" objection. It clearly does not in that local organizations and chartering organizations to be named and added to the Claim are not paying into this fund – these need to be identified and the victim, here AIDAN BOUSHELL, should not be forced into an inadequate settlement without the needed to discovery to know who sponsored, groomed, trained, supervised his predator and failed to protect him once molested initially and what their rationale was to not immediately contact the authorities is;

2.    The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that the Debtors seek to retain.  The same is true of the Debtors' other assets, including investments.  It is imperative that the Disclosure Statement provide the liquidation value or fair market value for each such property.

2

3.      The Disclosure Statement does not include in its liquidation analysis the properties of the local councils.  Under the Debtors' governance documents, a local council's property reverts to the Debtors if the local council's charter is not renewed.  In a Chapter 7 liquidation of the Debtors, the Chapter 7 trustee presumably would not renew any local council charters.  Since the properties revert to the Debtors, the liquidation analysis must include the liquidation value of all local council real and personal property.

4.      The Disclosure Statement and the Plan fail to provide any property valuation information for a creditor, including AFFELD GRIVAKES LLP and AIDAN BOUSHELL, to determine if each local council is making a substantial contribution that warrants a release and channeling injunction.  Any such valuation must include the liquidation or fair market value of the local council's assets, including any justification by a council for asserting that an asset is unavailable to pay its creditors (e.g., donor restricted), how many childhood sexual abuse claims implicate the local council, and how much the local council is contributing in exchange for a release of such childhood sexual abuse claims.

5.      Based on each local council's publicly available IRS Form 990 statements, each local council has significant assets, including significant unrestricted assets.  Moreover, if a local council accounted for its real property using "book value" (e.g., the value it was worth at the time it was acquired) and not its current fair market value, its IRS Form 990 statements likely *undervalue* its total assets given the length of time most of these councils have existed and the property holdings they have acquired over that time.

6.      The Disclosure Statement and the Plan do not provide any property valuation information of any charter organization that will be released, including any justification by a charter organization for asserting that an asset is unavailable to pay creditors (e.g. donor restricted), how many childhood sexual abuse claims implicate each charter organization, and how much each charter organization is contributing in exchange for a release of such childhood sexual abuse

claims.  Like the local councils, many of the charter organizations, such as the Methodist Church, Mormon Church, and Catholic Church, have significant real property and other assets.

7.      AIDAN BOUSHELL cannot make an informed decision to vote to accept or reject the Plan because the Disclosure Statement does not contain any information about the number of claims against each local council or charter organization, or any estimate of the value of such claims.  To the extent that sexual abuse claims have not been filed against a local council or charter organization, the Debtors should disclose whether they have any indemnification or contribution claims against each local council or charter organization.

8.      The Disclosure Statement also fails to adequately explain how any contribution by non-Debtor entities, including local councils and charter organizations, will be utilized, including whether their contribution will be used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim against that entity.

9.      The inadequacy of the Disclosure Statement is illustrated by the fact that the Debtors state in the Plan that they are "committed" to ensuring the local councils collectively contribute at least $450 million.  This disclosure is illusory because there is no agreement with the local councils to contribute anything to the Plan.  In this regard, the Plan is speculative at best and the Disclosure Statement does nothing to inform abuse survivors whether and when any contribution by the local councils might be realized.  In addition, the Debtors fail to disclose how much each council has available to contribute, how much each council is contributing, and how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council.

10.     Similarly, the Disclosure Statement estimates that under the Global Resolution Plan somewhere between $2.4 billion and $7.1 billion will be available to compensate abuse survivors, but nowhere does the Disclosure Statement explain how the Debtors purport to generate these funds.  On the other hand, the Debtors have *only* agreed to fund $115,000,000 and have

"committed to ensuring" the local councils contribute at least $425,000,000. The Disclosure Statement fails to explain how the Debtors plan to generate an additional $1,860,000,000 to $6,560,000,000. Even adding the $650,000,000 from the Debtors' proposed settlement with Hartford leaves the Debtors short by $1,210,000,000 from the low end of the amount they claim will be available for abuse survivors.

