**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 2592 and 2594** |

**DECLARATION OF JASON P. AMALA IN SUPPORT OF PCVA CLAIMANTS' OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT IN SUPPORT OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

I, Jason P. Amala, declare as follows:

1. I am one of the attorneys of record for the Claimants represented by Pfau Cochran Vertetis Amala PLLC ("PCVA Claimants").

2. I have personal knowledge of the facts set forth in this declaration.

3. I submit this declaration in support of PCVA Claimants' Objection to the Adequacy of the Debtors' Disclosure Statement in Support of Amended Chapter 11 Plan of Reorganization.

4. As reflected in the PCVA Claimants' individual proofs of claim, the story of each of these survivors is unique, including how they were sexually abused, how the abuse affected them, and the circumstances that led to the abuse. As a group, their proofs of claim reflect abuse that occurred every year from the early 1940s to 2010. The sexual abuse they suffered includes fondling, masturbation, oral copulation, and anal penetration, and many of them report either physical violence or threats of physical violence on them or their loved ones.

5. Many of the PCVA Claimants have strong and compelling claims against non-Debtor entities, including a local council and a charter organization. For example, approximately 236 PCVA Claimants have identified claims against a local council in California, including at least 58 claims

1

against the Greater Los Angeles Area Council, and approximately 143 PCVA Claimants have identified claims against a local council in New York. Similarly, approximately 88 PCVA Claimants have identified claims against the United Methodist Church, and approximately 48 PCVA Claimants have identified claims against the Church of Jesus Christ of Latter-Day Saints. As noted below, many of these non-Debtor entities may have significant assets and their own insurance separate and apart from any insurance maintained by the Debtors. Moreover, even without the benefit of discovery, which has been stayed due to the preliminary injunction, many of the PCVA Claimants already have strong and compelling claims against non-Debtor entities based solely on the bare amount of publicly available information.

6. The Debtors unquestionably failed to take reasonable steps to protect the PCVA Claimants and other children from the danger of being sexually abused, particularly given their failure to warn Scouts and their parents of that danger despite tracking abusive Scout leaders since the 1920s. However, in many instances the liability of the Debtors is eclipsed by the liability of a local council who allowed a known or alleged sex predator to serve as a Scout leader in their jurisdiction.

7. The Evergreen Council in Washington State, now known as the Mount Baker Council, allowed two known sexual predators, Charles Grewe ("Grewe") and Allen Ewalt ("Ewalt"), to work in leadership positions at the Fire Mountain Boy Scout Camp. At the time the Fire Mountain Boy Scout Camp was owned and operated by the Evergreen Council. From approximately 1981 to 1982, Grewe and Ewalt sexually abused Claimant No. 72129 at the Fire Mountain Scout Camp. A true and accurate copy of Claimant No. 72129's proof of claim is attached as **Exhibit 1**. In approximately 1980, Grewe sexually abused Claimant No. 7952 at the Fire Mountain Scout Camp. A true and accurate copy of Claimant No. 7952's proof of claim is attached as **Exhibit 2**.

8. There is no question that the Evergreen Council knew that Ewalt was a sexual abuser who posed a danger to the children at Fire Mountain. In 1980, the Evergreen Council advocated for

Ewalt's reinstatement into Scouting even though he had previously been banned from Scouting for sexually abusing multiple Scouts while he was their Scout leader. Despite knowing that Ewalt had literally molested children in Scouting, and admitted to it, the Evergreen Council allowed him to serve as the Health and Safety Officer (e.g., the camp medic) at the Fire Mountain Boy Scout Camp. A true and accurate copy of Allen Ewalt's Ineligible Volunteer File ("IV File") is attached as **Exhibit 3**.

9.    The liability of the Evergreen Council as to Grewe's abuse of Claimant No. 72129 and Claimant No. 7952 is equally clear and compelling. In 1979, prior to Grewe's abuse of Claimant No. 72129 and Claimant No. 7952, the Camp Director at the Fire Mountain Boy Scout Camp received a complaint that Grewe had sexually abused a Boy Scout at the camp. Just two years later, in 1981, the Evergreen Council received a police report detailing allegations that Grewe had sexually abused multiple minors in a Boy Scout Troop. Despite the alarming evidence that Grewe was using his position as a Scout leader to molest Boy Scouts, the Evergreen Council allowed him to continue serving as the Aquatics Director at the Fire Mountain Boy Scout Camp. It was not until 1987, after Grewe had been working at the Fire Mountain for almost ten years, that Grewe was arrested and convicted for sexually abusing children as a result of his employment as a school bus driver.

10.    As of the bankruptcy filing, PCVA had represented at least 10 Boy Scouts who were sexually abused by Grewe and/or Ewalt at the Fire Mountain Boy Scout Camp. When the Debtors filed for bankruptcy, Claimant No. 7952 was pursuing a lawsuit in Washington state court against the Debtors and the Evergreen Council. Claimant No. 7952 had already conducted significant discovery and his case was scheduled for trial on August 3, 2020. Claimant No. 7952 would have been ready for trial on that date because of his own discovery and because earlier abuse survivors who sued the Evergreen Council pursued discovery that established its liability. For example, those prior claimants deposed Grewe, a Scout leader who worked with Grewe, the former Camp Director of Fire Mountain Scout Camp, and other Scouts who were sexually abused by Grewe. During those

3

depositions, Grewe, the Scout leader who worked with Grewe, and the other Scouts who were sexually abused by Grewe all testified that Grewe's sexual abuse of Scouts had been reported to the Camp Director of Fire Mountain Scout Camp as early as 1979. Despite the Evergreen Council's clear liability, Claimant No. 7952 lost his trial date because the Debtors filed for bankruptcy. True and accurate copies of excerpts from the above-referenced depositions are attached as **Exhibit 4**.

11.     Similarly, the Atlantic Area Council in New Jersey, now known as the Jersey Shore Council, allowed a known sexual abuser to serve as a Scout leader despite the fact that the Debtors encouraged it not to do so. The Scout leader, George J. Diegelman ("Diegelman"), then used his position with the Atlantic Area Council to sexually abuse Claimant No. 25282. A true and accurate copy of Claimant No. 25282's proof of claim is attached as **Exhibit 5**.

12.     Approximately six years prior to when Diegelman sexually abused Claimant No. 25282, Diegelman was placed in the Debtors' IV Files in response to allegations that he sexually abused youth Scout members. Despite this, the Atlantic Area Council allowed Diegelman to register as a Scout leader. A true and accurate copy of Diegelman's IV File is attached as **Exhibit 6**.

13.     Like the Evergreen Council and the Atlantic Area Council, the Piedmont Council in North Carolina also allowed a known sexual abuser to serve as a Scout leader. The Scout leader, Marcus F. Bumgarner ("Bumgarner"), then used his position as a Scout leader with the Piedmont Council to sexually abuse Claimant No. 35219. A true and accurate copy of Claimant No. 35219's proof of claim is attached as **Exhibit 7**.

14.     Approximately one year prior to when Bumgarner sexually abused Claimant No. 35219, the Piedmont Council received a complaint that Bumgarner had fondled multiple Scouts at a Scout Camp and threatened to break their penises. Rather than ban Bumgarner from Scouting, the Piedmont Council placed him "on probation" for eighteen months. Just seven months later, during that "probation," Bumgarner used his position as a Scout leader to sexually abuse Claimant No. 35219. A true and accurate copy of Bumgarner's IV File is attached as **Exhibit 8**.

15. The Theodore Roosevelt Council in Arizona, now known as the Grand Canyon Council, allowed a Scout leader to remain in Scouting despite knowing that he had been charged with five counts of child molestation in California and was supposed to be banned from Scouting. The Scout leader, Henry Falk ("Falk"), then used his position as a Scout leader with the Theodore Roosevelt Council to sexually abuse Claimant No. 4680. A true and accurate copy of Claimant No. 4680's proof of claim is attached as **Exhibit 9**.

16. Approximately two years prior to when Falk sexually abused Claimant No. 4680, Falk was charged with five counts of child molestation in California. In response to the criminal charges, the Forty-Niner Council in California wrote to the Debtors and the "Western Region" of local councils, which included the Theodore Roosevelt Council, confirming that Falk would be banned from Scouting and placed in the IV Files. However, despite being banned, the Theodore Roosevelt Council allowed Falk to register as a Scout leader in its jurisdiction. A true and accurate copy of Falk's IV File is attached as **Exhibit 10**.

17. Similar to the Theodore Roosevelt Council, the Orange County Council in California also allowed a previously convicted sex offender to work closely with Scouts in its jurisdiction. The Scout leader, Rick Turley ("Turley"), used his position as a Program Director at Lost Valley Scout Camp to sexually abuse Claimant No. 16263. At the time the Lost Valley Scout Camp was owned and operated by the Orange County Council. A true and accurate copy of Claimant No. 16263's proof of claim is attached as **Exhibit 11**.

18. Approximately four years prior to when Turley sexually abused Claimant No. 16263, Turley pled guilty to kidnapping a Boy Scout and was committed to Patton State Hospital as a mentally disordered sex offender. Turley's crime was particularly notorious and widely covered by the media because in the commission of the kidnapping, Turley had hijacked a plane in an attempt to take the Scout to Canada. Despite this, after Turley was released from Patton State Hospital, the Orange County Council brought him on as the Program Director at the Lost Valley Scout Camp.

Three years later, in 1979, Turley used his position at the Lost Valley Scout Camp to sexually abuse Claimant No. 16263.

19. In line with the previous cases, the Greater New York Councils in New York also allowed a known sex offender to participate in Scouting as a Scout leader. The Scout leader, Ernest Morris ("Morris"), sexually abused Claimant No. 25289. A true and accurate copy of Claimant No. 25289's proof of claim is attached as **Exhibit 12**.

20. Approximately nine years prior to when Morris sexually abused Claimant No. 25289, the Greater New York Councils was notified that Morris was "charged with sodomy on a 12-year-old boy." In response, the Greater New York Councils purportedly banned Morris from Scouting. However, by the early 1970s, Morris was the registered Scout leader of Troop 288, which was Claimant No. 25289's Scout Troop and in the jurisdiction of the Greater New York Council. A true and accurate copy of Morris' IV File is attached as **Exhibit 13**.

21. In addition to local councils, many charter organizations also failed to take reasonable steps to protect a PCVA Claimant from being sexually abused. As reflected below, many charter organizations received one or more complaints that a child in Scouting was being sexually abused by a Scout leader, but they failed to take any action against the abuser. As with the local council examples described above, the following claims are just a few claims of PCVA Claimants that illustrate the liability of charter organizations.

22. A large number of PCVA Claimants have claims against the Church of Jesus Christ of Latter-day Saints (the "LDS Church") because it frequently ignored complaints that its Scout leaders were sexually abusing children or posed a danger to children in Scouting. For example, in 1974, a Mormon member named Robert Gene Metcalf ("Metcalf") was arrested in California for sexually abusing a minor boy. Five years later, in 1979, Metcalf was arrested in Arizona for anally raping a 13-year-old boy. As a result of the 1979 conviction, Metcalf was sentenced to six years in prison and was excommunicated from the LDS Church. After he was released from prison, however,

the LDS Church allowed Metcalf to return to the Spring Valley Ward (a local unit of the LDS Church) in Mayer, Arizona, and to serve as a Scout volunteer for one of its Cub Scout Troops. Metcalf then used his position as a Scout leader to sexually abuse Claimant No. 32543 on a Scout camping trip. A true and accurate copy of Claimant No. 32543's proof of claim is attached as **Exhibit 14**.

23. Like the LDS Church, many PCVA Claimants have claims against the United Methodist Church (the "UMC Church") because it ignored complaints or warning signs that its Scout leaders posed a danger to children. For example, in approximately 1975, the UMC Church investigated a Scout leader named Philippe Verheyen ("Verheyen") because of complaints that Verheyen "gave alcohol to some Scouts and abused them." Rather than take any action against Verheyen, or at least remove him from his position as a Scout leader, the UMC Church dropped its investigation after Verheyen threatened litigation. A true and accurate copy of Verheyen's IV file is attached as **Exhibit 15**.

24. At the time of the UMC Church's investigation into Verheyen, one of the children Verheyen was sexually abusing was Claimant No. 12940. As a result of the UMC Church's failure to take any action against Verheyen, Verheyen continued sexually abusing Claimant No. 12940 for another year. A true and accurate copy of Claimant No. 12940's proof of claim is attached as **Exhibit 16**.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Jason P. Amala

Executed on May 6, 2021