Exhibit 2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                 Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## SEXUAL ABUSE SURVIVOR PROOF OF CLAIM

This Sexual Abuse Survivor Proof of Claim must be submitted and received by **5:00 p.m. (Eastern Time)** on **November 16, 2020**. Please carefully read the following instructions included with this SEXUAL ABUSE SURVIVOR PROOF OF CLAIM and complete ALL applicable questions to the extent of your knowledge or recollection. If you do not know the answer to an open-ended question, you can write "I don't recall" or "I don't know." If a question does not apply, please write "N/A." If you are completing this form in hard copy, please write or type clearly using blue or black ink.

The Sexual Abuse Survivor Proof of Claim must be delivered to Omni Agent Solutions, the Court-approved claims and noticing agent (the "Claims Agent"), by either:

(i)      Hand delivery, first class mail, or courier the *original* proof of claim to: BSA Abuse Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, so that it is *received* on or before November 16 **, 2020 at 5:00 p.m. (Eastern Time)**;[2] or

(ii)     Electronically using the interface available at: www.OfficialBSAClaims.com on or before **November 16, 2020 at 5:00 p.m. (Eastern Time)**.

Sexual Abuse Survivor Proofs of Claim sent by email or facsimile transmission **will not** be accepted.

"You" and/or "Sexual Abuse Survivor" refers to the person asserting a Sexual Abuse Claim against the Boy Scouts of America ("BSA") related to the Sexual Abuse Survivor's sexual abuse. For this claim to be valid, the Sexual Abuse Survivor must sign this form. If the Sexual Abuse Survivor is deceased or incapacitated, the form must be signed by the Sexual Abuse Survivor's representative or the attorney for the Sexual Abuse Survivor's estate. If the Sexual Abuse Survivor is a minor, the form must be signed by the survivor's parent or legal guardian or attorney. Any Sexual Abuse Survivor Proof of Claim signed by a representative or legal guardian must attach documentation establishing such person's authority to sign the claim for the Sexual Abuse Survivor.

| **Who Is a Sexual Abuse Survivor?** |
|---|

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] If you are mailing your Sexual Abuse Survivor Proof of Claim, do not attach original documents with your Sexual Abuse Survivor Proof of Claim.

For purposes of this Sexual Abuse Survivor Proof of Claim, the term **Sexual Abuse Survivor** refers to a person who was sexually abused *before* turning eighteen (18) years of age.

## Who Should File a Sexual Abuse Survivor Proof of Claim?

This Sexual Abuse Survivor Proof of Claim is only for people who were sexually abused before turning eighteen (18) years of age and where the sexual abuse (defined below) occurred on or before February 18, 2020. This Sexual Abuse Survivor Proof of Claim is the way you assert an unsecured claim against BSA seeking damages based on Scouting-related sexual abuse.  Any person asserting a claim based on anything other than childhood sexual abuse should use the General Proof of Claim form (official bankruptcy form 410).

## What Is Sexual Abuse?

For the purposes of this Sexual Abuse Survivor Proof of Claim, **sexual abuse** means, with respect to a child under the age of eighteen (18) at the time of the sexual abuse, sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, sexual touching, sexualized interaction, sexual comments about a person's body, or other verbal or non-verbal behaviors that facilitated, contributed to, or led up to abuse, regardless of whether or not such behavior was itself sexual or against the law, and regardless of whether the child thought the behavior was sexual abuse at the time.  Sexual abuse includes behavior between a child and an adult and between a child and another child, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether the child associated the abuse with any physical, psychological, or emotional harm.  It involves behaviors including penetration or fondling of the child's body, other body-on-body contact, or non-contact, behaviors such as observing or making images of a child's naked body, showing or making pornography, or having children behave in sexual behavior as a group.

If you have a claim arising from sexual abuse and you were at least eighteen (18) years of age at the time the sexual abuse began or if you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying or hazing, you should consult the *Notice of Deadlines Requiring Filing of Proof of Claim* and file a General Proof of Claim (Official Bankruptcy Form 410).

For the avoidance of doubt, if you have a claim for sexual abuse and you were a child under the age of eighteen (18) when the sexual abuse began you must complete this form.

## You May Wish to Consult an Attorney Regarding This Matter.

You may also obtain information from the Claims Agent by: (1) calling toll free at 866-907-2721, (2) emailing at BSAInquiries@omniagnt.com, or (3) visiting the case website at www.OfficialBSAClaims.com (do not contact the Claims Agent for legal advice).

## What If I Don't File on Time?

**Failure to complete and return this Sexual Abuse Survivor Proof of Claim by November 16, 2020 at 5:00 p.m. (Eastern Time) may result in your inability to vote on a plan of reorganization and/or to receive a distribution from this bankruptcy for sexual abuse related to BSA.**

**Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152, 157 and 3571.**

## PART 1: CONFIDENTIALITY

Unless you indicate below, your identity and your Sexual Abuse Survivor Proof of Claim will be kept **confidential**, under seal, and outside the public record.  However, information in this Sexual Abuse Survivor Proof of Claim will be confidentially provided, pursuant to Court-approved guidelines, to the Debtors, the Debtors' counsel and retained advisors, certain insurers of BSA, the Tort Claimants' Committee, counsel to the Ad Hoc Committee of Local Councils (with personally identifiable information redacted), individual Local Councils solely with respect to Sexual Abuse Claims asserted against them, attorneys at the Office of the United States Trustee for the District of Delaware, the Future Claimants' Representative, the Court, and confidentially to such other persons that the Court determines need the information in order to evaluate the claim. Information in this Sexual Abuse Survivor Proof of Claim may be required to be disclosed to governmental authorities under mandatory reporting laws in many jurisdictions.

**This Sexual Abuse Survivor Proof of Claim (along with any accompanying exhibits and attachments) will be maintained as <u>confidential</u> unless you expressly request that it be publicly available by checking the "public" box <u>and</u> signing below.**

| | |
|---|---|
| ☐ | **PUBLIC**: I want my identity and this Sexual Abuse Survivor Proof of Claim (together with any exhibits and attachments) to be made part of the official claims register in these cases.  **My claim will be available for review by any and all members of the public**. |

Signature: _____

Print Name: _____

## PART 2: IDENTIFYING INFORMATION





| Law Firm Name: | Pfau Cochran Vertetis Amala PLLC | | | | |
|---|---|---|---|---|---|
| Attorney's Name: | Michael T. Pfau | | | | |
| Number and Street: | 403 Columbia Street, Ste. 500 | | | | |
| City: | Seattle | State: | WA | Zip Code: | 98104 |
| Country (not USA): | n/a | Email Address: | | michael@pcvalaw.com | |
| Telephone (Work): | 206-462-4334 | Fax No. | | 206-623-3624 | |

## PART 3:  BACKGROUND INFORMATION FOR SEXUAL ABUSE SURVIVOR

**E.    Involvement with Scouting:**

a.  Have you ever been affiliated with Scouting and/or a Scouting program?

Yes ☒      No ☐

b.  When were you involved with Scouting?

**I was involved with Scouting from approximately 1975 or 1976 until 1980.** ███████

███████████████████████████████████████ **I have attached photos of my memorabilia from**

**Scouting at the end of this form.**

c.  What type of Scouting unit (i.e., troop) were you involved with, and, if you recall, when you were involved and what was your troop or unit number?

☒ Boy Scouts **Troop Number 8** _____

☐ Cub Scouts _____

☐ Exploring Scouts _____

☐ Sea Scouts _____

☐ Venturing _____

☐ Other (please explain your involvement with Scouting): _____

| PART 4: NATURE OF THE SEXUAL ABUSE |
|---|

**(Attach additional sheets if necessary)**

**For each of the questions listed below, please complete your answers <u>to the best of your recollection</u>.**

**Note:** If you have previously filed a lawsuit about your Scouting-related sexual abuse in state or federal court, you may attach a copy of the complaint. If you have not filed a lawsuit, or if the complaint does not contain all of the information requested below, you must provide the information below to the extent of your recollection.

Please answer each of the following questions to your best ability. If you do not know or recall, please so indicate.

If you are the survivor of sexual abuse by more than one sexual abuser, please respond to each of the questions in this Part 4 for each sexual abuser.

A.    Please answer "Yes" or "No" to each of the following:

    i.    Were you sexually abused by more than one person?    Yes ☐    No ☒

    ii.    Were you sexually abused in more than one state?    Yes ☐    No ☒

B.    Please name each person who sexually abused you in relation to your involvement in Scouting. ("Scouting" includes Cub Scouts, Boy Scouts, Exploring Scouts, Sea Scouts and Venturing.)

If you do not remember the name of the sexual abuser(s), provide as much identifying information about the sexual abuser(s) that you can recall, such as their approximate age and their relationship to Scouting (e.g., the Scoutmaster of Troop 100, another Troop member of Troop 200, camp staff member, etc.).

**<u>I was sexually abused by Charles Grewe, who was a camp aquatics director at the Fire Mountain</u>**

**<u>Boy Scout Camp while I was in Scouting as described above.</u>**

C.    Other than the sexual abuser(s), please identify any person(s) you can remember who were leaders or other adults involved in your Scouting unit or the camp(s) you attended.

██████████████████████████████████████

████████████████

D.    What was each sexual abuser's position, title, or relationship to you in Scouting (check all that apply)?

    ☐ Adult Scout leader in my Scouting unit

    ☐ Adult Scout leader not in my Scouting unit

☐ Youth Scout in my Scouting unit

☐ Youth Scout not in my Scouting unit

☒ Camp personnel (e.g., camp staff) not in my Scouting unit

☐ I don't know

☐ Other (please explain why you believe the person(s) who sexually abused you had a relationship with Scouting):

E.    Where were you at the time you were sexually abused (city, state, territory and/or country)?

**At the time of the sexual abuse I was at Fire Mountain Boy Scout Camp in Mount Vernon, Washington.**

F.    What was the type of Scouting you were involved with during the sexual abuse (check all that apply)?

☒ Boy Scouts

☐ Cub Scouts

☐ Exploring Scouts

☐ Venturing

☐ Sea Scouts

☐ Other (please explain why you believe you had a connection to Scouting during the sexual abuse):

G.    What was the Scouting unit number and physical location (city, state, territory and/or country) of the Scouting unit(s) or provisional troop you were in during the time of the sexual abuse?

**During the sexual abuse I believe I was in Boy Scout unit number 8, located in Everett, Washington.**

H.    What was the name and location (city, state, territory and/or country) of the organization that chartered or sponsored your Scouting unit, including the organization that hosted meetings of your Scouting unit, during the time of the sexual abuse (e.g., church, school, religious institution, or civic group)?

(Note that such organizations are not currently parties to the bankruptcy so if you believe you may have a claim against any such organization you must take additional action to preserve and pursue any such claim.)

**I believe the organization that chartered or sponsored my Scouting unit during the time of the sexual abuse was Trinity Episcopal Church in Everett, Washington.**

I.   What was the name of the BSA Local Council(s) affiliated with your Scouting unit(s), any Boy Scout camp or other Scouting activity during the time of the sexual abuse?

(Note that such BSA Local Councils are not currently parties to the bankruptcy so if you believe you may have a claim against any such BSA Local Council(s) you must take additional action to preserve and pursue any such claim.)

**I believe the BSA Local Council affiliated with my Scouting unit was the Evergreen Area Council.**

J.   In which of the following places did the sexual abuse take place?  Check all that apply.

☐ At or in connection with a Scout meeting.

☒ At or in connection with a Scout camp.

☐ At or in connection with another Scouting-related event or activity (please explain):

_____

☐ Other (please explain – for example, schools, churches, cars, homes or other locations):

K.   When did the first act of sexual abuse take place? If you do not remember the calendar date, what school grade were you in at the time and what season of the year was it (spring, summer, fall, winter), and what age were you when it started?  If the sexual abuse took place over a period of time, please state when it started and when it stopped.  If you were sexually abused by more than one sexual abuser indicate when the sexual abuse by each of the sexual abusers started and stopped.

==**I believe the first act of sexual abuse by Charles Grewe happened in approximately 1980. I was**==

==**approximately 14 years old during the sexual abuse.**==

L.   Please describe what happened to you.  You can provide a description in your own words and/or use the checkboxes below.

i.   About how many times were you sexually abused?

☐ I was sexually abused once.

☒ I was sexually abused more than once.

If you were sexually abused more than once, please state how many times (if you recall): **I was sexually**

**abused by Grew at least 26 times. See below narrative.**

M.   Please describe what happened to you.  You can provide a description in your own words and/or use the checkboxes below.  (Check all that apply.)  **Please note that the boxes are not meant to limit the characterization or description of your sexual abuse.**

i.   What did the sexual abuse involve? **See below narrative.**

☐ The sexual abuse involved touching outside of my clothing.

☒ The sexual abuse involved touching my bare skin.

☒ The sexual abuse involved fondling or groping.

☒ The sexual abuse involved masturbation.

☒ The sexual abuse involved oral copulation / oral sex.

☒ The sexual abuse involved the penetration of some part of my body.

ii.    Did any of the following occur in connection with the sexual abuse:

☐ The acts of sexual abuse against me also involved other youth.

☐ The sexual abuse involved photographs or video.

☒ Even though I did not want it, my body responded sexually to the sexual abuse.

☒ The sexual abuse involved actual or implied threats of violence or other adverse consequences if I disclosed the sexual abuse.

☐ The sexual abuse involved gifts, privileges, experiences, and other rewards or bribes in addition to the activities and awards normally part of Scouting.

☐ The sexual abuser(s) made my family think they could be trusted.

☐ At the time of the sexual abuse, my family or I had significant financial, social, behavioral or other challenges.

If you wish to provide a narrative, please describe the sexual abuse in as much detail as you can recall in the lines below.  You may attach additional pages if needed.

**I was sexually abused at least 26 times by Charles Grewe, the aquatics director of the Fire Mountain Boy Scout Camp. The abuse included Grewe asking me to remove my clothes, Grewe touching my buttocks and genitals under my clothing, Grewe asking me to masturbate myself, Grewe asking me to masturbate him, Grewe asking me to touch him in a sexual way, Grewe making me perform oral sex on him, and Grewe having anal sex with me.**

**I was working at the Fire Mountain Boy Scout Camp for six weeks that summer, and Grewe was working as the camp aquatics director. It was the summer ▆▆▆▆▆▆▆▆▆▆▆**

**When I was brought on staff, I was told to choose where I wanted to work. I selected aquatics because I was working at the camp in order to earn my Life Saving patch so that I could work as a lifeguard the next summer. Despite my preference, I was initially put on the ▆▆▆▆▆▆▆**

███████████ I went to camp director ████████ and explained that I wanted to earn the Life Saving patch, and he transferred me to work in aquatics with Charles Grewe.

Grewe was the only person who could help me train for and earn the Life Saving patch. Every day, we would practice rescuing one another from the water. When we first ran the drill, as I was rescuing Grewe, he reached down under the murky water and grabbed my penis. I became erect, and he asked me if it felt good. I was shaking all over. Every time we ran the drill after that, he would masturbate me under the water while I rescued him, and he made me masturbate him under the water as he rescued me.

After we ran the rescuing drills, Grewe and I would shower together. Grewe would masturbate me to ejaculation in the showers, as well. We would each perform oral sex on each other in the showers, and Grewe once had anal sex with me in the showers.

This pattern happened five days a week during my lifesaving training. ████████████████

████████████ I was allowed to go home on the weekends. When I did, I'd just sit in my bed and stare out the window. When it came time to go back to camp, I would scream and yell and complain that I didn't want to go, but I couldn't bring myself to say what was going on. ██████████████

████████████████████████████████████ so I kept going back.

I started to withdraw at the camp, too. There is a photo of the staff, and I'm the only one not smiling. It was like an instant depression set in after the first time Grewe abused me. I was extremely anxious that others would find out, and Grewe told me that if they did, I would be kicked out of Scouting and I would never be able to earn the Life Saving patch.

I was scared of Grewe. He was very tall and big. One night, I was too depressed to go to dinner, so I told my tentmate I would skip it. I just wanted to sleep, and I just wanted to go home. He told the others that I wasn't feeling well, and they sent Grewe to check on me. I could hear him coming and I thought, "God help me now." Grewe had penetrative anal sex with me in my tent. Afterward, I went to the outhouse and cleaned his ejaculate off me as I cried. When I returned, Grewe walked

**me up to dinner, and I had to act like everything was fine and socialize with the other Scouts. The abuse didn't stop until camp ended.**

**At the beginning of the summer, I had wanted to go to camp. I had thought it would be so much fun, and I had aspirations of becoming an Eagle Scout. I was all in on Scouting. After camp, I immediately quit our troop.** ████████████████████████

████████████████████████████████████ **The whole idea of the BSA was poisoned for me after Grewe abused me.**

N.    Did you or anyone on your behalf tell anyone involved in Scouting about the sexual abuse at or about the time of the sexual abuse?    Yes ☐    No ☒

O.    Did you or anyone on your behalf report the sexual abuse to law enforcement or investigators at or about the time of the sexual abuse?    Yes ☐    No ☒

P.    If you can remember anyone you may have ever told about the sexual abuse at the time, including anyone involved with Scouting, friends, relatives, and/or law enforcement, please list their name and when you told them.

**N/A. However,** ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Q.    Did you have any relationship with your sexual abuser outside of Scouting? Check all that apply:

☐ Religious organization leader, member, volunteer

☐ Family member or relative

☐ Coach/athletics

☐ Teacher

☐ Neighbor

☐ Other (please explain and add any other information you remember to the categories above):

**N/A.**

R.    Are you aware of anyone who knew about the sexual abuse?

**I am not aware of anyone knowing about my abuse. However, BSA's Ineligible Volunteer file for Charles Grewe shows that he was reported as a child molester by Scouts as early as 1979. He was not removed from scouting until 1987.**

| PART 5: IMPACT OF SEXUAL ABUSE |
|---|

**(Attach additional pages if necessary)**

**(If you currently cannot describe any harm you have suffered on account of the sexual abuse, you may omit this section for now. However, you may be asked to provide the information requested at a later date.)**

A.  Please describe how you were impacted, harmed, damaged, or injured in ways that you now connect as being related to the sexual abuse you described above. (Check all that apply.)  You can provide a description in your own words and/or use the checkboxes below. **Please note that the boxes are not meant to limit the characterization or description of the impact(s) of your sexual abuse**.

    ☒ Psychological / emotional health (including depression, anxiety, feeling numb, difficulty managing or feeling emotions including anger)

    ☒ Post traumatic stress reactions (including intrusive images, feelings from the abuse, numbing or avoidance behaviors)

    ☐ Physical health (including chronic disease, chronic undiagnosed pain or physical problems)

    ☒ Education (including not graduating high school, being unable to finish training or education)

    ☒ Employment (including difficulties with supervisors, difficulty maintaining steady employment, being fired from jobs)

    ☒ Intimate relationships (including difficulty maintaining emotional attachments,  difficulty with sexual behavior, infidelity)

    ☒ Social relationships (including distrust of others, isolating yourself, not being able to keep healthy relationships)

    ☒ Alcohol and/or substance abuse (including other addictive behavior such as gambling)

    ☐ Other (please explain and add any other information you remember to the categories above)

If you wish to provide a narrative, please describe how you were impacted, harmed, damaged, or injured in ways that you now connect as being related to the sexual abuse you described above in as much detail as you can recall in the lines below.  You may attach additional pages if needed.

**Since I was sexually abused by Charles Grewe, I have struggled with anxiety, anger, shame, guilt, depression, substance abuse, sexual dysfunction, trust issues, suicidal thoughts, marriage**

problems, including divorce, poor academic performance in school, a failure to reach my professional potential at work, intimacy problems, and sleep problems.

Before the abuse, I was a straight-A student, and ███████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████

However, I became very depressed after I returned from camp, and I didn't know how to handle it. I knew that alcohol made people feel good, so I drank my first beer at 14 █████████ I started drinking ██████████████ when I discovered that I could numb my memories of the abuse with substances. I did alright in school, but I never studied. I didn't care about school anymore, ███████████████████████████████████████████████████████

████████████████ and that made me feel better.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ I drank heavily, and I soon moved on to marijuana and cocaine.

████████████████████████████████████████████████████████████████████████████

██████████ I withdrew from my family, and ████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Throughout my life, I have struggled to be intimate in contexts that remind me of the abuse, like hot tubs.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████

**It wasn't until I was about 53 years old that I made the connection to the abuse. I realized that this wasn't my fault, that I'd been carrying an invisible burden this whole time.** ████

████████████████████████████████████████████████████████████

████████████████████████████████ **Even though I know it's not my fault, I'm still dealing with it.**

████████████████████████████████████████████████████████████████████

## PART 6: ADDITIONAL INFORMATION

**A.** **Prior Litigation**.

    i.    Was a lawsuit regarding the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim filed by you or on your behalf.

    Yes ☒    No ☐  (If "Yes," you are required to attach a copy of the complaint.) **See attached.**

**B.** **Prior Bankruptcy Claims.** Have you filed any claims in any other bankruptcy case relating to the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim? Yes ☐    No ☒  (If "Yes," you are required to attach a copy of any completed claim form.)

**C.** **Payments.** Have you received any payments related to the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim from any party, including BSA? Yes ☐    No ☒

    i.    If yes, how much and from whom?

    _____

**D.** **Current Bankruptcy Case.** Are you currently a debtor in a bankruptcy case? Yes ☐ No ☒

    i.    If yes, please provide the following information:

    Name of Case: _____ Court: _____

    Date filed: _____ Case No. _____

    Chapter: 7 ☐  11 ☐  12 ☐    13 ☐  Name of Trustee: _____

[Signature page follows – you must complete and sign the next page]

**SIGNATURE**

       **To be valid, this Sexual Abuse Survivor Proof of Claim must be signed by you.** If the Sexual Abuse Survivor is deceased or incapacitated, the form must be signed by the Sexual Abuse Survivor's representative or the attorney for the Sexual Abuse Survivor's estate.  If the Sexual Abuse Survivor is a minor, the form must be signed by the Sexual Abuse Survivor's parent or legal guardian, or the Sexual Abuse Survivor's attorney.  (Any form signed by a representative or legal guardian <u>must</u> attach documentation establishing such person's authority to sign this form for the Sexual Abuse Survivor.)

**Penalty for presenting a fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152, 157 and 3571.**

**Check the appropriate box:**

☒      I am the Sexual Abuse Survivor.

☐      I am the Sexual Abuse Survivor's attorney, guardian, kinship (or other authorized) caretaker, executor, or authorized representative.

☐      Other (describe): _____

**I have examined the information in this Sexual Abuse Survivor Proof of Claim and have a reasonable belief that the information is true and correct.**

**I declare under penalty of perjury that the foregoing statements are true and correct.**

1
2
3
4
5
6
7
8

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR ███████████

9
10

███, 

                        Plaintiff,

NO. ████████████

COMPLAINT FOR DAMAGES

11

        v.

12
13
14
15
16
17

BOY SCOUTS OF AMERICA, a
congressionally chartered corporation
authorized to do business in the State of
Washington; EVERGREEN AREA COUNCIL,
BOY SCOUTS OF AMERICA, n/k/a MOUNT
BAKER COUNCIL, BOY SCOUTS OF
AMERICA

                        Defendants.

18
19

        Plaintiff ███, by and through his attorneys, Michael T. Pfau, Jason P. Amala, and
Vincent T. Nappo of Pfau Cochran Vertetis Amala PLLC, hereby alleges as follows:

20

## I.    INTRODUCTION

21
22
23
24

        1.1.    This case arises from childhood sexual abuse that ███ suffered at the hands of
an adult Scout leader who defendants knew or should have known posed a danger to him and
other children.  Despite their knowledge, the defendants failed to warn Plaintiff of that danger
or otherwise take reasonable steps to protect him from being sexually abused.

COMPLAINT FOR DAMAGES
Page 1 of 29

## II.    PARTIES

2.1    Plaintiff ███ is a man who resides in ████████████████████ When ███ was a minor, he was sexually abused by Charles S. Grewe at Fire Mountain Boy Scout Camp.  At the time, ███ and ████████████████████████ and ███ was a Boy Scout member of Troop 8 in Everett, Washington.  He was also an employee of the defendants, working at Fire Mountain Boy Scout Camp.  In the interest of privacy, this complaint identifies ███ by his initials only.

2.2    At all times material hereto, defendant Boy Scouts of America ("BSA" or "Boy Scouts") was a corporation authorized to do business in Washington, and at all times material hereto, including the present, BSA transacted business throughout ████████ and ████████████    At all times relevant to this complaint, BSA authorized local councils and local organizations to charter, sponsor, and operate Boy Scout Troops throughout Washington, including defendant Evergreen Area Council (n/k/a Mount Baker Council) and Boy Scout Troop 8.  Collectively, BSA, the local councils, and the local organizations would select the leaders of the Boy Scout Troops, including the leaders of Troop 8, although BSA retained and exercised the ultimate authority to decide who could be a Troop leader.  BSA also had the right to control the means and manner of the staffing, operation, and oversight of any Boy Scout Troop, including Troops 8.  In exchange for BSA's name, programming, and endorsement, the leaders and members of the Troops would pay BSA an annual membership fee, including the leaders and members of Troop 8.

2.3    At all times material hereto, defendant Evergreen Area Council, Boy Scouts of America, n/k/a Mount Baker Council, Boy Scouts of America ("Evergreen Area Council"), was a Washington non-profit corporation that conducted business in ████████████

//

COMPLAINT FOR DAMAGES
Page 2 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

██████ and ██████████ Washington, and acted as an agent of defendant Boy Scouts of America as to the Boy Scout Troops under its jurisdiction, including Troop 8.

2.4    Defendants BSA and Evergreen Area Council are collectively referred to herein as "the defendants."

2.5    At all times material hereto, defendants BSA and defendant Evergreen Area Council owned and operated Fire Mountain Boy Scout Camp ("Fire Mountain"), located on 440 acres in Mount Vernon, Skagit County, Washington. The defendants purchased and began operating Fire Mountain in the early 1970s, and since that time have utilized Fire Mountain to promote and benefit their Scouting program, including during the times that the Plaintiffs attended Fire Mountain and were abused at Fire Mountain. Upon information and belief, the defendants hired, supervised, and retained the staff, leaders, and volunteers who operated, coordinated, and supervised the "Scout Camp" program at Fire Mountain, including Jack Siegal, Mike Armitage, Charles S. Grewe, and others.

2.6    Fire Mountain is a year-round Boy Scout Camp that offers resident camping during the summertime for Boy Scouts who participate in "Scout Camp." The defendants represented and marketed Fire Mountain as a beneficial and safe environment for Boy Scouts to recreate and work, including the Plaintiff, and invited Boy Scouts from all over the Pacific Northwest to work at the camp and participate in "Scout Camp," a week-long overnight camp run by the defendants. Every Boy Scout was required to pay a fee to the defendants to participate in Scout Camp. On average, Fire Mountain would accommodate twelve Boy Scout Troops per week. While there, the Boy Scouts spent most of their time earning merit badges. The defendants ran the "Scout Camp" program throughout the summer months,

//

//

COMPLAINT FOR DAMAGES
Page 3 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

cycling in hundreds of Boy Scouts over that timeframe.   During the "off-season," the defendants allowed Boy Scout Troops to use the Fire Mountain grounds and facilities on a reservation basis for a fee.

2.7   At all times material hereto, Troops 8 utilized Fire Mountain for Scouting activities, including but not limited to spending one week each summer at Scout Camp. Additionally, as described further herein, Plaintiff was employed by the defendants as an employee of the Fire Mountain Boy Scout Camp staff.

### III.   JURISDICTION AND VENUE

3.1   At the time this cause of action arose, and currently, defendant BSA transacted business throughout █████████████████

3.2   As such, this Court has jurisdiction over this matter pursuant to RCW 2.08.010, and venue is proper in this Court pursuant to RCW 4.12.020 and 4.12.025.

### IV.   STATEMENT OF FACTS

A.   **Numerous Boys at Fire Mountain Boy Scout Camp Reported That Adult Leaders Charles Grewe and Allen Ewalt Sexually Abused Them at Fire Mountain Boy Scout Camp, but the Defendants Did Nothing in Response to Protect Children**

4.1   At all relevant times, Charles Grewe was one of Fire Mountain's camp leaders, and worked primarily as the Fire Mountain's Aquatics Director.   Grewe also participated as a Boy Scout leader outside of Fire Mountain as an Assistant Scoutmaster of Troop 41 located in Lake Stevens, Washington.   During his tenure in Scouting, the defendants represented Grewe as a safe, trustworthy, and highly ethical leader, as evidenced by the numerous awards they granted to him, including Eagle Scout, the Vigil Honor award, Order of the Arrow, Award of Merit, Scouting Training Award, and the Bronze Palm.

4.2   From approximately 1979 to 1983, Jack Siegal served as Camp Director at Fire Mountain Boy Scout Camp.   As Camp Director, the defendants relied on Mr. Siegal to oversee the day to day operations of the camp and to maintain a safe environment for the

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334   Fax:  (206) 623-3624
http://www.pcvalaw.com

camp's Scout participants, including protecting the children at the camp from foreseeable harm, such as the danger of being sexual abused. In that capacity, the defendants maintained day to day control over Mr. Siegal's actions, and Mr. Siegal acted under the day to day direction and control of the defendants.

4.3     From approximately 1979 to 1981, Mike Armitage served as the Program Director at Fire Mountain Boy Scout Camp. As Program Director, the defendants relied on Mr. Armitage to oversee the day to day operations of camp programs and business operations, and to maintain a safe environment for the camp's Scout participants, including protecting the children at the camp from foreseeable harm, such as the danger of being sexually abused. In that capacity, the defendants maintained day to day control of Mr. Armitage's actions, and Mr. Armitage acted under the day to day direction and control of the defendants.

4.4     Since at least 1979, the defendants knew, or certainly should have known, that Grewe was a sexual predator of young boys. Yet, between approximately 1977 and 1987, Grewe was allowed to continue working in Scouting where he repeatedly sexually abused numerous boys. According to a number of men who attended Fire Mountain as Scouts in the 1970s and 1980s, Grewe was well-known for using his position at the camp to sexually abuse young Scout campers and employees.

4.5     For example, in 1979, a young Scout camper, ████, told Mr. Siegal and Mr. Armitage, the two highest ranking leaders at Fire Mountain, that Grewe sexually abused him at the swim beach. Similar reports were made by others in 1980 and 1981. Despite these complaints, however, the defendants failed to remove Grewe from his position at the camp or to otherwise limit his access to young boys.

//

COMPLAINT FOR DAMAGES
Page 5 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334   Fax: (206) 623-3624
http://www.pcvalaw.com

4.6    As a result, Grewe abused numerous boys in Scouting.  For example, in approximately 1980 and 1981, Grewe used his role as Assistant Scoutmaster to sexually abuse boys in Troop 41 based in Lake Stevens, Washington.  A number of the boys in that Troop complained that Grewe sexually abused them.  The Scoutmaster of Troop 41, Sam Twining, reported this information to the Evergreen Area Council's Scout Executive; however, the Scout Executive summarily dismissed the molestation allegations, and nothing was done to limit Grewe's involvement in Scouting, including his work at Fire Mountain, and nothing was done to limit his access to children.

4.7    As detailed in the Boy Scouts' internal "Perversion Files," the defendants finally removed Grewe from Scouting in 1988, but only after he was criminally convicted of molesting children on a school bus unrelated to Scouting. (*See* **Exhibit A** attached hereto, which is a true and accurate copy of BSA's "Perversion File" on Grewe.)

4.8    During all relevant times, Allen Ewalt was one of Fire Mountain's camp leaders, and worked primarily as the camp's medic.  The defendants allowed Ewalt to serve as camp medic at Fire Mountain, and allowed him to have access countless children, despite knowing that Ewalt posed a very serious danger of foreseeable harm to young boys.  For example, the defendants knew or should have known that Ewalt had a history of sexually abusing children prior to working at Fire Mountain because defendant BSA previously removed him from a position as a Scout leader in 1967 as a result of "homosexual activities with the boys in the Troop," allegations he allegedly did not deny. In addition, Ewalt was reportedly removed from Scouting in 1980 for alleged "homosexual activities with boys," but was then allowed to continue in working in Scouting shortly thereafter.  Ewalt continued to allegedly abuse boys at Fire Mountain Scout Camp until 1987 when he was again removed for continuing to sexually abuse boys at the camp.  (*See* **Exhibit B** attached hereto, which is a true and accurate copy of BSA's "Ineligible Volunteer File" on Ewalt.)

COMPLAINT FOR DAMAGES
Page 6 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

**B.    Boy Scout Leader Charles Grewe Sexually Abused ▇▇ at Fire Mountain Boy Scout Camp**

4.9    From approximately 1976 to 1981, ▇▇ participated in various Scouting activities with Troop 325, including attending Fire Mountain Boy Scout Camp.  ▇▇'s participation at Fire Mountain required him to stay overnight at the camp, and during that time he was entrusted in the custody and care of the defendants.

4.10    In the summer of 1980, ▇▇ worked at Fire Mountain as a "Counselor in Training" (known as "CIT"), and the defendants ordered him to share a tent with Grewe. Over the next several weeks, Grewe groomed ▇▇ and then sexually abused him approximately a dozen times.  The abuse included fondling, oral sex, and anal sex.  When ▇▇ reported the abuse to the Fire Mountain Program Manager, Mike Armitage, Mr. Armitage warned ▇▇ not to say bad things about Grewe and ignored what was happening. Although the abuse stopped, which creates a reasonable inference that Mr. Armitage spoke with Grewe about the abuse, ▇▇ was required to continue sleeping in the same tent as Grewe until his employment ended.

4.11    In the summer of 1981, ▇▇ returned to work at Fire Mountain as a Counselor.  Grewe approached ▇▇ early in the summer and attempted to further abuse him. ▇▇ avoided the assault, but spent the rest of the summer paranoid and riddled with anxiety, afraid that Grewe would rape him or reveal the abuse to his peers at the camp.

**C.    Boy Scout Leader Charles Grewe Sexually Abused ▇▇ at Fire Mountain Boy Scout Camp**

4.12    From approximately 1981 to 1985, ▇▇ participated in various Scouting activities with Troop 43 located in Lake Stevens, Washington, including attending Fire Mountain Boy Scout Camp.

//

COMPLAINT FOR DAMAGES
Page 7 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

4.13    In the summer of 1984 or 1985, and while he was still a child, ██████ was sexually abused by Grewe while he worked at Fire Mountain as a Counselor in Training.  At first, Grewe ingratiated himself with ██████ by acting like a trustworthy father figure.  As the summer progressed, Grewe started to introduce sexually charged discussions about masturbation, sex, and dating.  Once Grewe had gained ██████'s trust, he convinced him that it would be okay to take a shower alone together.  While showering side by side, Grewe molested ██████ all over his body.

4.14    Sometime after ██████ was abused at Fire Mountain, Grewe sexually abused him during a Boy Scout event at Grewe's home in Lake Stevens, Washington.  They were working on a merit badge or some other Scout-related project when Grewe suddenly started wrestling with ██████  He pinned ██████ to the ground and molested his genitals for an extended period of time.

**D.    Boy Scout Leaders Charles Grewe and Allen Ewalt Sexually Abused ██████ at Fire Mountain Boy Scout Camp**

4.15    In approximately 1981 and 1982, and while ██████ was still a child, ██████ worked for the defendants at Fire Mountain as a "Counselor in Training" (known as "CIT") and Camp Counselor, in addition to attending Scout Camp for one week with Troop 70. The defendants compensated ██████ to work at Fire Mountain as a CIT and the defendants benefited financially from his labor at Fire Mountain.  As an employee of Fire Mountain, ██████ was required to stay overnight at the camp throughout the summer, and during that time he was entrusted in the custody and care of the defendants.

4.16    In approximately 1981, ██████ was sexually abused by Grewe while he was working as a CIT.   ██████ had just performed the "swim test" and was standing on the beach shivering.  Grewe told ██████ he needed to treat him for hypothermia.  Grewe took ██████ into the

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

swim tower and reached both hands into ███'s swimsuit and molested his penis and genitals. Afterwards, ███ reported the abuse to Fire Mountain's program director, Mike Armitage. ███ told Mr. Armitage that Grewe had molested his penis and, upon request, demonstrated the abuse for Mr. Armitage.  Rather than counsel ███, Mr. Armitage justified and defended Grewe's conduct as if it were a legitimate means to treat hypothermia, and then sternly advised ███ to keep quiet about Grewe's behavior. Mr. Armitage warned ███ that he needed to keep quiet because if anyone found out about the abuse the defendants' camp would probably be shut down.  He manipulated ███ into silence by telling him, "you don't want to be the reason for the camp's closure, right?"  When ███ asked if he should report the incident to Fire Mountain's camp director, Jack Siegal, Mr. Armitage told him, "No, I will take care of it."

4.17    Despite having reported that Grewe sexually abused him, Grewe remained in the same camp leadership position and ███ was forced to work with Grewe for the rest of the summer and the entire next camp season.  To make matters worse, Mr. Armitage acted as if Grewe had done nothing wrong, which gave ███ the impression that Grewe was "untouchable."  While ███ did his best to avoid Grewe after the abuse, it was inevitable that they would run into each other since they worked together and Grewe was a camp director. As a result, ███ lived and worked during this time period with constant fear and anxiety that Grewe would sexually abuse him and that other Scouts would find out about the abuse.

4.18    The following year, in approximately 1982, ███ was sexually abused by Fire Mountain's camp medic, Allen Ewalt.  At that time, ███ was an employee on the Fire Mountain dining hall staff.  ███ went to the camp infirmary due to a knee injury.  As part of his "treatment," Ewalt made ███ strip naked and lie on the examination table with his penis and genitals exposed.  Ewalt molested ███ all over his body, including his penis and genitals, supposedly to "examine" his injury.  During the "exam," Ewalt tried to convince ███ to

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

undergo an enema, but ██ became so frightened that he ran out of the infirmary and hid in a tree for the rest of the day in fear the Ewalt would find him and further abuse him.

**E.    Boy Scout Leader Charles S. Grewe Sexually Abused ██ and ██ During Troop 41 Activities**

4.19    From approximately 1977 to 1981, ██ And ██ were Boy Scouts and belonged to Troop 41, which was chartered, sponsored, and operated by the defendants, who selected its leaders and oversaw its operations and activities.  During this time period, ██ and ██ participated in various scouting activities with Troop 41, including but not limited to weekly meetings, merit badge projects, and camping trips.

4.20    In approximately1980, Scout leader Charles Grewe sexually abused ██ on the ride home from Fire Mountain during the fall or winter months.  The two of them had spent the day at Fire Mountain working on a merit badge project.  ██ was sleepy from the long day's work;  Grewe convinced him to rest his head on his lap near his genitals while they made the long drive home.

4.21    On another occasion, Grewe sexually abused ██ at the Lake Stevens Fire Hall where Troop 41 met for weekly scout meetings.  The two of them were working on a merit badge project when Grewe started talking to him about masturbation and fondling ██'s genitals.

4.22    The final incident occurred during a merit badge project at Grewe's home. ██'s parents dropped him off at Grewe's home to work on the merit badge project because they believed Grewe was a safe and trustworthy Scout leader.  While working on the project, Grewe pinned ██ to the ground, forcefully removed ██'s pants, and fondled his genitals while attempting to give him an erection.

//

//

COMPLAINT FOR DAMAGES
Page 10 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

1
2
3

4.23    In 1981, Scout leader Charles Grewe sexually abused ███ after a Scout meeting at the Lake Stevens Fire Department.  Grewe fondled ███'s genitals and talked to him about masturbation and other sexual topics.

4
5
6
7
8

4.24    In 1981, ███ and ███ reported their abuse to Troop 41 Scoutmaster.  As noted, the Scoutmaster of Troop 41 reported this information to the Evergreen Area Council's Scout Executive in 1981 and local law enforcement, but Grewe was allowed to remain in Scouting and continue working at Fire Mountain Boy Scout Camp with unlimited access to young boys.

9
10

**F.    Boy Scout Leader Charles Grewe and Allen Ewalt Sexually Abused ███ at Fire Mountain Boy Scout Camp**

11
12
13
14

4.25    From approximately 1979 to 1987, ███ and his family were actively involved with activities sponsored by defendants Boy Scouts of America and Evergreen Area Council. During this time period, ███ was a Boy Scout and belonged to Boy Scout Troop 8, which was chartered, sponsored, and operated by the defendants, who selected its leaders and oversaw its operations and activities.

15
16
17
18
19
20

4.26    From approximately 1979 to 1987, ███ participated in various Scouting activities with Troop 8, including attending Fire Mountain Boy Scout Camp.  ███'s participation at Fire Mountain required him to stay overnight at the camp, and during that time he was entrusted in the custody and care of the defendants.  As a Scout camper, ███ paid a fee to the defendants to attend Fire Mountain, and the defendants benefitted financially from his participation at the camp.

21
22
23
24

//

//

//

COMPLAINT FOR DAMAGES
Page 11 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

1
2
3
4
5
6
7

4.27    In approximately 1983, and while ▮▮▮ was still a child, ▮▮▮ worked for the defendants at Fire Mountain as a "Counselor in Training" (known as "CIT"), in addition to attending Scout Camp for one week with Troop 8. The defendants compensated ▮▮▮ to work at Fire Mountain as a CIT and the defendants benefited financially from his labor at Fire Mountain. As an employee of Fire Mountain, ▮▮▮ was required to stay overnight at the camp throughout the summer, and during that time he was entrusted in the custody and care of the defendants.

8
9
10
11
12
13
14
15
16
17

4.28    While ▮▮▮ was working as a CIT at Fire Mountain, he was sexually abused by Charles Grewe and Allen Ewalt.  Ewalt ordered ▮▮▮ to strip naked and, then Ewalt and Grewe fondled his penis while purporting to "evaluate him" and provide "medical treatment" at the medical infirmary.  Grewe also showered with ▮▮▮ on numerous occasions before and after the molestation incident.  In addition, Grewe molested ▮▮▮'s penis at his home after giving him a ride from Scout camp.  While ▮▮▮ did his best to avoid Grewe after the abuse, it was inevitable that they would run into each other since they worked together and Grewe was a camp director.  As a result, ▮▮▮ lived and worked during this time period with constant fear and anxiety that Grewe would sexually abuse him and that other Scouts would find out about the abuse.

**G.     Boy Scout Leader Charles Grewe Sexually Abused Plaintiff ▮▮▮**

18
19
20
21
22
23

4.29    From approximately 1977 to 1981, between ages 11 and 15, ▮▮▮ and his family were actively involved with activities sponsored by defendants Boy Scouts of America and Evergreen Area Council.  During this time period, ▮▮▮. was a member of Boy Scout Troop 8, which was chartered, sponsored, and operated by the defendants, who selected its leaders and oversaw its operations and activities.

//

24

COMPLAINT FOR DAMAGES
Page 12 of 29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4.30    From approximately 1977 to 1981, ███ participated in various Scouting activities with Troop 8, including attending Fire Mountain Boy Scout Camp.    ███'s participation at Fire Mountain required him to stay overnight at the camp, and during that time he was entrusted in the custody and care of the defendants.  As a Scout camper, ███ paid a fee to the defendants to attend Fire Mountain, and the defendants benefitted financially from his participation at the camp.

4.31    In approximately 1980, ███ worked for the defendants at Fire Mountain, in addition to attending Scout Camp for one week with Troop 8. The defendants compensated ███ to work at Fire Mountain and the defendants benefited financially from his labor at Fire Mountain.  As an employee of Fire Mountain, ███ was required to stay overnight at the camp throughout the summer, and during that time he was entrusted in the custody and care of the defendants.

4.32    While ███ was working at Fire Mountain, he was sexually abused by Charles Grewe numerous times, including fondling, masturbation, oral sex, and penetration.  Grewe also showered with ███ on numerous occasions before and after the molestation incidents.  As a result, ███ lived and worked during this time period in constant fear and anxiety that Grewe would sexually abuse him and that other Scouts would find out about the abuse.  In addition, the sexual abuse has caused ███ to experience severe psychological, mental and emotional injuries, shame, humiliation and loss of enjoyment of life.  Plaintiff only recently, in 2019, has started to take steps to understand the nature and extent of the injuries he has suffered as a result of the abuse and the injuries for which this claim is brought.

//

//

//

COMPLAINT FOR DAMAGES
Page 13 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

**H.    Plaintiff Participated in Boy Scouts and Fire Mountain Because of Misrepresentations by the Defendants**

4.33    Plaintiff participated in Scout activities because the defendants invited him to participate.  Plaintiff's parents allowed him to do so because the defendants represented that Scout activities were safe for their child and that Scout leaders like Grewe could be trusted with their child.

4.34    In his capacity as a Scout leader and the Fire Mountain Aquatics Director, the defendants authorized and encouraged Grewe to befriend, mentor, and educate the boys attending Fire Mountain and other Scout activities, including Plaintiff.  They also authorized and encouraged him to gain the trust and respect of Scout parents, including Plaintiff's parents.

4.35    Over time, Grewe used his position as a Scout leader and Aquatics Director to ingratiate himself with Plaintiff, and to gain the confidence and trust of Plaintiff.  In short, Grewe did what the defendants authorized and expected him to do as Scout leaders and Scout Camp leaders.

4.36    The defendants authorized and expected Grewe to act in this manner because they financially benefited from every boy who participated in Scouting, including the annual dues and fees they paid to participate and keep participating, as well as the fees they paid the defendants to attend Fire Mountain.

4.37    The Plaintiff's parents allowed their sons to participate in Scouting based on the representations of the defendants that their Scouting program provided safe, beneficial, and moral activities for their son, and that Scout leaders, including Grewe, were morally fit men who could be trusted with their child.  These were some of the major points the defendants used in their marketing materials regarding Scouting.

//

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

4.38    Plaintiff and his parents relied upon these representations, including the actual and ostensible expertise and judgment of the defendants in selecting morally upright men to be Scout leaders, when they trusted Grewe with Plaintiff's care, allowed him to supervise Plaintiff, and allowed Grewe to act as his role model.  If the defendants had not made those representations, Plaintiff's parents would not have allowed Plaintiff to participate in Scouting and would have prevented Grewe from targeting him.

4.39    The relationship between the defendants and Grewe, as well as the representations of the defendants to Plaintiff and his parents about Scouting, Grewe, created a duty on the part of the defendants to ensure the Scouting program was made as reasonably safe as possible from known dangers, and to warn Plaintiff and his parents of those dangers.

4.40    Moreover, from at least the 1960s, if not earlier, defendants knew that Scout leader positions were being used by predatory child molesters to victimize children, and that they had an institution-wide or systemic child abuse problem.  Between 1957 and when Grewe started abusing Plaintiff in 1980, an average of sixty Scout leaders were discovered abusing children each and every year.  This number does not include those who remained undiscovered.

4.41    Despite their knowledge that likely thousands of boys had been abused in Scouting prior to Plaintiff's abuse, and despite their knowledge that both Grewe was a child predator, defendants failed to warn Plaintiff or his parents that sexual predators were using their Scouting program to target and molest children at Fire Mountain, failed to implement alternative child sexual abuse policies to replace the ones that were obviously not working, failed to educate Plaintiff and his parents about the dangers of sexual abuse, failed to change their process for selecting and monitoring Scout leaders, and failed to warn Plaintiff or his parents about the danger posed by Grewe.

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

4.42    Given the consistency of the abuse by Scout leaders and the number of abused children, defendants knew to a moral certainty that such failures would reasonably lead to at least some number of other boys being sexually abused by Scout leaders while participating in Scouting or while the Scout leaders were held out to parents and the community as safe and trustworthy because of their position.

4.43    As alluded to above, the defendants also knew, or certainly should have known, that Grewe posed a danger of foreseeable harm to Plaintiff prior to when he were sexually abused, and while he was being abused, but they failed to take sufficient steps to prevent Grewe from sexually abusing him and continuing to abuse him.  For example, in addition to the direct reports the defendants received concerning Grewe prior to Plaintiff's abuse, other Scout leaders were removed from the Evergreen Area Council for sexually abusing Scouts, but upon information and belief, the defendants did nothing to change their policies to better protect Plaintiff and other boys from being sexually abused.

4.44    Rather than do anything to protect Plaintiff, the defendants ignored warning signs and complaints about Grewe's abusive behavior, and failed to take steps to meaningfully investigate them or prevent them from continuing to sexually abuse Plaintiff and others.

4.45    As a result, Grewe sexually abused and exploited ██████ at Fire Mountain Boy Scout Camp.

4.46    Furthermore, the hostile work environment at Fire Mountain continued.  Minor staff members, including ██████ and others, were forced to work closely with a physically imposing sexual deviant, Grewe, who they feared would further sexually abuse them.

//

//

COMPLAINT FOR DAMAGES
Page 16 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

1

## V.    CAUSES OF ACTION

2

**A.    Negligence**

3

5.1    Plaintiff re-alleges the paragraphs above and below.

4

5.2    The defendants had a duty to exercise reasonable care in protecting Plaintiff

5

from foreseeable harm, they had a duty to exercise reasonable care in their employment of

6

Grewe, and they had a duty to warn Plaintiff and his parents of known dangers in their

7

proprietary program.  These duties arose from the defendants taking custody and control of

8

Plaintiff, from charging Plaintiff to participate in their Scouting program, including Fire

9

Mountain, from authorizing and allowing Plaintiff to participate in Scouting activities, from

10

representing to Plaintiff and his parents that Scouting was a safe activity and that Grewe was

11

safe, from authorizing and expecting Grewe to interact with Plaintiff during Scouting

12

activities, from authorizing and expecting Grewe to take temporary custody of Plaintiff during

13

those activities, and from authorizing and expecting Grewe to supervise Plaintiff during those

14

activities.

15

5.3    The defendants breached these duties by failing to exercise reasonable care in

16

protecting Plaintiff from the known danger posed by Grewe, and by failing to exercise

17

reasonable care in hiring, supervising, monitoring, and retaining them as camp employees.

18

This includes their failure to warn Plaintiff, his parents, or their community, as well as each

19

other, of their unique knowledge of Grewe's prior sexual abuse of children and the danger

20

posed by men like Grewe in Scouting, their failure to take any steps, whatsoever, to protect

21

Plaintiff from Grewe, and their failure to change their policies and procedures to account for

22

such dangerous deviants, based on their unique and superior knowledge of that danger.

23

5.4    Moreover, in addition to their actual knowledge that Grewe was a child

24

molester and posed significant and unreasonable danger to Plaintiff and other children, the

COMPLAINT FOR DAMAGES
Page 17 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

defendants had known for decades that Scout leaders were using their position to groom and sexually abuse children.  Despite that knowledge, the defendants failed and refused to warn families involved with Scouting, including Plaintiff's family, of the danger of molestation by Scout leaders, and they refused to change their policies or the implementation of those policies.

5.5     In failing to take any steps to address these problems in Scouting—a  system over which defendants had complete control—defendants failed to exercise the reasonable care one would expect from those who are charged with protecting children, particularly from an organization that held itself out for decades as providing a safe environment and safe leaders for children.

5.6     Defendants' negligence was a substantial contributing and causal factor to the abuse of Plaintiff.  Because of the duration and consistency of child molestation in Scouting, defendants' knowing failure to warn, implement alternate child abuse policies, or change their screening or monitoring procedures, created a foreseeable risk of harm to the safety of children in their care or the foreseeable victims of their Scout leaders, including Plaintiff.  Plaintiff was a member of the class of individuals to be protected by a warning about Scouting's dangers, by alternate child abuse policies, and by screening and/or monitoring of Scout leaders.  Such policies and procedures would have protected Plaintiff from some or all of the abuse they suffered.

5.7     As a direct and proximate result of the negligent and grossly negligent acts and omissions of the defendants, Plaintiff suffered general and special damages, including physical, psychological, and emotional damage.

//

//

COMPLAINT FOR DAMAGES
Page 18 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

5.8     The defendants also knew or should have known that their attempt to cover-up the sexual abuse of children, including abuse by Grewe, would, if discovered, likely cause increased emotional suffering to their victims and families, including Plaintiff.

5.9     Notwithstanding that knowledge, the defendants hid the nature and the extent of this misconduct from their victims, their families, and their community, including Plaintiff. Those attempts were successful, and not discovered until many years later, thereby causing increased emotional suffering to their victims and their families, including Plaintiff.

**B.     Violation of Washington Law Against Discrimination, RCW 42.60, *et seq.***

5.10    Plaintiff re-alleges the paragraphs above and below.

5.11    At all material times hereto, ▆▆▆▆ was employed by the defendants to work at Fire Mountain on their behalf.  Furthermore, at all relevant times, Grewe was employed by the defendants as the Aquatics Director at Fire Mountain and worked as Plaintiff ▆▆▆▆'s supervisor.  During the times Plaintiff was abused, Grewe was acting within the course and scope of his employment with the defendants at Fire Mountain.

5.12    At all material times hereto, the defendants established an employment relationship with ▆▆▆▆ who was a minor.

5.13    At all material times hereto, Grewe made routine sexual remarks to and advances on young boys at the camp, as noted above.  In addition, Grewe sexually abused numerous boys during the course of their employment with the defendants, including ▆▆▆▆ Needless to say, Grewe's sexual remarks and advances were unsolicited, unwelcome, inappropriate, and humiliating.

5.14    Prior to, during, and after the time Grewe sexually abused ▆▆▆▆, the defendants received numerous complaints concerning Grewe's sexual misconduct towards other young Scouts and employees.  Moreover, Grewe's sexual misconduct towards minor Scouts and

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

employees at Fire Mountain was pervasive and obvious.  Thus, the defendants knew or should have known that Grewe created a hostile and offensive work environment for their employees like ███ and failed to take reasonably prompt and adequate remedial steps in light of this knowledge to alleviate the resulting hostile and intimidating work environment in which Plaintiff found himself.

5.15    The actions of defendants and its supervisors described above violated the Washington Law Against Discrimination by creating a hostile work environment for Plaintiff on the basis of his sex, and substantially interfered with his ability to perform his job for the defendants.

5.16    The actions of Grewe also violated the Washington Law Against Discrimination and constituted "quid pro quo" sexual harassment of the Plaintiff by making submission to his harassing conduct a term and condition of continued employment.

5.17    The defendants are directly liable for the sexually harassing conduct of Grewe in creating and allowing a hostile work environment for Plaintiff and so many other young male employees on the basis of their sex because Grewe was in the position of director and served as their supervisor.  Additionally, the defendants are liable for the sexually harassing conduct of Grewe because they knew that Grewe was sexually abusing young boys, and they knew (or certainly should have known) that Grewe's sexual misconduct towards minor employees created a hostile and offensive work environment for them and other employees. Despite that knowledge, the defendants failed to take reasonably prompt and adequate remedial steps to alleviate the resulting hostile and intimidating work environment in which Plaintiff found himself.

5.18    As a result of this hostile and intimidating work environment, ███ suffered extreme physical, mental, and emotional suffering.

COMPLAINT FOR DAMAGES
Page 20 of 29

**C.      Outrage**

5.19     Plaintiff re-alleges the paragraphs above and below.

5.20     The defendants engaged in extreme and outrageous conduct by providing Grewe with direct and private access to young Boy Scouts, including Plaintiff, despite multiple, credible reports that he was sexually abusing children.

5.21     The defendants did so in order to conceal their own bad acts, to protect their reputation, and to prevent victims from coming forward, despite knowing that Grewe would continue to molest Scouts, including Plaintiff.

5.22     As a result of this extreme and outrageous conduct, Grewe gained access to ▇▇▇▇ and sexually abused him.

5.23     The defendants knew that this extreme and outrageous conduct would inflict severe emotional and psychological distress on Plaintiff, and he did in fact suffer severe emotional and psychological distress as a result.  His emotional damages include severe mental anguish, humiliation, and emotional and physical distress.

**D.      Fraud**

5.24     Plaintiff re-alleges the paragraphs above and below.

5.25     Defendants are liable for fraud because they made verbal and written representations to Plaintiff that (1) the Scouting program provided a safe, beneficial, and moral activity for Plaintiff, and (2) Grewe could be trusted with Plaintiff in one-on-one situations because they were Scout leaders and directors at Fire Mountain.

5.26     As discussed above, these representations were made to Plaintiff and his parents before Plaintiff paid to become a Boy Scout, throughout the time they were in Scouting, and before Plaintiff paid to attend Fire Mountain.  For example, the Boy Scout

//

COMPLAINT FOR DAMAGES
Page 21 of 29

handbook emphasized that Scouting was safe and that the Boy Scout leaders (e.g., Grewe and Ewalt) could be trusted, representations that Plaintiff and his parents relied upon when deciding to participate in Scouting and attend Fire Mountain.

5.27    At no point did the defendants warn Plaintiff or his parents that defendants knew that a significant number of Scout leaders, including Grewe, had abused Scouts and other boys, and therefore they knew that not all Scout leaders were trustworthy.  Instead, the defendants represented in their written materials, including the Boy Scout handbook, that all Scout leaders were safe and trustworthy.  Plaintiff and his relied upon those representations when deciding to participate in Scouting activities and when deciding that it was safe for Plaintiff to spend time with Grewe.

5.28    Likewise, at no point did the defendants disclose to Plaintiff or his parents that they knew Scout leaders, including Grewe and Ewalt, were not safe and trustworthy, that they might make sexual demands or advances on Plaintiff, that significant numbers of Scout leaders had abused boys in the past, that the majority of the abuse had occurred when a Scout leader was able to isolate boys in one-on-one situations, or that their existing policies and procedures were not working to protect boys from being sexually abused by Scout leaders.

5.29    Instead of disclosing that knowledge, the defendants represented in their written materials, including the Boy Scout handbook, that all Scout leaders were safe and trustworthy and that a boy was always safe if he was with a Scout leader.

5.30    These representations and omissions were material because Plaintiff would not have entered into a relationship with defendants, would not have participated in Scouting activities, would not have attended Fire Mountain, and would not have participated in one-on-one situations with Grewe if he or his parents knew that Grewe had been accused of sexually abusing boys in the past, that on average sixty new molesters a year were discovered in Scouting with an unspecified number escaping detection, that this abuse had been occurring

COMPLAINT FOR DAMAGES
Page 22 of 29

for decades, and that defendants were allowing certain discovered molesters to go on "probation" and resume their Scout leader duties. These representations and omissions were false and misleading, and go to the heart of the relationship of trust that defendants sought to form with Plaintiff and his family.

5.31    Defendants knew these representations and omissions were false and misleading, as evidenced by the prior complaints they received from other children alleging Grewe had sexually abused them, as well as the documented abuse history of Ewalt dating back to 1967. Moreover, as with Ewalt, the defendants had been aware since at least the 1960s that the Scouting program posed a consistent danger to adolescent boys, and because they had intentionally kept this danger a secret, they also knew that society mistakenly believed that the Scout program was safe and Scout leaders could be trusted with children. The defendants knew this because their own files showed that the Scouting program had a concrete, longstanding, consistent, and widespread problem with sexual abuse by Scout leaders and adult volunteers. Defendants knew that Scouting was being used by child molesters to gain access to and the trust of children, and that the majority of children were abused during one-on-one situations, but defendants did nothing to change the program prior to the representations and omissions they made to Plaintiff. Instead, the defendants continued to make the same representations and omissions to Plaintiff and his parents about the Scouting program and continued to represent that Grewe was a trustworthy and safe Scout leader and camp director.

5.32    In fact, according to Dr. Janet Warren, a Professor of Psychiatry and Neurobehavioral Science who was employed by the Boy Scouts of America to review IV Files dated between 1944 and 2016, she identified **7,819 perpetrators** in the Scouting program believed to have been involved in sexually abusing children.

COMPLAINT FOR DAMAGES
Page 23 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington 98104
Phone: (206) 462-4334  Fax: (206) 623-3624
http://www.pcvalaw.com

5.33    Indeed, between 1965 and 1985, 1,123 "perversion" files were created for Scout leaders who had molested one or more children.  That is an average of 57.8 new child molesting volunteers per year (e.g., more than one new child molester a week).  And many of these volunteers molested multiple Scouts and other boys.  Defendants also knew that not all molesters in Scouting were caught each year, particularly because some of the molesters were shown to have abused Scouts and other boys for several years before detection.

5.34    According to BSA's internal "desk manual" for those files, "the Ineligible Volunteer File is a listing of names ... [who have] proven themselves potentially harmful as associates or leaders of youth and a detriment to the Boy Scouts of America. … *The majority of the cases on file are perversion cases*."  This was a material risk that was unique to the Boy Scout program and was not something that Plaintiffs, their parents, or the general population knew existed.

5.35    Defendants knew that Scouting—a closed system over which defendants held exclusive control related to participation and access—was being used by child molesters to gain access to and the trust of Scouts and other boys.  Defendants knew the majority of boys were abused during one-on-one situations, and the defendants knew that Plaintiff, his parents, and the parents of any other Boy Scout would consider this to be a material risk.  Nevertheless, defendants did nothing to warn Plaintiff, his parents, or any other parents of the risks of molestation by Scout leaders, and the defendants did nothing to change the Boy Scout program prior to the representations and omissions they made to Plaintiff.  Instead, the defendants continued to make the same representations and omissions to Plaintiff and his parents, knowing they were false and knowing they were being relied upon by them.

5.36    The defendants made these representations and omissions with the intent of inducing Plaintiff, his parents (and other children and other parents similarly situated), and the community to rely on the representations and omissions so they would continue to trust the

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

defendants (and Grewe and Ewalt) and continue to pay to participate in Scouting, including Fire Mountain.   The defendants knew that if they revealed the truth, their revenues would sharply decrease, they knew they would lose their prestige and reputation as a "safe" program for boys, and they knew they would likely face legal liability for the thousands of boys who had already been sexually abused by their volunteers.

5.37    For example, on December 4, 1972, BSA's Executive of Registration and Subscription, Paul Ernst, sent a "personal and confidential" letter from BSA's national headquarters to "all Scout executives" with the subject "Maintaining Standards of Leadership."   Ernst informed his Scout executives that he was enclosing guidelines that were "carefully developed" by BSA, but "because of the misunderstandings which could develop if it were widely distributed," he instructed them to avoid sharing it "beyond the top management of your council."

5.38    Four years later, in 1976, that same BSA executive wrote another confidential internal memorandum where he admitted that BSA's existing policies and procedures were not working to protect boys from being sexually abused by Scout leaders:  "BSA's experience usually has been that the Scout executive learns of improper conduct only after the individual in question has dropped out of Scouting or has been removed by the responsible local BSA chartered organization."   As discussed above, despite knowing that their policies were insufficient, the defendants did nothing to warn Plaintiff or his parents of that danger. Instead, they kept representing that the Boy Scout program was completely safe and its Scout leaders were completely safe.  Although BSA eventually changes its policies and procedures, it did so after it was too late to protect Plaintiff.

5.39    Plaintiff and his parents relied on these representations and omissions because they allowed their children to participate in Scouting and attend Fire Mountain, and they

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

allowed Grewe to have custody and control of Plaintiff when participating in Scouting activities at Fire Mountain. If Plaintiff and his parents knew these representations and omissions were false, they would not have allowed Plaintiff to participate in Scouting activities and they would not have allowed Grewe to have custody and control of Plaintiff.

5.40    The reliance of Plaintiff and his parents was reasonable and justified because they did not know, nor could they have known, that defendants were well aware of the decades-long history of child molesters using Scouting to obtain victims.  Plaintiff and his parents could not hope to conduct an investigation of defendants' claims given that the records that would disprove their representations and omissions—the "Ineligible Volunteer" files—were not available to the public.  Given the superior and unique knowledge possessed and exclusively held by the defendants about that danger, Plaintiff and his parents reasonably and rightfully relied on the representations and omissions by the defendants that Scouting was safe and that Grewe could be trusted.

5.41    Plaintiff and his parents acted to their detriment in allowing Plaintiff to participate in Scouting and in giving Grewe access to Plaintiff because they paid for Plaintiff to participate in a program that they thought was safe, they trusted Grewe, and they allowed Plaintiff to participate in one-on-one activities with them, and Plaintiff was sexually abused by Grewe.

5.42    As a direct consequence of defendants' fraudulent representations and omissions, Plaintiff suffered the abuse and damages as described more fully herein.  However, Plaintiff did not discover, and could not have reasonably discovered, that the defendants' representations and omissions were a causal factor in their sexual abuse until recently, when he learned that the defendant received numerous reports of abuse by Grewe, in addition to having access to the Boy Scouts' Ineligible Volunteer files, which contains records of thousands of child abusers over the course of several decades (including Grewe).

COMPLAINT FOR DAMAGES
Page 26 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334  Fax:  (206) 623-3624
http://www.pcvalaw.com

1

2

**E.      Constructive Fraud and Breach of Fiduciary Duty**

5.43     Plaintiff re-alleges the paragraphs set forth above and below.

3

4

5.44     As discussed above, by no later than the 1960s the defendants knew that the

Scouting program posed a danger to adolescent boys.  The defendants knew as much because

5

6

their "perversion" files showed that the Scouting program had a concrete, longstanding,

consistent, and widespread problem with sexual abuse by Scout leaders and adult volunteers

7

8

like Grewe.  Defendants knew that Scouting was being used by child molesters to gain access

to and the trust of boys, and that the majority of boys were abused during one-on-one

9

10

situations, but defendants did nothing to change the program prior to the misrepresentations

they made to Plaintiff.  Instead, the defendants continued to make the same misrepresentations

11

to Plaintiff and his parents.

12

13

5.45     By doing so, the defendants ensured that a material risk of boys being molested

remained inherent in the Scouting program itself.  That risk endangered boys like Plaintiff,

14

15

but it was not apparent to Plaintiff or his parents because of the defendants' representations

and because the defendants did nothing to warn Plaintiff or his parents about it.

16

17

5.46     Rather than disclose that vital and material risk to Plaintiff, the defendants

concealed the risk in order to lure Plaintiff and his parents into a commercial relationship with

18

19

them where they would pay yearly dues and other assorted fees and required purchases in

order to participate in Scouting activities.  In other words, the defendants represented that

20

21

their Scouting "product"—the Scouting program—was safe in order to get Plaintiff's parents

to pay for their son to participate in the Scouting program and to entice them to pay for

22

23

Plaintiff to participate in the Scouting program.  In exchange for purchasing that product, the

defendants represented that the Scouting program and all of its leaders, including Grewe,

24

would provide safe, beneficial, and moral activities, and that Plaintiffs and their parents could

rely upon the defendants to select programs and leaders that strictly fit that criteria.

COMPLAINT FOR DAMAGES
Page 27 of 29

PFAU COCHRAN VERTETIS AMALA PLLC
403 Columbia St., Suite 500
Seattle, Washington  98104
Phone:  (206) 462-4334   Fax:  (206) 623-3624
http://www.pcvalaw.com

5.47   The defendants also had a duty to disclose all material facts and risks to Plaintiff before they persuaded Plaintiff to purchase the Boy Scout product based on their misrepresentations.  Moreover, the representations of defendants, the reliance of Plaintiff and his parents, and the superior and unique knowledge possessed by the defendants regarding the danger, created a special, fiduciary relationship wherein the defendants had a duty to disclose to Plaintiff and his parents the vital and material facts and risks described above.

5.48   However, the defendants did not disclose those vital and material facts and risks to Plaintiff or his parents, including the fact that (1) the Scouting program did not provide a completely safe, beneficial, and moral activity for Plaintiff as it had been advertised because the defendants knew that its existing policies and procedures were inadequate to protect Plaintiff or boys like him from being sexually abused by Scout leaders, and (2) Grewe could not be trusted with Plaintiff in one-on-one situations solely because they were Scout leaders or camp directors, particularly where defendants knew or should have known that Grewe was a sexual predator who targeted Scouts and boys in order to molest them.

5.49   As a direct consequence of defendants' fraudulent omissions, Plaintiff suffered the abuse and damages as described more fully herein.

## VI.   PRAYER FOR RELIEF

Plaintiff prays for judgment against the defendants for general and special damages in an amount to be proven at the time of trial, for his reasonable attorneys' fees and costs, for statutory interest, prejudgment interest, exemplary damages, prejudgment interest, and for such other and further relief as the Court deems just and equitable, including all relief and remedies afforded by RCW 49.60 *et seq*.

//

//

COMPLAINT FOR DAMAGES
Page 28 of 29

Plaintiff also reserves the right to pursue additional causes of action, other than those specifically outlined above, that are supported by the facts pleaded herein or that may be supported by other facts that emerge during discovery.

DATED this ███████████

PFAU COCHRAN VERTETIS AMALA PLLC

By: _____
Michael T. Pfau, WSBA No. 24649
michael@pcva.law
Jason P. Amala, WSBA No. 37054
jason@pcva.law
Vincent T. Nappo, WSBA No. 44191
vincent@pcva.law
Attorneys for Plaintiff

COMPLAINT FOR DAMAGES
Page 29 of 29