Exhibit 5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## SEXUAL ABUSE SURVIVOR PROOF OF CLAIM

This Sexual Abuse Survivor Proof of Claim must be submitted and received by **5:00 p.m. (Eastern Time)** on **November 16, 2020**.  Please carefully read the following instructions included with this SEXUAL ABUSE SURVIVOR PROOF OF CLAIM and complete ALL applicable questions to the extent of your knowledge or recollection.  If you do not know the answer to an open-ended question, you can write "I don't recall" or "I don't know."  If a question does not apply, please write "N/A."  If you are completing this form in hard copy, please write or type clearly using blue or black ink.

The Sexual Abuse Survivor Proof of Claim must be delivered to Omni Agent Solutions, the Court-approved claims and noticing agent (the "Claims Agent"), by either:

(i) Hand delivery, first class mail, or courier the *original* proof of claim to: BSA Abuse Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, so that it is *received* on or before **November 16, 2020 at 5:00 p.m. (Eastern Time)**;[2] or

(ii) Electronically using the interface available at: www.OfficialBSAClaims.com on or before **November 16, 2020 at 5:00 p.m. (Eastern Time)**.

Sexual Abuse Survivor Proofs of Claim sent by email or facsimile transmission **will not** be accepted.

"You" and/or "Sexual Abuse Survivor" refers to the person asserting a Sexual Abuse Claim against the Boy Scouts of America ("BSA") related to the Sexual Abuse Survivor's sexual abuse.  For this claim to be valid, the Sexual Abuse Survivor must sign this form.  If the Sexual Abuse Survivor is deceased or incapacitated, the form must be signed by the Sexual Abuse Survivor's representative or the attorney for the Sexual Abuse Survivor's estate.  If the Sexual Abuse Survivor is a minor, the form must be signed by the survivor's parent or legal guardian or attorney.  Any Sexual Abuse Survivor Proof of Claim signed by a representative or legal guardian must attach documentation establishing such person's authority to sign the claim for the Sexual Abuse Survivor.

| |
|---|
| **Who Is a Sexual Abuse Survivor?** |

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] If you are mailing your Sexual Abuse Survivor Proof of Claim, do not attach original documents with your Sexual Abuse Survivor Proof of Claim.

For purposes of this Sexual Abuse Survivor Proof of Claim, the term **Sexual Abuse Survivor** refers to a person who was sexually abused *before* turning eighteen (18) years of age.

## Who Should File a Sexual Abuse Survivor Proof of Claim?

This Sexual Abuse Survivor Proof of Claim is only for people who were sexually abused before turning eighteen (18) years of age and where the sexual abuse (defined below) occurred on or before February 18, 2020. This Sexual Abuse Survivor Proof of Claim is the way you assert an unsecured claim against BSA seeking damages based on Scouting-related sexual abuse. Any person asserting a claim based on anything other than childhood sexual abuse should use the General Proof of Claim form (official bankruptcy form 410).

## What Is Sexual Abuse?

For the purposes of this Sexual Abuse Survivor Proof of Claim, **sexual abuse** means, with respect to a child under the age of eighteen (18) at the time of the sexual abuse, sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, sexual touching, sexualized interaction, sexual comments about a person's body, or other verbal or non-verbal behaviors that facilitated, contributed to, or led up to abuse, regardless of whether or not such behavior was itself sexual or against the law, and regardless of whether the child thought the behavior was sexual abuse at the time. Sexual abuse includes behavior between a child and an adult and between a child and another child, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether the child associated the abuse with any physical, psychological, or emotional harm. It involves behaviors including penetration or fondling of the child's body, other body-on-body contact, or non-contact, behaviors such as observing or making images of a child's naked body, showing or making pornography, or having children behave in sexual behavior as a group.

If you have a claim arising from sexual abuse and you were at least eighteen (18) years of age at the time the sexual abuse began or if you have a claim arising from other types of abuse, including non-sexual physical abuse, non-sexual emotional abuse, bullying or hazing, you should consult the *Notice of Deadlines Requiring Filing of Proof of Claim* and file a General Proof of Claim (Official Bankruptcy Form 410).

For the avoidance of doubt, if you have a claim for sexual abuse and you were a child under the age of eighteen (18) when the sexual abuse began you must complete this form.

## You May Wish to Consult an Attorney Regarding This Matter.

You may also obtain information from the Claims Agent by: (1) calling toll free at 866-907-2721, (2) emailing at BSAInquiries@omniagnt.com, or (3) visiting the case website at www.OfficialBSAClaims.com (do not contact the Claims Agent for legal advice).

## What If I Don't File on Time?

**Failure to complete and return this Sexual Abuse Survivor Proof of Claim by November 16, 2020 at 5:00 p.m. (Eastern Time) may result in your inability to vote on a plan of reorganization and/or to receive a distribution from this bankruptcy for sexual abuse related to BSA.**

**Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

## PART 1: CONFIDENTIALITY

Unless you indicate below, your identity and your Sexual Abuse Survivor Proof of Claim will be kept **confidential**, under seal, and outside the public record. However, information in this Sexual Abuse Survivor Proof of Claim will be confidentially provided, pursuant to Court-approved guidelines, to the Debtors, the Debtors' counsel and retained advisors, certain insurers of BSA, the Tort Claimants' Committee, counsel to the Ad Hoc Committee of Local Councils (with personally identifiable information redacted), individual Local Councils solely with respect to Sexual Abuse Claims asserted against them, attorneys at the Office of the United States Trustee for the District of Delaware, the Future Claimants' Representative, the Court, and confidentially to such other persons that the Court determines need the information in order to evaluate the claim. Information in this Sexual Abuse Survivor Proof of Claim may be required to be disclosed to governmental authorities under mandatory reporting laws in many jurisdictions.

**This Sexual Abuse Survivor Proof of Claim (along with any accompanying exhibits and attachments) will be maintained as confidential unless you expressly request that it be publicly available by checking the "public" box and signing below.**

| | |
|---|---|
| ☐ | **PUBLIC**: I want my identity and this Sexual Abuse Survivor Proof of Claim (together with any exhibits and attachments) to be made part of the official claims register in these cases. **My claim will be available for review by any and all members of the public**. |

Signature: _____

Print Name: _____

---

## PART 2: IDENTIFYING INFORMATION

**B.** **If you have hired an attorney relating to the sexual abuse described in this Sexual Abuse Survivor Proof of Claim, please provide his or her name and contact information:**

| Law Firm Name: | Pfau Cochran Vertetis Amala PLLC | | | | |
|---|---|---|---|---|---|
| Attorney's Name: | Michael T. Pfau | | | | |
| Number and Street: | 403 Columbia St. Ste. 500 | | | | |
| City: | Seattle | | State: | Washington | Zip Code: | 98104 |
| Country (not USA): | USA | | Email Address: | | michael@pcvalaw.com |
| Telephone (Work): | (206) 462-4334 | | Fax No.: | | (206) 623-3624 |

## PART 3:  BACKGROUND INFORMATION FOR SEXUAL ABUSE SURVIVOR

**E.    Involvement with Scouting:**

a.  Have you ever been affiliated with Scouting and/or a Scouting program?

Yes ☒          No ☐

b.  When were you involved with Scouting?

**From approximately 1991 to 1994.**

c.  What type of Scouting unit (i.e., troop) were you involved with and, if you recall, when you were involved and what was your troop or unit number?

☒ Boy Scouts  Unit # 73

☐ Cub Scouts _____

☐ Exploring Scouts _____

☐ Sea Scouts _____

☐ Venturing _____

☐ Other (please explain your involvement with Scouting):

_____

_____

_____

_____

_____

---

## PART 4: NATURE OF THE SEXUAL ABUSE

### (Attach additional sheets if necessary)

**For each of the questions listed below, please complete your answers <u>to the best of your recollection</u>.**

**Note:** If you have previously filed a lawsuit about your Scouting-related sexual abuse in state or federal court, you may attach a copy of the complaint. If you have not filed a lawsuit, or if the complaint does not contain all of the information requested below, you must provide the information below to the extent of your recollection.

Please answer each of the following questions to your best ability. If you do not know or recall, please so indicate.

If you are the survivor of sexual abuse by more than one sexual abuser, please respond to each of the questions in this Part 4 for each sexual abuser.

A.    Please answer "Yes" or "No" to each of the following:

    i.    Were you sexually abused by more than one person?    Yes ☐    No ☒

    ii.    Were you sexually abused in more than one state?    Yes ☒    No ☐

B.    Please name each person who sexually abused you in relation to your involvement in Scouting. ("Scouting" includes Cub Scouts, Boy Scouts, Exploring Scouts, Sea Scouts and Venturing.)

If you do not remember the name of the sexual abuser(s), provide as much identifying information about the sexual abuser(s) that you can recall, such as their approximate age and their relationship to Scouting (e.g., the Scoutmaster of Troop 100, another Troop member of Troop 200, camp staff member, etc.).

<u>**George Diegelman**</u>

C.  Other than the sexual abuser(s), please identify any person(s) you can remember who were leaders or other adults involved in your Scouting unit or the camp(s) you attended.

███████████████████████████████████████

D.  What was each sexual abuser's position, title, or relationship to you in Scouting (check all that apply)?

☒ Adult Scout leader in my Scouting unit

☐ Adult Scout leader not in my Scouting unit

☐ Youth Scout in my Scouting unit

☐ Youth Scout not in my Scouting unit

☐ Camp personnel (e.g., camp staff) not in my Scouting unit

☐ I don't know

☐ Other (please explain why you believe the person(s) who sexually abused you had a relationship with Scouting):

_____

_____

_____

E.  Where were you at the time you were sexually abused (city, state, territory and/or country)?

**At the time of the sexual abuse I was in Egg Harbor City in Atlantic County, New Jersey and also in and Pennsylvania, Virginia, New York and Louisiana.**

_____

F.  What was the type of Scouting you were involved with during the sexual abuse (check all that apply)?

☒ Boy Scouts

☐ Cub Scouts

☐ Exploring Scouts

☐ Venturing

☐ Sea Scouts

☐ Other (please explain why you believe you had a connection to Scouting during the sexual abuse):

G.  What was the Scouting unit number and physical location (city, state, territory and/or country) of the Scouting unit(s) or provisional troop you were in during the time of the sexual abuse?

**During the sexual abuse I believe I was in Boy Scout unit number 73, located in Egg**

**Harbor City, New Jersey.**

H.  What was the name and location (city, state, territory and/or country) of the organization that chartered or sponsored your Scouting unit, including the organization that hosted meetings of your Scouting unit, during the time of the sexual abuse (e.g., church, school, religious institution, or civic group)?

(Note that such organizations are not currently parties to the bankruptcy so if you believe you may have a claim against any such organization you must take additional action to preserve and pursue any such claim.)

**I do not recall the sponsoring organization.**

I.  What was the name of the BSA Local Council(s) affiliated with your Scouting unit(s), any Boy Scout camp or other Scouting activity during the time of the sexual abuse?

(Note that such BSA Local Councils are not currently parties to the bankruptcy so if you believe you may have a claim against any such BSA Local Council(s) you must take additional action to preserve and pursue any such claim.)

**I believe the BSA Local Council affiliated with my Scouting unit was Jersey Shore Council.**

J.  In which of the following places did the sexual abuse take place?  Check all that apply.

☒ At or in connection with a Scout meeting.

☒ At or in connection with a Scout camp.

☒ At or in connection with another Scouting-related event or activity (please explain):

**Local camping, hiking and ATV trips; hotel rooms.**

☒ Other (please explain – for example, schools, churches, cars, homes or other locations):

**A hotel room in New Orleans, Louisiana.**

K.    When did the first act of sexual abuse take place? If you do not remember the calendar date, what school grade were you in at the time and what season of the year was it (spring, summer, fall, winter), and what age were you when it started?  If the sexual abuse took place over a period of time, please state when it started and when it stopped.  If you were sexually abused by more than one sexual abuser indicate when the sexual abuse by each of the sexual abusers started and stopped.

**I believe the first act of sexual abuse by George Diegelman happened in approximately 1992.  It lasted approximately through 1994.**

L.    Please describe what happened to you.  You can provide a description in your own words and/or use the checkboxes below.

    i.    About how many times were you sexually abused?

      ☐    I was sexually abused once.

      ☒    I was sexually abused more than once.

If you were sexually abused more than once, please state how many times (if you recall):    **I was sexually abused by George Diegelman at least 25 times.**

M.    Please describe what happened to you.  You can provide a description in your own words and/or use the checkboxes below.  (Check all that apply.)  **Please note that the boxes are not meant to limit the characterization or description of your sexual abuse.**

    i.    What did the sexual abuse involve?

      ☒    The sexual abuse involved touching outside of my clothing.

      ☒    The sexual abuse involved touching my bare skin.

      ☒    The sexual abuse involved fondling or groping.

      ☒    The sexual abuse involved masturbation.

      ☐    The sexual abuse involved oral copulation / oral sex.

      ☐    The sexual abuse involved the penetration of some part of my body.

    ii.    Did any of the following occur in connection with the sexual abuse:

      ☐    The acts of sexual abuse against me also involved other youth.

      ☐    The sexual abuse involved photographs or video.

      ☒    Even though I did not want it, my body responded sexually to the sexual abuse.

☒ The sexual abuse involved actual or implied threats of violence or other adverse consequences if I disclosed the sexual abuse.

☒ The sexual abuse involved gifts, privileges, experiences, and other rewards or bribes in addition to the activities and awards normally part of Scouting.

☒ The sexual abuser(s) made my family think they could be trusted.

☐ At the time of the sexual abuse, my family or I had significant financial, social, behavioral or other challenges.

If you wish to provide a narrative, please describe the sexual abuse in as much detail as you can recall in the lines below. You may attach additional pages if needed.

I was sexually abused by George Diegelman at least 25 times from approximately 1992 through 1994. Mr. Diegelman had befriended me through scouts, especially around the time when I became ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The abuse started during camping events. I was asked to sleep in a bed located in Mr. Diegelmann's truck instead of my tent. I was told that this was a privilege. At the beginning he undressed nude in front of me and slept nude or in his underwear next to me. After a few times, he began to spoon me and snuggle. Eventually this led to him masturbating in front of me and asking me to do the same. We would masturbate in front of each other together and play a game to ejaculate at the same time.

Every time we were together and alone, he would touch and fondle me. We took many long road trips together and I recall sitting next to him during those trips where he would fondle himself in front of me and ask me to do the same. I would sit next to him and he would fondle and masturbate me. He often masturbated himself in front of me during these trips. He kept a dildo in a brown paper bag under the seat of his truck and would often pull this out and caress it in front of me.

On hiking and ATV trips, he would take his pants down and masturbate in front of me while alone and outside in a remote area. I would do the same in front of him and we would masturbate together.

**We would masturbate with each other in hotel rooms on overnight trips. I remember a specific occasion in New Orleans where he laid napkins down and we kneeled next to each other to masturbate and ejaculate together on the napkins.**

N.   Did you or anyone on your behalf tell anyone involved in Scouting about the sexual abuse at or about the time of the sexual abuse?    Yes ☐    No ☒

O.   Did you or anyone on your behalf report the sexual abuse to law enforcement or investigators at or about the time of the sexual abuse? Yes ☒    No ☐

P.   If you can remember anyone you may have ever told about the sexual abuse at the time, including anyone involved with Scouting, friends, relatives, and/or law enforcement, please list their name and when you told them.

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████

Q.   Did you have any relationship with your sexual abuser outside of Scouting? Check all that apply:

☐ Religious organization leader, member, volunteer

☐ Family member or relative

☐ Coach/athletics

☐ Teacher

☐ Neighbor

☐ Other (please explain and add any other information you remember to the categories above):

_____

_____

R.   Are you aware of anyone who knew about the sexual abuse?

████████████████████

| PART 5: IMPACT OF SEXUAL ABUSE |
|---|

**(Attach additional pages if necessary)**

**(If you currently cannot describe any harm you have suffered on account of the sexual abuse, you may omit this section for now.  However, you may be asked to provide the information requested at a later date.)**

A.  Please describe how you were impacted, harmed, damaged, or injured in ways that you now connect as being related to the sexual abuse you described above. (Check all that apply.)  You can provide a description in your own words and/or use the checkboxes below.  **Please note that the boxes are not meant to limit the characterization or description of the impact(s) of your sexual abuse**.

☒ Psychological / emotional health (including depression, anxiety, feeling numb, difficulty managing or feeling emotions including anger)

☒ Post traumatic stress reactions (including intrusive images, feelings from the abuse, numbing or avoidance behaviors)

☐ Physical health (including chronic disease, chronic undiagnosed pain or physical problems)

☐ Education (including not graduating high school, being unable to finish training or education)

☐ Employment (including difficulties with supervisors, difficulty maintaining steady employment, being fired from jobs)

☒ Intimate relationships (including difficulty maintaining emotional attachments, difficulty with sexual behavior, infidelity)

☒ Social relationships (including distrust of others, isolating yourself, not being able to keep healthy relationships)

☐ Alcohol and/or substance abuse (including other addictive behavior such as gambling)

☐ Other (please explain and add any other information you remember to the categories above)

If you wish to provide a narrative, please describe how you were impacted, harmed, damaged, or injured in ways that you now connect as being related to the sexual abuse you described above in as much detail as you can recall in the lines below.  You may attach additional pages if needed.  **See below narrative.**

**The sexual abuse by George Diegelman has causes me years of mental suffering.  I**

**developed depression, anxiety, guilt and shame.  One of the scariest parts of what happened to me**

**is that I still maintain vivid memories of many of the specific instances of abuse.  I have frequent**

flashbacks, both during the day and while trying to fall asleep. I feel guilt because I wish I knew at the time that was he was doing to me was wrong. I wish I knew at the time that I didn't do anything wrong. I always imagine ways that I could have stopped this and feel guilty and blame myself.

I developed awful traits as a result of what happened to me. I have anger and temper issues that I have dealt with my whole life. I've had educational hurdles I have had to overcome. It wasn't until I was in my mid 30s that I was able to better cope with some of my emotional problems. What happened to me impacts the way I raise my boys and talk to them about scouting and adults.

Almost every day, a trigger can cause me to look back on what happened to me. For example, ███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████   Every day of my life is a struggle to overcome the repressed memories, anger and guilt.

Lastly, I have anxiety about other people learning that I was abused. I have a fear about other parents viewing me differently or viewing me as some kind of threat because I was abused as a child. This fear weighs heavily on me often.

---

## PART 6: ADDITIONAL INFORMATION

**A.**  **Prior Litigation.**

   i.   Was a lawsuit regarding the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim filed by you or on your behalf.

       Yes ☒    No ☐  (If "Yes," you are required to attach a copy of the complaint.)

**B.**  **Prior Bankruptcy Claims.** Have you filed any claims in any other bankruptcy case relating to the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim? Yes ☐  No ☒  (If "Yes," you are required to attach a copy of any completed claim form.)

**C.**  **Payments.**  Have you received any payments related to the sexual abuse you have described in this Sexual Abuse Survivor Proof of Claim from any party, including BSA? Yes ☐No ☒

   i.   If yes, how much and from whom? _____

**D.**  **Current Bankruptcy Case.** Are you currently a debtor in a bankruptcy case? Yes ☐ No ☒

   i.   If yes, please provide the following information:

       Name of Case: _____   Court: _____

       Date filed: _____   Case No. _____

       Chapter: 7 ☐  11 ☐  12 ☐  13 ☐  Name of Trustee: _____

"Signature page follows – you must complete and sign the next page"

## SIGNATURE

**To be valid, this Sexual Abuse Survivor Proof of Claim must be signed by you.** If the Sexual Abuse Survivor is deceased or incapacitated, the form must be signed by the Sexual Abuse Survivor's representative or the attorney for the Sexual Abuse Survivor's estate.  If the Sexual Abuse Survivor is a minor, the form must be signed by the Sexual Abuse Survivor's parent or legal guardian, or the Sexual Abuse Survivor's attorney.  (Any form signed by a representative or legal guardian <u>must</u> attach documentation establishing such person's authority to sign this form for the Sexual Abuse Survivor.)

**Penalty for presenting a fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152, 157 and 3571.**

**Check the appropriate box:**

☒    I am the Sexual Abuse Survivor.

☐    I am the Sexual Abuse Survivor's attorney, guardian, kinship (or other authorized) caretaker, executor, or authorized representative.

☐    Other (describe): _____

**I have examined the information in this Sexual Abuse Survivor Proof of Claim and have a reasonable belief that the information is true and correct.**

**I declare under penalty of perjury that the foregoing statements are true and correct.**

REBENACK, ARONOW & MASCOLO, LLP
111 Livingston Avenue
New Brunswick, NJ 08901
(732) 247-3600
Attorney I.D. No.: 025201999
Attorneys for Plaintiff, █████████

| | |
|---|---|
| Plaintiff, ████████ | SUPERIOR COURT OF NEW JERSEY ████████ |
| vs. | LAW DIVISION |
| | DOCKET NO. |
| Defendants, | CIVIL ACTION |
| DEFENDANT 1; DEFENDANT 2; JOHN DOES 1-10 | COMPLAINT |

Plaintiff ████████ by way of Complaint, says:

## I.    INTRODUCTION

1.    Starting in the early 1900s, Defendant 1 knew that its Scout leaders, volunteers, and members were using their positions to groom and to sexually abuse children. By 1935, the Chief Scout Executive of Defendant 1 told the New York Times that almost 1,000 men had already been removed from Scouting because they "undertake to deal with sex matters and become morbid on the subject and sometimes give way to temptation and develop practices which make them degenerates."

2.    Defendant 1 refers to its internal files on such men as its "perversion" files. Since that 1935 report in the New York Times, Defendant 1 has tried to keep the "perversion" files a secret. Even worse, for many years Defendant 1 had a policy of destroying "perversion" files even though the files could have helped Defendant 1 understand how so many sexual predators were able to use its Scouting program to groom and to sexually abuse children.

3.      Defendant 1 has largely succeeded in keeping the "perversion" files hidden from the public, including Scouts and their parents. While not much is known about the files after 1985, the files that were not destroyed show that Defendant 1 created at least 1,123 "perversion" files between 1965 and 1985 – an average of more than one new "perversion" file a week.

4.      While the sheer number of Scout leaders who have been accused of molesting children is striking, particularly given the large percentage that either pled guilty or were found guilty, the number of their victims is overwhelming.  Many of the files reflect Scout leaders who allegedly abused multiple children, sometimes more than twenty or thirty children.

5.      Defendant 1 refuses to voluntarily release the rest of its "perversion" files, but its own liability expert in another case testified that the files from 1944 through 2016 contain the names of 7,819 Scout leaders and volunteers who have been accused of child sexual abuse. If each accused Scout leader and volunteer abused five children, which is likely a conservative number, the total number of their victims would be close to 40,000.

6.      Despite decades of knowledge that its Scouting program was a magnet for child molesters, Defendant 1 failed to take reasonable steps to protect children from being sexually abused.

7.      Even worse, Defendant 1 actively concealed the widespread sexual abuse of young boys that occurred as a direct result of its supposedly "safe" program and "trustworthy" Scout leaders and volunteers.  For example, in 1972, the Boy Scout Executive who oversaw the "perversion" files asked the other Scout Executives to keep the files confidential "because of the misunderstandings which could develop" if the public learned of the files.

8.      Based on Defendant 1's wrongful conduct, a reasonable person could and would conclude that it knowingly and recklessly disregarded the abuse of children and chose to protect

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

its reputation and wealth over those who deserved protection. The result is not surprising: for decades thousands of children were sexually abused by Boy Scout leaders, volunteers, and members. The Plaintiff in this lawsuit is one of the children who was sexually abused because of Defendant 1's wrongful conduct.

## II.    FACTUAL BACKGROUND: PARTIES

1.    Plaintiff ███████ ("Plaintiff") is an adult male who currently resides in  At all relevant times Plaintiff resided in ███████████ ████ including during the time that Plaintiff was sexually abused.

2.    Defendant 1 is currently a Texas corporation authorized to do business in New Jersey with its principal office in Irving, Texas.

3.    From 1954 to 1979, Defendant 1 was a New Jersey corporation whose headquarters and principal office were located in ████████████

4.    At all relevant times Defendant 1 authorized local councils and local organizations to charter, sponsor, and operate Boy Scout Troops, Cub Scout Troops, and other types of Troops throughout New Jersey, including Plaintiff's Boy Scout Troop.

5.    Defendant 1, the local councils, and the local organizations would collectively select the leaders and volunteers of each Boy Scout Troop and Cub Scout Troop in New Jersey, including the leaders and volunteers of Plaintiff's Troop.

6.    However, Defendant 1 retained and exercised the ultimate authority to decide who could be a leader or volunteer of any Boy Scout Troop or Cub Scout Troop, including the leaders and volunteers of Plaintiff's Troop when he was sexually abused.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

7.      Defendant 1 also had the right to control the means and manner of the staffing, operation, and oversight of any Boy Scout Troop, Cub Scout Troop, or other type of Troop, including Plaintiff's Troop, when Plaintiff was sexually abused.

8.      In exchange for Defendant 1's name, programming, and endorsement, the leaders, volunteers, and members of every Boy Scout Troop, Cub Scout Troop, or other Troop affiliated with Defendant 1 in the United States, including New Jersey, would pay Defendant 1 an annual membership fee, including the leaders, volunteers, and members of Plaintiff's Troop when he was sexually abused.

9.      In exchange for the opportunity to participate in Defendant 1's programming and activities, the child members of every Boy Scout Troop, Cub Scout Troop, and other Troop affiliated with Defendant 1 in the United States, including those in New Jersey, would pay Defendant 1 an annual membership fee, including Plaintiff when he was a child member.

10.     To the extent that Defendant 1 was a different entity, corporation, or organization during the period of time in which Diegelman  used his position as a Boy Scout leader or volunteer to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is identified in the Complaint as Defendant 1 or as a "John Doe" defendant.

11.     To the extent Defendant 1 is a successor to a different entity, corporation, or organization which existed during the period of time during which Diegelman  used his position as a Boy Scout leader or volunteer to sexually abuse Plaintiff, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is identified in the Complaint as Defendant 1 or as a "John Doe" defendant.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

12.     All such Defendant 1-related entities, corporations, or organizations are collectively referred to herein as "Defendant 1."

13.     George Diegelman, Jr. ("Diegelman") was a Boy Scout leader or volunteer that Defendant 1 used and relied upon as a Scout leader or volunteer to serve Defendant 1 in Plaintiff's Boy Scout Troop.

14.     During the time that Diegelman served as a Boy Scout leader or volunteer for Defendant 1, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse Plaintiff.

15.     At all relevant times Defendant 2 ("Defendant 2"), was a New Jersey corporation organized under New Jersey law that transacted business in ███████████.

16.     Defendant 2 is currently a corporation organized under New Jersey law with its principal office in Toms River, New Jersey.

17.     At all relevant times Defendant 2 was a local council of Defendant 1 that acted as an agent of Defendant 1 as to the Boy Scout Troops, Cub Scout Troops, and other Troops under its jurisdiction within Defendant 1, including the Boy Scout Troop of Plaintiff when he was sexually abused by George Diegelman, Jr., who was a Scoutmaster for Defendant 1 and Defendant 2 at the time.

18.     George Diegelman, Jr. was a Boy Scout leader or volunteer that Defendant 2 used and relied upon as a Scout leader or volunteer to serve Defendant 1 in Plaintiff's Boy Scout Troop.

19.     During the time that Diegelman served as a Boy Scout leader or volunteer for Defendant 2, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse Plaintiff.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

20.     To the extent that Defendant 2 was a different entity, corporation, or organization during the period of time in which Diegelman used his position as a Boy Scout leader to sexually abuse Plaintiff, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is identified in the Complaint as Defendant 2 or as a "John Doe" defendant.

21.     To the extent Defendant 2 is a successor to a different entity, corporation, or organization which existed during the period of time during which Diegelman used his position to sexually abuse Plaintiff, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is identified in the Complaint as Defendant 2 or as a "John Doe" defendant.

22.     All such Defendant 2-related entities, corporations, or organizations are collectively referred to herein as the "Defendant 2" or "Defendant 2."

23.     All defendants, including John Does 1-10, are collectively referred to herein as "Defendants."

## III.    FACTUAL BACKGROUND:  SEXUAL ABUSE OF PLAINTIFF

24.     Plaintiff ███████ repeats and re-alleges the allegations above, including the fact that Defendant 1 knew for decades that Scout leaders and volunteers were using their positions to groom and to sexually abuse children throughout New Jersey.

25.     At all relevant times Defendant 1, its agents, servants, and employees managed, maintained, operated, and controlled Defendant 2, including the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area that Defendant 1 assigned to Defendant 2.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

26.     At all relevant times Defendant 1, its agents, servants, and employees managed, maintained, operated, and controlled Defendant 2, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled the Defendant 2.

27.     At all relevant times Defendant 1 was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of Defendant 2, including those positions that were responsible for ensuring that Plaintiff and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

28.     At all relevant times Defendant 1 was responsible for and did the recruitment and staffing of volunteers for Defendant 2, including those positions that were responsible for ensuring that Plaintiff and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

29.     At all relevant times Defendant 1 controlled the policies and procedures of Defendant 2, including any policies and procedures regarding the danger of Scouts being sexually abused by Scout leaders or volunteers and how to protect children from that danger.

30.     At all relevant times Defendant 1 held itself out to the public as the owner of Defendant 2.

31.     At all relevant times Defendant 1 materially benefited from the operation of Defendant 2, including the services of George Diegelman, Jr. and the services of those who managed and supervised Diegelman.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

32.     At all relevant times Defendant 1, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman, including its leaders and volunteers.

33.    At all relevant times Defendant 1, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman, including its policies and procedures regarding the sexual abuse of children.

34.    At all relevant times Defendant 2, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area of New Jersey that it was assigned by Defendant 1, including the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman.

35.    At all relevant times Defendant 2, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman, and held out to the public its agents, servants, and employees as those who managed it, maintained it, operated it, and controlled it.

36.    At all relevant times Defendant 2 was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman.

37.    At all relevant times Defendant 2 was responsible for the recruitment and staffing of volunteers for the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman.

38.    At all relevant times Defendant 2 held itself out to the public as the owner of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman.

39.    At all relevant times Defendant 2 materially benefited from the operation of the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman,

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

including the services of Diegelman and the services of those who managed and supervised Diegelman.

40.    At all relevant times Defendant 2, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman, including its leaders and volunteers.

41.    At all relevant times Defendant 2, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that Plaintiff belonged to when he was sexually abused by Diegelman, including its policies and procedures regarding the sexual abuse of children.

42.    At all relevant times Diegelman was a Scoutmaster of Defendant 1.

43.    At all relevant times Diegelman was on the staff of, acted as an agent of, or served as an employee or volunteer of Defendant 1.

44.    At all relevant times Diegelman was acting in the course and scope of his position with Defendant 1.

45.    At all relevant times Diegelman was a Scoutmaster of Defendant 2.

46.    At all relevant times Diegelman was on the staff of, was an agent of, or served as an employee or volunteer of Defendant 2.

47.    At all relevant times Diegelman was acting in the course and scope of his position with Defendant 2.

48.    When Plaintiff was a minor, he registered with Defendant 1 and Defendant 2 and paid them a fee to participate as a member of one of their Boy Scout Troops.

49.    At all relevant times Defendant 1 and Defendant 2, their agents, servants, and employees, held Diegelman out to the public, to Plaintiff, and to his parents, as their agent.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

50.    At all relevant times Defendant 1 and Defendant 2, their agents, servants, and employees, held Diegelman out to the public, to Plaintiff, and to his parents, as having been vetted, screened, and approved by those defendants as someone who was safe and trustworthy and who could be trusted with children, including Plaintiff.

51.    At all relevant times Plaintiff and his parents reasonably relied upon the acts and representations of Defendant 1 and Defendant 2, their agents, servants, and employees, and reasonably believed that Diegelman was an agent of those defendants who was vetted, screened, and approved by those defendants as someone who was safe and trustworthy and who could be trusted with children, including Plaintiff.

52.    At all relevant times Plaintiff and his parents trusted Diegelman because Defendant 1 and Defendant 2 held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Plaintiff.

53.    At all relevant times Plaintiff and his parents believed that Defendant 1 and Defendant 2 would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Plaintiff.

54.    When Plaintiff was a minor, George Diegelman, Jr. sexually abused him when Diegelman was his Scoutmaster.

55.    Plaintiff was sexually abused by Diegelman when Plaintiff was approximately 11 to 13 years old.

56.    Based on the representations of Defendant 1 and Defendant 2 that Diegelman was safe and trustworthy, Plaintiff and his parents allowed Plaintiff to be under the supervision

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

of, and in the care, custody, and control of, Defendant 1 and Defendant 2, including during the times when Plaintiff was sexually abused by Diegelman.

57.     Based on the representations of Defendant 1 and Defendant 2 that Diegelman was safe and trustworthy, Plaintiff and his parents allowed Plaintiff to be under the supervision of, and in the care, custody, and control of, Diegelman, including during the times when Plaintiff was sexually abused by Diegelman.

58.     Neither Plaintiff nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, Defendant 1, Defendant 2, or Diegelman if Defendant 1 or Defendant 2 had disclosed to Plaintiff or his parents that Diegelman was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Diegelman was likely to sexually abuse Plaintiff.

59.     Neither Plaintiff nor his parents would have paid Defendant 1 or Defendant 2 to allow him to be a member of their Boy Scout Troop if Defendant 1 or Defendant 2 had disclosed to Plaintiff or his parents that Diegelman was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Diegelman was likely to sexually abuse Plaintiff.

60.     Neither Plaintiff nor his parents would have paid Defendant 1 or Defendant 2 to allow him to be a member of their Boy Scout Troop if Defendant 1 or Defendant 2 had disclosed to Plaintiff or his parents that Defendant 1 knew for decades that hundreds or thousands of sexual predators, like Diegelman, were using their position as a Scout leader or volunteer to groom and to sexually abuse children.

61.     No parent of ordinary prudence in comparable circumstances would have allowed Plaintiff to be under the supervision of, or in the care, custody, or control of, Defendant 1, Defendant 2, or Diegelman if Defendant 1 or Defendant 2 had disclosed to Plaintiff or his

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

parents that Diegelman was not safe and was not trustworthy, and that he in fact posed a danger to Plaintiff in that Diegelman was likely to sexually abuse him.

62.    From approxiamtely 1991 to 1993, Diegelman exploited the trust and authority vested in him by Defendant 1 and Defendant 2 by grooming Plaintiff to gain his trust and to obtain control over him as part of Diegelman's plan to sexually molest and abuse Plaintiff and other children, including those who participated in the Scouting program offered by Defendant 1 and Defendant 2.

63.    During this time, Diegelman used his position of trust and authority as a Scoutmaster of Defendant 1 and of Defendant 2 to groom Plaintiff and to sexually abuse him multiple times, including when Plaintiff was under the supervision of, and in the care, custody, or control of Defendant 1 and Defendant 2.

64.    Diegelman's sexual abuse of Plaintiff occurred during Scouting activities that were sponsored by, or were a direct result of Scouting activities sponsored by, Defendant 1 and Defendant 2, including camping trips.

65.    Prior to the times mentioned herein, Diegelman was a known sexual predator of children.

66.    In 1984, Defendants received reports against Diegelman involving sexual abuse of children.  As a result, Defendants placed Diegelman on "probation" but allowed him to continue working as a Scout leader with children, for years, before the abuse of Plaintiff occurred.

67.    At all relevant times defendants, their agents, servants, and employees, knew or should have known that Diegelman was a known sexual predator of children.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

68.    At all relevant times it was reasonably foreseeable to defendants, their agents, servants, and employees that Diegelman's sexual abuse of children would likely result in injury to others, including the sexual abuse of Plaintiff and other children by Diegelman.

69.    Defendants, their agents, servants, and employees knew or should have known that Diegelman was sexually abusing Plaintiff and other Scouts.

70.    Defendant 1 and Defendant 2, their agents, servants, and employees, knew or should have known before and during Diegelman's sexual abuse of Plaintiff that Scout leaders, volunteers, and other persons serving Defendant 1 and Defendant 2 had used their positions with those defendants to groom and to sexually abuse children.

71.    Defendant 1 and Defendant 2, their agents, servants, and employees, knew or should have known before and during Diegelman's sexual abuse of Plaintiff that such Scout leaders, volunteers, and other persons could not be "cured" through treatment or counseling.

72.    Defendant 1 and Defendant 2, their agents, servants, and employees, concealed the sexual abuse of children by Diegelman in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the recent amendment that allows Plaintiff to pursue his claim now, despite knowing that Diegelman and other child predators in their ranks would continue to molest children.

73.    Defendant 1 and Defendant 2, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Diegelman would use his position with Defendants to sexually abuse children, including Plaintiff.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

74.     Defendant 1 and Defendant 2, their agents, servants, and employees, disregarded their knowledge that Diegelman would use his position with them to sexually abuse children, including Plaintiff.

75.     Defendant 1 and Defendant 2, their agents, servants, and employees, acted in concert with each other or with Diegelman to conceal the danger that Diegelman posed to children, including Plaintiff, so that Diegelman could continue serving them despite their knowledge of that danger.

76.     Defendant 1 and Defendant 2, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Plaintiff, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

77.     Defendant 1 and Defendant 2, their agents, servants, and employees, concealed the sexual abuse of children by Scout leaders, volunteers, and other persons serving Defendant 1 and Defendant 2 in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the recent amendment that allows Plaintiff to pursue his claim now, despite knowing that those Scout leaders, volunteers, and other persons would continue to molest children.

78.     By reason of the wrongful acts of Defendant 1 and Defendant 2 as detailed herein, Plaintiff sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression,

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage.

79.     Some or all of the above listed injuries are of a permanent and lasting nature, and Plaintiff has and/or will become obligated to expend sums of money for treatment.

## IV.    CAUSES OF ACTION
### FIRST COUNT

**(Violation of New Jersey Child Sexual Abuse Act, N.J.S.A. 2A:61B-1)**

1.     Plaintiff repeats and re-alleges the allegations above and below.

2.     During the time that Diegelman was working for and serving Defendants, he committed "sexual abuse" of Plaintiff as defined by New Jersey Child Sexual Abuse Act, N.J.S.A. 2A:61B-1.

3.     Each Defendant knowingly permitted and/or acquiesced in the sexual abuse of Plaintiff by Diegelman in violation of the New Jersey Child Sex Abuse Act.

4.     Defendants' actions constitute malice, vindictiveness, wanton and reckless disregard, and indifference to Plaintiff's rights and safety.

5.     At all relevant times Diegelman was an employee or agent of Defendants acting within the scope of his employment or agency. As such, in addition to being directly liable under this cause of action, Defendants are vicariously liable for the torts committed by Diegelman under the doctrine of *respondeat superior*.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

6.     As a direct and proximate result of the acts and omissions of each Defendant, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and

emotional pain and suffering, for punitive damage, for costs of suit, attorney fees, and for such other relief as the Court finds equitable and just.

## SECOND COUNT

### (Negligence)

1.     Plaintiff repeats and re-alleges the allegations above and below.

2.     Defendants had a duty to take reasonable steps to protect Plaintiff, a minor child, from foreseeable harm when he was in their care, custody, and control, including when he was a paying member of their youth program and was participating in their program activities.

3.     During the time that Diegelman was working for and serving Defendants, Defendants had a duty to take reasonable steps to prevent Diegelman from using the tasks, premises, and instrumentalities of his position with each Defendant to target, groom, and sexually abuse children, including Plaintiff.

4.     In addition, at all relevant times, each Defendant had a duty to warn, train or educate their adult volunteers and youth membership, including Plaintiff (either directly or through his parents), about the risk of sexual abuse by adult male volunteers involved in the scouting program, and how to avoid or minimize such risk.

5.     Each Defendant breached the foregoing duties by failing to use reasonable care to protect Plaintiff from Diegelman, which allowed him to groom and to sexually abuse Plaintiff.

6.     As a direct and proximate result of the acts and omissions of each Defendant, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against Defendants herein for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

emotional pain and suffering, for punitive damage, for costs of suit, attorney fees and for such other relief as the Court finds equitable and just.

## THIRD COUNT

### (Intentional and Negligent Infliction of Emotional Distress)

1.      Plaintiff repeats the allegations above as if set forth at length herein.

2.      In committing the acts described above, Defendants and Diegelman acted intentionally and/or recklessly in deliberate disregard of the high degree of probability of the emotional distress that Plaintiff would suffer.

3.      The conduct of each Defendant and Diegelman was so outrageous and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

4.      At all relevant times Diegelman was an employee or agent of Defendants acting within the scope of his employment or agency. As such, Defendants are vicariously liable for the torts committed by Diegelman under the doctrine of *respondeat superior*.

5.      In addition, Defendants are directly liable based on their own reckless, extreme, and outrageous conduct by providing Diegelman with access to children, including Plaintiff, despite knowing that he would likely use his position to groom and to sexually abuse them, including Plaintiff. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

6.      Defendants engaged in reckless, extreme, and outrageous conduct by representing to Plaintiff and his family that Diegelman was safe and trustworthy, and that all of

Rebenack, Aronow & Mascolo, LLP

111 Livingston Ave. New Brunswick, NJ

their Scout leaders, employees, and volunteers were safe and trustworthy, despite the fact that these defendants knew that sexual predators, like Diegelman, were using their positions in the program to groom and to sexually abuse children. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow. As a result of this reckless, extreme, and outrageous conduct, Diegelman used his position with Defendants to gain access to Plaintiff and to sexually abuse him.

7.      Defendants knew that the foregoing reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Plaintiff did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

8.      The conduct of each Defendant was intentional and outrageous as it pertains to the oversight, knowledge and/or acquiescence of the sexual abuse of Plaintiff and other children by Diegelman while within the scope of his employment with Defendants and the services he provided to Defendants.

9.      As a direct and proximate result of the negligent, intentional, and outrageous actions of Defendants, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages in an amount sufficient to compensate him for his compensatory damages, for both physical and

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

emotional pain and suffering, for punitive damage, for costs of suit, attorney fees and for such other relief as the Court finds equitable and just.

## FOURTH COUNT

### (Punitive Damages)

1.    Plaintiff repeats the allegations above as if set forth fully herein.

2.    The acts and omissions by each Defendant constitute a wanton and willful disregard of the safety of members of the general public and minors in the care of each Defendant, including Plaintiff.

3.    Plaintiff was a person who would foreseeably be harmed by such acts and omissions.

4.    Plaintiff seeks damages pursuant to N.J.S.A. 2A:15-5.9, et seq., Punitive Damages Act.

**WHEREFORE**, Plaintiff demands judgment against Defendants herein for punitive damages, together with interest and costs of suit and other remedies.

## FIFTH COUNT

### (John Does 1-10)

1.    Plaintiff repeats the allegations above as if set forth fully herein.

2.    Defendants, John Does 1-10, are fictitious names intended to represent additional persons or legal entities that may have caused the damages referred to in the preceding paragraphs through their negligent, intentional, and/or outrageous acts, and/or who are otherwise vicariously liable for the wrongful conduct of the named Defendants. These "John Doe" defendants cannot be identified at this time but may be identified through the course of discovery.

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

3.      As a direct and proximate result of the acts and omissions of each Defendant, including Defendants John Doe 1-10, Plaintiff suffered and will continue to suffer physically, emotionally, and otherwise.

**WHEREFORE**, Plaintiff demands judgment against Defendants herein for damages in an amount sufficient to compensate him for his injuries together with interest and costs of suit and other remedies.

## V.      JURY DEMAND

Please be advised that the Plaintiff, ███████ hereby demands a trial by jury on all issues so triable.

## VI.      TRIAL COUNSEL DESIGNATION

Pursuant to Rule 4:25-4, **J. Silvio Mascolo, Esq.,** has been designated as trial counsel on behalf of the Plaintiff in the above-captioned matter.

## VII.      REQUEST FOR ANSWERS TO INTERROGATORIES

**PLEASE TAKE FURTHER NOTICE** that a demand is made of Defendants to provide answers to Form C Interrogatories within the time prescribed by the Rules of Court.

## VIII.      DEMAND FOR INSURANCE INFORMATION

PURSUANT to Rule 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

( ) Yes ( ) No

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

If the answer is "yes", attach a copy of each or in the alternative, state under oath or certification:

      (a)     policy number;

      (b)     name and address of insurer or issuer;

      (c)     the inception and expiration dates;

      (d)     names and addresses of all persons insured thereunder;

      (e)     personal injury limits;

      (f)     property damage limits;

      (g)     medical payment limits;

      (h)     name and address of person who has custody and possession thereof;

      (I)     where and when each policy and agreement can be inspected and copied;

      (j)     whether any Reservation of Rights has been asserted by the carrier and if so, attach a copy of any such reservation.

## IX.    CERTIFICATION

1.    Pursuant to Rule 4:5-1, the undersigned hereby certifies that at the time of filing of this pleading, the matter in controversy is not the subject of any other action pending in any Court and/or Arbitration proceeding.

2.    I also understand that at this time there are no other parties to my knowledge, that should be named in this lawsuit.

3.    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

      Dated ███████████

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

REBENACK, ARONOW & MASCOLO, LLP
Attorney for Plaintiff, ███████

By: _____

J. SILVIO MASCOLO

Rebenack, Aronow
& Mascolo, LLP

111 Livingston Ave.
New Brunswick, NJ

# Civil Case Information Statement

**Case Details:** ███████████████████████

| | |
|---|---|
| **Case Caption:** ████████ VS DEFENDANT 1 | **Case Type:** PERSONAL INJURY |
| **Case Initiation Date:** ████████ | **Document Type:** Complaint with Jury Demand |
| **Attorney Name:** J. SILVIO MASCOLO | **Jury Demand:** YES - 6 JURORS |
| **Firm Name:** REBENACK, ARONOW & MASCOLO, LLP | **Is this a professional malpractice case?** NO |
| **Address:** ██████████████████ | **Related cases pending:** NO |
| ████████████████████ | **If yes, list docket numbers:** |
| **Phone:** ███████ | **Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO |
| **Name of Party:** PLAINTIFF : ███████ | |
| **Name of Defendant's Primary Insurance Company** | **Are sexual abuse claims alleged?** YES |
| (if known): Unknown | |

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
      **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
      **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

████████
Dated

*/s/* J. SILVIO MASCOLO
Signed

██████████████████████████████████████

██████████████████████████
███████████
████████████████████

█████████████████████

                              **TRACK ASSIGNMENT NOTICE**

                    **DATE:**    ███████████████████
                    **RE:**        ██████████  VS DEFENDANT 1
                    **DOCKET:**  █████████████████

      **THE ABOVE CASE HAS BEEN ASSIGNED TO:**    ████████

      **DISCOVERY IS  300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.**

      **THE PRETRIAL JUDGE ASSIGNED IS:**  ████████████████████

       **IF YOU HAVE ANY QUESTIONS, CONTACT TEAM        ██**
**AT:**   ████████████

       **IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
      PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.**
                              **ATTENTION:**
                                   **ATT: J. S. MASCOLO**
                                   **REBENACK, ARONOW & MASCOLO, LL**
                                   **111 LIVINGSTON AVE**
                                   **NEW BRUNSWICK    NJ 08901**


**ECOURTS**