# Exhibit 6

Diegelman, George J 84



CONF002024

DYKES_I_002004

CONFIDENTIAL RECORD SHEET

RE●STRATION AND SUBSCRIPTION SERV●E            Appendix A

BOY SCOUTS OF AMERICA

DATE November 12, 1984

FULL NAME George J. Diegelman, Jr.
          (No initials if you can possibly give full name)

ADDRESS   28 Darmstadt Avenue

CITY Egg Harbor               STATE   N.J.              ZIP CODE 08215

DATE OF BIRTH 11-25-49           (This is important and should be exact)

APPROXIMATE AGE_____ (To be used ONLY when date of birth is not known)

RELIGION_____          NATIONALITY   American

OCCUPATION Operating Room Registered Nurse

EDUCATION _____

WEIGHT   170          HEIGHT   5'11"              RACE Caucasian

COLOR OF HAIR_____ COLOR OF EYES_____

OUTSTANDING CHARACTERISTICS OR INTERESTS_____

MARRIED OR SINGLE   Single        CHILDREN_____

WIFE'S NAME_____

SCOUTING CONNECTIONS:

| UNIT # | CITY | STATE | OFFICE | DATE REGISTERED | DATE RESIGNE: |
|--------|------|-------|--------|-----------------|---------------|
| Troop 73 | Egg Harbor | N.J. | SM | 1967 | |

SPECIAL RECOGNITION  Scouter's Award "73, Woodbadge - Beads "77

SUSPENDED OR DENIED REGISTRATION FOR FOLLOWING REASONS:

SPECIFY THE FACTS WHICH LEAD YOU TO RECOMMEND DENIAL OF REGISTRATION AND
ATTACH SUPPORTING DOCUMENTS (STATE ONLY KNOWN FACTS, NOT RUMOR, CONJECTURE
OR SPECULATION):

Letter (attached) from parent of Scout who was "initiated" at campout by: (1) being
stripped naked and being rolled in sand, (2) placing shaving cream on genitle area,
(3) threat or jest to shave pubic area with straight razor, and (4) "mooning" (drop-
ing pants) of boys by the adults leaders.

Signed William M Rye
        SCOUT EXECUTIVE

.. STARON

Council   Atlantic Area

NOV 19 1984

CONF002025

DYKES_I_002005

CONF002026

```
02/11/91  17:34:56                        BOY SCOUTS OF AMERICA                           PAGE:  511
MS300C-R3                            MEMBERSHIP SUPPORT SYSTEM
                            INELIGIBLE VOLUNTEER CHECKING MATCH REPORT - VAN
```

| | MEMBER KEY | LAST NAME | FIRST NAME | MIDDLE NAME | SEX | BIRTH YEAR | SOC SEC NO |
|---|---|---|---|---|---|---|---|
| CONT | | CHIAPPINI | WILLIAM | A | M | 21 | |
| | | CHIAPPONE | ZIAN | M | M | 55 | |
| | 331S0073 005845 | DIEGELMAN JR | GEORGE | J | M | 49 | |
| | | DIEGELMAN JR | GEORGE | | M | 49 | |
| | 331S0073 012388 | STEINER | RICHARD | | M | 00 | |
| | | STEINER | JOSEPH | D | M | 49 | |
| | | STONER | MICHAEL | C | M | 58 | |
| | 331S0073 013370 | CAVILEER | DAVID | | M | 00 | |
| | | CAVALLARO | CARMINE | V | M | 59 | |
| | | CHEVALIER | ROBERT | G | M | 72 | |
| | 331S0073 016564 | CAVILEER | DAVID | | M | 00 | |
| | | CAVALLARO | CARMINE | V | M | 59 | |
| | | CHEVALIER | ROBERT | G | M | 72 | |
| | 331S0075 018723 | PRICE | TIMOTHY | | M | 59 | |
| | | PARKS | BRIAN | E | M | 57 | |
| | | PEREZ | WILLIAM | V | M | 59 | |
| | | PERRUCCI | THOMAS | J | M | 56 | |
| | 331T3025 018011 | MINICHINO | RICHARD T | | M | 60 | |
| | | MONGIN | WILLIAM | GERALD | M | 59 | |
| | 331T3025 018736 | RUFFENACH | JOE | | M | 53 | |
| | | ROBBINS | ERIC | D | M | 57 | |
| | | ROBINSON | ROBERT | P | M | 56 | |
| | | ROBINSON | ROBERT | W | M | 52 | |
| | 331T3027 017789 | CIARALO | JOSEPH | | M | 00 | |
| | | CARL | COLEY | TIDWELL | M | 38 | |
| | | CARROLL | EDGAR | A | M | 46 | |
| | | CARROLL | JOSEPH | | M | 42 | |
| | 331T3027 017795 | HARRIS | MARIA C | | F | 58 | |
| | | HARRIS | L | SUSAN | F | 55 | |
| | 331T3027 017797 | SPEARS | KENNETH S | | M | 61 | |
| | | SPARKS | GUY | K | M | 59 | |
| | 331T3051 018159 | SMITH | JOHN N | | M | 51 | |
| | | SMITH | DALE | R | M | 50 | |
| | | SMITH | ROBERT | DONALD | M | 00 | |
| | | SMITH | JAMES | WARREN | M | 46 | |
| | | SMITH | JAMES | MICHAEL | M | 55 | |
| | | SMITH | JAMES | | M | 46 | |
| | | SMITH | LAFAYETTE | R | M | 47 | |
| | | SMITH | MICHAEL | BTAT | M | | |

DYKES_I_002006

**TS CALL FORM**

CALL BACK REQUESTED _____

COUNCIL # 331

PHONE NO: 609 -645 -8311

CALLER: Jerri

POSITION:

### TYPE OF PROBLEM

REGISTRATION _____          VETERANS _____          EXPLORING _____

SCOUTING _____          BOYS' LIFE _____

UNIT #      DIST. #      EXP. DATE      TRANSMITTAL #      FILM #

received 2 credit notices for
50073  # 015604 for George Diegelman
and  # 015603 for Wm Chiappini
with credit letter dated 6-24-88
and check.

~~She should not have reced credits
because, trans was returned to
her with check because it was recd
to late before co. went on line~~

credits were issued due to C.F. They should
not have been issued. P. Ernst + D. Parks
have decided to let these men be registered.

issued debit # 15380 and added
acc on the System

NAME  S Meuse

DATE  7-8-88

TIME _____

R/S-433
3/13/86-c1F-567r

CONF002027

DYKES_I_002007

May 10, 1988

Mr. William H. Ridge
Scout Executive
Atlantic Area Council, No. 331

PERSONAL AND CONFIDENTIAL          SUBJECT:  W. CHIAPPINI & G. DIEGELMAN

Dear Bill:

This confirms our telephone conversation of May 9, concerning the above named
individuals.  We had discussed these individuals on the phone and this is our
response.

A very involved agreement was consummated with these two individuals related
to their registration with the Boy Scouts of America.  From all indications,
they have both abided by the terms of this agreement.

We will allow both individuals to continue to be registered on a probationary
basis, subject to the following of the agreement.  Any violation of this could
lead to immediate suspension.

Thanks for your help in arriving at this decision at the present time.  Let us
know if we may be of help in any other way.

Sincerely,


Paul Ernst, Director
Registration Service

eko

cc:  Northeast Region
     Dave Park, S400

CONF002028

DYKES_I_002008



# ATLANTIC AREA COUNCIL, INC.
## BOY SCOUTS OF AMERICA
*1410 Shore Road, Northfield, New Jersey 08225*
Phone: (609) 645-8311



**PRESIDENT**
Dr. Philip E. Geiger

**COUNCIL COMMISSIONER**
Thomas E. Sweeny

**COUNCIL EXECUTIVE**
William M. Ridge

**VICE PRESIDENTS**
Henry G. Broome, Jr., Esq.
Dr. Joseph W. English
Michael Gallagher
Brian Hilton
Dr. Norman Hirschfeld
Robert Swartz

**TREASURER**
C. Patrick McKoy

**ASSISTANT TREASURER**
John C. Rowe

**EXECUTIVE BOARD**
David W. Aiken
Eugene K. Burns
Dr. Herbert N.D. Cahan
Raymond Collins
___es Cooper
___ce Cooper
Richard Eichorst
Dr. Lenore Farrah
Thomas E. Flatley, Esq.
Thurston Gault
Dr. Kenneth Grossman
Glenn R. Gronlund
Joe Haase
John F. Haynie
Mary E. Haynie
Norman Hilton
Raymond J. Hollinger
Stephen F. Hyde
Antonia R. Jacovini
Harry Loyle
Larry A. Masi
Frederick B. Mason
Dr. Martin Ney
Jim Pappas
Vito S. Pantilione
Toby Praus
JoAnn V. Ross
Eugene Schraeder
Alan Sless
Steve Sless
Richard Taylor
Benjamin J. Thomas

April 29, 1993

Paul Ernst, Director
Registration Service
National Office, BSA
1325 Walnut Hill Lane
P.O. Box 152079
Irving, Texas 75015-2079

Subject: J. Chiappini and G. Diegelman

Dear Paul,

Reference our telephone conversation on Tuesday, April 26, 1993, I have to date not heard from Dave Parks concerning the two above "Subjects". Although I am no defender (on the contrary) of these two, I do express concern for the suspension action you have chosen for the following reasons:

1) Three (3) years have lapsed with no complaints.

2) At that point in time; all parties knew of and agreed to follow the (then accepted) BSA policy of leadership standards. Three attorneys were a part of these proceedings, one representing the "subjects". The independent committee presented their "judgment", which was acceptable to all parties. ==A suspension now would appear to be a form of "double jeopardy".==

3) The panels conclusions were that an "initiation-rite" was performed with much indiscretion and poor leadership example. Nothing of a real "morals or criminal" action.

4) ==This suspension will bring a law suit by the subjects.==

*Member Agency:  UNITED WAY OF ATLANTIC CITY*

CONF002029

DYKES_I_002009

My concern is "procedural and methodology" only. Personally, I would not loose any sleep if the two were not in Scouting.  I wish merely to present the facts as I see them for the benefit of the movement. If more knowledgeable wisdom prevails, I ask only for guidance on reason and cause for their dismissal and how to administer that dismissal. I will support your decision.  No action will be taken until I have your response.

Sincere regards,

William H. Ridg.
Scout Executive

cc:  D. Parks
     R. Flythe, NGR

Enclosure (2)

CONF002030

DYKES_I_002010

April 14, 1988

Mr. William M. Ridge
Scout Executive
Atlantic Area Council, No. 331

PERSONAL & CONFIDENTIAL          SUBJECTS:  William Chiappini and
                                           George Diegelman

Dear Bill:

I received your letter of April 5 concerning the registration of the two in-
dividuals named above.  I believe I indicated to you in our telephone conversa-
tion that I would have to run this through our legal counsel here to make cer-
tain they agreed that these individuals should continue to register and that
this would be acceptable based on the conditions which exist.

We have had this reviewed by our corporate attorney and our management and, in
light of our present policies regarding youth protection, it is the decision
that Mr. Diegelman and Mr. Chiappini should not be registered with the Boy
Scouts of America.  We ask that their registration be suspended and revoked at
this time.

It is unfortunate that these individuals were permitted to re-enter Scouting
after the original incident, but the paramount concern for those of us in
Scouting today is the protection of youth in our care.  The conduct which oc-
curred is unacceptable today and it is felt we could not risk permitting such
individuals to continue in Scouting.

Please contact me if you wish to discuss this matter.

Sincerely,




Paul Ernst, Director
Registration Service

eak

cc:  Northeast Region

READY TO FILE
APR 14 1988
ERIN O'RILEY

CONF002031

DYKES_I_002011





# ATLANTIC AREA COUNCIL, INC.

## BOY SCOUTS OF AMERICA

*1410 Shore Road, Northfield, New Jersey 08225*
*Phone: (609) 645-8311*

**PRESIDENT**
Dr. Philip E. Geiger

**COUNCIL COMMISSIONER**
Thomas E. Sweeny

**COUNCIL EXECUTIVE**
William M. Ridge

**VICE PRESIDENTS**
Henry G. Broome, Jr., Esq.
Dr. Joseph W. English
Michael Gallagher
Brian Hilton
Dr. Norman Hirschfeld
Robert Swartz

**TREASURER**
C. Patrick McKoy

**ASSISTANT TREASURER**
John C. Rowe

**EXECUTIVE BOARD**
David W. Aiken
Eugene K. Burns
Dr. Herbert N.D. Cahan
Raymond Collins
    ›res Cooper
    :e Cooper
Richard Eichorst
Dr. Lenore Farrah
Thomas E. Flatley, Esq.
Thurston Gault
Dr. Kenneth Grossman
Glenn R. Gronlund
Joe Haase
John F. Haynie
Mary E. Haynie
Norman Hilton
Raymond J. Hollinger
Stephen F. Hyde
Antonia R.Jacovini
Harry Loyle
Larry A. Masi
Frederick B. Mason
Dr. Martin Ney
Jim Pappas
Vito S. Pantilione
Toby Praus
JoAnn V. Ross
Eugene Schraeder
Alan Sless
Steve Sless
Richard Taylor
Benjamin J. Thomas

April 5,1988

Paul Ernst
Director Registration
BSA National
25 Walnut Hill Lane
Irving, Texas 75038-3096

Dear Paul,

Per our conversation of April 7th, the following information should comply with your request.

Ref: William Chiappini, George Diegelman- Troop S0073.

Both of the above named have complied with the "penalities" assessed by the panel; and, both have maintained their registration with the BSA. To date, there have been no further "complaints" via the Scouting program. They are "monitored" as best we can through an alert District Commissioner, Chairman, and Executive.

Thank you for all your help and guidance.

Sincerely,

William M. Ridge
Scout Executive

*Member Agency:  UNITED WAY OF ATLANTIC CITY*

CONF002033

DYKES_I_002012

```
DATE: C3/02/88
TIME: 17:41:09
```

COUNCIL-3.

TRANSMISSION  880203

| P-UNIT | QTY-YOUTH STD | CAL | DOLLARS-YOUTH STD | CAL | QTY-ADULT STD | CAL | DOLLARS-ADULT STD | CAL | QTY-MLT-MEM STD | CAL | QTY-TRNSFER STD | CAL | QTY-BLIFE STD | CAL | DOLLARS-BLIFE STD | CAL | UNIT STD | UNIT CAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C 3008 | 15 | 15 | 6000 | 6000 | 6 | 6 | 3000 | 3000 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 2000 | 2000 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 11000 | 11000 |
| C 3046 | 2 | 2 | 800 | 800 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 1 | 1 | 660 | 660 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 1460 | 1460 |
| C 3051 | 0 | 0 | 00 | 00 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 00 | 00 |
| C 3072 | 1 | 1 | 400 | 400 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 1 | 1 | 660 | 660 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 1060 | 1060 |
| C 3099 | 1 | 1 | 350 | 350 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 350 | 350 |
| E 2037 | 1 | 1 | 500 | 500 | 0 | 0 | 50 | 50 | 0 | 0 | 3 | 3 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 550 | 550 |
| E 2094 | 0 | 0 | 00 | 00 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 00 | 00 |
| E 2147 | 0 | 0 | 00 | 00 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 00 | 00 |
| E 2521 | 0 | 0 | 00 | 00 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 00 | 00 |
| S 0017 | 8 | 8 | 3200 | 3200 | 4 | 4 | 2000 | 2000 | 1 | 1 | 0 | 0 | 8 | 8 | 3960 | 3960 | 2000 | 2000 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 11160 | 11160 |
| S 0030 | 1 | 1 | 400 | 400 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 1 | 1 | 660 | 660 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 1060 | 1060 |
| S 0032 | 0 | 0 | 00 | 00 | 0 | 0 | 00 | 00 | 0 | 0 | 0 | 0 | 0 | 0 | 00 | 00 | 00 | 00 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 00 | 00 |
| S 0032 | 200 | 0166 | ( THIS MEMBER FAILED THE CONFIDENTIAL CHECK ) DOB=0000 | | | | | | | | | | | | | | | |
| | 003350 WILLIAMS | | THOMAS G | | BOX 119 | | | | | | | | OCEAN CITY | | NJ08226 | | 1 | |
| S 0032 | 34 | 34 | 13650 | 13650 | 17 | 17 | 8500 | 8500 | 3 | 3 | 1 | 1 | 36 | 36 | 21780 | 21780 | 2000 | 2000 |
| | | | | | | | | | | | | | TOTAL TRANSMISSION | | | | 45930 | 45930 |
| S 0073 | 200 | 0255 | ( THIS MEMBER FAILED THE CONFIDENTIAL CHECK ) DOB=0000 | | | | | | | | | | | | | | | |
| | 005840 CHIAPPINI | | WILLIAM J | | 411 CHICAGO AVE | | | | | | | | EGG HARBOR CITY | | NJ08215 | | 1 | |
| S 0073 | 200 | 0257 | ( THIS MEMBER FAILED THE CONFIDENTIAL CHECK ) DOB=4912 | | | | | | | | | | | | | | | |
| | 005845 DIEGELMAN JR | | GEORGE | | RD 3 BOX 111 | | | | | | | | EGG HARBOR CITY | | NJ08215 | | 1 | |
```

Handwritten annotations:
- "4" near S 0032 Williams line
- "on Probation - Co - 331"
- "2" near S 0073 line
- "SM WILLIAM on Probation Co - 33!"

CONF002035

January 26, 1987

Mr. William H. Ridge
Scout Executive
Atlantic Area Council, No. 331

PERSONAL & CONFIDENTIAL

Dear Bill:

We recently received the registration of William Chiappini as Scouting Coordinator for Troop S0073. This same unit also registered George Diegelman as Scoutmaster.

We wanted you to be aware of this registration, since these individuals were placed on the Confidential File in May, 1985. At that time, we indicated that they would be put on probation if they tried to register in the future.

I am sure you will want to maintain some contact so you know how they are performing in their new responsibilities. Let me know if we may be of help.

Sincerely,

Paul Ernst, Director
Registration, Subscription &
Statistical Service

PE/cre

CONF002036

DYKES_I_002014



Paul
    You asked for a note in reference
of William Chiappini ➞
        SC for Unit-S-0073 and
        George Bingham
        SM for Unit S-0073
of Council 331 to make SE
aware of request on probation
for both these men —
Council asked to have them
on Prob - May 20, 1985
Scout Exec Wm M. Ridge
Atlantic Area Co - 331

CONF002037

DYKES_I_002015

George N. Siegleman

Dear Mr. Coleman:

Shannon L. Dykes, Jr.
Council President

cm

cc:   J. McCleary
      R. Moore NE Reg.
      R. Ernst, Nat'l. BSA

CONF002038

DYKES_I_002016



# ATLANTIC AREA COUNCIL, INC.

BOY SCOUTS OF AMERICA

*1410 Shore Road, Northfield, New Jersey 08225*
*Phone: (609) 645-8311*

May 20, 1985

**PRESIDENT**
Shannon L. Bybee, Jr.

**COUNCIL COMMISSIONER**
Thomas E. Sweeny

**SCOUT EXECUTIVE**
William M. Ridge

**VICE PRESIDENTS**
Ronald W. Bush
Raymond Collins
Philip E. Geiger
Mary E. Haynie
Frederick B. Mason

**TREASURER**
C. Patrick McKoy

**ASSISTANT TREASURERS**
David W. Asken
Vincent Lo Presti

**EXECUTIVE BOARD**
Robert H. Barney
Henry G. Broome, Jr.
Herbert N.D. Cohen
Carmen DeMarco
William M. Dougall
Eve Dryer
John Durkan
Richard J. Eichorn
Robert Fasucci
Fidel Fernandez
James E. Franklin
Thurston Gault
Michael Gallager
Peggy Gerber
Donald Gilbert
Joe Hasse
John F. Haynie
Norman L. Hilton
Raymond J. Hollinger
Rosalind Howard
Francis V. Kowalski
James Lees
Howard J. Lynde, Jr.
Ann McCabe
Donald M. Pileggi
Anthony M. Rey
John C. Rowe
Alan Sless
William S. Weinberger
Martin S. Wilson, Jr.

Glenn Gronlund
District Commissioner
Suite 500
1300 Atlantic Avenue
Atlantic City, New Jersey 08401

Dear Mr. Gronlund:

The council level volunteer committee reference Messr.
Diegelman and Chiappini has rendered its decision to rein-
state both leaders as registered members of the Boy Scouts of
America based upon the following acceptable conditions:

(1)  Mr. Diegelman shall take the next available Scout
     Basic Leader Course;

(2)  An assistant Scoutmaster shall be appointed and
     shall actively serve.  The assistant Scoutmaster
     shall have either taken the Scout Basic Leader
     Course within the past two years or shall be
     required to take the next available Scout Basic
     Leader Course with Mr. Diegelman.

(3)  Mr. Diegelman as Scoutmaster and Mr. Chiappini as
     Scout Coordinator shall be placed on a probationary
     period of one year to be served without further
     incidents;

(4)  That there shall be full cooperation with the
     District and the Council and coordination between
     the Troop, the District and the Council;

(5)  That there be no further deviation from accepted
     Scout practices;

(6)  That performance shall be subject to review by the
     Executive Officer of the Sponsoring Institution
     and by the District Commissioner.

Your cooperation in assisting with the described condi-
tions will be appreciated.  Note that #6 will require your
evaluation in cooperation with the American Legion Post 158.
Executive Officer (Commander).  It would be appropriate if
you notify Mr. Diegelman, in writing, of the scheduled Basic
Scout Leader Training courses forthcoming with copy to my
attention.

*Member Agency: UNITED WAY OF ATLANTIC COUNTY*

CONF002039

DYKES_I_002017

Glenn Gronlund                    Page 2                    May 20, 1985

    On behalf of the Atlantic Area Council, BSA, I would express appreciation
for the services you have rendered in this matter.

                                Sincerely yours,

                                William M. Ridge
                                Scout Executive

dm

xc:  S. Bybee
     J. McGeary
     J. Franklin

CONF002040

DYKES_I_002018



# ATLANTIC AREA COUNCIL, INC.

BOY SCOUTS OF AMERICA

*1410 Shore Road, Northfield, New Jersey 08225*
*Phone: (609) 645-8311*

May 20, 1985

PRESIDENT
Shannon L. Bybee, Jr.

COUNCIL COMMISSIONER
Thomas E. Sweeny

SCOUT EXECUTIVE
William M. Ridge

VICE PRESIDENTS
Ronald W. Bush
Raymond Collins
Philip E. Geiger
Mary E. Haynie
Frederick B. Mason

TREASURER
C. Patrick McKoy

ASSISTANT TREASURERS
David W. Aiken
Vincent Lo Presti

EXECUTIVE BOARD
Robert H. Barney
Henry G. Broome, Jr.
Herbert N.D. Cahar
Carmen DeMarco
William M. Dougall
Eve Dryer
John Durkan
Richard J. Eichorst
Robert Fanucci
Fidel Fernandez
James E. Franklin
Thurston Gault
Michael Gallager
Peggy Gerber
Donald Gilbert
Joe Haase
John F. Haynie
Norman L. Hilton
Raymond J. Hollinger
Rosalind Howard
Francis V. Kowalski
James Lees
Howard J. Lynde, Jr.
Ann McCabe
Donald M. Pileggi
Anthony M. Rey
John C. Rowe
Alan Siess
William S. Weinberger
Martin S. Wilson, Jr.

Wilbur H. Heitz
Post Adjutant
Rudolph Elmer Post No. 158
American Legion
Egg Harbor City, New Jersey 08215

Dear Mr. Heitz:

Reference your December 19, 1984, letter concerning Troop 73 Scoutmaster George Diegelman and Scouting Coordinator William Chiappini. A council level volunteer committee appointed by the council president has rendered its decision in this matter.

I will share with you the highlights of that decision. Both leaders have been reinstated as registered Scouters in the Boy Scouts of America providing the following conditions are agreed upon:

(1) Mr. Diegelman shall take the next available Scout Basic Leader Course;

(2) An assistant Scoutmaster shall be appointed and shall actively serve. The assistant Scoutmaster shall have either taken the Scout Basic Leader Course within the past two years or shall be required to take the next available Scout Basic Leader Course with Mr. Diegelman.

(3) Mr. Diegelman as Scoutmaster and Mr. Chiappini as Scout Coordinator shall be placed on a probationary period of one year to be served with out further incidents;

(4) That there shall be full cooperation with the District and the Council and coordination between the troop, the District and the Council;

(5) That there be no further deviation from accepted Scout practices;

(6) That performance shall be subject to review by the Executive Officer of the Sponsoring Institution and by the District Commissioner.

*Member Agency: UNITED WAY OF ATLANTIC COUNTY*

CONF002041

DYKES_I_002019

Mr. Wilbur H. Heitz                    Page 2                    May 20, 1985

    Your cooperation in assisting with these conditions will be greatly
appreciated. Note #6 will require your evaluation in cooperation with the
District Commissioner.

    The Boy Scouts of America appreciates its unique relationship with the
numerous American Legion Posts throughout our nation.  Together we are all
truly interested in the training and welfare of our country's future leaders.
I look forward to our continuous partnership in serving young people through
Scouting.

                                        Sincerely yours,

                                        William M. Ridge
                                        Scout Executive

dm

cc:  J. McGeary
     S. Bybee, President
        Atlantic Area Council, BSA
     J. Franklin
        Committee Chairman
     G. Gronlund
        District Commissioner

CONF002042

DYKES_I_002020

## COMMITTEE DECISION

IN THE MATTER OF GEORGE J. DIEGLEMAN, JR.,
SCOUT MASTER AND WILLIAM A. CHIAPPINI,
SCOUTING COORDINATOR

| Charter Organization: | Rudolph Elmer Post 158, American Legion |
| | 527 Philadelphia Avenue, |
| | Egg Harbor City, New Jersey  08215 |

Troop:                  73, Egg Harbor City, New Jersey

### FACTUAL BACKGROUND

On or about July 5, 1984, while participating in a campout of several days duration at Boy Scout Council Camp Edge, under the auspices of Troop 73, Egg Harbor City, New Jersey, one scout participant, ███████████ age 14, was disciplined and sent home allegedly as a result of an incident involving a fight with another youth. This disciplinary decision was imposed by Mr. George Diegleman, Jr., Scoutmaster Troop 73, after consultation with William Chiappini, Troop 73 Scout Coordinator.

It is undisputed that ███████ was directed to telephone his mother and further directed to tell her to pick him up at Camp Edge. It is also undisputed that although Mr. Chiappini was present during the telephone call he did not speak to Mrs. ████████ at that time.

Thereafter, Mrs. ███████████ arrived at Camp Edge on the afternoon of Thursday, July 5, 1984, to pick up her son.  Mrs. ████████ conversed with Mr. Diegleman at that time and was informed of the incident which resulted in the imposition of the disciplinary treatment and was further informed that ████ might not be entitled to participate in a scheduled troop trip to New Orleans. ███████████ and his mother were directed to call Mr. Diegleman on the following Saturday for Mr. Diegleman's decision concerning ████ participation in the New Orleans trip.

Messrs. Diegleman and Chiappini alleged that ███████████ had been placed on probation due to earlier disciplinary problems and disruption of scouting meetings, ███████████ and Mrs. ███████ alleged that all of the scouts were directed to be on their best behavior during the Camp Edge trip on the basis that space to the New Orleans trip was limited and anyone "not behaving" would jeopardize their opportunity to travel to New Orleans with the troop.

While bringing ███████████ home from Camp Edge, during the trip Mrs. ███████ alleges that she questioned ████ as to why he was being sent home and the nature of the incident which resulted in his dismissal. ████ denied that he started the incident which resulted in his being sent home, but did not deny that such an incident occured. He further denied that either of the adult leaders had been in a

CONF002043

DYKES_I_002021

position to observe the entire series of events. Upon being questioned by ███ ██████ mentioned to her some incidents of initiation which he and others had allegedly been subjected to at camp. Upon further questioning from ██████ ██ supplied more details of the incidents alleged.

Without detailing the specific chronology of events or the specific facts alleged, most of which can be safely said to be in dispute between the ██████ and Messrs. Chiappini and Diegleman, it is sufficient to state that a letter of complaint was issued by ██████ to the Boy Scouts of America, Atlantic Area Council dated October 10, 1984. This letter issued after ██████ was informed of the necessary procedures to be followed in submitting a formal complaint. The facts show that the alleged incidents complained of had been related earlier by ██████ and within four (4) days following ████ dismissal from camp. Therefore, no adverse inference can be drawn from this apparent lapse in time.

The original of that letter was reviewed by this Committee and was found to be stamped "received October 11, 1984". As a result of the allegations made in that letter and pursuant to scout procedure and practice, the privilege of acting as Scout Master and Scout Coordinator for Mr. Diegleman and Mr. Chiappini, respectively, was suspended by letters dated October 23, 1984. Those written notices were sent to those gentlemen from the Council President by certified mail-return receipt requested. Return receipts have been examined, each dated October 24, 1984.

Thereafter on, October 29, 1984, by separate letters to Mr. Chiappini and Mr. Diegleman both gentlemen were advised of the procedure for requesting review of the suspension decision.

On November 13, 1984, a letter of representation was submitted to the Council President by Mr. James McGeary, Esquire, wherein more specific information was requested inclusive of a specific inquiry concerning procedures for review.

Under cover of December 4, 1984, on behalf of Mr. Chiappini and Mr. Diegleman their attorney, James McGeary filed with the Council President a formal request for hearing.

By letter dated January 24, 1985, Council President H. G. Broome, Jr., appointed a committee, advised Mr. McGeary on behalf of his clients that a committee was being convened, and scheduled an initial hearing date of Thursday, January 31, 1985. It was necessary to postpone the initial hearing. However, hearings were ultimately held on March 14, 1985 and May 2, 1985. Throughout the proceedings Messrs. Chiappini and Diegleman were represented by Mr. James McGeary, Esquire, their attorney.

CONF002044

DYKES_I_002022

This Committee was convened pursuant to Scout Rules and Regulations. The suspension of the privilege to serve in the capacity of Scout Master and Scouting Coordinator has continued in effect pending the outcome of this hearing process.

During the course of the committee hearings approximately nine (9) hours of testimony were taken. Every witness was given the opportunity to be heard fully on the subject of their testimony. Mr. McGeary, as attorney for Messrs. Diegleman and Chiappini, had the opportunity to question all witnesses. In addition, questions were asked of witnesses by the Committee members themselves.

The essential documentation reviewed by this Committee was:

1) Letter of ▆▆▆▆▆▆▆▆ dated October 10, 1984;

2) Notes prepared by District Executive Fran Kiger relating to his telephone conversations for the period of July 5, 1984, through July 9, 1984, (although the initial telephone memorandum refers to July 6, 1984. It was established that the correct date was Thursday, July 5);

3) Signed statement of Mr. George Diegleman, undated;

4) Signed statement of Mr. William Chiappini dated November 28, 1984;

5) Summary of investigation conducted by Glenn R. Gronlund, Esquire, District Commissioner;

6) Copies of letters of suspension dated October 23, 1984;

7) Original of executed return receipts signed on behalf of Messrs. Chiappini and Diegleman date October 24, 1984;

8) Copies of letters dated October 29, 1984, from Council President to Messrs. Chiappini and Diegleman;

9) Representation letter of James McGeary, Esquire, dated November 13, 1984;

10) Copy of December 4, 1984, request for hearing from James J. McGeary;

11) Copy of January 24, 1985, letter from Council President to Mr. McGeary appointing committee and scheduling initial meeting;

12) Pertinent sections of the Offical Scout Master Handbook.

The committee received testimony from Mr. Diegleman and Mr. Chiappini, various of the scouts currently enrolled within Troop 73 and who allegedly were present during the Camp Edge activity; various of the parents of scouts currently enrolled within Troop 73, as well as testimony from ▆▆▆▆▆▆▆ her son ▆▆▆▆▆▆ and ▆ ▆▆▆▆▆▆▆ During the questioning of all minors, at least one parent and often times two parents were present at all times. Mr. Chiappini and Mr. Diegleman through their counsel were given adequate opportunity to confront all witnesses.

CONF002045

DYKES_I_002023

## ALLEGATIONS

The allegations made against Mr. Chiappini and Mr. Diegleman have been variously stated. The allegations are contained within the letter of ▮▮▮▮▮▮ dated October 10, 1984; are contained within certain of the previously mentioned documentation, and are contained, succinctly, within Council President Broome's correspondence dated January 24, 1985. This last document will be utilized for purposes of reference.

Therein, the following allegations, in the nature of initiation activities were set forth:

1) Being stripped naked, and being rolled in sand;

2) Placing of shaving cream on genital areas;

3) Threat or jest to shave pubic area with straight razor;

4) "Mooning" and/or dropping of pants by boys and adult leaders.

## COMMITTEE FINDINGS

This Committee recognizes the heavy burden which has been placed upon its shoulders in reviewing this matter and in rendering a fair and impartial decision. In listening to the evidence and in weighing the facts, foremost in the minds of the Committee members has been the question of whether the applicants, in each instance "possessed the moral, education and emotional qualities necessary to afford positive leadership to our youth". The Committee further recognizes that in applying the facts and in weighing the evidence the committee members may bring to bear their own individual experiences, their common sense, and their ability to assess the credibility and demeanor of the witnesses brought forward for their examination and questioning.

The committee is also mindful of Article VIII, Section 1 of the Bylaws of the Boy Scouts of America.

> "No person shall be approved as a leader unless, in the judgment of the corporation, that person possesses the moral, educational, and emotional qualities deemed necessary for leadership and satisfies such other leadership qualification as it may from time to time require."

The committee is also mindful of requirements contained withing the Offical Scout Master Handbook pertaining to activities such as "hazing".

In the present instance, the allegations are deemed by this Committee to be serious. However, it is apparent to the Committee that the matter has become more than a fact finding expedition and has, in fact, become an emotional incident around which sides have been carefully drawn. (Currently enrolled scout members and their parents have formed a strong alliance and that which should be an impartial gathering

CONF002046

DYKES_I_002024

of facts seems to have then construed by certain Troop 73 parents and scouts from the outset as an "Us versus Them" situation. "Them" being the Scouting organization.)

As an aside, this committee strongly questions the benefit to be achieved by such an approach and whether such activity, in the final analysis, furthers the goals of scouting.  Unfortunately, positions become fixed and issues become either "black" or "white" without recognition of those grey areas which are a reality of life. It is only hoped that in this particular instance, under the circumstances which exist, that the highly charged emotions apparent to this Committee during the hearing process will have served to bring parents, scouts, and the Scouting Organization closer together and to achieve a spirit of unity and participation which, it would appear, had heretofore been lacking within Troop 73.

The facts of this particular case as presented are by no means clear. In fact, there is almost absolute diversity of testimony.

Nonetheless, the Committee was confronted on the one hand with what the Committee finds to be two dedicated individuals. Mr. Diegleman and Mr. Chiappini. These individuals are obviously well liked by the boys entrusted to their care and by the parents of those boys.  The boys and the parents have "rallied round" as evidenced by the display of cumulative testimony brought to this Committee by parents and scouts through Mr. McGeary, and by the aforementioned emotional statements. Those individuals were brought to testify on behalf of Messrs. Diegleman and Chiappini.  This attitude is further evidenced by letters which had been directed to the Scouting Headquarters. While seriously questioning the ultimate benefit of such "rallying round the cause" and the emotional conflicts developed as a result of such activity, this Committee cannot disregard the clearly conveyed message that Mr. Chiappini and Mr. Diegleman have a devoted following and that following clearly desires to have the scouting privilege restored to those individuals.   This support is further evidenced by the sponsoring organization. However, despite the display of such obviously well coordinated emotional support, and despite the clear message being conveyed that the scouts and their parents believe in Mr. Chiappini and Mr. Diegleman and want them reregistered, the task of this Committee is made no less easy.

The testimony elicited from Mr. Diegleman, Mr. Chiappini, several of the scouts and their parents-which clearly was becoming cumulative in nature-created an impression of a complaining witness who was an overly sensitive parent, a troublemaker, a somewhat hysterical individual; and, as to ▮▮▮▮ a child who was disruptive, a troublemaker, a continuous disciplinary problem, a boy of questionable motivation and intelligence, and

CONF002047

DYKES_I_002025

●                                    ●

●   ·neral "oddball". Across the board, but subject to certain inconsistencies, there was a denial of the allegations presented by Mrs. ███ and her son.

Conversely, when Mrs. ███ and ███ were given the opportunity to be heard they were found to be sincere and believable individuals acting in good faith and without evidence of any malicious intent. Mrs. ███ appeared to be a parent genuinely concerned for her child and for youth in general, found herself confronted with a situation which she then attempted, within scouting procedures, to address for purposes of final resolution.

The testimony of Mrs. ███ and ███ was consistent and credible. Mrs. ███ gave the appearance of a dedicated and caring parent attempting to be responsive to information obtained from her son. The son, ███ appeared to be a sensitive individual, a boy having a sincere interest in the scouting movement but somewhat confused by events in which he claims to have participated and/or tnessed during his trip to Camp Edge with Troop 73. He gave the appearance of disappointment as a result of a decision not to permit him to participate in the trip to New Orleans, a trip for which he had paid his required fee and for which he had received a $90.00 credit as a result of his unparalleled success in the sale of tickets to a scouting show. He further gave the indication of feeling slightly betrayed by those he had looked up to. He acknowledged that he obtained good experiences in the scouting movement and expressed a desire to continue. His only request was that his personal belongings be returned together with a refund of the $50.00 previously paid for the New Orleans trip. ███ was candid in acknowledging that the incidents which he related to his mother did not seem, upon first impression to be that "unusual". However, in discussing them with his mother he came to have more concern over some of the alleged activities. He also candidly indicated that despite these events, in speaking with Mr. Diegleman on the Saturday first following the event to determine whether he would be permitted to participate in the New Orleans show, that although his parents, as a result of the incidents which ███ had disclosed to them, had determined not to permit him to go to New Orleans, he was willing, even at that point, to argue with his parents and attempt to convince them to let him go to New Orleans if Mr. Diegleman had accepted ███ proposal for an "alternate punishment". ███ further candidly admitted that he "always liked" Bill Chiappini.

In the final analysis, and despite the variation in the testimony presented-where very little has been agreed upon by anyone-and taking into consideration the well choreographed display of support for Mr. Diegleman and Mr. Chiappini, while we are strongly swayed by the sincerity and credibility of Mrs. ███ and her son ███

CONF002048

DYKES_I_002026

and while we find that ███████████ and her son acted entirely in good faith and based upon what ███████████ believed to be in the best interest of her son and the other youth of the organization, although there has been raised in our minds, (which we trust are minds of reasonable men and women), a serious question concerning the incidents which occured during the Troop 73 campout at Council Camp Edge, we do not believe that the allegations have been proven beyond a reasonable doubt. Accordingly we are willing to resolve the doubt in favor of Mr. Diegleman and Mr. Chiappini.

However, this resolution is not easily reached and is not reached without imposition of certain conditions which the Committee understands are within our power to recommend and within the power of the Council to impose.

Each member of this Committee independently concluded that without a shadow of a doubt, errors in judgement have occurred in more than one instance. Those fortunate enough to be extended the privilege of leading scout youths are required to adher to a higher standard of care in setting examples for those youths entrusted to them.

Inferences could be drawn sufficient to support "hazing" or "initiation activities". Witnesses, even those brought in to support Mr. Chiappini and Mr. Diegleman, perhaps without knowing it, acknowledge errors in judgment, lack of supervision and failures to comply not only with the letter but also with the spirit of the scout rules and regulations. Moreover, the specific allegation involving threat of shaving of pubic hair has carried with it sufficient testimony to indicate that such a threat or jest did in fact occur and had occurred on more than one occasion. Testimony was also given that certain of the alleged activities did occur (e.g. "snake and bake", "mooning", and "spraying of shaving cream down pants") although ███████████ was credited with being the perpetrator of those incidents. In fact, certain witnesses would have had us believe that ███████ was the sole cause of all disciplinary problems afflicting Troup 73 in any circumstance. This is a conclusion which we cannot reach.

Admissions to deviation from scouting rules and regulations include, but are not limited to:  admissions of evidence of fireworks within the Camp; testimony evidencing improper supervision at a firing range; permitting non-scouters to participate in a campout; inadequate training and supervision in the handling of knives, axes, and other potentially dangerous instruments; lack of proper coordination and direction on the part of leadership entrusted with those responsibilities; failure to provide adequate supervision during water activities; insufficient impression upon the minds of the participants of the policies and procedures of scouting; unnoticed disappearances from camp; and a clear inference of instances of lack of proper control and lack of appropriate delegation within the patrol itself.

CONF002049

DYKES_I_002027

We conclude that this entire matter was an unfortunate affair. We further believe that the entire matter could have been avoided through the exercise of proper judgment and proper supervision. We also recognize that certain activities may well have occurred which may have been perceived as having more significance than they in fact had.

Although there remains a question in the minds of this Committee as to whether certain "hazing" or "initiation activities" did occur or, might have been condoned, we have, as stated, resolved the question in favor of the adult leaders. Moreover, we are satisfied that the moral qualities of Mr. Chiappini and Mr. Diegleman are not at issue. What is at issue is the leadership qualifications of these individuals.

While there is a general recognition that "boys will be boys" the corollary is that "leaders must be leaders". While good sportsmanship and comradery requires participation with the boys, leaders must not attempt to gain the support of those entrusted to their care by allowing that line of demarcation between boy and leader to be eroded.

In order to resolve any doubts concerning the leadership qualifications of these individuals, it is the unanimous recommendation of this Committee that Mr. George J. Diegleman, Jr. and Mr. William A. Chiappini both be reregistered but subject to and only upon the following conditions:

(1)    Mr. Diegleman shall take the next available Scout Basic Leader Course;

(2)    An Assistant Scout Master shall be appointed and shall actively serve. The Assistant Scout Master shall have either taken the Scout Basic Leader Course within the past two years or shall be required to take the next available Scout Basic Leader Course with Mr. Diegleman;

(3)    Mr. Diegleman as Scout Master and Mr. Chiappini as Scout Coordinator shall be placed on a probationary period of one year to be served without further incidents;

(4)    That there shall be full cooperation with the District and the Council and coordination between the Troop, the District and the Council;

(5)    That there be no further deviation from accepted scout practices;

(6)    That performance shall be subject to review by the Executive Officer of the Sponsoring Institution and by the District Commissioner.

Based upon the testimony presented and the clear indication of lack of proper judgment in certain instances, a failure in more than one instance to comply not only with the letter but also with the spirit of scouting rules and regulations, and the failure in each specific instance to adhere to the quality and clarity of strength, leadership and motivation which is the underlying basis of the continued exercise of the scouting privilege, we hereby recommend that Messrs. Diegleman and Chiappini be reinstated and

8

CONF002050

DYKES_I_002028

eregistered in their respective positions of Scout Master and Scout Coordinator of Troop 73, Egg Harbor City and we entreat the Council to enforce the terms of the conditions which the Committee has imposed for good cause shown.

In closing, the Committee sincerely hopes that from these events some further good will result. It appears that Troop 73 may evolve into a closer group, with better guidance and supervision; that Mr. Chiappini and Mr. Diegleman will continue to devote themselves to the Scouting Spirit and will channel their activities more strictly in compliance with the scouting rules and regulations; that there will be more parental participation in the activities of Troop 73; that there will be closer contact and coordination between Troop, Council and District; and that there will be more direct involvement by the Troop's Sponsor.

In rendering this decision, and in applying common sense to the result, the Committee has taken into consideration the fact that in dealing with matters of this nature what may be construed as a jest or a lighthearted activity to one may, depending upon one's religious, moral or philosophical outlook, be construed as something entirely different by another individual. The Committee also recognizes that virtually no troop, when its activities are held up to the clear light of day and examined with a magnifying glass, would appear without blemish. Accordingly, to use the old adage, "justice must be tempered with mercy".

For all the reasons set forth herein the Committee unanimously presents its recommendation this 9th day of May, 1985.

Respectfully,

James E. Franklin, II

James Demaree

Patty Lees

CONF002051

DYKES_I_002029



SCOUTING/USA

# ATLANTIC AREA COUNCIL, INC.

### BOY SCOUTS OF AMERICA

*1410 Shore Road, Northfield, New Jersey 08225*
*Phone: (609) 645-8311*

December 21, 1984

Paul Ernst
National Director of Registration
Boy Scouts of America
1325 Walnut Hill Lane
Irving, Texas 75038-3096

*CALLED SE 1-9-85 NO REPLY NECESSARY*

Ref: George Diegelman, Jr. and William Chiappini

Dear Paul:

Enclosed is additional information concerning the registration suspension of above subjects.

Note the following points:

(1) Our Council President H. G. Broome, Jr., has shared the letter of complaint with their lawyer and he in turn with his clients and they have written denials (attached). The sharing of the letter of complaint was done without my knowledge and with numerous instructions never to do so. He is personal friends with their lawyer and may have felt he was helping.

(2) It was nearly two weeks before I became aware of their lawyers letter (by accident from a secretary). He may have been embarrassed to let me know he shared confidential information.

Would you please offer advice for my next step to take: the council president wants to convene the review panel; I have a suggestion to turn the file over to the county prosecuter for investigation. I am prepared to convene the review panel but feel they may already be compromised by the president's action.

Please advise as early as possible. Thanks for your help!

Sincere regards,

*Bill*

William M. Ridge
Scout Executive

dm
cc: R. Moore, Area Director
enclosures

*Member Agency: UNITED WAY OF ATLANTIC COUNTY*

PRESIDENT
Henry G. Broome, Jr.

COUNCIL COMMISSIONER
Richard J. Eichorst

SCOUT EXECUTIVE
William M. Ridge

VICE PRESIDENTS
Shannon L. Bybee, Jr.
Raymond Collins
Mary E. Haynie
Rosalind Howard
Howard J. Lynde, Jr.
Thomas E. Sweeny

TREASURER
Norman L. Hilton

ASSISTANT TREASURERS
David W. Aiken
William M. Dougall

EXECUTIVE BOARD
...rt H. Barney
Steven Batzer
Herbert N. D. Cohan
Waldo E. Caven
Samuel A. Curcio
Francis X. Dennehy
Clarence Doughty
John Durkan
James E. Franklin, II
Philip E. Geiger
George W. Goldsworthy
Thurston V. Gault
Joe Haase
John F. Haynie
Raymond J. Hollinger
Wayne Howell
Jerrold L. Jacobs
Coleman Kindle
James Lees
Frederick B. Mason
Martha L. Mason
C. Patrick McKoy
Virginia S. Peter
Donald M. Pileggi
Joseph Readeau
Augustine A. Repetto, Jr.
Anthony M. Rey
John C. Rowe
Alan Sless
William S. Weinberger

CONF002052

DYKES_I_002030

JAMES E. McGEARY
*Attorney at Law*
418 PHILADELPHIA AVENUE
EGG HARBOR CITY, NEW JERSEY 08215
(609) 965-8181



December 4, 1984


Henry G. Broome, Jr., Esq.
1701 New Road
Northfield, New Jersey 08225

                              RE:  William A. Chiappini and
                                   George Diegleman, Jr.
                                   Our File No. 386-84

Dear Bud:

        ▓▓▓▓▓▓▓▓▓ an opportunity to review the contents of
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ letter with my clients.

        Enclosed herewith is a copy of a handwritten reply pre-
pared by Mr. Chiappini and Mr. Diegleman, each setting forth
his version of the events in question.

        As you will notice, each individual categorically denies
all of the allegations made by ▓▓▓▓▓▓▓▓

        I would strongly urge the Atlantic Area Council to
thoroughly investigate this matter and to speak with all other
members of the local boy scout troop.  Such an investigation
will indicate that all other scouts have a version of the inci-
dent completely different from that of Mrs. ▓▓▓▓▓▓▓.    In
fact, such a thorough investigation would probably negate the
reason for any hearing in regard to this matter.

        However, on behalf of Mr. Chiappini and Mr. Diegleman, I
must respectfully request that the Atlantic Area Council form
a special board for the purpose of permitting my clients to
appeal their suspension.

        Please feel free to contact me if you wish to discuss this
matter further.

                              Sincerely,

                              James E. McGeary

JEM/jcd
Encl.

                                            DEC  5 1984

CONF002053

DYKES_I_002031

nov 28 1984

First of all I was Chippini am
not the Assistance Scout Master I am
the Scouting Coordinater.

_____ Joined the troops 10-24-83
which in longer there six month.
The 90th was to used for a week of
Summer Camping, not the 2) two Week trip
to New Orleans.

I spoke to _____ on July
5th, 1984, after received a phone call from
mr. Kiger Culler _____ and I tried
to explain to her why _____ was being sent
home. So told her that her son _____ kicked
another Scout in the grain, and also punched
him over the left eye. Which resulted in opening
up a cut which required first Oil which
Suture tape to close the cut.

When _____ arrived at camp
Edge it was near dinner time and the Scouts
were busy making dinner, there was no mass
Confusion as she states, She tried to get
the boys to tell her what happened so if
there was any Confusion she was the one
that was confused. I and my Scant Son Were
having our dinner when She arrived at the
Same time mrs. Debee the Ranger Wife come into
Camp and told me she received a phone call from
my son, also for me to call him that evening.

mr. Digleman spoke to _____
about 45 minutes to one hour tieging to make
her understand the problem we had with _____
I didn't participate in any "Shake + Bake"
as She claimed. I only saw it done one time and
that was at the lake, where her son _____

CONF002054

DYKES_I_002032

71

pulled a smaller trout out of the Water, and started the "Shak-a-Bake". Both I and Sue Diegleman yelled from our location to stop. No Shaving Cream Was used, neither Was the boy stripped. I never heard of "Shake a Bake" until that time when ▮▮▮ started it.

The morning Wasn't done by Sue or Sue Diegleman it Was done by ▮▮▮ in Camp also at the Water front.

I never made any Statement about Shaving ▮▮ with a straight razor in his Pubic area, the fact one of the Scouts made that Statement and Sue Diegleman told that Scout never to say that again. ▮▮▮▮▮▮▮ certainly did discuss this with other people in fact she called the Parents of other Scouts I believe as we got home from Camp Edge. ▮▮▮▮▮▮ also called another Woman (Mrs Margret Butter) who doesn't have any boys in the troop, she also is Sue Diegleman's Supervisor, so how Was this kept Private??

I never Was contacted by ▮▮▮ about resolving this matter up to this day 11-28-84. The only Contact I had With Mrs ▮▮▮▮▮▮ Was on June 29th by phone about taking her Son to Camp Edge, Which I did. She Stated that she didn't have a car Which I found out later Was a big lie, because her husband had (2) two pick up truck at the time. I also Spoke With Mrs. ▮▮▮▮▮▮ on July 5th, 1984 about ▮▮▮ and that is all.

CONF002055

DYKES_I_002033

$\overline{III}$

This letter from [redacted] to the Scouts. Was recieved 10-14-84 and it was Written and dated 10-10-84. The letter Was Written one (1) day after my letter of Suspension was Written by Mr Broomefr. It Wasn't Mailed to me untill 10-23-84 it was also Mailed. Delivery by hand. then erased.

Sincerly
Wm. A. Chippini

CONF002056

DYKES_I_002034

Plaintiff's Exhibit 151
Page 31 of 78

As shown by ▮▮▮▮▮▮▮▮▮▮ letter
she does not appear to even know who
the scoutmaster of the troop is. This
is due to the fact she has never
taken the time to come and meet
me nor did she participate in any
parent event. Bill Chappine is
not assistant scoutmaster he is the
scouting coordinator of the troop.
▮▮▮▮▮ joined the troop 10-24-83
and has been a constant behavior
problem since then.
On June 30, 1984 ▮▮▮▮ began a week
summer camp at Camp Edge with
troop 73. Each scout was to provide
their own transportation to and
from Camp Edge. This would give
the parents a chance to see
where their son would be staying
for the week and to answer
any question they may have had.
Mrs ▮▮▮▮ chose not to bring her
son to Camp Edge, but contacted
Bill Chappine, at his home,
to take ▮▮▮▮ to Camp Edge.
As far as ▮▮▮▮ being scheduled
to go to New Orleans with the
troop is not entirely true.
▮▮▮▮ was on probation while
at Camp. If his behavior

CONF002057

DYKES_I_002035



at Camp Edge was a problem, then he would not go to New Orleans. Both he and his mother were aware of this fact. There were also 3 other scouts on Probation that week. While ████ was at Camp Edge many problems did arise with him, one of which forced me to send him home. The problem that caused him to be sent home was that he went into the other Patrols campsite and willfully kicked another scout in the groin and punched him above his left eye causing a 2 cm laceration directly above the eye. (the same scout he was harrasing all week) I was not in camp at the time the incident occured. I was working on advancement with other scouts approx. 100 yards away and arrived in camp just when the fight was over, after being called by other scouts. Following this I questioned the witnesses and made the decision that ████ would go home. I had Mr Bill Cheappini take him down to the Ranger house to

CONF002058

DYKES_I_002036

make a collect call to his parents
to pick him up.
████████ arrived at camp at approx
5°° PM during the preparation of
dinner. She tried to distract scouts
away from their duties so she
could speak with them. I tried
to keep the patrols functioning to
finish their meals in spite of
████████ distracting them.
The statement of not being able
to get a satisfactory explanation
from me is a outright lie. I
spoke with her for 45 min to 1 hr
before she left the camp. She refused
to believe her son could do any wrong.
I explained to her exactly what
████████ had been doing all week and
about the fight he was in.
She realized he violated his
probation and she was concerned telling
me that taking the try away was
too harsh of a punishment.
In my troop we do not have
"initiation rites" as she so states nor
do we I condone such things. But
it is a major chore to keep the
older scouts from telling stories of
what is going to happen to the
younger scouts.

CONF002059

DYKES_I_002037



The adult leaders did not
participate in nor encourage others
to participate in any of the acts
mentioned. The shade and bake
was the idea of her some ▮▮▮ &
and I had never heard of it
before the time that the scouts
attempted it.

The shaving cream incident
happened at one of the campfire
programs. I had no prior
knowledge of what was to happen
nor did I participate in it.
The program is planned and
carried out by the scouts.
The shaving cream was being
used as part of a skit, but got
out of control. ▮▮▮ pulled down
the scouts pants and sprayed him
with shaving cream. To my
knowledge it never happened ▮▮▮.
I have never in my entire
life mooned anyone and the
week at Camp Elge is no exception.

The statement about the
straight razor was made by a
scout. I overheard the scout
telling ▮▮▮ and later told the
scout not to do it anymore

CONF002060

DYKES_I_002038



I have no knowledge of any good faith efforts made to resolve this matter in a private way. Neither Bill nor myself was ever contacted in any way to resolve this matter. The only people contacted were parents of other scouts who questioned their son to find out the truth in the stories she told them.

I have always shown my scouts the best example possible by living by the scout oath and law and requesting they do the same.

George Diegelman

CONF002061

DYKES_I_002039

November 26, 1984


Mr. William M. Ridge
Scout Executive
Atlantic Area Council, No. 331

PERSONAL AND CONFIDENTIAL

SUBJECT:  George Diegelman, Jr. and William Chiappini

Dear Bill:

Thank you for all the information which you sent us concerning George
Diegelman, Jr. and William Chiappini.  This material will be most helpful to us
as we set up files for both of these individuals who were registered in Troop 73,
of Egg Harbor, New Jersey.

I have referred all of the material to our attorney, David Park, so that he can
help me as we work together to set up a file which will enable us to refuse
registration.

He asked if other parents in the troop have been contacted related to this
situation.  We would like letters from other parents if any of them are
willing to give us this information.  This would certainly be helpful to us in
broading the base of the complaint and in strengthening our file.

At this time, our attorney does not feel that we should release the file to the
Scouters' lawyer.  We believe this is still confidential information and until a
court situation actually exists, we should hold our file in confidentiality.

If you have any other questions, please do not hesitate to write to me or contact
us on the WATS line.

Sincerely,

READY TO FILE
NOV 26 1984
ERIN O'RILEY


Paul I. Ernst, Director
Registration, Subscription &
Statistical Service

eko

cc:  Northeast Region
     Dave Park, SUM #8400

Called Sat Morning

1-1692

Glenn Gronlund

609-342-4515

609-645-8311

Call Atlantic Area

CC - 331

Bill Ridge SE -

in regard to

George Freedman & and William A. Chiappini.

Related Story Atlantic Area

Very urgent - could not reach me; on its way to Area Council.

Please call in the morning.

[illegible]

CONF002063

DYKES_I_002041



SCOUTING/USA

# ⬤TLANTIC AREA COU⬤CIL, INC.

BOY SCOUTS OF AMERICA

*1410 Shore Road, Northfield, New Jersey 08225*
*Phone: (609) 645-8311*

November 16, 1984

**PRESIDENT**
Henry G. Broome, Jr.

**COUNCIL COMMISSIONER**
Richard J. Eichorst

**SCOUT EXECUTIVE**
William M. Ridge

**VICE PRESIDENTS**
Shannon L. Bybee, Jr.
Raymond Collins
Mary E. Haynie
Rosalind Howard
Howard J. Lynde, Jr.
Thomas E. Sweeny

**TREASURER**
Norman L. Hilton

**ASSISTANT TREASURERS**
David W. Aiken
William M. Dougall

**⬤CUTIVE BOARD**
Robert H. Barney
Steven Barzer
Herbert N. D. Cahan
Waldo E. Caven
Samuel A. Curcio
Francis X. Dennehy
Clarence Doughty
John Durkan
James E. Franklin, II
Philip E. Geiger
George W. Goldsworthy
Thurston V. Gault
Joe Haase
John F. Haynie
Raymond J. Hollinger
Wayne Howell
Jerrold L. Jacobs
Coleman Kindle
James Lees
Frederick B. Mason
Martha L. Mason
C. Patrick McKoy
Virginia S. Peter
Donald M. Pileggi
Joseph Readeau
Augustine A. Repetto, Jr.
Anthony M. Rey
John C. Rowe
Alan Sless
William S. Weinberger

Paul Ernst
Director of Registration
Boy Scouts of America
1325 Walnut Hill Lane
Irving, Texas 75062-1296

Re:   George Diegelman, Jr.
      and William Chiappini.
      Troop 73, Egg Harbor, N.J.

Dear Paul:

Enclosed please find materials reference to above Scouters per instructions of Area Director Rolland Moore. Per our telephone conversation I am keeping you informed of recent developments and have enclosed all the data related to this situation, and, letter from Scouter's lawyer. Your continued advice is welcomed, and that of our National legal services.

Sincerely,

*Bill*

William M. Ridge
Scout Executive

*Member Agency: UNITED WAY OF ATLANTIC COUNTY*

CONF002064

DYKES_I_002042

SENDER: Complete items 1, 2, 3 and 4.
Put your address in the "RETURN TO" space on the
reverse side. Failure to do this will prevent this card from
being returned to you. The return receipt fee will provide
you the name of the person delivered to and the date of
delivery. For additional fees the following services are
available. Consult postmaster for fees and check box(es)
for service(s) requested.

1. ☐ Show to whom, date and address of delivery.

2. ☐ Restricted Delivery.

3. Article Addressed to:

George Diegelman, Jr.
Box 127, Route 3
Egg Harbor City, N.J. 08215

4. Type of Service:

☐ Registered      ☐ Insured
☐ Certified       ☐ COD
☐ Express Mail

Article Number

P411 282 991

Always obtain signature of addressee or agent and
DATE DELIVERED.

5. Signature – Addressee

X

6. Signature – Agent

X George Diegelman

7. Date of Delivery

24 Oct    OCT 24 1994

8. Addressee's Address (ONLY if requested and fee paid)

PS Form 3811, July 1983    DOMESTIC RETURN RECEIPT

CONF002065

DYKES_I_002043



George Diegelman, Jr.
Box 127, Route 3
Egg Harbor City, New Jersey 08215

Dear Mr. Diegelman:

After careful review, we have decided that your
registration with the Boy Scouts of America should be
suspended. We are therefore compelled to request that you
sever any relations that you may have with Boy Scouts of
America.

You should understand that BSA leadership regis-
tration is a privilege and is not automatically granted
to everyone who applies. We reserve the right to suspend
registration whenever there is a concern that an individual
may not measure up to the high standards of leadership
which BSA seeks to provide for American youth. Please also
understand that this decision and the reasons for it will
be maintained as confidential.

If you wish to have this decision reviewed, please
write to me, explaining your version of the facts support-
ing your claim that your registration as a BSA leader should
be granted or reinstated.

Sincerely yours,

Henry G. Broome, Jr.
Council  President

dm - 10/9/84

CONF002066

DYKES_I_002044

-3100

5-8311

5-8311

October 29, 1984

Mr. George Diegelman, Jr.
Box 127, Route 3
Egg Harbor City, New Jersey 08215

Dear George:

Upon receipt of your letter of suspension of registration
from the Boy Scouts of America, I would urge you to read the
"procedures for requesting a review" of that decision as outlined
below:

1. If registration is refused, the applicant may request
   a review of this decision. This request must be in
   the form of a written report from the individual,
   which includes his or her version of the facts support-
   ing the claim that registration should not have been
   denied.

2. Upon receipt of the request for review in proper form,
   the president of the local council shall appoint a
   committee to review the situation.

3. The appointed committee should review the facts as
   presented, and in addition may interview any persons
   whose testimony might assist the committee in dis-
   covering the truth and arriving at a correct decision.

4. A confidential report will be given to the applicant
   setting forth the decision of the committee.

5. The applicant may, if he does not agree with the
   decision, request a review from the regional office.

6. If the regional review does not satisfy the applicant,
   he may ask further review by the National council.
   The decision of the review by the National council is
   final.

Hoping to hear from you in the very near future.

Sincerely yours,

Henry G. Broome, Jr.
Council President

dm

cc: Scout Executive

CONF002067

DYKES_I_002045

6-20-84

CAMP WALTER EDGE
ATLANTIC AREA COUNCIL
BOY SCOUTS OF AMERICA
ALLOWAY, NEW JERSEY 08001

REQUEST FOR CAMP USE

Return top part to:

Atlantic Area Council
Boy Scouts of America
1410 Shore Road
Northfield, N.J. 08225

UNIT:  TROOP # _73_   PACK # _____   POST # _____   OR NON SCOUT ORGANIZATION

COMMUNITY _EGG HARBOR   NJ_        NAME _____

_____        ADDRESS _____

COUNCIL _ATLANTIC   AREA_        _____

                                  PHONE # _____

LEADER:  NAME _GEORGE DIEGELMAN_

         ADDRESS _BOX 127. RD#3_

         _EGG HARBOR N.J_

         PHONE # _965-3160_

DATES:  FROM _JUNE 30_      TO _JULY 7_____

FACILITIES REQUESTED:   [X] TENT SITE _HALLAN OR LIONS_
                        [ ]  BATZER CABIN
                        [ ]  ROTARY LEANTOS
                        [ ]  STILLWELL CABIN  [ ]  LEANTOS
                        [ ]  BOATS  [ ]  CANOES

NUMBER OF PERSONS: _13?_ BOYS·      _2_ ADULTS

FEES ENCLOSED:  _15_ PERSONS @ $ _7_          $ _105.00_

                _____ CABIN @ $ _____     $ _____

                _____ LEANTOS @ $ _2.00_    $ _____

                                   TOTAL:     $ _105.00 pd_

NOTE:  A $10.00 deposit for boat or canoe rental is paid to the ranger at camp.

       Would you be interested in doing a good turn project at camp? _YES_

SIGNATURE OF LEADER: _George Diegelman_____   DATE _May 16, 1984_

CONF002068

DYKES_I_002046

JAMES E. McGEARY

*Attorney at Law*

310 PHILADELPHIA AVENUE

EGG HARBOR CITY, NEW JERSEY 08215

(609) 965-0101

November 13, 1984

Henry G. Broome, Jr., Esq.
1701 New Road
Northfield, NJ 08225

RE:  George Diegelman, Jr. and
     William A. Chiappini v.
     Boy Scouts of America
     Our File No. 386-84

Dear Bud:

Several weeks ago, the Atlantic Area Council, Boy Scouts of
America, notified George Diegelman and William Chiappini of Egg
Harbor City, that they were being terminated from their positions
as scout leaders with the Egg Harbor City Troop.

Mr. Diegelman and Mr. Chiappini have spoken with me in re-
gard to their termination. Both have spent many years with the
local Boy Scout Troop and are quite disturbed by the circumstances
surrounding their termination.

It would appear that certain charges were filed with the
Atlantic Area Council by one ███████████████. The exact nature
of the complaint has never been made known to my clients. Further,
it appears that the charges made by ████████████ have been
accepted as true by the Boy Scouts and my clients have been ter-
minated without the benefit of being able to defend themselves.

On behalf of my clients, I am requesting the immediate re-
lease of all information concerning the allegations filed by ████
██████ or any other individual. I specifically request that
I receive a copy of a letter which I understand was written to the
Atlantic Area Council by ████████████ Also, I would like to
have information concerning any investigation made by the Boy Scouts
of America in regard to the charges filed against Mr. Diegelman and
Mr. Chiappini.

CONF002069

DYKES_I_002047

Henry G. Broome, Jr., Esq.
Page 2
November 13, 1984


    Bud, the American Legion is quite upset at the action taken
by the Atlantic Area Council in regard to this matter.  I have
been authorized to commence appropriate judicial action against
the Boy Scouts in the event that this matter cannot be amicably
resolved.

    Your cooperation in resolving this dispute will be greatly
appreciated.

                              Sincerely,


                              James E. McGeary


JEM/jcd

CONF002070

DYKES_I_002048



Boy Scouts of America
Atlantic Area Council
Shore Rd Northfield

Dear Mr. Ridge:    **CONFIDENTIAL**

My son is a member of Troop 73, Egg
Harbor City sponsored by the American Legion
Post I believe the Scout Master is George
Diegleman and the other assistance is William
Chiappini my son joined approximately
6 months ago. He has enjoyed it and
participate as much as he can. He sell
so many tickets to scout show that he
was awarded two sleeping bags and a credit
of $90.⁰⁰ to be used toward a scout trip
In July ____ went to Camp Edge with
the troop and adult leaders. He was
scheduled the next week to go with the
troop to New Orleans for the worlds Fair.
However, during his stay at Camp
Edge there developed a problem. and
called me on Thursday. He was upset,
crying and disoriented. I tried to get
him to put one of the adult leaders on
the phone but this was not done. He
told me to come get him from Camp
Edge, and that they would not come

CONF002071

DYKES_I_002049

(they refused) to the phone to explain.
So I had to call the Area Council, and
I did not have a car nor did
I know how to get to Camp Edge. I convinced
my girlfriend to take me which she
did. Upon my arrival at Camp Edge
there was much confusion an chaos. I
tried to discover what the problems
were as ████████ was upset and other boys
were rattling out different things. I
could not get a satifactory explaination
from George Diegleman. I therefore picked
up my son and came home.

My son then recounted to me a
series of advents that shocked me. He was
the subject, as were several other boys, of
"enitiation" rites.

My son has told me that the
adult leaders participated in and en-
couraged the other boys to join in.
One such act they called "Shake 'n Bake"
which involves stripping the boy, rolling
him in the sand, and placing shaving
creme in their private areas.

CONF002072

DYKES_I_002050

They also were repeatedly "mooned" by the adult leaders which involves lowering their trousers and underwear and posing their rear-ends at the boys. There was also the threat or jest that Bill Chiappini would use a straight razor to shave my son's pubic area.

There were other ~~boys~~ things done as well, which I find distastefull and objectionable but I am most concerned about the implication of the above conduct.

I have discuss this with my family and others, and while I believe certain good faith efforts were made to resolve this matter in a private way which would have been most exceptable to me and my family, such is not to be.

I'm writing this letter to formley complain about the conduct of George Iseghinex and William Chiappini and would request that you take the appropriate action so that other boys are not subjected to the kind of treatment and example

CONF002073

DYKES_I_002051

I would appreciate hearing from you, & I remain:

Very truly yours.

October 19, 1984



MAINLAND DISTRICT
DISTRICT EXECUTIVE
FRANCIS KIGER
10/18/84

DISTRICT CHAIRMAN
JOE HAASE

DISTRICT COMMISSIONER
GLENN GRONLUND

Bill,

 One and only one photostatic copy of these notes now exists.    If you have any questions or see any problems please let me know.

 The notes are as complete and correct as possible. Rough draft has been destroyed.

Fran

**CONFIDENTIAL**

CONF002075

DYKES_I_002053

Friday, July 6, 1984  2:00 p.m.

Telephone call from ████████████ Very distraught about treatment of her son at camp Edge. ███████████ called home from camp and requested to return home as soon as possible. ██████ is 14 years old and new to scouting ████████ related that ████ is a "good boy" and does not ~~tee~~ lie.

████████ further stated that ████ asked to leave because another boy, who she described as a "slow kid" had pulled a knife on her ~~son~~ son and tried to pick a fight. ████ then punched the boy in the nose. ███████ knows who the boy is. ████ also mentioned ███████████ as part of the problem.

Also mentioned was a problem related to a planned trip to Louisiana. ████ had fully paid $90.00 for the trip and had been told that he would not be able to go because there was not enough room in the vans for all the boys who intended to take the trip. Boys had been informed that the week at Camp Edge would be a try out for the trip to Louisiana. Any boy who did not behave would not be permitted to go.

Mr. Reichenbach was also mentioned in this conversation.

CONF002076

DYKES_I_002054

Friday, July 6, 1984   3:30 p.m.
    Telephone call to Camp Walter E. Edge - Contact:
Bill Chiappini.

    Upon questioning about the problem Bill C. related that
████ had picked a fight with Billy Bianchi ███████
had shown no advancement for the entire ~~month~~ week of
encampment and was not cooperative when asked to
call home.  Bill C. further stated that ████ was a
liar because he had given the wrong telephone number
when asked.

    Bill C. explained that the ██████████ were
generally non cooperative in troop activities.  Even though
████████ runs a landscaping business they were unwilling
to transport materials to camp. ██████ also requested
transportation for her son to and from camp.

    ██████ would leave camp on the evening of July 6, 1984.

Sunday July 8, 1984   10:00 a.m.

    Telephone call from ██████████████ to home telephone.
██████ very upset and demanding that something be
done about problem.  Upon her arrival at camp to pick
up ███ she found her son in tears.  When she spoke
to him he related the following:

    1. Initiations had taken place where boys were "stripped
nude" and shaving cream was put around their privates
and anal area."

CONF002077

DYKES_I_002055

Monday, July 9, 1984      3:04 p.m.

　　　Received call from ███████████ ████ explained
that ███ was asked if he had done any advancement on the
weeks encampment. He responded that he had "tried to
learn first aid and swimming skills." She then re-
interated that ███ does not lie. She reported that
she was told that a boy named Tommy Johns did
most of the instruction.

　　　She then continued explaining what took place on
Friday (6th) when she picked ███ up at Camp. George
Ridgelman told her that "he didn't know what was going
on." George also questioned boys who spoke to her at
camp. ██████████ said that George was not hostile during
her meeting and that when she asked questions he would
answer. When she asked why he didn't know what
was happening George responded that "he didn't get
too involved with the kids."

　　　Once again ████████ reinterated that she wanted to see
action. I recommended that she remove ███ from the
troop at once and transfer him to T76 Galloway Twp
American Legion Post #430. The name of T76 scoutmaster
and his telephone number were provided. I reemphasized
the importance of allowing the district to investigate the
problem and determine a course of action based upon
the facts provided.

CONF002078

DYKES_I_002056

2. Boys who were on the dock ("L Dock waterfront")
   joked with leaders about "raise the flag" while
   lying on their backs. (No definition was provided or
   requested).

3. A common threat was "You're gonna get shaved."

4. Mr. Chiappini threatened to "shave" and made remarks
   about "little weenie".

   ██████████ also reported misinformation about the Louisiana
   trip.

   ~~I then explained that~~

   At this point ██████████ stated that she had talked to some
   friends and they had recommended that ~~sa~~ she contact a
   lawyer ██████████ had given his agreement.

   I explained that the Boy Scout Council had ways of
   investigating allegations such as this and that I would
   act promptly on the matter. I further explained that the
   District Commissioner, Mr. Glenn Graslund, would conduct
   an interview with her at her own convenience.

CONF002079

DYKES_I_002057

Council Participants:

Henry G. Broome, Jr.,  Council President - 3 years.
  Attorney, Municipal Judge.  Northfield, N.J. (609) 645-3100

William M. Ridge.  Scout Executive - 2 years.
  Atlantic Area Council, 331.  Northfield, N.J. (609) 645-8311

Glenn Gronlund.  Mainland District Commissioner - 1 year.
  Attorney.  Atlantic City, N.J. (609) 348-4545

Francis J. Kiger, Mainland District Executive - 2 years.
  Atlantic Area Council, 331.  Northfield, N.J. (609) 645-8311

CONF002080

DYKES_I_002058

Sweetwater, N. J. 08037
Oct. 17, 1984

Dear Mr. Broom,

I am outraged that you could make a decision such as this!!!

My name is Gene Mac Farlane and I have been in Boy Scout Troop #73 for over a year now and am a First Class Scout working on Star. I have been on many trips with Mr. Diegelman in the past year, including this year's summer camp at Camp Edge. I can assure you that none of the homosexual acts George is accused of by ▮▮▮▮▮▮ and her son never happened and are all lies. If anyone was even coming close to performing homosexual acts, it was ▮▮▮▮▮▮▮▮▮ himself.

That letter written to you and the council is just a bunch of falsifications made up by ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ also, this letter should have been presented to George so he could have told you so.

I feel that you telling George to either resign or be suspended without having the rest of the council vote on this was extremely unfair. Atlantic Area Council is not supposed to be a dictatorship, but a democratically run council that should listen to both sides of the story.

CONF002081

DYKES_I_002059

The opinion of myself and many others is that it was wrong not to give a man that has devoted almost his entire life to scouting and Troop #73 the benefit of the doubt and listen to his side of the story.

There should be a full investigation into this matter and the scouts that were at Camp Edge should be asked what really happened. I cannot understand why you would take the word of one boy, who has been a discipline problem ever since he joined the troop, and not even ask the rest of the troop what actually happened out there!

In addition, I would like to know what kind of an example you are trying to set for the scouts of Atlantic Area Council by telling George that when he writes his letter of resignation, to put down that it was for personal reasons. This is a lie and you know it, Mr. Broom!

Are you so concerned about saving the face of council that you could care less about the lives of George and all the boys of Troop #73? Not to mention everyone else connected with the troop.

2

CONF002082

DYKES_I_002060

The scouts and their parents all feel that George is a very capable scoutmaster who knows what he's doing. He makes sure that when we receive an award, we've earned it and we really enjoy going on trips with him. My father is a ranger and he has told me about some troops that camp out in the woods where the scoutmasters sit around and get drunk and let the boys do whatever they want. This is why my parents and myself feel very lucky that I have a scoutmaster like George who really cares and is a responsible leader.

Tonight there will be a troop committee meeting with all the parents there and they will discuss this matter and come up with an organized method of fighting this decision you have unfairly made. I'm letting you know right now that George has the full support of the parents and scouts of this troop and we will fight! We will keep on fighting until we have won and George is our scoutmaster once again!

So, if you think you've swept us under the rug and forgot about us, you've got another thing coming. Remember, the truth is on our side, not on the side

3

CONF002083

DYKES_I_002061

Sincerely,

Gene Mac Farlane
asst. Senior Patrol Leader
Troop #73

P.S.
Don't forget that by getting rid of
George, you're ruining a lot of peoples
lives.

5

CONF002084

DYKES_I_002062

OCT 16 1984

Oct 16, 1984

To Whom It May Concern:

I have learned from my son, a member of Scout troop #13 in Egg Harbor City, that his troop leader, George Diegelman, has been forced to resign by your council.

I just want to say that I don't know where you & your members get your information, but George Diegelman is one of the finest, most honorable human beings I have ever known. He has dedicated over 12 years of his life to preparing young boys for manhood, and now you people, who call yourselves "leaders", have done this to him. You would believe the rantings of an irate, and none too stable woman, who's son doesn't know how to act or behave among his peers, and who was rightfully sent home from a troop camping trip because of his actions towards the other scouts. You would, and have jeopardized the character of a decent man, and left a scout troop of approximately 14 boys without a leader.

Many of these boys, for one reason or another, will not be able to join another scout troop because of the traveling distance and

CONF002085

DYKES_I_002063

financial burden it may cause their parents.
For all intents and purposes, these boys in scout
troop #73, can no longer be scouts.

This decision of yours, which I feel
is wrong and unjust, will have many far
reaching consequences for many of these boys,
one of which is mine.

In my opinion you have made a
terrible mistake, but I do not intend to take
any of this lying down. As far as I'm concerned
not one among you is fit to lead a pack
of dogs, much less the future men of our
country.

A letter from me will be in the
mail today to the National Boy Scout Council,
and I will continue on further until I get
some straight answers to my questions on this
matter.

This is only the beginning, and if you
think ▓▓▓▓▓▓▓▓▓▓ made alot of waves,
you ain't seen nothing yet.

Eileen Reickenbach
RD #1 Box 366   Hammonton, N.J. 08037

CONF002086

DYKES_I_002064

RECEIVED
OCT 2 2 1984

Boy Scout Council,

I am a parent of one of the boys, in troop 13. My son enjoys scouting very much. He goes on most trips, and is involved in most of the activities. I have seen him grow in a positive way, partly because of George's guidance and leadership. I feel that scouting is a very good program. I understand George has given 13 yrs. to scouting. To end this way is a disgrace. I would like to know, why he was asked to resign. I feel that he was done an injustice. The council should have contacted the parents. I tend to feel with the facts that I have that a vindetta by a particular parent has destroyed, a previous good service record. George is

CONF002087

DYKES_I_002065

willing to stay with the group.
Knowing that a lot is at stake,
for him personally and professionally.
I feel that the council should meet
with the other parents, and George and
Bill, to clear this mess up. At this
point I do not have any reason to
not trust either of this men, but
if you have evidence that this trust
is misguided I would be willing
to listen. At this point I see
no reason to make these men
leave this group.

Thank You,

Carol D Scaffidi
RR 3 PO Box 132
Egg Harbor, N.J
08215

CONF002088

DYKES_I_002066

Box 308   Seventh Avenue RD #1
Sweetwater, NJ   08037

November 5, 1984

Mr. George Diegelman
Box 111    RD #3
Egg Harbor  NJ  08215

Re:  Scout Master Suspension

Dear George:

I am writing to you as Chairman of the Troop Committee of
Boy Scout Troop #73.

On Friday, October 26, 1984, I telephoned Mr. Henry Broome,
President of the Atlantic Area Scout Council.  The purpose of
the call was to determine the Council's point of view of your
pending suspension.  Prior to calling Mr. Broome, I spoke to
Mr. Bill Ridge.  My request to Mr. Ridge concerned the possibil-
ity of the Troop Committee and concerned parents having a meeting
with members of the Council to solve the problem of your suspen-
sion.  Mr. Ridge referred me to Mr. Broome.  I invited Mr. Broome
and the Council to our meeting of the Troop Committee Wednesday,
November 07, 1984.  His reply was that he had Night Court on
Wednesday evenings and did not offer an alternate date for a
meeting.  During the course of our conversation he stated if you
could win, "fight it".  He claimed to have instructed you in
this matter in the presence of witnesses.  Is this true?  He also
stated you were informed of this suspension a month ago.  Is this
true?  And if not, when and under what circumstances were you
made aware of your suspension?  Mr. Broome stated he explained to
you "the whole thing" (pertaining to Mrs. ███████████ ' letter),
the Councils' procedures for your recourse of appeal and some-
thing to the effect he did not want to hurt you.  Did he in fact
explain the alleged charges made against you in Mrs. ██'s letter?
And did he fully explain to you your rights of appeal and the
proper procedures to follow for your appeal according to the
Council guidelines?  At anytime did any member of the Council
offer positive support in your behalf?

(continued)

CONF002089

DYKES_I_002067

-2-

I requested from Mr. Broome a copy of the official appeals procedures. However, he would not agree to give them to me because he did not want them to be made public.

Mr. Broome stated to me that you are not being charged with homosexual acts. Do you know exactly just what you are being charged with? And have you ever been given the opportunity to fully explain your position as to what occured at Camp Edge? Mr. Broome stated allegation after allegation has been levied against you. Were you told just how many alledged things occured at Camp Edge? In the course of my conversation I was only told of a "shake and bake" (which my son had already explained to me). I proceeded to inquire if the Council had questionedd any troop members or their parents about the alledged incidents at Camp Edge and he replied "only one parent". Are you aware of any such interviews?

Were you ever afforded the opportunity to read or have read to you the contents of ███████ letter, which she sent to the Council? Mr. Broome stated that you and Mr. Chiappini (Assistant Scout Master) know the contents of the letter but he does not know if you actually saw it. I also inquired of Mr. Broome (as you had indicated to me) if he had a pre-typed letter of your resignation for your signature when you arrived at the meeting with him and his witnesses. He replied that he offered to have a letter of resignation typed for you. Please explain to me just what were the circumstances involved with this action and who were the witnesses Mr. Broome claimed to be present? Was Mr. Chiappini with you during this conversation or were you both addressed separately?

What member or members of the Scout Council made the statement to the effect it would be allright to loose Troop 73 of Egg Harbor City to save the face of Scouting and what were their exact words?

Mr. Broome stated a review board would consist of three members, one of which is a lawyer. I feel you should have legal counsel before going to a Review Board, to protect your vested interest. Also two members of the Troop Committee should witness the proceedings. Mr. Broome stated to me that another member of the Troop Committee and myself can accompany you to read the letter Mrs. D sent to the Council, but you would first have to sign legal documents relieving the Council from possible violation of your rights. Please contact me to arrange a convenient time to visit Council for the reading of this letter.

CONF002090

DYKES_I_002068

-3-

     I would appreciate your taking the time to carefully consider your replies to the above questions. If you have access to any additional information pertinent to the subject of this correspondence, please do not hesitate to include this data with your explanation. Hopefully, as the the result of your responses to this letter, we will be able to resolve this on a County Council level without having to involve the Regional or National Councils.

                     Respectfully,

                     *Alan G. Mac Farlane*

                     (Mr.) Alan G. MacFarlane
                     Chairman of the Troop Committee
                     Boy Scout Troop #73

clj
cc: Mr. Henry Broome
    President
    Atlantic County Council

CONF002091

DYKES_I_002069

CONF002092

Box 308 Seventh Avenue   RD #1
Sweetwater   NJ   08037





CLAIM CHECK
NO.
243456

☐ HOLD



CERTIFIED

P 742 339 622

MAIL

☐ 1st NOTICE

☐ 2nd NOTICE

— RETURN

RETURN RECEIPT
REQUESTED

Detached from
PS Form 3849-A
Oct. 1980

Atlantic Area Council, Inc.
Attention: Mr. Henry Broome
1410 Shore Road
Northfield  New Jersey   08225

DYKES_I_002070

gy of events ref: Diegelman and Chiappini

╶┤   ¯roop 73 Campout at Council Camp Edge.

ut parent ▮▮▮▮▮▮▮▮▮▮ contacts DE Francis
er - distraught with treatment of son. DE
ephoned Chiappini at camp told that ▮▮▮▮▮▮▮▮
sed trouble - picked fight with other boy.  SE
ormed.

. ▮▮▮▮▮▮▮▮ contacted DE at home with allegations
stripping; shaving cream on private parts and
l area; shaving; and othe incidents.  She considered
awyer, but was advised the BSA had proceedures
 that District Commissioner Glen Gronlund (attorney)
ld meet with her and investigate matter.

. ▮▮▮▮▮▮▮▮ again contacted DE Fran Kiger
terating allegations and demanding action.  DE
ommended placing son in another Troop.

ted participants unavailable due to summertime
vity and vacations. ▮▮▮▮▮▮▮▮▮▮ had put
ning in writing - all was verbal.

29, 1984

ision of registration
e you to read the
t decision as outlined

pplicant may request
request must be in
 the individual,
 of the facts support-
hould not have been

aview in proper form,
l shall appoint a

view the facts as
terview any persons
committee in dis-
t e correct decision,

en to the applicant
committee,

agree with the
ne regional office.

ttisfy the applicant,
the National council.
National council is

our future.

yours,

roome, Jr.
esident



Summary of Meeting with ███████████████

████████████████ advises that her son █████ joined the troop in Egg Harbor City, Troop 73, in approximately November of 1983. Her best belief is that there are approximately twelve boys.

On a prior occasion, they have been camping at the lake, and also took a trip to Pennsylvania. Her son participated in these activities. She believes that the one fellow who is most usually involved in teaching her son and is also her son's best or better friend is a ███████████████ She estimates his age to be approximately 15.

She advises that during the Spring of 1984, her son was involved in selling tickets to the Scout Show, and was so successful that he earned several sleeping bags and other credits, including a $90 cash credit toward a trip of his choice. The troop had planned a trip to Louisiana to the Worlds Fair, camping and hiking down to Louisiana along the way. It appears that they were first going to have a one week stay at Camp Edge as a sort of a shake-down preparation.

She believes that a phone call came to her from her son on a Thursday while he was at Camp Edge in approximately July of 1984. Her son was crying and was quite upset, and was explaining that he was having difficulty and was being asked to come home. She asked to speak to Mr. Chippini and Mr. Diegelman, but was unable to get them to come to the phone.

She advised that she did not have transportation to get her son, as the car was in the shop, and so she made arrangements with her girlfriend to go up to Camp Edge. She also immediately placed a call to the Scout office, to determine what the problem was as to why she could not get an adult to talk to her about her son's problem. She described her son's condition as hysterical at the time.

Prior arrangements had been made for her son to go to camp with Mr. Chippini, and there seemed to be no problem with her son's involvement with the Troop. She does remember on one prior occasion going to pick her son up at the Scout Cabin in Egg Harbor City, and being informed that her son was on probation. When she approached the adult leaders, she was informed that all the boys were told this to make certain that they would toe the line in anticipation of the week at Camp Edge and the trip to New Orleans. She was advised that her son was not being singled out and had not done anything specifically wrong. With this assurance, she allowed her son to go to Camp Edge in anticipation of going to New Orleans.

When she arrived at Camp Edge, she was directed back to the camp site, and at that time only Mr. Diegelman was present. Apparently Mr. Chippini had been called to the phone. She found the boys somewhat confused and in disarray, and each telling her a different story of what occurred. She tried to find out why her son was upset and why he was coming home, but was unable to get a satisfactory explanation from Mr. Diegelman. There was some discussion of use of foul language, there was also some discussion of someone chasing someone with a frying pan and someone else chasing someone with a knife. In any event, she determined that she would take her son home, since the adults insisted that she do so.

1

CONF002094

DYKES_I_002072

On the way home, she tried to find out in greater detail what had occurred. She was advised that they had harrassed and initiated one ▋▋▋▋▋▋ and that on several occasions, her son had tried to come to ▋▋▋▋ aid. He described to her at that time an initiation rite called Shake and Bake, in which the boys were disrobed, rolled in the dirt, and subsequently, shaving cream was placed in their private parts.

After she returned home, she, in greater detail over the next several days, discussed the matter with her son. At that time, he advised that they had a ritual called the Ancient Ruby, which involved placing the hand near the rectum and pushing shaving cream up. Also, he was threatened by Mr. Chippini that a straight razor would be used to shave his private parts.

It was also indicated that there was considerable joking going on about how small privates were and how pretty bottoms looked. It was also indicated that each time the boys were in the shower, they had a hot dog on all the time.

▋▋▋▋▋▋▋▋▋ related that her son claims that Bill Chippini on a number of different occasions mooned the boys, and that further, he claims that Bill Chippini in applying the shaving cream had actually felt him. At this point, it was clear that her emphasis was on possible improprieties, and she was most concerned about possible legal action she might take. We discussed in detail the fact that the Boy Scouts of America do not own or operate any Boy Scout units, that they maintain a program, which is then developed and turned over to a troop through the sponsoring institution. It appeared from our discussions that she had decided not to bring a direct action against the Atlantic Area Council or the Boy Scouts of America. She was reserving the right to bring an action against Mr. Diegelman and Mr. Chippini.

She subsequently placed a phone call to George Diegelman, and in that conversation, she claims Mr. Diegelman admitted that those kinds of activities had in fact occurred, but that they were not with his consent. He claimed that Bill Chippini was responsible for same.

On the Friday night that the Troop returned from Camp Edge, or Saturday night, she is not certain which, her son placed a call to Mr. Diegelman to see if he would reconsider his decision not to let young ▋▋▋▋▋▋ go to New Orleans. Apparently there was discussion, and it was determined that they would not let him go.

She subsequently talked to ▋▋▋▋▋▋ who claims that she, ▋▋▋▋▋▋ talked to her son, and the stories were in fact true. She advises that there were a number of other mothers involved, including a ▋▋▋▋▋▋ a ▋▋▋▋▋▋ a Mrs. ▋▋▋ a Mrs. ▋▋▋ and a ▋▋▋.

At the conclusion of our meeting, she agreed to allow me several weeks to contact Bill Chippini and George Diegelman to get their versions, and then to come back to her.

Glenn R. Gronlund, Esquire

2

CONF002095

DYKES_I_002073

Summary of Meeting with George Diegelman and William Chippini

Joseph Haase and myself went to Egg Harbor City to discuss the above matter with Bill Chippini and George Diegelman. We arrived at the Scout log cabin following a Troop meeting and a Court of Honor which had already ended. I discussed in detail with Mr. Diegelman and Mr. Chippini the allegations that had been made against them concerning the weekend at Camp Edge. They denied that those events took place. They denied that there were aware of any of those events, and they further denied that young ▮▮▮▮▮▮ was trustworthy. They claimed, further, rather defensively, that the Council and the Scout office was not defending their interests, that from a prior conversation with Mr. Kiger, they thought the matter had been resolved.

We discussed with them the possibilities of a meeting between the parents and themselves in an effort to discuss this matter amicably. At first, they rejected any such idea. Subsequently, they advised that they would have a meeting with the parents of ▮▮▮▮▮▮ to go over what had occurred and to see if the matter could be resolved. We discussed the legal ramifications of same on both sides, and George Diegelman had indicated that he had already contacted a lawyer in anticipation of bringing a law suit against ▮▮▮▮▮▮▮▮ for libel and slander. It was indicated that the ramifications of the publicity that might surround this, and the severity of the problem. It was agreed to allow Mr. Chippini and Mr. Diegelman until the following Wednesday to decide how they wanted to proceed.

It should be further noted as well that Mr. Chippini had indicated that he would merely not re-up his registration in December, and that they would allow the unit to lapse. The discussion deteriorated from the issue at hand and went to such things as prior gold rushes, and the fact that the Council had not been supportive of Troop 73, the fact that there were certain individuals within Council who were putting pressure on them and various other complaints.

During the course of our discussion, there was an admission by Mr. Chippini that one young fellow had in fact been Shaked and Baked in front of the central showers, and did not complain.

My honest impression from this entire meeting was that there was more than just smoke concerning the allegations. The adults claimed, in essence, that they knew nothing and did not participate, and yet, the single statement by Mr. Chippini belied the truth of this assertion.

Glenn R. Grenlund, Esquire

1

CONF002096

DYKES_I_002074

On Wednesday, following the round table, I placed a phone call to George Diegelman at his home. At that time, he had indicated again that the Council was not supporting him, and that the Council could expect to receive some irate phone calls from a number of parents. It was further indicated that he would agree to a meeting with the parents, if they would agree to same, to discuss this matter in detail.


                              Glenn R. Gronlund, Esquire




                                  2

CONF002097

DYKES_I_002075

Following my discussions with Mr. Diegelman and Mr. Chippini at a Key Three meeting, it occurred to Mr. Haase and myself that there may be some misinformation concerning National's position, on whether or not National would enter the controversy. In their discussion with Mr. Kiger, it was requested that Mr. Rollie Moore be contacted, and that Mr. Ridge perhaps set up a meeting for all of this to discuss this. Upon my contacting Mr. Ridge, he advised that I should contact the Council Commissioner, Dick Eichorst. In speaking with Dick Eichort, he as well advised that the Council President should be informed. Following these dicussions, it appears that a meeting was held, and that the policy from National was disseminated, a letter was drafted, and it was agreed that the letter suspending the gentlemen would be sent as soon as we got a written complaint from ▓▓▓▓▓

An appointment was made to visit with ▓▓▓▓▓▓▓▓▓▓ at which time I explained to her the ramifications of the written complaint. We went over the version she had given me of the incidents which took place, she proceeded to draft a letter in my presence. While she was drafting the letter, I spoke with her son. Her son, in different chronological order, confirmed virtually every fact and detail which had been given by ▓▓▓▓▓▓▓▓ My honest impression following my discussion with him was that the young man was not making this up. In all candor, he is not the most astute and bright young man, and it would have been extremely difficult for him to be precisely correct on so many details, in my opinion, if he were making up the story.

Following her completion of that letter, I then hand carried the complaint to Council headquarters. A determination was made that the suspension letters would then go out.

I met in Bud Broome's office, at his request, and had placed phone calls to Mr. Diegelman and Mr. Chippini to meet us there. Apparently, Mr. Chippini was unable to attend because of a physical problem, and Mr. Broome spoke with him by phone, at which time we were advised Mr. Chippini would be sending a letter of resignation.

Mr. Diegelman met with Mr. Haase, Mr. Broome, and myself, and had explained to him the ramifications of the situation. Since there had been a formal written complaint, it was the responsibility of the Council President to suspend Mr. Diegelman and Mr. Chippini. Mr. Broome further explained that that suspension, pursuant to the procedures outlined by the Boy Scouts of America, could be appealed through the proper channels, which would be a request for a review.

Mr. Broome then explained the possible ramifications of a suspension letter going to the employer, since Mr. Diegelman wore dual hats, and was also the Explorer Post adviser for the First Aid Post at Kessler Hospital. Mr. Broome, in all candor, advised that the letter would be withheld in the event tht Mr. Diegelman determined it was in his best interests to resign. Upon leaving the meeting, Mr. Diegelman had told all persons present that he would draft a letter of resignation.

1

CONF002098

DYKES_I_002076

The next development was approximately three days later, when there had been no letter of resignation, I was then asked to personally call Mr. Diegelman and Mr. Chippini, both of whom advised they had changed their minds and would not be resigning. At that time, a call was placed to Mr. Broome and Mr. Ridge, so that the letter of suspension could be sent. I am advised that it was sent by certified mail, return receipt requested, and was received by the two gentlemen.


Glenn R. Gronlund, Esquire


2

CONF002099

DYKES_I_002077

Oct. 5        Advised by District Commissioner Glen Gronlund he
              had met with and had letter in hand from ███████
              ███████

Oct. 9        Council President met with Diegelman in his office;
              and telephoned Chiappini.  Both verbally agreed to
              resign and forward letter by end of week.

Oct. 11       Letter from ████████████████ received by Scout Executive.

Oct. 15       Troop 73 held "emotional" meeting with boys.

Oct. 17       Parents of Troop 73 met in support of leaders.

Oct. 19       Briefed Area Director, advised to send suspension
              letters immediately.  Contact with Paul Ernest to
              brief him - took info over phone and advised to
              keep him posted.

Oct. 19       SE advised Council President to send suspension
              letters immediately (no resignation letters received).

Oct. 23       Suspension letter mailed (certified) by Council
              President.

Oct. 17-23    SE received 5 phone call in support of leaders.
              Council President received calls also.  Letters
              received are attached.

CONF002100

DYKES_I_002078

COUNCIL # 331 ⬤           ⬤                                    LF//

CALLER  S.E.

UNIT #        DIST.#        EXP. DATE        TRANSMITTAL #        FILM #

_____

73

60 yRS SC WILLIAM CHIAPPINI
OLD

34 YR OLD
SINGLE SM GEORGE DIEGELMAN JR

_____

_____

_____

_____

PROBLEM (S)

REGISTRATION ____          VETERANS ____          EXPLORING ____

                SCOUTING ____          BOYS' LIFE ____

_____

_____

_____

_____

_____

NAME P Ernst

DATE 10-11-84

R/S-433
8/23/82-nah

CONF002101

DYKES_I_002079



## BOY SCOUTS OF AMERICA

COUNCIL

No. _331_    Date _4·15·88_

_(Maine)_

REFER TO YOUR TRANSMITTAL REPORT NO. _880203_

REGISTRATION, SUBSCRIPTION AND STATISTICAL SERVICE

☑ **CREDIT NOTICE**    ☐ **DEBIT NOTICE**

## REGISTRATION    Unit No. _S0073_    term _____ months

☐ Unit charter fee of $20.    Received $_____ required $_____

☐ ___1___ Leaders ( _____ prepaid) @ $_____ each. Received $_5 00_ required $_Ø_
                ( _____ transfer)

_____ Members ( _____ transfer) @ $_____ each. Received $_____ required $_____

☐ _____ Members _____ Leaders listed on transmittal form _____ on application

☐ Transfers must pay $.50 each.    Expiration given _____ We have _____

☐ Not on transmittal report    ☐ Duplicate entry    ☐ No application received.

☐ Correction made per your letter/telephone call _____

☐ No reply to our defective registraiton notice dated_____

☐ Returning _____ ☐ Under Age ☐ Over Age

## BOYS' LIFE    Term _____11_____ months

Paid for _1_ subscriptions; listed _____ subscriptions. Received $_6 05_ required $_Ø_

Incorrect fees: _____ subscriptions.    ☐ Back issues are not available.

☐ Please check attached copy. Pay debit—Use credit or return with copy of the roster showing corrections needed.

_George Diogelman)_

Please add or subtract the amount(s) indicated on your next transmittal in the proper column(s) and return the original.

| | | Explorer | $_____ |
|---|---|---|---|
| | L 331-S0073·005845 | Career Awareness Explorer | $_____ |
| **BILLING** | T | Leader | $_____ |
| | C | _Boys' Life_ | $_____ |
| | B | Total | $_____ |
| | V | | |
| | U | Explorer | $_____ |
| | Ti | Career Awareness Explorer | $_____ |
| **CREDITING** | C _Deleted from file 4-15-88 Cm_ | Leader | $_5 00_ |
| | B | _Boys' Life_ | $_6 05_ |
| | Va | Total | $_11 05_ |

CONF002102

DYKES_I_002080

TROOP
ADULT    R   EGG HARBOR CITY   NJ   ATLANTIC,MAINLAND                                    1    331    2    0073    73 12/31/
RUDOLPH ELMER POST 158 AMERICAN LEGION,527 PHILADELPHIA AVE,EGG HARBOR CITY NJ,08215                      336 MONTH
NAME AND ADDRESS OF CHARTERED ORGANIZATION    052                                                        UNIT TENURE
DAVID CAVILEER        RD 2                                           EGG HARBOR CITY    NJ 08215          COMPLET
EXECUTIVE OFFICER'S NAME, TITLE AND ADDRESS              TEL.#            SCOUTMASTER TRAINED

| NAME | ADDRESS | CITY | STATE | ZIP CODE | TEL.# BUS OR HOME | BIRTH DATE | BOYS LIFE | STATUS | POS. | SEX |
|------|---------|------|-------|----------|------------------|-----------|-----------|--------|------|-----|
| WILLIAM A CHIAPPINI | 411 CHICAGO AVE | EGG HARBOR CITY | NJ | 08215 | H 9652867 | 0222 | | R | SC | |
| PETE BUTLER | 2035 LIVERPOOL AVE | EGG HARBOR CITY | NJ | 08215 | H 9653143 | 0815 | | R | CC | |
| WILLIAM A CHIAPPINI | 411 CHICAGO AVE | EGG HARBOR CITY | NJ | 08215 | H 9652867 | 0222 | | M | MC | M |
| DONALD F ROBINSON | 1052 WHITE PIKE | HAMMONTON | NJ | 08037 | H 5618046 | | | R | MC | ● |
| GEORGE DIEGELMAN JR | BOX 127 RT 3 | EGG HARBOR CITY | NJ | 08215 | H 9653160 | 0254 | X | R | SM | |

CONF002103

DYKES_I_002081