UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | |
| | : | CHAPTER 11 |
| BOY SCOUTS OF AMERICA AND | : | |
| DELAWARE BSA, LLC | : | Case No.: 20-10343 (LSS) |
| | : | |
| | : | Jointly Administered |
| Debtors | : | |
| | : | Re: D.I. 2293 and 2294 |

**<u>OBJECTION TO THE ADEQUACY OF DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION</u>**

**<u>PRELIMINARY STATEMENT</u>**

The Knights of Columbus, 1 Columbus Plaza, New Haven, CT 06510; Knights of Columbus, Council #462 ("Council #462"); Knights of Columbus, Saratoga Council #246 a/k/a Saratoga Knights of Columbus ("Council #246"); and Knights of Columbus, Father Baker Council #2243 ("Father Baker Council")[1], as well as any and all other Knights of Columbus councils, and or entities (collectively the "Knights of Columbus entities"), by and through undersigned counsel, hereby object to the sufficiency and adequacy of the Debtor's April 13, 2021 *Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (Dkt. No. 2592) (the "Plan"), and *Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "Disclosure Statement") (Dkt. No. 2594).

The Knights of Columbus has been recognized by the Boy Scouts of America ("BSA") as a "National Chartered Organization" for many years. The Knights of Columbus and its local councils served as chartered organizations to the BSA since 1923 through 2015. Up until 2015,

---

[1] In relation to (but not limited to) the Father Baker Council's involvement in the two suits listed below.

1

approximately 1,300 local and international councils entered into Charter Agreements with the BSA to provide support to local BSA councils. In the Charter Agreements, the BSA and its local council agreed to provide general liability insurance to cover the Knights of Columbus entities, the Knights of Columbus board, officers, COR, employees, and Scouting members and volunteers for authorized Scouting activities, and to indemnify the Knights of Columbus entities in accordance with the resolutions and policies of the National Executive Board of the Boy Scouts of America.

To date, the Knights of Columbus entities are aware of four pending lawsuits that arise out of alleged sexual abuse claims against the BSA and require the BSA to defend and indemnify the Knights of Columbus entities. The pending claims, as currently known, are as follows: *Janczyk vs. Greater Niagara Frontier Council, Inc., Boy Scouts of America et al.,* (New York State Supreme Court, Erie County, Index No. 806672/2020), *Kaminski v. Boy Scouts of America et al.*, (New York Supreme Court, Erie County, Index No. 814562/2020), *Doe v. Twin Rivers Council, Inc. Boy Scouts of America et al.,* (New York State Supreme Court, Albany County, Index No. 905026-20), and *Paul Tallerico v. Boy Scouts of America et al.*, (New York State Supreme Court, Westchester County, Index No. 57298/2020). The Knights of Columbus entities and its other related entities and councils require defense and indemnification from the Debtors for the above lawsuits, as well as any subsequent lawsuits filed against them.

Accordingly, the Knights of Columbus entities hold multiple "indirect abuse claims" (as defined in the Disclosure Statement) against BSA and Delaware BSA, LLC (collectively, "Debtors"). The Knights of Columbus and its local councils seek and are entitled to defense and indemnification for all current and future claims and lawsuits brought against the Knights of

Columbus and its local councils, which arise out of alleged sexual abuse claims against the Debtors.

## OBJECTION

The Knights of Columbus entities object to the sufficiency and adequacy of the Disclosure Statement for the following reasons:

1. **The Global Resolution Plan Could Unfairly Impact Holders of Indirect Abuse Claims**

The Knights of Columbus entities, as Chartered Organizations who have worked in conjunction with the BSA for many years, hold multiple Indirect Abuse Claims against the BSA and its Local Councils. The BSA and its local councils have contractually agreed to defend and indemnify the Knights of Columbus entities against such Abuse Claims, and further agreed to provide general liability insurance to cover the Knights of Columbus entities.

Under the Global Resolution Plan, the Insurance Assignment "channels" both Insurance Coverage[2] and "all other rights or obligations under or with respect to the Insurance Policies (but not the policies themselves)" into the Settlement Trust. The Plan would then also put in place the Insurance Entity Injunction, which will forever restrain the holder of an Indirect Abuse Claim from enforcing their status as an additional insured on any of the Insurance Policies[3], and from recovering any indemnity or defense costs. Further, after contributing to the Settlement Trust, an insurance company would become a Settling Insurance Company, and entitled to the status of a Protected Party under the Plan.

---

[2] "Insurance Coverage" "means all of the rights, benefits or insurance coverage under any Insurance Policy related to Abuse Claims, whether known or unknown to the Debtors or the Local Councils, that is not the subject of an Insurance Settlement Agreement, including the right to payment or reimbursement of liability, <u>indemnity, or defense costs arising from or related to Abuse Claims</u> or Settlement Trust Expenses." (emphasis added).

[3] If the Plan is confirmed as a Global Resolution plan, "Insurance Policies" means "collectively, the BSA Insurance Polices and the Local Council Insurance Policies."

The Insurance Assignment would force the Knights of Columbus to defend any remaining lawsuit on its own, without the benefit of its bargained for defense coverage. Also, without the benefit of its bargained for indemnity coverage, to the extent that there is a judgment against Knights of Columbus, the Knights of Columbus would be forced to pay any judgment and submit a claim to the Settlement Trust for some measure of recovery. The Settlement Trust would then only pay the Indirect Abuse Claim as set forth in the Trust Distribution Procedures. The Trust Distribution Procedures limit recovery, however, in that "No Indirect Abuse Claim may be liquidated and paid in an amount that exceeds what the holder of the Indirect Abuse Claim paid the holder of the Direct Abuse Claim, and <u>in no event will an Indirect Abuse Claim exceed the amounts set forth for the covered Direct Abuse Claim in the Claims Matrix and points system</u>."

The impact of the Insurance Assignment upon holders of indirect Abuse Claims, such as the Knights of Columbus entities, is inequitable. The Knights of Columbus entities would be deprived of their bargained for insurance coverage and left with no recourse as against either the BSA or the Settling Insurance Companies. Thus, holders of Indirect Abuse Claims, such as the Knights of Columbus entities, would be forced to defend themselves in any lawsuits remaining after the confirmation of the plan, and to pay out any judgment that is rendered against them without the benefit of its bargained for coverage from BSA. Moreover, in the likely event that a judgment exceeds the values set forth in the Claims Matrix Points system (which was designed to distribute a limited amount of funds among many victims, instead of the victims maximizing the value of their claims in open court), the Knights of Columbus entities would be left without any recourse as to the excess amount of the judgment.

## 2. The Plan does not Provide Adequate Information Regarding Contributing Chartered Organizations

The Global Resolution Plan provides the opportunity for a Charted Organization[4], such as the Knights of Columbus entities, to become a Contributing Chartered Organization, channeling any Abuse Claim against the Contributing Chartered Organization into the Settlement Trust, and providing the Contributing Chartered Organization with the status of a Protected Party. However, the details of how to become a Contributing Chartered Organization, and the amount of the Contributing Chartered Organization Settlement Contribution both remain "to be supplemented" at this time.

As the Plan currently exists, Charted Organization such as the Knights of Columbus entities have no information regarding the procedure to become a Contributing Chartered Organization, the amount of contribution that is anticipated in order to become a Contributing Chartered Organization, or whether any procedure exists to negotiate the level of contribution based on the factual circumstances surrounding each Chartered Organization's potential liability. Indeed, the Plan itself states that "the Debtors are affirmatively seeking to reach further mediated settlements of disputed issues related to the structure of the Plan, the nature, timing and amount of contributions from the Debtors, Local Councils, Contributing Chartered Organizations and Settling Insurance Companies, and other matters, which may result in the amendment or modification of the Plan," evidencing that these issues remain undecided at this time. Without the above information, the Knights of Columbus entities are unable to assess their ability to become a Contributing Chartered Organization, or to perform a cost/benefit analysis of the benefits and/or

---

[4] The Plan defines "Chartered Organizations" as "each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units."

risks of contributing to the Plan or not. Likewise, without this information, the Knights of Columbus entities are unable to intelligently assess whether they should vote to accept or reject the Global Resolution plan at all.

## **CONCLUSION**

Based on the foregoing, approval of the Disclosure Statement should be denied.

**BERGER HARRIS LLP**

*/s/ David J. Baldwin*
David J. Baldwin (DE No. 1010)
1105 North Market Street, 11th Fl.
Wilmington, DE 19801
Telephone: (302) 655-1140
Facsimile: (302) 655-1131
dbaldwin@bergerharris.com

Dated: May 6, 2021

*Attorneys for Knights of Columbus Entities*