# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 2592 & 2594** |

### OBJECTION OF THE UNITED METHODIST AD HOC COMMITTEE TO THE DISCLOSURE STATEMENT FOR THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

The United Methodist Ad Hoc Committee (the "Ad Hoc Committee") and its constituent churches, by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2594] (the "Disclosure Statement") filed by Boy Scouts of America ("BSA") and Delaware BSA, LLC ("DBSA") (together, the "Debtors"). In support of this Objection, the Ad Hoc Committee respectfully represents as follows:

## BACKGROUND

1.  On February 18, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). The Debtors continue to manage and operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

2. On the Petition Date, the Debtors filed the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [D.I. 16].  Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the First Day Declaration.

3. On April 14, 2021, the Debtors filed the Disclosure Statement [D.I. 2594] and the *Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "Plan")[2] [D.I. 2592].

4. The Plan provides for two potential paths of reorganization for the Debtors.  If the first plan (the "Global Resolution Plan") is rejected, the Debtors will pursue a back-up plan (the "BSA Toggle Plan").

## OBJECTION

5. The Court should not approve the Disclosure Statement because it does not contain adequate information as required by section 1125 of the Bankruptcy Code.  Specifically, for Chartered Organizations such as the member churches of the Ad Hoc Committee, the Disclosure Statement fails to provide information on: (i) the full terms to become a Contributing Chartered Organization including, most importantly the financial contribution that is expected; (ii) policy year by policy year information on the BSA Insurance Policies setting out the total amount of coverage purchased for each year, the amount of coverage remaining and the magnitude of claims asserted in each policy year, and (iii) the legal justifications for the implied subordination of Indirect Abuse Claims to Direct Abuse Claims.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

    **A.**    **The Disclosure Statement Lacks Information to Assess the Merits of Becoming a Contributing Chartered Organization under the Global Resolution Plan.**

6.    The Global Resolution Plan proposes a mechanism by which Chartered Organizations can make "substantial" contributions to the Settlement Trust thereby becoming Contributing Chartered Organizations under the Plan. *See* Plan § I.A.65, p. 12; Disclosure Statement § II.A., pp. 7-8. In exchange for their contributions, the Global Resolution Plan purports to protect the Contributing Chartered Organizations from claims relating to sexual abuse that occurred prior to the Petition Date ("Abuse Claims") by including them in a channeling injunction.

7.    However, the Disclosure Statement offers no details as to the contributions a Chartered Organization must make in order to become a Contributing Chartered Organization, nor does it provide any specific terms regarding the protection the Contributing Chartered Organization's will receive in exchange for their contribution. Rather, the Disclosure Statement presents the mechanism using only broad concepts and vague generalities.

8.    The Disclosure Statement's lack of specificity regarding the mechanics of becoming a Contributing Chartered Organization and the protection that comes with doing so makes it impossible for Chartered Organizations, such as the member churches of the Ad Hoc Committee, to properly evaluate the merits of becoming a Contributing Chartered Organization.

    **B.**    **The Disclosure Statement Does Not Provide Chartered Organizations With Adequate Information to Assess the Impairment of Their Rights as Additional Insureds Under the BSA Insurance Policies.**

9.    BSA, in the charter agreements with Chartered Organizations committed to indemnify Chartered Organizations from claims of abuse and to make Chartered Organizations additional insured under the BSA Insurance Policies, a fundamental promise in the Chartered Organization relationship.

10. While it is certain that either Plan will impair the rights of additional insureds without making any effort to protect the property interests Chartered Organizations have in the BSA Insurance Policies, the Disclosure Statement must offer some information to evaluate the magnitude of such impairment.

11. As the Court knows, insurance is procured on a yearly basis and here, was purchased as occurrence policies. Available insurance for a particular Abuse Claim will vary based on the amount of coverage BSA purchased in a particular year, the extent to which coverage for a particular year has been eroded or exhausted and the amount of Abuse Claims now being asserted in that year.

12. A Chartered Organization that faces only one or two asserted claims in years where there are few asserted claims and significant amounts of available insurance is in a materially different position than a Chartered Organization that faces dozens of claims in years in which there are hundreds of other Abuse Claims and exhausted or significantly eroded insurance coverage. Chartered Organizations have a right to this information, at a high level, so that they can decide whether they want or need to object to the impairment of their rights as additional insureds.

13. The extent to which the additional insureds' rights are impaired, however, remains unclear because the Debtors have not provided information enough to fully evaluate the magnitude of impairment under the existing insurance policies. Without providing some level of information on each policy year, the Debtors cannot satisfy the adequate information requirement under Bankruptcy Code section 1125(b).

### C. The Disclosure Statement Fails to Explain Its Disparate Treatment of Indirect Abuse Claims.

14. The Plan distinguishes Indirect Abuse Claims, those for contribution, indemnity, reimbursement, or subrogation, from Direct Abuse Claims. Under both the Global Resolution

Plan and the BSA Toggle Plan, Indirect Abuse Claims and Direct Abuse Claims are both categories of general unsecured claims which are being channeled to the Settlement Trust.

15. Direct Abuse Claims are projected to receive significant recoveries from the Settlement Trust. Indirect Abuse Claims, despite being the same priority under the Bankruptcy Code, will receive nothing. *See* Disclosure Statement § II.C.8., p. 24. Thus, inherent in the Plan is some concept, statute or doctrine on which BSA is relying on to subordinate or disallow Indirect Abuse Claims.

16. However, Chartered Organizations are left to guess as to the bases BSA is relying on for such subordination or disallowance. BSA has made no attempt to support the treatment of Indirect Abuse Claims with legal theory or precedent.

17. Such failure renders the Disclosure Statement woefully inadequate under Bankruptcy Code section 1125(b). Without an understanding of the Debtors' justification for eliminating recovery of Indirect Abuse Claims, the Ad Hoc Committee cannot properly evaluate the Plan or object accordingly, if needed.

## **CONCLUSION**

WHEREFORE, the Ad Hoc Committee respectfully requests that the Court: (i) require the Debtors to amend the Disclosure Statement to address the informational deficiencies highlighted in this Objection and to provide sufficient time for creditors to review the newly revised disclosure statement prior to the hearing to approve the same, so as to address the issues and concerns raised in this Objection; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: May 6, 2021　　　　　　　　　　Respectfully submitted,
Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (Bar No. 4057)
D. Ryan Slaugh (Bar No. 6325)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
　　　　rslaugh@potteranderson.com

- and -

**BRADLEY ARANT BOULT CUMMINGS LLP**
Edwin G. Rice, Esq.
100 N. Tampa Street
Suite 2200
Tampa, FL 33602
Telephone: (813) 559-5500
Facsimile:  (813) 229-5946
Primary email:　　　erice@bradley.com
Secondary emails:　　ddecker@bradley.com,
　　　　　　　　　　ebrusa@bradley.com