**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 2592 and 2594** |

**OBJECTION TO THE ADEQUACY OF DISCLOSURE STATEMENT FOR DEBTORS' SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND JOINDER TO THE OBJECTION OF TORT CLAIMANTS COMMITTEE**

On April 13, 2021, Debtors filed a Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC (Dkt. No. 2592) ("the Plan"), and on April 14, 2021, Debtors filed a Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("the Disclosure Statement") (Dkt. No. 2594). Pursuant to 11 U.S.C. § 1125 and Fed. R. Bankr. P. 3017, the nearly 1,800 claimants represented by Zuckerman Spaeder LLP, individually or jointly with Rothweiler, Winkler, Eisenberg & Jeck, P.C., AVA Law Group, Inc., and Kosnoff Law PLLC (collectively, the "Zuckerman Claimants")[1] hereby object to the adequacy of the Disclosure Statement and join the objection of the Tort Claimants Committee ("TCC"). In support of their objection and joinder, the Zuckerman Claimants state as follows:

**Preliminary Statement**

Each of the Zuckerman Claimants is a survivor of childhood sexual abuse who filed a Sexual Abuse Survivor Proof of Claim ("POC"). These POCs, individually and collectively,

---

[1] *See* attached Appendix A, which lists the Sexual Abuse Survivor Proof of Claim numbers for the Zuckerman Claimants.

{10.000-W0064759.}　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　7729743.1

document the horrific, life-altering sexual abuse that has been rampant in Scouting for decades. The Zuckerman Claimants suffered sexual abuse of every type—some seemingly depraved beyond the range of human imagination. Each Claimant's abuse experience is unique in its circumstances, nature, and extent, and in how the abuse affected him (or her); collectively, the POCs of Zuckerman Claimants—a subset of the over 84,000 sexual abuse claimants—lay bare the damage inflicted by the widespread sexual abuse in Scouting. The Scouting-related sexual abuse suffered by the Zuckerman Claimants as children has altered their lives—among other things, it has caused social dysfunction and isolation; upset normal development of sexual identity, intimacy, and behaviors; disrupted and stunted educational achievement; led to drug and alcohol abuse; and skewed their perception of healthy social relationships. Often decades after it ended, the abuse remains a daily presence in the lives of so many Zuckerman Claimants, in ways substantial (marriages, sexual activity, substance abuse) and mundane (going to a public bathroom, smelling a certain scent).

In addition, this BSA bankruptcy proceeding itself has been excruciating for many Zuckerman Claimants. To prepare their POCs, they have had to focus on, speak out loud, and see in writing the most private, hurtful experiences of their lives. Before now, many have never talked at all, let alone in detail, about their abuse, hiding it from parents, friends, partners, spouses, children, and grandchildren. They have come forward and ripped off abuse-related scabs because they want to hold BSA and others to account, to bear witness to what they endured, to pursue a measure of justice, and to obtain fair compensation.

In response to the extraordinary human toll caused by child sexual abuse that happened on its watch, BSA offered words: it pronounced itself "devastated by the number of lives impacted" and "moved by the bravery of those who have come forward." Upon learning that 84,000 men who

suffered Scouting-related sexual abuse came forward to file POCs, BSA said, "We are heartbroken that we cannot undo their pain." To be sure, money cannot adequately compensate the Zuckerman Claimants for the sexual abuse they endured in Scouting and the lasting injuries it caused. But the Plan and Disclosure Statement reveal that BSA has not made even a serious attempt to try. Given a chance to ***demonstrate*** that it cares about survivors, BSA filed a wholly inadequate Disclosure Statement for a Plan that confirms that its foremost interest is self-preservation.

To make an informed judgment about whether to vote to approve a plan, the Zuckerman Claimants need and deserve concrete information about the assets of all parties who may seek a broad release through the BSA proceedings; the size of the contributions those parties will make; and how those contributions will be used. Because the Disclosure Statement does none of those things sufficiently or adequately, the Zuckerman Claimants object.

A.  **The Disclosure Statement Fails To Provide Adequate Information about the Assets of the Parties That the Plan Proposes To Release from Liability for Sexual Abuse Claims.**

1.  A chapter 11 debtor may only solicit votes to accept or reject a chapter 11 plan of reorganization once the court has approved the debtor's written disclosure statement for that plan as containing "adequate information."  11 U.S.C. § 1125(b).

2.  The Bankruptcy Code defines "adequate information" as:

    > Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

3. The Third Circuit has emphasized the importance of adequate disclosure, stating that given the reliance creditors and bankruptcy courts place on disclosure statements, "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information." In re Oneida Motor Freight, Inc., 848 F.2d 414, 417 (3d Cir. 1988).

4. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. In re Duratech Indus., 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), aff'd, 241 B.R. 283 (E.D.N.Y. 1999). As set forth below, Debtors' Disclosure Statement falls woefully short of this standard.

5. The Plan proposes a release of Debtors, all local councils, and "Contributing Chartered Organizations" for any liability related to child sexual abuse. Dkt. No. 2592 at 89. Yet the Disclosure Statement fails to provide the sexual abuse survivors, including the Zuckerman Claimants, with adequate information about the assets and holdings of these parties to enable them to evaluate whether their proposed contributions justifies the broad protections described.

6. **<u>Debtors</u>**. The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that the Debtors seek to retain. The same is true of the Debtors' other assets, including investments. It is imperative that the Disclosure Statement provide the liquidation value or fair market value for each such property.

7. **<u>Local Councils</u>**. The Disclosure Statement states that Debtors are "committed to ensur[e]" that local councils collectively contribute at least $425 million to the proposed

Settlement Trust. Dkt. No. 2594 at 14. But the Disclosure Statement does not provide the Zuckerman Claimants with any way to understand how that amount compares to the local councils' assets. Many non-Debtor entities may have significant assets and their own insurance separate and apart from any insurance maintained by the Debtors.

8.  Based on each local council's publicly available IRS Form 990 statements, local councils, individually and collectively, have significant assets, including significant unrestricted assets. Moreover, IRS Form 990 statements likely substantially undervalue a local council's assets where the local council accounted for its real property using "book value" (e.g., the value it was worth at the time it was acquired) and not its current fair market value. Many of the local councils have existed for a long time or are the successors to older local councils, and possess long-held property and other assets that have appreciated in value.

9.  Moreover, the Disclosure Statement does not include in its liquidation analysis the assets of the local councils. Under the Debtors' governance documents, a local council's property reverts to the Debtors if BSA decides not to renew the local council's charter, which BSA has the discretion to do. In a Chapter 7 liquidation of the Debtors, the Chapter 7 trustee presumably would not renew the local council charters, to bring those local council assets into the liquidating estate. The liquidation analysis must therefore include the liquidation value of all local council real and personal property.

10. In addition, the Disclosure Statement and the Plan do not contain a detailed description of the value of each local council's assets so that creditors, including the Zuckerman Claimants, can determine if each local council is making a substantial contribution that warrants a release and channeling injunction. As to any assets that Debtors contend are not available to

creditors because of limitations such as donor restrictions, Debtors must explain their conclusion.

11. **Chartered Organizations**. The Disclosure Statement and Plan do not provide any property or asset valuation information of any chartered organization that will be released, including any justification by a chartered organization for asserting that an asset is unavailable to pay creditors (such as by an alleged donor restriction), how many childhood sexual abuse claims implicate each chartered organization, and how much each chartered organization is contributing in exchange for a release of such childhood sexual abuse claims. Like the local councils, many of the chartered organizations, such as the Methodist Church, Mormon Church, and Catholic Church, have significant real property and other assets.

12. To the extent that sexual abuse actions have not been filed against a local council or chartered organization, Debtors should also disclose whether they have indemnification or contribution claims against each local council or chartered organization.

### B.    The Disclosure Statement Fails to Disclose the Specific Entities to Be Released

13. Nothing under the Plan provides a mechanism by which a Claimant can confirm that the Claimant has identified the correct local council(s) and/or chartered organization(s) before a release is given to those entities.

### C.    The Disclosure Statement Fails to Disclose Insurance Coverage Risks

14. The proposed Plan contemplates that Debtors would assign certain insurance policies to the compensation trust to be made available to pay abuse claims. Indeed, after filing the Disclosure Statement, Debtors revealed a proposed settlement with Hartford Accident and Indemnity Company and related entities (collectively, "Hartford"). *See* Ex. A to Dkt. 2624.

Under the settlement, Hartford could pay up to $650,000,000 to the BSA Settlement Trust. *Id.* Because of the timing of the settlement announcement, the Disclosure Statement does not contain any discussion about the settlement, including how other potential future settlements with other insurers could significantly reduce Hartford's payment, or how any amount that Hartford would end up contributing would be used. Nor does the Disclosure Statement disclose how much coverage is available under each of the Hartford policies. Such information is critically important for the Zuckerman Claimants to assess the actual value of the Hartford settlement and how it might impact their claims.

15. Moreover, the Disclosure Statement states that the payment of abuse claims from the Settlement Trust will be "subject to the right of any Non-Settling Insurance Company to raise any valid Insurance Coverage Defense." D.E. 2594 at 92. The Disclosure Statement fails to discuss those defenses or provide any assessment of the risks that such defenses could effectively erase billions of dollars of child sexual abuse claims. The Disclosure Statement similarly fails to discuss any risk associated with the proposed assignment of all of insurance policies to a trust, including any risk associated with the anti-assignment clauses in such policies. The Disclosure Statement basically assumes that the insurance policies have actual value for the abuse survivors, but provides inadequate (if any) basis for that assumption. It fails to explain why the Zuckerman Claimants should agree to a Plan that effectively drops the insurance policies in the laps of abuse survivors, and forces the abuse survivors to slog it out with the insurance companies.

### D. The Disclosure Statement Fails To Disclose How Much Non-Debtors (Local Councils and Chartered Organizations) or the Insurers of the Debtor and Non-Debtors Will Contribute.

16. The Zuckerman Claimants further object to the adequacy of the Disclosure Statement because it fails to explain what contribution each of the non-debtor parties—local councils, chartered organizations, and the insurers of BSA, local councils, and chartered organizations—will make in exchange for a release.

17. The local councils and chartered organizations face substantial liability. In addition to BSA, a local council was responsible for all Scouting units in its geographic region, including handling and processing complaints against Scout leaders for allegedly sexually abusing children and ensuring that each Scouting unit abided by policies and procedures to protect children from foreseeable harm. Local councils neglected to protect the children in their care from foreseeable harm. Zuckerman Claimants have already initiated suits with strong legal claims against local councils in Hawaii, Montana, Arizona, South Carolina, and New York. Hundreds of additional Zuckerman Claimants will file suit against many more local councils this year alone.

18. The chartered organization was responsible for staffing and supervising the adult volunteers of a Scouting unit, like a Boy Scout Troop or Cub Scout Pack, and also neglected to protect the child members of a Scouting unit from foreseeable harm. The leaders of the chartered organization, including the Scout leaders whom the chartered organization appointed to oversee its Scouting unit(s), neglected to take steps to protect the children from sexual abuse, in many instances after receiving complaints or other indications that another Scout leader was sexually abusing children in the Scouting unit.

19. As noted above, the local councils and chartered organizations, individually and collectively, have substantial assets that are available to compensate abuse survivors, including the Zuckerman Claimants. For the Zuckerman Claimants to assess if the contribution by non-debtors entities, individually and in the aggregate, are "substantial" enough to justify the proposed release and channeling injunction, Debtors must disclose, for each local council, and each chartered organization, at least: (i) how many childhood sexual abuse claims they think implicate each local council or chartered organization, (ii) the estimated value of such claims, and (iii) how much each local council will contribute above and beyond their rights under insurance policies. The Disclosure Statement fails to provide any of this critically important information.

### E. The Disclosure Statement Fails To Adequately Explain How Contributions by Debtors, Non-Debtors, and Their Insurers Will Be Utilized.

20. The Disclosure Statement fails to adequately explain how (i) any contributions by non-debtor entities, including local councils and chartered organizations, or (ii) applicable insurance policies of Debtors and non-debtors will be utilized, including whether those amounts will be used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim against that entity.

21. The Zuckerman Claimants are entitled to know whether they will be required to release all of their claims against all insureds in order to effectuate a buy back of a given policy, and if so, how the proceeds of any such buy back will be utilized.

### F. The Scope of this Bankruptcy Necessitates Transparency Regarding the Handling of Insurance Policies

22. The Disclosure Statement provides the Zuckerman Claimants no meaningful information about the potential value of the insurance policies that could be assigned to a compensation trust. Indeed, after administrative expenses and litigation of the insurance

coverage defenses expressly preserved by the Plan, awards calculated under the described trust distribution procedures could be significantly reduced.

23. While not a perfect comparison, it is notable that professional fees paid by BSA have averaged about $212,000 *per day* since BSA filed for bankruptcy protection in February 2020 (see D.E. 2743 at 5 (listing $83.176 million in professional fees through March 31, 2021)). If BSA proposes to pay the Zuckerman Claimants a relative pittance for their life-altering Scouting-related abuse, at minimum the Court must require Debtor to explain that transparently.

24. In sum, the Disclosure Statement does not provide the information necessary for the Zuckerman Claimants to make an informed evaluation of the value and risks of the Plan for purposes of deciding how to vote. The Disclosure Statement falls far short of the Bankruptcy Code's standard for approval.

### G. Joinder to the Objection to the Disclosure Statement by the Tort Claimants' Committee

25. As noted above, the Zuckerman Claimants join the objection to the Disclosure Statement filed by the Tort Claimants' Committee.

| | |
|---|---|
| Dated: May 6, 2021 | Respectfully submitted, |

ZUCKERMAN SPAEDER LLP
Carl S. Kravitz, Esq.
Andrew N. Goldfarb, Esq,
Nicholas M. DiCarlo, Esq.
1800 M Street, NW, Suite 1800
Washington, DC 20036
Ph: 202-778-1800
Fax: 202-822-8106
ckravitz@zuckerman.com
agoldfarb@zuckerman.com
ndicarlo@zuckerman.com

*Counsel to the Zuckerman Claimants*

-and-

LANDIS RATH & COBB LLP

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
P.O. Box 2087
Wilmington, DE 19899
Ph: 302-467-4410
Fax: 302-467-4450
landis@lrclaw.com
mcguire@lrclaw.com

*Counsel to Zuckerman Spaeder LLP*