# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Objection Deadline: May 10, 2021 at 4:00 p.m. (ET) (per agreement by the Debtors)** **Hearing Date: May 19, 2021 at 10:00 a.m. (ET)** |

## ZURICH INSURERS' OBJECTIONS TO THE DISCLOSURE STATEMENT FOR DEBTORS' SECOND AMENDED PLAN

American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, the "Zurich Insurers") hereby object to the proposed disclosure statement for Debtors' Second Amended Plan (the "Disclosure Statement," Dkt. No. 2594).

### *Summary of argument*

The Court should decline to approve the Disclosure Statement because it fails to provide "adequate information" as required by § 1125(b) of the Bankruptcy Code. The Disclosure Statement fails to notify Abuse Claimants and other parties in interest that much of the excess insurance coverage purchased by BSA – particularly policies purchased in 1986 and thereafter – is subject to self-insured retentions ("SIRs") of at least $1 million, that either must be satisfied before coverage can be accessed under those policies or, possibly, withheld from any payments otherwise owed by excess insurers to Abuse Claimants. Absent fulsome disclosure of

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

the SIRs and how they will affect claimant recoveries, the Disclosure Statement cannot be approved.

*Objection to the Disclosure Statement*

A.    *Legal background*

Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information," which the Code defines as "information of a kind, and in sufficient detail . . . that would enable a hypothetical investor of the relevant class to make an informed judgment about the plan."[2]  The provision of adequate information in a disclosure statement is a key requirement of the Bankruptcy Code.[3]

The purpose of a disclosure statement "is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan."[4]  Therefore, "a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."[5]  A debtor's obligation to file a disclosure statement containing "candid disclosure" is a "pivotal" and "critical step" in a Chapter 11 reorganization:

> The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.  Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code

---

[2]    11 U.S.C. § 1125(a).

[3]    *See, e.g., Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996), citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988).

[4]    *Duff v. United States Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir. B.A.P. 1996).  *See also In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) (same).

[5]    *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

standard of "adequate information."[6]

The disclosure statement is meant to function as the means by which creditors are provided with "all pertinent information bearing on the success or failure of the proposals in the plan of reorganization," and "should likewise contain all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization."[7]

Plan proponents bear the burden of establishing that their disclosure statement contains adequate information.[8]

### B.    The Disclosure Statement fails to provide adequate information about how SIRs in excess policies affect Abuse Claimants

Approval of the Disclosure Statement should be denied because it fails to provide Abuse Claimants and insurers, including the Zurich Insurers, with adequate information about how the SIRs in Debtors' excess liability insurance policies will be treated under the Plan.

Much of Debtors' excess insurance – particularly their policies purchased in 1986 and thereafter – sits above SIRs.  For example, all of the Zurich Insurers' policies sit above SIRs of $1 million per occurrence.  Outside of bankruptcy, SIRs function as conditions precedent to coverage; an insured such as BSA or a Local Council must satisfy, or pay, the full amount of applicable SIRs as a condition to accessing coverage sitting above the SIRs.  If an insured fails to satisfy SIRs, it cannot obtain coverage under the policies that are above the SIRs.

In bankruptcy, where a debtor is (or claims to be) unable to pay SIRs, courts use

---

[6]    *In re Oneida Motor Freight, Inc.*, 848 F.2d at 417.

[7]    *In re Budd Co.*, 550 B.R. 407, 412 (Bankr. N.D. Ill. 2016), quoting *In re Cardinal Congregate I*, 121 B.R. 760, 765-66 (Bankr. S.D. Ohio 1990).

[8]    *Official Comm. Of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 720 (Bankr. E.D. Cal. 1992).

different approaches to applying SIRs.  One common approach is to allow debtors or claimants

to access coverage without first satisfying SIRs, but, in such instances, the excess insurer is

obligated only to pay amounts in excess of the SIR.  For example, where a claimant obtains a

judgment of $1.5 million and the policy has an SIR of $1 million, the excess insurer would only

be required to pay $500,000 – the amount in excess of the SIR – and the claimant either

recovers nothing for the first $1 million or, in some cases, can assert a claim against the estate

for the uninsured first $1 million.[9]  Under another approach, the debtor's failure to satisfy the

SIR is a complete bar to coverage.[10]

        The existence of SIRs in Debtors' coverage is barely acknowledged in the Plan

and the Disclosure Statement.  For example, in the Disclosure Statement's discussion of BSA's

insurance program (pp. 40-42), no mention is made that BSA's insurance program is subject to

SIRs.  Yet, under the two approaches discussed above, excess coverage would either be severely

limited or completely unavailable to pay Abuse Claims allowed in large amounts if Debtors, or

the Settlement Trust, fail to pay the applicable SIRs.  An Abuse Claimant who is deciding

whether to vote in favor of, or against, the Plan would undoubtedly want to know whether

excess insurance coverage would or might be available to pay his claim, if allowed.  An Abuse

Claimant would also want to know whether his recovery will be reduced by the amount of

applicable SIRs.  To the extent the Settlement Trust intends to use its funds to pay SIRs, Abuse

Claimants surely would want to know the projected amount of trust funds that would be

---

[9]        *See, e.g.*, *Rosciti v. Ins. Co. of the State of Pa.*, 659 F.3d 92, 97 (1st Cir. 2011); *In re Vandeveer Estates Holding, LLC*, 328 B.R. 18, 21 (Bankr. E.D.N.Y. 2005); *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 107 B.R. 856, 872 (E.D. Pa. 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990) (table).

[10]       *See, e.g.*, *Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, 2005 WL 3487723 (W.D. Tex. Nov. 3, 2005).

expended to satisfy SIRs.  The Disclosure Statement, however, is completely silent on these issues.

It may be that Debtors do not agree with the legal contentions set forth above, and instead would contend – contrary to existing case law – that the excess insurers would have to "drop down" to pay amounts within the SIRs.  The hearing on whether to approve the Disclosure Statement is not the proper forum for deciding such disputes.  But § 1125(a) requires, at a minimum, that Debtors describe (i) the existence of the SIRs in BSA's insurance program, (ii) the contentions that the Zurich Insurers or other insurers might assert regarding the SIRs, and (iii) why Debtors believe such contentions by insurers are, or might be, mistaken.  And the list of "risk factors" set forth in Article X of the Disclosure Statement (beginning on p. 178) must be modified to add a discussion of the risk that the excess insurers will successfully assert that their payment obligations are limited or eliminated by the SIRs, which would affect the potential insurance recoveries of Abuse Claimants.

Beyond the need to disclose the existence of SIRs in Debtors' insurance coverage and the risks that application of such SIRs poses to claimant recoveries, the Disclosure Statement is also affirmatively misleading in describing the Settlement Trust's responsibility with respect to SIRs.  The Disclosure Statement's sole mention of SIRs is as follows:

> The Settlement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred on or after the Effective Date arising from, relating to, or associated with any legal action or other proceeding which is the subject of Article IV.P of the Plan and shall pay Indirect Abuse Claims, in accordance with the Trust Distribution Procedures, that may arise from deductibles, *self-insured retentions*, retrospective premium adjustments, or other charges.[11]

---

[11]    Disclosure Statement at 141 (emphasis added).

In other words, the Disclosure Statement suggests that excess insurers will have to pay SIR amounts and then assert Indirect Abuse Claims against the Settlement Trust to recover their SIR payments.  But this provision of the Disclosure Statement is contrary to law.  We have found no case that requires an insurer whose policy sits above an SIR to pay that SIR, then assert a claim in the debtor's bankruptcy case to recover the paid SIR amount.  In fact, the court in *Amatex* held precisely to the contrary.  There, the debtor requested a declaratory judgment that the insurer had to pay the debtor's SIR and then file a claim for it.  The district court rejected the debtor's request, stating:  "We also hold that Stonewall is entitled to withhold the 'self-insured retention' sum of $25,000 recited in the policy, rather than being obliged, as the Debtor urged, to pay over this amount and then file a claim for it."[12]  Because the Disclosure Statement asserts a flatly incorrect legal proposition, it is misleading, does not provide adequate information, and should not be approved.

### *Joinders and Reservation of Rights*

The Zurich Insurers reserve the right to join in, and adopt as their own, any objections to the disclosure statement or the proposed confirmation schedule filed by any other person or entity.  In particular, but without limitation, the Zurich Insurers reserve the right to join in objections filed by other insurers to the extent the arguments set forth in those objections are applicable to the Zurich Insurers.

In addition, the Zurich Insurers reserve all of their objections to confirmation of the Second Amended Plan, any subsequently filed plan, and any revised disclosure statement.

---

[12]    *Amatex*, 107 B.R. at 859 ("Stonewall is entitled to withhold the 'self-insured retention' sum of $25,000 recited in the policy").

*Conclusion*

The Disclosure Statement is incomplete in fundamental respects and affirmatively confusing and misleading in other respects.  The Zurich Insurers therefore urge the Court to decline to approve the Disclosure Statement.

DATED:  May 10, 2021                                   Respectfully submitted,


                                                       */s/ Robert D. Cecil, Jr.*
                                                       Robert D. Cecil, Jr. (No. 5317)
                                                       TYBOUT, REDFEARN & PELL
                                                       750 Shipyard Drive, Suite 400
                                                       Wilmington, Delaware  19899-2092
                                                       Phone:  (302) 658-6901
                                                       E-mail:

                                                       Mark D. Plevin  (admitted *pro hac vice*)
                                                       CROWELL & MORING LLP
                                                       Three Embarcadero Center, 26th Floor
                                                       San Francisco, California  94111
                                                       Phone:  (415) 986-2800
                                                       E-mail:  mplevin@crowell.com

                                                       Tacie H. Yoon  (admitted *pro hac vice*)
                                                       CROWELL & MORING LLP
                                                       1001 Pennsylvania Ave., N.W.
                                                       Washington, D.C.  20004
                                                       Phone:  (202) 624-2500
                                                       Email:  tyoon@crowell.com

                                                       Attorneys for American Zurich Insurance
                                                       Company, American Guarantee and Liability
                                                       Insurance Company, and Steadfast Insurance
                                                       Company


906093346