# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | Re: D.I. 2594, 3478, 3523 |
| | Objection Deadline: May 10, 2021 at 4:00 p.m. (ET) (per agreement of the Debtors) |
| | Hearing Date: May 19, 2021 at 10:00 a.m. (ET) |

## THE ALLIANZ INSURERS' (I) OBJECTION TO THE DEBTORS' DISCLOSURE STATEMENT FOR THEIR SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND (II) LIMITED JOINDER TO CERTAIN OBJECTIONS

Allianz Global Risks US Insurance Company, National Surety Corporation, and Interstate Fire & Casualty Company (together, collectively, the "Allianz Insurers"), by and through undersigned counsel, hereby file this *(I) Objection to the Debtors' Disclosure Statement for Their Second Amended Chapter 11 Plan of Reorganization and (II) Limited Joinder to Certain Objections* (the "Objection").[2] In support hereof, the Allianz Insurers respectfully represent the following:

**OBJECTION**

1.  Pursuant to Section 1125 of the Bankruptcy Code, "a written disclosure statement [must be] approved . . . by the court as containing adequate information" prior to its distribution. 11 U.S.C. § 1125(b). "[A]dequate information" is defined as "information of a kind, and in

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Disclosure Statement (defined below).

115805332

sufficient detail, as far as is reasonably practicable . . . that would enable . . . a hypothetical [voter] to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1).

2.  The fundamental purpose of this requirement – and of disclosure statements more generally – is to ensure that creditors have "the information they need to decide whether to accept the plan." *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985). *Accord, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) ("[A] party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing 'adequate information' to 'enable a creditor to make "an informed judgment" about the Plan.'").

3.  To that end, courts have repeatedly underscored "[t]he importance of full disclosure" when assessing whether a disclosure statement contains adequate information. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988). *See also Krystal Cadillac-Oldsmobile,* 337 F.3d at 321. ("[W]e cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'"). This is particularly true with respect to material, known risks that may affect the debtor's reorganization or ability to satisfy claims. *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) ("[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

4.  Here, the *Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2594] (the "Disclosure Statement") does not contain information sufficient to enable a reasonable person to make "an informed judgment about the [P]lan." 11 U.S.C. § 1125(b). The Disclosure Statement fails to

divulge at least three material risks that may jeopardize the Debtors' ability to reorganize and/or satisfy Abuse Claims.

5. *First*, the Debtors have not adequately disclosed the material risks related to potential Insurance Coverage Defenses. Indeed, the Disclosure Statement does not divulge the possibility that the Debtors' pre- and post-petition conduct, including, but not limited to, the following may give rise to valid Insurance Coverage Defenses: (i) the acts alleged in the Abuse Claims were not accidental and/or were expected or intended by the policyholder; (ii) the Debtors' inclusion in the Disclosure Statement of the estimated amount of Abuse Claims; (iii) the proposed "Expedited Distribution" mechanism under the Global Resolution Plan, whereby holders of Abuse Claims can elect to receive a $1,500.00 distribution without submission to, or analysis by, the Settlement Trust; or (iv) the establishment of Trust Distribution Procedures and a Claims Matrix which, collectively, purport to vest the Settlement Trustee with discretion to make distributions to holders of facially invalid Abuse Claims, such as Abuse Claims that were tardily filed and/or invalid under applicable statutes of limitation or similar laws. *See generally* Disclosure Statement, Art. V.N. at 60-63 ("Valuation of Abuse Claims"); *id*. Art. VII.B.1.a. at 143 ("Expedited Distribution"); *id*. Art. VII.B.2.b. at 145-46 ("Invalid Claims"). Nor does the Disclosure Statement advise stakeholders that these (or any other) Insurance Coverage Defenses detailed at length in the pre-petition Insurance Coverage Actions may significantly impair potential recoveries, opting instead to state the Debtors' unsupported "belie[f]" that the Insurance Coverage Defenses "are without merit." *Id*. Art. III.G. at 43.

6. *Second*, the Disclosure Statement lacks sufficient information with respect to the Cooperation Agreement – the form of which has not been filed or disclosed. The Disclosure Statement merely states that the "Cooperation Agreement shall provide for certain documents . . .

115805332

to be shared with the Settlement Trust," *id*. Art. VII.A.18 at 140, without explaining any of the material terms of the Cooperation Agreement. As a result, creditors and other stakeholders cannot gauge, among other things, whether or to what extent the Cooperation Agreement will affect non-debtors or the consequences of a breach of the Cooperation Agreement.

7. *Third*, the Disclosure Statement fails to divulge that the Plan is not insurance neutral and/or the attendant consequences of a nonneutral Plan. The Disclosure Statement does not explain that the Plan may be unconfirmable (as drafted) because it either (i) purports to impair the contractual rights of certain of the Debtors' insurers or (ii) contains impermissibly vague neutrality provisions. Specifically, the Disclosure Statement fails to reconcile the Plan's purported insurance neutrality provisions, such as the provision providing that any estimation of Abuse Claims is non-binding, with another cross-referenced provision that purports to apply principles of *res judicata* or collateral estoppel to any issues actually litigated by an Insurance Company "in conjunction with or related to Confirmation." *Compare* Disclosure Statement, Art. VII.A.24 *and* Plan, Art. X.M.2 *with* Disclosure Statement, Art. VII.A.24 *and* Plan, Art. X.M.4.

8. Any one of these three issues – coverage defenses, insight into the Cooperation Agreement, and lack of insurance neutrality – poses a real and present risk to, among other things, stakeholders' recoveries. As such, the Debtors must reveal and explain all three topics, in sufficient depth and detail to ensure that their stakeholders understand the associated risks, to meet the "adequate information" requirement of Section 1125. *Cf., e.g.*, *Ferretti*, 128 B.R. at 19 ("[A] proper disclosure statement must clearly and succinctly inform . . . creditor[s] . . . [of any] contingencies . . . to . . . distribution[s]."). Further, the Disclosure Statement should be amended to clarify the meaning of "in conjunction with or related to Confirmation" and whether the Plan purports to alter an Insurance Company's rights and defenses under its insurance policies. *Cf. In*

re Blitz U.S.A., Inc. et al., Case No. 11-13603 (PJW) (Bankr. D. Del., Dec. 19, 2013); *Disclosure Statement for Debtors' and Official Committee of Unsecured Creditors' First Amended Joint Plan of Liquidation* [D.I. 2008], Art. VI. § 6.7 at 40-46 (providing insurers with insurance neutrality under that plan). A copy of the insurance neutrality provisions from *Blitz* are attached hereto as <u>Exhibit A</u>. The Debtors' failure to meaningfully discuss these issues thus renders the Disclosure Statement inadequate under Section 1125, and it should not be approved.

### LIMITED JOINDER

9. The Allianz Insurers hereby join in Section B. of the *Zurich Insurers' Objections to The Disclosure Statement for Debtors' Second Amended Plan* [D.I. 3478] (discussing the Debtors' failure to divulge that their self-insured retention obligations may materially limit coverage access); and Sections I.-V.A. of *The AIG Companies' Objection to Motion for Approval of Debtors' Disclosure Statement* [D.I. 3523]. For the reasons set forth therein, the Disclosure Statement is deficient and should not be approved.

### RESERVATION OF RIGHTS

10. The Allianz Insurers reserve all of their rights to object to confirmation of the Debtors' Plan or any subsequently filed plan. To the extent the Allianz Insurers are affected in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan, which may be filed after any Disclosure Statement or Plan confirmation objection deadline, the Allianz Insurers reserve all rights to object thereto. Moreover, the Allianz Insurers reserve the right to join in any argument or objection made by other parties related to the adequacy of the Disclosure Statement and the confirmability of the Plan.

### CONCLUSION

WHEREFORE, the Allianz Insurers respectfully request that the Court enter an order: (a) sustaining this Objection and the reservation of rights contained herein; (b) denying approval of

115805332

the Disclosure Statement; and (c) granting to the Allianz Insurers such other and further relief as is just and proper.

Dated:    May 10, 2021
           Wilmington, Delaware

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Marcy J. McLaughlin Smith*
    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza
    1313 Market Street
    Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   302.777.6500
    Facsimile:   302.421.8390

-and-

    Harris B. Winsberg (admitted *pro hac vice*)
    Matthew G. Roberts (admitted *pro hac vice*)
    Bank of America Plaza
    600 Peachtree Street NE
    Suite 3000
    Atlanta, GA  30308-2216
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

-and-

    NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP
    Matthew S. Sorem (admitted *pro hac vice*)
    10 S. Wacker Dr.
    21st Floor
    Chicago, IL 60606
    Telephone:   312.585.1433
    Facsimile:   312.585.1401

-and-

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Marcy J. McLaughlin Smith*
    David M. Fournier (DE No. 2812)
    Marcy J. McLaughlin Smith (DE No. 6184)
    Hercules Plaza
    1313 Market Street
    Suite 5100
    P.O. Box 1709
    Wilmington, DE 19899-1709
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

-and-

    Harris B. Winsberg (admitted *pro hac vice*)
    Matthew G. Roberts (admitted *pro hac vice*)
    Bank of America Plaza
    600 Peachtree Street NE
    Suite 3000
    Atlanta, GA  30308-2216
    Telephone:   404.885.3000
    Facsimile:   404.885.3900

-and-

    BRADLEY RILEY JACOBS PC
    Todd C. Jacobs (admitted *pro hac vice*)
    John E. Bucheit (admitted *pro hac vice*)
    500 West Madison Street
    Suite 1000
    Chicago, IL 60661
    Telephone:   312.281.0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*

115805332

- 7 -

McDermott Will & Emery LLP
Margaret H. Warner (admitted *pro hac vice*)
Ryan S. Smethurst (admitted *pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:  202.756.8228
Facsimile:   202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

115805332