# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: May 10, 2021**<br>**(per agreement by the Debtors)**<br>**Hearing Date: May 19, 2021 at 10:00 a.m. (ET)**<br><br>Re: Docket No. 2594 |

## OBJECTION OF LIBERTY MUTUAL INSURANCE COMPANY TO THE DISCLOSURE STATEMENT FOR THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

Liberty Mutual Insurance Company, together with its affiliates and subsidiaries (collectively, "Liberty"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Disclosure Statement for the Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America* [Docket No. 2594] (the "Disclosure Statement").[2] In support of its Objection, Liberty respectfully states as follows:

## BACKGROUND

1. On February 18, 2020 (the "Petition Date"), the Debtors commenced with the Court these chapter 11 cases. Prior to the Petition Date, Liberty issued certain insurance policies (as renewed, amended, modified, endorsed, or supplemented from time to time, collectively, the "Policies") to certain of the Debtors as named insureds covering the periods of 1996-2008.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtor's mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2] Capitalized terms used herein but otherwise undefined shall have the meanings ascribed to them in the Disclosure Statement or Plan.

2. The Policies issued by Liberty are "fronting" policies that the Debtors described in *The BSA's Opening Brief in Support of Motion for a Preliminary Injunction Pursuant to Sections 105(a) and 362 of the Bankruptcy Code*. See Adv. Pro. No. 20-50527 [Docket No. 7] (the "<u>PI Brief</u>"), at 12. The PI Brief states in relevant part:

> Starting in 1986, the BSA substantially altered its insurance program; the primary and umbrella insurance policies procured were "fronting" policies. Whittman Decl. ¶ 8. "Fronting" policies are policies where the deductibles match the policy's limit of liability. *Id.* Specifically, between 1986 and 2018, the CGL Policies contain a $1 million deductible that matches a $1 million limit of liability. Whittman Decl. ¶ 9. Likewise, the umbrella "fronting" policies include a deductible that matches the aggregate limits of liability. *Id.* Initially, the umbrella policies included a $1 million deductible that had a matching $1 million aggregate limit of liability, but starting in 2002, the deductible and the aggregate limit of liability increased to more than $1 million. *Id.* Notably, between 2008 and 2018, the BSA's umbrella "fronting" policies included a deductible of $9 million and a matching aggregate limit of liability of $9 million. *Id.* Historically, the deductibles for these "fronting" policies have been paid by the BSA. *Id.*

*Id.*

3. The Debtors' repayment obligations under the Policies are secured by (i) a letter of credit No. CTCS-158223 (the "<u>Liberty LC</u>") issued by JPMorgan Chase Bank, N.A. ("<u>JPM</u>"), the current face value amount of which is $6,500,000, and (ii) a cash escrow in the amount of $210,002. To preserve the contingent and unliquidated rights it has against the Debtors and any applicable third party, Liberty filed a proof of claim (the "<u>Liberty Claim</u>") on or around November 12, 2020.

## **OBJECTION**

**I. The Disclosure Statement Fails to Account for Treatment of the Liberty Claim and the Liberty LC.**

4. Presumably, because the Liberty Claim is secured by, among other things, the Liberty LC, it should be treated as an "Other Secured Claim" classified in Class 2. Under the Plan, Other Secured Claims are entitled to the following treatment:

2

> (i) Cash in an amount equal to the Allowed amount of such Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (z) the date on which the holder of such Allowed Other Secured Claim and the Debtors or Reorganized BSA, as applicable, shall otherwise agree in writing; (ii) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (iii) return of the applicable collateral on the Effective Date or as soon as reasonably practicable thereafter in satisfaction of the Allowed amount of such Other Secured Claim.

Plan, Article III.B.2.

5. One of the assumptions of the Debtors' Liquidation Analysis is that "all letters of credit are drawn" on the Effective Date. Disclosure Statement, Exhibit B (Liquidation Analysis), at 10. Furthermore, the "Post-Emergence Capital Structure . . . [a]ssumes approximately $91 million of letters of credit are drawn on the Effective Date and converted to secured funded debt, which are partially reimbursed by the $63 million of cash collateral outstanding." Disclosure Statement, Exhibit C (Financial Projections), at 11.

6. Assuming the Liberty LC is one of the letters of credit that the Plan anticipates will be drawn on the Effective Date, neither the Plan nor the Disclosure Statement provides for that. Alternatively, if the Liberty Claim is an Other Secured Claim, neither the Plan nor the Disclosure Statement states the manner in which Liberty will be allowed to make an election as to its treatment under Class 2. The Disclosure Statement should not be approved unless it is amended to remedy these deficiencies. Liberty proposes that the Debtors add the following language to Article III.F.1:

> In connection with its insurance program, BSA posted certain letters of credit issued by JPM to secure obligations arising under certain of BSA's Insurance Policies (such letters of credit, the "<u>Insurer LCs</u>"). Neither any provision in the Plan nor the occurrence of the Effective Date shall alter, amend, or otherwise impair the rights and obligations of BSA, JPM, or any applicable Insurance Company holding one or more Insurer LCs. Without limiting the foregoing, nothing in the Plan or any confirmation order shall preclude any beneficiary of an Insurer LC from setting off, recouping, or drawing on any Insurer LC issued, or other security provided, for the benefit of the applicable Insurance Company in accordance with the applicable

3

documents governing such Insurer LC or other security, or applying amounts therefrom to any Claim secured by an Insurer LC or other security.

## II. The Disclosure Statement Lacks Sufficient Disclosures And Includes Certain Inconsistencies and Misstatements.

7. The Disclosure Statement also fails to identify or misstates a number of material issues that render it deficient, including, among others:

- The Disclosure Statement fails to adequately address whether the Plan is insurance neutral. The Plan provides:

    ***Except as provided in Article X.M.4.***, none of (a) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (b) the Confirmation Order, the Affirmation Order or any findings or conclusions entered with respect to Confirmation, or (c) any estimation or valuation of Abuse Claims, either individually or in the aggregate (including any agreement as to the valuation of Abuse Claims) in the Chapter 11 Cases shall, with respect to any Insurance Company, constitute or be deemed to constitute a trial or hearing on the merits or an adjudication or judgment, or accelerate the obligations, if any of any Insurance Company under its Insurance Policies.

    Plan § X.M.2 (emphasis added). Article X.M.4 of the Plan, in turn, provides:

    Nothing in this Article X.M. is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Insurance Company with respect to any issue that is actually litigated by such Insurance Company as part of its objections, if any, to Confirmation or as part of any contested matter or adversary proceeding filed by such Insurance Company in conjunction with or related to Confirmation.

    As written, the Disclosure Statement and Plan provide that any Insurance Company that objects to Confirmation or otherwise participates in litigation related to the Confirmation process – i.e., taking any action "in conjunction with or related to Confirmation" – risks having any rulings be binding in subsequent coverage litigation. If that is true, the Plan is not insurance neutral, and the Disclosure Statement should be revised accordingly.

    Additionally, the Disclosure Statement and Plan do not explain the effect that Expedited Distributions will have on Non-Settling Insurance Companies. Although the Disclosure Statement provides that any claimant who elects to receive an Expedited Distribution under a Global Resolution Plan – i.e., a one-time $1,500 cash payment – will receive such payment in exchange for a "full and final release in favor of" among

4

others, the Settling Insurance Companies, it fails to explain the effect such election will have on Non-Settling Insurance Companies.

As has been made clear in a number of pleadings filed before this Court, certain of the Insurance Companies (including Liberty) are concerned that there a number of Abuse Claims filed that are invalid. Notwithstanding that the Settlement Trust may agree to provide an Expedited Distribution to claimants simply because a claimant timely filed a proof of claim, the Disclosure Statement should make clear that a claimant making such an election does not impact an Insurance Company under any scenario.

- The Disclosure Statement fails to adequately explain the risks related to the Insurance Companies' coverage defenses. The Debtors note that the insurers have asserted coverage defenses. *See, e.g.*, Disclosure Statement, at 43. However, the Debtors neglect to evaluate those risks, instead contending that "such defenses or limitations to the scope of Insurance Coverage are without merit." *Id.* The Debtors do note that, under a BSA Toggle Plan scenario, there is less of a guarantee that Insurance Coverage will be available for claimants. *Id.*, at 185-86. Absent a more fulsome disclosure as to the inherent risks associated in claimants receiving compensation from Insurance Companies – under both a Global Resolution Plan and a BSA Toggle Plan – the Disclosure Statement cannot be approved.

- The Disclosure Statement fails to adequately describe the contributions that are to be made by the individual Local Councils and Contributing Chartered Organizations. The Disclosure Statement states that the Debtors "are committed to ensuring that" the Local Councils' aggregate contribution "is not less than $425,000,000." Disclosure Statement, at 72. However, there is no mechanism to guarantee that the Debtors will be able to enforce this commitment, nor is there any disclosure as to what individual Local Councils will contribute in exchange for a global release of all Local Councils. The Disclosure Statement likewise is silent on the contributions that are to be made by Contributing Chartered Organizations. There are placeholder exhibits to the Plan that are to eventually list the individual Contributing Chartered Organizations, along with the amount those entities will agree to contribute to the Settlement Trust. However, that information has yet to be disclosed. Creditors need to understand what will actually be contributed to the Settlement Trust and not just what the Debtors are "committed" to having contributed.

**RESERVATION OF RIGHTS**

8. Liberty reserves, and does not waive, any and all of its rights and defenses under the Policies and applicable law. Liberty further reserves all rights to assert any and all such rights and defenses in any appropriate manner and forum. Nothing contained in this Objection shall be deemed to alter or expand any coverage that may otherwise be available under any Policies or related agreements issued by Liberty or any settlement agreement or other adjudication to which

5

Liberty is a party. Liberty reserves the right to amend, supplement, alter, or modify the objections and points raised herein, including, without limitation, the right to join in, and adopt, any objections to the Disclosure Statement and proposed confirmation schedule filed by any other person or entity.

[Remainder of Page Left Blank Intentionally]

**WHEREFORE,** Liberty respectfully requests that this Court enter an Order: (i) denying the motion seeking approval of the Disclosure Statement unless the Disclosure Statement is amended to address the deficiencies set forth herein; and (ii) granting Liberty such other and further relief as this Court deems just and proper.

Dated: May 10, 2021

SEITZ, VAN OGTROP & GREEN, P.A.

*/s/ R. Karl Hill*
R. Karl Hill (Del. Bar No. 2747)
222 Delaware Avenue
Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-0600
Email: khill@svglaw.com

-and-

Douglas R. Gooding (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
CHOATE HALL & STEWART, LLP
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

Kim V. Marrkand (admitted *pro hac vice*)
Laura Bange Stephens (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 0211
Telephone: (617) 542-6000
KVMarrkand@mintz.com
LBStephens@mintz.com

## CERTIFICATE OF SERVICE

I, R. Karl Hill, hereby certify that on the 10th day of May 2021, I caused a copy of the *Objection Of Liberty Mutual Insurance Company To The Disclosure Statement For The Second Amended Chapter 11 Plan Of Reorganization For Boy Scouts Of America And Delaware BSA, LLC* to be served to all parties by operation of the Court's electronic filing system.

                                               */s/ R. Karl Hill*
                                               R. Karl Hill, Esq. (DE No. 2747)