## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: D.I. 2618** |

### CERTAIN INSURERS' OPPOSITION TO DEBTORS' MOTION FOR ENTRY OF ORDER (I) SCHEDULING CERTAIN DATES AND DEADLINES IN CONNECTION WITH CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION, (II) ESTABLISHING CERTAIN PROTOCOLS, AND (III) GRANTING RELATED RELIEF

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

    I.    Debtors' Request for Estimation is Improper ......................................................... 3

        A.    There Is No Basis to Estimate the Abuse Claims Under Section 502(c) of the Bankruptcy Code ................................................................ 3

        B.    Evaluating Claims Against Non-Debtors, Does Not Under Any Circumstances Fall Within the Meaning of Section 502(c) ...................... 5

        C.    The Debtors' Proposal Is Grossly Prejudicial and Contrary to Fundamental Notions of Due Process and Fair Play ................................ 6

        D.    Debtors Are Asking This Court to Do Something That Has Never Been Done by Another Court—Estimate the Aggregate Liability for Tens of Thousands of Highly Particularized Abuse Claims ............... 7

        E.    If the Court Orders Estimation, the Estimation Procedures Need to Adequately Protect the Insurers from Any Preclusive Effect of Estimation ................................................................................................ 9

    II.    Debtors' Proposed Schedule Is Improper ............................................................. 9

        A.    The Court Should Not Approve the Proposed Schedule Because It Is Unreasonably Compressed and Does Not Accommodate Necessary Discovery ................................................................................ 9

        B.    The Debtors' Proposed Schedule Is Inconsistent with Basic Notions of Due Process ............................................................................ 15

        C.    A Two-Month Postponement Would Not Undermine the Debtors' Reorganization Efforts .......................................................................... 17

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Bittner v. Borne Chem. Co.*,
691 F.2d 134 (3d Cir. 1982) ................................................................................ 4

*In re A.P.I., Inc.*,
331 B.R. 828 (Bankr. D. Minn. 2005), *aff'd* 2006 WL 1473004 (D. Minn. 2006) .................. 9

*In re Am. Cap. Equip., LLC*,
688 F.3d 145 (3d Cir. 2012) .............................................................................. 16

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004), as amended (Feb. 23, 2005) ................................... 16

*In re Energy Future Holdings Corp.*,
Case No. 14-10979 (CSS) (Bankr. D. Del) ............................................................ 15

*In re Glob. Indus. Techs., Inc.*,
645 F.3d 201 (3d Cir. 2011) .............................................................................. 16

*In re Imerys Talc America, Inc.*,
Case 19-10289 (LSS) (Bankr. D. Del.) ........................................................... 14, 15

*In re Pacific Sunwear of California, Inc.*,
No. 16-10882, 2016 WL 4250681 (Bankr. D. Del. Aug. 8, 2016) .......................... 4

*In re Roman Cath. Bishop of San Diego*,
374 B.R. 756 (Bankr. S.D. Cal. 2007) ................................................................. 8

*In re Roman Catholic Archbishop of Portland in Oregon*,
339 B.R. 215 (Bankr. D. Or. 2006) ................................................................... 7, 8

*In re Stone Hedge Props.*,
191 B.R. 59 (Bankr. M.D. Pa. 1995) .................................................................... 4

*In re Thorpe Insulation Co.*,
677 F.3d 869 (9th Cir. 2012) ..................................................................... 2, 16, 17

*Kool, Mann, Coffee & Co. v. Coffey*,
300 F.3d 340 (3d Cir. 2002) ................................................................................ 5

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
568 F.3d 345 (2d Cir. 2009) .............................................................................. 16

*Strickland v. Washington*,
466 U.S. 668 (1984) ......................................................................................... 16

### Statutes

11 U.S.C. § 1121 .................................................................................................. 3

11 U.S.C. § 502(c) ......................................................................................... 2, 4

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"), and Certain Insurers[2] file this Opposition to the Debtors' *Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection With Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief*, filed on April 15, 2021 [D.I. 2618] (the "**Motion**") (the "**Opposition**"):

## PRELIMINARY STATEMENT

1.      The Motion is not just a simple scheduling motion but also a motion to restrict necessary discovery, estimate the aggregate liability of Sexual Abuse Claims, and impose limits on the non-Debtor parties' substantive rights.

2.      Under pressure from the claimants, the Debtors seek some form of estimation of the nearly 100,000 Abuse Claims.  The subject matter of both the Debtors' Motion and the FCR, TCC, and Coalition's estimation motion [Dkt. 2391] (the "**Estimation Motion**") overlap significantly, albeit on a different timeline and through different procedures.  For similar reasons, as explained in Century's Opposition to the Estimation Motion [Dkt. 2614], the Debtors' request for an estimation is fundamentally flawed, has no basis in the Bankruptcy Code, and is outside the jurisdiction of this Court.

3.      The estimation relief sought through the Motion is wholly outside the authority of this Court to grant, and none of the requirements for estimation under Bankruptcy Code section 502(c) are satisfied.  Debtors do not seek the estimation of any individual "claim;" the estimation is not "for purpose of allowance" of any claim; and there is no evidence to suggest that any Abuse Claim must be estimated now to avoid "undu[e] delay [in] the administration of the case."

---

[2]     "**Certain Insurers**" collectively includes Century Indemnity Company ("**Century**") together with the joining insurers signed on below.

11 U.S.C. § 502(c). This alone is a basis to deny the Motion. Further, if granted, the Debtors' Motion would result in this Court being the first ever to purport to determine the aggregate liability of sexual abuse cases for distribution purposes.

4. Moreover, the Debtors' proposed schedule is unreasonably compressed and does not accommodate the necessary discovery. The aggressive discovery schedule proposed by the Debtors threatens to undermine the very fairness of the plan development process. As such, chapter 11 plans that curtail discovery by insurers and limit their ability to provide meaningful input—thus depriving them of procedural fairness—routinely fail to survive appellate review. *See, e.g.*, *In re Thorpe Insulation Co.*, 677 F.3d 869, 891 (9th Cir. 2012) (reversing chapter 11 plan confirmation to allow "***full*** input from insurer parties who will be economically affected by the plan") (emphasis added).

5. The proposed schedule should not be approved because it is unreasonably compressed and does not accommodate necessary discovery. The breakneck schedule does not carve out sufficient time to complete discovery in a logical sequence and gives short shrift to the significant amount of party and third-party discovery necessary in this case. For instance, there is no deadline for motions to compel discovery, no deadline to complete fact discovery or document production, and only eleven days between the deadline to serve responses and objections to written discovery and the deadline for "substantial completion" of document production. Further, expert reports are due a mere five days after the "substantial completion" of document production and thirty days ***before*** the deadline to complete fact depositions.

6. The Court should also take note of *Imerys*, where the ***initial*** schedule, which was far more spread out than Debtors' proposal, was too condensed itself and the schedule had to be later expanded.

7.      The Debtors' proposed truncated schedule is remarkable given that Debtors' counsel complained about the proposed "aggressive" 111-day schedule in the Estimation Motion. The Debtors argued in Court and in opposition to the Estimation Motion that the schedule was hyper-aggressive, impossible, and that the proposed 111-day discovery and litigation schedule "conveniently expires right at the debtor's statutory exclusivity period," when the Debtors would lose their exclusive right to propose a Chapter 11 plan (11 U.S.C. § 1121). *See* 03/17/21 Hr'g Tr. at 46 (Ms. Lauria, counsel for BSA). Now, the Debtors are requesting to essentially halve the time to conduct discovery and for plan confirmation. *See id.* And, despite the Debtors' protestations, an analysis of the Debtors' projected liquidity clearly demonstrates that a two-month extension of the confirmation schedule would not derail the Debtors' mission or jeopardize their emergence.

## ARGUMENT

## I.    DEBTORS' REQUEST FOR ESTIMATION IS IMPROPER

8.      The Debtors' Motion is a motion to conduct an estimation, which will serve no legitimate purpose and is not necessary to confirm a plan. No prior sexual abuse bankruptcy— and there have been two dozen—has included an estimation. And it is extremely rare in mass tort cases generally to see an estimation occur. For similar reasons as explained in Century's Opposition to the Estimation Motion [Dkt. No. 2614], the Debtors' request for an estimation is fundamentally flawed, has no basis in the Bankruptcy Code, and is outside the jurisdiction of this Court.

### A.    THERE IS NO BASIS TO ESTIMATE THE ABUSE CLAIMS UNDER SECTION 502(C) OF THE BANKRUPTCY CODE

9.      None of section 502(c)'s three requirements for estimation is met here. Section 502(c) provides:

> There shall be estimated for purpose of allowance under this
> section . . . any contingent or unliquidated claim, the fixing or
> liquidation of which, as the case may be, would unduly delay the
> administration of the case.

11 U.S.C. § 502(c).

10.     First, section 502(c) provides for the estimation only of a "contingent or

unliquidated claim." The estimation thus must determine the amount of an individual claim or

group of **related** claims; there is no basis under section 502(c) to estimate a debtor's aggregate

liability for all mass-tort claims alleged against it for purposes of distribution. *See, e.g., Bittner*

*v. Borne Chem. Co.*, 691 F.2d 134, 135-137 (3d Cir. 1982) (affirming order estimating the

allowed amount of a single unliquidated tort claim).

11.     Second, the estimation must be "for purpose of allowance under this section." As

this Court has explained, because "section 502(c) … requires that the court estimate [an

unliquidated claim] 'for purpose of allowance under this section,'" "estimation under section

502(c) results in allowing a claim for purposes of the entire case, and is no different than a claim

allowed under section 502(a) or (b)." *In re Pacific Sunwear of California, Inc.*, No. 16-10882,

2016 WL 4250681, at *3 (Bankr. D. Del. Aug. 8, 2016) (Silverstein, J.); *see also In re Stone*

*Hedge Props.*, 191 B.R. 59, 63–64 (Bankr. M.D. Pa. 1995) ("estimation … under 11 U.S.C.

§ 502(c) … appears to confine itself to 'contingent or unliquidated' claims for distribution

purposes"). Here, the Debtors suggest that they do not intend to use estimation for purposes of

allowance of any particular claim, but rather to reach an aggregate approximation of the

Debtors'—and various non-debtor entities'—abuse liability.

12.     Third, section 502(c) permits the estimation of a contingent or unliquidated claim

only if "the fixing or liquidation" of the claim through the normal claims-allowance process

under section 502(a)–(b) of the Bankruptcy Code (or in the tort system) "would unduly delay the

administration of the case." *See, e.g., Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 357

(3d Cir. 2002) (affirming denial of section 502(c) estimation of creditor's claim because

adjudicating the claim's allowance under section 502(b) would not delay the case).  The Debtors

cannot make that showing.  In fact, the Plan is premised on a "toggle" structure that the Debtors

contend can be confirmed even if Class 8 holders of Abuse Claims vote *against* the plan.

13.     In other words, the proposed estimation serves no purpose: it will not result in a

judicial determination of allowance of a single claim, nor will it advance confirmation of a plan

that the Debtors contend does not require the affirmative vote of Abuse Claimants anyway.

**B.      EVALUATING CLAIMS AGAINST NON-DEBTORS, DOES NOT UNDER ANY
          CIRCUMSTANCE FALL WITHIN THE MEANING OF SECTION 502(C)**

14.     BSA' Motion is also legally defective insofar as BSA seeks an estimation of non-

debtor liabilities.  The Abuse Claims here give rise in various instances to claims against the

Debtors and a range of non-Debtors.  BSA seeks a whole case valuation of the Abuse Claims

against whoever they may be asserted.  Sometimes the liabilities may overlap but other times

they may not.  For example, at least two of the members of the Official Committee of Tort

Claimants settled and were paid for their Abuse Claims by non-debtors prepetition but

nonetheless were seated as member of the Committee.

15.     Evaluating Abuse Claimants' potential state-law claims against ***non-debtors***,

including the liability of the non-debtor Local Councils and Sponsoring Organizations does not

under any circumstance fall within the meaning of estimation under Section 502(c).  Nor does

the Court have jurisdiction to estimate the liability of non-debtors in these circumstances.

16.     Under section 502(c), the Court is never empowered to estimate claims of non-

debtors.  *See In re Fed.-Mogul Glob., Inc.*, 330 B.R. 133, 154 (D. Del. 2005) ("Section 502(c)

only speaks of estimating claims for the purpose of allowance."); *Matter of Interco Inc.*, 137

B.R. 993, 998 (Bankr. E.D. Mo. 1992) ("A bankruptcy court is to estimate any contingent or unliquidated claims for the purpose of ***allowance*** in a bankruptcy case.") (emphasis added).  When contemplating the allowance of claims under the Bankruptcy Code, it is only relevant in the context of claims against the debtor.  *See* 11 U.S.C. § 502(b) (the court will allow a claim except to the extent "such claim is unenforceable against the debtor and property of the debtor").  An allowed claim is one "that may share in the assets of the bankruptcy estate." *See Interco*, 137 B.R. at 999.  Section 502(c) does not confer authority to estimate value of claims for non-debtors.

17.     Moreover, it is important to consider the context in which courts estimate claims, typically for feasibility, distribution, and voting on a plan.  *See, e.g.*, *In re Pacific Gas & Electric Company*, 295 B.R. 635, 642 (Bankr. N.D. Cal. 2003) (estimating claims for purposes of voting on a plan and feasibility)*; In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (estimation necessary for a determination of plan feasibility); *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) (estimating claims for voting and distribution purposes).  For each of these purposes, courts only examine the claims against the debtors, and any purported value of claims against non-debtors is not encompassed in those issues.

## C.    THE DEBTORS' PROPOSAL IS GROSSLY PREJUDICIAL AND CONTRARY TO FUNDAMENTAL NOTIONS OF DUE PROCESS AND FAIR PLAY

18.     The Debtors' proposal does not provide for claimant depositions, but rather "time-limited interviews."  Mot. at 9.  Worse, the "estimation" procedures would limit discovery to a "stratified sample of individual abuse claimants."  *Id.*  The Debtors have told the parties that interviews will be limited to an hour with the Debtors and TCC each getting 2/3 of the time leaving the insurer collectively with less than 20 minutes. Further, the Debtors told the parties in a meet and confer that only those individuals who volunteer to appear will be interviewed. If

anyone declines, BSA proposes to move on without recourse to a subpoena. The obvious result

will be a self-selected sample.  In any event, the Debtors' proposal is unlikely to yield any useful

information that will aid in claims estimation.[3]

19.    To the extent that what BSA seeks is to bind the insurers to an estimation, this

Court lacks jurisdiction to hold such a hearing.

**D.    DEBTORS ARE ASKING THIS COURT TO DO SOMETHING THAT HAS NEVER BEEN DONE BY ANOTHER COURT—ESTIMATE THE AGGREGATE LIABILITY FOR TENS OF THOUSANDS OF HIGHLY PARTICULARIZED ABUSE CLAIMS**

20.    The Debtors' Motion is entirely devoid of any precedent for holding estimation

proceedings to determine the aggregate liability in sexual abuse claims, particularly on this scale.

The Court that oversaw the one known abuse case that addressed the issue declined to embark on

an estimation and this case involved only 129 sexual abuse claims.  In *In re Roman Catholic*

*Archbishop of Portland in Oregon*, 339 B.R. 215 (Bankr. D. Or. 2006), the court found

fundamental flaws in an aggregate value estimation of sexual abuse claims for purposes of

distribution.  *See id.* at 224.  ("A claimant's right to a remedy for tortious behavior could be

substantially and irreversibly affected by the estimation, where estimation is being used to

establish a cap on the fund that will be available to pay liquidated claims.").  The court

ultimately did not endorse the debtor's request for an estimation of the aggregate value of sexual

abuse claims for purposes of distribution.  *See id.* (noting that the "consequences of estimation

for purposes of voting and confirmation issues only are much less drastic than of estimation for

purposes of distribution."  (emphasis added)).

21.    Recognizing the sparse case law on estimations for distribution purposes, another

bankruptcy court observed that estimating sexual abuse claims would lead to "significant

---

[3] *See* McKnight Decl. , ¶¶ 6-15.

disputes concerning how it should be accomplished." *In re Roman Catholic Bishop of San Diego*, 374 B.R. 756, 760 (Bankr. S.D. Cal. 2007) ("The possibility of further appeals is also high since the Debtor's desired process will deprive plaintiffs of their Seventh Amendment right to a jury trial.").

22.    Furthermore, the Debtors' proposed estimation procedures would strip the due process rights of the insurers and all other parties.  Their proposed violation of the parties' constitutional rights further demonstrates why the Court must reject the Motion.  "[D]ue process likely requires an individualized estimation of claims, as opposed to the estimation process debtor proposes for present child sex abuse claims, which divides the claims into a few groups and uses the estimated amount for each claim in the given group." *Archbishop of Portland*, 339 B.R. at 223.  Though the Oregon Bankruptcy Court did not believe that estimation automatically required "mini-trials for each claim," it urged that it would "explore with the parties methods for individualizing the estimation process." *Id.* (noting that selecting a methodology was "premature" but suggesting options such as appointing an expert and conducting advisory summary jury trials).

23.    *Archbishop of Portland*'s warning to engage in a more tailored assessment of claims is especially imperative here where there is an extraordinarily high number of claims, significant issues about how the POCs were generated and enormous variation in the monetary worth of each claim.  Restricting BSA's total liability without taking an individualized look at the underlying claims would do nothing to get at the true value of the underlying sexual abuse claims for which they are responsible.  This would deprive the insurers, the underlying claimants, and all other parties of their due process rights.[4]

---

[4]  The Debtors give lip service to their intent that the estimation be non-binding, but the proposed order to the Motion is devoid of any express protections to that effect.

E.    **IF THE COURT ORDERS ESTIMATION, THE ESTIMATION PROCEDURES NEED TO ADEQUATELY PROTECT THE INSURERS FROM ANY PRECLUSIVE EFFECT OF ESTIMATION**

24.      In light of the severe prejudice any non-settling insurer would suffer from an inaccurate, one-sided and expedited claims estimation, if the Court is inclined to grant estimation, the Certain Insurers respectfully request that the Court condition the approval of any estimation on a clear limitation on the impact of estimation to consideration of a plan in these Chapter 11 Cases.  The possibility that the Debtors or Abuse Claimant Representatives can later argue in coverage litigation that any such estimation should be granted res judicata or collateral effect must be completely foreclosed.  *See In re A.P.I., Inc.*, 331 B.R. 828, 846-47 (Bankr. D. Minn. 2005), *aff'd* 2006 WL 1473004 (D. Minn. 2006) (holding that, at the plan confirmation stage, "at bare minimum this Court has the power to deny preclusive effect to the ostensible determinations that are to be made" by post-confirmation asbestos trust "via the estimation or claims").

II.    **DEBTORS' PROPOSED SCHEDULE IS IMPROPER**

A.    **THE COURT SHOULD NOT APPROVE THE PROPOSED SCHEDULE BECAUSE IT IS UNREASONABLY COMPRESSED AND DOES NOT ACCOMMODATE NECESSARY DISCOVERY**

25.      The Debtors' proposed schedule is unreasonably compressed and does not accommodate the necessary discovery.  The Debtors' preferred schedule must not undermine the substantive rights of the parties, which this Motion, if granted, would do.

26.      As an initial matter, it makes no sense to conduct a hearing to set a confirmation schedule before the Court has decided whether to approve the disclosure statement.  Undersigned counsel can think of no mass tort bankruptcy in which the confirmation schedule was heard and determined before approval of the disclosure statement.  Following the May 19 hearing, the current proposed disclosure statement, and possibly the Plan, will be amended in light of

objections asserted, and rulings made, at the May 19 hearing.  The Court need only consider the proceedings in the *Imerys* case, in which the disclosure statement was required to be revised following the initial disclosure statement hearing, to appreciate that it makes little sense even to consider setting a confirmation schedule before the disclosure statement is actually approved.

27.     Certain Insurers, including Century, also moved over two months ago under Rule 2004 for discovery into the Abuse Claims and presented substantial evidence of improper conduct on the part of law firms and attorneys, claims aggregators, and claimants that resulted in a 55-fold increase in the number of Abuse Claims.[5]  During the March 17 hearing, this Court stated that its "inclination was to permit certain of the [Rule 2004] discovery" and that "certain of this discovery is appropriate," but held off on ruling while the Estimation Motion and motion to withdraw the reference were pending.  03/17/21 Hr'g Tr. at 51:8–52:13.  Certain Insurers seek this Rule 2004 discovery before solicitation, and any confirmation schedule must allow for sufficient time to complete Rule 2004 discovery prior to the deadline to object to the Plan and confirmation.

28.     The Debtors' proposed schedule lacks sufficient time for document discovery, depositions, designation of experts, submission of expert reports, and expert discovery. Specifically, the schedule lacks adequate time (a) for potential objectors to conduct discovery before the deadline for filing Plan objections, (b) to conduct depositions after the close of document discovery, and (c) to designate experts, submit expert reports, and conduct expert discovery after fact discovery is completed.

---

[5]     Hartford & Century's Motion for an Order (I) Authorizing Certain Rule 2004 Discovery and (II) Granting Leave from Local Rule 3007-1(f) to Permit the Filing of Substantive Omnibus Objections [Dkt. 1971]; Insurers' Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim [Dkt. 1974].

29.    The Debtors' Proposed Plan Confirmation Schedule contains the following key

dates:

| | |
|---|---|
| Voting Record Date | May 19, 2021 |
| Deadline to Finalize Claimant Interview Scheduling Procedures | May 19, 2021 |
| Deadline to Serve Written Discovery | May 26, 2021 |
| Deadline to Serve Reponses & Objections to Written Discovery | June 14, 2021 |
| Deadline to Complete Claimant Interviews | June 25, 2021 |
| Document Production Substantially Complete | June 25, 2021 |
| Expert Reports Due | June 30, 2021 |
| Rebuttal Expert Reports Due | July 14, 2021 |
| Deadline to File Plan Supplement | July 16, 2021 |
| Deadline to Complete Depositions | July 27, 2021 |
| Voting Resolution Event Deadline | July 30, 2021 or as otherwise ordered by the Court |
| Voting Deadline | July 30, 2021 |
| Plan Objection Deadline | July 30, 2021 |
| Deadline to Exchange Deposition Designations and File Motions in Limine | July 30, 2021 |
| Deadline to Exchange Deposition Counter-Designations and Objections | August 6, 2021 |
| Deadline to Submit Pretrial Order, Witness, and Exhibit Lists, Oppositions to Motions in Limine, and for Objections to Deposition Counter-Designations | August 16, 2021 |
| Final Pretrial Conference | TBD |
| Deadline to File Voting Report | TBD |
| Confirmation Brief/Reply Deadline | TBD |

| Confirmation Hearing | TBD |
|---|---|

30.     The Debtors' proposed schedule does not permit discovery at a pace that makes sense, and barely considers the significant amount of party and third-party discovery that needs to be completed.  Despite the Debtors' counsel complaining about the aggressive 111-day schedule in the Estimation Motion, the Debtors' schedule provides for half that time to conduct the discovery necessary in this case.  *See* 03/17/21 Hr'g Tr. at 46 (Ms. Lauria, counsel for BSA).

31.     Nor does BSA's schedule accommodate the range of topics on which discovery is needed, including the discovery stemming from the Certain Insurers' Rule 2004 motions, discovery necessary to shed light on the claims review process, including the methodology, means, and scope of the Debtors' review.

32.     What's more, Century has already received a mountain of discovery requests from the Coalition, the TCC, and the FCR, including requests for admission, interrogatories, and requests for production.  Given the compressed timeline of the proposed schedule, as well as the range of topics on which further discovery is necessary, these additional discovery obligations merely underscore the need for more realistic timeline.  Accordingly, the Court should reject the Debtors' proposed schedule.

33.     Perhaps because the Debtors are working backwards from an arbitrary end date, the proposed timetable also fails to account adequately for a thoughtful, sequenced schedule. First, the Debtors do not even propose a deadline for any motions to compel discovery responses or document production, nor is there time in the schedule to account for these motions.  Instead, the Debtors limit discovery disputes to five-page letter briefs with opposition letters due within seven days of service of any moving letter.  Mot. 10.  However, there are only 11 days between the deadline to serve responses and objections to written discovery and the deadline for

"substantial completion" of document production.  Eleven days is not even adequate time for the

parties to meet and confer over any asserted objections, let alone time to file and litigate

discovery motions.

34.     The BSA schedule is unrealistic. It shortchanges the necessary discovery

responses by all, including potentially third-party subpoena recipients.  Indeed, given the

adversarial nature of this case to date, including the many objections to the Rule 2004 discovery

and the slow pace of document production by the Debtors, it seems advisable to build into any

schedule sufficient time for resolution of discovery disputes.

35.     Second, expert reports are due only five days after "substantial completion" of

document discovery, including completion of claimant interviews, and 30 days *before* the

deadline to complete fact depositions.  There is also no deadline for the completion of fact

discovery or document production.  This schedule obviously prejudices the ability of the non-

Debtor parties to have their experts prepare reports based upon the full universe of available fact

discovery in the Debtors' possession.  In *Imerys,* a 26-day window between substantial

completion of document production and filing of expert reports—three weeks more than Debtors

purport to allow parties here— proved insufficient, leading to an extension of the deadline to

allow 58 days to prepare expert reports.  *See In re Imerys Talc America, Inc.*, Case 19-10289

(LSS) (Bankr. D. Del.) ECF No. 2863 at 6; ECF No. 3412 at 2.  This underscores the need for

substantially more than 5 days to prepare expert reports.  Moreover, all fact discovery, including

document productions and fact depositions, must be completed before expert reports are due.

36.     Third, the Debtors' proposed schedule only allows 14 days for the preparation of

rebuttal expert reports.  *Imerys* demonstrates that even a schedule providing 50% more time (21

days) is an insufficient amount of time.  *Id.*  Accordingly, the Court approved an extension to

permit 27 days to prepare rebuttal expert reports.  Rebuttal expert reports are also due 16 days

before the deadline to complete fact depositions.  That schedule hamstrings the ability of the

non-Debtors' experts to review the expert reports and prepare rebuttals.

37.     No logical rationale has been put forth by the Debtors for their purported need to

emerge from bankruptcy by summer 2021, and their preferred timeline cannot undermine the

substantive rights of the non-Debtor parties, including Certain Insurers.  As this Court stated in

*Imerys*,

- "I'm going to permit time for discovery to take place . . . .  So, we're going to get documents.  We're going to have production.  We'll set a schedule.  We'll set a schedule for confirmation . . . .  [W]e're going to permit appropriate time for discovery.  And if people want the full time for responding to discovery, that factors into how quickly we can proceed, and there's nothing wrong with that; it gets factored into the timeline."

- "[W]e're going to have time for discovery.  We're going to have time for depositions. And we're going to have time for expert reports.  And it doesn't all need to be jammed into a truncated time period."

01/12/21 Hr'g Tr. at 186–87, 235–36 in *In re Imerys Talc America, Inc., et al.*, Case No. 19-

10289 (LSS) (Bankr. D. Del.).

38.     It is also important to note that the initial schedule in *Imerys*, which was far more

spread out than the Debtors' proposal, was too condensed itself, and the schedule had to be later

expanded.  Most glaringly, in *Imerys,* the Court approved a schedule providing for 170 days

between approval of the Disclosure Statement and the deadline to object to the plan, revising the

previous 121-day timeframe, which proved inadequate.  *Id.*  ECF No. 2863 at 5–6; ECF No.

3412 at 2–3.  Similarly, in *In re Energy Future Holdings Corp.*, the Court provided more than

twice the time for discovery and filing a plan objection than Debtors propose here, and required

parties to consolidate discovery requests to streamline discovery.  Case No. 14-10979 (CSS)

(Bankr. D. Del) ECF. No. 4916 at ¶¶ 7, 8.

39.     Here, Debtors propose to provide parties with a meager 72 days to file an objection to confirmation of Debtors' Plan following the Disclosure Statement hearing.  During that time, parties must apparently scramble to serve, produce, analyze, and respond to all forms of discovery and expert reports.  As *Imerys* teaches, this is simply infeasible.  *Imerys* should serve as a lesson on the required time for the various steps to a plan confirmation hearing in a complex mass tort bankruptcy case involving personal injury claims.  Accordingly, this Court should deny Debtors' proposed schedule in favor of one that provides as least as much time as was deemed necessary in *Imerys*.  Further, in the aid of efficiency, it would be prudent to order parties to serve consolidated discovery requests.

**B.**     **THE DEBTORS' PROPOSED SCHEDULE IS INCONSISTENT WITH BASIC NOTIONS OF DUE PROCESS**

40.     The aggressive discovery schedule proposed by the Debtors threatens to undermine the very fairness of the plan-development process.

41.     Naturally, issues of fairness under the Bankruptcy Code bleed into issues of Due Process under the U.S. Constitution.  As the Supreme Court has made clear in other contexts, the Constitution guarantees procedural fairness in matters before American tribunals, and such fairness is to be determined in light of the contours of each particular situation.  *See Strickland v. Washington*, 466 U.S. 668, 685 (1984).  The scheduling matters rammed through by the Debtors in their proposed schedule run the gamut of written discovery and live testimony, with overlapping deadlines before which parties must conduct claimant interviews and submit expert reports.  These matters are core discovery matters that a court must assess "in accordance with fundamental principles of fair fact finding."  *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 354 (2d Cir. 2009).

42.     Accordingly, chapter 11 plans that curtail discovery by insurers and limit their ability to provide meaningful input—thus depriving them of procedural fairness—routinely fail to survive appellate review.  *See, e.g.*, *In re Thorpe Insulation Co.*, 677 F.3d 869, 891 (9th Cir. 2012) (reversing chapter 11 plan confirmation to allow "***full*** input from insurer parties who will be economically affected by the plan") (emphasis added); *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (*en banc*) (reversing chapter 11 plan confirmation to allow for "further development of the factual record" to support "a more searching review" by the bankruptcy court into certain plan issues); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004), as amended (Feb. 23, 2005) (reversing chapter 11 plan confirmation to allow for additional fact finding); *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 159 (3d Cir. 2012) (finding chapter 11 plan unconfirmable where plan's distribution procedures "reduc[ed] insurers' procedural rights" by "severely limiting or eliminating [i]nsurers' ability to take discovery").

43.     The condensed discovery schedule will likely limit the insurers' ability to fully and fairly address their issues with the Plan, which the Ninth Circuit determined was required in *Thorpe*.  In *Thorpe*, certain non-settling insurers challenged the district court's finding that they lacked standing to challenge the plan of reorganization.  *In re Thorpe Insulation Co.*, 677 F.3d 869, 876 (9th Cir. 2012).  The bankruptcy court approved the plan without giving the non-settling insurers an opportunity to be heard on all relevant issues.  *Id.* at 879.  The Ninth Circuit remanded the case with instructions to return it to the bankruptcy court so that non-settling insurers had the opportunity to be fully and fairly heard.  *Id.* at 891.  For this reason alone, the Motion must be denied.

C.    **A TWO-MONTH POSTPONEMENT WOULD NOT UNDERMINE THE DEBTORS' REORGANIZATION EFFORTS**

44.    A two-month delay would not prejudice the Debtors or threaten to derail the Debtors' reorganization efforts.  The Debtors contend that they must emerge from Chapter 11 proceedings by the fall, but an analysis of the Debtors' cash flow forecast, 2021–2022 Monthly Income Statements, Projected Consolidated Statement of Cash Flows, and BSA's monthly operating reports belies any assertion that the Debtors would not survive a two-month postponement of the Confirmation Hearing.[6]

45.    Indeed, after adjusting conservatively for (i) an increase in monthly professional fees for an extra two months in chapter 11 (even though the quantum of professional fees is entirely within the Debtor's control), and (ii) an adverse impact on the Debtors' cash flows due to the potential effect of postponement on fall recruiting efforts, the Debtors' liquidity is projected to remain at or *above* $36 million as of August 2022 and each year from 2022 through 2025.  These projections are consistent with the Debtors' prior projections that showed a $35 million liquidity trough in August 2022 under certain downside scenarios, but that emerging with $75 million in liquidity would provide sufficient cushion for potential downside risks.  A two-month delay would thus give the parties sufficient time to conduct discovery and evaluate the Plan without undermining the Debtor's liquidity needs.[7]

---

[6] *See* Vanderbeek Decl. ¶¶ 3–15.

[7] *See* Vanderbeek Decl. ¶¶ 3–15.

## **CONCLUSION**

For the foregoing reasons, Century respectfully request that the Court deny the Motion and enter such other relief as the Court deems proper.

*[Remainder of page intentionally left blank]*

Dated:  May 12, 2021                      Respectfully Submitted,


                                          By:   /s/Stamatios Stamoulis
                                                 Stamatios Stamoulis (#4606)

                                          STAMOULIS & WEINBLATT LLC
                                          800 N. West Street
                                          Third Floor
                                          Wilmington, Delaware  19801
                                          Telephone:   302 999 1540
                                          Facsimile:   302 762 1688

                                          O'MELVENY & MYERS LLP
                                          Tancred Schiavoni (*pro hac vice*)
                                          Daniel Shamah (*pro hac vice* forthcoming)
                                          Times Square Tower
                                          7 Times Square
                                          New York, New York  10036-6537
                                          Telephone:   212 326 2000
                                          Facsimile:   212 326 2061

                                          *Counsel for Century Indemnity Company, as*
                                          *successor to CCI Insurance Company, as successor*
                                          *to Insurance Company of North America*

                                          **MORRIS JAMES LLP**

                                          /s/ Carl Kunz, III
                                          Carl Kunz, III (DE Bar No. 3201)
                                          500 Delaware Avenue, Suite 1500
                                          Wilmington, DE 19801
                                          Telephone: (302) 888-6800
                                          Facsimile: (302) 571-1750
                                          Email: ckunz@morrisjames.com

                                          - and -

                                          /s/ Margaret M. Anderson
                                          Margaret M. Anderson, Esq. (pro hac vice)
                                          FOX SWIBEL LEVIN & CARROLL LLP
                                          200 W. Madison Street, Suite 3000
                                          Chicago, IL 60606
                                          Telephone: (312) 224-1224
                                          Facsimile: (312) 224-1201
                                          Email: panderson@foxswibel.com

                                          *Counsel for Old Republic Insurance Company*

 */s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
The Law Offices of Joyce, LLC
1225 King Street, Suite 800
Wilmington, DE 19801
(302)-388-1944
mjoyce@mjlawoffices.com

- and -

*/s/ Lorraine M. Armenti*
Kevin T. Coughlin (Admitted *Pro Hac Vice*)
Lorraine M. Armenti (Admitted *Pro Hac Vice*)
Michael E. Hrinewski (Admitted *Pro Hac Vice*)
Coughlin, Midlige & Garland, LLP
350 Mount Kemble Ave.
PO Box 1917
Morristown, NJ 07962
973-267-0058 (Telephone)
973-267-6442 (Facsimile)
larmenti@CMG.law

*Attorneys for Arrowood Indemnity Company, formerly
known as Royal Indemnity Company*