## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| BOY SCOUTS OF AMERICA AND | ) Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC,[1] | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) **Related to Dkt. Nos. 2364, 2732, 2733, 2737** |

**OMNIBUS REPLY IN SUPPORT OF JOINT MOTION OF THE
OFFICIAL TORT CLAIMANTS' COMMITTEE AND FUTURE CLAIMANTS'
REPRESENTATIVE FOR ENTRY OF AN ORDER GRANTING STANDING
AND AUTHORIZING THE PROSECUTION OF CERTAIN
CHALLENGE CLAIMS ON BEHALF OF THE BANKRUPTCY ESTATES**

The Official Tort Claimants' Committee (the "Tort Committee"), and James L. Patton Jr.,

as the legal representative for future claimants (the "FCR" and together with the Tort Committee,

the "Challenge Parties"), in the chapter 11 cases commenced by the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), hereby submit this omnibus reply (this

"Reply") in support of their motion for this Court to enter an order granting standing and

authorizing the Challenge Parties to prosecute certain challenge claims on behalf of the

bankruptcy estates, among other related relief [Docket No. 2364] (the "Motion").[2]  In support of

this Reply, the Challenge Parties respectfully state as follows:

### PRELIMINARY STATEMENT

1.     The Challenge Parties seek uncontroversial relief that is normally subject

to a low bar, particularly in the context of a debtor's secured claim acknowledgments made

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

under a financing order.  Faced with a Challenge Period that was set to expire on March 12, 2021

(which JPMorgan Chase Bank, National Association ("<u>JPM</u>") refused to further extend), the

Challenge Parties had no choice but to file the Motion given the sweeping Stipulations made by

the Debtors in the Final Cash Collateral Order.  In response, JPM filed a 55-page objection

[Docket No. 2732] and the Debtors filed a 15-page objection [Docket No. 2733], both of which

argue that the Challenge Parties have failed to adequately plead any colorable claims or establish

that the Debtors have unreasonably refused to pursue them.  The Official Committee of

Unsecured Creditors (the "<u>UCC</u>") filed a limited joinder [Docket No. 2737] to the Debtors'

objection, but solely on the grounds that the Motion is premature.[3]  Notably, the UCC agrees

with the Challenge Parties that their claims are colorable.  The Challenge Parties file this Reply

in order to address JPM's and the Debtors' objections and the UCC's joinder.

2.    <u>First</u>, contrary to the UCC's position, the Motion is not premature.  The

Challenge Parties were required to file the Motion because the Challenge Period was about to

expire and JPM refused to extend it any further.  The Challenge Parties needed to preserve their

rights through the filing of the Motion or risk an irrevocable waiver.  And now that the Motion

has been filed, there is no reason to adjourn it.  The Challenge Parties are entitled to a

determination of the validity and extent of JPM's claims and liens prior to a plan confirmation

hearing, if possible.

3.    <u>Second</u>, the Challenge Parties' claims are pled with adequate specificity

and sufficiently put JPM and the Debtors on notice of the matters at issue, as revealed by their

expansive objections thereto.  JPM spends 55 pages of briefing to address each of the Challenge

---

[3] The UCC is barred by the terms of its settlement with JPM from "directly or indirectly support[ing] any other party's motion to obtain standing to pursue any claim asserted in the Challenge Complaint."  The Debtors, in turn, are bound by the same settlement to "take reasonable actions as may be necessary or desirable to oppose, any other party's motion to obtain standing to pursue any claim asserted in the Challenge Complaint."

Parties' allegations as to every unencumbered asset at issue.  JPM's count-by count objection is proof, ***in and of itself***, that the contentions in the Proposed Complaint are adequately pled.  The Debtors too have no problem responding to the Challenge Parties' claims, albeit in a more summary fashion than JPM.[4]

4.    Third, the hearing on the Motion is not the time for this Court to rule on the substance of the causes of action asserted in the Proposed Complaint (*i.e.*, whether something is encumbered or unencumbered or should be rendered unencumbered).  All factual allegations by the Challenge Parties must be accepted as true and the legal points of contention can be addressed later in an adversary proceeding, not at this pre-litigation phase to determine solely whether standing should be conferred.

5.    Fourth, of course the claims set forth in the Proposed Complaint are colorable, as acknowledged by the UCC in its limited joinder.[5]  The pending settlement (the "UCC Settlement") between JPM, the Debtors and the UCC purports to resolve *these very same claims*.  In fact, the UCC was a party to an earlier draft of the Proposed Complaint that was subsequently filed by only the Tort Committee and the FCR.  That prior draft raised many more challenge issues than those in the Proposed Complaint, which was narrowed and specifically tailored by the Challenge Parties to assert the most viable claims.  Even under the UCC Settlement, all of the UCC's challenge rights are fully tolled pending the effective date of a chapter 11 plan that is consistent with the terms of such settlement.  The Challenge Parties, however, had not been offered any tolling as to their challenge rights prior to the filing of the

---

[4] The Debtors assert that, in the exercise of their reasonable business judgment, they determined not to pursue the claims in the Proposed Complaint.  Debtors' objection at p. 2.  Of course, under the Final Cash Collateral Order, the Debtors declined to pursue the claims simply "in exchange for and as a material inducement to [JPM's] agreement to permit consensual use" of cash collateral.  *See* Final Cash Collateral Order ¶ D.

[5] JPM even admits in its objection that it has no liens on commercial tort claims or real estate leased by BSA from third parties.  JPM had been unwilling to stipulate to *any* issues raised in the Proposed Complaint prior to the filing of the Motion.

3

Motion and, indeed, receive nothing out of the UCC Settlement, which was secretly negotiated without their involvement. ***How can the self-same claims that are colorable enough to form the foundation of a global UCC Settlement be devoid of merit – "pure folly," according to JPM – in the hands of the Challenge Parties?***

6.    <u>Fifth</u>, the fact that the Debtors have proposed a chapter 11 plan that purports to moot the challenge rights of the Challenge Parties does not mean that such plan will be confirmed or that it will be consummated. The Challenge Parties intend to vigorously object to such plan on multiple legal and factual grounds. Absent the filing of the Motion, the Challenge Period would have already expired as to the Challenge Parties. The Debtors and JPM ignore that the Challenge Parties are required to assert – or forever relinquish – their rights consistent with the terms of the Final Cash Collateral Order.

7.    <u>Finally</u>, there is nothing unusual in the Proposed Complaint with respect to the challenges to JPM's liens and claims, save perhaps for the recharacterization and avoidance claims relating to Arrow, but even those are consistent with challenges that are frequently raised by committees in bankruptcy cases. Recharacterization of debt to equity or outright avoidance is a common feature of committee practice and such result would be highly beneficial here to unsecured tort claimants. The only wrinkle is that it is BSA's estate that holds the debt against Arrow. The Challenge Parties seek to recharacterize or avoid it because the intercreditor relationship between BSA and Arrow is a sham and should not form the basis for a $350 million mortgage on the Summit Property for the benefit of JPM. Perhaps most egregiously, the interest rate on the note is 0% and for many years had no maturity date at all. Unsecured tort claimants would benefit by detaching the mortgage on the Summit Property and treating that valuable asset as unencumbered. Yet, despite having stipulated away all of their rights through the Final Cash

4

Collateral Order, the Debtors fervently defend the sanctity of BSA's "loan" to Arrow, as does

JPM.  The extent and ferocity of these objections actually prove the Challenge Parties' point that

there are some real issues here that need to be thoroughly addressed as part of a duly-filed

adversary proceeding.

8.       In sum, JPM's and the Debtors' objections to the Motion are self-serving

and self-fulfilling position statements that fail to address the crux of the problem:  JPM

unilaterally imposed, and then refused to extend, the Challenge Period on the Challenge Parties,

each of whom hold material and meritorious claims as reflected in the Proposed Complaint.  The

Challenge Parties are entitled to standing with respect to these matters and to have their day in

court.  The alternative is that all such claims will be deemed waived by virtue of the terms of the

Final Cash Collateral Order.

## LEGAL AUTHORITY & ARGUMENT

9.       The legal standard for granting derivative standing is comparatively low,

especially where (as here) the Challenge Parties are estate fiduciaries who are merely fulfilling

their statutory role in maximizing the value of estate assets consistent with the challenge

provisions of the Final Cash Collateral Order.  The Debtors have already abdicated their

responsibility to investigate JPM's liens and claims, leaving only the Challenge Parties and the

UCC to assert them.  The UCC, moreover, has assiduously protected its right to fully litigate all

claims against JPM in the event the effectiveness of the plan does not occur.

10.      In deciding whether there is a colorable claim, the court should undertake

the same analysis as when a defendant moves to dismiss a complaint for failure to state a

claim.  *In re Optim Energy, LLC*, No. 14-10262 (BLS), 2014 Bankr. LEXIS 2155, at *17-18

(Bankr. D. Del. May 13, 2014); *In re Centaur, LLC*, 2010 Bankr. LEXIS 3918, 2010 WL

4624910, at *4 (Bankr. D. Del. Nov. 5, 2010).  The motion to dismiss standard is well known: "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

11.     Pleading requirements are further relaxed where the defendant controls the requisite factual information, as is the case here.  For instance, BSA has the information necessary to assess the nature of its relationship with Arrow.  "Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed.  Nevertheless, even when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."  *Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller*, 311 F.3d 198, 216 (3d Cir. 2002).

12.     The Proposed Complaint easily meets the foregoing standard.  The Challenge Parties, consistent with their statutory duties as estate fiduciaries and the customary challenge provisions of the Final Cash Collateral Order, have thoroughly investigated the liens and claims asserted by JPM against the Debtors' estates and have concluded that certain assets are unencumbered or unperfected.  The Challenge Parties proposed a stipulation to JPM to acknowledge the Committee's findings and to preserve rights.  JPM refused to agree to anything, except for piecemeal extensions of the Challenge Period.  Ultimately, JPM refused to extend the Challenge Period beyond March 12, 2021, and the Challenge Parties were required to file the Motion and the Proposed Complaint.

13.     In its response to the Motion, JPM for the first time admits that it has no security interest in the Debtors' commercial tort claims and no lien on their leased real estate. *See* JPM's objection at p. 30.  It took the filing of the Motion for JPM to make even that modest admission, which JPM previously refused to acknowledge in the context of a proposed stipulation.  JPM then expounds through a 55-page self-serving brief why the Challenge Parties' allegations lack specificity or merit.  The Debtors also take the opportunity, notwithstanding that they have already stipulated away all of their rights vis-à-vis JPM under the Final Cash Collateral Order, to object to the Motion, even though the Challenge Parties' sole objective is to maximize recoveries for unsecured tort claimants.

A.     **The Claims in the Proposed Complaint are So Colorable That the Debtors, JPM, and the UCC Have Already Attempted to Settle Them**

14.     JPM and the Debtors argue, on the one hand, that the claims asserted in the Proposed Complaint are "a waste of time," yet, on the other hand, they have agreed to comprehensively resolve the same claims through the UCC Settlement.  In fact, not only did the same claims asserted by the Challenge Parties prove sufficiently meritorious to reach a global compromise, but they are sufficiently valuable that they are not yet waived and released. Instead, JPM has agreed to indefinitely toll the Challenge Period for the benefit of the UCC with respect to such claims pending confirmation of an agreed chapter 11 plan.

15.     As stated in the Settlement Term Sheet attached to the First Mediators' Report dated March 1, 2021:

> If the Amended Plan does not incorporate the terms of this Settlement Term Sheet or is not otherwise reasonably acceptable to the UCC with respect to the provisions of the Amended Plan that impact the constituency represented by the UCC, the UCC shall have a right to:

    o   Challenge JPM's liens and litigate all claims asserted in the Challenge Complaint [*which includes the same claims asserted in the Proposed Complaint and more*].

    o   Challenge, dispute, contest, and/or litigate: (i) the allowance of any interest (or default rate interest) paid or accrued under the Prepetition Loan Documents, as defined in the [Final] Cash Collateral Order; (ii) the accuracy of the calculation of the amount of any principal, interest, fees, costs or charges paid or accrued under the Prepetition Loan Documents; (iii) the reasonableness pursuant to section 506(a) of the Bankruptcy Code of the amounts of any fees, costs, or charges to the extent provided for under the Prepetition Loan Documents, (iv) any adequate protection or diminution claim that may be asserted by JPM against the Debtors' estates, and (v) any and all other claims or rights available to the UCC under bankruptcy and other applicable law.

*See* UCC Settlement at p. 7.

16.    Through the Motion, the Challenge Parties seek standing to pursue ***the same claims*** that JPM and the Debtors agreed would form the basis for a consensual plan with the UCC, but would nonetheless be preserved in order to assure confirmation of that consensual plan on terms consistent with the UCC Settlement.

17.    In fact, in its joinder, the UCC firmly disagrees with the Debtors and JPM "regarding the merits of the claims asserted in the Standing Motion and whether such claims are colorable." UCC's joinder at p. 3. Rather, those claims resulted in a global settlement that was "favorable to the estates." UCC's joinder at p. 2. Incongruously and inexplicably, according to JPM, there is "little, to no, likelihood of success on the merits," if the very same claims are raised by the Challenge Parties. JPM's objection at p. 2.

**B.    The Intercompany Note and Intercompany Deed of Trust Pledged in Favor of JPM Are a Sham Transaction**

18.    The status of the Intercompany Deed of Trust on the Summit Property in favor of BSA from Arrow is a primary example of the colorable claims that the Challenge Parties

seek standing to pursue.  As alleged in the Proposed Complaint, Arrow was formed in 2009 to

acquire and develop the Summit Property for the exclusive support and benefit of BSA.  The

board of directors of Arrow is appointed solely by BSA.  Upon its liquidation or dissolution, all

property and assets of Arrow after the payment of its debts and obligations are distributable

solely to BSA.  Arrow, thus, is effectively owned and controlled by BSA.

19.     The original Intercompany Note was made in June 2010 in the amount of

$50 million.  The original Intercompany Note had no maturity date, but was due and payable

within 30 days of written demand by BSA.  Over time, as BSA funded the acquisition,

development, and operation of the Summit Property, the intercompany balance between Arrow

and BSA grew significantly.  In fiscal year 2011, the intercompany balance was roughly $77

million.  By 2012, the balance exceeded $200 million.  In each fiscal year between 2013 and

2018, the balance exceeded $300 million.  Before March 2019, BSA never demanded that the

original note be revised to match the then current amount of intercompany borrowings, nor did

BSA ever demand payment on the note.

20.     In March 2019, the Intercompany Note was amended to increase the

outstanding principal balance to $350 million.  The amended Intercompany Note now has a

maturity date of March 31, 2029, and an interest rate of 0% per annum.  The amended

Intercompany Note does not provide for any principal or interest payments prior to maturity.

The basis for the principal amount outstanding under the Intercompany Note, or the reasons why

it was amended from $50 million to $350 million, has not been satisfactorily explained by the

Debtors.

21.     The Challenge Parties seek standing to pursue a declaratory judgment that

the Intercompany Note should be recharacterized as an equity or capital contribution made by

BSA to Arrow or, in the alternative, avoiding certain fraudulent transfers made under the Intercompany Note by BSA to Arrow.  To the extent Arrow is an affiliate of BSA, the ostensible debt due under the Intercompany Note should be recharacterized as a contribution of capital by BSA to Arrow and the Intercompany Deed of Trust would, accordingly, cease to secure an enforceable debt.  Alternatively, to the extent Arrow is not an affiliate of BSA, the transfers made by BSA to Arrow pursuant to the Intercompany Note should be avoided as fraudulent transfers and BSA should recover the value of such transfers, or the Summit Property, for the benefit of its estate.

        22.      The foregoing are colorable claims because, on its face, the Intercompany Note and the associated Intercompany Deed of Trust are a sham transaction.  There is no legitimate debt obligation for the Summit Property to secure and nothing against which JPM can legitimately assert a lien.  The Challenge Parties should have a chance to prove this tenet through an adversary proceeding.  The Debtors assert that the Intercompany Note is a "highly-specialized promissory note and mortgage" that was structured as debt.  JPM also relies on the documentation underlying the Intercompany Note to argue that it should be treated as legitimate debt.  However, neither the Debtors nor JPM can overcome the blatant fact that the Intercompany Note has an interest rate of 0% and no payments of principal have previously been made, can be made, or will ever be made by Arrow on the note.  The Intercompany Note and the Intercompany Deed of Trust are capital infusions pure and simple.  As to the Challenge Parties' alternative avoidance claims, the Intercompany Note was increased by $300 million in March 2019, within one year of the filing of these bankruptcy cases, to reflect the advances made by BSA in favor of Arrow with respect to the Summit Property.  All such advances were made

while BSA was insolvent and the transfer of the Summit Property itself should therefore be avoided.

23.    Ultimately, the removal of the mortgage against the Summit Property will render that asset unencumbered for the benefit of unsecured tort claimants, which is a clear benefit to these estates.

24.    As to the remaining challenge causes of action asserted in the Proposed Complaint, the Motion is not the time for this Court to rule on the substance of those causes of action (*i.e.*, whether something is encumbered or unencumbered or should be rendered unencumbered). All factual allegations by the Challenge Parties must be accepted as true and the legal points is dispute can be addressed later through the adversary process.[6]

## C.    The Debtors Have Waived the Actions That the Challenge Parties Seek to Pursue

25.    The Debtors also assert that they have not unjustifiably refused to pursue any viable actions because the Debtors have already settled with the UCC and JPM as encompassed in the Debtors' proposed chapter 11 plan. This position assumes, first, that the Debtors can settle away the claims reserved specifically for the Challenge Parties under the Final Cash Collateral Order (which the Debtors most assuredly cannot), and, second, that the plan (and the embedded UCC Settlement) will be confirmed as proposed. The Challenge Parties have extensive objections to the plan and do not believe that it will be confirmed in its present form.

26.    Further, notwithstanding the Debtors' confidence in their plan and the UCC Settlement, the Challenge Parties had a fixed Challenge Period in which to assert a challenge, which period JPM flatly refused to extend. Given that the Debtors had no intention to, and could not under the Final Cash Collateral Order, assert any challenges to JPM's liens or

---

[6] The Debtors claim the Proposed Complaint is "impossible to decipher" because it uses the undefined term "Prepetition Collateral." That term, however, is taken directly from the Final Cash Collateral Order. *See* Final Cash Collateral Order ¶ D(viii), p. 8.

11

claims or to affirmatively waive BSA's rights under Intercompany Note and the Intercompany Deed of Trust, the Challenge Parties had no choice but to file the Standing Motion before the Challenge Period expired.

27.     For this same reason, contrary to the UCC's position, the Motion is not premature, nor is there any reason to adjourn it.  The Challenge Parties are entitled to a determination of the extent of JPM's liens and claims prior to the confirmation hearing, if possible.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

28.     Based upon the foregoing, the Challenge Parties should be granted standing, on behalf of the Debtors' estates, to pursue and/or compromise the claims set forth in the Proposed Complaint (as it may be amended).

DOCS_SF:105472.2 85353/002

Dated:  May 14, 2021                    PACHULSKI STANG ZIEHL & JONES LLP

                                        */s/ James E. O'Neill*
                                        James E. O'Neill (DE Bar No. 4042)
                                        James I. Stang (CA Bar No. 94435)
                                        Maxim B. Litvak (CA Bar No. 215852)
                                        John W. Lucas (CA Bar No.271038)
                                        919 North Market Street, 17th Floor
                                        P.O. Box 8705
                                        Wilmington, DE  19899 (Courier 19801)
                                        Telephone: 302-652-4100
                                        Facsimile:  302-652-4400
                                        E-mail:  joneill@pszjlaw.com
                                                 jstang@pszjlaw.com
                                                 mlitvak@pszjlaw.com
                                                 jlucas@pszjlaw.com

                                        *Counsel for the Official Tort Claimants' Committee*

Dated:  May 14, 2021                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                        */s/ Robert S. Brady*
                                        Robert S. Brady (No. 2847)
                                        Edwin J. Harron (No. 3396)
                                        Sharon M. Zieg (No. 4196)
                                        Sara Beth A.R. Kohut (No. 4137)
                                        Rodney Square
                                        1000 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone: (302) 571-6600
                                        Facsimile: (302) 571-1253
                                        Email: rbrady@ycst.com
                                               eharron@ycst.com
                                               szieg@ycst.com
                                               skohut@ycst.com

                                        *Counsel to the Future Claimants' Representative*