# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. 341, 3161<br><br>Hearing Date: May 19, 2021 at 10:00 a.m. (ET) |

**DEBTORS' RESPONSE TO CENTURY'S MOTION TO AMEND THE COURT'S ORDER (I) APPROVING PROCEDURES FOR (A) INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF RETAINED PROFESSIONALS AND (B) EXPENSE REIMBURSEMENT FOR OFFICIAL COMMITTEE MEMBERS AND (II) GRANTING RELATED RELIEF [DKT. NO. 341]**

Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this response to Century's motion [D.I. 3161] (the "Motion") to amend the Court's *Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* [D.I. 341] (the "Compensation Procedures Order").[2] In support of this response, the Debtors respectfully state as follows.

1.   The Debtors wholeheartedly agree that the professional fees in these non-profit chapter 11 cases must be closely managed and minimized, wherever possible. The Debtors have repeatedly acknowledged the need to emerge from bankruptcy as expeditiously as possible dating

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]   All terms that are capitalized but not otherwise defined in this response have the meanings ascribed to such terms in the Compensation Procedures Order.

as far back as the first day of these cases, in large part due to the strain that restructuring fees would put on the Debtors' ability to equitably compensate abuse survivors and successfully carry out their charitable mission post-emergence.[3]  Moreover, the Debtors cited mounting and unsustainable professional fees at the March 17, 2021 omnibus hearing as one of the principal reasons for their summer 2021 confirmation timeline.[4]  The Debtors' need to emerge from bankruptcy quickly is therefore not a "sudden" effort to "fast-track the case," as Century has asserted.  *See* Motion at 1–2.  The Debtors have been consistently clear about this imperative.

2. As the Debtors have observed in previous pleadings, one of the primary drivers of the fees in these cases has been Century itself.  The centerpiece of Century's litigation strategy has been the filing of meritless objections and appeals that serve only to dissipate valuable estate resources, distract the Debtors and their professionals, and delay the Debtors' restructuring efforts.  By way of limited example, Century has appealed the Court's bar date order to the Delaware District Court, where it was affirmed, and is now appealing the bar date order to the Third Circuit.  Century also unsuccessfully appealed the Court's orders authorizing the Debtors to retain both

---

[3] *See Debtors' Informational Brief* [D.I. 4], at 7 ("A prolonged bankruptcy case would erode public confidence in the BSA, jeopardize its ability to operate, and potentially deprive America's youth of the ability to participate in Scouting.  A prolonged chapter 11 case would also deplete the assets available to compensate abuse victims."); *id.* at 7–9 (detailing numerous steps the Debtors had taken upon or before the commencement of these cases "to promote the expeditious and efficient execution of their reorganization proceedings").

[4] *See* Hr'g Tr. 14:19–15:7 (Jessica C. Lauria: "From our perspective it is important that we maintain an emergence by the end of summer 2021 for a lot of reasons.  We kick-off recruiting, in earnest, in the fall.  The debtors need to put this bankruptcy matter behind them.  We have talked in the past about liquidity concerns, financial concerns with the bankruptcy case.  Suffice it to say, the case has cost the debtors . . . upwards of $100 million.  With the litigious environment that we are finding ourselves [in], the case is running around $10 million a month from an estate cost perspective."); *id.* 46:16–21 (Mar. 17, 2021) (Ms. Lauria: "By the time we get to August, we're estimating [accrued professional fees will] be around $150 million.  That's just . . . not right for a nonprofit case.  And we are trying to reign [sic] that in with the mediation process.").

their current and former lead restructuring counsel.[5] In total, Century has filed objections or joined in motions to reconsider approximately twenty (20) separate matters in these cases. As a result, a material proportion of the professional fees billed to the estates in these cases is attributable to Century.

3. In large and complex bankruptcy cases such as these, debtors invariably incur significant restructuring fees. These cases are no exception.[6] Nevertheless, neither these cases nor the Debtors are typical in any sense. The Debtors are charitable non-profit corporations, and their status therefore requires particular sensitivity to the accrual of professional fees. As a recognition of the Debtors' non-profit status, their lead restructuring counsel, White & Case LLP, has taken voluntary reductions of fees totaling more than $1,155,000 prior to submitting its applications for compensation, including a reduction of approximately $695,000 that will be incorporated in the firm's forthcoming application for March 2021. The core members of the Debtors' legal team—Jessica Lauria, Michael Andolina, and Matthew Linder—began transitioning their practices to White & Case from Sidley Austin LLP as of September 2020, and White & Case has elected to charge the estates only for this core team's attendance at omnibus hearings, mediation, and board meetings. Moreover, as noted in the response to the Motion filed

---

[5] Although Debtors' lead counsel voluntarily agreed not to charge the Debtors' estates for the cost of defending the retention applications, counsel to the Official Tort Claimants' Committee (the "TCC"), the Official Committee of Unsecured Creditors (the "UCC"), and the Future Claimants' Representative (the "FCR") attended the hearings on the retention matters, and the associated fees were charged to the estates.

[6] Although the reasonableness of professional fees is not presently before the Court, the billing rates of which Century complains are customary rates in the market for similar services, as set forth in each of the Debtors' professional retention applications. Moreover, the rates that Century cites as purported evidence of unreasonable fees in these cases are either from 10 years ago (*Wilmington Diocese*), from significantly smaller abuse cases involving law firms that do not charge comparable rates (*Diocese of Buffalo* and *Rockville Diocese*), or cherry-picked from a single fee application from a more recent abuse case (*USA Gymnastics*). The Debtors and their professionals reserve all of their respective rights regarding the reasonableness of the professional fees charged in these cases.

their current and former lead restructuring counsel.[5] In total, Century has filed objections or joined in motions to reconsider approximately twenty (20) separate matters in these cases. As a result, a material proportion of the professional fees billed to the estates in these cases is attributable to Century.

3. In large and complex bankruptcy cases such as these, debtors invariably incur significant restructuring fees. These cases are no exception.[6] Nevertheless, neither these cases nor the Debtors are typical in any sense. The Debtors are charitable non-profit corporations, and their status therefore requires particular sensitivity to the accrual of professional fees. As a recognition of the Debtors' non-profit status, their lead restructuring counsel, White & Case LLP, has taken voluntary reductions of fees totaling more than $1,155,000 prior to submitting its applications for compensation, including a reduction of approximately $695,000 that will be incorporated in the firm's forthcoming application for March 2021. The core members of the Debtors' legal team—Jessica Lauria, Michael Andolina, and Matthew Linder—began transitioning their practices to White & Case from Sidley Austin LLP as of September 2020, and White & Case has elected to charge the estates only for this core team's attendance at omnibus hearings, mediation, and board meetings. Moreover, as noted in the response to the Motion filed

---

[5] Although Debtors' lead counsel voluntarily agreed not to charge the Debtors' estates for the cost of defending the retention applications, counsel to the Official Tort Claimants' Committee (the "TCC"), the Official Committee of Unsecured Creditors (the "UCC"), and the Future Claimants' Representative (the "FCR") attended the hearings on the retention matters, and the associated fees were charged to the estates.

[6] Although the reasonableness of professional fees is not presently before the Court, the billing rates of which Century complains are customary rates in the market for similar services, as set forth in each of the Debtors' professional retention applications. Moreover, the rates that Century cites as purported evidence of unreasonable fees in these cases are either from 10 years ago (*Wilmington Diocese*), from significantly smaller abuse cases involving law firms that do not charge comparable rates (*Diocese of Buffalo* and *Rockville Diocese*), or cherry-picked from a single fee application from a more recent abuse case (*USA Gymnastics*). The Debtors and their professionals reserve all of their respective rights regarding the reasonableness of the professional fees charged in these cases.

their current and former lead restructuring counsel.[5] In total, Century has filed objections or joined in motions to reconsider approximately twenty (20) separate matters in these cases. As a result, a material proportion of the professional fees billed to the estates in these cases is attributable to Century.

3. In large and complex bankruptcy cases such as these, debtors invariably incur significant restructuring fees. These cases are no exception.[6] Nevertheless, neither these cases nor the Debtors are typical in any sense. The Debtors are charitable non-profit corporations, and their status therefore requires particular sensitivity to the accrual of professional fees. As a recognition of the Debtors' non-profit status, their lead restructuring counsel, White & Case LLP, has taken voluntary reductions of fees totaling more than $1,155,000 prior to submitting its applications for compensation, including a reduction of approximately $695,000 that will be incorporated in the firm's forthcoming application for March 2021. The core members of the Debtors' legal team—Jessica Lauria, Michael Andolina, and Matthew Linder—began transitioning their practices to White & Case from Sidley Austin LLP as of September 2020, and White & Case has elected to charge the estates only for this core team's attendance at omnibus hearings, mediation, and board meetings. Moreover, as noted in the response to the Motion filed

---

[5] Although Debtors' lead counsel voluntarily agreed not to charge the Debtors' estates for the cost of defending the retention applications, counsel to the Official Tort Claimants' Committee (the "TCC"), the Official Committee of Unsecured Creditors (the "UCC"), and the Future Claimants' Representative (the "FCR") attended the hearings on the retention matters, and the associated fees were charged to the estates.

[6] Although the reasonableness of professional fees is not presently before the Court, the billing rates of which Century complains are customary rates in the market for similar services, as set forth in each of the Debtors' professional retention applications. Moreover, the rates that Century cites as purported evidence of unreasonable fees in these cases are either from 10 years ago (*Wilmington Diocese*), from significantly smaller abuse cases involving law firms that do not charge comparable rates (*Diocese of Buffalo* and *Rockville Diocese*), or cherry-picked from a single fee application from a more recent abuse case (*USA Gymnastics*). The Debtors and their professionals reserve all of their respective rights regarding the reasonableness of the professional fees charged in these cases.

by the TCC, its lead law firm has agreed to contribute 10% of its allowed fees to any fund that is ultimately established for the benefit of abuse survivors.[7] These concessions are appropriate acknowledgments of the unique nature of these cases, both in terms of the composition of the non-profit estates and the abuse claims at issue. Accordingly, Century's assertion that the parties have failed to "take any action to set limits on professional fees, enforce budgets, discount rates, [or] limit duplication of work" are erroneous. *See* Motion at 3.

4.      After reviewing the Motion, the Debtors conferred with and obtained the consent of the professionals representing each of Debtors, the TCC, the UCC, and the FCR to the relief requested by Century on the terms set forth in the revised proposed order attached to this response as **Exhibit A** (the "Revised Proposed Order"). The operative provision of the Revised Proposed Order deletes the provision of the Compensation Procedures Order that authorizes the Debtors to pay the 20% holdback upon the entry of an order of the Court allowing an Interim Fee Application and replaces it with the following language:

> Upon the entry of an order granting a Professional's Interim Fee Application, the Debtors shall deposit the 20% holdback in a segregated restructuring fee reserve (the "Fee Holdback Reserve") pending entry of an order of the Court granting such Professional's Final Fee Application. Upon the earlier of (a) entry of an order of the Court granting the Professional's Final Fee Application and (b) entry of an order of the Court restoring the original provisions of the Compensation Procedures Order, the Debtors will be authorized to promptly pay such Professional 100% of its fees and expenses allowed on a final basis but not previously paid, which final fees and expenses shall be paid first from such Professional's allocated share of the Fee Holdback Reserve. For the avoidance of doubt, no portion of the funds held in the Fee Holdback Reserve may be disbursed by the Debtors pending further order of the Court. Notwithstanding the foregoing, upon entry of an order granting an Interim Fee Application for counsel to the Official Tort Claimants' Committee, Pachulski Stang Ziehl & Jones ("PSZJ"), the Debtors shall (i) deposit into the Fee Holdback Reserve an amount equal to one-half of PSZJ's 20% holdback (*i.e.*, 10% of PSZJ's fees allowed on an interim basis) and (ii) remit to PSZJ the remaining

---

[7] *See Response of the Tort Claimants' Committee to Century's Motion to Amend the Court's Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* [D.I. 3775], at ¶ 5.

4

> 10% holdback on an interim basis; *provided*, that PSZJ shall deposit such 10% holdback into a client trust account for contribution, subject to entry of an order of the Court granting PSZJ's Final Fee Application or entry of an order of the Court restoring the original provisions of the Compensation Procedures Order, to the fund established in the Debtors' chapter 11 cases to compensate survivors of sexual abuse in accordance with the agreement set forth in its retention application.

The Revised Proposed Order also permits the Professionals to retain the 20% holdbacks paid under any order of the Court entered prior to the date of entry of the Revised Proposed Order and under any further order granting an Interim Fee Application that is pending before the Court as of such date. The Debtors submit that the foregoing provisions are appropriate for the reasons set forth herein and should be approved.

WHEREFORE, the Debtors respectfully request that the Court grant the Motion on the terms set forth in the Revised Proposed Order and any further relief the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 14, 2021
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
 aremming@morrisnichols.com
 emoats@morrisnichols.com
 ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
 mlinder@whitecase.com
 laura.baccash@whitecase.com
 blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION