**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 19, 2021 at 10:00 a.m. (ET)** |
| | **Re: D.I. 2618, 2655, 3708, 3747, 3771, 3739, 3794, 3799, 3806, 3816, 3855, 3859, 3928** |

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO MOTION FOR ENTRY OF ORDER (I) SCHEDULING CERTAIN DATES AND DEADLINES IN CONNECTION WITH CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION, (II) ESTABLISHING CERTAIN PROTOCOLS, AND (III) GRANTING RELATED RELIEF

Boy Scouts of America ("BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), hereby reply to the objections filed by: (i) National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities;[2] (ii) American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company;[3] (iii) Liberty Mutual Insurance Company and its affiliates and subsidiaries;[4] (iv) Great

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

[2]  *Limited Objection of the AIG Companies to Debtors' Motion for Entry of an Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Procedures, and (III) Granting Related Relief* [D.I. 3708] ("AIG Objection").

[3]  *Zurich Insurers' Objections to Debtors' Proposed Confirmation Schedule* [D.I. 3747].

[4]  *Response of Liberty Mutual Insurance Company to the Debtors' Motion for Entry of an Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief and Limited Joinder* [D.I. 3794].

American Assurance Company, f/k/a Agricultural Insurance Company, Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company and Great American E&S Insurance Company;[5] (v) the Official Committee of Tort Claimants, the Coalition of Abused Scouts for Justice, and James L. Patton, Jr., the Future Claimants' Representative;[6] and (vi) Century Indemnity Company, as successor to CC Insurance Company, as successor to Insurance Company of North America, Old Republic Insurance Company, and Arrowood Indemnity Company, formerly known as Royal Indemnity Company[7] (collectively, the "Objections")[8] to the *Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 2618] (the "Confirmation Scheduling Motion" or "Motion"),  and in support thereof state as follows:

## INTRODUCTION

1.    The Debtors filed the Confirmation Scheduling Motion to jump-start the process of setting dates, deadlines, and related procedures in connection with confirmation, so that discovery and other pre-hearing proceedings can be conducted as fairly and efficiently as possible, with the

---

[5]    *Great American's Objection and Joinder in Objections to Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 3799].

[6]    *Objection of the Official Committee of Tort Claimants, the Coalition of Abused Scouts for Justice, and the Future Claimants' Representative to the Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 3816] (the "TCC/Coalition/FCR Objection").

[7]    *Certain Insurers' Opposition to Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 3859] (the "Century/Old Republic/Arrowood Objection").

[8]    Additional parties have filed joinders to the Objections, to which the Debtors also hereby reply.  *See* D.I. 3771, 3739, 3806, 3855, 3859.

goal of ensuring abuse survivors receive equitable compensation and the Debtors emerge from bankruptcy to continue their charitable mission as promptly as possible.

2.      With and since filing the Confirmation Scheduling Motion, the Debtors have encouraged parties in interest to provide input regarding the schedule and related procedures, and welcomed initial formal discovery requests concerning the Plan[9] and related issues.  The Debtors have diligently pursued their objective of working together with other parties to maximize consensus surrounding the Plan and proposed Confirmation Scheduling Order.

3.      As part of the Debtors' efforts, shortly after filing the Confirmation Scheduling Motion, the Debtors provided further developing information regarding the Plan and the Debtors' proposed schedule to various parties in interest.  *See Letter re: Debtors' Proposed Confirmation Scheduling Order* dated April 21, 2021, attached hereto as **Exhibit A**.  The letter reiterated the Debtors' desire to work with parties to determine a fair and appropriate schedule and related protocols, specifically encouraged parties not to wait in propounding discovery requests, and invited parties to a group meet and confer, which was held on April 23, 2021.

4.      Since then, the Debtors have continued to move discovery forward.  Since the filing of the Confirmation Scheduling Motion, the Debtors have added 348 documents totaling 2,333 pages to the data room.  This brings the total number of documents in the data room to over 45,000, comprising approximately 713,000 total pages.   Debtors have also received and provided expedited responses to various discovery requests, including 33 numbered interrogatories (actually amounting to nearly 100 when counting discrete subparts), 26 requests for production, and 5 requests for admission concerning the Plan and potential related issues.[10]   The Debtors also

---

[9]    Capital terms used but not defined herein have the meanings set forth in the Confirmation Scheduling Motion, unless otherwise indicated.

[10]   The TCC, Coalition, and FCR's requests were repeatedly duplicative, and so, among other things, the Debtors advised that they would only answer requests once, and then referenced back to the applicable request.  For

immediately proposed a meet and confer with the TCC, Coalition, and FCR, which propounded those requests, to discuss the appropriate scope of information to be provided, so materials can be shared as quickly and efficiently as possible.  Indeed, instead of refusing to provide information even where requests were plainly objectionable—like requests for over 110 years' worth of records, across scores of discrete categories, maintained or controlled by any party that could be considered an agent or affiliate of the Debtors—the Debtors opted to encourage further discussion to try to identify priority items and bridge divides.  Through this, and other efforts amongst interested parties, the Debtors are proceeding at a pace and in a manner appropriate to support the requested schedule, including reaching confirmation by the end of summer.

5.      It is critically important that these Chapter 11 Cases progress, and now is the right time to consider scheduling so that the confirmation process can continue to move forward immediately upon approval of the Disclosure Statement.  Accordingly, the Court should grant the Debtors' requested relief of setting a schedule and related procedures, and any such other or further relief necessary to protect parties' rights, ensure order and discipline, and discourage distractions that only frustrate the Debtors' reorganization and delay and diminish recoveries available to abuse survivors.

---

example, the TCC, Coalition, and the FCR requested production of "[a]ll documents between the Debtors and any insurer under an Insurance Policy Concerning an Abuse Claim."  They also served interrogatories requesting the Debtors' to "[i]dentify all documents between the Debtors and any insurer under an Insurance Policy Concerning an Abuse Claim."  They repeated this for all 16 requests identified as estimation discovery.

Moreover, although the TCC, Coalition, and FCR styled certain requests as estimation discovery, in substance they are seeking plan discovery.  For example, they requested information regarding historical claims against the Debtors, which is not necessary to decide the Estimation Motion, but instead relates to issues anticipated to be raised at confirmation.  The TCC, Coalition, and FCR recognized this by stating that their requests related to "any proceedings . . . related to estimation issues in any forum in connection with the Debtors' chapter 11 cases, including in connection with the Estimation Motion or plan confirmation."  Nevertheless, the Debtors still provided expedited responses, in half the time allotted to them under the Rules.

## ARGUMENT

### I.    The Debtors Have Proposed Appropriate Procedures for Confirmation

6.      By the Confirmation Scheduling Motion, the Debtors seek to establish additional dates, deadlines, and procedures in connection with confirmation beyond those already set out in the Plan, Disclosure Statement, and related filings.

### A.    General Dates and Deadlines Proposed in the Motion

7.      The dates and deadlines proposed in the Confirmation Scheduling Motion are specifically relevant to the discovery and pre-hearing process.    The Debtors filed the Confirmation Scheduling Motion to provide a framework of deadlines to help guide the parties.    These include typical deadlines like those for propounding and responding to written discovery, taking depositions, and providing expert reports.

8.      This is a complex case, involving numerous parties, requiring clear guidance from the Court regarding how matters should progress.  It is essential that the Court hear and decide at this stage what the lead up to confirmation should look like, to allow the Parties to move forward with ongoing discovery and prevent undue delay and expense in bringing these cases to a close. The Debtors' Confirmation Scheduling Motion squarely opens up the conversation regarding what that process must look like to enable the Debtors to emerge by as soon as September 2021, which is necessary for financial and other operational reasons.[11]

### B.    The Proposed Additional Discovery for Non-Binding Estimation

9.      The Debtors have also proposed, through the Plan, that this Court estimate the Debtors' aggregate liability on account of Direct Abuse Claims in connection with confirmation.

---

[11]    *See, e.g., Debtors' Third Motion for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 2411] ¶ 2, *Debtors' Reply in Further Support of Debtors' Third Motion for Entry of an Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Appearances Thereof*, [D.I. 4100] ¶ 20.

Plan Art. V.T.  Under the Plan, the Debtors would offer evidence at the Confirmation Hearing to support an aggregate valuation of those liabilities, and other parties would be permitted to submit evidence in support or dispute of the evidence offered by the Debtors.  This would aid the Court in its determination of issues relevant to confirmation, including whether settlements contemplated by the Plan are fair and reasonable.  *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005); *In re G-I Holdings, Inc.*, No. 09-CV-05031 (GEB), 2009 U.S. Dist. LEXIS 108339 at *99, (D.N.J. Nov. 12, 2009).

10.    What the Debtors are proposing should not be controversial.  Other parties agree there must be some mutual understanding of what the process will be. This is evidenced by the fact that none of the Objections take issue with the idea of a schedule.  Rather, as is to be expected, there are differing views on what exactly the confirmation process should look like, including surrounding estimation issues.[12]  But it is hardly surprising that evidence, in some form, of the aggregate value of Direct Abuse Claims against the Debtors could be relevant to confirmation issues and should be the subject of discovery.  What the Debtors are suggesting through the

---

[12]    *See Motion of the Future Claimant's Representative, The Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 11 U.S.C. §§ 105(a) and 502(c), (I) Authorizing an Estimation of Current and Future Abuse Claims and (II) Establishing Procedures and Schedule for Estimation Proceedings* [D.I. 2391] ("Estimation Motion").  The same parties also filed a motion seeking to withdraw the reference with respect to their requested estimation.  *See Motion of the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice for Entry of an Order, Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), Withdrawing the Reference of Proceedings Involving Personal Injury Claims*  [Case No. 21-cv-00392 (D. Del.), D.I. 1] (the "Motion to Withdraw the Reference"). The Debtors oppose the relief requested in both the Motion to Withdraw the Reference and the Estimation Motion and filed objections to the Estimation Motion, *see Debtors' Objection to the Future Claimant's Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice's Motion for Entry of an Order, Pursuant to 11 U.S.C. § 105(a) and 502(c), (I) Authorizing an Estimation of Current and Future Abuse Claims and (II) Establishing Procedures and Schedule for Estimation Proceedings* ("Debtors' Estimation Objection") [D.I. 2612] and the Motion to Withdraw the Reference.  *See Debtors' Answering Brief in Opposition to the Future Claimants' Representative, the Official Committee of Tort Claimants, and the Coalition of Abused Scouts for Justice's Motion for Entry of an Order, Pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a), Withdrawing the Reference of Proceedings Involving the Estimation of Personal Injury Claims,* [Case No. 21-cv-00392 (D. Del.), D.I. 15] ("Debtors' Objection to Withdrawal of Reference").  A hearing before this Court on the Estimation Motion is scheduled for May 19, 2021 at 10:00 a.m. ET, the same time as the Disclosure Statement hearing.

Confirmation Scheduling Motion is simply that if such evidence will be necessary as any part of the confirmation process, steps should be taken at this stage—now that proofs of claim have been submitted, analyses have been conducted, the Plan and Disclosure Statement have been filed, and the Disclosure Statement will soon be heard—to firm up that process and help the parties proceed with related discovery, including from individual claimants, as soon as possible.

11.    Contrary to suggestions by objecting parties, *see* AIG Objection ¶¶ 13-18; Century/Old Republic/Arrowood Objection ¶¶ 9-14, the Debtors are not proposing any estimation for purposes of allowance, distribution, or which would be binding on insurers in collateral proceedings.  Further, the Debtors have made clear they oppose the estimation sought by the TCC, Coalition, and FCR, which is neither required under 11 U.S.C. § 502(c) nor appropriate on any grounds.[13]  Instead, as described further in the Confirmation Scheduling Motion and in the Plan and Disclosure Statement, the Debtors propose that this Court consider evidence of the aggregate value the Debtors' liabilities for Direct Abuse Claims for the purposes of and in connection with confirmation.   Indeed, the proposed amendments to the Plan include the following clarifying language regarding the estimation:

> For the avoidance of doubt, nothing contained in the Plan, the Plan Documents, the Confirmation Order, the Affirmation Order, or any findings of fact, conclusions of law or other determinations made in connection therewith (including any estimation or valuation of Abuse Claims or the Debtors' liability for Abuse Claims, either individually or in the aggregate, pursuant to Article V.T or pursuant to any other order or agreement entered in the Chapter 11 Cases) shall: (x) operate to require any Insurance Company to indemnify or pay the liability or defense costs of any Protected Party that it would not have been required to pay in the absence of the Plan, the Plan Documents, the Confirmation Order, the Affirmation Order, or of such findings, conclusions and determinations made in connection therewith (including any such estimation or valuation of Abuse Claims or the Debtors' liability for Abuse Claims); (y) establish (i) the liability of the Debtors with respect to any individual Abuse Claim or the Debtors' aggregate liability for Abuse Claims or (ii) the liquidated amount of any such Abuse Claim or Abuse Claims; or (z) impair or affect the right of any Insurance Company or other insurer or alleged insurer (i) to assert all of its

---

[13]    *See* Debtors' Estimation Objection ¶ 8; *see also* Debtors' Objection to Withdrawal of Reference at 8-9.

rights and defenses under any BSA Insurance Policy or Local Council Insurance Policy and applicable law with respect to coverage of any Abuse Claim or (ii) to assume the defense of any insured Person against any Abuse Claim in the tort system and to assert all of the insured Person's defenses to liability in connection with any such Abuse Claim.

*See Proposed Amendments to Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, Art. X.M.1.

12.     The concept of an estimation has been used flexibly in mass tort and other cases to assist the bankruptcy court in deciding confirmation issues.   *See generally In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415 (Bankr. S.D.N.Y. 2003) (using estimation to determine feasibility without adjudicating ultimate allowance).   Moreover, bankruptcy courts have significant discretion to determine the manner in which claims are estimated and may use "whatever method is best suited to the particular contingencies at issue." *Bittner v. Borne Chemical Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982); *see also In re Chi. Invs., LLC*, 470 B.R. 32, 102 (Bankr. D. Mass. 2012) (scheduling an estimation in conjunction with the evidentiary hearing on confirmation of the plan to afford the parties an opportunity to submit evidence).

13.     This process is intended to be an additional procedure beyond, and not in lieu or contravention of, the parties' default rights.[14]  The Debtors have no interest in curtailing parties' due process rights.  Instead, given the complexity of the cases, enhanced information beyond the basic requirements of the Bankruptcy Rules would benefit the parties, providing additional clarity on important issues like the expected range of claims values and propriety of settlements providing key funding for recoveries to abuse survivors.[15]

---

[14]     *See* Confirmation Scheduling Motion ¶¶ 12, 19, 22; Ex. A at 5 ("This process applies specifically to discovery from individual abuse claimants in connection with confirmation and the estimation contemplated in connection therewith, and will be in addition to the default discovery available to Parties under the Federal Rules of Bankruptcy Procedure.").

[15]     *See, e.g.*, Fed. R. Civ. P. 30 (providing 10 deposition limit); Fed. R. Bankr. P. 7030 (incorporating same in adversary proceedings); Fed. R. Bankr. P.9014(c) (providing Fed. R. Bankr. P. 7030 applies in contested matters).

14.     It is for those reasons that the Debtors have proposed the relief requested in the Confirmation Scheduling Motion.  The types of deadlines and procedures requested are not only appropriate but will prove helpful to all parties in interest and this Court.

## II.     The Debtors Have Made Clear They Intend to Work With Interested Parties to Maximize Consensus Surrounding the Scheduling Order

15.     Although the Debtors proposed a series of specific discovery and pre-hearing deadlines to begin the confirmation scheduling process, they have also made clear that further discussion of these matters would not only be necessary but was actively contemplated. Confirmation Scheduling Motion ¶ 25; Ex. A at 4-5; Estimation Objection ¶ 29.  As explained above, the Debtors have already held a group meet and confer with various parties and have otherwise maintained ongoing discussions with parties in interest regarding these issues.

16.     The Debtors have attempted to maximize the time for parties to consider these issues by filing the Motion and raising the scheduling matters in advance of the hearing on the Disclosure Statement.  Parties will have had ample time before any scheduling order is entered, which should be done concurrently with or immediately following approval of the Disclosure Statement.

## III.     Components of the Proposed Schedule Can be Adjusted to Address Legitimate Concerns

17.     The Debtors' proposed schedule and protocols can be adjusted to address fair concerns, while still maintaining the schedule's integrity and the Debtors' key goals.  The following are examples of features of the Confirmation Scheduling Motion that can be adjusted if and to the extent necessary, without compromising an end of summer Confirmation Hearing.

### A.  The Notice of Intent

18.     The Debtors propose the concept of identifying Participating Parties, including using a Notice of Intent, which is a type of construct routinely relied upon in complex bankruptcy proceedings.  *See, e.g.*, *In re Energy Future Holdings Corp., et al*, No. 14-10979, (D. Del. 2016) *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8154]  at 2 (requiring proposed participants to file a notice of intent); *In re Claire's Stores, Inc. et al*, No. 18-10584 (D. Del. 2018) *Order (I) Scheduling Certain Hearing Dates and Deadlines, (II) Establishing Certain Protocols in Connection with the Confirmation of the Debtors' Plan of Reorganization, and (III) Granting Related Relief* [D.I. 675] at 2 (same).  The Notice of Intent is designed to further important, reasonable objectives, like ensuring that Participating Parties are bound by the Protective Order, receive equal access to discovery requests and responses, follow the deadlines and procedures set by this Court, and work together in a coordinated manner leading up to confirmation.  Indeed, the TCC, Coalition, and FCR themselves proposed a Participating Parties construct in connection with their Estimation Motion, presumably for similar reasons.  *See* Estimation Motion at 17; *see also* Estimation Motion Ex. B.

19.     Certain parties have taken issue with the concept that the Mediation Parties would not need to file a Notice of Intent in order to be deemed Participating Parties.  *See*, *e.g.*, AIG Objection at 11.  Contrary to those parties' assertions, the Debtors' only objective here was to provide a convenience for parties already engaged in negotiations surrounding the Plan and related issues in these cases, and who have already assented to the Protective Order, to forego a step that was designed specifically to help identify and engage additional parties.  The goal was to take

advantage of an opportunity to reduce needless administrative expense—not trick anyone into being subject to secret preclusive effects.

20.    The Debtors submit that the mechanisms proposed are entirely proper, but are also open to discussing means to assuage concerns.  This is just one of several such points.

### B.  Claimant Discovery Procedures

21.    Another similar issue is that of particularized claimant discovery procedures. Recognizing that discovery regarding the veracity and value of Direct Abuse Claims is relevant to issues affecting confirmation, the Debtors have proposed tailored avenues for claimant discovery, and first and foremost, a discrete deadline for determining those avenues in the near term.  The Debtors have suggested interviews, under oath and subject to reasonable time limitations and other appropriate accommodations given the sensitivities, of a stratified sample of individual abuse claimants.  *See* Confirmation Scheduling Motion ¶ 22; Ex. A. at 4.  The claimant discovery is designed to aid in resolving confirmation issues including refining the range of estimated aggregate value of direct abuse proofs of claim and traversing potential explanations for what caused the number of claims to so greatly exceed the amount of cases pending prepetition as part thereof.

22.    The Debtors did not intend to, and never proposed, sole control over these procedures.  Instead, the Debtors intentionally provided flexible parameters, and requested a near-term deadline within the schedule for precise procedures to be set following other parties' input.[16] Given the potential for this point to affect the rest of the confirmation schedule, that request is not

---

[16]    For example, the Debtors also proposed that it may be helpful to have the mediators' input in formulating or administering certain procedures, but as is true more broadly, the Debtors have left this point open for further discussion amongst the parties and consideration by the Court.  Confirmation Scheduling Motion ¶ 22 ("The Debtors anticipate this process will be guided by the Mediators or their designee(s)."); *see also* Ex A. at 4 ("The Debtors appreciate the sensitivity of the topic, and look forward to discussing and establishing the most efficient, probative and respectful process possible.").

only appropriate but necessary.  The parties may disagree on the exact procedures, but the need

for a determination is clear.  That is what undergirds the Debtors' request here.[17]

### C.  Fact and Expert Discovery Deadlines

23.     As another example, the Debtors are willing to discuss adjustment to certain

deadlines relative to fact and expert discovery.  As explained above, the Debtors continue to field

discovery requests on an expedited basis, and expect other parties to move at a pace suitable for

bankruptcy proceedings, as required by the unique circumstances and stakes.[18]  The Debtors also

understand the range of concerns and sensitivities in these cases, and are willing to consider

appropriate accommodations.  Through cooperation of the parties and guidance of this Court, a

balance can be struck here.

24.     That said, the Debtors must underscore that confirmation discovery is already

underway and has been for some time now, and the schedule ultimately set, including deadlines

relative to fact and expert discovery, should acknowledge that.  As explained above, the Debtors

have fielded multiple formal discovery requests from parties and have responded to requests in

half the time afforded to them under the Bankruptcy Rules.  The Debtors fully intend to work with

---

[17]   The Debtors refute the assumptions, arguments, and conclusions made in the Declaration of David McKnight attached to the Century/Old Republic/Arrowood Objection.  Mr. McKnight primarily challenges the efficacy of the number, and length of claimant interviews in connection with Debtor's testing proposal, and remarkably concludes that the process is "unlikely to reveal any information that will be useful in estimating the sexual abuse liabilities claims." But as discussed above, that protocol remains under discussion, and BSA has not yet provided a final proposal and supporting materials regarding the sample size and protocol for claimant interviews. In that regard, Mr. McKnight's critique is at best premature. Moreover, Mr. McKnight's misses the point of the Debtor's intended process – which as clarified above and in its proposed amendments to the plan, is not intended to fix liability and particular claim or group of claims but instead to assist the Court in determining issues relevant to plan confirmation. The Debtors reserve all rights to challenge the declaration, its contents, and any related testimony.

[18]   The TCC, Coalition, and FCR allege that the Boy Scouts have flatly refused to provide any discovery relating to estimation issues.  This is false.  The TCC, Coalition, and FCR seek discovery dating back over a century covering an expansive scope of subject matter and innumerable potential custodians.  The Debtors responded in half the time afforded to them under the Bankruptcy Rules, agreeing to produce documents and information from at least the last four years, and indicating a willingness to immediately meet and confer to negotiate further productions.

the parties to further respond to requests moving forward and to consensually resolve discovery disputes wherever possible.

**IV.    These Cases Require an Expeditious Schedule**

25.    The Debtors are charitable, not for profit, organizations.  They are simply not equipped to absorb the costs of a prolonged bankruptcy in the way for-profit businesses might.  As noted in the Debtors' reply in support of their motion to extend the exclusive plan filing and solicitation periods, by the time the Debtors' confirmation hearing is scheduled to begin on August 30, 2021, even without a competing plan process and the incremental restructuring fees that would accompany that process, the total paid and accrued restructuring fees are expected to exceed $150 million.  Further prolonging the cases, for Debtors who have already faced unexpected challenges like the COVID-19 pandemic and a corresponding 81% recruitment decline in 2020 attributable to school closures and social distancing measures, will only further increase administrative burn, delay the payment of compensation to abuse survivors, and ultimately decrease the amount of funds available to fund recoveries.

26.    In this way, arguments that the Debtors could tolerate some delay without immediately collapsing miss the mark. *See* Century/Old Republic/Arrowood Objection ¶¶s 44-45 (citing Declaration of Rob Vanderbeek [D.I. 3859-2]). [19]  These cases are not myopically about cash flow.  There are higher stakes here.

27.    Certain of the objectors contend that *Imerys* and *Energy Future Holdings* ("EFH") show the Debtors' proposed schedule is untenable.  *See e.g.,* Century/Old Republic/Arrowood

---

[19]    The Debtors refute the assumptions, arguments, and conclusions made in the Declaration of Rob Vanderbeek attached to the Century/Old Republic/Arrowood Objection.  The Debtors reserve all rights to challenge the declaration, its contents, and any related testimony.

Objection ¶¶s 35-38.[20]  However, those cases involved for-profit Debtors and their own unique circumstances.   A schedule that allows the Debtors to proceed to confirmation by the end of summer is appropriate here, where the Debtors are charitable organizations, administrative expenses are already "staggering," March 17, 2021 Omnibus Hr'g Tr. 49:2-7, and abuse survivors deserve fair compensation as swiftly as possible.  Pushing the Debtors to the brink should not be the goal.

28.    The Debtors continue to remain available and willing to discuss issues regarding deadlines in the schedule to attempt to facilitate consensus.  To the extent disagreements remain, the matter is ripe for the Court to decide so matters can progress without undue delay.[21]

29.    As is typical in complex, contested restructurings, the Debtors request that this Court set additional deadlines relative to confirmation, including for the discovery and pre-hearing process.[22]  The Debtors have proposed a schedule and related procedures that they believe are appropriate under the circumstances, while also making clear that they expect, appreciate, and are open to incorporating the feedback of other parties in interest, to reach an order that allows the process to properly progress.  Should any part of the procedures prove to truly be unmanageable, the Scheduling Order specifically contemplates the parties' ability to work together to solve problems or come back to this Court for further intervention as needed.  But the need to settle on an overall framework now is critical.  Without this first step, the entire process could quickly

---

[20]  These objectors' arguments fail to hold water in any event.  As just one example, this Court made clear at the cited hearing in *Imerys* that "we ought to be moving toward confirmation" and that although a schedule "doesn't all need to be jammed into a truncated period . . . we're not going out, you know, nine months. It's not happening." *See In re Imerys Talc America, Inc.*, Case No. 19-12089 (LSS) (Bankr. D. Del.) January 21, 2021 Omnibus Hr'g Tr. 235-236.

[21]  The Debtors reserve all rights to contest matters raised in the Objections or otherwise related to the Motion.

[22]  The Debtors also intend, in due course and accordance with applicable deadlines, to propose a coordinated schedule in the adversary proceeding captioned *Official Tort Claimants' Committee of Boy Scouts of America and Delaware BSA, LLC v. Boy Scouts of America, et al.*, Adv. Pro. No. 21-50032.

devolve—or equally worse, stall.  The Debtors merely ask the Court to assist the parties in getting off on the right foot with respect to confirmation, to provide increased clarity, impose safeguards, increase efficiencies, and ultimately facilitate the Debtors' ability to provide equitable compensation to abuse survivors while also continuing on their charitable mission.  This can and must be done without undue distraction or delay.

## **CONCLUSION**

30.    For the foregoing reasons, the Debtors ask that this Court grant the Debtors' requested relief of setting a confirmation schedule and related procedures, overrule the Objections, and for any such other or further relief the Court deems appropriate.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 16, 2021
Wilmington, Delaware

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         emoats@morrisnichols.com
         ptopper@morrisnichols.com

– and –

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email:  mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS
IN POSSESSION