**Exhibit B**

**Objection Responses Chart**

## Index

| | Page No. |
|---|---|
| Affeld Grivakes LLP Claimant (D.I. 3255) | 11, 48 |
| Allianz Global Risks US Insurance Company, National Surety Corporation, and Interstate Fire & Casualty Company (collectively, the "Allianz Insurers") (D.I. 3549) | 35 |
| Alonso Krangle Claimants (D.I. 3279) | 11, 48 |
| American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, the "Zurich Insurers") (D.I. 3478) | 39 |
| Anderson & Cummings, LLP Claimants (D.I. 3150) | 11, 48 |
| Andreozzi + Foote Claimants (D.I. 3151) | 11, 12 |
| Andrus Wagstaff, PC and Justice Law Collaborative, LLC Claimants (D.I. 2902) | 11, 48 |
| Arrowood Indemnity Company (D.I. 4065) | 36 |
| Argonaut Insurance Company (D.I. 3285) | 36 |
| Aylstock, Witkin, Kreis & Overholtz, PLLC Claimants (D.I. 3274) | 13 |
| Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. Claimants (D.I. 3176) | 11, 48 |
| Berman & Simmons Claimants (D.I. 3249) | 11, 48 |
| Berman Law Firm Claimants (D.I. 2642) | 11 |
| Betti & Associates Claimants (D.I. 3281) | 11, 48 |
| Brent Coon & Associates Claimants (D.I. 3261) | 11, 48 |
| Century Indemnity Company ("Century"), as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America (D.I. 3856) | 24 |
| Century Indemnity Company ("Century"), as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America (D.I. 3857) | 53 |
| Chiacchia & Fleming, LLP Claimants (D.I. 3178) | 11, 48 |
| Ciardi, Ciardi & Astin Claimants (D.I. 2497) | 11 |
| Claimant E.G.W. (D.I. 3251) | 11 |
| Claimant E.G.W. (D.I. 3309) | 11, 48 |
| Claimant No. 242 (D.I. 2386) | 22 |
| Claimant No. 39334 (D.I. 2500) | 12 |
| Claimant No. 39334 (D.I. 3162) | 11, 48 |
| Claimant No. 45448 (D.I. 3160) | 11, 48 |
| Claimant Nos. 60051 and 63823 (D.I. 3282) | 22 |
| Claimant Nos. SA-179, SA-238, SA-728, SA-906, SA-3388, SA-13945, SA-18563, SA-41358, and SA-46628 (D.I. 3177) | 11, 48 |
| Claimant Paul Baumann (D.I. 3257) | 11, 48 |

Claimant SA-105992, SA-71204 (D.I. 3167) ................................................................ 11, 48

Claimant SA-35 (D.I. 3268) ........................................................................................... 11

Clarendon National Insurance Company, as Successor by Merger to Clarendon American Insurance Company ("Clarendon") (D.I. 3558) ........................................................... 37

Coalition of Abused Scouts for Justice (D.I. 3569) ...................................................... 9, 51

Colter Legal, PLLC Claimants (D.I. 3153) ................................................................... 11, 48

Columbia Casualty Company; The Continental Insurance Company as successor in interest to certain policies issued by Harbor Insurance Company; The Continental Insurance Company successor by merger to Niagara Fire Insurance Company; and The Continental Insurance Company (collectively "Continental Insurance Company") (D.I. 3582) ........................................................................................ 37

Cooper Elliott Claimants (D.I. 3214) ........................................................................... 11, 48

Crew Janci, LLP Claimants (D.I. 3193) ........................................................................ 11, 48

Cutter Law Claimants (D.I. 3258) ................................................................................ 11, 48

Darren Penn, of Penn Law LLC Claimants (D.I. 3236) ................................................ 11

DLG Claimants (D.I. 2959) ........................................................................................... 11, 13

Dumas & Vaughn, LLC Claimants (D.I. 3154) ............................................................. 11, 48

Edward Marcelino, George Burgos, William F. Tompkins III, and Richard G. Dunn (D.I. 2960) ................ 21

Esther Panitch of The Panitch Law Group, PC, Natalie Woodward and Brian Cathey of Shamp Jordan Woodward, LLC, and Michael Terry of Bondurant, Mixson & Elmore, LLC, Claimants (D.I. 3272) .......... 11

Fasy Law, Blumel Law and Tamaki Law Claimants (D.I. 3269) ................................... 11

Future Claimants' Representative (D.I. 3565) ............................................................. 8

Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf Claimants (D.I. 3155) ........ 11, 48

General Star Indemnity Company ("General Star") (D.I. 3740) .................................... 37

Gibbs Law Group, LLP Claimants (D.I. 3275) ............................................................. 11, 48

Girl Scouts of the United States of America (D.I. 3579) .............................................. 44

Gordon & Partners, P.A. Claimants (D.I. 2739) .......................................................... 11, 14, 48

Great American Assurance Company, f/k/a Agricultural Insurance Company, Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company (collectively, "Great American") (D.I. 3271) ................................. 38

Hach Rose Schirripa & Cheverie, LLP Claimants (D.I. 3183) ...................................... 11, 48

Harnick and Harnick Claimant (D.I. 3211) ................................................................... 11, 48

Herman Law Claimants (D.I. 3182) .............................................................................. 11

Horowitz Law Claimants (D.I. 3267) ............................................................................ 11, 48

Hurley McKenna & Mertz, P.C. Claimants (D.I. 3284) ............................................... 17

Jacobs & Crumplar, P.A. and The Neuberger Firm P.A. Claimants (D.I. 2580) .......... 11

Jacobs & Crumplar, P.A. and The Neuberger Firm, P.A. Claimants (D.I. 2741) ........................................... 11, 48

James F. Humphreys & Associates, L.C. Claimants (D.I. 3205) .................................................................... 11, 48

James Harris Law, PLLC Claimants (D.I. 3181) ......................................................................................... 11, 48

James, Vernon, and Weeks, P.A. Claimants (D.I. 2449) ............................................................................... 11

Janet, Janet & Suggs, LLC Claimants (D.I. 2845) ...................................................................................... 11, 48

Joshua D. Gillispie, of Green & Gillispie Claimants (D.I. 3243) ................................................................ 11, 48

Kenneth J. Ready & Associates Claimants (D.I. 3253) ............................................................................... 11, 48

Kralovec, Jambois & Schwartz Claimant (D.I. 3165) ................................................................................. 11, 48

Laffey, Bucci, & Kent, LLP Claimants (D.I. 3207) ..................................................................................... 11, 48

Law Office Of Joseph M. Kar, PC Claimant (D.I. 3256) ............................................................................. 11, 48

Law Offices Of Anthony M. Demarco Claimant (D.I. 3219) ........................................................................ 11, 49

Liberty Mutual Insurance Company, together with its affiliates and subsidiaries (collectively, "Liberty") (D.I. 3578) .................................................................................................................................................. 31

Linder Sattler & Rogowsky, LLP Claimants (D.I. 3225) ............................................................................. 11, 48

Locks Law Firm Claimants (D.I. 2586) ....................................................................................................... 11

Lujan & Wolff, LLP Claimants (D.I. 3231) .................................................................................................. 11, 18, 48

Mallard Claimants (D.I. 3226) ................................................................................................................... 11, 48

Manly, Stewart & Finaldi Claimants (D.I. 3175) ....................................................................................... 11, 48

Massey Law Firm Claimants (D.I. 3424) .................................................................................................... 11, 48

Merson Law, PLLC Claimants (D.I. 3194) .................................................................................................. 11, 48

Messa & Associates, PC Claimants (D.I. 3156) .......................................................................................... 11, 48

Mones Claimants (D.I. 3247) ...................................................................................................................... 11

National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively, the "AIG Companies") (D.I. 3523) .......................................................................................... 32

Nesenoff & Miltenberg Claimant (D.I. 3254) .............................................................................................. 11, 48

Oaks Law Firm Claimants (D.I. 3158) ......................................................................................................... 11, 48

Oshan & Associates, PC Claimants (D.I. 3159) .......................................................................................... 11, 48

Perdue & Kidd Claimants (D.I. 3252) ......................................................................................................... 11, 48

Pfau Cochran Vertetis Amala, PLLC Claimants (D.I. 3265) ........................................................................ 11, 48

*Pro se* Claimant (D.I. 2470) ...................................................................................................................... 23

*Pro se* Claimant (D.I. 2533) ...................................................................................................................... 23

*Pro se* Claimant (D.I. 2576) ...................................................................................................................... 23

*Pro se* Claimant (D.I. 2667) .................................................................................................... 24

Robins Kaplan LLP Claimant (D.I. 3260) ............................................................................... 11, 48

Roman Catholic Archbishop of Los Angeles, a corporation sole ("RCALA"), and its related BSA-chartered organizations (the "ADLA Chartered Organizations") (D.I. 4092) .................................................. 43

Roman Catholic Archbishop of San Francisco (D.I. 3853) .......................................................... 43

Ronald Hernandez Hunter, Plaintiff in *Hunter v. Boy Scouts of America*, No. 20 Civ. 315 (E.D.N.Y.) (D.I. 3264) .................................................................................................................................... 11

Schneider Wallace Cottrell Konecky, LLP Claimants (D.I. 3157) ............................................... 11, 48

Spagnoletti Law Firm Claimants (D.I. 3198) ............................................................................. 11, 48

Sullivan Papain Block McGrath Coffinas & Cannavo, P.C. Claimant (D.I. 3164) ........................ 11

The Church Of Jesus Christ Of Latter-Day Saints, A Utah Corporation Sole (D.I. 3263) .............. 40

The Knights of Columbus, 1 Columbus Plaza, New Haven, CT 06510; Knights of Columbus, Council #462 ("Council #462"); Knights of Columbus, Saratoga Council #246 a/k/a Saratoga Knights of Columbus ("Council #246"); and Knights of Columbus, Father Baker Council #2243 ("Father Baker Council"), as well as any and all other Knights of Columbus councils, and or entities (collectively the "Knights of Columbus entities") (D.I. 3270) ................................................................................................................. 42

The Law Office of Michael G. Dowd and Sweeney, Reich & Bolz, LLP Claimants (D.I. 3222) ............... 11, 48

The Law Office of Stephanie Morris, LLC Claimants (D.I. 3163) ............................................... 11, 48

Tort Claimants' Committee (D.I. 3526) .................................................................................... 1, 49

Travelers Casualty and Surety Company, Inc. (f/k/a AETNA Casualty & Surety Company), St. Paul Surplus Line Insurance Company and Gulf Insurance Company ("Travelers") (D.I. 3278) ......................... 39

United Methodist Ad Hoc Committee (D.I. 3273) ..................................................................... 43

United States Trustee (D.I. 3581) ........................................................................................... 44, 51

Van Zanten & Onik, LLC Claimant (D.I. 3262) ......................................................................... 11, 48

Zalkin Law Firm Claimants (D.I. 3276) .................................................................................... 11, 19

Zuckerman Claimants (D.I. 3277) ........................................................................................... 11, 21

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **PLAINTIFF GROUPS** | | |
| **Tort Claimants' Committee**<br><br>**[D.I. 3526]** | The Disclosure Statement minimizes the BSA's history of abuse in the organization. (Obj. ¶ 1.) | UNRESOLVED<br><br>This is misleading. In fact, the Disclosure Statement[1] states that "The BSA cares deeply about all victims of child abuse. The BSA understands that no apology can repair damage caused by abuse or take away pain that victims have endured. The BSA is steadfast in its commitment to continually improve all of its policies to prevent abuse." *See* Disclosure Statement, Article II.A.<br><br>Additionally, the Disclosure Statement spends a great deal of time discussing the Abuse Claims and specifically states that one of the dual restructuring goals is to provide an equitable, streamlined, and certain process by which survivors of Abuse may obtain compensation for Abuse. *See* Disclosure Statement, Article II.A. |
| | The Disclosure Statement does not provide an adequate description of the Restricted Assets and justification for such restrictions. (Obj. ¶¶ 21, 25.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors have provided further disclosure with respect to the BSA's Restricted Property, which is detailed in <u>Exhibit C</u> of the Disclosure Statement. |
| | The Liquidation Analysis is deficient as it:<br>• Fails to include the liquidation value, value, or an inventory of Restricted Assets and non-Restricted Assets<br>• Does not "i) account for the value of a Survivor's claims against the applicable Local Council and Chartered Organization(s) which would not be released under a chapter 7 scenario and (ii) demonstrate that a dissenting Survivor would receive more under the Plan than from (x) a recovery from the Debtors' chapter 7 liquidation plus (y) recoveries from the unreleased claims against the Local Councils and Chartered Organizations that are Participating Parties"<br>• "Does not address the liquidation process set forth in the Local Councils' charters and the impact that would have on recoveries in a liquidation scenario" | MIXED<br><br>The Debtors understand that certain parties in this case may challenge confirmation of the Plan on the basis that the Plan fails to meet the best interests of creditors test. The Debtors' proposed confirmation schedule contemplates the exchange of expert witness reports in connection with any such disputes. The Debtors expect that many issues raised in connection with the Liquidation Analysis will be addressed by the expert witnesses and at the hearing to consider confirmation of the Plan.<br><br>• The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 2. In addition, the Debtors have added Exhibit C to the Disclosure Statement which |

---

[1]    All references to the Disclosure Statement herein shall refer to the Proposed Amendments to the Third Amended Disclosure Statement filed in connection with this Reply.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | • Fails to provide a valuation for the Artwork, real estate or other assets to be contributed to the Settlement Trust by BSA.<br>• Does not describe "the basis for assuming that a six month liquidation timeframe is appropriate"<br>• Does not include avoidance action recoveries and D&O insurance policies<br>• Fails to discuss how the estimated recovery percentages were derived<br>• Fails to discuss the potential reduction of claims based on statute of limitations defenses, nor any assignment of values based on type of Direct Abuse Claim (as described above in connection with the TDPs)<br>• Provides no basis for the estimate of expenses of a chapter 7 trustee<br><br>(Obj. ¶ 37.) | summarizes the assets the Debtors view as restricted. Finally, the Liquidation Analysis and Financial Projections Analysis contain an extensive description of the assets that are included in the Liquidation Analysis and those that are not included. *See* Disclosure Statement, Exhibit B, Liquidation Analysis (Exhibit 1); Disclosure Statement, Exhibit C.<br>• The Debtors have amended the Liquidation Analysis to include a hypothetical liquidation of the Local Councils. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 14-17. The Debtors have not included Contributing Chartered Organizations in the Liquidation Analysis because, among other reasons, as of the date hereof, there are no such Contributing Chartered Organizations under the Plan.<br>• The Debtors believe the liquidation process in the Local Council charters would have little impact on the Liquidation Analysis, assuming such provisions are enforceable. Nevertheless, the Debtors have added a provision to the hypothetical liquidation of the Local Councils to account for this scenario. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 14-17.<br>• The Debtors have added disclosure concerning the value of the artwork, real estate and other assets to be contributed. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 8-9; Disclosure Statement, Article II.C.<br>• The Debtors have added disclosure concerning the basis for their assumption of a six month liquidation timeframe. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 2.<br>• The Debtors have added disclosure concerning avoidance action recoveries and recoveries from the Debtors' insurance policies. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 3.<br>• The Debtors believe they have provided sufficient information on how the estimated recovery percentages were derived and no further disclosure is necessary. *See* Disclosure Statement, Article II.C.<br>• The Debtors have added disclosure concerning the application of the Bates White estimation, impact of statute of limitations and effect on values. *See* Disclosure Statement, Article V.N.<br>• The Debtors believe they have provided sufficient disclosure of the basis for the wind-down costs, chapter 7 trustee fees and chapter 7 professional fees. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 9. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement contains no information about, or analysis of, the claims against, and assets and liabilities of, the Local Councils and Chartered Organizations. (Obj. ¶ 34.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit B, Liquidation Analysis. In addition, as more fully described in the Disclosure Statement, additional discussion has been added with respect to the body of Abuse Claims asserted against Local Councils and Chartered Organizations. *See* Disclosure Statement, Article V.N. |
| | The Disclosure Statement fails to provide a sufficient description and/or basis for the value of BSA's contribution to the Settlement Trust, including artwork, oil and gas interests, high adventure facilities, and other real property disclosures. (Obj. ¶ 38.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.C. |
| | The Disclosure Statement does not adequately explain how available consideration will provide Survivors a recovery in the range of 8%-23%. There is only $115 million of committed funding under the Plan, which would yield 4.8% recovery at a maximum. (Obj. ¶ 40.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement includes an explanation of how the recovery percentages to holders of Abuse Claims were calculated. *See* Disclosure Statement, Article II.C.8. |
| | The projected recovery does not include the expense of operating a settlement trust for the benefit of the 84,000 childhood sexual abuse Survivors and the Disclosure Statement does not provide any information regarding such operating expenses. (Obj. ¶ 40.) | UNRESOLVED<br><br>The TDPs provide for payment of administrative and legal fees for the maintenance and administration of the Settlement Trust. The fees and expenses are presumed to be commensurate with the size of the Settlement Trust. *See* Plan, Exhibit A-1, Global Resolution Plan TDP, Article V.2; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article VI.2 |
| | The Disclosure Statement lacks any "substantive discussion regarding the number or type of claims and a range of values of the childhood sexual abuse claims", which should include, at a minimum: the number of unique claims, the state or jurisdiction claims arose by abuse category and number, year or years in which claims arose by abuse category and number, description of claims by type of abuse, Local Councils and Chartered Organizations implicated by abuse category and number, and the extent of the undercount in the foregoing categories resulting from the Boy Scouts' electronic review of the claims that does not reflect information that may be in the proof of claim but not in the "correct" data field, e.g. the date of the abuse is in a narrative but not in the data field for the date of the abuse. (Obj. ¶¶ 41, 44.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now includes several Abuse claims' analyses, describing the types of Abuse Claims filed against the Local Councils and Chartered Organizations.  *See* Disclosure Statement, Article V.N. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement lacks adequate information on the valuation of childhood sexual abuse claims, including any discussion of how the $2.4 billion - $7.1 billion valuation range is determined. (Obj. ¶ 42.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N. |
| | The estimation of childhood sexual abuse claims, as proposed by the TCC in the Estimation Motion, must be completed before the Court can consider the approval of a Disclosure Statement "to enable a meaningful analysis of whether the Plan will meet the "Best Interests of Creditors" test and is feasible, and, of paramount importance, whether any proposed contributions by Local Councils or Chartered Organizations are sufficient to warrant the receipt of a non-consensual third party release coupled with a channeling injunction." (Obj. ¶ 47.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides information about the discovery and claims review process proposed by the Debtors in connection with confirmation. *See* Disclosure Statement, Article VI.H.19.<br><br>Additionally, with respect to the best interests test, this is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time–plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement lacks adequate information on the Hartford Settlement. (Obj. ¶ 51.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement fails to adequately describe the Boy Scouts' insurance program. (Obj. ¶ 57.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented. *See* Disclosure Statement, Article III.F. |
| | The Disclosure Statement also fails to explain the implications of the Hartford settlement for the Hartford coverage sold to the Debtors in 1976 and 1977. (Obj. ¶ 70.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement must disclose that non-abuse claims, e.g., personal injury claims, are given preferential treatment over childhood sexual abuse claims. (Obj. ¶¶ 55-56.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Instead, they should be considered at the proper time – plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement does not disclose the value of the BSA insurance-related contributions, including: (i) the BSA Insurance Policies; (ii) the Insurance Coverage; (iii) the Insurance Settlement Agreements; (iv) the Insurance Actions; and (v) the Insurance Action Recoveries. (Obj. ¶ 59.). Contribution of Insurance Actions "is misleading because a Survivor might believe that the settlement trust is getting something more than the right to prosecute or defend complicated coverage litigation", and the Disclosure Statement does not provide any estimate of costs related to such litigation. (Obj. ¶ 61.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X. |
| | The BSA Insurance Policies and the Insurance Coverage "are one and the same" as currently defined, so the definitions should be amended or the phrases should be consolidated. (Obj. ¶ 63.). | UNRESOLVED<br><br>BSA Insurance Policies references the policies themselves while Insurance Coverage references the rights, benefits or coverage under those policies. It is important to differentiate the two as the Debtors can assign Insurance Coverage to the Settlement Trust as opposed to the Insurance Policies themselves.<br><br>A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement "should provide more in-depth disclosure regarding the carriers with substantial coverage exposure, e.g., Century and Hartford at a minimum" – the Disclosure Statement lacks adequate information regarding coverage under Century and Hartford policies in | DEBTORS HAVE ADDED DISCLOSURE |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | certain years. (Obj. ¶ 65). The Disclosure Statement does not disclose risks that certain insurers may not have the ability to pay per policy limits, which may limit payment per occurrence to $500,000, which is not adequate compensation. (Obj. ¶ 66.) | The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X. |
| | The Disclosure Statement does not disclose that certain insurance policies have been exhausted. (Obj. ¶ 72.) The Disclosure Statement does not disclose the risks that certain insurers may not have the ability to pay per policy limits. (Obj. ¶ 73.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. |
| | The Disclosure Statement should disclose that the Plan provides that post-2013 coverage is being used to indemnify Insured Non-Abuse Claims and prevent Abuse Claims from accessing this coverage. (Obj. ¶ 76). | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now provides an adequate description of the post-2013 insurance sharing between Abuse and Non-Abuse Claims. See Disclosure Statement, Art. III.F. |
| | The Disclosure Statement does not discuss the Plan's impact on claimants who have a direct right to sue the insurer of the BSA, Local Councils, or Chartered Organizations, which is permitted under at least eight states. (Obj. ¶ 77-78.) | UNRESOLVED<br><br>The Disclosure Statement adequately describes how the process through which all Abuse Claims will be channeled to the Settlement Trust and liquidated in accordance with the Trust Distribution Procedures. *See* Disclosure Statement, Article VII.A. |
| | The Disclosure Statement does not provide meaningful information regarding the BSA pension obligations, and does not disclose that the Retirement Plan is currently overfunded. (Obj. ¶ 85.) | UNRESOLVED<br><br>The Disclosure Statement has a fulsome description of the pension obligations. |
| | The Disclosure Statement does not contain adequate information regarding BSA operations, such as declining membership trends and the impact thereof on ongoing operational needs (such as camps) that may render the Plan infeasible to the extent it relies on the continued existence of BSA. Given that membership in the Boy Scouts ends on December 31st for each calendar year, the Boy Scouts should disclose the current 2021 membership numbers. (Obj. ¶ 87.). The DS does not adequately describe attendance of high adventure facilities or the revenues generated by high adventure facilities, and does not address the impact a sale of high adventure facilities could have on ongoing operations or potential recoveries. (Obj. ¶ 89.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now has included this information. *See* Disclosure Statement Art. III.C.1. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement does not contain adequate information regarding the release of avoidance actions, such as the number, type, and potential value of "Avoidance Actions" being released. (Obj. ¶ 90.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now indicates that the Debtors believe that pursuing potential avoidance actions under the Bankruptcy Code, including potential preference or fraudulent transfer actions would not yield a net return. See Disclosure Statement, Article II.C n.9. |
| | The Disclosure Statement lacks an accurate description of Local Councils' assets and liabilities, which is essential to analysis of whether the Plan satisfies the "Best Interests of Creditors" test. (Obj. ¶ 92.). The TCC proposes the following amendments to remedy this:<br>• Include (i) a hyperlink to a site containing the Tort Claimants' Committee's analysis of each Local Council's assets and liabilities, and ii) an appendix to the Disclosure Statement or a hyperlink to a virtual appendix that shows a breakdown of childhood sexual abuse claims by (x) type of Direct Abuse Claim/severity, (y) the year of each childhood sexual abuse claim, and (z) the geographic area/Local Council associated with each childhood sexual abuse claim.<br>• Provide Survivors with a breakdown of individual Local Councils' contributions to the Settlement Trust. The aggregate Local Council contribution (whatever the amount) is meaningless to a Survivor from a "Best Interests of Creditors" test standpoint because the Survivor cannot compare the liquidation values to the amount the Survivor would receive under the Plan.<br>(Obj. ¶ 97.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. In addition, as more fully described in the Disclosure Statement, additional discussion has been added with respect to the estimation of values of claims against Local Councils and Chartered Organizations. See Disclosure Statement, Article V.N.<br><br>The Debtors have also added to the Liquidation Analysis information concerning a hypothetical liquidation of the Local Councils. See Disclosures Statement, Exhibit B, Liquidation Analysis at 14-17. |
| | The Disclosure Statement does not disclose the contribution to be made by Local Councils, which prevents analysis of whether they have made "substantial contributions" that justify third party releases. (Obj. ¶ 99-104.)<br><br>The Disclosure Statement likewise does not provide adequate information on Local Councils' Insurance Policies. (Obj. ¶ 105-08.) The Disclosure Statement does not disclose insurance coverage risks regarding assignment of Local Councils' insurance policies in contravention of anti-assignment provisions. (Obj. ¶ 109.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the Local Council's insurance program, which has been further supplemented in the Disclosure Statement. See Disclosure Statement, Article III.F.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance, including related to assignment. See Disclosure Statement, Article X. |
| | The Disclosure Statement does not provide adequate information regarding the Chartered Organizations, the number or nature of the claims against each of them and their participation under the Plan as beneficiaries of the non-consensual third-party releases and a channeling injunction. There is no description of a mechanism for a Chartered Organizations to | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now includes the number of claims against certain Chartered Organizations, including their nature. More description |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | become eligible to receive a non-consensual third-party release of claims or channeling injunction. (Obj. ¶ 110.) | has been added around notification related to Chartered Organizations that become Contributing Chartered Organizations. |
| | The Disclosure Statement fails to explain why Indirect Abuse Claims are to be paid from the Settlement Trust rather than being classified and treated as General Unsecured Claims. (Obj. ¶ 111.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time–plan confirmation. However, it is customary to have indirect and direct personal injury claims subject to the same trust mechanism for recovery. |
| | The Plan is uncomfirmable because it contains blanket direct and third-party releases without adequate discussion of what claims are to be released and in exchange for what value and consideration. (Obj. ¶ 112-18.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time–plan confirmation, particularly since the amount of support cannot be known until then. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| **Future Claimants' Representative**<br><br>**[D.I. 3565]** | The non-consensual third-party release of the Non-Debtor Parties included in the Plan does not satisfy the requirements of the Bankruptcy Code, and the Plan therefore does not satisfy section 1129(a)(1). (Obj. ¶ 17.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration, particularly since the amount of support cannot be known until then. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement does not identify any Settling Insurers or Insurance Settlement Agreements. (Obj. ¶ 15.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now includes information about Settling Insurance Companies. Adequate information of the Hartford Settlement is also now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Plan cannot satisfy section 1129(a)(8) because the Plan unfairly discriminates against current and future sexual abuse survivors. (Obj. ¶ 18.). The FCR questioned the recovery between 8%-23% "given that the only committed source of funding for the Global Resolution is the Debtors' contribution . . . and the conditional contribution contemplated by the Hartford Settlement." (Obj. ¶ 19.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time–plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Plan cannot satisfy section 1129(a)(7). The FCR disputes the Debtors' assertion that they are not required to satisfy the "Best Interests of Creditors" test. (Obj. ¶ 23.) The Debtors cannot establish that the best interest test is satisfied without estimating the Abuse Claims and resolving the dispute regarding which assets are unavailable for abuse survivors as a result of donor restrictions. (Obj. ¶ 25.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time–plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Liquidation Analysis fails to account for "the value of released claims against the Local Councils and Chartered Organizations", and fails to provide the assets of Local Councils that would revert to the Debtors in the context of a liquidation. (Obj. ¶ 26.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Liquidation Analysis has expanded to include an analysis of a hypothetical liquidation of the Local Councils.   *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 14-17.  The Liquidation Analysis does not include Chartered Organizations because, as of the date hereof, there are no Contributing Chartered Organizations. |
| **Coalition of Abused Scouts for Justice**<br><br>**[D.I. 3569]** | The Disclosure Statement fails to disclose Hartford settlement compromises one of the Debtors' most valuable assets for a small percentage of its actual value. The reduction clause that ties the value of the Hartford settlement to any potential settlement with Century may render the Hartford settlement to be worth substantially less. There is a risk that the Settlement Trust will have to hold a significant portion of the Hartford settlement in reserve while it litigates with Century and Chubb. (Obj. ¶ 43.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Several parties take issue with the Hartford settlement. The Debtors believe objections to the Hartford Settlement are premature and not ripe for consideration. Objections to the Hartford Settlement should be considered at the proper time–plan confirmation. Whether a settlement should be approved is not appropriate at the Disclosure Statement hearing.<br><br>Nevertheless, the Debtors have a description of the Hartford Settlement in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement fails to disclose that Insurance Companies are not bound by any determinations under the Global Resolution Plan, the Confirmation Order, or the TDP except for certain injunctions designed to protect them. There is a risk that the Insurance Companies will assert that the Global Resolution Plan effects a partial discharge of their coverage obligations, thereby limiting the value of the insurance assets and destroying hope for meaningful recoveries. Global Resolution Plan lacks guarantees that the Settlement Trust will even have access to the documents and records it needs to pursue insurance coverage. (Obj. ¶ 44.) | DEBTORS HAVE PROVIDED DISCLOSURE<br><br>Several parties take issue with the insurance neutrality provisions in the Plan. The Debtors believe objections to insurance neutrality are premature and not ripe for consideration. Those objections should be considered at the proper time–plan confirmation.<br><br>The Cooperation Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage.  *See* Trust Agreement, Article IV.L |
| | The Disclosure Statement contains an inaccurate and misleading narrative regarding how much survivors stand to recover under the Global Resolution Plan (objections to particular statements in blacklines). (Obj. ¶ 45.) The Disclosure Statement, as it pertains to the BSA Toggle Plan, is | DEBTORS HAVE PROVIDED DISCLOSURE |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | misleading in presenting a bleak picture of what the BSA Toggle Plan could mean for survivors and the future of Scouting, and is patently unconfirmable. (Obj. ¶ 47.) | The Debtors believe the narrative is not misleading. However, the Debtors have made certain changes in accordance with the suggested revisions from the Coalition. *See* Disclosure Statement, Article VI.E.10 |
| | Involuntary third-party releases cannot be approved because the Debtors cannot satisfy the *Millennium Lab* factors. A) The Related Non-Debtor Entities, their Representatives, and the Reorganized BSA's Representatives are not making any contribution. B) Toggle Plan presumes that the overwhelming majority of survivors have not voted to accept the Plan. C) Holders of Direct Abuse Claims will not be paid in full. (Obj. ¶ 48.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration, particularly since the amount of support cannot be known until then. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | BSA Toggle Plan discriminates unfairly and is not fair and equitable with respect to survivors, in violation of section 1129(b)(1). (Obj. ¶ 51.). The Toggle Plan presumes that Class 8 has rejected the Plan. (Obj. ¶ 51.). The difference between recovery percentages set forth in the Disclosure Statement for survivors claims and holders of GUCs is extreme (less than 1% vs. 75-95% / 100%).  (Obj. ¶ 52.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | Debtors have not shown that they can satisfy the "Best Interests of Creditors" test. Properties that the Debtors seek to retain may have more value to survivors in liquidation than in reorganization. (Obj. ¶ 53.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | BSA Toggle Plan is not feasible. A) Settlement Trust is not adequately capitalized and will not be able to liquidate the Direct Abuse Claims as a result. B) Debtors' ability to continue operations depends on Local Councils, which may not be able to operate if they are not Protected Parties. (Obj. ¶ 55-57.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | BSA Toggle Plan was not proposed in good faith. Debtors attempt to solicit votes based on a Disclosure Statement that includes inaccurate and misleading information. (Obj. ¶ 58-60.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **Plaintiffs' Law Firms**[2] | The Disclosure Statement fails to disclose the assets and liabilities of each potential party receiving a release. (*See, e.g.*, Obj. ¶¶ 1-9 [D.I. 2449].) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now includes information about how Contributing Chartered Organization and Settling Insurance Companies will be identified. *See* Disclosure Statement, Article II.C. Additionally, the Debtors have provided the assets and liabilities of Local Councils in addition to the assets and liabilities of the Debtors. *See* Disclosure Statement, Exhibit B, Liquidation Analysis. |
| | There is no property-by-property valuation of the property being transferred to a settlement trust, or any property-by-property valuation of the real or personal property that Debtors' seeks to retain. The same is true of its other assets, including investments. (*See, e.g.*, Obj. ¶ 2 [D.I. 2449].) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in Exhibit C of the Disclosure Statement and the property being transferred to the Settlement Trust as detailed in Article VII.A.3. |
| | The liquidation analysis does not include the properties of the local councils. (*See, e.g.*, Obj. ¶ 3 [D.I. 2449].) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors have now included a Liquidation Analysis that includes an analysis of a hypothetical liquidation for Local Councils as well as the Debtors. *See* Disclosure Statement, Exhibit B, Liquidation Analysis at 2-4. |
| | There is no information about the number of claims against each local council or chartered organization, or any estimate of the value of such claims. To the extent that sexual abuse claims have not been filed against a local council or chartered organization, the Debtors should disclose whether they have any indemnification or contribution claims against each local council or chartered organization. (*See, e.g.*, Obj. ¶ 7 [D.I. 2449].) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Information has been added to the Disclosure Statement with respect to Abuse Claims against Local Councils and Chartered Organizations. *See* Disclosure Statement, Article V.N. |
| | The Disclosure Statement fails to explain how any contribution by non-Debtor entities will be utilized and fails to disclose how much each council has available to contribute, how much each council is contributing, and how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors | DEBTORS HAVE ADDED DISCLOSURE<br><br>The TDPs discuss how all contributions will be used to satisfy Abuse Claims. Additionally, the Disclosure Statement states that the Debtors are |

[2]    The following plaintiffs' law firms filed substantially similar objections. In the interest of saving space, please refer to Exhibit A for the applicable law firm name. *See* D.I. 2449, 2497, 2500, 2580, 2586, 2642, 2741, 2845, 2902, 2739, 2741, 2845, 2902, 2959, 3150, 3151, 3153, 3154, 3155, 3156, 3157, 3158, 3159, 3160, 3162, 3163, 3164, 3165, 3167, 3175, 3176, 3177, 3178, 3181, 3182, 3183, 3193, 3194, 3198, 3205, 3207, 3211, 3214, 3219, 3222, 3225, 3226, 3231, 3236, 3243, 3247, 3249, 3251, 3252, 3253, 3254, 3255, 3256, 3257, 3258, 3260, 3261, 3262, 3264, 3265, 3267, 3268, 3269, 3272, 3275, 3276, 3277, 3279, 3281, 3309, 3424.

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | who do not have a claim against that council. (*See, e.g.*, Obj. ¶ 8 [D.I. 2449].) | committed to ensuring that the Local Councils contribute no less than $425 million. *See* Disclosure Statement, Article II.C. |
| | The Disclosure Statement fails to disclose insurance coverage risks. (*See, e.g.*, Obj. ¶ 15 [D.I. 2449].) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance *See* Disclosure Statement, Article X.A.22 |
| | The Disclosure Statement fails to disclose how insurance policies assigned to the trust will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy. (*See, e.g.*, Obj. ¶¶ 16-18 [D.I. 2449].) | UNRESOLVED<br><br>Article VII of the Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. The Trustee has broad discretion to liquidate Abuse Claims. |
| | The Disclosure Statement fails to disclose the contribution of insurers and their insureds in order to receive a release. (*See, e.g.*, Obj. ¶ 19 [D.I. 2449].) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information related to the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2.<br><br>At this time Hartford is the only Settling Insurance Company. The Debtors will include any further settlements reached with Insurance Companies. |
| **Andreozzi + Foote Claimants**<br><br>**[D.I. 3151]** | The Disclosure Statement does not address how claims will be treated given pending statute of limitations reform in multiple jurisdictions. (Obj. ¶ 23.) | UNRESOLVED<br><br>The Trust Distribution Procedures adequately addresses the evaluation procedures the Settlement Trustee will follow to assess claims. *See*, Plan, Exhibit A-1, Global Resolution Plan TDP, Article IV; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article V. Part of the claim evaluation process is determining whether a claim is barred by the statute of limitations. *See* Plan, Exhibit A-1, Global Resolution Plan TDP, Article IV.2; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article V.2. |
| | The Disclosure Statement and Plan do not address how claims will be treated in "window" states vs. non-"window" states or in jurisdictions where "windows" are possible like Pennsylvania. (Obj. ¶ 33.) | UNRESOLVED<br><br>Part of the claim evaluation process is determining whether a claim is barred by the statute of limitations. *See* Plan, Exhibit A-1, Global Resolution Plan TDP, Article IV.2; Plan, Exhibit A-2, BSA Toggle Plan |

12

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | TDP, Article V.2. The Trust Distribution Procedures utilizes a points system to assign a point value to a given Abuse Claim. Abuse Claims are assigned points based on the "Claims Matrix" and "Points Scaling Factors" described further in the Trust Distribution Procedures. *See* Plan, Exhibit A-1, Global Resolution Plan TDP, Article V; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article VI. For a full analysis on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. For the Trust Distribution Procedures, *see* the Plan, Exhibits A-1 and A-2. |
| **Aylstock, Witkin, Kreis & Overholtz, PLLC Claimants**<br><br>**[D.I. 3274]** | The Disclosure Statement and the accompanying solicitation procedures fail to notify creditors, including the AWKO Claimants, which local council and/or chartered organization is associated with their abuse, whether any such entity will receive a release, and if so, the terms of the release. (Obj. ¶ 3.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles V.R.2 and VI.O. |
| | The Disclosure Statement fails to explain what contribution the insurers, their non-Debtor insureds, Local Councils and/or Chartered Organizations will make in order to receive a release. (Obj. ¶ 4.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles V.R.2 and VI.O. |
| **DLG Claimants**<br><br>**[D.I. 2959]** | The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that it seeks to retain. The same is true of its other assets, including investments. (Obj. at 3.)<br><br>Likewise, the Disclosure Statement does not provide any property valuation information for any local councils or chartered organization. No chartered organization has offered to pay anything, and the Disclosure Statement does not offer any mechanism to evaluate contributions on their behalf. (Obj. at 3.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in Exhibit C of the Disclosure Statement and the property being transferred to the Settlement Trust as detailed in Article VII.A.3.<br><br>The Disclosure Statement now also attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit B, Liquidation Analysis; Disclosure Statement, Article V.N. |
| | Debtors do nothing more than assert that childhood sexual abuse claims will range in value from somewhere between $2.4 billion and $7.1 billion. There is no discussion on how that value is determined. (Obj. at 4.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the estimated valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. *See* Disclosure Statement, Article V.N. Additionally, the Disclosure Statement now has more information around how the valuation range was derived. *See* Disclosure Statement, Article V.N. |
| | With only $115 million available for sexual abuse survivors, the Disclosure Statement does not describe how recoveries will reach 8%, let alone up to 23% or 100%, when no other consideration has been committed by any other party. (Obj. at 4.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now describes how the recovery percentage was calculated.  *See* Disclosure Statement, Article II.C.8. |
| **Gordon & Partners, P.A. Claimants**<br><br>**[D.I. 2739]** | There is no discussion on how the $2.4 billion - $7.1 billion range is determined. (Obj. ¶ 10.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the estimated valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. *See* Disclosure Statement, Article V.N. Additionally, the Disclosure Statement now has more information around how the valuation range was derived. *See* Disclosure Statement, Article V.N. |
| | Under the Plan, the Debtors are the only parties that have offered any consideration ($115 million) for the abuse claims. Assuming the abuse claims are valued at $2.4 billion, the $115 million provides a 4.8% recovery, far less than the lower amount asserted by the Debtors. With only $115 million available for survivors, the Disclosure Statement does not describe how recoveries will reach 8%, let alone up to 23% or 100%, when no other consideration has been committed by any other party. (Obj. ¶ 10.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now describes how the recovery percentage was calculated.  The Disclosure Statement now describes how the recovery percentage was calculated.  *See* Disclosure Statement, Article II.C.8. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | In regards to TDPs, the Plan identifies factors to be used in valuing each claim, but neither the Plan nor the Disclosure Statement discloses how much weight will be assigned to those factors. (Obj. ¶ 19.) | UNRESOLVED<br><br>The "Claims Matrix" and "Points Scaling Factors" described in Article VII.B of the Disclosure Statement and in the Trust Distribution Procedures will be used to assign a point value to the Abuse Claim that will help determine the distribution amount for such Claim.  *See* Plan, Exhibit A-1, Global Resolution Plan TDP, Article V; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article VI. |
| | Neither the Plan nor the Disclosure Statement indicates whether the claimant will have an opportunity to pursue discovery so that they can supplement their claim with missing information (i.e., full name of Scout leader) in order for their claim to not be reduced for lacking information. (Obj. ¶ 20.) | UNRESOLVED<br><br>This is an objection to the substance of the Trust Distribution Procedures. Such objections are premature and not ripe for consideration. Instead, they should be considered at the proper time— plan confirmation. Regardless, this objection is misleading.<br><br>As explained in the Disclosure Statement, the Settlement Trustee shall evaluate each Trust Claim Submission individually, and shall follow the procedures and guidelines outlined in the Trust Distribution Procedures in order to provide substantially the same treatment to holders of similar Abuse Claims. After a review of the documentation provided by the Abuse Claimant in his or her Trust Claim Submission, materials received pursuant to the Cooperation Agreement Obligations, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid or invalid. For more information on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. For the Trust Distribution Procedures, *see* the Plan, Exhibits A-1 and A-2. |
| | Disclosure Statement fails to disclose how the Debtors will allocate the Hartford settlement funds and fails to explain how much each claimant may receive as a result of the settlement with Hartford, whether each claimant would be forced to release any of their claims in order to effectuate the settlement, including claims they have against non-Debtor entities, and whether any party, including Hartford and non-Debtor entities, would receive a channeling injunction as a result of the settlement. (Obj. ¶ 30.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement also fails to disclose how much coverage is available under each of the Hartford policies; which claimants have claims under each of the Hartford policies; the number of claims that implicate each policy; the type of claims; and, the value of the claims. (Obj. ¶ 31.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. The |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | Disclosure Statement also includes more information about the Hartford policies. |
| | The Disclosure Statement fails to explain why a claimant whose claim triggers a $500,000 insurance policy should vote in favor of a Plan that may result in them receiving an average of $7,647 from a settlement with Hartford. The Disclosure Statement fails to disclose the insured(s) under each of the Hartford policies, including whether the Debtors are insureds under each policy or whether the only insured under some policies is a non-Debtor entity, such as a local council. In turn, the it fails to explain whether all current and future claims against the insured(s), including non-Debtor entities, will have to be released in order to effectuate the Hartford settlement, and if so, the value of those claims and why a claimant should agree to such a release if the insured has substantial assets, including other insurance, that should be used to compensate the claimant. (Obj. ¶¶ 32-33.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement needs to provide claimant answers to the following questions:<br><br>1) does their local council/chartered organization have assets to contribute and, if so, how much?<br><br>2) how much is my local council or chartered organization contributing in exchange for its release of liability?<br><br>3) how many claims are there against my local council and chartered organization?<br><br>4) does my claim have insurance to cover it and, if so, how much?<br><br>5) how is my claim being treated in a distribution procedure?<br><br>(Obj. at 1.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>1) The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit B, Liquidation Analysis.<br><br>2) The Disclosure Statement now states clearly which entities are contributing and which entities have the potential to contribute in the future. *See* Plan, Article X.J; Disclosure Statement, Articles V.R.2 and VI.O.<br><br>3) Additional discussion has been added with respect to the body of claims against Local Councils and Chartered Organizations. *See* Disclosure Statement, Article V.N. Exhibit B, Liquidation Analysis.<br><br>4) The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. However, the Debtors do not indicate insurance coverage related to individual claimants.<br><br>5) Claims will be liquidated in connection with the Trust Distribution Procedures, which have been modified and updated in the Disclosure Statement. The Disclosure Statement sets forth such procedure. *See* |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | Disclosure Statement, Article VII.B, C; Plan, Exhibits A-1 and A-2, Trust Distribution Procedures. |
| **Hurley McKenna & Mertz, P.C. Claimants** <br><br> **[D.I. 3284]** | The Disclosure Statement fails to explain, regarding the Hartford Settlement, why "BSA chose up to settle with an insurer with billions of dollars in liability for the paltry sum of $650 million." (Obj. at 7.) | DEBTORS HAVE ADDED DISCLOSURE <br><br> Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement fails to mention claims against Debtors arising in Guam, even though more than 25% of all prepetition lawsuits pending against Debtors and leading up to the bankruptcy filing were brought by survivors of child sexual abuse in Guam, including victims of one of the most prolific child sexual abusers in scouting. (Obj. ¶ 1.) | DEBTORS HAVE ADDED DISCLOSURE <br><br> The Debtors have provided additional information related to all of the Abuse Claims filed against the various Local Councils and some Chartered Organizations. *See* Disclosure Statement, Article V.N. However, the Debtors do not feel that singling out Guam is necessary to provide adequate information to vote to accept or reject the Plan. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **Lujan & Wolff, LLP Claimants**<br><br>**[D.I. 3231]** | The Disclosure Statement fails to explain how claimants abused in connection with scouting units directly serviced by the Boy Scouts of America will fare under the Plan. The Disclosure Statement fails to identify and adequately disclose indirect abuse claims timely filed against Debtors. (Obj. ¶ 4.) | UNRESOLVED<br><br>The Disclosure Statement adequately describes how Abuse Claimants will fare under the Plan. The Disclosure Statement sets forth a chart estimating the amount and approximate percentage recovery for direct and indirect claims.  *See* Disclosure Statement, Article II.C.8. The Disclosure Statement also sets forth a chart comparing estimated recoveries under the Global Resolution Plan and BSA Toggle Plan against a hypothetical chapter 7 liquidation.  *See* Disclosure Statement, Article IX.D. |
| | The Disclosure Statement fails to state whether the Boy Scouts of America or its insurers funded prepetition settlements and whether and which insurers defended the Boy Scouts of America. (Obj. ¶ 7.) There is no attempt to explain why the FEA only applies to sexual molestation claims and not to other bodily injury claims. (Obj. ¶ 10.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement.  *See* Disclosure Statement, Article III.F. Adequate information relating to the FEA is included in the Disclosure Statement. |
| | The Disclosure Statement fails to identify which Local Councils are members of the BSA's "controlled group" and may be jointly and severally liable with BSA on the Pension Benefit Guaranty Corporation's $1,102,200,000 Unfunded Benefit Liability Claim, Termination Premiums Claim including an amount of $51,862,500, and Minimum Funding Contribution Claims. | UNRESOLVED<br><br>The Disclosure Statement adequately describes that liabilities are joint and several among the BSA and each Local Council that is a member of the BSA's "controlled group" as the term is defined under 29 U.S.C. §§ 1082, 1307, 1362.  *See* Disclosure Statement, Article X.A.3. |
| | The Disclosure Statement fails to identify what unknown claimants would qualify as future claimants entitled to compensation under the Plan. There is also no estimate of the total amount of money that would be set aside or paid for future claimants. (Obj. ¶ 16.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>"Future Abuse Claim" is clearly defined under Article I of the Plan as "any Direct Abuse Claim against any Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, Abuse that occurred prior to the Petition Date but which, as of the date immediately preceding the Petition Date, was held by a Person who, as of such date, (a) had not attained eighteen (18) years of age, or (b) was not aware of such Direct Abuse Claim as a result of 'repressed memory,' to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose.  *See* Plan, Article I.A.109. Notwithstanding the foregoing, if the Plan is Confirmed as a Global |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | Resolution Plan, then, with respect to any Contributing Chartered Organization, the term "Future Abuse Claim" shall be limited to any Direct Abuse Claim that arose in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units." *See* Plan, Article I.A.109. Adequate information of future abuse claimants and the Future Claimants' Representative is now set forth in the Disclosure Statement, *see* Article IV.A of the Disclosure Statement. |
| | The Disclosure Statement fails to adequately explain what will happen after the Settlement Trust terminates. (Obj. ¶ 20.) | UNRESOLVED<br><br>The Disclosure Statement adequately describes the continued existence or dissolution of the Settlement Trust. Article VII.A.11 of the Disclosure Statement (Excess Settlement Trust Assets) states that "[t]o the extent any Settlement Trust Assets remain at such time as the Settlement Trust is dissolved under the terms of the Settlement Trust Documents, any remaining Settlement Trust Assets shall be distributed to Reorganized BSA." |
| | It is unclear how many votes to accept the BSA Toggle Plan are required in order for it to be confirmed, as the Disclosure Statement instead alludes to the Toggle Plan being a "default" Plan that may be confirmed if there are insufficient votes to accept the Global Resolution Plan. (Obj. ¶ 24.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement adequately addresses the process to approve the plan, including cramdown under section 1129(b). *See* Disclosure Statement, Article VI.G. Nevertheless, the Debtors added clarity to voting on the BSA Toggle Plan. *See* Disclosure Statement, Article II.A, B. |
| | The Disclosure Statement fails to disclose the assets of local councils, which would become property of BSA if their charters are not renewed or BSA liquidates, so claimants do not have adequate information to vote on the Plan or raise a "Best Interest of Creditors" objection. (Obj. ¶¶ 4, 19.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Although the Debtors maintain their position that nonprofit organizations are not required to satisfy the best interest test, the Debtors have provided Liquidation Analyses, including Local Council liquidations which show that the Plan satisfies the "Best Interests of Creditors" test. *See* Disclosure Statement, Exhibit B, Liquidation Analysis. |
| **Zalkin Law Firm Claimants**<br><br>**[D.I. 3276]** | The Disclosure Statement lacks historical justification for the "unrealistically low values proposed" for the values of sexual abuse claims, as the minimum amount to cover California and New York alone "ranges from $16 billion to $32 billion." (Obj. ¶ 11, 14.) | UNRESOLVED<br><br>The Disclosure Statement provides adequate information regarding the estimated valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. *See* Disclosure Statement, Article V.N for more information regarding the valuation of Abuse Claims. |
| | The Disclosure Statement also lacks concrete information on the assets and contributions of non-Debtor entities that may be provided third party releases. (Obj. ¶ 12.) | DEBTORS HAVE ADDED DISCLOSURE

The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosures Statement, Exhibit B, Liquidation Analysis |
| | The matrix of valuation is inadequate because the "Abuser Profile" multiplier fails to account for other factors like the number of times of abuse, what BSA and local councils knew about the abuser, and whether there were other victims not involved in this proceeding. (Obj. ¶¶ 15-16.) | UNRESOLVED

This is an objection to the substance of the Trust Distribution Procedures. Such objections are premature and not ripe for consideration. Instead, they should be considered at the proper time – plan confirmation.

Regardless, the Trust Distribution Procedures adequately describe aggravating factors, which include unusual duration or multiple circumstance. As is more fully described in the Trust Distribution Procedures, these aggravating factors are considered under the point scaling factors to increase the number of points assigned to a submitted Abuse Claim. *See* Disclosure Statement, Exhibit A-1, Global Resolution Plan TDP, Article V.4; Disclosure Statement, Exhibit A-2, BSA Toggle Plan TDP, Article VI.4. |
| | It is notable that professional fees paid by BSA have averaged about $212,000 per day since BSA filed for bankruptcy protection in February 2020 (see D.I. 2743 at 5 (listing $83.176 million in professional fees through March 31, 2021)). If BSA proposes to pay the Zuckerman Claimants a relative pittance for their life-altering Scouting-related abuse, at minimum the Court must require Debtor to explain that transparently. (Obj. ¶ 23.) | UNRESOLVED

The objecting party has not explained the relevance between fees that the Court has determined were reasonable and customary for the services provided and the value available through Settlement Trust to Abuse Survivors. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **Zuckerman Claimants**<br><br>**[D.I. 3277]** | There is a failure to disclose the assets and liabilities of each party receiving a release and failure to disclose the specific entities to be released. (Obj. ¶ 1.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit B, Liquidation Analysis. |
| **Edward Marcelino, George Burgos, William F. Tompkins III, and Richard G. Dunn**<br><br>**[D.I. 2960]** | There is a failure to explain to Claimants how their claims will be valued in the trust procedures, what ability they will have to contest the proposed valuation of their claim, and how the proceeds of any insurance policies assigned to the trust will be utilized. (Obj. ¶¶ 3, 5.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The "Claims Matrix" and "Points Scaling Factors" described in Article VII.B of the Disclosure Statement and in the Trust Distribution Procedures will be used to assign a point value to the Abuse Claim that will help determine the distribution amount for such Claim. *See* Disclosure Statement, Exhibit A-1, Global Resolution Plan TDP, Article V; Disclosure Statement, Exhibit A-2, BSA Toggle Plan TDP, Article VI.<br><br>Article VII of the Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. |
|  | There is a failure to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars. (Obj. ¶ 3.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A.22 |
|  | There is a failure to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release. (Obj. ¶ 6.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit B, Liquidation Analysis.<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2.<br><br>If any other entities contribute, those contributions will be noticed promptly. *See* Disclosure Statement, Article II.C. |
|  | Claimants object to the adequacy of the Disclosure Statement insofar as it lacks sufficient information to allow Claimants to make an informed | UNRESOLVED |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | decision concerning the Proposed Plan. Moreover, the Plan is patently unconfirmable, accordingly the Disclosure Statement should not be approved. (No further clarification or explanation is provided.) (Obj. ¶ 1.) | The Debtors believe the Disclosure Statement provides adequate information to allow a hypothetical investor to make an informed judgment about the Plan. *See* Disclosure Statement, Article II.C; *see also* 11 U.S.C. § 1125(a)(1). |
| **Claimant Nos. 60051 and 63823**<br><br>**[D.I. 3282]** | There are gaps in the Plan, such as Exhibit A 'Contributing Chartered Organization Settlement Contribution,' Exhibit B 'Contributing Chartered Organization,' and the Amended BSA Bylaws. (Obj. at 5). | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Companies participating in the Plan and no Contributing Chartered Organizations. The Debtors are committed to working with both groups to increase participation and contributions to the Settlement Trust. When any Chartered Organization joins the Plan, the Debtors will send a notice to all parties in interest stating the name of the Contributing Chartered Organization and the amount of their contribution. The Debtors will also notify all parties in interest of any additional Settling Insurance Companies. *See* Disclosure Statement, Article II.C.<br><br>The Plan Supplement will include the Amended BSA Bylaws as is customary. *See* Disclosure Statement, Article VI.U.13; Disclosure Statement, Article VI.H.2. |
| **Claimant No. 242**<br><br>**[D.I. 2386]** | Without disclosing personal information of victims, the Disclosure Statement ought to contain statistical information and representative narratives to describe the abuse victims and what they suffered. (Obj. at 7). | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Disclosure Statement provides adequate information regarding Abuse Claims. The Debtors retained Bates White to evaluate Abuse Claims. *See* Disclosures Statement, Article V.D. Article V.N of the Disclosure Statement provides a thorough discussion of Bates White's estimate as to the range of value of Abuse Claims. Additional statistical information about the Abuse Claims, including severity and applicable Local Council, was added. *See* Disclosure Statement, Article V.N. |
| | The releases of the Debtors, Local Councils, and third parties are objectionable. (Obj. at 5:27-28.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan and releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and releases should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| *Pro se* **Claimant**<br><br>**[D.I. 2470]** | The Debtors need to outline a definitive settlement amount to the victims. (Obj. at 2.) | DISCLOSURE HAS BEEN ADDED<br><br>The Disclosure statement now outlines the various settlements included in the Plan. Information regarding the recoveries contemplated under both the Global Resolution Plan and the BSA Toggle Plan are also included. *See* Disclosure Statement, Article II.C and Article V.R. |
| *Pro se* **Claimant**<br><br>**[D.I. 2533]** | The Plan leaves claims to be reviewed by a third party in a non-judicial setting or appealable basis. (Obj. at 3.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Instead, they should be considered at the proper time – plan confirmation.<br><br>Regardless, as is more fully described in the Disclosure Statement, if a holder of an Abuse Claim is not satisfied with the Settlement Trust's determination of validity or valuation of his or her Claim, the Trust Distribution Procedures provide for a reconsideration process, and in the last resort, a claimant may pursue the Settlement Trust in the tort system, pursuant to certain restrictions set forth in the Trust Distribution Procedures. The Debtors firmly believe the Trust Distribution Procedures are the most efficient and expedient method for Claimants to resolve their claims. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Exhibit A-1, Global Resolution TDP, and Exhibit A-2, BSA Toggle Plan TDP. |
| | The BSA should add the amount of compensation that each level of abuse will receive so that when survivors vote, survivors will know what they are going to receive if the Disclosure Statement is approved. (Obj. ¶ 3.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now adequately describes how the Trust Distribution Procedures utilizes a points system to assign a point value to a given Abuse Claim. Abuse Claims are assigned points based on the "Claims Matrix" and "Points Scaling Factors" described in the Trust Distribution Procedures. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Exhibit A-1, Global Resolution TDP, and Exhibit A-2, BSA Toggle Plan TDP. |
| *Pro se* **Claimant**<br><br>**[D.I. 2576]** | The Disclosure Statement is objectionable. (No further reason or clarification is provided). (Obj. ¶ 1.) | UNRESOLVED<br><br>The Debtors believe the Disclosure Statement provides adequate information to allow a hypothetical investor to make an informed judgment about the Plan. 11 U.S.C. § 1125(a)(1). |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| ***Pro se* Claimant**<br><br>**[D.I. 2667]** | The Disclosure Statement is objectionable. (No further reason or clarification is provided). (Obj. ¶ 1.) | UNRESOLVED<br><br>The Debtors believe the Disclosure Statement provides adequate information to allow a hypothetical investor to make an informed judgment about the Plan. 11 U.S.C. § 1125(a)(1). |
| **INSURERS** | | |
| **Century Indemnity Company ("Century"), as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America**<br><br>**[D.I. 3856]** | An approval hearing is premature until the Debtors disclose the non-debtor Local Councils and Chartered Organizations who are contributing to the Plan or what amount they are contributing. It's impossible to assess the extent of unresolved cross claims by Local Councils and Chartered Organization against each other and BSA. There is no resolution for the unidentified non-contributing Chartered Organizations even under the Global Resolution Plan, which leaves non-debtors entities with their claims back against BSA. There is no disclosure on how such cross claims will be handled (if at all) and by whom. A hearing is premature because multiple critical Plan documents have not been filed. Debtors need to file the Plan supplement, the list of Local Councils and Chartered Organizations, the Settlement Trustee choice, the members of the Trust Advisory Committee or how they will be selected, and the Cooperation Agreement. (Obj. at 8-9). | MIXED<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Companies participating in the Plan and no Contributing Chartered Organizations. The Debtors are committed to working with both groups to increase participation and contributions to the Settlement Trust. When any Chartered Organization joins the Plan, the Debtors will send a notice to all parties in interest stating the name of the Contributing Chartered Organization and the amount of their contribution. The Debtors will also notify all parties in interest of any additional Settling Insurance Companies. *See* Disclosure Statement, Article II.C.<br><br>The Plan Supplement will include certain other documents, including the Cooperation Agreement as well as the identity of the Settlement Trustee as is customary. |
| | The Disclosure Statement is grossly incomplete without information about claims against the debtors and non-debtors to be released. The Court should not consider the Disclosure Statement before ruling on the pending Rule 2004 motions. The 2004 hearing will provide information on the number and scope of abuse claims. The Debtors set out no criteria for disallowing claims and there is no information on how meritless and legally invalid claims will be sorted out. (Obj. at 5-8.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan and the assignability of non-debtor insurance rights. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and releases should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement is grossly incomplete without information about claims against the debtors and non-debtors to be released. The Court should not consider the Disclosure Statement before ruling on the pending Rule 2004 motions. The 2004 hearing will provide information on the number and scope of abuse claims. The Debtors set out no criteria for disallowing claims and there is no information on how meritless and legally invalid claims will be sorted out. (Obj. at 5-8.) | UNRESOLVED<br><br>The Debtors should not be prohibited from moving toward confirmation on the timeline laid out in the Disclosure Statement Motion. The Debtors' confirmation timeline includes certain discovery related to non-binding estimation of the Abuse Claims pool. There is no need to wait for the pending 2004 motions. *See* Disclosure Statement, Article V.M.5. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement does not identify the "identified property," does not disclose the value of the identified property, how Debtors arrived at that value, or the reason each piece of property is unavailable. As a result, it is unclear if the trust contribution is fair and equitable. (Obj. at 14.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors have provided further disclosure with respect to the BSA's Restricted Property, which is detailed in Exhibit C, the Financial Projections Analysis, of the Disclosure Statement. |
| | Debtors have not filed the Leaseback Requirement Agreement in connection with the Warehouse and Distribution Center asset. (Obj. at 15.) | UNRESOLVED<br><br>This will be filed with the Plan Supplement, as it has not been executed at this time. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, at the website maintained by the Notice and Claims Agent (https://omniagentsolutions.com/BSA), and at the Bankruptcy Court's website (ecf.deb.uscourts.gov). |
| | The Disclosure Statement lacks information on who reviews the abuse claims once they are assigned to the settlement trust and does not identify any information on the settlement trustee. (Obj. at 16-17.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>A Settlement Trustee will appointed by the Bankruptcy Court. The Settlement Trust Agreement enumerates the Settlement Trustee's powers, duties, and limitations. These include, among others: the power to distribute assets of the Settlement Trust to holders of Abuse Claims pursuant to the terms and conditions and the procedures for distributions established in the Trust Distribution Procedures; to assist the Litigation Trustee prosecute Settlement Trust Causes of Action, the Insurance Actions, and the Insurance Coverage Actions on behalf of holders of Abuse Claims; to enforce the Settlement Trust's rights in the Settlement Trust Assets, including through judicial proceedings or bankruptcy/insolvency proceedings; and to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purposes of the Settlement Trust or to maintain and administer the Settlement Trust. *See* Plan, Exhibit B, Settlement Trust Agreement § 4.1. The Debtors also added more disclosure around the TDPs and the way claims will be handled. *See* Disclosure Statement, Articles VII.A, VII.B, and VII.C.<br><br>The Debtors will provide the identity of the Settlement Trustee in the Plan Supplement. The Disclosure Statement (Article VII), Trust Distribution Procedures (Plan, Exhibits A-1 and A-2), and Settlement Trust Agreement (Plan, Exhibit B) provide more than adequate information regarding the administration of the Settlement Trust. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement does not disclose a binding commitment to contribute to the settlement trust or how much Local Councils will contribute. Debtors have not attached Exhibit A or B. The vague assurance that Local Councils will make a substantial contribution without explaining the value of the contribution of how it will affect the settlement trust's distributions violates section 1125(b). There is no information on substantial contributions and whether any Local Council would have to make any contribution at all before being gifted a release. (Obj. at 18-20.)<br><br>To assess sufficiency of contributions by the Local Councils and Chartered Organizations, claimants need to know: the identity of the releasee; the scope of the releasee's potential liability to abuse claimants; the amount of assets available to the releasee to pay abuse claims; the releasee's obligation for SIRs and deductible, and the size of the releasee's proposed contribution to the settlement trust. (Obj. at 20.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Companies participating in the Plan and no Contributing Chartered Organizations. The Debtors are committed to working with both groups to increase participation and contributions to the Settlement Trust. When any Chartered Organization joins the Plan, the Debtors will send a notice to all parties in interest stating the name of the Contributing Chartered Organization and the amount of their contribution. The Debtors will also notify all parties in interest of any additional Settling Insurance Companies. *See* Disclosure Statement, Article II.C.<br><br>The Disclosure Statement now provides more information on the potential parties to the release. *See* Disclosure Statement, Articles II.A, V.R.2, and VI.O; see also Plan, Articles X.F, X.J and X.L. |
| | The Disclosure Statement fails to adequately disclose the necessity and support for the broad releases granted to non-debtors and the risks associated with them. The Plan broadly releases all abuse claims, defined to encompass anything concerning abuse. Debtors must disclose that the non-debtor release provision will likely render the Plan unconfirmable. The release includes attorneys of protected parties, providing no opt-out mechanism for Century. Century has claims against Sidley Austin related to Sidley's pre-bankruptcy representation of BSA. The ballot and Disclosure Statement must be amended so Century is not forced to decide between voting to accept and opting to preserve its claims against Sidley. (Obj. at 22-24.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>This is an objection to the substance of the Plan and nonconsensual releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and releases should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply.<br><br>Nevertheless, the Debtors have added disclosure regarding third party consensual releases as well as more description of the support need to confirm the Global Resolution Plan and related third party injunction. *See* Disclosure Statement, Articles II.A, V.R, and VI.O.<br><br>Additionally, the consensual releases are customary and acceptable. A description of them is now included in the Disclosure Statement. *See* Disclosure Statement, Articles II.A. |
| | The Disclosure Statement does not disclose the necessity and basis for the breath of the channeling injunction and the risk associated with its inclusion in the Plan. (Obj. at 24.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors have added disclosure related to the nonconsensual third party injunction. *See* Disclosure Statement, Articles II.A and VI.O; *see also* Plan, Article X.F. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | Disclosure Statement and Plan must be modified to ensure that holders of claims having no connection to BSA are not enjoined and explain how the settlement trust will review abuse claims to ensure only claims connected to scouting are validated. (Obj. at 24-25.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement (Article VII), Trust Distribution Procedures (Plan, Exhibits A-1 and A-2), and Settlement Trust Agreement (Plan, Exhibit B) also provide more than adequate information regarding the administration of the Settlement Trust. The Trust Distribution Procedures includes measures to guard against fraud, if any, and such measures are now described in the Disclosure Statement. *See* Disclosure Statement, Article VII.B.2 and Article VII.C; *see also* Plan, Exhibit A-1, Global Resolution Plan TDP, Article IV; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article V. |
| | The Disclosure Statement fails to disclose insurance coverage risks. There is no discussion on the risks associated with Debtors' prepetition conduct, and the risk associated with the proposed assignment of all the insurance rights of the Debtors, the Local Councils, and the Contributing Chartered Organizations to a trust, including the risk related to the enforcement of anti-assignment clauses in many of those policies. (Obj. at 25-26.)<br><br>The Disclosure Statement does not acknowledge Debtors fail to cooperate with insurers, the risk of coverage due to the expedited distribution option, and the risk that the TDP's claim matrix that would allow claims barred by the applicable statute of limitations or failure to timely file a proof of claim. (Obj. at 26.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | There is no disclosure of the risks associated with the decisions that are the subject of Count I of the adversary proceeding complaint against Hartford. (Obj. at 27.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | There is no discussion of the risk of BSA hiring Sidley Austin. (Obj. at 27). | The Disclosure Statement addresses the past actions brought by Century against Sidley Austin and indicates that all actions against Sidley Austin by Century have been dismissed. *See* Disclosure Statement, Article V.D. and footnotes 43-44. |
| | There is no disclosure of the risks posed by the Toggle Plan on the continued availability of coverage given BSA's unilateral abandonment of the defense and election to no longer maintain underlying coverage. (Obj. at 27). | DEBTORS HAVE ADDED DISCLOSURE |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | The Disclosure Statement fails to disclose how insurance proceeds assigned to the trust will be utilized or the risks associated with it. The Disclosure Statement should disclose if insurance proceeds go toward compensating claimants who do not have a claim under the same policy or if the proceeds go solely toward the named insured. The Disclosure Statement should disclose whether insurance proceeds would pay administrative, trust, and legal expenses. (Obj. at 27-28.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Article VII of the Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article VII. |
| | The Disclosure Statement fails to explain the Cooperation Agreement's terms or risks. The Disclosure Statement fails to disclose how Debtors and potentially non-debtor third parties will be obligated to cooperate with the settlement trust. Without the agreement, creditors have to guess what relief might be available if Debtors fail to cooperate. Creditors must know the extent to which Debtors must provide access to internal documents and records. It is not clear what obligation non-debtor third parties have to cooperate if the plan is confirmed as a Global Resolution Plan. (Obj. at 28-29.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Cooperation Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage.  *See* Plan, Exhibit B, Settlement Trust Agreement, Article IV.L. The Disclosure Statement now describes this agreement. |
| | The Disclosure Statement fails to confirm the Debtors will assign the First Touch Encounter Agreement to the settlement trust and if they do not, the risks associated with the action/inaction. The Disclosure Statement does not explain how confirmation and assignment of insurance rights and proceeds to the settlement trust would impact this agreement. Debtors must affirmatively state the settlement trust will be bound by the agreement because it is not an executory contract and Debtors agreed to be bound. (Obj. at 29-31.) | UNRESOLVED<br><br>The Disclosure Statement discusses the BSA Settlement Trust Contribution, which includes, among other things, the BSA Insurance Policies. *See* Disclosure Statement, Article II.C.<br><br>The Disclosure Statement now states that the Debtors are assigning their rights and obligations under the FEA to the Settlement Trust.  *See* Disclosure Statement, Article III.F.4. |
| | The Disclosure Statement fails to explain how either proposed Plan will treat SIRs and the risks with failing to properly treat SIRs. If Debtors will transform SIRs into indirect abuse claims to be paid by the settlement trust, they must explain this decision. The Disclosure Statement should explain whether the plan permits Century to pursue its SIR claims against Local Councils and if not, the basis. (Obj. at 31-32.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information regarding self-insured retentions is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6. |
| | The Disclosure Statement fails to explain the treatment of Century's secured claim. Century's claim should be classified as a Class 2 'other | DEBTORS HAVE ADDED DISCLOSURE |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | secured claim' but the Plan and Disclosure Statement do not confirm the treatment. The Disclosure Statement does not explain whether the Century letter of credit will be one the Debtors assume will be drawn on the effective date. The Disclosure Statement must explain how Debtors will treat letters of credit issued. (Obj. at 32-33.) | Language has been added to the Disclosure Statement to clarify this point. *See* Disclosure Statement, Article III.F.7. |
| | The Disclosure Statement fails to explain the Judgment Reduction Clause in the Hartford settlement or to quantify its impact. The Disclosure Statement must quantify or explain the impact of this clause on the Debtors and the settlement trust. The Disclosure Statement must explain the monetary impact of those clause on the other policies. Each of BSA's excess carriers have cross claims for contribution against the Local Councils so the availability of the judgment reduction clause serves to reduce the value of the coverage for those claims. Debtors must acknowledge the likelihood that other insurers will claim reduction based on contribution and cross claims relating to Hartford policies issued to Local Councils. | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information related to the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement does not disclose how privileged documents and information associated with the defense of abuse claims will be protected post-confirmation and the risks associated with waiving privilege. (Obj. at 33-35.) | UNRESOLVED<br><br>The Cooperation Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage. *See* Plan, Exhibit B, Settlement Trust Agreement, Article IV.L. The Disclosure Statement now describes this agreement. |
| | The Disclosure Statement does not disclose demands made by the Coalition for payments to their professionals and state court counsel, assurances given and impact on formation of Plan. (Obj. at 35.) | UNRESOLVED<br><br>This is not a necessary disclosure. |
| | The Court cannot approve the Disclosure Statement because it describes a patently unconfirmable Plan. The Plan discriminates against insurers by treating them differently than other unsecured creditors. There is no justification for providing holders of indirect abuse claims, including the non-settling insurers, with a 0% recovery on their unsecured claims while providing other classes of unsecured creditors a recovery of up to 100%. And, given this wildly disparate treatment, holders of indirect abuse claims are overwhelmingly likely to vote against confirmation, thereby satisfying the requirement of a dissenting class. Accordingly, unless the Debtors make a showing to overcome the presumption of unfair discrimination based on the materially lower percentage recovery for the class of indirect abuse claims, the Plan cannot be confirmed to the extent Class 9 votes to reject the Plan. (Obj. at 37.) | PLAN HAS BEEN REVISED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Plan is not neutral because it impairs insurers' rights under the state-law insurance contracts they issued to the Debtors and Local Councils. A plan may not be confirmed if it would give the debtor greater rights under its insurance contracts than it held prepetition. The Disclosure Statement should disclose that certain of the Debtors' insurers take the position that purported insurance neutrality language in the Plan is inadequate. The Disclosure Statement should also inform creditors that the Court, or a court on appeal, may require the Debtors to include more robust language in order for the Plan to actually be insurance neutral. (Obj. at 38-42.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Plan is insurance neutral. However, certain insurers disagree, as disclosed in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>This is an objection to the substance of the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and insurance neutrality should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Plan likely deprives creditors of statutory rights. Plan appears to transfer the exclusive right to object to proofs of claim to the settlement trust, thereby depriving creditors from asserting claim objections, and consequently, the Plan is unconfirmable. To the extent the Plan seeks to vest the trust with the exclusive right to object to proofs of claim, it is not confirmable. This defect cannot be cured by creditor voting, as it would seemingly strip interested parties of their right to lodge objections, thereby setting them up to vote on a plan about which they had no say. (Obj. at 42-43.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. However, transferring the power to evaluate and liquidate claims to the Settlement Trustee is customary. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Plan was not proposed in good faith under section 1129(a)(3). Debtors excluded Century from all meetings and communications held with the claimant representatives concerning formulation of the Plan. Debtors have made it abundantly clear that their priority is to emerge from bankruptcy in short order. Debtors have seemingly formed a mutually beneficial agreement with the Coalition law firms—over the objection of the TCC—to ram through an incomplete plan on a compressed timeline. Debtors' proposal offering each abuse claimant a $1,500 payment to vote in favor of the Plan—without any scrutiny of the claim whatsoever—only underscores the Debtors' attempt to capitalize on the votes of illegitimate claimants. (Obj. at 43-45.) | UNRESOLVED<br><br>This is an objection to the Plan. Such objections are premature and not ripe for consideration. Objections to the Plan should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Plan improperly exculpates multiple parties, such as the Debtors' attorneys who were with Sidley Austin LLP and now are with White & Case LLP. Sidley took the Debtors on as a client while it still represented Century, and thus had a direct conflict of interest precluding its representation under section 327 of the Bankruptcy Code. Should Century prevail on appeal, the Debtors' attorneys would likely have to disgorge all fees collected under their representation of the Debtors. The Debtors cannot moot Century's appeal by simply inserting an overbroad | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | exculpation provision in the Plan. At a minimum, the Century appeal should be carved out of the exculpation provision. (Obj. at 45-47.) | The exculpation clause is a customary provision. *See* Disclosure Statement, Article VI.O. |
| **Liberty Mutual Insurance Company, together with its affiliates and subsidiaries (collectively, "Liberty")**<br><br>**[D.I. 3578]** | The Disclosure Statement fails to account for treatment of the Liberty Claim and the Liberty Letter of Credit ("**Liberty LC**"). The Claim should be treated as an "Other Secured Claim" classified in Class 2. Assuming the Liberty LC is one of the letters of credit that the Plan anticipates will be drawn on the Effective Date, neither the Plan nor the Disclosure Statement provides for that. If the Claim is an Other Secured Claim, neither the Plan nor the Disclosure Statement states the manner in which Liberty will be allowed to make an election. (Obj. ¶¶ 4-6.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Agreed language has been added to the Disclosure Statement to fully resolve this objection. For the avoidance of doubt, Liberty's Claim will not be classified as an Other Secured Claim. *See* Disclosure Statement, Article III.F.7. |
| | The Disclosure Statement does not explain whether the Plan is insurance neutral. The Disclosure Statement and Plan provide that any Insurance Company that objects to Confirmation or otherwise participates in litigation related to the Confirmation process risks having any rulings be binding (i.e., the Plan is not insurance neutral). (Obj. ¶ 7.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Plan is insurance neutral. However, certain insurers disagree, as disclosed in the Disclosure Statement. *See* Disclosure Statement, Articles III.F.6 and X.A.24.<br><br>This is an objection to the substance of the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and insurance neutrality should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement does not explain risks related to the Insurance Companies' coverage defenses. Debtors neglect to evaluate risks associated with insurers asserting coverage defenses. (Obj. ¶ 7.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | The Disclosure Statement does not explain the contributions that are to be made by the individual Local Councils and Contributing Chartered Organizations. There is no mechanism to guarantee that the Debtors will be able to enforce the commitment (aggregate contribution not less than $425 million), nor is there any disclosure as to what individual Local Councils will contribute in exchange for a global release of all Local Councils. Creditors need to understand what will actually be contributed to the Settlement Trust and not just what the Debtors are "committed" to contributing. (Obj. ¶ 7.) | UNRESOLVED<br><br>The Disclosure Statement states that the Debtors are committed to ensuring that the Local Councils contribute no less than $425 million. *See* Disclosure Statement, Article II.C; *see also* Article V.R. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively, the "AIG Companies")**<br><br>**[D.I. 3523]** | The Disclosure Statement does not have adequate information on: (1) the contributions to the settlement trust, (2) BSA's assets, (3) the local council settlement contribution, and (4) contributing chartered organization settlement contribution. (Obj. ¶ 7.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Companies participating in the Plan and no Contributing Chartered Organizations. The Disclosure Statement now articulates more about the BSA's contribution to the Settlement Trust, and the identities of those parties that could contribute.<br><br>The Disclosure Statement now provides more information on the potential parties to the release. *See* Disclosure Statement, Articles II.A, V.R.2, and VI.O; *see also* Plan, Articles X.F, X.J, and X.L. |
| | Neither the Plan nor Disclosure Statement sets forth any concrete value or even an estimate of the assets that any Local Council has actually committed to contribute. (Obj. ¶ 8.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement states that the Debtors are committed to ensuring that the Local Councils contribute no less than $425 million. *See* Disclosure Statement, Article II.C; *see also* Article V.R. |
| | The Disclosure Statement does not disclose whether the $11.5 million valuation set forth in the Disclosure Statement takes into account the leaseback requirement of the Warehouse and Distribution center. (Obj. ¶ 10.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors clarified this point. *See* Disclosure Statement, Article II.C |
| | 'Local Council' is a blanket term and the Disclosure Statement needs to clarify if the Debtors will give protected party status to Local Councils that make no contribution. (Obj. ¶ 15.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement states that the Debtors are committed to ensuring that the Local Councils contribute no less than $425 million. *See* Disclosure Statement, Article II.C; *see also* Article V.R. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement does not have enough information on the proposed estimation of direct abuse claims. (Obj. ¶ 17.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>As now set forth in the Disclosure Statement, on April 15, 2021, the Debtors filed *Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 2618]. If the Debtors are able to pursue their Global Resolution Plan, pursuant to Article V.T of the Plan, and as further set forth in the Debtors' motion ("**Confirmation Scheduling Motion**") [D.I. 2618], the Bankruptcy Court will conduct an estimation of the Debtors' aggregate liability on account of Direct Abuse Claims in accordance with the procedures set forth therein. *See* Disclosure Statement, Article V.M.5. |
| | The Disclosure Statement should disclose that various parties oppose the aggressive estimation timeline proposed and that the Court may impose an extended, more realistic timeline, which may be inconsistent with the Debtors' expected timeline for confirmation. (Obj. ¶ 18.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>As now set forth in the Disclosure Statement, on April 15, 2021, the Debtors filed *Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 2618]. If the Debtors are able to pursue their Global Resolution Plan, pursuant to Article V.T of the Plan, and as further set forth in the Debtors' motion ("**Confirmation Scheduling Motion**") [D.I. 2618], the Bankruptcy Court will conduct an estimation of the Debtors' aggregate liability on account of Direct Abuse Claims in accordance with the procedures set forth therein. The Disclosure Statement describes the objections to the Confirmation Scheduling Motion. *See* Disclosure Statement, Article V.M.5. |
| | The Disclosure Statement does not disclose that the plan is not insurance neutral. (Obj. ¶¶ 20-24.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Plan is insurance neutral. However, certain insurers disagree, as disclosed in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6,7.<br><br>This is an objection to the substance of the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and insurance neutrality should be considered at the proper time– plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply. *See also* Disclosure Statement, X.A.24. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement does not disclose that the expedited distribution may be impermissible vote buying and promotes fraud. (Obj. ¶¶ 27-29.) | DEBTORS HAVE REVISED PLAN<br><br>The Plan has been modified to unlink the vote to accept the Plan from the election to receive the Expedited Distribution under the Global Resolution Plan. Therefore, this objection is moot. A more fulsome response is set forth in the Debtors' Omnibus Reply. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Article III.B.10. |
| | The Disclosure Statement should disclose that the AIG Companies and other Insurance Companies have meritorious coverage defenses that may substantially reduce the amount of available coverage and that coverage will be subject to expensive and time-consuming litigation in which any Non-Settling Insurance Companies could raise significant coverage defenses, such as exhaustion of underlying limits. (Obj. ¶¶ 30-31). | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | The Disclosure Statement does not have enough disclosures regarding the various insurance coverage risks and contains misleading information about the AIG policies. (Obj. ¶¶ 39-41). | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | Debtors should describe the risks associated with (a) their proposed treatment of self-insured retentions and allocation of deductibles and (b) their attempts to transfer policy coverage to the Settlement Trust in the face of anti-assignment provisions. (Obj. ¶ 31.) The Disclosure Statement should also disclose that the Insurance Assignment may violate any anti-assignment provisions in those policies, resulting in a diminished corpus of the Settlement Trust. (Obj. ¶ 36.). It is unclear whether federal preemption of anti-assignment provisions can or should apply in any context other than where section 524(g) of the Bankruptcy Code is applicable. (Obj. ¶ 36.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| | AIG disputes the alleged lost policies and the Disclosure Statement needs to clarify that the settlement trust may be reduced as a result. (Obj. ¶ 47.). The schedules to the Plan reflect incorrect, misleading, and unsubstantiated information about the AIG Policies, a matter that directly bears on the accuracy and completeness of the Debtors' disclosures about the Insurance Policies, including the AIG Policies that are to be contributed to the Settlement Trust. (Obj. ¶ 40.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of alleged lost policies is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.1. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | |
| **Allianz Global Risks US Insurance Company, National Surety Corporation, and Interstate Fire & Casualty Company (collectively, the "Allianz Insurers")** [D.I. 3549] | The Disclosure Statement does not disclose the Cooperation Agreement. Creditors cannot gauge whether or to what extent the Cooperation Agreement will affect non-debtors or the consequences of a breach of the Cooperation Agreement. (Obj. ¶ 6.) | UNRESOLVED<br><br>The Cooperation Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage.  *See* Plan, Exhibit B, Settlement Trust Agreement, Article IV.L. |
| | Debtors have not disclosed the risks related to insurance coverage defenses. (Obj. ¶ 5.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of insurance coverage defenses is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6.<br><br>Additionally, the Disclosure Statement now has several additional risk factors related to insurance.  *See* Disclosure Statement, Article X.A. |
| | The Expedited Distribution may constitute impermissible vote buying and may violate section 1129(a)(3) of the Bankruptcy Code. (Obj. ¶ 5.) | DEBTORS HAVE REVISED PLAN<br><br>The Plan has been modified to unlink the vote to accept the Plan from the election to receive the Expedited Distribution under the Global Resolution Plan. Therefore, this objection is moot. A more fulsome response is set forth in the Debtors' Omnibus Reply.  *See* Disclosure Statement, Article VII.B. and Article VII.C; *see also* Plan, Article III.B.10 |
| | Plan may be unconfirmable because it either (i) purports to impair the contractual rights of certain of the Debtors' insurers or (ii) contains impermissibly vague neutrality provisions. (Obj. ¶ 7.) | DEBTORS HAVE PROVIDED DISCLOSURE<br><br>This are objections to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation.<br><br>However, the Debtors have provided further disclosure as to risks associated with assignment of Insurance Policies and the dispute related to the insurance neutrality provision of the Plan. *See* Disclosure Statement, Article X.A.<br><br>A more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement should clarify whether the Plan will alter an insurance company's rights and defenses under its insurance policies. (Obj. ¶ 8.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Plan is insurance neutral. However, certain insurers disagree, as disclosed in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>This is an objection to the substance of the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| **Argonaut Insurance Company**<br><br>**[D.I. 3285]** | Debtors assert that the Plan is insurance neutral, but is not; it identifies the Debtors' (and non-debtor affiliates') obligation to pay deductibles and self-insured retentions, but fails to describe how they will be paid. (Obj. ¶ 2.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Plan is insurance neutral. However, certain insurers disagree, as disclosed in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6.<br><br>This is an objection to the substance of the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement does not describe the impact of the Hartford settlement on claims that may be covered by Hartford or which have contributions rights as to Hartford. (Obj. ¶ 2.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information of the Hartford Settlement is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2. |
| | Disclosure Statement fails to explain that no constituency in this case (besides the Debtors) supports the Plan. (Obj. ¶ 3.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement adequately describes the settlements the Debtors have reached with JPM, the Creditors' Committee; however, the Debtors supplemented the Disclosure Statement to describe the settlement with Hartford. *See* Disclosure Statement, Article V.R.2. |
| **Arrowood Indemnity Company**<br><br>**[D.I. 4065]** | Arrowood Indemnity Company joins in the objection filed by Century Indemnity Company (D.I. 3856). (Obj. at 1.) | *See* responses to objection filed by Century Indemnity Company. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **Clarendon National Insurance Company, as Successor by Merger to Clarendon American Insurance Company ("Clarendon")**<br><br>**[D.I. 3558]** | Clarendon joins in the objections filed by Zurich, AIG Companies, and Allianz Insurers [D.I. 3478, 3523, 3549]. (Obj. at 2.) | *See* responses to the objections filed by Zurich, AIG Companies, and Allianz Insurers. |
| **Columbia Casualty Company; The Continental Insurance Company as successor in interest to certain policies issued by Harbor Insurance Company; The Continental Insurance Company successor by merger to Niagara Fire Insurance Company; and The Continental Insurance Company (collectively "Continental Insurance Company")**<br><br>**[D.I. 3582]** | Continental Insurance Company joins in the objections filed by Zurich, AIG Companies, and Allianz Insurers [D.I. 3478, 3523, 3549]. (Obj. at 1-2.) | *See* responses to the objections filed by Zurich, AIG Companies, and Allianz Insurers. |
| **General Star Indemnity** | General Star joins in the objection filed by Allianz Insurers [D.I. 3549]. (Obj. at 1.) | *See* responses to the objection filed by Allianz Insurers. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| Company ("General Star") <br><br> [D.I. 3740] | | |
| Great American Assurance Company, f/k/a Agricultural Insurance Company, Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company, and Great American E&S Insurance Company (collectively, "Great American") <br><br> [D.I. 3271] | The Disclosure Statement fails to disclose that "no constituency" other than the Debtors supports the Plan. (Obj. ¶¶ 2-3.) | DEBTORS HAVE ADDED DISCLOSURE <br><br> The Disclosure Statement adequately describes the settlements the Debtors have reached with JPM, the Creditors' Committee; however, the Debtors supplemented the Disclosure Statement to describe the settlement with Hartford. *See* Disclosure Statement, Article V.R.2. |
| | The Disclosure Statement fails to explain the dynamic whereby the Debtors will be incentivized to make concessions to "claimants with dubious or invalid claims" in exchange for their approval to meet the numerosity requirement. (Obj. ¶ 5.) | DEBTORS HAVE REVISED PLAN <br><br> The Plan has been modified to unlink the vote to accept the Plan from the election to receive the Expedited Distribution under the Global Resolution Plan. Therefore, this objection is moot. A more fulsome response is set forth in the Debtors' Omnibus Reply. *See* Disclosure Statement, Article VII.B. and Article VII.C; *see also* Plan, Article III.B.10. |
| | Debtors pretend that the Plan will pay only compensable claims, but the Plan dos not guard against fraudulent claims. (Obj. ¶ 2.) | DEBTORS HAVE ADDED DISCLOSURE <br><br> As explained in the Disclosure Statement and pursuant to the Trust Distribution Procedures, after a review of the documentation provided by the Abuse Claimant in his or her Trust Claim Submission, materials received pursuant to the Cooperation Agreement Obligations, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid or invalid. The Trust Distribution Procedures are intended to weed out invalid claims. *See* Disclosure Statement, Article VII.B.2 and Article VII.C; *see also* Plan, Exhibit A-1, Global Resolution Plan TDP, Article IV; Plan, Exhibit A-2, BSA Toggle Plan TDP, Article V |
| Travelers Casualty and Surety Company, Inc. (f/k/a AETNA Casualty & Surety Company), St. Paul Surplus Line Insurance | Travelers joins in the objection filed by Great American [D.I. 3271]. (Obj. at 1-2.) | *See* responses to the objection filed by Great American. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **Company and Gulf Insurance Company ("Travelers")**<br><br>**[D.I. 3278]** | | |
| **American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, the "Zurich Insurers")**<br><br>**[D.I. 3478]** | Disclosure Statement fails to notify Abuse Claimants and other parties in interest that much of the excess insurance coverage purchased by the BSA (particularly policies purchased in 1986 and thereafter) is subject to self-insured retentions ("**SIRs**") of at least $1 million that either must be satisfied before coverage can be accessed under those policies or, possibly, withheld from any payments otherwise owed by excess insurers to Abuse Claimants. (Obj. at 1.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information regarding self-insured retentions is now set forth in the Disclosure Statement.  *See* the Disclosure Statement, Article III.F.6, Article VI.A.22, and Article X.A. |
| | The existence of SIRs in Debtors' coverage is barely acknowledged in the Plan and the Disclosure Statement. The Disclosure Statement is completely silent on issues that would be important for Abuse Claimants to consider (i.e., whether excess insurance coverage would or might be available to pay his claim, if allowed; whether his recovery will be reduced by the amount of applicable SIRs; the projected amount of trust funds that would be expended to satisfy SIRs). (Obj. at 4-5.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information regarding self-insured retentions is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.6, Article VI.A.22, and Article X.A. |
| | The Disclosure Statement is misleading in describing the Settlement Trust's responsibility with respect to SIRs; the suggestion that excess insurers will have to pay SIR amounts and then assert Indirect Abuse Claims against the Settlement Trust to recover their SIR payments is contrary to law. (Obj. at 6.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>Adequate information regarding self-insured retentions is now set forth in the Disclosure Statement. *See* Disclosure Statement, Article III.F.6. |
| | The "risk factors" must be modified to add a discussion of the risk that the excess insurers will successfully assert that their payment obligations are limited or eliminated by the SIRs, which would affect the potential insurance recoveries of Abuse Claimants. (Obj. at 5.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.A. |
| <div align="center">**<u>CHARTERED ORGANIZATIONS</u>**</div> | | |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **The Church Of Jesus Christ Of Latter-Day Saints, A Utah Corporation Sole**<br><br>**[D.I. 3263]** | The value the Church would retain—the value attributable to retaining coverage and related rights under various insurance policies—in a chapter 7 liquidation is greater than what it would receive under the Plan. (Obj. ¶ 19.) | RESOLVED<br><br>The Church's objection misapprehends the effect of the Plan on Chartered Organizations' rights under the Insurance Policies if the Plan is confirmed as a Global Resolution Plan. If the Plan is confirmed as a Global Resolution, all rights and obligations under or with respect to Insurance Policies (but not the policies themselves) will be assigned and transferred to the Settlement Trust as of the Effective Date. The Insurance Assignment described in the foregoing sentence does not, however, divest the Church (or any other Person with rights under the Insurance Policies) of the value attributable to the insurance coverage and related rights. Rather, the Church may assert against the Settlement Trust any Indirect Abuse Claim that, but for the Insurance Assignment, the Church could have asserted under an Insurance Policy. As set forth in the Disclosure Statement, the Debtors project that holders of Indirect Abuse Claims may recover up to the full amount of such Claims from the Settlement Trust. *See* Disclosure Statement, Article II.C.8; *see also* Disclosure Statement, Footnote 22. |
| | Chartered Organizations will likely have significant claims against the Settlement Trust for indemnification and/or contribution as they are forced to defend themselves for scouting related claims in the tort system. Yet, the Disclosure Statement includes an estimate that Indirect Abuse Claims will be allowed in the amount of zero dollars, despite the fact that they are likely to materially affect recoveries to holders of Direct Abuse Claims. (Obj. ¶ 27.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan and the assignability of non-debtor insurance rights. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and releases should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | Direct Abuse Claims are projected to receive significant recoveries from the Settlement Trust. Indirect Abuse Claims, despite being the same priority under the Bankruptcy Code, will receive nothing. Inherent in the Plan is some concept, statute or doctrine on which BSA is relying on to subordinate or disallow Indirect Abuse Claims. (Obj. ¶ 27.) | RESOLVED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII.<br><br>Additional disclosure has also been added regarding the indemnification claims filed against the BSA. *See* Disclosure Statement, Article V.M.2 |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | Neither the Plan nor the Disclosure Statement provide any explanation as to the intended effect of the TDPs, § 8.1 provision on holders of Indirect Abuse Claims, nor how the Settlement Trustee will treat indirect abuse claims in processing and liquidating such claims. (Obj. ¶ 20.) | RESOLVED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII. |
| | The Plan and TDPs must clarify how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and whether the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. (Obj. ¶ 24.) | RESOLVED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII. |
| | The Disclosure Statement fails to discuss the full extent of the BSA's contractual and state law obligations to indemnify and hold harmless the Church (and potentially other chartered organizations) for costs incurred in defending and resolving any scouting-related abuse claims that may be asserted against such organizations in the tort system. The Plan may extinguish BSA's indemnity obligations through the vague TDPs. (Obj. ¶ 27-28.) | RESOLVED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII. |
| | The Disclosure Statement does not provide information regarding the church's rights under the BSA's and Local Councils insurance policies. The Disclosure Statement does not accurately reflect the terms and coverage limits of policies issued to the BSA and Local Councils, the rights to insurance coverage held by the Church (and other chartered organizations), and the proper interpretation of the "occurrence" trigger as it relates to the Church and other chartered organizations. (Obj. ¶ 29.) | RESOLVED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved.  *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII. Moreover, the Debtors disclose that the Church believes that it has indemnification claims against the BSA. |
| | The Disclosure Statement states that the First Encounter Agreement ("**FEA**") governs policies issued by "several of the BSA's [] Insurance Companies[.]" See Disclosure Statement, Article VIII.F.3. This is incorrect and a blatant attempt to manipulate the terms of the coverage available to the Church and other chartered organizations. (Obj. ¶ 32.) | UNRESOLVED<br><br>The Debtors are not sure what the "occurrence" trigger is or how it relates to the Church or other Chartered Organizations. However, the description |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | of the Debtors' insurance policies has been expanded and adequate. *See* Disclosure Statement, Article III.F. |
| **The Knights of Columbus, 1 Columbus Plaza, New Haven, CT 06510; Knights of Columbus, Council #462 ("Council #462"); Knights of Columbus, Saratoga Council #246 a/k/a Saratoga Knights of Columbus ("Council #246"); and Knights of Columbus, Father Baker Council #2243 ("Father Baker Council"), as well as any and all other Knights of Columbus councils, and or entities (collectively the "Knights of Columbus entities")**<br><br>**[D.I. 3270]** | The Insurance Assignment contemplated by the Global Resolution Plan is inequitable to holders of indirect Abuse Claims because it (i) forces such holders "to defend themselves in any judgment that is rendered against them without the benefit of [their] bargained for coverage from BSA"; and (ii) leaves such holders with no recourse to excess judgment amounts exceeding the values set forth in the Claims Matrix Points system. (Obj. at 4.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now articulates the disagreement with respect to the FEA. *See* Disclosure Statement, Article III.F.4. |
| | The Disclosure Statement does not contain adequate information regarding the details of how to become a Contributing Charted Organization and the amount of the Contribution Chartered Organization Settlement Contribution, so Chartered Organizations are unable to assess their ability to become a Contributing Charted Organization, or to perform a cost/benefit analysis of the benefits and/or risks of contributing to the Plan or not. (Obj. at 5-6.) | RESOLVED; DEBTORS HAVE ADDED DISCLOSURE<br><br>The Plan and TDPs have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. Moreover, the Debtors disclose that the Church believes that it has indemnification claims against the BSA. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.C.7 and Article VII. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **Roman Catholic Archbishop of Los Angeles, a corporation sole ("RCALA"), and its related BSA-chartered organizations (the "ADLA Chartered Organizations")**<br><br>**[D.I. 4092]** | Roman Catholic Archbishop of Los Angeles, a corporation sole ("RCALA"), and its related BSA-chartered organizations (the "ADLA Chartered Organizations") joins in the objection filed by The Church Of Jesus Christ Of Latter-Day Saints, A Utah Corporation Sole (D.I. 3266). (Obj. at 2.) | UNRESOLVED<br><br>The Disclosure Statement does not describe how much a Chartered Organization must contribute to become and Contributing Chartered Organization because the amount is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. *See* Plan, Article I.A.66. |
| **Roman Catholic Archbishop of San Francisco**<br><br>**[D.I. 3853]** | Roman Catholic Archbishop of San Francisco joins in the objection filed by The Church Of Jesus Christ Of Latter-Day Saints, A Utah Corporation Sole [D.I. 3266]. (Obj. at 1.) | *See* responses to objection filed by The Church Of Jesus Christ Of Latter-Day Saints, A Utah Corporation Sole. |
| **United Methodist Ad Hoc Committee**<br><br>**[D.I. 3273]** | The Disclosure Statement offers no details as to the contributions a Chartered Organization must make in order to become a Contributing Chartered Organization, nor does it provide any specific terms regarding the protection the Contributing Chartered Organization's will receive in exchange for their contribution. (Obj. ¶ 7.) | *See* responses to objection filed by The Church Of Jesus Christ Of Latter-Day Saints, A Utah Corporation Sole. |
| | The Disclosure Statement fails to provide adequate information on "policy year by policy year information on the BSA Insurance Policies setting out the total amount of coverage purchased for each year." (Obj. ¶ 5.) | MIXED<br><br>The Disclosure Statement does not describe how much a Chartered Organization must contribute to become and Contributing Chartered Organization because the amount is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article V.R.2.d. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | The Disclosure Statement fails to provide "the legal justifications for the implied subordination of Indirect Abuse Claims to Direct Abuse Claims." (Obj. ¶ 5.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. |
| **OTHER** | | |
| **Girl Scouts of the United States of America**<br><br>**[D.I. 3579]** | The Disclosure Statement does not provide the basis for the classification and treatment of Girl Scouts' claims when compared to other Non-Abuse Litigation Claims. Girl Scouts' claims that are being liquidated and allowed in the Trademark. | UNRESOLVED<br><br>This is an objection to the substance of the Plan. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| | The Disclosure Statement does not include an estimated amount of the Non-Abuse Litigation Claims, nor does it disclose any information related to the referenced insurance policies that would apply to such claims. There is not enough information to determine whether or not there is sufficient insurance coverage to cover the potential claims in the Non-Abuse Litigation class. Holders of Non-Abuse Litigation Claims are unable to determine: (1) the total amount of potential claims in this class; (2) the insurance policies that apply to such claims and what, if any, limitations exist in their application; (3) the limits of the insurance policies that apply to such claims; (4) the remaining coverage available under the insurance policies that apply to such claims. (Obj. ¶ 15.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now states that the Debtors believe that coverage is sufficient to cover defense costs and any liability that may arise, which the debtors believe is none. *See* Disclosure Statement, Article V.Q.1. |
| **United States Trustee**<br><br>**[D.I. 3581]** | The Disclosure Statement lacks financial information, including the funding of the settlement trust. Despite its length, the Disclosure Statement does not contain the most important information for most creditors: what they can expect to receive and when. (Obj. ¶ 15-21.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Debtors believe the Disclosure Statement provides more than adequate information on what creditors can expect to receive and when. The Disclosure Statement contains a chart with the estimated amount and approximate percentage of recovery for each Class of Claims. *See* Disclosure Statement, Article II.C; *see also* Article V.R. The Trust Distribution Procedures will establish the methodology for resolution of Abuse Claims, establish the process by which Abuse Claims will be reviewed by the Settlement Trust, and will specify liquidated values for |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | compensable Claims based on the nature of the underlying Abuse. For more information on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. For the Trust Distribution Procedures, *see* Plan, Exhibits A-1 and A-2. |
| | The financial disclosures should show: (1) The estimated or actual contribution for each revenue source of the settlement trust; (2) the identities and amounts contributed by each protected party and released party; and (3) the likelihood of any net unrestricted cash and investments greater than $75 million being available for distribution. (Obj. ¶ 18-19.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now describes the BSA's contribution to the Settlement Trust, the identities of those parties that could contribute and that have committed to contribute to the Settlement Trust in exchange for the benefits of the Channeling Injunction.  *See* Disclosure Statement, Article V.R; *see also* Article II.C. |
| | The Plan does not disclose the value of particular assets that will fund the Plan (i.e., artwork). | UNRESOLVED<br><br>The Liquidation Analysis includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property, formulated in discussion with the Debtors' financial advisors. *See* Disclosure Statement, Exhibit B; *see also* Disclosure Statement, Article II.C. |
| | There is no discussion on how BSA will fulfill the commitment to raising $425 million from the Local Councils.  (Obj. ¶ 17.) | UNRESOLVED<br><br>The Disclosure Statement states that the Debtors are committed to ensuring that the Local Councils contribute no less than $425 million. *See* Disclosure Statement, Article II.C; *see also* Article V.R. |
| | The Disclosure Statement does not describe how the Settlement Trustee will be chosen or how a proposed Settlement Trust Advisory Committee will be selected. (Obj. ¶ 20.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>A Settlement Trustee will appointed by the Bankruptcy Court. The Settlement Trust Agreement enumerates the Settlement Trustee's powers, duties, and limitations. These include, among others: the power to distribute assets of the Settlement Trust to holders of Abuse Claims pursuant to the terms and conditions and the procedures for distributions established in the Trust Distribution Procedures; to assist the Litigation Trustee prosecute Settlement Trust Causes of Action, the Insurance Actions, and the Insurance Coverage Actions on behalf of holders of Abuse Claims; to enforce the Settlement Trust's rights in the Settlement Trust Assets, including through judicial proceedings or bankruptcy/insolvency proceedings; and to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purposes of the Settlement Trust or to maintain and administer the Settlement Trust. *See* Plan, Exhibit B, |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | Settlement Trust Agreement, § 4.1. The Debtors also added more disclosure around the TDPs and the way claims will be handled. *See* Disclosure Statement, Articles VII.A, VII.B, and VII.C.<br><br>The Debtors will provide the identity of the Settlement Trustee in the Plan Supplement. The Disclosure Statement (Article VII), Trust Distribution Procedures (Plan, Exhibit A-1 and Exhibit A-2), and Settlement Trust Agreement (Plan, Exhibit B) provide more than adequate information regarding the administration of the Settlement Trust. |
| | The liquidation analysis presumes debtors do not need to satisfy the "Best Interest of Creditors" test because they are non-profit. The Debtors should explain the legal basis and authority for the contention that the best interest test does not apply to non-profit debtors. Alternatively, the Disclosure Statement should show what would be available for distribution under a liquidation and compare the Liquidation Analysis to the proposed plan to demonstrate how the Plan satisfies the "Best Interests of Creditors" test. The liquidation analysis fails to account for insurance rights belonging to BSA that are a part of the BSA settlement trust contribution. It is also unclear if the artwork portfolio is included and what assets are included in the line item "land, building, and equipment." (Obj. ¶ 21.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>This is an objection to the substance of the Plan and in connection with the "Best Interests of Creditors" test. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply.<br><br>Nevertheless, although the Debtors maintain their position that nonprofit organizations are not required to satisfy the best interest test, the Debtors have provided Liquidation Analyses, which show that the Plan satisfies the "Best Interests of Creditors" test.  *See* Liquidation Analysis, attached as Exhibit B to the Disclosure Statement; *see also* Disclosure Statement, Article IX.D. |
| | Though styled as a Channeling Injunction, the releases described in Section X.J.3 of the Plan are simply a specialized form of a non-consensual third-party release. (Obj. ¶ 12.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan and releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and releases should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | Because the ability of creditors to opt out of the Plan's section X.J.4 release is conditioned on their decision to vote for or against the plan, the effect of these releases should be clarified prior to Plan solicitation. The right of accepting creditors to opt out of releases should not be restricted unless the Disclosure Statement is amended to more clearly advise creditors of the consequences of their vote to accept. (Obj. ¶¶ 24, 33.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now provides clear notice of the consequences of a vote to accept or reject the Plan as it pertains to Article X.J.4 of the Plan. *See* Disclosure Statement, Article V.R.2.d and Article II.A. |
| | In other cases, the opt out provisions are deficient because they apply only to creditors who vote against the Plan, and not to other creditors who will be affected by the release but who have no ability to vote or opt out. Thus, the Plan's definition of Releasing Claim Holder (I.A.190) does not permit holders of Claims to opt out if they were presumed to accept the Plan (Priority Claims and Other Secured Claims), nor if they failed to return a ballot. The releases cannot be considered "consensual" with respect to those claimants, and the Plan should not be approved unless those releases are amended to apply only to those creditors who affirmatively assent. (Obj. ¶ 34.) | DEBTORS HAVE REVISED PLAN<br><br>This Plan has been modified to provide that holders of Unimpaired Claims may opt out of the consensual third party releases by objecting to the releases. *See* Plan, Article I.A.196, definition of "Releasing Claim Holder." Case law supports providing an opt out to voting classes, as set forth in the Plan. A more fulsome response is set forth in the Debtors' Omnibus Reply. *See also* Plan, Article X.J.4. |
| | It is difficult to ascertain which causes of action will or will not be subject to a release or the channeling injunction. (Obj. ¶ 3.) The Disclosure Statement needs to explain which rights and liabilities will be channeled to the settlement trust, which will be released, and which will be unaffected. (Obj. ¶ 22.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement contains further description of the channeling injunction. *See* Disclosure Statement, Article V.R.2.d. |
| | The Plan's treatment of "Future Claims" is unclear. (Obj. ¶ 23.) | DEBTORS HAVE ADDED DISCLOSURE<br><br>The Disclosure Statement now articulates that Future Abuse Claims are within the definition of Direct Abuse Claims under the Plan and treated as such. *See* Disclosure Statement, Article IV.A. |
| | The Disclosure Statement improperly seeks to effect non-consensual release of administrative and tax claims. (Obj. ¶ 3.). The Disclosure Statement should clarify the treatment of administrative expense claimants and priority tax claimants. (Obj. ¶ 25.) | DEBTORS HAVE REVISED PLAN<br><br>The Plan has been modified to remove administrative claimants and priority tax claimants from the consensual third-party releases. Therefore, this objection is moot. *See* Plan I.A.196, definition of "Releasing Claim Holder." |
| | Requiring administrative claimants opt out of the third-party releases or be bound to them is objectionable. This provision precludes any non-ordinary course administrative claimant from pursuing a claim against the Debtors or any third-party. (Obj. ¶ 26.) | DEBTORS HAVE REVISED PLAN<br><br>The Plan has been modified to remove administrative claimants and priority tax claimants from the consensual third-party releases. Therefore, |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | this objection is moot. *See* Plan I.A.196, definition of "Releasing Claim Holder." |
| | The exculpation provision is overly broad. (Obj. ¶ 3.) A Creditor Representative is not an estate fiduciary and should be removed from the definition of exculpated parties. (Obj. ¶ 28.) Plan section X.K proposes that exculpated parties "shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence." (Obj. ¶ 29.). This provision should be stricken. (Obj. ¶ 29.). Plan section X.K proposes to exculpate parties from conduct taking place not only during the case, but also for "the administration, consummation and implementation of the Plan or the property to be distributed under the Plan, or the management or operation of the Debtors." (Obj. ¶ 27.). Future exculpation for acts that have not yet occurred is impermissible. (Obj. ¶ 27.) This provision should be revised to apply only to conduct before the Effective Date. (Obj. ¶ 27.) | UNRESOLVED<br><br>This is an objection to the substance of the Plan and releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the substance of the Plan and releases should be considered at the proper time– plan confirmation.<br><br>The exculpation provision has been amended so that it only applies to the period on or before the Effective Date. The Creditor Representative will be appointed on the Effective Date. Therefore, the exculpation provision will only benefit such representative on the Effective Date. This is a standard exculpation provision. *See* Disclosure Statement, Article VI.O. |
| | The expedited distribution option should be explained and not conditioned on a claimant's plan vote. The Disclosure Statement should explain the risk that the trust is vulnerable to fraudulent claims. The expedited payment option violates the Code requirement that all claims within the same class receive identical treatment, and it is in bad faith and should be excised from the Plan. (Obj. ¶¶ 30-32.) | DEBTORS HAVE REVISED PLAN<br><br>The Plan has been modified to unlink the vote to accept the Plan from the election to receive the Expedited Distribution under the Global Resolution Plan. Therefore, this objection is moot. A more fulsome response is set forth in the Debtors' Omnibus Reply.  *See* Disclosure statement, Article VII.B and VII.C; *see also* Plan, Article III.B.10. |
| **SOLICITATION PROCEDURES** | | |
| **Gordon & Partners, P.A. Claimants**<br><br>**[D.I. 2739]**<br><br>**[***See also*** **D.I. 2741, 2845, 2902, 3150, 3153, 3154, 3155, 3156, 3157, 3158, 3159, 3160, 3162, 3163, 3165, 3167, 3175, 3176, 3177, 3178, 3181, 3183, 3193, 3194, 3198, 3205, 3207, 3211,** | The Disclosure Statement and Solicitation Procedures disenfranchise the votes of survivors in the event that more than one law firm submits a ballot on behalf of the same claimant.  The Debtors' voting and Solicitation Procedures should require them, in the event that the votes submitted by two law firms on behalf of the same abuse survivor conflict, to verify which law firm has the authorization to submit a ballot for the claimant. The Debtors do not explain how they intend to solicit and count votes under this circumstance, including how to ensure such claimants do not vote multiple times, how to determine who can vote on behalf of such claimants, and how to determine which vote to count if inconsistent votes are submitted on behalf of the same claimant. (D.I. 2739 at 13-14.) | The Debtors dispute this Objection to the extent the Objectors argue that survivors will be disenfranchised by the Solicitation Procedures, and believe that the Solicitation Procedures already address this Objection.<br><br>In the event that more than one law firm submits a ballot on behalf of the same holder of a Direct Abuse Claim, § IV.F of the revised proposed Solicitation Procedures [D.I. 2726, Ex. 1] provides that to the extent the Debtors receive a Master Ballot from two different Firms on account of the same Direct Abuse Claim with conflicting votes on the Plan, the Debtors shall reach out to both Firms, with notice of such communication to counsel to the Tort Claimants' Committee and the Coalition of Abused Scouts for Justice, and request written documentation of each Firm's representation of such claimant.  If representation of the holder of the Direct Abuse Claim is not resolved within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| 3214, 3219, 3222, 3225, 3226, 3231, 3243, 3249, 3252, 3253, 3254, 3255, 3256, 3257, 3258, 3260, 3261, 3262, 3265, 3267, 3275, 3279, 3281, 3309, 3424] | | The Debtors submit that this procedure is sufficient to resolve any conflicting votes on a Master Ballot and ensure that such claimant's vote is properly counted. Further, the Solicitation Agent will engage in review of data that is required on Master Ballot Exhibit such as claimant name, claim number, last four digits of social security number, and date of birth in order to address duplicative votes. |
| **Tort Claimants' Committee**<br><br>**[D.I. 3526]** | The solicitation and confirmation timeline outlined in the Solicitation Procedures Motion no longer applies because the hearing on the Disclosure Statement has been moved.  As such, survivors and their counsel should have no less than 60 days to vote on the Plan, and all other dates must be extended.  (D.I. 3526 at 57.) | The Debtors believe that they have already resolved this Objection.<br><br>The Debtors have revised the proposed solicitation and confirmation timeline as developments in the case have occurred, as may be seen in the proposed revised Solicitation Procedures Order and exhibits filed on April 28, 2021 [D.I. 2726].  The current proposed timeline extends all dates from the original Solicitation Procedures Motion and provides a minimum of 58 days for all voting creditors to vote on the Plan. |
| | Under the proposed Solicitation Procedures, the Debtors will only solicit the holder of a claim, or his/her counsel, that was filed most recently.  The Debtors should be required to send a Ballot to (a) each counsel that filed a claim on behalf of a survivor and (b) to the survivor to the extent that a survivor filed a claim on behalf of himself or herself.  (D.I. 3526 at 57-58.) | The Debtors made changes to the Solicitation Procedures filed on April 28, 2021 that resolve this Objection.  (D.I. 2726, Ex. 1, § IV.A.3.)  The Debtors deleted the procedure providing that only the most recently-filed duplicative Direct Abuse Claim would be solicited. |
| | The Debtors' procedures involve an attorney solicitation directive to the survivors' counsel to determine each counsel's preference for master ballot or direct solicitation of their abuse survivor clients.  But survivors, not their counsel, should make the initial decision on the type of solicitation.  The indication on a survivor's proof of claim form of whether the Debtors should contact a survivor directly or their counsel about the claim should also take precedence.  (D.I. 3526 at 59.) | The Debtors dispute this Objection, and assert that they are already appropriately accounting for the preferences of survivors as indicated on their proofs of claim.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | The Debtors should revise § IV.F.3 of the Solicitation Procedures to provide that if multiple votes are received from different law firms for the same abuse survivor, the Debtors should count the survivor's vote one time and the Debtors should not sort out which law firm controlled the vote of the survivor.  If the votes on master ballots conflict, then the Debtors should require the firms to produce an engagement letter showing their authority to act on behalf of the survivor but only to the extent the conflicting vote might change the outcome of the vote on the Plan.  (D.I. 3526 at 59-60.) | Section IV.F of the Solicitation Procedures already provides for this.<br><br>If multiple votes are received from different law firms for the same abuse survivor and they are the same, one vote will be counted.  If the votes conflict, the Debtors propose that they shall reach out to both Firms, with notice of such communication to counsel to the Tort Claimants' Committee and the Coalition of Abused Scouts for Justice, and request written documentation of each Firm's representation of such claimant.  If representation of the holder of the Direct Abuse Claim is not resolved |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted. |
| | The Solicitation Procedures governing conflicting duplicative votes on Master Ballots should permit the parties fourteen (14) days to resolve conflicting votes, not ten (10) days.  (D.I. 3526 at 60.) | The Debtors dispute this Objection.<br><br>Because the Solicitation Agent has 14 days from the Voting Deadline to complete its voting certification, setting the time period to resolve any conflicting law firm votes at 10 days provides the Solicitation Agent with the necessary amount of time to both identify conflicting votes and notice them out to law firms so that they can be resolved prior to deadline to file the Voting Report. |
| | The Ballots should identify the Local Council that an abuse survivor is being asked to release by voting to accept the Plan.  The Debtors should research the names of Local Councils based on the location of the abuse. (D.I. 3526 at 60.) | The Debtors dispute this Objection.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. This information is not relevant to the solicitation process, nor is it feasible to obtain.  The Debtors propose to add a link and instructions to the Direct Abuse Claim Ballot and Master Ballot and the Indirect Abuse Claim Ballot that will direct claimants to a list of potential Protected Parties under the Plan. |
| | The Tort Claimants' Committee should be permitted to send a cover letter to abuse survivors as part of the solicitation materials.  (D.I. 3526 at 61.) | The Debtors agree to work with the Tort Claimants' Committee on this request, as set forth in the Debtors' Omnibus Reply. |
| | Under § V.B.10 of the Solicitation Procedures, the Debtors should be required to obtain the consent of the Tort Claimants' Committee or provide notice and opportunity for a hearing prior to entering into any stipulation with an abuse survivor with respect to the amount of the claim for voting purposes.  (D.I. 3526 at 61.) | The Debtors believe that the Tort Claimants' Committee's Objection is resolved through a change to § V.B.10 of the proposed Stipulation Procedures, as follows: "The Debtors are authorized to enter into stipulations or other agreements with the holder of any Claim agreeing to the amount of a Claim for voting purposes, and will provide notice and an opportunity for a hearing on any such stipulation." |
| | Under § V.D.8 of the Solicitation Procedures, the Debtors should be required to obtain the consent of the Tort Claimants' Committee or provide notice and opportunity for a hearing prior to authorizing the withdrawal or modification of a ballot related to an abuse survivor after the voting deadline.  (D.I. 3526 at 61.) | The Debtors do not agree to this revision to the proposed Solicitation Procedures.<br><br>The Debtors believe that the Objection may be resolved through the following change to § V.D.8 of the Solicitation Procedures: "After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors, and any such withdrawal or modification shall be detailed in the Voting Report filed by the Solicitation Agent." |
| | Under § V.D.13 of the Solicitation Procedures, the Debtors should be required to obtain the consent of the Tort Claimants' Committee or provide | The Debtors do not agree to this revision to the proposed Solicitation Procedures. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | notice and opportunity for a hearing prior to waiving any defects with respect to a Ballot submitted by an abuse survivor. (D.I. 3526 at 62.) | Section V.D.7 of the proposed Solicitation Procedures already adequately address this Objection, which provides that: "Delivery of a defective or irregular Ballot shall not be deemed to have been made until such defect or irregularity has been cured or waived by the Debtors. Any waiver by the Debtors of defects or irregularities in any Ballot shall be detailed in the Voting Report filed by the Solicitation Agent." |
| | Section V.D.16 of the Solicitation Procedures, which provides that if a class under the Plan does not receive any votes, then that class will be deemed to have accepted the Plan, is contrary to section 1126 of the Bankruptcy Code. (D.I. 3526 at 62.) | The Debtors believe that an objection to this procedure is resolved through a change to the Solicitation Procedures such that this issue will be a Plan confirmation issue and not a Solicitation Procedures or Disclosure Statement issue, as follows: "Subject to entry of the Confirmation Order providing for such relief, if no Ballot is submitted in a Class, then such Class shall be deemed to have voted to accept the Plan." <br><br> Regardless of this change, the Debtors believe that this is only a hypothetical issue at this stage of the case, which may not be relevant at confirmation if there are no classes that have not submitted a Ballot. In both *Tribune* and *Adelphia*, the bankruptcy court held that inaction by a non-voting single class creditor constituted acceptance of the Plan where it was made clear in the Plan-related and solicitation documents. *See In re Tribune Co.*, 464 B.R. 126, 183-84 (Bankr. D. Del. 2011); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 260 (Bankr. S.D.N.Y. 2007). |
| | Under § V.D.20(b) of the Solicitation Procedures, the Debtors should be required to obtain the consent of the Tort Claimants' Committee prior to granting an extension of time for any abuse survivor to submit a Ballot. (D.I. 3526 at 62.) | The Debtors do not agree to this revision to the proposed Solicitation Procedures. This appears to suppress the ability of voting creditors, including abuse survivors, to vote on the Plan under certain extenuating circumstances. |
| **Coalition of Abused Scouts for Justice** <br><br> **[D.I. 3569]** | The solicitation materials should include a letter from the Coalition recommending that abuse survivors vote to reject the Plan. (D.I. 3569 at 21.) | The Debtors agree to work with the Coalition on this request, as set forth in the Debtors' Omnibus Reply. |
| **United States Trustee** <br><br> **[D.I. 3581]** | The proposed Solicitation Procedures set the confirmation hearing for the week of August 30, 2021, which is one month after the proposed voting deadline and does not align with the Debtor's earlier disclosures that the hearing would take place in late July or early August, and the date was not disclosed until April 29, 2021. August 30 is near the Labor Day holiday and during a week with a lot of vacations, and this should be moved to earlier in August or after September 12 so that parties in interest do not have to cancel their vacation plans. (D.I. 3581.) | The Debtors do not agree to this Objection to the confirmation schedule. <br><br> The Debtors' prior statements about the timing of the confirmation hearing were made prior to other developments in the case, and the hearing was proposed based on the time that was available from the Bankruptcy Court. The Debtors have provided four months of notice regarding the proposed Confirmation Hearing date through the disclosure on April 29, 2021. The Debtors have also factored discovery dates and |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | protocols into the available timing, as set forth in the *Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief* [D.I. 2618], filed on April 15, 2021. |
| | For Master Ballots, the proposed Solicitation Procedures have a default that if no directive is received the attorney will vote on an abuse survivor client's behalf.  Instead, the default should be for a claimant to vote his or her abuse claim directly.  (D.I. 3581 at 16.) | The Debtors believe this Objection is resolved.<br><br>The Debtors removed this default from § IV.A of the revised proposed Solicitation Procedures [D.I. 2726, Ex. 1] filed on April 28, 2021.  If an attorney has not affirmatively elected the Master Ballot method in the directive or did not return the directive, such abuse survivor clients' votes will be directly and individually solicited on the Plan. |
| | The Disclosure Statement should confirm that the Debtors will not be objecting to claims after the Solicitation Date and prior to the Voting Deadline, so that claimants are not disenfranchised by an interposed objection, because they might be unaware of the Rule 3018 procedures and deadlines that require additional steps in order for their votes to be "re-counted." (D.I. 3581 at 16.) | The Debtors dispute this Objection.<br><br>Claimants will not be disenfranchised by an interposed objection.  The Debtors' procedures provide that, for any claim objection filed <u>after</u> the Solicitation Date, the applicable claim shall be deemed temporarily allowed solely for voting purposes. Such claimants' votes will be counted and they will not have to undertake additional steps in order for their votes to be counted.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | The Debtors should not be permitted to send only a notice containing directions to access the solicitation materials online, instead of complying with Bankruptcy Rule 3017's requirement that these materials be mailed, or at least provided on a flash drive or other media containing complete electronic copies. (D.I. 3581 at 17.) | The Debtors are proposing to mail the cover letter, the Confirmation Hearing Notice, and the Ballot to the voting classes, and are proposing to provide website links to the Plan, the Disclosure Statement, and the Solicitation Procedures Order and exhibits.  It is cost-prohibitive and inefficient to mail what amounts to over 900 pages, and growing given the number of creditors in this case, and providing links comports with the way that most parties access documents today.<br><br>A more detailed response is set forth the Debtors' Omnibus Reply. |
| | The Solicitation Procedures impermissibly provide that if there are no votes cast in a voting class, the class will be deemed to have accepted the Plan. This is contrary to section 1126(c) of the Bankruptcy Code. | See response above to the same Objection from the Tort Claimants' Committee on this issue. |
| **Century Indemnity Company** | The claims pool must be vetted and invalid abuse claims removed before solicitation can commence.  Without discovery such as that requested under Century's pending Rule 2004 motions, the solicitation is vulnerable to manipulation.  (D.I. 3857 at 11-13.) | The Debtors dispute this Objection.<br><br>Pursuant to section 502(a) of the Bankruptcy Code, a proof of claim has the effect that the Bankruptcy Code gives it.  It is *prima facie* evidence of |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| **[D.I. 3857]** | | the validity of a claim.  The assertion that the Debtors are impermissibly dispensing with judicial scrutiny of Abuse Claims prior to solicitation of the Plan represents a flawed understanding of two independent processes—claim objections and plan solicitation.  The Debtors are not in violation of section 502(a) by assigning the right to prosecute Abuse Claims exclusively to the Settlement Trust, and this has been approved in many other mass tort cases—as has temporarily allowing a large body of contingent, unliquidated tort claims for voting purposes pursuant to Bankruptcy Rule 3018(a).<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply.. |
| | With respect to the claims pool and invalid abuse claims, the solicitation procedures and ballots lack procedural safeguards, and there is no showing required that counsel is authorized to cast votes or that counsel must comply with Bankruptcy Rule 2019.  Parties are excluded from the process of evaluating a claimant's assertion that he or she has a valid claim and is therefore entitled to vote.  Filing a proof of claim initiates a process under section 502(a) where any party in interest may object to a proof of claim so the court can determine whether they should be entitled to vote and in what amount.  (citing 502(a), 3007, 3018)).  The procedures cannot be reconciled with Bankruptcy Rule 3018, which confers on the court the authority to determine which claims are valid for voting purposes.  (D.I. 3857 at 14-16.) | The Debtors dispute this Objection.<br><br>Law firms submitting votes on a Master Ballot are simply documenting the votes of their Abuse Survivor Clients in compliance with Bankruptcy Rule 3018(c). Century conflates section 502 of the Bankruptcy Code with Bankruptcy Rule 3018, and rehashes arguments that seek to impermissibly deprive the proofs of claim of *prima facie* validity under section 502(a) of the Bankruptcy Code and Bankruptcy Rule 3001.  Law firms submitting votes on behalf of their clients as "authorized agents" must comply with Bankruptcy Rule 3018(c).  The Master Ballot complies with this rule.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | With respect to the claims pool and invalid abuse claims, the proposed $1,500 Expedited Distribution payments in exchange for votes exacerbate the problem and violates section 502(a) of the Bankruptcy Code because parties will not have an opportunity to object to those payments.  (D.I. 3857 at 16-17.) | The Debtors have addressed this Objection in the Debtors' Omnibus Reply.<br><br>In the event that the Global Resolution Plan is confirmed, the Expedited Distribution has been de-coupled from the vote on the Plan.  The Expedited Distribution is governed by the Trust Distribution Procedures, and the Settlement Trustee will be responsible for claims review in accordance with the Trust Distribution Procedures. |
| | The Solicitation Procedures improperly disenfranchise holders of abuse claims and give undue influence to Coalition law firms through the use of Master Ballots, which will taint the voting process because: (1) the Debtors will reach out to law firms, rather than individual abuse claimants, and such claimants will not receive copies of the Plan or the Disclosure Statement, and (2) the volume of abuse claims invites abuse because it is implausible that law firms will have sufficient time to contact their clients and record their votes on the Master Ballot.  (D.I. 3857 at 18-19.) | The Debtors dispute this Objection.<br><br>Approximately 95% of abuse survivors submitted proofs of claim listing a law firm, and most of these survivors indicated on their claim forms that communications with their counsel were permissible.  The Debtors are entitled to rely on this information and to correspond with counsel that abuse survivors have expressly disclosed to the Debtors—particularly given the realities of administering solicitation and voting procedures in |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | | a chapter 11 case with approximately 82,500 unique, timely Direct Abuse Claims alone.  Master ballots have been used in many similar mass tort reorganization cases.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | The Solicitation Procedures improperly disenfranchise holders of abuse claims and give undue influence to Coalition law firms because the self-certification procedure in the Master Ballot is unlawful and will enable manipulation of voting.  This vitiates Bankruptcy Rule 2019, and the Bankruptcy Court should require that law firms acting on behalf of multiple claimants file evidence of their authority to vote for the client on this specific Plan. (D.I. 3857 at 19-21.) | The Debtors dispute this Objection.<br><br>The Debtors are entitled to rely on the certifications of counsel representing holders of Direct Abuse Claims that they are authorized to vote on their behalf and record their votes.  Bankruptcy Rule 9010(c) expressly does not require a power of attorney to accompany an attorney's vote on a Plan, and the in the Solicitation Procedures the Debtors specifically reserve the right to request evidence from any law firm submitting a Master Ballot of such firm's authority to act.  This is sufficient for voting purposes.  The Debtors and parties in interest are able to ascertain which law firms represent various abuse survivors through the claim-filing process.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | The Solicitation Procedures give undue influence to Coalition law firms, and the Coalition firms have conflicts of interest and lack authority to use Master Ballots. (D.I. 3857 at 21-25.) | The Debtors dispute this Objection.<br><br>This Objection appears to be based on a misunderstanding of the Master Ballot procedure, which is a matter of efficient case administration in a case with claims of this magnitude.  The Master Ballot is simply a tool to aggregate the votes of a law firm's abuse survivor clients.  As the Debtors state prominently in bold text in the Solicitation Procedures Motion, while the Master Ballot and other special solicitation procedures proposed for holders of Abuse Claims "are intended to expedite and streamline the transmission of information to holders of Direct Abuse Claims, increase voter participation, and better ensure such claimants are empowered to make informed and meaningful decisions as to whether to accept or reject the Plan, each voting decision rests exclusively with the Abuse Survivor Client." Solicitation Procedures Motion ¶ 40.  Attorneys may also represent more than one claimant in a bankruptcy case.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | The Solicitation Procedures improperly value abuse claims at $1.00.  This is improper because of the substantial evidence that abuse claims may be deficient and/or illegitimate as a result of improper law firm conduct.  This | The Debtors dispute this Objection. |

| Objecting Party | Summary of Objection | Debtors' Response |
|---|---|---|
| | procedure also improperly collapses the dual elements of section 1126(c)—a vote both as to number and to amount—into one numerical count. (D.I. 3857 at 25-26.) | Valuing and temporarily allowing a large body of contingent, unliquidated claims at $1.00 for voting purposes is a standard procedure and ensures that a large body of claims can still participate in the voting process.  Bankruptcy Rule 3018(a) authorizes the Bankruptcy Court to do this, and this procedure ensures that the votes of tort victims are adequately represented.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |