**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: June 17, 2021 at 10:00 a.m. (ET)<br>Objection Deadline: June 10, 2021 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO
SECTION 363 OF THE BANKRUPTCY CODE, AUTHORIZING THE
SALE OF CERTAIN REAL PROPERTY LOCATED IN WESTLAKE, TEXAS**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (a) approving and authorizing the BSA's sale (the "Sale") of certain real property located at 1301 Solana Boulevard, Westlake, Texas 76262 (the "Scouting University Property") to Israel Bernal (the "Purchaser"), free and clear of any interests in such property, on the terms and conditions set forth in the Purchase and Sale Agreement dated as of May 17, 2021 (the "Sale Agreement"), a true and correct copy of which is attached to the Proposed Order as Exhibit 1; and (b) granting related relief. In support of this Motion, the Debtors submit the declaration of Brian Whittman, a Managing Director with Alvarez & Marsal North America, LLC (the "Whittman Declaration"),

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

which is attached hereto as **Exhibit B**.  In further support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASES AND JURISDICTION

1.	The Debtors commenced these cases on February 18, 2020, and they continue to operate their non-profit organization and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

2.	On March 5, 2020, the United States Trustee for the District of Delaware appointed an official committee of tort claimants (the "Tort Claimants' Committee") and an official committee of unsecured creditors (the "Creditors' Committee") pursuant to section 1102 of the Bankruptcy Code.

3.	On April 24, 2020, the Court appointed James L. Patton, Jr. (the "Future Claimants' Representative") as the representative of future abuse claimants pursuant to sections 105(a) and 1109(b) of the Bankruptcy Code.

4.	The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory and other bases for the relief requested in this Motion are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rules 2002-1, 6004-1 and 9013-1.

## BACKGROUND

A.    **The Scouting University Property and the BSA Settlement Trust Contribution**

6.      The Debtors' proposed chapter 11 plan [D.I. 4107] (as such may be amended, modified, or supplemented from time to time, the "Plan")[2] provides that the BSA Settlement Trust Contribution will include, among other things, the BSA's right, title and interest in and to the Scouting University Property. *See* Plan, Art. I.A.43. The Scouting University Property is a nearly 10,000 square foot building located on approximately 1.72 acres of real property in Westlake, Texas. Historically, the Scouting University Property served as a multipurpose facility with traditional offices alongside large training spaces. The Debtors ceased operations at the facility prior to the Petition Date and it has remained vacant since January 3, 2020. The Debtors do not conduct any operations at the Scouting University Property, and they do not anticipate having any need to use the Scouting University Property in the future. Whittman Decl. ¶ 3.

7.      As set forth in the disclosure statement for the Plan, the value of the Scouting University Property was estimated to be approximately $1,800,000 prior to the Debtors' entry into the Sale Agreement. *See* D.I. 4108, Art. II.C. Following the dedicated marketing and sale process described below, the Debtors entered into an agreement, subject to Court approval, to

---

[2]  Unless otherwise stated herein, all terms that are capitalized but not otherwise defined in this Motion shall have the meanings ascribed to such terms in the Plan.

sell the Scouting University Property for a purchase price of $2,100,000. The Debtors intend to contribute the proceeds of the Sale, which are estimated to be approximately $1,962,000 net of commissions, charges and fees, to the Settlement Trust on the Effective Date as a component of the BSA Settlement Trust Contribution.

**B.    The Marketing Process**

8.    In October 2019, the Debtors entered into an exclusive sales listing agreement with CBRE, Inc. ("CBRE") to act as their representative with respect to the marketing and sale of the Scouting University Property. Initial marketing efforts began in February 2020. CBRE estimates that its marketing efforts resulted in more than 50,000 unique impressions based on its electronic tracking, from local, regional, and national users and investors. Approximately 750 prospective purchasers reviewed detailed underwriting materials with respect to the Scouting University Property. Whittman Decl. ¶ 4. Ultimately, CBRE received four (4) qualified offers for the Scouting University Property ranging from $1,700,000 to $2,000,000. *Id.* ¶ 6.

9.    In connection with its services to the Debtors, CBRE prepared a broker opinion of value for the Scouting University Property dated as of October 13, 2020 (the "Broker Opinion"). A true and correct copy of the Broker Opinion is attached to the Whittman Declaration as Exhibit 1. The Broker Opinion outlines a series of challenges related to the sale of the Scouting University Property, including the property's specialized use and relatively expensive estimated demolition costs. Based on these considerations and its analysis of the market, CBRE recommended an "as is" target price of $1,800,000 for the property.

10.    Upon considering the Broker Opinion and the qualified offers they received for the Scouting University Property, the Debtors and the Purchaser engaged in arm's-length and good-faith negotiations and ultimately agreed on a purchase price of $2,100,000, which was $100,000 higher than the Purchaser's initial offer. Whittman Decl. ¶ 6. The Sale will yield

proceeds of approximately $1,962,000 net of approximately $138,000 of customary commissions, charges and fees, including a six percent (6%) brokers' fee shared between CBRE and Henry S. Miller Brokerage, LLC. *Id.* ¶ 8.

**C.    The Sale Agreement**

11.    Consistent with the requirements of Local Rule 6004-1, the material terms of the Sale Agreement as it relates to the Scouting University Property are set forth in the following table. All capitalized terms used but not otherwise defined in the following table have the meaning ascribed to such terms in the Sale Agreement.

| Summary of Material Terms of Sale Agreement ||
|---|---|
| **Purchase Price (Section 3)** | $2,100,000. |
| **Legal Description of Assets (Section 2)** | The address of the property is 1301 Solana Boulevard, Building 5, Westlake, TX, 75038. It is described as ±9,827 SF facility on approximately ±1.722 acres of land, legally described as a 1.722 acre tract of land situated in the C.M. THROOP Survey, Abstract No. 1510, Tarrant County, TX and being all of Lot 1R2, Block 2, Westlake/Southlake Park Addition No. 1. |
| **Termination (Sections 4(C) & 10(B)(3))** | If Purchaser fails to timely deposit the Earnest Money with the Title Company, then Seller may, at Seller's option, terminate the Sale Agreement by delivering a written termination notice to Purchaser at any time until Purchaser deposits the Earnest Money with the Title Company.<br><br>Purchaser may terminate the Sale Agreement by delivering a written notice to Seller on or before the last day of the Inspection Period, in which case the Earnest Money will be returned to Purchaser. Purchaser's reason for choosing to terminate the Sale Agreement does not need to be related to the condition of the Property, and Purchaser is not required to justify Purchaser's decision to terminate this Contract. |
| **Sale to Insider**<br><br>*Del. Bankr. L.R. 6004-1(b)(iv)(A)* | The transaction contemplated by the Sale Agreement does not include any sales to Insiders as that term is defined in Bankruptcy Code section 101(31). |

| | |
|---|---|
| **Agreements with Management** *Del. Bankr. L.R. 6004-1(b)(iv)(B)* | No agreements with management are contemplated under the Sale Agreement. |
| **Releases (Section 10(1))** *Del. Bankr. L.R. 6004-1(b)(iv)(C)* | Purchaser shall defend and indemnify Seller against any claims that arise due to any actions by Purchaser or Purchaser's agents, employees, consultants and contractors. Purchaser's obligation to defend and indemnify Seller will survive the Closing or termination of the Sale Agreement. |
| **Private Sale/No Competitive Bidding** *Del. Bankr. L.R. 6004-1(b)(iv)(D)* | The Debtors do not contemplate conducting an auction for the sale of the Assets. The Assets were extensively marketed by the Debtors and their representative, CBRE. |
| **Closing and Other Deadlines (Sections 4(B), 10(B)(1), and 15(A))** *Del. Bank. L.R. 6004-1(b)(iv)(E)* | The "Effective Date" is the date the Title Company acknowledges receipt of the fully executed Sale Agreement. The Inspection Period will last until 30 days after the Effective Date to inspect the Property and conduct studies regarding the Property. The Closing Date will be 15 days after the expiration of the Inspection Period. |
| **Good Faith Deposit (Sections 4(C))** *Del. Bank. L.R. 6004-1(b)(iv)(F)* | Within two Business Days after the Effective Date, Purchaser shall deliver an earnest money deposit in the amount of $25,000 payable to the Title Company in its capacity as escrow agent. |
| **Interim Arrangements with Proposed Buyer** *Del. Bank. L.R. 6004-1(b)(iv)(G)* | The Debtors are not entering into any interim agreements or arrangements with the Purchaser. |
| **Use of Proceeds** *Del. Bank. L.R. 6004-1(b)(iv)(H)* | The Sale Agreement does not place any restrictions on the Debtors' use of the proceeds obtained from the Sale Transaction. |
| **Tax Exemption** *Del. Bank. L.R. 6004-1(b)(iv)(I)* | The Sale Agreement and this Motion do not seek to have the Sale Transaction declared exempt from taxes under section 1146(a) of the Bankruptcy Code. |

| | |
|---|---|
| **Record Retention** *Del. Bank. L.R. 6004-1(b)(iv)(J)* | Local Bankruptcy Rule 6004-1(b)(iv)(J) does not apply because the Sale Agreement does not consist of a sale of substantially all of the Debtors' assets. |
| **Sale of Avoidance Actions** *Del. Bank. L.R. 6004-1(b)(iv)(K)* | The Debtors do not propose to sell any avoidance actions or otherwise limit their rights to pursue avoidance claims under chapter 5 of the Bankruptcy Code under the Sale Agreement or this Motion. |
| **Requested Findings as to Successor Liability (Sections 7(1) and 25)** *Del. Bank. L.R. 6004-1(b)(iv)(L)* | A condition precedent to the closing of the Sale Agreement is that the Court shall have entered an order authorizing the sale of the acquired assets to the Purchaser, including sale free and clear of any and all liens, assessments, easements, security interests and other encumbrances except the Permitted Exceptions. |
| **Sale Free and Clear of Unexpired Leases** *Del. Bank. L.R. 6004-1(b)(iv)(M)* | There are no unexpired leases. |
| **Credit Bid** *Del. Bank. L.R. 6004-1(b)(iv)(N)* | The purchase price does not include a credit bid. |
| **Relief from Bankruptcy Rule 6004(h)** *Del. Bank. L.R. 6004-1(b)(iv)(O)* | The Proposed Order contains a waiver of the stay under Bankruptcy Rule 6004(h). |

## RELIEF REQUESTED

12. By this Motion, pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, the Debtors request entry of the Proposed Order: (a) approving and authorizing the Sale of the Scouting University Property to the Purchaser, free and clear of any interests in such property, on the terms and conditions set forth in the Sale Agreement; and (b) granting related relief.

13. The Debtors request that the Court approve the Sale free and clear of any and all liens, claims, encumbrances, mortgages, and other interests, excluding any liabilities expressly assumed by the Purchaser or the Purchaser's affiliates under the Sale Agreement, with any such interests attaching only to the proceeds of the Sale with the same validity, force and effect which they now have against the Scouting University Property.

14. The Debtors further propose to deposit the net proceeds of the Sale into a segregated account pending further order of the Court, which order may be the Confirmation Order. The Debtors intend, as part of the BSA Settlement Trust Contribution under the Plan, to contribute 100% of the net proceeds of the Sale to the Settlement Trust on the Effective Date.

**BASIS FOR RELIEF**

**A.    The Sale Should Be Approved as a Proper Exercise of the BSA's Sound Business Judgment.**

15. The Sale, the terms of which are set forth in the Sale Agreement, satisfies section 363(b) of the Bankruptcy Code with respect to sales outside of the ordinary course of a debtor's business. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

16. Generally, courts apply four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

1063, 1070 (2d Cir. 1983) (setting forth the "sound business purpose" test); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 145–47 (3d Cir. 1986) (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

17. Under section 363(b), courts in this jurisdiction require only that the debtor "show that a sound business purpose justifies" the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring a "good business reason" for use under section 363(b) of the Bankruptcy Code); *see Abbotts Dairies*, 788 F.2d at 145–57 (implicitly adopting the "articulated business justification" and good-faith tests of *Lionel,* 722 F.2d at 1070); *see also Del & Hudson Ry.*, 124 B.R. at 176 (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

18. When applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Courts are loath to

interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence.") (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *In re First Wellington Canyon Assocs.*, No. 89-593 (CPK), 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (stating that "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion").

19.     Here, substantial business justifications support the Sale of the Scouting University Property to the Purchaser on the terms set forth in the Sale Agreement.  The Scouting University Property provides limited, if any, value to the Debtors' current operations but requires ongoing maintenance expenditures and managerial focus.  As noted above, the Debtors have ceased all operations at the Scouting University Property and do not anticipate using the property going forward.  Nevertheless, the Scouting University Property continues to have annual carrying costs.  Whittman Decl. ¶ 3.  The Sale will enable the Debtors to eliminate these carrying costs and enhance the value of the BSA Settlement Trust Contribution by replacing their proposed contribution of the Scouting University Property itself with a cash contribution that, in the Debtors' commercial judgment, roughly approximates or exceeds the market value of the property.  This benefits all creditors and stakeholders.

20.     The purchase price under the Sale Agreement is fair and reasonable.  As described above, the purchase price of $2,100,000 was the result of an extensive marketing process culminating in four (4) qualified offers.  Whittman Decl. ¶¶ 4, 6.  The final purchase price also exceeds by $300,000 the $1,800,000 estimate provided in the Broker Opinion prepared by CBRE and exceeds by $100,000 the initial offer submitted by the Purchaser.  *Id.* ¶¶ 4–6.  Moreover, the Sale Agreement was negotiated in good faith and at arm's length.  *Id.* ¶ 6.  The Sale Agreement

is the culmination of more than a year of diligent work by the Debtors, with the assistance of CBRE.

21.     Approval of the Sale of the Scouting University Property as a private sale is appropriate under the circumstances, and the Debtors do not believe a public auction is necessary to maximize value. Bankruptcy Rule 6004(f)(1) provides that "sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f). In addition to furnishing the Broker Opinion to the Debtors, which indicated an estimated market value of the property of $1,800,000, CBRE marketed the Scouting University Property extensively over a period of more than one year. As noted above, these efforts resulted in the review of detailed underwriting materials regarding the Scouting University Property by more than 750 users and investors. The Debtors received four (4) qualified offers for the Scouting University Property and, after engaging in arm's-length, good-faith negotiations with the highest bidder, agreed on a purchase price of $2,100,000. Whittman Decl. ¶ 6. The Debtors believe that further marketing efforts for public sale are unlikely to result in higher or otherwise better offers for the Scouting University Property. *Id.* ¶ 8. The Debtors have also consulted with the Tort Claimants' Committee, the Future Claimants' Representative, and the Coalition of Abused Scouts for Justice with respect to the Debtors' proposed Sale prior to filing this Motion. *Id.* ¶ 7.

22.     The Sale Agreement is the product of good-faith, arm's-length negotiations between the Debtors and the Purchaser. Although the Bankruptcy Code does not define the term "good faith purchaser," the Third Circuit, interpreting section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases 'in good faith' and for 'value.'" *Abbotts Dairies*, 788 F.2d at 147. To constitute a lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and

11

other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Due to the absence of a bright-line test for good faith, the determination is based on the facts and circumstances of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (Bankr. E.D.N.Y. 1986) (quoting *Rock Indus. Mach. Corp.*, 572 F.2d at 1198).

23.   The Sale Agreement was agreed to by the parties as a result of negotiations which resulted in the Purchaser increasing the purchase price by $100,000. Whittman Decl. ¶ 6. The Purchaser is not affiliated with, or an insider of, the Debtors or any related entity. *Id.* ¶ 8. Accordingly, the Debtors request that the Court find that the Purchaser is a good-faith purchaser under section 363(m) of the Bankruptcy Code and that the Sale is not subject to avoidance under section 363(n) of the Bankruptcy Code.

24.   In light of the foregoing, the Debtors respectfully submit that selling the Scouting University Property to the Purchaser on the terms set forth in the Sale Agreement is supported by Debtors' sound business judgment and is in the best interests of the Debtors' estates and creditors.

**B.   The Sale Should Be Approved Free and Clear of Liens, Claims, and Encumbrances.**

25.   Pursuant to the Sale Agreement, the closing of the Sale is contingent upon the Debtors' conveying title to the Scouting University Property free and clear of any and all liens, assessments, easements, security interests, and other encumbrances excluding permitted exceptions. Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such

12

property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

26. The Debtors seek this Court's approval to sell the Scouting University Property to the Purchaser free and clear of all liens, assessments, easements, security interests, and other encumbrances that are not expressly assumed by the Purchaser under the Sale Agreement. The Debtors are unaware of any claims that are secured by the Scouting University Property. Whittman Decl. ¶ 3. Accordingly, the sale of the Scouting University Property free and clear will not prejudice any of the Debtors' creditors. Furthermore, should the Debtors become aware of a lien or other secured interest on or in the Scouting University Property, the Debtors believe that the purchase price will exceed the value of any such liens or interests, thereby satisfying the conditions for a sale free and clear under section 363(f)(3). Upon closing of the Sale, existing liens, claims and encumbrances, if any, will attach to the net proceeds of the sale in the order of their priority, with the same validity, force and effect which they now have against the Scouting University Property. Accordingly, the Debtors submit that the Scouting University Property may be sold free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

27. To successfully implement the Sale, and given the nature of the relief requested herein and the deadlines in the Sale Agreement, the Debtors respectfully request (a) a finding that the notice requirements under Bankruptcy Rule 6004(a) have been met, and (b) a waiver of the 14-day stay under Bankruptcy Rule 6004(h). The relief requested herein is essential to avoid the potential accrual of unnecessary administrative expenses. Accordingly, the Debtors submit

that, to the extent that Bankruptcy Rule 6004(h) applies, ample cause exists to justify a waiver of the 14-day stay.

## NOTICE

28.  Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Purchaser; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Creditors' Committee; (v) counsel to the Future Claimants' Representative; (vi) counsel to the Ad Hoc Committee of Local Councils; (vii) counsel to JPMorgan Chase Bank National Association; (viii) the County Commission of Fayette County (West Virginia), as issuer of those certain Commercial Development Revenue Bonds (Arrow WV Project), Series 2010A, 2010B and 2012; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and such other and any further relief as the Court may deem just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: May 27, 2021
      Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Paige N. Topper*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
      aremming@morrisnichols.com
      emoats@morrisnichols.com
      ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
      mlinder@whitecase.com
      laura.baccash@whitecase.com
      blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION