## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>Re: Dkt. Nos. 1972, 1974, 2022, 2180, 2295, 2592, 2594, 2595, 2726 |

### CENTURY'S SUPPLEMENTAL OBJECTION TO THE
### DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES

At the May 19, 2021 hearing, this Court asked whether any cases have disallowed claims because they are improperly generated, as the evidence shows has happened here.[2]  Century submits this short brief to address that question and clarify that its motion for Rule 2004 discovery does not seek disallowance of any claims now—although Century may seek that relief at the appropriate time.  The Motion for Rule 2004 discovery requests only to *investigate* grounds for disallowing POCs that were improperly manufactured.  That is an appropriate use of Rule 2004, and, under the facts here, is urgently needed.

Unrebutted forensic expert analysis shows that in many instances someone photocopied a lawyer's signature page and attached it *en masse* to the POCs.  Some firms had third-party aggregators submit hundreds of POCs by adding an electronic signature in rapid-fire succession—sometimes only seconds apart—to batches of POCs.  Aggregators also submitted many POCs all bearing the same signature—but purportedly signed on behalf of different

---

[1]  Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America ("BSA") (6300) and Delaware Boy Scouts, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2]  May 19, 2021 Hr'g Tr. at 240.

claimants.  Together with other extraordinary irregularities, this suggests that plaintiffs' lawyers bought claims from aggregators and sent signature pages to them to attach to POCs for filing without the signing lawyer—or any lawyer—ever having seen them.

Investigating these claims is especially urgent now because Debtors have asked this Court to authorize every single one of the 95,000 POCs to cast a plan ballot.  That would allow improperly generated POCs to vote on the plan, which would constitute a massive abuse of process and irreparably taint this bankruptcy.  Allowing obviously defective claims to vote would also dilute potentially valid claims.  Therefore, the Court should allow the Rule 2004 discovery to proceed immediately—and certainly before the plan goes out for solicitation.

## I.    CENTURY'S MOTION FOR RULE 2004 DISCOVERY SEEKS AUTHORITY TO INVESTIGATE POCS THAT WERE GENERATED THROUGH IMPROPER MEANS.

Century does not through its Rule 2004 motion ask the Court to disallow claims; rather, as Rule 2004 expressly permits, the proposed discovery is designed to investigate "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or any matter which may affect the administration of the debtor's estate, or to the debtor's right a discharge."[3] Conducting such pre-litigation discovery falls well within the ambit of Rule 2004.[4]  That the discovery Century seeks would not immediately be used to disallow the POCs at this stage of the bankruptcy—although it could well be used for that reason later—is not a basis to deny the Rule 2004 motion.  On the contrary, "bankruptcy courts have permitted Rule 2004 examinations

---

[3]    Fed. R. Bankr. P. 2004(b).

[4]    *See*, *e.g*., *Sweetland v. Szadkowski (In re Szadkowski)*, 198 B.R. 140, 141 (Bankr. D. Md. 1996) ("[D]iscovery under [Bankruptcy] Rule 2004 may be properly employed as a pre-litigation device.").

relating to the validity of a proof of claim."[5]  It is thus a reason to grant the discovery because Rule 2004 was meant precisely to be used as a pre-litigation tool.

The proposed Rule 2004 discovery focuses on facts that challenge the *prima facie* validity to which the POCs would ordinarily be entitled under Rule 3001(f).  Because POCs that do not allege sufficient facts to support a debtor's liability to the claimant are not entitled to *prima facie* validity, they should not be permitted to vote on any proposed plan—there is no presumptively legitimate creditor behind each invalid POC.  Nor can such POCs be corrected at this late date: where a POC lacks *prima facie* validity, it cannot be amended or supplemented after the bar date.

The evidence Century requests will demonstrate that many more POCs lack *prima facie* validity.  That evidence would be in addition to what Century has already placed before the Court.  This critical information should be investigated before the plan goes out for solicitation.

**A.    POCs that do not allege sufficient facts to support Debtors' liability to a claimant are not entitled to *prima facie* validity.**

The Bankruptcy Code defines a "claim" as a "right to payment" or an "enforceable obligation."[6]  Without evidence of an enforceable obligation, there is no right to payment and thus no claim.[7]  The Third Circuit has explained that a proof of claim filed under Section 502

---

[5]    *In re Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d 867, 874 (D.C. Cir. 2014); *see also Bank of Am., N.A. v. Lashinsky (In re Ahl)*, 2012 WL 1599834, at *3 n.3 (D. Ariz. May 7, 2012) ("[A] party in interest can move for Rule 2004 discovery from a creditor prior to filing an objection to that creditor's proof of claim."); *In re Albright*, 2013 WL 6076696, at *3–4 (Bankr. D. Mass. Nov. 19, 2013) (court had ordered claimants to appear to be examined by debtor after debtor filed objection to their proofs of claim); *In re DeShetler*, 453 B.R. 295, 306 (Bankr. S.D. Ohio 2011) ("A 2004 examination may be used by the [U.S. trustee] to investigate proofs of claim filed in bankruptcy cases provided that the examination is otherwise appropriate under Rule 2004.").

[6]    *See* 11 U.S.C. § 101(5)(A); *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998).

[7]    *See* 11 U.S.C. § 101(5)(A); *Cohen*, 523 U.S. at 218.

3

must allege "facts sufficient to support a legal liability to the claimant."[8]  As one court put it, to be entitled to *prima facie* validity, a POC must contain sufficient information so that "the Debtor, its creditors, and other interested parties kn[ow] who the Claimant was, how to contact him, the type and amount of claim, as well as whether such a claim may be objectionable."[9]  But where, as here, "a proof of claim does not provide the facts and documents necessary to support the claim, it is not entitled to the presumption of *prima facie* validity."[10]

The evidence here shows that many POCs are not *prima facie* valid.  The numbers alone speak for themselves—it is impossible for any lawyer to vet, let alone draft, hundreds of claims in a single day or tens of thousands in just a few months.  Indeed, those mass-produced POCs are presumptively invalid.

But the potential misconduct in this bankruptcy extended well beyond the numbers, as Century has demonstrated:

- Attorneys submitted hundreds of claims by affixing an electronic signature to bundles of claims just seconds apart in assembly-line fashion.[11]

- Other attorneys submitted photocopied pre-signed signature pages attached to hundreds of claims.[12]

- Attorneys relied on third-party, non-lawyer aggregators to churn out claims.[13]

---

[8]    *In re Allegheny Int'l., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

[9]    *In re Nittany Enters., Inc.,* 502 B.R. 447, 454 (Bankr. W.D. Va. 2012).

[10]   *In re Am. Home Mortg. Holdings, Inc.*, 501 B.R. 44, 62 (Bankr. D. Del. 2013); *see also In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008) (where a proof of claim "does not adhere to the requirements of Rule 3001 by providing facts and documents necessary to support the claim, it is not entitled to the presumption of *prima facie* validity").

[11]   Speckin Decl. ¶¶ 12–13.

[12]   Speckin Decl. ¶¶ 7–8, 10–11.

[13]   Hinton Decl. tbl. 4.

- Some attorneys submitted hundreds of claims that contained nothing other than the claimant's and lawyer's respective names and addresses.[14]

- A firm that filed thousands of claims announced that it would "complete" forms on behalf of potential claimants unless they opted out.[15]

Because they were not vetted, the vast majority of the mass-signed POCs Century reviewed are facially defective: they are missing critical information, are duplicates, or are barred by the statute of limitations.  What is more, all of this evidence is uncontested and unrebutted.  Many of these claims lack other basic information from which the parties could reasonably assess the type and amount of claim—or even the actual claimant—as well as whether the claim may be objectionable.[16]

### B.    In any event, even where a POC satisfies the Rule 3001(f) standard, if an objector refutes at least one of the POC's allegations, the burden of proof reverts to the claimant.

Even where a POC meets the standard under Rule 3001(f), if the objector produces "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency . . . the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."[17]  While this is not the place to address the substance of this issue, Century has adduced evidence to rebut the *prima facie* validity of thousands of POCs, placing the burden on the claimants to present adequate evidence to prove that they possess a "right to payment."[18]

---

[14]   Hinton Decl. tbl. 1; Speckin Decl. ¶ 14.

[15]   Kirschenbaum Decl. Ex. 1.

[16]   Hinton Decl. tbl. 2, 3.

[17]   *In re Allegheny Int'l., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

[18]   *See* 11 U.S.C. § 101(5)(A); *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998).

Century expects that in addition to the evidence already before the Court, Rule 2004 discovery will uncover more proof that POCs were improperly generated. Beyond manufacturing POCs, the evidence could identify POCs that were submitted without the alleged creditor's involvement or any factual basis whatsoever for the claims. Evidence of such deficiencies would (i) strike at the heart of the requirement that, to be allowed, claims must be enforceable against Debtors;[19] and (ii) rebut the *prima facie* validity of thousands of POCs.

### C.    POCs that lack *prima facie* validity cannot be amended or supplemented after the bar date.

A claim must be timely filed before the bar date to benefit from the presumption of *prima facie* validity.[20] *Prima facie* validity applies only to claims filed "in accordance with these rules" (*i.e.*, the Federal Rules of Bankruptcy Procedure).[21] POCs that were not filed by the bar date with sufficient facts to state a claim against Debtors are not entitled to the presumption of *prima facie* validity because they fail to allege "facts sufficient to support [Debtors'] legal liability to the claimant."[22] Those POCs are at best empty placeholders, as the Coalition admitted.[23]

Those deficient POCS cannot be corrected now because "before a court may permit a party to file an amended proof of claim, there must be something filed in the bankruptcy court capable of being amended."[24] Indeed, post-bar date amendments "should be scrutinized to

---

[19]    11 U.S.C. § 502(b)(1).

[20]    Fed. R. Bankr. P. 3001, 3003.

[21]    *Id.* 3001(f).

[22]    *Allegheny Int'l., Inc.*, 954 F.2d at 173.

[23]    In opposing the 2004 motion the Coalition said they were filing incomplete claims just "to protect their clients' rights." Dkt. No. 2043 ¶ 10.

[24]    *In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir. 1988); *In re Orion Refin. Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004) ("Generally, amendments are allowed when the original claim provides notice of the existence, nature, and amount of the claim.").

ensure that the amendment is not a new claim."[25]  Because the POCs here were never valid in the

first place, there is nothing before this Court that can properly be amended.[26]

     Moreover, many of the POCs here were signed by attorneys with no indication that they

had obtained their clients' permission to sign on their behalf before the bar date.  Though

claimants can ratify their attorneys signing POCs on their behalf, ratification is not valid after the

bar date has passed.[27]  The purported clients should not be permitted later to ratify the POCs after

the fact—although there do not appear to have been many attempts to do even that to date.

"[A]llowing claimants to use late ratification to extend the deadline established by the bar date

compromises the underlying purposes of a proof of claim bar date."[28]

     *W.R. Grace & Co.*, is instructive on this point.[29]  There, a law firm signed 71 POCs and

failed to establish that it possessed authority to do so before the bar date.[30]  The court disallowed

these claims, noting that the claimants themselves could no longer file POCs after the bar date.[31]

The court held that "[a]llowing ratification after the bar date would give the claimants the

unilateral power to extend the deadline established by the bar date.  It would be unfair to the

---

[25]  *In re Orion,* 317 B.R. at 664; *In re Edison Bros. Stores, Inc.*, 2002 WL 999260, at *4 (Bankr. D. Del. May 15, 2002).

[26]  If the amendment constitutes a new claim, courts apply the "excusable neglect" standard set out in Bankruptcy Rule 9006(b)(1), in lieu of the more permissive "relation back" standard that would otherwise apply under Federal Rule of Civil Procedure 15, with claimant having the burden of proof. *In re G–I Holdings, Inc.*, 514 B.R. 720, 755–56 (Bankr. D.N.J. 2014), *aff'd sub nom. In re G–I Holdings Inc.*, 654 F. App'x 571 (3d Cir. 2016).

[27]  *In re W.R. Grace & Co.*, 366 B.R. 302, 307 (Bankr. D. Del. 2007).

[28]  *Id.* (emphasis added).

[29]  *Id.* at 303–04 (noting that written authority to file the claims were undated or dated after the bar date).

[30]  *Id.* (noting that written authority to file the claims were undated or dated after the bar date).

[31]  *Id.* at 307.

Debtors and the other creditors who properly and timely filed their claims, to afford more flexibility to these 71 claimants."[32]

## II.    THIS COURT OF EQUITY SHOULD NOT PERMIT HOLDERS OF TAINTED POCS TO BE SOLICITED.

The Debtors propose to solicit every single one of the 95,000 POCs by valuing each one at $1 for voting purposes.  This approach would give all POCs a vote, even those that are ***not*** entitled to *prima facie* validity.  And that would be inconsistent with Section 1126(c), which contemplates that only holders of valid claims can vote.  Similarly, Rule 2003(b)(3) states that facially insufficient claims are not initially "allowable" and thus do not qualify for participating in trustee elections.  Congress did not want holders of suspicious claims to participate in bankruptcy proceedings without at least some initial scrutiny of their claims.

While the Court need not decide whether and which POCs should be allowed before letting a plan go to voting, it should not permit voting by plainly defective POCs that are not entitled to *prima facie* validity under Rule 3001(f).[33]  In fact, were the Court to allow every single POC to cast a vote, it would be authorizing votes from ***presumptively invalid*** claims. With potentially tens of thousands problematic POCs pending, the scope of the problem is enormous here.

Section 105 both authorizes and obligates this Court to "prevent an abuse of process." Indeed, this Court has the "power to remedy and punish for the filing of a false or fraudulent

---

[32]    *Id.*

[33]    *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 647 (2d Cir. 1988) (representative of several hundred claimants objected to the voting procedures because potentially invalid claims were permitted to vote, but the court declined to decide whether the procedures violated the Code because, "in view of the outcome of the vote, the alleged irregularities were at most harmless error.").

claim."[34]  Permitting thousands of defective claims that lack *prima facie* validity to vote would irreversibly taint any vote and possible plan confirmation.[35]  Accordingly, the Court should not proceed with solicitation without permitting further scrutiny of the POCs.  Whether they should be disallowed is a separate matter.

---

[34]    *In re Varona*, 388 B.R. 705, 717 (E.D. Va. 2008) (explaining that "[t]he filing of a false or fraudulent claim in a bankruptcy case would unquestionably constitute an abuse of the claims process as well as an attempted fraud upon the court").

[35]    *See In re Fierro*, 616 B.R. 596, 611 (E.D.N.Y. 2020) (explaining that "the validity of the Proofs of Claim" would be "taint[ed]" by fraudulent conduct); *In re Zucaro*, 617 B.R. 18, 33 (E.D.N.Y. 2020) (similar); *see also Heiser v. Woodruff*, 327 U.S. 726, 732 (1946) (bankruptcy courts "may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims").

**CONCLUSION**

This Court should grant Century's Motion for Rule 2004 discovery [Dkt. Nos. 1972, 1974, 2022] and deny Debtors' Solicitation Motion [Dkt. Nos. 2594, 2726].

Dated:  June 3, 2021

Respectfully Submitted,

By:   */s/ Stamatios Stamoulis*
        Stamatios Stamoulis (No. 4606)
**Stamoulis & Weinblatt LLC**
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

**O'Melveny & Myers LLP**
Tancred Schiavoni (admitted *pro hac vice*)
Gary Svirsky (admitted *pro hac vice* )
Daniel Shamah (admitted *pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: 212-326-2000

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

10