<u>**Exhibit 1**</u>

**Redline of Third Amended Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

~~PROPOSED AMENDMENTS TO SECOND~~THIRD **AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR**
**BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
 Email: dabbott@morrisnichols.com
         aremming@morrisnichols.com
         emoats@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

Dated: ~~May 16~~June 17, 2021
         Wilmington, Delaware

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300); and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

# TABLE OF CONTENTS

Article I. Definitions and Rules of Interpretation .......................................................... 1

    A.    Definitions ................................................................................................ 1

    B.    Interpretation; Application of Definitions and Rules of Construction ...... ~~36~~38

    C.    Reference to Monetary Figures ............................................................... ~~37~~38

    D.    Consent Rights ........................................................................................ ~~37~~38

    E.    Controlling Document ............................................................................ ~~37~~39

Article II. Administrative Expense and Priority Claims .............................................. ~~38~~39

    A.    Administrative Expense Claims .............................................................. ~~38~~39

    B.    Priority Tax Claims ................................................................................ ~~40~~41

Article III. Classification and Treatment of Claims and Interests ................................ ~~40~~41

    A.    Classification of Claims and Interests ..................................................... ~~40~~41

    B.    Treatment of Claims and Interests .......................................................... ~~41~~42

    C.    Elimination of Vacant Classes ................................................................ ~~48~~50

    D.    Cramdown ............................................................................................... ~~48~~50

Article IV. Settlement Trust ......................................................................................... ~~49~~50

    A.    Establishment of the Settlement Trust ..................................................... ~~49~~50

    B.    Purposes of the Settlement Trust ............................................................. ~~49~~50

    C.    Transfer of Claims to the Settlement Trust .............................................. ~~49~~51

    D.    Transfer of Settlement Trust Assets to the Settlement Trust .................... ~~50~~51

    E.    Settlement Trustee .................................................................................. ~~51~~53

    F.    Settlement Trust Advisory Committee ..................................................... ~~51~~53

    G.    Future Claimants' Representative ............................................................. 53

    H.    Trust Distribution Procedures ................................................................. ~~52~~53

    ~~H~~I.    Settlement Trust Expenses ...................................................................... ~~52~~53

    ~~I~~J.    Indemnification by Settlement Trust ....................................................... ~~52~~54

    ~~J~~K.    Investment Guidelines ............................................................................ ~~52~~54

    ~~K~~L.    Excess Settlement Trust Assets ............................................................... ~~52~~54

    ~~L~~M.    ~~Cooperation~~Document Agreement ......................................................... ~~52~~54

    ~~M~~N.    Privileged Information ............................................................................ ~~52~~54

    ~~N~~O.    No Liability ............................................................................................ ~~53~~55

    ~~O~~P.    U.S. Federal Income Tax Treatment of the Settlement Trust .................... ~~53~~55

    ~~P~~Q.    Institution and Maintenance of Legal and Other Proceedings .................. ~~53~~55

    ~~Q~~R.    Notation on Claims Register Regarding Abuse Claims ............................ ~~53~~55

Article V. Means for Implementation of the Plan ............................................................... ~~54~~56

    A.     General ....................................................................................................... ~~54~~56

    B.     Operations of the Debtors between Confirmation and the Effective Date ....... ~~54~~56

    C.     BSA Governance Documents ..................................................................... ~~54~~56

    D.     Continued Legal Existence of BSA .............................................................. ~~54~~56

    E.     Reorganized BSA's Directors and Senior Management ................................. ~~54~~56

    F.     Dissolution of Delaware BSA ..................................................................... ~~54~~56

    G.     Due Authorization ..................................................................................... ~~54~~56

    H.     Cancellation of Interests ............................................................................ ~~55~~57

    I.     Restatement of Indebtedness ...................................................................... ~~55~~57

    J.     Cancellation of Liens ................................................................................. ~~55~~57

    K.     Effectuating Documents and Further Transactions ....................................... ~~55~~57

    L.     Sources of Consideration for Distributions .................................................. ~~56~~58

    M.     Calculation of Minimum Unrestricted Cash and Investments ....................... 59

    N.     Resolution of Abuse Claims ....................................................................... ~~57~~59

    ~~N~~O.    Funding by the Settlement Trust .................................................................. ~~57~~59

    ~~O~~P.    Core Value Cash Pool ................................................................................ ~~57~~59

    ~~P~~Q.    Creditor Representative .............................................................................. ~~57~~60

    ~~Q~~R.    Residual Cash in Core Value Cash Pool ..................................................... ~~57~~60

    ~~R~~S.    Compromise and Settlement of Claims, Interests and Controversies .............. ~~58~~60
    ~~S~~

    T.     Payment of Coalition Restructuring Expenses ............................................. 63

    U.     Good-Faith Compromise and Settlement ..................................................... ~~60~~64

    ~~T.~~    ~~Estimation of Direct Abuse Claims~~ ............................................................ ~~61~~
    ~~U~~

    V.     Restated Debt and Security Documents ....................................................... ~~61~~64

    ~~V~~W.    Foundation Loan ....................................................................................... ~~64~~67
    ~~W~~

    X.     BSA Global Resolution Note ...................................................................... 67

    Y.     Pension Plan ............................................................................................. ~~64~~68

    ~~X~~Z.    Single Satisfaction of Allowed General Unsecured Claims ........................... ~~65~~68

    ~~Y~~AA.   Exemption from Certain Transfer Taxes and Recording Fees ........................ ~~65~~69

    BB.    Additional Undertakings of the Debtors ...................................................... 69

Article VI. Executory Contracts and Unexpired Leases ................................ ~~65~~69

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ... ~~65~~69

    B.    Rejection Damages Claims ................................................................ ~~66~~70

    C.    Cure of Defaults under Executory Contracts and Unexpired Leases ........ ~~67~~71

    D.    Dispute Resolution ........................................................................ ~~68~~72

    E.    Contracts and Leases Entered into After the Petition Date .................. ~~68~~72

    F.    ~~Directors and Officers~~ Insurance Policies ...................................... ~~68~~72

    ~~G.~~    ~~Insurance Policies~~ ........................................................................ ~~69~~

    ~~H~~.    Compensation and Benefits Programs .............................................. ~~69~~73

    ~~I~~H.    Restoration Plan and Deferred Compensation Plan ............................ ~~70~~74

    ~~J~~I.    Workers' Compensation Program .................................................... ~~70~~74

    ~~K~~J.    Indemnification Obligations ............................................................ ~~70~~74

    ~~L~~K.    Gift Annuity Agreements and Life-Income Agreements ...................... ~~71~~75

    ~~M~~L.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ................................................................................ ~~71~~75

    ~~N~~M.    Reservation of Rights .................................................................... ~~71~~75

    ~~O~~N.    Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4) .... ~~71~~75

Article VII. Provisions Governing Distributions ...................................... ~~72~~75

    A.    Applicability .............................................................................. ~~72~~75

    B.    Distributions Generally ................................................................ ~~72~~75

    C.    Distributions on Account of Certain Claims Allowed as of the Effective Date ~~72~~76

    D.    Distributions on Account of Allowed General Unsecured Claims .......... ~~72~~76

    E.    Distributions on Account of Disputed Claims Allowed After the Effective Date ~~72~~76

    F.    Rights and Powers of Disbursing Agent .......................................... ~~72~~76

    G.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ... ~~73~~76

    H.    Undeliverable and Non-Negotiated Distributions .............................. ~~73~~77

    I.    Manner of Payment under the Plan .................................................. ~~74~~78

    J.    Satisfaction of Claims .................................................................. ~~74~~78

    K.    Minimum Cash Distributions .......................................................... ~~74~~78

    L.    Postpetition Interest .................................................................... ~~74~~78

    M.    Setoffs ...................................................................................... ~~75~~78

    N.    Claims Paid or Payable by Third Parties .......................................... ~~75~~79

    O.    Compliance with Tax Requirements and Allocations ........................ ~~75~~79

Article VIII. Procedures for Resolving Contingent, Unliquidated, and Disputed Claims .......... 7679

    A.     Applicability .......... 7679

    B.     Allowance of Claims .......... 7680

    C.     Claims Administration Responsibilities .......... 7680

    D.     Estimation of Claims .......... 7680

    E.     No Distributions Pending Allowance .......... 7781

    F.     Distributions after Allowance .......... 7781

    G.     Disputed Claims Reserve .......... 7781

    H.     Adjustment to Claims Register without Objection .......... 7882

    I.     Time to File Objections to Claims .......... 7882

    J.     Treatment of Untimely Claims .......... 7882

Article IX. Conditions Precedent to Confirmation and Effective Date .......... 7882

    A.     Conditions Precedent to Confirmation of the Plan .......... 7882

    B.     Conditions Precedent to the Effective Date .......... 8085

    C.     Waiver of Conditions Precedent .......... 8286

    D.     Substantial Consummation of the Plan .......... 8286

    E.     *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date .......... 8286

Article X. Effect of Plan Confirmation .......... 8287

    A.     Vesting of Assets in Reorganized BSA .......... 8287

    B.     Retention of Certain Causes of Action .......... 8387

    C.     Binding Effect .......... 8387

    D.     Pre-Confirmation Injunctions and Stays .......... 8388

    E.     Discharge .......... 8388

    F.     **Channeling Injunction** .......... 8489

    G.     Provisions Relating to Channeling Injunctions .......... 8690

    H.     **Insurance Entity Injunction** .......... 8791

    I.     **Injunction against Interference with Plan** .......... 8993

    J.     **Releases** .......... 8993

    K.     **Exculpation** .......... 9296

    L.     **Injunctions Related to Releases and Exculpation** .......... 9297

    M.    Insurance Provisions 93 Applicable under Global Resolution Plan .......... 98

    N.    Insurance Provisions Applicable under BSA Toggle Plan .......... 98

    O.    Reservation of Rights .......... 9499

    OP.    Disallowed Claims .......... 9599

P Q. No Successor Liability .................................................... 95 99

Q R. Indemnities .................................................... 95 100

R S. The Official Committees and the Future Claimants' Representative .................................................... 96 100

Article XI. Retention of Jurisdiction .................................................... 96 101

A. Jurisdiction .................................................... 96 101

B. General Retention .................................................... 97 101

C. Specific Purposes .................................................... 97 102

D. Courts of Competent Jurisdiction .................................................... 99 104

Article XII. MISCELLANEOUS PROVISIONS .................................................... 100 104

A. Closing of Chapter 11 Cases .................................................... 100 104

B. Amendment or Modification of the Plan .................................................... 100 105

C. Revocation or Withdrawal of Plan .................................................... 100 105

D. Request for Expedited Determination of Taxes .................................................... 101 105

E. Non-Severability of Plan Provisions .................................................... 101 106

F. Notices .................................................... 101 106

G. Notices to Other Persons .................................................... 102 107

H. Governing Law .................................................... 102 107

I. Immediate Binding Effect .................................................... 102 107

J. Timing of Distributions or Actions .................................................... 102 107

K. Deemed Acts .................................................... 103 107

L. Entire Agreement .................................................... 103 107

M. Plan Supplement .................................................... 103 108

N. Withholding of Taxes .................................................... 103 108

O. Payment of Quarterly Fees .................................................... 103 108

P. Duty to Cooperate .................................................... 103 108

Q. Effective Date Actions Simultaneous .................................................... 103 108

R. Consent to Jurisdiction .................................................... 103 108

## EXHIBITS

| | |
|---|---|
| Exhibit A-1 | Global Resolution Plan TDP |
| Exhibit A-2 | BSA Toggle Plan TDP |
| Exhibit B-1 | Settlement Trust Agreement (Global Resolution Plan) |
| Exhibit B-2 | Settlement Trust Agreement (BSA Toggle Plan) |
| Exhibit C | Contributing Chartered Organization Settlement Contribution |
| Exhibit D | Contributing Chartered Organizations |
| Exhibit E | Foundation Loan Facility Term Sheet |
| Exhibit F | Local Council Settlement Contribution |
| Exhibit G | Local Councils |
| Exhibit H | Related Non-Debtor Entities |
| Exhibit I | Hartford Insurance Settlement Agreement |
| Exhibit J | Non-Monetary Commitments |

## SCHEDULES

| | |
|---|---|
| Schedule 1 | Artwork |
| Schedule 2 | BSA Insurance Policies |
| Schedule 3 | Local Council Insurance Policies |
| Schedule 4 | Oil and Gas Interests |

## PLAN SUPPLEMENT DOCUMENTS

Amended BSA Bylaws
Assumed Contracts and Unexpired Leases Schedule
Cooperation Agreement
BSA Global Resolution Note
Creditor Representative
Directors and Officers of Reorganized BSA
Document Agreement (Global Resolution Plan)
Document Agreement (BSA Toggle Plan)
Foundation Loan Agreement
Leaseback Requirement Agreement
Rejected Contracts and Unexpired Leases Schedule
Restated 2010 Bond Documents
Restated 2012 Bond Documents
Restated Credit Facility Documents
Restated Security Agreement
Settlement Trust Advisory Committee
Settlement Trustee

# INTRODUCTION

Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases, hereby propose this plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings ascribed to such terms in <u>Article I.A</u>. The Plan constitutes two alternative plans of reorganization for the Debtors. If the conditions set forth in this Plan are met, the Plan shall constitute a Global Resolution Plan and shall provide for the global resolution of Abuse Claims against the Debtors, <u>Related Non-Debtor Entities,</u> Local Councils, Contributing Chartered Organizations, ~~and~~ Settling Insurance Companies<u>, and their respective Representatives</u>. If the conditions set forth in the Plan are not met, the Plan shall constitute a BSA Toggle Plan and shall provide for the resolution of Abuse Claims and other Claims only against the Debtors<u>, Related Non-Debtor Entities, and their respective Representatives</u>. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, charitable mission, operations, projections for those operations, risk factors, and certain related matters. The Disclosure Statement also provides a summary and analysis of the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN WITH CARE IN EVALUATING HOW THE PLAN WILL AFFECT YOUR CLAIM(S) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.

## DEFINITIONS AND RULES OF INTERPRETATION

A.      <u>Definitions</u>.   The capitalized terms used in the Plan shall have the respective meanings set forth below.

1.      "<u>2010 Bond</u>" means The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project) Series 2010B in an aggregate principal amount of $50,000,000, issued by the Bond Issuer pursuant to the 2010 Bond Agreement, the proceeds of which were loaned to the BSA pursuant to the 2010 Note.

2.      "<u>2010 Bond Agreement</u>" means that certain Bond Purchase and Loan Agreement dated as of November 5, 2010, by and among the Bond Issuer, JPM, the BSA and Arrow, as amended, restated, supplemented or otherwise modified from time to time.

3.      "<u>2010 Bond Claim</u>" means any Claim against the Debtors arising under, derived from, or based upon the 2010 Bond Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2010 Bond Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to repay the 2010 Note, interest on the 2010 Note, and all fees, costs, expenses and obligations of any kind or character due or recoverable from the Debtors under the 2010 Bond Documents.

4. "<u>2010 Bond Documents</u>" means collectively, the 2010 Bond, the 2010 Bond Agreement, the 2010 Note, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2010 Bond Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

5. "<u>2010 Credit Agreement</u>" means that certain Credit Agreement dated as of August 11, 2010, by and between the BSA, as borrower, and JPM, as lender, as amended by that certain First Amendment to Credit Agreement dated as of November 5, 2010, that certain Second Amendment to Credit Agreement dated as of November 11, 2011, that certain Third Amendment to Credit Agreement dated as of March 9, 2012, that certain Fourth Amendment to Credit Agreement dated as of April 25, 2016, that certain Fifth Amendment to Credit Agreement dated as of March 2, 2017, that certain Sixth Amendment to Credit Agreement dated as of February 15, 2018, and that certain Seventh Amendment to Credit Agreement, dated as of March 21, 2019, pursuant to which JPM agreed to make term loans to the BSA in an aggregate amount of $25,000,000 and agreed to make revolving loans to the BSA and issue letters of credit on behalf of the BSA in an aggregate amount not to exceed $75,000,000.

6. "<u>2010 Credit Facility Claim</u>" means any Claim against the Debtors arising under, derived from, or based upon the 2010 Credit Facility Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2010 Credit Facility Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the 2010 Credit Facility Documents.

7. "<u>2010 Credit Facility Documents</u>" means, collectively, the 2010 Credit Agreement, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2010 Credit Facility Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

8. "<u>2010 Note</u>" means that certain Promissory Note – 2010B executed by the BSA, as borrower, and payable to the order of the Bond Issuer in the original principal amount of $50,000,000, which note was pledged by the Bond Issuer to JPM pursuant to the 2010 Bond Agreement to secure the repayment of the 2010 Bond, as amended, restated, supplemented or otherwise modified from time to time.

9. "<u>2012 Bond</u>" means The County Commission of Fayette County (West Virginia) Commercial Development Revenue Bond (Arrow WV Project), Series 2012, in an aggregate principal amount of $175,000,000, issued by the Bond Issuer pursuant to the

2012 Bond Agreement, the proceeds of which were loaned to the BSA pursuant to the 2012 Note.

10.    "<u>2012 Bond Agreement</u>" means that certain Bond Purchase and Loan Agreement dated as of March 9, 2012, between the Bond Issuer, JPM, the BSA and Arrow, as amended, restated, supplemented or otherwise modified from time to time.

11.    "<u>2012 Bond Claim</u>" means any Claim against the Debtors arising under, derived from, or based upon the 2012 Bond Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2012 Bond Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to repay the 2012 Note, interest on the 2012 Note, and all fees, costs, expenses and obligations of any kind or character due or recoverable from the Debtors under the 2012 Bond Documents.

12.    "<u>2012 Bond Documents</u>" means collectively, the 2012 Bond, the 2012 Bond Agreement, the 2012 Note, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2012 Bond Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

13.    "<u>2012 Note</u>" means that certain Promissory Note – 2012, executed by the BSA, as borrower, and payable to the order of the Bond Issuer in the original principal amount of $175,000,000, which note was pledged by the Bond Issuer to JPM pursuant to the 2012 Bond Agreement to secure the repayment of the 2012 Bond, as amended, restated, supplemented or otherwise modified from time to time.

14.    "<u>2019 RCF Agreement</u>" means that certain Credit Agreement, dated as of March 21, 2019, by and between the BSA, as borrower, and JPM, as lender, pursuant to which JPM agreed to make revolving loans to the BSA and issue letters of credit on behalf of the BSA in an aggregate amount not to exceed $71,500,000, the maturity date of which was extended pursuant to that certain Consent to Extension of Maturity Date dated as of January 16, 2020.

15.    "<u>2019 RCF Claim</u>" means any Claim against the Debtors arising under, derived from, or based upon the 2019 RCF Documents, including any Claim for obligations, indebtedness, and liabilities of the BSA arising pursuant to any of the 2019 RCF Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the BSA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the 2019 RCF Documents.

16.     "2019 RCF Documents" means, collectively, the 2019 RCF Agreement, the Prepetition Security Documents (2019), the Prepetition Security Agreement (2020) (in the case of the Prepetition Security Documents (2019) and the Prepetition Security Agreement (2020), solely as such documents and agreements pertain to obligations under the other 2019 RCF Documents), and all documentation executed and delivered in connection therewith, as amended, restated, supplemented or otherwise modified from time to time.

17.     "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

18.     "Abuse Claim" means a liquidated or unliquidated Claim against a Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by a Protected Party or any other Person for whom any Protected Party is alleged to be responsible. ~~Notwithstanding the foregoing~~; provided, however, that if the Plan is Confirmed as a Global Resolution Plan, then, with respect to any Contributing Chartered Organization, the term "Abuse Claim" shall be limited to any such Claim that is attributable to, arises from, is based upon, relates to, or results from, Abuse that occurred prior to the Petition Date: (a) in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units; or (b) that has been asserted in a proof of claim filed in the Chapter 11 Cases asserting a Direct Abuse Claim.  Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Abuse regardless of whether, as of the Petition Date, such Claim is barred by any applicable statute of limitations.

19.     "Abuse Claims Settlement" has the meaning ascribed to such term in Article V.~~R~~S.

20.     "Accrued Professional Fees" means, as of any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued fees and reimbursable expenses for services rendered in the Chapter 11 Cases up to and including such date, whether or not such Professional has then filed an application for the Allowance and payment of such fees and expenses: (a) to the extent that any such fees and expenses have not been previously paid; and (b) after each Professional has applied to such accrued fees and expenses the balance of any retainer that has been provided by the Debtors to such Professional.  No amount of a Professional's fees or expenses denied by a Final Order of the Bankruptcy Court shall constitute Accrued Professional Fees.

21.     "Ad Hoc Committee" means the Ad Hoc Committee of Local Councils of the Boy Scouts of America.

22.     "Administrative Expense Claim" means any right to payment from the Debtors that constitutes a cost or expense of administration incurred during the Chapter 11 Cases of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates or continuing the operations of the Debtors incurred during the period from the Petition Date to the Effective Date; (b) Professional Fee Claims; and (c) Quarterly Fees.

23.     "Affiliate" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor in the Chapter 11 Cases, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

24.     "Affirmation Order" means an order of the District Court affirming Confirmation of the Plan and issuing or affirming the issuance of the Channeling Injunction in favor of the Protected Parties.

25.     "Allowed" has the following meanings for Non-Abuse Claims:

a.     with respect to any Claim that is asserted to constitute an Administrative Expense Claim: (i) a Claim that represents an actual and necessary cost or expense of preserving the Estates or continuing the operations of the Debtors incurred during the period from the Petition Date to the Effective Date for which a request for payment is filed, (A) to the extent such Claim is determined by the Debtors to constitute an Administrative Expense Claim or allowed by a Final Order of the Bankruptcy Court or (B) as to which no objection to allowance has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law; (ii) other than with respect to a Professional Fee Claim, a Claim that arises during the period from the Petition Date to the Effective Date for which a request for payment is filed that is Disputed by the Debtors, which Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court to the extent that such allowed portion is determined by a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; (iii) a Claim that arises during the period from the Petition Date to the Effective Date in the ordinary course of the Debtors' non-profit operations

that is determined by the Debtors to constitute an Administrative Expense Claim; or (iv) a Professional Fee Claim, to the extent allowed by a Final Order of the Bankruptcy Court;

      b.     with respect to any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, or 2012 Bond Claim, any such Claim that is expressly allowed as provided under <u>Article III</u>; and

      c.     with respect to any Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, Non-Abuse Litigation Claim, or any portion of any of the foregoing, a Claim that is: (i) listed in the Schedules as not being disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim has been filed, and that has not been paid pursuant to an order of this Court prior to the Effective Date; (ii) evidenced by a Proof of Claim filed on or before the applicable Bar Date, not listed in the Schedules as disputed, contingent or unliquidated, and as to which no objection has been filed on or before the Claims Objection Deadline; (iii) not the subject of an objection to Allowance, which Claim (A) was filed on or before the Claims Objection Deadline and (B) has not been settled, waived, withdrawn or Disallowed pursuant to a Final Order; or (iv) expressly Allowed (x) pursuant to a Final Order, (y) pursuant to an agreement between the holder of such Claim and the Debtors or Reorganized BSA, as applicable, or (z) pursuant to the terms of the Plan.  For the avoidance of doubt, the holder of a Claim evidenced by a Proof of Claim filed after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.

"Allowance" and "Allowing" have correlative meanings.

26.    "<u>Amended BSA Bylaws</u>" means the amended and restated bylaws of the BSA, substantially in the form contained in the Plan Supplement.

27.    "<u>Arrow</u>" means Arrow WV, Inc., a West Virginia non-profit corporation.

28.    "<u>Arrow Collateral Assignment</u>" means that certain Collateral Assignment of Promissory Note and Credit Line Deed of Trust, dated as of March 21, 2019, by and between the BSA, as assignor, and JPM, as lender, pursuant to which BSA assigned the Arrow Intercompany Note and Arrow Deed of Trust to JPM to secure the obligations under the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, and the 2012 Bond Documents.

29.    "<u>Arrow Deed of Trust</u>" means that certain Credit Line Deed of Trust, dated as of June 30, 2010, made and executed by Arrow, as grantor, to Leslie Miller-Stover, as trustee, for the benefit of the BSA, as amended by that certain First Amendment to Credit Line Deed of Trust, dated as of March 21, 2019.

30.     "Arrow Intercompany Note" means that certain Amended and Restated Promissory Note dated as of March 21, 2019, issued by Arrow to the BSA in an original principal amount of $350,000,000.

31.     "Artwork" means the artwork listed on Schedule 1.

32.     "Assumed Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be assumed by the BSA under the Plan and the Cure Amount for each such Executory Contract or Unexpired Lease, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

33.     "Avoidance Actions" means any and all actual or potential avoidance, recovery, subordination or other Claims, causes of action or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related local, state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

34.     "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing that are made retroactive to the Petition Date, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

35.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases.

36.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases, and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

37.     "Bar Date" means (a) November 16, 2020 for any Claim (other than an Administrative Expense Claim or a Claim of a Governmental Unit), or (b) August 17, 2020 for any Claim of a Governmental Unit, in each case as established by the Bar Date Order.

38.     "Bar Date Order" means the *Order, Pursuant to 11 U.S.C. §§ 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors*, entered by the Bankruptcy Court on May 26, 2020 at

Docket No. 695, as amended, modified or supplemented by order of the Bankruptcy Court from time to time.

39.    "Bond Issuer" means The County Commission of Fayette County (West Virginia) in its capacity as the issuer under the 2010 Bond Agreement and the 2012 Bond Agreement.

40.    "BSA" means Boy Scouts of America, a congressionally chartered non-profit corporation under title 36 of the United States Code.

41.    "BSA Charter" means the congressional charter of the BSA, enacted on June 15, 1916, as amended.

42.    "BSA Global Resolution Note" means an unsecured promissory note in the principal amount of $80,000,000, substantially in the form contained in the Plan Supplement, to be issued to the Settlement Trust by Reorganized BSA on the Effective Date (only if the Plan is Confirmed as a Global Resolution Plan) in accordance with Article V.S.3 and Article V.X.

43.    42. "BSA Insurance Policies" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Effective Date naming the Debtors, or either of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtors, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtors insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Abuse Claim, including the policies listed on Schedule 2.  For the avoidance of doubt, BSA Insurance Policies shall not include: (a) any policy providing reinsurance to any Settling Insurance Company; (b) any D&O Liability Insurance Policy; or (c) any Local Council Insurance Policy.

44.    43. "BSA Settlement Trust Contribution" means:

a.    all of the Net Unrestricted Cash and Investments, which are forecasted to total approximately $90,000,000, subject to potential variance depending upon the timing of the Effective Date;

b.    if the Plan is Confirmed as a Global Resolution Plan, the BSA Global Resolution Note, in the principal amount of $80,000,000, subject to the terms of Article V.S.3;

c.    b. the BSA's right, title and interest in and to (i) Scouting University, (ii) the Artwork, and (iii) the Oil and Gas Interests which are deemed to be valued at approximately $59,000,000;

d.    c. all of the BSA's right, title and interest in and to the Warehouse and Distribution Center, subject to the Leaseback Requirement, or the proceeds of a third-party sale-leaseback of the Warehouse and Distribution Center for fair market value, which is valued at approximately $11,600,000;

e. the BSA's right, title and interest in and to the Oil and Gas Interests, which are valued at approximately $7,600,000;

f. the net proceeds of the sale of Scouting University, which equal approximately $1,962,000;

g. ~~d.~~ to the maximum extent permitted by applicable law, any and all of the Debtors' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the BSA Insurance Policies (subject to Article IV.D.3 and Article IV.D.4 with respect to Insured Non-Abuse Claims), the Insurance Coverage, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries; ~~and~~

h. ~~e.~~ the Debtors' Settlement Trust Causes of Action; and

i. ~~f.~~ the assignment of any and all Perpetrator Indemnification Claims held by the BSA.

For the avoidance of doubt, the BSA Settlement Trust Contribution shall not include: (i) the proceeds of the Foundation Loan Facility; (ii) any Causes of Action against Released Parties or holders of General Unsecured Claims, Non-Abuse Litigation Claims, or Convenience Claims released by the Debtors and their Estates under Article X.J; or (iii) if the Plan is Confirmed as a BSA Toggle Plan, the rights of any Person, other than the Debtors, arising under or attributable to the BSA Insurance Policies, the Insurance Coverage, the Insurance Actions, the Insurance Action Recoveries, or any other rights under or with respect to the BSA Insurance Policies.

45. ~~44.~~ "BSA Toggle Plan" means the Plan, as modified by the applicable provisions set forth herein, if the Bankruptcy Court concludes that (a) the Plan has not been accepted by a sufficient number of holders of Direct Abuse Claims that have voted to accept or reject the Plan, or (b) the provisions of the Plan applicable to the Abuse Claims Settlement do not satisfy applicable requirements for approval under the Bankruptcy Code or Bankruptcy Rules.

46. ~~45.~~ "BSA Toggle Plan TDP" means the Trust Distribution Procedures of the Boy Scouts of America Settlement Trust for the BSA Toggle Plan, substantially in the form attached hereto as Exhibit A-2, as the same may be amended or modified from time to time.

47. ~~46.~~ "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

48. ~~47.~~ "Cash" means legal tender of the United States of America.

49. 48. "Cash Collateral Order" means the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition Secured Party Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 503, and 507; and (III) Granting Related Relief*, entered by the Bankruptcy Court on April 15, 2020 at Docket No. 433.

50. 49. "Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions (including Avoidance Actions), suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, capable of being asserted, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, whether arising before, on, or after the Petition Date. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any claim under any local, state, federal or foreign law, including, without limitation, any fraudulent transfer or similar claim.

51. 50. "Channeling Injunction" means the permanent injunction provided for in Article X.F with respect to Abuse Claims against the Protected Parties to be issued pursuant to the Confirmation Order.

52. 51. "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, which are jointly administered under Case No. 20-10343 (LSS).

53. 52. "Chartered Organizations" means each and every civic, faith-based, educational or business organization, governmental entity or organization, other entity or organization, or group of individual citizens, in each case presently or formerly authorized by the BSA to operate, sponsor or otherwise support one or more Scouting units.

54. 53. "Claim" means any "claim," as defined in section 101(5) of the Bankruptcy Code, which, for the avoidance of doubt, shall include any Abuse Claim.

55. 54. "Claims Objection Deadline" means the deadline for filing an objection to any Administrative Expense Claim (other than a Professional Fee Claim), Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, or Non-Abuse Litigation Claim, which deadline shall be: (a) 180 days after the Effective Date with respect to all such Claims and Interests other than Convenience Claims, General Unsecured Claims, and Non-Abuse Claims, subject to any extensions approved by an order of the Bankruptcy Court; and (b) sixty (60) days after the Effective Date with respect to Convenience Claims, General Unsecured Claims, and

Non-Abuse Litigation Claims, subject to any extensions approved by an order of the Bankruptcy Court with the consent of the Creditor Representative (such consent not to be unreasonably withheld); provided, however, that the Debtors shall not be bound by the Claims Objection Deadline with respect to any Claim filed after the Bar Date; provided further, however, that the Claims Objection Deadline shall not apply to Abuse Claims, which shall be administered exclusively in accordance with the Settlement Trust Documents.

56.    55. "Claims Record Date" means the Voting Deadline, which is the date on which the transfer register for each Class of Non-Abuse Claims against or Interests in the Debtors, as such register is maintained by the Debtors or their agents, shall be deemed closed.

57.    56. "Claims Register" means the official register of Claims maintained by the Notice and Claims Agent in the Chapter 11 Cases.

58.    57. "Class" means each category of holders of Claims or Interests as set forth in Article III pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

59.    "Coalition" means the Coalition of Abused Scouts for Justice, an *ad hoc* committee composed of thousands of holders of Direct Abuse Claims that filed a notice of appearance in the Chapter 11 Cases on July 24, 2020 at Docket No. 1040.

60.    "Coalition Restructuring Expenses" means the unreimbursed reasonable and documented professional or advisory fees and expenses incurred by the Coalition from July 24, 2020 up to and including the Effective Date, in each case in accordance with the terms of the applicable professional or advisory engagement letters, if any, up to an amount equal to $10,500,000, plus, if the Bankruptcy Court authorizes the Debtors to pay ongoing reasonable and documented fees and expenses of the Coalition during the course of the Chapter 11 Cases, an additional amount of up to $950,000 per month commencing on the date the Bankruptcy Court authorizes such payment up to and including the Effective Date of the Plan.

61.    58. "Common-Interest Communications with Insurers" means documents, information, or communications that are subject to the attorney-client privilege, attorney-work product doctrine, or other privilege or protection from disclosure, and are shared between or among the Debtors and any Insurance Company or its Representatives, including documents that reflect defense strategy, case evaluations, discussions of settlements or resolutions, and communications regarding underlying litigation.

62.    59. "Compensation and Benefits Programs" means all employment agreements and policies, and all employment, compensation, and benefit plans, policies, savings plans, retirement plans (including the Pension Plan), deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees,

retirees, and non-employee directors, and the employees, retirees and non-employee directors of the Local Councils and the Related Non-Debtor Entities. Notwithstanding the foregoing, the Compensation and Benefits Programs shall not include the Deferred Compensation Plan or the Restoration Plan.

63. 60. "Compensation Procedures Order" means the *Order (I) Approving Procedures for (A) Interim Compensation and Reimbursement of Expenses of Retained Professionals and (B) Expense Reimbursement for Official Committee Members and (II) Granting Related Relief* entered by the Bankruptcy Court on April 6, 2020 at Docket No. 341.

64. 61. "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases. Confirmed, Confirmable, and Confirmability shall have correlative meanings.

65. 62. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

66. 63. "Confirmation Hearing" means the hearing(s) held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

67. 64. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which must be in form and substance acceptable to JPM and the Creditors' Committee in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D.

68. 65. "Confirmation Scheduling Motion" means the *Debtors' Motion for Entry of Order (I) Scheduling Certain Dates and Deadlines in Connection with Confirmation of the Debtors' Plan of Reorganization, (II) Establishing Certain Protocols, and (III) Granting Related Relief*, filed with the Bankruptcy Court on April 15, 2021 at Docket No. 2618.

69. 66. "Contributing Chartered Organization Settlement Contribution" means, if the Plan is Confirmed as a Global Resolution Plan:

a. the contributions to the Settlement Trust by the Contributing Chartered Organizations, as set forth on Exhibit C;

b. to the maximum extent permitted by applicable law, any and all of the Contributing Chartered Organizations' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the BSA Insurance Policies (subject to Article

IV.D.3 and Article IV.D.4 with respect to Insured Non-Abuse Claims), the Insurance Coverage, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries;

    c.   the waiver, release, and expungement from the Claims Register, as of the Effective Date, of any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Contributing Chartered Organization, including any Indirect Abuse Claims, without any further notice to or action, order, or approval of the Bankruptcy Court, and the agreement of each Contributing Chartered Organization not to file or assert any Claim or Claims against the Debtors or Reorganized BSA arising from any act or omission of the Debtors on or prior to the Confirmation Date; and

    d.   the assignment of any and all Perpetrator Indemnification Claims held by the Contributing Chartered Organizations.

70. ~~67.~~ "Contributing Chartered Organizations" means the Chartered Organizations listed on Exhibit D hereto.

71. ~~68.~~ "Convenience Claim" means any Claim that would otherwise be a General Unsecured Claim that is Allowed in an amount of $50,000 or less; provided that a holder of a General Unsecured Claim that is Allowed in an amount greater than $50,000 may irrevocably elect, as evidenced on the Ballot (as defined in the Voting Procedures) timely and validly submitted by such holder (or other writing acceptable to the Debtors), to have such Claim irrevocably reduced to $50,000 and treated as a Convenience Claim (upon Allowance) for purposes of the Plan, in full and final satisfaction of such Claim; provided further that a General Unsecured Claim may not be subdivided into multiple Convenience Claims. The holder of an Allowed Non-Abuse Litigation Claim may elect to have such Allowed Claim treated as a Convenience Claim solely in accordance with the terms of Article III.B.9. For the avoidance of doubt, the holder of an Abuse Claim (including Direct Abuse Claims and Indirect Abuse Claims) may not elect to have such Claim treated as a Convenience Claim.

~~69.   "Cooperation Agreement" means that certain Cooperation Agreement, substantially in the form contained in the Plan Supplement, among the Debtors and the Settlement Trust and including, solely if the Plan is Confirmed as a Global Resolution Plan, the Local Councils, and the Contributing Chartered Organizations.~~

72. ~~70.~~ "Core Value Cash Pool" means Cash in the aggregate amount of $25,000,000 for purposes of making Distributions to holders of Allowed General Unsecured Claims and, subject to the terms of Article III.B.9, holders of Allowed Non-Abuse Litigation Claims. Reorganized BSA shall fund the Core Value Cash Pool in accordance with Article V.~~O~~P.

73. 71. "Creditor Representative" means the creditor representative to be appointed as of the Effective Date in accordance with Article V.OP. The Creditor Representative will be identified in the Plan Supplement.

74. 72. "Creditor Representative Fee Cap" the maximum amount of reasonable compensation and reimbursement of expenses that shall payable by Reorganized BSA to the Creditor Representative on account of its services, which shall be equal to $100,000.

75. 73. "Creditors' Committee" means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases under section 1102(a) of the Bankruptcy Code.

76. 74. "Cure Amount" means, with respect to any Executory Contract or Unexpired Lease sought to be assumed or assumed and assigned by the Debtors, the monetary amount, if any, required to cure the Debtors' defaults under any such Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an Executory Contract or Unexpired Lease) at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

77. 75. "Cure and Assumption Notice" means the notice of proposed assumption of, and proposed Cure Amount payable in connection with, an Executory Contract or Unexpired Lease (and, to the extent the Debtors seek to assume and assign any such Executory Contract or Unexpired Lease pursuant to the Plan, adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code), to be served in accordance with Article VI.C.

78. 76. "D&O Liability Insurance Policies" means all insurance policies issued at any time to any of the Debtors for directors', managers', and officers' liability (including any "tail policy" or run-off coverage) and all agreements, documents, or instruments relating thereto.

79. 77. "De Minimis Asset" means any miscellaneous asset that is valued by the Debtors at $10,000 or less and that is located at the premises subject to any Unexpired Leases rejected by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, including furniture and equipment.

80. 78. "Debtors" means the BSA and Delaware BSA, the non-profit corporations that are debtors and debtors in possession in the Chapter 11 Cases.

81. 79. "Deferred Compensation Plan" means the Boy Scouts of America 457(b) Plan, a non-qualified deferred compensation plan under section 457(b) of the Internal Revenue Code, which allows eligible BSA and Local Council employees to make elections to defer the payment of a certain amount or percentage of their regular base salary or bonus for future payment.

82. 80. "Delaware BSA" means Delaware BSA, LLC, a Delaware limited liability company.

83. 81. "Direct Abuse Claim" means an Abuse Claim that is not an Indirect Abuse Claim.

84. 82. "Disallowed" means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, or Non-Abuse Litigation Claim, any such Claim or portion thereof that: (a) has been disallowed, denied, dismissed, expunged, or overruled pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) has been listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law; or (c) has not been scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed, such that the creditor holding such Claim shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution. "Disallowance" and "Disallowing" have correlative meanings. With respect to any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, 2012 Bond Claim, Direct Abuse Claim, Indirect Abuse Claim, or Interest, the term "Disallowed" shall not apply.

85. 83. "Disbursing Agent" means, with respect to all Claims other than Abuse Claims, Reorganized BSA or a Person or Persons selected by the Debtors or Reorganized BSA to make or facilitate Distributions contemplated under the Plan.

86. 84. "Discharge Injunction" means the injunction issued in accordance with sections 524 and 1141 of the Bankruptcy Code and contained in Article X.E.2 of the Plan.

87. 85. "Discharges" means the discharges set forth in Article X.E.

88. 86. "Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, which must be in form and substance reasonably acceptable to JPM and the Creditors' Committee.

89. 87. "Disclosure Statement Order" means one or more orders entered by the Bankruptcy Court, in form and substance reasonably acceptable to the Debtors, JPM and the Creditors' Committee: (a) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code; (b) fixing the amounts of Claims solely for voting purposes and not for purposes of distributions; (c) approving the Voting Procedures; and (d) authorizing solicitation of the Plan.

90. 88. "Disputed" means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Convenience Claim, General Unsecured Claim, or Non-Abuse Litigation Claim, any such Claim (or portion thereof) (a) that is neither Allowed nor Disallowed, (b) that is listed on the Schedules as "disputed," "contingent," or "unliquidated" or (c) for which a Proof of Claim has been filed or a written request for payment has been made to the extent that any party in interest has interposed a timely objection to such Claim, which objection has not been withdrawn or adjudicated pursuant to a Final Order. The term "Disputed" does not apply to Abuse Claims.

91. 89. "Disputed Claims Reserve" means the reserve of Cash within the Core Value Cash Pool to be Distributed to holders of Disputed General Unsecured Claims, if and when such Disputed Claims become Allowed, which shall be funded with amounts and on terms acceptable to the Creditor Representative.

92. 90. "Distribution" means the payment or delivery of Cash, property, or interests in property, as applicable, to holders of Allowed Non-Abuse Claims under the terms of the Plan. "Distributed" and "Distribution" have correlative meanings.

93. 91. "Distribution Date" means the dates on which the Disbursing Agent makes a Distribution, or causes a Distribution to be made, from the Core Value Cash Pool to holders of Allowed General Unsecured Claims and, subject to the terms of Article III.B.9, holders of Allowed Non-Abuse Litigation Claims. Each Distribution Date shall occur as soon as practicable after Reorganized BSA makes each semi-annual installment payment of the Core Value Cash Pool in accordance with Article V.OP.

94. 92. "District Court" means the United States District Court for the District of Delaware.

95. "Document Agreement" means the Document Agreement (Global Resolution Plan) or the Document Agreement (BSA Toggle Plan), as applicable, substantially in the form contained in the Plan Supplement, between Reorganized BSA and the Settlement Trust and including, solely if the Plan is Confirmed as a Global Resolution Plan, the Local Councils and the Contributing Chartered Organizations.

96. 93. "Effective Date" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in Article IX.B shall have been satisfied or waived pursuant to Article IX.C.

97. 94. "Encumbrance" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

98. 95. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

99. 96. "Estate" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

100. 97. "Estate Causes of Action" means any and all Causes of Action owned, held, or capable of being asserted by or on behalf of either Debtor or its Estate, whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction, including actions that: (a) arise out of or are based on breach of contract, fraudulent conveyances and transfers, breach of fiduciary duty, breach of duty of loyalty or obedience, legal malpractice, recovery of attorneys' fees, turnover of property and avoidance or recovery actions of the Debtors or their respective Estates, including actions that constitute property of the Estate under section 541 of the Bankruptcy Code that are or may be pursued by a representative of the Estates, including pursuant to section 323 of the Bankruptcy Code, and actions, including Avoidance Actions, that may be commenced by a representative of the Estates under section 362 or chapter 5 of the Bankruptcy Code, seeking relief in the form of damages (actual and punitive), imposition of a constructive trust, turnover of property, restitution, and declaratory relief with respect thereto or otherwise; or (b) seek to impose any liability upon, or injunctive relief on, any Protected Party or to satisfy, in whole or in part, any Abuse Claim.

101. 98. "Excess Cash and Investments" means, as of any date on or after the Effective Date, the unrestricted Cash and balance sheet investments owned by Reorganized BSA that are not subject to legally enforceable restrictions on the use or disposition of such assets for a particular purpose.

102. 99. "Excess Cash Sweep" has the meaning ascribed to such term in Article V.UV.

103. 100. "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Creditor Representative; and (f) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

104. 101. "Executory Contract" means any executory contract to which BSA is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

105. 102. "Expedited Distribution" means a one-time Cash payment from the Settlement Trust in the amount of $1,500.00, conditioned upon Confirmation of the Plan

as a Global Settlement Plan and satisfaction of the criteria set forth in the Global Resolution Plan TDP.

106. 103. "Fee Examiner" means Justin H. Rucki of Rucki Fee Review, LLC, in his capacity as the fee examiner appointed pursuant to the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Applications of Retained Professionals*, entered by the Bankruptcy Court on September 18, 2020 at Docket No. 1342, or any successor appointed by the Bankruptcy Court.

107. 104. "Final Order" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied with prejudice or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

108. 105. "Florida Sea Base Assignment" means the Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

109. 106. "Florida Sea Base Mortgage" means the Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and from the BSA, as mortgagor, and JPM, as mortgagee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

110. 107. "Foundation" means the National Boy Scouts of America Foundation, a District of Columbia nonprofit corporation.

111. 108. "Foundation Loan" means the new second-lien term loan lending facility pursuant to which the Foundation, as lender, shall make a term loan to Reorganized BSA, as borrower, in the principal amount of $42,800,000, which is equal to the appraised value of the Summit Bechtel Reserve. The material terms of the Foundation Loan are set forth on the term sheet attached hereto as Exhibit E, which is qualified in its entirety by reference to the Foundation Loan Agreement.

112. ~~109.~~ "Foundation Loan Agreement" means the credit agreement governing the Foundation Loan, dated as of the Effective Date, the form of which shall be included in the Plan Supplement.

113. ~~110.~~ "Future Abuse Claim" means any Direct Abuse Claim against any Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date but which, as of the date immediately preceding the Petition Date, was held by a Person who, as of such date, (a) had not attained eighteen (18) years of age, or (b) was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose~~. Notwithstanding the foregoing~~; provided, however, that if the Plan is Confirmed as a Global Resolution Plan, then, with respect to any Contributing Chartered Organization, the term "Future Abuse Claim" shall be limited to any such Direct Abuse Claim that is attributable to, arises from, is based upon, relates to, or results from, Abuse that occurred prior to the Petition Date in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units.

114. ~~111.~~ "Future Claimants' Representative" means James L. Patton, Jr., the legal representative appointed by the Bankruptcy Court for holders of Future Abuse Claims, or any successor legal representative appointed by the Bankruptcy Court.

115. ~~112.~~ "General Unsecured Claim" means any Claim against the Debtors that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a 2010 Credit Facility Claim, a 2019 RCF Claim, a 2010 Bond Claim, a 2012 Bond Claim, a Convenience Claim, a Non-Abuse Litigation Claim, a Direct Abuse Claim, or an Indirect Abuse Claim. Claims arising under the Deferred Compensation Plan or the Restoration Plan shall be deemed to be General Unsecured Claims.

116. ~~113.~~ "Gift Annuity Agreements" mean the charitable gift annuity agreements described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain and Administer Prepetition Customer, Scout, and Donor Programs and Practices and (B) Pay and Honor Related Prepetition Obligations, and (II) Granting Related Relief*, filed by the Debtors on the Petition Date at Docket No. 8.

117. ~~114.~~ "Global Resolution Plan" means the Plan, as modified by the applicable provisions set forth herein, if the Bankruptcy Court concludes that (a) the Plan has been accepted by a sufficient number of holders of Direct Abuse Claims that have voted to accept or reject the Plan, or (b) the provisions of the Plan applicable to the Abuse Claims Settlement satisfy applicable requirements for approval under the Bankruptcy Code or Bankruptcy Rules.

118. ~~115.~~ "Global Resolution Plan TDP" means the Trust Distribution Procedures of the Boy Scouts of America Settlement Trust for the Global Resolution

Plan, substantially in the form attached hereto as Exhibit A-1, as the same may be amended or modified from time to time.

119. 116. "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

120. 117. "Hartford" means Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company and each of their past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities, and each of their respective officers, directors, stockholders, members, partners, managers, employees, predecessors, successors and assigns, each in their capacity as such.

121. 118. "Hartford Insurance Settlement Agreement" means the Settlement Agreement and Release entered into as of April 15, 2021 by and between Hartford and the BSA (as defined in such agreement), a copy of which was attached as Exhibit A to the *Second Mediators' Report* filed in the Chapter 11 Cases on April 16, 2021 at Docket No. 2624 and which is attached hereto as Exhibit I, as such Settlement Agreement and Release may be amended in accordance with its terms from time to time.

122. 119. "Hartford Policies" shall have the meaning set forth for such capitalized term in the Section entitled "Definitions" in the Hartford Insurance Settlement Agreement.

123. 120. "Hartford Settlement Contribution" shall mean the "Settlement Amount" as defined in the Hartford Insurance Settlement Agreement (but which amount shall be subject to the terms and conditions set forth in the Hartford Insurance Settlement Agreement).

124. 121. "Headquarters" means that certain parcel of real property owned by the BSA located at 1325 West Walnut Hill Lane, Irving, Texas 75038, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon.

125. 122. "Headquarters Assignment" means that certain Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

126. 123. "Headquarters Deed of Trust" means that certain Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and between the BSA and JPM.

127. "High Adventure Base Participant" means a registered Youth Member who has paid the participation fee (which has not been refunded in whole or in part) for attending a BSA program at one of the four high adventure bases (Florida Sea Base, Northern Tier, Philmont or Summit Bechtel Reserve). High Adventure Base Participants

do not include Youth Members attending a Jamboree, an Order of the Arrow program, or an event sponsored by the World Organization of the Scouting Movement (WOSM) or a member of WOSM other than the BSA.

128. 124. "Impaired" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

129. 125. "Indemnification Obligations" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, limited liability company agreements, or other organizational or formation documents, board resolutions, management or indemnification agreements, employment or other contracts, or otherwise, for the past and present directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents who provided services to the Debtors before, on, or after the Petition Date.

130. 126. "Indirect Abuse Claim" means a liquidated or unliquidated Abuse Claim for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract.

131. 127. "Injunctions" means the Discharge Injunction, the Channeling Injunction, the Insurance Entity Injunction (if the Plan is Confirmed as a Global Resolution Plan), the Release Injunctions, and any other injunctions entered by the Bankruptcy Court or the District Court in connection with Confirmation of the Plan.

132. 128. "Insurance Action" means any claim, Cause of Action, or right of the Debtors, and, if the Plan is Confirmed as a Global Resolution Plan, the Local Councils and Contributing Chartered Organizations, or any of them, under the laws of any jurisdiction, against any Non-Settling Insurance Company, arising from or related to: (a) any such Non-Settling Insurance Company's failure to provide coverage or otherwise pay under Insurance Coverage; (b) the refusal of any Non-Settling Insurance Company to compromise and settle any Abuse Claim under or pursuant to any Insurance Policy; (c) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Abuse Claim; (d) any conduct by any Non-Settling Insurance Company constituting "bad faith" conduct that could give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (e) any other claims under, arising out of or relating to an Insurance Policy or Insurance Coverage, including the Insurance Coverage Actions. For the avoidance of doubt, if the Plan is Confirmed as a Global Resolution Plan, no claim, Cause of Action, or right of the Debtors, the Local Councils, or the Contributing Chartered Organizations, or any of them, against any Settling Insurance Company shall be deemed an Insurance Action.

133. ~~129.~~ "Insurance Action Recoveries" means (a) Cash derived from and paid by an Insurance Company pursuant to an Insurance Settlement Agreement, (b) the right to receive proceeds of Insurance Coverage (including any receivables), and (c) the right to receive the proceeds or benefits of any Insurance Action.

134. ~~130.~~ "Insurance Assignment" means the assignment and transfer to the Settlement Trust of (a) the Insurance Actions, (b) the Insurance Action Recoveries, (c) the Insurance Settlement Agreements, (d) the Insurance Coverage, and (e) all other rights or obligations under or with respect to the Insurance Policies (but not the policies themselves); provided, however, that if the Plan is Confirmed as a BSA Toggle Plan, such assignment and transfer will be limited to the rights and obligations of the Debtors and the Related Non-Debtor Entities, and all such Persons' Representatives. The Insurance Assignment does not include any rights or obligations under or with respect to any Insurance Policies that are the subject of an Insurance Settlement Agreement.

135. ~~131.~~ "Insurance Company" means any insurance company, insurance syndicate, coverholder, insurance broker or syndicate insurance broker, guaranty association, or any other Entity that has issued, or that has any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under or with respect to, any Insurance Policy.

136. ~~132.~~ "Insurance Coverage" means all of the rights, benefits or insurance coverage under any Insurance Policy related to Abuse Claims, whether known or unknown to the Debtors or the Local Councils, that is not the subject of an Insurance Settlement Agreement, including the right to payment or reimbursement of liability, indemnity or defense costs arising from or related to Abuse Claims or Settlement Trust Expenses.

137. ~~133.~~ "Insurance Coverage Actions" means any and all pending coverage litigation between the BSA and any Insurance Company as of the Effective Date, including: (a) *Boy Scouts of America, et al. v. Insurance Company of North America et al.*, Case No. DC-18-11896, pending in the 192nd Judicial District Court of Dallas County, Texas; (b) *Boy Scouts of America, et al. v. Hartford Accident and Indemnity Co.*, *et al.*, Case No. DC-18-07313, pending in the District Court of Dallas County, 95th Judicial District; (c) *National Surety Corp. v. Boy Scouts of America, et al.*, Case No. 2017-CH-14975, pending in the Circuit Court of Cook County, Illinois, Chancery Division; and (d) *Hartford Accident and Indemnity Co. and First State Ins. Co. v. Boy Scouts of America, et al.*, Adv. Pro. No. 20-50601 (LSS), pending before the Bankruptcy Court.

138. ~~134.~~ "Insurance Coverage Defense" means all rights and defenses that any Insurance Company may have under any Insurance Policy and applicable law with respect to a claim seeking insurance coverage or to an Insurance Action, but Insurance Coverage Defenses do not include any defense that the Plan or any of the other Plan Documents do not comply with the Bankruptcy Code. Upon entry of the Confirmation Order in the Chapter 11 Cases determining that the Bankruptcy Code authorizes the Insurance Assignment notwithstanding any terms or provisions of the Insurance Policies that any

Insurance Company asserts or may assert otherwise prohibits the Insurance Assignment, an Insurance Coverage Defense shall not include any defense that the Insurance Assignment is prohibited by the Insurance Policies or applicable non-bankruptcy law.

139. 135. "Insurance Entity Injunction" means the injunction described in Article X.H.

140. 136. "Insurance Policies" means (a) if the Plan is Confirmed as a Global Resolution Plan, collectively, the BSA Insurance Policies and the Local Council Insurance Policies; and (b) if the Plan is Confirmed as a BSA Toggle Plan, the BSA Insurance Policies.

141. 137. "Insurance Settlement Agreement" means (a) the Hartford Insurance Settlement Agreement and (b) any other settlement agreement entered into after the Petition Date and before the Confirmation Date by and among (ai) any Insurance Company, on the one hand, and (bii) one or more of the Debtors and/or any other Protected Party, on the other hand, inunder which an Insurance Policy and/or the Debtors and/or other Protected Parties' rights thereunder with respect to Abuse Claims or Non-Abuse Litigation Claims are, subject to Confirmation of the Plan as a Global Resolution Plan, released. All Insurance Settlement Agreements related to Specified Insurance Policies must be acceptable to the Creditors' Committee.

142. 138. "Insured Non-Abuse Claim" means any Non-Abuse Claim to the extent such Claim is or is alleged to be covered by an insurance policy (including any Insurance Policy) issued or allegedly issued to the Debtors or, if the Plan is Confirmed as a Global Resolution Plan, one or more of the Local Councils. Insured Non-Abuse Claims include Non-Abuse Litigation Claims.

143. 139. "Interest" means any "equity security" as defined in section 101(16) of the Bankruptcy Code.

144. 140. "Internal Revenue Code" means title 26 of the United States Code, 26 U.S.C. §§ 1 *et seq.*, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing as the same may exist on any relevant date to the extent applicable to the Chapter 11 Cases.

145. 141. "JPM" means JPMorgan Chase Bank, National Association and any successors and assigns.

146. 142. "JPM / Creditors' Committee Settlement" has the meaning ascribed to such term in Article V.RS.

147. 143. "JPM / Creditors' Committee Term Sheet" means that certain settlement term sheet appended as Exhibit A to the *First Mediators' Report* filed on March 1, 2021 at Docket No. 2292.

148. 144. "JPM Exit Fee" means an exit fee to be paid by Reorganized BSA on the Effective Date, in an amount equal to the aggregate principal amount due and owing

as of the Effective Date, plus the undrawn amount of any letters of credit then outstanding, under the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents, multiplied by 0.50%.

149. ~~145.~~ "Leaseback Requirement" means the requirement that Reorganized BSA be entitled to lease the Warehouse and Distribution Center from the Settlement Trust for fair market value so long as the Settlement Trust holds title to such premises and that any sale or other transfer of the Warehouse and Distribution Center by the Settlement Trust be subject to Reorganized BSA's right to lease such premises from any Person that acquires the Warehouse and Distribution Center from the Settlement Trust (or any subsequent acquirer) for fair market value for a term of not less than two years with ~~five~~four two-year options to renew at the option of Reorganized BSA. An agreement reflecting the terms of the Leaseback Requirement shall be filed with the Plan Supplement.

150. ~~146.~~ "Lien" means any "lien" as defined in section 101(37) of the Bankruptcy Code.

151. ~~147.~~ "Life-Income Agreement" means the agreements described in the *Supplement to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Maintain and Administer Prepetition Customer, Scout, and Donor Programs and Practices and (B) Pay and Honor Related Prepetition Obligations, and (II) Granting Related Relief*, filed by the Debtors on March 3, 2020 at Docket No. 134.

152. ~~148.~~ "Local Council Insurance Policies" means any and all known and unknown contracts, binders, certificates or insurance policies currently or previously in effect at any time on or before the Effective Date naming the Local Councils, or any of them, or any predecessor, subsidiary, or past or present Affiliate of any Local Council, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford any Local Council insurance coverage, upon which any claim currently have been, has been or may be made with respect to any Abuse Claim, including the policies identified on Schedule 3. Notwithstanding the foregoing, Local Council Insurance Policies shall not include any policy providing reinsurance to any Settling Insurance Company. For the avoidance of doubt, Local Council Insurance Policies do not include any BSA Insurance Policy or any insurance policy issued at any time to any of the Local Councils for directors', managers', and officers' liability (including any "tail policy" or run-off coverage) or any agreements, documents, or instruments relating thereto.

153. ~~149.~~ "Local Council Settlement Contribution" means, if the Plan is Confirmed as a Global Resolution Plan:

    a.    the contributions to the Settlement Trust by the Local Councils, as set forth on Exhibit F;

    b.    to the maximum extent permitted under applicable law, any and all of the Local Councils' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes

of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the BSA Insurance Policies (subject to Article IV.D.3 and Article IV.D.4 with respect to Insured Non-Abuse Claims), the Insurance Coverage, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof (but not the policies themselves); (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries;

c.     to the maximum extent permitted under applicable law, any and all of the Local Councils' rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the Local Council Insurance Policies (subject to Article IV.D.3 and Article IV.D.4 with respect to Insured Non-Abuse Claims), the Insurance Coverage, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries;

d.     the waiver, release, and expungement from the Claims Register, as of the Effective Date, of any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Local Council, including any Indirect Abuse Claims, without any further notice to or action, order, or approval of the Bankruptcy Court, and the agreement of each Local Council not to file or assert any Claim or Claims against the Debtors or Reorganized BSA arising from any act or omission of the Debtors on or prior to the Confirmation Date; and

e.     the assignment of any and all Perpetrator Indemnification Claims held by the Local Councils.

154.    150.    "Local Councils" means, collectively, each and every current or former local council of the BSA, including each and every current local council of the BSA as listed on Exhibit G hereto, "supporting organizations" within the meaning of 26 U.S.C. § 509 with respect to any Local Council, and all Entities that hold, own, or operate any camp or other real property that is operated in the name of or for the benefit of any Local Council.

155.    151.    "Mediators" means the Honorable Kevin J. Carey (Ret.), Paul A. Finn, and Timothy V.P. Gallagher, each of whom is appointed by the Bankruptcy Court as a mediator in the Chapter 11 Cases under the *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* entered on June 9, 2020 at Docket No. 812.

156.    152.    "Net Unrestricted Cash and Investments" means all of the Unrestricted Cash and Investments as of the Effective Date, after Reorganized BSA has received the proceeds of the Foundation Loan, less (a) $75,000,000 25,000,000 (subject to potential variance as set forth in Article V.M), which shall be funded first from the

proceeds of the Foundation Loan, (b) an amount of Cash equal to the JPM Exit Fee, (c) an amount of Cash sufficient to fund all unpaid Allowed Administrative Expense Claims, (d) without duplication, an amount of Cash sufficient to fund the Professional Fee Reserve, (e) an amount of Cash sufficient to fund the Coalition Restructuring Expenses, (f) an amount of Cash equal to the Creditor Representative Fee Cap, (fg) the amount of Cash estimated to be required to satisfy Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed Convenience Claims, and (gh) an amount of Cash sufficient to fund all accrued but unpaid interest and reasonable fees and expenses of JPM as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.

157. 153. "Non-Abuse Claim" means any Claim against the Debtors that is not an Abuse Claim.

158. 154. "Non-Abuse Litigation Claim" means any Claim that is a prepetition unsecured non-priority Claim against the Debtors relating to pending or threatened litigation against one or both of the Debtors that does not relate to Abuse. For the avoidance of doubt, Non-Abuse Litigation Claims include all personal injury or wrongful death Claims against the Debtors that do not relate to Abuse and all Claims against the Debtors asserted by the Girl Scouts of the United States of America and do not include any Administrative Expense Claims that may be asserted by holders of Non-Abuse Litigation Claims.

159. 155. "Non-Settling Insurance Company" means any Insurance Company to the extent it is not a Settling Insurance Company.

160. 156. "Northern Tier Assignment" means that certain Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

161. 157. "Northern Tier Mortgage" means that certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and from the BSA, as mortgagor, and JPM, as mortgagee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

162. 158. "Notice and Claims Agent" means Omni Agent Solutions, in its capacity as "claims and noticing agent" for the Debtors, and any successor thereto.

163. 159. "Official Committees" means the Tort Claimants' Committee and the Creditors' Committee.

164. 160. "Oil and Gas Interests" means those certain mineral or royalty interests owned by the BSA, consisting of approximately 1,027 properties located in Alabama, Arkansas, California, Florida, Georgia, Illinois, Louisiana, Michigan,

Mississippi, Nebraska, New Mexico, North Dakota, Oklahoma, Oregon, Texas, South Dakota and Wyoming. The Oil and Gas Interests include those listed on <u>Schedule 4</u>.

165. 161. "<u>Other Priority Claim</u>" means any Claim against the Debtors that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

166. 162. "<u>Other Secured Claim</u>" means any Secured Claim against the Debtors other than any 2010 Credit Facility Claim, 2019 RCF Claim, 2010 Bond Claim, or 2012 Bond Claim.

167. 163. "<u>Pension Plan</u>" means the Boy Scouts of America Retirement Plan for Employees, a single-employer, qualified, defined benefit pension plan that is subject to the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code, of which BSA is the sponsor.

168. 164. "<u>Perpetrator</u>" means any individual who personally committed or is alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim. The term "Perpetrator" does not include any individual who did not personally commit or is not alleged to have personally committed an act of Abuse that forms the basis for an Abuse Claim, against whom an Abuse Claim is nevertheless asserted, or may be asserted, by virtue of such individual's position or service as an employee or volunteer of the Debtors or as a Scout participant, or, if the Plan is Confirmed as a Global Resolution Plan, by virtue of such individual's position or service as an employee or volunteer of a Local Council or a Chartered Organization or as a Scout participant.

169. 165. "<u>Perpetrator Indemnification Claim</u>" means a Claim against a Perpetrator for indemnification or contribution arising from or relating to an Abuse Claim.

170. 166. "<u>Person</u>" has the meaning set forth in section 101(41) of the Bankruptcy Code."

171. 167. "<u>Petition Date</u>" means February 18, 2020.

172. 168. "<u>Philmont Assignment</u>" means that certain Assignment of Agreements, Licenses, Permits and Contracts, dated as of March 21, 2019, by and from the BSA, as assignor, and JPM, as assignee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

173. 169. "<u>Philmont Mortgage</u>" means that certain Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of March 21, 2019, by and from the BSA, as mortgagor, and JPM, as mortgagee, which secures the BSA's obligations under the 2010 Credit Agreement, the 2010 Bond Agreement, the 2012 Bond Agreement, and the 2019 RCF Agreement.

174. ~~170.~~ "Plan" means this ~~Second~~*Third Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* filed by the Debtors, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code.

175. ~~171.~~ "Plan Documents" means, collectively, the Plan, the Disclosure Statement, the Disclosure Statement Order, each of the documents comprising the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing (including the Settlement Trust Documents~~, the Cooperation Agreement,~~ and, if the Plan is Confirmed as a Global Resolution Plan, the Hartford Insurance Settlement Agreement). The Plan Documents shall be in form and substance reasonably acceptable to JPM and the Creditors' Committee.

176. ~~172.~~ "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, which the Debtors shall file no later than fourteen (14) days before the Voting Deadline, unless otherwise ordered by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments, modifications or supplements to the Plan Supplement. The Plan Supplement will include the following: (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the form of the BSA Global Resolution Note; (d) the ~~Cooperation~~Document Agreement (Global Resolution Plan); (e) the Document Agreement (BSA Toggle Plan); (d~~f~~) the name of the Creditor Representative; (e~~g~~) changes, if any, to Reorganized BSA's directors and officers; (f~~h~~) the form of the Foundation Loan Agreement; (g~~i~~) the form of agreement reflecting the terms of the Leaseback Requirement; (h~~j~~) the Rejected Contracts and Unexpired Leases Schedule; (i~~k~~) the forms of the Restated 2010 Bond Documents; (j~~l~~) the forms of the Restated 2012 Bond Documents; (k~~m~~) the forms of the Restated Credit Facility Documents; (l~~n~~) the form of the Restated Security Agreement; (m~~o~~) the names of the initial members of the Settlement Trust Advisory Committee; and (n~~p~~) the name of the initial Settlement Trustee; provided that the Plan Documents listed in clauses (b) and (h~~j~~) of the foregoing sentence will be revised, in the Debtors' discretion, subject to Article VI, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel to the Debtors. Once the Plan Supplement is filed, a copy will also be available for review on the Notice and Claims Agent's website free of charge at https://omniagentsolutions.com/BSA. The Plan Supplement shall be in form and substance reasonably acceptable to JPM and the Creditors' Committee.

177. ~~173.~~ "Prepetition Debt and Security Documents" means, collectively, the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, the 2012 Bond Documents, the Prepetition Security Documents (2019), and the Prepetition Security Agreement (2020).

178. ~~174.~~ "Prepetition Security Agreement (2019)" means that certain Third Amended and Restated Security Agreement, dated as of March 21, 2019, by and among the BSA and Arrow, as debtors, JPM, in its capacity as collateral agent, JPM, in its

capacity as the lender under each of the 2010 Credit Agreement and the 2019 RCF Agreement, and as holder under each of the 2010 Bond Agreement and the 2012 Bond Agreement.

179. ~~175.~~ "Prepetition Security Agreement (2020)" means that certain Consent and Security Agreement dated as of February 3, 2020, by and among Delaware BSA, the BSA, JPM, as collateral agent, and JPM, in its capacity as the lender under the 2010 Credit Agreement and the 2019 RCF Agreement, and as holder under the 2010 Bond Agreement and the 2012 Bond Agreement.

180. ~~176.~~ "Prepetition Security Documents (2019)" means, collectively, the Prepetition Security Agreement (2019), the Florida Sea Base Mortgage, the Florida Sea Base Assignment, the Headquarters Deed of Trust, the Headquarters Assignment, the Northern Tier Mortgage, the Northern Tier Assignment, the Philmont Mortgage, the Philmont Assignment, and the Arrow Collateral Assignment.

181. ~~177.~~ "Priority Tax Claim" means any Claim of a Governmental Unit against the Debtors that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

182. ~~178.~~ "Privileged Information" means any privileged information that relates, in whole or in part, to any Abuse Claim, including: (a) the Debtors' books and records transferred to the Settlement Trust in accordance with the ~~Cooperation~~Document Agreement; (b) any privileged information containing a factual or legal analysis or review of any Abuse Claim; (c) any privileged information evaluating the reasonableness, effectiveness, or Confirmability of the Plan or any other chapter 11 plan filed or that could be filed in the Chapter 11 Cases; (d) any privileged information exchanged by the Debtors or their professionals, on the one hand, and any of the Related Non-Debtor Entities, Local Councils, the Ad Hoc Committee, either Official Committee, the Future Claimants' Representative, or their respective Representatives, on the other hand, related to the Plan, the Plan Documents, or the Abuse Claims; and (e) information shared pursuant to that certain Joint Defense, Common Interest, and Confidentiality Agreement among the BSA, the Ad Hoc Committee, and each Local Council that executed a joinder to said agreement that was acknowledged in writing by the BSA and the Ad Hoc Committee; and (f) any privileged information containing a factual or legal analysis of the Debtors' potential exposure in connection with any Abuse Claim or any litigation related thereto. For the avoidance of doubt, Privileged Information shall not include any Common-Interest Communications with Insurers.

183. ~~179.~~ "Pro Rata" means, at any time, with respect to any Claim, the proportion that the amount of such Claim in a particular Class or group of Classes bears to the aggregate amount of all Claims (including Disputed Claims) in such Class or group of Classes, unless in each case the Plan provides otherwise.

184. ~~180.~~ "Pro Rata Share" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

185. 181. "Professional" means any Person retained by the Debtors, the Tort Claimants' Committee, the Creditors' Committee, or the Future Claimants' Representative pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

186. 182. "Professional Fee Claim" means any Claim of a Professional or other Person for Allowance by the Bankruptcy Court and payment by the Debtors of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Cases for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

187. 183. "Professional Fee Reserve" means a segregated account funded from Unrestricted Cash and Investments on hand of the Debtors as of the Effective Date in an amount equal to the Professional Fee Reserve Amount as of such date, solely for the purpose of paying all Allowed Professional Fee Claims.

188. 184. "Professional Fee Reserve Amount" means the aggregate Accrued Professional Fees as of the Effective Date, as estimated by the Professionals in accordance with Article II.A.2.

189. 185. "Proof of Claim" means any proof of claim filed with the Bankruptcy Court or the Notice and Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against either of the Debtors.

190. 186. "Protected Parties" means:

a. if the Plan is Confirmed as a Global Resolution Plan, the following Persons: (i) the Debtors; (ii) Reorganized BSA; (iii) the Related Non-Debtor Entities; (iv) the Local Councils; (v) the Contributing Chartered Organizations; (vi) the Settling Insurance Companies, including Hartford; and (vii) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, if the Plan is Confirmed as a Global Resolution Plan, a Contributing Chartered Organization shall be a Protected Party only with respect to any Abuse ClaimsClaim that aroseis attributable to, arises from, is based upon, relates to, or results from Abuse that occurred prior to the Petition Date: (a) in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units; or (b) that has been asserted in a proof of claim filed in the Chapter 11 Cases asserting a Direct Abuse Claim.

b. if the Plan is Confirmed as a BSA Toggle Plan, the following Persons: (i) the Debtors; (ii) Reorganized BSA; (iii) the Related Non-Debtor Entities; and (iv) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.

191. 187. "Quarterly Fees" means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

192. ~~188.~~ "Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim (other than the Debtors or an "insider" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder thereof. "Reinstated" has a correlative meaning.

193. ~~189.~~ "Rejected Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be rejected by the BSA under the Plan, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

194. ~~190.~~ "Rejection Damages Bar Date" has the meaning ascribed to such term in Article VI.B.

195. ~~191.~~ "Rejection Damages Claim" means a Claim for damages alleged to arise from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 or 1123 of the Bankruptcy Code.

196. ~~192.~~ "Related Non-Debtor Entities" means the Entities listed on Exhibit H, including non-debtor Affiliates of the Debtors that are directly or indirectly wholly owned by, or subject to the control of, the BSA. For the avoidance of doubt, Related Non-Debtor Entities do not include Local Councils or Chartered Organizations.

197. ~~193.~~ "Release Injunctions" means the injunctions described in Article X.L.

198. ~~194.~~ "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) JPM; (g) if the Plan is Confirmed as a Global Resolution Plan, the Settling Insurance Companies, including Hartford; (h) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (i) the Ad Hoc Committee; (j) the members of the Ad Hoc Committee in their capacities as such; (k) the Creditor Representative; (l) the Mediators; and (m) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J.

199. ~~195.~~ "Releases" means the releases set forth in Article X.J.

200. ~~196.~~ "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases ~~provided for in the Plan, (d) all holders of Claims entitled to vote on the Plan and who do not vote for or against the Plan or who abstain from voting on the Plan but, in either case, do not opt out of the releases~~ set forth in Article X.J.4, ~~except for those holders of Claims whose solicitation packages were returned to the Debtors or their agent(s) as undeliverable and those holders of Claims that were not sent a solicitation package because a prior mailing sent to them in the Chapter 11 Cases was returned as undeliverable, in each case, unless such holders otherwise have received notice of the Chapter 11 Cases~~; and (~~e~~d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

201. ~~197.~~ "Reorganized BSA" means the BSA, as reorganized pursuant to and under the Plan on or after the Effective Date.

202. ~~198.~~ "Representatives" means, with respect to any Person, such Person's (a) predecessors, successors, assigns, subsidiaries, and Affiliates, (b) current and former officers, directors, principals, equity holders, trustees, members, partners, managers, officials, board members, advisory board members, employees, agents, volunteers, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals, and (c) respective heirs, executors, estates, and nominees, in each case solely in its capacity as such.

203. ~~199.~~ "Restated 2010 Bond Documents" means those certain restated bond documents, including a restated revenue bond, bond purchase agreement, promissory note, security agreement, and all documentation executed and delivered in connection therewith, in each case containing substantially the same terms as the 2010 Bond Documents except that: (a) the amortization schedule attached to the 2010 Bond shall be amended and restated such that (i) interest is payable in monthly installments (at the same rates in the 2010 Bond Documents) beginning on the date that is one month after the Effective Date (as to be specified in the Restated 2010 Bond Documents) and ending on the Restated Maturity Date, and (ii) principal is payable in monthly installments (in the same monthly amounts as the periodic amortization amounts in the 2010 Bond Documents) beginning on the date that is two years after the Effective Date (as to be specified in the Restated 2010 Bond Documents) and ending on the Restated Maturity Date; and (b) the Restated 2010 Bond Documents shall be guaranteed by Arrow. The covenants in the Restated 2010 Bond Documents shall be in form and substance acceptable to JPM and the BSA. The obligations under the Restated 2010 Bond

Documents shall be secured by the Restated Security Agreement. The then-current forms of the Restated 2010 Bond Documents shall be filed with the Plan Supplement.

204. 200. "Restated 2012 Bond Documents" means those certain restated bond documents, including a restated revenue bond, bond purchase agreement, promissory note, security agreement, and all documentation executed and delivered in connection therewith, in each case containing substantially the same terms as the 2012 Bond Documents except that: (a) the amortization schedule attached to the 2012 Bond shall be amended and restated such that (i) interest is payable in monthly installments (at the same rates in the 2012 Bond Documents) beginning on the date that is one month after the Effective Date (as to be specified in the Restated 2012 Bond Documents) and ending on the Restated Maturity Date, and (ii) principal is payable in monthly installments (in the same monthly amounts as the periodic amortization amounts in the 2012 Bond Documents) beginning on the date that is two years after the Effective Date (as to be specified in the Restated 2012 Bond Documents) and ending on the Restated Maturity Date; and (b) the Restated 2012 Bond Documents shall be guaranteed by Arrow. The covenants in the Restated 2012 Bond Documents shall be in form and substance acceptable to JPM and the BSA. The obligations under the Restated 2012 Bond Documents shall be secured by the Restated Security Agreement. The then-current forms of the Restated 2012 Bond Documents shall be filed with the Plan Supplement.

205. 201. "Restated Credit Facility Documents" means those certain restated revolving credit facility documents, which shall contain substantially the same terms as the 2010 Credit Facility Documents and the 2019 RCF Documents, as applicable to the 2010 Credit Facility Claims and the 2019 RCF Claims, except that: (a) the revolving credit facility provided under the 2019 RCF Documents shall be frozen and converted to a term loan; (b) the Revolving Maturity Date and the Term Loan Maturity Date (each as defined in the 2010 Credit Facility Documents) and the Maturity Date (as defined in the 2019 RCF Documents) shall be extended to the Restated Maturity Date; (c) interest is payable in quarterly installments (at the same rates in the Restated 2012 Bond Documents) beginning on the date that is three months after the Effective Date (as to be specified in the Restated 2012 Bond Documents) and ending on the Restated Maturity Date; (d) principal is payable in quarterly monthly installments (at 1/40th of the outstanding balance on the Effective Date) beginning on the date that is two years after the Effective Date (as to be specified in the Restated Credit Facility Documents) and ending on the Restated Maturity Date; and (e) the Restated Credit Facility Documents shall be guaranteed by Arrow. The covenants in the Restated Credit Facility Documents shall be in form and substance acceptable to JPM and the BSA. The obligations under the Restated Credit Facility Documents shall be secured by the Restated Security Agreement. The then-current forms of the Restated Credit Facility Documents shall be filed with the Plan Supplement.

206. 202. "Restated Debt and Security Documents" means, collectively, the Restated 2010 Bond Documents, the Restated 2012 Bond Documents, the Restated Credit Facility Documents, and the Restated Security Agreement. The Restated Debt and Security Documents shall be on terms acceptable to JPM and the BSA, and reasonably acceptable to the Creditors' Committee.

207. 203. "Restated Maturity Date" means the maturity date applicable to each of the Restated Debt and Security Documents in accordance with the terms thereof, which shall in each case be the date that is ten (10) years after the Effective Date.

208. 204. "Restated Security Agreement" means that certain restated security agreement, pursuant to which Reorganized BSA shall grant blanket first-priority liens on and security interests in all of Reorganized BSA's assets, including but not limited to all collateral secured by the Prepetition Security Documents (2019), to JPM to secure Reorganized BSA's and Arrow's obligations under the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents. The then-current form of the Restated Security Agreement shall be filed with the Plan Supplement.

209. 205. "Restoration Plan" means the Boy Scouts of America Retirement Benefit Restoration Plan, a non-qualified defined benefit retirement plan under section 457(f) of the Internal Revenue Code, which provides supplemental retirement benefits to certain current and former employees of the Debtors or Local Councils.

210. 206. "Schedules" means, with respect to each Debtor, the schedules of assets and liabilities and the statement of financial affairs filed by such Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date.

211. 207. "Scouting Released Claims" has the meaning ascribed to such term in Article X.J.

212. 208. "Scouting University" means that certain parcel of real property owned by the BSA located at 1301 Solana Boulevard, Westlake, Texas 76262, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon, the sale of which was approved pursuant to the *Order, Pursuant to Section 363 of the Bankruptcy Code, Authorizing the Sale of Certain Real Property Located in Westlake Texas*, entered by the Bankruptcy Court on June 14, 2021 at Docket No. 5326..

213. 209. "Secured" means, with respect to any Claim, the extent to which the Claim is: (a) secured by a Lien on property of a Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

214. 210. "Settlement of Restricted and Core Asset Disputes" has the meaning ascribed to such term in Article V.R.S.3.

215. 211. "Settlement Trust" means the trust organized under the laws of the state of Delaware and established under Article IV and the Settlement Trust Agreement for the purposes set forth therein, including assuming liability for all Abuse Claims, holding, preserving, maximizing, and administering the Settlement Trust Assets, and directing the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Settlement Trust Documents.

216. 212. "Settlement Trust Advisory Committee" means the committee appointed and serving in accordance with Article IV and the Settlement Trust Agreement, which shall have the powers, duties and obligations set forth in the applicable Settlement Trust Agreement. The initial members of the Settlement Trust Advisory Committee shall be identified in the Plan Supplement.

217. 213. "Settlement Trust Agreement" means the agreement between the Debtors and the Settlement Trustee governing the Settlement Trust Agreement (Global Resolution Plan) or the Settlement Trust Agreement (BSA Toggle Plan), as applicable, dated as of the Effective Date, substantially in the form attached hereto as Exhibit B-1 and Exhibit B-2, respectively, as the same may be amended or modified from time to time.

218. 214. "Settlement Trust Assets" means the following assets and any income, profits and proceeds realized, received or derived from such assets subsequent to the transfer of such assets to the Settlement Trust:

     a.    if the Plan is Confirmed as a Global Resolution Plan: (i) the BSA Settlement Trust Contribution; (ii) the Local Council Settlement Contribution; (iii) the Chartered Organization Settlement Contribution; and (iv) any and all other funds, proceeds or other consideration otherwise contributed to the Settlement Trust pursuant to the Plan or the Confirmation Order or other Final Order of the Bankruptcy Court.

     b.    If the Plan is Confirmed as a BSA Toggle Plan: (i) the BSA Settlement Trust Contribution; and (ii) any and all other funds, proceeds or other consideration otherwise contributed to the Settlement Trust pursuant to the Plan or the Confirmation Order or other Final Order of the Bankruptcy Court. For the avoidance of doubt, except as may be provided in any Insurance Settlement Agreement, if the Plan is Confirmed as a BSA Toggle Plan, the insurance rights of any Person that is not a Protected Party are expressly reserved for such Person, and the Plan Documents shall not, and shall not be deemed to, transfer, grant, or assign such rights to the Settlement Trust.

219. 215. "Settlement Trust Causes of Action" means any Estate Cause of Action and, if the Plan is Confirmed as a Global Resolution Plan, any claim held by any Local Council or other Person that is or becomes a Protected Party, which Estate Cause of Action or claim, as applicable, is not otherwise expressly released under the Plan or the Plan Documents, in each case attributable to: (a) all defenses to any Abuse Claim, including all defenses under section 502 of the Bankruptcy Code; (b) with respect to

Abuse Claims, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; (c) any other claims or rights with respect to Abuse Claims that the Debtors and, if the Plan is Confirmed as a Global Resolution Plan, the Local Councils or other Protected Parties, would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Abuse Claim had asserted such claim by initiating civil litigation against the Debtors, the Local Councils or the Protected Parties (including any claims and defenses against co-defendants); and (d) any claim, cause of action, or right of the Debtors or either of themDebtor or, if the Plan is Confirmed as a Global Resolution Plan, any Local Council or any other Protected Party, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract, or otherwise arising from or relating to any payments made by the Debtorseither Debtor, any Local Council or any other Protected Party on account of Abuse Claims prior to the Petition Date.

220. 216. "Settlement Trust Documents" means, collectively, (a) the applicable Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the CooperationDocument Agreement, and (d) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits hereto or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

221. 217. "Settlement Trust Expenses" means any liabilities, costs, or expenses of, or imposed upon, or in respect of, the Settlement Trust once established (except for payments to holders of Abuse Claims on account of such Claims). Settlement Trust Expenses shall also expressly include (a) any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Settlement Trust Assets (including, without limitation, the prosecution of any Settlement Trust Causes of Action and Insurance Actions), in each case whether or not any such action results in a recovery for the Settlement Trust and (b) the reasonable documented costs and expenses incurred by Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the Ad Hoc Committee, or the Contributing Chartered Organizations in taking any action on behalf of or at the direction of the Settlement Trust, if any, including, without limitation, any costs and expenses incurred by Reorganized BSA, the Related Non-Debtor Entities, the Local Councils or the Contributing Chartered Organizations in being named as a defendant in any Insurance Action.

222. 218. "Settlement Trustee" means the individual acceptable to the Debtors who is appointed by the Bankruptcy Court to serve as trustee of the Settlement Trust pursuant to the terms of the Plan and the Settlement Trust Agreement or who may subsequently be appointed pursuant to the terms of the Settlement Trust Agreement. The initial Settlement Trustee shall be identified in the Plan Supplement.

223. 219. "Settling Insurance Company" means, solely with respect to Insurance Policies that are the subject of an Insurance Settlement Agreement, and only if

the Plan is Confirmed as a Global Resolution Plan, any Insurance Company that contributes funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement that is approved by an order of the Bankruptcy Court (including the Confirmation Order) and is designated as a Settling Insurance Company in the Confirmation Order or the Affirmation Order. Without limiting the foregoing, subject to Confirmation of the Plan as a Global Resolution Plan and approval of the Hartford Insurance Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), Hartford is a Settling Insurance Company and shall be designated as such in the Confirmation Order and the Affirmation Order.

224. 220. "Specified Insurance Policy" means any Insurance Policy with an inception date of January 1, 2013 to the present.

225. 221. "Summit Bechtel Reserve" means the parcels of real property that comprise the Summit Bechtel Family National Scout Reserve, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon.

226. 222. "Tort Claimants' Committee" means the official committee of tort claimants, consisting of survivors of childhood sexual abuse, appointed by the United States Trustee in the Chapter 11 Cases under section 1102(a) of the Bankruptcy Code.

227. 223. "Trust Distribution Procedures" means the Global Resolution Plan TDP or the BSA Toggle Plan TDP, as applicable, substantially in the form attached hereto as Exhibit A-1 and Exhibit A-2, respectively, as the same may be amended or modified from time to time.

228. 224. "Unexpired Lease" means a lease to which BSA is a party, including any and all pre- and post-petition amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

229. 225. "Unimpaired" means any Claim that is not Impaired, including any Claim that is Reinstated.

230. 226. "United States Trustee" means the Office of the United States Trustee for the District of Delaware.

231. 227. "Unrestricted Cash and Investments" means all Cash and balance sheet investments owned by the Debtors as of the date that is immediately prior to the Effective Date that are not subject to legally enforceable restrictions requiring the use or disposition of such assets for a particular purpose.

232. 228. "Volunteer Screening Database" is the database established and maintained by the BSA to, among other things, track and remove from Scouting volunteer leaders suspected of having acted in an inappropriate sexual manner with youth participants in Scouting.

233. 229. "Voting Deadline" means the date by which all Persons entitled to vote on the Plan must vote to accept or reject the Plan.

234. 230. "Voting Procedures" means those certain procedures and supplemental procedures approved by the Bankruptcy Court for soliciting and tabulating the votes to accept or reject the Plan cast by holders of Claims against the Debtors entitled to vote on the Plan. The Voting Procedures shall be in form and substance reasonably acceptable to the Creditors' Committee as they pertain to Convenience Claims, General Unsecured Claims and Non-Abuse Litigation Claims.

235. 231. "Warehouse and Distribution Center" means that certain parcel of real property owned by the BSA located at 2109 Westinghouse Boulevard, Charlotte, North Carolina 28269, together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and other improvements now or hereafter located thereon.

236. 232. "Workers' Compensation Program" means the Debtors' (a) written contracts, agreements, agreements of indemnity, in each case relating to workers' compensation, (b) self-insured workers' compensation bonds, policies, programs, and plans for workers' compensation and (c) workers' compensation insurance issued to or entered into at any time by any of the Debtors.

237. "Youth Member" means a youth member of the BSA registered as of December 31 of any applicable year in a core program (Cub Scouts, Scouts BSA (in each case under age 18), Sea Scouts, Venturing, or Exploring (in each case under age 21)), whose registration is current as of such date and who has paid the individual annual registration fee (which fee has not been refunded in whole or in part).

B.    **Interpretation; Application of Definitions and Rules of Construction.**    For purposes of the Plan, unless otherwise provided herein:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; provided, however, that the rule of interpretation set forth in clause (2) shall not be imputed to any contract, lease, instrument, release, or other agreement as to which JPM or the Creditors' Committee have consent rights pursuant to the JPM / Creditors' Committee Term Sheet, and such consent rights shall be as set forth in the JPM / Creditors' Committee Term Sheet and incorporated herein pursuant to Article I.D; (3) any reference in the Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise stated, all references in the Plan to Articles are references to Articles of the Plan, as the same may be amended or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a

whole and not to any particular Article or clause contained in the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by Reorganized BSA in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Person; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any reference to a Person's "subsidiaries" means its direct and indirect subsidiaries; and (13) in computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

C.      <u>Reference to Monetary Figures</u>.  All references in the Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

D.      <u>Consent Rights</u>.  Notwithstanding anything herein to the contrary, the consent rights of JPM and the Creditors' Committee, respectively, as set forth in the JPM / Creditors' Committee Term Sheet, with respect to the form and substance of the Plan, all exhibits and schedules to the Plan, the Plan Supplement, and the other Plan Documents, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, to the extent they pertain to the treatment of the 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims, or the 2012 Bond Claims (in the case of JPM) or Convenience Claims, General Unsecured Claims, or Non-Abuse Litigation Claims (in the case of the Creditors' Committee), shall be incorporated herein by this reference (including to the applicable definitions in <u>Article I.A</u>) and fully enforceable as if stated in full herein.

E.      <u>Controlling Document</u>.  In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that in the event of a conflict between Confirmation Order, on the one hand, and any of the other Plan Documents, on the other hand, the Confirmation Order shall govern and control in all respects.

# ARTICLE II.

## ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

A.      Administrative Expense Claims.

      1.      Administrative Expense Claims Generally.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims, which are governed by Article II.A.2) shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim, or such amounts and on other such terms as may be agreed to by the holders of such Claims, on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtors or Reorganized BSA shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' non-profit operations during the Chapter 11 Cases may be paid by the Debtors or Reorganized BSA in the ordinary course of operations and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.  Notwithstanding anything to the contrary herein or in the Cash Collateral Order, no Claim on account of any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) (as each such capitalized term is defined in the Cash Collateral Order) from and after the Petition Date shall be Allowed unless such Claim is Allowed by a Final Order of the Bankruptcy Court.

      2.      Professional Fee Claims.

         a.      Final Fee Applications.  All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the Debtors and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date.  Objections to any Professional Fee Claim must be filed and served on Reorganized BSA and the applicable Professional within twenty-one (21) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or Reorganized BSA, as applicable, and the Professional requesting Allowance and payment of a Professional Fee Claim).  The Fee Examiner shall continue to act in its appointed capacity unless and until all Professional Fee Claims have been approved by order of the Bankruptcy Court, and Reorganized BSA shall be responsible to pay the

fees and expenses incurred by the Fee Examiner in rendering services after the Effective Date.

      b.      <u>Professional Fee Reserve</u>.  On the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve with Cash in an amount equal to the Professional Fee Reserve Amount.  Funds held in the Professional Fee Reserve shall not be considered property of the Debtors' Estates, Reorganized BSA, the Settlement Trust, or the Core Value Cash Pool.  Professional Fees owing on account of Allowed Professional Fee Claims shall be paid in Cash from funds held in the Professional Fee Reserve as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order of the Bankruptcy Court or authorized to be paid under the Compensation Procedures Order; provided, however, that Reorganized BSA's obligations with respect to Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Reserve.  To the extent the funds held in the Professional Fee Reserve are insufficient to satisfy the Allowed Professional Fee Claims in full, each holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any deficiency, which shall be satisfied in accordance with <u>Article II.A.1</u>.  No Liens, Claims, interests, charges, or other Encumbrances or liabilities of any kind shall encumber the Professional Fee Reserve in any way.  When all Allowed Professional Fee Claims have been paid in full, amounts remaining in the Professional Fee Reserve, if any, shall revert to Reorganized BSA.

      c.      <u>Professional Fee Reserve Amount</u>.  To receive payment for Accrued Professional Fees incurred up to and including the Effective Date, Professionals shall estimate their Accrued Professional Fees as of the Effective Date and deliver such estimate to the Debtors at least five (5) Business Days prior to the anticipated Effective Date.  If a Professional does not provide such estimate, the Debtors may estimate the unbilled fees and expenses of such Professional.  The total amount so estimated will constitute the Professional Fee Reserve Amount, provided that such estimate will not be considered an admission or limitation with respect to the fees and expenses of such Professional.

      d.      <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 or 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of operations without any further notice to or action, order, or approval of the Bankruptcy Court.  The reasonable and documented fees and expenses incurred by the Professionals to the Creditors' Committee after the Effective Date until the complete dissolution of the Creditors' Committee for all purposes in accordance with <u>Article X.R</u> will be paid by Reorganized BSA in the ordinary course of business (and not later than thirty (30) days after submission of invoices).

e.     Coalition Restructuring Expenses.  For the avoidance of doubt, if the Plan is Confirmed as a Global Resolution Plan, the Coalition Restructuring Expenses shall be paid in accordance with Article V.T, and the terms of this Article II.A.2 shall not apply to the Coalition Restructuring Expenses.

B.     Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtors or Reorganized BSA, as applicable: (1) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (2) regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     Classification of Claims and Interests.

1.     Grouping of Debtors for Convenience.  The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor.  The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

2.     Classification in General.  For purposes of organization, voting, and all matters related to Confirmation, and except as otherwise provided herein, all Claims (other than Administrative Expense Claims and Priority Tax Claims) against and Interests in the Debtors are classified as set forth in this Article III.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims described in Article II have not been classified and are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of such Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest falls within the description of such other Class or Classes. Notwithstanding anything to the contrary contained in the Plan, no distribution shall be made on account of any Claim that is not Allowed for distribution purposes (if applicable) or any Claim that has been satisfied, released, or otherwise settled prior to the Effective Date.

3.     Summary of Classification.  The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3A | 2010 Credit Facility Claims | Impaired | Entitled to Vote |
| 3B | 2019 RCF Claims | Impaired | Entitled to Vote |
| 4A | 2010 Bond Claims | Impaired | Entitled to Vote |
| 4B | 2012 Bond Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Non-Abuse Litigation Claims | Impaired | Entitled to Vote |
| 8 | Direct Abuse Claims | Impaired | Entitled to Vote |
| 9 | Indirect Abuse Claims | Impaired | Entitled to Vote |
| 10 | Interests in Delaware BSA | Impaired | Deemed to Reject; Not Entitled to Vote |

B.     Treatment of Claims and Interests.

1.     Class 1 – Other Priority Claims.

a.     Classification:  Class 1 consists of all Other Priority Claims.

b.     Treatment:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Priority Claim, at the sole option of Reorganized BSA: (i) each such holder shall receive payment in Cash in an amount equal to such Allowed Other Priority Claim, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, and (z) the date on which the holder of such Allowed Other Priority Claim and the Debtors or Reorganized BSA, as applicable, shall otherwise agree in writing; or (ii) satisfaction of such Allowed Other Priority Claim in any other manner that renders the Allowed Other Priority Claim Unimpaired, including Reinstatement.

c.     Voting:  Class 1 is Unimpaired, and each holder of an Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

2.     Class 2 – Other Secured Claims.

a.     Classification:  Class 2 consists of all Other Secured Claims.  To the extent that Other Secured Claims are Secured by different collateral or

different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2 for purposes of voting to accept or reject the Plan and receiving Distributions under the Plan.

b. <u>Treatment</u>: Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment of such Claim, in full and final satisfaction of such Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim will receive, at the sole option of Reorganized BSA: (i) Cash in an amount equal to the Allowed amount of such Claim, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, payable on or as soon as reasonably practicable after the last to occur of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, and (z) the date on which the holder of such Allowed Other Secured Claim and the Debtors or Reorganized BSA, as applicable, shall otherwise agree in writing; (ii) satisfaction of such Other Secured Claim in any other manner that renders the Allowed Other Secured Claim Unimpaired, including Reinstatement; or (iii) return of the applicable collateral on the Effective Date or as soon as reasonably practicable thereafter in satisfaction of the Allowed amount of such Other Secured Claim.

c. <u>Voting</u>: Class 2 is Unimpaired, and each holder of an Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Secured Claims.

3. <u>Class 3A – 2010 Credit Facility Claims</u>.

a. <u>Classification</u>: Class 3A consists of all 2010 Credit Facility Claims.

b. <u>Allowance</u>: On the Effective Date, all 2010 Credit Facility Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount not less than $80,762,060 (including $44,299,743 of undrawn amounts under letters of credit issued under the 2010 Credit Facility Documents, provided such letters of credit are drawn on or before the Effective Date), plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order. Because all 2010 Credit Facility Claims are deemed fully Secured, there are no unsecured 2010 Credit Facility Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2010 Credit Facility Claims.

c. <u>Treatment</u>: Except to the extent that a holder of an Allowed 2010 Credit Facility Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an

Allowed 2010 Credit Facility Claim, each holder of an Allowed 2010 Credit Facility Claim shall receive a Claim under the Restated Credit Facility Documents in an amount equal to the amount of such holder's Allowed 2010 Credit Facility Claim.

d.     Voting:  Class 3A is Impaired, and each holder of a Allowed 2010 Credit Facility Claim is entitled to vote to accept or reject the Plan.

4.     Class 3B – 2019 RCF Claims.

a.     Classification:  Class 3B consists of all 2019 RCF Claims.

b.     Allowance:  On the Effective Date, all 2019 RCF Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount not less than $61,542,720 (including $51,542,720 of undrawn amounts under letters of credit issued under the 2019 RCF Documents, provided such letters of credit are drawn on or before the Effective Date), plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.  Because all 2019 RCF Claims are deemed fully Secured, there are no unsecured 2019 RCF Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2019 RCF Claims.

c.     Treatment:  Except to the extent that a holder of an Allowed 2019 RCF Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2019 RCF Claim, each holder of an Allowed 2019 RCF Claim shall receive a Claim under the Restated Credit Facility Documents in an amount equal to the amount of such holder's Allowed 2019 RCF Claim.

d.     Voting:  Class 3B is Impaired, and each holder of a 2019 RCF Claim is entitled to vote to accept or reject the Plan.

5.     Class 4A – 2010 Bond Claims.

a.     Classification:  Class 4A consists of all 2010 Bond Claims.

b.     Allowance:  On the Effective Date, all 2010 Bond Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount of not less than $40,137,274, plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.  Because all 2010 Bond Claims are deemed fully Secured, there are no unsecured 2010 Bond Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2010 Bond Claims.

c.     Treatment:  Except to the extent that a holder of an Allowed 2010 Bond Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2010 Bond Claim, each holder of an Allowed 2010 Bond Claim shall receive a Claim under the Restated 2010 Bond Documents in an amount equal to the amount of such holder's Allowed 2010 Bond Claim.

d.     Voting:  Class 4A is Impaired, and each holder of a 2010 Bond Claim is entitled to vote to accept or reject the Plan.

6.     Class 4B – 2012 Bond Claims.

a.     Classification:  Class 4B consists of all 2012 Bond Claims.

b.     Allowance:  On the Effective Date, all 2012 Bond Claims shall be deemed fully Secured and Allowed pursuant to section 506(a) of the Bankruptcy Code, and not subject to any counterclaim, defense, offset, or reduction of any kind, in an aggregate amount of not less than $145,662,101, plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date to the extent not paid pursuant to the Cash Collateral Order.  Because all 2012 Bond Claims are deemed fully Secured, there are no unsecured 2012 Bond Claims, and the holders of such Claims do not have or hold any Class 6 Claims against the Debtors on account of any 2012 Bond Claims.

c.     Treatment:  Except to the extent that a holder of an Allowed 2012 Bond Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for an Allowed 2012 Bond Claim, each holder of an Allowed 2012 Bond Claim shall receive a Claim under the Restated 2012 Bond Documents in an amount equal to the amount of such holder's Allowed 2012 Bond Claim.

d.     Voting:  Class 4B is Impaired, and each holder of a 2012 Bond Claim is entitled to vote to accept or reject the Plan.

7.     Class 5 – Convenience Claims.

a.     Classification:  Class 5 consists of all Convenience Claims.

b.     Treatment:  In full and final satisfaction, settlement, release, and discharge of, and in exchange for, an Allowed Convenience Claim, each holder of an Allowed Convenience Claim shall receive, on the Effective Date or within thirty (30) days following the date that such Convenience Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date), Cash in an amount equal to 100% of such holder's Allowed Convenience Class Claim.

c.     Voting:  Class 5 is Impaired, and each holder of a Convenience Claim is entitled to vote to accept or reject the Plan.

8.    Class 6 – General Unsecured Claims.

   a.    Classification:  Class 6 consists of all General Unsecured Claims.

   b.    Treatment:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim (to the extent such Claim is not an Insured Non-Abuse Claim), each holder of an Allowed General Unsecured Claim shall receive, subject to the holder's ability to elect Convenience Class treatment on account of the Allowed General Unsecured Claim, its Pro Rata Share of the Core Value Cash Pool up to the full amount of such Allowed General Unsecured Claim in the manner described in Article VII.

   c.    Voting:  Class 6 is Impaired, and each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

9.    Class 7 – Non-Abuse Litigation Claims.

   a.    Classification:  Class 7 consists of all Non-Abuse Litigation Claims.

   b.    Treatment:  Except to the extent that a holder of an Allowed Non-Abuse Litigation Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Non-Abuse Litigation Claim, each holder thereof shall, subject to the holder's ability to elect Convenience Class treatment as provided in the following sentence, retain the right to recover up to the amount of such holder's Allowed Non-Abuse Litigation Claim from (i) available Insurance Coverage or the proceeds of any insurance policy of the Debtors, including any Specified Insurance Policy or D&O Liability Insurance Policy, (ii) applicable proceeds of any Insurance Settlement Agreements, and (iii) co-liable non-debtors (if any) or their insurance coverage.  Solely to the extent that the holder of an Allowed Non-Abuse Litigation Claim fails to recover in full from the foregoing sources on account of such Allowed Claim after exhausting its remedies in respect thereof, such holder may elect to have the unsatisfied portion of its Allowed Claim treated as an Allowed Convenience Claim and receive cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of the Allowed Non-Abuse Litigation Claim and (b) $50,000.

   c.    Voting:  Class 7 is Impaired, and each holder of a Non-Abuse Litigation Claim is entitled to vote to accept or reject the Plan.

10.    Class 8 – Direct Abuse Claims.

   a.    Classification:  Class 8 consists of all Direct Abuse Claims.

   b.    Treatment:

(i)     <u>Global Resolution Plan</u>.  If Class 8 votes to accept the Plan, the Debtors shall request that the Plan be Confirmed as a Global Resolution Plan.  If the Plan is Confirmed as a Global Resolution Plan, the Settlement Trust shall receive, for the benefit of holders of Abuse Claims, the BSA Settlement Trust Contribution, the Local Council Settlement Contribution, the Contributing Chartered Organization Settlement Contribution, the Hartford Settlement Contribution (subject to the terms and conditions set forth in the Hartford Insurance Settlement Agreement), and the proceeds of any other applicable Insurance Settlement Agreements.  In addition, each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect on his or her Ballot to receive an Expedited Distribution, <u>subject to criteria set forth in the Global Resolution Plan TDP,</u> in exchange for <u>providing a</u> full and final release in favor of the ~~Debtors~~<u>Settlement Trust</u>, the ~~Related Non-Debtor Entities, the Local Councils, Contributing Chartered Organizations, and the Settling Insurance Companies, including Hartford~~<u>Protected Parties and the Chartered Organizations</u>; <u>provided</u>, <u>however</u>, that no Expedited Distribution will be payable to any holder of a Direct Abuse Claim unless the Plan is Confirmed as a Global Settlement Plan.  If and only if the Plan is Confirmed as a Global Resolution Plan, the Settlement Trust shall make the Expedited Distributions on <u>one or more dates occurring on</u> or as soon as reasonably practicable after the ~~later~~<u>latest</u> to occur of (a) the Effective Date ~~or,~~ (b<u>) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Global Resolution Plan TDP, and (c</u>) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.

(ii)     <u>BSA Toggle Plan</u>:  If Class 8 does not vote to accept the Plan or the Bankruptcy Court otherwise concludes that the Global Resolution Plan is not Confirmable, the Debtors shall request that the Plan be Confirmed as a BSA Toggle Plan.  If the Plan is Confirmed as a BSA Toggle Plan, the Settlement Trust shall only receive, for the benefit of the holders of Abuse Claims, the BSA Settlement Trust Contribution, and shall not receive the Local Council Settlement Contribution, or the Contributing Chartered Organization Settlement Contribution.  In addition, all elections to receive the Expedited Distribution shall be null and void.  For the avoidance of doubt, if the Plan is Confirmed as a BSA Toggle Plan, the Settlement Trust shall receive no part of the Hartford Settlement Contribution.

(iii)     As of the Effective Date, the Protected Parties' liability for all Direct Abuse Claims shall be assumed in full by the Settlement Trust

without further act, deed, or court order and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents. Pursuant to the Channeling Injunction set forth in <u>Article X.F</u>, each holder of a Direct Abuse Claim shall have such holder's Direct Abuse Claim against the Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Direct Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents. Holders of Direct Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Direct Abuse Claims against any of the Protected Parties and may not proceed in any manner against any the Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Direct Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(iv) For the avoidance of doubt, (a) if the Plan is Confirmed as a Global Resolution Plan, the Protected Parties shall include: (i) the Debtors; (ii) Reorganized BSA; (iii) the Related Non-Debtor Entities; (iv) the Local Councils; (v) the Contributing Chartered Organizations; (vi) the Settling Insurance Companies, including Hartford; and (vii) all of such Persons' Representatives; and (b) if the Plan is Confirmed as a BSA Toggle Plan, the Protected Parties shall include: (i) the Debtors; (ii) Reorganized BSA; (iii) the Related Non-Debtor Entities; and (iv) all of such Persons' Representatives.

c. <u>Voting</u>: Class 8 is Impaired, and each holder of a Direct Abuse Claim is entitled to vote to accept or reject the Plan.

11. <u>Class 9 – Indirect Abuse Claims</u>.

a. <u>Classification</u>: Class 9 consists of all Indirect Abuse Claims.

b. <u>Treatment</u>:

(i) As of the Effective Date, the Protected Parties' liability for all Indirect Abuse Claims shall be assumed in full by the Settlement Trust without further act, deed, or court order and shall be satisfied solely from the Settlement Trust as set forth in the Settlement Trust Documents solely to the extent that an Indirect Abuse Claim has not been deemed withdrawn with prejudice, irrevocably waived, released and expunged in connection with the Local Council Settlement Contribution, the Contributing Chartered Organization Trust Contribution, or the Hartford Insurance Settlement Agreement (if the Plan is Confirmed as a Global Resolution Plan). Pursuant to the Channeling Injunction set forth in <u>Article X.F</u>, each

holder of an Indirect Abuse Claim shall have such holder's Indirect Abuse Claim against the Protected Parties (and each of them) permanently channeled to the Settlement Trust, and such Indirect Abuse Claim shall thereafter be asserted exclusively against the Settlement Trust and processed, liquidated, and paid in accordance with the terms, provisions, and procedures of the Settlement Trust Documents. Holders of Indirect Abuse Claims shall be enjoined from prosecuting any outstanding, or filing any future, litigation, Claims, or Causes of Action arising out of or related to such Abuse Claims against any of the Protected Parties and may not proceed in any manner against any the Protected Parties in any forum whatsoever, including any state, federal, or non-U.S. court or any administrative or arbitral forum, and are required to pursue such Indirect Abuse Claims solely against the Settlement Trust as provided in the Settlement Trust Documents.

(ii) For the avoidance of doubt, (a) if the Plan is Confirmed as a Global Resolution Plan, the Protected Parties shall include: (i) the Debtors; (ii) Reorganized BSA; (iii) the Related Non-Debtor Entities; (iv) the Local Councils; (v) the Contributing Chartered Organizations; (vi) the Settling Insurance Companies, including Hartford; and (vii) all of such Persons' Representatives; and (b) if the Plan is Confirmed as a BSA Toggle Plan, the Protected Parties shall include: (i) the Debtors; (ii) Reorganized BSA; (iii) the Related Non-Debtor Entities; and (iv) all of such Persons' Representatives.

c. <u>Voting</u>: Class 9 is Impaired, and each holder of an Indirect Abuse Claim is entitled to vote to accept or reject the Plan.

12. <u>Class 10 – Interests in Delaware BSA</u>.

a. <u>Classification</u>: Class 10 consists of all Interests in Delaware BSA.

b. <u>Treatment</u>: On the Effective Date, Interests in Delaware BSA shall be deemed cancelled without further action by or order of the Bankruptcy Court and shall be of no further force or effect, whether surrendered for cancellation or otherwise.

c. <u>Voting</u>: Class 10 is Impaired, and each holder of an Interest in Delaware BSA shall be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Interests in Delaware BSA are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Interests in Delaware BSA.

C. <u>Elimination of Vacant Classes</u>. Any Class of Claims against or Interests in the Debtors that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or

reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

D.    Cramdown.  If any Class is deemed to reject the Plan or is entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (a) seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (b) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims are, or any class of Claims is, impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.

## SETTLEMENT TRUST

A.    Establishment of the Settlement Trust.  The Settlement Trust shall be established on the Effective Date in accordance with the Plan Documents irrespective of whether the Plan is Confirmed as a Global Resolution Plan or a BSA Toggle Plan.  The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code, with respect to which Reorganized BSA shall, if the Plan is Confirmed as a Global Resolution Plan, timely make an election to treat the Settlement Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

B.    Purposes of the Settlement Trust.

1.    The purposes of the Settlement Trust shall be to assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Settlement Trust Assets, and to direct the processing, liquidation and payment of all compensable Abuse Claims in accordance with the Settlement Trust Documents.  The Settlement Trust shall resolve Abuse Claims in accordance with the Settlement Trust Documents in such a way that the holders of Abuse Claims are treated equitably and reasonably in light of the finite assets available to satisfy such claims.

2.    In the event of a conflict between the terms or provisions of the Plan and the Settlement Trust Documents, the terms of the Plan shall control.

C.    Transfer of Claims to the Settlement Trust.

1.    On the Effective Date or as otherwise provided herein, and without further action of any Person, the Settlement Trust shall assume the liabilities, obligations, and responsibilities of the Protected Parties for all Abuse Claims, financial or otherwise. These assumptions by the Settlement Trust shall not affect (a) the application of the Discharge Injunction or the Channeling Injunction or (b) any Non-Settling Insurance Company's obligation under any Insurance Policy that is not the subject of an Insurance Settlement Agreement.

2.    Except as otherwise expressly provided in the Plan, the Settlement Trust Agreement, or the Trust Distribution Procedures, the Settlement Trust shall have control

over the Settlement Trust Causes of Action and the Insurance Actions, and the Settlement Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with the exclusive right (except as otherwise provided in Article IV.D.5) to enforce each of the Settlement Trust Causes of Action and the Insurance Actions, and the proceeds of the recoveries on any of the Settlement Trust Causes of Action or the Insurance Actions shall be deposited in and become the property of the Settlement Trust, and the Settlement Trust shall have the right to enforce the Plan and any of the other Plan Documents (including the ~~Cooperation~~Document Agreement) according to their respective terms, including the right to receive the Settlement Trust Assets as provided in the Plan; provided, however, that (a) the Settlement Trust shall have no other rights against the Protected Parties except to enforce the Plan and any of the other Plan Documents; (b) the Settlement Trust Causes of Action and the Insurance Actions shall not include any Claims or Interests fully and finally released, compromised, or settled pursuant to the Plan or any Plan Documents, including if the Plan is Confirmed as a Global Resolution Plan, any Claims against Hartford released, compromised and settled under the Hartford Insurance Settlement Agreement; and (c) for the avoidance of doubt, the Settlement Trust Causes of Action and the Insurance Actions do not include any rights of the Protected Parties arising under the Channeling Injunction or any of the Injunctions, Releases, or Discharges granted under the Plan and the Confirmation Order.

D.  Transfer of Settlement Trust Assets to the Settlement Trust.

1.  Transfers on the Effective Date.  On the Effective Date, subject to Article IV.D.2, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan.

2.  Transfers after the Effective Date.  To the extent any of the Settlement Trust Assets are not transferred to the Settlement Trust by operation of law on the Effective Date pursuant to the Plan, then when such assets accrue or become transferable subsequent to the Effective Date, they shall automatically and immediately transfer to the Settlement Trust free and clear of all Encumbrances and Claims or other interests of any Person, subject to the Channeling Injunction and other provisions of the Plan.  To the extent that any action of a Protected Party is required to effectuate such transfer, such Protected Party shall promptly transfer, assign, and contribute, such remaining Settlement Trust Assets to the Settlement Trust.  In the event a Protected Party breaches any obligation contained in this section, the Settlement Trust will have no adequate remedy at law and shall be entitled to preliminary and permanent declaratory and injunctive relief._ This Article IV.D.2 applies, without limitation, to (a) that portion of the Local Council Settlement Contribution required to be contributed to the Settlement Trust after the Effective Date, if the Plan is Confirmed as a Global Resolution Plan, and (b) the transfer to the Settlement Trust of the Warehouse and Distribution Center, subject to the Leaseback Requirement.

3.     Insured Non-Abuse Claims.  The Insurance Assignment shall not, and shall not be deemed to, transfer, grant, or assign to the Settlement Trust any insurance rights of any Person that pertain to any Insured Non-Abuse Claims.  The insurance rights of any Person that pertain to Insured Non-Abuse Claims are expressly reserved for the such Persons, and the Plan Documents shall not, and shall not be deemed to, transfer, grant, or assign such rights to the Settlement Trust.

4.     Specified Insurance Policies.  Notwithstanding the Insurance Assignment, with respect to any Specified Insurance Policy, and except as may otherwise be provided in an Insurance Settlement Agreement, the right of the Debtors and Reorganized BSA (and any other named or additional insureds under such Specified Insurance Policy) are expressly reserved to (a) tender any Insured Non-Abuse Claims to the Specified Insurance Policies and (b) access the limits of liability of the Specified Insurance Policies to settle or otherwise resolve Insured Non-Abuse Claims.  Further, the Settlement Trust cannot settle, compromise, or otherwise resolve any rights, duties, or obligations under the Specified Insurance Policies without the express written consent and approval of the Debtors or Reorganized BSA, as applicable, and the Creditors' Committee, prior to its dissolution.  Nonetheless, the Settlement Trust shall have the same rights, if any, as the Protected Parties with respect to any Specified Insurance Policy insofar as the Settlement Trust may (i) tender Abuse Claims to the Specified Insurance Policies and (ii) access the limits of liability of the Specified Insurance Policies to pay Abuse Claims pursuant to the Trust Distribution Procedures.

5.     Settlement Trust Causes of Action.  The transfer of the Settlement Trust Causes of Action to the Settlement Trust, insofar as they relate to the ability to defend against or reduce the amount of Abuse Claims, shall be considered the transfer of a non-exclusive right enabling the Settlement Trust to defend itself against asserted Abuse Claims, which transfer shall not impair, affect, alter, or modify the right of any Person, including the Protected Parties, an insurer or alleged insurer, or co-obligor or alleged co-obligor, sued on account of an Abuse Claim or on account of any asserted right relating to any BSA Insurance Policy or Local Council Insurance Policy alleged to provide insurance coverage for an Abuse Claim, to assert each and every defense or basis for claim reduction such Person could have asserted had the Settlement Trust Causes of Action not been assigned to the Settlement Trust (including any defense or basis for claim reduction that any Insurance Company or other insurer or alleged insurer could have asserted under section 502 of the Bankruptcy Code, applicable non-bankruptcy law, or any BSA Insurance Policy, Local Council Insurance Policy or other agreement with respect to (a) any alleged liability of BSA or any Local Council, Contributing Chartered Organization or any other insured Person for any Abuse Claim or (b) any alleged liability of any Insurance Company or other insurer or alleged insurer to provide indemnity or defense relating to any Abuse Claim or any alleged extracontractual liability of any Insurance Company or other insurer or alleged insurer relating to any Abuse Claim).

E.     Settlement Trustee.  There shall be one Settlement Trustee, who shall be appointed by the Bankruptcy Court in the Confirmation Order.  The initial Settlement Trustee shall be the Person identified in the Plan Supplement.  Any successor Settlement Trustee shall be appointed in accordance with the terms of the Settlement Trust Agreement.  For purposes

performing his or her duties and fulfilling his or her obligations under the Settlement Trust and the Plan, the Settlement Trustee shall be deemed to be, and the Confirmation Order shall provide that he or she is, a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code. The Settlement Trustee shall be the "administrator" of the Settlement Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

F.      Settlement Trust Advisory Committee.      The Settlement Trust Advisory Committee shall be established pursuant to the Settlement Trust Agreement. The If the Plan is Confirmed as a Global Resolution Plan, the initial Settlement Trust Advisory Committee shall have three seven (37) members, each of whom shall be reasonably acceptable to the Debtors, and shall have the functions, duties, and rights provided in the Settlement Trust Agreement (Global Resolution Plan). If the Plan is Confirmed as a BSA Toggle Plan, the initial Settlement Trust Advisory Committee shall have three (3) members, each of whom shall be reasonably acceptable to the Debtors, and shall have the functions, duties, and rights provided in the Settlement Trust Agreement (BSA Toggle Plan). Each member of the Settlement Trust Advisory Committee shall serve in accordance with the terms and conditions of the applicable Settlement Trust Agreement.

G.      Future Claimants' Representative. If the Plan is Confirmed as a Global Resolution Plan, the Settlement Trust Agreement shall provide for the continuation of the Future Claimants' Representative to represent the interests of holders of Future Abuse Claims. The initial Future Claimants' Representative shall be James L. Patton, Jr. so long as he is the Future Claimants' Representative in the Chapter 11 Cases as of the Effective Date.

H.      G.   Trust Distribution Procedures. On the Effective Date, the Settlement Trust shall implement the Trust Distribution Procedures in accordance with the terms of the Settlement Trust Agreement. From and after the Effective Date, the Settlement Trustee shall have the authority to administer, amend, supplement, or modify the Trust Distribution Procedures solely in accordance with the terms thereof and the Settlement Trust Agreement.

I.      H.   Settlement Trust Expenses. The Settlement Trust shall pay all Settlement Trust Expenses from the Settlement Trust Assets. The Settlement Trust shall bear sole responsibility with respect to the payment of the Settlement Trust Expenses. Additionally, the Settlement Trust shall promptly pay all reasonable and documented Settlement Trust Expenses incurred by any Protected Party for any and all liabilities, costs or expenses as a result of taking action on behalf of or at the direction of the Settlement Trust.

J.      I.   Indemnification by Settlement Trust. From and after the Effective Date, the Settlement Trust shall indemnify each of the Protected Parties, to the fullest extent lawful, from and against any and all permitted by applicable law, Reorganized BSA and each of the Local Councils for any documented out-of-pocket losses, costs, and expenses (including judgments, attorneys' fees and expenses) incurred by Reorganized BSA or any Local Council on or after the Effective Date attributable to any Abuse Claim that is channeled to the Settlement Trust if the holder of such Abuse Claim seeks to hold Reorganized BSA or such Local Council liable for such Abuse Claim in violation of the terms of the Confirmation Order. Other than this indemnification obligation, the Settlement Trust shall not be required to indemnify any Protected Parties for any claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas,

damages, costs and expenses, ~~(~~including ~~full reimbursement of all fees and expenses of counsel), as incurred,~~any liabilities related to, arising out of, or in connection with, any Abuse Claim.

**K.** ~~J.~~Investment Guidelines.  All monies held in the Settlement Trust shall be invested, subject to the investment limitations and provisions enumerated in the Settlement Trust Agreement.

**L.** ~~K.~~Excess Settlement Trust Assets.  To the extent any Settlement Trust Assets remain at such time as the Settlement Trust is dissolved under the terms of the Settlement Trust Documents, any remaining Settlement Trust Assets shall be distributed to Reorganized BSA.

**M.** ~~L. Cooperation~~Document Agreement.  ~~The Debtors~~If the Plan is Confirmed as a Global Resolution Plan, Reorganized BSA, the Local Councils, the Contributing Chartered Organizations and the Settlement Trust shall enter into the ~~Cooperation~~Document Agreement on the Effective Date, substantially in the form contained in the Plan Supplement.  If the Plan is Confirmed as a ~~Global Resolution~~BSA Toggle Plan, ~~(a)~~ the ~~Local Councils and Contributing Chartered Organizations shall also be parties to the Cooperation~~Document Agreement will be between Reorganized BSA and ~~(b)~~ the ~~Cooperation~~Settlement Trust only.  The Document Agreement shall provide for copies of certain documents, books and records of ~~the Debtors (including all portions of the Volunteer Screening Database relating to allegations of Abuse set forth in Proofs of Claim)~~Reorganized BSA and, if the Plan is Confirmed as a Global Resolution Plan, the Local Councils, and Contributing Chartered Organizations, to be ~~shared with~~transferred to the Settlement Trust.  Under the Document Agreement, Reorganized BSA shall turn over to the Settlement Trust a copy of the Volunteer Screening Database and copies of all troop rosters in Reorganized BSA's possession, custody, or control, in a manner permitting appropriate access by the holder of a Direct Abuse Claim to the portion of the Volunteer Screening Database and the troop rosters, if any, that relates to such holder or the Direct Abuse Claim asserted by such holder.  The Document Agreement shall also provide that Reorganized BSA and, if the Plan is Confirmed as a Global Resolution Plan, the Local Councils and the Contributing Chartered Organizations, will provide the Settlement Trust with reasonable go-forward discovery support regarding records and documents related to Abuse Claims.  The parties to the ~~Cooperation~~Document Agreement shall be bound by the terms thereof.

**N.** ~~M.~~Privileged Information.  The transfer or assignment of any Privileged Information to the Settlement Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to any privileges: (a) they are transferred to or contributed for the sole purpose of enabling the Settlement Trustee to perform their duties to administer the Settlement Trust and for no other reason; (b) they are vested solely in the Settlement Trustee and not in the Settlement Trust, the Settlement Trust Advisory Committee, or any other Person, committee or subcomponent of the Settlement Trust, or any other Person (including counsel and other professionals) who has been engaged by, represents or has represented any holder of an Abuse Claim; (c) they shall be preserved and not waived; and (d) no privileged information shall be publicly disclosed by the Settlement Trustee or the Settlement Trust or communicated to any Person not entitled to receive such information or in a manner that would diminish the protected status of any such information.  Notwithstanding the foregoing, (i) nothing herein shall preclude the Settlement Trustee from providing information received pursuant to this section to any Insurance Company as necessary to preserve, secure, or

obtain the benefit of any rights under any Insurance Policy and (ii) the transfer or assignment of any Privileged Information shall not include any Common-Interest Communications with Insurers.

O. ~~N.~~ No Liability. The Protected Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance in connection with or related to the Settlement Trust, the Settlement Trustee, or the Settlement Trust Documents, including the administration of Abuse Claims and the distribution of Settlement Trust Assets by the Settlement Trust, or any related agreement.

P. ~~O.~~ U.S. Federal Income Tax Treatment of the Settlement Trust. The Settlement Trust shall be a "qualified settlement fund" within the meaning of the Treasury Regulations issued under Section 468B of the Internal Revenue Code. The Settlement Trust shall file (or cause to be filed) statements, returns, or disclosures relating to the Settlement Trust that are required by any Governmental Unit. The Settlement Trustee shall be responsible for the payment of any taxes imposed on the Settlement Trust or the Settlement Trust Assets, including estimated and annual U.S. federal income taxes in accordance with the terms of the Settlement Trust Agreement. The Settlement Trustee may request an expedited determination of taxes on the Settlement Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Settlement Trust for all taxable periods through the dissolution of the Settlement Trust.

Q. ~~P.~~ Institution and Maintenance of Legal and Other Proceedings. As of the Effective Date, the Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Settlement Trust, including the Insurance Actions, Abuse Claims, and the Settlement Trust Causes of Action. Without limiting the foregoing, on and after the Effective Date, the Settlement Trust shall be empowered to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve all such actions, in the name of the Debtors or Reorganized BSA, if deemed necessary or appropriate by the Settlement Trust. The Settlement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred on or after the Effective Date arising from, relating to, or associated with any legal action or other proceeding which is the subject of this Article IV.~~P~~Q and shall pay Indirect Abuse Claims, in accordance with the Trust Distribution Procedures, that may arise from deductibles, self-insured retentions, retrospective premium adjustments, or other charges. Furthermore, without limiting the foregoing, the Settlement Trust shall be empowered to maintain, administer, preserve, or pursue the Insurance Coverage and the Insurance Action Recoveries.

R. ~~Q.~~ Notation on Claims Register Regarding Abuse Claims. On the Effective Date, all Abuse Claims filed against the Debtors in the Chapter 11 Cases shall be marked on the Claims Register as "Channeled to the Settlement Trust" and resolved exclusively in accordance with the Trust Distribution Procedures.

# ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      <u>General</u>.  On and after the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable them to implement the provisions of the Plan before, on, or after the Effective Date, including the creation of the Settlement Trust and the preparations for the transfer of the Settlement Trust Assets to the Settlement Trust.

B.      <u>Operations of the Debtors between Confirmation and the Effective Date</u>.  The Debtors shall continue to operate as debtors and debtors in possession during the period from the Confirmation Date to the Effective Date.

C.      <u>BSA Governance Documents</u>.  From and after the Effective Date, Reorganized BSA shall be governed pursuant to the BSA Charter and the Amended BSA Bylaws.  The Amended BSA Bylaws shall contain such provisions as are necessary to satisfy the provisions of the Plan, subject to further amendment thereof after the Effective Date as permitted by applicable law.  Under the BSA Charter, the BSA has no power to issue certificates of stock, its object and purpose being solely of a charitable character and not for pecuniary profit; accordingly, the requirement of section 1123(a)(6) does not apply to the BSA.

D.      <u>Continued Legal Existence of BSA</u>.  The BSA shall continue to exist on and after the Effective Date, with all of the powers it is entitled to exercise under applicable law and pursuant to the BSA Charter and the Amended BSA Bylaws, subject to further amendment of the Amended BSA Bylaws after the Effective Date, as permitted by applicable law.

E.      <u>Reorganized BSA's Directors and Senior Management</u>.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in Reorganized BSA's directors and officers, the Debtors will identify any such changes in the Plan Supplement.  On and after the Effective Date, the Amended BSA Bylaws, as such may be amended thereafter from time to time, shall govern the designation and election of directors of Reorganized BSA.

F.      <u>Dissolution of Delaware BSA</u>.  On the Effective Date, Delaware BSA's members, directors, officers and employees shall be deemed to have resigned, and Delaware BSA shall be deemed to have dissolved for all purposes and be of no further legal existence under any applicable state or federal law, without the need for any further action or the filing of any plan of dissolution, notice, or application with the Secretary of State of the State of Delaware or any other state or government authority, and without the need to pay any franchise or similar taxes to effectuate such dissolution.  Any Allowed Claims against Delaware BSA will be treated as set forth in <u>Article III.B</u>.

G.      <u>Due Authorization</u>.  As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtors, or either of them, including actions requiring a vote of the National Executive Board or the National Executive Committee of the BSA or the sole member of Delaware BSA, and execution of all documentation incident to the Plan, shall be

deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtors, Reorganized BSA, or any other Person.

H.    <u>Cancellation of Interests</u>.  As of the Effective Date, in accordance with <u>Article III.B.12</u>, Interests in Delaware BSA shall be deemed cancelled without further action by or order of the Bankruptcy Court and shall be of no further force or effect.

I.    <u>Restatement of Indebtedness</u>.

1.    Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, and subject to the treatment afforded to holders of Allowed Claims in Class 3A, 3B, 4A, or 4B under <u>Article III</u>, on the Effective Date, all Prepetition Debt and Security Documents, including all agreements, instruments, and other documents evidencing or issued pursuant to the 2010 Credit Facility Documents, the 2019 RCF Documents, the 2010 Bond Documents, the 2012 Bond Documents, or any indebtedness or other obligations thereunder, and any rights of any holder in respect thereof, shall be deemed amended and restated in the form of the Restated Debt and Security Documents on the terms set forth herein.

2.    Any provision in any document, instrument, lease, or other agreement that causes or effectuates, or purports to cause or effectuate, a default, termination, waiver, or other forfeiture of, or by, the Debtors as a result of the satisfactions, Injunctions, Releases, Discharges and other transactions provided for in the Plan shall be deemed null and void and shall be of no force or effect.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court, including the Confirmation Order.

J.    <u>Cancellation of Liens</u>.  Except as otherwise provided in the Plan, on the Effective Date, any Lien securing any Allowed Secured Claim (other than a Lien securing any Allowed Secured Claim that is Reinstated pursuant to the Plan, including, for avoidance of doubt, the liens securing the Restated Debt and Security Documents) shall be deemed released and the holder of such Allowed Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such holder and to take such actions as may be requested by the Debtors (or Reorganized BSA, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors (or Reorganized BSA, as the case may be).

K.    <u>Effectuating Documents and Further Transactions</u>.  The Chief Executive Officer and President, the Chief Financial Officer, and the General Counsel of the BSA ~~is~~are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf of Reorganized BSA, without the need for any approvals, authorizations, actions, or consents.

L.    Sources of Consideration for Distributions.

1.    Global Resolution Plan. If the Plan is Confirmed as a Global Resolution Plan, distributions under the Plan shall be funded from the following sources:

a.    the Debtors shall fund Distributions on account of and satisfy Allowed General Unsecured Claims exclusively from the Core Value Cash Pool;

b.    the Settlement Trust shall fund distributions on account of and satisfy compensable Abuse Claims in accordance with the Global Resolution Plan TDP from (a) the BSA Settlement Trust Contribution, (b) the Local Council Settlement Contribution, (c) the Contributing Chartered Organization Settlement Contribution, (d) the Hartford Settlement Contribution, and (e) any and all other funds, proceeds or other consideration otherwise contributed to the Settlement Trust pursuant to the Plan or the Confirmation Order or other Final Order of the Bankruptcy Court;

c.    the Debtors shall satisfy 2010 Credit Facility Claims, 2019 RCF Claims, 2010 Bond Claims, and 2012 Bond Claims in accordance with the terms of the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents, as applicable; and

d.    the Debtors shall fund Distributions on account of and satisfy all other Allowed Claims with Unrestricted Cash and Investments on hand on or after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

2.    BSA Toggle Plan.  If the Plan is Confirmed as a BSA Toggle Plan, distributions under the Plan shall be funded from the following sources:

a.    the Debtors shall fund Distributions on account of and satisfy Allowed General Unsecured Claims exclusively from the Core Value Cash Pool;

b.    the Settlement Trust shall fund distributions on account of and satisfy compensable Abuse Claims in accordance with the BSA Toggle Plan TDP from the BSA Settlement Trust Contribution;

c.    the Debtors shall satisfy 2010 Credit Facility Claims, 2019 RCF Claims, 2010 Bond Claims, and 2012 Bond Claims in accordance with the terms of the Restated 2010 Bond Documents, the Restated 2012 Bond Documents and the Restated Credit Facility Documents, as applicable; and

d.    the Debtors shall fund Distributions on account of and satisfy all other Allowed Claims with Unrestricted Cash and Investments on hand on or after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

M. **Calculation of Minimum Unrestricted Cash and Investments.** Irrespective of whether the Plan is Confirmed as a Global Resolution Plan or a BSA Toggle Plan, the minimum amount of Unrestricted Cash and Investments to be retained by Reorganized BSA on the Effective Date shall be:

1. $25,000,000 if the Effective Date occurs on or before September 30, 2021;

2. $37,000,000 if the Effective Date occurs on or after October 1, 2021 but before November 1, 2021;

3. $36,000,000 if the Effective Date occurs on or after November 1, 2021 but before December 1, 2021;

4. $40,000,000 if the Effective Date occurs on or after December 1, 2021 but before January 1, 2022;

5. $57,000,000 if the Effective Date occurs on or after January 1, 2022 but before February 1, 2022;

6. $41,000,000 if the Effective Date occurs on or after February 1, 2022 but before March 1, 2022;

7. $55,000,000 if the if the Effective Date occurs on or after March 1, 2022 but before April 1, 2022; and

8. $54,000,000 if the Effective Date occurs on or after April 1, 2022.

N. ~~M.~~ **Resolution of Abuse Claims.** All Abuse Claims shall be channeled to and resolved by the Settlement Trust in accordance with the Trust Distribution Procedures, subject to the right of any Non-Settling Insurance Company to raise any valid Insurance Coverage Defense in response to a demand by the Settlement Trust that such insurer handle, defend, or pay any such Claim, including any right of such Insurance Company to assert any defense that could, but for the Settlement Trust's assumption of the liabilities, obligations, and responsibilities of the Protected Parties for Abuse Claims, have been raised by the Debtors or other applicable Protected Party with respect to such Claim.

O. ~~N.~~ **Funding by the Settlement Trust.** The Settlement Trust shall have no obligation to fund costs or expenses other than those set forth in the Plan or the Settlement Trust Documents, as applicable.

P. ~~O.~~ **Core Value Cash Pool.** Reorganized BSA shall deposit Cash into the Core Value Cash Pool by making four semi-annual installment payments equal to $6,250,000. Reorganized BSA shall make the first deposit six (6) months after the Effective Date; the second installment on the first anniversary after the Effective Date; the third installment eighteen (18) months after the Effective Date; and the fourth installment on the second anniversary of the Effective Date.

Q. ~~P.~~ Creditor Representative. The Creditor Representative shall be appointed as of the Effective Date and shall be responsible for assisting Reorganized BSA and its professionals in their efforts to efficiently reconcile Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims. The identity of the Creditor Representative shall be determined by the Creditors' Committee, with the consent of the Debtors (such consent not to be unreasonably withheld). The Debtors or Reorganized BSA, as applicable, will use commercially reasonable efforts to assist the Creditor Representative in reconciling Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims on or before the applicable Claims Objection Deadline. The reasonable fees and actual and necessary costs and expenses of the Creditor Representative shall be paid by Reorganized BSA up to the Creditor Representative Fee Cap, and Reorganized BSA shall have no obligation to compensate or reimburse the costs or expenses of the Creditor Representative beyond the amount of the Creditor Representative Fee Cap.

R. ~~Q.~~ Residual Cash in Core Value Cash Pool. To the extent any Cash remains in the Core Value Cash Pool after all Allowed General Unsecured Claims have been satisfied in full, such remaining Cash shall: (i) first, on account of any Allowed Non-Abuse Litigation Claims that shall not have elected to be treated as an Allowed Convenience Claim under Article III.B.9 to satisfy any deficiency in payments of such Allowed Claims from available Insurance Coverage, from applicable proceeds of any Insurance Settlement Agreements, and from co-liable non-debtors (if any) or their insurance coverage; (ii) second, to pay interest to holders of Allowed General Unsecured Claims in accordance with Article VII.L; and (iii) third irrevocably re-vest in Reorganized BSA.

S. ~~R.~~ Compromise and Settlement of Claims, Interests and Controversies. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan and the Plan Documents, as of the Effective Date, the provisions of the Plan, including the Abuse Claims Settlement (if the Plan is Confirmed as a Global Resolution Plan), the Hartford Insurance Settlement Agreement (if the Plan is Confirmed as a Global Resolution Plan), the JPM / Creditors' Committee Settlement, and the Settlement of Restricted and Core Asset Disputes set forth in this Article V.R~~S~~, shall constitute good-faith compromises and settlements of Claims, Interests, and controversies among the parties thereto relating to the contractual, legal, equitable and subordination rights that holders of Claims or Interests may have with respect to any Claim or Interest under the Plan or any Distribution to be made on account of an Allowed Claim. The Plan shall be deemed a motion, proposed by the Debtors and joined by the parties to the Abuse Claims Settlement (if the Plan is Confirmed as a Global Resolution Plan), the Hartford Insurance Settlement Agreement (if the Plan is Confirmed as a Global Resolution Plan), the JPM / Creditors' Committee Settlement, and the Settlement of Restricted and Core Asset Disputes, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies among the parties thereto, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims and Interests, and is fair, equitable and reasonable.

1. Abuse Claims Settlement. The provisions of this Article V.R.1 shall only apply if the Plan is Confirmed as a Global Resolution Plan. The treatment provided for Abuse Claims under the Plan incorporates and reflects a proposed compromise and

settlement of all Abuse Claims against the Protected Parties, and the Scouting Released Claims against the Local Councils and Contributing Chartered Organizations (the "Abuse Claims Settlement"), and the Plan constitutes a request for the Bankruptcy Court to authorize and approve the Abuse Claims Settlement. The following constitutes the provisions and conditions of the Abuse Claims Settlement:

      a.    Local Council Settlement Contribution. The Local Councils shall make, cause to be made, or be deemed to have made, as applicable, the Local Council Settlement Contribution.

      b.    Contributing Chartered Organization Settlement Contribution. The Contributing Chartered Organizations will make, cause to be made, or be deemed to have made, as applicable, the Contributing Chartered Organization Settlement Contribution.

      c.    Claims Deemed Withdrawn with Prejudice By Settling Insurance Companies. On the Effective Date, any and all Claims that have been asserted in the Chapter 11 Cases by or on behalf of any Settling Insurance Company shall be deemed withdrawn with prejudice and irrevocably waived, released and expunged from the Claims Register without any further notice to or action, order, or approval of the Bankruptcy Court. Further, no Settling Insurance Company shall file or assert any Claim or Claims against the Debtors or Reorganized BSA arising from any act or omission of the Debtors prior to the Confirmation Date.

      d.    Injunctions and Releases. Notwithstanding anything to the contrary set forth in the Plan or any other document filed with the Bankruptcy Court, the Injunctions and Releases contained in Article X shall not be effective: (i) as to the Local Councils, ~~until~~if any part of the Local Council Settlement Contribution ~~shall have been made~~is not contributed to the Settlement Trust as described on Exhibit F; (ii) as to the Contributing Chartered Organizations, until the Contributing Chartered Organization Settlement Contribution shall have been made; and (iii) as to any Settling Insurance Company, until such Settling Insurance Company shall have made its contribution to the Settlement Trust pursuant to an Insurance Settlement Agreement.

      2.    JPM / Creditors' Committee Settlement. The provisions of this Article V.~~R~~S.2 apply irrespective of whether the Plan is Confirmed as a Global Resolution Plan or a BSA Toggle Plan. The treatment provided for under the Plan for Allowed 2010 Credit Facility Claims, Allowed 2019 RCF Claims, Allowed 2010 Bond Claims, Allowed 2012 Bond Claims, Allowed Convenience Claims, Allowed General Unsecured Claims, and Allowed Non-Abuse Litigation Claims, together with the terms and conditions of the JPM / Creditors' Committee Term Sheet, reflects a proposed compromise and settlement by and among the Debtors, the Creditors' Committee and JPM (the "JPM / Creditors'

Committee Settlement").[2]   The following constitutes the provisions and conditions of the JPM / Creditors' Committee Settlement:

> a.  Allowance and Treatment of 2010 Credit Facility Claims, 2019 RCF Claims, 2010 Bond Claims and 2012 Bond Claims.  The 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims and the 2012 Bond Claims shall be Allowed in the amounts set forth in Article III.B and receive the treatment afforded to such Claims thereunder.  The Debtors acknowledge and agree that the Claims held by JPM (the 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims and the 2012 Bond Claims), are core to the Debtors' charitable mission and were incurred in furtherance of the Debtors' charitable mission.

> b.  Treatment of Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims.  Convenience Claims, General Unsecured Claims, and Non-Abuse Litigation Claims shall receive the treatment afforded to such Claims under Article III.B.  The Debtors acknowledge and agree that General Unsecured Claims, Convenience Claims, and Non-Abuse Litigation Claims are held by creditors who are core to the Debtors' charitable mission or creditors whose Claims in such Classes, if Allowed, were incurred in furtherance of the Debtors' charitable mission; accordingly, payments by Reorganized BSA under the Plan on account of such Allowed Claims, if applicable, will be made from Cash relating to Reorganized BSA's core assets.

> c.  Challenge Period.  As of the Effective Date, (i) the Challenge Period (as defined in the Cash Collateral Order) shall be deemed to have expired with respect to the Creditors' Committee; (ii) the Stipulations (as defined in the Cash Collateral Order) and other admissions, agreements and releases set forth in the Cash Collateral Order shall be final and binding on the Creditors' Committee. The ability of any other party to bring a Challenge Proceeding (as defined in the Cash Collateral Order) shall be governed by the terms and conditions of the Cash Collateral Order.

> 3.  Settlement of Restricted and Core Asset Disputes.  ~~The provisions of this Article V.R.3 apply irrespective of whether the Plan is Confirmed as a Global Resolution Plan or a BSA Toggle Plan.  The Debtors have agreed under the Plan to: (a) fund the Core Value Cash Pool, in the amount of $25,000,000; and (b) make the BSA Settlement Trust Contribution, including all of the Net Unrestricted Cash and Investments.  The proceeds of the Foundation Loan, in the amount of $42,800,000 (which Reorganized BSA will use exclusively for working capital and general corporate purposes), will permit the Debtors to contribute to the Settlement Trust a substantial amount of core value consideration in Cash on the Effective Date.  The foregoing components of the consideration proposed to be provided by the Debtors to holders of certain Claims under the Plan constitute a~~ <u>As a proposed</u> compromise and settlement of any and all disputes between and among the Tort Claimants' Committee, the Future Claimants' Representative, the Creditors' Committee,

[2]   In the event of a conflict between the terms and conditions of the Plan, on the one hand, and the terms and conditions of the JPM / Creditors'  Committee Term Sheet, on the other hand, the terms of the Plan shall control.

and the Debtors concerning the Debtors' restricted and/or core assets, including the claims asserted in the complaint filed by the Tort Claimants' Committee in the adversary proceeding entitled *Official Tort Claimants' Committee of Boy Scouts of America and Delaware BSA, LLC v. Boy Scouts of America and Delaware BSA, LLC*, Adv. Pro. No. 21-50032 (LSS) (the "Settlement of Restricted and Core Asset Disputes"), the Debtors have proposed to: (a) reduce the minimum amount of Unrestricted Cash and Investments to be retained by Reorganized BSA on the Effective Date from $75,000,000 to $25,000,000 (subject to potential variance as set forth in Article V.M); and (b) issue the BSA Global Resolution Note to the Settlement Trust as of the Effective Date in accordance with Article V.X. As further consideration in connection with the Settlement of Restricted and Core Asset Disputes, the Debtors have agreed under the Plan to: (i) fund the Core Value Cash Pool, in the amount of $25,000,000; and (ii) make the BSA Settlement Trust Contribution, including all of the Net Unrestricted Cash and Investments. The proceeds of the Foundation Loan, in the amount of $42,800,000 (which Reorganized BSA will use exclusively for working capital and general corporate purposes), will permit the Debtors to contribute to the Settlement Trust a substantial amount of core value consideration in Cash on the Effective Date.

4. **Hartford Insurance Settlement.** The provisions of this Article V.RS.4, shall apply only if the Plan is Confirmed as a Global Resolution Plan.[3] The Plan incorporates the Hartford Insurance Settlement Agreement, which is attached hereto as Exhibit I, and the Plan shall constitute a motion by the Debtors for the Bankruptcy Court to approve, pursuant to sections 363, 1123 and 1141 of the Bankruptcy Code and Bankruptcy Rule 9019, (ai) the Hartford Insurance Settlement Agreement, (bii) the sale by the Debtors and the purchase by Hartford of the Hartford Policies, free and clear of all Interests of any Person (as such terms are defined in the Hartford Insurance

---

[3] Confirmation of the Global Resolution Plan requires that the Plan has been accepted by a sufficient number of holders of Direct Abuse Claims. After the announcement of the Hartford Insurance Settlement Agreement on April 16, 2021, the Tort Claimants' Committee, the Coalition, and the Future Claimants' Representative expressed vehement opposition to the settlement in numerous filings, statements and appearances before the Bankruptcy Court. Although the Debtors were hopeful that continued mediation sessions might result in a resolution of the issues between Hartford, on the one hand, and the Tort Claimants' Committee, the Coalition, and the Future Claimants' Representative, on the other hand, after four weeks of additional mediation, the parties remain at an impasse. Indeed, on June 9, 2021, the Debtors received a letter from the Tort Claimants' Committee, the Coalition, and the Future Claimants' Representative stating that the holders of Direct Abuse Claims who they represent will not, under any circumstances, support any plan of reorganization that includes the terms and provisions of the Hartford Insurance Settlement Agreement. They further represented that the holders of Direct Abuse Claims who they represent would vote to reject any plan of reorganization that includes the terms and provisions of the Hartford Insurance Settlement Agreement. In light of the opposition of all of the parties representing holders of Direct Abuse Claims to the Hartford Insurance Settlement Agreement, it appears the Global Resolution Plan cannot be confirmed to the extent it includes the Hartford Insurance Settlement Agreement unless modifications are made to the Hartford Insurance Settlement Agreement that are agreeable to the holders of Direct Abuse Claims. If the parties continue to remain at an impasse, the Debtors will seek a determination from the Bankruptcy Court at the hearing on the Disclosure Statement on the Debtors' obligations with respect to further pursuit of the Hartford Insurance Settlement Agreement. In light of the opposition of the Tort Claimants' Committee, the Coalition, and the Future Claimants' Representative, the Bankruptcy Court may conclude the Debtors are not obligated to pursue the Hartford Insurance Settlement Agreement and, in that event, the Debtors shall amend the Plan to remove all provisions pertaining to the approval of the Hartford Insurance Settlement Agreement.

Settlement Agreement; for the avoidance of doubt, the term "Interests" as used in this Article V.R̶S.4 shall have the meaning given to the term "'Interests" in the Hartford Insurance Settlement Agreement, rather than as such term is defined in Article I of this Plan), and (c̶iii) the settlement, compromise and release of the Hartford Released Claims (as defined in the Hartford Insurance Settlement Agreement) as provided in Section IV.A of the Hartford Insurance Settlement Agreement. The Confirmation Order shall constitute the Bankruptcy Court's approval of such motion pursuant to sections 363, 1123 and 1141 of the Bankruptcy Code and Bankruptcy Rule 9019 and shall include findings of fact and conclusions of law pertaining to such approval, in form and substance acceptable to Hartford.

T.      Payment of Coalition Restructuring Expenses.  If the Plan is Confirmed as a Global Resolution Plan, then on the Effective Date or as soon as practicable after receipt of final invoices of Coalition Restructuring Expenses, Reorganized BSA shall pay the unreimbursed Coalition Restructuring Expenses in Cash.  Estimated final Coalition Restructuring Expenses shall be invoiced prior to and as of the Effective Date, and such invoices shall be delivered to the Debtors at least five (5) Business Date before the anticipated Effective Date; provided, however, that under no circumstances shall the Debtors or Reorganized BSA have any obligation to (1) pay or reimburse the Coalition, any of its members, or any Persons affiliated with the Coalition for any costs, fees or expenses other than the Coalition Restructuring Expenses in the amount set forth herein or (2) pay or reimburse any Coalition Restructuring Expenses that constitute transaction, success or similar contingent fees.  Notwithstanding anything to the contrary in the Plan, the Coalition Restructuring Expenses shall not be subject to the terms of Article II.A.2.  If the Plan is Confirmed as a BSA Toggle Plan, neither the Debtors nor Reorganized BSA shall have any obligation to pay or reimburse the Coalition, any of its members, or any persons affiliated with the Coalition for any costs, fees or expenses.

U.      S̶.̶ Good-Faith Compromise and Settlement.  The Plan (including its incorporation of the Abuse Claims Settlement and the Hartford Insurance Settlement Agreement if the Plan is Confirmed as a Global Resolution Plan, the JPM / Creditors' Committee Settlement, and the Settlement of Restricted and Core Asset Disputes), the Plan Documents, and the Confirmation Order constitute a good-faith compromise and settlement of Claims, Interests and controversies based upon the unique circumstances of these Chapter 11 Cases, and none of the foregoing documents, the Disclosure Statement, or any other papers filed in furtherance of Confirmation, nor any drafts of such documents, may be offered into evidence or deemed as an admission in any context whatsoever beyond the purposes of the Plan, in any other litigation or proceeding, except as necessary, and as admissible in such context, to enforce their terms before the Bankruptcy Court or any other court of competent jurisdiction.  The Plan, the Abuse Claims Settlement, the Hartford Insurance Settlement (if the Plan is Confirmed as a Global Resolution Plan), the JPM / Creditors' Committee Settlement, the Settlement of Restricted and Core Asset Disputes, the Plan Documents, and the Confirmation Order will be binding as to the matters and issues described therein, but will not be binding with respect to similar matters or issues that might arise in any other litigation or proceeding in which none of the Debtors, Reorganized BSA, the Protected Parties, or the Settlement Trust is a party.

T̶.̶      E̶s̶t̶i̶m̶a̶t̶i̶o̶n̶ ̶o̶f̶ ̶D̶i̶r̶e̶c̶t̶ ̶A̶b̶u̶s̶e̶ ̶C̶l̶a̶i̶m̶s̶.̶  I̶f̶ ̶a̶n̶d̶ ̶o̶n̶l̶y̶ ̶i̶f̶ ̶t̶h̶e̶ ̶P̶l̶a̶n̶ ̶i̶s̶ ̶c̶o̶n̶f̶i̶r̶m̶e̶d̶ ̶a̶s̶ ̶a̶ G̶l̶o̶b̶a̶l̶ ̶R̶e̶s̶o̶l̶u̶t̶i̶o̶n̶ ̶P̶l̶a̶n̶,̶ ̶t̶h̶e̶ ̶B̶a̶n̶k̶r̶u̶p̶t̶c̶y̶ ̶C̶o̶u̶r̶t̶ ̶s̶h̶a̶l̶l̶,̶ ̶a̶t̶ ̶t̶h̶e̶ ̶C̶o̶n̶f̶i̶r̶m̶a̶t̶i̶o̶n̶ ̶H̶e̶a̶r̶i̶n̶g̶,̶ ̶c̶o̶n̶d̶u̶c̶t̶ ̶a̶n̶

estimation of the Debtors' aggregate liability on account of Direct Abuse Claims in accordance with the procedures set forth in the Bankruptcy Court's order granting the Confirmation Scheduling Motion. This estimation will, among other things, provide a basis for the Bankruptcy Court and the parties to assess the estimated aggregate value of the Direct Abuse Claims as that value is relevant to determining whether the settlements proposed in the Plan, including Insurance Settlement Agreements and the Abuse Claims Settlement, should be approved under section 1123(b)(3)(A) of the Bankruptcy Code as compromises that are fair, reasonable, and in the best interests of the estate with respect to disputed claims, disputed liabilities, and disputed issues. As set forth in the order granting the Confirmation Scheduling Motion, the Debtors shall offer evidence at the Confirmation Hearing in support of the estimation, and other parties shall be permitted to submit evidence in support of, or to dispute, the evidence offered by the Debtors. The Confirmation Order will contain the Bankruptcy Court's findings of fact and conclusions of law with regard to the Debtors' estimated aggregate liability on account of Direct Abuse Claims, which findings of fact and conclusions of law shall, by their terms, be subject to Article X.M of the Plan and, for the avoidance of doubt, shall only be for purposes of Confirmation of the Plan and shall not constitute a trial or hearing on the merits or an adjudication or judgment, or accelerate the obligations, if any, of any Insurance Company under its Insurance Policies. If the Plan is Confirmed as a BSA Toggle Plan, there shall be no such estimation, and the provisions of this Article V.T shall not apply.

**V.** ~~U.~~ Restated Debt and Security Documents.

1.      On the Effective Date, the Prepetition Debt and Security Documents shall be amended and restated in the form of the Restated Debt and Security Documents, and Reorganized BSA, JPM and Arrow shall, and shall be authorized, to execute, deliver and enter into the Restated Debt and Security Documents as of such date, in principal amounts equal to the Allowed amounts set forth in Article III.B.3, Article III.B.4, Article III.B.5, and Article III.B.6 without the need for any further corporate action or any further notice to or order of the Bankruptcy Court. The Debtors or Reorganized BSA, as applicable, JPM, and Arrow shall take all actions necessary to continue the Debtors' obligations under the Prepetition Debt and Security Documents, as amended and restated by the Restated Debt and Security Documents and to give effect to the Restated Debt and Security Documents, including surrendering any debt instruments or securities that are no longer applicable under the Restated Debt and Security Documents to the Debtors or Reorganized BSA.

2.      Except as otherwise modified by the Restated Debt and Security Documents, all Liens, mortgages and security interests securing the obligations arising under the Restated Debt and Security Documents that were collateral securing the Debtors' obligations under the Prepetition Debt and Security Documents as of the Petition Date are unaltered by the Plan, and all such Liens, mortgages and security interests are reaffirmed and perfected with respect to the Restated Debt and Security Documents to the same extent, in the same manner and on the same terms and priorities as they were under the Prepetition Debt and Security Documents, except as the foregoing may be modified pursuant to the Restated Debt and Security Documents. All Liens and security interests granted and continuing pursuant to the Restated Debt and Security Documents shall be (a) valid, binding, perfected, and enforceable Liens and security

interests in the personal and real property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law; (b) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer; and (c) not otherwise subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) under any applicable law. The Debtors, Reorganized BSA, Arrow, and JPM are authorized to make, and to the extent required by the Restated Debt and Security Documents, the Debtors, Reorganized BSA, Arrow will make, all filings and recordings, and obtain all governmental approvals and consents necessary (but otherwise consistent with the consents and approvals obtained in connection with the Prepetition Debt and Security Documents) to establish, attach and perfect such Liens and security interests under any applicable law (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. For purposes of all mortgages and deposit account control agreements that secured the obligations arising under the Prepetition Debt and Security Documents, the Restated Debt and Security Documents are deemed an amendment and restatement of the Prepetition Debt and Security Documents, and such mortgages and control agreements shall survive the Effective Date, shall not be cancelled, and shall continue to secure Reorganized BSA's obligations under the Restated Debt and Security Documents, except as expressly set forth therein.

3.     The definitive terms of the Restated Debt and Security Documents shall be (x) acceptable to JPM and the BSA, (y) reasonably acceptable to the Creditors' Committee, and (z) substantially the same as the Prepetition Debt and Security Documents, except that, as to be specified in the Restated Debt and Security Documents:

   a.     the maturity dates under the Restated 2010 Bond Documents, the Restated 2012 Bond Documents, and the Restated Credit Facility Documents will be the Restated Maturity Date;

   b.     principal under the Restated 2010 Bond Documents and the Restated 2012 Bond Documents shall be payable in monthly installments, in the same monthly amounts as the prepetition periodic amortization amounts, beginning on the date that is two (2) years after the Effective Date and ending on the Restated Maturity Date; provided, that the scheduled principal amounts payable under the Restated 2010 Bond Documents and the Restated 2012 Bond Documents shall be reduced, on a pro rata basis, by an amount equal to the Excess Cash and Investments, if any, that are remitted to JPM under the Excess Cash Sweep;

   c.     interest under the Restated 2010 Bond Documents and the Restated 2012 Bond Documents shall be payable in monthly installments, at the currently applicable existing rates in the 2010 Bond Documents and the 2012 Bond Documents, beginning on the date that is one month after the Effective Date and ending on the Restated Maturity Date;

d.　principal under the Restated Credit Facility Documents shall be payable in quarterly installments, set at 1/40th of the outstanding balance on the Effective Date, beginning on the date that is two (2) years after the Effective Date and ending on the Restated Maturity Date; provided, that the principal amounts payable under the Restated Credit Facility Documents shall be reduced, on a pro rata basis, by an amount equal to the Excess Cash and Investments, if any, that are remitted to JPM under the Excess Cash Sweep;

e.　interest under the Restated Credit Facility Documents shall be payable in quarterly installments at the applicable existing rates in the Prepetition Debt and Security Documents, beginning on the date that is three (3) months after the Effective Date and ending on the Restated Maturity Date;

f.　all of the obligations of Reorganized BSA under the Restated Debt and Security Documents shall be secured by first-priority liens on and security interests in all of the assets of Reorganized BSA;

g.　all of the obligations of Reorganized BSA under the Restated Debt and Security Documents shall be guaranteed by Arrow; and

h.　beginning on December 31 of the calendar year that is two (2) years after the Effective Date and continuing on December 31 of each successive calendar year until December 31 of the calendar year that is immediately prior to the calendar year of the Restated Maturity Date, Reorganized BSA shall remit to JPM, as soon as reasonably practicable but in no case later than thirty (30) days of such date, twenty-five percent (25%) of the Excess Cash and Investments in excess of $75,000,000, if any, as of such date, measured on a pro forma basis after having given effect to the principal payment, if any, due on February 15 of the following year under the BSA Global Resolution Note, if applicable (the "Excess Cash Sweep"), and JPM shall apply any such amounts on a pro rata basis to the unpaid principal balances under the Restated Debt and Security Documents.  For the avoidance of doubt, no payments shall be made on account of the Excess Cash Sweep until the last Distribution is made on account of Allowed General Unsecured Claims.

W.　~~V.~~ Foundation Loan.

1.　On the Effective Date, the Foundation Loan Agreement and any applicable collateral and other loan documents governing the Foundation Loan shall be executed and delivered, and Reorganized BSA shall be authorized to execute, deliver and enter into, the Foundation Loan Agreement and related documentation governing the Foundation Loan without the need for any further corporate action or any further notice to or order of the Bankruptcy Court.

2.　As of the Effective Date, upon the granting of Liens in accordance with the Foundation Loan Agreement and any applicable collateral and other loan documents governing the Foundation Loan, all of the Liens and security interests granted thereunder

(a) shall be deemed to have been granted, (b) shall be legal, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the applicable collateral as of the Effective Date in accordance with the respective terms of the Foundation Loan Agreement and related documentation, subject to the Liens and security interests set forth in the Restated Debt and Security Documents, as permitted under the Foundation Loan Agreement and related documentation. All Liens and security interests granted pursuant to the Foundation Loan Agreement and related documentation shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law; (ii) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer; and (c) not otherwise subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) under any applicable law. The Debtors, Reorganized BSA, Arrow, and the Foundation are authorized to make, and to the extent contemplated by the Foundation Loan Agreement and related documentation, the Debtors, Reorganized BSA, Arrow will make, all filings and recordings, and obtain all governmental approvals and consents necessary to establish, attach and perfect such Liens and security interests under any applicable law (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interest to third parties.

X.      BSA Global Resolution Note. On the Effective Date, if the Plan is Confirmed as a Global Resolution Plan, Reorganized BSA shall be authorized to execute, issue and deliver the BSA Global Resolution Note to the Settlement Trust and execute and deliver any related documentation governing the BSA Global Resolution Note without the need for any further corporate action or any further notice to or order of the Bankruptcy Court. The BSA Global Resolution Note will be due ninety-one (91) days after the Restated Maturity Date and shall bear interest at a rate of 5.5% per annum, payable semi-annually, subject to a payment-in-kind election for the eighteen (18) months immediately following the Effective Date. Principal under the BSA Global Resolution Note shall be payable in annual installments due on February 15 of each year during the term of the BSA Global Resolution Note, commencing on February 15 of the second year following the Effective Date. Such annual principal payments shall be equal to the sum of the following calculation: (a) $4,500,000; plus (b) $3.50 multiplied by the aggregate number of Youth Members as of December 31 of the preceding year up to the forecasted number of Youth Members for such year as set forth in the Debtors' five-year business plan; plus (c) $50 multiplied by the aggregate number of High Adventure Base Participants during the preceding calendar year; plus (d) $50 multiplied by the aggregate number of Youth Members in excess of the forecasted number of Youth Members for such year, excluding the portion of the excess that is comprised of members under the ScoutReach program, as set forth in the Debtors' five-year business plan; plus (e) $150 multiplied by the aggregate number of High Adventure Base Participants, excluding those attending events with a registration fee of less than $300, in excess of the forecasted number of High Adventure Base Participants for such year as set forth in the Debtors' five-year business plan. The forecast for years after 2025 shall be deemed to be the forecast for calendar year 2025. The BSA Global Resolution Note may be prepaid at any time without penalty.

Y. ~~W.~~ Pension Plan.  No provision contained in the Plan, Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtors, the Local Councils, or any other party, in any capacity, from any liability or responsibility to any Person with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  The Pension Plan shall not be enjoined or precluded from enforcing any such liability or responsibility as a result of any of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims against the Debtors), the Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document filed or order entered in the Chapter 11 Cases.  The Settlement Trust shall not have any liability to any Person on account of the Pension Plan, including liability as a member of a "Controlled Group" as defined in 29 U.S.C. § 1301(a)(14)(A) or on any other basis whatsoever.

As of the Effective Date, Reorganized BSA shall assume and continue the Pension Plan to the extent of its obligations under the Pension Plan and applicable law, including, as applicable, (1) satisfaction of the minimum funding requirements under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083, (2) payment of all required Pension Benefit Guaranty Corporation premiums in accordance with 29 U.S.C. §§ 1306 and 1307, and (3) administration of the Pension Plan in all material respects in accordance with the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301 *et seq.*, and the Internal Revenue Code. Notwithstanding the foregoing, Reorganized BSA reserves all of its rights under the Pension Plan.  All Proofs of Claim filed by the Pension Benefit Guaranty Corporation with respect to the Pension Plan shall be deemed withdrawn on the Effective Date.

Z. ~~X.~~ Single Satisfaction of Allowed General Unsecured Claims.  In no event shall any holder of an Allowed General Unsecured Claim recover more than the full amount of its Allowed General Unsecured Claim from the Core Value Cash Pool (plus interest from the Core Value Cash Pool at the federal judgment rate to the extent applicable under the terms hereof), and to the extent that the holder of an Allowed General Unsecured Claim has received, or in the future receives, payment on account of such Allowed General Unsecured Claim from a party that is not a Debtor or Reorganized BSA, such holder shall repay, return, or deliver to the Core Value Cash Pool any Distribution held by or transferred to such holder to the extent the holder's total recovery on account of its Allowed General Unsecured Claim from the third party and from the Core Value Cash Pool exceeds the amount of such holder's Allowed General Unsecured Claim (plus interest from the Core Value Cash Pool at the federal judgment rate to the extent applicable under the terms hereof).

AA. ~~Y.~~ Exemption from Certain Transfer Taxes and Recording Fees.  To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code and applicable law, any transfers of property pursuant to the Plan, including any transfers to the Settlement Trust by the Debtors, the Local Councils, the Contributing Chartered Organizations, and the Settling Insurance Companies, and payments by Reorganized BSA to or from the Core Value Cash Pool, shall not be taxed under any law imposing a stamp tax or similar tax.

BB. Additional Undertakings of the Debtors.

1.     Within ninety (90) days after the occurrence of the Effective Date, Reorganized BSA shall retain a professional consultant to evaluate its youth protection programs.  To promote its efforts to continuously improve its culture of youth protection awareness and safety at all levels of Scouting, Reorganized BSA commits to take appropriate measures to enhance its youth protection programs consistent with professional recommendations.

2.     To further promote healing and reconciliation, and to continue the Debtors' efforts to prevent Abuse from occurring in Scouting in the future, the Debtors and Reorganized BSA agree to the non-monetary commitments set forth on Exhibit J.

## ARTICLE VI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

1.     On the Effective Date, except as otherwise provided herein, all Executory Contracts and Unexpired Leases shall be deemed assumed by Reorganized BSA without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 or 1123 of the Bankruptcy Code, except for Executory Contracts or Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtors have previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtors to occur) after the Effective Date; or (f) as to which the Debtors or Reorganized BSA, as applicable, determine, in the exercise of their reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtors or Reorganized BSA; <u>provided</u> that the Debtors reserve the right to seek enforcement of an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including seeking an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease for cause.

2.     Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code.  Except as otherwise set forth herein, the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be effective as of the Effective Date; <u>provided</u> that the rejection of an Unexpired Lease shall be effective as of the later of: (a) the Effective Date; and (b) the date on which the leased premises are unconditionally surrendered to the non-Debtor counterparty to the rejected Unexpired Lease.  Reorganized BSA is authorized to abandon any De Minimis Assets at or on the premises subject to an Unexpired Lease that is rejected pursuant to the Plan, and the

non-Debtor counterparty to such Unexpired Lease may dispose of any such De Minimis Assets remaining at or on the leased premises on the applicable lease rejection date.

3. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Reorganized BSA in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized BSA.

B. <u>Rejection Damages Claims</u>. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "<u>Rejection Damages Bar Date</u>"). Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as General Unsecured Claims and subject to the provisions of <u>Article VII</u> and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. **Any holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with this <u>Article VI.B</u> but fails to do so on or before the Rejection Damages Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting or Distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors, their Estates, Reorganized BSA, or its or their respective property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtors or Reorganized BSA or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.**

C. <u>Cure of Defaults under Executory Contracts and Unexpired Leases</u>.

1. Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtors' or Reorganized BSA's non-profit operations, subject to the limitation described below.

2. Except as otherwise provided in the Plan, the Debtors shall, on or before the date of filing of the Plan Supplement, cause the Cure and Assumption Notices to be served on counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance, must be filed,

served, and actually received by the Debtors on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); <u>provided</u> that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtors later determine to assume or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtors serve such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtors or Reorganized BSA, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court. Reorganized BSA may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.**

3.      To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any change of control or similar provision), then such provision shall be deemed preempted and modified such that neither the Debtors' assumption or assumption and assignment of the Executory Contract or Unexpired Lease nor any of the transactions contemplated by the Plan shall entitle the non-debtor counterparty to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other purported default-related rights thereunder.

4.      **The Debtors' assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in this <u>Article VI.C</u>, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such**

**assumption; or (c) the Effective Date, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.  <u>Dispute Resolution</u>.  In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of Reorganized BSA or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors or Reorganized BSA, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  The Debtors or Reorganized BSA, applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtors or Reorganized BSA, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.  To the extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Debtors, the Debtors may, in their discretion, reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption or assumption and assignment.  Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption prevent or delay implementation of the Plan or the occurrence of the Effective Date.

E.  <u>Contracts and Leases Entered into After the Petition Date</u>.  Contracts and leases entered into after the Petition Date by the BSA, including any Executory Contracts and Unexpired Leases assumed by BSA, will be performed by the BSA or Reorganized BSA in the ordinary course of its charitable non-profit operations.  Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

~~F.  <u>Directors and Officers Insurance Policies</u>.  All of the Debtors' unexpired D&O Liability Insurance Policies shall be treated as and deemed to be Executory Contracts under the Plan.~~  Notwithstanding anything in the Plan to the contrary, on the Effective Date, Reorganized BSA shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or prior to the Petition Date pursuant to sections 365 and 1123 of the Bankruptcy Code and this ~~Article VI~~.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized BSA's assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, entry of the Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed as a result of the foregoing assumption of the D&O Liability Insurance Policies and related documents, and each such indemnity obligations will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed.  ~~Entry of the Confirmation Order will constitute the Bankruptcy~~

~~Court's approval of Reorganized BSA's foregoing assumption of the unexpired D&O Liability Insurance Policies.~~

**F.** ~~G.~~ Insurance Policies.

1. Notwithstanding anything to the contrary herein, all BSA <u>Insurance Policies and D&O Liability</u> Insurance Policies issued or entered into prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtors; <u>provided</u>, <u>however</u>, that to the extent any BSA <u>Insurance Policy or D&O Liability</u> Insurance Policy is determined to be an Executory Contract, then, subject to <u>Article IV.~~P~~Q</u>, and notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such BSA <u>Insurance Policy or D&O Liability</u> Insurance Policy and pay all future obligations, if any, in respect thereof and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best ~~interest~~<u>interests</u> of the Debtors, their respective Estates and all parties in interest. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to any BSA Insurance Policy <u>or any D&O Liability Insurance Policy</u>; and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any BSA <u>Insurance Policy or any D&O Liability</u> Insurance Policy shall be indefeasible. Moreover, as of the Effective Date, all payments of premiums or other charges made by the Debtors on or after the Petition Date under or with respect to any BSA <u>Insurance Policy or any D&O Liability</u> Insurance Policy shall be deemed to have been authorized, approved, and ratified in all respects without any requirement of further action by the Bankruptcy Court. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the <u>Debtors under the Plan as to which no Proof of Claim need be filed.</u>

2. <u>Notwithstanding anything to the contrary contained in the Plan, entry of the Confirmation Order shall not discharge, impair, or otherwise modify any indemnity obligations assumed as a result of the foregoing assumption of the D&O Liability Insurance Policies and related documents, and each such indemnity obligations will be deemed and treated as an Executory Contract that has been assumed by the Reorganized</u> Debtors under the Plan as to which no Proof of Claim need be filed.

3. ~~2.~~ Other than the permissibility of the Insurance Assignment, which is to be determined by or in connection with Confirmation, the rights and obligations of the parties under the Insurance Policies, including the question of whether any breach has occurred, shall be determined under applicable law.

G.    H. Compensation and Benefits Programs.  Other than those Compensation and Benefits Programs assumed by the Debtors prior to entry of the Confirmation Order, if any, all of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of Reorganized BSA's assumption and continued maintenance and sponsorship of each of such Compensation and Benefits Plan under sections 365 and 1123 of the Bankruptcy Code, and the Debtors' and Reorganized BSA's obligations under the Compensation and Benefits Programs shall survive and remain unaffected by entry of the Confirmation Order and be fulfilled in the ordinary course of the Debtors' and Reorganized BSA's non-profit operations.  Compensation and Benefits Programs assumed by the Debtors prior to entry of the Confirmation Order shall continue to be fulfilled in the ordinary course of the Debtors' non-profit operations from and after the date of any order of the Bankruptcy Court authorizing the assumption of such Compensation and Benefits Program.  All Claims filed on account of an amounts asserted to be owed under Compensation and Benefits Programs shall be deemed satisfied and expunged from the Claims Register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

H.    I. Restoration Plan and Deferred Compensation Plan.  On the Effective Date the Restoration Plan and the Deferred Compensation Plan shall be terminated and, to the extent applicable, shall be deemed rejected by Reorganized BSA pursuant to section 365 of the Bankruptcy Code and this Article VI.  Claims arising from the Debtors' rejection of the Restoration Plan and the Deferred Compensation Plan shall be treated as General Unsecured Claims hereunder.  Holders of Allowed Claims arising from such rejection shall be entitled to a recovery from the Core Value Cash Pool in accordance with the applicable terms of the Plan.

I.    J. Workers' Compensation Program.  As of the Effective Date, the Debtors and Reorganized BSA shall continue to honor their obligations under: (a) all applicable workers' compensation laws in all applicable states; and (b) the Workers' Compensation Program.  All Proofs of Claims on account of workers' compensation, including the Workers' Compensation Program, shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Bankruptcy Court; provided, however, that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized BSA's defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to the Workers' Compensation Programs; provided further, however, that nothing herein shall be deemed to impose any obligations on the Debtors or their insurers in addition to what is provided for under the terms of the Workers' Compensation Programs and applicable state law.

J.    K. Indemnification Obligations.

1.    Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by Reorganized BSA effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise, except for any Indemnification Obligation that is or is asserted to be owed to or for the benefit of any Perpetrator.  Subject to the foregoing sentence, each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective

of when such obligation arose.  For the avoidance of doubt, this <u>Article VI.K</u> affects only the obligations of the Debtors and Reorganized BSA with respect to any Indemnification Obligations owed to or for the benefit of past and present directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person owed to or for the benefit of such directors, officers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors.

2.      All Proofs of Claim filed on account of an Indemnification Obligation to a current or former director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**K.**      ~~L.~~ <u>Gift Annuity Agreements and Life-Income Agreements</u>.  The Gift Annuity Agreements and Life-Income Agreements shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan, and entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of each of such Executory Contract.

**L.**      ~~M.~~ <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>.  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtors reject or repudiate any of the foregoing agreements.   Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**M.**      ~~N.~~ <u>Reservation of Rights</u>.  Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, a Cure and Assumption Notice, or the Rejected Executory contracts and Unexpired Leases Schedule, nor anything contained in any Plan Document, shall constitute an admission by the Debtors that a contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized BSA has any liability thereunder.  If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors, or, after the Effective Date, Reorganized BSA, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

**N.**      ~~O.~~ <u>Nonoccurrence of Effective Date; Bankruptcy Code Section 365(d)(4)</u>.  If the Effective Date fails to occur, the Bankruptcy Court shall retain jurisdiction with respect to any

request to further extend the deadline for assuming or rejecting Unexpired Leases under section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.   <u>Applicability</u>.  None of the terms or provision of this <u>Article VII</u> shall apply to Abuse Claims, which shall be exclusively processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents.

B.   <u>Distributions Generally</u>.  The Disbursing Agent shall make all Distributions to appropriate holders of Allowed Claims in accordance with the terms of the Plan.

C.   <u>Distributions on Account of Certain Claims Allowed as of the Effective Date</u>.  Except as otherwise provided in the Plan, on or as soon as practicable after the Effective Date, the Disbursing Agent shall make Distributions in Cash in amounts equal to all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, and Allowed Convenience Claims.

D.   <u>Distributions on Account of Allowed General Unsecured Claims</u>.  On each Distribution Date, the Disbursing Agent shall Distribute to each holder of an Allowed General Unsecured Claim an amount equal to such holder's Pro Rata Share of (1) the total balance of the Core Value Cash Pool as of such date, less (2) the balance of the Disputed Claims Reserve.

E.   <u>Distributions on Account of Disputed Claims Allowed After the Effective Date</u>.  Distributions on account of any Disputed Claim shall be made to the extent such Claim is Allowed in accordance with the provisions of <u>Article VIII</u>.  Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

F.   <u>Rights and Powers of Disbursing Agent</u>.

1.   The Disbursing Agent shall make all Distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan, including this <u>Article VII</u>.  Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

2.   The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the

provisions hereof. The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns for all taxable periods through the date on which final Distributions are made.

G.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.

1.    Claims Record Date.  As of the close of business on the Claims Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtors or their agents shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to a Distribution under the Plan, and there shall be no further changes in the record holders or the permitted designees with respect to such Claims.  The Debtors or Reorganized BSA, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Claims Record Date.  With respect to payment of any Cure Amounts or assumption disputes, neither the Debtors nor Reorganized BSA shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Claims Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

2.    Delivery of Distributions.  If a Person holds more than one Claim in any one Class, in the Disbursing Agent's sole discretion, all such Claims will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

3.    Special Rules for Distributions to Holders of Disputed Claims.  Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Disputed Claims have been Allowed or expunged.  Any Distributions arising from property Distributed to holders of Allowed Claims in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to holders of Allowed Claims in such Class.

H.    Undeliverable and Non-Negotiated Distributions.

1.    Undeliverable Distributions.  If any Distribution to a holder of an Allowed Claim is returned to Reorganized BSA as undeliverable, no further Distributions shall be made to such holder unless and until Reorganized BSA is notified in writing of such holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such holder within ninety (90) days of receipt of such holder's then-current address or other necessary information; provided, however, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution.

After such date, all unclaimed property or interests in property shall revert to Reorganized BSA automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred; provided that Distributions made from the Core Value Cash Pool and returned as undeliverable shall revert to the Core Value Cash Pool.

2. <u>Non-Negotiated Distributions</u>. If any ~~Plan~~Distribution to a holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in Reorganized BSA or re-vest in the Core Value Cash Pool if such Distribution was made from the Core Value Cash Pool. After such date, all non-negotiated property or interests in property shall revert to Reorganized BSA automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

I. <u>Manner of Payment under the Plan</u>. Except as otherwise specifically provided in the Plan, at the option of Reorganized BSA, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of Reorganized BSA.

J. <u>Satisfaction of Claims</u>. Except as otherwise specifically provided in the Plan, any Distributions to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

K. <u>Minimum Cash Distributions</u>. Reorganized BSA shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any holder of an Allowed Claim; provided, however, that if any Distribution is not made pursuant to this <u>Article VII.K</u>, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.

L. <u>Postpetition Interest</u>. Except as provided in the Cash Collateral Order or in the following sentence, interest shall not accrue on Impaired Claims; no holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim, and interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. Notwithstanding the foregoing, each holder of an Allowed General Unsecured Claim shall accrue interest on the Allowed amount of such Claim at the federal judgment rate applicable on the Effective Date; provided, that such interest shall be payable to each such holder only from the Core Value Cash Pool and only to the extent that the Core Value Cash Pool shall have been sufficient: (i) first, to satisfy the full amount of all Allowed General Unsecured Claims; and (ii) second, on account of any Allowed Non-Abuse Litigation Claims that shall not have elected to be treated as an Allowed Convenience Claim under <u>Article III.B.9</u>, to satisfy any deficiency in payments of such Allowed Claims from available Insurance Coverage, from applicable proceeds of any Insurance Settlement Agreements, and from co-liable

non-debtors (if any) or their insurance coverage. Neither the Debtors nor Reorganized BSA shall have any independent obligation to pay interest for or on account of any Allowed General Unsecured Claims other than from the Core Value Cash Pool in accordance with the terms of this Article VII.L.

M. **Setoffs.** The Debtors and Reorganized BSA may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtors or Reorganized BSA may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

N. Claims Paid or Payable by Third Parties.

1. Claims Paid by Third Parties. A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized BSA. To the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized BSA on account of such Claim, such holder shall repay, return, or deliver any Distribution held by or transferred to such holder to Reorganized BSA to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

2. Non-Abuse Claims Payable from Insurance. No Distributions under the Plan shall be made on account of any Allowed Non-Abuse Claim that is payable pursuant to an insurance policy until the holder of such Allowed Non-Abuse Claim has exhausted all remedies with respect to such insurance policy, including pursuing such insurance through litigation and obtaining entry of a final, non-appealable order. To the extent that one or more of the Insurance Companies satisfies in full or in part an Allowed Non-Abuse Claim, then immediately upon such satisfaction, the portion of the Claim so satisfied may be expunged from the Claims Register by the Notice and Claims Agent without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

O. Compliance with Tax Requirements and Allocations.

1. In connection with the Plan and all Distributions hereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to

facilitate such Distributions including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

2.     For tax purposes, Distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claim.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.     Applicability.  All Disputed Claims against the Debtors, other than Administrative Expense Claims, shall be subject to the provisions of this Article VIII.  All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article II.  None of the terms or provision of this Article VIII shall apply to Abuse Claims, which shall be exclusively processed, liquidated and paid by the Settlement Trust in accordance with the Settlement Trust Documents.

B.     Allowance of Claims.  After the Effective Date, Reorganized BSA shall have and retain any and all rights and defenses that the Debtors, or either of them, had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtors or Reorganized BSA, on the one hand, and the holder of such Claim, on the other.

C.     Claims Administration Responsibilities.

1.     Except as otherwise expressly provided in the Plan, from and after the Effective Date, Reorganized BSA shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

2.     Reorganized BSA shall consult with the Creditor Representative in connection with the reconciliation, settlement and administration of Convenience Claims, General Unsecured Claims and Non-Abuse Litigation Claims and shall use commercially reasonable efforts to resolve such Claims before the applicable Claims Objection Deadline.

D.     Estimation of Claims.  The Debtors (before the Effective Date) or Reorganized BSA (on and after the Effective Date) may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of

whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person. If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtors (before the Effective Date) or Reorganized BSA (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.    No Distributions Pending Allowance. No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtors or Reorganized BSA, on the one hand, and the holder of such Claim, on the other.

F.    Distributions after Allowance. To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

G.    Disputed Claims Reserve. The provisions of this Article VIII.G apply only to the extent that any General Unsecured Claims remain Disputed as of any Distribution Date.

1.    If any General Unsecured Claims remain Disputed as of any Distribution Date, the undistributed portion of the Core Value Cash Pool shall be held in a segregated account. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtors, Reorganized BSA, the Disbursing Agent, and holders of General Unsecured Claims) shall be required to report for tax purposes in a manner consistent with the foregoing. The Disputed Claims Reserve shall be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets.

2.    The Debtors or Reorganized BSA, as applicable, with the consent of the Creditor Representative, shall determine the amount of the Disputed Claims Reserve, if applicable, as of the initial Distribution Date, based on the least of: (a) the asserted amount of the Disputed General Unsecured Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article VIII.D if, after the Effective Date, a motion is filed by Reorganized BSA to estimate such Claim; (c) the amount otherwise agreed to by the

Debtors (or Reorganized BSA, if after the Effective Date) and the holders of such Disputed General Unsecured Claims; or (d) any amount otherwise approved by the Bankruptcy Court. Upon each Distribution Date, Reorganized BSA shall deposit into the Disputed Claims Reserve an amount of Cash equal to the amount sufficient to make the Distributions to which holders of Disputed General Unsecured Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed General Unsecured Claims were Allowed Claims as of such date.

3. If a Disputed General Unsecured Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed General Unsecured Claim becomes an Allowed Claim (or, if the Disputed General Unsecured Claim becomes an Allowed Claim after the final Distribution Date, as soon as practicable after Allowance), Distribute to the holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such holder would have received in that Distribution and all prior Distributions (if any) if such holder's General Unsecured Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

4. If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the Disputed Claims Reserve and placed in the Core Value Cash Pool, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to holders of Allowed General Unsecured Claims.

5. If any assets remain in the Disputed Claims Reserve after all Disputed General Unsecured Claims have been resolved, such assets shall be placed in the Core Value Cash Pool and distributed Pro Rata to all holders of Allowed General Unsecured Claims on the next Distribution Date (or, if all Disputed General Unsecured Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

H. Adjustment to Claims Register without Objection. Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by the Notice and Claims Agent at the direction of Reorganized BSA upon stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

I. Time to File Objections to Claims. Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time. The expiration of the Claims Objection Deadline shall not limit or affect the Debtors' or Reorganized BSA's rights to dispute Claims asserted in the ordinary course of the Debtors or Reorganized BSA's non-profit operations other than through a Proof of Claim.

J. Treatment of Untimely Claims. Except as provided herein or otherwise agreed, any and all creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.

# ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

A.      Conditions Precedent to Confirmation of the Plan.

Confirmation of the Plan shall not occur unless each of the following conditions precedent has been satisfied or waived in accordance with Article IX.C.

1.      The Bankruptcy Court shall have entered the Disclosure Statement Order, in form and substance reasonably acceptable to the Debtors, JPM, and the Creditors' Committee.

2.      The Debtors, JPM, and the Creditors' Committee shall have approved of or accepted the Confirmation Order in accordance with their respective consent rights under the JPM / Creditors' Committee Term Sheet, as incorporated by reference in Article I.D;

3.      The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Debtors. These findings and determinations are designed, among other things, to ensure that the Injunctions, Releases and Discharges set forth in Article X shall be effective, binding and enforceable and shall, among other things, provide that:

a.      the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan be proposed in good faith and that the Confirmation Order not be procured by fraud;

b.      the Channeling Injunction and the Insurance Entity Injunction (if the Plan is Confirmed as a Global Resolution Plan) are to be implemented in connection with the Settlement Trust and shall be in full force and effect on the Effective Date;

c.      upon the Effective Date, the Settlement Trust shall assume the liabilities of the Protected Parties with respect to Abuse Claims and have exclusive authority as of the Effective Date to satisfy or defend such Abuse Claims;

d.      the Settlement Trust will be funded with the Settlement Trust Assets;

e.      the Settlement Trust will use the Settlement Trust Assets to resolve Abuse Claims;

f.      the terms of the Discharge Injunction, the Channeling Injunction, the Release Injunctions, and the Insurance Entity Injunction (if the Plan is Confirmed as a Global Resolution Plan), including any provisions barring actions

against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

g.    the Future Claimants' Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Channeling Injunction and the Insurance Entity Injunction (if the Plan is Confirmed as a Global Resolution Plan) for the purpose of, among other things, protecting the rights of persons who might subsequently assert Abuse Claims of the kind that are addressed in the Channeling Injunction and the Insurance Entity Injunction (if the Plan is Confirmed as a Global Resolution Plan), which will be transferred to and assumed by the Settlement Trust;

h.    the Plan complies with section 105(a) of the Bankruptcy Code to the extent applicable;

i.    the Injunctions are essential to the Plan and the Debtors' reorganization efforts;

j.    the Bankruptcy Code authorizes the Insurance Assignment notwithstanding any terms of the Insurance Policies, the Insurance Settlement Agreements, or provisions of applicable non-bankruptcy law that any Insurance Company may otherwise argue prohibit the Insurance Assignment;

k.    the Insurance Settlement Agreements are approved, and any Insurance Company that has contributed funds, proceeds or other consideration to or for the benefit of the Settlement Trust pursuant to an Insurance Settlement Agreement is designated as a Settling Insurance Company;

l.    if the Plan is sought to be Confirmed as a Global Resolution Plan, the Abuse Claims Settlement represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' Estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

m.    the JPM / Creditors' Committee Settlement represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' Estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019;

n.    the Settlement of Restricted and Core Asset Disputes represents a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors' estates, complies with section 1123 of the Bankruptcy Code, and is approved pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019; ~~and~~

o.    if the Plan is sought to be Confirmed as a Global Resolution Plan, the Hartford Insurance Settlement Agreement, including the sale of the Hartford Policies free and clear of all Interests of any Person (as such terms are defined in

the Hartford Insurance Settlement Agreement) is approved in accordance with the findings of fact and conclusions of law made by the Bankruptcy Court pursuant to Article V.RS.4;

p.      if the Plan is sought to be Confirmed as a Global Resolution Plan, the Plan, the Plan Documents, and the Confirmation Order shall be binding on all parties in interest;

q.      if the Plan is sought to be Confirmed as a Global Resolution Plan, the Allowed Claim Amount (as defined in the Global Resolution Plan TDP) and procedures included in the Global Resolution Plan TDP pertaining to the allowance of Abuse Claims are fair and reasonable based on the evidentiary record offered to the Bankruptcy Court;

r.      if the Plan is sought to be Confirmed as a Global Resolution Plan, the right to payment that the holder of an Abuse Claim has against the Debtors or another Protected Party is the allowed value of such Abuse Claim as liquidated in accordance with the Global Resolution Plan TDP and is not (i) the initial or supplemental payment percentages established under the Global Resolution Plan TDP to make distributions to holders of allowed Abuse Claims or (ii) the contributions made by the Debtors or any Protected Party to the Settlement Trust; and

s.      if the Plan is sought to be Confirmed as a Global Resolution Plan, the Plan and the Global Resolution Plan TDP were proposed in good faith and are sufficient to satisfy the requirements of section 1129(a)(3) of the Bankruptcy Code.

B.      Conditions Precedent to the Effective Date.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date shall occur on the first Business Day on which each of the following conditions precedent has been satisfied or waived pursuant to Article IX.C:

1.      if the Plan is Confirmed as a Global Resolution Plan, the Confirmation Order shall have been submitted to the District Court for affirmation, the District Court shall have entered the Affirmation Order in form and substance acceptable to the Debtors, and the Confirmation Order and the Affirmation Order shall have become Final Orders; provided, however, that the Effective Date may occur when the Confirmation Order or the Affirmation Order are not Final Orders at the sole option of the Debtors unless the effectiveness of the Confirmation Order or the Affirmation Order, as applicable, shall have been stayed or vacated, in which case the Effective Date may be the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order or the Affirmation Order;

2.      the Settlement Trust Assets shall, simultaneously with the occurrence of the Effective Date or as otherwise provided herein, be transferred to, vested in, and assumed by the Settlement Trust in accordance with Article IV and Article V;

3.      the Settlement Trust Documents and other applicable Plan Documents necessary or appropriate to implement the Plan shall have been executed, delivered and, if applicable, filed with the appropriate governmental authorities;

4.      the Restated Debt and Security Documents shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing in accordance with the terms of the Restated Debt and Security Documents and the closing shall have occurred thereunder;

5.      the Foundation Loan Agreement and any applicable collateral and other loan documents governing the Foundation Loan shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing in accordance with the terms of the Foundation Loan Agreement and related documentation, and the closing shall have occurred thereunder;

6.      the Debtors shall have adequately funded the Professional Fee Reserve so as to permit the Debtors to make Distributions on account of Allowed Professional Fee Claims in accordance with Article II;

7.      the Debtors shall have obtained all authorizations, consents, certifications, approvals, rulings, opinions or other documents that are necessary to implement and effectuate the Plan;

8.      all payments required to be made pursuant to the terms of the Cash Collateral Order shall have been paid;

9.      all actions, documents, and agreements necessary to implement and effectuate the Plan shall have been effected or executed; and

10.     the Debtors shall have filed a notice of occurrence of the Effective Date.

C.      Waiver of Conditions Precedent.  To the fullest extent permitted by law, each of the conditions precedent in this Article IX may be waived or modified, in whole or in part, in the sole discretion of the Debtors and, to the extent the conditions precedent impact the treatment of General Unsecured Claims, Non-Abuse Litigation Claims, or Convenience Claims, with the consent of the Creditors' Committee (not to be unreasonably withheld); provided, that the conditions precedent set forth in Article IX.B.4 and Article IX.B.8 may be waived only with the prior written consent of JPM and, if the Plan is Confirmed as a Global Resolution Plan, the condition precedent set forth in Article IX.A.3.o may be waived only with the prior written consent of Hartford.  Any waiver or modification of a condition precedent under this Article IX

may be effectuated at any time, without notice, without leave or order of the Bankruptcy Court or the District Court, and without any other formal action other than proceedings to confirm or consummate the Plan. The failure to satisfy or waive any condition precedent to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied or waived.

      D.    <u>Substantial Consummation of the Plan</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

      E.    <u>*Vacatur* of Confirmation Order; Non-Occurrence of Effective Date</u>. If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtors in their sole discretion), the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Person in any respect; or (4) be used by the Debtors or any other Person as evidence (or in any other way) in any litigation, including with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

## ARTICLE X.

## EFFECT OF PLAN CONFIRMATION

      A.    <u>Vesting of Assets in Reorganized BSA</u>. Except as otherwise expressly provided in the Plan (including with respect to the Core Value Cash Pool), on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estates shall vest in Reorganized BSA free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind. On and after the Effective Date, Reorganized BSA may continue its operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

      B.    <u>Retention of Certain Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code, subject to the transfer of the <u>Debtors'</u> Settlement Trust Causes of Action to the Settlement Trust under <u>Article IV.D</u> and the Debtors' and their Estates' release of certain Estate Causes of Action under <u>Article X.J</u>, all Causes of Action that a Debtor may hold against any Person shall vest in Reorganized BSA on the Effective Date. Thereafter, subject to <u>Article IV.D</u> and <u>Article X.J</u>, Reorganized BSA shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized BSA, as applicable,

will not pursue any and all available Causes of Action. The Debtors or Reorganized BSA, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

C.      <u>Binding Effect</u>.  As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents entered into in connection with the Plan by the Debtors or Reorganized BSA, the Settlement Trust, or the Protected Parties, shall be binding upon the Debtors, the Estates, Reorganized BSA, all holders of Claims against and Interests in the Debtors, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, regardless of whether the Claim or Interest of such holder is Impaired under the Plan or whether such holder has accepted the Plan.  Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement.

D.      <u>Pre-Confirmation Injunctions and Stays</u>.  All injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay, if any.  The injunctions and stays referenced in this <u>Article X.D</u> includes the preliminary injunction imposed by the *Consent Order Pursuant to 11 U.S.C. §§ 105(a) and 362 Granting the BSA's Motion for a Preliminary Injunction* entered by the Bankruptcy Court on March 30, 2020 (Adv. Pro. No. 20-50527, Docket No. 54), as extended by the Bankruptcy Court from time to time.

E.      <u>Discharge</u>.

1.      <u>Discharge of the Debtors</u>.  Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, each of the Debtors shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released each of the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code,

(c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan.

2.    Discharge Injunction.    From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

F.    **Channeling Injunction.**

1.    **Terms**.    **To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in this Article X, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party. On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party**

with respect to any such Abuse Claim other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

a. **commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or any property or interest in property of any Protected Party;**

b. **enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or any property or interest in property of any Protected Party;**

c. **creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or any property or interest in property of any Protected Party;**

d. **asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or any property or interest in property of any Protected Party; or**

e. **taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim.**

2. <u>**Reservations**</u>. **Notwithstanding anything to the contrary in this <u>Article X.F</u>, the Channeling Injunction shall not enjoin:**

a. **the rights of holders of Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures;**

b. **the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party;**

c. **the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents; or**

        d.    **the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or**

        e.    **the rights of the Settlement Trust and Reorganized BSA (to the extent permitted or required under the Plan) to prosecute any action against any Non-Settling Insurance Company based on or arising from Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses.**

G.    <u>Provisions Relating to Channeling Injunctions</u>.

        1.    <u>Modifications</u>.  There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction.

        2.    <u>Non-Limitation</u>.  Nothing in the Plan or the Settlement Trust Documents shall or shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction or the Settlement Trust's assumption of all liability with respect to Abuse Claims.

        3.    <u>Bankruptcy Rule 3016 Compliance</u>.  The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute or be deemed to constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

        4.    <u>Enforcement</u>.  Any Protected Party may enforce the Channeling Injunction as a defense to any Claim brought against such Protected Party that is enjoined under the Plan as to such Protected Party and may seek to enforce such injunction in a court of competent jurisdiction.

        5.    <u>Contribution Claims</u>.  If a Non-Settling Insurance Company asserts that it has rights, whether legal, equitable, contractual, or otherwise, of contribution, indemnity, reimbursement, subrogation or other similar claims directly or indirectly arising out of or in any way relating to such Non-Settling Insurance Company's payment of loss on behalf of one or more of the Debtors in connection with any Abuse Claim against a Settling Insurance Company (collectively, "<u>Contribution Claims</u>"), (a) such Contribution Claims may be asserted as a defense or counterclaim against the Settlement Trust in any Insurance Action involving such Non-Settling Insurance Company, and the Settlement Trust may assert the legal or equitable rights (if any) of the Settling Insurance Company, and (b) to the extent such Contribution Claims are determined to be valid, the liability (if any) of such Non-Settling Insurance Company to the Settlement Trust shall be reduced by the amount of such Contribution Claims.

        6.    <u>No Duplicative Recovery</u>.  In no event shall any holder of an Abuse Claim be entitled to receive any duplicative payment, reimbursement, or restitution from any Protected Party under any theory of liability for the same loss, damage, or other Claim that is reimbursed by the Settlement Trust or is otherwise based on the same events, facts, matters, or circumstances that gave rise to the applicable Abuse Claim.

7. <u>District Court Approval</u>.  The Debtors shall seek entry of the Affirmation Order, which shall approve (a) the Channeling Injunction and the Settlement Trust's assumption of all liability with respect to Abuse Claims and (b) the releases by holders of Abuse Claims for the benefit of the Protected Parties, each as set forth in this <u>Article X</u>.

H. **Insurance Entity Injunction**.

1. **Purpose.  If the Plan is Confirmed as a Global Resolution Plan, then, to facilitate the Insurance Assignment, protect the Settlement Trust, and preserve the Settlement Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the injunction set forth in this <u>Article X.H</u> (the "<u>Insurance Entity Injunction</u>"); <u>provided</u>, <u>however</u>, that the Insurance Entity Injunction is not issued for the benefit of any Insurance Company, and no Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise specifically provided in any Insurance Settlement Agreement.**

2. **<u>Terms Regarding Claims against Insurance Companies</u>.  Subject to the terms of <u>Article X.E</u> and <u>Article X.F</u>, all Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any claim or cause of action (including any Abuse Claim or any claim for or respecting any Settlement Trust Expense) against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Abuse Claim, whenever and wherever arising or asserted, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such claim or cause of action, including:**

a. **commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such claim, demand, or cause of action against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim, demand, or cause of action <u>(including, for the avoidance of doubt, directly pursuing any suit, action or other proceeding with respect to any such claim, demand, or cause of action against any Insurance Company)</u>;**

b. **enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;**

c. **creating, perfecting, or enforcing in any manner, directly or indirectly, any Lien or Encumbrance against any Insurance Company, or the**

property of any Insurance Company, with respect to any such claim or cause of action; and

       d.       except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such claim or cause of action;

provided, however, that (i) the injunction set forth in this **Article X.H** shall not impair in any way any (a) actions brought by the Settlement Trust against any Non-Settling Insurance Company or (b) the rights of any co-insured of the Debtors (x) under any Insurance Policy that is not the subject of an Insurance Settlement Agreement or against any Non-Settling Insurance Company, in each case with respect to Insured Non-Abuse Claims and (y) as specified under any Final Order of the Bankruptcy Court approving an Insurance Settlement Agreement; and (ii) the Settlement Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the injunction set forth in this **Article X.H** with respect to any Non-Settling Insurance Company, in accordance with the Settlement Trust Documents, upon express written notice to such Non-Settling Insurance Company, except that the Settlement Trust shall not have any authority to terminate, reduce or limit the scope of the injunction herein with respect to any Settling Insurance Company so long as, but only to the extent that, such Settling Insurance Company complies fully with its obligations under any applicable Insurance Settlement Agreement.

       3.       <u>Reservations</u>.   Notwithstanding anything to the contrary in this **Article X.H**, the Insurance Entity Injunction shall not enjoin:

       a.       the rights of any Person to the treatment accorded them under the Plan, as applicable, including the rights of holders of Abuse Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures;

       b.       the rights of any Person to assert any claim, debt, obligation, cause of action or liability for payment of Settlement Trust Expenses against the Settlement Trust;

       c.       the rights of the Settlement Trust to prosecute any action based on or arising from Insurance Policies;

       d.       the rights of the Settlement Trust to assert any claim, debt, obligation, cause of action or liability for payment against an Insurance Company based on or arising from the Insurance Policies; or

       e.       the rights of any Insurance Company to assert any claim, debt, obligation, cause of action or liability for payment against any Non-Settling Insurance Company.

I.    **Injunction against Interference with Plan**.  **Upon entry of the Confirmation Order, all holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.**

J.    **Releases**.

1.    **Releases by the Debtors and the Estates**.

a.    **Releases by the Debtors and the Estates of the Released Parties**.  **As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article X.J.1 shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful**

misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

b. **Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

2. **Releases by the Debtors and the Estates of the Local Councils and the Contributing Chartered Organizations.** If the Plan is Confirmed as a Global Resolution Plan, then, in furtherance of the Abuse Claims Settlement, on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, on their own behalf and as representatives of their respective Estates, and Reorganized BSA, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Local Councils and Contributing Chartered Organizations of and from any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Debtors, their Estates, or Reorganized BSA have, had, may have, or may claim to have against any of the Local Councils and Contributing Chartered Organizations with respect to any Abuse Claims (collectively, the "Scouting Released Claims").

3. **Releases by Holders of Abuse Claims**. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown,

asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims.

4. <u>Releases by Holders of Claims</u>. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; <u>provided</u>, <u>however</u>, that the releases set forth in this <u>Article X.J.4</u> shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of a Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u>. Notwithstanding the foregoing or anything to the contrary herein, with respect to

holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Insurance Company.

K.      <u>Exculpation</u>.   From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct).   In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.  <u>Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley Austin LLP ("Sidley") shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.</u>

L.      <u>Injunctions Related to Releases and Exculpation</u>.

1.      <u>Injunction Related to Releases</u>.   As of the Effective Date, all holders of Claims that are the subject of <u>Article X.J</u> are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> or released under <u>Article X.J</u>; <u>provided</u>, <u>however</u>, that the injunctions set forth in this <u>Article X.L.1</u> shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of <u>Article X.J</u> from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

2.      <u>Injunction Related to Exculpation</u>.   As of the Effective Date, all holders of Claims that are the subject of <u>Article X.K</u> are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably,  and forever stayed,

**restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article X.E or released under Article X.J; provided, however, that the injunctions set forth in this Article X.L.2 shall not, and shall not be construed to, enjoin any Person that is the subject of Article X.K from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.**

M.      Insurance Provisions Applicable under Global Resolution Plan.  The provisions of this Article X.M shall apply to all Entities, including all Insurance Companies, only if the Plan is Confirmed as a Global Resolution Plan.

1.      Except for the Insurance Assignment, or as otherwise provided in the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order or the findings made by the District Court in the Affirmation Order, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights or obligations under an Insurance Policy to the extent such rights and obligations are otherwise available under applicable law.  The rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, and the Affirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

2.      No provision of the Plan, other than those provisions contained in the applicable Injunctions contained in Article X of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company by the Channeling Injunction.

3.      Nothing in this Article X.M is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Person.

N.      Insurance Provisions Applicable under BSA Toggle Plan.  The provisions of this Article X.N shall apply to all Entities, including all Insurance Companies, only if the Plan is Confirmed as a BSA Toggle Plan.

1.     ~~Except as provided in the Hartford Insurance Settlement Agreement and any other Insurance Settlement Agreement, nothing~~Nothing contained in the Plan~~, the Plan~~ Documents, ~~or~~including the Plan, the Confirmation Order, and the Affirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (a) the rights or obligations of any Insurance Company or (b) any rights or obligations of the Debtors arising out of or under any Insurance Policy. ~~For all issues relating to insurance coverage allegedly provided by Hartford, the provisions, terms, conditions, and limitations of the Hartford Insurance Settlement Agreement (if effective in accordance with its terms and conditions and approved by an order of the Bankruptcy Court) shall control, and for all issues relating to insurance coverage allegedly provided by any other Settling Insurance Company, the provisions, terms, conditions, and limitations of the applicable Insurance Settlement Agreement shall control.~~ For all other issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Insurance Policies shall control. For the avoidance of doubt, nothing contained in the Plan~~, the Plan~~ Documents, including the Plan, the Confirmation Order, and the Affirmation Order, or any findings of fact, conclusions of law or other determinations made in connection therewith ~~(including any estimation or valuation of Abuse Claims or the Debtors' liability for Abuse Claims, either individually or in the aggregate, pursuant to Article V.T or pursuant to any other order or agreement entered in the Chapter 11 Cases)~~ shall: (x) operate to require any Insurance Company to indemnify or pay the liability or defense costs of any Protected Party that it would not have been required to pay in the absence of the Plan, the Plan Documents, the Confirmation Order, the Affirmation Order, or of such findings, conclusions and determinations made in connection therewith ~~(including any such estimation or valuation of Abuse Claims or the Debtors' liability for Abuse Claims)~~; (y) establish (i) the liability of the Debtors with respect to any individual Abuse Claim or the Debtors' aggregate liability for Abuse Claims or (ii) the liquidated amount of any such Abuse Claim or Abuse Claims; or (z) impair or affect the right of any Insurance Company or other insurer or alleged insurer (i) to assert all of its rights and defenses under any BSA Insurance Policy ~~or Local Council Insurance Policy~~ and applicable law with respect to coverage of any Abuse Claim or (ii) to assume the defense of any insured Person against any Abuse Claim in the tort system and to assert all of the insured Person's defenses to liability in connection with any such Abuse Claim.

2.     The Plan~~, the Plan~~ Documents, ~~and~~including the Plan, the Confirmation Order, and the Affirmation Order, shall be binding on the Debtors, Reorganized BSA, and the Settlement Trust. ~~Except as provided in any Insurance Settlement Agreement, the~~The obligations, if any, of the Settlement Trust to pay holders of Abuse Claims shall be determined pursuant to the Plan and the Plan Documents. Except as provided in Article X.~~M~~N.~~4~~3, none of (a) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (b) the Confirmation Order, the Affirmation Order or any findings or conclusions entered with respect to Confirmation, or (c) any estimation or valuation of Abuse Claims, either individually or in the aggregate (including any agreement as to the valuation of Abuse Claims) in the Chapter 11 Cases shall, with respect to any Insurance Company, constitute or be deemed to constitute a trial or hearing on the merits or an

adjudication or judgment, or accelerate the obligations, if any, of any Insurance Company under its Insurance Policies.

~~3.    No provision of the Plan, other than those provisions contained in the applicable Injunctions contained in Article X of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company by the Channeling Injunction or the Insurance Entity Injunction (if the Plan is Confirmed as a Global Resolution Plan).~~

3.    ~~4.~~Nothing in this Article X.~~MN~~ is intended or shall be construed to preclude otherwise applicable principles of *res judicata* or collateral estoppel from being applied against any Insurance Company with respect to any issue that is actually litigated by such Insurance Company as part of its objections, if any, to Confirmation or as part of any contested matter or adversary proceeding filed by such Insurance Company in conjunction with or related to Confirmation.  Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated.

O.    ~~N.~~Reservation of Rights.  Notwithstanding any other provision of the Plan to the contrary, no provision of this Article X shall be deemed or construed to satisfy, discharge, release or enjoin claims by the Settlement Trust, Reorganized BSA, or any other Person, as the case may be, against (1) the Settlement Trust for payment of Abuse Claims in accordance with the Trust Distribution Procedures, (2) the Settlement Trust for the payment of Settlement Trust Expenses, or (3) any Insurance Company that has not performed under an Insurance Policy or an Insurance Settlement Agreement.

P.    ~~O.~~Disallowed Claims.  On and after the Effective Date, the Debtors and Reorganized BSA shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

Q.    ~~P.~~No Successor Liability.  Except as otherwise expressly provided in the Plan, Reorganized BSA does not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Person, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date.   Neither the Debtors, Reorganized BSA, nor the Settlement Trust is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity (except as otherwise provided in Article IV.C), and none shall have any successor or transferee liability of any kind or character; provided, however, that Reorganized BSA and the Settlement Trust shall assume and remain liable for their respective obligations specified in the Plan and the Confirmation Order.

**R.** ~~Q.~~ Indemnities.

1. <u>Prepetition Indemnification and Reimbursement Obligations</u>. The respective obligations of the Debtors to indemnify and reimburse Persons who are or were directors, officers or employees of the Debtors on the Petition Date or at any time thereafter up to and including the Effective Date, against and for any obligations pursuant to the bylaws, applicable state or non-bankruptcy law, or specific agreement or any combination of the foregoing, shall, except with respect to any Perpetrator: (a) survive Confirmation of the Plan and remain unaffected thereby; (b) be assumed by Reorganized BSA as of the Effective Date; and (c) not be discharged under section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with any event occurring before, on or after the Petition Date. In furtherance of, and to implement the foregoing, as of the Effective Date, Reorganized BSA shall obtain and maintain in full force insurance for the benefit of each and all of the above-indemnified directors, officers and employees, at levels no less favorable than those existing as of the date of entry of the Confirmation Order, and for a period of no less than three (3) years following the Effective Date.

2. <u>Plan Indemnity</u>. In addition to the matters set forth above and not by way of limitation thereof, Reorganized BSA shall indemnify and hold harmless all Persons who are or were officers or directors of the Debtors on the Petition Date or at any time thereafter up to and including the Effective Date on account of and with respect to any claim, cause of action, liability, judgment, settlement, cost or expense (including attorneys' fees) on account of claims or Causes of Action threatened or asserted by any third party against such officers or directors that seek contribution, indemnity, equitable indemnity, or any similar claim, based upon or as the result of the assertion of primary claims against such third party by any representative of the Debtors' Estates.

3. <u>Limitation on Indemnification</u>. Notwithstanding anything to the contrary set forth in the Plan or elsewhere, neither the Debtors, Reorganized BSA, the Local Councils, nor the Contributing Chartered Organizations, as applicable, shall be obligated to indemnify or hold harmless any Person for any claim, cause of action, liability, judgment, settlement, cost or expense that results primarily from (i) such Person's bad faith, gross negligence or willful misconduct or (ii) an Abuse Claim.

**S.** ~~R.~~ <u>The Official Committees and the Future Claimants' Representative</u>. Except as otherwise described in the Settlement Trust Documents with respect to the Future Claimants' Representative (if the Plan is Confirmed as a Global Resolution Plan), the Official Committees and the Future Claimants' Representative shall continue in existence until the Effective Date, and after the Effective Date for the limited purposes of prosecuting requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date. The Debtors shall pay the reasonable fees and actual and necessary expenses incurred by the Official Committees and the Future Claimants' Representative up to the Effective Date, and after the Effective Date solely for the purposes set forth in the preceding sentence, in accordance with the Compensation Procedures Order, the Fee Examiner Order, and the terms of the Plan, including <u>Article II</u>. As of the Effective Date, the members of the Creditors' Committee shall be released and discharged from all further authority, duties, responsibilities,

liabilities, and obligations involving the Chapter 11 Cases. Upon the closing of the Chapter 11 Cases, the Official Committees shall be dissolved. Neither the Debtors nor Reorganized BSA have any obligation to pay fees or expenses of any Professional retained by the Official Committees or the Future Claimants' Representative that are earned or incurred before the Effective Date to the extent such fees or expenses (or any portion thereof) qualify as Settlement Trust Expenses, in which case such fees and expenses (or the applicable portion thereof) shall be paid by the Settlement Trust in accordance with the Settlement Trust Documents.

## ARTICLE XI.

## RETENTION OF JURISDICTION

A.      Jurisdiction.  Until the Chapter 11 Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out. Except as otherwise provided in the Plan or the Settlement Trust Agreement, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtors, and to adjudicate and enforce the Insurance Actions, the Settlement Trust Causes of Action, and all other Causes of Action which may exist on behalf of the Debtors. Nothing contained herein shall prevent Reorganized BSA or the Settlement Trust, as applicable, from taking such action as may be necessary in the enforcement of any Estate Cause of Action, Insurance Action, Settlement Trust Cause of Action, or other Cause of Action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which actions or other Causes of Action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein. Nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (1) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Action, (2) any such jurisdiction is exclusive with respect to any Insurance Action, or (3) abstention or dismissal of any Insurance Action pending in the Bankruptcy Court or the District Court as an adversary proceeding is or is not advisable or warranted, so that another court can hear and determine such Insurance Action(s). Any court other than the Bankruptcy Court that has jurisdiction over an Insurance Action shall have the right to exercise such jurisdiction.

B.      General Retention.  Following Confirmation of the Plan, the administration of the Chapter 11 Cases will continue until the Chapter 11 Cases are closed by a Final Order of the Bankruptcy Court. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Debtors or Reorganized BSA to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, Reorganized BSA, or the Settlement Trust, as the case may be, to object to or reexamine such Claim in whole or part.

C.      Specific Purposes.  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

2.      correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance in the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

3.      assure performance by the Settlement Trust and the Disbursing Agent of their respective obligations to make distributions under the Plan;

4.      enforce and interpret the terms and conditions of the Plan, the Plan Documents, the Settlement Trust Documents, and any Insurance Settlement Agreements;

5.      enter such orders or judgments, including injunctions (a) as are necessary to enforce the title, rights and powers of Reorganized BSA and the Settlement Trust, (b) to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or the Confirmation Order, and (bc) as are necessary to enable holders of Claims to pursue their rights against any Person that may be liable therefor pursuant to applicable law or otherwise;

6.      hear and determine any and all motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

7.      hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including without limitation contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Cases;

8.      hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331, or 503(b) of the Bankruptcy Code;

9.      hear and determine any Causes of Action arising during the period from the Petition Date to the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, Reorganized BSA, the Settlement Trust, and their respective Representatives;

10.     hear and determine any and all motions for the rejection, assumption or assignment of Executory Contracts or Unexpired Leases and the Allowance of any Claims resulting therefrom;

11. hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12. hear and determine the Allowance and/or Disallowance of any Claims, including Administrative Expense Claims, against or Interests in the Debtors or their Estates, including any objections to any such Claims or Interests, and the compromise and settlement of any Claim, including Administrative Expense Claims, against or Interest in the Debtors or their Estates;

13. hear and resolve disputes concerning any reserves under the Plan or the administration thereof;

14. hear and determine all questions and disputes regarding title to the assets of the Debtors, their Estates or the Settlement Trust;

15. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if distributions pursuant to the Plan or under the Settlement Trust Documents are enjoined or stayed;

16. hear and determine all questions and disputes regarding, and to enforce, the Abuse Claims Settlement;

17. hear and determine the Insurance Actions, any Settlement Trust Cause of Action and any similar claims, Causes of Action or rights of the Settlement Trust to construe and take any action to enforce any Insurance Policy, and to issue such orders as may be necessary for the execution, consummation and implementation of any Insurance Policy, and to determine all questions and issues arising thereunder; provided, that such retention of jurisdiction shall not constitute a waiver of any right of a Non-Settling Insurance Company to seek to remove or withdraw the reference of any Insurance Action filed after the Effective Date;

18. hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Cases;

19. resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, the Bar Date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

20. enter in aid of implementation of the Plan such orders as are necessary, including, but not limited to, the implementation and enforcement of the Injunctions, Releases, and Discharges described herein, including the Channeling Injunction;

21. if the Plan is Confirmed as a Global Resolution Plan, hear and determine any questions and disputes pertaining to, and to enforce, the Abuse Claims Settlement, including the Contributing Chartered Organization Settlement Contribution, the Local Council Settlement Contribution and the Hartford Settlement Contribution;

22.     hear and determine any questions and disputes pertaining to, and to enforce, the JPM / Creditors' Committee Settlement;

23.     enter a Final Order or decree concluding or closing the Chapter 11 Cases; and

24.     ~~To~~to enter and implement such orders as may be necessary or appropriate if any aspect of the Plan, the Settlement Trust, or the Confirmation Order is, for any reason or in any respect, determined by a court to be inconsistent with, to violate, or insufficient to satisfy any of the terms, conditions, or other duties associated with any Insurance Policies; provided, however, that (a) such orders shall not impair the Insurance Coverage Defenses or the rights, claims, or defenses, if any, of any Insurance Company that are set forth or provided for in the Plan, the Plan Documents, the Confirmation Order, or any other Final Orders entered in the Debtors' Chapter 11 Cases, (b) this provision does not, in and of itself, grant this Court jurisdiction to hear and decide disputes arising out of or relating to the Insurance Policies, and (c) all interested parties, including any Insurance Company, reserve the right to oppose or object to any such motion or order seeking such relief.

As of the Effective Date, notwithstanding anything in this <u>Article XI</u> to the contrary, the Restated Debt and Security Documents and any documents related thereto shall be governed by the jurisdictional provisions thereof and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

D.     <u>Courts of Competent Jurisdiction</u>.  To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this <u>Article XI</u> shall be deemed to be replaced by the "District Court."  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

A.     <u>Closing of Chapter 11 Cases</u>.  After each Chapter 11 Case has been fully administered, Reorganized BSA shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

B.     <u>Amendment or Modification of the Plan</u>.

1.     <u>Plan Modifications</u>.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan

in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires additional disclosure. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented. All amendments to the Plan (a) must be reasonably acceptable to JPM and the Creditors' Committee to the extent they pertain to the treatment of the 2010 Credit Facility Claims, the 2019 RCF Claims, the 2010 Bond Claims, or the 2012 Bond Claims (in the case of JPM) or Convenience Claims, General Unsecured Claims, or Non-Abuse Litigation Claims (in the case of the Creditors' Committee) and (b) shall not be inconsistent with the terms of the Hartford Insurance Settlement Agreement (except as provided in Section III.I of such agreement).

2. **Other Amendments.** Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

C. **Revocation or Withdrawal of Plan.** The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, including the Settlement Trust Documents, shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Interest in, the Debtors or any other Person; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission of any sort by the Debtors or any other Person.

D. **Request for Expedited Determination of Taxes.** The Debtors and Reorganized BSA, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

E. **Non-Severability of Plan Provisions.** If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected,

impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors or Reorganized BSA (as the case may be), and (3) nonseverable and mutually dependent.

F. <u>Notices</u>. All notices, requests, and demands to or upon the Debtors or Reorganized BSA to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

> Boy Scouts of America
> 1325 W. Walnut Hill Lane
> Irving, Texas 75015
> Attn: Steven McGowan, General Counsel
> Email: Steve.McGowan@scouting.org
>
> with copies to:
>
> White & Case LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> Attn: Jessica C. Lauria
> Email: jessica.lauria@whitecase.com
>
> – and –
>
> White & Case LLP
> 111 South Wacker Drive, Suite 5100
> Chicago, Illinois 60606
> Attn: Michael C. Andolina
>        Matthew E. Linder
> Email: mandolina@whitecase.com
>        mlinder@whitecase.com
>
> – and –
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, 16th Floor
> P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn: Derek C. Abbott
> Email: dabbott@morrisnichols.com

G. <u>Notices to Other Persons</u>. After the occurrence of the Effective Date, Reorganized BSA has authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to

receive documents pursuant to Bankruptcy Rule 2002; provided, however, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, Reorganized BSA is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those Persons that have filed such renewed requests:

H.      Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement or any other Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof; provided, however, that governance matters relating to Reorganized BSA shall be governed by the laws of the District of Columbia.

I.      Immediate Binding Effect.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of any Person named or referred to in the Plan and the successors and assigns of such Person.

J.      Timing of Distributions or Actions.  In the event that any payment, Distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

K.      Deemed Acts.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan or the Confirmation Order without any further act by any Person.

L.      Entire Agreement.  The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

M.      Plan Supplement.  Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, at the website maintained by the Notice and Claims Agent (https://cases.omniagentsolutions.com/BSA), and at the Bankruptcy Court's website (ecf.deb.uscourts.gov).

N.     Withholding of Taxes.  The Disbursing Agent, the Settlement Trust or any other applicable withholding agent, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

O.     Payment of Quarterly Fees.  All Quarterly Fees due and payable prior to the Effective Date shall be paid on or before the Effective Date.  The Reorganized Debtors shall pay all such fees that arise after the Effective Date, but before the closing of the Chapter 11 Cases, and shall comply with all applicable statutory reporting requirements.

P.     Duty to Cooperate.  Nothing in the Plan, the other Plan Documents or the Confirmation Order shall relieve (by way of injunction or otherwise) any Person that is or claims to be entitled to indemnity under an Insurance Policy from any duty to cooperate that may be required by any such Insurance Policy or under applicable law with respect to the defense and/or settlement of any Claim for which coverage is sought under such Insurance Policy. ~~To the extent that any Person incurs costs in satisfying such duty to cooperate with respect to Abuse Claims, the Settlement Trust shall reimburse Person for all such reasonable out-of-pocket expenses.~~

Q.     Effective Date Actions Simultaneous.  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

R.     Consent to Jurisdiction.  Upon default under the Plan, Reorganized BSA, the Settlement Trust, the Settlement Trustee, the Official Committees, the Future Claimants' Representative, and the Protected Parties, or any successor thereto, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

*[Remainder of Page Intentionally Left Blank]*

Dated: ~~May 16~~June 17, 2021          Boy Scouts of America
                                        Delaware BSA, LLC

                                        /s/ ~~DRAFT~~_Roger C. Mosby_
                                        _____
                                        Roger C. Mosby
                                        Chief Executive Officer and President

**EXHIBIT A-1**

**GLOBAL RESOLUTION PLAN TDP**

# TRUST DISTRIBUTION PROCEDURES OF THE BOY SCOUTS OF AMERICA SETTLEMENT TRUST FOR THE GLOBAL RESOLUTION PLAN

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

# Table of Contents

Pages

Article I Definitions ............................................................................................................. 1

    1.1    Capitalized Terms ............................................................................................ 1

Article II Rules of Interpretation and General Guidelines ................................................. 1

    2.1    Purpose ............................................................................................................ 1

    2.2    General Principles .......................................................................................... 1

    2.3    Sole and Exclusive Method ........................................................................... 2

    2.4    Interpretation .................................................................................................. 2

    2.5    Confidentiality and Privilege ......................................................................... 2

Article III General Trust Procedures .................................................................................. 3

    3.1    Expedited Distributions ................................................................................. 3

    3.2    Trust Claim Submission ................................................................................ 3

    3.3    Cooperation .................................................................................................... 4

    3.4    Deceased Abuse Survivor .............................................................................. 4

Article IV Trust Evaluation Procedures ............................................................................. 5

    4.1    General ........................................................................................................... 5

    4.2    Claims Evaluation ......................................................................................... 5

    4.3    Invalid Abuse Claims .................................................................................... 6

    4.4    Valid Abuse Claims ....................................................................................... 6

    4.5    Treatment of Valid Abuse Claims ................................................................. 7

    4.6    Reconsideration of Settlement Trustee's Determination ............................... 7

Article V Claims Matrix and Points Scaling Factors ......................................................... 9

    5.1    Points System ................................................................................................. 9

    5.2    Conversion of Points to Cash Payments ........................................................ 9

    5.3    Claims Matrix ................................................................................................ 10

    5.4    Points Scaling Factors .................................................................................... 11

    5.5    Claims Calculus ............................................................................................. 15

Article VI Payment of Settled Claims ................................................................................ 16

    6.1    Settled Claim Payments ................................................................................. 16

    6.2    Initial Distribution Payment Scaling Factor .................................................. 16

2

6.3    Payment of Initial Distribution                                          17

6.4    Subsequent Payments                                                      17

6.5    Release                                                                  18

**Article VII** Tender of Insured Abuse Claims and Coverage Litigation with Insurers    18

7.1    Rights of Settlement Trust Against Non-Settling Insurance Companies       18

7.2    Treatment of Insured Abuse Claims                                        19

7.3    Reimbursement of Insured Abuse Claims                                    19

7.4    Coverage Disputes                                                        20

7.5    No Direct Action Right                                                   20

7.6    Rights of Non-Settling Insurance Companies                              20

7.7    Results of Negotiation or Litigation                                     21

**Article VIII** Indirect Claims                                               21

8.1    Indirect Abuse Claims                                                    21

8.2    Offset                                                                   22

**Article IX** Tort System Alternative                                          22

9.1    Exhaustion of Trust Distribution and Reconsideration Procedures          22

9.2    Tender to Non-Settling Insurance Company                                22

9.3    Acceptance of Tender                                                     23

9.4    Limit on Settlement Trust Liability                                      23

9.5    Parties to Lawsuit                                                       23

9.6    Defenses                                                                 23

9.7    Costs                                                                    24

9.8    Settlement or Final Judgment                                            24

9.9    Payment of Judgments by the Settlement Trust                            24

**Article X** Miscellaneous Provisions                                          25

10.1   Non-Binding Effect of Settlement Trust and/or Litigation Outcome        25

10.2   Amendments                                                              25

10.3   Severability                                                            25

10.4   Governing Law                                                           26

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

**TRUST DISTRIBUTION PROCEDURES FOR ~~THE~~ABUSE CLAIMS FOR GLOBAL RESOLUTION PLAN**

~~Article I~~
~~DEFINITIONS~~

~~1.1    Capitalized Terms.    Capitalized terms used in these Trust Distribution Procedures shall have the meanings given them in the Plan, the Trust Agreement, or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated in these Trust Distribution Procedures by reference.~~

~~Article II~~
~~RULES OF INTERPRETATION~~ARTICLE I
PURPOSE ~~AND GENERAL GUIDELINES~~

**A.**    ~~2.1~~ **Purpose**.    The purpose of the Settlement Trust is to, among other things, assume liability for all Abuse Claims, to hold, preserve, maximize and administer the Settlement Trust Assets, and to ~~determine~~employ procedures to allow valid Abuse Claims against the Debtors and other Protected Parties in accordance with section 502 of the Bankruptcy Code and/or applicable law (each, an "**Allowed Abuse Claim**"), determine an allowed liability amount for each Allowed Abuse claim (the "**Allowed Claim Amount**"), determine payment methodology and direct ~~the processing, liquidation and~~ payment of all ~~valid~~Allowed Abuse Claims, and obtain insurance coverage for the Allowed Claim Amount of such Allowed Abuse Claims that are Insured Abuse Claims (as defined below).[1]  ~~The purpose of these~~These Trust Distribution Procedures (~~the~~ "**TDP**") ~~is~~are adopted pursuant to ~~permit~~ the Settlement ~~Trustee to provide~~Trust Agreement and have been approved as reasonable by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  These TDP are designed to provide fair, equitable, and substantially similar treatment for Allowed Abuse Claims.  These TDP provide the means for resolving all Abuse Claims for which the Protected Parties have or are alleged to have legal responsibility as provided in and required by the Plan, the Confirmation Order, and the Settlement Trust Agreement.  The Settlement Trustee shall implement and administer these TDP in consultation with the Claims Administrator, Future Claimants' Representative, and Trust Professionals with the goals of securing the just, speedy, and cost-efficient determination of every Abuse Claim, providing substantially similar treatment to holders of similar, legally valid and supported ~~Allowed~~ Abuse Claims ~~according to~~in accordance with the procedures set forth herein, and obtaining and maximizing the benefits of the Settlement Trust Assets.

---

[1]  ~~For purposes of these Trust Distribution Procedures, the terms "Settlement Trust" and "Settlement Trustee" shall include references to any litigation sub-trust and related litigation sub-trust trustee established pursuant to the Trust Agreement.~~

**B.** ~~2.2~~ **General Principles**. To achieve maximum fairness and efficiency, and recoveries for holders of Allowed Abuse Claims, these TDP are founded on the following principles: ~~As a general principle, these TDP are intended to set out procedures that provide substantially the same treatment to holders of similar Abuse Claims. The procedures described herein including, without limitation, the Base Points and Maximum Points (each as defined below) values set forth in the Claims Matrix and the discretion given to the Settlement Trustee to determine and to adjust the points value to be assigned to a particular Submitted Abuse Claim through application of the Points Scaling Factors (each as defined below), are intended to reflect the relative values of valid Submitted Abuse Claims.~~

1. objective Claim eligibility criteria;
2. clear and reliable proof requirements;
3. administrative transparency;
4. a rigorous review and evidentiary process that requires the Settlement Trustee to determine Allowed Claim Amounts in accordance with applicable law;
5. prevention and detection of any fraud; and
6. independence of the Settlement Trust and Settlement Trustee.

**C.** **Payment of Allowed Abuse Claims and Insurance Recoveries**. Pursuant to the terms of the Plan, the Settlement Trust has assumed the Debtors' legal liability for, and obligation to pay, Allowed Abuse Claims. The Settlement Trust Assets, including the proceeds of the assigned insurance rights, shall be used to fund distributions to Abuse Claimants under these TDP. The amounts that Abuse Claimants will ultimately be paid on account of their Allowed Abuse Claims will depend on, among other things, the Settlement Trust's ability to liquidate and recover the proceeds of the assigned insurance rights. The amount of any installment payments, initial payments, or payment percentages established under these TDP or the Settlement Trust Agreement are not the equivalent of (i) any Abuse Claimant's Allowed Claim Amount or (ii) the right to payment that the holder of an Allowed Abuse Claim has against the Debtors and/or Protected Parties, as assumed by the Settlement Trust.

**D.** ~~2.3~~ **Sole and Exclusive Method**. These TDP and any procedures designated in these TDP shall be the sole and exclusive ~~method~~methods by which ~~a holder of~~ an Abuse Claim ~~(an "~~Abuse Claimant~~" or "Claimant")~~ may seek allowance and distribution on ~~such~~an Abuse Claim with respect to the Protected Parties ~~and Non-Settling Insurance Companies~~.

**E.** ~~2.4~~ **Interpretation**. The terms of the Plan and Confirmation Order shall prevail if there is any discrepancy between the terms of the Plan or Confirmation Order and the terms of these TDP.

**F.** ~~2.5~~ **Confidentiality ~~and Privilege~~**. All submissions to the Settlement Trust by an Abuse Claimant shall be treated as ~~made in the course of settlement discussions between the Claimant and the Settlement Trust and intended by the parties to be~~ confidential and ~~to~~shall be protected by all applicable state and federal privileges, including~~, but not limited to,~~ those directly applicable to settlement discussions. The Settlement Trust will preserve the confidentiality of such submissions, and shall disclose the contents thereof only to such persons as authorized by the Abuse Claimant, or in response to a valid subpoena of such materials issued by the Bankruptcy Court, a Delaware state court, the United States District Court for the District of Delaware or any other court of competent jurisdiction. Notwithstanding anything in the foregoing to the contrary, ~~with the consent of the Settlement Trust Advisory Committee ("STAC"),~~ the Settlement Trust may disclose information, documents, or other materials

5

reasonably necessary in the Settlement Trust's judgment to preserve, obtain, litigate, resolve, or settle insurance coverage, or to comply with an applicable obligation under an Insurance Policy, indemnity, or settlement agreement; *provided, however*, that the Settlement Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents, and materials. Nothing in these TDP shall be construed to authorize the Settlement Trustee to waive privilege to~~or~~ disseminate documents to any Abuse ~~Claimant or~~Claimants of their respective counsel, except as provided for in the Document Agreement.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

    **A.    Incorporation of Plan Definitions**. Capitalized terms used but not defined in these TDP have the meanings ascribed to them in the Plan or the Settlement Trust Agreement and such definitions are incorporated in these TDP by reference. To the extent that a term is defined in these TDP and the Plan and/or the Settlement Trust Agreement, the definition contained in these TDP controls.

    **B.    Definitions**. The following terms have the respective meanings set forth below:

    1.    **"Abuse Claims"** shall mean Direct Abuse Claims, Indirect Abuse Claims, and Future Abuse Claims.

    2.    **"Abuse Claimants"** shall mean the holder of a Direct Abuse Claim, an Indirect Abuse Claim, or a Future Abuse Claim.

    3.    **"Base Matrix Value"** shall mean the base case value for each tier of Abuse Type (labeled as such in the Claims Matrix and more specifically defined and described in Article VIII.C) to be used to value Abuse Claims and that may be identified in connection with the description of the Scaling Factors in Article VIII.C.

    4.    **"Claims Matrix"** shall mean (as specifically defined and described in Article VIII.B) a table scheduling the six tiers of Abuse Types, and identifying the Base Matrix Value, and Maximum Matrix Value for each tier.

    5.    **"CPI-U"** shall mean the Consumer Price Index For All Urban Consumers: All Items Less Food & Energy, published by the United States Department of Labor, Bureau of Labor Statistics.

    6.    **"Direct Abuse Claimant"** or **"Survivor"** shall mean the holder of a Direct Abuse Claim or a Future Abuse Claim.

    7.    **"Indirect Abuse Claimant"** shall mean the holder of an Indirect Abuse Claim.

    8.    **"Exigent Health Claims"** shall mean a Direct Abuse Claim for which the Direct Abuse Claimant has provided a declaration under penalty of perjury from a physician who has examined the Direct Abuse Claimant within one hundred and twenty (120) days of the declaration in which the physician states that there is substantial medical doubt that the Direct Abuse Claimant will survive beyond six (6) months from the date of the declaration.

    9.    **"FIFO"** shall mean "first-in-first-out" and refers to the impartial basis for establishing a sequence pursuant to which Abuse Claims shall be determined and paid by the Settlement Trust.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

10. **"FIFO Processing Queue"** shall mean the FIFO line-up on which the Settlement Trust reviews Trust Claims Submissions.

11. **"Maximum Matrix Values"** shall mean the value for each tier of Abuse Type (labeled as such in the Claims Matrix and more specifically defined and described in Article VIII.B) that represents the maximum Allowed Claim Amount achievable for an Allowed Abuse Claim assigned to a given tier after application of the Scaling Factors described in Article VIII.C.

12. **"Non-BSA Sourced Assets"** shall mean Settlement Trust Assets that represent assets received as a result of or in connection with a global settlement between the Debtors or the Settlement Trust, on the one hand, and a Chartered Organization that is or becomes a Protected Party, on the other hand.  For the avoidance of doubt, Non-BSA Sourced Assets shall not include any assets received from the Debtors, the Local Councils, or any Settling Insurance Companies.

13. **"Scaling Factors"** shall mean (as specifically defined and described in Article VIII.C) the factors identified to consider with respect to each Abuse Claim and to apply to the Base Matrix Value for the applicable tier of Abuse Type for such Abuse Claim to arrive at its Proposed Allowed Claim Amount.

**C.     Interpretation; Application of Definitions and Rules of Construction**.  For purposes of these TDP, unless otherwise provided herein:  (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a person as a holder of a Claim includes that person's successors and assigns; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to these TDP as a whole and not to any particular article, section, subsection, or clause; (4) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (5) any effectuating provisions of these TDP may be interpreted by the Settlement Trustee in such a manner that is consistent with the overall purpose and intent of these TDP without further notice to or action, order, or approval of the Bankruptcy Court; (6) the headings in these TDP are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (7) in computing any period of time prescribed or allowed by these TDP, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; and (8) all provisions requiring the consent of a person shall be deemed to mean that such consent shall not be unreasonably withheld.

## ARTICLE III
## TDP ADMINISTRATION

**A.     Administration**.  Pursuant to the Plan and the Settlement Trust Agreement, the Settlement Trust and these TDP shall be administered by the Settlement Trustee in consultation with the STAC, which represents the interests of holders of present Abuse Claims in the administration of the Settlement Trust, and the Future Claimants' Representative, who represents the interests of holders of Future Abuse Claims.  The Claims Administrator shall assist the Settlement Trustee in the resolution of Abuse Claims in accordance with these TDP and provide information necessary for the Settlement Trustee to implement these TDP.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

**B.     Powers and Obligations.**  The powers and obligations of the Settlement Trustee, the STAC, the Future Claimants' Representative, and the Claims Administrator are set forth in the Settlement Trust Agreement.  The STAC and the Future Claimants' Representative shall have no authority or ability to modify, reject, or influence any claim allowance or Allowed Claim Amount determination under these TDP.

**C.     Consent Procedures.**  The Settlement Trustee shall obtain the consent of the STAC and the Future Claimants' Representative on any amendments to these TDP pursuant to Article XII.B below, and on such matters as are otherwise required below and in Article 1.6 of the Settlement Trust Agreement.  Such consent shall not be unreasonably withheld.

**ARTICLE IV**
**CLAIMANT ELIGIBILITY**

**A.     Direct Abuse Claims.**  To be eligible to potentially receive compensation from the Settlement Trust on account of a Direct Abuse Claim, a Direct Abuse Claimant must:

    (1)     have a Direct Abuse Claim;

    (3)     have timely submitted an Abuse Claim Proof of Claim to the Settlement Trust as provided below; and

    (4)     submit supporting documentation and evidence to the Settlement Trust as provided below.

A Direct Abuse Claim for which a Proof of Claim was filed in the Chapter 11 Cases before the Bar Date or if determined timely by the Bankruptcy Court (each a "**Chapter 11 POC**") shall, without any further action by the Abuse Claimant, be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust.

A Direct Abuse Claim alleging abuse against a Local Council (but not the BSA) (a) for which a state court action was timely filed under state law naming the Local Council (but not the BSA) as a defendant or (b) which is submitted to the Settlement Trust and would be timely under applicable state law if such state court action were filed against the Local Council on the date on which the Direct Abuse Claim is submitted to the Settlement Trust, shall be deemed a timely submitted Abuse Proof of Claim to the Settlement Trust.

A Direct Abuse Claim alleging abuse against any Protected Party other than a Local Council (but not the BSA) (a) for which a state court action was timely filed under state law naming the Protected Party (but not the BSA) as a defendant, (b) which is submitted to the Settlement Trust and would be (x) timely under applicable state law if such state court action were filed against the Protected Party on the date on which the Direct Abuse Claim is submitted to the Settlement Trust and (y) meets any applicable deadline that may be set by the Bankruptcy Court in connection with such Protected Party becoming a Protected Party in accordance with the Plan and Confirmation Order, shall be deemed a submitted Abuse Proof of Claim to the Settlement Trust.

Any Direct Abuse Claim that is not timely submitted based on the foregoing shall be deemed untimely.

**B.     Indirect Abuse Claims.**  To be eligible to receive compensation from the Settlement Trust, an Indirect Abuse Claimant:

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

(1)     must have an Indirect Abuse Claim that satisfies the requirements of the Bar Date Order;

(2)     must establish to the satisfaction of the Settlement Trustee that the claim is not of a nature that it would be otherwise subject to disallowance under section 502 of the Bankruptcy Code, including subsection (e) thereof (subject to the right of the holder of the Indirect Abuse Claim to seek reconsideration by the Settlement Trustee under section 502(j) of the Bankruptcy Code), or subordination under section 509(c) of the Bankruptcy Code; and

(3)     must establish to the satisfaction of the Settlement Trustee that:

(a)     such Indirect Abuse Claimant has paid in full the liability and/or obligation of the Settlement Trust to a Direct Abuse Claimant to whom the Settlement Trust would otherwise have had a liability or obligation under these TDP (and which has not been paid by the Settlement Trust); for the avoidance of doubt, this would include but not be limited to claims for the payment of defense costs, deductibles, or indemnification obligations;

(b)     the Indirect Abuse Claimant and the person(s) to whose claim(s) the Indirect Abuse Claim relates, have forever and fully released the Settlement Trust and the Protected Parties from all liability for or related to the subject Direct Abuse Claim (other than the Indirect Abuse Claimant's assertion of its Indirect Abuse Claim);

(c)     the Indirect Abuse Claim is not otherwise barred by a statute of limitations or repose or by other applicable law; and

(d)     the Indirect Abuse Claimant does not owe the Debtors, Reorganized Debtors, or the Settlement Trust an obligation to indemnify the liability so satisfied.

In no event shall any Indirect Abuse Claimant have any rights against the Settlement Trust superior to the rights that the Direct Abuse Claimant to whose claim the Indirect Abuse Claim relates, would have against the Settlement Trust, including any rights with respect to timing, amount, percentage, priority, or manner of payment. In addition, no Indirect Abuse Claim may be liquidated and paid in an amount that exceeds what the Indirect Abuse Claimant has paid to the related Direct Claimant in respect of such claim for which the Settlement Trust would have liability. Further, in no event shall any Indirect Abuse Claim exceed the Allowed Claim Amount of the related Direct Abuse Claim.

**C.      Future Abuse Claims**.  To be eligible to potentially receive compensation from the Settlement Trust on account of a Future Abuse Claim, a Future Abuse Claimant must:

(1)     have a Direct Abuse Claim that arises from Abuse that occurred prior to the Petition Date; and

(2)     as of the date immediately preceding the Petition Date, had not attained eighteen (18) years of age or was not aware of such Direct Abuse Claim as a result of "repressed memory," to the extent the concept of repressed memory is recognized by the highest appellate court of the state or territory where the claim arose.

Future Abuse Claims that meet the foregoing eligibility criteria shall be treated as Direct Abuse Claims hereunder.

9

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

## GENERAL TRUST PROCEDURES

~~3.1     Expedited Distributions.   As set forth in the Plan and Confirmation Order, a~~

**A.     Document Agreement**.  As more fully described in the Document Agreement, the Settlement Trust may (1) require other parties to the Document Agreement to provide the Settlement Trust with documents, witnesses, or other information as provided therein (the "**Document Obligations**"), and (2) afford, or require such other parties to the Document Agreement to afford, solely through provisions of such documents to the Settlement Trust, access for Direct Abuse Claimants to relevant, otherwise discoverable non-privileged documents to facilitate their submissions with respect to their Direct Abuse Claims, including access to IV files (the Volunteer Screening Database) and to all Troop Rosters in the possession, custody or control of the Debtors, each Protected Party or the Settlement Trust.  The Settlement Trust also may perform any and all obligations necessary to recover assigned proceeds under the assigned insurance rights in connection with the administration of these TDP.

**B.     Assignment of Insurance Rights**.  The Bankruptcy Court has authorized the Insurance Assignment pursuant to the Plan and the Confirmation Order, and the Settlement Trust has received the assignment and transfer of the Insurance Actions, the Insurance Action Recoveries, the Insurance Settlement Agreements (if applicable), the Insurance Coverage, and all other rights or obligations under or with respect to the Insurance Policies (but not the policies themselves) in accordance with the Bankruptcy Code.  Nothing in these TDP shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy or rights and obligations under an Insurance Policy assigned to the Settlement Trust to the extent such rights and obligations are otherwise available under applicable law and subject to the Plan and Confirmation Order.  The rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of these TDP, or any provision hereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

**C.     Deceased Abuse Survivor**.  The Settlement Trustee shall consider, and if an Allowed Claim Amount is determined, pay under these TDP, the claim of a deceased Direct Abuse Claimant without regard to the Direct Abuse Claimant's death, except that the Settlement Trustee may require evidence that the person submitting the claim on behalf of the decedent is authorized to do so.

**D.     Statute of Limitations or Repose**.  The statute of limitations, statute of repose, and the choice of law determination applicable to a Direct Abuse Claim against the Settlement Trust shall be determined by reference to the tort system where such claim was pending on the Petition Date (so long as the Protected Party was subject to personal jurisdiction in that location), or where such claim could have been timely and properly filed as asserted by the Abuse Claimant under applicable law.

## ARTICLE VI
## EXPEDITED DISTRIBUTIONS

**A.     Minimum Payment Criteria**.  A Direct Abuse Claimant who ~~properly completes a non-duplicative proof of claim~~meets the following criteria may elect to resolve his or her Direct

Abuse Claim for an ~~Expedited Distribution~~expedited distribution of $1,500~~.  The Settlement Trust shall make~~ (the "**Expedited** ~~Distributions to Abuse Claimants who have properly elected to receive the Expedited Distribution, and who have executed an appropriate release, on or as soon as practicable after the Effective Date~~**Distribution**"):  (i) the Direct Abuse Claimant has timely submitted to the Settlement Trust a properly and substantially completed, non-duplicative Abuse Claim Proof of Claim; and (ii) the Direct Abuse Claimant has personally signed his or her Proof of Claim attesting to the truth of its contents under penalty of perjury, or supplements his or her Abuse Claim Proof of Claim to so provide such verification.  Direct Abuse Claimants that elect to receive the Expedited Distribution will not have to submit any additional information to the Settlement Trust ~~in order~~ to receive payment of the Expedited Distribution from the Settlement Trust.

    **B.** ~~An~~**Process and Payment of Expedited Distributions**.  Direct Abuse Claimants who have properly elected to receive the Expedited Distribution in accordance with the Plan and Confirmation Order (the "**Expedited Distribution Election**") and who met the criteria set forth in Article VI.A above, shall be entitled to receive their Expedited Payment upon executing an appropriate release, which shall include a release of the Settlement Trust, the Protected Parties, and all Chartered Organizations.  The form of release agreement that a Direct Abuse Claimant who takes the Expedited Distribution Election must execute is attached as **Exhibit A**.  A Direct Abuse Claimant who does not elect to receive the Expedited Distribution in accordance with the Plan and Confirmation Order may not later elect to receive the Expedited Distribution.  A Direct Abuse Claimant who elects to receive the Expedited Distribution shall have no other remedies with respect to his or her Direct Abuse Claim against the Settlement Trust, Protected Parties, Chartered Organizations, or any Non-Settling Insurance Company.  ~~An Abuse Claimant who does not properly elect to receive the Expedited Distribution may not later elect to receive the Expedited Distribution.~~  Direct Abuse Claimants that elect to receive an Expedited Distribution will not be eligible to receive any further distribution on account of their Direct Abuse Claim pursuant to these TDP.

**ARTICLE VII**
**CLAIMS ALLOWANCE PROCESS**

    **A.** ~~3.2~~**Trust Claim ~~Submission~~Submissions**.  Each Abuse Claimant that does not make the Expedited Distribution Election and instead elects to pursue recovery from the Settlement Trust pursuant to these TDP must submit his or her ~~claim~~Abuse Claim for allowance and potential valuation and determination of ~~validity, insured~~insurance status~~, and potential valuation~~ by the Settlement Trustee pursuant to the requirements set forth herein (each, a "**Trust Claim Submission**").  In order to properly make a Trust Claim Submission, each submitting Abuse Claimant must (~~a~~i) complete under oath a questionnaire to be developed by the Settlement Trustee ~~in consultation with Reorganized BSA~~and submitted to the STAC and the Future Claimants' Representative for approval; (~~b~~ii) produce all records and documents requested by the Settlement Trustee, including all documents pertaining to all settlements, awards, or contributions already received, or that are expected to be received, from BSA or other sources; (~~c~~iii) consent to and cooperate in any examinations requested by the Settlement Trustee (including by healthcare professionals selected by the Settlement Trustee) (a "**Trustee Interview**"); and (~~d~~iv) consent to and cooperate in a written and/or oral examination under oath if requested to do so by the Settlement Trustee.  To complete the evaluation of each Abuse Claim submitted through a Trust Claim Submission (each a "**Submitted Abuse Claim**"), the Settlement Trustee also may, but is not required to, obtain additional evidence from the Abuse Claimant or

from other parties pursuant to the ~~Cooperation Agreement~~Document Obligations ~~(as defined below)~~.

3.3    **Cooperation**.    ~~The Settlement Trust shall perform all obligations under the Insurance Policies issued by the Non-Settling Insurance Companies in order to maintain coverage and obtain the benefit of coverage under such policies. Such obligations shall include any requirement to share documents, witnesses, or other information with the Non-Settling Insurance Companies, to the extent required under the relevant insurance policies (the "**Trust Cooperation Obligations**").~~ In addition, the parties to the Cooperation Agreement shall provide the Settlement Trust with documents, witnesses, or other information as provided therein (the "**Cooperation Agreement Obligations**" and together with the Trust Cooperation Obligations, the "**Cooperation Obligations**"). ~~Other than their Cooperation Agreement Obligations owed to the Settlement Trust, the Settlement Trust's counterparties thereto shall have no obligation to act in any capacity in the claims resolution process under these TDP.~~Non-material changes to the claims questionnaire may be made by the Settlement Trustee with the consent of the STAC and the Future Claimants' Representative.

3.4    ~~**Deceased Abuse Survivor**. The Settlement Trustee shall review the claim of a deceased Abuse Claimant without regard to the Abuse Claimant's death, except that the Settlement Trustee may require evidence that the person submitting the claim on behalf of the decedent is authorized to do so.~~

~~**Article IV**~~
~~**TRUST EVALUATION PROCEDURES**~~

4.1    ~~**General**. The claims review and validation procedures set forth in this Article IV will apply to all Submitted Abuse Claims.~~

12

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

**B.** ~~4.2~~ **Claims Evaluation**. The Settlement Trustee shall evaluate each ~~Submitted~~ Trust Claim Submission individually~~,~~ and ~~shall~~will follow the uniform procedures and guidelines ~~outlined~~set forth below ~~in order~~ to ~~provide substantially the same treatment to holders of similar~~determine, based on the evidence obtained by the Settlement Trust, whether or not a Submitted Abuse ~~Claims~~Claim should be allowed. After a review of the documentation provided by the Abuse Claimant in his or her Proof of Claim, Trust Claim Submission, materials received pursuant to the ~~Cooperation Agreement~~Document Obligations, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid and an Allowed Abuse Claim, or ~~legally~~ invalid~~. In order to make this determination, among other things, the~~ and a Disallowed Claim.

**C.** **Settlement Trustee Review Procedures**. The Settlement Trustee must evaluate each Submitted Abuse Claim ~~to determine whether the evidence viably supports a finding that~~, including the underlying Proof of Claim, the Trust Claim Submission and/or the Trustee Interview or any other follow-up, and documents obtained through the Document Obligations, and determine whether such Claim is a legally valid Allowed Abuse Claim, based on the following criteria:

~~(i)~~ ~~the Abuse Claimant timely filed a proper Proof of Claim in the Chapter 11 Cases prior to the Bar Date and the Claim is not barred by any statute of limitations, repose, or by other applicable law, or if the Proof of Claim is defective or untimely, or the Claim is barred by a statute of limitations, repose, or other applicable law the strength of the evidence supporting the Submitted Abuse Claim warrants making a distribution from the Settlement Trust to the holder of such Claim;~~

**1.** **Initial Evaluation Criteria**. The Settlement Trustee shall perform an initial evaluation (the "**Initial Evaluation**") of a Submitted Abuse Claim to determine whether:

(a) the Abuse Claimant's Proof of Claim, Trust Claim Submission or complaint against a Protected Party other than the Debtors (where applicable) was free from material defects;

(b) such Proof of Claim was timely filed under Article IV.A; or

~~(ii)~~ (d) the Submitted Abuse Claim had not ~~been~~ previously been resolved by litigation and/or settlement ~~with~~involving a Protected Party ~~or~~ ~~through the tort system; and~~,

~~(iii)~~ ~~the Abuse Claimant at issue in the Submitted Abuse Claim~~

If any of these criteria are not met, then the Submitted Abuse Claim shall be a Disallowed Claim.

**2.** **General Criteria for Evaluating Submitted Abuse Claims**. To the extent a Submitted Abuse Claim is not disallowed based on the Initial Evaluation, then the Settlement Trustee will evaluate whether the Abuse Claimant has provided the following required evidence for such Claim (the "**General Criteria**"):

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

(a)     Alleged Abuse.  The Abuse Claimant must allege that he or she suffered Abuse.

(b)     Alleged Abuser Identification.  The Abuse Claimant must either: (i) identify his or her alleged abuser by the full name or last name, or (ii) provide additional facts (*e.g.*, a physical description of alleged abuser combined with the name or location of the Abuse Claimant's troop) sufficient for the Settlement Trustee to identify an alleged abuser;

(c)     Connection to Scouting.  The Abuse Claimant must provide information that: (i) he or she was abused by an employee or volunteer of a Protected Party or by a registered Scout participant, and (ii) that such alleged abuse occurred during a Scouting activity or directly resulted from a Scouting activity;

(d)     Location of Abuse.  The Abuse Claimant must identify:  (i) the venue or location of the alleged abuse, and (ii) the Scouting activity that he or she was involved in that directly resulted in the alleged abuse; and

(e)     Date and Age.  The Abuse Claimant must either:  (i) identify the date of the alleged abuse and/or his or her age at the time of the alleged abuse, or (ii) provide additional facts (*e.g.*, the approximate date and/or age at the time of alleged abuse coupled with the names of additional scouts or leaders in the troop) sufficient for the Settlement Trustee to determine the date of the alleged abuse and age of the Abuse Claimant at the time of such alleged abuse.

3.     **Submitted Abuse Claims That Satisfy the General Criteria**.  To the extent that a Submitted Abuse Claim meets the evidentiary requirements set forth in the General Criteria and the Settlement Trustee has verified such information and determined that no materials submitted or information received in connection with the Submitted Abuse Claim are deceptive or fraudulent, the Submitted Abuse Claim will be, and will be deemed to be, an Allowed Abuse Claim.

4.     **Submitted Abuse Claims That Do Not Satisfy the General Criteria**.  If the Settlement Trustee determines that any Submitted Abuse Claim materials provided by an Abuse Claimant include fraudulent and/or deceptive information, the Submitted Abuse Claim will be, and will be deemed to be, a Disallowed Claim.  To the extent that a Submitted Abuse Claim does not meet all of the evidentiary requirements set forth in the General Criteria, the Settlement Trustee can disallow such Claim, or request further information from the Abuse Claimant in question necessary to satisfy the General Criteria requirements; *provided*, *however*, that if the Protected Party referenced in this subsection is a Contributing Chartered Organization, the Abuse asserted in the Submitted Abuse Claim occurred in connection with the Contributing Chartered Organization's sponsorship of one or more Scouting units.Settlement Trustee finds that any of following requirements with respect to any Submitted Abuse Claim are not

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

satisfied, the Claim will be *per se* disallowed and will be, and will be deemed to be, a Disallowed Claim;

(a)     The Abuse Claimant fails to identify the alleged abuser and/or fails to provide a description of the alleged abuser such that the Settlement Trustee cannot determine whether the alleged abuser was an employee or volunteer of a Protected Party or was a registered Scout, and that the abuse occurred during a Scouting activity or directly resulted from a Scouting activity;

(b)     The Abuse Claimant fails to provide the date and/or his or her age at the time of the alleged abuse, and/or insufficient information for the Settlement Trustee to determine the approximate date and/or the Abuse Claimant's age at the time of the alleged abuse;

(c)     The Abuse Claimant fails to identify the alleged acts of abuse; or

(d)     The Abuse Claimant fails to demonstrate that he or she was involved in Scouting.

**D.** ~~4.3~~ ~~**Invalid Abuse**~~**Disallowed Claims**. ~~Except as otherwise provided herein, if~~If the Settlement Trustee finds ~~that~~, pursuant to the ~~evidence submitted by the Abuse Claimant in a Trust Claim Submission does not support a viable claim against a Protected Party in the tort system~~procedures set forth in Article VII.C above, that a Submitted Abuse Claim is a Disallowed Claim, the Settlement Trustee shall ~~make a determination that the Submitted Abuse Claim is invalid and~~ provide written notice of its determination to the relevant Abuse Claimant (~~an~~a "~~**Invalid**~~**Disallowed** Claim Notice").

~~Such determination may be based on a conclusion that the information provided in the Trust Claim Submission is fraudulent or insufficient to demonstrate a viable claim against a Protected Party, that the Abuse Claim is time-barred or procedurally deficient, or any other grounds that the Settlement Trustee in her discretion may find appropriate. The Settlement Trustee shall have discretion to determine whether a defect in the Abuse Claimant's Proof of Claim or Trust Claim Submission should invalidate a Submitted Abuse Claim. For example, if the~~ Settlement Trustee finds that ~~a Submitted Abuse Claim (including the related Proof of Claim, if any) is strong enough to warrant distribution on the Claim from the Settlement Trust, the Settlement Trustee may find that the Submitted Claim is valid despite the defect or untimeliness of the Claim and assign points to such Claim pursuant to Article V below.~~ If the Settlement Trustee finds that a Submitted Abuse Claim is ~~invalid~~a Disallowed Claim, the Settlement Trustee will not ~~conduct a~~perform the Allowed Abuse Claim valuation analysis described below in Article ~~V~~VIII. Abuse Claimants shall have the ability to seek reconsideration of the Settlement Trustee's determination set forth in the ~~Invalid~~Disallowed Claim Notice as described in ~~section 4.6~~Article VII.G below.

**E.** ~~4.4~~ ~~**Valid**~~**Allowed** **Abuse Claims**. If the Settlement Trustee finds that a Submitted Abuse Claim is ~~valid~~an Allowed Abuse Claim, the Settlement Trustee shall utilize the ~~Claims Matrix and Points Scaling Factors~~procedures described below in Article ~~V~~VIII to ~~assign a~~determine the proposed Claims Matrix tier and ~~Points~~Scaling Factors ~~to~~for such Abuse Claim (the "**Proposed** **Allowed** **Claim** ~~**Valuation**~~**Amount**") as well as the amount if the Abuse Claimant voluntarily releases chartered organizations (the "**Proposed Chartered-Organization-Release Allowed Claim Amount**"), and provide written notice of ~~validity,~~allowance and the Proposed Allowed Claim ~~Valuation,~~Amount and the ~~Initial Settlement Trust Corpus Scaling Factor (as defined below) and any Subsequent Trust Corpus Scaling~~

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

Factor(s) (to the extent they have been determined)Proposed Chartered-Organization-Release Allowed Claim Amount to the Abuse Claimant (a~~an~~ "~~**Valid**~~**Allowed** Claim Notice" and together with the ~~Invalid~~Disallowed Claim Notice, a "**Claim Notice**") as set forth in ~~section 4.5~~Article VII.F below.

**F.** ~~4.5~~ ~~**Treatment of Valid Abuse**~~ **Claims**. ~~The Settlement Trustee provides a Valid Claim Notice for any Submitted Abuse Claim that the Settlement Trustee determines to be valid under sections 4.2 and 4.4 to the relevant Abuse Claimant~~ **Determination**. The Abuse Claimant shall ~~have the ability to seek reconsideration of the Proposed Claim Valuation set forth in the Valid Claim Notice as described in section 4.6~~be able to select between the Proposed Allowed Claim Amount and the Proposed Chartered-Organization-Release Allowed Claim Amount; *provided that*, if the Abuse Claimant selects the Proposed Chartered-Organization-Release Allowed Claim Amount, then the Abuse Claimant must execute a release, the form of which is attached as **Exhibit B**, releasing all claims against all Chartered Organizations. If the Abuse Claimant accepts the ~~Settlement Trustee's~~ Proposed Allowed Claim Amount or the Proposed Chartered-Organization-Release Allowed Claim Amount in the Allowed ~~Claim Valuation~~Notice or the reconsideration process set forth below in ~~section 4.6~~Article VII.G has been exhausted (and no further action has been taken by the Abuse Claimant in the tort system pursuant to Article ~~IX~~XII below), the ~~subject Submitted~~Proposed Allowed Claim Amount or the Proposed Chartered-Organization-Release Allowed Claim Amount among, depending on which is selected by the Abuse ~~Claim~~Claimant, shall become ~~a settled claim at~~ the ~~Proposed~~Allowed Claim ~~Valuation amount (a "**Settled**~~Amount for such Claim (a "**Final Determination**"), and ~~the holder of such Allowed Abuse Claim shall~~ receive ~~treatment~~payment in accordance with Article ~~VII~~IX, subject to the Abuse Claimant executing the form of release set forth in ~~section 6.5~~Article IX.D. The Abuse Claimant shall only be eligible to receive the Proposed Chartered-Organization-Release Allowed Claim Amount if the Abuse Claimant executes the release attached as **Exhibit B**.

**G.** ~~4.6~~ **Reconsideration of Settlement Trustee's Determination**. An Abuse Claimant may make a request for reconsideration of (i) the ~~validity~~disallowance of his or her Submitted Abuse Claim, or (ii) the Proposed Allowed Claim ~~Valuation~~Amount or the Proposed Chartered-Organization-Release Allowed Claim Amount (a "**Reconsideration Request**")~~, within 30 days of receiving a Claim Notice from the Settlement Trust~~. Each Reconsideration Request must be accompanied by a check or money order for $~~500~~2,500 as an administrative fee for reconsideration. The Abuse Claimant may submit further evidence in support of the Submitted Abuse Claim with the Reconsideration Request. The Settlement Trustee will have sole discretion whether to grant the Reconsideration Request. The decision to grant the Reconsideration Request does not guarantee that the Settlement Trustee will reach a different result after reconsideration.

If the Reconsideration Request is denied, the administrative fee will not be returned, and the Settlement Trustee will notify the Abuse Claimant within thirty (30) days of receiving the request that it will not reconsider the Abuse Claimant's Submitted Abuse Claim. The Abuse Claimant shall retain the ability to pursue the Settlement Trust in the tort system as described in Article ~~IX~~XII below.

If the Reconsideration Request is granted, the Settlement Trustee will provide the Abuse Claimant written notice within 30 days of receiving the Reconsideration Request that it is reconsidering the Abuse Claimant's Submitted Abuse Claim. The Settlement Trustee will then reconsider the Submitted ~~Abuse Claim (in consultation with a Non-Settling Insurance Company if the~~ Abuse Claim ~~is an Insured Abuse Claim)~~ including all new information provided by the

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

Abuse Claimant in the Reconsideration Request and any additional Trustee Interview—and will have the discretion to maintain the prior determination or find that the Submitted Abuse Claim in question is ~~valid and/~~an Allowed Abuse Claim or should receive a new Proposed Allowed Claim ~~Valuation~~Amount and/or Proposed Chartered-Organization-Release Allowed Claim Amount.

If the Settlement Trustee determines upon reconsideration that a Submitted Abuse Claim is ~~valid~~an Allowed Abuse Claim and/or should receive a new Proposed ~~Claim Valuation~~Amount or Proposed Chartered-Organization-Release Allowed Claim Amount, the Settlement Trustee will deliver ~~a Valid~~an Allowed Claim Notice and return the administrative fee to the relevant Abuse Claimant. If the Settlement Trustee determines upon reconsideration that the totality of the evidence submitted by the Abuse Claimant does not support changing the earlier finding that the Submitted Abuse Claim is ~~invalid or~~a Disallowed Claim, or that the Claim in question is not deserving of a new Proposed Allowed Claim ~~Valuation~~Amount or Proposed Chartered-Organization-Release Allowed Claim Amount, the Settlement Trustee's earlier ~~determinations as to validity~~allowance determination and/or Proposed Allowed Claim ~~Valuation~~Amount and/or Proposed Chartered-Organization-Release Allowed Claim Amount shall stand and the Settlement Trustee will provide a Claim Notice to the Abuse Claimant of either result within ninety (90) days of delivering notice of accepted reconsideration to the Abuse Claimant. The Abuse Claimant shall retain the ability to pursue the Settlement Trust for reconsideration of its ~~claim determination~~Submitted Abuse Claim in the tort system as described below in Article ~~IX~~XII.

Any Submitted Abuse Claim that is disallowed based on the application of a statute of limitations, repose, or other similar time-based defense that becomes the subject of statute of limitations revival legislation in the applicable location may be reconsidered hereunder at the sole discretion of the Settlement Trustee without the Abuse Claimant having to pay the administrative fee for such reconsideration or submit new information in connection with such reconsideration (unless new information is requested by the Settlement Trustee as part of such reconsideration).

**H.  Prevention and Detection of Fraud**.  The Settlement Trustee shall work with the Claims Administrator to institute auditing and other procedures to detect and prevent the allowance of Abuse Claims based on fraudulent Trust Claim Submissions.  Among other things, such procedures will permit the Settlement Trustee or Claims Auditor to conduct random audits to verify supporting documentation submitted in randomly selected Trust Claim Submissions, as well as targeted audits of individual Trust Claim Submissions or groups of Trust Claim Submissions.  Trust Claim Submissions must be signed under the pains and penalties of perjury and to the extent of applicable law, the submission of a fraudulent Trust Claim Submission may violate the criminal laws of the United States, including the criminal provisions applicable to Bankruptcy Crimes, 18 U.S.C. § 152, and may subject those responsible to criminal prosecution in the Federal Courts.

~~Article V~~ARTICLE VIII
**CLAIMS MATRIX AND ~~POINTS~~ SCALING FACTORS**

~~5.1  Points System.~~

17
~~17~~

~~5/16/2021 14:33~~
~~AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]~~

**A. Claims Matrix and Scaling Factors**. These TDP establish certain criteria for unliquidated claims seeking compensation from the Settlement Trust, a claims matrix below (the "**Claims Matrix**") that schedules six types of Abuse (the "**Abuse Types**") and designates for each Abuse Type a Base Matrix Value, and Maximum Matrix Value, and certain scaling factors (the "**Scaling Factors**") identified below to apply to the Base Matrix Values to determine the liquidated values for certain unliquidated Abuse Claims. The Abuse Types, Scaling Factors, Base Matrix Values, and Maximum Matrix Values that are set forth in the Matrix have all been selected and derived with the intention of achieving a fair and reasonable Abuse Claim valuation range in light of the best available information, considering the settlement, verdict and/or judgments that Abuse Claimants would receive in the tort system against the Protected Parties absent the bankruptcy. The Settlement Trustee shall utilize the claims matrix (the "**Claims Matrix**") and points scaling factors ("**Points Scaling Factors**") set forth below in sections 5.3 and 5.4 as the basis to determine a Proposed Claim Valuation for each valid Submitted Abuse Claim.

5.2 **Conversion of Points to Cash Payments**. Points assigned to a valid Submitted Abuse Claim will be converted to a recovery dollar amount to be determined by an aggregate scaling factor consisting of the Initial Settlement Trust Corpus Scaling Factor and any Subsequent Settlement Trust Scaling Factor(s) (each as defined below) (the "**Settlement Trust Corpus Scaling Factor**"), which is the ratio of the expected size of the Settlement Trust corpus (allowing for a reserve for Settlement Trust operating expenses and Abuse Claims litigated in the tort system) to the expected total points assigned to all Submitted Abuse Claims evaluated by the Settlement Trustee (including Future Abuse Claims). By way of example, if the Settlement Trust corpus is expected to be valued at net $1.5 billion and the Settlement Trustee expects the total points assigned to all Submitted Abuse Claims evaluated by the Settlement Trustee (including Future Abuse Claims) to be 4.5 billion, the Settlement Trust Corpus Scaling Factor will be one-third, meaning that the cash payment value of a point is $1 to 3 points, and consequently, a Settled Claim assigned 300,000 points would receive $100,000. In contrast, as a further example, if the Settlement Trust corpus is expected to be $4.5 billion, the Settlement Trust Corpus Scaling Factor will be one, meaning the cash payment value of a point would instead be $1 to 1 point, and in that circumstance, a Settled Claim assigned 300,000 points would instead

receive $300,000.  ~~As set forth in sections 6.2, 6.3, and 6.4 below, the Settlement Trustee (with the approval of the STAC) will set an initial scaling factor and then, if the Settlement Trust corpus is larger, will increase the Settlement Trust Corpus Scaling Factor by subsequent scaling factor increases proportionate to the increased size of the Settlement Trust corpus.~~Claims Matrix and Scaling Factors as the basis to determine a Proposed Allowed Claim Amount for each Allowed Abuse Claim.  The Proposed Allowed Claim Amount (and/or the Proposed Chartered-Organization-Release Allowed Claim Amount, as applicable) agreed to by the Direct Abuse Claimant as the Allowed Claim Amount for an Allowed Abuse Claim shall be deemed to be the Protected Parties' liability for such Direct Abuse Claim (*i.e.*, the claimant's right to payment for his or her Direct Abuse Claim), irrespective of how much the holder of such Abuse Claim actually receives from the Settlement Trust pursuant to the payment provisions set forth in Article IX.  In no circumstance shall the amount of a Protected Party's legal obligation to pay any Direct Abuse Claim be determined to be any payment percentages hereunder or under the Settlement Trust Agreement (rather than the liquidated value of such Direct Abuse Claim as determined under the TDP).

**B.**   ~~5.3~~ **Claims Matrix**.  The Claims Matrix establishes ~~five~~six tiers of ~~types of abuse~~Abuse Types, and provides ~~ranges~~the range of ~~points~~potential Allowed Claim Amounts assignable to ~~a Submitted~~an Allowed Abuse Claim in each tier.  The first two columns of the Claims Matrix delineate the ~~five~~six possible tiers to which ~~a Submitted~~an Allowed Abuse Claim can be assigned based on the nature of the abuse.  The ~~base points~~Base Matrix value column for each tier represents the default ~~point value~~Allowed Claim Amount for ~~a Submitted~~an Allowed Abuse Claim assigned to a given tier, in each case based on historical settlements and litigation outcomes which included release for all BSA-related parties, including the BSA and all other putative Protected Parties to such actions, prior to application of the ~~Point~~Scaling Factors described in ~~section 5.4~~Article VIII.D (the "**Base** ~~Points~~**Matrix Value**").  The maximum ~~points~~Matrix value column for each tier represents the maximum ~~point values a Submitted~~Allowed Claim Amount for an Allowed Abuse Claim assigned to a given tier ~~can receive based on~~after application of the ~~Point~~Scaling Factors described in ~~section 5.4~~Article VIII.C (the "**Maximum** ~~Points~~**Matrix Value**").  The ultimate ~~recovery~~distribution(s) to ~~a~~the holder of ~~a Settled~~an Allowed Abuse Claim that has received a Final Determination may vary

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

upward (in the case of a larger-than-expected Settlement Trust corpus) or downward (in the case of a smaller-than-expected Settlement Trust corpus) from the ~~Base Points and Maximum Points values in the Claims Matrix~~holder's Allowed Claim Amount based on the ~~Trust Corpus Scaling Factor~~payment percentages determined by the Settlement Trustee.  If ~~a Submitted~~an Allowed Abuse Claim would fall into more than one tier, ~~the Submitted Abuse Claim~~it will be placed in the highest applicable tier.  An Abuse Claimant cannot have multiple ~~Submitted~~Allowed Abuse Claims assigned to different tiers.[2]  Commencing on the second anniversary of the Effective Date, the Settlement Trust shall adjust the valuation amounts for yearly inflation based on the CPI-U.  The CPI-U adjustment may not exceed 3% annually, and the first adjustment shall not be cumulative.

| Tier | Type of Abuse | Base ~~Points~~Matrix Value | Maximum ~~Points~~Matrix Value |
|------|---------------|------------------|---------------------|
| 1 | Anal or Vaginal Penetration by Adult Perpetrator | $600,000 | $2,700,000 |
| 2 | Oral or Digital Penetration by Adult Perpetrator<br><br>Anal or Vaginal Penetration by a Youth Perpetrator | $450,000 | $2,025,000 |
| 3 | Masturbation by Adult Perpetrator<br><br>Oral or Digital Penetration by a Youth Perpetrator | $300,000 | $1,350,000 |
| 4 | Touching of the Sexual or Other Intimate Parts (unclothed) by Adult Perpetrator | $150,000 | $675,000 |
| 5 | Touching of the Sexual or Other Intimate Parts (clothed)<br><br>Touching of the Sexual or Other Intimate Parts (clothed or unclothed) by a Youth Perpetrator<br><br>~~Sexual Abuse-No Touching~~<br><br>~~Other Abuse-Not Sexual~~<br><br>Exploitation for child pornography | $75,000 | $337,500 |
| 6 | Sexual Abuse-No Touching; Adult Abuse | $2,000 | $8,500 |

---

[2]  ~~The proposed Maximum Points values in the Claims Matrix demonstrates the anticipated maximum dollar values for Submitted Abuse Claims in tiers 1–5 when the Trust Corpus Scaling Factor is one.  However, the value of the total Settlement Trust corpus may result in a higher or lower Trust Corpus Scaling Factor depending on the amounts of recoveries from Non-Settling Insurance Companies, and total points awarded.  The Settlement Trust Corpus Scaling Factor accommodates the potential variances in the Settlement Trust corpus size by scaling the point values assigned to Submitted Abuse Claims based on the size of the Settlement Trust corpus.~~

| | | |
|---|---|---|
| | Claims. | |

~~5.4~~ ~~Points~~ **C. Scaling Factors**. After the Settlement Trustee has assigned ~~a valid Submitted~~an Allowed Abuse Claim to one of the ~~five~~six tiers in the Claims Matrix, the Settlement Trustee will utilize the ~~Points~~ Scaling Factors described below to ~~set~~determine the ~~points attributable to~~Proposed Allowed Claim Amount for each ~~Submitted~~Allowed Abuse Claim. The Scaling Factors are based on evidence regarding the BSA's and other putative Protected Parties' historical abuse settlements, litigation outcomes, and other evidence supporting the Scaling Factors. Each Allowed Abuse Claim will be evaluated for each factor by the Settlement Trustee through his or her review of the evidence obtained through the relevant Proof of Claim, Trust Claim Submission and any related or follow-up materials, interviews or examinations, as well as materials obtained by the Settlement Trust through the Document Obligations. These scaling factors can increase or decrease the ~~number of points assigned to a Submitted~~Proposed Allowed Claim Amount for an Allowed Abuse Claim depending on the severity of the facts underlying the Claim. By default, the value of each scaling factor is one (1), meaning that in the absence of the application of the scaling factor, the Base ~~Points~~Matrix Value assigned to a Claim ~~are~~is not affected by that factor. In contrast, if the Settlement Trustee determines that a particular scaling factor as applied to a given ~~Submitted~~Allowed Abuse Claim is 1.5, the ~~number of points assigned~~Proposed Allowed Claim Amount for the ~~Submitted~~Allowed Abuse Claim ~~are~~will be increased by 50%, the result of multiplying the Base ~~Points~~Matrix Value of the ~~Submitted~~Allowed Abuse Claim by 1.5. The combined effect of all scaling factors is determined by multiplying the scaling factors together then multiplying the result by the Base ~~Points~~Matrix Value of the ~~Submitted~~Allowed Abuse Claim.

**Aggravating Factors**: The Settlement Trustee may assign upward ~~Point~~ Scaling Factors to each ~~Submitted~~Allowed Abuse Claim based on the following categories:

(i) **Nature of Abuse and Circumstances**. To account for particularly severe abuse or aggravating circumstances, the Settlement Trustee may assign an upward ~~Point~~ Scaling Factor of up to 1.5 to each ~~Submitted~~Allowed Abuse Claim. The hypothetical base case scenario for this scaling factor would involve a single incident of abuse ~~during a BSA-sponsored event~~ with a single perpetrator ~~held in high regard by~~with such perpetrator having accessed the victim ~~and in a position of trust within BSA~~ as an employee or volunteer within BSA-sponsored scouting. The hypothetical base case is incorporated into the Base ~~Points~~Matrix Value in the Claims Matrix' tiers and would not receive an increase on account of this factor. By way of example, aggravating factors that can give rise to a higher scaling factor include~~, but are not limited to,~~ the following factors:

a. ~~1. Unusual~~Extended duration and/or ~~multiple circumstance~~frequency of the abuse;

b. ~~2.~~ Repeated targeting and grooming behaviors ~~including but not limited to special privileges, special activities, and attention, social relationship with parents, personal relationship with Claimant, opportunity to experience sports or activities, isolation from others,~~or use of alcohol or illicit drugs by abuser or Abuse Claimant~~, or use of or exposure to~~;

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

c. Exploitation of the Abuse Claimant for child pornography;

d. 3. coercionCoercion or threat or use of force or violence, stalking; and

e. 4. multipleMultiple perpetrators involved in sexual misconduct.

(ii) (ii) **Abuser Profile**.  To account for the alleged abuser's profile, the Settlement Trustee may assign an upward Point Scaling Factor of up to 2.0 to a Submittedan Allowed Abuse Claim.  This factor is to be evaluated relative to a hypothetical base case scenario of an unknown abuser who is only accusedinvolving a perpetrator as to whom there is no other known allegations of sexual abuse by one Abuse Claimant.  The hypothetical base case is incorporated into the Base PointsMatrix Value in the Claims Matrix' tiers and would not receive an increase on account of this factor.  An upward Point Scaling Factor may be applied for this category as follows (the Settlement Trustee may only apply the scaling factor of the single highest applicable category listed below):

1. a.  1.25 if the abuser was accused by at least one (1) other Abuse Claimantalleged victim of sexual abuse;

2. b.  1.5 if the abuser was accused by five (5) or more other Abuse Claimantsalleged victims of sexual abuse; and

3. c.  2.0 if there is evidence of prior notice to the Protected Party (*e.g.*, the inclusion of the perpetrator in the IV files (Volunteer Screening Database) for abuse reasons) or if the abuser was accused by ten (10) or more other Abuse Claimantsalleged victims of sexual abuse.

In addition, an upward Point Scaling Factor may also be applied for this category if the Protected Party(ies) knew, or had reason to know, that the alleged perpetrator was likely to commit acts of Abuse against individuals involved in Scouting.

(iii) (iii) **Impact of the Abuse**.  To account for the impact of the alleged abuse on the Abuse Claimant's mental health, physical health, inter-personal relationships, vocational capacity or success, academic capacity or success, and whether the alleged abuse at issue resulted in legal difficulties for the Abuse Claimant, the Settlement Trustee may assign an upward Point Scaling Factor of up to 1.5.  This factor is to be evaluated relative to a hypothetical base case scenario of a victim of abuse who suffered the typical level of abuse-related distress within the tier to which the SubmittedAllowed Abuse Claim was assigned.  The hypothetical base case is incorporated into the base pointsBase Matrix Values in the Claims Matrix' tiers and would not receive an increase on account of this factor.  The Settlement Trustee will consider, along with any and all other relevant factors, whether the abuse at issue manifested or otherwise led the Abuse Claimant to experience or engage in behaviors resulting from:

1. a. Mental Health Issues:  This includes but is not limited to anxiety, depression, post-traumatic stress disorder, substance abuse, addiction, embarrassment, fear, flashbacks, nightmares, sleep issues, sleep disturbances, exaggerated startle response, boundary issues, self-destructive behaviors, guilt, grief, homophobia, hostility, humiliation, anger, isolation, hollowness, regret, shame, isolation, sexual addiction, sexual problems, sexual identity

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

confusion, low self-esteem or self-image, bitterness, suicidal ideation ~~and~~, suicide attempts, and hospitalization or receipt of treatment for any of the foregoing.

~~2.~~ b. Physical Health Issues:  This includes ~~but is not limited to~~ physical manifestations of emotional distress, gastrointestinal issues, headaches, high blood pressure, physical manifestations of anxiety, erectile dysfunction, heart palpitations, sexually-transmitted diseases, physical damage caused by acts of abuse, reproductive damage, self-cutting ~~and~~, other self-injurious behavior, and hospitalization or receipt of treatment for any of the foregoing.

~~3.~~ c. Interpersonal Relationships:  This includes ~~but is not limited to~~ problems with authority figures, hypervigilance, sexual problems, marital difficulties, problems with intimacy, lack of trust, isolation, betrayal, impaired relations, secrecy, social discreditation and isolation, damage to family relationships, and fear of children or parenting.

~~4.~~ d. Vocational Capacity:  This includes ~~but is not limited to~~ under- and un-employment, difficulty with authority figures, difficulty changing and maintaining employment, feelings of unworthiness, or guilt related to financial success.

~~5.~~ e. Academic Capacity:  This includes ~~but is not limited to~~ school behavior problems.

~~6.~~ f. Legal Difficulties:  This includes ~~but is not limited to~~ criminal difficulties, bankruptcy, and fraud.

**Potential Mitigating Factors**.  The Settlement Trustee may assign a ~~Point~~ Scaling Factor in the range of ~~0~~0.01 to 1.0 to each ~~Submitted~~Allowed Abuse Claim to decrease the ~~points awarded to~~Proposed Allowed Claim Amount for such Claim.  This factor is to be evaluated relative to a hypothetical base case scenario of an abuse claim with solidly credible evidence of abuse ~~that occurred during a BSA sponsored event involving a~~and perpetrator ~~held in high regard and in a position of trust within BSA~~that accessed the victim as an employee or volunteer within BSA-sponsored scouting.  The hypothetical base case is incorporated into the ~~base points~~Base Matrix Values in the Claims Matrix[2] tiers and would not receive a decrease on account of this factor.  Such factors may include ~~but are not limited to~~ the following:

(i) ~~i.~~ **Absence of Protected Party Relationship or Presence of Another (Non-Protected Party) Responsible Party**.

a. In certain circumstances, a Protected Party's responsibility for a perpetrator may be factually or legally attenuated~~,~~ or mitigated~~, or non-existent~~.  For example, the perpetrator may have also maintained a relationship with the Abuse Claimant through a separate affiliation, such as a school, religious organization, or as a family member of the Abuse Claimant; or the abuse occurred in settings ~~unrelated to Scouting or~~where a Protected Party did not have the ability or responsibility to exercise control.  By way of non-exhaustive example, familial abuse—even if the perpetrator was ~~also~~ a Protected Party employee and the abuse occurred on a Scouting activity—should result in a significant reduction ~~or wholesale elimination, of points~~of the Proposed Allowed Claim Amount.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

b. If an Abuse Claimant did not file a Chapter 11 POC for his or her Direct Abuse Claim but is otherwise deemed to have timely submitted an Abuse Claim Proof of Claim to the Settlement Trust as set forth in Article IV.A above, the Settlement Trustee shall establish and apply a mitigating Scaling Factor that accounts for the lack of inclusion of the BSA in such Direct Abuse Claim.

c. If there is a Chartered Organization that is not a Protected Party that shares responsibility for the abuse alleged in a Direct Abuse Claim or Future Abuse Claim, the Settlement Trustee shall determine and apply a mitigating Scaling Factor that accounts for the Chartered Organization's share of the total Proposed Allowed Claim Amount after applying all other Scaling Factors. The Abuse Claimant may have a cause of action against a Chartered Organization under applicable law for a portion of its Direct Abuse Claim. By way of example, if the Settlement Trustee determines after evaluation of an Allowed Abuse Claim and application of all of the other Scaling Factors that the Proposed Allowed Claim Amount for such Claim is $1,800,000, but that a Chartered Organization that is not a Protected Party is one-third responsible for the Allowed Abuse Claim, the Settlement Trustee will – as a final Scaling Factor – apply a Scaling Factor of 0.66 to reduce the Proposed Allowed Claim Amount to $1,200,000.

ii. (ii) **Other Settlements, Awards, Contributions, or Limitations**. The Settlement Trustee should consider the amounts of any settlements or awards already received by the Abuse Claimant from other, non-Protected Party sources as well as expected contributions from other, non-Protected Party sources that are related to the abuse. The Settlement Trustee may consider any further limitations on the Abuse Claimant's recovery in the tort system. By way of example, the Settlement Trustee should assign an appropriate ~~Point~~ Scaling Factor to ~~Submitted~~Allowed Abuse Claims capped by charitable immunity under the laws of the jurisdiction where the abuse occurred.

iii. ~~Defectiveness~~(iii) **Statute of Limitations or Repose**. If the ~~Abuse Claimant filed a defective Proof of Claim or filed its Proof of Claim after the Bar Date, or if the~~ evidence ~~provided~~presented by the Abuse Claimant ~~indicates~~results in the Settlement Trustee concluding that the ~~Submitted~~subject Abuse Claim ~~is time-barred based on prevailing law in the jurisdictions in which the abuse occurred~~could be dismissed or denied in the tort system due to the passage of a statute of limitations or due to a statute of repose, the Settlement Trustee ~~may reduce the points assigned to such Claim by assigning~~shall apply a ~~Point~~ Scaling Factor of ~~less than one. The~~.01; *provided, however, the* Settlement Trustee ~~should~~will weigh the strength of ~~the~~any relevant evidence ~~supporting~~submitted by the ~~Submitted~~ Abuse ~~Claim~~Claimant to determine whether ~~such Claim should receive mitigation on account of its defectiveness or untimeliness. The Settlement Trustee may assign a mitigating factor of zero (0) in cases where the Settlement Trustee determines that the Submitted Abuse Claim is fully barred, but may, however, assign a factor of up to one (1) if the Settlement Trustee determines that the evidence supporting the Submitted Abuse Claim warrants distribution from the Settlement Trust despite its defectiveness or untimeliness.~~

5/16/2021 11:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

iv. ~~**Incomplete or Suspicious Evidence of Abuse**. If the evidence provided by the Abuse Claimant does not establish by a preponderance of the evidence that the abuse occurred, the identity of the abuser, the location of the abuse, or when the abuse occurred, the Settlement Trustee shall reduce the points of the Submitted Abuse Claim by assigning a Point Scaling Factor of less than one. If the Settlement Trustee believes the evidence provided is deliberately false or misleading, the Settlement Trustee will assign a Point Scaling Factor of zero (0).~~

v. ~~**Absence of Notice**. If the evidence provided by the Abuse Claimant does not establish by a preponderance of the evidence that the Protected Party(ies) knew, or had reason to know, that the alleged perpetrator was likely to commit acts of Abuse against individuals involved in Scouting, the Settlement Trustee shall reduce the points assigned to such Claim by assigning a Point Scaling Factor of less than one. The Settlement Trustee should weigh the strength of the evidence demonstrating knowledge of the risk of potential abuse by the perpetrator to determine the appropriate factor of mitigation.~~<ins>the statute of limitations could be tolled under applicable law based on a Protected Party's conduct, and may apply a higher Scaling Factor if such evidence demonstrates to the Settlement Trustee that tolling would be appropriate under applicable state law; *provided, further,* any Direct Abuse Claim that is substantially reduced pursuant to this mitigating Scaling Factor that becomes the subject of statute of limitations revival legislation may be re-determined in the sole discretion of the Settlement Trustee.</ins>

~~5.5~~ ~~**Claims**~~<ins>**D.** **Allowed Abuse Claim** **Calculus**</ins>. After the Settlement Trustee ~~has assigned a Submitted~~<ins>assigns an Allowed</ins> Abuse Claim to a ~~claim~~<ins>Claims Matrix</ins> tier and ~~determined~~<ins>determines</ins> the appropriate ~~Point~~ Scaling Factors ~~to~~<ins>that</ins> apply to the Claim, the ~~total points to be assigned to~~<ins>Proposed Allowed Claim Amount for</ins> the ~~Submitted~~<ins>Allowed</ins> Abuse Claim ~~are to be determined as~~<ins>is</ins> the product of the Base ~~Points~~<ins>Matrix Value</ins> of the Claim and the ~~Point~~ Scaling Factors applied to the Claim. In no event can ~~a Submitted~~<ins>an Allowed</ins> Abuse Claim's ~~point value~~<ins>Proposed Allowed Claim Amount (or Allowed Claim Amount)</ins> exceed the Maximum ~~Points value~~<ins>Matrix Value</ins> for the Claim's assigned <ins>Claims Matrix</ins> tier. By way of example, if ~~a Submitted~~<ins>an Allowed</ins> Abuse Claim is determined by the Settlement Trustee to be a tier 1 claim ~~with a (~~<ins>(</ins>Base ~~Point value~~<ins>Matrix Value</ins> of $600,000~~)~~ with a ~~Point~~ Scaling Factor of 1.5 for the nature and circumstances of the abuse, and a mitigating ~~point scaling factor~~<ins>Scaling Factor</ins> of 0.75, and no other ~~Point~~ Scaling Factors, the ~~number of points assigned to the Claim (the ~~Proposed <ins>Allowed</ins> Claim ~~Valuation)~~<ins>Amount for the Allowed Abuse Claim</ins> would be $675,000 ~~points~~, calculated as $600,000 x 1.5 x 0.75 = $675,000. As a further example, if, in addition to the above ~~Point~~ Scaling Factors, the same ~~Submitted~~<ins>Allowed</ins> Abuse Claim had an additional aggravating ~~Point~~ Scaling Factor of 2.0 on account of the ~~alleged~~ abuser's profile, the ~~points assigned to~~<ins>Proposed Allowed Claim Amount for</ins> the <ins>Allowed</ins> Abuse Claim ~~(the Proposed Claim Valuation)~~ would be ~~twice as much, namely~~ $1,350,000 (~~calculated as~~ $600,000 x 1.5 x .75 x 2.0). ~~If, on the other hand, for example the Settlement Trustee believes the evidence provided for the Submitted Abuse Claim was deliberately false or misleading, the Settlement Trustee will assign a mitigating Point Scaling Factor of zero, in which case the Claim would be assigned a point value (the Proposed Claim Valuation) of zero.~~

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]
25

~~To determine the dollar value for each Submitted Abuse Claim, the Settlement Trustee will multiply the point value of the Claim by the Trust Corpus Scaling Factor. In the above example of a Submitted Abuse Claim assigned a point value of 1,350,000, if the Trust Corpus Scaling Factor is 1/3, the Submitted Abuse Claim would be valued at $450,000 (1,350,000 x 1/3). If instead the Trust Corpus Scaling Factor is one, the Submitted Abuse Claim would be valued at $1,350,000. If the Settlement Trust corpus exceeds its expected value and the Trust Corpus Scaling Factor is 1.5,~~ except as otherwise provided herein with respect to ~~Submitted Abuse Claims litigated to final judgement in the tort system, the Submitted Abuse Claim would be valued at $2,025,000 (1,350,000 x 1.5). In the other example above of a Submitted Abuse Claim assigned a point value of zero, the Claim's dollar value would be $0.~~

**E.** **Proposed Chartered-Organization-Release Allowed Claim Amount**. After determining the Proposed Allowed Claim Amount for an Allowed Abuse Claim, the Settlement Trustee shall calculate the Proposed Chartered-Organization-Release Allowed Claim Amount, if any. The Proposed Chartered-Organization-Release Allowed Claim Amount shall be determined by re-calculating the Proposed Allowed Claim Amount by removing the applicable mitigating Scaling Factor adjustment reflecting the absence of the Chartered Organization as another potentially responsible party as set forth in Article VIII above. For the avoidance of doubt, in no event shall the Proposed Chartered-Organization Release Allowed Claim Amount be more than the Maximum Matrix Value in the applicable tier for such Allowed Abuse Claim.

~~Article VI~~**ARTICLE IX**

**PAYMENT OF ~~SETTLED CLAIMS~~FINAL DETERMINATION ALLOWED ABUSE CLAIM**

~~6.1~~    ~~**Settled Claim Payments**. After a Submitted Abuse Claim becomes a Settled Claim, as described above in Article IV~~

**A.** **Payment Upon Final Determination**. Only after the Settlement Trustee has established an Initial Payment Percentage in accordance with Section 4.1 of the Settlement Trust Agreement, then once there is a Final Determination of an Abuse Claim pursuant to Article VII.F, the Claimant will receive a payment of such Final Determination based on the Payment Percentage then in effect as described in Article IX.B and IX.C. For the purpose of payment by the Settlement Trust, a Final Judicial Determination (as defined in Article XII.H hereof) shall constitute a Final Determination.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]
26

**B.    Initial Payment Percentage**.  After the Claimant accepts the Proposed Allowed Claim Amount and there is a Final Determination of the Abuse Claim, the Settlement Trust shall pay an initial distribution ("**Initial Distribution**") ~~to~~based on the ~~holder of such Settled Claim within 30 days of the Claim becoming a Settled Claim and the Settlement Trust establishing the~~ Initial Payment Percentage established by the Settlement Trustee in accordance with the Settlement Trust ~~Corpus Scaling Factor (as defined below)~~Agreement.

~~6.2    **Initial Distribution Payment Scaling Factor**.   After analyzing the Submitted Abuse Claims and determining the number of Submitted Abuse Claims and the likely, aggregate Proposed Claim Valuations for all Settled Claims and value of the Settlement Trust Assets at that time, the Settlement Trustee and the STAC shall determine, pursuant to the terms and conditions set forth in the Trust Agreement, the appropriate initial Settlement Trust corpus scaling factor (the "Initial Settlement Trust Corpus Scaling Factor").   For this purpose, the Settlement Trustee will calculate the Initial Settlement Trust Corpus Scaling Factor as the ratio of the then available Settlement Trust Assets (accounting for future Settlement Trust operating expenses and Submitted Abuse Claims litigated in the tort system pursuant to Article IX) to the total points assigned to all Submitted Abuse Claims (accounting for Future Abuse Claims).   By way of example, if the available Settlement Trust Assets are $1.5 billion and the Settlement Trustee calculates the total points assigned to all Submitted Abuse Claims to be 4.5 billion, the Initial Settlement Trust Corpus Scaling Factor would be one third, meaning that the cash payment value of a point for initial payment purposes is $1.00 for every 3 points.~~

~~6.3    **Payment of Initial Distribution**.   The Settlement Trust will make an Initial Distribution to each holder of a Settled Claim based on the Initial Settlement Trust Corpus Scaling Factor while at the same time maintaining sufficient assets in the Settlement Trust for payment of operating expenses, additional Settled Claims and lawsuits against the Settlement Trust.   With respect to Settled Claims that are Insured Abuse Claims (as defined below), the~~

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]
27

Settlement Trustee shall make such Initial Distribution (and any further distributions) regardless of the status of any litigation seeking coverage from any Insurance Companies.

6.4 **Subsequent Payments**. As the Settlement Trust obtains additional assets through indemnity payments and recoveries from coverage litigation or settlements with Non-Settling Insurance Companies (or otherwise), or determines that amounts reserved for operating expenses can be reduced, the Settlement Trust's corpus will increase and more funds will become available for distribution to Abuse Claimants on account of Settled Claims. Consequently, every six months after the payment of the Initial Distribution, the Settlement Trustee shall conduct an evaluation of the total value of the Settlement Trust Assets then available for distribution, and the aggregate points value of Settled Claims. In consultation with the STAC, the Settlement Trustee will then determine when subsequent distributions (each a "**Subsequent Distribution**") should be made to Abuse Claimants on account of Settled Claims and at what additional factor, by updating the Settlement Trust Corpus Scaling Factor (each additional factor, a "**Subsequent Settlement Trust Corpus Scaling Factor**"). Holders of Settled Claims that have not yet received an Initial Distribution prior to the Settlement Trustee's determination to make a Subsequent Distribution shall receive as an Initial Distribution the points value of their Claim multiplied by the Initial Settlement Trust Corpus Scaling Factor plus any Subsequent Settlement Trust Corpus Scaling Factor(s). By way of example, if a Settled Claim is assigned 900,000 points, and the Settlement Trust has established an Initial Settlement Trust Corpus Scaling Factor of one third and a Subsequent Settlement Trust Corpus Scaling Factor of one sixth before the Claim becomes a Settled Claim, the Abuse Claimant holding such Claim will receive an initial payment of $450,000, or the sum of the product of 900,000 x 1/3 ($300,000) plus the product of 900,000 x 1/6 ($150,000).

28

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

~~Payments will be made to holders of Insured Abuse Claims and uninsured Abuse Claims using the same Settlement Trust Corpus Scaling Factor and in the same manner as described in this Article VI.~~

**C.** **Supplemental Payment Percentage**.  When the Settlement Trustee determines that the then-current estimates of the Settlement Trust's assets and its liabilities, as well as then-estimated value of then-pending Abuse Claims, warrant additional distributions on account of the Final Determinations, the Settlement Trustee shall set a Supplemental Payment Percentage in accordance with the Settlement Trust Agreement.  Such Supplemental Payment Percentages shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage.  Claimants whose Abuse Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an Initial Distribution equal to the aggregate of the Initial Payment Percentage and all prior Supplemental Payment Percentages set by the Settlement Trustee.  For the avoidance of doubt, the Allowed Claim Amount of each Allowed Abuse Claim after Final Determination shall be deemed to be the Protected Parties' liability for such Allowed Abuse Claim irrespective of how much the holder of such Abuse Claim actually receives from the Settlement Trust pursuant to the payment provisions set forth in this Article IX.  For example if the Allowed Claim Amount for an Allowed Abuse Claim that has received a Final Determination is $1,350,000, even if the Settlement Trust distributes less than $1,350,000 to the Abuse Claimant on account of such Allowed Abuse Claim based on application of the Initial Payment Percentage and any Subsequent Payment Percentage(s), the Allowed Claim Amount for the Abuse Claim is still $1,350,000.

**D.** ~~6.5~~ **Release**.  In order for ~~a Submitted~~an Allowed Abuse Claim to ~~become~~receive a ~~Settled Claim~~Final Determination and for the relevant Abuse Claimant to receive any payment from the Settlement Trust, the Abuse Claimant must submit an executed form of release to be developed by the Settlement Trustee in consultation with Reorganized BSA.  Payments made by the Settlement Trust to the holder of ~~a Settled~~an Allowed Abuse Claim pursuant to the process and procedures described herein shall be in full and complete satisfaction of the Abuse Claimant's Allowed Abuse Claim.

~~**Article VII**~~
~~**TENDER OF INSURED ABUSE CLAIMS AND COVERAGE LITIGATION WITH INSURERS**~~

~~7.1~~ ~~**Rights of Settlement Trust Against Non-Settling Insurance Companies**~~.  The form of release agreement that a Direct Abuse Claimant who takes the Expedited Distribution Election must execute is attached as **Exhibit A**.  The form of release applicable to an Abuse Claimant who has selected a Final Determination based on the Proposed Chartered-Organization-Release Allowed Claim Amount shall execute a release in favor of the

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

Settlement Trust, the Protected Parties, and all Chartered Organizations, the form of which shall be substantially in the form of **Exhibit B** hereto.  The form of release applicable to an Abuse Claimant who has selected a Final Determination based on the Proposed Allowed Claim Amount shall execute a release in favor of the Settlement Trust and the Protected Parties, the form of which shall be substantially in the form of **Exhibit C** hereto.  The forms of release attached hereto shall be determined by the the Settlement Trustee and BSA or Reorganized BSA.

**E.** **FIFO Claims Process Queuing and Exigent Health Claims**.  The Settlement Trust shall review all Trust Claim Submissions for processing purposes on a FIFO basis as set forth below, except as otherwise provided herein with respect to Expedited Distributions or Exigent Health Claims.  An Abuse Claimant's position in the FIFO Processing Queue shall be determined as of the date of receipt of the Abuse Claimant's Trust Claim Submission.  If any Trust Claim Submissions are filed on the same date, an Abuse Claimant's position in the applicable FIFO Processing Queue vis-à-vis such other same-day claims shall be determined by the claimant's date of birth, with older Abuse Claimants given priority over younger Abuse Claimants.  An Abuse Claimant that elects expedited review on account of an Exigent Health Claim shall be moved in front of the FIFO Processing Queue no matter what the order of processing otherwise would have been under these TDP.  Following receipt of a Final Determination on account of an Exigent Health Claim, the holder of an Exigent Health Claim shall receive an Initial Distribution from the Settlement Trust (subject to the payment percentages then in effect), within thirty (30) days of executing the release as set forth in Article IX.D above.

**F.** **Source Affected Weighting**.  Notwithstanding the Initial Payment Percentage and the Supplemental Payment Percentages applied hereunder, Non-BSA Sourced Assets shall be allocated (after deducting applicable expenses) only among the Allowed Abuse Claims that could have been satisfied from that source absent the Plan's Discharge and Channeling Injunction.  The Settlement Trustee shall establish separate payment percentages in accordance with the Settlement Trust Agreement to effectuate the distribution of any Non-BSA Sourced Assets.  For the avoidance of doubt, irrespective of the establishment of any increased payment percentage under this Article IX.F and the Settlement Trust Agreement that allocates Non-BSA Sourced Assets to holders of certain eligible Allowed Abuse Claims, the maximum payment that an Abuse Claimant can recover from the Settlement Trust before all other Allowed Abuse Claims are paid in full is the Final Determination Allowed Abuse Claim Amount for his or her Claim.

**ARTICLE X**
**RIGHTS OF SETTLEMENT TRUST**
**AGAINST NON-SETTLING INSURANCE COMPANIES**

Pursuant to the Plan, the Settlement Trust will takehas taken an assignment of BSA's and any other Protected Party's (to the extent provided for in the Plan) rights and obligations under the BSA Insurance Policies.  For any Abuse Claim that the Settlement Trustee determines is a validan Allowed Abuse Claim pursuant to Article IVVII above, the Settlement Trustee will determine, based on the relevant Trust Claim Submission and any other information submitted in

5/16/2021 11:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

connection with that submission and in the materials obtained through the ~~Cooperation~~Document Obligations, whether any Non-Settling Insurance Company issued coverage that is available to respond to such Claim (an "**Insured Abuse Claim**").  The Settlement Trustee may determine that multiple Non-~~Settled~~Settling Insurance Companies have responsibility for an Insured Abuse Claim.  The Settlement Trustee shall seek reimbursement for each Insured Abuse Claim that is an Insured Abuse Claim, including the Proposed Allowed Claim Amount, from the applicable Non-Settling Insurance Company(ies) pursuant to the Insurance Policies and applicable law.  The Settlement Trustee shall have the ability to exercise all of the rights and interests in the Insurance Policies assigned to the Settlement Trust as set forth in the Plan, including the right to resolve any disputes with a Non-Settling Insurance Company regarding their obligation to pay some or all of an Insured Abuse Claim.  The Settlement Trustee will exercise those rights consistent with their duty to preserve and maximize the assets of the Settlement Trust.  The Settlement Trustee will have the ability to request further information from Abuse Claimants in connection with seeking reimbursement for Insured Abuse Claims.

7.2     ~~**Treatment of Insured Abuse Claims**.  The Settlement Trustee shall tender each Insured Abuse Claim (including the Proposed Claim Valuation)—along with all information related to the subject Insured Abuse Claim gathered pursuant to these TDP—to the applicable Non-Settling Insurance Company(ies) for review and coverage determination prior to sending the relevant Abuse Claimant his or her Valid Claim Notice.  The applicable Non-Settling Insurance Company will have 60 days to review each Insured Abuse Claim tendered to it by the Settlement Trust and provide written notice to the Settlement Trust of whether it will cover, in whole or in part, the Proposed Claim Valuation of a particular Insured Settled Claim or decline to provide coverage of such Insured Settled Claim (a "**Coverage Determination Notice**").  If the Non-Settling Insurance Company denies coverage, the Coverage Determination Notice must provide an explanation of the reason for the denial.~~

7.3     ~~**Reimbursement of Insured Abuse Claims**.  For Insured Abuse Claims that a Non-Settling Insurance Company agrees to cover pursuant to a Coverage Determination Notice, the Non-Settling Insurance Company shall reimburse the Settlement Trust for its share of the amount of the Proposed Claim Valuation for such claim, applying an assumed Settlement Trust~~

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

Corpus Scaling Factor of one (1), within 30 days of such claim becoming a Settled Claim. The decision by a Non-Settling Insurance Company to cover its share of an Insured Abuse Claim shall be deemed to be a compromise of a disputed claim and shall not have any collateral estoppel or *res judicata* effect for any future claim, nor shall it be deemed to be an admission with respect to coverage.

7.4 **Coverage Disputes**. For Insured Abuse Claims where a Non-Settling Insurance Company declines to cover pursuant to a Coverage Determination Notice, the Settlement Trust will have the right to pursue the Non-Settling Insurance Company in coverage litigation for the Non-Settling Insurance Company's share of the Proposed Claim Valuation or judgment or settlement amount, as applicable. The Settlement Trust will have the right to bring such coverage actions in one or more consolidated actions. For purposes of this section, the dollar value of an Insured Abuse Claim shall be calculated based on an assumed Trust Corpus Scaling Factor of one (1). The Settlement Trust shall also have the option to negotiate a settlement of coverage issues with each Non-Settling Insurance Company to obtain the benefit of insurance coverage under any Non-Settling Insurance Policy. All amounts recovered by the Settlement Trust through coverage litigation or settlements shall flow into the corpus of the Settlement Trust for distribution or payment of Settlement Trust operating expenses, including payment of Abuse Claims, in accordance with the Trust Agreement and these TDP.

7.5 **No Direct Action Right**. Abuse Claimants shall have no rights against the Non-Settling Insurance Companies.

7.6 **Rights of Non-Settling Insurance Companies**. Nothing in these TDP (a) shall affect, impair, or prejudice the rights and defenses of the Non-Settling Insurance Companies in

any manner; (b) shall in any way operate to, or have the effect of, impairing or having any *res judicata*, collateral estoppel, or other preclusive effect on any party's legal, equitable, or contractual rights or obligations under any Non-Settling Insurance Policy in any respect; or (c) shall otherwise determine the applicability or non-applicability of any provision of any Non-Settling Insurance Policy and any such rights and obligations shall be determined under Non-Settling Insurance Policies and applicable law. Additionally, any action by the Settlement Trust against any Non-Settling Insurance Company may be brought in a court of competent jurisdiction other than the Bankruptcy Court; *provided, however*, that nothing herein waives any right of the Settlement Trust to elect arbitration to the extent the relevant Non-Settling Insurance Policy provides for such.

7.7 **Results of Negotiation or Litigation**. If the Settlement Trustee obtains a settlement or final judgment against a Non-Settling Insurance Company, the proceeds from such judgment or settlement will flow into the Settlement Trust corpus. To the extent a deductible is owed to the Non-Settling Insurance Company in order for the Settlement Trust to obtain the insurance proceeds from a final judgment or settlement, any such deductible shall be submitted to the Settlement Trust as an Indirect Abuse Claim.

## Article VIIIARTICLE XI
## INDIRECT ABUSE CLAIMS

8.1 **Indirect Abuse ClaimsA. Indirect Abuse Claims**. To be eligible to receive compensation from the Settlement Trust, the holder of an Indirect Abuse Claim must satisfy Article IV.B hereof. Indirect Abuse Claims that become Allowed Indirect Abuse Claims shall receive distributions in accordance with Article IX hereof, *provided, however*, that any Indirect Abuse Claim shall be subordinate and junior in right to the prior payment in full of all Allowed Abuse Claims that are Direct Abuse Claims as liquidated under these TDP. An Indirect Abuse Claim asserted against the Settlement Trust shall be reviewed by the Settlement Trustee and treated as valid and paid by the Settlement Trust pursuant to the distribution methodology set forth in these TDP if (a) such Indirect Abuse Claim satisfied the requirements of the Bar Date, and is not otherwise disallowed by section 502(e) of the Bankruptcy Code (subject to the right of the holder of the Indirect Abuse Claim to seek reconsideration under section 502(j) of the

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

~~Bankruptcy Code) or subordinated under section 509(c) of the Bankruptcy Code, and (b) the holder of the Indirect Abuse Claim establishes to the satisfaction of the Settlement Trustee that (i) the holder has paid the liability and obligation of the Settlement Trust to the individual claimant to whom the Settlement Trust would otherwise have had a liability or obligation under these TDP (and which has not been paid by the Settlement Trust), (ii) the Settlement Trust and Protected Parties are forever and fully released from all liability related thereto, and (iii) the Indirect Abuse Claim is not otherwise barred by a statute of limitations or repose or by other applicable law.~~

~~8.2~~ **B. Offset**. The liquidated value of any Indirect Abuse Claim paid by the Settlement Trust shall be treated as an offset to or reduction of the full liquidated value of any Direct Abuse Claim that might be subsequently asserted against the Settlement Trust.

## ~~Article IX~~ARTICLE XII
## TORT SYSTEM ALTERNATIVE

**A.** ~~9.1~~ **Exhaustion of ~~Trust Distribution~~Claims Allowance and Reconsideration Procedures**. If an Abuse Claimant has appealed a Claim Notice through the reconsideration process described above in ~~section 4.6~~Article VII.G and the Abuse Claimant disagrees with the Settlement Trustee's ~~final~~ determination regarding ~~the validity or valuation~~allowance or allowed amount of the subject Submitted Abuse Claim, the Abuse Claimant may file a lawsuit against the Settlement Trust for reconsideration of his or her Submitted Abuse Claim in any court of competent jurisdiction (a "**Tort Election Claim**"). An Abuse Claimant that elects to file a lawsuit under this provision forfeits any Proposed Allowed Claim ~~Valuation~~Amount offered by the Settlement Trust, and recovery, if any, ~~is~~shall be limited to settlement or judgment from such lawsuit as provided herein. An Abuse Claimant that asserts a Tort Election Claim may not seek costs or expenses in the lawsuit filed against the Settlement Trust. Each party's costs of litigation shall be borne by that party.

**B. Authorization of Settlement Trustee and Settlement Trust Advisory Committee**. The Settlement Trustee, with the approval of the STAC and the Future Claimants' Representative, may authorize the commencement or continuation of a lawsuit by a Direct Abuse Claimant against the Settlement Trust to obtain the Allowed Claim Amount of a Direct Abuse Claim (a "**STAC Tort Election Claim**"). STAC Tort Election Claims shall not be required to exhaust any remedies under these TDP before commencing or continuing such lawsuit. No Abuse Claimant may pursue a STAC Tort Election Claim without the prior written approval of the Settlement Trustee, which approval may be withheld for any reason notwithstanding Article II.C.

**C.** ~~9.2~~ **Tender to Non-Settling Insurance Company**. If an Abuse Claimant ~~elects~~is authorized to file suit against the Settlement Trust as provided herein, the Settlement Trustee shall determine, based on the Trust Claim Submission and any other information obtained in connection with that submission and materials received in connection with the ~~Cooperation~~Document Obligations, whether any Non-Settling Insurance Company issued coverage that is available to respond to the lawsuit (an "**Insured Lawsuit**"). The Settlement Trustee may determine that there are multiple Non-~~Settled~~Settling Insurance Companies that have responsibility ~~for~~to defend an Insured Lawsuit. The Settlement Trustee shall ~~tender~~provide notice, and if applicable, seek defense, of any Insured Lawsuit to each Non-Settling Insurance Company from whom the Settlement Trustee determines insurance coverage may be available in accordance with the terms of each applicable Insurance Policy.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

9.3    **Acceptance of Tender**.  A Non-Settling Insurance Company shall have 60 days to determine whether to accept an Insured Lawsuit that is tendered to it.

9.4    **Limit on Settlement Trust Liability**.  An Abuse Claimant who pursues the Settlement Trust in the tort system shall not be able to receive from the Settlement Trust more than the dollar value of a Settled Claim that is assigned the Maximum Points in the applicable tier set forth in the Claims Matrix assuming a Settlement Trust Corpus Scaling Factor of one (1).  By way of example, for an Abuse Claimant asserting tier one abuse, the maximum damages amount that Abuse Claimant is allowed to sue the Settlement Trust for in the relevant tort system is $2,700,000, or 2,700,000 points (the Maximum Points in tier one) multiplied by an assumed Settlement Trust Corpus Scaling Factor of one (1).

**D.**    9.5 **Parties to Lawsuit**.  Any lawsuit commenced under section 9.1Article XII of these TDP must be filed by the Abuse Claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit.  The potential parties that may be defendants in the lawsuit shall be limited toAbuse Claimant may assert its Abuse Claim against the Settlement Trust; an as if the Abuse Claimant may not sue any ofwere asserting such claim against either the Debtors or another Protected Parties or Non-Settling Insurance CompaniesParty and the discharge and injunctions in the Plan had not been issued.

**E.**    9.6 **Defenses**.  All defenses (including, with respect to the Settlement Trust, all defenses that could have been asserted by the Debtors or Protected Parties, except as otherwise provided in the Plan) shall be available to both sides at trial; however, for any uninsured Abuse Claim or Insured Abuse Claim where no Insurance Company has agreed to provide a defense, the Settlement Trust may waive any defense and/or concede any issue of fact or law.  In cases where a(which may include any Non-Settling Insurance Company has agreed to provide a defense, such Insurance Company retains all liability defenses) at trial.

9.7    **Costs**.  Each party's costs of litigation shall be borne by that party.  An Abuse Claimant may not seek costs or expenses in the lawsuit filed against the Settlement Trust.

9.8    **Settlement or Final Judgment**.  The defending Non-Settling Insurance Company or, if no Insurance Company is defending, the Settlement Trust, is authorized to settle any lawsuit

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

by an Abuse Claimant for an amount it determines appropriate in light of the circumstances of the case, subject to the limitations that the Settlement Trust or defending Non-Settling Insurance Company may not settle any claim for an amount that exceeds the amount that exceeds its potential liability for that Abuse Claim pursuant to section 9.4.

**F.** **Settlement Trust Liability for Tort Election Claims**. An Abuse Claimant who pursues a Tort Election Claim shall have an Allowed Claim Amount against the Settlement Trust equal to the settlement or final judgment obtained in the tort system, if any, less any payments actually received and retained by the Abuse Claimant, *provided that*, any amount of such Allowed Claim Amount in excess of the Maximum Matrix Value in the applicable tier set forth in the Claims Matrix shall be subordinate and junior in right to the prior payment in full of all Direct Abuse Claims that are Allowed Abuse Claims as liquidated under these TDP (excluding this Article XII). By way of example, for an Abuse Claimant asserting tier one abuse, the maximum payment that Abuse Claimant can recover from the Settlement Trust before all other Direct Abuse Claims that are Allowed Abuse Claims are paid in full is $2,700,000 (the Maximum Matrix Value in tier one). For the avoidance of doubt, the limit on the Settlement Trust liability under this Article XII.F shall not apply or inure to the benefit of any Non-Settling Insurance Company, and the Settlement Trust shall be able to obtain coverage, subject to Article X hereof, for the full Allowed Claim Amount obtained by the Abuse Claimant through a Tort Election Claim.

**G.** 9.9 **Payment of Judgments by the Settlement Trust**. IfSubject to Article XII.F hereof, if and when an Abuse Claimant obtains a final judgment or settlement against the Settlement Trust or defending Non-Settling Insurance Company in the tort system (a "**Final Judicial Determination**"), such judgment or settlement amount shall be treated for purposes of distribution under these TDP as the Abuse Claimant's Proposed Valuation AmountFinal Determination, and such Allowed Claim Amount shall also constitute the applicable Protected Parties' liability for such Abuse Claim. Within thirty (30) days of executing the release as set forth in section 6.5Article IX.E above, the Abuse Claim in question shall become a Settlement Claim and the Abuse Claimant shall receive an Initial Distribution (based on the Initial Settlement Trust Corpus Scaling Factor and any Subsequent Settlement Trust Corpus Scaling Factor in effect at such time) from the Settlement Trust (assuming an Initial Payment Percentage has been established by the Settlement Trust at that time). Thereafter, the Abuse Claimant shall receive any Subsequent Distributionssubsequent distributions based on any Subsequent Settlement Trust Corpus Scaling Factor(s)Supplemental Payment Percentage as determined by the Settlement Trust. Under no circumstances shall the Settlement Trust pay interest under any statute on any judgments obtained by an Abuse Claimant in the tort system. Non-Settling Insurance Companies that choose to defend a lawsuit against the Settlement Trust under this Article IX shall pay the full amount of any judgment or settlement achieved by the Abuse Claimant to the Settlement Trust for distribution through these TDP.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

## ~~Article X~~ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**A.** ~~10.1~~ **Non-Binding Effect of Settlement Trust and/or Litigation Outcome**. Notwithstanding any other provision of these ~~TDP, a decision by the Settlement Trust to pay or not to pay any Submitted Abuse Claim shall not be used in, be admissible as evidence in, binding in, or have any *res judicata*, collateral estoppel, or other preclusive effect in any lawsuit or other proceeding against any other entity other than the Settlement Trust. Notwithstanding any other provision of these~~ TDP, the outcome of litigation against the Debtors by the holder of an Indirect Abuse Claim shall not be used in, be admissible as evidence in, binding in or have any other preclusive effect in connection with the Settlement Trust's resolution or valuation of an Indirect Abuse Claim.

**B.** ~~10.2~~ **Amendments**. Except as otherwise provided herein, the Settlement Trustee may not amend, modify, delete, or add to any provisions of these TDP, without the written consent of the STAC and the Future Claimants' Representative, as provided in the Settlement Trust Agreement, including amendments to preserve the value of assets of the Settlement Trust. Nothing herein is intended to preclude the STAC from proposing to the Settlement Trustee, in writing, amendments to these TDP. Notwithstanding the foregoing, neither the Settlement Trustee nor the STAC may amend these TDP to provide for materially different treatment for Abuse Claims including the Claims Matrix and Scaling Factors set forth in Article VIII. Notwithstanding the foregoing, neither the Settlement Trustee nor the STAC may amend the form of release without the consent of Reorganized BSA or remove the requirement of a release in connection with an Expedited Determination.

**C.** ~~10.3~~ **Severability**. Should any provision contained in these TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of these TDP. ~~Should any provision contained in these TDP be determined to be inconsistent with or contrary to Debtors' obligations to any Insurance Company providing Insurance Coverage to the Debtors in respect of claims for personal injury for which the Debtors have legal responsibility, the Settlement Trustee, with the consent of the STAC, may amend these TDP and/or the Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of the Debtors to said Insurance Company.~~

**D.** **Offsets**. The Settlement Trust shall have the right to offset or reduce of the Allowed Claim Amount of any Allowed Abuse Claim on a dollar for dollar basis based on any amounts paid or reasonably likely to be paid to the holder of such Claim on account of such Claim from any source other than the Settlement Trust.

**E.** ~~10.4~~ **Governing Law**. Administration of these TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware. The law governing litigation in the tort system shall be the law of the jurisdiction in which the Abuse Claimant files the lawsuit as described in Article ~~IX~~XII.

5/16/2021 14:33
AMERICAS 107404092 v6 [BSA - Global Plan TDPs.DOCX]

**EXHIBIT A-2**

**BSA TOGGLE PLAN TDP**

**CHANGED PAGES ONLY**

**TRUST DISTRIBUTION PROCEDURES OF THE**
**BOY SCOUTS OF AMERICA SETTLEMENT TRUST FOR THE BSA TOGGLE PLAN**

complete the evaluation of each Abuse Claim submitted through a Trust Claim Submission (each a "**Submitted Abuse Claim**"), the Settlement Trustee also may, but is not required to, obtain additional evidence from the Abuse Claimant or from other parties pursuant to the ~~Cooperation~~Document Agreement Obligations (as defined below).

3.3     **Cooperation**.  The Settlement Trust shall perform all obligations under the BSA Insurance Policies issued by the Insurance Companies in order to maintain coverage and obtain the benefit of coverage under such policies.  Such obligations shall include any requirement to share documents, witnesses, or other information with the Insurance Companies, to the extent required under the relevant insurance policies (the "**Trust Cooperation Obligations**").  In addition, the parties to the ~~Cooperation~~Document Agreement shall provide the Settlement Trust with documents, witnesses, or other information as provided therein (the "~~Cooperation~~**Document Agreement Obligations**" and together with the Trust Cooperation Obligations, the "**Cooperation Obligations**").  Other than their ~~Cooperation~~Document Agreement Obligations owed to the Settlement Trust, the Settlement Trust's counterparties thereto shall have no obligation to act in any capacity in the claims resolution process under these TDP.

3.4     **Deceased Abuse Claim Holders**.  The Settlement Trustee shall review the Abuse Claim of a deceased Abuse Claimant without regard to the Abuse Claimant's death, except that the Settlement Trustee may require evidence that the person submitting the Abuse Claim on behalf of the decedent is authorized to do so.

3.5     **Insured Status of Abuse Claims**.  The Settlement Trustee shall determine whether each Submitted Abuse Claim is potentially covered by a collectible Insurance Policy

Submission, materials received pursuant to the ~~Cooperation~~Document Agreement Obligations, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid or invalid. In order to make this determination, among other things, the Settlement Trustee must evaluate each Submitted Abuse Claim to determine whether the evidence viably supports a finding that:

(i) the Abuse Claimant timely filed a proper Proof of Claim in the Chapter 11 Cases prior to the Bar Date and the Claim is not barred by any statute of limitations, repose, or by other applicable law, or—if the Proof of Claim is defective or untimely, or the Claim is barred by a statute of limitations, repose, or other applicable law—the strength of the evidence supporting the Submitted Abuse Claim warrants making a distribution from the Settlement Trust to the holder of such Claim;

(ii) the Submitted Abuse Claim had not been previously resolved by litigation and/or settlement with a Protected Party or through the tort system; and

(iii) the Abuse Claimant at issue in the Submitted Abuse Claim was abused by an employee or volunteer of a Protected Party or by a Scout participant.

5.3 **Invalid Abuse Claims**. If the Settlement Trustee finds that the evidence submitted by the Abuse Claimant in a Trust Claim Submission does not support a viable claim against a Protected Party in the tort system, the Settlement Trustee shall make a determination that the Submitted Abuse Claim is invalid and provide written notice of its determination to the relevant Abuse Claimant (an "**Invalid Claim Notice**").

Such determination may be based on a conclusion that the information provided in the Trust Claim Submission is fraudulent or insufficient to demonstrate a viable claim against a Protected Party, that the Abuse Claim is time-barred or procedurally deficient, or any other grounds that the Settlement Trustee in her discretion may find appropriate. The Settlement Trustee shall have discretion to determine whether a defect in the Abuse Claimant's Proof of Claim, other than the filing of a Proof of Claim after the Bar Date and/or application of relevant

## EXHIBIT B-1

## SETTLEMENT TRUST AGREEMENT FOR THE GLOBAL RESOLUTION PLAN

## BOYS SCOUTS OF AMERICA
## SETTLEMENT TRUST AGREEMENT

This SETTLEMENT TRUST AGREEMENT is made and entered in *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (Bankr. D. Del. 2020), by and between Boy Scouts of America ("BSA" or the "Debtor"), and [●] (the "Settlement Trustee"). This Settlement Trust Agreement is entered into pursuant to the Debtor's *Third Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, dated [●] June 17, 2021 [D.I. [●]] (as amended, supplemented, or modified, the "Plan"). Unless otherwise specifically defined herein, capitalized terms used in this Settlement Trust Agreement shall have the meanings assigned to them in the Plan. Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan or herein, when used herein, have the meanings attributed to them in the Bankruptcy Code.

## RECITALS

A.      On the Petition Date, the BSA filed a voluntary petition under chapter 11 of the Bankruptcy Code. BSA continued in possession of its property and has continued to operate and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.      It is anticipated that in 2021, the Bankruptcy Court will enter an order confirming the Plan (the "Confirmation Order").

C.      The Plan anticipates the existence of the Settlement Trust and the transfer and assignment to the Settlement Trust of the Settlement Trust Assets.

D.      Pursuant to the Plan, the Settlement Trust is to use the Settlement Trust Assets to pay the compensable Abuse Claims, and meet indemnity and other obligations in accordance with the provisions of the Plan.

E.      The Settlement Trust is established for the benefit of the Beneficiaries (as defined herein) and is intended to qualify as a "qualified settlement fund" for federal income tax purposes and within the meaning of Treasury Regulations issued under section 468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"). The Settlement Trustee shall administer and maintain the Settlement Trust in compliance with all relevant guidelines for maintaining the Settlement Trust's status as a "qualified settlement fund" issued by the Internal Revenue Service (the "IRS").

F.      Pursuant to the Plan and the Confirmation Order, the Settlement Trustee shall be duly appointed as a representative of the Estate pursuant to Sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the premises and the provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## Article I
## AGREEMENT OF TRUST

**1.1      CREATION AND NAME**. The Debtor hereby creates a trust known as "Boy Scouts of America Settlement Trust," which is the Settlement Trust provided for in the Plan.

**1.2      PURPOSE**. The purpose of the Settlement Trust is to assume any liability for all Abuse Claims; to hold, preserve, maximize and administer the Settlement Trust Assets; and to direct the processing, liquidation, and payment of all compensable Abuse Claims. The Settlement Trust will

resolve Abuse Claims in accordance with the Settlement Trust Documents in such a way that the holders of similar Abuse Claims are treated equitably and in substantially the same manner.

**1.3  TRANSFER OF ASSETS**.  Pursuant to the Plan and on the Effective Date, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any Person.  The Settlement Trustee hereby agrees to accept and hold the Settlement Trust Assets in trust for the Beneficiaries (as defined herein) subject to the terms of this Settlement Trust Agreement and the Plan.  The Settlement Trustee is hereby authorized to file with governmental authorities any documents necessary or helpful to establish the Settlement Trust.

**1.4  IRREVOCABILITY**.  From and after the Effective Date, the Settlement Trust shall be irrevocable. ~~Neither the Debtors nor Reorganized BSA, nor any other Protected Party (or any other~~, except as expressly set forth herein.  No ~~party except the Settlement Trustee~~ or STAC (as ~~contemplated in the Settlement Trust Agreement~~defined herein) may alter, amend, revoke, or terminate the Settlement Trust.  No party shall have any power or authority to direct the Settlement Trustee to return any of the Settlement Trust Assets.

**1.5  BENEFICIARIES**.  The "Beneficiaries" of the Settlement Trust will be the holders of any compensable Abuse Claims (including holders of Future Abuse Claims) and the Protected Parties.

**1.6  SETTLEMENT TRUSTEE AND SETTLEMENT TRUST ADVISORY COMMITTEE**.

(a)  There will be one initial Settlement Trustee appointed to administer the Settlement Trust.  The Settlement Trustee will be considered a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code, and will be the "administrator" of the Settlement Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

(b)  A Settlement Trust Advisory Committee ("STAC") will be appointed in a manner to be specified in the Plan Supplement and consist of ~~three~~seven (7) members.  The STAC members shall be reasonably acceptable to the Debtors.  The STAC will serve in a fiduciary capacity, representing the interests of all holders of Abuse Claims.

(c)  The Settlement Trustee will be required to ~~consult with~~obtain the STAC's and Future Claimants' Representative's consent (which consent shall not be unreasonably withheld) on:

(i)  the questionnaire to be developed for distribution to holders of Abuse Claims ("Abuse Claimants") and submission to the Settlement Trust by Abuse Claimants seeking payment from the Settlement Trust;

~~(ii)  the accurate factor for scaling Abuse Claim values based on the size of the Settlement Trust Corpus (as defined herein) and total aggregate Abuse Claim values, as described in the~~ Trust Distribution Procedures ("~~TDP~~");

(ii)  ~~(iii)~~determination of the total value of Settlement Trust Assets at the intervals set forth in the Trust Distribution Procedures ("TDP");

(iii) ~~(iv)~~ the appropriate percentage of compensable Abuse Claim values to distribute as initial distributions (the "Initial Payment Percentage") and any subsequent distribution under the TDP;

(iv) ~~(v)~~ entry into any material settlements with insurers or commencement of material litigation against insurers;

(v) commencement or continuation of lawsuits asserting STAC Tort Election Claims (as defined in the TDP);

(vi) any amendments or modifications to this Trust Agreement or the TDP; ~~and[1]~~

(vii) the termination of the Settlement Trust or Litigation Trust; and

(viii) any other matters that the Plan provides require consultation with and consent of the STAC and Future Claimants' Representative.

(d) The STAC and the Future Claimants' Representative shall have no authority or ability to:

(i) modify, reject, or influence any claim allowance or Allowed Claim Amount (as defined in the TDP) under the TDP; and

(ii) amend the TDP to provide for materially different treatment for Abuse Claims including the Claims Matrix and Scaling Factors (as defined and set forth in Article VIII of the TDP).

## 1.7 ACCEPTANCE OF ASSETS AND ASSUMPTION OF LIABILITIES.

(a) In furtherance of the purposes of the Settlement Trust, the Settlement Trustee hereby accepts the trusteeship of the Settlement Trust created by this Settlement Trust Agreement and the grant, assignment, transfer, conveyance and delivery of Settlement Trust Assets to the Settlement Trust, subject to the terms and conditions set forth in this Settlement Trust Agreement, the Plan and the Confirmation Order.

(b) The Settlement Trust will assume all liabilities, obligations, and responsibilities of the Protected Parties for all Abuse Claims (including any Future Abuse Claims). In furtherance of the purposes of the Settlement Trust, the Settlement Trustee, on behalf of the Settlement Trust, hereby expressly assumes all responsibility for preserving, managing and distributing the Settlement Trust Corpus to the Beneficiaries. The Abuse Claims will be evaluated by the Settlement Trustee in accordance with the TDP. Except as otherwise provided in this Settlement Trust Agreement, the TDP or the Plan, the Settlement Trustee shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Abuse Claims that the Debtor has or would have had under applicable law.

(c) The Settlement Trustee shall have all the rights, powers and duties set forth in this Settlement Trust Agreement, the TDP (as defined herein) and the Plan, and available under applicable law, for accomplishing the purposes of the Settlement Trust. The Settlement Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the

---

[1] See also Article 4.2 herein.

AMERICAS 107111196

Settlement Trust and in accordance with applicable law. The Settlement Trustee shall have the authority to bind the Settlement Trust within the limitations set forth herein but shall for all purposes hereunder be acting in the capacity as Settlement Trustee, and not individually.

(d)     In furtherance of the purposes of the Settlement Trust, the Settlement Trustee assumes responsibility for: (a) making payments to Beneficiaries; (b) receiving, collecting, liquidating, maintaining and distributing the Settlement Trust Assets; and (c) fulfilling all other obligations of the Settlement Trust under this Settlement Trust Agreement and the Plan. The Settlement Trust will be administered consistent with the purpose of the Settlement Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Settlement Trust Assets or as otherwise provided in the Plan.

(e)     **Source of Payments**. All Settlement Trust expenses and all liabilities of the Settlement Trust with respect to Abuse Claims shall be payable solely by the Settlement Trustee out of the Settlement Trust Corpus (as defined herein).

**1.8**     ~~COOPERATION~~**DOCUMENT AGREEMENT**. The Settlement Trust will enter into the ~~Cooperation~~Document Agreement.

## Article II
## LITIGATION TRUST

**2.1**     **LITIGATION TRUST**. The Settlement Trustee and STAC will jointly decide whether a sub-trust is required by applicable law to carry forth the litigation-related objectives of this Settlement Trust. If the Settlement Trustee and STAC decide that applicable law so requires a litigation sub-trust, the Settlement Trustee shall create a sub-trust pursuant to this Settlement Trust Agreement (the "Litigation Trust") known as the "Boy Scouts of America Litigation Trust" and governed by the terms set forth in this Article 2.1 and Settlement Trust Agreement. The Litigation Trust is to be organized and established as a trust for the purpose of monetizing litigation or Claims of the Settlement Trust, including, without limitation, the Settlement Trust Causes of Action, the Insurance Actions and the Insurance Coverage Actions (collectively, the "Actions"), and making distributions of such assets to the Settlement Trust in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Litigation Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Actions and distributing proceeds of such Actions to the Settlement Trust in a timely fashion in accordance with the Plan, the Confirmation Order, the TDP, this Article 2.1, and this Settlement Trust Agreement. If created, the Litigation Trust shall have the sole responsibility for the pursuit and settlement of the Actions, and the sole power and authority to allow or settle and compromise any Actions. For the avoidance of doubt, if created, the Litigation Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is to be appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Actions.

(a)     There will be one Litigation Trustee appointed to administer the Litigation Trust. The Litigation Trustee will be considered a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code. The Settlement Trustee shall initially act as the Litigation Trustee.

(b)     On or as soon as practicable after the Effective Date, the Settlement Trust shall automatically and irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Actions and associated privileges to the Litigation Trust (the "Litigation Trust Assets"). For purposes of the transfer of documents, the Litigation Trust is an assignee and successor to the Debtor in respect of the Actions and shall be treated as such in any review of

AMERICAS 107111196

confidentiality restrictions in requested documents. For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the privileges being so assigned and transferred.

(c) Until the Litigation Trust terminates pursuant to the terms hereof, legal title to the Actions shall be vested at all times in the Litigation Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Actions to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee. For purposes of such jurisdictions, the term Litigation Trust, as used herein, shall be read to mean the Litigation Trustee.

(d) In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Actions after the Effective Date. No Person or entity may rely on the absence of a specific reference in the Plan to any Action against them as any indication that the Litigation Trustee will not pursue any and all available Actions or objections against them. Unless any Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Actions for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Actions upon, after, or as a consequence of the Confirmation Order.

(e) _Acceptance_. The Litigation Trustee accepts the Litigation Trust imposed by this Article 2.1 and agrees to observe and perform that Litigation Trust, on and subject to the terms and conditions set forth in this Article 2.1 and in the Plan.

(f) _Litigation Trust Beneficiary_. The beneficiary of the Litigation Trust shall be the Settlement Trust (the "_Litigation Trust Beneficiary_").

(g) _Authority_. The Litigation Trustee shall have the power to:

(i) prosecute Actions on behalf of the Settlement Trust as contemplated in the TDP;

(ii) hold legal title to any and all rights in or arising from the Litigation Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Trust (including any proceeds of the Litigation Trust Assets);

(iii) perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iv) protect and enforce the rights of the Litigation Trust with respect to any Litigation Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(v) determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Trust;

AMERICAS 107111196

(vi)     make all payments relating to the Litigation Trust Assets;

(vii)     assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Beneficiary, if applicable;

(viii)     prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Trust, and pay taxes properly payable by the Litigation Trust;

(ix)     without further order of the Bankruptcy Court, but subject to the terms of this Settlement Trust Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Article 2.1; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Trust Expenses and paid by the Litigation Trustee from the Litigation Trust Expense Cash Reserve;

(x)     take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Trust and the activities contemplated herein and in the TDP, the Confirmation Order and the Plan, and take all actions necessary to comply with the TDP, the Confirmation Order, the Plan, and this Article 2.1 and the obligations there and hereunder; and

(xi)     exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(x) being collectively, the "Authorized Acts").

(h)     The Litigation Trustee has the power and authority to act as trustee of the Litigation Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(i)     Notwithstanding anything herein to the contrary, the Litigation Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Actions as required or contemplated by applicable law, the TDP, the Confirmation Order, the Plan, and this Article 2.1, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Article 2.1.

(j)     Distributions. The Litigation Trustee shall distribute Cash proceeds of the Actions to the Settlement Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Trust Assets pending their monetization or other disposition during the term of the Litigation Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Trust Expenses and any other expenses incurred by the Litigation Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Article 2.1 (including, but not limited to, indemnification obligations and similar expenses).

AMERICAS 107111196

(k)     Manner of Payment or Distribution. All distributions made by the Litigation Trustee on behalf of the Litigation Trust to the Litigation Trust Beneficiary shall be payable by the Litigation Trustee directly to the Settlement Trust, as sole Litigation Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

(l)     Tax Treatment and Tax Return. It is intended for the initial transfer of the Litigation Trust Assets to the Litigation Trust to be treated for federal income tax purposes (and foreign, state, local tax purposes where applicable) as if the Debtor transferred the Litigation Trust Assets to the Litigation Trust Beneficiary and then, immediately thereafter, the Litigation Trust Beneficiary transferred the Litigation Trust Assets to the Litigation Trust.  Consistent with such treatment, (i) it is intended that the Litigation Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Litigation Trust Beneficiary will be treated as the grantor of the Litigation Trust and owner of the Litigation Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the Litigation Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Litigation Trustee also will annually prepare for the Litigation Trust Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's interest in the Litigation Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Litigation Trust Beneficiary to use in preparing their U.S. federal income tax returns.

(m)     The Litigation Trustee shall determine the fair market value of the Litigation Trust Assets as of the Effective Date, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(n)     Withholding. The Litigation Trustee may withhold from any amount distributed from the Litigation Trust to the Litigation Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Trust Beneficiary. As a condition to receiving any distribution from the Litigation Trust, the Litigation Trustee may require that the Litigation Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

(o)     Termination.  The Litigation Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines, in consultation with the Settlement Trustee (to the extent the Settlement Trustee is a different Person) and STAC, that the Actions are not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Trust Beneficiary under the Plan and this Settlement Trust Agreement have been made, but in no event shall the Litigation Trust be dissolved later than fifteen (15) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such tenth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Trust Assets; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of

AMERICAS 107111196

the Litigation Trust Assets, by the Bankruptcy Court within six months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes.

(p) <u>Continuance of the Litigation Trustee for Winding Up</u>. After dissolution of the Litigation Trust and for purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed. Prior to the final distribution of all remaining Litigation Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Trust, until such time as the winding up of the Litigation Trust is completed. Upon the dissolution of the Litigation Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>"). Upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as an expense of the Litigation Trust, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee. At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

(q) Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Trust, the Litigation Trustee shall have no further duties or obligations hereunder.

(r) Articles 4, 5, 6, 7, 8 and 9 of this Settlement Trust Agreement are incorporated by reference with regard to the Litigation Trust and Litigation Trustee, such that any mention of the Settlement Trust and Settlement Trustee within those Articles shall be interpreted to include the Litigation Trust and Litigation Trustee.

**Article III**
**CORPUS OF THE SETTLEMENT TRUST**

**3.1 SETTLEMENT TRUST COMPOSITION**. The Settlement Trust will be funded through the transfer of the Settlement Trust Assets, any other contributions dictated by the Plan, and any income, profits, and proceeds realized, received or derived from such assets subsequent to the transfer of such assets to the Settlement Trust. The Settlement Trust shall be liable for interest payable on any contributions made in the form of notes payable, as contemplated by the Plan.

The proceeds of any recoveries from any litigation or Claims of the Settlement Trust or Litigation Trust, including, without limitation, the Actions, will be deposited in the Settlement Trust's accounts and become the property of the Settlement Trust. The Settlement Trust shall have the right to enforce the Plan and any of the other Plan Documents (including, among others, the ~~Cooperation~~Document Agreement) according to their respective terms, including the right to receive the Settlement Trust Assets as provided in the Plan.

**3.2 TRANSFER TO SETTLEMENT TRUSTEE**. On the Effective Date, pursuant to, and at such times set forth in the Plan, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any

AMERICAS 107111196

Person in accordance with Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Plan. The Settlement Trustee, on behalf of the Settlement Trust, shall receive the Settlement Trust Assets when they are transferred to the Settlement Trust.

**3.3 SETTLEMENT TRUSTEE'S RIGHT TO AND TITLE AND INTEREST IN SETTLEMENT TRUST ASSETS.** Upon the transfer of the Settlement Trust Assets, the Settlement Trustee succeeds to all of the Debtor's, and Reorganized BSA's, the Estate's, and any other Protected Party's right to and title and Interest in the Settlement Trust Assets, and the Debtor, and Reorganized BSA, and the Estate, and any other Protected Party will have no further right to or title or interest in or with respect to the Settlement Trust Assets or this Settlement Trust, except as provided herein, in the Plan or the Confirmation Order.

**3.4 NO TAX ON TRANSFERS TO SETTLEMENT TRUST.** Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Settlement Trust or Litigation Trust, including any deeds, bills of sale or assignments executed in connection with any transfer to the Settlement Trust, or receipt, or disposition/sale of assets by the Settlement Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

**3.5 SPENDTHRIFT PROVISION.** To the fullest extent permitted by law, neither the principal nor income of the Settlement Trust or Litigation Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

**3.6 SETTLEMENT TRUST CORPUS.** The entirety of the Settlement Trust's corpus (the ("Settlement Trust Corpus") shall be available to pay ~~eligible~~Allowed Abuse Claims (as defined in the TDP) and Settlement Trust and Litigation Trust expenses authorized by this Settlement Trust Agreement and the Settlement Trust Documents. The Settlement Trust Corpus shall be allocated, administered, and distributed as provided in the Plan, Confirmation Order and the TDP.

**3.7 FUTURE TORT CLAIM RESERVE FUND.** The Settlement Trustee, in consultation with the Future Claimants' Representative, shall establish a reserve, subject to approval by the Bankruptcy Court.

**3.8 PRIVILEGED AND CONFIDENTIAL INFORMATION.** The transfer or assignment of any Privileged Information to the Settlement Trustee or Litigation Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto. Further, with respect to any such privileges: (a) they are transferred to or contributed for the sole purpose of enabling the Settlement Trustee to perform his or her duties to administer the Settlement Trust and for no other purpose; (b) they are vested solely in the Settlement Trustee and not in the Settlement Trust, the STAC, or any other Person, committee or subcomponent of the Settlement Trust, or any other Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Abuse Claim; (c) they shall be preserved and not waived; and (d) no Privileged Information shall be publicly disclosed by the Settlement Trustee or the Settlement Trust or communicated to any Person not entitled to receive such information or in a manner that would diminish the protected status of any such information. Notwithstanding the foregoing, nothing shall preclude the Settlement Trustee from providing Privileged Information to any Insurance Company as necessary to preserve, secure, or obtain the benefit of any rights under any Insurance Policy. Additionally, the Settlement Trustee will treat and maintain as confidential all information designated confidential by the BSA or Reorganized BSA, including, without limitation, rosters, personnel files and other business confidential materials.

AMERICAS 107111196

**Article IV**
**POWERS AND DUTIES OF SETTLEMENT TRUSTEE**

     **4.1**     **POWERS AND DUTIES**.  The Settlement Trustee shall have, in addition to any other powers and discretions conferred on the Settlement Trustee by applicable trust law (to the extent not inconsistent with applicable Bankruptcy law, this Settlement Trust Agreement and/or the Plan), the Plan and other provisions in this Settlement Trust Agreement, the following powers and discretions:

          (a)     to establish an Initial Payment Percentage and any subsequent distribution percentage(s);

          (b)     ~~(a)~~ to distribute the Settlement Trust Corpus to Abuse Claimants pursuant to the terms and conditions and the procedures for distributions established in the Trust Distribution Procedures;

          (c)     ~~(b)~~ to assist the Litigation Trustee to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Settlement Trust, including the Actions;

          (d)     ~~(c)~~ to assist the Litigation Trustee to prosecute claims against Non-Settling Insurance Companies on behalf of holders of Abuse Claims as contemplated in the TDP;

          (e)     ~~(d)~~ to enforce the Settlement Trust's rights in the Settlement Trust Assets, including through judicial proceedings or bankruptcy/insolvency proceedings;

          (f)     ~~(e)~~ to assist the Litigation Trustee to maintain, administer, preserve, or pursue Insurance Coverage and the Insurance Action Recoveries on behalf of the Settlement Trust;

          (g)     ~~(f)~~ to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purposes of the Settlement Trust or to maintain and administer the Settlement Trust;

          (h)     ~~(g)~~ to open and maintain bank accounts for the Settlement Trust;

          (i)     ~~(h)~~ to seek enforcement of the Plan Documents;

          (j)     ~~(i)~~ to retain professionals, advisors and other agents to assist in the administration of the Settlement Trust and to advise on any matter pertinent to the Plan or Settlement Trust Documents (the "Settlement Trust Professionals");

          (k)     ~~(j)~~ to file (or cause to be filed) statements, returns, or disclosures relating to the Settlement Trust that are required by any Governmental Unit;

          (l)     ~~(k)~~ to comply with all requirements imposed by applicable law, rule or regulation;

          (m)     ~~(l)~~ to comply with Bankruptcy Code section 345 with regard to investment of Settlement Trust Assets;

          (n)     to work with the Claims Administrator to institute auditing and other procedures to detect and prevent the allowance of Abuse Claims based on fraud, as contemplated by the TDP;

AMERICAS 107111196

(o)     to execute any other actions contemplated by the TDP.

**4.2     LIMITATIONS ON THE SETTLEMENT TRUSTEE**.  Notwithstanding anything in this Settlement Trust Agreement or the Plan to the contrary, the Settlement Trustee shall not do or undertake any of the following:

(a)     to guaranty any debt;

(b)     to make or enter into any loan of Settlement Trust Assets;

(c)     to make any transfer or distribution of Settlement Trust Assets other than those authorized by the Settlement Trust Documents;

(d)     to engage in any trade or business with respect to the Settlement Trust Assets or proceeds therefrom, other than managing such assets;

(e)     to engage in any investment of the Settlement Trust Assets, other than as explicitly authorized by this Settlement Trust Agreement;

(f)     to engage in any activities inconsistent with the treatment of the Settlement Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under section 468B of the Tax Code;

(g)     amend the TDP to provide for materially different treatment for Abuse Claims including the Claims Matrix and Scaling Factors (as defined and set forth in Article VIII of the TDP).

(h)     amend, modify, delete, or add to the provisions of the TDP without the written consent of both the STAC and the Future Claimants' Representative.

**Article V**
**TERMINATION OF THE SETTLEMENT TRUST**

**5.1     WHEN TERMINATION SHALL OCCUR**.  The Settlement Trustee shall terminate the Settlement Trust after:

(a)     the completion of the Settlement Trustee's administration (including the recovery of all expected Settlement Trust Assets) and distribution of the Settlement Trust Assets, and the Settlement Trustee's full performance of all duties set forth in the Settlement Trust Documents; and

(b)     the Bankruptcy Court's entry of a final order approving the termination of the Settlement Trust.

Notwithstanding any other provision of this Settlement Trust Agreement, the Settlement Trust shall terminate no later than the tenth (10th) anniversary of the Effective Date.

**5.2     TERMINATION PROCEDURES**.  After termination of the Settlement Trust and solely for the purpose of liquidating and winding up its affairs, the Settlement Trustee shall continue to act as Settlement Trustee until its duties hereunder have been fully performed.  The Settlement Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Settlement Trustee until distribution of all the Settlement Trust Assets.  For purposes of this provision, Settlement Trust Assets will be deemed distributed when the total amount remaining in the Settlement Trust is less than $50,000 and no further Actions are pending or have yet to be brought by the Litigation

AMERICAS 107111196

Trustee. At the Settlement Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (a) the first anniversary of the final distribution of the Settlement Trust Assets; and (b) the date until which the Settlement Trustee is required by applicable law to retain such books, records, documents and files; provided, however, that, notwithstanding the foregoing, the Settlement Trustee shall not destroy or discard any books, records, documents or files relating to the Settlement Trust without giving the Reorganized BSA.

**5.3     TERMINATION DISTRIBUTION**.  Upon termination of the Settlement Trust, the Settlement Trustee will pay all fees and expenses of the Settlement Trust, after which, the Settlement Trustee will distribute all remaining assets to charity to be chosen by the BSA.

**5.4     DISCHARGE, EXCULPATION AND EXONERATION**.  Upon termination of the Settlement Trust and accomplishment of all activities described in this Article 5, the Settlement Trustee and its Settlement Trust Professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Settlement Trustee or his agents or representatives).  The Settlement Trustee may, at the expense of the Settlement Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

**Article VI**
**IMMUNITY, LIABILITY AND INDEMNIFICATION**

**6.1     LIMITATIONS ON LIABILITY**.  Neither the Settlement Trustee nor any of its duly designated agents, representatives or Settlement Trust Professionals shall be liable for any act or omission taken or omitted to be taken by the Settlement Trustee in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Settlement Trustee or its agents or representatives.  The Settlement Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys-at-law, accountants, financial advisors and agents and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Settlement Trustee shall be under no obligation to consult with its attorneys-at-law, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Trustee, unless such determination is based on the Settlement Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.

**6.2     NO RECOURSE AGAINST SETTLEMENT TRUSTEE PERSONALLY**.  No recourse shall ever be had, directly or indirectly, against the Settlement Trustee personally, or against any employee, contractor, agent, representative, attorney-at-law, accountant or other Settlement Trust Professional retained in accordance with the terms of this Settlement Trust Agreement or the Plan by the Settlement Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or trust agreement whatsoever executed by the Settlement Trustee in implementation of this Settlement Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Settlement Trustee under the Plan for any purpose authorized by this Settlement Trust Agreement or the Plan, it being expressly understood and agreed that any such promise, contract, instrument, undertaking, obligation, covenant or trust agreement entered into by the Settlement Trustee, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Settlement Trust Assets and shall be evidence only of a right of payment out of the Settlement Trust Assets.  Notwithstanding the foregoing, the Settlement Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or

AMERICAS 107111196

fraud; and if liability on such grounds is established, recourse may be had directly against the Settlement Trustee.  The Settlement Trust will not be covered by a bond.

**6.3    INDEMNIFICATION**.

(a)    From and after the Effective Date, the Settlement Trust will indemnify the Settlement Trustee and his or her duly designated agents and representatives to the fullest extent lawful, from and against any and all claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas, damages, costs and expenses (including full reimbursement of all fees and expenses of counsel), as incurred, related to, arising out of, or in connection with the Settlement Trustee's and his or her agents' performance of their duties under the Settlement Trust Documents.

(b)    From and after the Effective Date, the Settlement Trust shall indemnify each of the Protected Parties to the fullest extent lawful, from and against any and all claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas, damages, costs and expenses (including full reimbursement of all fees and expenses of counsel), as incurred, related to, arising out of, or in connection with any Abuse Claim.

**6.4    OTHER DUTIES, OBLIGATIONS, INDEMNIFICATION**.  The Settlement Trust will also assume all duties, obligations and indemnification responsibilities outlined in the Plan and Insurance Settlement Agreements.

**Article VII**
**COMPENSATION AND EXPENSE REIMBURSEMENT OF SETTLEMENT TRUSTEE AND ITS AGENTS**

**7.1    SETTLEMENT TRUSTEE COMPENSATION**.  The Settlement Trustee will be entitled to receive compensation from the Settlement Trust and from the Settlement Trust Assets as provided in the Settlement Trust Documents.

**7.2    COMPENSATION OF SETTLEMENT TRUSTEE'S AGENTS**.  Any Person duly retained by the Settlement Trustee pursuant to this Settlement Trust Agreement or the Plan will be entitled to reasonable compensation for services rendered.

**7.3    REIMBURSEMENT OF EXPENSES**.

(a)    All reasonable and necessary Settlement Trust Expenses incurred by the Settlement Trustee and any person retained by the Settlement Trustee in performing their duties under the Settlement Trust Documents will be reimbursed by the Settlement Trust from the Settlement Trust Assets.  Settlement Trust Expenses will expressly include any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Settlement Trust Assets (including, without limitation, the prosecution of any Actions), in each case whether or not any such action results in a recovery for the Settlement Trust.

(b)    The Settlement Trust will pay all reasonable and documented Settlement Trust Expenses incurred by any Protected Party in taking any action on behalf of or at the direction of the Settlement Trust, if any.

AMERICAS 107111196

# Article VIII
## SUCCESSOR SETTLEMENT TRUSTEES

**8.1** **VACANCY CAUSED BY SETTLEMENT TRUSTEE RESIGNATION OR REMOVAL.**

(a)     The Settlement Trustee may resign at any time upon thirty (30) days' written notice to be filed with the Bankruptcy Court.  The Settlement Trustee shall, within thirty (30) days after such resignation takes effect, deliver to the successor Settlement Trustee all of the Settlement Trust Assets which were in the possession of the Settlement Trustee along with a complete list of Settlement Trust Assets and a complete accounting of all transactions engaged by the Settlement Trustee while serving as such.

(b)     The Bankruptcy Court may remove a Settlement Trustee upon finding that the Settlement Trustee has engaged in a breach of fiduciary duty.  The removal will take effect upon the date the Bankruptcy Court specifies.  In the event of removal, the Settlement Trustee shall, within thirty (30) days after such removal takes effect, deliver to the successor Settlement Trustee all of the Settlement Trust Assets which were in the possession of the Settlement Trustee along with a complete list of Settlement Trust Assets and a complete accounting of all transactions engaged in by the Settlement Trustee while serving as such**.**

**8.2** **OUTGOING SETTLEMENT TRUSTEE OBLIGATIONS**.  In the event of the resignation or removal of the Settlement Trustee, the resigning or removed Settlement Trustee shall:

(a)     Execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Settlement Trustee to effect such resignation or removal and the conveyance of the Settlement Trust Assets then held by the resigning or removed Settlement Trustee to the successor Settlement Trustee;

(b)     Deliver to the successor Settlement Trustee all documents, instruments, records and other writings relating to the Settlement Trust Assets as may be in the possession or under the control of the resigning or removed Settlement Trustee;

(c)     Otherwise assist and cooperate in effecting the assumption of the resigning or removed Settlement Trustee's obligations and functions by the successor Settlement Trustee; and

(d)     irrevocably appoint the successor Settlement Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Settlement Trustee is obligated to perform under this Settlement Trust Agreement.  Such appointment shall not be affected by the subsequent disability or incompetence of the Settlement Trustee making such appointment.  The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Settlement Trustee and the appointment of the successor Settlement Trustee.

**8.3** **APPOINTMENT OF SUCCESSOR SETTLEMENT TRUSTEE**.  Any vacancy in the office of Settlement Trustee shall be filled by the nomination of a majority of the members of the STAC, subject to the approval of the Bankruptcy Court, after notice and a hearing.

**8.4** **PRESERVATION OF RECORD OF CHANGES IN SETTLEMENT TRUSTEES**. A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Settlement Trust Agreement.

AMERICAS 107111196

**Article IX**
**SETTLEMENT TRUSTEE REPORTING AND DISCHARGE**

**9.1    ANNUAL ACCOUNTINGS**.  The Settlement Trustee shall prepare, at least annually, and upon termination of the Settlement Trust, a written accounting of the administration of the Settlement Trust listing the current assets (with fair market values) and detailing all transactions that occurred during the period covered by such accounting.  Each such accounting shall be filed with the Bankruptcy Court.

**9.2    APPROVAL OF ACCOUNTINGS AND DISCHARGE OF THE SETTLEMENT TRUSTEE**.  The Settlement Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section 8.1.  Upon the entry of an order of the Bankruptcy Court approving any such accounting, the Settlement Trustee shall be discharged from all liability, with respect to all assets listed and transactions detailed in such accounting, to the Settlement Trust, any Beneficiary or any Person who or which has had or may then or thereafter have a claim against the Settlement Trust for acts or omissions in the Settlement Trustee's capacity as the Settlement Trustee or in any other capacity contemplated by this Settlement Trust Agreement or the Plan.

**Article X**
**SECTION 468B SETTLEMENT FUND**

**10.1    GENERALLY.**

(a)    In accordance with the Plan, the Settlement Trustee will take all reasonable steps to ensure that the Settlement Trust will qualify as, and remain, a "qualified settlement fund" within the meaning of § 468B of the Tax Code, and the regulations promulgated pursuant thereto.  The Debtor is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1).  The Settlement Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

(b)    It is further intended that the transfers to the Settlement Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461- 1 (a)(2).

**10.2    EMPLOYER IDENTIFICATION NUMBER**.  Upon establishment of the Settlement Trust, the Settlement Trustee shall apply for an employer identification number for the Settlement Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

**10.3    RELATION-BACK ELECTION**.  If applicable, the Settlement Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Settlement Trust as coming into existence as a settlement fund as of the earliest possible date.

**10.4    FILING REQUIREMENTS**.  The Settlement Trustee shall cause to be filed, on behalf of the Settlement Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1).  The Debtor or Reorganized BSA shall file an election statement(s) satisfying the requirements of Treasury Regulation Section 1.468B- 1(k)(2)(ii) so that the Settlement Trust is treated as a grantor trust under Section 671 of the Tax Code and the regulations promulgated thereunder.  The election statement shall be included with the Settlement Trust's first timely filed trust income tax return.  The Debtor or Reorganized BSA shall supply to the Settlement Trustee and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which the Debtor or Reorganized BSA makes a transfer to the Settlement Trust.

AMERICAS 107111196

**10.5   BROAD POWERS OF THE SETTLEMENT TRUSTEE**.  The Settlement Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Settlement Trustee deems necessary to reasonably ensure that the Settlement Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated pursuant thereto.  Further, the Settlement Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Settlement Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

### Article XI
### BENEFICIARIES

**11.1   NAMES AND ADDRESSES**.  The Settlement Trustee shall keep a register (the "Register") in which the Settlement Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Plan, Confirmation Order and TDP.  The Settlement Trustee may rely upon this Register for the purposes of delivering distributions or notices.  In preparing and maintaining this Register, the Settlement Trustee may rely on the name and address of each Abuse Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Beneficiary to the Settlement Trustee.  The Settlement Trustee may deliver distributions and notices to counsel for any Beneficiary identified in such Beneficiary's proof of claim or proper notice of a name or address change.

**11.2   RIGHTS OF BENEFICIARIES**.  The rights of a Beneficiary under this Settlement Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of such Beneficiary.  A Beneficiary shall have no title to, right to, possession of, management of, or control of the Settlement Trust Assets, or any right to call for a partition or division of the Settlement Trust Assets.  Title to all the Settlement Trust Assets shall be vested in the Settlement Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under this Settlement Trust Agreement, the Plan and the TDP.

**11.3   TAX IDENTIFICATION NUMBERS**.  The Settlement Trustee may require any Beneficiary to furnish to the Settlement Trustee the Beneficiary's employer or taxpayer identification number or social security number as assigned by the IRS, and such other records or documents necessary to satisfy the Settlement Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status).  The Settlement Trustee may condition the payment of any distribution to any Beneficiary upon receipt of such number and records or documents.

### Article XII
### MISCELLANEOUS PROVISIONS

**12.1   PLAN INCORPORATION**.  The Plan and the Confirmation Order are incorporated into this Settlement Trust Agreement.

**12.2   NOTICES**.  All notices or deliveries required or permitted hereunder shall be given as directed in the Plan, to the following:

If to the Settlement Trust or Settlement Trustee:

[●]

AMERICAS 107111196

> If to a Beneficiary:
>
> Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented Abuse Claimant, to the address for the claimant provided in the Proof of Claim or trust submission submitted pursuant to the terms and conditions of the TDP.

**12.3     WAIVER**.  Except as expressly provided in the Plan or this Settlement Trust Agreement, no failure or delay of any party to exercise any right or remedy pursuant to this Settlement Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

**12.4     MODIFICATION OF SETTLEMENT TRUST AGREEMENT**.  Material modifications to the Settlement Trust Agreement may be made only with the approval of a majority of the STAC and only to the extent that such modification does not change, frustrate or inhibit the purpose of the Settlement Trust.

**12.5     REIMBURSEMENT OF COSTS**.  If the Settlement Trustee or the Settlement Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Settlement Trust Agreement or the enforcement thereof, the Settlement Trustee or the Settlement Trust, as the case may be, shall be entitled to pursue and collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred by the Settlement Trustee or the Settlement Trust, as the case may be, in connection with such dispute or enforcement action.

**12.6     ENTIRETY OF SETTLEMENT TRUST AGREEMENT**.  This Settlement Trust Agreement supersedes any and all prior oral and written discussions and agreements with respect to the subject matter hereof.  This Settlement Trust Agreement is the sole and entire Settlement Trust Agreement, and this Settlement Trust Agreement, together with the Exhibits hereto, the Plan, the TDP and the Confirmation Order, contain the sole and entire agreement and understanding with respect to the matters addressed therein.

**12.7     COUNTERPARTS**.  This Settlement Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**12.8     CAPTIONS**.  The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Settlement Trust Agreement.

**12.9     INDEPENDENT LEGAL AND TAX COUNSEL**.  All parties to this Settlement Trust Agreement have been represented by counsel and advisors (collectively referred to as "Counsel") of their own selection in this matter.  Consequently, the parties agree that the language in all parts of this Settlement Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party.  It is specifically acknowledged and understood that this Settlement Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

**12.10     APPLICABLE LAW**.  This Settlement Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Delaware applicable to contracts and trust agreements made and to be performed therein, except that all matters of federal tax law and the Settlement Trust's compliance with Section 468B of the Tax Code and Treasury Regulations thereunder

AMERICAS 107111196

shall be governed by federal tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law.

     **12.11  TERMINATION**.  This Settlement Trust Agreement shall terminate and be deemed void *ab initio* if a Confirmation Order is not entered consistent with the Plan.

AMERICAS 107111196

IN WITNESS WHEREOF, the BSA and the Settlement Trustee execute this Settlement Trust Agreement as of the date set forth in the opening paragraph.

**Settlement Trustee:**

By: _____
Printed Name: _____
Title: _____

**Boy Scouts of America**

By: _____
Printed Name: _____
Title: _____

AMERICAS 107111196

# EXHIBIT B-2

## SETTLEMENT TRUST AGREEMENT FOR THE BSA TOGGLE PLAN

# BOYS SCOUTS OF AMERICA
# SETTLEMENT TRUST AGREEMENT

This SETTLEMENT TRUST AGREEMENT is made and entered in *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (Bankr. D. Del. 2020), by and between Boy Scouts of America ("BSA" or the "Debtor"), and [●] (the "Settlement Trustee"). This Settlement Trust Agreement is entered into pursuant to the Debtor's *Third Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, dated [●]June 17, 2021 [D.I. [●]] (as amended, supplemented, or modified, the "Plan"). Unless otherwise specifically defined herein, capitalized terms used in this Settlement Trust Agreement shall have the meanings assigned to them in the Plan. Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan or herein, when used herein, have the meanings attributed to them in the Bankruptcy Code.

## RECITALS

A.      On the Petition Date, the BSA filed a voluntary petition under chapter 11 of the Bankruptcy Code. BSA continued in possession of its property and has continued to operate and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.      It is anticipated that in 2021, the Bankruptcy Court will enter an order confirming the Plan (the "Confirmation Order").

C.      The Plan anticipates the existence of the Settlement Trust and the transfer and assignment to the Settlement Trust of the Settlement Trust Assets.

D.      Pursuant to the Plan, the Settlement Trust is to use the Settlement Trust Assets to pay the compensable Abuse Claims, and meet indemnity and other obligations in accordance with the provisions of the Plan.

E.      The Settlement Trust is established for the benefit of the Beneficiaries (as defined herein) and is intended to qualify as a "qualified settlement fund" for federal income tax purposes and within the meaning of Treasury Regulations issued under section 468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"). The Settlement Trustee shall administer and maintain the Settlement Trust in compliance with all relevant guidelines for maintaining the Settlement Trust's status as a "qualified settlement fund" issued by the Internal Revenue Service (the "IRS").

F.      Pursuant to the Plan and the Confirmation Order, the Settlement Trustee shall be duly appointed as a representative of the Estate pursuant to Sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the premises and the provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## Article I
## AGREEMENT OF TRUST

**1.1      CREATION AND NAME**. The Debtor hereby creates a trust known as "Boy Scouts of America Settlement Trust," which is the Settlement Trust provided for in the Plan.

**1.2      PURPOSE**. The purpose of the Settlement Trust is to assume any liability for all Abuse Claims; to hold, preserve, maximize and administer the Settlement Trust Assets; and to direct the processing, liquidation, and payment of all compensable Abuse Claims. The Settlement Trust will

resolve Abuse Claims in accordance with the Settlement Trust Documents in such a way that the holders of similar Abuse Claims are treated equitably and in substantially the same manner.

**1.3     TRANSFER OF ASSETS**.  Pursuant to the Plan and on the Effective Date, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any Person.  The Settlement Trustee hereby agrees to accept and hold the Settlement Trust Assets in trust for the Beneficiaries (as defined herein) subject to the terms of this Settlement Trust Agreement and the Plan.  The Settlement Trustee is hereby authorized to file with governmental authorities any documents necessary or helpful to establish the Settlement Trust.

**1.4     IRREVOCABILITY**.  From and after the Effective Date, the Settlement Trust shall be irrevocable.  ~~Neither the Debtors nor Reorganized BSA, nor any other Protected Party (or any other~~ except as expressly set forth herein.  No ~~party except the Settlement Trustee~~ or STAC (~~as contemplated in the Settlement Trust Agreement~~defined herein) may alter, amend, revoke, or terminate the Settlement Trust.  No party shall have any power or authority to direct the Settlement Trustee to return any of the Settlement Trust Assets.

**1.5     BENEFICIARIES**.  The "Beneficiaries" of the Settlement Trust will be the holders of any compensable Abuse Claims (including holders of Future Abuse Claims) and the Protected Parties.

**1.6     SETTLEMENT   TRUSTEE   AND   SETTLEMENT   TRUST   ADVISORY COMMITTEE**.

(a)     There will be one initial Settlement Trustee appointed to administer the Settlement Trust.  The Settlement Trustee will be considered a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code, and will be the "administrator" of the Settlement Trust as such term is used in Treas. Reg. Section 1.468B-2(k)(3).

(b)     A Settlement Trust Advisory Committee ("STAC") will be appointed in a manner to be specified in the Plan Supplement and consist of three members.  The STAC members shall be reasonably acceptable to the Debtors.  The STAC will serve in a fiduciary capacity, representing the interests of all holders of Abuse Claims.

(c)     The Settlement Trustee will be required to consult with the STAC on:

(i)     the questionnaire to be developed for distribution to holders of Abuse Claims ("Abuse Claimants") and submission to the Settlement Trust by Abuse Claimants seeking payment from the Settlement Trust;

(ii)     the accurate factor for scaling Abuse Claim values based on the size of the Settlement Trust Corpus (as defined herein) and total aggregate Abuse Claim values, as described in the Trust Distribution Procedures ("TDP");

(iii)     determination of the total value of Settlement Trust Assets at the intervals set forth in the TDP;

(iv)     the appropriate percentage of compensable Abuse Claim values to distribute as initial distributions (the "Initial Payment Percentage") and any subsequent distribution under the TDP;

AMERICAS 107111196

(v)     entry into any material settlements with insurers or commencement of material litigation against insurers;

(vi)     any amendments or modifications to this Trust Agreement or the TDP; and

(vii)     the termination of the Settlement Trust or Litigation Trust.

**1.7     ACCEPTANCE OF ASSETS AND ASSUMPTION OF LIABILITIES.**

(a)     In furtherance of the purposes of the Settlement Trust, the Settlement Trustee hereby accepts the trusteeship of the Settlement Trust created by this Settlement Trust Agreement and the grant, assignment, transfer, conveyance and delivery of Settlement Trust Assets to the Settlement Trust, subject to the terms and conditions set forth in this Settlement Trust Agreement, the Plan and the Confirmation Order.

(b)     The Settlement Trust will assume all liabilities, obligations, and responsibilities of the Protected Parties for all Abuse Claims (including any Future Abuse Claims).  In furtherance of the purposes of the Settlement Trust, the Settlement Trustee, on behalf of the Settlement Trust, hereby expressly assumes all responsibility for preserving, managing and distributing the Settlement Trust Corpus to the Beneficiaries.  The Abuse Claims will be evaluated by the Settlement Trustee in accordance with the TDP.  Except as otherwise provided in this Settlement Trust Agreement, the TDP or the Plan, the Settlement Trustee shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Abuse Claims that the Debtor has or would have had under applicable law.

(c)     The Settlement Trustee shall have all the rights, powers and duties set forth in this Settlement Trust Agreement, the TDP (as defined herein) and the Plan, and available under applicable law, for accomplishing the purposes of the Settlement Trust.  The Settlement Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Settlement Trust and in accordance with applicable law.  The Settlement Trustee shall have the authority to bind the Settlement Trust within the limitations set forth herein but shall for all purposes hereunder be acting in the capacity as Settlement Trustee, and not individually.

(d)     In furtherance of the purposes of the Settlement Trust, the Settlement Trustee assumes responsibility for: (a) making payments to Beneficiaries; (b) receiving, collecting, liquidating, maintaining and distributing the Settlement Trust Assets; and (c) fulfilling all other obligations of the Settlement Trust under this Settlement Trust Agreement and the Plan.  The Settlement Trust will be administered consistent with the purpose of the Settlement Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Settlement Trust Assets or as otherwise provided in the Plan.

(e)     **Source of Payments**.  All Settlement Trust expenses and all liabilities of the Settlement Trust with respect to Abuse Claims shall be payable solely by the Settlement Trustee out of the Settlement Trust Corpus (as defined herein).

**1.8     ~~COOPERATION~~DOCUMENT AGREEMENT**.  The Settlement Trust will enter into the ~~Cooperation~~Document Agreement.

AMERICAS 107111196

**Article II**
**LITIGATION TRUST**

      **2.1**     **LITIGATION TRUST**.  The Settlement Trustee and STAC will jointly decide whether a sub-trust is required by applicable law to carry forth the litigation-related objectives of this Settlement Trust.  If the Settlement Trustee and STAC decide that applicable law so requires a litigation sub-trust, the Settlement Trustee shall create a sub-trust pursuant to this Settlement Trust Agreement (the "Litigation Trust") known as the "Boy Scouts of America Litigation Trust" and governed by the terms set forth in this Article 2.1 and Settlement Trust Agreement.  The Litigation Trust is to be organized and established as a trust for the purpose of monetizing litigation or Claims of the Settlement Trust, including, without limitation, the Settlement Trust Causes of Action, the Insurance Actions and the Insurance Coverage Actions (collectively, the "Actions"), and making distributions of such assets to the Settlement Trust in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Actions and distributing proceeds of such Actions to the Settlement Trust in a timely fashion in accordance with the Plan, the Confirmation Order, the TDP, this Article 2.1, and this Settlement Trust Agreement.  If created, the Litigation Trust shall have the sole responsibility for the pursuit and settlement of the Actions, and the sole power and authority to allow or settle and compromise any Actions.  For the avoidance of doubt, if created, the Litigation Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is to be appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Actions.

      (a)     There will be one Litigation Trustee appointed to administer the Litigation Trust.  The Litigation Trustee will be considered a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.  The Settlement Trustee shall initially act as the Litigation Trustee.

      (b)     On or as soon as practicable after the Effective Date, the Settlement Trust shall automatically and irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Actions and associated privileges to the Litigation Trust (the "Litigation Trust Assets").  For purposes of the transfer of documents, the Litigation Trust is an assignee and successor to the Debtor in respect of the Actions and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the privileges being so assigned and transferred.

      (c)     Until the Litigation Trust terminates pursuant to the terms hereof, legal title to the Actions shall be vested at all times in the Litigation Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Actions to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee.  For purposes of such jurisdictions, the term Litigation Trust, as used herein, shall be read to mean the Litigation Trustee.

      (d)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Actions after the Effective Date.  No Person or entity may rely on the absence of a specific reference in the Plan to any Action against them as any indication that the Litigation Trustee will not pursue any and all available Actions or objections against them.  Unless any Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Actions for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim

AMERICAS 107111196

preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Actions upon, after, or as a consequence of the Confirmation Order.

(e)     <u>Acceptance</u>. The Litigation Trustee accepts the Litigation Trust imposed by this Article 2.1 and agrees to observe and perform that Litigation Trust, on and subject to the terms and conditions set forth in this Article 2.1 and in the Plan.

(f)     <u>Litigation Trust Beneficiary</u>. The beneficiary of the Litigation Trust shall be the Settlement Trust (the "<u>Litigation Trust Beneficiary</u>").

(g)     <u>Authority</u>. The Litigation Trustee shall have the power to:

(i)     prosecute Actions on behalf of the Settlement Trust as contemplated in the TDP;

(ii)    hold legal title to any and all rights in or arising from the Litigation Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Trust (including any proceeds of the Litigation Trust Assets);

(iii)   perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iv)    protect and enforce the rights of the Litigation Trust with respect to any Litigation Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(v)     determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Trust;

(vi)    make all payments relating to the Litigation Trust Assets;

(vii)   assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Trust, the Litigation Trust Assets, or the Litigation Trust Beneficiary, if applicable;

(viii)  prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Trust, and pay taxes properly payable by the Litigation Trust;

(ix)    without further order of the Bankruptcy Court, but subject to the terms of this Settlement Trust Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Article 2.1; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Trust Expenses and paid by the Litigation Trustee from the Litigation Trust Expense Cash Reserve;

AMERICAS 107111196

(x)     take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Trust and the activities contemplated herein and in the TDP, the Confirmation Order and the Plan, and take all actions necessary to comply with the TDP, the Confirmation Order, the Plan, and this Article 2.1 and the obligations there and hereunder; and

(xi)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(x) being collectively, the "Authorized Acts").

(h)     The Litigation Trustee has the power and authority to act as trustee of the Litigation Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(i)     Notwithstanding anything herein to the contrary, the Litigation Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Actions as required or contemplated by applicable law, the TDP, the Confirmation Order, the Plan, and this Article 2.1, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Article 2.1.

(j)     Distributions. The Litigation Trustee shall distribute Cash proceeds of the Actions to the Settlement Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Trust Assets pending their monetization or other disposition during the term of the Litigation Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Trust Expenses and any other expenses incurred by the Litigation Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Article 2.1 (including, but not limited to, indemnification obligations and similar expenses).

(k)     Manner of Payment or Distribution. All distributions made by the Litigation Trustee on behalf of the Litigation Trust to the Litigation Trust Beneficiary shall be payable by the Litigation Trustee directly to the Settlement Trust, as sole Litigation Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

(l)     Tax Treatment and Tax Return. It is intended for the initial transfer of the Litigation Trust Assets to the Litigation Trust to be treated for federal income tax purposes (and foreign, state, local tax purposes where applicable) as if the Debtor transferred the Litigation Trust Assets to the Litigation Trust Beneficiary and then, immediately thereafter, the Litigation Trust Beneficiary transferred the Litigation Trust Assets to the Litigation Trust. Consistent with such treatment, (i) it is intended that the Litigation Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Litigation Trust Beneficiary will be treated as the grantor of the Litigation Trust and owner of the Litigation Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the Litigation Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Litigation Trust Beneficiary as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Litigation Trustee also will annually prepare for the Litigation Trust Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's interest in the Litigation

AMERICAS 107111196

Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Litigation Trust Beneficiary to use in preparing their U.S. federal income tax returns.

(m)　　The Litigation Trustee shall determine the fair market value of the Litigation Trust Assets as of the Effective Date, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(n)　　Withholding. The Litigation Trustee may withhold from any amount distributed from the Litigation Trust to the Litigation Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Trust Beneficiary. As a condition to receiving any distribution from the Litigation Trust, the Litigation Trustee may require that the Litigation Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

(o)　　Termination.  The Litigation Trustee and the Litigation Trust shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines, in consultation with the Settlement Trustee (to the extent the Settlement Trustee is a different Person) and STAC, that the Actions are not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Trust Beneficiary under the Plan and this Settlement Trust Agreement have been made, but in no event shall the Litigation Trust be dissolved later than fifteen (15) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such tenth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Trust Assets; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Litigation Trust Assets, by the Bankruptcy Court within six months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes.

(p)　　Continuance of the Litigation Trustee for Winding Up. After dissolution of the Litigation Trust and for purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Trust, until such time as the winding up of the Litigation Trust is completed. Upon the dissolution of the Litigation Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  Upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as an expense of the Litigation Trust, the books, records, and certificated and other documents and files that have been delivered to or created by

AMERICAS 107111196

the Litigation Trustee. At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

(q)     Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Trust, the Litigation Trustee shall have no further duties or obligations hereunder.

(r)     Articles 4, 5, 6, 7, 8 and 9 of this Settlement Trust Agreement are incorporated by reference with regard to the Litigation Trust and Litigation Trustee, such that any mention of the Settlement Trust and Settlement Trustee within those Articles shall be interpreted to include the Litigation Trust and Litigation Trustee.

## Article III
## CORPUS OF THE SETTLEMENT TRUST

**3.1     SETTLEMENT TRUST COMPOSITION**.  The Settlement Trust will be funded through the transfer of the Settlement Trust Assets and any income, profits, and proceeds realized, received or derived from such assets subsequent to the transfer of such assets to the Settlement Trust.

The proceeds of any recoveries from any litigation or Claims of the Settlement Trust or Litigation Trust, including, without limitation, the Actions, will be deposited in the Settlement Trust's accounts and become the property of the Settlement Trust. The Settlement Trust shall have the right to enforce the Plan and any of the other Plan Documents (including, among others, the ~~Cooperation~~Document Agreement) according to their respective terms, including the right to receive the Settlement Trust Assets as provided in the Plan.

**3.2     TRANSFER TO SETTLEMENT TRUSTEE**.  On the Effective Date, pursuant to, and at such times set forth in the Plan, all right, title, and interest in and to the Settlement Trust Assets and any proceeds thereof shall be automatically, and without further act or deed, transferred to, vested in, and assumed by the Settlement Trust free and clear of all Encumbrances or Claims or other interests of any Person in accordance with Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Plan. The Settlement Trustee, on behalf of the Settlement Trust, shall receive the Settlement Trust Assets when they are transferred to the Settlement Trust.

**3.3     SETTLEMENT TRUSTEE'S RIGHT TO AND TITLE AND INTEREST IN SETTLEMENT TRUST ASSETS**.  Upon the transfer of the Settlement Trust Assets, the Settlement Trustee succeeds to all of the Debtor's, and Reorganized BSA's, the Estate's, and any other Protected Party's right to and title and Interest in the Settlement Trust Assets, and the Debtor, and Reorganized BSA, and the Estate, and any other Protected Party will have no further right to or title or interest in or with respect to the Settlement Trust Assets or this Settlement Trust, except as provided herein, in the Plan or the Confirmation Order.

**3.4     NO TAX ON TRANSFERS TO SETTLEMENT TRUST**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Settlement Trust or Litigation Trust, including any deeds, bills of sale or assignments executed in connection with any transfer to the Settlement Trust, or receipt, or disposition/sale of assets by the Settlement Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

**3.5     SPENDTHRIFT PROVISION**.  To the fullest extent permitted by law, neither the principal nor income of the Settlement Trust or Litigation Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily

AMERICAS 107111196

or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

**3.6     SETTLEMENT TRUST CORPUS**.  The entirety of the Settlement Trust's corpus (the ("Settlement Trust Corpus") shall be available to pay eligible Abuse Claims and Settlement Trust and Litigation Trust expenses authorized by this Settlement Trust Agreement and the Settlement Trust Documents.  The Settlement Trust Corpus shall be allocated, administered, and distributed as provided in the Plan, Confirmation Order and the TDP.

**3.7     FUTURE TORT CLAIM RESERVE FUND**.  The Settlement Trustee, in consultation with the Future Claimants' Representative, shall establish a reserve, subject to approval by the Bankruptcy Court.

**3.8     PRIVILEGED AND CONFIDENTIAL INFORMATION**.     The transfer or assignment of any Privileged Information to the Settlement Trustee or Litigation Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to any such privileges: (a) they are transferred to or contributed for the sole purpose of enabling the Settlement Trustee to perform his or her duties to administer the Settlement Trust and for no other purpose; (b) they are vested solely in the Settlement Trustee and not in the Settlement Trust, the STAC, or any other Person, committee or subcomponent of the Settlement Trust, or any other Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of an Abuse Claim; (c) they shall be preserved and not waived; and (d) no Privileged Information shall be publicly disclosed by the Settlement Trustee or the Settlement Trust or communicated to any Person not entitled to receive such information or in a manner that would diminish the protected status of any such information.     Notwithstanding the foregoing, nothing shall preclude the Settlement Trustee from providing Privileged Information to any Insurance Company as necessary to preserve, secure, or obtain the benefit of any rights under any Insurance Policy.  Additionally, the Settlement Trustee will treat and maintain as confidential all information designated confidential by the BSA or Reorganized BSA, including, without limitation, rosters, personnel files and other business confidential materials.

**Article IV**
**POWERS AND DUTIES OF SETTLEMENT TRUSTEE**

**4.1     POWERS AND DUTIES**.  The Settlement Trustee shall have, in addition to any other powers and discretions conferred on the Settlement Trustee by applicable trust law (to the extent not inconsistent with applicable Bankruptcy law, this Settlement Trust Agreement and/or the Plan), the Plan and other provisions in this Settlement Trust Agreement, the following powers and discretions:

(a)     to establish an Initial Payment Percentage and any subsequent distribution percentage(s);

(b)     ~~(a)~~ to distribute the Settlement Trust Corpus to Abuse Claimants pursuant to the terms and conditions and the procedures for distributions established in the Trust Distribution Procedures;

(c)     ~~(b)~~ to assist the Litigation Trustee to initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Settlement Trust, including the Actions;

AMERICAS 107111196

(d) ~~(c)~~ to assist the Litigation Trustee to prosecute claims against Non-Settling Insurance Companies on behalf of holders of Abuse Claims as contemplated in the TDP;

(e) ~~(d)~~ to enforce the Settlement Trust's rights in the Settlement Trust Assets, including through judicial proceedings or bankruptcy/insolvency proceedings;

(f) ~~(e)~~ to assist the Litigation Trustee to maintain, administer, preserve, or pursue Insurance Coverage and the Insurance Action Recoveries on behalf of the Settlement Trust;

(g) ~~(f)~~ to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purposes of the Settlement Trust or to maintain and administer the Settlement Trust;

(h) ~~(g)~~ to open and maintain bank accounts for the Settlement Trust;

(i) ~~(h)~~ to seek enforcement of the Plan Documents;

(j) ~~(i)~~ to retain professionals, advisors and other agents to assist in the administration of the Settlement Trust and to advise on any matter pertinent to the Plan or Settlement Trust Documents (the "Settlement Trust Professionals");

(k) ~~(j)~~ to file (or cause to be filed) statements, returns, or disclosures relating to the Settlement Trust that are required by any Governmental Unit;

(l) ~~(k)~~ to comply with all requirements imposed by applicable law, rule or regulation;

(m) ~~(l)~~ to comply with Bankruptcy Code section 345 with regard to investment of Settlement Trust Assets.

(n) to execute any other actions contemplated by the TDP.

**4.2     LIMITATIONS ON THE SETTLEMENT TRUSTEE.**  Notwithstanding anything in this Settlement Trust Agreement or the Plan to the contrary, the Settlement Trustee shall not do or undertake any of the following:

(a) to guaranty any debt;

(b) to make or enter into any loan of Settlement Trust Assets;

(c) to make any transfer or distribution of Settlement Trust Assets other than those authorized by the Settlement Trust Documents;

(d) to engage in any trade or business with respect to the Settlement Trust Assets or proceeds therefrom, other than managing such assets;

(e) to engage in any investment of the Settlement Trust Assets, other than as explicitly authorized by this Settlement Trust Agreement;

(f) to engage in any activities inconsistent with the treatment of the Settlement Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under section 468B of the Tax Code.

AMERICAS 107111196

(g)     amend the TDP to provide for materially different treatment for Abuse Claims including the Claims Matrix and Scaling Factors (as defined and set forth in Article VI of the TDP).

**Article V**
**TERMINATION OF THE SETTLEMENT TRUST**

**5.1     WHEN TERMINATION SHALL OCCUR**.  The Settlement Trustee shall terminate the Settlement Trust after:

(a)     the completion of the Settlement Trustee's administration (including the recovery of all expected Settlement Trust Assets) and distribution of the Settlement Trust Assets, and the Settlement Trustee's full performance of all duties set forth in the Settlement Trust Documents; and

(b)     the Bankruptcy Court's entry of a final order approving the termination of the Settlement Trust.

Notwithstanding any other provision of this Settlement Trust Agreement, the Settlement Trust shall terminate no later than the tenth (10th) anniversary of the Effective Date.

**5.2     TERMINATION PROCEDURES**.  After termination of the Settlement Trust and solely for the purpose of liquidating and winding up its affairs, the Settlement Trustee shall continue to act as Settlement Trustee until its duties hereunder have been fully performed.  The Settlement Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Settlement Trustee until distribution of all the Settlement Trust Assets.  For purposes of this provision, Settlement Trust Assets will be deemed distributed when the total amount remaining in the Settlement Trust is less than $50,000 and no further Actions are pending or have yet to be brought by the Litigation Trustee.  At the Settlement Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (a) the first anniversary of the final distribution of the Settlement Trust Assets; and (b) the date until which the Settlement Trustee is required by applicable law to retain such books, records, documents and files; provided, however, that, notwithstanding the foregoing, the Settlement Trustee shall not destroy or discard any books, records, documents or files relating to the Settlement Trust without giving the Reorganized BSA.

**5.3     TERMINATION DISTRIBUTION**.  Upon termination of the Settlement Trust, the Settlement Trustee will pay all fees and expenses of the Settlement Trust, after which, the Settlement Trustee will distribute all remaining assets to charity to be chosen by the BSA.

**5.4     DISCHARGE, EXCULPATION AND EXONERATION**.  Upon termination of the Settlement Trust and accomplishment of all activities described in this Article 5, the Settlement Trustee and its Settlement Trust Professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Settlement Trustee or his agents or representatives).  The Settlement Trustee may, at the expense of the Settlement Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

**Article VI**
**IMMUNITY, LIABILITY AND INDEMNIFICATION**

**6.1     LIMITATIONS ON LIABILITY**.  Neither the Settlement Trustee nor any of its duly designated agents, representatives or Settlement Trust Professionals shall be liable for any act or omission taken or omitted to be taken by the Settlement Trustee in good faith, other than acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material

AMERICAS 107111196

violation of law, or fraud of the Settlement Trustee or its agents or representatives. The Settlement Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys-at-law, accountants, financial advisors and agents and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Settlement Trustee shall be under no obligation to consult with its attorneys-at-law, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Trustee, unless such determination is based on the Settlement Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.

**6.2     NO RECOURSE AGAINST SETTLEMENT TRUSTEE PERSONALLY**. No recourse shall ever be had, directly or indirectly, against the Settlement Trustee personally, or against any employee, contractor, agent, representative, attorney-at-law, accountant or other Settlement Trust Professional retained in accordance with the terms of this Settlement Trust Agreement or the Plan by the Settlement Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or trust agreement whatsoever executed by the Settlement Trustee in implementation of this Settlement Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Settlement Trustee under the Plan for any purpose authorized by this Settlement Trust Agreement or the Plan, it being expressly understood and agreed that any such promise, contract, instrument, undertaking, obligation, covenant or trust agreement entered into by the Settlement Trustee, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Settlement Trust Assets and shall be evidence only of a right of payment out of the Settlement Trust Assets. Notwithstanding the foregoing, the Settlement Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Settlement Trustee. The Settlement Trust will not be covered by a bond.

**6.3     INDEMNIFICATION**.

(a)     From and after the Effective Date, the Settlement Trust will indemnify the Settlement Trustee and his or her duly designated agents and representatives to the fullest extent lawful, from and against any and all claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas, damages, costs and expenses (including full reimbursement of all fees and expenses of counsel), as incurred, related to, arising out of, or in connection with the Settlement Trustee's and his or her agents' performance of their duties under the Settlement Trust Documents.

(b)     From and after the Effective Date, the Settlement Trust shall indemnify each of the Protected Parties to the fullest extent lawful, from and against any and all claims, liabilities, losses, actions, suits, proceedings, third-party subpoenas, damages, costs and expenses (including full reimbursement of all fees and expenses of counsel), as incurred, related to, arising out of, or in connection with any Abuse Claim.

**6.4     OTHER DUTIES, OBLIGATIONS, INDEMNIFICATION**. The Settlement Trust will also assume all duties, obligations and indemnification responsibilities outlined in the Plan and Insurance Settlement Agreements.

AMERICAS 107111196

**Article VII**
**COMPENSATION AND EXPENSE REIMBURSEMENT OF SETTLEMENT TRUSTEE AND ITS AGENTS**

7.1     **SETTLEMENT TRUSTEE COMPENSATION**.  The Settlement Trustee will be entitled to receive compensation from the Settlement Trust and from the Settlement Trust Assets as provided in the Settlement Trust Documents.

7.2     **COMPENSATION OF SETTLEMENT TRUSTEE'S AGENTS**.  Any Person duly retained by the Settlement Trustee pursuant to this Settlement Trust Agreement or the Plan will be entitled to reasonable compensation for services rendered.

7.3     **REIMBURSEMENT OF EXPENSES**.

(a)     All reasonable and necessary Settlement Trust Expenses incurred by the Settlement Trustee and any person retained by the Settlement Trustee in performing their duties under the Settlement Trust Documents will be reimbursed by the Settlement Trust from the Settlement Trust Assets.  Settlement Trust Expenses will expressly include any and all liabilities, costs, and expenses incurred subsequent to the Effective Date in connection with the Settlement Trust Assets (including, without limitation, the prosecution of any Actions), in each case whether or not any such action results in a recovery for the Settlement Trust.

(b)     The Settlement Trust will pay all reasonable and documented Settlement Trust Expenses incurred by any Protected Party in taking any action on behalf of or at the direction of the Settlement Trust, if any.

**Article VIII**
**SUCCESSOR SETTLEMENT TRUSTEES**

8.1     **VACANCY CAUSED BY SETTLEMENT TRUSTEE RESIGNATION OR REMOVAL.**

(a)     The Settlement Trustee may resign at any time upon thirty (30) days' written notice to be filed with the Bankruptcy Court.  The Settlement Trustee shall, within thirty (30) days after such resignation takes effect, deliver to the successor Settlement Trustee all of the Settlement Trust Assets which were in the possession of the Settlement Trustee along with a complete list of Settlement Trust Assets and a complete accounting of all transactions engaged by the Settlement Trustee while serving as such.

(b)     The Bankruptcy Court may remove a Settlement Trustee upon finding that the Settlement Trustee has engaged in a breach of fiduciary duty.  The removal will take effect upon the date the Bankruptcy Court specifies.  In the event of removal, the Settlement Trustee shall, within thirty (30) days after such removal takes effect, deliver to the successor Settlement Trustee all of the Settlement Trust Assets which were in the possession of the Settlement Trustee along with a complete list of Settlement Trust Assets and a complete accounting of all transactions engaged in by the Settlement Trustee while serving as such**.**

8.2     **OUTGOING SETTLEMENT TRUSTEE OBLIGATIONS**.  In the event of the resignation or removal of the Settlement Trustee, the resigning or removed Settlement Trustee shall:

(a)     Execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor

AMERICAS 107111196

Settlement Trustee to effect such resignation or removal and the conveyance of the Settlement Trust Assets then held by the resigning or removed Settlement Trustee to the successor Settlement Trustee;

(b)     Deliver to the successor Settlement Trustee all documents, instruments, records and other writings relating to the Settlement Trust Assets as may be in the possession or under the control of the resigning or removed Settlement Trustee;

(c)     Otherwise assist and cooperate in effecting the assumption of the resigning or removed Settlement Trustee's obligations and functions by the successor Settlement Trustee; and

(d)     irrevocably appoint the successor Settlement Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Settlement Trustee is obligated to perform under this Settlement Trust Agreement.  Such appointment shall not be affected by the subsequent disability or incompetence of the Settlement Trustee making such appointment.  The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Settlement Trustee and the appointment of the successor Settlement Trustee.

**8.3     APPOINTMENT OF SUCCESSOR SETTLEMENT TRUSTEE**.  Any vacancy in the office of Settlement Trustee shall be filled by the nomination of a majority of the members of the STAC, subject to the approval of the Bankruptcy Court, after notice and a hearing.

**8.4     PRESERVATION OF RECORD OF CHANGES IN SETTLEMENT TRUSTEES**. A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Settlement Trust Agreement.

## Article IX
## SETTLEMENT TRUSTEE REPORTING AND DISCHARGE

**9.1     ANNUAL ACCOUNTINGS**.  The Settlement Trustee shall prepare, at least annually, and upon termination of the Settlement Trust, a written accounting of the administration of the Settlement Trust listing the current assets (with fair market values) and detailing all transactions that occurred during the period covered by such accounting.  Each such accounting shall be filed with the Bankruptcy Court.

**9.2     APPROVAL OF ACCOUNTINGS AND DISCHARGE OF THE SETTLEMENT TRUSTEE**.  The Settlement Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section 8.1.  Upon the entry of an order of the Bankruptcy Court approving any such accounting, the Settlement Trustee shall be discharged from all liability, with respect to all assets listed and transactions detailed in such accounting, to the Settlement Trust, any Beneficiary or any Person who or which has had or may then or thereafter have a claim against the Settlement Trust for acts or omissions in the Settlement Trustee's capacity as the Settlement Trustee or in any other capacity contemplated by this Settlement Trust Agreement or the Plan.

## Article X
## SECTION 468B SETTLEMENT FUND

**10.1     GENERALLY.**

(a)     In accordance with the Plan, the Settlement Trustee will take all reasonable steps to ensure that the Settlement Trust will qualify as, and remain, a "qualified settlement fund" within the meaning of § 468B of the Tax Code, and the regulations promulgated pursuant thereto.  The Debtor is the

AMERICAS 107111196

"transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1).  The Settlement Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

        (b)     It is further intended that the transfers to the Settlement Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461- 1 (a)(2).

**10.2    EMPLOYER IDENTIFICATION NUMBER**.  Upon establishment of the Settlement Trust, the Settlement Trustee shall apply for an employer identification number for the Settlement Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

**10.3    RELATION-BACK ELECTION**.  If applicable, the Settlement Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Settlement Trust as coming into existence as a settlement fund as of the earliest possible date.

**10.4    FILING REQUIREMENTS**.  The Settlement Trustee shall cause to be filed, on behalf of the Settlement Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1).  The Debtor or Reorganized BSA shall file an election statement(s) satisfying the requirements of Treasury Regulation Section 1.468B- 1(k)(2)(ii) so that the Settlement Trust is treated as a grantor trust under Section 671 of the Tax Code and the regulations promulgated thereunder.  The election statement shall be included with the Settlement Trust's first timely filed trust income tax return.  The Debtor or Reorganized BSA shall supply to the Settlement Trustee and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which the Debtor or Reorganized BSA makes a transfer to the Settlement Trust.

**10.5    BROAD POWERS OF THE SETTLEMENT TRUSTEE**.  The Settlement Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Settlement Trustee deems necessary to reasonably ensure that the Settlement Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated pursuant thereto.  Further, the Settlement Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Settlement Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

**Article XI**
**BENEFICIARIES**

**11.1    NAMES AND ADDRESSES**.  The Settlement Trustee shall keep a register (the "Register") in which the Settlement Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Plan, Confirmation Order and TDP.  The Settlement Trustee may rely upon this Register for the purposes of delivering distributions or notices.  In preparing and maintaining this Register, the Settlement Trustee may rely on the name and address of each Abuse Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Beneficiary to the Settlement Trustee. The Settlement Trustee may deliver distributions and notices to counsel for any Beneficiary identified in such Beneficiary's proof of claim or proper notice of a name or address change.

**11.2    RIGHTS OF BENEFICIARIES**.  The rights of a Beneficiary under this Settlement Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of such Beneficiary.  A Beneficiary shall have no title to, right to, possession of,

AMERICAS 107111196

management of, or control of the Settlement Trust Assets, or any right to call for a partition or division of the Settlement Trust Assets. Title to all the Settlement Trust Assets shall be vested in the Settlement Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under this Settlement Trust Agreement, the Plan and the TDP.

**11.3    TAX IDENTIFICATION NUMBERS**.  The Settlement Trustee may require any Beneficiary to furnish to the Settlement Trustee the Beneficiary's employer or taxpayer identification number or social security number as assigned by the IRS, and such other records or documents necessary to satisfy the Settlement Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status).  The Settlement Trustee may condition the payment of any distribution to any Beneficiary upon receipt of such number and records or documents.

**Article XII**
**MISCELLANEOUS PROVISIONS**

**12.1    PLAN INCORPORATION**.  The Plan and the Confirmation Order are incorporated into this Settlement Trust Agreement.

**12.2    NOTICES**.  All notices or deliveries required or permitted hereunder shall be given as directed in the Plan, to the following:

> If to the Settlement Trust or Settlement Trustee:

> [●]

> If to a Beneficiary:

> Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented Abuse Claimant, to the address for the claimant provided in the Proof of Claim or trust submission submitted pursuant to the terms and conditions of the TDP.

**12.3    WAIVER**.  Except as expressly provided in the Plan or this Settlement Trust Agreement, no failure or delay of any party to exercise any right or remedy pursuant to this Settlement Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto.  Resort to one form of remedy shall not constitute a waiver of alternative remedies.

**12.4    MODIFICATION OF SETTLEMENT TRUST AGREEMENT**.  Material modifications to the Settlement Trust Agreement may be made only with the approval of a majority of the STAC and only to the extent that such modification does not change, frustrate or inhibit the purpose of the Settlement Trust.

**12.5    REIMBURSEMENT OF COSTS**.  If the Settlement Trustee or the Settlement Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Settlement Trust Agreement or the enforcement thereof, the Settlement Trustee or the Settlement Trust, as the case may be, shall be entitled to pursue and collect from the non-prevailing party any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, incurred by the Settlement Trustee or the Settlement Trust, as the case may be, in connection with such dispute or enforcement action.

**12.6    ENTIRETY OF SETTLEMENT TRUST AGREEMENT**.  This Settlement Trust Agreement supersedes any and all prior oral and written discussions and agreements with respect to the subject matter hereof.  This Settlement Trust Agreement is the sole and entire Settlement Trust

AMERICAS 107111196

Agreement, and this Settlement Trust Agreement, together with the Exhibits hereto, the Plan, the TDP and the Confirmation Order, contain the sole and entire agreement and understanding with respect to the matters addressed therein.

**12.7    COUNTERPARTS**.  This Settlement Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**12.8    CAPTIONS**.  The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Settlement Trust Agreement.

**12.9    INDEPENDENT LEGAL AND TAX COUNSEL**.  All parties to this Settlement Trust Agreement have been represented by counsel and advisors (collectively referred to as "Counsel") of their own selection in this matter.  Consequently, the parties agree that the language in all parts of this Settlement Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party.  It is specifically acknowledged and understood that this Settlement Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

**12.10    APPLICABLE LAW**.  This Settlement Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Delaware applicable to contracts and trust agreements made and to be performed therein, except that all matters of federal tax law and the Settlement Trust's compliance with Section 468B of the Tax Code and Treasury Regulations thereunder shall be governed by federal tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law.

**12.11    TERMINATION**.  This Settlement Trust Agreement shall terminate and be deemed void *ab initio* if a Confirmation Order is not entered consistent with the Plan.

AMERICAS 107111196

IN WITNESS WHEREOF, the BSA and the Settlement Trustee execute this Settlement Trust Agreement as of the date set forth in the opening paragraph.

**Settlement Trustee:**

By: _____
Printed Name: _____
Title: _____


**Boy Scouts of America**

By: _____
Printed Name: _____
Title: _____

AMERICAS 107111196

**EXHIBIT C**

**CONTRIBUTING CHARTERED ORGANIZATION
SETTLEMENT CONTRIBUTION**

(*to be supplemented*)

**EXHIBIT D**

**CONTRIBUTING CHARTERED ORGANIZATIONS**

(*to be supplemented*)

**EXHIBIT E**

**FOUNDATION LOAN TERM SHEET**

**EXHIBIT F**

**LOCAL COUNCIL SETTLEMENT CONTRIBUTION**

The Debtors and the Ad Hoc Committee of Local Councils are committed to ensuring that the aggregate value of the Local Council Settlement Contribution under the Global Resolution Plan is not less than $425,000,000500,000,000, exclusive of insurance rights proposed to be contributed to the Settlement Trust. The Debtors intend to request the voluntary commitments of Local Councils to make their respective contributions, which contributions shall be set forth in commitment agreements executed by each Local Council. By no later than June 15, 2021, the Debtors shallshall, concurrently with the filing of the Plan Supplement, file a report with the Bankruptcy Court concerning the status of the Debtorsparties' efforts to obtain contribution commitments from the Local Councils. Such status report shall contain information concerning the form of contributions by the Local Councils (*i.e.*, cash, real property, or other assets) and the timing of such contributions. In addition, the status report will set forth any required amendments the Debtors may propose to the Plan to facilitate the Local Council Settlement Contribution. The Local Council Settlement Contribution shall consist of:

*[Remainder of Page Intentionally Left Blank]*

(1)     at least $300 million of Cash to be paid on the Effective Date; and

(2)     properties with a combined Appraised Value (as defined below) of $200 million as described below (the "Property Contribution") (provided that this $200 million aggregate amount shall be reduced on a dollar-for-dollar basis by any Cash payment amount in excess of $300 million).

The Property Contribution shall be structured as follows. The relevant Local Council shall agree to (a) retain title to the property, subject to, at the election, cost, and expense of the Settlement Trust, a mortgage in favor of the Settlement Trust, (b) post the property for sale within thirty (30) days following the Effective Date, (c) present any written sale offer to the Settlement Trust for approval, and (d) remit the net proceeds of the sale to the Settlement Trust at closing. If there is a shortfall or surplus of net proceeds as compared to Appraised Value, the Settlement Trust shall bear the risk of the shortfall and keep the surplus. If the property is not sold on or before the third anniversary of the Effective Date, the Local Council shall have the right to transfer the property to the Settlement Trust by quitclaim deed. If the Local Council receives an offer for the property that is at least equal to its Appraised Value, the Settlement Trust shall accept the offer if no superior offer is made within thirty (30) days, or accept a quitclaim deed for the property. The Debtors shall include appropriate provisions in the Plan to eliminate any transfer tax liabilities of the Settlement Trust per section 1146(a) of the Bankruptcy Code.

The "Appraised Value" shall be the higher of (i) the appraised value (or per-acre amount if a portion of the property is contributed) (average of high and low values, if applicable) set forth in the desktop appraisals or broker opinions of value conducted by JLL, CBRE, Keen, or other appraiser in connection the BSA's chapter 11 case prior to June 10, 2021, as set forth on Exhibit

2 to the Disclosure Statement, as such exhibit may be amended from time to time, and (ii) the per-acre amount (average of high and low values, if applicable) established by a qualified on-site appraisal, if any, commissioned by a Local Council since the commencement of the Chapter 11 Cases.

For the avoidance of doubt, if the aggregate of the Local Council Settlement Contribution is not contributed to the Settlement Trust as set forth above, then no Local Council shall be treated as a Protected Party under the Plan. The Debtors and the Local Councils shall establish an appropriate escrow mechanism to ensure that the Cash to be paid on the Effective Date can be paid in a timely manner and that Local Councils are able to recoup their portions of the Local Council Settlement Contribution if the Effective Date does not occur.

**EXHIBIT G**

**LOCAL COUNCILS**

Abraham Lincoln
Alabama-Florida
Alamo Area
Allegheny Highlands
Aloha
Andrew Jackson
Anthony Wayne Area
Arbuckle Area
Atlanta Area
Baden-Powell
Baltimore Area
Bay Area
Bay-Lakes
Black Hills Area
Black Swamp Area
Black Warrior
Blackhawk Area
Blue Grass
Blue Mountain
Blue Ridge
Blue Ridge Mountains
Buckeye
Buckskin
Bucktail
Buffalo Trace
Buffalo Trail
Caddo Area
Calcasieu Area
California Inland Empire
Cape Cod and Islands
Cape Fear
Capitol Area
Cascade Pacific
Catalina
Central Florida
Central Georgia
Central Minnesota
Central North Carolina
Chattahoochee
Cherokee Area
Cherokee Area
Chester County
Chickasaw
Chief Cornplanter
Chief Seattle
Chippewa Valley

Choctaw Area
Cimarron
Circle Ten
Coastal Carolina
Coastal Georgia
Colonial Virginia
Columbia-Montour
Connecticut Rivers
Connecticut Yankee
Conquistador
Cornhusker
Coronado Area
Cradle of Liberty
Crater Lake
Crossroads of America
Crossroads of the West
Dan Beard
Daniel Boone
Daniel Webster
De Soto Area
Del-Mar-Va
Denver Area
East Carolina
East Texas Area
Erie Shores
Evangeline Area
Far East
Five Rivers
Flint River
French Creek
Gamehaven
Garden State
Gateway Area
Georgia-Carolina
Glacier's Edge
Golden Empire
Golden Gate Area
Golden Spread
Grand Canyon
Grand Columbia
Grand Teton
Great Alaska
Great Rivers
Great Salt Lake
Great Smoky Mountain
Great Southwest

Great Trail
Greater Alabama
Greater Hudson Valley
Greater Los Angeles Area
Greater New York
Greater Niagara Frontier
Greater St. Louis Area
Greater Tampa Bay Area
Greater Wyoming
Greater Yosemite
Green Mountain
Greenwich
Gulf Coast
Gulf Stream
Hawk Mountain
Hawkeye Area
Heart of America
Heart of New England
Heart of Virginia
Hoosier Trails
Housatonic
Illowa
Indian Nations
Indian Waters
Inland Northwest
Iroquois Trail
Istrouma Area
Jayhawk Area
Jersey Shore
Juniata Valley
Katahdin Area
Lake Erie
Las Vegas Area
LaSalle
Last Frontier
Laurel Highlands
Leatherstocking
Lincoln Heritage
Long Beach Area
Longhorn
Longhouse
Longs Peak
Los Padres
Louisiana Purchase
Marin
Mason-Dixon

Mayflower
Mecklenburg County
Miami Valley
Michigan Crossroads
Mid-America
Middle Tennessee
Mid-Iowa
Midnight Sun
Minsi Trails
Mississippi Valley
Mobile Area
Monmouth
Montana
Moraine Trails
Mount Baker
Mount Diablo Silverado
Mountain West
Mountaineer Area
Muskingum Valley
Narragansett
National Capital Area
Nevada Area
New Birth of Freedom
North Florida
Northeast Georgia
Northeast Illinois
Northeast Iowa
Northeastern Pennsylvania
Northern Lights
Northern New Jersey
Northern Star
Northwest Georgia
Northwest Texas
Norwela
Occoneechee
Ohio River Valley
Old Hickory
Old North State
Orange County
Oregon Trail
Ore-Ida
Overland Trails
Ozark Trails
Pacific Harbors
Pacific Skyline
Palmetto

Pathway to Adventure
Patriots' Path
Pee Dee Area
Pennsylvania Dutch
Piedmont
Piedmont
Pikes Peak
Pine Burr Area
Pine Tree
Pony Express
Potawatomi Area
Prairielands
Puerto Rico
Pushmataha Area
Quapaw Area
Quivira
Rainbow
Redwood Empire
Rio Grande
Rip Van Winkle
Rocky Mountain
Sagamore
Sam Houston Area
Samoset
San Diego-Imperial
San Francisco Bay Area
Santa Fe Trail
Seneca Waterways
Sequoia
Sequoyah
Shenandoah Area
Silicon Valley Monterey Bay
Simon Kenton
Sioux
Snake River
South Florida
South Georgia

South Plains
South Texas
Southeast Louisiana
Southern Sierra
Southwest Florida
Spirit of Adventure
Suffolk County
Susquehanna
Suwannee River Area
Tecumseh
Texas Southwest
Texas Trails
Theodore Roosevelt
Three Fires
Three Harbors
Three Rivers
Tidewater
Transatlantic
Trapper Trails
Tukabatchee Area
Tuscarora
Twin Rivers
Twin Valley
Ventura County
Verdugo Hills
Virginia Headwaters
Voyageurs Area
W.D. Boyce
Washington Crossing
West Tennessee Area
Westark Area
Western Los Angeles County
Western Massachusetts
Westmoreland-Fayette
Winnebago
Yocona Area
Yucca

# EXHIBIT H

# RELATED NON-DEBTOR ENTITIES

Arrow WV, Inc.
Atikaki Youth Ventures Inc.
Atikokan Youth Ventures Inc.
BSA Asset Management, LLC
BSA Endowment Master Trust
Learning for Life
National Boy Scouts of America Foundation

# EXHIBIT I

## HARTFORD INSURANCE SETTLEMENT AGREEMENT

**EXHIBIT J**

**NON-MONETARY COMMITMENTS**

***(to be supplemented after consultation with representatives of holders of Direct Abuse Claims)***

# SCHEDULE 1

# ARTWORK

# SCHEDULE 2

# BSA INSURANCE POLICIES

# SCHEDULE 3

# LOCAL COUNCIL INSURANCE POLICIES

# SCHEDULE 4

# OIL AND GAS INTERESTS