**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>           Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Proposed Hearing Date: [_____], 2021**<br><br>**Re: Dkt. 5368, 5371, 5373** |

**MOVING INSURERS' MOTION TO ADJOURN THE HEARING TO CONSIDER**
**APPROVAL OF DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES**
**FOR THE THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**
**FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

The Moving Insurers[1] respectfully request that the Court adjourn the hearing scheduled for

July 20, 2021 (with objections due on July 8, 2021) to consider approval of BSA's Disclosure

Statement and Solicitation Procedures until 28 days after the Debtors file a revised Disclosure

Statement, with an accompanying Plan and Trust Distribution Procedures (the "**TDPs**").  The

Moving Insurers further request that the supplemental deadline to object to the Debtors' revised

Disclosure Statement should be set 7 days before the Disclosure Statement Hearing.  This relief is

necessary in light of BSA's disclosure that it intends to file a new Plan of Reorganization, new

Disclosure Statement and new TDPs together with a motion to approve a Restructuring Support

Agreement with the TCC, the Coalition, FCR (the "**Claimants' Representatives**") and certain

others (the "**RSA Motion**"), sometime this week – a scant 19 days before the currently scheduled

July 20th hearing date and a week (over a holiday weekend) before objections would be due.

---

[1]    The "Moving Insurers" are those identified in the signature block below.

## PRELIMINARY STATEMENT

1.      On June 18, BSA filed a placeholder Third Amended Plan and Disclosure Statement that reflected the then status of the discussions with a note that further revisions to the documents would be forthcoming.  That Disclosure Statement is currently scheduled to be heard on July 20, with objections due July 8.  On Friday, June 25, BSA informed the Moving Insurers that it intends to file a new Plan of Reorganization, new Disclosure Statement and new TDPs together with a motion to approve a Restructuring Support Agreement with the Claimants' Representatives and certain others.  It is now Thursday, July 1, just a week (overlapping with the Fourth of July holiday weekend) before the noticed July 8 objection deadline, and less than three weeks before the Disclosure Statement Hearing, and still the Debtors have not filed their new Plan, new Disclosure Statement, or new TDPs.

2.      Although the Moving Insurers have not seen the new Plan or Disclosure Statement, a limited review of the proposed RSA and TDPs sent to the Moving Insurers in draft form last Friday evening (June 25th) starkly reveals that the new Plan will materially modify the Third Amended Plan.  In particular, the changes to the terms for the allowance and valuation of claims (*i.e.*, the TDPs, of which there are now one set, instead of two), which are the heart of a mass tort case, represent a sea change in the direction of this case.  The Debtors seek to allow the Moving Insurers less than a week (overlapping with the July 4 holiday weekend) to review the new Plan documents and prepare objections on complex legal issues.  Such a schedule is both completely unreasonable and legally impermissible.  Bankruptcy Rule 3017(a) permits a bankruptcy court to hold a disclosure statement hearing "on at least 28 days' notice."  The shortened notice that Debtors seek to foist on parties in interest, including the Moving Insurers, is therefore unlawful.

3.      The new Plan, new Disclosure Statement, and new TDPs are the product of the closed door meetings between BSA and Claimants' Representatives that have occurred from June 2nd, and from which the insurers were wholly excluded.  A review of publicly available documents indicates that, after BSA and the Local Councils reached an agreement fixing their contributions to a plan of reorganization, and thus no longer had an economic interest in what claims are allowed, BSA turned over the pen to the Claimants' Representatives to re-draft the Plan and the terms for allowing and valuing the claims of their constituents.

4.      With only the fox guarding the henhouse, the outcome is utterly at odds with what BSA itself asserted was necessary for a confirmable plan and is permissible under the Bankruptcy Code.[2]  Moving Insurers understand that the new Plan and TDPs have now been loaded with provisions that ask the Court to make findings, such as that the TDPs adjudicate BSA's "liability" for 82,000 individual claims, in an effort to decide insurance coverage issues.  This is an about face, given prior discussions with the Court that the Plan should be insurance neutral.

5.      In addition, it appears that changes to the Plan and TDPs are contemplated to leave the charitable organizations associated with scouting outside the protections afforded by the Plan making the releases offered by the plan illusory.  On top of this, although the revised version of the Plan has not been distributed, the fundamental structure of the Plan also appears poised to change since aspects of the toggle portion of the Plan have apparently been changed or dropped. These changes raise entirely new and complex legal and disclosure issues that merit thoughtful briefing.

---

[2]    While the Debtors and the Moving Insurers disagree as to whether the prior version of the Plan was insurance neutral, both agreed that it was important that the Plan included insurance neutrality language. At the May 19, 2021 hearing, BSA's lead counsel noted the insurance neutrality provisions in the Plan and recognized that removing that language would result in an "epic battle." *See* 5/19/21 Omnibus Hr'g Tr. at 44:3–45:10.

6.      The Court similarly should not schedule the RSA Motion for hearing on July 20, 2021, for two reasons.  First, the RSA Motion itself seeks impermissible relief, including the payment of millions of dollars to the Coalition ostensibly for its professional fees, in violation of Bankruptcy Code section 503(b)(3).   Second, judicial economy counsels in favor of an adjournment.  The RSA Motion is inextricably linked to the new Plan and Disclosure Statement. The Moving Insurers intend to seek discovery from the Debtors regarding BSA's decision to enter into the RSA, particularly when the Plan that BSA is required to file under the RSA would be unconfirmable on its face.  An adjournment will give the parties sufficient time to conduct that discovery in an orderly manner.

7.      No doubt, BSA will argue that any delay will jeopardize their ability to emerge from chapter 11.  Such concerns, to the extent they are real, are entirely of BSA's own making. BSA continues to point to the professional fee burn as the basis for the need for speed.  Yet, by way of the RSA, BSA proposes spending an additional *$950,000 per month* on the Coalition's fees, on top of an additional *$10.5 million* to be paid on the plan effective date for the Coalition's professional fees (on top of and in addition to the 40% plus contingency fees to be taken by the Coalition firms).  In addition, over a month ago, to assist BSA in conserving cash, Century filed a motion requesting that the 20% interim fee application holdback be converted to an end-of-case holdback.  BSA unilaterally adjourned that motion repeatedly without consulting Century.  BSA's bankruptcy counsel then oversaw the disbursement of $6 million to themselves and other estate professionals without waiting for the motion to be decided.   Finally, it appears that BSA's settlement contains a mechanism for reducing the contribution of BSA to the trust the longer the case takes to resolve.

8.    Accordingly, Moving Insurers seek the Court's assistance to require the Debtors to comply with Rule 3017(a) of the Federal Rules of Bankruptcy Procedure, which requires that the Debtors provide 28-days' notice of the Disclosure Statement Hearing to parties-in-interest.  The Disclosure Statement Hearing and the hearing to consider the RSA Motion should be adjourned to a later date.

## RELIEF REQUESTED

9.    By this Motion, Moving Insurers respectfully request that the Court adjourn the Disclosure Statement Hearing set for July 20th, and, as required by Rule 3017(a) of the Federal Rules of Bankruptcy Procedure, schedule a hearing on the Disclosure Statement and the RSA Motion for a date that is not less than 28 days after the Debtors file the revised Plan, Disclosure Statement, and TDPs, with the date for the filing of objections to the revised Disclosure Statement and the RSA Motion being moved to 7 days before the Disclosure Statement Hearing.

## BASIS FOR RELIEF REQUESTED

10.    The Disclosure Statement Hearing must be adjourned until 28 days after the Debtors file a revised Disclosure Statement, with an accompanying Plan and TDPs, and the deadline to object to the Debtors' revised Disclosure Statement should be set 7 days before the Disclosure Statement Hearing.

11.    Under Bankruptcy Rule 3017(a), the Court may only hold a hearing to approve a disclosure statement on "at least 28 days' notice" to parties-in-interest.  While the Debtors may certainly make immaterial or minor modifications to disclosure statements less than 28 days before a hearing, if there are wholesale amendments or modification to the disclosure statement or plan, as is contemplated here, it is appropriate to adjourn or reschedule the hearing so that parties receive

the full notice and opportunity to object to the disclosure statement required by Bankruptcy Rule 3017(a).

12.    A disclosure statement must contain adequate information to enable a hypothetical investor to make an informed judgment about the plan to which the disclosure statement relates. *See* 11 U.S.C. § 1125(b).  The provision of adequate information in a disclosure statement is a key requirement of the Bankruptcy Code. *See, e.g.*, *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).  But the Debtors have yet to file the complete revised Plan and Disclosure Statement that the Debtors expect to be considered for approval on July 20.  Because parties will rely on the Disclosure Statement when considering how to vote on the Debtors' Plan, the "importance of full and honest disclosure cannot be overstated." *See, e.g.*, *Santiam-Midwest Lumber Co.*, 81 F.3d at 362.

13.    The TDPs are a key component of the Plan.[3]  It is presently contemplated that Abuse Claims will be satisfied by the Settlement Trust in accordance with the TDPs, which will, among other things, provide the means for resolving Abuse Claims.  Based on what the Debtors sent Moving Insurers on June 25, BSA and the Claimants' Representatives have completely revised the TDPs since filing the Third Amended Plan.  The TDPs will now ask the Court to adjudicate BSA's "liability" and any insurance coverage for the Abuse Claims.  Especially for a plan of this complexity, it is imperative that a disclosure statement provide sufficient information on the number and scope of the claims against the estate and the criteria to disallow claims, which are

---

[3]    While not an asbestos plan, the Settlement Trust as disclosed falls far short of the requirements under Bankruptcy Code section 524(g)(2)(b)(ii)(V), which requires a trust to process claims "through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms."  The Moving Insurers anticipate that the revised TDPs will be even worse.

addressed in the TDPs.  *See In re RADCO Props., Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) ("Creditors not only rely on the disclosure statement to form their ideas about what sort of distribution or other assets they will receive but also what risks they will face."); *In re Kiklis*, 352 B.R. 355, 360 (Bankr. D. Mass. 2006) (sustaining objection because "the Disclosure Statement is insufficient in that it does not provide [a creditor] any information regarding the proposed treatment of that portion of its claim that is unsecured").  But the Debtors have yet to file the revised Disclosure Statement or the revised TDPs.  The modified TDPs warrant adjournment of the hearing until parties have had sufficient time to review those changes.

14.    On June 18, 2021, following meetings between the Debtors and the Claimant's Representatives counsel held on May 26–27, June 2–3, and June 7–9, the Debtors filed various placeholder documents – the *Third Amended Chapter 11 Plan of Reorganization* [D.I. 5368]; *Proposed Amendments to Disclosure Statement for the Third Amended Chapter 11 Plan of Reorganization* [D.I. 5371]; and the *Amended Notice of Hearing to Consider Approval of Disclosure Statement and Solicitation Procedures for the Third Amended Chapter 11 Plan of Reorganization* [D.I. 5373].  As set forth in the notice, a Disclosure Statement Hearing was scheduled for July 20 and the deadline for parties to object to the Disclosure Statement is July 8.

15.    While ostensibly invited to attend what was billed as a mediation in June, the Moving Insurers were excluded from all the meetings between the BSA and Claimants' Representatives counsel concerning the formulation of a plan of reorganization and the terms for the allowance and valuation of claims.  Nor were the Moving Insurers provided with revised drafts of the plan or TDPs on which they could comment during this period.  Indeed, BSA refused even to provide the Moving Insurers with copies of the term sheets that were exchanged.

16.     Late Friday evening, June 25, the Debtors provided the Moving Insurers with a plan term sheet, draft TDPs, and Restructuring Support Agreement, which the Debtors indicated were not agreed, and were not in final form.  The drafts reflect significant substantive changes to the Plan structure.  Among many other changes, the new Plan and Disclosure Statement will materially change the TDPs (which govern how Abuse Claims will be allowed and valued under the Plan), the treatment of insurance policies, and the provisions governing the transfer and/or assignment of rights under the insurance policies.  For example, the revised TDPs significantly increase the so-called expedited distribution amount for Abuse Claims (from $1,500 per claim to $3,500 per claim) that are excused from any real review.  And these are not the only changes that are contemplated— as shown in the term sheet describing the new Plan and Disclosure Statement, the Debtors and Claimant Parties revamped the entire Plan structure.  Review of these changes, and preparation of responses thereto, will take time and, accordingly, due process requires adjournment of the Disclosure Statement Hearing.

17.     Despite making material modifications to the Plan and TDPs, the Debtors still wish to go forward with the Disclosure Statement Hearing on July 20.  In light of the new Plan and Disclosure Statement, which are still yet to be filed, this timeline is now wholly inappropriate.  The new Plan and Disclosure Statement will be filed—at best—19 days before the scheduled Disclosure Statement Hearing.  Moving Insurers are entitled to the full statutory period to review and respond to a new Disclosure Statement.  But the current schedule only gives parties less than a week over a holiday weekend to review and brief objections to the extensively revised Plan, Disclosure Statement, TDPs, and other related documents.  That is not enough time to adequately and appropriately analyze the terms of the new Plan, especially given the significant changes to the new Plan (including the TDPs) and new Disclosure Statement.

18.     On Friday, June 25, BSA indicated that it would file the revised Plan documents this week.  They have yet to do so.  Given the delay, the Moving Insurers thought BSA would adjourn the Disclosure Statement Hearing on its own initiative but, instead, they are holding back filing the revised Plan, Disclosure Statement, and TDPs to the eve of a holiday weekend.  By doing so, the Debtors are jamming the parties and taking tactical advantage to avoid fair consideration of extremely important issues.

19.     Recently, this Court faced a similar issue and granted a request to adjourn the disclosure statement hearing in *Imerys*.  The debtors in *Imerys* continued making material changes to the TDPs and dramatically amending the plan and disclosure statement on the eve of several hearings to approve the disclosure statement.  This Court refused to consider the disclosure statement on such short notice, adjourning the hearing until parties had an opportunity to review the documents. *See* Transcript of Telephonic Conference at 45:16–48:4, *In re Imerys Talc America, Inc., et al.*, Case No. 19-10289 (LSS) (Bankr. D. Del. Oct. 7, 2020).  As in *Imerys*, the Disclosure Statement Hearing should be adjourned until the revised Plan and Disclosure Statement and filed and parties are given sufficient time to review the new Plan, Disclosure Statement, and TDPs.

20.     In fact, at the March 17th hearing in this case, the Court raised concerns with going forward with the disclosure statement before necessary information and documents are filed.  *See* 03/17/21 Omnibus Hr'g Tr. at 48:8–20.  The Moving Insurers have been advised by the Debtors that the changes that will be made by the new Plan will materially modify the Third Amended Plan.  If the Disclosure Statement Hearing goes forward on July 20th, this Court will face the same problem it did back in March—critical information will either be missing or will have been filed so soon before the hearing that the parties in interest who need to comment on that information

9

(*i.e.*, those that were not parties to the negotiations) would not have been given adequate opportunity to do so. It is premature to go forward with the Disclosure Statement Hearing until those revised documents are filed.

21.     The Court should not allow the Debtors to circumvent the notice requirements under Bankruptcy Rule 3017(a) by submitting material Plan, Disclosure Statement, and TDP amendments without providing for an adequate opportunity to review those documents; that review requires an adjournment of the hearing. The Bankruptcy Rules require parties to receive sufficient notice and time to review all documents relevant to the revised Plan and object to the revised Disclosure Statement in advance of the hearing. *See* Bankruptcy Rule 3017(a). Per Rule 3017(d), "Section 1125(c) of the Code requires that the entire approved disclosure statement be provided in connection with voting on a plan." *See* Comment to Rule 3017(d). BSA has not filed the revised Plan or the revised Disclosure Statement yet. In accordance with Bankruptcy Code section 1125, the Court should adjourn the Disclosure Statement Hearing to a date after the revised Plan documents are filed and parties are given an opportunity to review them.

22.     In addition to the new Plan and Disclosure Statement, the Debtors have represented that they will file a motion to approve a Restructuring Support Agreement this week and request that it be heard at the hearing on July 20. It appears the Debtors will also seek to shorten notice to consider that motion, as Bankruptcy Rule 2002(a)(2) requires 21 days' notice to consider a motion under Bankruptcy Code section 363. The Court should not permit the Debtors to do that. The RSA Motion should also be adjourned for the additional reason that it makes sense for it to be heard together with the hearing to approve the new Disclosure Statement. While there will be novel issues to address in connection with the RSA Motion (including the Debtors' illegal attempt to pay the Coalition's professional fees without having to prove they made a "substantial

contribution" under Bankruptcy Code section 503(b)), some of the issues will overlap with the new Plan and Disclosure Statement. The Moving Insurers also intend to take discovery from the Debtors. Adjourning the RSA Motion will facilitate an orderly discovery process.

## NOTICE

23.     Notice of this Motion has been provided to (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Tort Claimants' Committee; (e) counsel to the Future Claimants' Representative; (f) counsel to the Coalition; (g) counsel to the Ad Hoc Committee of Local Councils; and (h) all parties requesting notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002.[4] Moving Insurers submit that no other or further notice is necessary under the circumstances.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Moving Insurers respectfully request that the Court grant the relief requested herein and enter the Proposed Order adjourning the Disclosure Statement Hearing and the hearing on the RSA Motion until 28 days after the Debtors file a revised Disclosure Statement, with an accompanying Plan and TDPs, and setting the date for the filing of objection to the revised Disclosure Statement and the RSA Motion 7 days before the Disclosure Statement Hearing.

*Remainder of Page Intentionally Left Blank*

---

[4]    This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The bases for the relief requested herein are section 105 of the Bankruptcy Code and Rule 3017(a) of the Federal Rules of Bankruptcy Procedure.

Dated: July 1, 2021

Respectfully Submitted,

By: /s/ *Stamatios Stamoulis*
      Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile:  302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile:  212 326 2061

*Counsel for Century Indemnity Company, as*
*successor to CCI Insurance Company, as*
*successor to Insurance Company of North America*

/s/ Robert D. Cecil, Jr.
Robert D. Cecil, Jr. (No. 5317)
Tybout, Redfearn & Pell
501 Carr Road, Suite 300
Wilmington, DE 19809Phone: (302) 658-6901
E-mail:  rcecil@trplaw.com

Mark D. Plevin  (admitted *pro hac vice*)
Crowell & Moring LLP
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Phone:  (415) 986-2800
E-mail:  mplevin@crowell.com

Tacie H. Yoon  (admitted *pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Phone: (202) 624-2500
Email:   tyoon@crowell.com

*Attorneys for American Zurich Insurance
Company, American Guarantee and Liability
Insurance Company, and Steadfast Insurance
Company*


/s/ Deirdre M. Richards
FINEMAN KREKSTEIN & HARRIS PC
Deirdre M. Richards (DE Bar No. 4191)
1300 N. King Street
Wilmington, DE 19801
Telephone:    (302) 538-8331
Facsimile:     (302) 394-9228
Email: drichards@finemanlawfirm.com

-and-

FORAN GLENNON PALANDECH PONZI &
RUDLOFF P.C.
Susan N.K. Gummow (admitted *pro hac vice*)
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Telephone:    (312) 863-5000
Facsimile:     (312) 863-5009
Email: sgummow@fgppr.com

1

-and-

GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal (admitted *pro hac vice*)
James Hallowell (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
Email:        mrosenthal@gibsondunn.com
              jhallowell@gibsondunn.com
              kmartorana@gibsondunn.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Matthew G. Bouslog (admitted *pro hac vice*)
3161 Michelson Drive
Irvine, California 92612
Telephone:    (949) 451-3800
Facsimile:    (949) 451-4220
Email: mbouslog@gibsondunn.com

*Attorneys for the AIG Companies*

**Goldstein & McClintock LLLP**

/s/ *Maria Aprile Sawczuk*
Maria Aprile Sawczuk (DE #3320)
501 Silverside Road
Wilmington, DE 19809
302-444-6710
marias@goldmclaw.com

-and-

Laura McNally (admitted *pro hac vice*)
Emily Stone
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155
lmcnally@loeb.com
estone@loeb.com

*Attorneys for The Continental Insurance Company
and Columbia Casualty Company*

/s/ *Bruce W. McCullough*
BODELL BOVÉ, LLC
Bruce W. McCullough  (No.  3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

- and -

CLYDE & CO US LLP
Bruce D. Celebrezze (*pro hac vice*)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
Email:    bruce.celebrezze@clydeco.us

Konrad R. Krebs (*pro hac vice*)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone:  (973) 210-6700
Facsimile:  (973) 210-6701
Email:    konrad.krebs@clydeco.us

- and –

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (*pro hac vice*)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email:  dchristian@dca.law

*Attorneys for Great American Assurance
Company, f/k/a Agricultural Insurance Company;
Great American E&S Insurance Company, f/k/a
Agricultural Excess and Surplus Insurance
Company; and Great American E&S Insurance
Company*

REGER RIZZO & DARNALL LLP
*/s/ Louis J. Rizzo, Jr.*
Louis J. Rizzo, Jr., Esquire (#3374)
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE 19803
(302) 477-7100
Email:  lrizzo@regerlaw.com

*Attorney for Defendants, Travelers Casualty and
Surety Company, Inc. (f/k/a Aetna Casualty &
Surety Company), St. Paul Surplus Lines
Insurance Company and Gulf Insurance Company*

Troutman Pepper Hamilton Sanders LLP

By: /s/ *David M. Fournier*
David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:       302.777.6500
Facsimile:       302.421.8390

*-and-*
Harris B. Winsberg (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:       404.885.3000
Facsimile:       404.885.3900

*-and-*

Nicolaides Fink Thorpe Michaelides
Sullivan LLP
Matthew S. Sorem (admitted *pro hac vice*)
10 S. Wacker Dr.
21st Floor
Chicago, IL 60606
Telephone:       312.585.1433
Facsimile:       312.585.1401

*-and-*

McDermott Will & Emery LLP
Margaret H. Warner (admitted *pro hac vice*)
Ryan S. Smethurst (admitted *pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:        202.756.8228
Facsimile:        202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*

Troutman Pepper Hamilton Sanders LLP

By: /s/ *David M. Fournier*
David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:      302.777.6500
Facsimile:      302.421.8390

*-and-*

Harris B. Winsberg (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:      404.885.3000
Facsimile:      404.885.3900

*-and-*

Bradley Riley Jacobs PC
Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:   312.281.0295

*Attorneys for National Surety Corporation and*
*Interstate Fire & Casualty Company*

**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt.** |

**[PROPOSED] ORDER GRANTING MOVING INSURERS' MOTION
TO ADJOURN THE HEARING CONSIDER APPROVAL OF
DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES FOR
THE THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR
BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

Upon consideration of the motion to adjourn (the "**Motion to Adjourn**")[2] filed by counsel for Moving Insurers for entry of an order adjourning the hearing to consider approval of Disclosure Statement and Solicitation Procedures for the Third Amended Chapter 11 Plan of Reorganization for Boy Scouts Of America and Delaware BSA, LLC (the "**Disclosure Statement Hearing**") now scheduled for July 20, 2021, as more fully set forth in the Motion to Adjourn; and due and sufficient notice of the Motion to Adjourn having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion to Adjourn and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion to Adjourn and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2);

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning given to those terms in the Motion to Adjourn.

and this Court's entry of a final order being consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been scheduled and, to the extent necessary, held to consider the relief requested in the Motion to Adjourn (the "**Hearing**"); and upon the record of the Hearing (if any was held) and all of the proceedings before the Court; and the legal and factual bases set forth in the Motion to Adjourn and at the Hearing (if any was held) having established just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion to Adjourn is GRANTED as set forth herein.

2.      The Disclosure Statement Hearing shall be adjourned from July 20, 2021 to _____, 2021, with dates for the filing of objections to the Disclosure Statement being moved correspondingly.

3.      The hearing on the RSA Motion shall be adjourned from July 20, 2021 to _____, 2021.

4.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.      The Court shall retain exclusive jurisdiction over matters pertaining to this Order.