IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Dkt. 5461, 5467, 5472** |

**MOVING INSURERS' REPLY IN SUPPORT OF THE
MOVING INSURERS' MOTION TO ADJOURN THE HEARING TO CONSIDER
APPROVAL OF DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES
FOR THE THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC AND
<u>OBJECTION TO THE DEBTORS' MOTION TO SHORTEN TIME</u>[1]**

Shortly before midnight on Friday, July 2, 2021 (on the eve of a holiday weekend), the Debtors filed the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 5484] (the "**Fourth Amended Plan**") and the *Amended Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 5485] (the "**Disclosure Statement**"), along with hundreds of pages of ancillary solicitation and confirmation scheduling documents. Redlines of the Fourth Amended Plan, the Trust Distribution Procedures, and the Disclosure Statement [D.I. 5486] reveal the extent to which the key provisions of those documents were completely revised from the previous versions. On the evening of July 1, 2021, the Debtors filed their *Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement, and (II) Granting Related*

---

[1] Capitalized terms set forth herein that are not defined shall have the meanings set forth in the Moving Insurers' Motion to Adjourn the Hearing to Consider Approval of Disclosure Statement and Solicitation Procedures for Third Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 5461] (the "**Motion to Adjourn**").

*Relief* [D.I. 5466] (the "**RSA Motion**"), accompanied by a motion to shorten notice [D.I. 5468] (the "**Motion to Shorten**").[2]

A draft of the new Plan and Disclosure Statement was not shared with the insurers before it was filed. Nor was any reason offered for the mid-night Friday filing before a holiday weekend. Contrary to the assertions of the Debtors, the timing of the filing of these motions and the related Plan Documents was strategic as it hinders the ability of the insurers and objecting claimants to defend their rights and to develop a full factual record. This gamesmanship should not be endorsed by this Court, and the Debtors' objection to the Motion to Adjourn should be denied.

## I. The RSA Motion

The Debtors argue in their Motion to Shorten that parties in interest will not be prejudiced by the shortened notice period, because "many of the plan-related terms of the RSA were incorporated into the [Third Amended Plan]". While this assertion is wrong given the significant changes made to the Fourth Amended Plan discussed below, it also completely ignores the extraordinary relief that is being requested under the RSA Motion itself.

Among other things, the proposed order filed with the RSA Motion seeks findings regarding the merits of the RSA and the terms of the Fourth Amended Plan on which the RSA is premised, including findings that the Debtors and the Claimants' Representatives acted in good faith. The Debtors also seek findings concerning the nature of the discussions that took place behind closed doors while the insurers were excluded. These findings are entirely unnecessary under section 363 of the Bankruptcy Code. If Debtors persist in requesting them, the Moving Insurers are entitled to discovery to oppose them.

---

[2] The Moving Insurers are filing a separate document, objecting to the Debtors' Motion to Shorten, that incorporates the arguments made in the Motion to Adjourn and this reply.

In addition, the Debtors are required to make a showing that the business judgment standard has been satisfied—a showing that is not a slam dunk in this case. By pursuing a plan that is not insurance neutral (and that expressly attempts to rewrite the terms of the insurance policies) and that purports to adjudicate BSA's liability to 82,000 individual claims, the Debtors are simply bargaining for years of litigation and a delayed exit from bankruptcy. Moreover, the fact that the Fourth Amended Plan fails to obtain releases for Chartered Organizations that are the heart of the Debtors' operations leaves the Debtors with incomplete and illusory relief. For these reasons and others, the insurers believe that satisfaction of the business judgment standard is an open question, and will require substantial discovery to develop a full evidentiary record.

Finally, the standard applicable to payment of non-estate professional fees in connection with a restructuring support agreement is the Bankruptcy Code section 503(b) substantial contribution standard, not the business judgment standard. Assuming 503(b) of the Bankruptcy Code is applicable, significant discovery will be required to evaluate the propriety of the proposed $10.5 million to be paid to the Coalition professionals after the effective date of the Plan and $950,000 per month upon approval of the RSA.

The Debtors originally proposed to produce only two of four deponents[3] initially sought by the Moving Insurers and sought to severely limit the time allowed for the other two.[4] After a

---

[3] The Moving Insurers noticed depositions of (1) Roger C. Mosby, President and Chief Executive Officer of BSA; (2) Brian Whittman, Managing Director with Alvarez & Marsal North America, LLC, the Debtors' restructuring advisor; (3) Dan Ownby, National Chair of BSA; and (4) Mitchell A. Toups, a State Court Counsel signatory to the RSA. [D.I. 5487]. Both Mr. Mosby and Mr. Whittman submitted declarations in support of the RSA Motion and their testimony on it is therefore plainly required. [*See* D.I. 5469 & 5470]. Further, Mr. Mosby notes in his declaration that support for the RSA is in BSA's best interests "[i]n my opinion, *as well as the Board's*." [*See* D.I. 5469 at 2]. It is therefore crucial to also take the deposition of Mr. Ownby, as his responsibilities to BSA include chairing meetings of the National Council and providing oversight to the BSA's strategic plan. *See* National Chair (Volunteer), BSA Scouting Newsroom https://www.scoutingnewsroom.org/about-the-bsa/national-leadership/national-chair/ (last visited July 6, 2021).

[4] *See* Declaration of Salvatore J. Cocchiaro in Support of Moving Insurers' Reply in Support of the

meet and confer, the Debtors agreed to produce a third deponent, but only on a schedule that requires the Moving Insurers to take back-to-back depositions in one day, effectively ensuring that neither of the depositions is given sufficient time to explore the issues. While BSA has said it may produce documents later this week, it has declined to say what it will produce while asserting that it will hold back most documents on mediation privilege grounds. The Coalition bankruptcy professionals, for their part, responded to Century's document requests by asserting all the documents they have – everything – is mediation privileged.[5]

The shortened time given for discovery into, and consideration of, the findings sought to approve the RSA Motion prejudice the Moving Insurers and all other objectors and leave inadequate time for briefing, particularly in light of the fact that disputes regarding production of witnesses and documents are sure to arise, and will need to be briefed and decided by this Court.

## II. The Fourth Amended Plan and Disclosure Statement

Contrary to the Debtors' assertions, the Fourth Amended Plan and Disclosure Statement (drafts of which were not delivered to the Moving Insurers before their midnight Friday filing) contain significant material changes to the plan's structure and key terms.[6] In addition to the

---

Moving Insurers' Motion to Adjourn the Hearing to Consider Approval of Disclosure Statement and Solicitation Procedures for the Third Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC and Objection to the Debtors' Motion to Shorten Time (the "**Cocchiaro Declaration**") at Exh. 1 (BSA Counsel Email Proposing to Limit Depositions).

[5] *See, e.g.*, Cocchiaro Declaration Exh. 2 (The Coalition of Abused Scouts for Justice's Responses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding)) Nos. 1, 2, 3, 4, 5, 6, and 7 (invoking Rule 9019-5(d) of the Local Rules to deny production of any communications or documents); Cocchiaro Declaration Exh. 3 (Brown Rudnick LLP's Reponses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding)) Nos. 1, 2, 3, 4, 5, 6, and 7 (same).

[6] There may have been arm's length negotiations between the Debtors and the claimants as to what BSA and the Local Councils are to contribute. But once the dollar amount that BSA is to contribute was set, the Debtors turned over the pen to the claimants to draft the TDPs. The TDPs are not the product of arm's length negotiations. As in *Imerys*, they were drafted by the claimants to suit the claimants'

4

wholesale elimination of the "Toggle Plan," the procedures for the allowance and valuation of claims—which are the heart of a mass tort case—have been changed from a mere administrative framework for the distribution of funds collected by the Trust, into a prospective judicial adjudication of BSA's liability for each of the 82,000 individual claims, including insurance coverage for the claims. Even some Coalition members are bamboozled by these developments and remain skeptical of how the Plan and Disclosure Statement will operate in practice.[7]

These modifications, particularly when combined with newly added conditions precedent to confirmation which require the Bankruptcy Court to expressly find that the unilaterally determined claim amounts of each Claimant are "fair and reasonable" and binding on the insurers, effectively attempt to rewrite the Debtors' prepetition insurance policies. As such, the Moving Insurers are entitled to a fair opportunity to assess and file whatever new objections may exist after a meaningful review of the Fourth Amended Plan and Disclosure Statement. The Moving Insurers will need to assess the Fourth Amended Plan and Disclosure Statement (containing hundreds of pages), draft wholly new objections, and potentially negotiate with the Debtors to narrow the disclosure issues—all of which will benefit the process and the Debtors if it is done in an orderly fashion. The material changes made to the Fourth Amended Plan and the Disclosure Statement

---

desires without a counterparty that had an economic interest in the outcome.

[7] *See* Cocchiaro Declaration Exh. 4 (Kosnoff Law (@SexAbuseAttys) July 6, 2021 Tweets) ("[The Coalition lawyers] are telling the media and their clients that the Settlement Trustee's awards to victims will be binding on the insurance companies. There is zero legal support for that proposition. And if it were true, why isn't it in the Plan and DS? This is flat out dishonesty . . . The plan also sets up terrifying coverage defenses that would not exist otherwise. This is not a bridge to NeverNeverLand. It's the Road to Perdition . . . [H]ow can the Plan Disclosure statement be approved if a claimant isn't informed how much his council is contributing, how can he make an informed decision to vote to release all his legal rights to sue that council? In legal terminology, we call it bull**** . . . Why are these Coalition lawyers doing this? Are they simply stupid or are they financially desperate?").

demand an adjournment of the Disclosure Statement Hearing, such that the Moving Insurers have the benefit of at least the 28 days' notice required by Rule 3017(a).

### III. The Debtors Arguments are Without Merit

The Debtors argue that their extension of the objection deadline for both the Disclosure Statement and RSA Motion to July 13, 2021 (now voluntarily moved by the Debtors to July 14) should ameliorate the concerns of the Moving Insurers. However, that extension only gives the Moving Insurers an additional four business days to review the revisions to the Fourth Amended Plan and Disclosure Statement (including the wholly new TDPs), conduct discovery, resolve any discovery disputes and brief a host of entirely new issues. With only this modest extension of the objection deadline, the Moving Insurers are still prejudiced.

In opposing the motion to adjourn, the Debtors attempt to indicate that the Moving Insurers were included in meetings and communications concerning the formulation of a Plan and the TDPs but are careful to not make this point expressly. To be clear, the Moving Insurers were excluded by the Debtors from **all the meetings** between the Debtors and the Claimants' Representatives concerning the Plan and TDPs.[8] And if keeping the Moving Insurers out of mediation sessions were not enough, the Debtors now are attempting to use the mediation privilege as a shield to deny discovery into the very Plan and TDPs developed behind closed doors.[9]

---

[8] Counsel for the insurers objected that the insurers were being systemically excluded from the all meeting and communications between BSA and the Coalition/TCC/FCR at each of the last two hearings on May 19, 2021 and April 12, 2021. *See* May 19, 2021 Hearing Transcript at 71:12–18 (Mr. Schiavoni: "All of the sessions that have taken place in the mediation between the debtors and the claimants, we've been excluded from."); April 12, 2021 Hearing Transcript at 25:11–23 (Mr. Schiavoni: "The actual reality on the ground was that Century was excluded from all meetings . . . between the Boy Scouts and the [C]oalition.").

[9] *See* Cocchiaro Declaration Exh. 5 (Debtors' Revised Responses and Objections to Century's Request to the Debtors for Production of Documents) Nos. 5, 6, and 10 (invoking the mediation privilege to deny insurer access to communications and documents relating to Plan term sheets, TDPs, and any drafts thereof); *see also* Cocchiaro Declaration Exh. 6 (May 14, 2021 Email from Andrew Kirschenbaum to the Debtors) ("On behalf of Century, we asked you today whether the BSA has

**CONCLUSION**

The Debtors have made extensive changes to the plan and disclosure statement since the Moving Insurers filed their initial disclosure objections in May, which changes directly impact the insurers. Given the material revisions to the plan terms and structure, the Court should not permit the Debtors to go forward on the current schedule, which fails to provide parties with appropriate notice.

WHEREFORE, for the reasons set forth herein, the Moving Insurers respectfully request that the Court overrule the Debtors' Objection and grant the relief requested in the Motion to Adjourn.

*Remainder of Page Intentionally Left Blank*

---

received any updated term sheet from the Coalition. BSA stated it would not discuss this due to mediation privilege.").

Dated: July 6, 2021                                   Respectfully Submitted,

                                                     By: /s/ Stamatios Stamoulis
                                                          Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile:  302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile:  212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

**Joining in the Reply**

Robert D. Cecil, Jr. (No. 5317)
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
Wilmington, Delaware  19899-2092
Phone: (302) 658-6901
E-mail:  rcecil@trplaw.com

Mark D. Plevin  (admitted *pro hac vice*)
Crowell & Moring LLP
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Phone:  (415) 986-2800
E-mail:  mplevin@crowell.com

Tacie H. Yoon  (admitted *pro hac vice*)
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Phone: (202) 624-2500
Email:    tyoon@crowell.com

*Attorneys for American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company*

FINEMAN KREKSTEIN & HARRIS PC
Deirdre M. Richards (DE Bar No. 4191)
1300 N. King Street
Wilmington, DE 19801
Telephone:    (302) 538-8331
Facsimile:     (302) 394-9228
Email: drichards@finemanlawfirm.com

-and-

FORAN GLENNON PALANDECH PONZI & RUDLOFF P.C.
Susan N.K. Gummow (admitted *pro hac vice*)
222 N. LaSalle St., Suite 1400
Chicago, Illinois 60601
Telephone:    (312) 863-5000
Facsimile:     (312) 863-5009
Email: sgummow@fgppr.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Michael A. Rosenthal (admitted *pro hac vice*)
James Hallowell (admitted *pro hac vice*)
Keith R. Martorana (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035
Email:    mrosenthal@gibsondunn.com
    jhallowell@gibsondunn.com
    kmartorana@gibsondunn.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Matthew G. Bouslog (admitted *pro hac vice*)
3161 Michelson Drive
Irvine, California 92612
Telephone:    (949) 451-3800
Facsimile:    (949) 451-4220
Email: mbouslog@gibsondunn.com

*Attorneys for the AIG Companies*


GOLDSTEIN & MCCLINTOCK LLLP

Maria Aprile Sawczuk (DE #3320)
501 Silverside Road
Wilmington, DE 19809
302-444-6710
marias@goldmclaw.com

-and-

Laura McNally (admitted *pro hac vice*)
Emily Stone
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, IL 60654
312-464-3155
lmcnally@loeb.com
estone@loeb.com

*Attorneys for The Continental Insurance Company and Columbia Casualty Company*

BODELL BOVÉ, LLC
Bruce W. McCullough  (No.  3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

- and -

CLYDE & CO US LLP
Bruce D. Celebrezze (*pro hac vice*)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
Email:    bruce.celebrezze@clydeco.us

Konrad R. Krebs (*pro hac vice*)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone:  (973) 210-6700
Facsimile:  (973) 210-6701
Email:    konrad.krebs@clydeco.us

- and –

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (*pro hac vice*)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email:  dchristian@dca.law

*Attorneys for Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company*

REGER RIZZO & DARNALL LLP
Louis J. Rizzo, Jr., Esquire (#3374)
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE 19803
(302) 477-7100
Email:  lrizzo@regerlaw.com

*Attorney for Defendants, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company*


TROUTMAN PEPPER HAMILTON SANDERS LLP

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:	302.777.6500
Facsimile:	302.421.8390

*-and-*

Harris B. Winsberg (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:	404.885.3000
Facsimile:	404.885.3900

*-and-*

Nicolaides Fink Thorpe Michaelides
Sullivan LLP
Matthew S. Sorem (admitted *pro hac vice*)
10 S. Wacker Dr.
21st Floor
Chicago, IL 60606
Telephone:	312.585.1433
Facsimile:	312.585.1401

*-and-*

McDermott Will & Emery LLP
Margaret H. Warner (admitted *pro hac vice*)
Ryan S. Smethurst (admitted *pro hac vice*)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:	202.756.8228
Facsimile:	202.756.8087

*Attorneys for Allianz Global Risks US Insurance Company*
Troutman Pepper Hamilton Sanders LLP

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:	302.777.6500
Facsimile:	302.421.8390

*-and-*

Harris B. Winsberg (admitted *pro hac vice*)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:	404.885.3000
Facsimile:	404.885.3900

13

*-and-*

Bradley Riley Jacobs PC
Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:   312.281.0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*