# Exhibit B

Excerpts From Transcript of July 19, 2021 Deposition of Daniel Ownby

HIGHLY CONFIDENTIAL

Page 1

1        IN THE UNITED STATES BANKRUPTCY COURT
         FOR THE DISTRICT OF DELAWARE
2
3  In re:                        ) Chapter 11
                                 )
4                                ) Case No. 20-10343 (LSS)
                                 )
5  BOY SCOUTS OF AMERICA AND     )
   DELAWARE BSA, LLC,            )
6  Debtors.                      ) (Jointly Administered)
7            TRANSCRIPT DESIGNATED HIGHLY CONFIDENTIAL
8                  ORAL VIDEOTAPED DEPOSITION OF
9                          DANIEL OWNBY
10                         July 19, 2021
11       ORAL VIDEOTAPED DEPOSITION OF DANIEL OWNBY,
12  produced as a witness at the instance of Century and
13  duly sworn, was taken in the above-styled and
14  numbered cause on the 19th day of July, 2021, from
15  9:05 a.m. to 4:33 p.m., before Vickie G. Hildebrandt,
16  Certified Shorthand Reporter in and for the State of
17  Texas, reported by computerized stenotype machine
18  with the witness present in Dallas, Texas, pursuant
19  to the Federal Rules of Civil Procedure, the current
20  emergency order regarding the COVID-19 State of
21  Disaster, agreement of counsel and the provisions
22  stated on the record or attached hereto.
23
24
25

Page 94

1   time for a break for us.  Let -- let's come back at
2   11:30, please.  Thank you.
3                   MR. SCHIAVONI:  Okay.
4                   THE VIDEOGRAPHER:  Going off the
5   record.  The time is 11:22.
6                   (Recess taken.)
7                   THE VIDEOGRAPHER:  We are now on
8   record.  The time is 11:36.
9       Q.   (BY MR. SCHIAVONI) Mr. Ownby, who drafted
10  the trust allowance -- the trust allowance
11  procedures?
12                  THE COURT REPORTER:  He's on mute.
13  He's muted.
14                  You need to unmute.
15                  MR. ANDOLINA:  Can you hear us now?
16                  We can hear you, Mr. Schiavoni.  Can
17  you hear us?
18                  MR. SCHIAVONI:  Yes.
19                  MR. ANDOLINA:  Object -- object to the
20  form of the question.
21                  Is there a specific document?
22      Q.   All right.  So here, I'll start over.
23                  Mr. Ownby, who was it that came up
24  with the procedures for allowing and assigning values
25  to claims that's part of the plan that's associated

Page 95

1   with the Restructuring Support Agreement?

2        A.   I -- I don't know.

3        Q.   Okay.  In -- in supporting -- in -- in reaching

4   your decision to support the Restructuring Support

5   Agreement, did you have an understanding as to whether

6   or not claims that were barred under a state statute of

7   limitations would nonetheless be paid or not?

8              MR. ANDOLINA:  Objection to form.

9        A.   I was unaware of how the structure of a

10  state with statutes would or would not be paid.

11       Q.   And in deciding whether or not to support the

12  Restructuring Support Agreement, did you know whether or

13  not it -- it -- like the -- the -- the allowance

14  procedures allowed claims that were a minimum payment of

15  $3,500 without any inquiry into the merits of those

16  claims?

17             MR. ANDOLINA:  Objection to form.

18       A.   I was unaware of how that was negotiated and

19  worked on.

20       Q.   Did -- did you know that was in part of the --

21  the plan?

22             MR. ANDOLINA:  Objection to form.

23       A.   When I made the decision to -- as a board

24  member to support the RSA?

25       Q.   Yes.

HIGHLY CONFIDENTIAL

Page 98

1  Mr. Mosby -- Mr. Ownby --
2      A.   Ownby, right.
3      Q.   -- who is Eric Green?
4      A.   Eric Greenberg or Green -- Green -- Green,
5  you said. I believe he is the person in the RSA that
6  is the trustee in the -- in the -- in the RSA. I
7  mean, he's -- and I don't know exactly what the
8  duties and responsibility or obligations of the
9  trustee are but I think there's an Eric Green named
10 in the RSA that the advisers, and I don't know if
11 Roger and team worked on, but it was not something
12 the board discussed. We relied on our advisers on
13 that.
14     Q.   Did it matter to you whether or not the
15 settlement trustee --
16     A.   And just -- just to go back, I -- I don't --
17 some -- something tells me that there may have been
18 an Eric Green or Mr. Green early on in the process of
19 mediators. I -- and I'm not sure of that. I -- I --
20 y'all would probably know better than I do.
21     Q.   But that's not something you knew in approving
22 the RSA, whether or not Mr. Green had played a prior
23 role in the case?
24     A.   No.
25     Q.   What other options did the Boy Scouts consider

HIGHLY CONFIDENTIAL

Page 102

1               MR. ANDOLINA:  You can answer that as
2     a -- hold on.  I'm going to instruct Mr. Ownby not to
3     answer that question.
4          Q.   Is it fair to say that you had -- the -- the
5     board was presented with other options to go forward
6     with a -- a plan of reorganization -- strike that.
7               Is -- is it fair to say that the board
8     was presented with other options for a plan of
9     reorganization besides the one that was made part of
10    the Restructuring Support Agreement?
11              MR. ANDOLINA:  I'm going to object to
12    the question and instruct Mr. Ownby not to respond.
13         Q.   How much time did you spend as chair
14    familiarizing yourself with the -- the claims matrix
15    that's adopted as part of the Restructuring Support
16    Agreement?
17         A.   Prior to agreeing to it?
18         Q.   Yes.
19         A.   I don't think I saw the matrix prior to
20    agreeing to it.
21         Q.   Did the Boy Scouts indemnify the sponsoring
22    organizations -- strike that.
23              Did the Boy Scouts indemnify any of
24    the chartering organizations for abuse claims?
25              MR. ANDOLINA:  Objection to form,

1  Q.  Mr. -- sir, you've read the provision --
2          MR. ANDOLINA:  It's appropriate to put
3  the document in front of him.
4  Q.  -- you've read -- you've since read the
5  Restructuring Support Agreement, right?
6  A.  I've -- I've reviewed the Restructuring
7  Support Agreement after it was signed.  I did not
8  review it prior to it being signed.
9  Q.  Did you seek any advice about whether it's
10 ethical to pay a lawyer to advise their client on
11 something?
12         MR. ANDOLINA:  Objection to the form
13 of the question.  I think that's argumentative.
14 A.  I don't -- I don't understand the question.
15 Q.  Okay.  What -- what ability did you understand
16 the Boy Scouts had to enforce the RSA in the event the
17 claimants did not -- that are Coalition members, in
18 fact, didn't vote for the plan?
19         MR. ANDOLINA:  Objection to form,
20 calls for a legal conclusion.
21 A.  I guess I -- I would be relying on my
22 advisers and -- and the negotiating staff that are --
23 Q.  What do you --
24 A.  -- experts at this.
25 Q.  Mr. Ownby, what do you do -- do you -- do you

HIGHLY CONFIDENTIAL

Page 188

1   there's names of them but I -- and they -- and I
2   cannot name them, no, correct.
3       Q.   Okay.  You understand that those lawyers are
4   representing the Coalition, correct?
5       A.   Correct.
6       Q.   Okay.  And that there's --
7       A.   The lawyers -- when you say the lawyers,
8   you're meaning the --
9              MR. ANDOLINA:  Objection to the form
10  of the question.
11      A.   There's a lot of lawyers and so I think --
12  there's -- there's claimants and they're represented
13  by lawyers and those lawyers are represented by
14  lawyers that make up the Coalition.  That's how I
15  understand it.
16      Q.   Okay.  And do you understand that the Coalition
17  is, itself, also represented by lawyers?
18             MR. ANDOLINA:  Objection to form.
19      A.   I guess that's -- that's what I'm thinking
20  this is.
21      Q.   Okay.  And you don't know the identity of any
22  of these lawyers, correct?
23      A.   Correct.
24      Q.   Okay.  You understand that there's the Tort
25  Claimants Committee, correct?