IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BOY SCOUTS OF AMERICA<br>AND DELAWARE BSA, LLC[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Hearing Date: July 29, 2021 at 10:00 a.m.<br>Objection Deadline: July 22, 2021 at 4:00 p.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE RESTRUCTURING SUPPORT AGREEMENT, AND (II) GRANTING RELATED RELIEF (D.E. 5466)**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his undersigned attorneys, objects to the *Debtors' Motion for Entry of an Order Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* (the "RSA Motion")[2] and states as follows:

**Introduction**

To prevent preferential treatment and discrimination among creditors, Congress placed tight limits upon bankruptcy debtors and their estates paying creditors' professionals' fees and expenses. Section 503(b)(3) and (4) of the Bankruptcy Code ("Code") limits the court's power to award such fees to four specific situations, only one of which is relevant here: making a substantial contribution to the bankruptcy case. The Debtors' RSA Motion is deficient because it:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms not defined in this objection have the meanings given to them in the RSA Motion.

- Fails to comport with the legal or evidentiary standards of section 503(b)(3) and (4);

- Lacks transparency with respect to treatment and allocation of either the $950,000 future monthly payments or the Effective Date lump sum distribution of $10.5 million;

- Precludes review or oversight of the professional fees and expenses of the Coalition Professionals; and

- Fails to explain whether plaintiff claimants who are survivors of abuse could have their recoveries reduced by having to make up any shortfall in payment to Coalition members.

Supreme Court precedent requires express statutory authority to provide a priority payment ahead of other creditors in bankruptcy and there is no such authority here. As a result, the RSA Motion should be denied.

## Jurisdiction

1.  Under 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

2.  Under 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor Chapter 11 cases and to comment on matters in those cases.

3.  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the RSA Motion and the issues raised in this objection.

**Factual Background**

4. The Debtors filed their petitions on February 18, 2020. The cases have been ordered jointly consolidated for administrative purposes. On March 5, 2020, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("Creditors' Committee) and an Official Committee of Tort Claimants ("Tort Claimants' Committee").

5. The Coalition was formed in July 2020 by a group of law firms, which now include at least: (i) Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., (ii) Andrews & Thornton, (iii) ASK LLP, (iv) Slater Slater Schulman LLP, (v) Motley Rice LLC, (vi) Napoli Shkolnik PLLC, (vii) Marc J. Bern & Partners LLP, (viii) Junell & Associates, PLLC, (ix) Reich & Binstock LLP, and (x) Krause & Kinsman Law Firm. Each of these firms represents large numbers of individual abuse claim clients, and the Coalition takes the position that the individual abuse claimants are the actual members of the Coalition.[3]

6. On July 1, 2021, the Debtors filed the RSA Motion, which seeks an order authorizing the Debtors to enter into a restructuring support agreement (the "RSA") with James L. Patton, Jr., the future claimants' representative (the "FCR"), the Coalition, the TCC, the Ad Hoc Committee of Local Councils, and "certain state court counsel," including a number of the firms that formed the Coalition.[4] According to the Debtors, the RSA is a settlement that represents the broad outlines of a plan of reorganization supported by the parties to the RSA.

---

[3] "The Coalition is comprised of more than 28,000 Sexual Abuse Survivors (collectively, the "Coalition Members"). Each Coalition Member is a Sexual Abuse Survivor as defined in the Debtors' bar date order . . ." D.I. 1429, ¶2, filed October 7, 2020.

[4] The state court counsel RSA signatories are : Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Andrews & Thornton, ASK LLP, Slater Slater Schulman LLP, Motley Rice LLC, Napoli Shkolnik PLLC, Marc J. Bern & Partners LLP, Junell & Associates, PLLC, Reich & Binstock LLP, Krause & Kinsman Law Firm, Jason J. Joy & Assoc., PLLC, Weller, Green, Toups & Terrell LLP, Colter Legal PLLC, Christina Pendleton & Associates, Forman Law Offices, P.A., Danzinger & De Llano LLP, Swenson & Shelley, Brooke F. Cohen Law, PLLC, Hirsch Law Firm, LLC, Damon J. Baldone, PLC, Cutter Law, P.C., Linville Johnson & Pahlke Law Group, Porter & Malouf

3

7.  As part of the RSA, the Debtors have agreed to reimburse the Coalition for the fees and expenses of the professionals the Coalition retained to represent the interests of its member claimants in these bankruptcy cases[5]—first, up to $950,000 per month between approval of the RSA and the Effective Date, and second, in a lump sum payment of $10.5 million on the Effective Date.  The monthly payments are framed as a reimbursement of the Coalition Professionals' fees and expenses during the RSA-Effective Date period, and the lump sum as reimbursement for the Coalition Professionals' fees and expenses incurred prior to the RSA Order.

8.  The RSA also contains the following significant plan terms:

   a.  A contribution by the Debtors of approximately $90 million in cash, an $80 million promissory note, $59 million in artwork, $11.6 million in sale/leaseback proceeds, $7.6 million in oil and gas interests, and $1.92 million of sale proceeds from the sale of "Scouting University;"

   b.  Non-monetary commitments of youth protection measures, reporting, a to-be-formed Child Protection Committee, and abuse claim-related information sharing;

   c.  A $600 million contribution by the Debtors' Local Councils (which ones are not specified, nor is the contribution allocated among the Local Councils);

   d.  Assignment and transfer of the Debtors' insurance rights to an abuse claims settlement trust;

   e.  A channeling injunction that channels all abuse claims to the abuse claims settlement trust;

   f.  Agreed trust distribution procedures ("TDPs") supported by the FCR, Tort Claimants' Committee, Coalition, and the Debtors;

---

P.A., The Moody Law Firm, and Levin Papantonio Thomas Mitchell Rafferty & Proctor, PA. It is unclear whether any of these additional law firms are also part of the Coalition.

[5] According to the RSA Motion, those professionals are: (i) Brown Rudnick LLP, (ii) Robbins, Russell, Englert, Orseck & Untereiner LLP, (iii) Monzack, Mersky and Browder, P.A., (iv) Province, and (v) Parsons, Farnell & Grein, LLP (the "Coalition Professionals").

4

  g.  Cancellation of the Debtors' previous settlement with Hartford Insurance;

  h.  Releases for "Protected Parties," which includes all Local Councils, and which can include in the future other parties, like chartered organizations and insurance companies, that contribute to the abuse claims settlement trust;

  i.  A fiduciary out for the Debtors; and

  j.  An agreement by the various attorneys representing abuse claimants to support the plan described in the RSA and recommend that their clients vote to accept it.

9. Also on July 1, 2021, the Debtors filed the Declaration of Brian Whittman in support of the RSA Motion (D.E. 5470). Mr. Whittman is a managing director with Alvarez & Marsal North America, LLC, the Debtors' financial advisor. Mr. Whittman's declaration describes the plan negotiation process, the differences between the plan as contemplated by the RSA and the Debtors' previous plans, and opines that the proposed payments to the Coalition are an exercise of the Debtors' business judgment. The RSA Motion relies solely on the business judgment standard as the basis for the contemplated payments.

10. The Coalition did not file a declaration or other pleading in support of the RSA Motion.

11. The RSA Motion and its supporting declarations do not contain evidence that the Coalition has satisfied (or even addressed) the substantial contribution standard of section 503(b)(3) and (4). Of note:

- The RSA Motion does not explain how the $10.5 million payment was calculated, nor does it contain or attach time records, expense detail, or other substantive information regarding the actual fees and expenses of the Coalition Professionals and their relationship to the $10.5 million;

- Neither the future $950,000 monthly payments nor the $10.5 lump sum payment is allocated among the various Coalition Professionals;

- There is no explanation of the $950,000 monthly fee and expense amount, its relationship (if any) to the $10.5 million lump sum, or why it is a

>   reasonable estimate of the Coalition Professionals' fees and expenses going forward;
>
> - The Coalition Professionals will not be required to submit any documentation in order to receive the $950,000 monthly payments;
>
> - The Coalition Professionals are not required to demonstrate that they are entitled to the $950,000 monthly payments under the section 503(b)(3) and (4) substantial contribution standard (or any other standard, such as reasonableness under section 330) in order to receive them; and
>
> - A party in interest can only object to the payments by objecting to the RSA Motion—there is no future fee or expense review or right to object.

12. Paragraph 4 of the proposed order approving the RSA is clear that this lack of transparency, disclosure, and review is deliberate:

> The Debtors shall reimburse the fees and expenses of the Coalition as and to the extent set forth in the RSA and the Term Sheet. None of the fees and expenses shall be subject to further approval of the Court, and no recipient thereof shall be required to file any interim or final fee application with the Court as a condition precedent to the Debtors' obligation to pay such fees and expenses. Notwithstanding the foregoing, if a dispute arises with respect to the reasonableness of such fees and expenses, the Court shall have the jurisdiction and authority to determine the reasonableness of such fees and expenses.

D.E. 5466-2, p. 6.

13. On July 2, 2021, the Debtors filed their Fourth Amended Disclosure Statement (D.E. 5485) and Fourth Amended Plan (D.E. 5484), which incorporate the terms of the RSA.

14. At a hearing on July 7, 2021, the Court denied the Debtors' request to hear the RSA Motion and consider approval of the Fourth Amended Disclosure Statement on July 20, 2021. The Court set the RSA Motion for hearing on July 29 and 30, 2021, and set August 12 and 13, 2021 as the hearing date to consider approval of the Fourth Amended Disclosure Statement.

**Legal Argument**

I. **Applicable Law**

A. **Congress Enacted a Specific Provision Governing When Creditors' Professional Fees May Be Paid by the Bankruptcy Estate and the RSA Motion Makes No Showing Sufficient to Satisfy It.**

15. The Code requires payments from a bankruptcy estate to be made in a specific order, with certain payments receiving priority. 11 U.S.C. §§ 503, 507, 726, 1129(a)(1), (9). "The Code's priority system constitutes a basic underpinning of business bankruptcy law." *Czyzewski v. Jevic Holdings Corp.*, 137 S. Ct. 973, 984 (2017). "[T]he Bankruptcy Code aims, in the main, to secure equal distribution among creditors." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006). The Code's mandate that certain claimants have priority over others is an exception to the aim of equal distribution. "Every claim granted priority status reduces the funds available to general unsecured creditors and may diminish the recovery of other claimants qualifying for equal or lesser priorities." *Id*. at 667. Because priorities are contrary to the principle of equal distribution, courts construe them narrowly. *Id*. In order for the bankruptcy court to authorize payments to the Coalition under the RSA, the payments must comply with the Code's priority scheme and its requirements. Because they do not, the RSA Motion and the proposed payments to the Coalition are improper and unauthorized.

  i. *Congress Has Narrowly Circumscribed Which Payments Receive Priority in Bankruptcy as Administrative Expenses.*

16. In establishing the Code's priorities, Congress recognized that parties may incur expenses during the administration of a bankruptcy estate that are necessary to its operation or rehabilitation. Section 503(b) permits the estate to pay some of these expenses as "administrative expenses" before most unsecured creditors' claims are paid. *See* 11 U.S.C. §§ 503(b), 507(a). Thus, "[t]he question is 'not whether the creditor deserves to get paid, but

7

whether it deserves to get paid at the expense of the debtor's existing unsecured creditors.'" *In re Energy Future Hldgs. Corp. ("EFH II")*, No. 19-3492, --- F.3d ---, 2021 WL 957301 at *10 (3d Cir. Mar. 15, 2021) (quoting *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 441 (5th Cir. 2019) (alterations omitted)).

17. One category of administrative expenses is the "actual, necessary costs and expenses of preserving the estate" under section 503(b)(1)(A), which Congress enacted "to provide an incentive to creditors who otherwise would not continue to provide services to a failing business." *Penn. Dept. of Env. Res. v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 690 (3d Cir. 1999). When a debtor makes payments before end-of-the-case distributions, these payments reduce the amount available to pay not only pre-petition claims, but also other administrative expenses. *See Livore*, 473 B.R. at 867-68. The proposed payments under the RSA, however, are not ordinary course administrative payments to incentivize a creditor to continue a relationship with a failing business. They are payments to both retroactively and prospectively reimburse the Coalition Professionals for their legal fees and expenses. But those fees and expenses cannot be approved under the simple "actual and necessary" administrative costs standard, because professionals and their fees are subject to additional compliance and disclosure requirements—either under section 503(b)(3) and (4) under the substantial contribution standard or under section 330 for retained professionals. The RSA Motion satisfies neither.

        ii.    <u>Congress Allows Priority Payment of Professionals Engaged in Connection with a Bankruptcy Case Only in Limited Circumstances.</u>

18. As part of its detailed priority scheme, Congress prescribed narrow circumstances when professionals retained in connection with a bankruptcy case may be paid from estate funds on a priority basis. The first is that, with prior court approval, the estate or an official committee

of creditors appointed by the United States Trustee[6] can retain professionals under sections 327 or 1103, and pay them under section 330(a). *See Lamie v. U.S. Trustee,* 540 U.S. 526, 538 (2004); 11 U.S.C. §§ 327, 1103. Retained professionals must comply with the disclosure requirements of section 329, and the requested compensation is paid as a priority administrative expense under section 503(b)(2). Retained professionals may receive interim compensation before the end of the case under section 331, but that interim compensation must be returned "if the amount of such interim compensation exceeds the amount of compensation awarded" under section 330. *See* 11 U.S.C. § 330(a)(5).

19.  Second, the Code's priority scheme authorizes payment of creditors' professionals' fees and expenses as an administrative expense in only four limited situations, none of them on an interim basis. *See* 11 U.S.C. § 503(b)(3)(A)-(D), (4). Section 503(b)(4) allows as an administrative expense the "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under . . . paragraph (3) of this subsection." *See* 11 U.S.C. § 503(b)(4). Paragraph (3) defines four categories of administrative expenses available to creditors, only one of which could even apply here, section 503(b)(3)(D).[7] Section 503(b)(3)(D) provides that administrative expenses include "the actual, necessary expenses . . . incurred by . . . a creditor . . . in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D).

20.  The allowance of attorney's fees for certain creditors is an exception to "the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win

---

[6] The Coalition is an ad hoc group of creditors and not an official committee.

[7] The other three categories are professional fees and expenses incurred by a creditor: (1) in filing an involuntary bankruptcy petition, (2) in recovering for the benefit of the estate any property transferred or concealed by the debtor, and (3) in connection with the prosecution of certain criminal offenses. 11 U.S.C. § 503(b)(3)(A)-(C), (4).

9

or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (internal quotation marks omitted). The Supreme Court has recognized departures from the American Rule "only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Id*. (internal quotation marks omitted). "Section 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging meaningful creditor participation in the reorganization process and keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (internal quotation marks and citation omitted). "[C]onsistent with the general doctrine that priority statutes, such as § 503(b), should be strictly construed to preserve the estate for the benefit of creditors," "courts narrowly construe the substantial-contribution statute." *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 279 (Bankr. W.D. Tex. 2005) (internal quotation marks omitted); *accord Leidos Eng'g, LLC v. KiOR, Inc. (In re KiOR Inc.)*, 567 B.R. 451, 459 (D. Del. 2017); *In re RS Legacy Corp.*, No. 15-10197, 2016 WL 1084400, at *3 (Bankr. D. Del. Mar. 17, 2016).

21.     Substantial-contribution awards are granted only in "rare and extraordinary circumstances." *KiOR,* 567 B.R. at 459 (internal quotation marks omitted). *Accord RS Legacy*, 2016 WL 1084400, at *4. "[T]he benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *Lebron*, 27 F.3d at 944. Under Third Circuit precedent, there must be a "demonstrable benefit to the debtor's estate and the creditors," *id*. (internal quotation omitted), because of "the concern that administrative claims deplete the bankruptcy estate's assets." *EFH II*, 2021 WL 957301 at *10. The benefit "must be *actual*, not hypothetical," *id*. (emphasis in original), and thus "a hindsight-based analysis of the benefit to the estate requirement is appropriate," *id*. at *12. *See*

*also KiOR*, 567 B.R. at 458 ("The substantial contribution test is applied in hindsight, and scrutinizes the actual benefit to the case."). In determining whether a creditor has made a substantial contribution, "the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions." *Hall Fin. Grp., Inc. v. DP Partners Ltd. (In re DP Partners, Ltd.)*, 106 F.3d 667, 673 (5th Cir. 1997).

22. The record here lacks any evidence to satisfy the section 503(b)(3) and (4) substantial contribution standard that would permit reimbursement of the Coalition Professionals' fees and expenses. Nor is there evidence that would satisfy the disclosure and transparency requirements of a professional fee application. If the RSA Motion is approved, the Coalition Professionals would receive up to $950,000 per month between now and the Effective Date, and another $10.5 million lump sum distribution on the Effective Date. The payments are not subject to any review or oversight. They are not allocated among the various Coalition Professionals. The Coalition has not provided any time records, expense detail, or other documentation explaining or justifying the payments. The RSA Motion does not explain whether the Coalition's members—the individual abuse claimants—could have their recoveries reduced by future payment of any shortfall to the Coalition Professionals. The RSA Motion contains only conclusory statements describing the Coalition Professionals' entitlement to these payments and no actual evidence of a substantial contribution for either the lump sum payment or the future monthly payments. Because the RSA Motion fails to satisfy the requirements of section 503(b)(3) and (4), it should not be granted.

   iii. <u>Under Supreme Court Precedent, Specific Statutory Provisions Govern Over General Ones.</u>

23. The Supreme Court has held in no uncertain terms that specific provisions govern over general ones. *See, e.g., Bloate v. United States,* 559 U.S. 196, 207 (2010) ("'[A] specific

11

provision . . . controls ones of more general application.'") (quoting *Gozlon–Peretz v. United States*, 498 U.S. 395, 407, (1991) (alterations omitted)). Because section 503(b)(3) and (4) specifically governs when a bankruptcy estate may pay on a priority basis a creditor's professional fees and expenses, that specific provision controls.

24. The Supreme Court emphasized the importance of the specific/general canon's application to the Code in *RadLAX Gateway Hotel v. Amalgamated Bank*, 566 U.S. 639 (2012). The Court explained that specific statutory provisions govern over general ones, especially where "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id*. (internal quotation marks omitted). The Court noted that this canon "has full application . . . to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side." *Id*. In such cases, "[t]he terms of the specific authorization must be complied with." *Id*. This is no less true for section 503. Through its considered delineation of payment priorities "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id*. And because section 503(b)(3) and (4) contains a "specific authorization," it "must be complied with" even though it "exists[s] side-by-side" with the more general authorizations in sections 363 and 365. *See id.*

25. Consistent with this precedent, the Third Circuit has held that section 503(b)'s specific subparagraphs govern over section 503(b)(1)(A)'s more general authorization of administrative expenses for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In *F/S Airlease II,* (844 F.2d 99 (3rd Cir. 1988)), a broker with no section 327(a) retention order sought payment of his fees as an administrative expense. 844 F.2d at 108. The Third Circuit ruled that the authority to pay administrative expenses for professionals retained by the estate "is found not in section 503(b)(1)(A) but in section 503(b)(2)

which permits payment as an administrative expense for 'compensation and reimbursement awarded under section 330(a)'" for professionals retained under section 327(a). *Id*. The court held that the broker could not "rely on section 503(b)(1)(A) as a way of circumventing section 327(a). . . . If [the broker] were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory." *Id*. at 108-09.

26. Congress has also "balanced the difficult choices" in establishing priorities under the Code and "it is not for the courts to alter the balance struck by the statute." *Law v. Siegel*, 571 U.S. 415, 427 (2014). In striking its balance, Congress authorized priority payment of creditors' professional fees only in the limited circumstances described by section 503(b)(3) and (4). To read sections 363 and 105 to allow creditors' professional fees when the express requirements of section 503(b)(3) and (4) are not met contravenes the Supreme Court's holding that creditors are only permitted preferential treatment "when clearly authorized by Congress." *Howard Delivery*, 547 U.S. at 655.

27. Because the priorities are set by Congress in the Code, courts cannot deviate from them based on equitable considerations. *See Jevic*, 137 S. Ct. at 983. Even when there are compelling reasons to authorize a transaction, a bankruptcy court "may not contravene specific statutory provisions." *Law*, 571 U.S. at 421. Under this reasoning, the Debtors cannot rely on sections 363 and 105(a) as grounds for approval of the RSA and payment of the Coalition Professionals' fees and expenses. They must instead satisfy the requirements of section 503(b)(3) and (4). Because they do not, the RSA Motion cannot be approved.

   iv. <u>Sections 363 and 105 Do Not Allow Debtors to Evade the Requirements of Section 503(b).</u>

28. In the same way that the more specific provisions of section 503 govern the more general, the quite specific provisions of section 503(b)(3) and (4) and its standards govern the

more general standard of section 363.  Thus, the more lenient business judgment standard, on which the RSA Motion relies, cannot prevail over the detailed and specific requirements of section 503(b)(3) and (4).  Although there are some exceptions, none are applicable to the Coalition Professionals' fees.  For those to be paid from the estate at the expense of other creditors, they must meet the requirements of section 503(b)(3) and (4), and the Debtors' judgment that a sound business justification exists for paying them does not suffice.

29. In *EFH II*, the Third Circuit held that section 503(b) applies even when the debtor sought prospective approval of a break-up fee as part of a merger agreement.  904 F.3d at 302, 304, 313; *see also EFH II*, 2021 WL 957301, at *12 n.10.  The Third Circuit held that the section 503 standard applies as long as the claimed right to recover the fee arose post-petition.  *Id*.  The RSA Motion seeks to reimburse the Coalition Professionals for their post-petition fees and expenses, so section 503(b) applies.

30. In the recent *Mallinckrodt* case, the bankruptcy court denied Mallinckrodt's first motion for approval of a similar type of payment.  *In re Mallinckrodt PLC, et al.,* Hrg. Tr. (Dec. 14, 2020), pp. 26-38 (Case No. 20-12522-JTD).  The court held that because Mallinckrodt was "seeking to pay fees and expenses incurred post-petition by certain unsecured creditors. . . . [t]here is no question . . . that the proposed reimbursements are for administrative expenses."  Id. at 31.  The court found that "where a debtor is seeking to pay post-petition fees and expenses of a general unsecured creditor the standard to be applied in approving those payments is the standard provided for in Section 503, that is, are the payments in recognition of a substantial contribution provided by that creditor to the bankruptcy estate."  *Id*.

31. Here, the RSA Motion seeks authority to pay not only fees and expenses that the Coalition has already incurred without meeting the substantial contribution standards of section

503(b)(3) and (4), but prospective fees as well in the form of the up to $950,000 per month payment. Neither are permissible. First, the RSA Motion lacks evidence that the Coalition has made a substantial contribution that would enable the estate to pay the Coalition Professionals' incurred fees in a $10.5 million lump sum. Then, with respect to the $950,000 per month in anticipated future fees, there is no authority in either section 503(b) or even the more lenient section 363 to pay future fees. It is impossible for the court or any party in interest to prospectively conclude what portion of the future fees, if any, might satisfy the substantial contribution standard, which is the minimum standard required here. The RSA Motion fails to meet any standard necessary to make administrative priority payments to the Coalition Professionals, let alone the stringent standard of substantial contribution under section 503(b)(3) and (4). The Coalition, like any other party, is free to make a substantial contribution claim—but only after the Coalition Professionals have done the work and incurred their fees and expenses, not in advance.

32.     Compounding its deficiencies, the RSA Motion proposes to pay the Coalition Professionals without any oversight, or opportunity to review and object to the monthly fees. Paragraph 4 of the proposed order makes clear that this lack of transparency is deliberate and intentional. It is even possible that the individual abuse claimants could see reduced recoveries if the RSA Motion's proposed payments are insufficient to pay the Coalition Professionals in full, something the RSA Motion leaves unaddressed. With this opaqueness, there is no way for any party in interest to determine whether there was an "*actual*, not hypothetical" benefit to the estate as a whole, *EFH II*, 2021 WL 957301, much less whether the "rare and extraordinary circumstances" that permit allowance of substantial-contribution claims exist. *KiOR,* 567 B.R. at

459. The Debtors, through the RSA Motion, bear the burden of demonstrating the Committee Professionals' right to a substantial contribution payment. They have not met that burden.

## Conclusion

33. The RSA Motion and its proposed payment of professional fees do not comply with section 503(b)(3) and (4) of the Code and should not be approved. The proposed payments are prospective, not subject to review, lack transparency, and do not meet either statutory or case law standards.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order denying the RSA Motion, and granting such other relief as this Court deems appropriate, fair, and just.

Dated: July 22, 2021
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**Regions 3 and 9**

By: */s/ David L. Buchbinder*
David L. Buchbinder, Esquire
Hannah M. McCollum, Esq.
Trial Attorneys
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
david.l.buchbinder@usdoj.gov