# **<u>EXHIBIT A</u>**

**EXECUTION COPY**

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter "Agreement") is entered into by and between Hartford (defined below) and the BSA (defined below) (each, a "Party" and collectively, the "Parties").  Capitalized terms appearing in this Agreement that are not defined in this prefatory paragraph or in the recitals have the meanings set forth in the Section entitled "Definitions" herein, or in the Second Amended Plan, as applicable.

### <u>RECITALS</u>

WHEREAS, more than 80,000 Persons have asserted Abuse Claims in and outside of the Bankruptcy Case;

WHEREAS, Hartford issued or allegedly issued certain liability insurance policies to the BSA and Local Councils or under which the BSA or Local Councils allege it or they are entitled to insurance coverage; and

WHEREAS, the BSA and Local Councils have sought coverage from Hartford in connection with the Abuse Claims; and

WHEREAS, disputes have arisen as to the scope of Hartford's obligation to provide coverage for Abuse Claims under the Hartford Policies and Local Council Policies; and

WHEREAS, on February 18, 2020, Boy Scouts of America and its affiliate, Delaware BSA, LLC, each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case before the Bankruptcy Court; and

WHEREAS, the Parties wish to fully and finally resolve their disputes and to provide for the other consideration, promises, releases and covenants set forth in this Agreement;

WHEREAS, as part of the compromise and resolution, the BSA has agreed to sell and

**EXECUTION COPY**

Hartford has agreed to purchase the Hartford Policies (the "Sale") free and clear of all Interests of any Person, subject and pursuant to the terms and conditions of this Agreement, and the BSA has agreed to release Hartford of any further obligations for the Hartford Released Claims;

NOW THEREFORE, in consideration of the foregoing, and in consideration of the other mutual considerations, promises, releases, and covenants as set forth below, the sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

## DEFINITIONS

The following definitions (as well as those provided elsewhere in this Agreement) apply to this Agreement only and are not intended to be used for any other purpose. In addition, the singular form of a word includes the plural and vice versa; "or" is not exclusive; all pronouns apply to the male, female and neutral genders; the word "any" includes the word "all" and vice versa; the word "including" means including without limitation; and the past tense of a word includes the present tense and vice versa.

A.    **"Agreement Effective Date"** shall have the meaning set forth in Section I of this Agreement.

B.    **"Bankruptcy Case"** means the Chapter 11 cases filed February 18, 2020, by Boy Scouts of America and Delaware BSA, LLC in the United States Bankruptcy Court for the District of Delaware, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS), and shall include any appeals therefrom (and any adversary proceedings therein).

C.    **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

D.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the District

**EXECUTION COPY**

of Delaware and, as applicable, the United States District Court for the District of Delaware.

      E.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

      F.      **"BSA"** means Boy Scouts of America, Delaware BSA, LLC, and each of their respective past, present and future direct or indirect parents, subsidiaries, affiliates and controlled entities (which, for the avoidance of doubt, do not include Local Councils), and each of their respective officers, directors, stockholders, members, partners, managers, employees, predecessors, successors and assigns in their capacity as such.

      G.      **"Claims"** means any and all past, present or future claims (including any presently unknown claims), liabilities, demands, obligations, duties, complaints, cross-complaints, cross-claims, third party complaints, counterclaims, requests, administrative proceedings, directives and notices, counts, judgments, executions, attachments, debts, lawsuits, actions, direct actions, writs, liens, inquiries, rights, damages, costs, or any other causes of action, including Abuse Claims, Direct Action Claims, Extra-Contractual Claims, and any "claim" as that term is defined in the Bankruptcy Code, 11 U.S.C. §101(5).

      H.      **"Confirmation Order"** means an order of the Bankruptcy Court confirming the Plan, approving this Agreement, and granting the relief specified in Section III.A of this Agreement.

      I.      **"Debtors"** means Boy Scouts of America and Delaware BSA, LLC.

      J.      **"Direct Action Claim"** means any Claim by a Person against Hartford, on account of, based upon, arising from, or in any way attributable to the rights afforded the BSA or any Local Council under any Hartford Policies or Local Council Policies, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party

3

**EXECUTION COPY**

a direct cause of action against Hartford.

K.    **"Estate"** means the bankruptcy estate of the BSA under Section 541 of the Bankruptcy Code.

L.    **"Extra-Contractual Claim"** means any Claim against Hartford, seeking any type of relief based upon conduct prior to the Agreement Effective Date, including compensatory, exemplary or punitive damages, on account of alleged bad faith; misconduct; failure to act in good faith; violation of any duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation or code; any type of alleged misconduct; or any other act or omission of Hartford of any type seeking relief other than coverage or benefits under any Hartford Policies or Local Council Policies, including any Claims for economic loss, general damages, attorneys' fees or costs in connection with Hartford's handling of, or its refusal to handle, any Claims.

M.    **"Execution Date"** means the date the last signature of the Parties is placed on this Agreement.

N.    **"Final Order"** means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction), including any modification or amendment thereof, that remains in effect and has not been reversed, vacated or stayed, and as to which the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken or, if taken, remains pending.

O.    **"Hartford"** means Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company and each of their past, present and future direct or indirect parents, subsidiaries,

4

**EXECUTION COPY**

affiliates and controlled entities, and each of their respective officers, directors, stockholders,

members, partners, managers, employees, predecessors, successors and assigns, each in their

capacity as such.

P.    **"Hartford Policies"** means (i) any and all liability insurance policies, known and

unknown, issued or allegedly issued by Hartford to the BSA as the first named insured, including

each of the insurance policies identified on Exhibit 1, and (ii) the BSA's Interests in any and all

liability insurance policies, known and unknown, issued or allegedly issued by Hartford to any

other Person that afford the BSA coverage with respect to Abuse Claims; *provided*, *however*, that

"Hartford Policies" shall not include (i) any portion of workers' compensation policies with

respect to Claims not discharged by the Plan and unrelated to Abuse Claims or (ii) any portion of

automobile liability policies with respect to Claims not discharged by the Plan and unrelated to

Abuse Claims.

Q.    **"Hartford Released Claims"** means (i) any and all past, present and future

Claims arising from, relating to, or in connection with the Hartford Policies, including Direct

Action Claims, and (ii) any and all Claims arising from, relating to or in connection with (a)

Abuse Claims, (b) the negotiation of this Agreement, and/or (c) any Extra-Contractual Claims

arising from or relating to acts or omissions before the Agreement Effective Date.

R.    **"Insurance Companies"** means any Persons that have issued any insurance

policies to, or otherwise have provided any liability insurance for the benefit of, the BSA or

any Local Councils.

S.    **"Interests"** means all liens, Claims, encumbrances, interests and other rights of

any nature, whether at law or in equity, and any other "interest" as such term is used in Section

**EXECUTION COPY**

363 of the Bankruptcy Code, 11 U.S.C. § 363.

T.      **"Local Councils"** means all organizations independently incorporated and organized under the laws of their respective states and chartered by the BSA to deliver the Scouting Program and related services.

U.      **"Local Council Policy"** means any policy issued or allegedly issued by Hartford identified on Schedule 3 of the Second Amended Plan and any other insurance policy, known or unknown, issued by Hartford to a Local Council to the extent it provides coverage, or allegedly provides coverage, for Abuse Claims or other Claims that are channeled to the Settlement Trust or otherwise enjoined by the Plan or Confirmation Order.

V.      **"Local Council Release"** means a mutual release, in form and substance acceptable to Hartford: (a) (i) with respect to the Local Council Policies, executed by a Person with authority to act on behalf of each Local Council, releasing Hartford from all Claims by any Local Council under the Local Council Policies, issued for policy periods prior to the Execution Date, and (ii) with respect to the Hartford Policies, releasing Hartford from all Claims by any Local Council under the Hartford Policies, issued for policy periods prior to the Execution Date; and (b) releasing the Local Councils from all Claims by Hartford in connection with the Hartford Policies and the Local Council Policies, issued for policy periods prior to the Execution Date. The Local Council Release shall be comparable, in form and substance, to the release provided by the BSA to Hartford, and by Hartford to the BSA, in Section IV.

W.      **"Person"** means an individual, a corporation, a partnership, an association, a trust or any other entity or organization, and any federal, state or local governmental or quasi-governmental body or political subdivision or any agency, department, board or instrumentality

6

**EXECUTION COPY**

thereof.

X.    **"Plan"** means the Second Amended Plan, as the same may be amended or
modified from time to time pursuant to section 1127 of the Bankruptcy Code, consistent with the
terms of the Second Amended Plan.

Y.    **"Plan Effective Date"** shall have the same meaning as the term "Effective
Date" in the Plan.

Z.    **"Scouting Program"** means any and all programs of any kind administered by
the BSA or any Local Councils relating to scouting.

AA.    **"Second Amended Plan"** means the *Second Amended Chapter 11 Plan of
Reorganization for Boy Scouts of America and Delaware BSA, LLC*, dated April 13, 2021 (D.I.
2592).

**I.    AGREEMENT EFFECTIVE DATE**

A.    This Agreement shall become effective on the earliest date on which all of the
following conditions precedent have occurred (the "Agreement Effective Date"); *provided,
however*, that any of the conditions precedent set out in this Section I may be waived pursuant to
a writing signed by each Party:

1.    Each Party has executed the Agreement;

2.    Hartford has received a fully executed Local Council Release on behalf of
each Local Council;

3.    The Bankruptcy Court has entered (a) the Confirmation Order in form and
substance acceptable to Hartford as it pertains to this Agreement or (b) the
Approval Order in accordance with Section I.B, below;

**EXECUTION COPY**

4. The Confirmation Order provides for a release and channeling injunction for the benefit of the Local Councils with respect to Abuse Claims; and

5. The BSA has provided notice to Hartford that the Plan Effective Date has occurred.

B. As an alternative to obtaining approval of the Sale and the Agreement through the Confirmation Order, Hartford may request, at any time after the Execution Date, upon twenty (20) calendar days' notice to the BSA, that the BSA file with the Bankruptcy Court a motion for entry of an order approving the Sale and this Agreement under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 (the "Approval Order"), and the BSA shall file such motion before the expiration of such twenty-day notice period. The Approval Order shall be substantially in the form attached hereto as Exhibit 2, with such modifications as may be mutually agreed upon by the Parties. If Hartford requests that the BSA file a motion for entry of the Approval Order, then Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company shall not be Settling Insurance Companies under the Plan until the Bankruptcy Court has entered the Approval Order and (unless Hartford waives this condition, precedent in accordance with Section II.B. of this Agreement) the Approval Order has become a Final Order.

## II.    SETTLEMENT AMOUNT

A. Subject to all of the terms and conditions of this Agreement, Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company shall be jointly and severally liable for, and shall pay the BSA or, at the BSA's written direction, the Settlement Trust (or other designee, assignee,

**EXECUTION COPY**

or successor of the BSA, as specified in writing by the BSA), the total amount of six hundred

fifty million dollars ($650,000,000.00) (the "Settlement Amount").  The Settlement Amount

shall be paid in United States currency, via wire transfer or other acceptable means, within thirty

(30) days of the date on which Hartford Accident and Indemnity Company, First State Insurance

Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company

receive written notice of the Agreement Effective Date from the BSA.  Such notice shall also

contain details identifying the payee and account(s) into which payment of the Settlement

Amount shall be made.   In the event payment is due on a date that is not a business day, the

payment shall be due on the first business day thereafter.

B.      Notwithstanding anything to the contrary contained in this Agreement, the

obligation of Hartford Accident and Indemnity Company, First State Insurance Company, Twin

City Fire Insurance Company and Navigators Specialty Insurance Company to pay the

Settlement Amount is subject to the condition that the Agreement Effective Date shall have

occurred, and the further condition that the Confirmation Order (or the Approval Order, if

applicable) shall have become a Final Order; *provided, however*, that, notwithstanding anything

to the contrary contained in this Agreement, Hartford Accident and Indemnity Company, First

State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty

Insurance Company in their sole discretion, may elect in writing to waive the condition

precedent that the Confirmation Order (or the Approval Order, if applicable) has become a Final

Order and pay the Settlement Amount notwithstanding the pendency of an appeal of the

Confirmation Order (or the Approval Order, if applicable).

C.      Subject to the terms of this Agreement, the Parties expressly agree that, by this

**EXECUTION COPY**

Agreement, Hartford is agreeing to buy from the BSA, and the BSA is agreeing to sell to

Hartford, the Hartford Policies pursuant to sections 363, 1123 and 1141 of the Bankruptcy Code

free and clear of all Interests.  The Parties further agree that (i) the Settlement Amount is the total

amount Hartford is obligated to pay on account of any and all Hartford Released Claims and the

Local Council Release; (ii) the Local Council Release is required to release the Local Councils'

interests in the Local Council Policies, and (iii) the Confirmation Order or Approval Order, as

applicable, shall provide that on and after the Agreement Effective Date and Hartford's payment

of the Settlement Amount, under no circumstance will Hartford ever be obligated to make any

additional payments to any Person for liabilities relating to or arising out of the Hartford

Released Claims, the Local Council Releases, the Hartford Policies or the Local Council

Policies.

      D.      The Settlement Amount shall be used by the BSA, the Estate, or their assignees,

successors or any other Person formed to assume the BSA's liability for Abuse Claims, including

the Settlement Trust, solely to pay and/or defend Abuse Claims.

      E.      If, after the Execution Date, (1) the BSA, the Estate, or their assignees, successors

or any other Person formed to assume the BSA's liability for Abuse Claims, including the

Settlement Trust, enters into an agreement with Century Indemnity Company ("Century") that

provides for the settlement, release, sale, or other resolution of the BSA's or the Local Councils'

Claims for coverage for Abuse Claims under (or sale and buy back of) insurance policies for

which Century or any affiliate thereof is or allegedly is responsible (a "Century Settlement") and

(2) the Century Settlement provides for a payment by Century (or by some other Person on

Century's behalf) of an amount less than two times the Settlement Amount, then (3) the

**EXECUTION COPY**

Settlement Amount shall be reduced by fifty percent (50%) of the difference between an amount

equal to two times the Settlement Amount and the amount payable by Century pursuant to the

Century Settlement (the amount of such reduction, the "Discount Amount").  If, at the time of

the Century Settlement, Hartford has not yet paid the Settlement Amount, then Hartford's

obligation shall be reduced by the Discount Amount.  In the event that Hartford has already paid

the Settlement Amount, then Hartford shall be entitled to a refund in the amount of the Discount

Amount from the Settlement Trust (or, if no Settlement Trust is established under the Plan, from

the BSA or its successor, assignee or designee created to pay Abuse Claims under the Plan).

## III.    BANKRUPTCY-RELATED OBLIGATIONS

A.      Unless Hartford makes the election contemplated by Section I.B, the Plan shall

incorporate this Agreement and shall constitute a request by the BSA for the Bankruptcy Court

to approve the Sale and this Agreement, including the release of the Hartford Released Claims as

provided in Section IV.A., pursuant to sections 363, 1123 and 1141 of the Bankruptcy Code and

Bankruptcy Rule 9019, and to find that Hartford Accident and Indemnity Company, First State

Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance

Company are good-faith purchasers of the Hartford Policies, free and clear of all Interests,

pursuant to section 363(f) and (m) of the Bankruptcy Code.

B.      The Parties shall cooperate in good faith to ensure that the Confirmation Order (or

the Approval Order, if applicable) is in form and substance acceptable to the Parties as it pertains

to this Agreement, is entered by the Bankruptcy Court, and becomes a Final Order.

C.      In addition to any other service that may be required, the Debtors shall serve by

mail notice of the Confirmation Hearing on all parties in interest (for whom the Debtors have a

**EXECUTION COPY**

mailing address), including (i) all known holders of Abuse Claims, (ii) all Insurance Companies

or other Persons known to have provided liability insurance to the BSA; (iii) all other Persons,

known to the BSA, who or which actually or allegedly are insured or claim to be entitled to any

rights or benefits under any of the Hartford Policies; (iv) all Persons that have filed proofs of

claim in the Bankruptcy Case; (v) all official committees appointed in the Bankruptcy Case; and

(vi) all other Persons that, as of the date of service of notice of the Confirmation Hearing, have

filed a notice of appearance and demand for service of papers in the Bankruptcy Case or are

otherwise listed on the master service list maintained by the BSA in the Bankruptcy Case (the

"Notice Parties").  In addition, to ensure the broadest notice possible, the BSA shall publish

notice of the Confirmation Hearing on such occasions and in such newspapers that are

reasonably acceptable to Hartford, with Hartford to bear the expense thereof in a proportion

equal to the Settlement Amount divided by the total settlement contributions of all Settling

Insurance Companies as of the last publication date.  The mail and publication notice shall be in

form and substance acceptable to Hartford.  If Hartford makes the election contemplated by

Section I.B, then, in addition to any other service that may be required, the BSA shall serve by

mail notice of the motion for entry of the Approval Order and the hearing thereon on each of the

Notice Parties and, to ensure the broadest notice possible, the BSA shall publish notice of such

motion and the hearing on two separate occasions in the national editions of <u>The New York</u>

<u>Times</u> and <u>USA Today</u> at Hartford's expense.  The mail and publication notice shall be in form

and substance acceptable to Hartford.

      D.      Except (i) to contend that the BSA has breached this Agreement; (ii) to the extent

the Plan does not incorporate and provide for the approval of this Agreement; or (iii) this

**EXECUTION COPY**

Agreement is not approved or does not go into effect, Hartford shall not object to the Plan or seek formal discovery from the BSA (and the BSA shall not seek formal discovery from Hartford) with respect to the Plan; *provided, however*, notwithstanding anything to the contrary contained in this Agreement, nothing herein shall be construed to preclude or limit Hartford's right to object to the Plan (or any disclosure statement), or to take any other actions in the Bankruptcy Case that it may deem necessary to protect Hartford's rights and interests, in the event that this Agreement is not approved by the Court or to the extent that the Plan includes any alternatives or conditions under which this Agreement would not be part of the Plan as confirmed and the Agreement Effective Date would not occur.

E.      Consummation of the transactions contemplated by this Agreement is expressly conditioned upon the occurrence of the Agreement Effective Date, except as expressly otherwise provided in this Agreement.

F.      Notwithstanding anything to the contrary in this Agreement, in the event of any judicial disapproval of this Agreement, including the Bankruptcy Court's refusal to approve the Sale and enter the Confirmation Order or, as applicable, the Approval Order, or if on appeal the Confirmation Order or the Approval Order is vacated or reversed (notwithstanding Section 363(m) of the Bankruptcy Code, all rights under which Hartford and the BSA fully reserve), Hartford and the BSA shall have the right to declare this Agreement null and void.

G.      In the event this Agreement shall become null and void, all payments made by Hartford prior to the time it is declared null and void, along with income earned thereon, if any, shall be returned to Hartford.

**EXECUTION COPY**

H.      If this Agreement becomes null and void pursuant to Paragraph III.F above, then:

(1) the Agreement, except for Sections III.E, III.F, III.G, III.H, III.I and X–XII (which shall

remain in full force and effect), shall be vitiated and shall be a nullity; (2) Hartford shall have no

obligation to pay the Settlement Amount pursuant to this Agreement; (3) Hartford shall not be

entitled under this Agreement to assert as a defense to any Claim any benefit of any injunction

contained within the Plan, the Confirmation Order, or the Approval Order (if applicable); and

(4) the Parties shall have all of the rights, defenses, and obligations under or with respect to any

and all insurance policies that they would have had absent this Agreement, including any right to

object or otherwise participate in the Bankruptcy Case.

I.      Hartford shall be treated as a Settling Insurance Company under the Plan and

shall be provided all benefits and protections afforded to Settling Insurance Companies,

including the benefit and protection of any releases and channeling (or other) injunctions.  The

BSA shall not file, and shall not support, any plan of reorganization that is inconsistent with the

terms of this Agreement; *provided*, *however*, that the BSA may file a Plan that includes

alternatives or conditions under which this Agreement would not be part of the Plan as

confirmed and the Agreement Effective Date would not occur (in which event Hartford shall

have the right to oppose confirmation of the Plan), so long as such Plan only provides BSA with

a discharge and, other than for the protection of the "Protected Parties" identified in clauses (i),

(ii), (iii) and, as to those Protected Parties their "Representatives" as set forth in clause (v), of

Article I.A.180.b of the Second Amended Plan (that is, other than for the protection of all

Protected Parties except "Settling Insurance Companies"), does not provide an injunction

**EXECUTION COPY**

(including any channeling injunction) affording protection with respect to Abuse Claims for

other Persons, including any Local Councils.

J.        On the Plan Effective Date, the rights and obligations of the BSA under this

Agreement shall be deemed to have been assigned and transferred to the Settlement Trust

without need of further action by any Person, and the Settlement Trust shall be bound by all of

the provisions of this Agreement.  Reorganized BSA shall continue to be bound by this

Agreement and shall retain the obligations and benefits hereunder to the extent consistent with

the Plan.

**IV.    RELEASES**

A.        **Release of Hartford Released Claims.**  Upon the later of the Agreement

Effective Date and the payment of the Settlement Amount as set forth in Section II above, for

good and valuable consideration, the adequacy of which is hereby confirmed, the BSA (on behalf

of itself, Reorganized BSA and the Estate), and the Settlement Trust hereby (a) fully and forever

release and discharge Hartford from any and all Claims, whether known or unknown, suspected

or unsuspected, in law or in equity, relating to, arising out of, or in connection with the Hartford

Released Claims, whether arising under the Hartford Policies or otherwise, to the fullest extent

permitted by law, (b) withdraw any and all requests, demands, or tenders for defense or

indemnity related to Hartford Released Claims and previously submitted by or on behalf of the

BSA or the Estate to Hartford under the Hartford Policies, and (c) surrender, relinquish, and

release any further right to tender or present any Claims related to Hartford Released Claims by

or on behalf of the BSA under the Hartford Policies or otherwise.  By virtue of the foregoing

releases, Hartford shall have no duty to defend or indemnify the BSA with respect to any Claims

**EXECUTION COPY**

relating to, arising out of, or in connection with any Hartford Released Claims, past, present or

future.  Notwithstanding the provisions of this Agreement and for the avoidance of doubt, the

BSA (on behalf of itself, Reorganized BSA and the Estate) and the Settlement Trust hereby

reserve all rights against Persons other than Hartford (other than any rights under the Hartford

Policies, which are released hereunder, subject to the occurrence of the Agreement Effective

Date and payment of the Settlement Amount), and the Agreement is not intended to prejudice,

affect, or restrict (and entry into this Agreement is not intended to be, and shall not be construed

as, an election of remedy or a waiver or limitation of) any rights, powers, and remedies that the

BSA (on behalf of itself, Reorganized BSA and the Estate) and the Settlement Trust may have

against Persons other than Hartford.  The release provided in this section shall not release

Hartford from any obligations arising under this Agreement.

      B.      **Release of BSA Released Claims.**  Upon the Agreement Effective Date and

payment of the Settlement Amount, Hartford fully and forever releases and discharges the BSA,

the Estate, Reorganized BSA, and the Settlement Trust from all Claims, whether known or

unknown, suspected or unsuspected, in law or in equity, which Hartford has, had, may have, or

may claim to have against the BSA, the Estate, Reorganized BSA, or the Settlement Trust

directly or indirectly arising out of, with respect to, or in any way relating to any Abuse Claim,

including for premiums, retrospective premiums, adjustments, chargebacks, deductibles and/or

other self-insurance features arising out of the Settlement Amount and any Claims for

indemnification directly or indirectly arising out of, with respect to, or in any way relating to any

prior settlement agreement between Hartford and the BSA (collectively, the "BSA Released

Claims"), to the extent such BSA Released Claims arise on or prior to the Agreement Effective

**EXECUTION COPY**

Date.  Also effective upon the occurrence of the Agreement Effective Date and payment of the

Settlement Amount, Hartford shall withdraw any and all requests or demands for payment by the

BSA or the Estate of any BSA Released Claim arising on or prior to the Agreement Effective

Date, including any and all proofs of claim that Hartford may have asserted in the Bankruptcy

Case, and none of  the BSA, the Estate, Reorganized BSA, or the Settlement Trust shall have any

duty to indemnify, pay, or reimburse Hartford with respect to any BSA Released Claim arising

on or prior to the Agreement Effective Date.  The release provided in this section shall not

release the BSA, Reorganized BSA, the Estate or the Settlement Trust from any obligations

arising under this Agreement.

       C.      **Unknown or Future Claims.**  The Parties expressly acknowledge that there may

be changes in the law and/or the Parties may hereafter discover facts different from, or in

addition to, those that they now believe to be true with respect to any and all of the Claims

released in this Section IV.   Nevertheless, the Parties hereby agree that (subject to Sections III.E

through III.I above) the releases set forth in Section IV shall be and remain effective in all

respects, notwithstanding any changes in the law and/or the discovery of such additional or

different facts.  In addition, the Parties acknowledge they have been advised by their respective

legal counsel and are familiar with the provisions of Section 1542 of the California Civil Code,

which provides:

                **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
THAT THE CREDITOR OR RELEASING PARTY DOES
NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE RELEASE
AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR OR RELEASED PARTY.**

**EXECUTION COPY**

D.       **Agreement Rights and Obligations Not Affected.**  The releases set forth in this

Agreement are not intended to, and shall not, extend to or otherwise release or discharge any

rights, privileges, benefits, duties, or obligations of the Parties by reason of, or otherwise arising

under, this Agreement.

## V.    JUDGMENT REDUCTION

Neither the BSA nor the Estate (or any of their assignees, successors or any other Person

formed to assume the BSA's liability for Abuse Claims, including the Settlement Trust) will seek

to obtain payment from any other Person any amount that is allocable to Hartford under the

Hartford Policies on account of Hartford Released Claims.  In the event that any other such

Person obtains a final and non-appealable judicial determination or binding arbitration award that

it is entitled to obtain a sum certain from Hartford as a result of a Claim for contribution,

subrogation, indemnification or other similar Claim against Hartford for Hartford's alleged share

or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity

obligation of Hartford for any Claims released pursuant to this Agreement, the BSA, the Estate,

or their assignees, successors or any other Person formed to assume the BSA's liability for

Abuse Claims, including the Settlement Trust, as applicable, shall voluntarily reduce its

judgment or Claim against, or settlement with, such other Person to the extent necessary to

eliminate such contribution, subrogation or indemnification Claims against Hartford.  To ensure

that such a reduction is accomplished, Hartford shall be entitled to assert this paragraph as a

defense to any action against it for any such portion of the judgment or Claim and shall be

entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate

the reduction to protect Hartford from any liability for the judgment or Claim.  Hartford agrees

18

**EXECUTION COPY**

that it will not seek from the BSA or the Local Councils reimbursement of its legal fees related to

any action referenced herein.

## VI.    CONTRIBUTION CLAIMS

A.      Except as otherwise provided in this Agreement, Hartford agrees that it will not

assert or file a Claim seeking contribution, indemnity and/or defense against another Person in

order to recover any portion of the Settlement Amount to be paid under this Agreement or with

respect to the BSA Released Claims.

B.      Nothing contained in this Agreement shall be construed to prohibit Hartford from

making a Claim against any reinsurer (with respect to the Settlement Amount or otherwise) or

from pursuing its recoveries from any reinsurer in its capacity as such, regardless of the identity

or affiliation of the reinsurer.

C.      To the extent that the BSA, the Estate, or any assignee, successor or any other

Person formed to assume the BSA's liability for Abuse Claims, including the Settlement Trust,

settles Claims arising out of Hartford Released Claims with any other Insurance Company or

other Person, the BSA, the Estate, or any such assignee, successor and/or other Person will use

best efforts to obtain a waiver of that other Insurance Company's or other Person's Claims

seeking contribution, indemnity and defense against Hartford based upon, arising out of or in any

way attributable to such Claims.  Such waiver may be accomplished by an assignment of such

Claims to the Settlement Trust, whereupon such Claims will be subject to the release set forth in

Section IV herein.

## VII.    COOPERATION

A.      Each Party shall use its reasonable efforts to achieve the occurrence of the

**EXECUTION COPY**

Agreement Effective Date, and to take such steps and execute such documents as may be reasonably necessary and proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.  In the event that any action or proceeding is commenced or prosecuted by any Person to invalidate or prevent the validation, enforcement, or carrying out of all or any provisions of this Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

B.       Each of the Parties shall reasonably cooperate with each of the other Parties in responding to or opposing any motion, objection, Claim, assertion, or argument by any third party that this Agreement is not binding, or should be avoided, or that valuable and fair consideration or reasonably equivalent value has not been exchanged pursuant to this Agreement.

## VIII.   NO BENEFIT TO THIRD PARTIES

This Agreement is intended to confer rights and benefits only on the Parties and, to the extent set forth in the Local Council Release, the Local Councils.  No other person shall have any legally enforceable rights or benefits under this Agreement, except for the Parties' respective successors and assigns as permitted hereunder, including the Settlement Trust. Except as provided herein, no Party may assign this Agreement or any of its rights, benefits, or obligations hereunder without prior written consent of all other Parties hereto, which consent shall not be unreasonably withheld.

## IX.    NO ADMISSIONS AND NON-ADMISSIBILITY OF THE AGREEMENT

Nothing contained in this Agreement, or in any negotiations, discussions, correspondence or other materials of any kind relating to this Agreement or relating to the

**EXECUTION COPY**

negotiation of this Agreement, shall be deemed to be an admission on the part of the Parties with

respect to any matter or any factual or legal issue of any kind.  Except as may be necessary to

enforce the terms of this Agreement, or except as may be necessary or useful in the pursuit by

Hartford of a reinsurance recovery for sums to be paid under this Agreement, neither this

Agreement itself, nor any negotiations, discussions, correspondence, or other materials of any

kind relating to this Agreement or relating to the negotiation of this Agreement, shall be

discoverable or admissible in any legal or equitable proceeding of any kind, including any

lawsuit, mediation, arbitration, administrative proceeding or action, or any other proceeding or

action of any kind.

## X.    BINDING EFFECT OF AGREEMENT

All terms and provisions of this Agreement shall be binding on, and shall inure to the

benefit of, the Parties and their respective successors and assigns, including the Settlement Trust.

## XI.    DISPUTE RESOLUTION

If any dispute should arise concerning the terms, meaning, or implementation of this

Agreement, the Parties agree to use their best efforts to reach a prompt resolution of such

dispute.  If the Parties are unable to reach an agreement and such dispute arises prior to the entry

of the Confirmation Order or the Approval Order (if applicable), they shall proceed to mediation

before the Mediators.  Either Party may initiate litigation in the Bankruptcy Court to the extent

the Bankruptcy Court has subject-matter jurisdiction, or to the extent it does not, in any other

appropriate forum, but no Party may initiate litigation until forty-five (45) days after a mediation

has commenced and the Mediators have jointly determined that the Parties' mediation has

reached an impasse.  All of the Parties consent to personal jurisdiction in any federal court

**EXECUTION COPY**

(including the Bankruptcy Court) or state court in the State of Delaware for purposes of

resolving any dispute concerning the terms, meaning, or implementation of this Agreement.

## XII.    CONSTRUCTION OF AGREEMENT

A.    The Parties represent and acknowledge that they have participated in the

preparation and drafting of this Agreement or have each given their approval to all of the

language contained in this Agreement, and it is expressly agreed and acknowledged that if any of

the Parties later asserts that there is an ambiguity in the language of this Agreement, such

asserted ambiguity shall not be presumptively construed for or against any other Party on the

basis that one Party drafted the language of this Agreement or played a greater role in the

drafting of the language.

B.    The headings of this Agreement are asserted for convenience and are not part of

the provisions hereof and shall have no force or effect.

C.    If any provision of this Agreement or application thereof is held to be invalid or

unenforceable, the remainder of this Agreement shall remain in effect and be interpreted so as

best to reasonably give effect to the intent of the Parties.  Notwithstanding the foregoing,

Sections II, III, IV, V, the corresponding Definitions and the injunctions to be set forth in the

Confirmation Order or the Approval Order (if applicable) shall not be severable from this

Agreement.

## XIII.    REPRESENTATIONS, WARRANTIES AND OTHER MISCELLANEOUS
    PROVISIONS

A.    Each Party represents and warrants that it has taken all necessary corporate and

legal action required to duly approve the making and performance of this Agreement and,

**EXECUTION COPY**

subject to the occurrence of the Agreement Effective Date, that no further action is necessary to make this Agreement binding and legally enforceable.

B.      Each Party represents and warrants that, to the best of its knowledge and belief, the making and performance of this Agreement will not violate any provision of law or any of its respective articles of incorporation or by-laws or any contract or agreement by which it is bound.

C.      Each Party represents and warrants that it is the owner of the rights and Claims to be compromised and released by it under this Agreement and it has not assigned or transferred to any Person any Claim or other matter to be compromised and released herein. Furthermore, the BSA represents and warrants that it has not assigned or transferred any right, title or Interest under the Hartford Policies.

D.      Each Party represents and warrants that this Agreement has been entered into in good faith, as a result of arm's-length negotiations, with advice of counsel, and that this Agreement represents a fair, reasonable, proportionate and good-faith compromise of disputed Claims, disputed liabilities and disputed issues.

E.      This Agreement is not intended to be nor shall it be construed as an admission of the existence of a policy or a policy interpretation or as an admission by any Party of any duties, rights or obligations arising under the Hartford Policies, the Local Council Policies or any other insurance policies.  This Agreement shall not be used in any court or dispute resolution proceeding to create, prove or interpret the rights or obligations of the Parties, or the Local Councils, under the Hartford Policies, the Local Council Policies or any other insurance policies.

F.      Hartford represents that it has made a good-faith search and has located no

**EXECUTION COPY**

evidence of any Hartford Policies, other than those listed on Exhibit 1, and that it is not aware of any such policy, secondary evidence of any such policy, or any reason to believe such policy exists. The BSA represents that it has made a good-faith search and has located no evidence of any Hartford Policies, other than those listed on Exhibit 1, and that it is not aware of any such policy, secondary evidence of any such policy, or any reason to believe such policy exists.

G.      Each Party represents and warrants that it has read this Agreement in its entirety, fully understand all of its terms and the consequences thereof, and that the person signing this Agreement on its behalf has full and complete authority and competency to legally bind it to all terms and consequences of this Agreement.

H.      Each Party represents and warrants that this Agreement is supported by valid and lawful consideration sufficient to make all aspects of this Agreement legally binding and enforceable.

I.      This Agreement sets forth the entire agreement between the Parties as to its subject matter, and supersedes any and all prior or contemporaneous statements, agreements, negotiations, or understandings, whether written or oral, except that the Agreement should be read *in pari materia* with the Plan.

J.      All notices, demands, or other communications to be provided pursuant to this Agreement shall be in writing and sent by electronic mail and overnight mail (or United States first-class mail, postage prepaid), to the Parties at the addresses set forth below, or to such other persons or addresses as the Parties may designate in writing from time to time:

        For Hartford:

        Monica M. Curtis
        Deputy General Counsel, Head of Litigation

**EXECUTION COPY**

The Hartford
One Hartford Plaza
Hartford, CT  06155
(860) 547-3846
monica.melchionni@thehartford.com

With a copy to:

James P. Ruggeri
Shipman & Goodwin LLP
1875 K Street, Suite 600
Washington, DC  20006
(202) 469-7750
jruggeri@goodwin.com

and

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
(212) 230-8890
Philip.Anker@Wilmerhale.com

For the BSA:

Steven P. McGowan
General Counsel
Boy Scouts of America
1325 West Walnut Hill Lane
Irving, TX 75038
(972) 580-7847
steve.mcgowan@scouting.org

With a copy to:

Jessica C. Lauria
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
jessica.lauria@whitecase.com

Case 20-10343-LSS    Doc 2624-1    Filed 04/16/21    Page 27 of 42

**EXECUTION COPY**

      Michael C. Andolina
      Matthew E. Linder
      White & Case LLP
      111 South Wacker Drive
      Chicago, IL 60606
      (312) 881-5400
      mandolina@whitecase.com
      mlinder@whitecase.com

      K.     This Agreement may be amended only by a writing signed by or on behalf of each

Party.

      L.     Each Party may sign an e-mail copy of this Agreement, in counterparts, with the

same effect as if each Party had signed an original of the same document.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

BSA (as defined)

By: _____

Name: Roger C. Mosby

Title: President and CEO

Date: 4-14-21

Hartford (as defined)

By: _____

Name: _____

Title: _____

Date: _____

*Signature Page to Settlement Agreement and Release*

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last

date indicated below.

BSA (as defined)                          Hartford (as defined)

By: _____            By: _____

Name: _____            Name: John Kinney_____

Title: _____           Title: EVP, Chief Claims Officer____

Date: _____            Date: April 15, 2021_____

*Signature Page to Settlement Agreement and Release*

**EXECUTION COPY**

## Exhibit 1

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Hartford Accident and Indemnity Company | 10 HU A43300 | May 1, 1971 - May 1, 1972 |
| Hartford Accident and Indemnity Company | 10 C A43315 | September 21, 1971 - January 1, 1972 |
| Hartford Accident and Indemnity Company | 10 C A43304 | January 1, 1972 - January 1, 1974 |
| Hartford Accident and Indemnity Company | 10 C A43303 | January 1, 1972 - January 1, 1974 |
| Hartford Accident and Indemnity Company | 10 HU A43302 | January 1, 1972 - January 1, 1974 |
| Hartford Accident and Indemnity Company | 10 HU A43303 | May 1, 1972 - May 1, 1974 |
| Hartford Accident and Indemnity Company | 10 C A43329 | January 1, 1974 - January 1, 1975 |
| Hartford Accident and Indemnity Company | 10 C A43324 | January 1, 1974 - January 1, 1975 |
| Hartford Accident and Indemnity Company | 10 HU A43331 | January 1, 1974 - January 1, 1975 |
| Hartford Accident and Indemnity Company | 10 HU A43335 | May 1, 1974 - January 1, 1975 |
| Hartford Accident and Indemnity Company | 10 C A43342E | January 1, 1975 - January 1, 1976 |
| Hartford Accident and Indemnity Company | 10 C A43349E | January 1, 1976 - January 1, 1977 |
| Hartford Accident and Indemnity Company | 10 C A43359E | January 1, 1977 - January 1, 1978 |
| Hartford Accident and Indemnity Company | 10 JP A43360E | January 1, 1977 - January 1, 1978 |
| First State Insurance Company | 908954 | January 1, 1978 - January 1, 1979 |
| First State Insurance Company | 927616 | January 1, 1979 - January 1, 1980 |

**EXECUTION COPY**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| First State Insurance Company | 931255 | January 1, 1981 - January 1, 1983 |
| First State Insurance Company | 931257 | January 1, 1981 - January 1, 1983 |
| First State Insurance Company | EU 006921 | March 1, 1988 - March 1, 1989 |
| Twin City Fire Insurance Company | TXU 100325 | January 1, 1982 - January 1, 1983 |
| Navigators Specialty Insurance Company | CH12EXC747034IC | March 1, 2012 - March 1, 2013 |
| Navigators Specialty Insurance Company | CH13EXC747034IC | March 1, 2013 - March 1, 2014 |

**EXECUTION COPY**

**Exhibit 2**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |

## ORDER APPROVING SETTLEMENT AGREEMENT WITH HARTFORD ACCIDENT AND INDEMNITY COMPANY, FIRST STATE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY AND NAVIGATORS SPECIALTY INSURANCE COMPANY AND AUTHORIZING THE SALE OF THE POLICIES FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND OTHER ENCUMBRANCES

This matter comes before the Court upon the motion, dated _____, 2021 (the

"Motion"),[2] of BSA for an order pursuant to Sections 105(a) and 363 of title 11 of the United

States Code (the "Bankruptcy Code") and rules 2002, 6004 and 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing BSA to enter into a compromise

and settlement with Hartford pursuant to which (among other things) BSA, on behalf of itself and

the Estate, will provide Hartford releases, as set forth in the Settlement Agreement (the

"Agreement," a copy of which is attached as Exhibit 1); (ii) authorizing the Sale of the Hartford

Policies to Hartford pursuant to the terms and conditions of the Agreement, free and clear of all

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Lane, Irving, Texas 75038.

[2]     Except as otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Agreement (as defined herein).

**EXECUTION COPY**

Interests; (iii) approving the Agreement in all respects; and (iv) enjoining various Claims against

Hartford as described in Paragraph 8 below (the "Injunction").  The appearances of all interested

parties and all responses and objections to the motion, if any, have been duly noted in the record

of the hearing held on _____, 2021 (the "Hearing").  Upon the record of the Hearing, the

Motion, all responses and objections, if any, thereto, all other proceedings in the Bankruptcy

Case, and after due deliberation and sufficient cause appearing therefore, the Court hereby makes

the following:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**:[3]

<u>**Jurisdiction, Final Order and Statutory Predicates**</u>

A.      The Court has jurisdiction over the Motion and relief requested therein, including

responses and objections thereto, if any, pursuant to 28 U.S.C. §§ 157 and 1334, and this matter

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue of the

Bankruptcy Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and immediately appealable order within the

meaning of 28 U.S.C. § 158(a).

C.      The statutory predicates for the relief sought in the Motion are Sections 105(a) and

363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

<u>Retention of Jurisdiction</u>

D.      It is necessary and appropriate for the Court to retain jurisdiction to, among other

---

[3]      The findings and conclusions set forth herein constitute the Court's findings of fact and
conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding
pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute
conclusions of law, they are adopted as such.  To the extent any of the following conclusions of
law constitute findings of fact, they are adopted as such.

**EXECUTION COPY**

things, interpret and enforce the terms and provisions of this Order and the Agreement, and to

adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting,

any of the transactions contemplated under the Agreement.

Notice of the Motion

E.      BSA has provided due and adequate notice of the Motion, the Hearing, the

Agreement and the subject matter thereof to all parties in interest pursuant to Bankruptcy Rules

2002 and 6004.  Such notice was good and sufficient under the particular circumstances, and no

further notice is necessary.  Without limiting the generality of the foregoing, adequate notice of

the Motion, the Hearing and the Agreement has been provided, and a reasonable opportunity to

object or be heard with respect to the Motion and the relief requested therein has been afforded,

to all parties in interest, including (i) all known holders of Abuse Claims; (ii) all other Persons

known to have provided general liability insurance to BSA; (iii) all other Persons, known to

BSA, which actually or allegedly are insured or claim to be entitled to any rights or benefits

under any of the Hartford Policies; (iv) all Persons or Entities that have filed proofs of claim in

the Bankruptcy Case; (v) all official committees appointed in the Bankruptcy Case; and (vi) all

other Persons or Entities that, as of the date the Motion was filed, had filed a notice of

appearance and demand for service of papers in the Bankruptcy Case or were otherwise listed on

the master service list maintained by BSA in the Bankruptcy Case.  In addition, to ensure the

broadest notice possible, BSA published notice of the Motion and the hearing on two separate

occasions in The New York Times and USA Today.

Sound Business Judgment and Reasonableness

F.      The relief requested in the Motion is in the best interests of BSA, the Estate, its

creditors, claimants and other parties-in-interest.  BSA has demonstrated good, sufficient and

3

**EXECUTION COPY**

sound business purposes and justifications for the relief requested in the Motion and the approval of the transactions contemplated thereby.

G.       The Agreement, including the Sale of the Hartford Policies free and clear of any and all Interests, is fair and reasonable and in the best interests of the Estate.  The Settlement Amount paid represents fair and reasonable consideration for the Sale of the Hartford Policies, the release of Claims and the other provisions as set forth in the Agreement.  The Agreement is also in the best interests of other parties in interest, including claimants, because it is contemplated that the proceeds of the Sale will be used to pay Abuse Claims.

Good Faith of Purchaser of the Hartford Policies

H.       The Agreement was negotiated and proposed, and has been entered into by the Parties, in good faith, from arm's-length bargaining positions, and without fraud or collusion. Each Party to the Agreement was represented by counsel.  The sale consideration to be realized by the Estate pursuant to the Agreement is fair and reasonable.  Hartford is a good faith purchaser for value of the Hartford Policies within the meaning of Section 363(m) of the Bankruptcy Code and is entitled to the protection thereof.  Neither BSA nor Hartford, nor any of their representatives, have engaged in any conduct that would (i) cause or permit the Agreement, or the Sale of the Hartford Policies contemplated therein, to be avoided under Section 363(n) of the Bankruptcy Code, (ii) cause or permit any amounts, costs, attorneys' fees, expenses or punitive damages to be recovered under Section 363(n) of the Bankruptcy Code, or (iii) prevent the application of Section 363(m) of the Bankruptcy Code.

Satisfaction of Section 363(f) Requirements

I.       BSA may sell the Hartford Policies free and clear of all Interests of any Person under Section 363(f) of the Bankruptcy Code because one or more of the criteria set forth in

**EXECUTION COPY**

Sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Without limiting the generality

of the foregoing, those holders of Interests against any of the Hartford Policies who did not

object, or who withdrew their objections, to the Motion or the relief requested therein are deemed

to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code, and each holder of an

Interest in the Hartford Policies can be compelled, in a legal or equitable proceeding, to accept a

money satisfaction of such Interest as contemplated by Section 363(f)(5) of the Bankruptcy

Code.

      J.      To the extent any Person has an Interest in the Hartford Policies, such Interest is

adequately protected as required by Section 363(e) of the Bankruptcy Code by the attachment of

such Interest to the proceeds of sale pursuant to Paragraph 7 of this Order, and in no

circumstance will Hartford be required to satisfy such Interest.

<u>No Successor Liability</u>

      K.      The transfer of the Hartford Policies pursuant to the Agreement does not and will

not subject or expose Hartford to any liability, Claim (including any Abuse Claim), cause of

action or remedy by reason of such transfer under (a) the laws of the United States, any state,

territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly

or indirectly, including any theory of tort, creditors' rights, equity, antitrust, environmental,

successor or transferee liability, labor law, de facto merger, or substantial continuity; or (b) any

employment contract, understanding or agreement, including collective bargaining agreements,

employee pension plans, or employee welfare or benefit plans.

      L.      Hartford is not assuming any of BSA's obligations to its employees (including any

obligations under BSA's collective bargaining agreements, if any), by reason of the purchase of

5

**EXECUTION COPY**

the Hartford Policies.

M.    No common identity of officers or directors exists between Hartford and the Estate or BSA.

N.    Hartford is purchasing the Hartford Policies pursuant to the Agreement and this Order.  Hartford is not purchasing any other assets of BSA or the Estate.  Hartford shall not have any responsibility or liability with respect to any of BSA or the Estate's other assets or for any liability of, or Claims against, BSA.

O.    A sale of the Hartford Policies other than one free and clear of Interests, if possible at all, would impact adversely on BSA and the Estate and would be of substantially less benefit to BSA, the creditors and the Estate.  Hartford would not purchase the Hartford Policies, and pay the Settlement Amount, if the Sale were not free and clear of all Interests.

<u>Injunction</u>

P.    Issuing an injunction under Section 105(a) of the Bankruptcy Code is essential to give effect to the Sale of the Hartford Policies to Hartford free and clear of Interests pursuant to Section 363(f) of the Bankruptcy Code.  The Injunction as set forth in Paragraph 8 below is a necessary prerequisite for Hartford's agreement to the terms and conditions of the Agreement, and Hartford will not consummate the Sale of the Hartford Policies in the absence of such a supplemental injunction from this Court.

Q.    To the extent that the holders of present and future Claims have any Interest in the Hartford Policies, such Persons are adequately protected in that they will have the right to pursue their Claims against the proceeds of the Sale of the Hartford Policies with the same validity and priority as against the Hartford Policies, and in no circumstance will such Interest be satisfied by

**EXECUTION COPY**

Hartford.

R.       The Interests, if any, of any other insurer are adequately protected because the

Agreement provides that BSA, the Estate, the Settlement Trust, any assignee, successor or any

other Person formed to assume BSA's liability for Abuse Claims, shall reduce any final

judgment or final binding arbitration award, Claim against, or settlement with, any such insurer

to the extent necessary to eliminate any such insurer's Claim for contribution, subrogation,

indemnification or similar Claim against Hartford (as provided in the Agreement).

Based on the foregoing and after due deliberation, **IT IS ORDERED, ADJUDGED,**

**AND DECREED THAT:**

1.       The Motion is **GRANTED** and **APPROVED** in all respects.

2.       For the reasons set forth herein and on the record at the Hearing, all objections to

the Motion and the relief requested therein and/or granted in this Order that have not been

withdrawn, waived, or settled, and all reservations of rights included in such objections, are

overruled on the merits.

3.       Pursuant to Section 363(b) of the Bankruptcy Code, BSA is authorized and

directed to enter into and consummate the Agreement, including to (i) sell, transfer and convey

the Hartford Policies to Hartford, free and clear of all Interests, in accordance with the terms and

subject only to the conditions specified herein and in the Agreement, and (ii) release all Hartford

Released Claims as set forth in the Agreement.  BSA and Hartford are each hereby authorized to

take all actions and execute all documents and instruments that BSA and Hartford deem

necessary or appropriate to implement and effectuate the transactions contemplated by the

Agreement.

**EXECUTION COPY**

4.      The terms of the Agreement (including the releases set forth in Section IV) are approved in their entirety, and this Order and the Agreement shall be binding upon the BSA, the Estate, the Settlement Trust and any other assignee, successor or any other Person formed to assume BSA's liability for Abuse Claims, Hartford, and all Persons holding Interests in the Hartford Policies or Claims against the BSA or the Estate, or any Local Councils (including all holders of Abuse Claims), the BSA's insurers other than Hartford, any actual or potential insureds under the Hartford Policies, all other parties in interest, and each of the foregoing entities' successors and assigns.  The Sale of the Hartford Policies by the BSA to Hartford, effective upon the Agreement Effective Date and the payment by Hartford of the Settlement Amount, shall constitute a legal, valid, and effective transfer of the Hartford Policies to Hartford, and shall vest Hartford with all right, title, and interest in and to their respective Hartford Policies, free and clear of all Interests pursuant to Section 363(f) of the Bankruptcy Code.

5.      Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company shall pay to BSA the Settlement Amount subject to the terms and conditions provided in the Agreement.

6.      The Sale of the Hartford Policies to Hartford under the Agreement constitutes a transfer for reasonably equivalent value and fair consideration for purposes of Section 548 of the Bankruptcy Code and comparable provisions of non-bankruptcy law.

7.      Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code and subject to the consummation, as of the Agreement Effective Date and the payment by Hartford of the Settlement Amount, the Hartford Policies shall be transferred to Hartford, free and clear of any and all Interests of all Persons in, to and with respect to the Hartford Policies, including any and all Claims of any additional insureds or other Persons claiming any right to coverage under any

**EXECUTION COPY**

of the Hartford Policies and any and all Claims against Hartford for contribution, indemnity or

other liability under, in connection with or relating to the Hartford Policies (including any Direct

Action Claims), whether arising prior to, during, or subsequent to the Bankruptcy Case or

imposed by agreement, understanding, law, equity or otherwise.  Any and all such Interests shall

attach to the proceeds of Sale with the same validity, priority, force, and effect as such Interests

had in the Hartford Policies prior to entry of this Order.  Nothing contained herein is intended to

nor shall be deemed to constitute a determination of the extent, validity or priority of any such

Interests that may be asserted (including by any other insurance company) against the proceeds

of the Sale.

**8.      Effective as of the Agreement Effective Date and the payment by Hartford of**

**the Settlement Amount, pursuant to Sections 105(a) and 363 of the Bankruptcy Code, all**

**Persons who have held or asserted, who hold or assert, or who may in the future hold or**

**assert any Claim or Interest of any kind or nature against or in any of the Estate, BSA, the**

**Hartford Policies, or Hartford based upon, relating to, arising under or out of, derived**

**from or attributable to the Hartford Policies or otherwise relating to the Hartford Released**

**Claims, whenever or wherever arising or asserted (including all thereof in the nature of or**

**sounding in tort, contract, warranty or any other theory of law, equity or admiralty), shall**

**be and are permanently stayed, restrained and enjoined from asserting any such Claims or**

**Interests against Hartford and from continuing, commencing, or otherwise proceeding or**

**taking any action against Hartford to enforce such Interests or Claims or for the purpose of**

**directly or indirectly collecting, recovering or receiving payments from Hartford to recover**

**with respect to any such Claim or Interest.  The injunction set forth in this Paragraph 8 is a**

**permanent injunction and shall not be modified or amended.**

9

**EXECUTION COPY**

9.     Hartford is not, and shall not be deemed to be, a successor to BSA or the Estate by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in the Agreement or otherwise.  Hartford shall not assume any liabilities of BSA or the Estate, including any liabilities for Abuse Claims.

10.     The transactions contemplated by the Agreement, including the Sale of the Hartford Policies to Hartford free and clear of all Interests, are undertaken by Hartford in good faith, as that term is used in Section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization to consummate the Sale of the Hartford Policies and the transactions contemplated by the Agreement shall not affect the validity of the Sale of the Hartford Policies to Hartford, unless such authorization is duly stayed pending such appeal. Hartford is a purchaser in good faith of the Hartford Policies and shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

11.     Pursuant to Bankruptcy Rule 9019, the settlement and mutual release of Claims as set forth in the Agreement are hereby approved as of the Agreement Effective Date.  This Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed under Bankruptcy Rule 6004(g).

12.     The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

13.     This Court shall retain jurisdiction to interpret and enforce the provisions of this Order and the Agreement in all respects, and to adjudicate, if necessary, any and all disputes arising under or relating in any way to, or affecting, any of the transactions contemplated under the Agreement.

**EXECUTION COPY**

14.     Each and every federal, state, and local governmental agency or department is hereby directed to accept this Order in lieu of any document necessary to consummate the transactions contemplated by the Agreement and this Order.

15.     The provisions of this Order are mutually dependent and are not severable.


It is so **ORDERED**.


DATED:     _____     _____

United States Bankruptcy Judge