# **<u>EXHIBIT D</u>**

```
                      UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE

                                       .    Chapter 11
   IN RE:                              .
                                       .    Case No. 20-10343 (LSS)
   BOY SCOUTS OF AMERICA AND           .
   DELAWARE BSA, LLC,                  .
                                       .    Courtroom No. 2
                                       .    824 North Market Street
                                       .    Wilmington, Delaware 19801
                                       .
                       Debtors.        .    July 7, 2021
   . . . . . . . . . . . . . . . . .        2:00 P.M.

              TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
            BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                    UNITED STATES BANKRUPTCY JUDGE

   TELEPHONIC APPEARANCES:

   For the Debtor:         Derek C. Abbott, Esquire
                           Andrew R. Remming, Esquire
                           Paige N. Topper, Esquire
                           MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                           1201 North Market Street, 16th Floor
                           Wilmington, Delaware 19899

                           - and -

                           Jessica C. Lauria, Esquire
                           WHITE & CASE LLP
                           1221 Avenue of the Americas
                           New York, New York 10020

   Audio Operator:         Brandon J. McCarthy, ECRO


   Transcription Company:  Reliable
                           1007 N. Orange Street
                           Wilmington, Delaware 19801
                           (302)654-8080
                           Email: gmatthews@reliable-co.com

   Proceedings recorded by electronic sound recording; transcript
   produced by transcription service.
```

1            THE COURT:  Thank you.

2            Mr. Zalkin?

3            MR. ZALKIN:  Thank you, Your Honor.  Good
4 afternoon.

5            I -- this is my first appearance.  Just a little
6 bit of what my background is.  Our firm we have offices in San
7 Diego and New York.  We have been representing survivors of
8 childhood sexual abuse around the country for the past twenty
9 years or more.  I was appointed liaison counsel on behalf of
10 all the claimants in the San Diego Diocese bankruptcy by Judge
11 Louise DeCarl Adler and was the principal negotiator of the
12 $200 million settlement in that case which ended up with a
13 discharge of the bankruptcy as opposed to a plan.

14            I know Mr. Molton.  He was involved with me in
15 that.  We worked closely together.  I know Mr. Stang.  He and
16 I worked together not only on the San Diego bankruptcy, but
17 other bankruptcies.

18            We have looked at our firm and I will represent to
19 you that there are probably, among the group of us, about 50
20 law firms who have been taking a very close look at the
21 disclosure statement, the RSA, the most recent proposed plan,
22 the previously proposed plan and I was going to come to you
23 today and say we are -- we have some serious concerns and
24 objections that we intend to raise at the disclosure hearing.
25 I didn't expect people to be previewing the plan, and

1  highlighting points of the plan in advance of that.
2         I would -- I'd feel remiss if I don't address some
3  of that.  I don't want to get into an argument on the merits
4  of the plan.  That would be appropriate for a confirmation
5  hearing.  There are serious issues with questions of the
6  channeling injunction and the effectiveness of the channeling
7  injunction here where the court has subject matter
8  jurisdiction over the local councils, whether the local
9  councils are making a substantial contribution to the plan.
10        There are issues with respect to whether the court
11 can enforce claims that are not, otherwise, enforceable within
12 State Courts.  There are issues as to whether there should be
13 parody in voting between claimants who would not have valid
14 claims in the State Court, with claimants that do have valid
15 claims in the State Courts.  I know, for example, our firm
16 represents substantial numbers of California claimants where
17 we have a valid and open statute of limitations.  And issues
18 whether those claims should be treated, from a voting
19 standpoint, at parody with claims of victims from states where
20 they are foreclosed from bringing claims by their statutes of
21 limitations.
22        There are issues as to whether and why the
23 contributions of the local councils represent less than a
24 third of what they are acknowledging are unrestricted assets
25 and whether the insurance claims or insurance liability of

1  those non-debtor third parties would, in exchange for those
2  injunctions which would release them from all claims now and
3  forever, cap the liability of those carriers to the amounts of
4  the contributions that are being made by the local councils
5  assuming the court approves the channeling injunction to those
6  councils.
7          There are questions as to what is happening with
8  the future claims.  We've got to address future claims.  There
9  is a future claims representative with respect to the BSA
10 whose mandate is limited to the claims of those who are under
11 18 or have recovered memories -- or may have recovered
12 memories of the future only in states that recognize recovered
13 memory, but there are other future claims that people brought
14 on behalf of victims like in California where they have a
15 delayed discovery, for example, where they don't make a causal
16 connection between their sexual abuse and their adult injuries
17 or psychological injuries or illnesses for years.  That would
18 give rise to a future claim.  That is not being represented,
19 those folks aren't being represented.  We don't know what
20 future claims will be as to the local councils should the
21 court agree to channel the claims against the local councils
22 to the trust.
23         It's been represented in meetings held by sponsors
24 of the RSA and the TDP to the plan that this is -- that
25 confirmation of the plan would be the equivalent of a

1  litigated plan and that the plan confirmation would operate as
2  a judgement enforceable against the insurers.  We have
3  researched this issue and we haven't seen -- we have concerns
4  as to whether that is a viable position.
5           There are more issues.  I don't want to go through
6  the litany of objections that we plan to make.  Those are just
7  some of the questions that we have that we don't feel
8  adequately were addressed.  When a client asks me what am I
9  likely to get in recovery here I have no way to answer that.
10 I don't know if the $850 million that is putting in
11 collectively between the BSA and local councils is, in fact,
12 $850 million.  That is a combination of cash and personal and
13 real properties.  I don't (indiscernible) plan or disclosure
14 statements that indicates that is adequately appraised.  We
15 have issues with is that real or what.
16          So I don't want to take up much more time.  This
17 wasn't my intention.  I just simply -- you know, I feel like I
18 needed to address, at least alert the court to what is coming.
19 We will be filing these objections.  I think we need time.
20 You know, we are looking at very serious issues.  I commend
21 the work of the people who have been involved in negotiations.
22 I have been there.  I know what it takes when you have
23 multiple moving parts.
24          I was involved in the LA Catholic abuse settlement.
25 We had hundreds of insurance companies for the insurers,

1      I mean, each of the last two conferences, I came to
2 Your Honor and said, we are being excluded from the
3 mediations.  We are not being included as part of these
4 discussions, you know, basically foretold where we were here.
5 And, look, I want to be clear, like, yes, periodically, people
6 came to us and said, you know, talked to just us about money,
7 but it's like, we were not included in the meetings between
8 the Boy Scouts and the claimants.  It was as if we were
9 completely excluded from that, as well as the drafts of all of
10 these TDPs; the things that affected us the most.  And, you
11 know, we did want to weigh in on those things and we did try
12 to play a productive role, and God knows, we want to play a
13 productive role.
14      And I think if the record on mediation was lifted,
15 you'd find that we played a very productive role here and
16 helped bring about, you know, this thing as far as it's gotten
17 so far.  But, Your Honor, where'd ask that you please give us
18 some additional time here so we can put before you a full
19 record so you can make good decisions on what's going to come
20 out.
21      Thank you, Your Honor.
22      THE COURT:  Thank you.  Mr. Goldberg?
23      MR. GOLDBERG:  Thank you, Your Honor.  Adam
24 Goldberg of Latham & Watkins, on behalf of the Church of Jesus
25 Christ of Latter Day Saints.

1    I'd like to speak, Your Honor, to join in the
2 request to adjourn the disclosure statement hearing, the
3 objection deadline, and the RSA motion.  Your Honor, the
4 debtors tout the RSA as representing a breakthrough with every
5 significant creditor constituency in these cases.  They have
6 left out one major creditor constituency, that is the
7 chartered organizations.
8    The church is one of the chartered organizations.
9 According to the debtors' disclosure statement there, are over
10 41,000 of them.  Those chartered organizations are individual
11 church congregations, temples, schools, civic, and charitable
12 organizations, businesses, and groups of citizens.
13    The latest disclosure statement includes a list of
14 the top-20 chartered organizations that appear in proof of
15 claim forms.  Those organizations include the Methodist
16 Church, the Baptist Church, the Catholic Church, the Church of
17 Jesus Christ of Latter Day Saints, the Presbyterian Church,
18 the Lutheran Church, the Episcopal Church, the United States
19 Armed Forces, the YMCA, and the Salvation Army.
20    The plan does not have the support of any chartered
21 organization and none, to our knowledge, have had any advanced
22 drafts of the plan or disclosure statement before they hit the
23 docket.  Only a handful of chartered organizations have become
24 mediation parties in these cases to date.
25    The plan, as is developed under the RSA, is highly

1  prejudicial to the rights of chartered organizations and the
2  proposed -- in particular, Your Honor, there are two issues
3  that I'd focus on.  One is that the proposed TDPs expressly
4  subordinate the indemnity claims of chartered organizations
5  which are termed "indirect abuse claims" under the plan.
6              Article 11 of the TDP is clear that indirect abuse
7  claims are subordinate to payment in full of all direct abuse
8  claims and those terms first appear in the June 18 filing
9  that, is the third amended plan.  In the context of this case,
10 it would seem highly unlikely that chartered organizations
11 would ever recover anything at all on account of their valid
12 indemnity claims under the current plan, and if they did
13 recover anything, it would be years and years down the road.
14             In terms of disclosure to those 41,000 chartered
15 organizations who are to receive this highly discriminatory
16 treatment, the subordination is buried in a footnote in the
17 treatment summary table in the proposed disclosure statement
18 and then does not appear until page 194 of the disclosure
19 statement.
20             The second issue, Your Honor, in addition to
21 outright subordination, the plan strips valuable property
22 recognition away from chartered organizations without any
23 compensation or consent.  The plan provides an injunction
24 against chartered organizations pursuing their own insurance
25 rights as the policies issued for the debtors and expressly

1  covering chartered organizations, as well as for policies
2  issued for nondebtor local councils and that expressly cover
3  chartered organizations.
4         This injunction does not affect just settling
5  insurance companies, if any, but all insurance companies.
6  These are extraordinary terms for treatment of insurance in
7  mass-tort cases that appear to us to be without precedent.
8         The disclosure statement states in the treatment
9  and summary table on page 22 that the indirect abuse claims
10 will have recourse to insurance rights.  That statement is
11 completely false or at least grossly misleading if the intent
12 is actually to say that chartered organizations may have
13 rights under their own insurance to which the BSA and local
14 councils were not party.
15        There are numerous other ways in which the
16 chartered organizations are prejudiced in the current plan and
17 TDPs; for example, Your Honor, before an indirect abuse
18 claimant may receive from the trust, it must release the
19 settlement trust and protected parties for all liabilities for
20 direct abuse claims.  That's effectively a nonconsensual
21 release as a condition to any distribution and that first
22 appeared in the June 18th filings, as well.
23        The RSA announced on July 1st is, itself, a very
24 material development in these cases for chartered
25 organizations and the fourth amended plan, we've had for just

1  one business day at this point, Your Honor, has material
2  changes that particularly include removal of the toggle plan
3  option.  And that change is very important to us and to other
4  chartered organizations because under the terms that were
5  proposed, the toggle plan would have been a better outcome for
6  chartered organizations.  Under the toggle plan, chartered
7  organizations would have kept their own insurance rights,
8  which are stripped under the current plan.

9  　　　　　Your Honor, Delaware Local Rule 3017-1 requires 35
10 days' notice of a hearing on a disclosure statement and 28
11 days' notice of an objection deadline.  The current proposed
12 timing is shortened notice under the Local Rules, even using
13 the third amended filed on June 18th as a start date.

14 　　　　　From our point of view, it's especially appropriate
15 to enforce compliance with the rules at a minimum in the
16 circumstances of these highly complex cases in which the RSA
17 parties of seek to push the boundaries of the plan terms in
18 new ways.  The RSA parties, no doubt, engaged in extensive
19 effort to develop a proposed plan and I would diminish their
20 achievement at all.

21 　　　　　What it shows to me, Your Honor, is that adjourning
22 the disclosure statement at the last hearing was the right
23 decision and that time has been used productively.  This
24 achievement, among a subset of the parties in this case,
25 however, is not a justification to cut short the process when