**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| BOY SCOUTS OF AMERICA AND | : | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC[1], | : | |
| | : | *Jointly Administered* |
| | : | |
| Debtors. | : | **Ref. No. 5466** |

**OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE RESTRUCTURING SUPPORT AGREEMENT, AND (II) GRANTING RELATED RELIEF FILED BY COURTNEY KNIGHT AND STEPHEN KNIGHT, JOINTLY AS THE SURVIVING PARENTS OF E.J.K, A MINOR CHILD AND STEPHEN KNIGHT, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF E.J.K**

Courtney Knight and Stephen Knight, jointly as the surviving parents of E.J.K, a minor child, and Stephen Knight as Personal Representative of the Estate of E.J K. (together the "Knights"), by and through undersigned counsel, by way of Objection to the Debtors' Motion For Entry of An Order, Pursuant To Sections 363(b) And 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement (the "RSA"), and (II) Granting Related Relief (the "Motion"), hereby state:

**BACKGROUND**

1. On January 8, 2019, the Knights filed a wrongful death action in the State Court of Cobb County, Georgia (the "Georgia Action") against Debtor Boy Scouts of America ("BSA") and Atlanta Area Council, Inc. ("Atlanta Council") for the death of their 14-year-old son, E.J.K. ("E.J.K.") on June 25, 2018. [*See* Docket No. 545, Motion for Relief from Stay at Ex. A, Complaint].

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311) (together, the "Debtors"). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

2.  E.J.K. was killed while attending a summer camp near Atlanta, Georgia, owned and operated by the Atlanta Council and accredited by the BSA National Camp Accreditation Program.

3.  The Georgia Action, consisting of claims for negligence, negligence *per se*, wrongful death, premises liability, punitive damages and vicarious liability of BSA for the negligence of the Atlanta Council, has been assigned to Chief Judge Carl W. Bowers ("Judge Bowers") and remains pending.

4.  On February 18, 2020, BSA and Delaware BSA, LLC (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), thereby automatically staying the Georgia Action pursuant to 11 U.S.C. § 362(a)(1).

5.  On February 19, 2020, the Court ordered joint administration of the Debtors' Chapter 11 cases. [Docket No. 61].

6.  On May 4, 2020, the Knights filed a motion for relief from the automatic stay to proceed with the Georgia Action for the purposes of recovering from available insurance proceeds and liquidating their claims. [Docket No. 545].

7.  By Order entered on July 8, 2020, the Knights' motion was granted and the automatic stay of 11 U.S.C. §§ 362(a) was modified for the limited purpose of permitting the Knights to liquidate their claims through the continuation of the pending Georgia Action (the "Stay Relief Order"). [Docket No. 989]. A copy of the Stay Relief Order is attached hereto as **Exhibit A**.

8.  Following the completion of fact discovery in the Georgia Action, the Knights filed a sanctions motion based upon BSA's and the Atlanta Council's improper withholding of

discoverable evidence, including but not limited to documents that Judge Bowers had previously ordered them to produce.

9. After the parties to the Georgia Action fully briefed the issues and argued the motion, Judge Bowers entered an issue-preclusion sanction ("Sanctions Order") establishing BSA's and Atlanta Council's negligence and policy violations as well as the foreseeability of the storm that caused E.J.K.'s death as a matter of law. A copy of the Sanctions Order entered in the Georgia Action is attached hereto as **Exhibit B**.

10. The Sanctions Order puts the Knights' Non-Abuse Litigation Claim in the unique position of having negligence, policy violations, and foreseeability established, defenses struck, and damages exposure for the death of a child as it is the only Non-Abuse Litigation Claim for the 2018 coverage year to be in this procedural posture.

11. Under Georgia's Wrongful Death Act, the Knights are entitled to recover for the full value of the life of their decedent, E.J.K, as shown by the evidence. O.C.G.A. § 51-4-2.

12. The evidence of the full value of E.J.K.'s life paints a clear and compelling picture of E.J.K. as a young man of exceptional potential and significant accomplishment.

13. E.J.K. aspired to be an environmental engineer and to use his skills both to improve the world and to address issues of gender and racial inequality as well as environmental challenges across the globe.

14. A deep thinker and a passionate inventor, E.J.K. had big dreams, and his motto – "Start everything with kindness and the end will be okay" – has evolved into a poignant legacy and nonprofit organization called Kindness to Action that continues to have a global impact even after his untimely death.

15. At only 14 years old, E.J.K. was a Life Scout working toward becoming an Eagle Scout, an accomplished saxophone player, a Rubik's cube master, a voracious reader, a cross-country runner, a dedicated community volunteer, and an honors student selected by his teachers for recognition for his outstanding character and positive contributions to his school community. A brief biography of E.J.K. that details his life in greater detail, including but not limited to a sampling of the type of testimony that will be presented at trial in support of the full value of E.J.K.'s life is attached hereto as **Exhibit C**.

16. For the reasons set forth in detail below, the Knights object to the Debtors' Motion to enter into and perform under the RSA to prevent impairment of their claims and to preserve the availability of all applicable insurance policies for their claims. [Docket No. 989].

## OBJECTIONS TO THE RELIEF REQUESTED

***A.   The RSA Impairs the Knights' Rights to Recover from Available Insurance Coverage Because it Does Not Require Earmarking of Insurance Company Settlement Proceeds to Specific Policy Years.***

17. The RSA unfairly and improperly impairs the Knights' ability to satisfy their claims from available insurance proceeds.

18. For the period between 2008 and 2018, the BSA and related parties were covered under primary and excess insurance policies issued by Old Republic Insurance Company ("Old Republic"). Under the primary and excess policies issued by Old Republic, the BSA and related entities are provided with coverage with respect to personal injury, and property damage or malpractice up to a limit of $1 million per occurrence with no aggregate limits under the Old Republic primary policies and up to $9 million per occurrence and $9 million in the aggregate per year under the Old Republic excess policies. Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an

4

Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies (the "Old Republic Motion") [Docket No. 678] at ¶¶ 6 and 7.

19.     The BSA also has additional "substantial excess Insurance Coverage during this time period." Amended Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC ("Disclosure Statement") [Docket No. 5485] at 47.

20.     The Knights' claim is covered by the Old Republic policies for the period from March 1, 2018 to March 1, 2019 (the "2018 Policy Year").

21.     Upon information and belief, there has already been erosion of available insurance proceeds for the policies covering the Knights claims, due to mounting defense costs and settlements reached to date. Indeed, the Debtors have represented that during the period between 1990 and 2018, there are "a few excess Insurance Policies that have been eroded or exhausted by pre-Petition settlements and defense costs." Disclosure Statement at 47.

22.     The RSA does not require the proceeds of settlements with insurance companies to be segregated by policy year. This would allow such proceeds to be deposited into the Settlement Trust without earmarking the funds for payment of claims for occurrences during particular policy years.

23.     This is a particular concern to the Knights, and unfairly prejudices their rights, because there is less available coverage for claims asserted with regard to occurrences during policy years other than the 2018 Policy year. For instance, the aggregate limit for Old Republic Excess Policies has already been exhausted for several other policy years. Old Republic Motion

at ¶ 7. Likewise, a majority of the Insurance Policies during the period from 1983 to 1985 have been exhausted. Disclosure Statement at 46.

24. Any insurance settlement funds arising from the 2018 Policy Year should not be used to satisfy claims relating to occurrences during any other policy years unless and until the Knights' claim is fully paid.

### B. The RSA Unfairly Limits the Knights' Ability to Recover Their Claims Against the Atlanta Council from the Atlanta Council's Insurance Coverage.

25. The RSA also inequitably restricts the Knights' ability to recover their claims against the non-Debtor Atlanta Council. Although the Knights' claims against the Atlanta Council would not be released under the Debtors' current proposed plan,[2] the RSA appears to preclude the Knights from being paid the amount of any settlement with the Atlanta Council because it includes this language in Section 7 of Schedule 1 to the Reorganization Term Sheet (the "Term Sheet") governing Treatment of Non-Abuse Litigation Claims ("Schedule 1"): "if the holder of a Non-Abuse Litigation Claim provides a full and complete written release of any claims that such holder of a Non-Abuse Litigation Claim may have against the Local Council related to the Non-Abuse Litigation Claim, then the Local Council will be deemed to have waived any rights it may have against the Specified Insurance Policy with respect to such Non-Abuse Litigation Claim."

26. The Knights' recovery of their non-released claims against the Atlanta Council should not be limited to the Atlanta Council's remaining non-insurance assets. The RSA should not impair the Knights' ability to recover any judgment against, or settlement with, the Atlanta Council from the Atlanta Council's available insurance coverage.

---

[2] The current proposed Plan provides that "Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of … Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 shall, or shall be construed to, release any claims or Causes of Action against any Local Council…." Fourth Amended Plan, Article X.J.1.a.3.

### C. *The RSA Affords the Settlement Trust and Others Too Much Discretion Over the Knights' Claims and Denies the Knights a Full and Adequate Opportunity to Protect Their Interests.*

27. Section 1 of Schedule 1 provides that the Coalition, TCC and Future Claimants' Representative agree not to oppose any reasonable pre-emergence settlement of a Non-Abuse Litigation Claim that is proposed to be paid from a Specified Insurance Policy that is a primary or umbrella policy. The Coalition, TCC and Future Claimants' Representative should also be prohibited from objecting to reasonable settlements that will be funded from *excess* insurance policies.

28. Section 6 of Schedule 1 provides that "[t]he Settlement Trust shall have consent over any post-emergence settlement of Non-Abuse Litigation Claims, such consent not to be unreasonably withheld."

29. Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Bankruptcy Court "may approve a compromise or settlement." Approval should be denied only where "the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012).

30. All settlements that meet the Rule 9019 standard should be approved, regardless of the position of the Settlement Trust.

31. Under the Term Sheet, post-effective date settlements may be approved on the terms and conditions set forth in the Settlement Trust Agreement, which is not attached to the Debtors' Motion. Since insurance company settlements could have a critical impact on the

Knights' ability to recover their losses, the Knights should be specifically afforded the right to object to any insurance company settlements.[3]

32. Section 7 of Schedule 1 requires that notice of Non-Abuse Litigation Claims be provided to the Debtors, the Coalition, the TCC, and the Future Claimants' Representative, but does not provide the form and manner of such notice. Although the Debtors, the Coalition, the TCC, and the Future Claimants' Representative all have more than adequate notice of the Knights' claims through their filed proof of claim and stay relief motion, the specific type of notice should be delineated.

## RESERVATION OF RIGHTS

33. The Knights hereby reserve their right to modify and/or supplement this Objection, or join in Objections filed by other parties, prior to and at the hearing set for July 29, 2021.

34. The Knights also reserve their right to raise the foregoing objections, as well as any additional objections, to the Debtors' proposed disclosure statement and plan.

SCHNADER HARRISON SEGAL & LEWIS LLP

Dated: July 23, 2021

By: /s/ Kristi J. Doughty
Richard A. Barkasy (#4683)
Kristi J. Doughty (#3826)
824 North Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 482-4038
Facsimile: (302) 888-1696
rbarkasy@schnader.com
kdoughty@schnader.com

*Attorneys for Courtney and Stephen Knight, Jointly As the Surviving Parents of E.J.K., a minor child, and Stephen Knight as Personal Representative of the Estate of E.J.K.*

---

[3] The Term Sheet provides that pre-emergence settlements with insurance companies are subject to Bankruptcy Court approval and presumably the Knights would have the right to object to any motion seeking approval of such settlements.