EXHIBIT B

**EFILED IN OFFICE**
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**19-A-68**

**JUN 07, 2021 10:17 AM**

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

## IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

COURTNEY KNIGHT and )
STEPHEN KNIGHT, )
jointly as the surviving parents of )
E] J. K , )
a minor child; and STEPHEN KNIGHT, )
as the Personal Representative of the )
ESTATE OF E J K , )
)  Civil Action No. 2019-A-68-7
Plaintiffs, )
)
v. )
)
BOY SCOUTS OF AMERICA (CORP) )
and ATLANTA AREA COUNCIL, INC., )
BOY SCOUTS OF AMERICA, )
)
Defendants. )

### ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS
### AGAINST DEFENDANTS FOR REPEATED DISCOVERY ABUSES

Proper notice having been given to all parties, Plaintiffs' Motion for Sanctions was heard virtually by the Court on April 12, 2021. Having read and considered Plaintiffs' Motion for Sanctions as well as the response thereto, and having considered the evidence of record and the arguments of counsel at the hearing, the Court finds as follows:

### BACKGROUND

Fourteen-year-old Boy Scout E K died on June 25, 2018 when a tree fell on his tent during a storm at Bert Adams Scout Camp ("the Camp") in Covington, Georgia. E 's parents filed this suit against the Boy Scouts of America ("BSA") and its local chapter, the Atlanta Area Council, on January 8, 2019 for negligence, negligence per se, wrongful death, premises liability, punitive damages and the vicarious liability of defendant BSA for the negligence of defendant Atlanta Area Council. Plaintiffs assert that the defendants failed to have

adequate procedures for keeping campers safe during a storm, failed to properly monitor the weather leading up to the storm at issue, and failed to warn campers of the imminent danger posed by the storm. Defendants deny liability and maintain that the magnitude of the storm was unforeseeable.

Motions to compel filed by plaintiffs on May 31, 2019 and August 30, 2019 were heard on December 9, 2019. As a result, an order was entered on December 17, 2019 directing defendants to produce certain documents enumerated in defendants' privilege log as well as all responsive documents related to subsequent remedial measures. Plaintiffs also sought all documents regarding hazardous weather protocols, and based upon defendants' express assertion at oral argument that no such documents were being withheld, the Court found this issue moot. Defendant BSA subsequently filed bankruptcy, from which plaintiffs obtained relief from the stay from the United States Bankruptcy Court for the Northern District of Delaware. Post-stay, additional discovery issues arose resulting in plaintiffs filing a motion for sanctions against defendants for repeated discovery abuses on February 11, 2021. The motion contends that defendants repeatedly violated their discovery obligations by failing to comply with the Court's December 17, 2019 discovery order and by willfully withholding evidence. Defendants argue that the subject evidence was ultimately produced, claim that their actions were justified and deny that sanctions are warranted.

## LEGAL STANDARD

"OCGA §9-11-37(b)(2) provides that, if a party fails to comply with a prior order compelling discovery, a trial court may sanction the party by making 'such orders in regard to the failure as are just' and may choose from, among other things, the list of five sanctions specified by OCGA §9-11-37(b)(2)(A)-(E)." American Medical Security Group, Inc. v. Parker,

2

284 Ga. 102, 105 (663 SE2d 697) (2008).  Of those sanctions, plaintiffs seek to have

defendants' answer struck and default judgment entered, or, alternatively, defendants precluded

from contesting the issues of duty and breach.  "What the law contemplates under OCGA § 9-11-

37 is a two-step proceeding before the ultimate sanction of dismissal or default judgment may be

imposed. First, a motion to compel must be filed and granted; second, after the party seeking

sanctions notifies the court and the obstinate party of the latter's failure to comply with the order

granting the motion to compel and of the moving party's desire for the imposition of sanctions,

the trial court may apply sanctions after giving the obstinate party an opportunity to be heard and

determining that the obstinate party's failure to obey was willful." (Citation omitted). North

Druid Development, LLC v. Post, Buckley, Schuh & Jernigan, 330 Ga. App. 432, 435-436 (767

SE2d 29) (2014).  "A conscious or intentional failure to act is in fact willful, compared to an

accidental or involuntary non-compliance.  Courts consider the entire history of the proceeding

in determining an appropriate discovery sanction." (Citation and punctuation omitted.) Curry v.

Conopco, Inc., 354 Ga. App. 692, 694 (840 SE2d 151) (2020).

Additionally, "if a party wilfully and knowingly responds to discovery requests with false

answers to interrogatories and/or with false statements unequivocally denying the existence of

requested discoverable materials, the trial court is authorized to consider this a failure to respond

under OCGA §9-11-37(a)(3), and, as a consequence, immediately sanction the party pursuant to

OCGA §9-11-37(b)(2)(A)-(C) and (d)(1)." (Citation omitted.) Howard v. Alegria, 321 Ga. App.

178, 189 (739 SE2d 95) (2013).  "It follows that, when a defendant wilfully, knowingly, falsely,

consistently and unequivocally denies the existence of requested discoverable documents, the

plaintiff is not required to obtain an order compelling discovery before seeking sanctions under

OCGA §9-11-37(d)(1).  Instead, prior to the imposition of such sanctions, all that is required is a

3

request for sanctions, notice to all parties, and a motion hearing to determine if the offending

party's failure to respond was wilful." (Citation omitted.) <u>Howard</u> at 189.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs contend the defendants violated the Court's December 17, 2019 order compelling

discovery with respect to the following categories of documents, or are otherwise subject to

sanctions for the following reasons[1]:

A. <u>Scene Photos and Videos</u>

Plaintiffs sent multiple discovery requests seeking photographs and other evidence depicting

the campgrounds at the Camp.  Defendants and their counsel obtained photographs and videos of

the campsite, some specifically depicting the weather conditions in the hours and minutes

leading up to the subject storm, but in response to plaintiffs' discovery requests, denied the

existence of any photographs depicting the Camp leading up to the incident.  Instead, defendants

ambushed the plaintiff-parents in this case at mediation – almost two years after the case was

filed and over a year after the Court's hearing on discovery matters – with the existence of

discoverable photos and videos.  Although some of these images and photographs were produced

after mediation, some were not produced in a readable format to plaintiffs, and plaintiffs believe

additional photos and videos exist which have not been produced.

The photographs and videos at issue are highly relevant, discoverable, not privileged, and

relate to pivotal issues in this case including the changing weather conditions leading up to the

storm, the severity of the storm, how the storm traveled through various areas of the Camp as it

approached the subject campsite, and whether and when alarms were activated.  Defendants

contend that they ultimately produced the materials after mediation, that the photos and videos

---

[1] Plaintiffs' request for sanctions regarding defendants' insurance information was raised for the first time in the
subject motion.  No relief is awarded on that claim.

4

were not in their "custody and control" as defendants obtained them from non-parties, and that plaintiffs had the names of the non-parties and could have requested the same information from the non-parties themselves.

By these arguments, defendants admit that they intentionally withheld the subject photographs and videos from plaintiffs, at least until mediation. Defendants ignored their obligation under the rules governing discovery to produce these items as soon as defendants obtained them, and defendants' "lack of custody and control" argument is unsupported by either the facts or the law. Defendants' partial production of these items, some of them not in a readable form, after the mediation constitutes a continuing failure of defendants to meet their discovery obligations with respect to these materials. Defendants' actions are conscious, willful, and intentional, and prejudiced plaintiffs by depriving plaintiffs of these materials in preparation for depositions, during examination of witnesses and in consultation with experts during the discovery phase. Defendants' intentionally false responses to plaintiffs' discovery requests for the photos and videos constitutes a total failure to respond to discovery that authorizes the Court to impose immediate sanctions under O.C.G.A. §9-11-37(d)(1); Howard at 189.

   B.   Hazardous Weather Policies

Plaintiffs requested in discovery all hazardous weather policies in place at the Camp, and moved to compel this information. During the December 9, 2019 discovery hearing on plaintiffs' motions to compel, the Court intended to order defendants to produce any responsive items, but Defendants specifically and pointedly represented to the Court that all such policies had been previously produced. In reliance thereon, the Court's order states that "with respect to Plaintiffs' discovery requests for hazardous weather protocols . . . Plaintiff's Motion to Compel is MOOT as Defendants stated in open court they are not withholding any responsive

5

documents." See Court's order of December 17, 2019. Nonetheless, the undersigned stated on the record that if defendants discovered that they had not produced all such documents, defendants were ordered to do so.

Subsequently, during a deposition when plaintiffs questioned a witness about the "EAP" acronym identified in an email, it was revealed that defendants possessed a 2015 camp-specific hazardous weather policy referred to as the Emergency Action Plan (or "EAP"). This plan sets forth procedures for several types of emergencies, including "Thunderstorms," and defendants produced it after plaintiffs' discovery of it at the subject deposition. This document is relevant, discoverable, and would have been compelled by the Court in December, 2019 if defendants had been forthright about its existence.

Defendants maintain they did not produce the EAP because they considered it irrelevant and non-responsive, and contend much of it is unrelated to weather and storms. This is unpersuasive given the lengthy discussion during the discovery hearing regarding the discoverability of the Camp's weather policies, and in any event, a document cannot be withheld in discovery because part of it is nonresponsive. Defendants' withholding of the EAP in direct violation of the Court's Order evidences willful, intentional conduct as opposed to an inadvertent or accidental oversight. Plaintiffs were prejudiced by the late production of the EAP because they were forced to take critical depositions without the benefit of the document.

C.  Post-Incident Documents

Plaintiffs requested in discovery all documents reflecting post-incident changes to weather policies and procedures. The Court ordered production of the requested information in its December 17, 2019 order. Following December, 2019, defendants undertook efforts to change their weather policies, including collaborating with the National Weather Service to achieve a

"Storm Safe Certification." Most of the post-incident documents reflecting these changes appear to have been generated between December 2019 and June 2020, but defendants failed to identify them until plaintiffs began taking depositions in September, 2020, and deponents began describing these changes. Consistent with defendants' pattern, defendants produced some of the documents weeks later only after having their existence revealed in depositions. Plaintiffs were forced to obtain some of the documents directly from the National Weather Service due to defendants' failure to produce them.

Defendants violated the Court's order by failing to produce the post-incident documents in a timely manner, have no justification for their failure to timely produce the post-incident documents, and the Court finds that defendants' failure to abide by the discovery order was willful. The post-incident documents directly relate to fundamental issues in the case, including the feasibility of alternative methods to monitor and communicate weather events, and plaintiffs were prejudiced by the late disclosure of the post-incident documents because plaintiffs were forced to take multiple depositions without the benefit of the information. Plaintiffs should have had access to the documents so that they could thoroughly prepare for and cross-examine witnesses as well as confer with their experts during the discovery phase.

D. Camp Director's Incident Report

The Court ordered in December, 2019 that all incident reports, especially those that were created as part of the Defendants' policies and procedures, were discoverable. At oral argument, defendants claimed that no reports were created by defendants at the express direction of defense counsel. Despite this representation, during the deposition of the Camp Director on September 9, 2020, it was revealed that the Camp Director had, in fact, generated an incident report on or about June 25, 2018 as part of defendants' set policies.

7

Defendants argue that the Camp Director's incident report is not actually an incident report and therefore discoverable as such, but is instead a "witness statement." Defendants also maintain that inasmuch as the incident report was produced after plaintiffs discovered it, plaintiffs suffered no harm from defendants having withheld the incident report.

In so doing, defendants have again admitted that they intentionally withheld a discoverable document, the incident report. Defendants' categorization of the Camp Director's nearly-contemporaneous incident report as a "witness statement" and therefore not discoverable is as unconvincing as defendants' argument that the EAP contained "mostly irrelevant information." Defendants' misrepresentations to the Court about the existence of the incident report and defendants' subsequent failure to produce it was both conscious and intentional.

Plaintiffs suffered prejudice from the late disclosure of the Camp Director's Report because the Report sets forth critical facts, such as a timeline of the weather conditions leading up to the events, and it identifies fact witnesses who were not otherwise identified by defendants. Plaintiffs were forced to depose other key witnesses without the benefit of the Report, and should have had the Report in advance of the Camp Director's deposition.

## CONCLUSION

As set forth herein, defendants have intentionally, willfully and consciously violated the Court's order of December 17, 2019, and with respect to photographs and videos, willfully, knowingly, and falsely denied the existence of such materials prior to revealing their existence by ambush at mediation. Although plaintiffs have requested that the Court strike defendants' answers in their entirety based on the cumulative effect of their multiple violations of the Court's order and their denial of scene photos and videos, in the exercise of its discretion, the Court declines to impose this most extreme and drastic sanction. Having considered the efficacy of

alternative sanctions, such as allowing the parties to re-depose certain witnesses or imposing a monetary sanction, and finding that such sanctions do not remedy the prejudice caused by defendants' discovery violations, the Court finds that issue preclusion is the appropriate remedy on this record. See O.C.G.A. §9-11-37(b)(2) (A)-(B); see also <u>Ford Motor Company v. Gibson</u>, 283 Ga. 398, 402, (659 SE2d 346) (2008).

Accordingly, at trial, it "shall be taken to be established for the purposes of the action" that (1) the storm that passed through Bert Adams Scout Camp on June 25, 2018 that resulted in the death of E    K      was foreseeable, and (2) defendants had weather policies and procedures in place at the time of E    K    's death, and defendants violated those weather policies and procedures. The jury will be instructed accordingly, and defendants will not be permitted to introduce evidence or make any arguments contrary to the facts as established above. The remaining issues for the jury's determination are causation and damages.

If defendants are in possession, custody, or control of any document, video, or photograph, whatsoever, responsive to plaintiffs' discovery requests and have not produced those documents or have not produced them in a format readable by plaintiffs, defendants shall do so within 20 days of the date of this order to bring themselves in full compliance with the discovery directives already entered by this Court.

SO ORDERED, this 7th day of _____June_____, 2021.

_____
Carl W. Bowers, Judge
State Court of Cobb County

(order submitted modified by the Court)

9

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served true and exact copies of the foregoing

### ***ORDER***

(Through Peachcourt) to the following:

Washburn, Lawrence - lee.washburn@wilsonelser.com

Harris, Jeffrey - jeff@hlmlawfirm.com

Melcher, Jeffrey - jeffrey.melcher@wilsonelser.com

Sayers, Maria - msayers@hlmlawfirm.com

Harris, Rebecca - rebecca@franklinlawllc.com

Godfrey, Yvonne – yvonne@hlmlawfirm.com


This ____7th____ day of June, 2021.


/s/ Wendy Basnett
Wendy Basnett
Judicial Administrative Specialist
Office of Judge Carl W. Bowers
State Court of Cobb County
Cobb Judicial Circuit