### PIN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>Hearing: July 29, 2021 at 10:00 a.m. (EDT)<br><br>RE: Docket No. 5466 |

### STATEMENT OF THE AD HOC COMMITTEE OF LOCAL COUNCILS
### IN SUPPORT OF THE RSA APPROVAL MOTION

The Ad Hoc Committee of Local Councils of the Boy Scouts of America (the "Ad Hoc Committee")[2] respectfully submits this statement (the "Statement")[3] in support of the *Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5466] (the "RSA Approval Motion") and states as follows.

The Restructuring Support Agreement (the "RSA") that the Debtors seek to implement represents a significant milestone in these cases. The RSA paves the path to a plan of reorganization supported by all major creditor constituencies, building on prior agreements that

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's U.S. tax identification number are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] The Ad Hoc Committee consists of eight Local Councils: the Andrew Jackson Council, the Atlanta Area Council, the Crossroads of America Council, the Denver Area Council, the Grand Canyon Council, the Greater New York Councils, the Mid-America Council, and the Minsi Trails Council. For the avoidance of doubt, this Statement is submitted on behalf of the Ad Hoc Committee and not on behalf of any individual member or any local council. The undersigned represent only the Ad Hoc Committee and not any of its members individually. The Ad Hoc Committee does not represent (and this Statement should not be construed as a statement on behalf of) any individual Local Council.

[3] Capitalized terms not defined have the meanings given in the RSA Approval Motion or the RSA.

the Debtors achieved with the Official Committee of Unsecured Creditors as well as the Debtors' senior secured lender, J.P. Morgan Chase. Critically, the RSA has the support of the Official Committee of Tort Claimants and the Future Claimants' Representative, the fiduciaries for *all* tort claimants present and future, and the Coalition of Abused Scouts for Justice, which comprises more than 18,000 claimants who have signed affirmative consents to being a part of the Coalition as well as law firms that have filed statements with the Bankruptcy Court that they represent approximately 60,000 claimants. *No* representative of *any* major creditor constituency (and no committee that acts in a fiduciary capacity) opposes the Debtors' entry into and performance under the RSA.[4]

The Ad Hoc Committee supports entry of an order permitting the Debtors to perform under the RSA, thereby permitting the ongoing process to continue toward plan solicitation and confirmation proceedings. If the Court denies the RSA Approval Motion, it will represent a serious – and potentially fatal – setback for these cases, as well as for the Debtors, their creditors (including victims of Abuse), the over 250 Local Councils, and the roughly one-million youth that depend on the Debtors and the Local Councils to deliver the mission of Scouting.

The Ad Hoc Committee limits this Statement to responding to certain matters that most directly implicate issues that relate to Local Councils.

*First*, certain objectors contend that Local Councils have not agreed to contribute the amounts required under the RSA. *See, e.g.*, D.I. 5682 at 2-3 (claiming that there is "no

---

[4] The Ad Hoc Committee recognizes that certain chartered organizations have objected to the RSA Approval Motion. As described herein, however, the Ad Hoc Committee and the Debtors have been intensively engaged among themselves and with numerous chartered organizations to finalize the treatment of those organizations under the Plan.

evidence that the Local Councils have actually agreed to contribute the $600 million, which may explain why the Local Councils have so far refused to disclose how much they are each contributing and the basis for what they are each withholding"). The Ad Hoc Committee submits that this issue is not necessary for the Court to consider in connection with the RSA Approval Motion. Nonetheless, the objectors are simply wrong.

The Ad Hoc Committee has asked all Local Councils to execute letters of intent in the amounts that aggregate to the $500 million commitment of cash and property contemplated under the RSA.[5] Those letters of intent specify the amount of cash and property that each Local Council intends to contribute as part of the global resolution.

As of the date of filing of this Statement, virtually all Local Councils have returned letters of intent agreeing to pay amounts that, in the aggregate, will meet the amounts required under the RSA. Additionally, the Ad Hoc Committee is confident that, by the time of the hearing on the disclosure statement, it will have secured letters of intent from *all* Local Councils to contribute the amount requested of them by the Ad Hoc Committee.

As required under the RSA,[6] the amount of each Local Council's contribution – and its breakdown of cash and property – will be included in the disclosure statement.

*Second*, certain insurers have made misleading statements to the effect that the RSA does not provide protections for chartered organizations. *See, e.g.*, D.I. 5684 ¶ 34 ("[T]he RSA fails to provide any protections from Abuse Claim liability for [chartered organizations]

---

[5]    In addition to the cash and property directly paid by Local Councils, under the RSA, the Settlement Trust will be issued the DST Note in the aggregate face amount of $100 million.

[6]    *See* D.I. 5466-2 at 71 ("A listing of each Local Council's total expected contribution will be included in the Amended Disclosure Statement and provided to the Coalition, TCC and the Future Claimants' Representative, including a specific break-down between the (i) Cash Contribution and (ii) Property Contribution.").

that are so critical to the BSA's operations."). This, too, is unnecessary for the Court to consider on this Motion. It is also incorrect.

The RSA already *does* provide substantial protections for chartered organizations, including an affirmative release by any holder of an Abuse Claim that elects to receive an Expedited Distribution. *See* D.I. 5466-2 (Trust Distribution Procedures), Art. VI.B ("Direct Abuse Claimants who have properly elected to receive the Expedited Distribution in accordance with the Plan and Confirmation Order . . . shall be entitled to receive their Expedited Payment ***upon executing an appropriate release, which shall include a release of*** the Settlement Trust, the Protected Parties, and ***all Chartered Organizations***." (emphases added)). Indeed, in the *same* objection where the insurers claim that chartered organizations are receiving *no* protection under the RSA, they also speculate that *68,500* holders of Direct Abuse Claims will elect to accept the Expedited Distribution (whereby *each* such claimant will provide an affirmative release of *all* chartered organizations). *See* D.I. 5684 ¶ 67. The Ad Hoc Committee will not speculate as to the ultimate number of Direct Abuse Claimants who will elect to take an Expedited Distribution. However, the insurers' own statements represent a patent contradiction: if 68,500 holders of Direct Abuse Claims provide affirmative releases to all chartered organizations, chartered organizations will receive *substantial* protection under the terms of the RSA that have already been negotiated.

And, while the RSA already provides this substantial protection for chartered organizations, the Ad Hoc Committee and the other parties to the RSA recognize that broader resolution is in the interest of all parties. To that end, the RSA specifically contemplates that "the Parties shall work in good faith to develop a protocol for addressing participation by Chartered Organizations in the benefits of the Channeling Injunction. Such settlements may

-4-

occur prior to the Effective Date with the consent of all Parties." *See* D.I. 5466-2 at 77-78 (Plan Term Sheet).

The Ad Hoc Committee can report that the parties to the RSA have taken these obligations to heart. Many of the RSA parties, including the Ad Hoc Committee and the Debtors, have been intensively engaged among themselves and with numerous chartered organizations to finalize the treatment of those organizations under the Plan.

Chartered organizations *are* critical partners of the Scouting movement, and to Local Councils in particular. Indeed, they are so critical that the Local Council financial commitments (which, as noted, will be disclosed in due course) *expressly* contemplate appropriate protections for chartered organizations.

In short, while irrelevant to the Court's consideration of this Motion, the RSA does *not* fail to provide protections for chartered organizations. To the contrary, it already provides initial and significant protections for chartered organizations, and provides a framework to finalize this work, which granting the RSA Approval Motion will continue to advance.

*Third*, the bulk of the proverbial "kitchen sink" of objections thrown at the RSA seek to obscure the proper scope of the inquiry the Court should adopt to consider the RSA Approval Motion, and are really objections to the *Plan* filed alongside the RSA. Those objections, for whatever they may be worth, are properly considered at the plan confirmation hearing *after* creditors have voted in favor of or against the Plan and the Court has the benefit of that record. It is unnecessary, and inappropriate, to consider plan confirmation objections in connection with the RSA Approval Motion.

The RSA Approval Motion seeks relief under sections 105 and 363 of the Bankruptcy Code. No relief is sought under section 1129 of the Bankruptcy Code. In considering that Motion, the Court should apply the black-letter business judgment standard.

In a flimsy effort to have the Court apply an entire fairness standard of review, the insurers make a series of contrived assertions directed at Local Councils lacking in both evidentiary support and analysis, proclaiming that the Debtors suffer from "debilitating conflicts of interest," that "the Local Councils exercise[] complete and total control over the Debtors' corporate governance," and that the Local Councils are "insiders" of the Debtors. *See, e.g.*, D.I. 5684 ¶¶ 23-26.

The BSA will refute this argument in its reply. Suffice it to say here that the Local Councils are not "insiders" of the Debtors within the meaning of section 101(31) of the Bankruptcy Code (which the insurers do not even bother to cite), and the directors of the Debtors are not beholden to any interest of the Local Councils in a way that would render them conflicted and not entitled to business judgment deference in the Court's assessment of the RSA Approval Motion.

\* \* \* \* \*

The RSA represents a significant milestone in these cases and provides a framework to bring about an even broader negotiated resolution. Entry into the RSA was a sound and appropriate exercise of the Debtors' business judgment and the Ad Hoc Committee respectfully requests that the Court enter an order granting the RSA Approval Motion.

Dated:  July 26, 2021
         Wilmington, Delaware

DLA PIPER, LLP (US)

 */s/ R. Craig Martin*
R. Craig Martin (No. 5032)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801-1147
Telephone:  (302) 468-5655
Facsimile:  (302) 778-7834
Email:  craig.martin@dlapiper.com


WACHTELL, LIPTON, ROSEN & KATZ

 */s/ Richard G. Mason*
Richard G. Mason (admitted *pro hac vice*)
Douglas K. Mayer (admitted *pro hac vice*)
Joseph C. Celentino (admitted *pro hac vice*)
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  RGMason@wlrk.com
         DKMayer@wlrk.com
         JCCelentino@wlrk.com


*Attorneys for the Ad Hoc Committee of Local Councils of the Boy Scouts of America*