**Exhibit A**

**Chart of Objections and Debtors' Response**

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| **The Church of Jesus-Christ of Latter-Day Saints**<br><br>[D.I. 5674] | The RSA's turnover provisions that would require Chartered Organizations to provide privileged information to the Settlement Trust as a condition to participating in a global resolution under the Plan could prevent the Church and other organizations from becoming Contributing Chartered Organizations. (Obj. ¶ 2). | The Settlement Trust will need certain information that the Protected Parties have with respect to Abuse Claims. The turnover provisions are reasonable in light of the protections afforded Protected Parties under the Amended Plan. *See* Debtors' Reply § II.F.3. |
| | It is inappropriate for the RSA and RSA Motion to seek any findings regarding the confirmability of the Plan, including the good faith proposal thereof. (Obj. ¶ 3). | The Revised Proposed Order, filed contemporaneously herewith, contains a good faith finding *only* with respect to the RSA. *See* Debtors' Reply § I.C. |
| **Roman Catholic Ad Hoc Committee and United Methodist Ad Hoc Committee**<br><br>[D.I. 5676] | The RSA's proposed treatment of Chartered Organizations is unlawful because it takes the Chartered Organizations' insurance and indemnification rights (which are not property of Debtors' estates) and provides such rights to the Settlement Trust without Chartered Organizations' consent. (Obj. ¶¶ 9, 11, 25-27). | This objection to the assignment of Local Council and Chartered Organization rights under Abuse Insurance Policies is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § II.D. |
| | The TDP allowance procedures impair a Chartered Organization's Indirect Abuse Claim because the TDP require Chartered Organizations to have filed proofs of claim by bar date regardless of whether received notice of Abuse Claim and requires Chartered Organization to have paid in full its liability to a Direct Abuse Claimant, which strips Chartered Organization of its right to have insurer pay anything. (Obj. ¶¶ 13, 30). There is also no guarantee of compensation since no reserve is being set aside for Indirect Abuse Claims under the TDP [D.I. 5466-2 at 111]. (Obj. ¶¶ 14, 31). | The Debtors will prove at the Confirmation Hearing that the Amended Plan documents comply with all requirements pursuant to the Bankruptcy Code. *See* Debtors' Reply § II.F. |
| | The Debtors did not exercise reasonable business judgment in proposing the RSA because Debtors failed to consult with Chartered Organizations before agreeing to the RSA and Debtors did not consider protecting Chartered Organizations or their insurance rights in the RSA. (Obj. ¶¶ 1, 36). | The RSA is a building block toward resolution with other parties in interest, including, Chartered Organizations. Additional mediation dates have already been set aside to mediate Chartered Organizations and other issues. The fact that the Debtors have not yet reached an agreement with the Chartered Organizations is not a basis for extinguishing the RSA. *See* Debtors' Reply § I.B.1. |

---

[1] The summaries contained herein are qualified in their entirety by the Reply. In the event of any discrepancies between this summary and the Reply, the Reply shall govern in all respects.

| **RESPONDING PARTY** | **OBJECTION / RESPONSE**[1] | **DEBTORS' REPLY** |
|---|---|---|
| **The Episcopal Church**<br><br>**[D.I. 5677]** | The Episcopal Church joins The Church of Jesus-Christ of Latter-Day Saints' objection [D.I. 5674]. | *See* reply to The Church of Jesus-Christ of Latter-Day Saints' objection herein. |
| **Hartford Accident and Indemnity Company**<br><br>**[D.I. 5681]** | The BSA's request for a declaration that it has no obligation to seek approval of, and have no obligations under, the Hartford Settlement requires an adversary proceeding. (Obj. at 18-19). | The Court has authority to determine whether the Debtors are required to continue prosecuting the Hartford Settlement. The eight clauses of Bankruptcy Rule 7001 do not cover the applicable relief sought here, and consequently, there is no need for an adversary proceeding under Bankruptcy Rule 7001(9). *See* Debtors' Reply § IV.I. |
| | A debtor cannot repudiate its obligation to seek approval of a settlement (especially, one containing no "fiduciary out") or confirmation of a plan embodying that settlement because its "business judgment" has changed. (Obj. at 20). | The Debtors have not repudiated the Hartford Settlement or breached any term thereof. The Debtors are seeking a determination from the Court that the Debtors are not obligated to continue to pursue approval of the Hartford Settlement. *See* Debtors' Reply § IV.A. |
| | The Settlement Agreement requires BSA to seek confirmation of either the Global Resolution Plan or the Toggle Plan, and it bars BSA from seeking confirmation of any other plan while the Global Resolution Plan or Toggle Plan is pending. (Obj. at 23). | The Debtors have complied with the affirmative obligations of the Hartford Settlement to the extent possible, including the filing of a plan of reorganization incorporating the Hartford Settlement. *See* Debtors' Reply § IV.A. |
| | Neither "changed circumstances" nor "futility" justify BSA's request to repudiate its obligation to seek confirmation of the Global Resolution or Toggle Plan. The Plaintiffs Representatives' opposition to the Hartford Settlement is not a change in circumstances. (Obj. at 31-33). | The ruling Hartford seeks would inappropriately elevate the Debtors' alleged duty to pursue a settlement agreement with Hartford above the Debtors' fiduciary duty to the creditor body as a whole. The Debtors believe that the Hartford Settlement cannot meet the applicable standards to be approved by the Court. As a result, the Debtors believe they should be authorized to enter into the RSA without any obligations under the Hartford Settlement. *See* Debtors' Reply § IV.C. |
| | The Fourth Amended Plan is manifestly less confirmable, than either the Global Resolution Plan or the Toggle Plan. (Obj. at 36). | The Debtors will prove at the Confirmation Hearing that the Amended Plan documents comply with all |

2

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | | requirements pursuant to the Bankruptcy Code. *See* Debtors' Reply § II. |
| | If BSA were to breach its post-petition commitment to seek approval of the Global Resolution Plan incorporating the Hartford buy-back, it would also subject the estate to substantial administrative-expense claims for damages Hartford suffers. (Obj. at 37). | The Debtors have not breached the Hartford Settlement and, if the Court determines it should not be approved, then the terms of the Hartford Settlement will not be enforceable against the Debtors, rendering a breach an impossibility. *See* Debtors' Reply § IV.F. |
| **Bielli & Klauder, LLC, The Zalkin Law Firm, P.C., Pfau Cochran Vertetis Amala PLLC, Horowitz Law, Panish Shea & Boyle LLP, Rebenack Aronow Mascolo, LLP, Aylstock, Witkin, Kreis & Overholtz, PLLC, Linder, Sattler & Rogowsky, LLP, Manly, Stewart & Finaldi, Dumas & Vaughn, Betti & Associates, Law Office of Kirk C. Davis, Green & Gillispie, Spagnoletti Law Firm, Chason & Walton, LLC, Law Offices of Anthony M. DeMarco, Oshan & Associates, P.C., Fasy Law, PLLC, Law Office of Joseph** | The RSA is not fair and equitable under Rule 9019 because (i) it provides a windfall to Local Councils through exchanging permanent releases in exchange for less than one-fifth of their total assets; and (ii) Abuse Claimants bear the risk of the deal not being executed as envisioned, particularly if the plan caps the exposure of liability insurance policies of the Local Councils and Chartered Organizations. (Obj. ¶¶ 5-8). | The standard under Bankruptcy Rule 9019 is deferential to a debtor's judgment and merely requires the Court to ensure that the settlement is fair and equitable and does not fall below the lowest point in the range of reasonableness in terms of benefit to the estate. The Debtors are not seeking to enter into the RSA pursuant to Bankruptcy Rule 9019, but to the extent it is applicable, the standard under this rule is met. *See* Debtors' Reply § I.A.2, n.12. |
| | The Debtors do not provide required evidence to show sound business judgment or fairness by not offering alternatives or weighing options – the Mosby Declarations and Whitman Declarations are at most opinion and conjecture. (Obj. ¶¶ 13-14). | The record amply supports the findings requested by the Debtors in the Revised Proposed Order. *See* Debtors' Reply Ex. A. |
| | One of the flaws of the RSA is that the Court lacks subject matter jurisdiction over claims among survivors, the Local Councils, and the Chartered Organizations. (Obj. ¶¶ 17-24). | The Debtors will prove at the Confirmation Hearing that Court has subject matter jurisdiction over this matter. At a minimum, the Court has sufficient "related to" jurisdiction. *See* Debtors' Reply § II.G. |
| | The BSA does not meet bar set by *Millenium* because the releases are not necessary as evidenced by prior insistence on the Toggle Plan and because the Chartered Organizations are not signatories to the RSA. (Obj. ¶ 26). | The Debtors will argue at confirmation that the third-party releases and the Channeling Injunction satisfy the applicable Third Circuit standard for approval and will prove the third party injunctions are essential to the reorganization. *See* Debtors' Reply § II.A. |
| | The assignment of Local Council and Chartered Organization insurance policies to the trust runs a considerable risk of either voiding the policies entirely or capping the policy payouts. The bankruptcy court has no authority to modify the terms of a contract that is not part of the property of the estate. (Obj. ¶¶ 34, 37-38). | This objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § II.D. |

3

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| **A. Blumel III, P.S., Tamaki Law Offices, P.S. Inc., Silver Golub & Teitell LLP (the "Objecting Claimants")** [D.I. 5682, 5726] | There is no sound business judgment nor fairness in a RSA or plan where there is risk that the amount of coverage from the insurance companies will be capped based on applicable precedent in *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (Cal. Ct. App. 2006). (Obj. ¶¶ 39-42). | The Debtors believe that the findings required under the RSA will not result in a *Fuller-Austin* outcome. *See* Debtors' Reply § II.F.4. |
| | The duty to force insurers to pay TDP valuations as if they were judgments without the ability to challenge any particular TDP award on its facts presents a risk to Abuse Claimants because it is unclear whether adjudication of the procedures used to arrive at a claim valuation are fair and reasonable amounts. This attempt to create a shortcut to insurance liability poses a risk that the RSA collapses. (Obj. ¶¶ 43-46). | This objection is premature and must be brought within the Plan confirmation process. The TDP are in accordance with precedent chapter 11 mass torts cases. *See* Debtors' Reply § II.F.4. |
| | The lack of post-confirmation judicial oversight, combined with the ability to expand the channeling injunction without judicial intervention, renders the Plan illegal. (Obj. ¶¶ 46-48). | Post-effective date injunctions have been approved by courts in similar circumstances. The Debtors will prove at the Confirmation Hearing that the Amended Plan complies with all requirements pursuant to the Bankruptcy Code. *See* Debtors' Reply § II.E. |
| | The RSA requiring the Bankruptcy Court to delegate its statutory authority and judicial duties to the Settlement Trustee and a committee is an unlawful delegation that is neither "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. (Obj. ¶¶ 48-49). | The Settlement Trustee's discretion under the Amended Plan is in line with precedent trust agreements in other mass torts chapter 11 cases. *See* Debtors' Reply § II.F.5. Also, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § II.F.5. |
| | The BSA cannot take the position that releases and injunctions for non-debtors, including the Local Councils and chartered organizations, is necessary to its reorganization. (Obj. ¶ 58). | It would be premature at this stage to determine whether the Channeling Injunction and releases satisfy the *Continental Airlines* hallmarks. The Debtors will demonstrate at the Confirmation Hearing that the Protected Parties have made the required substantial contribution. *See* Debtors' Reply II.A. |
| | The BSA proposes to assign certain insurance policies to a trust without any analysis of the coverage provided by those policies, any analysis of how the assignment might impact the available coverage, or any disclosure regarding how the proceeds of those policies might be utilized, particularly the separate insurance policies of non-debtors. (Obj. ¶ 70). | The Motion does not seek approval of any insurance assignment provisions of the Plan. As such, this issue is not ripe for judicial consideration and should be addressed at the Confirmation Hearing. *See* Debtors' Reply § II.C. |
| | Lack of a future claims fund renders the Plan patently unconfirmable. (Obj. ¶¶ 78-79). | The Debtors will prove at the Confirmation Hearing that the Amended Plan complies with all requirements pursuant to the Bankruptcy Code. Direct Abuse Claims include |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | | Future Abuse Claims and their treatment under the Amended Plan is the same. Moreover, the Settlement Trust Agreement provides for the continuation of the Future Claimants' Representative to represent the interests of holders of Future Abuse Claims. *See* Debtors' Reply § II.F.6. |
| | The presumptive reliance on equitable mootness protecting the settlement is foolhardy. The BSA makes no contingency for the Plan to either be voted down or rejected at confirmation. Even if confirmation occurred, appeals would pose a risk to unwind the Plan. (Obj. ¶¶ 92-95). | This argument is premised on the presumption that this Court would confirm an unconfirmable plan of reorganization. As the Objecting Claimants admit, the Amended Plan has not been confirmed or consummated; therefore, equitable mootness is wholly irrelevant to the Court's analysis. *See* Debtors' Reply § II.H. |
| **The AIG Companies, Travelers Casualty and Surety Company, Inc., The Continental Insurance Company and Columbia Casualty Company, American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company, Arrowood Indemnity Company, Clarendon America Insurance Company, Allianz Global Risks US Insurance Company,** | The "entire fairness" standard, rather than business judgment standard, should apply to the Debtors' decision to enter into the RSA. (Obj. ¶¶ 23-27). | The Insurers lack standing to make this objection. Moreover, the Insurers' arguments fail as a matter of fact and law. The entire fairness standard potentially applies only to conflicted transactions between a company and an insider. The business judgment standard applies. *See* Debtors' Reply § I.D.2. |
| | The RSA provides no cognizable benefits to the debtors. (Obj. ¶¶ 31-33). | The Debtors exercised reasonable business judgment in entering into the RSA and approving its terms, including weighing the benefits and risks associated with the RSA. *See* Debtors' Reply § I.A.2. |
| | The RSA prejudices Chartered Organizations, which impairs the BSA's ability to survive as a going concern. (Obj. ¶ 35). | The Debtors will prove at the Confirmation Hearing that the Amended Plan documents comply with all requirements pursuant to the Bankruptcy Code. *See* Debtors' Reply § II.<br><br>The RSA is a building block toward resolution with other parties in interest, including, Chartered Organizations. Additional mediation dates have already been set aside to mediate Chartered Organizations and other issues. The fact that the Debtors have not yet reached an agreement with |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| **National Surety Corporation and Interstate Fire & Casualty Company, Argonaut Insurance Company, Liberty Mutual Insurance Company, Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company, General Star Indemnity Company, Great American Assurance Company, and Munich Reinsurance America, Inc. ("Certain Insurers")** [D.I. 5684] | | the Chartered Organizations is not a basis for extinguishing the RSA. See Debtors' Reply § I.B.1. |
| | Debtors incorrectly argue that payment of the Coalition's fees and expenses is subject only to the business judgment standard because the request is being made by the Debtors, and not by the Coalition itself – this ignores 503(b)(3)(D). (Obj. ¶¶ 30-47). | The Court may properly approve the payment of the Coalition Professionals' fees and expenses pursuant to section 363(b) of the Bankruptcy Code in connection with the approval of the RSA. The Debtors' request to pay the reasonable, documented, and contractual professional fees and expenses of the Coalition Professionals for making a substantial contribution to the Chapter 11 Cases is also consistent with section 503(b)(3)(D) of the Bankruptcy Code, to the extent the Court determines that such standard applies to the relief requested. See Debtors' Reply § III. |
| | The Coalition has not demonstrated that it represents any creditors at all – without that demonstration, it is premature to begin any analysis into whether the Coalition has made a substantial contribution. Brown Rudnick's engagement letter shows that the Coalition represents the interests of State Court Counsel. Abuse claimants may be unaware of the Coalition's existence or Brown Rudnick's engagement. (Obj. ¶¶ 50-56). | The Coalition is empowered to negotiate on behalf of counsel representing approximately 60,000 abuse survivors whose support the Debtors will need for any viable plan of reorganization that implements a global resolution of Scouting-related Abuse Claims. See Debtors' Reply § III.C. |
| | Plan attempts to override anti-assignment clauses in non-debtor insurance contracts are not insurance neutral and the bankruptcy court has no authority under any circumstance to override such clauses. (Obj. ¶¶ 59-61). | This objection is premature and must be brought within the Plan confirmation process. See Debtors' Reply § II.D. |
| | The Plan must be amended to clarify that no non-debtor insurance policy and no non-debtor rights under any insurance policy (including any policies naming both the Debtors and any Local Councils as insureds) can be assigned absent insurer consent. (Obj. ¶ 73). | This objection is premature and must be brought within the Plan confirmation process. See Debtors' Reply § II.D. |
| | Because the RSA cedes complete control of the case and the TDP to the Abuse Claimant Representatives, the RSA parties have not acted in good faith. (Obj. ¶ 76). | Under the RSA the Debtors still maintain control over all aspects of the plan process, subject in certain specified instances to the consent of the other RSA Parties. This objection is also premature and must be brought within the Plan confirmation process. See Debtors' Reply § II.F.1. |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| **United States Trustee** [D.I. 5685] | The RSA Motion and supporting declarations do not contain evidence the Coalition satisfied the substantial contribution standard of Section 503(b)(3) and (4). The RSA Motion lacks transparency with respect to the treatment and allocation of the $950,000 future monthly payments or the Effective Date lump sum of $10.5 million. (Obj. ¶ 11). | The record amply supports the findings requested by the Debtors in the Revised Proposed Order. See Debtors' Reply Ex. A. |
| | The RSA Motion does not explain how the $10.5 million payment was calculated, there is no time records attached, expense detail or other information on the actual fees and expenses of the Coalition and their relationship to the $10.5 million. The Coalition is not required to submit any documentation to receive the $950,000. The Coalition is not required to demonstrate they are entitled to the $950,000 under the Section 503(b)(3) and (4) standard; and a party-in-interest can only object to the RSA Motion, given that there is no right to object to the Coalition's payments themselves. (Obj. ¶ 11). | The Debtors have added a number of additional protections to the Revised Proposed Order to alleviate any concerns over scope and oversight of the fees and expenses proposed to be paid under the RSA. See Debtors' Reply § III.B; see also Revised Proposed Order ¶ 5. |
| | The record lacks evidence to satisfy the substantial contribution standard and there is no evidence that would satisfy the disclosure and transparency requirements of a professional fee application. (Obj. ¶ 22). | The Debtors have added a number of additional protections to the Revised Proposed Order to alleviate any concerns over scope and oversight of the fees and expenses proposed to be paid under the RSA. See Debtors' Reply § III.B; see also Revised Proposed Order ¶ 5. Moreover, the Court may properly approve the payment of the Coalition Professionals' fees and expenses pursuant to section 363(b) of the Bankruptcy Code in connection with the approval of the RSA. See Debtors' Reply § III.A. |
| | With respect to the $950,000 per month in anticipated future fees, there is no authority in either section 503(b) or even section 363 to pay future fees. (Obj. ¶¶ 31- 32). | The Debtors assert that there is authority to pay the fees under section 363(b) in connection with approval of the RSA, and that section 503(b) is not the exclusive avenue for payment of such fees. See Debtors' Reply § III.A. The Debtors have also established that the Coalition will provide significant benefits to the Debtors' estates. See Debtors' Reply § III.C. |
| **Old Republic Insurance Company** [D.I. 5687] | Old Republic Insurance Company ("Old Republic") joins Certain Insurers' objection [D.I. 5684]. | See reply to the Certain Insurers' objection herein. |
| | Old Republic objects that the RSA requires the Debtors to support a plan which would modify or eliminate the bargained-for agreement between Old Republic and the Debtors in policies issued by Old Republic to the Debtors and a program agreement entered into by Old Republic | Old Republic's concerns about the RSA are without merit. While Old Republic has the "final authority" on claims management, it could only exercise that final authority under the Program Agreement once it fulfilled its obligations under the policies to receive the Named |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | and Boy Scouts of America relating to the policies and is therefore contrary to one of the Bankruptcy Code's primary aims—preserving contractual obligations. (Obj. ¶¶ 4-14). | Insured's consent to settle. Also, the implied covenant of good faith and fair dealing (a) limits the scope of Old Republic's settlement rights under the Program Agreement and the policies, and (b) ensures that the Settlement Trustee will consent to reasonable settlements of Non-Abuse Litigation Claims. *See* Debtors' Reply § V.B. |
| | The RSA and Fourth Amended Plan improperly grant the Settlement Trust control over settlement of Non-Abuse Litigation Claims, which violates the plain language of policies issued by Old Republic to the Debtors and a program agreement entered into between Old Republic and Boy Scouts of America relating to the policies and prejudices the rights of the Non-Abuse Litigation Claimants. (Obj. ¶¶ 6-7). | This is an issue to be properly addressed at the Confirmation Hearing, as the Motion does not request approval of the Trust Distribution Procedures. *See* Debtors' Reply § II.F. |
| | There is no reason to believe the amount of coverage available under the "Specified Insurance Policy" is more than adequate to satisfy both meritorious Abuse Claims and meet all of the conditions required for coverage and covered Non-Abuse Litigation Claims. Absent a settlement of a Specified Policy that would be implicated by the proposed settlement of a Non-Abuse Litigation Claim, the Settlement Trust should not have any role in resolving or settling Non-Abuse Litigation Claims. (Obj. ¶ 13). | This objection is premature and must be brought within the Plan confirmation process. The role of the Settlement Trust will be properly addressed at the Confirmation Hearing. *See* Debtors' Reply § II.F. |
| **Archbishop of Agaña, a Corporation Sole** [D.I. 5690] | Archbishop of Agaña, a Corporation Sole, joins the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee [D.I. 5676]. | *See* reply to the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee herein. |
| **Diocese of Buffalo, N.Y.** [D.I. 5692] | Diocese of Buffalo, N.Y. joins the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee [D.I. 5676]. | *See* reply to the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee herein. |
| **Roman Catholic Diocese of Ogdensburg, New York** [D.I. 5693] | Roman Catholic Diocese of Ogdensburg, New York joins the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee [D.I. 5676]. | *See* reply to the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee herein. |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| **Diocese of Rochester**<br><br>[D.I. 5695] | Diocese of Rochester joins the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee [D.I. 5676]. | *See* reply to the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee herein. |
| **Roman Catholic Diocese of Syracuse, New York**<br><br>[D.I. 5699] | Roman Catholic Diocese of Syracuse, New York joins the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee [D.I. 5676]. | *See* reply to the joint objection of the Roman Catholic Ad Hoc Committee and the United Methodist Ad Hoc Committee herein. |
| **Arch Insurance Company**<br><br>[D.I. 5702] | Arch Insurance Company joins Certain Insurers' objection [D.I. 5684]. | *See* reply to the Certain Insurers' objection herein. |
| **Century Indemnity Company ("Century"), as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America**<br><br>[D.I. 5707] | The RSA is subject to heightened scrutiny. Heightened scrutiny or entire fairness applies to a support agreement that was negotiated by and will benefit insiders (citing *Innkeepers USA Trust*, among others) – the insider control party participated in its negotiation and would receive a material benefit. (Obj. at 9-10). The burden is on the debtor to demonstrate entire fairness. (Obj. at 11-12). | The Insurers lack standing to make this objection. Moreover, the Insurers' arguments fail as a matter of fact and law. The entire fairness standard potentially applies only to conflicted transactions between a company and an insider. The business judgment standard applies. *See* Debtors' Reply § I.D. |
| | The controlling parties abdicated their responsibilities to the estates, insurers, and Chartered Organizations in exchange for the release of liability against themselves and the Local Councils they represent. The Debtors contend they entered into the RSA with the authority of the NEC, a 12 person subset of the full board. All 12 of the individuals on the NEC are closely affiliated with the Local Councils. The Local Councils control the Debtors through their super-majority representation on the National Council. The National Council appoints the members of the NEB, which governs the Debtors – and the NEC is made up of a subset of the NEB. (Obj. at 12-13). | The Insurers lack standing to make this objection. Moreover, the Insurers' arguments fail as a matter of fact and law. The entire fairness standard potentially applies only to conflicted transactions between a company and an insider. The business judgment standard applies. *See* Debtors' Reply § I.D. |
| | The RSA fails under any legal standard. The RSA's "benefits" to the Debtors are illusory. No one is obligated to vote in favor of the Amended Plan. The primary benefit to the RSA touted by the Debtors is that it procures the support of Abuse Claimants, thus paving the way for confirmation. This statement is patently false. Even if the Amended Plan were confirmable (and it is not), the RSA provides no benefit to the estates. (Obj. at 16-17). | The RSA contains not only the signatures of the State Court Counsel who are party to the RSA, but each such State Court Counsel has expressly represented and warranted to the BSA that it represents the number of holders of timely filed Direct Abuse Claims listed on Schedule 1 to the RSA. This totals approximately 60,000 holders of Direct Abuse Claims. Pursuant to the RSA, each State Court Counsel has committed to "use reasonable |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | | efforts to advise and recommend to their respective clients (who hold Direct Abuse Claims) to vote to accept the Amended Plan so long as the Amended Plan and the Plan Documents have not been modified to become inconsistent with the Amended Plan and this Agreement." Additionally, the State Court Counsel are required to timely submit master ballots or to use reasonable efforts to cause their clients to timely submit ballots with respect to the Amended Plan. These representations and commitments provide the Debtors with assurances that the State Court Counsel who are party to the RSA represent a supermajority of Abuse Survivors and that such Abuse Survivors will be encouraged to vote in favor of the Amended Plan. *See* Debtors' Reply § I.B.2. |
| | The TDP attached to the Amended Plan give a selected group of plaintiffs' lawyers control over the all of the key elements of the case. Those provisions will ultimately doom confirmation of the Amended Plan. (Obj. at 18). | The terms of the RSA and all related documents, including TDP, were heavily negotiated at arm's length and in good faith. Under the RSA the Debtors still maintain control over all aspects of the plan process, subject in certain specified instances to the consent of the other RSA Parties. Moreover, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § II.F. |
| | The RSA cannot be approved because it is an illegal agreement. Paying the Coalition's fees in exchange for advising and recommending to their respective clients (who hold Direct Abuse Claims) to vote to accept the Amended Plan renders the RSA unlawful because it induces Coalition counsel to violate their ethical duties. By taking money in return for promising to advise their claimant-clients' to vote for the plan, Coalition counsel breached Model Rule 1.7(a)(2). The RSA also violates Model Rules 5.6, which prohibits settlement agreements that restrict what course of conduct a lawyer may recommend. (Obj. at 19-20). | The Coalition have addressed this objection in a separate filing [D.I. 5745]. |
| | The RSA cannot be approved because it is premised on an unconfirmable Plan. While the Third Circuit in limited circumstances permits a for-profit debtor to override anti-assignment clauses in debtor insurance contracts, *see In re Fed.-Mogul Global Inc.*, 684 F.3d 355, 382 (3d Cir. 2012), Bankruptcy Code section 1129(a)(16) expressly requires non-profit debtors to comply with applicable non-bankruptcy law when transferring any property by keeping in place the state law restrictions on such nonprofit entities. (Obj. at 24). | The Debtors will prove at the Confirmation Hearing that the Amended Plan complies with all requirements pursuant to the Bankruptcy Code. *See* Debtors' Reply § II.D. |

10

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | These following provisions, and others, run afoul of the Bankruptcy Code and binding Third Circuit law: (1) all Abuse Claims will be liquidated by a Settlement Trustee—Eric D. Green—handpicked by the claimants acting in a quasi-judicial role; (2) the Settlement Trustee will have the unilateral right to allow all Abuse Claims without any judicial oversight; (3) the Confirmation Order must contain "a required finding," that the Allowed Amounts of Abuse Claims, as determined by the Settlement Trustee in his sole discretion are "fair and reasonable"; (4) the Confirmation Order must contain another required finding that TDP are binding on all parties, including insurers; (5) the Settlement Trustee will have full discretion to waive defenses on the Debtors' behalf; (6) the RSA is silent as to any Insurance Company's right to participate in settlements with Abuse Claimants, as well as any rights Insurance Companies may have with respect to Abuse Claims for which the Settlement Trustee seeks reimbursement; and (7) claimants can elect to be paid $3,500 on an expedited basis, and no one is even permitted to evaluate whether such a claim is valid or not. (Obj. at 24-25). | The Debtors will prove at the Confirmation Hearing that the TDP and Amended Plan comply with all requirements pursuant to the Bankruptcy Code. *See* Debtors' Reply §§ II, II.F.5, II.B, II.F.7. |
| | The Amended Plan is not feasible, because the protections afforded by the Amended Plan are themselves illusory and the Debtors have not obtained a commitment from the Local Council to make the $500 million contribution. (Obj. at 26-27). | As reported by Mr. Mason at the omnibus hearing held on July 21, 2021, the AHCLC "expects that Local Councils will be able to achieve the $500 million." July 21, 2021 Hr'g Tr. 8:14–9:15. Regardless, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § II. |
| | The Debtors have not established that the RSA was negotiated in good faith. The process by which the Debtors negotiated and considered the RSA was flawed. The Debtors have refused to produce a single substantive board minute or resolution reflecting any of the Debtors' deliberations about the RSA and have likewise instructed their witnesses not to testify the deliberations of the board. As for the negotiations themselves, the Debtors shielded them entirety from discovery, relying on a claim of mediation privilege that cannot withstand scrutiny. (Obj. at 30-31). | The Debtors' entry into the RSA is a sound exercise of the Debtors' reasonable business judgment, which, in the Third Circuit, gives rise to the presumption that the Debtors' decision was made on an informed basis, in good faith, and in the honest belief that the action was in the Debtors' best interest. Even absent this presumption, as further described herein, the RSA is a heavily negotiated resolution supporting by each of the Debtors' major creditor constituencies and is the product of several months of Court-sanctioned mediation sessions. Nor are the Debtors acting in bad faith by invoking certain privileges, including attorney-client and mediation privilege. *See* Debtors' Reply § I.C. |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | The Debtors forfeited to the TCC, Coalition, and the Future Claimants' Representative the authority to negotiate any such settlements. As a result, the very individuals who would be initiating the "deluge of lawsuits" against Chartered Organizations have a veto power over settlements with them. The "fiduciary out" does not help the Debtors either, because the Debtors expressly acknowledge that giving the claimants veto power over all settlements is "consistent with their fiduciary duties." (Obj. at 33). | The RSA does not restrict in any way the Debtors' and other RSA Parties' ability to negotiate with the insurers and Chartered Organizations. See Debtors' Reply § I.B.3. |
| | The RSA requires findings in the Confirmation Order that contravene well-settled law. For example, it is a condition to the RSA that the Confirmation Order authorize the "Insurance Assignment," defined to include not just the assignment of the Debtors' insurance policies (which likely runs afoul of Bankruptcy Code section 1129(a)(16)), but also the insurance policies belonging to the non-debtor Local Councils and that runs afoul of binding Third Circuit law. (Obj. at 35). | This objection is premature and must be brought within the Plan confirmation process. See Debtors' Reply § II.D. |
| Century [D.I. 5709] | The payment to the Coalition's lawyers is subject to the substantial contribution of section 503(b) and not section 363. (Obj. ¶¶ 10-11). | The Debtors assert that there is authority to pay the fees under section 363(b) in connection with approval of the RSA, and that section 503(b) is not the exclusive avenue for payment of such fees. See Debtors' Reply § III.A. The Debtors have also established that the Coalition will provide significant benefits to the Debtors' estates. See Debtors' Reply § III.C. |
| | The Bankruptcy Code's substantial contribution provisions are narrowly construed and any uncertainty as to the benefit must be decided against the applicant. The Debtors offer no admissible evidence to meet their heavy burden. Brown Rudnick and the Coalition did not produce any document concerning the request for fees to be paid. The Debtors self-serving Whittman declaration cannot satisfy the burden to prove substantial contribution. None of the Debtors witnesses were able to explain the decision to pay the Coalition's fees and the basis for such an award. (Obj. ¶¶ 19-21). | The record amply supports the findings requested by the Debtors in the Revised Proposed Order. See Debtors' Reply §§ III.B–C, Ex. A; Supp. Whittman Decl. |
| | The Coalition could not ever meet the standard under either section 363(b) or 503(b). The Coalition was formed for the express purpose of advancing the specific interests of its plaintiff firms and not claimants as a whole. It is not appropriate for the estate to reimburse fees where the contribution made it to advance a parties' self-interest. Where the party seeking | The Coalition meets the standard under section 363(b), and alternatively also meets the requirements of the substantial contribution standard under section 503(b). See Debtors' Reply §§ III.C–D. |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | reimbursement does not contribute beyond their work on behalf of their clients, the creditor does not get a substantial contribution award. (Obj. ¶¶ 26, 29-30). | |
| | Mere participation in settlement does not constitute a substantial contribution. There is no showing that the Coalition's efforts provide a pathway to confirmation that will be successful. The Coalition's efforts do not translate to the abuse survivors' support for the plan, given that none of the claimants are bound. (Obj. ¶¶ 34-37). | There is tangible support for the Amended Plan demonstrated by the signatories to the RSA, and the Coalition meets the substantial contribution standard. *See* Debtors' Reply §§ I.B.2, III.D. |
| | Any services that the Coalition claim to render that are not intended to advance their own interests are duplicative of the TCC. A bankruptcy court cannot approve fees if the services rendered were unnecessary or duplicative. The TCC already represents the claimants' interests as a whole and the Coalition is only representing a portion of the claimants. The estate should not pay the fees for two representatives serving the same purpose. (Obj. ¶¶ 38-39). | The Debtors have revised the Revised Proposed Order to safeguard against the unnecessary duplication of work. Further, the Coalition's involvement in these Chapter 11 Cases is not duplicative of the TCC's given the size of the Abuse Survivor constituency and the additional cost to the estate that would be incurred without the assistance of the Coalition and the Coalition Professionals. *See* Debtors' Reply §§ III.B–C. |
| | The RSA fee provision is improper as it poses an irreconcilable conflict for the State Court Counsel and Brown Rudnick. (Obj. ¶¶ 40-45). | The Coalition have addressed this objection in a separate filing [D.I. 5745]. |
| **Courtney Knight and Stephen Knight, jointly as the surviving parents of E.J.K, a minor child, and Stephen Knight as Personal Representative of the Estate of E.J.K.** | Allowing proceeds to be deposited into the Settlement Trust without earmarking the funds for payment of claims for occurrences during particular policy years is a particular concern, because there is less available coverage for claims asserted with regard to occurrences during policy years other than the 2018 policy year. Use of any 2018 insurance proceeds to cover a loss that occurred in a different year without first satisfying all Abuse and Non-Abuse Claims for 2018 should be precluded. (Obj. ¶¶ 22-24). | The Debtors believe that the Amended Plan does not treat Non-Abuse Litigation Claims unfairly. Each holder of a Non-Abuse Litigation Claim shall, subject to the terms and conditions of the Amended Plan, "retain the right to recover up to the amount of such holder's Allowed Non-Abuse Litigation Claim from (x) available insurance coverage or the proceeds of any Insurance Policy, including any Abuse Insurance Policy or Non-Abuse Insurance Policy, (y) applicable proceeds of any Insurance Settlement Agreements, and (z) co-liable non-debtors (if any) or their insurance coverage." Moreover, this objection |

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| (together the "**Knights**") [D.I. 5711] | | is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § V. |
| | The RSA unfairly limits the Knights' ability to recover their claims against the non-debtor Atlanta Council from the Atlanta Council's insurance coverage. The Knights' recovery of their non-released claims against the Atlanta Council should not be limited to the Atlanta Council's remaining non-insurance assets. The RSA should not impair the Knights' ability to recover any judgment against, or settlement with, the Atlanta Council from the Atlanta Council's available insurance coverage. Section 7 of Schedule 1 to the RSA Term Sheet should not preclude Non-Abuse Claimants who enter into a settlement agreement with Local Councils to recover from their insurance carriers. (Obj. ¶ 25). | The Debtors believe that the Amended Plan does not treat Non-Abuse Litigation Claims unfairly. Each holder of a Non-Abuse Litigation Claim shall, subject to the terms and conditions of the Amended Plan, "retain the right to recover up to the amount of such holder's Allowed Non-Abuse Litigation Claim from (x) available insurance coverage or the proceeds of any Insurance Policy, including any Abuse Insurance Policy or Non-Abuse Insurance Policy, (y) applicable proceeds of any Insurance Settlement Agreements, and (z) co-liable non-debtors (if any) or their insurance coverage." Moreover, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § V. |
| | The RSA affords the settlement trust and others too much discretion over the Knights' claims and denies the Knights a full and adequate opportunity to protect their interests. The RSA unfairly limits the rights of Non-Abuse Claimants. (Obj. ¶ 27). | The Debtors believe that the Settlement Trust's reasonable consent right over post-Effective Date settlements of Non-Abuse Litigation Claims is not unfair to holders of such Claims. Moreover, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § V. |
| | All settlements that meet the Rule 9019 standard should be approved, regardless of the position of the Settlement Trust. (Obj. ¶¶ 27-30). | The Debtors believe that the Settlement Trust's reasonable consent right over post-Effective Date settlements of Non-Abuse Litigation Claims is not unfair to holders of such Claims. Moreover, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § V. The Settlement Trust will pay amounts out of the proceeds of Specified Insurance Policies (potentially across multiple coverage years) only to the extent that the holder of a Non-Abuse Litigation Claim cannot, as a result of the Settlement Trust's release of the Specified Insurance Policies covering the relevant year of loss, recover the full amount of any judgment or settlement of such Claim |

14

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| | | reasonably consented to by the Settlement Trust from any Specified Insurance Policy under which such holder is seeking to recover. Moreover, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § V. |
| | Under the RSA Term Sheet, the Knights should be specifically afforded the right to object to settlements with insurance carriers. (Obj. ¶ 31). | The Settlement Trust will pay amounts out of the proceeds of Specified Insurance Policies (potentially across multiple coverage years) only to the extent that the holder of a Non-Abuse Litigation Claim cannot, as a result of the Settlement Trust's release of the Specified Insurance Policies covering the relevant year of loss, recover the full amount of any judgment or settlement of such Claim reasonably consented to by the Settlement Trust from any Specified Insurance Policy under which such holder is seeking to recover. Moreover, this objection is premature and must be brought within the Plan confirmation process. *See* Debtors' Reply § V. |
| | Section 7 of Schedule 1 to the RSA Term Sheet requires that notice of Non-Abuse Litigation Claims be provided to the Debtors, the Coalition, the TCC, and the Future Claimants' Representative but does not include specifics regarding the form and manner of notice required. Although the Debtors, Coalition, TCC, and Future Claimants' Representative all have more than adequate notice of the Knights' claims through their filed proof of claim and stay relief motion, the specific type of notice should be delineated. (Obj. ¶ 32). | Notice of Knight's claim has already been given to the Debtors, the Coalition, the TCC, and the Future Claimants' Representative. This objection is moot. |
| **Claimants 70996, 3585, 21108, 24629** [D.I. 5722] | Claimants 70996, 3585, 21108, and 24629 join the Objecting Claimants' objection [D.I. 5682]. | *See* reply to the Objecting Claimants' objection herein. |
| **The Mallard Law Firm Claimants** [D.I. 5725] | The Mallard Law Firm Claimants join the Objecting Claimants' objection [D.I. 5682]. | *See* reply to the Objecting Claimants' objection herein. |
| **Claimant 39334** | Claimant 39334 joins the Objecting Claimants' objection [D.I. 5682]. | *See* reply to the Objecting Claimants' objection herein. |

15

| RESPONDING PARTY | OBJECTION / RESPONSE[1] | DEBTORS' REPLY |
|---|---|---|
| [D.I. 5727] | | |
| **Bielli & Klauder, LLC and Winer, Burritt & Scott Claimants [D.I. 5743]** | The Bielli & Klauder, LLC and Winer, Burritt & Scott Claimants join the Objecting Claimants' objection [D.I. 5682]. | *See* reply to the Objecting Claimants' objection herein. |
| **Bielli & Klauder, LLC and Arias Sanguinetti Wang & Torrijos LLP Claimants [D.I. 5744]** | The Bielli & Klauder, LLC and Arias Sanguinetti Wang & Torrijos LLP Claimants join the Objecting Claimants' objection [D.I. 5682]. | *See* reply to the Objecting Claimants' objection herein. |