**Exhibit B**

**Whittman Deposition Excerpts**

HIGHLY CONFIDENTIAL

Page 44

1    make oral presentations regarding the BSA/Hartford
2    settlement to either the board of directors or the
3    Bankruptcy Task Force?
4         A.   I was involved in the discussions but the
5    primary presentations would have been made by
6    debtors, restructuring counsel or debtors' insurance
7    counsel.
8         Q.   And were you asked to make any recommendations
9    to the Bankruptcy Task Force or the board of directors
10   regarding the Hartford settlement?
11        A.   I don't recall if they specifically asked
12   for my recommendation.
13        Q.   Now, your -- your declaration in Paragraph 13,
14   it states that the Hartford/BSA settlement was met with
15   opposition from the plaintiffs' representatives.
16             Do you see that in your declaration?
17        A.   I do.
18        Q.   And did that surprise you?
19        A.   I was surprised by the intensity, the scope
20   and the duration of the opposition.  I was not
21   surprised that there was a level of initial
22   opposition.
23        Q.   In fact, you knew at the time that the parties
24   executed the BSA/Hartford settlement that the claimants
25   groups would be opposed to it; isn't that right?

1    incorporating the Hartford settlement?

2        A.   I mean that we received very clear, specific

3    statements by the plaintiffs' constituents that they

4    would vote against the plan if it included the

5    Hartford settlement and as a result, because it's not

6    within the Court's discretion, that that plan

7    requires overwhelming plaintiff support for the Court

8    to confirm that plan and as a result, it -- the plan

9    would not be confirmed and that makes pursuing the

10   confirmation futile.

11       Q.   And when you say "that plan" in your response,

12   you're really referring to the global resolution plan,

13   correct?

14       A.   The global resolution plan including the

15   Hartford settlement.

16       Q.   On the other hand, you're not saying that it

17   would be futile to -- to pursue a plan that included the

18   toggle plan as an alternative, are you?

19       A.   I'm not saying that the toggle plan would be

20   futile.  However, the toggle plan creates a

21   significant risk for BSA as a result of leaving the

22   local councils unprotected.  As we've said in the

23   disclosure statement around the toggle plan, it would

24   likely lead to bankruptcies of various local

25   councils.  It would lead to lower membership from

Page 62

1  BSA, so it is -- suboptimal is not a strong enough
2  word, but it is very unappealing for BSA to be in the
3  toggle plan world because of the risks to BSA, the
4  risks to BSA's mission in that world and we provide
5  significantly less value to all of our -- all of our
6  claimants compared to a global resolution plan.
7       Q.   Well, let's talk about that for a minute,
8  Mr. Whittman, because in Paragraph 16 of your
9  declaration, you state that the amended plan -- that's a
10 reference to the fourth amended plan, correct?
11      A.   That is correct.
12      Q.   And you say that the amended plan provides --
13 would -- would maximize recoveries for creditors.
14           Do you see that?
15      A.   Correct.
16      Q.   Now, when you say it would maximize recoveries
17 for creditors, that's a reference to the direct abuse
18 claimants?
19      A.   It's a reference to all creditors, but in --
20 in particular -- in particular, yes, it would -- it
21 certainly in large part relates to the direct abuse
22 claimants.
23      Q.   Now, how does the recovery of the direct abuse
24 claimants under the -- how does the recovery of direct
25 abuse claimants under the amended plan compare to the