# EXHIBIT 13



Clyde & Co LLP
Four Embarcadero Center
Suite 1350
San Francisco, CA 94111
USA
Telephone: +415 365 9800
Facsimile: +415 365 9801
www.clydeco.com

Bruce D. Celebrezze
bruce.celebrezze@clydeco.us

Konrad R. Krebs*
konrad.krebs@clydeco.us
*Licensed in PA and NJ

July 14, 2021

| | |
|---|---|
| Michael Andolina | Glenn Kurtz |
| Matthew E. Linder | Jessica Lauria |
| Laura Baccash | Andrew Hammond |
| Blair Warner | Samuel Hershey |
| White & Case LLP | White & Case LLP |
| 111 South Wacker Drive | 1221 Avenue of the Americas |
| Chicago, Illinois 60606 | New York, NY 10020 |

**Re:** **In re Boy Scouts of America**
**Case No. 20-10343 (LSS)**
**Debtors' Responses and Objections to Propounding Insurers' Requests for Production**

Dear Counsel:

We write on behalf of Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company ("Great American"), among the proponents of the "Propounding Insurers Requests for Production," to which BSA provided written responses on July 8, 2021, and to which BSA has provided a privilege log and four limited document productions on a rolling basis thereafter.  A review of these written responses reflects that BSA's responses and production are deficient.  Please let us know your availability for a meet and confer conference regarding the following issues as soon as possible.  We identify the issues with BSA's responses below.

**I.**    **BSA's Use of General and Boilerplate Objections**

In its responses, BSA raised eighteen general objections to the insurers' request for production applicable to all requests.  BSA has also raised boilerplate "overly broad and unduly burdensome" objections to each and every individual request for production, and "vague and ambiguous" objections to nearly every request.  No explanation is provided for any individual objection. BSA has also raised eleven general "vague and ambiguous," "overly broad," "unduly burdensome,"

5989624

Clyde & Co US LLP is a Delaware limited liability partnership with offices in
Atlanta, Chicago, Denver, Las Vegas, Los Angeles, Miami, New Jersey, New York, Orange County, Phoenix,
San Francisco and Washington D.C.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.



and proportionality objections to the instructions and definitions provisions of the discovery requests.

The Third Circuit and courts within the Circuit flatly reject the use of the general and boilerplate objections that BSA has employed here. The Delaware Bankruptcy Court has held that "the objecting party must object with specificity," and has rejected the use of general objections in responding to discovery. See In re Anderson News, LLC, 615 B.R. 45, 57 (Bankr. D. Del. 2020) (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)). Other courts in the Third Circuit have held outright that general and boilerplate objections to an entire set of discovery are improper. Ceuric v. Tier One, LLC, 325 F.R.D. 558, 561 (W.D. Pa. 2018); Am. Civil Liberties Union v. Gonzales, 237 F.R.D. 120, 131 (E.D. Pa. 2006) ("general objections to an entire set of interrogatories is improper"); Parisi v. State Farm Mut. Auto. Ins. Co., 2017 WL 4403326, at *1 (W.D. Pa. Oct. 2, 2017) ("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient").

Moreover, courts around the country have recognized that the 2015 amendments to the Federal Rules of Civil Procedure no longer permit general and boilerplate objections. See, e.g., Fischer v. Forrest, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017); Sagness v. Duplechin, 2017 WL 1183988, at *2 (D. Neb. Mar. 29, 2017); Liguria Foods, Inc. v. Griffith Labs., Inc., 2017 WL 976626 (N.D. Iowa Mar. 13, 2017); see also Heller v. City of Dallas, 303 F.R.D. 466, 482-85 (N.D. Tex. 2014) ("Counsel should cease and desist from raising these free-standing and purportedly universally applicable 'general objections' in responding to discovery requests."); Waldrop v. Discover Bank (In re Waldrop), 560 B.R. 806, 810 (Bankr. W.D. Okla. 2016). Multiple courts have held that the use of general objections is sanctionable conduct. Smash Technology, LLC v. Smash Solutions, LLC, 335 F.R.D. 438, 450 (D. Utah 2020); Infanzon v. Allstate Ins. Co., 335 F.R.D. 305, 311 (C.D. Cal. 2020); Orchestrate HR, Inc. v. Trombetta, 178 F.Supp.3d 476 (N.D. Tex. 2016). If there is any doubt about how the court would view these general objections, Delaware state courts also reject the use of general and boilerplate objections. In re Oxbow Carbon LLC Unitholder Litigation, 2017 WL 959396, at *2.

In addition to a total of 29 improper general objections, BSA's objections to the individual requests for production are boilerplate, and lack the requisite specificity for any court to conclude that they are anything more than boilerplate. Examples of the boilerplate nature of the objections are as follows: BSA has objected that use of the term "[a]ll documents" in a document request for "all documents provided to BSA's board Concerning the RSA . . ." is overly broad and unduly burdensome; has objected that the term "all minutes" is likewise overly broad and unduly burdensome, and has asserted that the request for documents "reviewed" or "relied upon" by BSA's board is somehow "vague or ambiguous." BSA has failed to identify with any specificity why any of these requests are overly broad or unduly burdensome for BSA to review or produce, identify any vagueness or ambiguity with any request, or otherwise specify any specific objectionable basis.

Given the boilerplate nature of each of the objections raised by BSA, they do not merit individual discussion. These general and boilerplate objections are improper under the federal rules. Please withdraw them, and provide complete responses to all nineteen requests, so that we need not seek the intervention of the court.

July 14, 2021
Page 3



## II. BSA's Privilege Log

BSA has produced a purported "categorical privilege log," which identifies only three categories of documents: (1) those protected by the mediation privilege; (2) those protected by the attorney-client privilege; and (3) documents which are attorney work product. This log is insufficient to meet the requirements of Federal Rule of Civil Procedure 26, which is made applicable to this contested bankruptcy matter by Fed. R. Bankr. P. 7026 and 9014(c).

Under Rule 26, "[w]hen a party withholds information . . . by claiming it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). In the context of the attorney-client privilege, courts in the Third Circuit have held that, to satisfy the requirements of discovery, a privilege log's "description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of the attorney-client privilege . . . have been established." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 475 (E.D. Pa. 2005) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000)). Other courts in the Circuit have held that a document-by-document privilege log must be provided unless the proponent of the privilege demonstrates that such a log would be unduly burdensome. *Tyco Healthcare Group, LP v. Mutual Pharmaceutical Co., Inc.*, 2012 WL 1585335, at *5 (D.N.J. May 4, 2012).

Here, BSA's privilege log is nothing more than a list of the three most frequently asserted privileges, as well as an identification of all parties who may be implicated in communications involving that privilege. There is no basis for any party to understand the nature of the documents or the basis for the assertion of the privilege. This fails to meet even the most basic requirements for privilege assertion under the federal rules. Please produce all withheld documents immediately, or immediately set forth a proper basis for withholding same.

## III. BSA's Document Production and Misuse of Mediation Privilege

In response to the insurers' request for production of documents, BSA has produced hundreds of pages of news report summaries provided to it by a vendor, several spreadsheets regarding the claims docket and local councils, and presentations made to the BSA board which are redacted to the point of containing no substantive information. We assume that BSA contends that all of the responsive withheld documents relevant to the negotiation and evaluation of the RSA are being shielded by some assertion of privilege (though we cannot be sure due to the inadequacy of the provided privilege log).

Fundamentally, we disagree with your assertion of mediation privilege to cover all documents regarding the negotiation of the RSA. The mediation privilege may only apply to communications "to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation[.]" *ACQIS, LLC v. EMC Corp.*, 2017 WL 2818984, at *2 (D. Mass. June 29, 2017); *see also Folb v. Motion Picture Industry Pension & Health Plans*, 16 F.Supp.2d 1164, 1180 (C.D. Cal. 1998). Furthermore, the mediation privilege does not protect from disclosure evidence "independently discoverable merely because it was presented in the course of the mediation." *Sheldone v. Pa. Turnpike Com'n*, 104 F.Supp.2d 511, 517 (W.D. Pa. 2000).

BSA Counsel
July 14, 2021
Page 4



Here, BSA's interpretation of the applicable privileges, particularly the mediation privilege, has sought to bring this entire case within the scope of some privilege.  This is inconsistent with any of the authority that BSA cites in support of its position or common sense, as it would allow any adversaries to shield their communication from light merely by stamping "mediation communication" on every document, as BSA appears to have done here.

We expect that BSA reevaluate and narrow its assertion of privilege to only those documents to which the privilege may properly be asserted in accordance with applicable law, produce responsive, non-privileged documents, and produce a privilege log adequate to identify all documents withheld, along with the basis such documents are being withheld.

### IV.     Conclusion

We hope we are able to resolve these issues without further court involvement.  We are cognizant of BSA's intent to pursue an expedited confirmation timeline, and have worked quickly to evaluate this highly deficient response.  However, BSA's stonewalling through its responses is inconsistent with this effort to pursue an expedited timeline, particularly when its refusal to produce documents does not square with the law.  Understanding BSA's position that discovery must move quickly, we are hopeful that BSA will work with us to amicably resolve these production issues.  Continued stonewalling by BSA on discovery issues requiring court intervention will only result in additional delay, which is not the intent of Great American.

We look forward to discussing these issues with you at your earliest convenience.

Sincerely,

*Bruce D. Celebrezze*
*Konrad R. Krebs*

Bruce D. Celebrezze
Konrad R. Krebs

cc:    David Christian, Esq.