# EXHIBIT 14

**WHITE & CASE**

July 15, 2021

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

**whitecase.com**

**VIA E-MAIL**

Bruce D. Celebrezze
Konrad R. Krebs
Clyde & Co. LLP
Four Embarcadero Center, Suite 1350
San Francisco, CA 94111
bruce.celebrezze@clydeco.us
konrad.krebs@clydeco.us

 RE: *In re Boy Scouts of America*, Case No. 20-10343 (LSS) (Bankr. D. Del. 2020)

Counsel:

I write in response to your letter of July 14, which was sent to the Debtors only hours before the start of depositions. Your contentions are incorrect, and plainly designed to support a future request for delay.

1. **The Debtors' Objections Are Reasonable And Proper**

Your assertion that "[t]he Third Circuit and courts within the Circuit flatly reject the use of the general and boilerplate objections" is incorrect. Letter at 2. The one case you cite is not the Third Circuit and does not support your assertion. Moreover, the Debtors do not rely on "merely" their general objections, but rather also identify specific objections to each of your individual requests. In any case, your objections are academic, as the Debtors have not withheld any documents based only on their general objections.

2. **The Insurers' Position On The Mediation Privilege, And Their Actions, Violate Local Rule 9019 And The Mediation Order**

Initially, the Insurers have known the Debtors' position regarding the mediation privilege since before the July 7 conference with the Court. *See* July 7, 2021 Hr'g Tr. at 30:6-8 (MR. ANKER: "[A]nd we've been told this . . . [the Debtors] take the position that everything is subject to the mediation privilege and, therefore, we will get virtually no documents."); *id*. at 52:3-5 (MR. SCHIAVONI: "[The Debtors] want . . . mediation privilege to basically protect everything about that exchange."). And the Debtors again made clear their position regarding the mediation privilege in a letter to the insurers on July 8, in which we also asked the insurers to identify their position with respect to the mediation privilege and to discuss the matter, so that any legitimate dispute about the parameters of the privilege could be addressed promptly and before the



Bruce Celebrezze and Konrad R. Krebs., p. 2
July 15, 2021

depositions proceeded. Of the ten insurers to which the Debtors sent the letter, eight of the insurers did not respond at all, Century refused three requests to identify its position, and you waited a full week to respond, after the depositions were committed and proceeding.

In any case, your position as to the mediation privilege is completely meritless and simply ignores the governing rules and order. You cite an unreported out-of-state case as somehow limiting the mediation privilege here "to communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation[.]" Letter at 3 (quoting *ACQIS, LLC v. EMC Corp.*, Civil Action No. 14-cv-13560, 2017 U.S. Dist. LEXIS 100856, at *4 (D. Mass. June 29, 2017)). But the mediation privilege here is governed by Local Rule 9019 and the Mediation Order, which did not apply and were not addressed in the *ACQIS* case. Indeed, there was *no* mediation rule, order or agreement whatsoever in that case—though the court adopted a mediation privilege anyway given the recognized importance of protecting mediations.

The governing rules here, Local Rule 9019 and the Mediation Order, do not contain the limitation that you cite. To the contrary, the rules here protect "evidence pertaining to *any aspect* of the mediation effort":

> [i]ncluding, but not limited to: (A) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (B) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (C) proposals made or views expressed by the mediator; (D) statements or admissions made by a party in the course of the mediation; and (E) documents prepared for the purpose of, in the course of, or pursuant to the mediation.

Del. Bankr. L. R. 9019-5(d)(i). Likewise, "the Third Circuit has adopted a broad interpretation of the mediation privilege." *Fed. Ins. Co. v. D'Aniello*, No. 2:05cv305, 2007 U.S. Dist. LEXIS 106834, at *4-5 (W.D. Pa. Jan. 10, 2007); *see also Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 434-35 (3d Cir. 2005) ("parties are prohibited from using *any information* obtained as a result of the mediation process as a basis for *any* motion or argument to *any* court") (emphasis added); *Sandoz, Inc. v. United Therapeutics Corp.*, Civil Action No. 19-cv-10170, 2021 U.S. Dist. LEXIS 92204, at *5 (D.N.J. May 14, 2021) ("[T]he mere fact that the mediator may not have been copied on emails between the parties . . . does not necessarily mean that those emails were not connected to or prepared in furtherance of the mediation process.").

We also note your citation to *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164 (C.D. Cal. 1998), which further undermines your position. In *Folb*, the court affirmed the denial of a motion to compel disclosure of mediation communications. *Id.* at 1180. Again, there were no rules or orders for the mediation. Nonetheless, the court found that the need for confidentiality was "imperative" and "served public ends by encouraging prompt, consensual resolution of disputes, minimizing the social and individual cost of litigation, and markedly reducing the size of state and federal court dockets . . . in a world of ever expanding court



Bruce Celebrezze and Konrad R. Krebs., p. 3
July 15, 2021

dockets and limited judicial resources." *Id*. at 1176-77. And even though there was no governing rule or order, unlike here, the *Folb* court adopted a broad privilege covering "information disclosed *in conjunction with mediation* proceedings with a neutral," including "communications to the mediator and communications between the parties during the mediation . . . [ ] and communications in preparation for and during the course of the mediation . . ." *Id*. at 1180 (emphasis added). It is also notable that the court in *Folb*—a case that you rely on—cited cases sanctioning attorneys for disclosing mediation information. *See id*. at 1174. Note that violations of the Mediation Order breach the Delaware Lawyers' Rules of Professional Conduct. *See* Del. Lawyers' R. Prof'l Conduct 3.4(c) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal[.]"). Note also that parties that violate the mediation privilege face penalties. *See, e.g.*, *Zuver v. Sprigg*, No. 16-2505 (DLF), 2018 U.S. Dist. LEXIS 107978, at *44 (D.D.C. June 13, 2018) ("[C]ourts routinely impose sanctions on attorneys who disclose confidential mediation communications."); *Abrams-Jackson v. Avossa*, 282 F. Supp. 3d 1268, 1274 (S.D. Fla. 2017) (granting motion to strike and imposing sanctions along with an award of attorney's fees due to improper disclosure of mediation communications in violation of local rules); *Williams v. Johanns*, 529 F. Supp. 2d 22, 23-24 (D.D.C. 2008) (holding attorney in civil contempt for violating magistrate judge's order of confidentiality in mediation); *Davis v. Kan. City Fire & Marine Ins. Co.*, 195 F.R.D. 33, 38 (N.D. Okla. 2000) (imposing sanctions where party filed a confidential settlement document, including publishing the court's order as a public notice that counsels' conduct was unacceptable and circulating the opinion to all judges of the court to put them on notice of counsel's conduct).

I want to be clear that the Debtors have nothing to hide about the mediation, but take seriously their obligations under Local Rule 9019 and the Mediation Order, especially because the mediation is ongoing and the Debtors want to achieve a fully consensual plan. The insurers agreed to the rules governing the mediation and cannot now disregard them. And we again invite you and the other insurers to discuss your positions regarding the scope of the privilege with us. It is conceivable that there is a more nuanced position than the one you have articulated (which, as addressed above, is contrary to governing law) that potentially allows for certain disclosures. The Debtors remain available to discuss the proper parameters of the privilege and any stipulations we can reach to minimize work at the hearings.

### 3. The Debtors' Privilege Log Is Appropriate

Your claim that BSA's categorical privilege log is insufficient under Rule 26 is incorrect. Letter at 3. As addressed, under Local Rule 9019, you are prohibited from "seek[ing] discovery from any participant in the mediation with respect to any information disclosed during mediation." Del. Bank. L. R. 9019-5(d)(i). Consequently, the Debtors have no obligation to provide any form of log for the documents that you demanded in violation of law. Hence, the Debtors' categorical log goes beyond their obligations. And your request for a different log further violates the rule.

Additionally, you are incorrect about the requirements for a privilege log, where one is appropriate. The advisory committee notes to Rule 26 expressly provide that "[t]he rule does not attempt to define for each case what information must be provided when a party asserts a claim

WHITE & CASE

Bruce Celebrezze and Konrad R. Krebs., p. 4
July 15, 2021

of privilege or work product protection." Fed. R. Civ. P. 26 advisory committee notes. Rather, the notes provide that while "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld," those details "may be unduly burdensome when voluminous documents are claimed to be privileged or protected[.]" *See id.* Consequently, as I assume you know, parties routinely use categorical privilege logs. Moreover, the purpose of a privilege log is largely to allow the requesting party to determine whether to challenge the assertions of the privilege, and here the insurers fully understand the Debtors' assertions of privilege and are free to challenge them on the present record, though there is no basis for doing so. Please explain why you believe it would be appropriate to log individual items that are plainly protected by privilege, including the reason why you seek additional information. We are available to meet and confer with you about any information you believe that you are entitled to receive or otherwise want to receive about the privilege.

The Debtors are willing to meet and confer with you on Friday or over the weekend, and reserve all rights.

Sincerely,

*/s/ Glenn M. Kurtz*
**Glenn M. Kurtz**

**T** +212-819-8252
**E** gkurtz@whitecase.com

Cc:   Michael C. Andolina (mandolina@whitecase.com)
      Andrew Hammond (ahammond@whitecase.com)
      Jessica Lauria (jessica.lauria@whitecase.com)
      Matthew Linder (mlinder@whitecase.com)
      Laura Baccash (laura.baccash@whitecase.com)
      Samuel P. Hershey (sam.hershey@whitecase.com)
      Blair Warner (blair.warner@whitecase.com)
      Derek Abbot (dabbot@morrisnichols.com)
      Ernest Martin (ernest.martin@haynesboone.com)
      Adrian Azer (adrian.azer@haynesboone.com)
      All other counsel listed on the Insurer Requests (by email)