**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>D.I. Ref.: 5771 |

### DEBTORS' OBJECTION TO HARTFORD'S MOTION TO STRIKE AND/OR IN LIMINE TO EXCLUDE THE TESTIMONY OF ROGER C. MOSBY

Boy Scouts of America (the "**BSA**") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this objection (the "**Objection**") to *Hartford's Motion to Strike and/or in Limine to Exclude the Testimony of Roger C. Mosby* [D.I. 5729] (the "**Motion**") filed by Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company, and Navigators Specialty Insurance Company (collectively, "**Hartford**"). In support of the Objection, the Debtors state as follows:

### OBJECTION

1.　　Hartford's Motion should be denied for at least three reasons:

2.　　***First***, because the hearing on the RSA Motion has been adjourned and the Debtors have produced, and continue to produce, additional documents and will re-produce

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

witnesses for supplemental depositions, the complaints in the Motion have been and will be resolved. The Motion should be fully moot before the hearing.

3. **Second**, the Motion should be denied as untimely. Hartford offers no excuse for its delay in raising a dispute that arises almost entirely from a deposition that finished nearly two weeks ago. The Motion mainly relates to discovery disputes that Hartford and the Debtors could have resolved weeks ago without involving the Court, had Hartford raised these issues to the Debtors before going straight to the Court on the eve of the hearing.

4. **Third**, Hartford's arguments for excluding Mr. Mosby's testimony each lack merit. Hartford argues that Mr. Mosby is not testifying about matters within his personal knowledge because he testified that he relied in part on his advisors in making decisions. Motion ¶¶ 5-6. Hartford's argument is frivolous. Mr. Mosby has personal knowledge of the matters about which he has given and will give testimony. Specifically, his testimony here includes, among other things, the Debtors' entry into the Hartford Settlement Agreement and the RSA, the Debtors' reasons for seeking the Court's guidance on the Hartford Settlement as part of the RSA, and the process by which the Debtors' board approved entry into the RSA. Mr. Mosby has personal knowledge of all these things. *See* Mosby Decl. ¶ 2 ("As President and Chief Executive Officer of the BSA, I have been deeply involved in the Debtors' restructuring initiatives and have been actively involved with the Debtors' reorganization efforts."); *id.* ¶ 5 ("The RSA is the result of arm's-length negotiations between the Debtors, the AHCLC and the Plaintiff Representatives . . . I, in conjunction with the National Executive Committee and Executive Board of the BSA . . . have determined that it outlines the terms of a plan of reorganization that best achieves the Debtors' objectives for these chapter 11 cases[.]"); *id.* ¶ 6 ("In my opinion, as well as the Board's, the path set forth in the RSA is the most realistic approach to achieve the

Debtors' objectives. Any other option would likely involve significant litigation and would not yield the support of holders of Direct Abuse Claims, whose acceptance is necessary to confirm a plan that includes third party releases."); *id.* ¶ 8 ("I have attended many of the formal mediation sessions both prior to and following the May 19 Hearing, either in-person or by video conference, including those held from (i) March 30–April 1, 2021 in Miami; (ii) May 4–6 and May 26–27, 2021 in New York; and (iii) June 2–3, 2021 in Chicago."); *see also* Mosby Dep. Tr. at 155:10-14 ("[W]e had the expectation that we would get all the parties to agree to a global settlement . . . this [BSA-only] plan would be a plan of last resort."). Consequently, Hartford's argument is factually wrong.[2]

5. Hartford also argues that Mr. Mosby's counsel "broadly assert[ed] privilege" during Mr. Mosby's deposition. Motion ¶ 5. But Hartford does not challenge any particular invocation of privilege, much less demonstrate that it is improper. The fact that Mr. Mosby was instructed not to testify about certain privileged information has no bearing on his right or ability to testify as to non-privileged matters within his knowledge.[3]

6. Hartford further argues that Mr. Mosby's testimony should be excluded because of a single inadvertently withheld document that the Debtors produced after Mr. Mosby's

---

[2] Hartford's cases are inapposite in addressing circumstances where the witness had no personal knowledge of the matters as to which he testified. *See Chase Manhattan Bank v. Iridium Afr. Corp.*, No. 00-564 JJF, 2003 U.S. Dist. LEXIS 23837, at *9 (D. Del. Nov. 25, 2003) (witness who testified about events that occurred prior to his involvement and that he learned about entirely from other people); *Baumgart v. Transoceanic Cable Ship Co.*, 2003 U.S. Dist. LEXIS 19921, at *6-7 (S.D.N.Y. Nov. 7, 2003) (finding witness's testimony "inadmissible as Rule 701 lay opinion" because it was "not based on his personal knowledge" but "on outside information, including specialized or technical knowledge of others"); *Alvarez v. Nicholson*, 2005 U.S. Dist. LEXIS 45744, at *22 (S.D.N.Y. Aug. 3, 2005) (excluding testimony for being "naked speculation" concerning another party's state of mind); *United States v. Garcia*, 291 F.3d 127, 141 (2d Cir. 2002) (excluding unfounded testimony by a police informant interpreting a secret code allegedly used by criminal defendants).

[3] It is ironic for Hartford to make this argument, given that Hartford repeatedly instructed its witness not to testify regarding matters disclosed to its investors in a press release.

3

deposition. An initial failure to produce a single document could never support a motion to strike a witness's material testimony. Supplemental productions are commonplace, particularly in expedited proceedings, as here. Indeed, Century's counsel recently admitted to the Court that "produc[ing] a stray email here or there . . . happens in every litigation." July 27, 2021 Hr'g Tr. at 19:6-7. Moreover, there is no conceivable prejudice because the witness will be re-produced for deposition. Consequently, Hartford has not been denied discovery.[4] Additionally, precluding testimony is a drastic sanction, reserved for extreme misconduct, not routine production issues. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civil Action No. 09-290, 2012 U.S. Dist. LEXIS 193823, at *10 (W.D. Pa. Dec. 18, 2012) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)) ("the exclusion of evidence at trial is an extreme sanction that is normally reserved for a showing of willful deception or flagrant disregard of a court order by the proponent of evidence[.]") (quotation marks omitted); *United States v. Kikumura*, 698 F. Supp. 546, 554 (D.N.J. 1988) ("The striking of testimony, however, is a drastic measure which should be imposed only in extreme circumstances."); *see also Prof'l Cleaning & Innovation Building Servs., Inc., v. Kennedy Funding, Inc.*, 245 Fed. App'x 161, 165 (3d Cir. 2007) ("one of the basic objectives of the federal rules . . . [is] the determination of cases on their merits").

7.   Hartford also claims that Mr. Mosby should not be allowed to offer testimony on "futility" because it is a legal issue. Hartford does not explain what "futility" means. To the extent Hartford is referring to Mr. Mosby's testimony that the Debtors' plan could not be confirmed without sufficient support from the claimants, Mr. Mosby is not being offered as an

---

[4] Hartford claims that the Debtors have not produced the emails that Mr. Mosby was purportedly "besieged by." Motion ¶ 7. But that characterization came from a third party, not Mr. Mosby. *See* Fay Decl., Ex. B. Moreover, the Debtors produced Mr. Mosby's emails, and Hartford asked questions about them. *See, e.g.*, Mosby Dep. Tr. at 159:4-160:3.

expert to inform the Court about confirmation requirements. Rather, he is merely offering his understanding of the fact that the Debtors' plan could not be confirmed absent support. Mr. Mosby's understanding is relevant to why he supports the Debtors' entry into the RSA.

8. **_Fourth_**, Hartford's objections to the Debtors' redactions are improper (Motion ¶ 8) because Hartford does not challenge any specific redactions or identify any specific issues, much less demonstrate anything improper.[5] Moreover, Hartford did not join in any meet and confer and did not join with the other insurers in seeking to compel production of the redacted documents.

## **CONCLUSION**

9. WHEREFORE, the Debtors request that the Court deny the Motion and grant such other and further relief as the Court deems just and proper.

*[Remainder of page intentionally left blank]*

---

[5] Hartford's argument that the Debtors were required to bring an adversary proceeding for the Court to make a determination regarding the Hartford Settlement Agreement is irrelevant to the relief sought in the Motion, and lacks merit for the reasons identified in the Debtors' reply brief in support of the RSA Motion. *See* D.I. 5759 ¶¶ 147-153.

Dated: July 29, 2021
         Wilmington, Delaware

| | |
|---|---|
| WHITE & CASE LLP<br>Glenn Kurtz (admitted *pro hac vice*)<br>Jessica C. Lauria (admitted *pro hac vice*)<br>Andrew Hammond (admitted *pro hac vice*)<br>Samuel P. Hershey (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 819-8200<br>Email: gkurtz@whitecase.com<br>    jessica.lauria@whitecase.com<br>    ahammond@whitecase.com<br>    sam.hershey@whitecase.com | */s/ Derek C. Abbott*<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>Michelle M. Fu (No. 6661)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone: (302) 351-9314<br>Email: dabbott@morrisnichols.com<br>    aremming@morrisnichols.com<br>    ptopper@morrisnichols.com<br>    mfu@morrisnichols.com |

– and –

WHITE & CASE LLP

Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
    mlinder@whitecase.com
    laura.baccash@whitecase.com
    blair.warner@whitecase.com