IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br>　　　　　Debtors. | Chapter 11<br>Case No. 20-10343 (LSS)<br>(Jointly Administered)<br><br>Ref. Docket Nos. 5485, 5527<br><br>**Objection Deadline: August 2, 2021**<br>**Hearing Date: August 12, 2021 at 9:00 AM** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE ARCHBISHOP OF AGAÑA (BANKR. D. GUAM 19-00010) TO AMENDED DISCLOSURE STATEMENT FOR THE FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE, LLC**

The Official Committee of Unsecured Creditors in the chapter 11 bankruptcy case of the Archbishop of Agaña (Bankr. D. Guam 19-00010) (the "Guam Committee") submits this Objection to the Amended Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, Docket 5485, (the "Amended Disclosure Statement") and respectfully states as follows:

1.　　The Guam Committee's constituency is comprised primarily of Survivors of clergy sexual abuse. Those Survivors are creditors of the bankruptcy

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

estate of the Archbishop of Agaña, a corporation sole (the "Archdiocese").[2] The assets of the Archdiocese should be preserved for the payment of its creditors. The BSA plan, as currently proposed, purports to dispense of property and rights that repose in the Archdiocese's estate. The disclosure statement does not make clear that such property and rights are subject to the automatic bankruptcy stay in place in the Archdiocese's case, and neither the BSA plan nor the related disclosure statement make clear how the BSA or its insurers intend to resolve that prohibitive legal issue. The BSA plan is thus facially defective and the related disclosure statement should not be approved as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

## BACKGROUND

2.   On January 16, 2019, the Archbishop of Agaña, a corporation sole, filed a petition for relief under chapter 11 of title 11 of the United States Code.

3.   The Archdiocese is an insured party under multiple insurance contracts issued to the Boy Scouts of America (the "BSA Insurance Policies"). The Archdiocese's contract rights in BSA Insurance Policies are likely worth millions of dollars to the Archdiocese's estate and its creditors.

4.   The following is a summary of the policies that likely comprise the

---

[2] Case No. 19-00010, Bankr. D. Guam.

BSA Insurance Policies:

| Policy Dates | Insurer | Policy Number | Limit Description |
|---|---|---|---|
| 1/1/1962-1/1/1963 | INA | CGL191986 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1963-1/1/1964 | INA | CGL204680 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1964-1/1/1965 | INA | CGL212922 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1965-1/1/1966 | INA | CGL 232470 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1966-1/1/1967 | INA | CGL 248896 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1967-1/1/1968 | INA | CLP 11200 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1968-1/1/1969 | INA | GLP 151211 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1969-1/1/1970 | INA | GLP 160981 | $500,000 each person; $1,000,000 each occurrence |
| 3/2/1969-1/1/1970 | INA | XBC 43198 | $2,000,000 per occurrence |
| 1/1/1970-1/1/1971 | INA | BLB 51323 | $500,000 each person; $1,000,000 each occurrence |
| 1/1/1970-1/1/1971 | INA | XBC 77302 | $2,000,000 per occurrence |
| 1/1/1971-1/1/1972 | INA | XBC 85370 | $2,000,000 per occurrence |

| Policy Dates | Insurer | Policy Number | Limit Description |
|---|---|---|---|
| **9/21/1971- /1/1972** | Hartford | 10CA43315 | $500,000 each person; $1,000,000 each occurrence |
| **1/1/1972- /1/1974** | Hartford | 10CA43303 | $500,000 each occurrence |
| **1/1/1972- /1/1974** | Hartford | 10HUA43302 | - |
| **-** | Hartford | 10CA43329 | $500,000 each occurrence; $500,000 agg. |
| **1/1/1974-1/1/1975** | Hartford | 10HUA43335 | $2,000,000 per occurrence |
| **1/1/1975-1/1/1976** | Hartford | 10CA43342E | $500,000 each occurrence |
| **1/1/1976-1/1/1977** | Hartford | 10CA43349E | $500,000 each occurrence |
| **1/1/1976-1/1/1977** | National Union | BE1151559 & BE1151554 | $10,000,000 each occurrence |
| **9/17/1976-9/17/1977** | Lloyds' & Companies | 76-10-08-02 | $5,000,000 each occurrence |
| **1/1/1977-1/1/1978** | Hartford | 10CA43359 E | $1,000,000 each occurrence |
| **1/1/1977-1/1/1978** | National Union | BE121P255 & BE1151590 * | $10,000,000 each occurrence |
| **1/1/1977-1/1/1978** | Am RE | M-1027493 | $500,000 each occurrence |
| **1/1/1978-1/1/1979** | INA | GLP706452 | $500,000 per occurrence |
| **1/1/1978-1/1/1979** | National Union | CE1157777 | $500,000 per occurrence |
| **1/1/1978-1/1/1979** | First State | 908854 | $10,000,000 per occurrence |
| **1/1/1979-1/1/1980** | INA | GLP706452 | $500,000 per occurrence |
| **1/1/1979-1/1/1980** | INA | XBC 151748 | $5,000,000 per occurrence |
| **1/1/1979-1/1/1980** | First State | 927616 | $5,000,000 per occurrence |

4

| Policy Dates | Insurer | Policy Number | Limit Description |
|---|---|---|---|
| 1/1/1980-1/1/1981 | INA | GLP706452 | $5,000,000 each occurrence |
| 1/1/1980-1/1/1981 | Allianz | UMB 599346 | $5,000,000 per occurrence |
| 1/1/1980-1/1/1981 | Aetna | 01XN2438WCA | $10,000,000 per occurrence; $10,000,000 Aggregate |
| 1/1/1981-1/1/1982 | INA | ISC1353 | $500,000 per occurrence |
| 1/1/1981-4/1/1982 | Transit | UMB 964076 | $5,000,000 per occurrence |
| 1/1/1981-1/1/1983 | First State and Underwriters | 931255 & 931255A | $10,000,000 per occurrence |
| 1/1/1981-1/1/1983 | First State and Underwriters | 931257 & 931257A | $10,000,000 per occurrence |

5. Survivors of sexual abuse have filed approximately seventy (70) pending claims in the Archdiocese's bankruptcy case that also implicate the BSA ("BSA Claims"). These BSA Claims create liability for both the Archdiocese's insurers and the BSA's insurers. This is so because the Archdiocese is covered by insurance policies issued to the BSA as a sponsor or chartering organization of the BSA on the Island of Guam.

6. On November 13, 2020, the Archdiocese filed a proof of claim in the BSA Bankruptcy asserting (i) claims for contribution as to any BSA claims for which the Archdiocese contributes payment in this chapter 11 case, and (ii) claims

for coverage as an insured under the BSA Insurance Policies.[3]

7. The Guam Committee filed a joinder to the TCC's objection to the BSA's Disclosure Statement, noting specifically its objection to the treatment of Indirect Abuse Claims under the plan.[4]

8. On July 2, 2021, the BSA filed its Amended Disclosure Statement.

9. The Amended Disclosure Statement defines the Archdiocese's rights under the BSA Insurance Policies as "Indirect Abuse Claims".[5]

10. The Amended Disclosure Statement and related plan provide that the Archdiocese's rights as an insured under the BSA Insurance Policies will be channeled to a trust and paid (subordinate to **fully payment of** Direct Abuse Claims) from the trust corpus.[6]

11. The proposed treatment of Indirect Abuse Claims means that the Archdiocese will likely receive nothing in exchange for extinguishing its contractual insurance rights.

---

[3] Contrary to the BSA's contentions, the Archdiocese's claim is not merely an unliquidated claim for contribution and/or indemnity, but instead is also a claim to the Archdiocese's rights as an insured under the BSA Insurance Policies. *See* Claim No. 6436.

[4] *See* Docket 4321.

[5] *See* Amended Disclosure Statement, Docket 5485 at n. 35.

[6] *See* Amended Disclosure Statement, Docket 5485 at 181 (discussing treatment of Indirect Abuse Claims).

## ARGUMENT

12. "If the Court can determine from a reading of the Plan that it does not comply with § 1129 of the Bankruptcy Code, then it is incumbent upon the Court to decline approval of the disclosure statement and prevent diminution of the estate." [7]

13. A disclosure statement for a facially defective plan cannot be approved as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code.[8]

14. Evaluating confirmability at the disclosure statement stage avoids "engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on the plan when the plan is unconfirmable on its

---

[7] *See In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986).

[8] *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 148 (3d Cir. 2012) (bankruptcy court can determine at the disclosure statement stage that a chapter 11 Plan is unconfirmable); *see also Eastern Maine Elec. Coop.*, 125 B.R. 329, 333 (Bankr. D. Me. 1991) ("If the disclosure statement describes a Plan that is so 'fatally flawed' that confirmation is 'impossible,' the court should exercise its discretion to refuse to consider the adequacy of disclosures."); *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003); *In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201, 202 (Bankr. W.D. La. 1997) ("notwithstanding adequate disclosure of information required by section 1125(b), a disclosure statement should not be approved if the Plan, as a matter of law, cannot be confirmed."); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y.), aff'd, (E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a Plan which is fatally flawed and thus incapable of confirmation."); *In re Felicity Assocs., Inc.*, 197 B.R. 12, 14 (Bankr. D.R.I. 1996) (analysis of such issues at this stage of the confirmation process has become a "standard Chapter 11 practice").

face. Such an exercise in futility only serves to further delay a debtor's attempts to reorganize." [9]

15. The Court should not approve the Amended Disclosure Statement because it provides for patently unlawful treatment of the Archdiocese's rights under the BSA Insurance Policies and violates the automatic stay imposed in the Archdiocese's chapter 11 case.

**I.     The Proposed Treatment of Indirect Abuse Claims is Unlawful**

16. The Archdiocese has a distinct and independent legal interest in the BSA Insurance Policies, and the Archdiocese's interest is property of the Archdiocese's bankruptcy estate.

17. It is the Guam Committee's understanding that many of the BSA Insurance Policies have no aggregate policy limits and afford significant coverage per occurrence for both BSA and the Archdiocese.

18. For two reasons, the Archdiocese's insurance rights cannot be seized and "sold" to a settlement trust without the Archdiocese's consent.[10] First, the Court lacks jurisdiction to dispose of the Archdiocese's property and contractual

---

[9] *See In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).

[10] *See In re Petters Co., Inc.*, 419 B.R. at 376.

interests.[11] Second, transferring the Archdiocese's insurance rights, without adequately protecting its interests, expressly violates the Archdiocese's rights under 11 U.S.C. § 363(e),(f).[12]

19.  Because the proposed treatment of Indirect Abuse Claims exceeds the Court's jurisdiction and violates the Bankruptcy Code, the Court cannot confirm the Fourth Amended Plan pursuant to 11 U.S.C § 1129(a)(1) and should not approve the Amended Disclosure Statement.[13]

---

[11] *See, e.g., In re SportStuff, Inc.*, 430 B.R. 170, 178 (B.A.P. 8th Cir. 2010) (bankruptcy court "did not have the jurisdiction or authority to impair or extinguish" independent contractual rights of insureds); *In re Archdiocese of St. Paul & Minneapolis*, 579 B.R. 188, 197 (Bankr. D. Minn. 2017) (rejecting plan provision transferring insurance interests into settlement trust where parishes' indemnification and contribution claims were impaired by transfer and parishes did not consent to such transfer); *Forty-Eight Insulations*, 133 B.R. at 976-77 (insured's claims against insurers and rights under policies were not property of debtor's estate and could not be impaired by debtor's settlement with insurer); *see also Insurance Issues in Bankruptcy: A Collier Monograph ¶ 3.03[2][d]* (2014) ("The more common approach holds that a co-insured's interest in a debtor's policy is not property of the bankruptcy estate" and "[a]s these contract rights do not belong to the debtor, they cannot be impaired by a bankruptcy court").

[12] *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1989) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.").

[13] *See In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 979 (Bankr. N.D. Ill. 1991), *aff'd,* 149 B.R. 860 (N.D. Ill. 1992) (denying injunction in favor of insurer that would abridge the rights of non-debtor additional insured to seek coverage from the insurer) ("Additional insureds possess the same rights as the named insureds under an [sic] insurance policies.").

**II.     The Automatic Stay Prevents the Court from Disposing of the Archdiocese's Insurance Rights.**

20.     The automatic stay in effect in the Archdiocese's chapter 11 case prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."[14]

21.     It is well-settled law that policies insuring debtor entities constitute property of such debtors' bankruptcy estates.[15] It is also well-settled that an insured may enforce policy provisions made for its benefit.[16]

22.     The automatic stay prohibits acts to obtain possession of property interests of the debtor.[17] Courts consistently hold that an attempt by a coinsured to settle or payout proceeds on insurance rights belonging to the estate is a violation of the automatic stay:

> Property of the estate is defined in § 541 as "all legal or equitable

---

[14] 11 U.S.C. § 362(a)(3)(2020).

[15] *See In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 906 (B.A.P. 9th Cir. 1997).

[16] *See Northwestern Mut. Ins. Co. v. Farmers' Ins. Group*, 76 Cal. App. 3d 1031 (4th Dist. 1978); *see also New Hampshire Ins. Co. v. United States*, 92 F.3d 1193, 1996 WL 436509 at *4 (9th Cir. 1996)(unpublished)("[T]he United States is entitled as an additional insured to enforce the terms of the policy against the insurer as a third party beneficiary even though it was not an actual party to the insurance contract.").

[17] 11 U.S.C. § 362(a)(3).

interests of the debtor in property (wherever located) as of the commencement of the case." It includes intangible or contingent interests of the debtor as well as intangible property itself. If these insurance proceeds are property of the bankruptcy estates, the litigation and arbitration proceedings, to the extent they seek monetary judgments or reach monetary settlements payable from the proceeds, would be acts to obtain property of the estate.[18]

23. While this is an unusual case in which the anticipated actions of one bankruptcy debtor (BSA) will impact the estate of another bankruptcy debtor (the Archdiocese), there exists no bankruptcy-to-bankruptcy exception for violations of the automatic stay.[19]

24. Accordingly, the proposed treatment of the Indirect Abuse Claims in the Fourth Amended Plan would, if confirmed, constitute a violation of the automatic stay in the Archdiocese's bankruptcy case.

## CONCLUSION

25. The Court should not approve a disclosure statement that (i) fails to acknowledge the need for relief from District Court in Guam and (ii) proposes treatment to creditors that explicitly violates the Bankruptcy Code.

---

[18] *See In re Metro. Mortg. & Sec. Co., Inc.*, 325 B.R. 851, 855 (Bankr. E.D. Wash. 2005).

[19] *See Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc.* (In re Palmdale Hills Prop., LLC), 654 F.3d 868, 875-6 (9th Cir. 2011) (actions taken by one debtor in its bankruptcy case that affect the rights of another debtor in its bankruptcy case violate the automatic stay in the latter debtor's bankruptcy case).

WHEREFORE, the Guam Committee respectfully requests that the Court deny approval of the Amended Disclosure Statement.

Dated: August 2, 2021
Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
1500 North French Street
Wilmington, Delaware 19801
(302) 442-7677 telephone
ahiller@adamhillerlaw.com

-and-

Robert T. Kugler (MN #0194116)
Edwin H. Caldie (MN #0388930)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
 (612) 335-1500 telephone
robert.kugler@stinson.com
ed.caldie@stinson.com

*Attorneys for the Official Committee of Unsecured Creditors in the chapter 11 case of the Archbishop of Agaña (Bankr. D. Guam 19-00010)*