Ex. 14



James P. Ruggeri
Phone: 202-469-7752
Fax: 202-469-7751
jruggeri@goodwin.com

August 3, 2021

**VIA ELECTRONIC MAIL**

Michael C. Andolina, Esq.
White & Case
111 South Wacker Drive
Suite 5100
Chicago, IL 60606-4302

Re:   *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr., D. Del.)

Dear Mike:

Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company ("Hartford") acknowledge receipt of Boy Scouts of America's ("BSA") most recent document productions of July 25, July 26, July 31, August 1, and August 2. Hartford also is in receipt of your e-mail and letter correspondence with the insurers' counsel proposing a schedule for the depositions of Mr. Ownby (Aug. 5), Mr. Mosby (Aug. 5), Mr. Whittman (Aug. 6) and Mr. Desai (Aug. 7), overlapping the scheduled August 3-5 mediation sessions in New York.

Hartford objects to BSA's assumption that BSA is entitled to a mulligan on its evidentiary burden simply because the Court postponed the RSA hearing. To the extent that BSA's witnesses testified that their decision to enter into the RSA (and to abandon the BSA/Hartford settlement agreement) was based on information, documents or communications that BSA withheld during discovery (including instructions not to answer and assertions of privilege), the Court advised all parties on July 27 that it likely would preclude such testimony:

> [I]f I determine that the witnesses are now testifying about topics from which they were precluded from testifying at deposition I am unlikely to hear that testimony.

*See* July 27, 2021 Hr'g Tr. at 25:12-15. The Court then reiterated at the July 29 hearing that the parties "have [her] rulings" on discovery and may meet and confer during this period.

*See* July 29, 2021 Hr'g Tr. at 21:19-21. Nothing in the record (or otherwise) permits BSA unilaterally to revise its production and present witnesses for a second round of depositions because BSA regrets the strategic decisions it made during the first round. As BSA knows, Hartford was prepared to proceed with the hearing on the RSA Motion as scheduled for July 29-30. The Court also was prepared to proceed. BSA was not because all of the RSA parties had not reached agreement on an extension. Hartford disagrees that this warrants another round of depositions of previously deposed witnesses.

But even if the Court had not made its position clear, BSA's haphazard and arbitrary withholding/redacting of board meeting minutes and other documents also weighs against a second round of depositions. To be sure, the Court indicated that these materials are discoverable:

> [O]n the surface it would seem to me that board resolutions with respect to the RSA, presentations with respect to the board's consideration of the RSA, board minutes with respect to the resolution of the RSA are all fair game and not part of mediation privilege. . . . If the particular documents, I suppose, contain communications that only took place in connection with mediation then perhaps some portion of those documents could be redacted. But providing -- but mediation doesn't clo[a]k discovery and information that is, otherwise, discoverable just because you also put it into the mediation process or communicated information you have to the mediator or other parties. So I am concerned that the mediation privilege may have been too broadly construed. Again, I haven't seen a document so I don't know, but intuitively those types of documents don't seem to me to fall within the mediation privilege and it would seem to me are very relevant to the issues before the court which the parties have framed is, at least, the debtors' business judgment. . . . So I think its fair game. What did the debtor consider? When did they consider it? What did they decide? What did they not consider? All fair game.

*See* July 27, 2021 Hr'g Tr. at 24:11-25:10. BSA cannot have it both ways; having refused to permit discovery into its communications with the other RSA parties, BSA's witnesses cannot now testify that the terms of the RSA (including the TDPs) were the result of hard-fought negotiations. Similarly, BSA cannot assert privilege to shield discovery of communications with counsel, then expect to rely on that same advice of counsel as the basis for its decision to enter into the RSA.

BSA's dribble of largely redacted documents over several weeks shows that BSA is engaged in discovery gamesmanship. BSA is continuing to skirt its obligations to produce relevant and non-privileged documents, while attempting to give the opposite impression. In our view, the only way we can meaningfully evaluate BSA's privilege claims, and in turn the only way the Court can resolve challenges should we make them, is if BSA provides a line-by-line privilege log. BSA's categorical log is inadequate, particularly in view of the manner in which BSA has produced and re-produced the same documents.

There is no doubt that BSA continues to shield relevant, non-privileged documents, as the following examples show. BSA produced to Hartford the May 26, 2021 National Executive Board meeting minutes on July 8, 2021, again on July 26, and then yet again on August 2. *See* BSA-RSA_00000778-BSA-RSA_00000780. From the July 8 version, Hartford could glean only that Ms. Lauria "updated," "discussed," and "reported" various "privileged" communications to the National Executive Board. From the July 26 version, Hartford could see that Ms. Lauria reported on discussions with the Ad Hoc Committee and discussed how chartered organizations would be addressed, that Mr. Whittman (who had already been deposed) reviewed with the Board the financial terms of BSA's contribution, and that the Board, upon unanimous motion (and without the presence of its legal advisors), had approved a $250 million proposal, including a $80 million note, to the victim's trust. It was not until August 2, after all of the depositions were complete and the RSA objection deadline passed, that BSA disclosed that Ms. Lauria advised the Board regarding the "Coalition," "Hartford," and "claims procedures." Indeed, BSA's redactions appear calculated to make documents that the Court has said are relevant and presumptively not privileged into little more than word soup:

> Jessica Lauria advised the Task Force that **[PRIVILEGED]**. **[PRIVILEGED]** the Coalition, TCC and FCR, **[PRIVILEGED]** Restructuring Support Agreement (RSA) **[PRIVILEGED]** the bridge note for local councils **[PRIVILEGED]**. Haynes and Boone **[PRIVILEGED]**. Jessica Lauria observed **[PRIVILEGED]** Hartford deal, **[PRIVILEGED]** the Hartford deal **[PRIVILEGED]**.

*See* BSA-RSA_00000814. As the Court indicated, (i) what the debtors considered; (ii) when the debtors considered it; (iii) what the debtors decided; and (iv) what the debtors did not consider are all fair game. *See* July 27, 2021 Hr'g Tr. at 24:11-25:10. Hartford suspects that these minutes, and other documents BSA has redacted or withheld entirely,[1] bear directly on the alleged futility and change in circumstances arguments that BSA will argue to the Court allow it to shirk its obligations to Hartford. Unless and until BSA provides a line-by-line privilege log, at least for documents the Court has said are presumptively fair game, and unless and until Hartford has an opportunity to challenge those privilege claims, it is pointless to participate in a second round of depositions that surely would be followed by a third.

We request a meet and confer to discuss these issues. Hartford continues to reserve all rights.

Sincerely yours,

James P. Ruggeri

---

[1] While Hartford does not address each set of documents it contends should be unredacted, we note that BSA produced 408 documents on August 2 and withheld 280 in their entirety on the basis of privilege.

Michael C. Andolina, Esq.
August 3, 2021
Page 4 of 4

Cc:    Glenn Kurtz
        Andrew Hammond
        Jessica Lauria
        Matthew Linder
        Laura Baccash
        Samuel Hershey
        Blair Warner
        Derek Abbot
        Ernest Martin
        Adrian Azer