**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
| | **Re: D.I. 5466, 5682** |

**CLAIMANTS' SUPPLEMENTAL OBJECTION TO THE DEBTORS' MOTION FOR
ENTRY OF AN ORDER, PURSUANT TO SECTIONS 363(B) AND 105(A) OF THE
BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND
PERFORM UNDER THE RESTRUCTURING SUPPORT AGREEMENT, AND (II)
GRANTING RELATED RELIEF**

## I. INTRODUCTION

1.  On July 22, 2021, the Claimants represented by the law firms listed below (the "Claimants") filed their *Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* (Dkt. No. 5682) (the "Initial Objection").[1]

2.  The Initial Objection pointed out various flaws in the Plan that the RSA described. Claimants file this Supplemental Objection to point out that the Plan, as described in the RSA, is not confirmable in the form contemplated by the RSA.  In considering approval of entry into a restructuring support agreement, courts evaluate whether the plan it contemplates is unconfirmable or the agreement commits the debtor to a confirmation path that has inadequate support from creditors to achieve confirmation. *In re CHC Grp. Ltd.*, 2017 Bankr. LEXIS 1016, at *48-49 (Bankr. N.D. Tex. Mar. 3, 2017) ("[A]s part of its ruling on approval of the Plan Support

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.  Statutory references are to the Bankruptcy Code unless otherwise noted.

Agreement, [the Court] had to consider whether the Plan met the requirements of the Bankruptcy Code and had a reasonable chance of being confirmed."); *In re Innkeepers USA Trust*, 442 B.R. 227 (Bankr. S.D.N.Y. 2010) (denying approval of a restructuring support agreement where, *inter alia*, the plan it contemplated did not have the support of the majority of the debt). As described more fully below, both of these considerations are applicable here. Approving the RSA will divert attention away from resolving this case and force many parties to expend scarce resources (including the Debtors' scarce resources) in futile disputes over this unconfirmable Plan.

3. The RSA fundamentally distorts the chapter 11 process. As demonstrated below, the Bankruptcy Code mandates a distributional scheme that is incompatible with the terms of the Plan contemplated by the RSA. In order to render the Plan confirmable, the Debtors will be required to amend the Plan to provide abuse survivors that are releasing more valuable claims against third parties with enhanced consideration. §§ 1129(a)(7); 1123(a)(4). The RSA, however, prevents the Debtors from so amending the Plan and other Definitive Documents (as defined in the RSA) without the consent of the parties to the RSA. *See, e.g.*, RSA §§ II.A.(iii), II.B.(iv). & X. Moreover, the absence of a general right to terminate the RSA boxes the Debtors into supporting an unconfirmable plan. *See* RSA § V.C. The Court should deny the Motion and order the parties to return to mediation to craft a Plan that recognizes and respects Claimants' rights.

## II. SUPPLEMENTAL OBJECTION

### A. The Local Councils that the Plan Releases Have Liability to Abuse Survivors that is Independent of any Liability that the Debtors Have To Abuse Survivors

4. The Plan that the RSA seeks to advance is a Local Council-centric one. In contrast to the prior proposed plan, which focused on the Debtors' resources and its liabilities, the current Plan focuses on channeling claims against the Local Councils to the Trust, in exchange for an aggregate contribution of $600 million (unallocated among Local Councils) and their insurance rights.

2

5.      Because of the Plan's re-orientation, it is important for the Court to fully appreciate that the Local Councils' liability to underlying Claimants is not secondary to, duplicative of, or derivative of, the Debtors' liability.  In many cases, it is a Local Council or Chartered Organization that bears direct, primary, and, in some cases *sole* liability for the abuse that took place, and the Debtors have minimal or no liability.  This stands in stark contrast to many other mass tort cases involving supplemental injunctions where the Debtors' conduct, such as the design or manufacture of a dangerous product, stands at the center of, and serves as a predicate for, the liability of non-debtors who are sought to be released.  In contrast, for example, to Takata (faulty air bags) or Dow Corning (silicone breast implants), the underlying conduct that gives rise to a tort claim here does not necessarily depend on the Debtors' conduct at all.  In some cases, it might—where, for example, the Debtors knowingly allowed a potential abuser to participate in sponsored activities—but in many cases, courts have dismissed the Debtors as defendants from actions pending in the tort system, holding that the Debtors simply bore no responsibility in that case for the underlying tort committed by an employee or representative of a Local Council or Chartered Organization. *See, e.g.*, *Hammerberg v. Boy Scouts of America, et al*., 33 Mass. L. Rptr. 54 (Mass. Sup. Ct. 2015) (dismissing claims against BSA and determining that the local chartering organization was the entity with the necessary supervisory authority to support liability for abuse alleged); *Hobbs v. Boy Scouts of America, Inc., et al*., 152 S.W. 3d 367 (Mo. Ct. App. 2004) (same); *Golden Spread Council, Inc., et al., v. Veronica Atkins, et al*., 926 S.W. 2d 287 (Tex. Sup. Ct. 1996) (dismissing claims against BSA and determining that only the local council and chartered organization could be held liable for abuse alleged).

6.      For this reason, for Claimants that have strong claims against Local Councils or Chartered Organizations, a third-party release of the Local Councils through the Debtors' bankruptcy case amounts to the tail wagging the dog—an entity with few assets and uncertain

liability using its bankruptcy case in order to provide a release in favor of entities with far greater assets that bear the actual factual and legal responsibility for the underlying tort.

7.     It is important for the Court to appreciate this structure, both because it may put limits on the reach of the third-party releases that the Debtors seek to impose here, and also because it highlights the deficiencies in the Plan that render it flatly unconfirmable and a waste of estate resources to pursue in its current form.

**B.     The Plan as Proposed to Be Solicited and Confirmed is Not Confirmable**

8.     The Plan in the form contemplated by the RSA is not ready for solicitation and confirmation for four reasons:

(i)     the solicitation procedures (a) fail to respect the independent rights that claimants have against Local Councils, and the need for the Court to assure itself that those who vote in favor of the Plan releasing the Local Councils are those that have rights against that Local Council; and (b) ignore the statutory requirement to ensure that the affirmative class vote represents two thirds of the amount of liability by giving all claimants a $1.00 claim for voting purposes despite the enormous variation in the value of the claims;

(ii)     compelling claimants with valuable independent claims against Local Councils to accept a *pro rata* share of the consideration contributed by a Local Council with no preferred recovery for those claimants who have claims against the applicable Local Council and its insurance rights violates section 1123(a)(4);

(iii)     the vesting of insurance rights held by the Local Councils in the Trust raises a host of challenging insurance coverage issues that the parties have yet to address; and

(iv)     there is simply no basis for providing Chartered Organizations with a release from their liability for their independent torts where such entities have independent insurance coverage and assets with which to satisfy any liability they have in the tort system.

4

1.      **The Plan Depends on Voting Procedures that are Illegal**

9.      Section 1126 contains two voting thresholds that must be satisfied in order to confirm a chapter 11 plan consensually—one half in number and two-thirds in amount.  Congress mandated two separate thresholds to ensure that the plan achieves creditor support both by reference to the number of claims, but also by reference to the amount of liability represented by those claims.  NORTON BANKRUPTCY LAW AND PRACTICE 3D § 110:19 (William L. Norton III ed.) ("The requirement of Code § 1126 that a plan be accepted by two-thirds in amount protects the holders of large claims, while the majority-in-number requirement protects the holders of smaller claims.").  Such a mechanism prevents a plan supported by a large number of small claims from being confirmed when it lacks the support of those with the bulk of the economic stake in the outcome.

10.      The Debtors estimate that of their 82,500 abuse survivor claims (Disc. Stmt., Dkt. No. 5485, at 72), only 14,000 identify an alleged abuser and are not presumptively time-barred to varying degrees depending upon the state law applicable to the claim, whereas approximately 59,500 abuse survivor claims are presumptively time-barred.  Disc. Stmt. (Dkt. No. 5485) at 74, 76 & Exhibit F.  The TDP adjusts the value of time-barred claims to reflect the strength of the Debtors' (and their insurers') statute of limitations defense.  But the Solicitation Procedures (Dkt. No. 5488), at ¶ 25, without any citation to legal authority or supporting argument, allow for voting purposes all direct abuse claims at $1 regardless of timeliness and regardless of TDP value.  In so doing, the Debtors ignore the requirement of section 1126—to ensure that the Plan receives the support of class members holding two-thirds of the economic stake in the outcome.

11.      Given the distribution of claims in this case, the Solicitation Procedures create the possibility that the Debtors could seek to confirm a plan unacceptable to all 14,000 abuse claimants who have enforceable state law claims against the Debtors and one or more Local Councils, and also compel the release their co-liable Local Councils, settling Chartered Organizations, and

settling insurers, with only the affirmative votes of those holding claims that are time-barred and incapable of being asserted outside of bankruptcy against any of those entities, and the Court would have no mechanism for assessing the degree of creditor support for the Plan from those holding valid enforceable claims.[2]

12.      The failure to differentiate among claims for voting purposes renders the Plan unconfirmable.  The Debtors should propose some method of differentiating claims in a manner that gives effect to section 1126.  At a minimum, the votes of those holding time barred claims should be segregated and weighted in accordance with their TDP discount value to ameliorate the distortions that will result from the proposed vote tabulation protocol.

13.      The Plan also fails to tabulate votes by reference to the Local Council against which a Claimant asserts a direct claim.  Instead, the proposed voting procedures allow creditors who do not have a claim against a non-debtor to vote on whether the current and future claims against the non-debtor should be released and enjoined, even though they will not be adversely impacted by that release.

14.      The procedures also fail to provide any mechanism for this Court (or a creditor) to determine whether such relief was supported by a sufficient number of the impacted creditors.  If a claimant with a claim against a particular Local Council wants to object to its release and injunction because that claimant does not believe that enough of the impacted claimants voted in favor of that relief, the Disclosure Statement, Plan, and Solicitation Procedures do not provide any way for that claimant or this Court to determine whether the relevant voting threshold was met.

15.      The absence of a mechanism for providing the Court a basis for making the required findings that any third-party release was "overwhelmingly" supported by the creditors whose claims are impacted by the release renders the Plan unconfirmable.  *In re Zenith Elecs. Corp.*, 241

---

[2] Although there are presently no Chartered Organization settlements, if any such settlements are entered into, the same voting and distributional concerns discussed herein with respect to Local Council settlements would likewise apply to any Chartered Organizations that may seek to become Protected Parties under the Plan.

B.R. 92, 110 (Bankr. D. Del. 1999); *In re Lower Bucks Hosp.*, 471 B.R. 419, 456 (Bankr. E.D. Pa. 2012) ("A critical factor in assessing the confirmability of a plan that includes a third-party release is whether the adversely affected class of creditors have manifested their strong support for the plan through the plan voting process."); *In re Saxby's Coffee Worldwide, LLC*, 436 B.R. 331, 338 (Bankr. E.D. Pa. 2010) (a third party release must be "widely supported by the creditor constituency that includes the parties being restrained"); *see also In re Medford Crossings N., LLC*, No. 07-25115, 2011 WL 182815, at *19 (Bankr. D.N.J. Jan. 20, 2011) (declining to confirm plan of reorganization in part because "[t]he parties that would be restrained from proceeding against the Third Party Releasees are receiving little or no distribution under the Plan and would be precluded from asserting their claims against the Releasees."). As *Saxby's Coffee* recognized: "[i]t is a very narrow legal realm in which a party's legal rights may be restricted because the needs of the many outweigh the rights of the few." 436 B.R. at 338.

16.    *In re National Heritage Foundation, Inc.*, 478 B.R. 216, 230 (Bankr. E.D. Va. 2012), illustrates the importance of distinguishing between impacted and unimpacted creditors in conferring third party releases. In that case, the Debtor argued a third party release should be approved because it was "overwhelmingly approved by the creditors." *Id.* at 230. The Court rejected the release because the votes that constituted the "overwhelming majority" were not cast by creditors who were impacted by the release: "the class impacted by the Release Provisions (the Donors) did not vote to accept the Plan; rather, the class that was to be paid in full under the Plan (the Annuitants) voted to accept the Plan." *Id.* at 230-31.

**2.      The Plan Does Not Recognize the Value of the Nonbankruptcy Rights of Abuse Survivors Holding Valuable Claims Against Third Parties Released by the Plan**

17.      The Plan is fatally flawed in not giving Claimants with rights against Local Councils an enhanced right to the consideration being contributed by the applicable Local Council.

18.      The Plan that the Solicitation Procedures and Disclosure Statement advance bars claimants from pursuing their claims against the approximately 251 non-debtor Local Councils organized as independent legal entities under separate management and control in exchange for an aggregate contribution of $600 million, pools those funds, along with the proceeds of any insurance recovered on account of the Local Council, with the other Trust assets, and then allocates those funds among abuse claimants in accordance with the TDP without regard to what recourse particular individual claimants have against which Local Councils.  Further, it contemplates a mechanism under which at some point in the future, third parties (referred to as Chartered Organizations) who have independent tort liability to some but not all abuse claimants may also be granted a release that would be binding on all abuse claimants without regard to any disclosure, voting, Court process or approval, or consent of those directly affected claimants who actually suffered the tortious sexual assaults or abuse for which those third parties are responsible. Presumably the proceeds of these settlements with Chartered Organizations will also be subject to the general pooling of funds contemplated by the Plan and TDP and distributed without reference to which claimants suffered the abuse at their hands.

19.      Claimants' state law rights against Local Councils and Chartered Organizations vary enormously.  Many claimants—a clear majority of those proposed to be solicited—have no enforceable claim at all against these entities.  These include claimants who have only a claim against the Debtors themselves and the Debtors' insurance, and claims that are time-barred under applicable non-bankruptcy law.  Other claimants have rights only against the estate and a particular Local Council or Chartered Organization.  Their Local Council or Chartered Organization may

have limited resources or responsibility under applicable law. But some claimants may have strong claims against financially strong or well-insured Local Councils or Chartered Organizations that have the ability to satisfy their claims in full or at least in a greater measure than they may receive under the TDP. For claimants with no, or only weak claims, against third parties, or with claims against financially weak or underinsured third parties, the Plan is a boon, providing them the opportunity for some recovery where the tort system might leave them with none. For claimants of the second kind, the Plan destroys their right to pursue solvent entities and compels them to share the contribution from the released entity with claimants who had no such right. The Plan ignores the range of nonbankruptcy outcomes against the non-debtors, and effects a substantive consolidation of the Debtor and the Local Councils, sharing the assets they are contributing *pro rata* among all claimants, without regard to the entity against which the claimant actually has claims.

20.    Because the claimants hold fundamentally different economic rights against the various non-debtors, the Plan violates section 1123(a)(4): creditors with superior claims against more solvent or insured non-debtors are being compelled to relinquish those valuable claims, but are receiving the same treatment as those without such claims. *In re AOV Indus., Inc.*, 792 F.2d 1140 (D.C. Cir. 1986) is a leading case in point. There, a plan placed all unsecured creditors in a single class sharing *pro rata* in a fund comprised of $800,000 contributed by the debtor, and $3,000,000 to be contributed by the creditors who were sponsoring the plan. 792 F.2d at 1150. The debtor's contribution would fund an approximate 4% dividend for creditors; the creditor contribution an additional 13%. *Id.* Critically, the plan also provided that creditors could receive the 13% creditor enhancement only by executing a release in favor of the sponsoring creditors. *Id.* For the most part, creditors had only claims derivative of the debtors' claims against the sponsoring creditors, but one creditor – Hawley Fuel Coal—objected to the plan on the basis that, alone among creditors, Hawley asserted a direct guarantee claim against one of the sponsoring creditors, a claim

that was substantially more valuable than the derivative claims held by the other unsecured creditors. *Id.*  The D.C. Circuit agreed. *Id.* 1151-52.  Noting that the "most conspicuous inequality that § 1123(a)(4) prohibits is payment of different percentage settlements to co-class members," the Court observed that the "other side of the coin of unequal payment, however, has to be unequal consideration tendered for equal payment." *Id.* at 1152.  The Court explained:

> It is disparate treatment when members of a common class are required to tender more valuable consideration – be it their claims against specific property of the debtor or some other cognizable chose in action—in exchange for the same percentage of recovery. *Id.*

21.    In recognizing these principles, the Third Circuit has observed that section 1123(a)(4) "does not require precise equality, only approximate equality." *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013*) (quoting In re Quigley Co., Inc.,* 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007)).  "Certain procedural differences, such as a delay in receipt of distributions for some claims do not alone constitute unequal treatment." *W.R. Grace & Co.*, 729 F.3d at 327.  But here, the differences are not minor or procedural, nor is it unworkable to establish how claimants are differentially affected; instead, the differences are substantive and may profoundly alter creditor rights, conferring windfalls on some creditors and starkly prejudicing those with the strongest and most collectible claims under nonbankruptcy law.

22.    It may well be that claimants with rights against non-debtor Local Councils will agree to vote to release the Local Councils and share some or all of the amounts they contribute with other claimants who do not have such rights.  Perhaps their vote to do so as a class could bind all class members under some circumstances.  But to force that pooling of the proceeds of non-debtor settlements based on lumping together a small number of claimants with rights against the settling Local Council with vastly larger numbers of other claimants without such rights and giving each claimant one vote on the matter without separate tallying of the votes, violates not only the

classification and voting provisions in chapter 11, but also the equal treatment mandate of section 1123(a)(4).

23.    Because claimants' rights against the Local Councils fundamentally differ, the Plan and Disclosure Statement must address at a minimum:

    a.    Local Council assets and liabilities (including insurance assets);

    b.    The claims asserted against each Local Council;

    c.    Claimants' estimated recovery against each Local Council; (with and without regard to insurance shared with the Debtor); and

    d.    The amount to be contributed by each Local Council in exchange for its release.

24.    Only with that information can an individual claimant with claims against a financially strong or well-insured Local Council assess whether or not to accept the less favorable treatment offered by the Plan and grant the release of Local Councils and forego its claims under nonbankruptcy law as against its responsible Local Council.

25.    As a result of these considerations, the current structure of the proposed Local Council settlement—an aggregate $600 million to be received from all Local Councils, without any minimums for any council to receive a release—is not adequate.  Absent *some* indication of the allocation of the settlement consideration among the Local Councils, and a showing that a Local Council's contribution is fair and equitable consideration for the release it is proposed to receive, the Plan is not confirmable.

26.    In addition, each claimant is entitled to receive value under the Plan that is at least equal to its rights in liquidation.  § 1129(a)(7).[3]  In making that calculation the Court must consider

---

[3] The Debtors assert without authority that the best interests of the creditors test does not apply to them because the Bankruptcy Code does not permit involuntary chapter 7 proceedings to be instituted against them.  Disc. Stmt. at 211.  But there is no logical connection between the bar on involuntary proceedings for non-profits and application of the best interests test as a mandatory confirmation requirement in this case.  The best interests test requires comparison of the plan value with the outcome of a hypothetical chapter 7 proceeding.  The hypothetical chapter 7 proceeding in this

the value of rights against non-debtors that are released under the terms of the Plan.  *See, e.g.*, *In re Washington Mutual, Inc.*, 442 B.R. 314, 359-60 (Bankr. D. Del. 2011) ("In a case where claims are being released under the chapter 11 plan but would be available for recovery in a chapter 7 case, the released claims must be considered as part of the analysis in deciding whether creditors fare at least as well under the chapter 11 plan as they would in a chapter 7 liquidation."); *In re Quigley Co.*, 437 B.R. 102, 144-46 (Bankr. S.D.N.Y. 2010) (plan violated the best interest test because the debtor's liquidation analysis did not reflect that some creditors would retain their rights to sue the solvent non-debtor parent in a chapter 7 liquidation, rights that would be released under the chapter 11 plan).  In *Quigley*, as here, the plan also violated section 1123(a)(4) because all creditors in the relevant class were receiving the same 7.5% *pro rata* distribution, but only some of those creditors were "being compelled to give up their valuable derivative claims—which [other creditors in that class had already surrendered]—to get the same 7.5% distribution."  437 B.R. at 148.  The court concluded "[j]ust as the retention of the derivative claim in a Quigley chapter 7 results in the violation of the 'best interest' test, the compelled surrender of the derivative claim in a Quigley chapter 11 results in 'unequal treatment' under 11 U.S.C. § 1123(a)(4)."

> **3.**     **The RSA's Plan Depends on this Court Resolving Challenging Insurance Coverage Issues and Jeopardizes the Valuable Insurance Rights Held by Local Councils**

27.     The RSA should also not be approved at this time because the Plan it contemplates depends on this Court favorably resolving hotly disputed insurance coverage positions asserted by the Debtors' and non-debtor Protected Parties' carriers (Dkt. No. 5684) that might otherwise, in whole or in part, substantially limit or eliminate insurer contributions and significantly reduce amounts Claimants could recover from the Trust.  Although these self-serving "coverage defenses"

---

case would be a hypothetical voluntary chapter 7 case.  The best interests standard is routinely applied in chapter 11 cases involving non-profit entities.  *See, e.g.*, *In re Roman Catholic Archbishop*, 339 B.R. 215, 227 (Bankr. D. Or. 2006) (discussing application of best interest test to plan proposed by a non-profit entity); *In re Cajun Elec. Power Coop.*, 230 B.R. 715, 741 (Bankr. M.D. La. 1999) (same); *In re General Teamsters, Warehousemen & Helpers Union Local 890*, 225 B.R. 719, 733-34 (Bankr. N.D. Cal. 1998) (same).

are incorrect in the context of this case — legally and factually — court decisions throughout the country have not been uniform in addressing them and the insurers are well-funded, experienced in contesting abuse claims in the court system, and fully prepared to engage in protracted litigation over their policy obligations.  A number of "coverage defenses," if successful, could potentially eliminate insurer recoveries altogether, and others could reduce amounts available to claimants. Moreover, the Plan actually makes the position of claimants who hold claims against Local Councils worse—not only do they lose their nonbankruptcy right to recover from the Local Council's assets and insurance rights, the agreement of the Local Councils to resolve their liability without the applicable insurers' involvement and the transfer of the Local Council's insurance rights to the Trust trigger *additional coverage defenses that could further diminish the recovery from the insurers from what a claimant could achieve today.*[4]

28.     A number of "coverage defenses" are aimed at eliminating coverage entirely.  For example, some insurers contend that pursuing a bankruptcy to address the abuse liabilities and negotiate a proposed settlement,, without first obtaining insurer consent, violates the cooperation obligations of the policyholders and results in the forfeiture of coverage.  Instead of viewing the bankruptcy process as a legitimate means of addressing decades of sexual abuse nationwide, the insurers would transform the bankruptcy into a coverage forfeiture event.  Another argument raised by insurers in an effort to eviscerate billions of dollars of historic liability insurance challenges the assignment of insurance to the Trust — a cornerstone of the Plan — as violative of the insurance contracts.  The insurers appear to accept that their "anti-assignment" defense is preempted by federal bankruptcy law as to the Debtors, having lost the issue in multiple bankruptcy courts.  *In re Combustion Engineering, Inc.*, 391 F.3d 190, 218 (3d Cir. 2004) (bankruptcy law preempts state law and overrides anti-assignment provisions in debtors' insurance policies).  However, the

---

[4] With respect to any future settlements with Chartered Organizations, the same concerns discussed herein would apply with regard to shared insurance between the Debtors and the settling Chartered Organizations in light of the fact that, post 1978, the Chartered Organizations have generally been insured under the same policies as are the Debtors.

13

insurers continue to challenge assignments of non-debtor policies, an area that remains unsettled. *Id.* at 219 (federal law preemption ruling not applicable to non-debtor participants in bankruptcy); *Fluor Corp. v. Superior Court*, 61 Cal.4th 1175, 1219 (2015) (overturning prior state law cases under California law and permitting assignment of insurance after damage/injury has occurred).  If successful in their anti-assignment arguments, the insurers could deprive the Trust of billions of dollars of insurance assets otherwise available to the non-debtors to cover their liabilities to abuse survivors.  At present, the Plan proponents have not identified a clear path forward to resolve these issues, other than to make their successful resolution by this Court a condition to Plan effectiveness.

29.    Other "coverage defenses" may not eliminate coverage entirely but seek to reduce available coverage substantially.  The Debtors proclaim that the TDP may result in creditors receiving up to 100% of the value assigned to their claim under the TDP, *see* Disc. Stmt., Dkt. No. 5485, at 214, but the insurers argue that those values are not binding on the insurers and that their duty to indemnify their insureds may be capped at the amounts their insureds paid into the Trust.  Here, again, the law remains unsettled and conflicting.[5]  If the TDP values are not binding, and the exposure of the insurers is capped at the contribution of their insureds, an abuse survivor whose claim is valued at $2.7 million may receive a small fraction of that amount.

30.    The RSA and Plan do not articulate an alternative approach if the insurers prevail on these arguments.  The Disclosure Statement indicates there are approximately 82,500 non-duplicate claims by survivors of child sexual abuse.  As it stands, the Plan would provide each

---

[5] *Compare Fuller–Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 999-1000 (Cal. Ct. App. 2006) (finding insurer is only required to pay trust payment percentage, not full allowed value); *Flintkote Co. v. Aviva PLC*, 177 F. Supp. 3d 1165, 1178–80 (N.D. Cal. 2016) (discussing *Fuller-Austin* at length and adopting its holding as binding law in California on the interpretation of insurance indemnification contracts), *with UNR Indus., Inc. v. Continental Casualty Co*., 942 F.2d 1101, 1105 (7th Cir. 1991) (concluding under Illinois law, insurer obligated to pay full allowed value, not just the trust payment percentage, in order to avoid insurer benefitting from UNR's bankruptcy); *National Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co*., 2012 U.S. Dist. LEXIS 29568 at *15-16 D. Md. Mar. 6, 2012 (rejecting *Fuller-Austin* and concluding under Maryland law, insurers are required to pay full allowed claim value).

claimant an average of about $10,000, or less, from the funds provided by the Debtors and the Local Councils, far less than the TDP value of these claims. The Debtors rely on the availability of assigned insurance coverages to make up the difference. The RSA should not be approved unless or until the proponents identify alternative paths to pursue the insurance if their favored approach fails. This is particularly important because the Plan, by channeling non-debtors' insurance into the Debtors' Trust, risks significantly diminishing the value of that insurance to claimants who hold claims against Local Councils and can otherwise access that insurance coverage.

**C.      Required Disclosure Regarding Unrelated Non-Debtor Protected Parties.**

31.      The RSA's contemplated Plan also impermissibly grants a post-confirmation trustee the power to decide whether to enter into settlement agreements that will release and enjoin current and future claims against non-debtor Chartered Organizations, but neither the Disclosure Statement, the Plan, nor the Solicitation Procedures allow for creditors who actually hold abuse claims against such Chartered Organizations to vote on whether they should receive a post-confirmation release and injunction of those liabilities, nor is this Court's approval of the settlement and modification of its Channeling Injunction required. Disclosure must be made as to the identity of any third party non-debtor Chartered Organization to be deemed a Protected Party under the Plan and the contribution being made to obtain the protection of this Court's Channeling Injunction before the votes are cast and the votes of impacted creditors separately tallied so this Court can determine whether there is overwhelming support from impacted creditors, or, in the alternative if a settlement with a Chartered Organization is reached post-confirmation that provides for the modification of the Court's Channeling Injunction to include that Chartered organization as a Protected Party, after notice and an opportunity for a hearing to assess the fairness of such post-confirmation settlement to all affected claimants, at which point the Court can determine

whether the necessary overwhelming majority of affected claimants support the proposed expansion of the Channeling Injunction.

### III. PRAYER

32.    The RSA seeks to put in place an expensive and time-consuming mechanism to confirm a Plan that, by its terms, cannot be confirmed as proposed.  The Court should decline to approve the RSA and permit the parties to return to mediation to craft a Plan that preserves Claimants' rights under the Bankruptcy Code.

Respectfully submitted,

**BIELLI & KLAUDER, LLC**

Dated: August 9, 2021
      Wilmington, Delaware

*/s/ David M. Klauder*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

– and –

*/s/ Thomas E. Patterson*
**KTBS LAW LLP**
Thomas E. Patterson, Esquire
Daniel J. Bussel, Esquire
Sasha M. Gurvitz, Esquire
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Phone: (310) 407-4000
Fax: (310) 407-9090
tpatterson@ktbslaw.com
dbussel@ktbslaw.com
sgurvitz@ktbslaw.com

*Counsel to The Zalkin Law Firm, P.C. and Pfau Cochran Vertetis Amala PLLC*

– and –

*/s/ Irwin Zalkin*
**THE ZALKIN LAW FIRM, P.C.**
Irwin Zalkin, Esquire

16

Devin Storey, Esquire
Kristian Roggendorf, Esquire
10590 West Ocean Air Drive, Suite 125
San Diego, CA 92130
Phone: (858) 259-3011
Fax: (858) 259-3015
irwin@zalkin.com
dms@zalkin.com
kristian@zalkin.com[6]

– and –

*/s/ Michael T. Pfau*

**PFAU COCHRAN VERTETIS AMALA PLLC**
Michael T. Pfau, Esquire
Jason P. Amala, Esquire
Vincent T. Nappo, Esquire
Benjamin B. Watson, Esquire
403 Columbia Street, Suite 500
Seattle, WA 98104
Phone: (206) 451-8260
Fax: (206) 623-3624
michael@pcvalaw.com
jason@pcvalaw.com
vnappo@pcvalaw.com
bwatson@pcvalaw.com

– and –

*/s/ Adam D. Horowitz*

**HOROWITZ LAW**
Adam D. Horowitz, Esquire
110 E. Broward Boulevard, Suite 1850
Fort Lauderdale, FL 33301
Phone: (954) 641-2100
Fax: (954) 828-0596
adam@adamhorowitzlaw.com

– and –

*/s/ Spencer R. Lucas*

**PANISH SHEA & BOYLE LLP**
Spencer R. Lucas, Esquire
11111 Santa Monica Boulevard, Suite 700
Los Angeles, CA 90025
Phone: (310) 477-1700

---

[6] *See* attached Appendix A, which lists the Sexual Abuse Survivor Proof of Claim numbers for the Objecting Claimants.

Fax: (310) 477-1699
lucas@psblaw.com

– and –

*/s/ Jay S. Mascolo*
**REBENACK ARONOW MASCOLO, LLP**
Jay S. Mascolo, Esquire
111 Livingston Avenue
New Brunswick, NJ  08901
Phone: (732) 247-3600
Fax: (732) 247-3630
jmascolo@ram.law

– and –

*/s/ Mary Liu*
**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
Mary Liu, Esquire
17 East Main Street
Pensacola, FL 32502
Phone: (850) 202-1010
Fax: (760) 304-8933
mliu@awkolaw.com

– and –

*/s/ Erica B. Sattler*
**LINDER, SATTLER & ROGOWSKY, LLP**
Erica B. Sattler, Esquire
3 Park Avenue, Suite 2300
New York, New York  10016
Phone: (212) 766-4424
lsrlawny@gmail.com

– and –

*/s/ Taylor Boren*
**MANLY,  STEWART & FINALDI**
Taylor Boren, Esquire
Vince W. Finaldi, Esquire
19100 Von Karman Avenue, Suite 800
Irvine, CA  92612
Phone: (949) 252-9990
Fax: (949) 252-9991
tboren@manlystewart.com
vfinaldi@manlystewart.com

– and –

*/s/ Ashley L. Vaughn*
**DUMAS & VAUGHN**
Ashley L. Vaughn, Esquire (admitted *pro hac vice*)
Gilion C. Dumas, Esquire
3835 Northeast Hancock Street, Suite GLB
Portland, OR 97212
Phone: (503) 616-5007
ashley@dumasandvaughn.com
gilion@dumasandvaughn.com

– and –

*/s/ Michele M. Betti*
**BETTI & ASSOCIATES**
Michele M. Betti, Esquire
30 Wall Street, 8th Floor
New York, New York 10005
Phone: (646) 895-0939
mbettilaw@gmail.com

– and –

*/s/ Kirk C. Davis*
**LAW OFFICE OF KIRK C. DAVIS**
Kirk C. Davis, Esquire
1218 Third Avenue, Suite 1000
Seattle, WA 98101
Phone: (206) 684-9339
Fax: (206) 260-3685
kirk@kirkdavislaw.com

– and –

*/s/ Joshua D. Gillispie*
**GREEN & GILLISPIE**
Joshua D. Gillispie, Esquire
1 Riverfront Place, Suite 605
North Little Rock, AR 72114
Phone: (501) 244-0700
josh@greenandgillispie.com

– and –

*/s/ Marcus R. Spagnoletti*
**SPAGNOLETTI LAW FIRM**
Marcus R. Spagnoletti, Esquire

19

Marc E. Kutner, Esquire
401 Louisiana Street, 8th Floor
Houston, TX 77002
Phone: (713) 653-5600
Fax: (713) 653-5656
mspagnoletti@spaglaw.com
mkutner@spaglaw.com

– and –

/s/ Raymond P. Boucher
**BOUCHER LLP**
Raymond P. Boucher, Esquire
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Phone: (818) 340-5400
Fax: (818) 340-5401
ray@boucher.la

– and –

/s/ Andrew M. Chasan
**CHASAN & WALTON, LLC**
Andrew M. Chasan, Esquire
Timothy C. Walton, Esquire
P.O. Box 1069
Boise, ID 1069
andrew.chasan@chasanwalton.com
timwalton2000@hotmail.com

– and –

/s/ Paul DeMarco
**LAW OFFICES OF ANTHONY M.
DEMARCO**
Paul DeMarco, Esquire
650 Sierra Madre Villa Avenue, Suite 203
Pasadena, CA 91107
Phone: (626) 844-7700
paul@demarcolawfirm.com

– and –

/s/ David Fasy
**FASY LAW, PLLC**
Daniel Fasy, Esquire
1752 Northwest Market Street #1502
Seattle, WA 98107
Phone: (206) 450-0175

dan@fasylaw.com

– and –

*/s/ Joseph A. Blumel, III*
**LAW OFFICE OF JOSEPH A. BLUMEL III, P.S.**
Joseph A. Blumel, III, Esquire
4407 North Division Street, Suite 900
Spokane, WA  99207
Phone: (509) 487-1651
joseph@blumellaw.com

– and –

*/s/ Bryan G. Smith*
**TAMAKI LAW OFFICES, P.S. INC.**
Bryan G. Smith, Esquire
Vito R. de la Cruz, Esquire
1340 North 16th Avenue, Suite C
Yakima, WA  98902
Phone: (509) 248-8338
bsmith@tamakilaw.com
vito@tamakilaw.com

– and –

*/s/ Paul A. Slager*
**SILVER GOLUB & TEITELL LLP**
Paul A. Slager, Esquire
Jennifer B. Goldstein, Esquire
Nicole B. Coates, Esquire
184 Atlantic Street
Stamford, CT  06901
Phone: (203) 325-4491
Fax: (203) 325-3769
pslager@sgtlaw.com
jgoldstein@sgtlaw.com
ncoates@sgtlaw.com

– and –

*/s/ Martin D. Gould*
**ROMANUCCI & BLANDIN, LLC**
Martin D. Gould, Esquire
321 North Clark Street, Suite 900
Chicago, IL 60654
Phone: (312) 253-8589
Fax: (312) 458-1004

mgould@rblaw.net

– and –

*/s/ Jenn Liakos*
**JENN LIAKOS LAW**
Jenn Liakos, Esquire
1611 South Pacific Highway, Suite 200D
Redondo Beach, CA 90277
Phone: (310) 961-0066
jenn@jennliakoslaw.com


*Counsel to the Objecting Claimants*

# APPENDIX A

The foregoing *Supplemental Objection to Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* was filed by the following creditors who each timely filed a Sexual Abuse Survivor Proof of Claim and are represented by the law firms listed below.  The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim.

## The Zalkin Law Firm Claimants

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 18072 | 48079 | 63165 | 67687 | 77783 | 78482 | 90468 | 97430 | 105814 | 107363 |
| 29655 | 51702 | 63175 | 74196 | 77789 | 78618 | 90485 | 97431 | 105815 | 107390 |
| 34531 | 51733 | 63188 | 77282 | 77849 | 78622 | 90728 | 104530 | 105816 | 107392 |
| 34947 | 52861 | 63190 | 77319 | 77911 | 81313 | 90739 | 104562 | 105822 | 107393 |
| 37970 | 54709 | 63201 | 77322 | 77922 | 84481 | 90799 | 105016 | 105826 | 107394 |
| 40260 | 54721 | 63208 | 77364 | 77927 | 84496 | 91547 | 105017 | 105875 | 107396 |
| 40722 | 54807 | 63220 | 77391 | 78074 | 84562 | 93305 | 105020 | 105886 | 107399 |
| 43527 | 58626 | 67605 | 77397 | 78117 | 84965 | 93523 | 105022 | 105891 | 107401 |
| 43531 | 58646 | 67612 | 77425 | 78168 | 88613 | 97419 | 105063 | 105896 | 107419 |
| 43537 | 58657 | 67614 | 77438 | 78190 | 89201 | 97420 | 105075 | 105919 | |
| 44968 | 58674 | 67630 | 77572 | 78250 | 89203 | 97421 | 105807 | 105928 | |
| 44970 | 58680 | 67633 | 77585 | 78329 | 90197 | 97423 | 105809 | 106168 | |
| 46081 | 58700 | 67637 | 77619 | 78384 | 90247 | 97424 | 105810 | 106521 | |
| 46090 | 58743 | 67660 | 77676 | 78390 | 90282 | 97426 | 105811 | 106523 | |
| 47689 | 63163 | 67671 | 77749 | 78424 | 90399 | 97429 | 105813 | 107360 | |

## Pfau Cochran Vertetis Amala, Panish Shea & Boyle, and Rebenack Aronow Mascolo Claimants

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 3412 | 6363 | 11106 | 16250 | 21279 | 28216 | 35170 | 42368 | 48522 | 63914 |
| 3468 | 6365 | 11109 | 16251 | 21287 | 28223 | 35171 | 42552 | 48524 | 63921 |
| 3470 | 6366 | 11117 | 16252 | 21311 | 28233 | 35180 | 42556 | 48528 | 63970 |
| 3480 | 6367 | 11119 | 16254 | 21316 | 28241 | 35187 | 42565 | 48532 | 64018 |
| 3508 | 6368 | 11120 | 16255 | 21324 | 28245 | 35192 | 42568 | 48537 | 64038 |
| 3514 | 6369 | 11122 | 16256 | 21344 | 28247 | 35195 | 42576 | 48539 | 64069 |
| 3516 | 6370 | 11123 | 16258 | 21355 | 28248 | 35212 | 42589 | 52929 | 64080 |
| 3518 | 6376 | 11127 | 16259 | 21357 | 28262 | 35219 | 42592 | 52940 | 64137 |
| 3548 | 6380 | 11184 | 16261 | 21361 | 28265 | 35233 | 42599 | 52946 | 64184 |
| 3550 | 6381 | 12814 | 16262 | 21368 | 28267 | 35266 | 42606 | 52949 | 64211 |
| 3552 | 6382 | 12818 | 16263 | 21382 | 28270 | 36476 | 42608 | 52960 | 64213 |
| 3556 | 6383 | 12819 | 16264 | 21586 | 28272 | 36480 | 42609 | 52969 | 64279 |
| 3626 | 6384 | 12821 | 16265 | 21607 | 28273 | 36484 | 42615 | 53104 | 64324 |
| 3628 | 6394 | 12823 | 16266 | 21720 | 28276 | 36494 | 42625 | 53128 | 65698 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 3630 | 6397 | 12824 | 16267 | 22410 | 28279 | 36495 | 42634 | 53153 | 65699 |
| 3632 | 6398 | 12829 | 16269 | 22414 | 28280 | 36501 | 42635 | 53172 | 65706 |
| 3634 | 6399 | 12861 | 16270 | 22433 | 28283 | 36515 | 42637 | 53191 | 65767 |
| 3636 | 6400 | 12882 | 16271 | 22446 | 28285 | 36521 | 42640 | 53208 | 65804 |
| 3637 | 6401 | 12883 | 16272 | 22459 | 28291 | 38009 | 42647 | 53213 | 65806 |
| 3638 | 6402 | 12895 | 16273 | 22463 | 28296 | 38081 | 42650 | 53230 | 65873 |
| 3640 | 6403 | 12896 | 16275 | 22494 | 28300 | 38083 | 42679 | 53287 | 66078 |
| 3642 | 6406 | 12912 | 16276 | 22507 | 28303 | 38089 | 42680 | 53303 | 70221 |
| 3644 | 6408 | 12918 | 16278 | 22508 | 28305 | 38107 | 42689 | 53315 | 70284 |
| 3646 | 7930 | 12923 | 16279 | 22518 | 28314 | 38131 | 42697 | 53328 | 70689 |
| 3648 | 7931 | 12929 | 17291 | 25251 | 28315 | 38133 | 42702 | 53337 | 70776 |
| 3652 | 7933 | 12937 | 17295 | 25252 | 28319 | 38139 | 42705 | 53360 | 70873 |
| 3654 | 7934 | 12940 | 17297 | 25253 | 28323 | 38154 | 42706 | 53374 | 70880 |
| 3656 | 7937 | 12942 | 17299 | 25254 | 28333 | 38172 | 42707 | 53389 | 71140 |
| 3658 | 7938 | 12947 | 17309 | 25256 | 28335 | 38173 | 42709 | 53392 | 71157 |
| 3663 | 7940 | 12952 | 17310 | 25257 | 28343 | 38280 | 42723 | 53412 | 71170 |
| 3665 | 7943 | 12957 | 17318 | 25258 | 28345 | 38281 | 42725 | 53416 | 71258 |
| 3669 | 7944 | 12962 | 17321 | 25259 | 28351 | 38282 | 42736 | 53447 | 71261 |
| 3675 | 7945 | 12963 | 17325 | 25261 | 29580 | 38296 | 42738 | 53466 | 71311 |
| 3677 | 7952 | 12968 | 17327 | 25262 | 29581 | 38311 | 42744 | 53467 | 71350 |
| 3681 | 7957 | 12969 | 17334 | 25264 | 29583 | 38319 | 42746 | 53468 | 71409 |
| 3683 | 7963 | 12970 | 17335 | 25265 | 29586 | 38325 | 42756 | 53472 | 71414 |
| 3685 | 7964 | 12989 | 17336 | 25266 | 29587 | 38340 | 42761 | 53474 | 71490 |
| 3689 | 7968 | 12991 | 17337 | 25267 | 29588 | 38341 | 42768 | 53487 | 71568 |
| 3691 | 7972 | 12992 | 17343 | 25269 | 29592 | 38345 | 42792 | 53489 | 71579 |
| 3693 | 7975 | 12993 | 17346 | 25270 | 29594 | 38346 | 42796 | 53522 | 71654 |
| 3701 | 7981 | 13003 | 17347 | 25271 | 29596 | 38352 | 42817 | 53530 | 71786 |
| 3943 | 7989 | 13451 | 17348 | 25272 | 29597 | 38361 | 42819 | 53533 | 71822 |
| 3944 | 7993 | 14017 | 17349 | 25275 | 29600 | 38364 | 44476 | 53557 | 71824 |
| 3945 | 8001 | 14024 | 17350 | 25276 | 29603 | 38365 | 44511 | 53558 | 71886 |
| 3946 | 8003 | 14025 | 17351 | 25277 | 29606 | 38381 | 44512 | 53565 | 71904 |
| 3947 | 8005 | 14028 | 17352 | 25278 | 29613 | 38389 | 44518 | 53578 | 71909 |
| 3948 | 8008 | 14031 | 17353 | 25279 | 31921 | 38394 | 44550 | 53581 | 71985 |
| 3949 | 8012 | 14032 | 17356 | 25281 | 31927 | 38404 | 44573 | 56184 | 72008 |
| 3950 | 8013 | 14035 | 17357 | 25283 | 31930 | 38408 | 44610 | 56189 | 72035 |
| 3951 | 8595 | 14036 | 17359 | 25284 | 31961 | 38417 | 44614 | 56214 | 72076 |
| 3952 | 9153 | 14038 | 17931 | 25285 | 31976 | 38423 | 44654 | 56216 | 72106 |
| 3953 | 9162 | 14039 | 18782 | 25286 | 31988 | 38432 | 44700 | 56492 | 72111 |
| 3954 | 9193 | 14041 | 18787 | 25287 | 32052 | 38434 | 44730 | 56514 | 72129 |
| 3955 | 9228 | 14042 | 18788 | 25288 | 32061 | 38436 | 44844 | 56547 | 72142 |
| 3956 | 9229 | 15183 | 18820 | 25289 | 32071 | 38444 | 44857 | 56598 | 72145 |
| 3957 | 9230 | 15193 | 18826 | 25290 | 32114 | 38455 | 44873 | 56600 | 72177 |
| 3958 | 9231 | 15198 | 20615 | 25291 | 32136 | 38474 | 44884 | 56666 | 72192 |
| 3959 | 9235 | 15202 | 20624 | 25292 | 32140 | 40105 | 44914 | 56681 | 72233 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 4331 | 9237 | 15205 | 20647 | 25293 | 32141 | 40106 | 44946 | 56684 | 72312 |
| 4332 | 9240 | 15206 | 20659 | 25294 | 32158 | 40116 | 44998 | 56685 | 72365 |
| 4333 | 9272 | 15207 | 20667 | 25295 | 32160 | 40133 | 45006 | 56696 | 72390 |
| 4335 | 9276 | 15213 | 20682 | 25296 | 32163 | 40134 | 45044 | 56697 | 76263 |
| 4341 | 9278 | 15215 | 20685 | 25297 | 32164 | 40142 | 45058 | 56760 | 76284 |
| 4343 | 9324 | 15216 | 20708 | 25298 | 32165 | 40154 | 45064 | 56789 | 76330 |
| 4344 | 9331 | 15219 | 20714 | 25300 | 32206 | 40156 | 45082 | 56805 | 76377 |
| 4347 | 9361 | 15220 | 20725 | 25304 | 32223 | 40163 | 45087 | 56810 | 76632 |
| 4348 | 9363 | 15221 | 20747 | 25305 | 32230 | 40176 | 45088 | 56833 | 76708 |
| 4352 | 10227 | 15223 | 20760 | 25306 | 32255 | 40177 | 45092 | 57456 | 82969 |
| 4353 | 10231 | 15224 | 20768 | 25307 | 32270 | 40188 | 45095 | 57630 | 83136 |
| 4354 | 10232 | 15230 | 20770 | 25308 | 32290 | 40392 | 45103 | 57639 | 83195 |
| 4422 | 10235 | 15332 | 20779 | 25309 | 32307 | 40410 | 45109 | 57642 | 84975 |
| 4423 | 10242 | 15333 | 20781 | 25311 | 32336 | 40412 | 47687 | 60302 | 85019 |
| 4469 | 10243 | 15342 | 20782 | 27884 | 32344 | 40428 | 47729 | 60369 | 85034 |
| 4480 | 10246 | 15345 | 20784 | 27914 | 32353 | 40448 | 47745 | 60443 | 85142 |
| 4483 | 10259 | 15461 | 20790 | 27954 | 32384 | 40467 | 48013 | 60615 | 85171 |
| 4520 | 10260 | 15505 | 20812 | 27955 | 32389 | 40480 | 48028 | 60751 | 85291 |
| 4529 | 10261 | 15619 | 20825 | 27963 | 32392 | 40481 | 48035 | 60816 | 89625 |
| 4533 | 10269 | 15627 | 20839 | 27972 | 32403 | 40496 | 48057 | 60923 | 89784 |
| 4538 | 10368 | 15631 | 20850 | 27974 | 32404 | 40498 | 48059 | 61276 | 89830 |
| 4545 | 10374 | 15638 | 20863 | 28003 | 32412 | 40521 | 48060 | 61690 | 89904 |
| 4547 | 10508 | 15643 | 20872 | 28007 | 32427 | 40526 | 48087 | 61800 | 90742 |
| 4554 | 10992 | 15646 | 20876 | 28065 | 32430 | 40529 | 48089 | 61811 | 90828 |
| 4558 | 10993 | 15647 | 20879 | 28070 | 32431 | 40532 | 48093 | 61834 | 90873 |
| 4680 | 11017 | 15655 | 20882 | 28071 | 32432 | 40545 | 48094 | 61957 | 90942 |
| 4684 | 11023 | 15677 | 20892 | 28078 | 32434 | 40577 | 48099 | 61977 | 90991 |
| 4687 | 11029 | 15681 | 20916 | 28080 | 32436 | 40590 | 48104 | 61978 | 91123 |
| 4688 | 11031 | 15682 | 20939 | 28083 | 32442 | 40591 | 48107 | 62111 | 91134 |
| 4689 | 11034 | 15683 | 20940 | 28089 | 32443 | 40592 | 48113 | 62125 | 91280 |
| 4690 | 11035 | 15685 | 20968 | 28091 | 32453 | 40599 | 48427 | 62183 | 91293 |
| 4691 | 11042 | 15686 | 20973 | 28093 | 32461 | 40606 | 48441 | 63267 | 91411 |
| 4692 | 11043 | 15735 | 20980 | 28098 | 32468 | 40610 | 48446 | 63346 | 91427 |
| 4693 | 11055 | 15740 | 21002 | 28099 | 32479 | 40617 | 48451 | 63359 | 91699 |
| 4694 | 11061 | 15742 | 21010 | 28101 | 32481 | 40621 | 48454 | 63436 | 91894 |
| 4698 | 11068 | 15746 | 21018 | 28126 | 32492 | 40622 | 48467 | 63438 | 92118 |
| 4699 | 11071 | 15747 | 21039 | 28128 | 32510 | 40624 | 48480 | 63532 | 92640 |
| 4700 | 11075 | 15749 | 21046 | 28136 | 32515 | 40631 | 48490 | 63571 | 93558 |
| 4702 | 11076 | 15750 | 21053 | 28139 | 32528 | 40632 | 48491 | 63591 | 93736 |
| 4706 | 11077 | 15753 | 21056 | 28151 | 32529 | 40634 | 48492 | 63645 | 93990 |
| 4707 | 11080 | 15759 | 21149 | 28159 | 32543 | 40636 | 48498 | 63670 | 104710 |
| 4710 | 11088 | 16244 | 21161 | 28170 | 32559 | 42259 | 48500 | 63701 | |
| 4712 | 11093 | 16245 | 21174 | 28175 | 35156 | 42311 | 48501 | 63751 | |
| 4715 | 11101 | 16246 | 21202 | 28187 | 35157 | 42329 | 48505 | 63771 | |

| 4716 | 11103 | 16247 | 21212 | 28206 | 35163 | 42336 | 48506 | 63780 |
| 4723 | 11104 | 16248 | 21227 | 28210 | 35165 | 42355 | 48514 | 63791 |
| 4724 | 11105 | 16249 | 21272 | 28212 | 35169 | 42363 | 48520 | 63868 |

## Jenn Liakos Law Claimants

| 2073 | 16196 | 25189 | 34707 | 39078 | 50205 | 57242 | 58319 | 64052 | 78368 |
| 11874 | 16198 | 25192 | 34755 | 39095 | 50207 | 57252 | 58339 | 64135 | 78406 |
| 12035 | 16199 | 25196 | 34785 | 39122 | 50216 | 57380 | 58366 | 64964 | 78481 |
| 12048 | 16200 | 25324 | 34804 | 39151 | 50218 | 57381 | 58367 | 65043 | 78496 |
| 12058 | 16201 | 25326 | 34956 | 39554 | 50238 | 57411 | 58417 | 66432 | 78566 |
| 12062 | 16204 | 26702 | 34970 | 40955 | 50239 | 57413 | 58418 | 68044 | 78636 |
| 12068 | 16212 | 26704 | 34977 | 40962 | 50273 | 57445 | 58419 | 68175 | 78658 |
| 12089 | 16213 | 26709 | 34997 | 40966 | 50306 | 57477 | 58420 | 68193 | 78753 |
| 12108 | 16253 | 26722 | 35018 | 40968 | 50324 | 57484 | 58826 | 68239 | 82657 |
| 13208 | 16260 | 26764 | 35045 | 40973 | 50351 | 57513 | 59995 | 68298 | 82842 |
| 13798 | 16283 | 29669 | 35052 | 40979 | 50403 | 57547 | 60180 | 68316 | 82909 |
| 13799 | 16284 | 29680 | 35062 | 40987 | 50444 | 57563 | 60285 | 68410 | 82930 |
| 13890 | 16285 | 29704 | 35086 | 40988 | 50453 | 57568 | 60331 | 68418 | 82938 |
| 14107 | 19043 | 29754 | 35094 | 40996 | 50490 | 57592 | 60697 | 68663 | 83145 |
| 14128 | 19066 | 29791 | 35499 | 41010 | 50946 | 57612 | 60715 | 68716 | 83148 |
| 14129 | 19079 | 30646 | 35505 | 41038 | 51050 | 57647 | 60770 | 69618 | 83574 |
| 14178 | 19088 | 30648 | 35508 | 41055 | 51056 | 57664 | 60773 | 69700 | 83785 |
| 14179 | 19091 | 30651 | 35509 | 41076 | 54778 | 57674 | 60964 | 69759 | 83847 |
| 14180 | 19102 | 30668 | 35530 | 41089 | 54782 | 57683 | 61028 | 69804 | 83899 |
| 14182 | 19105 | 30677 | 35533 | 41095 | 54818 | 57705 | 61076 | 69831 | 84038 |
| 14183 | 19107 | 30724 | 35542 | 41129 | 54870 | 57720 | 61160 | 69955 | 84225 |
| 14184 | 19128 | 30838 | 35553 | 41155 | 54887 | 57802 | 61191 | 70001 | 85365 |
| 14185 | 19134 | 30873 | 35555 | 41202 | 54956 | 57812 | 61306 | 70034 | 87195 |
| 14186 | 20250 | 30963 | 35564 | 41237 | 54966 | 57827 | 61308 | 70099 | 88676 |
| 14188 | 20255 | 30990 | 35583 | 41264 | 54989 | 57838 | 61324 | 70116 | 88701 |
| 14189 | 20257 | 30994 | 35596 | 47201 | 55473 | 57849 | 61344 | 70250 | 88795 |
| 14190 | 20258 | 31066 | 35597 | 47596 | 55477 | 57976 | 61452 | 70330 | 88878 |
| 14191 | 20262 | 31103 | 35614 | 47818 | 55803 | 58015 | 61975 | 70418 | 88970 |
| 14191 | 20264 | 31122 | 35655 | 47969 | 56271 | 58029 | 61999 | 70534 | 89013 |
| 14193 | 20269 | 31163 | 36114 | 47973 | 56347 | 58034 | 62070 | 71916 | 89057 |
| 14194 | 20272 | 31199 | 36135 | 47978 | 56503 | 58041 | 62762 | 75223 | 90035 |
| 14195 | 20275 | 31226 | 38868 | 48154 | 56521 | 58067 | 62770 | 75260 | 90605 |
| 14197 | 20282 | 31245 | 38871 | 48220 | 56555 | 58112 | 62833 | 75366 | 90915 |
| 15484 | 20288 | 31285 | 38890 | 48320 | 56623 | 58133 | 62902 | 75458 | 92285 |
| 15489 | 20681 | 31384 | 38903 | 48993 | 56745 | 58154 | 63103 | 75473 | 114265 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 15501 | 20698 | 31403 | 38904 | 48994 | 56757 | 58179 | 63238 | 75616 | 114266 |
| 15511 | 20985 | 31409 | 38906 | 48995 | 56843 | 58211 | 63249 | 76744 | 114270 |
| 15539 | 21029 | 31962 | 38909 | 48996 | 56928 | 58221 | 63250 | 76823 | 114271 |
| 15575 | 21096 | 32015 | 38912 | 48997 | 56961 | 58235 | 63399 | 76843 | 114272 |
| 15585 | 24596 | 32125 | 38919 | 48998 | 56999 | 58240 | 63489 | 76929 | 114273 |
| 15590 | 24599 | 32134 | 38926 | 48999 | 57011 | 58259 | 63517 | 76981 | 114274 |
| 15594 | 24602 | 32162 | 38933 | 49000 | 57096 | 58284 | 63565 | 77003 | 114277 |
| 15787 | 24604 | 32464 | 38964 | 49001 | 57129 | 58285 | 63688 | 77032 | 114278 |
| 16192 | 24606 | 32607 | 38973 | 50182 | 57149 | 58299 | 63789 | 77128 | 155670 |
| 16193 | 24608 | 32624 | 38995 | 50187 | 57158 | 58300 | 63901 | 77215 | |
| 16194 | 24611 | 34606 | 39010 | 50195 | 57159 | 58316 | 63918 | 77562 | |
| 16195 | 25164 | 34654 | 39025 | 50200 | 57188 | 58318 | 63999 | 78131 | |

## Horowitz Law Claimants

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2561 | 24830 | 31754 | 36467 | 45742 | 49909 | 54825 | 60209 | 67334 | 86794 |
| 2563 | 24831 | 33974 | 36615 | 45744 | 49920 | 55092 | 60454 | 67335 | 86856 |
| 3361 | 25068 | 34509 | 36709 | 46086 | 49936 | 55150 | 60582 | 67675 | 86974 |
| 3442 | 25070 | 34611 | 36782 | 46567 | 49948 | 55200 | 60828 | 67705 | 87081 |
| 3546 | 25349 | 34836 | 36834 | 46916 | 49955 | 55848 | 60998 | 67976 | 87129 |
| 8843 | 25350 | 34862 | 37317 | 47106 | 49965 | 55850 | 61375 | 68139 | 87175 |
| 10109 | 25867 | 34904 | 37380 | 47136 | 49967 | 56200 | 61431 | 68154 | 87218 |
| 13981 | 25939 | 35384 | 37537 | 47160 | 49970 | 56201 | 61514 | 69621 | 88873 |
| 14130 | 25984 | 35385 | 37792 | 47212 | 50026 | 56614 | 62193 | 69762 | 88920 |
| 14181 | 26038 | 35387 | 38970 | 47953 | 50033 | 58311 | 62235 | 71685 | 89003 |
| 14192 | 26083 | 35412 | 39056 | 47970 | 50063 | 58359 | 62681 | 71926 | 89357 |
| 15357 | 26344 | 36041 | 39345 | 48091 | 50066 | 58361 | 62683 | 71987 | 89827 |
| 15770 | 26373 | 36046 | 40107 | 48106 | 50338 | 58369 | 63383 | 83182 | 90073 |
| 20345 | 26899 | 36049 | 40407 | 48153 | 50378 | 58372 | 63485 | 83259 | 90743 |
| 20530 | 26918 | 36072 | 40875 | 48163 | 50604 | 58730 | 63572 | 83387 | 91007 |
| 22481 | 26944 | 36078 | 40885 | 48164 | 51881 | 59091 | 63594 | 83412 | 91008 |
| 23402 | 27083 | 36079 | 40887 | 48165 | 52119 | 59309 | 63768 | 83483 | 91215 |
| 23439 | 27410 | 36422 | 41492 | 48169 | 52304 | 59450 | 63837 | 83578 | 91831 |
| 23481 | 28049 | 36426 | 41619 | 48173 | 52624 | 59458 | 63863 | 83870 | 92291 |
| 24250 | 28530 | 36429 | 41690 | 48174 | 52794 | 59631 | 64141 | 84230 | 92585 |
| 24300 | 29338 | 36435 | 43001 | 48175 | 52925 | 59668 | 64612 | 84265 | 93620 |
| 24350 | 29395 | 36437 | 43688 | 49784 | 53985 | 59813 | 65002 | 84512 | 96625 |
| 24416 | 30641 | 36438 | 43719 | 49799 | 54121 | 59930 | 65019 | 84916 | 96628 |
| 24825 | 30728 | 36440 | 44743 | 49890 | 54225 | 60037 | 65068 | 86132 | 96629 |
| 24826 | 30740 | 36442 | 45649 | 49898 | 54230 | 60040 | 67305 | 86299 | 96654 |
| 24829 | 31709 | 36444 | 45655 | 49903 | 54776 | 60082 | 67328 | 86507 | 118455 |

**Tamaki Law Offices, Law Office of Joseph B. Blumel III, and Fasy Law Claimants**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 36441 | 41333 | 43706 | 48816 | 48869 | 53505 | 55496 | 59323 | 59561 | 64792 |
| 36359 | 41342 | 43999 | 48825 | 48872 | 55112 | 55505 | 59331 | 59663 | 64822 |
| 36365 | 41355 | 44018 | 48833 | 48874 | 55138 | 57240 | 59333 | 59729 | 64829 |
| 36431 | 41365 | 44023 | 48835 | 48880 | 55141 | 57263 | 59360 | 60707 | 69070 |
| 36434 | 41371 | 44028 | 48839 | 48883 | 55153 | 57265 | 59365 | 61445 | 69084 |
| 36458 | 41377 | 48704 | 48848 | 48888 | 55156 | 57268 | 59366 | 61490 | 69101 |
| 36463 | 41384 | 48713 | 48849 | 48903 | 55183 | 57285 | 59371 | 61554 | 69105 |
| 41271 | 41394 | 48727 | 48850 | 48910 | 55192 | 57296 | 59406 | 62204 | 71178 |
| 41272 | 41404 | 48733 | 48851 | 51003 | 55217 | 57318 | 59410 | 63272 | 77238 |
| 41283 | 41408 | 48740 | 48853 | 51003 | 55225 | 57520 | 59419 | 63511 | 77255 |
| 41285 | 41416 | 48753 | 48854 | 53469 | 55228 | 58990 | 59431 | 63513 | |
| 41291 | 41417 | 48763 | 48857 | 53473 | 55232 | 59238 | 59440 | 63578 | |
| 41297 | 41426 | 48764 | 48858 | 53477 | 55276 | 59240 | 59442 | 63583 | |
| 41300 | 41430 | 48773 | 48860 | 53484 | 55277 | 59259 | 59457 | 63596 | |
| 41301 | 41435 | 48778 | 48861 | 53486 | 55284 | 59271 | 59459 | 64327 | |
| 41310 | 41443 | 48796 | 48865 | 53488 | 55304 | 59301 | 59476 | 64731 | |
| 41313 | 41460 | 48797 | 48867 | 53503 | 55334 | 59307 | 59528 | 64759 | |
| 41319 | 41539 | 48799 | 48868 | 53504 | 55357 | 59315 | 59536 | 64776 | |

**Aylstock, Witkin, Kreis & Overholtz Claimants**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 106668 | 106681 | 106927 | 106943 | 107252 | 107267 | 107280 | 107415 | 107431 | 107443 |
| 106669 | 106684 | 106929 | 106944 | 107253 | 107268 | 107281 | 107416 | 107432 | 117770 |
| 106670 | 106685 | 106930 | 106945 | 107255 | 107269 | 107282 | 107420 | 107433 | 118577 |
| 106672 | 106686 | 106931 | 106946 | 107256 | 107270 | 107402 | 107421 | 107434 | 118580 |
| 106673 | 106687 | 106932 | 106947 | 107257 | 107271 | 107403 | 107422 | 107435 | |
| 106674 | 106688 | 106934 | 106949 | 107258 | 107272 | 107405 | 107423 | 107436 | |
| 106675 | 106689 | 106937 | 106951 | 107259 | 107273 | 107407 | 107424 | 107437 | |
| 106676 | 106690 | 106938 | 106952 | 107260 | 107274 | 107408 | 107425 | 107438 | |
| 106677 | 106691 | 106939 | 106955 | 107262 | 107276 | 107409 | 107426 | 107439 | |
| 106678 | 106692 | 106940 | 106956 | 107263 | 107277 | 107410 | 107427 | 107440 | |
| 106679 | 106925 | 106941 | 107250 | 107264 | 107278 | 107412 | 107428 | 107441 | |
| 106680 | 106926 | 106942 | 107251 | 107265 | 107279 | 107414 | 107430 | 107442 | |

**Dumas & Vaughn Claimants**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 17941 | 29655 | 44934 | 51702 | 104761 | 104770 | 105063 | 105071 | 105810 | 110048 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 18072 | 39538 | 44937 | 51733 | 104762 | 104771 | 105064 | 105072 | 105811 |
| 18773 | 40722 | 45063 | 52861 | 104765 | 104772 | 105065 | 105073 | 105813 |
| 18838 | 41448 | 46398 | 54709 | 104766 | 105016 | 105066 | 105106 | 105814 |
| 21530 | 42603 | 46721 | 55175 | 104767 | 105017 | 105068 | 105107 | 105815 |
| 24322 | 44159 | 48079 | 56947 | 104768 | 105020 | 105069 | 105108 | 105816 |
| 26054 | 44222 | 51220 | 90485 | 104769 | 105022 | 105070 | 105809 | 105945 |

### Spagnoletti Law Firm and Boucher LLP Claimants

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 30958 | 44134 | 52199 | 58894 | 64622 | 92162 | 94045 | 96409 | 106006 | 106016 |
| 32209 | 44386 | 54663 | 58896 | 65086 | 93256 | 94156 | 96481 | 106008 | 106023 |
| 32264 | 44986 | 54766 | 60201 | 68468 | 93702 | 94297 | 96733 | 106010 | 106024 |
| 37613 | 44986 | 54892 | 60513 | 69346 | 93712 | 95904 | 96952 | 106011 | 106025 |
| 37670 | 46151 | 55124 | 63773 | 71090 | 93744 | 96357 | 103322 | 106012 | 106027 |
| 37950 | 47852 | 57523 | 64537 | 90674 | 94036 | 96389 | 106005 | 106013 | |

### Linder, Sattler & Rogowsky Claimants

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 76617 | 25170 | 48718 | 53810 | 64688 | 69328 | 75490 | 77583 | 84740 |
| 3345 | 25215 | 49788 | 53839 | 66010 | 69806 | 75677 | 81992 | 84878 |
| 19265 | 45193 | 50417 | 53959 | 66208 | 70561 | 75807 | 83058 | 89321 |
| 20173 | 45386 | 50466 | 56524 | 67934 | 71465 | 75974 | 83243 | 90240 |
| 25005 | 45401 | 53728 | 57714 | 68309 | 71678 | 76374 | 83566 | 92848 |
| 25011 | 48536 | 53753 | 62291 | 68888 | 71701 | 76775 | 84643 | 102605 |

### Manly, Stewart & Finaldi Claimants

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11036 | 34317 | 42326 | 44641 | 51924 | 53438 | 56181 | 65879 | 71844 | 82831 |
| 29483 | 38293 | 42390 | 46583 | 52909 | 53455 | 63879 | 67226 | 73245 | 82847 |
| 29496 | 40167 | 42405 | 46618 | 53424 | 53460 | 65578 | 67245 | 82798 | |
| 29498 | 41605 | 42929 | 51638 | 53428 | 55749 | 65871 | 68689 | 82807 | |

### Green & Gillispie Claimants

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11482 | 39438 | 44270 | 52205 | 62035 | 62069 | 63766 | 63850 | 87491 | 117865 |
| 39351 | 42128 | 44295 | 52324 | 62036 | 62075 | 63787 | 65157 | 91441 | |
| 39428 | 42553 | 47857 | 57425 | 62063 | 62084 | 63794 | 77629 | 117820 | |

### Chasan & Walton Claimants

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1979 | 44159 | 44937 | 46721 | 105064 | 105066 | 105069 | 105072 | 112891 |

| 42603 | 44222 | 45063 | 56947 | 105065 | 105068 | 105070 | 105073 | 118407 |
|---|---|---|---|---|---|---|---|---|

### Silver Golub & Teitell Claimants

| 199 | 4329 | 4974 | 9241 | 22105 | 25629 | 48746 | 69312 | 108887 | 112598 |
|---|---|---|---|---|---|---|---|---|---|

### Betti & Associates Claimants

| 112901 | 112898 | 112900 | 112899 | 112894 |
|---|---|---|---|---|

### Law Offices of Anthony M. Demarco Claimant

| 94049 |
|---|

### Law Office of Kirk C. Davis Claimant

| 39608 |
|---|