**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BOY SCOUTS OF AMERICA AND | ) | Case No. 20-10343 (LSS) |
| DELAWARE BSA, LLC, | ) | |
| | ) | Jointly Administered |
| | ) | |
| | ) | **PUBLIC VERSION** |
| | ) | **FILED: AUGUST 9, 2021** |
| Debtors[1]. | ) | |
| | ) | Re: Docket No. 5902 |

**VERIFIED STATEMENT OF KOSNOFF LAW, PLLC**
**PURSUANT TO RULE OF BANKRUPTCY PROCEDURE 2019**

Pursuant to Rule 2019 of the Rules of Bankruptcy Procedure and the Court's order dated August 9, 2021 (Docket No. 5902), Kosnoff Law, PLLC ("Kosnoff Law"), hereby submits this verified statement in the Chapter 11 cases of the above-captioned debtors and, in support thereof, states:

1.        Kosnoff Law is a law firm established by Timothy Kosnoff.  Mr. Kosnoff has been a licensed attorney since 1980.  He has been admitted to the bars of Illinois, Washington and Oregon and remains a licensed active attorney in good standing in the State of Washington.  He chose to enter inactive status in Oregon and Illinois.

2.        Mr. Kosnoff has represented child sexual abuse victims in civil litigation since 1996 against the Boy Scouts of America ("BSA"), the Mormon Church, Jehovah's Witness Church and other church and secular organizations involved in the congregate care of children.  Mr. Kosnoff has directed particular focus on the BSA, because he obtained the only unredacted set of the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Ineligible Volunteer Files outside the BSA organization.  He devoted years reading through approximately 3,200 files and, together with a Kosnoff Law staff member, abstracted the information onto spreadsheets. That work product was eventually shared with the Los Angeles Times and resulted in an investigative exposé on abuse in scouting in 2012.

3.    In 2014, Mr. Kosnoff decided to wind down his law practice and proceed toward retirement.  He bought a sailboat and moved from Seattle to Puerto Rico, where he resided on his boat.  Mr. Kosnoff utilized a mail forwarding service based in Houston, Texas to accommodate his sailing travels throughout the Caribbean.  Contrary to the Insurers' suggestions, Mr. Kosnoff has never represented that he was admitted to the Texas bar.  Between 2014 and 2018, Kosnoff Law wound down its cases and stopped taking on new cases.  Mr. Kosnoff's goal was to retire from the traditional, active practice of law, but to use his legal experience in other ways, such as consulting, writing, advocating for reform of sex predator-friendly statutes of limitations, mediating and potentially volunteering to serve as a judge *pro tem*.

4.    In late 2018, Mr. Kosnoff read an article in the Wall Street Journal reporting on a leaked BSA email that referenced hundreds of sexual abuse law suits against the organization.  The article reported that BSA was considering entering bankruptcy under Chapter 11.  Mr. Kosnoff immediately realized that BSA intended to discharge in bankruptcy what he estimated to be the claims of at least one million living survivors of abuse in scouting.

5.    In early 2019, Mr. Kosnoff approached Stewart Eisenberg, a Philadelphia-based personal injury attorney with whom he had successfully worked on a prior BSA sexual abuse case.  Mr. Kosnoff explained his concerns that perhaps hundreds of thousands of men would lose their legal rights forever if BSA were able to rush through a pre-packaged bankruptcy with a few attorneys with pending lawsuits against BSA.  Mr. Kosnoff expressed to Mr. Eisenberg that they

had to "do something," but he did not yet have a clear idea of how to inform the enormous number of victims that their rights were in jeopardy. Kosnoff Law had represented many sexual abuse clients, but had never been involved in mass tort litigation or television advertising. Mr. Eisenberg had some familiarity with television advertising and suggested a discussion with AVA Law Group ("AVA") founder, Andrew Van Arsdale. Mr. Kosnoff understood that AVA had a niche law practice that focused on producing television spots in various types of injury and product liability cases.

6.     Following those discussions, Mr. Kosnoff decided to un-retire from the practice of law. Kosnoff Law, Eisenberg Rothweiler and AVA agreed to associate for the purposes of reaching out to those abused in scouting, informing them of BSA's intention to extinguish their legal rights through bankruptcy and offering legal representation. The three firms agreed that any fees that the three firms eventually recovered would be divided according to agreed-upon percentages.

7.     Before agreeing to associate with Eisenberg Rothweiler and AVA, Kosnoff Law purchased a URL called AbusedinScouting.com. The three firms chose to use the term "Abused in Scouting" as a shorthand name for the three firms' efforts to inform the Debtors' victims of what was occurring and to offer their services.

8.     The three firms agreed that Kosnoff Law and Eisenberg Rothweiler would fund the group's initial purchases of television advertising. Mr. Kosnoff personally funded Kosnoff Law's share of those expenses with his retirement savings. Neither Kosnoff Law nor Mr. Kosnoff ever borrowed any money for the advertising campaign and no bank, hedge fund or other lender has any claim to any fees that Kosnoff Law may eventually recover.

9.    One additional -- and critical -- agreement among the three firms from the outset of their cooperative effort stemmed from a demand made by Mr. Kosnoff.  Mr. Kosnoff insisted -- and predicated his participation in the co-counsel arrangement -- on an agreement by the three participants to two bedrock principles:

(1) The three firms would oppose any settlement that distributes money to clients based on the accident of geography or caprice of insurance coverage periods.  That is, if a client had been abused in a non-window state, his claim would not be reduced on statute of limitations grounds.  Rather, each victim's claim should be evaluated based on the abuse he experienced and the damages he sustained.  Similarly, a victim who was abused in a year where insurance happens to be exhausted or the insurer is insolvent, his claims would be unaffected.

(2) The three firms would never accept the use of a master ballot. Each client would vote his own ballot.

10.    Both Eisenberg Rothweiler and AVA have expressed support for a Restructuring Support Agreement currently before the Court that betrays those foundational principles of AIS. Kosnoff Law repudiates their actions in support of that Agreement.

11.    For the first 18 months of their co-counsel relationship, the three firms remained fully aligned.  The three firms worked closely together crafting the first television advertisement, which aired in February or March 2019.  While that advertising effort slowly developed, Mr. Kosnoff reached out to men who had contacted Kosnoff Law years earlier seeking representation, but whose cases the firm had declined due to statute of limitations issues.  Since several states had opened retroactive revival window laws, there was a potential path to justice for those men.  Most of those whom Mr. Kosnoff contacted were delighted that they might have a chance for justice and

signed fee agreements with the three law firms. Those fee agreements clearly spelled out the nature and scope of the co-counsel arrangement and the fee division arrangements, consistent with the firms' ethical obligations.

12.    By August 2019, the three firms jointly represented over 800 clients with claims against BSA.  Client intake processes were handled primarily by staff at AVA.  The staff consisted of skilled, experienced paralegals and legal assistants who had been trained specifically to handle BSA claims.   AVA employed a multi-tiered internal vetting process in which Mr. Kosnoff participated.  For example, Mr. Kosnoff personally reviewed approximately 5,000 claimant intake files with the intention of identifying claims that were not credible.  By June 2020, new claims were arriving in volumes that Mr. Kosnoff could not keep up with.  He had largely dismantled Kosnoff Law and lacked associates and other staff to assist him. Accordingly, Kosnoff Law and Mr. Kosnoff began to rely on AVA and Eisenberg Rothweiler attorneys and other staff to handle follow-up and vetting for many of the incoming claims.

13.    The three firms' efforts eventually drew the attention of lawyers serially involved in various mass torts.  Soon, law firms without any relevant experience representing child sexual abuse victims began running copycat advertising campaigns on television and the Internet.

14.    In June 2020, after the BSA entered bankruptcy, Mr. Kosnoff became extremely frustrated with the Official Committee of Tort Claimants ("TCC") and its counsel, James Stang. Even though the three firms that used the term Abused in Scouting represented the great majority of claimants in the case, they had only one client on the official committee and their voice -- and bedrock principles -- were ignored.  Mr. Kosnoff's frustrations reached their height when the TCC rejected the AIS position that the TCC hire litigation counsel and seek permission to bring an adversary proceeding seeking to substantively consolidate the local council assets into the Debtors'

estate.  That issue precipitated Mr. Kosnoff's confidential email that he inadvertently sent as a "reply-all," which Mr. Stang inappropriately placed into the official record in this case in a fit of pique.

15.    At that point in time, the Coalition did not yet exist.  Mr. Kosnoff's reference in his email to a coalition was to AVA, Eisenberg Rothweiler and two other law firms that were equally dissatisfied with the TCC and its counsel. That group was merely the coalition of the dissatisfied and withdrew from representation of the client committee member and ceased any further participation in the TCC.

16.    By August 2020, it was clear that there were many other law firms that were equally dissatisfied with the TCC.  It was suggested that the group form an *ad hoc* committee and hire counsel. Thus was the origin of the Coalition for Justice and its retention of Brown Rudnick.  Soon thereafter, Kosnoff Law and AVA became disenchanted with the direction the Coalition had adopted and, therefore, withdrew in September 2020.  It was later revealed that Mr. Stang and Century's attorney, Tancred Schiavoni, agreed to withdraw their objections to the Coalition becoming a mediation party if Kosnoff Law and AVA were excluded from participation.

17.    Meanwhile, Kosnoff Law remained focused on the approaching bar date and the enormous task of ensuring that proofs of claim were processed and filed appropriately and timely. Mr. Kosnoff reviewed and signed several hundred proofs of claim, while the review and signing process was handled primarily through AVA and Eisenberg Rothweiler lawyers. In one instance, a law firm that had associated with the three law firms on some cases, asked if it could affix Mr. Kosnoff's signature to a single proof of claim. After Mr. Kosnoff agreed, that firm digitally signed his name to dozens more proofs of claim, without Mr. Kosnoff's knowledge or permission.

18.     In late November 2020, Mr. Kosnoff urged Eisenberg Rothweiler to follow Kosnoff

Law and AVA in withdrawing from the Coalition, but the firm refused to do so.  Mr. Kosnoff has

had no other direct communication with Eisenberg Rothweiler since December 2020.

19.     The three law firms have always communicated with clients primarily by telephone

and email.  The communications have generally been transmitted through AVA.  In addition, Mr.

Kosnoff reactivated his Twitter account as a means to express his views of the BSA bankruptcy

proceedings to anyone interested.

20.     In the spring of 2021, numerous claimants expressed that they had reached the

boiling point over the failure of the bankruptcy case to make any progress.  Mr. Kosnoff and Mr.

Van Arsdale decided to inform the three firms' clients that if they wanted to express their concerns,

they should feel free to address letters to the Court.  Kosnoff Law had no other input into any effort

to encourage clients to write to the Court.  Much to Kosnoff Law's surprise, more than a thousand

clients took advantage of the opportunity to express their views in that manner.

21.     The letters fed a deep need for these men that no one else had offered. They wanted

their stories to be heard and acknowledged, particularly by the judge who had expressed, in the

victims' view, apparent bias against them and in favor of BSA with comments such as "restoring

the mission of the BSA is paramount" and other comments about her concern for the current

members of scouting not getting their merit badges or Eagle award if BSA failed. Those judicial

comments were not received well by many victims, thus motivating them to write to the Court.

22.     Attached as <u>Exhibit A</u> is a list of all clients that Kosnoff Law co-represents in these

Chapter 11 cases (the "Abuse Victims").  As required by Rule 2019(c)(2)(A), names, addresses

and claim numbers are supplied for each Abuse Victim.  Personally Identifiable Information has

been provided to Permitted Parties (as defined in the Bar Date Order) entitled to receive Personally

Identifiable Information thereunder and subject to the confidentiality restrictions set forth in the Bar Date Order.  In addition, the Law Firms are permitted, but not required, in their sole and absolute discretion, to provide access to Personally Identifiable Information to a party to the *Order Approving Confidentiality and Protective Order* [D.I. 799] (the "Protective Order"), so long as such access to Personally Identifiable Information is subject to designation as "Committee Advisor Only" pursuant to the terms of the Protective Order. Detailed information regarding the Abuse Claims has been provided to Permitted Parties through access to the Proofs of Claim.  Accordingly, a summary of the incident data for each Abuse Victim is not attached hereto as it is cumbersome and access to the Proofs of Claim provides the required details in a more readable fashion.

23.    Each Abuse Victim listed in <u>Exhibit A</u> holds an unliquidated sexual abuse tort claim against the Debtors.  Additional claims against the Debtors may include, but are not necessarily limited to, unsecured claims and administrative claims.  The unliquidated nature of these tort claims disallows disclosure of a specific "amount" of each Abuse Victim's disclosable economic interest.

24.    Kosnoff Law represents 15,103 Abuse Victims.  Of that group, 3,054 are also members of the Coalition.

25.    Each of the Abuse Victims has employed Kosnoff Law under a signed engagement letter with all three law firms.  The signed engagement letter authorizes the three law firms to act on behalf of each of the Abuse Victims as it relates to their sexual abuse tort claims.  A blank exemplar of the engagement letter is attached as <u>Exhibit B</u>.

26.    Attached as <u>Exhibit C</u> is a declaration executed by Mr. Kosnoff, who has authority to act for Kosnoff Law, verifying the accuracy and truthfulness of the information contained in this Statement and the exhibits hereto.

27.    Nothing in this Statement should be construed as (i) a waiver or release of any claims filed or to be filed against, or interests in, the Debtors held by any of the Abuse Victims represented by Kosnoff Law, or (ii) a limitation upon, or waiver of, any Abuse Victim's rights to assert, file and/or amend his or her claim in accordance with applicable law and any orders entered in these cases establishing procedures for filing proofs of claim.

28.    Other than as disclosed herein, Kosnoff Law does not represent or purport to represent any other entities with respect to these Chapter 11 cases.  In addition, Kosnoff Law and the Abuse Victims it represents do not purport to act, represent or speak on behalf of AIS or any other entity or entities in connection with these Chapter 11 cases.

29.    Kosnoff Law reserves the right to amend or supplement this Statement as necessary in accordance with Rule 2019.

30.    The information contained in this Statement is intended only to comply with Rule 2019 and is not intended for any other use or purpose.

Respectfully submitted,

**WILKS LAW, LLC**

  /s/ David E. Wilks
David E. Wilks (DE No. 2793)
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Telephone: 302-225-0850
Facsimile:  302-225-0851
Email: dwilks@wilks.law
*Attorneys for Kosnoff Law, PLLC*

Dated:  August 9, 2021