**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**MOVING INSURERS' MOTION TO COMPEL**
**AND FOR ADDITIONAL RELIEF AND IN THE**
**ALTERNATIVE MOTION IN LIMINE**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

    The Mediation Order ..................................................................................... 3

    The July 27 Hearing ....................................................................................... 4

    The Aftermath of the July 27 Hearing ............................................................ 5

ARGUMENT ...................................................................................................... 8

    I.     THE AT-ISSUE WAIVER DOCTRINE REQUIRES THE DOCUMENTS WITHHELD BY THE DEBTORS BE PRODUCED ..................................................................... 8

    II.    BECAUSE DELAWARE COURTS DISFAVOR THE TACTICS EMPLOYED BY THE DEBTORS, TESTIMONY REGARDING SUBJECTS WHERE FULL AND FAIR DISCOVERY WAS NOT PERMITTED SHOULD BE EXCLUDED ................................. 10

        A.    *Materials Available in Moving Papers May Not Be Withheld for Reply* ................................................... 10

        B.    *The Desai Declaration and Supplemental Whittman Declaration Do Not Respond to Anything "New"* ....................... 12

        C.    *Moving Insurers Moved Promptly As Soon As They Learned the Debtors Would Submit a Surprise Declaration* ....... 17

CONCLUSION .................................................................................................. 18

FED. R. CIV. P. 37(A)(1) CERTIFICATION ........................................................... 18

The Moving Insurers identified in the signature blocks below respectfully request the Court's assistance in resolving disputes concerning the continuing deficiencies in Debtors' document productions in connection with the *Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5466] (the "RSA Motion").   Specifically, Debtors continue to fail to produce relevant unredacted documents that should have been produced weeks ago.  The Moving Insurers respectfully request that the Court require Debtors to unredact and produce the withheld or redacted documents to-date, to produce a detailed privilege log to the extent that one is necessary, and to direct Debtors to make their witnesses available after the documents are produced, but prior to the hearing on the RSA motion.  In addition, Debtors should not be permitted to offer testimony based on, or related to, the reply affidavits that they submitted, which concern matters Debtors could and should have addressed in its moving papers.

Alternatively, the Moving Insurers request that the Court require Debtors and the other RSA parties to make their case with the limited record they made available in their initial production.  Doing so would be entirely fair as this is the same record insurers had to "live with" when deposing Debtors' witnesses and drafting their objections.

## PRELIMINARY STATEMENT

As the Court will recall, in connection with the RSA Motion, Debtors request that this Court make factual findings, including:

(1) the RSA Parties were "engaged in extensive arm's-length negotiations";

(2) certain RSA Parties have engaged in extensive arm's length negotiations through mediation or otherwise regarding the settlement of certain litigation;

(3) the RSA itself "was negotiated at arm's length, in good faith";

1

(4) the Debtors undertook "a thorough, independent review of the RSA Parties' respective rights and obligations under the RSA"; and

(5) the Debtors, "in the valid exercise of their business judgment," have concluded "that entry into the RSA is in the best interests of the Debtors' estates and their creditors."

*See, e.g.*, Revised Proposed Order on RSA Motion ¶¶ A-D [D.I. 5769-1].[2]  In other words, Debtors put directly at issue the process by which the RSA was negotiated, as well as the advice upon which Debtors relied in deciding to enter into it.

Debtors' co-parties to the RSA Motion agree that the facts allegedly supporting these findings are directly at issue and should be litigated in this Court.  In their reply in support of the RSA, the claimants' representatives assert unequivocally that this Court can confirm the Fourth Amended Plan even though it is unabashedly *not* insurance neutral, and that it is appropriate for the Court to enter factual findings that the RSA, the Plan and the TDPs are reasonable and were negotiated in good faith.  *See Supplemental Brief of the Coalition of Abused Scouts for Justice, the Official Committee of Tort Claimants, and the Future Claims Representative in Support of Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5760] ¶ 54 (Defenses "involving the Debtors' conduct in negotiating a settlement with the Abuse Claimants or the reasonableness of the TDP – are appropriately litigated once, in this Court.").

Yet, Debtors continue to refuse to permit the Moving Insurers any meaningful discovery of documents that shed light on these issues.  ███████████████████████

---

[2]    In support of the RSA Motion, Debtors submitted evidence, in the form of the declarations of Roger C. Mosby and Brian Whittman, stating that Debtors exercised their business judgment based on the advice they received from their advisors, including counsel.  *See, e.g., Declaration of Roger C. Mosby* ¶¶ 2, 5 [D.I. 5469]; *Declaration of Brian Whittman* ¶ 9 ("The RSA is the result of good faith, arm's length negotiations and Court-ordered mediation regarding the terms of a plan of reorganization in which I have extensively participated."). [D.I. 5470].

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Debtors cannot have it both ways.  Because Debtors have placed the validity of these assertions squarely at issue, the Moving Insurers are entitled to test them, and Debtors cannot now shield those documents and communications from discovery.  By way of example, Debtors cannot say that the provisions of the RSA requiring this Court, as a condition to confirmation, to make various anti-insurer findings were negotiated at arms' length and in good faith – rather than simply being imposed on Debtors by the TCC, Coalition and FCR – and, at the same time, preclude the Moving Insurers from seeing the documents, and taking deposition discovery, necessary to see if that finding would be supported by the evidence.  Further, Debtors should not be permitted to submit the Declaration of Devang Desai (the "Desai Declaration") [D.I. 5958] and the Supplemental Declaration of Brian Whittman (the "Supplemental Whittman Declaration") [D.I. 5766] – both submitted *after* the RSA objection deadline – in an attempt to duct-tape the record where Debtors have continuously refused access to the underlying documents alluded to therein.

## STATEMENT OF FACTS

### *The Mediation Order*

Debtors routinely raise the specter of mediation privilege in response to almost any request for the documents that the Moving Insurers seek.  But this is particularly misplaced in this context given the assertion in the RSA Motion – and the claimants' admission in their supplemental brief on reply – that they are seeking a good faith finding that will be used in subsequent coverage

---

3    A copy of BSA's categorical "log" is attached as Exhibit A to the Declaration of Erin R. Fay ("Fay Decl.") filed in support of this motion.

litigation.    The Court's *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief* [D.I. 812] expressly **preserves** the ability of parties to seek discovery concerning any good faith finding.    *See* Order ¶ 7 ("[I]f a Party puts at issue any good faith finding concerning the Mediation in any subsequent action concerning insurance coverage, the Parties' right to seek discovery, if any, is preserved.").    Here, of course, the claimants have made no secret of their desire to obtain a good faith finding for exactly that purpose.    *See Supplemental Brief of the Coalition of Abused Scouts For Justice, The Official Committee of Tort Claimants, and the Future Claims Representative in Support of, Debtors' Motion for Entry of an Order, Pursuant to Section 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5760] ¶¶ 53-54.

### *The July 27 Hearing*

At the July 27, 2021 discovery conference, this Court recognized that discovery of the parties' negotiation of, and entrance into, the RSA was "fair game" and that Debtors' blanket assertions of privilege were – at best – overbroad:

> [O]n the surface it would seem to me that board resolutions with respect to the RSA, presentations with respect to the board's consideration of the RSA, board minutes with respect to the resolution of the RSA are all fair game and not part of mediation privilege. . . . If the particular documents, I suppose, contain communications that only took place in connection with mediation then perhaps some portion of those documents could be redacted.    But providing – but mediation doesn't cloak discovery and information that is, otherwise, discoverable just because you also put it into the mediation process or communicated information you have to the mediator or other parties.    So I am concerned that the mediation privilege may have been too broadly construed.    Again, I haven't seen a document so I don't know, but intuitively those types of documents don't seem to me to fall within the mediation privilege and it would seem to me are very relevant to the issues before the court which the parties have framed is, at least, the debtors' business judgment. . . . So I think its fair game.    What did the debtor consider?    When did they consider it?

What did they decide?  What did they not consider?  All fair game. [4]

The Court further indicated it intended to proceed with the RSA hearing and that, to the extent Debtors had precluded witnesses from testifying concerning the basis of their opinions, the Court would be "unlikely to hear that testimony."[5]

### The Aftermath of the July 27 Hearing

In an attempt to avoid the impact of the Court's July 27 ruling, Debtors updated the Court on July 29, 2021 that it had offered to reproduce their witnesses and that they had "focus[ed] on [the Court's] observations about the import of certain categories of documents," "re-reviewed certain documents," and "made a decision to try to get some more documents out in order to resolve any lingering dispute."[6]  The Moving Insurers want to complete the depositions of witnesses that were not permitted to testify to material facts in the first go-round, but those depositions should not occur until after Debtors have made a full and fair document production so that witnesses do not need to be produced a third time and the RSA Motion hearing can proceed on the current schedule.

But Debtors still have not produced the relevant documents and communications despite its most recent piecemeal production of new volumes of documents from July 31 to August 2. Rather than providing unredacted documents that are responsive to the questions that the Court identified at the July 27 conference, ████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████  The documents produced over the weekend

---

[4]    *See* July 27, 2021 Hr'g Tr. at 24:11-25:10 (Fay Decl., Exhibit B).

[5]    *See id.* at 25:11-15.  As the Court is aware, the Moving Insurers were prepared to proceed with the RSA Hearing as scheduled for July 29, 2021, but the hearing was continued until August 12 because the RSA parties had failed to negotiate an extension to the RSA, which was set to expire.

[6]    *See* July 29, 2021 Hr'g Tr. at 19:12-18 (Fay Decl., Exhibit C).

make up *almost 80%* of the **total** production of documents made by Debtors thus far, and *almost*

*50%* of them are placeholders for documents **withheld completely**.  Of the remaining documents,

Debtors' redactions appear ███████████████████████████████ ███████ █████████

████████████████████████████



These   redactions   are   particularly   inappropriate   because   ████████████████

---

7   ████████████████████████████████████████████████████████████████████████████████

*See* Deposition Transcript of Roger C. Mosby (Jul. 15, 2021) at 15:14-18:15 (Fay Decl., Exhibit D).

8   *See* July 12, July 26, and August 1 versions of the June 13, 2021 Bankruptcy Task Force meeting minutes at BSA-RSA_00000814-BSA-RSA_00000816 (Fay Decl., Exhibit E).

9   *See* July 12, July 26, and August 1 versions of the May 14, 2021 National Executive Committee meeting minutes at BSA-RSA_00000806-BSA-RSA_00000808 (Fay Decl., Exhibit F).



The selective nature of Debtors' disclosures is apparent throughout their recent productions. In support of Debtors' contention that the RSA was heavily negotiated, ██████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████████████████████ Debtors have declined to produce (or even identify) the attachments – instead Debtors simply produced 280 "slipsheets" suggesting that the documents were being withheld. ████████████████ ██████████████████████████████████████████ [12] Debtors have placed those documents directly at issue by asserting that it negotiated the RSA and its appurtenant documents, and the claimants have underscored their relevance by insisting on factual findings that the RSA, the Plan, the TDP and other documents are reasonable and made in good faith. Debtors cannot refuse to produce them.

And, in many instances, Debtors have redacted communications and withheld documents

---

[10]  *See id.*

[11]  *See, e.g.*, June 29, 2021 e-mail from S. McGowan to D. Ownby, et al. at BSA-RSA_00001343 (Fay Decl., Exhibit G).

[12]  ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████ *See* May 17, 2021 e-mail from D. Hunt to R. Mosby at BSA-RSA_00000986 (Fay Decl., Exhibit H).

███████████████████████████████████████████

███████████████████████████████████████████

████████████████ ▪ ██████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

In other places, there is no indication at all as to why materials are being redacted or

withheld. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████ ▪ ███████████████████████████████

██████████████████████████ Other documents, such as handwritten notes that are also

heavily redacted, similarly do not have any identified basis for the assertion of privilege.[15]

## ARGUMENT

## I.    THE AT-ISSUE WAIVER DOCTRINE REQUIRES THE DOCUMENTS WITHHELD BY THE DEBTORS BE PRODUCED

Delaware courts have consistently recognized that, under the "at issue" doctrine, a party,

like Debtors, cannot have it both ways.  Rather, principles of waiver and fundamental fairness

---

[13]  *See* June 5, 2021 e-mail from E. Goodman to M. Andolina, J. Lauria, M. Linder at BSA-RSA_00001376-BSA-RSA_00001378 (Fay Decl., Exhibit I).

[14]  *See* August 1 version of the April 26, 2021 National Executive Committee Special Meeting minutes at BSA-RSA_00000758 (Fay Decl., Exhibit J).

[15]  *See, e.g.,* Handwritten Notes at BSA-RSA_00002086-BSA-RSA_00002110 (Fay Decl., Exhibit K) and BSA-RSA_00002044-BSA-RSA_00002085 (Fay Decl., Exhibit L).

preclude Debtors from asserting privilege in this context. *See In re Welded Constr., L.P.*, No. 18-12378, 2021 WL 537406, at *3, 6 (Bankr. D. Del. Feb. 15, 2021) ("Defendants cannot use OGCS's report as both a sword and a shield – Defendants cannot place the Audit at issue and claim that the Audit 'revealed wrongdoing' and then not give Welded the requisite information to test the validity of those statements."); *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("'You can't have it both ways.' Having chosen to use the information offensively, any privilege Pharmacia might have claimed to defend the information from disclosure is, and remains, waived."); *see also In re Unitrin, Inc. Shareholders Litig.*, Civ. A. 13656, 1994 WL 507859, at *3 (Del. Ch. Sept. 7, 1994) ("Defendants have introduced into the record the actual advice given to them on the antitrust issue, presumably to bolster their argument that the board acted on an informed basis. . . . [I]t would be unfair to allow defendants to select those parts of the communications with counsel that can be used in these proceedings, while at the same time invoking the attorney-client privilege. . . .").

Because the attorney-client and work product privileges "stand[] in derogation of the public's right to every man's evidence, . . . [they] ought to be strictly confined within the narrowest possible limits consistent with the logic of [this] principle." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (internal quotation marks omitted). And it is established law that "the [attorney-client] privilege may be implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). This doctrine – at issue waiver – also applies to the work product privilege. *Tribune Co. v. Purcigliotti*, No. 93 CIV. 7222, 1997 WL 10924, at *6-7 (S.D.N.Y. Jan. 10, 1997).

The same is true for the invocation of mediation privilege.  For example, in *G. Angel, Ltd. v. Camper & Nicholsons USA, Inc.*, the Southern District of Florida recognized that "[a]s important as the mediation privilege is, however, it may be waived."   No. 08-60211-CIV, 2009 WL 10666975, at *3 (S.D. Fla. May 29, 2009).  "For example, a waiver occurs when the holder of the privilege 'asserts a claim that in fairness requires an examination of protected communication.'" *Id.* (quoting *In re RDM Sports Grp., Inc.*, 277 B.R. 415, 437–38 (Bankr. N.D. Ga. 2002)) (internal citations omitted).   In *G. Angel*, a third-party plaintiff, IYC, sued third-party defendants for contribution and indemnification arising out of a settlement agreement.   Accordingly, the "reasonableness of the settlement among [the parties] is at issue, as it relates to the claims against Third-Party Defendants.  In light of this fact, Third-Party Plaintiff IYC has waived its privilege as it relates to the documents at issue." *Id.*  The same is true under Delaware law. *See, e.g.*, *In re Tribune Co.*, No. 08-13141, 2011 WL 386827, at *7 (Bankr. D. Del. Feb. 3, 2011) (allowing discovery of certain mediation materials under the facts and circumstances of that case where opposing party put the mediation at issue by arguing that the proposed settlement was fair and that the Debtors and Committee acted in good faith).

## II.   BECAUSE DELAWARE COURTS DISFAVOR THE TACTICS EMPLOYED BY THE DEBTORS, TESTIMONY REGARDING SUBJECTS WHERE FULL AND FAIR DISCOVERY WAS NOT PERMITTED SHOULD BE EXCLUDED

### A.   *Materials Available in Moving Papers May Not Be Withheld for Reply*

Bankruptcy Rule 9013 makes clear that a "motion shall state **with particularity** the grounds therefor." (emphasis added).  As other courts have elaborated, that Rule means that a "party ***may not raise new matters in reply to support its motion*** . . . ." *In re Total Fin. Investment, Inc.*, No. 19 B 03734, 2019 WL 2432089, at *3 n.4 (Bankr. N.D. Ill. Jun. 11, 2019) (emphasis added); *see also In re Cruz*, 516 B.R. 594, 604 (9th Cir. 2014) ("Generally, we will not consider arguments raised for the first time in the reply."); *In re Basquez*, No. 6:18-bk-19790, 2020 WL 6929242, at

*8 (Bankr. C.D. Cal. Nov. 16, 2020) ("[I]t is unfair to opposing parties for a moving party to include new evidence with a reply brief.").

Similarly, the Local Rules for the District of Delaware expressly require that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." D. Del. L.R. 7.1.3(c)(2); *see also* D. Del. Bankr. L.R. 7007-2(b)(ii) (same). Delaware courts uniformly admonish parties who engage in these tactics. *See Ethica Corp. Fin. S.r.L v. Dana Inc.*, C.A. No. N17 C-10-145, 2018 WL 3954205, at *3 (Del. Super. Ct. Aug. 16, 2018) ("Delaware Courts do not favor 'sandbagging' in reply briefs.").[16]

The reason for this rule is straightforward and a function of fundamental fairness: it is the moving parties who "must provide adequate factual and legal support for their positions ***in their moving papers*** in order to put the opposing parties and the court on notice of the issues to be decided." *See In re Asbestos Litig.*, C.A. No. 04C-10-116, 2007 WL 2410879, at *4 (Del. Super. Ct. Aug. 27, 2007). The purpose of a reply brief is not to cure an abdication of this responsibility, but to respond to arguments raised by objecting parties. *See Franklin Balance Sheet Inv. Fund v. Crowley*, C.A. No. 888-N, 2006 WL 3095952, at *4 (Del. Ch. Oct. 19, 2006) ("A movant should not hold matters in reserve for reply briefs. Instead, reply briefs should consist of material necessary to respond to the answering brief.").

Where a moving party waits until the reply brief to introduce new evidence to bolster its record, courts will exclude or limit belated evidence such as that contained in the Desai Declaration and Supplemental Whittman Declaration. For example, in *Laboratory Skin Care, Inc. v. Ltd.*

---

[16] Other courts around the country are in accord. *See, e.g.*, *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring) (stating reply papers are for responding, not raising new material which could have been raised affirmatively); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D. Ill. 2006) (admonishing sandbagging tactics); *Burney v. Thorn Ams., Inc.*, 970 F. Supp. 668, 671 (E.D. Wis. 1997) (condemning parties that fail to submit relevant evidence and parties that engage in sandbagging).

*Brands, Inc.*, the defendants attempted to introduce for the first time on reply trademark file history that they failed to disclose with their moving papers. 757 F. Supp. 2d 431, 439 (D. Del. 2010). Because that evidence only "serve[d] to bolster Defendants' original argument, not to respond to that of Plaintiffs," the court struck that evidence as violative of D. Del. L.R. 7.1.3(c)(2).  *Id.*  Other Delaware courts are in accord.  *See, e.g.*, *Cornell Univ. v. Illumina, Inc.*, C.A. No. 10-433, 2013 WL 3216087, at *6 (D. Del. June 25, 2013)  (granting plaintiffs' motion to strike new facts where "defendant add[ed] factual material in its reply brief not previously included in its opening brief."); *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463-64 (D. Del 2005), *rev'd on other grounds* 543 F.3d 1306 (Fed. Cir. 2008) (excluding two expert declarations attached for the first time to a reply brief as violative of D. Del. LR 7.1.3.).[17]

### B.    *The Desai Declaration and Supplemental Whittman Declaration Do Not Respond to Anything "New"*

The Court should exclude the Desai Declaration and Supplemental Whittman Declaration because they do not respond to anything "new" or unforeseeable in the objection briefs.  Instead, Debtors rely on the Desai Declaration and Supplemental Whittman Declarations in their reply brief to prop up the affirmative arguments made in their moving papers, including arguments that (1) the Debtors established a reasonable business justification for entering into the RSA,[18] and (2) the

---

[17]    Other jurisdictions are in agreement.  *See, e.g.*, *Viero v. Bufano*, 925 F. Supp. 1374, 1379-80 (N.D. Ill. 1996) (admonishing defendants' "last-minute attempts to bolster the record in their favor" with new evidence in reply); *O'Connell v. Smith*, No. CV 07-0198, 2007 WL 4189504, at *1 (D. Ariz. Nov. 21, 2007) (striking supplemental evidence offered on reply that could have been raised affirmatively); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 20 (S.D.N.Y. 2007) (prohibiting plaintiff from submitting additional evidence with reply).

[18]    *Compare* Debtors' Omnibus Reply in Further Support of the RSA Motion [D.I. 5759] at Sec. I.A with RSA Motion at Sec. IV.

RSA was negotiated at arms' length and in good faith (a finding that *they* sought to be made in the RSA, which is unnecessary and inappropriate in any event).[19]

At the July 7 hearing, the Moving Insurers and other parties raised several issues that they recognized fairly early on in response to the Debtors' moving papers.  For example, the Moving Insurers raised issues regarding:  (1) the nature of the trust distribution procedures;[20] (2) the Fourth Amended Plan (the "Plan") being non-insurance neutral and altering insurers' rights under their contracts;[21] (3) a lack of arms'-length negotiating of the TDPs and the Plan;[22] (4) the failure of the RSA to inquire into the validity of any proofs of claim, and instead would provide for payment for all of them;[23] (5) the substantial payments that would be made to Coalition professionals;[24] and (6) the excessive invocation of privilege to shield all negotiations.[25]   Other parties raised similar issues, including the lack of any Chartered Organization support.[26]

After that status conference, the Moving Insurers questioned the Debtors' witnesses extensively ██████████████████████████████████████ ██ ████████

████████████████████████████████████████████████████

Yet the Debtors insisted on waiting until the eve of trial, the evening of July 26, to produce two

---

[19]  *Compare* Debtors' Omnibus Reply at Sec. II.F.1 with RSA Motion at ¶¶ 13; 19; 20.

[20]  *See* July 7, 2021 Hearing Tr. at 39:2–8 (Fay Decl., Exhibit M).

[21]  *See id.* at 39:16–40:9; 42:23–21.

[22]  *Id.* at 40:10–17.

[23]  *Id.* at 47:16–48:9.

[24]  *Id.* at 51:9–16.

[25]  *Id.* at 51:21–52:6.

[26]  *Id.* at 54:8–55:19; 59:21–61:18.

[27]  *See, e.g.*, *Moving Insurers' Motion to Compel and for Additional Relief and in The Alternative Motion In Limine* [D.I. 5729/5736] at 14–17.

declarations ███████████████████████████████████████████████████████

███████████████████████

| **New Declaration Testimony** | ███████████████████████ |
| --- | --- |
| | ██████ |
| "During these meetings, the NEB, NEC and BTF reviewed presentations prepared by the Debtors' advisor team describing the various potential terms and provisions of the settlements that now constitute the terms of the RSA and highlighting the advantages and disadvantages of entering into such agreements.  The factors considered included the BSA's contribution to a settlement trust for abuse survivors, the parties included in the RSA, the ability to make further settlements with Chartered Organizations and Insurance Companies and any related limitations, the contributions from the BSA and Local Councils, the costs required under the RSA, the conditions applicable to the Settlement Trust and the Trust Distribution Procedures, the alternatives to entering into the RSA, and the risks of achieving a successful confirmation of a plan of reorganization"[28] <br><br> "Final open issues that required additional guidance based on the prior negotiating parameters were authorized by e-mail to the CEO and General Counsel from the NEC on June 28, 2021, immediately in advance of the execution of the RSA on July 1, 2021, at the recommendation of the BTF following their review of key issues by e-mail."[29] | ████████████████████████ <br> ████████████████████████ <br> ████████████████████ <br> ████████████████████ <br> ███████████████ <br> ████████████████████████ <br> ███████████████████████ <br> █████████████████████ <br> ████████████████████████ <br> ███████████████████████ <br> ████████████████████████ <br> ████████████████████████ <br> ████████████████████ <br> ████████████ <br> ████████████████████████ <br> █████████████████████ <br> ███████████████████████ <br> ███████████████ |
| "The BTF also understood that the BSA would need to continue to work toward resolution with important constituencies, including the Insurance Companies and Chartering Organizations."[32] | ███████████████████████ <br> ████████████████████████ <br> ████████████████████████ <br> ███████████████████████ |

---

[28]    Desai Decl. ¶ 20.

[29]    Desai Decl. ¶ 26.

[30]    Deposition Transcript of Daniel Ownby (Jul. 19, 2021) at 50:4–10 (Fay Decl., Exhibit N).

[31]    *Id.* at 58:21–59:4.

[32]    Desai Decl. ¶ 23.

| New Declaration Testimony | |
|---|---|
| | ██████████████████████ ████ |
| "The NEB discussed Chartered Organizations, including their protection and insurance rights, on numerous occasions. There was also frequent robust discussion about the Chartered Organizations at BTF and NEC meetings. Both the BTF and NEC extensively discussed and analyzed pathways to resolve the issues of the Chartered Organizations' insurance rights and protections during RSA negotiations."[33] | ████████████████████ ███████████ █ |
| "I was also present for a number of presentations from the Debtors' other advisors, including the Debtors' restructuring counsel, White & Case LLP ("White & Case"), and the Debtors' special insurance counsel, Haynes & Boone LLP, related to the risks and benefits associated with both the RSA in addition to alternatives to the RSA. During these presentations, the parties also discussed the payment of the Coalition Professional fees, the restructuring timeline, the Preliminary Injunction, the Hartford Settlement, Chartered Organizations, and various insurance issues, including related to proposed plans of reorganization and the terms of the RSA."[34] | ████████████████████████ |
| "From November 2020 through June 2021, the NEB, NEC, and BTF met in total 57 times. These meetings generally lasted at least 90 minutes and regularly exceeded two hours. Matters pertaining to the chapter 11 cases, including the potential global resolution of the chapter 11 cases, were discussed at all 57 meetings."[36] | ████████████████████████ |

---

[33]    *Id.* ¶ 27.

[34]    Supplemental Whittman Decl. ¶ 8.

[35]    Fay Decl., Exhibit N at 64:3–64:25 (D. Ownby).

[36]    Desai Decl. ¶ 15 (internal citations omitted); *see also id.* ¶¶ 24–25.

| **New Declaration Testimony** | ███████████████ |
| --- | --- |
| | ███████████████ |
| "Between February and May 2021, there were numerous mediation meetings and negotiations with parties, all in an effort to achieve a global resolution. On May 26, 2021, the NEC approved recommending to the NEB that BSA settle with the claimants for an aggregate value of $250 million subject to negotiation of final terms.  On May 26, 2021, the NEB engaged in robust discussions about the settlement proposal and together with their counsel, reviewed a presentation by their financial advisor as to the different options, analyzing the advantages and disadvantages of the various terms and provisions.<br><br>On June 5, 2021, the NEB held a special meeting to approve a settlement valued at $250 million for a global resolution and the issuance of the BSA Settlement Note, subject to satisfactory resolution of other issues.  As set forth above, the NEB was required to approve the note because only the NEB can agree to increase or materially change the indebtedness of the BSA beyond any previously authorized level.  At the June 13, 2021 BTF meeting, the proposed terms of the RSA were discussed in detail.  On June 21, 2021, the BTF extensively discussed the draft term sheet for the DST Note.  On June 22, 2021, the NEC and BTF met jointly to review the terms and conditions of the RSA."[38] | █████████████ |

As in *Laboratory Skin Care*, the evidence the Debtors now offer was entirely available for disclosure at the time they moved to approve the RSA or shortly thereafter during the additional time this Court permitted for factual development in advance of the July 22 objection deadline.

---

[37]   Fay Decl., Exhibit N at 90:25–91:15 (D. Ownby).

[38]   Desai Decl. ¶¶ 24–25.

[39]   *Id.* at 50:4–10.

Accordingly, the Debtors' proffered declarations run afoul of Local Rule 7.1.3(c)(2) and this Court should therefore exclude this evidence from its consideration of the RSA Motion.

C.     ***Moving Insurers Moved Promptly As Soon As They Learned the Debtors Would Submit a Surprise Declaration***

In cases where Delaware courts have rejected motions to exclude evidence, those courts were faced with the inapposite case where the moving parties sat on their rights and failed to take issue with a deficient factual record.  *See, e.g.*, *In re Jarden Corp.*, C.A. No. 12456, 2018 WL 4263308, at *1 (Del. Ch. Sept. 7, 2018) (denying motion to strike where responding party did not specifically identify financial documents regarding valuation but did produce them and produced witness prepared to address them); *Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 409158, at *1 (Del. Ch. June 22, 1998) (motion to strike denied where moving parties received adequate responses to all discovery requests and never raised issues as to deficient document protection).

Here, however, Debtors can make out no such contention.  As set forth above, the Moving Insurers moved quickly to ascertain the scope of Mr. Desai's Declaration and analyze the topics on which he may testify at the July 29 hearing.  The Moving Insurers promptly emailed Debtors' counsel and followed up to receive the documents relating to Mr. Desai's Declaration.  Letters exchanged between Century's and Debtors' local counsel to the Court further evidence that there were issues with even the *idea* of the Desai Declaration, let alone its substance.

Moreover, the Supplemental Whittman Declaration comes as a complete surprise.  Despite regular contact to attempt to resolve discovery issues, there was not a single indication that Mr. Whittman would be allowed to submit, via a "back door," information that was withheld prior to the objection deadline.  Because the Moving Insurers acted promptly in filing this Motion *in limine*, the Debtors cannot avoid the relief we seek under these circumstances.

## CONCLUSION

For the foregoing reasons and pursuant to Fed. R. Civ. P. 34 and 37(a)(3)(B)(i) and (iv), the Moving Insurers request that the Court grant their motion to compel and order the Debtors to produce (1) Alvarez & Marsal's PowerPoints, presentations, and/or financial analyses or models that were submitted to the Debtors and their Boards in evaluating the RSA and Fourth Amended Plan, (2) the authorizing minutes and resolutions of BSA's Boards for the RSA, Amended Plan, and TDPs, and  (3) the BSA's Board minutes and communications by and between the Board, the Local Councils, and the Chartered Organizations reflecting what the Board considered concerning the RSA, Amended Plan, and TDPs.  The Moving Insurers further request that the Court strike the late-filed Declarations of Mssrs. Desai and Whittman.

In the alternative, the Court should require Debtors and the other RSA parties to live with the extremely limited record that Debtors made available in its initial production – the same record the insurers were forced to "live with" in deposing Debtors' witnesses and drafting their objections. The Court recognized during the July 29, 2021 hearing that the parties have the Court's ruling, and the Moving Insurers are prepared to abide by it and to proceed.[40]  There is no unfairness in requiring Debtors to make its case based on the same record.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that the Moving Insurers have met and conferred with the Debtors in good faith on these discovery issues, including calls on July 30 and August 3.  Additional letters exchanged between the parties further evidence the Moving Insurers' attempts to resolve these matters without burdening the Court.

---

[40] *See* Fay Decl., Exhibit C at 21:19-21 (July 29, 2021 Hr'g Tr.).

Dated:  August 4, 2021
        Wilmington, Delaware            BAYARD, P.A.

                                      */s/ Gregory J. Flasser*
                                      Erin R. Fay (No. 5268)
                                      Gregory J. Flasser (No. 6154)
                                      Bayard, P.A.
                                      600 North King Street, Suite 400
                                      Wilmington, D.E. 19801
                                      Tel: (302) 655-5000
                                      Fax: (302) 658-6395
                                      Email:  efay@bayardlaw.com
                                            gflasser@bayardlaw.com
                                      *-and-*

                                      James P. Ruggeri (admitted pro hac vice)
                                      Joshua D. Weinberg (admitted pro hac vice)
                                      Annette P. Rolain (admitted pro hac vice)
                                      Sara K. Hunkler (admitted pro hac vice)
                                      SHIPMAN & GOODWIN LLP
                                      1875 K Street, NW, Suite 600
                                      Washington, D.C. 20006
                                      Tel: (202) 469-7750
                                      Fax: (202) 469-7751
                                      *-and-*

                                      Philip D. Anker (admitted pro hac vice)
                                      WILMER CUTLER PICKERING HALE
                                      AND DORR LLP
                                      7 World Trade Center
                                      250 Greenwich Street
                                      New York, N.Y. 10007
                                      Tel: (212) 230-8890
                                      Fax: (212) 230-8888
                                      *-and-*

                                      Danielle Spinelli (admitted pro hac vice)
                                      Joel Millar (admitted pro hac vice)
                                      WILMER CUTLER PICKERING HALE
                                      AND DORR LLP
                                      1875 Pennsylvania Avenue N.W.
                                      Washington, D.C. 20006
                                      Tel: (202) 663-6000
                                      Fax: (202) 663-6363

*Attorneys for First State Insurance Company,*
*Hartford Accident and Indemnity Company,*
*Twin City Fire Insurance Company and*
*Navigators Specialty Insurance Company*

STAMOULIS & WEINBLATT LLC
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
Email: stamoulis@swdelaw.com

O'MELVENY & MYERS LLP
Tancred Schiavoni (admitted pro hac vice)
Gary Svirsky (admitted pro hac vice)
Daniel Shamah (admitted pro hac vice)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Counsel for Century Indemnity Company, as*
*successor to CCI Insurance Company, as*
*successor to Insurance Company of North*
*America and Indemnity Insurance Company*
*of North America*

TROUTMAN PEPPER HAMILTON
SANDERS LLP
David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*-and-*

Harris B. Winsberg (admitted pro hac vice)
Bank of America Plaza
600 Peachtree Street NE Suite 3000
Atlanta, GA 30308-2216
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*-and-*

MCDERMOTT WILL & EMERY LLP
Margaret H. Warner (admitted pro hac vice)
Ryan S. Smethurst (admitted pro hac vice)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone: (202) 756-8228
Facsimile: (202) 756-8087

*Attorneys for Allianz Global Risks US*
*Insurance Company*

TROUTMAN PEPPER HAMILTON
SANDERS LLP
David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street

BODELL BOVE, LLC
Bruce W. McCullough (No. 3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,

Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (404) 885-3000
Facsimile: (404) 885-3900

*-and-*

Harris B. Winsberg (admitted pro hac vice)
Bank of America Plaza
600 Peachtree Street NE Suite 3000
Atlanta, GA 30308-2216
Telephone: (404) 885-3000
Facsimile: ( 404) 885-3900

*-and-*

BRADLEY RILEY JACOBS PC
Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone: (312) 281-0295

*Attorneys for National Surety Corporation and Interstate Fire & Casualty Company*

REGER RIZZO & DARNALL LLP
Louis J. Rizzo, Jr., Esquire (#3374)
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE 19803
Phone: (302) 477-7100
Email: lrizzo@regerlaw.com

Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

*-and-*

CLYDE & CO US LLP
Bruce D. Celebrezze (admitted pro hac vice)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: bruce.celebrezze@clydeco.us

*- and -*

Konrad R. Krebs (admitted pro hac vice)
200 Campus Drive I Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
Email: konrad.krebs@clydeco.us

*- and -*

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (admitted pro hac vice)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email: dchristian@dca.law

*Attorneys for Great American Assurance Company, f/k/a Agricultural Insurance Company; Great American E&S Insurance Company, f/k/a Agricultural Excess and Surplus Insurance Company; and Great American E&S Insurance Company*

BALLARD SPAHR LLP
Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
919 N. Market Street, 11th Floor Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com

*Attorney for Defendants, Travelers Casualty and Surety Company, Inc. (l/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company*

mcclambc@ballardpshar.com

-and-

STEPTOE & JOHNSON LLP
Harry Lee (admitted pro hac vice)
John O'Connor (admitted pro hac vice)
Brett Grindrod (admitted pro hac vice)
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com
joconnor@steptoe.com
bgrindrod@steptoe.com

*Attorneys for Clarendon America Insurance Company*

CHOATE, HALL & STEWART, LLP
Douglas R. Gooding (admitted pro hac vice)
Jonathan D. Marshall (admitted pro hac vice)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
Kim V. Marrkand (admitted pro hac vice)
Laura Bange Stephens (admitted pro hac vice)
One Financial Center
Boston, MA 0211
Telephone: (617) 542-6000
kmarrkand@mintz.com
lbstephens@mintz.com

*Counsel to Liberty Mutual Insurance Company*

JOYCE, LLC
Michael J. Joyce, Esquire (No. 4563)
1225 King Street, Suite 800
Wilmington, DE 19801
(302)-388-1944
mjoyce@mjlawoffices.com

-and-

COUGHLIN MIDLIGE & GARLAND, LLP
Kevin Coughlin, Esquire
(admitted pro hac vice)
Lorraine Armenti, Esquire
(admitted pro hac vice)
Michael Hrinewski, Esquire
(admitted pro hac vice)
350 Mount Kemble Ave.
PO Box 1917
Morristown, NJ 07962
(973) 267-0058 (Telephone)
(973) 267-6442 (Facsimile)
larmenti@cmg.law
mhrinewski@cmg.law

-and-

CARRUTHERS & ROTH, P.A.

Britton C. Lewis, Esquire
(admitted pro hac vice)
235 N. Edgeworth St.
P.O. Box 540
Greensboro, NC 27401
(336) 478-1146 (Telephone)
(336) 478-1145 (Facsimile)
bc1@crlaw.com

*Counsel to Arrowood Indemnity Company*