# EXHIBIT B

```
 1                      UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2

                                     .     Chapter 11
 3    IN RE:                          .
                                      .     Case No. 20-10343 (LSS)
 4    BOY SCOUTS OF AMERICA AND       .
      DELAWARE BSA, LLC,              .
 5                                    .
                                      .     Courtroom No. 2
 6                                    .     824 North Market Street
                                      .     Wilmington, Delaware 19801
 7                                    .
                          Debtors.    .     July 27, 2021
 8    . . . . . . . . . . . . . . . .       3:00 P.M.

 9            TRANSCRIPT OF TELEPHONIC DISCOVERY CONFERENCE
             BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                  UNITED STATES BANKRUPTCY JUDGE

11   TELEPHONIC APPEARANCES:

12
     For the Debtor:          Derek C. Abbott, Esquire
13                            Andrew R. Remming, Esquire
                              Paige N. Topper, Esquire
14                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                              1201 North Market Street, 16th Floor
15                            Wilmington, Delaware 19899

16                            - and -

17                            Jessica C. Lauria, Esquire
                              Glenn Kurtz, Esquire
18                            WHITE & CASE LLP
                              1221 Avenue of the Americas
19                            New York, New York 10020

20   Audio Operator:          Brandon J. McCarthy, ECRO

21   Transcription Company:   Reliable
                              1007 N. Orange Street
22                            Wilmington, Delaware 19801
                              (302)654-8080
23                            Email: gmatthews@reliable-co.com

24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.
```

1   TELEPHONIC APPEARANCES (Cont'd):

2   For the Debtors:          Michael C. Andolina, Esquire
                              Matthew E. Linder, Esquire
3                             Laura E. Baccash, Esquire
                              Blair M. Warner, Esquire
4                             WHITE & CASE LLP
                              111 South Wacker Drive
5                             Chicago, Illinois 60606

6
    For the Roman Catholic    Jeremy Ryan, Esquire
7   Ad Hoc Committee:         POTTER ANDERSON & CORROON LLP
                              Hercules Plaza
8                             1313 North Market Street, 6th Floor
                              P.O. Box 951
9                             Wilmington, Delaware 19801

10
    For Century:              Daniel Shamah, Esquire
11                            O'MELVENY & MYERS LLP
                              Times Square Tower
12                            7 Times Square
                              New York, New York 10036
13
    For Hartford:             James Ruggeri, Esquire
14                            SHIPMAN & GOODWIN LLP
                              1875 K Street NW, Suite 600
15                            Washington, DC 20006

16
    For Allianz Global        Harris Winsberg, Esquire
    Risks US Insurance:       TROUTMAN PEPPER HAMILTON SANDERS LLP
17                            600 Peachtree Street, NE
                              Suite 3000
18                            Atlanta, Georgia 30308

19

20

21

22

23

24

25

1      (Proceedings commenced at 3:06 p.m.)

2          THE COURT:  Good afternoon, counsel.  This is Judge

3   Silverstein.  We're here in the Boy Scouts of America

4   bankruptcy, Case No. 20-10343.

5          I asked for a status or a hearing conference in

6   connection with discovery disputes that have surfaced over the

7   past couple of days and related to our hearing on Thursday

8   with respect to the restructuring support agreement.  In

9   particular I want to hear if further production of documents

10  has mooted any of the disputes that were raised.  I'd also

11  like to hear whether or not -- I'd like to hear some more

12  about the mediation privilege and how it's being asserted in

13  connection with what items it's being asserted.

14         So let me hand it over to counsel for Century who

15  filed -- no, I'm wrong.  Its moving insurers, so let me double

16  check that.

17         MR. SHAMAH:  Your Honor, Daniel Shamah, O'Melveny,

18  on behalf of Century.  I will be speaking on behalf of the

19  moving insurers if that helps you.

20         THE COURT:  Thank you.  Yes, let me hear from you

21  please.

22         MR. SHAMAH:  Thank you, Your Honor.  Again, for the

23  record, Daniel Shamah, O'Melveny & Myers, on behalf of

24  Century.

25         Your Honor, can you hear me okay?

1        THE COURT:  I can.

2        MR. SHAMAH:  Okay.  And, Your Honor, I apologize.

3   My name in Zoom is not showing up as my name so I hope that

4   doesn't create any confusion for you.

5        THE COURT:  I found you.

6        MR. SHAMAH:  Thank you, Judge.

7        So first, Your Honor, I just want to thank the

8   court for hearing us on such short notice.  We very much

9   appreciate it.  We know you have a lot on your docket.  You

10  got a lot of paper over the last, you know, four or five days

11  and we know you're incredibly busy.  So we really do

12  appreciate Your Honor taking the time this afternoon.

13       Your Honor, I think the short answer to your first

14  question is the materials we got at 12:30 last night or early

15  this morning do not moot the issues at all from our

16  perspective. I think it's worth contextualizing how we got

17  here today and, sort of, the status quo where we are.  So if

18  you will indulge me a little bit, Your Honor, I just want to,

19  sort of, put the pieces together here to help frame the issues

20  for you.

21       So stepping back, Your Honor, the subject of our

22  motion to compel was to address the prejudice that the

23  insurers were facing by the debtors' decisions on how they

24  decided to conduct these proceedings.  Your Honor, if this was

25  about a stray instruction at a deposition not to answer or a

1  discreet document that may have been over-redacted I don't

2  think -- I would think we wouldn't be here today.

3          What became apparent throughout the discovery

4  process here is the debtors made the strategic decision to

5  blanket withhold everything.  We did not get any board

6  minutes.  They were redacted to the point of uselessness; all

7  they would say was date and attendees, and nothing else of

8  substance.  They did not produce any financial materials from

9  Alvarez & Marsal that was presented to the board in support of

10  the RSA; again, if they were produced they were redacted

11  entirely of substance.  And at depositions the witnesses were

12  instructed on a blanket basis not to testify about all of the

13  subject matters, the basic issue of what did the board

14  consider, when did it consider those matters.

15          What has become apparent, Your Honor, since over

16  the last 48 or 72 hours is the debtors, essentially, concede

17  that we were right when we raised these issues with them both

18  before, during and after depositions.  They have since

19  belatedly produced some materials.  They are still heavily

20  redacted.  We can get into specifics of what's still missing,

21  but we still don't have much substance when it comes to board

22  materials.  We do not have any written authorizations.  The

23  A&M materials are a little less redacted, but still very

24  heavily redacted.

25          More troublingly, they have now produced two new

1  declarations; one from an entirely new witness, Mr. Disi

2  [phonetic], and a supplemental declaration from Mr. Whittman

3  covering topics that they previously withheld on various

4  grounds of privilege.  And so Mr. Disi goes on at length about

5  the board process, the governance process, how the board is

6  constituted and when they met.

7          Mr. Whittman, you know, other than the coalition

8  fee issue, which I will come back to in a moment, goes on at

9  length about when the board met, how often they met, what he

10 presented to the board, what he discussed with the board; all

11 of these materials were withheld, witnesses were instructed

12 not to answer questions about these topics.  These were issues

13 that were apparent from the very beginning of these

14 proceedings that these were an issue.

15         I think this is the important thing, Judge, the

16 debtors put these topics at issue.  They are asking the court

17 to approve the RSA they contend is a reasonable exercise of

18 their business judgment.  What the board considered it, when

19 they considered it, that is the whole entire subject matter of

20 this litigation and they made a strategic decision not to

21 share those materials as part of the discovery process.

22         What has become apparent is confronted with a wide

23 range of objections that were filed last week; not just from

24 insurers, but from chartered organizations, from other

25 claimants, from the United States Trustee.  They're trying to

1  backfill the record.  They are trying to come up with

2  substance to fill that gap because they are concerned they may

3  lack an evidentiary basis.

4        Your Honor, I think it's improper. It's improper to

5  wait for a reply to put before the court materials, and

6  issues, and discovery that was fair game and well-known for

7  weeks that should have been there all along.  I think it's

8  unfair to us where we are now less than two days before a

9  hearing and we're getting midnight productions.

10        They are offering one witness tomorrow, Mr. Disi.

11 They have not offered to reopen the depositions of either Mr.

12 Whittman who now has eleven new pages of declaration testimony

13 or Mr. Ownby who, for all intents and purposes, was instructed

14 not to answer almost anything at his deposition.  And we

15 should be preparing for trial, but instead we're now dealing

16 with these issues at the eleventh hour.  It's simply improper

17 and unfair.

18        Your Honor, I think from -- we are not looking for

19 a delay.  We didn't file a motion to adjourn.  We think,

20 frankly, Your Honor, they should have to live with the record

21 they submitted.  That was their moving case.  They chose a

22 strategy on how they wanted to do it and they should have to

23 live with the consequences of that strategic decision.

24        Lastly, Your Honor, I know you asked about the

25 mediation privilege.  I don't want to overlook that or ignore

1  it.  It was interesting, the debtors spent a lot of time on

2  the mediation privilege in their opposition brief yesterday

3  which I thought was curious because it really wasn't the focus

4  of ours.  To be blunt, we are not seeking the production of

5  mediation materials.  We have not asked for communications

6  with the claimants, with the mediators or anything like that.

7  We are looking for the documents and discovery about what the

8  board considered and when it considered those issues which is

9  exactly what they have put at issue and we are entitled to ask

10 those questions and to have a reasonable amount of time to

11 consider those materials.

12         Your Honor, unless you have any questions for me

13 that is our position.  I believe other insurers may want to

14 add anything.  I do know Mr. Ryan, on behalf of the catholic

15 and Methodist ad hoc groups also wanted to address the court.

16         THE COURT:  Okay.  Thank you.

17         I will hear from others, but I am focused on this

18 particular issue. I did note, in particular, board minutes,

19 materials submitted to the board for consideration, board

20 resolutions.  These were categories that struck me as I read

21 through the filings that I'd like to hear from -- that I'd

22 like to hear about.  So I will hear from other insurer

23 counsel, but that is really what I am focused on.

24         MR. SHAMAH:  Your Honor, I wasn't sure if that was

25 addressed to me or other insurance counsel.  I apologize.

1           THE COURT:  That's addressed to other insurance

2    counsel.  Anyone want to address me?

3       (No verbal response)

4           THE COURT:  I'm not hearing anyone.

5           MR. RUGGERI:  Your Honor, James Ruggeri for

6    Hartford.  We would just support Century's counsel's comments

7    in that regard and just note that even with regard to the

8    Hartford specific issues of change in circumstances the record

9    has changed dramatically over the past couple of days as we

10   continue to get a little bit more by way of the board minutes

11   in dribs and drabs.

12          The court will hear, in a couple of days, about the

13   importance of a June 9th letter presumably and now we see that

14   the minutes are being produced in a way that, you know, now we

15   see it differently then maybe the way we saw it when they

16   first redacted in wholesale everything but, literally, the

17   dates of the meeting and who attended those meetings.

18          There is a prejudice here.  There is an issue here.

19   I do agree with counsel for Century that the debtors should be

20   required to present their case based on record as they

21   produced initially subject to all of the privilege claims that

22   they made throughout the course of the depositions.

23          Thank you, Your Honor.

24          THE COURT:  Thank you.

25          Anyone else?

1      MR. WINSBERG:  Your Honor, if I may.  Harris

2  Winsberg for the Allianz insurers.

3      Can you hear me?

4      THE COURT:  Mr. Winsberg, yes.

5      MR. WINSBERG:  Just real briefly, Your Honor.  In

6  the debtors' declaration, Docket 5469, at Paragraph 6 Mr.

7  Mosby, in his declaration, said that it was in his opinion and

8  the board's opinion that the path of the RSA is the most

9  realistic approach to achieve the debtors' objectives.  You

10  know in Mr. Ownby's deposition, as pointed out in the papers,

11  he was specifically asked a question.

12      We don't have the un-redacted board minutes, but

13  was asked the question about the RSA and in particular

14  focusing on what were the deal points.  What deal points did

15  you approve in connection with the RSA.  He was instructed not

16  to answer not on mediation privilege, but an attorney/client

17  privilege.  Those pages are in the deposition.  So I think

18  they're pages 50 through 52.

19      There were also instructions not to answer

20  questions from the bankruptcy task force, what was their

21  recommendation in connection with the RSA.  There was

22  instruction not to answer on attorney/client, that was on Page

23  58 and 59 of Mr. Ownby's deposition.

24      So it's hard when they put the issues in front of

25  Your Honor on approval of the RSA to ask Your Honor whether

1  it's the business judgement or some other like intrinsic

2  fairness that you're going to hear in a couple days.  It's

3  hard to understand if they won't give us the basis or the work

4  that was put behind, the board put behind the decision.  They

5  just instructed not to answer on attorney/client.  So it has

6  put the insurer group in a difficult position moving forward

7  with the hearing.

8          THE COURT:  Thank you.

9          MR. WINSBERG:  Thank you, Your Honor.

10          THE COURT:  Anyone else?

11      (No verbal response)

12          THE COURT:  Okay.  Let me hear from the debtors.

13          MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott

14  of Morris Nichols here for the debtors.

15          Your Honor, I believe Mr. Kurtz is going to address

16  the discovery issues and at some point I believe Ms. Lauria

17  may want to update the court on some bigger picture items, but

18  let me turn it over now to Mr. Kurtz if I may.

19          THE COURT:  Please.  Mr. Kurtz?

20          MR. KURTZ:  Good afternoon, Your Honor.  Glenn

21  Kurtz on behalf of the debtors.  Thank you for letting me

22  appear here.  I have not had the opportunity to appear in this

23  case before you yet, Your Honor.

24          Let me start with how I would contextualize all of

25  this.  There was some effort made to suggest this isn't about

1 mediation.  I think that's exactly wrong.  I think this is

2 primarily about mediation.  We received document requests from

3 day one that were in clear violation of Your Honor's mediation

4 order on Local Rule 9019 and specifically asked for documents

5 reflecting the communications that were occurring among the

6 mediation parties in the mediation.

7        We got questions throughout the depositions asking

8 for the disclosure of mediation material including

9 conversations between the mediation parties.  We have been

10 trying to join issue on this since July 8th when we first

11 reached out and said these things look to be violating the

12 mediation order and the local rule.  Please confirm you will

13 either abide by these rules or talk to us if you have some

14 nuance interpretation that would allow us to get you more

15 information because mediation is a particularly important

16 privilege.  Its ongoing in this case as we try to get gain

17 more and more support for a consensual reorganization.

18        We had been ignored at every juncture.  We have set

19 numerous communications asking them to share a view on

20 mediation and, frankly, until right now, during this hearing,

21 I haven't heard anybody say that they don't really want

22 anything relating to mediation which seems belied by the

23 requests and by the questions at deposition.

24        The documents that are being withheld now.  Your

25 Honor asked what about the board materials.  I believe that

1   the materials have been forwarded now with fewer redactions

2   which would identify the grounds for the decision making.

3   What I believe to have been continued to be redacted fall

4   largely into a mediation privilege.  They're recording things

5   that happened in the mediation or attorney/client because

6   they're based on advice even some instances, perhaps, work

7   product where something was being created in connection with

8   the negotiations in this bankruptcy case or in connection with

9   advice.

10          The objectors have not identified a single document

11  where they have information and have carried some burden of

12  establishing that we have an improper redaction.  They're just

13  more interested in getting material without regard to whether

14  or not it's privileged.  I believe and I believe that its been

15  reviewed by a number of attorneys that what has been redacted

16  now after re-reviewing is all either mediation privilege or

17  attorney/client privilege; maybe work product, but at least

18  the first two.

19          With respect to the rebuttals this is not an issue

20  of backfilling a record.  There's no motion, by the way, to

21  preclude rebuttals, the replies.  The replies are going in

22  connection when and in connection with our reply papers as is,

23  of course, customary.  The notion that one can't address the

24  matters raised in an objection in the replies is, of course,

25  completely incorrect.  The law is abundantly clear that

1  replies can introduce new evidence that both address what was

2  put in originally and also more importantly here in particular

3  in opposition to the objections that had been raised and that

4  is exactly what we did.

5          It would be quite convenient if one could litigate

6  by raising objections in an opposition and claiming that the

7  movant had no right to address those matters.  They can't have

8  it both ways.  You can't have the insurers and the other

9  objectors raising matters and relying on evidence in the

10  opposition and then somehow prevent any kind of reply or

11  rebuttal.

12          The law is Black Letter on this.  We cited a number

13  of Delaware cases in our July 26th letter to the court.  It's

14  in Footnote 1.  You have no motion.  You also have a single

15  citation to a single case that was offered by the objectors by

16  Travellers; that, Your Honor, was an un-reported decision out

17  of Illinois and it did not address this.

18          In fact, it's interestingly a case where the party

19  had added a brand new supplement long after declining to raise

20  issues and the court allowed it in anyway in the interest of

21  justice.  There's some victa in a footnote about not being

22  able to raise brand new material in reply.  We haven't raised

23  brand new materials in replies.  It is the same material, same

24  subject matters as in the opening brief.  It is offered

25  specifically to address what was raised in the opposition.

1          THE COURT:  I think the concern I read, and I will

2    say I read these quickly, is that certain documents were not

3    produced, depositions were taken and there were instructions

4    not to answer.  They went to questions such as what did the

5    board consider.  What did the board resolve.  What did the

6    board take into consideration when it determined to enter into

7    the RSA.  All of those, in my mind, would have been fair game

8    not to be addressed subsequently in a reply, but right then at

9    a deposition.

10          Am I wrong in reading this and were these topics --

11   were deponents instructed not to answer those types of

12   questions?

13          MR. KURTZ:  Your Honor, it does look like there was

14   some instructions and I may defer at some point to Mr.

15   Andolina on the specifics. I didn't attend those depositions.

16   I appreciate Your Honor's observation about proper subject

17   matter.  I do believe that taken as a whole with the deponents

18   that were produced a pretty complete record was adduced about

19   what was taken into account and what was considered.  A lot of

20   those instructions were specifically asking about something

21   that occurred in the course of a mediation or something that

22   occurred in connection with receiving advice from counsel, but

23   that the core issues about what the board considered and how

24   they considered it had been addressed in discovery both from a

25   document production standpoint and through witnesses.

1          Additionally, we have offered the deposition of Mr.

2    Disi who is able to testify as to all these matters.  I don't

3    think there is any prejudice in having that deposition take

4    place now.  I don't think there is any new preparation as

5    needed.  Counsel -- the objectors' counsel had been pretty

6    clear, I think, that they fully prepared for and drafted

7    questions about these subject matters.  So they're sort of

8    ready to go right now and get them answered.

9          So I think on balance, Your Honor, we have given

10   them sufficient testimony and evidence about what was taken

11   into account, and what wasn't taken into account, and how.

12   And they have another opportunity, tomorrow, to get even more

13   evidence.  They have already pretty much comprehensively

14   addressed their objections and just as they're addressing them

15   today there is no doubt they will be raising these matters

16   before Your Honor on a hearing on the RSA.

17         So, you know, I get it that this was expedited and

18   I also -- counsel said we've admitted we were wrong. I don't

19   know that those are the words I would use, but I would say

20   that after re-reviewing materials we made additional

21   productions which is completely commonplace in any litigation

22   and particularly commonplace in expedited litigation.

23         We have been trying to get them to engage on this

24   since July 8th.  They raised it for the first time last

25   Thursday in the evening.  We met with them on Friday, the next

1  day following a deposition.  We committed to -- I personally

2  committed to have a re-review undertaken with respect to

3  everything they identify and to make a production over the

4  weekend, and to review all the instructions and to address

5  that as well.

6         We did that as soon as we got that information.

7  Had they raised this three weeks ago, two weeks ago, or one

8  week ago, or before the depositions were taken we could have

9  addressed it all in due course and we wouldn't even have to be

10 here.  They didn't raise it, but the moment they raised it I

11 personally took ownership over this and within -- the

12 commitments immediately they had documents over the weekend.

13        I don't think that, you know, the estate should,

14 sort of, be punished based on what looked to me to be not

15 really inadvertent delay, but maybe even advertant delay

16 because you have a whole slew of applications now all designed

17 to, sort of, take this off track.  Now maybe they shifted from

18 a delay to try and argue some evidentiary shortfall, but,

19 again, I don't believe they have the ability to raise defenses

20 and use evidence in opposition and then prevent the rebuttals.

21        It's Black Letter Law that we're entitled to

22 address their objections and that's all we're doing.

23        THE COURT:  Okay.  Thank you.

24        MR. WINSBERG:  Thank you, Your Honor.

25        MR. SHAMAH:  Your Honor, may I respond or do you

1  want to hear from others first?

2       THE COURT:  Is there anyone else who wants to be

3  heard before I permit a response?

4       (No verbal response)

5       THE COURT:  I don't hear anyone.

6       MR. SHAMAH:  Thank you, Your Honor.  I will be

7  very, very brief.  I think Your Honor hit the nail on the head

8  when you identified the fundamental concern which is that

9  topics that are fair game were not permitted to be the subject

10  of discovery or examination until this past weekend.  Your

11  Honor, I would just simply refer you to our motion to compel

12  where we identify scores of instances where basic questions

13  about the board process, what was considered, when it was

14  considered both in Mr. Ownby's deposition and Mr. Whittman's

15  deposition that were not permitted to answer.

16       I think Mr. Kurtz's -- I do appreciate his

17  willingness to revisit these decisions, but bringing him in at

18  this late hour is simply unfair.  These were issues that were

19  raised at the depositions and beforehand.

20       Your Honor, the last two points I want to make --

21  and I do know Mr. Ryan wants to say something because I see

22  his video is active now.  One, with respect to it being common

23  that these issues be brought up on reply they're not

24  responding to new legal arguments or factual arguments that

25  weren't previewed back in July when we first had the status

1 conference with Your Honor.  This is clearly topics that were

2 fair game from the beginning that they're now trying to

3 buttress on the eve of trial.

4          Lastly, Your Honor, the last point I want to make

5 with respect to additional documents this isn't -- again, this

6 isn't a scenario where they produced a stray email here or

7 there.  That happens in every litigation.  We understand that.

8 Here, they're producing the documents for all intents and

9 purposes for the first time.

10          On that point, Your Honor, I know you asked the

11 question earlier and I did want to address it while -- I did

12 take a quick look.  The board -- we do not have any board

13 authorizations.  We do not have any of the authorizations.

14 They have not been produced as far as we can tell.  We have

15 minutes that are still, for all intents and purposes, entirely

16 redacted other than an individual says and then it's just all

17 redacted.

18          So we have not -- we got these at one o'clock in

19 the morning.  So we haven't -- so, obviously, we have a lot

20 going on right now.  So I can't say that, you know, these

21 privilege assertions are valid or not, but from our review

22 this morning there does still seem to be fairly substantial

23 overbreadth in what has been redacted.

24          THE COURT:  Thank you.

25          Mr. Ryan?

1    MR. RYAN:  Thank you, Your Honor.  Jeremy Ryan on

2 behalf of the ad hoc committees for the United Methodist

3 Church and the Catholic Diocese.

4    We haven't propounded discovery, Your Honor.  We

5 haven't propounded discovery, Your Honor.  We did attend some

6 depositions and the reason we haven't done that is because we

7 are volunteer organizations who devote time, and resources,

8 and property to Boy Scouts that don't have the budgets or the

9 resources to engage in bare knuckle litigation that is taking

10 place.  We are, frankly, riding the coat tails of the

11 discovery the insurers are propounding because they're asking

12 the questions that our clients are interested in hearing too

13 and that we feel are relevant to the issues before the court.

14    We were hopeful that there would be a transparency

15 on the part of the Boy Scouts in providing the record as to

16 what went into the RSA.  We're deeply disappointed that we,

17 from afar, and looking at attending depositions haven't been

18 able to get those answers either.  There were a tremendous

19 amount of objections, a tremendous amount of instructions not

20 to answer.  And the fundamental questions as to what they

21 considered and when with respect to this weren't answered,

22 Your Honor.

23    My clients don't have the resources to attend

24 deposition after deposition and review hundreds of thousands

25 of pages or tens of thousands of pages.  We are depending upon

1  Boy Scouts to not drag us along in bare knuckle litigation.

2  We are depending on them to voluntarily provide a record that

3  was reasonably asked for with respect to what was considered

4  and going to the RSA.

5        From the position of my two clients, Your Honor,

6  you know, at this point we're not sure why we're going

7  forward.  We're being told that the RSA is not the end of the

8  line.  We're being told there will be further negotiations

9  specifically with the chartered organizations, with the

10  treatment in the RSA.  It is not the treatment that they

11  ultimately intend to solicit.

12        So from our perspective and the costs on the

13  estate, the costs on the individual parties who are paying

14  their own legal fees to be proceeding with an RSA hearing when

15  we're being told that the deal for which approval is sought is

16  not going to be the deal that is going to be solicited.  We're

17  left with the question as to what are we doing and what is

18  going to be gained.  Whey are out clients being dragged along

19  and forced to spend money objecting to things that aren't

20  going to be the end of the deal.

21        We would much prefer, as it has in the past, that a

22  stopped litigation be put.  If there are going to be

23  negotiations with chartered organizations lets have that.

24  Let's get to the deal that is ultimately going to be

25  solicited.  Maybe it's this deal because there is no deal with

1  chartered organizations, but as of this date, Your Honor,

2  there has not been one substantive mediation with chartered

3  organizations.

4          Boy Scouts doesn't exist without us; it's a plan

5  and simple fact.  So before we spend all this time and money

6  on litigations why don't we see if the plaintiffs, and the

7  scouts, and local counsels can come to an agreement with the

8  chartered organizations to allow us to continue the

9  relationship that they need to go forward.

10          That is all I have, Your Honor.

11          THE COURT:  Thank you.

12          MR. KURTZ:  Your Honor, may I take a minute or two

13  just to offer a very brief response?

14          THE COURT:  Mr. Kurtz?

15          MR. KURTZ:  As to Mr. Ryan I mean I want to be

16  clear, I mean we're not bare knuckling this at all.  I know

17  what bare knuckle litigation is.  We're the debtor and we're

18  not taking that approach.  I agree that the chartered

19  organizations are important.  My understanding is there is a

20  mediation coming with them, but it's kind of off-point for

21  today.  But I would just note that being able to reach an

22  agreement with the most important and largest creditor group

23  under the RSA doesn't have to wait for the agreements of

24  others which we hope will be forthcoming.

25          The only other comments I wanted to make is just a

1  practical one.  We're not talking about a failure to supply

2  information that is somehow relevant to the truth in any of

3  this.  What the objectors are looking to do here is to

4  identify purported deficiencies.  And every time that they get

5  the true evidence that they don't have those deficiencies

6  they're upset by it.

7          So it's not the failure to produce information that

8  would be problematic, it's the production of information that

9  is problematic to their objection.  Maybe the best example is

10  counsel referred to authorization.  That can't be a serious

11  contest here that the board of the Boy Scouts has authorized

12  the Boy Scouts to enter into the RSA.  So they're looking for

13  some sort of expedited discovery issue to say, well, we don't

14  have enough proof of that when that can't be a serious issue

15  in the case.

16          So I just wanted to note that we're not missing

17  information to get to the truth finding exercise here.  If

18  anything they're just concerned that we're giving them

19  information that undercuts the objections.

20          Thank you for your time, Your Honor.

21          THE COURT:  Mr. Kurtz, I think my response to that

22  is if it's helpful information than it should have been

23  produced in the first instance.  There shouldn't have been any

24  holding it back.  I am not persuaded by that argument.

25          Well I'm not going to take this off calendar, but I

1   am concerned by two things, I will just say.  One, if this

2   issue of mediation privilege and withholding of documents was

3   evident on July 8th, given the schedule that we had, it really

4   should have been brought to me sooner.  And I understand the

5   obligation under our local rules to meet and confer, but --

6   and, of course, I encourage all parties to meet and confer,

7   but bringing issues to me at the last minute is not helpful.

8           On the other hand while I haven't seen any of the

9   documents that the debtors have redacted, and I haven't read a

10  complete deposition of any of the witnesses that have been

11  deposed, on the surface it would seem to me that board

12  resolutions with respect to the RSA, presentations with

13  respect to the board's consideration of the RSA, board minutes

14  with respect to the resolution of the RSA are all fair game

15  and not part of mediation privilege.

16          If the particular documents, I suppose, contain

17  communications that only took place in connection with

18  mediation then perhaps some portion of those documents could

19  be redacted.  But providing -- but mediation doesn't clock

20  discovery and information that is, otherwise, discoverable

21  just because you also put it into the mediation process or

22  communicated information you have to the mediator or other

23  parties.

24          So I am concerned that the mediation privilege may

25  have been too broadly construed.  Again, I haven't seen a

1  document so I don't know, but intuitively those types of

2  documents don't seem to me to fall within the mediation

3  privilege and it would seem to me are very relevant to the

4  issues before the court which the parties have framed is, at

5  least, the debtors' business judgment.  I realize some parties

6  have said that there is an entirely fair standard, but at

7  least business judgment.

8          So I think its fair game.  What did the debtor

9  consider?  When did they consider it?  What did they decide?

10 What did they not consider?  All fair game.

11         So having said that, as I said, I'm not going to

12 take this off calendar.  We will see how the hearing goes.

13 But if I determine that the witnesses are now testifying about

14 topics from which they were precluded from testifying at

15 deposition I am unlikely to hear that testimony.

16         I know there was a separate motion by Hartford.  I

17 don't have enough information to know whether I am going to

18 strike Mr. Mosby's testimony.  We're going to deal with that

19 also at the hearing.  The debtors want to file a response to

20 that you can.  I don't think I've received one yet or if you

21 filed it, it hasn't gotten to my desk.

22         MR. KURTZ:  We have not filed yet, Your Honor.

23 Thank you.  We will file something.

24         THE COURT:  Okay.  That is all I had for today.

25 Let me also say that on Thursday we will be taking a break

1  around 12:10 till about 1:20, 1:30.  So factor that as your

2  lunch time and break time.

3         MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott,

4  again, counsel for the debtors.

5         There is one other matter that I think Ms. Lauria

6  would like to bring to the court's attention.  So may I ask

7  the court's indulgence to hear one last bit from her.

8         THE COURT:  Ms. Lauria?

9         MS. LAURIA:  Thank you, Your Honor.  Jessica

10  Lauria, White & Case, on behalf of the debtors.

11         Your Honor, we did think it was our obligation to

12  bring one additional matter to the court's attention and that

13  is the following.  The restructuring support agreement that is

14  currently before the court provides that it terminates, by its

15  terms, tomorrow evening.  We have been in discussions with the

16  RSA parties to extend that termination deadline to actually

17  enable us to get to a hearing with respect to the RSA motion.

18  To date the RSA parties have been unwilling to extend.

19         Those negotiations concerning an extension beyond

20  tomorrow are in process.  They literally lasted until the

21  start of today's hearing and I suspect they will continue

22  tomorrow, but we did not think it was appropriate, Your Honor,

23  to not bring this to the court's attention in the event that

24  for some reason the RSA deadline is not extended tomorrow.

25         THE COURT:  Okay.  I changed my mind.  We're not

1  going forward with the RSA hearing on Thursday.  If the

2  parties -- the parties haven't agreed to extend the deadline.

3  I am not having people prepare.  I am not having people take

4  depositions.  I am not having people continue to discuss.  So

5  that hearing is canceled and if the debtors want to re-notice

6  that hearing they can ask for permission to do so.  I am not

7  going to make parties who are not party to the RSA to continue

8  to prepare for a hearing that may be meaningless.

9          So thank you, Ms. Lauria.  Yes, that was very

10 appropriate to bring it to my attention and that is my ruling.

11 So thank you, everyone.  We're adjourned.

12         (Proceedings concluded at 3:44 p.m.)

13

14

15

16

17                        CERTIFICATE

18

19     I certify that the foregoing is a correct transcript

20 from the electronic sound recording of the proceedings in the

21 above-entitled matter.

22
   /s/Mary Zajaczkowski              July 27, 2021
23 Mary Zajaczkowski, CET**D-531

24

25