# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 20-10343 (LSS) <br><br> (Jointly Administered) |

### CENTURY'S MOTION IN *LIMINE* TO BAR THE DEBTORS FROM OFFERING EVIDENCE IN SUPPORT OF THEIR APPLICATION FOR FEES ON WHICH THEY HAVE REFUSED TO PROVIDE DISCOVERY

Century respectfully requests entry of an order barring the Debtors from offering evidence or testimony in support of their application for fees under the *Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5466] (the "**RSA Motion**") for which the Debtors have refused to provide discovery.

## PRELIMINARY STATEMENT

It is a matter of black letter law that the proponents of a motion may not offer evidence in support of the motion at a hearing on which they have refused to provide a discovery. Here, in response to timely served request for production, Brown Rudnick refused to produce ***any*** documents whatsoever.[2] According to Brown Rudnick, every communication it has had, even

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 13 25 West Walnut Hill Lane, Irving, Texas 75038.

[2] *See Declaration of Samantha Indelicato in Support of Century's Motion in Limine to Bar the Debtors From Offering Evidence in Support of Their Application For Fees on which They Have Refused to Provide Discovery*, dated August 10, 2021 (hereinafter referred to as the "**Indelicato Dec.**"), Exh. A (Brown Rudnick LLP's Reponses and Objections to Century Indemnity Company's Subpoena to

with adverse parties, is "mediation privileged" regardless of when the communication took place or with whom the communications took place.[3] The Debtors, for their part, have taken a similar blanket position refusing to produce its communications with the Coalition about its demand for fees or to un-redact the Board minutes and submission discussing the Coalition's demand for fees.  Nor have the Debtors produced any minutes or resolution authorizing BSA to agree to pay the Coalition's fees. If such minutes or resolution were produced, it is significantly redacted so it is not clear to what extent BSA authorized such payment.

As a result, the record is devoid of contemporaneous documents concerning the demand for fees or the work the Coalition allegedly performed.[4]  Whether subject to review under section 363 or section 503, the proponents of a motion authorizing the payment of fees to non-estate professionals bear the burden of proof.  The Debtors propose to meet that burden through nothing more than the cursory assertion by Mr. Whitman that the Coalition was "helpful" in

---

Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding)) Nos. 1, 2, and 3 (invoking Rule 9019-5(d) of the Local Rules to deny production of any communications or documents); Indelicato Dec., Exh. B (The Coalition of Abused Scouts for Justice's Responses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding)) Nos. 1, 2, and 3 (same).

[3]  In response to the document requests, the Coalition and Brown Rudnick objected to the requests "as improperly propounded under the Local Rules to the extent it seeks information protected from disclosure pursuant to Rule 9019-5(d) of the Local Rules, which provides, in part, 'except as set forth in the previous sentence, no person shall seek discovery from any participant in the mediation with respect to any information disclosed during mediation.'" *See* Indelicato Dec., Exh. A, Nos. 1, 2, and 3; Indelicato Dec., Exh. B, Nos. 1, 2, and 3.

[4]  *See Century's Supplemental Objection to the Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement and (II) Granting Related Relief* [D.I. 5928]; *Century's Objection to the Payment of the Coalition's Lawyers in Accordance with the Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement, and (II0 Granting Related Relief* [D.I. 5707] (the "**Century RSA Fee Objection**").

agreeing to sign the RSA while withholding for production all documents concerning what the Coalition actually did and what was communicated about the fee demands.[5]

## STATEMENT OF FACTS

### *Century Timely Served Requests for Production*

On May 14, 2021, Century served a subpoena on Brown Rudnick asserting fourteen request for production. Several requests for production were served asking for the production of all documents concerning the request for fees and all information about the fees sought. Other requests for production sought the production of term sheets and plan documents, including drafts of the TDPs, if any, that were exchanged among the parties. The requests themselves were simple, straightforward and unobjectionable. For example, request number 1, 2 and 3 sought:

- All Documents that refer or relate to any demand or request that the Debtors support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to Brown Rudnick for fees and/or costs.

- All Documents that refer or relate to any demand or request that the Debtors support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to (a) any lawyer or law firm that represents the Coalition or (b) to the Coalition for the fees and/or costs of any lawyer or law firm that represents the Coalition.

- All Documents that refer or relate to any demand or request that the Debtors support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to any vendor and/or consultant of the Coalition or vendor and/or consultant engaged by counsel for the Coalition on matters for the Coalition.[6]

---

[5] After reviewing the Debtors' production, Century only identified a handful of document that mention the Coalition's fees. The un-redacted portions of the documents do not reflect the analysis of the Coalition's fee requests as set forth in the RSA.

[6] Indelicato Dec., Exh. C (Century Indemnity Company's May 14th Subpoena of Brown Rudnick LLP To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)). Century also served substantially similar requests on the Debtors and the Coalition prior to the existence of the RSA. *See* Indelicato Dec., Exh. D (Century Indemnity Company's May 14, 2021 Requests to the Debtors for Production of Documents); Indelicato Dec., Exh. E (Century Indemnity Company's June 11th Subpoena of The Coalition of

Separately, requests for production were timely served on the Debtors seeking documents concerning the demand for fees, the consideration of the BSA Board with regard to those demands and copies of the minutes and/or resolutions, if any, that authorized BSA to agree commit itself to pay the fees demanded.

- All Documents Concerning any request that You support a motion, application or inclusion of a provision in the RSA, the Term Sheet, the TDPs, the Settlement Trust Documents, the Hartford Settlement, and/or any Plan of Reorganization that calls for the payment of money to any of the Coalition Professionals, including but not limited to Brown Rudnick LLP, for its fees and/or costs.

- All Documents Concerning any request that You support a motion, application or inclusion of a provision in the RSA, the Term Sheet, the TDPs, the Settlement Trust Documents, the Hartford Settlement, and/or any Plan of Reorganization that calls for the payment of money to any lawyer or law firm associated with the Coalition for its fees and/or costs.

- All Documents reviewed and/or relied upon by You in setting the Monthly Fee Cap for the payment of fees and expenses incurred by Coalition Professionals.

- All Documents, including any summaries of invoices, received by You from any of the Coalition Professionals to support Your payment of "reasonable, documented and contractual professional fees and expenses."

*See* Indelicato Dec., Exh. F, *Propounding Insurers' Requests to the Debtors for the Production of Documents*, dated July 3, 2021, Nos. 8, 9, 18, and 19.[7]

---

Abused Scouts for Justice To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)).

[7] *See also* Indelicato Dec., Exh. D, No. 1 ("All Documents that refer or relate to any request that You support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to Brown Rudnick LLP for their fees and/or costs."); No. 2 ("All Documents that refer or relate to any request that You support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to any lawyer or law firm associated with the Coalition for their fees and/or costs."); No. 3 ("All Documents that refer or relate to any demand or request that You support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to any vendor or consultant to the Coalition.").

*The Refusals to Comply with*
*Discovery and Withholding Documents*

On June 9, 2021, Brown Rudnick responded to Century's May 14, 2021 requests for production. Brown Rudnick asserted privilege with regard to every document it and the Coalition has concerning this case and refused to produce anything.[8] In a subsequent meet and confer with Eric Goodman of Brown Rudnick, Mr. Goodman confirmed that the Coalition refused to produce any documents whatsoever in response to the requests including its requests for fees and the work it did in connection with its application for fees.[9] The Debtors similarly have failed to produce basic documents and communications in response to the insurers' requests for documents about the Coalition's requests for fees.[10]

## ARGUMENT

### POINT I.

**BASIC PRINCIPLES OF FUNDAMENTAL FAIRNESS AND DUE PROCESS PRECLUDE THE INTRODUCTION OF EVIDENCE AT THE HEARING ABOUT THE COALITION'S FEES ON WHICH THE DEBTORS AND COALITION HAVE REFUSED DISCOVERY**.

The Debtors should not be allowed to elicit testimony or otherwise introduce evidence during the hearing on topics that relate to the withheld documents or where its deponents were

---

[8] *See* Indelicato Dec., Exh. A, Brown Rudnick LLP's Reponses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding), Nos. 1, 2, and 3 (invoking Rule 9019-5(d) of the Local Rules to deny production of any communications or documents); *see also* Indelicato Dec., Exh. B, The Coalition of Abused Scouts for Justice's Responses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding), Nos. 1, 2, and 3 (same).

[9] *See* Indelicato Dec., Exh. G, June 1, 2021 Emails between Tancred Schiavoni and Brown Rudnick.

[10] The Debtors' objection to each request in the requests dated July 3, 2021 with the following: "The Debtors further object to this Request for Production as seeking Confidential Materials and Privileged Materials, including information protected by the attorney-client privilege and mediation privilege, in violation of Delaware Local Rule 9019-5(d)(i) and the Mediation Order." *See* Indelicato Dec., Exh. H, *Debtors' Responses and Objections to Propounding Insurers' Requests to the Debtors for the Production of Documents*, Nos. 8, 9, 18, 19.

instructed not to answer. *See Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, 2017 WL 9802844 (S.D.N.Y. Sept. 15, 2017). It is unfair to all opposing parties to introduce new evidence after the Debtors withheld documents based on privilege and instructed deposition witnesses not to reveal confidential attorney-client communications or communications that occurred during the mediation. *See id.* at *6 (finding that, with fact discovery closed, "[i]t would be unfair to the other party—and wildly inefficient from a case management standpoint—to permit Deutsche Bank to change its mind at some point in the future and assert a defense that would necessarily require the reopening of fact discovery, the production of documents previously withheld on privilege grounds, and the recall of deposition witnesses who were previously instructed not to testify about any legal advice they received.").

The Debtors and Brown Rudnick unambiguously chose to assert privilege over producing nearly all documents requested relating to the Coalition's fee demands (or have otherwise redacted them to the point of uselessness). It would be fundamentally unfair and a distortion of the adversarial system for the Debtors to claim that everything relevant is privileged—in an attempt to undercut objections—while then introducing such testimony or evidence later at the hearing. Among other things, the Court as factfinder will be left without a way to test the present testimony of a paid consultant against what was actually said and done contemporaneously. The TCC, FCR, and Coalition concede this proposition in their now moot motion *in limine* filed on Friday [D.I. 5898]. The Debtors have offered nothing to contest this proposition.[11]

---

[11] During the July 27th discovery conference, the Court made a similar ruling in connection with the RSA discovery Indelicato Dec., Exh. I, July 27th Discovery Conference Tr. at 25:13-15 ("[I]f I determine that the witnesses are now testifying about topics from which they were precluded from testifying at deposition I am unlikely to hear that testimony.").

## POINT II.

### THE DEBTORS AND COALITION HAVE PUT AT ISSUE WHAT THE COALITION DID TO WARRANT $10.5 MILLION AND WHAT BSA'S BOARD CONSIDERED AND APPROVED

In the Debtors' RSA Motion and Coalition's supporting brief, they both make broad conclusory assertions that the Coalition was "helpful" and thus should be awarded $10.5 million. These same conclusory assertions are made in the Debtors' reply brief.[12] Yet, the Debtors and Brown Rudnick have refused to produce their communications concerning the Coalition demand for fees that they themselves have put at issue or basic documents reflecting what was done.

A party's participation in settlement and agreement to settle does not constitute a substantial contribution. *See* Century RSA Fee Objection [D.I. 5707], ¶¶ 34-37. Nor is participation in mediation and agreement to support the plan a basis to demand fees. *See In re Alumni Hotel*, 203 B.R. 624, 632–33 (Bankr. E.D. Mich. 1996) (rejecting a substantial contribution claim where the principal contribution was negotiation because otherwise "all

---

[12] *See* D.I. 5759, ¶ 108 ("The Debtors have determined, in the exercise of their business judgment, that compensating the Coalition for reasonable, documented and contractual fees and expenses will enable the Coalition to remain engaged as a representative of Abuse Survivors that can ensure the Debtors attain the necessary support to confirm the Amended Plan in accordance with the RSA. The Coalition and the Coalition Professionals have already provided, and will continue to provide, significant benefits to the Debtors' estates by helping to maximize value to be distributed to creditors, providing more certainty in negotiations about the ability to deliver the votes necessary to confirm the Amended Plan and thus implement a settlement, and reducing costs by providing a coordinated point of contact for such a large group of plaintiffs rather than being forced to engage with dozens or more groups."); D.I. 5766, ¶ 14-15 (" I believe that payment of certain of the Coalition's past and future fees and expenses, on the terms set forth in the RSA, is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates and to creditors as a whole. . . . The Coalition and the Coalition Professionals have already provided, and will continue to provide, significant benefits to the Debtors' estates by helping to maximize value to be distributed to creditors, providing more certainty in negotiations about the ability to deliver the votes necessary to confirm the Amended Plan and thus implement a settlement, and reducing costs by providing a coordinated point of contact for such a large group of plaintiffs rather than being forced to engage with dozens or more groups").

parties to [the] settlement might well argue that they, too, made a 'substantial contribution' by agreeing to compromise their claims."). Far more is needed.

The Debtors and the Coalition cannot broadly put at issue the Coalition's demand for fees and communications about them and then withhold documents exchanged among adversaries about them on grounds of privilege. "[T]he [attorney-client] privilege may be implicitly waived when [a party] asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). This doctrine—at issue waiver—also applies to the work product privilege. *Tribune Co. v. Purcigliotti*, 1997 WL 10924, at *6–7 (S.D.N.Y. 1997).

## POINT III.

### THE DOCUMENTS AND TESTIMONY WITHHELD BY THE DEBTORS AND COALITION ON THE FEE DEMAND ARE ALL-ENCOMPASSING IN NATURE.

The Debtors did not include in its original production documents or board minutes or communications concerning the fee demands. In its supplemental production, BSA stood on its position and has even now not produced un-redacted minutes that discuss BSA's consideration of the fee demands and/or any minutes or resolutions, if any exist, that authorize the Debtors to agree to the fee demands set forth in the RSA. Nothing was produced reflecting any due diligence on the fee demands, discussions concerning them, let alone evidence of compliance with any of the elements for establishing a substantial contribution award. The Court need not deliberate long on Brown Rudnick's lack of compliance; it simply refused to produce any documents whatsoever concerning the case.

When the Debtors' three witnesses were deposed in connection with the RSA – Mr. Whittman, the CRO for the Debtors, Mr. Mosby, the president and CEO of BSA, and Mr.

Ownby, the chair of the BSA Board of Directors – ███████████████████████

████████████████████████████████████████████████

Mr. Whittman was repeatedly directed not to answer questions ███████████████

███████████████ And, following counsel's instruction, he did not answer the following questions:

- ████████████████████████████████████████████
████████████████████████████████████

████ Indelicato Dec., Exh. J, Whittman Dep. Tr. at 125:9-16.

- ████████████████████████████████████████████
████████████████████████

████████████████████

████ Indelicato Dec., Exh. J, Whittman Dep. Tr. 127:6-11.

- ████████████████████████████████████████
████████████████████████

████████████████████████████████

████ Indelicato Dec., Exh. J, Whittman Dep. Tr. at 128:9-16.[13]

- ████████████████████████████████████
████████████████

---

[13] The Debtors withdrew their direction to Mr. Whittman not to answer this question after the date for opposition briefs were filed but did not produce the documents themselves making the offer of further inquiry illusory. *See* Indelicato Declaration, Exh. K, Samuel Hershey's July 31, 2021 letter to the Insurers.

███████████████████████████████████████████

████████ Indelicato Dec., Exh. J, Whittman Dep. Tr. at 162:21-163:1.

- ███████████████████████████████████████

███████████████████████████

███████████████████████████

████ Indelicato Dec., Exh. J, Whittman Dep. Tr. at 163:6-11.

Even after the Court gave guidance on how the Debtors should proceed at the July 27th conference, the Debtors declined to withdraw these directions not to answer, except for the question posed in the third bullet point about ████████████████████████████ ████ While the Debtors withdrew this direction, ████████████████████████ █████████████████████████████████████████, making the offer for further questioning utterly illusory.[14]

BSA's CEO, Mr. Mosby, ███████████████████████████████████ ██████████ Indelicato Dec., Exh. L, Mosby Dep. Tr. at 221:25-222:7. ██████ ████████████████████████████.[15]

███████████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████

---

[14] *See* Indelicato Declaration, Exh. K, Samuel Hershey's July 31, 2021 letter to the Insurers.
[15] *See* Indelicato Dec., Exh. L, Mosby Dep. Tr. at 165:16-23 ████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ *see also id.* at 162:16-166:11 ████████████████████████████████████████

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Indelicato Dec., Exh. L, Mosby Dep. Tr. at 218:1-18. He also could not answer any questions regarding the ■■■■■■■■



Indelicato Dec., Exh. L, Mosby Dep. Tr. at 222:8-223:17. Based on Mr. Mosby's testimony, ■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■

Similarly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indelicato Dec., Exh. M, Ownby Dep. Tr. at 117:17-22. But, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Indelicato Dec., Exh. M, Ownby Dep. Tr. at 118:10-13.

Without any evidence or discovery in advance of the hearing, it is unfair to allow the Debtors to supplement the record at the last minute after actively withholding documents or testimony that could explain the Debtors' decision to pay the Coalition's fee. The Debtors should not be allowed to introduce new testimony and evidence that was not covered in their production and depositions.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that Century has met and conferred with the Debtors in good faith on issues raised in this Motion in Limine. Additional letters exchanged between the parties further evidence the Century's attempts to resolve these matters without burdening the Court. A selection of that correspondence is attached as Exhibit N to the Indelicato Declaration.

## NOTICE

Notice of this motion has been provided to (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Tort Claimants' Committee; (e) counsel to the Future Claimants' Representative; (f) counsel to the Coalition; (g) counsel to the Ad Hoc Committee of Local Councils; and (g) all parties

requesting notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002. Century submits that no other or further notice is necessary under the circumstances.

## **CONCLUSION**

WHEREFORE, Century respectfully requests that the motion be granted and that the Debtors be barred from offering any testimony or other evidence at the hearing concerning what the Coalition purportedly did or did not do to justify a substantial contribution award beyond participating in discussions of and agreeing to the RSA.

Dated: August 10, 2021

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile: 302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile: 212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

# **EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

**[PROPOSED] ORDER GRANTING CENTURY'S MOTION IN *LIMINE* TO BAR THE DEBTORS FROM OFFERING EVIDENCE IN SUPPORT OF THEIR APPLICATION FOR FEES ON WHICH THEY HAVE REFUSED TO PROVIDE DISCOVERY**

Upon consideration of the motion (the "**Motion**") filed by Century for entry of an order barring the Debtors from offering evidence or testimony in support of their application for fees under the *Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5466] (the "**RSA Motion**") for which the Debtors have refused to provide discovery, all as more fully set forth in the Motion; and due and sufficient notice of the Motion to Shorten having been provided under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

this Court's entry of a final order being consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion in Limine is GRANTED as set forth herein.

2. The Debtors are barred from offering evidence or testimony in support of their application for which the Debtors have refused to provide discovery.

3. The Court shall retain exclusive jurisdiction over matters pertaining to this Order.

OMM_US:80121790.7