# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>                       Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Re: D.I. 5485, 5488, 5488-1, 3265** |

### JACOBS & CRUMPLAR AND THE NEUBERGER FIRM CLAIMANTS' SUPPLEMENTAL OBJECTION TO THE ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT IN SUPPORT OF AMENDED CHAPTER 11 PLAN OF REORGANIZATION AND OBJECTION TO THE DEBTORS' REVISED PROPOSED SOLICITATION PROCEDURES ORDER

## I. INTRODUCTION

1. On April 30, 2021, the Claimants represented by Jacobs & Crumplar, P.A. and The Neuberger Firm (the "Claimants") filed their *Objection to the Adequacy of Debtors' Disclosure Statement in Support of Amended Chapter 11 Plan of Reorganization* (Dkt. No. 2741).

2. On July 2, 2021, the Debtors filed the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (Dkt. No. 5484) ("the Plan"),[1] the *Amended Disclosure Statement for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* ("the Disclosure Statement") (Dkt. No. 5485), and the *Notice of Filing of Revised Proposed Solicitation Procedures Order* ("the Solicitation Procedures") (Dkt. No. 5488). On July 7, 2021, the Debtors filed the *Third Amended Notice of Hearing to Consider Approval of Disclosure Statement and Solicitation Procedures for the Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, (Dkt. No. 5527) and noted that "[t]o the extent any party has already filed an objection to the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan. Statutory references are to the Bankruptcy Code unless otherwise noted.

1

Disclosure Statement consistent with the procedures prescribed in the Prior Notice, it does not need to refile such objection." Dkt. No. 5527 at 1.

3. The Claimants re-assert and restate the facts, legal arguments, and objections made in their prior objection, and object to the Disclosure Statement and the Solicitation Procedures for the additional reasons stated below.

## II. SUPPLEMENTAL OBJECTION

4. The Plan is not nearly ready to be put out for a vote. Many questions the Claimants and others have raised in their prior Objections involve fundamental features of the Plan, including the mechanisms for the treatment of Local Councils, Chartered Organizations, and insurance rights and insured claims. Those questions remain unanswered, leaving the Claimants without adequate information to make an informed judgment regarding the Plan. *See* § 1125(a)(1), (b).

5. The Disclosure Statement must incorporate adequate information about the material risks arising from coverage positions asserted by liability insurers for the Debtors and non-debtors that, if successful, in whole or in part, could substantially limit or eliminate insurer contributions and significantly reduce amounts claimants could recover from the Trust.

6. Because claimants' rights against the Local Councils differ, the Disclosure Statement must address at a minimum:

    a. Local Council assets and liabilities (including separate insurance assets);

    b. The claims asserted against each Local Council;

    c. Claimants' estimated recovery against each Local Council (without regard to insurance shared with the Debtors); and

    d. The amount contributed by each Local Council for its release.

Only with that information can an individual claimant with claims against a financially strong or well-insured Local Council make an informed judgment whether or not to accept the less favorable

treatment offered by the Plan, release the Local Councils, and agree to forego its claims under nonbankruptcy law as against its responsible Local Council.

7. The Disclosure Statement and Plan indicate that a post-confirmation trustee can enter into settlements that will release and enjoin current and future claims against non-debtor Chartered Organizations, and neither creditors who actually hold abuse claims against such Chartered Organizations, nor this Court, will have any say in approving that settlement or the modification of the Court's Channeling Injunction. Impacted creditors have no right to vote on that relief, and this Court will not be asked to (or be in a position to) find that the expansion of its Channeling Injunction to cover a new Protected Party is fair and equitable or that an overwhelming number of impacted creditors support the relief. These procedures are wholly inadequate to protect the rights of the parties being enjoined. Disclosure must be made as to the identity of any third party non-debtor Chartered Organization that becomes a Protected Party under the Plan and the contribution being made to obtain the protection of this Court's Channeling Injunction before the votes are cast.

8. The Claimants further object to the adequacy of the Disclosure Statement because it fails to explain the material risks arising from hotly disputed coverage positions asserted by the Debtors' and non-debtor Protected Parties' carriers (Dkt. No. 5684) that, if successful in whole or in part, could substantially limit or eliminate insurer contributions and significantly reduce amounts claimants could recover from the Trust. Although the Claimants believe these self-serving "coverage defenses" are incorrect in the context of this case — legally and factually — court decisions throughout the country have not been uniform in addressing them. Accordingly, abuse survivors must understand the nature of these risks and that that the insurers are well-funded, experienced in contesting abuse claims in the court system, and fully prepared to engage in protracted litigation over their policy obligations. A number of "coverage defenses," if successful, could potentially eliminate insurer recoveries altogether, and others could reduce amounts

available to Claimants. Moreover, the agreement of the Local Councils to resolve their liability without the applicable insurers' involvement and the transfer of the Local Council's insurance rights to the Trust trigger *additional coverage defenses that could further diminish the recovery from the insurers from what a claimant could achieve today* [2] No abuse survivor should read the Disclosure Statement and believe they will receive up to 100% of their claim awarded through the TDP and matrix values without generally understanding these risks.

9.  A number of "coverage defenses" are aimed at eliminating coverage entirely. For example, some insurers contend that pursuing a bankruptcy to address the abuse liabilities and negotiate a proposed settlement, without first obtaining insurer consent, violates the cooperation obligations of the policyholders and results in the forfeiture of coverage. Instead of viewing the bankruptcy process as a legitimate means of addressing decades of sexual abuse nationwide, the insurers would transform the bankruptcy into a coverage forfeiture event. Although Claimants reject this contention, it has been asserted and should be identified and addressed in the Disclosure Statement as a material risk that the insurers are seeking to shift onto abuse survivors. However, the position of the insurers in this regard has been asserted and should be identified and addressed in the Disclosure Statement. Another argument raised by insurers in an effort to eviscerate billions of dollars of historic liability insurance challenges the assignment of insurance policies to the Trust — a cornerstone of the Plan — as violative of the insurance contracts. If successful in their anti-assignment arguments, the insurers could deprive the Trust of billions of dollars of insurance assets otherwise available to the nondebtors to cover their liabilities to abuse victims. As currently drafted, the Disclosure Statement does not provide adequate information to allow a reasonable Claimant to appreciate the material risks of the insurers' positions on these key issues.

---

[2] With respect to any future settlements with Chartered Organizations, the same concerns discussed herein would apply with regard to shared insurance between the Debtors and the settling Chartered Organizations in light of the fact that, starting in approximately 1978, the Chartered Organizations have generally been insured under the same policies as are the Debtors.

10. Other "coverage defenses" may not eliminate coverage entirely, but seek to reduce available coverage substantially. The Debtors proclaim that the TDP may result in creditors receiving up to 100% of the value assigned to their claim under the TDP, *see* Disc. Stmt. (Dkt. No. 5485) at 214, but they fail to disclose or discuss the insurers' argument that those values are not binding on the insurers and that their duty to indemnify their insureds may be capped at the amounts their insureds paid into the Trust. Here, again, the law remains unsettled and conflicting, If the trust distribution awards are not binding, and if the exposure of the insurers is capped at the contribution of their insureds, an abuse survivor whose claim is valued at $2.7 million may receive a small fraction of that amount. The Disclosure Statement must disclose these material risks so abuse survivors can decide whether to vote in favor of a plan that leaves these issues unresolved.

11. The Claimants further object because the Disclosure Statement fails to explain how creditors will be affected if the insurers prevail on these contentions.

12. Wherefore, Claimants respectfully request that the Court should order the Debtors to modify the Disclosure Statement, the Plan, and the Solicitation Procedures so that (1) proper disclosure is made of the assets and liabilities of Local Councils (and any Protected Party) such that direct abuse claimants can meaningfully assess whether the Plan meets the best interests of creditors test; (2) disclosure and opportunity to object to the fairness of any proposed settlement for a Chartered Organization be afforded to all affected claimants before such a Chartered Organization can be deemed a Protected Party under this Court's Channeling Injunction, and (3) disclosure regarding the coverage positions asserted by liability insurers that, if successful in whole or in part, could substantially limit or eliminate insurer contributions and significantly reduce amounts Claimants could recover.

Respectfully submitted,

/s/Raeann Warner
Thomas C. Crumplar, Esq (# 942)
Raeann Warner, Esq. (#4931)
Jacobs & Crumplar, P.A.
750 Shipyard Dr., Suite 200
Wilmington, DE  19801
Telephone: (302) 656-5445
Facsimile: (302) 656-5875
E-mail: Raeann@jcdelaw.com
             Tom@jcdelaw.com

Thomas S. Neuberger, Esq. (#4440)
Stephen J. Neuberger, Esq. (#243)
The Neuberger Firm
17 Harlech Dr.
Wilmington, DE 19807
Telephone: 302-655-0582
Facsimile: 302-656-5875
E-mail:  tsn@neubergerlaw.com
              sjn@neubergerlaw.com

*Counsel to the J&C/TNF Claimants*

Dated: August 13, 2021
         Wilmington, Delaware

# APPENDIX A

The foregoing Supplemental Objection to the Adequacy of the Debtors' Disclosure Statement in Support of Amended Chapter 11 Plan of Reorganization and Objection to the Debtors' Revised Proposed Solicitation Procedures Order was filed by the following creditors who each filed a Sexual Abuse Survivor Proof of Claim and are represented by Jacobs & Crumplar, P.A. and The Neuberger Firm. The numbers below are the claim numbers for each creditor's Sexual Abuse Survivor Proof of Claim.

| | | | | |
|---|---|---|---|---|
| **SA4640** | | | | |
| **SA4643** | | | | |
| **SA19413** | | | | |
| **SA19450** | | | | |
| **SA22917** | | | | |
| **SA4646** | | | | |
| **SA4650** | | | | |
| **SA22277** | | | | |
| **SA96613** | | | | |
| **SA71028** | | | | |
| **SA19440** | | | | |
| **SA18129** | | | | |
| **SA96610** | | | | |
| **SA4659** | | | | |
| **SA22918** | | | | |
| **SA4663** | | | | |
| **SA4665** | | | | |
| | | | | |