IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 5485, 5488, 5488-1, 3265 |

# HERMAN LAW CLAIMANTS' SUPPLEMENTAL OBJECTION TO THE ADEQUACY OF DEBTORS' AMENDED DISCLOSURE STATEMENT FOR THE FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION

This Supplemental Objection to the Adequacy of Debtors' Amended Disclosure Statement for the Fourth Amended Chapter 11 Plan et al. dated July 2, 2021, is filed on behalf of the 183 Claimants represented by Herman Law (hereinafter referred to as the "Herman Law Claimants").[1]

## INTRODUCTION

1. On May 6, 2021, the Herman Law Claimants filed their Joinder in the Objection of the Tort Claimants' Committee and Objection to the Adequacy of Debtor's Disclosure Statement et al. (ECF no. 3182). The Herman Law Claimants reassert and restate the arguments and objections made in their prior Objection, and object to the Amended Disclosure Statement for the additional reasons stated below.

2. Many issues the Herman Law Claimants and others have raised in their prior Objections involve fundamental features of the Fourth Amended Chapter 11 Plan of Reorganization (the "Plan"), including the mechanisms for the treatment of Local Councils, Chartered Organizations, and insurance rights and insured claims. Those questions remain

---

[1] The list of Herman Law Claimants with duly filed Proofs of Claim in proposed Class 8, Direct Abuse Claims, is filed at ECF no. 3182, Attachment 1.

unanswered, leaving creditors without adequate information to make an informed judgment regarding the Plan. *See* § 1125(a)(1), (b).

3. The Herman Law Claimants file this Supplemental Objection to point out additional deficiencies in the information provided in the Amended Disclosure Statement, as follows:

a) the Amended Disclosure Statement must incorporate adequate information about the liquidation value of direct abuse claims against non-debtors released by the Plan so individual claimants may assess whether the Debtors satisfy the best interests of the creditors test for a confirmable plan;

b) the identity of any non-debtor Chartered Organization designated a Protected Party under the Plan, its potential liability to claimants, and the contribution being made to obtain the protection of this Court's Channeling Injunction, must be disclosed before the Channeling Injunction can be issued by the Court. Alternatively, if a settlement with a Chartered Organization is reached post-confirmation that provides for the Court's Channeling Injunction to be modified to designate the Chartered Organization as a Protected Party, the same material information must be disclosed and then all affected claimants must be given notice and an opportunity for a hearing to assess the fairness of such post-confirmation settlement to the affected claimants before the modification becomes effective, otherwise impacted creditors will have no right to vote on that relief, and this Court will not be in a position to review that relief; and

c) the Disclosure Statement must incorporate adequate information about the material risks arising from coverage positions asserted by liability insurers for the Debtors and non-debtors that, if successful, in whole or in part, could substantially limit or eliminate insurer contributions and significantly reduce amounts claimants could recover from the Trust.

## POINTS AND AUTHORITIES

### A. Required Disclosure Regarding the Pooling of Debtor and Non-Debtor Local Council Assets and Liabilities

4. The Plan bars claimants from pursuing their claims against the approximately 251 non-debtor Local Councils organized as independent legal entities under separate management and control in exchange for an aggregate contribution of $600 million, pools those funds with the other Trust assets, and then allocates those funds among abuse claimants in accordance with the TDP without regard to what recourse particular individual claimants have against which Local Councils. Further, it contemplates a mechanism under which unrelated third parties (the Chartered Organizations) who have independent tort liability to some but not all abuse claimants, may also be granted a release that would be binding on all abuse claimants without regard to any disclosure, voting, Court process or approval, or consent of those directly affected claimants who actually suffered the tortious sexual assaults or abuse for which those third parties are responsible. Presumably the proceeds of these settlements with Chartered Organizations will also be subject to the general pooling of funds contemplated by the Plan and TDP and distributed without reference to which claimants suffered the abuse at their hands.

5. Claimants' state law rights against Local Councils and Chartered Organizations vary significantly. Many claimants have no enforceable claim against these entities. These include claimants who have only claims that are time-barred under applicable non-bankruptcy law. Other claimants have rights only against the estate and a particular Local Council or Chartered Organization. Their Local Council or Chartered Organization may have limited resources or responsibility under applicable law. But some claimants, including many of the Herman Law Claimants, a substantial portion of whom were abused in New York, may have strong claims against financially strong or well-insured Local Councils or Chartered Organizations that have the

ability to satisfy their claims in full or at least in a greater measure than they may receive under the TDP.  For claimants with no, or only weak claims, against third parties, or with claims against financially weak or underinsured third parties, the Plan provides them the opportunity for some recovery where the tort system might leave them with none.  For claimants with claims against financially viable third parties with no statute of limitations defense, the Plan releases their substantial claims and compels them to share the contribution from the released entity with claimants who have no effective litigation alternative.  The Plan ignores the range of non-bankruptcy outcomes against the non-debtors, and effects a substantive consolidation of the Debtors and the Local Councils, sharing the assets they are contributing *pro rata* among all claimants, without regard to the entity against which the claimant actually has claims.   The Amended Disclosure Statement fails to contain adequate information regarding this sharing and the equities involved, which is necessary for differently situated claimants to evaluate the Plan.

6. Because the claimants hold fundamentally different economic rights against the various non-debtors, the pooling and third-party release features of the Plan violate § 1123(a)(4): creditors with superior claims against more solvent non-debtors are being compelled to relinquish those valuable claims but are receiving the same treatment as those without such claims. *See In re AOV Indus., Inc.*, 792 F.2d 1140, 1151-52 (D.C. Cir. 1986) (holding that debtor's plan violated § 1123(a)(4), noting: "It is disparate treatment when members of a common class are required to tender more valuable consideration – be it their claims against specific property of the debtor or some other cognizable chose in action—in exchange for the same percentage of recovery").

7. The Third Circuit has observed that § 1123(a)(4) "does not require precise equality, only approximate equality." *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) (*quoting In re Quigley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007)).  "Certain procedural

differences, such as a delay in receipt of distributions for some claims, do not alone constitute unequal treatment." *In re W.R. Grace & Co.*, 729 F.3d at 327. But here the differences are not minor or procedural, nor is it unworkable to establish how claimants are differentially affected; instead, the differences are substantive and profoundly alter creditor rights.

8. It may well be that claimants with rights against non-debtor Local Councils (and Protected Parties) will agree to vote to release the Local Councils and share some or all of the amounts they contribute with other claimants who do not have such rights as part of a general pooling of assets and liabilities. Perhaps their vote to do so as a class could bind all class members under some circumstances. But to force pooling of the proceeds of non-debtor settlements based on lumping together a small number of claimants with rights against the wealthier, better-insured settling Local Councils with vastly larger numbers of other claimants without such rights, and giving each claimant one vote on the matter, would breach not only the equal treatment mandate of section 1123(a)(4), but also violate the classification and voting provisions in chapter 11. Certainly, there is inadequate information in the Amended Disclosure Statement for claimants to assess this issue.

9. Because claimants' rights against the Local Councils fundamentally differ, the Disclosure Statement must address at a minimum:

   a) Local Council assets and liabilities (including separate insurance assets);

   b) The claims asserted against each Local Council;

   c) Claimants' estimated recovery against each Local Council (without regard to insurance shared with the Debtors); and

   d) The amount contributed by each Local Council for its release.

Only with that information can an individual claimant with claims against a financially strong or well-insured Local Council make an informed judgment whether or not to accept the less favorable treatment offered by the Plan, release the Local Councils, and agree to forego its claims under nonbankruptcy law as against its responsible Local Council.

10. In addition, under the best interest of the creditors test, each claimant is entitled to receive value under the Plan that is at least equal to its rights in liquidation. § 1129(a)(7). In making that calculation the Court must consider the value of rights against non-debtors that are released under the terms of the Plan. *See, e.g.*, *In re Washington Mutual, Inc.*, 442 B.R. 314, 359-60 (Bankr. D. Del. 2011) ("In a case where claims are being released under the chapter 11 plan but would be available for recovery in a chapter 7 case, the released claims must be considered as part of the analysis in deciding whether creditors fare at least as well under the chapter 11 plan as they would in a chapter 7 liquidation"); *In re Quigley Co.*, 437 B.R. 102, 144-46 (Bankr. S.D.N.Y. 2010) (plan violated best interest test because the debtor's liquidation analysis did not reflect that some creditors would retain their rights to sue the solvent non-debtor parent in a chapter 7 liquidation).

11. The Disclosure Statement's purported "liquidation analysis," Dkt. 5485 at Ex. D, is fatally flawed because it does not explain the factual or legal basis for the Debtors' (or Local Councils') belief that certain assets of the Local Councils are restricted, or indicate how much each Local Council will contribute from their (admittedly unrestricted) assets. *Id.* at 16 (asserting, without elaboration, that restrictions regarding some assets have been "validated by BSA's legal analysis"). *Cf. In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 371 (Bankr. D. Mass. 2005) (finding a failure of proof as to whether a third party's contribution was substantial where no information was provided regarding the third party's assets or ability to pay); *In re Mahoney Hawkes, LLP*,

289 B.R. 285, 302 (Bankr. D. Mass. 2002) ("There is no information about whether the contribution is significant in terms of what the partners are able to pay").

### B. Required Disclosure Regarding Unrelated Non-Debtor Protected Parties.

12. The Amended Disclosure Statement and Plan indicate that a post-confirmation trustee can enter into settlements that will release and enjoin current and future claims against non-debtor Chartered Organizations, and neither creditors who actually hold abuse claims against such Chartered Organizations, nor this Court, will have any say in approving that settlement or the modification of the Court's Channeling Injunction. Impacted creditors have no right to vote on that relief, and this Court will not be asked to (or be in a position to) find that the expansion of its Channeling Injunction to cover a new Protected Party is fair and equitable or that an overwhelming number of impacted creditors support the relief. These procedures are wholly inadequate to protect the rights of the parties being enjoined. Disclosure must be made as to the identity of any third party non-debtor Chartered Organization that becomes a Protected Party under the Plan and the contribution being made to obtain the protection of this Court's Channeling Injunction before the votes are cast.

### C. Required Disclosure Regarding Coverage Positions Asserted by Liability Insurers.

13. The Herman Law Claimants further object to the adequacy of the Disclosure Statement because it fails to explain the material risks arising from disputed coverage positions asserted by the Debtors' and non-debtor Protected Parties' carriers (ECF no. 5684) that, if successful in whole or in part, could substantially limit or eliminate insurer contributions and significantly reduce amounts claimants could recover from the Trust. Although the Herman Law Claimants believe these self-serving "coverage defenses" are incorrect in the context of this case, court decisions throughout the country have not been uniform in addressing them. Accordingly,

abuse survivors must understand the nature of these risks. A number of "coverage defenses," if successful, could potentially eliminate insurer recoveries altogether, and others could reduce amounts available to claimants. Moreover, the agreement of the Local Councils to resolve their liability without the applicable insurers' involvement and the transfer of the Local Council's insurance rights to the Trust trigger additional coverage defenses that could further diminish the recovery from the insurers from what a claimant could achieve today. No abuse survivor should read the Amended Disclosure Statement and believe they will receive up to 100% of their claim awarded through the TDP and matrix values without generally understanding these risks.

14. A number of "coverage defenses" are aimed at eliminating coverage entirely. For example, some insurers contend that pursuing a bankruptcy to address the abuse liabilities and negotiate a proposed settlement, without first obtaining insurer consent, violates the cooperation obligations of the policyholders and results in the forfeiture of coverage. Although Herman Law Claimants believe that this contention is without merit, it has been asserted and should be identified and addressed in the Amended Disclosure Statement as a material risk that the insurers are seeking to shift onto abuse survivors.

15. Another argument raised by insurers challenges the assignment of insurance policies to the Trust — a cornerstone of the Plan — as violative of the insurance contracts. The insurers appear to accept that their "anti-assignment" defense is preempted by federal bankruptcy law as to the Debtors, having lost the issue in multiple bankruptcy courts. *See, e.g.*, *In re Combustion Engineering, Inc.*, 391 F.3d 190, 218 (3d Cir. 2004) (bankruptcy law preempts state law and overrides anti-assignment provisions in debtors' insurance policies). However, the insurers continue to challenge assignments of non-debtor policies, an area that remains unsettled. *See id.* at 219 (federal law preemption ruling not applicable to non-debtor participants in

bankruptcy); *Fluor Corp. v. Superior Court*, 61 Cal.4th 1175, 1219 (2015) (overturning prior state law cases and permitting assignment of insurance after damage/injury has occurred). If successful in their anti-assignment arguments, the insurers could deprive the Trust of billions of dollars of insurance assets otherwise available to the non-debtors to cover their liabilities to abuse victims. The Amended Disclosure Statement does not provide adequate information to allow a reasonable claimant to appreciate the material risks of the insurers' positions on these key issues.

16.  Other "coverage defenses" may not eliminate coverage entirely but seek to reduce available coverage substantially. The Debtors proclaim that the TDP may result in creditors receiving up to 100% of the value assigned to their claim under the TDP, *see* Amend. Disc. Stmt. (Dkt. No. 5485) at 214, but they fail to disclose or discuss the insurers' argument that those values are not binding on the insurers and that their duty to indemnify their insureds may be capped at the amounts their insureds paid into the Trust. Here, again, the law remains unsettled and conflicting.[2] If the trust distribution awards are not binding, and if the exposure of the insurers is capped at the contribution of their insureds, an abuse survivor whose claim is valued, for example, at $2.7 million may receive only a small fraction of that amount. The Amended Disclosure Statement must disclose these material risks so abuse survivors can decide whether to vote in favor of a plan that leaves these issues unresolved.

17.  The Herman Law Claimants further object because the Amended Disclosure Statement fails to explain how creditors will be affected if the insurers prevail on these contentions.

---

[2] *Compare Fuller–Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 999-1000 (Cal. Ct. App. 2006) (finding insurer is only required to pay trust payment percentage, not full allowed value); *Flintkote Co. v. Aviva PLC*, 177 F. Supp. 3d 1165, 1178–80 (N.D. Cal. 2016) (discussing *Fuller-Austin* at length and adopting its holding as binding law in California on the interpretation of insurance indemnification contracts), *with UNR Indus., Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1105 (7th Cir. 1991) (concluding under Illinois law, insurer is obligated to pay full allowed value, not just the trust payment percentage, in order to avoid insurer benefitting from UNR's bankruptcy); *National Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co.*, 2012 U.S. Dist. LEXIS 29568 at *11-16 D. Md. Mar. 6, 2012 (rejecting *Fuller-Austin* and concluding under Maryland law, insurers are required to pay full allowed claim value).

The Disclosure Statement goes to great lengths to make abuse survivors believe there is a chance they will actually receive 100% of the value assigned by the TDP, *see* Disc. Stmt. (Dkt. No. 5485) at 214, but it fails to disclose how claimants will fare if the insurers prevail on one or more of their "coverage defenses." The Disclosure Statement indicates there are approximately 82,500 non-duplicate claims by survivors of child sexual abuse. As it stands, the Plan would provide each Claimant an average of about $10,000 (or significantly less after administrative expenses), from the funds provided by the Debtors and the Local Councils, far less than the TDP value of these claims. The Debtors rely on the availability of assigned insurance coverages to make up the difference, which underscores why claimants must have adequate information to evaluate the risks of the Plan, including any risks as to denial or restriction of insurance coverage.

## CONCLUSION

18. The Herman Law Claimants respectfully request that the Court deny approval of the Amended Disclosure Statement as failing to contain adequate information as required under 11 U.S.C. § 1125(b); order the Debtors to modify the Amended Disclosure Statement to make adequate disclosure of the assets and liabilities of Local Councils (and any Protected Party) such that direct abuse claimants can meaningfully assess whether the Plan meets the best interests of creditors test; require disclosure and opportunity to object to the fairness of any proposed settlement for a Chartered Organization by all affected claimants before such a Chartered Organization can be deemed a Protected Party under this Court's Channeling Injunction; and require disclosure regarding the coverage positions asserted by liability insurers and the risks that, if successful in whole or in part, these coverage positions could substantially limit or eliminate insurer contributions, significantly reducing amounts claimants could recover; and grant such other and further relief as may be just and proper.

Dated: August 16, 2021                     Respectfully submitted,

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder, Esq.
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Email: dklauder@bk-legal.com

 - and -

**HERMAN LAW**

Jeffrey Herman, Esq.,
*Admitted Pro Hac Vice*
434 W. 33rd St., Penthouse
New York, NY 10001
Phone: (212) 390-0100
Email: jherman@hermanlaw.com

*Counsel to Herman Law Claimants*