**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>Jointly Administered<br><br>**Objection Deadline: August 17, 2021 at noon (ET) (by agreement with Debtors)**<br>**Hearing Date: August 25, 2021 at 10:00 a.m. (ET)** |

**CERTAIN EXCESS INSURERS' OBJECTIONS TO THE DEBTORS' PROPOSED CONFIRMATION SCHEDULE**

American Zurich Insurance Company, American Guarantee and Liability Insurance Company, Steadfast Insurance Company, The Continental Insurance Company, Columbia Casualty Company, Allianz Global Risks US Insurance Company, National Surety Corporation, Interstate Fire & Casualty Company, Clarendon America Insurance Company, Maryland Casualty Company, Maryland American General Group, American General Fire & Casualty Company, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company, Gulf Insurance Company, General Star Indemnity Company, Arrowood Indemnity Company, and Munich Reinsurance America, Inc. (f/k/a American Re-Insurance Company) (collectively, the "Insurers") hereby object to the Debtors' Revised Proposed Confirmation Scheduling Order (the "Proposed Scheduling Order," Dkt. No. 5489-1) and Debtors' Revised Proposed Solicitation Procedures

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, TX 75038.

Order (the "Proposed Solicitation Order," Dkt. No. 5488-1).

### *Summary of argument*

The Insurers object to the confirmation schedule proposed by Debtors.

First, the schedule is stale, in that several of the deadlines proposed by Debtors back on July 2 have already passed.

Second, the schedule is substantively flawed. It is too compressed, and it proceeds in an illogical, inefficient manner. Also, the Plan is in flux, and the Court therefore should not consider any confirmation schedule until after the Plan is settled and a disclosure statement is approved.

If the Court wishes to consider a confirmation schedule now, the Insurers request that the Court adopt a schedule consistent with the Insurers' proposal set forth below.

### *Objection to Debtors' Proposed Scheduling Order*

Debtors' proposed confirmation schedule is outdated, premature, and unrealistic. The Court should reject the proposal now or, in the alternative, stay consideration of a confirmation schedule until after it has approved a revised disclosure statement.

Debtors' proposed confirmation schedule is already outdated. Both the proposed deadline to serve written discovery and the related deadline to serve responses to written discovery have passed. The schedule would require document production to be substantially complete just three days from now, and expert reports would be due on the second day of the disclosure statement approval hearing. None of these dates, or other dates in the schedule, make sense at this point, when the Plan is a moving target, and no disclosure statement has been approved. Parties in interest should have a reasonable chance to commence discovery once the Plan is settled.

Specifically, deadlines for discovery are premature until the terms of the operative Plan are clarified. In particular, the current Fourth Amended Plan will need to be materially revised after the Court's forthcoming decision on whether to approve the RSA. If the Court approves the RSA, the RSA requires Debtors to file a new amended plan that jettisons the Hartford settlement, and the disclosure statement will need to be substantially revised to reflect that change. If the Court declines to approve the RSA, Debtors will have to go back to the drawing board and submit a revised Plan that may, or may not, have support of the some or all of the current RSA Parties. In short, what comes next regarding the RSA will determine what discovery is required, what issues need to be litigated, the necessary witnesses for deposition, the subjects of expert opinions, and so on. Any confirmation schedule therefore should not begin until the date on which a disclosure statement is approved and there is a solicitation version of the Plan.

Even apart from this current state of uncertainty, the proposed schedule is far too compressed. And Debtors' proposed schedule is not only too hurried, it is poorly-sequenced and does not reflect the realities of litigation. For example, Debtors would require that expert reports be served only seven days after document production is "substantially" (not entirely) complete, leaving little time for experts to fully digest the documentary evidence, much less for counsel to identify all of the issues on which expert testimony is needed. Debtors' proposal also reverses the logical order of expert reports and depositions: under Debtors' proposal, expert reports are required 18 days before depositions are complete—that is, more than two weeks before the factual record on which they would base their opinions has closed. Rebuttal expert reports would be due just one day after Labor Day, still one week before fact discovery closes. These dates effectively preclude experts from considering facts first disclosed

later in discovery. That will undoubtedly lead to a flurry of supplemental reports once experts have had the chance to review all of the relevant documents and all relevant fact deposition testimony.

Moreover, the Proposed Scheduling Order would require that all experts be deposed in less than one week—between September 8 (after submitting rebuttal reports by September 7) and September 14—a period that encompasses both the Rosh Hashanah holiday and a weekend. And no matter how many expert and fact witnesses there may be, only about three weeks is allotted for taking all their depositions. The Court has seen in *Imerys* that such a highly compressed deposition schedule inevitably breaks down because it is simply unrealistic. The result in *Imerys* has been that the confirmation hearing has had to be repeatedly rescheduled to accommodate discovery needs, wreaking havoc with the Court's calendar and those of the parties and their counsel.

Other deadlines in the Proposed Scheduling Order are equally unrealistic. Deposition designations are due on September 17, only three days after the deposition deadline—too early even to obtain final transcripts of the last depositions, much less to allow each side to carefully review them, in a coordinated manner with aligned parties, for relevant and useful hearing testimony. Some parties' three-day review window would be constrained by observance of Kol Nidre and Yom Kippur on September 15-16. Counter-designations are due just two days later after the deadline for designations, on September 19—a Sunday. Motions *in limine* are due simultaneously with deposition designations and before deposition testimony is counter-designated; instead, motions *in limine* should not be due until at least a few days after the designations are final, so the parties can target the testimony they ask the Court to exclude.

Debtors' proposed schedule is also far too optimistic. It would be too short and

disorderly even if all went smoothly. But any case inevitably has discovery disputes that must be decided by the Court. For example, in *Imerys*, the Court has decided numerous motions to compel, motions for protective orders, and disputes over the proper scope of claimed privileges and protections, including the common interest protection. The Court in *Imerys* recently reviewed 100 documents *in camera* to resolve a discovery dispute, and requested and received supplemental briefing and oral argument on just a single discovery motion.

In this case, the discovery disputes are not likely to be limited to the usual issues. Indeed, this case has already seen its share of disputes over complex issues that the Court will inevitably have to hear and decide. Recent events have revealed fundamental disputes among the parties about privilege issues, the scope of mediation confidentiality, and claimed overbroad instructions to deponents. While the Court and the parties elided some of these issues during the RSA hearing once Debtors agreed to not seek "good faith" findings related to the RSA, disputes about the extent to which "good faith" findings can be based on interactions allegedly all subject to mediation confidentiality will be unavoidable in the confirmation context, given the requirement in § 1129(a)(3) that the Debtors prove their Plan has been proposed in good faith and the insurers' contention that (over)reliance on mediation privilege to block all inquiries regarding plan formulation precludes the required good faith determination. Thus, any schedule must, to be reasonable, include adequate time for resolving discovery disputes and the re-taking of depositions that were improperly limited by unjustified instructions not to answer. However, no such time is built into the Proposed Scheduling Order.

Future disputes thus would inevitably interrupt the proposed schedule, which currently leaves little room for resolving such disputes. And Debtors also appear to underestimate the discovery that objectors will need, including extensive document requests,

interrogatories, requests for admissions propounded on Debtors, the TCC, the FCR, and the Coalition, document subpoenas to third parties, and depositions of fact witnesses associated with each of those entities.[2]

Related dates in the Proposed Solicitation Order are also needlessly hurried and illogical. Debtors want confirmation objections to be filed on the same day as the deadline to complete depositions, thus effectively precluding objections based on depositions taken in the final days before the deadline. Confirmation objections would also be due before the final voting report deadline, which would preclude objections based on any irregularities in the voting and tabulation process, such as those that are now the focus of discovery in *Imerys*. In this case, it is quite possible that the Court may have to resolve disputes over which law firms have the right to vote certain claimants' claims on master ballots; such disputes may require discovery, as in *Imerys*, and may be a basis for confirmation objections, particularly given the requirement that non-debtor releases be overwhelmingly approved. There is no ability, however, under Debtors' two proposed schedules, to take discovery on any balloting issues that may arise.

In short, Debtors offer no justification for their unrealistic, overly compressed schedule, other than their desire to emerge from bankruptcy as soon as possible. But, as the Court recognized in *Imerys*, a debtor's desire to exit bankruptcy by a certain time cannot take precedence over the due process rights and reasonable discovery needs of potential objectors. Here, as the insurers' disclosure statement objections make clear, the plan appears to be specifically designed to prejudice insurers. Insurers should have a fair opportunity to prove that

---

[2] Debtors also offer no justification for the unnecessary paperwork required by their request that parties to file notices of intent to participate in the confirmation hearing (*see* Proposed Scheduling Order, ¶¶ 2-4). Such provisions should not be included in any scheduling order.

the Plan is not proposed in good faith. And, judging by the large number of disclosure statement objections filed by others (including claimants and chartered organizations) identifying various respects in which they believe the Plan is, or may be, unconfirmable, any schedule needs to anticipate that many parties other than insurers will also be undertaking plan discovery.

For these reasons, the Debtors' proposed schedule suffers from multiple shortcomings, and should be denied.

***Alternative Proposed Schedule***

The Insurers believe that it is too soon for the Court to set a confirmation schedule. The Court should therefore defer setting a schedule until the Plan is settled, and a disclosure statement approved.

There is also a threshold question that the Court should address before setting a schedule. The Insurers believe that the confirmation hearing should be limited to issues necessary to confirm a Plan under § 1129(a), including whether (i) the Plan has been proposed in good faith, (ii) the Plan is feasible, and (iii) there is justification, under *Continental Airlines* and *Millennium Lab Holdings*, for the myriad non-debtor injunctions and releases proposed in the Plan.[3] The schedule proposed below assumes that insurance coverage issues will not be tried as part of the confirmation hearing but, instead, will be preserved, through effective insurance neutrality provisions, for post-confirmation insurance coverage litigation.

The Debtors and the other RSA Parties want, however, to have the Court conduct a confirmation hearing of unprecedented scope, reaching far beyond the normal § 1129(a) confirmation issues to include such issues as whether the TDPs are reasonable and, in

---

[3] *See Millennium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019); *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000).

particular, whether the processes and terms for allowance of Abuse Claims thereunder are reasonable such that the Settlement Trustee's unilateral allowance of an Abuse Claim should be considered the equivalent of a litigated judgment.[4] It is questionable whether the Court could even conduct the type of hearing envisioned by the RSA Parties, given statutory limits on a bankruptcy court's ability to try personal injury cases.[5] If the Court were to permit such issues to be litigated as part of the confirmation hearing, even the schedule proposed below would be woefully inadequate; material changes to significantly expand the time available for discovery and discovery motion practice would be required, in fairness to the insurers. While not directly on point, a reasonable benchmark might be the mesothelioma estimation proceeding in *Garlock*, an asbestos bankruptcy case, which took almost two years for "wide ranging discovery" of just 15 closed cases, followed by a 17-day trial during which 29 witnesses testified.[6]

If the Court wishes to consider setting a schedule now, then the Insurers propose

---

[4] The RSA expressly requires Debtors to propose and pursue a confirmation order requiring that this Court find "that (i) the procedures included in the TDP pertaining to the allowance of Abuse Claims and (ii) the criteria included in the TDP pertaining to the calculation of the Allowed Claim Amounts, including the TDP's Claims Matrix, Base Matrix Values, Maximum Matrix Values, and Scaling Factors, ***are fair and reasonable based on the evidentiary record offered to the Bankruptcy Court***. (Dkt. No. 5466-2) at 6) (emphasis added). *See also* Joinder of the Coalition, the TCC, and the FCR to, and Brief In Support Of, the RSA (Dkt. No. 5680), ¶¶ 40 ("Here, the Debtors are asking the Court to approve the procedures in the TDP as a fair and reasonable process for settling over 84,000 Abuse Claims. To the extent the insurers truly believe that the TDP is unreasonable and inconsistent with the Debtors' exposure in the tort system, including past practices, ***the insurers are free to litigate these issues in connection with plan confirmation***" (emphasis in original), 43 ("The Supporting Parties will not support a plan that defers this issue [a so-called *Fuller-Austin* result] until after confirmation. . . . [T]hat litigation must occur here and now" ); Supplemental Br. of the Coalition, the TCC, and the FCR In Support Of The RSA (Dkt. No. 5760), ¶ 54 ("However, defenses that exist solely by virtue of the Debtors' bankruptcy—*i.e.,* those involving the Debtors' conduct in negotiating a settlement with the Abuse Claimants or the reasonableness of the TDP—are appropriately litigated once, in this Court").

[5] *See* 28 U.S.C. § 157(b)(5).

[6] *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71, 74, 85 (Bankr. W.D.N.C. 2014).

the following as an alternative to Debtors' Proposed Scheduling Order, on the assumption that the confirmation hearing will be limited to issues necessary to confirm the Plan and will not include the trial of insurance coverage issues such as envisioned by the RSA Parties:

| Event | Deadline[7] |
|---|---|
| Deadline to serve initial written discovery | 10 days after approval of Disclosure Statement |
| Deadline to serve responses and objections to initial written discovery | 30 days after approval of Disclosure Statement |
| Document production in response to initial discovery substantially complete | 45 days after approval of Disclosure Statement |
| Final voting report deadline | 60 days after approval of Disclosure Statement |
| Deadline to depose fact witnesses; fact discovery cutoff (absent agreement of the parties or an order by the Court based on good cause shown) | 105 days after approval of Disclosure Statement |
| Initial expert reports due | 120 days after approval of Disclosure Statement |
| Rebuttal expert reports due | 145 days after approval of Disclosure Statement |
| Deadline to depose expert witnesses | 165 days after approval of Disclosure Statement |
| Deadline to exchange deposition designations | 175 days after approval of Disclosure Statement |
| Deadline to exchange counter-designations and objections to deposition designations | 185 days after approval of Disclosure Statement |
| Deadline for motions in limine | 195 days after approval of Disclosure Statement |
| Plan objection deadline | 200 days after approval of Disclosure Statement |
| Deadline to submit pretrial order, witness and exhibit lists, oppositions to motions in limine, and objections to deposition counter-designations | 205 days after approval of Disclosure Statement |
| Confirmation brief/Plan reply deadline | 207 days after approval of Disclosure Statement |

[7] Some adjustments to these dates may be required to avoid weekends, holidays, etc.

| Event | Deadline[7] |
|---|---|
| Final pretrial conference | 210 days after approval of Disclosure Statement |
| Confirmation hearing | No sooner than 7 days after the final pretrial conference |

As noted, the foregoing proposed schedule assumes that Debtors and the other RSA Parties will only be permitted to litigate plan confirmation issues at the confirmation hearing, not seek entry of unnecessary findings regarding the estimated value of the Abuse Claims or which annual periods the Abuse Claims arise in, or the reasonableness of the TDPs for insurance coverage purposes. To the extent the Court is willing to hear such issues as part of the confirmation hearing, the schedule proposed above would, reasonably, have to be significantly lengthened to accommodate discovery and briefing of such additional issues.

*Joinders and Reservation of Rights*

The Insurers reserve the right to join in, and adopt as their own, any objections to the Proposed Scheduling Order or the Proposed Solicitation Order filed by any other person or entity.

In addition, the Insurers reserve (i) all of their objections to confirmation of the Fourth Amended Plan, any subsequently filed plan, any revised disclosure statement, and any revised scheduling order or solicitation order and (ii) all rights under, and with respect to, their insurance policies, and waive none.

*Conclusion*

The Debtors' Proposed Scheduling Order is premature, needlessly compressed, and illogical, both separately and in tandem with the Proposed Solicitation Order. The Court should not consider any confirmation schedule until after the Disclosure Statement is approved.

If the Court wishes to consider a confirmation schedule now, the Insurers request that the Court adopt a schedule consistent with the Insurers' proposal set forth above.

DATED: August 17, 2021

Respectfully submitted,

*/s/ Robert D. Cecil, Jr.*

Robert D. Cecil, Jr. (No. 5317)
TYBOUT, REDFEARN & PELL
750 Shipyard Drive, Suite 400
Wilmington, Delaware 19899-2092
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

Mark D. Plevin (admitted *pro hac vice*)
Kevin D. Cacabelos (admitted *pro hac vice*)
CROWELL & MORING LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
E-mail: mplevin@crowell.com, kcacabelos@crowell.com

Clifford J. Zatz (admitted *pro hac vice*)
Tacie H. Yoon (admitted *pro hac vice*)
Rachel A. Jankowski (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
E-mail: czatz@crowell.com, tyoon@crowell.com, rjankowski@crowell.com

Attorneys for American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company

Maria Aprile Sawczuk (DE #3320)
GOLDSTEIN & MCCLINTOCK LLLP
501 Silverside Road
Wilmington, Delaware 19809
Phone: (302) 444-6710
E-mail: marias@goldmclaw.com

-and-

Laura McNally
Emily Stone
LOEB & LOEB LLP
321 N. Clark Street, Suite 2300
Chicago, Ilinois 60654
Phone: (312) 464-3155
E-mail: lmcnally@loeb.com,
estone@loeb.com

Attorneys for The Continental Insurance Company and Columbia Casualty Company

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware 19899-1709
Phone: (302) 777-6500

Harris B. Winsberg (admitted pro hac vice)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216
Phone: (404) 885-3000

Margaret H. Warner (admitted pro hac vice)
Ryan S. Smethurst (admitted pro hac vice)
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Phone: (202) 756-8228

Attorneys for Allianz Global Risks US Insurance Company

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Hercules Plaza
1313 Market Street, Suite 5100
P.O. Box 1709
Wilmington, Delaware 19899-1709
Phone: (302) 777-6500

Harris B. Winsberg (admitted pro hac vice)
TROUTMAN PEPPER HAMILTON SANDERS LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216
Phone: (404) 885-3000

Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
BRADLEY RILEY JACOBS PC
500 West Madison Street, Suite 1000
Chicago, Illinois 60661
Telephone: (312) 281-0295

Attorneys for National Surety Corporation and Interstate Fire & Casualty Company

Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
E-mail: summersm@ballardspahr.com, mcclambc@ballardpshar.com

-and-

Harry Lee*
John O'Connor*
Brett Grindrod*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com,
joconnor@steptoe.com,
bgrindrod@steptoe.com
(*Admitted *pro hac vice*)

Attorneys for Clarendon America Insurance Company, Maryland Casualty Company, Maryland American General Group, American General Fire & Casualty Company

Kathleen M. Miller (No. 2898)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 501
P.O. Box 410
Wilmington, Delaware 19899
Phone: (302) 652-8400
E-mail: kmiller@skjlaw.com

Gary P. Seligman (admitted *pro hac vice*)
Ashley L. Criss (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Phone: (202) 719-7000
E-mail: gseligman@wiley.law,
acriss@wiley.law

Attorneys for General Star Indemnity Company

Michael J. Joyce (No. 4563)
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, Delaware 19801
Phone: (302) 388-1944
E-mail: mjoyce@mjlawoffices.com

-and-

Kevin Coughlin (admitted *pro hac vice*)
Lorraine Armenti (admitted *pro hac vice*)
Michael Hrinewski (admitted *pro hac vice*)
COUGHLIN MIDLIDGE & GARLAND LLP
350 Mount Kemble Ave.
PO Box 1917
Morristown, New Jersey 07962
Phone: (973) 267-0058
E-mail: larmenti@cmg.law, mhrinewski@cmg.law

Britton C. Lewis, Esquire (*Pro Hac Vice*)
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St.
P.O. Box 540
Greensboro, North Carolina 27401
Phone: (336) 478-1146
E-mail: bcl@crlaw.com

Attorneys for Arrowood Indemnity Company

Louis J. Rizzo, Jr. (#3374)
REGER RIZZO & DARNALL LLP
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, Delaware 19803
Phone: (302) 477-7100
Email: lrizzo@regerlaw.com

Attorneys for Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company

Thaddeus J. Weaver (Id. No. 2790)
DILWORTH PAXSON LLP
704 King Street, Suite 500
P.O. Box 1031
Wilmington, Delaware 19899-1031
Phone: (302) 571-8867
E-mail: tweaver@dilworthlaw.com

-and-

William E. McGrath, Jr. (admitted *pro hac vice*)
DILWORTH PAXSON LLP
2 Research Way, Suite 103
Princeton, New Jersey 08540
Phone: (609) 924-6000
E-mail: wmcgrath@dilworthlaw.com

Attorneys for Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company

906214425.01