IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: September 23, 2021 at 10:00 a.m.<br>Objection Deadline: September 7, 2021 at 4:00 p m. |

### MOTION OF "JOHN DOE" TO PERMIT
### FILING OF PROOF OF CLAIM AFTER BAR DATE

"John Doe"[1] ("**Movant**") files this motion (the "**Motion**") to permit filing of proof of claim after bar date.

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Pursuant to 28 U.S.C. § 1409, venue of this Motion is proper in this Court.

4. Pursuant to Del. Bankr. L.R. 9013-1(f), Movant does consent to the entry of final orders or judgments by the Court with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### FACTUAL BACKGROUND

---

[1] Due to the highly personal nature of the background of Movant's claim, he is being referred to in this filing as "John Doe." Movant of course will disclose his identity as required subject to appropriate protocols to keep his identity off of the public record.

### A. Movant's Sexual Abuse by the Boy Scouts

5. Movant is 65 years of age and a resident of the Commonwealth of Pennsylvania. He grew up in the State of New Jersey.

6. In 1967, at his father's urging, Movant, as a minor, joined the George Washington Council, Troop 43, of the Boy Scouts, and attended meetings at the First Presbyterian Church, 61 Nassau St., Princeton, under the direction of a certain Scoutmaster.[2]

7. The Scoutmaster would often invite movant and other boys to have dinner at his home. On one such occasion, Movant arrived to find that he was the only boy present. It was on that occasion that Movant was raped by the Scoutmaster.

8. He remained with the Boy Scouts for approximately four years and was a minor at all relevant times.

### B. The Boy Scouts' Bankruptcy Case

9. On February 18, 2020 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (the "**Debtors**") filed their chapter 11 bankruptcy petitions with this Court.

10. On May 26, 2020, the Court entered an order (the "**Original Bar Date Order**", D.I. 695) which established November 16, 2020 as the bar date for filing proofs of claim in these cases (the "**Bar Date**"). The Bar Date appears to apply to holders "Sexual Abuse Claims" which appear to be claims that arise out of "Sexual Abuse" (as defined or described in section "IV" of the form of notice attached as Exhibit "1" to the Original Bar date Order) in "Scouting" (which is defined or described as including "Cub Scouts, Boy Scouts, Exploring Scouts, Sea Scouts and Venturing" in the form "Sexual Abuse Proof of Claim" attached as Exhibit "7" to the Original Bar Date Order).

---

[2] Movant knows the name and identity of the Scoutmaster, who is deceased, but at this time has chosen not to put his name in the public record.

11. Movant was a victim of "Sexual Abuse" in "Scouting" as such terms are described and/or defined above. In addition, Movant was under eighteen (18) years of age at the time of the sexual abuse but as of the Petition Date was an adult.

12. In the Original Bar Date Order, the Court found that the notice procedures approved therein were appropriate as to "unknown" claims, including "unknown" holders of Sexual Abuse Claims. Original Bar Date Order, ¶19.

13. As discussed below, Movant was severely traumatized as a result of being raped by the Scoutmaster and did not discuss the details of his abuse with anyone until recently. However, that does not necessarily imply that Movant was an "unknown" creditor. Debtors may have some record (or access to records) of Movant's participation in Scouting. Moreover, it is at least plausible that the Scoutmaster in question abused other victims and that Debtors may have been able to ascertain Movant's identity by investigating the Scoutmaster's conduct.

14. Undersigned counsel to Movant has reviewed the affidavits of service on the docket for notice of the Bar Date and has not located Movant's name (or Movant's New Jersey attorney, Richard Greifinger) in such affidavits. See Affidavits of service at D.I. 723, 1112 and 1641.

15. Movant has no record of receiving any notice of the Debtors' bankruptcy cases or of the Bar Date.

16. On September 16, 2020, the Court entered a "supplemental" bar date order (D.I. 1331). That Order appears to relate exclusively to attorney advertising and solicitation. On October 20, 2020, the Court entered an Order (D.I. 1551) permitting holders of Sexual Abuse Claims to file proofs of claim using Official Form 10 but did not otherwise alter the Original Bar

Date Order. A further Order of clarification was entered on November 30, 2020 (D.I. 1752) related to certain definitions.

17. The Debtors have filed various proposed plans of reorganizations and disclosure statements. As of the time of the filing of this Motion, no disclosure statement has been approved by the Court.

18. The latest proposed disclosure statement notes that there are approximately 95,200 pending or asserted Abuse Claims against the Debtors. Amended Disclosure Statement (D.I. 5485) at 55 n. 57.

19. But for one *pro se* motion, it does not appear that other claimants have filed motions to file claims after the Bar Date.

**C.    Movant's Retention of Counsel**

20. During the latter part of 2020, Movant became aware that various law firms were soliciting as prospective clients victims of childhood sexual abuse perpetrated by Boy Scout leaders. He also learned that New Jersey law had changed so that adults could bring claims stemming from childhood sexual abuse regardless of the number of years that had passed between the abuse and the lawsuit.

21. Although Movant understood that, under the new law, he would have the right to bring a claim, he did not know that there were deadlines imposed that relate specifically to the fact that the Boy Scouts filed for bankruptcy relief.

22. Before learning of the solicitations of the various law firms in 2020, due to the highly traumatic nature of his experience, Movant had never revealed the particulars of his experience to anyone, not even his wife, to whom he has been married for approximately twenty-five years.

23. On May 24, 2021, upon the recommendation of a close friend, Movant consulted and retained Richard A. Greifinger, a New Jersey attorney, to investigate and pursue a potential claim on his behalf against Boy Scouts of America and/or related organizations.

24. As a result of the research undertaken by Mr. Greifinger, Movant discovered that there was a deadline of November 16, 2020 within which to file a claim against the organizations that might be liable for the sexual abuse which occurred during the Movant's childhood.

25. Once the Movant's counsel discovered the possible impediment to bringing a claim, Movant retained undersigned bankruptcy counsel licensed to practice law in the State of Delaware.

**RELIEF REQUESTED AND REASONS THEREFOR**

**I.  MOVANT MAY NOT BOUND BY THE BAR DATE ORDER AS HE DID NOT RECEIVE NOTICE OF SAME.**

26. The sufficiency of notice to a creditor depends on whether the creditor's identity is "known" or "unknown." As to "known" creditors "due process entitl[es] them to actual notice of the bankruptcy proceedings." Chemetron Corp. v. Jones, 72 F.3d 341, 345-46 (3d Cir. 1995). As to "unknown" creditors, notice by publication may be "sufficient to satisfy the requirements of due process . . . " Id.

27. A known creditor --

is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 99 L. Ed. 2d 565, 108 S. Ct. 1340 (1988). An "unknown" creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317, 94 L. Ed. 865, 70 S. Ct. 652 (1950). A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n.4, 77 L. Ed. 2d 180, 103 S. Ct. 2706 (1983).

Chemetron Corp. v. Jones, 72 F.3d at 346.

28.  Movant may be a "known" creditor under these standards.  In light of the fact that it is at least plausible that the Scoutmaster in question was a serial abuser, the Debtors may have actual knowledge of Movant's identity from other investigations.  For similar reasons, Movant's identity may have been "reasonably ascertainable" by the Debtors.

29.  To the extent that Movant is a known creditor, Movant's rights cannot be affected by the Bar Date because Movant was never served with notice of the Bar Date.  The affidavits of service do not reflect service on Movant and Movant has no record of receiving notice of the Bar Date.  Accordingly, fundamental principles of due process require that the Bar Date not be binding on Movant.  In re Dewey Beach Enters., Inc., 110 B.R. 681, 684 (Bankr. D. Del. 1990) (Balick, J.) ("In those instances where no prior notice of the bar date has been given, enlargement of the time period may be constitutionally required. In re Harbor Tank Storage Co., 385 F.2d 111, 114 (3d Cir. 1967)").

30.  To the extent that Movant is an "unknown" creditor, while the Court held that publication notice as to unknown creditors was appropriate as to notice of the Bar Date, that *ex parte* finding is not binding on Movant.  As to the actual effectiveness of Debtors' notice program, Movant did not learn about the Bar Date from that program.  Rather, after viewing some advertisements on television, he retained an attorney on May 24, 2021.  It was that attorney who investigated the matter and advised Movant for the first time of the Bar Date.

31.  Movant stresses that he did not learn of the Bar Date until well after it had passed and had no actual notice or knowledge of same until after May 24, 2021.

**II.    IN THE ALTNERNATIVE, MOVANT'S DID NOT FILE A PROOF OF CLAIM DUE TO EXCUSEABLE NEGLECT.**

32. To the extent that the Court holds that the Bar Date was binding on Movant, Movant asserts that his not filing a proof of claim by the Bar Date was due do excusable neglect.

33. Fed. R. Bankr. P. 9006(b)(1)(2) provides that, except as to certain circumstances not present here, "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

34. The Supreme Court in Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993) articulated a test for determining whether "excusable neglect" exists under Rule 9006(b):

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Pioneer Investments Services, 507 U.S. at 395.

35. Following Pioneer, the Court of Appeals for the Third Circuit in In re O'Brien Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999) reversed the decisions of the Bankruptcy Court and District Court that held that an administrative claimant had not shown "excusable neglect."

36. In reaching this decision, the Court held that the mere fact that the debtor had not accounted for the claim at issue was insufficient to show prejudice under Pioneer. The Court held that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." In re O'Brien, 188 F.3d at 127.

37.     In determining whether prejudice exists, the Court looked to "the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims."

38.     The Court in O'Brien then went on to analyze the concept of excusable neglect. The Court reasoned that the concept included actions that involved a lack of care on the part of the claimant. Id. at 128. See also In re The Grand Union Company, 204 B.R. 864 (Bankr. D. Del. 1997) (Walsh, C.J.) (excusable neglect found where claimants did not effectively communicate with their counsel concerning the bar date notice).

39.     Application of the standards in Pioneer shows that Movant should be permitted to file a proof of claim after the Bar Date.

### 1. There is Zero Danger of Prejudice to the Debtors or their Estates.

40.     The first factor that courts should consider when determining whether to allow a late filed claim is the danger of prejudice to the debtor. Id.  When assessing this factor, a debtor is *not* prejudiced by a late filed claim simply because it did not account for such claim in the funding of its plan of organization or liquidation. In re O'Brien, 188 F.3d at 126 (citing In re R.H. Macy & Co., 166 B.R. 799, 802 (S.D.N.Y. 1994) (the depletion of resources otherwise available for timely filed claims does not constitute prejudice).

41.     In this case, the authorized filing of a proof of claim will not prejudice the Debtors or their estates because (i) no plan of reorganization has been confirmed—indeed, there is not even a Court approved disclosure statement at this time; (ii) as it appears there are

approximately 95,200 other sexual abuse claims against the Debtors, the addition of one more would not, in light of the magnitude of the Debtors' cases, measurably dilute distributions to other creditors; and (iii) Debtors would still have the ability to defend against the merits of the claim.

42. The Debtors may offer a "floodgates" argument. The Court should view any such argument with skepticism. Thus far, with the exception of a single *pro se* litigant, the docket does not reflect that other creditors have moved for the right to file claims after the Bar Date. In any case, any other such motions may be addressed if and when they are filed on a case-by-case basis.

### 2. The Length of Delay Is Not Material.

43. The second factor that courts consider is the length of delay and the effect that the filing will have on judicial proceedings. Pioneer, 407 U.S. at 395.

44. In this case, the length of Movant's delay (about nine months) is not significant in view of the stage of the Debtors' cases. Compare to Greyhound Lines, Inc. v. Rogers (In re Eagle Bus. Mfg, Inc.), 62 F.3d 730 (5th Cir. 1995) (a six to eight month delay for filing a late proof of claim was not egregious). These cases are far from being fully administered and there has been no distribution to creditors. Indeed, while a proposed plan has been filed, it has yet to be confirmed. Accordingly, Movant's delay in not material.

### 3. The Reason for the Delay Is Excusable.

45. The third factor that courts consider is the reason for the delay. Pioneer, 407 U.S. at 395. When assessing whether a creditor's failure to timely file a claim is based upon

excusable neglect, courts have acknowledged that "the mere use of the word neglect encompasses omissions caused by carelessness." In re O'Brien, 188 F.3d at 125. When determining whether such carelessness is "excusable," courts should take into account all of the relevant circumstances surrounding the party's omission. Id. (citing Pioneer, 407 U.S. at 395 – "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.").

46. In In re Texas Tamale Co., 219 B.R. 732 (Bankr. S.D. Tex. 1998), the court did not allow a late proof of claim filing when the creditor acted in bad faith by deliberately waiting to assert his claim in order to destroy the debtor's chances of completing its confirmed plan and to harass the debtor.

47. Here, Movant did not deliberately wait to file. Movant was not even aware of the bankruptcy cases until well after the Bar Date. And he did not become aware of the Bar Date until after he retained New Jersey counsel. As Movant did not receive actual notice of the Bar Date, any "neglect" here was minimal and fully excused.

### 4. Movant Has Always Acted in Good Faith

48. Finally, Movant has always acted in good faith. Movant had absolutely no reason to delay this matter.

49. In filing this Motion, Movant reserves all of his rights.

WHEREFORE, for all of these reasons, Movant requests that the Court enter an order permitting Movant to file a proof of claim, deeming such claim to be timely filed, and granting such other and further relief as the Court deems just and proper.

DATED: August 23, 2021

                                              /s/ Christopher D. Loizides
                                          Christopher D. Loizides (No. 3968)
                                          LOIZIDES, P.A.

1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

*Counsel for "John Doe"*