## Exhibit A

**Hartford Term Sheet**

## Settlement Term Sheet

This term sheet ("Term Sheet") represents the basic terms of a settlement agreement between and among Hartford Accident and Indemnity Company, First State Insurance Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company (collectively, "Hartford"), Boy Scouts of America and Delaware BSA, LLC, as debtors and debtors in possession ("BSA" or the "Debtors"), the Ad Hoc Committee of Local Councils (the "AHCLC"), the Coalition of Abused Scouts for Justice, solely and only in its capacity as an ad hoc committee (the "Coalition"),[1] and the Future Claimants' Representative (the "FCR" and, collectively with Hartford, the Debtors, the AHCLC, and the Coalition, the "Parties").[2]  The attorneys representing holders of Direct Abuse Claims listed on Schedule 1 hereto, which reflects the number of holders of Abuse Claims represented by each firm (the "State Court Counsel") agree to support the terms of and be bound by the Agreement (as defined below).  The Parties will prepare a definitive written settlement agreement consistent with this Term Sheet that will include additional material terms (the "Agreement"), and will incorporate the terms of such Agreement into an amended plan of reorganization (the "Amended Plan"), which Agreement and Amended Plan shall be consistent with this Term Sheet and otherwise in form and substance reasonably acceptable to the Parties. Capitalized terms not defined in this Term Sheet shall have the definitions ascribed to such terms in the Amended Plan.

(i) **Settlement Amount**.  In consideration of the releases and other consideration provided for herein, Hartford shall pay in cash $787 million (the "Settlement Amount") to the trust for Abuse Claims to be created under the Amended Plan (the "Trust") as provided herein. There shall be no most-favored nation or similar provision that would reduce the Settlement Amount to be paid by Hartford based on any settlements that BSA may enter into with other insurers, including without limitation Century and Chubb.

(ii) **Payment and Release of the Settlement Amount**.  Hartford shall pay $137 million (the "Initial Payment") of the Settlement Amount to the Trust on, or as soon as reasonably practicable after, the date all conditions to the effectiveness of the Amended Plan have been satisfied (including the entry of orders, in form and substance reasonably acceptable to the Parties, of the Bankruptcy and District Courts confirming, or affirming confirmation of, the Amended Plan (collectively, the "Confirmation Order"), which Confirmation Order shall not be subject to any stay and shall be in full force and effect) and the Amended Plan has gone effective (the "Effective Date").  On, or as soon as reasonably practicable after, the Effective Date, Hartford shall pay the remaining $650 million of the Settlement Amount (the "Additional Payment") into an escrow account (the "Escrow Account"), to be administered by an independent escrow agent acceptable to the Parties.  The Additional Payment (and all income earned thereon minus (a) the fees of the escrow agent, and (b) any taxes that are payable and other costs of the Escrow Account, which amounts in (a) and (b) shall be paid from the corpus of the Escrow Account (such income (or loss)

---

[1] For the avoidance of doubt, no holders of Direct Abuse Claims are or shall be deemed Parties to this Term Sheet or the Agreement.

[2] Notwithstanding anything to the contrary in this Term Sheet, the obligations and undertakings of the AHCLC in connection with this Term Sheet or the Agreement shall be no greater than the AHCLC's parallel obligations and undertakings under section III of the Restructuring Support Agreement (including the "No Liability" subsection thereof) filed at Dkt. 5466-2.

minus such amounts, the "Net Income")) shall remain in the Escrow Account until the Confirmation Order shall become final and no longer subject to any further appeal or petition for rehearing or certiorari ("Final and Non-Appealable"), on which date the Additional Payment, plus any Net Income, shall be released from the Escrow Account to the Trust (the "Release Date"); *provided, however,* that, at its election, Hartford may authorize the payment of the Additional Payment directly to the Trust on the Effective Date or may authorize the release of the Additional Payment (and any Net Income) from the Escrow Account to the Trust at any time thereafter before the Confirmation Order becomes Final and Non-Appealable, in which event the date on which Hartford authorizes the payment or release of the Additional Payment to the Trust shall be the Release Date. The Trust will have investment discretion with respect to the Additional Payment while it is in the Escrow Account, subject to Hartford's reasonable approval of the investment protocol under which the Additional Payment may be invested by the Trust; *provided, however,* that the Trust will bear all risks associated with any such investment of the Additional Payment and that no loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account shall require Hartford to increase the Settlement Amount it is paying (or increase the amount of BSA's contribution to the Trust); *provided further, however*, that the Debtors, Reorganized BSA, the Local Councils and Chartered Organizations shall have no liability or obligations to Hartford or the Trust, the Trust shall have no liability or obligations to Hartford, and Hartford shall have no liability or obligations to the Trust (or any other Party), whatsoever for any loss or failure to achieve desired investment returns on the Additional Payment while it is in the Escrow Account.

(iii) **Payment by BSA of Hartford Administrative Expense Claim**. Under the Amended Plan, and in compromise of its claims and in consideration of the releases and other consideration it is providing, Hartford shall be granted an allowed administrative expense claim in the amount of $2 million (the "Hartford Administrative Claim") on account of Hartford's alleged damages under or relating to the April 15, 2021 BSA/Hartford settlement agreement (the "Prior Hartford Settlement Agreement"). BSA shall pay the Hartford Administrative Claim in full in cash to Hartford on, or as soon as reasonably practicable after, the Effective Date. Fifty percent ($1 million) of the Hartford Administrative Claim shall be treated as an Administrative Expense Claim in the calculation of the Net Unrestricted Cash and Investments under the Amended Plan; the other fifty percent shall reduce the Unrestricted Cash and Investments reserved for BSA upon its emergence from bankruptcy on the Effective Date.

(iv) **Termination of Prior Hartford Agreement**. Upon the Effective Date, and upon payment by BSA of the Hartford Administrative Claim, the Parties and State Court Counsel agree that the Prior Hartford Settlement Agreement shall be deemed terminated, null, void and of no further force and effect; *provided, however,* that in the event that BSA exercises its Fiduciary Out or takes another Specified Action (as defined in Section xvii below), the Prior Hartford Settlement Agreement shall remain in effect solely to the extent necessary to permit Hartford to assert its Additional Administrative Claim, as set forth in Section xvii below.

(v) **Sale of Hartford Policies**. On the Release Date, in exchange for and upon receipt of the Additional Settlement Amount by the Trust, the BSA Insurance Policies issued by Hartford (the "Hartford Policies"), including those identified on Exhibit A, shall be sold by BSA and its estate to Hartford, free and clear of all interests of the estate and any person or entity other than the estate, pursuant to sections 363, 1123 and/or 1141 of the Bankruptcy Code, under the Amended

Plan (the "Sale"), *provided that* the rights, if any, of Chartered Organizations under the Hartford Policies shall be treated under the Amended Plan in accordance with sections 363 and 1141 of the Bankruptcy Code and other applicable law. The excess liability policy issued to the BSA by Navigators Specialty Insurance Company for the period of March 1, 2013 to February 28, 2014 shall be included in the Sale and shall be excluded from the definition of "Specified Insurance Policies" in the Amended Plan. BSA and Hartford each represents and warrants that it has conducted a reasonable, good faith search of its records and that it has located no evidence of any BSA Insurance Policies issued by Hartford other than the policies identified on Exhibit A or any Local Council Insurance Policies issued by Hartford other than the policies identified on Exhibit B, and that it is not aware of any such policy, secondary evidence of any such policy, or any reason to believe such policy exists. Hartford shall be designated in the Confirmation Order as a good-faith purchaser of the Hartford Policies. Without limiting the foregoing, although the Parties do not believe that the Sale would constitute a violation of the automatic stay of any Chartered Organization that is a debtor in bankruptcy and that asserts an interest in one or more Hartford Policies, to the extent the Bankruptcy Court (or other court with jurisdiction) determines that the Sale would constitute such a violation, then the Parties shall seek a determination from the Bankruptcy Court that they may proceed with the Sale or relief from such stay to effectuate the Sale.

(vi) **Release by Hartford**. Upon the Release Date, and following its receipt of payment in full of the Hartford Administrative Claim, Hartford shall release the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, other Protected Parties, Limited Protected Parties, Settling Insurance Companies, the FCR, the Coalition and the Trust from all Causes of Action and Claims relating to (1) Abuse Insurance Policies, (2) the Debtors' bankruptcy proceeding, (3) the Debtors' Amended Plan, (4) the Prior Hartford Settlement Agreement, (5) the 2010 BSA-Hartford settlement agreement, (6) the 2011 BSA-Hartford settlement agreement, (7) (a) Abuse Claims against the Protected Parties and (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, and/or (8) any Claims asserted by Hartford against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Hartford, in the Debtors' Chapter 11 Cases; *provided, however*, that the foregoing release by Hartford of the Limited Protected Parties in clause (1) of the foregoing shall apply only with respect to Abuse Insurance Policies that are the subject of the Participating Chartered Organization Insurance Assignment. Nothing in this release shall preclude Hartford from enforcing the terms of the Agreement and the Amended Plan.

(vii) **Release of Hartford**. Upon the Release Date, the Debtors, Reorganized BSA, Related Non-Debtor Entities, Local Councils, other Protected Parties, Limited Protected Parties, Settling Insurance Companies, the FCR, the Coalition and the Trust (the "Releasing Parties") shall release Hartford from all Causes of Action and Claims relating to (1) Abuse Insurance Policies, (2) the Debtors' bankruptcy proceeding, (3) the Debtors' Amended Plan, (4) the Prior Hartford Settlement Agreement, (5) the 2010 BSA-Hartford settlement agreement, (6) the 2011 BSA-Hartford settlement agreement, (7) (a) Abuse Claims against the Protected Parties and (b) Post-1975 Chartered Organization Abuse Claims against the Limited Protected Parties, and/or (8) any Claims asserted by Hartford against the Debtors or any of the Releasing Parties, or by the Debtors or any of the Releasing Parties against Hartford, in the Debtors' Chapter 11 Cases; *provided, however*, that the foregoing release by the Limited Protected Parties of Hartford in clause (1) of the foregoing shall apply only with respect to Abuse Insurance Policies that are the subject of the Participating

Chartered Organization Insurance Assignment. If another Settling Insurer receives broader releases of Causes of Action and Claims under its Abuse Insurance Policies than those provided to Hartford in the Agreement or Amended Plan, then Hartford shall receive the benefit of those broader releases with respect to Causes of Action and Claims under Abuse Insurance Policies issued by Hartford. Except as otherwise provided herein, the Agreement will provide that the release of Hartford shall not affect claims against other insurance companies. Nothing in this release shall preclude the Releasing Parties from enforcing the terms of the Agreement and the Amended Plan.

(viii) **Chartered Organizations**. Under the Plan, the Debtors, the Coalition, the FCR and the Trust shall secure an assignment to the Trust of, or otherwise resolve to the Parties' satisfaction, Chartered Organizations' rights or claims to coverage under Abuse Insurance Policies issued by Hartford. The Debtors, the Coalition and the FCR shall use their best efforts to settle with the Chartered Organizations.

(ix) **Judgment Reduction**. In the event that any other insurer obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Hartford as a result of a Cause of Action for contribution, subrogation, indemnification or other similar Cause of Action against Hartford for Hartford's alleged share or equitable share, or to enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Abuse Claim or for any Cause of Action released in this Agreement, the Trust shall voluntarily reduce its judgment or Cause of Action against, or settlement with, such other insurer(s) to the extent necessary to eliminate such contribution, subrogation, indemnification or other similar Cause of Action against Hartford. To ensure that such a reduction is accomplished, Hartford shall be entitled to assert this paragraph as a defense to any action against it for any such portion of the judgment or Cause of Action and shall be entitled to have the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Hartford from any liability for the judgment or Cause of Action.

(x) **Findings and Orders**. Subject to modification by the Debtors, the Coalition, and the FCR, the Amended Plan and Confirmation Order may include each of the Findings and Orders included in the Restructuring Support Agreement, filed 7/1/21. Hartford shall not object to said Findings and Orders or take any action in support of any party that objects to said Findings and Orders. The Amended Plan and the Confirmation Order shall state that the Findings and Orders are not binding on Hartford to the extent that Hartford is a Settling Insurance Company and the transactions contemplated herein, including the release of the Settlement Amount to the Trust, are fully consummated. The Amended Plan and Confirmation Order shall further provide that Hartford's agreement herein not to object to the entry of said Findings and Orders in the Confirmation Order does not indicate Hartford's support for said Findings and Orders, and no party shall argue that Hartford agreed to or acquiesced in such Findings and Orders in any proceeding.

(xi) **Trust Distribution Procedures**. Subject to modification by the Debtors, the Coalition, and the FCR, the Trust Distribution Procedures may be in the form attached as Exhibit B to the Restructuring Support Agreement filed 7/1/21, *provided that* Hartford shall be included as a releasee in any form of release attached to the Trust Distribution Procedures to the same extent as BSA, Local Council and Chartered Organizations are, such that Claims for coverage for Claims for Abuse are not made under Abuse Insurance Policies issued by Hartford by, or as a result of Claims of Abuse made by, holders of Abuse Claims who receive payment from the Trust. Hartford

shall not object to the Trust Distribution Procedures but may add a statement in the Amended Plan or the Disclosure Statement that Hartford is a Settling Insurance Company and, as a result, takes no position on the Trust Distribution Procedures. Hartford shall not object to the selection of the Settlement Trustee as provided in the Amended Plan and Settlement Trust Agreement. Hartford shall not participate in or otherwise interfere with the administration of the Trust.

(xii) **Objections to Disclosure Statement and Plan**. Hartford shall not object to the Amended Plan, the Disclosure Statement, the Solicitation Procedures, the Settlement Trust Agreement, or the Trust Distribution Procedures (and shall withdraw any pending objections) so long as Hartford is included as a Protected Party in the Amended Plan, and the Disclosure Statement and the Amended Plan are otherwise consistent with the terms of this Term Sheet and the Agreement.

(xiii) **Voting**. Hartford agrees to (1) timely vote its Indirect Abuse Claim (Claim No. 8176 filed by First State Insurance Company) and any other Claims held by it or its affiliates to accept the Amended Plan and not change or revoke its votes (subject to Hartford's receipt of a Bankruptcy Court-approved Disclosure Statement for the Amended Plan) and (2) not "opt out" of the third-party releases contained in the Amended Plan, so long as Hartford is included as a Protected Party in the Amended Plan, and the Disclosure Statement and the Amended Plan are otherwise consistent with the terms of this Term Sheet and the Agreement.

(xiv) **Certain Correspondence**. This Term Sheet resolves J. Lauria's 8/26/21 letter to J. Ruggeri and J. Ruggeri's 8/27/21 response thereto.

(xv) **Discovery**. All Parties shall as soon as practicable withdraw any pending discovery requests directed at Hartford and, so long as the Agreement has not been terminated, shall not seek additional discovery from Hartford. Hartford shall as soon as practicable withdraw any pending discovery requests directed at any holder of an Abuse Claim, representatives of such holders, funders, vendors utilized by representatives of such holders, the Coalition (including law firms and attorneys associated therewith), the FCR, and so long as the Agreement has not been terminated, Hartford shall not seek or direct any additional discovery from such parties, the BSA, or the Local Councils, or any other party in interest in the Chapter 11 Cases or any proceedings related to the Chapter 11 Cases. Notwithstanding the foregoing, Hartford shall cooperate and comply with any information requests from the BSA, the Coalition, and the FCR to the extent such information is not protected from disclosure and reasonably necessary in support of the confirmation of the Amended Plan; *provided*, *however*, that if the results of this process do not resolve and satisfy said information requests, the BSA, the Coalition, or the FCR shall have the right to submit the dispute to one or both of Mediators Gallagher and Carey, and the Parties agree to be bound by the Mediator's/Mediators' decision regarding such dispute.

(xvi) **Public Statements**. The Parties and State Court Counsel shall cooperate with each other to coordinate on timing and substance of public statements regarding settlement, including press releases, court filings and in-court statements. Hartford shall make no statements about holders of Abuse Claims or any representative thereof; *provided*, *however*, that Hartford may make statements to protect its rights in the Chapter 11 Cases, including statements in response to objections or statements by holders of Abuse Claims and their representatives concerning Hartford.

(xvii) **Fiduciary Obligations of the Debtors and the FCR**.  Notwithstanding anything in this Term Sheet and Agreement to the contrary, no term or condition of this Term Sheet and Agreement shall require BSA or the FCR to take or refrain from taking any action that it determines in good faith would be inconsistent with its fiduciary duties under applicable law (the right to take or refrain from taking such any action, a "Fiduciary Out"); *provided, however,* that BSA and the FCR each understands that the TCC is not a party to this Term Sheet and that the TCC may object to the Agreement and to the Amended Plan and that BSA and the FCR each nevertheless believes, as of the date hereof, that entering into the Agreement is an appropriate exercise of its fiduciary duty. If BSA (1) exercises a Fiduciary Out, (2) does not seek confirmation of the Amended Plan or to have the Amended Plan become effective, or (3) does not take all reasonable actions to defend confirmation of the Amended Plan against any appeals or other challenges (whether BSA takes any such action before or after the Effective Date) (each of the actions or inactions referenced in clauses (1)–(3), a "Specified Action"), Hartford may assert, and the other Parties and State Court Counsel agree not to object to the assertion by Hartford of, an administrative expense claim, which shall be reserved for prior to distributions to unsecured creditors, in addition to the Hartford Administrative Claim, of $23.61 million (the "Agreed Amount," with such claim being the "Additional Hartford Administrative Claim"); *provided, however*, that if the occurrence of a Specified Action is due to the enactment of congressional legislation prohibiting non-debtor releases, the Parties and State Court Counsel agree that Hartford may not assert the Additional Hartford Administrative Claim.  If BSA takes a Specified Action, Hartford shall not seek any claim other than the Additional Hartford Administrative Claim (and the Hartford Administrative Claim), and shall not seek the Additional Hartford Administrative Claim in an amount greater than the Agreed Amount, and the other Parties and State Court Counsel shall not object to the Additional Hartford Administrative Claim or argue that it should be allowed in an amount less than the Agreed Amount unless they reasonably contend that no Specified Action has occurred.  Upon the Effective Date, Hartford shall release BSA from any administrative expense claim arising out of BSA's failure to seek approval of the Prior Hartford Settlement other than (1) the Hartford Administrative Claim and (2) in the event that BSA exercises a Fiduciary Out or takes another Specified Action, the Additional Hartford Administrative Claim.  Said release shall survive any Reversal (as defined in Section xviii below) and any termination of the Agreement.  BSA shall, prior to exercising a Fiduciary Out, timely consult with the Coalition and FCR.

 (xviii) **Effect of Reversal of Confirmation Order Following the Effective Date.**  In the event that the Confirmation Order is reversed or vacated on appeal following the Effective Date, such that the Release Date does not occur (a "Reversal"), the Parties and State Court Counsel agree that Hartford shall (a) nevertheless be entitled to retain the $2 million to be paid to it in respect of the Hartford Administrative Claim and (b) be entitled to a credit against any liability Hartford may have under any Abuse Insurance Policies issued to BSA or any Local Council, which credit shall be equal to the amount of the Initial Payment plus, if Hartford has authorized the payment or release of the Additional Payment to the Trust, the amount of the Additional Payment (the "Credit"); *provided, however,* that if Hartford has not authorized the payment or release of the Additional Payment, then the Additional Payment and all Net Income accrued thereon in the Escrow Account (or, if there is a loss as a result of investment of the Additional Payment, then the funds remaining in the Escrow Account) shall be released from the Escrow Account to Hartford promptly following the Reversal (or any exercise of a Fiduciary Out by BSA or the occurrence of a Specified Action).  The Parties and State Court Counsel shall cooperate in good faith to ensure that Hartford may obtain the benefit of the Hartford Administrative Claim and the Credit.  The

provisions of this Section xviii shall survive any Reversal, any exercise of any Fiduciary Out, and any termination of the Agreement.  Nothing in this Section or elsewhere in this Term Sheet or the Agreement shall bar any of the Parties or State Court Counsel from arguing that any appeal from the Confirmation Order should be dismissed on grounds of statutory or equitable mootness or otherwise.

(xix)  **State Court Counsel**.  Each State Court Counsel represents and warrants to the Parties that, as of the date hereof, it represents the number of holders of Direct Abuse Claims who filed timely Direct Abuse Claims in the Chapter 11 Cases that is listed next to its name on Schedule 1 hereto.

*[Remainder of Page Intentionally Left Blank]*

## Schedule 1

**State Court Counsel**

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| Slater Slater Schulman LLP | Attn: Adam P. Slater (aslater@sssfirm.com)<br>488 Madison Avenue<br>20th Floor<br>New York, NY 10022 | 14170 |
| ASK LLP | Attn: Joseph Steinfeld (jsteinfeld@askllp.com)<br>151 West 46th Street, 4th Floor<br>New York, NY 10036 | 3277 |
| Andrews & Thornton, AAL, ALC | Andrews & Thornton<br>Attn: Anne Andrews (aa@andrewsthornton.com)<br>4701 Von Karman Ave., Suite 300<br>Newport Beach, CA 92660 | 3009 |
| Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. | Attn: Stewart J. Eisenberg (stewart@erlegal.com)<br>1634 Spruce Street<br>Philadelphia, PA 19103 | 16869 |
| Junell & Associates PLLC | Attn: Deborah Levy (dlevy@junell-law.com)<br>3737 Buffalo Speedway Ste. 1850<br>Houston, TX 77098 | 2918 |
| Reich & Binstock LLP | Attn: Dennis Reich (dreich@reichandbinstock.com)<br>4265 San Felipe St. #1000<br>Houston, TX 77027 | 336 |
| Krause & Kinsman Law Firm | Attn: Adam W. Krause (adam@krauseandkinsman.com)<br>4717 Grand Avenue #300<br>Kansas City, MO 64112 | 5981 |
| Bailey Cowan Heckaman PLLC | Attn: Aaron Heckaman (aheckaman@bchlaw.com)<br>5555 San Felipe St. Ste. 900<br>Houston, TX 77056 | 1026 |
| Jason J. Joy & Associates, PLLC | Attn: Jason Joy (jason@jasonjoylaw.com)<br>909 Texas St, Ste 1801 | 690 |

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houston, TX 770022 | |
| Motley Rice LLC | Attn: Daniel Lapinski (dlapinski@motleyrice.com) 210 Lake Drive East Suite 101 Cherry Hill, NJ 08002 | 343 |
| Weller Green Toups & Terrell LLP | Attn: Mitchell Toups (matoups@wgttlaw.com) 2615 Calder Ave. #400 Beaumont, TX 77702 | 974 |
| Colter Legal PLLC | Attn: John Harnishfeger (john.harnishfeger@colterlegal.com) 1717 K St. NW Suite 900 Washington D.C. 20006 | 162 |
| Christina Pendleton & Associates, PLLC | Attn: Staesha Rath (sr@cpenlaw.com) 1506 Staples Mill Rd. Suite 101 Richmond, VA 23230 | 309 |
| Forman Law Offices, P.A. | Attn: Theodore Forman (ted@formanlawoffices.com) 238 NE 1st Ave. Delray Beach, FL 33444 | 125 |
| Danziger & De Llano LLP | Attn: Rod de Llano (rod@dandell.com) 440 Louisiana St. Suite 1212 Houston, TX 77002 | 1707 |
| Swenson & Shelley | Attn: Kevin Swenson (kevin@swensonshelley.com) 107 South 1470 East, Ste. 201 St. George, UT 84790 | 175 |
| Cohen Hirsch LP (formerly Brooke F. Cohen Law, Hirsch Law Firm) | Attn: Brooke F. Cohen (brookefcohenlaw@gmail.com) Attn: Andrea Hirsch (andrea@thehirschlawfirm.com) 4318 Glenwick Lane Dallas, TX 75205 | 64 |
| Damon J. Baldone PLC | Attn: Damon J. Baldone (damon@baldonelaw.com) 162 New Orleans Blvd. | 471 |

2

| FIRM | NOTICE ADDRESS | CLAIMS |
|---|---|---|
| | Houma LA 70364 | |
| Cutter Law, P.C. | Attn: Brooks Cutter (bcutter@cutterlaw.com) 4179 Piedmont Ave. 3rd Fl. Oakland, CA 94611 | 358 |
| Linville Johnson & Pahlke Law Group | Attn: Robert Pahlke (rgp@pahlkelawgroup.com) 2425 Circle Dr., Ste. 200 Scottsbluff NE 69361 | 71 |
| Porter & Malouf P.A. | Attn: Timothy Porter (tporter@portermalouf.com) 825 Ridgewood Rd. Ridgeland, MS 39157 | 86 |
| The Moody Law Firm | Attn: Will Moody Jr. (will@moodyrrlaw.com) 500 Crawford St., Ste. 200 Portsmouth, VA 23704 | 677 |
| Levin Papantonio Thomas Mitchell Rafferty & Procter P.A. | Attn: Cameron Stephenson (cstephenson@levinlaw.com) 316 South Baylen St. Pensacola, FL 32502 | 44 |
| Marc J Bern & Partners LLP | Attn: Joseph Cappelli (jcappelli@bernllp.com) 60 East 42nd St. Ste. 950 New York, NY 10165 | 5893 |

**Exhibit A**

**Known and Alleged BSA Insurance Policies Issued by Hartford**

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Hartford Accident and Indemnity Company | 10 HU A43300 | May 1, 1971 - May 1, 1972 |
| Hartford Accident and Indemnity Company | 10 C A43315 | Sept. 21, 1971 - Jan. 1, 1972 |
| Hartford Accident and Indemnity Company | 10 C A43304 | Jan. 1, 1972 - Jan. 1, 1974 |
| Hartford Accident and Indemnity Company | 10 C A43303 | Jan. 1, 1972 - Jan. 1, 1974 |
| Hartford Accident and Indemnity Company | 10 HU A43302 | Jan. 1, 1972 - Jan. 1, 1974 |
| Hartford Accident and Indemnity Company | 10 HU A43303 | May 1, 1972 - May 1, 1974 |
| Hartford Accident and Indemnity Company | 10 C A43329 | Jan. 1, 1974 - Jan. 1, 1975 |
| Hartford Accident and Indemnity Company | 10 C A43324 | Jan. 1, 1974 - Jan. 1, 1975 |
| Hartford Accident and Indemnity Company | 10 HU A43331 | Jan. 1, 1974 - Jan. 1, 1975 |
| Hartford Accident and Indemnity Company | 10 HU A43335 | May 1, 1974 - Jan. 1, 1975 |
| Hartford Accident and Indemnity Company | 10 C A43342E | Jan. 1, 1975 - Jan. 1, 1976 |
| Hartford Accident and Indemnity Company | 10 C A43349E | Jan. 1, 1976 - Jan. 1, 1977 |
| Hartford Accident and Indemnity Company | 10 C A43359E | Jan. 1, 1977 - Jan. 1, 1978 |

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Hartford Accident and Indemnity Company | 10 JP A43360E | Jan. 1, 1977 - Jan. 1, 1978 |
| First State Insurance Company | 908954 | Jan. 1, 1978 - Jan. 1, 1979 |
| First State Insurance Company | 927616 | Jan. 1, 1979 - Jan. 1, 1980 |
| First State Insurance Company | 931255 | Jan. 1, 1981 - Jan. 1, 1983 |
| First State Insurance Company | 931257 | Jan. 1, 1981 - Jan. 1, 1983 |
| First State Insurance Company | EU 006921 | March 1, 1988 - March 1, 1989 |
| Twin City Fire Insurance Company | TXU 100325 | Jan. 1, 1982 - Jan. 1, 1983 |
| Navigators Specialty Insurance Company | CH12EXC747034IC | March 1, 2012 - March 1, 2013 |
| Navigators Specialty Insurance Company | CH13EXC747034IC | March 1, 2013 - March 1, 2014 |

**Exhibit B**

**Known and Alleged Local Council Insurance Policies Issued by Hartford**

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Fire Insurance Company | 30 CBP 104757 | Jan. 1, 1970 - Jan. 1, 1971 | Unknown | Baltimore Area (220): Baltimore Area (220) |
| Hartford Fire Insurance Company | 30 CBP 108939 | Jan. 1, 1971 - Jan. 1, 1974 | Baltimore Area Council Boy Scouts of America | Baltimore Area (220): Baltimore Area (220) |
| Hartford Fire Insurance Company | 30 CBP 115631 | Jan. 1, 1974 - Jan. 1, 1977 | Baltimore Area Council Boy Scouts of America | Baltimore Area (220): Baltimore Area (220) |
| Hartford Fire Insurance Company | 30 CBP 115827 | Jan. 1, 1977 - Jan. 1, 1980 | Baltimore Area Council Boy Scouts of America | Baltimore Area (220): Baltimore Area (220) |
| Hartford Accident and Indemnity Company | 45 CBP 130782 | March 26, 1975 - March 26, 1978 | Put-Han-Sen Area Council of Boy Scouts of America and National Council of the Boy Scouts of America | Black Swamp Area (449): Put-Han-Sen Area 1930-1992 (449) |
| Hartford Fire Insurance Company | 20 SBM US2073 | Jan. 1, 2007 - Jan. 1, 2008 | Coastal Empire Council, Inc. | Coastal Georgia (099): Coastal Empire -2014 (099) |
| Hartford Fire Insurance Company | 20 SBM US2073 | Jan. 1, 2008 - Jan. 1, 2009 | Coastal Empire Council, Inc. | Coastal Georgia (099): Coastal Empire -2014 (099) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1975 - Jan. 1, 1975 | Unknown | Evangeline Area (212): Evangeline Area (212) |
| Hartford Fire Insurance Company | 01 UEC FN2321 | Oct. 28, 1991 - Nov. 8, 1992 | Sullivan Trail Conference | Five Rivers (375): Sullivan Trail 1947-1991 (375) |
| Hartford Accident and Indemnity Company | 715173 | Dec. 15, 1962 - Dec. 15, 1963 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 715173 | Dec. 15, 1962 - Dec. 15, 1963 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 716126 | Dec. 15, 1963 - Dec. 15, 1964 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 717220 | Dec. 15, 1964 - Dec. 15, 1965 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C718423 | Dec. 15, 1965 - Dec. 15, 1966 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C718423 | Dec. 15, 1966 - Dec. 15, 1967 | Unknown | Gateway Area (624): Gateway Area (624) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 86C718423 | Dec. 15, 1967 - Dec. 15, 1968 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C807701 | Dec. 15, 1968 - Dec. 15, 1969 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C807701 | Dec. 15, 1969 - Dec. 15, 1970 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 86C807701 | Dec. 15, 1970 - Dec. 15, 1971 | Unknown | Gateway Area (624): Gateway Area (624) |
| Hartford Accident and Indemnity Company | 54 C 990478 | July 1, 1972 - July 1, 1975 | Golden Empire Council | Golden Empire (047): Golden Empire 1937- (047) |
| Hartford Accident and Indemnity Company | 45 CBP 132079 | Aug. 1, 1981 - Aug. 1, 1984 | Northeast Ohio Council Boy Scouts of America | Great Trail (433): Northeast Ohio 1929-1993 (463) |
| Hartford Accident and Indemnity Company | 21 CBP 158051 | April 26, 1974 - Jan. 1, 1977 | Pinellas Area Council, Boy Scouts of America Inc. | Greater Tampa Bay Area (089): Pinellas Area 1970-1978 (089) |
| New England Insurance Company | SMC 70 89 26 | May 2, 1957 - May 2, 1958 | Unknown | Green Mountain (592): Green Mountain 1929-1965 (593) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| New England Insurance Company | SMC 800871 | May 2, 1958 - May 2, 1959 | Unknown | Green Mountain (592): Green Mountain 1929-1965 (593) |
| New England Insurance Company | SOLT 73 72 50 | May 28, 1957 - May 28, 1958 | Unknown | Green Mountain (592): Green Mountain 1929-1965 (593) |
| New England Insurance Company | SOLT 803705 | May 28, 1958 - May 28, 1958 | Unknown | Green Mountain (592): Green Mountain 1929-1965 (593) |
| Hartford Fire Insurance Company | 39 CBP 109170 | Oct. 29, 1970 - Oct. 29, 1973 | Hawk Mountain Council Boy Scouts of America | Hawk Mountain (528): Hawk Mountain 1970- (528) |
| Twin City Fire Insurance Company | 39 CBP 161610 | Oct. 29, 1973 - Oct. 29, 1976 | Hawk Mountain Council Boy Scouts of America | Hawk Mountain (528): Hawk Mountain 1970- (528) |
| Twin City Fire Insurance Company | 44 CBP 448087 | Oct. 29, 1976 - Oct. 29, 1979 | Hawk Mountain Council Boy Scouts of America | Hawk Mountain (528): Hawk Mountain 1970- (528) |
| Hartford Casualty Insurance Company | 14 UUC CZ6576 | June 9, 1998 - June 9, 1999 | Robert E. Lee Council, Inc., Boy Scouts of America | Heart of Virginia (602): Robert E. Lee 1953-2003 (602) |
| Hartford Casualty Insurance Company | 14 UUC CZ6576 | June 9, 1999 - June 9, 2000 | Robert E. Lee Council, Inc., Boy Scouts of America | Heart of Virginia (602): Robert E. Lee 1953-2003 (602) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Casualty Insurance Company | 14 UUC CZ6576 | June 9, 2000 - June 9, 2001 | Robert E. Lee Council, Inc., Boy Scouts of America | Heart of Virginia (602): Robert E. Lee 1953-2003 (602) |
| Hartford Casualty Insurance Company | 14 UUC CZ6576 | June 9, 2001 - June 9, 2002 | Robert E. Lee Council, Inc., Boy Scouts of America | Heart of Virginia (602): Robert E. Lee 1953-2003 (602) |
| Twin City Fire Insurance Company | 36 CBP 185443 | April 1, 1976 - April 1, 1979 | Hoosier Trails Council, Boy Scouts of America | Hoosier Trails (145): Hoosier Trails 1973- (145) |
| Twin City Fire Insurance Company | 736 CBP 109458 | April 1, 1973 - April 1, 1974 | Unknown | Hoosier Trails (145): Hoosier Trails 1973- (145) |
| Twin City Fire Insurance Company | 736 CBP 109458 | April 1, 1974 - April 1, 1975 | Unknown | Hoosier Trails (145): Hoosier Trails 1973- (145) |
| Twin City Fire Insurance Company | 736 CBP 109458 | April 1, 1975 - April 1, 1976 | Unknown | Hoosier Trails (145): Hoosier Trails 1973- (145) |
| Hartford Accident and Indemnity Company | 32 C 715130 | Jan. 1, 1975 - Jan. 1, 1976 | Unknown | Iroquois Trail (376): Lewiston Trail 1937-1994 (385) |
| Hartford Accident and Indemnity Company | 32 HU 360257 | March 10, 1975 - Jan. 1, 1976 | Lewiston Trail Council Inc., Boy Scouts of America | Iroquois Trail (376): Lewiston Trail 1937-1994 (385) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 32C719701 | Jan. 1, 1977 - Jan. 1, 1978 | Unknown | Iroquois Trail (376): Lewiston Trail 1937-1994 (385) |
| Hartford Accident and Indemnity Company | 30 CBP 109015 | June 1, 1972 - June 1, 1973 | Unknown | Laurel Highlands (527): Potomac 1938-2014 (757) |
| Hartford Accident and Indemnity Company | 30 CBP 109015 | June 1, 1973 - June 1, 1974 | Unknown | Laurel Highlands (527): Potomac 1938-2014 (757) |
| Hartford Accident and Indemnity Company | 30 CBP 109015 | June 1, 1974 - June 1, 1975 | Unknown | Laurel Highlands (527): Potomac 1938-2014 (757) |
| Hartford Accident and Indemnity Company | 30 CBP 115715 | June 1, 1975 - June 1, 1978 | Potomac Council Boy Scouts of America | Laurel Highlands (527): Potomac 1938-2014 (757) |
| Hartford Fire Insurance Company | Unknown | July 27, 1961 - July 27, 1962 | Unknown | Longhorn (662): Longhorn -2001 (582) |
| Hartford Fire Insurance Company | Unknown | July 27, 1962 - July 27, 1963 | Unknown | Longhorn (662): Longhorn -2001 (582) |
| Hartford Fire Insurance Company | Unknown | July 27, 1963 - July 27, 1964 | Unknown | Longhorn (662): Longhorn -2001 (582) |
| Hartford Fire Insurance Company | Unknown | July 27, 1964 - Jan. 1, 1965 | Unknown | Longhorn (662): Longhorn -2001 (582) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 34UUVIS5513 | June 20, 2007 - June 20, 2008 | Unknown | Mayflower (251): Knox Trail 1996-2017 (244) |
| Hartford Accident and Indemnity Company | 34UUVIS5513 | June 20, 2008 - June 20, 2009 | Unknown | Mayflower (251): Knox Trail 1996-2017 (244) |
| Hartford Accident and Indemnity Company | 34UUVIS5513 | June 20, 2009 - June 20, 2010 | Unknown | Mayflower (251): Knox Trail 1996-2017 (244) |
| Hartford Accident and Indemnity Company | 34UUVIS5513 | June 20, 2010 - June 20, 2011 | Unknown | Mayflower (251): Knox Trail 1996-2017 (244) |
| Hartford Fire Insurance Company | 13 UUN CY4185 | April 5, 1999 - April 5, 2000 | Unknown | Northern New Jersey (333): Northern New Jersey 1999- (333) |
| Hartford Fire Insurance Company | 13 UUN CY4185 | April 5, 2000 - April 5, 2001 | Northern New Jersey Council, BSA | Northern New Jersey (333): Northern New Jersey 1999- (333) |
| Hartford Accident and Indemnity Company | 20 SMP 267512 | Jan. 21, 1976 - Jan. 21, 1978 | Northwest Georgia Council of Boy Scouts of America | Northwest Georgia (100): Northwest Georgia (100) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1959 - Jan. 1, 1960 | Unknown | Old Hickory (427): Old Hickory (427) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1960 - Jan. 1, 1961 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1961 - Jan. 1, 1962 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1962 - Jan. 1, 1963 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1963 - Jan. 1, 1964 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1964 - Jan. 1, 1965 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1965 - Jan. 1, 1966 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | Unknown | Jan. 1, 1966 - Jan. 1, 1967 | Unknown | Old Hickory (427): Old Hickory (427) |
| Hartford Accident and Indemnity Company | 13 C 718232 | Sept. 20, 1979 - Sept. 20, 1980 | Pack 61 George Washington Council | |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 13 C BF1880 | Sept. 20, 1980 - Sept. 20, 1981 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 C DK2266 | Sept. 20, 1981 - Sept. 20, 1982 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 C DK2266 | Sept. 20, 1982 - Sept. 20, 1983 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 C DK2266 | Sept. 20, 1983 - Sept. 20, 1984 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1984 - Sept. 20, 1985 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1985 - Sept. 20, 1986 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1986 - Sept. 20, 1987 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1987 - Sept. 20, 1988 | Pack 61 George Washington Council | |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1988 - Sept. 20, 1989 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1989 - Sept. 20, 1990 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1990 - Sept. 20, 1991 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1991 - Sept. 20, 1992 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1992 - Sept. 20, 1993 | Pack 61 George Washington Council | |
| Hartford Accident and Indemnity Company | 13 UEK KC9259 | Sept. 20, 1993 - Sept. 20, 1994 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 1994 - Sept. 20, 1995 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 1995 - Sept. 20, 1996 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 1996 - Sept. 20, 1997 | Pack 61 George Washington Council | |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 1997 - Sept. 20, 1998 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 1998 - Sept. 20, 1999 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 1999 - Sept. 20, 2000 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 2000 - Sept. 20, 2001 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 13 UEK KC9259 | Sept. 20, 2001 - Sept. 20, 2002 | Pack 61 George Washington Council | |
| Hartford Fire Insurance Company | 39 SMP 110975 | May 16, 1977 - Jan. 1, 1980 | George Washington Council Inc. | |
| Hartford Accident and Indemnity Company | 04 C 154949 | Jan. 25, 1973 - Jan. 25, 1974 | Unknown | Pine Tree (218): Pine Tree (218) |
| Hartford Accident and Indemnity Company | 04 C 157992 | Jan. 25, 1974 - Jan. 25, 1975 | Pine Tree Council Boy Scouts of America | Pine Tree (218): Pine Tree (218) |
| Hartford Accident and Indemnity Company | 04 C 161099 | Jan. 25, 1976 - Jan. 25, 1977 | Pine Tree Council Boy Scouts of America | Pine Tree (218): Pine Tree (218) |
| Hartford Accident and Indemnity Company | 04 C 161230 | Jan. 25, 1975 - Jan. 25, 1976 | Pine Tree Council Boy Scouts of America | Pine Tree (218): Pine Tree (218) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 04 C 163132 | Jan. 25, 1977 - Jan. 25, 1978 | Pine Tree Council Boy Scouts of America | Pine Tree (218): Pine Tree (218) |
| Hartford Accident and Indemnity Company | 82 C 282090 | Jan. 1, 1975 - Jan. 1, 1976 | Unknown | Rainbow (702): Rainbow (702) |
| Hartford Accident and Indemnity Company | 82 HU 580155 | Jan. 16, 1975 - Jan. 16, 1976 | Rainbow Council Boy Scouts of America | Rainbow (702): Rainbow (702) |
| Hartford Accident and Indemnity Company | 03 C 804621 | April 27, 1973 - April 27, 1974 | Unknown | Seneca Waterways (397): Finger Lakes 1924-2009 (391) |
| Hartford Accident and Indemnity Company | 03 C 807376 | April 27, 1974 - April 27, 1975 | Finger Lakes Council, Boy Scouts of America | Seneca Waterways (397): Finger Lakes 1924-2009 (391) |
| Hartford Accident and Indemnity Company | 03 C 809631 | April 27, 1975 - April 27, 1976 | Finger Lakes Council, Boy Scouts of America | Seneca Waterways (397): Finger Lakes 1924-2009 (391) |
| Hartford Accident and Indemnity Company | 03 C 811730 | April 27, 1976 - April 27, 1977 | Finger Lakes Council, Boy Scouts of America | Seneca Waterways (397): Finger Lakes 1924-2009 (391) |
| Hartford Accident and Indemnity Company | 03 C 814173 | April 27, 1977 - April 27, 1978 | Finger Lakes Council, Boy Scouts of America | Seneca Waterways (397): Finger Lakes 1924-2009 (391) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | CBP 800237 | Jan. 1, 1977 - Jan. 1, 1978 | Unknown | Seneca Waterways (397): Otetiana 1943-2009 (397) |
| Hartford Casualty Insurance Company | 46 IC 632582 | Feb. 16, 1973 - Feb. 16, 1974 | Unknown | South Plains (694): South Plains (694) |
| Hartford Casualty Insurance Company | 46 IC 632582 | Feb. 16, 1974 - Feb. 16, 1975 | Unknown | South Plains (694): South Plains (694) |
| Hartford Casualty Insurance Company | 46 IC 632582 | Feb. 16, 1975 - Feb. 16, 1976 | Unknown | South Plains (694): South Plains (694) |
| Hartford Casualty Insurance Company | 46 TMP 100576 | Feb. 16, 1976 - Feb. 16, 1979 | South Plains Council, Boy Scouts of America | South Plains (694): South Plains (694) |
| Hartford Accident and Indemnity Company | 12 CBP 400297 | June 1, 1974 - June 1, 1977 | Suffolk County Council Inc. Boy Scouts of America | Suffolk County (404): Suffolk County (404) |
| Hartford Accident and Indemnity Company | 12 CBP 400656 | June 1, 1977 - June 1, 1980 | Suffolk County Council Inc. Boy Scouts of America | Suffolk County (404): Suffolk County (404) |
| Hartford Fire Insurance Company | 12 CPP 500098 | June 1, 1969 - June 1, 1972 | Suffolk County Council Incorporated Boy Scouts of America | Suffolk County (404): Suffolk County (404) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Accident and Indemnity Company | 12 SMP 304687 | June 1, 1972 - June 1, 1975 | Suffolk County Council Incorporated Boy Scouts of America | Suffolk County (404): Suffolk County (404) |
| Hartford Accident and Indemnity Company | 21 SMP 118708 | Sept. 15, 1975 - Jan. 1, 1978 | Suwannee River Area Council Boy Scouts of America Inc. | Suwannee River Area (664): Suwannee River Area (664) |
| Hartford Accident and Indemnity Company | 82 UUN PN2419 | June 1, 1985 - June 1, 1986 | Unknown | Three Fires (127): Du Page Area 1928-1992 (148) |
| Hartford Insurance Company of Illinois | 82 UUN PN2419 | June 1, 1986 - June 1, 1987 | Dupage Area Council #148 Boy Scouts of America | Three Fires (127): Du Page Area 1928-1992 (148) |
| Hartford Accident and Indemnity Company | 01 C 530923 | May 1, 1972 - May 1, 1973 | Unknown | Twin Rivers (364): Saratoga County 1924-1990 (684) |
| Hartford Accident and Indemnity Company | 01 C 531176 | May 1, 1972 - May 1, 1973 | Unknown | Twin Rivers (364): Saratoga County 1924-1990 (684) |
| Hartford Accident and Indemnity Company | 01 HU 300166 | Dec. 15, 1972 - Dec. 15, 1975 | Saratoga County Council Boy Scouts of America | Twin Rivers (364): Saratoga County 1924-1990 (684) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Fire Insurance Company | 02 SMP 111101 | Jan. 20, 1976 - Jan. 20, 1979 | Knights of Columbus Bldg. Assoc. & Washington Irving Council #50 | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |
| Hartford Fire Insurance Company | 02 SMP 117538 | Jan. 20, 1979 - Jan. 20, 1982 | Knights of Columbus Bldg. Assoc. & Washington Irving Council #50 | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |
| Hartford Casualty Insurance Company | 02 SMP 118672 | Jan. 20, 1982 - Jan. 20, 1983 | Knights of Columbus Bldg. Assoc. & Washington Irving Council #50 | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |
| Hartford Casualty Insurance Company | 02 SMP 118672 | Jan. 20, 1983 - Jan. 20, 1984 | Knights of Columbus Bldg. Assoc. & Washington Irving Council #50 | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |
| Hartford Casualty Insurance Company | 02 SMP 118672 | Jan. 20, 1984 - Jan. 20, 1985 | Unknown | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |
| Hartford Casualty Insurance Company | 02 SMP WC7495 | Jan. 20, 1984 - Jan. 20, 1985 | Knights of Columbus Bldg. Assoc. & Washington Irving Council #50 | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |

| Writing Company | Policy Number | Policy Period | Named Insured, If Known | Alleged Insured Local Council Per BSA |
|---|---|---|---|---|
| Hartford Casualty Insurance Company | 02 UUC NW2936 | Jan. 20, 1985 - Jan. 20, 1986 | Knights of Columbus Bldg. Assoc. & Washington Irving Council 50 | Greater Hudson Valley Council: Washington Irving 1951-1973 (388) |