# EXHIBIT A

## Compiled Solicitations Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
|  | (Jointly Administered) |
| Debtors. | **Ref. D.I. 2295, 2726, 4112, 5488 & ___** |

## ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND THE FORM AND MANNER OF NOTICE, (II) APPROVING PLAN SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, (IV) APPROVING FORM, MANNER, AND SCOPE OF CONFIRMATION NOTICES, (V) ESTABLISHING CERTAIN DEADLINES IN CONNECTION WITH APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Solicitation Procedures Order"), pursuant to sections 105(a), 502, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3016, 3017, 3018, 3020, 9006, and 9008, and Local Rules 2002, 3017-1, and 9006-1, (a) approving the Disclosure Statement for the Plan, (b) approving the form and manner of the Disclosure Statement Hearing Notice in respect of the Disclosure Statement Hearing, (c) establishing the Solicitation Procedures, (d) approving the form and manner of the Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive, (e) approving the forms of Ballots, (f) approving the date, time, manner, and scope of the Confirmation Notices in respect of the Confirmation Hearing, (g) establishing certain deadlines in connection with the foregoing, and (h) granting related relief, all as more fully set forth in the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion, the Disclosure Statement, or the Plan, as applicable.

Motion; and this Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Debtors having consented to entry of a final order by this Court under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and opportunity for a hearing on the Motion having been given and no other or further notice being necessary; and upon the record herein; and after due deliberation thereon; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      Notice of the Disclosure Statement Hearing, provided in the manner described in the Motion and the form of which was attached to the Motion as **<u>Exhibit B</u>**, was sufficient and appropriate under the circumstances and complied with the applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, and no further notice is needed.

B.      The Disclosure Statement, as may be modified and amended in accordance with the record at the Disclosure Statement Hearing, contains "adequate information" regarding the Plan within the meaning of section 1125 of the Bankruptcy Code.  No further information is deemed necessary or required.

C.      The Disclosure Statement complies with Bankruptcy Rule 3016(c) and describes, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction, exculpation, and release provisions contained in the Plan.

D. The Solicitation Procedures attached hereto as **Exhibit 1** provide a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and the applicable Bankruptcy Rules.

E. The contents of the Solicitation Packages and other notices, as set forth in the Motion and the Solicitation Procedures, comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, the Voting Deadline, the Plan Objection Deadline, the Confirmation Hearing, the Plan, the procedures described to solicit votes to accept or reject the Plan and related matters to all interested parties.

F. With respect to holders of Direct Abuse Claims, the proposed procedures for the distribution of the Solicitation Packages, including the Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive, substantially in the form attached hereto as **Exhibit 11**, the Master Ballot, the procedures for the submission of votes to accept or reject the Plan by Firms representing multiple holders of Direct Abuse Claims, and the related procedures for the solicitation of votes to accept or reject the Plan from the holders of Direct Abuse Claims, comply with Bankruptcy Rule 3017 and are adequate under the circumstances.

G. The forms of Ballots, substantially in the forms attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-5**, **2-6**, and **2-7**, including all instructions provided therein, (i) are sufficiently consistent with Official Form No. 314 to be approved, (ii) adequately address the particular needs of these Chapter 11 Cases, and (iii) are appropriate for the Voting Classes of Claims entitled to vote to accept or reject the Plan. No further information or instructions are necessary.

H. Pursuant to the Plan, the holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-

Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) are impaired and entitled to receive distributions under the Plan. Accordingly, holders of Claims in such classes are entitled to vote on account of such Claims.

I. Ballots need not be provided to holders of Claims or Interests in the Non-Voting Classes (Classes 1, 2 and 10). Classes 1 and 2 are Unimpaired and are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 10 is Impaired and is not receiving any distribution under the Plan, and is therefore deemed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code.

J. The form of Non-Voting Status Notice, substantially in the form attached hereto as **Exhibit 5**, complies with Bankruptcy Rule 3017(d) and, together with the Confirmation Hearing Notice, provide adequate notice to the holders of Claims and Interests in the Non-Voting Classes (or other holders of Claims or Interests that are otherwise deemed not entitled to vote to accept or reject the Plan) of their non-voting status. No further notice is deemed necessary or required.

K. The period during which the Debtors may solicit votes on the Plan is a reasonable and adequate period of time for holders of Claims entitled to vote on the Plan to make an informed decision to accept or reject the Plan and timely return Ballots evidencing such decision.

L. The combination of direct and published notice of the Plan and Confirmation Hearing, including, without limitation, the Confirmation Hearing Notice and Publication Notice, substantially in the forms attached hereto as **Exhibits 3** and **4**, provides good and sufficient notice of the Plan, the Confirmation Hearing, and the opportunity to vote on and object to the Plan, complies with Bankruptcy Rules 2002 and 3017, and satisfies the requirements of due process with respect to all known and unknown creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion is GRANTED as set forth herein.

**Disclosure Statement**

2. The Disclosure Statement is APPROVED as containing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.

3. All objections to the Disclosure Statement that have not been withdrawn or resolved previously or at the hearing to consider approval of the Disclosure Statement are overruled.

4. The Disclosure Statement Hearing Notice and the manner of service thereof are each APPROVED.

**Plan Confirmation Schedule**

5. The following dates and deadlines in connection with the Solicitation Procedures and Confirmation Hearing are APPROVED:

| Event | Proposed Date |
|---|---|
| Voting Record Date | September 21, 2021 |
| Solicitation Date | [October 4], 2021 |
| Rule 3018(a) Motion Deadline | [October 19], 2021 |
| Publication Deadline | [October 26], 2021 |
| Plan Supplement Deadline | [November 2], 2021 |
| Voting Resolution Event Deadline | [November 16], 2021 or as otherwise ordered by the Court |
| Voting Deadline | [November 16], 2021 at 4:00 p.m. (Eastern Time) |
| Preliminary Voting Report Deadline | [November 19], 2021 |
| Plan Objection Deadline | [November 23], 2021 at 4:00 p.m. (Eastern Time) |
| Final Voting Report Deadline | [November 30], 2021 |
| Confirmation Brief/Plan Reply Deadline | [December 2], 2021 |
| Confirmation Hearing | [December 9], 2021 at 10:00 a.m. (Eastern Time) |

6.     The Confirmation Hearing shall be held on **December 9, 2021 at 10:00 a.m. (Eastern Time)** and shall continue to the extent necessary on December 10, December 13, December 14, and December 15 at 10:00 a.m. (Eastern Time).  The Confirmation Hearing may be adjourned from time to time by this Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Court.

**Distribution of Solicitation Packages**

7.     The proposed distribution and contents of the Solicitation Packages, which shall include the following, are APPROVED:

(a)     the Cover Letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and this Solicitation Procedures Order via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots, and urging holders of Claims in the Voting Classes to vote to accept the Plan;

(b)     the Confirmation Hearing Notice;

(c)     the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Court before the Solicitation Date) via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

(d)     this Solicitation Procedures Order, including the Solicitation Procedures and all exhibits, via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

(e)     an appropriate form of Ballot with return instructions and a return envelope, as applicable;

(f)     a letter from any official committee or the Coalition, substantially in the form filed in these Chapter 11 Cases before the Disclosure Statement Hearing (and as may be modified, amended, or supplemented from time to time); and

(g)     any other materials ordered by the Court to be included as part of the Solicitation Package.

8.     The Debtors are not required to distribute paper copies of the Disclosure Statement, the Plan, and the Solicitation Procedures Order unless a holder of a Claim or Interest makes a specific request for copies of such documents (which shall be free of charge) to the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.   The Debtors are authorized, but not directed or required, to distribute the Disclosure Statement, the Plan, and this Solicitation Procedures Order to holders of Claims entitled to vote on the Plan by providing instructions for such holders to obtain such documents free of charge, as part of the Solicitation Package, via the Debtors' solicitation and voting websites at https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) and https://omniagentsolutions.com/bsa-ballots (all other Claims).  The Cover Letter included in the Solicitation Package and attached to this Solicitation Procedures Order as **Exhibit 7** is hereby approved, and includes instructions for obtaining access, free of charge, to all Solicitation Package materials and includes the website of the Solicitation Agent from which these materials may also be downloaded.  The Debtors may substitute hard copies of all solicitation materials instead of electronic format as may be necessary to achieve timely distribution of the Solicitation Packages or for any other reason.

9.     The Debtors shall transmit the Solicitation Packages by mail to holders of Claims in the Voting Classes.  However, the Debtors shall not be required to provide the Solicitation Packages to eligible unrepresented holders of Direct Abuse Claims who specifically indicated on their Sexual Abuse Survivor Proofs of Claim that the Debtors are authorized to communicate

with these holders regarding their claims via email. Rather, the Debtors are authorized, but not directed or required, to cause Solicitation Packages to be emailed to such holders in lieu of sending the Solicitation Packages by mail. Any holder of a Direct Abuse Claim that receives the Solicitation Package by email but prefers to receive such materials by mail may contact the Solicitation Agent as set forth above to receive a mailed copy at no cost to such holder.

10. Any party that receives solicitation materials in electronic format, but would prefer to receive materials in paper or USB format, may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

11. The Debtors shall distribute Solicitation Packages to (a) the U.S. Trustee, (b) the SEC, counsel to the Tort Claimants' Committee, (d) counsel to the Creditors' Committee, (e) counsel to the Future Claimants' Representative, (f) the 2002 List, (g) holders of Direct Abuse Claims, subject to the procedures described in this Solicitation Procedures Order and in the Solicitation Procedures for such holders that are represented by counsel, and (h) all other holders of Claims in the Voting Classes.

12. The Solicitation Agent is authorized to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims, (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement and Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors regarding the Plan.

13.    The Solicitation Agent is authorized to accept Ballots via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform").    The encrypted ballot data and audit trail created by each electronic submission on the E-Ballot Platform shall become part of the record of any electronic Ballot submitted in this manner, and the associated electronic signature shall be deemed to be an original signature that is legally valid and effective.    Ballots submitted by facsimile, email or other means of electronic transmission shall not be counted (unless an exception has been granted by the Debtors).

14.    For solicitation and tabulation purposes, one Ballot will be provided to each holder of a General Unsecured Claim and, for applicable holders of Class 6 Claims, such Ballot shall include the option to make an irrevocable election to join Class 5 (Convenience Claims) and be treated as a holder of a Class 5 Claim.  If a holder of a Class 6 Claim with a Claim of $50,000 or less is deemed to join Class 5 (Convenience Claims) or an eligible holder of a Class 6 Claim that is greater than $50,000 makes the voluntary election to join Class 5 (Convenience Claims), then its Claim shall, upon its allowance for voting purposes only, be counted only in such Class and shall not be tabulated as a Claim in Class 6 (General Unsecured Claims).

15.    The Debtors were authorized to send to each Firm a Client List on a secure, encrypted and password-protected USB drive that set forth information regarding each Firm's Abuse Survivor Clients as compiled by the Debtors and their advisors based on a review of Sexual Abuse Survivor Proofs of Claim filed by or on behalf of holders of Direct Abuse Claims in the Chapter 11 Cases.  Any Direct Abuse Claims that cannot be matched to a Firm or that are not otherwise included in any Client List shall be solicited via the Direct Solicitation Method defined below and set forth in the Solicitation Procedures.  The Solicitation Agent shall not provide Ballots to any Firm on account of, and votes included on any Master Ballot shall not be counted

for, any individuals for which a Direct Abuse Claim was not timely filed prior to the Abuse Claims Bar Date.

16. The Debtors and the Solicitation Agent shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity from which the notice of the Motion or other mailed notice in these Chapter 11 Cases was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with accurate addresses for such persons or entities before the Solicitation Date, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such persons or entities shall not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017(d).

17. The Debtors shall distribute a copy of the Confirmation Hearing Notice and Non-Voting Status Notice to the Non-Voting Classes and to the holders of Unclassified Claims. The Debtors and Solicitation Agent shall not be required to mail a Solicitation Package or any other materials related to voting or confirmation of the Plan to the holders of Claims in the Non-Voting Classes or holders of Unclassified Claims, unless otherwise requested through the process set forth in the Non-Voting Status Notice.

18. The Debtors shall not provide the holders of Class 10 Delaware BSA Interests with a Solicitation Package or any other type of notice in connection with solicitation of the Plan.

19. The Debtors shall distribute the Solicitation Package and Disputed Claim Notice to holders of Claims that are subject to a pending objection by the Debtors as of the Solicitation Date. The Debtors and Solicitation Agent shall not be required to count the vote of any such returned Ballot of such holders unless a Resolution Event occurs, as provided in the Solicitation Procedures.

20.     The Debtors shall not be required to deliver Ballots or Solicitation Packages to counterparties to the Debtors' Executory Contracts and Unexpired Leases that do not have scheduled Claims or Claims based upon filed Proofs of Claim. Rather, the Debtors are authorized to mail the Cure and Assumption Notice and the Rejection Notice to the applicable counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (as the case may be), within the time periods specified in the Plan and the Disclosure Statement.

21.     The Debtors shall file and serve the Plan Supplement Notice on the 2002 List and on the Voting Classes on the date the Plan Supplement is filed or as soon as reasonably practicable thereafter. The Debtors shall further serve copies of the Cure and Assumption Notice and Rejection Notice on the applicable counterparties.

**Solicitation Procedures**

22.     The Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with the Solicitation Procedures attached hereto as **Exhibit 1**, which are hereby APPROVED in their entirety.

23.     The forms of Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive attached to this Solicitation Procedures Order as **Exhibit 11** are APPROVED in all respects.

24.     The forms of Ballots attached hereto as **Exhibits 2-1**, **2-2**, **2-3**, **2-4**, **2-5**, **2-6**, and **2-7**, respectively, are APPROVED in all respects.

25.     All Direct and Indirect Abuse Claims in Classes 8 and 9 of the Plan shall be temporarily allowed in the amount of $1.00 in the aggregate per claimant solely for purposes of

voting to accept or reject the Plan and not for any other purpose, or as otherwise ordered by the Bankruptcy Court.

26.     All Non-Abuse Litigation Claims filed on account of litigation against the Debtors, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as contingent and unliquidated Claims in accordance with the Solicitation Procedures and shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant, or as otherwise ordered by the Bankruptcy Court.

27.     The Debtors are authorized to cause Solicitation Packages to be distributed to Firms representing holders of Direct Abuse Claims that have voluntarily directed the Solicitation Agent to solicit the votes of their clients using the Master Ballot Solicitation Method set forth in the Solicitation Procedures pursuant to an Abuse Survivor Plan Solicitation Directive, in lieu of serving a Solicitation Package on each individual holder, in accordance with the Master Ballot Solicitation Method set forth in the Solicitation Procedures.  With respect to Firms representing holders of Direct Abuse Claims that did not return a voluntary Abuse Survivor Plan Solicitation Directive requesting that their clients' votes be solicited by the Master Ballot Solicitation Method, the Debtors are authorized to cause Solicitation Packages to be distributed directly to such holders according to the communication preferences indicated in such holders' Sexual Abuse Survivor Proofs of Claim.

28.     For the avoidance of doubt, the Debtors are authorized to solicit votes to accept or reject the Plan from each holder of a Direct Abuse Claim who cannot be matched to a Firm or who is not included in any Client List to be solicited via the Direct Solicitation Method set forth in the Solicitation Procedures.

29.     The procedures set forth in the Solicitation Procedures with respect to Disputed Claims are hereby approved in all respects.

30.     As Solicitation Agent in these Chapter 11 Cases, Omni Agent Solutions shall process and tabulate Ballots in accordance with the Solicitation Procedures.  Omni Agent Solutions shall file a preliminary voting report (the "<u>Preliminary Voting Report</u>") no later than the Preliminary Voting Report Deadline of **[November 19], 2021**, and shall file a final voting report (the "<u>Final Voting Report</u>") no later than the Final Voting Report Deadline of **[November 30], 2021**.

**<u>Confirmation Notices and Objection Procedures</u>**

31.     The form, manner, and scope of the Confirmation Hearing Notice, the Publication Notice, the Non-Voting Status Notice, the Disputed Claim Notice, the Plan Supplement Notice, the Cure and Assumption Notice, and the Rejection Notice, substantially in the forms attached hereto as **<u>Exhibits 3</u>**, **<u>4</u>**, **<u>5</u>**, **<u>6</u>**, **<u>8</u>**, **<u>9</u>**, and **<u>10</u>**, respectively, constitute good, sufficient, and adequate notice to all parties, including known and unknown creditors, comply with the requirements of due process, and are APPROVED.  Such notices are being provided by means reasonably calculated to reach all interested persons, reasonably convey all the required information to inform all persons affected thereby, and provide a reasonable time for a response and an opportunity to object to the relief requested.  No other or further notice is necessary.

32.     Notwithstanding anything else herein, the Debtors shall serve the Confirmation Hearing Notice on: (a) all holders of Claims, including Unclassified Claims, regardless of whether they are entitled to vote; (b) the 2002 List; (c) the Internal Revenue Service; (d) the SEC; (e) the U.S. Trustee; (f) counsel to the Creditors' Committee; (g) counsel to the Tort Claimants' Committee; (h) counsel to the Future Claimants' Representative; (i) all federal, state, and local

taxing authorities in the jurisdictions in which the Debtors have tax liabilities; (j) all federal, state, and local authorities that regulate any portion of the Debtors' organizational operations; (k) all other persons or entities listed on the Debtors' creditor mailing matrix; and (l) all counterparties to Executory Contracts and Unexpired Leases.

33. Objections and responses, if any, to confirmation of the Plan must (a) be in writing, (b) set forth in detail the name and address of any party filing the objection, the legal and factual basis for the objection, the amount of the objector's Claims or such other grounds that give the objector standing to assert the objection, and any evidentiary support thereof, (c) conform to the Bankruptcy Rules and Local Rules, (d) be filed with this Court, and (e) be served upon the parties listed in the Confirmation Hearing Notice at the addresses set forth therein, on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email delivered to counsel of the Debtors.

34. Objections to confirmation of the Plan not timely filed and served in accordance with the provisions of this Solicitation Procedures Order may not be considered by this Court and may be denied and overruled unless otherwise ordered by this Court.

35. The Debtors or other parties in interest may file and serve a reply or replies to any objections or responses to confirmation of the Plan on or before the Confirmation Brief/Plan Reply Deadline of **[December 2], 2021**.

**Additional Relief**

36. The Debtors are authorized to take any action necessary or appropriate to implement the terms of and the relief granted in this Solicitation Procedures Order in accordance with the Motion.

37.     The Debtors are authorized to make any non-substantive changes to the Plan and Disclosure Statement, the Solicitation Procedures, the Ballots, the Solicitation Packages, the Confirmation Notices, the Publication Notice, and related documents without further order of this Court, including, without limitation, changes to (a) correct any typographical, grammatical, and formatting errors or omissions, and (b) make conforming changes to the Plan, the Disclosure Statement, and any other materials in the Solicitation Packages before distribution.

38.     Nothing in this Solicitation Procedures Order shall be construed as a waiver of the right of the Debtors or other party in interest, as applicable, to object to a Proof of Claim after the Voting Record Date.

39.     All time periods set forth in this Solicitation Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     Notwithstanding any applicable Bankruptcy Rule, the terms and conditions of this Solicitation Procedures Order shall be immediately effective and enforceable upon its entirety.

41.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

42.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Solicitation Procedures Order.

Dated: _____, 2021
        Wilmington, Delaware

_____
THE HON. LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

15

<u>**Exhibit 1**</u>

**Solicitation Procedures**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## SOLICITATION PROCEDURES

**PLEASE TAKE NOTICE THAT** on [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; (d) approving the form and manner of notice and other related documents as they relate to the Debtors; and (e) granting related relief.

The Solicitation Procedures set forth in this document are supplemented by the instructions accompanying the Ballots included in the Solicitation Packages that will be sent to those holders of Claims entitled to vote to accept or reject the Plan. Reference should be made to those instructions in addition to this document; however, in the case of a conflict, the terms of the Ballots control.

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Motion for Entry of an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. [2295]] (the "Solicitation Procedures Motion"), the Plan, the Disclosure Statement, or the *Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [D.I. 695], as applicable.

## I. VOTING RECORD DATE

The Bankruptcy Court has established **[September 21], 2021**, as the record date for purposes of determining which holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) are entitled to vote on the Plan (the "Voting Record Date").

## II. VOTING DEADLINE

The Bankruptcy Court has approved **[November 16], 2021 at 4:00 p.m. (Eastern Time)** as the deadline to vote to accept or reject the Plan (the "Voting Deadline"). The Debtors may extend the Voting Deadline, in their discretion, without further order of the Bankruptcy Court. To be counted as a vote to accept or reject the Plan, each Ballot or Master Ballot (each, generally referred to herein as a "Ballot") must be properly executed, completed, and delivered by (1) the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform"), (2) mail, (3) overnight delivery, or (4) personal delivery, so that it is ***actually received***, in each case, by the Solicitation Agent no later than the Voting Deadline. Specifically, each Ballot must be returned through the E-Ballot Platform at (a) https://omniagentsolutions.com/bsa-SAballots for Direct Abuse Claim Ballots and Master Ballots or (b) https://omniagentsolutions.com/bsa-ballots for all other Ballots, by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address:

> Boy Scouts of America Ballot Processing
> c/o Omni Agent Solutions
> 5955 De Soto Avenue, Suite 100
> Woodland Hills, CA 91367

Only one Ballot may be submitted on account of each Claim. Holders of Claims that submit a Ballot via the E-Ballot Platform should not also submit a paper Ballot. If a holder of a Claim submits a Ballot using the E-Ballot Platform and a paper Ballot, the last Ballot actually received by the Solicitation Agent before the Voting Deadline shall be deemed to be the effective vote. Delivery of a Ballot to the Solicitation Agent by facsimile or electronic means other than through the E-Ballot Platform shall not be valid.

Exhibits to Master Ballots may only be submitted in Excel format via the E-Ballot Platform or, if the Master Ballot is being mailed, by USB drive—they may not be printed out and submitted in hard copy format. Votes provided on any Exhibit submitted in a format other than the Excel Exhibit provided by the Solicitation Agent shall not be counted. Exhibits must be submitted together with the Master Ballot.

## III. FORM, CONTENT, AND MANNER OF NOTICES

### A. Content of the Solicitation Package.

The following materials shall constitute the solicitation package (the "Solicitation Package"):

1. a cover letter describing the contents of the Solicitation Package and instructions to obtain access, free of charge, to the Plan, the Disclosure Statement, and the Solicitation Procedures Order via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots, and urging holders of Claims in the Voting Classes to vote to accept the Plan (the "Cover Letter");

2. the *Notice of Hearing to Consider Confirmation of Second Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 3** (the "Confirmation Hearing Notice");

3. the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date) via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

4. the Solicitation Procedures Order, including the Solicitation Procedures and all exhibits, via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots;

5. an appropriate form of Ballot with return instructions and a return envelope, as applicable;

6. a letter from any official committee or the Coalition, substantially in the form filed in these Chapter 11 Cases before the Disclosure Statement Hearing (and as may be modified, amended, or supplemented from time to time); and

7. any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

### B. Distribution of the Solicitation Package.

This Section explains the manner in which Solicitation Packages shall be distributed to holders of Claims entitled to vote on the Plan and other interested parties.

The Cover Letter shall include instructions for holders of Claims in the Voting Classes to obtain, free of charge, the Plan, the Disclosure Statement, and the Solicitation Procedures Order and exhibits in electronic format via https://omniagentsolutions.com/bsa-SAballots or https://omniagentsolutions.com/bsa-ballots, and all other contents of the Solicitation Package,

including Ballots, shall be provided in paper format, *except* as specifically provided in <u>Section IV</u> of these Solicitation Procedures with respect to certain holders of Direct Abuse Claims. Any holder of a Claim that receives the materials in electronic format but would prefer a flash drive or paper format may contact the Solicitation Agent to obtain paper copies by: (a) calling the Debtors' toll-free restructuring hotline at (866) 907-2721; (b) visiting the Debtors' restructuring website at https://omniagentsolutions.com/BSA; (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367; or (d) emailing BSAballots@omniagnt.com.

1. *Direct Abuse Claims*. The Solicitation Agent shall cause a Solicitation Package to be served on holders of Direct Abuse Claims by the Solicitation Date in the manner described in **Section IV** below.

2. *Claims in the Other Voting Classes*. The Solicitation Agent shall cause a Solicitation Package to be served on each holder of a Claim in the Voting Classes other than Direct Abuse Claims who is entitled to vote by the Solicitation Date.

3. *Other Parties*. The Solicitation Agent shall cause a Solicitation Package (without a Ballot) to be served for informational purposes on (a) the Office of the United States Trustee for the District of Delaware, (b) the Securities and Exchange Commission, (c) counsel to the Tort Claimants' Committee, (d) counsel to the Unsecured Creditors' Committee, (e) counsel to the Future Claimants' Representative, and (f) each party that has requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 by the Solicitation Date.

4. *Exception for Undeliverables*. Notwithstanding any provision to the contrary herein, neither the Debtors nor the Solicitation Agent shall be required to distribute a Solicitation Package to any Person or Entity as to whom the notice of the Solicitation Procedures Motion or other mailed notice in the Chapter 11 Cases was returned as undeliverable by the postal service, unless the Solicitation Agent is provided with an accurate address for such Person or Entity before the Solicitation Date.

5. *Avoidance of Duplication*. The Debtors shall make reasonable efforts to ensure that any holder of a Claim that has filed duplicative Claims and/or Claims that are amended and superseded by a later filed Claim against a Debtor that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class. If the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim, the effective vote shall be determined in accordance with **Sections IV.E** and **V** below.

C.    **Resolution of Disputed Claims for Voting Purposes; Resolution Event.**

1. Absent further order of the Bankruptcy Court, the holder of a Claim in a Voting Class that is the subject of a pending "reclassify" or "reduce and allow" objection filed on or before the Solicitation Date only to reclassify or reduce the amount of such Claim shall be entitled to vote such Claim in accordance with the proposed reclassification or in the reduced amount (as applicable) contained in such objection.

2.       If a Claim in a Voting Class is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "<u>Disputed Claim</u>"), (a) the Debtors shall cause the applicable holder to be served with a notice of such Disputed Claim (the "<u>Disputed Claim Notice</u>"), substantially in the form attached to the Solicitation Procedures Order as **Exhibit 6**, and (b) the applicable holder shall receive a Solicitation Package but shall not be entitled to have their vote to accept or reject the Plan counted on account of such Claim unless a Resolution Event (as defined below) occurs as provided herein.

3.       If a Claim in a Voting Class is subject to an objection that is filed with the Court after the Solicitation Date, the applicable Claim shall be deemed temporarily allowed solely for voting purposes to the extent otherwise allowed for voting purposes in accordance with these Solicitation Procedures, without further action by the Debtors or the holder of such Claim and without further order of the Bankruptcy Court, unless the Debtors and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise.

4.       If the holder of any Disputed Claim seeks to challenge the disallowance or estimation of its Claim for voting purposes, such holder must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "<u>Rule 3018(a) Motion</u>").  Any Rule 3018(a) Motion shall be filed with the Bankruptcy Court and served on the Debtors on or before [October 19], 2021.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **[November 16], 2021** (the "<u>Voting Resolution Event Deadline</u>"), or as otherwise ordered by the Bankruptcy Court.

5.       A "<u>Resolution Event</u>" means, with respect to a Disputed Claim that is the subject of an objection other than a "reclassify" or "reduce and allow" objection, the occurrence of one or more of the following events on or before the Voting Resolution Event Deadline:

a.       An order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

b.       entry of an order of the Bankruptcy Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim for voting purposes in accordance with **Section III.C.4** above;

c.       execution of a stipulation or other agreement between the holder of a Disputed Claim and the Debtors (a) resolving the objection and allowing such Claim for voting purposes in an agreed-upon amount or (b) otherwise fixing an amount of the Claim for voting purposes; or

d.       the pending objection is voluntarily withdrawn by the objecting party.

**D.      Non-Voting Status Notice for Unclassified and Unimpaired Classes of Claims.**

Certain holders of Claims that are not classified under Article III of the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are presumed to accept the Plan under section 1126(f) of the Bankruptcy Code shall receive only the *Notice of Non-Voting Status to Holders of Unclassified Claims and Holders of Unimpaired Claims Conclusively Presumed to Accept the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 5**.  The notice shall instruct these holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

## IV.      SPECIAL PROCEDURES RELATING TO DIRECT ABUSE CLAIMS

The procedures set forth in this **Section IV** only apply to holders of Direct Abuse Claims, unless otherwise expressly indicated.

**A.      To Attorneys Representing Holders of Direct Abuse Claims:**

1.      On or about **April 5, 2021**, the Solicitation Agent mailed an Abuse Claim Solicitation Notice, an Abuse Survivor Plan Solicitation Directive, and a Client List (each as defined below) on each known attorney representing holders of Abuse Claims (each, a "Firm").

2.      On or about **April 5, 2021**, the Debtors mailed to each Firm an Excel spreadsheet on a secure, encrypted USB drive (each, a "Client List") that listed the first and last name, claim number, month and year of birth, last four digits of Social Security Number, mailing address, and email address (if available) of each Firm's clients who hold Direct Abuse Claims (collectively, the "Abuse Survivor Clients"), as compiled by the Debtors, with the assistance of their professionals, based on their review of the Sexual Abuse Survivor Proofs of Claim filed on or before the Abuse Claims Bar Date by or on behalf of the holders of Direct Abuse Claims in the Chapter 11 Cases.

3.      The Debtors requested that each Firm confirm the names, addresses, and (if known) email addresses of its Abuse Survivor Clients as set forth on the Client List.  To the extent a Firm includes Abuse Survivor Clients who were not originally listed by the Solicitation Agent, such Firm must provide the Solicitation Agent with the Proof of Claim number that corresponds to each such additional Abuse Survivor Client's Direct Abuse Claim.  If the Abuse Survivor Client's Sexual Abuse Survivor Proof of Claim does not indicate that communications regarding such claim may be directed to such client's Firm, a Firm must also provide written verification from the Abuse Survivor Client(s) that he or she has authorized the Firm to receive the Solicitation Package on his or her behalf.  If such written verification is not supplied by the Firm, the Solicitation Agent will not count the vote for the Abuse Survivor Client(s) in a Master Ballot submitted by such Firm and those Abuse Survivor Client(s) will be solicited by the Direct Solicitation Method.  The Solicitation Agent endeavored to identify on the Client Lists any conflicting records indicating that an individual Abuse Survivor Client may be represented by more than one Firm or has filed duplicative Direct Abuse Claims on account of a single claim.

4. To incorporate each Firm's preferred method of distribution of the Solicitation Packages (i.e., Master Ballot Solicitation Method or Direct Solicitation Method, as defined below), as authorized by each Firm's clients on the Sexual Abuse Survivor Proofs of Claim, the Debtors requested that each Firm voluntarily return a completed Abuse Survivor Plan Solicitation Directive so that it was actually received by the Solicitation Agent no later than **May 12, 2021** (the "<u>Abuse Survivor Plan Solicitation Directive Deadline</u>").

5. Pursuant to the Abuse Survivor Plan Solicitation Directive, each Firm may direct the Solicitation Agent to solicit votes on the Plan from its Abuse Survivor Clients according to one of the following methods, subject to approval of such Solicitation Procedures by the Bankruptcy Court:

a. **Master Ballot Solicitation Method**. A Firm may direct the Solicitation Agent to serve the Firm with one Solicitation Package and one Master Ballot on which to record the votes of all of its Abuse Survivor Clients to accept or reject the Plan (the "<u>Master Ballot Solicitation Method</u>") if the Firm certifies, on or before the Abuse Survivor Plan Solicitation Directive Deadline, that (a) the Firm shall collect and record the votes of its Abuse Survivor Clients through customary and accepted practices, and that it has obtained authority to cast each of its Abuse Survivor Clients' votes to accept or reject the Plan (subject in each case to the requirements that the Firm comply with the voting procedures set forth herein and that each Abuse Survivor Client shall have indicated to the Firm his or her informed decision on such vote) or (b) the Firm has the authority under applicable law to vote to accept or reject the Plan on behalf of its Abuse Survivor Clients (a valid power of attorney or other written documentation to that effect may be requested by the Debtors, in their discretion). If it is the Firm's customary and accepted practice to collect and record authorizations or instructions from its Abuse Survivor Clients by email, telephone, or other standard communication methods, the Firm shall be authorized to follow such customary practices to collect and record the votes of its Abuse Survivor Clients. Each Firm that selects the Master Ballot Solicitation Method shall provide the Disclosure Statement, in hard copy, flash drive, or electronic format, to its Abuse Survivor Clients. Any Firm that elects the Master Ballot Solicitation Method must return the Master Ballot to the Solicitation Agent so that it is received by the Voting Deadline.

b. **Direct Solicitation Method**. A Firm may direct the Solicitation Agent to solicit votes on the Plan directly from each of the Firm's Abuse Survivor Clients by distributing a Solicitation Package (including a Ballot) directly to each of the Firm's Abuse Survivor Clients via email addressed to the email address specified on the Firm's Client List (unless otherwise ordered by the Bankruptcy Court) or, where email communications have not been expressly authorized by an Abuse Survivor Client on his or her Sexual Abuse Survivor Proof of Claim or an email has not been provided, via U.S. mail at the street address specified on the Firm's Client List (the "<u>Direct Solicitation Method</u>").[3] Under the Direct Solicitation Method, each Abuse Survivor Client must return his or her completed Ballot to the Solicitation Agent so that it is received by the Voting Deadline. **For the avoidance of doubt, the Debtors shall solicit votes**

---

[3] For the avoidance of doubt, the Debtors shall only cause a Solicitation Package (including a Ballot) to be emailed to holders of Direct Abuse Claims who specifically indicated on their filed Sexual Abuse Survivor Proofs of Claim that the Debtors are authorized to communicate with these holders regarding their claims via email. Each holder of a Direct Abuse Claim who did not specifically authorize email communications on his or her Sexual Abuse Survivor Proof of Claim shall only be served a Solicitation Package by U.S. mail.

**to accept or reject the Plan from each holder of a Direct Abuse Claim who cannot be matched to a Firm or who is not included in any Client List to be solicited via the Direct Solicitation Method.**

      6.      If a Firm certifies that it does not represent any Abuse Survivor Clients, the Solicitation Agent is authorized to omit such Firm from the Debtors' solicitation of votes on the Plan and request that such Firm be removed from the service list in the Chapter 11 Cases. For the avoidance of doubt, any such affected survivors shall be solicited via the Direct Solicitation Method.

    **B.**    **Completion and Return of Ballots by Attorneys for Holders of Direct Abuse Claims.**

A Firm may submit a Ballot on behalf of an Abuse Survivor Client, but only to the extent such Firm has the requisite authority to do so under applicable law and completes a certification of such authority in the manner set forth herein and on the Ballot that corresponds to such Direct Abuse Claim (a valid power of attorney or other written documentation to that effect may be requested by the Debtors, in their discretion). Each Firm voting on behalf of more than one Abuse Survivor Client must complete a Master Ballot, which shall set forth all of the votes cast by such Firm on behalf of all such clients. The following procedures govern the completion and return of a Master Ballot:

      1.      *Summarizing Votes on the Master Ballot*: The Master Ballot shall contain the following options for voting, one of which must be marked by the Firm:

        a.     "All claimants listed on the Exhibit accompanying this Master Ballot ACCEPT (vote in favor of) the Plan."

        b.     "All claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote against) the Plan."

        c.     "Some of the claimants listed on the Exhibit accompanying this Master Ballot ACCEPT (vote in favor of) the Plan, while other claimants listed on the exhibit accompanying this Master Ballot REJECT (vote against) the Plan."

      2.      *Certification by Firm of Authority to Vote and Related Issues*:

        a.     The Master Ballot contains certifications, to be completed by the attorney preparing and signing the Master Ballot, pursuant to which such attorney shall certify that he or she has the authority under applicable law to vote to accept or reject the Plan on behalf of the Abuse Survivor Clients who are listed on the exhibit to the Master Ballot.

        b.     If the attorney is unable to make such certification on behalf of any Abuse Survivor Client, the attorney may **<u>not</u>** cast a vote on behalf of such Abuse Survivor Client and **<u>must</u>** timely send the information

relating to the name and address of such Abuse Survivor Client to the Solicitation Agent.

3.     *Summary Sheet Exhibit to the Master Ballot*:

a.     Each attorney will receive with the Master Ballot an exhibit on a USB drive containing an electronic client list in Excel format of each holder of a Direct Abuse Claim whom the attorney represents (the "Exhibit").  The Exhibit shall list, for each Abuse Survivor Client represented by the attorney's Firm and on whose behalf the attorney is voting on the Plan, (1) the Abuse Survivor Client's first and last name, the Abuse Survivor Client's claim number, the last four digits of the Abuse Survivor Client's Social Security Number (if the Abuse Survivor Client does not have a Social Security Number, it will not be listed), and the Abuse Survivor Client's date of birth, (2) whether the Abuse Survivor Client votes to ACCEPT / vote in favor of or to REJECT / vote against the Plan, (3) whether the Abuse Survivor Client elects to receive the Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00, conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, and (4) if the Abuse Survivor Client is voting to accept or reject the Plan, whether the Abuse Survivor Client opts out of the Releases by Holders of Claims set forth in Article X.J.4 of the Plan.

b.     The Exhibit and the completed Master Ballot shall be returned to the Solicitation Agent via the E-Ballot Platform in accordance with **Sections II and IV** of these Solicitation Procedures.  The Exhibit shall not deviate from the following format:

| Claimant's Last Name | Claimant's First Name | Claim Number | Claimant's SSN (last 4 digits) | Claimant's Date of Birth | Vote to ACCEPT / in Favor of OR Vote to REJECT / Against the Plan | Elects to Receive $3,500 Expedited Distribution | Opts Out of Release in Article X.J.4 of Plan |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

**C.     To Holders of Indirect Abuse Claims:**  The Solicitation Agent shall cause a Solicitation Package, including a Ballot substantially in the form annexed to the Solicitation Procedures Order as **Exhibit 2-7**, to be served upon each known holder of an Indirect Abuse Claim who is entitled to vote to accept or reject the Plan and whose Claim has not been withdrawn or disallowed or expunged by an order of the Bankruptcy Court on or before the Solicitation Date.

**D.     Expedited Distribution Election.**

Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect on his or her Ballot or Master Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00, conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the

Settlement Trust, the Protected Parties, and the Chartered Organizations. The Settlement Trust shall make the Expedited Distributions on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.

E.     **Calculation of Voting Amount With Respect to Direct and Indirect Abuse Claims.[4]**

1.     Each holder of a Direct Abuse Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant, or as otherwise ordered by the Bankruptcy Court. The temporary allowance of Direct Abuse Claims in the amount of $1.00 is solely for voting purposes, and shall not be binding upon the holder, the Debtors, the Settlement Trust, the Firms, or any other party for any purpose other than voting on the Plan.

2.     Each holder of an Indirect Abuse Claim, which includes, without limitation, any Abuse Claim for contribution, indemnity, reimbursement, or subrogation, who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant, or as otherwise ordered by the Bankruptcy Court. The temporary allowance of Indirect Abuse Claims in the amount of $1.00 is solely for voting purposes, and shall not be binding upon the holder, the Debtors, the Settlement Trust or any other party for any purpose other than voting on the Plan.

F.     **Receipt of Multiple Ballots for a Single Direct Abuse Claim.**

1.     If notwithstanding their reasonable efforts to ensure that only one Solicitation Package (including one Ballot) is distributed on account of each holder of a Direct Abuse Claim who has filed duplicative Abuse Claims and/or on account of Abuse Claims that have been amended and superseded by later filed Abuse Claims, the Solicitation Agent receives more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim on or before the Voting Deadline, the effective vote shall be the last Ballot actually received by the Solicitation Agent before the Voting Deadline that satisfies the voting and tabulation procedures specified in **Section V**.

2.     To the extent the Debtors receive a Ballot from a holder of a Direct Abuse Claim entitled to vote and a Ballot from an attorney purporting to represent such holder (including in accordance with the procedures related to Master Ballots), the Ballot received from the holder of the Direct Abuse Claim entitled to vote shall be counted.

3.     To the extent the Debtors receive a Master Ballot from two different Firms on account of the same Direct Abuse Claim with conflicting votes on the Plan, the Debtors shall

---

[4]     For the avoidance of doubt, in the event of a conflict between this Section IV.E describing the calculation of votes for Direct and Indirect Abuse Claims and any other section of these Solicitation Procedures, including Section V.B, the terms of this Section IV.E shall control.

reach out to both Firms, with notice of such communication to counsel to the Tort Claimants' Committee and the Coalition, and request written documentation of each Firm's representation of such claimant. If representation of the holder of the Direct Abuse Claim is not resolved within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted.

4. Other than with respect to the submission of conflicting Master Ballots by different Firms, if inconsistent votes are otherwise received by the Solicitation Agent on the same day for a single Direct Abuse Claim, such votes shall not be counted.

## V. VOTING AND TABULATION PROCEDURES

### A. Holders of Claims Entitled to Vote.

Only the following holders of Claims in the Voting Classes shall be entitled to vote with respect to such Claims (in addition to the special procedures set forth in **Section IV** above for holders of Direct and Indirect Abuse Claims):

1. Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim that (a) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date, and (b) is not the subject of a pending objection, other than a "reclassify" or "reduce and allow" objection, filed with the Bankruptcy Court on or before the Solicitation Date, pending the occurrence of a Resolution Event as provided herein; *provided that* a holder of a Claim that is the subject of a pending objection on a "reclassify" or "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reclassified priority or reduced amount contained in such objection absent a further order of the Court;

2. Holders of Claims that are listed on the Debtors' Schedules; *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent or unliquidated Claims that have been paid or superseded by a timely filed Proof of Claim) shall be allowed to vote only in the amounts set forth in **Sections IV.D** and **V.B** of these Solicitation Procedures;

3. Holders of Claims whose Claims arise (a) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Bankruptcy Court, (b) in an order entered by the Bankruptcy Court, or (c) in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court, in each case regardless of whether a Proof of Claim has been filed;

4. Holders of any Disputed Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018 in accordance with **Section III.C.4** above; and

5. The assignee of any Claim (other than an Abuse Claim) that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (1) through (4) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register as of the Voting Record Date.

**B.     Establishing Claim Amounts for Voting Purposes.**

1.     If a Proof of Claim has been amended, the last-filed Proof of Claim as of the Voting Record Date shall be subject to these Solicitation Procedures and shall supersede any earlier filed Proof of Claim for voting purposes.  Any earlier-filed Proof of Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such earlier filed Claim.

2.     Duplicate Claims within the same Voting Class shall be deemed temporarily allowed for voting purposes only in an amount equal to one such Claim and not in an amount equal to the aggregate of such Claims.

3.     Claims filed for $0.00 are not entitled to vote on the Plan, excluding the holders of Direct Abuse Claims and Indirect Abuse Claims.  Each holder of a Direct Abuse Claim and Indirect Abuse Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant Court pursuant to <u>Section IV.E</u> or as otherwise ordered by the Bankruptcy Court.

4.     Proofs of Claim that assert Claims in more than one Voting Class may be split into multiple Voting Classes for voting purposes.

5.     *Class 3A 2010 Credit Facility and Class 3B 2019 RCF Claims.*  The Claim amount of Class 3A and 3B Claims shall be established based on the amount of the applicable positions held by holders of Class 3A and Class 3B Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

6.     *Class 4A 2010 Bond Claims and Class 4B 2012 Bond Claims.*  The Claim amount of Class 4A and 4B Claims shall be established based on the amount of the applicable positions held by holders of Class 4A and Class 4B Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

7.     *Class 5 Convenience Claims.*  The Claim amount of Class 5 Claims shall be established based on the amount of the applicable positions held by holders of Class 5 Claims as of the Voting Record Date, as evidenced by the claims register maintained in these Chapter 11 Cases.  With respect to holders of General Unsecured Claims in excess of $50,000 as of the Voting Record Date as evidenced by the claims register, if such Claim is Allowed and such holder elects on its Ballot to join Class 5 and reduce such Claim to $50,000, the Claim amount shall be set at $50,000.

8.     *Class 6 General Unsecured Claims*.  The Claim amount of Class 6 Claims shall be established based on the amount of the applicable positions held by holders of Class 6 Claims as of the Voting Record Date, as evidenced by (a) the Debtors' applicable books and records and (b) the claims register maintained in these Chapter 11 Cases.

9.     *Class 7 Non-Abuse Litigation Claims*.  The Claim amount of Class 7 Claims shall be established based on the amount of the applicable positions held by holders of Class 7

Claims as of the Voting Record Date, as evidenced by the claims register maintained in these Chapter 11 Cases. For the avoidance of doubt, all Non-Abuse Litigation Claims in Class 7, including any Insured Non-Abuse Claim, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as a contingent and unliquidated Claim in accordance with this <u>Section V.B</u> and shall have a single vote in the amount, for voting purposes only, of $1.00 in aggregate per claimant, unless otherwise ordered by the Bankruptcy Court. Such temporary allowance is solely for voting purposes, and will not be binding on the holder, the Debtors, or any other party for any purpose other than voting on the Plan.

        10. *Claim Amounts for Voting Purposes*. The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim under the terms of the Plan. Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution. In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

        a.      the Claim amount (i) settled or agreed upon by the Debtors, as memorialized in a document filed with the Bankruptcy Court, (ii) set forth in an order of the Bankruptcy Court or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Bankruptcy Court;

        b.      if subsection (a) does not apply, the Claim amount allowed (temporarily or otherwise) pursuant to a Resolution Event under **Section III.C** of these Solicitation Procedures;

        c.      if none of subsections (a)–(b) apply, the Claim amount asserted in a Proof of Claim that has been timely filed (or deemed timely filed by the Bankruptcy Court under applicable law), except for any amounts that have been paid or asserted on account of any interest accrued after the Petition Date; *provided*, *that*, any Ballot submitted by a holder of a Claim who timely filed a Proof of Claim in respect of (i) a contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount (based on a reasonable review by the Debtors) that is not the subject of an objection shall count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and shall count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of voting and satisfying the dollar amount requirement of section 1126(c) of the Bankruptcy Code, and (ii) with respect to a non-contingent, partially liquidated and partially unliquidated Claim, such Claim shall be allowed for voting purposes only in the liquidated amount;

        d.      if none of subsections (a)–(c) apply, the Claim amount listed in the Schedules (to the extent such Claim has <u>not</u> been superseded by a

timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and has not been paid; *provided*, *further*, that a Claim that is listed in the Schedules as contingent, unliquidated, or disputed and for which a Proof of Claim was not (i) filed by the applicable Bar Date or (ii) deemed timely filed by an order of the Bankruptcy Court prior to the Voting Deadline is not entitled to vote; and

e.    if none of subsections (a)–(d) apply, such Claim shall count as a Ballot for a Claim in the amount of $0.00 solely for the purposes of voting.

11.    *Stipulation.* The Debtors are authorized to enter into stipulations or other agreements with the holder of any Claim agreeing to the amount of a Claim for voting purposes, and will provide notice and an opportunity for a hearing on any such stipulation.

**C.    Convenience Claim Election.**

For solicitation and tabulation purposes, one Ballot will be provided to each holder of a General Unsecured Claim. Holders of Claims that would otherwise be treated as a General Unsecured Claim in an amount of $50,000 or less, if Allowed under the Plan, shall have their Claims treated as a Class 5 Convenience Claim; holders of General Unsecured Claims greater than $50,000, shall have the right, but not the obligation, to irrevocably elect to have such Claim irrevocably reduced to $50,000 and treated as a Class 5 Convenience Claim (upon Allowance), in full and final satisfaction of such Claim, if elected on a properly and timely completed and delivered Ballot.

Any General Unsecured Claim in excess of $50,000 may not be subdivided into multiple Convenience Claims for purposes of receiving treatment as a Convenience Claim. If a holder of a General Unsecured Claim in the amount of $50,000 or less is deemed to join Class 5 (Convenience Claims) or an eligible holder of a General Unsecured Claim that is greater than $50,000 makes the voluntary election to join Class 5 (Convenience Claims), then its Claim shall, upon its allowance for voting purposes only, be counted only in such Class and shall not be tabulated as a Claim in Class 6 (General Unsecured Claims). For the avoidance of doubt, the vote of a holder of a General Unsecured Claim that is greater than $50,000 who elects to have such Claim treated as a Class 5 Convenience Claim (upon Allowance) will be counted as a vote on the Plan in Class 5.

**D.    Voting and Ballot Tabulation Procedures.**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, along with the procedures described in the Ballots, subject to the Debtors' right to waive any of the below specified requirements (in the Debtors' sole discretion and without further order

from or notice to the Bankruptcy Court) for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules or Local Rules.[5]

1.      The Solicitation Agent shall date-stamp all Ballots when received. Ballots received on the day of the Voting Deadline shall be date and time-stamped. In addition, the Solicitation Agent shall retain originals of all Ballots for a period of two years after the Effective Date of the Plan, unless otherwise ordered by the Bankruptcy Court.

2.      Except as otherwise provided in these Solicitation Procedures, unless a Ballot is received by the Solicitation Agent on or prior to the Voting Deadline (as the same may be extended by the Debtors upon notice to parties in interest as set forth below), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan.

3.      If a Claim has been estimated for voting purposes in accordance with **Section III.C.4** above or otherwise allowed for voting purposes by order of the Bankruptcy Court, such Claim is temporarily allowed for voting purposes in the amount so estimated or allowed in such order.

4.      For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a Voting Class shall be aggregated as if such creditor held one Claim in the Voting Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan.

5.      The Debtors shall make reasonable efforts to provide any holder of a Claim who has filed or purchased duplicate Claims within the same Class with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims; *provided* that if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim, the effective vote shall also be determined in accordance with **Section IV.F** above. If the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Claim, the effective vote shall be the Ballot last received by the Solicitation Agent that satisfies the voting and tabulation procedures specified in this **Section V.D**. If more than one Ballot voting the same Claim is received prior to the Voting Deadline, the latest received, properly executed Ballot received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

6.      If the holder of a Claim submits inconsistent Ballots received by the Solicitation Agent on the same day other than as set forth in **Section IV.F** with respect to Direct Abuse Claims, such Ballots shall not be counted.

7.      Delivery of a defective or irregular Ballot shall not be deemed to have been made until such defect or irregularity has been cured or waived by the Debtors upon notice to

---

[5]     The summary provided herein is for illustrative purposes only and is subject to the procedures described in the Ballots in all respects. In the event of any inconsistency between the summary of voting and tabulation procedures as set forth herein and the Ballots, the Ballots will control.

parties in interest. Any waiver by the Debtors of defects or irregularities in any Ballot shall be detailed in the Voting Report filed by the Solicitation Agent.

8. After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors upon notice to parties in interest. Any such withdrawal or modification shall be detailed in the Voting Report filed by the Solicitation Agent.

9. The holder of a Claim must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot.

10. The holder of a Claim must vote all of its Claims either to accept or reject the Plan. Accordingly, a Ballot (other than a Master Ballot) that partially rejects and partially accepts the Plan may not be counted. Except with respect to delivery of a Master Ballot pursuant to the procedures set forth in **Section IV**, to the extent possible, the Debtors shall distribute to each holder of a Claim in the Voting Classes a single Ballot on account of the Claim held by such holder in the Voting Classes.

11. The Debtors expressly reserve the right to amend the terms of the Plan (subject to compliance with section 1127 of the Bankruptcy Code). If the Debtors make material changes to the terms of the Plan, the Debtors shall disseminate additional solicitation materials and extend the solicitation period, in each case to the extent required by law or further order of the Bankruptcy Court.

12. If the party executing the Ballot is signing as a trustee, executor, guardian, attorney-in-fact, officer of a corporation, or acting in a fiduciary or representative capacity, such party must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must provide evidence satisfactory to the requesting party to act on behalf of the holder of the Claim.

13. Subject to any contrary order of the Bankruptcy Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot, upon notice to parties in interest. Any such waiver shall be detailed in the Voting Report filed by the Solicitation Agent.

14. Neither the Debtors, nor any other person or entity, shall be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots except as provided herein nor shall any of them incur any liabilities for failure to provide such notification.

15. The Solicitation Agent, in its discretion, may contact entities entitled to vote to cure any defects in the Ballot; *provided*, *however*, that the Solicitation Agent is not obligated to do so.

16. Subject to entry of the Confirmation Order providing for such relief, if no Ballot is submitted in a Class, then such Class shall be deemed to have voted to accept the Plan.

17. A voter may withdraw a valid Ballot by delivering a written notice of withdrawal to the Solicitation Agent before the Voting Deadline – the withdrawal must be signed

by the party who signed the Ballot. Any such withdrawal shall be detailed in the Voting Report filed by the Solicitation Agent. The Debtors reserve the right to contest any withdrawals.

18.     If multiple Ballots are timely received from or on behalf of a holder of a single Claim other than a Direct Abuse Claim (including an Indirect Abuse Claim), the effective vote shall be the last properly executed Ballot timely received by the Solicitation Agent that satisfies the voting and tabulation procedures specified in this **Section V.D** and shall supersede and revoke any prior Ballot received, *provided* that if such holder submits inconsistent Ballots received by the Solicitation Agent on the same day, such Ballots shall not be counted; *provided* that if the Debtors timely receive more than one Ballot from or on behalf of the holder of a single Direct Abuse Claim, the effective vote shall be determined in accordance with **Section IV.F** above.

19.     If multiple Ballots are received directly from the holder of a Claim <u>and</u> from a purported attorney or agent for such holder prior to the Voting Deadline, the Ballot received directly from the holder shall be the Ballot that is counted. For the avoidance of doubt, any Ballot received directly from the holder of a Direct Abuse Claim shall supersede any Master Ballot returned on account of a Direct Abuse Claim and shall be the vote that is counted, in accordance with the procedures set forth in **Section IV**.

20.     In addition, the following Ballots may not be counted in determining the acceptance or rejection of the Plan:

a.      any Ballot submitted by a person who does not hold, or represent a person that holds, a Claim in the applicable Voting Class as of the Voting Record Date;

b.      any Ballot received after the Voting Deadline unless the Debtors have granted an extension in writing (including e-mail) with respect to such Ballot. Any such extension shall be detailed in the Voting Report filed by the Solicitation Agent. The holder of a Claim may choose the method of delivery of its Ballot to the Solicitation Agent at its own risk. Delivery of the Ballot shall be deemed made only when the original properly executed Ballot is actually received by the Solicitation Agent;

c.      any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein (unless an exception has been granted by the Debtors, which shall be detailed in the Voting Report filed by the Solicitation Agent), provided that Ballots submitted through the E-Ballot Platform shall be counted;

d.      any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.      any Ballot that is submitted in an inappropriate form that is not the appropriate Ballot for such Claim;

f.      any Ballot sent to a person other than the Solicitation Agent;

g.    any Ballot that is unsigned; *provided*, *however*, for the avoidance of doubt, a Ballot submitted via the Solicitation Agent's E-Ballot Platform shall be deemed to contain an original signature;

h.    a Ballot without a vote on the Plan or on which the claimant has voted to both accept and reject the Plan; or

i.    a Ballot on which a holder of a Direct Abuse Claim or such holder's representative has voted to both reject the Plan and make the Expedited Distribution election.

21.    In addition, the following Master Ballots may not be counted in determining the acceptance or rejection of the Plan:

a.    a Master Ballot on which the attorney fails to make the required certifications; or

b.    a Master Ballot that fails to include the required Exhibit.

## VI.    AMENDMENTS TO THE PLAN AND SOLICITATION PROCEDURES

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, the Solicitation Procedures Order, the Plan, the Ballots, the Confirmation Hearing Notice, and related documents without further order of the Bankruptcy Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

*    *    *    *    *

**Exhibit 2-1**

**Form of Ballot for Classes 3A and 3B**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## BALLOT FOR CLASS 3A (2010 CREDIT FACILITY CLAIMS)
## AND CLASS 3B (2019 RCF CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 3A Claims (2010 Credit Facility Claims) and Class 3B Claims (2019 RCF Claims) on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 3A and/or Class 3B against the Debtors as of the Voting Record Date. **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases contained in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment**

**of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1. Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a Class 3A or Class 3B Claim against the Debtors in the aggregate following unpaid principal amount, without regard to any accrued but unpaid interest:

**Class:** _____

**Debtor:** _____

**Claim(s) Amount:** $_____

**Item 2. Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim in Class 3A or Class 3B below (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

---

**Check only one box:**

| | |
|---|---|
| ☐ | **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan |
| ☐ | **REJECT (*I.E.*, VOTE AGAINST)** the Plan |

**Item 3.  Optional Release Election.**

Unless a holder of a Class 3A or 3B Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>Article X.J.4 of the Plan—Releases by Holders of Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part,

---

[2]  "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to Article IV.D.3 of the Plan) and (ii) nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

<div style="border:1px solid black; padding:10px;">

The undersigned, as a holder of (or representative of a holder of) a Class 3A or 3B Claim, elects to:

☐     **Opt out of the third party release in Article X.J.4 of the Plan.**

</div>

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce**

the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

       **Releases by the Debtors and the Estates of Certain Avoidance Actions.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases**. As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

---

[4]    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals..

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.** **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Class 3A or 3B Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 3A or 3B Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for its Class 3A or 3B Claims, or if it has submitted any other Ballots with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity either as a holder of a Class 3A Claim or as a holder of a Class 3A Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)  all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as**

applicable.  **You are highly encouraged to submit your Ballot via the E-Ballot Platform.  If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot.  Please choose only one method for returning your Ballot.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| **https://omniagentsolutions.com/bsa-ballots** | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  [_____]**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots.  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Class 3A or 3B Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

## <u>INSTRUCTIONS FOR COMPLETING YOUR BALLOT</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

**1.      Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

> **IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:
>
> **Unique E-Ballot ID#**: [_____]

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

> Boy Scouts of America Ballot Processing
> c/o Omni Agent Solutions
> 5955 De Soto Avenue, Suite 100
> Woodland Hills, CA 91367

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.      To fill out your Ballot, you must complete the following:**

a.      **<u>Item 1 (Amount of the Claim)</u>**. Make sure that the information contained in Item 1 regarding the principal amount of your Claim you held on the Voting Record Date is correct. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation**

Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.

b. **Item 2 (Vote on the Plan).** Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c. If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

d. **Item 3 (Releases).** Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.4 of the Plan and provided above. Holders of Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 3A OR 3B CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN **ARTICLE X.J.4** OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.

e. **Item 4 (Certifications, Acknowledgement, Signature, and Date).** Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will not be counted.

f. Claimants with Social Security Numbers must provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g. The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h. By signing the Ballot, you make the following certifications on information and belief:

(i) I have the power and authority to vote to accept or reject the Plan,

(ii)     I was the holder (or am entitled to vote on behalf of such holder) of the Class 3A or 3B Claim described in Item 1 as of the Voting Record Date,

(iii)    I have not submitted any other Ballots for other Class 3A or Class 3B Claims, or if I have submitted any other Ballots with respect to such Claims(s), then any such Ballots dated earlier are hereby revoked,

(iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim either as a holder of a Class 3A Claim or as a holder of a Class 3B Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

3.     **Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.     If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

        d.      To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

        e.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

        f.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

---

## Exhibit 2-2

## Form of Ballot for Classes 4A and 4B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## BALLOT FOR CLASS 4A (2010 BOND CLAIMS)
## AND CLASS 4B (2012 BOND CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

> **"OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the ''Debtors") are soliciting votes from holders of Class 4A Claims (2010 Bond Claims) and Class 4B Claims (2012 Bond Claims) on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Claim in Class 4A Claim and/or Class 4B against the Debtors as of the Voting Record Date. **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases contained in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a Class 4A or Class 4B Claim against the Debtors in the aggregate following unpaid principal amount, without regard to any accrued but unpaid interest:

**Class:** _____

**Debtor:** _____

**Claim(s) Amount:** $_____

**Item 2.  Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim in Class 4A or Class 4B below (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

---

**Check _only_ one box:**

☐  **ACCEPT (_I.E._, VOTE IN FAVOR OF)** the Plan

---

| ☐     **REJECT (*I.E.*, VOTE AGAINST)** the Plan |
| --- |

**Item 3. Optional Release Election.**

Unless a holder of a Class 4A or 4B Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>Article X.J.4 of the Plan—Releases by Holders of Claims</u>.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related

---

[2] "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3] "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided**, **however**, that the releases set forth in **Article X.J.4** of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP (**"Sidley"**) related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 4A Claim or 4B Claim, elects to:

☐ **Opt out of the third party release in Article X.J.4 of the Plan.**

---

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the**

Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

        <u>Releases by the Debtors and the Estates of Certain Avoidance Actions.</u>  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

<u>Exculpation.</u>

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely,

---

[4] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; provided, however, that the injunctions set forth in <u>Article X.L.2</u> of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article X.K</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

<u>Item 4</u>. **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Class 4A or Class 4B Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)     it was the holder (or is entitled to vote on behalf of such holder) of the Class 4A Claim or Class 4B Claim described in Item 1 as of the Voting Record Date,

(iii)     it has not submitted any other Ballots for other Class 4A Claim or Class 4B Claims, or if it has submitted any other Ballots with respect to such Claim(s), then any such Ballots dated earlier are hereby revoked,

(iv)     it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity either as a holder of a Class 4A Claim or as a holder of a Class 4B Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)     it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees,

successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | Boy Scouts of America Ballot Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367 |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#: [_____]

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots. THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

Any admission of Class 4A Claims or Class 4B Claims for purposes of voting on the Plan is not an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

1. **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. **To fill out your Ballot, you must complete the following:**

a. **Item 1 (Amount of the Claim).** Make sure that the information contained in Item 1 regarding the principal amount of your Claim you held on the Voting Record Date is correct. **Please note that, except as otherwise set forth in the Disclosure Statement and**

**Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

        b.      **Item 2 (Vote on the Plan).**  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

        c.      If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

        d.      **Item 3 (Releases).**  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  Holders of Claims that vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

<div style="border:1px solid black; padding:8px;">

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 4A CLAIM OR CLASS 4B CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

</div>

        e.      **Item 4 (Certifications, Acknowledgement, Signature, and Date).**  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot.  If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

        f.      Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

        g.      The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

        h.      By signing the Ballot, you make the following certifications on information and belief:

        (i)      I have the power and authority to vote to accept or reject the Plan,

(ii)     I was the holder (or am entitled to vote on behalf of such holder) of the Class 4A or 4B Claim described in Item 1 as of the Voting Record Date,

(iii)    I have not submitted any other Ballots for other Class 4A or Class 4B Claims, or if I have submitted any other Ballots with respect to such Claims(s), then any such Ballots dated earlier are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim either as a holder of a Class 4A Claim or as a holder of a Class 4B Claim,

(v)      I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

3.    **Other Instructions for Completing the Ballots:**

a.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d. To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such claim.

e. In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

f. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

# Exhibit 2-3

## Form of Ballot for Class 6 General Unsecured Claims

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## BALLOT FOR CLASS 5 (CONVENIENCE CLAIMS)
## AND CLASS 6 (GENERAL UNSECURED CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 6 Claims (General Unsecured Claims), or, if your Claim is Allowed in an amount of $50,000 or less or you otherwise elect herein, holders of Class 5 Convenience Claims, on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a General Unsecured Claim in Class 6 against the Debtors as of the Voting Record Date. **Accordingly, you have a right to vote to accept or reject the Plan. However, because you are a holder of a General Unsecured Claim, you may be entitled to make an election in this Ballot at Item 1 to be treated as a holder of a Class 5 Convenience Claim and to receive a distribution under the Plan as a holder of a Class 5 Claim.** If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote. However, if you are deemed to or elect to be treated as a holder of a Class 5 Claim, your vote on account of your General Unsecured Claim will only be counted as a Class 5 Claim and not as a Class 6 Claim, and you will not receive any distribution reserved for Class 6 Claims.

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not

2

you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot.  For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

      **You should carefully review the Plan and Disclosure Statement before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 5. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>**Item 1**</u>. **Treatment or Election to Join Class 5 (Convenience Claims).**

Please note, if you make an election, you must still complete the remaining Items on this Ballot, including whether or not you accept or reject the Plan in Item 3.

**<u>Claims in the Amount of $50,000 or Less</u>:** Please take notice that if your Claim that would otherwise be a General Unsecured Claim is Allowed under the Plan in an amount of $50,000 or less, your Claim shall be treated as a Class 5 Convenience Claim.

**<u>Claims Greater than $50,000</u>:** Please take notice that if your Claim is Allowed under the Plan in an amount greater than $50,000, you have the right, but not the obligation, to irrevocably elect to have your Claim irrevocably reduced to $50,000 and treated as a Class 5 Convenience Claim (upon Allowance), in full and final satisfaction of your Claim, if elected on a timely and properly delivered and completed Ballot.

Any General Unsecured Claim in excess of $50,000 may not be subdivided into multiple Convenience Claims for purposes of receiving treatment as a Convenience Claim.

If your Claim is Allowed and is in the amount of $50,000 or less or if your Claim is Allowed in an amount greater than $50,000 and you choose to join Class 5 and reduce your Claim to $50,000, you will receive, with respect to your Allowed Claim, on the Effective Date or within thirty (30) days following the date that such Convenience Claim becomes Allowed, Cash in an amount equal to 100% of such holder's Allowed Convenience Class Claim.



**The holder of an Allowed General Unsecured Claim that is greater than $50,000 in Class 6 set forth in Item 2 ELECTS to:**

☐ **Join Class 5 (Convenience Claims) and receive treatment as a holder of a Claim in Class 5 only, and disclaim any right to receive a distribution as a holder of a Claim in Class 6**.

<u>**Item 2**</u>. **Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a General Unsecured Claim in the following aggregate unpaid principal amount, without regard to any accrued but unpaid interest:

```
┌─────────────────────────────────────────────────────────┐
│  **Debtor**:  _____  │
│                                                           │
│  **Claim Amount**:  $ _____    │
└─────────────────────────────────────────────────────────┘
```

**Item 3**.  **Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim set forth in Item 2 (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in Article X.J.4 of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in Article X.J.4 of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article X of the Plan.

```
┌─────────────────────────────────────────────────────────┐
│       **Check __only__ one box**:                         │
│                                                           │
│              ☐    **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan │
│                                                           │
│              ☐    **REJECT (*I.E.*, VOTE AGAINST)** the Plan │
└─────────────────────────────────────────────────────────┘
```

**Item 4**.  **Optional Release Election.**

**Unless a holder of a Class 5 or Class 6 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in Article X.J.4 of the Plan, which provides as follows:**

**Article X.J.4 of the Plan—Releases by Holders of Claims.**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the**

---

[2]  "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g)

**settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or**

the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J. of the Plan.

[3] "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with **Article III.B.9** of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to **Article IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

If you voted to accept or reject the Plan in Item 3 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 5 or Class 6 Claim, elects to:

☐ **Opt out of the third party release in Article X.J.4 of the Plan.**

---

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual

arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the

---

[4] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases**. As of the Effective Date, all holders of Claims that are the subject of <u>Article X.J</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; provided, however, that the injunctions set forth in <u>Article X.L.1</u> of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of <u>Article X.J</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation**. As of the Effective Date, all holders of Claims that are the subject of <u>Article X.K</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; provided, however, that the injunctions set forth in <u>Article X.L.2</u> of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article X.K</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 5. Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Claim set forth in Item 2 (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)    it has the power and authority to vote to accept or reject the Plan,

(ii)   it was the holder (or is entitled to vote on behalf of such holder) of the Class 5 or Class 6 Claim being voted described in Item 2 as of the Voting Record Date,

(iii)  it has not submitted any other Ballots for other Class 5 or Class 6 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)   it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity either as a holder of a Class 5 Claim or as a holder of a Class 6 Claim, as applicable,

(v)    it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)   it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 2, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)  all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |

| | |
|---|---|
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| **https://omniagentsolutions.com/bsa-ballots** | **Boy Scouts of America Ballot Processing c/o Omni Agent Solutions 5955 De Soto Avenue, Suite 100 Woodland Hills, CA 91367** |

**To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  [_____]**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 2 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

<u>**INSTRUCTIONS FOR COMPLETING YOUR BALLOT**</u>

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

1.    **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 2 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.    **To fill out your Ballot, you must complete the following:**

a.    <u>**Item 1 (Treatment or Election to join Class 5 (Convenience Claims)).**</u> As set forth above, if your Claim is Allowed and is in the amount of $50,000 or less or if your Claim is Allowed in an amount greater than $50,000 and you choose to join Class 5 and reduce

your Claim to $50,000, you are deemed to or entitled to make an election in this Ballot at Item 1 to be treated as a holder of a Class 5 Convenience Claim and to receive a distribution under the Plan as a holder of a Class 5 Claim. If you wish to make the Convenience Class election, please check the box on Item 1. You must make the Convenience Class election as to the entire amount of your Claim. Any Claim in excess of $50,000 may not be subdivided into multiple Convenience Claims for purposes of receiving treatment as a Convenience Claim. If you make this election, you must still complete the remaining Items on this Ballot, including whether or not you accept or reject the Plan in Item 3.

      b.    **Item 2 (Amount of the Claim).** Make sure that the information contained in Item 2 regarding the principal amount of your Claim you held on the Voting Record Date is correct. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

      c.    If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

      d.    **Item 3 (Vote on the Plan).** Cast one vote to accept or reject the Plan by checking the appropriate box in Item 3. You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

      e.    **Item 4 (Releases).** Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above. Holders of Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 4.

> **IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 5 OR CLASS 6 CLAIM, AS APPLICABLE, UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 4 TO OPT OUT OF THE RELEASES.**

      f.    **Item 5 (Certifications, Acknowledgement, Signature, and Date).** Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

      g.    Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 5 of the Ballot.

h.     The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

i.     By signing the Ballot, you make the following certifications on information and belief:

(i)     I have the power and authority to vote to accept or reject the Plan,

(ii)     I was the holder (or am entitled to vote on behalf of such holder) of the Class 5 or Class 6 Claim described in Item 2 as of the Voting Record Date,

(iii)     I have not submitted any other Ballots for other Class 5 or Class 6 Claims, or, if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim either as a holder of a Class 5 Claim or as a holder of a Class 6 Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 2, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

3.     **Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.       The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.       If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.       To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

e.       In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

f.       There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

<u>**Exhibit 2-4**</u>

**Form of Ballot for Class 7 Non-Abuse Litigation Claims**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

### BALLOT FOR CLASS 7 (NON-ABUSE LITIGATION CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**<u>ACCESS TO SOLICITATION MATERIALS</u>:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "<u>SOLICITATION AGENT</u>") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "<u>VOTING DEADLINE</u>").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN <u>ARTICLE X.J.4</u> OF THE PLAN UNLESS YOU**

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the ''Debtors") are soliciting votes from holders of Class 7 Non-Abuse Litigation Claims on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

You are receiving this Ballot because you are a holder of a Non-Abuse Litigation Claim in Class 7 against the Debtors as of the Voting Record Date. **Accordingly, you have a right to vote to accept or reject the Plan.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Plan and Disclosure Statement before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. If you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>**Item 1**</u>.  **Amount of Your Claim.**

For purposes of voting to accept or reject the Plan, the undersigned hereby certifies that as the Voting Record Date, the undersigned was the holder (or authorized signatory of such holder) of a Non-Abuse Litigation Claim in the following aggregate unpaid principal amount, without regard to any accrued but unpaid interest:

> **Debtor**:  _____
>
> **Claim Amount**:  $_____

<u>**Item 2**</u>.  **Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claim in Class 7 below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in <u>Article X.J.4</u> of the Plan unless you opt out of the release by checking the box in Item 3 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.4</u> of the Plan.  The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

> **Check <u>only</u> one box**:
>
> ☐　　**ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan
>
> ☐　　**REJECT (*I.E.*, VOTE AGAINST)** the Plan

<u>Item 3</u>.  **Optional Release Election.**

Unless a holder of a Class 7 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

**<u>Article X.J.4 of the Plan—Releases by Holders of Claims</u>.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the

---

[2]  "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; <u>provided</u>, <u>however</u>, that the releases set forth in <u>Article X.J.4</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> of the Plan.  Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan  shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to <u>Article IV.D.3</u> of the Plan) and (ii) nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("<u>Sidley</u>") related to Sidley's representation of the Debtors prior to the Petition Date.**

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

<table>
<tr><td>The undersigned, as a holder of (or representative of a holder of) a Class 7 Claim, elects to:<br><br>☐   **Opt out of the third party release in <u>Article X.J.4</u> of the Plan.**</td></tr>
</table>

**<u>Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan</u>**

**<u>Releases by the Debtors and the Estates</u>.**

**<u>Releases by the Debtors and the Estates of the Released Parties</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement,**

and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

Releases by the Debtors and the Estates of Certain Avoidance Actions. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

Exculpation.

From and after the Effective Date, none of the Exculpated Parties[4] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, JPM/Creditors' Committee Settlement, the the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely,

---

[4] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4.** **Certifications, Acknowledgment, Signature and Date.**

By signing this Ballot, the holder of the Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)     it has the power and authority to vote to accept or reject the Plan,

(ii)    it was the holder (or is entitled to vote on behalf of such holder) of the Class 7 Non-Abuse Litigation Claim described in Item 1 as of the Voting Record Date,

(iii)   it has not submitted any other Ballots for other Class 7 Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)    it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 7 Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)    it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and

legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

**Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-ballots | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

 

**To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  [_____]**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots.  **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

# INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

**1.      Use of Online Ballot Portal – If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

---

**IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#**: [_____]

---

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

---

Boy Scouts of America Ballot Processing
c/o Omni Agent Solutions
5955 De Soto Avenue, Suite 100
Woodland Hills, CA 91367

---

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2.      To fill out your Ballot, you must complete the following:**

a.      **Item 1 (Amount of the Claim). Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each contingent Claim, whether liquidated or unliquidated, or a Claim in a wholly-unliquidated, unknown or**

undetermined amount that is not the subject of an objection, will be allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose. For the avoidance of doubt, all Non-Abuse Litigation Claims in Class 7, including any Insured Non-Abuse Claim, which have not been fixed pursuant to a judgment or settlement entered prior to the Voting Record Date, shall be classified as a contingent and unliquidated Claim as set forth above.  Such temporary allowance is only for voting purposes, and shall not be binding on the holder, the Debtors, or any other party for distribution under the Plan or any purpose other than voting on the Plan.

      b.      **Item 2 (Vote on the Plan).**  Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2.  You must vote the entire amount of your Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

      c.      If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

      d.      **Item 3 (Releases).**  Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  Holders of Claims that vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A CLASS 7 NON-ABUSE LITIGATION CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

---

      e.      **Item 4 (Certifications, Acknowledgement, Signature, and Date).**  Either the claimant, the claimant's personal representative, or the claimant's attorney <u>must</u> sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will <u>not</u> be counted.

      f.      Claimants with Social Security Numbers <u>must</u> provide the last four digits of their Social Security Number in Item 4 of the Ballot.

      g.      The claimant, the claimant's personal representative, or the claimant's attorney must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

      h.      By signing the Ballot, you make the following certifications on information and belief:

(i)       I have the power and authority to vote to accept or reject the Plan,

(ii)      I was the holder (or am entitled to vote on behalf of such holder) of the Class 7 Non-Abuse Litigation Claim described in Item 1 as of the Voting Record Date,

(iii)    I have not submitted any other Ballots for other Class 7 Claims, or, if I have submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier are hereby revoked,

(iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 7 Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.    Other Instructions for Completing the Ballots:**

a.    The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.      To the extent you have received two (2) or more duplicative Ballots on account of the same Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

e.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

f.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

## Exhibit 2-5

## Form of Master Ballot for Class 8 Direct Abuse Claims

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## CLASS 8 DIRECT ABUSE CLAIM MASTER BALLOT

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-SABALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE <u>ACTUALLY</u> <u>RECEIVED</u> BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "<u>VOTING DEADLINE</u>").**

**IF YOUR ABUSE SURVIVOR CLIENTS (AS DEFINED BELOW) VOTE TO ACCEPT OR REJECT THE PLAN, THEY WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN <u>ARTICLE X.J.4</u> OF THE PLAN UNLESS YOUR ABUSE SURVIVOR CLIENTS "OPT OUT" OF THE RELEASES. YOUR CLIENTS MAY "OPT OUT" OF SUCH**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

> RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" WITH RESPECT TO
> EACH CLIENT IN YOUR EXHIBIT TO THE MASTER BALLOT.

Pursuant to this master ballot (this "Master Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 8 Direct Abuse Claims on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies. If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction. This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots. **This list only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party, as applicable, under the Plan.**

You are receiving this Master Ballot because you represent certain clients (collectively, your "Abuse Survivor Clients") that have asserted Claims against the Debtors that arise from Abuse[2] that occurred prior to the Petition Date (as defined in the Plan, a "Direct Abuse Claim"),

---

[2] "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity

and you previously certified to the Solicitation Agent in an Abuse Survivor Plan Solicitation Directive that (a) your firm (each, a "Firm") shall collect and record the votes of your Abuse Survivor Clients through customary and accepted practices, or that it has obtained authority to cast each of its Abuse Survivor Clients' votes to accept or reject the Plan (subject in each case to the requirements that your Firm comply with the voting procedures set forth in the procedures for soliciting, receiving, and tabulating votes on the Plan approved by the Bankruptcy Court (the "Solicitation Procedures") and that each Abuse Survivor Client shall have indicated to your Firm his or her informed decision on such vote), or (b) your Firm has the authority under applicable law to vote to accept or reject the Plan on behalf of your Abuse Survivor Clients (a valid power of attorney or other written documentation may be requested by the Debtors, in their discretion). **To use this Master Ballot, you must meet all applicable standards to receive informed consent from your Abuse Survivor Clients**. In addition, you must provide the Disclosure Statement, in hard copy, flash drive, or electronic format, to your Abuse Survivor Clients.

---

**IMPORTANT INFORMATION REGARDING THE ELECTION TO RECEIVE AN EXPEDITED DISTRIBUTION OF $3,500.00:**

---

**Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect on the Exhibit to this Master Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.**

The Settlement Trust shall make the Expedited Distributions on one or more dates occurring on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee. **This election must be made on a properly and timely completed and delivered Master Ballot in accordance with the instructions set forth herein, and shall only be effective if the Plan is confirmed and the Effective Date occurs.**

The rights of holders of Direct Abuse Claims in Class 8 are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Master Ballot in error, or if you believe that you have received the wrong Master Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

---

involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on your Abuse Survivor Clients whether or not you vote or if you vote to reject the Plan.** To have your clients' votes counted, you must complete, sign, and return this Master Ballot and the Exhibit provided to you with the Master Ballot to the Solicitation Agent by the Voting Deadline.

If your Abuse Survivor Clients vote to accept or reject the Plan, they will deemed to provide the releases in **Article X.J.4** of Plan and as set forth below unless they opt out of such releases. You may make the selection on your Exhibit to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on your Abuse Survivor Clients whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Master Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of your Abuse Survivor Clients may be affected thereunder.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS
BEFORE COMPLETING THIS MASTER BALLOT AND EXHIBIT.**

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF
THE INFORMATION REQUESTED UNDER ITEM 3. IF THIS MASTER BALLOT HAS
NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT
BE VALID OR COUNTED AS HAVING BEEN CAST.

**<u>Item 1</u>.  Voting Summary.**

Please note that each holder of a Direct Abuse Claim who votes must vote the entire amount
of his or her claim to accept or reject the Plan.  Any holder of a Direct Abuse Claim who attempts
partially to reject and partially to accept the Plan will not have their vote counted.  If this Master
Ballot is signed and timely received by the Solicitation Agent, but does not designate either
acceptance or rejection or designates both acceptance and rejection of the Plan for any particular
Direct Abuse Claim, such vote will not be counted either as an acceptance or rejection of the Plan.
After you complete the voting summary below, you must complete the Exhibit accompanying this
Master Ballot and discussed in Item 2 below for each of your Abuse Survivor Clients in order for
your clients' votes to be counted.



**Please mark only <u>one</u> of the boxes below:**

☐  All claimants listed on the Exhibit (as defined below) accompanying this Master Ballot
ACCEPT (vote in favor of) the Plan.

☐  All claimants listed on the Exhibit accompanying this Master Ballot REJECT (vote
against) the Plan.

☐  Some of the claimants listed on the Exhibit accompanying this Master Ballot ACCEPT
(vote in favor of) the Plan, while other claimants listed on the Exhibit accompanying this
Master Ballot REJECT (vote against) the Plan.

**<u>Item 2</u>.  Exhibit Listing Holders of Direct Abuse Claims Represented by Attorney for
Recording Votes on the Plan.**

You should have received with this Master Ballot an exhibit on a USB drive containing an
electronic client list in Excel format of each holder of a Direct Abuse Claim whom you represent
(the "<u>Exhibit</u>"), which list is formatted as follows below.  The Exhibit lists for each claimant:
(a) the last name of the claimant; (b) the first name of the claimant; (c) the last 4 digits of the Social
Security Number of the claimant (if the claimant does not have a Social Security Number, it will
not be listed); and (d) the claimant's date of birth.  Additionally, you must fill out for each claimant:
(e) whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan;
(f) whether the claimant elects to receive the Expedited Distribution, which is a one-time Cash
payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of
the criteria set forth in the Trust Distribution Procedures, only if the Plan is Confirmed and the
Effective Date occurs; and (g) if the claimant votes to accept or reject the Plan, whether the

claimant opts out of the releases contained in <u>Article X.J.4</u> of the Plan. The Exhibit will appear in the following format:

| Claimant's Last Name | Claimant's First Name | Claim Number | Claimant's SSN (last 4 digits) | Claimant's Date of Birth | Vote to ACCEPT / in Favor of OR Vote to REJECT / Against the Plan | Elects to Receive $3,500 Expedited Distribution | Opts Out of Release in <u>Article X.J.4</u> of Plan – Leave Blank if Not Opting Out |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

**Please note that you must use the Exhibit accompanying your Master Ballot to record the votes of your Abuse Survivors Clients, and you must submit the Exhibit together with the Master Ballot. If you do not complete the Exhibit provided to you with your Master Ballot and submit it together with your Master Ballot, your clients' votes may not be counted.**

**Please note the following regarding the releases contained in the Plan:**

(i)     Opting out of giving the releases in <u>Article X.J.4</u> of the Plan on behalf of any holder of a Direct Abuse Claim will not affect the distribution to be received by that holder under the Plan.

(ii)    If a holder of a Direct Abuse Claim votes to accept or to reject the Plan and wishes to opt out of giving the releases provided in <u>Article X.J.4</u> of the Plan, the opt out selection in the Exhibit must be made for such holder, and the completed Master Ballot returned to the Solicitation Agent so as to be received by the Voting Deadline.

(iii)   If the Plan becomes effective, holders of Direct Abuse Claims under the Plan who vote to accept or reject the Plan will be deemed to provide the releases contained in <u>Article X.J.4</u> of the Plan, unless the opt out has been selected for your Abuse Survivor Client.

<u>**Article X.J.4 of the Plan—Releases by Holders of Claims.**</u>

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the**

---

[3]   "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; <u>provided</u>, <u>however</u>, that the releases set forth in <u>Article X.J.4</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims

---

[4]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to <u>Article IV.D.3</u> of the Plan) and (ii) nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("<u>Sidley</u>") related to Sidley's representation of the Debtors prior to the Petition Date.

<u>Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations</u>.

a. In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations,[5] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties,[6] the Limited Protected Parties,[7] the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "<u>Settlement Parties</u>"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event,

---

[5]   "<u>Contributing Chartered Organizations</u>" means the current or former Chartered Organizations listed on <u>Exhibit D</u> to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with <u>Article IV.I</u> of the Plan. No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

[6]   "<u>Protected Parties</u>" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[7]   "<u>Limited Protected Parties</u>" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as <u>Exhibit K</u>.

or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

b.        In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan—Channeling Injunction**.

**Channeling Injunction**.

**Terms.**  To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in **Article X** of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[8] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any

---

[8]     "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party. On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

  c. commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

  d. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

  e. creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

  f. asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

  g. taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

**Reservations.** Notwithstanding anything to the contrary in **Article X.F** of the Plan, the Channeling Injunction shall not enjoin:

        a.      the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

        b.      the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

        c.      prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under **Article IV.I** of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

        d.      prior to the date that a Chartered Organization becomes a Limited Protected Party under **Article IV.J** of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

        e.      the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under **Article IV.I** of the Plan);

        f.      the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

        g.      the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

        h.      the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses

**Article X.J.1 of the Plan—Releases by the Debtors and the Estates.**

        **Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the

TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

## Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected

Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; **provided**, **however**, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with **Article III. B.10** or **Article III.B.11** of the Plan, as applicable.

**Article X.K of the Plan—Exculpation**.

From and after the Effective Date, none of the Exculpated Parties[9] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's

---

[9] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.L of the Plan—Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

<u>Item 3</u>. **Certifications and Acknowledgment**.

By signing this Master Ballot, the undersigned certifies, on information and belief, that the following statements are true and correct:

(i)     I have been provided with a copy of the Disclosure Statement, including the Plan and all other exhibits thereto, the Confirmation Hearing Notice, the Disclosure Statement, and the Solicitation Procedures Order;

(ii)    I certify that each of the claimants set forth on the accompanying Exhibit is represented by me and, through the execution and filing of this Master Ballot with the Solicitation Agent, (a) I have collected and recorded the votes of each of my Abuse Survivor Clients through customary and accepted practices (e.g., by email, telephone, or other standard communications), or I have obtained authority to cast votes to accept or reject the Plan for each of my Abuse Survivor Clients, or (b) I have the authority under applicable law to vote to accept or reject the Plan on behalf of each of my Abuse Survivor Clients, and I intend to exercise such authority (and if requested, I will provide a valid power of attorney or other written documentation to that effect);

(iii)   I have met all applicable standards to receive informed consent from each of my Abuse Survivor Clients with respect to each such client's vote, Expedited Distribution Election, and release election on this Master Ballot.

(iv)    Each of my Abuse Survivor Clients set forth on the Exhibit is a holder of a Class 8 Direct Abuse Claim as of the Voting Record Date.

(v)     I acknowledge that a vote to accept the Plan constitutes acceptance of the treatment of each Abuse Survivor Client as a holder of a Direct Abuse Claim.

(vi)    I understand that, if accepting the Plan on behalf of one of my Abuse Survivor Clients, my client agrees with the treatment provided for his or her Claim under the Plan.

(vii)   I have provided the Disclosure Statement, in hard copy, flash drive, or electronic format, to my Abuse Survivor Clients.

(viii)  I further acknowledge that the solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement, the Solicitation Procedures Order, and the Solicitation Procedures contained therein.

| | |
|---|---|
| Print or Type Name of Attorney: | _____ |
| Name of Law Firm: | _____ |
| Attorney Signature: | _____ |

| | |
|---|---|
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

**IF THIS MASTER BALLOT AND ACCOMPANYING EXHIBIT ARE NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

**Master Ballots (together with the Exhibit provided by the Solicitation Agent) must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-SAballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Master Ballot and Exhibit via the E-Ballot Platform. If you choose to submit your Master Ballot and Exhibit via the E-Ballot Platform, you should NOT submit a hard copy Master Ballot or Exhibit. Please choose only one method for returning your Master Ballot and Exhibit.**

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-SAballots | Boy Scouts of America Ballot Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue, Suite 100<br>Woodland Hills, CA 91367 |

**Exhibits may only be submitted in Excel format via the E-Ballot Platform or, if the Master Ballot is being mailed, by USB drive—they may not be printed out and submitted in hard copy format. Votes provided on any Exhibit submitted in a format other than the Excel Exhibit provided by the Solicitation Agent shall not be counted.**

**To submit your Master Ballot and Exhibit via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Master Ballot.**

The Solicitation Agent's E-Ballot Platform is the sole manner in which Master Ballots and Exhibits will be accepted via electronic or online transmission. Master Ballots and Exhibits submitted by facsimile, email or other means of electronic transmission will not be counted. Attorneys who submit a Master Ballot and Exhibit using the E-Ballot Platform should NOT also submit a paper Master Ballot and Exhibit.

If you have questions about this Master Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-SAballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Direct Abuse Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

# INSTRUCTIONS FOR COMPLETING YOUR MASTER BALLOT

To properly complete this Master Ballot, you must follow the procedures described below, which explain each of the items contained on your Master Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-SAballots.

1.      **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Master Ballots if properly completed through the E-Ballot Platform and submitted with your Exhibit, which must be completed and submitted in Excel format using the Exhibit accompanying your Master Ballot. You are highly encouraged to submit your Master Ballot and Exhibit via the E-Ballot Platform. To submit your Master Ballot and Exhibit via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Master Ballot.

The Solicitation Agent's E-Ballot Platform is the sole manner in which Master Ballots and Exhibits will be accepted via online or electronic submission. **Master Ballots and Exhibits submitted by facsimile, email or other means of electronic transmission will not be counted.** Firms that submit a Master Ballot and Exhibit using the E-Ballot Platform should NOT also submit a paper Master Ballot or paper Exhibit.

**Use of Hard Copy Master Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Master Ballot and your completed Exhibit in Excel format on a USB drive by mail using the pre-addressed envelope included in the Solicitation Package, or by hand delivery or overnight courier to:

| |
|---|
| Boy Scouts of America Ballot Processing |
| c/o Omni Agent Solutions |
| 5955 De Soto Avenue, Suite 100 |
| Woodland Hills, CA 91367 |

**The Solicitation Agent will tabulate all properly completed Master Ballots and Exhibits received on or before the Voting Deadline. Please submit your Master Ballot together with your Exhibit, and do not submit them separately.**

2.      **To fill out your Master Ballot, you must complete the following:**

a.      **Item 1 (Voting Summary).** Item 1 of the Master Ballot asks you to indicate how many holders of Direct Abuse Claims listed on the Exhibit accept or reject the Plan. If all of your Abuse Survivor Clients have authorized you to ACCEPT / vote in favor of the Plan, please check the box indicating the same. If all of your Abuse Survivor Clients have authorized you to REJECT / vote against the Plan, please check the box indicating the same. If some of your Abuse Survivor Clients have authorized you to ACCEPT / vote in favor of the Plan, while others have authorized you to REJECT / vote against the Plan, please check the box indicating the same, and in all instances be certain to specify on the Exhibit which clients have accepted the Plan and which

clients have rejected the Plan.  **Please note that the Solicitation Agent will review the Exhibit to collect and record the individual votes of each of your Abuse Survivor Clients regardless of your answer in Item 1, and you must submit the Exhibit in Excel format as provided to you with this Master Ballot in order for your clients' votes to be counted**.  In the event there is a discrepancy between your response to Item 1 and the individual votes of any of the Abuse Survivor Clients included in the Exhibit, the individual vote reflected on the Exhibit will govern and will supersede your response in Item 1.

> b.      **Item 2 (List of Holders of Direct Abuse Claims Represented by Attorney).**  Item 2 of the Master Ballot requires that you complete and submit the Exhibit to the Master Ballot in Excel format as provided to you on a USB drive accompanying your Master Ballot.  The Exhibit shall list, for each Abuse Survivor Client represented by your Firm and on whose behalf you are voting on the Plan:

> > (1)      the last name of the claimant;

> > (2)      the first name of the claimant;

> > (3)      the last 4 digits of the Social Security Number of the claimant (if the claimant does not have a Social Security Number, this field may be blank);

> > (4)      the claimant's date of birth;

You will not be able to modify these fields of the Exhibit.  Using the drop-down boxes, you will need to complete the following fields for each Abuse Survivor Client represented by your Firm:

> > (5)      whether the claimant votes to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan;

> > (6)      whether, <u>only</u> if the Plan is confirmed and the Effective Date occurs, the claimant elects to receive the Expedited Distribution, which is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures; and

> > (7)      whether the claimant opts out of the releases contained in <u>Article X.J.4</u> of the Plan.  The Exhibit must be submitted in the format set forth above and may not be modified.

As set forth in the Plan, if holders of Class 8 Direct Abuse Claims vote to accept the Plan, the Debtors will request that the Plan be confirmed.  If the Plan is confirmed and the Effective Date occurs, each eligible holder of a Direct Abuse Claim may voluntarily elect pursuant to this Master Ballot to receive an Expedited Distribution of a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures.  **You <u>must</u> make this election for your Abuse Survivor Clients on the Exhibit submitted with a properly and timely completed and delivered Master Ballot.**

c.    Pursuant to <u>Article X</u> of the Plan, the Debtors seek approval of the release provision set forth in <u>Article X.J.4</u> of the Plan and provided above.  You may opt out of giving this release on behalf of your Abuse Survivor Clients who vote to accept or reject the Plan by making this election on the Exhibit.

---

**IF THE PLAN BECOMES EFFECTIVE, HOLDERS OF DIRECT ABUSE CLAIMS UNDER THE PLAN WHO VOTE TO ACCEPT OR REJECT THE PLAN ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN <u>ARTICLE X.J.4</u> OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU OPT OUT ON BEHALF OF A HOLDER.  YOU MAY OPT OUT OF THE RELEASES ON BEHALF OF A HOLDER BY STATING SO IN THE EXHIBIT.**

---

d.    **<u>Item 3 (Certifications and Acknowledgements)</u>**.  Item 3 contains certain certifications, to be completed by the attorney preparing and signing the Master Ballot, pursuant to which such attorney shall certify that he or she has the authority under applicable law to vote to accept or reject the Plan on behalf of the holders of Direct Abuse Claims who are listed on the Exhibit to the Master Ballot.  Please ensure that you have read and understood the certifications before signing the Master Ballot.  If you are unable to make such certifications on behalf of any holder of a Direct Abuse Claim, you may **<u>not</u>** cast a vote on behalf of such holder and **<u>must</u>** timely send the information relating to the name and address of such holder to the Solicitation Agent.

e.    If the Master Ballot is not signed, the vote(s) shown on the Master Ballot will <u>not</u> be counted.

**3.    Other Instructions for Completing Master Ballots:**

a.    Holders of Direct Abuse Claims must vote the full amount of their Claims to ACCEPT (vote in favor of) or to REJECT (vote against) the Plan.  A holder of a Direct Abuse Claim may not split his or her vote.  Accordingly, the vote of any holder of a Direct Abuse Claim who purports partially to accept and partially to reject the Plan will not be counted.

b.    **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been allowed in the amount of $1.00 solely for voting purposes, and shall not be binding upon the holder of the Direct Abuse Claim, the Debtors, the Settlement Trust, the Firms, or any other party for any purpose other than voting on the Plan.**

c.    This Master Ballot is to be used by Firms who represent, and are authorized to vote on behalf of, one or more holders of Direct Abuse Claims.  You may be required to provide evidence of your authorization by holders of Direct Abuse Claims to vote to accept or reject the Plan.

d.    If a Ballot is received directly from the holder of a Direct Abuse Claim <u>and</u> a Master Ballot is received from a Firm on account of the same Direct Abuse Claim, the Ballot returned by holder of such Claim by the Voting Deadline shall supersede any Master Ballot with respect to such Claim and such Master Ballot shall not be counted.

e.     The Master Ballot may not be used for any purpose other than to transmit votes on the Plan.

f.     Multiple Master Ballots may be completed and delivered to the Solicitation Agent.  Subject to the terms of the Solicitation Procedures, votes reflected by multiple Master Ballots shall be counted except to the extent that they are duplicative of other Master Ballots.  If two or more such ballots are inconsistent, the last-dated Master Ballot received before the Voting Deadline will, to the extent of such inconsistency, govern unless otherwise ordered by the Bankruptcy Court.  Notwithstanding the foregoing, if two or more Master Ballots are received from separate counsel on or before the Voting Deadline, each of whom purports to represent the same holder of a Direct Abuse Claim and the votes conflict, the Debtors shall reach out to both Firms, with notice of such communication to counsel to the Tort Claimants' Committee and the Coalition of Abused Scouts for Justice, and request written documentation of each attorney's representation of such holder in order to resolve the conflict.  If representation of the holder of the Direct Abuse Claim is not resolved within ten (10) days from the notice of the conflict as provided by the Debtors, such votes shall not be counted.

g.     If the Master Ballot and Exhibit are signed and timely sent to the Solicitation Agent, but do not designate either acceptance or rejection, or designate both acceptance and rejection, of the Plan for any particular Direct Abuse Claim listed on the Exhibit accompanying the Master Ballot, then the Solicitation Agent may, at its discretion, contact the party submitting the Master Ballot in order to cure the defect on the Master Ballot or such Claim will not be counted either as an acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE MASTER BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED MASTER BALLOT OR HAVE LOST YOUR MASTER BALLOT, OR NEED ADDITIONAL COPIES OF THE MASTER BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

---

**NOTHING CONTAINED HEREIN OR IN THE SOLICITATION PACKAGES SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF THE DEBTORS**

**OR THE SOLICITATION AGENT WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE SOLICITATION PACKAGES.**

## Exhibit 2-6

**Form of Individual Ballot for Class 8 Direct Abuse Claims**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

## BALLOT FOR CLASS 8 (DIRECT ABUSE CLAIMS)

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**ACCESS TO SOLICITATION MATERIALS:**

**THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-SABALLOTS.**

**IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "SOLICITATION AGENT") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "VOTING DEADLINE").**

**IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN ARTICLE X.J.4 OF THE PLAN UNLESS YOU "OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 8 Direct Abuse Claims on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies. If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction. This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots. **This list only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party under the Plan.**

You are receiving this Ballot because you have asserted a Claim against the Debtors that arises from Abuse[2] that occurred prior to the Petition Date (as defined in the Plan, a "Direct Abuse

---

[2]   "Abuse" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

Claim"). Your Direct Abuse Claim is classified under the Plan in Class 8 (Direct Abuse Claims). Accordingly, you have a right to vote to accept or reject the Plan.

---

**IMPORTANT INFORMATION REGARDING THE ELECTION TO RECEIVE AN EXPEDITED DISTRIBUTION OF $3,500.00:**

---

**Each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim may elect at Item 3 of this Ballot to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.**

The Settlement Trust shall make the Expedited Distributions on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date, (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee. **This election must be made on a properly and timely completed and delivered Ballot in accordance with the instructions set forth herein, and shall only be effective if the Plan is confirmed and the Effective Date occurs.**

**If you are receiving this Ballot by email, you indicated on your proof of claim form that email communication is an acceptable method for communications regarding your Claim. If you would prefer to receive this Ballot and all Solicitation Package materials by mail instead, you may contact the Solicitation Agent via the contact information set forth above to receive a mailed copy of your Solicitation Package.**

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description

of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Direct Abuse Claims may be affected thereunder. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL
> OF THE INFORMATION REQUESTED UNDER ITEM 4. IF THIS BALLOT HAS
> NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY
> NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**<u>Item 1</u>. Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the Voting Record Date, the undersigned holds a Direct Abuse Claim in the amount set forth below. **Please note that, except as otherwise may be set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been temporarily allowed in the amount of $1.00 for voting purposes only, and not for distribution, allowance, or any other purpose.**

> **Debtor:** _____
>
> **Claim(s) Amount:** <u>$1.00</u>

**<u>Item 2</u>. Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claims in Class 8 below (please check one). Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release set forth in <u>Article X.J.4</u> of the Plan unless you opt out of the release by checking the box in Item 4 below.

If you abstain from voting, you shall not be deemed to have consented to the release provisions set forth in <u>Article X.J.4</u> of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in <u>Article X</u> of the Plan.

> **Check <u>only</u> one box:**
>
> ☐      **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan
>
> ☐      **REJECT (*I.E.*, VOTE AGAINST)** the Plan

**Item 3.  Expedited Distribution Election.**

Please note that if you make the Expedited Distribution election set forth in Item 3, you must still complete the remaining Items on this Ballot.



**If the Plan is confirmed as set forth above and in the Plan, the holder of an eligible Direct Abuse Claim ELECTS to:**

☐   **Receive the Expedited Distribution of a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations.**

**Item 4.  Optional Release Election.**

Unless a holder of a Class 8 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

**<u>Article X.J.4 of the Plan—Releases by Holders of Claims</u>.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to,

---

[3]   "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[4]   "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers,

expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; **provided**, **however**, that the releases set forth in <u>Article X.J.4</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to <u>Article IV.D.3</u> of the Plan)and (ii) nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("<u>Sidley</u>") related to Sidley's representation of the Debtors prior to the Petition Date.

<u>Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations</u>.

        a.      In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation

---

consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations, [5] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties, [6] the Limited Protected Parties, [7] the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "Settlement Parties"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

b.      In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties

---

[5]   "Contributing Chartered Organizations" means the current or former Chartered Organizations listed on Exhibit D to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with Article IV.I of the Plan.  No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment.  Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

[6]   "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party.  Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[7]   "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment.  Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment.  A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.**

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 8 Claim, elects to:

☐ **Opt out of the third party release in Article X.J.4 of the Plan.**

---

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan—Channeling Injunction.**

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[8] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited**

---

[8] "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

Protected Party or any property or interest in property of any Limited Protected Party. On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

c.     commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

d.     enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

e.     creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

f.     asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

g.     taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

**Reservations**.  Notwithstanding anything to the contrary in **Article X.F** of the Plan, the Channeling Injunction shall not enjoin:

a.     the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement

Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b. the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

c. prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under Article IV.I of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

d. prior to the date that a Chartered Organization becomes a Limited Protected Party under Article IV.J of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

e. the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under Article IV.I of the Plan);

f. the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

g. the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

h. the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage DefensesArticle X.J.1 of the Plan—Releases by the Debtors and the Estates.

## Article X.J.1 of the Plan—Releases by the Debtors and the Estates.

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of

Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

**Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law

may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; __provided__, __however__, that the releases set forth in __Article X.J.3__ of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with __Article III. B.10__ or __Article III.B.11__ of the Plan, as applicable.

## Article X.K of the Plan—Exculpation.

From and after the Effective Date, none of the Exculpated Parties[9] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the

---

[9] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.L of the Plan—Injunctions Related to Releases and Exculpation.**

    **Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

    **Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 5.** **Certifications, Acknowledgment, Signature and Date**.

By signing this Ballot, the holder of the Class 8 Direct Abuse Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, and the other applicable solicitation materials, and certifies that:

(i)　　it has the power and authority to vote to accept or reject the Plan,

(ii)　　it was the holder (or is entitled to vote on behalf of such holder) of the Class 8 Direct Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)　　it has not submitted any other Ballots for other Class 8 Direct Abuse Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)　　it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 8 Claim,

(v)　　it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)　　it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)　　all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Birthdate of Claimant (MM/DD/YY): | _____ |
| Signature: | _____ |

| | |
|---|---|
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

---

**IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

---

Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-SAballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| https://omniagentsolutions.com/bsa-SAballots | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Ballot.

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other

means of electronic transmission will not be counted. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-SAballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-SAballots.

1. **Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-SAballots and follow the instructions to submit your Ballot.

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.** Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

| |
|---|
| Boy Scouts of America Ballot Processing |
| c/o Omni Agent Solutions |
| 5955 De Soto Avenue, Suite 100 |
| Woodland Hills, CA 91367 |

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. **To fill out your Ballot, you must complete the following:**

a. **Item 1 (Amount of Claim)**. **Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Direct Abuse Claim in Class 8 has been allowed in the amount of $1.00 for voting purposes only, and shall not be binding upon the holder of the Direct Abuse Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

b. **Item 2 (Vote on the Plan)**. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Direct Abuse Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c.      If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

d.      **Item 3 (Expedited Distribution Election)**.  If the Plan is confirmed, if you have properly completed a non-duplicative proof of claim asserting a Direct Abuse Claim and filed such Claim by the Bar Date or were permitted by a Final Order of the Bankruptcy Court to file a late claim, you may elect in Item 3 to receive an Expedited Distribution, which, as specified in the Plan, is a one-time Cash payment from the Settlement Trust in the amount of $3,500.00 conditioned upon satisfaction of the criteria set forth in the Trust Distribution Procedures, in exchange for a full and final release in favor of the Settlement Trust, the Protected Parties, and the Chartered Organizations.  The Settlement Trust shall make the Expedited Distributions on one or more dates occurring on or as soon as reasonably practicable after the latest to occur of (a) the Effective Date or (b) the date the applicable holders of Direct Abuse Claims who have elected to receive an Expedited Distribution have satisfied the criteria set forth in the Trust Distribution Procedures, and (c) the date upon which the Settlement Trust has sufficient Cash to fund the full amount of the Expedited Distributions while retaining sufficient Cash reserves to fund applicable Settlement Trust Expenses, as determined by the Settlement Trustee.  **This election must be made in Item 3 on a properly and timely completed and delivered Ballot.**

e.      **Item 4 (Releases)**.  Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.4 of the Plan and provided above.  Holders of Direct Abuse Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

---

**IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF A DIRECT ABUSE CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.J.4 OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 4 TO OPT OUT OF THE RELEASES.**

---

f.      **Item 5 (Certifications, Acknowledgement, Signature, and Date)**.  Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will not be counted.

g.      Claimants with Social Security Numbers must provide the last four digits of their Social Security Number in Item 4 of the Ballot.

h.      The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot.  Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

i.     By signing the Ballot, you make the following certifications on information and belief:

(i)     I have the power and authority to vote to accept or reject the Plan,

(ii)    I am the holder (or am entitled to vote on behalf of such holder) of the Direct Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)   I have not submitted any other Ballots for other Class 8 Direct Abuse Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)    I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 8 Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)    I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)   all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.     Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.     If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.      If more than one Ballot is received from the holder of a Direct Abuse Claim entitled to vote <u>and</u> from an attorney purporting to represent such holder (including in accordance with procedures related to Master Ballots) prior to the Voting Deadline, the Ballot received from the holder of the Direct Abuse Claim entitled to vote will be counted.

e.      To the extent you have received two (2) or more duplicative Ballots on account of the same Direct Abuse Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

f.      In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

g.      There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

## Exhibit 2-7

## Form of Ballot for Class 9 Indirect Abuse Claims

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## BALLOT FOR CLASS 9 (INDIRECT ABUSE CLAIMS)

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING YOUR BALLOT CAREFULLY BEFORE COMPLETING THIS BALLOT.

**ACCESS TO SOLICITATION MATERIALS:**

THE PLAN, THE DISCLOSURE STATEMENT, AND THE SOLICITATION PROCEDURES ORDER MAY BE ACCESSED, FREE OF CHARGE, AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA-BALLOTS.

IF YOU WOULD PREFER A PAPER OR OTHER FORMAT OF THESE MATERIALS, OR IF YOU NEED TO OBTAIN ADDITIONAL SOLICITATION PACKAGES, PLEASE CONTACT OMNI AGENT SOLUTIONS (THE "**SOLICITATION AGENT**") BY (A) CALLING THE DEBTORS' RESTRUCTURING HOTLINE AT 866-907-2721, (B) EMAILING BSABALLOTS@OMNIAGNT.COM, (C) WRITING TO BOY SCOUTS OF AMERICA BALLOT PROCESSING, C/O OMNI AGENT SOLUTIONS, 5955 DE SOTO AVENUE, SUITE 100, WOODLAND HILLS, CA 91367, OR (D) SUBMITTING AN INQUIRY ON THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/BSA.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE **ACTUALLY** **RECEIVED** BY THE SOLICITATION AGENT BY 4:00 P.M. (EASTERN TIME) ON [NOVEMBER 16], 2021 (THE "**VOTING DEADLINE**").

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN, YOU WILL BE RELEASING THE RELEASED PARTIES FROM ANY AND ALL CLAIMS/CAUSES OF ACTION TO THE EXTENT PROVIDED IN **ARTICLE X.J.4 OF THE PLAN UNLESS YOU**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

**"OPT-OUT" OF SUCH RELEASES. YOU MAY "OPT-OUT" OF SUCH RELEASES AND YOU MUST INDICATE SUCH "OPT-OUT" IN THE BALLOT.**

Pursuant to this ballot (this "Ballot"), the above-captioned debtors and debtors-in-possession (together, the "Debtors") are soliciting votes from holders of Class 9 Indirect Abuse Claims on the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), which is described in greater detail in that certain disclosure statement regarding the Plan, filed on [●], 2021 [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code and the procedures for soliciting votes to accept or reject the Plan (the "Solicitation Procedures"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court.

The Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code, which is a mechanism by which Abuse Claims will be channeled to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the Entities that would be subject to these injunctions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

The Debtors have compiled a list of all potential Protected Parties and potential Limited Protected Parties under the Plan, including the identities of all Local Councils, Chartered Organizations, and Insurance Companies. If the Plan is confirmed, to the extent any such parties participate, they will be included in the definition of Protected Parties or Limited Protected Parties and will benefit from the Channeling Injunction. This list of potential Protected Parties and Limited Protected Parties is available at https://omniagentsolutions.com/bsa-SAballots. **This list only includes *potential* Protected Parties and Limited Protected Parties—it does not mean that any such party will in fact become a Protected Party or Limited Protected Party under the Plan.**

You are receiving this Ballot because you have asserted a liquidated or unliquidated Abuse Claim for contribution, indemnity for contribution, indemnity, reimbursement, or subrogation, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Abuse Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law or equity whatsoever, including any indemnification, reimbursement, hold-harmless or other payment obligation provided for under any prepetition settlement, insurance policy, program agreement or contract (as defined in the Plan, an "Indirect Abuse Claim"). Your Indirect Abuse Claim is classified under the Plan in Class 9 (Indirect Abuse Claims). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Disclosure Statement for the Plan and the Solicitation Procedures Order. **This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Solicitation Agent immediately via the contact information set forth above.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.** To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation Agent by the Voting Deadline.

If you vote to accept or reject the Plan, you will be deemed to provide the releases in **Article X.J.4** of the Plan and as set forth below unless you opt out of such releases. You may check the box below to opt out of the releases in **Article X.J.4** of the Plan. Please be advised that the Plan also contains injunction and exculpation provisions, certain of which are set forth below. If the Plan is confirmed by the Bankruptcy Court, these sections will be binding on you whether or not you elect to opt out of the releases in **Article X.J.4** of the Plan by this Ballot. For a full description of these provisions, see **Article VI.Q** of the Disclosure Statement and **Article X** of the Plan, which sets forth the terms of each of these provisions.

**You should carefully review the Disclosure Statement and the Plan, including the Plan's injunction, exculpation, and release provisions, as the rights of holders of Indirect Abuse Claims may be affected thereunder. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS
BEFORE COMPLETING THIS BALLOT.**

---

**PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW. PLEASE FILL IN ALL OF
THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT
BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

---

<u>**Item 1**</u>.  **Amount of Claim.**

For purposes of voting to accept or reject the Plan, the undersigned certifies that as of the
Voting Record Date, the undersigned holds an Indirect Abuse Claim in the amount set forth below.
**Please note that, except as otherwise may be set forth in the Disclosure Statement and
Solicitation Procedures Order, each Indirect Abuse Claim in Class 9 has been allowed in the
amount of $1.00 for voting purposes only, and not for distributions under the Plan,
allowance, or any other purpose.**

**Debtor**:  _____

**Claim(s) Amount**:  <u>$1.00</u>

<u>**Item 2**</u>.  **Vote on the Plan.**

Please vote either to accept or to reject the Plan with respect to your Claims in Class 9
below (please check one).  Any Ballot not marked either to accept or reject the Plan, or marked
both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection
of the Plan.

Prior to voting on the Plan, please note the following:

If you vote to accept or reject the Plan, you shall be deemed to have consented to the release
set forth in <u>Article X.J.4</u> of the Plan unless you opt out of the release by checking the box in Item 3
below.

If you abstain from voting, you shall not be deemed to have consented to the release
provisions set forth in <u>Article X.J.4</u> of the Plan.  The Disclosure Statement and the Plan must be
referenced for a complete description of the release, injunction, and exculpation provisions in
<u>Article X</u> of the Plan.

---

**Check <u>only</u> one box:**

☐  **ACCEPT (*I.E.*, VOTE IN FAVOR OF)** the Plan

☐  **REJECT (*I.E.*, VOTE AGAINST)** the Plan

---

<u>Item 3</u>.  **Optional Release Election.**

Unless a holder of a Class 9 Claim who votes to accept or reject the Plan opts out of the Releases by holders of Claims set forth below, such holder shall be deemed to have consented to the releases contained in <u>Article X.J.4</u> of the Plan, which provides as follows:

<u>Article X.J.4 of the Plan—Releases by Holders of Claims</u>.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[2] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[3] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is

---

[2]  "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[3]  "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in <u>Article X.J.4</u> of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in <u>Article X.J.4</u> of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; <u>provided</u>, <u>however</u>, that the releases set forth in <u>Article X.J.4</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with <u>Article III.B.9</u> of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to <u>Article IV.D.3</u> of the Plan) and (ii) nothing in the Plan or the release set forth in <u>Article X.J.4</u> of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("<u>Sidley</u>") related to Sidley's representation of the Debtors prior to the Petition Date.

<u>**Article X.J.5 of the Plan—Releases Relating to Contributing Chartered Organizations**</u>.

a.      **In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations,[4] including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other**

---

[4]     "<u>Contributing Chartered Organizations</u>" means the current or former Chartered Organizations listed on <u>Exhibit D</u> to the Plan, including any Chartered Organization made a Protected Party under a Post-Effective Date Chartered Organization Settlement approved by the Bankruptcy Court in accordance with <u>Article IV.I</u> of the Plan. No Participating Chartered Organization shall be considered a Contributing Chartered Organization based solely on the Participating Chartered Organization Insurance Assignment. Without limiting the foregoing, subject to Confirmation of the Plan and approval of the TCJC Settlement Agreement by an order of the Bankruptcy Court (including in the Confirmation Order), TCJC is a Contributing Chartered Organization and shall be designated as such in the Confirmation Order and the Affirmation Order.

Protected Parties,[5] the Limited Protected Parties,[6] the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "Settlement Parties"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

      b.     In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could

---

[5]   "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[6]   "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

If you voted to accept or reject the Plan in Item 2 above, check this box if you elect not to grant the release contained in Article X.J.4 of the Plan.

---

The undersigned, as a holder of (or representative of a holder of) a Class 9 Claim, elects to:

☐ **Opt out of the third party release in Article X.J.4 of the Plan.**

---

**Certain other Releases, Injunction and Exculpation Provisions Contained in the Plan**

**Article X.F of the Plan—Channeling Injunction.**

**Terms.** To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in Article X of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[7] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party. On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

---

[7] "Settlement Trust Documents" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

c. commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

d. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

e. creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

f. asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

g. taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

**Reservations**. Notwithstanding anything to the contrary in **Article X.F** of the Plan, the Channeling Injunction shall not enjoin:

a. the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

b. the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

c. prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under **Article IV.I** of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

d.     prior to the date that a Chartered Organization becomes a Limited Protected Party under <u>Article IV.J</u> of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

e.     the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under <u>Article IV.I</u> of the Plan);

f.     the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

g.     the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

h.     the rights of the Settlement Trust and Reorganized BSA to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses.

<u>Article X.J.1 of the Plan—Releases by the Debtors and the Estates.</u>

**Releases by the Debtors and the Estates of the Released Parties.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring**

of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

**Releases by the Debtors and the Estates of Certain Avoidance Actions.** As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

<u>Article X.J.3 of the Plan—Releases by Holders of Abuse Claims.</u>

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Protected Parties and the Limited Protected Parties to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct,

foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in **Article X.J.3** of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with **Article III. B.10** or **Article III.B.11** of the Plan, as applicable.

**Article X.K of the Plan—Exculpation.**

From and after the Effective Date, none of the Exculpated Parties[8] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

**Article X.L of the Plan—Injunctions Related to Releases and Exculpation.**

**Injunction Related to Releases.** As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing

---

[8] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.1** of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of **Article X.J** of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Injunction Related to Exculpation.** As of the Effective Date, all holders of Claims that are the subject of **Article X.K** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

**Item 4**. Certifications, Acknowledgment, Signature and Date.

By signing this Ballot, the holder of the Indirect Abuse Claim (or authorized signatory of such holder) acknowledges receipt of the Disclosure Statement, the Plan, the Confirmation Hearing Notice, and the other applicable solicitation materials, and certifies that:

(i)      it has the power and authority to vote to accept or reject the Plan,

(ii)     it was the holder (or is entitled to vote on behalf of such holder) of the Class 9 Indirect Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)    it has not submitted any other Ballots for other Class 9 Indirect Abuse Claims, or if it has submitted any other Ballots with respect to such Claims, then any such Ballots dated earlier in time are hereby revoked,

(iv)     it acknowledges that a vote to accept the Plan constitutes an acceptance of the treatment of such Entity as a holder of a Class 9 Claim,

(v)     it understands and, if accepting the Plan, agrees with the treatment provided for its Claim(s) under the Plan,

(vi)     it understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

| | |
|---|---|
| Print or Type Name of Claimant: | _____ |
| Last Four Digits of Social Security Number of Claimant: | _____ |
| Signature: | _____ |
| Name of Signatory (if different than Claimant): | _____ |
| If by Authorized Agent, Title of Agent: | _____ |
| Street Address: | _____ |
| City, State, Zip Code: | _____ |
| Telephone Number: | _____ |
| Email Address: | _____ |
| Date Completed: | _____ |

> **IF THIS BALLOT IS NOT RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME), YOUR VOTE WILL NOT BE COUNTED.**

Ballots must be delivered to the Solicitation Agent (a) via the electronic Ballot submission platform on the Solicitation Agent's website (the "E-Ballot Platform") by visiting https://omniagentsolutions.com/bsa-ballots, and following the instructions set forth on the website, or (b) at the appropriate address listed below, or in the enclosed envelope, as applicable. You are highly encouraged to submit your Ballot via the E-Ballot Platform. If you choose to submit your Ballot via the E-Ballot Platform, you should NOT submit a hard copy Ballot. Please choose only one method for returning your Ballot.

| If by E-Ballot Platform: | If by standard or overnight mail or personal delivery: |
|---|---|
| **https://omniagentsolutions.com/bsa-ballots** | **Boy Scouts of America Ballot Processing**<br>**c/o Omni Agent Solutions**<br>**5955 De Soto Avenue, Suite 100**<br>**Woodland Hills, CA 91367** |

To submit your Ballot via the E-Ballot Platform, please visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:** You will need the following information to retrieve and submit your customized electronic Ballot:

Unique E-Ballot ID#: [_____]

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Holders of Claims who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

If you have questions about this Ballot, or if you did not receive access to a copy of the Plan or any related materials, please contact the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

Information may also be obtained at https://omniagentsolutions.com/bsa-ballots. **THE SOLICITATION AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

Any admission of Claims for purposes of voting on the Plan is <u>not</u> an admission of liability on the part of the Debtors or any other party for payment purposes.

*[Remainder of Page Intentionally Left Blank]*

## INSTRUCTIONS FOR COMPLETING YOUR BALLOT

To properly complete this Ballot, you must follow the procedures described below, which explain each of the items contained on your Ballot. If you have any questions, please contact the Solicitation Agent using the contact information provided above or visit https://omniagentsolutions.com/bsa-ballots.

**1. Use of Online Ballot Portal—If Submitting Your Vote Through the E-Ballot Platform:**

The Solicitation Agent will accept Ballots if properly completed through the E-Ballot Platform. To submit your Ballot via the E-Ballot Platform, visit https://omniagentsolutions.com/bsa-ballots and follow the instructions to submit your Ballot.

> **IMPORTANT NOTE**: You will need the following information to retrieve and submit your customized electronic Ballot:
>
> **Unique E-Ballot ID#**: [_____]

The Solicitation Agent's E-Ballot Platform is the sole manner in which Ballots will be accepted via online or electronic submission. **Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable. Creditors who cast a Ballot using the E-Ballot Platform should NOT also submit a paper Ballot.

**Use of Hard Copy Ballot—If Submitting Your Vote Through Standard or Overnight Mail or Personal Delivery:**

Submit your completed and signed Ballot by standard mail using the pre-addressed envelope included in the Solicitation Package, or by overnight mail or personal delivery to:

> Boy Scouts of America Ballot Processing
> c/o Omni Agent Solutions
> 5955 De Soto Avenue, Suite 100
> Woodland Hills, CA 91367

**The Solicitation Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

**2. To fill out your Ballot, you must complete the following:**

a. **Item 1 (Amount of Claim). Please note that, except as otherwise set forth in the Disclosure Statement and Solicitation Procedures Order, each Indirect Abuse Claim in Class 9 has been allowed in the amount of $1.00 for voting purposes only, and shall**

**not be binding upon the holder of the Indirect Abuse Claim, the Debtors, the Settlement Trust, or any other party for any purpose other than voting on the Plan.**

b. **Item 2 (Vote on the Plan)**. Cast one vote to accept or reject the Plan by checking the appropriate box in Item 2. You must vote the entire amount of your Indirect Abuse Claim either to accept (*i.e.*, vote in favor of) or reject (*i.e.*, vote against) the Plan and you may not split your vote. Accordingly, any vote within a single Class that attempts partially to accept and partially reject the Plan will not be counted.

c. If you hold Claims in more than one class, you may receive more than one Ballot or Solicitation Package, labeled for a different class of Claims. Your vote will be counted in determining acceptance or rejection of the Plan by a particular class of Claims only if you complete, sign, and return the Ballot labeled for such class of Claims in accordance with the instructions on that Ballot.

d. **Item 3 (Releases)**. Pursuant to Article X of the Plan, the Debtors seek approval of the release provision set forth in Article X.J.4 of the Plan and provided above. Holders of Indirect Abuse Claims who vote to accept or reject the Plan may opt out of this release by checking the box in Item 3.

> **IF THE PLAN BECOMES EFFECTIVE, AS A HOLDER OF AN INDIRECT ABUSE CLAIM UNDER THE PLAN, IF YOU VOTE TO ACCEPT OR REJECT THE PLAN YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE X.J.4 OF THE PLAN, AS SET FORTH ABOVE, UNLESS YOU CHECK THE BOX IN ITEM 3 TO OPT OUT OF THE RELEASES.**

e. **Item 4 (Certifications, Acknowledgement, Signature, and Date)**. Either the claimant, the claimant's personal representative, or the claimant's attorney must sign the Ballot. If the Ballot is not signed, the vote shown on the Ballot will not be counted.

f. Claimants with Social Security Numbers must provide the last four digits of their Social Security Number in Item 4 of the Ballot.

g. The claimant, the claimant's personal representative, or the claimant's attorney, must certify certain information on the Ballot. Please read the certifications below and ensure that the information on the Ballot meets the requirements of those certifications.

h. By signing the Ballot, you make the following certifications on information and belief:

(i) I have the power and authority to vote to accept or reject the Plan,

(ii) I am the holder (or am entitled to vote on behalf of such holder) of the Indirect Abuse Claim described in Item 1 as of the Voting Record Date,

(iii)     I have not submitted any other Ballots for other Class 9 Indirect Abuse Claims, or if I have submitted any other Ballots with respect to such Claims, then any such Ballots date earlier in time are hereby revoked,

(iv)     I acknowledge that a vote to accept the Plan constitutes an acceptance of the treatment of my Claim as a Class 9 Claim,

(v)     I understand and, if accepting the Plan, agree with the treatment provided for my Claim(s) under the Plan,

(vi)     I understand and acknowledge that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot voting the Claim and received by the Solicitation Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Solicitation Agent, and

(vii)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

**3.     Other Instructions for Completing the Ballots:**

a.     The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or Interest.

b.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

c.     If you submit more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation Agent and received by the Solicitation Agent before the Voting Deadline will supersede and revoke any prior Ballot.

d.     To the extent you have received two (2) or more duplicative Ballots on account of the same Indirect Abuse Claim, please note that each claimant is authorized to submit only one Ballot on account of such Claim.

e.     In the event that (a) the Debtors revoke or withdraw the Plan, or (b) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall

automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

        f.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

---

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS INCLUDED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, DID NOT RECEIVE INSTRUCTIONS REGARDING ACCESSING THE DISCLOSURE STATEMENT OR PLAN, RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT:**

| | |
|---|---|
| **TELEPHONE:** | **866-907-2721** |
| **EMAIL:** | **BSAballots@omniagnt.com** |
| **ADDRESS:** | **Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367** |
| **WEBSITE:** | **https://omniagentsolutions.com/BSA** |

---

## Exhibit 3

## Form of Confirmation Hearing Notice

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: [December 9], 2021 at 10:00 a.m. (ET)** |
| | **Objection Deadline: [November 23], 2021 at 4:00 p.m. (ET)** |

## NOTICE OF HEARING TO CONSIDER CONFIRMATION OF FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC

**PLEASE TAKE NOTICE THAT** on [●], 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and

- the *Amended Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

**The Plan is supported by the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils (the "Supporting Parties").**

**The Plan contains releases of the Debtors and certain third parties and related injunction provisions. If the Plan is approved, these provisions will release and prohibit holders of Abuse Claims from asserting such claims against the BSA and certain non-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. The Channeling Injunction will "channel" to the Settlement Trust all Abuse Claims against the BSA and certain non-debtor third parties, including the Local Councils, Contributing Chartered Organizations, Settling Insurance Companies, and Participating**

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

**Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. The Settlement Trust will exclusively administer and resolve the Abuse Claims after the Effective Date. The Debtors and the Supporting Parties all support Confirmation of the Plan.** The Debtors and the Supporting Parties all believe that the Plan provides the highest and best recovery for all creditors and is in the best interests of the Debtors' Estates. You should carefully review the Plan and the release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

### PLEASE TAKE FURTHER NOTICE THAT:

1. *Approval of Disclosure Statement.* On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "Solicitation Procedures").

2. *Confirmation Hearing.* The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time). The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

3. *Voting Record Date.* Holders of Claims against the Debtors in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (each, a "Voting Class" and, collectively, the "Voting Classes") as of **September 21, 2021** (the "Voting Record Date") are entitled to vote on account of such Claims. However, a holder of a Claim in a Voting Class is nonetheless not entitled to vote under the following circumstances:

    (a) a Claim filed for $0.00 is not entitled to vote on the Plan, excluding the holders of Direct Abuse Claims and Indirect Abuse Claims. Each holder of a Direct Abuse Claim and Indirect Abuse Claim who is entitled to vote shall have a single vote in the amount, for voting purposes only, of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court pursuant to Section IV.E of the Solicitation Procedures;

(b) as of the Voting Record Date, such holder's Claim that has been expunged, disallowed, disqualified, withdrawn, or superseded;

(c) as of the Solicitation Date, such holder's Claim is the subject of a pending objection filed with the Bankruptcy Court, other than a "reclassify" or "reduce and allow" objection (a "<u>Disputed Claim</u>"), pending the occurrence of a Resolution Event as provided in the Solicitation Procedures;

(d) a Claim that is not listed on the Debtors' Schedules, or a Claim that is scheduled as contingent, unliquidated, or disputed and has not been paid or superseded by a timely filed Proof of Claim; and

(e) a holder of a Disputed Claim whose claim has not been resolved through a Resolution Event.

4. ***Calculation of Votes with Respect to Direct and Indirect Abuse Claims.*** Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to accept or reject the Plan and not for any other purpose.

5. ***Voting Deadline.*** All votes to accept or reject the Plan must be <u>actually</u> <u>received</u> by the Debtors' solicitation agent, Omni Agent Solutions (the "<u>Solicitation Agent</u>"), by **[November 16], 2021 at 4:00 p.m. (Eastern Time)** (the "<u>Voting Deadline</u>"). If you are entitled to vote to accept or reject the Plan, an appropriate ballot and voting instructions have been included in the package of materials containing this Notice, or, alternatively, such items may have been sent to your attorney. You must return your Ballot to the address specified in the instructions accompanying the Ballot so that it is received by the Solicitation Agent no later than the Voting Deadline. **If you do not return your Ballot so that it is actually received by the Solicitation Agent by the Voting Deadline, your vote may not be counted**. Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from the Solicitation Agent by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/bsa, and submit your Ballot as set forth above so that it is received by the Voting Deadline. All submitted Ballots will be tabulated according to the rules set forth in the Solicitation Procedures as approved in the Solicitation Procedures Order.

6. ***Plan Supplement.*** The Debtors will file the Plan Supplement no later than **[November 2], 2021 at 4:00 p.m. (Eastern Time)**. The Plan Supplement will include: (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the form of the BSA Settlement Trust Note; (d) the form of the Document Agreement; (e) the form of the DST Agreement; (f) the form of the DST Note; (g) the name of the Creditor Representative; (h) changes, if any, to Reorganized BSA's directors and officers; (i) the form of the Foundation Loan Agreement; (j) the form of agreement reflecting the terms of the Leaseback Requirement; (k) the Rejected Contracts and Unexpired Leases Schedule; (l) the forms of the Restated 2010

Bond Documents; (m) the forms of the Restated 2012 Bond Documents; (n) the forms of the Restated Credit Facility Documents; (o) the form of the Restated Security Agreement; (p) the names of the initial members of the Settlement Trust Advisory Committee; and (q) the name of the initial Special Reviewer; provided that the Plan Documents listed in clauses (b) and (k) of the foregoing sentence will be revised, in the Debtors' discretion, subject to <u>Article VI</u> of the Plan, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 and any party in interest who requests in writing a copy from counsel to the Debtors. Once the Plan Supplement is filed, a copy will also be available for review on the Notice and Claims Agent's website free of charge at <u>https://omniagentsolutions.com/BSA</u>.

7. ***Holders of Direct Abuse Claims Represented by Attorneys.*** If your attorney has elected to record your vote on the Plan, your attorney may reach out to you to collect or record your vote to accept or reject the Plan in advance of the Voting Deadline and you should respond promptly to any communications from your attorney. If you are a holder of a Direct Abuse Claim represented by an attorney but have received your Ballot and package of solicitation materials from the Solicitation Agent, you must return your completed Ballot to the Solicitation Agent by the Voting Deadline in order for your vote to count.

8. ***Parties in Interest Not Entitled to Vote.*** Pursuant to the Plan, holders of Unimpaired Claims are presumed to accept the Plan are not entitled to vote and will not receive a Ballot. Such holders will instead receive a Notice of Non-Voting Status. The holders of Administrative Expense Claims and Priority Tax Claims, which are unclassified under the Plan (collectively, the "<u>Unclassified Claims</u>") will also receive Notice of Non-Voting Status. If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (as defined above, a "<u>Disputed Claim</u>"), you will receive a Disputed Claim Notice and a Solicitation Package, although you will not be entitled to have your vote to accept or reject the Plan be counted unless a Resolution Event occurs as provided in the Solicitation Procedures. If you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "<u>Rule 3018(a) Motion</u>"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **[October 19], 2021**. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **[November 16], 2021** or as otherwise ordered by the Bankruptcy Court.

9. ***Objections to Confirmation.*** If you would like to object to the Plan, you may do so by filing your objection no later than **[November 23], 2021 at 4:00 p.m. (Eastern Time)** (the "<u>Plan Objection Deadline</u>"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually</u>

<u>received</u> by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)        counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)        the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)        counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)        counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)        counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)        counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

10.    The Bankruptcy Court has approved the following dates and deadlines in connection with the solicitation of votes on the Plan.

| Event | Date |
|---|---|
| Voting Record Date | September 21, 2021 |
| Deadline to Distribute Solicitation Packages | [October 4], 2021 |
| Rule 3018 Motion Deadline | [October 19], 2021 |
| Publication Deadline | [October 26], 2021 |
| Plan Supplement Deadline | [November 2], 2021 |
| Voting Resolution Event Deadline | [November 16], 2021 or as otherwise ordered by the Bankruptcy Court |
| Voting Deadline | [November 16], 2021 at 4:00 p.m. (Eastern Time) |
| Preliminary Voting Report Deadline | [November 19], 2021 |
| Plan Objection Deadline | [November 23], 2021 at 4:00 p.m. (Eastern Time) |
| Final Voting Report Deadline | [November 30], 2021 |
| Deadline to File Confirmation Briefs and Replies | [December 2], 2021 |
| Confirmation Hearing | [December 9], 2021 at 10:00 a.m. (Eastern Time) |

11.     Please be advised that the Plan provides for the issuance of a "Channeling Injunction" pursuant to section 105(a) of the Bankruptcy Code.  Additionally, Article X of the Plan contains certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved and described in Article VI.Q of the Disclosure Statement.  Such provisions include the following:

a.     **Discharge Injunction.  From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property.  In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation**

Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

b. **Releases by the Debtors and the Estates.**

**Releases by the Debtors and the Estates of the Released Parties.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement,[4] and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the

---

[3] "Released Parties" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to Article X.J of the Plan.

[4] "Hartford Insurance Settlement" has the meaning ascribed to such term in Article V.S.4 of the Plan.

solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article X.J.1 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

Releases by the Debtors and the Estates of Certain Avoidance Actions. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

c. Releases by the Debtors and the Estates of the Local Councils, the Contributing Chartered Organizations, and the Participating Chartered Organizations. In furtherance of the Abuse Claims Settlement,[5] on the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, on their own behalf and as representatives of their respective Estates, and Reorganized BSA, are deemed to irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge each and all of the Local Councils, the Contributing Chartered Organizations and the Participating Chartered Organizations of and from any and all claims, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature (including those arising under the Bankruptcy Code), whether known or unknown, suspected or unsuspected, in law or in equity, which the Debtors, their Estates, or Reorganized BSA have, had, may have, or may claim to have: (a) against any of the Local Councils and Contributing Chartered Organizations with respect to any Abuse Claims and (b) against any of the Participating Chartered Organizations with respect to any Post-1975 Chartered Organization Abuse Claims (collectively, the "Scouting Released Claims").

d. Releases by Holders of Abuse Claims. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of

---

[5] "Abuse Claims Settlement" has the meaning ascribed to such term in Article V.S of the Plan.

the Protected Parties[6] and the Limited Protected Parties[7] to facilitate and implement the reorganization of the Debtors, including the settlements embodied in the Plan, including the Abuse Claims Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all holders of Abuse Claims shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release: (a) each and all of the Protected Parties and their respective property and successors and assigns of and from all Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Abuse Claims; and (b) each and all of the Limited Protected Parties and their respective property and successors and assigns of and from all Post-1975 Chartered Organization Abuse Claims and any and all Claims and Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, veil piercing or alter-ego theories of liability, successor liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to such Post-1975 Chartered Organization Abuse Claims; provided, however, that the releases set forth in Article X.J.3 of the Plan shall not, and shall not be construed to: (i) release any Protected Party or Limited Protected Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (ii) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (iii) modify, reduce, impair or otherwise affect the ability of any holder of an Abuse Claim to recover on account of such Claim in accordance with Article III. B.10 or Article III.B.11 of the Plan, as applicable.

e.  **Releases by Holders of Claims**.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM /

---

[6]  "Protected Parties" means the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Local Councils; (e) the Contributing Chartered Organizations; (f) the Settling Insurance Companies, including Hartford; and (g) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Protected Party. Notwithstanding the foregoing, a Contributing Chartered Organization shall be a Protected Party with respect to Abuse Claims only as set forth in the definition of "Abuse Claim."

[7]  "Limited Protected Parties" means the Participating Chartered Organizations, which means a Chartered Organization that does not (a) object to confirmation of the Plan or (b) inform Debtors' counsel in writing on or before the confirmation objection deadline that it does not wish to make the Participating Chartered Organization Insurance Assignment. Notwithstanding the foregoing, with respect to any Chartered Organization that is a debtor in bankruptcy as of the Confirmation Date, such Chartered Organization shall be a Participating Chartered Organization only if it advises Debtors' counsel in writing that it wishes to make the Participating Chartered Organization Insurance Assignment, and, for the avoidance of doubt, absent such written advisement, none of such Chartered Organization's rights to or under the Abuse Insurance Policies shall be subject to the Participating Chartered Organization Insurance Assignment. A list of Chartered Organizations that are not Participating Chartered Organizations is attached to the Plan as Exhibit K.

Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[8] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to Article

---

[8]   "Releasing Claim Holder" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

**IV.D.3** of the Plan) and (ii) nothing in the Plan or the release set forth in **Article X.J.4** of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("**Sidley**") related to Sidley's representation of the Debtors prior to the Petition Date.

        **f.**        <u>Releases Relating to Contributing Chartered Organizations</u>.

        In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement,[9] for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Contributing Chartered Organizations, including TCJC, shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge the Debtors, Reorganized BSA, the Related Non-Debtor Entities, the Local Councils, the other Protected Parties, the Limited Protected Parties, the Settling Insurance Companies, including Hartford, the Future Claimants' Representative, the Coalition, the Settlement Trust, and each of its and their respective Representatives (collectively, the "<u>Settlement Parties</u>"), of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Contributing Chartered Organizations against the Settlement Parties or any of them.

        In furtherance of the Abuse Claims Settlement, as of the date that the Confirmation Order and Affirmation Order become Final Orders, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Confirmation Order, and the terms of the TCJC Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Settlement Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Contributing Chartered Organizations, including TCJC, of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in

---

[9] "<u>TCJC Settlement Agreement</u>" means that certain settlement agreement, which remains subject to definitive documentation, by and between TCJC, the Debtors, the Ad Hoc Committee, the Coalition, the Future Claimants' Representative, and certain state court counsel to holders of Direct Abuse Claims, as such agreement is described in the term sheet appended to the *Sixth Mediators' Report* [D.I. 6210] filed on September 14, 2021. Upon its execution by all of the parties thereto, the TCJC Settlement Agreement shall be attached to the Plan as <u>Exhibit J-1</u>.

law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the date that the Confirmation Order and Affirmation Order become Final Orders (including before the Petition Date) in connection with or related to (i) Abuse Claims, (ii) the Chapter 11 Cases, (iii) the Plan, or (iv) any Claims that were or could have been asserted by the Settlement Parties against the Contributing Chartered Organizations or any of them.

g.    <u>Channeling Injunction</u>.

**Terms.**  To preserve and promote the settlements contemplated by and provided for in the Plan, including the Abuse Claims Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, and to supplement, where necessary, the injunctive effect of the Discharge as provided in sections 1141 and 524 of the Bankruptcy Code and as described in <u>Article X</u> of the Plan, pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, (a) the sole recourse of any holder of an Abuse Claim against a Protected Party on account of such Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents,[10] and such holder shall have no right whatsoever at any time to assert such Abuse Claim against any Protected Party or any property or interest in property of any Protected Party, and (b) the sole recourse of any holder of a Post-1975 Chartered Organization Abuse Claim against a Limited Protected Party on account of such Post-1975 Chartered Organization Abuse Claim shall be to and against the Settlement Trust pursuant to the Settlement Trust Documents, and such holder shall have no right whatsoever at any time to assert such Post-1975 Chartered Organization Abuse Claim against any Limited Protected Party or any property or interest in property of any Limited Protected Party.  On and after the Effective Date, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Abuse Claim against the Protected Parties, or any of them, or any Post-1975 Chartered Organization Abuse Claim against the Limited Protected Parties, or any of them, shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Protected Party with respect to any such Abuse Claim or from any Limited Protected Party with respect to any such Post-1975 Chartered Organization Abuse Claim, other than from the Settlement Trust pursuant to the Settlement Trust Documents, including:

(i)    commencing, conducting, or continuing, in any manner, whether directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum in any jurisdiction around the world against or affecting any Protected Party or Limited

---

[10] "<u>Settlement Trust Documents</u>" means, collectively, (a) the Settlement Trust Agreement, (b) the Trust Distribution Procedures, (c) the Document Agreement, (d) the Confirmation Order, and (e) any other agreements, instruments and documents governing the establishment, administration and operation of the Settlement Trust, which shall be substantially in the forms set forth as exhibits in the Plan or in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the terms thereof.

Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

(ii)    enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering, by any manner or means, either directly or indirectly, any judgment, award, decree, or order against or affecting any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

(iii)    creating, perfecting, or otherwise enforcing in any manner, whether directly or indirectly, any Encumbrance of any kind against any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party;

(iv)    asserting, implementing or effectuating any setoff, right of reimbursement, subrogation, indemnity, contribution, reimbursement, or recoupment of any kind, in any manner, directly or indirectly, against any obligation due to any Protected Party or Limited Protected Party or any property or interest in property of any Protected Party or Limited Protected Party; or

(v)    taking any act in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents or the Settlement Trust Documents or with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Settlement Trust, except in conformity and compliance with the Settlement Trust Documents with respect to any such Abuse Claim or Post-1975 Chartered Organization Abuse Claim.

Reservations.  Notwithstanding anything to the contrary in Article X.F of the Plan, the Channeling Injunction shall not enjoin:

(i)    the rights of holders of Abuse Claims or Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims solely against the Settlement Trust in accordance with the Trust Distribution Procedures, including the ability to pursue the Settlement Trust in the tort system as described in Article XII of the Trust Distribution Procedures;

(ii)    the rights of holders of Abuse Claims to assert such Abuse Claims against anyone other than a Protected Party or, in the case of Post-1975 Chartered Organization Abuse Claims, against anyone other than a Limited Protected Party;

(iii)    prior to the date that an Entity (other than an Insurance Company) becomes a Protected Party under Article IV.I of the Plan, the right of holders of Abuse Claims to assert such Abuse Claims against such Entity;

(iv)    prior to the date that a Chartered Organization becomes a Limited Protected Party under Article IV.J of the Plan, the right of holders of Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against such Entity;

(v)     the rights of holders of Abuse Claims that are not Post-1975 Chartered Organization Abuse Claims to assert such Abuse Claims against any Limited Protected Party (unless such Limited Protected Party becomes a Protected Party under **Article IV.J** of the Plan);

(vi)     the right of any Person to assert any Claim, debt, obligation or liability for payment of Settlement Trust Expenses solely against the Settlement Trust in accordance with the Settlement Trust Documents;

(vii)     the Settlement Trust from enforcing its rights under the Plan and the Settlement Trust Documents; or

(viii)     the rights of the Settlement Trust to prosecute any action against any Non-Settling Insurance Company based on or arising from Abuse Insurance Policies that are not the subject of an Insurance Settlement Agreement, subject to any Insurance Coverage Defenses.

h.     **Exculpation**.

From and after the Effective Date, none of the Exculpated Parties[11] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

i.     **Injunctions Related to Releases and Exculpation**.

**Injunction Related to Releases**.  As of the Effective Date, all holders of Claims that are the subject of **Article X.J** of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and

---

[11] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11 Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under __Article X.E__ of the Plan or released under __Article X.J__ of the Plan; provided, however, that the injunctions set forth in __Article X.L.1__ of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of __Article X.J__ of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

__Injunction Related to Exculpation__. As of the Effective Date, all holders of Claims that are the subject of __Article X.K__ of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under __Article X.E__ of the Plan or released under __Article X.J__ of the Plan; provided, however, that the injunctions set forth in __Article X.L.2__ of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of __Article X.K__ of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

PLEASE BE ADVISED THAT IF YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN __ARTICLE X.J.4__ OF THE PLAN UNLESS YOU TIMELY FILE AN OBJECTION TO THE PLAN.

PLEASE ALSO BE ADVISED THAT IF YOUR CLAIM IS IMPAIRED AND YOU ARE ELIGIBLE TO VOTE TO ACCEPT OR REJECT THE PLAN AND YOU VOTE TO ACCEPT OR ACCEPT THE PLAN, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN __ARTICLE X.J.4__ OF THE PLAN UNLESS YOU TIMELY OPT OUT OF THE RELEASES IN __ARTICLE X.J.4__ OF THE PLAN ON YOUR BALLOT.

12.     If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE.  PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

<u>**Exhibit 4**</u>

## Form of Publication Notice

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: [December 9], 2021, at 10:00 a.m. (ET)** |
| | **Objection Deadline [November 23], 2021 at 4:00 p.m. (ET)** |

## NOTICE OF (I) DEADLINE FOR CASTING VOTES TO ACCEPT OR REJECT PROPOSED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION, (II) HEARING TO CONSIDER CONFIRMATION OF PROPOSED FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, AND (III) RELATED MATTERS

**PLEASE TAKE NOTICE THAT** on [●], 2021, the above-captioned debtors and debtors-in-possession (together, the "Debtors") filed:

- the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] and

- the *Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement").

The Plan contains releases of the Debtors and certain third parties and related injunction provisions. These provisions could release and prohibit holders of Abuse Claims from filing lawsuits and asserting such claims against the BSA and certain non-debtor third parties, including Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered Organization Abuse Claims. Chartered Organizations are organizations that sponsored a Scouting unit, such as a troop or pack. The Plan provides a mechanism by which Abuse Claims against the BSA and certain-debtor third parties, including the Local Councils, Contributing Chartered Organizations, including TCJC, Settling Insurance Companies, including Hartford, and Participating Chartered Organizations, solely with respect to Post-1975 Chartered

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

Organization Abuse Claims, will be channeled to a trust established pursuant to section 105(a) of the Bankruptcy Code. Confirmation of the Plan is supported by the Debtors, the Future Claimants' Representative, the Creditors' Committee, the Coalition, and the Ad Hoc Committee of Local Councils. You should carefully review the Plan and the applicable release, injunction, and related provisions at https://omniagentsolutions.com/BSA.

**PLEASE TAKE FURTHER NOTICE THAT:**

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order [D.I. [●]] (the "<u>Solicitation Procedures Order</u>") approving the Disclosure Statement. The Solicitation Procedures Order, among other things, authorizes the Debtors to solicit votes to accept or reject the Plan and establishes procedures related thereto (the "<u>Solicitation Procedures</u>").

2.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "<u>Confirmation Hearing</u>"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time). The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.

3.      Pursuant to the Solicitation Procedures Order, the Bankruptcy Court approved the Solicitation Procedures, which are attached to the Solicitation Procedures Order as <u>Exhibit 1</u>. Holders of Claims in Class 3A (2010 Credit Facility Claims), Class 3B (2019 RCF Claims), Class 4A (2010 Bond Claims), Class 4B (2012 Bond Claims), Class 5 (Convenience Claims), Class 6 (General Unsecured Claims), Class 7 (Non-Abuse Litigation Claims), Class 8 (Direct Abuse Claims), and Class 9 (Indirect Abuse Claims) (collectively, the "<u>Voting Classes</u>") are entitled to receive a ballot for casting a vote on the Plan (a "<u>Ballot</u>"). Holders of Claims and Interests in all other Classes under the Plan are presumed to accept or are deemed to reject the Plan. For a vote to accept or reject the Plan to be counted, a Ballot must be completed and returned in accordance with the instructions provided on the **Ballot so that it is received by [November 16], 2021 at 4:00 p.m. (Eastern Time)** (the "<u>Voting Deadline</u>").

4.      Pursuant to the Plan, holders of Claims in the Voting Classes are entitled to vote on account of their respective Claims. If you have not received a Ballot and are entitled to vote on the Plan, you may request a Ballot and voting instructions from Omni Agent Solutions (the "<u>Solicitation Agent</u>"), by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA, and submit your Ballot as set forth above so that it is received by the Voting Deadline.

5.      Pursuant to the Solicitation Procedures, all Direct and Indirect Abuse Claims in Class 8 and Class 9 of the Plan will be temporarily allowed in the amount of $1.00 in the aggregate per claimant or as otherwise ordered by the Bankruptcy Court, solely for purposes of voting to

accept or reject the Plan and not for any other purpose.  If you have filed a Proof of Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim") and seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **[October 19], 2021**.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **[November 16], 2021** or as otherwise ordered by the Bankruptcy Court.

6. **The Plan proposes certain releases and injunctions in furtherance of the Plan. The Plan proposes a Channeling Injunction that permanently channels all Abuse Claims against the Debtors and the Protected Parties and Limited Protected Parties to a Settlement Trust established pursuant to section 105(a) of the Bankruptcy Code.  In addition, the Plan proposes an injunction that permanently enjoins the pursuit of any claim against or interest in the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property to the extent such claim or interest has been discharged, released, waived, settled, or deemed satisfied in accordance with the Plan (other than the enforcement of any right pursuant to the Plan).  For the specific terms and conditions of all the releases and injunctions provided for in the Plan, and the precise scope of the Claims and Demands to be channeled, please refer to the specific terms of the Plan, which can be obtained as described below.**

7. If the Plan is approved by the Bankruptcy Court, all current and future holders of Abuse Claims against the Debtors can request and receive money only from the Settlement Trust. You should read the Plan and Disclosure Statement carefully for details about how the Plan, if approved, will affect your rights.

8. The Bankruptcy Court has issued the Solicitation Procedures Order describing how to vote on the Plan, and the Disclosure Statement contains information that will help you decide how to vote.  Your legal rights will be affected if the Plan is approved.

9. Under the Solicitation Procedures approved by the Bankruptcy Court, attorneys for holders of Direct Abuse Claims may vote on the Plan on behalf of their clients, if authorized by each client.  If you are unsure whether your attorney is authorized to vote on your behalf, please contact your attorney.

10. If you would like to object to the Plan, you may do so by filing your objection no later than **[November 23], 2021 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties below (the "Notice Parties") on or before the Plan Objection Deadline, which service may be through the

CM/ECF system, with courtesy copies by email on the parties listed in the *Notice of Hearing to Consider Confirmation of Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, attached as <u>Exhibit 3</u> to the Solicitation Procedures Order and available at https://omniagentsolutions.com/BSA.

<div style="border:1px solid black; padding:8px;">

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PROVIDED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

</div>

  If you would like to review the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan free of charge, you may obtain these documents from the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
  mlinder@whitecase.com
  laura.baccash@whitecase.com
  blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
  aremming@morrisnichols.com
  ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## <u>Exhibit 5</u>

## Form of Non-Voting Status Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF UNCLASSIFIED
CLAIMS AND HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY
PRESUMED TO ACCEPT THE FIFTH AMENDED CHAPTER 11 PLAN OF
REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

**To:     All Holders of Unclassified Claims and Claims in Classes 1 and 2**

---

**IMPORTANT NOTICE REGARDING RELEASES**

**HOLDERS OF CLAIMS IN CLASSES 1 AND 2**

**AS THE HOLDER OF A CLAIM THAT IS UNIMPAIRED UNDER THE PLAN, YOU
ARE PRESUMED TO ACCEPT THE PLAN.  YOU ARE ALSO CONCLUSIVELY
PRESUMED TO GRANT THE "RELEASES BY HOLDERS OF CLAIMS" (SET FORTH
BELOW AND IN <u>ARTICLE X.J.4</u> OF THE PLAN) UNLESS YOU TIMELY FILE AN
OBJECTION TO THE PLAN IN ACCORDANCE WITH THE PROCEDURES BELOW.**

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS
AND PRIORITY TAX CLAIMS**

**YOUR CLAIM IS UNCLASSIFIED UNDER THE PLAN AND YOU ARE NOT
ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

---

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

**APPROVAL OF DISCLOSURE STATEMENT**

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the
"<u>Bankruptcy Court</u>") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the
"<u>Solicitation Procedures Order</u>"): (a) approving the *Amended Disclosure Statement for the Fifth*

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification
number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing
address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

*Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

## ENTITLEMENT TO VOTE ON PLAN

2.    You are receiving this notice because you are the holder of a Claim(s) in Class 1 (Other Priority Claims) and/or Class 2 (Other Secured Claims) under the Plan (the "Unimpaired Non-Voting Classes"), or you are a holder of an Administrative Expense Claim or Priority Tax Claim, which are unclassified under the Plan (together, the "Unclassified Claims"). Pursuant to the terms of Article III of the Plan, holders of Claims in Classes 1 and 2 are Unimpaired and therefore, pursuant to section 1126(f) of the Bankruptcy Code, **you are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan**. Accordingly, this notice is being sent to you for informational purposes only. Pursuant to the terms of Article II of the Plan, holders of Unclassified Claims are not entitled to vote on the Plan and will not be deemed to release the Released Parties under Article X.J.4 of the Plan. Holders of Claims in the Unimpaired Non-Voting Classes will be deemed to release the Released Parties from any all Claims and causes of action to the extent provided in Article X.J.4 of the Plan, unless such parties timely file an objection to the release no later than the Plan Objection Deadline (as defined below) in accordance with the procedures set forth below.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF PLAN

3.    The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time). The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing,

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

4.  Notwithstanding the fact that you are not entitled to vote to accept or reject the Plan you nevertheless may be a party in interest in these Chapter 11 Cases and you, therefore, may be entitled to participate in these Chapter 11 Cases, including by filing objections to confirmation of the Plan.  If you would like to object to the Plan, you may do so by filing your objection no later than **[November 23], 2021 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually</u> <u>received</u> by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)  counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)  the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)  counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)  counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)  counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)     counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

---

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

---

### SUMMARY OF PLAN TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.     The Plan proposes to modify the rights of certain creditors of the Debtors. The classification of Claims and Equity Interests under the Plan is described generally below.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept; Not Entitled to Vote |
| 3A | 2010 Credit Facility Claims | Impaired | Entitled to Vote |
| 3B | 2019 RCF Claims | Impaired | Entitled to Vote |
| 4A | 2010 Bond Claims | Impaired | Entitled to Vote |
| 4B | 2012 Bond Claims | Impaired | Entitled to Vote |
| 5 | Convenience Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Non-Abuse Litigation Claims | Impaired | Entitled to Vote |
| 8 | Direct Abuse Claims | Impaired | Entitled to Vote |
| 9 | Indirect Abuse Claims | Impaired | Entitled to Vote |
| 10 | Interests in Delaware BSA | Impaired | Deemed to Reject; Not Entitled to Vote |

### RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

6.     Pursuant to Article X of the Plan, the Debtors are seeking approval of certain release, injunction, and exculpation provisions, which will become effective if the Plan is approved and described in Article VI.Q of the Disclosure Statement.  **If you hold a Claim in one of the Unimpaired Classes, you will be presumed to accept the Plan and grant the Releases by holders of Claims set forth below and in Article X.J.4 of the Plan, unless you object to the release before the Plan Objection Deadline.**  Such provisions include the following:

**a.     Discharge Injunction.  From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized**

BSA, the Settlement Trust, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized BSA, the Settlement Trust, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors of the Debtors (including Reorganized BSA) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtors pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent such judgment relates to a discharged Claim or Interest.

        **b.**    <u>**Releases by Holders of Claims**</u>**. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties[3] to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, and except as otherwise expressly provided in the Plan or the Confirmation Order, to the maximum extent permitted under applicable law, as such law may be extended subsequent to the Effective Date, all Releasing Claim Holders[4] shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent,**

---

[3]    "<u>Released Parties</u>" means, collectively, the following Persons, in each case in its or their respective capacities as such: (a) the Debtors; (b) Reorganized BSA; (c) the Related Non-Debtor Entities; (d) the Creditors' Committee; (e) the members of the Creditors' Committee in their capacities as such; (f) the Tort Claimants' Committee; (g) the members of the Tort Claimants' Committee in their capacities as such; (h) the Future Claimants' Representative; (i) the Coalition; (j) JPM; (k) the Settling Insurance Companies, including Hartford; (l) the Contributing Chartered Organizations, including TCJC; (m) the Foundation, in its capacity as lender under the Foundation Loan Agreement; (n) the Ad Hoc Committee; (o) the members of the Ad Hoc Committee in their capacities as such; (p) the Creditor Representative; (q) the Mediators; and (r) all of such Persons' Representatives; provided, however, that no Perpetrator is or shall be a Released Party; provided further, that the definition of "Released Parties" shall in all instances be subject to <u>Article X.J.</u> of the Plan.

[4]    "<u>Releasing Claim Holder</u>" means, collectively, (a) all holders of Claims that vote to accept the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; (b) all holders of Claims that are presumed to accept the Plan, except for holders of such Claims that file a timely objection to the releases set forth in Article X.J.4 of the Plan; (c) all holders of Claims entitled to vote on the Plan and who vote against the Plan and do not opt out of the releases set forth in Article X.J.4 of the Plan; and (d) all of such Persons' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and all such Persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in Article X.J.4 of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; or (c) modify, reduce, impair or otherwise affect the ability of any holder of an Allowed Non-Abuse Litigation Claim to recover on account of such Allowed Claim in accordance with Article III.B.9 of the Plan. Notwithstanding the foregoing or anything to the contrary herein, (i) with respect to holders of Allowed General Unsecured Claims or Allowed Non-Abuse Litigation Claims, nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action against any Local Council, Chartered Organization, or Non-Settling Insurance Company (subject to Article IV.D.3 of the Plan) and (ii) nothing in the Plan or the release set forth in Article X.J.4 of the Plan shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date.

a. Releases by the Debtors and the Estates.

Releases by the Debtors and the Estates of the Released Parties. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties to facilitate and implement the reorganization of the Debtors and the settlements embodied in the Plan, including the Abuse Claims Settlement, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, and the TCJC Settlement, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all of the Released Parties of and from any and all Estate Causes of Action that do not constitute Settlement Trust Causes of

Action, any and all other Claims, Interests, obligations, rights, demands, suits, judgments, damages, debts, remedies, losses and liabilities of any nature whatsoever (including any derivative claims or Causes of Action asserted or that may be asserted on behalf of the Debtors, Reorganized BSA, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, contract, tort or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to the Debtors, the Estates, their respective assets and properties, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtors and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Cases, any of the Plan Documents, the JPM / Creditors' Committee Settlement, the Hartford Insurance Settlement, the TCJC Settlement, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Cases or the negotiation, formulation, preparation or implementation thereof, the pursuit of Confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the Distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article X.J.1</u> of the Plan shall not, and shall not be construed to: (a) release any Released Party from Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct; or (b) release any post-Effective Date obligations of any Person under the Plan Documents or any document, instrument, or agreement executed to implement the Plan.

<u>Releases by the Debtors and the Estates of Certain Avoidance Actions</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of Creditors' Committee and its members in their respective capacities as such in facilitating and implementing the reorganization of the Debtors, as an integral component of the Plan, the Debtors, Reorganized BSA, and the Estates shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each and all holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims of and from any and all Avoidance Actions.

b.      <u>Exculpation</u>.

From and after the Effective Date, none of the Exculpated Parties[5] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission,

---

[5]     "<u>Exculpated Parties</u>" means, collectively, the following Persons: (a) the Debtors; (b) Reorganized BSA; (c) the Creditors' Committee; (d) the members of the Creditors' Committee in their capacities as such; (e) the Tort Claimants' Committee; (f) the members of the Tort Claimants' Committee in their capacities as such; (g) the Future Claimants' Representative; (h) the Creditor Representative; and (i) all of such Persons' current officers and directors, former officers and directors who served in such capacity during the pendency of the Chapter 11

transaction, event, or other circumstance occurring on or before the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases, the negotiation of the Plan Documents, the JPM/Creditors' Committee Settlement, the Hartford Insurance Settlement Agreement, the TCJC Settlement Agreement, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtors (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith or willful misconduct). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence. Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley shall not be an Exculpated Party with respect to any claims that Century Indemnity Company asserts against Sidley related to Sidley's representation of the Debtors prior to the Petition Date.

    c.  <u>Injunctions Related to Releases and Exculpation</u>.

    <u>Injunction Related to Releases</u>. As of the Effective Date, all holders of Claims that are the subject of <u>Article X.J</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property or successors or assigns on account of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Article X.E</u> of the Plan or released under <u>Article X.J</u> of the Plan; provided, however, that the injunctions set forth in <u>Article X.L.1</u> of the Plan shall not, and shall not be construed to, enjoin any holder of a Claim that is the subject of <u>Article X.J</u> of the Plan from taking any action arising out of, or related to, any act or omission of a Released Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

    <u>Injunction Related to Exculpation</u>. As of the Effective Date, all holders of Claims that are the subject of <u>Article X.K</u> of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any

_____

Cases but are no longer officers or directors as of the Effective Date, employees, volunteers, agents, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, and other professionals.

prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under **Article X.E** of the Plan or released under **Article X.J** of the Plan; provided, however, that the injunctions set forth in **Article X.L.2** of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of **Article X.K** of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.

## COPIES OF PLAN AND DISCLOSURE STATEMENT

7.      If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the Solicitation Agent"), by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

<u>**Exhibit 6**</u>

**Form of Disputed Claim Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

## NOTICE OF NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIMS

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

2.    You are receiving this notice enclosed with your Solicitation Package because your Claim(s) against the Debtors is subject to a pending objection by the Debtors, other than a "reclassify" or "reduce and allow" objection, that was filed with the Bankruptcy Court by the Solicitation Date (a "Disputed Claim"), and therefore, pursuant to the Solicitation Procedures Order and sections 502(a) and 1126(a) of the Bankruptcy Code, **you are not entitled to have your vote to accept or reject the Plan counted on account of your Claim unless one of the following Resolution Events (as defined in the Solicitation Procedures) occurs on or before the Voting Resolution Event Deadline of [November 16], 2021, or as otherwise ordered by the Bankruptcy Court:**

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

(i)     An order of the Bankruptcy Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(ii)    entry of an order of the Bankruptcy Court, after notice and a hearing, granting a Rule 3018(a) Motion and temporarily allowing such Claim for voting purposes in accordance with Section III.C.4 of the Solicitation Procedures;

(iii)   a stipulation or other agreement is executed between the holder of a Disputed Claim and the Debtors (a) resolving the objection and allowing such Claim for voting purposes in an agreed-upon amount or (b) otherwise fixing an amount of the Claim for voting purposes; or

(iv)    the pending objection is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

3.      If you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion").  Any Rule 3018(a) Motion must be filed with the Bankruptcy Court and served on the Debtors on or before **[October 19], 2021**.  If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim prior to **[November 16], 2021**, or as otherwise ordered by the Bankruptcy Court.  The Ballot must be returned to the Solicitation Agent no later than the Voting Deadline, which is on **[November 16], 2021 at 4:00 p.m. (Eastern Time)**.

4.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time).  The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801.  **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.**  If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

5.      If you would like to object to the Plan, you may do so by filing your objection no later than **[November 23], 2021 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include

any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be <u>actually</u> <u>received</u> by the parties below on or before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a) counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McCollum (hannah.mccollum@usdoj.gov));

(c) counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e) counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f) counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

6.     If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the Solicitation Agent") by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE.  IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

## Exhibit 7

## Form of Cover Letter

[●], 2021

**Re:**   ***In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS), Chapter 11 Bankruptcy**

**To All Holders of Claims Entitled to Vote on the Plan:**

On February 18, 2020, the Boy Scouts of America and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors filed the Chapter 11 Cases in order to address the significant potential liabilities arising from Claims related to alleged historical acts of Abuse in the BSA's programs.

The BSA cares deeply about all survivors of child abuse. The BSA understands that no apology can repair the damage caused by abuse or take away the pain that survivors have endured. The BSA is steadfast in its commitment to continually improve all of its policies to prevent abuse.

On [●], 2021, the Bankruptcy Court held a hearing at which it approved the *Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]], filed on [●], 2021 (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement") of the Debtors in the above-captioned chapter 11 cases. Thereafter, the Bankruptcy Court entered an order (the "Solicitation Procedures Order") that, among other things, authorizes the Debtors to solicit votes to accept or reject the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. [●]], filed on [●], 2021 (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").[1]

**The Plan is supported by the Coalition of Abused Scouts for Justice, the Future Claimants' Representative, the Creditors' Committee, and the Ad Hoc Committee of Local Councils (the "Supporting Parties"). The BSA and the Supporting Parties all believe that the Plan represents the best possible means to (a) timely and equitably compensate survivors of alleged Abuse in Scouting and (b) ensure that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission. The BSA and Supporting Parties believe that the Plan provides the highest and best recovery—and the best outcome—for all creditors and is in the best interests of the Debtors' estates. Therefore, the BSA and the Supporting Parties urge eligible creditors to vote to accept the Plan.**

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

You are receiving this letter and the accompanying materials because you may be entitled to vote on the Plan. The following materials constitute the "Solicitation Package" which, in addition to this letter, is comprised of:

(a)     the Disclosure Statement with all exhibits thereto, including the Plan and all of its exhibits and schedules (to the extent such exhibits and schedules are filed with the Bankruptcy Court before the Solicitation Date) (to be accessed electronically, as described below);

(b)     the Solicitation Procedures Order (to be accessed electronically, as described below);

(c)     the Confirmation Hearing Notice;

(d)     an appropriate ballot with detailed voting instructions, including instructions for voting online via the electronic ballot submission platform (the "E-Ballot Platform") on the website of Omni Agent Solutions, the Debtors' claims, noticing, and solicitation agent in these chapter 11 cases (the "Solicitation Agent"), and return instructions or a return envelope with postage, if applicable;

(e)     a letter from any official committee or the Coalition, substantially in the form filed in these Chapter 11 Cases before the Disclosure Statement Hearing (and as may be modified, amended, or supplemented from time to time); and

(f)     any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

---

### ACCESS TO PLAN AND DISCLOSURE STATEMENT

**IMPORTANT**: You may access the Plan, the Disclosure Statement, and the Solicitation Procedures Order free of charge at https://omniagentsolutions.com/bsa-SAballots (Direct Abuse Claims) or https://omniagentsolutions.com/bsa-ballots (all other Claims). You may also obtain copies of any of the other Solicitation Package materials free of charge at these websites. If you would prefer to receive paper copies or documents on a USB drive, please contact the Solicitation Agent (contact details below), you may make such a request by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

---

**If you are receiving this letter by email, you indicated on your proof of claim form that email communication is an acceptable method for communications regarding your Claim. If you would prefer to receive this Ballot and all Solicitation Package materials by mail instead, you may contact the Solicitation Agent via the contact information set forth below to receive a mailed copy of your Solicitation Package.**

The comprehensive restructuring of the Debtors proposed in the Plan is the product of agreement reached between the BSA, the Supporting Parties, JPM (the Debtors' senior secured lender), Hartford, and The Church of Jesus Christ of Latter-day Saints ("TCJC"), which provides the framework for global resolution of Abuse Claims against the Debtors, Related Non-Debtor Entities, and Local Councils, as well as any other Contributing Chartered Organizations, Participating Chartered Organizations, and Settling Insurance Companies that may sign on, in exchange for contributions by such parties to the Settlement Trust for the benefit of survivors of Abuse (collectively, "Abuse Survivors"). The Plan has been designed to maximize and expedite recoveries to Abuse Survivors, resulting in substantial recovery, as set forth in the recovery chart in the Disclosure Statement. The Debtors and the Supporting Parties strongly encourage all holders of Claims in the Voting Classes, including Direct Abuse Claims, to vote in favor of the Plan.

The Plan, which incorporates a revised settlement with Hartford for $787 million and a settlement with TCJC for $250 million, as well as the JPM / Creditors' Committee Settlement, provides for a mechanism to channel to the Settlement Trust all Abuse Claims asserted against the Debtors and certain non-debtor third parties, including the Local Councils, Participating Chartered Organizations, as well as Contributing Chartered Organizations (including TCJC) and Settling Insurance Companies (including Hartford) that make contributions to the Settlement Trust for the benefit of Abuse Survivors. If the Plan is approved, the Settlement Trust will exclusively administer and resolve the Abuse Claims. In exchange for channeling all Abuse Claims to the Settlement Trust, as outlined in the Disclosure Statement, the BSA will make a substantial contribution to the Settlement Trust of approximately $220 million. The BSA will also assign and transfer to the Settlement Trust all of its insurance rights under the BSA's insurance policies, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

Additionally, Local Councils will make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction, consisting of (a) $500 million, comprised of at least $300 million in Cash with the balance in property, exclusive of insurance rights, (b) the DST Note, a $100 million interest-bearing variable-payment obligation note issued by a Delaware statutory trust on or as soon as practicable after the Effective Date, and (c) the assignment and transfer to the Settlement Trust all insurance rights under Local Council insurance policies, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims.

The Plan also provides a mechanism by which other Chartered Organizations can become Participating Chartered Organizations (unless they elect not to or are chapter 11 debtors) through the assignment and transfer to the Settlement Trust of all of their post-1975 insurance rights under BSA and Local Council policies that provide coverage for Abuse Claims in exchange for inclusion as a Limited Protected Party under the Plan, resulting in the potential for substantial insurance recoveries for holders of Abuse Claims. Insurance Companies may also make substantial contributions and Chartered Organizations may also make further substantial contributions to the Settlement Trust in exchange for becoming Protected Parties under the Plan and receiving the benefits of the Channeling Injunction.

Additionally, the Plan also provides for the BSA's assumption of its prepetition Pension Plan and specifies the treatment of holders of Allowed Convenience Claims, Allowed General Unsecured Claims and Allowed Non-Abuse Litigation Claims, resulting in substantial recovery, as set forth in the recovery chart in the Disclosure Statement. The treatment of all classes of Claims entitled to vote is described more fully in the Plan and the Disclosure Statement.

The Debtors and the Supporting Parties support confirmation of the Plan and urge all claimants to vote in favor of the Plan. The Debtors and the Supporting Parties believe that the Plan will offer the highest and best recovery for all creditors and that the Plan will provide more certain recoveries to survivors of Abuse and other creditors than any other alternative. The Debtors and the Supporting Parties also believe that the Plan will provide those recoveries more quickly than would any alternative, including by avoiding time-consuming and costly litigation.

<div style="border:1px solid black; padding:10px;">

**To Chartered Organizations that Hold Indirect Abuse Claims Under the Plan:** Thank you for your support of the Scouting movement. Millions of young men and women have passed through your doors, and our joint mission to serve them has helped countless youth become prepared for life. Your support for the BSA's Plan is essential for the mission of Scouting, and the success of the BSA's bankruptcy case depends your support for the Chartered Organization settlement framework set forth in the Plan. The BSA urges you to support the survival and continuation of Scouting by voting your Indirect Abuse Claim in favor of the Plan.

</div>

**Please read the Plan carefully. In particular, please review the injunction, release, and exculpation provisions provided in <u>Article X</u> of the Plan. If you vote to accept or reject the Plan, you will be releasing the Released Parties from any and all Claims/Causes of Action to the extent provided in <u>Article X.J.4</u> of the Plan unless you "opt-out" of such releases. If you decide to opt out of the release in <u>Article X.J.4</u> of the Plan, please do so by checking the appropriate box on your ballot.**

The enclosed Plan constitutes a good-faith compromise and settlement of all Claims and controversies based upon the unique circumstances of these chapter 11 cases, and will provide the maximum recovery for creditors. The Debtors and Supporting Parties believe that the acceptance of the Plan by holders of Claims entitled to vote to accept or reject the Plan is in the best interests of holders of Claims against the Debtors. Moreover, the Debtors and Supporting Parties believe that any alternative other than Confirmation of the Plan may result in, among other risks, delays and increased administrative expenses, and diminished distributions on account of Allowed Claims.

<div style="border:1px solid black; padding:10px; text-align:center;">

**THE DEBTORS AND SUPPORTING PARTIES STRONGLY URGE YOU TO TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT.**

**THE VOTING DEADLINE IS [NOVEMBER 16], 2021 AT 4:00 P.M. (EASTERN TIME).**

</div>

Therefore, the Debtors and Supporting Parties recommend that all persons entitled to vote on the Plan vote to accept the Plan and submit a timely ballot. Instructions for casting your vote on the Plan are provided on your ballot. You are highly encouraged to submit your ballot online

via the E-Ballot Platform on the Solicitation Agent's website.  In order to have your vote to accept or reject the Plan counted, your Ballot must **actually be received** by the Solicitation Agent on or before **[November 16], 2021 at 4:00 p.m. (Eastern Time)**.

If you would like electronic copies of any of the materials enclosed herein, or any other filings in the Debtors' chapter 11 cases, they can be accessed at the Debtors' restructuring website free of charge at https://omniagentsolutions.com/BSA.

If you have any questions, or need to obtain additional solicitation materials, you may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/bsa.  Please note that the Solicitation Agent is not authorized to, and will not, provide legal advice to you.  If you need legal advice, please consult with your attorney.

Sincerely,

*Boy Scouts of America and Delaware BSA, LLC*

## Exhibit 8

## Form of Plan Supplement Notice

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING OF PLAN SUPPLEMENT TO
FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION
FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC,* together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time (the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan (the "Solicitation Procedures"); and (d) approving the manner and forms of notice and other related documents as they relate to the Debtors.

2.      As contemplated by the Plan, the Disclosure Statement, and the Solicitation Procedures Order, the Debtors filed a Plan Supplement with the Bankruptcy Court on [November 2 ], 2021 [D.I. [●]].  The Plan Supplement includes the following documents in connection with confirmation of the Plan (each as defined in the Plan), as may be amended, modified, or supplemented from time to time: (a) the Amended BSA Bylaws; (b) the Assumed Contracts and Unexpired Leases Schedule; (c) the form of the BSA Settlement Trust Note; (d) the form of the Document Agreement; (e) the form of the DST Agreement; (f) the form of the DST Note; (g) the name of the Creditor Representative; (h) changes, if any, to Reorganized BSA's directors and officers; (i) the form of the Foundation Loan Agreement; (j) the form of agreement reflecting the terms of the Leaseback Requirement; (k) the Rejected Contracts and Unexpired Leases Schedule;

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in in the Plan, the Disclosure Statement, or the Solicitation Procedures (defined as below), as applicable.

(l) the forms of the Restated 2010 Bond Documents; (m) the forms of the Restated 2012 Bond Documents; (n) the form of the Restated Credit Facility Documents; (o) the form of the Restated Security Agreement; (p) the names of the initial members of the Settlement Trust Advisory Committee; and (q) the name of the initial Special Reviewer; provided that the Plan Documents listed in clauses (b) and (k) of the foregoing sentence will be revised, in the Debtors' discretion, subject to Article VI of the Plan, to account for any additional Executory Contracts or Unexpired Leases to be assumed or rejected in advance of the Confirmation Hearing. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002, and any party in interest who requests in writing a copy from counsel to the Debtors. Once the Plan Supplement is filed, a copy will also be available for review on Omni Agent Solutions' website (the "Solicitation Agent") free of charge at https://omniagentsolutions.com/BSA.

3.        The Plan Supplement is integral to, part of and incorporated by reference into the Plan. The documents included in the Plan Supplement have not yet been approved by the Bankruptcy Court and may be amended, modified or supplemented from time to time. If the Plan is confirmed by the Bankruptcy Court, the documents contained in this Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

4.        The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time). The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is filed with the Bankruptcy Court.** If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

5.        If you would like to object to the Plan, you may do so by filing your objection no later than **[November 23], 2021 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"). Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received the parties below before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a)        counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)),

and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)     the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)     counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)     counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)     counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)     counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

> **OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

6.     The Debtors reserve all rights to amend, modify or supplement the Plan Supplement, and any of the exhibits included therein, in accordance with the terms of the Plan. To the extent material amendments or modifications are made to any of these exhibits, the Debtors will file amended versions of such exhibits with the Bankruptcy Court prior to the Confirmation Hearing.

7.     If you have questions about anything stated herein, you may contact the Solicitation Agent by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni

Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.

**ARTICLE X** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE X.J.4** OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

<div align="center">

## <u>Exhibit 9</u>

## Form of Cure and Assumption Notice

</div>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES
TO BE ASSUMED BY THE DEBTORS PURSUANT TO THE FIFTH AMENDED
CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA
AND DELAWARE BSA, LLC, (II) CURE AMOUNTS, IF ANY, AND
(III) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

2. On or before [November 2], 2021, the Debtors intend to file the Assumed Executory Contracts and Unexpired Leases Schedule with the Bankruptcy Court as part of the Plan Supplement contemplated under the Plan. The determination to assume the agreements identified on the Assumed Executory Contracts and Unexpired Leases Schedule is subject to revision.

3. You are receiving this notice because the Debtors' records reflect that you are a party to a contract or lease that is or will be listed on the Assumed Executory Contracts and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

Unexpired Leases Schedule. Therefore, you are advised to review carefully the information contained in this Cure and Assumption Notice and the related provisions of the Plan. The Debtors are proposing to assume the Executory Contract(s) and Unexpired Lease(s) listed on **Exhibit A**, attached hereto, to which you are a party.[3]

4.       Section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Exhibit A**, attached hereto.    Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

5.       Absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified in **Exhibit A**, attached hereto, will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors' payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtors' or Reorganized BSA's non-profit operations.  In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption. **Any objection by a non-Debtor Executory Contract or Unexpired Lease counterparty to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance proposed for its Executory Contract or Unexpired Lease, must be filed, served, and actually received by the Debtors no later than [November 23], 2021 at 4:00 p.m. (Eastern Time), which is the deadline for filing objections to the Plan (the "Plan Objection Deadline"), or such later date as may be provided in the applicable Cure and Assumption Notice; provided that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtors later determine to assume or (b) as to which the Debtors modify the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtors serve such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing.** Any objection to the assumption of an Executory Contract or Unexpired Lease **must**: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received by the parties

---

[3]    Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on a Cure and Assumption Notice or the Assumed Contracts and Unexpired Leases Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Post-Effective Date Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Assumed Contracts and Unexpired Leases Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) dispute any Claim (or cure amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

below before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

(a) counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)), and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McCollum (hannah.mccollum@usdoj.gov));

(c) counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e) counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f) counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

---

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

---

6. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtors' assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that

differs from the amounts paid or proposed to be paid by the Debtors or Reorganized BSA, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court. Reorganized BSA may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.

7.      The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time). The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, in the United States Bankruptcy Court for the District of Delaware, located at 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801.

8.      **Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in <u>Article VI.C</u> of the Plan, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, in each case without the need for any objection by the Debtors or Reorganized BSA or any further notice to or action, order, or approval of the Bankruptcy Court.**

9.      If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the "Solicitation Agent") by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**<u>ARTICLE X</u> OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND <u>ARTICLE X.J.4</u> OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO**

---

OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION
AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE.  PLEASE NOTE THAT
THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED
LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.

Dated: [●], 2021

| | |
|---|---|
| WHITE & CASE LLP<br>Jessica C. Lauria (admitted *pro hac vice*)<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone:  (212) 819-8200<br>Email:  jessica.lauria@whitecase.com | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>Derek C. Abbott (No. 3376)<br>Andrew R. Remming (No. 5120)<br>Paige N. Topper (No. 6470)<br>1201 North Market Street, 16th Floor<br>P.O. Box 1347<br>Wilmington, Delaware 19899-1347<br>Telephone:  (302) 658-9200<br>Email:  dabbott@morrisnichols.com |

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com

(Email continued from right column above:)
aremming@morrisnichols.com
ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

**Exhibit A**

| Counterparty Name | Description of Executory Contract or Unexpired Lease | Amount Required to Cure Default Thereunder, If Any |
|---|---|---|
|  |  |  |

## Exhibit 10

## Form of Rejection Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |

**NOTICE REGARDING EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE REJECTED BY THE DEBTORS PURSUANT
TO THE FIFTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION
FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.  On [●], 2021, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order in the above-captioned chapter 11 cases [D.I. [●]] (the "Solicitation Procedures Order"): (a) approving the *Amended Disclosure Statement for the Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"); (b) establishing the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan");[2] (c) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "Solicitation Procedures"); and (d) approving the form and manner of notice and other related documents as they relate to the Debtors.

2.  On [November 2], 2021, the Debtors filed the Rejected Contracts and Unexpired Leases Schedule [D.I. [●]] with the Bankruptcy Court as part of the Plan Supplement, as contemplated under the Plan. The determination to reject the agreements identified on the Rejected Contracts and Unexpired Leases Schedule is subject to revision.

3.  You are receiving this notice because you are a counterparty to an Executory Contract or Unexpired Lease that, as of and subject to the occurrence of the Effective Date, will

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Solicitation Procedures (as defined below), as applicable.

be rejected by the Debtors and that, accordingly, has been specifically listed on **Exhibit A**, attached hereto, to which you are a party.[3]

4.      All Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "Rejection Damages Bar Date").  Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as General Unsecured Claims and subject to the provisions of **Article VII** of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  **Any holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with Article VI.B of the Plan but fails to do so on or before the Rejection Damages Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting or Distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtors, their Estates, Reorganized BSA, or its or their respective property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtors or Reorganized BSA or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.**

5.      If you would like to object to the Plan, you may do so by filing your objection no later than **[November 23], 2021 at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline").  Any objections or responses to confirmation of the Plan, must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the Claim of such party; (c) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (d) be filed with the Bankruptcy Court, 824 North Market Street, Third Floor, Wilmington, Delaware 19801 together with proof of service **on or before the Plan Objection Deadline**, and served so as to be actually received the parties below (the "Notice Parties") before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email:

> (a)      counsel to the Debtors, (i) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: Jessica C. Lauria (jessica.lauria@whitecase.com)),  and 111 South Wacker Drive, Chicago, Illinois 60606 (Attn: Michael C. Andolina (mandolina@whitecase.com), Matthew E. Linder (mlinder@whitecase.com), and Blair Warner (blair.warner@whitecase.com)) and (ii) Morris, Nichols, Arsht & Tunnell

---

[3]      Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on a Rejection Notice or the Rejected Contracts and Unexpired Leases Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of rejection, that any Post-Effective Date Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors expressly reserve the right to (a) remove any Executory Contract or Unexpired Lease from the Rejected Contracts and Unexpired Leases Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date and (b) dispute any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347 (Attn: Derek C. Abbott (dabbott@morrisnichols.com), Andrew R. Remming (aremming@morrisnichols.com), and Paige N. Topper (ptopper@morrisnichols.com));

(b)    the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David L. Buchbinder (david.l.buchbinder@usdoj.gov) and Hannah M. McColllum (hannah.mccollum@usdoj.gov));

(c)    counsel to the Tort Claimants' Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19801 (Attn: James I. Stang (jstang@pszjlaw.com), John A. Morris (jmorris@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and John W. Lucas (jlucas@pszjlaw.com));

(d)    counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer (tmayer@kramerlevin.com), Rachael Ringer (rringer@kramerlevin.com), David E. Blabey, Jr. (dblabey@kramerlevin.com), Jennifer R. Sharret (jsharret@kramerlevin.com), and Megan M. Wasson (mwasson@kramerlevin.com));

(e)    counsel to the Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Robert S. Brady (rbrady@ycst.com), Edwin J. Harron (eharron@ycst.com), and Sharon M. Zieg (szieg@ycst.com)); and

(f)    counsel to JPMorgan Chase Bank National Association, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Dallas, Texas 75201-7932 (Attn: Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com)).

---

**OBJECTIONS NOT TIMELY FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED OVERRULED WITHOUT FURTHER NOTICE.**

---

6.    The Bankruptcy Court has scheduled a hearing to consider whether to confirm the Plan beginning on **[December 9], 2021 at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing"), which shall continue to the extent necessary on [December 10, December 13, December 14, and December 15], 2021 at 10:00 a.m. (Eastern Time). The Confirmation Hearing will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, at the Bankruptcy Court, located at 824 North Market Street, Sixth Floor, Courtroom No. 2, Wilmington, Delaware 19801. **Please be advised that the Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court or the Debtors without further notice other than as indicated in any notice or agenda of matters scheduled for a particular hearing that is**

**filed with the Bankruptcy Court.** If the Confirmation Hearing is continued, the Debtors will post the new date and time of the Confirmation Hearing at https://omniagentsolutions.com/BSA. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to creditors or other parties in interest, unless such notice is required by the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

7.     Any objections to the Plan in connection with the rejection of the Executory Contract(s) and Unexpired Lease(s) identified on **Exhibit A** hereto and/or related rejection damages proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

8.     The Debtors, subject to the terms of the Plan, reserve the right to alter, amend, modify, or supplement any information set forth herein, including to add or delete any Executory Contract or Unexpired Lease, at any time up to and including the Effective Date of the Plan.

9.     If you would like copies of the Plan, the Disclosure Statement, the Solicitation Procedures Order, or other documents related to the Plan, free of charge, you may obtain these documents from Omni Agent Solutions (the <u>Solicitation Agent</u>") by: (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA. You may also access from these materials for a fee via PACER at http://www.deb.uscourts.gov/.

---

**ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE X.J.4 OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE SOLICITATION AGENT VIA ONE OF THE METHODS SPECIFIED ABOVE. PLEASE NOTE THAT THE SOLICITATION AGENT MAY NOT PROVIDE LEGAL ADVICE. IF YOU NEED LEGAL ADVICE, PLEASE CONSULT WITH YOUR ATTORNEY.**

---

*[Remainder of Page Intentionally Left Blank]*

Dated: [●], 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
        mlinder@whitecase.com
        laura.baccash@whitecase.com
        blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
        aremming@morrisnichols.com
        ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

<u>**Exhibit A**</u>

**Rejected Contracts and Unexpired Leases Schedule**

## Exhibit 11

**Abuse Claim Solicitation Notice and Abuse Survivor Plan Solicitation Directive**

THIS NOTICE IS NOT A SOLICITATION FOR CONSENTS TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS. VOTES TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN MAY NOT BE SOLICITED UNLESS AND UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.

TO INCORPORATE YOUR PREFERRED METHOD OF DISTRIBUTION OF THE SOLICITATION PACKAGES, AS AUTHORIZED BY YOUR CLIENTS, THE DEBTORS REQUEST THAT YOU RETURN THE ENCLOSED ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE TO THE SOLICITATION AGENT BY APRIL 23, 2021. THIS DIRECTIVE WILL GUIDE THE DEBTORS IN SOLICITING THE VOTES OF YOUR CLIENTS IN THE FUTURE.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>              Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## NOTICE TO ATTORNEYS REPRESENTING ABUSE SURVIVORS OF (I) PROPOSED PROCEDURES FOR SOLICITING VOTES OF HOLDERS OF DIRECT ABUSE CLAIMS TO ACCEPT OR REJECT THE AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, (II) DATE REQUESTED FOR ATTORNEYS TO SUBMIT ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVES, AND (III) OTHER RELATED DEADLINES

TO:    ALL ATTORNEYS REPRESENTING ABUSE SURVIVORS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

       1.      On February 18, 2020 (the "<u>Petition Date</u>"), the Boy Scouts of America and Delaware BSA, LLC, as non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "<u>Debtors</u>"), filed voluntary petitions for relief

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300); and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

2.  On March 1, 2021, the Debtors filed the *Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2294] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Proposed Disclosure Statement</u>") for the *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2293] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2] Concurrently with the filing of the Disclosure Statement and Plan, the Debtors filed a motion [D.I. 2295] (the "<u>Solicitation Procedures Motion</u>") to (a) approve the Disclosure Statement, (b) establish the Voting Record Date, Voting Deadline, and other related dates in connection with confirmation of the Plan, (c) approve procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan (the "<u>Solicitation Procedures</u>"), which are attached to the proposed order for the Solicitation Procedures Motion as <u>Exhibit 1</u>, (d) approve the form and manner of notice and other related documents as they relate to the Debtors, and (e) grant other related relief.  A hearing to consider approval of the Proposed Disclosure Statement is currently scheduled for **April 29, 2021 at 10:00 a.m. (Eastern Time)** (the "<u>Disclosure Statement Hearing</u>").

3.  The Solicitation Procedures Motion sets forth the proposed notice and voting procedures applicable to you and your clients who may hold Direct Abuse Claims (as defined in the Plan) against the Debtors that are attributable to, arise from, are based upon, relate to, or result from, in whole or in part, directly, indirectly, or derivatively, Abuse[3] that occurred prior to the Petition Date.  The clients you represent who hold Direct Abuse Claims are referred to herein as your "<u>Abuse Survivor Clients</u>."  As to your Abuse Survivor Clients, the Debtors are requesting, in advance of the Disclosure Statement Hearing, certain information regarding your preferred method of distribution of the Solicitation Packages that will contain the ballots and other information relevant to your Abuse Survivor Clients as they decide whether to vote to accept or reject the Plan. To incorporate your preferred method of distribution of the Solicitation Packages, as authorized by your clients on the Sexual Abuse Survivor Proofs of Claim, the Debtors request that you complete and return the enclosed Abuse Survivor Plan Solicitation Directive to the Debtors'

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the *Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors* [D.I. 695], as applicable.

[3]  "<u>Abuse</u>" means sexual conduct or misconduct, sexual abuse or molestation, sexual exploitation, indecent assault or battery, rape, pedophilia, ephebophilia, sexually related psychological or emotional harm, humiliation, anguish, shock, sickness, disease, disability, dysfunction, or intimidation, any other sexual misconduct or injury, contacts or interactions of a sexual nature, including the use of photography, video, or digital media, or other physical abuse or bullying or harassment without regard to whether such physical abuse or bullying is of a sexual nature, between a child and an adult, between a child and another child, or between a non-consenting adult and another adult, in each instance without regard to whether such activity involved explicit force, whether such activity involved genital or other physical contact, and whether there is or was any associated physical, psychological, or emotional harm to the child or non-consenting adult.

solicitation agent, Omni Agent Solutions (the "Solicitation Agent"), (a) by mail at Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367; or (b) by email at BSAballots@omniagnt.com, **so that it is received by the Solicitation Agent no later than April 23, 2021**, which is the Abuse Survivor Plan Solicitation Directive Deadline.[4]

4. As explained in further detail in the attachment, the Abuse Survivor Plan Solicitation Directive provides for you to select your preferred method for the Solicitation Agent to solicit the votes of your Abuse Survivor Clients to accept or reject the Plan from **two (2) different solicitation methods**. While these proposed solicitation methods are designed to streamline and expedite the delivery of information to your Abuse Survivor Clients, increase voter participation, and ensure that holders of Direct Abuse Claims are empowered to make informed and meaningful decisions regarding whether to accept or reject the Plan, each voting decision rests exclusively with each Abuse Survivor Client. Each known attorney representing holders of Direct Abuse Claims (each, a "Firm") is required to comply with applicable rules and receive informed written consent from its Abuse Survivor Clients.

5. The Debtors are also distributing to each Firm an encrypted, password-protected USB drive with an Excel spreadsheet that lists the first and last name, claim number, month and year of birth, last four digits of Social Security Number, mailing address, and email address (if available) of each Firm's Abuse Survivor Clients as compiled by the Debtors, with the assistance of their professionals, based on the Debtors' review of the Sexual Abuse Survivor Proofs of Claim by or on behalf of the holders of Direct Abuse Claims in the Chapter 11 Cases (each, a "Client List"). **Your Firm will receive an email at the email address on file in your Abuse Survivor Clients' Sexual Abuse Survivor Proofs of Claim with the access code for the USB drive. If you do not receive an access code at this email address, please contact the Solicitation Agent at BSAballots@omniagnt.com or 866-907-2721**.

6. The Debtors ask that you confirm the names, addresses, and (if known) email addresses of your Abuse Survivor Clients as set forth on the Client List. Please make any necessary additions, subtractions, or other corrections to the Excel spreadsheet provided, and return the Client List in the same electronic format provided by the Debtors' Solicitation Agent no later than Abuse Survivor Plan Solicitation Directive Deadline (April 23, 2021). To the extent your Firm includes Abuse Survivor Clients who were not originally listed by the Solicitation Agent, you must provide the Solicitation Agent with the Proof of Claim number that corresponds to each such additional Abuse Survivor Client's Direct Abuse Claim. If the Abuse Survivor Client's Sexual Abuse Survivor Proof of Claim does not indicate that communications regarding such claim may be directed to your Firm, you must also provide written verification from the Abuse Survivor Client(s) that he or she has authorized the Firm to receive the Solicitation Package on his or her behalf. If such written verification is not supplied by the Firm, the Solicitation Agent will not count the vote for the Abuse Survivor Client(s) in a Master Ballot submitted by such Firm and those Abuse Survivor Client(s) will be solicited by the Direct Solicitation Method. The Solicitation Agent will endeavor to identify on the Client Lists any conflicting records indicating

---

[4] The Abuse Survivor Plan Solicitation Directive Deadline may be extended in the Debtors' discretion.

that an individual Abuse Survivor Client may be represented by more than one Firm or has filed duplicative Direct Abuse Claims on account of a single claim.

7.     Pursuant to the proposed Solicitation Procedures, if approved by the Bankruptcy Court, the Solicitation Agent will cause a cover letter and an appropriate Ballot to be mailed in accordance with the instructions set forth on the Abuse Survivor Plan Solicitation Directive.  The cover letter will contain instructions to electronically access the proposed Disclosure Statement (as approved by the Bankruptcy Court), the Plan, and various documents related thereto.  Copies of the Disclosure Statement, the Plan, and the Solicitation Procedures Motion are available for review and download free of charge on the website maintained by the Solicitation Agent at https://omniagentsolutions.com/bsa.  Copies of the Disclosure Statement and the Plan are also available upon request by (a) calling the Debtors' toll-free restructuring hotline at 866-907-2721, (b) emailing BSAballots@omniagnt.com, (c) writing to Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (d) submitting an inquiry on the Debtors' restructuring website at https://omniagentsolutions.com/BSA.  You may also access these materials for a fee via PACER at http://www.deb.uscourts.gov/.  Responses and objections to approval of the Disclosure Statement, the proposed Solicitation Procedures and other relief sought by the Debtors in the Solicitation Procedures Motion must be filed in accordance with the procedures set forth in the *Notice of Hearing to Consider Approval of Disclosure Statement and Solicitation Procedures for the Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2298] and served so as to be actually received by the Debtors on or before **April 16, 2021 at 4:00 p.m. (Eastern Time)**.

8.     **If you do not return the Abuse Survivor Plan Solicitation Directive by the Abuse Survivor Plan Solicitation Directive Deadline, or otherwise do not select a solicitation method, the Debtors intend, subject to Bankruptcy Court authorization, to direct the Solicitation Agent to solicit votes to accept or reject the Plan from your Abuse Survivor Clients according to the Direct Solicitation Method described in the proposed Solicitation Procedures and in the enclosed *Abuse Survivor Plan Solicitation Directive*, despite anything to the contrary in the proposed Solicitation Procedures.**  For the avoidance of doubt, the Debtors will request approval from the Bankruptcy Court to solicit the votes of holders of Direct Abuse Claims who are represented by counsel and who do not return the Abuse Survivor Plan Solicitation Directive by the Abuse Survivor Plan Solicitation Directive Deadline via the Direct Solicitation Method, using the communication preferences indicated in such abuse survivors' Sexual Abuse Survivor Proofs of Claim.

9.     If you have questions about completing the Abuse Survivor Plan Solicitation Directive, please contact the Solicitation Agent at BSAballots@omniagnt.com.

Dated: April 5, 2021

WHITE & CASE LLP
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:  jessica.lauria@whitecase.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
         mlinder@whitecase.com
         laura.baccash@whitecase.com
         blair.warner@whitecase.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone:  (302) 658-9200
Email:  dabbott@morrisnichols.com
         aremming@morrisnichols.com
         emoats@morrisnichols.com
         ptopper@morrisnichols.com

*Attorneys for the Debtors and Debtors in Possession*

THIS ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE IS NOT A SOLICITATION FOR CONSENTS TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS. VOTES TO ACCEPT OR REJECT ANY CHAPTER 11 PLAN MAY NOT BE SOLICITED UNLESS AND UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE.

TO INCORPORATE YOUR PREFERRED METHOD OF DISTRIBUTION OF THE SOLICITATION PACKAGES, AS AUTHORIZED BY YOUR CLIENTS, THE DEBTORS REQUEST THAT YOU RETURN THIS ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE TO THE SOLICITATION AGENT BY APRIL 23, 2021. THIS DIRECTIVE WILL GUIDE THE DEBTORS IN SOLICITING THE VOTES OF YOUR CLIENTS IN THE FUTURE.

## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE

I hereby direct that distribution of Solicitation Packages in connection with the *Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 2293] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan"), subject to Bankruptcy Court approval of the proposed Solicitation Procedures, be implemented as follows:

**Box 1 ☐ No Solicitation Required**. I do not represent any Abuse Survivor Clients asserting Direct Abuse Claims against the Debtors. By signing below, I hereby certify and authorize the Solicitation Agent to remove me from the service or distribution list in the above-captioned Chapter 11 Cases.

**Box 2 ☐ Master Ballot Solicitation Method**. I certify that (a) I shall collect and record the votes of each of my Abuse Survivor Clients through customary and accepted practices (*i.e.*, written communication) and I have authority to cast votes for each of my Abuse Survivor Clients,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

or (b) I have the authority under applicable law to vote accept or reject the Plan on behalf of each of my Abuse Survivor Clients, and intend to exercise such authority (and I will provide a valid power of attorney or other written documentation that effect upon request by the Debtors, in their discretion). Accordingly, in lieu of soliciting votes from each of my Abuse Survivor Clients, I will record the votes to accept or reject the Plan for each of my Abuse Survivor Clients on a master ballot (a "<u>Master Ballot</u>") that I will submit to the Solicitation Agent (the "<u>Master Ballot Solicitation Method</u>") in accordance with the proposed Solicitation Procedures. I understand that by electing this Master Ballot Solicitation Method I must meet all applicable standards to receive informed consent from my Abuse Survivor Clients and that I have not added any Abuse Survivor Client to the Master Ballot whose Sexual Abuse Survivor Proof of Claim does not indicate that communication may be sent to my Firm if I have not supplied written verification that the Abuse Survivor Client has authorized my Firm to receive the Solicitation Package on his or her behalf. I understand that, by electing this method, I shall provide the Disclosure Statement, either in electronic format, hard copy, or another format, to my Abuse Survivor Clients.

By signing below, I hereby certify that: (a) I have authority under law and I have duly valid and enforceable authorizations to vote to accept or reject the Plan on behalf of my Abuse Survivor Clients in accordance with my Firm's customary practices; (ii) no Solicitation Packages need to be provided to any of my Abuse Survivor Clients; and (iii) I represent each of the Abuse Survivor Clients set forth on the Excel spreadsheet that lists the claim numbers, names, mailing addresses, email addresses (if available), and other information regarding my Abuse Survivor Clients (the "<u>Client List</u>") that I have received from the Solicitation Agent.

**Box 3 ☐ Direct Solicitation Method**. I hereby direct the Solicitation Agent to send a Solicitation Package (including a Ballot) directly to each of my Abuse Survivor Clients via email addressed to the email address specified on my Firm's Client List (unless otherwise ordered by the Bankruptcy Court) or, where email communications have not been expressly authorized by an Abuse Survivor Client on his or her Sexual Abuse Survivor Proof of Claim or no email address has been provided, via U.S. mail at the street address specified on my Firm's Client List (the "<u>Direct Solicitation Method</u>"). By electing the Direct Solicitation Method, I understand and shall advise my Abuse Survivor Clients that completed Ballots must be submitted to the Solicitation Agent individually by my Abuse Survivor Clients so that they are received by the Voting Deadline in accordance with the proposed Solicitation Procedures.

*[Remainder of Page Intentionally Left Blank]*

By signing below, I hereby certify that I represent each of the Abuse Survivor Clients set forth on the Client List, which I received in connection with this Abuse Survivor Plan Solicitation Directive.

**SIGNATURE:** _____

| | |
|---|---|
| _____ | _____ |
| Name of Attorney | Signature |
| | |
| _____ | _____ |
| Name of Law Firm | Telephone Number |
| | |
| _____ | _____ |
| Street Address | Email Address |
| | |
| _____ | _____ |
| City, State, Zip Code | Date Completed |

<div align="center">*    *    *    *    *</div>

### Instructions for Returning this Abuse Survivor Plan Solicitation Directive

The Debtors are requesting that this Abuse Survivor Plan Solicitation Directive and Client List be returned so that it is received by the Solicitation Agent on or before the Abuse Survivor Plan Solicitation Directive Deadline of **April 23, 2021,**[2] (a) by mail at Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367 or (b) by email at BSAballots@omniagnt.com.

**IF YOU DO NOT RETURN THE ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE BY THE ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE DEADLINE, OR OTHERWISE DO NOT SELECT A SOLICITATION METHOD, THE DEBTORS RESERVE THE RIGHT, SUBJECT TO BANKRUPTCY COURT AUTHORIZATION, TO DIRECT THE SOLICITATION AGENT TO SOLICIT VOTES TO ACCEPT OR REJECT THE PLAN FROM YOUR ABUSE SURVIVOR CLIENTS ACCORDING TO THE DIRECT SOLICITATION METHOD DESCRIBED HEREIN AND IN THE PROPOSED SOLICITATION PROCEDURES. FOR THE AVOIDANCE OF DOUBT, THE DEBTORS ARE REQUESTING APPROVAL FROM THE BANKRUPTCY COURT TO SOLICIT THE VOTES OF HOLDERS OF DIRECT ABUSE**

---

[2] The Abuse Survivor Plan Solicitation Directive Deadline may be extended in the Debtors' discretion.

**CLAIMS WHO ARE REPRESENTED BY COUNSEL AND WHO DO NOT RETURN THIS DIRECTIVE BY THE ABUSE SURVIVOR PLAN SOLICITATION DIRECTIVE DEADLINE VIA THE DIRECT SOLICITATION METHOD, USING THE COMMUNICATION PREFERENCES INDICATED IN SUCH ABUSE SURVIVORS' PROOFS OF CLAIM.**

### Requirements for the Client List

As indicated above, you must the confirm the accuracy of the names, addresses, and (if known) email addresses of your Abuse Survivor Clients set forth on the enclosed Client List. In accordance with the proposed Solicitation Procedures, you must make any necessary additions, subtractions, or other corrections to the spreadsheet(s) provided, and return the Client List in the same electronic format provided to you by the Solicitation Agent no later than the Abuse Survivor Plan Solicitation Directive Deadline. If you add any Abuse Survivor Clients who were not originally listed by the Solicitation Agent, you must provide the Solicitation Agent with the Proof of Claim number that corresponds to each such additional Abuse Survivor Client's Direct Abuse Claim and written verification that such Abuse Survivor Client(s) have authorized you to receive the Solicitation Package on his or her behalf. The Solicitation Agent will endeavor to identify on the Client Lists any conflicting records indicating that an individual Abuse Survivor Client may be represented by more than one Firm or has filed duplicative Direct Abuse Claims on account of a single claim.

Client Lists must be returned so as to be received no later than **April 23, 2021** either (a) by mail at Boy Scouts of America Ballot Processing, c/o Omni Agent Solutions, 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367 or (b) by email at BSAballots@omniagnt.com.

If you have any technical questions, please contact the Solicitation Agent at BSAballots@omniagnt.com or 866-907-2721.

---

**Before returning your directive please be sure to:**

**Select one of Box 1, Box 2, or Box 3.**

---