1st Objection

FILED
2021 SEP 13 PM 4:10
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br>Boy Scouts if America, and<br>Delaware BSA, LLC. | Chapter 11<br>Case No: 20-10343. (LSS)<br>Jointly Administered<br>Docket No.: 6155<br>Hearing Date: September 23, 2021 at 10:00AM.<br>Objection Deadline: September 16, 2021 at 4:00PM |

## SUBSTANATIVE OBJECTION TO DEBTORS MOTION FOR ENTRY OF ORDER APPROVING KNIGHT SETTLEMENT AGREEMENT, MODIFYING RHE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO PERMIT SETTLEMENT AMOUNT BY APPLICABLE INAURANCE

Lonnie J. Washburn, a claim holder and member of the unsecured creditor class, hereby objects to the debtors motion in the above captioned matter on the following grounds:

1). It is not fair and equitable. The debtor points out that Mr. Knight will not be receiving preferential treatment because he would be treated the same as other non-sexual abuse claim holders. That may be true, but that is a subgroup within the class of unsecured claim holders. And the law requires equal treatment for all members of the class. Otherwise, we could establish a subcategory of claim holders over 6'5", and as long as we treat everyone over 6'5" the same, we are in compliance with the law.

Although this claim is being paid by insurance, it still depletes funds that would otherwise go to the trust, and it reduces the aggregate payout cap on policies by the insurer. That means less money for the rest of the claim holders in the unsecured class, who will most likely not receive 100% of the value of their claim, as Mr. Knight would. Permitting this unsecured claim holder to jump to the front of the line simply because it is a compromise and will save court time and legal expenses is unjust and unfair. Other claim holders in the same class are barred by the court from filing lawsuits, thus depriving them of the leverage Mr. Knight has. Allowing this to be the reason for approving a payout is fundamentally unfair to other members of the same class.

2). It does not meet the Doctrine of Necessity requirement in re C.A.F Bindery, Inc., 199 B.R. 828 (Bankr. S.D.N.Y. 1996) and In re Rosenberg, No. 09-46326, 2010 Bankr. LEXIS 371 (Bankr. E.D.N.Y. Feb. 5, 2010) lay out the general proposition that parties wishing to approve settlements that contain payments outside of a plan need to put on evidence that such payments are necessary for the reorganization. That has not been done because this payment is in no way vital to the reorganization.

Mr. Knight's claim does not meet the requirements set forth in the Doctrine of Necessity, nor is it Fair and Equitable, therefore the debtors motion should be denied.

I certify that this objection complies with Federal Rules of Bankruptxy Procedure Local Rule no. 3007-1

Dated this 13th day of September 2021.

_(signature)_

Lonnie J. Washburn
ATTORNEY PRO SE
3098 South Highland Drive
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com



**EXHIBIT 1**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:** September 23, 2021 at 10:00 a.m. (ET)<br>**Objection Deadline:** September 16, 2021 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### (I) APPROVING KNIGHT SETTLEMENT AGREEMENT AND
### (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the settlement agreement, in the form attached hereto as **Exhibit B** (the "Settlement Agreement"), by and between the BSA and Atlanta Area Council, Inc. ("AAC" and, together with the BSA, "Defendants"), on the one hand, and Courtney and Stephen Knight, jointly as the surviving parents of Elijah James Knight ("E.K."), a minor child, and Stephen Knight, as the personal representative of the Estate of E.K. ("Plaintiffs" and, together with Defendants, the "Parties"), on the other hand, and (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

| (1) | (2) | (3) | (4) |
|---|---|---|---|
| Name of Claimant | Claim Number | Claim Amount | Reason for Disallowance |
| "E.K." | UNKNOWN Private | $7,100,000 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:** September 23, 2021 at 10:00 a.m. (ET)<br>**Objection Deadline:** September 16, 2021 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) APPROVING KNIGHT SETTLEMENT AGREEMENT AND
(II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO
PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the settlement agreement, in the form attached hereto as **Exhibit B** (the "Settlement Agreement"), by and between the BSA and Atlanta Area Council, Inc. ("AAC" and, together with the BSA, "Defendants"), on the one hand, and Courtney and Stephen Knight, jointly as the surviving parents of Elijah James Knight ("E.K."), a minor child, and Stephen Knight, as the personal representative of the Estate of E.K. ("Plaintiffs" and, together with Defendants, the "Parties"), on the other hand, and (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

amount from applicable insurance. In support of this Motion, the Debtors submit the declaration of Jackson A. Dial, a partner of the firm Weinberg Wheeler Hudgins Gunn & Dial (the "Dial Declaration"), which serves as defense counsel in the Lawsuit (as defined below), and the declaration of Elizabeth Hanke, a Vice President at KCIC, LLC (the "Hanke Declaration"), which serves as Insurance and Valuation Consultant for the Debtors. Copies of the Dial Declaration and the Hanke Declaration are attached hereto as **Exhibit C** and **Exhibit D**, respectively. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4. On January 8, 2019, Plaintiffs filed a lawsuit in the State Court of Cobb County, Georgia entitled *Courtney Knight and Stephen Knight, jointly as the surviving parents of Elijah James Knight, a minor child, et al. v. Boy Scouts of America, et. al.*, Case No. 2019-A-68-7 (the "Lawsuit"). The Lawsuit asserts claims under Georgia law for negligence, negligence *per se*, wrongful death, premises liability, punitive damages, and vicarious liability, and seeks damages arising from the death of then fourteen year-old E.K. as a result of a tree falling on his tent during a storm at Bert Adams Scout Camp in Covington, Georgia on June 25, 2018. Dial Decl. at ¶ 3.

2

5. The Lawsuit was automatically stayed as to the Defendants when the Debtors filed for relief under chapter 11 of the Bankruptcy Code on February 18, 2020. *Id.* at ¶ 4.

6. On July 8, 2020, the Court granted Plaintiffs' motion seeking relief from the automatic stay to proceed with the Lawsuit to liquidate Plaintiffs' claims, provided that any payment on account of such claims, including payment from applicable insurance, would be subject to further order of the Court.[2]

7. The Parties have completed fact discovery in the Lawsuit. *Id.* at ¶ 6. On February 11, 2021, after the completion of fact discovery, Plaintiffs' filed a sanctions motion in the trial court alleging that Defendants improperly withheld discoverable evidence. On June 7, 2021, the trial court granted Plaintiffs' motion and entered an issue-preclusion sanction establishing the Defendants' negligence and policy violations, as well as the foreseeability of the storm that cause E.K.'s death as a matter of law. *Id.*

## THE SETTLEMENT AGREEMENT

8. To avoid incurring further litigation expenses in connection with the Lawsuit, the Parties entered into good-faith and arm's-length settlement negotiations. Dial Decl. at ¶ 8. As a result of those negotiations, the Parties have entered into the Settlement Agreement, subject to Court approval. *See id.* ¶ 8.

9. Pursuant to the Settlement Agreement, Plaintiffs agree to dismiss the Lawsuit with prejudice and without costs. Additionally, Plaintiffs, on behalf of themselves and their agents, heirs, relatives, assigns, parents, beneficiaries, third-party beneficiaries, irrevocably and unconditionally release, acquit, and forever discharge Defendants, their predecessors, affiliates,

---

[2] *See Order Granting Motion for Relief from the Automatic Stay of Courtney Knight and Stephen Knight, Jointly as the Surviving Parents of E.J.K., a Minor Child, and Stephen Knight, as Personal Representative of the Estate of E.J.K.* [D.I. 989].

3

including, without limitation, any and all local councils wherever situated chartered by BSA, parents, subsidiaries, managing agents, volunteers, servants, consultants, agents, independent contractors, employees, officers, directors, attorneys, representatives, insurers, insurance carriers, and all persons acting by, through, under, or in concert with any of them, and each of their respective heirs, successors, and assigns (the foregoing persons and entities, hereinafter collectively referred to as "Releasees"), or any of them, from any and all claims arising out of E.K.'s death, including, without limitation, the claims asserted in the Lawsuit, as well as any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, causes of action, damages, actions, suits, rights, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), or demands of any nature whatsoever, which arise out of E.K.'s death known or unknown, suspected or unsuspected, including, but not limited to, any claims that Plaintiffs had, have, or may have, known or unknown, in connection with any facts, matters, property, transactions, or things between all Parties and between Plaintiffs and the Releasees, arising out of E.K.'s death including but not limited to, anything arising from, relating to, or in connection with the matters set forth in the Lawsuit and the Settlement Agreement.

10. In exchange for the releases described above, Defendants' insurer, Old Republic Insurance Company ("Old Republic") will pay Plaintiffs $7,100,000 (the "Settlement Amount"). Old Republic issued the primary general liability insurance policy to the BSA for the 2018–19 policy year. AAC is a co-insured under the Old Republic insurance policy.

11. The Settlement Agreement will become effective upon the Court's entry of an order approving this Settlement Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure and this Court's order being a "final" order (the "Effective Date"). The Settlement Amount will be paid within fifteen (15) days of the Effective Date. If the Effective Date fails to

4

occur on or before October 31, 2021, the Settlement Agreement shall be null and void unless the Effective Date is extended by written, consensual modification by the Parties.

## RELIEF REQUESTED

12. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) modifying the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

### I. Legal Standard

#### A    Approval of Settlements

13. Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

14. Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012). In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and

5

the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d at 393.

### B. The Automatic Stay

15. Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

16. Section 362(d) authorizes the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). Although the Bankruptcy Code does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

### II. Argument

17. The Settlement Agreement should be approved because it fairly and efficiently resolves the Lawsuit with minimal burden to the estate. The Settlement Amount will be paid solely from proceeds of the Old Republic primary and excess policies for the 2018–19 policy year. The settlement, moreover, will permit the Defendants to avoid the uncertainty and expense of litigating the Lawsuit and eliminate the potential for additional expenses and the risk of an unfavorable

6

judgment in the Lawsuit. In addition, under the Settlement Agreement the Defendants will receive a full and complete release from all liability in connection with the subject matter of the Lawsuit, thereby eliminating any liability under a plan of reorganization. Accordingly, the Debtors submit that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates, creditors and other parties in interest. *In re Louise's, Inc.*, 211 B.R. at 801.

18. The Settlement Agreement should also be approved because it affords the same treatment to Plaintiffs that is proposed to be afforded to holders of other "Non-Abuse Litigation Claims" under the Debtors' proposed plan of reorganization. Specifically, the plan provides that holders of Non-Abuse Litigation Claims may recover up to the full amount of such claims in the first instance from available insurance, and if such holder is unable to recover the full amount from such insurance, then the unpaid amounts shall be submitted to the Settlement Trust, which, subject to the Settlement Trustee's review and reasonable consent, shall pay any unpaid amounts up to applicable policy limits.[3] This treatment is the result of extensive negotiations among the Debtors, the Ad Hoc Committee of Local Councils, the Creditors' Committee, the Tort Claimants' Committee, the Coalition of Abused Scouts for Justice, and the Future Claimants' Representative.

19. Additionally, the automatic stay should be modified, to the extent necessary, to permit Old Republic to pay the Settlement Amount. If the automatic stay does apply, cause exists under these circumstances to the permit Old Republic to pay the Settlement Amount for the reasons that follow.

20. First, as noted in Old Republic's motion for relief from the automatic stay, the BSA and certain other named insureds (including AAC) are insured under certain general liability

---

[3] *See Fourth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 5484] at Art. IV.D.3.

7

policies issued by Old Republic, including primary and excess insurance policies for the 2018–19 policy year.[4] The Old Republic primary policy provides coverage up to a limit of $1.0 million per occurrence with no aggregate limits. Hanke Decl. at ¶ 4. The Old Republic excess policy provides coverage up to an aggregate limit of $9.0 million. *Id.* Here, approximately $300,000 of the primary policy has been exhausted in connection with the Lawsuit, leaving approximately $700,000 of primary coverage available. *Id.* at ¶ 5. The balance of the Settlement Amount falls within the aggregate limit of the Old Republic excess policy. *See id.* at ¶ 5-6. Therefore, 100% of the Settlement Amount falls within the limits of Old Republic's primary and excess policies. *Id.* at ¶ 6. After payment of the Settlement Amount, approximately $248,000 of the aggregate limits of the Old Republic excess policy will remain if accounting for the prior payment of the $3.0 million settlement amount that is proposed to be paid pursuant to the *Debtors' Motion for Entry of an Order (I) Approving Lehr Settlement Agreement and (II) Modifying the Automatic Stay, to the Extent Necessary, to Permit Payment of Settlement Amount by Applicable Insurance* [D.I. 2719] (the "Lehr Settlement Motion"). Hanke Decl. at ¶ 6. If the settlement amount under the Lehr Settlement Motion is excluded, approximately $2,292,000 of the aggregate limits of the Old Republic excess policy will remain after payment of the Settlement Amount. *Id.* Moreover, for the 2018–19 policy year, there is approximately $200,000,000 of available excess insurance coverage under the excess policies that attach above the Old Republic umbrella layer.[5] *Id.*

---

[4] *See Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies* [D.I. 678]; *see also* Hanke Decl. at ¶ 4.

[5] In terms of Direct Abuse Claims that could compete against the same insurance, the Debtors note that there were eighteen (18) timely filed, non-duplicative proofs of claims filed asserting Direct Abuse Claims (i) on account of Abuse alleged to have first occurred during the 2018–19 policy year (March 1, 2018 to February 28, 2019), (ii) that are not presumptively barred by applicable statutes of limitation and (iii) that name an abuser, either in full or in part.

8

21.     Second, the Settlement Agreement will fully and finally resolve the Lawsuit and avoid the uncertainty and expense of litigation and the risk of an unfavorable judgment that could exceed the Settlement Amount. While the Lawsuit has progressed through factual discovery, Defendants still face the cost of trial. *See* Dial Decl. at ¶ 6. Additionally, defense at trial is made more difficult as the Defendants are subject to an issue-preclusion sanction establishing negligence and policy violations as well as foreseeability of the storm that caused E.K.'s death as a matter of law. *See id.* Under Georgia's Wrongful Death Act, Plaintiffs are entitled to recover for the full value of the life of their decedent as shown by evidence. O.C.G.A. § 51-4-2; Dial Decl. at ¶ 7. Moreover, in precedent cases brought under Georgia's Wrongful Death Act, plaintiffs seeking damages for decedents of similar age to E.K. have routinely recovered in excess of $10 million. Dial Decl. at ¶ 7. Thus, if the Lawsuit proceeds to trial, the defense costs would likely be substantial and, together with any settlement or judgment in the Lawsuit, might erode the applicable Old Republic excess policy more than it would be eroded under the proposed settlement. The excess policy, unlike the primary policy, is subject to an aggregate limit (as well as the next layer of excess insurance coverage above Old Republic's excess policy (which has not yet been eroded)). *In re Almonacy*, Case No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue.").

22.     Accordingly, there is little prejudice, and indeed material benefit, to the Debtors if the Parties are permitted to enter into the Settlement Agreement and the stay is modified to permit Old Republic to pay the Settlement Amount.

9

## NOTICE

23.    Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) counsel to Plaintiffs; (viii) Old Republic Insurance Company; (ix) AAC; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement, (ii) modifying the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount and (iii) granting such other relief as is just and proper.

## CERTIFICATE OF SEEVICE

I, Lonnie J. Washburn, certify that I delivered via email to the addresses below, a true and correct copy of OBJECTION TO DEBTORS MOTION FOR ENTRY OF ORDER APPROVING ROMERO SETTLEMENT AGREEMENT, MODIFYING AUTOMATIC STAY, AND PERMITTING PAYMENT BY INSURANCE.

To: MORRIS, NICHOLS, ARSHT & TUNNELL LLP

dabbott@morrisnichols.com
aremming@morrisnichols.com  ptopper@morrisnichols.com

WHITE & CASE LLP

jessica.lauria@whitecase.com, mandolina@whitecase.com,
mlinder@whitecase.com , and laura.baccash@whitecase.com
blair.warner@whitecase.com

Dated this 13th day of September, 2021

_____
Lonnie J. Washburn
ATTORNEY PRO SE
3098 South Highland Drive STE 101
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com