1st Objection

**FILED**
2021 SEP 15 PM 4: 10
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

In Re:
Boy Scouts if America, and
Delaware BSA, LLC.

Chapter 11
Case No: 20-10343. (LSS)
Jointly Administered
Docket No.: 6155
Hearing Date: September 23, 2021 at 10:00AM.
Objection Deadline: September 16, 2021 at 4:00PM

OBJECTION TO DEBTORS MOTION (SUBSTANTIV

## SUBSTANTIVE
## OBJECTION TO DEBTORS MOTION FOR ENTRY OF ORDER APPROVING ROMEEO SETTKEMENT AGREEMENT, MODIFYING AUTOMATIC STAY AND PERMITTING PAYMENT BY INSURANCE

Lonnie J. Washburn, a claim holder and member of the unsecured creditor class, hereby objects to the debtors motion in the above captioned matter on the following grounds:

1). It is not Fair and Equitable. Mr. Romero is among the unsecured creditor class, non priority. This motion would catapult Mr. Romero to the front of the line for payment, and in fact, allow him to be paid within 14 days of the court entering an order.
It is also unfair to the other creditors of the unsecured class because it pays Mr. Romero's claim at 100%. It is quite clear at this point that the other members of the unsecured class of creditors will be paid less than 100% of ttheir claim's value.

If Mr. Romero is given favored treatment and is paid early, and at 100% of his claim, the other members who must wait and take a lesser share are harmed. A subset of the unsecured class that are covered under the same insurance policy as Mr. Romero is also harmed under the same theory, His payment would be taken out of the proceeds at 100% of claim value, reducing the fixed amount at a different percentage.

2). It does not meet the Doctrine of Necessity requirement in re C.A.F Bindery, Inc., 199 B.R. 828 (Bankr. S.D.N.Y. 1996) and In re Rosenberg, No. 09-46326, 2010 Bankr. LEXIS 371 (Bankr. E.D.N.Y. Feb. 5, 2010) lay out the general proposition that parties wishing to approve settlements that contain payments outside of a plan need to put on evidence that such payments are necessary for the reorganization. That has not been done because this payment is in no way vital to the reorganization.

Mr. Romero's claim does not meet the requirements set forth in the Doctrine of Necessity, nor is it Fair and Equitable, therefore the debtors motion should be denied.

I certify that this objection complies with Federal Rules of Bankruptxy Procedure Local Rule no. 3007-1

Dated this 13th day of September 2021.

_____
Lonnie J. Washburn
ATTORNEY PRO SE
3098 South Highland Drive
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com

EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

Hearing Date: September 23, 2021 at 10:00 a.m. (ET)
Objection Deadline: September 16, 2021 at 4:00 p.m. (ET)

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING ROMERO SETTLEMENT AGREEMENT AND (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the settlement agreement, in the form attached hereto as **Exhibit B** (the "Settlement Agreement"), by and between BSA, the National Boy Scouts of America Foundation, and Las Vegas Area Council, Inc. ("Defendants"), on the one hand, and Marco Romero Jr. ("Plaintiff" and, together with the Defendants, the "Parties"), on the other hand, and (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance. In support of this Motion, the Debtors submit the declaration of Elizabeth Hanke, a Vice President at KCIC,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

| (1) | (2) | (3) | (4) |
|---|---|---|---|
| Name of Claimant | Claim Number | Claim Amount | Reason for Disallowance |
| Marco Romero, Jr. | Private/Unknown | $2,500,000 | Neither fair, nor equitable to other class members. Does not meet Do trine of Necessity requirements |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: September 23, 2021 at 10:00 a.m. (ET)**<br>**Objection Deadline: September 16, 2021 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING ROMERO SETTLEMENT AGREEMENT AND
## (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO
## PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the "Debtors"), submit this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving the settlement agreement, in the form attached hereto as **Exhibit B** (the "Settlement Agreement"), by and between BSA, the National Boy Scouts of America Foundation, and Las Vegas Area Council, Inc. ("Defendants"), on the one hand, and Marco Romero Jr. ("Plaintiff" and, together with the Defendants, the "Parties"), on the other hand, and (ii) modifying the automatic stay, to the extent necessary, to permit payment of the settlement amount from applicable insurance. In support of this Motion, the Debtors submit the declaration of Elizabeth Hanke, a Vice President at KCIC,

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

LLC (the "Hanke Declaration"), which serves as insurance and valuation consultant for the Debtors. The Hanke Declaration is attached hereto as **Exhibit C**. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are sections 105(a), 362 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## BACKGROUND

4.  On December 14, 2018, Plaintiff filed a lawsuit in the Eighth Judicial District Court of Clark County, Nevada entitled *Marco Romero, Jr., a minor, by and through his natural mother, Audrey Romero v. Boy Scouts of America, National Boy Scouts of America Foundation, Las Vegas Area Council, Inc., and Boy Scouts of America*, Case No. A-18-786117-C (the "Lawsuit"). The Lawsuit seeks damages arising from an injury Plaintiff suffered on or about February 6, 2016, when, while a minor, he was involved in an incident whereby he was struck in the eye by an arrow while attending a "Mountain Man Rendezvous" retreat in Beatty, Nevada with his local Boy Scout troop (the "Accident").

5.  The Lawsuit was automatically stayed as to the Defendants when the Debtors filed for relief under chapter 11 of the Bankruptcy Code on February 18, 2020.

6.  On September 18, 2020, the Court granted Plaintiff's motion seeking relief from the automatic stay to proceed with the Lawsuit to liquidate Plaintiff's claims, provided that any

2

payment on account of such claims, including payment from applicable insurance, would be subject to further order of the Court.[2]

## THE SETTLEMENT AGREEMENT

7. To avoid incurring further litigation expenses in connection with the Lawsuit, the Parties entered into good-faith and arm's-length settlement negotiations. As a result of those negotiations, the Parties have entered into the Settlement Agreement, subject to Court approval.

8. Pursuant to the Settlement Agreement, Plaintiff agrees to dismiss the Lawsuit with prejudice and without costs. Additionally, Plaintiff, on behalf of himself and his agents, heirs, relatives, assigns, parents, beneficiaries, third-party beneficiaries, and attorneys, irrevocably and unconditionally releases, acquits, and forever discharges the Defendants, their respective predecessors, affiliates, parents, subsidiaries, managing agents, volunteers, servants, consultants, agents, independent contractors, employees, officers, directors, attorneys, representatives, insurers, insurance carriers, and all persons acting by, through, under, or in concert with any of them, and each of their respective heirs, successors, and assigns (the foregoing persons and entities, hereinafter collectively referred to as "<u>Releasees</u>"), or any of them, from any and all claims concerning the Accident, including, without limitation, the Lawsuit's claims, as well as any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, causes of action, damages, actions, suits, rights, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred), or demands of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, any claims that Plaintiff had, has, or may have, known or unknown, in connection with any facts, matters, property, transactions,

---

[2] *See Order Granting Motion of Marco Romero, Jr. and Audrey Romero for an Order for Relief from the Automatic Stay* [D.I. 1341].

or things between all Parties and between Plaintiff and the Releasees as it relates to the Accident, including but not limited to, anything arising from, relating to, or in connection with the matters set forth in the Lawsuit, whether such claims seek (i) bodily injury, personal injury, permanent injury, wrongful death, property damage, loss of consortium, compensatory, wage loss, loss of earning capacity, emotional, consequential, pecuniary, general, special, economic, hedonic, punitive, or exemplary damages, (ii) contribution, indemnity and apportionment damages, (iii) attorneys' fees, costs or prejudgment or post-judgment interest, or (iv) any other measure or theory of damages actually or allegedly recoverable under law or equity, whether or not actually alleged in the Lawsuit or arising out of the Accident.

9. In exchange for the releases described above, Defendants will pay Plaintiffs $2,500,000 from available insurance (the "Settlement Amount"). The Settlement Amount will be paid by Old Republic Insurance Company ("Old Republic"), which issued general liability insurance policies to the BSA that provide coverage for the subject matter of the Lawsuit during the relevant time period. The National Boy Scouts of America Foundation and Las Vegas Area Council, Inc. are co-insureds under the applicable Old Republic insurance policies.

10. The Settlement Agreement will become effective upon the Court's entry of an order approving this Settlement Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure and this Court's order becoming a "final" order (the "Effective Date"). The Settlement Amount will be paid within fourteen (14) days of the Effective Date.

## RELIEF REQUESTED

11. By this Motion, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement and (ii) modifying the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount.

## BASIS FOR RELIEF REQUESTED

I. **Legal Standard**

A **Approval of Settlements**

12. Section 105(a) and Bankruptcy Rule 9019 authorize the Court to approve settlements of claims. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that, upon notice and a hearing, the Court "may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).

13. Settlements and compromises are favored in bankruptcy proceedings as a means of "minimiz[ing] litigation and expedit[ing] the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). The Court should exercise its discretion to approve a settlement or compromise where it is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonable." *In re W.R. Grace & Co.*, 475 B.R. 34, 78 (D. Del. 2012). In determining whether a settlement or compromise should be approved, courts consider a number of factors, including "(1) the probability of success in the litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *In re Martin*, 91 F.3d at 393.

B. **The Automatic Stay**

14. Upon the filing of a bankruptcy case, section 362 of the Bankruptcy Code automatically stays, among other things, the commencement or continuation of any proceeding against the debtor "to recover a claim against the debtor that arose before the commencement of

5

the case." 11 U.S.C. § 362(a). The automatic stay serves a number of important purposes that protect both debtor and creditor interests, including, among other things, "to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it" and "to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (quotations omitted).

15. Section 362(d) authorizes the Court to grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). Although the Bankruptcy Code does not define "cause," courts in this District often consider whether (i) the debtor will suffer "any great prejudice" from the continuation of the civil suit," (ii) the prejudice to the non-bankrupt party by maintenance of the stay considerably outweighs the prejudice to the debtor if the stay is lifted, and (iii) the non-bankrupt party "has a probability of prevailing on the merits." *Id.*; *see also In re Scarborough St. James Corp.*, 535 B.R. 60, 67–68 (Bankr. D. Del. 2015).

## II. Argument

16. The Settlement Agreement should be approved because it fairly and efficiently resolves the Lawsuit with minimal burden to the estate. The Settlement Amount will be paid solely from proceeds of the Old Republic primary and excess policies for the 2015–16 policy year. The settlement, moreover, will permit Defendants to avoid the uncertainty and expense of litigating the Lawsuit and eliminate the potential for additional expenses and the risk of an unfavorable judgment in the Lawsuit. In addition, under the Settlement Agreement the Defendants will receive a full and complete release from all liability in connection with the subject matter of the Lawsuit, thereby eliminating any liability under a plan of reorganization. Accordingly, the Debtors submit that the Settlement Agreement is reasonable and in the best interests of the Debtors' estates, creditors and other parties in interest. *In re Louise's, Inc.*, 211 B.R. at 801.

6

17. The Settlement Agreement should also be approved because it affords the same treatment to Plaintiff that is proposed to be afforded to holders of other "Non-Abuse Litigation Claims" under the Debtors' proposed plan of reorganization. Specifically, the plan provides that holders of Non-Abuse Litigation Claims may recover up to the full amount of such claims in the first instance from available insurance, and if such holder is unable to recover the full amount from such insurance, then the unpaid amounts shall be submitted to the Settlement Trust, which, subject to the Settlement Trustee's review and reasonable consent, shall pay any unpaid amounts up to applicable policy limits.[3] This treatment is the result of extensive negotiations among the Debtors, the Ad Hoc Committee of Local Councils, the Creditors' Committee, the Tort Claimants' Committee, the Coalition of Abused Scouts for Justice, and the Future Claimants' Representative.

18. Additionally, the automatic stay should be modified, to the extent necessary, to permit Old Republic to pay the Settlement Amount. If the automatic stay does apply, cause exists under these circumstances to the permit Old Republic to pay the Settlement Amount for the reasons that follow.

19. First, as noted in Old Republic's motion for relief from the automatic stay, the BSA and certain other named insureds (including the National Boy Scouts of America Foundation and Las Vegas Area Council, Inc.) are insured under certain general liability policies issued by Old Republic, including primary and excess insurance policies for the 2015–16 policy year.[4] The Old Republic primary policy provides coverage up to a limit of $1.0 million per occurrence with no aggregate limits. Hanke Decl. at ¶ 4. The Old Republic excess policy provides coverage up to an

---

[3] See Fourth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC [D.I. 5484] at Art. IV.D.3.
[4] See Old Republic Insurance Company's Motion Pursuant to Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 4001 for an Order Modifying the Automatic Stay to Permit Payments of Claims Against Non-Debtor Insureds and Related Defense Costs Under Insurance Policies [D.I. 678]; see also Hanke Decl. at ¶ 4.

7

aggregate limit of $9.0 million. *Id.* Here, approximately $65,000 of the primary policy has been exhausted in connection with the Lawsuit, leaving approximately $935,000 of primary coverage available. *Id.* at ¶ 5. The balance of the Settlement Amount falls within the aggregate limit of the Old Republic excess policy. *See id.* at ¶ 5-6. Therefore, 100% of the Settlement Amount falls within the limits of Old Republic's primary and excess policies. *Id.* at ¶ 6. After payment of the Settlement Amount, approximately $7,144,000 of the aggregate limits of the Old Republic excess policy will remain. *Id.* Moreover, for the 2015-16 policy year, there is approximately $200,000,000 of available excess insurance coverage under the excess policies that attach above the Old Republic umbrella layer.[5] *Id.*

20. Second, the Settlement Agreement will fully and finally resolve the Lawsuit and avoid the uncertainty and expense of litigation and the risk of an unfavorable judgment that could exceed the Settlement Amount. If the Lawsuit proceeds to discovery and trial, the defense costs would likely be substantial and, together with any settlement or judgment in the Lawsuit, might erode the applicable Old Republic excess policy more than it would be eroded under the proposed settlement. The excess policy, unlike the primary policy, is subject to an aggregate limit (as well as the next layer of excess insurance coverage above Old Republic's excess policy (which has not yet been eroded)). *In re Almonacy*, Case No. 10-37235 DHS, 2011 WL 13659, at *3 (Bankr. D.N.J. Jan. 4, 2011) ("When an action seeks to recover from a debtor's insurance policy and the debtor is represented by the insurer, courts routinely grant stay relief because the burden on the estate is likely to be outweighed by the hardship on the plaintiff if the action is not permitted to continue.").

---

[5] In terms of Direct Abuse Claims that could compete against the same insurance, the Debtors note that there were twenty-two (22) timely filed, non-duplicative proofs of claims filed asserting Direct Abuse Claims (i) on account of Abuse alleged to have first occurred during the 2015–16 policy year (March 1, 2015 to February 29, 2016), (ii) that are not presumptively barred by applicable statutes of limitation and (iii) that name an abuser, either in full or in part.

8

21.     Accordingly, there is little prejudice, and indeed material benefit, to the Debtors if the Parties are permitted to enter into the Settlement Agreement and the stay is modified to permit Old Republic to pay the Settlement Amount.

## NOTICE

22.     Notice of this Motion will be provided to (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Tort Claimants' Committee; (iv) counsel to the Future Claimants' Representative; (v) counsel to the Ad Hoc Committee of Local Councils; (vi) counsel to JPMorgan Chase Bank National Association; (vii) counsel to Plaintiffs; (viii) Old Republic Insurance Company; (ix) the National Boy Scouts of America Foundation; (x) Las Vegas Area Council, Inc.; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested herein, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement, (ii) modifying the automatic stay, to the extent necessary, to permit Old Republic to pay the Settlement Amount and (iii) granting such other relief as is just and proper.

Dated: September 2, 2021
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Derek C. Abbott*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
       aremming@morrisnichols.com
       ptopper@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (212) 881-5400
Email: mandolina@whitecase.com
       mlinder@whitecase.com
       laura.baccash@whitecase.com
       blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION

## CERTIFICATE OF SEEVICE

I, Lonnie J. Washburn, certify that I delivered via email to the addresses below a true and correct copy of OBJECTION TO DEBTORS MOTION FOR ENTRY OF ORDER APPROVING ROMERO SETTLEMENT AGREEMENT, MODIFYING AUTOMATIC STAY, AND PERMITTING PAYMENT BY INSURANCE.

To: MORRIS, NICHOLS, ARSHT & TUNNELL LLP

dabbott@morrisnichols.com
aremming@morrisnichols.com  ptopper@morrisnichols.com

WHITE & CASE LLP

jessica.lauria@whitecase.com, mandolina@whitecase.com,
mlinder@whitecase.com , and laura.baccash@whitecase.com
blair.warner@whitecase.com

Dated this 13th day of September, 2021

_____
Lonnie J. Washburn
ATTORNEY PRO SE
3098 South Highland Drive STE 101
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com

FILED 2021 SEP 15 PM 4:10 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE