# **<u>EXHIBIT B</u>**

# Objection Response Chart By Argument

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | **Adequate Disclosure Objections** | |
| **1) Adequate Disclosure – Debtor Assets & Contribution** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to provide sufficient description and/or basis for the value of the Debtors' contribution to the Settlement Trust and how such contributions will be utilized for each potential party receiving a release.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now includes a chart that reflects the value of the BSA Settlement Trust Contribution over time. *See* Disclosure Statement, Article II.F.<br><br>The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property Schedule attached as Exhibit E.1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3.<br><br>The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D.<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X.<br><br>The Debtors have provided further disclosure with respect to the BSA's Restricted Property, which is detailed in Exhibit E, the Financial Projections Analysis, of the Disclosure Statement.<br><br>The Leaseback Requirement Agreement will be filed with the Plan Supplement, as it has not been executed at this time. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, at the website maintained by the Notice |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | and Claims Agent (https://omniagentsolutions.com/BSA), and at the Bankruptcy Court's website (ecf.deb.uscourts.gov). |
| | Saunders & Walker Claimants [D.I. 5366] | There is no property-by-property valuation of the property being transferred to a settlement trust, or any property-by-property valuation of the real or personal property that Debtors' seeks to retain. The same is true of its other assets, including investments. (*See, e.g.*, Obj. ¶ 2.) | The Disclosure Statement now includes a chart that reflects the value of the BSA Settlement Trust Contribution over time. Article II.F<br><br>The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property Schedule attached as Exhibit E.1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3.<br><br>The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D. |
| | DLG Claimants [D.I. 2959] | The Disclosure Statement does not provide any property-by-property valuation of the real or personal property that the Debtors intend to transfer to a settlement trust, or any property-by-property valuation of the real or personal property that it seeks to retain. The same is true of its other assets, including investments. (Obj. at 3.)<br><br>Likewise, the Disclosure Statement does not provide any property valuation information for any local councils or chartered organization. No chartered organization has offered to pay anything, and the Disclosure Statement does not offer any mechanism to evaluate contributions on their behalf. (Obj. at 3.) | The Disclosure Statement now includes a chart that reflects the value of the BSA Settlement Trust Contribution over time. Article II.F<br><br>The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property Schedule attached as Exhibit E.1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3.<br><br>The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D. |
| | National Union Fire Insurance Company of Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The | The Disclosure Statement does not have adequate information on BSA's assets. | The Disclosure Statement now includes a chart that reflects the value of the BSA Settlement Trust Contribution over time. Article II.F<br><br>The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property Schedule attached as Exhibit E.1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively, the "AIG Companies")[1] [D.I. 3523] | | The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D. |
| | United States Trustee [D.I. 3581] | The financial disclosures should show: (1) The estimated or actual contribution for each revenue source of the settlement trust; and (3) the likelihood of any net unrestricted cash and investments greater than $75 million being available for distribution. (Obj. ¶ 18-19.) <br><br> The Plan does not disclose the value of particular assets that will fund the Plan (i.e., artwork). | The Disclosure Statement now includes a chart that reflects the value of the BSA Settlement Trust Contribution over time. Article II.F <br><br> The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property Schedule attached as Exhibit E.1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. <br><br> The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement fails to provide a sufficient description and/or basis for the value of BSA's contribution to the Settlement Trust, including artwork, oil and gas interests, high adventure facilities, and other real property disclosures. (Obj. ¶ 38.) <br><br> The Disclosure Statement does not disclose the value of the BSA insurance-related contributions, including: (i) the BSA Insurance Policies; (ii) the Insurance Coverage; (iii) the Insurance Settlement Agreements; (iv) the Insurance Actions; and (v) the Insurance Action Recoveries. (Obj. ¶ 59.). Contribution of Insurance Actions "is misleading because a Survivor might believe that the settlement trust is getting something more than the right to prosecute or defend complicated coverage litigation", and the Disclosure Statement does | The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property List attached as Exhibit E-1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. <br><br> The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D. <br><br> The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. |

---

[1] The following parties have joined in this objection: (a) Clarendon National Insurance Company [D.I. 3558]; (b) Continental Insurance Company [D.I. 3582]; and (c) Arch Insurance Company [D.I. 6053].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | not provide any estimate of costs related to such litigation. (Obj. ¶ 61.) | Additionally, the Disclosure Statement now has several additional risk factors related to insurance. *See* Disclosure Statement, Article X. |
| | Plaintiff Law Firms (Filed 8/10 – 8/16/2021)[2]; (filed before 5/16)[3] [4] | There is no property-by-property valuation of the property being transferred to a settlement trust, or any property-by-property valuation of the real or personal property that Debtors' seeks to retain. The same is true of its other assets, including investments. (*See, e.g.*, Obj. ¶ 2 [D.I. 2449].) | The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property List attached as Exhibit E-1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement does not identify the "identified property," does not disclose the value of the identified property, how Debtors arrived at that value, or the reason each piece of property is unavailable. As a result, it is unclear if the trust contribution is fair and equitable. (D.I. 3856 - Obj. at 14.)<br><br>Debtors have not filed the Leaseback Requirement Agreement in connection with the Warehouse and Distribution Center asset. (D.I. 3856 - Obj. at 15.) | The Debtors have provided further disclosure with respect to the BSA's Restricted Property, which is detailed in <u>Exhibit E-1</u>, the Financial Projections Analysis, of the Disclosure Statement.<br><br>The Leaseback Requirement Agreement will be filed with the Plan Supplement, as it has not been executed at this time. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, at the website maintained by the Notice and Claims Agent (https://omniagentsolutions.com/BSA), and at the Bankruptcy Court's website (ecf.deb.uscourts.gov). |

---

[2]     The following plaintiffs' law firms filed substantially similar objections: (1) Bonina & Bonina P.C. [D.I. 5955]; (2) Manly, Stewart & Finaldi [D.I. 5963]; (3) Pfau Cochran Vertetis Amala PLLC [D.I. 5964]; (4) Chiacchia & Fleming, LLP [D.I. 5965]; (5) James, Vernon & Weeks, P.A. [D.I. 5966]; (6) Alonso Krangle LLP [D.I. 5967]; (7) Winer, Burritt & Scott, LLP [D.I. 5968]; (8) The Massey Law Firm [D.I. 5971]; (9) Law Offices of Anthony M. DeMarco [D.I. 5978]; (10) Oaks Law Firm [D.I. 5982]; (11) Kralovec, Jambois & Schwartz [D.I. 5989]; (12) NETTLES | MORRIS [D.I. 5990]; (13) Spagnoletti Law Firm [D.I. 5991]; (14) Van Zanten & Onik, LLC [D.I. 5992]; (15) Jacobs & Crumplar, P.A. and The Neuberger Firm [D.I. 6002]; (16) Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf.[D.I. 6003]; (17) Nesenoff & Miltenberg, LLP [D.I. 6005]; (18) Kenneth J. Ready & Associates [D.I. 6006]; (19) Joshua D. Gillispie, of Green & Gillispie, Attorneys at Law [D.I. 6007]; (20) Linder, Sattler & Rogowsky, LLP [D.I. 6010]; (21) Gellert Scali Busenkell & Brown, LLC and Lomurro, Munson, Comer, Brown & Schottland, LLC [D.I. 6015]; (22) Sullivan Papain Block Mcgrath Coffinas & Cannavo, P.C. [D.I. 6016]; (23) Perdue & Kidd [D.I. 6017]; (24) Gordon & Partners, PA [D.I. 6018]; (25) Law Offices of Betti & Associates [D.I. 6024]; (26) Anderson & Cummings, L.L.P. [D.I. 6028]; (27) Gregory J. Cannata & Associates, LLP [D.I. 6029]; (28) Dumas & Vaughn, LLC [D.I. 6030]; (29) Zalkin Law Firm, P.C. [D.I. 6031]; (30) Ronald Hernandez Hunter, Plaintiff in *Hunter v. Boy Scouts of America,* No. 20 Civ. 315 (E.D.N.Y.) [D.I. 6033]; (31) Law Office of Stephanie Morris, LLC [D.I. 6036]; (32) Oshan & Associates PC [D.I. 6037]; (33) Searcy Denney Scarola Barnhart & Shipley, P.A. [D.I. 6040]; (34) Beasley Allen Law Firm [D.I. 6046]; (35) SIEGLE & SIMS L.L.P. [D.I. 6047].

[3]     The above-mentioned plaintiffs' law firms filed substantially similar objections. *See* D.I. 2449, 2497, 2500, 2580, 2586, 2642, 2741, 2845, 2902, 2739, 2741, 2845, 2902, 2959, 3150, 3151, 3153, 3154, 3155, 3156, 3157, 3158, 3159, 3160, 3162, 3163, 3164, 3165, 3167, 3175, 3176, 3177, 3178, 3181, 3182, 3183, 3193, 3194, 3198, 3205, 3207, 3211, 3214, 3219, 3222, 3225, 3226, 3231, 3236, 3243, 3247, 3249, 3251, 3252, 3253, 3254, 3255, 3256, 3257, 3258, 3260, 3261, 3262, 3264, 3265, 3267, 3268, 3269, 3272, 3275, 3276, 3277, 3279, 3281, 3309, 3424.

[4]     The following parties join Pfau Cochran Vertetis Amala PLLC [D.I. 5964]: (a) Morgan & Morgan Claimants [D.I. 6004]; (b) Fairfield & Associates Claimants [D.I. 6034]; (c) Aylstock, Witkin, Kresi & Overholtz, PLLC Claimants [D.I. 6008]; (d) Lujan & Wolff LLP Claimants [D.I. 6039]. The following parties also join Pfau Cochran Vertetis Amala PLLC [D.I. 3265]: (x) Morgan & Morgan Claimants [D.I. 6004]; and (y) Fairfield & Associates Claimants.

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | AIG Companies [D.I. 3523] | The Disclosure Statement does not have adequate information on: (1) the contributions to the settlement trust, (2) BSA's assets, (3) the local council settlement contribution, and (4) contributing chartered organization settlement contribution. (Obj. ¶ 7.) | The Disclosure Statement includes the value of BSA's contribution to the Settlement Trust, including the value ascribed to artwork, oil and gas interests, high adventure facilities, and other real property. *See* Disclosure Statement, Article II.D; Liquidation Analysis, Exhibit D. |
| | | The Disclosure Statement does not disclose whether the $11.5 million valuation set forth in the Disclosure Statement takes into account the leaseback requirement of the Warehouse and Distribution center. (Obj. ¶ 10.) | The Disclosure Statement now includes further disclosure with respect to the BSA's retained assets which is detailed in the Retained Property List attached as Exhibit E-1 to the Disclosure Statement and the property being transferred to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. |
| | | | Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B. |
| | | | A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | | | The Disclosure Statement does not describe how much a Chartered Organization must contribute to become and Contributing Chartered Organization because the amount is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| **2) Adequate Disclosure – Third Party Assets,** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to sufficiently disclose the third party assets, how much third parties are contributing to the Plan, and how such contributions will be utilized for each potential party receiving a release.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Participating Chartered Organizations, and Local Councils. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| Liabilities, & Contributions | | | *See* Plan, Article X.J; Disclosure Statement, Articles II.D, II.E, V.R and VI.H.18.<br><br>The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>As further explained in the Disclosure Statement, the Debtors hired Bates White as Abuse Claims consultant. Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individualized Local Council because such an exercise would not likely establish reliable estimates due to the data currently available. While it is possible to separately identify, at least in some instances, which Local Council(s) and Chartered Organization(s) may be involved with a given claim, the ability to provide a reasonable aggregate valuation range for all 82,200 Abuse Claims combined does not translate into a reasonable valuation for each distinct claim or with respect to each individual Local Council or Chartered Organization. Additional information would be needed to separately identify which portion of the aggregate estimate should be attributed to the BSA and which to the other related organizations. *See* Disclosure Statement, Article V.N.<br><br>The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R.<br><br>The Disclosure Statement now includes information about how Contributing Chartered Organizations and Settling Insurance Companies will be identified. As further explained in the Disclosure Statement, when any new Chartered Organization agrees to a settlement, the Debtors will file a notice on the case docket for these Chapter 11 Cases for distribution to any party that has requested notice pursuant to Bankruptcy Rule 2002, stating the name of the Contributing Chartered Organization and the amount of its contribution. The Debtors will also notify any party that has requested notice pursuant to Bankruptcy Rule 2002 of any additional Settling Insurance Companies. The Debtors will also post a notice of any new Contributing Chartered Organizations and Settling Insurance Companies at https://omniagentsolutions.com/bsa. *See* Disclosure Statement, Article II.D.<br><br>The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4.<br><br>The Disclosure Statement provides no Local Council will be given Protected Party status under the Plan if any part of the Cash or Property Contribution (as defined in Exhibit F to the Plan) components of the Local Council Settlement Contribution is not contributed to the Settlement Trust on the Effective Date as described on Exhibit F of the Plan, it being understood that the Property Contribution shall be deemed to have been contributed on the Effective Date for Purposes of this provision when all individual Local Councils that are to make a Property Contribution have provided a notice of intent to contribute property to the Settlement Trust in |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | accordance with the terms of the Property Contribution set forth on Exhibit F of the Plan. *See* Disclosure Statement, Article VI.H.18 and Exhibit C; *see also*, Plan, Exhibit F, Local Council Settlement Contribution. |
| | | | Additionally, as described in Article II.G and in accordance with the Plan, any Chartered Organization that is not a Contributing Chartered Organization as of the Effective Date may become a Protected Party after the Effective Date if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Chartered Organization and the Settlement Trustee. Likewise, any Chartered Organization that is not a Participating Chartered Organization as of the Effective Date may become a Participating Chartered Organization after the Effective Date by agreement with the Settlement Trustee and without further order of the Bankruptcy Court; provided, however, that the Settlement Trustee shall file a notice with the Bankruptcy Court within thirty (30) days of entering into any agreement with a Chartered Organization that deems such Chartered Organization to be a Limited Protected Party, together with an amendment to Exhibit K of the Plan removing such Chartered Organization from the list of Chartered Organizations that are not Participating Chartered Organizations. |
| | | | After the Effective Date, any Insurance Company that is a Non-Settling Insurance Company as of the Effective Date may become a Protected Party if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Insurance Company and the Settlement Trustee. |
| | Plaintiff Law Firms (Filed 8/10–8/16/2021); (filed before 5/16/2021) | Because claimants' rights against Local Councils differ, the Disclosure Statement must address: (1) Local Councils assets and liabilities (including separate insurance assets); (2) the claims asserted against each Local Council; (3) claimants' estimated recovery against each Local Council (without regard to insurance shared with the Debtors); and (4) the amount contributed by each Local Council for its release. Claimants need that information to determine whether or not to accept the less favorable treatment under the Plan, release Local Councils, and forego claims under nonbankruptcy law. (*See, e.g.*, Obj. ¶ 18 [D.I. 5964]). | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis. |
| | | | Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F. |
| | | The Disclosure Statement fails to disclose the assets and liabilities of each potential party receiving a release. (*See, e.g.*, Obj. ¶¶ 1-9 [D.I. 2449].) | As further explained in the Disclosure Statement, the Debtors hired Bates White as Abuse Claims consultant. Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individualized Local Council because such an exercise would not likely |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | The Disclosure Statement fails to explain how any contribution by non-Debtor entities will be utilized and fails to disclose how much each council has available to contribute, how much each council is contributing, and how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council. (*See, e.g.*, Obj. ¶ 8 [D.I. 2449].) | establish reliable estimates due to the data currently available. While it is possible to separately identify, at least in some instances, which Local Council(s) and Chartered Organization(s) may be involved with a given claim, the ability to provide a reasonable aggregate valuation range for all 82,200 Abuse Claims combined does not translate into a reasonable valuation for each distinct claim or with respect to each individual Local Council or Chartered Organization. Additional information would be needed to separately identify which portion of the aggregate estimate should be attributed to the BSA and which to the other related organizations. *See* Disclosure Statement, Article V.N. |

The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.

A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.

As described in the Disclosure statement, Local Councils will make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction. Article. II.D. As described in Article II.I of the Disclosure Statement, on the Effective Date of the Plan, the Settlement Trust will be established for the benefit of holders of Abuse Claims. From and after the Effective Date, all Abuse Claims shall be channeled to the Settlement Trust, which will be funded by the Settlement Trust Assets. As further described in Article VII of this Disclosure Statement, the Settlement Trust will administer the Settlement Trust Assets and process, liquidate, and pay Abuse Claims in accordance with the applicable Trust Distribution Procedures. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Herman Law Claimants [D.I. 6032] | The Disclosure Statement must address at a minimum:<br>a. Local Council assets and liabilities (including separate insurance assets);<br>b. The claims asserted against each Local Council;<br>c. Claimants' estimated recovery against each Local Council (without regard to insurance shared with the Debtors); an d<br>d. The amount contributed by each Local Council for its release. (Obj. ¶ 9). | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>As further explained in the Disclosure Statement, the Debtors hired Bates White as Abuse Claims consultant. Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individualized Local Council because such an exercise would not likely establish reliable estimates due to the data currently available. While it is possible to separately identify, at least in some instances, which Local Council(s) and Chartered Organization(s) may be involved with a given claim, the ability to provide a reasonable aggregate valuation range for all 82,200 Abuse Claims combined does not translate into a reasonable valuation for each distinct claim or with respect to each individual Local Council or Chartered Organization. Additional information would be needed to separately identify which portion of the aggregate estimate should be attributed to the BSA and which to the other related organizations. *See* Disclosure Statement, Article V.N.<br><br>The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | As described in the Disclosure statement, Local Councils will make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction. Article. II.D. As described in Article II.I of the Disclosure Statement, on the Effective Date of the Plan, the Settlement Trust will be established for the benefit of holders of Abuse Claims. From and after the Effective Date, all Abuse Claims shall be channeled to the Settlement Trust, which will be funded by the Settlement Trust Assets. As further described in Article VII of this Disclosure Statement, the Settlement Trust will administer the Settlement Trust Assets and process, liquidate, and pay Abuse Claims in accordance with the applicable Trust Distribution Procedures. |
| | Zuckerman Spaeder LLP Claimants [D.I. 6043]; [D.I. 3277] | The Disclosure Statement fails to explain what monetary contribution each of the non-debtor parties (including Local Councils and Chartered Organizations) will make in exchange for a release. (D.I. 6043 - Obj. ¶¶ 6-9).<br><br>There is a failure to disclose the assets and liabilities of each party receiving a release and failure to disclose the specific entities to be released. (D.I. 3277 - Obj. ¶ 1.) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Participating Chartered Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.D, II.E, V.R and VI.H.18.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R.<br><br>The Disclosure Statement now includes information about how Contributing Chartered Organizations and Settling Insurance Companies will be identified. As further explained in the Disclosure Statement, when any new Chartered Organization agrees to a settlement, the Debtors will file |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | a notice on the case docket for these Chapter 11 Cases for distribution to any party that has requested notice pursuant to Bankruptcy Rule 2002, stating the name of the Contributing Chartered Organization and the amount of its contribution. The Debtors will also notify any party that has requested notice pursuant to Bankruptcy Rule 2002 of any additional Settling Insurance Companies. The Debtors will also post a notice of any new Contributing Chartered Organizations and Settling Insurance Companies at https://omniagentsolutions.com/bsa. *See* Disclosure Statement, Article II.D. |

The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4.

Additionally, as described in Article II.G and in accordance with the Plan, any Chartered Organization that is not a Contributing Chartered Organization as of the Effective Date may become a Protected Party after the Effective Date if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Chartered Organization and the Settlement Trustee. Likewise, any Chartered Organization that is not a Participating Chartered Organization as of the Effective Date may become a Participating Chartered Organization after the Effective Date by agreement with the Settlement Trustee and without further order of the Bankruptcy Court; provided, however, that the Settlement Trustee shall file a notice with the Bankruptcy Court within thirty (30) days of entering into any agreement with a Chartered Organization that deems such Chartered Organization to be a Limited Protected Party, together with an amendment to Exhibit K of the Plan removing such Chartered Organization from the list of Chartered Organizations that are not Participating Chartered Organizations.

After the Effective Date, any Insurance Company that is a Non-Settling Insurance Company as of the Effective Date may become a Protected Party if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Insurance Company and the Settlement Trustee.

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Pro Se Claimant [D.I. 4154] | Plan must present a full accounting of all the real estate assets loaned to Local Councils; BSA divesting all real estate would reduce opportunities for further criminal behavior. (Obj. at 3-4). | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.

A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to disclose the specific contribution each local council will make, sufficient facts to determine whether such contribution is "substantial", and the assets of and claims against each local council. (D.I. 6039 - Obj. ¶ 7). | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.

Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F. |
| | Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America ("Century Indemnity Company") [D.I. 6065]; [D.I. | The Disclosure Statement should include in its Exhibit C a list of each Local Councils total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution.

The Disclosure Statement fails to disclose each Local Council's Settlement Trust contribution and the amount of liabilities—both to Abuse Claimants and Insurers—that will be released under the Amended Plan;

The Disclosure Statement does not disclose a binding commitment to contribute to the settlement trust or how much Local Councils will contribute. (D.I. 3856 - Obj. at 18-20.)

To assess sufficiency of contributions by the Local Councils and Chartered Organizations, claimants need to know: the identity of the releasee; the scope of the releasee's potential liability to abuse claimants; the amount of assets available to the releasee to pay abuse | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.

Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.

The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | 5214]; [D.I. 3856][5] | claims; the releasee's obligation for SIRs and deductible, and the size of the releasee's proposed contribution to the settlement trust. (D.I. 3856 - Obj. at 20.) | memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.

A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.

The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R.

The Disclosure Statement now includes information about how Contributing Chartered Organizations and Settling Insurance Companies will be identified. As further explained in the Disclosure Statement, when any new Chartered Organization agrees to a settlement, the Debtors will file a notice on the case docket for these Chapter 11 Cases for distribution to any party that has requested notice pursuant to Bankruptcy Rule 2002, stating the name of the Contributing Chartered Organization and the amount of its contribution. The Debtors will also notify any party that has requested notice pursuant to Bankruptcy Rule 2002 of any additional Settling Insurance Companies. The Debtors will also post a notice of any new Contributing Chartered Organizations and Settling Insurance Companies at https://omniagentsolutions.com/bsa. *See* Disclosure Statement, Article II.D.

The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |

---

[5] Arrowood Indemnity Company [D.I. 4065] joins in this objection of Century Indemnity Company [D.I. 3856]

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Tort Claimants' Committee [D.I. 3526][6] | The Disclosure Statement does not disclose the contribution to be made by Local Councils, which prevents analysis of whether they have made "substantial contributions" that justify third party releases. (Obj. ¶ 99-104.)<br><br>The Disclosure Statement likewise does not provide adequate information on Local Councils' Insurance Policies. (Obj. ¶ 105-08.).<br><br>The Disclosure Statement contains no information about, or analysis of, the claims against, and assets and liabilities of, the Local Councils and Chartered Organizations. (Obj. ¶ 34.) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement has been updated to include further information regarding Local Council Insurance Policies in Article III.F.2.<br><br>The Disclosure Statement provides adequate information regarding the Local Council's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F.2. Additionally, the Disclosure Statement now has several additional risk factors related to insurance, including related to assignment. *See* Disclosure Statement, Article X.A.21-24. |

---

[6]   The Official Committee of Unsecured Creditors in the Chapter 11 Case of the Archbishop of Agana (the "Guam Committee") [D.I. 4321] join in this objection of the Tort Claimants' Committee [D.I. 3526].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R. |
| | | | The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| | Aylstock, Witkin, Kreis & Overholtz, PLLC Claimants [D.I. 3274] | The Disclosure Statement fails to explain what contribution the non-Debtor insureds, Local Councils and/or Chartered Organizations will make in order to receive a release. (Obj. ¶ 4.)<br><br>The Disclosure Statement and the accompanying solicitation procedures fail to notify creditors, including the AWKO Claimants, which Local Council and/or Chartered Organization is associated with their Abuse, whether any such entity will receive a release, and if so, the terms of the release. (Obj. ¶ 3.) | The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Chartered Organizations, Participating Chartered Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.D, II.E, V.R and VI.H.18.<br><br>The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B. |
| | | | A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | | | The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R. |
| | | | The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| | DLG Claimants [D.I. 2959] | The Disclosure Statement does not provide any property valuation information for any local councils or chartered organization. No chartered organization has offered to pay anything, and the Disclosure Statement does not offer any mechanism to evaluate contributions on their behalf. (Obj. at 3.) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis. |
| | | | Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F. |
| | | | The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R.<br><br>The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| | Gordon & Partners, P.A. Claimants [D.I. 2739] | The Disclosure Statement needs to provide claimant answers to the following questions:<br><br>1) does their local council/chartered organization have assets to contribute and, if so, how much?<br><br>2) how much is my local council or chartered organization contributing in exchange for its release of liability?<br><br>3) how many claims are there against my local council and chartered organization?<br><br>(Obj. at 1.) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement provides adequate information regarding the Local Council's insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F.2. Additionally, the Disclosure Statement now has several additional risk factors related to insurance, including related to assignment. *See* Disclosure Statement, Article X.A.21-24. |
| | Zalkin Law Firm Claimants [D.I. 3276] | The Disclosure Statement also lacks concrete information on the assets and contributions of non-Debtor entities that may be provided third party releases. (Obj. ¶ 12.) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | Claimant Nos. 60051 and 63823 [D.I. 3282] | There are gaps in the Plan, such as Exhibit A 'Contributing Chartered Organization Settlement Contribution,' Exhibit B 'Contributing Chartered Organization,' and the Amended BSA Bylaws. (Obj. at 5.) | The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R.<br><br>The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4.<br><br>The Plan Supplement will include the Amended BSA Bylaws as is customary. |
| | Liberty [D.I. 6057]; [D.I. 3578] | The Disclosure Statement does not explain the contributions that are to be made by the individual Local Councils and Contributing Chartered Organizations. There is no mechanism to guarantee that the Debtors will be able to enforce the commitment (aggregate contribution not less than $425 million), nor is there any disclosure as to what individual Local Councils will contribute in exchange for a global release of all Local Councils. Creditors need to understand what will actually be contributed to the Settlement Trust and not just what the Debtors are "committed" to contributing. (D.I. 3578 - Obj. ¶ 7.) | The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R.<br><br>The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| | National Union Fire Insurance Company of | The Disclosure Statement states that the Debtors are committed to ensuring that the Local Councils contribute no less than $425 million. *See* Disclosure Statement, Article II.C; *see also* Article V.R. | The Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Pittsburgh, Pa., Lexington Insurance Company, Landmark Insurance Company, The Insurance Company of the State of Pennsylvania, and their affiliated entities (collectively, the "AIG Companies") [D.I. 3523][7] | Disclosure Statement does not have adequate information on: (1) the contributions to the settlement trust, . . ., (3) the local council settlement contribution, and (4) contributing chartered organization settlement contribution. (Obj. ¶ 7.)<br><br>Neither the Plan nor Disclosure Statement sets forth any concrete value or even an estimate of the assets that any Local Council has actually committed to contribute. (Obj. ¶ 8.) | Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.<br><br>The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement provides no Local Council will be given Protected Party status under the Plan if any part of the Cash or Property Contribution (as defined in Exhibit F to the Plan) components of the Local Council Settlement Contribution is not contributed to the Settlement Trust on the Effective Date as described on Exhibit F of the Plan, it being understood that the Property Contribution shall be deemed to have been contributed on the Effective Date for Purposes of this provision when all individual Local Councils that are to make a Property Contribution have provided a notice of intent to contribute property to the Settlement Trust in accordance with the terms of the Property Contribution set forth on Exhibit F of the Plan. *See* Disclosure Statement, Article VI.H.18 and Exhibit C; *see also*, Plan, Exhibit F, Local Council Settlement Contribution.<br><br>The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R. |

---

[7] The following parties have joined in this objection: (a) Clarendon National Insurance Company [D.I. 3558]; (b) Continental Insurance Company [D.I. 3582]; and (c) Arch Insurance Company [D.I. 6053].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| | The Knights of Columbus, 1 Columbus Plaza, New Haven, CT 06510; Knights of Columbus, Council #462 ("Council #462"); Knights of Columbus, Saratoga Council #246 a/k/a Saratoga Knights of Columbus ("Council #246"); and Knights of Columbus, Father Baker Council #2243 ("Father Baker Council"), as well as any and all other Knights of Columbus councils, and or entities (collectively the "Knights of Columbus entities") [D.I. 6041]; [D.I. 3270] | The Disclosure Statement does not contain adequate information regarding the details of how to become a Contributing Charted Organization and the amount of the Contribution Chartered Organization Settlement Contribution, so Chartered Organizations are unable to assess their ability to become a Contributing Chartered Organization, or to perform a cost/benefit analysis of the benefits and/or risks of contributing to the Plan or not. (D.I. 3270 - Obj. at 5-6.) | The Disclosure Statement now describes the three alternate paths for Charted Organizations under the Plan and explains that the BSA encourages Chartered Organizations to become parties to the Bankruptcy Court-approved mediation process to discuss and negotiate such a settlement in order to become a Contributing Chartered Organization and receive the full benefits of the Channeling Injunction. *See* Disclosure Statement, Article II.E.4. The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | United Methodist Ad Hoc Committee [D.I. 3273] | The Disclosure Statement offers no details as to the contributions a Chartered Organization must make in order to become a Contributing Chartered Organization, nor does it provide any specific terms regarding the protection the Contributing Chartered Organization's will receive in exchange for their contribution. (Obj. ¶ 7.) | The amount a Contributing Chartered Organization will contribute to the Settlement Trust is particular to each Chartered Organization and based on the liability associated with each such entity. There is no blanket amount that pertains to all Chartered Organizations. However, the terms and description of the channeling injunction afforded Contributing Chartered Organizations have been supplemented in the Disclosure Statement. *See* Disclosure Statement, Article II.E.4. |
| | United States Trustee [D.I. 3581] | The financial disclosures should show: (1) The estimated or actual contribution for each revenue source of the settlement trust; (2) the identities and amounts contributed by each protected party and released party. . . (Obj. ¶ 18-19.)

The Plan does not disclose the value of particular assets that will fund the Plan (i.e., artwork).

There is no discussion on how BSA will fulfill the commitment to raising $425 million from the Local Councils. (Obj. ¶ 17.) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.

Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.

The objection concerning fulfilment of the Local Council Contribution has been mooted as the Plan has been amended and, as described in the Disclosure Statement, the Local Councils agreed to contribute $600 million to the Settlement Trust and all Local Councils will be deemed Protected Parties under the Plan. *See* Disclosure Statement, Article II.D. Each Local Council's commitment to make its respective contribution to the Settlement Trust is dependent upon, among other things, an acceptable resolution of insurance and indemnity issues with respect to Chartered Organizations. Such commitment will be memorialized in letters of intent, substantially conforming to the form attached to the Disclosure Statement as Exhibit B. *See* Disclosure Statement, Exhibit B.

A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement contains no information about, or analysis of, the claims against, and assets and liabilities of, the Local Councils and Chartered Organizations. (Obj. ¶ 34.) | The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Participating Chartered Organizations, Settling Insurers and |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.D, II.E, V.R and VI.H.18.<br><br>The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>A list of each Local Counsel's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | Saunders & Walker Claimants [D.I. 5366] | There is no information about the number of claims against each local council or chartered organization, or any estimate of the value of such claims. To the extent that sexual abuse claims have not been filed against a local council or chartered organization, the Debtors should disclose whether they have any indemnification or contribution claims against each local council or chartered organization. (*See, e.g.*, Obj. ¶ 7 [D.I. 2449].) | Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F.<br><br>As described in the Disclosure Statement, the Debtors' Settlement Trust Causes of Action are to be transferred to the Settlement Trust in accordance with Article IV.D of the Plan. |
| | Argonaut Insurance Company [D.I. 3285] | Disclosure Statement fails to explain that no constituency in this case (besides the Debtors) supports the Plan. (Obj. ¶ 3.) | The Disclosure Statement now indicates that with respect to Chartered Organizations and Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan and one Contributing Chartered Organization. *See* Disclosure Statement, Article II.A and Article V.R. |
| **3) Adequate Disclosure – Third Party Contributions** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to sufficiently disclose the pooling of Debtor and non-debtor Local Council assets and liabilities. Some claimants have strong claims against financially strong or well-insured Local Councils or Chartered Organizations that have the ability to satisfy their claims in a greater measure than** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now provides information on contributions by the BSA, Local Councils and Settling Insurance Companies to the Settlement Trust and Distributions to Survivors. *See* Disclosure Statement, |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| Utilization & Pooling | | **they may receive under the TDP. The Plan does not account for such differences.** | Article X.A.26. The Disclosure Statement also provides information about the Trust Distribution Procedures that provide for the allowance, valuation and payment of Abuse Claims. *See* Disclosure Statement, Article VII.B. Source affected weighting is also described in VII.B.8.f of the Disclosure Statement.<br><br>In regards to contributions by non-Debtors, the Disclosure Statement provides further information on the transfer of Settlement Trust Assets to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. The Disclosure Statement explains that the assets contributed to the Settlement Trust by non-Debtor entities will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement. A list of each Local Council's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | Saunders & Walker Claimants [D.I. 5366] | The Disclosure Statement fails to explain . . . how the contributions of each council will be utilized, including whether the contributions of a council will be used to compensate abuse survivors who do not have a claim against that council. (*See, e.g.*, Obj. ¶ 8.) | The Disclosure Statement now provides information on contributions by the BSA, Local Councils and Settling Insurance Companies to the Settlement Trust and Distributions to Survivors. *See* Disclosure Statement, Article X.A.26. The Disclosure Statement also provides information about the Trust Distribution Procedures that provide for the allowance, valuation and payment of Abuse Claims. *See* Disclosure Statement, Article VII.B. Source affected weighting is also described in VII.B.8.f of the Disclosure Statement.<br><br>In regards to contributions by non-Debtors, the Disclosure Statement provides further information on the transfer of Settlement Trust Assets to the Settlement Trust. *See* Disclosure Statement, Article VII.A.3. The Disclosure Statement explains that the assets contributed to the Settlement Trust by non-Debtor entities will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement. A list of each Local Council's total expected contribution, including a specific break-down between the (i) cash |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See Disclosure Statement*, Exhibit C. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Debtors need to disclose the pooling of Debtor and non-debtor Local Council assets and liabilities. Some claimants have strong claims against financially strong or well-insured Local Councils or Chartered Organizations that have the ability to satisfy their claims in a greater measure than they may receive under the TDP. The Plan destroys the right of claimants with strong claims to pursue solvent, well-insured entities and compels them to share the contribution from the released entity with claimants who had no such right. The Plan ignores the range of nonbankruptcy outcomes against the non-debtors and effects a substantive consolidation of the Debtor and Local Councils, sharing assets they are contributing *pro rata* among all claimants, without regard to the entity against which the claimants actually has claims. (*See, e.g.*, Obj. ¶¶ 13-14 [D.I. 5964]). | The Disclosure Statement now provides information on contributions by the BSA, Local Councils and Settling Insurance Companies to the Settlement Trust and Distributions to Survivors. *See Disclosure Statement*, Article X.A.26. The Disclosure Statement also provides information about the Trust Distribution Procedures that provide for the allowance, valuation and payment of Abuse Claims. *See Disclosure Statement*, Article VII.B. Source affected weighting is also described in VII.B.8.f of the Disclosure Statement.<br><br>In regards to contributions by non-Debtors, the Disclosure Statement provides further information on the transfer of Settlement Trust Assets to the Settlement Trust. *See Disclosure Statement*, Article VII.A.3. The Disclosure Statement explains that the assets contributed to the Settlement Trust by non-Debtor entities will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement. A list of each Local Council's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| | Herman Law Claimants [D.I. 6032] | Claimants' state law rights against Local Councils and Chartered Organizations vary significantly. The Plan ignores the range of non-bankruptcy outcomes against the non-debtors, and effects a substantive consolidation of the Debtors and the Local Councils, sharing the assets they are contributing *pro rata* among all claimants, without regard to the entity against which the claimant actually has claims. The Amended Disclosure Statement fails to contain adequate information regarding this sharing and the equities involved, which is necessary for differently situated claimants to evaluate the Plan. (Obj. ¶ 5). | The Disclosure Statement now provides information on contributions by the BSA, Local Councils and Settling Insurance Companies to the Settlement Trust and Distributions to Survivors. *See Disclosure Statement*, Article X.A.26. The Disclosure Statement also provides information about the Trust Distribution Procedures that provide for the allowance, valuation and payment of Abuse Claims. *See Disclosure Statement*, Article VII.B. Source affected weighting is also described in VII.B.8.f of the Disclosure Statement.<br><br>In regards to contributions by non-Debtors, the Disclosure Statement provides further information on the transfer of Settlement Trust Assets to the Settlement Trust. *See Disclosure Statement*, Article VII.A.3. The Disclosure Statement explains that the assets contributed to the Settlement Trust by non-Debtor entities will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement. A list of each Local Council's total expected contribution, including a specific break-down between the (i) cash contribution and (ii) property contribution, is attached to the Disclosure Statement as Exhibit C. *See* Disclosure Statement, Exhibit C. |
| 4) Adequate Disclosure – Liquidation Analysis | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement Liquidation Analysis is flawed because it does not explain the factual or legal basis for the Debtors' or Local Councils' belief that certain assets of Local Councils are restricted, or indicate how much each Local Council will contribute from their unrestricted assets.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit D. In addition, the Debtors have added Exhibit E-1 to the Disclosure Statement which summarizes the assets the Debtors determined were restricted. Finally, the Liquidation Analysis contains information concerning the assets that were considered in formulating the Liquidation Analysis, including Local Council properties and balance sheets. *See* Disclosure Statement, Exhibit E, Financial Projections Analysis; *see also* Disclosure Statement Articles III.C and IX.E.<br>• The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit D. In addition, the Debtors have added Exhibit E-1 to the Disclosure Statement which summarizes the assets the Debtors view as restricted. Finally, the Liquidation Analysis and Financial Projections Analysis contain an extensive description of the assets that are included in the Liquidation Analysis and those that are not included. *See* Disclosure Statement, Exhibit E, Financial Projections Analysis; *see also* Disclosure Statement Articles III.C and IX.E.<br>• The Debtors have amended the Liquidation Analysis to include a hypothetical liquidation of the Local Councils. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.<br>• The Debtors believe the liquidation process in the Local Council charters would have little impact on the Liquidation Analysis, assuming such provisions are enforceable. Nevertheless, the Debtors have added a provision to the hypothetical liquidation of the Local Councils to account for this scenario. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | <ul><li>The Debtors have added disclosure concerning the value of the artwork, real estate and other assets to be contributed. *See* Disclosure Statement, Exhibit D, Liquidation Analysis; Disclosure Statement, Article II.D.</li><li>The Debtors have added disclosure concerning the basis for their assumption of a six month liquidation timeframe. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.</li><li>The Debtors have added disclosure concerning avoidance action recoveries and recoveries from the Debtors' insurance policies. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.</li><li>The Debtors believe they have provided sufficient information on how the estimated recovery percentages were derived and no further disclosure is necessary. *See* Disclosure Statement, Article II.H.</li><li>The Debtors have added disclosure concerning the application of the Bates White estimation, impact of statute of limitations and effect on values. *See* Disclosure Statement, Article V.N.</li><li>The Debtors believe they have provided sufficient disclosure of the basis for the wind-down costs, chapter 7 trustee fees and chapter 7 professional fees. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.</li></ul><br>The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit D. In addition, the Debtors have added Exhibit E-1 to the Disclosure Statement which summarizes the assets the Debtors determined were restricted. Finally, the Liquidation Analysis contains information concerning the assets that were considered in formulating the Liquidation Analysis, including Local |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Council properties and balance sheets. *See* Disclosure Statement, Exhibit E, Financial Projections Analysis; *see also* Disclosure Statement Articles III.C and IX.E.<br><br>The Disclosure Statement explains that the Debtors are unable to estimate the recovery amount for Indirect Abuse Claims under the Plan and hypothetical chapter 7 liquidation since they are unliquidated and contingent and subject to objection under section 502(e) of the Bankruptcy Code. However, to the extent the Indirect Abuse Claims become liquidated in the future, Indirect Abuse Claimants have the ability, pursuant to the Plan, to bring a claim for reconsideration under section 502(j) of the Bankruptcy Code and may be able to recover, on account of such claim, against the Settlement Trust Assets. *See* Disclosure Statement, Article IX.D and Article II.H, n.40. |
| | Saunders & Walker Claimants [D.I. 5366] | The liquidation analysis does not include the properties of the local councils. (*See, e.g.*, Obj. ¶ 3 [D.I. 2449].) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Disclosure Statement Liquidation Analysis is flawed because it does not explain the factual or legal basis for the Debtors' or Local Councils' belief that certain assets of Local Councils are restricted, or indicate how much each Local Council will contribute from their unrestricted assets. (*See, e.g.*, Obj. ¶ 20 [D.I. 5964]).<br><br>The liquidation analysis does not include the properties of the local councils. (*See, e.g.*, Obj. ¶ 3 [D.I. 2449].) | The Disclosure Statement now attaches property valuations for all Local Councils. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis; Disclosure Statement, Article V.N. The Disclosure Statement now also provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis.<br><br>The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit D. In addition, the Debtors have added Exhibit E-1 to the Disclosure Statement which summarizes the assets the Debtors determined were restricted. Finally, the Liquidation Analysis contains information concerning the assets that were considered in formulating the Liquidation Analysis, including Local Council properties and balance sheets. *See* Disclosure Statement, Exhibit E, Financial Projections Analysis; *see also* Disclosure Statement Articles III.C and IX.E |
| | Herman Law Claimants [D.I. 6032] | The Disclosure Statement's purported "liquidation analysis," Dkt. 5485 at Ex. D, is fatally flawed because it does not explain the factual or legal basis for the Debtors' (or Local Councils') belief that certain assets of the Local Councils are restricted, or indicate how much each | The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit D. In addition, the Debtors have added Exhibit E-1 to the Disclosure Statement which summarizes the assets the Debtors determined were restricted. Finally, the |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | Local Council will contribute from their (admittedly unrestricted) assets. (Obj. ¶ 11). | Liquidation Analysis contains information concerning the assets that were considered in formulating the Liquidation Analysis, including Local Council properties and balance sheets. *See* Disclosure Statement, Exhibit E, Financial Projections Analysis; *see also* Disclosure Statement Articles III.C and IX.E. |
| | Certain Insurers[8][9] | The Liquidation Analysis is fundamentally flawed because it depicts distributions and retention of property under a hypothetical chapter 7 liquidation of the Local Councils, and not the retention of claims against Local Councils in a hypothetical chapter 7 liquidation of the Debtors. (Obj. ¶ 41). | While the Debtors agree that, as non-debtors, the disclosure of the Local Councils liquidation analyses is not required, the Debtors chose to include the Local Councils Liquidation Analyses to provide further information to holders of Claims in determining whether to vote to accept the Plan.<br><br>The Liquidation Analysis assumes a reallocation to BSA for further distribution to creditors of certain excess funds from Local Councils that would flow up to BSA upon a liquidation of the Local Councils. *See* Disclosure Statement, Ex. D. In the updated model, excess funds from individual Local Councils flow up to the consolidated Liquidation Analysis (Debtors + Related Non-Debtors + Local Councils), reallocating the "residual interest" to the Debtors' creditors. |
| | Tort Claimants' Committee [D.I. 3526] | The Liquidation Analysis is deficient as it:<br>• Fails to include the liquidation value, value, or an inventory of Restricted Assets and non-Restricted Assets<br>• Does not "i) account for the value of a Survivor's claims against the applicable Local Council and Chartered Organization(s) which would not be released under a chapter 7 scenario and (ii) demonstrate that a dissenting Survivor would receive more under the Plan than from (x) a recovery from the Debtors' chapter 7 liquidation plus (y) recoveries from the unreleased claims against the Local Councils and Chartered Organizations that are Participating Parties"<br>• "Does not address the liquidation process set forth in the Local Councils' charters and the impact that would have on recoveries in a liquidation scenario"<br>• Fails to provide a valuation for the Artwork, real estate or other assets to be contributed to the Settlement Trust by BSA. | The Debtors understand that certain parties in this case may challenge confirmation of the Plan on the basis that the Plan fails to meet the best interests of creditors test. The Debtors' proposed confirmation schedule contemplates the exchange of expert witness reports in connection with any such disputes. The Debtors expect that many issues raised in connection with the Liquidation Analysis will be addressed by the expert witnesses and at the hearing to consider confirmation of the Plan.<br><br>• The Debtors have clarified that the Liquidation Analysis assumes that only unrestricted assets are available to satisfy the claims of creditors in a hypothetical liquidation. *See* Disclosure Statement, Exhibit D. In addition, the Debtors have added Exhibit E-1 to the Disclosure Statement which summarizes the assets the Debtors view as restricted. Finally, the Liquidation Analysis and Financial Projections Analysis contain an extensive description of the assets that are included in the Liquidation Analysis and those that are not included. *See* Disclosure Statement, Exhibit E, Financial |

8 The AIG Companies, The Continental Insurance Company and Columbia Casualty Company, Old Republic Insurance Company, Indian Harbor Insurance Company, on behalf of itself and as successor in interest to Catlin Specialty Insurance Company, Clarendon America Insurance Company, Maryland Casualty Company, Maryland American General Group, American General Fire & Casualty Company, Travelers Casualty and Surety Company, Inc. (f/k/a Aetna Casualty & Surety Company), St. Paul Surplus Lines Insurance Company and Gulf Insurance Company, Arrowood Indemnity Company, Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company (collectively, "Certain Insurers") [D.I. 6052].

9 The following parties have joined in this objection: (a) Arch Insurance Company [D.I. 6035]; (b) Allianz Insurers [D.I. 6055]; and (c) Liberty [D.I. 6057].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | • Does not describe "the basis for assuming that a six month liquidation timeframe is appropriate"<br>• Does not include avoidance action recoveries and D&O insurance policies<br>• Fails to discuss how the estimated recovery percentages were derived<br>• Fails to discuss the potential reduction of claims based on statute of limitations defenses, nor any assignment of values based on type of Direct Abuse Claim (as described above in connection with the TDP)<br>• Provides no basis for the estimate of expenses of a chapter 7 trustee<br>(Obj. ¶ 37.) | Projections Analysis; *see also* Disclosure Statement Articles III.C and IX.E.<br>• The Debtors have amended the Liquidation Analysis to include a hypothetical liquidation of the Local Councils. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.<br>• The Debtors believe the liquidation process in the Local Council charters would have little impact on the Liquidation Analysis, assuming such provisions are enforceable. Nevertheless, the Debtors have added a provision to the hypothetical liquidation of the Local Councils to account for this scenario. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.<br>• The Debtors have added disclosure concerning the value of the artwork, real estate and other assets to be contributed. *See* Disclosure Statement, Exhibit D, Liquidation Analysis; Disclosure Statement, Article II.D.<br>• The Debtors have added disclosure concerning the basis for their assumption of a six month liquidation timeframe. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.<br>• The Debtors have added disclosure concerning avoidance action recoveries and recoveries from the Debtors' insurance policies. *See* Disclosure Statement, Exhibit D, Liquidation Analysis.<br>• The Debtors believe they have provided sufficient information on how the estimated recovery percentages were derived and no further disclosure is necessary. *See* Disclosure Statement, Article II.H.<br>• The Debtors have added disclosure concerning the application of the Bates White estimation, impact of statute of limitations and effect on values. *See* Disclosure Statement, Article V.N.<br>• The Debtors believe they have provided sufficient disclosure of the basis for the wind-down costs, chapter 7 trustee fees and chapter 7 professional fees. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. |
| | United States Trustee [D.I. 3581] | The liquidation analysis fails to account for insurance rights belonging to BSA that are a part of the BSA settlement trust contribution. It is also unclear if the artwork portfolio is included and what assets are included in the line item "land, building, and equipment." (Obj. ¶ 21.) | As discussed in the Disclosure Statement, recoveries in a hypothetical chapter 7 liquidation do not include recoveries on BSA's Insurance Policies as such recoveries are uncertain and are expected to be lower in a liquidation due to the difficulty of obtaining insurance recoveries in such a scenario because, in large part, many of the BSA's Insurance Policies are subject to the rights of co-insured, non-debtors, including Local Councils, under those policies and because obtaining recoveries would likely require significant litigation. Article IX.D. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Moreover, the Artwork is included in the Liquidation Analysis. *See* Disclosure Statement, Exhibit D. |
| **5) Adequate Disclosure – Best Interests Test** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement must include information about recoveries for holders of Direct Abuse Claims against non-Debtors released by the Plan as part of the best interests test. (*See, e.g.*, Obj. ¶ 5 [D.I. 5964]). In addition, under the best interests of the creditors test, each claimant is entitled to receive value under the Plan that is at least equal to its rights in liquidation. § 1129(a)(7). (*See, e.g.*, Obj. ¶ 19 [D.I. 5964]).** | **DEBTORS HAVE ADDED DISCLOSURE** Although the Debtors maintain their position that nonprofit organizations are not required to satisfy the best interest test, the Debtors have provided Liquidation Analyses, including Local Council liquidations which show that the Plan satisfies the "Best Interests of Creditors" test. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. The Debtors' believe that the best interest test, if it applies at all, only applies to the Debtors. However, to the extent that the Debtors are required to demonstrate that the Plan will satisfy the best interests test with respect to non-Debtors, the Debtors will do so at confirmation. The Disclosure Statement now provides information about the liquidation value of Abuse Claims. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. The Disclosure Statement includes an explanation of how the recovery percentages to holders of Abuse Claims were calculated. *See* Disclosure Statement, Article II.H and Article V.N. The Disclosure Statement also discloses information regarding the best interests of creditors. *See* Disclosure Statement, Article IX.D. The Disclosure Statement provides information about the discovery and claims review process proposed by the Debtors in connection with confirmation. *See* Disclosure Statement, Article VI.A.23. The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis. In addition, as more fully described in the Disclosure Statement, additional discussion has been added with respect to the estimation of values of claims against Local Councils and Chartered Organizations. *See* Disclosure Statement, Article V.N. The Disclosure Statement shows the Local Councils' expected contribution amounts to the Settlement Trust. *See* Disclosure Statement, Exhibit C. Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Additionally, the best interests test objections are premature and such objections should be considered at the proper time–plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.6. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Disclosure Statement must include information about the liquidation value of direct abuse claims against non-debtors released by the Plan to assess the best interests of the creditors test. (*See, e.g.*, Obj. ¶ 5 [D.I. 5964]). In addition, under the best interests of the creditors test, each claimant is entitled to receive value under the Plan that is at least equal to its rights in liquidation. § 1129(a)(7). (*See, e.g.*, Obj. ¶ 19 [D.I. 5964]). | The Debtors' believe that the best interest test, if it applies at all, only applies to the Debtors. However, to the extent that the Debtors are required to demonstrate that the Plan will satisfy the best interests test with respect to non-Debtors, the Debtors will do so at confirmation. See Debtors' Omnibus Reply at § II.A.6. The Disclosure Statement now provides information about the liquidation value of Abuse Claims. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. The Disclosure Statement includes an explanation of how the recovery percentages to holders of Abuse Claims were calculated. *See* Disclosure Statement, Article II.H and Article V.N. The Disclosure Statement also discloses information regarding the best interests of creditors. *See* Disclosure Statement, Article IX.D. |
| | | Because claimants' rights against Local Councils differ, the Disclosure Statement must address . . . claimants' estimated recovery against each Local Council (without regard to insurance shared with the Debtors); . . .. Claimants need that information to determine whether or not to accept the less favorable treatment under the Plan, release Local Councils, and forego claims under nonbankruptcy law. (*See, e.g.*, Obj. ¶ 18 [D.I. 5964]). | |
| | Herman Law Claimants [D.I. 6032] | The Disclosure Statement must incorporate adequate information about liquidation value of direct abuse claims against non-debtors released by the Plan so individual claimants may assess whether the Debtors satisfy the best interests of the creditors test for a confirmable plan. (Obj. ¶3). | As more fully described in the Disclosure Statement, additional discussion has been added with respect to the estimation of values of claims against Local Councils and Chartered Organizations. *See* Disclosure Statement, Article V.N. |
| | | The Disclosure Statement must address at a minimum. . . Claimants' estimated recovery against each Local Council (without regard to insurance shared with the Debtors); (Obj. ¶ 9). | Additionally, the best interests test objections are premature and such objections should be considered at the proper time–plan confirmation. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.6. |
| | The Church of Jesus Christ of Latter-day Saints [D.I. 6009][10] | The Disclosure Statement fails to disclose the risk that the Plan would not satisfy the "best interests" test with respect to holders of Indirect Abuse Claims. In a Chapter 7 liquidation, Chartered Organizations would retain the right to directly pursue claims against the insurance companies, and therefore stand to recover greater value than they would under the Plan. The liquidation analysis does not take into consideration the Chartered Organizations' rights under the historical insurance policies in a | The Debtors believe that the best interests test is met with respect to all applicable holders of Claims as demonstrated in the Liquidation Analysis, which provides for recoveries to holders of all Abuse Claims, including Indirect Abuse Claims. *See* Disclosure Statement, IX.D. Additionally, the Debtors have added a disclosure regarding risks in Article X of the Disclosure Statement. *See* Disclosure Statement,X.A.33. |

---

[10]   The following parties have joined in this supplemental objection: (a) Episcopal Church [D.I. 6014]; and (b) The Roman Catholic Archbishop of Los Angeles and its related BSA-Chartered Organizations, and the Roman Catholic Diocese of Brooklyn, New York [D.I. 6044].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | hypothetical Chapter 7 liquidation, nor is there any discussion of the best interests test in Article X of the Disclosure Statement, therefore rendering the Disclosure Statement inadequate. (Obj. ¶ 38). | |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement lacks an accurate description of Local Councils' assets and liabilities, which is essential to analysis of whether the Plan satisfies the "Best Interests of Creditors" test. (Obj. ¶ 92.). | The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis. In addition, as more fully described in the Disclosure Statement, additional discussion has been added with respect to the estimation of values of claims against Local Councils and Chartered Organizations. *See* Disclosure Statement, Article V.N.<br><br>The Disclosure Statement shows the Local Councils' expected contribution amounts to the Settlement Trust. *See* Disclosure Statement, Exhibit C.<br><br>The Disclosure Statement does not include valuations of Abuse Claims with respect to each individual Local Council and Chartered Organization because, as explained further in the Disclosure Statement, performing such an exercise would not likely establish reliable estimates due to the data currently available. *See* Disclosure Statement, Article V.N; Exhibit F.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to disclose the assets of local councils, which would become property of BSA if their charters are not renewed or BSA liquidates, so claimants do not have adequate information to vote on the Plan or raise a "Best Interests of Creditors" objection. (D.I. 3231 - Obj. ¶¶ 4, 19.) | The Disclosure Statement now provides balance sheets for the Local Councils showing their assets and liabilities. *See* Disclosure Statement, Exhibit D-1, Liquidation Analysis. |
| | United States Trustee [D.I. 3581] | The liquidation analysis presumes debtors do not need to satisfy the "Best Interests of Creditors" test because they are non-profit. The Debtors should explain the legal basis and authority for the contention that the best interest test does not apply to non-profit debtors. Alternatively, the Disclosure Statement should show what would be available for distribution under a liquidation and compare the Liquidation Analysis to the proposed plan to demonstrate how the Plan satisfies the "Best Interests of Creditors" test. (Obj. ¶ 21.) | Although the Debtors maintain their position that nonprofit organizations are not required to satisfy the best interest test, the Debtors have provided Liquidation Analyses, including Local Council liquidations which show that the Plan satisfies the "Best Interests of Creditors" test. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | The Church of Jesus Christ of Latter-day Saints [D.I. 6009][11] | The liquidation analysis does not take into consideration the Chartered Organizations' rights under the historical insurance policies in a hypothetical Chapter 7 liquidation. (Obj. ¶ 38). | As explained in the Liquidation Analysis, the recoveries estimated therein exclude any proceeds from insurance or from recoveries from any contribution claims against Chartered Organizations, on the basis that recoveries from such proceeds are assumed to be materially the same or greater under a plan of reorganization that provides for a global resolution of Abuse Claims than under a chapter 7 liquidation. *See* Disclosure Statement, Exhibit D, Liquidation Analysis. |
| **6) Adequate Disclosure – Third Party Bankruptcies** | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | **The Disclosure Statement fails to disclose that certain chartered organizations are debtors in their own bankruptcy cases, including the Archbishop of Agana, and fails to explain how the Hartford Settlement, Insurance Entity Injunction and Trust Distribution Procedures do not violate the automatic stay imposed by these other bankruptcy cases. The Disclosure Statement fails to disclose the specific exceptional treatment of debtor chartered organizations, which BSA claimed in a separate filing in the Archbishop of Agana bankruptcy case would receive such an exception. (D.I. 6039 - Obj. ¶ 5).** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now discloses that no Chartered Organization that is a debtor in bankruptcy, including the Archbishop of Agaña, shall be treated as a Participating Chartered Organization unless it advises Debtors' counsel in writing that it wishes to make the Chartered Organization Insurance Assignment. *See* Disclosure Statement, Article II.E.3 and Article VI.H.18. |
| **7) Adequate Disclosure - Protected Parties & Channeling Injunction** | SUMMARY OF ARGUMENTS | **The Disclosure Statement fails to disclose sufficient facts to determine whether a Chartered Organization's potential contribution will be "substantial," and the assets of and claims against each Chartered Organization. The Disclosure Statement also fails to disclose how the Chartered Organizations can obtain the benefit of the proposed Channeling Injunction, and the insurance and litigation risks of the Plan. The Disclosure Statement fails to include the protocol by which a Chartered Organization can become a Contributing Chartered Organization and obtain the benefits of the Channeling Injunction. The Disclosure Statement fails to contain adequate information regarding Chartered Organizations' potential exposure to Abuse lawsuits. The Disclosure Statement does not contain adequate information regarding the Debtors' insurance policies that Chartered Organizations are additional insureds under.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a Chartered Organization may become a Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2. The Disclosure Statement also discloses various risk factors that may be associated with the Channeling Injunction. *See* Disclosure Statement, Article X. Moreover, the Disclosure Statement now provides information concerning insurance rights of Chartered Organizations. *See* Disclosure Statement, Article III F.3.<br><br>The Disclosure Statement now also includes further disclosure with respect to the treatment of Chartered Organizations under the Plan. *See* Disclosure Statement, Article II.E and Article VI.H.18.<br><br>The Disclosure Statement now includes the number of claims against certain Chartered Organizations, including their nature. Exhibit F to the Disclosure Statement includes charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council |

---

[11] The following parties have joined in this supplemental objection: (a) Episcopal Church [D.I. 6014]; and (b) The Roman Catholic Archbishop of Los Angeles and its related BSA-Chartered Organizations, and the Roman Catholic Diocese of Brooklyn, New York [D.I. 6044].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | and allegation type, and (iv) counts by Chartered Organizations. Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individual Chartered Organization because, as explained further in the Disclosure Statement, performing such an exercise would not likely establish reliable estimates due to the data currently available, except in the case of certain Chartered Organizations where data becomes available and is sufficient such that the Debtors can determine the potential valuations of Abuse Claims with respect to such Chartered Organization. *See* Disclosure Statement, Article V.N; Exhibit F.<br><br>The Disclosure Statement now provides clear notice of the consequences of a vote to accept or reject the Plan as it pertains to Article X.J.4 of the Plan. *See* Disclosure Statement, Article V.R.2.d and Article II.A. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The DS fails to disclose current and former Chartered Organizations which may receive nondebtor releases and channeling injunctions. . . (D.I. 6039 - Obj. ¶ 8).<br><br>The DS fails to disclose the authority and standards by which the Settlement Trustee may settle with nondebtors and make these nondebtors Protected Parties entitled to releases and channeling injunctions. (Obj. ¶ 11). The DS fails to disclose what claims against chartered organizations may be released post-confirmation by the Settlement Trustee, as well the authority by which such claims may be settled. (D.I. 6039 - Obj. ¶ 12).<br><br>The DS fails to explain why survivors are not given an opportunity to opt-out from receiving compensation from nondebtor Protected Parties through the Settlement Trust and instead to pursue their claims in court against nondebtor Protected Parties. (D.I. 6039 - Obj. ¶ 13).<br><br>The DS fails to disclose adequate information concerning the previously proposed BSA Toggle Plan. Given the BSA Toggle Plan, Debtors also need to disclose how nondebtor releases and channeling injunctions are necessary as the BSA Toggle Plan appears to negate nondebtor releases. (D.I. 6039 - Obj. ¶ 14). | The Disclosure Statement now includes information about the potential parties that could be included in a release and the status of Contributing Chartered Organizations, Participating Chartered Organizations, Settling Insurers and Local Councils. *See* Disclosure Statement, Article II.G.<br><br>Additionally, the Disclosure Statement discusses potential risks regarding the approval of the releases, exculpation and the Channeling Injunction proposed in the Plan. *See* Disclosure Statement, Article X.A.<br><br>Additionally, as described in Article II.G and in accordance with the Plan, any Chartered Organization that is not a Contributing Chartered Organization as of the Effective Date may become a Protected Party after the Effective Date if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Chartered Organization and the Settlement Trustee. Likewise, any Chartered Organization that is not a Participating Chartered Organization as of the Effective Date may become a Participating Chartered Organization after the Effective Date by agreement with the Settlement Trustee and without further order of the Bankruptcy Court; provided, however, that the Settlement Trustee shall file a notice with the Bankruptcy Court within thirty (30) days of entering into any agreement with a Chartered Organization that deems such Chartered Organization to be a Limited Protected Party, together with an amendment to Exhibit K of the Plan removing such Chartered Organization from the list of Chartered Organizations that are not Participating Chartered Organizations. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | After the Effective Date, any Insurance Company that is a Non-Settling Insurance Company as of the Effective Date may become a Protected Party if the Bankruptcy Court, after notice and an opportunity for parties in interest to be heard, approves a settlement agreement between such Insurance Company and the Settlement Trustee. |
| | | | The Objector's complaint regarding an opt-out is, at heart, an objection to the releases and Channeling Injunction with respect to non-debtors that become Protected Parties. As explained in the Disclosure Statement, the Plan provides for non-Debtor releases and benefits of the Channeling Injunction in exchange for substantial contributions. *See* Disclosure Statement, Article II.G and Article VI.Q.2. |
| | | | The BSA Toggle Plan has been removed and is no longer proposed to be solicited. Therefore, information regarding the BSA Toggle Plan is irrelevant and not included in the Disclosure Statement. The Plan, as described in the Disclosure Statement, provides a superior means of reorganizing, and allows the Debtors to achieve the dual objectives that the Debtors set out to accomplish at the outset of these cases: (a) to timely and equitably compensate survivors of Abuse in Scouting and (b) ensure that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission. |
| | The Roman Catholic and United Methodist Ad Hoc Committees (the "Catholic and Methodist Committees") [D.I. 6067][12] | The DS also fails to disclose how the Chartered Organizations can obtain the benefit of the proposed Channeling Injunction, and the insurance and litigation risks of the Plan. (Obj. ¶ 16). The DS fails to include the protocol by which a Chartered Organization can become a Contributing Chartered Organization and obtain the benefits of the Channeling Injunction. (Obj. ¶ 17). The DS fails to contain adequate information regarding Chartered Organizations' potential exposure to abuse lawsuits, such as number and type of abuse claims against each Chartered Organization that might justify becoming a Contributing Chartered Organization. (Obj. ¶ 18). The DS does not contain adequate information regarding the Debtors' insurance policies that Chartered Organizations are additional insureds under. (Obj. ¶ 19). | The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a Chartered Organization may become a Protected Party or Limited Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2.<br><br>Moreover, the Disclosure Statement now provides information concerning insurance rights of Chartered Organizations. Article III F.3.<br><br>The Disclosure Statement now includes the number of claims against certain Chartered Organizations, including their nature. Exhibit F to the Disclosure Statement includes charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individual Chartered Organization because, as |

---

[12] The following parties have joined in this objection: (a) Archbishop of Agana [D.I. 6070]; (b) Buffalo Diocese [D.I. 6071]; (c) Ogdenburg Diocese [D.I. 6072]; (d) Rochester Diocese [D.I. 6073]; (e) Syracuse Diocese [D.I. 6074]; and (f) Norwich Diocese [D.I. 6075].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | explained further in the Disclosure Statement, performing such an exercise would not likely establish reliable estimates due to the data currently available. *See* Disclosure Statement, Article V.N; Exhibit F. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement does not provide adequate information regarding the Chartered Organizations, the number or nature of the claims against each of them and their participation under the Plan as beneficiaries of the non-consensual third-party releases and a channeling injunction. There is no description of a mechanism for a Chartered Organizations to become eligible to receive a non-consensual third-party release of claims or channeling injunction. (Obj. ¶ 110.) | The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a Chartered Organization may become a Protected Party or Limited Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2.<br><br>Moreover, the Disclosure Statement now provides information concerning insurance rights of Chartered Organizations. Article III F.3.<br><br>The Disclosure Statement now includes the number of claims against certain Chartered Organizations, including their nature. Exhibit F to the Disclosure Statement includes charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individual Chartered Organization because, as explained further in the Disclosure Statement, performing such an exercise would not likely establish reliable estimates due to the data currently available. *See* Disclosure Statement, Article V.N; Exhibit F. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement does not disclose the necessity and basis for the breadth of the channeling injunction and the risk associated with its inclusion in the Plan. (D.I. 3856 - Obj. at 24.) | The Disclosure Statement addresses the risk factors associated with the Channeling Injunction. *See* Disclosure Statement, Article X.28. Moreover, the necessity of the breadth of the Channeling Injunction is discussed in Article II.G of Disclosure Statement. |
| | United States Trustee [D.I. 3581] | It is difficult to ascertain which causes of action will or will not be subject to a release or the channeling injunction. (Obj. ¶ 3.) Because the ability of creditors to opt out of the Plan's section X.J.4 release is conditioned on their decision to vote for or against the plan, the effect of these releases should be clarified prior to Plan solicitation. The right of accepting creditors to opt out of releases should not be restricted unless the Disclosure Statement is amended to more clearly advise creditors of the consequences of their vote to accept. (Obj. ¶¶ 24, 33.) | The Disclosure Statement now provides a discussion of the Channeling Injunction and. See Article II.G. Specifically, the parties that vote to accept or reject the Plan may opt out of the release provisions in Article X.K.4 of the Plan. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Aylstock, Witkin, Kreis & Overholtz, PLLC Claimants [D.I. 3274] | The Disclosure Statement and the accompanying solicitation procedures fail to notify creditors, including the AWKO Claimants, which Local Council and/or Chartered Organization is associated with their Abuse, whether any such entity will receive a release, and if so, the terms of the release. (Obj. ¶ 3.)<br><br>The Disclosure Statement fails to explain what contribution the insurers, their non-Debtor insureds, Local Councils and/or Chartered Organizations will make in order to receive a release. (Obj. ¶ 4.) | The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a Chartered Organization may become a Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2. The Disclosure Statement also discloses various risk factors that may be associated with the Channeling Injunction. *See* Disclosure Statement, Article X. Moreover, the Disclosure Statement now provides information concerning insurance rights of Chartered Organizations. Article III F.3. |
| | Heman Law Claimants [D.I. 6032] | The identity of any non-debtor Chartered Organization designated a Protected Party under the Plan, its potential liability to claimants, and the contribution being made to obtain the protection of this Court's Channeling Injunction, must be disclosed before the Channeling Injunction can be issued by the Court. (Obj. ¶3). | The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a Chartered Organization may become a Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2. The Disclosure Statement also discloses various risk factors that may be associated with the Channeling Injunction. *See* Disclosure Statement, Article X. Moreover, the Disclosure Statement now provides information concerning insurance rights of Chartered Organizations. Article III F.3. |
| **8) Adequate Disclosure – Chartered Organization Treatment** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement does not provide adequate information regarding the treatment of indemnity claims and insurance rights held by Chartered Organizations, the subordination of Indirect Abuse Claims, or whether the Plan satisfies the best interest test.**<br><br>**The Disclosure Statement fails to disclose the lack of res judicata and evidentiary protections for the Chartered Organizations under the Plan, and fails to disclose any such risks associated with the impact of determinations made by the Settlement Trustee.**<br><br>**The Disclosure Statement fails to disclose that the Plan would release the claims of non-debtor insureds against the insurance companies, and thus adjudicate the state law property rights of such parties, in abrogation of parties' due process rights.**<br><br>**The Disclosure Statement fails to disclose how a Chartered Organization might become a Contributing Chartered Organization, what the cost might be (if any), or how becoming a Contributing Chartered Organization would impact a Chartered Organization's right to indemnification and/or defense under applicable insurance policies.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now also includes further disclosure with respect to the treatment of Chartered Organizations under the Plan. *See* Disclosure Statement, Article II.E and Article VI.H.18.<br><br>The Disclosure Statement now provides further disclosure on the Trust Distribution Procedures including the treatment of "Indirect Abuse Indemnity Claims. *See* Disclosure Statement, Article VII.B. The treatment of Indirect Abuse Indemnity Claims under the Plan pursuant to the TDP has been amended so that Indirect Abuse Claims are no longer subordinated to Direct Abuse Claims.<br><br>The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a party may become a Protected Party or Limited Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | The Church of Jesus Christ of Latter-day Saints [D.I. 6009]; [D.I. 3263] | The Disclosure Statement does not provide adequate information regarding the treatment of indemnity claims and insurance rights held by Chartered Organizations, the subordination of Indirect Abuse Claims, or whether the Plan satisfies the best interest test. (D.I. 6009 - Obj. ¶ 4).

The Disclosure Statement fails to disclose that the Plan would release the claims of non-debtor insureds against the insurance companies, and thus adjudicate the state law property rights of such parties, in abrogation of parties' due process rights. The Disclosure Statement is misleading in that it states that holders of Indirect Abuse Claims will have unspecified "insurance rights." *See* Disclosure Statement § II.G, p. 22. The Disclosure Statement should make clear that non-debtor insureds with claims against the insurance policies would be released under the Plan, and that such insureds would be left without recourse to access the proceeds of the insurance policies or pursue claims against the insurance companies. (Obj. ¶ 34).

The Disclosure Statement fails to disclose that the TDP extinguish the indemnity claims of potentially tens of thousands of Chartered Organizations, who are left to fend for themselves in the tort system without recourse against the Settlement Trust or the BSA. The Disclosure Statement does not disclose the reality that in order to have a compensable claim at all, holders of Indirect Abuse Claims are required to settle direct claims on behalf of the Settlement Trust (including Protected Parties) in the tort system, with the expectation that they could recover some fraction of what the direct claimant could have recovered under the TDP. (D.I. 6009 - Obj. ¶ 35).

The Disclosure Statement fails to disclose the lack of res judicata and evidentiary protections for the Chartered Organizations under the Plan, and fails to disclose any such risks associated with the impact of determinations made by the Settlement Trustee. The Disclosure Statement fails to disclose that the TDP were revised such that protections in place for non-settling parties were explicitly stricken, with the result that determinations by the Settlement Trustee may subsequently be admissible as evidence in, binding in, or have res judicata or other preclusive effect in any lawsuit or other proceeding against nonsettling third parties in the tort system. The removal of | The Disclosure Statement now provides further disclosure on the Trust Distribution Procedures including the treatment of "Indirect Abuse Indemnity Claims. *See* Disclosure Statement, Article VII.B. The treatment of Indirect Abuse Indemnity Claims under the Plan pursuant to the TDP has been amended so that Indirect Abuse Claims are no longer subordinated to Direct Abuse Claims.

The Plan now provides a mechanism by which other Chartered Organizations can become Participating Chartered Organizations (unless they elect not to or are chapter 11 debtors) through the assignment and transfer to the Settlement Trust of all of the post-1975 insurance rights of such Participating Chartered Organization in exchange for inclusion as a Limited Protected Party under the Plan, thereby providing the potential for substantial recoveries to holders of Abuse Claims. The mechanism also includes a pathway for other Chartered Organizations to make further substantial contributions to the Settlement Trust to resolve Abuse Claims that may be asserted against them related to Abuse that arose in connection with their sponsorship of one or more Scouting units, including those that arose prior to January 1, 1976, in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction, thereby becoming "Contributing Chartered Organizations" under the Plan. Thus, Chartered Organizations insurance rights, to the extent they hold them, will not be transferred to the Settlement Trust without consent of such Chartered Organization. *See* Disclosure Statement, Article II.E and Article VI.Q.2.

The Plan has been amended, as described in the Disclosure Statement, that Under the Plan, all rights and obligations under or with respect to Insurance Policies (but not the policies themselves) will be assigned and transferred to the Settlement Trust as of the Effective Date. The Insurance Assignment described in the foregoing sentence does not, however, divest the Church (or any other Person with rights under the Insurance Policies) of the value attributable to the insurance coverage and related rights. Rather, the Church may assert against the Settlement Trust any Indirect Abuse Claim that, but for the Insurance Assignment, the Church could have asserted under an Insurance Policy. As set forth in the Disclosure Statement, the Debtors project that holders of certain Indirect Abuse Claims may recover up to the full amount of such Claims from the Settlement Trust. *See* Disclosure Statement, Article II.H. The Disclosure Statement provides that pursuant to |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | such protections leaves non-settling third parties, like the Church, vulnerable to the risk that determinations by the Settlement Trust will be used against the Church in a highly prejudicial manner. The fact that such protections have been completely removed and that such removal and the attendant risks have not been disclosed renders the Disclosure Statement inadequate. (D.I. 6009 - Obj. ¶ 37). The value the Church would retain—the value attributable to retaining coverage and related rights under various insurance policies—in a chapter 7 liquidation is greater than what it would receive under the Plan. (D.I. 3263 - Obj. ¶ 19.) | the Trust Distribution Procedures, recoveries on account of Indirect Abuse Claims are the same as Direct Abuse Claims. *See* Disclosure Statement, Article II.H. The treatment of indirect abuse indemnity claims under the plan pursuant to the TDP has been amended so that Indirect Abuse Claims are no longer subordinated to Direct Abuse Claims. The Disclosure Statement now also includes further disclosure with respect to the treatment of Chartered Organizations under the Plan. *See* Disclosure Statement, Article II.E and Article VI.H.18. The Disclosure Statement now provides further disclosure on the Trust Distribution Procedures including the treatment of "Indirect Abuse Indemnity Claims." *See* Disclosure Statement, Article VII.B. |
| | Knights of Columbus Entities [D.I. 6041]; [D.I 3270] | The Disclosure Statement does not provide adequate information for Chartered Organizations, such as the Knights of Columbus Entities, to make an informed decision. The Disclosure Statement fails to disclose how a Chartered Organization might become a Contributing Chartered Organization, what the cost might be (if any), or how becoming a Contributing Chartered Organization would impact a Chartered Organization's right to indemnification and/or defense under applicable insurance policies. (D.I. 6041 - Obj. at 1-5). | The Disclosure Statement now includes further disclosure with respect to the Channeling Injunction, including information regarding how a party may become a Protected Party or Limited Protected Party. *See* Disclosure Statement, Article II.E and Article VI.Q.2. |
| | Catholic and Methodist Committees [D.I. 6067] | The Disclosure Statement fails to disclose that the TDP were negotiated to eliminate any protections for non-settling parties, with the result that determinations may be admissible as evidence in, binding in, or have *res judicata* or other preclusive effect in any law suit or other proceeding against non-settling third parties in the tort system. The Disclosure Statement fails to disclose the risk that the Plan would not satisfy the "best interests" test with respect to holders of Indirect Abuse Claims, as they would retain the right to directly pursue claims against insurance companies and stand to recover greater value in a hypothetical chapter 7 liquidation. (Obj. ¶ 25). | The Disclosure Statement now provides further disclosure on the Trust Distribution Procedures including the treatment of "Indirect Abuse Indemnity Claims *See* Disclosure Statement, Article VII.B. The Disclosure Statement also discloses information regarding the best interests of creditors. *See* Disclosure Statement, Article IX.D; *see also* Disclosure Statement, Liquidation Analysis, Exhibit D. |
| | The Roman Catholic Archbishop of Los Angeles, a corporation sole, and its related BSA-Chartered Organizations, and The Roman Catholic Diocese | RCALA, the ADLA Chartered Organizations, and RCDB have Indirect Abuse Claims that are subjected to vague and indeterminate procedures for allowance and payment. RCALA, the ADLA Chartered Organizations, and RCDB have rights as insureds under certain of the BSA's and Local Councils' insurance policies that are proposed to be assigned to the Settlement Trust under the Plan, which rights would be effectively cut off by the proposed Insurance Entity Injunction. The Plan is patently unconfirmable in its current form. . . (Obj. ¶¶ 1-3). | The Plan now provides a mechanism by which other Chartered Organizations can become Participating Chartered Organizations (unless they elect not to or are chapter 11 debtors) through the assignment and transfer to the Settlement Trust of all of the post-1975 insurance rights of such Participating Chartered Organization in exchange for inclusion as a Limited Protected Party under the Plan, thereby providing the potential for substantial recoveries to holders of Abuse Claims. The mechanism also includes a pathway for other Chartered Organizations to make further substantial contributions to the Settlement Trust to resolve Abuse Claims that may be asserted against them related to Abuse that arose in connection |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | of Brooklyn, New York [D.I. 6044] | | with their sponsorship of one or more Scouting units, including those that arose prior to January 1, 1976, in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction, thereby becoming "Contributing Chartered Organizations" under the Plan. Thus, Chartered Organizations insurance rights, to the extent they hold them, will not be transferred to the Settlement Trust without consent of such Chartered Organization. *See* Disclosure Statement, Article II.E and Article VI.Q.2. |
| **9) Adequate Disclosure – Insurance Coverage Risk** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to disclose insurance coverage risks.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Saunders & Walker Claimants [D.I. 5366] | The Disclosure Statement fails to disclose insurance coverage risks. (*See, e.g.*, Obj. ¶ 16.) | The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Disclosure Statement must disclose risks from coverage positions asserted by liability insurers for the Debtors and non-debtors that could limit or eliminate insurer contributions and reduce amount claimants could recover. (*See, e.g.*, Obj. ¶ 5 [D.I. 5964]).<br><br>The agreement of Local Councils to resolve their liability without the insurers' involvement and to transfer their insurance rights to the Trust triggers additional coverage defenses that could further diminish recovery. (*See, e.g.*, Obj. ¶ 24 [D.I. 5964]).<br><br>The Disclosure Statement fails to disclose insurance coverage risks. (*See, e.g.*, Obj. ¶ 15 [D.I. 2449].) | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Herman Law Claimants [D.I. 6032] | The Disclosure Statement must incorporate adequate information about the material risks arising from coverage positions asserted by liability insurers for the Debtors and non-debtors that, if successful, in whole or in part, could substantially limit or eliminate insurer | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | contributions and significant reduce amounts claimants could recover from the Trust. These key issues are:<br>• The agreement of the Local Council to resolve their liability without the applicable insurers' involvement and the transfer of the Local Council's insurances rights to the Trust could trigger additional coverage defenses that could further diminish the recovery from the insurers from what a claimant could achieve today. (Obj. ¶13).<br>• Some insurers contend that pursuing a bankruptcy to address the abuse liabilities and negotiate a proposed settlement, without first obtaining insurer consent, violates the cooperation obligations of the policyholders and results in the forfeiture of coverage. (Obj. ¶14).<br>• The insurers also challenge the assignment of insurance policies to the Trust as violative of the insurance contracts. If successful, they could deprive the Trust of billions of dollars of insurance assets otherwise available to the non-debtors to cover their liabilities to abuse victims. (Obj. ¶15). | Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Zuckerman Spaeder LLP Claimants [D.I. 6043]; [D.I. 3277] | The Disclosure Statement fails to discuss the insurance coverage defenses or provide any assessment of the risks of insurers' defenses. (D.I. 6043) | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Liberty Mutual Insurance Company, together with its affiliates and subsidiaries (collectively, "Liberty") [D.I. 6057]; [D.I. 3578] | The Disclosure Statement does not explain risks related to the Insurance Companies' coverage defenses. Debtors neglect to evaluate risks associated with insurers asserting coverage defenses. (D.I. 3578 - Obj. ¶ 7.) | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Century Indemnity | The Disclosure Statement fails to disclose insurance coverage risks. There is no discussion on the risks associated with Debtors' | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | prepetition conduct, and the risk associated with the proposed assignment of all the insurance rights of the Debtors, the Local Councils, and the Contributing Chartered Organizations to a trust, including the risk related to the enforcement of anti-assignment clauses in many of those policies. (D.I. 3856 - Obj. at 25-26.)<br><br>The Disclosure Statement does not acknowledge Debtors fail to cooperate with insurers, the risk of coverage due to the expedited distribution option, and the risk that the TDP's claim matrix that would allow claims barred by the applicable statute of limitations or failure to timely file a proof of claim. (D.I. 3856 - Obj. at 26.) | the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | AIG Companies [D.I. 3523] | The Disclosure Statement should disclose that the AIG Companies and other Insurance Companies have meritorious coverage defenses that may substantially reduce the amount of available coverage and that coverage will be subject to expensive and time-consuming litigation in which any Non-Settling Insurance Companies could raise significant coverage defenses, such as exhaustion of underlying limits. (Obj. ¶¶ 30-31).<br><br>The Disclosure Statement does not have enough disclosures regarding the various insurance coverage risks and contains misleading information about the AIG policies. (Obj. ¶¶ 39-41).<br><br>Debtors should describe the risks associated with (a) their proposed treatment of self-insured retentions and allocation of deductibles and (b) their attempts to transfer policy coverage to the Settlement Trust in the face of anti-assignment provisions. (Obj. ¶ 31.) The Disclosure Statement should also disclose that the Insurance Assignment may violate any anti-assignment provisions in those policies, resulting in a diminished corpus of the Settlement Trust. (Obj. ¶ 36.) It is unclear whether federal preemption of anti-assignment provisions can or should apply in any context other than where section 524(g) of the Bankruptcy Code is applicable. (Obj. ¶ 36.)<br><br>AIG disputes the alleged lost policies and the Disclosure Statement needs to clarify that the settlement trust may be reduced as a result. (Obj. ¶ 47). | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.<br><br>The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Edward Marcelino, George Burgos, William F. Tompkins III, and Richard G. Dunn [D.I. 2960] | There is a failure to explain the likelihood of defeating the insurers' coverage defenses or the insurance companies' ability to pay abuse claims that total billions of dollars. (Obj. ¶ 3.) | The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement "should provide more in-depth disclosure regarding the carriers with substantial coverage exposure, e.g., Century and Hartford at a minimum" – the Disclosure Statement lacks adequate information regarding coverage under Century and Hartford policies in certain years. (Obj. ¶ 65.). The Disclosure Statement does not disclose risks that certain insurers may not have the ability to pay per policy limits, which may limit payment per occurrence to $500,000, which is not adequate compensation. (Obj. ¶ 66.)

The Disclosure Statement does not disclose that certain insurance policies have been exhausted. (Obj. ¶ 72.) The Disclosure Statement does not disclose the risks that certain insurers may not have the ability to pay per policy limits. (Obj. ¶ 73.)

The Disclosure Statement does not disclose insurance coverage risks regarding assignment of Local Councils' insurance policies in contravention of anti-assignment provisions. (Obj. ¶ 109.) | The Disclosure Statement provides further information regarding insurance coverage for Abuse Claims, including the Debtors' insurance coverage for the Local Councils, the Chartered Organizations' rights under the Debtors' Insurance Policies, as well as the insurance coverage defenses asserted by Insurance Companies. *See* Disclosure Statement, Article III.F.

The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| | Allianz Global Risks US Insurance Company, National Surety Corporation, and Interstate Fire & Casualty Company (collectively, the "Allianz | Debtors have not disclosed the risks related to insurance coverage defenses. (Obj. ¶ 5.) | The Disclosure Statement includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Insurers") [D.I. 3549][13] | | |
| **10) Adequate Disclosure – Insurance Utilization** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to disclose how insurance proceeds assigned to the trust will be utilized or the risks associated with it.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Plan provides for the assignment and transfer to the Settlement Trust of all of the insurance rights of all of the BSA, Local Councils, Contributing Chartered Organizations and certain insurance rights of Participating Chartered Organizations under insurance policies of the Debtors, Local Councils, Participating Chartered Organizations, and such Contributing Chartered Organizations, thereby providing the potential for substantial insurance recoveries to holders of Direct Abuse Claims. *See* Disclosure Statement, Article II.D.  To facilitate the Insurance Assignment, protect the Settlement Trust, and preserve the Settlement Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court and the District Court under section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the Insurance Entity Injunction set forth in Article X.H of the Plan. *See* Disclosure Statement, Article VI.Q.4.<br>The Disclosure Statement explains that the assets contributed to the Settlement Trust will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures.  *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement.<br><br>The Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II.<br><br>The Disclosure Statement now includes further disclosure with respect to risk factors associated with insurance coverage. See Disclosure Statement, Articles X.A.21–X.A.25 |
| | Saunders & Walker Claimants [D.I. 5366] | The Disclosure Statement fails to disclose how insurance policies assigned to the trust will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal | The Disclosure Statement explains that the assets contributed to the Settlement Trust will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust |

[13] The following parties join in this objection: (a) Clarendon National Insurance Company [D.I. 3558]; (b) Continental Insurance Company [D.I. 3582]; (c) Arch Insurance Company [D.I. 6053]; and (d) General Star Indemnity Company [D.I. 3740]

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | expenses, or to compensate others who do not have a claim covered under the same policy. (*See, e.g.*, Obj. ¶¶ 16-18.) | Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement.<br><br>The Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Disclosure Statement fails to disclose how insurance policies assigned to the trust will be utilized, including whether the proceeds of a policy that covers a Claimant's claim is being used to pay administrative expenses, to pay trust administrative and legal expenses, or to compensate others who do not have a claim covered under the same policy. (*See, e.g.*, Obj. ¶¶ 16-18 [D.I. 2449].) | The Disclosure Statement explains that the assets contributed to the Settlement Trust will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement.<br><br>The Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement fails to disclose how insurance proceeds assigned to the trust will be utilized or the risks associated with it. The Disclosure Statement should disclose if insurance proceeds go toward compensating claimants who do not have a claim under the same policy or if the proceeds go solely toward the named insured. The Disclosure Statement should disclose whether insurance proceeds would pay administrative, trust, and legal expenses. (Obj. at 27-28.) | The Disclosure Statement explains that the assets contributed to the Settlement Trust will be administered by the Settlement Trustee and used to resolve Abuse Claims in accordance with the Settlement Trust Documents, including the Settlement Trust Agreement and the Trust Distribution Procedures. *See* Disclosure Statement, Article II.D; *see also* Plan, Exhibit A, Trust Distribution Procedures and Plan, Exhibit B, Settlement Trust Agreement.<br><br>The Trust Agreement provides that the Settlement Trust Assets, which include the Insurance Policies, shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II.<br><br>The Disclosure Statement now includes further disclosure with respect to risk factors associated with insurance coverage. *See* Disclosure Statement, Articles X.A.21–X.A.25. |
| **11) Adequate Disclosure – Insurance Contribution** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to disclose the contribution of insurers and their insureds in order to receive a release.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now indicates that with respect to Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan. *See* Disclosure Statement, Article II.A |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | and Article V.R. The settlement and contribution to be made by Hartford is described in the Disclosure Statement, including Article V.R.3 of the Disclosure Statement.<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.E, II.G, V.R and VI.Q. |
| | Saunders & Walker Claimants [D.I. 5366] | The Disclosure Statement fails to disclose the contribution of insurers and their insureds in order to receive a release. (*See, e.g.*, Obj. ¶ 20.) | The Disclosure Statement now indicates that with respect to Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan. *See* Disclosure Statement, Article II.A and Article V.R. The settlement and contribution to be made by Hartford is described in the Disclosure Statement, including Article V.R.3 of the Disclosure Statement.<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.E, II.G, V.R and VI.Q. |
| | Aylstock, Witkin, Kreis & Overholtz, PLLC Claimants [D.I. 3274] | The Disclosure Statement fails to explain what contribution the insurers, their non-Debtor insureds, Local Councils and/or Chartered Organizations will make in order to receive a release. (Obj. ¶ 4.) | The Disclosure Statement now indicates that with respect to Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan. *See* Disclosure Statement, Article II.A and Article V.R. The settlement and contribution to be made by Hartford is described in the Disclosure Statement, including Article V.R.3 of the Disclosure Statement.<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.E, II.G, V.R and VI.Q. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Disclosure Statement fails to disclose the contribution of insurers and their insureds in order to receive a release. (*See, e.g.*, Obj. ¶ 19 [D.I. 2449].) | The Disclosure Statement now indicates that with respect to Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan. *See* Disclosure Statement, Article II.A and Article V.R. The settlement and contribution to be made by Hartford is described in the Disclosure Statement, including Article V.R.3 of the Disclosure Statement.<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.E, II.G, V.R and VI.Q. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Edward Marcelino, George Burgos, William F. Tompkins III, and Richard G. Dunn [D.I. 2960] | There is a failure to explain what contribution the insurers and their non-Debtor insureds will make in order to receive a release. (Obj. ¶ 6.) | The Disclosure Statement now indicates that with respect to Settling Insurance Companies, as of this filing, there is one Settling Insurance Company participating in the Plan. *See* Disclosure Statement, Article II.A and Article V.R. The settlement and contribution to be made by Hartford is described in the Disclosure Statement, including Article V.R.3 of the Disclosure Statement.<br><br>The Debtors have added information about the potential parties that could be included in a release and the status of Contributing Charted Organizations, Settling Insurers and Local Councils. *See* Plan, Article X.J; Disclosure Statement, Articles II.E, II.G, V.R and VI.Q. |
| 12) Adequate Disclosure – Insurance Assignment | **SUMMARY OF ARGUMENTS** | **The insurers argue that the assignment of insurance policies to the Settlement Trust violates insurance contracts. The Disclosure Statement does not provide adequate information to allow a reasonable claimant to appreciate the material risks of insurers' positions on these key issues.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now provides further information on insurance assignment risks. *See* Disclosure Statement, Article X.A.24. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The insurers argue that the assignment of insurance policies to the Settlement Trust violates insurance contracts. If successful in the anti-assignment arguments, insurers would deprive the Settlement Trust of billions of dollars. The Disclosure Statement does not provide adequate information to allow a reasonable claimant to appreciate the material risks of insurers' positions on these key issues. (*See, e.g.*, Obj. ¶ 25 [D.I. 5964]). | The Disclosure Statement now provides further information on insurance assignment risks. *See* Disclosure Statement, Articles III.F.6 and X.A.24. |
| | Herman Law Claimants [D.I. 6032] | The insurers challenge the assignment of insurance policies to the Settlement Trust as violative of the insurance contracts. If successful, they could deprive the Settlement Trust of billions of dollars of insurance assets otherwise available to the non-debtors to cover their liabilities to abuse victims. (Obj. ¶15). | The Disclosure Statement now provides further information on insurance assignment risks. *See* Disclosure Statement, Articles III.F.6 and X.A.24. |
| | Zuckerman Spaeder LLP Claimants [D.I. 6043]; [D.I. 3277] | The Disclosure Statement fails to discuss any risks associated with the proposed assignment of insurance policies to a trust and any risks that the insurance provisions would effectively cap the insurers' contributions or that the Trust Distribution Procedures would not be binding on the insurers. (D.I. 6043 - Obj. ¶ 5). | The Disclosure Statement now provides further information on insurance assignment risks. *See* Disclosure Statement, Articles III.F.6 and X.A.24. |
| 13) Adequate Disclosure – TDP Binding Effect on Insurance Parties | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement does not disclose the insurers' argument that the TDP values are not binding on the insurers and that their duty to indemnify their insureds may be capped at the amounts their insureds paid into the Trust. The Disclosure Statement must disclose that the law remains unsettled and that if the TDP awards are not binding, and if the exposure of the** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement provides additional disclosure regarding the risk factors associated with distributions under the Trust Distribution Procedures. *See* Disclosure Statement Articles X.A.13; III.F.6 |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | insurers are capped at their contribution, an abuse claimant may receive a fraction of the amount of their claim. | |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | The Disclosure Statement does not disclose the insurers' argument that the TDP values are not binding on the insurers and that their duty to indemnify their insureds may be capped at the amounts their insureds paid into the Trust (citing *Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958 (Cal. Ct. App. 2006); *UNR Indus., Inc. v. Continental Casualty Co.*, 942 F.2d 1101 (7th Cir. 1991); *National Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co.*, 2012 U.S. Dist. LEXIS 29568 (D. Md. Mar. 6, 2012)). The Disclosure Statement must disclose that the law remains unsettled and that if the TDP awards are not binding, and if the exposure of the insurers are capped at their contribution, an abuse claimant may receive a fraction of the amount of their claim. (*See, e.g.*, Obj. ¶ 26 [D.I. 5964]). | The Disclosure Statement provides additional disclosure regarding the risk factors associated with distributions under the Trust Distribution Procedures. *See* Disclosure Statement Articles X.A.13; III.F.6 |
| | Herman Law Claimants [D.I. 6032] | The Debtors proclaim that the TDP may result in creditors receiving up to 100% of the value assigned to their claim under the TDP, but they fail to disclose or discuss the insurers' argument that those values are not binding on the insurers and that their duty to indemnify their insureds may be capped at the amounts their insureds paid into the Trust. The law is unsettled and conflicting and the Amended Disclosure Statement must disclose the material risk that the trust distribution awards are not binding and exposure of the insurers may be capped at the contribution of their insureds. (Obj. ¶16). | The Disclosure Statement provides additional disclosure regarding the risk factors associated with distributions under the Trust Distribution Procedures. *See* Disclosure Statement Articles X.A.13; III.F.6. |
| **14) Adequate Disclosure – Insurance Setoff** | Liberty [D.I. 6057]; [D.I. 3578] | Though language was added to the Disclosure Statement to address Liberty's Original Objection – "Neither any provision in the Plan nor the occurrence of the Effective Date shall alter, amend, or otherwise impair the rights and obligations of BSA, JPM, or any applicable Insurance Company holding one or more Insurer LCs." Disclosure Statement, Article III.F.7 – such language remains missing from the Plan. The Disclosure Statement and Plan contain contradictory language providing that the only recourse Liberty may have to satisfy any amounts that come due under the LM Policies is to assert an Indirect Abuse Claim against the Settlement Trust. See DS, Art. VI.Q.2.a. (Obj. ¶ 12). The Debtors must address this inconsistency by either (i) if the intent is to leave unaffected Liberty's right to set off claims against its Security, the Disclosure Statement and the Plan, must make that point explicit; or (ii) if the intent is to eliminate such recourse, the Disclosure Statement must be amended to clarify that point and to explain both the legal justification for such action and | **DEBTORS HAVE AMENDED THE PLAN**<br><br>The Plan has been updated to reflected with respect to letters of credit rights. *See* Plan, Article V.V.h. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | how the Plan can be insurance neutral in the face of such a provision. (Obj. ¶ 13). | |
| 15) Adequate Disclosure – Insurance Coverage Issue Dispute | SUMMARY OF ARGUMENTS | **The Disclosure Statement provides misleading, incorrect, and incomplete information concerning the effect of uncapped, per-occurrence self-insured retentions ("SIRs")** | **DEBTORS HAVE ADDED DISCLOSURE** |
| | | | The Disclosure Statement now includes further disclosure with respect to the BSA's insurance program, which addresses the disputes between certain carriers and the BSA, including SIRs. *See* Disclosure Statement, Article III.F.1. |
| | | **The Disclosure Statement must explain why a claim for payment of a deductible or SIR is being treated as a subordinated Indirect Abuse Claim and not as a breach of contract claim, as well as why the Settlement Trust cannot satisfy deductibles and SIRs or, if the Debtors are simply choosing not to satisfy such amounts, the Disclosure Statement should explain that such anticipatory breach jeopardizes insurance coverage.** | Adequate information regarding self-insured retentions, including relevant risk factors related to insurance, is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.1, and Article X.A.23. |
| | Liberty [D.I. 6057]; [D.I. 3578] | The Disclosure Statement fails to explain the legal bases for (i) shifting onto Liberty and the other Insurance Companies the obligation to satisfy any deductible or SIRs; (ii) treating a claim for payment of a deductible or SIR as a subordinated Indirect Abuse Claim and not as a breach of contract claim; (iii) subordinating such claims to payment in full of Direct Abuse Claims; and (iv) terminating Liberty's right to seek payment of a deductible or SIR from non-debtor entities, such as the Local Councils and Chartered Organizations. (Obj. ¶ 14). | The Disclosure Statement now includes further disclosure with respect to the BSA's insurance program, which addresses the disputes between certain carriers and the BSA, including SIRs. *See* Disclosure Statement, Article III.F.1. |
| | | | Adequate information regarding self-insured retentions, including relevant risk factors related to insurance, is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.1, and Article X.A.23. |
| | | Although the Plan and Disclosure Statement no longer explicitly require Liberty to satisfy any deductible or SIR, deductible is still included in the definition of Indirect Abuse Claim. Disclosure Statement Art. VII.B.3.b., Article II.G. If the intent is to require Liberty to satisfy such amounts, the Disclosure Statement must explain why a claim for payment of a deductible or SIR is being treated as a subordinated Indirect Abuse Claim and not as a breach of contract claim, as well as why the Settlement Trust cannot satisfy deductibles and SIRs or, if the Debtors are simply choosing not to satisfy such amounts, the Disclosure Statement should explain that such anticipatory breach jeopardizes insurance coverage under the LM Policies. (Obj. ¶¶ 22-24). | |
| | American Zurich Insurance Company, American Guarantee and | The Disclosure Statement provides misleading, incorrect, and incomplete information concerning the effect of uncapped, per-occurrence self-insured retentions ("SIRs") applicable to the excess policies issued by the Insurers to the BSA and most other policies issued to BSA in 1986 or later. (Obj. at 2). | The Disclosure Statement now includes further disclosure with respect to the BSA's insurance program, which addresses the disputes between certain carriers and the BSA. *See* Disclosure Statement, Article III.F.1. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Liability Insurance Company, Steadfast Insurance Company, The Continental Insurance Company, Columbia Casualty Company, Allianz Global Risks US Insurance Company, National Surety Corporation, Interstate Fire & Casualty Company, Clarendon America Insurance Company, General Star Indemnity Company, and Arrowood Indemnity Company (collectively, the "Insurers") [D.I. 6062] | Absent a clear disclosure that insurance coverage for Abuse Claims will be reduced or negated by the Debtors' (or the Trust's) failure to satisfy applicable SIRs, Abuse Claimants could be falsely lulled into accepting a Plan that may provide little benefit for them. (Obj. at 4-5).

The Disclosure Statement confusingly muddles the issues by attempting to conflate deductibles contained in the primary layer of coverage with the SIRs contained in policies above the primary layer. Unlike deductibles, SIRs function as conditions precedent to coverage; an insured must satisfy, or pay, the full amount of any applicable SIRs as a pre-condition to accessing coverage sitting above the SIRs. (Obj. at 8-10).

The Disclosure Statement is affirmatively misleading in describing the Settlement Trust's responsibility with respect to SIRs because it suggests that excess insurers will have to pay SIR amounts and then assert Indirect Abuse Claims against the Settlement Trust to recover their SIR payments. This suggestion is contrary to law. *See In re Amatex Corp.,* 107 B.R. 856, 859 (E.D. Pa. 1989), *aff'd,* 908 F.2d 961 (3d. Cir. 1990), (holding that Stonewall was entitled to withhold the 'self-insured retention' sum, rather than paying over this amount and then filing a claim for it. (Obj. at 14-15). | Adequate information regarding self-insured retentions, including relevant risk factors related to insurance, is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.1 and Article X.A.23. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement fails to explain how either proposed Plan will treat SIRs and the risks with failing to properly treat SIRs. If Debtors will transform SIRs into indirect abuse claims to be paid by the settlement trust, they must explain this decision. The Disclosure Statement should explain whether the Plan permits Century to pursue its SIR claims against Local Councils and if not, the basis. (Obj. at 31-32). | The Disclosure Statement now includes further disclosure with respect to carriers and the BSA. *See* Disclosure Statement, Article III.F.1.

Adequate information regarding self-insured retentions, including relevant risk factors related to insurance, is now set forth in the Disclosure |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Statement. *See* the Disclosure Statement, Article III.F.1, and Article X.A.23.<br><br>Pursuant to the Plan, Indirect Abuse Claims include SIRs. *See* Disclosure Statement, Article III.F.1; *see also* Plan, Article IV.V. |
| | American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, the "Zurich Insurers") [D.I. 3478][14] | Disclosure Statement fails to notify Abuse Claimants and other parties in interest that much of the excess insurance coverage purchased by the BSA (particularly policies purchased in 1986 and thereafter) is subject to self-insured retentions ("SIRs") of at least $1 million that either must be satisfied before coverage can be accessed under those policies or, possibly, withheld from any payments otherwise owed by excess insurers to Abuse Claimants. (Obj. at 1.)<br><br>The existence of SIRs in Debtors' coverage is barely acknowledged in the Plan and the Disclosure Statement. The Disclosure Statement is completely silent on issues that would be important for Abuse Claimants to consider (i.e., whether excess insurance coverage would or might be available to pay his claim, if allowed; whether his recovery will be reduced by the amount of applicable SIRs; the projected amount of trust funds that would be expended to satisfy SIRs). (Obj. at 4-5.)<br><br>The Disclosure Statement is misleading in describing the Settlement Trust's responsibility with respect to SIRs; the suggestion that excess insurers will have to pay SIR amounts and then assert Indirect Abuse Claims against the Settlement Trust to recover their SIR payments is contrary to law. (Obj. at 6.)<br><br>The "risk factors" must be modified to add a discussion of the risk that the excess insurers will successfully assert that their payment obligations are limited or eliminated by the SIRs, which would affect the potential insurance recoveries of Abuse Claimants. (Obj. at 5.) | The Disclosure Statement now includes further disclosure with respect to the BSA's insurance program, which addresses the disputes between certain carriers and the BSA. *See* Disclosure Statement, Article III.F.1.<br><br>Adequate information regarding self-insured retentions, including relevant risk factors related to insurance, is now set forth in the Disclosure Statement. *See* the Disclosure Statement, Article III.F.1, and Article X.A.23 |
| 16) Adequate Disclosure – Public Information on Abuser, Type | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement lacks any substantive discussion regarding the number of Abuse Claims and types of Abuse.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement provides adequate information regarding Abuse Claims. The Debtors retained Bates White to evaluate Abuse Claims. *See* Disclosure Statement, Article V.D. The Disclosure Statement provides a |

[14]   The following parties join in this objection: (a) Arrowood Indemnity Company [D.I. 5208]; (b) Clarendon National Insurance [D.I. 3558]; (c) Continental Insurance Company [D.I. 3582]; and (d) Arch Insurance Company [D.I. 6053]

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| of Abuse and Number of Abused | | | thorough discussion of Bates White's estimate as to the range of value of Abuse Claims.<br><br>The Disclosure Statement now contains additional statistical information about the Abuse Claims, including severity and applicable Local Council,. *See* Disclosure Statement, Article V.N.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F, Abuse List Claims Composite.<br><br>Bates White's estimated valuation range does not include valuations of Abuse Claims with respect to each individual Local Council and Chartered Organization because, as explained further in the Disclosure Statement, performing such an exercise would not likely establish reliable estimates due to the data currently available. *See* Disclosure Statement, Article V.N. |
| | Pro Se Claimant 242 [D.I. 6027]; [D.I. 2386] | There is no public statistical information about which portion of claimants allege abuse in the Cub Scout program; or the Boy Scout program; or older-youth programs such as Exploring and Sea Scouts; or only allege abuse by a person who was or purported to be a Scout leader, but in a non-Scout setting; or who have not even specified details sufficient to distinguish between those cases in their claims. (D.I. 6027 - Obj. at 4). | The Disclosure Statement provides adequate information regarding Abuse Claims The Debtors retained Bates White to evaluate Abuse Claims. *See* Disclosure Statement, Article V.D. The Disclosure Statement provides a thorough discussion of Bates White's estimate as to the range of value of Abuse Claims. The Disclosure Statement now contains additional statistical information about the Abuse Claims, including severity and applicable Local Council,. *See* Disclosure Statement, Article V.N.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F, Abuse List Claims Composite. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement lacks any "substantive discussion regarding the number or type of claims and a range of values of the childhood sexual abuse claims", which should include, at a minimum: the number of unique claims, the state or jurisdiction claims arose by abuse category and number, year or years in which claims arose by abuse category and number, description of claims by | The Disclosure Statement provides adequate information regarding Abuse Claims The Debtors retained Bates White to evaluate Abuse Claims. *See* Disclosure Statement, Article V.D. The Disclosure Statement provides a thorough discussion of Bates White's estimate as to the range of value of Abuse Claims. The Disclosure Statement now contains additional statistical |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | type of abuse, Local Councils and Chartered Organizations implicated by abuse category and number, and the extent of the undercount in the foregoing categories resulting from the Boy Scouts' electronic review of the claims that does not reflect information that may be in the proof of claim but not in the "correct" data field, e.g. the date of the abuse is in a narrative but not in the data field for the date of the abuse. (Obj. ¶¶ 41, 44.) | information about the Abuse Claims, including severity and applicable Local Council. *See* Disclosure Statement, Article V.N.<br><br>Exhibit F to the Disclosure Statement contains charts listing the Abuse Claims (i) by allegation type, (ii) counts by Local Council, (iii) counts by Local Council and allegation type, and (iv) counts by Chartered Organizations. *See* Disclosure Statement, Exhibit F, Abuse List Claims Composite. |
| **17) Adequate Disclosure – Future Claims** | **SUMMARY OF ARGUMENTS** | The Disclosure Statement fails to provide an estimate of the number of future and unknown claims and is unclear regarding their treatment. | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement explains that under the Plan, Direct Abuse Claims include Future Abuse Claims and their treatment under the Plan is the same. *See* Disclosure Statement, Article IV.A.<br><br>The Disclosure Statement also explains that the Settlement Trust Agreement shall provide for the continuation of the Future Claimants' Representative to represent the interests of holders of Future Abuse Claims. The initial Future Claimants' Representative shall be James L. Patton, Jr. so long as he is the Future Claimants' Representative in the Chapter 11 Cases as of the Effective Date. *See* Disclosure Statement, Article VII.A.23. The Future Claimant's Representative supports the Plan and the treatment of holders of Future Abuse Claims in accordance with the Plan and Trust Distribution Procedures.<br><br>The Disclosure Statement now articulates that Future Abuse Claims are within the definition of Direct Abuse Claims under the Plan and treated as such. *See* Disclosure Statement, Article IV.A. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to provide an estimate of the number of future and unknown claims of Debtors, each local council, each chartered organization, and each insurer, as well as the amount of money set aside to compensate such claims, and fails to identify the future claimants' representative for future and unknown claimants with claims against nondebtors. (D.I. 6039 - Obj. ¶ 9).<br><br>The Disclosure Statement fails to identify what unknown claimants would qualify as future claimants entitled to compensation under the Plan. There is also no estimate of the total amount of money that would be set aside or paid for future claimants. (D.I. 3231 - Obj. ¶ 16.) | The Disclosure Statement explains that under the Plan, Direct Abuse Claims include Future Abuse Claims and their treatment under the Plan is the same. *See* Disclosure Statement, Article IV.A.<br><br>The Disclosure Statement also explains that the Settlement Trust Agreement shall provide for the continuation of the Future Claimants' Representative to represent the interests of holders of Future Abuse Claims. The initial Future Claimants' Representative shall be James L. Patton, Jr. so long as he is the Future Claimants' Representative in the Chapter 11 Cases as of the Effective Date. *See* Disclosure Statement, Article VII.A.21. The Future Claimant's Representative supports the Plan and the treatment |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | of holders of Future Abuse Claims in accordance with the Plan and Trust Distribution Procedures. |
| | United States Trustee [D.I. 3581] | The Plan's treatment of "Future Claims" is unclear. (Obj. ¶ 23.) | The Disclosure Statement now articulates that Future Abuse Claims are within the definition of Direct Abuse Claims under the Plan and treated as such. *See* Disclosure Statement, Article IV.A. |
| **18) Adequate Disclosure – Claims Objection** | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement continues to lack adequate information regarding claims against Debtors' estate to allow creditors to have notice and meaningful opportunity to be heard with respect to rights under Federal Rule of Bankruptcy Procedure 3007. (D.I. 6039 - Obj. ¶ 16) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement provides information regarding bar dates and the body of claims. *See* Disclosure Statement, Article V.M. Pursuant to the Plan, as of the Effective Date, the objections are limited to settlement trustee bringing an objection as is customary. *See* Plan, Exhibit B, Settlement Trust Agreement, Section 2.1. |
| **19) Adequate Disclosure – Attorneys' Fees** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement does not clarify that the distributions to claimants may be subject first to deductions by counsel, which should be explained. The Disclosure Statement fails to explain the Debtors' professional fees.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now contains further disclosure regarding payment of Coalition Restructuring Expenses. *See* Disclosure Statement, Article VI.H.19.<br><br>Fees that the Court has determined are reasonable and customary for the services provided have been and will be paid subject to notice and hearing pursuant to applicable retention orders unrelated to this Disclosure Statement.<br><br>The Disclosure Statement includes information concerning the Debtors' and Estate professional fees incurred to date as well as estimates of future Estate professional fees. See Disclosure Statement, Article VI.C. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The disclosure provided about potential payout to claimants is misleading, as it provides no information about the monies that are to be paid to lawyers as opposed to claimants. There must be clear disclosure that the Coalition preserves the right to seek fees in excess of the RSA amounts from the Settlement Trust and that a majority of the governing body of the Settlement Trust consists of Coalition plaintiff firms. There is also no disclosure of the fact that distributions to claimants may be subject first to deductions by counsel or the scale of these deductions. The Disclosure Statement should contain an explanation of these deductions and a simple pie chart that sets out the reductions and their source. (D.I. 6065 - Obj. at 33-34).<br><br>The Disclosure Statement does not disclose demands made by the Coalition for payments to their professionals and state court counsel, | The Disclosure Statement now contains further disclosure regarding payment of Coalition Restructuring Expenses. *See* Disclosure Statement, Article VI.H.19. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | assurances given, or impact on formation of Plan. (D.I. 3856 - Obj. at 35.) | |
| | Zalkin Law Firm Claimants [D.I. 3276] | The Debtors should provide disclosure regarding their professional fees. (Obj. ¶ 23.) | The Disclosure Statement includes information concerning the Debtors' and Estate professional fees incurred to date as well as estimates of future Estate professional fees. *See* Disclosure Statement, Article VI.C. |
| **20) Adequate Disclosure – Claimant Representatives** | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | Disclosure Statement contains misstatements about the nature of Claimant support for the Plan. Given the numerous deficiencies with the Coalition and other law firms' purported representation of a large proportion of abuse claimants [*See, e.g.*, D.I. 1975 at 12–15], the assertion in the Confirmation Hearing Notice and elsewhere that "every single major creditor constituency" supports the Plan is misleading. Under the RSA, certain lawyers signed the RSA and only committed to recommend to their clients to vote in favor of the Plan. In addition, even if one assumes the clients represented by those lawyers will vote in favor of the Plan, "major" claimant groups oppose the Plan. Objections from claimants to the Disclosure Statement have been filed almost every day(D.I. 6065 - Obj. at 39-42). | **RESOLVED**<br><br>The Disclosure Statement no longer contains the specific language Century with which takes issue. *See* Disclosure Statement, Article II.A |
| **21) Adequate Disclosure – First Encounter Agreement** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement lacks adequate information regarding the First Encounter Agreement.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement has been revised to address the disagreement between the Debtors and certain parties regarding the applicability of the First Encounter Agreement to non-parties. *See* Disclosure Statement, Article III.F.4. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement lacks adequate information regarding the First Encounter Agreement reached in 1996 between BSA and Century, including whether it can be enforced as to non-parties. (D.I. 6039 - Obj. ¶ 15.) | The Disclosure Statement has been revised to address the disagreement between the Debtors and certain parties regarding the applicability of the First Encounter Agreement to non-parties. *See* Disclosure Statement, Article III.F.4. |
| | The Church of Jesus Christ of Latter-day Saints [D.I. 6009]; [D.I. 3263] | The Disclosure Statement states that the First Encounter Agreement ("FEA") governs policies issued by "several of the BSA's [] Insurance Companies[.]" See Disclosure Statement, Article VIII.F.3(D.I. 3263 - Obj. ¶ 32.). | The Disclosure Statement has been revised to address the disagreement between the Debtors and certain parties regarding the applicability of the First Encounter Agreement to non-parties. *See* Disclosure Statement, Article III.F.4. |
| **22) Adequate Disclosure – Hartford Settlement** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement lacks adequate information on the Hartford Settlement and Debtors' interest in the valuable Hartford insurance policies. The Disclosure Statement fails to** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | **disclose how the Debtors will allocate the Hartford Settlement funds.** | "Hartford Insurance Settlement Agreement") that will, if approved. supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency.<br><br>The Hartford Insurance Settlement Agreement provides the following with respect to Chartered Organizations' rights: the Debtors, the Coalition, the Future Claimants' Representative and the Settlement Trust shall secure an assignment to the Settlement Trust of, or otherwise resolve to Hartford's satisfaction, Chartered Organizations' rights or claims to coverage under Abuse Insurance Policies issued by Hartford. The Debtors, the Coalition and the Future Claimants' Representative shall use their best efforts to settle with the Chartered Organizations. Article V.R.3.h<br><br>The Disclosure Statement includes disclosure regarding that some holders of Abuse Claims have objected to the Plan on the basis that, in certain jurisdictions, claimants have direct action rights against the BSA Insurance Companies, and the BSA cannot sell or dispose of direct actions claimants' rights to pursue the BSA Insurance Policies. The Debtors believe that the Bankruptcy Court approve an injunction barring derivative claims against third party insurers. The Bankruptcy Court has the power to enjoin direct action claims and channel those claims to a trust, into which the proceeds from insurance policies are channeled. *See* Disclosure Statement, Article III.F.8. Additionally, disclosure has been added concerning risks related to challenges to the assignment of Insurance Policies and related rights. Article X.A.24 |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to disclose whether it still has an interest in Hartford insurance policies for 1976 and 1977 as it appears to have settled these policies with Hartford. [See D.I. 3526 ¶ 8]. If such policies are not property of the estate, there is no argument to enjoin direct action claimants and coinsureds from asserting rights against these policies, and must be no Insurance Entity Injunction as to these years. Even if these policies are property of the estate, the Lujan Claimants' direct action rights and the rights of chartered | The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the "Hartford Insurance Settlement Agreement") that will, if approved. supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | organizations cannot be settled without each of their consent. (D.I. 6039 - Obj. ¶ 10). | Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency.

The Hartford Insurance Settlement Agreement provides the following with respect to Chartered Organizations' rights: the Debtors, the Coalition, the Future Claimants' Representative and the Settlement Trust shall secure an assignment to the Settlement Trust of, or otherwise resolve to Hartford's satisfaction, Chartered Organizations' rights or claims to coverage under Abuse Insurance Policies issued by Hartford. The Debtors, the Coalition and the Future Claimants' Representative shall use their best efforts to settle with the Chartered Organizations. Article V.R.3.h

The Disclosure Statement includes disclosure regarding that some holders of Abuse Claims have objected to the Plan on the basis that, in certain jurisdictions, claimants have direct action rights against the BSA Insurance Companies, and the BSA cannot sell or dispose of direct actions claimants' rights to pursue the BSA Insurance Policies.  The Debtors believe that the Bankruptcy Court approve an injunction barring derivative claims against third party insurers.  The Bankruptcy Court has the power to enjoin direct action claims and channel those claims to a trust, into which the proceeds from insurance policies are channeled. *See* Disclosure Statement, Article III.F.8.  Additionally, disclosure has been added concerning risks related to challenges to the assignment of Insurance Policies and related rights. Article X.A.24

As described in the Disclosure statement, a Settling Insurance Company must make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction. Article. II.D. As described in Article II.I of the Disclosure Statement, on the Effective Date of the Plan, the Settlement Trust will be established for the benefit of holders of Abuse Claims. From and after the Effective Date, all Abuse Claims shall be channeled to the Settlement Trust, which will be funded by the Settlement Trust Assets. As further described in Article VII of this Disclosure Statement, the Settlement Trust will administer the Settlement Trust Assets and process, liquidate, and pay Abuse Claims in accordance with the applicable Trust Distribution Procedures. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | The Disclosure Statement includes an explanation regarding the justification for entering into the Hartford Insurance Settlement Agreement. Article V.R.3<br><br>Additionally, the disclosure statement includes information regarding the Hartford Adversary proceeding. Article V.II.2. Moreover, pursuant to the Hartford Insurance Settlement Agreement certain claims against the Debtors held by Hartford are being released. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement lacks adequate information on the Hartford Settlement. (Obj. ¶ 51.)<br><br>The Disclosure Statement also fails to explain the implications of the Hartford settlement for the Hartford coverage sold to the Debtors in 1976 and 1977. (Obj. ¶ 70.) | The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the "Hartford Insurance Settlement Agreement") that will, if approved. supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency. |
| | Gordon & Partners, P.A. Claimants [D.I. 2739] | Disclosure Statement fails to disclose how the Debtors will allocate the Hartford settlement funds and fails to explain how much each claimant may receive as a result of the settlement with Hartford, whether each claimant would be forced to release any of their claims in order to effectuate the settlement, including claims they have against non-Debtor entities, and whether any party, including Hartford and non-Debtor entities, would receive a channeling injunction as a result of the settlement. (Obj. ¶ 30.)<br><br>The Disclosure Statement fails s to explain whether all current and future claims against the insured(s), including non-Debtor entities, will have to be released in order to effectuate the Hartford settlement, and if so, the value of those claims and why a claimant should agree to such a release if the insured has substantial assets, including other insurance, that should be used to compensate the claimant. (Obj. ¶¶ 32-33.) | The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the "Hartford Insurance Settlement Agreement") that will, if approved. supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency.<br><br>As described in the Disclosure statement, a Settling Insurance Company must make a substantial contribution to the Settlement Trust to resolve the Abuse Claims that may be asserted against them in exchange for being included as a Protected Party under the Plan and receiving the benefits of the Channeling Injunction. Article. II.D. As described in Article II.I of the Disclosure Statement, on the Effective Date of the Plan, the Settlement Trust will be established for the benefit of holders of Abuse Claims. From and after the Effective Date, all Abuse Claims shall be channeled to the Settlement Trust, which will be funded by the Settlement Trust Assets. As |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | further described in Article VII of this Disclosure Statement, the Settlement Trust will administer the Settlement Trust Assets and process, liquidate, and pay Abuse Claims in accordance with the applicable Trust Distribution Procedures. |
| | Hurley McKenna & Mertz, P.C. Claimants [D.I. 3284] | The Disclosure Statement fails to explain, regarding the Hartford Settlement, why BSA chose to settle with Hartford.(Obj. at 7.) | The Disclosure Statement includes an explanation regarding the justification for entering into the Hartford Insurance Settlement Agreement. Article V.R.3

The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the "Hartford Insurance Settlement Agreement") that will, if approved, supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | There is no disclosure of the risks associated with the decisions that are the subject of Count I of the adversary proceeding complaint against Hartford. (D.I. 3856 - Obj. at 27.)

The Disclosure Statement fails to explain the Judgment Reduction Clause in the Hartford settlement or to quantify its impact. The Disclosure Statement must quantify or explain the impact of this clause on the Debtors and the settlement trust. The Disclosure Statement must explain the monetary impact of those clause on the other policies. Each of BSA's excess carriers have cross claims for contribution against the Local Councils so the availability of the judgment reduction clause serves to reduce the value of the coverage for those claims. Debtors must acknowledge the likelihood that other insurers will claim reduction based on contribution and cross claims relating to Hartford policies issued to Local Councils. | The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the "Hartford Insurance Settlement Agreement") that will, if approved, supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency.

Additionally, the disclosure statement includes information regarding the Hartford Adversary proceeding. Article V.II.2. Moreover, pursuant to the Hartford Insurance Settlement Agreement certain claims against the Debtors held by Hartford are being released.

The Debtors have disclosed the argument raised by certain Insurance Companies with respect to the judgment reduction provision as set forth in the Disclosure Statement. Article V.R.3. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Argonaut Insurance Company [D.I. 3285] | The Disclosure Statement does not describe the impact of the Hartford settlement on claims that may be covered by Hartford or which have contributions rights as to Hartford. (Obj. ¶ 2.) | The Disclosure Statement now provides additional information regarding a modified Hartford settlement, attached to the Plan as Exhibit I-1 (the "Hartford Insurance Settlement Agreement") that will, if approved. supersede the Initial Hartford Settlement Agreement. *See* Disclosure Statement, Article II.A and Article V.R.3. In exchange for Hartford's $787 million cash contribution to the Settlement Trust, the Debtors will sell to Hartford all liability insurance policies issued by Hartford to the BSA as the first named insured, free and clear of all interest in such policies. *See id.* Hartford will be designated as a Settling Insurance Company and a Protected Party under the Plan. The Hartford Settlement Contribution is not subject to reduction based on any contingency.<br><br>The Debtors have disclosed the argument raised by certain Insurance Companies with respect to the judgment reduction provision as set forth in the Disclosure Statement. Moreover, the Debtors have made the following disclosure: Certain parties contend that the Hartford Insurance Settlement Agreement impairs other of the BSA's Insurance Companies' contribution rights; the BSA disagrees. For the vast majority of the years Hartford provided the BSA Insurance Coverage, the Insurance Companies will not have contribution claims against Hartford as Hartford provided both the primary and excess Insurance Policies that would be implicated by the Abuse Claims. Article V.R.3. |
| 23) Adequate Disclosure – Plan Summary | SUMMARY OF ARGUMENTS | The Plan summary should not be approved because it oversimplifies key provisions of the Plan, and, at worst, is intentionally misleading.<br>• Although the Plan Summary states "more than 18,000 sexual abuse survivors…signed affirmative consents to being part of the Coalition," the Disclosure Statement discloses that the Coalition is made up of approximately 11,875 abuse survivors having signed an affirmative consent.<br>• Plan Summary does not disclose that the Local Council Settlement Contribution is uncertain because, according to counsel for the Ad Hoc Committee of Local Councils, the contributions are expressly contingent on a satisfactory resolution of the issues surrounding chartered organizations.<br>• The Plan Summary does not contain any specific disclosures about the litigation risk the Plan poses, meritorious coverage defenses that may reduce the amount | **THE DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Plan Summary is not a Plan document and has been proposed by the Coalition and Future Claimants' Committee. The Plan Summary encourages all holders of Claims entitled to vote to carefully review the Plan and Disclosure Statement, which are expressly identified in the Plan Summary. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | of available coverage, and the various other coverage risks that are described in the Disclosure Statement. | |
| | Certain Insurers [D.I. 6052] | The Plan summary should not be approved because it oversimplifies key provisions of the Plan, and, at worst, is intentionally misleading.<br><br>• Although the Plan Summary states that "more than 18,000 sexual abuse survivors…signed affirmative consents to being part of the Coalition," the Disclosure Statement discloses that the Coalition is made up of approximately 11,875 abuse survivors having signed an affirmative consent.<br><br>• Plan Summary does not disclose that the Local Council Settlement Contribution is uncertain because, according to counsel for the Ad Hoc Committee of Local Councils, the contributions are expressly contingent on a satisfactory resolution of the issues surrounding chartered organizations.<br><br>• The Plan Summary does not contain any specific disclosures about the litigation risk the Plan poses, meritorious coverage defenses that may reduce the amount of available coverage, and the various other coverage risks that are described in the Disclosure Statement. (Obj. ¶¶ 53-55). | The Plan Summary is not a Plan document and has been proposed by the Coalition and Future Claimants' Committee. The Plan Summary encourages all holders of Claims entitled to vote to carefully review the Plan and Disclosure Statement, which are expressly identified in the Plan Summary. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The TCC's proposed "plain English" insertion should be rejected. As the Moving Insurers' objection observes, the TCC's proposed insert contains numerous statements that are at best oversimplified, and, in some cases, misleading. Century joins in that objection. (D.I. 6065 - Obj. at 35). | The Plan Summary is not a Plan document and has been proposed by the Coalition and Future Claimants' Committee. The Plan Summary encourages all holders of Claims entitled to vote to carefully review the Plan and Disclosure Statement, which are expressly identified in the Plan Summary. |
| **24) Adequate Disclosure – Restricted Assets** | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement does not provide an adequate description of the Restricted Assets and justification for such restrictions. (Obj. ¶¶ 21, 25.) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Debtors have provided further disclosure with respect to the BSA's Restricted Property, which is detailed in Exhibit E-1 of the Disclosure Statement. |
| **25) Adequate Disclosure – Trust Operation** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to disclose how the Trust Distribution Procedures weigh factors in valuing claims. The Disclosure Statement lacks information on the Settlement Trust, including what happens upon termination, who reviews the abuse claims once they are assigned to the settlement trust and does not identify any information on the settlement trustee, and** | **THE DEBTORS HAVE ADDED DISCLOSURES** |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | **the expense of operating the Settlement Trust. The Disclosure Statement does not disclose the Cooperation Agreement. Creditors. The Disclosure Statement does not describe how the Settlement Trustee will be chosen or how a proposed Settlement Trust Advisory Committee will be selected.** | The Disclosure Statement now provides additional information regarding the Settlement Trust and the Trust Distribution Procedures. *See* Disclosure Statement, Article VII. |
| | | | The Trust Distribution Procedures provide for payment of administrative and legal fees for the maintenance and administration of the Settlement Trust. The fees and expenses are presumed to be commensurate with the size of the Settlement Trust. *See* Plan, Exhibit A, Trust Distribution Procedures. |
| | | | The "Claims Matrix" and "Scaling Factors" described in Article VII.B of the Disclosure Statement and in the Trust Distribution Procedures will be used to assign a value to the Abuse Claim that will help determine the distribution amount for such Claim. *See* Plan, Exhibit A, Article VII. |
| | | | As explained in the Disclosure Statement, the Settlement Trustee shall evaluate each Trust Claim Submission individually, and shall follow the procedures and guidelines outlined in the Trust Distribution Procedures in order to provide substantially the same treatment to holders of similar Abuse Claims. After a review of the documentation provided by the Abuse Claimant in his or her Trust Claim Submission, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid or invalid. For more information on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. For the Trust Distribution Procedures, *see* the Plan, Exhibits A. The Disclosure Statement adequately describes the continued existence or dissolution of the Settlement Trust. Article VII.A.17 of the Disclosure Statement (Excess Assets in Settlement Trust) states that "[t]o the extent any Settlement Trust Assets remain at such time as the Settlement Trust is dissolved under the terms of the Settlement Trust Documents, any remaining Settlement Trust Assets shall be distributed to Reorganized BSA." |
| | | | A Settlement Trustee will appointed by the Bankruptcy Court. The Settlement Trust Agreement enumerates the Settlement Trustee's powers, duties, and limitations. These include, among others: the power to distribute assets of the Settlement Trust to holders of Abuse Claims pursuant to the terms and conditions and the procedures for distributions established in the Trust Distribution Procedures; to assist the Litigation Trustee prosecute Settlement Trust Causes of Action, the Insurance Actions, and the Insurance Coverage Actions on behalf of holders of Abuse Claims; to enforce the |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Settlement Trust's rights in the Settlement Trust Assets, including through judicial proceedings or bankruptcy/insolvency proceedings; and to make, sign, execute, acknowledge, and deliver any documents that may be necessary or appropriate to effectuate the purposes of the Settlement Trust or to maintain and administer the Settlement Trust. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II.<br><br>Trust Agreement provides that the Settlement Trust Assets shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II.<br><br>The identity of the Settlement Trustee, Eric D. Green, is now included in the Disclosure Statement. See Disclosure Statement, Article VII.A.20.<br><br>The Document Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage. *See* Plan Article IV.R-S.<br><br>The Disclosure Statement now states that the Debtors are assigning their rights and obligations under the FEA to the Settlement Trust. *See* Disclosure Statement, Article III.F.4. |
| | Tort Claimants' Committee [D.I. 3526] | The projected recovery does not include the expense of operating a settlement trust for the benefit of the 84,000 childhood sexual abuse Survivors and the Disclosure Statement does not provide any information regarding such operating expenses. (Obj. ¶ 40.) | Trust Agreement provides that the Settlement Trust Assets shall be used to pay Abuse Claims as well as compensate the Trustee and reimburse expenses of the Trustee. *See* Plan, Exhibit B, Settlement Trust Agreement, Article II.<br><br>The Trust Distribution Procedures provide for payment of administrative and legal fees for the maintenance and administration of the Settlement Trust. The fees and expenses are presumed to be commensurate with the size of the Settlement Trust. *See* Plan, Exhibit A, Trust Distribution Procedures. |
| | Gordon & Partners, P.A. Claimants [D.I. 2739] | In regards to TDP, the Plan identifies factors to be used in valuing each claim, but neither the Plan nor the Disclosure Statement discloses how much weight will be assigned to those factors. (Obj. ¶ 19.) | The "Claims Matrix" and "Scaling Factors" described in Article VII.B of the Disclosure Statement and in the Trust Distribution Procedures will be used to assign a point value to the Abuse Claim that will help determine the |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | Neither the Plan nor the Disclosure Statement indicates whether the claimant will have an opportunity to pursue discovery so that they can supplement their claim with missing information (i.e., full name of Scout leader) in order for their claim to not be reduced for lacking information. (Obj. ¶ 20.) | distribution amount for such Claim. *See* Plan, Exhibit A, Trust Distribution Procedures, Article VII.<br><br>As set forth in the Disclosure Statement, the Trust Distribution Procedures provide for the submission, evaluation, and supplementing of Claims. *See* Disclosure Statement, Article VII. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to adequately explain what will happen after the Settlement Trust terminates. (D.I. 3231 -Obj. ¶ 20.) | The Disclosure Statement adequately describes the continued existence or dissolution of the Settlement Trust. *See* Disclosure Statement, Article VII.A.17 of the Disclosure Statement (Excess Settlement Trust Assets) states that "[t]o the extent any Settlement Trust Assets remain at such time as the Settlement Trust is dissolved under the terms of the Settlement Trust Documents, any remaining Settlement Trust Assets shall be distributed to Reorganized BSA." |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement lacks information on who reviews the abuse claims once they are assigned to the settlement trust and does not identify any information on the settlement trustee. (D.I. 3856 - Obj. at 16-17.)<br><br>The Disclosure Statement fails to explain the Cooperation Agreement's terms or risks. The Disclosure Statement fails to disclose how Debtors and potentially non-debtor third parties will be obligated to cooperate with the settlement trust. (D.I. 3856 - Obj. at 28-29.)<br><br>The Disclosure Statement fails to confirm the Debtors will assign the First Encounter Agreement to the settlement trust and if they do not, the risks associated with the action/inaction. (D.I. 3856 - Obj. at 29-31.) | Pursuant to the Trust Distribution Procedures, "Each Abuse Claimant that does not make the Expedited Distribution Election and instead elects to pursue recovery from the Settlement Trust pursuant to the Trust Distribution Procedures must submit his or her Abuse Claim for allowance and potential valuation and determination of insurance status by the Settlement Trustee pursuant to the requirements set forth herein." *See* Disclosure Statement, Article VII.B.6<br><br>The identity of the Settlement Trustee, Eric D. Green, is now included in the Disclosure Statement. See Disclosure Statement, Article VII.A.20.<br><br>The Disclosure Statement now states that the Debtors are assigning their rights and obligations under the FEA to the Settlement Trust and provide further information with respect to such agreement. *See* Disclosure Statement, Article III.F.4.<br><br>The Document Agreement, as is customary in similar cases, is to be filed with the Plan Supplement, and will provide the Settlement Trust with access to documents it needs to pursue insurance coverage. *See* Plan, Exhibit B, Settlement Trust Agreement, Article IV.L. |
| | Allianz Insurers [D.I. 3549] | The Disclosure Statement does not disclose the Cooperation Agreement. (Obj. ¶ 6.) | The Document Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage. *See* Plan, Exhibit B, Settlement Trust Agreement, Article IV.R-S. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | United States Trustee [D.I. 3581] | The Disclosure Statement does not describe how the Settlement Trustee will be chosen or how a proposed Settlement Trust Advisory Committee will be selected. (Obj. ¶ 20.) | The Disclosure Statement addresses the selection of the Settlement Trustee and the establishment of the Settlement Advisory Committee (the "STAC"). "The initial STAC shall be composed of seven (7) members, five (5) of which shall be selected by the Coalition and two (2) of which shall be selected by the Tort Claimants' Committee, subject to discussion between and the consent of the Coalition and the Tort Claimants' Committee." *See* Disclosure Statement, Article VII.A.21.<br><br>The identity of the Settlement Trustee, Eric D. Green, is now included in the Disclosure Statement. See Disclosure Statement, Article VII.A.20. |
| **26) Adequate Disclosure – Abuse Claims** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement lacks adequate information on the treatment and valuation of abuse claims. The Disclosure Statement requires more information on the proposed estimation of abuse claims.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N.<br><br>The Disclosure Statement adequately describes the treatment and estimated recovery of all Claims, including Abuse Claims and Claims not related to Abuse under the Plan. The Disclosure Statement sets forth a chart estimating the amount and approximate percentage recovery for each Class of Claims. *See* Disclosure Statement, Article II.H. The Disclosure Statement also sets forth a chart comparing estimated recoveries under the Plan against a hypothetical chapter 7 liquidation. *See* Disclosure Statement, Article IX.D.<br><br>The Disclosure statement further outlines the various settlements included in the Plan. *See* Disclosure Statement, Article V.R. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | In addition, the Disclosure Statement now adequately describes how the Trust Distribution Procedures utilize a scaling system to assign a value to a given Abuse Claim. Abuse Claims are assigned a value based on the "Claims Matrix" and "Scaling Factors" described in the Trust Distribution Procedures. *See* Disclosure Statement, Article VII.B.7; *see also* Plan, Exhibit A, Trust Distribution Procedures. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement lacks adequate information on the valuation of childhood sexual abuse claims, including any discussion of how the $2.4 billion - $7.1 billion valuation range is determined. (Obj. ¶ 42.)<br><br>The Disclosure Statement must disclose that non-abuse claims, e.g., personal injury claims, are given preferential treatment over childhood sexual abuse claims. (Obj. ¶¶ 55-56.) | The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N.<br><br>The Disclosure Statement adequately describes the treatment and estimated recovery of all Claims, including Abuse Claims and Claims not related to Abuse under the Plan. The Disclosure Statement sets forth a chart estimating the amount and approximate percentage recovery for each Class of Claims. *See* Disclosure Statement, Article II.H. The Disclosure Statement also sets forth a chart comparing estimated recoveries under the Plan against a hypothetical chapter 7 liquidation. *See* Disclosure Statement, Article IX.D. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to explain how claimants abused in connection with scouting units will fare under the Plan .The Disclosure Statement fails to identify and adequately disclose indirect abuse claims timely filed against Debtors. (D.I. 3231 - Obj. ¶ 4.) | The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N.<br><br>The Disclosure Statement provides adequate information concerning Indirect Abuse Claims. In addition to Direct Abuse Claims, approximately 16,600 contingent and unliquidated indemnification and contribution Claims have been filed against the Debtors, most of which would be included in the Class of Indirect Abuse Claims. The majority were filed by Chartered Organizations. Article V.N.<br><br>The Disclosure Statement adequately describes the treatment and estimated recovery of all Claims, including Abuse Claims and Claims not related to Abuse under the Plan. The Disclosure Statement sets forth a chart estimating the amount and approximate percentage recovery for each Class of Claims. *See* Disclosure Statement, Article II.H. The Disclosure Statement also sets forth a chart comparing estimated recoveries under the Plan against a hypothetical chapter 7 liquidation. *See* Disclosure Statement, Article IX.D. |
| | DLG Claimants [D.I. 2959] | Debtors do nothing more than assert that childhood sexual abuse claims will range in value from somewhere between $2.4 billion and $7.1 billion. There is no discussion on how that value is determined. (Obj. at 4.)<br><br>With only $115 million available for sexual abuse survivors, the Disclosure Statement does not describe how recoveries will reach 8%, let alone up to 23% or 100%, when no other consideration has been committed by any other party. (Obj. at 4.) | The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Footnote 39 of the Disclosure Statement now provides the components used in calculating the estimated recoveries. *See* Disclosure Statement Article II.H.

The Disclosure Statement now discloses the consideration to be committed by other parties, rendering part of the objection moot. *See* Disclosure Statement, Exhibit C, Expected Local Council Settlement Trust Contributions, and Article II.D. |
| | Gordon & Partners, P.A. Claimants [D.I. 2739] | There is no discussion on how the $2.4 billion - $7.1 billion range is determined. (Obj. ¶ 10.)

Under the Plan, the Debtors are the only parties that have offered any consideration ($115 million) for the abuse claims. Assuming the abuse claims are valued at $2.4 billion, the $115 million provides a 4.8% recovery, far less than the lower amount asserted by the Debtors. With only $115 million available for survivors, the Disclosure Statement does not describe how recoveries will reach 8%, let alone up to 23% or 100%, when no other consideration has been committed by any other party. (Obj. ¶ 10.) | The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N.

Footnote 39 of the Disclosure Statement now provides the components used in calculating the estimated recoveries. *See* Disclosure Statement Article II.H.

The Disclosure Statement now discloses the consideration to be committed by other parties, rendering part of the objection moot. *See* Disclosure Statement, Exhibit C, Expected Local Council Settlement Trust Contributions, and Article II.D. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Zalkin Law Firm Claimants [D.I. 3276] | The Disclosure Statement lacks justification for the low values for Abuse Claims (Obj. ¶ 11, 14.) | The Disclosure Statement provides adequate information regarding the estimated range of valuation of the Abuse Claims. As explained in the Disclosure Statement, during its claim reconciliation process, Bates White established that there are approximately 82,500 unique, timely Proofs of Claims seeking personal injury damages on account of Abuse. Bates White estimates the value of the Abuse Claims is between $2.4 billion and $7.1 billion. To establish this value range, Bates White analyzed BSA's historically resolved Abuse Claims, with a focus on four factors that have affected the Claims' settlement value: (i) the possible monetary damages the Abuse Survivor could obtain in the tort system, (ii) the connection to Scouting during the alleged acts, (iii) certain legal considerations regarding the viability of the Claim, and (iv) the credibility of the Claim. Additionally, the Disclosure Statement now includes an expanded discussion about how the Bates White analysis was performed. *See* Disclosure Statement, Article V.N. |
| | *Pro se* Claimant [D.I. 2470] | The Debtors need to outline a definitive settlement amount to the victims. (Obj. at 2.) | Information regarding the recoveries contemplated under the Plan is included in the Disclosure Statement. See Disclosure Statement, Article II.H. |
| | *Pro se* Claimant [D.I. 2533] | The BSA should add the amount of compensation that each level of abuse will receive so that when survivors vote, survivors will know what they are going to receive if the Disclosure Statement is approved. (Obj. ¶ 3.) | Information regarding the recoveries contemplated under the Plan is included in the Disclosure Statement. See Disclosure Statement, Article II.H. |
| | AIG Companies [D.I. 3523] | The Disclosure Statement does not have enough information on the proposed estimation of direct abuse claims. (Obj. ¶ 17.)

The Disclosure Statement should disclose that various parties oppose the aggressive estimation timeline proposed and that the Court may impose an extended, more realistic timeline, which may be inconsistent with the Debtors' expected timeline for confirmation. (Obj. ¶ 18.) | The Disclosure Statement adequately describes how Abuse Claimants will fare under the Plan. The Disclosure Statement sets forth a chart estimating the amount and approximate percentage recovery for direct and indirect claims. *See* Disclosure Statement, Article II.H. The Disclosure Statement also sets forth a chart comparing estimated recoveries under the Plan against a hypothetical chapter 7 liquidation. *See* Disclosure Statement, Article IX.D

Additionally, the estimation motion timeline objection is moot as such timeline is no longer being pursued. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| **27) Adequate Disclosure – Insurance Coverage** | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement fails to adequately describe the Boy Scouts' insurance program. (Obj. ¶ 57.)<br><br>The BSA Insurance Policies and the Insurance Coverage "are one and the same" as currently defined, so the definitions should be amended or the phrases should be consolidated. (Obj. ¶ 63.).<br><br>The Disclosure Statement should disclose that the Plan provides that post-2013 coverage is being used to indemnify Insured Non-Abuse Claims and prevent Abuse Claims from accessing this coverage. (Obj. ¶ 76). | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement provides adequate information regarding the BSA's insurance program, which has been further supplemented, including a description of post-2013 insurance sharing between Abuse and Non-Abuse Claims. *See* Disclosure Statement, Article III.F.<br><br>BSA Insurance Policies references the policies themselves while Insurance Coverage references the rights, benefits or coverage under those policies. It is important to differentiate the two as the Debtors can assign Insurance Coverage to the Settlement Trust as opposed to the Insurance Policies themselves. |
| **28) Adequate Disclosure – Direct Insurance Claims** | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement does not discuss the Plan's impact on claimants who have a direct right to sue the insurer of the BSA, Local Councils, or Chartered Organizations, which is permitted under at least eight states. (Obj. ¶ 77-78.) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement adequately describes the process through which all Abuse Claims will be channeled to the Settlement Trust and liquidated in accordance with the Trust Distribution Procedures regardless of whether such Claimant has a right to direct action. *See* Disclosure Statement, Article VII. |
| **29) Adequate Disclosure – BSA Operations** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement does not provide meaningful information regarding the Debtors' pension obligations and does not disclose that the Retirement Plan is currently overfunded. The Disclosure Statement does not contain adequate information regarding Debtors' operations. The Disclosure Statement fails to identify which Local Councils are members of the BSA's "controlled group."** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now provides a fulsome description of the pension plans, as well as the Reorganized Debtors' obligations under the pension plan on the Effective Date. *See* Disclosure Statement, Article III.D and Article VI.H.25.<br><br>The Disclosure Statement now includes adequate information regarding the Debtors' operations (including revenue sources and assets), as well as risk factors affecting the Debtors' operations. *See* Disclosure Statement, Article III and Article X.A.<br><br>The Disclosure Statement adequately describes that liabilities are joint and several among the BSA and each Local Council that is a member of the BSA's "controlled group" as the term is defined under 29 U.S.C. §§ 1082, 1307, 1362. *See* Disclosure Statement, Article X.A.2. All members of |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Local Councils are part of controlled group. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis. |
| | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement does not provide meaningful information regarding the BSA pension obligations, and does not disclose that the Retirement Plan is currently overfunded. (Obj. ¶ 85.)<br><br>The Disclosure Statement does not contain adequate information regarding BSA operations, such as declining membership trends and the impact thereof on ongoing operational needs (such as camps) that may render the Plan infeasible to the extent it relies on the continued existence of BSA. Given that membership in the Boy Scouts ends on December 31st for each calendar year, the Boy Scouts should disclose the current 2021 membership numbers. (Obj. ¶ 87.). The Disclosure Statement does not adequately describe attendance of high adventure facilities or the revenues generated by high adventure facilities, and does not address the impact a sale of high adventure facilities could have on ongoing operations or potential recoveries. (Obj. ¶ 89.) | The Disclosure Statement now provides a fulsome description of the pension plans, as well as the Reorganized Debtors' obligations under the pension plan on the Effective Date. *See* Disclosure Statement, Article III.D and Article VI.H.25.<br><br>The Disclosure Statement now includes adequate information regarding the Debtors' operations (including revenue sources and assets), as well as risk factors affecting the Debtors' operations. *See* Disclosure Statement, Article III and Article X.A.<br><br>The Disclosure Statement includes the current membership, which is 762,000. *See* Disclosure Statement, Article II.B. Moreover, the Financial Projections include youth membership numbers as well as high adventure base numbers. *See* Disclosure Statement, Exhibit E, Financial Projections Analysis. The Disclosure Statement also discusses risks related to declining recruitment and membership as well as high adventure Base revenues. Article X.A.3. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to identify which Local Councils are members of the BSA's "controlled group" and may be jointly and severally liable with BSA on the Pension Benefit Guaranty Corporation's $1,102,200,000 Unfunded Benefit Liability Claim, Termination Premiums Claim including an amount of $51,862,500, and Minimum Funding Contribution Claims. (D.I. 3231) | The Disclosure Statement adequately describes that liabilities are joint and several among the BSA and each Local Council that is a member of the BSA's "controlled group" as the term is defined under 29 U.S.C. §§ 1082, 1307, 1362. *See* Disclosure Statement, Article X.A.2. All members of Local Councils are part of the controlled group. *See* Disclosure Statement, Exhibit D-2, Liquidation Analysis. |
| 30) Adequate Disclosure – Avoidance Actions | Tort Claimants' Committee [D.I. 3526] | The Disclosure Statement does not contain adequate information regarding the release of avoidance actions, such as the number, type, and potential value of "Avoidance Actions" being released. (Obj. ¶ 90.) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now indicates that the Debtors believe that pursuing potential avoidance actions under the Bankruptcy Code, including potential preference or fraudulent transfer actions would not yield a net return. *See* Disclosure Statement, Article II.D n.22. |
| 31) Adequate Disclosure – Statute of Limitations | Andreozzi + Foote Claimants [D.I. 3151] | The Disclosure Statement does not address how claims will be treated given pending statute of limitations reform in multiple jurisdictions. (Obj. ¶ 23.)<br><br>The Disclosure Statement and Plan do not address how claims will be treated in "window" states vs. non-"window" states or in | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now provides further disclosure on claim treatment with respect to pending statute of limitation reform, including the |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | jurisdictions where "windows" are possible like Pennsylvania. (Obj. ¶ 33.) | option to defer determination for up to 12 months from the Effective Date of the Plan. Article VII.B.6. *See* Disclosure Statement, Article IV.B.<br><br>The Trust Distribution Procedures adequately addresses the evaluation procedures the Settlement Trustee will follow to assess claims. *See*, Plan, Exhibit A, Trust Distribution Procedures. Part of the claim evaluation process is determining whether a claim is barred by the statute of limitations. *See* Plan, Exhibit A, Trust Distribution Procedures.<br><br>The Trust Distribution Procedures utilizes a system to assign a value to a given Abuse Claim. Abuse Claims are assigned a value based on the "Claims Matrix" and "Scaling Factors" described further in the Trust Distribution Procedures. *See* Plan, Exhibit A, Trust Distribution Procedures, Article VIII. For a full analysis on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. |
| 32) Adequate Disclosure – Insurance Program | SUMMARY OF ARGUMENTS | The Disclosure Statement fails to describe prepetition settlements entered into by the Debtors and funding by insurers of such settlements. | DEBTORS HAVE ADDED DISCLOSURES<br><br>The Disclosure Statement now provides information concerning prepetition litigation concerning Abuse Claims and that, prior to the Petition Date, the BSA's Insurance Companies generally defended and indemnified the BSA against Abuse Claims. In certain years in which the BSA's Insurance Policies were exhausted, insolvent or settled, the BSA would fund the settlement of Abuse Claims. While the Insurance Companies reserved the right to do so with respect to many Abuse Claims, in the last four years the BSA's Insurance Companies have only denied coverage in connection with a very limited number of underlying lawsuits. *See* Disclosure Statement Article III.F.5.<br><br>The Disclosure Statement provides adequate information regarding the Debtors' insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. Adequate information relating to the FEA, prepetition insurance coverage actions, and Chartered Organization's rights under the BSA insurance policies is included. *See id.*<br><br>The Plan and Trust Distribution Procedures have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H. and Article VII. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to state whether the Boy Scouts of America or its insurers funded prepetition settlements and whether and which insurers defended the Boy Scouts of America. (Obj. ¶ 7.) There is no attempt to explain why the FEA only applies to sexual molestation claims and not to other bodily injury claims. (D.I. 3231 - Obj. ¶ 10.) | The Disclosure Statement provides adequate information regarding the Debtors' insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. Moreover, the Disclosure Statement clarifies that, by its terms, the First Encounter Agreement specifically limits its application to Abuse Claims and neither the BSA nor Century has contended otherwise. Article III.F. Adequate information relating to the FEA, prepetition insurance coverage actions, and Chartered Organization's rights under the BSA insurance policies is included. *See id.* |
| | United Methodist Ad Hoc Committee [D.I. 3273] | The Disclosure Statement fails to provide adequate information on "policy year by policy year information on the BSA Insurance Policies setting out the total amount of coverage purchased for each year." (Obj. ¶ 5.) | The Disclosure Statement provides adequate information regarding the Debtors' insurance program, which has been further supplemented in the Disclosure Statement. *See* Disclosure Statement, Article III.F. Adequate information relating to the FEA, prepetition insurance coverage actions, and Chartered Organization's rights under the BSA insurance policies is included. *See* Disclosure Statement, Article III.F. Additionally as set for the in Disclosure Statement, policy by policy information and total coverage per year is too voluminous to include herein. Moreover, given that many of the policy years are per-occurrence, there is no way to provide the "total amount of coverage purchased" in those years. *See* Disclosure Statement, Article III.F. |
| **33) Adequate Disclosure – Sidley Claims** | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement fails to adequately disclose the necessity and support for the broad releases granted to non-debtors and the risks associated with them. The Plan broadly releases all abuse claims, defined to encompass anything concerning abuse. Debtors must disclose that the non-debtor release provision will likely render the Plan unconfirmable. The release includes attorneys of protected parties, providing no opt-out mechanism for Century. Century has claims against Sidley Austin related to Sidley's pre-bankruptcy representation of BSA. The ballot and Disclosure Statement must be amended so Century is not forced to decide between voting to accept and opting to preserve its claims against Sidley. (D.I. 3856 - Obj. at 22-24.) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>This is an objection to the Plan and nonconsensual releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the Plan and releases should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply.<br><br>Nevertheless, the Debtors have added disclosure regarding third party consensual releases as well as more description of the support needed to confirm the Plan and related third party injunction. *See* Disclosure Statement, Articles II.A, V.R, and VI.Q.<br><br>Additionally, the Plan had been amended to allow holders of Claims who vote to accept or reject the Plan can opt-out of the consensual releases, |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | which are customary and acceptable. A description distinguishing them from the Channeling Injunction is now included in the Disclosure Statement. *See* Disclosure Statement, Articles II.G.

The Plan has been amended to reflect that nothing in the Plan or the release set forth in Article X.J.4 therein shall, or shall be construed to, release any claims or Causes of Action asserted by Century Indemnity Company against Sidley Austin LLP ("Sidley") related to Sidley's representation of the Debtors prior to the Petition Date. See Plan Articles X.J and X.K. |
| **34) Adequate Disclosure – Letter of Credit Treatment** | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to explain the treatment of certain insurer claims and their letters of credit. The claims should be classified as Class 2 "Other Secured Claims." The Disclosure Statement does not explain whether the letters of credit will be assumed and drawn on the Effective Date.** | **DEBTORS HAVE ADDED DISCLOSURES**

Agreed language has been added to the Disclosure Statement to fully resolve these objections. *See* Disclosure Statement, Article III.F.7. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 5214]; [D.I. 3856] | The Disclosure Statement fails to explain the treatment of Century's secured claim. Century's claim should be classified as a Class 2 'other secured claim' but the Plan and Disclosure Statement do not confirm the treatment. The Disclosure Statement does not explain whether the Century letter of credit will be one the Debtors assume will be drawn on the effective date. The Disclosure Statement must explain how Debtors will treat letters of credit issued. (D.I. 3856 - Obj. at 32-33.) | Agreed language has been added to the Disclosure Statement to fully resolve these objections. *See* Disclosure Statement, Article III.F.7. |
| | Liberty [D.I. 6057]; [D.I. 3578] | The Disclosure Statement fails to account for treatment of the Liberty Claim and the Liberty Letter of Credit ("Liberty LC"). The Claim should be treated as an "Other Secured Claim" classified in Class 2. Assuming the Liberty LC is one of the letters of credit that the Plan anticipates will be drawn on the Effective Date, neither the Plan nor the Disclosure Statement provides for that. If the Claim is an Other Secured Claim, neither the Plan nor the Disclosure Statement states the manner in which Liberty will be allowed to make an election. (Obj. ¶¶ 4-6.) | Agreed language has been added to the Disclosure Statement to fully resolve these objections. *See* Disclosure Statement, Article III.F.7. For the avoidance of doubt, Liberty's claim will not be classified as an Other Secured Claim as its recourse is against issuer the Letter of Credit. |
| **35) Adequate Disclosure – Privilege** | Century Indemnity Company [D.I. | The Disclosure Statement does not disclose how privileged documents and information associated with the defense of abuse | **RESOLVED** |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | 6065]; [D.I. 5214]; [D.I. 3856] | claims will be protected post-confirmation and the risks associated with waiving privilege. (D.I. 3856 - Obj. at 33-35.) | The Document Agreement, to be filed with the Plan Supplement, will provide the Settlement Trust with access to documents it needs to pursue insurance coverage. *See* Plan, Exhibit B, Settlement Trust Agreement, Section 1.8. The transfer or assignment of any Privileged Information to the Settlement Trustee pursuant to the Document Agreement shall not result in the restriction or waiver of any applicable privileges. *See* Disclosure Statement, Article VII.A.25 and VII.B.4. |
| 36) Adequate Disclosure – Non-Abuse Settlement | Girl Scouts of the United States of America [D.I. 3579] | The Disclosure Statement does not provide the basis for the classification and treatment of Girl Scouts' claims when compared to other Non-Abuse Litigation Claims, specifically their claims that are being liquidated and allowed in the Trademark Action.<br><br>The Disclosure Statement does not include an estimated amount of the Non-Abuse Litigation Claims, nor does it disclose any information related to the referenced insurance policies that would apply to such claims. There is not enough information to determine whether or not there is sufficient insurance coverage to cover the potential claims in the Non-Abuse Litigation class. Holders of Non-Abuse Litigation Claims are unable to determine: (1) the total amount of potential claims in this class; (2) the insurance policies that apply to such claims and what, if any, limitations exist in their application; (3) the limits of the insurance policies that apply to such claims; (4) the remaining coverage available under the insurance policies that apply to such claims. (Obj. ¶ 15.) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Disclosure Statement now states that the Debtors believe that coverage is sufficient to cover defense costs and any liability that may arise. *See* Disclosure Statement, Article VI.Q.1. Nevertheless, the Disclosure Statement provides information regarding insurance coverage that may be applicable to Non-Abuse Litigation Claims. *See* Disclosure Statement, Article III.F and Article VII.A.12.<br><br>The Disclosure Statement now provides further information regarding Non-Abuse Litigation Claims. *See* Disclosure Statement, Article II.J.<br><br>With respect to the classification and treatment of Girl Scouts' claims, this is an objection to the Plan. Such objections are premature and not ripe for consideration. Objections to the Plan should be considered at the proper time– plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply. |
| 37) Adequate Disclosure – Creditor Distributions | United States Trustee [D.I. 3581] | The Disclosure Statement lacks financial information, including the funding of the settlement trust. (Obj. ¶ 15-21.) | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>The Debtors believe the Disclosure Statement provides more than adequate information with respect to distributions on account Allowed Claims The Disclosure Statement contains a chart with the estimated amount and approximate percentage of recovery for each Class of Claims. *See* Disclosure Statement, Article II.H; *see also* Disclosure Statement, Article VI.E. The Trust Distribution Procedures establish the methodology for resolution of Abuse Claims, establish the process by which Abuse Claims will be reviewed by the Settlement Trust, and will specify liquidated values for compensable Claims based on the nature of the underlying Abuse. For more information on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. For the Trust Distribution Procedures, *see* Plan, |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Exhibit A. Furthermore, the Disclosure Statement provides adequate information on the Settlement Trust and its sources of funding. *See* Disclosure Statement, Article VII.A; *see also* Plan, Exhibit B, Settlement Trust Agreement. |
| 38) Adequate Disclosure – Administrative Claims | United States Trustee [D.I. 3581] | The Disclosure Statement improperly seeks to effect non-consensual release of administrative and tax claims. (Obj. ¶ 3.). The Disclosure Statement should clarify the treatment of administrative expense claimants and priority tax claimants. (Obj. ¶ 25.)

Requiring administrative claimants opt out of the third-party releases or be bound to them is objectionable. This provision precludes any non-ordinary course administrative claimant from pursuing a claim against the Debtors or any third-party. (Obj. ¶ 26.) | **DEBTORS HAVE REVISED PLAN**

The Plan has been modified to remove administrative expense claimants and priority tax claimants from the consensual third-party releases. Therefore, this objection is moot. *See* Plan Article I.A.217, definition of "Releasing Claim Holder"; *see also* Disclosure Statement, Article II.H. |
| 39) Adequate Disclosure – Trust Distribution Procedures | **SUMMARY OF ARGUMENTS** | **The Trust Distribution Procedures, particularly the Claims Matrix and Scaling Factors, fail to account for certain factors like the number of times of abuse, the Debtors' and Local Councils' knowledge of the abuser, and whether there were other victims involved. The Trust Distribution Procedures fail to explain how claims will be valued and how the proceeds of insurance policies will be utilized.** | **DEBTORS HAVE ADDED DISCLOSURE**

This is an objection to the substance of the Trust Distribution Procedures. Such objections are premature and not ripe for consideration. Instead, they should be considered at the proper time – plan confirmation.

The Trust Distribution Procedures utilizes a system to assign a value to a given Abuse Claim. Abuse Claims are assigned a value based on the "Claims Matrix" and the "Aggravating Scaling Factors" described further in the Trust Distribution Procedures, include, among other things, extended duration and/or frequency of the Abuse. *See* Plan, Exhibit A, Trust Distribution Procedures, Article VIII. For a full analysis on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B.

The Settlement Trust Assets, including the proceeds of the assigned insurance rights, shall be used to fund distributions to Abuse Claimants under the Trust Distribution Procedures. *See* Disclosure Statement, Article VII.B.1. The amounts paid will depend on the Settlement Trust's ability to liquidate and recover the proceeds of the assigned insurance rights. *Id.* |
| | Zalkin Law Firm Claimants [D.I. 3276] | The matrix of valuation is inadequate because the "Abuser Profile" multiplier fails to account for other factors like the number of times of abuse, what BSA and local councils knew about the abuser, and whether there were other victims not involved in this proceeding. (Obj. ¶¶ 15-16.) | This is an objection to the substance of the Trust Distribution Procedures. Such objections are premature and not ripe for consideration. Instead, they should be considered at the proper time – plan confirmation.

The Trust Distribution Procedures utilizes a system to assign a value to a given Abuse Claim. Abuse Claims are assigned a value based on the "Claims Matrix" and the "Aggravating Scaling Factors" described further |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | in the Trust Distribution Procedures, include, among other things, extended duration and/or frequency of the Abuse. *See* Plan, Exhibit A, Trust Distribution Procedures, Article VIII. For a full analysis on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B. |
| | Edward Marcelino, George Burgos, William F. Tompkins III, and Richard G. Dunn [D.I. 2960] | There is a failure to explain to Claimants how their claims will be valued in the trust procedures, what ability they will have to contest the proposed valuation of their claim, and how the proceeds of any insurance policies assigned to the trust will be utilized. (Obj. ¶¶ 3, 5.) | The Trust Distribution Procedures utilizes a system to assign a value to a given Abuse Claim. Abuse Claims are assigned a value based on the "Claims Matrix" and the "Aggravating Scaling Factors" described further in the Trust Distribution Procedures, include, among other things, extended duration and/or frequency of the Abuse. *See* Plan, Exhibit A, Trust Distribution Procedures, Article VIII. For a full analysis on the Trust Distribution Procedures, *see* Disclosure Statement, Article VII.B.

The description of the Trust Distribution Procedures further explains the procedure for how an Abuse Claimant may make a request for reconsideration. *See* Disclosure Statement, Article VII.B.4.g; *see also* Plan, Exhibit A, Trust Distribution Procedures, Article VII.G.

The Settlement Trust Assets, including the proceeds of the assigned insurance rights, shall be used to fund distributions to Abuse Claimants under the Trust Distribution Procedures. *See* Disclosure Statement, Article VII.B.1. The amounts paid will depend on the Settlement Trust's ability to liquidate and recover the proceeds of the assigned insurance rights. *Id.* |
| 40) Adequate Disclosure -- Guam | **SUMMARY OF ARGUMENTS** | **The Disclosure Statement fails to disclose why Guam insurance law providing for direct action rights does not reverse or preempt federal bankruptcy statutes. The Disclosure Statement fails to state how direct action claimants will be adequately protected and compensated for the loss of their direct action rights and property rights in the insurance policies.** | **RESOLVED**

The Debtors have provided additional information related to all of the Abuse Claims filed against the various Local Councils and some Chartered Organizations. *See* Disclosure Statement, Article V.N. However, the Debtors do not feel that singling out Guam is necessary to provide adequate information to vote to accept or reject the Plan. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | Debtors need to disclose why Guam insurance law providing for direct action rights (22 GCA § 18305) does not reverse preempt federal bankruptcy statutes. (D.I. 6039 - Obj. ¶ 2). The Disclosure Statement fails to state how direct action claimants will be adequately protected and compensated for the loss of their direct action rights and property rights in the insurance policies. (D.I. 6039 - Obj. ¶ 3). | The Debtors have provided additional information related to all of the Abuse Claims filed against the various Local Councils and some Chartered Organizations. *See* Disclosure Statement, Article V.N. However, the Debtors do not feel that singling out Guam is necessary to provide adequate information to vote to accept or reject the Plan. |
| | Hurley McKenna & Mertz, P.C. Claimants | The Disclosure Statement fails to mention claims against Debtors arising in Guam, even though more than 25% of all prepetition lawsuits pending against Debtors and leading up to the bankruptcy | The Debtors have provided additional information related to all of the Abuse Claims filed against the various Local Councils and some Chartered Organizations. *See* Disclosure Statement, Article V.N. However, the |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | [D.I. 3284] | filing were brought by survivors of child sexual abuse in Guam, including victims of one of the most prolific child sexual abusers in scouting. (Obj. ¶ 1.) | Debtors do not feel that singling out Guam is necessary to provide adequate information to vote to accept or reject the Plan. |
| **Confirmation Objections** | | | |
| 41) Plan Treatment – Good Faith | SUMMARY OF ARGUMENTS | **The Plan was not proposed in good faith, as is required by section 1129(a)(3) of the Bankruptcy Code. The Plan is collusive and patently unconfirmable.** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**<br><br>This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |
| | Certain Insurers [D.I. 6052] | The Plan was not proposed in good faith, as is required by section 1129(a)(3) of the Bankruptcy Code. The principal purpose of these Chapter 11 Cases is to protect the Local Councils, who forced the Debtors into chapter 11 and to negotiate a plan that is extremely favorable to the Local Councils, while providing no cognizable benefit to the Debtors other than a release and an end to their Chapter 11 Cases, which the Debtors could achieve under the BSA Toggle Plan. Further, the Debtors have ceded complete control of these Chapter 11 Cases and Administration of the Settlement Trust to the Abuse Claimant Representatives, in a complete derogation of their duties as debtors-in-possession. (Obj. ¶¶ 29-32.)<br><br>Collusive plans do not met the good faith requirement of section 1129(a)(3). The collusion between the Debtors and the Abuse Claimant Representatives is clear because the Plan and TDP (i) are patently insurance prejudicial, (ii) provide for an abdication of the Debtors' duties to design and prosecute a plan and resolve claims, and hand those duties to the Abuse Claimant Representatives, (iii) provide significant unwarranted cash awards to Abuse Claimant Representatives without a showing of substantial contribution, (iv) are designed to deprive insurers of their contractual rights and entitlements, and (v) materially expand insurer liability. (Obj. ¶ 33.) | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan is patently unconfirmable because it was not proposed in good faith, because its terms reflect the Debtors' capitulation to the demands of Direct Abuse Claimants and their counsel to the detriment of Chartered Organizations and other key stakeholders. (Obj. ¶ 80.) | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Century Indemnity Company [D.I. 3856] [D.I. 6065] | The Plan is the product of collusion because it would increase the quantum of insurer liability while stripping insurers of their contractual participation rights. The TDP override the express terms of insurance policies and deprive insurers of their contractual rights, such as the right to challenge a settlement or participate in the process. Non-Settling Insurance Companies are denied any role in determining whether to make a settlement offer to satisfy an Abuse Claim. Relaxing the procedural safeguards combined with perverse incentives for the Debtors and claimants, renders the collusion readily apparent (citing *Skinner I*, 405 B.R. at 421). (D.I. 6065 - Obj. at 19-20). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |
| | | The Plan was not proposed in good faith under section 1129(a)(3). Debtors excluded Century from all meetings and communications held with the claimant representatives concerning formulation of the Plan. Debtors have made it abundantly clear that their priority is to emerge from bankruptcy in short order. Debtors have seemingly formed a mutually beneficial agreement with the Coalition law firms—over the objection of the TCC—to ram through an incomplete plan on a compressed timeline. Debtors' proposal offering each abuse claimant a $1,500 payment to vote in favor of the Plan—without any scrutiny of the claim whatsoever—only underscores the Debtors' attempt to capitalize on the votes of illegitimate claimants. (D.I. 3856 - Obj. at 43-45). | |
| 42) Plan Treatment – Feasibility | **SUMMARY OF ARGUMENTS** | **The Plan is not feasible, and therefore, cannot satisfy section 1129(a)(11) of the Bankruptcy because the Plan would result in the liquidation of the Debtors.** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**<br><br>This is an objection to the Plan and to feasibility pursuant to section 1129(a)(11). Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |
| | Certain Insurers [D.I. 6052] | The Plan is not feasible as required under section 1129(a)(11) because the Chartered Organizations' ability to continue generating Scouting membership fees is speculative. Given the Debtors' inability to reach an agreement with the Chartered Organizations and provide them with Protected Party status under the Plan, some or all of the Chartered Organizations could withdraw from the program or some or all of the Chartered Organizations may become insolvent or inoperable. (Obj. ¶¶ 42-43). | This is an objection to the Plan and to feasibility pursuant to section 1129(a)(11). Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Century Indemnity Company [D.I. 6065] | The Disclosure Statement describes a plan that is unconfirmable because the Plan is not feasible and would result in liquidation of the Debtors. The Plan fails to provide protections from Abuse Claim liability for the Chartered Organizations that are critical to the BSA's operations. The resulting litigation exposure the Chartered Organizations face as a result of being left out of the channeling injunction will undermine the Debtors' mission, lead to the liquidation of the Debtors, while at the same time precluding insurer settlements. (Obj. at 21-22.)<br><br>The Plan is not feasible because the Debtors have not obtained a commitment from Local Councils to make the $500 million contribution. Debtors obtained nothing more than a promise to use reasonable efforts to convince the Local Councils to fund the Local Council Settlement Contribution. | This is an objection to the Plan and to feasibility pursuant to section 1129(a)(11). Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan is not feasible because it incentivizes chartered organizations to abandon scouting. If a sufficient number of Chartered Organizations terminate their relationships with the Debtors because of their proposed impairment under the Plan, it is unlikely the Debtors will be able to meet their financial obligations. (Obj. ¶¶ 66-69). | This is an objection to the Plan and to feasibility pursuant to section 1129(a)(11). Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. |
| 43) Plan Treatment – Post-Bar Date Claims Allowance | Certain Insurers [D.I. 6052] | The Plan and TDP leave open the possibility that substantially more Abuse Claims will be filed in the future in complete disregard of the Bar Date Order, which also violates section 502(b) of the Bankruptcy Code. (Obj. ¶ 24). | **THIS IS NOT A PATENTLY UNCONFIRMABLE OBJECTION**<br><br>The Plan allows for Claims filed after the Bar Date under very limited circumstances.<br><br>Additional details are set forth in the Debtors' Omnibus Reply at § II.C.1. |
| 44) Plan Treatment – Non Scouting Claims | Century Indemnity Company [D.I. 3856] | Disclosure Statement and Plan must be modified to ensure that holders of claims having no connection to BSA are not enjoined and explain how the settlement trust will review abuse claims to ensure only claims connected to scouting are validated. (Obj. at 24-25.) | **RESOLVED**<br><br>As provided in the Plan, an "Abuse Claim" means a liquidated or unliquidated Claim against a Protected Party or a Limited Protected Party that is attributable to, arises from, is based upon, relates to, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date (and in the case of Limited Protected Parties, on or after January 1, 1976), including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, any other theory based on misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by a Protected Party, a Limited Protected Party or any other Person for whom any Protected Party or Limited Protected Party is alleged to be responsible; provided, however, that with respect to any Contributing Chartered Organization or its personnel or affiliates, the term "Abuse Claim" shall be limited to any such Claim that is attributable to, arises from, is based upon, or results from, in whole or in part, directly, indirectly, or derivatively, alleged Abuse that occurred prior to the Petition Date, including any such Claim that seeks monetary damages or other relief, under any theory of law or equity whatsoever, including vicarious liability, *respondeat superior*, conspiracy, fraud, including fraud in the inducement, any negligence-based or employment-based theory, including negligent hiring, selection, supervision, retention or misrepresentation, concealment, or unfair practice, public or private nuisance, or any other theory, including any theory based on public policy or any act or failure to act by a Protected Party, a Limited Protected Party or any other Person for whom any Protected Party or Limited Protected Party is alleged to be responsible, in connection, in whole or in part, with the Contributing Chartered Organization's involvement in, or sponsorship of, one or more Scouting units (including any Claim that has been asserted or may be amended to assert in a proof of claim alleging Abuse, whether or not timely filed, in the Chapter 11 Cases); provided further, however, that with respect to any Participating Chartered Organization, the term "Abuse Claim" shall be limited to Post-1975 Chartered Organization Abuse Claims. Abuse Claims include any Future Abuse Claims, any Indirect Abuse Claims, and any Claim that is attributable to, arises from, is based upon, relates to, or results from, alleged Abuse regardless of whether, as of the Petition Date, such Claim was barred by any applicable statute of limitations. *See* Plan Article I.A.18. |
| **45) Plan Treatment – Payment of Non-Compensable Claims** | **SUMMARY OF ARGUMENTS** | **The Plan is unconfirmable under section 1129(a)(1) because the TDP violate sections 502(a) and 502(b)(1). The TDP expressly permit (and to some extent require) the payment of claims that are not compensable in the tort system, including fraudulent and time-barred claims, without allowing parties in interest to file objections to such claims** | **PREMATURE OBJECTION TO THE PLAN**<br><br>This is an objection to the substance of the Trust Distribution Procedures, as incorporated by the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing; however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.1. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | As explained in the Disclosure Statement and pursuant to the Trust Distribution Procedures, after a review of the documentation provided by the Abuse Claimant in his or her Trust Claim Submission, materials received pursuant to the Document Agreement, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid or invalid. The Trust Distribution Procedures are intended to weed out invalid claims. *See* Disclosure Statement, Article VII.B.2; *see also* Plan, Exhibit A, Trust Distribution Procedures, Article VII.I.  The Debtors address the Trust Distribution Procedures, including section 502 in the Debtors' Omnibus Reply at § II.C.1. |
| | Certain Insurers [D.I. 6052] | The Plan is unconfirmable under section 1129(a)(1) because the TDP violate sections 502(a) and 502(b)(1). The TDP expressly permit (and to some extent require) the payment of claims that are not compensable in the tort system, including fraudulent and time-barred claims, without allowing parties in interest to file objections to such claims.<br><br>The Plan and TDP facilitate the allowance of such claims by:<br>(i)    Appointing a Settlement Trustee who has a close personal and professional relationship with the Future Claimants' Representative, and was previously rejected by the Court for the role of mediator;<br>(ii)    Limiting the Settlement Trustee's ability to reduce the amount of a Direct Abuse Claim by eliminating from the TDP certain mitigating factors that the Settlement Trustee could consider, including "incomplete or suspicious" or "deliberately false or misleading" evidence;<br>(iii)    Eliminating the Settlement Trustee's discretion to zero out Direct Abuse Claims that are time-barred under state law;<br>(iv)    Allowing the Settlement Trustee to determine the applicable statute of limitations or choice of law based not only on where a Direct Abuse Claim was pending on the Petition Date, but also based on "where such Abuse Claim could have been timely and properly filed as asserted by the Abuse Claimant under state law," | This is an objection to the substance of the Trust Distribution Procedures, as incorporated by the Plan.  Such Confirmation Objections are premature and should be considered at the Confirmation Hearing; however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.1.<br><br>The Plan has been modified to unlink the vote to accept the Plan from the election to receive the Expedited Distribution under the Plan. Therefore, this objection is moot. A more fulsome response is set forth in the Debtors' Omnibus Reply. *See* Disclosure Statement, Article VII.B; *see also* Plan, Article III.B.10.<br><br>As explained in the Disclosure Statement and pursuant to the Trust Distribution Procedures, after a review of the documentation provided by the Abuse Claimant in his or her Trust Claim Submission, materials received pursuant to the Document Agreement, and any follow-up materials or examinations (including, without limitation, any Trustee Interview), the Settlement Trustee will either find the Abuse Claim to be legally valid or invalid. The Trust Distribution Procedures are intended to weed out invalid claims. *See* Disclosure Statement, Article VII.B.2; *see also* Plan, Exhibit A, Trust Distribution Procedures, Article VII.I. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | without any opportunity for any part to review or challenge this determination; <br><br> (v) Allowing Abuse Claimants whose Direct Abuse Claims may be substantially reduced by the Scaling Factors to elect to defer the determination of their Proposed Allowed Claim Amounts for up to 12 months from the Effective Date to see if statute of limitation revival legislation occurs; <br><br> Not requiring a showing of negligence on the part of the Protected Party, a showing without which no state law claim is ever allowed, in order for a Direct Abuse Claim to be allowed at a Base Matrix Value; and Providing a no-questions asked, no-proof required Expedited Distribution of $3,500 to holders of Abuse Claims who elect to receive such payments, rather than attempt to show their claims have even potential validity. (Obj. ¶¶ 19-23). | |
| | Century Indemnity Company [D.I. 6065] | The Plan purports to bar the insurers from objecting to claims. In doing so, it improperly strips them of rights guaranteed by Bankruptcy Code Section 502(a). (Obj. at 3). | The Debtors address the Trust Distribution Procedures, including section 502 in the Debtors' Omnibus Reply at § II.C.1. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan is patently unconfirmable because it seeks to strip interested parties of the statutory right to object to claims by creating a closed claims allowance process run by hand-picked representatives of the Direct Abuse Claimants. (Obj. ¶¶ 70-73). | The Debtors address the Trust Distribution Procedures, including section 502 in the Debtors' Omnibus Reply at § II.C.1. |
| | Great American Assurance [D.I. 3271][15] | The Disclosure Statement fails to explain the dynamic whereby the Debtors will be incentivized to make concessions to "claimants with dubious or invalid claims" in exchange for their approval to meet the numerosity requirement. (Obj. ¶ 5.) <br><br> Debtors pretend that the Plan will pay only compensable claims, but the Plan dos not guard against fraudulent claims. (Obj. ¶ 2.) | This is an objection to the substance of the Trust Distribution Procedures, as incorporated by the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing; however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.1. <br><br> The Plan has been modified to unlink the vote to accept the Plan from the election to receive the Expedited Distribution under the Plan. Therefore, this objection is moot. A more fulsome response is set forth in the Debtors' Omnibus Reply. *See* Disclosure Statement, Article VII.B; *see also* Plan, Article III.B.10. |
| **46) Plan Treatment –** | **SUMMARY OF ARGUMENTS** | **Some Direct Abuse Claimants will tender more consideration than others by relinquishing more valuable claims, in violation of section 1123(a)(4).** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT** <br><br> This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, |

---

[15] Travelers Casualty and Surety Company [D.I. 3278] joins in this objection.

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| **Section 1123(a)(4)** | | | however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.4. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] | Because the claimants hold different economic rights against non-debtors, the pooling and third-party releases under the Plan violates section 1123(a)(4): creditors with superior claims against more solvent non-debtors are relinquished those valuable claims but receive the same treatment as those without such claims (citing *In re AOV Indus., Inc.*, 792 F.2d 1140 (D.C. Cir. 1986). (*See, e.g.*, Obj. ¶ 15 [D.I. 5964]). TDP must distinguish among claimants based on which Local Council is alleged to be co-liable with the Debtors since some Local Councils are financially weak and underinsured.  Otherwise, the burden of the channeling injunction to all Local Councils will fall on the claimants with valid claims against asset-rich Local Councils. (*See, e.g.*, Obj. ¶ 5 [D.I. 5964]). | This is an objection to the Plan.  Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.4. |
| | Herman Law Claimants [D.I. 6032] | Because the claimants hold fundamentally different economic rights against the various non-debtors, the pooling and third-party release features of the Plan violate § 1123(a)(4):  creditors with superior claims against more solvent non-debtors are being compelled to relinquish those valuable claims but are receiving the same treatment as those without such claims. (Obj. ¶ 6). | This is an objection to the Plan.  Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.4. |
| | Lujan & Wolff LLP Claimants [D.I. 6039]; [D.I. 3231] | The Disclosure Statement fails to provide sufficient information to support classification of claims in the Plan, including the failure to provide adequate information concerning the similarities and dissimilarities of claims and rights of tort claimant creditors, including continuing to ignore the uniqueness of Guam survivor claims.  (Obj. ¶ 1).  Guam survivors are the only survivors who have a combination of an open statute of limitations that does not close (civil statute of limitations was eliminated); statutory direct action rights against insurers without having to sue the insured; and who were directly serviced by Debtor Boy Scouts of America--which wore a different hat servicing Guam scouting units from 1956 to 1970 as the Direct Service Council, a "local council equal." (Obj. at 1).  The Disclosure Statement fails to explain why direct action claimants who are losing statutory rights of direct action are treated the same way as survivors without such rights – this is unfair and unequal treatment.  (D.I. 6039 - Obj. ¶ 4). | This is an objection to the Plan.  Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.4. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | Certain Insurers [D.I. 6052] (Filed 8/17/21) | The Plan does not provide the same treatment for all Direct Abuse Claims and, therefore, violates section 1123(a)(4). The Plan ignores the different economic rights and degree of consideration each Direct Abuse Claimant is providing in exchange for the same *pro rata* distribution as all other Direct Abuse Claimants. Such disparate treatment also renders the claims dissimilar and requires separate classification under section 1122 of the Code. (Obj. ¶¶ 37-39). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.4. |
| **47) Plan Treatment – Non-Abuse Litigation Claims** | Markel Service, Incorporated [D.I. 6038] | The Plan imposes an inappropriate impediment to prompt processing and payment of Non-Abuse claims; specifically, the Plan provides the Settlement Trust consent over any post-Effective Date settlement of any Non-Abuse Litigation Claim that is entitled to a recovery from the proceeds of the Specified Insurance. (Obj. ¶ 5).

The Plan contradicts the terms of the primary policy issued by Evanston, which authorizes "settlement of any claim or suit as [Evanston] deems expedient." It potentially puts Evanston, as insurer, at odds with applicable statutory, regulatory and legal claims handling requirements regarding timing. (Obj. ¶ 5). | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**

This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.5. |
| **48) Plan Treatment – Best Interests Test** | SUMMARY OF ARGUMENTS | **The Plan is patently unconfirmable because the injunctive relief is unlawful given that the inadequate contributions by the BSA and the Local Councils violate the best interests of creditors test under section 1129(a)(7).** | **PREMATURE OBJECTION TO THE PLAN**

This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.6. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] (Filed 8/10-8/16/2021) | In making that calculation the Court must consider the value of rights against non-debtors that are released under the terms of the Plan. *See, e.g., In re Washington Mutual, Inc.*, 442 B.R. 314, 359-60 (Bankr. D. Del. 2011) ("In a case where claims are being released under the chapter 11 plan but would be available for recovery in a chapter 7 case, the released claims must be considered as part of the analysis in deciding whether creditors fare at least as well under the chapter 11 plan as they would in a chapter 7 liquidation."); *In re Quigley Co.*, 437 B.R. 102, 144-46 (Bankr. S.D.N.Y. 2010) (plan violated best interest test because the debtor's liquidation analysis did not reflect that some creditors would retain their rights to sue the solvent non-debtor parent in a chapter 7 liquidation, rights released under the chapter 11 plan). (*See, e.g.*, Obj. ¶ 19 [D.I. 5964]). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.6. |
| | Certain Insurers [D.I. 6052] (Filed 8/17/21) | To the extent that any Direct Abuse Claimant votes to reject the Plan, the Plan would not satisfy the best interests test under section 1129(a)(7) because the test requires consideration of the value of | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | property that each dissenting creditor will retain under the plan and in the hypothetical chapter 7 case, including claims against non-debtors that cannot be released in a chapter 7 liquidation. *Quigley,* 437 B.R. at 144-45; *Washington Mut.,* 442 B.R. at 369-60. (Obj. ¶ 40). | however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.6. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan cannot satisfy the best interest test, as Chartered Organizations would retain more value in a chapter 7 liquidation than under the Plan because their ability to directly tender claims under the Scouting Policies would provide an opportunity for full recovery. The liquidation analysis must take into consideration the value of the Chartered Organizations' claims against the insurance companies that would be released under the Plan. (Obj. ¶¶ 76-78). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.6. |
| 49) Plan Treatment – Third Party Release | **SUMMARY OF ARGUMENTS** | **The Plan is patently unconfirmable because it contains impermissible third-party releases.** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**<br><br>This is an objection to the Plan and to the third party releases. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2**.** |
| | Century Indemnity Company [D.I. 6065] | The Disclosure Statement describes a plan that is unconfirmable because the Plan grants improper third party releases by imposing broad non-consensual releases in favor of non-debtor third parties. The Court should not approve a Disclosure Statement for a plan that contains illegal releases. (Obj. at 30). | This is an objection to the Plan and to the third party releases. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2**.** |
| | Claimant No. 242 [D.I. 2386] | The releases of the Debtors, Local Councils, and third parties are objectionable. (Obj. at 5:27-28.) | This is an objection to the Plan and to the third party releases. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2**.** |
| | United States Trustee [D.I. 3581] | In other cases, the opt out provisions are deficient because they apply only to creditors who vote against the Plan, and not to other creditors who will be affected by the release but who have no ability to vote or opt out. Thus, the Plan's definition of Releasing Claim Holder (I.A.190) does not permit holders of Claims to opt out if they were presumed to accept the Plan (Priority Claims and Other Secured Claims), nor if they failed to return a ballot. The releases cannot be considered "consensual" with respect to those claimants, and the | This is an objection to the Plan and to the third party releases. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2**.** |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | Plan should not be approved unless those releases are amended to apply only to those creditors who affirmatively assent. (Obj. ¶ 34.) | |
| | Tort Claimants' Committee [D.I. 3526] | The Plan is unconfirmable because it contains blanket direct and third-party releases without adequate discussion of what claims are to be released and in exchange for what value and consideration. (Obj. ¶ 112-18.) | This is an objection to the Plan and to the third party releases. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2. |
| **50) Plan Treatment – Protected Parties Channeling Injunction.** | **SUMMARY OF ARGUMENTS** | **The Plan is unconfirmable under section 1129(a)(1) because there is a discharge of non-debtor Protected Parties' abuse liabilities without making the required showing that the Local Councils have provided a critical financial contribution. Though styled as a Channeling Injunction, the releases described in Section X.J.3 of the Plan are simply a specialized form of a non-consensual third-party release.** **Additionally, if a Chartered Organization post-confirmation becomes a Protected Party, and thus subject to the Channeling Inunction, the same information must be disclosed and all affected claimants must be given notice and an opportunity for a hearing to assess the fairness of such post-confirmation settlement.** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT** This is an objection to the Plan and to the channeling injunction. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2. In addition to being premature, these objections have been rendered substantially moot by the revised Plan. Pursuant to Articles IV.I and IV.K of the Plan, Post-Effective Date Chartered Organization Settlements and Post-Effective Date Insurance Settlements are now subject to notice and an objection period. Also, Post-Effective Date Chartered Organization Settlements are only effective upon the Court's entry of a final order of approval. This ensures that parties in interest will have equivalent rights to be heard before approval of any post-effective date settlement. |
| | Plaintiff Law Firms [D.I. 5955 *et al.*] (Filed 8/10 – 8/16/21) | [I]f a Chartered Organization post-confirmation becomes a Protected Party, the same information must be disclosed and all affected claimants must be given notice and an opportunity for a hearing to assess the fairness of such post-confirmation settlement. (*See, e.g.*, Obj. ¶ 5 [D.I. 5964]). The procedures under the Disclosure Statement and Plan that allow a post-confirmation trustee to enter into settlements to release claims against non-debtors are inadequate to protect the rights of the parties being enjoined. Disclosure must be made as to the identity of any third party non-debtor Chartered Organization that becomes a Protected Party under the Plan and the contribution being made before the votes are cast and the votes of impacted creditors separately tallied so the Court can determine if there is support from impacted creditors. In the alternative, if a settlement is reached post-confirmation that provides for a Chartered Organization to become a Protected Party, there must be notice and an opportunity for a hearing to assess the fairness to all affected claimants, at which point the | This is an objection to the Plan and to the channeling injunction. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2. In addition to being premature, these objections have been rendered substantially moot by the revised Plan. Pursuant to Articles IV.I and IV.K of the Plan, Post-Effective Date Chartered Organization Settlements and Post-Effective Date Insurance Settlements are now subject to notice and an objection period. Also, Post-Effective Date Chartered Organization Settlements are only effective upon the Court's entry of a final order of approval. This ensures that parties in interest will have equivalent rights to be heard before approval of any post-effective date settlement. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | Court can determine if there is overwhelming majority support the expansion of the Channeling Injunction. (*See, e.g.*, Obj. ¶ 23 [D.I. 5964]). | |
| | Heman Law Claimants [D.I. 6032] | Alternatively, if a settlement with a Chartered Organization is reached post-confirmation that provides for the Court's Channeling Injunction to be modified to designate the Chartered Organization as a Protected Party, the same material information must be disclosed and then all affected claimants must be given notice and an opportunity for a hearing to assess the fairness of such post-confirmation settlement to the affected claimants before the modification becomes effective, otherwise impacted creditors will have no right to vote on that relief, and this Court will not be in a position to review that relief . (Obj. ¶3, 12). | This is an objection to the Plan and to the channeling injunction. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2.<br><br>In addition to being premature, these objections have been rendered substantially moot by the revised Plan. Pursuant to Articles IV.I and IV.K of the Plan, Post-Effective Date Chartered Organization Settlements and Post-Effective Date Insurance Settlements are now subject to notice and an objection period. Also, Post-Effective Date Chartered Organization Settlements are only effective upon the Court's entry of a final order of approval. This ensures that parties in interest will have equivalent rights to be heard before approval of any post-effective date settlement. |
| | United States Trustee [D.I. 3581] | Though styled as a Channeling Injunction, the releases described in Section X.J.3 of the Plan are simply a specialized form of a non-consensual third-party release. (Obj. ¶ 12.) | This is an objection to the Plan and to the channeling injunction. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2.<br><br>In addition to being premature, these objections have been rendered substantially moot by the revised Plan. Pursuant to Articles IV.I and IV.K of the Plan, Post-Effective Date Chartered Organization Settlements and Post-Effective Date Insurance Settlements are now subject to notice and an objection period. Also, Post-Effective Date Chartered Organization Settlements are only effective upon the Court's entry of a final order of approval. This ensures that parties in interest will have equivalent rights to be heard before approval of any post-effective date settlement. |
| | Certain Insurers [D.I. 6052] | The Plan is unconfirmable because there is a discharge of non-debtor Protected Parties' abuse liabilities without making the required showing under applicable Third Circuit law. The Debtors cannot establish that the Local Councils have provided a critical financial contribution. Moreover, the Plan contemplates that all Local Councils will be Protected Parties, whether or not they make a contribution to the Settlement Trust. (Obj. ¶¶ 25-28). | This is an objection to the Plan and to the channeling injunction. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.B.2.<br><br>In addition to being premature, these objections have been rendered substantially moot by the revised Plan. Pursuant to Articles IV.I and IV.K of the Plan, Post-Effective Date Chartered Organization Settlements and Post-Effective Date Insurance Settlements are now subject to notice and an objection period. Also, Post-Effective Date Chartered Organization |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Settlements are only effective upon the Court's entry of a final order of approval. This ensures that parties in interest will have equivalent rights to be heard before approval of any post-effective date settlement. |
| 51) Plan Treatment – Indirect Abuse Claims Treatment | **SUMMARY OF ARGUMENTS** | **The Plan's classification and treatment of Indirect Abuse Claimants is unfair. The material differences in recovery between classes of equal priority constitutes unfair discrimination under section 1129(b). The Plan is thereby patently unconfirmable.** | **PLAN HAS BEEN REVISED; DEBTORS HAVE ADDED DISCLOSURE** <br><br> This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3. <br><br> The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3. <br><br> The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | Pro Se Claimant 242 [D.I. 6027] | The Plan and Disclosure cite no legal basis for putting all Direct Abuse Claimants in a single class, and all Indirect Abuse Claimants in another. (Obj. at 8). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3. <br><br> The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3. <br><br> The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | Liberty Mutual [D.I. 6057] | Without explanation from the DS, the Plan appears to grant Liberty an Indirect Abuse Claim, as opposed to a breach of contract claim. (Obj. ¶ 25). The Disclosure Statement fails to provide a basis for subordinating such claims to the payment in full of the corresponding Direct Abuse Claim or any allegation that could substantiate a claim | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | for equitably subordinating Indirect Abuse Claims. (Obj. ¶¶ 26-27). Liberty reserves all rights to object to the Plan on the basis that the classification and treatment of Indirect Abuse Claims constitutes unfair treatment and bad faith. (Obj. ¶ 29). | The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | Century Indemnity Company [D.I. 6065; 3856] | The Disclosure Statement describes a plan that is unconfirmable because the Plan unfairly discriminates against insurer claims, which rank in the same priority as all other unsecured claims. The Plan provides insurers with a materially lower percentage recovery than similarly situated unsecured creditors. Any Non-Settling Insurer owed a deductible or self-insured retention from the Settlement Trust is deemed to hold an Indirect Abuse Claim. The Trust Distribution Procedures expressly subordinate Indirect Abuse Claims to the "prior payment in full of all Allowed Abuse Claims." The TDP also provide that Indirect Abuse Claims will not be paid if they are barred by a statute of limitations, while Direct Abuse Claims will receive compensation notwithstanding any time bars applicable to their claims. (D.I. 6065 at 26-27; D.I. 3856 at 37). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | The Church of Jesus Christ of Latter-Day Saints [D.I. 6009; D.I. 3263] | The Plan unfairly discriminates against holders of Indirect Abuse Claims in Class 9, who stand to recover minimal value, while providing holders of Direct Abuse Claims in Class 8 and Non-Abuse Litigation Claims in Class 7 with up to 100% recoveries. The material differences in recovery between classes of equal priority constitutes unfair discrimination under section 1129(b) (citing *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121-122 (D. Del. 2006)). The Debtors cannot justify the grossly disparate treatment of Indirect Abuse Claims nor demonstrate that such discrimination is necessary to the reorganization. The TDP deny indemnitees, including the Church, any meaningful opportunity to recover indemnified losses in defending scouting-related abuse claims in the tort system. Indirect Abuse Claims are expressly subordinated under the TDP to the prior payment in full of all Direct Abuse Claims (including future claims), leaving holders of Indirect Abuse Claims | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | ineligible for recovery for years to come, if ever. (D.I. 6009 at. ¶¶ 23-25; D.I. 3263 at ¶ 27). | |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan is patently unconfirmable because the Plan and accompanying TDP unfairly discriminate against Chartered Organizations through procedures that subordinate Indirect Abuse Claims, while providing claims of equal priority with up to 100% recoveries. (Obj. ¶ 56). Indirect Abuse Claims are denied any meaningful recovery against the Settlement Trust because (1) the TDP deny indemnitees any meaningful opportunity to recover indemnified losses in defending abuse claims in the tort system; and 2) recoveries of indirect claimants are subordinated to the prior payment in full of all direct claims (including future claims). (Obj. ¶¶ 57-63). | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | United Methodist Ad Hoc Committee [D.I. 3273] | There is no explanation on "the legal justifications for the implied subordination of Indirect Abuse Claims to Direct Abuse Claims." (Obj. ¶ 5.) | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | Tort Claimants' Committee [D.I. 3526] | There is no explanation why Indirect Abuse Claims are to be paid from the Settlement Trust rather than being classified and treated as General Unsecured Claims. (Obj. ¶ 111.) | This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan and TDP have been amended to describe how section 502(e) will operate in the context of the post-confirmation Settlement Trust, and that the rights of claimants to assert Indirect Abuse Claims as they become liquidated in the tort system will be preserved. *See* Plan, Article III.B.11; |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | *see also* Disclosure Statement, Article II.H and Article VII. A more fulsome response is set forth in the Debtors' Omnibus Reply at § II.A.3.<br><br>The Plan has also been modified, rendering objections regarding no recovery for indirect abuse claimants moot. *See* Disclosure Statement, Article II.H. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan also denies due process to Chartered Organizations by denying Indirect Abuse Claims that were late-filed because Chartered Organizations never received prior notice of such claims, and by not giving notice to Chartered Organizations that they should file proof of claims for Indirect Abuse Claims that are contingent and unliquidated and subject to disallowance to potentially protect their rights. (Obj. ¶ 81). | Notice was properly provided. *See* the Debtors' Omnibus Reply at § II.A.3. |
| 52) Plan Treatment – Expedited Distribution | Summary | **Allowing a claimant to receive an immediate cash payment with no support other than the filing of a proof of claim constitutes impermissible vote-buying. The expedited distribution election would enable claimants to recover on account of fraudulent or invalid claims and would exclude insurers from the claims resolution process.** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**<br><br>This is an objection to the Plan and to the expedited distribution procedures under the TDP. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.5.<br><br>Moreover, the Plan has been modified which renders the remaining objections moot. The Plan unlinks the vote to accept the Plan from the election to receive the Expedited Distribution. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Article III.B; *see also* Plan, Exhibit A. |
| | Certain Insurers [D.I. 6052] | The lax requirement of the TDP that allows a claimant to receive an immediate cash payment with no support other than the filing of a proof of claim in and of itself incentivizes persons with unsubstantiated Abuse Claims to vote in favor of the Plan, which constitutes impermissible vote-buying. (Obj. ¶ 46-48). | This is an objection to the Plan and to the expedited distribution procedures under the TDP. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.5. |
| | Great American Assurance [D.I. 6056] | The Debtors hope to meet the numerosity requirement for acceptance of the Plan by relying on approval from claimants with dubious or invalid claims. The $3,500 Expedited Distribution is more than twice the $1,500 in earlier iterations of the Plan, which was already many times larger than convenience class distributions in other mass tort cases. This inflated compensation and vote-buying scheme plainly violates bankruptcy and other applicable law. Given the Plan's flaws, it would waste time and resources to approve the Disclosure Statement, send out the Plan for balloting, conduct confirmation- | This is an objection to the Plan and to the expedited distribution procedures under the TDP. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.5. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | related discovery, and hold a confirmation hearing. The Disclosure Statement should explain this dynamic and that such a Plan should not be confirmed (citing *In re Glob. Indus. Techs, Inc. ("GIT")*, 645 F.3d 201, 214 (3d Cir. 2011)). (Obj. ¶¶ 4-5). | |
| | Century Indemnity Company [D.I. 6065] | The expedited distribution mechanism would open the door to thousands of fraudulent or otherwise invalid claims receiving $3,500 payments without any scrutiny whatsoever, all while excluding insurers from the claims resolution process. The Plan offers no mechanism for eradicating time-barred claims from the resolution process, including those claims opting into expedited distribution. (Obj. at 3). | Century's discussion of *Skinner,* alleging collusion, is misleading. The Omnibus Reply contains a more fulsome response at § II.A.1. <br><br> This is an objection to the Plan. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.A.1. <br> Moreover, the Plan has been modified which renders the remaining objections moot. The Plan unlinks the vote to accept the Plan from the election to receive the Expedited Distribution. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Article III.B; *see also* Plan, Exhibit A. |
| | AIG Companies [D.I. 3523] | The Disclosure Statement does not disclose that the expedited distribution may be impermissible vote buying and promotes fraud. (Obj. ¶¶ 27-29.) | This is an objection to the Plan and to the expedited distribution procedures under the TDP. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.5. <br><br> Moreover, the Plan has been modified which renders the remaining objections moot. The Plan unlinks the vote to accept the Plan from the election to receive the Expedited Distribution. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Article III.B; *see also* Plan, Exhibit A. |
| | Allianz Insurers [D.I. 3549] | The Expedited Distribution may constitute impermissible vote buying and may violate section 1129(a)(3) of the Bankruptcy Code. (Obj. ¶ 5.) | This is an objection to the Plan and to the expedited distribution procedures under the TDP. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.5. <br><br> Moreover, the Plan has been modified which renders the remaining objections moot. The Plan unlinks the vote to accept the Plan from the election to receive the Expedited Distribution. *See* Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Article III.B; *see also* Plan Exhibit A. |
| | United States Trustee | The expedited distribution option should be explained and not conditioned on a claimant's plan vote. The Disclosure Statement | This is an objection to the Plan and to the expedited distribution procedures under the TDP. Such Confirmation Objections are premature |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | [D.I. 3581] | should explain the risk that the trust is vulnerable to fraudulent claims. The expedited payment option violates the Code requirement that all claims within the same class receive identical treatment, and it is in bad faith and should be excised from the Plan. (Obj. ¶¶ 30-32.) | and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.5.<br><br>Moreover, the Plan has been modified which renders the remaining objections moot. The Plan unlinks the vote to accept the Plan from the election to receive the Expedited Distribution. *See* Omnibus Reply at ¶54; Disclosure Statement, Article VII.B and Article VII.C; *see also* Plan, Article III.B; *see also* Plan Exhibit A. |
| 53) Plan Treatment – Jurisdiction | Summary of Certain Insurers [D.I. 6052] | Pursuant to section 157(b)(2)(B) of title 28, the Bankruptcy Court does not have jurisdiction to make the a finding, as required by the Plan, that all Allowed Claim Amounts are "fair and reasonable," as such a determination could only be made after a trial of each claim. Moreover, a blanket Affirmation Order affirming the Bankruptcy Court's determination cannot cure this lack of jurisdiction because the insurance policies, assuming coverage exists, require a judgment or approved settlement for each Abuse Claim on an individualized basis.<br>Pursuant to section 157(b)(2)(B) of title 28, the Bankruptcy Court does not have jurisdiction to make the a finding, as required by the Plan, that all Allowed Claim Amounts are "fair and reasonable," as such a determination could only be made after a trial of each claim. Moreover, a blanket Affirmation Order affirming the Bankruptcy Court's determination cannot cure this lack of jurisdiction because the insurance policies, assuming coverage exists, require a judgment or approved settlement for each Abuse Claim on an individualized basis. (Obj. ¶ 44.) | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**<br><br>This is an objection to the Plan and to jurisdiction pursuant to section 157(b)(2)(B). Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.C.6. |
| 54) Plan Treatment – Insurance Neutrality | **SUMMARY OF ARGUMENTS** | **The Plan is patently unconfirmable because it is not insurance neutral.**<br><br>**The Plan is patently unconfirmable because it inflates liability by requiring findings designed to prejudice the ability of insurers to assert insurance-coverage defenses.** | **DEBTORS HAVE ADDED DISCLOSURE**<br><br>This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |
| | Certain Insurers [D.I. 6052] | The Plan is uncomfirmable because it is affirmatively "insurance prejudicial" rather than insurance neutral, in violation of section 1129(a)(1)-(3) of the Bankruptcy Code. The Plan impermissibly | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | modifies, and was specifically designed to evade the terms of, the Debtors' (and certain non-debtors') insurance contracts. (Obj. ¶ 9). The Plan expressly provides that the Confirmation Order and Affirmation Order may "modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of, and rights and obligations under, an Insurance Policy. | confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |
| | Liberty Mutual [D.I. 3578] | The Disclosure Statement does not explain whether the Plan is insurance neutral. The Disclosure Statement and Plan provide that any Insurance Company that objects to Confirmation or otherwise participates in litigation related to the Confirmation process risks having any rulings be binding (i.e., the Plan is not insurance neutral). (Obj. ¶ 7.) | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |
| | Markel Service, Incorporated [D.I. 6038] | The Plan appears to propose an explicit rewrite of an express insurance policy provision, in the process proposing an explicit violation of insurance neutrality. No provision in Bankruptcy Code section 1123, governing plan provisions, or section 1129, governing plan confirmation standards, authorizes modification of an insurance contract as the Plan does.  The Court should withhold approval of the Disclosure Statement pending modification of the Plan to address Evanston's concerns raised. (Obj. ¶¶ 6-7). | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |
| | Century Indemnity Company [D.I. 6065]; [D.I. 3856] | The Debtors' Plan of reorganization may not impair the rights of non-debtor insurers to defend themselves in coverage actions with non-debtor claimants. The DS, Plan and Trust Distribution Procedures are not insurance neutral due to the following provisions:<br>• Debtors propose having an Article I court delegate judicial decision-making to Eric Green; he was handpicked by the very claimants whose claims he will be adjudicating, while stripping insurers of their participation rights in the process;<br>• The Settlement Trustee will adjudicate and purport to determine the liability attributed to non-debtor entities;<br>• The Settlement Trustee will abrogate affirmative defenses while shielding Abuse Claims from any form of judicial scrutiny prior to allowance and payment;<br>• With respect to valuation decisions, the Debtors have stripped the Settlement Trustee of discretion to adjust claim amounts downward based on mitigating factors, causing further prejudice to insurers;<br>• There is no process to evaluate or investigate the validity of claims; and | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | The Plan would expressly override anti-assignment clauses in the Debtor insurance contracts, notwithstanding the Debtors' non-profit status. (D.I. 6065 - Obj. at 2).<br><br>The Plan is not neutral because it impairs insurers' rights under the state-law insurance contracts they issued to the Debtors and Local Councils. A plan may not be confirmed if it would give the debtor greater rights under its insurance contracts than it held prepetition. The Disclosure Statement should disclose that certain of the Debtors' insurers take the position that purported insurance neutrality language in the Plan is inadequate. The Disclosure Statement should also inform creditors that the Court, or a court on appeal, may require the Debtors to include more robust language in order for the Plan to actually be insurance neutral. (D.I. 3856 - Obj. at 38-42.)<br><br>The Disclosure Statement describes a plan that is unconfirmable because the Plan improperly deprives insurers of their right to defend, settle, and object to claims under section 502(a). The Plan assigns the right to object to claims to the Settlement Trust (thereby vesting in the Settlement Trustee the exclusive right to object to claims) which violates section 502(a), rendering the Plan unconfirmable. In most of the cases the Debtors identify, the plan preserved the rights of parties in interest to object to claims under section 502(a) (citing *Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del. 2019) [ECF No. 1493] and *In re Remington Outdoor Co.*, Case No. 20-81688 (Bankr. N.D. Ala. 2020) [ECF No. 1370]. Debtors conflate the assignment of exclusive rights to enforce and prosecute claims with the assignment of an exclusive right to object to claims. (D.I. 6065 - Obj. at 28-29). | |
| | AIG Companies [D.I. 3523] | The Disclosure Statement does not disclose that the plan is not insurance neutral. (Obj. ¶¶ 20-24.) | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |
| | Allianz Insurers [D.I. 3549] | Plan may be unconfirmable because it either (i) purports to impair the contractual rights of certain of the Debtors' insurers or (ii) contains impermissibly vague neutrality provisions. (Obj. ¶ 7.) | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | The Disclosure Statement should clarify whether the Plan will alter an insurance company's rights and defenses under its insurance policies. (Obj. ¶ 8.) | |
| | Argonaut Insurance Company [D.I. 3285] | Debtors assert that the Plan is insurance neutral, but is not; it identifies the Debtors' (and non-debtor affiliates') obligation to pay deductibles and self-insured retentions, but fails to describe how they will be paid. (Obj. ¶ 2.) | This is an objection to the Plan and insurance neutrality provisions. Such objections are premature and not ripe for consideration. Objections to the Plan and insurance neutrality should be considered at the proper time–plan confirmation. However, a more fulsome response is set forth in the Debtors' Omnibus Reply at § II.D.3. |
| 55) Plan Treatment – Insurance Coverage Issue Dispute | SUMMARY OF ARGUMENTS | BSA may not shift the burden to pay SIRs onto insurers. A non-debtor may not evade its obligation to fully satisfy the applicable SIRs on the basis that another insured under the policy is a debtor | PREMATURE OBJECTION TO THE PLAN & LACKS MERIT

This is an objection to the Plan and the Plan's treatment of self-insured retentions. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.2. |
| | Insurers [D.I. 6062] (Filed 8/17/21) | The Plan extends Protected Party status to Local Councils and Chartered Organizations, but the objecting Insurers have not located a single decision that allowed a *non-debtor* to evade its obligation to fully satisfy the applicable SIRs on the basis that another insured under the policy was a debtor. Failure of the non-debtor Protected Party to pay the full amount of the applicable SIRs would be a complete defense to coverage. (Obj. at 13-14). | This is an objection to the Plan and the Plan's treatment of self-insured retentions. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.2. |
| | Liberty Mutual [D.I. 6057] | The Debtors cannot use their bankruptcy to rewrite the terms of the Liberty Mutual insurance policies, particularly because they are fronting policies with no risk shifting because any amounts paid out by the insurer will be satisfied by the insured's security (Obj. ¶¶ 17-19). Requiring Liberty to satisfy any deductible in connection with payment of a Direct Abuse Claim effectively rewrites the Liberty Mutual insurance policies and provides further evidence that the Plan is not insurance neutral. (Obj. ¶ 20). | This is an objection to the Plan and the Plan's treatment of self-insured retentions. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.2. |
| 56) Plan Treatment – Non-Debtor Insured | SUMMARY OF ARGUMENTS | The Plan is patently unconfirmable because it seeks to appropriate the rights of non-debtor insured parties under the BSA and Local Council's insurance policies. | PREMATURE OBJECTION TO THE PLAN & LACKS MERIT

This is an objection to the Plan and to the Plan's treatment of Chartered Organizations. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.1. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | The Church of Jesus Christ of Latter-Day Saints [D.I. 6009] | The Plan seeks to unilaterally extinguish the independent property rights of non-debtor insureds. | This is an objection to the Plan and to the Plan's treatment of Chartered Organizations. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.1. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan is patently unconfirmable because it is premised on releasing the claims of non-debtor insureds against the insurance companies and Local Councils, without providing affected insureds and indemnitees with meaningful recoveries or requiring the insurers to make any contribution to the Settlement Trust. (Obj. ¶ 47). | This is an objection to the Plan and to the Plan's treatment of Chartered Organizations. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.1. |
| 57) Plan Treatment – Insurance Assignment | SUMMARY OF ARGUMENTS | **Anti-Assignment provisions in insurance contracts prohibit assignment to anyone without the insurers consent the "Insurance Assignment" is thus impermissible.** | **PREMATURE OBJECTION TO THE PLAN & LACKS MERIT**<br><br>This is an objection to the Plan and to insurance assignments. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.4. |
| | Century Indemnity Company [D.I. 6065] (Filed 8/17/21) | Because Century's insurance contracts prohibit assignment to anyone else, the "Insurance Assignment" is thus impermissible and the Plan unconfirmable. Debtors are a non-profit organization, and they cannot rely on caselaw permitting assignment of insurance contracts by for-profit debtors (citing *In re Federal-Mogul Global Inc.*, 385 B.R. 560, 567 (Bankr. D. Del. 2008), aff'd, 684 F.3d 355, 382 (3d Cir. 2012)). No court has ever permitted an assignment of non-debtors' insurance contracts without an insurer's consent. (Obj. at 8-9). | This is an objection to the Plan and to insurance assignments. Such Confirmation Objections are premature and should be considered at the Confirmation Hearing, however, a preliminary response is set forth in the Debtors' Omnibus Reply at § II.D.4. |
| 58) Plan Treatment – Other Bankruptcy Case Insurance Rights | SUMMARY OF ARGUMENTS | **Disclosure Statement and Plan unlawfully impair the rights of the Survivors of child sexual abuse who hold claims in the Archdiocese of Agana Bankruptcy. The attempts by the Boy Scouts and their insurers to dispose of property of the Archdiocese of Agana's bankruptcy estate violates the automatic stay in the Archdiocese of Agana Bankruptcy case.** | **RESOLVED - PLAN MODIFICATION**<br><br>The revised treatment under the Plan of Chartered Organizations in bankruptcy does not violate the automatic stay. |
| | Guam Committee [D.I. 5842] | The automatic stay prevents the Court from disposing of the Archdiocese's insurance rights. Courts consistently hold that an attempt by a coinsured to settle or payout proceeds on insurance rights belonging to the estate is a violation of the automatic stay. (Obj. ¶ 22). | The revised treatment under the Plan of Chartered Organizations in bankruptcy does not violate the automatic stay. |
| | Catholic and Methodist Committees [D.I. 6067] | The Plan is patently unconfirmable because it would violate the automatic stay the bankruptcies of several Catholic dioceses and archdioceses. (Obj. ¶¶ 64-65). | The revised treatment under the Plan of Chartered Organizations in bankruptcy does not violate the automatic stay. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | |
| **59) Plan Treatment – Exculpation** | **SUMMARY OF ARGUMENTS** | **The exculpation provision is overly broad, in particular the Plan improperly exculpates multiple parties including Sidley Austin LLP.** | **PREMATURE OBJECTION TO THE PLAN & RENDERED MOOT**<br><br>This is an objection to the Plan and releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the Plan and releases should be considered at the proper time– plan confirmation.<br><br>The exculpation provision has been amended so that it only applies to the period on or before the Effective Date. *See* Disclosure Statement, Article VI.Q.7. The Creditor Representative will be appointed on the Effective Date. *See* Disclosure Statement, Article VI.H.16. Therefore, the exculpation provision will only benefit such representative on the Effective Date. This is a standard exculpation provision. *See* Disclosure Statement, Article VI.Q. |
| | United States Trustee [D.I. 3581] | The exculpation provision is overly broad. (Obj. ¶ 3.) A Creditor Representative is not an estate fiduciary and should be removed from the definition of exculpated parties. (Obj. ¶ 28.) Plan section X.K proposes that exculpated parties "shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence." (Obj. ¶ 29.). This provision should be stricken. (Obj. ¶ 29.). Plan section X.K proposes to exculpate parties from conduct taking place not only during the case, but also for "the administration, consummation and implementation of the Plan or the property to be distributed under the Plan, or the management or operation of the Debtors." (Obj. ¶ 27.). Future exculpation for acts that have not yet occurred is impermissible. (Obj. ¶ 27.) This provision should be revised to apply only to conduct before the Effective Date. (Obj. ¶ 27.) | This is an objection to the Plan and releases/injunctions. Such objections are premature and not ripe for consideration. Objections to the Plan and releases should be considered at the proper time– plan confirmation.<br><br>The exculpation provision has been amended so that it only applies to the period on or before the Effective Date. *See* Disclosure Statement, Article VI.Q.7. The Creditor Representative will be appointed on the Effective Date. *See* Disclosure Statement, Article VI.H.16. Therefore, the exculpation provision will only benefit such representative on the Effective Date. This is a standard exculpation provision. *See* Disclosure Statement, Article VI.Q. |
| | Century [D.I. 3856] | The Plan improperly exculpates multiple parties, such as the Debtors' attorneys who were with Sidley Austin LLP and now are with White & Case LLP. Sidley took the Debtors on as a client while it still represented Century, and thus had a direct conflict of interest precluding its representation under section 327 of the Bankruptcy Code. Should Century prevail on appeal, the Debtors' attorneys would likely have to disgorge all fees collected under their representation of the Debtors. The Debtors cannot moot Century's appeal by simply inserting an overbroad exculpation provision in the Plan. At a minimum, the Century appeal should be carved out of the exculpation provision. (Obj. at 45-47.) | The exculpation provision of the Plan has been amended so that Century's claims against Sidley are carved out: "Notwithstanding the foregoing or any provision of the Plan to the contrary, Sidley Austin shall not be an Exculpated Party with respect to any Claims that Century asserts against Sidley Austin related to Sidley Austin's representation of the Debtors prior to the Petition Date." *See* Plan, Article VI.Q.4.e.7. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | **Solicitation Objections** | |
| **60) Solicitation Procedures – Master Ballot Procedures** | **Plaintiff Law Firms [D.I. 2739 *et al.*]** | There are no procedures to solve situations where more than one law firm votes for the same claimant, which disenfranchises survivors' votes. The solicitation procedures should require the Debtors, in the event that votes are submitted by two law firms on behalf of the same abuse survivor and such votes conflict, to verify which law firm has the authorization to submit a ballot on behalf of the claimant. The Debtors do not explain how they intend to solicit and count votes in this circumstance, including how to ensure such claimants do not vote multiple times, and how to determine which vote to count if inconsistent votes are submitted on behalf of the same claimant. [D.I. 2739 at 13-14]. | The Debtors dispute this Objection to the extent the Objectors argue that survivors will be disenfranchised by the solicitation procedures, and the Solicitation Procedures already address the issues raised in this objection in Section IV.F.<br><br>Section IV.F of the Solicitation Procedures provide that if the Debtors receive a ballot from two different firms on account of the same holder of a Direct Abuse Claim that conflict, the Debtors will reach out to both firms, with notice of such communication to counsel to the TCC and the Coalition, and request written documentation of each firm's representation of such claimant. The Debtors will resolve which of the ballots is proper within ten (10) days from the notice of the conflict as provided by the Debtors, and if the Debtors cannot establish which firm properly represents such holder, the vote will not be counted. *See* § IV.F of the proposed Solicitation Procedures. [D.I. 6215, Ex. 1].<br><br>The Debtors submit that this procedure is sufficient to resolve any conflicting votes and ensure a survivor's vote is properly counted. As a preliminary matter, the Solicitation Agent will review of claimant data such as name, claim number, last four digits of Social Security number, and date of birth in order to address duplicative votes. |
| | **Tort Claimants' Committee [D.I. 3526]** | The Debtors should revise § IV.F.3 of the Solicitation Procedures to provide that if more than one vote is received from different law firms on account of the same survivor, the Debtors should count the survivor's vote one time and the Debtors should not sort out which law firm controlled the vote of the survivor unless the votes conflict. If the votes conflict, then the Debtors should require the firms to produce an engagement letter showing their authority to act on behalf of the survivor but only to the extent the conflicting vote might change the outcome of the vote on the Plan. [D.I. 3526 at 59-60, ¶¶ 128-30]. | See response directly above.<br><br>The Debtors also note that the revised procedure set forth in § IV.F was discussed with the TCC and the Coalition. |
| | **Tort Claimants' Committee [D.I. 3526]** | The Solicitation Procedures should provide that, in the event of conflicting duplicative votes on master ballots, parties have 14 days, instead of 10 days to resolve the dispute. [D.I. 3526 at 60, ¶ 130]. | The Debtors dispute this Objection.<br><br>Because the Solicitation Agent has 14 days from the Voting Deadline to complete its final voting certification, setting the time period to resolve any conflicting law firm votes at 10 days provides the Solicitation Agent with sufficient time to both identify conflicting vote and notice the conflict to law firms so that it can be resolved prior to the deadline to file the final |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | voting report. *See* § IV.F of the revised proposed Solicitation Procedures. [D.I. 6215, Ex. 1]. |
| | **Century** [D.I. 6065] | The Debtors have "forfeited" the obligation to police the solicitation process – as an example, the Debtors have stripped the requirement that a master ballot include the last four digits of a SSN. [D.I. 6065 at 38]. | This Objection is incorrect.<br><br>The Solicitation Procedures provide that an exhibit accompanying the Master Ballot will contain, among other things, the last four digits of the direct abuse claimant's Social Security number (which was already provided to the Debtors through the proof of claim submission process). *See* D.I. 6215, Solicitation Procedures Order – Master Ballot, Ex. 2-5. |
| **61) Solicitation Procedures – Proposed Dates/ Timeline** | **Tort Claimants' Committee** [D.I. 3526] | The solicitation and confirmation timeline outlined in the Solicitation Procedures Motion no longer applies because the hearing on the Disclosure Statement has been moved. Survivors and their counsel should have no less than 60 days to vote on the Plan, and other dates should be extended. [D.I. 3526 at 57, ¶ 121]. | The Debtors believe this Objection is resolved in part.<br><br>The Debtors have revised the proposed solicitation and confirmation timeline as developments in the case have occurred (and will continue to do so, as necessary), as may be seen in the proposed revised Solicitation Procedures Order and exhibits filed on July 2 and again on September 15. The dates in the motion are not determinative. [D.I. 6215, 6216].<br><br>With respect to the revised proposed time period for voting, the Debtors submit that the proposed time period of 43 days or more for most claimants, given that most Solicitation Packages will be distributed well in advance of the Solicitation Date, is a reasonable amount of time under the circumstances, which is set forth in more detail in Section III of the Debtors' Omnibus Reply. |
| | **U.S. Trustee** [D.I. 3581] | The confirmation hearing timeline does not work, as it is close to the Labor Day and people have to adjust their vacation schedule. [D.I. 3581, ¶ 35]. | This Objection is moot given the timing of the confirmation hearing schedule proposed in the Debtors' most recently filed proposed Solicitation Procedures Order. [D.I. 6216, Revised Proposed Solicitation Procedures Order, Ex. A]. |
| **62) Solicitation Procedures – General** | **Tort Claimants' Committee** [D.I. 3526] | Under the proposed Solicitation Procedures, the Debtors will only solicit the holder of a claim, or his/her counsel, that was filed most recently. The Debtors should send a ballot to (a) each counsel that filed a claim on behalf of a survivor and (b) to the survivor if survivor filed a claim on behalf of himself or herself. [D.I. 3526 at 57-58, ¶ 122–25]. | The Debtors made changes to the Solicitation Procedures filed on April 28, 2021 that resolve this Objection. [D.I. 2726, Ex. 1, § IV.A.3]. The Debtors deleted the procedure stating that only the most recently-filed duplicative Direct Abuse Claim would be solicited. |
| | **Tort Claimants' Committee** [D.I. 3526] | Section V.B.10 of the Solicitation Procedures, should require the Debtors to obtain the consent of the TCC or provide notice and opportunity for a hearing prior to entering into any stipulation with an abuse survivor with respect to the amount of the claim for voting purposes. [D.I. 3526 at 61, ¶ 133]. | The Debtors believe this Objection is resolved in the revised Solicitation Procedures by the language set forth below.<br><br>Section V.B.11 of the Solicitation Procedures states as follows: "The Debtors are authorized to enter into stipulations or other agreements with the holder of any Claim agreeing to the amount of a Claim for voting |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | purposes, and will provide notice and an opportunity for a hearing on any such stipulation." [D.I. 6215, Revised Solicitation Procedures Ex. 1, § V.B.11]. |
| | **Tort Claimants' Committee [D.I. 3526]** | Section V.D.8 of the Solicitation Procedures should require the Debtors to obtain the consent of the TCC or provide notice and opportunity for a hearing prior to authorizing the withdrawal or modification of a ballot related to an abuse survivor after the voting deadline. [D.I. 3526 at 61, ¶ 134]. | The Debtors believe this Objection is resolved in the revised Solicitation Procedures by the language set forth below.<br><br>Section V.D.8 of the Solicitation Procedures states as follows: "After the Voting Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors upon notice to parties in interest. Any such withdrawal or modification shall be detailed in the Voting Report filed by the Solicitation Agent." [D.I. 6215, Revised Solicitation Procedures Ex. 1, § V.D.8]. |
| | **Tort Claimants' Committee [D.I. 3526]** | Section V.D.13 should require the Debtors to obtain the consent of the TCC or provide notice and opportunity for a hearing prior to waiving any defects with respect to a Ballot submitted an abuse survivor. [D.I. 3526 at 62, ¶ 135]. | The Debtors believe this Objection is resolved in the revised Solicitation Procedures by the language set forth below.<br><br>Section V.D.13 of the Solicitation Procedures states as follows: "Subject to any contrary order of the Bankruptcy Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot, upon notice to parties in interest. Any such waiver shall be detailed in the Voting Report filed by the Solicitation Agent." [D.I. 6215, Revised Solicitation Procedures Ex. 1, § V.D.13]. |
| | **Tort Claimants' Committee [D.I. 3526]** | Section V.D.16 of the Solicitation Procedures provides that if no votes are received in a class under the Plan, then that class will be deemed to have accepted the Plan, which is contrary to section 1126 of the Bankruptcy Code. [D.I. 3526 at 62, ¶ 136]. | The Debtors believe this Objection is resolved by the language in the revised Solicitation Procedures set forth below, which also resolves the U.S. Trustee's similar Objection.<br><br>The revised Solicitation Procedures provide that class acceptance will be a Plan confirmation issue, if necessary: "Subject to entry of the Confirmation Order providing for such relief, if no Ballot is submitted in a Class, then such Class shall be deemed to have voted to accept the Plan." [D.I. 6215, Revised Solicitation Procedures Ex. 1, § V.D.16]. |
| | **U.S. Trustee [D.I. 3581]** | The Solicitation Procedures provide that if there are no votes cast in a voting class, the class will be deemed to have accepted the Plan. This is contrary to section 1126(c) of the Bankruptcy Code. [D.I. 3581 at 17, ¶ 39]. | See response directly above. |
| | **Tort Claimants' Committee [D.I. 3526]** | Section V.D.20(b) of the Solicitation Procedures should require the Debtors to obtain the consent of the TCC prior to granting an extension of time for any abuse survivor to submit a Ballot. [D.I. 3526 at 62, ¶ 137]. | The Debtors believe this Objection is resolved in the revised Solicitation Procedures by the language set forth below.<br><br>Section V.D.20(b) of the Solicitation Procedures states as follows: "any Ballot received after the Voting Deadline [may not be counted in determining the acceptance or rejection of the Plan] unless the Debtors have granted an extension in writing (including e-mail) with respect to such |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | Ballot. Any such extension shall be detailed in the Voting Report filed by the Solicitation Agent." [D.I. 6215, Revised Solicitation Procedures Ex. 1, § V.D.20(b)]. |
| | **U.S. Trustee [D.I. 3581]** | If no directive is received, the default should be that the claimant vote for his or her Claim, but not that attorney will vote on behalf of the survivors. [D.I. 3581 at 16, ¶ 36]. | The Debtors believe this Objection is resolved.<br><br>The Debtors removed this default provision from Section IV.A of the proposed Solicitation Procedures [D.I. 2726, Ex. 1] filed on April 28, 2021. If an attorney has not affirmatively elected the Master Ballot method in the directive or did not return the directive, such attorney's abuse survivor clients Plan votes will be directly and individually solicited under the Solicitation Procedures. |
| | **U.S. Trustee [D.I. 3581]** | The Disclosure Statement should confirm that the Debtors will not be objecting to claims after the Solicitation Date and prior to the Voting Deadline, because they might be unaware of the Rule 3018 procedures and deadlines that require additional steps in order for their votes to be "re-counted." [D.I. 3581 at 16, ¶ 37]. | The Debtors believe this Objection is resolved through the revised language in the Solicitation Procedures that the Debtors previously agreed to with the U.S. Trustee:<br><br>If a Claim in a Voting Class is subject to an objection that is filed with the Court after the Solicitation Date, the applicable Claim shall be deemed temporarily allowed solely for voting purposes to the extent otherwise allowed for voting purposes in accordance with these Solicitation Procedures, without further action by the Debtors or the holder of such Claim and without further order of the Bankruptcy Court, unless the Debtors and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise. [D.I. 6215, Revised Solicitation Procedures Ex. 1, § III.C.3]. |
| **63) Solicitation Procedures – Directive** | **Tort Claimants' Committee [D.I. 3526]** | The Debtors' procedures involve an attorney solicitation directive to the survivors' counsel to determine each counsel's preference for master ballot or direct solicitation of their abuse survivor clients. But survivors, not their counsel, should make the decision on the type of solicitation. The indication on a survivor's POC of whether the Debtors should contact a survivor directly or their counsel about the claim should also take precedence. [D.I. 3526 at 59]. | The Debtors dispute this Objection and assert that they are already appropriately accounting for the preferences of survivors as listed on their proofs of claim.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| **64) Solicitation Procedures – Ballot** | **Tort Claimants' Committee [D.I. 3526]** | The ballot should identify the Local Council that an abuse survivor is being asked to release by voting to accept the plan, and for the over 30,000 claims where a local council has not been identified, the Debtors should research this prior to solicitation. [D.I. 3526 at 60, ¶ 131]. | The Debtors dispute this Objection.<br><br>This information is not relevant to the solicitation process, nor is it feasible to obtain.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| **65) Solicitation Procedures – Claims Value** | **Century Indemnity Company [D.I.** | The Solicitation Procedures improperly value abuse claims at $1.00. This is improper or should be modified for a variety of reasons: | The Debtors dispute these Objections. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| for Voting Purposes | 3857, 5214]; Plaintiff Law Firms (Supplemental DS Objections) [D.I. 5955 *et al.*]; Pro Se Claimant 242 [D.I. 6027]; Zalkin Plaintiffs [D.I. 6031]; Certain Insurers [D.I. 6052]; Certain Excess Insurers [D.I. 6056][16] | • Century and Certain Excess Insurers assert that the Solicitation Procedures improperly value all Abuse Claims at $1.00 for voting purposes, despite evidence that claims may be deficient or illegitimate, in violation of section 1126(c) of the Bankruptcy Code (D.I. 3857 at 25–26; D.I. 5214 at 7–8; D.I. 6056 ¶ 6);<br><br>• Plaintiff Law Firms, Pro Se Claimant 242, and Zalkin Plaintiffs assert the Solicitation Procedures ignore the requirement of section 1126(c) of the Bankruptcy Code because the Debtors cannot assess the degree of actual creditor support from claimants with enforceable claims through a $1.00 voting mechanism (D.I. 5955 *et al.*, ¶¶ 6–9; D.I. 6027; D.I. 6031, ¶¶ 9–16);<br><br>• Certain Insurers assert that the procedures should account for state law rights so that the Plan is not confirmed over the votes of the in-statute claimants that are more likely to have a legitimate economic stake in the outcome of the Chapter 11 Cases (D.I. 6052, ¶¶ 49–52); and<br><br>Plaintiff Law Firms and Zalkin Plaintiffs assert that time-barred abuse claims should be segregated and weighted according to their TDP discount values/Mitigating Scaling Factors on Schedule 1 of the TDP to properly account for varying state law/statute of limitation rights of abuse claimants (D.I. 5955 *et al.*, ¶ ¶¶ 6–9; D.I. 6031, ¶¶ 9–16). | Valuing and temporarily allowing a large body of unliquidated claims at $1.00 for voting purposes is a standard procedure and ensures that a large body of claims can still participate in the voting process. Bankruptcy Rule 3018(a) authorizes the Bankruptcy Court to do this.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| | Plaintiff Law Firms (Supplemental Objections) [D.I. 5955 *et al.*] | Plaintiff Law Firms assert that the vote tabulation procedures are improper because:<br><br>• the vote tabulation procedures should distinguish among claimants based on which Local Councils will be co-liable with the Debtors because some Local Councils are financially strong while others are financially weak (D.I. 5955 *et al.*, ¶ 5);<br><br>• the Debtors must separately tabulate the votes of creditors that may be affected by any Chartered Organizations designated as Protected Parties under the Plan before the Channeling Injunction may issue (D.I. 5955 et al., ¶ 5); and | The Debtors dispute this Objection.<br><br>The voting tabulation procedures are fair and conform to the Plan structure, and this is a disguised Plan and classification-related objection. A more detailed response is set forth in the Debtors' Omnibus Reply. |

---

[16]   Liberty joins in this Objection [D.I. 6057].

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | the Solicitation Procedures do not provide a mechanism to determine whether there is sufficient support for the Plan's proposed release of Local Councils and Chartered Organizations because abuse survivors who did not name a Local Council or Chartered Organization in their proofs of claim are allowed to vote (D.I. 5955, ¶¶ 10–12). | |
| 66) Solicitation Procedures – Solicitation Package | Tort Claimants' Committee [D.I. 3526] | The TCC should be permitted to send a cover letter to abuse survivors as part of the solicitation materials. [D.I. 3526 at 61, ¶ 132]. | The Debtors believe this Objection is resolved.<br><br>The Debtors have revised the discussion of the Solicitation Package in the Solicitation Procedures Order and related documents such that the following will be included as part of the Solicitation Package: "a letter from any official committee or the Coalition, substantially in the form filed in these Chapter 11 Cases before the Disclosure Statement Hearing (and as may be modified, amended, or supplemented from time to time)." [D.I. 6215, Revised Solicitation Procedures Order ¶ 7(f)]. |
| | U.S. Trustee [D.I. 3581] | The Debtors should not be permitted to send only a notice containing directions to access the solicitation materials online, the Debtors should mail the materials with flash drive containing complete electronic copies. [D.I. 3581 at 17, ¶ 38]. | The Debtors dispute this Objection.<br><br>The Debtors propose to mail the cover letter, the Confirmation Hearing Notice, and the Ballot to the voting classes, and are proposing to provide website links to the Plan, the Disclosure Statement, and the Solicitation Procedures Order and exhibits. It is cost-prohibitive and inefficient to mail over 1,000 pages to each creditor. It would also be costly to mail a USB drive of each solicitation package. Additionally, the TCC, the Coalition, and individual abuse survivors did not object to this method. Other similar procedures have been approved by other bankruptcy courts.<br><br>This is addressed in more detail in Section III of the Debtors' Omnibus Reply. |
| 67) Solicitation Procedures – Claims Pool/ Review | Century Indemnity Company [D.I. 3857] | The claims pool must be vetted and invalid abuse claims removed before solicitation can commence. Without discovery such as that requested under Century's pending Rule 2004 motions, the solicitation is vulnerable to manipulation. [D.I. 3857 at 11-13]. The Court should require claimants to be individually solicited absent evidence of a case-specific grant of authority to the attorney to vote on the client's behalf, and should require an effective retention agreement containing a joint retention waiver. [D.I. 6065 at 42]. | The Debtors dispute this Objection. This Objection is iterative of Century's Rule 2004 and 2019 motions that have already been briefed/argued and, the Debtors believe, addressed at the hearing held on August 30, 2021. There, the Court ruled that it was "denying . . . at this time" the Rule 2004 motion on discovery of individual claimants. *See* Aug. 30, 2021 Hr'g Tr. at 46:8-9.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| | Pro Se Claimant 242 [D.I. 6027] | Joins Century's position that any voting schedule must provide sufficient time for parties to object to facially invalid claims based on lack of information, and the court should rule whether time-barred claims are entitled to vote. [D.I. 6027 at 10]. | The Debtors dispute this Objection. See response directly above and the more detailed response set forth in the Debtors' Omnibus Reply. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | **Century Indemnity Company [D.I. 3857]** | With respect to the claims pool and invalid abuse claims, the solicitation procedures and ballots lack procedural safeguards, and there is no showing required that counsel is authorized to cast votes or that counsel must comply with Bankruptcy Rule 2019. Parties are excluded from the process of evaluating a claimant's assertion that he or she has a valid claim and is therefore entitled to vote. Filing a proof of claim initiates a process under section 502(a) where any party in interest may object to a proof of claim so the court can determine whether they should be entitled to vote and in what amount. (citing 502(a), 3007, 3018)). The procedures cannot be reconciled with Bankruptcy Rule 3018, which confers on the court the authority to determine which claims are valid for voting purposes. [D.I. 3857 at 14-16]. | The Debtors dispute this Objection.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| | **Century Indemnity Company [D.I. 3857]** | The Solicitation Procedures improperly disenfranchise holders of abuse claims and give undue influence to Coalition law firms through the use of Master Ballots, which will taint the voting process because: (1) the Debtors will reach out to law firms, rather than individual abuse claimants, and such claimants will not receive copies of the Plan or the Disclosure Statement, and (2) the volume of abuse claims invites abuse because it is implausible that law firms will have sufficient time to contact their clients and record their votes on the Master Ballot. [D.I. 3857 at 18-19]. | The Debtors dispute this Objection.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| | **Century Indemnity Company [D.I. 3857]** | The Solicitation Procedures give undue influence to Coalition law firms, and the Coalition firms have conflicts of interest and lack authority to use Master Ballots. [D.I. 3857 at 21-25]. | The Debtors dispute this Objection.<br><br>The conflict of interest issue has already been addressed by the Coalition in a separate brief, and the Debtors do not repeat these arguments here. *See* Limited Supplemental Joinder of the Coalition, D.I. 5745.<br><br>A more detailed response is set forth in Section III of the Debtors' Omnibus Reply. |
| | **Century Indemnity Company [D.I. 6065]** | Debtors failed to distinguish the authority cited in Century's RSA objection [D.I. 5707] and offer no case in support of the proposition that it is ever proper to promise to pay a client's lawyer as part of an agreement with that lawyer that he or she recommend something to their client. The fee provisions of the RSA taken together with the Master Ballot provisions of the Solicitation Procedures will taint the vote, render it voidable and invite reversal of the Amended Plan if it is confirmed. [D.I. 6065 at 37]. | The Debtors dispute this Objection and assert that this Objection is moot at least in part.<br><br>Any objection to the potential payment of the Coalition's fees is properly made as an objection to confirmation. The appropriateness of the master ballot provision is addressed above and in the Debtors' Omnibus Reply. |
| | **Century Indemnity Company** | The Solicitation Procedures improperly disenfranchise holders of abuse claims and give undue influence to Coalition law firms because the self-certification procedure in the Master Ballot is | The Debtors dispute this Objection. |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | **[D.I. 3857]** | unlawful and will enable manipulation of voting. This vitiates Bankruptcy Rule 2019, and the Bankruptcy Court should require that law firms acting on behalf of multiple claimants file evidence of their authority to vote for the client on this specific Plan. [D.I. 3857 at 19-21]. | The Debtors are entitled to rely on the certifications of counsel representing holders of Direct Abuse Claims that they are authorized to vote on their behalf and record their votes. Bankruptcy Rule 9010(c) expressly does not require a power of attorney to accompany an attorney's vote on a Plan, and the in the Solicitation Procedures the Debtors specifically reserve the right to request evidence from any law firm submitting a Master Ballot of such firm's authority to act. This is sufficient for voting purposes. The Debtors and parties in interest are able to ascertain which law firms represent various abuse survivors through the claim-filing process.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | **Century Indemnity Company [D.I. 3857]** | With respect to the claims pool and invalid abuse claims, the proposed Expedited Distribution payments in exchange for votes. [D.I. 3857 at 16-17]. | The Debtors dispute this Objection.<br><br>Claimants are not required to vote to accept the Plan in order to receive the Expedited Distribution. The Expedited Distribution is governed by the Trust Distribution Procedures, and the Settlement Trustee will be responsible for claims review in accordance with the Trust Distribution Procedures.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | **Century [D.I. 5214]** | Proofs of claim need to be vetted or they are not entitled to prima facie validity: the vast majority of the mass-signed Proofs of Claims Century reviewed are facially defective: they are missing critical information, are duplicates, or are barred by the statute of limitations. Many of these claims lack other basic information. [D.I. 5214 at 4-5]. | The Debtors dispute this Objection.<br><br>A more detailed response is set forth above and in the Debtors' Omnibus Reply. |
| | **Century [D.I. 6065]** | The Court cannot authorize solicitation until a full investigation is undertaken into the process by which the proofs of claims were submitted in these cases. The Master Ballot Solicitation Method threatens greater harm now that the expedited payment has increased to $3,500 and the plaintiff lawyers will be signing the Master Ballots. The RSA and Solicitation Procedures were designed in a manner that taints the vote. [D.I. 6065 at 4-5]. | The Debtors dispute this Objection and it has been addressed in the responses above.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |
| | **Century [D.I. 6065]** | Since the disclosure of the RSA and the recent disclosures by Mr. Kosnoff, the Master Ballot Solicitation Method and its attendant problems have only gotten worse and threaten to taint the entire solicitation and voting process. Increasing the Expedited Distribution from $1,500 to $3,500 exacerbates the moral hazards that have infected these cases. [D.I. 6065 at 35-37]. | The Debtors dispute this Objection and it has been addressed in the responses above.<br><br>As set forth in the Debtors' Omnibus Reply, the Master Ballot procedures are appropriately designed and provide for various certifications to be provided by counsel for claimants and other safeguards. The Debtors will |

| Argument No. & Description | Objecting Parties | Summary of Argument | Debtors' Response |
|---|---|---|---|
| | | | appropriately review any issues with respect to the Master Ballot and voting procedures.<br><br>More detailed responses on these various issues are set forth in the Debtors' Omnibus Reply. |
| **68) Solicitation Procedures – Tabulation of Votes** | **Lujan & Wolff LLP Claimants (Initial Objection) [D.I. 3231]** | It is unclear how many votes to accept the BSA Toggle Plan are required in order for it to be confirmed, as the Disclosure Statement instead alludes to the Toggle Plan being a "default" Plan that may be confirmed if there are insufficient votes to accept the Global Resolution Plan. [D.I. 3231, ¶ 24]. | This Objection is moot because the Debtors are not moving forward with the BSA Toggle Plan. |
| **69) Solicitation Procedures – Sufficiency of Bar Date Notice** | *Pro Se* **Claimant 242 [D.I. 6027]** | The Debtors should re-notice the Bar Date Notice by publication in *Prison Legal News* and by other means reasonably calculated to provide notice to individuals who are incarcerated and subject to COVID-19 protocols. Such individuals should have an opportunity to file a claim and vote on the Plan. [D.I. 6027 at 9]. | The Debtors submit that the bar date noticing was sufficient to provide notice to potential known and unknown creditors. The Debtors engaged in extensive noticing of the bar date via a campaign designed to reach unknown and known potential creditors. The Supplemental Notice Plan reached an estimated 95.8% of men 50 years of age and older through a variety of media sources. *See* D.I. 556, 557, 1758. For example, the Debtors' notice and claims agent contacted approximately 2,243 U.S. correctional facility contacts regarding the bar date. |
| | | **Miscellaneous Objections** | |
| **70) Miscellaneous** | *Pro Se* **Claimant 242 [D.I. 6027]** | As part of the bar date noticing campaign, 56,926 contacts at Chartered Organization were provided with a copy of the Abuse Claims Publications Notice and asked to share its contents with their organizations' members. However, it is not clear that all or even any Chartered Organizations were provided notice of their own rights as Indirect Abuse Claimants under the then-current draft Plan.<br><br>Claimant suggests that Chartered Organizations that did not file an Indirect Abuse Claim only because they did not receive actual notice of the case prior to the Bar Date should be allowed to file a claim and participate in voting. [D.I. 6027 at 9]. | The Debtors dispute the basis for this Objection.<br><br>Chartered Organizations were sent notice of the bar date via mail. *See* Affidavit of Service, D.I. 1112. The Debtors submit that the Chartered Organizations received actual notice of the bar date.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply |
| | **Certain Insurers [D.I. 6052]** | The Confirmation Schedule is unreasonably compressed, given that the Plan is patently insurance prejudicial and contemplates binding trust distribution procedures. The schedule must provide adequate time for the volume of discovery required and allow parties in interest to stress test the Plan. (Obj. ¶¶ 57-59). | The Debtors dispute this Objection.<br><br>A more detailed response is set forth in the Debtors' Omnibus Reply. |