**<u>Exhibit A</u>**

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**

TO:  All Holders of General Unsecured Claims, Non-Abuse Litigation Claims, and Convenience Claims against Boy Scouts of America and Delaware BSA, LLC (the "**Debtors**")

FROM:  The Official Committee of Unsecured Creditors of Boy Scouts of America and Delaware BSA, LLC (the "**Creditors' Committee**")[1]

---

On [●], 2021, the Bankruptcy Court for the District of Delaware approved the Disclosure Statement for the Debtors' [●] Amended Chapter 11 Plan (the "**Disclosure Statement**" and "**Plan**," respectively, Dkt. Nos. [●], [●])[2] in the Debtors' bankruptcy cases. You are receiving this letter because you are an unsecured creditor of Boy Scouts of America or Delaware BSA, LLC and entitled to vote on the Plan. The Disclosure Statement explains the distributions that will be made to creditors under the Plan.

The Creditors' Committee represents the interests of all unsecured creditors other than holders of Abuse Claims. The Creditors' Committee supports the confirmation and consummation of the Plan.

Accordingly, the Creditors' Committee recommends that you vote to *ACCEPT* the Plan by marking the official Ballot that was enclosed with the Disclosure Statement as follows:

☑  **ACCEPT (vote FOR) the Plan**

and send in your Ballot in the manner provided in the Solicitation Package and the instructions accompanying your Ballot.

**Your Ballot must be received by [[●], 2021 at 4:00 p.m. (Prevailing Eastern Time) to be counted**.

Please read the Disclosure Statement and the materials in your Solicitation Package carefully. These materials contain instructions for completing and submitting your Ballot, and they describe the Plan and its terms.

The following summarizes the distributions that will be made to general unsecured creditors under the Plan and the Creditors' Committee's investigation of certain matters that are settled under the Plan. It is qualified in its entirety by reference to the Disclosure Statement. Each capitalized term in this letter is defined in the Disclosure Statement or the Plan.

---

[1] The current members of the Creditors' Committee are: (i) Girl Scouts of the United States of America, (ii) Pension Benefit Guaranty Corporation, (iii) Roger A. Ohmstede, (iv) Pearson Education, Inc. and (v) Lion Brothers Company, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan or the Disclosure Statement, as applicable.

- 1 -

**I.** **The Plan**

As described in detail in the Disclosure Statement, the Plan embodies a settlement between many of the major creditor constituencies in these chapter 11 cases, which was achieved after extensive arm's-length negotiations among (i) the Debtors, (ii) JPMorgan Chase Bank, N.A. ("**JPM**"), (iii) the Creditors' Committee, (iv) the Coalition of Abused Scouts for Justice, (v) Hartford, (vi) The Church of Jesus Christ of Latter-day Saints, (vii) certain state court counsel to holders of Abuse Claims, (viii) the Future Claimants' Representative, and (ix) the Ad Hoc Committee of Local Councils. The Creditors' Committee took an active role in certain of these negotiations. The settlement provides significant value to the holders of General Unsecured Claims and Non-Abuse Litigation Claims (including creditors who opt to receive Convenience Claim treatment), provides the Debtors with more favorable terms under the restated debt facilities provided by JPM under the Restated Debt and Security Documents, and provides for procedures to compensate holders of Abuse Claims asserted against the Debtors in a manner that will be supported by a substantial majority of such claimants. The settlement also ensures that the Pension Plan shall continue and will not be impacted by the bankruptcy filing or the Plan.

The Creditors' Committee's goal was to maximize value for unsecured creditors, and the Creditors' Committee focused on, among other things: (a) ensuring the best possible outcome for holders of claims arising from the Boy Scouts of America Retirement Benefit Restoration Plan ("**Restoration Plan**") and the Boy Scouts of America 457(b) Plan (the "**Deferred Compensation Plan**"); (b) providing holders of Non-Abuse Litigation Claims with the right to receive a full recovery from insurance proceeds; (c) providing unsecured creditors with the ability to opt into a convenience class and receive up to $50,000; (d) ensuring that the Boy Scouts will continue to operate, providing an ongoing benefit to trade creditors; and (e) providing for holders of General Unsecured Claims to receive significant value in exchange for releasing potential claims against JPM.

The Plan provides for significant recoveries to unsecured creditors that the Creditors' Committee believes exceed recoveries unsecured creditors would receive in a liquidation or under any available alternative plan of reorganization. Accordingly, the Creditors' Committee believes that confirmation of the Plan is in the best interests of all unsecured creditors. Moreover, the Creditors' Committee believes that the settlement of the various issues embodied in the Plan constitutes a reasonable compromise of complex disputes, and will avoid the expense and delay that would have been incurred had certain of the disputed issues been litigated.

**II.** **Unsecured Creditors' Plan Consideration**

The Plan provides for three separate classes of unsecured claims that are unrelated to Abuse Claims: (i) General Unsecured Claims; (ii) Non-Abuse Litigation Claims; and (iii) Convenience Claims. As discussed herein, as part of the integrated settlement, the Plan also settles issues relating to the allocation and distribution of value among holders of secured claims, unsecured claims, and abuse claims, thereby avoiding complex, protracted, and costly litigation of these issues that would have otherwise reduced the available distributions for all creditors. Based on this settled allocation of value, estimated claims in each creditor class, and the valuation of the Debtors, the Disclosure Statement includes estimates of projected recoveries on each class

members' allowed claims. The distributions provided under the Plan will be in full and final satisfaction, release, discharge, and settlement of such claims against the Debtors. More specifically, the Disclosure Statement projects the following estimated percentage recoveries for each class of unsecured claims:

| Class | Estimated Recovery |
|---|---|
| Class 5 – Convenience Claims | 100% |
| Class 6 – General Unsecured Claims | 75-95% |
| Class 7 – Non-Abuse Litigation Claims | 100% |

Article VI.E of the Disclosure Statement contains a detailed description of the treatment of each class of claims. Please reference the Disclosure Statement for a more detailed summary of the mechanics for distributions to unsecured creditors under the Plan, the facts and assumptions behind these predictions and projections, and for information relating to the Debtors and these Chapter 11 Cases. Each estimate and projection in this letter is taken from the Disclosure Statement and qualified by all of the information in the Disclosure Statement.

### A.  Class 5 Convenience Claims

Holders of General Unsecured Claims or Non-Abuse Litigation Claims (after first seeking to recover from insurance, and having exhausted all remedies with respect to such applicable insurance policy) that have an Allowed Claim of $50,000 or less may elect to have their claims treated as Convenience Claims, which are paid by Reorganized BSA in full, using Cash on hand, on the Effective Date of the Amended Plan or, if such Claim becomes Allowed after the Effective Date, as soon as reasonably practicable after Allowance. Any holder of a General Unsecured Claim or Non-Abuse Litigation Claim that is Allowed in an amount greater than $50,000 may elect to have its claim treated as a Convenience Claim and receive payment of $50,000 in Cash in full and final satisfaction of such Claim; **please note that this election is irrevocable and must be made on a timely and validly submitted Ballot**.

### B.  Class 6 General Unsecured Claims

Holders of Allowed General Unsecured Claims (including holders of Claims under the Restoration Plan, the Deferred Compensation Plan, holders of trade Claims, and holders of Rejection Damages Claims) will receive, on account of such Claims, their Pro Rata Share of the Core Value Cash Pool, which shall be funded by reorganized BSA in four semi-annual installments of $6,250,000 (for a total of $25,000,000), beginning 180 days after the Effective Date and concluding two years after the Effective Date. Any Cash remaining in the Core Value Cash Pool after all Allowed General Unsecured Claims have been satisfied in full (including interest), shall be first used to fund any shortfall in payments from the BSA's available insurance and co-liable non-Debtors on account of any Non-Abuse Litigation Claims, and then be transferred to and vest in Reorganized BSA.

### C.     Class 7 Non-Abuse Litigation Claims

Holders of Non-Abuse Litigation Claims will, upon the liquidation of such Non-Abuse Litigation Claims following the Effective Date, be satisfied solely from the BSA's available insurance and from any non-Debtor party or parties that may be determined to be co-liable with the Debtors on account of such Non-Abuse Litigation Claims.  No holder of an allowed Non-Abuse Litigation Claim shall be entitled to recover from the Core Value Cash Pool on account of such Claim, unless and until all allowed General Unsecured Claims have been paid in full.  Solely in the event any Non-Abuse Litigation Claim is not covered by applicable BSA insurance or there is a shortfall in BSA's applicable insurance for such Non-Abuse Litigation Claim, following the exhaustion of remedies with respect to applicable insurance and any co-liable non-Debtor, the holder of an Allowed Non-Abuse Litigation Claim may elect to have such Claim treated as a Convenience Claim and receive Cash in an amount equal to the lesser of (a) the amount of the unsatisfied portion of its Allowed Non-Abuse Litigation Claim and (b) $50,000.

The abuse Settlement Trust will have the right to settle certain of the insurance policies that cover Non-Abuse Litigation Claims.  To the extent that the abuse Settlement Trust has settled the applicable insurance policy with respect to a Non-Abuse Litigation Claim, such claimant will be able to recover on account of its claim from the abuse Settlement Trust.  The abuse Settlement Trust will have reasonable consent rights over certain settlements of Non-Abuse Litigation Claims.

To the extent a Non-Abuse Litigation Claim is asserted against a Local Council as well as the Debtors, the holder of the Non-Abuse Litigation Claim must release its claim against the Local Council in order to receive payment from the abuse Settlement Trust.

### III.     Committee Investigations

After the Debtors filed for bankruptcy, the Creditors' Committee launched a comprehensive investigation into a number of prepetition transactions consummated prior to the commencement of the Chapter 11 Cases, including, but not limited to, the following:

- The incurrence of substantial secured obligations;

- The grant of additional security interests on the eve of bankruptcy (and in the face of a wave of substantial liability stemming from sexual abuse claims); and

- The creation, capitalization and financing of non-debtor Arrow WV, Inc. ("**Arrow**") along with various related transfers and transactions; and

While the Creditors' Committee believed it could develop significant causes of actions related to these issues, the Committee also recognized the risks inherent in any litigation.  Accordingly, the Creditors' Committee engaged in extensive arm's-length negotiations that resulted in significant recoveries for general unsecured creditors and avoided the uncertainties and expense of further litigation. The Creditors' Committee believes that confirmation of the Plan is in the best interests of all unsecured creditors.

Moreover, the Committee believes that the settlement constitutes a reasonable compromise of complex disputes, will avoid the significant expense and delay that would have been incurred

had any of the disputed issues been litigated, and will allow the Debtors to exit bankruptcy efficiently and without the uncertainty attendant to litigation of these disputes.

### IV. Important Deadlines

The Disclosure Statement also contains a number of important *record dates* and *deadlines*, including (but not limited to) the following:

- **[●]** was the *record date for purposes of determining which claimants are entitled to vote to accept or reject the Plan*. You can only vote claims you held in a voting class as of **[●], 2021**.

- **[●], 2021], at 4:00 p.m. (Prevailing Eastern Time)** is the *deadline* for the Debtors' solicitation agent to receive Ballots from all creditors.

- **[●], at [●]:00 .m. (Prevailing Eastern Time)** is the proposed date for the *hearing on the confirmation* of the Plan.

Please review your Solicitation Package and the Disclosure Statement for other dates and deadlines that may be important to you.

### V. Conclusion

The Creditors' Committee recommends each holder of a claim receiving this letter vote to **ACCEPT** the Plan and return its Ballot indicating such acceptance in accordance with the voting instructions described in the Disclosure Statement and Ballot. Your vote is important and all unsecured creditors are encouraged to vote in favor of the Plan.

You should carefully read the Disclosure Statement and the Plan in their entirety and may wish to consult your own legal or financial advisors. This letter is not offered as legal advice as to any specific claim or treatment under the Plan. It is for informational purposes only.

This letter does not purport to reflect the views of the Bankruptcy Court and does not constitute findings of facts or conclusions of law endorsed by the Bankruptcy Court; nor does it necessarily reflect the views of any individual Creditors' Committee member, which reserve any and all of their rights.

If you have questions or require additional information, please visit boyscoutsucc.com or contact the Creditors' Committee at BSAUCCinquiry@kramerlevin.com.

Very truly yours,

The Official Committee of Unsecured Creditors of Boy Scouts of America and Delaware BSA, LLC

**THE CREDITORS' COMMITTEE'S RECOMMENDATION THAT UNSECURED CREDITORS VOTE TO ACCEPT THE PLAN SHOULD NOT SERVE AS A SUBSTITUTE FOR EACH UNSECURED CREDITOR'S OWN CAREFUL READING AND CONSIDERATION OF THE DISCLOSURE STATEMENT, PLAN, AND RELATED DOCUMENTS DISSEMINATED THEREWITH, AND CONSULTATION WITH COUNSEL OR OTHER PROFESSIONAL ADVISORS.**

**THIS LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE. THE CREDITORS' COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE DEBTORS' BANKRUPTCY CASES.**

**THE BANKRUPTCY COURT'S APPROVAL OF THIS SOLICITATION LETTER TO BE INCLUDED AS PART OF THE SOLICITATION PACKAGE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY THE CREDITORS' COMMITTEE OR BY ANY INDIVIDUAL MEMBER OF THE CREDITORS' COMMITTEE.**