## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |

## MOVING INSURERS' MOTION TO COMPEL DOCUMENTS
## WITHHELD BY ERIC GREEN AND RESOLUTIONS, LLC
## FOR THE DISCLOSURE STATEMENT HEARING

Stamoulis & Weinblatt LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: 212-326-2000

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company
of North America*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................ 2

    *While the Fifth Amended Plan names Mr. Green as the proposed plan trustee, the Disclosure Statement provides no details about him.* ........................................ 2

    *The Court did not approve Mr. Green as a mediator.* ........................................ 2

    *In his declaration, Mr. Green disclosed significant connections to James Patton and Young Conway.  It appears that other even more substantive conflicts exist with Brown Rudnick.* .............................................................................. 3

    *The June 9, 2020, Mediation Order appointed mediators prospectively and not retroactively.* ................................................................................ 3

    *Certain Insurers issued subpoenas to Mr. Green and his company, Resolutions, LLC* ......................................................................................... 4

    *The privilege log does not articulate a basis for asserting that the listed documents are mediation privileged.* .............................................. 5

BASIS FOR RELIEF ................................................................................. 6

ARGUMENT ........................................................................................... 7

    POINT I. THE DISCOVERY SOUGHT IS CRUCIAL IN ASSESSING THE ADEQUACY OF THE DISCLOSURES MADE IN THE DISCLOSURE STATEMENT CONCERNING POTENTIAL CONFLICTS OF INTEREST THAT MAY PROHIBIT MR. GREEN FROM SERVING AS SETTLEMENT TRUSTEE. ............................... 7

    POINT II. MR. GREEN'S BROAD WITHHOLDING OF DOCUMENTS MASKS HIS INVOLVEMENT WITH THE PARTIES IN THIS CASE ............. 8

        A.    UNDER LOCAL RULE 9019-5(a), THERE IS NO MEDIATION UNTIL A COURT AUTHORIZES. ..................... 8

        B.    THE COURT DID NOT APPROVE MR. GREEN AS A MEDIATOR. ............................................................ 9

    POINT III. MR. GREEN REFUSED TO PRODUCE WHOLE CATEGORIES OF DOCUMENTS GOING TO HIS CONFLICTS, INCLUDING THOSE EVIDENCING HIS CONNECTIONS TO THE FCR, YOUNG CONAWAY AND BROWN RUDNICK. ................... 13

CONCLUSION ....................................................................................... 14

FED. R. CIV. P. 37(A)(1) CERTIFICATION ......................................................... 14

The Moving Insurers listed in the signature blocks below move to compel the production of documents over which Eric Green and Resolutions, LLC have improperly claimed mediation privilege in connection with Disclosure Statement discovery.

## PRELIMINARY STATEMENT

While the Debtors have proposed Eric Green as the sole candidate to serve as plan trustee, they offer no information about his conflicts, deep ties to interested parties in this case or his involvement with this case. In light of that, Certain Insurers[2] served subpoenas on Mr. Green (and his company, Resolutions, LLC) seeking information about potential conflicts and his involvement with this case before this Court declined to appoint him a mediator because of his conflicts. While Mr. Green produced some documents, he claimed mediation privilege over essentially all those he generated or received prior to June 2020. Under Local Rule 9019-5(a), no mediation privilege can apply to anything Mr. Green did before the Court entered its June 9, 2020 mediation order ("Mediation Order"). Moreover, because the Court never approved Mr. Green to serve as a mediator in this bankruptcy, he cannot even theoretically assert any mediation privilege—at any time.

The Court should thus order Mr. Green to produce all responsive documents over which he asserts mediation privilege.

---

[2]    Certain Insurers are listed in the signature block to the subpoenas for document requests served on Eric Green and Resolutions, LLC. *See Declaration of Salvatore Cocchiaro in Support of Moving Insurers' Motion to Compel* ("Cocchiaro Decl."), Exs. 1, 2, Certain Insurers' Subpoenas to Resolutions, LLC and Eric Green for Document Requests.

## STATEMENT OF FACTS

### *While the Fifth Amended Plan names Mr. Green as the proposed plan trustee, the Disclosure Statement provides <u>no</u> details about him.*

The Fifth Amended Plan names Mr. Green as the plan trustee, i.e. the "Settlement

Trustee."[3]  In totality, the disclosure made about him is as follows:

> There shall be one Settlement Trustee, who shall be appointed by the Bankruptcy
> Court in the Confirmation Order.  The initial Settlement Trustee shall be Eric D.
> Green . . . For purposes performing his or her duties and fulfilling his or her
> obligations under the Settlement Trust and the Plan, the Settlement Trustee shall
> be deemed to be, and the Confirmation Order shall provide that he or she is, a
> "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code.
> The Settlement Trustee shall be the "administrator" of the Settlement Trust as
> such term is used in Treas. Reg. Section 1.468B-2(k)(3).

Art. IV.E.  There is no disclosure of who Mr. Green is, or what connections he has to interested

parties in this case.

### *The Court did not approve Mr. Green as a mediator.*

The Court declined to appoint Mr. Green as a mediator due to the objective appearance of

a lack of impartiality:

> I am not going to appoint Mr. Green, as requested . . . [H]aving read the
> cases, it seems clear to me that his relationship with Mr. Patton would lead
> a reasonable person to be concerned about his mediating this case.

> This is an objective standard.  It has nothing to do with subjectively
> whether Mr. Green believes that he could mediate in a neutral fashion.
> What we're looking for is true neutrality and here there are multiple
> connections, past and current, in which Mr. Patton and Mr. Green have
> business and social connections.

> The business connection is a connection of trust with Mr. Green hiring
> Mr. Patton as an attorney repeatedly, because, obviously, he values
> Mr. Patton's opinion and he trusts his advice.  And they are also social

---

[3]    *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC*, Art. IV.E [D.I. 6212]

friends.  I was struck by the fact that that was disclosed and I think it means something more than acquaintance and it means something more than the friendship that many members of the Bar have with each other as being in the same circles.

And when you look at Section 455 of Title 28, the statute that deals with recusal of judges, which our Local Rule refers to, it says that judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned; in other words, a judge must recuse himself if there's a showing of an appearance of bias sufficient to permit the average citizen reasonably to question a judge's impartiality . . . I think the connections are too close here and I think former Judge Carey brings expertise that Mr. Green would have.[4]

In his declaration, Mr. Green disclosed significant connections to James Patton and Young Conway.[5]  It appears that other even more substantive conflicts exist with Brown Rudnick.[6]

### The June 9, 2020, Mediation Order appointed mediators prospectively and not retroactively.

The Court entered a Mediation Order on June 9, 2020, which provided that former Judge Kevin Carey, Paul Finn, and Timothy Gallagher would be appointed mediators.[7]  The Mediation Order stated that it is their role alone "to mediat[e] the comprehensive resolution of issues and claims in BSA's chapter 11 case through a chapter 11 plan."[8]  The Mediation Order contemplates on its face that the mediation process would start prospectively following entry of the Mediation Order.  Among other things, the Mediation Order provided as follows:

---

[4]    Cocchiaro Decl., Ex. 13, June 8, 2020 Hr'g Tr. at 55:23–57:4.

[5]    *See Declaration of Eric D. Green in Connection with Debtors' Motion for Entry of an Order (I) Appointing Mediators, (II) Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* ("Green Declaration"), App. 1 [D.I. 712].

[6]    Cocchiaro Decl., Ex. 14, Biography of David J. Molton.

[7]    *Order (I) Appointing Mediators, (II) Referring Certain Matters to Mediation, and (III) Granting Related Relief*  ("Mediation Order") ¶ 2 [D.I. 812].

[8]    *Id.*

- "At any time ***following entry of this Order***, one or more of the Parties may, individually or jointly, propose in writing that the Mediators address one or more particular Mediation Issues."[9]

- "Mediators ***shall consult*** with the Parties on the matters concerning the Mediation."[10]

- "The provisions of Local Rule 9019-5(d) pertaining to "Confidentiality of Mediation Proceedings" ***shall govern*** the Mediation . . . ***During the Mediation process***, the Mediators also may make applicable or direct the use of such other provisions of Local Rule 9019-5 as they deem necessary or appropriate."[11]

- "The Debtors ***are authorized*** to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion, including executing agreements with Judge Carey (Ret.), Mr. Gallagher, and Commonwealth Mediation on the terms set forth in the forms of agreement attached hereto."[12]

### Certain Insurers issued subpoenas to Mr. Green and his company, Resolutions, LLC

On August 3, 2021, Certain Insurers served a document subpoena on Eric Green's company, Resolutions, LLC about his dealings with regard to these Chapter 11 cases and relationships with interested parties.[13]  Mr. Green accepted service of a subpoena in his name on August 9, 2021.

Mr. Green and his company objected on August 16, and August 11, 2021, respectively, withholding documents on a broad assertion of mediation privilege, including:

- "Documents sufficient to show all other matters where You have retained James Patton or Young Conaway as Your counsel."[14]

---

[9]   *Id.* ¶ 4.

[10]   *Id.* ¶ 5.

[11]   *Id.* ¶ 7.

[12]   *Id.* ¶ 12.

[13]   Cocchiaro Decl., Exs. 1, 2, Certain Insurers' Subpoena to Resolutions, LLC for document requests & Certain Insurers' Subpoena to Eric Green for document requests.

[14]   *Id.* at Req. No. 10.

- "All Documents Concerning the actual or proposed terms for Your retention as . . . mediator."[15]

- "All Communications among You, on the one hand, and BSA and/or its counsel, James Patton, Scott Gilbert, Kami Quinn, Joe Rice, and/or any other lawyer associated with Gilbert LLP or James Patton."[16]

- "All Documents and Communications Concerning any estimation and forecasting of present and future liabilities for claims in connection with these Chapter 11 Cases and prepetition, and the valuation of insurance policies associated with such liability."[17]

- "All Documents and Communications reflecting the methodologies, metrics, and/or assumptions utilized in connection with any analysis Concerning the value of any present or future Direct Abuse Claims, including but not limited the values identified in the TDPs."[18]

- "All Documents relating to the value of assets that any Related Non-Debtor Entity, Local Council, Chartered Organization or other entity is contributing to the Settlement Trust."[19]

- "All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives."[20]

### *The privilege log does not articulate a basis for asserting that the listed documents are mediation privileged.*

On September 1, 2021, Mr. Green produced a privilege log that lists almost 500 entries, nearly all of which assert mediation privilege.[21]  Mr. Green asserted privilege over ***more than half*** of the responsive documents.[22]  Most of the documents withheld based on mediation privilege were generated before the Court authorized a mediation and entered the Mediation

---

[15]  *Id.* at Req. No. 14.

[16]  *Id.* at Req. No. 15.

[17]  *Id.* at Req. No. 18.

[18]  *Id.* at Req. No. 22.

[19]  *Id.* at Req. No. 24.

[20]  *Id.* at Req. No. 25.

[21]  Cocchiaro Decl, Ex. 11, Eric Green & Resolutions, LLC's Privilege Log.

[22]  *See id.*

Order.  And none of the descriptions provide sufficient detail to assess whether the assertion that they are mediation privileged is correct.  There is no indication that any of the documents or communications qualify for mediation privilege.

Mr. Green withheld emails that include counsel to the Moving Insurers that are plainly not subject to mediation privilege.  For example, the May 19, 20, 26, and 27, 2021 emails listed in the privilege log were shared with the Moving Insurers at the time and merely discuss the disclosures that this Court required of Mr. Green and other mediator candidates at the May 18, 2021 hearing.

### BASIS FOR RELIEF

The Federal Rules of Civil Procedure governing discovery apply to these bankruptcy proceedings.  *See* Fed. R. Bankr. P. 7026, 9014.  Discovery under the Federal Rules of Civil Procedure is broad.  Rule 26(b) states that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[23]  Civil Rule 37(a)(3)(B)(iv), made applicable under Bankruptcy Rule 7037, contemplates motions to compel. So long as the documents are both relevant and non-privileged, in accordance with Civil Rule 26(b), this Court should compel Mr. Green to produce them.

---

[23] Where a real and practical need for discovery is demonstrated, courts grant motions to compel. *See Pacitti v. Macy's*, 193 F.3d 766, 776–77 (3rd Cir. 1999) (holding that the district court erred by "limiting discovery" because "it is well recognized that the federal rules allow broad and liberal discovery"); *In re Bell Atl. Corp. Sec. Litig.*, 1993 WL 514408, at *3 (E.D. Pa. Dec. 13. 1993) ("[D]iscovery rules are to be accorded a broad and liberal treatment") (citing *Hickman v. Taylor*, 329 U.S. 495 (1947); *Roesberg v. Johns Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980) (holding that requests for discovery should be upheld where the information sought may be relevant to the subject matter of the action); 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2007 (2d ed. 1990) (Rule 26 "allow[s] broad discovery and this has been well recognized by the courts").

**ARGUMENT**

**POINT I.**

**THE DISCOVERY SOUGHT IS CRUCIAL IN ASSESSING THE ADEQUACY OF THE DISCLOSURES MADE IN THE DISCLOSURE STATEMENT CONCERNING POTENTIAL CONFLICTS OF INTEREST THAT MAY PROHIBIT MR. GREEN FROM SERVING AS SETTLEMENT TRUSTEE.**

The role the Plan contemplates for Mr. Green is one where he is to conduct an "evidentiary process . . . to determine Allowed Claim Amounts" and then make "determination of *every* Abuse claim." TDPs, Articles 1.A., 1.B. (emphasis added). Independence is required by general principles of trust law, under which a "trustee, owe[s] to the Trust's beneficiaries a duty to act impartially." *See NHB Advisors, Inc. v. Monroe Capital LLC*, 2013 WL 6906234 at *3 (Del. Ch. Dec. 27, 2013); *see* also Restatement (Third) of Trusts § 79(1) (2007) ("A trustee has a duty to administer the trust in a manner that is impartial with respect to the various beneficiaries of the trust.").

A trustee's duty of loyalty is equally applicable in the bankruptcy context. *See, e.g.*, Bogert's The Law of Trusts and Trustees § 543. And, "[a] trustee may find that without any action or wrongdoing, the trustee has an interest which conflicts with the interests of the trust beneficiaries." *Id.* As Justice Cardozo put it differently, the oft-stated standard of behavior requires "[n]ot honesty alone, but the punctilio of an honor the most sensitive." *See Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928).

Yet, the Fifth Amended Disclosure Statement does not offer ***any*** disclosures about the proposed trustee, including his relationships with plaintiffs and parties in this case.[24] The approximately 500 documents that Mr. Green has withheld on privilege grounds go directly to

---

[24]    *See* Art. X.A.12.

his dealings with parties involved in this case with whom he has relationships. The production

of these documents will facilitate the assessment of the adequacy of the disclosures made in the

Disclosure Statement concerning Mr. Green. The Plan Proponents went so far as to expressly

condition the Hartford and Church of Latter Day Saints settlements on staying silent about Mr.

Green's selection.[25]

Accordingly, while the Disclosure Statement provides parties-in-interest with the

opportunity to object to the proposed Settlement Trustee through their vote or otherwise, it fails

to inform such parties of the very grounds for doing so.

**POINT II.**
**MR. GREEN'S BROAD WITHHOLDING OF DOCUMENTS MASKS HIS**
**INVOLVEMENT WITH THE PARTIES IN THIS CASE**

**A.    UNDER LOCAL RULE 9019-5(a), THERE IS NO**
**MEDIATION UNTIL A COURT AUTHORIZES.**

Local Rule 9019-5(a) states that "[t]he Court ***may assign*** to mediation any dispute arising

in an adversary proceeding, contested matter or otherwise in a bankruptcy case."[26] The rule also

states that "Parties may also stipulate to mediation, ***subject to Court approval***."[27] The rule thus

contemplates that court-mandated mediation is prospective, *i.e.*, not starting until after the court

directs it to happen. The rule also contemplates that voluntary mediation cannot take place

outside the court's knowledge, *i.e.*, it must be court approved. In both cases—whether court-

mandated or voluntary—there can be no mediation until the court says so.

---

[25]   *See Sixth Mediators' Report*, Ex. A, Hartford Term Sheet, at 4–5 [D.I. 6210-1]; Ex. B, TCJC Term Sheet, at 8 [D.I. 6210-2].

[26]   Emphasis added.

[27]   Emphasis added.

Nor did the Debtor move to appoint Mr. Green as mediator *nunc pro tunc.* The proposed order submitted with the Debtors' motion sought only his prospective appointment as mediator.[28] The Debtors could not have sought otherwise: courts have refused to allow *nunc pro tunc* relief for mediators. *See In re Smith*, 524 B.R. 689, 701 (Bankr. S.D. Tex. 2015) (prohibiting use of *nunc pro tunc* relief with respect to employing mediators and requiring trustee or debtor to file the application to employ the mediator and obtain an order granting the application before mediation actually occurs).

Here, the Court did not enter a Mediation Order until June 9, 2020, which did not approve Mr. Green as a mediator.[29] Therefore, there was no mediation before this date.[30] Whatever Mr. Green did before June 9, 2020 was not mediation under Local Rule 9019-5(a).

### B. THE COURT DID NOT APPROVE MR. GREEN AS A MEDIATOR.

Apart from Local Rule 9019-5(a), Mr. Green was simply not authorized to act for the estate under Section 327. Mediators are bankruptcy professionals whose retention must be approved by a court under Section 327 and Rule 2014. *See In re Smith*, 524 B.R. 689, 693, 695 (Bankr. S.D. Tex. 2015) ("[T]his court concludes that mediators should be governed by the provisions of the Code and Rules regulating employment of professional persons."). Section 327(a) expressly states that trustees (and debtors-in-possession through Section 1107) "with the court's approval, may employ one or more attorneys . . . or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties under this title." *Id*. at 694; *see also* 11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights . . . and powers, and

---

[28]   *See* D.I. 640.

[29]   *See* Mediation Order.

[30]   *See*, *e.g.*, *id.* at 2.

shall perform all the functions and duties . . . of a trustee serving in a case under this chapter.").

Rule 2014 requires court approval for a "professional person" and requires any such individual to

submit disclosures to the court.  *Smith*, 524 B.R. at 694 ("In conjunction with § 327(a), Rule

2014(a) reiterates that a bankruptcy court must approve employment of professional persons.").

Mediators are "professionals in the ordinary sense of the word, as they are usually

attorneys with a highly specialized skill set." *Id.* at 695.  Because mediators are hired to settle

bankruptcy issues they "are by definition playing a central role in those disputes" and exercising

"substantial discretion over a very important and high-dollar issue central to the administration"

of the debtor's case. *Id.*  In *Smith*, the court noted that the trustee in that case intended to hold a

mediation "without any order from this Court approving [the individual] as the mediator or his

level of compensation . . . .  If the Trustee had gone forward with the mediation, he would have

been in violation of § 327(a) and Rule 2014(a)." *Id.* at 696.  Complying with the rules, this

Court ordered Mr. Green and other mediator candidates to provide Rule 2014 disclosures, which

Mr. Green submitted.[31]  The Court observed that "it is important for all parties to understand the

connections of any mediator or mediators who are selected, so that parties can assure themselves

that there is not a predisposed bias in the way a mediator may view issues."[32]

Because the Court did not approve Mr. Green as a mediator, nothing he did could be

subject to Local Rule 9019-5(d)'s protection for information disclosed "in the course of the

mediation."  Put another way, there is no time when the mediation privilege could apply to

anything that Mr. Green did in this bankruptcy.  Indeed, even if the mediation privilege ***could***

apply (which it does not), Mr. Green's counsel has admitted that "Mr. Green was ***not a party*** to

---

[31]    *See* Cocchiaro Decl., Ex. 12, May 18, 2020 Hr'g Tr. at 160:12–22; Green Declaration.

[32]    Cocchiaro Decl., Ex. 12, May 18, 2020 Hr'g Tr. at 158:12–159:3 ("[I]t is not unreasonable to request
        disclosures of connections as those words are used in Rule 2014, of any candidate").

an ***executed written mediation agreement*** in the BSA case."[33]  This is unsurprising, given that the Proposed Order that the Debtors submitted with their mediation motion includes only an ***un***signed copy of a potential mediation agreement.[34]

Moreover, Mr. Green's view that he is the mediator does not make it so, absent court approval.  *See In re RDM Sports Grp., Inc.*, 277 B.R. 415, 431 (Bankr. N.D. Ga. 2002) ("The mediation privilege should operate to protect only those communications made to the mediator, between the parties during the mediation, or in preparation for the mediation.  Therefore, [it] does not apply to shelter from disclosure documents prepared prior to the mediation . . ."); *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998), *aff'd*, 216 F.3d 1082 (9th Cir. 2000) (finding that mediation privilege applies to communications made in conjunction with formal mediation; "a contrary rule would permit a party to claim the privilege with respect to any settlement negotiations so long as the communications took place following an attempt to mediate the dispute.").  There is no such thing as a secret, not-court-authorized mediation to which the mediation privilege applies.

And Mr. Green should know better.  In a previous case where he served as the mediator, the court discussed the restrictions on the type of communications that would be privileged.  The court limited Mr. Green's interpretation of what documents would be protected by the mediation privilege.  "[C]ommunications purely between the parties and not involving the active participation of the mediator are not privileged."  *U.S. Fid. & Guar. Co. v. Dick Corp./Barton Malow*, 215 F.R.D. 503, 506 (W.D. Pa. 2003).  The court disagreed with Mr. Green's characterization of communications as mediation privileged unless there was a nexus between

---

[33]   *See* Cocchiaro Decl., Ex. 8, Emails Between Century's Counsel and Counsel for Eric Green and Resolutions, LLC dated August 18, 2021 through September 16, 2021 (emphasis added).

[34]   *See* D.I. 640-1, Ex. A.

documents or communications and the mediation process.  *Id*. at 507.  "[D]iscussions among parties outside the presence of the mediator and not occurring at a mediation proceeding are not privileged." *Id*. at 506.  Moreover, the court noted "Professor Green's declaration describing his understanding of the scope of the privilege and the assurances about confidentiality that he customarily imparts to the parties does not bind the court.  It is the statute, not Professor Green's practices or understandings, which governs the scope of the privilege."  *Id*. at 506.

Here, despite any claim to the contrary, Mr. Green was not serving as a mediator.  And none of the documents from March through early June 2020 can be tied to the mediation process because it did not begin until after that period.  Even if some documents could be tied to the mediation process, it is not clear that any of the documents warrant such protection.  In fact, the insurers were copied on some of the emails listed in the privilege log.[35]  For example, the May 19, 20, 26, and 27, 2021 emails that include Mr. Green merely discuss the disclosures that this Court required of Mr. Green and other mediator candidates at the May 18, 2021 hearing.  These documents do not relate to any ongoing mediation or proposed settlement, which is the basis for mediation privilege under both Local Rule 9019-5(d) and the Mediation Order.

Similar to the ruling in *U.S. Fidelity & Guaranty Co.*, the documents at issue in this case are not privileged.  In accordance with the Local Rules, only information disclosed "in the course of the mediation process" is privileged.  This does not include any of Mr. Green's documents between March and June 2020 that are responsive to the Moving Insurers' requests.

---

[35]   Cocchiaro Decl, Ex. 11, Eric Green & Resolutions, LLC's Privilege Log.

**POINT III.**

**MR. GREEN REFUSED TO PRODUCE WHOLE CATEGORIES OF
DOCUMENTS GOING TO HIS CONFLICTS, INCLUDING THOSE
EVIDENCING HIS CONNECTIONS TO THE FCR, YOUNG CONAWAY AND
BROWN RUDNICK.**

Mr. Green and Resolutions, LLC refused to produce *any* documents relating to their

connections to the FCR and FCR counsel in this case.  In response to requests for documents

regarding connections between Mr. Green and James Patton or Young Conaway, Mr. Green's

counsel raised every known objection, stating the following:

- "information about [amounts paid by Mr. Green to James Patton or Young Conaway] is irrelevant to this dispute and is confidential;"[36]

- a request for documents "sufficient to show all other matters on which James Patton has recommended Mr. Green's retention" is "vague and ambiguous;"[37]

- a request for documents "sufficient to show any personal social relationship with James Patton" is "vague and ambiguous" and "irrelevant to this proceeding."[38]

- "Mr. Green . . . is not aware of any documents or communications responsive" to various requests for documents related to the valuation of abuse claims, the TDPs, and the development or analysis that went into the valuation of abuse claims and the TDPs "other than copies of documents filed with the Bankruptcy Court that are publically (sic) available."[39]

Through counsel, Mr. Green referred Certain Insurers to his May 28, 2020 Declaration

[D.I. 712] in response to a request for documents sufficient to show all matters where he retained

or attempted to retain Mr. Patton or Young Conaway.[40]  Accordingly, Certain Insurers have

---

[36]   Cocchiaro Decl., Ex. 6, Eric Green's Resp. & Obj. to Certain Insurers' Subpoena for document requests, at Req. No. 11.

[37]   *Id.* at Req. No. 12.

[38]   *Id.* at Req. No. 13.

[39]   *Id.* at Req. Nos. 16–22.

[40]   *Id.* at Req. No. 10.

received *no* new information from the time that Mr. Green's mediation candidacy was rejected by this Court.

## CONCLUSION

For the foregoing reasons and pursuant to Fed. R. Civ. P. 34 and 37(a)(3)(B)(iv), Moving Insurers request that the Court grant their motion to compel and order Eric Green and Resolutions, LLC to produce the documents they withheld on the basis of a non-existent mediation privilege.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that the Moving Insurers have met and conferred with counsel to Mr. Green and Resolutions, LLC in good faith on these discovery issues, including a meet and confer call on August 17, 2021.  Additional emails exchanged between the parties further evidence Moving Insurers' attempts to resolve these matters without burdening the Court.[41]

---

[41]    Cocchiaro Decl., Exs. 3, 4, 7–11.

Dated:  September 17, 2021

By:  _/s/ Stamatios Stamoulis_____
     Stamatios Stamoulis (No. 4606)

**Stamoulis & Weinblatt LLC**
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

**O'Melveny & Myers LLP**
Tancred Schiavoni (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: 212-326-2000

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North
America and Indemnity Insurance Company of
North America*

MORRIS JAMES LLP
Carl Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: ckunz@morrisjames.com

*- and –*

Margaret M. Anderson, Esq. (pro hac vice)
Adam A. Hachikian (pro hac vice)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
Telephone: (312) 224-1200
Facsimile: (312) 224-1201
Email: panderson@foxswibel.com
     ahachikian@foxswibel.com

*Counsel for Old Republic Insurance Company*

Bodell Bové, LLC
Bruce W. McCullough  (No.  3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

- and -

CLYDE & CO US LLP
Bruce D. Celebrezze (pro hac vice)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
Email:    bruce.celebrezze@clydeco.us

Konrad R. Krebs (pro hac vice)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone:  (973) 210-6700
Facsimile:  (973) 210-6701
Email:    konrad.krebs@clydeco.us

- and –

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (pro hac vice)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email:  dchristian@dca.law

*Attorneys for Great American Assurance
Company, f/k/a Agricultural Insurance Company;
Great American E&S Insurance Company,
f/k/a Agricultural Excess and Surplus Insurance
Company; and Great American E&S Insurance
Company*

Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com
mcclambc@ballardpshar.com

-and-

Harry Lee*
John O'Connor*
Brett Grindrod*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com
joconnor@steptoe.com
bgrindrod@steptoe.com
(*Admitted pro hac vice)

*Attorneys for Clarendon America Insurance
Company, Maryland Casualty Company,
Maryland American General Group, and
American General Fire & Casualty Company*