# EXHIBIT 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of _____ Delaware _____

In re Boy Scouts of America and Delaware BSA, LLC____

Debtor

_(Complete if issued in an adversary proceeding)_

_____

Plaintiff

v.

_____

Defendant

Case No.____ 20-10343 (LSS)

Chapter____ 11 _____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

Resolutions, LLC, 30 Monument Square, Suite 245, Concord, MA 01742

To: _____

_(Name of person to whom the subpoena is directed)_

☒ _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Contained herein in Exhibit 1

| PLACE STAMOULIS & WEINBLATT LLC, Attn: Stamatios Stamoulis 800 N. West Street, Third Floor Wilmington, DE 19801 (302) 999-1540 stamoulis@swdelaw.com | DATE AND TIME 8/11/21 by 5:00 pm Eastern |
|---|---|

☐ _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/3/2021 _____

CLERK OF COURT

OR

_Tancred Schiavoni_

_____          _____
_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_ Century Indemnity Company on behalf of the Propounding Insurers, who issues or requests this subpoena, are:

Stamatios Stamoulis 800 N. West Street, Third Floor Wilmington, DE 19801 (302) 999-1540 stamoulis@swdelaw.com

**Notice to the person who issues or requests this subpoena: A complete list of the Propounding Insurers can be found on Exhibit 1.**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____on *(date)*_____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $_____.

My fees are $_____for travel and $_____for services, for a total of $_____.


I declare under penalty of perjury that this information is true and correct.

Date: _____


_____
*Server's signature*


_____
*Printed name and title*


_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT 1

## DEFINITIONS

For the purposes of these Requests for Production, the following Definitions shall apply:

1.      The words "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.      "Board" includes any of the Boy Scouts of America's boards or committees of directors, executives, and key officials, whether professional or volunteer, including but not limited to the National Executive Board, National Executive Committee, the Bankruptcy Task Force, and the "Key 3" of Roger Mosby, Dan Ownby, and W. Scott Sorrels.

3.      "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, jointly administered under Case No. 20-10343 (LSS).

4.      "Coalition" means the Coalition of Abused Scouts for Justice, including its individual members and any attorneys, representatives, consultants, advisors or anyone acting on the Coalition's behalf during the pendency of these Chapter 11 Cases.

5.      "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

6.      "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing,

identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

7.      "Debtors" means, collectively or individually, as context requires and to encompass responsive documents from Boy Scouts of America and Delaware BSA LLC, and each of their attorneys.

8.      "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes:  all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a

particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

9.      "Fourth Amended Plan" shall mean the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 5484].

10.      "Hartford" shall mean Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company.

11.      "Hartford Settlement" shall mean the *Settlement Agreement and Release* [Docket No. 2624, Ex. A].

12.      "Local Council" shall have the meaning provided in the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 5484].

13.      "Plan of Reorganization" shall mean any plan of reorganization for the Debtors and any drafts thereof.

14.      "Propounding Insurers" means those insurers identified in the signature block below.

15.      "RSA" means the "Restructuring Support Agreement" entered into in these Chapter 11 Cases by the Debtors and certain parties on July 1, 2021 [Docket No. 5466-2, Ex. 1].

16.      "Settlement Trustee" shall have the meaning provided in the Fourth Amended Plan.

17.      "Settlement Trustee Advisory Committee" shall have the meaning provided in the Fourth Amended Plan.

18.      "Settlement Trust Documents" shall have the meaning provided in the RSA.

19.    "State Court Counsel" shall have the meaning provided in the RSA.

20.    "Term Sheet" means the "Boy Scouts of America Reorganization Term Sheet" and shall have the meaning provided in the RSA.

21.    "TDPs" means the "Trust Distribution Procedures" and shall have the meaning provided in the Fourth Amended Plan.

22.    "You" or "Your" and variants thereof means Resolutions, LLC, including but not limited to any of its employees, agents, and representatives.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for the purposes of these Requests for Production, the following Instructions shall be followed:

1.    Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.    All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, and the Local Rules.

3.    Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be the period from the inception of the Debtors to the present.

4.    These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.    Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and

materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems (including, without limitation, Gmail, Yahoo, etc.).You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf.

6.      Documents not otherwise responsive to these Requests for Production should be produced:  (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

7.      Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8.      If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

    a.      Identify the type, title and subject matter of the Document;

    b.      State the place, date, and manner of preparation of the Document;

      c.      Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

      d.      Identify the legal privilege(s) and the factual basis for the claim.

9.      Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 9 above must be provided.

10.      To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of.  In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

11.      If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

12.      If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of

such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

13.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## **MANNER OF PRODUCTION**

1.     All Documents produced to the Propounding Insurers shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.     Database Load Files and Production Media Structure:  Database load files shall consist of:  (i) a comma-delimited values (".dat") file containing:  production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably

structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.      <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Propounding Insurers, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.      <u>Emails and Attachments, and Other Email Account-Related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems, including, but not limited, to Microsoft ExchangeTM, Lotus NotesTM, or Novell GroupwiseTM shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Propounding Insurers.

5.      <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Propounding Insurers to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format, including, but not limited

to, data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

a.      XML format file(s);

b.      Microsoft SQL database(s);

c.      Access database(s); and/or

d.      fixed or variable length ASCII delimited files.

6.      <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>:   All  Documents generated  or  stored  in  software  such  as  Microsoft  Excel  or  other  commercially  available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their  native  format,  along  with  an  accompanying  placeholder  image  in  tiff  format  indicating  a native file has been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.  To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein.  Native files may  be  produced  within  a  separate  root-level  folder  structure  on  deliverable  media  entitled "Natives."

7.      <u>"Other" Electronic Documents</u>:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.    <u>Paper Documents</u>:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

*General Requests*

**REQUEST FOR PRODUCTION NO. 1:**

All Documents Concerning the Boy Scouts of America and/or these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications between or among You and the Debtors, the Coalition, TCC, FCR, and State Court Counsel Concerning *Fuller-Austin* or *UNR* in connection with the Boy Scouts of America and/or these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 3:**

All Communications among You, on the one hand, and the TCC, FCR and/or Coalition or their respective counsel, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, the RSA, the Term Sheet, the TDPs, the Settlement Trust Documents, and/or the Hartford Settlement.

**REQUEST FOR PRODUCTION NO. 4:**

All Communications among You, on the one hand, and James Patton and/or any lawyer representing Mr. Patton, on the other hand, Concerning Boy Scouts of America and/or these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications among You, on the one hand, and the State Court Counsel, the Coalition, TCC, FCR and/or their representative counsel, on the other hand, Concerning Boy Scouts of America, the RSA, the Term Sheet, the TDPs, the Hartford Settlement, and/or the Settlement Trust Documents.

**REQUEST FOR PRODUCTION NO. 6:**

All documents Concerning the insurance coverage allegedly available to the Boy Scouts for claims of sexual abuse.

**REQUEST FOR PRODUCTION NO. 7:**

All indemnity and other agreements between or among the Debtors, Local Council(s) and any Chartering Organizations.

*Requests Concerning Your Possible Retention*

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives Concerning Your potential or actual retention or appointment as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show all other matters where You have been retained by James Patton, individually, or in his capacity, as future claimants representative or other representative capacity.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to show all other matters where You have retained James Patton or Young Conaway as Your counsel, individually, or in Your capacity, as future claimants representative or other representative capacity, including any motions or applications that have been filed by You or on Your behalf to retain James Patton or Young Conaway.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to show how much You have paid to James Patton or Young Conaway to represent You individually, or in Your capacity, as future claimants representative or other representative capacity.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to show all other matters on which James Patton has recommended Your retention.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show any personal social relationship with James Patton, including (1) any calendar entries, emails, or text messages evidencing occasions where You, Mr. Patton, or your families vacationed together, traveled together, visited each other's home, dined together, or otherwise interacted in a non-professional setting, and (2) any written Communications including but not limited to text messages, emails, cards, or notes exchanged between You, Mr. Patton, or your families apart from those relating to any legal matters that you and Mr. Patton both are involved in in any capacity.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents Concerning the actual or proposed terms for Your retention as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 15:**

All Communications among You, on the one hand, and BSA and/or its counsel, James Patton, Scott Gilbert, Kami Quinn, Joe Rice, and/or any other lawyer associated with Gilbert LLP or James Patton, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, a prepackaged bankruptcy for the Boy Scouts of America and/or the sexual abuse claims against the Boy Scouts of America, either during these Chapter 11 Cases or prepetition.

*Requests Concerning Estimation, Valuation, and Analysis*

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications Concerning and/or reflecting any analysis Concerning the number and valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents Concerning presentations made to anyone Concerning and/or reflecting any analysis Concerning the valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications Concerning any estimation and forecasting of present and future liabilities for claims in connection with these Chapter 11 Cases and prepetition, and the valuation of insurance policies associated with such liability.

*Requests Concerning the Trust Distribution Procedures*

## REQUEST FOR PRODUCTION NO. 19:

All Documents Concerning the TDPs to be employed with any Plan of Reorganization for the Debtors.

## REQUEST FOR PRODUCTION NO. 20:

All Documents and Communications Concerning Your involvement in the development of the Trust Distribution Procedures or any other procedures for allowing and valuing sexual abuse claims against BSA and/or the Local Councils.

## REQUEST FOR PRODUCTION NO. 21:

All Documents Concerning any analysis Concerning the values of claims identified in the TDPs, including but not limited to, the values of claims falling into the various different tiers described in the Claims Matrix for Direct Abuse Claims identified in the TDPs.

## REQUEST FOR PRODUCTION NO. 22:

All Documents and Communications reflecting the methodologies, metrics, and/or assumptions utilized in connection with any analysis Concerning the value of any present or future Direct Abuse Claims, including but not limited the values identified in the TDPs.

*Requests Concerning the Settlement Trust*

## REQUEST FOR PRODUCTION NO. 23:

All Documents relating to the Settlement Trust Assets, including but not limited to all Communications between and/or among the Debtors, any Related Non-Debtor Entities, any Local Councils, the TCC, the Coalition, and the Future Claimants' Representative related thereto.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents relating to the value of assets that any Related Non-Debtor Entity, Local

Council, Chartered Organization or other entity is contributing to the Settlement Trust.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications between or among You and the Debtors, Mr. Mosby,

Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC,

FCR and/or any of their counsel or representatives.


Dated:  August 3, 2021

CHOATE, HALL & STEWART, LLP
Douglas R. Gooding (admitted pro hac vice)
Jonathan D. Marshall (admitted pro hac vice)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

*-and-*

Kim V. Marrkand (admitted pro hac vice)
Laura Bange Stephens (admitted pro hac vice)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 0211
Telephone: (617) 542-6000
kmarrkand@mintz.com
lbstephens@mintz.com

*Counsel to Liberty Mutual Insurance Company*

*/s/  Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, Delaware  19801
Telephone:   302 999 1540
Facsimile:    302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:   212 326 2000
Facsimile:    212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

Robert D. Cecil, Jr. (No. 5317)
Tybout, Redfearn & Pell
501 Carr Road, Suite 300
Wilmington, Delaware 19809
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

*-and-*

Mark D. Plevin (admitted pro hac vice)
Kevin D. Cacabelos (admitted pro hac vice)
Crowell & Moring LLP
Three Embarcadero Center, 26th Floor
San Francisco, California  94111
Phone: (415) 986-2800
E-mail:  mplevin@crowell.com,
kcacabelos@crowell.com

*-and-*

Clifford J. Zatz (admitted pro hac vice)
Tacie H. Yoon (admitted pro hac vice)
Rachel A. Jankowski (admitted pro hac
vice)
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Phone: (202) 624-2500
Email:  czatz@crowell.com
        tyoon@crowell.com
        rjankowski@crowell.com

*Attorneys for American Zurich Insurance
Company, American Guarantee and
Liability Insurance Company, and Steadfast
Insurance Company*

Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, D.E. 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
Email: efay@bayardlaw.com
        gflasser@bayardlaw.com

*-and-*

James P. Ruggeri (admitted pro hac vice)
Joshua D. Weinberg (admitted pro hac vice)
Annette P. Rolain (admitted pro hac vice)
Sara K. Hunkler (admitted pro hac vice)
Shipman & Goodwin LLP
1875 K Street, NW, Suite 600
Washington, D.C. 20006
Tel: (202) 469-7750
Fax: (202) 469-7751

*-and-*

Philip D. Anker (admitted pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
Tel: (212) 230-8890
Fax: (212) 230-8888

*-and-*

Danielle Spinelli (admitted pro hac vice)
Joel Millar (admitted pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for First State Insurance Company,
Hartford Accident and Indemnity Company,
Twin City Fire Insurance Company and
Navigators Specialty Insurance Company*

REGER RIZZO & DARNALL LLP
Louis J. Rizzo, Jr., Esquire (#3374)
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE 19803
(302) 477-7100
Email:  lrizzo@regerlaw.com

*Attorney for Defendants, Travelers Casualty
and Surety Company, Inc. (f/k/a Aetna
Casualty & Surety Company), St. Paul
Surplus Lines Insurance Company and Gulf
Insurance Company*

MORRIS JAMES LLP
Stephen M. Miller (DE Bar No. 2610)
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com
        ckunz@morrisjames.coM

Margaret M. Anderson, Esq.
(admitted pro hac vice)
Adam A. Hachikian, Esq.
(admitted pro hac vice)
Kenneth M. Thomas
(admitted pro hac vice)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
Telephone: (312) 224-1224
Facsimile: (312) 224-1201
Email: panderson@foxswibel.com
        kthomas@foxswibel.com

*Counsel for Old Republic Insurance
Company*

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:  404.885.3000
Facsimile:   404.885.3900

*-and-*

Harris B. Winsberg (admitted pro hac vice)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:  404.885.3000
Facsimile:   404.885.3900

*-and-*

Bradley Riley Jacobs PC
Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:  312.281.0295

*Attorneys for National Surety Corporation
and Interstate Fire & Casualty Company*

Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com
mcclambc@ballardpshar.com

-and-

Harry Lee*
John O'Connor*
Brett Grindrod*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com
joconnor@steptoe.com
bgrindrod@steptoe.com
(*Admitted pro hac vice)

*Attorneys for Clarendon America Insurance Company*

Michael J. Joyce, Esquire (No. 4563)
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, DE 19801
(302)-388-1944
mjoyce@mjlawoffices.com

-and-

Kevin Coughlin, Esquire (Pro Hac Vice)
Lorraine Armenti, Esquire (Pro Hac Vice)
Michael Hrinewski, Esquire (Pro Hac Vice)
COUGHLIN MIDLIGE & GARLAND, LLP
350 Mount Kemble Ave.
PO Box 1917
Morristown, NJ 07962
973-267-0058 (Telephone)
973-267-6442 (Facsimile)
larmenti@cmg.law
mhrinewski@cmg.law

-and-

Britton C. Lewis, Esquire (Pro Hac Vice)
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St.
P.O. Box 540
Greensboro, NC  27401
(336) 478-1146 (Telephone)
(336) 478-1145 (Facsimile)
bcl@crlaw.com

*Counsel to Arrowood Indemnity Company*

BODELL BOVÉ, LLC
Bruce W. McCullough (No. 3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

*- and -*

CLYDE & CO US LLP
Bruce D. Celebrezze (pro hac vice)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: bruce.celebrezze@clydeco.us

*- and –*

Konrad R. Krebs (pro hac vice)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
Email: konrad.krebs@clydeco.us

*- and –*

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (pro hac vice)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email: dchristian@dca.law

*Attorneys for Great American Assurance
Company, f/k/a Agricultural Insurance
Company; Great American E&S Insurance
Company, f/k/a Agricultural Excess and
Surplus Insurance Company; and Great
American E&S Insurance Company*

Harris B. Winsberg (admitted pro hac vice)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:    404.885.3000
Facsimile:    404.885.3900

-and-

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
Matthew S. Sorem (admitted pro hac vice)
10 S. Wacker Dr., 21st Floor
Chicago, IL 60606
Telephone:    312.585.1433
Facsimile:    312.585.1401

-and-

MCDERMOTT WILL & EMERY LLP
Margaret H. Warner (admitted pro hac vice)
Ryan S. Smethurst (admitted pro hac vice)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:    202.756.8228
Facsimile:    202.756.8087

*Attorneys for Allianz Global Risks US
Insurance Company*

# EXHIBIT 2

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____  District of ══════ Delaware ══════

In re Boy Scouts of America and Delaware BSA, LLC _____

                  Debtor

_(Complete if issued in an adversary proceeding)_

_____

                  Plaintiff
                     v.
_____

                  Defendant

Case No.____ 20-10343 (LSS)

Chapter____ 11 _____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

Eric D. Green, 52 Devens Street, Concord, MA 01742 and/or
8 Lelands Path, Edgartown MA 02539

To: _____

_(Name of person to whom the subpoena is directed)_

☒  _Production_: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

                  Contained herein in Exhibit 1

| PLACE | DATE AND TIME |
|---|---|
| STAMOULIS & WEINBLATT LLC, Attn: Stamatios Stamoulis 800 N. West Street, Third Floor Wilmington, DE 19801 (302) 999-1540 stamoulis@swdelaw.com | 8/16/21 by 9:00 am Eastern |

☐  _Inspection of Premises_: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 8/9/2021

        CLERK OF COURT                     OR        _Tancred Schiavoni_

_____                    _____
   _Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, email address, and telephone number of the attorney representing _(name of party)_ Century Indemnity Company on behalf of the Propounding Insurers, who issues or requests this subpoena, are:

Stamatios Stamoulis 800 N. West Street, Third Floor Wilmington, DE 19801 (302) 999-1540 stamoulis@swdelaw.com

**Notice to the person who issues or requests this subpoena: A complete list of the Propounding Insurers can be found on Exhibit 1.**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____on *(date)*_____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____for travel and $_____for services, for a total of $_____.

      I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT 1**

**DEFINITIONS**

For the purposes of these Requests for Production, the following Definitions shall apply:

1.       The words "all," "any," and "each" shall each be construed as encompassing any and all.  The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2.       "Board" includes any of the Boy Scouts of America's boards or committees of directors, executives, and key officials, whether professional or volunteer, including but not limited to the National Executive Board, National Executive Committee, the Bankruptcy Task Force, and the "Key 3" of Roger Mosby, Dan Ownby, and W. Scott Sorrels.

3.       "Chapter 11 Cases" means the cases filed by the Debtors under chapter 11 of the Bankruptcy Code, jointly administered under Case No. 20-10343 (LSS).

4.       "Coalition" means the Coalition of Abused Scouts for Justice, including its individual members and any attorneys, representatives, consultants, advisors or anyone acting on the Coalition's behalf during the pendency of these Chapter 11 Cases.

5.       "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

6.       "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing,

identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

7.    "Debtors" means, collectively or individually, as context requires and to encompass responsive documents from Boy Scouts of America and Delaware BSA LLC, and each of their attorneys.

8.    "Documents" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all documents and information in Your possession, custody, or control, and includes:  all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof.  If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced.  When examples of categories or types of Documents are given in a

particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

9.    "Fourth Amended Plan" shall mean the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 5484].

10.    "Hartford" shall mean Hartford Accident and Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company.

11.    "Hartford Settlement" shall mean the *Settlement Agreement and Release* [Docket No. 2624, Ex. A].

12.    "Local Council" shall have the meaning provided in the *Fourth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 5484].

13.    "Plan of Reorganization" shall mean any plan of reorganization for the Debtors and any drafts thereof.

14.    "Propounding Insurers" means those insurers identified in the signature block below.

15.    "RSA" means the "Restructuring Support Agreement" entered into in these Chapter 11 Cases by the Debtors and certain parties on July 1, 2021 [Docket No. 5466-2, Ex. 1].

16.    "Settlement Trustee" shall have the meaning provided in the Fourth Amended Plan.

17.    "Settlement Trustee Advisory Committee" shall have the meaning provided in the Fourth Amended Plan.

18.    "Settlement Trust Documents" shall have the meaning provided in the RSA.

19.     "State Court Counsel" shall have the meaning provided in the RSA.

20.     "Term Sheet" means the "Boy Scouts of America Reorganization Term Sheet" and shall have the meaning provided in the RSA.

21.     "TDPs" means the "Trust Distribution Procedures" and shall have the meaning provided in the Fourth Amended Plan.

22.     "You" or "Your" and variants thereof means Eric D. Green

### INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for the purposes of these Requests for Production, the following Instructions shall be followed:

1.     Civil Rule 34, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2.     All responses shall comply with the requirements of the Civil Rules, the Bankruptcy Rules, and the Local Rules.

3.     Unless otherwise stated in a specific Request for Production herein, the relevant time period shall be the period from the inception of the Debtors to the present.

4.     These Requests for Production shall be deemed continuing in nature.  In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

5.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area

networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems (including, without limitation, Gmail, Yahoo, etc.).You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf.

6.     Documents not otherwise responsive to these Requests for Production should be produced:  (a) if such Documents mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) if such Documents are attached to, enclosed with, or accompany Documents called for by these Requests for Production; or (c) if such Documents constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

7.     Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

8.     If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

      a.     Identify the type, title and subject matter of the Document;

      b.     State the place, date, and manner of preparation of the Document;

      c.     Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

        d.       Identify the legal privilege(s) and the factual basis for the claim.

9.      Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine.  In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 9 above must be provided.

10.     To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it:  (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document.  Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

11.     If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

12.     If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections.  Any ground not stated shall be waived.  If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

13.     If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response.  If any information requested is not in Your possession, but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

## **MANNER OF PRODUCTION**

1.     All Documents produced to the Propounding Insurers shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.  Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.     Database Load Files and Production Media Structure:  Database load files shall consist of:  (i) a comma-delimited values (".dat") file containing:  production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.      <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Propounding Insurers, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.      <u>Emails and Attachments, and Other Email Account-Related Documents</u>:    All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems, including, but not limited, to Microsoft ExchangeTM, Lotus NotesTM, or Novell GroupwiseTM shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Propounding Insurers.

5.      <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Propounding Insurers to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format, including, but not limited to, data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

        a.      XML format file(s);

b.     Microsoft SQL database(s);

c.     Access database(s); and/or

d.     fixed or variable length ASCII delimited files.

6.     <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>:    All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced.  A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media.  To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject to the other requirements listed herein.  Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.     <u>"Other" Electronic Documents</u>:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.     <u>Paper Documents</u>:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the Relativity .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each

Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

*General Requests*

### REQUEST FOR PRODUCTION NO. 1:

All Documents Concerning the Boy Scouts of America and/or these Chapter 11 Cases.

### REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications between or among You and the Debtors, the Coalition, TCC, FCR, and State Court Counsel Concerning *Fuller-Austin* or *UNR* in connection with the Boy Scouts of America and/or these Chapter 11 Cases.

### REQUEST FOR PRODUCTION NO. 3:

All Communications among You, on the one hand, and the TCC, FCR and/or Coalition or their respective counsel, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, the RSA, the Term Sheet, the TDPs, the Settlement Trust Documents, and/or the Hartford Settlement.

### REQUEST FOR PRODUCTION NO. 4:

All Communications among You, on the one hand, and James Patton and/or any lawyer representing Mr. Patton, on the other hand, Concerning Boy Scouts of America and/or these Chapter 11 Cases.

### REQUEST FOR PRODUCTION NO. 5:

All Documents and Communications among You, on the one hand, and the State Court Counsel, the Coalition, TCC, FCR and/or their representative counsel, on the other hand,

Concerning Boy Scouts of America, the RSA, the Term Sheet, the TDPs, the Hartford Settlement, and/or the Settlement Trust Documents.

**REQUEST FOR PRODUCTION NO. 6:**

All documents Concerning the insurance coverage allegedly available to the Boy Scouts for claims of sexual abuse.

**REQUEST FOR PRODUCTION NO. 7:**

All indemnity and other agreements between or among the Debtors, Local Council(s) and any Chartering Organizations.

*Requests Concerning Your Possible Retention*

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives Concerning Your potential or actual retention or appointment as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show all other matters where You have been retained by James Patton, individually, or in his capacity, as future claimants representative or other representative capacity.

**REQUEST FOR PRODUCTION NO. 10:**

Documents sufficient to show all other matters where You have retained James Patton or Young Conaway as Your counsel, individually, or in Your capacity, as future claimants

representative or other representative capacity, including any motions or applications that have been filed by You or on Your behalf to retain James Patton or Young Conaway.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to show how much You have paid to James Patton or Young Conaway to represent You individually, or in Your capacity, as future claimants representative or other representative capacity.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to show all other matters on which James Patton has recommended Your retention.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show any personal social relationship with James Patton, including (1) any calendar entries, emails, or text messages evidencing occasions where You, Mr. Patton, or your families vacationed together, traveled together, visited each other's home, dined together, or otherwise interacted in a non-professional setting, and (2) any written Communications including but not limited to text messages, emails, cards, or notes exchanged between You, Mr. Patton, or your families apart from those relating to any legal matters that you and Mr. Patton both are involved in in any capacity.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents Concerning the actual or proposed terms for Your retention as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

**REQUEST FOR PRODUCTION NO. 15:**

All Communications among You, on the one hand, and BSA and/or its counsel, James Patton, Scott Gilbert, Kami Quinn, Joe Rice, and/or any other lawyer associated with Gilbert LLP or James Patton, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, a prepackaged bankruptcy for the Boy Scouts of America and/or the sexual abuse claims against the Boy Scouts of America, either during these Chapter 11 Cases or prepetition.

*Requests Concerning Estimation, Valuation, and Analysis*

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications Concerning and/or reflecting any analysis Concerning the number and valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents Concerning presentations made to anyone Concerning and/or reflecting any analysis Concerning the valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications Concerning any estimation and forecasting of present and future liabilities for claims in connection with these Chapter 11 Cases and prepetition, and the valuation of insurance policies associated with such liability.

*Requests Concerning the Trust Distribution Procedures*

**REQUEST FOR PRODUCTION NO. 19:**

All Documents Concerning the TDPs to be employed with any Plan of Reorganization for the Debtors.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents and Communications Concerning Your involvement in the development of the Trust Distribution Procedures or any other procedures for allowing and valuing sexual abuse claims against BSA and/or the Local Councils.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents Concerning any analysis Concerning the values of claims identified in the TDPs, including but not limited to, the values of claims falling into the various different tiers described in the Claims Matrix for Direct Abuse Claims identified in the TDPs.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications reflecting the methodologies, metrics, and/or assumptions utilized in connection with any analysis Concerning the value of any present or future Direct Abuse Claims, including but not limited the values identified in the TDPs.

*Requests Concerning the Settlement Trust*

**REQUEST FOR PRODUCTION NO. 23:**

All Documents relating to the Settlement Trust Assets, including but not limited to all Communications between and/or among the Debtors, any Related Non-Debtor Entities, any Local Councils, the TCC, the Coalition, and the Future Claimants' Representative related thereto.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents relating to the value of assets that any Related Non-Debtor Entity, Local Council, Chartered Organization or other entity is contributing to the Settlement Trust.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications between or among You and the Debtors, Mr. Mosby,

Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC,

FCR and/or any of their counsel or representatives.

Dated:  August 9, 2021

CHOATE, HALL & STEWART, LLP
Douglas R. Gooding (admitted pro hac vice)
Jonathan D. Marshall (admitted pro hac vice)
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
dgooding@choate.com
jmarshall@choate.com

-and-

Kim V. Marrkand (admitted pro hac vice)
Laura Bange Stephens (admitted pro hac vice)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 0211
Telephone: (617) 542-6000
kmarrkand@mintz.com
lbstephens@mintz.com

*Counsel to Liberty Mutual Insurance Company*

*/s/  Stamatios Stamoulis*
Stamatios Stamoulis (#4606)
STAMOULIS & WEINBLATT LLC
800 N. West Street, Third Floor
Wilmington, Delaware  19801
Telephone:    302 999 1540
Facsimile:    302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Daniel Shamah (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:    212 326 2000
Facsimile:    212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

Robert D. Cecil, Jr. (No. 5317)
Tybout, Redfearn & Pell
501 Carr Road, Suite 300
Wilmington, Delaware 19809
Phone: (302) 658-6901
E-mail: rcecil@trplaw.com

-and-

Mark D. Plevin (admitted pro hac vice)
Kevin D. Cacabelos (admitted pro hac vice)
Crowell & Moring LLP
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Phone: (415) 986-2800
E-mail: mplevin@crowell.com,
kcacabelos@crowell.com

-and-

Clifford J. Zatz (admitted pro hac vice)
Tacie H. Yoon (admitted pro hac vice)
Rachel A. Jankowski (admitted pro hac vice)
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Phone: (202) 624-2500
Email: czatz@crowell.com
    tyoon@crowell.com
    rjankowski@crowell.com

*Attorneys for American Zurich Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company*

Erin R. Fay (No. 5268)
Gregory J. Flasser (No. 6154)
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, D.E. 19801
Tel: (302) 655-5000
Fax: (302) 658-6395
Email: efay@bayardlaw.com
    gflasser@bayardlaw.com

-and-

James P. Ruggeri (admitted pro hac vice)
Joshua D. Weinberg (admitted pro hac vice)
Annette P. Rolain (admitted pro hac vice)
Sara K. Hunkler (admitted pro hac vice)
Shipman & Goodwin LLP
1875 K Street, NW, Suite 600
Washington, D.C. 20006
Tel: (202) 469-7750
Fax: (202) 469-7751

-and-

Philip D. Anker (admitted pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
Tel: (212) 230-8890
Fax: (212) 230-8888

-and-

Danielle Spinelli (admitted pro hac vice)
Joel Millar (admitted pro hac vice)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for First State Insurance Company, Hartford Accident and Indemnity Company, Twin City Fire Insurance Company and Navigators Specialty Insurance Company*

REGER RIZZO & DARNALL LLP
Louis J. Rizzo, Jr., Esquire (#3374)
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE 19803
(302) 477-7100
Email: lrizzo@regerlaw.com

*Attorney for Defendants, Travelers Casualty
and Surety Company, Inc. (f/k/a Aetna
Casualty & Surety Company), St. Paul
Surplus Lines Insurance Company and Gulf
Insurance Company*

MORRIS JAMES LLP
Stephen M. Miller (DE Bar No. 2610)
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: smiller@morrisjames.com
        ckunz@morrisjames.coM

Margaret M. Anderson, Esq.
(admitted pro hac vice)
Adam A. Hachikian, Esq.
(admitted pro hac vice)
Kenneth M. Thomas
(admitted pro hac vice)
FOX SWIBEL LEVIN & CARROLL LLP
200 W. Madison Street, Suite 3000
Chicago, IL 60606
Telephone: (312) 224-1224
Facsimile: (312) 224-1201
Email: panderson@foxswibel.com
        kthomas@foxswibel.com

*Counsel for Old Republic Insurance
Company*

David M. Fournier (DE No. 2812)
Marcy J. McLaughlin Smith (DE No. 6184)
Hercules Plaza
1313 Market Street
Suite 5100
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone:  404.885.3000
Facsimile:   404.885.3900

*-and-*

Harris B. Winsberg (admitted pro hac vice)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:  404.885.3000
Facsimile:   404.885.3900

*-and-*

Bradley Riley Jacobs PC
Todd C. Jacobs (admitted pro hac vice)
John E. Bucheit (admitted pro hac vice)
500 West Madison Street
Suite 1000
Chicago, IL 60661
Telephone:  312.281.0295

*Attorneys for National Surety Corporation
and Interstate Fire & Casualty Company*

Matthew G. Summers (DE No. 5533)
Chantelle D. McClamb (DE No. 5978)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com
mcclambc@ballardpshar.com

-and-

Harry Lee*
John O'Connor*
Brett Grindrod*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-8078
Facsimile: (202) 429-3902
E-mail: hlee@steptoe.com
joconnor@steptoe.com
bgrindrod@steptoe.com
(*Admitted pro hac vice)

*Attorneys for Clarendon America
Insurance Company*

Michael J. Joyce, Esquire (No. 4563)
JOYCE, LLC
1225 King Street, Suite 800
Wilmington, DE 19801
(302)-388-1944
mjoyce@mjlawoffices.com

-and-

Kevin Coughlin, Esquire (Pro Hac Vice)
Lorraine Armenti, Esquire (Pro Hac Vice)
Michael Hrinewski, Esquire (Pro Hac Vice)
COUGHLIN MIDLIGE & GARLAND, LLP
350 Mount Kemble Ave.
PO Box 1917
Morristown, NJ 07962
973-267-0058 (Telephone)
973-267-6442 (Facsimile)
larmenti@cmg.law
mhrinewski@cmg.law

-and-

Britton C. Lewis, Esquire (Pro Hac Vice)
CARRUTHERS & ROTH, P.A.
235 N. Edgeworth St.
P.O. Box 540
Greensboro, NC  27401
(336) 478-1146 (Telephone)
(336) 478-1145 (Facsimile)
bcl@crlaw.com

*Counsel to Arrowood Indemnity Company*

BODELL BOVÉ, LLC
Bruce W. McCullough (No. 3112)
1225 N. King Street, Suite 1000
P.O. Box 397
Wilmington, DE 19899-0397
Telephone: (302) 655-6749,
Facsimile: (302) 655-6827
Email: bmccullough@bodellbove.com

*- and -*

CLYDE & CO US LLP
Bruce D. Celebrezze (pro hac vice)
Four Embarcadero Center, Suite 1350
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801
Email: bruce.celebrezze@clydeco.us

*- and –*

Konrad R. Krebs (pro hac vice)
200 Campus Drive | Suite 300
Florham Park, NJ 07932
Telephone: (973) 210-6700
Facsimile: (973) 210-6701
Email: konrad.krebs@clydeco.us

*- and –*

DAVID CHRISTIAN ATTORNEYS LLC
David Christian (pro hac vice)
105 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: (862) 362-8605
Email: dchristian@dca.law

*Attorneys for Great American Assurance
Company, f/k/a Agricultural Insurance
Company; Great American E&S Insurance
Company, f/k/a Agricultural Excess and
Surplus Insurance Company; and Great
American E&S Insurance Company*

Harris B. Winsberg (admitted pro hac vice)
Bank of America Plaza
600 Peachtree Street NE
Suite 3000
Atlanta, GA  30308-2216
Telephone:    404.885.3000
Facsimile:    404.885.3900

-and-

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
Matthew S. Sorem (admitted pro hac vice)
10 S. Wacker Dr., 21st Floor
Chicago, IL 60606
Telephone:    312.585.1433
Facsimile:    312.585.1401

-and-

MCDERMOTT WILL & EMERY LLP
Margaret H. Warner (admitted pro hac vice)
Ryan S. Smethurst (admitted pro hac vice)
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Telephone:    202.756.8228
Facsimile:    202.756.8087

*Attorneys for Allianz Global Risks US
Insurance Company*

# EXHIBIT 3

**Casale, Lauren**

| | |
|---|---|
| **From:** | Rowe, Rachael A. <RROWE@KMKLAW.com> |
| **Sent:** | Monday, August 16, 2021 5:45 PM |
| **To:** | Schiavoni, Tancred |
| **Cc:** | Cocchiaro, Salvatore J.; Irwin, Kevin E.; Caponi Steven L.; Stewart, Benjamin G.; Brown, Bonnie R. |
| **Subject:** | Re: BSA Subpoena |

[EXTERNAL MESSAGE]

Mr. Sciavoni,

I want to participate in the meet and confer on this issue.  I'm not certain that I understand your question below.  But I am sure we'll have a productive discussion of the issues when we are able to talk directly.

Are you available Wednesday at noon or 2:00?  If neither of those times work for you, I can do Thursday at 1:00.

Have a pleasant evening.


Rachael A. Rowe
Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Aug 16, 2021, at 5:29 PM, Schiavoni, Tancred <tschiavoni@omm.com> wrote:


Racheal

What mediation is the mediation being asserted in connection with?  Can we meet and confer with one of your four co-counsel tomorrow if you are tied up?

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Monday, August 16, 2021 5:28 PM
**To:** Schiavoni, Tancred <tschiavoni@omm.com>
**Cc:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Caponi Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>
**Subject:** Re: BSA Subpoena

[EXTERNAL MESSAGE]

Mr. Sciavoni,

Mr. Green cannot waive the mediation privilege.  Tomorrow is not good for me.  I am available to talk on Wednesday at noon or 2:00, however.  Do one of those times on Wednesday work for you?

Thanks, Rachael

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

## KMK | Law
**Keating Muething & Klekamp PLL**
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Aug 16, 2021, at 5:21 PM, Schiavoni, Tancred <tschiavoni@omm.com> wrote:

Rachel

Wednesday it is then. May we tell the Court that Mr. Green has withdrawn his assertion of mediation privilege. If not, when are you available to meet and confer tomorrow?

**From:** Rowhenwe, Rachael A. < @KMKLAW.com>
**Sent:** Monday, August 16, 2021 5:05 PM
**To:** Schiavoni, Tancred <tschiavoni@omm.com>
**Cc:** Cocchiaro, Salvatore J. <scocchiaro RROWE @omm.com>; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Caponi Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>
**Subject:** Re: BSA Subpoena

[EXTERNAL MESSAGE]

Hello Mr. Schiavoni.

As I noted in our August 12 exchange, we are in the process of reviewing and preparing the documents for production. I anticipate we'll begin to produce on Wednesday barring any unforeseen problems on my end.
This is ambitious given that we received the subpoenas less than two weeks ago.  We are working hard to accommodate your schedule.

Thanks, Rachael

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Aug 16, 2021, at 4:58 PM, Schiavoni, Tancred
<tschiavoni@omm.com> wrote:

Rachel

We are in a hearing now. When can we tell the court Mr. Green
and Resolutions will produce their documents.

---

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Monday, August 16, 2021 4:57 PM
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Caponi Steven L.
<Steven.Caponi@klgates.com>; Stewart, Benjamin G.
<BGStewart@KMKLAW.com>; Schiavoni, Tancred
<tschiavoni@omm.com>
**Subject:** Re: BSA Subpoena


[EXTERNAL MESSAGE]

Hello, Mr. Cocchiaro.

I'm doing well.  I hope you are, too.  I will have our objections and
response to the Green subpoena out to you shortly.  Feel free to
call if you have any questions.

Thanks, Rachael

**Rachael A. Rowe**

Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East 4th Street | Suite 1400 | Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com | KMK on LinkedIn | KMK on Twitter

On Aug 16, 2021, at 4:49 PM, Cocchiaro, Salvatore J. <scocchiaro@omm.com> wrote:

Good afternoon Ms. Rowe,

Hope all is well. If you could please provide an update on Mr. Green's responses and objections to the subpoena that we issued to him, that would be much appreciated.

Thanks,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Tuesday, August 10, 2021 23:26
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Caponi Steven L. <Steven.Caponi@klgates.com>; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>
**Subject:** Re: BSA Subpoena

[EXTERNAL MESSAGE]

Hello, Mr. Cocchiaro.

We will agree to accept email service of the August 9 subpoena to Mr. Green.  Please resend the subpoena with the correct date.

Kindly,

Rachael Rowe

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East Fourth Street  |  Suite
1400  |  Cincinnati, OH 45202  |  Map
Direct: (513) 579-6486 | Fax: (513)
579-6457
kmklaw.com  |  KMK on
LinkedIn  |  KMK on Twitter

On Aug 10, 2021, at 8:30 PM,
Cocchiaro, Salvatore J.
<scocchiaro@omm.com> wrote:


Good evening Ms. Rowe,

My apologies for inadvertently
including Mr. Green on my previous
communication.  I would like to
follow up with you, as we haven't
heard back regarding our previous
email offering the courtesy of email
service to avoid disturbing Mr.
Green's vacation.  We kindly ask
again if you/your client would be
willing to accept service via email,
with an extension in the response
deadline to Monday, August 16th at
9:00am.  If not, we will be engaging
process servers to serve Mr. Green
personally.

Many thanks,
Sal


## O'Melveny

**Salvatore J. Cocchiaro**
Associate
scocchiaro@omm.com
O: +1-212-728-5975

──────────────────

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY  10036
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

<Eric Green Subpoena.pdf>

**Confidentiality Statement:** This e-mail contains information that is intended to be privileged and confidential. It is intended only for the addressee named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please delete it from your computer system. Your assistance in correcting this error is appreciated.

# EXHIBIT 4

**Casale, Lauren**

| | |
|---|---|
| **From:** | Rowe, Rachael A. <RROWE@KMKLAW.com> |
| **Sent:** | Thursday, August 12, 2021 3:36 PM |
| **To:** | Schiavoni, Tancred; Cocchiaro, Salvatore J. |
| **Cc:** | Irwin, Kevin E.; Stewart, Benjamin G.; Caponi, Steven L. |
| **Subject:** | BSA / Resolutions, LLC [IWOV-IMANAGE.FID1866118] |

[EXTERNAL MESSAGE]

Good afternoon, Mr. Schiavoni,

In response to your last question, we will produce responsive, non-privileged documents beginning next week, and will make every effort to begin the production early in the week.

We will not withdraw the mediation or work product privilege objections, however.  Resolutions has identified some documents from the time period in the winter and spring of 2020 when Mr. Green was working as a mediator nominee that are protected by the mediator privilege.  We will not be producing those privileged documents.  We will log those documents and any others that we identify that are protected by the attorney work product privilege or any other applicable privileges.  Given that Resolutions was served with your subpoena just one week ago, it cannot come as a surprise to you that the documents are still being collected and reviewed.  We will continue to work as quickly as we can.

Thank you, Rachael Rowe

> **From:** "Schiavoni, Tancred" <tschiavoni@omm.com>
> **Date:** August 11, 2021 at 9:08:24 PM EDT
> **To:** "Brown, Bonnie R." <bbrown@kmklaw.com>, "Cocchiaro, Salvatore J." <scocchiaro@omm.com>
> **Cc:** "Irwin, Kevin E." <KIRWIN@kmklaw.com>, "Brown, Bonnie R." <bbrown@kmklaw.com>, "Schiavoni, Tancred" <tschiavoni@omm.com>
> **Subject: BSA re Resolutions, LLC I**
>
>
> Dear Rachael and Kevin
>
> Resolutions asserts as an objection to every request mediation privilege when neither Resolutions nor Mr. Green are a party to any mediation in this case.  Resolutions also asserts  privilege on the grounds that documents were generated in anticipation of litigation when Mr. Green's retention has not eve yet been approved. We respectfully ask that Resolutions confirm tomorrow that it will withdraw these objections.
>
> Please let us know tomorrow when Resolutions will produce the documents it has offered to produce.

Rachael A. Rowe
Partner
RROWE@KMKLAW.com

**KMK** | Law

**Keating Muething & Klekamp** PLL
One East Fourth Street  |  Suite 1400  |  Cincinnati, OH 45202  |  Map
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

**Confidentiality Statement:** This e-mail contains information that is intended to be privileged and confidential. It is intended only for the addressee named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please delete it from your computer system. Your assistance in correcting this error is appreciated.

# EXHIBIT 5



**Rachael A. Rowe**
D: 513.579.6486
RROWE@KMKLAW.com

August 11, 2021

<u>*Via Email*</u>

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
*tschiavoni@omm.com*
*scocchiaro@omm.com*

   Re:  *In re Boy Scouts of America and Delaware BSA, LLC*,
      <u>United States Bankruptcy Court, District of Delaware, Case No. 20-10343</u>

Dear Messrs. Schiavoni and Cocchiaro:

   I write concerning the subpoena that you issued to Resolutions, LLC ("Resolutions") in the above-captioned case. This letter will serve as a formal written response to that subpoena.

   As you know, this firm also represents Eric D. Green. We will address the subpoena you served upon Mr. Green personally in separate correspondence, and nothing in this letter waives any objection that Mr. Green might assert.

   Resolutions objects to the subpoena because it does not allow an adequate amount of time to reply. The subpoena was served on Resolutions on August 3, 2021, and provided a response date of August 11, 2021. This is less than the 14 days contemplated by Civil Rule 45(d)(2)(B). Even in the limited timeframe permitted so far, we have preliminarily identified many files that are potentially responsive to your subpoena and may locate more. Files must be reviewed and redacted with respect to confidential and privileged information as described in the objections below. It is simply not possible to review and produce these documents in a few days.

   Your failure to reasonably engage us about an extension was not helpful. As you know, I contacted you by email on August 5 - <u>two days after the subpoena was served</u> - and asked you to extend Resolution's response time until August 17 (still less than 14 days from service). I also offered to accept service of the subpoena you served on Mr. Green by email so long as you agreed to the same deadline. You did not respond. I then called you on August 6 and left a voicemail message asking you to respond. You did not respond to that message either. I again emailed you on August 9. Only then - two days before the subpoena's purported response date - did you

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 2

respond, stating that you would not agree to any extension.  (A copy of our email correspondence is attached to this letter.)

Despite what you say you "imagine" in your August 9 email, Resolutions (like most organizations) does not have a "large staff" capable of responding to 25 separate requests in the short timeframe you demand.  That said, Resolutions will produce documents to you as soon as practicable (as set forth below).

Resolutions raises the following additional general objections:

1.      Resolutions objects to the subpoena to the extent it is overly broad, oppressive, unduly burdensome and would cause undue expense, including for the following reasons:

(a)      the Request is not limited to any reasonable timeframe in that it seeks documents dating back to the inception of the Boy Scouts of America;

(b)      the Request purports to require disclosure of information that is neither relevant to the subject matter involved in the above-captioned action nor reasonably calculated to lead to the discovery of admissible evidence (such as any personal communications that tangentially mention the Boy Scouts but are unrelated to the above-captioned case); and

(c)      the Request seeks documents that are related to the above-captioned action, but which may also contain references to other, unrelated and confidential matters involving Resolutions.  Resolutions reserves the right to redact references to unrelated and confidential matters.

Resolutions reserves the right to seek to recover all costs and expenses associated with responding to the subpoena.

2.      Resolutions objects to the subpoena to the extent it purports to require disclosure of information that was prepared in anticipation of litigation, constitutes attorney work product, discloses the mental impressions, conclusions, opinion or legal theories of any of Resolutions' attorneys, contains privileged attorney-client communications, contains confidential and/or proprietary information or is otherwise protected from disclosure under applicable privileges, laws or rules.  Any inadvertent disclosure of such information, or information protected by any other applicable privilege, is not intended and should not be construed to constitute a waiver of any privilege, either generally or specifically, with respect to such material or the subject matter thereof.

3.      Resolutions objects to the subpoena to the extent it purports to require disclosure of information that was prepared in anticipation of mediation, constitutes a mediator's work product, discloses the mental impressions, conclusions, opinion or legal theories of a mediator, or contains privileged or confidential mediator communications, including those covered by Local Rule 9019-5(d) (or any other applicable law or rule).  Any inadvertent disclosure of such

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 3

information, or information protected by any other applicable privilege, is not intended and should not be construed to constitute a waiver of any privilege, either generally or specifically, with respect to such material or the subject matter thereof.

4.      Resolutions objects to the definition of the term "You" as used in the subpoena to the extent it purports to expand the recipients of the subpoena to employees of Resolutions personally.

5.      Resolutions objects to the subpoena to the extent it seeks confidential or proprietary documents or information, including but not limited to health information or similarly sensitive information.  Resolutions reserves the right to redact sensitive or proprietary information from any documents that produced in response hereto, or to seek a protective order.

6.      Resolutions objects to the subpoena to the extent it improperly calls for a narrative response beyond any response required by the Federal Rules of Civil Procedure or Bankruptcy Rules.

7.      Resolutions objects to the subpoena, including to any definitions and/or instructions contained in the subpoena, to the extent it seeks to place requirements on Resolutions beyond those imposed by the Federal Rules of Civil Procedure, Bankruptcy Rules or any other applicable law.

8.      Discovery is ongoing and Resolutions reserves the right to supplement, modify or amend this response at any time up to and through the date authorized by the court in any order.

Resolutions responds to your specific requests as follows.

In all of the following responses, references to "non-privileged" documents refer to documents that are not covered by general objection nos. 2 and 3 set forth above concerning attorney-client, work product *and/or* confidential mediation documents or communications.

REQUEST FOR PRODUCTION NO. 1:

All Documents Concerning the Boy Scouts of America and/or these Chapter 11 Cases.

**RESPONSE:**      Resolutions objects to this request to the extent it seeks any personal or other communications unrelated to the above-captioned case. Resolutions will produce non-privileged documents responsive to this Request (subject to and without waiving this objection or the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications between or among You and the Debtors, the Coalition, TCC, FCR, and State Court Counsel Concerning *Fuller-Austin* or *UNR* in connection with the Boy Scouts of America and/or these Chapter 11 Cases.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 4

> **RESPONSE:**    Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request.

<u>REQUEST FOR PRODUCTION NO. 3:</u>

All Communications among You, on the one hand, and the TCC, FCR and/or Coalition or their respective counsel, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, the RSA, the Term Sheet, the TDPs, the Settlement Trust Documents, and/or the Hartford Settlement.

> **RESPONSE:**    Resolutions will produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

<u>REQUEST FOR PRODUCTION NO. 4:</u>

All Communications among You, on the one hand, and James Patton and/or any lawyer representing Mr. Patton, on the other hand, Concerning Boy Scouts of America and/or these Chapter 11 Cases.

> **RESPONSE:**    Resolutions will produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

<u>REQUEST FOR PRODUCTION NO. 5:</u>

All Documents and Communications among You, on the one hand, and the State Court Counsel, the Coalition, TCC, FCR and/or their representative counsel, on the other hand, Concerning Boy Scouts of America, the RSA, the Term Sheet, the TDPs, the Hartford Settlement, and/or the Settlement Trust Documents.

> **RESPONSE:**    Resolutions will produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

<u>REQUEST FOR PRODUCTION NO. 6:</u>

All documents concerning the insurance coverage allegedly available to the Boy Scouts for claims of sexual abuse.

> **RESPONSE:**    Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 5

any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 7:

All indemnity and other agreements between or among the Debtors, Local Council(s) and any Chartering Organizations.

**RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 8:

All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives Concerning Your potential or actual retention or appointment as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

**RESPONSE:** Resolutions objects to this Request to the extent it explicitly seeks confidential mediation documents. Resolutions will produce any non-privileged documents responsive to this Request (subject to and without waiving this objection or the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 9:

Documents sufficient to show all other matters where You have been retained by James Patton, individually, or in his capacity, as future claimants representative or other representative capacity.

**RESPONSE:** Resolutions states that it understands this Request to seek only documents sufficient to show all such matters, and does not seek all documents related to such matters. Subject to this understanding, and the aforementioned general objections, Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 6

REQUEST FOR PRODUCTION NO. 10:

Documents sufficient to show all other matters where You have retained James Patton or Young Conaway as Your counsel, individually, or in Your capacity, as future claimants representative or other representative capacity, including any motions or applications that have been filed by You or on Your behalf to retain James Patton or Young Conaway.

> **RESPONSE:**    Resolutions states that it understands this Request to seek only documents sufficient to show all such matters, and does not seek all documents related to such matters. Subject to this understanding, and the aforementioned general objections, Resolutions refers to the Declaration of Eric D. Green submitted in this matter on May 28, 2020 (Doc. 712), which lists all such matters. To the extent Resolutions becomes aware of any additional matters, it will produce non-privileged documents sufficient to respond to this Request.

REQUEST FOR PRODUCTION NO. 11:

Documents sufficient to show how much You have paid to James Patton or Young Conaway to represent You individually, or in Your capacity, as future claimants representative or other representative capacity.

> **RESPONSE:**    In addition to the general objections set forth above, Resolutions objects to this Request as vague and ambiguous, because it could implicate instances where payments to Young Conaway by others (such as settlement trusts) were passed through Resolutions but not "paid" by Resolutions, and because information about such payments is irrelevant to this dispute and is confidential, and because producing such information would place an undue burden on Resolutions and its clients. Answering further, apart from such payments, Resolutions is unaware of any payments made by Resolutions to either Mr. Patton or Young Conaway.

REQUEST FOR PRODUCTION NO. 12:

Documents sufficient to show all other matters on which James Patton has recommended Your retention.

> **RESPONSE:**    In addition to the general objections set forth above, Resolutions objects to this Request as vague and ambiguous and because Resolutions may not be aware of every matter where Mr. Patton has made such a recommendation. Resolutions further states that it understands this Request to seek only documents sufficient to show all such matters, and does not seek all documents related to such

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 7

matters.  Subject to this understanding, and the aforementioned objection and general objections, Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 13:

Documents sufficient to show any personal social relationship with James Patton, including (1) any calendar entries, emails, or text messages evidencing occasions where You, Mr. Patton, or your families vacationed together, traveled together, visited each other's home, dined together, or otherwise interacted in a non-professional setting, and (2) any written Communications including but not limited to text messages, emails, cards, or notes exchanged between You, Mr. Patton, or your families apart from those relating to any legal matters that you and Mr. Patton both are involved in in any capacity.

**RESPONSE:**    Resolutions objects to this Request as unduly burdensome, harassing, vague and ambiguous, and because it seeks personal and private information that is irrelevant to this proceeding.  Moreover, Resolutions objects to this Request to extent it suggests that Resolutions, as an entity, could have a social relationship with an individual.  Resolutions refers to the Declaration of Eric D. Green submitted in this matter on May 28, 2020 (Doc. 712), which discloses that Mr. Green and Mr. Patton are social friends.  Resolutions objects to producing further documents in response to this Request.

REQUEST FOR PRODUCTION NO. 14:

All Documents Concerning the actual or proposed terms for Your retention as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

**RESPONSE:**    Resolutions will produce non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 15:

All Communications among You, on the one hand, and BSA and/or its counsel, James Patton, Scott Gilbert, Kami Quinn, Joe Rice, and/or any other lawyer associated with Gilbert LLP or James Patton, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, a prepackaged bankruptcy for the Boy Scouts of America and/or the sexual abuse claims against the Boy Scouts of America, either during these Chapter 11 Cases or prepetition.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 8

> **RESPONSE:** Resolutions will produce non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 16:

All Documents and Communications Concerning and/or reflecting any analysis Concerning the number and valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

> **RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 17

All Documents Concerning presentations made to anyone Concerning and/or reflecting any analysis Concerning the valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

> **RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 18:

All Documents and Communications Concerning any estimation and forecasting of present and future liabilities for claims in connection with these Chapter 11 Cases and prepetition, and the valuation of insurance policies associated with such liability.

> **RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents or communications responsive to this Request.

REQUEST FOR PRODUCTION NO. 19:

All Documents Concerning the TDPs to be employed with any Plan of Reorganization for the Debtors.

> **RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 9

any documents responsive to this Request other than copies of
documents filed with the Bankruptcy Court that are publically
available.

REQUEST FOR PRODUCTION NO. 20:

All Documents and Communications Concerning Your involvement in the development of
the Trust Distribution Procedures or any other procedures for allowing and valuing sexual abuse
claims against BSA and/or the Local Councils.

> **RESPONSE:**      Resolutions would produce any non-privileged documents
> responsive to this Request (subject to and without waiving the
> aforementioned general objections), but states that it is not aware of
> any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 21:

All Documents Concerning any analysis Concerning the values of claims identified in the
TDPs, including but not limited to, the values of claims falling into the various different tiers
described in the Claims Matrix for Direct Abuse Claims identified in the TDPs.

> **RESPONSE:**      Resolutions would produce any non-privileged documents
> responsive to this Request (subject to and without waiving the
> aforementioned general objections), but states that it is not aware of
> any documents responsive to this Request other than copies of
> documents filed with the Bankruptcy Court that are publically
> available.

REQUEST FOR PRODUCTION NO. 22:

All Documents and Communications reflecting the methodologies, metrics, and/or
assumptions utilized in connection with any analysis Concerning the value of any present or future
Direct Abuse Claims, including but not limited the values identified in the TDPs.

> **RESPONSE:**      Resolutions would produce any non-privileged documents
> responsive to this Request (subject to and without waiving the
> aforementioned general objections), but states that it is not aware of
> any documents responsive to this Request other than copies of
> documents filed with the Bankruptcy Court that are publically
> available.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 10

REQUEST FOR PRODUCTION NO. 23:

All Documents relating to the Settlement Trust Assets, including but not limited to all Communications between and/or among the Debtors, any Related Non-Debtor Entities, any Local Councils, the TCC, the Coalition, and the Future Claimants' Representative related thereto.

> **RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 24:

All Documents relating to the value of assets that any Related Non-Debtor Entity, Local Council, Chartered Organization or other entity is contributing to the Settlement Trust.

> **RESPONSE:** Resolutions would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that it is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 25:

All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives.

> **RESPONSE:** Resolutions objects to this request to the extent it seeks any personal or other communications unrelated to the above-captioned case. Resolutions will produce non-privileged documents responsive to this Request (subject to and without waiving this objection or the aforementioned general objections).

Given that Resolutions has only had a few days to respond to the Subpoena, it is not in all cases able to determine whether documents responsive to every Request exist. To the extent Resolutions represents that it will produce non-privileged documents in response to a Request, it is not affirming that responsive documents exist.

We invite you to meet and confer with us by telephone or video conference to discuss these objections at your earliest convenience. However, as stated above, we have begun the process of

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 11, 2021
Page 11

reviewing documents to produce to you consistent with these objections, and we will produce documents to you as soon as practicable.

Please do not hesitate to contact me if you have any questions.

Sincerely,

KEATING MUETHING & KLEKAMP PLL

By: _Rachael A. Rowe_

Rachael A. Rowe

c:   Mr. Kevin E. Irwin (via email *kirwin@kmklaw.com*)
     Mr. Benjamin G. Stewart (via email *bgstewart@kmklaw.com*)
     Mr. Steven L. Caponi (via email *steven.caponi@klgates.com*)
     Mr. Edwin J. Harron (via email *eharron@ycst.com*)
     Mr. Douglas R. Gooding (via email *dgooding@choate.com*)
     Mr. Stamatios Stamoulis (via email *stamoulis@swdelaw.com*)
     Mr. Robert D. Cecil, Jr. (via email *rcecil@trplaw.com*)
     Ms. Erin R. Fay (via email *efay@bayardlaw.com*)
     Mr. Louis J. Rizzo, Jr. (via email *lrizzo@regerlaw.com*)
     Mr. Stephen M. Miller (via email *smiller@morrisjames.com*)
     Mr. David M. Fournier (via email *david.fournier@troutman.com*)
     Mr. Matthew G. Summers (via email *summersm@ballardspahr.com*)
     Mr. Michael J. Joyce (via email *mjoyce@mjlawoffices.com*)
     Mr. Bruce W. McCullough (via email *bmccullough@bodellbove.com*)
     Mr. Matthew S. Sorem (via email *msorem@nicolaidesllp.com*)
     Mr. David J. Molton (via email d*molton@brownrudnick.com*)
     Mr. Michael C. Andolina (via email *mandolina@whitecase.com*)

11038113

## Rowe, Rachael A.

| From: | Cocchiaro, Salvatore J. <scocchiaro@omm.com> |
|---|---|
| Sent: | Monday, August 9, 2021 3:32 PM |
| To: | Rowe, Rachael A.; Brown, Bonnie R.; Schiavoni, Tancred |
| Cc: | Irwin, Kevin E.; Stewart, Benjamin G.; Recht, Bethany P.; 'steven.caponi@klgates.com' |
| Subject: | RE: BSA Subpoena |

Hi Ms. Rowe,

Apologies for any delay in response.  The Court has scheduled a hearing for this Thursday (8/12) with regard to Mr. Green's appointment.  We imagine that Resolutions LLC has a large staff and we respectfully request that they comply with the subpoena, as we are sure that Mr. Green would want the record to be complete in advance of that hearing.  Please let us know today whether you will still accept service for Mr. Green without this condition of an extension, or whether we should seek to serve him.

Many thanks,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Monday, August 9, 2021 3:19 AM
**To:** Brown, Bonnie R. <bbrown@kmklaw.com>; Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Schiavoni, Tancred <tschiavoni@omm.com>
**Cc:** Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Recht, Bethany P. <BRecht@KMKLAW.com>; 'steven.caponi@klgates.com' <steven.caponi@klgates.com>
**Subject:** RE: Sent on Behalf of Rachael A. Rowe re BSA Subpoena

[EXTERNAL MESSAGE]

Gentlemen,

In follow up to my email of August 5 and my telephone message to Mr. Cocchiaro of August 6, can you please confirm that you agree that Resolutions, LLC may have until August 17 to respond to the subpoena you served on it on August 3?  As I noted below and in my voice message, we will accept service of your subpoena to Mr. Green and respond the same date if you will agree to extend Resolutions this courtesy.

Thanks, Rachael Rowe

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

# KMK | Law
**Keating Muething & Klekamp PLL**

1

One East Fourth Street | Suite 1400 | Cincinnati, OH 45202 | Map
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com | KMK on LinkedIn | KMK on Twitter

**From:** Brown, Bonnie R. <bbrown@kmklaw.com>
**Sent:** Thursday, August 5, 2021 11:11 AM
**To:** scocchiaro@omm.com; tschiavoni@omm.com
**Cc:** Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Rowe, Rachael A. <RROWE@KMKLAW.com>
**Subject:** Sent on Behalf of Rachael A. Rowe re BSA Subpoena [IWOV-IMANAGE.FID977448]

Counsel,

We represent Eric Green and Resolutions, LLC in connection with the subpoenas that are referenced in the email
below.

While we are still reviewing the subpoenas, it is apparent that due to the nature of the requests and the travel schedules
of Mr. Green and other Resolutions employees, it won't be practical to respond to the subpoenas in a week. We would
appreciate a few extra days to respond to both subpoenas (including any necessary objections). Will you agree to
extend the response date to August 17? If so, we will agree to accept service of the subpoena to Mr. Green.

_____
_____
_____

**From:** "Cocchiaro, Salvatore J." <scocchiaro@omm.com>
**Date:** Tuesday, August 3, 2021 at 10:07 PM
**To:** "Eric D. Green" <EricDGreen@resolutionsllc.com>, Cathy Kern <Cathy@resolutionsllc.com>
**Cc:** "Schiavoni, Tancred" <tschiavoni@omm.com>, Stamatios Stamoulis <stamoulis@swdelaw.com>
**Subject:** BSA Subpoena

Good evening Mr. Green,

Hope all is well. Earlier this afternoon we effectuated service of a subpoena of your firm, Resolutions LLC, in
connection with the Boy Scouts bankruptcy case. At that same time, we were hoping to personally serve a
subpoena of you as well, but we were told that you were on vacation and could not be reached.

Given that we've already effectuated service on your firm and have requested document production on the
same day for both subpoenas, we kindly ask if you would be willing to accept service via email. I attach here
the subpoena directed at you, as well as a courtesy copy of the one served earlier today on Resolutions.

Please let us know by tomorrow afternoon if this service is acceptable to you so that we can plan otherwise if
need be.

Many thanks in advance,

Sal


# O'Melveny
## Salvatore J. Cocchiaro

Associate

scocchiaro@omm.com

O: +1-212-728-5975

O'Melveny & Myers LLP

Times Square Tower

7 Times Square

New York, NY  10036

Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*


&lt;Resolutions Subpoena.pdf&gt;
&lt;Eric Green Subpoena.pdf&gt;


**Confidentiality Statement:** This e-mail contains information that is intended to be privileged and confidential. It is intended only for the addressee named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please delete it from your computer system. Your assistance in correcting this error is appreciated.

3

# EXHIBIT 6

**Casale, Lauren**

---

| | |
|---|---|
| **From:** | Brown, Bonnie R. <bbrown@kmklaw.com> |
| **Sent:** | Monday, August 16, 2021 5:31 PM |
| **To:** | Schiavoni, Tancred; Cocchiaro, Salvatore J. |
| **Cc:** | 'steven.caponi@klgates.com'; Ed Harron; dgooding@choate.com; stamoulis@swdelaw.com; rcecil@trplaw.com; efay@bayardlaw.com; lrizzo@regerlaw.com; smiller@morrisjames.com; david.fournier@troutman.com; summersm@ballardspahr.com; mjoyce@mjlawoffices.com; bmccullough@bodellbove.com; msorem@nicolaidesllp.com; dmolton@brownrudnick.com; mandolina@whitecase.com; Rowe, Rachael A.; Irwin, Kevin E.; Stewart, Benjamin G. |
| **Subject:** | Sent on Behalf of Rachael A. Rowe Representing Eric D. Green In re Boy Scouts of America and Delaware BSA, LLC [IWOV-IMANAGE.FID1865979] |
| **Attachments:** | Eric Green Response.pdf |

[EXTERNAL MESSAGE]

Gentlemen, please see attached.

**Bonnie R. Brown**
Trust Practice Coordinator
bbrown@kmklaw.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East Fourth Street  |  Suite 1400  |  Cincinnati, OH 45202  |  Map
Direct: (513) 579-6426 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

**Confidentiality Statement:** This e-mail contains information that is intended to be privileged and confidential. It is intended only for the addressee named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please delete it from your computer system. Your assistance in correcting this error is appreciated.



**Rachael A. Rowe**
D: 513.579.6486
RROWE@KMKLAW.com

August 16, 2021

*Via Email*

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
*tschiavoni@omm.com*
*scocchiaro@omm.com*

Re:     *In re Boy Scouts of America and Delaware BSA, LLC*,
        United States Bankruptcy Court, District of Delaware, Case No. 20-10343

Dear Messrs. Schiavoni and Cocchiaro:

I write concerning the subpoena that you issued to Eric D. Green in the above-captioned case. This letter will serve as a formal written response to that subpoena.

As you know, this firm also represents Resolutions, LLC ("Resolutions"). We addressed the subpoena you served upon Resolutions in separate correspondence, and nothing in this letter waives any objection that Resolutions might assert.

Like the subpoena to Resolutions, the Green subpoena did not allow for the 14-day response time contemplated by Civil Rule 45(d)(2)(B). Mr. Green objects to the subpoena because it does not allow an adequate amount of time to reply. Subject to and without waiving that objection, Mr. Green provides the responses below. Consistent with my August 11 objection and response to the Resolutions subpoena and my August 12 email to you, we have begun to review and prepare for production documents responsive to both subpoenas, and anticipate beginning to produce documents early this week.

Because the subpoenas seek identical information, the documents produced in response to the Resolutions subpoena will be nearly (if not completely) identical to the documents that would be responsive to the subpoena served on Mr. Green.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 2

Mr. Green raises the following additional general objections:

1.    Mr. Green objects to the subpoena to the extent it is overly broad, oppressive, unduly burdensome and would cause undue expense, including for the following reasons:

(a)    the subpoena is not limited to any reasonable timeframe in that it seeks documents dating back to the inception of the Boy Scouts of America;

(b)    the subpoena purports to require disclosure of information that is neither relevant to the subject matter involved in the above-captioned action nor reasonably calculated to lead to the discovery of admissible evidence (such as any personal communications that tangentially mention the Boy Scouts but are unrelated to the above-captioned case); and

(c)    the subpoena seeks documents that are related to the above-captioned action, but which may also contain references to other, unrelated and confidential matters involving Mr. Green.  Mr. Green reserves the right to redact references to unrelated and confidential matters.

Mr. Green reserves the right to seek to recover all costs and expenses associated with responding to the subpoena.

2.    Mr. Green objects to the subpoena to the extent it purports to require disclosure of information that was prepared in anticipation of litigation, constitutes attorney work product, discloses the mental impressions, conclusions, opinion or legal theories of any of Mr. Green's or Resolutions' attorneys, contains privileged attorney-client communications, contains confidential and/or proprietary information or is otherwise protected from disclosure under applicable privileges, laws or rules.  Any inadvertent disclosure of such information, or information protected by any other applicable privilege, is not intended and should not be construed to constitute a waiver of any privilege, either generally or specifically, with respect to such material or the subject matter thereof.

3.    Mr. Green objects to the subpoena to the extent it purports to require disclosure of information that was prepared in anticipation of mediation, constitutes a mediator's work product, discloses the mental impressions, conclusions, opinion or legal theories of a mediator, or contains privileged or confidential mediator communications, including those covered by Local Rule 9019-5(d) (or any other applicable law or rule).  Any inadvertent disclosure of such information, or information protected by any other applicable privilege, is not intended and should not be construed to constitute a waiver of any privilege, either generally or specifically, with respect to such material or the subject matter thereof.

4.    Mr. Green objects to the subpoena to the extent it seeks confidential or proprietary documents or information, including but not limited to health information or similarly sensitive information.  Mr. Green reserves the right to redact sensitive or proprietary information from any documents that produced in response hereto, or to seek a protective order.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 3

5.      Mr. Green objects to the subpoena to the extent it improperly calls for a narrative response beyond any response required by the Federal Rules of Civil Procedure or Bankruptcy Rules.

6.      Mr. Green objects to the subpoena, including to any definitions and/or instructions contained in the subpoena, to the extent it seeks to place requirements on Mr. Green beyond those imposed by the Federal Rules of Civil Procedure, Bankruptcy Rules or any other applicable law.

7.      Discovery is ongoing and Mr. Green reserves the right to supplement, modify or amend this response at any time up to and through the date authorized by the court in any order.

Mr. Green responds to your specific requests as follows.

In all of the following responses, references to "non-privileged" documents refer to documents that are not covered by general objection nos. 2 and 3 set forth above concerning attorney-client, work product *and/or* confidential mediation documents or communications.

REQUEST FOR PRODUCTION NO. 1:

All Documents Concerning the Boy Scouts of America and/or these Chapter 11 Cases.

**RESPONSE:**    Mr. Green objects to this request to the extent it seeks any personal or other communications unrelated to the above-captioned case. Mr. Green will produce non-privileged documents responsive to this Request (subject to and without waiving this objection or the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 2:

All Documents and Communications between or among You and the Debtors, the Coalition, TCC, FCR, and State Court Counsel Concerning *Fuller-Austin* or *UNR* in connection with the Boy Scouts of America and/or these Chapter 11 Cases.

**RESPONSE:**    Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 3:

All Communications among You, on the one hand, and the TCC, FCR and/or Coalition or their respective counsel, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, the RSA, the Term Sheet, the TDPs, the Settlement Trust Documents, and/or the Hartford Settlement.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 4

      **RESPONSE:**      Mr. Green will produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 4:

All Communications among You, on the one hand, and James Patton and/or any lawyer representing Mr. Patton, on the other hand, Concerning Boy Scouts of America and/or these Chapter 11 Cases.

      **RESPONSE:**      Mr. Green will produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 5:

All Documents and Communications among You, on the one hand, and the State Court Counsel, the Coalition, TCC, FCR and/or their representative counsel, on the other hand, Concerning Boy Scouts of America, the RSA, the Term Sheet, the TDPs, the Hartford Settlement, and/or the Settlement Trust Documents.

      **RESPONSE:**      Mr. Green will produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 6:

All documents concerning the insurance coverage allegedly available to the Boy Scouts for claims of sexual abuse.

      **RESPONSE:**      Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 7:

All indemnity and other agreements between or among the Debtors, Local Council(s) and any Chartering Organizations.

      **RESPONSE:**      Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 5

REQUEST FOR PRODUCTION NO. 8:

All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives Concerning Your potential or actual retention or appointment as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

> **RESPONSE:** Mr. Green objects to this Request to the extent it explicitly seeks confidential mediation documents. Mr. Green will produce any non-privileged documents responsive to this Request (subject to and without waiving this objection or the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 9:

Documents sufficient to show all other matters where You have been retained by James Patton, individually, or in his capacity, as future claimants representative or other representative capacity.

> **RESPONSE:** Mr. Green states that he understands this Request to seek only documents sufficient to show all such matters, and does not seek all documents related to such matters. Subject to this understanding, and the aforementioned general objections, Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 10:

Documents sufficient to show all other matters where You have retained James Patton or Young Conaway as Your counsel, individually, or in Your capacity, as future claimants representative or other representative capacity, including any motions or applications that have been filed by You or on Your behalf to retain James Patton or Young Conaway.

> **RESPONSE:** Mr. Green states that he understands this Request to seek only documents sufficient to show all such matters, and does not seek all documents related to such matters. Subject to this understanding, and the aforementioned general objections, Mr. Green refers to his declaration submitted in this matter on May 28, 2020 (Doc. 712), which lists all such matters. To the extent Mr. Green becomes aware of any additional matters, he will produce non-privileged documents sufficient to respond to this Request.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 6

<u>REQUEST FOR PRODUCTION NO. 11:</u>

Documents sufficient to show how much You have paid to James Patton or Young Conaway to represent You individually, or in Your capacity, as future claimants representative or other representative capacity.

|  |  |
|---|---|
| **RESPONSE:** | In addition to the general objections set forth above, Mr. Green objects to this Request as vague and ambiguous, because it could implicate instances where payments to Young Conaway by others (such as settlement trusts) were passed through Resolutions but not "paid" by Resolutions or Mr. Green, and because information about such payments is irrelevant to this dispute and is confidential, and because producing such information would place an undue burden on Mr. Green and Resolutions and its clients.  Answering further, apart from such payments, Mr. Green is unaware of any payments made by him to either Mr. Patton or Young Conaway. |

<u>REQUEST FOR PRODUCTION NO. 12:</u>

Documents sufficient to show all other matters on which James Patton has recommended Your retention.

|  |  |
|---|---|
| **RESPONSE:** | In addition to the general objections set forth above, Mr. Green objects to this Request as vague and ambiguous and because Mr. Green may not be aware of every matter where Mr. Patton has made such a recommendation.  Mr. Green further states that he understands this Request to seek only documents sufficient to show all such matters, and does not seek all documents related to such matters.  Subject to this understanding, and the aforementioned objection and general objections, Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request. |

<u>REQUEST FOR PRODUCTION NO. 13:</u>

Documents sufficient to show any personal social relationship with James Patton, including (1) any calendar entries, emails, or text messages evidencing occasions where You, Mr. Patton, or your families vacationed together, traveled together, visited each other's home, dined together, or otherwise interacted in a non-professional setting, and (2) any written Communications including but not limited to text messages, emails, cards, or notes exchanged between You, Mr. Patton, or your families apart from those relating to any legal matters that you and Mr. Patton both are involved in in any capacity.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 7

RESPONSE: Mr. Green objects to this Request as unduly burdensome, harassing, vague and ambiguous, and because it seeks personal and private information that is irrelevant to this proceeding. Mr. Green refers to his declaration submitted in this matter on May 28, 2020 (Doc. 712), which discloses that he and Mr. Patton are social friends. Mr. Green objects to producing further documents in response to this Request.

REQUEST FOR PRODUCTION NO. 14:

All Documents Concerning the actual or proposed terms for Your retention as Settlement Trustee, liquidating trustee, mediator or for any other role in these Chapter 11 Cases or as part of the administration or operation of a settlement trust created as part of these Chapter 11 Cases.

RESPONSE: Mr. Green will produce non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 15:

All Communications among You, on the one hand, and BSA and/or its counsel, James Patton, Scott Gilbert, Kami Quinn, Joe Rice, and/or any other lawyer associated with Gilbert LLP or James Patton, on the other hand, Concerning Boy Scouts of America, these Chapter 11 Cases, a prepackaged bankruptcy for the Boy Scouts of America and/or the sexual abuse claims against the Boy Scouts of America, either during these Chapter 11 Cases or prepetition.

RESPONSE: Mr. Green will produce non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections).

REQUEST FOR PRODUCTION NO. 16:

All Documents and Communications Concerning and/or reflecting any analysis Concerning the number and valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

RESPONSE: Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 17

All Documents Concerning presentations made to anyone Concerning and/or reflecting any analysis Concerning the valuation of Direct Abuse Claims and/or Indirect Abuse Claims at any time, including in connection with these Chapter 11 Cases and prepetition.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 8

      **RESPONSE:**      Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 18:

All Documents and Communications Concerning any estimation and forecasting of present and future liabilities for claims in connection with these Chapter 11 Cases and prepetition, and the valuation of insurance policies associated with such liability.

      **RESPONSE:**      Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents or communications responsive to this Request.

## REQUEST FOR PRODUCTION NO. 19:

All Documents Concerning the TDPs to be employed with any Plan of Reorganization for the Debtors.

      **RESPONSE:**      Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

## REQUEST FOR PRODUCTION NO. 20:

All Documents and Communications Concerning Your involvement in the development of the Trust Distribution Procedures or any other procedures for allowing and valuing sexual abuse claims against BSA and/or the Local Councils.

      **RESPONSE:**      Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request.

## REQUEST FOR PRODUCTION NO. 21:

All Documents Concerning any analysis Concerning the values of claims identified in the TDPs, including but not limited to, the values of claims falling into the various different tiers described in the Claims Matrix for Direct Abuse Claims identified in the TDPs.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 9

> **RESPONSE:**    Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 22:

All Documents and Communications reflecting the methodologies, metrics, and/or assumptions utilized in connection with any analysis Concerning the value of any present or future Direct Abuse Claims, including but not limited the values identified in the TDPs.

> **RESPONSE:**    Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 23:

All Documents relating to the Settlement Trust Assets, including but not limited to all Communications between and/or among the Debtors, any Related Non-Debtor Entities, any Local Councils, the TCC, the Coalition, and the Future Claimants' Representative related thereto.

> **RESPONSE:**    Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 24:

All Documents relating to the value of assets that any Related Non-Debtor Entity, Local Council, Chartered Organization or other entity is contributing to the Settlement Trust.

> **RESPONSE:**    Mr. Green would produce any non-privileged documents responsive to this Request (subject to and without waiving the aforementioned general objections), but states that he is not aware of any documents responsive to this Request other than copies of documents filed with the Bankruptcy Court that are publically available.

REQUEST FOR PRODUCTION NO. 25:

All Documents and Communications between or among You and the Debtors, Mr. Mosby, Mr. Ownby, Mr. Sorrels, any members of BSA's Board, State Court Counsel, the Coalition, TCC, FCR and/or any of their counsel or representatives.

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
August 16, 2021
Page 10

**RESPONSE:** Mr. Green objects to this request to the extent it seeks any personal or other communications unrelated to the above-captioned case. Mr. Green will produce non-privileged documents responsive to this Request (subject to and without waiving this objection or the aforementioned general objections).

Given that Mr. Green has only had a few days to respond to the Subpoena, he is not in all cases able to determine whether documents responsive to every Request exist. To the extent this letter represents that Mr. Green will produce non-privileged documents in response to a Request, he is not affirming that responsive documents exist.

We invite you to meet and confer with us by telephone or video conference to discuss these objections at your earliest convenience. However, as stated above, we have begun the process of reviewing documents to produce to you consistent with these objections, and we will produce documents to you as soon as practicable.

Please do not hesitate to contact me if you have any questions.

Sincerely,

KEATING MUETHING & KLEKAMP PLL

By: _Rachael A. Rowe_
                     Rachael A. Rowe

c:  Mr. Kevin E. Irwin (via email *kirwin@kmklaw.com*)
    Mr. Benjamin G. Stewart (via email *bgstewart@kmklaw.com*)
    Mr. Steven L. Caponi (via email *steven.caponi@klgates.com*)
    Mr. Edwin J. Harron (via email *eharron@ycst.com*)
    Mr. Douglas R. Gooding (via email *dgooding@choate.com*)
    Mr. Stamatios Stamoulis (via email *stamoulis@swdelaw.com*)
    Mr. Robert D. Cecil, Jr. (via email *rcecil@trplaw.com*)
    Ms. Erin R. Fay (via email *efay@bayardlaw.com*)
    Mr. Louis J. Rizzo, Jr. (via email *lrizzo@regerlaw.com*)
    Mr. Stephen M. Miller (via email *smiller@morrisjames.com*)
    Mr. David M. Fournier (via email *david.fournier@troutman.com*)
    Mr. Matthew G. Summers (via email *summersm@ballardspahr.com*)
    Mr. Michael J. Joyce (via email *mjoyce@mjlawoffices.com*)
    Mr. Bruce W. McCullough (via email *bmccullough@bodellbove.com*)
    Mr. Matthew S. Sorem (via email *msorem@nicolaidesllp.com*)
    Mr. David J. Molton (via email d*molton@brownrudnick.com*)
    Mr. Michael C. Andolina (via email *mandolina@whitecase.com*)

11051082

# EXHIBIT 7

## Casale, Lauren

| | |
|---|---|
| **From:** | Cocchiaro, Salvatore J. |
| **Sent:** | Tuesday, August 17, 2021 8:24 AM |
| **To:** | Rowe, Rachael A.; Schiavoni, Tancred |
| **Cc:** | Irwin, Kevin E.; Caponi Steven L.; Stewart, Benjamin G.; Brown, Bonnie R. |
| **Subject:** | RE: BSA Subpoena |

Thank you, Ms. Rowe.  Please send the invite for Wednesday at 2:00 ET at your earliest convenience.  Looking forward to speaking with you.

Best,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Monday, August 16, 2021 20:48
**To:** Schiavoni, Tancred <tschiavoni@omm.com>
**Cc:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Caponi Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>
**Subject:** Re: BSA Subpoena

[EXTERNAL MESSAGE]

Mr.Schiavoni,

I will send an invite for Wednesday at 2:00.

It would be most helpful if you could refrain from misstating my words, which speak for themselves.  As I've clearly stated already, we will produce responsive, non-privileged documents, and log those withheld based on a privilege.  We will be prepared to meet and confer about the mediation privilege (as you requested) when we talk Wednesday.

Thanks, Rachael

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

## KMK | Law

**Keating Muething & Klekamp** PLL
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Aug 16, 2021, at 5:58 PM, Schiavoni, Tancred <tschiavoni@omm.com> wrote:

Rachel

Thank you for agreeing to walk through with us on Wednesday each of the document requests and let us know for each request whether documents are being withheld on the basis of each of your general objections.

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Monday, August 16, 2021 5:55 PM
**To:** Schiavoni, Tancred <tschiavoni@omm.com>
**Cc:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Caponi Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>
**Subject:** Re: BSA Subpoena

[EXTERNAL MESSAGE]

Mr. Schiavoni,

I'm happy to discuss this and any other demands you have when we talk on Wednesday or Thursday.  Perhaps you can keep a running list and share it with me in advance of our call?

Thanks in advance.

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

## KMK | Law

**Keating Muething & Klekamp** PLL
One East Fourth Street  |  Suite 1400  |  Cincinnati, OH 45202  |  Map
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Aug 16, 2021, at 5:48 PM, Schiavoni, Tancred <tschiavoni@omm.com> wrote:

Rachel

You have asserted a number of general objections. It is unclear from your response to the specific documents requests whether you are, for instance, withhold documents on mediation privilege in response to Request No. 1.  We are asking you to please let us know in response to which of the document requests you are withholding documents on mediation privilege.

We are separately asking you what is the mediation to which you are asserting mediation privilege.

**Confidentiality Statement:** This e-mail contains information that is intended to be privileged and confidential. It is intended only for the addressee named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please delete it from your computer system. Your assistance in correcting this error is appreciated.

# EXHIBIT 8

**Vroman, Robert C.**

| | |
|---|---|
| **From:** | Rowe, Rachael A. <RROWE@KMKLAW.com> |
| **Sent:** | Thursday, September 16, 2021 2:46 PM |
| **To:** | Cocchiaro, Salvatore J. |
| **Cc:** | Caponi, Steven L.; Stewart, Benjamin G.; Matthews, Melissa S.; Irwin, Kevin E.; Brown, Bonnie R.; Schiavoni, Tancred; Casale, Lauren; Indelicato, Samantha M. |
| **Subject:** | Re: BSA 8/18/21 Meet and Confer |

[EXTERNAL MESSAGE]

Hello, Mr. Cocchiaro.

Mr. Green was not party to an executed written mediation agreement in the BSA case.

Sincerely, Rachael Rowe

**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

## KMK | Law

**Keating Muething & Klekamp PLL**
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Sep 15, 2021, at 10:33 PM, Cocchiaro, Salvatore J. <scocchiaro@omm.com> wrote:

Good evening Rachael,

One of our document requests, RFP No. 14, requests "All Documents Concerning the actual or proposed terms" for Mr. Green's role as mediator.  This plainly would include any executed copies of a mediation agreement with Mr. Green/Resolutions, but we do not see such a document produced or logged.

Can you please confirm that no such executed mediation agreement exists?  If it does, we again request that it be produced.

Best,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Tuesday, September 7, 2021 21:53
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>

**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G.
<BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Irwin, Kevin E.
<KIRWIN@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>; Schiavoni, Tancred
<tschiavoni@omm.com>; Casale, Lauren <lcasale@omm.com>; Indelicato, Samantha M.
<sindelicato@omm.com>
**Subject:** Re: BSA 8/18/21 Meet and Confer


[EXTERNAL MESSAGE]

Hello, Mr.Cocchiaro.

Resolutions did not withhold any prepetition documents related to the BSA bankruptcy or anticipated
bankruptcy. Nor did Mr. Green.

As you know, both Resolutions and Mr. Green objected to the scope of your requests insofar as they
contained no date limit and could be construed to seek documents unrelated in any way to the
bankruptcy.  Mr. Green and/or Resolutions may have some very old personal documents relating to the
individual scouting activities of Mr. Green and Mr. Green's son.  We did not produce personal documents
of this nature that are unrelated in any way to the bankruptcy.

You email specifically references March 2020.  To avoid any risk of confusion, I would point you to the
February 20, 2020 email that we did produce.  That is the earliest Resolutions/Green document related to
the BSA bankruptcy.

Thank you,

Rachael Rowe




**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

On Sep 7, 2021, at 8:22 PM, Cocchiaro, Salvatore J. <scocchiaro@omm.com> wrote:


Good evening Rachael,

Following up on this, can you please let us know as soon as possible whether
Mr. Green or Resolutions had any communications about BSA prepetition, and if
so, the basis for withholding those communications?

Many thanks,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975

scocchiaro@omm.com

---

**From:** Cocchiaro, Salvatore J.
**Sent:** Tuesday, September 7, 2021 10:40
**To:** 'Rowe, Rachael A.' <RROWE@KMKLAW.com>
**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>; Schiavoni, Tancred <tschiavoni@omm.com>; Casale, Lauren <lcasale@omm.com>; Indelicato, Samantha M. <sindelicato@omm.com>
**Subject:** RE: BSA 8/18/21 Meet and Confer

Good morning Rachael,

Hope all is well.  I am writing to confirm that Eric Green and Resolutions did not withhold any documents that predate March 2020.  To the extent that Mr. Green communicated prepetition about BSA and the possibility of a BSA bankruptcy, our document requests covered such communications.

Many thanks,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

---

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Wednesday, September 1, 2021 14:18
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Schiavoni, Tancred <tschiavoni@omm.com>; Svirsky, Gary <gsvirsky@omm.com>; Casale, Lauren <lcasale@omm.com>; Indelicato, Samantha M. <sindelicato@omm.com>; jweinberg@goodwin.com; ahachikian@foxswibel.com; Irwin, Kevin E. <KIRWIN@KMKLAW.com>; Brown, Bonnie R. <bbrown@kmklaw.com>
**Subject:** RE: BSA 8/18/21 Meet and Confer

[EXTERNAL MESSAGE]

Good afternoon, Mr. Cocchiaro.

Please see the attached letter and privilege log.

Thank you,
Rachael Rowe

---

**From:** Rowe, Rachael A. <rrowe@kmklaw.com>
**Sent:** Tuesday, August 31, 2021 4:14 PM
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Schiavoni, Tancred <tschiavoni@omm.com>; Svirsky, Gary <gsvirsky@omm.com>;

Casale, Lauren <lcasale@omm.com>; Indelicato, Samantha M.
<sindelicato@omm.com>; jweinberg@goodwin.com; ahachikian@foxswibel.com; Irwin,
Kevin E. <KIRWIN@KMKLAW.com>; Reuter, Mary E. <mbreuter@kmklaw.com>
**Subject:** Re: BSA 8/18/21 Meet and Confer [IWOV-IMANAGE.FID1866118]


Good afternoon, Mr. Cocchiaro.

Thank you for your letter.

I noted when we last corresponded on August 26 that I would be able to send you the
privilege log this week.  Consistent with that promise, I plan to send you the completed
log tomorrow.

Thank you, Rachael Rowe


> On Aug 31, 2021, at 2:16 PM, Cocchiaro, Salvatore J.
> <scocchiaro@omm.com> wrote:


**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp PLL**
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter



Good afternoon Rachael,

Please see the attached letter.

Kind regards,
Sal

-------- Original Message --------
From: "Rowe, Rachael A." <RROWE@KMKLAW.com>
Date: Thu, Aug 26, 2021, 14:54
To: "Cocchiaro, Salvatore J." <scocchiaro@omm.com>
CC: "Caponi, Steven L." <Steven.Caponi@klgates.com>,"Stewart,
Benjamin G." <BGStewart@KMKLAW.com>,"Matthews, Melissa S."
<MMatthews@KMKLAW.com>,"Schiavoni, Tancred"
<tschiavoni@omm.com>,"Svirsky, Gary" <gsvirsky@omm.com>,"Casale,
Lauren" <lcasale@omm.com>,"Indelicato, Samantha M."
<sindelicato@omm.com>,"jweinberg@goodwin.com"
<jweinberg@goodwin.com>,"ahachikian@foxswibel.com"
<ahachikian@foxswibel.com>,"Irwin, Kevin E."
<KIRWIN@KMKLAW.com>,"Reuter, Mary E." <mbreuter@kmklaw.com>

Subject: RE: BSA 8/18/21 Meet and Confer [IWOV-IMANAGE.FID1866118]

[EXTERNAL MESSAGE]

Hello, Mr. Cocchiaro,

We are working on the log and will get it to you when it is complete. I anticipate that will be sometime next week, and will let you know if we encounter any unanticipated delays.

Thanks, Rachael


**Rachael A. Rowe**
Partner
RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp** PLL
One East 4th Street  |  Suite 1400  |  Cincinnati, OH 45202
Direct: (513) 579-6486 | Fax: (513) 579-6457
kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

**From:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Sent:** Thursday, August 26, 2021 1:18 PM
**To:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Schiavoni, Tancred <tschiavoni@omm.com>; Svirsky, Gary <gsvirsky@omm.com>; Casale, Lauren <lcasale@omm.com>; Indelicato, Samantha M. <sindelicato@omm.com>; jweinberg@goodwin.com; ahachikian@foxswibel.com; Irwin, Kevin E. <KIRWIN@KMKLAW.com>
**Subject:** RE: BSA 8/18/21 Meet and Confer [IWOV-IMANAGE.FID1866118]

Hi Rachael,

Many thanks to your IT team for working with ours to resolve the tech issues with the document production.

Given that the production was completed on Monday, could you please provide an update on when we should expect to receive the privilege log as discussed?

All the best,
Sal

Salvatore J. Cocchiaro
O: +1-212-728-5975
scocchiaro@omm.com

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Thursday, August 19, 2021 17:05
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Schiavoni, Tancred <tschiavoni@omm.com>; Svirsky, Gary <gsvirsky@omm.com>; Casale, Lauren <lcasale@omm.com>; jweinberg@goodwin.com; ahachikian@foxswibel.com; Irwin, Kevin E. <KIRWIN@KMKLAW.com>
**Subject:** RE: BSA 8/18/21 Meet and Confer [IWOV-IMANAGE.FID1866118]


[EXTERNAL MESSAGE]

Good afternoon, Mr. Cocchiaro,

As I stated during our meet and confer yesterday, the time-consuming and expensive production of a mediation privilege log seems futile if you are going to argue that the materials are not privileged in any event.  That said, in light of your representation about your need for information in advance of the August 25 hearing on the proposed Disclosure Statement, and to avoid wasting court resources on what we would consider to be unnecessary motion practice, Mr. Green and Resolutions will agree to produce a privilege log that includes all mediation privileged documents so that you, and the court if necessary, can assess the issues.  As I noted in my email to you last night, we will begin logging the privileged materials when we finish the review and production of documents, which we expect to be on Monday, August 23.  We will produce the log to you when it is complete.

You also asked us yesterday whether we could tell you affirmatively if there are mediation privileged documents that are responsive to request numbers 9 through 25.  Although I do not think we are required under the rules to provide you with this specific information, Mr. Green and Resolutions wish to avoid further waste of resources arguing over non-existent documents.  At this juncture, we are not aware of any mediation privileged documents that are responsive to request numbers 9, 11, 12, 13, 16, 17, 19, 20, 21 or 23.  Given that we have not fully completed the production and review at this point, it is possible that there may be a some mediation privileged documents responsive to these requests; but based on our review to date, we do not believe that to be the case.  Mediation privileged documents that may be responsive to the remaining requests in that range (and any others) will be logged.

Sincerely, Rachael Rowe

---

**From:** Rowe, Rachael A. <RROWE@KMKLAW.com>
**Sent:** Wednesday, August 18, 2021 9:11 PM
**To:** Cocchiaro, Salvatore J. <scocchiaro@omm.com>
**Cc:** Caponi, Steven L. <Steven.Caponi@klgates.com>; Stewart, Benjamin G. <BGStewart@KMKLAW.com>; Matthews, Melissa S. <MMatthews@KMKLAW.com>; Schiavoni, Tancred <tschiavoni@omm.com>; Svirsky, Gary <gsvirsky@omm.com>; Casale, Lauren <lcasale@omm.com>; jweinberg@goodwin.com;

ahachikian@foxswibel.com
**Subject:** Re: BSA 8/18/21 Meet and Confer

Hello Mr. Cocchiaro.

This is not an accurate restatement of the discussion we had in our half-hour meet and confer.  Rather, I reiterated what we already clearly stated in our objections and responses to the subpoenas and in my subsequent emails with Mr. Schiavoni.  Neither Mr. Green nor Resolutions will produce mediation documents from the approximately two month period when Mr. Green was serving as a mediator in the case.

We noted that it would be unduly burdensome to produce a log of those documents if the insurers in the case planned to take the position that none of the Green or Resolutions mediation documents are protected because the court ultimately appointed an alternate mediator.  You responded that you needed to understand the volume and general contents of the documents before you could take a position on that issue; and, we agreed to consider that point and confer with you on it by COB  tomorrow.

You also indicated particular interest in whether any drafts of TDPs or other claim valuation documents were included in the privileged mediation documents. We told you that we do not think that is the case but will attempt to confirm when we talk again tomorrow.  As to disclosing participants, if we conclude that production of a log will most efficiently advance the matter, the identity of participants would be included on the log.  If we produce a log, we will get it to you as soon as it is completed.  We would begin the logging process when the review and production are finalized, which we expect to be sometime on Monday.

Thanks to you and your colleagues for taking the time to talk today.

Sincerely, Rachael

On Aug 18, 2021, at 6:18 PM, Cocchiaro, Salvatore J. <scocchiaro@omm.com> wrote:

Rachael A. Rowe

7

Partner

RROWE@KMKLAW.com

# KMK | Law

**Keating Muething & Klekamp PLL**

One East Fourth Street  |  Suite 1400  |  Cincinnati, OH 45202  |  Map

Direct: (513) 579-6486 | Fax: (513) 579-6457

kmklaw.com  |  KMK on LinkedIn  |  KMK on Twitter

Hi Rachael,

I write to confirm that on the meet-and-confirm call this afternoon you (i) stated that Mr. Green intends to withhold documents that were generated before the Court entered a mediation order; and (ii) would not disclose the parties that participated in the purported mediation that Mr. Green was conducting.

You also committed to let us know by COB tomorrow whether you would be logging documents with standard descriptions that would allow us to challenge the log.  You would also let us know when we would receive the log.

Many thanks,
Sal

## O'Melveny

**Salvatore J. Cocchiaro**
Associate
scocchiaro@omm.com
O: +1-212-728-5975

———————————————————

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY  10036
Website | LinkedIn | Twitter

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**Confidentiality Statement:** This e-mail contains information that is intended to be privileged and confidential. It is intended only for the addressee named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please delete it from your computer system. Your assistance in correcting this error is appreciated.

<2021.08.31 OMM Letter to Rowe.pdf>

# EXHIBIT 9



O'Melveny & Myers LLP          T: +1 212 326 2000                                    File Number:
Times Square Tower             F: +1 212 326 2061
7 Times Square                 omm.com
New York, NY 10036-6537

August 31, 2021                                              **Salvatore J. Cocchiaro**
                                                            D: +1 212 728 5975
VIA EMAIL                                                   scocchiaro@omm.com

Rachael A. Rowe, Esq.
Keating Muething & Klekamp PLL
One East 4th Street
Suite 1400
Cincinnati, OH 45202

**Re:**    <u>**In re** **Boy Scouts of America**</u>

Dear Rachael:

    I am writing to follow up on our request for a privilege log for the documents that Eric Green and Resolutions, LLC have withheld as privileged. We previously wrote you about this and then met and conferred with you on August 18, 2021. It is now August 31, 2021. We respectfully request that you comply and send us a privilege log by tomorrow, September 1, 2021.

                              Sincerely,
                              */s/ Salvatore J. Cocchiaro*

                              Salvatore J. Cocchiaro
                              for O'MELVENY & MYERS LLP

# EXHIBIT 10



**Rachael A. Rowe**
D: 513.579.6486
RROWE@KMKLAW.com

September 1, 2021

<u>*Via Email*</u>

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
*tschiavoni@omm.com*
*scocchiaro@omm.com*

  Re: *In re Boy Scouts of America and Delaware BSA, LLC*,
     <u>United States Bankruptcy Court, District of Delaware, Case No. 20-10343</u>

Dear Messrs. Schiavoni and Cocchiaro:

  A privilege log relating to documents responsive to the subpoenas you served on Resolutions, LLC ("Resolutions") and Eric D. Green in the above-captioned case is being sent with this letter. As I stated in prior correspondence on this subject, we have included in the log all documents withheld based on privilege, including those created between March 31, 2020 and June 9, 2020, the period of time when Mr. Green was involved in the mediation in the above captioned case. The descriptions of the documents that are included in the log are made subject to, and without waiving, any applicable privilege.

  This privilege log is being provided subject to my written response and objections set forth in my letters of August 11, 2021 and August 16, 2021. Moreover, we are providing this log subject to the terms of any Protective Order governing the above-captioned case (including Doc. 799-1).

  Please do not hesitate to contact me if you have any questions.

     Sincerely,

     KEATING MUETHING & KLEKAMP PLL

     By: _Rachael A. Rowe_
       Rachael A. Rowe

Mr. Tancred Schiavoni
Mr. Salvatore J. Cocchiaro
September 1, 2021
Page 2

c:   Mr. Kevin E. Irwin (via email *kirwin@kmklaw.com*)
     Mr. Benjamin G. Stewart (via email *bgstewart@kmklaw.com*)
     Mr. Steven L. Caponi (via email *steven.caponi@klgates.com*)

11090559.1

# EXHIBIT 11

| Control Number Begin | Date Sort_DT | Author | Email From | Email To | Email CC | Document Participants | Description | Privilege Reason |
|---|---|---|---|---|---|---|---|---|
| IST_00000021 | 3/31/2020 20:53 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000348 | 3/31/2020 22:55 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000676 | 4/2/2020 15:04 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediator engagement and tracking time relating to BSA mediation | Mediation Privilege |
| IST_00000648 | 4/2/2020 15:06 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediator engagement and tracking time relating to BSA mediation | Mediation Privilege |
| IST_00000010 | 4/2/2020 15:58 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000262 | 4/6/2020 17:42 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000567 | 4/6/2020 17:52 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];Carmin Reiss [CReiss@resolutionsllc.com];Boelter, Jessica C.K. [jboelter@sidley.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000567.0001 | 4/6/2020 17:52 | | | | | | Attachment to email re BSA mediation | Mediation Privilege |
| IST_00000568 | 4/6/2020 17:52 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000566 | 4/6/2020 17:53 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000309 | 4/6/2020 18:40 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | | Email primarily relating to other matters but referencing BSA mediation | Mediation Privilege |
| IST_00000252 | 4/7/2020 0:49 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Boelter, Jessica C.K. [jboelter@sidley.com] | | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000006 | 4/7/2020 2:00 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490834 7EF-CREISS] | Andolina, Michael C. [mandolina@sidley.com] | | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000298 | 4/7/2020 2:34 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490834 7EF-CREISS] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000084 | 4/7/2020 13:27 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000076 | 4/7/2020 14:40 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Boelter, Jessica C.K. [jboelter@sidley.com];Steven P. McGowan [Steve.McGowan@scouting.org] [Steve.McGowan@scouting.org];Carmin Reiss [CReiss@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Monica Blacker [monica@baxadvisorsllc.com] [monica@baxadvisorsllc.com] | | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000565 | 4/7/2020 14:51 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000565.0001 | 4/7/2020 14:51 | greimann | | | | | Attachment to email re BSA mediation | Mediation Privilege |
| IST_00000002 | 4/7/2020 15:25 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490834 7EF-CREISS] | Andolina, Michael C. [mandolina@sidley.com] | | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000306 | 4/7/2020 15:27 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | | Email re mediator's call notes from 4/7/2020 call | Mediation Privilege |
| IST_00000306.0001 | 4/7/2020 15:27 | | | | | E. Green C. Reiss F. Kurdi M. Andolina J. Boelter | Mediator's call notes from 4/7/2020 call | Mediation Privilege |
| IST_00000570 | 4/7/2020 15:49 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | | Email re BSA mediation | Mediation Privilege |

| ID | Date | From | From (email) | To | CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000569 | 4/7/2020 16:19 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Andolina, Michael C. [mandolina@sidley.com];Carmin Reiss [CReiss@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000639 | 4/7/2020 16:24 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi | | Email re mediator's call notes from 4/7/2020 call | Mediation Privilege |
| IST_00000571 | 4/7/2020 16:25 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];Carmin Reiss [CReiss@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000451 | 4/7/2020 18:17 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | [jboelter@sidley.com];Carmin Reiss [CReiss@resolutionsllc.com];Steve.McGowan@scouting.org;Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];monica@baadvisorsllc.com | | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000026 | 4/8/2020 18:07 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000042 | 4/8/2020 18:07 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000353 | 4/8/2020 18:12 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000352 | 4/8/2020 18:30 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000388 | 4/8/2020 18:30 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediator engagement | Mediation Privilege |
| IST_00000040 | 4/10/2020 20:22 | James Stang | James Stang [jstang@pszjlaw.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000039 | 4/10/2020 20:23 | James Stang | James Stang [jstang@pszjlaw.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000387 | 4/10/2020 20:32 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | James Stang [jstang@pszjlaw.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000386 | 4/10/2020 21:14 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | James Stang [jstang@pszjlaw.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000241 | 4/10/2020 22:55 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian@commonwealthmediation.com;Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000679 | 4/11/2020 23:22 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [carmin.reiss@gmail.com] | | Email re technical needs for BSA mediation | Mediation Privilege |
| IST_00000652 | 4/11/2020 23:53 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [carmin.reiss@gmail.com] | Email re technical needs for BSA mediation | Mediation Privilege |
| IST_00000653 | 4/12/2020 1:53 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [carmin.reiss@gmail.com] | Email re technical needs for BSA mediation | Mediation Privilege |
| IST_00000531 | 4/12/2020 14:31 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Brian@commonwealthmediation.com;Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000531.0001 | 4/12/2020 14:31 | US Trustee Program | | | | Attachment to email re BSA mediation | Mediation Privilege |
| IST_00000001 | 4/12/2020 15:58 | Carmin Reiss | | | C. Reiss E. Green F. Kurdi P. Finn B. Mone | Mediator's call notes from 4/12/2020 call | Mediation Privilege |
| IST_00000307 | 4/12/2020 15:59 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re mediator's call notes from 4/12/2020 call | Mediation Privilege |
| IST_00000307.0001 | 4/12/2020 15:59 | Carmin Reiss | | | C. Reiss E. Green F. Kurdi P. Finn B. Mone | Mediator's call notes from 4/12/2020 call | Mediation Privilege |

| Bates | Date | From | From Email | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| IST_00000532 | 4/12/2020 16:02 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000025 | 4/12/2020 16:12 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | James Stang [jstang@pszjlaw.com] | Brian Mone [Brian@commonwealthmediation.com];edgreen@resolutionsllc.com;Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000299 | 4/12/2020 16:23 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000385 | 4/12/2020 16:44 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Paul Finn [PFinn@commonwealthmediation.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000249 | 4/12/2020 16:47 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and tracking time relating to BSA mediation | Mediation Privilege |
| IST_00000251 | 4/12/2020 16:47 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and tracking time relating to BSA mediation | Mediation Privilege |
| IST_00000384 | 4/12/2020 17:00 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000623 | 4/12/2020 18:30 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000024 | 4/12/2020 22:35 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000037 | 4/12/2020 22:35 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000383 | 4/12/2020 22:38 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000350 | 4/12/2020 22:47 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000382 | 4/12/2020 22:47 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Andolina, Michael C. [mandolina@sidley.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000381 | 4/12/2020 22:49 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000258 | 4/13/2020 13:00 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000559 | 4/13/2020 13:36 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000068 | 4/13/2020 13:37 | | | | | | Draft document re BSA mediation order | Mediation Privilege |
| IST_00000070 | 4/13/2020 13:37 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | PFinn@commonwealthmediation.com;Eric D. Green [EricDGreen@resolutionsllc.com] | James Stang (jstang@pszjlaw.com) [jstang@pszjlaw.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000070.0001 | 4/13/2020 13:37 | | | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000558 | 4/13/2020 13:39 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000561 | 4/13/2020 13:39 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000557 | 4/13/2020 13:40 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000556 | 4/13/2020 13:48 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000560 | 4/13/2020 13:48 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000555 | 4/13/2020 13:49 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000562 | 4/13/2020 13:50 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000296 | 4/13/2020 13:52 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation order | Mediation Privilege |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000296.0001 | 4/13/2020 13:52 | | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000313 | 4/13/2020 13:52 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000435 | 4/13/2020 14:01 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];James Stang [jstang@pszjlaw.com] [jstang@pszjlaw.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000277 | 4/13/2020 14:02 | Fouad Kurdi | Fouad Kurdi [fouadkurdi1@gmail.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000622 | 4/13/2020 14:13 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000434 | 4/13/2020 14:14 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];PFinn@commonwealthmediation.com] | James Stang [jstang@pszjlaw.com] [jstang@pszjlaw.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000621 | 4/13/2020 14:40 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000624 | 4/13/2020 14:44 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000261 | 4/13/2020 15:30 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000563 | 4/13/2020 15:32 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000564 | 4/13/2020 15:33 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000293 | 4/13/2020 16:05 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B701272490B347EF-CREISS] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Email re mediator's call notes from 4/12/2020 call | Mediation Privilege |
| IST_00000293.0001 | 4/13/2020 16:05 | Carmin Reiss | | | C. Reiss E. Green F. Kurdi P. Finn B. Mone | Mediator's call notes from 4/12/2020 call | Mediation Privilege |
| IST_00000293.0002 | 4/13/2020 16:05 | | | | | Attachment to email re mediator's call notes from 4/12/2020 call | Mediation Privilege |
| IST_00000284 | 4/13/2020 16:06 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B701272490B347EF-CREISS] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000284.0001 | 4/13/2020 16:06 | | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000284.0002 | 4/13/2020 16:06 | | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000007 | 4/13/2020 16:08 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B701272490B347EF-CREISS] | Fouad Kurdi [fouadkurdi1@gmail.com] | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000433 | 4/13/2020 19:10 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000433.0001 | 4/13/2020 19:10 | JacquelineDePierola | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000433.0002 | 4/13/2020 19:10 | Fouad Kurdi | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000432 | 4/13/2020 19:16 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000436 | 4/13/2020 19:21 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000074 | 4/13/2020 19:33 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000074.0001 | 4/13/2020 19:33 | Fouad Kurdi | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000446 | 4/13/2020 20:37 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |

| ID | Date / Author | From | To | CC | Subject | Privilege |
|---|---|---|---|---|---|---|
| IST_00000447 | 4/13/2020 20:37 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589 0ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000445 | 4/13/2020 20:41 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000444 | 4/13/2020 21:22 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000075 | 4/13/2020 21:26 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | 'mandolina (mandolina@sidley.com)' [mandolina@sidley.com];Boelter, Jessica C.K. [jboelter@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000075.0001 | 4/13/2020 21:26 Fouad Kurdi | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000075.0002 | 4/13/2020 21:26 JacquelineDePierola | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000448 | 4/13/2020 22:39 Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000449 | 4/13/2020 23:08 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000450 | 4/14/2020 0:00 Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Boelter, Jessica C.K. [jboelter@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation order | Mediation Privilege |
| IST_00000065 | 4/14/2020 16:33 Harron, Edwin | Harron, Edwin [eharron@ycst.com] | Kohut, Sara Beth [skohut@ycst.com] | Brady, Robert [RBRADY@ycst.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation and mediator disclosures | Mediation Privilege |
| IST_00000338 | 4/14/2020 18:04 Bradley East | Bradley East [BEast@andrewsthornton.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Lauren Davis [ldavis@andrewsthornton.com];Marco Galindez [marco@andrewsthornton.com];Bradley East [BEast@andrewsthornton.com];Anne Andrews [aa@andrewsthornton.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000079 | 4/14/2020 19:50 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000462 | 4/14/2020 20:13 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000461 | 4/14/2020 21:25 Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000460 | 4/14/2020 21:29 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000463 | 4/14/2020 21:29 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589 0ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Brian Mone [Brian@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000459 | 4/14/2020 21:33 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | Email re BSA mediation | Mediation Privilege |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000242 | 4/14/2020 21:56 Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | | | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000005 | 4/14/2020 22:38 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Brian Mone [Brian@commonwealthmediation.com] | | | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000458 | 4/14/2020 23:29 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000457 | 4/14/2020 23:31 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000533 | 4/14/2020 23:51 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000464 | 4/15/2020 0:18 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | | Email re BSA mediation order | Mediation Privilege |
| IST_00000264 | 4/15/2020 4:06 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000264.0001 | 4/15/2020 4:06 | | | | | Attachment to email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000264.0002 | 4/15/2020 4:06 | | | | | Attachment to email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000250 | 4/15/2020 12:39 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000573 | 4/15/2020 12:40 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000549 | 4/15/2020 13:01 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000580 | 4/15/2020 13:11 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000550 | 4/15/2020 14:07 Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B7012724908347EF-CREISS] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000579 | 4/15/2020 15:11 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000572 | 4/15/2020 15:14 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000578 | 4/15/2020 15:14 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000577 | 4/15/2020 15:15 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re motion practice and possible effects on mediation | Mediation Privilege |

| Bates | Date/Time | From | From Email | To | CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000576 | 4/15/2020 15:17 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com] | Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000575 | 4/15/2020 15:23 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000239 | 4/15/2020 16:36 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B7012724908347EF-CREISS] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000528 | 4/15/2020 16:38 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000527 | 4/15/2020 16:45 | Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000574 | 4/15/2020 17:03 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000581 | 4/15/2020 17:03 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000582 | 4/15/2020 17:04 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re motion practice and possible effects on mediation | Mediation Privilege |
| IST_00000526 | 4/15/2020 17:05 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000525 | 4/15/2020 17:56 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Brian Mone [Brian@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000529 | 4/15/2020 17:56 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B7012724908347EF-CREISS] | Paul Finn [PFinn@commonwealthmediation.com] | Brian Mone [Brian@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000524 | 4/15/2020 18:05 | Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000240 | 4/15/2020 18:19 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Appointment for BSA mediation call | Mediation Privilege |
| IST_00000004 | 4/15/2020 18:23 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D684142B7012724908347EF-CREISS] | Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000523 | 4/15/2020 18:23 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re appointment for BSA mediation call | Mediation Privilege |
| IST_00000530 | 4/15/2020 18:43 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Email re appointment for BSA mediation call and BSA mediation order | Mediation Privilege |
| IST_00000238 | 4/15/2020 22:27 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | PFinn@commonwealthmediation.com;Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000520 | 4/15/2020 23:29 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation and cancellation of 4/16/2020 call | Mediation Privilege |

| ID | Date | From | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000521 | 4/15/2020 23:56 Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 B36C2D6841428701272490B347EF-CREISS] | Paul Finn [PFinn@commonwealthmediation.com] | | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and cancellation of 4/16/2020 call | Mediation Privilege |
| IST_00000522 | 4/16/2020 0:02 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation and cancellation of 4/16/2020 call | Mediation Privilege |
| IST_00000645 | 4/16/2020 13:41 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000668 | 4/16/2020 13:41 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation | Mediation Privilege |
| IST_00000677 | 4/18/2020 18:38 Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];PFinn@comm onwealthmediation.com | | James Stang [jstang@pszjlaw.com] [jstang@pszjlaw.com] | Email re BSA mediation, court-requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000650 | 4/19/2020 12:42 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com] | | | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000051 | 4/19/2020 12:44 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | PFinn@commonwealthmediation.com;Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000408 | 4/19/2020 13:11 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | PFinn@commonwealthmediation.com;Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000294 | 4/19/2020 13:59 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | | | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000407 | 4/19/2020 14:39 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000380 | 4/19/2020 14:57 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Paul Finn [PFinn@commonwealthmediation.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000406 | 4/19/2020 14:57 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000379 | 4/19/2020 14:58 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Paul Finn [PFinn@commonwealthmediation.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000404 | 4/19/2020 14:58 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000405 | 4/19/2020 14:58 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000403 | 4/19/2020 15:01 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000402 | 4/19/2020 15:30 Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Paul Finn [PFinn@commonwealthmediation.com;Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000377 | 4/19/2020 15:34 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com] | | Paul Finn [PFinn@commonwealthmediation.com;Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Appointment for BSA mediator's call | Mediation Privilege |
| IST_00000649 | 4/19/2020 16:21 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000649.0001 | 4/19/2020 16:21 | | | | | Attachment to email re BSA mediation, court requested mediator disclosures relating to BSA mediation, and mediator rates | Mediation Privilege |
| IST_00000271 | 4/19/2020 19:10 Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | | Email re BSA mediation and court requested mediator disclosures relating to BSA mediation | Mediation Privilege |

| Bates | Date | From | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000271.0001 | 4/19/2020 19:10 | Paul Finn | | | | Attachment to email re BSA mediation and court requested mediator disclosures relating to BSA mediation | Mediation Privilege |
| IST_00000611 | 4/19/2020 20:01 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation and notice of appointment of UCC | Mediation Privilege |
| IST_00000611.0001 | 4/19/2020 20:01 | US Trustee Program | | | | Attachment to email re BSA mediation and notice of appointment of UCC | Mediation Privilege |
| IST_00000612 | 4/19/2020 20:05 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation and notice of appointment of OCC counsel | Mediation Privilege |
| IST_00000612.0001 | 4/19/2020 20:05 | | | | | Attachment to email re BSA mediation and notice of appointment of OCC counsel | Mediation Privilege |
| IST_00000270 | 4/19/2020 20:46 | Eric Green | Eric Green [ericdgreen1946@gmail.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and mediation rates | Mediation Privilege |
| IST_00000270.0001 | 4/19/2020 20:46 | Eric D. Green | | | | Attachment to email re BSA mediation and mediation rates | Mediation Privilege |
| IST_00000273 | 4/19/2020 20:57 | Eric Green | Eric Green [ericdgreen1946@gmail.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000273.0001 | 4/19/2020 20:57 | Eric D. Green | | | | Attachment to email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000613 | 4/19/2020 21:35 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric Green [ericdgreen1946@gmail.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000614 | 4/19/2020 22:59 | Eric Green | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000260 | 4/19/2020 23:01 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | PFinn@commonwealthmediation.com;Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and mediation rates | Mediation Privilege |
| IST_00000260.0001 | 4/19/2020 23:01 | Eric D. Green | | | | Attachment to email re BSA mediation and mediation rates | Mediation Privilege |
| IST_00000257 | 4/20/2020 19:36 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | PFinn@commonwealthmediation.com;Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [carmin.reiss@gmail.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000554 | 4/20/2020 19:37 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000315 | 4/20/2020 19:46 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | PFinn@commonwealthmediation.com;Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [carmin.reiss@gmail.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000315.0001 | 4/20/2020 19:46 | Eric D. Green | | | | Attachment to email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000315.0002 | 4/20/2020 19:46 | Eric D. Green | | | | Attachment to email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000601 | 4/21/2020 2:39 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000314 | 4/21/2020 15:30 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000316 | 4/21/2020 17:05 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |

| IST_00000600 | 4/21/2020 17:26 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000602 | 4/21/2020 17:27 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000651 | 4/21/2020 17:35 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];PFinn@commonwealthmediation.com | James Stang [jstang@pszjlaw.com] | | Email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000651.0001 | 4/21/2020 17:35 | Eric D. Green | | | | | Attachment to email re BSA mediation, court requested mediation disclosures, and mediation rates | Mediation Privilege |
| IST_00000237 | 4/22/2020 16:08 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Andolina, Michael C. [mandolina@sidley.com];James Stang [jstang@pszjlaw.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000237.0001 | 4/22/2020 16:08 | Paul Finn | | | | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000518 | 4/22/2020 16:12 | Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Paul Finn [PFinn@commonwealthmediation.com] | Andolina, Michael C. [mandolina@sidley.com];James Stang [jstang@pszjlaw.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000519 | 4/22/2020 16:13 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Brian Mone [Brian@commonwealthmediation.com];Paul Finn [PFinn@commonwealthmediation.com] | James Stang [jstang@pszjlaw.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000259 | 4/22/2020 17:13 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | PFinn@commonwealthmediation.com;Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000603 | 4/22/2020 17:24 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000603.0001 | 4/22/2020 17:24 | | | | | | Attachment to email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000082 | 4/22/2020 19:07 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000082.0001 | 4/22/2020 19:07 | Eric D. Green | | | | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000469 | 4/22/2020 19:14 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000469.0001 | 4/22/2020 19:14 | Eric D. Green | | | | | Attachment to email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000468 | 4/22/2020 19:18 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000468.0001 | 4/22/2020 19:18 | Eric D. Green | | | | | Attachment to email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000470 | 4/22/2020 19:20 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000499 | 4/22/2020 19:26 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];PFinn@commonwealthmediation.com | James Stang [jstang@pszjlaw.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000499.0001 | 4/22/2020 19:26 | Eric D. Green | | | | | Attachment to email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000288 | 4/23/2020 16:06 | James Stang | James Stang [jstang@pszjlaw.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000583 | 4/23/2020 16:08 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589 0ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | James Stang [jstang@pszjlaw.com] | Paul Finn [PFinn@commonwealthmediation.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000584 | 4/23/2020 16:13 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | James Stang [jstang@pszjlaw.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000318 | 4/23/2020 16:15 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | James Stang [jstang@pszjlaw.com];Andolina, Michael C. [mandolina@sidley.com] | Brian Mone [Brian@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |

| ID | Date | From | From Email | To | CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000253 | 4/26/2020 2:04 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000253.0001 | 4/26/2020 2:04 | GReimann | | | | Attachment to email re hearing on motion practice | Mediation Privilege |
| IST_00000669 | 4/27/2020 18:04 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000077 | 4/29/2020 2:50 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Mediator email re motion practice | Mediation Privilege |
| IST_00000077.0001 | 4/29/2020 2:50 | | | | | Attachment to Mediator email re motion practice | Mediation Privilege |
| IST_00000452 | 4/29/2020 17:45 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000453 | 4/30/2020 1:29 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000599 | 4/30/2020 17:29 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Harron, Edwin [eharron@ycst.com] | Eden, Lisa [leden@ycst.com];Cathy Kern [Cathy@resolutionsllc.com];Patton, James [jpatton@ycst.com];Zieg, Sharon [SZIEG@ycst.com];Forbes, Juliana [JForbes@ycst.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000035 | 4/30/2020 18:39 | Harron, Edwin | Harron, Edwin [eharron@ycst.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000375 | 4/30/2020 18:40 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Harron, Edwin [eharron@ycst.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000374 | 4/30/2020 18:46 | Harron, Edwin | Harron, Edwin [eharron@ycst.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Eric D. | Cathy Kern [Cathy@resolutionsllc.com];Cathcart, Casey [ccathcart@ycst.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000373 | 4/30/2020 19:43 | Cathcart, Casey | Cathcart, Casey [ccathcart@ycst.com] | Harron, Edwin [eharron@ycst.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000373.0001 | 4/30/2020 19:43 | | | | | Attachment to email re hearing on motion practice | Mediation Privilege |
| IST_00000285 | 4/30/2020 22:54 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re motion practice | Mediation Privilege |
| IST_00000285.0001 | 4/30/2020 22:54 | | | | | Attachment to email re motion practice | Mediation Privilege |
| IST_00000285.0002 | 4/30/2020 22:54 | | | | | Attachment to email re motion practice | Mediation Privilege |
| IST_00000034 | 5/1/2020 19:50 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000371 | 5/1/2020 19:51 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000234 | 5/4/2020 14:35 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000512 | 5/4/2020 14:36 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000517 | 5/4/2020 15:55 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490B347EF-CREISS] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re hearing on motion practice | Mediation Privilege |
| IST_00000646 | 5/4/2020 22:59 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000033 | 5/5/2020 1:04 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [carmin.reiss@gmail.com] | Email re BSA mediation, hearing on motion practice, and mediation rates | Mediation Privilege |
| IST_00000370 | 5/5/2020 1:30 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, hearing on motion practice, and mediation rates | Mediation Privilege |
| IST_00000369 | 5/5/2020 1:36 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re BSA mediation, hearing on motion practice, and mediation rates | Mediation Privilege |

| ID | Date | From | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000368 | 5/5/2020 2:06 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re BSA mediation, hearing on motion practice, and mediation rates | Mediation Privilege |
| IST_00000673 | 5/5/2020 17:03 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email briefly mentioning discussion of BSA mediation status | Mediation Privilege |
| IST_00000254 | 5/7/2020 1:52 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000011 | 5/7/2020 16:24 Molton, David J. | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000266 | 5/12/2020 3:14 CourtCall | CourtCall [response@courtcall.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re hearing on motion practice | Mediation Privilege |
| IST_00000266.0001 | 5/12/2020 3:14 | | | | | Attachment to email re hearing on motion practice | Mediation Privilege |
| IST_00000305 | 5/13/2020 12:42 Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Brian Mone [Brian@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation and mediator agreements | Mediation Privilege |
| IST_00000637 | 5/13/2020 12:48 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Andolina, Michael C. [mandolina@sidley.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation and mediator agreements | Mediation Privilege |
| IST_00000255 | 5/13/2020 12:50 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Andolina, Michael C. [mandolina@sidley.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [carmin.reiss@gmail.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re BSA mediation and mediator agreements | Mediation Privilege |
| IST_00000636 | 5/13/2020 13:05 Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation order and mediator agreements | Mediation Privilege |
| IST_00000636.0001 | 5/13/2020 13:05 | | | | | Attachment to email re BSA mediation order | Mediation Privilege |
| IST_00000635 | 5/13/2020 13:27 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Andolina, Michael C. [mandolina@sidley.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation order and mediator agreements | Mediation Privilege |
| IST_00000552 | 5/13/2020 13:28 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [carmin.reiss@gmail.com] | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000272 | 5/13/2020 13:52 LSK | | | | | Resolutions, LLC mediation agreement draft | Mediation Privilege |
| IST_00000274 | 5/13/2020 13:53 Rentex | | | | | Resolutions, LLC mediation agreement draft | Mediation Privilege |
| IST_00000275 | 5/13/2020 13:56 LSK | | | | | Resolutions, LLC mediation agreement draft | Mediation Privilege |
| IST_00000551 | 5/13/2020 13:56 Carmin Reiss | Carmin Reiss [carmin.reiss@gmail.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000048 | 5/13/2020 14:01 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000048.0001 | 5/13/2020 14:01 LSK | | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000048.0002 | 5/13/2020 14:01 LSK | | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000048.0003 | 5/13/2020 14:01 Rentex | | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000048.0004 | 5/13/2020 14:01 LSK | | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000366 | 5/13/2020 14:15 Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000365 | 5/13/2020 14:33 Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000401 | 5/13/2020 14:33 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000312 | 5/13/2020 14:39 LSK | | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |

| ID | Date/Time | Author | From | To | CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000364 | 5/13/2020 14:44 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000364.0001 | 5/13/2020 14:44 | LSK | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000363 | 5/13/2020 16:24 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000362 | 5/13/2020 16:26 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000638 | 5/13/2020 16:38 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com] | Brian Mone [Brian@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000638.0001 | 5/13/2020 16:38 | LSK | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000638.0002 | 5/13/2020 16:38 | | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000638.0003 | 5/13/2020 16:38 | Rentex | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000638.0004 | 5/13/2020 16:38 | LSK | | | | Attachment to email re BSA mediation, mediator agreements, and fee schedule | Mediation Privilege |
| IST_00000058 | 5/14/2020 5:07 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [Creiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation and motion practice | Mediation Privilege |
| IST_00000058.0001 | 5/14/2020 5:07 | | | | | Attachment to email re BSA mediation and motion practice | Mediation Privilege |
| IST_00000420 | 5/14/2020 12:30 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39580ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and motion practice | Mediation Privilege |
| IST_00000421 | 5/14/2020 12:30 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and motion practrice | Mediation Privilege |
| IST_00000422 | 5/14/2020 14:42 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and motion practice | Mediation Privilege |
| IST_00000047 | 5/14/2020 17:16 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000399 | 5/14/2020 18:06 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000399.0001 | 5/14/2020 18:06 | | | | | Attachment to email re BSA mediation | Mediation Privilege |
| IST_00000398 | 5/15/2020 3:22 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |
| IST_00000397 | 5/15/2020 14:38 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re BSA mediation | Mediation Privilege |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| IST_00000057 | 5/15/2020 19:41 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Paul Finn [PFinn@commonwealthmediation.com] | | | Email re motion practice | Mediation Privilege |
| IST_00000057.0001 | 5/15/2020 19:41 | | | | | | Attachment to email re motion practice | Mediation Privilege |
| IST_00000057.0002 | 5/15/2020 19:41 | | | | | | Attachment to email re motion practice | Mediation Privilege |
| IST_00000063 | 5/15/2020 19:47 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Paul Finn [PFinn@commonwealthmediation.com] | | | Email re motion practice | Mediation Privilege |
| IST_00000063.0001 | 5/15/2020 19:47 | | | | | | Attachment to email re motion practice | Mediation Privilege |
| IST_00000063.0002 | 5/15/2020 19:47 | | | | | | Attachment to email re motion practice | Mediation Privilege |
| IST_00000425 | 5/15/2020 20:25 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | | Email re motion practice | Mediation Privilege |
| IST_00000426 | 5/15/2020 20:51 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Paul Finn [PFinn@commonwealthmediation.com] | | | Email re motion practice | Mediation Privilege |
| IST_00000071 | 5/16/2020 2:12 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | | Email re motion practice and complaint | Mediation Privilege |
| IST_00000071.0001 | 5/16/2020 2:12 | | | | | | Attachment to email re motion practice and complaint | Mediation Privilege |
| IST_00000071.0002 | 5/16/2020 2:12 | | | | | | Attachment to email re motion practice and complaint | Mediation Privilege |
| IST_00000071.0003 | 5/16/2020 2:12 | | | | | | Attachment to email re motion practice and complaint | Mediation Privilege |
| IST_00000243 | 5/17/2020 2:00 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation and court requeted mediation disclosures | Mediation Privilege |
| IST_00000534 | 5/17/2020 2:05 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000535 | 5/17/2020 3:03 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000235 | 5/18/2020 12:12 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490B347EF-CREISS] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re hearing on objections to mediation order | Mediation Privilege |
| IST_00000514 | 5/18/2020 13:47 | Fouad Kurdi | | Carmin Reiss [CReiss@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re hearing on objections to mediation order | Mediation Privilege |
| IST_00000513 | 5/18/2020 15:14 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email re hearing on objections to mediation order | Mediation Privilege |
| IST_00000515 | 5/18/2020 15:14 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email re hearing on objections to mediation order | Mediation Privilege |
| IST_00000516 | 5/18/2020 15:16 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email re hearing on objections to mediation order | Mediation Privilege |
| IST_00000053 | 5/19/2020 3:07 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000412 | 5/19/2020 3:10 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000414 | 5/19/2020 3:10 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000670 | 5/19/2020 17:07 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | [SherryKlander@commonwealthmediation.com ;]Jon Prouty [JonProuty@commonwealthmediation.com;D onna Orlando [DonnaOrlando@commonwealthmediation.co m] | | Email re BSA mediation and 2014(a) mediation disclosures | Mediation Privilege |
| IST_00000411 | 5/19/2020 17:53 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000413 | 5/19/2020 17:53 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000415 | 5/19/2020 17:56 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000028 | 5/19/2020 17:57 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and court requsted mediation disclosures | Mediation Privilege |
| IST_00000046 | 5/19/2020 17:57 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000027 | 5/19/2020 18:17 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Michael C. Andolina [mandolina@sidley.com] | | | Email re BSA mediation | Mediation Privilege |
| IST_00000355 | 5/19/2020 20:26 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000016 | 5/19/2020 20:27 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | PFinn@commonwealthmediation.com;timg@t hegallaghergroup.com;Eric D. Green [EricDGreen@resolutionsllc.com] | Boelter, Jessica C.A. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com] [dabbott@mnat.com];Remming, Andrew [ARemming@MNAT.com];Moats, Eric [emoats@MNAT.com];Topper, Paige [ptopper@MNAT.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];'joneill@pszjlaw.com' [joneill@pszjlaw.com;'rringer@kramerlevin.co m' [rringer@kramerlevin.com];'jsharret@kramerle vin.com' [jsharret@kramerlevin.com];Wasson, Megan [MWasson@KRAMERLEVIN.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];'Zieg, Sharon [SZIEG@ycst.com]' [SZIEG@ycst.com];Mason, Richard G. [RGMason@WLRK.com];Mayer, Douglas K. [DKMayer@WLRK.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Schiavoni, Tancred | | Email re BSA mediation and requesting info for 2014(a) disclosures | Mediation Privilege |
| IST_00000016.0001 | 5/19/2020 20:27 | | | | | | Attachment to email re BSA mediation and requesting info for 2014(a) disclosures | Mediation Privilege |
| IST_00000354 | 5/19/2020 20:31 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and 2014(a) mediation disclosures | Mediation Privilege |
| IST_00000335 | 5/19/2020 20:32 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Boelter, Jessica C. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com] | | Email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000335.0001 | 5/19/2020 20:32 | | | | | | Attachment to email re BSA mediation and 2014(a) disclosures | Mediation Privilege |
| IST_00000086 | 5/20/2020 4:32 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000086.0001 | 5/20/2020 4:32 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000479 | 5/20/2020 5:18 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000495 | 5/20/2020 5:23 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000478 | 5/20/2020 12:15 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000494 | 5/20/2020 12:15 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000477 | 5/20/2020 14:37 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000493 | 5/20/2020 14:37 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490834?EF-CREISS] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000492 | 5/20/2020 14:44 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000476 | 5/20/2020 14:45 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000491 | 5/20/2020 14:45 | Carmin Reiss | Carmin Reiss [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=FD71 836C2D6841428701272490834?EF-CREISS] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000490 | 5/20/2020 15:04 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000489 | 5/20/2020 15:45 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000488 | 5/20/2020 15:47 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000487 | 5/20/2020 15:48 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000487.0001 | 5/20/2020 15:48 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000486 | 5/20/2020 15:52 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000485 | 5/20/2020 15:55 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000311 | 5/20/2020 17:18 | Cathy Kern | Cathy Kern [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=B56F 2801D516444883CD20B270618AC0-CATHY] | Cathcart, Casey [ccathcart@ycst.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |

| ID | Date/Time | Author | Author Email | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| IST_00000334 | 5/20/2020 17:49 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | PFinn@commonwealthmediation.com;timg@thegallaghergroup.com;Eric D. Green [EricDGreen@resolutionsllc.com] | boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com] [dabbott@mnat.com];Remming, Andrew [ARemming@MNAT.com];Moats, Eric [emoats@MNAT.com];Topper, Paige [ptopper@MNAT.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];'joneill@pszjlaw.com' [joneill@pszjlaw.com];'rringer@kramerlevin.com' [rringer@kramerlevin.com];'jsharret@kramerlevin.com' [jsharret@kramerlevin.com];Wasson, Megan [MWasson@KRAMERLEVIN.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];'Zieg, Sharon (SZIEG@ycst.com)' [SZIEG@ycst.com];Mason, Richard G. [RGMason@WLRK.com];Mayer, Douglas K. [DKMayer@WLRK.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Schiavoni, Tancred | | Email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000334.0001 | 5/20/2020 17:49 | | | | | | Attachment to email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000334.0002 | 5/20/2020 17:49 | | | | | | Attachment to email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000334.0003 | 5/20/2020 17:49 | | | | | | Attachment to email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000334.0004 | 5/20/2020 17:49 | | | | | | Attachment to email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000334.0005 | 5/20/2020 17:49 | | | | | | Attachment to email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000334.0006 | 5/20/2020 17:49 | | | | | | Attachment to email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000333 | 5/20/2020 18:19 | Schiavoni, Tancred | Schiavoni, Tancred [tschiavoni@omm.com] | Linder, Matthew [mlinder@sidley.com];PFinn@commonwealth mediation.com;timg@thegallaghergroup.com;Eric D. Green [EricDGreen@resolutionsllc.com] | boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com] [dabbott@mnat.com];Remming, Andrew [ARemming@MNAT.com];Moats, Eric [emoats@MNAT.com];Topper, Paige [ptopper@MNAT.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];'joneill@pszjlaw.com' [joneill@pszjlaw.com];'rringer@kramerlevin.com' [jsharret@kramerlevin.com];Wasson, Megan [MWasson@KRAMERLEVIN.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];'Zieg, Sharon (SZIEG@ycst.com)' [SZIEG@ycst.com];Mason, Richard G. [RGMason@WLRK.com];Mayer, Douglas K. [DKMayer@WLRK.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Kirschenbaum, | | Email re BSA mediation and Rule 2014(a) disclosures | Mediation Privilege |
| IST_00000484 | 5/21/2020 2:24 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000484.0001 | 5/21/2020 2:24 | Fouad Kurdi | | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000483 | 5/21/2020 2:28 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |

| Bates | Date | From | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000483.0001 | 5/21/2020 2:28 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000475 | 5/21/2020 2:54 | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000482 | 5/21/2020 2:54 | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000481 | 5/21/2020 2:57 | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000480 | 5/21/2020 17:50 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000480.0001 | 5/21/2020 17:50 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000496 | 5/21/2020 18:22 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000059 | 5/21/2020 18:25 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000059.0001 | 5/21/2020 18:25 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000423 | 5/21/2020 20:21 | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000591 | 5/22/2020 2:12 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000591.0001 | 5/22/2020 2:12 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000590 | 5/22/2020 14:51 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000590.0001 | 5/22/2020 14:51 | Fouad Kurdi | | | | Attachment to email re draft Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000589 | 5/22/2020 15:27 | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000588 | 5/22/2020 15:30 | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000587 | 5/22/2020 16:33 | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000586 | 5/22/2020 17:03 | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000585 | 5/22/2020 17:11 | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000592 | 5/22/2020 17:11 | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000593 | 5/22/2020 17:20 | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re draft Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |

| ID | Date | From | From (email) | To | CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000069 | 5/22/2020 20:26 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | MLINDER@SIDLEY.COM;'mandolina [mandolina@sidley.com]' [mandolina@sidley.com];Boelter, Jessica C.K. [jboelter@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000069.0001 | 5/22/2020 20:26 | Fouad Kurdi | | | | Attachment to email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000069.0002 | 5/22/2020 20:26 | | | | | Attachment to email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000430 | 5/22/2020 23:59 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];MLINDER@SIDLEY.COM;'mandolina [mandolina@sidley.com]' [mandolina@sidley.com];Boelter, Jessica C.K. [jboelter@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000431 | 5/23/2020 0:31 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | Paul Finn [PFinn@commonwealthmediation.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Andolina, Michael C. [mandolina@sidley.com];Boelter, Jessica C.K. [jboelter@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Attachment to email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000332 | 5/26/2020 2:58 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | PFinn@commonwealthmediation.com;timg@thegallaghergroup.com;Eric D. Green [EricDGreen@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];Grayeb, Trevor M. [tgrayeb@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com];Remming, Andrew [ARemming@MNAT.com];Moats, Eric [emoats@MNAT.com];Topper, Paige [ptopper@MNAT.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];'joneill@pszjlaw.com' [joneill@pszjlaw.com];'rringer@kramerlevin.com' [rringer@kramerlevin.com];'jsharret@kramerlevin.com' [jsharret@kramerlevin.com];Wasson, Megan [MWasson@KRAMERLEVIN.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];'Zieg, Sharon [SZIEG@ycst.com]' [SZIEG@ycst.com];Mason, Richard G. [RGMason@WLRK.com];Mayer, Douglas K. [DKMayer@WLRK.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Schiavoni, | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000332.0001 | 5/26/2020 2:58 | | | | | Attachment to email re BSA mediation and court requested mediation disclosures | Mediation Privilege |

| ID | Date | From | From (detail) | To | CC | | Description | Privilege |
|---|---|---|---|---|---|---|---|---|
| IST_00000331 | 5/26/2020 15:44 | Timothy Gallagher | Timothy Gallagher [timg@thegallaghergroup.com] | Linder, Matthew [mlinder@sidley.com];PFinn@commonwealth mediation.com;Eric D. Green [EricDGreen@resolutionsllc.com] | [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];Grayeb, Trevor M. [tgrayeb@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com];Remming, Andrew [ARemming@MNAT.com];Moats, Eric [emoats@MNAT.com];Topper, Paige [ptopper@MNAT.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];'joneill@pszjlaw.com' [joneill@pszjlaw.com];'rringer@kramerlevin.co m' [rringer@kramerlevin.com];'jsharret@kramerle vin.com' [jsharret@kramerlevin.com];Wasson, Megan [MWasson@KRAMERLEVIN.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];Zieg, Sharon [SZIEG@ycst.com]' [SZIEG@ycst.com];Mason, Richard G. [RGMason@WLRK.com];Mayer, Douglas K. [DKMayer@WLRK.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Schiavoni, | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000295 | 5/26/2020 16:06 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [cathy@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000295.0001 | 5/26/2020 16:06 | | | | | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000330 | 5/26/2020 16:07 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=3958 90ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [CReiss@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |
| IST_00000536 | 5/26/2020 17:26 | Andolina, Michael C. | Andolina, Michael C. [mandolina@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy | Kirschenbaum, Andrew [akirschenbaum@omm.com];'Wadley, Chris' [cwadley@wwmlawyers.com];Panchok-Berry, Janine [jpanchok-berry@omm.com];'Wadley, Chris' [cwadley@wwmlawyers.com];Taylor.Meehan@ clydeco.us;Weinberg, Joshua D. [JWeinberg@goodwin.com];'Lorraine Armenti' [LArmenti@coughlinduffy.com];'Winsberg, Harris B.' [harris.winsberg@troutman.com];'Marshall, Jonathan D.' [jmarshall@choate.com];'Tlacobs@bradleyriley .com' [TIacobs@bradleyriley.com];'rsmethurst@mwe .com' [rsmethurst@mwe.com];'mwarner@mwe.com' [mwarner@mwe.com];'msorem@nicolaidesllp. com' [msorem@nicolaidesllp.com];'Marrkand, Kim' [KVMarrkand@mintz.com];'Gooding, Doug' [dgooding@choate.com];Michael Hrinewski [mhrinewski@coughlinduffy.com];'Shleypak, Igor' [shleypak@fgppr.com];'Gummow, Susan' [sgummow@fgppr.com];Ruggeri, James P. [JRuggeri@goodwin.com];Williams, Abigail W. [AWilliams@goodwin.com];Backus, Michele L. [MBackus@goodwin.com];Roberts, Matthew G.' [Matthew.Roberts@troutman.com];Schiavoni, | Email re request relating to mediation disclosures | Mediation Privilege |
| IST_00000329 | 5/26/2020 17:32 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | | Email re BSA mediation and court requested mediation disclosures | Mediation Privilege |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000537 | 5/27/2020 0:21 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | kirschenbaum, Andrew [akirschenbaum@omm.com];'Wadley, Chris' [cwadley@wwmlawyers.com];Panchok-Berry, Janine [jpanchok-berry@omm.com];'Wadley, Chris' [cwadley@wwmlawyers.com];Taylor.Meehan@clydeco.us;Weinberg, Joshua D. [JWeinberg@goodwin.com];'Lorraine Arment' [LArmenti@coughlinduffy.com];'Winsberg, Harris B.' [harris.winsberg@troutman.com];'Marshall, Jonathan D.' [jmarshall@choate.com];'TJacobs@bradleyriley.com' [TJacobs@bradleyriley.com];'rsmethurst@mwe.com' [rsmethurst@mwe.com];'mwarner@mwe.com' [mwarner@mwe.com];'msorem@nicolaidesllp.com' [msorem@nicolaidesllp.com];'Marrkand, Kim' [KVMarrkand@mintz.com];'Gooding, Doug' [dgooding@choate.com];Michael Hrinewski [mhrinewski@coughlinduffy.com];'Shleypak, Igor' [ishleypak@fgppr.com];'Gummow, Susan' [sgummow@flgppr.com];Ruggeri, James P. [JRuggeri@goodwin.com];Williams, Abigail W. [AWilliams@goodwin.com];Backus, Michele L. [MBackus@goodwin.com];'Roberts, Matthew G.' [Matthew.Roberts2@troutman.com];Schiavoni, | Email re request relating to mediation disclosures | Mediation Privilege |
| IST_00000328 | 5/27/2020 19:40 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | PFinn@commonwealthmediation.com;Eric D. Green [EricDGreen@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];Grayeb, Trevor M. [tgrayeb@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com];Remming, Andrew [ARemming@MNAT.com];Moats, Eric [emoats@MNAT.com];Topper, Paige [ptopper@MNAT.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];'oneill@pszjlaw.com' [joneill@pszjlaw.com];'rringer@kramerlevin.co m' [rringer@kramerlevin.com];'jsharret@kramerle vin.com' [jsharret@kramerlevin.com];Wasson, Megan [MWasson@KRAMERLEVIN.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];Zieg, Sharon [SZIEG@ycst.com];[SZIEG@ycst.com];Mason, Richard G. [RGMason@WLRK.com];Mayer, Douglas K. [DKMayer@WLRK.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Schiavoni, | Email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000328.0001 | 5/27/2020 19:40 | | | | | Attachment to email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |

| Bates | Date | From | From Email | To | CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000327 | 5/27/2020 19:55 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=395890ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Linder, Matthew [mlinder@sidley.com] | Finn[commonwealthmediation.com;Boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];Grayeb, Trevor M. [tgrayeb@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com] [dabbott@mnat.com];Remming, Andrew [ARemming@mnat.com];Moats, Eric [emoats@mnat.com];Topper, Paige [ptopper@mnat.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];James Stang [jstang@pszjlaw.com];Rob Orgel [rorgel@pszjlaw.com];John A. Morris [jmorris@pszjlaw.com];John W. Lucas [jlucas@pszjlaw.com];Linda Cantor [lcantor@pszjlaw.com];jonell@pszjlaw.com;rringer@kramerlevin.com;jsharret@kramerlevin.com;Wasson, Megan [MWasson@kramerlevin.com];Brady, Robert [RBRADY@ycst.com];Harron, Edwin [eharron@ycst.com];Zieg, Sharon [SZIEG@ycst.com] [SZIEG@ycst.com];Mason, Richard G. [RGMason@wlrk.com];Mayer, Douglas K. [DKMayer@wlrk.com];Celentino, Joseph C. [JCCelentino@wlrk.com];Schiavoni, Tancred [tschiavoni@omm.com];Kirschenbaum, Andrew | Email re Eric Green and Paul Finn Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000336 | 5/28/2020 14:04 | Linder, Matthew | Linder, Matthew [mlinder@sidley.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];Grayeb, Trevor M. [tgrayeb@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com] [dabbott@mnat.com];Remming, Andrew [ARemming@mnat.com];Moats, Eric [emoats@mnat.com];Topper, Paige [ptopper@mnat.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern | Email re Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000336.0001 | 5/28/2020 14:04 | | | | | Attachment to email re Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000336.0002 | 5/28/2020 14:04 | | | | | Attachment to email re Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000337 | 5/28/2020 15:21 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Linder, Matthew [mlinder@sidley.com] | Boelter, Jessica C.K. [jboelter@sidley.com];Andolina, Michael C. [mandolina@sidley.com];Labuda, Jr., Thomas [tlabuda@sidley.com];Basaria, Karim [kbasaria@sidley.com];Warner, Blair [blair.warner@sidley.com];Grayeb, Trevor M. [tgrayeb@sidley.com];DEREK C. ABBOTT [dabbott@mnat.com] [dabbott@mnat.com];Remming, Andrew [ARemming@mnat.com];Moats, Eric [emoats@mnat.com];Topper, Paige [ptopper@mnat.com];Martin, Ernest [Ernest.Martin@haynesboone.com];Azer, Adrian [Adrian.Azer@haynesboone.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern | Email re Eric Green Declaration relating to mediation disclosures | Mediation Privilege |
| IST_00000087 | 5/28/2020 20:30 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [CKern@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [BMone@commonwealthmediation.com];Paul Finn [PFinn@commonwealthmediation.com] | | Email re Eric Green, Paul Finn, and Tim Gallagher Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000087.0001 | 5/28/2020 20:30 | | | | | Attachment to email re Eric Green, Paul Finn, and Tim Gallagher Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000087.0002 | 5/28/2020 20:30 | | | | | Attachment to email re Eric Green, Paul Finn, and Tim Gallagher Declarations relating to mediation disclosures | Mediation Privilege |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000087.0003 | 5/28/2020 20:30 | | | | | Attachment to email re Eric Green, Paul Finn, and Tim Gallagher Declarations relating to mediation disclosures | Mediation Privilege |
| IST_00000497 | 5/28/2020 21:10 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re Eric Green, Paul Finn, and Tim Gallagher Declarations relating to mediation disclosures and hearing on retention application | Mediation Privilege |
| IST_00000498 | 5/28/2020 21:30 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re Eric Green, Paul Finn, and Tim Gallagher Declarations relating to mediation disclosures and hearing on retention application | Mediation Privilege |
| IST_00000056 | 5/29/2020 18:24 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re Court ruling on motion | Mediation Privilege |
| IST_00000056.0001 | 5/29/2020 18:24 | Judge Silverstein | | | | Attachment to email re Court ruling on motion | Mediation Privilege |
| IST_00000418 | 5/29/2020 19:15 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re Court ruling on retention application | Mediation Privilege |
| IST_00000417 | 5/29/2020 19:25 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re Court ruling on retention application | Mediation Privilege |
| IST_00000304 | 6/1/2020 14:18 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re Court ruling on retention application and unrelated note about profile on Steve Berman | Mediation Privilege |
| IST_00000304.0001 | 6/1/2020 14:18 | | | | | Attachment to email re Court ruling on retention application and unrelated note about profile on Steve Berman | Mediation Privilege |
| IST_00000304.0002 | 6/1/2020 14:18 | | | | | Attachment to email re Court ruling on retention application and unrelated note about profile on Steve Berman | Mediation Privilege |
| IST_00000416 | 6/1/2020 15:41 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and appointment of mediators | Mediation Privilege |
| IST_00000419 | 6/1/2020 15:53 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and appointment of mediators | Mediation Privilege |
| IST_00000064 | 6/3/2020 2:39 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | | Email re mediator objection filing | Mediation Privilege |
| IST_00000064.0001 | 6/3/2020 2:39 | | | | | Attachment to email re  mediator objection filing | Mediation Privilege |
| IST_00000064.0002 | 6/3/2020 2:39 | | | | | Attachment to email re mediator objection filing | Mediation Privilege |
| IST_00000052 | 6/3/2020 14:22 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589 0ACC7F7407CB4AA6FABC3AE4D62- ERICDGREEN] | PFinn@commonwealthmediation.com | Carmin Reiss [carmin.reiss@gmail.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re BSA mediation and insurer objections to mediators | Mediation Privilege |
| IST_00000276 | 6/3/2020 16:32 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re BSA mediation communications | Mediation Privilege |
| IST_00000410 | 6/3/2020 16:55 | Brian Mone | Brian Mone [Brian@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Carmin Reiss [carmin.reiss@gmail.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re BSA mediation and insurer objections to mediators | Mediation Privilege |
| IST_00000267 | 6/3/2020 20:53 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re BSA mediation communications | Mediation Privilege |

| | | | | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian | | | |
|---|---|---|---|---|---|---|---|
| IST_00000066 | 6/4/2020 5:48 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Mone [Brian@commonwealthmediation.com] | | Email re Feinberg declaration | Mediation Privilege |
| IST_00000066.0001 | 6/4/2020 5:48 | | | | | Attachment to email re Feinberg declaration | Mediation Privilege |
| IST_00000066.0002 | 6/4/2020 5:48 | | | | | Attachment to email re Feinberg declaration | Mediation Privilege |
| IST_00000427 | 6/4/2020 11:24 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re Feinberg declaration | Mediation Privilege |
| IST_00000428 | 6/4/2020 11:24 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589 0ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Paul Finn [PFinn@commonwealthmediation.com];Brian Mone [Brian@commonwealthmediation.com] | Email re Feinberg declaration | Mediation Privilege |
| IST_00000429 | 6/4/2020 12:03 | Paul Finn | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re Feinberg declaration | Mediation Privilege |
| IST_00000619 | 6/5/2020 21:54 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation and mediator appointment | Mediation Privilege |
| IST_00000619.0001 | 6/5/2020 21:54 | | | | | Attachment to email re BSA mediation and mediator appointment | Mediation Privilege |
| IST_00000620 | 6/7/2020 0:44 | Molton, David J. | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Email re BSA mediation and mediator appointment | Mediation Privilege |
| IST_00000440 | 6/7/2020 1:01 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Paul Finn [PFinn@commonwealthmediation.com];Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Brian Mone [Brian@commonwealthmediation.com] | Email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000440.0001 | 6/7/2020 1:01 | GReimann | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000440.0002 | 6/7/2020 1:01 | | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000440.0003 | 6/7/2020 1:01 | ccath | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000440.0004 | 6/7/2020 1:01 | | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000297 | 6/7/2020 1:04 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000297.0001 | 6/7/2020 1:04 | GReimann | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000297.0002 | 6/7/2020 1:04 | | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000297.0003 | 6/7/2020 1:04 | ccath | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000297.0004 | 6/7/2020 1:04 | | | | | Attachment to email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000439 | 6/7/2020 1:58 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000442 | 6/7/2020 1:58 | Eric D. Green | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589 0ACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000441 | 6/7/2020 2:07 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000236 | 6/8/2020 14:11 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000443 | 6/8/2020 14:54 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re filings in BSA case relating to mediation motion | Mediation Privilege |
| IST_00000437 | 6/8/2020 15:32 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000083 | 6/8/2020 20:07 | Molton, David J. | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000472 | 6/9/2020 1:56 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000472.0001 | 6/9/2020 1:56 | | | | | Attachment to email re hearing in BSA case relating to mediators | Mediation Privilege |

| Bates | Date | From | To | CC | BCC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| IST_00000473 | 6/9/2020 1:56 | Eric D. Green [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=39589OACC7F7407CB4AA6FABC3AE4D62-ERICDGREEN] | Molton, David J. [DMolton@brownrudnick.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000473.0001 | 6/9/2020 1:56 | | | | | Attachment to email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000471 | 6/9/2020 11:51 | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000474 | 6/9/2020 12:41 | Eric D. Green | Molton, David J. [DMolton@brownrudnick.com] | Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000474.0001 | 6/9/2020 12:41 | | | | | Attachment to email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000050 | 6/13/2020 17:39 | Paul Finn [PFinn@commonwealthmediation.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | | Email re hearing in BSA case relating to mediators | Mediation Privilege |
| IST_00000233 | 6/23/2020 19:15 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re internal organization for files relating to BSA mediation | Mediation Privilege |
| IST_00000510 | 6/23/2020 19:16 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Email re internal organization for files relating to BSA mediation | Mediation Privilege |
| IST_00000511 | 6/23/2020 19:17 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | | Email re internal organization for files relating to BSA mediation | Mediation Privilege |
| IST_00000098 | 2/3/2021 23:29 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Philip T. Edwards [pedwards@msllaw.com] | Rush, Michael B. [rushm@gilbertlegal.com];Fouad Kurdi [FKurdi@resolutionsllc.com];David Molton [DMolton@brownrudnick.com];Keleher, Lauren [lkelleher@oag.state.md.us];Anne Andrews [aa@andrewsthornton.com];Quinn, Kami E. [quinnk@gilbertlegal.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000597 | 4/6/2021 19:53 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000596 | 4/6/2021 19:55 | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000595 | 4/6/2021 20:20 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000594 | 4/6/2021 20:23 | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000598 | 4/6/2021 21:48 | Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000023.0003.0001 | 6/17/2021 19:35 | | | | | Attachment to email re BSA mediation materials, including Eric Green Declaration, and mediation disclosures - 4/19/2020 email | Attorney Client Privilege; Mediation Privilege |
| IST_00000023 | 6/17/2021 19:35 | Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | | Email attaching BSA mediation materials, including Eric Green Declaration, and mediation disclosures | Mediation Privilege |
| IST_00000023.0001 | 6/17/2021 19:35 | | | | | Attachment to email re BSA mediation materials, including Eric Green Declaration, and mediation disclosures - Eric Green Declaration | Mediation Privilege |

| | | | | | | |
|---|---|---|---|---|---|---|
| IST_00000023.0002 | 6/17/2021 19:35 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Andolina, Michael C. [mandolina@sidley.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Kirschenbaum, Andrew [akirschenbaum@omm.com];'Wadley, Chris' [cwadley@wwmlawyers.com];Panchok-Berry, Janine [jpanchok-berry@omm.com];'Wadley, Chris' [cwadley@wwmlawyers.com];Taylor.Meehan@clydeco.us;Weinberg, Joshua D. [JWeinberg@goodwin.com];'Lorraine Armenti' [LArmenti@coughlinduffy.com];'Winsberg, Harris B.' [harris.winsberg@troutman.com];'Marshall, Jonathan D.' [jmarshall@choate.com];'TJacobs@bradleyriley.com' [TJacobs@bradleyriley.com];'rsmethurst@mwe.com' [rsmethurst@mwe.com];'mwarner@mwe.com' [mwarner@mwe.com];'msorem@nicolaidesllp.com' [msorem@nicolaidesllp.com];'Marrkand, Kim' [KVMarrkand@mintz.com];'Gooding, Doug' [dgooding@choate.com];Michael Hrinewski [mhrinewski@coughlinduffy.com];'Shleypak, Igor' [ishleypak@fgppr.com];'Gummow, Susan' [sgummow@fgppr.com];Ruggeri, James P. [JRuggeri@goodwin.com];Williams, Abigail W. [AWilliams@goodwin.com];Backus, Michele L. [MBackus@goodwin.com];Roberts, Matthew G.' [Matthew.Roberts2@troutman.com;Schiavoni, | Attachment to email re BSA mediation materials, including Eric Green Declaration, and mediation disclosures - 5/27/2020 email | Mediation Privilege |
| IST_00000023.0003 | 6/17/2021 19:35 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | | Attachment to email re BSA mediation materials, including Eric Green Declaration, and mediation disclosures - 4/19/2020 email | Mediation Privilege |
| IST_00000023.0004 | 6/17/2021 19:35 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Cathcart, Casey [ccathcart@ycst.com] | | Attachment to email re BSA mediation materials, including Eric Green Declaration, and mediation disclosures - 5/20/2020 email | Mediation Privilege |
| IST_00000023.0005 | 6/17/2021 19:35 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | | Attachment to email re BSA mediation materials, including Eric Green Declaration, and mediation disclosures - 5/26/2020 email | Mediation Privilege |
| IST_00000641 | 7/27/2021 17:15 Molton, David J. | Molton, David J. [DMolton@brownrudnick.com] | Cathy Kern [Cathy@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cicero, Gerard T. [GCicero@brownrudnick.com];Dwoskin, Shari I. [SDwoskin@brownrudnick.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000218 | 7/27/2021 17:19 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com] | Cathy Kern [Cathy@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cicero, Gerard T. [GCicero@brownrudnick.com];Dwoskin, Shari I. [SDwoskin@brownrudnick.com] | Email with counsel primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000218.0001 | 7/27/2021 17:19 | | | | Attachment to email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation - logo | Attorney Client Privilege |
| IST_00000218.0002 | 7/27/2021 17:19 | | | | Attachment to email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation - logo | Attorney Client Privilege |
| IST_00000217 | 7/27/2021 17:20 Molton, David J. | Molton, David J. [DMolton@brownrudnick.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cicero, Gerard T. [GCicero@brownrudnick.com];Dwoskin, Shari I. [SDwoskin@brownrudnick.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000215 | 7/27/2021 19:48 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Molton, David J. [DMolton@brownrudnick.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Cicero, Gerard T. [GCicero@brownrudnick.com];Dwoskin, Shari I. [SDwoskin@brownrudnick.com] | Email with counsel on unrelated matter primarily relating to other matters but referencing BSA mediation | Attorney Client Privilege |
| IST_00000672 | 8/4/2021 3:12 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000226 | 8/4/2021 3:17 Cathy Kern | Cathy Kern [Cathy@resolutionsllc.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Work Product |
| IST_00000225 | 8/4/2021 3:27 Eric D. Green | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com] | Fouad Kurdi [FKurdi@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege; Attorney Work Product |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IST_00000228 | 8/4/2021 3:30 | Fouad Kurdi | Fouad Kurdi [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=572AFD21B3424E239173AC06CA7C6FFO-FKURDI] | Eric D. Green [EricDGreen@resolutionsllc.com] | Cathy Kern [Cathy@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege; Attorney Work Product |
| IST_00000281 | 8/4/2021 12:30 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Kevin Irwin [kirwin@kmklaw.com] | Eric D. Green [EricDGreen@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000281.0001 | 8/4/2021 12:30 | | | | | Attachment to email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000279 | 8/4/2021 12:37 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Kevin Irwin [kirwin@kmklaw.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000340 | 8/4/2021 12:40 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Tarr, Stanley B. [Tarr@blankrome.com] | Steven Caponi [steven.caponi@klgates.com];Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000339 | 8/4/2021 12:59 | Fouad Kurdi | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com] | Kevin Irwin [kirwin@kmklaw.com];Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000341 | 8/4/2021 13:08 | Irwin, Kevin E. | Irwin, Kevin E. [KIRWIN@KMKLAW.com] | Fouad Kurdi [FKurdi@resolutionsllc.com] | Carmin Reiss [CReiss@resolutionsllc.com];Eric D. Green [EricDGreen@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000019 | 8/4/2021 13:36 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | steven.caponi@klgates.com | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com] | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000019.0001 | 8/4/2021 13:36 | | | | | Attachment to email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |
| IST_00000287 | 8/4/2021 20:40 | Carmin Reiss | Carmin Reiss [carmin.reiss@gmail.com] | Carmin Reiss [CReiss@resolutionsllc.com] | | Email forwarding 6/3/2020 email re BSA mediation and insurer objections to mediators | Mediation Privilege |
| IST_00000230 | 8/4/2021 21:04 | Fouad Kurdi | Fouad Kurdi [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=572AFD21B3424E239173AC06CA7C6FFO-FKURDI] | Eric D. Green [EricDGreen@resolutionsllc.com];Carmin Reiss [CReiss@resolutionsllc.com];Cathy Kern [Cathy@resolutionsllc.com] | | Email re BSA mediation and tracking time relating to BSA matter and subpoena response | Attorney Work Product |
| IST_00000231 | 8/5/2021 20:20 | Carmin Reiss | Carmin Reiss [CReiss@resolutionsllc.com] | Caponi, Steven L. [Steven.Caponi@klgates.com] | Eric D. Green [EricDGreen@resolutionsllc.com];Fouad Kurdi [FKurdi@resolutionsllc.com];Irwin, Kevin E. [KIRWIN@KMKLAW.com];rrowe@kmklaw.com | Email re retention of attorney to respond to BSA subpoena | Attorney Client Privilege |

# EXHIBIT 12

1

```
1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
2
                                      .    Chapter 11
3    IN RE:                           .
                                      .    Case No. 20-10343 (LSS)
4    BOY SCOUTS OF AMERICA and        .
5    DELAWARE BSA, LLC,               .    Courtroom No. 2
                                      .    824 North Market Street
6                                     .    Wilmington, Delaware 19801
                                      .
7                       Debtors.      .    May 18, 2020
     . . . . . . . . . . . . . . . .       10:00 A.M.
8

9                        TRANSCRIPT OF HEARING
           BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10                 UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12
     For the Debtor:        Derek C. Abbott, Esquire
13                          MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                            1201 North Market Street, 16th Floor
14                          P.O. Box 1347
                            Wilmington, Delaware 19899
15
                            - and -
16
     For the Debtors:       Jessica C. Boelter, Esquire
17                          Michael Andolina, Esquire
                            SIDLEY AUSTIN LLP
18                          787 Seventh Avenue
                            New York, New York 10019
19
                            - and -
20
                            Richard Mason, Esquire
21                          WACHTELL LIPTON ROSEN & KATZ
                            51 West 52nd Street
22                          New York, New York 10019
23
                            - and -
24
                            Shannon Wheatman, Esquire
25                          KINSELLA MEDIA
                            Washington, D.C. 20037
```

```
 1   Audio Operator:          Ginger Mace

 2   Transcription Company:   Reliable
                              1007 N. Orange Street
 3                            Wilmington, Delaware 19801
                              (302)654-8080
 4                            Email:  gmatthews@reliable-co.com

 5
     Proceedings recorded by electronic sound recording;
 6   transcript produced by transcription service.

 7
     APPEARANCES (Continued):
 8
     For the U.S. Trustee:    David Buchbinder, Esquire
 9                            OFFICE OF THE UNITED STATES TRUSTEE
                              844 King Street, Suite 2207
10                            Wilmington, Delaware 19801

11
     For Century Indemnity:   Tancred Schiavoni, Esquire
12                            O'MELVENY
                              7 Times Square
13                            New York, New York 10036

14   For Abuse Survivors:     Paul Mones, Esquire
                              PAUL MONES PC
15                            13101 Washington Boulevard
                              Los Angeles, California 90066
16
     For Interested Parties:  James Stang, Esquire
17                            PACHULSKI STANG ZIEHL JONES LLP
                              919 North Market Street, 17th Floor
18                            Wilmington, Delaware 19801

19                            - and -

20
                              Alan Kornfeld, Esquire
21                            Linda Cantor, Esquire
                              10100 Santa Monica Boulevard
22                            Los Angeles, California 90067

23                            - and -

24
                              John Lucas, Esquire
25                            150 California Street
                              San Francisco, CA 94111-4500
```

1  APPEARANCES (Continued):

2  For Hartford:              James Ruggeri, Esquire
                              SHIPMAN & GOODWIN LLP
3                             1875 K Street NW, Suite 600
                              Washington, D.C. 20006
4

5  For Future Claimants:      Robert Brady, Esquire
                              YOUNG CONAWAY STARGATT & TAYLOR
6                             1000 North King Street
                              Wilmington, Delaware 19801

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

<u>INDEX</u>

2

#10) Debtors' Motion for Entry of an Order (I) Appointing a
3   Judicial Mediator, (II) Referring Certain Matters to
    Mandatory Mediation, and (III) Granting Related Relief (D.I.
4   17, Filed 2/18/20).

5   **Ruling: Order Entered**

6   #11) Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9),
    Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-
7   1(e), 3001-1, and 3003-1, for Authority to (I) Establish
    Deadlines for Filing Proofs of Claim, (II) Establish the Form
8   and Manner of Notice Thereof, (III) Approve Procedures for
    Providing Notice of Bar Date and Other Important Information
9   to Abuse Victims, and (IV) Approve Confidentiality Procedures
    for Abuse Victims (D.I. 18, Filed 2/18/20).
10

11  **Ruling: 70**

12  #12) Debtors' Motion for Entry of an Order Approving
    Stipulated Confidentiality and Protective Order (D.I. 613,
13  Filed 5/12/20).

14  **Ruling: Adjourned**

15
    DEBTOR'S WITNESS(s)
16
    **SHANNON WHEATMAN**
17
         Cross Examination by Mr. Schiavoni      11
18

19  INTERESTED PARTIES WITNESS(s)

20  **JON CONTE**

21       Cross Examination by Mr. Schiavoni      16

22       Redirect Examination by Mr. Kornfeld    22

23

24

25

1 | EXHIBITS                                      <u>I.D.</u>   <u>REC'D</u>

2 | Declaration of Dr. Shannon Wheatman (556, 631)      10

3 | Declaration of Dr. Jon Conte                        15

1          (Telephonic hearing commenced at 10:06 a.m.)

2          THE COURT:  Good morning, counsel, this is Judge

3   Silverstein.  We're here for the hearing in the Boy Scouts of

4   America case, case number 20-10343.

5          And, Ginger, would you please remind everybody of

6   the protocol for the hearing.

7          THE CLERK:  It is extremely important that you put

8   your phones on mute when you are not speaking.  When

9   speaking, please do not have your phone on speaker as it

10  creates feedback.  This also helps with the background noise

11  so that we can hear the person that is speaking and get an

12  accurate record.

13         Also, it is very important that you state your

14  name each and every time you speak for an accurate record.

15  Your cooperation in this matter is greatly appreciated.

16  Thank you.

17         THE COURT:  Thank you.

18         Okay.  Mr. Abbott.

19         MR. ABBOTT:  Good morning, Your Honor.  Derek

20  Abbott here for the Boy Scouts, affiliated debtor.  Your

21  Honor, thank you for making the time today.

22         There were, I should say, a number of agendas

23  filed.  Most recently this morning, there were also a number

24  of relatively late filings, Your Honor; unfortunately, some

25  Friday afternoon and, finally, one status matter this

1  morning.

2          Your Honor, but if I could just roll through that

3  third amended agenda, if the court has received that.

4          THE COURT:  I don't have it, but -- I don't have

5  that one, but I'm sure I'll be able to follow, so just go

6  ahead.

7          MR. ABBOTT:  Thank you, Your Honor.  It looks like

8  orders have been entered on agenda items number 1 through 4.

9  Five, six and seven there were certificates filed and there

10  weren't hearings unnecessary, unless the court has questions

11  and so, I wanted to, obviously open up to the court to see if

12  there were questions on five, six and seven.

13          Number five, Your Honor, was the committee's

14  application to retain the Reed Smith as counsel.  And I have

15  not seen an order on that one, Your Honor.

16          THE COURT:  Okay.  Thank you.  Yes, now, I'm

17  embarrassed to say I have not -- I wasn't focused on these

18  applications, so I will review them and if I have any

19  questions, I will reach out individually to counsel and let

20  them know and we'll get those resolved quickly.

21          MR. ABBOTT:  Thank you, Your Honor.  Much

22  appreciated.

23          Your Honor, numbers eight and nine have been

24  adjourned which brings us to the matters that are going

25  forward today, Your Honor.  And with respect to those, Your

1  Honor, I would propose that we go slightly out of order, Your

2  Honor, because the bar date motion which is Docket Item

3  Number or -- excuse me -- agenda item number 11, Docket Item

4  number 18.

5          Your Honor, that has a couple of witnesses and we

6  thought given the witnesses' participation in the hearing, we

7  probably ought to run that one first and then excuse them, if

8  possible, once we're through that motion.  And if that's

9  acceptable to the court, I think that's where we ought to

10 start.

11         THE COURT:  I agree.  Let's take the matter with

12 the witnesses first.

13         MR. ABBOTT:  Thank you, Your Honor.

14         So, then Docket Item Number 11, I will turn the

15 mike, as it were, to Ms. Boelter.

16         MS. BOELTER:  Thank you, Your Honor.  Jessica

17 Boelter, Sidley Austin on behalf of the debtors.

18         Your Honor, as Mr. Abbott indicated that brings us

19 to the bar date motion which is agenda item number 11. The

20 bar date motion was filed at Docket Number 18.

21         Our presentation, Your Honor, essentially has two

22 parts.  The first is to walk the court through the various

23 filings that have been made over the last couple of months,

24 at a very high-level just because I understand there's been

25 quite a few filings.  This order does involve seven different

1   exhibits.  And just given that we are in our virtual

2   courtroom, we thought it might make sense to walk the court

3   through that.

4          Once that concludes, Your Honor, we would turn to

5   walking through the remaining objections.  And the good news

6   is, Your Honor, we think that they are very discreet, at this

7   point.  The parties have worked tirelessly over the last

8   several weeks, and even through the weekend, up until three

9   o'clock this morning to get these pleadings in a condition

10  such that we believe we have resolved the vast majority of

11  the remaining objections.

12         As Mr. Abbott indicated, the debtors did submit

13  two declarations from Dr. Shannon Wheatman.  We do not

14  believe that the remaining objections implicate Dr.

15  Wheatman's testimony, but we will -- Dr. Wheatman is on the

16  line.  You may see her on Zoom right now.

17         What we'd like to do is proffer her two

18  declarations that appeared at Docket Number 556 and then a

19  supplemental declaration at 631 into evidence.  We are

20  proffering Dr. Wheatman into evidence as an expert on, you

21  know, designing and implementing noticing programs,

22  particularly with respect to bar dates and other class

23  actions, mass tort situations.

24         So, with that, Your Honor, I'd like to move her

25  declarations into evidence.  And, again, she's available for

1    cross-examination or any questions that the court may have.

2              THE COURT:  Does anyone object to the admission of

3    Dr. Wheatman's declaration and supplementation declaration?

4              MR. SCHIAVONI:  We don't object -- Your Honor,

5    Your Honor, this is Tancred Schiavoni for Century.  We don't

6    object to the tender of the declaration, but we do have a few

7    questions.

8              THE COURT:  Okay.  Well, I hear no objection to

9    the declarations coming into evidence, so they are admitted.

10         (Declaration of Dr. Shannon Wheatman, Dockets 556, 632,

11   admitted)

12             THE COURT:  And I will, of course, permit cross,

13   so.

14             MS. BOELTER:  And, Your Honor, just one -- this is

15   Jessica Boelter, again, for the debtors.

16             THE COURT:  Yes.

17             MS. BOELTER:  With respect to the cross, the

18   evidentiary portion of the bar date motion, I, myself, and my

19   partner, Michael Andolina, will be handling that together.

20   He'll be handling the evidentiary portion to the extent we

21   need to do any redirect examination.

22             THE COURT:  Okay.

23             MR. SCHIAVONI:  And, Ms. Wheatman, are you there?

24   This is Tancred Schiavoni for Century?

25             MS. WHEATMAN:  Yes, I am here.

1          MR. SCHIAVONI:  Okay.  Are you --

2          THE COURT:  Hold on; hold on, Mr. Schiavoni,

3  because I need to swear the witness in.

4          Here, she is.  Okay.

5          Dr. Wheatman, this is Judge Silverstein, I'm going

6  to swear you in.  Can you raise your right hand, please?

7               SHANNON WHEATMAN, WITNESS, SWORN

8          THE COURT:  Please state your full name and spell

9  your last name for the record?

10         THE WITNESS:  Shannon R. Wheatman; W-H-E-A-T-M-A-

11  N.

12         THE COURT:  Thank you.  Mr. Schiavoni

13                    CROSS-EXAMINATION

14  BY MR. SCHIAVONI:

15  Q    Ms. Wheatman, are you offering testimony as part of

16  your expert affidavit as an expert on the legal elements of

17  the claims in the various states for which claims will be

18  submitted?

19         UNIDENTIFIED SPEAKER:  Objection as to the form of

20  the question, Your Honor.  I don't know what Mr. Schiavoni is

21  referring to when he says claims?

22         THE COURT:  Can you restate your question?

23         MR. SCHIAVONI:  Yes.

24  BY MR. SCHIAVONI:

25  Q    Ms. Wheatman, as part of offering -- Ms. Wheatman, in

1  offering the opinions you have for your expert affidavit, are

2  you offering opinion as to the legal element of the abuse

3  claims or the claims that are subject to the notice in the

4  multiple states for which claims will be submitted?

5  A    My opinions are strictly on the efficacy of the actual

6  notice program to reach potential claimants in

7  (indiscernible) states.  So, as far as anything regarding to

8  legal claims that's not my area of expertise.

9          MR. SCHIAVONI:  Your Honor, I have no further

10  questions.  Thank you very much.

11          THE COURT:  Thank you.

12          Does anyone else have any questions for Dr.

13  Wheatman?

14      (No verbal response)

15          THE COURT:  I hear no one.

16          Dr. Wheatman -- Mr. Andolina, I assume you don't

17  have any follow-up?

18          MR. ANDOLINA:  No follow-up, Judge.  Thank you.

19          THE COURT:  Okay.  Thank you.

20          Dr. Wheatman, you are excused.

21      (Witness excused)

22          THE WITNESS:  Thank you.

23          MS. BOELTER:  Thank you, Your Honor.  Jessica

24  Boelter again, Sidley Austin, for the debtors.

25          May I proceed with the presentation?

1         THE COURT:  Well, let me find out if there is any

2    other evidence that any party is going to adduce.

3         MR. KORNFELD:  Good morning, Your Honor.  Alan

4    Kornfeld, Pachulski Stang Ziehl & Jones for the tort

5    claimants committee.

6         Your Honor, yes, the tort claimants committee also

7    has a witness, Dr. Jon Conte.  Dr. Jon Conte is present in

8    the conference, and we would like to offer his testimony.

9    May I go forward with that?

10        THE COURT:  Yes.

11        MR. KORNFELD:  Thank you, Your Honor.

12        Dr. Conte, as I said is present virtually in

13   court.  He has, as admitted in his declaration which is at

14   Docket Number 601, extensive experience in the areas of child

15   sexual abuse and research methodology on issues related to

16   childhood sexual abuse.

17        He is the professor emeritus in the School of

18   Social Work at the University of Washington and director of

19   the Joshua Center on Child Abuse at that university.  He

20   spent four decades in the field of study of childhood sexual

21   abuse.  He's extensively published as detailed in his CV

22   which is at Docket Number 603.

23        He's served on panels of the National Academy of

24   Science, the National Institute of Mental Health, and various

25   other institutions, all in the areas of childhood sexual

1   abuse.

2           He has evaluated literally thousands of child

3   youth and adult youth of childhood sexual abuse throughout

4   his career.  He has evaluated victims of childhood sexual

5   abuse, survivors of childhood sexual abuse who have

6   participated in Boy Scouts in the states of Illinois and

7   Washington.

8           Dr. Conte has testified as an expert, Your Honor,

9   over 160 times in various states throughout the country.  He

10  has also served as a court-approved expert in the creditor's

11  committees of the bankruptcies of the Archdiocese of Portland

12  and Milwaukee.  He's the editor of various journals on

13  childhood sexual abuse.

14          And, Your Honor, based on his training and very

15  extensive experience, I would move the court to accept

16  Professor Conte as an expert in the field of and issues

17  related to the effects of childhood sexual abuse on adult

18  youth and children who are survivors of that abuse.  And on

19  the issues related to research methodologies on the studies

20  of issues with respect to childhood sexual abuse.

21          THE COURT:  Does anyone object?

22          MR. SCHIAVONI:  Your Honor, this is Tancred

23  Schiavoni for Century.  Given the tort claimant's limitation

24  on the scope of Mr. Conte's area of expertise being limited

25  to that of the effects of child abuse and, I take it, the

1  psychological impacts of the child abuse, we have no

2  questions.

3          I understand him not being tendered as an expert

4  on the legal elements of childhood abuse.

5          MR. KORNFELD:  Your Honor, if I may, that is

6  correct.  Dr. Conte is not a lawyer.  He is an expert on

7  childhood sexual abuse.  I would, again, move his admission

8  as an expert in that area.  And as long as we're doing this

9  together, I would move the admission of his declarations into

10  evidence and he's available for cross-examination if anybody

11  has cross-examination questions.  I would, again, reserve the

12  right to redirect if Dr. Conte is cross-examined.

13          THE COURT:  Okay.  Let me ask if anyone objects to

14  Dr. Conte being offered as an expert in the field that Mr.

15  Kornfeld has stated or the admission of Dr. Conte's

16  declaration?

17      (No verbal response)

18          THE COURT:  I do not hear anything.  He's accepted

19  as a witness and the declaration admitted.

20      (Declaration of Dr. Jon Conte, admitted)

21          THE COURT:  Let me ask if there is any cross-

22  examination of Dr. Conte?

23          MR. SCHIAVONI:  Your Honor, it's Tancred

24  Schiavoni, just very briefly.  I have just two things.

25          THE COURT:  Okay.  Let me see if I can find Dr.

1  Conte.  Dr. Conte, I need to swear you in.  There you are.

2           Can you raise your right hand, please?  Thank you.

3           MR. CONTE:  Yes, ma'am.

4                    JON CONTE, WITNESS, SWORN

5           THE COURT:  And will you please state your full

6  name and spell your last name for the record?

7           THE WITNESS:  It's Jon, J-O-N; last name is Conte

8  -- C-O-N-T-E.

9           THE COURT:  Thank you.  Mr. Schiavoni.

10                    CROSS-EXAMINATION

11  BY MR. SCHIAVONI:

12  Q    Mr. Conte, is it -- I've read your declaration, is my

13  understanding correct that one of the things you tried to do

14  in your declaration is try to convey your concern that some

15  questions that are posed in the proof of claim might

16  discourage claimants from filing a claim?

17  A    Yes, sir, it is.

18  Q    In making the comments you made to the questions that

19  are posed, was one of the things you tried to do was

20  generally just make it easier for people to fill out the

21  proof of claim?

22  A    Yes, sir, to make it easier, but also sensitive to the

23  experience of filed victims who are now adult survivors of

24  sexual abuse.

25  Q    Okay.  And can you tell us what questions did you add

1  to the proof of claim to try to eliminate the prospect that

2  people that didn't have meritorious claims wouldn't fill out

3  the form?

4  A    I tried -- well, yeah, that's a good question.

5        There are several areas.  I suggested more categories

6  of harm or damage.  I also suggested more behaviorally

7  specific language as to what sexual abuse is and then wrote

8  down various types of sexual abuse that would be potentially

9  relevant in judging a claim.

10 Q    And by adding boxes for more different types of sexual

11 abuse, what aspect by adding those boxes made it more

12 difficult for people who didn't have a valid claim to sort

13 those out by the form?

14 A    I --

15        MR. KORNFELD:  Your Honor, objection.  That's

16 vague and, if particular, what he's talking about people who

17 don't have a valid claim.  People's claims have not been

18 submitted, much less adjudicated at this point.

19        THE COURT:  I'm going to overrule that objection

20 and see if Dr. Conte can answer the question.

21 BY MR. SCHIAVONI:

22 A    No one question on the proposed proof of claim goes

23 directly to validity.  I would assume you would determine

24 validity of claims by looking at the responses to a number of

25 different questions that are throughout the form.

1      The checklist provides an opportunity for an adult

2  survivor hasn't processed abuse, who can't describe the

3  intimate details without getting triggered for summarizing

4  the types of conduct they experienced.

5      And then providing an optional narrative also gives

6  survivors, who are able, to provide a description of the

7  abuse they experienced.  The narrative is more complicated

8  because most of these predators will have been abused more

9  than one time, some of them multiple times over many years.

10 And so, describing multiple events of sexual abuse is

11 extremely difficult.

12     But given the option and then dealing with a

13 combination of the boxes which describe experience which is

14 less threatening (indiscernible) to fill out and then an

15 optional narrative seems to provide the information that

16 you're asking for, along with other answers about

17 credibility.

18 Q    Mr. Conte, am I-- you used the word optional several

19 times.  Am I correct that one of the changes made by the

20 committee throughout was to make narrative submissions of the

21 claims entirely optional so that the claimant, if they chose,

22 to just check the boxes?

23 A    I think in terms of the describing the abuse that's

24 true.  In terms of describing the harms and damages, in

25 addition to the checking off various harms and damages, there

1  is required narrative where the survivor can describe from

2  their own perspective how they've been harmed.

3      So, I think the only optional area really has to do

4  with describing the abuse in detail which is likely to be the

5  most triggering, the most complicated.  Fundamentally, I

6  don't think it addresses the question of credibility of the

7  claim that you raised.

8  Q    Is there anything that would prevent someone -- just

9  assume for a moment that there might be some people out there

10  who, you know, after a national advertisement campaign, you

11  know, might be ill-motive and might be inclined to fill out

12  the boxes, you know, with ill-motive.  Is there anything that

13  would allow you identify those fellows or ladies who filled

14  out the form in such a manner?

15  A    No.  You have to look at --

16          MR. SCHIAVONI:  Your Honor -- I have no further

17  questions, Your Honor.

18          THE COURT:  Does anyone --

19          MR. KORNFELD:  Your Honor, this is Alan Kornfeld,

20  I will have redirect, if there's no other cross.

21          THE COURT:  Let me ask.  Is there any other cross?

22      (No verbal response)

23          THE COURT:  Okay.  I have one question and maybe

24  it's best to do it first before -- Mr. Kornfeld, before you

25  do the redirect.

1          Dr. Conte, from the perspective of the abuse

2  victim, is it better to fill out a tort (phonetic) form first

3  with respect to its claim and then a longer form that asks

4  for all of the details that is contemplated in these proposed

5  forms or is it better to do it all at once?  So, basically,

6  is it best to get asked once or twice for information?

7          THE WITNESS:  I think it's much better to ask

8  twice within an initial shorter set of questions and then

9  more detailed later.

10          You have to remember, it's many of the people who

11  will be responding to this don't have lawyers; they haven't

12  come forward before.  They get the notice and they have to

13  make a really complicated decision recognizing that there is

14  a bar date, a certain after which they cannot respond.

15          They really have to weigh the pros and cons of

16  coming forward. And so, I think to give them the initial

17  notice, let them file it, and then have a chance to come back

18  and provide additional information is likely to be more

19  supportive of those predators who are going to be the most

20  difficult to reach because of the ones that haven't come

21  forward yet.

22          THE COURT:  Okay. Thank you.

23          Do you have --

24          MR. KORNFELD:  Thank you, Your Honor.

25          THE COURT:  Well, no let me ask a follow-up

1  question.  I'll take the liberties all lawyers do when they

2  say they only have one question.

3          MR. KORNFELD:  Very well.

4          THE COURT:  Dr. Conte, do you have a view as to

5  how short that initial form should be, what question should

6  be in the first form and what question should be in the

7  follow-up form?

8          THE WITNESS:  I guess it would depend, Your Honor,

9  on what the purpose of the first form is.  If it's to make a

10  general assessment of whether or not this is a potentially

11  valid claim then you would want to know what involvement they

12  had with the scouts, potentially where, summarizing the types

13  of abuse they experienced, and some sense of the harm would

14  be an initial cut.

15          And then other questions such as whether they were

16  witnesses, whether they told anybody, that kind of thing to

17  be asked in a follow-up.  And if you decided that a narrative

18  really was important for some reason, the first form would

19  sensitize the untreated and currently unidentified survivor

20  with a notice that they had to be able to provide more

21  information later.

22          THE COURT:  Thank you.  And I will let Mr.

23  Kornfeld ask any questions.  For Mr. Schiavoni, also, follow-

24  up with anything based on what I asked.

25          MR. KORNFELD:  Thank you, Your Honor.  This is

1 Alan Kornfeld again.

2                    REDIRECT EXAMINATION

3 BY MR. KORNFELD:

4 Q     Dr. Conte, Mr. Schiavoni asked you about your

5 suggestion that the narrative description of the abuse that

6 the survivor had suffered by optional. That is, the survivor

7 either has opportunity to check the box or to provide the

8 narrative or both.  Why do you suggest that the narrative be

9 optional?

10 A     Well any manner that is potentially traumatic, it

11 potentially overloads the respondent because most of these

12 claimants will have abuse, multiple incidents over abuse

13 often over a long duration. And it doesn't really answer the

14 question about the validity of the claim.

15        This research summarized by Dr. Siegel, the

16 psychiatrist at Stanford, about witness statements.  And he

17 points out that there's no research that suggests that a

18 motion that is consistent with what is being described or

19 detailed in memory necessarily tells you whether it is an

20 accurate memory or not

21        So because it is potentially off-putting and

22 potentially traumatizing, I think it's more important to give

23 the respondent an opportunity to provide it, if they want to.

24 And, to be clear, some claimants will probably want to.  But

25 you could have a very detailed, very emotional description of

1   a series of horrible events and that's not necessarily a true

2   event.

3        It's probably IQ.  If someone is very smart and they've

4   seen enough movies, they could probably describe an

5   experience as if they had had it and convinced the reader

6   that they had it when, in fact, they never had the

7   experience.  It's a fiction.

8   Q    And that brings us to another issue that Mr. Schiavoni

9   raised with you that I want to ask you about too.  Mr.

10  Schiavoni in one of his questions talked about those with an

11  ill-motive.  And I believe what he meant was those who might

12  lie on the form, fabricate, prevaricate, people who would

13  commit a fraud on the court.

14       Does a narrative requirement mean if there is a

15  narrative on the form that you will be able to ascertain

16  whether the form is accurate and truthful?

17            MR. SCHIAVONI:  Objection.  Your Honor, I would

18  just object that there's no foundation that Mr. Conte's done

19  any studies on this, looked into, considered it at all.

20  There's been no foundation.

21            THE COURT:  No --

22            MR. KORNFELD:  Well, it's interesting, Your Honor,

23  that Mr. Schiavoni was asking Dr. Conte questions in the

24  area.

25            THE COURT:  Yeah, I'm going to overrule the

1  objection.

2  BY MR. KORNFELD:

3  Q    Dr. Conte, do you have my question in mind?

4  A    Yeah, if you could ask it again, just to be clear.

5  Q    Sure.  In simple terms, does requiring a claimant to

6  fill out a narrative description of the abuse that the

7  claimant survivor suffered translate into giving anybody

8  information that will allow them to determine whether the

9  claim is accurate and truthful?

10 A    It does not.

11 Q    Would you explain to the court why it does not, please?

12 A    Well, again, the smarter the person is making a

13 fraudulent claim is and the more movies about abuse they

14 could describe in intimate detail what a post-traumatic

15 stress intrusive image is because they've seen it documented

16 or displayed in multiple movies.

17      So the amount of detail, the richness of detail, the

18 emotion that is communicated is immaterial or unrelated to

19 validating a statement of a witness, and that's what Dr.

20 Spiegel essentially summarized many years ago.

21      This is a terribly important question.  It comes up all

22 the time when you have kids as witnesses, as well as adults.

23 How do you determine what someone said is accurate or not?

24 And in a rare exception of when somebody describes something

25 that's physically impossible.

1    For example, if somebody said I was abused by every

2  member of my troop, that's very unlikely to have happened.

3  So, in that rare circumstance a narrative might tell you

4  something.  But in all the others, it can be rich in detail

5  or somebody may also not have complete memory.  They may say

6  well it happened and, you know, I was in a tent and the next

7  thing I know my pants were down.

8    Now they may not, in some people's judgment, make a

9  valid claim but the lack of risk detail is simply because the

10  traumatized person can dissociate when the abuse is taking

11  place.  So rich detail or absent of detail doesn't really

12  provide an answer as to credibility of a claim.

13    MR. KORNFELD:  Your Honor, at this time, I have no

14  further questions.

15    THE COURT:  Thank you.  Anyone else with questions

16  for Dr. Conte?

17    (No verbal response)

18    THE COURT:  I hear no one.  Thank you, Dr. Conte.

19  You're excused.

20    (Witness excused)

21    MR. CONTE:  Your Honor, do I need to stay on the

22  Zoom or do I leave?

23    THE COURT:  You do not need to stay, but you are

24  welcome to if you choose.

25    MR. CONTE:  Thank you, Your Honor.

1          THE COURT:  Thank you.  Okay. Do we have anymore

2    witnesses?  I'm not aware that we do, but I just want to

3    doublecheck.

4          MR. KORNFELD:  Your Honor, the tort claimants

5    committee does not have anymore witnesses.  And with

6    admission of Dr. Conte's evidence, which the court has done,

7    we rest the evidentiary portion of our case.

8          THE COURT:  Thank you.

9          Okay.  Ms. Boelter.

10          MS. BOELTER:  Thank you, Your Honor. Again, for

11    the record, Jessica Boelter, Sidley Austin, on behalf of the

12    Boy Scouts of America and Delaware BSA, LLC.

13          Your Honor, I'm going to start by providing the

14    court with an overview of essentially how we got to this

15    point with respect to the bar date.  And then, hopefully,

16    finish with some good news in the sense that we have

17    significantly narrowed the issues that parties had objected

18    to with respect to the bar date motion which we hope will

19    streamline and, again, hopefully, shorten this component of

20    today's proceeding.

21          Your Honor, as you'll recall we filed the bar date

22    motion on the petition date, on the first date of this

23    bankruptcy case.  It's present at Docket Number 18.  And as

24    we explained to the court, both in our informational brief,

25    as well as at the first day hearing, we recognize, at the

1  outset of these cases, that establishing a claims bar date,

2  particularly for abuse survivors, was particularly important

3  for both the debtors and the survivor constituency.

4      The abuse survivors had communicated to the

5  debtors prior to the commencement of the Chapter 11 cases

6  that they felt like a bar date was essential and that it

7  would be essential to advancing negotiations around a global

8  resolution of the bankruptcy cases.  So in light of those

9  discussions, we wanted to put a bar date on the table

10  immediately.  That's why we filed the bar date motion on the

11  petition date.

12      But we indicated multiple times in the motion that

13  we knew that it would need to be supplemented, particularly

14  with respect to matters pertaining to the abuse survivors and

15  their bar date.  We didn't want to take that action

16  unilaterally.  We didn't want to do it without the feedback

17  from official constituencies once appointed.  We did not, you

18  know, have an official committee of abuse survivors at the

19  outset of these cases, nor did we have an official future

20  claimant's representative.

21      So, as we indicated at that time, we viewed there

22  as being sort of a significant hole in the bar date motion as

23  of February 18th.  And that dealt with abuse survivors.  And

24  when we think about the bar date as it pertains to abuse

25  survivors, we're really dividing that into two components.

1    The first is just the notion of noticing, the

2 actual due process component of the bar date motion.  As Your

3 Honor undoubtedly saw from our papers, we, you know, similar

4 to other bar motions and mass tort cases, have effectively

5 looked at this from both a known and an unknown claimant

6 perspective.

7    The known claimants, of course, are those that are

8 reasonably ascertainable to us.  And we have proposed a

9 first-class mail and email notice program that will reach in

10 excess of ten million individuals.  But it was also

11 incredibly important to us to reach unknown potential abuse

12 survivors.  And, again, the unknown concept here for the Boy

13 Scouts of America, it's particularly complicated.

14    As we said in our papers and as Dr. Wheatman noted

15 in her declaration, we're talking about individuals that may

16 not have had any experience with the organization literally

17 for decades. They may no longer live in their childhood home.

18 And, as a result, we retain Lesomey (phonetic) and Kinsella

19 Media, Dr. Wheatman who devised a noticing program so that we

20 could reach the universe of potential unknown abuse

21 survivors.

22    We presented that program over the course of the

23 month of April to the official constituents in the Chapter 11

24 cases.  And by the time we got to May 4th which is when we

25 filed the description of the publication program with respect

1  to the abuse survivors, as well as Dr. Wheatman's initial

2  declaration.  While we didn't have buy-in yet from any

3  constituency in this case, we felt that Dr. Wheatman's work,

4  which as she indicated in her declaration, is going to reach

5  over one hundred million individuals, a 95 percent rate, with

6  respect to men over the age of fifty which is our number one

7  target audience.  We thought that was pretty extraordinary

8  and pretty incredible.

9            But that did not and does not come without a cost.

10 As you may have also seen in Dr. Wheatman's declaration, the

11 combination of both the known abuse survivor noticing

12 protocol so that the mailing and the emailing, as well as the

13 media component of the protocol, the component for the

14 unknown claimants, the total cost of that will be $6.8

15 million dollars.

16           There's also a significant timing component with

17 respect to the noticing protocol.  Not only does the protocol

18 require us to develop content for the notices, but we need to

19 buy that content within a specific period of time with

20 respect to the particular types of media outlet.  And then

21 that content needs to run for a period of time.   And as Dr.

22 Wheatman described in her declarations that could be between

23 four to seven weeks, depending upon the type of media that

24 we're talking about, whether that's television, radio, print.

25           And then, of course, once the media component is

1  concluded, there needs to be sufficient time for the abuse

2  survivors to process what they've heard, review the noticing

3  and the bar date forms, and ultimately file their claim. And

4  the reason -- I understand that's laid out in great detail in

5  our papers, but I raise it again here, Your Honor, because

6  I'm going to come back to this a couple of times during the

7  presentation.

8        We have tried very hard to be sensitive to the

9  issues confronting abuse survivors, but we had to balance

10  that with expense and we had to balance that with time.  So

11  we filed the supplement with Dr. Wheatman's original

12  declaration on May 4th.  That supplement is at Docket Number

13  557.  Also on that same date at Docket 558 noticed out this

14  hearing and an objection deadline which was May 11th at that

15  point in time for today's hearing.

16        We received initially two formal objections, one

17  from the tort committee.  That was on Docket Number 601 and

18  they also submitted Mr. Conte's declaration which was

19  supplemented at Docket Number 611.  And then the United

20  States Trustee also filed an objection initially and that was

21  at Docket Number 610.

22        Your Honor, in light of those two objections, the

23  debtors sought leave to reply, and actually attached a reply

24  to that motion.  That was Docket 630 and we submitted a

25  supplemental declaration of Dr. Wheatman at 631.

1          Incidentally, Your Honor, I don't know that that

2    motion for leave to reply has been granted yet.  I'd be happy

3    to address any issues with the motion for leave if you have.

4    But, if not, I would be happy to just continue on with the

5    presentation.

6          THE COURT:  You can continue.  I've read it.

7          MS. BOELTER:  Thank you.

8          Your Honor, following that motion for leave on

9    Friday, I think the date was the 15th, we received three

10   additional objections or joinders from three insurers:

11   Hartford, Century and Alion (phonetic).

12         We continued to work with the constituents

13   throughout this weekend.  You know, as I indicated in my

14   opening remarks, we've had some pretty late nights.  We were

15   on with the tort committee until after midnight tonight.  And

16   I think at around three o'clock in the morning, this morning,

17   our team filed updated drafts of the exhibits and the

18   proposed form of order which we believe addresses the vast

19   majority of objections that were outstanding with a handful

20   of exceptions which I'll get to at a moment.

21         But we did significantly narrow the issues, and I

22   thank all of the parties for working with us.  I understand

23   that the tort committee members themselves were actually

24   meeting late into the evening to discuss the proof of claim

25   form.  It's an extraordinary effort for an extraordinary

1  notice program.

2         With that, Your Honor, I think I'll turn to what I

3  believe are the remaining objections.  But let me start with

4  some good news.

5         The good news is one of the most significant

6  issues between the debtors and the tort committee has been

7  resolved, and that's the bar date itself.  You may recall

8  that the debtors had proposed a bar date of October 6th.  The

9  tort committee had preferred a bar date in late December.

10 And over the weekend, we agreed to a bar date of November

11 16th, a perfect compromise.  So the blackline documents that

12 were filed during the early morning hours, this morning

13 reflect that agreement.

14        Another couple points to note, there are no open

15 issues to our knowledge with respect to the general bar date.

16 And there are no open issues to our knowledge with respect to

17 the broad abuse survivor notice program. So, again, the

18 program that was designed by Dr. Wheatman.

19        The open issues, as we sit here today, really fall

20 into three categories, Your Honor.  Category one are specific

21 issues on the abuse survivor proof of claim form itself.

22 Category two would be specific issues or, I believe, it's

23 just one issue, at this point, on the abuse survivor long-

24 form notice.  The long-form notice, I mean, is not the

25 publication notice, but the bar date notice that's Exhibit 2

1  to the order.  And then, finally, it's our understanding that

2  there are two specific issues with respect to the form of

3  order itself.

4       If you like, Your Honor, I'm happy to go through

5  in detail the remaining issues with respect to those three

6  categories of open matters.

7       I guess what I would ask before I dive into that

8  is did Your Honor receive the filings that were made very

9  early this morning, blacklines of the order and the various

10 exhibits?

11      THE COURT:  Yes, I have.  I have not looked at it,

12 but I've got in front of me Docket 667.

13      MS. BOELTER:  Excellent.  So, Your Honor, if you

14 could pull up Docket 667.  I'm going to start with specific

15 issues that remain open on the abuse survivor proof of claim

16 form.  That's Exhibit 6 to the actual form of order when we

17 get to that point.  It's in 667-2.  And just to orient you,

18 I'm going to be speaking on page 59 of 75 of the ECF PDF

19 verse 667-2.

20      THE COURT:  Great. Thank you.

21      MS. BOELTER:  So with respect to this order, there

22 are call it three open issues with a couple of subparts on a

23 few of them.  The first open issue appears on, again, it's

24 page 2 of 16 of the proof of claim form which is also page 59

25 of 75 of 667-2.   And that is the scope of the definition of

1  sexual abuse.

2          Your Honor, the debtors made significant changes

3  to this definition in response to the objection that was

4  filed by the TCC last week.  Most of those changes were

5  reflected in the revised form of order that we filed last

6  Thursday, so you don't see them here.  But just to draw a

7  finer point on that.

8          One of the issues that the TCC had raised in their

9  objection was that the definition of sexual abuse in the

10 original form was actually a definition of abuse.  And it

11 included forms of abuse, non-sexual forms of abuse such as

12 bullying, physical abuse, or any other types of abuse of a

13 non-sexual nature.

14         We have agreed with the TCC to pull non-sexual

15 abuse from the sexual abuse proof of claim form.  There's

16 language at the end of this what is sexual abuse basket that

17 directs those individuals to file a general proof of claim

18 form, but that was one issue.  It was raised in their

19 objection. We resolved it.

20         The issue that has not yet been resolved is

21 essentially whether this proof of claim form should apply

22 only to children or whether it should apply to children in

23 non-consenting adults.  The TCC's perspective is that this

24 should only be a child sexual abuse claim form.

25         From the debtors' perspective, the debtors

1   actually have individuals up to the age of 21 participating

2   in their programs. We do have a handful of programs that

3   permit use to continue to participate after they turn 18.  In

4   addition, as you can imagine, abuse for some individuals may

5   start prior to the age of 18 and continue after the age of

6   18.

7           From the debtors' perspective, declaring that this

8   should be a solely child abuse form doesn't necessarily take

9   into account the total types of sexual abuse that could

10  occur.

11          Now, we understand that filed sexual abuse is not

12  only is it terrible, but we are not trying to diminish child

13  sexual abuse in any way by including adults in this proof of

14  claim form, but we do believe that it is possible for non-

15  consenting adult participants.  So, again, individuals over

16  the age of 18 but under the age of 21 would have a

17  (indiscernible) claim and we simply don't have another form

18  for them to fill out other than the general proof of claim

19  form.

20          We think it's appropriate to leave these

21  individuals in this form because it's the exact same

22  information we would want to solicit from them with respect

23  to their claim.  So that is one open issue. And I have no

24  doubt you will hear from Mr. Stang or his colleagues with

25  respect to the appropriateness of including non-consenting

1  adult scouting participants.

2        I would just note, Your Honor, you may see this in

3  the blackline on page 59 of 75.  The language prior to today

4  simply just said non-consenting adult.  We have no limited

5  that to non-consenting adult scouting participants which is a

6  term that is used in the boy scouts to define individuals

7  that have exceeded the age of 18 that are still participating

8  in certain of our programs.  That's open issue one with

9  respect to this form.

10        THE COURT:  Ms. Boelter, is that -- it's not a

11  defined term, but is that definition somewhere or is there a

12  reference to 18 to 21-year-old or 21 and below anywhere in

13  the form?

14        MS. BOELTER:  There is not, Your Honor.  The

15  notion of an adult scouting participant actually is defined

16  in the Boy Scouts' bylaws.  I think we could provide

17  additional color with respect to what that means with respect

18  to this form if that's where the parties and the court land.

19  But that should be a relatively straightforward change that

20  we can make.

21        THE COURT:  Okay.

22        MS. BOELTER:  Your Honor, I then go to page 5 of

23  16 or if you're looking at the PDF page numbers at the top of

24  Docket Number 667-2.  It's page 62 of 75.

25        And the next two issues really go to the heart of

1    matters that you were discussing with Mr. Conte during his

2    testimony.  There are two questions on the form that we

3    understand from the tort committee late last night do not

4    provide sufficient optionality between checking the box or

5    filling out the narrative.  The tort committee has requested

6    that we make it very clear, more clearer than is in the form

7    right now, I should say, that the abuse survivor has the

8    option of either checking the box or filling out the

9    narrative.

10          From the debtors' perspective, and I'm going to

11   walk through some language that's already in the form, we

12   believe that this is already adequately addressed in the

13   form, based upon prior comments that we took from the tort

14   committee.  We also think, and this is going to go back to my

15   efficiency and timing point, and it piggybacks on some of the

16   questions that Your Honor asked Mr. Conte. From an efficiency

17   and timing perspective, we don't want to get these forms in

18   on November 16th and then have a month or two months of

19   follow-up questions simply not so that we can liquidate the

20   claims, but simply so that we can assess the sorts of claims

21   that have been asserted against us.

22          From the debtors' perspective, we think that it is

23   helpful for individuals to add additional color with respect

24   to the check-the-box answers that they're already providing.

25   We just can't get everything from a check the box. We are

1  very sensitive to the issues that were raised by Mr. Conte,

2  and we're sensitive to the notion that victims could

3  potentially be re-victimized or traumatized by filling out

4  the narrative.

5          But, in light of that, you know, we already added

6  significant additional information to the proof of claim

7  forms and I'm sure you will hear from Mr. Schiavoni that from

8  the insurer's perspective having individuals complete both

9  check the box and the narrative is critical to their ability

10 to understand the nature of the claim.

11         So just to point out a couple of points here.  On

12 page 5 of 16, and again that's page 62 of 75, Part Four,

13 "Nature of the Sexual Abuse," the general instructions with

14 respect to Part Four. For example, the first sentence: "For

15 Each of the questions listed below, please complete your

16 answers underlying to the best of your recollection."

17         We also say after the note, you'll see the

18 paragraph or the free-standing sentence after the word, note,

19 "Please answer each of the following questions, to your best

20 ability.  If you do not know or recall, please so indicate."

21         The question that has caused, as we understand it,

22 the most consternation in, at least, Section four of the

23 proof of claim form occurs on page 9 of 16, which is, again,

24 66 of 75 of the PDF redline.  This question sets up a number

25 of check the boxes that individuals can check, and then it

1  says, "Please describe the sexual abuse in as much detail as
2  you can recall in the lines below."

3          Again, we believe that the insert of the words, as
4  you can recall, which had been previously requested by the
5  tort committee, coupled with the introductory words of this
6  section provide significant sensitivity to the abuse
7  survivors, but also our design to elicit information that we
8  think is important to understand the check-the-box answers
9  that the survivors provide.

10          This, Your Honor, occurs in one other instance on
11 this form, and that is in Part Five.  Part Five is on page 12
12 of 16, or page 69 of 75 of the PDF.

13          Part Five, again, we've added the first sentence
14 of Part Five to address exactly this concern and it says in
15 the parenthetical, "If you currently cannot describe any harm
16 you have suffered on account of the sexual abuse, you may
17 omit this section for now; however, you may be asked to
18 provide the information requested at a later date."

19          Again, that language was inserted at the request
20 of the tort committee to take into account the exact
21 sensitivities that Mr. Conte testified about.  That said we
22 understand from the tort committee that that's not
23 sufficient, that Part 5(a) which is you'll see a number of
24 check the boxes.

25          Incidentally, the blacklining is due to the fact

1  that the tort committee requested a number of parentheticals

2  providing further description of the type of harm that an

3  individual could suffer from the sexual abuse, and we took

4  those comments verbatim.

5          But as the please describe at the end, it says,

6  "Please describe how you were impacted in ways that you now

7  connected being related to the sexual abuse you described

8  above."  And then it says, "in as much detail as you can

9  recall in the lines below."  And, again, we felt that that

10  was being sensitive to re-victimization, as well as memory

11  loss points, but also asked for a narrative which we know is

12  important for us to be able to understand simple check-the-

13  box claims and important, as we understand it, to the

14  insurers.

15          Your Honor, with respect to the proof of claim

16  form itself, those are the only language issues, I'll call

17  them, with respect to the form. As you may have seen in the

18  objections that were filed by the insurers on Friday evening,

19  the insurers have a very broad objection to the form, most of

20  which deals with sort of an either/or proposition pertaining

21  to language in the proposed form of order.  If we don't have

22  language in the proposed form or order indicating that this

23  basically under Section 502 of the Code is not prima facie

24  evidence of the claim, then they would want a different

25  proposed form of order, and that proposed form of order was

1  attached to Hartford's objection.

2        I'm going to deal with that particular issue when

3  we get to the form of order itself because it's really a more

4  broad-based issue that doesn't deal with specific language in

5  this other than I think there's probably ten-plus additional

6  questions that the insurers would like.  We, in fact,

7  presented those to the tort committee, and it's my

8  understanding that those questions were all rejected by the

9  tort committee.  But I'd like to deal with that issue when I

10  get to the form of order, if that's okay, Your Honor.

11        THE COURT:  That's fine.  I want to make sure I

12  understand the issue with the narrative, which I think Dr.

13  Conte testified and is not necessarily the best for winnowing

14  out the truth of validity of someone's claim of sexual abuse,

15  either because it can be too detailed or conversely the lack

16  of detail, neither of which may help someone winnow out the

17  truth of the assertion.  That's my interpretation of his

18  testimony.

19        So is the concern here that whether it's optional

20  or not?  Is that the disagreement among the parties?

21        MS. BOELTER:  That's exactly right, Your Honor.

22  The disagreement among the parties is that it's not crystal

23  clear that this is optional.  The tort committee would like

24  it to be optional for the reasons that Dr. Conte testified to

25  that the act of filling out a narrative may essentially re-

1   victimize the abuse survivor, and that act, in and of itself,

2   may not even elicit the type of information that is required,

3   determine the type of claim or the veracity of the claim.

4           And I don't want to speak for Mr. Schiavoni, but

5   as I understand it and the debtors agree, that we do want to

6   encourage individuals to complete the narrative on the form,

7   not because we want to cause greater trauma to those

8   individuals, but we do think it's helpful to have words, in

9   the claimant's own words, that actually describe the abuse

10  that they suffered.

11          It maybe that we can learn more from those words

12  than, you know, a check-the-box.  We tried to come up with a

13  lot of different boxes that you can check, but, Your Honor,

14  we confess we may not have covered everything.  And getting

15  from the claimant, in their own words, in a form that, you

16  know, clearly -- I know Mr. Conte addressed the possibility,

17  you know, if you're trying to deal with veracity of the claim

18  issues, narrative doesn't do much for you because individuals

19  could watch a movie and actually draft a narrative based upon

20  actions that they saw in a movie.

21          From our perspective, one, obviously, the form is

22  subject to the penalty of perjury.  And, by the way, for

23  those that fill it out electronically, there will be a pop-up

24  box indicating that the form is truthful.  But for anyone

25  that's ever been bound to fill in a check-the-box form and

1 | has felt that there were no boxes that necessarily applied to

2 | that individual's situation or tried to understand an

3 | individual situation based solely upon boxes that would be

4 | made available to potentially multiple thousands of people.

5 | We just didn't think that made a lot of sense.

6 |         We think the narrative really does enhance our

7 | ability to understand the boxes, understand and test the

8 | level of abuse and the type of harm that may have occurred.

9 | And we believe that we have done that with sensitive

10 | disclosures around those requests that try to take into

11 | account that, one, these victims may not recall precisely

12 | what happened to them.  We're asking them to do their best.

13 |         And, two, if, for whatever reason, they don't fill

14 | out the form, like we said in the lead-in to Part Five, we

15 | may, at a later date, ask them for more information, so

16 | they're aware that we may have to go back and do it again.

17 | But that, you're right, Your Honor; the issue is really do we

18 | make the language in the form more optional then it currently

19 | is.

20 |         THE COURT:  Okay.  Thank you.

21 |         MS. BOELTER:  Okay.  So, let's deal with specific

22 | issues on the abuse survivor notice.  And just to orient you,

23 | Your Honor, this is the abuse --

24 |         MR. STANG:  Your Honor -- Your Honor, this is Mr.

25 | Stang.  If I could just interrupt Ms. Boelter for a moment.

1          We have a lot of pleadings that we're looking at

2    that were filed, for us, really early in the morning on the

3    West Coast.  We're struggling to try to get through these and

4    be able to be responsive to you throughout this hearing.

5    Could we deal with the proof of claim issues and then go to

6    the notice?  It might make it easier to check off that we've

7    taken care of something.

8          It's up to you, but we're going to have a long

9    presentation then Ms. Boelter.  Then Mr. Schiavoni may give -

10   - you know insurance companies may give long presentation on

11   all these different issues.  Is it -- would you -- I'm asking

12   you if it would help you to say, all right, let's get the

13   claim nailed down, and now let's move onto the next thing and

14   so, I'm just putting that out there.

15         MR. SCHIAVONI:  Your Honor, Tan Schiavoni.  I

16   would just suggest that that almost puts the cart before the

17   horse because the threshold issue is really the form of

18   order, what it is we're trying -- what is the purpose of the

19   proof of claim.  If that issue might narrow the disputes

20   about the proof of claim itself.

21         MS. BOELTER:  And, Your Honor, I'm happy -- we can

22   proceed however the court and parties would like.  We can

23   also turn immediately to the form of order to address, as Mr.

24   Schiavoni called it, perhaps could be a threshold issue with

25   respect to the insurers.

1          THE COURT:  Okay.  Well, I'd like to probably

2    understand the totality of the issues between the parties,

3    but if there is an overarching issue with respect to the

4    order, why don't we turn to that?

5          MS. BOELTER:  Very good, Your Honor.

6          There are two issues in the proposed form of

7    order, but one pertains to the issue that Mr. Schiavoni just

8    raised.  And what I would ask Your Honor is the form of order

9    appears in Docket 667-2, it's Exhibit B.  The paragraph in

10   question that the parties have the dispute over occurs on

11   page 15 of 75 of the PDF.  It's actually page 14 of that

12   blackline order and it's paragraph eleven.

13         THE COURT:  Okay.

14         MS. BOELTER:  Your Honor, the issue between the

15   TCC, the debtors, to a certain extent, although our position

16   is clearly reflected in paragraph eleven, and the insurers is

17   essentially what is the legal significance of the abuse

18   survivor proof of claim.

19         From the debtors' perspective, the abuse

20   survivor's proof of claim tells us who may be creditors of

21   the debtor.  It tells us that not only for voting purposes,

22   but it tells us that also for purposes of when we get to plan

23   time what we need to do with respect to those claims.

24         The pleadings or the notices say repeatedly

25   throughout if you don't file a proof of claim form, you are

1   by definition not a creditor.  Your claim is essentially

2   barred.  It's a bar date, unless an exception applies and the

3   exceptions are clearly set forth in the rules.

4          But if you do file an abuse survivor's proof of

5   claim, it's the debtors' position that that does not mean

6   that your claim is liquidated.  It does not mean that we have

7   set your claim up to be liquidated.  It simply means that you

8   are a party that is asserting a claim in connection with

9   these cases and that claim is an abuse survivor claim.

10          We believe and it's consistent with virtually

11  every mass tort case that the plan of reorganization that is

12  ultimately negotiated in this case will provide a process for

13  allowing abuse survivor claims and liquidating abuse survivor

14  claims that will either be set forth in the plan itself or in

15  the trust distribution procedures.  So the proof of claim

16  form itself is not a form to liquidate an abuse survivor

17  proof of claim.

18          So, to that end, following discussions with the

19  insurers, we added, and it doesn't reflect in this blackline

20  because it was added to the version that was filed last

21  Thursday, but we added paragraph eleven which says, "the

22  allowance and the process for allowance of sexual abuse

23  claims and the treatment thereof will be subject in all

24  respects the terms of any confirmed plan or reorganization

25  for the debtors and any trust distribution procedures that

1  may be approved in connection therewith."

2          The insurers will likely give Your Honor their

3  position.  I know they will, in fact.  But as we understand

4  it, they thought the language should go further.  And

5  essentially say that the abuse survivor proof of claim would

6  be utilized for voting and for the mediation.  But from a 502

7  perspective would not have the prima facie validity of the

8  claim.

9          From the debtors' perspective that went beyond the

10  four corners of the relief that we had asked for in the

11  original motion.  It was an issue that was raised with us in

12  the middle of last week.  We feel that the language in

13  paragraph eleven adequately protects their rights and our

14  rights with respect, and the sexual abuse claimant's rights,

15  with respect to the liquidation and future allowance of the

16  claim and the process for doing that.

17          As I'm sure you'll hear from Mr. Stang, the tort

18  committee has now requested that we add language to paragraph

19  eleven.  That is exactly the opposite of what the insurers

20  have asked for.  They want paragraph eleven to say that the

21  proof of claim form is, in fact, prima facie evidence of the

22  validity of the claim, unless it's objected to.

23          So that sets up the disputes between the parties,

24  Your Honor.  Again, we, the debtors, believe that eleven is

25  not only consistent with what we see in virtually every mass

1   tort case, but it's really consistent with the position of

2   all parties which are that the claims truly will be allowed

3   and they truly will be liquidated in accordance with the

4   terms of a plan and the trust distribution procedures.  And

5   that these proof of claim forms will be utilized for a number

6   of purposes including establishing the fact that an abuse

7   survivor is asserting a claim against the debtors.

8           So that's the overarching issue that Mr. Schiavoni

9   referred to.

10          THE COURT:  Okay.  Well, let me hear from parties

11  on that issue because I have not had to deal with this issue

12  before in the mass tort case, and I'm finding this whole

13  proof of claim form process really interesting and, quite

14  frankly, contrary to what I think the Code provides in the

15  terms of the filing of a proof of claim.  So, I'd like to

16  hear from the parties on this issue.

17          MR. STANG:  Your Honor, this is Mr. Stang.  Would

18  you like me to go first?

19          THE COURT:  Sure.

20          MR. STANG:  Your Honor, a rose is a rose is a

21  rose.  The proof of claim is a proof of claim is a proof of

22  claim.

23          The proof of claim has certain impacts and

24  consequences and the Code and the Rules tell us what those

25  are.  Your claim is allowed, unless it is objected to.  And

1  Rule 3001 says its prima facie evidence.  And I don't know

2  how an order changes what the rule says the proof of claim is

3  or changes what the Code says is in terms of allowance.

4       Now, it is true the process after the claim was

5  filed would go to the liquidation of the claim and the plan

6  will go to the treatment of the claim, but the claim has been

7  filed.  The bar date sets up preclusionary effect.  Anything

8  after, it's late.  You have to meet the standard for a late

9  proof of claim.

10      The problem with paragraph eleven that we have, it

11 says that the allowance of the claim will be subject to the

12 terms of a plan of reorg and trust distribution procedures.

13 That's not correct.  The claim is allowed when it is filed

14 unless there is an objection.

15      And if this said the treatment of the claim is

16 subject to a plan, the liquidation of the claim is subject to

17 a plan or objection that's fine.  But I don't know how you

18 get around 502.  These are not placeholders.  These are not

19 raise your hand if you'd like to file a claim later.

20      These are proof of claim.  And they are

21 requirements as to the content -- we'll get to that.  We're

22 not having that discussion at the moment.  This is as to the

23 impact.  And I just simply do not understand how someone

24 through an order, proposed order, can wipe out a specific

25 section of the Bankruptcy Code and a specific statement in

1  the Rules of Bankruptcy Procedure.

2          THE COURT:  Well, Mr. Stand, I would tend to agree

3  with that, but how does that comport with this extensive

4  proof of claim form?  Because a proof of claim form and what

5  the Code requires and the Rules require is basically a short

6  and simple here's my claim.  It doesn't require ten pages of

7  explanations of your claim.

8          So how does that position you're taking on the

9  order comport with the position the committee is taking on

10  this long form proof of claim?

11          MR. STANG:  Your Honor, we are not advocating that

12  the claims form be -- initially.  We would navigate for 15,

13  20-page form proof of claim, but we appreciate.  We're

14  sensitive to the needs of the Boy Scouts and the needs of the

15  insurance companies to have more than just I'm here.

16          And so, I don't think anything precludes asking

17  the survivors to put some detail to it. We're going to get

18  into how much detail is appropriate and what should be the

19  standard.  But it is important for all parties, including our

20  committee, the official committee, possibly the future

21  claim's rep, and all the others I've mentioned to know a

22  little bit more.

23          And as I've told you at the beginning of the first

24  day hearing, I've done a lot of these.  And in every case, we

25  have had a special proof of claim form because we

 1 acknowledged the needs of the other parties -- and, honestly,

 2 Judge, even from the tort claimant's perspective they just

 3 need sometimes to get some of it on the table and address

 4 some of the table.  It's important for them to do that as

 5 well.

 6         But I have never, and I don't think anyone can

 7 cite to a single case in the sexual abuse context, where

 8 there has been anything that addresses or modifies 502 or

 9 3001.  I can't remember one.

10         So, it is a balance in terms of the detail in this

11 proof of claim, but I don't think it changes the idea that it

12 is still a proof of claim form.

13         THE COURT:  Okay.  Thank you.

14         MR. BUCHBINDER:  Your Honor, this is Dave

15 Buchbinder.  May I be heard?

16         THE COURT:  Yes.

17         MR. BUCHBINDER:  Thank you, Your Honor. This is

18 Dave Buchbinder on behalf of the United States Trustee.

19         The United States Trustee filed an objection to

20 certain to certain of the language in the abuse survivor

21 notice and those issues have been essentially resolved.  And

22 we also objected to the form of the abuse questionnaire and

23 essentially our objection defers to Mr. Stang's tort claim

24 committee.

25         With respect to the specific issue at hand, I

1   don't see anything offensive about paragraph eleven.  I think

2   it preserves everyone's rights.  But to the extent that an

3   entity would want to rewrite Section 502(a) of the Code, it's

4   pretty straightforward and it's pretty short and it says, in

5   part and in part, "A claim or an interest, proof of which is

6   filed under Section 501 of this title, is deemed allowed,

7   unless a party in interest objects."  That's a substantive

8   provision.  And to quote the Supreme Court Justice, "The

9   Statute means what it says and says what it means."  And

10  502(a) is quite simple.

11          With respect to the contents of the form, Your

12  Honor, just to be a little helpful.  I've been lucky enough

13  or unfortunate enough to be involved deeply in both TK

14  Holdings which was in this district and along with my

15  colleague, Ms. McCollum.  We've been heavily involved in the

16  PG&E cases.

17          And I'll agree with Mr. Stang it's not uncommon in

18  the mass tort cases to customize a proof of claim form to

19  make it easier to sort out the types of claims in the future.

20  But to the extent this form exceeds basic information and

21  evolves into what would be a set of interrogatories that's

22  where we've deferred to Mr. Stang and what the tort committee

23  feels is appropriate questions here.

24          But with respect to the 502(a) issue, the statute

25  means what it says and says what it means.  And you don't get

1   to rewrite the Code in an objection to a motion or in an

2   order to a motion.  That requires a visit to the Congress.

3   Thank you, Your Honor.

4           THE COURT:  Thank you.

5           Mr. Schiavoni, are we taking a visit to Congress?

6           MR. SCHIAVONI:  That would be interesting, Judge,

7   and I think we'd all have lots of things to say, but I don't

8   think we need to do that.

9           You know, a couple of threshold points.  First of

10   all, it is true that in some of the sexual abuse cases that

11   have involved defined sets of claims in defined geographic

12   areas where there's a diocese, or a hospital, or school at

13   issue they've done bar dates and proofs of claims, but

14   overwhelmingly in mass tort cases where there's a national

15   distribution of claims and a future claimant representative

16   is appointed, right, because in most of those cases where

17   there's a national distribution of claims there's an FCR

18   appointed.

19           There is no bar date at all and there's no proof

20   of claim form.  And the reason for that really goes to the

21   fact that tort claims they're just not as subject to being

22   reduced to 502 treatment as pay a bond, or a secured loan, or

23   a vendor claim.  They're totally different in nature.

24   They're almost -- in the vast majority of those cases, and I

25   could list almost all of the major cases that have been in

1   Delaware, there's an FCR, and a process is put in place.

2          First, there's a process for, sort of, just

3   identifying people to vote, but as far as liquidating and

4   adjudicating the claims, after claimants come forward and

5   identify themselves the whole process has been put in place

6   to deal with those that is, sort of, particularized to what

7   the response is and particularized to the individual claims.

8   And there's good reason for that because the claimants with

9   valid claims is subject to being, in essence, victimized by

10  people just checking boxes who don't have valid claims and

11  taking money from a limited source.

12          If you want to, sort of, focus and <u>Imerys</u> is a

13  good example of that.  You have a plan was filed on Friday,

14  there's no bar date there, there's no proof of claim in that

15  case.  There's a future's representative and the plan they

16  filed purports to set out a way to, sort of, deal with those

17  claims on a going forward basis.  That is the majority

18  history in Delaware on how mass tort claims are dealt with.

19  There isn't this, sort of, debate over how you form a proof

20  of claim questioning to validate prima facie claims across

21  the United States, you know, that's going to be done,

22  distributed to 100 million people.  It is utterly

23  impractical.

24          Let's just focus now on just, sort of, what the

25  basic rules are.  Here, when this motion was filed, there was

1  no proof of claim form with any questions on it. There's

2  reference in the original motion, C-2, it's a blank form.

3  The form was only filed in May, you know, proposing questions

4  under Rule 9013.  You're required to set forth the relief

5  you're seeking in the moving paper.  You don't, sort of,

6  change as you go, you know, a week or two weeks before the

7  hearing on such -- especially on such a massively significant

8  issue.

9        The notion that people have been working around

10  the clock on these questions that may be true, but it's

11  essentially been to the exclusion of the insurers.  Nobody

12  spoke to us over the weekend.  Nobody was on the phone with

13  us, you know, at three o'clock in the morning.  And we

14  weren't copied on any of the communications shared between

15  the debtor and the committee.  Yes, we got a draft last week

16  and we had a draft, I suppose, last night or yesterday

17  morning, but that's not really substantive input on the

18  drafts.

19        Let's turn to, sort of, quickly like the real

20  dispute and what the issue is.  Is there really a dispute

21  here, okay.  You heard from the debtor what they envisioned

22  is going to happen, that the proof of claim really isn't

23  intended to validate, you know, the actual elements of the

24  claim; that there is, in fact, a valid claim here.  That is

25  what they put in the proposed form of order.  That is what

1  they have told us about the purpose of the proof of claim.

2        You heard their witness.  Their witness is really

3  offering testimony about the noticing program, but not that

4  the elements of the claim are satisfied by this proof of

5  claim form, nor could it be.  I mean keep in mind that the

6  definition of abuse claim is incredibly broad.  It covers,

7  sort of, verbal bullying all the way to, you know, some

8  intentional crimes like rape.  It's extremely broad.  You

9  can't cover the elements of that in a few questions,

10  especially check the box questions, and the debtor doesn't

11  purport to do so.

12        You know, you also heard -- we heard from Mr.

13  Stang, but you heard from the debtors -- from the tort

14  claimants' witness and you heard from the tort claimants'

15  counsel in connection with that witness that their witness,

16  Mr. Conte acknowledged, I believe -- I don't have the

17  transcript in front of me, but my notes anyway seem to

18  suggest that like what he said was that he wasn't proposing

19  these questions to go to the validity of the claims, that he,

20  himself, either he said this, I believe he said it, but I

21  believe also tort claimants' counsel said it that that would

22  be subject to a separate process of adjudication through the

23  plan or otherwise to try to prove up all the elements of

24  these claims through a series of check the boxes questions.

25  We'd be significantly -- if the debtor chooses to do that on

1  its own that perhaps is one thing, but they risk vitiating

2  coverage by admitting to liability on that basis.

3        It's also true that we would be significantly

4  prejudiced by just a, sort of, quickie check the box form

5  that creates, you know, some sort of like immediate validity

6  for claims.  It's also true that like where that will take us

7  on a noticing program that is designed to go to 100 million

8  people it could cause more chaos here for everyone.  Nobody

9  knows what result we're going to get from these boxes, okay.

10        I mean I got it that Mr. Conte is concerned about

11  the impact on those valid claims from abuse claimants and

12  wants to make it easy for people to submit the form.  That is

13  -- you know, there's a sort of balancing act that the court

14  has to deal with, with that, but the easier that is just

15  think what will happen. It's like we don't know. It could

16  take us into a place where just a significant volume of

17  claims comes in that really needs to be sorted out.

18        So, we think that a clause in the order that just

19  makes clear that you aren't setting a presumptive validity of

20  the claims here by a few check the box questions which,

21  frankly, are suggestive of what the answers are, you know,

22  for a claim would be curative here about what questions have

23  to be posed.  Yes, we would have significantly more detailed

24  questions and requirements for evidence that would

25  corroborate a claim and also make out the elements of the

1  claims in multiple different states.  That is really the

2  purpose here.

3          I don't think that what they've submitted achieves

4  that.  And those courts that, you know, have tried to, sort

5  of, deal with this through a proof of claim process; In Re

6  Delaco is one, we cite another court in our papers that we

7  submitted to you.  You know, they went forward with, sort of,

8  like a proof of claim to identify claimants and preserve

9  their claim for the bar date, but then had detailed

10 questionnaires and other steps to be taken as a secondary

11 process.

12         We don't have a problem with using a proof of

13 claim.  I don't think one should really be used with an FCR<

14 but if one is going to be used to preserve claims for voting

15 purposes and to collect information for mediation that's

16 fine.  It seems to be consistent with what both the committee

17 and the debtor are suggesting or indicating what their intent

18 is, but if they're using it to set prima facie evidence of

19 these claims it's going to set us -- first of all, its

20 insufficient for that.  We don't think there's an evidentiary

21 basis for it and it should be denied if that's the purpose of

22 it.

23         If that is the purpose and that is what it's

24 approved its going to set us off into areas where what are we

25 to do like ask for depositions of hundreds of people on a

1  going forward basis and bog the case down.  That's one of the

2  reasons why bar dates haven't been set in the vast majority

3  of these cases.

4          So, we don't think there's anything wrong with

5  including in the bar date approval order a provision that

6  makes clear what the purpose is.  Yes, we would ask for

7  something a little bit more robust then what the debtor has

8  so we don't face confusion down the line.  It just says its

9  simply -- you know, we suggested language like this in our

10 written paper that, you know, would add that it really

11 doesn't set a prima facie validity for the claims going

12 forward, but there's certainly nothing wrong with the type --

13 with that type of valuator language in the bar date order

14 itself, Your Honor.

15          Thank you very much.

16          THE COURT:  Let me ask a question -- and I'll

17 apologize, I've got Hartford's objection.  I don't seem to

18 have Century's objection.

19          So, in those cases that don't set bar dates they

20 send out some sort of informational form and request people

21 return it, what is the effect of not returning that?  What

22 happens in those cases?

23          MR. SCHIAVONI:  So, you know, Imerys is one that's

24 before you and, frankly, I'm still reading it myself, but --

25          THE COURT:  I haven't looked at it.

1      MR. SCHIAVONI:  -- what's done typically in the

2   cases in Delaware has been in some respects what Ms. Boelter

3   suggested, I think she envisions here, that there'd be a

4   process -- if a process for dealing with the claims embedded

5   in the plan or otherwise would adjudicate whether or not the

6   merits of the -- to make determinations about the merits of

7   those claims on a going forward basis as they come in.

8           You know, keep in mind here we're not just -- if

9   you have an FCR the question is what is he doing.  If

10  everything is supposed to be resolved through the proof of

11  claim form then one would question what is the FCR for.  In

12  these other cases the FCR is, you know, developing with all

13  the parties as part of a plan a process for resolving those

14  claims both to their validity and to their dollar amount.

15  The claims don't go into that process having a presumption

16  that they're valid.

17          THE COURT:  How do people vote?  How do we know

18  who gets to vote on the plan if we don't have a bar date?

19  Present claims; I'm not talking about future claims, FCR.

20  Present claimants.

21          MR. SCHIAVONI:  Right.  So, in Imerys you will see

22  that, you know, the solicitation proposal is made to vote on

23  submissions that people have.  It's a, sort of -- I forget

24  the rule number they use, but they make a, sort of, summary

25  submission to vote. That is not used for 502 purposes.

1          MS. BOELTER:  Your Honor, this is Jessica Boelter.

2   May respond?

3          THE COURT:  Yes.  I am going to let you respond to

4   all of this.  Before you do, I want to make sure you hear

5   everyone you need to respond to.

6          Is there anyone else who wants to weigh-in on this

7   issue, this big picture issue?

8          MR. RUGGERI:  Your Honor, James Ruggeri for

9   Hartford.  Thank you for letting me appear today.  We did

10  file an objection on Friday in response to the revised proof

11  of claim notice.

12          Let me respond, I join in what Mr. Schiavoni

13  provided to the court, but our confusion really was based on,

14  Your Honor, with the original motion papers which, frankly,

15  don't square, at least my understanding with what the debtors

16  are representing today.  In the original motion paper at

17  Docket 18, on Page 23 of 30, tells us the purposes that

18  debtors were telling us was the purpose of the proof of claim

19  form.  Those purposes include assisting the debtors and

20  party's interests in evaluating and resolving the abuse

21  claims, then going onto say the information requested is

22  critical to assessing the debtors' aggregate liability both

23  overall and for different categories of claims.

24          That, to us, is pretty close to the information

25  that is going to be used for purposes other than just as a

1  place holder for the filing of a claim and getting a whole

2  lot closer to soliciting or eliciting information that was

3  intended to allow people to adjudicate or figure out the

4  validity of the claims.  That is why when we saw Paragraph 11

5  in debtors' revised proposed orders we said it's not clear

6  enough for the reader.  I can't square it with what you told

7  the court in the motion papers and we offered language making

8  clear, as Mr. Schiavoni said, that same point blank that the

9  proof of claim form does not replace a claims process or the

10  tort system, the requirements that they will impose.

11          That is the process that I hear today everyone

12  envisions taking place.  Our position is it should be stated

13  clearly.  If, in fact, the purpose is more aligned to what we

14  see in Paragraph 36 on Page 23 of 30, Docket 18, that's why

15  Hartford provided the questions that is sought to be added to

16  the proof of claim form.  We're not going to go into that

17  now, but I also think the court heard testimony from Dr.

18  Conte this morning that you have to tailor the proof of claim

19  to meet the purposes.

20          One of those purposes is the questions, he said,

21  will allow you to winnow out the credible claims from the not

22  credible claims.  That was the vein in which we made our

23  suggestion to the form itself, but on the order the language

24  we requested was intending to square what the debtor was

25  saying and avoid what we feared was the intended purpose from

1  Paragraph 36 of the motion.

2          Thank you, Your Honor.

3          THE COURT:  Thank you.

4          So, let me ask the same question that I asked Mr.

5  Schiavoni.  How do people vote on the plan?  How do claimants

6  vote on the plan if they haven't filed a proof of claim?

7          MR. RUGGERI:  I will allow my partner, Josh

8  Weinberg, to weigh-in on that issue because he's closer to

9  it.

10          I think there is a variety of mechanisms including

11  they are allowed to submit proofs of claims in my experience.

12  Those claims are estimated for voting purposes at a nominal

13  dollar amount.  That has been my experience outside the abuse

14  arena in the mass tort experience, Your Honor.

15          Mr. Weinberg has nothing to add to that, Your

16  Honor.  So, thank you.

17          THE COURT:  Thank you.

18          Okay, anyone else before I go back to Ms. Boelter?

19      (No verbal response)

20          MS. BOELTER:  Thank you, Your Honor.

21          Let me just start with a little bit of history

22  with respect to this particular form.  It was provided to all

23  of the insurers by Haynes & Boone, the debtors' coverage

24  counsel, on April 19th.  So, this was not a surprise or a

25  sneak attack on May 4th.  And we had given all parties in

1  interest a heads up in the original motion that we would be

2  providing these documents well in advance of the hearing and

3  well in advance of the objection deadline.  In fact, we had

4  extended the objection deadline as I think was reflected in

5  the agenda through the insurers, for the insurers until noon

6  last Wednesday.

7           We had provided and had multiple calls with the

8  insurers concerning the proof of claim form last week.  At no

9  point prior to Wednesday did any insurer raise with us what

10  appeared in, I think it was, Footnote 13 of Century's

11  objection filed on Friday night that there should be no bar

12  date in this case.  I want to address that.

13          First of all, Your Honor, as we said, I said it

14  today, I said it at the first day hearing, a bar date is

15  critical to our ability to advance these Chapter 11 cases

16  with respect to abuse claims.  That has been very clearly

17  conveyed to us by abuse survivors.  And from the debtors'

18  perspective, and I think this is true for all parties in

19  interest, we need to understand the body of claims that are

20  out there and we need to understand the type of those claims.

21  It is our view that that data will be imperative for us to

22  proceed with respect to the mediation and I think Mr. Stang

23  would back me up on that.  His constituents have said that to

24  us loud and clear, and we agree.

25          We disagree with Mr. Schiavoni that bar dates are

1   not in most mass tort cases.  Our experience has been exactly

2   the opposite.  Look no further then recent cases such as

3   PG&E, Takata, USA Gymnastics.  The reason that the form is

4   different from the official proof of claim form 401 in mass

5   tort cases is a couple of reasons.

6          One, we're dealing with individuals that don't

7   have a lot of bankruptcy experience.  We also know that there

8   is a particular type of data that would be helpful to

9   evaluating the claims.  So, for example, in a product

10  liability case there is often scientific evidence that can be

11  deduced and filled out in a check the box proof of claim form

12  that indicates whether the debtor's product was involved and

13  whether there was, in fact, scientific evidence of the type

14  of accident that occurred.

15         In this case, in the abuse cases it's far

16  different.  In these cases, we don't have necessarily a

17  scientific parameter that we can point to, to see abuse that

18  occurred thirty years ago.  We also have to deal with the

19  sensitivity of the individuals that are filling out the claim

20  form.  So, in order to understand the types of claims that

21  these individuals have and assess the magnitude of those

22  claims and the validity of those claims not ultimately to

23  liquidate the claims because that will be the job of the

24  trust. But in order to assess the debtors' aggregate

25  liability we need the data, and I think all parties are in

1 agreement that some form of additional data beyond official

2 claim form 401 is not only utilized in mass tort cases, its

3 common in mass tort cases and this is the type of form that

4 you would see in an abuse mass tort case.

5          With respect to, well, isn't this something that

6 the futures rep is supposed to do; just as a reminder, Your

7 Honor, the futures rep in this case is limited to repressed

8 memory minors.  So, we have a number of individuals that we

9 are trying to reach through our media program that simply

10 don't fall within that category and that are not actually

11 represented by the future claimants' representative.

12         Then, to just conclude on Hartford's point on

13 Paragraph 36 of the original motion, Your Honor, I'm

14 surprised at the reading.  We actually read it as consistent

15 with respect to what is Paragraph 11 in the order in the

16 sense that, you know, we say it is very important that we

17 understand the aggregate magnitude of the claims against the

18 debtor.  Not that this is going to replace distribution

19 procedures or the job of a trustee, but it will, in fact, be

20 used in terms of negotiations to Your Honor's point for

21 voting purposes.  Many of these claims will likely be filed

22 in an uncertain dollar amount.

23         When we get to voting on a plan of reorganization

24 individuals that submitted proofs of claim will likely be

25 given $1 dollar votes consistent with all other mass tort

1  cases that do, in fact, have bar dates and that do, in fact,

2  assign $1 dollar claims to individuals that filled out a

3  proof of claim form.

4          So, we think, one, that Paragraph 11 in the order

5  should satisfy the issues that the insurers have raised.  It

6  is, in fact, how we view the allowance process and the plan

7  process.  Again, ask that the court not only ultimately

8  approve the bar date, but also the order.

9          Again, not to conclude my remarks here because as

10  I mentioned, Your Honor, there is a handful of other issues

11  once we get into the other documents, but on this big

12  overarching issue that is where the debtors come down.

13          MR. STANG:  Your Honor, this is Mr. Stang.  May I

14  make a comment to what the insurer said?

15          THE COURT:  Yes.

16          MR. STANG:  To answer your question, Your Honor,

17  my experience in all the sex abuse cases, including USA

18  Gymnastics, abuse creditors are assigned a dollar through

19  vote and some through a plan solicitation procedures motion

20  that includes voting. That is the way it's been done in every

21  diocese case that I know of and that's how the court ordered

22  in USA Gymnastics as well.  So, that is how my experience is

23  in the voting context.

24          I would point out to you that the official form

25  for proofs of claim specifically states that it can be used

1  for personal injury.  And it doesn't have to be used for

2  personal injury. It doesn't preclude the use of a specialized

3  form, but the notion that personal injury claims cannot be

4  evidenced by a proof of claim simply ignores the fact that

5  the official form says that they can be.

6          The focus of our conversation, I thought, was on

7  Paragraph 11, but counsel went off on looking at the proof of

8  claim form itself.  We may get back to that, but I will point

9  out that form asks who did this to you and asks you to be

10 very specific about identifying the person.  It asks when did

11 this person do that to you, start dates, end dates, and if

12 you can't remember the dates seasons, (indiscernible).  It

13 asks what did they do to you?  Were you penetrated?  Is the

14 problem the insurers have that we didn't ask which orifice?

15 You know, were you orally copulated; I mean that's not

16 specific enough for them to get past a proof of claim

17 standard.

18          If people filled this claim form out, they would

19 need a motion to dismiss.  It tells you who, what, where and

20 when.  Also, it alleges consequences.  And while it doesn't

21 call for a dollar amount, if that's what people want people

22 put down dollar amounts.  So, the idea that this is just

23 check a few boxes tribulizing a claim form that calls out

24 specific conduct and specific consequences of that conduct is

25 not just checking a few boxes.

1          I've read a lot of these claim forms in other

2   cases.  If the narrative said I was abused in my tent,

3   period, that consents a narrative, what are they going to do

4   say the claim is automatically disallowed because you didn't

5   put in a sufficient narrative.  I've seen claim forms that go

6   on for dozens of pages.  I've seen claim forms that said I

7   was abused in my classroom.

8          So, the narrative will have a consequence.  It

9   will tell you something.  Dr. Conte talked about this.

10  Whether it goes to the voracity of the claim or not it might,

11  it might not, but the idea that your claim shouldn't be

12  allowed, understanding that it is unliquidated, understanding

13  it's still subject to objection.  One of the insurers said

14  this would preclude our ability to -- I think it was

15  Hartford, preclude the possibility of discovery.  Really?

16  There's' nothing in the order that says that.  It would

17  preclude the possibility of objections.  I didn't see that.

18          I just don't understand how they can rewrite the

19  code when we have a proof of claim form that's clearly within

20  the scope of what Congress anticipated and the court's

21  anticipated in the proving official form that gives all of

22  the elements of the tort claim and gives information far

23  beyond what would probably be required for a complaint in the

24  State Court proceeding.

25          Thank you, Your Honor.

1           THE COURT:  Thank you.

2           Okay.  With respect to this big picture issue I'm

3   going to permit a proof of claim form to go out and the

4   return of that proof of claim form has the effect that the

5   code gives it.  I am not going to alter the effects that the

6   code gives it.  Some of you may have heard me talk about

7   proofs of claims and objections to proofs of claims in other

8   cases.

9           My basic view of a proof of claim form is if I can

10  look at it and understand what it is that the claimant has

11  alleged, for example, breach of contract, breach of my

12  employment agreement, services performed, and if its signed

13  under oath and, otherwise, meets the requirements I think

14  it's a valid proof of claim.  And the debtor has to object to

15  it.  Quite frankly, the debtor has to object to it on more

16  then I just can't validate it.

17          So, I am going to permit bar dates to be set so

18  that parties will have an opportunity to vote the amount of

19  their claim, how they're allowed to be voted for, the amount

20  of the claim, and the numerosity we will deal with when we

21  get to that part of the bankruptcy proceeding, but I'm going

22  to permit it.  And I don't think we have to say anything

23  about what the effect of a proof of claim, filing a proof of

24  claim is in a proof of claim order because it is what it is

25  under the code.

1          So, Paragraph 11 to me may or may not be accurate.

2    If there is information -- and, quite frankly, I don't know

3    how many claimants are going to be reading the order as

4    oppose to the proof of claim form itself in the instructions.

5    So, I don't think it's very informative to these claimants

6    nor do I think they have a clue what it means when we talk

7    about the difference between allowance, a treatment, et

8    cetera.   So, I think Paragraph 11 is extraneous and doesn't

9    need to be in the order.

10          There should be nothing in this order which

11   deviates from the code.  I'm going to permit a longer form of

12   proof of claim form, but there should be nothing on a

13   substantive basis that deviates from what the code provides

14   in this order.

15          MR. STANG:  Your Honor, this is Mr. Stang.

16          There is one other provision in the order that --

17   well, there are two things in the order that we would like to

18   address specifically. I know we went from one issue over to

19   the order and I don't know how you would like to proceed, but

20   I just -- if you could take a note that if we are going to go

21   onto something else I'd like to revisit the order on at least

22   two issues.

23          THE COURT:  Ms. Boelter, let me ask you, are there

24   other issues in the order that you have on your plate to

25   address?

1          MS. BOELTER:  There was only one other issue and I

2    thought it was the only issue that was open between the

3    debtor and the TCC with respect to the order.  It sounds like

4    Mr. Stang has two.  So, I'm not aware of two, but I am aware

5    of one and that was the other issue with respect to the order

6    that I was going to address.

7          THE COURT:  Okay.  Let me hear that?

8          MS. BOELTER:  The issue that I'm aware of, Your

9    Honor, is that the TCC had requested language in the order

10   finding that the filing by an abuse survivor of a proof of

11   claim form did not waive that abuse survivor's right to a

12   jury trial.  Similar to the logic, I guess, that Your Honor

13   just applied with respect to Paragraph 11 and was argued by

14   Mr. Stang its the debtors' view, one, that we didn't ask for

15   any relief specifically with respect to the implications of

16   filing a proof of claim form on jury trial rights and, two,

17   the law is what the law is.  And adding language to this

18   order that may affect the current state of the law with

19   respect to the implication of filing a proof of claim form in

20   Delaware we just simply felt was inappropriate and have not

21   added the language.

22          That is the only open issue that we, the debtors,

23   are aware of in the proposed form of order.

24          THE COURT:  Thank you.

25          Mr. Stang, why should I deviate after you just

1  heard me talk about I'm not going to deviate from the code

2  and the law?

3           MR. STANG:  Your Honor, I generally ask for this

4  kind of provision in a bar date order in these cases because

5  of the Supreme Court's opinions about filing a proof of claim

6  constitutes a waiver of a jury trial right.  I am familiar

7  with the statute that says that nothing -- I'm paraphrasing,

8  nothing changes your right to a jury trial.  But it's because

9  of those Supreme Court opinions that talked about the impact

10 of filing a proof of claim.

11          THE COURT:  Okay.  I'm not going to add -- and I

12 think there does not need to be anything in this order with

13 respect to the effect of filing a proof of claim.  It is what

14 it is.  And if it becomes an issue in any particular case, we

15 will address it, but I'm not going to require anything about

16 the effect of filing a proof of claim form.  The parties have

17 choices to make.

18          MR. STANG:  Thank you.

19          THE COURT:  Thank you.

20          MR. STANG:  I can tell you know what the second

21 one it.  It was the subject of an email that we sent out last

22 night, but if everyone read every email that went out after

23 last night God bless them.

24          Your Honor, it's in Paragraph 5 of the order.

25 Actually, it's in Paragraph 4(h) of the order and Paragraph

1 | 5(ii) of the order.  The language is identical.  So, I think

2 | if we just focus on 4(h) and address it the result will be

3 | the same depending on your ruling.

4 | Your Honor, there is a sentence that's about

5 | halfway down that starts "For the avoidance of doubt," and

6 | it's that sentence that I wanted to talk about.

7 | THE COURT:  It's in which paragraph?

8 | MR. STANG:  It's in Paragraph, I thought it was 4,

9 | but I'm going to scroll up to make sure that I've got the

10 | right cross reference.

11 | MS. BOELTER:  Your Honor, if you're looking at

12 | that blackline that I directed you to its on Page 8 of the

13 | blackline that was filed early this morning.

14 | MR. STANG:  Yes.  Thank you.

15 | THE COURT:  Thank you.

16 | MR. STANG:  It's the sentence, Your Honor, that

17 | begins "For the avoidance of doubt."

18 | THE COURT:  In the order?

19 | MR. STANG:  The actual paragraph begins,

20 | "Any sexual abuse survivor who believes that she

21 | or he has. . ."

22 | There it is, that's it.  Whoever's moving the

23 | cursor that's the sentence.

24 | THE COURT:  Okay.  Thank you.  I've got it.

25 | MR. STANG:  So, after you're done reading it, Your

1  Honor, I'll tell you want my concern is.

2           THE COURT:  Okay.

3           MR. STANG:  All right.  So, Your Honor, it is the

4  tort committee's goal to have as many people file proofs of

5  claim as possible regardless of what they believe the statute

6  of limitations may be for asserting the claim.  Our focus on

7  that was because once the debtor has a discharge and if a

8  state statute of limitations is subsequently changed such as

9  a window opens up in Texas, a year after the debtor gets its

10 discharge that an argument could be made that the discharge

11 relief is in effect notwithstanding the subsequent change in

12 the statute of limitations.

13           There is a statute of limitations that is viewed

14 by most courts as a defense and you still have a right to

15 payment as defined by the code regardless of whether or not

16 there's a statute defense.  That is what we want people to

17 file claims even if under their state law an attorney would

18 advise that their statute barred.  That is why the notices

19 say no matter when you were abused or how old you are you

20 should file a proof of claim.  That is why that's in there.

21           This sentence says to someone if your claim is

22 time barred you should file your proof of claim to preserve

23 your claim if there's a subsequent change in the statute of

24 limitations.  Well, then it says you will not be treated as a

25 creditor with respect to such claim for purposes of voting

1   and distribution.  What we suggested that there be a period

2   after the sexual abuse claim and before in the event of a

3   change in the applicable statute of limitations.  Just put a

4   period that says you are required to file a proof of claim in

5   order to preserve your right to pursue that claim.

6          The reason that -- what we're concerned about is

7   if the court has determined your claim is time barred then

8   you shouldn't be getting any money, but that adjudication

9   happens at different levels.  It can be a trial court

10  decision that's on appeal.  It's not final till its final.

11         There have been instances in other cases where the

12  TBP's or allocation programs have given some distribution to

13  someone who was time barred to just try to settle the matter.

14  And in fairness if people whose claims are timely from a

15  statute perspective, who want to share some of their money

16  with a fellow abuse survivor whose claim is time barred we

17  would want the TBP's to allow that to happen.

18         Fundamentally, most survivors view statutes of

19  limitation as something that all the defendants want.  I have

20  seen a lot of survivors say, you know, we're not going to

21  distribute money on the basis that you were abused in Wyoming

22  and I was abused in New York with a window so I get all the

23  money and you get nothing.  Their brotherhood or sisterhood

24  overcomes that legal objection.  And the way this is written

25  -- I'm not saying that will happen in this case, but it might

1  happen in this case and the way this is written it precludes

2  a plan or a TBP to provide for that because it says you can

3  only get money if your statute of limitations changes to make

4  your claim timely and no longer time barred.

5          That's it, Your Honor.

6          THE COURT:  Okay.  So, Mr. Stang, you want the

7  sentence to end after in the event of a change in the

8  applicable statute of limitations?

9          MR. STANG:  No.  I would like it to read in order

10  to preserve the right to pursue a sexual abuse claim, period,

11  and then delete everything from in the event of a change to

12  the end of the sentence.

13          THE COURT:  Okay.

14          MR. STANG:  Yeah, to the end of the sentence.

15          THE COURT:  Okay.  Ms. Boelter?

16          MS. BOELTER:  Your Honor.

17          THE COURT:  Yes.

18          MR. STANG:  This is dictating treatment of the

19  claim.  That -- I guess that's it.

20          MS. BOELTER:  Your Honor, this Jessica Boelter.

21  If I may just respond because I actually don't think we have

22  a substantive disagreement with Mr. Stang here. I think this

23  is just a wording issue.

24          A little bit of background on the language in this

25  particular provision.  First, we are in agreement with Mr.

1  Stang that individuals should file proofs of claim regardless

2  of the status of the statute of limitations in their

3  particular jurisdiction because we further agree with Mr.

4  Stang that the debtors' ultimate discharge in this case would

5  discharge those claims in the event they were for the statute

6  of limitations change.  So, we think it's critically

7  important that individuals file proofs of claim regardless of

8  the state statute of limitations status in their particular

9  jurisdiction.

10            I think the confusion with this language, and it

11  doesn't just appear here, it also appears in respect of the

12  general bar date, in response to comments that the debtors

13  received, I believe, from the United States Trustees Office

14  this sentence at one point, I believe, concluded with, sort

15  of, standard bar date language or your claims shall be

16  forever barred, you know, you won't be able to assert it

17  against the debtors.

18            I believe it was at the request of the United

19  States Trustees Office, but Mr. Buchbinder can correct me if

20  I'm wrong.  The U.S. Trustee asked that we not use language

21  of that type and rather use language along the lines of such

22  individual just would not be treated as a creditor in the

23  bankruptcy case.  That appears in a couple of different

24  places, I believe, in this order.

25            So, while I don't think we have any substantive

1  disagreement with Mr. Stang on this, I think this is the

2  product of, you know, original language being modified to

3  satisfy a particular purpose.  And, you know, in Mr. Stang's

4  view not working for the purpose of sexual abuse survivors.

5  But we certainly, I don't think, were attempting to take an

6  action that he suggests.  We want these individuals to file

7  proofs of claim.  If they don't their claims will be

8  discharged.  We want to convey that very clearly.  If there

9  is a better way, we can do that, happy to have that

10 discussion with him.

11          THE COURT:  Okay.  I will let you have that

12 discussion, but it does seem to me that where Mr. Stang wants

13 the sentence to end conveys --

14          MS. BOELTER:  The message.

15          THE COURT:  -- the message that you want those

16 parties to file.

17          MS. BOELTER:  Your Honor, I agree with you.  I'm

18 looking at it and I don't have an objection to that.

19          THE COURT:  Okay.  Yeah.  The consequence of not

20 filing a proof of claim by the bar date I think is also

21 accurately reflected in the language that says they shall not

22 be treated as a creditor with respect to such claim for the

23 purposes of voting and distribution.  I'd have to look at

24 Rule 3003, but I think that's pretty verbatim from Rule 3003

25 which is where I look to, to determine the effect and often

1  have to change the language in a proposed bar date order to

2  insure that it merely reflects what the rules in this

3  instance provide, but I think the language in between may not

4  be necessary.

5          MS. BOELTER:  Yeah.  That is, I think, exactly,

6  sort of, the genesis of the change to the backend of this

7  clause and the use of this language. It was changed in other

8  portions of the form of order. It may not be reflected in

9  this particular draft because it occurred in prior drafts,

10 but it was to comport with that concept there at the tail

11 end.  And if we need to delete as you suggested, Your Honor,

12 in the event of a change in the applicable statute of

13 limitations the debtor has no objection to that.

14         THE COURT:  Okay.  Anymore issues that anyone has

15 with the order before we move on?

16         MR. BUCHBINDER:  Your Honor, this is Dave

17 Buchbinder.

18         I can simply confirm that the changed language

19 does conform to Rule 3003(c)(2).

20         THE COURT:  Thank you.

21         MS. BOELTER:  We're getting near the end, Your

22 Honor.

23         In my mind we have only one issue left to address

24 and that is on the, what we sort of colloquially refer to,

25 long form notice which is the sexual abuse survivors notice.

1   It is attached as an exhibit to the order. If you're looking

2   at 667-2, which was the overnight filing, it's in Exhibit B

3   in the blackline.

4          The first place I'd like to take you is Page 34 of

5   75 of that blackline.  This is not an issue, Your Honor.

6   It's a resolution, but I wanted to point it out because we

7   received multiple comments from parties on it.  What is the

8   bankruptcy about, you will see that deleted in the blackline,

9   as well as what is Chapter 11, and the flow chart in

10  connection with that what is Chapter 11 was objected to by

11  the TCC, the United States Trustee, I believe, and I also

12  believe that Century took issue with the flow chart.  We have

13  removed all of that material.  So, that should resolve those

14  objections.

15         Again, that was filed in the overnight hours and I

16  wanted to make it very clear on the record that we have, in

17  our view, satisfied that objection.

18         The only remaining issue, and I'm not sure if it

19  is, in fact, remaining due to the overnight filing, but I

20  think we should address it, occurs on Page 39 of 75 of 677,

21  its Page 8 of the actual notice itself.  That is the notion -

22  - you will see the question here, question is No. 9 now on

23  the blackline.  What could be released under the plan of

24  reorganization?

25         This had received an objection from the United

1  States Trustees Office.  We have modified language.  You

2  don't see it in this blackline because that was filed on

3  Thursday night.  We believe to have addressed their

4  objection, but I'm going to walk the court through it in any

5  event.  Then we also heard from the TCC last night that they

6  may, in fact, have an issue with this language.  So, I wanted

7  to bring it to the court's attention.

8           Originally, this language, essentially, said what

9  is being released under the plan or reorganization and said

10  in probably a more unequivocal fashion that a plan had been

11  filed and that the plan could provide for releases of third-

12  parties beyond just the debtors that it would potentially

13  provide for releases of the local counsel's and chartered

14  organizations.

15          We changed the language to say what could be

16  released.  We've noted that and we changed the words to be

17  "could, may," and midway down we've also said,

18          "Please note that a Chapter 11 plan has not yet

19  been proposed for solicitation or agreed to by any parties in

20  interest in the Chapter 11 proceeding."

21          Once it becomes available this is where you can

22  find it.  Then we finally added a sentence at the end of this

23  section that says,

24          "Again, please note BSA is the only debtor here.

25  Local counsel and chartered organizations are not.  So, if

1  you believe you have claims against them you may need to take

2  additional legal action."

3          That was language that was specifically requested

4  by the tort committee.

5          As I understand it there is some objection to

6  including this type of, what we view as, critical due process

7  language in a notice pertaining to the bar date particularly

8  because no party has yet agreed to any sort of releases for

9  local counsel, or chartered organizations, or any plan for

10 that matter.

11         For our perspective, Your Honor, we've

12 appropriately now caveated the language, but as I said at the

13 outset this is an extraordinary noticing program.  It's going

14 to go to 110 million individuals.  It's extraordinarily

15 expensive and it is very time consuming.  We think from a due

16 process perspective the fact that we have an ad hoc group of

17 local counsel, we know that they will be participating in the

18 mediation and we are very optimistic that we are going to

19 globally resolve these cases.

20         We think we would be remiss if we did not take

21 this opportunity to provide broad notice to all of the

22 potentially millions of people that are going to look at this

23 notice that the ultimate agreement in this case may affect

24 more than just BSA.  It may affect other parties.  We think

25 from a due process perspective that's critically important.

1  We don't want to incur the $7 million dollar cost again of

2  this notice.  So, that's why we've left the language in.

3          I don't want to speak for Mr. Buchbinder or Ms.

4  McCollum, but I think that with it being caveated the way it

5  is now it does resolve their objection.  Candidly, I'm not

6  sure where the TCC is at this morning with respect to this

7  particular language, but we think it is now (indiscernible)

8  to be appropriate for the type of noticing that we're

9  contemplating.

10          THE COURT:  Mr. Buchbinder?

11          MR. BUCHBINDER:  Yes, Your Honor.  Dave

12  Buchbinder.

13          The revised proposed language is acceptable to us.

14          THE COURT:  Thank you.

15          Mr. Stang?

16      (No verbal response)

17          THE COURT:  Mr. Stang, you're muted.

18          MR. STANG:  Thank you, Your Honor.  I apologize.

19          Your Honor, the language is not acceptable to us

20  because we do not think that a claim's notice for a specific

21  debtor could preview what that debtor wants to do in its

22  plan.  The problem is very practical.  You have states that

23  currently have windows of statutes of limitation that go

24  beyond the agreed upon bar date.  New York, if Governor

25  Cuomo's edict to extend the window in New York is effective,

1   he did it by order as opposed to legislative change, takes

2   you out into the beginning of January 2021.  New Jersey has

3   all of 2021 as an open window.  California had a total of

4   three years, it goes out to, I guess, 2022.

5         So, you have got a dynamic here where we have a

6   deadline for the Boy Scouts.  They're not arguing that your

7   order can't truncate a statute of limitations for the debtor,

8   we know that it can.  What your order cannot do is truncate

9   it for local councils, chartered organizations, or anyone

10   else.  What we're concerned about is that people are going to

11   think, well, if I file this proof of claim it's going to

12   count as against the counsels, it's going to count as against

13   the chartered organizations, so I don't have to do anything

14   else.  And meanwhile your window closes.  Obviously, every

15   state has some statute of limitations, but I'm focusing on

16   the windows particularly because that's clear.  Those states

17   have no statute of limitations for child sex abuse for the

18   period of that window.  And people don't file their law suits

19   or don't go to see a lawyer who could file the lawsuits for

20   them because they said, oh, I filed a BSA claim.

21         Now I know what BSA wants to achieve in its plan.

22   I know it wants to have a very broad challenging injunction

23   for the local councils and possibility for the chartered

24   organizations as well, but that's a very different bear to

25   wrestle with because there are just many more of them then

1  there are local councils, but I know what they want.

2          If I'm reading this and I am not in an attorney --

3  and how many times do you have people come in front of you

4  and say I'm an attorney, but I'm not a bankruptcy attorney,

5  so forgive me for all my mistakes.  And they read this and

6  they may go, well, I guess I crossed the T and dotted the I's

7  to the councils and the organizations.

8          And I appreciate the disclaimer down in whatever

9  paragraph number that is towards the bottom, but these

10 constant references to the local councils and local

11 organizations I think is very confusing. It's in the first

12 bullet point, it's in the third bullet point that if you do

13 not file a claim you may lose your rights against the local

14 councils and organizations.  Well, I filed a claim, I guess I

15 didn't lose my rights against them; ah, but you did if you

16 didn't file a lawsuit within the statute of limitations for

17 your state.  And that is the problem with this.

18         It's confusing because the disclaimers that we are

19 used to reading and understanding as sophisticated counsel

20 are not satisfactory for someone who doesn't have that

21 background and experience.

22         THE COURT:  Mr. Stang, where is the bullet point

23 that you're referring to which references --

24         MR. STANG:  It's in the first one, Your Honor, and

25 it's in the blackline.  It starts, "Please read this notice

1  carefully," that's the first time that they use it.  The

2  second time they use it -- there may be others, but if you do

3  not -- this is No. 3 I think it is, "If you do not file a

4  sexual abuse claim by the date you may lose rights against

5  BSA councils and organizations."  I read that to say if you

6  do it by the date you won't lose those rights.

7       THE COURT:  Is there somewhere in the form or the

8  notice maybe that says that filing a proof of claim here does

9  not -- I don't know if preserve is the right word, but does

10  not preserve your rights against the local councils?

11       MS. BOELTER:  There is, Your Honor.

12       MR. STANG:  Your Honor, I don't know if it's here,

13  but it's definitely in the proof of claim because when you're

14  asked to identify the chartered organization or the local

15  council there's a bracket that says, in effect, if you have

16  rights against these entities you have to do something else.

17  So, it does say that.

18       MS. BOELTER:  And, Your Honor, we may -- now that

19  Mr. Stang articulated his position, I think I understand it

20  better actually.  The language that we had inserted under

21  Question 9, which is the last sentence of that, "Please

22  further note that only BSA is the debtor in BSA's Chapter 11

23  proceeding and other third-parties are not."  And as Mr.

24  Stang just indicated, that language is present in the proof

25  of claim form on, at least, two occasions that I can think

1 of.

2          One, we can bold this language, but, two, we can

3 also copy and paste it into the front bullet points on the

4 first page of the notice so that individuals clearly

5 understand that if they believe they have claims against

6 local councils or the other organizations they need to take

7 additional legal action to preserve those claims.  We have no

8 issue with that.

9          THE COURT:  I think it needs to be bolded.  Maybe

10 the order if this paragraph, which is unusual, remains in,

11 this new Paragraph 9, maybe it needs to be flipped so that it

12 starts out with please note only BSA is the debtor and if you

13 have a claim you better file it against someone else, but

14 then underneath that the Chapter 11 plan may seek to do

15 something because I do have a concern.  I certainly don't

16 want anyone to think that they do not need to bring a

17 separate claim against a chartered organization or a local

18 counsel.  And I'm, of course, not pre-judging what the plan

19 is going to actual provide for when ultimately approved.

20          MR. STANG:  Your Honor, if we relocated -- not

21 relocated, but duplicated those last two sentences up at the

22 top where the first time it's mentioned about local councils

23 and flipped it the way you just described I think that

24 addresses our concerns.

25          THE COURT:  Okay.  I'd like you all to work on

1  that.

2           MS. BOELTER:  We will, Your Honor.  Thank you.

3           So, Your Honor, that concludes all of the open

4  issues that I am aware of with respect to the bar date order

5  and the seven exhibits.  Again, just to recap for the court

6  on the abuse survivors' proof of claim we had the non-

7  consenting scout participant issue as well as the two

8  narratives.  Then, finally, you know, the insurers, I

9  believe, wanted additional questions particularly if the

10  language in the proposed form of order that they had

11  submitted was not going to be accepted.  So, that's our open

12  issue there.  On the notice I think we just resolved all of

13  the open issues and I think we are resolved on the form of

14  order itself.

15           THE COURT:  Okay. So, I have not heard from others

16  on the proof of claim form.  The language regarding the

17  optional or not optional narrative and the language with

18  respect to non-consenting adult scouting participants.

19           MR. STANG:  Your Honor, can we start with the non-

20  consenting adult paragraph?

21           THE COURT:  That's fine.

22           MR. STANG:  And, Your Honor, at least one of the

23  attorneys representing a committee member, that attorney's

24  name is Paul Mones, is on the line and would like to

25  specifically speak to this issue, but let me give a preview.

1          We appreciate the importance to BSA of getting a

2    discharge for any claim that may be against it.  No debtor

3    wants to have exceptions to its discharge.  We understand

4    that.  But there has got to be a balance between that goal

5    and getting survivors a very clear message as to what the

6    claim form does and whether it applies to them.

7          The problem with including their language is that

8    they have introduced the concept of consent.  Nowhere in the

9    definition of sexual abuse, except in reference to the

10   adults, is there a reference to consent.  And this is the

11   dynamic that child sex abuse survivors have.  And if Mr.

12   Conte's declaration does not address this efficiently, he is

13   still on the phone and on the video.  But I would note that

14   his declaration at Page 9(vi) addresses this inclusion of

15   adults in the definition.

16         Someone who has been serially abused often is

17   confused about whether he or she consented to the physical

18   contact.  Let's just give an example; you're abused at a Boy

19   Scouts summer camp, and next year all your friends are going

20   again, and the year after that all your friends are going,

21   and you know that Scout Leader Joe is going to be there, he's

22   the one that touched you last time, and you go, and he does

23   it again, did you consent to his touching you?

24         Now we all know that someone under the age of 18

25   cannot legally consent to that.  No one has really disputed

1  that.  I don't think anyone disputes that.  But you as the

2  survivor say I went back, I knew he was going to be there,

3  and I went back and it happened again, well, so maybe I

4  didn't run out of the tent screaming, he touched me, he

5  touched me, I tolerated it and it's exactly what he did to me

6  last year.  Did I consent?

7          Now this form says non-consent as to the adult

8  and, well, maybe I consented and I should have filled this

9  out.  That is the problem from a claim perspective of

10  introducing the concept of non-consent.  Now I also believe

11  that the instances of non-consent, consent with an adult I

12  mean it's different.  I think Dr. Conte says it is different.

13          So, from my perspective that is the problem with

14  including this.  I do acknowledge that they want to capture

15  anyone who was in their scouting program from 18 to 21 who

16  had non-consensual abuse, I get it.  This claim form is

17  directed -- I believe it a meniscal part of the problem,

18  practically, probably, and Mr. Mones can speak to this,

19  possibly non-existent.  I get what the debtor is trying to

20  do.  This just isn't the right place for it.  So, much like

21  they have directed the bullying and hazing stuff to the

22  general claim form they could direct this particular type of

23  claim to the general claim form.

24          So, Your Honor, Mr. Mones would like to speak to

25  this as well.  He will introduce himself and tell you his

1  expertise in representing child sexual abuse victims.  Then

2  that would be the committee's comments on this part of the

3  proof of claim.

4          THE COURT:  Okay.

5          MR. MONES:  Good morning, Your Honor.  Paul Mones.

6          THE COURT:  Yes.

7          MR. MONES:  Good morning.  Thank you, Your Honor.

8          I have been representing abuse victims for other

9  thirty years and actually was the lead counsel in the

10  Portland case in 2010.  Your Honor may be aware of it, it

11  stared this whole avalanche of litigation against the Boy

12  Scouts which resulted in, unfortunately, their filing this

13  Chapter 11.

14          The mention of the non-consensual will not just be

15  confusing to claimants, but also be harmful, I believe.  That

16  is to say that in this situation people who are victims of

17  abuse as children always have, in addition to what Mr. Stang

18  said, an over-arching feeling of guilt that stays with them

19  their whole life that because of the nature of the abuse

20  which occurs after long periods of grooming and cajoling by

21  the leader who is in the position of authority, the person

22  doesn't, as an adult, view their behavior as oppositional.

23  They say I didn't do anything to oppose the perpetrator.

24          So, to that extent the notion of consent is always

25  something that is lingering in their consciousness.  By

1  inserting the notion of non-consenting adults into this,

2  really, almost out of left-field, Your Honor, in this claim

3  form we are really risking injecting confusion to large

4  segments of the potential claimants.

5          Moreover, the entire bankruptcy that the Boy

6  Scouts have filed here is predicated on victims of child

7  abuse.  In fact, if you look at their notice, in fact, it

8  doesn't mention adults at all; it talks about child sexual

9  abuse.  So, now at this later date they want to insert adults

10  into it.  You know, do adults between the ages of 18 and 21

11  have a potential position to make a claim, maybe, yes, that

12  has to be there.  But it's not in the child abuse claim form

13  whatsoever.  Those numbers would be so de minimis because if

14  we get into the weeds on it -- Your Honor, I know this may

15  not be specifically relevant to the claim form itself, but

16  consent under the laws in all 50 states is very, very narrow

17  for an adult.  It limits it to intoxication or somebody who

18  is mentally incapacitated in a way where they can't give

19  that, we say in the State Court law is a vulnerable person,

20  somebody who has mental challenges.

21          So, to that extent we're dealing with a de minimis

22  number of people to begin with and injecting that into this

23  claim form, we believe, unnecessarily risks of harm and

24  confusion outweigh any kind of potential benefits.

25          Thank you, Your Honor.  I appreciate the

1   opportunity to address the court.

2              THE COURT:  Thank you.

3              MS. BOELTER:  Your Honor, may I respond?  This is

4   Jessica Boelter.

5              THE COURT:  Yes.

6              MS. BOELTER:  Your Honor, I wanted to explain the

7   provision that Mr. Stang and Mr. Mones just spoke to and

8   provide a little more detail then I did at the beginning of

9   my remarks.

10             First, Mr. Stang is right. The reason the word

11  non-consensual was inserted into the draft is because by

12  definition children are unable to consent.  So, anyone under

13  the age of 18 is simply unable to consent to a sexual act as

14  described in the definition.  Adults are a different story.

15  Individuals over the age of 18.

16             I take issue and I hope I misunderstood Mr. Mones

17  when he said that there are very limited circumstances that

18  constitute non-consent to an adult limited to mental illness

19  or incapacitation because I'm quite certain there are a

20  number of victims of sexual assault that would disagree with

21  him vehemently with respect to that characterization.

22             The Boy Scouts are aware of or I'm aware of, at

23  least, one instance where an adult scout participant has

24  claimed an abuse claim based upon non-consensual sexual

25  activities as defined in this form. So, this is not something

1  that's not real.  It is, in fact, real.  And from the

2  debtors' perspective we just simply don't think it makes

3  sense if we need the exact same type of data from an adult

4  scout participant that we need from child scout participants

5  to defer those individuals to a different form or to create

6  yet another form that looks identical to this form, but only

7  deals with adults.

8          So, from our perspective we meant, one, no offense

9  or confusion and did not mean in any way to, sort of, re-

10  victimize individuals who seeing the word "non-consensual"

11  may be confused.  It was simply to differentiate between

12  children and adults, and consent issues for children and

13  adults, but we continue to believe that adult scout

14  participants which are, in effect, individuals under the age

15  of 21 we need to gather that information for those folks.

16  So, that's why it's included in the draft.

17          MR. STANG:  Your Honor, may I briefly respond?

18          THE COURT:  Yes.  And can you tell me, again,

19  where you point to Dr. Conte's declaration on this?

20          MR. STANG:  Your Honor, I believe I did.  My notes

21  show, I only have some many screens, I apologize, my notes

22  show that he addressed the issue of adult abuse victims at

23  his declaration which I believe is at Docket No. 601, Page 9

24  and I wrote down (vi).  That is where he does discuss adult

25  issues.  I am going to have to --

1          THE COURT:  Yes.

2          MS. BOELTER:  Your Honor, just one clarifying

3  point.  The draft of the form that Dr. Conte was opining on

4  was a form that just generically talked about non-consensual

5  adult/un-adult abuse.  Based upon conversations with the TCC

6  and, again, I understand they're still objecting, but based

7  upon conversations with the TCC we narrowed the scope to

8  adult scouting participants which, again, is a finite group

9  of individuals under the age of 21.

10          So, I'm looking at (vi) on Page 9 of his

11  declaration at 601, I just want to point out for the court

12  that the document that he was commenting on was just talking

13  about adults generically, not the 18 through 21-year-olds

14  that we have now modified the form to address.

15          THE COURT:  Okay.

16          MR. MONES:  Your Honor, this is Mr. Mones.  May

17  just give a brief response to Ms. Boelter's statement?

18          THE COURT:  Yes.

19          MR. MONES:  Thank you, Your Honor.

20          I wasn't meaning to exclude this other group of

21  adults who say they did not consent to the sexual abuse, but

22  the majority of cases would involve consent as I believe I

23  elucidated, if it did exist.  More importantly, I just want

24  to reiterate again people looking at it who are the vast

25  majority, the vast majority will look at the word non-

1   consensual and think that I consent.

2           That is the over-arching point, Your Honor, that

3   we cannot emphasize strongly enough because it doesn't say

4   under the sexual abuse for child sexual abuse children don't

5   consent even though Ms. Boelter said it's a definition by

6   law, that is not going to be the understanding of the vast

7   majority of Boy Scouts who have been victimized, especially

8   those who have not gotten any treatment and don't understand

9   that it's not their fault.

10          That's all I have to say about it, Your Honor.

11  Thank you very much.

12          THE COURT:  Thank you.

13          Well, I guess I have a couple of questions as I'm

14  reading this.  The definition lumps everyone together, it

15  lumps together in the same paragraph the child and then the

16  non-consenting adult scouting participant.  And I wonder if -

17  - and I'm just trying to balance additional forms.  There

18  would have to be, I suppose, some way to let non-consenting

19  adult scouting participants know, like you do in the last

20  paragraph here, in that section to file some other form.  So,

21  there's going to have to be a reference somewhere, I think,

22  to non-consenting adult scouting participants who lead them

23  somewhere else or -- I don't see how you get around that and

24  make sure that they're included.

25          Of course, I have no idea the relative numbers of

1  non-consenting adult scouting participants; although, clearly

2  this case is directed at child sexual abuse.  So, I'm

3  wondering if it could be divided into two parts where it's

4  clear that you have victims of what is sexual abuse, victim

5  of child sexual abuse, victim of non-consenting adult

6  scouting participant, somehow to distinguish between those

7  two.  I don't know that that ameliorates the harm.  But how

8  do you get around telling non-consenting adult scouting

9  participants that they have to go somewhere else.  It's going

10 to have to be mentioned somewhere in the form, isn't it?

11            MS. BOELTER:  Your Honor --

12            MR. STANG:  Your Honor, this is Mr. Stang.  I'm

13 sorry, Ms. Boelter, go ahead.

14            MS. BOELTER:  I was just going to say, Your Honor,

15 first of all, I think we hear your point that the word non-

16 consent does need to be in the form somewhere even if we were

17 direct folks to a different proof of claim form as we do in

18 the last sentence.  I don't know how else to -- we certainly

19 don't want to invite, you know, just all adults to be filing

20 claims.  It needs to be specific to this category of

21 individuals.

22            We can certainly -- with that and -- you know, I'm

23 interested to hear Mr. Stang's views because truly we just

24 want to get to the right answer here.  We're happy to work

25 with the TCC and Mr. Mones on, you know, moving that language

1  down, setting up a separate definition, but I do hear your

2  point that we're going to have to use the word and we're

3  going to need to find a mechanism for these individuals to

4  submit claims; whether it's this proof of claim form or

5  otherwise.

6         MR. STANG:  Your Honor, we'll work it out, but I

7  think you could add another paragraph either before or after

8  the reference to, what I call, the bullying or hazing

9  paragraph and say something very similar.  If you are a non-

10  consenting adult scout participant with a sexual abuse claim

11  you should consult the rest of the text from the hazing and

12  bullying.  Maybe we're taking a little bit of a bet here, but

13  if they got a number of these claims then they could follow-

14  up and say to those folks we would now like you to fill out

15  this form.  They have filed their proof of claim.

16         As I said before in connection with some of the

17  other comments, nothing here stops people from taking

18  additional discovery, nothing should stop the Boy Scouts from

19  having a follow-up with someone that they have questions,

20  that they want to pose questions to. Whether that takes the

21  form of a mandatory set of questions is something that they

22  can take up with us, the other committee, they can go to you

23  if they don't think we're being reasonable, but perhaps just

24  another paragraph much like the hazing and bullying one would

25  be sufficient.

1           MS. BOELTER:  Your Honor, I think we could make

2   that work.

3           MR. MONES:  Your Honor, this is Mr. Mones.

4           I would support Mr. Stang's argument in that

5   respect because what will happen, I think, and Ms. Boelter

6   maybe hinted at this as well is that if we put the word adult

7   in there in this form it's going to open the potential

8   floodgates for people who are not victims of sexual abuse,

9   but, for example, and 18-year-old is on a hike and an adult

10  says something to him, an off colored joke, well that person

11  can argue I didn't consent to that joke being told.

12          So, we don't want to get into the weeds on what I

13  do believe is -- I've been doing this for many, many years,

14  Your Honor, and while (indiscernible) is not evidence, I can

15  tell you that just for purposes of the burden that would

16  impose on the claim form putting adults in here just does not

17  seem to be worth what the unbelievable burden it would impose

18  upon the claims process and, again, the harm that would be

19  (indiscernible) Mr. Stang said and I'm sure Ms. Boelter and

20  us we can work this out.

21          Thank you, Your Honor.

22          THE COURT:  Okay.  I will give you an opportunity

23  to work it out. I do note that Dr. Conte says in (vi) he has

24  a slightly different take which is that the inclusion of

25  these other individuals which are the adults abused as

1  adults, potential creditors who were bullied or

2  psychologically mistreated, at least as I'm reading it, the

3  inclusion of them in an effort to identify sexual abuse

4  survivors is potentially confusing to adult survivors and

5  minimizes their experience versus someone who was bullied.

6          So, we have to be careful that the adult survivors

7  also have the opportunity to make their claims and that their

8  claims, the non-consenting, whatever we're calling them, non-

9  consenting adult scouting participants who, at least from my

10 very lay point of view, I would take the view that they could

11 be broader then the categories Mr. Mones suggested.  I would

12 agree with Ms. Boelter that saying no might evidence non-

13 consent.  That's me, that's my take.  I don't think that Ms.

14 Boelter actually said that.

15         So, we don't want to minimize their experience

16 either.  So, I'd give them an opportunity to make their

17 claims even if it's a smaller group of victims.  So, I think

18 we suggested a couple ways this might work.  I'd like the

19 parties to talk and see if they can agree on that.

20         MS. BOELTER:  Very good, Your Honor.  We will do

21 that.

22         THE COURT:  Okay.  We still have the optionality

23 issue that we addressed earlier that I don't think I heard

24 anyone speak about, the option to provide a narrative and

25 whether there needs to be more language around the option.

1          MR. STANG:  Yes, Your Honor.  This is Mr. Stang.

2          I appreciate Ms. Boelter's comments about how

3    they're trying to be sensitive, but we have no evidence that

4    they've consulted with anyone regarding the substance of this

5    proof of claim form as opposed to how you get it noticed out.

6    What the Boy Scouts think, if they think they're sensitive,

7    I'm sure everyone this call is well intentioned, but when a

8    child sex abuse survivor hears the Boy Scouts are being

9    sensitive that just doesn't ring too much with them.

10         I think in this area lot of deference should be

11   given to what the abuse survivors think.  Ms. Boelter, I

12   think, eluded to this.  Maybe it was Mr. Andolina.  My

13   committee members, not the counsel, my committee members have

14   probably spent over ten hours going over every word of these

15   notices and proofs of claim.  They are the ones who are going

16   to fill them out.  Now they're lucky.  They've got lawyers

17   and those lawyers are going to put down whatever they want to

18   put down and probably they're like Mr. Mones, you know, they

19   have a lot of experience and they will fill it out as

20   completely as they think they need to, to make their case.

21   And they know their audience.

22         Someone who doesn't have counsel is, in effect,

23   being told you must do it this way.  The pleas, it softens it

24   a little bit, but it's not the same.  So, I would ask the

25   court to consider the fact that the people who actually have

1  to put off this claim for actually made these comments, not

2  just coming from lawyers arguing what they would like to see.

3  Dr. Conte's testimony which is uncontroverted except for an

4  advocate for the Boy Scouts saying we're being sensitive.

5          So, I don't think that comments that counsel made

6  for the insurance companies -- at one point, I wrote it down,

7  he said the proof of claims it doesn't validate the claim.

8  Well, no one is asking this proof of claim to be

9  unchallenged.  No one is saying there can't be follow-up.

10 The suggestion that these checking the boxes is somehow easy,

11 and that kind of started to tie into maybe these folks are

12 lying because you could check a box.

13         Some of the conduct that's in those check the

14 boxes is pretty specific.  I suspect that that's hitting a

15 lot of the basis. If insurance counsel has a few more

16 examples of sexual abuse and molestation that they think we

17 didn't include they should tell us, but you're still filling

18 that box out when you're a survivor.  You're still saying

19 that someone penetrated you by checking the box.

20         I think the idea that you're telling a survivor

21 that they must put this in, that their prior description

22 isn't good enough in the context of a claim form, especially

23 for the unrepresented people, it goes to all of the issues

24 that Dr. Conte had in his declaration about how the claim

25 form can do harm.

1          We understand that everybody needs to know

2   something about these claims.  Saying I was abused is going

3   to lead to more questions, but this claim form does so much

4   more than that.  I think that survivors who are, some of whom

5   will be addressing this abuse for the first time in the

6   context of a legal proceeding with a deadline that, you know,

7   they're being told you must do something by a certain date

8   need to be given the consideration that Dr. Conte addresses

9   and that the committee members, themselves, feels is

10  necessary.

11          THE COURT:  Mr. Stang, do you -- thank you -- do

12  you have specific language -- and I'm trying to look back to

13  where it started about -- do you have specific language that

14  you want to see before the narrative section?

15          MR. STANG:  Your Honor --

16          THE COURT:  You're not suggesting we eliminate the

17  narrative; you're suggesting it be optional.

18          MR. STANG:  Yes, we are not suggesting elimination

19  of the narrative and, Your Honor, Ms. Cantor, my partner, is

20  on the phone, and I don't have the exact words in my head,

21  but she has been working on this for weeks and maybe she

22  knows the exact words that we're looking for.

23          MS. CANTOR:  Yes, Your Honor, Linda Cantor.

24          We've suggested language, "If you wish to provide

25  a narrative, please do so below."

1          THE COURT:  Okay.  Well, based on the testimony of

2    Dr. Conte with respect to narratives, I agree that the

3    narratives should be -- should express that it is optional in

4    some fashion, whether it's if you wish to do this or please

5    further describe if something, you know, something that

6    suggests that additional information is welcomed, I think is

7    the way to put it.

8          And I was trying to find the place, Ms. Boelter,

9    where you said it occurs in the beginning of the form, but I

10   think it would be helpful to not only have it there, but to

11   have language right where you get to the narrative and you're

12   going to provide it.

13         MS. BOELTER:  Understood, Your Honor.  We will

14   work with the TCC for purposes of Parts 4 and 5 of the form.

15         THE COURT:  Okay.  Do you have any other issues

16   outstanding that I have not ruled on with respect to the form

17   of order or attachments for the proof of claim?

18         MR. BRADY:  Your Honor, Robert Brady.  No

19   additional issues.  I just wanted to -- Robert Brady on

20   behalf of the FCR -- we had two issues that we raised with

21   the debtors.  They made both of our changes, so we have no

22   issue with the proposed form of order.

23         THE COURT:  Thank you, Mr. Brady.

24         MS. RINGER:  Your Honor, if I --

25         MR. RUGGERI:  Your Honor, James Ruggeri --

1          THE COURT:  Ms. Ringer?

2          MR. RUGGERI:  Your Honor, James Ruggeri for

3  Hartford --

4          THE COURT:  Let me hear from Ms. Ringer first and

5  then I'll hear from Hartford.

6          MR. RUGGERI:  I'm sorry.  Thank you, Your Honor.

7          MS. RINGER:  Thank you, Your Honor.  Rachael

8  Ringer from Kramer Levin, on behalf of the committee.

9          Just very briefly, we also raised a number of

10  issues with the debtor through revisions to both, the form of

11  order and the notice, as well, for the general proof of

12  claim.  All of those have been incorporated.  There were a

13  couple of issues that were particularly important for

14  claimants, for non-abuse claimants that need information from

15  the debtors specifically in order to actually calculate their

16  claims and the debtors worked with us to put in additional

17  information into the notice for those claimants.  And so with

18  those changing, we were okay with the general proof-of-claim

19  form and the notices accompanying it.

20          THE COURT:  Thank you.

21          Counsel for Hartford?

22          MR. RUGGERI:  Yes, Your Honor, James Ruggeri.

23          I didn't know if the Court's question dealt with

24  specific questions regarding the sexual abuse survivor proof

25  of claim, which is attached as an exhibit.

1           THE COURT:  It includes everything.

2           MR. RUGGERI:  Okay.  Thank you, Your Honor.

3           Hartford does have a few suggestions there and I

4    would start by, I do think it's a little unfair.  On a couple

5    of occasions, committee's counsel has suggested that there

6    was some sort of focus on forms of sexual abuse and questions

7    that Hartford and the insurers that were posing and that's

8    not correct as to Hartford or, I believe, any of the other

9    insurers.

10          Our questions or the questions that we would like

11   to be added go to allowing us to cross-check the allegations

12   and the information provided elsewhere in the proof-of-claim

13   form.  For example, education -- the proof-of-claim form, as

14   it currently stands, asks the claimant to state what is his

15   or her highest level of education completed or degree

16   obtained.

17          If you go to the section involving the effects of

18   the abuse, you'll see one of the alleged effects is

19   education.  We propose to have the claimants identify by name

20   and address, all the schools they attended to the best of

21   their recollection, beginning with elementary school and

22   continuing to secondary school and post-secondary schools.

23   Do that because the form requires the claimant to identify

24   the scout unit number and the physical location of the

25   scout -- of the unit where they were abused and allow or

1  identifying or causing the claims to provide substantial

2  information about their education allows us to cross-check

3  the information about where the person said he or she was

4  abused.

5           Also causing the claimant to identify all of the

6  schools where he or she attended and the periods and the

7  highest degree they earned also allows us to cross-check the

8  alleged impact of the abuse when it comes to education.  If

9  someone achieved a Ph.D. or a BA, that may tell us something

10 as we're going into a mediation (indiscernible) or in this

11 process, Your Honor, about the valuation -- the number and

12 the valuation.

13          The same is true with regards to employment, Your

14 Honor.  The proof-of-claim form, as proposed by debtors,

15 asked the person to state his or her current employment

16 status.  We have proposed to amend the form to ask the

17 claimant to list all of their employment history dates and

18 for each job and location.  Again, the effects portion of the

19 proof-of-claim form says do you believe that the abuse has

20 affected your employment?

21          We think that information which is purely factual

22 allows us to cross-check that answer and also allows us to

23 have an effect or causing -- allowing all the parties to have

24 a better understanding of the valuation of that claim

25 depending on how the information squares or it does not.

1          The same, Your Honor, is true with regard to the

2   claimant's involvement with scouting.  The proof-of-claim

3   form, as proposed by the debtor, asks the claimant to state

4   whether he or she has ever been affiliated with scouting

5   and/or a scouting program.

6          We propose to ask the claimant to identify all

7   involvement with the Scouts, including units and positions

8   and the various Boy Scouts, Cub Scouts, Exploring Scouts, Sea

9   Scouts, and also ask whether they're currently involved in

10  scouting; again, let's us cross-check and lets us form an

11  opinion on what effect the abuse had on a person in terms of,

12  perhaps, the trust that he or she had in scouting and, again,

13  we believe goes to valuation.

14         The other question that we believe, Your Honor, is

15  appropriate for consideration is to ask the claimants if they

16  suffered other unrelated forms of abuse, unrelated to Boy

17  Scouts.  We're not suggesting in any way that if the answer

18  is yes, disqualifies the claimant from participating in their

19  claim against the Boy Scouts, but we do believe it's relevant

20  and we're not trying to inflict any injury or emotional harm

21  to the people doubting what they've already experienced.

22         We do believe it's relevant because if there are

23  contributing causes to the same injury, then it could affect

24  one view of the valuation of that injury both, on an

25  aggregate and on an individual basis, Your Honor.

1          Those are the factual questions, Your Honor,

2    unrelated to act of sex abuse or anything along those lines

3    that we would ask the Court to consider to include in the

4    proof-of-claim form, again, purely factual questions, Your

5    Honor.  Thank you.

6          MR. SCHIAVONI:  Your Honor, Century has some

7    additional ones.  We can deal with Hartford's first, then

8    ours or however you want to proceed.

9          THE COURT:  No, let me hear yours.

10         MR. SCHIAVONI:  So, Your Honor, we heard Mr. Stang

11   talk about the elements of liability, really.  He collapsed

12   them, really, just into was someone injured.  But whether

13   there's proof, you know, there's some questions that go to

14   just basic elements of was a tort committed on you that

15   required the tortfeasor to be identified, but to the extent

16   that's another scout or some other person, that doesn't

17   establish liability with respect to the Boy Scouts of

18   America.

19         There were questions in a prior form of the order

20   or the form that went to, you know, the fundamental elements

21   about whether or not the Boy Scouts were, in fact, committed

22   a tort of failing to warn or, themselves, you know, weren't

23   actually negligent in the particular instance.  They're very

24   basic questions.  They were taken out by the tort -- by, I

25   believe, either the tort claimants or the Boy Scouts in this

1  draft over the weekend.

2          We just asked for a basic series of questions that

3  asked, Did you or anyone on your behalf ever contact the Boy

4  Scouts about abuse?  And if the answer is yes to that, who

5  was it and when at the Boy Scouts did you or this other

6  person on your behalf contact the Boy Scouts?

7          If there was a writing sent to the Boy Scouts

8  conveying that, please attach it, provide it.  If the person

9  knows -- if the claimant otherwise had some reason to

10  personally know or any reason to believe that the Boy Scouts

11  knew about the abuser to provide that -- to say so and to

12  provide some specific information about that, who was it at

13  the Boy Scouts who knew about this abuser, how did that

14  person learn of that information, that's sort of the sum of

15  it.  It's attached to our submission.

16          And then just one other way that sort of gets at

17  something that Mr. Ruggeri said that's a very common question

18  in these sorts of noticing programs is have you asserted or

19  have you filed a claim asserting abuse in any other case or

20  bankruptcy, sexual abuse, and if so, what is that case or

21  bankruptcy?

22          THE COURT:  Okay.

23          MR. WINSBERG:  And, Your Honor, if I may?  Harris

24  Winsberg on behalf of the Allianz insurers.  We filed

25  joinders to the Hartford objections and we support the

1  positions and believe that the additional information will be

2  helpful in assessing the value of the claims.

3            THE COURT:  Thank you.

4            MR. WINSBERG:  Thank you, Your Honor.

5            THE COURT:  Ms. Boelter?

6            MS. BOELTER:  Yes, Your Honor.  Let me just

7  respond briefly to the additional questions, and I think,

8  probably the TCC should weigh in more particularly.

9            I'm just starting with the few points that were

10 made by Hartford in connection with educational history, as

11 well as employment history.  On the form that was originally

12 proposed, I believe, by Hartford and attached to their

13 pleading, requested that individuals describe their entire

14 educational history from, I assume, kindergarten through

15 post-graduate degree, and details pertaining to those

16 schools.  They've also asked for the entirety of the

17 employment history.

18           From the debtors' perspective, we don't deny that

19 that information would be extremely helpful; however, when we

20 were reviewing the proof-of-claim form, we needed to balance

21 the sensitivities that Mr. Conte spoke of and that we've

22 heard from Mr. Stang on numerous times with the burden of the

23 form, itself, which is why we ultimately agreed with the TCC

24 to remove those particular questions.

25           With respect to the questions that Mr. Schiavoni

1  pointed out, if you look at, again, Docket 667-2,

2  Exhibit B -- and I'm looking at -- if I can figure out what

3  page -- I think it's going to be Page 67 of 75 of the PDF or

4  Page 10 of 16.  We did, in fact, remove the question

5  pertaining to did you or anyone on your behalf tell someone

6  involved with scouting about the abuse?

7          But we rephrased the questions so that they were

8  less harmful on the abuse survivor and less burdensome for

9  the abuse survivor to read.  So, you'll see N specifically

10  says:  Did you tell anyone involved in scouting?  O:  Have

11  you ever reported the sexual abuse to law enforcement or

12  investigators?  And then P:  If you can remember anyone that

13  you may have ever told about sexual abuse at the time,

14  including anyone involved with scouting, friends, relatives,

15  and/or law enforcement, please list their name and when you

16  told them.  So, we did, in fact, maintain that concept.  I

17  understand that it may just appear slightly different than

18  how Mr. Schiavoni would like to see it.

19          And then, finally, I think he pointed out on the

20  additional information, which is Part 6, if you go to Page 13

21  of 16, I think he submitted that we removed the question

22  concerning whether prior bankruptcy claims had been

23  submitted.

24          That's just not the case.  We still state, Prior

25  bankruptcy claims, have you ever filed any claims in any

1  other bankruptcy case relating to the sexual abuse you've

2  described in this proof-of-claim form?

3          This question is still in.  We think it's

4  relevant.  There is overlap between, for example, sexual

5  abuse claims asserted against the Boy Scouts and, for

6  example, the Diocese of Guam.  So, we have seen, which is in

7  bankruptcy, for Your Honor's benefit.  So, we have seen that

8  and we have maintained that question.

9          So, from the debtors' perspective, while we are

10 always supportive of getting more information rather than

11 less information, we were put in a position where we really

12 needed to balance concerns about abuse survivors, concerns

13 about putting together an overly burdensome proof-of-claim

14 form with, you know, the practicalities of getting not only

15 the TCC and other constituents onboard, but getting this form

16 approved so that we can launch it and get this process

17 started.

18          MR. SCHIAVONI:  Your Honor, this is Mr. Schiavoni.

19          And just to be clear, the questions that we posed,

20 I just posed to you a second ago, were in the debtors'

21 original form.  Ms. Boelter, herself, proposed in P, which

22 was deleted, the question.  The two she read just leaves a

23 sort of, you know, it's a sort of leading, yes-no, that by

24 itself provides no confirmatory response.

25          Did you -- so, the yes-no is, Did you or anyone on

1    your behalf inform anyone in scouting, yes-no, end of story.

2              The next one is, Did you ever tell anyone who was

3    in law enforcement, yes-no, end of story.

4              What the debtor had is P, the one that followed

5    was, If your answer to either of the previous two questions

6    is yes, please state the name of each person who was told,

7    the date when they were told, and the person's relationship

8    to you.

9              That information, yeah, it's critical toward

10   establishing whether or not the Scouts were really liable or

11   not.  It's an element that goes to *prima facie* liability

12   here.  It's not at all burdensome to pose that question.  The

13   debtor, itself, proposed the question.  It's very

14   straightforward and it elicits information that would be

15   extremely helpful in winnowing out good claims from bad

16   claims.

17             The same thing with the change on this, the last

18   question.  Yes, there's a question in there that asks, Did

19   you file a proof of claim for this abuse, this very abuse in

20   this bankruptcy?

21             Well, of course, that question, in essence, has

22   been neutered because, no, it's like this is the proof of

23   claim for this case, right.  As Mr. Ruggeri laid out, to the

24   extent there's been claims for other abuse by the same

25   person, it goes to how the -- it goes to causation on the

1  damages for the individual claim.  It's not harmful; it's

2  very straightforward.  Did you file a proof of claim in

3  another bankruptcy for sexual abuse, period?

4        MR. STANG:  Your Honor, I'd be happy to address

5  these on behalf of the committee, and, Your Honor, I'd point

6  out that, again, if you had questions regarding the impact of

7  some of these specific items on survivors, Dr. Conte is still

8  on the call and he can answer your questions directly.

9        There has to be a difference between the questions

10  in a proof-of-claim form and discovery, not just because

11  there should be a difference.  I think at one point, I don't

12  know if it was the Hartford one objection or Century

13  objection, but I counted the additional questions, including

14  subparts.  There were over 30 and it just highlighted to me

15  that this is an effort to conduct discovery for defenses, yet

16  survivors, whose cases are stayed, do not have an opportunity

17  to conduct discovery against the Boy Scouts, the local

18  organizations, given the preliminary injunction, and the

19  charter organizations.  And so, this feels very much like a

20  one-way process as we get into questions that have the tenor,

21  tone, and numerosity of interrogatories.

22        Now, to address the specific issues, if I stopped

23  my education at high school, why do they want to know where I

24  went to elementary school?  Why do they want to know where I

25  went to high school?

1      Do they want to see if I'm lying about whether I

2   got a high school diploma?  If I say I have a Ph.D., why do

3   they need to know my high school and the dates I attended?

4      Because maybe they want to contact that high

5   school.  Maybe they want to contact the teachers or they can,

6   through year books, discover my classmates.  So, there's no

7   restriction here when we start to give them this information

8   about whether they will go and tell people who had no

9   knowledge that I was sexually abused.  Hey, you know, did

10  that happen to Jim?

11      The same is true with the employment.  I get what

12  counsel said.  If you say you can't hold a job, they'd like

13  to know how many jobs you couldn't hold, but are they going

14  to start calling employers?

15      Why is Century Insurance Company calling my

16  employer to ask about whether I had issues with authority?

17  What is that about?  And so, there are no protections here,

18  given the information that they're eliciting.

19      I am currently an adult scout volunteer.  Why does

20  that matter?  Does it mean I wasn't abused because I'm going

21  back to Scouts or does it mean that I care a lot about boys,

22  I want to protect them from what happened to me, so I'm going

23  to be a scout leader.

24      I don't understand where the question takes them.

25  It takes them to lots more questions, but they will cast

1  doubt on the validity of a claim if I decided that I was

2  going to do the hard thing and go back to the organization

3  where I was abused and try to protect kids again.

4           Other unrelated abuse, counsel said it, this is

5  causation.  This is damages.  I mean, this is a claim form.

6  If they want to ask -- if they want to try to make some kind

7  of link that the abuse I suffered at scouts is somehow, you

8  know -- I don't even know where they're going with this, to

9  be honest with you.  I don't get it.

10          I echo what Ms. Boelter said and for all that I

11 said before about sensitivity and the Boy Scouts, they were

12 right on this one.  They were right to take the questions

13 regarding these basic elements that counsel mentioned.  You

14 know, some of them implied a legal conclusion, so, it's

15 effectively, you know, were the Boy Scouts negligent?  And

16 how is someone going to answer that?

17          These questions regarding notice, they're legal

18 questions.  The Boy Scouts may have known about a particular

19 volunteer, even though I never told my parents that I was

20 abused or my parents, having been told, didn't tell the Boy

21 Scouts.  Because the Boy Scouts might know about that

22 volunteer being an abuser.  That's the one-way discovery

23 aspect of this.

24          As I said earlier, no one is saying that if these

25 insurers or the Boy Scouts -- I don't think the Boy Scouts

1  were intending to -- but the insurers or other parties in

2  interest want to file objections to claims and start a

3  process, that's fine.  And it doesn't have to be one by one.

4  It can be dealt with in kind of a -- depending on how many

5  claims they have questions about, we can try to deal with it

6  in some global fashion.

7          But adding another 30 questions to this proof-of-

8  claim form aims to turn this into a discovery project with no

9  protections to survivors on the follow-up and how they use

10 this information, and the survivors' hands are totally tied

11 in terms of them being able to take actions to establish

12 their cases more completely, given the automatic stay.

13          That's all I have on that, Your Honor.

14          MR. SCHIAVONI:  Your Honor, Mr. Stang really wants

15 his cake and eat it, too.  He wants the effect of 502's *prima*

16 *facie* presumption, but, you know, he's got a form here that

17 doesn't provide the basic elements to establish the Boy

18 Scouts' liability as opposed to the tortfeasor that actually

19 physically did the abuse.  The basic questions that go to who

20 and when did you tell at the Boy Scouts and, you know, the

21 documentation that support that go right to a necessary

22 element.

23          THE COURT:  I don't think it goes to a proof-of-

24 claim form.

25          The -- let me ask you this, Mr. Stang, in terms of

1 the question that asks what type of scouting unit were you

2 involved with and then it has to check the box for the

3 different types, what harm would there be in, in asking for

4 their troupe numbers or something that identifies a

5 particular location?

6         MR. STANG:  Your Honor, I think, first of all,

7 there's no harm in that, but I think it's asked already.

8 Section -- question G says:  What was the scouting unit

9 number?

10         This is -- I (indiscernible) Boy Scouts, so some

11 of this language doesn't necessarily -- I can't really say

12 whether it works or not, but the unit number, I think, was

13 meant to be troupe number, I mean, that's how I would

14 interpret it.  Location, again, that kind of, you know, I was

15 in Miami Beach, Florida, and my elementary school and if I

16 don't remember the troupe number, then I can remember the

17 chartered organization.

18         Now, look at H; it gives you that information.  We

19 actually call people out a little bit saying, Was it a

20 church?  Was it a school?  Religious institution?

21         So, I think those questions are there and to

22 (indiscernible) those points, the local councils maintain

23 troupe rosters.  I won't speak to how far they go back.  They

24 know.  I don't.  That troupe roster shows you who was your

25 scout volunteer, who is the chartered organization -- when I

1  say, "scout volunteer," there are obviously several in the

2  troupe -- they show at least who the head is, if not all of

3  them -- it shows every child's name.

4           Now again, I'm not going to speak to how long they

5  maintain these rosters, and so --

6           THE COURT:  Thank you.  I see that information.

7  It actually looks like you asked for the same information

8  multiple times.

9           Okay, in terms of the type of scouting, one is

10  more generally and one is, then, during the sexual abuse.  I

11  see.  Okay.

12          I'm not going to require the additional

13  information.  I don't actually know if -- and certainly not

14  based on Mr. Conte's declaration or even what I heard today

15  in his testimony, that more information is necessarily

16  better.  It might be different and it may or may not be

17  helpful.

18          Certainly, factual information, more specific,

19  concrete factual information about places and times and

20  things like that, that could be helpful, but I don't know

21  that the relevance of the person's education levels and

22  whether they -- whether that's a relevant factor and whether

23  they've been abused, reported the abuse, is lying, is not

24  lying, I don't know that that's relevant to anything.

25          I think this form is more than sufficient to

1  provide the debtors with information in which to be able to

2  use it to, for what I thought was the purpose, which is to

3  try to come to a consensual resolution.  And I don't know

4  that more information is better and I do have a concern that

5  the more intrusive the information is or the more it suggests

6  that there's going to be contact with institutions or persons

7  that are listed, it will discourage parties, abuse victims

8  from coming forward and we don't want to do that.  So, I'm

9  not going to require that additional information.

10        And the specific information that I didn't see

11  first by looking at Paragraph E, I see is in the section on

12  involvement with scouting, I see is required or requested in

13  the section on nature of the sexual abuse.

14        So, I think now we've dealt with all of the issues

15  that anyone has?

16      (No verbal response)

17        THE COURT:  I'll take the silence as a yes.

18        UNIDENTIFIED:  Your Honor, the TCC has nothing

19  more.

20        THE COURT:  Thank you.  Okay.

21        MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott

22  here for the debtors.

23        Okay.  We've gotten through one of our agenda

24  items.  We have another, Your Honor, and given that we've

25  been going for almost three and a half hours, I wonder if the

1  Court would like to take a break and reconvene at some point.

2  I'm sure all the participants would welcome that opportunity.

3            THE COURT:  Yes.  So, it's about 1:20 East Coast

4  time.  We will reconvene at two o'clock East Coast time.

5            MR. ABBOTT:  Very well.  Thank you, Your Honor.

6            THE COURT:  Thank you.

7            UNIDENTIFIED:  Thank you, Your Honor.

8        (Recess taken at 1:20 p.m.)

9        (Proceedings resumed at 2:02 p.m.)

10            MR. ABBOTT:  Your Honor, Derek about on behalf of

11  the debtors.  Your Honor, the one issue that was added to the

12  agenda really in the nature of a discussion of a status

13  conference was in the preliminary injunction matter.  Your

14  Honor, that's Docket Item Number 13 on the third amended

15  agenda and we thought, given the timing of that, it might

16  make sense to go to that next and if that's okay with the

17  Court, I would ask Mr. Andolina to address Your Honor.

18            THE COURT:  Okay.

19            MR. ANDOLINA:  Good afternoon, Your Honor.  Mike

20  Andolina on behalf of the debtors.

21            You know, Judge, as Mr. Abbott mentioned, this is

22  an issue that is time-sensitive, but also, we hope

23  noncontroversial.  So, we're going to ask for the Court's

24  assistance and provide an update on the status of the

25  stipulation to extend the consent order.

1          As the Court may recall in late March, the Court

2   entered a consent order on a preliminary injunction motion

3   that was supported by both committees and the FCR.  The

4   extension or the preliminary injunction termination date is

5   today, Your Honor, and the good news is that we have reached

6   an agreement to extend the preliminary injunction until

7   June 8th.

8          The mechanism in Paragraph 12 of the consent order

9   requires the parties to file a stipulation with the Court,

10  which we have done.  Once that's stipulation is filed, the

11  consent extension is then served on all of the plaintiffs in

12  the underlying abuse actions and filed in those courts.  That

13  provides a 10-business-day deadline for parties to object to

14  the extension of the preliminary injunction.

15         That period would end on June 2nd and then there's

16  a hearing date on June 8th, so not a very significant window.

17  Our hope is, and we worked diligently with the TCC, the FCR,

18  the UCC, and the ad hoc committee, that our next extension

19  would be more significant.  But that's the current status.

20         One issue to raise with the Court, the Court may

21  recall during the last preliminary injunction hearing, there

22  was a filing by an incarcerated plaintiff, Mr. Swindler (ph),

23  and the Court noted at that time that Your Honor would treat

24  Mr. Swindler's objection as an objection to the next

25  extension.

1          The debtors plan to reach out to Mr. Swindler and

2    attempt to resolve that objection.  If we cannot do so by

3    June 2nd, that objection would be treated as an objection to

4    the extension.  We would file a reply and then I guess the

5    issue would be heard on June 8th or some other time that the

6    Court deems appropriate.  But we did want the Court to know

7    that we recall that issue and we'll work to try to resolve

8    that particular objection.

9          So, the request would be, Your Honor, that the

10   Court sign the stipulation today, given that today is the

11   last day of the preliminary injunction period, and the

12   promise would be that going forward will give the Court more

13   time on the next extension period and if the parties will

14   work diligently, I think to create what should be a more-

15   efficient timing in terms of the extension.  There's just a

16   lot going on and I think there's some open discovery issues

17   that we're working hard with the various committees and the

18   ad hoc committee on.

19          THE COURT:  Okay.  Did I hear you correctly that

20   this extension is only through June 8th?

21          MR. ANDOLINA:  That's correct, Your Honor.

22          I'd be happy for the Court to extend it further,

23   but this is the deal that we reached.

24          THE COURT:  I think you need to reach your next

25   vehicle because -- and I don't remember the specifics of the

1  mechanics in the stipulation, but I don't think we're

2  providing the plaintiffs an effective opportunity to object

3  to a further extension of the consent stipulation.

4         So, I understand the desire to keep the debtors on

5  a short rank, you know, a short lease, which I assume is what

6  drives this, what, not even 20-days, maybe, extension, but it

7  strikes me that I ought to be having hearings on an extension

8  before the time period lapses.

9         And I'm happy -- again, I don't remember the

10  mechanism and maybe this mechanism was built in -- but if our

11  next hearing is on June 8 and that's when this stipulation

12  expires, then what have I ordered?  I think we need to be

13  having the hearing on any further extensions on that date and

14  I think we need to get that out there.

15         So, I'm not mandating that, but I don't -- the

16  timing is not working for me and it's not that it's not

17  working for me personally -- I'll review the stip and I'll

18  sign it because I, quite frankly, am not sure I have an

19  option -- but it's not working for me in terms of notice to

20  all the plaintiffs.

21         MR. STANG:  Your Honor, this is Mr. Stang.  I

22  think we may have been the ones driving the short extension.

23  And I don't think it's in the spirit of the stipulation

24  (indiscernible) going to what our problem is unless you

25  specifically want to know.

1       If you want a couple of more days after the

2  hearing so that you're not up against the same-day issue, we

3  want to do what makes sense for you.  But the issue that

4  caused us to agree to only a short extension is one that is

5  significant to us and we didn't want to see it go out for a

6  considerably longer period of time than what we agreed to.

7       THE COURT:  Okay.  But then what can I expect for

8  the next one?  So, when we get to June 8th, if, in fact,

9  there's going to be a consensus, when are we going to rule on

10 that extension?  And if there's not going to be, then, okay,

11 there's not going to be.  Then I maybe would be having a

12 contested hearing.

13      So --

14      MR. STANG:  Well, I could preview the --

15      THE COURT:  -- I don't need to know the specific

16 issue.  I don't need to know the specific issue.

17      I'm just telling you really from a due process

18 perspective for the plaintiffs in the underlying litigation,

19 they need to have an opportunity to weigh in before an

20 extension is effectively granted without their ability to do

21 so and that's what I'm looking for in the future.

22      MR. ANDOLINA:  Your Honor --

23      MR. STANG:  So, Your Honor, but for this issue, we

24 would have had a much longer extension by a multiple of

25 probably at least three times.  But this issue is one that we

1  felt was important.  It came upon us relatively recently.  We

2  didn't want the debtor to be jammed up against today's date

3  and that's why we agreed to, because they haven't had time.

4  They said they have not had time to digest and be responsive

5  to our demands and so without kicking it out too long,

6  because I think our demand is -- our intentions

7  (indiscernible) issues are a great concern to us, we said,

8  okay, we'll give you until the next omnibus date.

9          So, A, if you feel you don't want to be up -- have

10  the hearing the same day as the expiration, you know,

11  that's -- we hope that you wouldn't make it too much longer

12  in terms of the injunction, and if you're wondering, am I

13  going to see (indiscernible) 30-day extensions, I will tell

14  you but for this issue, we were negotiating a much-longer

15  extension.

16          MR. ANDOLINA:  Your Honor, to address -- and you

17  must have been overhearing my conversations for the last

18  several days -- but to address the issue of due process, I

19  think the mechanism in the consent order makes perfect sense

20  in terms of notifying the plaintiffs in various state court

21  actions.

22          The problem here is that the extension expires on

23  June 6th, which is -- the 10-day period is not the issue, I

24  don't think, Your Honor.  I think 10 business days is a

25  reasonable period but incentivizing them to object to

1  essentially a 4-day extension doesn't make a tremendous

2  amount of sense.

3         And I certainly don't want to (indiscernible), but

4  I do want to make clear that from a process perspective and

5  from the debtors' perspective in terms of estate resources,

6  we would hope that maybe the Court would consider -- and I'll

7  defer to Mr. Stang on this -- entering a very short extension

8  of a few days and to see if we can then come up with a

9  process that the parties may agree to for a bit more of time.

10         THE COURT:  Well, I haven't reviewed the order,

11  but I will do so and I'm sure I will enter it, but I would

12  like -- and that'll take the time out to the 8th, which was

13  the agreed-upon date, but I think in the meantime, you need

14  to be looking forward for the next extension or not if

15  there's not going to be one.

16         But this short period of time, yes, I do not want

17  a series of short periods of time and, second, I am concerned

18  about the impact on the individual plaintiffs.  So, I've said

19  what I've said and I assume the parties will talk about how

20  they're going to proceed in the future.

21         MR. ANDOLINA:  Your Honor, I think we're all

22  committed to focusing on an extended period for the next

23  extension and I will say to the extent that there's an

24  objection in this limited period, it may be that we can

25  negotiate a process, that that objection would be handled and

1  addressed as to a longer stay.

2              So, I think that's probable with the structure

3  and, certainly, we don't want to waste the Court's time in

4  terms of a very limited extension.  So, we'll work very hard

5  with the TCC and the ad hoc committee to try to make that

6  happen.

7              THE COURT:  Okay.  Thank you.

8              MR. ANDOLINA:  Thank you, Your Honor.

9              MR. ABBOTT:  Thank you, Your Honor.

10             Derek Abbott, again, for the debtors.  That brings

11 us to Item Number 10 on the agenda, which was the debtors'

12 motion for entry of an order appointing a mediator.  Your

13 Honor, that was filed at Docket Item Number 7.  We've

14 discussed it a couple of times since, but I'll also defer to

15 Mr. Andolina on this motion, as well, Your Honor.

16             MR. ANDOLINA:  Good afternoon, Your Honor.

17 Michael Andolina on behalf of the debtors.

18             Your Honor, if I may be heard on the mediator

19 motion?  As a threshold matter, Your Honor, although the

20 motion was filed by the debtors, at this point, it truly is a

21 joint motion.  I know that representatives from the TCC, the

22 UCC, the FCR, and the ad hoc committee of local councils

23 would like to be heard on this motion, so I will attempt to

24 be brief.

25             Your Honor, I think the consensus that we have

1  here on this motion, frankly, speaks for itself.  All the

2  constituencies are now at a point where they believe that

3  engagement with mediators will help the parties make progress

4  on a path to global resolution.

5          In that regard, I can reference the issue that we

6  just discussed, with respect to discussions between the TCC

7  and the ad hoc committee.  That's resulted in the stipulation

8  that Your Honor saw and the parties have worked in good faith

9  to bridge their gaps, but the debtors, and I believe the

10 other parties, do feel strongly that engaging with the

11 mediator at this point is critical to the process.

12         On my end, I've tried and I've definitely failed,

13 per our last discussion, so on some issues, I think we could

14 use some professional help.

15         I did want to address, Your Honor, the series of

16 objections from the insurers that were filed on Friday if the

17 Court will allow me to do so?

18         THE COURT:  Yes, I'd like to hear a response.

19         MR. ANDOLINA:  Okay.  Really, I think the

20 insurers' objections fall into three categories.  The first

21 is that the insurers were excluded from the process.  The

22 second relates to conflicts of interest and third are demands

23 for additional terms in a mediation order.

24         On the first issue, Your Honor, as a threshold

25 matter and what is really ignored in the objections is that

1  the debtors largely through Mr. Azer (phonetic), engage with

2  the insurers on the issue of mediation extensively.  And I

3  don't know if the Court received the filing this morning,

4  which is Mr. Azer's affidavit.  It was filed at Document 664.

5          Did Your Honor receive that?

6          THE COURT:  No, I haven't seen it.

7          MR. ANDOLINA:  Okay.  Well, Your Honor, I will

8  summarize the two documents that were filed.  We didn't file

9  a surreply or seek leave to file a surreply, but we did file

10 a 17-page discovery letter that was sent on May 11th last

11 Monday in response to a number of the issues that are going

12 on between the debtors and the insurers, including this issue

13 on the mediator order.

14          And what that letter shows is that as early as

15 April 2nd, Mr. Azer was reaching out to the debtors for input

16 on mediators.  He subsequently communicated with them on

17 April 7th, April 9th, April 13th, April 14th, April 15th,

18 16th, 17th, 23rd, 24th, 28th, 29th.

19          We don't necessarily think those emails back and

20 forth are, frankly, relevant to the Court's decision to

21 appoint the mediator, but we did want to correct the record

22 because we think the filings on Friday seriously

23 misrepresented the communications between the parties.

24          The second attachment to Mr. Azer's declaration is

25 an email from October of year regarding the November

1  mediation or as it turned out, the non-mediation.  Hartford

2  suggested in its papers that it was not invited to that

3  mediation and it was somehow excluded from the process back

4  in November.

5        Exhibit 2 to Mr. Azer's declaration makes clear

6  Haynes Boone notified Hartford's outside counsel Mr. Ruggeri

7  of BSA's intent to mediate two weeks in advance of that

8  mediation.  This was despite the fact that Hartford's

9  position was and has been that it has no coverage obligation

10  on any of the claims that were being mediated and that's

11  because their position is that all of BSA's sexual abuse

12  claims in the matter of the claimant, perpetrator,

13  jurisdiction abuse are one single occurrence.  So, we did

14  notify them of that mediation.  The email from Haynes and

15  Boone to Mr. Ruggeri is provided as Exhibit 2 to Mr. Azer's

16  declaration, and we also wanted to correct the record on that

17  fact.

18        But getting back to the process issue, Your Honor,

19  there's no question that we were in constant communication in

20  April and what our understanding was, was that it was

21  essential for the insurers for the Court to appoint a

22  specialized mediator to address insurance issues.  There are

23  a limited pool of such experts and the insurers told the

24  debtors in no uncertain terms that Timothy Gallagher was

25  their first choice.  The debtors agreed to accept Mr.

1   Gallagher, and after a lot of discussion, so did the other

2   parties.

3           I am confident that TCC will tell Your Honor that

4   there was extreme hesitation about adding a third mediator,

5   but the parties ultimately were willing to compromise and

6   come to the agreement in the mediation order that we

7   submitted.  So, the insurers, ultimately, got number one, an

8   insurance mediator, and number two, their top choice.  That

9   fact is not disputed.

10          So, a final point on the process issue, Your

11  Honor, we did want to clarify the record on the

12  communications, but we think this is, frankly, a moot point.

13  There's not a due process right for the selection of a

14  mediator, nor should the insurers have presumably what

15  they're seeking here, which is a veto over the negotiated

16  choice of the five other parties.  We now have three highly

17  qualified mediators with different skill sets and expertise

18  prepared to engage with the parties immediately and we should

19  proceed accordingly.

20          So, the second issue, Your Honor, I want to

21  address was this issue on conflict.  Importantly, none of the

22  insurers have raised a specific conflict that their clients

23  have with Mr. Fynn (ph) or Mr. Greene (ph), as far as I can

24  tell.  Instead, they've demanded more robust disclosures,

25  which are not contemplated by the Local Rules and raised

1    issues about the relationships to many of the parties.

2            On the disclosure issue, I think the insurers

3    concede there's no requirement in the Local Rules of the

4    court that mediators complete 2014(a) disclosures; indeed,

5    under the Local Rules here, mediator appointment is governed

6    by Local Rule 9019-2(e).  That section requires that

7    mediators disclose disqualifying events, which are defined by

8    reference to the standard for disqualification of a federal

9    judge.  Any person selected as a mediator, "Shall be

10   disqualified in any matter where 28 U.S.C. 455 would require

11   disqualification if that person were a judge."  So, none of

12   the rules, the Local Rules dealing with mediation reference

13   the disinterested standard of Section 324 or Rule 2014.

14           The insurer cites to the In re Smith case from the

15   Bankruptcy Court in the Southern District of Texas and they

16   also state that a number of Bankruptcy Courts have Local

17   Rules providing the mediator or the professional are required

18   to make 2014 disclosures.  In the first instance, Your Honor,

19   we think that In re Smith is distinguishable and has not been

20   followed by any Court that we're aware of.  That was a

21   Chapter 7 case where the parties selected a form bankruptcy

22   court judge to mediate and scheduled a mediation without the

23   knowledge of the Court.  They then went in and asked the

24   Court for a *nunc pro tunc* appointment of the mediator.  The

25   Court felt that mediation in that case was not necessary and

1  was also worried about the appearance of judicial cronyism

2  and, Your Honor, I would submit that that's hardly the case

3  here.

4          In the first instance, more importantly, Your

5  Honor, the insurers' reliance on the Local Rules from other

6  districts actually undermine their argument.  Given how

7  detailed the court's Local Rules are on the subject of

8  mediation -- and I think they're covered in 919-2, 3,

9  and 5 -- if the Local Rules wanted to subject mediators to

10  disclosures under 2014 or Section 327, then it would have

11  done so.  This seems particularly clear, given that Local

12  Rule 9019-2 references the term "disclosure" specifically and

13  lists the standard that I quoted above.

14          In any event, Your Honor, Mr. Greene and Mr. Fynn

15  have confirmed that they do not have any conflicts and at the

16  TCC and the debtors' request, they have provided a list of

17  lawyers they have worked with.  I would note that these

18  materials were put together in a response to inquiries from

19  TCC committee members and provided to the TCC.

20          It is wholly unsurprising from our perspective,

21  Your Honor, that Mr. Fynn, Mr. Greene, and Mr. Gallagher have

22  worked with some of the various parties and attorneys in this

23  case.

24          As an aside, Your Honor, there's another factually

25  error in the insurers' papers.  Sidley Austin did not

1    represent the debtor in the <u>Takata</u> case.  We represented non-

2    debtor third-party Honda.  Pachulski actually represented the

3    debtor in that case.

4         Ironically, the insurers find fault with the

5    mediators for the exact reason that the five parties

6    supporting in motion selected them.  The fact that Mr. Greene

7    has served as an FCR, that he has served as a bankruptcy

8    trustee, that he's familiar with the bankruptcy and claims

9    process, the issues we discussed this morning, is an

10   advantage to all the parties; likewise, the fact that

11   Mr. Fynn is familiar with the plaintiffs' lawyers here, has

12   mediated cases, many prior sexual abuse cases.  Those are

13   things that qualify him.

14        Notably, none of the parties has express concerns

15   that Mr. Gallagher has worked closely with the insurers and

16   their counsel.  In the debtors' view, at least, the fact that

17   the insurers wanted his participation and felt strongly that

18   he was the right person for the job, was, frankly, a good

19   reason to include him.

20        The final issue, Your Honor, that we wanted to

21   address is the insurers' demand for additional terms in the

22   mediation order.  That issue is -- primarily relates to the

23   issues of document production and from our perspective, this

24   is a wholly inappropriate and unnecessary addition to the

25   mediation order for several reasons.

1         First, as these issues can and will be ironed out

2    in the protective order.  And as the Court is aware, the

3    hearing is scheduled on that item for May 29th.  Again, after

4    literally months of work, all the parties, except the

5    insurers, have reached an agreement on that.

6         But I have breaking news.  Yesterday afternoon,

7    the insurers requested a call with the debtors to discuss the

8    protective order.  We're hoping to get all of the parties

9    together for a call on Tuesday afternoon and we're hoping to

10   avoid another Zoom party on May 29th and we will work

11   diligently to do that.

12        Second, Your Honor, Paragraph 6 of the mediation

13   order provides that the mediators and the parties will work

14   together on the structure of the sessions and the submissions

15   of the parties.  Any documents issues regarding specific

16   mediation sessions can be flushed out by the parties and the

17   mediators in connection with that process.

18        And, third, Your Honor, as a practical matter, the

19   debtors have already made available to the insurers, all of

20   the documents that have been provided to other parties.

21   Since April 17th, counsel for Chubb has had access to the

22   data room that contains materials provided to counsel for the

23   committees and the FCR and the debtors have offered all of

24   the other insurers' counsel that same access, and that's on

25   Page 13 of Mr. Azer's letter from May 11th.

1          Indeed, the only documents that haven't been

2    loaded to the data room are highly confidential documents,

3    including local counsel documents that cannot be produced

4    until a protective order is entered and that brings us back

5    to the insurers' objection to the protective order.  Again,

6    we hope to resolve that, but we're in a bit of a circle here

7    with them refusing to mediate and then until they have

8    documents and refusing to enter into a protective order.

9          So, aside from the document issues, I think the

10   other issue on terms the insurers propose is language on the

11   right to take discovery regarding good faith findings and on

12   Page 8 of Century's brief.  Your Honor, this is yet another

13   factual error in the papers that were filed on Friday.  The

14   exact language they request is actually included word-for-

15   word in Paragraph 7 of the proposed mediation order.  Indeed,

16   in addition to accepting Mr. Gallagher, the parties accepted

17   a number of the insurers' proposals, with respect to the

18   mediation order.

19         So, finally, Your Honor, I just wanted to address

20   the insurers' suggestion that they have a right to veto

21   Mr. Fynn, Mr. Greene, and the parties should just restart the

22   process.  This would be incredibly prejudicial to the

23   debtors, to the other parties, and to the process, itself.  I

24   am confident that Your Honor now has a good sense of the

25   dynamics in this case and how challenging it has been to get

1  five different parties not only to agree to a three-person

2  mediation team, but to craft and agree to a mediation order

3  that is both, thoughtful and flexible, and provides for the

4  addition of additional mediation parties.

5          We've done that here, Your Honor, and we've also

6  adopted and order that accepts the insurers' top choice of

7  the mediator.  We respectfully request, Your Honor, that the

8  Court enter the proposed order without further delay.

9          THE COURT:  Thank you.

10          MR. LUCAS:  Your Honor, this is John Lucas for the

11  tort committee, may I be heard?

12          THE COURT:  Yes.

13          MR. LUCAS:  Your Honor, the tort committee fully

14  supports everything that Mr. Andolina said, but I wanted to

15  make one quick correction.  That my firm did not represent

16  the debtor in Takata but represented the tort committee.

17          Your Honor, the mediation order, as Mr. Andolina

18  stated, reflects substantial compromises with the insurers,

19  none of which were really mentioned by insurers.  The TCC

20  believes that Fynn and Greene have sufficient knowledge of

21  insurance issues from other mass-tort cases and another

22  insurance mediator is really unnecessary, will add cost, and

23  might complicate the process; nevertheless, the BSA persuaded

24  the TCC not only to accept the concept of an insurance

25  mediator, but to accept Mr. Gallagher, who the insurers

1  agreed to, as part of a global, consensual deal on the

2  selection of mediators.

3          The proposed mediation order is an agreement among

4  all stakeholders and itself is a compromise among the

5  mediation parties.  Whether by design or mistake, the

6  insurers suggest that the proposed mediation order is an

7  agreement between the debtor and the TCC.  That suggestion is

8  wrong.

9          The proposed order is the product of consensus

10 reached among the debtor, the TCC, the UCC, the FCR, and the

11 ad hoc local council committee, as well as the insurers,

12 themselves, as established by the inclusion of Mr. Gallagher

13 and the acceptance of many of their comments, which in the

14 end, reflect a carefully constructed set of compromises.  The

15 Court can and should assume that Fynn and Greene and also

16 Gallagher were not the first two choices of the mediation

17 parties.  After numerous discussions, Fynn and Greene, then

18 Gallagher, were deemed acceptable to the proponents of the

19 package.

20          The objectors do not challenge Fynn and Greene's

21 qualifications.  They just demand more disclosure concerning

22 possible conflicts.  The objectors do not contend, nor could

23 they do so credibly, that Fynn and Greene lack the skills and

24 expertise to conduct the mediation; instead, the insurers

25 want more disclosure in an attempt to delay the process.

1        The insurers had more than a month to address this

2   issue, as reflected by BSA's counsel and in a letter filed by

3   Haynes and Boone yesterday, the Azer letter on May 11th.

4   There were numerous emails sent on behalf of the debtors

5   trying to get the insurers to engage in the process.  There

6   is no evidence that the insurers made any effort to

7   communicate directly be Fynn and Greene or that the debtors

8   prevented them from doing so.  And when the TCC had

9   questions, that's exactly what they did, is they contacted

10  Fynn and Greene and had those questions answered.

11        The insurers apparently did, however, conduct

12  their own research and despite presenting what in the public

13  record, they are still unable to identify any disabling

14  conflict for Fynn and Greene.  This objection should be seen

15  exactly for what it is:  an attempt to delay the process.

16        The insurers' demands for a provision concerning

17  common interest materials is inappropriate and should be

18  rejected.  Issues concerning the scope and application of

19  common-interest privilege have no place in a mediation order

20  because that is an issue between the debtor and the insurers

21  alone.

22        Moreover, the proposed protective order addresses

23  inadvertent production and provides for the clawback of

24  privileged documents and the circumstances set forth therein.

25  Nothing can or should be added in the mediation order on this

1  topic.

2          In the end, the insurers suggest that the debtor

3  and the other parties are attempting to use the mediation as

4  a vehicle to cloak collusive settlements in confidentiality

5  and we believe that is absurd.  There can be no secret or

6  collusive settlement.  Every mediation party will have the

7  opportunity to weigh in on all proposed settlements and

8  (indiscernible) their own interests in any settlement will

9  require Court approval after the opportunity for all

10  stakeholders to object.

11          Like all mediations, there'll be private

12  discussions between and among one, some, or all the mediation

13  parties and one or more of the mediators.  That cannot be the

14  basis to object, let alone, take discovery.  The Court should

15  see this demand for what it is:  an attempt to gain an

16  unavailable tool to challenge the process, Your Honor.

17          Nothing further here unless Your Honor has some

18  more questions.

19          MS. RINGER:  Your Honor, if I may be heard?

20          THE COURT:  Yes.

21          MS. RINGER:  Good afternoon, Your Honor.  Rachael

22  Ringer, again, from Kramer Levin, on behalf of the unsecured

23  creditors' committee.

24          I just wanted to quickly echo what Mr. Andolina

25  and Mr. Lucas have both reported to the Court.  From the

1  creditors' committee's perspective, we believe that the

2  mediation structure, as now proposed, not only addresses the

3  issues and concerns that the unsecured creditors' committee

4  and the TCC have raised to date, but we believe it should

5  provide the insurers with, again, what I understand that

6  their chosen mediator to be involved in mediation of

7  insurance-related issues and the protective order, itself,

8  should, likewise, you know, provide for the protections of

9  documents that are produced in connection with the mediation

10  and the investigations that are undertaken by the TCC and the

11  UCC.

12      The UCC did not necessarily think a third mediator

13  was necessary initially, but, again, unlike the TCC, we were

14  willing to agree to this three-mediator structure,

15  notwithstanding potential additional complexities and costs

16  to try to accommodate the insurers' concerns.

17      I can confirm what Mr. Andolina and Mr. Lucas have

18  both said, that the committee -- that the creditors'

19  committee was involved in a process in negotiating the

20  mediation order, selecting the mediators.  We worked with the

21  parties.  We had a number of discussions among all of the

22  parties to reach resolution on those issues.

23      The unsecured creditors' committee constituency

24  has unique issues from those that involve the abuse claim and

25  that are going to need to be addressed in the context of a

1 Chapter 11 plan.  So, we believe that the order, as revised

2 and as proposed by the debtors, very much reflect the

3 (indiscernible) and we believe that it should be entered so

4 we can get the mediation process underway.

5             As you've heard now from multiple parties over the

6 course of today's hearing, delaying the process any more, we

7 believe, is not in the best interests of the estates and,

8 therefore, we would ask the Court to approve the mediation

9 motion and enter the order.

10             Thank you, Your Honor.

11             THE COURT:  Thank you.

12             MR. BRADY:  Your Honor, Robert Brady, may I be

13 heard?

14             THE COURT:  Yes.

15             MR. BRADY:  Thank you, Your Honor.

16             Again, for the record, Robert Brady, on behalf of

17 the FCR, and we agree with the prior comments of those in

18 support of the proposed order appointing mediators.  Your

19 Honor, this is a motion to appoint mediators in this case;

20 typically, noncontroversial, but I think Your Honor already

21 has an appreciation for some of the dynamics in this case.

22             This is a compromise by a number of parties with

23 differing views and goals in this case.  To upset that

24 compromise now really would send the parties all back to the

25 drawing board and that would be greatly prejudicial to the

1  parties, Your Honor, in the form of, really, unnecessary

2  delay and additional costs.

3          So, for all the reasons you've heard, the FCR

4  fully supports entry of the proposed order appointing

5  mediators.

6          MR. MASON:  Your Honor, Richard Mason, may I be

7  heard?

8          THE COURT:  Yes.

9          MR. MASON:  Thank you, Your Honor.

10         For the record, Richard Mason of Wachtell, Lipton,

11  Rosen & Katz.  I chair the ad hoc committee of local councils

12  and my firm represents the committee.  I'm also the volunteer

13  president of the Greater New York Councils, Your Honor, which

14  serves nearly 20,000 kids in New York City and is one of the

15  BSA's largest local councils.

16         Your Honor, the ad hoc committee strongly supports

17  the mediation motion.  In our view, the best and, frankly,

18  probably (indiscernible) out of this Chapter 11 case is a

19  mediated one.  The events in the past few months make us even

20  more convinced of that view.

21         The parties here, Your Honor, could literally

22  litigate on the issues which are extremely complex and if

23  they do, someone will win and someone will lose, which is

24  obvious in litigation and scouting, as a whole, will become

25  an artifact of history.

1    The kids we serve today, Your Honor, and I think

2  all stakeholders discovery better.  We owe it to them and to

3  ourselves to take our best shot at a negotiation and in our

4  view the only way to do that is with the help of mediators,

5  Mr. Andolina's great efforts, notwithstanding.

6    I've had a lot of respectful dialogue, Your Honor,

7  with Mr. Stang and I am sure that we will have a lot more,

8  but it's very clear and it's not surprising that while we do

9  listen to and hear each other, we come at this matter from

10  have different perspectives and it's clear to me that we, the

11  BSA, and other stakeholders, we need mediators to help us get

12  to a solution if one is possible and time, Your Honor, is not

13  our friend.

14    Scouting is a popular organization today, but like

15  every nonprofit at both, the national and local level, it

16  faces diminished donations and activity as a result of the

17  coronavirus on top of the effects of this Chapter 11 filing.

18  Now, the movement is adjusting to the current virtual

19  environments with Zoom meetings and camp-ins and the like,

20  but the core of what we do, like actual, real summer camp is

21  at risk and the upcoming fall recruitment season will

22  probably be like no other and that's not necessarily for the

23  better.

24    The longer the BSA lingers in Chapter 11, Your

25  Honor, with all of it added uncertainty, the less like the

1    BSA will come out.  But the congress is also true, the sooner

2    the BSA can get to a solution that works for the parties, the

3    greater the chance that scouting will emerge as a viable

4    entity that can pay its debts and serve kids.

5             Granting the mediation motion today, Your Honor,

6    is, in our view, an essential step towards that end and we

7    respectfully urge you to do so.  Thank you.

8             THE COURT:  Anyone else speaking in favor of the

9    motion?

10        (No verbal response)

11            THE COURT:  Okay.  Let me hear from the objectors.

12            MR. RUGGERI:  Your Honor, James Ruggeri for

13   Hartford.

14            THE COURT:  Yes.

15            MR. RUGGERI:  Your Honor, this motion is

16   frustrating for Hartford.  We don't object for any purpose of

17   delay.  Hartford has been trying to kick in the door, if you

18   will, for a very long time.  I'm disappointed that

19   Mr. Andolina said that we seriously misrepresented the

20   filings and the facts and I would encourage the Court to take

21   a look at the Azer declaration that was filed late last night

22   or this morning to get a flavor of what Hartford, for

23   example, was told in October of 2019.

24            Hartford wasn't told that there was going to be a

25   global mediation.  Hartford had asked and wasn't told that

1  Boy Scouts was planning to file bankruptcy.  Hartford wasn't

2  told that Boy Scouts were in discussions with anyone about a

3  pre-packaged bankruptcy filing.  We know all of this through

4  the filings that have taken place in this case so far.

5          What Hartford was told is that BSA, "Is in a

6  process of seeking to mediate several additional claims that

7  triggers Hartford's coverage obligation."  That's what

8  Hartford was told on October 23rd about the upcoming

9  mediation.  Hartford wasn't told anything else.

10          Mr. Andolina says that Hartford's position is that

11  its policies are exhausted.  That is incorrect with at least

12  one of our primary policies, which Mr. Azer's email

13  recognizes Hartford does not content is exhausted.  But,

14  again, that's another statement by Mr. Andolina that is

15  incorrect.

16          All we're looking for, Your Honor, is for the

17  process to be fair.  Initially, we were told, even though

18  we're a creditor again, but of only two primary carriers in

19  Boy Scouts' program (indiscernible) primary coverage pre-1998

20  that we would be allowed to participate in all aspects of the

21  mediation.  There's a fight to see that (indiscernible).

22          We were told and given a slate by Mr. Azer of

23  potential mediators.  Mr. Fynn wasn't on that slate.

24  Mr. Greene wasn't on that slate.  There were three mediators,

25  two of whom were Ben Gallagher and Elaine Phillips and I

1    don't remember the third -- and I apologize for that -- but

2    the third was not Mr. Fynn and it was not Mr. Greene.

3              The first time we saw those names and anyone

4    uttered those names to us in this case is when debtors filed

5    their proposed order on April 30th.  Mr. Gallagher was

6    suggested by Mr. Azer and Mr. Gallagher is someone the

7    insurers agreed to work with in this case.

8              If the Court focuses on the mediation order, I

9    can't even really tell where the division of responsibilities

10   is in the order in Paragraph 2, if there is a division, which

11   we submit there really shouldn't be.  It says up front that

12   Mr. Fynn and Mr. Greene are employed mediators for purposes

13   of mediating the comprehensive resolution of issues and

14   claims in the Chapter 11 case.

15             Does that include insurance issues?  I think it

16   must.  It must because those issues are important, as the

17   Court has heard since day one, including in the argument on

18   the objection to the Sidley application, insurance is

19   important and that's why Haynes and Boone is involved in

20   handling that part of it.

21             You go down to Mr. Gallagher, what is his job in

22   this case?  He's appointed as a mediator only to mediate the

23   insurance issues.  Again, I don't know where the line is

24   drawn.

25             Mr. Fynn, my concerns about Mr. Fynn, I've learned

1    during the course of this proceeding that there was a global

2    mediation last November at which the debtors presented a

3    claims matrix and claims protocol.  I've asked for a copy of

4    that claims matrix and claims protocol and am worried that if

5    Mr. Fynn was a mediator, he had access to that claims matrix

6    and claims protocol.  The debtors have not provided me a copy

7    of the claims matrix and claims protocol.  All I know is that

8    at least one of the participating parties at that mediation,

9    again, not Hartford, thought the claims matrix, the values

10   were too high and the protocol, the criteria for

11   qualifications were too low.

12            If Mr. Fynn participated in that session in

13   November, that is unfair to Hartford.  I can't put the

14   toothpaste back in the tube in terms of what he saw, what he

15   learned, what he knows about the parties' respective

16   position.  I can't undo what has already been done as sort of

17   a floor, if you will, for any sort of global discussions.

18            Mr. Greene, what do we know about Mr. Greene?  We

19   know he has close ties to Mr. Patton.  I don't know how close

20   those ties are.  I believe, I dare say that the Court may

21   conclude, as it can under the Local Rule 9019-5, which does

22   not say the debtor gets a priority in choosing a mediator,

23   the choice is the Court's.

24            My guess is that there are other candidates out

25   there who may be as good, if not better, and more

1  appropriate, given Mr. Greene's connections to Mr. Patton,
2  than Mr. Greene would be in this case.

3          All I know is the only mediator on whom all three
4  or all sides of this dispute agreed was Mr. Gallagher.  He
5  was vetted the proper way.  He was offered by debtor to all
6  the other constituencies.  We all agreed to Mr. Gallagher.
7  He's the only one to which we've agreed to anyone.

8          Your Honor, debtors, you know, in their moving
9  papers, if we can't agree on a mediator, the debtors said
10  that they were going to ask the Court to appoint a sitting
11  bankruptcy judge.  Clearly, that's a nod in favor of
12  Rule 9019-5.  I don't disagree with that with one tweak.  I
13  don't believe that it has to be a sitting bankruptcy judge.
14  There are several recently retired federal judges in Delaware
15  who I think would be perfectly good candidates here,
16  including Judge Farnan and Judge Carey.  Both are recently
17  retired.  We have reached out to both.  Both are interested
18  in serving as mediator and both are checking conflicts now.

19          What Hartford suggests, Your Honor, is we don't
20  need to do this in the next two days to get this ball
21  rolling.  What the Court should do is decline to enter the
22  order offered by debtors and, instead, enter an order that
23  allows all the parties to offer candidates that they want to
24  offer, and we do believe that the candidates should supply
25  information consistent with Rule 2014 disclosures.

1          And if we're unable to reach an agreement, then

2   the Court can decide whether it's one or more than one

3   candidate that should serve as mediator in this case, but the

4   Court's order should also make clear that all parties to the

5   mediation are allowed to participate in all aspects of the

6   mediation.  That all mediators, whether it's one or two, are

7   allowed and should mediate all aspects of the case and that

8   whatever information the debtors provided to the other

9   constituencies should be provided to the insurers.

10          It is not true to say that we have all the

11  information that the debtors provided to the claimants.

12  Mr. Azer sent me a letter that said that the debtors removed

13  information from the data room.  We know that those documents

14  were provided to the claimants.  So, again, that's just not

15  true as we sit here today.  I hope we work through those

16  issues, but right now it's not correct.

17          So, Your Honor, we ask the Court to decline to

18  enter the order proposed by the debtors and, instead, follow

19  a process that, in our view, is more favor to the parties in

20  interest.  Thank you, Your Honor.

21          MR. SCHIAVONI:  Your Honor, this is Tanc Schiavoni

22  for Century, may I speak?

23          THE COURT:  Yes.

24          MR. SCHIAVONI:  Your Honor, if I could boil this

25  down to what this order really is about, this is a mandatory

1   order.  This is not your normal mediation order that comes up

2   on the consent of the parties that have met and conferred,

3   that have negotiated, and they're now seeking mediate a

4   specific issue.  This is a mandatory order that applies to

5   everyone.  It delegates, in essence, the authority for

6   running the plan process to Mr. Greene.  It puts in place

7   total secrecy over everything that is then done in connection

8   with the formulation of the plan under the auspices of

9   mediation privilege under the form of order.

10          Mr. Greene is -- both Hartford and Century have

11  put in the information that is publicly available about him,

12  but that information, you know, it shows that Mr. Greene, a

13  significant part of his practice is representing tort

14  claimants, future tort claimants in mass-tort cases, in which

15  he is directly hostile to insurers and has taken positions

16  hostile and taken positions on issues that he would be asked

17  to mediate here in this case.

18          He has employed Young Conaway as his counsel in

19  those cases.  We're not able to access whether or not Young

20  Conaway is still his counsel, but I believe if we got 2014

21  disclosures, we'd find other connections between him and

22  Young Conaway and Mr. Patton, with whom he's also authored

23  law review articles.

24          In essence, we have the plaintiffs proposing a

25  plaintiffs' lawyer to not just mediate, but to decide all the

1   issues that are subject to mediation and then to cloak the

2   entirety of those discussions in mediation confidentiality.

3   That's an extreme concern to us, to Century, and I think some

4   of the other insurers because the policies in place here

5   provide to us, it's the most fundamental to the insurance, a

6   duty to cooperate from the debtor to the insurers.  That

7   means having us at the table with them when they negotiate.

8          What we found in _Imerys_ what happened, and maybe

9   you heard it in some of the exclusivity discovery debates was

10  that, basically, the tort claimants in that case had

11  instructed _Imerys_ not to allow J & J to negotiate separately,

12  that all discussions had to go through the debtors.

13         We were completely sidelined there and that's what

14  our concern is here; that we'd be put in a mediation room

15  entirely by ourselves, maybe send some food throughout the

16  process, but that all of the discussions between the debtor

17  and the tort claimants would take place with a plaintiffs'

18  lawyer essentially overseeing them to our exclusion.  Then,

19  with the blessing of the Court, under the terms of the

20  secrecy order that would then follow it, we'd be, essentially

21  lose all rights to the cooperation that we would otherwise

22  have.

23         The very atmosphere that collusion, you know,

24  thrives in and that's what we wanted to avoid.  There's no

25  reason for this level of secrecy that is invoked by this

1  order.  There's no reason to even rush to do it right now.

2  The notion that there's some sort of delay incumbent here,

3  you just heard argument this morning for several hours about

4  the necessity to have information of the claims in order to

5  mediate where the claimants have insisted that that

6  information shouldn't be provided until November.

7        It's not even clear to me how Boy Scouts can even

8  negotiate a monetary resolution of claims for which they have

9  no information and don't know what the number of those claims

10 are.  So, we're all in favor -- what this motion is not about

11 is, it's not about whether or not the parties could

12 participate in a consensual plan negotiation process.

13       We'd be happy to do so and Mr. Greene could come

14 as counsel to Young Conaway and the future claimants

15 representative in that context.  But if one appoints here

16 over our objection a mediator that doesn't have our

17 confidence as neutral, and I would argue just based on what

18 we already have probably triggers 2455, it sets up a process

19 that's not going to work and isn't going to instill

20 confidence and is going to taint the process because it's

21 going to draw objections later from complaints who are going

22 to contend that it shouldn't have all been held in secrecy.

23       So, Your Honor, we ask you to give thought to

24 Hartford's objections to require 2014 disclosure, but also to

25 open the process to former judges in Delaware.  You've heard

1  two very good candidates.  Judge Lewis, former Judge Lewis

2  from the Third Circuit is another candidate who's available,

3  as well as Ken Feinstein, who negotiated the 9/11 cases.

4        With some input from the U.S. Trustee, you know,

5  someone could be put in that would have facial neutrality if

6  there wasn't consensus among the parties.  Thank you.

7        MR. WINSBERG:  Your Honor, if I may speak?  Yes,

8  Your Honor, Harris Winsberg, on behalf of the Allianz

9  insurers, if I may speak briefly?

10        THE COURT:  Yes.

11        MR. WINSBERG:  Just real briefly, I just wanted to

12  echo the comments made by Chubb and Hartford and the Allianz

13  insurers support those positions.

14        One thing to point out, Your Honor, the mediators,

15  Mr. Fynn and Mr. Greene, they were not approved -- we weren't

16  consulted before they were selected by the other parties in

17  interest and they are going to mediate things, are proposed

18  to, that are very important to us, including the treatment of

19  claims and then the funding of a trust.  Those are things

20  that are really important to the insurers.

21        And the idea that you could segregate those issues

22  from "insurance issues" whatever that means, we don't really

23  think that that's realistic and we believe that the Court

24  should consider some other candidates, including some very

25  fine retired judges in your district that we think would do

1 an excellent job and bring some neutrality to the process;

2 otherwise, we have a court-ordered mediation that we believe

3 won't have a great likelihood of success.

4             And with that, Your Honor, I thank you for your

5 time.

6             MR. LUCAS:  Your Honor, this is John Lucas,

7 Pachulski Stang, for the TCC.  I didn't know if you were

8 going to allow proponents in favor of the motion to respond

9 to the insurers?

10             THE COURT:  I'm not sure I need a response.

11             MR. LUCAS:  Understood.

12             THE COURT:  Let me tell you where I'm coming from.

13 I'm going to continue this motion until June 8th.  My concern

14 is that unlike I think probably any order I've entered, I'm

15 mandating parties go to mediation and I'm not simply, as I

16 usually do, approving the consensual choice of parties to

17 mediation.  And I want to ensure that we have a successful

18 mediation because I hear all the parties saying that a

19 mediator would be helpful and, perhaps, is critical here to a

20 successful exit from bankruptcy.

21             And I do, in that context, think it is important

22 for all parties to understand the connections of any mediator

23 or mediators who are selected, so that parties can assure

24 themselves that there is not a predisposed bias in the way a

25 mediator may view issues.  So, I think while it may not be

1  necessary, it is not unreasonable to request disclosures of

2  connections as those words are used in Rule 2014, of any

3  candidate.

4         The idea of -- however, the idea of someone with

5  some expertise in the area, I think, is also not of an

6  improper or illogical criteria upon which to approve

7  mediators and so I don't necessarily rule out someone who's

8  knowledgeable, who's been involved in mass-tort bankruptcies,

9  but I think it's fair to understand that person's

10  connections.

11         Let me also say that in terms of the order, I did

12  not understand the division, necessarily, of -- in

13  Paragraph 2 between what Mr. Fynn and Mr. Greene were

14  requested to do and Mr. Gallagher.  I'm not sure that there's

15  a fine line there.  Perhaps there is, but it's not clear to

16  me and I certainly think the mediators, to the extent there's

17  going to be some division of duties, need to understand what

18  each of them is going to do.

19         I will also say that I'm not going to micromanage

20  the mediation.  So, I'm not going to determine who's stuck in

21  a room by themselves with maybe some food and who's not;

22  going to be for the mediators to determine.

23         And I'm not going to determine the right to

24  cooperation issues and insurance contracts, either, nor, of

25  course, do I think the insurers want me to, but as I said in

1  Imerys, to the extent that the debtors aren't meeting their

2  obligations under the insurance agreements, there may be

3  consequences to that under the policies and I'm not

4  sanctioning by virtue of sending anyone to mediation on

5  breaches of contracts by anybody, nor, of course, would I

6  sanction somebody in violation of their obligations under any

7  common-interest privilege.

8          So, there's a lot of issues.  I do, by the way,

9  think the common-interest privilege issue ought to be dealt

10 with in the protective order, which we're going to take up if

11 it can't be resolved, on the 8th.

12         So, those are my thoughts.  I'm not suggesting

13 today whether Mr. Fynn or Mr. Greene or Mr. Gallagher is an

14 appropriate mediator or not and it does seem to me that to

15 the extent some party is concerned that one or more of the

16 candidates may skew a little in one direction, having three

17 might balance that out and be appropriate.

18         But I think in the first instance, information in

19 this context is a positive, so that parties can get

20 comfortable that we have mediators whom they can deal with

21 and you result in a successful mediation.  So, I'm adjourning

22 this to the 8th.

23         Did you have anything else?

24         UNIDENTIFIED:  No, Judge.

25         MR. ABBOTT:  Well, Your Honor did just mention, of

1  course -- Derek Abbott for the debtors, Your Honor --

2  mention, of course, the protective order and the June 8th

3  conference.  I don't know if there's anything else that the

4  parties wish to present to the Court about that in terms of

5  status today but understand we will be hearing that on

6  the 8th, Your Honor.

7           UNIDENTIFIED:  I think my update served as a

8  status and, Your Honor, we hope not to see you about the

9  protective order and I'm sure you feel the same.

10          THE COURT:  Okay.  Well, I was going to say

11  something, but I guess I didn't have to, then.

12          Okay.  So, I think we've completed the docket for

13  today.

14          MR. ABBOTT:  We have, Your Honor.  Thanks very

15  much.

16          THE COURT:  Okay.  Thank you, everyone.

17          We're adjourned.

18       (Proceedings concluded at 3:03 p.m.)

19                        CERTIFICATE

20

21     I, MARY ZAJACZKOWSKI, certify that the foregoing is a

22  correct transcript from the electronic sound recording of the

23  proceedings in the above-entitled matter.

24
    /s/Mary Zajaczkowski              May 19, 2020
25  Mary Zajaczkowski, CET**D-531

# EXHIBIT 13

1

```
                   UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

                                  .    Chapter 11
IN RE:                            .
                                  .    Case No. 20-10343 (LSS)
BOY SCOUTS OF AMERICA and         .
DELAWARE BSA, LLC,                .
                                  .
_____Debtors._____  .
BOY SCOUTS OF AMERICA,            .    Adv. Pro. No. 20-50527
                                  .
                 Plaintiff.       .
                                  .
     v.                           .    Courtroom No. 2
                                  .    824 Market Street
A.A., et al.,                     .    Wilmington, Delaware 19801
                                  .
                 Defendants.      .    June 8, 2020
. . . . . . . . . . . . . . . .   .    10:00 A.M.


                TRANSCRIPT OF TELEPHONIC HEARING
        BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
                UNITED STATES BANKRUPTCY JUDGE

TELEPHONIC APPEARANCES:

For the Debtor:          Derek C. Abbott, Esquire
                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                         1201 North Market Street, 16th Floor
                         P.O. Box 1347
                         Wilmington, Delaware 19899


Audio Operator:          Ginger Mace

Transcription Company:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         (302)654-8080
                         Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

```
 1   TELEPHONIC APPEARANCES (Continued):

 2   For the Debtors:          Jessica C. Boelter, Esquire
                               Michael Andolina, Esquire
 3                             SIDLEY AUSTIN LLP
                               787 Seventh Avenue
 4                             New York, New York 10019

 5                             - and -

 6                             Richard Mason, Esquire
 7                             WACHTELL LIPTON ROSEN & KATZ
                               51 West 52nd Street
 8                             New York, New York 10019

 9                             - and -

10                             Shannon Wheatman, Esquire
                               KINSELLA MEDIA
11                             Washington, D.C. 20037

12   For the U.S. Trustee:     David Buchbinder, Esquire
13                             OFFICE OF THE UNITED STATES TRUSTEE
                               844 King Street, Suite 2207
14                             Wilmington, Delaware 19801

15   For the Committee:        Rachel Ringer, Esquire
                               KRAMER LEVIN NAFTALIS & FRANKEL LL
16                             1177 6th Avenue
                               New York, New York 10036
17
18   For Future Claimants:     Robert Brady, Esquire
                               YOUNG CONAWAY STARGATT & TAYLOR, LLP
19                             1000 North King Street
                               Wilmington, Delaware 19801
20
21   For National Surety       Harris Winsberg, Esquire
     Corporation and Allianz   TROUTMAN SANDERS LLP
     Global Risks US           600 Peachtree Street, Suite 3000
22   Insurance Company:        Atlanta, Georgia 30308

23   For Interested Parties:   James Stang, Esquire
                               PACHULSKI STANG ZIEHL JONES LLP
24                             919 North Market Street, 17th Floor
                               Wilmington, Delaware 19801
25
```

```
 1   TELEPHONIC APPEARANCES (Continued):

 2   For AIG:                  Susan Gummow, Esquire
                               FORAN GLENNON PALANDECH PONZI
 3                                & RUDLOFF, P.C.
                               222 North LaSalle Street, Suite 1400
 4                             Chicago, Illinois 60601

 5   For Agricultural          Taylor Meehan, Esquire
 6   Insurance Company:        CLYDE & CO US LLP
                               101 2nd Street
 7                             San Francisco, California 94105

 8   For First State           James Ruggeri, Esquire
     Insurance Company:        SHIPMAN & GOODWIN LLP
 9                             1875 K Street NW, Suite 600
                               Washington, DC 20006
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    MATTERS GOING FORWARD:

2    Debtors' Motion for Entry of an Order (I) Appointing a Judicial
     Mediator, (II) Referring Certain Matters to Mandatory Mediation,
3    and (III) Granting Related Relief (D.I. 17, Filed 2/18/20).

4    **Ruling:   54**

5    ADVERSARY PROCEEDING:

6    *Boy Scouts of America v. A.A. et al., Adv. Pro. No. 20-50527*

7    Second Stipulation and Agreed Order by and Among the Boy Scouts
     of America, The Official Committee of Survivors of Abuse, and
8    The Official Committee of Unsecured Creditors Modifying the
     Consent Order Granting the BSA's Motion for a Preliminary
9    Injunction Pursuant to 11 U.S.C. §§ 105(a) and 362 and Further
     Extending the Termination Date of the Standstill Period (A.D.I.
10   76, Filed 6/2/20).

11   **Ruling:   10**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Telephonic hearing commenced at 10:09 a.m.)

2              THE COURT:  Good morning, counsel.  This is Judge

3    Silverstein.  We're here in the Boy Scouts of America case;

4    Case No. 20-10343.

5              Ginger, can you please remind everyone of the

6    protocol for the hearing?

7              MS. MACE:  It is extremely important that you put

8    your phones on mute when you are not speaking.  When speaking

9    please do not have your phone on speaker as it creates

10   feedback.  This also helps with the background noise so that

11   we can hear the person that is speaking and get an accurate

12   record.  Also, it is very important that you state your name

13   each and every time you speak for an accurate record.

14             Your cooperation in this matter is appreciated.

15   Thank you.

16             THE COURT:  Thank you.

17             Mr. Abbott?

18             MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott

19   here for the debtors.

20             Your Honor, although there was a lengthy agenda

21   most of the items have either had an order entered or been

22   adjourned.  There are two matters going forward, Your Honor;

23   Docket Items No. 8 and 10.  Docket Item No. 8, Your Honor, is

24   the mediator motion from Docket Item 17 in the case.  Docket

25   Item 10, Your Honor, is the further stipulation regarding the

1  preliminary injunction.

2         Your Honor, that we don't believe is contested,

3  No. 10, and some of how that has evolved will impact a little

4  bit the discussion of No. 8.  So, Your Honor, I would

5  propose, unless Your Honor wishes to do it otherwise, to

6  tackle No. 10 first if that would please the court.

7         THE COURT:  That's fine.  As I read the agenda

8  this matter was going forward as a status conference. So,

9  let's go forward with that.

10         MR. ABBOTT:  Thank you, Your Honor.  And on that

11  basis I will turn it over to Mr. Andolina if I may.

12         MR. ANDOLINA:  Good morning, Your Honor.  Mike

13  Andolina, Sidley Austin, on behalf of the debtors.  Happy

14  Monday.

15         Your Honor, you will recall that when the parties

16  were before you on May 18th the court had entered a short

17  extension of the preliminary injunction with respect to the

18  impending abuse actions until today, June 8th.  Your Honor,

19  we're pleased to report that as a result of extensive

20  negotiations we now have an agreement and stipulation to

21  extend that preliminary injunction through the bar date of

22  November 16th.  That stipulation was filed in the adversary

23  proceeding last Tuesday, Your Honor, June 2nd, at Docket No.

24  76.

25         The stipulation, Your Honor, provides that each of

 1  the local councils, to the extent that they wish to receive

 2  the continuing protection of the preliminary injunction, must

 3  sign an acknowledgement and agreements on or before July 6th,

 4  2020 and agree to provide certain information to the BSA on a

 5  going forward basis.  Your Honor, the form of acknowledgement

 6  and agreement is at Docket No. 76, Exhibit 4, Pages 2 and 3.

 7  This agreement in the overall stipulation was negotiated

 8  between the committees, the BSA, and also the ad hoc

 9  committee of local councils.

10         We want to thank Mr. Stang, and Mr. Luca, as well

11  as Ms. Ringer, and Mr. Mason and his colleagues for their

12  efforts over the past several weeks.  All of the parties

13  believe this is a fair process that will keep the local

14  councils involved in the negotiations, but also provide the

15  committees the information they have requested.

16         Your Honor, as the agenda noted we did receive

17  three objections to the prior stipulation.  The debtors have

18  been in touch with all three parties and they have each

19  agreed that their objections, to the extent that we are

20  unable to resolve them will be continued until the July 9th

21  hearing in accordance with the stipulation.  In that regard,

22  Your Honor, the stipulation will be filed in all of the

23  pending abuse dockets and additional parties will have until

24  June 19th to object with replies due on July 2nd.

25         One additional note, Your Honor, the second

1  stipulation includes language describing an alternative

2  procedural mechanism for further extensions of a preliminary

3  injunction, specifically Paragraph 8, Your Honor, the second

4  stipulation provides that BSA may file an extension motion no

5  later than twenty-five days prior to the termination date

6  with this court and serve all counsel in the pending abuse

7  action with stipulations that sets forth a briefing

8  scheduling culminating on that extension motion.

9           The parties understood, Your Honor, that a

10 protocol along these lines was preferable to the court on a

11 going forward basis.  So, we wanted to include that change

12 and alert the court.

13          I'm happy to answer any questions, Your Honor,

14 with respect to the stipulation, but the debtors would

15 request that it be entered by the court.

16          THE COURT:  Thank you.

17          MR. STANG:  Your Honor, this is Mr. Stang.  When

18 appropriate I'd like to make a comment.

19          THE COURT:  This is an appropriate time.

20          MR. STANG:  It is or is not?

21          THE COURT:  Yes, it is.

22          MR. STANG:  Oh, okay.  Sorry, Your Honor.  Thank

23 you.

24          Your Honor, I'm responding to the comment that Mr.

25 Andolina made about the discovery that is connected with this

1  injunction.  We are, both committees, I speak for Ms. Ringer,

2  if I may, are anticipating a substantial data download from

3  BSA that relates to the local councils.  Members of the ad

4  hoc local council have delivered some discovery to our

5  committee on a professional eyes only basis and we are

6  anticipating that as local councils sign-up to this protocol

7  that additional discovery will be forthcoming as well.

8          The reason for my comments are twofold.  First,

9  the stipulation was very clear, we think, that to the extent

10 the discovery we are getting from the local councils, which

11 is all being done now on a voluntary basis, is not adequate

12 or doesn't cover the topics that we feel we need that the

13 stipulation does not bar us from seeking discovery through

14 process.

15          The second thing is, and I usually don't do

16 something like this, but I'd ask your indulgence, Your Honor,

17 the release of the information to the committee's is

18 dependent on the execution of the -- or the entry of the

19 protective order.  And we have several meetings lined up this

20 week with the debtor and amongst the committee that

21 anticipated that the protective order would be signed by now.

22 And I know that it's on your desk and from a scheduling

23 perspective some very important meetings when we might expect

24 an entered order in whatever version it comes down.

25          So that's it, Your Honor.  Thank you.

1      THE COURT:  Thank you.  My goal is to enter that

2  protective order today.

3      Does anyone else wish to be heard?

4      MS. RINGER:  Your Honor, its Rachel Ringer from

5  Kramer Levin on behalf of the unsecured creditors committee.

6      I don't have anything to add.  I just -- Mr.

7  Stang, I think, covered it.  I know he said that he wanted to

8  speak for me. I think he covered it and I certainly don't

9  disagree with anything that he said.

10      THE COURT:  Thank you.

11      Anyone else?

12    (No verbal response)

13      THE COURT:  Okay.  I reviewed the stipulation and

14  I will enter it as requested given that there's an agreement

15  from the three objectors to postpone their objection to July

16  9th.  And I will hear those objections on that date unless,

17  of course, there is a resolution ahead of time.  And I would

18  encourage the parties to talk in that regard.

19      I do believe that a mechanism where parties can

20  object to a further extension prior to the time that the

21  current extension lapses is appropriate.  So, I will enter

22  that stipulation which I understand to be Docket 76.

23      MR. ABBOTT:  Thank you, Your Honor.  Derek Abbott

24  for the debtors again.

25      Your Honor, I think that brings us to Docket Item

1  No. 8 which is the mediator motion, again Docket Item 17.  I

2  will ask Ms. Boelter to address the court regarding that if

3  we may.  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MS. BOELTER:  Thank you.  Jessica Boelter, Sidley

6  Austin, on behalf of the debtors.

7          Your Honor, this is a continuation of the hearing

8  on the debtors' motion to appoint a mediator at Docket No.

9  17.  As with our last hearing on this motion we believe there

10 still are three remaining objecting parties, namely the

11 objecting insurers Hartford, Century and Allianz.

12         In contrast to the last hearing, I think in light

13 of additional disclosures and filings that have been made

14 we've managed to, at least, crystalize the issues that are

15 before the court.  And what I would like to do, Your Honor,

16 is walk you through what we think is still in dispute.

17         The objections, Your Honor, largely fall into what

18 I call three of the five W's; when, who and what.  I am going

19 to take them in that order.  That is when should a mediator

20 or mediators be appointed?  Who should those mediators be?

21 And what should the proposed form of order say about the

22 mediators and the mediation process?

23         Starting with the when, when should the mediator

24 be appointed, we believe the answer is now.  The other

25 official constituents in this case agree with us, the TCC,

1  the UCC, the FCR, even the ad hoc committee of local

2  councils, we all agree a mediator needs to be appointed now.

3  Now I understand the insurers pointed to some comments made

4  by counsel to the TCC pertaining to the fact the notion of a

5  global resolution of the debtors' abuse liability really

6  couldn't occur until after the bar date of November 16th.

7          And, in fact, one of the insurers even suggested,

8  incredibly, that we could use this time to take discovery of

9  our proposed mediators.  Your Honor, we think that's just

10  wrong.  The TCC has clarified its statement in its filing

11  that was made, I believe that was on Friday afternoon.  I'm

12  not sure if Your Honor has had the opportunity to see that,

13  but the TCC, the  UCC and the debtors have each identified

14  issues that could be mediated and, in fact, should be

15  mediated in advance of the bar date.

16          Just to put a little more meat on that bone,

17  you've probably seen in the agenda the identified property

18  dispute scheduling motion.  We've kind of tossed that concept

19  around a few times in our pleadings and, again, in the

20  agenda, but it's really an essential issue to this Chapter 11

21  case.  And the notion behind that motion was to establish a

22  schedule to litigate disputes pertaining to the debtors'

23  property.

24          When I say that I'm really referring to the High

25  Adventure Bases.  The debtors believe that the High Adventure

1  Bases are restricted assets; in other words, should not be

2  made available to satisfy the claims of creditors and are

3  core to the mission in that the debtors should not be forced

4  to monetize those assets to satisfy the claims of creditors.

5         It will come as no surprise to Your Honor that Mr.

6  Stang and Ms. Ringer absolutely disagree with that position.

7  We've heard from both the TCC, and the UCC, and the FCR, as

8  well as the United States Trustee that they have a problem

9  with that scheduling motion and that they would object to it

10 very vociferously if it comes before the court.  We've

11 continued to push it out because we actually believe those

12 issues are ripe for mediation.

13        We think they should be mediated.  We think it

14 would be much more efficient to mediate those issues and

15 those issues are not dependent in any way, shape or form on

16 the bar date in November or even -- nor do they implicate the

17 insurers' interests.  So, that is one very concrete example,

18 Your Honor, of an issue that's going to be ultimately central

19 to the plan, that can be mediated relatively immediately.

20        The second reason, Your Honor, that we think we

21 need to get started with mediation right away is, frankly,

22 the cost of these Chapter 11 cases.  It's just becoming much

23 too burdensome for the debtor.  If you simply look at the

24 filed fee applications which really only cover through March

25 and some of the significant retained professionals have not

1   actually filed fee applications, we've already got $8 million

2   dollars of fee apps sitting on the docket and the debtors

3   estimate that if you project that forward through April we're

4   looking at $17 million dollars of professional fees for $2

5   and a half months of this case.  That is absolutely not

6   sustainable for this charitable non-profit organization.

7          We cannot afford to litigate our way through this

8   Chapter 11 case.  There is only one way to get there and that

9   way is to get there through mediation, through the central

10  issues that we know are going to come up ultimately at plan

11  confirmation.  So, to answer the first W, the when, the when

12  is now and we think that's pretty crystal clear from the

13  pleadings.

14         So, that brings me to the second W, the who, who

15  should the mediator or mediators be.  As Your Honor is aware

16  we scheduled -- excuse me, we proposed, along with the UCC,

17  the TCC, the FCR, and the ad hoc committee of local council a

18  panel of three mediators.  And we really viewed this and

19  continue to view this as the perfect solution for a mediator

20  problem that we would, otherwise, encounter in this case.

21         We have three individuals that have very different

22  backgrounds and very different areas of expertise, each of

23  which we believe are necessary for purposes of mediating the

24  cases.  You have Eric Green who is an undisputed expert in

25  bankruptcy mass torts.  You got Mr. Finn who has mediated

1  hundreds of abuse survivor cases.  And as we have all come to

2  learn during this proceeding abuse survivors have very

3  particular and sensitive issues that it really takes an

4  expert to understand, like Mr. Finn and I'm sure Mr. Stang

5  would tell us more about that.  Then finally we've got Mr.

6  Gallagher who is an individual who has extensive coverage

7  mediation experience and that the parties were informed was

8  universally acceptable to the insurers.

9        So, in the wake of our last hearing, Your Honor,

10  each of these three original panelists provided the 2014

11  disclosures.  And from the debtors perspective and I don't

12  want to speak for the TCC, UCC or FCR, but I think they would

13  agree nothing has changed.  And, in fact, from our

14  perspective there were no surprises in those disclosures.

15        Now the insurers have wanted to make much about

16  the relationship between Mr. Green and Mr. Patton, the FCR.

17  The insurers pointed this out before, the 2014 said the same

18  thing; it's no surprise that Mr. Patton and Mr. Green have

19  worked together.  They are each the foremost experts in their

20  respective areas. And it's because of that expertise that Mr.

21  Patton was selected as the future claimant's representative

22  for this particular case and it's because of that expertise

23  that Mr. Green was also selected as a mediator.

24        Notably, it's not Mr. Patton that is pushing Mr.

25  Green forward, it's the debtor, it's the unsecured creditors

1  committee, and it's the TCC.  And by the way, there has been

2  no suggestion that Mr. Green has a relationship with the TCC.

3  And it's also the ad hoc committee.  This was a panel of

4  three that everyone agreed to.

5          Now they also -- the insurers also make something

6  of the fact that Mr. Green disclosed that he is social

7  friends with Mr. Patton or a somewhat of a social

8  relationship.  For the reasons in our paper we don't think

9  that's the disqualifying at all.  Moreover, the insurers'

10 position fails to take into account the checks that are

11 already built into this mediation proposal before the court.

12 First, as we pointed out the FCR role in this case is very

13 limited.  The FCR represents individuals that are currently

14 under the age of 18 and represents individuals who have

15 repressed memory.  That is a very limited universe.  The TCC,

16 Mr. Stang's group, represents the vast majority of the abuse

17 survivors and, again, there has been no suggestion that Mr.

18 Stang has any issue with Mr. Green.

19          I'd also point out, and I think Your Honor took

20 note of this in our last hearing, this is a three mediator

21 panel.  There are two other mediators that provide a very

22 important check on each of the other mediators.  That is why

23 this panel was, essentially, a perfect solution from the

24 debtors' perspective and the other constituent's perspective.

25 And then finally --

1          THE COURT:  Ms. Boelter?

2          MS. BOELTER:  Yes.

3          THE COURT:  Do you want to explain that check to

4   me because I really -- I have never been involved in a three

5   mediator mediation and I'd like to understand what you

6   believe the check is on that, on each mediator.

7          MS. BOELTER:  Yes, Your Honor.  So, I think it

8   goes back to, essentially, it's a twofold response.  One is

9   because of the complexity of this case each of the mediators

10  provides a unique perspective.  We've got the coverage

11  mediator that provides the perspective of understanding the

12  insurers having been involved in numerous insurance coverage

13  disputes.  You've got Mr. Finn who while he doesn't

14  necessarily have bankruptcy expertise he has mediated

15  numerous abuse survivor proceedings.

16          Again, as I suggested before, I think Mr. Stang

17  will tell you and as I think he's repeated often in these

18  proceedings, the abuse survivor perspective is one that's

19  emotional, it's sensitive and it requires a particular party

20  that understands abuse survivors, what they've been through

21  and the damages that they have suffered.  Then finally you

22  have Mr. Green who has extensive bankruptcy expertise

23  including what may be the center of this particular

24  bankruptcy, a channeling injunction that involves releases

25  for not only the debtor, but also potentially the local

1  councils.

2          So, with that we've got expertise checks on the

3  system, but we also have checks on the system from a

4  familiarity perspective.  Mr. Finn, again, is familiar with

5  the abuse survivor constituency.  Mr. Gallagher is familiar

6  with the insurance constituency.  Mr. Green, from our

7  perspective, actually, is quite familiar with all aspects of

8  the constituencies because he's mediated all different types

9  of cases.

10          Each of those individuals brings an important

11 check to the other.  As we look at, for example, the mediator

12 order, when it comes to the process for mediation and as I

13 will get to in a moment, the issues to be mediated rather

14 than legislating how the mediators are going to interact with

15 one another we're proposing, Your Honor, that the mediators

16 confer amongst themselves in terms of the process for the

17 mediation.  They will also confer with the parties as well as

18 the issues to be mediated and how they will be mediated as

19 among those mediator parties.

20          So, we believe that there are checks, Your Honor.

21 We also believe that the mediation -- you know, we took Your

22 Honor's comments to heart at the last hearing and the

23 insurers' remarks and we've modified the mediator order so

24 it's not mandatory.  If the insurers don't want to

25 participate you're not mandating that they do so.

1          Now, while we continue to believe that the

2   original panel offered the, really, perfect solution for the

3   divergent interests that will be subject to the mediation we

4   also heard Hartford's counsel on the record a few weeks ago

5   mention Mr. Carey's name.  I believe both Hartford and

6   Allianz mentioned Mr. Carey in their pleadings.  And as the

7   debtor represented in our pleadings no one can deny that Mr.

8   Carey has extensive expertise in complicated bankruptcy

9   matters.  And I don't think that anyone can call into

10  question his impartiality here.

11          I say that, Your Honor, notwithstanding the fact

12  that his 2014 disclosure did include the fact that Mr.

13  Carey's law firm is general counsel to the Girl Scouts which

14  is a member of the creditors committee and, as you know, an

15  adverse litigant to the Boy Scouts.  We believe that Mr.

16  Carey can adequately deal with that and we don't think that

17  in any way should call into question his ability to mediate

18  these cases.

19          So, as we indicated in our papers if the original

20  panel is not acceptable to the court we think that Mr. Carey

21  is absolutely acceptable to mediate these disputes, but I

22  understand the UCC and the TCC may have something to say

23  about that.

24          That gets me, Your Honor, to what is in the

25  proposed form of order.  As I indicated, for purposes of

1 this, sort of, opening remark I don't intend to go through

2 line by line.  I imagine there are other parties that would

3 like to be heard before we get to that point, but I do want

4 to provide an overview of the changes that were made because

5 I think they really do address the concerns that the

6 remaining three objectors have raised.

7         Again, we've changed the order so that mediation

8 is no longer mandatory.  We also heard at the last hearing

9 parties struggle with identifying the topics that would be

10 mediated, how that would, sort of, work vis-à-vis each of the

11 individual mediators.  The order now includes a process for

12 parties to the mediation to propose a topic on notice to the

13 other parties and for the mediators to confer among

14 themselves on how to conduct the mediation with respect to

15 those topics.

16         Again, Your Honor, we thought it was probably not

17 wise to pre-legislate how the mediators would proceed as far

18 as that goes, but we did want to provide guidance in the

19 order with respect to that issue because we heard the parties

20 loud and clear that they needed a little bit additional

21 guidance in the form of order.

22         That brings me, I think, to three additional

23 issues that don't appear in the proposed form of order, but

24 were raised by Century as things that they would like to see

25 in the proposed form of order.

1          The first is Century, as they've expressed in

2   connection with the protective order, has concerns that the

3   mediation could result in the transfer of privileged

4   information by the debtors to a party that's not within the

5   scope of that privilege such as the TCC or the FCR.

6          First, Your Honor, it's our view that the

7   protective order that Mr. Stang just raised will govern the

8   provision and production of information in connection with

9   all aspects of this Chapter 11 case including the mediation

10  itself. I don't believe that's currently in the order right

11  now, but we can absolutely state that the provision of

12  information in connection with the mediation is subject to

13  the terms of the protective order.

14         And as we heard at our last hearing the protective

15  order now contains very clear language with respect to the

16  fact that individuals can't be violating privilege when

17  they're providing information in connection with these

18  Chapter 11 cases.  We're happy to cross-reference that

19  language or cross-reference the protective order. The

20  mediation order, itself, is not about information sharing,

21  it's simply about the appointment of a mediator.  We think

22  that should resolve that issue.

23         Second, Century has requested language in the

24  mediation order that provides that prior to the mediation

25  information that was shared with the FCR prior to the

1  bankrutpcy case and what is in, essence, the predecessor of

2  the TCC, the ad hoc committee of survivors that existed prior

3  to the bankruptcy case, Century has requested that they be

4  provided that information.  Your Honor, we don't think the

5  mediation order is an appropriate document to order

6  production of documents or to deal with production of

7  documents at all for that matter.

8        What I will say and we've represented this to

9  Century before and I will say it again, once the protective

10 order is entered the debtors will provide, in accordance with

11 the protective order, the information that had been provided

12 to the FCR and the ad hoc group of claimants prior to the

13 bankruptcy case.  That information had been provided to those

14 constituencies prior to the bankruptcy subject to a very

15 extensive non-disclosure agreement.  We view the protective

16 order as providing that same type of protection now that

17 we're in the Chapter 11 case and we're happy to represent to

18 Century that in accordance with the protective order the

19 information will be provided.

20       Finally, Century has requested in its most recent

21 pleading, by the way, I'm referring to Docket 761 filed on

22 June 2nd, a short form of, what I'll just sort of casually

23 refer to as, insurance neutrality language.  Again, Your

24 Honor, the mediation order we don't believe in any way

25 effects the substantive rights of the parties.  It's really

1  only intended to get the mediators appointed and up and

2  running.  That being said the debtors certainly would be

3  amendable to adding some type of insurance neutrality

4  language to the form of order.  In fact, I believe that

5  language may have been exchanged with insurers several weeks

6  ago if that satisfies the concern of Century with respect to

7  that topic.

8           So, that is where we are from the debtors'

9  perspective, Your Honor, with respect to the mediation order.

10 I am happy to answer any other questions or cede the podium

11 to other parties that may want to be heard.

12          THE COURT:  I don't have any questions right now.

13          Let me hear from Mr. Stang.

14          MR. STANG:  Thank you, Your Honor.  Your Honor,

15 this negotiation leading to the three person panel was

16 evolved. It was a lot of balancing going on between what we

17 wanted and what the other parties wanted.  I guess it's a

18 good compromise because we're not entirely happy, but we can

19 deal with it.  That is supposedly the essence of a good deal.

20          I don't know Judge Carey.  I don't think I have

21 ever appeared before him, but clearly his reputation proceeds

22 him.  Notwithstanding that, Ms. Boelter's comments about Mr.

23 Finn's unique qualifications are absolutely matters of great

24 concern to my committee.  Mr. Finn, as we said in our

25 pleading, is the most experienced sex abuse mediator in the

1  country and also can claim that title as to Boy Scouts sexual

2  abuse.  And if we don't have him as part of this group I

3  think the likelihood of the success of the mediation, from

4  our perspective, will be in real jeopardy.

5          So, he is a very important element for us and we

6  would ask that you approve the panel as presented to you as

7  representing the balance of everyone's interests. Thank you,

8  Your Honor.

9          THE COURT:  Thank you.

10          Ms. Ringer?

11          MS. RINGER:  Thank you, Your Honor.  Rachel Ringer

12  from Kramer Levin on behalf of the unsecured creditors

13  committee for the record.

14          I don't want to repeat what Ms. Boelter or Mr.

15  Stang said, but I think from the unsecured creditors

16  committee's perspective it was important to us that there be

17  a mediator in place that did have bankruptcy expertise.  So,

18  while we understood and respected the issues that were being

19  raised by the TCC we did think it was important that there be

20  someone in place with bankruptcy expertise to deal with

21  issues that may go beyond those issues that pertain to just

22  the issues that are attended to these claims in this case.

23          So, the fact that Mr. Green not only had

24  bankrutpcy expertise, but also had mass tort bankruptcy

25  expertise we thought was a positive.  That is why we had,

1  through the negotiations, ultimately agreed to initially Mr.

2  Green and Mr. Finn, then to address the issues raised by the

3  insurers the inclusion of Mr. Gallagher as well which we

4  think really rounds out the slate and makes for a good group

5  of mediators that can work together on these issues including

6  the issues that we have all identified in either the debtors'

7  reply, the TCC's joinder, the UCC's joinder.

8          As Mr. Stang indicated in connection with the

9  preliminary injunction status conference discovery for both

10 committees is going to be extremely important here, and

11 getting the information from the debtors with respect to the

12 identified property motion and the question of restricted

13 assets, and getting information from the local councils,

14 chartered organizations for questions relating to third-party

15 releases and estate claims and estate releases are all going

16 to be extremely important.

17         So, from our perspective getting a mediator in

18 place now can start facilitating those discussions, those

19 negotiations which can all happen pre bar date even though we

20 understand that the TCC views that a global resolution may

21 need to wait until that point, but we think a lot of progress

22 can be made in the interim.  So, we felt that this group of

23 mediators, in particular, was the right group for this case.

24         We did include in our joinder the note that, you

25 know, we recognize that former Judge Carey is eminently

1  qualified to assist here.  We saw what the debtors put in

2  their reply.  Given the extensive negotiations around the

3  three mediators that we are proposing we don't agree that

4  having Judge Carey get put in as the lead or sole mediator is

5  appropriate here and so we really stand by the slate of

6  mediators that's being proposed.

7          Obviously, if Judge Carey was being introduced we

8  would have to have yet another negotiation because the group

9  that is being presented through the order and through the

10  motion was the subject of a lot of negotiations. So, we do

11  stand by that.

12          THE COURT:  Mr. Brady?

13          MR. BRADY:  Thank you, Your Honor.  Robert Brady

14  on behalf of the FCR.

15          Your Honor, as you heard, this is now a voluntary

16  mediation.  The panel that's been agreed to has been agreed

17  to by all the major constituents, the TCC, the UCC, the FCR,

18  and the ad hoc committee of local counsels all, Your Honor,

19  have differing interests and yet they were able to come

20  together on this panel.  It's the right group for all the

21  reasons you've heard.  And we ask that the court enter the

22  proposed order that the debtor has submitted.

23          THE COURT:  Thank you.

24          Anyone else?

25          MR. MASON:  Your Honor, Richard Mason for the ad

1   hoc committee.  May I be heard?

2            THE COURT:  Yes.  Mr. Mason.

3            MR. MASON:  Thank you so much, Your Honor.

4   Richard Mason of Wachtell Lipton Rosen & Katz for the ad hoc

5   committee of local councils.

6            Your Honor, we support the position espoused by

7   the debtor, the tort claimants committee, the unsecured

8   creditors committee and the FCR.  We do think that we're at a

9   pivotal point in this case, Your Honor.  With your tremendous

10  assistance and orders we've gotten very important

11  preliminaries out of the way.  We have a preliminary

12  injunction extension under a heavily negotiated framework.

13  We have a proposed protective order and we have over 200

14  local councils, Your Honor.  That number, I believe, is

15  climbing.  And we have submitted asset information to be put

16  into the BSA's data base for release to other parties.  Even,

17  Your Honor, in a COVID environment where, at best, the

18  operations are highly constrained and at worst they are, at

19  least, for the moment shut down.

20           So, now, Your Honor, in our view we're poised to

21  begin to get to the heart of the matter.  For that we firmly

22  believe that there is a need for mediation.  And in a

23  mediation the first important step is parties coming together

24  to the best extent possible to select who the mediators are

25  subject to Your Honor's approval.  I would echo the

1  statements made that the negotiation around the mediation

2  order and the selection of the mediators has been intense, if

3  you will, and I think that the proposed resolution achieved

4  needs a balance as much as possible so that the different

5  parties' interests can be addressed.

6          As Mr. Stang said, the TCC feels very strongly

7  that Mr. Finn should be one of the mediators.  Mr. Gallagher

8  was proposed to address the insurers' concerns and for the

9  third mediator we have Mr. Green who has significant

10  expertise in bankrutpcy mediations.

11          From the ad hoc committee's perspective we're

12  comfortable with that package.  We would hope that it won't

13  be unraveled, if you will.  Using Ms. Boelter's

14  (indiscernible) of the three W's to us, Your Honor, the most

15  important W at the moment is when, when should the mediation

16  order be entered and when should the mediation commence.  And

17  we would respectfully urge you, Your Honor, to enter the

18  order today.  There is much, much work to be done to see if

19  we can get to a settlement, Your Honor.  I don't know that we

20  can.  I'm hopeful that we can, but I think we need, with the

21  assistance of mediators, to begin to try that now.

22          For all the reasons that Your Honor has heard

23  time, unfortunately, is not a friend of the scouting movement

24  in terms of the time that this will take, not a friend to

25  ultimately a potential settlement.  So, we would urge you,

1  Your Honor, respectfully to enter the order today.  Thank

2  you.

3          THE COURT:  Thank you.

4          Is there anyone else who wishes to speak in favor

5  of the debtors' motion?

6      (No verbal response)

7          THE COURT:  Okay.  Let me hear from -- I think I

8  see Mr. Ruggeri.

9          MR. RUGGERI:  Good morning, Your Honor.  James

10  Ruggeri for Hartford.

11          Your Honor, the first point I'd like to address is

12  Ms. Boelter's point that the mediation order is not intended

13  to legislate, how the mediation is going to work.  She said

14  that we're not yet at a stage going through the order line by

15  line, but I would like to call the court's attention to

16  Paragraphs 2 and 4.  And as we read Paragraphs 2 and 4 that's

17  exactly what the order is trying to do which is to legislate

18  and circumscribe, if you will, the role of Tim Gallagher in

19  the mediation.

20          On the one hand it says Mr. Gallagher is to

21  mediate insurance issues which distinguishes him from the

22  other and provides a limited role.  And in Paragraph 4,

23  though, it says that the issues are going to be teed up and

24  the mediators are going to decide for themselves who is going

25  to help on the issues and how.  I don't think those are

1  reconcilable.  I think the last sentence of Paragraph 2 needs

2  to be stricken so the mediators do have discretion, as Ms.

3  Boelter said, to mediate as they deem appropriate.

4        The other point, going back to the check on each

5  of the expertise, if you will, the expertise checks and the

6  familiarity checks that Ms. Boelter mentioned seems to me

7  that I've heard just about everyone say with regard to the

8  bankruptcy check, if you will, former Judge Carey universally

9  has been praised as eminently qualified; qualified both in

10 respect to general bankruptcy and qualified in respect of the

11 types of bankruptcy issues that he has wrestled with in his

12 distinguished career.  I don't think that the praise

13 (indiscernible) any of the others to the same degree as

14 former Judge Carey.  It seems to me that he certainly should

15 be a candidate that should be invited to participate on the

16 panel.  We have made the required disclosures with regard to

17 former Judge Carey.

18        The other candidate who nobody has been able to

19 raise questions about in partiality or for seconds of

20 impartiality is Tim Gallagher.  Tim Gallagher is another

21 person who mad the disclosures and comes to this hearing

22 without anybody raising any questions about Mr. Gallagher's

23 qualifications or impartiality.

24        Your Honor, as the court knows, the same isn't

25 said for the other two candidates sponsored by the debtors

1   and the other committees and that's Eric Green and Paul Finn.

2   Your Honor, it's not personal the objections made by Hartford

3   and are personal for either candidate, but we now know that

4   Mr. Patton and Mr. Green worked and still work together as

5   attorney/client.  We know they've written articles together

6   and we know that, in Mr. Green's words, he and Mr. Patton,

7   the future claim's representative, are social friends.

8           I don't know what social friends means in this

9   context. I don't know if it means if they go to dinner

10  together, I don't know if it means they vacation together, I

11  don't know if they means that one is the godparent of the

12  other's child.  I just don't know, but we submit that the

13  disclosure of social friends is pretty extraordinary when

14  we're talking about a standard and everyone agrees on the

15  standard.  The relevant standard is whether the impartiality

16  might reasonably be questioned and the cases have stressed

17  that that standard and the use of the word "might" to say

18  that if there are questions you should err on the side of

19  caution.

20          You've heard the debtors, again, today, repeat

21  what they've put in their papers, which is that Mr. Patton,

22  as the FCR, represents a narrowly circumscribed constituency.

23  We now learn that it means that the debtors don't believe

24  there are going to be many claimants to fall under the

25  category of the FCR's protection, if you will; currently,

1  claimants under 18 are those with repressed memories.

2          Well, we know one thing, Judge; it can't mean that

3  that circumscribed constituency means that the debtor don't

4  believe the FCR is important and has believed that the FCR is

5  important all along because Mr. Patton was nominated and

6  appointed by the debtors before the bankruptcy was filed and

7  invite and allowed him to participate in the last

8  (indiscernible) mediation, that Hartford was not invited and

9  allowed to participate in.

10          So, he certainly is important to the process as

11 the debtors' actions show, and I don't think, Your Honor,

12 that it means if there aren't many claimants it means that it

13 cuts in favor of his employment.

14          Now, this isn't an asbestos bankruptcy.  This

15 isn't a bankruptcy where the present claimants are fighting

16 with the future claimants and their interests are misaligned.

17 This is a unique bankruptcy involving abuse victims and the

18 interests of the present claimants or perhaps because of the

19 circumscribed constituency, the future claims representative

20 are aligned.

21          And from our perspective, Your Honor, any friend

22 of Mr. Patton is really a friend of the TCC.  And we know

23 from, you know, our experience, we put in there that

24 Mr. Green over the course of his career and his involvement

25 in these other bankruptcies has not proven to be a friend of

1   the insurers.  And I'm not saying that that is qualifying or

2   disqualifying, but as the Court can appreciate, it provides

3   cold comfort to my client as an insurer, that Mr. Green is

4   being appointed as someone who is supposed to be neutral.

5   And, again, it's the perception issue is the potential for

6   impartiality and the standard that we're talking about here

7   gives us concern about Mr. Green.

8           Debtors also say in their papers that Mr. Green

9   wouldn't have accepted the appointment if he didn't think he

10  could be fair.  I don't know about that, but that's really

11  not germane to the issue before the Court, because the Court

12  is the one who has to call the balls and strikes on Mr.

13  Green's apparent impartiality or not -- not Mr. Green to sort

14  of self-police that issue.

15          We've heard from the future claims representative

16  in the papers and, again, today, for his part, the FCR,

17  Mr. Patton merely says that Mr. Green is nationally

18  recognized an expert on these issues.  No one disputes that,

19  Judge.  Mr. Green is an expert and he's nationally recognized

20  as a mediator.  He has a very distinguished career as a

21  mediator and worked on a lot of cases.  But he's also worked

22  on cases of the parties to the bankruptcies and he also has

23  this relationship with Mr. Patton that, frankly, hasn't been

24  developed long enough for, I think, any of us to understand

25  it.

1          And we believe that our concerns are warranted,

2    that it's fair, it's appropriate to question Mr. Green's

3    impartiality and we think his candidacy doesn't meet the

4    standard to allow the Court to appoint him and, frankly,

5    there are other eminently qualified candidates to take that

6    place, Your Honor, and that one candidate, which you've heard

7    about this morning, again, is former judge, Kevin Carey, who

8    could certainly play any role that Mr. Green would play.

9          Your Honor, as to Mr. Finn, our concerns are a

10   little bit different.  We were concerned about his one-page

11   disclosure when he made it because it said nothing about his

12   involvement in last fall's mediation.  You'll recall the

13   papers were filed that told us about last fall's mediation

14   that involved the claims matrix, claims protocol, and the

15   papers that were filed were redacted, too.  I think redact

16   seven characters or eight characters I.

17         I had a guess.  Those eight characters spelled out

18   the name Mr. Finn with a space between the first and the

19   second words and we now know we were right.  Mr. Finn was

20   involved in last fall's mediation.

21         They say no harm, no foul because that mediation

22   involved Chubb and Chubb is an insurer.  Now, Your Honor, I

23   love Mr. Schiavoni like a brother -- maybe not like a

24   brother, maybe like a cousin or an in-law -- but I think what

25   the Court will see is that anyone who knows us, Judge, knows

1  that I don't represent Mr. Schiavoni and he doesn't represent

2  me.  We do get along most of the time, but his being at the

3  mediation does nothing to ameliorate the concern that

4  Hartford has over Mr. Finn's involvement and participation in

5  that mediation.

6        And, Judge, if you look at Mr. Finn's

7  disclosure -- I may be the slowest person in the room because

8  I don't kind of understand -- on the one hand, he says he was

9  involved.  He mediated one claim with Sidley Austin in New

10 York in November 2019.  That one claim is this global

11 resolution that was mediated without Hartford and then

12 Mr. Finn goes on to say and he acknowledges that a matrix was

13 distributed.

14        Judge, a matrix doesn't apply to one claimant.

15 You're not talking about discussing and distributing a matrix

16 if you're mediating one claim.  So, for me there's an

17 inconsistency in Mr. Finn's disclosure or maybe I don't

18 understand how he's referencing Sidley Austin.  Maybe I don't

19 understand many things, but I can't work through the

20 disclosure there to reconcile it.

21        Your Honor, the other issue we raise with regard

22 to Mr. Finn was this role as claims reviewer.  I think the

23 Court appreciates that it's a coveted and potentially very

24 lucrative role.  We asked, we said we wanted disclosure of

25 whether Mr. Finn has asked for the job, angled for the job,

1  talking about the job, and whether he was promised the job.

2         The debtors are very careful in their response.

3  They say he had not been promised that job.  They don't say

4  he has not broached the issue of whether he could serve in

5  that job capacity.  They then say because he hasn't been

6  promised that job, it's rank -- our concern is rank

7  speculation.

8         Well, it's not, Judge; again, they didn't say they

9  haven't had discussions about who's going to be the claims

10  reviewer.  They didn't say Mr. Finn hasn't asked about that

11  role.  And we know from his work in other cases that he has

12  been able to, you know, play the role of mediator on the

13  front side prior to confirmation, on the backside, then play

14  the role of claims reviewer.  That what he did in the

15  Archdiocese of Milwaukee case.

16         And, Judge, the other point I would just put a

17  fine point on is that, again, this is not a small job.  It's

18  not chump change.  We're talking about a job on a claims

19  reviewer on the backside that potentially pays millions of

20  dollars here.  We see Mr. Finn bills out at $1500 an hour.

21  We've heard in this case already that some parties expect as

22  many as 7,000 claimants to file claims.

23         You know, if Mr. Finn spends 15 minutes on each of

24  those claims, you know, we're talking about millions of

25  dollars that he will earn, and that's where the real money is

1  in this case for someone such as Mr. Finn, and that gave us

2  concerns.  If he's had discussions about that or wants that

3  job, we know who makes the nomination, subject to the Court's

4  approval or the claims reviewer, pursuant to the process

5  that's approved by the Court.  It's the claimants.  And if

6  Mr. Finn wants that job, we have concerns about his

7  impartiality and whether he could be fair to the insurers'

8  interests.

9         Judge, for those reasons, we think that the two

10  candidates who are eminently qualified, to borrow debtors'

11  phrase, are former Judge Carey and Tim Gallagher and that

12  they would work together well and I don't think the Court

13  should legislate their particular roles or minimize one over

14  the other's.  I think the last sentence of Paragraph 2 needs

15  to be stricken from the order and they both would serve the

16  interests of all parties fairly, impartially, and well, Your

17  Honor.  Thank you.

18         THE COURT:  Thank you.

19         With respect to Mr. Finn and this idea that he

20  might want a subsequent job, can't we solve that pretty

21  easily by indicating that the mediator job is the mediator

22  job and it's not a springboard to anything else and that the

23  mediators, in fact, shouldn't be or won't be retained on any

24  subsequent engagements.

25         MR. RUGGERI:  Thank you, Your Honor.  I thought

1  that's what we would be able to flush out through our

2  objection, but the (indiscernible) was made that he hasn't

3  been promised a job, but, yes, your inquiry could be made and

4  that assurance could be provided.

5          THE COURT:  Well, I'm not talking about an

6  assurance.  I'm talking about my determination that --

7          MR. RUGGERI:  Understood, Your Honor.

8          THE COURT:  -- the mediators are not going to be

9  subsequently employed in other capacities.

10         You know, as far as -- let me ask you this -- as

11  far as Mr. Finn's participation in what I understand to be a

12  two-day sales mediation, I'm not anticipating this is a two-

13  day mediation, not from everything that people are telling

14  me.  And I understand that Hartford wasn't involved, but as

15  in any mediation, the mediators are going to meet with the

16  group, the mediators are going to meet one-on-one,

17  presumably, with each of the parties to be getting

18  information from them on their perspective views which may or

19  may not be shared with the other parties to the mediation.

20         So, I'm trying to understand more the concern that

21  Mr. Finn received a matrix, which he says he does not recall

22  and he doesn't have -- he didn't keep -- and what do you

23  think that concern is?

24         MR. RUGGERI:  I wasn't at the mediation, so I

25  can't speak from firsthand knowledge, but I think all I've

1  learned about the matrix and the mediation is that it was

2  distributed and at least some of the parties thought that the

3  values were too high and the criteria was too relaxed, if you

4  will.

5          So, I worry that Mr. Finn comes to the table --

6  and I don't know, but it's possible -- that a global offer

7  was made in the context of that mediation and it may or may

8  not have been projected and those discussions could have

9  taken place.  So, the floor, if you will, could be

10 established.

11         And, certainly, what Mr. Finn learned at that

12 mediation, he can't wipe his mind clean of and our objection

13 there is that we didn't have an opportunity to participate

14 and sort of navigate on those issues or dealing with those

15 issues before, you know, certain views may have been formed.

16         So, we think it's more fair to Hartford if someone

17 comes in to the process who hasn't been, I wouldn't say, you

18 know, affected, Your Honor, but certainly influenced, at

19 least, or educated on those issues from the perspective of

20 the parties that didn't include Hartford.

21         So, we're worried about a floor being established,

22 that he can't take away what happened there, but in terms of

23 the specifics of what was said there, I don't know because I

24 wasn't there.  I just know what I've learned from the papers.

25         The other point, Your Honor, is that we have asked

1  for the matrix and the protocol and so far, we have not --

2  they have not been provided to us.  And we've been told as

3  recently as last week that it will be provided to us once the

4  Court enters the protective order, but we don't have it, so I

5  don't even know what it says in terms of the value to the

6  criteria, Judge.

7            THE COURT:  Thank you.

8            Mr. Schiavoni, the brother/cousin/in-law?

9            MR. SCHIAVONI:  Your Honor, I noted how slickly my

10  brother transitioned from calling me a brother to an in-law,

11  and knowing my own family, I sort of wondered about that and

12  I'm going to follow-up with Jim about that later.

13            But I'd like to just focus on something a little

14  more basic than what Mr. Ruggeri covered.  Your Honor is very

15  familiar with the In re Congoleum decision by the Circuit and

16  there's two aspects of that decision or I guess it's really

17  one aspect that I would like to just suggest gives some

18  guidance about how to approach this kind of motion in this

19  case.

20            The Court, a panel, a unanimous panel and that

21  Court found that the insurers had a fundamental interest in

22  the integrity of the process.  The Court really emphasized

23  the process and the decision.  A good deal of the oral

24  argument, the questions from the panel focused on that

25  integrity of the process.

1           And then the Court in its decision on the last

2   page talks about how in a case where a mass-tort case where

3   insurance is at issue and debtor wants a release,

4   essentially, at all costs, it's particularly important,

5   because of how the incentives line up and how many of the

6   lawyers involved can be incentivized by goals that are

7   different from a normal bankruptcy, where here we have

8   contingencies driving a significant number of the tort

9   claimant lawyers, that it's important that the Court

10  exercises particular vigilance on the process.

11          And let's be clear like what is really happening

12  with this order.  Changing it from voluntary to mandatory is

13  from our perspective, Chubb's perspective, it's really

14  illusory.  It's not what's at issue here.

15          Because we've seen what's happened in the

16  mediation in Imerys and these other cases, which is

17  completely excluded.  You know, in Imerys, there's sort of

18  like a, we're just sort of put in a different room on a

19  different floor by ourselves and not -- so they can say we

20  participated, but there's no participation.

21          Here, the order purports to basically put in place

22  confidentiality, mediation confidentiality on, in essence,

23  the entire plan formation process and then puts the plan

24  formation process in the hands of a gentleman who may be very

25  knowledgeable about bankruptcies, but who represents tort

1  claimants, the future claimants in four to seven different

2  cases.  He represents them there now.  He aggressively

3  advocates a particular set of positions, has done that over

4  and over again, and has, as his lawyer in those cases, the

5  FCR and his counsel in this case.

6          Here, we think transparency is absolutely

7  fundamental to this process and important to it, but I just

8  want to give you just, like, one very basic concern that

9  jumps out immediately.  You just heard Ms. Boelter say that

10  in the face of the tort claimants saying they don't want to

11  negotiate the claims until the bar date -- and by the way,

12  it's hard to imagine like how you could really have a

13  settlement without negotiating the claims -- but they want to

14  focus on the "high-adventure facilities."

15          And just a very brief moment on what those are is,

16  those are, the Boy Scouts developed these sort of large

17  properties into kind of Boy Scouts amusement parks.  They

18  physically, like, spent money on all kinds of amusements at

19  the facilities.  They spent hundreds of millions of dollars

20  on this and lenders, very-big lenders spent a lot of money on

21  this.

22          The main lender is JPMorgan.  There's lots of

23  bonds involved in that.  The plan that was proposed seems to

24  suggest that JPMorgan should be completely unimpaired as part

25  of the bankruptcy.

1          What they want to negotiate first is the carve-out

2   of all of these properties where JPMorgan is involved as the

3   lender to, you know, any participation in the bankruptcy.

4          Well, in Ms. Boelter's declaration that she

5   submitted as part of the disclosures for the retention,

6   JPMorgan is identified as a current client of the firm.

7   Mr. Cohen (phonetic), the man who signed the retention

8   agreement for the Boy Scouts, is JPMorgan's counsel.  He --

9   this is perhaps Sidley Austin's biggest client today.  They

10  represent JPMorgan in dozens and dozens of bond offerings.

11         So, submitting the very first issue to a

12  completely confidential, completely mediation-disclosed,

13  covered type of proceeding removes all checks and balances

14  about how that will go forward and it puts it in the hands of

15  someone who doesn't have the experience as a judicial

16  officer, but is interested as an interested party, has an

17  interest in sort of like in outcomes of these cases.

18         We would suggest that this is not the way to go,

19  that this is just going to cause problems down the line.

20  It's going to leave the bankruptcy subject to taint and

21  challenge.

22         Former Judge Carey, as a judge, wrote a decision

23  in Tribune that really talks about the interaction between

24  this extensive mediation confidentiality and the plan process

25  and what discovery is proper and whatnot.  It's an issue that

1  can cause chaos.

2          We don't think you need to have a mediator

3  covering the entire plan formation process.  There's no

4  reason they can't discuss, negotiate these kinds of issues

5  without that kind of cloak.  But if Your Honor is going to

6  pursue that cloak, put it in the hands of someone trusted

7  with some integrity.

8          What we saw in Blitz, by the way, was even after a

9  deal was struck with the committee, there were groups of tort

10  claimants who objected to the deal, challenged it.  Having

11  former -- at this point, I think it was Judge Gross served as

12  the mediator, that helped get that case done and it sort of

13  quashed some of the challenges about what had happened.

14          Leaving Mr. Green and Mr. Finn in there, it's just

15  an invitation for issues down the line.

16          The notion that there's been some sort of

17  extensive negotiation and that these fellows are the result

18  of extensive compromise, there's no record to support that at

19  all.  I haven't seen anything to suggest that anyone but

20  Mr. Finn was suggested by the committee or ever considered,

21  nor have I seen anything, there's nothing in the record that

22  suggests that anybody but Mr. Green was suggested and

23  proposed.

24          The other constituencies here, it's sort of an

25  echo chamber among them about what they want to do, but

1  they're aligned in the same pursuit of getting this done.

2  The creditors want the lenders to be unimpaired and the tort

3  claimants want Mr. Finn in there to press their claims on the

4  tort claims.

5          There's no reason right now for the Court to have

6  to address whether Mr. Finn is necessary or not necessary.

7  The tort claimants have made it 100 percent clear in their

8  filing on this motion and on the motion to oppose the lift

9  stay that other insurers have filed with regard to the

10  current claims, that they're not going to negotiate the

11  claims until the bar date.  And it's hard to imagine how you

12  can unless there's some disclosure from the tort claimants

13  about the claims that they have.

14          So, there's really nothing for Mr. Finn to do

15  right now.  Certainly, nothing has been suggested that he

16  would do right now if the tort claimants aren't prepared to

17  disclose who their clients are, so I would suggest that that

18  could be put aside, the issue of whether Mr. Finn or someone

19  like Ken Feinberg, who, if he is to mediations what Babe Ruth

20  was to baseball, that he is as well-known and -- we attached

21  an article from *The Wall Street Journal* actually titled

22  "Mr. Fairness."  He's someone who has mediated dozens of --

23  he's running the voluntary mediation program for a number of

24  the archdiocese.  He's, I think, mediated upwards of $400

25  million worth of those molestation cases, so he's hardly

1  someone with no expertise.  But he doesn't have any

2  connections to any of the parties, including to my client

3  here.  He would be another candidate.

4         But you don't need to consider Mr. Finn's role now

5  because there is nothing for him to do.  If there's something

6  for someone to do, Carey is the one to put in because it

7  would give some sense of confidence about what actually will

8  happen behind closed doors.

9         Now, last, I just would like to briefly address on

10  the proposed forms of order.  Ms. Boelter seemed to suggest

11  that she doesn't really have an issue with the things that we

12  suggested, so we take that up.  She said she would agree to

13  some basic insurance-neutrality clause.  That's terrific.

14         All we're really looking for is that, as the Court

15  knows, we think we have in our contracts, a duty of

16  cooperation that we need to be included with the debtors in

17  the negotiations and just because there's a mediation, I

18  don't think anybody is blessing the notion that they can

19  exclude us and do deals sort of, in essence, without us, and

20  maybe just ask for some basic language along those lines, but

21  it sounds like Ms. Boelter is willing to agree to that.  We

22  were happy to propose that with her with the form of order.

23         She also indicated she's willing to give us the

24  documents that were shared prepetition.  And I don't see, if

25  that's the case, why a simple line saying that shouldn't make

1  that clear.

2          So, with that, Your Honor, I'd suggest that right

3  now there really isn't a basis to enter an order as

4  comprehensive as has been suggested.  If there's no reason

5  the parties can't negotiate, there's been no suggestion why

6  they can't negotiate without the cloak of total

7  confidentiality, but if that's the route you're going to go,

8  we'd ask that Judge Carey be put in and we'd defer for the

9  moment whether Mr. Finn or someone else should handle the

10 tort claims.  Thank you.

11          THE COURT:  Thank you.

12          MR. STANG:  Your Honor this, is Mister -- I'm

13 sorry.

14          THE COURT:  I believe I had a joinder from another

15 insurance company, but I don't remember counsel.

16          MR. WINSBERG:  You did, Your Honor.  Harris

17 Winsberg from Troutman Sanders for the Allianz insurers.

18          THE COURT:  Yes.

19          MR. WINSBERG:  And just -- and not to repeat the

20 comments of, but we echo and support the arguments that were

21 made by Hartford and Chubb.  We believe, you know,

22 impartiality of the -- from the mediators is critical here.

23 Nobody can dispute that Judge Carey is impartial and would do

24 an excellent job here leading the mediation and would avoid

25 the appearance of a lack of neutrality by Mr. Green who has

1   an attorney-client relationship with the FCR and his law firm

2   or Mr. Finn who participated and appears to be in a pre-

3   bankruptcy mediation.

4           And with those comments, Your Honor, we would just

5   ask Your Honor if you're going to enter a mediation, and we

6   certainly support mediation, that Judge Carey be the lead

7   mediator.  Thank you, Your Honor.

8           THE COURT:  Thank you.

9           Anyone else before I go back to Ms. Boelter?

10          MS. GUMMOW:  Yes, Your Honor.  Susan Gummow on

11  behalf of the AIG companies.

12          We filed a joinder to Hartford's original

13  objection and would just join the arguments made.  And I

14  would note that AIG was not consulted at all with regard to

15  the selection of mediators, so we believe that these two

16  mediators, Mr. Finn and Mr. Green, cannot act as neutrals

17  here.  Thank you.

18          MR. MEEHAN:  Good morning, Your Honor.  This is

19  Taylor Meehan for Agricultural Insurance Company.

20          And we would reiterate our joinder in Hartford's

21  supplemental objection for the purpose of supporting their

22  objections to the appointment of Professor Green and

23  Mr. Finn, as well.

24          THE COURT:  Thank you.

25          Anyone else?

1            Ms. Boelter?

2            MS. BOELTER:  Thank you, Your Honor.  Jessica --

3            MR. STANG:  Your Honor this, is Mr. Stang --

4            MS. BOELTER:  -- Boelter, Sidley Austin, for the

5    debtors.  I'll be brief.

6            THE COURT:  Just a second, Ms. Boelter.  I think I

7    did hear somebody else.

8            MR. STANG:  Your Honor this, is Mr. Stang.

9            I -- it's up to Ms. Boelter and to you as to

10   whether you want her to do that cleanup, but I was counsel to

11   the committee in Milwaukee, so I can speak to that.  I was at

12   the meetings in November and subject to the mediation

13   privilege, I can speak to that.

14           Maybe that opens me up to Mr. Schiavoni's demand

15   that I be deposed at some point, but if you would like some

16   information about those two things, I'd be happy to share it

17   now or after Ms. Boelter.

18           THE COURT:  You can go ahead.

19           MR. STANG:  All right.  Thank you, Ms. Boelter.  I

20   appreciate you letting me cut in.

21           Your Honor, I was counsel to the committee in the

22   Archdiocese of Milwaukee case.  Mr. Finn was our third

23   mediator.  The first two mediators, one was a retired

24   bankruptcy judge, Chief Judge of the Northern District of

25   California, and the other was -- I don't remember her name --

1  was a bankruptcy judge in Minneapolis.

2          Mr. Finn got it done.  That case was very, very

3  tough.  People talk about how long these cases can last.

4  Milwaukee took the longest.  It was probably the first or

5  second most litigious one.  Mr. Finn got it done.

6          That (indiscernible) involved a, except, I think,

7  for the future claim piece, a resolution of all the insurance

8  policies by virtue of buy-backs and basically cashing out the

9  policies.  So, the carriers didn't have a continued interest

10  in what we'd done with the money.

11          We asked Mr. Finn to be the allocator.  He didn't

12  come to us and ask us for the job.  We asked him to do it.

13  And it seemed appropriate -- and I'd also pointed out in that

14  case that one attorney, one law firm represented probably 95

15  percent of all the claimants.  And so, that lawyer was okay

16  with it, the committee was okay with it.  Mr. Finn did not

17  seek out the job.

18          As to the meeting in November, I'd like to call it

19  a meeting, as opposed to a mediation, and I signed a

20  confidentiality agreement, but I can -- I think I can tell

21  you what didn't happen.  What didn't happen was any offer

22  from the attorneys who were kind of an ad hoc tort committee,

23  I guess, to anyone.  We never asked Mr. Finn to convey an

24  offer.  I don't think we ever got a monetary offer.

25          The attorneys who were at that meeting today

1  represent probably well over half of the claims that I know

2  about, and so it was a meeting.  It was, frankly, a meeting

3  amongst ourselves.  We never -- I do not believe that we ever

4  had a meeting with any principal of the Boy Scouts.  I think

5  Mr. Andolina came into the room once or twice, Ms. Boelter

6  may have come in, but we've never had a substantive exchange

7  with any person who's a Boy Scouts principal.

8           I don't think the attorneys who were attending on

9  behalf of tort claimants, other than myself and

10  (indiscernible), had any substantive meeting with Mr. Patton.

11  Honestly, when someone told me a few weeks ago that there was

12  a matrix distributed, I had no recollection of it and it was

13  only when it was shown to me that I went, Oh, yeah, we got

14  that.

15           So, calling it a mediation suggests there's

16  negotiation.  There was none.  So, I just -- a lot has been

17  made about what happened there and a lot of speculation about

18  what happened there.  I can't tell you what didn't happen

19  there.

20           As far as Mr. Schiavoni's comments are concerned,

21  I hope it was in the excitement of his advocacy where he said

22  we need someone with integrity.  Too many courts have

23  appointed Mr. Green, too many people in courts have appointed

24  Mr. Finn to let the suggestion stand that they have no

25  integrity go unchallenged.

1          Are there things to mediate now?  Yes.

2          Can we reach a global resolution of all issues

3    (indiscernible) a bar date?  I don't think so.

4          The protective order, itself, anticipates that

5    there will be a mediation about the (indiscernible) claims.

6    There's something that we can do.

7          And it's not just a high-adventure basis.  We've

8    got local councils who, as soon as the protective order is

9    signed, we're going to get let's of information about their

10   assets.  And you just have to look at their IRS 990 forms to

11   know that they're going to claim restrictive assets, as well,

12   and their online financial statements.  Not all of them have

13   them, but a lot do.  There's lots to talk about.

14         And the notion that we have to wait until

15   November 17th to have a conversation with folks that does

16   require the assistance of a mediator is, frankly, again, just

17   an overstatement and hyperbole.

18         So, I'm not going to share my knowledge of

19   Milwaukee with Your Honor.  I can tell you what didn't happen

20   at the meeting in November and I do appreciate Ms. Boelter

21   letting me go first.

22         And, Your Honor, thanks to you, as well.

23         THE COURT:  Thank you.

24         Ms. Boelter?

25         MS. BOELTER:  Thank you, Your Honor.  Jessica

1  Boelter, Sidley Austin, for the debtors.

2          Like Mr. Stang, I'm happy to answer any of the

3  questions that may have come up in the arguments by the

4  insurers' counsel that the Court may have; although, I think

5  probably the best way to close out this argument is actually

6  with a statement that Mr. Ruggeri made and that is:

7          "The Court is the one that has to call the balls

8  and strikes."

9          We absolutely agree with that, and that's you.

10  This mediation is not mandatory and it's not binding.  We are

11  have cognizant of the fact that if we are so lucky to have a

12  mediation result in a settlement with some or all parties, we

13  are going to have to come back before this Court to have that

14  settlement approved and this Court will have to apply the

15  applicable standards, whether we're proceeding under 9019 of

16  the Bankruptcy Code or 1129.  We will need to satisfy the

17  good faith standard and we will need to demonstrate that we

18  have satisfied that standard.

19          So, no, we are not trying to cloak our entire plan

20  process in confidentiality; rather, we are trying to reach an

21  efficient settlement of issues that we know are going to be

22  disputed.  But at the end of the day, it's going to be this

23  Court that decides whether that settlement should be approved

24  or not approved and we will have to bring our case to this

25  Court.

1        So, I think when it boils down to the arguments

2    that you've heard from the objecting parties, that's our

3    response: you call the balls and strikes, not the non-

4    binding, non-mandatory mediator that we are asking for the

5    Court to appoint today.

6        So, with that, Your Honor, we would ask the Court

7    to grant the order to appoint the mediator.  As Mr. Schiavoni

8    took note of and I mentioned on the record, the order that's

9    currently before the Court does need a couple of

10   modifications to take into account concessions that I've made

11   on the record today, but with that, Your Honor, unless you

12   have any other questions, we would just respectfully ask that

13   you grant that order.

14       THE COURT:  Thank you.

15       No, I don't have any more questions.  I spent some

16   time with this ahead of time with the disclosures, with the

17   cases that the parties have cited to me, and I am prepared to

18   rule.

19       And I saw some of the concessions that the debtors

20   made and changes made to this order.  I'm not sure that they

21   change my mind on anything in this sense.  Even though the

22   mediation is now voluntary, although I wasn't sure -- well,

23   maybe it's -- okay, I wasn't sure about Paragraph 8, but

24   maybe it's voluntary.  I think the insurers need to be there.

25   Calling it voluntary doesn't really solve that problem.

1            And I am going to, at the request of most of the

2   parties -- not the insurers -- appoint a three-panel -- a

3   three-person mediation panel, but I am not going to define

4   their roles, as requested in the order, nor appoint a chief

5   mediator, if you will.  I really do not know exactly how it's

6   going to work with a three-person panel, but I hear the

7   parties -- hear the debtors' and the committees' comments

8   that expertise is important and I do agree that expertise is

9   important.  This is a complicated bankruptcy case.

10           As to when, I'm going to appoint it now.  I think

11  it will take time for the three mediators to speak amongst

12  themselves, determine how they want to proceed with the

13  multiple parties who either are directed or will be in front

14  of them, and to give some greater thought as to who needs to

15  be in front of them.  And I'm not going to hamper them by

16  making them -- by shortcutting, in any way, their time to

17  consider that.

18           And if, in fact, some portions of the disputes can

19  go forward now, such as the local council issue and what are

20  the Boy Scouts' assets?  Well, that's fine.  And if other

21  parts have to wait, they may have to wait.

22           And the panel is going to be former Judge Carey,

23  Mr. Finn, and Mr. Gallagher.  And I am not going to appoint

24  Mr. Green, as requested, and that's not because of any lack

25  of expertise, obviously, or any lack of integrity -- he has

1  both -- but having read the cases, it seems clear to me that

2  his relationship with Mr. Patton would lead a reasonable

3  person to be concerned about his mediating this case.

4          This is an objective standard.  It has nothing to

5  do with subjectively whether Mr. Green believes that he could

6  mediate in a neutral fashion.  What we're looking for is true

7  neutrality and here there are multiple connections, past and

8  current, in which Mr. Patton and Mr. Green have business and

9  social connections.

10          The business connection is a connection of trust

11  with Mr. Green hiring Mr. Patton as an attorney repeatedly,

12  because, obviously, he values Mr. Patton's opinion and he

13  trusts his advice.  And they are also social friends.  I was

14  struck by the fact that that was disclosed and I think it

15  means something more than acquaintance and it means something

16  more than the friendship that many members of the Bar have

17  with each other as being in the same circles.

18          And when you look at Section 455 of Title 28, the

19  statute that deals with recusal of judges, which our Local

20  Rule refers to, it says that judges shall disqualify

21  themselves in any proceeding in which their impartiality

22  might reasonably be questioned; in other words, a judge must

23  recuse himself if there's a showing of an appearance of bias

24  sufficient to permit the average citizen reasonably to

25  question a judge's impartiality.

1          And I recognize the tension.  I recognize that

2   that statute can be used strategically, but nonetheless, I

3   think the connections are too close here and I think former

4   Judge Carey brings expertise that Mr. Green would have.  I

5   would suggest he also brings expertise that Mr. Green may or

6   may not have with respect to, for example, the disputes over

7   assets of the estate and with the local councils.  And as

8   everyone noted, former Judge Carey is eminently qualified and

9   no one has suggested he holds a bias or is not neutral in

10  this case.

11          As for Mr. Finn, he was -- I understand his

12  involvement in the two-day mediation or, as Mr. Stang called

13  it, a meeting.  The length of that mediation could suggest to

14  me that it really wasn't a mediation that got into

15  significant depth.  That he was there attending as a neutral.

16          And I have no reason to -- and his declaration

17  said he doesn't have the matrix, he doesn't remember the

18  matrix.  I don't see anything that suggests to me that he has

19  a formed view already and I will note that -- so, I don't

20  know the extent to which all parties at the mediation.

21          Chubb was there.  I recognize they're not

22  Hartford.  I recognize they're not AIG or Agricultural

23  Insurance Company or Allianz, but nonetheless, there was an

24  insurance voice present at the meeting and, again, Mr. Finn

25  was there as a neutral and I think he can continue to work as

1   a neutral.

2             So, I will take a look at a form of order that has

3   the revisions that Ms. Boelter and Mr. Schiavoni suggested,

4   but the order has to also be changed to reflect simply the

5   appointment of these three mediators.  And I'm not going to

6   try to micromanage any piece of this or suggest to those

7   mediators how they should proceed.

8             MS. BOELTER:  Thank you, Your Honor.  Jessica

9   Boelter, Sidley Austin, for the debtors.

10            We will modify the order in accordance with the

11  Court's ruling, as you've described, as well as the exchange

12  that I had with Mr. Schiavoni regarding issues that are

13  important to the insurers.  We will, of course, circulate

14  that form of order to all of the parties and endeavor to get

15  that to the Court within the next, you know, hopefully no

16  more than one business day.

17            THE COURT:  Right.  I don't anticipate that there

18  should be a lot of back-and-forth on this.  I don't view this

19  as an order that deals with document disputes.  I don't think

20  this deals with insurance issues.

21            But if there's agreed-upon language to solve those

22  minor, I would say in this context, concern, meaning minor

23  relative to this is a mediation order which appoints

24  mediators and doesn't attempt to deal with anything else,

25  then I will sign it when I get it.

1          MS. BOELTER:  Thank you, Your Honor.

2          THE COURT:  Okay.  Is there anything else for

3    today?

4          MR. ABBOTT:  Your Honor, Derek Abbott for the

5    debtors.

6          I don't believe so.  We appreciate the Court's

7    time and we'll get that to you as quickly as we can.

8          THE COURT:  Thank you.

9          We're adjourned.

10          COUNSEL:  Thank you, Your Honor.

11       (Proceedings concluded at 11:36 a.m.)

12

13                    CERTIFICATE

14

15      We, MARY ZAJACZKOWSKI and WILLIAM GARLING, certify that

16   the foregoing is a correct transcript from the electronic

17   sound recording of the proceedings in the above-entitled

18   matter.

19
     /s/Mary Zajaczkowski              June 9, 2020
20   Mary Zajaczkowski, CET**D-531

21
     /s/William J. Garling            June 9, 2020
22   William J. Garling, CE/T 543

23

24

25

# EXHIBIT 14

**brown**rudnick



# David J. Molton

New York

P: +1.212.209.4822

F: +1.212.938.2822

dmolton@brownrudnick.com

## Litigation & Arbitration
## Biography

David Molton is a Partner in the Firm's Litigation & Arbitration and Bankruptcy & Corporate Restructuring Practice Groups and is the Chair of Cross-Border, Mass Tort, and Restructuring Litigation.

David focuses his practice in complex financial, commercial and mass tort litigation matters in federal, state and bankruptcy courts in the United States, and he represents foreign liquidators, official committees of creditors, unofficial ad hoc committees of creditors and interested parties in financial fraud and mass tort related litigations and bankruptcies in the United States and in foreign jurisdictions. In the 2015 edition of *Benchmark Litigation*, David is commended as "a true trial lawyer" and "a strategic thinker who plays the long game and doesn't get bogged down in the short-game issues."

David is a Fellow of INSOL International, a world-wide federation of national associations for lawyers, accountants and other professionals who specialize in financial fraud, asset tracing and recovery and insolvency in domestic and cross-border cases.

After graduating from New York University School of Law, David clerked for the Honorable J. Edward Lumbard of the United States Court of Appeals for the Second Circuit. Earlier in his career, David served as an Assistant District Attorney in and for the Office of the District Attorney for New York County, where he was assigned to the Special Narcotics Prosecutor for the City of New York under the Honorable Sterling Johnson, Jr. As a prosecutor, David supervised joint federal/state law enforcement task force teams and investigations for the New York Drug Enforcement Task Force and the Department of Justice's Organized Crime Drug Enforcement Task Force, and he prosecuted

cases involving (i) racketeering enterprises and organized crime narcotics conspiracies and distribution networks, and (ii) efforts to locate, seize and effectuate the forfeiture of proceeds and assets connected to those criminal activities both in the United States and abroad.

*No aspect of this advertisement has been approved by the Supreme Court of New Jersey. See the selection methodologies for Chambers, The Legal 500, Benchmark Litigation, Lawdragon, Who's Who Legal, Super Lawyers, Martindale-Hubbell, Client Choice.*

## Awards



## Representation

*David's more recent engagements include:*

○ Representing the Governmental Plaintiffs Ad Hoc Committee in the bankruptcy cases of Mallinckrodt plc, *In re Mallinckrodt PLC*, Case No. 20-12422, proceeding before Judge John T. Dorsey in the Bankruptcy Court for the District of Delaware. The Ad Hoc Committee is comprised of (i) 8 States, through their Attorneys General; and (ii) the Plaintiffs' Executive Committee in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio) (the "PEC" and the "Opioid MDL"). The PEC is representative of the interests of thousands of cities, counties, American Indian Tribes, hospitals, third-party payors, and other private payors. The Ad Hoc Committee negotiated, on behalf of its members and 42 other U.S. States and Territories, a Restructuring Support Agreement with Mallinckrodt which forms the basis for global resolution of opioid related litigation claims against Mallinckrodt, which was the largest producer of opioids in the United States of America.

- ○ Representing Justice John K. Trotter, in his capacity as Trustee of the PG&E Fire Victim Trust, and Cathy Yanni, in her capacity as Claims Administrator of the PG&E Fire Victim Trust. From 2017 to 2018, catastrophic wildfires destroyed hundreds of thousands of acres of land in Northern California, killing, injuring and otherwise impacting the lives of tens of thousands of individuals, families and businesses, and destroying residential and commercial properties. Subsequent investigations found that PG&E equipment had started most of the original fires, exacerbated by strong winds in the area. In January 2019, PG&E declared Chapter 11 bankruptcy as a result of the financial challenges caused by its liability in these wildfires. David acts as counsel for the post post-confirmation Trust, Trustee and Claims Administrator formed and appointed to resolve the claims of Fire Victims and compensate them out of approximately $ 13.5B of consideration (inclusive of, *inter alia*, cash, stock, and tax benefits). The firm was brought in by the Trustee to assist the bankruptcy parties in interest in forming the Trust, and developing the foundational documents effectuating the Trust. David is charged with protecting the interests of the putative Trustee and Claims administrator as well as ensuring that the Trust is established in a manner that is in the best interests of the Fire Victims. David advises the Trustee, Claims Administrator and Trust on all matters of administration of the Trust, including claims resolution and distribution.

- ○ Representing the Coalition of Abused Scouts for Justice in the bankruptcy cases of the Boy Scouts of America, *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343, proceeding before Judge Laurie Silverstein in the Bankruptcy Court for the District of Delaware. The Coalition is comprised of many thousands of survivors of sexual abuse in the Boy Scouts. The Coalition has successfully defended the rights of the survivors against violations of the First Amendment and the Bankruptcy Rules, has been formally made a mediation party to negotiate a plan settlement and is negotiating a plan structure for global resolution of sexual abuse claims against the Boy Scouts, their local councils and other third parties, and their insurers.

- ○ Representing the Ad Hoc Committee of consenting Governmental & Other Contingent Litigation Claimants in the bankruptcy cases of Purdue Pharmaceuticals, *In re Purdue Pharma, L.P.*, proceeding before Judge Robert Drain in the Bankruptcy Court for the Southern District of New York (the "Ad Hoc Committee"). The Ad Hoc Group is comprised of: (i) 10 States, through their Attorneys General; (ii) 6 political subdivisions of States; (iii) one federally recognized American Indian Tribe; and the Plaintiffs' Executive Committee in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio) (the "PEC" and the "Opioid MDL"). The PEC is representative of the interests of thousands of cities, counties, American Indian Tribes, hospitals, third-party payors, and other private payors. The Ad Hoc Committee negotiated the settlement framework with Purdue and its shareholders (the Sacklers) that is the proposed basis for a consensual plan in the bankruptcy.

- Representing the Plaintiffs' Executive Committee in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, Case No. 17-md-02804, MDL No. 2804 (N.D. Ohio) (the "PEC" and the "Opioid MDL") in the bankruptcy cases of Insys Therapeutics, *In re Insys Therapeutics, Inc.*, before Judge Kevin Gross in the Bankruptcy Court for the District of Delaware. Insys manufactured a sublingual fentanyl spray and was subject to approximately 1,000 lawsuits brought by among others, cities, counties and American Indian Tribes in the Opioid MDL. As counsel to the PEC, David negotiated, alongside representatives from certain States' Attorneys Generals' offices, a consensual Settlement Plan for the benefit of all plaintiffs in the Opioid MDL, including cities, counties, and American Indian Tribes.

- Representing Professor Eric D. Green as court-appointed Special Master of the $975 Million DOJ Takata Restitution Fund to provide compensation to designated claimants, including individuals injured by the malfunction of a Takata airbag inflator. The DOJ Takata Restitution Fund was created pursuant to a criminal plea agreement between the U.S. Department of Justice and Takata Corporation to resolve felony charges brought by the government against Takata in connection with Takata's design, manufacture and sale to the public of defective Takata airbag inflators. As lead counsel to the Special Master, David has been integrally involved in, *inter alia*, (i) developing the Special Master's methodologies and procedures for distributing the DOJ Takata Restitution Fund to eligible claimants, and (ii) liaising and seeking to reach consensus with all stakeholders, including Plaintiffs' counsel in the Takata Airbag MDL, the Official Committee of Tort Claimants, and Future Claims Representative appointed in Takata's United States subsidiary's bankruptcy proceedings in the United States, with respect to the Special Master's distribution methodologies and procedures.

- Representing Professor Green in his capacity as the Trustee of the Takata Airbag Tort Compensation Trust Fund (the "Trust"), established pursuant to the Chapter 11 bankruptcy of TK Holdings Inc., Takata's U.S. affiliate. The Trust, which holds approximately $140 million, was created in the bankruptcy to provide additional compensation to the individuals who suffered personal injury or wrongful death as a result of a Takata airbag inflator malfunction. The Trustee oversees the management of the Trust and distribution of these funds to personal injury and wrongful death victims. As lead counsel, David led the efforts to negotiate the Chapter 11 Plan and related bankruptcy and Trust documents. David has also been integrally involved in developing the procedures for distributing funds to Trust claimants, reconciling the procedures and distribution criteria for compensating claimants of the DOJ Takata Restitution Fund and the Trust, and working with numerous other parties, including automakers and personal injury plaintiffs, to reach a consensual process to distribute these funds to victims. David has also been named as the successor trustee of the Trust.

- Representing Professor Green in his capacity as OEM Claims Administrator, a role created pursuant to TK Holdings Inc.'s Chapter 11 Plan, to distribute funds to more than fifty automakers who have general unsecured claims in the bankruptcy. As lead counsel, David is negotiating the distribution procedures to these automakers, and drafting the documents to finalize such procedures.

- Representing Lead Counsel in the GM Ignition Switch Defect MDL Litigation (S.D.N.Y) as Plaintiffs' Designated Counsel in the Bankruptcy Court (Bankr. S.D.N.Y.) opposing GM's motion to enjoin plaintiffs' economic injury claims based on the injunction contained in the bankruptcy Sale Order by which the assets of Old GM were transferred to New GM in the GM bankruptcy in 2009. As Plaintiff's Designated Counsel, David and his colleagues helped obtain a seminal Second Circuit decision defeating New GM's efforts to use the GM Sale Order injunction to shield New GM from liability for billions of dollars of economic loss and personal injury damages to plaintiffs. *In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016), *denied*, 137 S. Ct. 1813 (2017).

- Representing the American Association for Justice and the New Jersey Association for Justice in submitting an Amici Curiae brief to the US Supreme Court in support of the Petition for a Writ of Certiorari, filed by Dean Erwin Chemerinsky of the University of California Irvine Law School, on behalf of injured diacetyl plaintiffs in connection with the Third Circuit's decision in *Diacetyl Plaintiffs v.Aaroma Holdings (In re Emoral), LLC*, 740 F.3d 845 (3d Cir. 2014), where the Third Circuit held that the injured plaintiffs' claims against a successor to the debtor were property of the estate which could be settled by the bankruptcy trustee.

- Representing the Japanese Bankruptcy Trustee of the failed (as a result of theft and fraud) Mt. Gox global Bitcoin exchange, which had been the world's largest exchange for this digital currency, in connection with the company's Chapter 15 case in the Bankruptcy Court in Texas and related litigation in the United States. David and his team obtained Chapter 15 recognition of the Japanese bankruptcy proceeding as a foreign main proceeding, thereby staying all U.S. litigation against Mt. Gox for the benefit of its foreign insolvency proceeding.

- Acting as lead U.S. counsel to the BVI Liquidator of the Fairfield Funds (the largest feeder funds into the Madoff Ponzi scheme) in the Funds' Chapter 15 case in Bankruptcy Court in New York and related litigation in the United States and elsewhere in the world. Among the achievements achieved by David and his team to date are (i) obtaining recognition from the Bankruptcy Court of the BVI liquidation proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code and obtaining affirmance of that judgment in a seminal and first impression decision of the United States Court of Appeals for the Second Circuit (*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127 (2d Cir. 2013)), and (ii) obtaining another seminal and first impression Second Circuit decision making Bankruptcy Code Section 363 applicable to the foreign liquidator's sale of the Funds' claim against the Madoff SIPA estate, thereby giving the foreign liquidator an opportunity to seek to undo that deal for the benefit of the Funds' creditors and stakeholders based on changed circumstances (*Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239 (2d Cir. 2014), *liquidator's position upheld on remand*, 539 B.R. 658 (Bankr. S.D.N.Y. 2015) (SMB), *aff'd*, 690 Fed. Appx. 761 (2d Cir.), *denied*, 138 S. Ct. 285 (2017)). David and his team, together with co-counsel, are also prosecuting over 300 clawback actions commenced by the foreign liquidator and the Funds against certain of the Funds' redeemers, many of which are the world's largest foreign financial institutions. The clawback actions, which are presently pending in the Bankruptcy Court in New York, seek the return to the Funds of over $6 billion in overpaid redemptions stemming from the Madoff fraud.

- Representing the Official Committee of Unsecured Creditors (principally tort victims) in the New England Compounding Center Chapter 11 case in the Bankruptcy Court in Boston and the related MDL proceeding in the District Court in Boston, the objective of which was the resolution of injury and wrongful death cases resulting from the meningitis outbreak caused by the debtor and its operations in 2012. Despite the absence of any dispositive authority on the issue from the United States Court of Appeals for the First Circuit, David, his team and the Creditors' Committee developed, obtained plaintiff support for and confirmed a bankruptcy plan that granted non-debtor releases to allegedly culpable non-debtors who consensually contributed significant monies to a victims' fund, remarkably achieving (in what was widely perceived to be a no asset case) settlements exceeding $200 million for distribution through the bankruptcy plan to injured victims of the outbreak.

- Representing the External Administrator of Awal Bank, BSC (a Bahraini bank implicated in the Al Gosaibi Group/Saad Group global fraud) in the bank's Chapter 15 case in Bankruptcy Court in New York and related litigation in the United States. Awal Bank was destroyed by a major fraud in the Mideast, and, in a matter of first impression, David and his team successfully used the Chapter 15 case to assert Bankruptcy Code statutory avoidance claims against a global bank to recover assets taken from the Awal Bank overseas and transferred into the United States. Recently, David successfully obtained Chapter 15 recognition in the Bankruptcy Court in New York for seven, separate Awal Bank subsidiaries in conjunction with the upcoming trial in the Grand Court of the Cayman Islands of the principal Al Gosaibi Group/Saad Group case.

- Representing the Cayman Island liquidator of the SPhinX Funds (destroyed by the Refco fraud) in the Funds' Chapter 15 case and related litigation in the United States. David and his team prosecuted the Funds' fraud-based claims against aiders and abettors of the Refco fraud (including globally recognized auditors, law firms and service providers) in the Refco MDL presided over by Judge Rakoff in the Southern District of New York. David was appointed by Judge Rakoff as Plaintiffs' Liaison Counsel for the Refco MDL.

- Representing the Central Bank of Bahrain in connection with the Chapter 11 case of Arcapita Bank, BSC (a Bahraini financial institution) in Bankruptcy Court in New York.

- Representing (i) the Ad Hoc Committee of Tort Claimants in connection with the Muscletech CCAA proceeding in Canada (the foreign ephedra bankruptcy) and Muscletech's Chapter 15 case and related litigation in the Southern District of New York (one of the first Chapter 15 cases), (ii) the Official Committees of Creditors (consisting principally of tort claimants) in the Chapter 11 cases of Twinlab, Metabolife and NVE (the domestic ephedra bankruptcies), and (iii) all of these Committees in the ephedra MDL in the Southern District of New York presided over by Judge Rakoff. In each of the ephedra bankruptcy cases, David helped create the architecture for global resolution of all tort claims and negotiated multi-million dollar global settlements for the benefit of the tort claimants.

- Representing dozens of clergy abuse victims in the Chapter 11 case of the Diocese of San Diego in Bankruptcy Court in California and participating in the negotiation of a significant global settlement with the Diocese and its insurers for the benefit of victims.

- Representing diacetyl tort claimants in the Chapter 11 case of Chemtura Corporation in Bankruptcy Court in New York.

# Education

- New York University, School of Law – J.D., *cum laude*, Order of the Coif, 1982

- Brandeis University – B.A., *summa cum laude*, 1979

## Bar Admissions

- New York
- New Jersey
- California
- U.S. Supreme Court
- U.S. Court of Appeals for the Second, Third, and Ninth Circuits
- U.S. District Court for the Southern and Eastern Districts of New York
- U.S. District Court for the District of New Jersey, Northern District of Illinois, and Northern District of California
- Dubai International Financial Centre Courts

## Publications

- Co-author, "A Cauldron of Fraud: AHAB v SICL & Ors – from the Middle East to the Cayman Islands and beyond", *INSOL World: The Quarterly Journal of INSOL International* (October 2018)

- Author, "Bankruptcies in Mass Tort Cases" and annual supplements, *Litigating Mass Tort Cases Vol. 1, Chapter 12 (P. Rheingold, ed.).* (2006 to 2020)

- Co-author, "The Long (or Not so Long) Arm of Avoidance Claims: The Issue of Extraterritorial Application", INSOL International Technical Paper 33 (October 2016)

- Co-author, "Baha Mar, Cross-Border Conflict or Cooperation: Provisional Liquidators Appointed in the Bahamas as United States Chapter 11 Proceedings are Dismissed," *Insol World* (4th Quarter, 2015)

- Interviewee (interviewer, Sheri Qualters), "A Look Inside the $100 Million Tainted-Drug Settlement," *National Law Journal* (December 24, 2013)

- Co-author, "2nd Cir. Raises a Drawbridge to Chapter 15," *Law 360* (December 2013)

- Co-author, "The Ephedra Bankruptcy Cases and the Twinlab Global Settlement Model," *The Bankruptcy Strategist* (January 2008)

# Speaking Engagements

- Speaker, "The Cryptocurrency Craze," American Bankruptcy Institute Cross-Border Insolvency Program, New York, NY, November 2018

- Panel Moderator, "Group next (or not): continuing challenges in the treatment of enterprise groups in insolvency," INSOL Tenth World Congress, Sydney, Australia, March 2017.

- Panel Moderator, "Boots on the ground: A look at some significant offshore liquidations from the liquidators themselves," INSOL British Virgin Islands One Day Seminar, Peter Island, British Virgin Islands, November 2016.

- Speaker, "Financial Frauds and Ponzi Schemes: Current Litigation Trends and Creative Mechanisms to Pursue Fraudsters," C-5 5th Forum on Fraud, Asset Tracing and Recovery, Miami, Florida, October, 2016.

- Panelist, "Madoff 7 Years On -- What Lessons Can be Applied to Other Cases," C-5 Conference on Fraud, Asset Tracing and Recovery, Geneva, March 2016.

- Panelist, "Keeping the Air-Con On: Hot Topics for 2016," INSOL International Annual Regional Conference, Dubai, January 2016

- Panelist, "Changing the Rules of the Game -- New and Evolving Tools in the Restructuring Toolbox," INSOL International Annual Regional Conference, INSOL Fellow Refresher Programme, Dubai, January 2016.

- Presenter, "A Multi-Jurisdictional Roundup of Critical Developments in Fraud Litigation," C-5 Conference on Fraud, Asset Tracing and Recovery, Miami, October 2015.

- Panelist, "Recent Developments in Knowing Assistance and Accessory Liability in Fraud Cases," C-5 Conference on Fraud, Asset Tracing and Recovery, Miami, September 2014.

- Presenter, "The Impact of the GM Bankruptcy," HarrisMartin's MDL Conference: General Motors Ignition Switch Recall Litigation Agenda, Chicago, May 2014.

- Panelist, "Chapter 15 Update with Judges and Practitioners," ABI Caribbean Insolvency Symposium, San Juan, February 2014.

- Panelist, "The Use and Recognition of Standalone Injunctions in Cross-Border Insolvencies to Freeze and Recover Assets," C-5 Conference on Fraud, Asset Tracing and Recovery, Miami, November 2013.

- Panelist, "Cross-Border Restructuring Proceedings: A Global Up-Date," Commercial List Users' Committee/OBA Insolvency Law Section/OAIRP Educational Program, Toronto, Canada, June 2013.

- Presenter, "Case Study: *TCT Rubin v. Eurofinance SA*," C-5 Conference on Fraud, Asset Tracing and Recovery, Miami, October 2012.

- Panelist, *"Stern v. Marshall*: The Sky is Not Falling – A Reasoned Analysis of the Decision and Case Law to Date," ABI Caribbean Insolvency Symposium, San Juan, February 2012.

- Presenter, "Madoff Case-Study: Developing US Remedies for Failed Offshore Funds to Assist in Asset Recovery," C-5 Conference on Fraud, Asset Tracing and Recovery, Dubai, January 2012.

- Panelist, "Ephedra / PPA Bankruptcies and Insurance Coverage - Dexatrim and TL Bankruptcy Plans - The Wave of the Future," Mealey's Ephedra & PPA Litigation Conference, New Orleans, June 2005.

# Professional Affiliations

- Fellow, INSOL International   ◦ Member, International Insolvency Institute

# Awards and Honors

- *The Legal 500 US*, Finance – Restructuring (including Bankruptcy): Corporate, 2020-2021

- *Super Lawyer*, *Top Rated Business Litigation Attorney in New York, NY*, 2010-2021

- *Law360*, *Bankruptcy Practice Group of the Year*, 2020 (part of the team that received the award)

- *Benchmark Litigation*, *Local Litigation Star*, New York, 2013-2020

- *Lawdragon*, *Leading U.S. Bankruptcy & Restructuring Lawyer*, 2020

- *Who's Who Legal*, Asset Recovery, 2020

- *International Law Office* and Lexology, *Client Choice Award*, Insolvency and Restructuring, 2014

- *Chambers USA*, Litigation: General Commercial, New York, 2014

- Martindale-Hubbell, *AV®*, *Preeminent Peer Review Rated*

- *No aspect of this advertisement has been approved by the Supreme Court of New Jersey. See the selection methodologies for Chambers, The Legal 500, Benchmark Litigation, Lawdragon, Who's Who Legal, Super Lawyers, Martindale-Hubbell, Client Choice.*

© 2021 Brown Rudnick LLP. Attorney Advertising