**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND<br>DELAWARE BSA, LLC,<br><br>          Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Dkt. 6212, 6213** |

**CENTURY'S MOTION TO COMPEL DOCUMENTS CONCERNING
EVE OF HEARING AMENDMENTS TO THE DEBTORS' FIFTH AMENDED
CHAPTER 11 PLAN OF REORGANIZATION**

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as
successor to CCI Insurance Company, as
successor to Insurance Company of North America
and Indemnity Insurance Company of North
America*

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("**Century**"), respectfully moves to compel documents concerning the eve of hearing amendments to the *Fifth Amended Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6212] (the "**Fifth Amended Plan**")[1] including those that provide for payment to the Coalition's lawyers of $10.5 million and $950,000 on a going forward basis and key revisions to the Fifth Amended Plan.

## PRELIMINARY STATEMENT

1.      Buried in the amendments to the Plan that was filed after midnight on September 15 is a provision that acquiesces to the Coalition demand to pay it—$950,000 per month and up to $10.5 million on the Effective Date—that this Court rejected in connection with the RSA Motion.[2]  The Court held that the Coalition's fees should not be paid without showing that it made a "substantial contribution" to justify its fee requests and that its fees are not duplicative of the TCC.  The Coalition and BSA, however, disregarded that directive from the Court and again try to force payment of the Coalition's restructuring fees into the Fifth Amended Plan without any disclosures related to the Coalition's fee request.  Neither the BSA nor the Coalition offered any evidence to support a "substantial contribution."  And both refused to produce a single document about the eve of hearing changes to the Fifth Amended Plan in response to Century's outstanding document requests.  Now they are again seeking to foist onto the estate payment of $950,000 monthly fees plus $10.5 million on the Effective Date without any requirement to satisfy the applicable standard for their fees.

---

[1]    All capitalized terms used but not otherwise defined herein shall have the meaning given to such terms in the Fifth Amended Plan.

[2]    *Debtors' Motion for Entry of an Order, Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code, (I) Authorizing the Debtors to Enter Into and Perform Under the Restructuring Support Agreement, and (II) Granting Related Relief* [D.I. 5466] (the "**RSA Motion**").

2.      While the Fifth Amended Plan states that the Coalition Professionals shall not be considered retained professionals, it asserts that their fee request will be subject to the provisions in the Fifth Amended Plan governing final fee applications for professionals[3] "with the following modifications:  (x) Coalition Professionals shall comply with the procedures and processes set forth in Article II.A.2 by filing final fee application(s), which, for attorneys or law firms who are Coalition Professionals, shall include time entry detail, which may be redacted for privilege; and (y) payment or reimbursement of Coalition Restructuring Expenses shall be subject to the review and procedure of the Fee Examiner."[4]

3.      That still falls far short of what is required for a substantial contribution award and there is no requirement under the Fifth Amended Plan that the Coalition satisfy that standard.  In May, Century served document requests on the Debtors and the Coalition that requested the production of, among other things, all documents concerning the Coalition's demands for fees. The Debtors flat out refused to produce any documents concerning any of the modifications of the Plan.  The Coalition likewise produced nothing.  The documents concerning fees are absolutely essential to assess the adequacy of the disclosures made Disclosure Statement as nothing whatsoever is disclosed about how these enormous payouts could ever meet the substantial contribution standard.  Nor is there any disclosure of what quid pro quo was sought and given in connection with the Debtors acquiescing to these demands.

4.      There is no evidence that suggests the Coalition's contribution is anything more than they are expected to do for their clients.  To be considered *substantial*, a benefit to the estate must be greater than an incidental benefit arising from activities pursued in protecting the

---

[3]   The Coalition will need to file and serve a final fee application for allowance and payment of its Professional Fee Claim.

[4]   Fifth Amended Plan, Art. V.T.

applicant's own interests.  Since the Coalition's fee request was first proposed in the RSA Motion, the Coalition has only shown that they have participated in negotiating the RSA and terms of the Fifth Amended Plan.  Simply participating in the reorganization process is not enough.  Moreover, they need to carry the burden and prove a substantial contribution.  Their efforts thus far have been to advance the Coalition's own interests, which is contrary to the purpose for granting fee reimbursements.

5.      The provisions regarding the Coalition's fees is not the only major revision to the Fifth Amended Plan.  Among other things, the Fifth Amended Plan incorporates the terms of the modified Hartford Settlement, the TCJC Settlement, and materially changes the treatment of Chartered Organizations under the Fifth Amended Plan.  It also adds new assignment provisions for the Chartered Organizations and TCJC.  Each of these changes alone are significant and do not provide sufficient disclosures related thereto.

**PENDING DISCOVERY RELATED TO THE PLAN**

6.      Requests for production were timely served on the Debtors that are triggered by the changes to the Plan including:

**5-14-21 RFP No. 1:**

> All Documents that refer or relate to any request that You support a motion, application or inclusion of a provision in a Plan of Reorganization that calls for the payment of money to Brown Rudnick LLP for their fees and/or costs.

**7-3-21 RFP No. 13:**

> All Documents and Communications that BSA exchanged with any Chartered Organizations concerning … the Term Sheet, the TDPs, and/or the Hartford Settlement.

**7-3-21 RFP No. 16:**

> All indemnity and other agreements between or among You, Local Council(s) and any Chartering Organizations.

**7-3-21 RFP No. 17:**

> All Documents and Communications between or among You and any Chartered
> Organizations Concerning the …Term Sheet, the TDPs, the Settlement Trust
> Documents, and/or the Hartford Settlement.

**5-14-21 RFP No. 20:**

> All indemnity and other agreements between or among You, Local Council(s) and the
> sponsoring organizations.

**5-14-21 RFP No. 21:**

> All Documents and Communications between or among You and the sponsoring
> organizations Concerning the POCs, the claims asserted therein, and the sponsoring
> organization's contribution towards the resolution of these claims.

7.      By their express terms, the requests were drafted to apply to any Plan that BSA

filed.

8.      Century served a subpoena on Brown Rudnick asserting fourteen request for

production related to the plan (which includes *any amended plan*) on May 14, 2021.  Several

requests for production were served asking for the production of all documents concerning the

request for fees and all information about the fees sought.  Other requests for production sought

the production of term sheets and plan documents, including drafts of the TDPs, if any, that were

exchanged among the parties.   The requests themselves were simple, straightforward and

unobjectionable.  For example, RFP number 1, 2 and 3 sought:

- All Documents that refer or relate to any demand or request that the Debtors support a
  motion, application or inclusion of a provision in a Plan of Reorganization that calls
  for the payment of money to Brown Rudnick for fees and/or costs.

- All Documents that refer or relate to any demand or request that the Debtors support a
  motion, application or inclusion of a provision in a Plan of Reorganization that calls
  for the payment of money to (a) any lawyer or law firm that represents the Coalition
  or (b) to the Coalition for the fees and/or costs of any lawyer or law firm that
  represents the Coalition.

- All Documents that refer or relate to any demand or request that the Debtors support a
  motion, application or inclusion of a provision in a Plan of Reorganization that calls

for the payment of money to any vendor and/or consultant of the Coalition or vendor and/or consultant engaged by counsel for the Coalition on matters for the Coalition.[5]

9.      On June 9, 2021, Brown Rudnick responded to Century's May 14, 2021 requests for production.  Brown Rudnick asserted privilege with regard to every document it and the Coalition has concerning this case and refused to produce anything.[6]  In a subsequent meet and confer with Eric Goodman of Brown Rudnick, Mr. Goodman confirmed that the Coalition refused to produce any documents whatsoever in response to the requests including its requests for fees and the work it did in connection with its application for fees.[7]  The Debtors similarly have failed to produce basic documents and communications in response to the insurers requests for documents about the Coalition's requests for fees.[8]

---

[5]     *Declaration of Samantha Indelicato in Support of Century's Motion in Limine to Bar the Debtors From Offering Evidence in Support of Their Application For Fees on which They Have Refused to Provide Discovery* [D.I. 5974], dated August 10, 2021 (hereinafter referred to as the "**Indelicato Dec.**"), Exh. C (Century Indemnity Company's May 14th Subpoena of Brown Rudnick LLP To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)).  Century also served substantially similar requests on the Debtors and the Coalition prior to the existence of the RSA. *See* Indelicato Dec., Exh. D (Century Indemnity Company's May 14, 2021 Requests to the Debtors for Production of Documents); Indelicato Dec., Exh. E (Century Indemnity Company's June 11th Subpoena of The Coalition of Abused Scouts for Justice To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Bankruptcy Case (Or Adversary Proceeding)).

[6]     *See* Indelicato Dec., Exh. A, Brown Rudnick LLP's Reponses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding), Nos. 1, 2, and 3 (invoking Rule 9019-5(d) of the Local Rules to deny production of any communications or documents); *see also* Indelicato Dec., Exh. B, The Coalition of Abused Scouts for Justice's Responses and Objections to Century Indemnity Company's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (Or Adversary Proceeding), Nos. 1, 2, and 3 (same).

[7]     *See* Indelicato Dec., Exh. G, June 1, 2021 Emails between Tancred Schiavoni and Brown Rudnick.

[8]     The Debtors' objection to each request in the requests dated July 3, 2021 with the following: "The Debtors further object to this Request for Production as seeking Confidential Materials and Privileged Materials, including information protected by the attorney-client privilege and mediation privilege, in violation of Delaware Local Rule 9019-5(d)(i) and the Mediation Order." *See* Indelicato Dec., Exh. H, *Debtors' Responses and Objections to Propounding Insurers' Requests to the Debtors for the Production of Documents*, Nos. 8, 9, 18, 19.

10.     The subpoenas are related to the plan and disclosure statement and ***any*** amended

versions of the plan and disclosure statement.  The document requests did not cover any specific

version of the plan.  We served requests for production on the Debtor and the Coalition on behalf

of a Plan of Reorganization (which is defined to include "any plan of reorganization for the Debtors

and any drafts thereof").  When these eve of hearing amendments were filed.  The responses to

Century's requests should be supplemented as the Debtors just days ago filed the Fifth Amended

Plan.  But when Century asked the Debtors for responses but the Debtors refused.  Since serving

the discovery requests, the Coalition indicated that it would not produce any documents as they

are protected by mediation privilege.

**THE STANDARD FOR PAYMENT OF THE COALITION'S FEES**

11.     The Court was clear about the standard for payment of the Coalition's fees.  At the

end of the hearing on the RSA Motion, the Court declined to approve a provision governing

payment of the Coalition's fees under the RSA.  Under the RSA, BSA would pay on a go-forward

basis $950,000 for the fees and expenses of the Coalition's professionals on a monthly basis.  And,

on the Effective Date, BSA would reimburse state court counsel for up to $10.5 million for

amounts already paid to the Coalition's professionals.  The Court recognized that while section

363 could be used "as a vehicle to bring a request to pay fees of a creditor," "the standard to apply

is a 503 standard, the requirement to find a substantial contribution." 8/19/2021 Hr'g Tr. at 19:22-

20:1.

12.     The Court explained its concerns with the Coalition's fee request and recognized

that the Coalition fell far short of showing any contribution warranting such an award.  The ruling

with respect to the Coalition's fees echoed many of Century's concerns:  (i) the Coalition's work

seems duplicative of the work being done by the TCC, (ii) the costs of the Coalition's professionals

are being borne by the abuse victims who were not supposed to be responsible "in any way . . . for

7

the fees of coalition counsel," and (iii) there is no indication that the Coalition is making a

substantial contribution. *See* 8/19/2021 Hr'g Tr. at 20:3-21:5.  The provisions embedded in the

Fifth Amended Plan that allow for payment of the Coalition's fees do not address or mitigate any

of these concerns.  Even with the oversight for the Coalition Restructuring Expenses, there is no

requirement that the Coalition satisfy its burden and show that it made a substantial contribution.

## THE RELEVANT TERMS OF THE FIFTH AMENDED PLAN

13.     On September 15, the Debtors filed the Fifth Amended Plan, which incorporates a

provision for the Coalition's fees that is substantially similar to the provision in the RSA.  It

provides:

> On or as soon as reasonably practicable after the Effective Date, Reorganized BSA
> shall reimburse state court counsel for amounts they have paid to the Coalition
> Professionals for, and/or pay the Coalition Professionals for amounts payable by
> state court counsel but not yet paid to Coalition Professionals for, reasonable,
> documented, and contractual professional advisory fees and expenses incurred by
> the Coalition Professionals (the "**Coalition Restructuring Expenses**") from the
> Coalition's inception up to and including the Effective Date, up to a maximum
> amount equal to (a) $950,000 per month for the period from August 16, 2021 up to
> and including the Effective Date (pro-rated for any partial month), plus
> (b) $10,500,000; *provided, however*, that, without limiting the foregoing, under no
> circumstance shall the Debtors or Reorganized BSA have any obligation to (i) pay
> or reimburse the Coalition, any of its members, or any Persons affiliated with the
> Coalition for any costs, fees or expenses other than the Coalition Restructuring
> Expenses or (ii) pay or reimburse any Coalition Restructuring Expenses that
> constitute transaction, success or similar contingent fees.

14.     There is no mention in the Plan or disclosure in the Disclosure Statement that the

Coalition's fee request must satisfy the applicable standard—substantial contribution.  Instead, the

Debtors propose that the Coalition submit a final fee application under the Fifth Amended Plan

without any mention of Section 503 of the Bankruptcy Code or proving a "substantial

contribution."

> Notwithstanding anything to the contrary in the Plan, the Coalition Restructuring
> Expenses shall be subject to the terms of Article II.A.2, with the following
> modifications: (x) Coalition Professionals shall comply with the procedures and

processes set forth in Article II.A.2 by filing final fee application(s), which, for attorneys or law firms who are Coalition Professionals, shall include time entry detail, which may be redacted for privilege; and (y) payment or reimbursement of Coalition Restructuring Expenses shall be subject to the review and procedure of the Fee Examiner.

In addition, the Fifth Amended Plan makes clear that the Coalition shall not be considered a retained professional in the case and does not need to satisfy any standards for retention of a professional under the Bankruptcy Code.

For the avoidance of doubt, the Coalition Professionals shall not be considered retained professionals of the Debtors, the Creditors' Committee, the Tort Claimants' Committee, or the Future Claimants' Representative, and the retention of the Coalition Professionals shall not have been required to satisfy the standards for retention set forth in sections 327, 328 or 1103 of the Bankruptcy Code.

15.    The Disclosure Statement for the Fifth Amended Plan includes no disclosure of the total amount of Coalition fees incurred to date or that the Coalition is making a substantial contribution.

16.    Similarly, the Disclosure Statement for the Fifth Amended Plan does not include meaningful disclosures regarding the proposed assignment of insurance rights of several non-debtor parties.  The Fifth Amended Plan incorporates three paths for the Chartered Organizations to become a protected party.  While the Disclosure Statement includes some disclosures regarding the three different paths, there is no information about the different treatment and how that impacts the overall plan structure.

**ARGUMENT**

**POINT I.**

**THE DISCOVERY SOUGHT IS NECESSARY TO
ENSURE ADEQUATE DISCLOSURE AS TO WHETHER
THE FIFTH AMENDED PLAN TRIES TO CIRCUMVENT
THE "SUBSTANTIAL CONTRIBUTION" STANDARD**

17.     As the Court recognized in connection with the RSA Motion, the substantial

contribution standard under Section 503 of the Bankruptcy Code is the appropriate standard for

payment of the Coalition's fees.  But again, the Debtors and the Coalition seek to sidestep Section

503(b)'s substantial contribution requirements by casting the payments as part of the settlements

incorporated within the Fifth Amended Plan.  Under the Fifth Amended Plan, the Debtors will pay

$950,000 per month until the Effective Date plus $10.5 million on the Effective Date.  The Fifth

Amended Plan also provides for payment of "reasonable, documented and contractual professional

or advisory fees incurred by the Coalition for up to thirty (30) days after the Effective Date in

connection with the initial effectuation of the Plan and the Settlement Trust."

18.     The Debtors bury the fee provision in the Fifth Amended Plan and ask the Coalition

to file final fee applications for their fee request.  However, none of the provisions covering any

of the Coalition's fees incorporate the substantial contribution standard or require the Coalition to

prove its contribution to the plan or confirmation before approving payment of any of the

Coalition's fees.  Only if the Court were to find that the Coalition made "a substantial contribution"

to the bankruptcy would it be appropriate to pay their fees under Section 503(b).

19.     Similarly in *In re TCI 2 Holdings* the court ruled that the proponents of the plan

had "failed to establish legal authority for bypassing the requirements of section 503(b) in

providing for the payment of fees and expenses to the non-debtor entities proposed to receive such

payments" and required parties to seek payment of their fees under Section 503(b).  428 B.R. 117,

146 (Bankr. D.N.J. 2010).   And in *Lehman Brothers*, the district court reversed the bankruptcy court's ruling permitting payment of an unsecured committee members' professional fees and expenses under the debtors' plan, where the plan failed to justify the payment under Section 503(b).  *In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 293 (S.D.N.Y. 2014).  The court held that debtors cannot "circumvent the requirements of section 503(b) merely by using a different label."  *Id*. at 294.  The court reasoned that, "allowing payments under the plan beyond claims and expenses could lead to serious mischief," such as violations of the absolute priority rule, by permitting payments to junior creditors prior to senior creditors being paid in full, or without their consent.

20.     The Debtors ignore these precedents and omit any requirement that the Coalition satisfies the applicable standard for their fees—the substantial contribution standard under Section 503.  The Debtors and/or the Coalition still must satisfy the substantial contribution standard for the fees to be allowed.

## POINT II.

### THE LACK OF EVIDENCE SUPPORTING THE REQUIREMENT TO PAY THE COALITION'S FEES MAKES DISCLOSURE OF THE QUID PRO QUO THAT LEAD TO THE ADDITION OF THESE TERMS EVEN MORE URGENT

21.     Under Section 503, the party requesting payment of their fees under the substantial contribution standard must show that (i) they substantially contributed to Debtors' reorganization; and (ii) their requested estimated award constitutes actual, necessary expenses or reasonable compensation based on the time, nature, extent, and value of their services and the cost of comparable services in non-bankruptcy cases.  *See* 11 U.S.C. § 503(b); *In re Summit Metals, Inc.*, 379 B.R. at 49.  The Bankruptcy Code's substantial contribution provisions are narrowly construed and "any uncertainty as to the benefit of a service performed must be decided . . . against the

applicant." *In re Senor Snacks*, 2005 Bankr. LEXIS 3295, at *4 (Bankr. S.D. Cal. Oct. 27, 2005);

*In re D.A.K. Industries*, 66 F.3d 1091, 1094 n.3 (9th Cir. 1995) (construing § 503 narrowly because

"the narrow construction of administrative expenses insures that payments out of the estate are

kept to a minimum."). To meet the "substantial contribution" standard, the benefit received by the

estate must be more than an incidental one arising from activities the applicant has pursued in

protecting his or her own interests. *See Lebron*, 27 F.3d at 944. The Coalition cannot satisfy that

burden.

22.     The Fifth Amended Plan and Disclosure Statement do not include any support for

payment of the Coalition's fees. Additionally, neither document requires the Coalition to provide

evidence to meet the "heavy burden" under the substantial contribution standard. A creditor must

show that it provided a substantial contribution to the estate to obtain reimbursement of the

creditor's fees. Based on the available evidence, the Coalition does not meet that standard because

(a) the Coalition's efforts do not go beyond self-protection, (b) there is no evidence about how the

Coalition substantially contributed to the estate or the time, nature, and value of the services they

performed that justify such an award, and (c) the Coalition's work is duplicative of the work of the

TCC.

23.     First, where the contribution made is to advance a parties' self-interest, as is the

case here, it is not appropriate for the estate to reimburse those fees. *See Consol. Bancshares,*

*Inc.,* 785 F.2d 1249, 1253 (5th Cir. 1986) ("a creditor's attorney must ordinarily look to its own

client for payment, unless the creditor's attorney rendered services on behalf of the reorganization,

not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit

to the debtor's estate and the creditors.") (quoting *In re Gen. Oil Distribs.*, 51 B.R. 794, 806

(Bankr.E.D.N.Y.1985)); *In re Bldgs. Dev. Co.,* 98 F.2d 844 (7th Cir. 1938); *In re Jensen–Farley*

*Pictures Inc.,* 47 B.R. 557, 569 (Bankr. D. Utah 1985).   And, the benefit to the estate must be substantial, which means that it is greater than an incidental benefit arising from activities pursued in protecting th7e applicant's own interests.  *See Lebron*, 27 F.3d at 944; *see also In re Dick Bruhn*, 2007 Bankr. LEXIS 4174, at *8 (Bankr. N.D. Cal. Dec. 12, 2007).   There is no evidence whatsoever is offered that the Coalition's work went beyond protecting the Coalition's own interests.  *See Lebron*, 27 F.3d at 944 ("Inherent in the term 'substantial' is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests.").   Where the party seeking reimbursement does not contribute to the reorganization beyond their work on behalf of their clients, the creditor does not get a substantial contribution award.

24.     Second, mere participation in a bankruptcy does not constitute a substantial contribution meriting payment by an estate.  *See* 11 U.S.C. § 503(b); *In re Summit Metals, Inc.*, 379 B.R. at 52.   Moreover, merely participating in negotiations without more does not constitute substantial contribution.  *See, e.g.*, *In re Alumni Hotel*, 203 B.R. 624, 632–33 (Bankr. E.D. Mich. 1996) (rejecting a substantial contribution claim where the principal contribution was negotiation because otherwise "all parties to [the] settlement might well argue that they, too, made a 'substantial contribution' by agreeing to compromise their claims."); *In re Am. Plumbing*, 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005) (noting that negotiation did not alone constitute substantial contribution because "[n]egotiation and settlement, by its nature, is not a unilateral action").   This is true even if Coalition is an active participant and their participation is viewed by some as a "positive for the overall outcome."  4 COLLIER ON BANKRUPTCY ¶ 503.10 [5][a]; *In re Catalina Spa & R.V. Resort, Ltd.*, 97 B.R. 13, at 18 ("Extensive participation, alone, is not sufficient to compel compensation" for substantial contribution).   Again, at this point, there is no evidence on

13

the role the Coalition played in connection with the mediation and the Fifth Amended Plan. Further, it is yet to be seen whether the Coalition's efforts (and any continued efforts) could constitute a substantial contribution towards the Debtors' plan and confirmation and, further, whether such plan can even succeed. It is improper at this point to allow a provision that provides for the payment of the Coalition's fees to remain without any requirement that the Coalition shows any meaningful contribution to the plan and confirmation when the money used to pay the Coalition is reduced the amount available to pay Claimants.

25.     Finally, under the Fifth Amended Plan, Coalition will be generously compensated for their efforts on behalf of the Claimants. But, the TCC already represents the Claimants' interests as a whole. There is no indication that the Coalition's work does not overlap with the TCC's efforts. The Coalition's work and their fees will be wholly duplicative of other services provided to the estate and, therefore, are unreasonable.

26.     For parties to be able to meaningfully review the Disclosure Statement and assess the fee provision, the Debtors and the Coalition must produce documents responsive to at least RFP Nos. 1, 2, and 3.

## POINT III.

### THE DOCUMENTS SOUGHT CONCERNING THE NEW BLANKET ASSIGNMENT OF NON-DEBTOR INSURANCE RIGHTS IS ESSENTIAL TO PROVIDING A BASIS TO UNDERSTAND THESE CHANGES

27.     The Debtors should also produce documents responsive to at least RFP Nos. 5, 6, 10, 20, and 21 in the May 14, 2021 requests for production served on the Debtors, and RFP Nos. 11, 13, 16, and 17 in the July 3, 2021 requests for production served on the Debtors[9], which would include any terms sheets relating to the Fifth Amended Plan and communications relating to the

_____

[9] *See* Indelicato Dec., Exh. D, Exh. F.

Fifth Amended Plan (including any drafts thereof).  The Fifth Amended Plan includes other significant revisions without sufficient disclosures.  The "Insurance Assignment" under the Fifth Amended Plan provides for assignment and transfer of "all other rights, claims, benefits, or Causes of Action of the Debtors, Related Non-Debtor Entities, Local Councils, Participating Chartered Organizations, or Contributing Chartered Organizations under or with respect to the Abuse Insurance Policies."  Disclosure Statement, Art. VII.A.11; *see also* Fifth Amended Plan, Art. I.A.140, I.A.178.

28.     Similarly, under the Fifth Amended Plan, TCJC provides for the assignment and transfer of "any all of its rights, titles, privileges, interests, claims, demands or entitlements, as of the Effective Date, to any proceeds, payments, benefits, Causes of Action, choses in action, defense, or indemnity, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, arising under or attributable to: (i) the Abuse Insurance Policies, the Abuse Insurance Coverage, the Insurance Settlement Agreements, and claims thereunder and proceeds thereof; (ii) the Insurance Actions; and (iii) the Insurance Action Recoveries."  Disclosure Statement, Art. V.R.4.b; *see also* Plan, Art. V.S.5.

29.     These insurance assignment provisions raise complex issues with respect to the assignment of insurance rights of various non-debtor parties.  And both provisions assign those rights without affirmative consent.  Once those rights are assigned, it is left to the Settlement Trustee to adjudicate all claims against the non-debtors.  Numerous requests to the Debtors seek documents and communications related to a Plan of Reorganization and, accordingly, the Debtors should be required to produce any responsive documents.[10]

---

[10] *See* Indelicato Dec., Exh. D (Nos. 5, 6); Exh. F (Nos. 11, 16).

30.     There is little or no explanation of these provisions in the Disclosure Statement. The documents sought go directly to formulating a basic understanding of the issues sufficient to allow parties to be heard at disclosure statement hearing on the whether the Debtors' disclosures are adequate.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Century respectfully requests that the Court compel the Coalition and Debtors to produce the documents concerning the request for payment of the Coalition's fees[11] and the other modifications to the Fifth Amended Plan[12], including, without limitation, the new sections of the Fifth Amended Plan dealing with insurance assignment.

## FED. R. CIV. P. 37(A)(1) CERTIFICATION

Pursuant to Civil Rule 37(a)(l), the undersigned hereby certifies that Century has met and conferred with counsel to the Debtors and Coalition in good faith on the discovery issues raised in this motion, including most recently by email to Debtors' counsel on September 16, 2021. Additional calls and emails exchanged between the parties evidence Century's attempts to resolve these matters without burdening the Court.

*[Remainder of Page Intentionally Left Blank]*

---

[11]    Indelicato Dec., Exh. C (Nos. 1, 2, 3); Exh. D (same); Exh. E (same); Exh. F (Nos. 8, 9, 18, 19).

[12]    Indelicato Dec., Exh. C (Nos. 5, 6); Exh. D (5, 6, 10, 20, 21); Exh. E (5, 6); Exh. F (Nos. 11, 13, 16, 17).

Dated: September 17, 2021                    Respectfully Submitted,


By: /s/ *Stamatios Stamoulis*
     Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801
Telephone: 302 999 1540
Facsimile:  302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537
Telephone: 212 326 2000
Facsimile:  212 326 2061

*Counsel for Century Indemnity Company, as*
*successor to CCI Insurance Company, as*
*successor to Insurance Company of North America*


OMM_US:80211807.4