

**Rachael A. Rowe**
D: 513.579.6486
RROWE@KMKLAW.com

September 20, 2021

<u>*Via Email and ECF*</u>

Hon. Laurie Selber Silverstein
United States Bankruptcy Court
824 North Market Street, 6th Floor
Wilmington, DE 19801

      Re:    *In re Boy Scouts of America and Delaware BSA, LLC*,
                  <u>United States Bankruptcy Court, District of Delaware, Case No. 20-10343</u>

Dear Judge Silverstein:

     I write on behalf of Eric D. Green and Resolutions, LLC ("Resolutions"), Professor Green's firm, to object to Moving Insurers' Motion to Compel Documents withheld by Eric Green and Resolutions LLC For the Disclosure Statement Hearing (the "Motion to Compel") [Docket No. 6282], filed on Friday, September 17, 2021.

     We learned of this motion Friday evening from monitoring the Omni Solutions docket tracker. The Moving Insurers served it on us this morning, roughly 24 hours before the hearing they request. When emailing the Motion to Compel and accompanying Motion for Entry of an Order Shortening the Notice and Objection Period [Docket No. 6285] this morning, Moving Insurers offered no explanation for inexcusably delaying service for more than two days. Needless to say, the Moving Insurers neither discussed their motions with us nor voiced their arguments with us before filing. This deliberate and unprofessional conduct was meant to deprive Professor Green and Resolutions of a fair opportunity to be heard on the Motion to Compel.

     The central arguments in the Motion to Compel go to Professor Green's assertion of a mediation privilege in objection to Moving Insurers' document subpoena. We address that argument here.

*Professor Green's Work on the Mediation*

     Professor Green was contacted by the parties at the end of March 2020 to serve as a mediator together with Mr. Paul Finn. In April 2020, at the urging of the parties, Mr. Finn and Professor Green prepared for the mediation process, engaging in frequent communications among themselves and with the parties about the case. Professor Green, together with Mr. Finn, continued in this work until June 9, 2020, when the Court ruled on the objection to his service and issued its

Judge Laurie Selber Silverstein
September 20, 2021
Page 2

mediation order, appointing Judge Carey, Mr. Gallagher and Mr. Finn as mediators and declining to appoint Professor Green. [Docket No. 812.]

By their motion, the Moving Insurers seek to obtain documents reflecting communications made in expectation of confidentiality by the mediators and the parties to this case during the period from late March to early June, 2020.[1] Pursuant to FRCP 45, Professor Green and Resolutions objected pursuant to their professional duties and in good faith to the request to produce all these communications. This Court, not the Moving Insurers nor Professor Green, should determine whether these communications are protected from disclosure by a mediation privilege. Moreover, this important question should be reached only after the parties, and perhaps the appointed mediators themselves, have had a fair opportunity to be heard.

I spoke with Mr. Finn yesterday evening, Sunday September 19, 2021. He informed me then that he had not been served with a copy of Moving Insurers' Motion to Compel. Mr. Finn emailed me this morning, asking that I advise the Court that he objects to the production of any document or documents subpoenaed by the Moving Insurers that relate to the preparation for or work on the mediation. (See Declaration of Rachael Rowe ("Rowe Declaration"), at para. 16 and Exhibit C thereto (Exhibit 1).) Mr. Finn noted that he considers all those mediation discussions and emails to be confidential and privileged, and not discoverable under the mediation prohibition against any disclosure of materials of this nature. (Id.)

In the event the Court should shorten the time for notice and objection and reach the merits of the Motion to Compel, we set forth here some background and legal authority for the necessary protection of these communications by the mediation privilege.

*Timeline of Events Related to Professor Green's Work on the Mediation*

- Professor Green was asked by some of the then-current Plan proponents to serve as co-mediator with Paul Finn on or about March 31, 2020. (See Declaration of Eric D. Green ("Green Declaration") at para. 8 (Exhibit 2).)

- On or about April 7, 2020, Professor Green and Mr. Finn began organizing the mediation process, discussing among themselves and with the parties (separately) facts, case impressions, impediments to resolution, impressions of counsel, etc. (See Green Declaration at para. 9.)

- In early May, 2020, Professor Green, Mr. Finn and the parties who asked them to serve as mediators began preparing papers related to the Court's formal appointment of mediators. (See Green Declaration at para. 10.)

---

[1] While Moving Insurers' Motion to Compel focuses on documents withheld pursuant to the mediation privilege, it also complains that Professor Green and Resolutions "refused to produce any documents relating to their connections to the FCR and FCR counsel in this case." (Motion at 13.) The truth is that Professor Green already fully disclosed his professional and social relationships with Mr. Patton and his law firm to the Court (*See* May 28, 2020 Declaration of Eric D. Green, D.I. 720), and most of the documents Moving Insurers complain have not been produced do not exist (*see* Cocchiaro Decl., Ex. 5 at Req. Nos. 11-12 *and* 16-22).

- On June 9, 2020, the Court appointed Mr. Finn, Judge Carey and Mr. Gallagher as official mediators for the case. [Docket No 812.]

Notably, Professor Green and Resolutions are only asserting the mediation privilege over documents that contain or reflect information or communications created or obtained by Professor Green or Resolutions during the time Professor Green prepared for the mediation—i.e., March 31, 2020 through June 9, 2020. (See Green Declaration at para. 12) (explaining that he was working on the mediation from March 31, 2020 to June 9, 2020). They are not asserting the privilege over any documents that reflect communications or information that they prepared or received before or after these dates.[2]

*Timeline of Events Related to Professor Green's and Resolutions' Production of Documents and Privilege Log*

- On July 1, 2021, the Plan proponents identified Professor Green as their nominee for Settlement Trustee. [Docket No. 5466.]

- The Moving Insurers waited until August 3, 2021 to send subpoenas to Professor Green and Resolutions. Moving Insurers served Resolutions on that date, but did not obtain service on Professor Green. Both subpoenas contained a return date of August 11, 2021. (See Rowe Declaration at para. 3).

- On August 5, 2021, undersigned counsel wrote to Moving Insurers on behalf of Resolutions and Professor Green, acknowledging service of the Resolutions subpoena and offering to accept email service of the Green subpoena in consideration for an extension of the response date for both subpoenas up to and including August 17. Moving Insurers declined this request. (See Rowe Declaration at para. 6).

- On August 10, 2021, Moving Insurers agreed to extend Professor Green's subpoena response time to August 16 in consideration for my acceptance of email service on his behalf. (See Rowe Declaration at para. 7).

- On August 11, 2021, counsel served, on behalf of Resolutions its objections and responses to the subpoena served on it and thereafter began a rolling production of responsive, non-privileged documents. Later that day, Moving Insurers requested that Resolutions withdraw its assertion of mediation privilege. (See Rowe Declaration at para. 8).

- On August 12, undersigned counsel responded to Moving Insurers request to withdraw assertion of the mediation privilege, explaining that Resolutions had identified and collected responsive documents that were prepared or received by Resolutions and/or

---

[2] When Professor Green learned he was a potential Trustee, he reviewed and forwarded to others some documents prepared in 2020 and related to the mediation. This is why some documents from 2021 are included on the log.

- Professor Green during the limited time period when he worked on the mediation or reflected confidential mediation information that they created or received during that time period, and that we would not be producing these documents pursuant to the mediation privilege. In this correspondence, undersigned counsel also stated that we planned to log the documents we were withholding pursuant to the mediation privilege or any other applicable privilege. (See Rowe Declaration at para. 9).

- On August 16, undersigned counsel served on behalf of Professor Green his objections and responses to his subpoena. Later that day, counsel for Moving Insurers asked if Professor Green would withdraw his assertion of the mediation privilege. Undersigned counsel explained that he could not, for the same reasons that Resolutions could not do so. That evening, undersigned counsel exchanged several emails with counsel for Moving Insurers and we agreed to meet and confer on the mediation privilege and related issues on August 18, 2021. (See Rowe Declaration at para. 10).

- Together with my co-counsel, undersigned counsel participated in a meet and confer with Moving Insurers August 18, 2021. During that meeting, undersigned counsel stated that the production of an extensive privilege log covering all mediation privileged documents would be costly, burdensome and perhaps futile if the Moving Insurers planned to take the position that privilege did not apply because the Court ultimately appointed Judge Carey instead of Professor Green. Moving Insurers stated then and in follow up correspondence that they could not assess the assertion of privilege without first seeing the privilege log. Based on this representation, Professor Green and Resolutions agreed to produce and provide a privilege log after completing the production of responsive and non-privileged documents. (See Rowe Declaration at para. 11).

- Counsel completed on behalf of Professor Green and Resolutions the production of responsive, non-privileged documents on August 23, 2021. (See Rowe Declaration at para. 12).

- On September 1, 2021, counsel produced the privilege log to Moving Insurers. (See Rowe Declaration at para. 13; Exhibit B thereto).

- Since September 1, 2021, Moving Insurers have <u>not</u>

    o sought to meet and confer over any issue;
    o objected in any way to the privilege log; or
    o sought in any way to compromise on a limited production or in camera review.

    (See Rowe Declaration at para. 14).

- The privilege log includes 474 mediation privileged entries in total. Based upon undersigned counsel's estimation at this time, the documents related to Professor Green's work on the mediation can be broken down as follows.

| General Category | Document Count |
|---|---|
| 1. Documents related to scheduling mediation calls and meetings among mediators and mediation parties and communications among members of Resolutions team related to administrative tasks such as tracking time related to the BSA mediation, document organization relating to the BSA mediation and technical needs relating to the BSA mediation | 84 |
| 2. Documents discussing mediator and mediation parties' case impressions, underlying claims, impediments to settlement and impressions of party counsel | 45 |
| 3. Documents including mediator appointment and other filings and communications related to those filings | 330 |
| 4. Emails during the period of time Professor Green was working on the BSA mediation that are primarily about unrelated topics but incidentally reference the BSA matter in mediation | 15 |

(See Rowe Declaration at para. 15).

*Argument*

This Court has explained that "[t]here is a strong policy in promoting full and frank discussions during a mediation" and that "[c]ourts have recognized that confidentiality is essential to the mediation process." *In re Tribune Co.*, Bankr. D. Del. No. 08-13141 (KJC), 2011 Bankr. LEXIS 299, at *29 (D. Del. Bankr. Feb. 3, 2011). More specifically:

> Absent the mediation privilege, parties and their counsel would be reluctant to lay their cards on the table so that a neutral assessment of the relative strengths and weaknesses of their opposing positions could be made. Assuming they would even agree to participate in the mediation process absent confidentiality, participants would necessarily "feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute." The effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlement and reducing court dockets.

*Id.* at *29-30 (citing *Sheldone v. Pennsylvania Turnpike Comm'n*, 104 F.Supp.2d 511, 514 (W.D. Pa. 2000) (citations omitted), *quoting Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979)). This Court has further explained that "[t]his policy is also reflected in Local Delaware Bankruptcy Rule 9019-5(d)." *Id.* at *30. Several federal courts have also recognized that in cases arising out of a federal question, as in this case, federal common law controls the existence and application of privilege and that a "federal mediation privilege" exists. *See, e.g.*, *Spruce Environmental Technologies, Inc. v. Festa Radon Technologies Co.*, 370 F. Supp. 3d 275, 278-279 (D. Mass. 2019) (citing *Jaffee v. Redmond*, 518 U.S. 1, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996); *ACQIS, LLC v. EMC Corp.*, 2017 U.S. Dist. LEXIS 100856, at *3 (D. Mass. June 29, 2017) (concluding that there was "no reason to depart" from the conclusions of [other] district courts that a federal mediation privilege exists).

Judge Laurie Selber Silverstein
September 20, 2021
Page 6

The cases cited by the Moving Insurers do not support their argument. *In re Smith*, 524 B.R. 689, 693 (Bankr. S.D. Tex. 2015) concerned whether a Trustee could appoint a mediator using estate funds without prior approval from the Bankruptcy Court and did not involve privilege issues. The decisions in *Hays v. Equitex, Inc. (In re RDM Sports Grp., Inc.)*, 277 B.R. 415, 431 (Bankr. N.D. Ga. 2002), *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1880 (C.D. Cal. 1998) and *United States Fid. & Guar. Co. v. Dick Corp.*, 215 F.R.D. 503, 507 (W.D. Pa. 2003) all confirm that communications or documents made in "preparation" for a mediation are covered by the mediation privilege. Those cases then went on to address unrelated issues such as whether documents that are not related to a mediation become privileged if disclosed during a mediation, or whether subsequent communications between parties (without the mediator present) are privileged. The documents on the privilege log of Resolutions and Professor Green all contain communications involving mediators and the parties that relate directly to the preparation for the contemplated mediation.

If the Court accepts Moving Insurers' stilted application of the Delaware bankruptcy court rules on mediation, unwanted results would follow. For example, if the Court were to accept Moving Insurers' position that no privilege can attach until the Court's official Order appointing mediators, it would mean that Moving Insurers and others could compel production of and testimony about all pre-June 9, 2020 communications or records of communications between Messrs. Finn[3] and Gallagher and Judge Carey, their colleagues, and any of the mediating parties. Either of these results would significantly damage the progress of the case, and both are counter to the well-developed law on mediation privilege.

Although the *In re Tribune* case involved a situation where a bankruptcy plan opponent was seeking discovery of communications between a Court-appointed mediator and mediation participants that were governed by a mediation order, the Court's focus on the importance of the mediation privilege is no less applicable here. *See In re Tribune*, D. Del. No. 08-13141 (KJC), 2011 Bankr. LEXIS 299, at *29 ("Absent the mediation privilege, […] [t]he effectiveness of mediation would be destroyed, thereby threatening the well established public needs of encouraging settlement and reducing court dockets.").) The ABA Model Standards of Conduct for Mediators (the "ABA Standards") also confirm that it is the mediator's responsibility to protect the privilege in the first instance. ABA Standard V states, in pertinent part:

> A. A mediator shall maintain the confidentiality of all information obtained by the mediator in mediation, unless otherwise agreed to by the parties or required by applicable law.
>     […]
>
> B. A mediator who meets with any persons in private session during a mediation shall not convey directly or indirectly to any other person, any information that was obtained during that private session without the consent of the disclosing person.
>     […]

---

[3] As noted above, Mr. Finn has objected to any such production of these mediation privileged materials. (See Rowe Declaration at para. 16 and Exhibit C.)

(ABA Standard V (2005).)

      Pursuant to ABA Standard V, Professor Green was required to assert privilege over all documents and information he generated or obtained in the course of his work on the mediation for the short period of time between the end of March 2020 and the Court's order appointing an alternate mediator on June 9, 2020. The parties with whom Professor Green communicated during his work on the mediation have not agreed to disclosure.[4] (ABA Standard V.A.) Additionally, Professor Green and Mr. Finn met (1) together with other mediation professionals from their respective mediation firms and (2) with representatives of the participating parties to discuss information related to the mediation. (Green Declaration at para. 9, 13; see also Exhibit B to Rowe Declaration (privilege log)). Professor Green clearly understood that the participating parties expected that their initial mediation communications to Professor Green and Mr. Finn were confidential and would not be disclosed. (*See* ABA Standard V. B.) Moreover, the long-standing practice of Professor Green is to keep initial communications in anticipation of mediation confidential, notwithstanding that they were made prior to formal retention of the mediator. (See Green Declaration at para. 13). This practice is consistent with the Court's *In re Tribune* decision and the ABA Standards.

      As a mediation professional for 45 years and a leading scholar and practitioner in the ADR field, Professor Green understands that he has a duty to the parties who asked him to serve as mediator, and to the mediation process to assert the mediation privilege when third parties attempt to invade the intended confidentiality of mediation communications. (Id.) His longstanding practices in that regard, and his actions here, are in accord with *In re Tribune* and ABA Standard V. (Id.) But Professor Green does not contend, nor has he ever contended, that a mediator has the final say on the application of the mediation privilege. But neither does the requesting party. That decision is the Court's.

DATED: September 20, 2021          Respectfully submitted,

                                          */s/ Rachael A. Rowe*
                                          Rachael A. Rowe (Ohio Bar No. 0066823)
                                          Benjamin G. Stewart (Ohio Bar No. 0082638)
                                          Applications for Admission Pro Hac Vice Pending
                                          KEATING MUETHING & KLEKAMP PLL
                                          One East Fourth Street, Suite 1400
                                          Cincinnati, Ohio 45202
                                          Phone: 513.579.6486
                                          Email: rrowe@kmklaw.com

---

[4] Moving Insurers do not dispute that the parties participating in the preparation for mediation while Professor Green was working on it considered him to be serving in this confidential role. Indeed, Professor Green was included by at least one of the parties as a mediator on the ECF website for the case docket. (See Rowe Declaration at para. 4; Exhibit A thereto.)

Judge Laurie Selber Silverstein
September 20, 2021
Page 8

                                      Steven L. Caponi (No. 3484)
                                      Matthew B. Goeller (No. 6283)
                                      K&L GATES LLP
                                      600 N. King Street
                                      Suite 901
                                      Wilmington, DE 19801
                                      Phone: 302.416.7080
                                      Email: steven.caponi@klgates.com