## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. D.I. 6154, 6155, 6236, 6237** |

**OMNIBUS REPLY OF DEBTORS IN FURTHER SUPPORT OF (A) DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING KNIGHT SETTLEMENT
AGREEMENT AND (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT
NECESSARY, TO PERMIT PAYMENT OF SETTLEMENT AMOUNT BY
APPLICABLE INSURANCE; AND (B) DEBTORS' MOTION FOR ENTRY OF AN
ORDER (I) APPROVING ROMERO SETTLEMENT AGREEMENT AND
(II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY, TO
PERMIT PAYMENT OF SETTLEMENT AMOUNT BY APPLICABLE INSURANCE**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations

that are debtors and debtors in possession in the above-captioned chapter 11 cases (together, the

"Debtors"), submit this reply to the objections (the "Objections") filed by *pro se* claimant Lonnie

J. Washburn [D.I. 6236 and 6237] to the *Debtors' Motion for Entry of an Order (I) Approving*

*Knight Settlement Agreement and (II) Modifying the Automatic Stay, to the Extent Necessary, to*

*Permit Payment of Settlement Amount by Applicable Insurance* [D.I. 6154] (the "Knight Motion")

and the *Debtors' Motion for Entry of an Order (I) Approving Romero Settlement Agreement and*

*(II) Modifying the Automatic Stay, to the Extent Necessary, to Permit Payment of Settlement*

*Amount by Applicable Insurance* [D.I. 6155] (the "Romero Motion" and, together with the Knight

Motion, the "Motions," and the settlement agreements at issue in the Motions, the "Settlement

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  Boy Scouts of America (6300) and Delaware BSA, LLC (4311).  The Debtors' mailing address is 1325 W. Walnut Hill Ln., Irving, Texas 75038.

Agreements").[2]  In reply to the Objections and in further support of the Motions, the Debtors state as follows:

## PRELIMINARY STATEMENT

1.      The Settlement Agreements are in the best interests of all creditors who hold claims that are covered by the Debtors' insurance policies, including Mr. Washburn.   Without these Settlement Agreements, the Debtors would potentially remain exposed to uncapped liabilities in connection with the Claims, including defense costs arising from discovery, dispositive motions, trial, judgment and potential appeals, thereby further diluting the sources of recovery available to Abuse Claims and Non-Abuse Litigation Claims, both of which are covered by the Debtors' insurance.

2.      The Settlement Agreements for the Knight and Romero Claims are proposed to be paid entirely from proceeds of primary and umbrella policies issued by Old Republic.   The Settlement Agreements will resolve the inherent uncertainty of litigation with respect to the Claims at issue and provide the Debtors with a complete release from any further liabilities.   At the same time, the Settlement Agreements will preserve for the benefit of other creditors the $200 million of available excess coverage that attaches above the Old Republic umbrella layer for each of the 2015–16 and 2018–19 policy years that apply to the Romero and Knight Claims, respectively.   The Settlement Agreements will inure to the benefit of the estates and holders of Abuse Claims and Non-Abuse Litigation Claims by reducing the number and amount of claims that will compete against the same insurance assets.   For these reasons, both of the Motions are unopposed by the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motions.

Debtors' principal stakeholder groups, including the Creditors' Committee, the Tort Claimants'

Committee, the Coalition of Abused Scouts for Justice, and the Future Claimants' Representative.[3]

3.      For these reasons, the Court should overrule the Objections and enter the Proposed

Orders approving the Settlement Agreements.

## ARGUMENT

### A.      The Settlement Agreements Are in the Best Interests of All Creditors.

4.      The Settlement Agreements are in the best interests of all creditors who hold claims

that are covered by the Debtors' insurance policies, including Mr. Washburn.  By settling now, the

BSA will avoid the uncertainty and expense of continuing to litigate the Claims and the risk of an

unfavorable outcome in such litigation.  One of the actions (Romero) has yet to proceed to

discovery and trial, and the other (Knight) has yet to proceed to trial.  The defense costs in

connection with discovery, dispositive motions, and trial in those actions, together with a potential

unfavorable judgment, could well exceed the Settlement Amounts.  Indeed, as set forth in the

Knight Motion, the trial court in the Knight action has entered an issue-preclusion sanction that

establishes the Defendants' negligence and policy violations, as well as the foreseeability of the

storm that caused E.K.'s death as a matter of law.  Moreover, plaintiffs seeking damages for

decedents of similar age to E.K. have routinely recovered in excess of $10 million in precedent

cases brought under Georgia's Wrongful Death Act.

5.      Under the Settlement Agreements, the BSA will receive a full and complete release

from all liability in connection with the subject matter of the Claims, thereby eliminating any

---

[3] The Debtors have been informed that the Tort Claimants' Committee does not intend to proceed with its objection to *Debtors' Motion for Entry of an Order (I) Approving Lehr Settlement Agreement and (II) Modifying the Automatic Stay, to the Extent Necessary, to Permit Payment of Settlement Amount by Applicable Insurance* [D.I. 2719].  The Debtors will file a certification of no objection promptly upon the withdrawal of the Tort Claimants' Committee's objection.

further liability under the Plan.[4]  And 100% of the Settlement Amounts fall within the limits of Old Republic's applicable primary and excess policies, meaning that those amounts will be paid entirely by insurance without eroding any limits of coverage under the Debtors' $200 million of available excess coverage that attaches above the Old Republic umbrella layer for each of the 2015–16 and 2018–19 policy years that apply to the Romero and Knight Claims, respectively.  The Settlement Agreements thus do not diminish, but rather preserve, the Debtors' estate property for the benefit of all parties in interest, including other holders of Non-Abuse Litigation Claims and holders of Abuse Claims, each of which is covered under the same insurance policies.

6.      Finally, there are twenty-two (22) and eighteen (18) timely filed, non-duplicative proofs of claim asserting Direct Abuse Claims on account of Abuse alleged to have first occurred during the 2015–16 policy year and the 2018–19 policy year, respectively, that are not presumptively barred by applicable statutes of limitation and that name an abuser, either in full or in part.  The Debtors therefore submit that the Settlement Agreements cannot be reasonably expected to interfere with the ability of the Settlement Trust to adequately monetize those excess policies for the benefit of applicable claimants.

**B.      The Settlement Agreements Are Consistent with the Terms of the Debtors' Plan of Reorganization Regarding the Treatment of Non-Abuse Litigation Claims.**

7.      The Settlement Agreements should also be approved because they afford the same treatment to Plaintiffs that is proposed to be afforded to holders of "Non-Abuse Litigation Claims" under the Plan.  Specifically, the Plan provides that holders of Non-Abuse Litigation Claims may recover up to the full amount of such claims in the first instance from available insurance, and, if

---

[4] The "Plan" refers to the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6212].

such holder is unable to recover the full amount from such insurance, then the unpaid amounts shall be submitted to the Settlement Trust, which, subject to the Settlement Trustee's review and reasonable consent, shall pay any unpaid amounts up to applicable policy limits.[5] This treatment is the result of extensive negotiations among the Debtors, the Ad Hoc Committee of Local Councils, the Creditors' Committee, the Tort Claimants' Committee, the Coalition of Abused Scouts for Justice, and the Future Claimants' Representative. Specifically, these parties agreed under the Restructuring Support Agreement that "Debtors will use their best efforts to obtain Bankruptcy Court approval of as many settlements of Non-Abuse Litigation Claims as possible" and "agree not to oppose any reasonable settlement of a Non-Abuse Litigation Claim that is proposed to be paid from a Specified Insurance Policy that is a primary or umbrella policy." *See* RSA, Schedule 1, ¶ 1. Although the Restructuring Support Agreement expired automatically in August 2021, the treatment afforded to holders of Non-Abuse Litigation Claims under the Plan has not changed, and the Debtors are continuing to seek reasonable settlements of Non-Abuse Litigation Claims. The proposed settlements of the Knight and Romero Claims are part of these ongoing efforts.

8.      Accordingly, given the broad creditor support for the process to which the Debtors adhered in negotiating the Settlement Agreements, the Settlement Agreements should be approved.

## CONCLUSION

WHEREFORE, for the reasons set forth in the Motions and above, the Debtors respectfully request that this Court overrule the Objections, approve the Settlement Agreements, and grant the Debtors such other and further relief as the Court deems just and proper.

---

[5] Plan Art. IV.D.3.

Dated: September 20, 2021
　　　　Wilmington, Delaware

WHITE & CASE LLP                                      */s/ Paige N. Topper*
Glenn M. Kurtz (admitted *pro hac vice*)              MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jessica C. Lauria (admitted *pro hac vice*)           Derek C. Abbott (No. 3376)
Andrew Hammond (admitted *pro hac vice*)              Andrew R. Remming (No. 5120)
Samuel P. Hershey (admitted *pro hac vice*)           Paige N. Topper (No. 6470)
1221 Avenue of the Americas                           1201 North Market Street, 16th Floor
New York, New York 10020                              P.O. Box 1347
Telephone:  (212) 819-8200                            Wilmington, Delaware 19899-1347
Email: gkurtz@whitecase.com                           Telephone:  (302) 658-9200
　　　　jessica.lauria@whitecase.com                   Email: dabbott@morrisnichols.com
　　　　ahammond@whitecase.com                         　　　　aremming@morrisnichols.com
　　　　sam.hershey@whitecase.com                      　　　　ptopper@morrisnichols.com

– and –

WHITE & CASE LLP
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
Blair M. Warner (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 881-5400
Email: mandolina@whitecase.com
　　　　mlinder@whitecase.com
　　　　laura.baccash@whitecase.com
　　　　blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION