## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,** | **Case No. 20-10343 (LSS)** |
| | **(Joint Administered)** |
| Debtors. | |
| | **Hearing Date: October 19, 2021** |
| | **Objection Deadline: October 12, 2021** |

## MOTION OF "JOHN DOE" TO PERMIT
## FILING OF PROOF OF CLAIM AFTER BAR DATE

"John Doe"[1] ("Movant") files this motion (the "Motion") to permit filing of proof of claim

after bar date.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334 and the standing order of reference to this Court.

2.      This is a proceeding pursuant to 28 U.S.C. § 157(b).

3.      Pursuant to 28 U.S.C. § 1409, venue of the Motion is proper in this Court.

4.      Pursuant to Del. Bankr. L.R. 9013-1(f), Movant consents, pursuant to rule 7008 of

the Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this

motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

---

[1] Due to the highly personal nature of the background of Movant's claim, he is being referred to in this filing as "John Doe." Movant of course will disclose his identity as required subject to appropriate protocols to keep his identity off of the public record.

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**A. Movant's Sexual Abuse by the Boy Scouts**

5.      Movant is fifty-five years of age and a resident of the State of California. He grew up in California.  He participated in Boy Scouts in Arvin, California in 1978.

6.      While participating in Scout meetings as a minor child, Movant was sexually abused when an adult Scout leader in his Scouting unit touched him inappropriately and sexually on more than one occasion.

**B. The Boy Scouts' Bankruptcy Case**

7.      On February 18, 2020 (the **"Petition Date"**), the above-captioned debtors and debtors-in-possession (the **"Debtors"**) filed their chapter 11 bankruptcy petitions with this Court.

8.      On May 26, 2020, the Court entered an order (the **"Original Bar Date Order"**, D.I. 695) which established November 16, 2020 as the bar date for filing proofs of claim in these cases (the **"Bar Date"**). The Bar Date appears to apply to holders "Sexual Abuse Claims" which appear to be claims that arise out of "Sexual Abuse" (as defined or described in section "IV" of the form of notice attached as Exhibit "1" to the Original Bar date Order) in "Scouting" (which is defined or described as including "Cub Scouts, Boy Scouts, Exploring Scouts, Sea Scouts and Venturing" in the form "Sexual Abuse Proof of Claim" attached as Exhibit "7" to the Original Bar Date Order).

9.      Movant was a victim of "Sexual Abuse" in "Scouting" as such terms are described and/or defined above. In addition, Movant was under eighteen (18) years of age at the time of the sexual abuse but as of the Petition Date was an adult.

10.     In the Original Bar Date Order, the Court found that the notice procedures approved therein were appropriate as to "unknown" claims, including "unknown" holders of Sexual Abuse Claims. Original Bar Date Order, ¶19.

11.     As discussed below, Movant was severely traumatized as a result of being sexually touched by his Scoutmaster and did not discuss the details of his abuse with anyone for many years. However, that does not necessarily imply that Movant was an "unknown" creditor. Debtors may have some record (or access to records) of Movant's participation in Scouting. Moreover, it is at least plausible that the Scoutmaster in question abused other victims and that Debtors may have been able to ascertain Movant's identity by investigating the Scoutmaster's conduct.

12.     On September 16, 2020, the Court entered a "supplemental" bar date order (D.I. 1331). That Order appears to relate exclusively to attorney advertising and solicitation. On October 20, 2020, the Court entered an Order (D.I. 1551) permitting holders of Sexual Abuse Claims to file proofs of claim using Official Form 10 but did not otherwise alter the Original Bar Date Order. A further Order of clarification was entered on November 30, 2020 (D.I. 1752) related to certain definitions.

13.     The Debtors have filed various proposed plans of reorganizations and disclosure statements. As of the time of the filing of this Motion, no disclosure statement has been approved by the Court.

14.     The latest proposed disclosure statement notes that there are approximately 95,200 pending or asserted Abuse Claims against the Debtors. Amended Disclosure Statement (D.I. 5485) at 55 n. 57.

### C. Movant's Retention of Counsel

15.     Movant retained Willard J. Moody, Jr. and the Moody Law Firm, Inc., to represent him and assist him with the filing of his Proof of Claim.

16.     Said counsel for Movant attempted to and believed he had caused the Proof of Claim to be filed by the bar date.

17.     Said counsel for Movant subsequently filed an Amended Proof of Claim on April 2, 2021 to supplement the name of the Local Council; this Amended Proof of Claim was Accepted by OMNI and given a confirmation number of 108442.

18.     However, the Movant's counsel later discovered the fact that the original Proof of Claim was not, in fact, filed in the OMNI system, and Movant immediately retained undersigned bankruptcy counsel licensed to practice law in the State of Delaware to assist with the filing of this Motion.

## RELIEF REQUESTED AND REASONS THEREFOR

## MOVANT DID NOT FILE A PROOF OF CLAIM DUE TO EXCUSEABLE NEGLECT.

19.     To the extent that the Court holds that the Bar Date was binding on Movant, Movant asserts that his not filing a proof of claim by the Bar Date was due to excusable neglect.

20.     Fed. R. Bankr. P. 9006(b)(1)(2) provides that, except as to certain circumstances not present here, "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

21.     The Supreme Court in <u>Pioneer Investment Services Company v. Brunswick</u>

<u>Associates Limited Partnership</u>, 507 U.S. 380 (1993), articulated a test for determining whether

"excusable neglect" exists under Rule 9006(b):

> Because Congress has provided no other guideposts for determining
> what sorts of neglect will be considered "excusable," we conclude
> that the determination is at bottom an equitable one, taking account
> of all relevant circumstances surrounding the party's omission.
> These include, as the Court of Appeals found, the danger of
> prejudice to the debtor, the length of the delay and its potential
> impact on judicial proceedings, the reason for the delay, including
> whether it was within the reasonable control of the movant, and
> whether the movant acted in good faith.

<u>Pioneer Investments Services</u>, 507 U.S. at 395.

22.     Following <u>Pioneer</u>, the Court of Appeals for the Third Circuit in <u>In re O'Brien</u>

<u>Environmental Energy, Inc.</u>, 188 F.3d 116 (3d Cir. 1999), reversed the decisions of the Bankruptcy

Court and District Court that held that an administrative claimant had not shown "excusable

neglect."

23.     In reaching this decision, the Court held that the mere fact that the debtor had not

accounted for the claim at issue was insufficient to show prejudice under <u>Pioneer</u>. The Court held

that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a

conclusion based on facts in evidence." <u>In re O'Brien</u>, 188 F.3d at 127.

24.     In determining whether prejudice exists, the Court looked to "the size of the claim

with respect to the rest of the estate; whether allowing the late claim would have an adverse impact

on the judicial administration of the case; whether the plan was filed or confirmed with knowledge

of the existence of the claim; the disruptive effect that the late filing would have on the plan or

upon the economic model upon which the plan was based; and whether allowing the claim would

open the floodgates to other similar claims." <u>Id.</u>

25.    The Court in O'Brien then went on to analyze the concept of excusable neglect. The Court reasoned that the concept included actions that involved a lack of care on the part of the claimant. Id. at 128. *See also* In re The Grand Union Company, 204 B.R. 864 (Bankr. D. Del. 1997) (Walsh, C.J.) (excusable neglect found where claimants did not effectively communicate with their counsel concerning the bar date notice).

26.    Application of the standards in Pioneer shows that Movant should be permitted to file a proof of claim after the bar date.

**1. There is Zero Danger of Prejudice to the Debtors or their Estates.**

27.    The first factor that courts should consider when determining whether to allow a late filed claim is the danger of prejudice to the debtor. Id. When assessing this factor, a debtor is *not* prejudiced by a late filed claim simply because it did not account for such claim in the funding of its plan of organization or liquidation. In re O'Brien, 188 F.3d at 126 (*citing* In re R.H. Macy & Co., 166 B.R. 799, 802 (S.D.N.Y. 1994) (the depletion of resources otherwise available for timely filed claims does not constitute prejudice).

28.    In this case, the authorized filing of a proof of claim will not prejudice the Debtors or their estates because (i) no plan of reorganization has been confirmed—indeed, there is not even a Court approved disclosure statement at this time; (ii) as it appears there are approximately 95,200 other sexual abuse claims against the Debtors, the addition of one more would not, in light of the magnitude of the Debtors' cases, measurably dilute distributions to other creditors; and (iii) Debtors would still have the ability to defend against the merits of the claim.

29.    The Debtors may offer a "floodgates" argument. The Court should view any such argument with skepticism. Thus far, with the exception of two litigants, the docket does not appear

to reflect that other creditors have moved for the right to file claims after the bar date. In any case, any other such motions may be addressed if and when they are filed on a case-by-case basis.

**2. The Length of Delay Is Not Material.**

30.    The second factor that courts consider is the length of delay and the effect that the filing will have on judicial proceedings. Pioneer, 407 U.S. at 395.

31.    In this case, the length of Movant's delay (about ten months) is not significant in view of the stage of the Debtors' cases. Compare to Greyhound Lines, Inc. v. Rogers (In re Eagle Bus. Mfg, Inc.), 62 F.3d 730 (5th Cir. 1995) (a six to eight month delay for filing a late proof of claim was not egregious). This case is far from being fully administered and there has been no distribution to creditors. Indeed, while a proposed plan has been filed, it has yet to be confirmed. Accordingly, Movant's delay in not material.

**3. The Reason for the Delay Is Excusable.**

32.    The third factor that courts consider is the reason for the delay. Pioneer, 407 U.S. at 395. When assessing whether a creditor's failure to timely file a claim is based upon excusable neglect, courts have acknowledged that "the mere use of the word neglect encompasses omissions caused by carelessness." In re O'Brien, 188 F.3d at 125. When determining whether such carelessness is "excusable," courts should take into account all of the relevant circumstances surrounding the party's omission. Id. (*citing* Pioneer, 407 U.S. at 395: "Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.").

33.    In In re Texas Tamale Co., 219 B.R. 732 (Bankr. S.D. Tex. 1998), the court did not allow a late proof of claim filing when the creditor acted in bad faith by deliberately waiting to assert his claim in order to destroy the debtor's chances of completing its confirmed plan and to harass the debtor.

34.     Here, Movant did not deliberately wait to file. Movant and his counsel believed the

Proof of Claim had been filed by the bar date.  Evidence of such may be seen in the subsequent

filing of an Amended Proof of Claim in April, 2021.

**4. Movant Has Always Acted in Good Faith**

35.     Finally, Movant has always acted in good faith. Movant had absolutely no reason

to delay this matter.

36.     In filing this Motion, Movant reserves all of his rights.

WHEREFORE, for all of these reasons, Movant requests that the Court enter an order

permitting Movant to file a proof of claim, deeming such claim to be timely filed, and granting

such other and further relief as the Court deems just and proper.

DATED: September 27, 2021                    /s/ Tiffany Poole
                                             Tiffany Poole (No. 3860)
                                             Poole, Mensinger, Cutrona & Ellsworth-Aults
                                             2710 Centerville Road, Suite 101
                                             Wilmington, DE  19808
                                             Phone:  302-428-0100
                                             Fax:  302-428-0265
                                             Email:  tpoole@pmcelaw.com
                                             *Counsel for "John Doe"*