## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| Debtors.[1] | (Jointly Administered) |

**Requested Objection Deadline: September 28, 2021 at 10:00 a.m. (ET)**
**Requested Hearing Date: September 28, 2021 at 10:00 a.m. (ET)**

### MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS PURSUANT TO BANKRUPTCY RULE 3013 TO CLASSIFY CLAIMS UNDER THE FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Official Committee of Tort Claimants to Boy Scouts of America and Delaware BSA, LLC (the "TCC"), hereby moves (the "Motion"), pursuant to Rule 3013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to classify claims for purposes of the *Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [Docket No. 6212] (as it may be amended or modified, the "Plan"), and its acceptance. Specifically, the TCC moves to classify the claims of Direct Abuse Claimants who elect to receive an Expedited Distribution in a separate class.[2] In support of its Motion, the TCC respectfully represents as follows:

---

[1] The Debtors in these Chapter 11 Cases, together with the last four digits of Debtors' federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**<u>Preliminary Statement</u>**

1.      Since the Debtors filed their Second Amended Plan in April 2021—and in each of the iterations filed since—the Plan has contemplated that Holders of Direct Abuse Claims in Class 8 would have the ability to, "on his or her Ballot," elect to receive an Expedited Distribution (an "<u>Electing Abuse Claimant</u>").[3]  Indeed, just days ago, the Court recognized the importance of having this information at hand at the time of confirmation:

> And what I'm going to be giving thought to, and I'm sure it's going to come up in other aspects of this, is can we take a vote so that at confirmation, challenges of whatever nature people want to raise, there's an ability to do so and have a vote that we can look at to apply those challenges to.  So that's what I'm trying to think about, as well, as we go through this process.
>
> For example, there is challenge to the $3,500 expedited distribution and questions about whether that is going to sway the vote and whether it should.  Well, we're going to know the answer to that question when we get the vote and whether the votes of the survivors who choose the $3,500 distribution swing the class.  We'll know that.  There are things we can know once we see the vote and who's voted.

Tr. of Hr'g on Sep. 23, 2021 at 56:16 – 57:6.  An excerpt of the September 23, 2021 Hearing Transcript is annexed hereto as **<u>Exhibit B</u>**.  The Debtors acknowledged and agreed with the Court's comments:

> Thank you, Your Honor.  And we agree with much of what you said, and you'll hear me actually iterate that, I think, throughout this discussion.  You know, there are a lot of things that people have raised that we just don't believe are a today issue or are a front-end solicitation issue.  It might well be a back-end issue with

---

[3] *See* Second Amended Plan [Docket No.2592] at Art. III.B.10(b)(i); Third Amended Plan [Docket No. 5368] at Art. III.B.10(b)(i); Fourth Amended Plan [Docket No. 5484] at Art. III.B.10(b)(i); Fifth Amended Plan [Docket No. 6212] at Art. III.B.10(b)(i).

DOCS_DE:236235.4 85353/002

the voting report or, you know, a matter of slicing and dicing the
information in connection with confirmation objections.

*Id.* at 57:15 – 24.[4]

2.        Late in the day on ***Sunday, September 26, after the Debtors acknowledged to the
Court that it was essential to have this very information as part of the voting report for
consideration at the confirmation hearing***, the TCC learned that the Debtors intended to make a
sudden about-face.  Presumably to avoid this Court's scrutiny of a critical confirmation issue that
they recognized just days ago, the Debtors now intend to have Electing Abuse Claimants, who
are in a fundamentally different position than non-Electing Abuse Claimants, make the election
to receive an Expedited Distribution ***after*** the Plan goes effective.

3.        The Plan places ***all*** Direct Abuse Claims in Class 8.  Yet, under the Plan, Electing
Abuse Claimants are contemplated to receive substantially different treatment than all other
Direct Abuse Claimants.  Pursuant to Bankruptcy Rule 3013, the Court is authorized to issue an
order directing the Debtors to amend the Plan to establish two separate classes for holders of
Direct Abuse Claims: Electing Abuse Claimants and Non-Electing Abuse Claimants.  Absent
such a revised classification, the Plan cannot be confirmed as a matter of law.  Since it would be
wasteful and costly to proceed with the solicitation and confirmation process with respect to the
Plan as proposed, the Movants respectfully request that the Court direct the Debtors to amend the
Plan as set forth herein.

---

[4] *See also, id.* at 136: 20-25 (after hearing that some claimants intended to file a motion such as this at confirmation
to ensure the votes of those electing the cash payment would be counted separately from those who do not, the Court
observed:  "I'm not surprised to hear that, having read the papers.  But as I said, we'll know who that is, and that's
sort of the objective is to – to make sure the people have the information they need to make the arguments that they
will . . . make.").

**Jurisdiction and Venue**

4.      Pursuant to sections 157 and 1334 of title 28 of the United States Code, this Court has jurisdiction to consider and grant the relief requested herein. This matter is a core proceeding pursuant to section 157(b) of title 28 of the United States Code. Venue is proper before this Court pursuant to sections 1408 and 1409 of title 28 of the United State Codes. The statutory and rule predicates for the relief requested in this Motion are sections 105(a) and 1122(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Bankruptcy Rule 3013.

**Background**

5.      On February 18, 2020 (the "Petition Date"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code.

6.      On the Petition Date, the Debtors filed a plan [Docket No. 20] (the "Original Plan") and associated disclosure statement [Docket No. 21] (the "Original Disclosure Statement").  Over a year later, on March 31, 2021, the Debtors filed a first amended plan [Docket No. 2293] (the "First Amended Plan"), first amended disclosure statement [Docket No. 2294] (the "First Amended Disclosure Statement"), and the Solicitation Procedures Motion [Docket No. 2295].

7.      On April 13, 2021, the Debtors filed a second amended plan [Docket No. 2592] (the "Second Amended Plan") and second amended disclosure statement [Docket No. 2594] (the "Second Amended Disclosure Statement").  The Second Amended Plan provided that, if Class 8 (which consisted of all holders of Direct Abuse Claims) voted in favor of the Second Amended Plan, among other things:

> each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar

Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim and who votes to accept the Plan ***may elect on his or her Ballot to receive an Expedited Distribution***, in exchange for a full and final release in favor of the Debtors, the Related Non-Debtor Entities, the Local Councils, Contributing Chartered Organizations, and the Settling Insurance Companies.

*Second Amended Plan* at Art. III.B.10(b)(i) (emphasis added). As contemplated by the Second Amended Plan, the Expedited Distribution would be $1,500.00.

8.      On June 18, 2021, the Debtors filed a third amended plan [Docket No. 5638] (the "Third Amended Plan"). The Third Amended Plan, just like the Second Amended Plan, provided that:

each holder of a properly completed nonduplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim ***may elect on his or her Ballot to receive an Expedited Distribution***, subject to criteria set forth in the Global Resolution Plan TDP, in exchange for providing a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.

*Third Amended Plan* at Art. III.B.10(b)(i) (emphasis added).

9.      On July 2, 2021, the Debtors filed a fourth amended plan [Docket No. 5484] (the "Fourth Amended Plan") and fourth amended disclosure statement [Docket No. 5485] (the "Fourth Amended Disclosure Statement"). Just as in the previous two iterations of the Plan, the Fourth Amended Plan provided that:

each holder of a properly completed non-duplicative proof of claim asserting a Direct Abuse Claim who filed such Claim by the Bar Date or was permitted by a Final Order of the Bankruptcy Court to file a late claim ***may elect on his or her Ballot to receive an Expedited Distribution***, subject to criteria set forth in the Trust Distribution Procedures, in exchange for providing a full and final release in favor of the Settlement Trust, the Protected Parties and the Chartered Organizations.

*Fourth Amended Plan* at Art. III.B.10(b)(i) (emphasis added). In the Fifth Amended Plan, the

Expedited Distribution was increased marginally to $3,500.00.

10.    On September 15, 2021, the Debtors filed the Fifth Amended Plan, fifth amended

disclosure statement [Docket No. 6213] (the "<u>Fifth Amended Disclosure Statement</u>"), and an

amended proposed Solicitation Procedures Order [Docket No. 6215], including amended

proposed forms of Ballots. The Fifth Amended Plan contained the same language as did the

Fourth Amended Plan as cited above. *Fifth Amended Plan* at Art. III.B.10(b)(i). In addition, the

proposed forms of Ballot applicable to Direct Abuse Claimants contained parallel language

stating that such claimants could elect for an Expedited Distribution on their Ballots. *See, e.g.,*

Docket No. 6215-1 at p. 104 (Exhibit 2-5, Form of Master Ballot for Class 8 Direct Abuse

Claims) (" . . . may elect on the Exhibit to this Master Ballot to receive an Expedited Distribution

. . . This election must be made on a properly and timely completed and delivered Master Ballot

in accordance with the instructions set forth herein").

## <u>Argument</u>

A.    <u>The Plan-Determinative Classification Issue Raised by this Motion Should Be</u>
       <u>Resolved at this Time Pursuant to Bankruptcy Rule 3013.</u>

11.    Section 1122(a) of the Bankruptcy Code provides:

> Except as provided in subsection (b) of this section, a plan may
> place a claim or interest in a particular class only if such claim or
> interest is substantially similar to the other claims or interests of
> such class.

11 U.S.C. § 1122(a).

12.    Bankruptcy Rule 3013 further provides:

> For purposes of the plan and its acceptance, the court may, on
> motion after hearing on notice as the court may direct, determine
> classes of creditors and equity security holders pursuant to § …
> 1122 . . . of the Code.

6

Fed. R. Bankr. P. 3013.

13.    The Advisory Committee Note to Rule 3013 states:

> Section[] 1122 . . . set[s] the standards for classifying claims and interests but provide[s] that such classification is accomplished in the plan. ***This rule*** does not change the standards; rather it ***recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated***. It provides for a court hearing on such notice as the court may direct.

1983 Advisory Committee Note to Fed. R. Bankr. P. 3013 (emphasis added).

14.    Collier explains the Rule as follows:

> [T]here are occasions when classification issues may be so obvious and their resolution so central to the confirmability of the plan that the question of proper classification is best addressed prior to consideration of a plan at a confirmation hearing.

Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶ 3013.01 (16th ed.).

15.    Plan-determinative classification issues should be resolved pursuant to Rule 3013 "prior to undertaking an expensive and time-consuming solicitation and confirmation process" with respect to a plan that contains an impermissible classification scheme. *Id.; see also In re American Family Enterprises*, 256 B.R. 377, 401 (D.N.J. 2000) ("Bankruptcy Rule 3013 permits the Court to make determinations on the classification of claims before the Confirmation Hearing"); *In re G&C Foundry Co., Ltd.*, 2008 WL 4560741, at *3 (Bankr. N.D. Ohio Oct. 9, 2008) ("The 1983 Advisory Committee Note to Rule 3013 clearly contemplates, however, that the utility of the procedure offered by the rule is in addressing classification issues prior to the expense of the disclosure and plan confirmation process."); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1017 n.7 (Bankr. S.D.N.Y. 1993), *aff'd*, 1993 WL 316183 (S.D.N.Y. May 21, 1993) ("Federal Rule of Bankruptcy Procedure 3013 provides a mechanism through which a party in interest may seek determination of the status and classification of its claim. Issues of claim

classification raised pursuant to a Rule 3013 may be ripe for determination prior to a confirmation hearing.").

16.     The Plan places all Direct Abuse Claims in Class 8.  This construct, however, fails to account for the fundamentally different position of such claimants that elect an Expedited Distribution as compared to those that do not.  Electing Abuse Claimants are accepting a faster and certain recovery, although that recovery may be a small amount.  Non-Electing Abuse Claimants will see their Direct Abuse Claims undergo comprehensive review pursuant to the Trust Distribution Procedures and are bearing the risk of an uncertain recovery on an uncertain timetable in hopes of a larger distribution.

17.     That a plan proposes different treatment for creditors sought to be classified together is sufficient to support a finding that the creditors receiving the disparate treatment should be separately classified.  *In re Durrett*, 139 B.R. 1, 3 (Bankr. D.N.H. 1992).  In *Durrett*, the court sustained objections to the classification of a creditor's claim together with other general unsecured claims, finding that "even if [the creditor] possesses an unsecured claim similar to that of other members of the class, ***the disparate treatment of [that creditor]'s claim makes it substantially dissimilar to those of other members*** of [its class]," including because as a result of the difference in treatment, the creditor was "influenced by totally different considerations from those motivating other creditors."  *Id.* (emphasis added).  Accordingly, "[b]ased on the disparate treatment of [the creditor]'s claim upon confirmation of the plan, the court rule[d] that the vote of [that creditor] should not be permitted to tilt the class in favor of accepting the plan when the other members of [the] class are not receiving the same treatment."  *Id.*; *cf., e.g.*, *In re PG&E Corp.*, 617 B.R. 671, 685 (Bankr. N.D. Cal. 2020) (finding "an adequate business justification for separate classification" under a plan in which "each class

8

receives distributions through different procedures tailored to that class, and the classes have accepted different treatment"); *In re Highlands Grp. of Brunswick, LLC*, 2012 WL 5385633, at *6-7 (Bankr. E.D.N.C. Nov. 1, 2012) ("The debtor is required to establish that there are meaningful distinctions between the classes, and legitimate bases upon which to classify the claims separately, and in this case the debtor has done so. As the debtor points out, the treatments of the claims are different….").

18.     As the above-quoted analysis in *Durrett* further indicates, shared interests in voting for or against a plan is a prerequisite to jointly classifying claims together in one class. 139 B.R. at 3 (dissimilar treatment of co-classified claims meant that creditors were "influenced by totally different considerations" and accordingly "should not be permitted to tilt the class in favor of accepting the plan when the other members of [the] class are not receiving the same treatment"); *see, also, e.g.*, *In re Richard Buick, Inc.*, 126 B.R. 840, 853 (Bankr. E.D. Pa. 1991) ("Substantial similarity of claims in a class insures that classes of claims will have similar interests and that votes cast by the class will reflect joint interests of the class." (internal quotation marks and citation omitted)); *In re Butler*, 42 B.R. 777, 782 (Bankr. E.D. Ark. 1984) ("This requirement [of section 1122(a)] insures that classes of claims will have similar interests and that votes cast by the class will reflect joint interests of the class."); *In re Huckabee Auto Co.*, 33 B.R. 141, 147-48 (Bankr. M.D. Ga. 1981) (same).

19.     Manipulation of the classification mechanism to dilute the voting power of those claimants with a fundamentally different economic interest in the plan was also a key issue in *In re Combustion Eng'g,* 391 F.3d 190 (3d Cir 2004). There, the plan provided that certain creditors who settled with the debtor pre-petition, retained a small claim assertable in the bankruptcy (the so-called "stub claims"). 391 F.3d at 238-39. Objecting creditors contended

that the creation of the stub claims was an attempt to "effect an impermissible manipulation of the voting process."  *Id.*  The United States Court of Appeals for the Third Circuit agreed, finding that the dilution of the voting power of those claimants with different economic interests violated the Bankruptcy Code:

> As noted, an estimated 99,000 of the approximately 115,000 "valid" confirmation votes appear to have been stub claim votes.  Given this structural inadequacy, *see Ortiz,* 527 U.S. at 855-57, 119 S.Ct. 2295, the Plan may have lacked the requisite "indicia of support" among creditors.  We recognize that stub claims are often used in ordinary commercial bankruptcies without generating the problems described here.  But in this case, their use is problematic.  We will remand for further consideration….

*Id.* at 245.

21.     The same considerations apply here.  As this Court observed, having the information about the distribution of votes between creditors who accept the TDP process and its uncertainties in time and payment amount and those who avoid those procedures in exchange for a certain quick payment is important in assessing the confirmability of the Plan.

**D.      The Plan's Classification Scheme Violates Section 1122(a).**

21.     Section 1123(a)(4) works in tandem with Section 1122(a) of the Bankruptcy Code, which provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  Claims are not "substantially similar" under section 1122(a) unless they "exhibit a similar effect on the debtor's bankruptcy estate."  *In re Tribune Co.*, 476 B.R. 843, 855 (Bankr. D. Del. 2012) ((internal quotation marks omitted) (citing *In re Quigley Co.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) ("Claims are similar if they have substantially similar rights to the debtor's assets." (emphasis and internal quotation marks omitted)).  A plan that provides certain

10

members of a class with the opportunity to receive a materially greater recovery than other members of the same class cannot be confirmed. *See, e.g., Schroeder v. New Century Liquidating Trust (In re New Century TRS Holdings)*, 407 B.R. 576, 592 (D. Del. 2009) (reversing confirmation order because plan failed to comply with Section 1123(a)(4) where certain claimants in a class received a 100% distribution, while others in the same class received a 130% distribution).

22.      By effectively creating two sub-categories of Direct Abuse Claims, with the near certainty of materially different prospects for percentage recovery, the Debtors have implicitly recognized by this disparate treatment that the two sub-categories of claims are not "substantially similar" to one another.  Rather than proceed to confirmation on the basis of the Plan's fundamentally flawed scheme, the TCC respectfully requests that the Court determine the appropriate classification of the Direct Abuse Claims pursuant to Rule 3013.  Proceeding in this fashion would avoid the waste of significant time, resources, and expenses associated with a contested confirmation process over a Plan that is unconfirmable.  Moreover, if the Debtors are permitted to delay the election until after voting and confirmation is complete, in stark contrast to the apparent understanding of the Court and the parties as evidenced by the above-quoted colloquy from the September 23rd hearing, the Debtors will have deprived the parties and the Court of information that is critical to key confirmation issues.  Accordingly, the Court should issue an order directing the Debtors to amend the Plan to establish two separate classes of Direct Abuse Claims, as follows: (a) Electing Abuse Claims, and (b) Non-Electing Abuse Claims.

## Notice

23.      Notice of this Motion has been provided to (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel

to the Future Claimants' Representative; (e) counsel to the Coalition; (f) counsel to the Ad Hoc Committee of Local Councils; and (g) all parties requesting notice in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002.  The TCC submits that no other or further notice is necessary under the circumstances.

## Conclusion

WHEREFORE, for the reasons set forth herein, the TCC respectfully requests that the Court grant the relief requested herein and enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, directing the Debtors (a) to amend the Plan to establish two separate classes of Direct Abuse Claims, as follows: (i) Electing Abuse Claims, and (ii) Non-Electing Abuse Claims, (b) include on any Ballot sent to Direct Abuse Claimants an election concerning whether such Direct Abuse Claimant voluntarily agrees to receive an Expedited Distribution, and (c) for such other and further relief as is just and proper under the circumstances.

Dated: September 27, 2021    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

James I. Stang (CA Bar No. 94435) (admitted *pro hac vice*)
Iain A.W. Nasatir (CA Bar No. 148977) (admitted *pro hac vice*)
Kenneth H. Brown (CA Bar No. 100396) (admitted *pro hac vice*)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038) (admitted *pro hac vice*)
Steven W. Golden (DE No. LP 0127)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tele/Fax: (302) 652-4100 / (302) 652-4400
Email:        jstang@pszjlaw.com
                 inasatir@pszjlaw.com
                 kbrown@pszjlaw.com
                 joneill@pszjlaw.com
                 jlucas@pszjlaw.com
                 sgolden@pszjlaw.com
*Counsel for the Tort Claimants' Committee*

12