## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | **Re: Dkt. 6368, 6369** |

**JOINDER OF THE ZALKIN LAW FIRM, P.C., AND PFAU COCHRAN VERTETIS AMALA PLLC TO THE OFFICIAL COMMITTEE OF TORT CLAIMANTS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 TO CLASSIFY CLAIMS UNDER THE FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC UNDER <u>CHAPTER 11 OF THE BANKRUPTCY CODE [D.I. 6368]</u>**

The Zalkin Law Firm, P.C., and Pfau Cochran Vertetis Amala PLLC ("Zalkin and Pfau") each respectfully join in the *Motion of the Official Committee of Tort Claimants Pursuant to Bankruptcy Rule 3013 to Classify Claims Under the Fifth Amended Joint Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC Under Chapter 11 of the Bankruptcy Code* [D.I. 6368] (the "3013 Motion"),[1] which seeks a determination from the Court that (i) Electing Abuse Claims and Non-Electing Abuse Claims must be separately classified under the Plan and (ii) the option to elect an Expedited Distribution in lieu of payment in accordance with the TDPs must be included on any Ballot sent to Direct Abuse Claimants.

After filing four iterations of the Plan that contemplated that holders of Direct Abuse Claims in Class 8 would have the ability to elect, on their ballots, whether or not to receive an Expedited Distribution,[2] and an exchange with the Court at the September 23rd Disclosure Statement hearing in which counsel for Zalkin and Pfau, the Debtors, and the Court all expressed

---

[1]   Capitalized terms used but not defined herein have the meanings ascribed to them in the 3013 Motion.

[2]   *See* Second Amended Plan [Docket No.2592] at Art. III.B.10(b)(i); Third Amended Plan [Docket No. 5368] at Art. III.B.10(b)(i); Fourth Amended Plan [Docket No. 5484] at Art. III.B.10(b)(i); Fifth Amended Plan [Docket No. 6212] at Art. III.B.10(b)(i).

what appeared to be a shared expectation that by the time of the confirmation hearing "we're going to know the answer to [the] question when we get the vote [as to] whether the votes of the survivors who choose the $3,500 distribution swing the class,"[3] it now appears that the Debtors intend to file a further revised Plan in which Direct Abuse Claimants will not make the election whether or not to receive an Expedited Distribution until after the Plan goes effective.

Whatever the intent, the practical effect of the Debtors' sudden reversal of position on this issue is to shine an even brighter light on the infirmities of the Debtors' proposal to classify Direct Abuse Claimants that elect an Expedited Distribution together with those Claimants that do not. A Direct Abuse Claimant that elects a prompt and certain *de minimis* Expedited Distribution is simply not "substantially similar," within the meaning of section 1122(a), to a Direct Abuse Claimant that elects to await a determination of its claim value in accordance with the TDPs for at least two reasons. *First*, "the disparate treatment of [an electing creditor's] claim makes it substantially dissimilar to those of other members" of Class 8. *In re Durrett*, 139 B.R. 1, 3 (Bankr. D.N.H. 1992). *Second*, the votes of these two groups of differently situated creditors are plainly "influenced by totally different considerations." *Id.*

The result of impermissibly co-classifying electing and non-electing Direct Abuse Claimants is to "effect an impermissible manipulation of the voting process" in which it will become impossible for this Court or the parties to determine whether the Plan has the "requisite 'indicia of support' among creditors." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239, 245 (3d Cir 2004). The very real risk inherent in this improper classification scheme is that the votes of creditors with substantially dissimilar interests under the Plan will "be permitted to tilt the class in favor of accepting the plan." *In re Durrett*, 139 at 3. That harm is compounded here by the Debtors' apparent decision to delay the election until after the effectiveness of the Plan because

---

[3] Tr. of Hr'g on Sep. 23, 2021 at 136:20-25; *see also id.* at 56:16-57:24.

neither the Court nor the parties will have the information necessary to assess how these differently situated creditors voted and what that means for the confirmability of the Plan.

The Court has the authority under Rule 3013 "to make determinations on the classification of claims before the Confirmation Hearing." *In re American Family Enterprises*, 256 B.R. 377, 401 (D.N.J. 2000). Accordingly, for the reasons stated herein and in the 3013 Motion, Zalkin and Pfau respectfully submit that it is appropriate in the circumstances presented here for the Court to determine the classification of electing and non-electing Direct Abuse Claimants now, and to require that election be made by Direct Abuse Claimants in advance of the confirmation hearing, in order to insure that "votes cast by the class will reflect the joint interests of the class." *In re Richard Buick, Inc.*, 126 B.R. 840, 853 (Bankr. E.D. Pa. 1991).

DATED:  September 27, 2021                    Respectfully Submitted,

**BIELLI & KLAUDER, LLC**

By:    */s/ David M. Klauder*
David M. Klauder, Esquire (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

KTBS LAW LLP
Thomas E. Patterson (p*ro hac vice*)
Daniel J. Bussel (p*ro hac vice*)
Sasha M Gurvitz (p*ro hac vice*)
1801 Century Park East, Twenty-Sixth Floor
Los Angeles, California 90067
Telephone    310-407-4000
Email: tpatterson@ktbslaw.com;
        dbussel@ktbslaw.com
        sgurvitz@ktbslaw.com

*Counsel to each of The Zalkin Law Firm, P.C.,*
*and Pfau Cochran Vertetis Amala PLLC*