11.     This lack of basic information makes it impossible for AIDAN BOUSHELL to determine whether each council is making a substantial contribution, to make an informed decision on whether to vote to accept or reject the Plan, which proposes to release each council, and to make an informed decision on whether to raise a "Best Interest of Creditors" objection because the Plan fails to award them the liquidated value of their claim against all entities they are releasing.

**B.     Failure to Disclose the Specific Entities to Be Released**

12.     AIDAN BOUSHELL objects to the adequacy of the Disclosure Statement and the accompanying solicitation procedures because they fail to notify creditors, including AIDAN BOUSHELL, which local council and/or charter organization is associated with his abuse, who brought his predator to Camp Cherry Valley, and why the BSA Supervisors there did not adequately protect him and act immediately to protect him and alert authorities once he was molested and told them. We are left in the dark as to any such entity responsible who will receive a release, and if so, the terms of the release. If the Plan is designed to provide a release to non-Debtor third parties, such as the local councils and charter organizations, the Debtors should identify each local council and charter organization and their relationship to each of the creditors, including AIDAN BOUSHELL. For example, under the Global Resolution Plan in the Plan, the "Protected Parties" (e.g., those that benefit from a release and channeling injunction) should only include those non-Debtors that make a substantial contribution and receive sufficient support by claimants whose claims will be released and/or the subject of a channeling injunction.

13.    Most of the creditors who filed a Sexual Abuse Survivor Proof of Claim form, including Claimant AIDAN BOUSHELL, have legal claims against the Debtors, local councils in California and Utah and who knows where else, and charter organizations currently unknown. In their proof of claim forms, Claimant AIDAN BOUSHELL made a good faith effort to identify the local council(s) and/or charter organization(s) that may be liable for the childhood sexual abuse he suffered that is the basis for his claim. However, AIDAN BOUSHELL was a child when he was sexually abused. Due to the passage of time and/or the psychological effects of the abuse, AIDAN may be unsure whether he has identified the correct entities. Discovery is required to ascertain all the BSA people at Camp Cherry Valley when the abuse occurred, what they role was, where they came from, what local organizations sponsored or sent them, and what chartering organizations were responsible for this.

14.    The information we need is largely within the purview of the Debtors and local councils, which possess the Scouting unit rosters (e.g., Boy Scout Troop rosters), camp rosters, and adult volunteer rosters. In prepetition litigation, this disclosure would generally occur through discovery that is currently barred by the preliminary injunction. Prior to the preliminary injunction, AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL would normally issue discovery that demanded the Debtors and/or local council(s) produce the roster(s) for the Claimant's Scouting unit and/or Scout Camp so the Claimant can find their name on the roster and confirm they have identified the correct local council(s) and charter organization(s) for their Scouting unit and/or Scout Camp.

15.    If a Claimant's name did not appear on a roster, which may have happened as a result of human error and/or if the Claimant joined a Scouting unit in-between the annual registration process, the Claimant could review the roster to see if the Claimant recognized the names of the other children or adults on the roster. If so, the Claimant could contact some of the other members of the Scouting unit to see if they could corroborate that the Claimant was a member

of the Scouting unit and/or attended the Scout Camp.  If not, the Claimant would work with the Debtors and/or the local council(s) to determine whether the Claimant identified the wrong Scouting unit and appeared on the roster of a different Scouting unit.  In addition to rosters, the Claimant would also ask the Debtors and/or local council(s) in discovery to produce the charter for the Claimant's Scouting unit so the Claimant could confirm the correct charter organization(s) that chartered the Claimant's Scouting unit, particularly if the Debtors and local council(s) no longer had rosters for the Scouting unit.

16.    If the Claimant was unable to obtain records that confirm the Claimant has identified the correct local council(s) and/or charter organization(s), the Claimant would ask the Debtors and/or the local council(s) for a "person most knowledgeable" deposition about the local council(s) and/or charter organization(s) who were responsible for the Claimant's Scouting unit and/or the Scout Camp the Claimant attended so that the Claimant could confirm that the Claimant has identified the correct local council(s) and/or charter organization(s) for their Scouting unit and/or Scout Camp.  If the Claimant believes they may know the correct local council(s) and/or charter organization(s), the Claimant would ask for any documents those organizations have about the Claimant's Scouting unit and the Claimant would ask the organizations for a "person most knowledgeable" deposition to confirm the Claimant identified the correct local council(s) and/or charter organization(s).

17.    AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL have not been able to pursue the above discovery because the preliminary injunction prohibits us from pursuing any litigation against the Debtors, local councils, and charter organizations.  Nothing under the Plan provides a mechanism by which a Claimant can confirm the Claimant has identified the correct local council(s) and/or charter organization(s) before a release is given to those entities.

C.    **Trust Distribution Procedures**

18.    AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the adequacy of the Disclosure Statement because it fails to explain how their claims will be valued in the trust procedures and what ability they will have to contest the proposed valuation of their claim.

19.    For example, the Plan identifies a number of factors to be used in valuing each claim, but neither the Plan nor the Disclosure Statement discloses how much weight will be assigned to those factors.  Given the current state of negotiations it may not be appropriate to disclose the weight afforded to each factor.  However, if such a valuation system is ultimately included in the Plan, the weight afforded to each factor must be disclosed prior to when votes are solicited for the Plan so that claimants understand how their claim would be valued, can fairly estimate how their claim would be valued, can see how their claim would be valued when compared to other claims, and can decide whether to vote in favor or against the Plan given that valuation system.

20.    The Plan also suggests that the value of a claim might be reduced if the claimant lacks certain information, such as the full name of the Scout leader who abused them, but neither the Plan nor the Disclosure Statement indicates whether the claimant will have an opportunity to pursue discovery so that they can supplement their claim with that missing information.  As noted above, many abuse survivors may not recall the full name of the person who abused them because they were too young to recall the name, but the Debtors, the local councils, and the charter organizations likely possess evidence, such as membership rosters and the "ineligible volunteer files," that could allow abuse survivors to supplement their claim with that information.

D.    **Failure to Disclose Insurance Coverage Risks**

21.    AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the adequacy of the Disclosure Statement because it fails to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total

billions of dollars.  The Disclosure Statement barely makes a passing note that the insurers have

asserted coverage defenses, and the Debtors make no effort to evaluate those risks.  Beyond the

coverage risks associated with the Debtors' prepetition conduct, the Debtors fail to discuss any

risk associated with the proposed assignment of all of the insurance of the Debtors, the local

councils, and participating charter organizations to a trust, including any risk associated with the

anti-assignment clauses in such policies.  If the Plan's assignment violates the anti-assignment

clauses, the insurance coverage could evaporate.

> **E.    Failure to Disclose How Insurance Policies Will Be Utilized**

22.    AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the

adequacy of the Disclosure Statement because it fails to explain how the proceeds of any insurance

policies assigned to the trust will be utilized.  We are entitled to know how the proceeds of any

policies will be utilized, including whether the proceeds of a policy that covers a Claimant's claim

is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to

compensate others who do not have a claim covered under the same policy.

23.    For example, if a Claimant has a $1 million childhood sexual abuse claim against

the Mormon Church, the Mormon Church presumably has sufficient assets to pay the full value of

that claim.  In an insurance buy-back scenario, the insurers and the insured will insist that the

insured receives a release of all current and future claims against the insured, otherwise the insured

would be without insurance on those claims, would still be responsible for the defense costs on

those claims, and would still be at risk for a judgment on those claims.  AFFELD GRIVAKES

LLP on behalf of AIDAN BOUSHELL are entitled to know whether they will be required to

release all of their claims against all insureds in order to effectuate a buy back of a given policy,

and if so, how the proceeds of any such buy back will be utilized.  In the foregoing example, the

hypothetical Claimant is entitled to know whether he will be required to release a claim worth

$1,000,000 against the Mormon Church to effectuate a "buy back" of a policy that names the

Mormon Church as an insured.  Moreover, the hypothetical Claimant is entitled to know whether his share of the sale price of the policy could be a small fraction of the value of his claim against that defendant.

24.     AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL need to know this information to determine whether each non-Debtor who is released is making a substantial contribution and whether the "best interests" test is met by that contribution.

**F.      Failure to Disclose the Contribution of Insurers and Their Insureds**

25.     AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the adequacy of the Disclosure Statement because it fails to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release.

26.     As noted above, almost every Claimant has a legal claim against a local council and/or a charter organization.  In addition to the Debtors, a local council was responsible for all Scouting units in its geographic region, including handling and processing complaints against Scout leaders for allegedly sexually abusing children and ensuring that each Scouting unit abided by policies and procedures to protect children from foreseeable harm.  These local councils, the "eyes and ears" of the Debtors, were often amongst the parties who neglected to protect the children in their care from foreseeable harm.

27.     In turn, a charter organization was responsible for staffing and supervising the adult volunteers of a Scouting unit, like a Boy Scout Troop or Cub Scout Pack, and were also amongst the parties who neglected to protect the child members of a Scouting unit from foreseeable harm. The leaders of the charter organization, including the Scout leaders who the charter organization appointed to oversee its Scouting unit(s), were often amongst those to receive complaints that another Scout leader was sexually abusing children in the Scouting unit, or saw the "red flags" or warning signs that another Scout leader was sexually abusing children in the Scouting unit, but neglected to take steps to protect the children from that danger.

28.    Many of the local councils and charter organizations face significant liability, and many have substantial assets that are available to compensate abuse survivors, including AIDAN BOUSHELL who likely has claims against them.

29.    AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the adequacy of the Disclosure Statement because it fails to specify what contribution the local councils and/or charter organizations will have to make to receive a release, including a contribution above and beyond their rights under insurance policies.  We need to know this information to determine whether each entity who is receiving a release, including any local council or charter organization, is making a substantial contribution and whether the "Best Interests" test is met by that contribution.

G.    **No Disclosure Regarding the Proposed Hartford Settlement Agreement**

30.    AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the adequacy of the Disclosure Statement because it fails to explain how much each Claimant may receive as a result of the Debtors' proposed settlement with Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively "Hartford"), whether each Claimant would be forced to release any of their claims in order to effectuate the settlement, including claims they have against non-Debtor entities, and whether any party, including Hartford and non-Debtor entities, would receive a channeling injunction as a result of the settlement.

31.    The Debtors' proposed settlement with Hartford, which was attached as Exhibit A to the Second Mediators' Report that was filed on April 16, 2021 (Dkt. 2624), is for $650,000,000 and appears to require a release of all current and future claims that may exist under Hartford's policies.  Based on a review of Hartford's policies, it appears that Hartford's policies cover some or all of the claims of approximately 25,000 claimants in this bankruptcy.  Pursuant to this analysis, the Debtors' proposed settlement with Hartford equates to an average of only about $26,000 per

claimant if the settlement proceeds are shared by the claimants with a claim that is covered by a Hartford policy, and to an average of approximately $7,647 per claimant if the settlement proceeds are shared with 85,000 claimants.

32.    Not only does the Disclosure Statement fail to disclose how the Debtors propose to allocate those settlement funds, but it fails to disclose how much coverage is available under each of the Hartford policies; which claimants have claims under each of the Hartford policies; the number of claims that implicate each policy; the type of claims; and, the value of the claims.  Based on the years of the Hartford policies, it appears many of the policies had per occurrence limits of $500,000 with no aggregate limit.  The Disclosure Statement fails to explain why a claimant whose claim triggers a $500,000 insurance policy should vote in favor of a Plan that may result in them receiving an average of $7,647 from a settlement with Hartford.

33.    The Disclosure Statement also fails to disclose the insured(s) under each of the Hartford policies, including whether the Debtors are insureds under each policy or whether the only insured under some policies is a non-Debtor entity, such as a local council.  In turn, the Disclosure Statement fails to explain whether all current and future claims against the insured(s), including non-Debtor entities, will have to be released in order to effectuate the settlement, and if so, the value of those claims and why a claimant should agree to such a release if the insured has substantial assets, including other insurance, that should be used to compensate the claimant.

**H.**    **The Scope of this Bankruptcy Necessitates Transparency Regarding the Handling of Insurance Policies**

34.    As it stands, the Plan would provide each Claimant an average of $6,000, or less, from the Debtors and the local councils, which they partly justify by the assignment of insurance policies.  The average award could be significantly lower, if non-existent, after administrative expenses.  AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL must have sufficient information to evaluate the risks of the Plan if we on behalf of Claimant AIDAN BOUSHELL are

1

to release multiple non-Debtor entities.  As filed, the Disclosure Statement falls far short of the Bankruptcy Code's standard for its approval.

**I.  Voting and Solicitation Procedures for Claimants with Multiple Sexual Abuse Survivor Proof of Claims**

35.  As the Court is aware, multiple Sexual Abuse Survivor Proof of Claim forms were filed on behalf of some claimants.  AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to the Disclosure Statement and to the proposed voting and solicitation procedures because they will disenfranchise the votes of survivors in the event that more than one law firm submits a ballot on behalf of the same claimant.  Instead, the Debtors' voting and solicitation procedures should require them to verify whether the law firm who submits a ballot on behalf of a claimant has the authorization to act on behalf of the claimant in those instances when it matters.  For example, verification is not necessary if multiple ballots on behalf of the same claimant vote in the same manner.  However, if the votes conflict and the outcome of the tabulation could be affected, the Debtors must verify which ballot should be counted by determining which law firm was authorized to submit the ballot.  As it stands, the Debtors have failed to explain how they intend to solicit and count votes for such claimants, including how to ensure such claimants do not vote multiple times, how to determine who can vote on behalf of such claimants, and how to determine which vote to count if inconsistent votes are submitted on behalf of the same claimant.

**J.  Objection to Future and/or Amended Disclosure Statements**

36.  AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL object to any future and/or amended disclosure statement by the Debtors that fails to resolve the objections raised in this objection.

**K.  Joinder to the Objection to the Disclosure Statement by the Tort Claimants' Committee**

37.  AFFELD GRIVAKES LLP on behalf of AIDAN BOUSHELL join the objection to the Disclosure Statement filed by the Tort Claimants' Committee.

Dated: May 5, 2021                    Respectfully submitted,

_____
Curtis Hehn, Esquire (No. 4264)
**Law Office of Curtis A. Hehn**
1007 N. Orange St., 4th Floor
Wilmington, DE 19801
Phone: (302) 757-3491
Email: curtishehn@comcast.net

and

Joseph M. Barrett, Esquire (Cal. SBN 143974)
**Affeld Grivakes LLP**
2049 Century Park East Suite 2460
Los Angeles, CA 90067
Phone: (310) 979-8700
Email: jmb@agzlaw.com
*Counsel to Claimant AIDAN BOUSHELL*

# APPENDIX A

The foregoing Objection to the Adequacy of Debtors' Disclosure Statement in Support of Second Amended Chapter 11 Plan of Reorganization and Joinder of the Objection of the Tort Claimants' Committee was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by Affeld Grivakes LLP. The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim.

| Aidan Boushell | SA-95818 | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |